Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
Dielai Yang (dyang@fklaw.com)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendant Multi-Strategy Fund Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | No. 08-01789 (CGM)<br>(Bankr. S.D.N.Y.)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>   Plaintiff,<br><br>  v.<br><br>MULTI-STRATEGY FUND LIMITED,<br><br>   Defendant. | Adv. Pro. No. 12-01205 (CGM)<br>(Bankr. S.D.N.Y.) |

### DEFENDANT MULTI-STRATEGY FUND LIMITED'S
### MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)

3678440.1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Bankr. P. 8012, the undersigned counsel of record

for Multi-Strategy Fund Limited, a non-governmental corporate party, certifies that

Caisse de dépôt et placement du Québec directly or indirectly owns 10% or more

of its equity.

Dated:  August 1, 2022

s/ Robert J. Lack
Robert J. Lack

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF AUTHORITIES ...................................................................................iv

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS ......................................................................................4

QUESTION PRESENTED......................................................................................8

RELIEF SOUGHT..................................................................................................9

ARGUMENT ..........................................................................................................9

THE BANKRUPTCY'S COURT'S LEGAL ERROR PRESENTS
EXCEPTIONAL CIRCUMSTANCES WARRANTING
INTERLOCUTORY REVIEW ....................................................................9

A.    The Order Involves a Controlling Question of Law ..........................10

B.    Substantial Ground for Difference of Opinion Exists Because
      the Bankruptcy Court Misread This Court's *Cohmad* Decision.........12

C.    An Immediate Appeal Will Advance the Ultimate Termination
      of This Litigation...............................................................................19

D.    Exceptional Circumstances Also Exist Because Correction of
      the Bankruptcy Court's Error Would Result in the Termination
      or Narrowing of 58 Subsequent Transferee Proceedings and
      Dismissal of More Than $1.8 Billion of Safe-Harbored Claims ........19

CONCLUSION......................................................................................................22

CERTIFICATE OF COMPLIANCE.....................................................................24

Exhibit A:    The Bankruptcy Court's June 27, 2022 Order Denying Multi-Strategy
              Fund Limited's Motion to Dismiss the Amended Complaint Under
              Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure
              12(b)(2) and 12(b)(6)

3678440.1

Exhibit B:   The Bankruptcy Court's June 13, 2022 Memorandum Decision
             Denying Defendant's Motion to Dismiss

Exhibit C:   Adversary Proceedings Subject to Section 546(e) Defense

3678440.1

# **TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
    2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ....................................9, 10, 12, 19

*In re Ditech Holding Corp.*,
    2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021) .....................................................9

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) .................................................................................5

*McMillan v. City of N.Y.*,
    2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011), *vacated on other*
    *grounds*, 711 F.3d 120 (2d Cir. 2013) ...............................................................11

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF*
    *Global Holdings Ltd.)*,
    296 F. Supp. 3d 662 (S.D.N.Y. 2017) ...............................................................19

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
    2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022)..........................................8

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).........................................8

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022).........................................8

*Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*,
    2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022)..........................................8

*Picard v. Bordier & Cie (In re Madoff)*,
    2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022).........................................8

*Picard v. Bureau of Labor Ins. (In re Madoff)*,
    No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022) ....................................21

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................................5

3678440.1

*Page(s)*

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021).............................................7

*Picard v. First Gulf Bank (In re Madoff)*,
    No. 11-2541 (CGM) (Bankr. S.D.N.Y. July 18, 2022) ........................................8

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv.
    Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014) ...............................................................................17

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ............................................................................20

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
    2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ..........................................8

*Shinn v. Ramirez*,
    142 S. Ct. 1718 (2022).........................................................................................11

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    476 B.R. 717 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida
    Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014) ...............................................................................20

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .............................................*passim*

## Statutes

11 U.S.C. § 546(e) ...............................................................................*passim*

11 U.S.C. § 548(a)(1)(A) ...............................................................6, 20, 21

11 U.S.C. § 550(a)(2).............................................................................5, 17

11 U.S.C. § 550(b) ....................................................................................5

28 U.S.C. § 158(a)(3).........................................................................1, 3, 9

28 U.S.C. § 1292(b) ......................................................................9, 10, 19

*Page(s)*

**Rules**

Fed. R. Bankr. P. 8002(d) ............................................................................................4

Fed. R. Bankr. P. 8004 ...............................................................................................1

Fed. R. Bankr. P. 8004(a) ...........................................................................................4

vi

Pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004,

defendant Multi-Strategy Fund Limited ("Multi-Strategy") hereby moves for leave

to appeal from an order (the "Order"; Ex. A hereto) of the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

denying Multi-Strategy's motion to dismiss the Amended Complaint of plaintiff

Irving H. Picard, trustee of the Madoff liquidation and estate (the "Trustee").

## PRELIMINARY STATEMENT

This appeal presents a controlling, pure question of law about which

there is substantial ground for difference in opinion, whose resolution in Multi-

Strategy's favor would result in the termination not only of this adversary

proceeding, but also of 16 others brought by the Trustee, and would materially

affect another 41 proceedings.  The Trustee seeks to recover thousands of transfers

from offshore Madoff feeder funds to foreign entities, alleging that the transfers

constituted subsequent transfers of customer property initially transferred to those

feeder funds by Madoff's brokerage firm.  The legal issue on which this motion for

leave to appeal is based is common to nearly all the proceedings:

> Did the Bankruptcy Court err in interpreting this Court's opinion in
> *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 2013
> WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), to
> bar a subsequent transferee from asserting a Section 546(e) defense if
> the initial transferee is alleged to have had actual knowledge of
> Madoff's fraud, even though the subsequent transferee is not alleged
> to have had such knowledge?

As an innocent subsequent transferee, Multi-Strategy is entitled to the protection of the Bankruptcy Code's safe harbor under this Court's decision in *Cohmad*, regardless of whether the initial transferee had actual knowledge of Madoff's fraud. The Amended Complaint does not allege that Multi-Strategy had actual knowledge of Madoff's fraud, and the Trustee did not contend otherwise in opposing Multi-Strategy's motion to dismiss; nor did the Trustee dispute that Section 546(e) applies by its terms to the initial transfers it seeks to avoid. Instead, the Trustee contended—and the Bankruptcy Court accepted—that *Cohmad* requires rejecting a *subsequent* transferee's Section 546(e) defense whenever the *initial* transferee had actual knowledge of Madoff's fraud, regardless of whether the subsequent transferee lacked such actual knowledge. The Bankruptcy Court held that because it had ruled in an opinion in another proceeding that the Trustee had adequately alleged that the initial transferee—Fairfield Sentry Limited ("Sentry")—had actual knowledge of Madoff's fraud, that finding alone disqualified all subsequent transferees of Sentry from the protection of Section 546(e). In its decision denying Multi-Strategy's motion to dismiss, the Bankruptcy Court erroneously stated that *Cohmad* required this result. *See Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, No. 12-1205, ECF 122 ("Op."; Ex. B hereto), at 18-19, 2022 WL 2137073, at *9 (Bankr. S.D.N.Y. June 13, 2022).

