Michael S. Feldberg
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
*mfeldberg@reichmanjorgensen.com*
750 Third Avenue, Suite 2400
New York, NY 10017
Tel.: (212) 381-4970

*Attorney for Defendant NatWest Markets, N.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | **ORAL ARGUMENT REQUESTED** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABN AMRO BANK N.V. (presently known as NATWEST MARKETS N.V.),<br><br>Defendant. | Adv. Pro. No. 10-05354 (CGM)<br>Adv. Pro. No. 11-02760 (CGM) |

**REPLY IN FURTHER SUPPORT OF**
**NATWEST MARKETS N.V.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

I.  The Trustee Has Failed To Plausibly Tie The Money Received By NatWest To "Initial Transfers" Out Of BLMIS. .................................................................. 1

II.  All Claims to "Recover" Collateral Payments Should Be Dismissed Because NatWest Has Already "Returned" That Money, So The BLMIS Estate Was Not Diminished. .................................................................................. 6

III.  The Section 546(g) And 546(e) Safe Harbors Preclude Recovery Of Any Transfers Made Outside The Two-Year Lookback Period. ................................... 10

    A.  The District Court Has Already Ruled That The 546(g) Safe Harbor Applies. ................................................................................................. 10

    B.  The 546(e) Safe Harbor Applies Because The Trustee Fails To Allege That NatWest Had Actual Knowledge Of The Ponzi Scheme...... 11

        1.  Tremont's Knowledge Of A Ponzi Scheme Is Irrelevant To A 546(e) Safe Harbor Analysis. ................................................... 11

        2.  The Trustee Fails To Adequately Allege That Tremont Had Actual Knowledge. .......................................................................... 12

    C.  The Alleged XL Portfolio Limited Collateral Payments Are Also Not Recoverable.............................................................................................. 14

IV.  The Trustee Has Failed To Plead The Necessary Fraudulent Intent. ................... 15

    A.  There Are Compelling Reasons Not To Apply The Ponzi Scheme Presumption. .............................................................................................. 16

    B.  If The Ponzi Scheme Presumption Does Not Apply, The Trustee Has Not Adequately Alleged Fraudulent Intent Through Its "Badges of Fraud" Theory.......................................................................................... 17

    C.  Even If The Ponzi Scheme Presumption Applies, The Trustee Has Not Adequately Alleged Fraudulent Intent............................................... 18

V.  The Complaint Establishes the Good Faith Defense as a Matter of Law. ............ 18

VI.  Conclusion ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................................19

*Balaber-Strauss v. Harrison (In re Murphy),*
331 B.R. 107 (Bankr. S.D.N.Y. 2005)........................................................................7

*Bear, Stearns Sec. Corp. v. Gredd,*
275 B.R. 190 (S.D.N.Y. 2002)..............................................................................7, 9

*Begier v. I.R.S.,*
496 U.S. 53 (1990).......................................................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC,*
No. 08-99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015).............13, 14

*In re BLMIS, LLC ("ABN Ireland"),*
2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...........................................................19

*Grant v. County of Erie,*
542 Fed. Appx. 21 (2d Cir. 2013)...............................................................................5

*Johnson v. Holder,*
564 F.3d 95 (2d Cir. 2009).........................................................................................16

*Jones v. Bock,*
549 U.S. 199 (2007).....................................................................................................19

*In re Lyondell Chem. Co.,*
554 B.R. 635 (S.D.N.Y. 2016)...................................................................................17

*MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co.,*
910 F. Supp. 913 (S.D.N.Y. 1995) ...........................................................................17

*Orr v. Kinderhill Corp.,*
991 F.2d 31 (2d Cir. 1993)...........................................................................................7

*In re Panepinto,*
487 B.R. 370 (Bankr. W.D.N.Y. 2013) ....................................................................10

*Pani v. Empire Blue Cross Blue Shield,*
152 F.3d 67 (2d Cir. 1998)..........................................................................................18

*Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS)*,
    505 B.R. 135 (S.D.N.Y. 2013)..............................................................................11

*Picard v. Banca Carige S.P.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 11-02570, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) .....................3

*Picard v. Banque Cantonale Vaudoise (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 12-01694, 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ......................3

*Picard v. Banque Lombard Odier & Cie SA (SIPC v. Bernard L. Madoff Inv. Sec.
    LLC)*,
    No. 12-01693, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) .....................3

*Picard v. Banque SYZ & Co., SA (In re Bernard L Madoff Inv. Sec. LLC)*,
    No. 11-02149, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ...............4, 19

*Picard v. Barclays Bank (Suisee) S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 11-02569, 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) .................3, 12

*Picard v. Bordier & Cie (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 12-01695, 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) .....................3

*Picard v. Charles Ellerin Revocable Trust (In re Bernard L Madoff Inv. Sec.
    LLC)*,
    No. 10-04398, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ......................4

*Picard v. First Gulf Bank*,
    No. 11-02541, ECF No. 100 (Bankr. S.D.N.Y. July 18, 2022) ...............................3

*Picard v. Gettinger*,
    976 F.3d 184 (2d Cir. 2020)...................................................................................15

*Picard v. JABA Assocs. LP (In re BLMIS)*,
    528 F.Supp.3d 219 (S.D.N.Y. Mar. 24, 2021) ......................................................17

*Picard v. Lisa Beth Nissenbaum Tr. (In re BLMIS)*,
    2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) .......................................................17

*Picard v. Lloyds TSB Bank PLC (In re Bernard L Madoff Inv. Sec. LLC)*,
    No. 12-01207, 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) .....................4

*Picard v. Lustig (In re BLMIS)*,
    568 B.R. 481 (Bankr. S.D.N.Y. 2017)...............................................................4, 10

*Picard v. Meritz Fire & Marine Insurance Co. LTD.*,
    No. 11-02539 (Bankr. S.D.N.Y. Aug. 10, 2022) ....................................................3

