# **EXHIBIT D**

## **EXCERPT FROM**
## **TRANSCRIPT OF PROCEEDINGS**
## **JUNE 15, 2022 HEARING**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-99000-cgm

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    BERNARD L. MADOFF,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 08-01789-cgm

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   SECURITIES INVESTOR PROTECTION CORPORATION,

14                Plaintiff,

15            v.

16   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

17                Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

1   Adv. Case No. 11-02569-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, Trustee for the Liquidation

4   of Bernard L. Madoff Investment Securities LLC,

5                    Plaintiff,

6            v.

7   BARCLAYS BANK (SUISSE) S.A. ET AL.,

8                    Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10  Adv. Case No. 12-01693-cgm

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  IRVING H. PICARD, Trustee for the Liquidation

13  of Bernard L. Madoff Investment Securities LLC,

14                   Plaintiff,

15           v.

16  BANQUE LOMBARD ODIER & CIE SA,

17                   Defendants.

18  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19  Adv. Case No. 12-01695-cgm

20  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21  IRVING H. PICARD, Trustee for the Liquidation

22  of Bernard L. Madoff Investment Securities LLC,

23                   Plaintiff,

24           v.

25  BORDIER & CIE,

Page 3

```
 1                    Defendants.
 2   - - - - - - - - - - - - - - - - - - - - - - - - - x
 3   Adv. Case No. 11-02570-cgm
 4   - - - - - - - - - - - - - - - - - - - - - - - - - x
 5   IRVING H. PICARD, Trustee for the Liquidation
 6   of Bernard L. Madoff Investment Securities LLC,
 7                    Plaintiff,
 8             v.
 9   BANCA CARIGE S.P.A.,
10                    Defendants.
11   - - - - - - - - - - - - - - - - - - - - - - - - - x
12   Adv. Case No. 12-01207-cgm
13   - - - - - - - - - - - - - - - - - - - - - - - - - x
14   IRVING H. PICARD, Trustee for the Liquidation
15   of Bernard L. Madoff Investment Securities LLC,
16                    Plaintiff,
17             v.
18   LLOYDS TSB BANK PLC,
19                    Defendants.
20   - - - - - - - - - - - - - - - - - - - - - - - - - x
21   Adv. Case No. 10-05355-cgm
22   - - - - - - - - - - - - - - - - - - - - - - - - - x
23   IRVING H. PICARD, Trustee for the Liquidation
24   of Bernard L. Madoff Investment Securities LLC,
25                    Plaintiff,
```

Page 4

```
 1              v.

 2   ABN AMRO Retained Custodial Services (Ireland) Lim,

 3                  Defendants.

 4   - - - - - - - - - - - - - - - - - - - - - - - - - x

 5   Adv. Case No. 10-04492-cgm

 6   - - - - - - - - - - - - - - - - - - - - - - - - - x

 7   IRVING H. PICARD, Trustee for the Liquidation

 8   of Bernard L. Madoff Investment Securities LLC,

 9                  Plaintiff,

10              v.

11   STUART LEVENTHAL 2001 IRREVOCABLE TRUST ET AL,

12                  Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - x

14   Adv. Case No. 10-05312-cgm

15   - - - - - - - - - - - - - - - - - - - - - - - - - x

16   IRVING H. PICARD, Trustee for the Liquidation

17   of Bernard L. Madoff Investment Securities LLC,

18                  Plaintiff,

19              v.

20   DORON TAVLIN TRUST U/A 2/4/91 ET AL,

21                  Defendants.

22   - - - - - - - - - - - - - - - - - - - - - - - - - x

23   Adv. Case No. 10-05421-cgm

24   - - - - - - - - - - - - - - - - - - - - - - - - - x

25   IRVING H. PICARD, Trustee for the Liquidation
```

**Page 5**

1   of Bernard L. Madoff Investment Securities LLC,

2              Plaintiff,

3         v.

4   FRANK J. AVELLINO, individually, and as Trustee,

5              Defendants.

6   - - - - - - - - - - - - - - - - - - - - - - - - - x

7

8              United States Bankruptcy Court

9              355 Main Street

10             Poughkeepsie, NY 12601

11             June 15, 2022

12             10:00 A.M.

13

14

15  B E F O R E :

16  HON CECELIA G. MORRIS

17  U.S. BANKRUPTCY JUDGE

18

19  ECRO:   UNKNOWN

20

21

22

23

24

25

Page 50

1              MS. GRIFFIN:  Thank you, Your Honor.

2              THE COURT:  Thank you.  Thank you.

3              Mr. Woodfield, I'm sorry I didn't get to see your

4       face.

5              MR. WOODFIELD:  Next time I'll -- we're social

6       distancing down here still, Your Honor.

