**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Bankruptcy Court Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Bankruptcy Court Adv. Pro. No. 11-02569 (CGM) |
| Plaintiff, | |
| v. | ___ Civ. _____ |
| BARCLAYS BANK (SUISSE) S.A., CAIXABANK S.A., as successor by merger to Barclays Bank S.A., and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a Barclays Private Bank & Trust Limited), | |
| Defendants. | |

**BARCLAYS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ................................................................................. iii

**PRELIMINARY STATEMENT** ..................................................................... 1

**THE QUESTIONS PRESENTED ON THIS APPEAL** ......................................... 5

**RELEVANT BACKGROUND** ......................................................................... 6

      A.    The Transfers and Claim at Issue .............................................. 6

      B.    *Cohmad* ................................................................................. 6

            1.    Under *Cohmad,* Transferee Defendants with
                  Actual Knowledge of the BLMIS Fraud Are
                  Not Entitled to the Protections of Section 546(e) ....................... 6

            2.    *Cohmad's* Separate Pathway to Section 546(e) Protection........... 9

      C.    The *Cohmad* Issues on the Barclays Defendants' Motion to Dismiss .... 10

      D.    The Bankruptcy Court's Decision and Order .......................................... 12

      E.    Other Defendants' Motions for Leave to Appeal ................................... 13

**ARGUMENT** ..................................................................................... 14

I.    Leave to Appeal Should be Granted so this Court may Correct
    the Bankruptcy Court's Misinterpretations of the *Cohmad* Decision.................. 14

      A.    The Applicable Standards ........................................................ 14

      B.    The Questions Presented are Pure, Controlling Questions of Law........ 15

      C.    There is Substantial Ground for Difference of Opinion
           Because the Bankruptcy Court's Decision
           is Inconsistent with *Cohmad* and its Rationale and
           Undermines Congress' Intent in Enacting Section 546(e).................... 17

      D.    An Immediate Appeal May Materially
           Advance the Ultimate Termination of the Action ................................. 23

      E.    Exceptional Circumstances Warrant
           Permitting an Immediate Appeal .......................................................... 24

**CONCLUSION** ................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Capitol Records, LLC v. Vimeo, LLC,*
   972 F. Supp. 2d 537 (S.D.N.Y. 2013)...................................................... 15, 17, 23, 24

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.),*
   2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006)..................................................... passim

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.,*
   858 F. Supp. 2d 306 (S.D.N.Y. 2012)................................................................. 15, 24

*Flor v. BOT Fin. Corp. (In re Flor),*
   79 F.3d 281 (2d Cir. 1996)....................................................................................... 17

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Tr.),*
   773 F.3d 411 (2d Cir. 2014)................................................................................ passim

*In re Ditech Holding Corp.,*
   2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021)......................................................... 14

*In re Duplan Corp.,*
   591 F.2d 139 (2d Cir. 1978).................................................................................... 15

*In re GM LLC Ignition Switch Litig.,*
   427 F. Supp. 3d 374 (S.D.N.Y. 2019)............................................................... passim

*In re Picard,*
   917 F.3d 85 (2d Cir. 2019)...................................................................................... 10

*In re Tribune Co. Fraudulent Conveyance Litig.,*
   946 F.3d 66 (2d Cir. 2019)...................................................................................... 18

*Klinghoffer v. S.N.C. Achille Lauro,*
   921 F.2d 21 (2d Cir. 1990)........................................................................... 15, 17, 24

*McMillan v. City of New York,*
   2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011)........................................................ 16

*MF Global Holdings, Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.),*
   296 F. Supp. 3d 662 (S.D.N.Y. 2017).............................................................. 15, 24

*N.Y. Racing Ass'n v. Perlmutter Publ'g, Inc.,*
   959 F. Supp. 578 (N.D.N.Y. 1997)......................................................................... 15

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
   2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ........................... 13

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
   2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ........................... 13

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ........................... 13

*Picard v. Bordier & Cie (In re Madoff)*,
   2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ........................... 13

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021) ........................................................... 10

*Picard v. Delta Nat'l Bank & Tr. Co. (In re Madoff)*,
   2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ........................... 13

*Picard v. First Gulf Bank (In re Madoff)*,
   2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ........................... 13

*Picard v. Greiff*,
   476 B.R. 715 (S.D.N.Y. 2012) ........................................................ 7

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011) ........................................................ 7

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
   2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ........................... 13

*Picard v. Meritz Fire & Marine Ins. Co. LTD. (In re Madoff)*,
   2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ........................... 13

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
   2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ........................... 13

*Picard v. Parson Fin. Panama S.A. (In re Madoff)*,
   2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ........................... 13

*Picard v. Pub. Inst. for Soc. Sec. (In re Madoff)*,
   2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ........................... 13

*Picard v. Union Sec. Inv. Tr. Co., Ltd. (In re Madoff)*,
   2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ........................... 13

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   12-mc-115-JSR (S.D.N.Y. May 16, 2012) .............................................................. 1

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).................................................. passim

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................................... 11, 19

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ...................................... passim

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ......................................................................... 23

*Tantaros v. Fox News Network, LLC*,
   465 F. Supp. 3d 385 (S.D.N.Y. 2020)............................................................. 17

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
   521 F. Supp. 3d 265 (E.D.N.Y. 2021) ............................................................ 23

## Statutes

11 U.S.C. § 544(b) ......................................................................................... 3

11 U.S.C. § 546(e) .................................................................................. passim

11 U.S.C. § 548(a) ......................................................................................... 3

11 U.S.C. § 548(a)(1)(A) ....................................................................... passim

11 U.S.C. § 550(a) ................................................................................. passim

11 U.S.C. § 741(7)(A) ................................................................................ 11

28 U.S.C. § 158(a)(3).............................................................................. 1, 14

28 U.S.C. § 1292(b) ............................................................................... passim

## Rules

Fed. R. Bankr. P. 8004 ................................................................................ 1

Fed. R. Civ. P. 12 ................................................................................. 11, 12

Defendants Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to
Barclays Bank S.A., and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank &
Trust Limited) (together, the "Barclays Defendants") respectfully submit this memorandum of law,
the accompanying declaration of Marc J. Gottridge (the "Gottridge Declaration" or "Gottridge
Decl."), and the exhibits thereto in support of their motion, pursuant to 28 U.S.C. § 158(a)(3) and
Rule 8004 of the Federal Rules of Bankruptcy Procedure, for leave to appeal from an order (the
"Order")[1] of the United States Bankruptcy Court of the Southern District of New York (the
"Bankruptcy Court") (Hon. Cecelia G. Morris, Bankruptcy Judge) denying their motion to dismiss
the Complaint, as amended (the "Complaint" or "Compl."), of plaintiff Irving H. Picard, Trustee
(the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").[2]

## PRELIMINARY STATEMENT

Ten years ago, this Court (Rakoff, J.) withdrew the reference from the Bankruptcy Court
in this and over 100 other adversary proceedings to address issues relating to the Trustee's ability
to pursue recovery claims notwithstanding the securities safe harbor created by Section 546(e) of
the Bankruptcy Code.[3]  The result was an Opinion and Order, *Securities Investor Protection Corp.
v. Bernard L. Madoff Investment Securities LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)
(Rakoff, J.) ("*Cohmad*"), which answered for the Bankruptcy Court and the parties to the sprawling
BLMIS liquidation proceedings certain fundamental questions concerning the interpretation and

---

[1]  The Order (ECF No. 141) was entered on July 21, 2022; a copy is attached as Exhibit A
to the Gottridge Declaration.  Except as indicated otherwise, "ECF No. ___" refers to filings on
the Bankruptcy Court docket in Adv. Pro. No. 11-02569.

