**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02763 (CGM) |
| Plaintiff, | |
| v. | |
| INTELIGO BANK LTD., f/k/a BLUBANK LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT INTELIGO'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................3

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................3

II.     DEFENDANT AND ITS INVESTMENTS IN FAIRFIELD ............................4

ARGUMENT...........................................................................................................7

I.      THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT .....7

        A.      Defendant Purposefully Availed Itself of the Laws and Privileges of
                Conducting Business in New York and the United States by Investing in the
                Fairfield Funds ...............................................................................10

                1.      Defendant's Intentional Investments With BLMIS Through the
                        Fairfield Funds Establish Minimum Contacts ...........................10

                        a.      *BLI* and Recent Decisions of This Court Establish Jurisdiction....11

                        b.      *Walden* Does Not Save Defendant From this Court's
                                Jurisdiction.......................................................................13

                2.      Defendant had Numerous Additional Contacts With New York in
                        Connection With its Investments ...............................................14

                3.      Defendant's Fee Sharing Arrangement With FGG in New York is an
                        Additional Jurisdictional Contact ..............................................16

                4.      The Forum Selection and Choice of Law Clauses in the Subscription
                        Agreements are Strong Jurisdictional Contacts .........................17

                5.      Defendant's Purposeful Use of New York Bank Accounts Supports
                        Specific Jurisdiction.................................................................18

                6.      Defendant's Contacts With the Forum are Sufficiently Related to the
                        Trustee's Claims ......................................................................22

        B.      The Exercise of Personal Jurisdiction Over Inteligo is Reasonable .....................23

        C.      Alternatively, the Trustee is Entitled to Jurisdictional Discovery ........................24

i

II.    DEFENDANT'S MERE CONDUIT AFFIRMATIVE DEFENSE IS PREMATURE
       AND IMPROPERLY RELIES ON FACTS OUTSIDE THE COMPLAINT THAT
       IN ANY EVENT DO NOT ESTABLISH CONDUIT STATUS ....................................24

       A.    The Mere Conduit Defense is Premature ..............................................................25

       B.    Defendant's Conduit Defense Improperly Relies on Facts Outside the
             Complaint .............................................................................................................26

       C.    Even if the Court Were to Consider the Mere Conduit Defense at This Stage,
             Defendant has not Established it ..........................................................................27

III.   SECTION 546(E)'S SAFE HARBOR DOES NOT APPLY TO DEFENDANT AND
       DEFENDANT'S RELIANCE ON *MERIT* IS MISPLACED ..........................................28

       A.    The Trustee and This Court Correctly Interpret *Cohmad* .....................................32

       B.    Good Faith is an Affirmative Defense and Thus Inappropriate at the Motion
             to Dismiss Stage ...................................................................................................36

CONCLUSION ....................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007)...................................................................................25

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)........................................................................................9

*Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016).................................................................18, 19, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................27

*Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*,
    No. 05-50867, 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006)........................25

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
    640 B.R. 604, 618 (S.D.N.Y. 2022).................................................18, 19, 20, 22

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990).....................................................................................7

*In re Banco Santander*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ..................................................................21

*Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)...................................................................................28

*Berdeaux v. One Coin Ltd.*,
    561 F. Supp.3d 379 (S.D.N.Y. 2021)....................................................................21

*In re Bernard L. Madoff Inv. Securities LLC (Picard v. Ida Fishman Rev. Trust)*,
    773 F.3d 411 (2d Cir. 2014)...................................................................................31

*Bonded Financial Servs. v. European Am. Bank*,
    838 F.2d 890 (7th Cir.1988) ..................................................................................28

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)...........................................................................................14

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................8, 9, 14, 18

*Cargo Partner AG v. Albatrons, Inc.*,
    352 F.3d 41 (2d Cir. 2003)...................................................................................26

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010).............................................................................7, 23

*Christy v. Alexander & Alexander of NY Inc. (In re Finley Kumble, Wagner,*
    *Heine, Underberg, Manley, Myerson, & Casey)*,
    130 F.3d 52 (2d Cir.1997)...............................................................................26, 28

*In re CVEO Corp.*,
    327 B.R. 210 (Bankr. D. Del. 2005) ...................................................................26

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013)................................................................18

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)...................................................................................7

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .........18, 19

*Enron Corp. v. J.P. Morgan Securities Inc. (In re Enron Corp.)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006)...............................................................25, 27

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp.2d 35 (S.D.N.Y. 1999) .......................................................................9

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp.3d 323 (S.D.N.Y. 2019), *aff'd in part*, 40 F.4th 56 (2d Cir. 2022)....................20

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021).............................................................................8, 21, 22

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000)..................................................................................27

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global*
    *Crossing Ltd.)*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008)...................................................................25

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .............................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..............................................................................................8

iv

*Hill v. HSBC Bank*,
  207 F.Supp.3d 333 (S.D.N.Y. 2016)................................................................20, 21

*HSH Nordbank AG New York Branch v. St.*,
  No. 11-CIV-9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ........................18, 22

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)................................................................................8, 9

*Isaiah v. JPMorgan Chase Bank*,
  960 F.3d 1296 (11th Cir. 2020) ......................................................................25

*In re J.P. Jeanneret Assoc., Inc.*,
  769 F. Supp.2d 340 (S.D.N.Y. 2011)..................................................................26

*Kiobel v. Royal Dutch Petroleum Co.*,
  No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009)....................24

*Kopec v. Coughlin*,
  922 F.2d 152 (2d Cir.1991)...........................................................................27

*Liberatore v. Calvino*,
  742 N.Y.S.2d 291 (App. Div. 1st Dep't 2002) .......................................................15

*Maranga v. Vira*,
  386 F. Supp. 2d 299 (S.D.N.Y. 2005)................................................................17

*McGee v. Int'l Life Ins. Co.*,
  335 U.S. 220 (1957)....................................................................................8

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004)..........................................................................36

*Merit Management Group, LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018)......................................................................28, 29, 30

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996).............................................................................9

*In re Motors Liquidation Co.*,
  565 B.R. 275 (Bankr. S.D.N.Y. 2017)................................................................20

*Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank,
  N.A. (In re Motors Liquidation Company)*,
  552 B.R. 253 (Bankr. S.D.N.Y. 2016)...............................................................25

*Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*,
  No. 11-11388 (JLG), 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016).......................27

*NuMSP v. St. Etienne*,
462 F.Supp.3d 330 ............................................................................................27

*Picard v. Banca Carige S.P.A.*,
Adv. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30,
2022) ................................................................................................... *passim*

*Picard v. Banque Cantonale Vaudoise*,
Adv. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14,
2022) ................................................................................................... *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30,
2022) ................................................................................................... *passim*

*Picard v. Banque SYZ & Co., SA*,
Adv. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14,
2022) ................................................................................................... *passim*

*Picard v. Barclays Bank (Suisse) S.A., et al.*,
Adv. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15,
2022) ................................................................................................... *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..............................................19, 20, 23, 33

*Picard v. Bordier & Cie*,
Adv. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30,
2022) ................................................................................................... *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................... *passim*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
No. 21-1059, 142 S. Ct. 1209 (2022)............................................................4, 25, 36

*Picard v. Delta Nat'l Bank and Trust Co.*,
Adv. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12,
2022) ................................................................................................... *passim*

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...........................................................8, 9, 22

*Picard v. Fairfield Inv. Fund (In re BLMIS)*,
No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479
(Bankr. S.D.N.Y. Aug. 6, 2021) ............................................................ *passim*

*Picard v. First Gulf Bank*,
  Adv. No. 11-02541 (CGM), 2022 WL 3354955 ........................................................... *passim*

*Picard v. JPMorgan Chase & Co.*,
  No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ......................... 12

*Picard v. Lloyds TSB Bank PLC*,
  Adv. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30,
  2022) ............................................................................................................... *passim*

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................... 8, 11, 23

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
  Adv. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10,
  2022) ............................................................................................................... *passim*

*Picard v. Miller (In re BLMIS)*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) ............................................................................ 26

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) ...................................................................... *passim*

*Picard v. Nelson (In re BLMIS)*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) ........................................................................ 26

*Picard v. Parson Finance Panama S.A.*,
  Adv. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
  2022) ............................................................................................................... *passim*

*Picard v. The Public Institution for Social Security*,
  Adv. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17,
  2022) ............................................................................................................... *passim*

