**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01677 (CGM) |
| Plaintiff, | |
| v. | |
| SOCIETE GENERALE PRIVATE BANKING (SUISSE) S.A. (*f/k/a* SG Private Banking Suisse S.A.), individually and as successor in interest to Societe Generale Private Banking (Lugano-Svizzera) S.A.; SOCGEN NOMINEES (UK) LIMITED; LYXOR ASSET MANAGEMENT INC. (*f/k/a* SG Asset Management, Inc.), as General Partner of SG AM AI Premium Fund L.P.; SG AUDACE ALTERNATIF (*f/k/a* SGAM AI Audace Alternatif), now acting by and through its manager, Lyxor Asset Management S.A.S.; SGAM AI EQUILIBRIUM FUND (*f/k/a* SGAM Alternative Diversified Fund), now acting by and through its liquidator, KPMG Advisory Sarl; LYXOR PREMIUM FUND (*f/k/a* SGAM Alternative Multi Manager Diversified Fund), now acting by and through its trustee, Societe Generale S.A.; SOCIETE GENERALE S.A., as Trustee for Lyxor | |

Premium Fund and Successor in Interest to
Banque de Reescompte et de Placement a/k/a
Barep and to Societe Generale Asset
Management Banque d/b/a Barep; SOCIETE
GENERALE LUXEMBOURG (*f/k/a* Societe
Generale Bank & Trust S.A.); OFI MGA
ALPHA PALMARES (*f/k/a* Oval Alpha
Palmares); OVAL PALMARES EUROPLUS;
and UMR SELECT ALTERNATIF,

Defendants.

## THE SOCIÉTÉ GÉNÉRALE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................... ii

ARGUMENT ...................................................... 1

I.    THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL
      JURISDICTION OVER THE SG FOREIGN DEFENDANTS. ...................................... 1

      A.    Taken Individually or Collectively, the Trustee's Alleged Contacts
            Do Not Establish Jurisdiction over the SG Foreign Defendants........................... 2

            1.    *New York Choice of Law and Forum Selection Clauses Are
                  Irrelevant and Not Sufficiently Related to the At-Issue
                  Redemptions.* ............................................................... 2

            2.    *Proffered U.S.-Based Communications with FGG Are
                  Insufficient to Confer Jurisdiction.* ........................................... 3

            3.    *Incidental Use of U.S. Correspondent Accounts to
                  Effectuate Foreign Banking Transactions is Insufficient to
                  Establish Jurisdiction.* ....................................................... 5

      B.    The Trustee's Proffered Contacts Do Not Establish Jurisdiction
            Over the SG Foreign Defendants under *BNP*, and *BLI* is
            Distinguishable if it Even Applies. ....................................................... 7

      C.    The Exercise of Personal Jurisdiction Over the SG Foreign
            Defendants Would Be Unreasonable and Violate Due Process............................. 9

II.   THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO
      ADEQUATELY PLEAD THAT THE SG DEFENDANTS ARE
      SUBSEQUENT TRANSFEREES OF BLMIS CUSTOMER PROPERTY. ................... 10

III.  WHERE, AS HERE, SECTION 546(e) BY ITS TERMS COVERS AN
      INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE
      MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL
      TRANSFEREE MAY NOT........................................................................... 15

IV.   THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2). ............................. 19

CONCLUSION ...................................................... 20

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................................11, 13

*Al Rushaid v. Pictet & Cie*,
28 N.Y.3d 316, 68 N.E.3d 1 (2016)..........................................................................................6, 7

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................11

*Bartlett v. Societe Generale de Banque Au Liban SAL*,
No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) ...................6, 7

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)..........................................................................................9

*In re Bernard L. Madoff Inv. Sec. LLC*,
708 F.3d 422 (2d Cir. 2013)........................................................................................................10

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*,
137 S. Ct. 1773 (2017)..................................................................................................................9

*Burger King v. Rudciewicz*,
471 U.S. 462 (1985)......................................................................................................................10

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)..........................................................................................................9

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000)............................................................................................5

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ......................................................................................12

*Edmondson v. RCI Hospitality Holdings, Inc.*,
No. 16-CV-2242, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020).................................................14

*Fagan v. Republic of Austria*,
No. 08 Civ. 6715, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011) ..................................................4

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam,*
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .............................3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
141 S. Ct. 1017 (2021) ...................................................................................................8

*Francis v. Accubanc Mortg. Corp.,*
No. 19-CV-902 (AJN), 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) ........................20

*Glob. Network Commc'ns, Inc. v. City of N.Y.,*
458 F.3d 150 (2d Cir. 2006) .........................................................................................20

*Hau Yin To v. HSBC Holdings PLC,*
No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .........................................6

*Helms v. Metro. Life Ins. Co. (In re O'Malley),*
601 B.R. 629 (Bankr. N.D. Ill. 2019) ..........................................................................12

*Jazini v. Nissan Motor Co., Ltd.,*
148 F.3d 181 (2d Cir. 1998) ...........................................................................................4

*Metro Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ...........................................................................................10

*Miller v. Mercuria Energy Trading, Inc.,*
291 F. Supp. 3d 509 (S.D.N.Y. 2018) ............................................................................3

*In re MSR Hotels & Resorts, Inc.,*
No. 13-11512 (SHL), 2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013) ..................12

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC),*
557 B.R. 89 (Bankr. S.D.N.Y. 2016) ............................................................................19

*Picard v. Banca Carige S.P.A. (In re BLMIS),*
No. 08-01789, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ..........................15

*Picard v. Banque SYZ & Co., SA (In re BLMIS),*
No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)..........1, 15

*Picard v. BNP Paribas S.A. (In re Madoff),*
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................5, 7, 19

*Picard v. Bureau of Labor Insurance (In re Madoff),*
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................................................2, 7, 8

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC),*
No. 08–99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .........................19

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........................................................................11

*Picard v. Est. of Mendelow*,
560 B.R. 208 (Bankr. S.D.N.Y. 2016) ........................................................................19

*Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.
Sec. LLC)*,
No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................18, 19

