**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Hearing Date: March 15, 2023 at 10:00 a.m.**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-05348 (GCM) |
| v. | |
| NOMURA INTERNATIONAL PLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF NOMURA INTERNATIONAL PLC'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT ....................................................................................................3

I.      THE COURT LACKS PERSONAL JURISDICTION OVER NIP ..................................3

        A.      Applicable Law ......................................................................3

        B.      Relevant Jurisdictional Allegations ........................................4

        C.      The Trustee Cannot Establish Jurisdiction Over NIP Based on Allegations
                That NIP a Was Investing in Fairfield or BLMIS With the Goal of Making
                an Investment Profit from Transactions in the United States ..................5

        D.      The Trustee Cannot Establish Jurisdiction Based on NIP's Knowledge
                That the Fairfield Funds Were Investing in BLMIS, Or that BLMIS and
                the Fairfield Funds Had Strong Forum Connections ..............................7

        E.      The Trustee Cannot Establish Jurisdiction Based on the Use of
                Correspondent Accounts ......................................................10

        F.      The Trustee Cannot Establish Jurisdiction Based on Alleged Unspecified
                Meetings and Communications................................................12

        G.      This Court Had Already Correctly Held That NIP Did Not Consent to
                Jurisdiction Over This Action................................................14

        H.      The Court's Assertion of Jurisdiction Over NIP Would Not be Fair or
                Reasonable ......................................................................15

CONCLUSION....................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) .......................................................13

*Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)...................................11

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ..........................................................4

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....................................................................4

*Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),* Adv. Proc. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") .........................................................................................14, 15

*Fairfield Sentry Ltd. v. Migani* (2014).........................................................................................14

*Ferrante Equip. Co. v. Lasker-Goldman Corp*., 26 N.Y.2d 280 (1970).........................................9

*Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ..........8

*Hanson v. Denckla*, 357 U.S. 235 (1958) .......................................................................................3

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .....................................4

*J.E.T. Advertising Assocs., Inc. v. Lawn King, Inc*., 84 A.D.2d 744 (2d Dep't 1981)....................8

*Jonas v. Estate of Leven*, 116 F. Supp. 3d 314 (S.D.N.Y. 2015).....................................................8

*Leema Enters., Inc. v. Willi,* 575 F. Supp. 1533 (S.D.N.Y. 1983).................................................10

*In re Lehman Bros. Holdings Inc.*, 535 B.R. 608 (Bankr. S.D.N.Y. 2015)......................................3

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17 Civ. 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ........................................................................................................11

*Maranga v. Vira,* 386 F. Supp. 2d 299 (S.D.N.Y. 2005)................................................................13

*McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377 (1967) ..................................................12

*Met. Air Serv., Inc. v. Penberthy Aircraft Leasing Co.*, 648 F. Supp. 1153 (S.D.N.Y. 1986) .................................................................................................................................8

*Metals All. Corp. v. Beshay*, No. 97 CV 3401, 1998 WL 811788 (S.D.N.Y. Nov. 19, 1998) ...............................................................................................................................13

*Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13 (1970) ..............................................13, 14

*Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018)..............4, 6, 9

*Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................................................................................................6, 9

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, 19 Civ. 10247, 2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ...........................................................................................13

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470 (S.D.N.Y. 1998)..............8

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46 (S.D.N.Y. 2013) ...........................................................................................................................................1

*In re Sledziejoinwski,* Case No. 13-22050 (RDD), Case No. 13-22748, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ..........................................................................................10

*SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ................................................................................................................................12

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521 (1st Dep't 2014) ..............................8

*Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012).....................11

*Walden v. Fiore*, 571 U.S. 277 (2014)...............................................................................6, 7, 8, 9

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) .......................................3, 16

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..............................................16

## Other Authorities

CPLR § 302(a)(1) .......................................................................................................................4

2 *Moore's Federal Practice* § 12.31 (3d ed. 2022).........................................................................4