The Bankruptcy Court's decision is wrong as a matter of law and fundamentally misinterprets this Court's decision in *Cohmad*. In *Cohmad*, this Court reasoned that the safe harbor was intended to protect the reasonable expectations in the finality of securities transactions on the part of legitimate investors who believed securities were being traded on their behalf. Accordingly, it held only that Section 546(e) should not protect defendants who actually knew that Madoff was running a Ponzi scheme and that no securities were actually being traded. Throughout the *Cohmad* opinion, this Court repeatedly made clear that whether a particular defendant should be disqualified from prevailing based on Section 546(e) depends on *that* defendant's knowledge. Nothing in *Cohmad* even suggests that an innocent subsequent transferee should be denied the protection of the safe harbor based on a third party's alleged guilty knowledge. Had the Bankruptcy Court properly applied *Cohmad*'s principles, the Trustee's Amended Complaint against Multi-Strategy would have been dismissed in its entirety.

All requirements for granting leave to file an interlocutory appeal under 28 U.S.C. § 158(a)(3) are met here. The requested appeal involves a controlling question of law. The correct application of *Cohmad* is a pure question of law that does not require study of the record, and reversal of the Bankruptcy Court on that question would necessarily result in dismissal of this proceeding. There is a substantial ground for difference of opinion as to the correctness of the

3678440.1

Bankruptcy Court's decision because there are strong arguments that it is contrary to *Cohmad* and Section 546(e) itself and because it presents an issue of first impression in the Second Circuit and this District Court.  An immediate appeal promises to advance the ultimate termination of this litigation and to obviate any need for discovery and trial.

This appeal presents exceptionally strong circumstances for this Court to exercise its discretion to undertake interlocutory review.  Reversing the Bankruptcy Court's misinterpretation of *Cohmad* would result not only in the termination of this adversary proceeding but also the dismissal of 16 other similarly situated proceedings involving more than $700 million of transfers and the dismissal of claims for more than $1.1 billion in additional alleged subsequent transfers in 41 other proceedings.[1]

## STATEMENT OF FACTS

The Trustee has brought approximately 80 proceedings to recover some $3 billion in transfers made to foreign defendants by Sentry and other offshore feeder funds that invested with Bernard L. Madoff Investment Securities

_____

[1] By Stipulation and Order entered June 30, 2022 [ECF 124], pursuant to Fed. R. Bankr. P. 8002(d) the Bankruptcy Court extended Multi-Strategy's time to appeal the Order through August 1, 2022, thus making this appeal and motion timely under Fed. R. Bankr. P. 8004(a).  Except where otherwise indicated, all references herein to "ECF ___ " are to the docket of the Bankruptcy Court in Adversary Proceeding No. 12-1205.

4

3678440.1

LLC ("BLMIS"). The Trustee alleges that the transfers constituted subsequent

transfers of customer property initially transferred to the feeder funds by BLMIS.

These proceedings were filed a decade or more ago but had been dormant pending

the Trustee's appeals regarding the extraterritorial reach of 11 U.S.C. § 550(a)(2)

and the pleading standards for the good faith defense under 11 U.S.C. § 550(b).

Following the Second Circuit's decisions on those issues in *In re
Picard*, 917 F.3d 85 (2d Cir. 2019) (extraterritoriality), and *Picard v. Citibank,
N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021) (good

faith), and reassignment of all BLMIS proceedings in the Bankruptcy Court to the

Honorable Cecelia G. Morris, Judge Morris directed separate briefing schedules in

each proceeding, even though many of the grounds and arguments—particularly in

regard to the Section 546(e) safe harbor—are common to most of the proceedings.

As a result, more than 40 separate motions making substantially identical legal

arguments on those common legal issues have already been filed in the various

proceedings, with briefing scheduled into 2023; numerous additional motions

remain to be filed and briefed.

Multi-Strategy's motion to dismiss was the first in the series to be

argued and decided, and its case presents the Section 546(e) issue exceptionally

clearly. Multi-Strategy is an investment fund established in the Cayman Islands

and operated out of Canada. In his Amended Complaint, filed in February 2022,

5

the Trustee seeks to recover a single transfer of $25.8 million made by Sentry to

Multi-Strategy in redemption of its shares on March 15, 2005.  Any underlying

initial transfer from BLMIS to Sentry was necessarily made on or before that date,

which is more than two years before BLMIS's December 12, 2008 petition date

and thus outside the lookback period for claims under 11 U.S.C. § 548(a)(1)(A),

the only claims exempt from the Section 546(e) safe harbor.

In the proceedings below, the Trustee did not dispute that any such

initial transfer was made by a stockbroker (BLMIS) to a financial institution

(Sentry, by virtue of its status as a customer of a bank that acted as its agent in

connection with the transfers) in connection with a securities contract (the account

agreement between BLMIS and Sentry) and also in connection with a separate

securities contract (Sentry's Articles of Association, which govern requests by its

shareholders for redemption of their shares).  Thus, by its terms Section 546(e)

applies to any initial transfer the Trustee could seek to recover from Multi-Strategy

as a subsequent transferee, and the Bankruptcy Court did not find otherwise.

Moreover, the Amended Complaint does not allege that Multi-Strategy had actual

knowledge of Madoff's fraud; the Trustee did not argue otherwise on the motion;

and the Bankruptcy Court did not find otherwise in its decision.

Instead, the Trustee argued, and the Bankruptcy Court agreed, that

solely because the Trustee adequately alleged that the initial transferee, Sentry, had

actual knowledge of Madoff's fraud, Multi-Strategy was not permitted to raise the

safe harbor defense to the avoidability of the initial transfer on its own behalf as a

subsequent transferee.  *See* Op. at 15-21, 2022 WL 2137073, at *8-10.  The

Bankruptcy Court relied on a finding in a separate proceeding, *Picard v. Fairfield

Inv. Fund Ltd. (In re Madoff)*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021),

that the Trustee had adequately alleged actual knowledge on the part of Sentry.  In

denying Multi-Strategy's motion on that basis, the Bankruptcy Court

acknowledged that it was required to apply this Court's mandate in *Cohmad*,[2] that

it was "powerless to reconsider this issue, [and] agrees with the district court's

reasoning."  Op. at 18-19, 2022 WL 2137073, at *9.  But its opinion nowhere

explains why *Cohmad*—which addressed the situation in which a subsequent

transferee *did* have actual knowledge of Madoff's fraud—requires that a

subsequent transferee that *did not* have such knowledge cannot be allowed to

prevail on a Section 546(e) defense.

        Since the Bankruptcy Court issued its opinion denying Multi-

Strategy's motion to dismiss, it has issued a series of opinions denying, in nearly

---

[2] *Multi-Strategy* is one of the proceedings to which *Cohmad*'s ruling expressly
applies.  *See* Amended Notice of Motion to Dismiss, *Cohmad*, No. 12-MC-115,
ECF 289 (S.D.N.Y. Aug. 10, 2012) (listing proceedings involved in *Cohmad*).

3678440.1

verbatim language, motions to dismiss by other subsequent transferee defendants.[3]
The Bankruptcy Court will presumably continue issuing all-but-identical opinions
denying other defendants' motions on the same grounds as they are submitted
through January 2023 and beyond.  As a result, as further detailed below, the issue
raised in this motion for leave to appeal broadly impacts scores of defendants
targeted, and the majority by dollar value of the claims asserted, in the Trustee's
litigation against foreign feeder fund investors.