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L Madoff Inv. Sec. LLC)*,
    No. 12-01205, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ..................................4, 5

*Picard v. Nelson (In re BLMIS)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ...............................................................17, 18

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)..................................................................4, 5

*Picard v. Union Securities Investment Trust, Co., Ltd.*,
    No. 12-01211 (Bankr. S.D.N.Y. Aug. 18, 2022) ...............................................3, 12

*Schneider v. Barnard*,
    508 B.R. 533, 542 (E.D.N.Y. 2014) ....................................................................16

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)........................................14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..............................11, 12

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)..............................................................................15, 18

*Sullivan v. Stroop*,
    496 U.S. 478 (1990)...........................................................................................7

*In re Trib. Co. Fraudulent Conv. Litig.*,
    No. 11-MD-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017), *aff'd*, 10
    F.4th 147 (2d Cir. 2021) ..................................................................................17

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002)..............................................................................16

*In re Waterford Wedgwood USA, Inc.*,
    500 B.R. 371 (Bankr. S.D.N.Y. 2013) ..................................................................9

**Federal Statutes**

11 U.S.C. § 544.............................................................................................................11

11 U.S.C. § 546(e) ......................................................................................................11

11 U.S.C. § 546(g) ......................................................................................................10

11 U.S.C. § 548(a)(1)(A) ................................................................................... *passim*

Bankruptcy Code § 547 ..................................................................................................7

**Rules**

Federal Rule of Civil Procedure § 9(b)........................................................................15

Federal Rule of Civil Procedure § 12(b)(6) ..................................................................1

Federal Rules of Bankruptcy Procedure Rule 7012(b) ..................................................1

Rule 9(b) ................................................................................................................15, 16

Rule 12(b)(6)....................................................................................................3, 18, 19

Defendant NatWest Markets N.V. (formerly known as ABN AMRO Bank N.V.) ("NatWest")[1] respectfully submits this Reply in further support of its Motion pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure and Federal Rule of Civil Procedure § 12(b)(6) to dismiss the Consolidated Second Amended Complaint ("Complaint"), No. 10-05354, Dkt. 223, filed by plaintiff Irving H. Picard, Trustee ("Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Bernard L. Madoff ("Madoff") Estate.

In its Memorandum of Law in Support of NatWest Markets N.V.'s Motion to Dismiss ("Memo"), NatWest explained the fatal flaws in the Complaint. Rather than truly engage with these flaws, the Trustee mostly points to other cases involving different transfers and different defendants. But the Trustee spends little space arguing why those cases are comparable. They are not. As this Brief explains, in this case, the Trustee's allegations (involving unique "collateral payments" that were immediately returned to BLMIS), the entities involved (different funds), and NatWest's arguments (based on the Complaint in this action rather than complaints across many other actions) are all different than those in the cases to which the Trustee points.

## I.    The Trustee Has Failed To Plausibly Tie The Money Received By NatWest To "Initial Transfers" Out Of BLMIS.

The Complaint fails to plausibly allege that NatWest received "subsequent transfers" of BLMIS customer property. The Trustee's arguments to the contrary are unavailing and avoid addressing the implausibility of the Complaint's conclusory allegations.

Preliminarily, the Trustee claims that the Court has already rejected "this type" of argument

---

[1]    After the events at issue in this litigation, ABN AMRO Bank N.V., a financial institution organized under laws of the Netherlands, was renamed The Royal Bank of Scotland N.V. and was later renamed again as NatWest Markets N.V. To avoid confusion with defendants in other Madoff adversary proceedings with similar names, "Defendant" or "NatWest" has been used throughout.

raised by several defendants who invested in Fairfield funds. Trustee's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Dkt. 226 ("Opp.") at 11. But this adversary proceeding is very different than any that have come before this Court to date, and the Fairfield defendants raised a different argument than what NatWest is arguing here.

One reason why this case is so different is that the Trustee is seeking "collateral payments" that NatWest received from funds called the XL Funds in connection with swap deals. According to the Trustee's complaint, the XL Funds were investing *their* investors' money (not BLMIS money) in swap deals. But now in his brief, the Trustee says that when he alleged that "the XL Funds issued private placement memoranda to attract potential investors to invest in swap deals" he did not mean that "the money it used to fund its collateral payments to Defendant came from any such private investors." Opp. at 14. But the Trustee's allegations—as opposed to the Trustee's lawyer arguments—give every reason to think that the money transferred by the XL Funds to NatWest came from those investors rather than BLMIS.

This is why the Trustee cannot allege, in even the most conclusory fashion, that the collateral payments came from BLMIS. NatWest explained in its opening brief that the "Trustee has carefully omitted even a conclusory allegation that the $84.6 million that he seeks to recover as the 'XL Portfolio Limited Subsequent Transfers' ever passed from the XL Funds to NatWest," instead defining the transfers he seeks to recover as "the $84.6 million that *the XL Funds received from the Rye Feeder Funds*." NatWest's Memorandum of Law in Support of Its Motion to Dismiss ("Memo") at 9 (citing Compl. ¶ 202). The Trustee offers no response. Instead, he focuses on justifying a footnote in the Complaint in which he admitted that he lacked a factual basis for his conclusions, arguing that "the Trustee is not required to plead all subsequent transfers to survive a motion to dismiss, but, rather, it is enough that some of them are

sufficiently pleaded." Opp. at 15-16 (discussing Compl. ¶ 202 n.1). But this does nothing to save

the Complaint's allegations regarding the "XL Portfolio Limited Subsequent Transfers"; the

Complaint simply does not allege that they passed to NatWest. Memo at 9 (citing Compl. ¶ 202).

Likewise, NatWest pointed out, and the Trustee fails to address, the fact that the Complaint does

not offer any non-conclusory allegation that the Rye Feeder Funds and Harley funded

redemptions with customer property from BLMIS. Memo at 11.