7              THE COURT:  Well, we had to experiment with it

8       too, so understand.  You were -- just so you know, you were

9       absolutely clear on the record and your voice was clear.  So

10      just --

11             MR. WOODFIELD:  Thank you, Your Honor.

12             THE COURT:  -- be comforted with that.  Thank you.

13             MR. WOODFIELD:  Thank you for hearing us.

14             MS. GRIFFIN:  Thank you.

15             THE COURT:  Very good.  1102569, Picard as SIPA

16      Trustee versus Barclays Bank (Suisse) S.A.

17             MR. GOTTRIDGE:  Good morning, Your Honor.  Marc

18      Gottridge from Herbert Smith Freehills New York LLP on

19      behalf of the defendants in this adversary proceeding, who

20      we've been calling the Barclays defendants.

21             THE COURT:  Thank you.

22             MS. LONGO:  Good morning, Your Honor.  Kim Longo

23      of Windels Marx, special counsel to the trustee appearing in

24      connection with the Barclays matter.

25             THE COURT:  Ms. Longo, it's your motion.

Page 51

1          MS. LONGO:  Actually, it's Mr. Gottridge's motion.

2          THE COURT:  Oh, I'm sorry.  I'm sorry.  I

3    apologize.  I'm on the summary judgment motions.  This is a

4    motion to dismiss.  So Mr. Gottridge, I apologize.

5          MR. GOTTRIDGE:  No, not at all, Your Honor.  It's

6    all fine.  Thank you.

7          Your Honor, the Barclays defendants, as the Court

8    knows, have moved to dismiss on several grounds.  I will be

9    addressing today, you know, in the interest of time, only

10   one of our arguments, namely that the Section 546(e) Safe

11   Harbor requires dismissal of the complaint as against the

12   Barclays defendants to the extent it alleges six-year

13   claims.

14         As for the other grounds in the motion to dismiss,

15   we will be happy to rely on our briefing, unless the Court

16   has any questions, which I'll be happy to answer.

17         I also would like to adopt by reference in advance

18   any arguments that Counsel for other defendants in these

19   Fairfield subsequent transferee cases that are on the

20   calendar a bit later will present to the extent that they

21   also relate to the Barclays defendant's situation.

22         THE COURT:  Well, I just would like for you to

23   highlight which ones you might be depending on because I

24   want to be clear.

25         MR. GOTTRIDGE:  Yeah.

1          THE COURT:  Because each one of these is a

2     different set of facts.

3          MR. GOTTRIDGE:  No.  Understood, Your Honor.  And

4     I just want to say in advance that the counsel for the

5     defendants that will be arguing today all conferred among

6     themselves in an effort to streamline the presentation so

7     that we're not repeating one another's arguments and not

8     taking up more of the Court's time than we need to.  But the

9     --

10          THE COURT:  Trust me.  I brought enough snacks and

11     enough food to stay the day because I wanted to fit your set

12     of facts.

13          MR. GOTTRIDGE:  I appreciate that, Your Honor.

14          I think in terms of the other arguments, the

15     customer property argument which I believe Mr. Zulack will

16     be raising, we will adopt certainly his arguments.  And to

17     the extent that any of the other defendants raise the issues

18     --

19          THE COURT:  I can't use another person's argument

20     for your case.

21          MR. GOTTRIDGE:  Okay.

22          THE COURT:  I cannot do that.

23          MR. GOTTRIDGE:  Well, we'll --

24          THE COURT:  I mean, I understand you're trying to

25     streamline, but this your case, your set of facts.  I need

1    your arguments.

2          MR. GOTTRIDGE:  And Your Honor, I'm fine with

3    relying on our papers then on the customer property.

4          THE COURT:  Okay.

5          MR. GOTTRIDGE:  I think Your Honor has that all --

6          THE COURT:  If you rely on your papers, that's

7    different.

8          MR. GOTTRIDGE:  That's fine, Your Honor.

9          So to turn to the 546(e) issue, then, Your Honor,

10   we're obviously well aware of the decisions that the Court

11   issued in the last couple of days, and we certainly are

12   aware that the Court will treat them as law of the case

13   applicable to this motion, so what I'd like to do is to

14   focus really on aspects of that motion -- of that motion

15   that the Barclays defendants made that we believe were not

16   specifically addressed in the multi-strategy and Banque Syz

17   decisions that came out earlier this week.

18         And the first of those issues will be really under

19   the Cohmad decision.  We're calling it Cohmad.  It's the

20   April 15th, 2013 decision of Judge Rakoff.  Our position

21   that under the Cohmad decision, an innocent subsequent

22   transferee defendant does not lose its 546(e) defense to a

23   recovery action by the trustee merely because of actual

24   knowledge on the part of the initial transferee.  That's one

25   issue I'd like to address.