[2]  By Stipulation and Order entered July 25, 2022 (ECF No. 144), the Bankruptcy Court
extended the Barclays Defendants' time to appeal the Order through August 25, 2022, rendering
this appeal and motion timely under Fed. R. Bankr. P. 8004(a).

[3]  *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-115-JSR,
(S.D.N.Y. May 16, 2012) (the "Section 546(e) Withdrawal Order"), ECF No. 119.

application of Section 546(e). In *Cohmad*, this Court held that: (i) a limited class of transferee defendants with actual knowledge of BLMIS's fraud is barred from claiming Section 546(e)'s protections; and (ii) Section 546(e) applies, independently of the securities contracts between BLMIS and the initial transferees, to withdrawals made by a BLMIS customer (*e.g.*, a feeder fund) to fulfill its payment obligations to redeeming financial institution defendants, by virtue of separate securities contracts between the feeder fund and the financial institution defendants. This Court instructed the Bankruptcy Court to implement these holdings on remand.

The Bankruptcy Court, however, misapplied the first *Cohmad* holding and ignored the second. Those fundamental errors prompt this appeal, which presents two pure and controlling questions of law, common to dozens of adversary proceedings pending in the Bankruptcy Court: (1) whether the Bankruptcy Court erred by interpreting *Cohmad* to preclude *innocent subsequent transferee defendants – i.e.*, those not alleged to have had actual knowledge of BLMIS's fraud – from asserting their Section 546(e) defenses, simply because the *initial* transferee allegedly had such knowledge; and (2) whether *Cohmad* alternatively requires dismissal under Section 546(e) because the initial transferee's withdrawals of funds from BLMIS were caused by their payment obligations to subsequent transferee financial institution defendants, under those defendants' securities contracts with the initial transferee.

In this adversary proceeding (the "Action"), the Trustee alleged that BLMIS never traded securities on behalf of its customers and that feeder fund Fairfield Sentry Limited ("Fairfield Sentry"), a BLMIS customer, knew of BLMIS's fraud. The Trustee further alleged that BLMIS made initial transfers to Fairfield Sentry for the purpose of funding redemption payments requested by the Barclays Defendants, and that by redeeming their shares in Fairfield Sentry and a sister feeder fund, the Barclays Defendants received subsequent transfers of BLMIS customer property.

The Trustee did not, however, allege that the Barclays Defendants, which dealt with initial transferee Fairfield Sentry at arm's length, knew of the BLMIS fraud.

Sections 544(b), 548(a), and 550(a) of the Bankruptcy Code authorize a trustee to avoid a debtor's fraudulent transfer of property and to recover, or claw back, the avoided transfer from the initial transferee and, in certain cases, from a subsequent transferee. But "Section 546(e) of the Bankruptcy Code, in turn, establishes an important exception to a trustee's clawback powers," "provid[ing] generally that certain securities-related payments, such as transfers made by a stockbroker 'in connection with a securities contract,' or 'settlement payment[s],' cannot be avoided in bankruptcy." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411, 414 (2d Cir. 2014) ("*Fishman*") (quoting 11 U.S.C. § 546(e)). Section 546(e) contains just one exception: for initial transfers avoidable under Section 548(a)(1)(A), which authorizes only the avoidance of transfers made with actual fraudulent intent within two years of bankruptcy.

On the Barclays Defendants' motion to dismiss, the Trustee conceded that the initial transfers relevant to the Action, other than the minority of transfers alleged to be within the Section 548(a)(1)(A) exception, satisfied Section 546(e)'s requirements. He also conceded that the Barclays Defendants lacked actual knowledge of the BLMIS fraud. The Bankruptcy Court nevertheless held, as a matter of law, that *Cohmad* deprived the Barclays Defendants of their ability to invoke that defense – and even rendered the Bankruptcy Court "powerless" to rule otherwise. *Memorandum Decision Denying Defendant's [sic] Motion to Dismiss*, ECF No. 140, at 15; *also available at* 2022 WL 2799924, at *7 (Bankr. S.D.N.Y. July 15, 2022) (the "Decision").[4]

---

[4] The Decision is attached as Exhibit B to the Gottridge Declaration.

3

The Bankruptcy Court misconstrued *Cohmad's* first holding – that transferee defendants with actual knowledge of BLMIS's fraud may not claim Section 546(e)'s protections.  As this Court explained in *Cohmad*, the *defendant's* actual knowledge determines whether it should be precluded from invoking Section 546(e), because Congress' purpose in creating the securities safe harbor – promoting investors' reasonable expectations as to the finality of their legitimate securities market transactions – is not served in the discrete class of cases where the defendants knew of the underlying fraud and understood that no securities were being traded.  The Bankruptcy Court's holding that *innocent subsequent transferee defendants* are barred from invoking Section 546(e), based on the knowledge of *initial transferees*, is a drastic and unwarranted extension of the limited *Cohmad* rule.  The Bankruptcy Court's Decision also undermines the rationale this Court stated for its decision in *Cohmad* (and, indeed, the very purpose of Section 546(e), as explained by this Court and the Second Circuit), because it sabotages – rather than promotes – investors' reasonable expectations as to the finality of their legitimate securities transactions.

The second *Cohmad* holding provides a separate and alternative way in which Section 546(e) shields the initial transfers at issue here from avoidance, independent of any BLMIS-Fairfield Sentry account agreements.  The facts alleged here by the Trustee precisely match the scenario outlined by this Court in *Cohmad*: the initial transferee, a feeder fund, withdrew money from BLMIS to fulfill its payment obligations to a defendant financial institution under securities contracts between the feeder fund and the defendant, to which BLMIS was not a party.  This issue was fully briefed and argued in the Bankruptcy Court, but that court ignored this additional way in which Section 546(e) applies in the Action, rendering its exclusive focus on initial transferee knowledge particularly problematic.