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*,
  Adv. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18,
  2022) ............................................................................................................... *passim*

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) ......................................................................... 11, 24, 31

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ........................................................................................ 26

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) .......................................................................................... 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  No. 12-MC-115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..................32, 33, 34, 35

*SIPC v. BLMIS (In re Madoff Sec.),*
  501 B.R. 26 (S.D.N.Y. 2013) ...............................................................................................35

*SPV Osus Ltd. v. UBG AG,*
  882 F.3d 333 (2d Cir. 2018)..........................................................................................20, 21

*In re SunEdison, Inc.,*
  620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................................34

*Taman v. Frannabank S.A.L.,*
  677 F. Supp. 2d 720 (S.D.N.Y. 2010)..................................................................................22

*To v. HSBC Holdings, plc,* No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y.
  Mar. 1, 2017).........................................................................................................................20

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,*
  916 F.3d 143 (2d Cir. 2019).................................................................................................9

*Universal Trading,* 2012 WL 6186471, *1, *3 (S.D.N.Y. Dec. 12, 2012)..................................22

*Walden v. Fiore,*
  571 U.S. 277 (2014).................................................................................................13, 14, 15

*Waldman v. Palestine Liberation Org.,*
  835 F.3d 317 (2d Cir. 2016).................................................................................................23

**Statutes**

11 U.S.C. § 546(e) ............................................................................................ *passim*

11 U.S.C. § 548(a)(1)(A) ...............................................................................................32, 33

11 U.S.C. § 550.............................................................................................................29, 33

11 U.S.C. § 550(a) ....................................................................................................31, 33, 35

11 U.S.C. § 550(b)...........................................................................................................36

15 U.S.C. §§ 78aaa-*lll* ..................................................................................... *passim*

**Rules**

Fed. R. Bankr. P. 7012 ....................................................................................................26

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 27

Fed. R. Civ. P. 12(b)(6)........................................................................................................... *passim*

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation

of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law and declaration of Amy E. Vanderwal

("Vanderwal Decl."), in opposition to defendant Inteligo Bank Ltd.'s ("Inteligo" or "Defendant")

motion to dismiss the Trustee's Complaint, ECF No. 1 ("Compl.")[1] pursuant to Federal Rules of

Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

The Trustee filed this action against Defendant as part of his continuing efforts in this

SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of

Madoff's Ponzi scheme.  In this action, the Trustee seeks to recover approximately $11 million

in subsequent transfers Defendant received from Fairfield Sentry Limited ("Sentry") and

Fairfield Sigma Limited ("Sigma," together with Sentry, the "Fairfield Funds").  Defendant

moves to dismiss the Trustee's Complaint, arguing that (1) this Court lacks personal jurisdiction

over Defendant; (2) Defendant is a mere conduit because it invested with the Fairfield Funds on

behalf of its customers and clients; and (3) in the alternative, if it is not a mere conduit,

Defendant is the initial transferee of the transfers at issue and therefore entitled to the protections

afforded by Section 546(e).  These and Defendant's other arguments lack merit, and Defendant is

no differently situated than the subsequent transferee defendants in other recovery actions that

---

[1] Unless otherwise noted, all ECF references are to *Picard v. Inteligo*, Adv. No. 11-02763 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011).

1

have recently come before this Court.[2]

 *First*, this Court has specific personal jurisdiction over Defendant.  While Defendant fails to even acknowledge the decisions issued by this Court addressing personal jurisdiction, the Trustee's allegations here are based on similar contacts as those found sufficient in this Court's recent decisions in *Multi-Strategy*, *Banque Syz*, *Carige*, *Lombard Odier*, *First Gulf*, *Parson*, *Meritz*, *Union Sec.*, and *PIFSS*.  Defendant invested in the Fairfield Funds, knowing from the funds' documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of Sentry's investments; that Sentry fed substantially all of its funds into BLMIS; that Sigma was fully invested in Sentry; and that BLMIS was essential to the funds' investments. Investing in BLMIS was the entire point.  Defendant also designated and used United States bank accounts to deposit funds and receive transfers.  Further, Defendant communicated with Fairfield Greenwich Group ("FGG") in New York regarding the Fairfield Funds, met with FGG management in New York, and worked hand-in-hand with FGG New York to bring new investors into its funds.  These facts, plus multiple additional contacts detailed herein, establish jurisdiction.

---

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. No. 11-02541 (CGM), 2022 WL 3354955 ((Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Finance Panama S.A.*, Adv. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ("*Union Sec.*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. The Public Institution for Social Security*, Adv. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*").

*Second*, the mere conduit defense asserted by Defendant is premature at the pleading stage and should be developed during discovery for resolution at a later stage of this case. It is well-settled that the defense requires a fact-intensive analysis that is inappropriate for resolution on a motion to dismiss. In arguing for dismissal on this ground, Defendant also improperly interjects its own unsupported facts which, in any event, come nowhere near establishing mere conduit status.

*Third*, Defendant's alternate argument that if it is not a mere conduit, Sentry is, making Defendant an initial transferee protected by Section 546(e), has no basis in fact, is unmoored from the Complaint, and is inconsistent with the position it has taken for more than a decade, namely that it is a subsequent transferee. Defendant is in fact a subsequent transferee of the Fairfield Funds and this Court has repeatedly held Section 546(e) does not independently shield recovery of subsequent transfers.

The Trustee respectfully requests that the Court deny the Motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS in New York until its collapse in 2008. *See* Compl. ¶¶ 23, 31. BLMIS was a registered broker-dealer in New York. *Id.* ¶ 23. BLMIS had three principal business units: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 24–25. In

reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶ 28.  On December 11,

2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of

federal securities laws, including securities fraud, investment adviser fraud, and mail and wire

fraud.  *Id.* ¶ 11.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder

funds"—large investment funds created for the express purpose of funneling investors' funds

into BLMIS.  *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171,

179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 142 S. Ct. 1209

(2022) ("*Citibank*").  Defendant Inteligo knowingly invested in the Fairfield Funds, which it

knew were BLMIS feeder funds.  Compl. ¶ 6.

## II.    DEFENDANT AND ITS INVESTMENTS IN FAIRFIELD

Inteligo, formerly Blubank, Ltd., is a private bank incorporated under the laws of the

Bahamas with its headquarters in Centreville, Nassau, the Bahamas.  *See* Stipulation and Order,

ECF No. 114 (Mar. 15, 2022); *see also* Compl. ¶ 22.  Inteligo also maintains a branch office in

Panama, Republic of Panama. *Id.*  In January 2010, Inteligo changed its name from Blubank Ltd.

to Inteligo; prior to May 2003, Blubank Ltd. was known as Interbanc Overseas Ltd.  *See*

Vanderwal Decl. Ex. 2; Compl. ¶ 22.  Defendant made its initial investment in Sentry in January

2001 and continued investing in and receiving redemptions from BLMIS through Sentry until

November 2008. Compl. Ex. D; Vanderwal Decl. Ex. 18.  In 2005, Defendant began investing in

Sigma and continued investing in and receiving redemptions until at least 2006.  Compl. Ex. F;

*see* Vanderwal Decl. Exs. 4, 5.  Prior to BLMIS's collapse, Defendant received redemptions

from Sentry totaling $10,745,161 and from Sigma totaling $72,944.  Compl. ¶¶ 41, 43.

The Fairfield Funds were managed by FGG, a *de facto* partnership with its principal

place of business in New York. *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789

(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with

BLMIS. *Picard v. Fairfield Sentry Limited, et al.*, Adv. No. 09-01239 (CGM), Amended

Complaint ¶ 318 (ECF No. 23). Some of the subsequent transfers Defendant received were

transferred from Sentry to Sigma, and then to Defendant. Sigma acted as a foreign currency

feeder fund, facilitating Euro investments with BLMIS and invested all or substantially all of its

assets with Sentry. *Id.* ¶¶ 52.