*Picard v. Lombard Odier & Cie (In re BLMIS)*,
No. 12-01693, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ..........................12

*Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ........................................................................19

*Picard v. Merkin (in re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) .............................................................11, 13, 19

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................. *passim*

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................11, 19

*Royalty Network Inc. v. Dishant.com, LLC*,
638 F. Supp. 2d 410 (S.D.N.Y. 2009) ..........................................................................1

*In re Saco*,
30 B.R. 862 (Bankr.D.Me. 1983) ................................................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......................... *passim*

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
501 B.R. 26 (S.D.N.Y. 2013) ......................................................................................20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) .......................................................................11, 13

*Spetner v. Palestine Inv. Bank*,
495 F. Supp. 3d 96 (E.D.N.Y. 2020) .............................................................................9

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d. Cir. 2018) ....................................................................................7, 8

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ........................................................................19

iv

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ............................................................................6

*In re Terrestar Corp.*,
No. 11-10612 (SHL), 2015 WL 5719469 (Bankr. S.D.N.Y. Sept. 29, 2015) ..............12

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
477 F. Supp. 3d 241 (S.D.N.Y. 2020) ............................................................................6

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................................................................................................7, 9

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ..........................................................................................9

*Welsh v. Servicemaster Corp.*,
930 F. Supp. 908 (S.D.N.Y.1996) ..................................................................................5

*World-Wide Volkswagen v. Woodson*,
444 U.S. 286 (1980) ....................................................................................................8, 9

<u>Statutes</u>

11 U.S.C. § 546(e) ................................................................................................. *passim*

11 U.S.C. § 550 ............................................................................................................12

<u>Rules</u>

Fed. R. Civ. P. 8(a) .................................................................................................19, 20

Fed. R. Civ. P. 10(c) ....................................................................................................19

Fed. R. Civ. P. 12(b) .................................................................................................1, 12

The SG Defendants,[1] by their undersigned counsel, respectfully submit this reply memorandum of law in further support of their motion to dismiss the Trustee's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[2]

## ARGUMENT

## I. THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER THE SG FOREIGN DEFENDANTS.

The SG Defendants' Opening Brief demonstrates that the Complaint does not make out a *prima facie* case for personal jurisdiction over the SG Foreign Defendants.[3] The Trustee contends that the Court can assert jurisdiction based on: (1) agreements, executed outside the United States, between certain SG Foreign Defendants and a third party that contain New York forum clauses; (2) electronic correspondence between personnel of certain SG Foreign Defendants and FGG; and (3) the incidental use of U.S. correspondent banks to facilitate U.S. dollar-denominated payments related to foreign securities transactions.[4] *See* Opp. 7, 12-29. Nor does the Trustee allege or cite evidence of any physical, in-forum contacts between the SG Foreign Defendants and either the Fairfield Funds or BLMIS; rather, he points to New York contacts of the Fairfield Funds, without any basis for imputing those contacts to the SG Foreign Defendants. *See id.* 20-22. Taken alone

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the SG Defendants' initial memorandum of law (the "Opening Brief"), ECF No. 145, cited as "Opening Br." Citations to "Opp." refer to the Trustee's opposition memorandum (the "Opposition"), ECF No. 155.

[2] In other cases, the Court has recently rejected arguments similar in part to those raised here. *See, e.g., Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022); *Picard v. Banque SYZ & Co., SA (In re BLMIS)*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022). The SG Defendants nevertheless advance these arguments because the facts are sufficiently distinguishable to warrant a different outcome. As to certain issues, the SG Defendants respectfully disagree with this Court's analysis. In any event, the arguments are preserved for appeal if needed.

[3] It is telling that the Trustee devotes several pages of his Opposition (at 9, 20-21) to allegations pertaining to Lyxor Asset (formerly known as "SG Asset Management, Inc."), which is only being sued in its capacity as general partner of SG AM AI Premium Fund L.P. Opening Br. 2. The allegations concerning Lyxor Asset are irrelevant to jurisdiction over the SG Foreign Defendants.

[4] The Trustee's alternative argument, that he is nevertheless entitled to jurisdictional discovery (Opp. 29) fails because he does not identify any particular facts or topics on which he needs discovery. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (denying request for jurisdictional discovery where plaintiff failed to "identify any particular facts it would seek to adduce through such discovery or suggest how discovery could aid in this Court's jurisdictional inquiry").

or together these contacts do not establish jurisdiction over the SG Foreign Defendants as to any of the Trustee's claims.

Further, the notion that the SG Foreign Defendants' investments in the Fairfield Funds somehow "availed [them] of the benefits and protections of New York laws" cannot be reconciled with the history of these cases. *See Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("BLI"); Opp. 14-15. For example, unlike BLMIS investors, Fairfield investors—such as the SG Foreign Defendants—have not been able to recover anything from the Madoff estate under U.S. bankruptcy law, because they did not invest in any U.S. fund. At every turn, Fairfield investors have been *denied* the benefits and protections of New York and U.S. law. In that context, the assertion that the SG Foreign Defendants "purposefully availed" themselves of those legal protections because, for example, employees of affiliates made a handful of information requests to FGG regarding the Fairfield Funds (Opp. 20-22), are not only insufficient but frivolous. Because personal jurisdiction is lacking, the Motion to Dismiss for lack of jurisdiction should be granted, and the Complaint dismissed as to the SG Foreign Defendants.

A.    **Taken Individually or Collectively, the Trustee's Alleged Contacts Do Not Establish Jurisdiction over the SG Foreign Defendants.**

1.    *New York Choice of Law and Forum Selection Clauses Are Irrelevant and Not Sufficiently Related to the At-Issue Redemptions.*

The Trustee points to New York choice of law and choice of forum provisions included in proffered Subscription Agreements between certain SG Foreign Defendants and the Fairfield Funds. *See* Opp. 18; Longo Decl., Exs. 2, 3, ECF No. 156. But those provisions in the Subscription Agreements fail to establish personal jurisdiction over the SG Foreign Defendants for any of the claims here, and the Trustee concedes that such clauses cannot establish jurisdiction by themselves. Opp. 18. In fact, Judge Bernstein ruled that, even with respect to claims brought by the Fairfield Liquidators (the counterparty to the agreement), the subscription agreements are "irrelevant,"

2

because "consent to the Subscription Agreement does not constitute consent to personal jurisdiction" on claims relating to redemptions. *See Fairfield Sentry Ltd. v. Theodore GGC Amsterdam*, No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd*, 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022).