Defendant Nomura International plc ("NIP") respectfully submits this memorandum of law, together with the accompanying Declaration of Alan Saunders ("Saunders Decl."), pursuant to Federal Rules of Civil Procedure 12(b)(2), in support of its motion to dismiss the amended complaint (the "Complaint" or "Compl.," No. 10-05348 ECF 121) filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff ("Madoff").[1]

## PRELIMINARY STATEMENT

NIP is a foreign financial institution and a victim of the fraud perpetuated by BLMIS and Bernard Madoff. Although the Trustee often claims that he brings suits such as this one to ensure equitable treatment amongst similarly situated victims of the Madoff fraud, that simply is not true with respect to NIP. NIP had no direct claim against the BLMIS estate because, unlike many other victims of the Madoff fraud, NIP's transactions were implemented through a foreign intermediary. Based on this fact, ***NIP stands to lose vastly more than the average victim of the Madoff fraud.*** Most other victims of Madoff's fraud are able to access recoveries of at least 70 percent or more, either by participating in recoveries made available by the Trustee and the BLMIS estate, by the Madoff Victim Fund, or both. NIP, however, has been barred from participating in those meaningful recoveries, chiefly because it facilitated its foreign counterparties' investments through foreign vehicles—*i.e.*, the Fairfield Funds (defined below)—which are subject to entirely different legal regimes.

---

[1] By making this motion, NIP is not waiving, and expressly reserves, its rights to have an Article III court enter a final judgment in this matter or to have any claims that survive this motion tried by a jury. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46, 58 (S.D.N.Y. 2013).

If the Trustee's claims are allowed to proceed, and if he recovers the full amounts sought, NIP would lose a substantially larger proportion of its principal investment and its good faith withdrawals from the Fairfield Funds as compared to those who invested directly with BLMIS in the United States. That would be a deeply unfair result, particularly given that the very aim of the avoidance actions brought against NIP is to equalize recoveries among similarly situated victims. And the unfairness would be compounded by the fact that NIP had clear reason to believe it was operating under entirely foreign legal rules, and never intended to generate any investment returns from investments in the Fairfield Funds or any business conducted in the United States. Instead, the predominantly foreign nature of NIP's business activity and dealings with the Fairfield Funds, make clear that the Trustee's claims should be dismissed for lack of personal jurisdiction.

The Trustee's primary allegation in support of personal jurisdiction is not accurate. NIP did not generate "significant revenue from New York," as the Trustee alleges (Compl. ¶ 61). Furthermore, the Trustee's remaining allegations—*i.e.*, the incidental use of a correspondent U.S. bank account and a provision in a subscription agreement, or the receipt of redemption funds in a New York bank account—are far too thin to support personal jurisdiction. The Court should therefore dismiss the Trustee's Complaint against NIP for lack of personal jurisdiction.

## **FACTUAL BACKGROUND**

The Trustee's Complaint alleges that NIP received transfers of approximately $34 million, including from Fairfield Sentry Limited ("Sentry") and Fairfield Sentry Limited ("Sigma", and together with Sentry, the "Fairfield Funds") in the six years prior to BLMIS filing for bankruptcy protection, and that such funds are recoverable because NIP was a subsequent transferee of alleged fraudulent conveyances made by BLMIS to the Fairfield Funds. Compl. ¶ 2.

During the period from 2006, the year in which NIP made its first subscription with the Fairfield Funds, through November 28, 2008, the date of the last challenged redemption payment (the "Relevant Period"), NIP was a financial services institution organized under the laws of the United Kingdom, with its headquarters and principal place of business located in London, at 1 St Martin's Le Grand.  Saunders Decl. ¶ 4.  NIP had no permanent employees in the United States during the Relevant Time Period and it had no branches or offices in the United States.  *Id*. ¶¶ 5-6.