## QUESTION PRESENTED

Did the Bankruptcy Court err in interpreting this Court's opinion in
*Cohmad* to bar a subsequent transferee from asserting a Section 546(e) defense if
the initial transferee is alleged to have had actual knowledge of Madoff's fraud,
even though the subsequent transferee is not alleged to have had such knowledge?[4]

---

[3] *See Picard v. Banque Syz & Co., SA (In re Madoff)*, 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*, 2022 WL 2387523, at *8-10 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Lloyds TSB Bank PLC (In re Madoff)*, 2022 WL 2390551, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie (In re Madoff)*, 2022 WL 2390556, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale Vaudoise (In re Madoff)*, 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*, 2022 WL 2799924, at *7 (Bankr. S.D.N.Y. July 15, 2022); *Picard v. First Gulf Bank (In re Madoff)*, No. 11-2541 (CGM), ECF 100, at 16-21 (Bankr. S.D.N.Y. July 18, 2022).

[4] Another alleged foreign subsequent transferee defendant, Banque Lombard Odier & Cie SA ("Lombard Odier"), is simultaneously moving for leave to appeal the denial of its motion to dismiss on the ground that the Bankruptcy Court erred in

3678440.1

## RELIEF SOUGHT

Multi-Strategy requests that this Court grant leave to appeal to permit Multi-Strategy to seek reversal of the Bankruptcy Court's Order and dismissal of this proceeding.

## ARGUMENT

### THE BANKRUPTCY'S COURT'S LEGAL ERROR PRESENTS EXCEPTIONAL CIRCUMSTANCES WARRANTING INTERLOCUTORY REVIEW

Appeals from non-final bankruptcy court orders may be taken with leave by the district court pursuant to 28 U.S.C. § 158(a)(3).  In deciding whether to grant leave to appeal, reviewing courts apply the standards of 28 U.S.C. § 1292(b), which governs the appealability of interlocutory district court orders. *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  For an interlocutory appeal to lie pursuant to Section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for

---

holding that personal jurisdiction over foreign shareholders in foreign feeder funds can be based solely on the shareholders' knowledge and intent that the feeder funds would invest in U.S. securities using a New York broker-dealer.  Multi-Strategy joins in Lombard Odier's argument that this ruling presents an additional and independent basis for leave to appeal.

3678440.1

difference of opinion," and the movant must show that "(3) an immediate appeal

would materially advance the ultimate termination of the litigation."  28 U.S.C.

§ 1292(b); *see Enron*, 2006 WL 2548592, at *3.  Leave to appeal is warranted

when the movant demonstrates the existence of "exceptional circumstances" to

overcome the "general aversion to piecemeal litigation" and to "justify a departure

from the basic policy of postponing appellate review until after the entry of a final

judgment."  *Enron*, 2006 WL 2548592, at *3.

> As shown below, each of the three requirements is met here.  And

because the impact of the Bankruptcy Court's Section 546(e) holding extends to

numerous similar proceedings involving more than $1.8 billion in claims that

would otherwise be dismissed, this case presents exceptionally compelling

circumstances for this Court to exercise its discretion to grant interlocutory review

of the Bankruptcy Court's Order.

## A.   The Order Involves a Controlling Question of Law

> "In regard to the first prong, the 'question of law' must refer to a

'pure' question of law that the reviewing court could decide quickly and cleanly

without having to study the record."  *Enron*, 2006 WL 2548592, at *4.  The

question must also be "controlling" in the sense that reversal of the bankruptcy

court's order would terminate the proceeding, or at a minimum that determination

of the issue on appeal would materially affect the litigation's outcome.  *Id*.

3678440.1

The question presented here—about the proper application of *Cohmad* in the scenario where the defendant subsequent transferee did not have actual knowledge of Madoff's fraud, but the initial transferee did—is a "pure" question of law, because it turns solely on the interpretation of this Court's prior opinion in *Cohmad* and on Section 546(e). The appeal does not require the Court to study the record or facts of this (or any other) case, but rather only to apply, and perhaps clarify, the guiding legal principles stated in its *Cohmad* opinion.

The pure question of law presented here is "controlling" because reversal of the Bankruptcy Court's Order denying Multi-Strategy's motion to dismiss would terminate the proceeding. The Trustee's Amended Complaint does not allege that Multi-Strategy had actual knowledge of Madoff's fraud,[5] nor did the Trustee do so in his opposition brief or at oral argument, thus conceding the issue.[6] Instead, the Trustee based his opposition to dismissal under Section 546(e) solely on his argument that, under *Cohmad*, the initial transferee's alleged actual knowledge of Madoff's fraud is dispositive of a subsequent transferee's Section

_____

[5] *See* Am. Compl. ¶¶ 1-128 [ECF 97]; Def.'s Br. Supp. Mot. Dismiss at 14 [ECF 102]; Def.'s Reply Br. Supp. Mot. Dismiss at 1 [ECF 110]; Am. Tr. of Oral Argument at 21, 22 [ECF 121].

[6] *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1730 (2022); *McMillan v. City of N.Y.*, 2011 WL 5237285, at *9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

11

3678440.1

546(e) defense, regardless of whether the subsequent transferee had such knowledge.[7]  Thus, reversal of the Bankruptcy Court on *Cohmad*'s application to an innocent subsequent transferee would, without more, entitle Multi-Strategy to the protection of the Section 546(e) safe harbor and require dismissal of the Amended Complaint.

**B.    Substantial Ground for Difference of Opinion Exists Because the Bankruptcy Court Misread This Court's *Cohmad* Decision**

Under the second prong, "the 'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4.  The requirement that such a substantial ground exists may be met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Id*.  The district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute." *Id*.

---

[7] *See* Pl.'s Br. Opp. Mot. Dismiss at 2, 33-34, 36 [ECF 108]; Am. Tr. of Oral Argument at 37, 38 ("There's no reason to consider whether the defendant had actual knowledge for purposes of 546(e) to decide the motion."), 39 ("a subsequent transferee['s] actual knowledge is only relevant when the initial transferee is innocent"), 40-53, 93 [ECF 121].

3678440.1

Here, there are strong arguments in opposition to the Bankruptcy Court's ruling that raise a genuine doubt whether it correctly applied *Cohmad*. This Court in *Cohmad* did *not* hold that an innocent subsequent transferee is deprived of the protection of the Section 546(e) safe harbor if the initial transferee had actual knowledge of Madoff's fraud; nothing in this Court's stated rationale in *Cohmad* even implies that result; and in fact, several statements in the *Cohmad* opinion contradict the Bankruptcy Court's conclusion that a transferee can be deprived of the protection of the statutory safe harbor without the Trustee proving or even alleging that it had actual knowledge of Madoff's fraud.

Nothing in *Cohmad* supports the Bankruptcy Court's conclusion that the actual knowledge of the initial transferee strips the safe harbor's protection from a subsequent transferee who does *not* have actual knowledge. To the contrary, *Cohmad* stands for the proposition that a transferee's ability to invoke the safe harbor depends on whether *that transferee*—the defendant from which the Trustee seeks to recover—had actual knowledge of Madoff's fraud.