Another reason this case is so different is that the Fairfield defendants advanced arguments

based on calculations derived from looking at all of the Fairfield complaints. Their argument

would require this Court "to consider allegations made in 90 other complaints filed by the

Trustee in this SIPA proceeding." *Picard v. Banque Lombard Odier & Cie SA* (*SIPC v. Bernard*

*L. Madoff Inv. Sec. LLC*), No. 12-01693, 2022 WL 2387523, at *11 (Bankr. S.D.N.Y. June 30,

2022).[2] And the Court explained that complaints that have not been adopted by reference "are

not within the Court's power to consider on a Rule 12(b)(6) motion." *Id.*

---

[2]    *See also* Amended Mem. Decision at *22, *Picard v. Union Securities Investment Trust,
Co., Ltd.*, No. 12-01211 (Bankr. S.D.N.Y. Aug. 18, 2022) ("To consider allegations made in 70+
other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at
this stage of the litigation"); Mem. Decision at *22, *Picard v. Meritz Fire & Marine Insurance
Co. LTD.*, No. 11-02539 (Bankr. S.D.N.Y. Aug. 10, 2022) ("To consider allegations made in 90
other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at
this stage of the litigation."); Mem. Decision at *13, *Picard v. First Gulf Bank*, No. 11-02541,
ECF No. 100 (Bankr. S.D.N.Y. July 18, 2022) ("To consider allegations made in 90 other
complaints filed by the Trustee in this SIPA proceeding is impractical…"); *Picard v. Barclays
Bank (Suisee) S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 11-02569, 2022 WL 2799924,
at *4 (Bankr. S.D.N.Y. July 15, 2022) ("The Defendants find it implausible that the $3 billion of
funds transferred from BLMIS could have resulted in the approximately $5 billion that the
Trustee seeks to recover from all subsequent transferees."); *Picard v. Banque Cantonale
Vaudoise (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12-01694, 2022 WL 2761044, at *6
(Bankr. S.D.N.Y. July 14, 2022) ("Defendants ask this Court to consider allegations made in 90+
other complaints filed by the Trustee in this SIPA proceeding."); *Picard v. Bordier & Cie (In re
Bernard L. Madoff Inv. Sec. LLC)*, No. 12-01695, 2022 WL 2390556, at *7 (Bankr. S.D.N.Y.
June 30, 2022) (similar); *Picard v. Banca Carige S.P.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,

NatWest explained in its motion that the Complaint in this action does not allege a pathway by which NatWest received "subsequent transfers" of BLMIS customer property. Memo at 7-13. There is no need to refer to any other complaints. The Complaint in this case, on its face, fails to plausibly allege that NatWest received subsequent transfers of BLMIS property.

The Trustee argues that he has no obligation to offer an explanation that passes the smell test for why the funds at issue were "subsequent transfers," claiming that "[n]o tracing analysis is required," Opp. at 11, and that this can all be worked out later once the Trustee has poked around NatWest's files for a while. Opp. at 17-18. But the cases on which the Trustee relies do not relieve him of his burden to plausibly allege subsequent transfers. In fact, they lay out the same standard that NatWest provided in its brief. *Compare* Memo at 7 *with* Opp. at 11. The Trustee "must allege facts that support the inference that the funds at issue originated with BLMIS, and contain the necessary vital statistics—the who, when, and how much of the transfers to establish that an entity was a subsequent transferee of the funds." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (quotations omitted). And a complaint must "tie [an] initial transfer to any subsequent transfer or Subsequent Transferee." *Id.*

The Trustee's cases are not to the contrary. *See, e.g.*, *Picard v. Charles Ellerin Revocable Trust (In re Bernard L Madoff Inv. Sec. LLC)*, No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) (Trustee must "allege sufficient facts to show the relevant pathways through which the funds were transferred"). For example, in *Picard v. Merkin (In re BLMIS)*, on

---

No. 11-02570, 2022 WL 2387522, at *7 (Bankr. S.D.N.Y. June 30, 2022) (similar); *Picard v. Lloyds TSB Bank PLC (In re Bernard L Madoff Inv. Sec. LLC)*, No. 12-01207, 2022 WL 2390551, at *6 (Bankr. S.D.N.Y. June 30, 2022). (similar); *Picard v. Banque SYZ & Co., SA (In re Bernard L Madoff Inv. Sec. LLC)*, No. 11-02149, 2022 WL 2135019, at *12 (Bankr. S.D.N.Y. June 14, 2022) (similar); *Picard v. Multi-Strategy Fund Ltd. (In re Bernard L Madoff Inv. Sec. LLC)*, No. 12-01205, 2022 WL 2137073, at *10-11 (Bankr. S.D.N.Y. June 13, 2022) (similar).

which the Trustee relies, the Court considered the time between alleged initial and subsequent

transfers. 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("[S]everal subsequent transfers took place

contemporaneously or shortly after an initial transfer…implying linkage."); *id.* at 151 ("Certain

other alleged subsequent transfers…were still sufficiently close to support the inference that a

portion of the subsequent transfer originated with BLMIS."). While the Court found that the

complaint there sufficiently alleged subsequent transfers, it did so after engaging in exactly the

type of analysis the Trustee says is inappropriate. Similarly, the Trustee's attempt to distinguish

*Shapiro* fails. It is not enough to allege some dates or amounts of transfers if the complaint does

not tie an initial transfer to a supposed "subsequent transfer." *Shapiro*, 542 B.R. at 119.

Having claimed that he need not plausibly allege that NatWest received subsequent transfers,

the Trustee dismisses the inadequacies of his complaint as "factual issue[s]." Opp. at 14. But

pointing out that the Trustee's arguments are conclusory or inconsistent is the purpose of a

motion to dismiss. *See Grant v. County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013) (court need

not accept as true "a claim [that] is based on wholly conclusory and inconsistent allegations").