1             And the second issue I'll address later is that

2     the actual knowledge of Fairfield Sentry in particular is

3     especially irrelevant to the 546(e) issue as to the Barclays

4     defendants to the extent that they are relying on securities

5     contracts other than the BLMIS Fairfield Sentry customer

6     agreements.  So those are the two points I'd like to hit.

7             To start with, Your Honor, I think the Court's

8     decisions earlier this week are very helpful in a couple of

9     regards, and I just want to point out that this Court has

10    now -- in both of those decisions -- reiterated something

11    the Second Circuit has said before and judges of the

12    district court have said before, that the Section 548 Safe

13    Harbor is intended in substantial part to promote the

14    reasonable expectations of legitimate securities investors.

15    And as I'll come to, the Barclays defendants were legitimate

16    investors in real, actual securities.

17            Secondly, the Court also picked up on what Judge

18    Rakoff wrote in Cohmad and stated that where an initial

19    transferee does not raise the 546(e) defense, which is the

20    case here, the subsequent transferee is entitled to raise a

21    546(e) defense against recovery of those funds.  That's at

22    page 16 of multi-strategy, and I think those are useful

23    starting points.

24            I think it's also helpful to note some things that

25    the trustee has not disputed, which are critical to the

1    motion.  First of all, the Barclays defendants are not

2    alleged to have had actual knowledge of the underlying

3    Madoff fraud.  They are classic innocent subsequent

4    transferee defendants.  They were legitimate investors in

5    securities of the Fairfield funds without knowledge that

6    Madoff was engaging in a Ponzi scheme.

7          Secondly, the Barclays defendants dealt with the

8    Fairfield funds only at arm's length, and the trustee has

9    never alleged otherwise.  The trustee has never alleged any

10   basis on which Fairfield Sentry's actual knowledge, if it

11   had actual knowledge, can be imputed to the Barclays

12   defendants.

13         And I would distinguish this situation, Your

14   Honor, from the Court's decision in the Fairfield investment

15   fund case where the Court was dealing with insiders.  We're

16   dealing with people that were affiliated with and indeed

17   arguably were running Fairfield Sentry.  The Barclays

18   defendants only dealt with Fairfield Sentry as a complete

19   arm's length third party.

20         In addition, and this is really kind of getting to

21   the nub of it, the Barclays defendants on this motion show -

22   - and I would refer back to pages 16 to 24 of our initial

23   memorandum of law -- that the statutory requirements for the

24   application of the 546(e) Safe Harbor have all been

25   satisfied, and the trustee did not respond to that point.

1    They'd rather say it's irrelevant, but they don't actually

2    say that the transactions are not qualifying transactions,

3    that the entities involved are not qualifying or covered

4    entities.

5              And under the (indiscernible) case which we cited

6    at page 2 of our reply memorandum, and the other cases that

7    the district court cited there, if a defendant makes a

8    motion to dismiss and lays out the circumstances that

9    support that, and the plaintiff in opposition fails to

10   address that, the point is conceded.  And that's where we

11   are.

12             So where we are is that the trustee has conceded

13   on this motion, that Section 546(e) would apply to the

14   initial transfers and that the Barclays defendants have that

15   defense, which means that unless the actual knowledge rule

16   comes in to play and compels a different result, the

17   trustee's recovery claims for the six-year claims would have

18   to be dismissed.

19             So this comes to the question then of -- that I'd

20   like to raise first, which is under Judge Rakoff's analysis

21   in Cohmad, does an innocent subsequent transferee lose the

22   546(e) defense?  Is it barred from raising the 546(e) just

23   because the initial transferee higher up the chain is

24   alleged to have had actual knowledge?

25             Our point here, again, is supported by the fact

Page 57

1    that as this Court recognized earlier this week and as Judge

2    Rakoff stated in Cohmad at page 7 at the Westlaw pagination

3    that in a situation like this where the trustee has settled

4    with the initial transferee and not raised the 546(e)

5    defense itself, a subsequent transferee is "entitled to

6    raise a Section 546(e) defense against recovery."

7          Now, of course, Judge Rakoff in Cohmad created an

8    exception to this rule, but it is a limited exception.  The

9    only thing it does is it bars those transferee defendants

10   that had actual knowledge -- whether they're initial

11   transferees or subsequent transferees -- from raising the

12   546(e) defense.

13         I would point in particular to the final section,

14   the concluding section on page 10 in the Westlaw pagination

15   of Cohmad where Judge Rakoff concluded by making this point.