This Court issued its *Cohmad* decision nearly a decade ago to ensure that the Bankruptcy Court would correctly and faithfully apply its holdings across the dozens of actions in the BLMIS liquidation that raised the Section 546(e) defense. The Bankruptcy Court, however, is now serially misapplying (and/or omitting to apply) the guidance provided in *Cohmad.* The Bankruptcy Court's errors have serious practical consequences that should be redressed by an immediate appeal. By exercising its discretion to grant interlocutory review of the Order, and of nearly identical orders entered by the Bankruptcy Court in other cases, this Court would promote judicial economy. Reversals would substantially streamline this and forty similar pending actions – and terminate entirely seventeen others. The proposed appeal, moreover, raises only pure, controlling issues of law, involving the interpretation of this Court's own *Cohmad* decision, as to which there is a substantial ground for difference of opinion. The prerequisites for an interlocutory appeal are thus amply satisfied, and this Court should grant the Barclays Defendants leave to pursue it.

## THE QUESTIONS PRESENTED ON THIS APPEAL

1.      Did the Bankruptcy Court err in interpreting this Court's opinion in *Cohmad* to bar a subsequent transferee defendant from asserting a Section 546(e) defense merely because the initial transferee allegedly had actual knowledge of BLMIS's fraud, even though the subsequent transferee defendant was not alleged to have had such knowledge?

2.      Did the Bankruptcy Court err by failing to apply *Cohmad's* additional holding that Section 546(e) separately applies by virtue of securities contracts between an initial transferee investment fund and defendants, independent of the fund's securities contracts with BLMIS, where the Trustee alleged that the initial transferee fund withdrew money from BLMIS to fulfill its payment obligations to the defendants, which were redeeming shares in the investment fund?

## RELEVANT BACKGROUND

### A.    The Transfers and Claim at Issue

The Trustee asserts a single claim for recovery under Section 550(a) of the Bankruptcy

Code, alleging that the Barclays Defendants were subsequent transferees of purported BLMIS

customer property.  The Trustee's claims in this and approximately 80 other adversary proceedings

(together, the "Fairfield Subsequent Transfer Actions"), in which he seeks to recover in the

aggregate approximately $3 billion, are predicated on allegedly voidable initial transfers from

BLMIS to Fairfield Sentry.  In this Action, nearly 70% of the 133 subsequent transfers alleged,

and nearly 60% of the approximately $65 million the Trustee seeks to recover, are not subject to

avoidance under Section 548(a)(1)(A).  *See* Gottridge Decl. Ex. C; *see also infra* at 16 n.13.

### B.    *Cohmad*

The *Cohmad* decision followed this Court's withdrawal of the reference in over 100

adversary proceedings, specifically including this Action, to address the application of Section

546(e) to those actions.  *See* Ex. A to Section 546(e) Withdrawal Order, entry 28.  The proposed

appeal relates to two separate holdings in *Cohmad*: one establishing that actual knowledge of the

underlying BLMIS fraud by a transferee defendant bars that defendant from invoking the statutory

safe harbor, and the other identifying an alternative path to Section 546(e) protection based on

feeder funds' withdrawals of money from BLMIS to fund redemption requests by subsequent

transferees that are financial institutions.

### 1.    Under *Cohmad,* Transferee Defendants with Actual Knowledge of the BLMIS Fraud Are Not Entitled to the Protections of Section 546(e)

The Court in *Cohmad* recapitulated and reaffirmed its previous holdings – later confirmed

by the Second Circuit in *Fishman* (773 F.3d at 411-23) – that "Section 546(e) required the

dismissal of the Trustee's avoidance claims except those brought under Section 548(a)(1)(A) and

related recovery claims under Section 550(a)." *Cohmad,* 2013 WL 1609154, at *3 (citing *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) ("*Katz*"); *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd sub nom. Fishman*, *supra*). This conclusion was based on this Court's holdings that: (i) "the transfers at issue were "made by or to (or for the benefit of) a . . . stockbroker in connection with a securities contract," as BLMIS qualified as a "stockbroker" and its account agreements with its customers qualified as "securities contracts"; and (ii) alternatively, BLMIS customers' withdrawals from their accounts constituted "settlement payments" from a "stockbroker," and fell within the safe harbor for that independent reason. *Cohmad*, 2013 WL 1609154, at *2-3 (quoting Section 546(e)).

Addressing the situation of transferee defendants with "actual knowledge" that BLMIS was a Ponzi scheme and was not really trading securities, *id*. at *3-4, this Court drew a clear, bright line: if the Trustee "allege[s] that a defendant had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)." *Id*. at *4. The Court reiterated that, as it had noted previously in *Katz*, 462 B.R. at 452, Section 546(e)'s "purpose" was "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." *Cohmad*, 2013 WL 1609154, at *4. This Court then explained that

> in the context of [BLMIS's] fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.

*Id.* at \*4.  The Court, moreover, emphasized that to disentitle a transferee defendant from asserting

a Section 546(e) defense, "the Trustee must show, at a minimum, that the transferee had actual

knowledge that there were no actual securities transactions being conducted" by BLMIS.  *Id.*

Applying this principle to subsequent transferee defendants, this Court in *Cohmad* held

that even if an initial (or mediate) transferee "fail[ed] to raise a Section 546(e) defense against the

Trustee's avoidance of certain transfers," including "because the transferee settled with the Trustee

. . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against

recovery of those funds."  *Id.* at \*7.  This Court then reiterated the fundamental rule that "where

Section 546(e) applies to the Trustee's claims, the Trustee may only proceed against a subsequent

transferee . . . to recover those subsequent transfers under Section 550(a) as to which he could have

avoided the initial transfer under Section 548(a)(1)(A)."  *Id.*  This Court added, however, that

"[t]here is one caveat to this rule," namely that "to the extent an innocent customer transferred

funds to a subsequent transferee who had actual knowledge of [BLMIS]'s fraud, that subsequent

transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor."  *Id*.

The Court concluded its discussion of subsequent transferees as follows: "In sum, if the Trustee

sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew

of [BLMIS's] fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor."

*Id*. (emphasis added).

Nowhere in *Cohmad* did this Court state that an *innocent* transferee, lacking "actual

knowledge" of the BLMIS fraud, was also barred from claiming Section 546(e)'s protection.  To

the contrary, the Court ruled that where Section 546(e) applied by virtue of BLMIS's account

agreements with initial transferees (as the requisite "securities contracts" related to the transfers),

only those transferee defendants – whether initial or subsequent transferees – that *actually knew*

of BLMIS's fraud were precluded from relying on the statutory safe harbor:

> In summary, the Court concludes that while Section 546(e) generally applies to the
> adversary proceedings brought by the Trustee, those defendants who claim the
> protections of Section 546(e) through a [BLMIS] account agreement but who
> actually knew that [BLMIS] was a Ponzi scheme are not entitled to the protections
> of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims
> on this ground must be denied. Furthermore, both initial transferees and subsequent
> transferees are entitled to raise a defense based on the application of Section 546(e)
> to the initial transfer from [BLMIS].