Investors in the Fairfield Funds, including Defendant, executed subscription agreements,

which acknowledged their sophistication and that they had "such knowledge and experience in

financial and business matters that [they were] capable of evaluating the risks of this

investment." Compl. ¶ 7; Vanderwal Decl. Ex. 5 ¶8; Exs. 3-8. In connection with its

subscriptions, Defendant agreed to New York choice of law, jurisdiction, and forum selection

clauses. Compl. ¶ 7; Vanderwal Decl. Ex. 3 ¶¶ 16,19; Ex. 5 ¶¶ 17, 20. The subscription

agreements also incorporated the then-operative Private Placement Memoranda ("PPMs") for the

applicable funds, and by signing, Defendant warranted that it had "received and read" a copy of

the PPMs. Vanderwal Decl. Ex. 3 ¶ 7; Ex. 5 ¶ 7; *see also* Exs. 11-12. The Fairfield Funds'

PPMs explicitly disclosed BLMIS's multiple roles as the *de facto* investment manager, broker-

dealer, and custodian for Sentry and highlighted the numerous U.S. connections inherent in

investing in Sentry. *Id.* Ex 9 at p. 6; Ex. 12 at p. 16; Ex. 14 at p. 16. The PPMs also disclosed

how "[t]he services . . . of Bernard L. Madoff Investment Securities are essential to the continued

operation of [Sentry]." *Id.* Ex. 9 ¶ 4; Ex. 12 ¶ 3; Ex. 14 p. 9, ¶ 3. The PPMs specifically

informed investors that BLMIS—not FGG or their service providers—would have custody of Sentry's assets in the United States and would execute the funds' purported investment strategy. *Id.* Ex. 10 at ¶ 17, p. 14; Ex. 12 ¶ 17; Ex. 14 ¶ 18, p. 16.

Over the course of its investments, Defendant requested and received current versions of the Fairfield Funds' long-form subscription agreements and PPMs containing this information. *Id.* Exs. 9, 10, 11, 12, 14. Defendant also communicated with FGG personnel in New York regarding its Fairfield Funds' investments via email, telephone calls, and in-person meetings. Compl. ¶ 7; *see* Vanderwal Decl. Exs. 4, 6, 30-33.

Like all Sentry investors, Defendant sent its Sentry subscription payments to and received redemptions from an HSBC Bank USA correspondent bank account in New York. Compl. ¶ 7; Vanderwal Decl. Exs. 5-6 ¶¶ 8-12. Subscription payments from Defendant were then deposited by Sentry into BLMIS's account at JPMorgan Chase Bank in New York. *Picard v. Fairfield Sentry Ltd.*, Adv. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), Fairfield Second Amended Compl., ECF No. 286 ¶ 38 ("Fairfield SAC"). In addition, Defendant designated and used its own JPMorgan Chase bank account in New York to receive its redemption payments from and make its subscription payments to the Fairfield Funds. *See, e.g.*, Vanderwal Decl. Exs. 19-23.

Defendant's subscription agreements, and its redemption requests, were signed by and on behalf of Defendant. Vanderwal Decl. Exs. 5-6, 19-23, 26-33. None of the documents in the Trustee's possession regarding Defendant's subscription or redemption payments refer to Defendant's customers or indicate that Defendant was acting as an intermediary in the transaction. *See, e.g.*, *Id.* Exs. 4-6; Exs. 19-24.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry, Sigma, and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  Compl. ¶ 35; *see also* Fairfield SAC.  In 2011, the

Trustee settled with the defendants in that action.  Compl. ¶ 40.  As part of the settlement, Sentry

consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the

BLMIS estate.  *Id.*  Sigma separately consented to judgment in the amount of $752.3 million.  *Id.*

As a feeder fund that invested in BLMIS indirectly through Sentry, this amount represents a

portion of Sentry's $3.054 billion in withdrawals from BLMIS.  *See Picard v. Fairfield Sentry

Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), Sigma

Consent Judgment, ECF No. 110.  The Trustee then commenced a number of adversary

proceedings against defendants like Inteligo to recover the approximately $3 billion in missing

customer property.

## ARGUMENT

**I.    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only

make a *prima facie* showing that personal jurisdiction exists.  *Dorchester Fin. Sec. Inc. v. Banco

BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be

established solely by allegations."  *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt,

S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)) ("Prior to discovery, a plaintiff challenged by a

jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient

allegations of jurisdiction").  A plaintiff also may establish a *prima facie* case of jurisdiction

through affidavits and supporting materials that contain averments of facts outside the pleadings;

these are to be construed in the light most favorable to the plaintiff, resolving all doubts in

plaintiff's favor.  *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010);

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directed its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475–76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).

Under the second prong, the suit must "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, (2021). Specific jurisdiction does not require "proof that [the] plaintiff's claim came about because of the defendant's in-state conduct." *Multi-Strategy*, 641 B.R. at 88 (quoting *Ford Motor Co.*, 141 S. Ct. at 1026; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *4; *First Gulf*, 2022 WL 3354955, at *4; *Parson*, 2022 WL 3094092, at *5; *Meritz*, 2022 WL 3273044, at *4; *Union Sec.*, 2022 WL 3572509, at *4; *PIFSS*, 2022 WL 3458962, at *6. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum."

*In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Second, the Court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *4; *Lombard Odier*, 2022 WL 2387523, at *4; *First Gulf*, 2022 WL 3354955, at * 4; *Parson*, 2022 WL 3094092, at *5; *Meritz*, 2022 WL 3273044, at *5; *Union Sec.*, 2022 WL 3572509, at *4; *PIFSS*, 2022 WL 3458962, at *6; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

Overall, rather than analyze each contact in isolation, the Court should look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp.2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

A.    **Defendant Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York and the United States by Investing in the Fairfield Funds**

Defendant had numerous contacts with New York that establish this Court's jurisdiction. Defendant: (1) purposefully targeted the New York securities market by investing in the Fairfield Funds, knowing that its assets were managed and custodied by BLMIS in New York; (2) knowingly contacted the forum through communications and visits to New York regarding its Fairfield Funds' investments and fee sharing arrangement with FGG; (3) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to its Fairfield Funds' investments; and (4) designated and used its JPMorgan Chase bank account in New York to receive its redemptions. As discussed below, many of these contacts are sufficient in and of themselves to support jurisdiction. But in their totality, these contacts plainly establish that Defendant availed itself of the forum. These contacts also make it clear that contrary to Defendant's arguments, the Trustee is not basing jurisdiction solely on Defendant's relationship with the Fairfield Funds or advocating for a "beneficial owner" jurisdictional test. Mot. at 4.

1.    **Defendant's Intentional Investments With BLMIS Through the Fairfield Funds Establish Minimum Contacts**

The Trustee's allegation that Defendant knowingly invested with BLMIS through the Fairfield Funds, alone, establishes a *prima facie* showing of jurisdiction over Defendant. *Banque Syz*, 2022 WL 2135019, at *3 (finding the allegation that defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry," alone is sufficient to establish a *prima facie* showing of jurisdiction . . . in the pre-discovery stage of litigation."); *Carige*, 2022 WL 2387522, at *2 (same); *Lombard Odier*, 2022 WL 2387523, at *2 (same); *First Gulf*, 2022 WL 3354955, at *2 (same); *Parson*, 2022 WL 3094092, at *2 (same); *Meritz*, 2022 WL 3273044, at *2 (same); *Union Sec.*, 2022 WL 3572509, at *2 (same); *PIFSS*, 2022 WL

3458962 , at *4 (same).  As the Second Circuit recognized, "[w]hen these [subsequent transfer]

investors chose to buy into feeder funds that placed all or substantially all of their assets with

[BLMIS], they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir.

2019) ("*ET Decision*"*); see also Maxam Absolute Return Fund*, 460 B.R. at 116–20 (finding

jurisdiction where defendant knew and intended that the funds it invested with BLMIS feeder

fund would be sent to New York for investment by BLMIS in New York).

By executing the subscription agreements and affirming that it received and read Sentry's

PPM, Defendant knew that: (1) Sentry invested at least 95% of its assets with BLMIS, and

Sigma invested substantially all of its assets in Sentry; (2) BLMIS performed all investment

management duties for these assets; (3) BLMIS was registered with the U.S. Securities and

Exchange Commission; (4) BLMIS was the executing broker for Sentry's investments, and

purportedly operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC

Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills;

(6) the decisions regarding which U.S. securities to purportedly purchase, and when to make

such purchases, were made by BLMIS in New York; (7) BLMIS was the custodian of Sentry's

investments with BLMIS; and (8) BLMIS was "essential to the continued operation of" Sentry.