The Trustee's assertion that the SG Foreign Defendants' subscriptions in and redemptions from the Fairfield Funds are "two sides of the same coin" (Opp. 20) is belied by the text of those agreements, as Judge Bernstein found. The agreements expressly govern the mechanics of transferring money *to* Fairfield and the *issuance* of shares. Longo Decl., Exs. 2, 3, ECF No. 156. By contrast, they say little about the redemption of shares and transfers back to investors, which, along with all other terms of the investment, are governed by the much longer Fairfield Articles of Association under BVI law. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *12. Nor do the Subscription Agreements say anything about jurisdiction over claims by non-parties to those agreements, such as BLMIS or its Trustee. *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) (declining to consider forum selection clause in jurisdictional analysis concerning claim by non-party to the contract when forum selection clause does not govern the claim). Finally, the Trustee does not allege that these agreements among non-U.S. parties were negotiated or executed in the United States (Compl. ¶¶ 8, 10, 16-18, 20-22).

2.    *Proffered U.S.-Based Communications with FGG Are Insufficient to Confer Jurisdiction.*

The Trustee does not allege any physical, in-forum contacts between the SG Foreign Defendants and either the Fairfield Funds or BLMIS, let alone any such contacts that relate to the redemptions he seeks to recover. *Compare Multi-Strategy Fund Ltd.*, 641 B.R. at 87 ("Defendant, through its president and investment manager, was physically present in New York at [FGG's] New York office"). Rather, the Trustee proffers: (i) communications with Lyxor Asset,

3

purportedly acting as the SGAM Funds' agent with respect to their investments in the Fairfield Funds; (ii) confirmation of a *subscription* in, and a request for information on, Sentry sent by SG Suisse's predecessor, CBG Compagnie Bancaire Genève; and (iii) two requests for information on Sentry made by an employee of Société Générale's New York branch in October 2007 and October 2008.[5]  *See* Opp. 20-21, Longo Decl., Exs. 27-33, 35-39, ECF No. 156.  None of these allegations supports jurisdiction over any one, let alone all, of the SG Foreign Defendants.

As previously mentioned, Lyxor Asset is only being sued in its capacity as general partner of SG AM AI Premium Fund L.P. and is not an SG Foreign Defendant, so whether Lyxor Asset is subject to jurisdiction has no bearing on the instant motion.  The Trustee does not plead a single fact showing that Lyxor Asset's alleged contacts have anything to do with the SG Foreign Defendants (Opp. 21-22), let alone with any particular redemptions.  "[T]he presence [in New York] of the subsidiary alone does not establish the parent's presence in the state.  For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent."  *Jazini v. Nissan Motor Co.*, *Ltd.,* 148 F.3d 181, 184 (2d Cir. 1998) (citation omitted).  Agency or department status does not follow from mere affiliation, but must be specifically pleaded.  *Id*. at 185  (finding—at the pleading stage—that the relevant allegations "lack[ed] the factual specificity necessary to confer jurisdiction" because they were "conclusory statements—without any supporting facts"); *see also Fagan v. Republic of Austria*, No. 08 Civ 6715, 2011 WL 1197677 at *17-19 (S.D.N.Y. Mar. 25, 2011) (jurisdictional contacts of affiliates not attributed to one another "unless factors beyond common ownership suggest that their separate corporate identities are a mere façade") (citation omitted).

---

[5] The Trustee's allegations related to Kingate Global (*see* Opp. 14, n. 12; Opp. 16) are irrelevant, since the Trustee stipulated to the dismissal of claims involving Kingate.  *See* Stipulation and Order 3, ECF No. 150.

Moreover, the claims here do not arise out of mere requests for information about Sentry, even if those requests could be attributed to the moving defendants. Indeed, several of the redemptions predate the alleged requests. Here, the Trustee alleges no nexus at all between the communications and any of the SG Foreign Defendants, let alone any particular redemption. That is insufficient to plead jurisdiction. *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) ("The statute . . . requires 'a strong nexus between the plaintiff's cause of action and the defendant's in state conduct.'" (quoting *Welsh v. Servicemaster Corp.*, 930 F. Supp. 908, 910 (S.D.N.Y.1996)). Finally, even if some redemptions might have somehow arisen out of communications by affiliates, the Trustee has not identified which ones. The Trustee argues that "[c]ourts have personal jurisdiction over *defendants*, not *transfers*." Opp. 26. That is wrong— courts have jurisdiction over defendants, but only with respect to claims. It has been decided in this very case that "[e]ach transfer is a separate claim, and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'" *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("BNP") (citations omitted). Here, the Trustee has not even attempted to tie *any*, let alone each, of the at-issue redemptions to any of the alleged contacts.

### 3.    Incidental Use of U.S. Correspondent Accounts to Effectuate Foreign Banking Transactions is Insufficient to Establish Jurisdiction.

The Trustee proffers documents indicating that each SG Foreign Defendant, other than the SGAM Funds, used a U.S. bank account to send subscriptions to and/or receive redemptions from Sentry,[6] and that the SG Foreign Defendants used Sentry's HSBC New York Account for subscriptions and redemptions. Opp. 8-9, 23; Longo Decl., Exs. 2, 8-16; Compl. ¶ 34. But "courts

---

[6] While the Trustee alleges that SG Suisse designated the same bank account in connection with redemptions from Sigma (Opp. 9), Sigma only accepted investments in non-U.S. currency. *See* Compl. ¶¶ 2, 5; Opp. 23. Accordingly, those redemptions could not have used a U.S. correspondent account because they were foreign-currency redemptions from a foreign fund to a foreign redeemer, and are plainly not transactions of business in the U.S.

in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." *Tamam v. Fransabank Sal,* 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) (citing cases).  That is so even where funds relevant to the claims passed through those accounts.  *See, e.g.*, *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020) (no specific jurisdiction over foreign bank defendant where use of correspondent bank account was not essential to the Ponzi scheme).