Notably, NIP did not make subscriptions or redemptions in the Fairfield Funds, or in any other Madoff "feeder funds", with any expectation that it would make or lose money based on the performance of the Fairfield Funds or BLMIS itself.  Instead, NIP's subscriptions in the Fairfield Funds were made to facilitate investments by NIP counterparties who were themselves seeking to profit from positions linked to the performance of the Fairfield Funds.  *Id*. ¶ 7.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER NIP

### A.    Applicable Law

The Trustee bears the burden of establishing personal jurisdiction.  *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).  To do so, he must satisfy the statutory basis for specific jurisdiction and also establish that the exercise of jurisdiction comports with due process.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327-28, 334 (2d Cir. 2016).  Neither requirement is met here.  The exercise of specific jurisdiction over a nonresident defendant will be consistent with due process only if: (1) the defendant "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); (2) the plaintiff's claim "arise[s] out of or relate[s] to the foreign corporation's activities in the

3

forum State," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and

(3) the exercise of jurisdiction is reasonable under the circumstances, *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 477-78 (1985). The statutory requirements in this case are essentially

identical.[2]

    Courts regularly hold, and it is the law of the case here, that personal jurisdiction must be

independently shown for each challenged transaction or redemption. *See*, *e.g.*, *Picard v. BNP*

*Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190-92 (Bankr. S.D.N.Y. 2018) (collecting cases)

("*BNP*"). Where jurisdiction has been challenged, "[t]he party asserting personal jurisdiction has

the burden of proving its existence…." 2 *Moore's Federal Practice* § 12.31 at 5 (3d ed. 2022)

(citing *Metropolitan Life*, 84 F.3d 560, 566 (2d Cir. 1996)).

## B.    Relevant Jurisdictional Allegations

    The Trustee's Complaint includes the following five categories of allegations in support

of personal jurisdiction:

>    1.    NIP was effectively, or indirectly, investing in BLMIS and doing so with a
>          view to making an investment return. *See*, *e.g.*, Compl. ¶¶ 3, 31, 61.
>
>    2.    BLMIS and the Fairfield Funds have strong forum connections and that
>          NIP was aware of such forum connections. *See*, *e.g.*, Compl. ¶¶ 32, 35-39,
>          48 and 53-54.

---

[2] As a statutory basis for personal jurisdiction, the Trustee invokes CPLR § 302 and Bankruptcy
Rule 7004. Compl. ¶ 8. In an action such as this, CPLR § 302(a) provides personal jurisdiction
over an out-of-state defendant only if: (i) the defendant "transacts any business within the State"
of New York and (ii) the plaintiff's claim "arises from" such business activity. CPLR §
302(a)(1). As interpreted by the New York Court of Appeals, the two prongs of CPLR §
302(a)(1) overlap with the first two requirements of the due process test. *See, e.g., Best Van
Lines, Inc. v. Walker*, 490 F.3d 239, 246-49 (2d Cir. 2007) (examining New York Court of
Appeals cases). Similarly, Bankruptcy Rule 7004(f) provides for personal jurisdiction in an
adversary proceeding, upon service of process in accordance with Fed. R. Civ. P. 4, if "the
exercise of jurisdiction is consistent with the Constitution and laws of the United States." Thus,
under either CPLR § 302(a)(1), or Bankruptcy Rule 7004(f), the statutory analysis largely
collapses into the constitutional analysis.

3.    NIP:  (a) routed payments through the Fairfield Funds' U.S. correspondent accounts when making subscription payments to them; and (b) used a New York based bank account to receive redemption payments from the Fairfield Funds.  *See*, *e.g.*, Compl. ¶¶ 45-47.

4.    NIP engaged in unspecified meetings and communications in the United States, the number, content, and timing of which are entirely unspecified.  *See*, *e.g.*, Compl. ¶¶ 49-50.

5.    NIP consented to jurisdiction by entering into a subscription agreement and nondisclosure agreement that included New York forum and choice of law clauses.  *See*, *e.g.*, Compl. ¶¶ 41-44 and 51.

None of these allegations are sufficient—either individually or in the aggregate—to establish personal jurisdiction under controlling law.