In *Cohmad*, this Court set forth only two scenarios in which the Section 546(e) defense could not be asserted by a transferee defendant, even if the safe harbor would otherwise apply by its terms to the initial transfer:

(1) Where Section 546(e) is raised by an *initial* transferee who had actual knowledge of Madoff's fraud, such *initial* transferee will not be able to prevail on the safe harbor defense; and

(2) Where the initial transferee did not have actual knowledge of Madoff's fraud, but Section 546(e) is raised by a *subsequent* transferee that *did* have such knowledge, such *subsequent* transferee will not be able to prevail on the safe harbor defense.

*See Cohmad*, 2013 WL 1609154, at *1.

The *Cohmad* opinion, however, does not expressly state how its rule applies in the scenario at issue here: where Section 546(e) applies by its terms to the initial transfer, the initial transferee allegedly had actual knowledge of Madoff's fraud, but the safe harbor is raised by a subsequent transferee that is *not* alleged to have had such knowledge (*i.e.*, the inverse of Scenario 2 above). In particular, *Cohmad* does not state that where Section 546(e) would otherwise apply, a subsequent transferee cannot invoke the safe harbor as a defense to the avoidability of the initial transfer if the initial transferee had actual knowledge of the fraud.

Nor does anything in *Cohmad* suggest that this Court intended to bar innocent subsequent transferees from the protection of the safe harbor. Because this Court's ruling in *Cohmad* was intended to apply to numerous consolidated

proceedings then before it, if this Court had intended a sweeping, bright-line rule

that an initial transferee's actual knowledge bars not only the initial transferee, but

also all subsequent transferees without regard to their knowledge, it presumably

would have said so.  But it did not.  Instead, in stating the rule for the scenario

where the initial transferee has actual knowledge, this Court held only that "the

initial transferee" would be disentitled to the Section 546(e) defense in that case.

*Id.*

Moreover, nothing in this Court's reasoning in *Cohmad* supports the

conclusion that all subsequent transferees are deprived of the safe harbor's

protection, regardless of their actual knowledge of Madoff's fraud or lack thereof,

if the initial transferee had such knowledge.  In stating the rationale for its holdings

in *Cohmad*, this Court reasoned that Section 546(e)'s safe harbor was intended to

protect the reasonable expectation in the finality of securities transactions on the

part of legitimate investors who believed securities were being traded on their

behalf, but should not protect defendants who actually knew that Madoff was

conducting a Ponzi scheme and was not trading securities.  *Id.* at *3-4.  Throughout

the *Cohmad* opinion, this Court repeatedly emphasized that whether a particular

defendant would be disqualified from prevailing on Section 546(e) was to be

determined by that defendant's knowledge, whether the defendant was an initial

transferee or a subsequent transferee.  *See id.* at *3, 4, 7, 10.  This Court

3678440.1

summarized that repeated directive as follows: "In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor." *Id.* at *7 (emphasis added).[8] Here, the Trustee does not allege that Multi-Strategy actually knew of Madoff's fraud. Thus, contrary to the Bankruptcy Court's ruling, Multi-Strategy should be able to claim the protection of the safe harbor even if Sentry cannot.

This is not, as the Bankruptcy Court incorrectly suggested, an argument that the safe harbor directly applies to subsequent transfers. *See* Op. at 19, 2022 WL 2137073, at *9. Rather, Multi-Strategy has asserted that the safe harbor applies by its terms to the alleged *initial* transfer from BLMIS to Sentry. And it is entitled to do so even if Sentry (the initial transferee) did not, as it is undisputed that "even if the initial . . . transferee fails to raise a Section 546(e) defense against the Trustee's *avoidance* of certain transfers . . . because [as here] the transferee settled with the Trustee . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against *recovery* of those funds."

_____

[8] In its opinion denying Multi-Strategy's motion to dismiss, the Bankruptcy Court altered the above-quoted language from *Cohmad* by inserting the word "[initial]" before "transferee" at the start of the sentence—thus changing this Court's meaning. Op. at 16, 2022 WL 2137073, at *8.

16

*Cohmad*, 2013 WL 1609154, at \*7 (emphasis added).  In this case, since the safe harbor renders the initial transfer not avoidable, there can be no recovery of any subsequent transfer under 11 U.S.C. § 550(a)(2), and there is no reason under *Cohmad* to disentitle Multi-Strategy from invoking the safe harbor where Multi-Strategy is not alleged to have had actual knowledge of Madoff's fraud.

In fact, multiple statements in *Cohmad* contradict the Bankruptcy Court's view that an innocent subsequent transferee is barred from the protections of Section 546(e) if the initial transferee had actual knowledge of Madoff's fraud. *First*, this Court stated that "[i]n the context of Madoff Securities' fraud, th[e] goal [of Section 546(e)] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract."  *Id.* at \*4.  By contrast, the Bankruptcy Court's ruling does not protect the reasonable expectations of a subset of innocent investors—those who entered into a securities contract with a feeder fund that (unbeknownst to them) had actual knowledge of Madoff's fraud—even though other innocent investors that entered into a securities contract directly with BLMIS receive safe harbor protection under Second Circuit law.  *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 417-23 (2d Cir. 2014).  *Cohmad* provides no support for the Bankruptcy Court to treat innocent investors further removed from BLMIS worse than direct innocent investors.

3678440.1

*Second*, this Court held that "the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted," without distinguishing between initial transferees and subsequent transferees. *Cohmad*, 2013 WL 1609154, at *4. "[I]f the [Trustee's] allegations adequately allege that *a defendant had actual knowledge* of Madoff's scheme, *such a transferee* stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)." *Id*. But the Bankruptcy Court's ruling dispenses with that "minimum" requirement in the case of subsequent transferees, holding that they can be stripped of the Section 546(e) defense simply by showing that a *different* transferee—namely, the initial transferee—actually knew no securities were being traded.

In sum, *Cohmad* neither holds, states, nor implies that subsequent transferees may be barred from invoking the protection of Section 546(e) based on the actual knowledge of the initial transferee, rather than their own actual knowledge. Indeed, *Cohmad* expressly says the opposite: that the actual knowledge of the particular transferee—initial or subsequent—controls. For these and other reasons Multi-Strategy would detail in its merits brief if leave to appeal is granted, the Bankruptcy Court erred in its interpretation of *Cohmad*.

The issue presented here—whether the actual knowledge of an initial transferee disqualifies an innocent subsequent transferee from obtaining the

18

protection of Section 546(e)—is one of first impression, both in the Second Circuit

and Southern District of New York.  No circuit panel or district court judge has

expressly addressed or ruled on this issue.  And indeed, before the Bankruptcy

Court's opinion on which the Order is based, neither had any bankruptcy judge.

### C.    An Immediate Appeal Will Advance the Ultimate Termination of This Litigation

Under the third prong of the Section 1292(b) standard, "[a]n

immediate appeal is considered to advance the ultimate termination of the litigation

if that appeal promises to advance the time for trial or shorten the time required for

trial." *Enron*, 2006 WL 2548592, at *4.  Courts place particular emphasis on this

last factor. *Id*.  Here, if this Court permits an immediate appeal and the

Bankruptcy Court's Order is reversed, the Trustee's Amended Complaint against

Multi-Strategy would have to be dismissed, thus terminating the proceeding

without trial.