The flaws in the Trustee's approach are highlighted by his failure to grapple with the

physical impossibility of his allegations regarding $32,330,373 of the XL Portfolio transfers. The

Complaint alleges that XL Portfolio received roughly $84.6 million of transfers from BLMIS

feeder funds, which the Trustee is attempting to recover from NatWest. Compl. ¶¶ 200-02. But

the Complaint's own allegations show that $32,330,373 of the transfers to XL Portfolio post-date

the last transfer from XL Portfolio to NatWest. *See* Compl. Exs. P, K, N. The Trustee's response

is to wave his hands and compare this to the "very intricate factual argument" made by some of

the Fairfield defendants. Opp. at 15 (quoting *Multi-Strategy*, 2022 WL 2137073, at *10). But

there is nothing particularly intricate about pointing out physical impossibility apparent on the

face of the complaint.[3] Moreover, even cases on which the Trustee relies show that this is an appropriate matter to consider on a motion to dismiss. *See Merkin*, 515 B.R. at 151 (considering whether the alleged subsequent transfer took place after an alleged initial transfer but finding it unnecessary to resolve because of other alleged initial transfers).

Finally, the Trustee falls back on the idea that equitable principles are relevant to the tracing analysis. Opp. at 18. But "equity" is not a get-out-of-jail-free card freeing the Trustee from the need to adequately plead the existence of subsequent transfers.

## II. All Claims to "Recover" Collateral Payments Should Be Dismissed Because NatWest Has Already "Returned" That Money, So The BLMIS Estate Was Not Diminished.

NatWest's Motion to Dismiss should be granted with respect to the collateral payments for the simple reason that, according to the Trustee's own allegations, NatWest immediately transferred that money back to BLMIS in order to hedge the swap transactions. The Trustee argues in his Opposition that this argument amounts to a "a thinly-veiled 'diminution of the estate' claim." Opp. at 19. This is incorrect: there is no veil at all. The lack of any diminution of the debtor's estate is precisely what the Complaint itself alleges. As the Trustee concedes in his Opposition: "Defendant hedged its risk under the Tremont transactions by investing three times the value of the collateral it received from the XL Funds in the Rye Funds, which invested Defendant's funds with BLMIS." Opp. at 7. Thus, NatWest returned to BLMIS three times the collateral it received.

To avail itself of Section 548(a)(1)(A), the Trustee must show that there is "an interest of the debtor in [the] property" that is the subject of the claimed avoidance. 11 U.S.C. § 548(a)(1)(A).

---

[3]    Many of the transfers into XL Broad Market that the Trustee lists post date the last transfer out of XL Broad Market and thus could not possibly serve as the basis for recovering money from NatWest. Memo at 10 n.4.

"[A]n interest of the debtor in property" means "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58, 59 n.3 (1990).[4] Where, as here, a transfer had no effect on the debtor's estate, there is no such interest. *Balaber-Strauss v. Harrison (In re Murphy)*, 331 B.R. 107, 124 (Bankr. S.D.N.Y. 2005) ("The purpose of… Section 548 is to prevent harm to creditors by a transfer of property from the debtor."); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 36 (2d Cir. 1993) (The "real test of a fraudulent conveyance… is the unjust diminution of the debtor's estate.") (internal citations omitted).

In *Bear, Stearns Sec. Corp. v. Gredd*, on which the Trustee relies, the District Court granted a motion to dismiss for precisely the reasons that NatWest sets out in its Memorandum of Law: a transfer did not affect the estate, so there was no "interest of the debtor in property." 275 B.R. 190, 196 (S.D.N.Y. 2002); 11 U.S.C. § 548(a)(1)(A). There, the District Court held that "the transferee must demonstrate to the satisfaction of the court that the transfer did not (1) reduce the res that would have been available to any creditor or creditors, (2) hinder, delay, or defraud any creditor or creditors, nor (3) have any other adverse impact on any creditor or creditors generally." *Id.* at 196 (internal quotations omitted). It further reasoned that these questions can be resolved at the motion to dismiss stage without factual development beyond the face of the complaint. *Id*.

Contrary to the Trustee's claims in his Opposition, NatWest satisfies all three elements. Citing directly to the Trustee's own allegations in his Complaint, NatWest demonstrates that the

---

[4]      *Begier* considered Section 547 of the Bankruptcy Code, not Section 548. But courts have extended that definition to identical language in Section 548. *Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 194 (S.D.N.Y. 2002); *see also Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (A "normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning.").

collateral transfers that are the subject of the Complaint did not reduce the res, hinder creditors, or in any way adversely impact creditors' recovery because those funds were immediately returned to BLMIS through the Rye Feeder Funds. Memo at 13 (citing Compl. ¶¶ 7, 39, 202, 207). Failure to recognize that fact is also in tension with the "Net Investment Method," because it would fail to account for the net result of the transactions at issue.

According to the logic of the Trustee's allegations about the 2006 Tremont Transaction, for example, NatWest actually *increased* the BLMIS res by $461,919,427. The Complaint alleges that two different Rye Funds transferred at least $84,616,573 in customer property to XL Portfolio Limited, and assumes that XL Portfolio used that money to fund $217,000,000 in collateral payments to NatWest. Compl. ¶¶ 200-202 (citing Compl. Exs. K, N). But, as the Trustee himself alleges, NatWest then invested that money–the alleged BLMIS money at issue in this litigation– right back into BLMIS: specifically NatWest invested $651,000,000 in Rye Portfolio Limited, which, in turn, put it back in BLMIS. Compl. ¶ 7. In short, after the transfers that the Complaint alleges were resolved, the BLMIS estate was enlarged—not diminished. Indeed, even after the alleged redemption of $104,464,000, BLMIS would have had $461,919,427 more than it did before the transfers. Compl. ¶ 203.