16   "While Section 546(e) generally applies to the adversary

17   proceedings brought by the trustee, those defendants who

18   claim the protection of Section 546(e) through a Madoff

19   Securities account agreement but who actually know that

20   Madoff Securities was a Ponzi scheme are not entitled to the

21   protection of Section 546(e) Safe Harbor, and their motions

22   to dismiss the trustee's claims on that ground -- on this

23   ground must be denied."

24         So what Cohmad does is it sets up a general rule,

25   which is the general rule that 546(e) is available in

1    general, and it sets up an exception.  So under the -- if

2    you fall under the general rule, the defendant can invoke

3    546(e) and prevail on a motion to dismiss, but if you fall

4    under the exception, you cannot.

5              And our position is simple, that given what we've

6    said, that there's no dispute here, there's no allegation to

7    the contrary, that the Barclays defendants did not have that

8    actual knowledge, they fall within the general rule.  They

9    don't fall within the exception.

10             And I think it's important to point out that

11   Cohmad is different than a voidability.  Cohmad is a special

12   rule that was created by the Court.  It doesn't focus the

13   way a voidability does on the transfer itself.  The

14   attributes of the transfer are not its concern.  The concern

15   of the Cohmad actual knowledge rule is on the defendant, the

16   particular defendant being sued in a particular adversary

17   proceeding.  And even more narrowly, it's on a particular

18   aspect of that defendant, which is did it or did it not have

19   actual knowledge of the underlying fraud?

20             And I think Judge Rakoff made it very clear in a

21   paragraph that specifically addressed subsequent transferees

22   on page 7 of Cohmad where he wrote "in sum, if the trustee

23   sufficiently alleges that the transferee from whom he seeks

24   to recover a fraudulent transfer, in this case the Barclays

25   defendants, knew of Madoff Securities fraud, that a

1    transferee cannot claim the protection of 546(e) Safe

2    Harbor."

3          So in this adversary proceeding, the Barclays

4    defendants, not Fairfield Sentry, are the parties from whom

5    the trustee seeks to recover the fraudulent transfer or the

6    proceeds thereof.  So we fall within the rule -- again, the

7    general rule, not this Cohmad actual knowledge exception.

8          And I think it's significant that not once in

9    Cohmad did Judge Rakoff state that an innocent transferee

10   defendant that lacks actual knowledge forfeits the 546(e)

11   defense because it happens to be the case that the initial

12   transferee had such knowledge.  In fact, not once in Cohmad

13   did Judge Rakoff say that an innocent transferee defendant

14   lacking actual knowable forfeits, or loses, or is stripped

15   of its 546(e) defense at all.  He doesn't address it at all.

16         And if you look at the rationale that Judge Rakoff

17   laid out in Cohmad, which is consistent again with what Your

18   Honor picked up on earlier this week, the idea is that the

19   statute is intended to promote the reasonable expectations

20   of those who invested without actual knowledge of the

21   underlying fraud while at the same time preventing a

22   windfall from being reaped by those defendants who did know

23   of the actual fraud and therefore knew they were not trading

24   -- investing in real securities.

25         So if you look at the -- page 19 of Your Honor's

Page 60

1    multi-strategy decision, the Court quoted from the Second

2    Circuit's decision in Fishman which involved initial

3    transferees.

4              And I would submit that as initial -- as innocent

5    subsequent transferees, the Barclays defendants have at

6    least as strong a reasonable expectation that their real

7    actual securities transactions were final and would not be

8    unwound, at least as strong as that of the initial

9    transferees who dealt directly with BLMIS in the Fishman

10   case.  Those defendants mistakenly but honestly believed

11   they were trading actual securities.  The Barclays

12   defendants correctly and honestly traded actual securities.

13             And one other point about Judge Rakoff's Cohmad

14   decision.  It is significant, we believe, that Judge Rakoff

15   after issuing the Cohmad decision issued another decision in

16   which he clearly expressed his expectation as to how this

17   issue would play out.

18             The case I'm referring to, it's cited to in our

19   reply brief.  It's Picard versus ABN AMRO 505 B.R. 135.  And

20   at page 142 after citing the Cohmad decision, Judge Rakoff

21   stated, "Thus the Court has found that in the majority of

22   cases, Section 546(e) requires the dismissal of the

23   trustee's avoidance claims, except those brought under

24   Section 548(a)(1)(a), and related recovery claims under

25   Section 550(a)."

1          So the clear expectation that the district court

2    had, the same judge who issued Cohmad was that as this issue

3    pled out, the subsequent transferees in most cases, meaning

4    the ones who were innocent and didn't have actual knowledge

5    of the underlying fraud would have a valid 546(e) argument

6    and could press that successfully on a motion to dismiss.