*Id*. at *10.

### 2.    *Cohmad's* Separate Pathway to Section 546(e) Protection

This Court in *Cohmad* also identified an alternative way, not dependent on BLMIS account

agreements as the requisite "securities contracts," in which Section 546(e) affords protection to

certain subsequent transferee defendants – specifically, "financial institutions" or "financial

participants" that entered into "subscription agreements and redemption requests," which are

themselves "securities contracts." *Id*. at *8-9. The Court reasoned that although Section 546(e)

requires that a transfer, to be covered, must be made "in connection with a securities contract," the

statute's scope is not limited to "securities contracts" to which the debtor is a party, so long as the

initial transfer from BLMIS is "related to that security agreement." *Id*. at *9.[5] "Thus, a withdrawal

by a [BLMIS] customer caused by that party's payment obligations to a subsequent transferee

under a securities contract could qualify as 'related to' that later transaction . . . ." *Id*. The Trustee's

allegations, in actions to recover subsequent transfers, that an initial transferee investment fund

withdrew funds from its BLMIS account "because an investor in that fund sought redemption of

---

[5] As the Second Circuit later explained, "a transfer can be connected to, and can be made
in relation to, multiple documents or purposes simultaneously." *Fishman*, 773 F.3d at 422
(rejecting the Trustee's argument that payments made as part of a Ponzi scheme cannot have been
made "in connection with" a "securities contract" within the meaning of Section 546(e)).

its investment under the terms of its investment contract . . . appear[] to fit within the plain terms

of Section 546(e)," so long as "either the investment fund or the investor qualifies as a financial

institution or financial participant." *Id*. (footnote omitted).

   *Cohmad* did not address whether the allegations in any particular actions would be subject

to dismissal under this paradigm, *see id*. at *9 n.6, but ruled that "to the extent that a defendant

claims protection under Section 546(e) under a separate securities contract as a financial

participant or financial institution, the Bankruptcy Court must adjudicate those claims in the first

instance consistent with this Opinion," *id*. at *10. This Court thus returned the actions listed in the

Section 546(e) Withdrawal Order "to the Bankruptcy Court for further proceedings consistent with

this Opinion and Order." *Id.*

### C.    The *Cohmad* Issues on the Barclays Defendants' Motion to Dismiss

   Until recently, the Bankruptcy Court had no occasion to consider the issues addressed in

*Cohmad* in any of the Fairfield Subsequent Transfer Actions because they were (i) dismissed based

on decisions of this Court and the Bankruptcy Court on extraterritoriality and international comity,

(ii) reinstated after those decisions were reversed in *In re Picard*, 917 F.3d 85 (2d Cir. 2019), and

then (iii) stayed pending the Second Circuit's "good faith" decision in *Picard v. Citibank, N.A. (In

re Bernard L. Madoff Investment Securities LLC)*, 12 F.4th 171 (2d Cir. 2021). Last year, the

Bankruptcy Court reassigned this Action to Judge Morris (ECF No. 114), who lifted the stay.

   At a September 15, 2021 status conference concerning many of the Trustee's actions

against subsequent transferees, the Barclays Defendants' counsel requested, in anticipation of

motions to dismiss, that the Bankruptcy Court consolidate the briefing of issues common to a large

number of proceedings. Judge Morris rejected that request and instead directed that common

issues be briefed individually. *See* ECF No. 117, at 97-99. As a result, certain common issues

(including those relating to Section 546(e) and *Cohmad*) have already been briefed, argued, and

decided (in nearly identically worded decisions) several times over the past several months – a
process that is now destined to be repeated dozens of times, well into 2023.

The Barclays Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the
Federal Rules of Civil Procedure. Their first argument was that Section 546(e) barred the Trustee's
claims. *See* ECF No. 126 at 13-40; ECF No. 133 at 1-13. In his opposition memorandum (ECF
No. 130), the Trustee did not dispute that all the alleged "six-year" transfers at issue satisfied
Section 546(e)'s requirements, because, among other things, the alleged initial transfers were made
"in connection" with account agreements between BLMIS and Fairfield Sentry, which (as the
Second Circuit previously held) "satisfy the broad definition of 'securities contracts' under [11
U.S.C.] § 741(7)(A)." *Fishman*, 773 F.3d at 418. Nor did the Trustee contest the Barclays
Defendants' lack of knowledge of BLMIS's fraud. Rather, the principal contested issue on the
motion to dismiss was whether, under *Cohmad*, Fairfield Sentry's alleged "actual knowledge" of
the BLMIS fraud, which Judge Morris held (in another action)[6] had been adequately pleaded by
the Trustee, precluded the Barclays Defendants, as innocent subsequent transferees, from invoking
Section 546(e). The parties also contested the significance of this Court's additional *Cohmad*
holding recognizing that Section 546(e) was available to subsequent transferee financial
institutions that received redemption payments from initial transferee investment funds under
"securities contracts" to which BLMIS was not a party.

The Barclays Defendants' motion to dismiss was among the second group of such motions
in the Fairfield Subsequent Transfer Actions argued before the Bankruptcy Court, on June 15,
2022. The arguments focused on Section 546(e) issues, particularly the two *Cohmad* holdings

---

[6] *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*").

summarized above.  *See* Transcript of Proceedings, June 15, 2022 Hearing,[7] at 53-75.  One month

later, the Bankruptcy Court issued its Decision (ECF No. 140) denying the motion to dismiss in

its entirety.  Gottridge Decl. Ex. B; 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022).

### D.    The Bankruptcy Court's Decision and Order

In the Decision, Judge Morris discussed Fairfield Sentry's alleged knowledge of the

BLMIS fraud, and quoted *Cohmad* for the proposition that "those defendants who claim the

protections of Section 546(e) through a [BLMIS] account agreement but who actually knew that

[BLMIS] was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor,

and their motions to dismiss the Trustee's claims on this ground must be denied."  Gottridge Decl.

Ex. B at 14; 2022 WL 2799924, at *7.  Although the Barclays Defendants were *not* alleged to have

had such actual knowledge, the Bankruptcy Court stated that this Action was "one of the

consolidated cases on which the district court has already ruled" in *Cohmad*, so that the court was

"powerless to reconsider this issue."  *Id.*  Thus, despite the absence of allegations that the *Barclays*

*Defendants* had actual knowledge of the BLMIS fraud, the Bankruptcy Court deemed the Trustee's

allegations as to *Fairfield Sentry*'s knowledge "sufficient to survive a Rule 12(b)(6) motion on this

issue."  Gottridge Decl. Ex. B at 15; 2022 WL 2799924, at *7.