*See* Vanderwal Decl. Exs. 3, 5, 7-10, 12-14.

a.    ***BLI* and Recent Decisions of This Court Establish Jurisdiction**

Based on the demonstrated intention to invest with BLMIS in New York through the

Fairfield Funds, Judge Lifland concluded a number of years ago that investors like Defendant are

subject to personal jurisdiction in New York.  *See Picard v. Bureau of Labor Ins. (In re BLMIS)*,

480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*").  Here, as in *BLI*: (1) the Trustee's suit is

"based upon [the subsequent transferee's] investment of [more than ten million dollars] in [the

Fairfield Funds] with the specific goal of having funds invested in BLMIS in New York, with

intent to profit therefrom," *BLI*, 480 B.R. at 506; (2) Defendant was provided with PPMs and executed subscription agreements establishing the investment's BLMIS-centric purpose, *id*. at 507-08; and (3) Defendant argued that the foreseeability of its investment "ending up" in a BLMIS account was insufficient to support personal jurisdiction. *Id*. at 517.  Not only did the *BLI* Court reject this foreseeability argument, Judge Lifland called it "disingenuous" because BLI's investments "did not merely 'end up' in an account at BLMIS" through "coincidence." *Id*.

Defendant is wrong to criticize the *BLI* decision for supposedly limiting its inquiry to "whether it was foreseeable that the Defendant would benefit from the forum." Mot. at 6.  In fact, Judge Lifland found that BLI availed itself of the benefits and protections of New York law by knowing, intending and contemplating that the substantial majority of funds invested in Sentry would be transferred to BLMIS in New York to be invested in the New York securities market. *BLI*, 480 B.R. at 517.  BLI, like Defendant, "purposefully availed itself of the benefits and protections of New York Laws by . . . intending" that its investment would ultimately end up at BLMIS.  *Id*.; *see also Multi-Strategy*, 641 B.R. at 86; *Banque Syz*, 2022 WL 2135019, at *3; *Carige*, 2022 WL 2387522, at *2; *Lombard Odier*, 2022 WL 2387523, at *2; *First Gulf*, 2022 WL 3354955, at *2; *Parson*, 2022 WL 3094092, at *2; *Meritz*, 2022 WL 3273044, at *5; *Union Sec.*, 2022 WL 3572509, at *2; *PIFSS*, 2022 WL 3458962 , at *4; *Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal jurisdiction").

Consistent with this Court's decisions in the past few months, *BLI* applies here. *See Multi-Strategy*, 641 B.R. at 86-87; *Banque Syz*, 2022 WL 2135019, at *3-4; *Carige*, 2022 WL

2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *3-4; *First Gulf*, 2022 WL 3354955, at *3-4; *Parson*, 2022 WL 3094092, at *3-5; *Meritz*, 2022 WL 3273044, at *3-4; *Union Sec.*, 2022 WL 3572509, at *3-4; *PIFSS*, 2022 WL 3458962, at *4-5.  In those cases, as here, the Trustee asserted allegations as to the purpose of the investment and the defendants' contacts with Sentry for ultimate investment with BLMIS.  *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Banque SYZ*, 2022 WL2135019, at *3-4.  Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Multi-Strategy*, 641 B.R. at 87; *Banque SYZ*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *4; *First Gulf*, 2022 WL 3354955, at *4; *Parson*, 2022 WL 3094092, at *5; *Meritz*, 2022 WL 3273044, at *4; *Union Sec.*, 2022 WL 3572509, at *4.

Defendant is similarly situated to these defendants.  The Complaint, supplemented by the Declaration, makes clear that Defendant knowingly directed its funds to be invested with New York-based BLMIS and that this was the fundamental purpose of Defendant's Sentry investment. In short, Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.  As such, the foregoing cases are controlling and resolve Defendant's personal jurisdiction defense without the need for inquiry into their additional U.S. contacts.

### b.    *Walden* Does Not Save Defendant From this Court's Jurisdiction

In an effort to sidestep *BLI*, Defendant argues that the Trustee relies on Defendant's relationship with third parties as a basis for jurisdiction like the plaintiff in *Walden v. Fiore*, 571 U.S. 277 (2014).  Mot. at 4.  But as this Court has found, *Walden* "is [of] no assistance to Defendant." *Multi-Strategy*, 641 B.R. at 87.  Using the "effects test" the *Walden* court found that a Georgia police office could not be sued in Nevada for an unlawful seizure of money in Georgia

merely because he knew that the plaintiff resided in Nevada.  The court held that the foreseeability that plaintiff would suffer harm in his home state was insufficient and reiterated that jurisdiction cannot be based simply on a plaintiff's contacts with the forum.[3]  Defendant's assertion that the Trustee is arguing that jurisdiction exists here merely because it was foreseeable that its funds would be invested in New York is disingenuous.  *See BLI*, 480 B.R. at 516-18 (finding it disingenuous for defendants to claim that its investments in Sentry merely "end[ed] up in an account at BLMIS as a result of happenstance or coincidence" when that was the entire purpose of the investment).  In any case, *Walden* stands for the proposition that where a defendant's contacts with New York are "intertwined with [its] transactions or interactions with the plaintiff or other parties" jurisdiction is proper.  *Walden*, 571 U.S. at 286.

Defendant is equally wrong in claiming that *BLI* is no longer good law because it "jumped over" whether the Defendant's conduct in the forum conferred the benefits and protections of its laws as now required by *Walden*.  *Walden* did not change the purposeful availment test and *BLI* applied the test that was and still is the law.  Specifically, *BLI* stated there needs to be an "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 516 (quoting *Burger King*, 471 U.S. at 475).  As in *BLI*, that test is met here.

## 2.    Defendant had Numerous Additional Contacts With New York in Connection With its Investments

While a defendant's "physical presence in a forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092, at *5

---

[3] Defendant also erroneously claims that *Bristol-Myers,* another tort case, supports rejecting specific jurisdiction. There, the Court found the defendant's connection to the forum even weaker than in *Walden*.  As such, *Bristol-Myers* also has no application here.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1782 (2017).

(quoting *Walden*, 571 U.S. at 285); *Banque Syz*, 2022 WL 2135019, at *4. Meetings and email

communications can also be contributing factors for finding personal jurisdiction. *See Parson*,

2022 WL 3094092, at *4-5 (finding defendant's meetings in New York and email

communications with FGG as evidence that Defendant purposefully availed itself of the benefits

of doing business in the forum); *Union Sec.*, 2022 WL 3572509, at *4 (same); *Meritz*, 2022 WL

3273044, at *4 (same); *PIFSS*, 2022 WL 3458962, at *14 (same); *see also Liberatore v. Calvino*,

742 N.Y.S.2d 291, 293 (App. Div. 1st Dep't 2002) (holding that jurisdictionally relevant

transactions may be found solely on the basis of phone, mail, and electronic communications)

(citing cases); *see also Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673(RJS), 2012

WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone

calls, and video conferences with company in New York subjected defendant to personal

jurisdiction). Defendant had similar U.S. contacts.

From at least 2004 through December 2008, Defendant corresponded and met in person

in New York and by telephone with high-level FGG New York executives regarding its

investments in the Fairfield Funds. For example, in February 2004, Defendant representatives

Mr. Reynaldo Roisenvit and Ms. Patricia Martin Teixidor met with Lourdes Barraneche and

Veronica Barco of FGG in New York. Vanderwal Decl. Exs. 1, 25-26. During that meeting,

Defendant "expressed special interest" in continuing to increase its investment in the Fairfield

Funds. *Id.* Ex. 26. Because of Defendant's eagerness to market and invest with the Fairfield

Funds, as well as Defendant's prominence in the Latin America region, FGG considered

Defendant to be one of its "strategically" significant investors. *Id.*

In May 2005, Mr. Roisenvit and Ms. Teixidor again traveled to New York to meet with

FGG's Chief Risk Officer Amit Vijayvergiya and FGG New York employee Veronica Barco, at

which time Defendant received an update on Sentry. *Id.* Ex. 27. Defendant's claim that it only

met once with FGG in 2008 is not supported by the evidence. Mot. at 13. Even without

discovery, the documentation currently available to the Trustee shows the Defendant met with

FGG senior representatives in New York in 2004, 2005, and 2008. *See* Vanderwal Decl. Exs.

25-30.