The Trustee concedes that a defendant's mere use of a correspondent account does not create jurisdiction under New York law—the use must be "purposeful."  Opp. 24.  But even if the SG Foreign Defendants' use of any correspondent account was sufficiently purposeful to support jurisdiction, the Trustee's claim does not arise out of that aspect of the redemptions.  *See Hau Yin To v. HSBC Holdings PLC,* No. 15CV3590, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017) ("The wiring of funds through New York in this case . . . was passive, rather than 'integral' to the alleged [Madoff] Ponzi scheme … Here, the passage of money through the U.S. bank accounts were merely incidental and not specifically directed … to facilitate the Ponzi scheme.").  Here, too, there is no allegation that the correspondent accounts were anything more than a ministerial, intermediate step in the redemption of shares in the Fairfield Funds.  The Trustee relies (Opp. 23-24) on terror-financing cases in which the defendants allegedly aided terrorist groups by giving them access to the U.S. financial system through a New York correspondent account, aptly illustrating the distinction between actions that are "purposeful" and "integral" to the claims as opposed to those that are incidental.  *See Bartlett v. Societe Generale de Banque Au Liban SAL,* No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448, *2 (E.D.N.Y. Nov. 25, 2020) (finding personal jurisdiction over claim that U.S. bank accounts were deliberately used to funnel U.S. dollars to terrorists); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327-28, 68 N.E.3d 1 (2016) (same

as to money-laundering scheme). Here, unlike in *Bartlett* or *Al Rushaid*, the Trustee would have

the same fraudulent conveyance claim even if the money had passed through London, rather than

New York.

    **B.**    **The Trustee's Proffered Contacts Do Not Establish Jurisdiction Over the SG Foreign Defendants under *BNP*, and *BLI* is Distinguishable if it Even Applies.**

The contacts proffered by the Trustee fail to establish personal jurisdiction under *BNP*,

which supersedes *BLI* and therefore controls.[7] In *BNP*, Judge Bernstein cited the Second Circuit

requirement of a proximate cause connection between the defendant's jurisdictional contacts and

the underlying claim. *BNP*, 594 B.R. at 190 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333,

344 (2d. Cir. 2018)). Disregarding *BLI* and instead relying upon *SPV Osus* and *Walden v. Fiore,*

571 U.S. 277, 283-84 (2014), Judge Bernstein held that the Trustee is required to establish

jurisdiction with respect to *each* of the redemptions he sought to avoid based on the *defendant's*

own contacts with the forum. *See BNP,* 594 B.R. at 189-90. Although *BNP* found jurisdiction, it

did so based on numerous, extensive, direct New York contacts related to the redemptions at issue,

none of which is alleged here. *See id.* at 190-91 (finding subsequent transfers at issue related to

contacts of the defendants' New York-based "Fund Derivatives Group").

But even if *BLI* retains vitality after *BNP*, it is nonetheless distinguishable based on the

Trustee's own concession that *BLI* involved a defendant that, unlike the SG Foreign Defendants,

invested its *own* money in the Fairfield Funds: "In a nutshell, BLI invested tens of millions of

dollars in Fairfield Sentry with the specific purpose of having funds invested in BLMIS in New

York, and *intended to profit from this U.S.-based investment*." Opp. 15 (quoting *BLI*, 480 B.R. at

517) (emphasis added). Indeed, the Trustee ignores the essential fact that in *BLI*, the defendant

---

[7] Although this Court has previously ruled in other adversary proceedings that *BLI* does apply, we respectfully disagree for the reasons stated herein. *See Multi-Strategy Fund Ltd.*, 641 B.R. at 86-87.

invested *its own funds* in the Fairfield Funds *for its own profit*. *BLI*, 480 B.R. at 506. Here, in marked contrast, the Trustee does not allege that the SG Foreign Defendants invested their own funds in the Fairfield Funds, or were seeking a profit from a New York investment.

The Trustee attempts to cast doubt on the applicability of this framework by citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017 (2021). *See* Opp. 19. Although the Trustee correctly notes that *Ford* held that no proximate cause requirement exists when there are sufficient related contacts, the Court emphasized that "[i]n the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* at 1026. There, the defendant "had systematically served a market in [the jurisdiction] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States" (*id.* at 1028), and the Court invoked a rule that it has only ever applied to defendants attempting to serve a market in the jurisdiction (*see id.* at 1027 (contacts that "arise[] from the efforts of the manufacturer or distributor to serve . . . the market for its product" can support jurisdiction "if its allegedly defective merchandise has there been the source of injury") (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).[8] That holding has no bearing on the requirement in *SPV Osus* of proximate cause in cases that do not involve product sales and that have otherwise limited contacts, like those alleged here. *SPV Osus*, 882 F.3d at 344. Indeed, here it was the U.S. party (BLMIS) that sought to serve a foreign market. It turns *Ford* on its head to argue that a *customer* is subject to jurisdiction in the home of its (indirect) service provider.

Further, the Trustee's theory that indirect investment in the U.S. qualifies as purposeful availment (Opp. 13) finds no support in the case law (Opening Br. 13-16). "For a State to exercise

___

[8] *See also id.* at 1028 ("Small wonder that Ford has here conceded 'purposeful availment' of the two States' markets. By every means imaginable . . . Ford urges Montanans and Minnesotans to buy its vehicles," sells cars at over 100 dealerships, and "works hard to foster ongoing connections to its cars' owners," including by repairing cars and distributing parts).

jurisdiction consistent with due process … [t]he relationship between the defendant and the forum 'must arise out of contacts that the "defendant *himself*" creates with the forum.'" *Waldman v. Palestine Liberation Org.,* 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden,* 571 U.S. at 284 (emphasis in original)).  Here, it is not disputed that the SG Foreign Defendants effected investments on behalf of clients in the Fairfield Funds—not in BLMIS—and that it was the Fairfield Funds that directly or indirectly invested substantially all of their assets into BLMIS. Opp. 13.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.,* 137 S. Ct. 1773, 1781 (2017) ("[A] defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction.") (quoting *Walden,* 571 U.S. at 286).[9]  Rather, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden,* 571 U.S. at 285 (internal citation omitted).