## C.    The Trustee Cannot Establish Jurisdiction Over NIP Based on Allegations That NIP a Was Investing in Fairfield or BLMIS With the Goal of Making an Investment Profit from Transactions in the United States

The Trustee has alleged that NIP was investing in BLMIS feeder funds "[w]ith the specific purpose of having funds invested with BLMIS in New York and profiting from those investments" (Compl. ¶ 3) and that NIP "invested in the Fairfield Funds with the specific purpose of having funds invested with BLMIS in New York and profiting therefrom" (Compl. ¶ 31).  That is incorrect.  The Saunders Declaration attests to the real nature and purpose of NIP's transactions with the Fairfield Funds:  NIP was not subscribing for and redeeming shares with any expectation that it would make or lose money based on the performance of the Fairfield Funds or BLMIS itself, but rather, was facilitating possible profit-making investment activity for various foreign counterparties.  Saunders Decl. ¶ 7.  Under the relevant contracts, NIP's counterparties would profit when the Fairfield Funds increased in value, and would lose money if Fairfield Funds declined in value.  *Id.*.  NIP, on the other hand, was not expecting to make any money or suffer any losses based on the performance of the  Fairfield Funds or BLMIS itself, because NIP generally invested and redeemed amounts with the  Fairfield Funds in direct

proportion to the positions taken by its counterparties. *Id.*. In exchange, the London-based NIP earned fixed fees or other income for facilitating its counterparties' investments. *Id.* ¶ [__].

These facts are critical, because they bring NIP well outside of the scope of prior decisions such as *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*"), and *BNP*, and distinguish NIP's facts and legal position from several recent decisions in which this Court has applied *BLI* and *BNP*. When this Court has applied cases like *BLI* and *BNP* to find jurisdiction over other redeemer defendants in other cases, the Court has focused on such defendants' "investment activities" and their intention to "reap the benefits" from investing in the "Madoff money orchard." *See*, *e.g.*, Memorandum Decision Denying Defendant's Motion to Dismiss, Adv. Proc. No. 12-1205, Case No. 08-1789, Docket No. 21 ("Multi-Strategy Decision"), at 8-9 (quoting *BLI*). In other words, *BLI* and *BNP* essentially turned on the Court's view that jurisdiction was proper where foreign defendants were, in the Court's view, indirectly investing in and hoping to profit from Madoff's own purported investments in the U.S. capital markets.[3] But that is decidedly *not* what NIP was doing. NIP was a London-based financial institution seeking to profit by acting to facilitate investments by its counterparties. This is not remotely akin to other cases in which defendants invested in BLMIS in the hopes of benefitting from the increase in value of that investment.

---

[3] Notably, *BNP* also appears to have recognized, likely due to the intervening Supreme Court decision *Walden v. Fiore*, 571 U.S. 277 (2014), that additional jurisdictional contacts were also required in order to adequately ground specific jurisdiction. Thus, Judge Bernstein's finding of personal jurisdiction in *BNP* was premised on several strong jurisdictional contacts, including the presence of numerous employees and offices in New York, admissions by defendants that they were based in New York, and the conclusion that the redemptions "arose, for the most part" from those New York contacts and employees. *BNP* at *190-91. Neither the quality or quantity of NIP's jurisdictional contacts are remotely similar to the facts in *BNP*.

Extending *BLI's* and *BNP's* reasoning even further—*i.e.*, by asserting personal jurisdiction over overseas financial institutions who merely facilitated overseas investments on behalf of their overseas counterparties—would require a significant expansion of the power of the federal courts.  The Trustee has not cited a single precedent that supports such a result.

### D.    The Trustee Cannot Establish Jurisdiction Based on NIP's Knowledge That the Fairfield Funds Were Investing in BLMIS, Or that BLMIS and the Fairfield Funds Had Strong Forum Connections[4]

The Trustee further alleges that NIP "knew that the Fairfield Funds invested substantially all of their assets with BLMIS in New York" (Compl. ¶ 32), and knew of various other forum connections between BLMIS and the Fairfield Funds.  Compl. ¶¶ 35-39, 48 and 53-54.  It is well established, however, that these allegations are insufficient to establish specific personal jurisdiction over a non-resident defendant such as NIP.  Indeed, attempts to establish personal jurisdiction in this manner are directly inconsistent with controlling Supreme Court authority because they rely on forum contacts of plaintiff (*i.e.*, BLMIS), or of third parties (*i.e.*, the Fairfield Funds), whereas only the forum contacts of the defendant itself (*i.e.*, NIP) are relevant under controlling Supreme Court authority.  *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014).