### D.    Exceptional Circumstances Also Exist Because Correction of the Bankruptcy Court's Error Would Result in the Termination or Narrowing of 58 Subsequent Transferee Proceedings and Dismissal of More Than $1.8 Billion of Safe-Harbored Claims

In deciding motions for leave to appeal, courts in this District have

also considered whether an appeal of the legal question presented "would provide

important guidance for similarly situated parties." *MF Global Holdings Ltd. v.*

*Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662,

19

665 (S.D.N.Y. 2017) (Rakoff, J.).  That factor points to additional exceptional circumstances that further warrant immediate appeal here.

As shown in Exhibit C hereto, there are currently pending 17 subsequent transferee proceedings (including this one) by the Trustee against Sentry investors, with claims totaling more than $700 million, in which all the alleged initial transfers were made more than two years before the BLMIS petition date and thus outside the scope of Section 546(e)'s express exception for claims under Section 548(a)(1)(A).  All the initial transfers from BLMIS in these proceedings are covered by Section 546(e) under this Court's rulings in *Picard v. Katz*, 462 B.R. 447, 451-53 (S.D.N.Y. 2011) (Rakoff, J.), and *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R. 717, 718-19, 722 (S.D.N.Y. 2012) (Rakoff, J.) ("*Grieff*"), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014).  The Trustee does not allege in any of these proceedings that the subsequent transferees had actual knowledge that Madoff was conducting a Ponzi scheme and was not trading securities.  Thus, but for the Bankruptcy Court's misinterpretation of *Cohmad* as barring an innocent subsequent transferee from enjoying the protection of the safe harbor if the initial transferee had actual knowledge of Madoff's fraud, all these proceedings would be dismissed in their entirety.

3678440.1

In addition, another 41 subsequent transferee proceedings are pending against innocent Sentry investors where many of the alleged initial transfers—totaling more than $1.1 billion—occurred outside the two-year lookback period for Section 548(a)(1)(A) claims. Claims based on those transfers also would be dismissed under the Section 546(e) safe harbor but for the Bankruptcy Court's misinterpretation of *Cohmad*. *See* Ex. C.[9] Thus, the majority of the $3 billion of Sentry-based subsequent transferee claims that the Trustee has been pursuing for more than a decade would be immediately dismissed, without further discovery or trial, if the Bankruptcy Court's purely legal error is corrected on this interlocutory appeal.

If, however, an interlocutory appeal is not granted, those proceedings and claims will generate years of further litigation in the Bankruptcy Court before final judgment. In fact, in pending subsequent transferee proceedings that are past the motion to dismiss stage, the Trustee is currently obtaining scheduling orders that provide for *three years* of discovery proceedings, through April *2025*. *E.g.*, Case Mgmt. Plan ¶¶ 2(b), 3(a), *Picard v. Bureau of Labor Ins. (In re Madoff)*, No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022) [ECF 134]. The

---

[9] Banque Syz & Co., SA, the defendant in one of those proceedings (Adv. Proc. No. 11-2149), is simultaneously moving for leave to appeal the denial of its motion to dismiss on similar grounds to those stated here.

3678440.1

extraordinary expense and wasted time of such further protracted proceedings—on

top of the decade or more of litigation expense defendants have already suffered—

should not be imposed on innocent subsequent transferees of initial transfers whose

alleged avoidance is barred by the terms of Section 546(e).  Innocent investors,

who had reasonable expectations in the finality of securities transactions under the

safe harbor enacted by Congress, should not have to wait years more for appellate

review of the Bankruptcy Court's misinterpretation of this Court's decision in

*Cohmad*.

By reversing the Bankruptcy Court's pure legal error on the requested

interlocutory appeal, this Court can thus prevent an extraordinary waste of time

and money for both the Trustee and the defendants in scores of cases.  For this

reason, as well as this appeal's satisfaction of the three requirements discussed

above, exceptional circumstances exist here that warrant granting an immediate

appeal of the Bankruptcy Court's erroneous Order.

## **CONCLUSION**

For the foregoing reasons, Multi-Strategy should be granted to leave

to appeal the Bankruptcy Court's order denying its motion to dismiss the Amended

Complaint and, upon such appeal, the order should be reversed and the Amended

Complaint dismissed.

Dated:  New York, New York
        August 1, 2022

Respectfully submitted,

s/ Robert J. Lack
Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux
(jfourmaux@fklaw.com)
Dielai Yang (dyang@fklaw.com)
FRIEDMAN KAPLAN SEILER
    & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendant*
*Multi-Strategy Fund Limited*

3678440.1

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5,151 words, according to the word-count function of the word-processing system used to prepare the document.

2.    This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2008 in 14-point Times New Roman font.

Dated:  August 1, 2022

s/ Robert J. Lack
Robert J. Lack

24

3678440.1

# EXHIBIT A

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 33 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 33 of 63

12-01205-cgm    Doc 123    Filed 06/27/22    Entered 06/27/22 11:44:24    Main Document
Pg 1 of 2

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01205 (CGM) |
| Plaintiff, | |
| v. | |
| MULTI-STRATEGY FUND LIMITED, | |
| Defendant. | |

**ORDER DENYING MULTI-STRATEGY FUND LIMITED'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT UNDER**
**BANKRUPTCY RULE 7012(b) AND FEDERAL RULE**
**OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)**

Defendant Multi-Strategy Fund Limited's motion to dismiss the Amended Complaint under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (the "**Motion**") came on for hearing before the Court on May 18, 2022 (the "**Hearing**"). The Court has

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 34 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 34 of 63

12-01205-cgm    Doc 123    Filed 06/27/22    Entered 06/27/22 11:44:24    Main Document
Pg 2 of 2

considered the Motion, the papers filed in support of and in opposition to the Motion, the Amended

Complaint, and the statements of counsel at the Hearing, and the Court has issued a memorandum

decision, dated June 13, 2022, regarding the Motion (the "**Decision**"). Based on the record in this

adversary proceeding, including the Decision, IT IS ORDERED:

    1.    The Motion to dismiss the Amended Complaint is denied.

    2.    The deadline for Multi-Strategy Fund Limited to file an answer to the Amended

Complaint is August 15, 2022.

    3.    The Court shall retain jurisdiction to implement or enforce this Order.



/s/ Cecelia G. Morris

**Dated: June 27, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

# EXHIBIT B

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 36 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 36 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 1 of 23

<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>v.<br><br>MULTI-STRATEGY FUND LIMITED,<br><br>      Defendant. | Adv. Pro. No. 12-01205 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

**<u>A</u> P P <u>E</u> A <u>R</u> A <u>N</u> C <u>E</u> S :**

BAKER HOSTETLER LLP
*Attorneys for the Plaintiff*
45 Rockefeller Plaza
New York, N.Y. 10111
BY:   MATTHEW FEIL (via Zoomgov)
       MATTHEW B. FRIEDMAN (via Zoomgov)

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 37 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 37 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 2 of 23

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
*Attorneys for Defendant, Multi-Strategy Fund Limited*
7 Times Square
New York, NY 10036
BY:    ROBERT J. LACK (via Zoomgov)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is Defendant's, Multi-Strategy Fund Limited ("Multi-

Strategy"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover one

subsequent transfer allegedly consisting of BLMIS customer property.  Multi-Strategy seeks

dismissal for lack of personal jurisdiction, for failure to state a claim due to the safe harbor

provision of the Bankruptcy Code, and for failure to allege that it received BLMIS customer

property.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

### Jurisdiction

       This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

       This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 38 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 38 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 3 of 23

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.