| Alleged Transfer | Alleged Amount | Alleged Status Of BLMIS Res After Transfer |
|---|---|---|
| BLMIS → Rye Funds | $84,616,573 | -$84,616,573.00 |
| Rye Funds → XL Portfolio Limited | $84,616,573 | -$84,616,573.00 |
| XL Portfolio Limited → NatWest | $217,000,000 | -$84,616,573.00 |
| NatWest → Rye Portfolio Limited | $651,000,000 | -$84,616,573.00 |
| Rye Portfolio Limited → BLMIS | $651,000,000 | +$566,383,427 |
| BLMIS → Rye Portfolio Limited | $104,464,000 | +$461,919,427 |
| Rye Portfolio Limited → NatWest | $104,464,000 | +$461,919,427 |

Same for the Trustee's allegations about the 2007 transaction. There, the Complaint alleges that two different Rye Funds transferred at least $95,833,333 in BLMIS customer property to XL

Broad Market. Compl. ¶ 200, 201. It then assumes that money was included in a later transfer

from XL Broad Market to NatWest. Compl. ¶ 207. But, as with the 2006 transaction, the Trustee

alleges that NatWest then reinvested that money—plus an additional $191,666,666 of NatWest's

own money—back into BLMIS. Compl. ¶¶ 7, 208. After factoring in the alleged $1,400,000

redemption, the Trustee's own allegations assert that the BLMIS estate ended up with

$190,266,666 more than it had before the transfers. Compl. ¶ 208.

| Alleged Transfer | Alleged Amount | Alleged Status Of BLMIS Res After Transfer |
|---|---|---|
| BLMIS → Rye Funds | $95,833,333 | -$95,833,333.00 |
| Rye Funds → XL Portfolio Limited | $95,833,333 | -$95,833,333.00 |
| XL Portfolio Limited → NatWest | $95,833,333 | -$95,833,333.00 |
| NatWest → Rye Portfolio Limited | $287,499,999 | -$95,833,333.00 |
| Rye Portfolio Limited → BLMIS | $287,499,999 | +$191,666,666 |
| BLMIS → Rye Portfolio Limited | $1,400,000 | +$190,266,666 |
| Rye Portfolio Limited → NatWest | $1,400,000 | +$190,266,666 |

The Trustee's only response is that a different Rye Feeder Fund may have returned the funds

to BLMIS than the Fund that originally received them from BLMIS. For instance, the Complaint

alleges that NatWest provided all the collateral it received from XL Broad Market and XL

Portfolio Limited to Rye Broad Market, which then returned the funds to BLMIS. Compl.

¶¶ 203, 208. The fact that for some portion of the collateral Rye Feeder Funds other than Rye

Broad Market provided the initial transfers to XL Broad Market, Compl. ¶¶ 200, 201, 206, is

irrelevant. The only question that a diminution of the estate argument raises is whether the

debtor's estate was adversely affected by a transfer such that "an interest of the debtor in

property" is created. *Bear, Stearns*, 275 B.R. at 196; 11 U.S.C.A. 548(a)(1)(A). On the face of

the Complaint, BLMIS' estate was not adversely affected at all by the 2006 or 2007 Tremont

transactions because these funds were all returned to BLMIS. The path that the funds took before

being returned is immaterial. *In re Waterford Wedgwood USA, Inc.*, 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013) ("In essence, the Court may consider the net effect of a multi-step transaction."); *In re Panepinto*, 487 B.R. 370, 371 n.2 (Bankr. W.D.N.Y. 2013) (Section 548 looks only "at the impact of pre-petition transfers upon the eventual bankruptcy estate.").

Nor does the Trustee's citation to *Picard v. Lustig (In re BLMIS)* compel a different conclusion. Opp. at 20-21; 568 B.R. 481 (Bankr. S.D.N.Y. 2017). *Lustig* involved a motion to dismiss that was rooted in Bankruptcy Code Sections 550(d) and 105(a). The defendant in *Lustig* did not make a diminution of the estate argument and the court did not consider diminution of the estate in making its ruling. *Lustig* is therefore inapposite.[5]

### III. The Section 546(g) And 546(e) Safe Harbors Preclude Recovery Of Any Transfers Made Outside The Two-Year Lookback Period.

Under Section 548(a)(1)(A), trustees may only avoid transfers that were "made or incurred on or within two years before the date of the filing of the petition." Where 548(a)(1)(A) does not apply, the so-called "safe harbor provisions" can bar recovery. For the reasons NatWest explained in its Memorandum of Law, the Section 546 safe harbors apply here. That means that at a minimum, the Trustee may only recover under Section 548's two-year lookback period. But because Section 548 is inapplicable for the reasons explained elsewhere in NatWest's memo and this reply, *see* Memo at (6-14, 25-32), the Trustee may not recover any of the transfers.

#### A. The District Court Has Already Ruled That The 546(g) Safe Harbor Applies.

As the Trustee notes, the applicability of Section 546(g) to redemption payments has already been litigated and decided, and he is therefore unable to recover those payments except under Section 548(a)(1)(A). 11 U.S.C. § 546(g). The district court explained that "[b]ecause these

---

[5]    Even following the Trustee's logic, the Court should nevertheless grant NatWest's Motion to the extent that it applies to the $48,387,616 that the Trustee alleges both originated from Rye Broad Market and that NatWest later reinvested in Rye Broad Market. Compl. ¶ 205.

transfers may be avoidable under section 548(a)(1)(A), the Court cannot dismiss these counts;
however, the Trustee is nonetheless precluded from proving the avoidability of these transfers
under any other avoidance provision, including provisions of New York state law as incorporated
through 11 U.S.C. § 544." *Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS)*, 505 B.R.
135, 151 (S.D.N.Y. 2013) ("*ABN AMRO*").