7          Only in a minority of cases where there was actual

8    knowledge on the part of the subsequent transferee.  In

9    those cases, the subsequent transferee would lose.  But if

10   you turn that on its head as the trustee would do, if every

11   single subsequent transferee defendant, even the innocent

12   ones like the Barclays defendants that dealt with Fairfield

13   Sentry is now to be deprived of the protections of the safe

14   harbor just because Fairfield Sentry, a third party, had

15   knowledge, the Safe Harbor will not do what Judge Rakoff

16   anticipated.  It will not protect against recovery in a

17   majority of these cases.  In fact, it would protect against

18   the recovery claims in none of these closes, which I submit

19   is exactly backwards.

20          It would also create another anomaly, which is

21   that if you imagine two subsequent transferees -- we'll call

22   them A and B -- A got its subsequent transfer from an

23   initial transferee that did not have actual knowledge, an

24   innocent initial transferee.  And let's assume A and B are

25   both innocent subsequent transferees.  And then let's say B,

1    as in the Barclays defendants, dealt with a transferee -- an

2    initial transferee that had actual knowledge.  If the

3    trustee's view of these cases is right, A will be able to

4    assert 546(e), and B, the Barclays defendants, will not, all

5    because of the happenstance that a third party either did or

6    did not have actual knowledge.  That is -- there's really no

7    justification for that under applying a statue where the

8    purpose of it is to protect the legitimate interests and the

9    legitimate expectations of securities investors.

10            I'd just like to go to the second point I wanted

11   to make which concerns the additional holding of Judge

12   Rakoff and the Cohmad opinion which deals with financial

13   institution defendants, specifically including the Barclays

14   defendants, that also claim the Safe Harbor protection, not

15   only because Fairfield Sentry and BLMIS had a customer

16   agreement but separately, because there was a separate

17   securities contract, in this case the securities contract

18   between Fairfield Sentry and the Barclays defendants

19   governing the shareholdings of the Barclays defendants in

20   Fairfield Sentry.

21            Judge Rakoff addressed this and said it was a

22   different sort of alternative pathway, as we would call it,

23   to the Safe Harbor protection, and he discussed this

24   extensively at pages 8 through 10, Cohmad.  And we would

25   submit that, you know, we've discussed this in the

Page 63

1    memorandum of law and a reply -- and I won't go over all of

2    that -- but we'd submit that the facts of this case fit that

3    like a glove.

4              The key thing to remember though, I think, is that

5    the fundamental concern that motivated Cohmad, and it's a

6    legitimate concern, that if in the initial securities

7    contracts between BLMIS and Fairfield Sentry, if those were

8    illusory contracts, they were not real securities contracts,

9    and if Fairfield Sentry knew they were illusory, you could

10   understand that's a serious concern, but that concern has no

11   part to play in this alternative analysis, and the reasons

12   are two.

13             First of all, the securities contract between

14   Fairfield Sentry and the Barclays defendants, which is the

15   contract that we're relying on here for this branch of the

16   analysis as the actual securities contract, was a real

17   contract.  The Barclays defendants' purchases of Fairfield

18   Sentry shares were real.  The Barclays defendants'

19   redemptions and sales of those shares was real.  So the

20   concern really melts away.

21             The second thing, as Judge Rakoff held in Cohmad,

22   in these circumstances, the initial transfers which the

23   trustee alleged were intended to fund the defendants'

24   redemptions from Fairfield Sentry were made "in a connection

25   with" those real transactions for purposes of 546(e), and

Page 64

1    that's the statutory language.

2           So for those reasons, this separate pathway

3    applies and is a separate way that 546(e) applies, and it

4    would be particularly odd and unjustified to say that, well,

5    because Fairfield Sentry, the initial transferee, knew that

6    its contract with the Madoff Securities was illusory, that

7    that should bar this separate avenue to 546(e), which does

8    not in any way rely on that contract but rather relies on

9    real securities contracts pursuant to which the Barclays

10   defendants traded real securities.

11          So in conclusion, Your Honor, we think that

12   applying Judge Rakoff's reasoning to the case of the

13   Barclays defendants requires dismissal of the trustee's six-

14   year claims based on 546(e), and we believe there's nothing

15   about the Court's decisions earlier this week that would

16   change that.

17          Happy to answer any questions Your Honor has.

18          THE COURT:  Ms. Longo?

19          MS. LONGO:  Thank you, Your Honor.

20          I too was under the understanding, just to start,

21   that we would essentially be arguing 546(e) in this case,

22   and more or less it's opting or incorporating the arguments

23   from our other colleagues, but I'm also happy to rest on my

24   papers on those other matters.