After noting that "[t]he safe harbor is not applicable to subsequent transfers" (rejecting an

argument the Barclays Defendants did not make), the Bankruptcy Court stated that the Barclays

Defendants' "reliance" on *Cohmad* was "unavailing."  *Id.*  In Judge Morris' view, this Court's

reference in *Cohmad* to "one caveat," 2013 WL 1609154, at *7 (see *supra* at 8) – referring to a

hypothetical case involving innocent initial transferees and subsequent transferees with actual

knowledge of the underlying fraud (*i.e.*, the opposite of the fact pattern alleged in the Action) –

---

[7] Attached as Exhibit D to the Gottridge Declaration.

was dispositive because "*Cohmad* did not 'leave open' any additional caveats for subsequent transferees who lack actual knowledge." Gottridge Decl. Ex. B at 16; 2022 WL 2799924, at *7. The Bankruptcy Court did not address the Barclays Defendants' argument that Section 546(e) additionally applied by virtue of their "securities contracts" with Fairfield Sentry.[8]

On July 21, 2022, the Bankruptcy Court entered the Order (ECF No. 141).

### E.    Other Defendants' Motions for Leave to Appeal

Both before and since the Bankruptcy Court issued its Decision denying the Barclays Defendants' motion to dismiss, it has issued a series of opinions denying motions to dismiss by other subsequent transferee defendants, many in nearly verbatim language.[9]

Defendants in other Fairfield Subsequent Transfer Actions whose motions to dismiss on Section 546(e) grounds were denied have filed motions for leave to appeal; two of them are scheduled to be heard by this Court (Rakoff, J.) on September 20, 2022.[10]

---

[8]    In the Decision, the Bankruptcy Court also either rejected or failed to address the arguments for dismissal made in the Barclays Defendants' motion based on grounds unrelated to Section 546(e). The Barclays Defendants do not seek leave to appeal on any of those grounds.

[9]    *See Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 2022 WL 2137073, at *8-10 (Bankr. S.D.N.Y. June 13, 2022); *Picard v. Banque Syz & Co., SA (In re Madoff)*, 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*, 2022 WL 2387523, at *8-10 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Lloyds TSB Bank PLC (In re Madoff)*, 2022 WL 2390551, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie (In re Madoff)*, 2022 WL 2390556, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale Vaudoise (In re Madoff)*, 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. First Gulf Bank (In re Madoff)*, 2022 WL 3354955, at *8-10 (Bankr. S.D.N.Y. July 18, 2022); *Picard v. Parson Fin. Panama S.A. (In re Madoff)*, 2022 WL 3094092, at *8-10 (Bankr. S.D.N.Y. Aug. 3, 2022); *Picard v. Meritz Fire & Marine Ins. Co. LTD. (In re Madoff)*, 2022 WL 3273044, at *8-10 (Bankr. S.D.N.Y. Aug. 10, 2022); *Picard v. Delta Nat'l Bank & Tr. Co. (In re Madoff)*, 2022 WL 3365256, at *5-6 (Bankr. S.D.N.Y. Aug. 12, 2022); *Picard v. Pub. Inst. for Soc. Sec. (In re Madoff)*, 2022 WL 3458962, at *10-13 (Bankr. S.D.N.Y. Aug. 17, 2022); *Picard v. Union Sec. Inv. Tr. Co., Ltd. (In re Madoff)*, 2022 WL 3572509, at *8-10 (Bankr. S.D.N.Y. Aug. 18, 2022).

[10]    *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR; *Picard v. Banque Syz & Co., SA*, No. 22-cv-6512-JSR.

## ARGUMENT

I.    **LEAVE TO APPEAL SHOULD BE GRANTED SO THIS COURT MAY CORRECT THE BANKRUPTCY COURT'S MISINTERPRETATIONS OF THE *COHMAD* DECISION**

### A.    The Applicable Standards

Appeals from non-final bankruptcy court orders may be taken if the district court grants leave under 28 U.S.C. § 158(a)(3), applying the standards of 28 U.S.C. § 1292(b), which governs the appealability of interlocutory district court orders. *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) ("*Enron*").  The order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation." *Enron*, 2006 WL 2548592, at *3 (citing 28 U.S.C. § 1292(b)).  Leave to appeal is warranted when the movant demonstrates the existence of "exceptional circumstances" that overcome the "general aversion to piecemeal litigation" and "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at *3.

Although "failure to establish one factor is not fatal to certification, particularly when other factors strongly counsel in favor of [an interlocutory] appeal," *In re GM LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 391 (S.D.N.Y. 2019) ("*GM Ignition*") (internal quotation marks and citation omitted), the following sections of this brief demonstrate that all three factors are satisfied here. And because the impact of the Bankruptcy Court's Section 546(e) holding extends to dozens of similar adversary proceedings that would, in the event of a reversal, be dismissed in their entirety or at a minimum be substantially streamlined, the Action presents compelling circumstances for the Court to exercise its discretion to grant interlocutory review of the Order.

14

### B.    The Questions Presented are Pure, Controlling Questions of Law

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law

that the reviewing court could decide quickly and cleanly without having to study the record."

*Enron*, 2006 WL 2548592, at *4 (citation omitted).    "[T]he resolution of an issue need not

necessarily terminate an action in order to be 'controlling' . . . ."    *Klinghoffer v. S.N.C. Achille*

*Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).    "It is enough that the Court's determination 'could

significantly affect the conduct of the action.'"    *GM Ignition*, 427 F. Supp. 3d at 392 (citation

omitted); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.) ("[T]he

phrase 'a controlling question of law' in [Section] 1292(b) [may] include a procedural

determination that may importantly affect the conduct of an action."); *N.Y. Racing Ass'n v.*

*Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997) ("It only has to be an issue that

could materially affect the outcome of the case.").    As this Court explained in *MF Global Holdings,*

*Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662

(S.D.N.Y. 2017) (Rakoff, J.) ("*MF Global*"), where an appeal "presents a pure question of law that

could be quickly resolved and would provide important guidance for similarly situated parties" –

as is the case here (*see infra* at 24-25) – it "presents a controlling question of law."    *Id.* at 665.