In addition to meetings, Defendant communicated regularly with FGG employees in New

York via email. Most notably, Defendant received weekly reports detailing the rates of returns

and related investment information for the Fairfield Funds, as well as monthly marketing and

investment returns data from FGG. *Id.* Exs. 31-34. Defendant relied on these reports to track the

Fairfield Funds' returns, raising any questions directly to FGG employees in New York.

These contacts support this Court's jurisdiction over Defendants.

### 3.    Defendant's Fee Sharing Arrangement With FGG in New York is an Additional Jurisdictional Contact

In April 2004, Defendant entered into a fee sharing agreement with FGG in New York,

which was amended in 2007. *Id.* Ex. 15. Both the 2004 agreement and the 2007 amendment

were signed by FGG New York executives. *Id.* Exs. 15, 17. The agreement was governed by

New York law. *Id.* Pursuant to this agreement, Defendant actively marketed the Fairfield Funds

and received compensation in the form of retrocession fees for the investments made by others

into the Fairfield funds through the collapse of BLMIS in 2008. *Id.* Exs. 15, 17. Defendant

communicated with FGG's Veronica Barco in New York about the fees due to FGG under the

agreement. *Id.* Ex. 16. By its fee sharing arrangement and communications with FGG in New

York about its fees, Defendant further purposely availed itself of this jurisdiction.

16

### 4.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements are Strong Jurisdictional Contacts

Defendant's subscription agreements with the Fairfield Funds further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy*, 641 B.R. at 88 (finding defendant "irrevocably" submitted to the jurisdiction of New York courts' when it signed its subscription agreements with the Fairfield Funds); *Banque Syz*, 2022 WL 2135019, at *5 (same); *Carige*, 2022 WL 2387522, at *4 (same); *Lombard Odier*, 2022 WL 2387523, at *5 (same); *First Gulf*, 2022 WL 3354955, at *5 (same); *Parson*, 2022 WL 3094092, at *5 (same); *Meritz*, 2022 WL 3273044, at *5 (same); *Union Sec.*, 2022 WL 3572509, at *5 (same); *PIFSS*, 2022 WL 3458962, at *7 (same).  When Defendant invested in Sentry directly and through Sigma, it was required to sign subscription agreements through which it submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. *See* Vanderwal Decl. Exs. 3-8 (subscription agreements and emails conveying same).

Defendant argues that this Court does not have jurisdiction by treating its various contacts in isolation and focusing on its subscription agreements.  But the Trustee is not arguing that this Court has jurisdiction based only on Defendant's consent in the subscription agreements.  Mot. at 9, 14-15.  Rather, the Trustee's allegations are also based on Defendant's intentional entry into New York to invest in BLMIS through the Fairfield Funds, its use of a New York bank account, and its ongoing and regular communications—including meetings in New York—with FGG.[4]  As this Court found in *BLI*, Defendant's agreement to New York venue, jurisdiction, and law further shows that Defendant purposefully directed its activities toward, and

---

[4] *Maranga v. Vira* does not apply because the Trustee has identified contacts well-beyond the limited communications found insufficient in *Maranga*. 386 F. Supp. 2d 299, 301 (S.D.N.Y. 2005).  The cases cited by Defendant in which, unlike here, the plaintiffs relied on their own performance of obligations in New York to support jurisdiction are also unavailing. Mot. at 8, 9 n.1, n.2.

17

provide another strong jurisdictional contact with, New York. 480 B.R. at 517; *see also Burger King*, 471 U.S. at 482 (holding a choice of law "provision standing alone would be insufficient to confer jurisdiction" but "it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

### 5.    Defendant's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

Defendant chose to use a U.S. bank account to receive the transfers the Trustee seeks to recover and, as a result, jurisdiction over Defendant for purposes of recovering those transfers is proper. *See Parson*, 2022 WL 3094092, at *4 (*citing Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C)*, 640 B.R. 604, 618 (S.D.N.Y. 2022)). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70 & n.18. It is Defendant's decision to use a New York bank that creates jurisdiction, regardless of whether it was a requirement of the investment, because ultimately, Defendant "was free to accept or reject the proposed terms." *In re Arcapita*, 640 B.R. at 618; *see also*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG New York Branch v. St.*, No. 11-CIV-9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same).

Like the subsequent transferee defendants in this SIPA liquidation proceeding that have previously argued that the mere passage of funds through the jurisdiction is not enough, Defendant used a U.S. bank, therefore knowingly and intentionally entering the forum, making

jurisdiction proper.  As this Court recently held in *Meritz*: "Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita*, 549 B.R. at 71); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account" and its New York account gave it access to BLMIS through Sentry); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account).

In a further attempt to distinguish itself, Defendant argues, without support, that its transfers into its JPMorgan Chase New York bank account "merely passed through" the U.S. before being transferred to Ireland.  Mot. at 11.  But even if Defendant's claims are true, Defendant's use of a JPMorgan Chase New York bank as a correspondent bank is sufficient for a finding of jurisdiction.  *Aziz*, 2014 WL 7271219, at *6–7 (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *see also Arcapita*, 549 B.R. at 67–69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers at issue).  Defendant's repeated, systematic, and purposeful use of New York bank accounts to direct funds into and out of BLMIS through the Fairfield Funds is sufficient to establish minimum contacts. *Lombard Odier*, 2022 WL 2387523, at *4 (finding *prima facie* showing of jurisdiction based on defendant's investment activities with FGG, including wiring of money through New York bank account).

The same reasoning applies to Defendant's use of the Fairfield Funds' HSBC USA Account. That the PPMs mandated that subscribers use the Fairfield Funds' New York Accounts is irrelevant; Defendant voluntarily entered into those agreements. *See In re Arcapita*, 640 B.R. at 617-18 (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement); *see also Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp.3d 323, 344 (S.D.N.Y. 2019) ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."), *aff'd in part*, 40 F.4th 56, 61 (2d Cir. 2022) (affirming the "district court's judgment insofar as it denied NNPC's motion to dismiss for lack of personal jurisdiction").

Defendant's argument that *SPV Osus Ltd. v. UBG AG*, 882 F.3d 333 (2d Cir. 2018), *Hill v. HSBC Bank plc*, 207 F.Supp.3d 333 (S.D.N.Y. 2016), and *To v. HSBC Holdings, plc*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) support dismissal of the Complaint because of limited contacts with New York also fails. This Court has already determined that this line of cases is not relevant to the Trustee's actions against defendants like Inteligo who invested in BLMIS's feeder funds. *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").

This is not a dispute between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims in *SPV*,[5] *Hill*, and *To*.[6]  This action is brought by a SIPA Trustee in a SIPA liquidation proceeding in New York to recover fraudulent transfers from an investor whose transfers of funds to and from U.S. correspondent accounts evidence an intent to direct activity towards the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.") (emphasis in original). Defendant's reliance on *Berdeaux v. One Coin Ltd.*, 561 F. Supp.3d 379, 403 (S.D.N.Y. 2021), is similarly inapposite. Mot. at 12.  There, the Court stated that there could not be a purposeful use of a bank account unless the defendant "played a role in routing the wire transfers through the correspondent account."  *Berdeaux*, at 402 n.22.  Here, Defendant directed transfers to Sentry's correspondent account at HSBC and its own New York bank account at JPMorgan Chase numerous times.  Moreover, in *Berdeaux*, there was nothing to tie the use of the New York accounts to the claims against the defendant, but here Defendant received the transfers the Trustee seeks to recover in its New York account.  *See generally, id.*  Contrary to Defendant's claims, its connections to New York and the Fairfield Funds are far from "attenuated" and

---

[5] Defendant's reliance on *SPV*, where the court found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is suspect following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

[6] Likewise, *In re Banco Santander* has no application here because it also addresses incidental contacts with the jurisdiction in performance of a foreign contract. 732 F. Supp. 2d 1305, 1313, 1320-26 (S.D. Fla. 2010).

include purposeful and continuous direct contact with New York.[7]

### 6.    Defendant's Contacts With the Forum are Sufficiently Related to the Trustee's Claims

The Trustee's claims also "arise out of or relate to" Defendant's contacts with the United

States.  As the Supreme Court recently held, the "arise out of or relate to" test does not require a

causal relationship.  *See Ford Motor Co.*, 141 S. Ct. at 1026–30.  Rather, this test may be

satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re

Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that

claim is not completely "unmoored" from transaction).  This Court has already found that the

Trustee's recovery actions against defendants similarly situated to Defendant are "directly

related to [their] investment activities with Fairfield and BLMIS."  *Multi-Strategy*, 641 B.R. at

88; *Carige*, 2022 WL 2387522, at *4 (finding subsequent transfer claims directly related to

investment activities); *Parson*, 2022 WL 3094092, at *5; *see also HSH Nordbank*, 2012 WL

2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds

into [defendant's] New York accounts").  Here, the Trustee is seeking to recover the very

transfers that came through the U.S. bank accounts in New York.