### C.    The Exercise of Personal Jurisdiction Over the SG Foreign Defendants Would Be Unreasonable and Violate Due Process.

Even if the Trustee had alleged sufficient contacts between the SG Foreign Defendants and New York, the Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 297 (1980).  The Trustee suggests that once the plaintiff shows bare minimum contacts, the burden shifts to the defendant to establish "rare" circumstances (Opp. 28), but his own case holds that jurisdiction is merely "favored" when minimum contacts are shown. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010).  He ignores the Second Circuit's "sliding

---

[9] That redemptions went through Fairfield's "HSBC New York Account for subscriptions and redemptions" owned and maintained by Sentry (Opp. 23) is another third-party contact irrelevant to the SG Foreign Defendants.  *See Spetner v. Palestine Inv. Bank,* 495 F. Supp. 3d 96, 113 (E.D.N.Y. 2020) (no jurisdiction where defendant engaged in a "standard correspondent banking relationship" with a third party and did not set up or direct the correspondent account at issue); *see also Berdeaux v. OneCoin Ltd.,* 561 F. Supp. 3d 379, 402-403 (S.D.N.Y. 2021) (finding allegation that defendant was aware that a New York account would be used to effect a transfer of funds in furtherance of the alleged fraud to be "patently insufficient" to confer jurisdiction absent allegations that defendant directed the use of the account).

scale" standard, by which a weaker showing on contacts can be overcome by a lesser showing of unreasonableness. *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569, 575 (2d Cir. 1996).

"[F]oreseeability" of suit in the forum "is critical to due process analysis." *Burger King v. Rudciewicz*, 471 U.S. 462, 474 (1985). Thus, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475 (internal quotation marks omitted). It is difficult to see why a foreign investor who invested in a foreign fund would ever foresee being sued in New York. No one foresaw that BLMIS might be a Ponzi scheme and that its trustee might sue investors in feeder funds—not BLMIS—to recover redemptions from those funds. The SG Foreign Defendants had no relevant contract with, and certainly no fiduciary or other extra-contractual duties to, any U.S. party. Conversely, as an investor in an investor of BLMIS, they would have lacked standing to file their own suits against Madoff. *See In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 425-26, 428 (2d Cir. 2013) (affirming district court's holding that investors in Madoff feeder funds lack standing to pursue SIPA claims because they were not themselves BLMIS customers). This Court has repeatedly held that, even after Madoff's fraud, feeder-fund investors have no recourse in U.S. courts and are limited to seeking recovery from foreign estates. In short, they have received no "benefits [or] protections of [U.S.] laws" and therefore had no reason to expect to litigate here. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

## II.    THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD THAT THE SG DEFENDANTS ARE SUBSEQUENT TRANSFEREES OF BLMIS CUSTOMER PROPERTY.

The Complaint should be independently dismissed because it fails to plausibly allege that the SG Defendants are subsequent transferees of customer property—*i.e.*, it pleads no facts that

plausibly "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); *see also* Opening Br. 18-24.  Instead, the Trustee simply lists alleged initial and subsequent transfers and makes the bare, conclusory assertion that the entries in the two lists are sufficiently connected to each other.[10]  That approach falls far short of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Indeed, the very cases cited by the Trustee—including from other adversary proceedings he has commenced—disprove his position by exemplifying the types of allegations that plausibly tie initial and subsequent transfers at the pleading stage.  For example, in *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019), the plaintiff sought to recover subsequent transfers where a total of $29.4 million in payments was deposited into an account and $29.4 million was withdrawn the same day and the very next business day.  *Id.* at 736–37, 747 (complaint alleged that $29.4 million was transferred out the same day and next business day).[11]  Such factual allegations are entirely lacking here.[12]

To the contrary, not only has the Trustee failed to allege any such linkage, but he has chosen

---

[10] To the extent that this Court intends to consider monies received by Fairfield Sentry prior to December 11, 2002 in its analysis (*see Multi-Strategy Fund Ltd.*, 641 B.R. at 95), this cannot be squared with applicable law or the Trustee's allegations, which concern only subsequent transfers of allegedly avoidable initial transfers (*i.e.*, those within the six-year lookback period).  Moreover, this contention lacks any limiting principle, and taken to its logical conclusion could result in rendering at risk for recovery funds based on initial transfers going as far back in time as monies can theoretically be followed.

[11] *See also Picard v. Merkin (in re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS; *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days).

[12] Requiring the Trustee to plead facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as the Trustee asserts.  *See* Opp. 30-32.  Rather, it merely requires pleading facts that, if proved, would link initial transfers to subsequent transfers—something the Trustee himself has clearly been able to do in other actions, but has not done and cannot do here.

to make affirmative allegations that demonstrate the implausibility of his claim. The Trustee

implausibly seeks to recover $2 billion more in subsequent transfers than the sum of all alleged

BLMIS-to-Fairfield Sentry initial transfers. *See* Opening Br. 21-24. The Trustee tries to justify

this overreach because he "'may recover [an avoided] transfer from a subsequent transferee of

those funds, without the necessity for allocation among all [the] subsequent transferees.'" Opp.

36 (citing *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y.

2008)). But the Trustee's cases authorize suits seeking superficially duplicate recoveries only from

subsequent transferees—*i.e.*, the "immediate or mediate transferee[s]" of an initial transferee, to

which Section 550(a)(2) refers—"who take[] in a later transfer down the chain of title or

possession." *Helms v. Metro. Life Ins. Co. (In re O'Malley),* 601 B.R. 629, 656 (Bankr. N.D. Ill.