In *Walden*, the Supreme Court made clear that specific personal jurisdiction must be established by "contacts that the 'defendant *himself*' creates with the forum State," *not* by "contacts between the plaintiff (*or third parties*) and the forum State," and *not* by "the defendant's contacts with persons who reside there."  *Id.*   (citations omitted) (emphasis added).

---

[4] NIP is aware that this Court has considered and rejected substantially similar arguments in a number of related cases.  NIP nonetheless respectfully asserts these arguments here because:  (1) NIP's facts are different from those of many other Fairfield investors, because NIP was not subscribing in Fairfield shares with any expectation that it would make or lose money based on the performance of the Fairfield Funds or BLMIS itself; and (2) NIP must assert these arguments here to preserve them for any appeal.

Based on this controlling legal precedent, the actual or anticipated activities of BLMIS, or the

Fairfield Funds, in New York are not relevant when determining whether *NIP* engaged in

purposeful conduct in New York.  Furthermore, alleging that a defendant such as NIP *knew* of a

third party's "strong forum connections" does not change the analysis.  *Id*. at 289 (holding that,

when court of appeals "looked to petitioner's knowledge of respondents' 'strong forum

connections,'" it "impermissibly allow[ed] a plaintiff's contacts with the defendant and the

forum to drive the jurisdictional analysis" and "improperly attribute[d] a plaintiff's forum

connections to the defendant").  But this is exactly what the Trustee is seeking to do here, by

attempting to assert personal jurisdiction based on NIP's knowledge that the Fairfield Funds and

BLMIS had strong forum contacts, even though NIP itself did not.

        In accord with these fundamental principles, federal and state courts have routinely

refused to find specific jurisdiction over a nonresident defendant based on allegations that the

defendant contracted with a New York plaintiff that performed or was expected to perform under

the contract in New York.[5]  As the New York Court of Appeals has explained, "[t]he mere

---

[5] *See, e.g., Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y. Mar.
31, 2017) ("Plaintiff's contention that the Court has personal jurisdiction because Plaintiff
performed *his* obligations under the Agreements in New York is also unavailing."); *Jonas v.
Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) (allegations that plaintiff "built out
an office in New York, hired personnel, and performed trades and analyses here is also
unavailing" because "his unilateral activity in the forum state would be insufficient to establish
jurisdiction"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474
(S.D.N.Y. 1998) (defendant's "knowledge of, and acquiescence in," New York plaintiff's
performance in New York of services under the parties' contract did not suffice to establish
personal jurisdiction over nonresident corporation); *Met. Air Serv., Inc. v. Penberthy Aircraft
Leasing Co.*, 648 F. Supp. 1153, 1157 (S.D.N.Y. 1986) (fact that New York plaintiff performed
its services under the parties' contract entirely in New York did not render California defendant
subject to personal jurisdiction); *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522
(1st Dep't 2014) ("Plaintiff's actions within New York" in connection with contract with out-of-
state defendant could not "be imputed to [defendant] for jurisdictional purposes"); *J.E.T.
Advertising Assocs., Inc. v. Lawn King, Inc.*, 84 A.D.2d 744, 745 (2d Dep't 1981) (no specific

receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our longarm statute." *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 (1970) (citation omitted). Thus, even if NIP *had* hoped to generate investment returns linked to the results of BLMIS's purported trading activities in New York (which it did not), this would do nothing to establish a *prima facie* case that NIP purposefully availed itself of the benefits of New York law, because all of the relevant U.S.-based commercial and investment activity was undertaken by parties other than NIP itself. Moreover, as the Saunders Declaration makes clear, NIP was not attempting or expecting to make or lose money based on the performance of the Fairfield Funds or BLMIS itself in any event, which makes it all the more clear that the Trustee cannot meet his burden of proof to show relevant jurisdictional contacts *by NIP*.