This adversary proceeding was filed on March 22, 2012, by Trustee.  The Trustee brings

this proceeding to recover the subsequent transfer of BLMIS customer property that Multi-

Strategy allegedly received from Fairfield Sentry Limited ("Fairfield Sentry").  (Compl. ¶ 2, ECF

No. 97).  Fairfield Sentry ("Fairfield Sentry") is known as a "feeder fund" of BLMIS because it

invested "all or substantially all" of its assets in BLMIS.  (*Id.* ¶ 3).  In his amended complaint,

filed on February 18, 2022 ("Complaint"[1]), the Trustee alleges that Multi-Strategy, a foreign

investment fund organized under Caman law (*Id.* ¶ 58), received a transfer of $25,763,374 from

Fairfield Sentry Limited ("Sentry") on March 15, 2005.  (*Id.* ¶ 120).

According to the Complaint, Defendant is a company organized under the laws of the

Cayman Islands (*Id.* ¶ 58) and is a wholly owned subsidiary of Caisse de dépôt et placement du

Quebec ("Caisse"), and Defendant's address is alleged to be Caisse's headquarters in Montreal,

Canada.  (*Id.*)  It is alleged that CDP Capital was Defendant's investment manager and directed

Defendant's investments in and redemptions from the BLMIS Feeder Funds.  (*Id.* ¶ 4).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

---

[1] For simplicity, the Court uses the term "Complaint" to refer to the Trustee's amended complaint docketed at ECF No. 97.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 39 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 39 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 4 of 23

the amount of approximately $3 billion.  (*Id.* ¶ 114).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 115).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (*Id.*) but repaid only $70 million to the BLMIS customer property

estate. The Trustee then commenced a number of adversary proceedings against subsequent

transferees like Defendant to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Multi-Strategy argues that the safe harbor bars the Trustee's

recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer property,

and that this Court lacks personal jurisdiction over it.  The Trustee opposes the motion to

dismiss.

<u>**Discussion**</u>

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction over it.  In the

Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the

United States and New York.  Compl. ¶¶ 87–113.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 40 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 40 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 5 of 23

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).  At this preliminary stage, "the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 41 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 41 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 6 of 23

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

The Trustee has devoted over five pages of his twenty-seven-page Complaint to Defendant's contacts with New York. (Compl. ¶¶ 87–113). It is alleged that "Defendant invested in the BLMIS Feeder Funds with the specific purpose of having funds invested with BLMIS in New York. Defendant knew and intended that its investments in the BLMIS Feeder Funds were ultimately investments with New York-based BLMIS." (*Id.* ¶ 88). And that Defendant "purchased shares in the BLMIS Feeder Funds intending to direct funds to New York-based BLMIS." (*Id.* ¶ 89). "Prior to subscribing to Fairfield Sentry, Defendant affirmed having 'received and read' a Fairfield Sentry private placement memorandum, dated July 1, 2003, which provided that 'approximately 95% of the Fund's assets' were under the custody of New York

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 42 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 42 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 7 of 23

based BLMIS." (*Id.* ¶ 90). And the Trustee allegedly has evidence that Defendant was referred

to as a "Madoff addict" by a partner at Fairfield Greenwich Group. (*Id.* ¶ 91). Defendant,

through its president, director and authorized signatory, asked about additional capacity for

Fairfield Sentry on at least seven occasions. (*Id.* ¶ 91).

"Defendant's knowledge and intention that its investments in Fairfield Sentry and

Kingate Global[2] were investments with BLMIS are reflected in Defendant's total redemption

of its investments in both BLMIS Feeder Funds after [Defendant's president] discussed 'Madoff

and the potential ponzi [sic] scheme.'" (*Id.* ¶ 92). "[I]n connection with Defendant's Fairfield

Sentry investments," persons associated with the Defendant asked "for 'info that you've got on

Madoff,' including asking 'how Maddoff [sic] made money' and for help 'understand[ing] when

Maddoff [sic] was invested.'" (*Id.* ¶ 93).

It is also alleged that Defendant's president and other associated persons met with

Fairfield Greenwich Group partners in New York at the Fairfield Greenwich Group New York

office. (*Id.* ¶ 97). "Defendant sent wiring instructions specifically designating a New York-

based bank account to which Defendant directed FGG to wire Defendant's redemption payments

from Fairfield Sentry, and from which Defendant was going to fund its subscriptions in Fairfield

Sentry." (*Id.* ¶ 97; *see also id.* ¶¶ 110–113) ("Defendant derived significant revenue from New

York and maintained minimum contacts and general business contacts with the United States and

New York in connection with the claims alleged herein."). Defendant intentionally invested in

---

[2] Kingate Global Fund Ltd. ("Kingate Global") was another feeder fund of BLMIS. (Compl. ¶ 2). According to the
Trustee, "[t]his Amended Complaint removes claims that have been resolved by the Trustee's Court-approved
settlement . . . . Specifically, pursuant to the single satisfaction rule set forth in 11 U.S.C. § 550(d), the Trustee is not
seeking to recover subsequent transfers that Defendant received from Kingate Global." (*Id.* ¶ 3, n.1). Despite the
dismissal of this claim, allegations regarding the Defendant's investment in multiple BLMIS feeder funds lends
support to the Trustee's allegations that Defendant purposefully invested in BLMIS.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 43 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 43 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 8 of 23

United States investments (*id.* ¶¶100–107) and Defendant submitted to the laws of New York
and to personal jurisdiction in New York (*id.* ¶ 108).

Despite these allegations, Defendant argues that it had no contact with the forum state
and that under *Walden v. Fiore*, 571 U.S. 277 (2014), the Court may not use a third-party's
contacts to determine whether it purposefully availed itself of this Court's jurisdiction.   This
case is no assistance to Defendant.  The Supreme Court explicitly states in *Walden*, "although
physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—
either by the defendant in person or through an agent, goods, mail, or some other means—is
certainly a relevant contact."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The Trustee has
sufficiently alleged that Defendant, through its president and investment manager, was
physically present in New York at Fairfield Greenwich Group's New York office, received
payments and sold shares through its New York based bank account, and used that New York
based bank account to gain access, through its agent Fairfield Sentry, to BLMIS, a New York
based investment broker who invested in United States investments.