For the September 4, 2007 $25 million redemption payment from Rye Portfolio Limited, this
is fatal. All transfers from BLMIS to Rye Portfolio Limited either occurred more than two years
prior to the filing date, and therefore fall outside the scope of Section 548(a)(1)(A), or occurred
*after* the September 4, 2007 redemption and therefore could not have been the source of that
transfer. Memo at 23.



### B. The 546(e) Safe Harbor Applies Because The Trustee Fails To Allege That NatWest Had Actual Knowledge Of The Ponzi Scheme.

#### 1. Tremont's Knowledge Of A Ponzi Scheme Is Irrelevant To A 546(e) Safe Harbor Analysis.

Similarly, in this litigation courts have already held that BLMIS transfers meet the criteria of
Section 546(e). *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 JSR,
2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"); *ABN AMRO*, 505 B.R. at

140; *see also* Memo at 15-19; 11 U.S.C. § 546(e). The Trustee's main argument is to rely on *Cohmad II*'s atextual limitations on the applicability of Section 546(e). *See* Opp. at 23-24 (relying on *Cohmad II*). That case allows the Trustee to escape application of the safe harbor if the *defendant* had actual knowledge of fraud.

The Trustee argues that NatWest is not protected by 546(e) because Tremont had knowledge of the Ponzi scheme. But an initial transferee's knowledge of a Ponzi scheme is irrelevant to a 546(e) safe harbor analysis where the defendant is a subsequent transferee.[6] The only relevant question is whether the alleged subsequent transferee had actual knowledge of the fraud. *Cohmad II*, 2013 WL 1609154, at *7 ("In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover* a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.") (emphasis added). Thus, the safe harbor bars recovery from NatWest because the Trustee does not allege that NatWest—"the transferee from whom he seeks to recover"—had actual knowledge.

### 2. The Trustee Fails To Adequately Allege That Tremont Had Actual Knowledge.

Even if the initial transferee's knowledge could render Section 546(e) inapplicable to a subsequent transferee, the Trustee fails to adequately allege that Tremont had actual knowledge. In this litigation courts have repeatedly held that the Trustee must allege actual knowledge— willful blindness is not enough. *Cohmad II*, 2013 WL 1609154, at *10 n. 2 ("While in some contexts 'willful blindness' is sufficient to substitute for actual knowledge, this is not such a context[.]"). At most, the facts that the Trustee alleges constitute only willful blindness.

Indeed, the Court has already dismissed complaints for failing to allege actual knowledge

---

[6]    Although NatWest understands that the Court has held otherwise, it would respectfully urge the Court to reconsider its ruling. *E.g.* Mem. Decision at *16-17, *Picard v. Union Securities Investment Trust Co., Ltd*., No. 12-01211 (Bankr. S.D.N.Y. Aug. 18, 2022).

even where the allegations were far more extensive than those in the instant case. In *In re Bernard L. Madoff Inv. Sec. LLC* ("*Merkin*"), the Court considered allegations that involved closer ties than in this case,[7] more robust allegations about the defendant's knowledge of the fraud,[8] and stronger claims about the information to which the defendant had access.[9] 515 B.R. 117 (Bankr. S.D.N.Y. 2014). There, the Court concluded that the Trustee's allegations showed only the "strong suspicion but some level of doubt or uncertainty of the existence of a fact and the deliberate failure to acquire actual knowledge of its existence" that is characteristic of willful blindness, but not the "high level of certainty and the absence of any substantial doubt regarding the existence of a fact" that constitutes actual knowledge. *Id*. at 138-140. The Trustee's allegations against Tremont are dwarfed by the allegations against Merkin, which the Court deemed insufficient to demonstrate actual knowledge.

In response, the Trustee points to *Kingate* and the Fairfield cases. Opp. at 25, 27-28. Neither is analogous to this case. In *Kingate*, the court distinguished *Merkin* on the basis that the *Kingate*

---

[7]     *Compare* Opp. at 25 ("chief executives had longstanding, unusually close relationships with Madoff for almost two decades.") *with Merkin*, 515 B.R. at 128 (cataloging allegations that Merkin had been investing with Madoff for decades, Merkin claimed to be a fiduciary to Madoff's children, Madoff attended the bar and bat mitzvahs of Merkin's children, and Merkin met with Madoff at BLMIS).

[8]     *Compare* Opp. at 25 ("Tremont was continually confronted with warnings from investors and potential investors indicating that BLMIS was a fraud . . . Another investor specifically raised the prospect that BLMIS was a Ponzi scheme.") *with Merkin*, 515 B.R. at 129 ("Merkin knew that BLMIS could not have been legitimately engaged in the trading activity it reported, the trades were a fraud, and Madoff was running a Ponzi scheme . . . Merkin told [a research company] that Madoff's scheme was bigger than Ponzi, and 'Charles Ponze [sic] would lose out because it would be called the Madoff Scheme.'").

[9]     *Compare* Opp. at 26 ("Tremont also knew BLMIS had a history of impossibly consistent positive returns") *with Merkin*, 515 B.R. at 129 ("Merkin knew that the volume of daily put and call options BLMIS supposedly bought and sold for the Defendant Funds exceeded the daily volume of the Chicago Board Options Exchange ("CBOE") and were impossible, and demonstrated that BLMIS was not actually making the trades represented on the trade confirmations provided to Merkin.").

defendant "actually believed that BLMIS was a Ponzi scheme," rather than merely strongly

suspecting that that was the case. *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-99000, 2015

WL 4734749, at *15 (Bankr. S.D.N.Y. Aug. 11, 2015) ("*Kingate*"). Unlike in *Kingate*, though,

the Trustee in this case does not allege that Tremont "actively reviewed the impossible

transactions reported by Madoff in the Funds' accounts" and intimidated those seeking to

investigate Madoff, only that Tremont had information that the trades were impossible. *Compare

id.*, at *15 *with Merkin*, 515 B.R. at 129. The Fairfield cases are also inapposite. The Fairfield

complaint alleged that defendants "learned that Madoff was not adhering to the spilt strike

strategy," "lied to the SEC to assist Madoff in covering up his fraud," and lied to clients to

protect the Ponzi scheme after conducting thorough investigations of BLMIS yielding evidence

of the fraud. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, 2021 WL

3477479, at *7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Trustee makes no similar allegations here.