25          Just as to customer property, I would just say as

Page 65

1    we've made clear in our papers and as Your Honor has as

2    well, any fact-based arguments which defendants make, which

3    there are -- a lot of them are just inappropriate on a

4    motion to dismiss with respect to that matter.

5         But speaking as to Section 546(e) specifically, I

6    don't believe anything said by Defense counsel here today is

7    cause to change the trustee's analysis or for this Court to

8    veer from its decisions this week in the multi-strategy fund

9    in Banques cases where Your Honor rejected defendants'

10   546(e) arguments in full.

11        In light of those decisions, I just want to really

12   hit certain highlights here briefly to respond to arguments

13   that Defendants have made today.

14        So you know, to start, Your Honor, I want to just

15   spend a minute on the framework that Judge Rakoff set up.

16   As detailed by Trustee's counsel in the hearing last May, in

17   Cohmad, the district court set forth two scenarios in which

18   the actual knowledge exception makes Section 546(e)

19   inapplicable.

20        Scenario 1 is where the initial transferee itself

21   has actual knowledge of the fraud, and Scenario 2 is where

22   the initial transferee does not have actual knowledge but

23   the subsequent transferee does.  And as Your Honor's multi-

24   strategy in Banques decisions acknowledged, our cases here

25   fit squarely within Scenario 1.

1          This Court's already determined in its Fairfield

2     investment fund decision that the trustee has adequately

3     alleged Sentry's actual knowledge and that the initial

4     transfers to Sentry outside the two-year period are

5     avoidable.

6          As we see today, Defendants still don't accept

7     what is really the straightforward application of the actual

8     knowledge holding, and they want the Court to find that even

9     if the initial transferee had actual knowledge, it's the

10    defendant's actual knowledge that dictates where or not the

11    Safe Harbor applies, calling it happenstance of being a

12    third party.

13         They argue there's two ways this could be

14    accomplished, but neither fits nor is appropriate.  In their

15    first argument, they say really -- and this is their biggest

16    argument -- in all recovery actions, the subsequent

17    transferee's knowledge should govern, and that really covers

18    the first 10 pages of their reply as they've, you know,

19    argued here today.

20         They point to Cohmad's Scenario 2 to support this,

21    saying because the subsequent transferee with actual

22    knowledge cannot invoke the protections of 546(e), that

23    therefore the converse has to be true, and so any other

24    subsequent transferee can assert 546(e) without restriction.

25         But one doesn't naturally follow from the other,

Page 67

1       Your Honor.  And as the multi-strategy and Syz decisions

2       explained this week, subsequent transferees do have a right

3       to assert a 546 Safe Harbor, but that's an indirect right,

4       and it allows them to step into the shoes of the initial

5       transferee and assert a Safe Harbor defense solely to the

6       extent the initial transferee could itself do so.

7               That's all the many cases the defendants cite in

8       their reply or that they bring up here in argument really

9       stand for.  Sentry's actual knowledge here, their actual

10      knowledge of the fraud precludes both the Sentry and the

11      defendants from asserting Section 546(e).

12              The district court also made clear in Cohmad in

13      that Scenario 2 where the initial transferee does not have

14      actual knowledge, which again is the opposite of what we

15      have here, is the only time that a subsequent transferee's

16      actual knowledge is relevant.  That is page 7.

17              This one caveat, as the district court called it,

18      is intended to prevent a subsequent transferee with actual

19      knowledge from being able to step into the shoes of an

20      innocent initial transferee.

21              Now, Defendants have cited to language in their

22      reply from Cohmad, and they've cited again here today.

23      Namely, it's that if a transferee has actual knowledge, then

24      546(e) cannot apply.  But this is just a statement related

25      to that District Court's one caveat.  It doesn't mean that

Page 68

1    the converse is true and that 546(e) should become

2    automatically available to any other subsequent transferee.

3    Subsequent transferees are still limited by the fact that

4    the safe harbor is intended to protect initial transfers in

5    the first instance.

6            For Defendants' secondary argument, which they

7    have called an alternative path, and they quote that here,

8    they say a subsequent transferee's actual knowledge should

9    dictate avoidability any time it's a feeder fund subsequent

10   transfer in particular.  And this is where they point to

11   Cohmad's hypothetical, where the court considered whether a

12   feeder fund's articles of association could qualify as a

13   securities contract in lieu of the BLMIS agreements.  And

14   this is, you know, their argument they brought up here as

15   well.