The two questions presented here are pure issues of law, both of which turn entirely on the

interpretation of this Court's decision in *Cohmad*.    *See, e.g.*, *Capitol Records, LLC v. Vimeo, LLC*,

972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (Abrams, J.) ("*Capitol Records*") (holding that the first

factor under Section 1292(b) was satisfied because "the issue turns almost exclusively on a

question of statutory interpretation").    Moreover, they are threshold issues that "go directly to the

plaintiff's ability to maintain some or all of its claims."    *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,

858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) ("*UBS*") (holding that threshold questions "are precisely

the type of legal issue that Congress intended to be addressed through the Section 1292(b)

procedure"). There is no need for the Court to "study the record," *Enron*, 2006 WL 2548592, at *4, or engage in fact-finding. The dispositive fact is undisputed: the Trustee has not alleged that the Barclays Defendants had actual knowledge of the BLMIS fraud.[11]   And the Trustee's opposition to the motion to dismiss was based squarely on a purely legal argument: that *Cohmad* supposedly renders irrelevant the knowledge of subsequent transferees so long as the initial transferee is alleged to have had actual knowledge of the underlying fraud.[12]

The pure questions of law at issue here are "controlling" because a decision reversing the Bankruptcy Court would dismiss the bulk of the Trustee's claim against the Barclays Defendants. Removing from the Action 92 of 133 alleged subsequent transfers, involving nearly $38 million of the approximately $64.7 million now at issue,[13] "could significantly affect the conduct of the action," and is therefore "controlling." *See GM Ignition*, 427 F. Supp. 3d at 392 (standard met where affirmance of an order would substantially reduce the damages plaintiffs could pursue, such

---

[11] *See* ECF No. 1 (Complaint) (not alleging such knowledge); ECF No. 126 (initial memorandum of law) at 12, 24-27; Gottridge Decl. Ex. D, Transcript of Proceedings, June 15, 2022 Hearing, at 55. Because the Trustee neither pleaded that the Barclays Defendants had such knowledge nor contested the issue in his opposition brief or at oral argument in the Bankruptcy Court, he has conceded the point. *See, e.g., McMillan v. City of New York*, 2011 WL 5237285, at *9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

[12] *See* ECF No. 130 (opposition memorandum of law) at 7-12; Gottridge Decl. Ex. D, Transcript of Proceedings, June 15, 2022 Hearing, at 67 (Trustee's counsel argued that under *Cohmad*, "where the initial transferee does not have actual knowledge . . . is the only time that a subsequent transferee's actual knowledge is relevant").

[13] These 92 alleged subsequent transfers total $37,748,268 – *i.e.*, 55 transfers in the aggregate amount of $23,834,072 made directly by Fairfield Sentry to a Barclays Defendant and 37 transfers totaling $13,914,196 that allegedly originated with Fairfield Sentry but were directly made by Fairfield Sigma. *See* Gottridge Decl. Ex. C, Chart C.6 & n.11. Certain defendants' previously filed motions for leave to appeal, which focused only on direct transfers from Fairfield Sentry, did not report the full amount of transfers in this Action that reversal of the Order would place beyond the Trustee's reach. *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-5602-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C, at 3.

that "the value of Plaintiffs' claims may be substantially compromised"). And as to one of the
three Barclays Defendants (Caixabank S.A.), 42 of the 47 alleged subsequent transfers would be
removed from the Action, reducing the Trustee's claim from over $18 million to less than
$650,000. *See* Gottridge Decl. Ex. C, Chart C.6.

In determining whether an issue is "controlling" under the Section 1292(b) test, "[c]ourts
also consider whether the certified issue has precedential value for a large number of cases."
*Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020); *see also Capitol
Records*, 972 F. Supp. 2d at 553 (that "resolution" of the "arguments will have far-reaching
implications in this case and others" supported interlocutory review) (citing *Klinghoffer*, 921 F.2d
at 24)). A decision on the issues presented here will have precedential value, at a minimum, for
dozens of Fairfield Subsequent Transfer Actions involving precisely the same questions.

### C.    There is Substantial Ground for Difference of Opinion Because the Bankruptcy Court's Decision is Inconsistent with *Cohmad* and its Rationale and Undermines Congress' Intent in Enacting Section 546(e)

Under the second prong of the Section 1292(b) test, "the 'substantial ground for a
difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court
applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4. This requirement may be
satisfied when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult
and of first impression for the Second Circuit." *Id*. (citation omitted). "It is the duty of the district
judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding
whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Flor
v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (alterations and citation omitted).

The issues presented by this appeal have not been decided by the Second Circuit, and the
arguments in opposition to the Bankruptcy Court's Decision are strong because the Decision
directly and repeatedly clashes with *Cohmad.* In *Cohmad*, this Court held that a transferee

17

defendant *with actual knowledge* of BLMIS's fraud cannot invoke the protections of Section 546(e) based on "securities contracts" between the initial transferee and BLMIS.  It did not hold, or even imply, that a transferee defendant *lacking* such actual knowledge was also precluded from relying on Section 546(e).  Rather, the Court drew a sharp distinction between defendants having "actual knowledge" of the BLMIS fraud and those who were innocent of such knowledge.  *See Cohmad*, 2013 WL 1609154, at *4 ("[I]f the [Complaint] adequately allege[s] that a defendant had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e).").

   The Bankruptcy Court, however, ignored that clear line.  It not only ruled that the Barclays Defendants – concededly innocent transferees – were precluded from relying on Section 546(e), but incorrectly insisted that *Cohmad compelled* that result.  *See* Gottridge Decl. Ex. B at 15; 2022 WL 2799924, at *7 ("The Court is powerless to reconsider this issue . . . .").

   By disentitling the class of "actual knowledge" defendants – and only that class – from relying on Section 546(e), *Cohmad* expressly aimed to promote what this Court (and later the Second Circuit)[14] identified as Congress' purpose in enacting Section 546(e): minimizing the displacement that a major bankruptcy can cause in the securities markets.  *Cohmad*, 2013 WL 1609154, at *4.  *Cohmad* sought to promote that legislative goal by "protecting the reasonable expectations of investors who believed they were signing a securities contract" while withholding "safe harbor" protection from defendants who, because they knew that BLMIS was a Ponzi scheme

---

[14] *See Fishman*, 773 F.3d at 420 ("Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)."); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ("Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors.  Its purpose is to protect a national, heavily regulated [securities] market by limiting creditors' rights.").

and not trading securities, lacked any such reasonable expectations. *Id*. The Bankruptcy Court's

Decision, however, frustrates – rather than protects – innocent subsequent transferees' reasonable

expectations, based on their legitimate securities contracts and transactions. Nor can the

Bankruptcy Court's holding be reconciled with *Fishman*, where the Second Circuit affirmed the

dismissal of the Trustee's actions against innocent *direct* BLMIS investors under Section 546(e).

773 F.3d at 423 ("[B]y enacting § 546(e), Congress provided that, for a very broad range of

securities-related transfers, the interest in finality is sufficiently important that they cannot be

avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A).").