This Court's recent decisions easily dispatch Defendant's argument that, in order for

jurisdiction to apply, the Trustee must be able to show a direct connection between it and

BLMIS.  Mot. at 4.  This Court has found jurisdiction proper over defendants identically situated

to Defendant because the Trustee's claims are directly related to the subsequent transfers it

---

[7] Similarly, *Taman v. Frannabank S.A.L.*, found that, unlike here, there was no substantial relationship between the correspondent bank account and the cause of action alleged. 677 F. Supp. 2d 720, 727-28 (S.D.N.Y. 2010). *Universal Trading,* is also not applicable because there a bank's customer was not subject to jurisdiction merely because the bank moved the customer's funds through the jurisdiction via a correspondent account. 2012 WL 6186471, *1, *3 (S.D.N.Y. Dec. 12, 2012).  By contrast here, Defendant directed the transfer of funds into and out of a New York account in its name and therefore its use was purposeful. Further, *Arcapita*, makes clear that receipt of the transfers at issue in the Defendant's account confers jurisdiction. 640 B.R. at 617-18.

received from the Fairfield Funds based on "its investment activities with Fairfield and BLMIS."

*Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL

2387522 at *4; *Lombard Odier*, 2022 WL 2387523, at *4; *First Gulf*, 2022 WL 3354955, at *4;

*Parson*, 2022 WL 3094092, at * 5; *see also BNP*, 594 B.R. at 191.  Defendant's attempt to

characterize its relationship with the Fairfield Funds differently fails; it is no different that the

many subsequent transferee defendants whose activities have been found to be related to the

Trustee's claims.

### B.    The Exercise of Personal Jurisdiction Over Inteligo is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of

personal jurisdiction over the defendant comports with 'traditional notions of fair play and

substantial justice' under the circumstances of the particular case." *Waldman v. Palestine

Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has

made a threshold showing of minimum contacts, a defendant must present "a compelling case

that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*,

616 F.3d at 165.  Indeed, this Court has found "it would be a 'rare' case where the defendant's

minimum contacts with the forum support the exercise of personal jurisdiction, but it is

unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188

(citation omitted).  Defendant fails to present a compelling reason why jurisdiction would be

unreasonable.

This is not that "rare" case and the burden on Defendant is minimal.  *See Maxam

Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern

communication and transportation minimize any such burden).  Just as this Court found in *Multi-

Strategy*, *Banque Syz*, *Carige*, *Lombard Odier*, *First Gulf*, *Parson*, *Meritz*, *Union Sec.*, and

*PIFSS*, the exercise of jurisdiction over Defendant is reasonable because "Defendant is not

burdened by this litigation" because it "has actively participated in this Court's litigation for over

ten years," it is "represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of

New York courts when it signed its subscription agreements with [Sentry]." *Multi-Strategy*, 641

B.R. at 88.  Moreover, Defendant participated in the omnibus motions to withdraw the reference

and to dismiss its Complaint on extraterritoriality grounds.  *See, e.g.*, ECF Nos. 15, 65.

Finally, this "forum and the Trustee both have a strong interest in litigating BLMIS

adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz*, 2022 WL

2135019, at *5; *see also ET Decision*, 917 F.3d at 103 (noting that the United States has a

"compelling interest in allowing domestic estates to recover fraudulently transferred property.").

Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### C.    Alternatively, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery.  "Such discovery may be authorized where

a plaintiff has made 'a threshold showing' that there is some basis for the assertion of

jurisdiction."  *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL

3817590, at *4 (S.D.N.Y. Nov. 16, 2009) (citation omitted).

## II.    DEFENDANT'S MERE CONDUIT AFFIRMATIVE DEFENSE IS PREMATURE AND IMPROPERLY RELIES ON FACTS OUTSIDE THE COMPLAINT THAT IN ANY EVENT DO NOT ESTABLISH CONDUIT STATUS

Defendant argues that the mere conduit defense requires dismissal of the Trustee's

Complaint under 12(b)(6). Mot. at 13-14.  It does not.  First, the mere conduit defense is

premature at the pleading stage because it requires a fact-intensive analysis.  Second, Defendant

improperly relies on facts outside the pleading to support this defense.  Third, in any event, those

facts fall far short of establishing mere conduit status.

## A.    The Mere Conduit Defense is Premature

Defendant's mere conduit argument is premature. "[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020); *see also Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008); *Enron Corp. v. J.P. Morgan Securities Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006). The Trustee is not required to anticipate and rebut the defense in the Complaint, and nothing on the face of the Complaint suggests the defense applies. *Citibank*, 12 F.4th at 195-96 (holding the Trustee does not bear the burden of negating an affirmative defense); *Isaiah*, 960 F.3d at 1304 ("A Complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the Complaint."); *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedures, however, do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses."); *Astropower Liquidating Tr. v. Xantrex Tech., Inc., (In re Astropower Liquidating Tr.)*, No. 05-50867, 2006 WL 1173853, at *1-2 (Bankr. D. Del. Apr. 19, 2006).

Resolving the mere conduit defense at the pleading stage is particularly inappropriate because an inquiry into the applicability of the defense is fact-intensive. *See In re Global Crossing Ltd.*, 385 B.R. at 56 n.1 ("[M]ere conduit" is a "defense" that requires "factual[] support[] . . . [and] is better addressed on summary judgment," not at the pleading stage.); *In re Astropower*, 2006 WL 1173853, at *1 (agreeing that "'mere conduit' argument is an affirmative defense that is properly raised in a summary judgment motion but not in a Rule 12(b)(6) motion to dismiss."); *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank,*

*N.A. (In re Motors Liquidation Company)*, 552 B.R. 253, 266 (Bankr. S.D.N.Y. 2016) (noting

the conduit defense is fact specific and does not lend itself to a motion to dismiss).  The "mere

conduit is a defense that requires factual support and at a minimum, is better addressed on

summary judgment, not at the pleading stage." *Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14

(Bankr. S.D.N.Y. 2021) (ruling on conduit defense at the summary judgment stage with detailed

application of law to facts); *see also Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) (determining conduit status post-trial).

Defendant cites only one case in support of its conduit defense, *Christy v. Alexander &*

*Alexander of NY Inc. (In re Finley Kumble, Wagner, Heine, Underberg, Manley, Myerson, &*

*Casey)*, 130 F.3d 52, 59 (2d Cir.1997) ("*Finley Kumble*"), without any analysis as to how it

applies here.  However, that case involves a determination of the conduit issue on summary

judgment and not on a motion to dismiss.  And depending on the facts at issue, the conduit

defense may not even be resolvable at the summary judgment stage.  *See, e.g.*, *In re CVEO*

*Corp.*, 327 B.R. 210, 217-18 (Bankr. D. Del. 2005) (holding that genuine issues of material fact

preclude entry of summary judgment on mere conduit defense to preference claims).

## B.     Defendant's Conduit Defense Improperly Relies on Facts Outside the Complaint

When considering this motion to dismiss under Federal Rules of Civil Procedure Rule

12(b)(6), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must

liberally construe all claims, accept all factual allegations in the Complaint as true, and draw all

reasonable inferences" in the Trustee's favor.  *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp.2d

340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir.

2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)).  In deciding a motion to dismiss, the

Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

There is no doubt that the allegations in the Complaint plausibly allege that Defendant is a transferee of redemption payments in its name from the Fairfield Funds. To be clear, Defendant does not claim that there are any allegations in the Complaint that support a conduit defense. Instead, Defendant improperly argues for dismissal by interjecting its own set of unsupported facts—found nowhere in the Complaint and without documentary support or relevant legal argument—about Defendant's transactions with the Fairfield Funds. Mot. at 1. As the Second Circuit has stated many times, "a district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss."[8] *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991)); Fed. R. Civ. P. 12(b)(6). The Court should therefore also deny Defendant's 12(b)(6) motion for this reason.