2019), *aff'd,* 633 B.R. 332 (N.D. Ill. 2021)). Here, the Trustee does not seek recovery from a series

of transferees in a single "chain of title or possession." *Id.* Instead, he sues to recover various

amounts from many defendants in dozens of different alleged chains of title or possession,

asserting that *all* the funds that *every* alleged subsequent transferee received[13] constitute

subsequent transfers of customer property. And he persists in doing so even though the total he

---

[13] The Trustee alleges that ***every single*** redemption payment from Sentry during the relevant period was comprised ***entirely*** of customer property. *See* Shaiman Reply Decl. Ex. 2, ¶ 8 (alleging, for example, that "[b]ased on the Trustee's investigation to date, approximately $8,470,371 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Bank Vontobel"). As explained, accepting all allegations as true, this would mean the Trustee is alleging subsequent transferees received ***billions*** more in customer property *from* Sentry than was ever transferred *to* Sentry, which is impossible. We are aware that the Court has previously found that it cannot "consider allegations made in 90 other complaints filed by the Trustee in this SIPA proceeding . . . [because t]hese complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion." *Picard v. Lombard Odier & Cie (In re BLMIS)*, Adv. Proc. No. 12-01693, 2022 WL 2387523, at *11 (Bankr. S.D.N.Y. June 30, 2022). However, on a motion to dismiss "[a] court is empowered to take judicial notice of public filings, including, in an adversary proceeding, those filed on its own dockets in the underlying bankruptcy case." *In re MSR Hotels & Resorts, Inc.*, No. 13-11512 (SHL), 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013); *see also In re Terrestar Corp.*, No. 11-10612 (SHL), 2015 WL 5719469, at *4 (Bankr. S.D.N.Y. Sept. 29, 2015) ("[B]ankruptcy judges would be remiss" if they did not take judicial notice of the debtor's bankruptcy case as a whole, including the documents filed in the case because of bankruptcy's unique interrelated multi-part nature and duty to "notice ... records and files in [the] cause ....") (quoting *In re Saco*, 30 B.R. 862, 865 (Bankr.D.Me. 1983)).

12

seeks exceeds by approximately $2 billion the sum of the initial transfers. This inconsistency underscores that the Trustee has not alleged facts suggesting that *any* transfer to *any* transferee included Madoff customer property.

In response, the Trustee deems it sufficient that he "outlin[ed] the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to the SG Defendants," together with the "vital statistics" of the alleged subsequent transfers. Opp. 3, 30. But that mischaracterizes the Complaint and its exhibits, which reveal his "pathways" to be dead ends. Opp. 30. For example, according to the Trustee's allegations, nineteen alleged redemption payments to the SG Defendants from Sentry from October 2003 through March 2005 took place three to twenty months after Sentry last received funds from BLMIS on July 22, 2003, negating any inference of "linkage." *See* Opening Br. 23-24; *see also* Compl. Ex. E.[14] Moreover, many of the specific alleged transfers to the SG Defendants occurred at times when, according to the Trustee's own pleadings, Fairfield Sentry held no BLMIS-sourced funds (*see* Opening Br. 23-24), making it impossible for the funds to have come from BLMIS.[15]

---

[14] In comparison, the cases the Trustee cites involved a close correspondence between the initial and subsequent transfers. *See Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (transfers by initial transferees "were preceded by fraudulent transfers of funds from [debtor] *in amounts sufficient to cover the [subsequent] transfers*"; emphasis added, citations omitted); *see also id.* at 13 (specifying initial and subsequent transfers during 13-day period); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*"; emphasis added); *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that payments totaling $29.4 million were deposited into account and $29.4 million was transferred out the same day and next business day).

[15] The Trustee alleges that in the period from December 11, 2002 (*i.e.*, six years preceding the filing of the petition (Compl. ¶¶ 42, 52, 12)) through March 31, 2005, BLMIS transferred a total of $120 million to Sentry in three separate transfers made May 9, 2003 through July 22, 2003. Opening Br. 23; *See* Compl. Ex. D pp. 19, 20 ("CHECK WIRE" entries). The Trustee further alleges that from the first BLMIS transfer on May 9, 2003, through September 17, 2003, Sentry paid over $178 million of alleged customer property to redeeming shareholders, including transfers to Sigma, and Lambda. Opening Br. 23; *see* Shaiman Opening Decl. Exs. 5, 6, ¶ 11, ECF 144; Shaiman Reply Decl. Ex. 1, ¶ 6 (providing updated versions of Exhibit 6 and Paragraph 11 to the Shaiman Opening Declaration.) Fairfield Sentry thus held no BLMIS customer property from September 17, 2003 through March 31, 2005 according to the Trustee's complaints. *See id.* Nevertheless, the Trustee seeks to recover 19 redemption payments (totaling approximately $16 million) he alleges were made during that period. Opening Br. 24; *see also* Compl. Ex. E. The Trustee also accuses the SG Defendants of "applying some undisclosed tracing methodology," Opp. 33, but the SG Defendants presented

Finally, the Trustee pleads that Sentry continuously received funds not just from BLMIS, but also from subscriptions (*see* Opening Br. 22), leading to the conclusion that Fairfield Sentry could have paid redeeming investors with funds that did not originate with BLMIS, such as with funds from subscribing investors. *See* Opening Br. 22-23.[16]  The Trustee calls this a "commingling" argument (Opp. 32-36), but his pleadings establish long periods in which no commingling occurred—and the requisite linkage cannot be made—because no customer property remained at Fairfield Sentry.

Finally, the Trustee invokes an alleged information deficit as an excuse for not pleading facts plausibly showing that the SG Defendants received customer property. *See* Opp. 34-35.  But he does not deny that ever since he entered into the 2011 Fairfield Settlement Agreement, he has had full access to the Fairfield Liquidators' "documents, data and other information relating to, or beneficial to the pursuit of" claims in which the Trustee and the Liquidators agreed to cooperate and share proceeds, including this action.  Opening Br. 6.  He coyly denies "hav[ing] *all* of Fairfield Funds' books and records," (Opp. 35 (emphasis added)) without disclosing which books and records he has, which (if any) he is missing and why, what (if anything) he has done to access any missing books and records, whether (and how) any gaps would justify his pleading failures, or how he could ever obtain any missing Fairfield records before summary judgment.[17]  The

---

only basic arithmetic calculations—*i.e.*, adding all the BLMIS-to-Fairfield Sentry transfers and subtracting redemptions by Fairfield Sentry investors—performed on data the Trustee provided in his pleadings.  That is plainly not improper. *See Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).  Additionally, the SG Defendants' basic calculations are consistent with the Trustee's own theory that Fairfield Sentry withdrew funds from BLMIS "*in order to pay [] redemptions*".  *See* Opening Br. 28 (emphasis added).