When weighed against the above authorities, cases like *BLI* and *BNP*, do not support a finding of minimum contacts based on NIP's knowledge of the Fairfield Fund's investment in New York-based BLMIS. *BLI* did not address any of the arguments discussed above and was decided before the Supreme Court's opinion in *Walden*. *BNP* is likewise inconsistent with the governing case law, and is also readily distinguishable, including by virtue of the fact that many of the subsequent transfers alleged in that case "were largely the result of" the activities in New York of BNP Paribas's Fund Derivative Group, which "operated from New York." 594 B.R. at 192. No comparable allegations have been made here.

---

jurisdiction because "[a]ll of the New York activities relating to the contract were performed by plaintiff and cannot be attributed to the defendant").

E.     **The Trustee Cannot Establish Jurisdiction Based on the Use of Correspondent Accounts**

The Trustee also alleges that NIP maintained "a New York bank account in its own name at Bank of America" and received all redemptions in that account.  Separately, the Trustee alleges that NIP made subscription payments to the Fairfield Funds via the Fairfield Funds' U.S.-based correspondent account.  Compl. ¶¶ 45-47.  But even if NIP did use the Fairfield Funds' U.S. correspondent account for the purpose of making *subscription* payments, or received redemption payments in a New York bank account, such contacts would clearly not be sufficient to support jurisdiction.

In the first place, the "mere maintenance" of a U.S. bank account—and even the "knowing receipt of funds" through such an account—are insufficient to establish personal jurisdiction.  *In re Sledziejoinwski,* Case No. 13-22050 (RDD), Case No. 13-22748, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi,* 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983).  Thus it does not matter that NIP may have received some redemption payments in a New York bank account.

Furthermore, although the Trustee separately alleges that NIP wired funds *to* Fairfield Sentry through a correspondent bank account in New York and that such funds eventually ended up in BLMIS's U.S. account (Compl. ¶ 47), these allegations are even more attenuated.  They overlook the critical fact that the payments in question were being made by a London-based defendant (*i.e.*, NIP), to BVI based non-parties (*i.e.*, the Fairfield Funds).  Moreover, allegations of this sort—which are purely mechanical in nature—do nothing to establish any of the requirements for specific jurisdiction in this case.  As noted above, even the actual maintenance and receipt of funds in a U.S. account is generally not adequate to show jurisdiction, and sending

funds through a correspondent account of an overseas non-party is an even more attenuated jurisdictional contact.

It is well established that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *See*, *e.g.*, *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17 Civ. 3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank account did not establish specific jurisdiction). Thus, allegations that NIP made subscription payments under foreign contracts through the Fairfield Funds' U.S. correspondent accounts do not support jurisdiction.

The Trustee's allegation that NIP sent subscription funds through New York also fails to establish specific jurisdiction for the independent reason that his claims do not "arise out of or relate to" sending *subscription* funds through New York in this manner. It is only the redemption transfers that are at issue in this case.

Judge Caproni recently surveyed and coherently summarized the current state of the law in this District regarding the jurisdictional significance (or lack thereof) of correspondent accounts. She held:

> The vast majority of cases in which the issue is whether the use of a correspondent bank account constitutes the transaction of business under Section 302(a)(1) involve a non-domiciliary bank defendant's use of a correspondent account, not an individual's wiring of funds that incidentally pass through a New York-based correspondent account. . . . Plaintiffs have identified no authority, nor is the Court aware of any, standing for the principle that a non-domiciliary individual defendant may be subject to specific jurisdiction in New York under Section 302(a)(1) because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through New York via a correspondent account.