As described by Judge Lifland, "[Defendant] intentionally tossed a seed from abroad to
take root and grow as a new tree in the Madoff money orchard in the United States and reap the
benefits therefrom."  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr.
S.D.N.Y. 2012).  Defendant's alleged contacts with New York are not random, isolated, or
fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts
with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,
1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).   "[P]roof that a plaintiff's claim came

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 44 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 44 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 9 of 23

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from Fairfield Sentry. (Compl. ¶¶ 125–28). This lawsuit is directly related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

Defendant argues that its contacts with the forum are alleged to have occurred after its initial investment in Fairfield and, therefore, the Court cannot use them to find personal jurisdiction. This is not the test. The suit only need be affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Even if this were the standard, the Trustee is seeking to recover of funds Defendant received *after* its contacts were alleged to have occurred.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 45 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 45 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 10 of 23

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and "irrevocably" submitted to the jurisdiction of New York courts' when it signed its subscription agreements with the Fairfield Funds.[3] The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

---

[3] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In re Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions.").

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 46 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 46 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 11 of 23

The Trustee has made a prima facie showing of personal jurisdiction with respect to the Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 47 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 47 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 12 of 23

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

**Count One: Recovery of Subsequent Transfers**

> Section 550(a) of the Bankruptcy Code states:
>
> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such
> transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on*

*11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)).  "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re*

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re*

*BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,*

*N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 48 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 48 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 13 of 23

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

In order to properly plead a subsequent transfer claim, the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable. The Trustee is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. While the plaintiff can choose to pursue the initial transferee, he is not obligated to do so. The plaintiff is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶¶ 114–19). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 49 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 49 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 14 of 23

plead fraud from second-hand knowledge.  Moreover, in a case such as this one, where the

Trustee's lack of personal knowledge is compounded with complicated issues and transactions

that extend over lengthy periods of time, the trustee's handicap increases, and even greater

latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS*), 454 B.R. 317, 329

(Bankr. S.D.N.Y. 2011) (cleaned up).

In the Complaint, the Trustee "incorporates by reference the allegations contained in the

Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs

1-10, 79-313, and 315-16." (Compl. ¶ 118).  Adoption by reference is government by Rule 10 of

the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a

pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or

motion."  The district court has already found that adoption by reference of the entire Fairfield

Complaint is proper.  *See SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §*

*550(a))*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered

Financial Services incorporates by reference the complaints against Kingate and Fairfield,

including the allegations concerning the avoidability of the initial transfers, and further alleges

the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff

Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).")

(cleaned up).

The Court follows the district court's instruction.  As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Complaint was filed in the

"same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases within this

SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re Terrestar*

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 50 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 50 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 15 of 23

*Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary

proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec.

Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv.

Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019),

(citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine

applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir.

2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL

1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy

case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

Through the reference to the Fairfield Complaint, the Trustee has adequately pleaded the

avoidability of the initial transfer. (Fairfield Compl. ¶¶ 314–318, 09-1239, ECF No. 286); *see

also SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 37

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . ."); 

Order at 14, 12-MC-115 (JSR), ECF No. 314 (applying holding to Multi-Strategy).

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 51 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 51 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 16 of 23

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer.  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added).  However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds.  *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).  "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 52 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 52 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 17 of 23

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[4] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

---

[4] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 53 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 53 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 18 of 23

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied. *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013). And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
                                    Pg 54 of 63
12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
                                    Pg 54 of 63
12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
                                    Pg 19 of 23

instance consistent with [the district court's] opinion." *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."). This Court agrees with the district court's holding.

The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

08-01789-cgm   Doc 22141   Filed 08/18/22   Entered 08/18/22 10:10:39   Main Document
Pg 55 of 63

12-01205-cgm   Doc 127   Filed 08/01/22   Entered 08/01/22 09:34:19   Main Document
Pg 55 of 63

12-01205-cgm   Doc 122   Filed 06/13/22   Entered 06/13/22 12:10:56   Main Document
Pg 20 of 23

Defendant argues that this Court applied the safe harbor to redemption payments made by

Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020)

("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this

SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield

Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is

analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The

safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims

under BVI law[5] to recover "unfair preferences" and "undervalue transactions" and constructive

trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that

the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re

Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14,

2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb.

23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims

brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant

would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly

to Multi-Strategy. *Fairfield III* is not applicable here.

Defendant also argues that this Court permitted a subsequent transferee to raise the safe

harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Court

never considered whether the safe harbor could be raised by a subsequent transferee in that case.

In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of

---

[5] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is
ancillary to the primary proceeding brought in the BVI.

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 56 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 56 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 21 of 23

Fairfield Sentry, the initial transferee. The Court considered the insider's actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**BLMIS Customer Property**

Defendant's final argument is that the Trustee has not adequately pleaded that the funds Multi-Strategy received from Fairfield Sentry were BLMIS customer property. Defendant's argument is essentially that, based on the timing of the transfers, the funds that Multi-Strategy received from Fairfield Sentry could not have come from BLMIS. *See* May 18, 2022 Hr'g Tr. at 25 ("Simply adding these up -- . . . shows that all the Madoff money was gone by the time Multi-Strategy received its redemption in March 2005. The money Multi-Strategy received could not have come from Madoff. It had to have come from other Sentry investors."). To reach this conclusion, Defendant asks the Court to only count funds Fairfield Sentry received during the six-year look-back period. *Id.* ("The first transfers from Madoff to Sentry within the six year period preceding the petition date began on May 9th, 2003.").

On the other hand, the Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. The Trustee has pleaded that "Fairfield Sentry invested all or substantially all of its assets into the BLMIS Ponzi scheme." (Compl. ¶ 123). The Fairfield Complaint, which is adopted by reference, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 57 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 57 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 22 of 23

Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").

Defendant attempts to make a very intricate factual argument about how millions of dollars might have come from non-BLMIS property.  Memo. Law at 19, ECF No. 102. ("BLMIS made $120,000,000 of transfers into Sentry during that period, . . . while Sentry made $888,268,729 of transfers out as redemptions to its investors and to its related entities . . . .").  Defendant's calculation ignores any money received by Fairfield Sentry prior to December 11, 2002.  *Id.* at 18.  The Court is not convinced that this is the only method of calculating customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer property because Fairfield Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

Exhibit C to the Complaint shows the subsequent transfer at issue here is the transfer made from Sentry to Defendant on March 15, 2005 in the amount of $25,763,374.  This exhibit provides Multi-Strategy with the "who, when, and how much" of each transfer.

To the extent that Defendant is worried about the Trustee recovering more than he is entitled, such a fear is unfounded.  There is no dispute that the Trustee is limited to "a single satisfaction" under § 550(a).  11 U.S.C. § 550(d).  He may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction.  § 550(a)(2) (providing that the Trustee may recover property from "any immediate or mediate transferee").  Calculation of

08-01789-cgm    Doc 22141    Filed 08/18/22    Entered 08/18/22 10:10:39    Main Document
Pg 58 of 63

12-01205-cgm    Doc 127    Filed 08/01/22    Entered 08/01/22 09:34:19    Main Document
Pg 58 of 63

12-01205-cgm    Doc 122    Filed 06/13/22    Entered 06/13/22 12:10:56    Main Document
Pg 23 of 23

whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage

of litigation.