### C. The Alleged XL Portfolio Limited Collateral Payments Are Also Not Recoverable.

None of the transfers from XL Portfolio Limited to NatWest can be traced to an avoidable

initial transfer. The first three transfers from XL Portfolio Limited to NatWest are alleged to

have been made more than two years prior to the filing date of this action and, so, fall outside of

Section 548(a)(1)(A)'s two-year recovery window. Ex. P. For the remaining transfers, the

Trustee does not allege that any of them were preceded by an initial transfer from BLMIS made

within the two-year window. Instead, as the timeline below illustrates, the only alleged transfers

from BLMIS to Rye Portfolio Limited within the two-year window occurred *after* the alleged

transfers from XL Portfolio Limited to NatWest. Exs. P, M, N. Section 548(a)(1)(A) does not

permit avoidance of these alleged transfers from XL Portfolio Limited to NatWest because the

Trustee cannot connect them to any avoidable initial transfer. And recovery under any other provision is barred by Section 546(e).



### IV. The Trustee Has Failed To Plead The Necessary Fraudulent Intent.

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted." 11 U.S.C. § 548(a)(1)(A). Such intent "must be pled with specificity, as required by Fed. R. Civ. P. § 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted).[10] As to the alleged "Rye Broad Market Two Year Transfers," "Rye Prime

---

[10]     The Trustee attempts to argue for a lesser pleading standard and distinguish *Sharp* by citing to *Picard v. Gettinger*, 976 F.3d 184, 200 (2d Cir. 2020). Opp. at 35 n. 11. But the language in *Gettinger* that the Trustee cites has nothing to do with the Rule 9(b) pleading standard. Instead, *Gettinger* distinguished the application of the "for value" defense in a bankruptcy liquidation from a SIPA liquidation. *Id.* It did nothing to alter Rule 9(b)'s heightened standard.

Fund Two Year Transfers," "Rye Portfolio Limited Two Year Transfers," "Rye Insurance LDC

Two Year Transfers," or "Harley Two Year Initial Transfers;" the Complaint makes no such

specific allegations. In lieu of satisfying the Rule 9(b) pleading standard, the Trustee points to

two legal constructs: the "Ponzi scheme presumption" and the "badges of fraud" theory of actual

intent. Opp. at 29, 35-38. Neither is availing.

### A.   There Are Compelling Reasons Not To Apply The Ponzi Scheme Presumption.

Because the Ponzi scheme presumption is unmoored from both the text and intent of Section

548(a)(1)(A) and undermines Rule 9(b), the Court should decline to follow the Trustee's request

to apply that presumption here. NatWest's Memorandum of Law sets out several of these flaws,

Memo at 28-29, and identifies a growing volume of case law that affirms the importance of

considering transfers individually and rejects the notion that when some transfers may have been

fraudulent, courts should presume that all were. Memo at 27 n. 14 (collecting cases).

In response, the Trustee attempts to downplay the presumption as a bounded rule that "is

limited to transfers related to or in furtherance of the Ponzi scheme." Opp. at 30. But this is not

really a limitation. In *Schneider v. Barnard*, on which the trustee relies, the court applied a broad

definition of the presumption, explaining that "transfers made by a Ponzi entity are presumed to

have been made with actual intent." 508 B.R. 533, 542 (E.D.N.Y. 2014). Indeed, in *Schneider*,

the court noted "the sweeping language in some decisions concerning the scope of the Ponzi

scheme presumption." *Id*. Given the broad scope of the presumption that the Trustee seeks to

invoke, a scope that stands in sharp contrast to the mandate of Section 548(a)(1)(A) that the

Trustee plead that "each transfer" was made with "actual intent to hinder, delay or defraud", it is

cold comfort that the Trustee also assures the court that it "may be rebutted." Opp. at 31.

The Trustee then falls back on the "law of the case" doctrine. Opp. at 32-33. But the Court

"may depart from the law of the case for 'cogent' or 'compelling' reasons[.]'" *Johnson v.*

*Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (citing *United States v. Quintieri*, 306 F.3d 1217,

1230 (2d Cir. 2002). For the reasons detailed in its Memorandum of Law, NatWest respectfully

urges the Court to decline to apply the Ponzi scheme presumption here.

### B.   If The Ponzi Scheme Presumption Does Not Apply, The Trustee Has Not Adequately Alleged Fraudulent Intent Through Its "Badges of Fraud" Theory.

If the Ponzi scheme presumption does not apply, then the Trustee relies on a "badges of

fraud" theory of actual intent. Opp. at 35. To prevail on a badges of fraud theory, a litigant is

required to allege "the confluence of several" different factors. *In re Lyondell Chem. Co.*, 554

B.R. 635, 653 (S.D.N.Y. 2016); *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs.

Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (requiring "multiple indicia"). Courts must

distinguish cases where several factors are alleged from ones in which only a small number of

factors are. *Lyondell Chem.*, 554 B.R. at 653 (too few factors "spur[s] mere suspicion" and is

inadequate). The Trustee's Opposition, however, identifies only two: concealment of facts and

insolvency. Opp. at 35-36. This is inadequate. *In re Trib. Co. Fraudulent Conv. Litig.*, No. 11-

MD-2296 (RJS), 2017 WL 82391, at *14 (S.D.N.Y. Jan. 6, 2017), *aff'd*, 10 F.4th 147 (2d Cir.

2021) (granting dismissal where a complaint sufficiently alleged only two badges of fraud).