16           But in that section of the decision, the District

17   Court doesn't even mention actual knowledge.  And to the

18   contrary, as Your Honor pointed out in both Multi-Strategy

19   and SYZ, the District Court directed that such analysis

20   still has to be consistent with the decision in the first

21   instance, meaning that the application of 546(e) is still

22   dictated by the actual knowledge of the initial transferees

23   here.  And, if Your Honor is inclined, it's at Pages 18 and

24   19 of the Multi-Strategy decision, for example.

25           Defendants' argument also  makes no sense because

Page 69

1    they're essentially hinging the avoidability of the initial

2    transfer on the characteristics of the various subsequent

3    transferees.  And that would leave parties and the Court

4    with no certainty or finality, Your Honor.

5              At its heart, Defendants' argument really is that

6    546(e) should separately apply to Section 550 recovery

7    actions, and Defendants call this a red herring in their

8    reply.  But their reply very importantly also makes clear in

9    a number of places that this is exactly what they're asking

10   the Court to do.  And I'll just name two of those examples,

11   just to put them on the record, Your Honor.

12             On Page 5, Footnote 3 the reply states that,

13   "Cohmad thus refutes the Trustee's argument that Judge

14   Rakoff specifically limited the safe harbor to avoidance

15   claims."  Well, Your Honor, the safe harbor by its terms is

16   limited to avoidance claims.

17             And on Page 3 of that reply, they say that the

18   Trustee is trying to "deprive an innocent subsequent

19   transferee defendant of its statutory protections based on

20   an unrelated initial transferee's alleged knowledge."  And

21   that's similar to the argument they're making here.  They're

22   detached from the initial transferee.  It's pure

23   happenstance.  But again, these are statutory protections

24   provided to initial transferees in the first instance.

25             And to the extent the subsequent transferee claims

Page 70

1    it's innocent, as the Defendant does here, that Defendant

2    does get to make that argument.  It's just part of its 550

3    affirmative good faith defense, Your Honor.  It just can't

4    use that same rationale here to take advantage of a safe

5    harbor that's intended for avoidance as opposed to recovery.

6           Your Honor, very briefly I want to touch on the

7    ABN AMRO case that Mr. Gottridge brought up.  He brought it

8    up for the first time in the reply and he brought it up

9    here, so, you know, to the extent he's making any new

10   arguments with that case, I'd like to address whether that's

11   isappropriate to do on reply.

12          But in any event, substantively, I don't need to

13   spend a lot of time on it.  It's a very different safe

14   harbor that speaks to the 546(g) safe harbor with respect to

15   swaps.  And it's a very different decision.

16          That case involved a complex swap transaction with

17   additional parties, additional agreements, and Judge Rakoff

18   clearly even viewed the safe harbors differently.  He

19   actually states in there that -- he adds the words in the

20   footnote that Defendants speak to -- he says, "Unlike

21   Section 546(e)", and that's in the beginning of that quote.

22   So that decision has no application here, Your Honor.

23          Finally, just as a point, because Defendants

24   brought this up, and for the record, the Trustee does not

25   concede that any of the elements of 546(e) are met by virtue

1    of the initial and subsequent transferees' relationships.

2    You know, more importantly, we just don't think it matters.

3    We do, of course, appreciate that Section 546(e), as relates

4    to the initial transfer from BLMIS to the feeder funds, is a

5    finally determined initial transfer subject to 546(e), as

6    has been held by the Second Circuit.

7            I believe that is all I have, Your Honor, unless

8    you have any questions.

9            THE COURT:  I do not.  Mr. Gottridge?  Rebuttal?

10            MR. GOTTRIDGE:  Yes, Your Honor.  Just a few

11    points.  First of all, on ABN AMRO, we were not introducing

12    anything new on reply.  We were just actually responding to

13    arguments that were being made by the Trustee as to what

14    they saw as the limited scope of 546(e).

15            But the point about that case, I think, is not

16    well taken, that Ms. Long was making.  Because in the

17    paragraph that we quoted, as opposed to whatever other

18    paragraph she's relying on, Judge Rakoff says, "Section

19    546(g) as a safe harbor is closely related to the safe

20    harbor for securities transactions set forth in Section

21    546(e)."

22            And then Judge Rakoff goes on to talk about his

23    own prior decisions in that area, specifically relating to

24    Cohmad.  And then it was specifically in relation to Cohmad

25    that he said, "Thus the court has found in the majority of

Page 72

1    the cases, Section 546(e)" -- not (g), (e) -- requires the

2    dismissal of the trustee's avoidance claims, et cetera,

3    including the 550(a) related recovery claims.

4            So, clearly, I think Judge Rakoff was talking

5    about 546(e) in that part of the decision, even though the

6    case was decided under the parallel swaps 546(g) safe

7    harbor.

8            I think also on that point, a related point that

9    Ms. Long made, was, well, the safe harbor is a statutory

10   defense, but only to the avoidance of an initial transfer.