It would be anomalous to deny innocent *subsequent* transferee defendants – one step further

removed from (and equally ignorant of) BLMIS's fraud – the same statutory protection.

Moreover, the Bankruptcy Court's holding that an innocent subsequent transferee

defendant is stripped of its right to claim Section 546(e) protection merely because a third party –

an unaffiliated initial transferee – happened to have "actual knowledge" is contrary to this Court's

repeated emphasis in *Cohmad* on the actual knowledge of the particular *defendant being sued*.

*See, e.g.*, *Cohmad*, 2013 WL 1609154, at *7 ("[I]f the Trustee sufficiently alleges that *the*

*transferee from whom he seeks to recover* a fraudulent transfer knew of [BLMIS]'s fraud, *that*

*transferee* cannot claim the protections of Section 546(e)'s safe harbor." (emphasis added));[15] *see*

*also id*. at *10 ("[W]hile Section 546(e) generally applies to the adversary proceedings brought by

the Trustee, *those defendants* who claim the protections of Section 546(e) through a [BLMIS]

account agreement but who actually knew that [BLMIS] was a Ponzi scheme are not entitled to

---

[15] In its Decision, the Bankruptcy Court quoted its own previous quotation (in *Fairfield Investment Fund*, 2021 WL 3477479, at *4) of this statement from *Cohmad*, but materially altered its meaning by inserting "[initial]" immediately before "transferee from whom he seeks to recover." *See* Gottridge Decl. Ex. B, at 13; 2022 WL 2799924, at *6.

the protections of the Section 546(e) safe harbor, and *their motions* to dismiss the Trustee's claims

on this ground must be denied" (emphasis added)).  Nothing in *Cohmad* warrants imputing initial

transferees' knowledge to innocent subsequent transferee defendants who dealt with them at arm's

length, much less compel the Bankruptcy Court to deny such defendants' motions to dismiss.

The Bankruptcy Court's reliance on the reference to "one caveat" in *Cohmad* is particularly

misplaced.  In *Cohmad*, this Court reiterated the general rule that "where Section 546(e) applies to

the Trustee's claims" – which the Trustee did not dispute is the case here – "the Trustee may only

proceed against a subsequent transferee insofar as he seeks to recover those subsequent transfers

under Section 550(a) as to which he could have avoided the initial transfer under Section

548(a)(1)(A)," and then stated that "[t]here is one caveat to this rule," precluding a subsequent

transferee "who had actual knowledge of [BLMIS's] fraud" from invoking Section 546(e), even

though the initial transferee was innocent.  *Id*. at *7.  The Bankruptcy Court, however, misstated

the "general rule" – asserting, without citing *Cohmad* or any other authority, that "[t]he general

rule is where the court looks to the actual knowledge of the initial transferee" – and then suggested

that in order to preserve the right of "subsequent transferees who lack actual knowledge" to invoke

Section 546(e), this Court would have needed to "leave open" an "additional caveat."  Gottridge

Decl. Ex. B at 15-16; 2022 WL 2799924, at *7.  But no further "caveats" are needed.  Innocent

subsequent transferees such as the Barclays Defendants are covered by the *general rule* stated by

this Court in *Cohmad*: where the Section 546(e) requirements are satisfied, as is concededly the

case here, the Trustee may not pursue a Section 550(a) recovery action against a transferee lacking

actual knowledge, except to recover those subsequent transfers as to which the initial transfers were avoidable under Section 548(a)(1)(A). *Cohmad*, 2013 WL 1609154, at *7.[16]

Although the Bankruptcy Court ignored it, the Trustee's concession (*see supra* at 11) that the Section 546(e) "safe harbor" applied to the initial transfers at issue meant that the Trustee was absolutely barred from pursuing claims based on the avoidability of those transfers (just as in *Fishman*), except to the extent that *Cohmad* precluded a particular defendant from asserting the Section 546(e) defense by reason of *that defendant's* "actual knowledge" of the BLMIS fraud. *Cohmad* did not diminish the scope of the safe harbor itself, but instead merely established a rule of limited application that disentitles defendants with "actual knowledge" of the underlying fraud from benefiting from Section 546(e). Under *Cohmad*, a particular defendant's disentitlement must depend solely upon whether it had the requisite "actual knowledge" of the BLMIS fraud. The Bankruptcy Court instead treated the *Cohmad* bar applicable to initial transferee Fairfield Sentry (based on its finding in *Fairfield Investment Fund* that the Trustee adequately pleaded that Fairfield Sentry had such "actual knowledge") as fatal to the ability of the Barclays Defendants – entities entirely separate from and unrelated to Fairfield Sentry – of *their* right to rely on Section 546(e).

---

[16] The Barclays Defendants did not, as the Bankruptcy Court incorrectly suggested, argue that the safe harbor directly applies to subsequent transfers. *See* Gottridge Decl. Ex. B, at 15; 2022 WL 2799924, at *7. Rather, the Barclays Defendants asserted that the safe harbor applied by its terms to the alleged *initial* transfers from BLMIS to Fairfield Sentry (which entered into a settlement agreement with the Trustee in 2011 and did not litigate the Section 546(e) issue). *See, e.g.,* ECF No. 126 (initial memorandum of law) at 16 ("The Alleged Initial Transfers are Covered by Section 546(e)."). As subsequent transferee defendants sued in a recovery action under Section 550(a), the Barclays Defendants were entitled to move to dismiss on Section 546(e) grounds, as *Cohmad* made clear. 2013 WL 1609154, at *7 ("[E]ven if the initial . . . transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . because the transferee settled with the Trustee . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds."); *see also id*. at *3 (explaining that the Court had twice previously held that Section 546(e) "required the dismissal of [both] the Trustee's avoidance claims" and of "related recovery claims under Section 550(a)").

The Bankruptcy Court thus erroneously disregarded the undisputed fact that the defendants in the Action – the Barclays Defendants – were innocent subsequent transferee defendants, whose right to claim Section 546(e)'s protections is in no way affected by *Cohmad*.

In addition to misconstruing *Cohmad's* first holding, the Bankruptcy Court entirely overlooked its second holding – *i.e.*, that the safe harbor may be invoked by financial institutions, such as the Barclays Defendants, that received from a feeder fund settlement payments for the redemption of their shares in the fund, where the fund caused the initial transfer to be made to honor its obligations under its securities contract with the defendants. This Court explained that such initial transfers are subject to Section 546(e), without regard to the initial transferees' BLMIS account agreements, because they "relate to" defendants' separate securities contracts with the feeder funds. *See Cohmad*, 2013 WL 1609154, at *9. The Barclays Defendants showed on their motion to dismiss that the facts alleged by the Trustee precisely matched the "situation" which this Court held "appears to fit within the plain terms of Section 546(e)."[17] *Id.* The Bankruptcy Court simply ignored the issue. But the alleged "actual knowledge" of the BLMIS fraud by initial transferee Fairfield Sentry (which the court below considered crucial) is immaterial under the second *Cohmad* holding, because the defendant is claiming Section 546(e)'s protection not on the basis of Fairfield Sentry-BLMIS account agreements, but rather on the basis of entirely separate agreements to which BLMIS was not even a party.