### C.   Even if the Court Were to Consider the Mere Conduit Defense at This Stage, Defendant has not Established it

If the Court finds that it should consider Defendant's mere conduit argument at this stage, Defendant still cannot prevail based on the conclusory statements it makes in support of the defense. *See* Mot. 14-16. Those conclusory statements do not contest that Defendant held legal title to the redemption payments nor assert that the Fairfield Funds put any restrictions on Defendant's use of those funds, which are among the relevant considerations. *In re Enron*, 361 B.R., at 48 (determining whether entity was mere conduit required resolution of whether it had legal title to the payments); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, No. 11-11388

---

[8] The court may, however, consider the parties affidavits when ruling on a Federal Rules of Civil Procedure Rule 12(b)(2) motion. *See NuMSP v. St. Etienne*, 462 F.Supp.3d 330, 335 n.1, 341.

(JLG), 2016 WL 1069303, at *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary

judgment defendant who "had the absolute right to utilize the Transfers in her discretion" when

transfers received without restriction into bank account in her name was not a conduit).

Nonetheless, citing *Finley Kumble*, Defendant argues it is a mere conduit and not a transferee.

Mot. at 14, 16.

But *Finley Kumble* does not support Defendant's position and the factual allegations

Defendant interjects fall far short of establishing a conduit defense.  Neither investing for clients

at their direction nor transmitting redemption payments to those clients matters if the recipient

has control over those fraudulent transfers.  A mere conduit must have no dominion or control

over the funds.  *Finley Kumble,* 130 F.3d at 57-58 (The "minimum requirement of status as a

'transferee' is dominion over the money or other asset, the right to put the money to one's own

purposes.") (quoting *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th

Cir.1988)).  And even if a recipient shows it is subject to some restrictions on the use of the

funds, that alone does not make it a conduit.  *Bear, Stearns Securities Corp. v. Gredd (In re

Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 17-19 (S.D.N.Y. 2007).  The extent of

Defendant's control over redemptions received in its own bank account, its overall role and

purported good faith, benefits it received from its transactions with the Fairfield Funds, and the

identity of the purported transferees are facts unknown to the Trustee which will need to be

developed during discovery before the mere conduit issue can be resolved.

III.    **SECTION 546(E)'S SAFE HARBOR DOES NOT APPLY TO DEFENDANT AND
        DEFENDANT'S RELIANCE ON *MERIT* IS MISPLACED**

Defendant makes three contentions in arguing that it is entitled to the protections of

Section 546(e) and/or the good faith defense.  Defendant claims: (1) this court and the Trustee

have acknowledged that Sentry is a conduit, making either Defendant or Defendant's customers

the initial transferee; (2) even if the Court considers Defendant a subsequent transferee, it is still

entitled to protection under Section 546(e) because this Court misinterprets Judge Rakoff's

decision; and (3) the Trustee is unable to recover because the Complaint demonstrates that

Defendant is entitled to a good faith defense under Section 550.  Each of these arguments fails.

As to arguments (1) and (2), Defendant has provided no basis, nor is it appropriate for

Defendant on a motion to dismiss, to assert that it is a conduit for its purported, unnamed

customers, and the same can be said of its assertions as to Sentry's conduit status. In any event,

Defendant's entire argument as to Sentry's conduit status is based upon a few select statements

made by the Court and the Trustee's counsel that Defendant misconstrues.[9]  Specifically, while

the Court and the Trustee have observed that Sentry's primary function was to funnel funds to

BLMIS, it is quite obvious that neither was characterizing Sentry as a conduit as opposed to a

transferee.  In fact, recently, in *First Gulf,* the Court confirmed that Sentry was the initial

transferee of transfers from BLMIS, finding that the "Trustee pleaded the avoidability of the

initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the

Complaint filed against Fairfield Sentry in adversary proceeding 09-1239."  *First Gulf*, 2022 WL

3354955, at *6.

Defendant's reliance on the Supreme Court's decision in *Merit Management Group, LP*

*v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018), to claim the Trustee has improperly defined

the transfers sought to be avoided because the initial and subsequent transfers are part of an

integrated, overarching series of transfers for purposes of Section 546(e), is misplaced.  *See* Mot.

at 14-16.  In *Merit¸* the Supreme Court held that the only relevant transfer protected by Section

---

[9] Defendant's claim that FGG is a conduit is based on a misreading of this Court's prior decision in which the Court described Fairfield's relationship with BLMIS as a "conduit" because Fairfield was entirely invested in and existed to feed customers to BLMIS.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *1.

546(e) is the transfer that is subject to the trustee's avoidance powers. *Merit*, 138 S. Ct. at 897

(concluding that "the relevant transfer for purposes of the Section 546(e) safe harbor is the same

transfer the trustee seeks to avoid pursuant to its substantive avoiding powers"). *Merit* involved

a transfer from the debtor to the defendant through two mere conduits—the debtor's foreign bank

and the escrow agent. Merit, the transferee, argued that because the transfer the trustee sought to

avoid included as its "component parts" the transfers to these financial institution conduits,

Section 546(e) applied. *Id.* at 892. The trustee argued that the only relevant transfer was the

transfer from the debtor, Valley View, to the defendant, Merit. *Id.* The Court agreed with the

trustee, finding that "[t]he language of § 546(e), the specific context in which that language is

used, and the broader statutory structure all support the conclusion that the relevant transfer for

purposes of the § 546(e) safe-harbor inquiry is the overarching transfer that the trustee seeks to

avoid under one of the substantive avoidance provisions." *Id.*

    While Defendant attempts to cloud the issue, *Merit* confirms and supports this Court's

recent findings that the safe harbor only applies to the transfer from BLMIS to the Fairfield

Funds, which is clearly the overarching transfer. *Merit*, 138 S. Ct. at 892-893; *Multi-Strategy*,

641 B.R. at 94-95 (holding § 546(e) does not apply to subsequent transfers); *Banque Syz*, 2022

WL 2135019, at *9 (same); *Lombard Odier,* 2022 WL 2387523, at *9 (same); *Lloyds,* 2022 WL

2390551, at *5 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL

2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf* , 2022 WL

3354955, at *9 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at

*9 (same); *Union Secs.*, 2022 WL 3572509, at *9 (same); *Delta*, 2022 WL 3365256, at *4-5

(same); *PIFSS*, 2022 WL 3458962, at *12-13 (same). Here, there is no real question about the

transfers to be avoided and recovered. The Second Circuit has already determined, and it is now

not debatable, that the Trustee properly identified the initial transfers from BLMIS to its

customers as the relevant transfers to be avoided. *See In re Bernard L. Madoff Inv. Securities*

*LLC (Picard v. Ida Fishman Rev. Trust)*, 773 F.3d 411, 422-23 (2d Cir. 2014); *see also ET*

*Decision at* 98-99 (holding "when a trustee seeks to recover subsequently transferred property

under § 550(a), the only transfer that must be avoided is the debtor's initial transfer") (citing *BLI*,

480 B.R. at 524). And this Court has previously determined that the transfers from BLMIS to

the Fairfield Funds in particular are avoidable as initial transfers. *See, e.g.*, *First Gulf*, 2022 WL

3354955, at *6.

Many years ago, in this SIPA liquidation proceeding, Defendant admitted it is a

subsequent transferee. As part of its Motion to Withdraw the Reference, Defendant repeatedly

referred to itself as a subsequent transferee and its arguments were supported by subsequent

transferee case law. *See generally*, ECF No. 15 ("*Inteligo Mot. to Withdraw the Ref.*"). In fact,

Defendant presented the very question considered here in its Motion to Withdraw the Reference:

"whether the safe harbor applies to shield *subsequent* transfers made in connection with

securities contracts contemplating investment in BLMIS through a feeder fund." *Inteligo Mot. to*

*Withdraw the Ref.* at 16. And in response, Defendant argued that "the Trustee cannot recover

redemptions of principal investments in Fairfield made by Inteligo" because it is "an innocent

subsequent transferee." *Inteligo Mot. to Withdraw the Ref.* at 18. Defendant's brief is replete

with references to "subsequent transferees" like these. *See, e.g.*, *Inteligo Mot. to Withdraw the*

*Ref.* at 20.