[16] In fact, in a related proceeding in this Court, Fairfield Sentry confirmed that it paid redeeming investors with funds that originated from subscribing investors, not from BLMIS.  *See* First Amended Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19, ¶ 63 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of other investors on hand that were directed for investment in BLMIS).").

[17] Although the Trustee fails to acknowledge it, the Liquidators admitted in 2010 that they possessed most of the Fairfield Funds' books and records.  *See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164, ECF No. 40 ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010).

Trustee's suggestion that "without discovery, the SG Defendants' arguments are premature," (Opp. 34) is a non sequitur. Fairfield Sentry's records, to which the Trustee has had contractual access for over a decade, together with BLMIS's own records, would show whether Fairfield Sentry's redemption payments contained customer property; the SG Defendants' records would not. The Trustee has not justified the Complaint's deficiencies, and it should be dismissed.

**III.    WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT.**

In his Opposition, the Trustee argues that "[b]ased on" Judge Rakoff's ruling in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge."[18] Opp. 44. As the Trustee would have it, Sentry's alleged actual knowledge of Madoff's fraud bars not only Sentry, but also subsequent transferees, from invoking the safe harbor for initial transfers made more than two years before bankruptcy.[19]

---

[18] In recent decisions, this Court has held the safe harbor exception codified at Section 546(e) is inapplicable to subsequent transferees, other than by assertion of an initial transferee's Section 546(e) defense. *Picard v. Banca Carige S.P.A. (In re BLMIS)*, Adv. Proc. No. 08-01789, 2022 WL 2387522, at *5, *6 (Bankr. S.D.N.Y. June 30, 2022); *Banque SYZ*, 2022 WL 2135019, at *9, *10; *Multi-Strategy Fund Ltd.*, 641 B.R. at 94. For the reasons outlined below and in Section III, the SG Defendants respectfully submit that this Court's analysis misinterprets the district court's decisions on the applicability of the Section 546(e) safe harbor to subsequent transferees, including in actions brought by this Trustee. *See e.g., Cohmad II*, 2013 WL 1609154, at *7 ("[E]ven if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds."). In *Cohmad II*, Judge Rakoff noted that the "one caveat" to the subsequent transferee's entitlement is where the subsequent transferee itself has "actual knowledge of Madoff Securities' fraud," which the Trustee has not alleged here. *Id.* Thus, the inquiry centers on the subsequent transferee's knowledge, rather than the initial transferee's. Nowhere did Judge Rakoff in *Cohmad II*—or in any of the later decisions applying the safe harbor to subsequent transfer claims—ever suggest that innocent subsequent transferees like the SG Defendants would be deprived of the safe harbor defense merely because the initial transferee allegedly knew of Madoff's fraud. *Id.*

[19] The Trustee devotes most of his brief on Section 546(e) to the argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer. *See* Opp. 39, 41-46. The SG Defendants have not contended otherwise and bases its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from BLMIS to Sentry. *See* Opening Br. 24-32. As discussed in the previous footnote, the issue here is not whether the safe harbor applies to

To the contrary, *Cohmad II* directly supports the applicability of the safe harbor to innocent subsequent transferees and requires that the SG Defendants' motion to dismiss be granted.  In a ruling that he directed be applied to a large number of adversary proceedings, *see Cohmad II*, 2013 WL 1609154, at *10,[20] and which therefore was not "dicta," (Opp. 43) Judge Rakoff held that the relevant "actual knowledge" is that of the party from which the Trustee seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and
> (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added except for "if").

While paragraph (2) above addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the *subsequent transferee* had actual knowledge of Madoff's fraud, it pointedly did *not* preclude a subsequent transferee from asserting the safe harbor where the *initial transferee* had actual knowledge of Madoff's fraud.[21]  The reason for this can be seen in Judge Rakoff's explanation of his ruling, in which he again focused on the subsequent transferee's knowledge when recovery was sought from that subsequent transferee:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)*.  . . . [T]he purpose

_____

the initial *transfer* (it clearly does), but whether the actual knowledge of the initial transferee can be used to strip the safe harbor's protection from a subsequent transferee that does not have, and is not alleged to have, actual knowledge.

[20] *See* Amended Notice of Motion to Dismiss, *Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)* (S.D.N.Y. Aug. 10, 2012), No. 12-MC-00115, ECF 289 (listing proceedings involved in *Cohmad*).

[21] Indeed, in Judge Rakoff's original "bottom line" Order that included the language quoted above, he underlined "subsequent" at the end of paragraph (2).  *See* Order, *Cohmad*, No. 12-MC-00115 (S.D.N.Y. Feb. 12, 2013), ECF 439, at 3.

of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . . In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.

\* \* \*

[T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor. Again, this follows from the general principles enunciated earlier in this Opinion. A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e). . . . In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.

*Id*. at \*4, \*7 (emphasis added; citations omitted).

In these passages, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to (not greater than) the one he announced for initial transferees, precluding Section 546(e) from being invoked in a situation in which it otherwise would apply if doing so would benefit a defendant (whether an initial or subsequent transferee) with actual knowledge that the funds it received had been fraudulently transferred. The Trustee's Opposition concedes the rationale for this rule when it states that "the point of the actual knowledge exception . . . is to restrict all *bad actors* [subsequently described as transferees with actual knowledge] from hiding behind the safe harbor." Opp. 45 (emphasis added).