*See, Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (citations and footnote omitted). Other courts have shared the same view. *Trading & Inv. Co. v.*

*Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("courts have only found the banks themselves to be subject to jurisdiction where they have moved money through New York"). Thus, any assertion of personal jurisdiction based on the use of incidental use of correspondent accounts to make subscription payments to the Fairfield Funds would be inconsistent with a clear line of established authority in this District.

### F. The Trustee Cannot Establish Jurisdiction Based on Alleged Unspecified Meetings and Communications

The Trustee also alleges NIP "personnel directed email and telephone communications regarding Nomura's investments with BLMIS through the Fairfield Funds to FGG personnel located in FGG's New York office" and that "Nomura personnel traveled to New York and met with FGG personnel in FGG's New York office regarding Nomura's investments with BLMIS through the Fairfield Funds." Compl. ¶¶ 49-50. But these allegations are entirely conclusory, lacking in even the minimal specificity required for notice pleading, including who was involved in the alleged communication, when the communications occurred, and the content of the alleged communications

Courts regularly hold that the nature and extent of any alleged communications are essential to the personal jurisdiction analysis and that certain types of minimal or incidental contacts do not support personal jurisdiction. *See, e.g.*, *SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170-71 (S.D.N.Y. 2015) (no personal jurisdiction where defendants had only "sporadic or indirect contacts with the United States"), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New York and spent one day there conferring with plaintiff over contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)). Therefore, because the Trustee has offered absolutely no details about the quantity, nature, or timeframe of

the alleged communications (even though the Trustee bears the pleading burden), it would be impossible for this Court to assess the jurisdictional relevance of the hopelessly generic contacts alleged by the Trustee.

It is similarly problematic that the Trustee has failed to allege the medium of the communications, or even the location of the NIP employees who made them. As the court held in *Hau Yin To*, for example, an out-of-state person communicating into New York with a forum resident, in connection with a contract negotiated and executed outside New York, is not purposeful availment. More generally, "'New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.'" *Maranga v. Vira,* 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *accord Int'l Customs Assocs.*, 893 F. Supp. at 1261 ("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction.") (collecting cases); *RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, 19 Civ. 10247, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (same).

Instead, "only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone." *Metals All. Corp. v. Beshay*, No. 97 CV 3401, 1998 WL 811788, at *2 (S.D.N.Y. Nov. 19, 1998) (citation omitted). For example, in *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13 (1970), a California resident participated in a live auction in New York by means of an open telephone line, thus "project[ing] himself into the auction room," "invok[ing] the benefits and

13

protections of [New York's] laws relating to the conduct of auctions," and establishing personal

jurisdiction when the auction house later sued him in New York for failing to pay his winning

bids. *Id.* at 18 (cleaned up). In such cases, the communication is itself the transaction of

business in New York. Thus, in the absence of allegations regarding the frequency of the

communications, the location of the NIP employees who allegedly made the communications in

question, or the content of such communications, the Trustee has failed to meet his pleading

burden with respect to these alleged jurisdictional contacts, and rendered it impossible for this

Court to assess whether the alleged contacts were adequately connected to the at-issue

redemptions.

### G.    This Court Had Already Correctly Held That NIP Did Not Consent to Jurisdiction Over This Action

The Trustee's final allegation and argument in support of personal jurisdiction is that NIP

consented to such jurisdiction by entering into subscription agreements and a non-disclosure

agreement that included New York forum selection and choice of law clauses. Compl. ¶¶ 41-44

and 51.

Substantially identical allegations were considered and rejected by Judge Bernstein's

well-reasoned decision in *Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In

re Fairfield Sentry Ltd.),* Adv. Proc. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y.

Aug. 6, 2018) ("*Fairfield I*"), where the forum selection clause was held to be "irrelevant" to

actions involving redemptions, such as this one.[6] And in prior rulings addressing the same

argument, this Court has also correctly held that a forum selection clause in a contract that did

not govern redemptions cannot give rise to consent to litigation over redemptions in this forum.

---

[6] The Privy Council came to the same conclusion in *Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9.