### **Conclusion**

For the foregoing reasons, Multi-Strategy's motion to dismiss is denied.  The Trustee

shall submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

**Dated: June 13, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

# EXHIBIT C

## ADVERSARY PROCEEDINGS SUBJECT TO SECTION 546(e) DEFENSE[*]

### Adversary Proceedings Subject to Complete Dismissal
### Based on Section 546(e) Defense

| Adv. Proc. No. | Defendant(s) | Transfer Amount |
|---|---|---|
| 11-02493 | Abu Dhabi Investment Authority | ($300,000,000) |
| 11-02538 | Quilvest Finance Ltd. | (34,198,293) |
| 11-02540 | Lion Global Investors Limited | (50,583,442) |
| 11-02542 | Parson Finance Panama S.A. | (11,089,081) |
| 11-02730 | ASB Bank Corp. | (119,655,424) |
| 11-02733 | Naidot & Co. | (12,654,907) |
| 12-01002 | The Public Institution for Social Security | (20,000,000) |
| 12-01004 | Fullerton Capital PTE Ltd. | (10,290,445) |
| 12-01021 | Grosvenor Balanced Growth Fund Limited, Grosvenor Private Reserve Fund Limited, et al. | (24,815,102) |
| 12-01023 | Arden Asset Management Inc., Arden Asset Management LLC, et al. | (12,586,659) |
| 12-01047 | Koch Industries, Inc. | (21,533,871) |
| 12-01194 | Kookmin Bank | (42,010,302) |
| 12-01205 | Multi Strategy Fund Limited | (25,763,374) |
| 12-01512 | ZCM Asset Holding Co. (Bermuda) LLC | (21,247,755) |
| 12-01566 | UKFP (Asia) Nominees Limited | (5,182,320) |

———————————————

[*] Initial BLMIS-Sentry transfers from May 9, 2003 to April 13, 2006, which are outside the two-year lookback period for Section 548(a)(1)(A), are alleged by the Trustee to be the source of Sentry transfers to these defendants during the period May 14, 2003 to August 17, 2007. This exhibit includes transfers from Sentry only. It is based on the allegations in the Trustee's current complaints in the listed adversary proceedings and does not represent a concession by any defendant that the transfer dates or amounts alleged by the Trustee are accurate.

| Adv. Proc. No. | Defendant(s) | Transfer Amount |
|---|---|---|
| 12-01680 | Eurizon Low Volatility, Eurizon Medium Volatility, et al. | (11,653,515) |
| 12-01694 | Banque Cantonale Vaudoise | (9,769,927) |
| **Total** | | **($733,034,417)** |

## Other Adversary Proceedings with Initial Transfers Outside Two-Year Period

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
|---|---|---|
| 10-05346 | Merrill Lynch International | ($1,200,000) |
| 11-02149 | Banque Syz & Co., SA | (15,449,241) |
| 11-02539 | Meritz Fire & Insurance Co. Ltd. | (10,911,002) |
| 11-02551 | Delta National Bank and Trust Company | (9,045,332) |
| 11-02553 | Unifortune Asset Management SGR SpA, Unifortune Conservative Fund | (16,352,159) |
| 11-02554 | National Bank of Kuwait S.A.K. | (51,577) |
| 11-02568 | Cathay Life Insurance Co. Ltd., Cathay United Bank Ltd. | (7,953,546) |
| 11-02569 | Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to Barclays Bank S.A. | (23,834,072) |
| 11-02572 | Korea Exchange Bank | (29,583,842) |
| 11-02731 | Trincastar Corporation | (10,311,800) |
| 11-02763 | Inteligo Bank Ltd. | (6,886,095) |
| 11-02784 | Somers Dublin Limited, Somers Nominees (Far East) Limited | (6,439,891) |
| 11-02910 | Merrill Lynch Bank (Suisse) SA | (40,762,484) |
| 11-02922 | Bank Julius Baer & Co. Ltd. | (36,850,589) |
| 11-02923 | Falcon Private Bank Ltd. | (38,675,129) |

3678440.1

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
| --- | --- | --- |
| 11-02925 | Credit Suisse (Luxembourg) SA; Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse London Nominees Limited; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse Wealth Management Limited, Credit Suisse, Nassau Branch LATAM Investment Banking | (140,646,281) |
| 11-02929 | LGT Bank in Liechtenstein Ltd. | (4,466,942) |
| 12-01005 | SICO Limited | (12,721,492) |
| 12-01019 | Banco Itau Europa Luxembourg S.A. | (14,920,537) |
| 12-01022 | Crédit Agricole (Suisse) S.A. | (11,519,915) |
| 12-01046 | SNS Bank N.V., SNS Global Custody B.V. | (18,513,002) |
| 12-01048 | Banco General Valores | (5,392,148) |
| 12-01202 | Bank Vontobel, Vontobel Fund, Bank Vontobel Asset Management Inc. | (25,066,635) |
| 12-01207 | Lloyds TSB Bank PLC | (9,171,918) |
| 12-01209 | Banca Del Gottardo, BSI AG | (27,867,965) |
| 12-01210 | Schroder & Co. Bank AG | (19,985,147) |
| 12-01211 | Union Global A Fund, Union Global Fund, Union Strategy Fund | (5,728,088) |
| 12-01216 | Bank Hapoalim (Switzerland) Ltd. | (466,867) |
| 12-01565 | Standard Chartered Financial Services (Luxembourg) S.A. | (41,519,310) |
| 12-01576 | BNP Paribas S.A. | (1,695,513) |
| 12-01577 | LGT Bank (Switzerland) Ltd., UBS Europe SE | (8,043,666) |
| 12-01669 | Barfield Nominees Limited, Northern Trust Corporation | (7,684,464) |
| 12-01670 | Crédit Agricole Corporate and Investment Bank | (5,401,035) |

| *Adv. Proc. No.* | *Defendant(s) Affected* | *Transfer Amount* |
|---|---|---|
| 12-01676 | Credit Suisse AG, as successor-in-interest to Bank Leu AG; Credit Suisse AG, as successor-in-interest to Clariden Leu AG | (22,604,441) |
| 12-01677 | Lyxor Premium, SG Audace, SG Equilibrium, SG Lugano, SG Premium, SG Suisse, SG UK, SGBT, SGBT Lux/OFI, SGBT Lux/Palmares, SGBT Lux/UMR | (118,584,627) |
| 12-01690 | EFG Bank S.A., EFG Bank (Monaco) S.A.M., EFG Bank & Trust (Bahamas) Ltd. | (221,093,938) |
| 12-01693 | Banque Lombard Odier & Cie SA | (86,362,680) |
| 12-01695 | Bordier & Cie | (7,731,281) |
| 12-01697 | ABN AMRO Fund Services (Isle of Man) Nominees Limited, Platinum All Weather Fund Limited, Odyssey | (17,396,883) |
| 12-01698 | Banco Inversis, S.A., Banque Internationale à Luxembourg (Suisse) S.A., Banque Internationale à Luxembourg S.A., RBC Investor Services Bank S.A. | (56,807,645) |
| 12-01699 | Guernroy Limited; Royal Bank of Canada; Royal Bank of Canada (Asia) Limited; RBC Dominion Securities Inc.; RBC Trust Company (Jersey) Limited; Banque Syz S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A. | (20,743,042) |
| **Total** | | **($1,166,442,221)** |

3678440.1