Additionally, the instant case is distinguishable from other cases involving BLMIS that the

Trustee cites in which there were sufficient badges of fraud. The complaints in every one of

those cases alleged that "BLMIS did not receive fair consideration." *Picard v. JABA Assocs. LP

(In re BLMIS)*, 528 F.Supp.3d 219, Compl. at ¶¶ 70, 76, 82 (Doc. 1 No. 10-05128); *Picard v.

Lisa Beth Nissenbaum Tr. (In re BLMIS)*, 2021 WL 1141638, Compl. at ¶¶ 67, 73, 79 (Doc. 1

No. 10-04878); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, Compl. at ¶¶ 138, 144, 150 (Doc.

33 No. 10-05383). In those cases, the courts identified a third badges of fraud factor that is

absent from this case: "lack of consideration for the fictitious transfers." *JABA*, 528 F.Supp.3d at

241 (S.D.N.Y. Mar. 24, 2021); *Nissenbaum*, 2021 WL 1141638, at *14 (S.D.N.Y. Mar. 24,

2021); *Nelson*, 610 B.R. at 235 (Bankr. S.D.N.Y. 2019). Here, the Complaint does not make this

or a similar allegation. Without that key component, this case is distinguishable from the

Trustee's cited cases and there are too few factors to adequately allege actual knowledge on the

basis of a badges of fraud theory.

### C. Even If The Ponzi Scheme Presumption Applies, The Trustee Has Not Adequately Alleged Fraudulent Intent.

The Trustee argues that the Ponzi Scheme Presumption applies to transfers "related to or in

furtherance of the Ponzi scheme." Opp. at 30. But even if this formulation of the presumption

were correct, it provides little succor to the Trustee, who does not allege in his Complaint that

any specific transfers were undertaken in furtherance of the Ponzi scheme. Instead, the Trustee

summarily asserts that all payments from BLMIS served to further the Ponzi scheme. Opp. at 34-

35 (citing Compl. ¶ 88). Blanket assertions like these are inadequate, for intent "must be pled

with specificity." *Sharp*, 403 F.3d at 56.

Nor would the outcome change if the Court began with the presumption that all transfers

made by BLMIS were made with fraudulent intent. Such a presumption is rebutted by the

Complaint itself: because the allegations of the Complaint make clear that certain transfers were

not made with intent to hinder, delay, or defraud; the presumption is rebutted as to those

transfers. As NatWest explained in its Memorandum of Law, transfers made to satisfy antecedent

debt do not qualify for avoidance. Mem. at 26, 28-29.

### V. The Complaint Establishes the Good Faith Defense as a Matter of Law.

As NatWest freely acknowledged in its opening memo, good faith is an affirmative defense.

Memo at 30. But "[a]n affirmative defense may be raised by a pre-answer motion to dismiss

under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on

the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007). That is precisely the case here, where, if the facts are as the Trustee alleges, the good faith defense is established. Memo at 30-32.

The Trustee points out that this Court recently denied a motion to dismiss by Banque Syz raising the good faith defense. But the factual situation there was quite different—"the Complaint suggests that Banque Syz had access to information about BLMIS's fraud and failed to concern itself with such things." *Banque Syz*, 2022 WL 2135019, at *11. Here, by contrast, the "Complaint contains no specific allegations that NatWest knew any suspicious facts that would have put it on inquiry notice, much less that would have led it to discover the BLMIS fraud through further inquiry." Memo at 30.[11] And in *In re BLMIS, LLC* ("*ABN Ireland*"), dicta aside, the court ultimately remanded the case because the decision being appealed was "based on a now-overruled standard of law." 2022 WL 1304589, at *4 (S.D.N.Y. May 2, 2022).

Finally, the Trustee dismisses the Court's prior factual conclusions because they were made in the context of applying a now-rejected legal standard. Opp. at 39. But that is immaterial to the factual conclusions: the Complaint implies that NatWest believed investments with BLMIS had value and the idea that NatWest would engage in the alleged transactions if it had reason to believe BLMIS was a fraud is "preposterous." Memo at 31 (citing Dkt. 200 at 31, 28).

### VI. Conclusion

The Complaint fails to state a plausible claim on which relief could be granted. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It does not plausibly allege that any of the transfers at issue comprised customer property, and the Trustee wrongly defends this

---

[11] Likewise, the Court explained that Banque Syz's argument that the Complaint established that the transfers were for "value" was "circular." *Banque Syz*, 2022 WL 2135019, at *11. That is not the case here, and the Trustee could not seriously disagree that the Complaint alleges transfers for value.

insufficiency with arguments that are legally incorrect and factually implausible. The Complaint's claims to recover collateral payments should also be dismissed because the lack of any diminution of the BLMIS estate is apparent from the face of the Complaint, the Complaint fails to adequately allege fraudulent intent under Section 548(a)(1)(A), and because the Section 546(e) safe harbor bars all claims outside Section 548(a)(1)(A)'s two-year lookback period. Likewise, the Complaint's claims about redemption payments should be dismissed because the Complaint fails to adequately allege fraudulent intent under Section 548(a)(1)(A), and because the Section 546 safe harbors bar all claims outside Section 548(a)(1)(A)'s two-year lookback period. Finally, the Complaint's allegations show that NatWest took for value and in good faith, which additionally prevents the Trustee from avoiding any transfers to NatWest. For these reasons, NatWest's Motion to Dismiss should be granted.

Dated: August 22, 2022                           Respectfully submitted,

                                                 */s/ Michael S. Feldberg*

                                                 Michael S. Feldberg
                                                 REICHMAN JORGENSEN LEHMAN &
                                                 FELDBERG LLP
                                                 750 Third Avenue, Suite 2400
                                                 New York, New York 10017
                                                 Tel: (212) 381-4970
                                                 mfeldberg@reichmanjorgensen.com
                                                 *Attorney for Defendant NatWest N.V.*