11   Well, that's true as far as it goes, but it's not the whole

12   story.  And in the context of a recovery action, I think

13   it's a really materially incomplete statement.

14           Cohmad itself makes clear more than once that the

15   safe harbor defense is not only a defense to an avoidance

16   claim, but is also available, unless the defendant had

17   actual knowledge, to any transferee defendant "from whom he

18   -- the trustee, that is -- from whom he seeks to recover."

19   That's at Page 7.  So the focus is then on -- I mean, the

20   trustee does not bring these avoidance actions just for the

21   point of -- the purpose of getting avoidance.  The goal --

22   even though recovery is a separate step, the goal is to be

23   able to recover.

24           And to say that a defendant sued in a recovery

25   action cannot assert the 546(e) defense is simply wrong,

1    because it's just inconsistent with what Judge Rakoff say,

2    not only at Page 7 but at Page 10.  He's talking about it as

3    a "defense against recovery of those funds."  In fact, it

4    would make no sense, because we agree with Ms. Longo, that

5    the 546(e) defense does not apply to subsequent transfers.

6    We've never said it does.

7           But that's precisely why when the judge -- when

8    Judge Rakoff or other judges talk about a defense against

9    recovery of those funds and talk about subsequent

10   transferees being able to assert 546(e), which Cohmad

11   clearly establishes some subsequent transferees can do that.

12          When it talks about that, it must mean that it's a

13   defense that can be raised as to the initial transfers by a

14   subsequent transferee.  And the general rule that Cohmad

15   sets out is it can be raised.  The exception is whether that

16   defendant has actual knowledge.  That defendant, not the

17   initial transferee, but the subsequent transferee in a case

18   of a subsequent transferee that's being sued in a recovery

19   action.

20          And I think Ms. Longo was unable to cite there was

21   a particular point, a part of the decision by Judge Rakoff

22   in Cohmad, because I don't think it exists, where Judge

23   Rakoff says you only look at the initial transferee's

24   knowledge.  That's not what he does.  He actually refers to

25   both initial and subsequent transferees there.

Page 74

1           I would also add that there are numerous other

2    cases, including this Court's decision in Fairfield

3    Investment Fund, where the Court cited Cohmad and wrote that

4    a subsequent transferee is "entitled to raise a Section

5    546(e) defense against recovery."  That's at Page 3 of that

6    decision.

7           That was also repeated in Multi-Strategy and in

8    SYZ earlier this week at Page 16 of each decision.  And

9    there were numerous other cases.  In Footnote 3 of our

10   reply, we cite cases like AP Services, decided by Judge

11   Kaplan in the District Court, Boston Generating, decided by

12   Bankruptcy Judge Grossman; which stand for the proposition

13   that 546(e) does furnish a defense to a recovery action as

14   well as to an avoidance action.

15          The last point I just wanted to make had to do

16   with the one caveat phrase that the Trustee has cited.  I

17   think before you can say what the caveat is, you need to

18   look at the previous sentence to see what rule is this a

19   caveat to.  And the rule is, if you look back at the

20   previous sentence of Cohmad, the previous paragraph, is that

21   where 546(e) applies, the Trustee can only pursue claims

22   against a subsequent transferee to the extent that the

23   initial transfer is subject to 548(a)(1)(A), no others.

24   That's the only exception.

25          And what Judge Rakoff was saying here with this

1    caveat is, okay, in the situation where the initial transfer

2    is protected by 546(e) because the initial transferee, you

3    know, doesn't have knowledge, but the subsequent transferee

4    has knowledge, that would be inappropriate to allow that

5    subsequent transferee to invoke 546(e).  We don't have a

6    problem with that because our situation is the polar

7    opposite.

8            The problem here is that just by luck or

9    happenstance or fortuity, or whatever you want to call it,

10   the Barclays Defendants happen to have taken their

11   subsequent transfers from an initial transferee that had

12   knowledge, but they themselves do not have actual knowledge.

13   They have never been alleged to have actual knowledge.  And

14   it's inconsistent with Cohmad and inconsistent with Section

15   546(e)'s purpose to deny them the defense.

16           Thank you.

17           THE COURT:  Thank you.  Court will take a 10-

18   minute recess.

19           (Recess)

20           THE COURT:  12-01693, Picard as SIPA Trustee v.

21   Banque Lombard Odier and Cie SA.  State your name and

22   affiliation.

23           MR. HANCHET:  Good morning, Your Honor.  This is

24   Mark Hanchet, of Mayer Brown, on behalf of Lombard Odier.

25   With me is Jack Zulack, of Allegaert Berger & Vogel.  I'll