In sum, as to both issues presented for appeal, there is abundant "substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b).

---

[17] *See* ECF No. 126 (initial memorandum) at 117-20, 133 (reply memorandum) at 11-13; Gottridge Decl. Ex. D, Transcript of Proceedings, June 15, 2022 Hearing, at 62-64.

D.    An Immediate Appeal May Materially Advance the Ultimate
      Termination of the Action

"Although technically the question whether there is a controlling issue of law is distinct

from the question of whether certification would materially advance the ultimate termination of

the litigation, in practice the two questions are closely connected." *GM Ignition*, 427 F. Supp. 3d

at 393 (citation omitted).  An "immediate appeal is considered to advance the ultimate termination

of the litigation if that appeal promises to advance the time for trial or shorten the time required

for trial." *Enron*, 2006 WL 2548592, at *4 (citation omitted).  Because reversing the Order would

eliminate nearly 70% of the subsequent transfers at issue (*see supra* at 16 & n.13), it would

substantially reduce the scope of fact and expert discovery and the time required for trial.  *See*

*Capitol Records*, 972 F. Supp. 2d at 552 (where nearly three quarters of the copyright

infringements at issue might be dismissed under a statutory "safe harbor," the third Section 1292(b)

factor was satisfied and the question certified for interlocutory appeal); *see also United States ex*

*rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 279 (E.D.N.Y.

2021) (an appellate ruling resulting in dismissal of an action "at least in substantial part" would

"advance the trial schedule and expedite the litigation," satisfying the third factor (collecting

cases)).

As with the first factor (controlling issue of law), "[t]he fact that the Court's ruling likely

impacts a large number of claims further counsels in favor of appeal." *GM Ignition*, 427 F. Supp.

3d at 393.  So, too, does the size and complexity of the litigation.  *Id*.  And by significantly

reducing the value of the Trustee's claim, an appellate ruling might promote settlement, which

would otherwise be difficult to achieve due to legal uncertainty about the viability of the bulk of

that claim.  *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (Posner,

J.) (accepting a certified appeal under Section 1292(b) where the absence of interlocutory review

would leave uncertainty about a major claim and "delay settlement" of a class action; this was "enough to satisfy the 'may materially advance' clause of Section 1292(b)"); *GM Ignition*, 427 F. Supp. 3d at 394 (certifying interlocutory appeal in a multi-district litigation where "a broad swath of Plaintiffs' claims are likely to be resolved by settlement, and the value of that settlement will be heavily influenced by the Court's Opinion and Order"); *UBS*, 858 F. Supp. 2d at 338 (certifying interlocutory appeal; an appellate ruling would "remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases," was "likely to significantly affect the parties' bargaining positions," and might "hasten the termination of [the] litigation through settlement").

### E.    Exceptional Circumstances Warrant Permitting an Immediate Appeal

This motion presents exceptional circumstances in that appellate resolution of the issues presented will not only have "far-reaching implications in this case," but also in many "others." *Capitol Records*, 972 F. Supp. 2d at 553.  The appeal sought in this Action and in others raising the same issues (*see supra* at 13 n.10) "would provide important guidance for similarly situated parties," *MF Global*, 296 F. Supp. 3d at 665, and "[t]he fact that the Court's ruling likely impacts a large number of claims further counsels in favor of appeal."  *GM Ignition*, 427 F. Supp. 3d at 393 (granting Section 1292(b) certification in the context of a multi-district litigation); *see also UBS*, 858 F. Supp. 2d at 338-39; *cf. Klinghoffer*, 921 F.2d at 24 ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the [D]istrict [C]ourt.").

There is no shortage of such other cases.  In 17 pending Fairfield Subsequent Transfer Actions, all the relevant alleged initial transfers were made more than two years before the BLMIS petition date, and are therefore unaffected by Section 546(e)'s express exception for claims under Section 548(a)(1)(A).  *See Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C.  All the alleged initial transfers in those actions are subject to

Section 546(e) under this Court's rulings in *Katz* and *Greiff* and the Second Circuit's decision in *Fishman*, and the Trustee has not alleged actual knowledge on the part of any of the defendants. Correcting the Bankruptcy Court's misinterpretation of *Cohmad* would result in the complete dismissal of all these proceedings, involving over $700 million in claims.

In addition, in 41 other pending Fairfield Subsequent Transfer Actions, including this one, many (but not all) of the alleged initial transfers – totalling over $1.1 billion (based on transfers to defendants directly from Fairfield Sentry without even considering transfers from its sister funds such as Fairfield Sigma) – occurred outside of the two-year lookback period for Section 548(a)(1)(A) claims. *See Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C. Correcting on appeal the Bankruptcy Court's misinterpretation of *Cohmad* would substantially reduce the scope of all those actions, streamlining discovery and trials. Such discovery is sure to be extremely expensive and time-consuming. For example, in a pending Fairfield Subsequent Transferee Action that has survived the motion to dismiss stage, the Bankruptcy Court recently entered a scheduling order providing for nearly three years of discovery proceedings, through April 2025. *See Picard v. Bureau of Labor Ins. (In re Madoff)*, Adv. No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022), ECF No. 134 (Case Mgmt. Plan), ¶ 3(a). The efficient administration of this complex litigation, as well as fairness to innocent subsequent transferee defendants that have already been exposed to significant litigation expense over many years, therefore militates in favor of permitting immediate appellate review of the Bankruptcy Court's erroneous interpretation of this Court's decision in *Cohmad*.

## CONCLUSION

For the foregoing reasons, the Barclays Defendants should be granted leave to appeal from the Bankruptcy Court's Order.

25

Dated: New York, New York
      August 22, 2022

Respectfully submitted,

**HERBERT SMITH FREEHILLS**
** NEW YORK LLP**

By:    /s/ *Marc J. Gottridge*
      Marc J. Gottridge
      Michael Schoeneberger
      Christopher Emch
      450 Lexington Avenue
      New York, New York 10017
      Telephone: (917) 542-7600
      marc.gottridge@hsf.com
      michael.schoeneberger@hsf.com
      chris.emch@hsf.com

*Attorneys for Defendants Barclays Bank*
*(Suisse) S.A., Caixabank S.A., as successor by*
*merger to Barclays Bank S.A., and Zedra*
*Trust Company (Jersey) Limited (f/k/a*
*Barclays Private Bank and Trust Limited)*