A.    **The Trustee and This Court Correctly Interpret** *Cohmad*

Defendant is also wrong in claiming that to the extent it is considered a subsequent

transferee, it is still protected by Section 546(e) because "the controlling factor is the innocence

of the defendant." Mot. at 20.

In *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115(JSR), 2013

WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial

transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe

harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year

period referenced in Section 548(a)(1)(A). This Court has already determined that the Fairfield

Complaint contains sufficient allegations of Sentry's actual knowledge to defeat the safe harbor

defense on a Rule 12(b)(6) motion. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4 ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). As such, and as this Court has held in numerous recent decisions, Section

546(e) is inapplicable to subsequent transfers from the Fairfield Funds and may not be used by

defendants similarly situated to Defendant here. *Multi-Strategy*, 641 B.R. at 94-95 (holding §

546(e) does not apply to subsequent transfers); *Banque Syz*, 2022 WL 2135019, at *9 (same);

*Lombard Odier,* 2022 WL 2387523, at *9 (same); *Lloyds,* 2022 WL 2390551, at *5 (same);

*Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same);

*Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf* , 2022 WL 3354955, at *9 (same); *Parson*,

2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *Union Sec.*, 2022 WL

3572509, at *9 (same); *Delta*, 2022 WL 3365256, at *4-5 (same); *PIFSS*, 2022 WL 3458962, at

*12-13 (same).  This is true regardless of whether Sentry or Defendant qualify as financial

institutions or participants, their agreements qualify as securities contracts, or their transfers

qualify as settlement payments.[10]

Defendant's argument that this Court must look to Defendant's actual knowledge rather

than that of Sentry is based on a misreading of Section 546(e) and *Cohmad* and has been rejected

by this Court in the many decisions cited above. Applying *Cohmad*, this Court held in *BNP* that

Section 546(e) is applicable only to avoidance and not recovery, and that a subsequent transferee

cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial

transferee's actual knowledge. 594 B.R. at 197. Rather, a subsequent transferee gets only

"indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id.*

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

the recovery of subsequent transfers. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544,

545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer . . . except

under section 548(a)(1)(A) of this title.") (emphasis added). "The safe harbor is not applicable to

subsequent transfers. . . . [and] cannot be used as a defense by the subsequent transferee because

the Trustee is not 'avoiding' a subsequent transfer; 'he recovers the value of the avoided initial

transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not

refer to the recovery claims under section 550.'" *Multi-Strategy*, 641 B.R. at 94-95 (citing *BNP*,

594 B.R. at 197 ("By its terms, the safe harbor is a defense to the avoidance of the initial

transfer" and "does not refer to the recovery claims under section 550.")); *Banque Syz*, 2022 WL

2135019, at *9 (same); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Lloyds,* 2022 WL

2390551, at *5 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL

---

[10] The Trustee does not agree that any agreements or transfers between the Fairfield Funds and Defendant activate the safe harbor under Section 546(e), including, among other things, whether the initial transfers were in connection with the subscription agreements or were made for the benefit of Defendant. These issues are simply not relevant, because avoidability of the initial transfers turns on Sentry's actual knowledge of fraud at BLMIS.

2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf*, 2022 WL

3354955, at *9 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at

*9 (same); *Union Sec.*, 2022 WL 3572509, at *9 (same); *Delta*, 2022 WL 3365256, at *4-5

(same); *PIFSS*, 2022 WL 3458962, at *10 (same); *see also In re SunEdison, Inc.*, 620 B.R. 505,

514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial

transfer").

Defendant misconstrues *Cohmad*'s "one caveat" that subsequent transferees with actual

knowledge are also prohibited from benefitting from the safe harbor. Mot. at 20-22.  That

holding does not require a trustee to plead a subsequent transferee's actual knowledge.  Rather, it

merely ensures that any defendant that does have actual knowledge, including a subsequent

transferee, cannot benefit from the safe harbor even if the initial transferee is innocent, such that

the purpose of the actual knowledge exception is achieved consistently.  *See Cohmad*, 2013 WL

1609154, at *1, *7.

Defendant's alternate argument that the court's hypothetical in *Cohmad* paves the way to

an application of the safe harbor based on its subscription agreement with the Fairfield Funds

also fails.  Despite the Court's discussion in *dicta* that under certain circumstances the

subsequent transferee subscription agreements *might* constitute relevant "securities contracts"

and that some defendants *might* qualify as "financial institutions" or "financial participants,"

again, it is clear that the focus of the safe harbor is the initial transfer.  *See Cohmad* at *9.[11]  This

Court has repeatedly rejected this same argument, holding that, notwithstanding the hypothetical

---

[11] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that
if necessary, their subscription agreements could act as the relevant securities agreements under Section 546(e) in
lieu of the BLMIS customer agreements.  2013 WL 1609154, at *8. That argument became moot as both the Second
Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement," and the
initial transfers from BLMIS were "settlement payments," even though no securities were traded, and therefore
subject to Section 546(e).

"securities agreement" at issue, a subsequent transferee cannot independently rely on the safe

harbor "because the Trustee is not 'avoiding' a subsequent transfer." *Multi-Strategy*, 641 B.R. at

94-95 ("Defendant is not permitted to raise the safe harbor defense on its own behalf as a

subsequent transferee."); *Banque Syz*, 2022 WL 2135019, at *9 (same); *Lombard Odier,* 2022

WL 2387523, at *9 (same); *Lloyds,* 2022 WL 2390551, at *5 (same); *Bordier*, 2022 WL

2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same); *Barclays*, 2022 WL

2799924, at *7 (same); *First Gulf* , 2022 WL 3354955, at *9 (same); *Parson*, 2022 WL 3094092,

at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *Union Sec.*, 2022 WL 3572509, at *9

(same); *Delta*, 2022 WL 3365256, at *4-5 (same); *PIFSS*, 2022 WL 3458962, at *12 (same).

Defendant presents no support to counter this well-settled principal.

Defendant's misinterpretation of *Cohmad* would mean the safe harbor would apply even

where the initial transferee feeder fund knew there were no securities transactions in need of

protection, thus effectively eliminating the point of the actual knowledge exception. It would

also allow the determination as to avoidability of an initial transfer to vary based on whether

there were subsequent transfers, and who received them.  It would further provide a subsequent

transferee with more rights than an initial transferee, which is inconsistent with congressional

intent.  *See SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 29 (S.D.N.Y. 2013) ("Section

550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each

recovery action, and the subsequent transferee in possession of that transfer may raise any

defenses to avoidance available to the initial transferee, as well as any defenses to recovery it

may have.").

**B.      Good Faith is an Affirmative Defense and Thus Inappropriate at the Motion to Dismiss Stage**

Finally, Defendant's argument that the Section 550(b) defense must be pleaded by the Trustee and that it is appropriately raised at the motion to dismiss stage has already been rejected by this Court and the Second Circuit. Good faith under Section 550(b) is an affirmative defense and the burden of pleading that defense lies with the Defendant. *Citibank*, 12 F.4th at 197 ("Although § 550(b) is written differently and affects a different class of transferees than § 548(c), the statutory structure, case law, and legislative history make clear that good faith under § 550(b) is an affirmative defense."); *Banque Syz*, 2022 WL 2135019, at *11 (finding "burden of proving good faith falls squarely on" defendant); *Delta*, 2022 WL 3365256, at *6 (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). "To bring a good faith defense during a motion to dismiss, the defendant must meet a stringent standard and show beyond a doubt that the plaintiff can prove no set of facts in support of his claim." *Delta*, 2022 WL 3365256, at *6. Aside from a single conclusory footnote, Defendant makes no effort to mount its defense to the Trustee's recovery action under Section 550(b) and presents nothing to "show beyond a doubt" that the Trustee cannot prove facts supporting his claims. As such, this argument should be rejected.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendant's Motion.

Dated:  August 25, 2022          */s/Amy E. Vanderwal*
New York, New York          **BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com

*Attorneys for Irving H. Picard, as Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*BLMIS and the Chapter 7 Estate of Bernard L.*
*Madoff*

**WINDELS MARX LANE & MITTENDORF,**
**LLP**
156 West 56th Street
New York, New York 10019
Telephone: 212.237.1000
Facsimile: 212.589.4201
Howard L. Simon
Email: hsimon@windelsmarx.com

*Special Counsel to Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*for the Chapter 7 Estate of Bernard L. Madoff*