*Cohmad II* established that when an initial transferee has actual knowledge of the fraud, and thus knows there is no bona fide settlement payment or securities contract, it cannot invoke the safe harbor to protect the initial transfer. *See Cohmad II*, 2013 WL 1609154, at \*10. Similarly, when a subsequent transferee has actual knowledge of the fraud, it cannot invoke the safe harbor

17

that would otherwise apply to the initial transfer, even if the initial transferee was "innocent," because the subsequent transferee knows there is no bona fide settlement payment or securities contract, and allowing the culpable subsequent transferee to invoke the safe harbor would permit it to "launder . . . fraudulently transferred funds through a nominal third party," *i.e.*, the initial transferee. *Id.* at \*7. But where the subsequent transferee lacks actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract, and that reasonable expectation should be protected by the safe harbor. *Id.* at \*4.

In *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court reiterated that "if the Trustee sufficiently alleges that the transferee ***from whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the protections of Section 546(e)'s safe harbor." *Id.* at \*4 (emphasis added) (quoting *Cohmad II*). This Court thus examined whether the Trustee had sufficiently alleged facts establishing actual knowledge separately as to each individual subsequent transferee defendant. *See id.* at \*5-\*7. The Court concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud," *id.* at \*6, and therefore dismissed all claims against her, *id.* at \*15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the ***initial*** transferees and the ***other*** subsequent transferee defendants, *id.* at \*4-6; *see also id.* at \*15 (denying motion to dismiss except as to the individual claims against Ms. Piedrahita).[22]

---

[22] The only claims asserted against Ms. Piedrahita were subsequent transfer claims. *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 09-01239 (CGM), ECF No. 286, ¶¶ 366-70, 391-94. The Court discussed the Trustee's failure to allege facts showing that she had "independent actual knowledge of the BLMIS fraud," *Fairfield Inv. Fund*, 2021 WL 3477479, at \*6, in Section III(A) of its decision, relating to whether Section 546(e) "BAR[RED] THE TRUSTEE'S SIX-YEAR SUBSEQUENT TRANSFER CLAIMS." *Id.* at \*3.

The Trustee also cites *BNP* and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) (Opp. 44), but neither case discussed whether a subsequent transferee's invocation of Section 546(e) is barred by the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 196-97; *SunEdison*, 620 B.R. at 512-14. Instead, both cases focused on the same argument raised by the Trustee here. *See BNP*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the safe harbor defense only applies by its terms to the initial transfer"); note 19 *supra*. And to the extent *BNP* might be read to imply that an innocent subsequent transferee cannot invoke the safe harbor, it is inconsistent both with *Cohmad II* and *Fairfield Investment Fund*.[23] Since the SG Defendants are not alleged to have had actual knowledge of Madoff's fraud, dismissal of the subsequent transfers subject to the safe harbor is squarely in line with both cases.

## IV.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2).

The Trustee cannot cure his failure to plead "a short and plain statement of the claim showing that the pleader is entitled to relief", as required by Rule 8(a)(2) (Opening Br. 32-33), by pointing to Rule 10(c)'s provision that, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The Trustee does not seek to

---

[23] The Trustee asserts that "this Court has . . . applied the actual knowledge 'exception' on numerous occasions" (Opp. 40), but none of the cases he cites in his accompanying footnote (*id*. n.26) barred an innocent subsequent transferee from invoking the safe harbor based on the actual knowledge of the initial transferee. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *1, 7 (dismissing innocent subsequent transferee); Tr. of May 29, 2019 Hr'g, *Picard v. Square One Fund Ltd. (In re Madoff)*, No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019), ECF 181, at 41 (complaint's allegations "fail to spell out a claim of actual knowledge" against initial transferee defendant); *Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint at No. 10-05279, ECF 143); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims); *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 116, 125-26 (Bankr. S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of challenges by defendants); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–99000, 2015 WL 4734749, at *1, 10 (Bankr. S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014) (applying safe harbor to subsequent transfers beyond two-year period because complaint failed to plausibly allege transferees' actual knowledge).

incorporate "[a] statement", but 798 paragraphs of statements, without specifying which are relevant here, from a document filed in a separate action that is no longer an operative pleading. The Trustee's reliance upon *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), is unavailing. That case, which dismissed the complaint for failing to comply with Rule 8(a), *id.* at 679, made clear that even when incorporation of another pleading is permitted, the resulting pleading must nonetheless satisfy Rule 8(a).[24] Judicial notice, likewise, cannot save the trustee's Complaint. A court may only take judicial notice of a separate complaint to recognize that those allegations were made, not that they are true. *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted…, but rather to establish the fact of such litigation and related filings"; internal citation and quotation marks omitted); *see also Francis v. Accubanc Mortg. Corp.*, No. 19-CV-902 (AJN), 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (same, on motion to dismiss).

Finally, the SG Defendants do not object to the Trustee's request for leave to amend his Complaint if the Court sustains the SG Defendants' Rule 8(a) objection.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the SG Defendants' Opening Brief, the SG Defendants respectfully request that the Court dismiss the Complaint in its entirety.

---

[24] Similarly unavailing is the Trustee's reliance on *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013). *See* Opp. 37. That case addressed a different question (whether the Trustee may avoid a subsequent transfer without first obtaining a judgment against the initial transferee), and defendants did not challenge the propriety or scope of the incorporation. *See* 501 B.R. 26 at 31-32 (mentioning incorporation in a single sentence). And that decision is beside the point. The SG Defendants do not challenge the avoidability of the initial transfers, but the propriety of the Trustee's incorporation of a plethora of irrelevant allegations and exhibits.

Dated:  August 26, 2022
       New York, New York

Respectfully Submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/ John F. Zulack*_____
    John F. Zulack
    Lauren J. Pincus
    David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

MAYER BROWN LLP

By: */s/ Christopher J. Houpt*_____
    Steven Wolowitz
    Christopher J. Houpt
    Bradley A. Cohen
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: (212) 506-2500
Email: swolowitz@mayerbrown.com
Email: choupt@mayerbrown.com
Email: bacohen@mayerbrown.com

*Counsel for the SG Defendants*