*See*, *e.g.*, *Multi-Strategy Decision*, at footnote 3.  This Court then further observed that while the

forum selection clauses could be relevant to the assessment of the reasonableness of asserting

jurisdiction based on *other* contacts, the clause did not itself provide an independent basis for

asserting jurisdiction.  *Id.*  This Court was clearly correct in concluding that the forum selection

clauses were not themselves sufficient to establish jurisdiction and should follow that ruling

again here.

In this case, NIP was party to subscription agreements, which included forum selection

clauses, but which have no bearing on suits related to redemptions.  NIP was also party to

Sentry's Articles of Association, which *do* govern redemptions, but which do *not* include a

forum selection clause.  Thus, what the parties to these contracts clearly agreed and intended,

was that lawsuits over *subscriptions* could be litigated in New York under New York law, but

that suits regarding redemptions would be litigated under the laws of the British Virgin Islands,

with no agreement or understanding that they would be litigated in New York.  *See, Fairfield I*,

at *11-12.  Thus, viewed side-by-side, the subscription agreement and the Articles show exactly

the opposite of what the Trustee suggests:  they show that NIP would *not* have reasonably

foreseen litigation over redemptions in New York.

Finally, the Trustee's allegations concerning choice of law and forum selection clauses

contained in an August 2007 non-disclosure agreement fail for all of the same reasons.  Compl. ¶

51.  There is no allegation that the non-disclosure agreement had anything to do with the

redemptions at issue in this action.

### H.    The Court's Assertion of Jurisdiction Over NIP Would Not be Fair or Reasonable

Even if the Trustee had alleged or established sufficient jurisdictional contacts (and he has

not), the Court's exercise of jurisdiction must also be reasonable under the circumstances for it to

be consistent with due process.   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980).

If this case proceeds to discovery, and beyond, the burdens on London-based NIP will be substantial.  While mechanisms exist to facilitate access to overseas witnesses, accessing documents and testimony from U.K. witnesses will be unnecessarily costly and cumbersome. Moreover, compliance with the EU General Data Protection Regulation will impose substantial logistical challenges in defending this case.  None of this substantial cost is merited by *de minimis* jurisdictional contacts such as the incidental use of correspondent banking accounts to make subscription payments, or unspecified communications allegedly made into the United States.

As the Second Circuit has explained, "[t]he reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman*, 835 F. 3d at 331.  The exercise of personal jurisdiction over NIP fails to meet this basic test and would be unreasonable in this case.  The Trustee asserts that NIP purposefully availed itself of the privileges and benefits of doing business in New York, but at the same time has consistently taken the position that NIP cannot assert a customer claim again BLMIS because NIP's real legal and commercial relationship was with the Fairfield Funds, not BLMIS.  As a result, while investors who *in fact* availed themselves of U.S. law (*i.e.*, SIPA) have customer claims that will see them keep or have returned at least 70 percent of any principal investment that the Trustee successfully claws back, truly foreign investors such as NIP will not participate in the ratable distribution scheme established under SIPA because they had no direct relationship with BLMIS.  And that is precisely because they did *not* avail themselves of the protections of

16

U.S. law, under SIPA.  The Trustee cannot have it both ways—having consistently pointed out

that defendants like NIP have no customer claims against the estate, because they did not in truth

invest in BLMIS, the Trustee should not be heard to argue at the same time that investors in the

Fairfield Funds were basically investing in Madoff and that it is therefore reasonable to sue them

here.  It would be fundamentally unfair and unreasonable to exercise personal jurisdiction over

NIP.

### CONCLUSION

For the foregoing reasons NIP respectfully requests that the Trustee's Complaint should

be dismissed with prejudice.

Dated: August 26, 2022
       New York, New York

SHEARMAN & STERLING LLP

By: */s/ Jeffrey Resetarits*
    Jeffrey Resetarits
    Randall Martin
    599 Lexington Avenue
    New York, NY 10022-6069
    Telephone: (212) 848-4000
    Facsimile: (646) 848-7174

*Attorneys for Nomura International plc*

17