**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01676 (CGM) |
| v. | |
| CREDIT SUISSE AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**Contents**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................3

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................3

    II.    DEFENDANT AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS...........4

ARGUMENT ...........................................................................................................5

    I.     THE TRUSTEE'S FAC SUFFICIENTLY PLEADS THE AVOIDABILITY
          OF THE FAIRFIELD FUND INITIAL TRANSFERS ...........................................5

    II.    THE FAC PLAUSIBLY PLEADS THAT DEFENDANT RECEIVED
          BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)...........................9

         A.     Defendant Misstates the Trustee's Pleading Burden .................................11

         B.     Defendant's Remaining Arguments Regarding Implausibility Fail on
             a Motion to Dismiss ...................................................................................12

    III.   THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE
          CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE..............14

    IV.   SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT.........18

         A.     The Fairfield Funds Had Actual Knowledge of Madoff's Fraud ..............18

         B.     Section 546(e) Does Not Apply Independently to Recovery Actions .......19

CONCLUSION........................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
        599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................... 10, 11

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) .......................... 6

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
        393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................................ 12

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
        801 F. Supp. 2d 211 (S.D.N.Y. 2011) ..................................................................................... 8

*Davis v. Bifani*, No. 07-cv-00122-MEH-BNB,
        2007 WL 1216518 (D. Colo. Apr. 24, 2007) .......................................................................... 7

*DeMasi v. Benefico*, 567 F. Supp. 2d 449 (S.D.N.Y. 2008) ....................................................... 9

*Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) ................................................. 9

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
        Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .............. 14

*In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ........................................... 16

*In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................ 16

*In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y. 2011) ....................................................... 12

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
        917 F.3d 85 (2d Cir. 2019) ................................................................................................... 20

*In re SunEdison, Inc.*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) .................................................... 22

*In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) ............. 6

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022) .................... 20, 23

*Kelley v. Westford Special Situations Master Fund, L.P.*,
        No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151 (D. Minn. June 10, 2020) ................. 13, 14

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ............................................................... 15

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
843 F. Supp. 2d 191 (D. Mass. 2012) ...................................................................... 7

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC),
2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ............................................................ 8

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM),
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ............................................................ 7

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ................................................................................... 14

*Picard v. Avellino (In re BLMIS)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................... 16

*Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM),
2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ................................... 2, 6, 10

*Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM),
2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ...................................... passim

*Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM),
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ..................................... passim

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ..................................... passim

*Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM),
2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ...................................... passim

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... passim

*Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM),
2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ..................................... passim

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),
2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ......................................... 9, 13

*Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d. Cir. 2021) ...................................... 4, 8

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) ................ 14

*Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM),
2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ..................................... passim

*Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM),
   2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)............................................................. 22

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM),
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .................................................. passim

*Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM),
   2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ................................................. passim

*Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM),
   2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022)................................................. passim

*Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451 (S.D.N.Y. 2019) ................................................. 7

*Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM),
   2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................................... 10

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM),
   2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ............................................... passim

*Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) .............................. 16, 17

*Picard v. Merkin (In re BLMIS)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ......................... 9, 11, 14

*Picard v. Merkin (In re BLMIS)*, 581 B.R. 370 (Bankr. S.D.N.Y. 2017) .................................... 14

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) .......................... passim

*Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM),
   2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ................................................. passim

*Picard v. Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM),
   2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ............................................... passim

*Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................. 11, 12

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM),
   2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ............................................... passim

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)............................................................. 9

*Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM),
   2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ......................................................... 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) .................... 15, 16, 17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    501 B.R. 26 (S.D.N.Y. 2013) .................................................................. 6, 8, 20, 23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) .................................................................. 19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... passim

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320 (S.D.N.Y. 2007) .............................. 7

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.),*
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) .................................................................. 11

*United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................... 7

*United Teamster Fund v. MagnaCare Admin. Servs., LLC,*
    39 F. Supp. 3d 461 (S.D.N.Y. 2014) .................................................................. 15

## Statutes

15 U.S.C. §§ 78aaa–*lll* .................................................................................................... 1

11 U.S.C. § 544 .................................................................................................... 20

11 U.S.C. § 545 .................................................................................................... 20

11 U.S.C. § 546(e) .................................................................................................... passim

11 U.S.C. § 547 .................................................................................................... 20

11 U.S.C. § 548(a) .................................................................................................... 8

11 U.S.C. § 548(a)(1)(A) .................................................................................................... 18, 20

11 U.S.C. § 548(a)(1)(B) .................................................................................................... 20

11 U.S.C. § 548(b) .................................................................................................... 20

11 U.S.C. § 550 .................................................................................................... 21, 22

11 U.S.C. § 550(a) .................................................................................................... passim

11 U.S.C. § 550(a)(2) .................................................................................................... 12

11 U.S.C. § 550(b) ................................................................................................................ 2, 3, 14

11 U.S.C. § 550(d) .................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................... 1, 2

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 5

Fed. R. Civ. P. 10 ........................................................................................................................ 1

Fed. R. Civ. P. 10(c) ............................................................................................................... 2, 6, 7

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss the Trustee's First Amended Complaint (ECF No. 12, the "FAC")[1] pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(6) of defendant Credit Suisse AG ("Defendant"), as successor-in-interest to Clariden Leu AG (*f/k/a* Clariden Bank AG) ("Clariden") and Bank Leu AG ("Bank Leu").[2]

## **PRELIMINARY STATEMENT**

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $47 million in subsequent transfers that Defendant received from Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," and collectively, the "Fairfield Funds").[3]   For years, Defendant invested in BLMIS through the Fairfield Funds and other BLMIS feeder funds—investment funds created for the express purpose of feeding their investors' money to BLMIS in New York.   Defendant now moves to dismiss the Trustee's FAC, arguing that (i) the Trustee violates Rules 8 and 10 by incorporating by reference the Trustee's initial transfer complaint against the Fairfield Funds[4] to plead avoidability of the initial transfers in the FAC; (ii) the Trustee insufficiently alleges that Defendant

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Credit Suisse AG, as successor in interest to Clariden Leu AG and Bank Leu AG*, Adv. Pro. No. 12-01676 (CGM) (Bankr. S.D.N.Y.).

[2] Allegations made herein and throughout as to the activities of Defendant during the relevant period are meant to also refer to those of its predecessors.

[3] In light of the Trustee's settlement with Kingate (as defined in the FAC) and its related entities, the Trustee dismissed all claims seeking recovery of Kingate-related subsequent transfers, pursuant to a Stipulation and Order entered on April 14, 2022 (ECF No. 84, the "Stipulation"), and accordingly, the total transfers at issue are now $2 million less than the approximate $49 million sought in the Complaint.

[4] *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.").

received transfers of customer property; (iii) the FAC establishes Defendant's good faith defense

under Section 550(b); and (iv) the safe harbor under Section 546(e) bars recovery.[5]

As acknowledged by Defendant in its moving papers, these arguments have been rejected

by this Court in numerous other subsequent transfer cases.[6]   For the reasons set forth below,

Defendant's arguments fail.[7]

First, consistent with Rule 8, the Trustee's FAC provides a "short and plain statement"

showing that the Trustee is entitled to relief, and its incorporation by reference of the Fairfield

Amended Complaint is appropriate under Rules 8 and 10(c).[8]   In any event, this Court may take

judicial notice of the operative Second Amended Complaint and its opinion in *Picard v. Fairfield*

*Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr.

---

[5] Defendant raises nearly identical arguments in a closely related adversary proceeding, where it is one of multiple defendants in the larger Credit Suisse group, for subsequent transfers it itself received (as opposed to transfers received by its predecessors).  *See* Mem. of Law, *Picard v. Credit Suisse AG et al.,* Adv. Pro. No. 11-02925 (CGM) (Bankr. S.D.N.Y. filed June 15, 2022), ECF No. 106.

[6] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*"); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ("*Union Sec.*").

[7] Defendant's Memorandum of Law in Support of its Motion to Dismiss is referred to herein as the "Motion."

[8] After the Trustee filed his FAC against Defendant, the Trustee filed a Second Amended Complaint ("Second Amended Complaint") against the Fairfield Greenwich Group defendants (collectively, "Fairfield").  *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

S.D.N.Y. Aug. 6, 2021), holding that the Trustee had plausibly alleged the avoidability of the initial transfers from BLMIS.

Second, the Trustee has plausibly alleged that Defendant received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendant. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendant. Nothing more is required at this stage of the litigation.

Third, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate on a motion to dismiss. As this Court found in *Banque Syz*, it is Defendant's burden to plead this affirmative defense in an answer and prove it with evidence; it cannot be established from the face of a complaint. 2022 WL2135019, at *10.

Finally, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of fraud, and therefore under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendant. Defendant's argument – that the Trustee must plead Defendant's actual knowledge as opposed to that of Sentry – misinterprets and directly conflicts with precedent in this case.

For these reasons, the Trustee respectfully requests that the Court deny Defendant's Motion.

## STATEMENT OF FACTS

## I. THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. FAC ¶¶ 39, 48. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 39.

3

For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 40-42. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 43-45. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 27.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' monies into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021). Defendant's predecessors Clariden and Bank Leu invested in one or more of the Fairfield Funds, which they knew were BLMIS feeder funds. FAC ¶¶ 8-9, 18-19. Bank Leu knowingly invested in BLMIS through other feeder funds as well, including Kingate Global. FAC ¶¶ 9, 20.

## II.    DEFENDANT AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

The Fairfield Funds were managed and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York. *See* FAC ¶¶ 4-5; *Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS. FAC ¶ 4; Fairfield Am. Compl. ¶¶ 52, 318. Sigma and Lambda acted as foreign currency feeder funds, respectively facilitating Euro and Swiss Franc investments with BLMIS and investing all or substantially all their assets with Sentry. FAC ¶ 5; Fairfield Am. Compl. ¶¶ 52, 57.

During the relevant period, Clariden and Bank Leu were wholly-owned subsidiaries of Credit Suisse, a global financial organization with thousands of employees. FAC ¶¶ 8-9, 21.

4

Clariden and Bank Leu invested in and received redemptions from the Fairfield Funds at least as early as 2003, if not earlier.  FAC ¶¶ 58-60, Exs. E, G, I.  As was required for investors in the Fairfield Funds, Clariden and Bank Leu entered into one or more subscription agreements with each of the Fairfield Funds in which they respectively invested.  *Id*. ¶¶ 8-9, 18-19.  In these agreements, Clariden and Bank Leu each acknowledged their sophistication as a "professional investor."  *Id*. ¶ 19.

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA liquidation proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property.  *Id*. ¶ 52.  In 2011, the Trustee settled with the Fairfield Funds.  *Id*. ¶ 53, Ex. B.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion, but repaid only $70 million to the BLMIS estate.  *Id*.  Sigma and Lambda separately consented to judgments in the amounts of $752.3 million and $52.9 million, respectively.  *Id*.  As feeder funds that invested in BLMIS indirectly through Sentry, these amounts represent a portion of Sentry's $3.054 billion in withdrawals from BLMIS.  *See Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), ECF Nos. 108 (Lambda Consent Judgment) and 110 (Sigma Consent Judgment).  The Trustee then commenced a number of adversary proceedings to recover the approximately $3 billion in missing customer property, including the above-captioned matter.

## ARGUMENT

## I.    THE TRUSTEE'S FAC SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS

Defendant argues that the Trustee's incorporation of the then-operative complaint against the Fairfield Funds violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief.  Motion at 8-10.  However, there is no doubt that the

Trustee may incorporate the Fairfield Amended Complaint under Rule 10(c) to demonstrate the

avoidability of the initial transfers from BLMIS.  As this Court recently held in *Multi-Strategy*,

among others, "pleadings filed in the 'same action' may be properly adopted by reference in other

pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this

adversary proceeding for purposes of Rule 10(c)."  *Multi-Strategy*, 641 B.R. at 91 (citing *Am.*

*Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing

incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within

the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were]

filed in a single bankruptcy case.")); *see also In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL

1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy

case do not constitute different cases.").

Defendant's argument conflicts with the prior opinion in *Sec. Inv. Prot. Corp. v. Bernard*

*L. Madoff Inv. Sec. LLC,* 501 B.R. 26 (S.D.N.Y. 2013) ("*In re Madoff Sec.*"), in which the District

Court has already found sufficient the Trustee's incorporation by reference of the then-operative

Fairfield complaint:

> [T]he Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53.
> Thus, the avoidability of the transfers from Madoff Securities to
> Kingate and Fairfield is sufficiently pleaded for purposes of section
> 550(a).

*Id*. at 36.[9]  Defendant was a participant in the omnibus withdrawal of the reference related to this

decision.  *See* Mot. to Withdraw the Reference, ECF No. 5.  This decision—allowing for

---

[9] *See also Multi-Strategy*, 641 B.R. at 91; *Banque Syz*, 2022 WL 2135019, at *7; *Carige*, 2022 WL 2387522, at *6;
*Lombard Odier*, 2022 WL 2387523, at *7; *Lloyds*, 2022 WL 2390551, at *3; *Bordier*, 2022 WL 2390556, at *3;
*Cantonale*, 2022 WL 2761044, at *3; *Barclays*, 2022 WL 2799924, at *5; *First Gulf*, 2022 WL 3354955, at *7;

incorporation by reference—is therefore law of the case. *See Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 464 (S.D.N.Y. 2019).

Moreover, even if the Court were to find that the adversary proceedings are separate actions for purposes of Rule 10(c)*,* this Court still can permit incorporation by reference of the other complaint, as the Southern District of New York and other federal courts have done in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action, and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").

Cases cited by Defendant are inapposite because, unlike in the instant matter, plaintiffs there were incorporating pleadings by reference in an attempt to add new claims against their defendants.[10]   In those cases, the court held that incorporation would have led to confusion and a lack of notice as to the additional claims asserted.  *Id.*  By contrast, the Trustee here is not seeking to add new claims, and Defendant would be hard-pressed to argue it lacked notice that the Trustee was seeking to avoid the initial transfers to Sentry.   Other cases cited by Defendant are also

---

*Parson*, 2022 WL 3094092, at *7; *Meritz*, 2022 WL 3273044, at *7; *Delta*, 2022 WL 3365256, at *3; *PIFSS*, 2022 WL 3458962, at *9; *Union Sec.*, 2022 WL 3572509, at *7 (all following "the district court's instruction").

[10] *See United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007) (finding improper incorporation by reference of pleadings from prior actions to plead entirely new claims not otherwise alleged in complaint, which did not expressly incorporate the pleadings); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *3-4 (E.D.N.Y. Mar. 26, 2010) (rejecting plaintiff's attempt to state new claim by incorporating by reference a reply brief he filed in the case which included "no specific factual allegations" supporting the claim); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (holding that plaintiff could not incorporate by reference additional claims in parallel state-court action that were not alleged in the federal court complaint).

distinguishable as plaintiffs there sought to adopt pleadings from separate actions rather than, as here, different adversary proceedings within the same main case.[11]

Defendant argues that the Trustee's incorporation of the Fairfield Amended Complaint is "unwieldy," and that it would have to "guess" as to how to respond. Motion at 9-10. Defendant, however, ignores the purpose of the incorporation in the FAC: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from Defendant under Section 550(a). *See Citibank,* 12 F.4th at 196-97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (citation removed) (emphasis in original). The FAC only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. FAC ¶ 52. Defendant can admit the allegations of the avoidability of the initial transfers, deny them, or respond that it does not have sufficient information to admit or deny. This places no undue burden on Defendant in responding to the Trustee's claims against it. Doing as Defendant appears to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the FAC. Such duplication is unnecessary in pleading recovery under Section 550 and inconsistent with the purpose of Rule 8. *See In re Madoff Sec.,* 501 B.R. at 36.

In any case, regardless of incorporation, this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its prior decision holding that the complaint

---

[11] *See Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) (denying incorporation where proceedings were "totally separate, unrelated action[s]"); *see also Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *2, *9 (S.D.N.Y. Apr. 28, 2014) (denying attempt to incorporate any current or future defenses asserted by defendants in other cases brought by plaintiff in the Southern District of New York).

sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). That the noticed complaint was filed after the FAC is of no consequence. *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000) (noticing later filed complaint in related proceeding). Should the Court accept Defendant's argument and not take judicial notice of the avoidability of the initial transfers, the Trustee respectfully requests the opportunity to replead.

## II. THE FAC PLAUSIBLY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The FAC plausibly alleges that Defendant received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). As this Court recently held, the Trustee is not required to perform a tracing analysis at the pleading stage, or to present a "dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy*, 641 B.R. at 90 (quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP*")); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v.*

9

*Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195).

The FAC meets these requirements. The FAC alleges that Defendant, as successor to Clariden and Bank Leu, received transfers, identified by date and amount in accompanying exhibits, from Sentry, and that Sentry invested all or substantially all of its funds with BLMIS. FAC ¶¶ 4, 51-52, 54-58, Exs. C-E. The FAC likewise alleges that Defendant, as successor to Clariden and Bank Leu, received transfers, identified by date and amount in accompanying exhibits, from Sigma and/or Lambda, and that Sigma and Lambda invested all of their funds with Sentry. *Id*. ¶¶ 5, 51-52, 59-60, Exs. F-I. Thus, the FAC plausibly alleges that Defendant received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendant and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover"). As this Court recently held in a number of decisions, these "exhibit[s] provide[] [Defendants] with the 'who, when, and how much' of each transfer." *See e.g. Multi-Strategy*, 641 B.R. at 95; *Banque Syz,* 2022 WL 2135019, at *12.[12]

---

[12] *See also Carige*, 2022 WL 2387522, at *7; *Lombard Odier*, 2022 WL 2387523, at *10; *Lloyds*, 2022 WL 2390551, at *6; *Bordier*, 2022 WL 2390556, at *6; *Cantonale*, 2022 WL 2761044, at *6; *Barclays*, 2022 WL 2799924, at *4; *First Gulf*, 2022 WL 3354955, at *11; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Delta*,

## A.    Defendant Misstates the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendant argues for a new one, asserting that the Trustee must tie each subsequent transfer to a specific initial transfer from BLMIS.  Motion at 2, 11-12.  However, the Court already rejected this argument in *Merkin II*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150; *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").  Likewise, the Court already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property.  *Merkin II*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Defendant's reliance on *Picard v. Shapiro* is misplaced because *Shapiro* did not change the pleading burden for recovery under Section 550(a).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 104, 109, 119 (Bankr. S.D.N.Y. 2015).  However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers.  *Id*. at 119.  There were no allegations regarding the

---

2022 WL 3365256, at *4; *PIFSS*, 2022 WL 3458962, at *10; *Union Sec.*, 2022 WL 3572509, at *10 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent

transfers, and consequently this Court granted defendants' motion to dismiss the subsequent

transfer claim.  *Id*.  Here, where the Trustee has alleged the vital statistics of each transfer

Defendant received and set out the investment relationship between Defendant and the Fairfield

Funds, *Shapiro* supports denying the motion to dismiss.

### B.    Defendant's Remaining Arguments Regarding Implausibility Fail on a Motion to Dismiss

Defendant argues that the Trustee's claims are a "mathematical impossibility" because the

Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew

from BLMIS.  Motion at 12-13 (citing *In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y. 2011)).

Defendant's argument misses the point.  As this Court has stated, "[t]here is no dispute that the

Trustee is limited to 'a single satisfaction' under § 550(a)."  *Multi-Strategy,* 641 B.R. at 95 (citing

§ 550(d)).  "He may nevertheless pursue any and all subsequent transferees in order to achieve that

satisfaction."  *Id*. at 95-96 (citing § 550(a)(2)).  And, under § 550(a), "a trustee may recover [an

avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation

among all [the] subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393

B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full amount of the

approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may

simultaneously seek recovery from Defendant in this action and from defendants in other actions

in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers.

*See Fairfield Inv. Fund*, 2021 WL 3477479, at *12.  "Calculation of whether the Trustee is fully

satisfied is a factual finding to be made by this Court at a later stage of litigation."  *Multi-Strategy*,

641 B.R. at 96.

Defendant's other customer property arguments are fact-based arguments inappropriate on a motion to dismiss. Defendant claims that, because the Fairfield liquidators have stated that Sentry, from time to time, paid redemptions with other subscription monies, "[t]he only reasonable inference to draw" is that the transfers it received from the Fairfield Funds were comprised of subscription payments from other investors and "*not* funds that originated with BLMIS." Motion at 13 (emphasis in original). This argument is meritless and contradicts the Trustee's allegations that BLMIS transferred over $3 billion to Sentry, which Defendant itself acknowledges. *Id.* at 12.

Moreover, even if Sentry commingled customer property with other funds, this commingling does not defeat the Trustee's ability to trace the transfer of customer property from BLMIS. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3) (citation omitted). The Trustee is also not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment). To the contrary, courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. No. 10-03493

(SMB), 2014 WL 47774, at *14-16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed

to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).

Furthermore, without discovery, Defendant's arguments are premature. "[I]n a case such

as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated

issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,'

and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454

B.R. 317, 329 (Bankr. S.D.N.Y. 2011).[13] This is one reason why this Court in *Merkin II* denied

defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved

through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery,

expert opinion is necessary to determine what portion of the subsequent transfer stemmed from

the initial transfer where the subsequent transfers originated from commingled accounts. *Picard*

*v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *see also Kelley*, 2020 WL

3077151, at *5 (denying summary judgment because trustee introduced expert report and

associated documents from which a jury could infer that defendants received subsequent transfers

of customer property).

## III.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendant argues that its purported good faith is apparent on the face of the FAC in the

instant matter as well as the Fairfield Amended Complaint and therefore this adversary proceeding

---

[13] Defendant asserts that the Trustee has had access to the Fairfield books and records "for more than a decade." Motion at 5-6. This is untrue. The Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is ongoing. *See, e.g.*, Stipulated Case Am. Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting November 22, 2023 deadline for fact discovery and August 23, 2024 deadline for expert discovery). For this reason *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) and *Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) do not support Defendant's position.

should be dismissed as a matter of law.  Motion at 13-16.  This Court has already rejected the

"good faith" affirmative defense as inappropriate and untimely on a motion to dismiss, and should

similarly reject Defendant's efforts here to recycle the same arguments.  *Banque Syz*, 2022 WL

2135019, at *10-11 (holding that it is a defendant's burden to plead value, good faith, and lack of

knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint.");

*First Gulf*, 2022 WL 3354955, at *10 (same); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff

Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *1 (S.D.N.Y.

May 2, 2022) ("*ABN Ireland*"); *Delta,* 2022 WL 3365256, at *6.  Like Defendant here, the

defendants in *Banque Syz*, *First Gulf*, *Delta,* and *ABN Ireland* argued that their good faith defense

was established on the face of the complaint.  *Banque Syz*, 2022 WL 2135019, at *10; *First Gulf*,

2022 WL 3354955, at *10; *Delta*, 2022 WL 3365256, at *6; *ABN Ireland*, 2022 WL 1304589, at

*3.  The Court in those cases concluded that the affirmative defense could not be resolved at the

pleading stage (*id.*), and the same result is warranted here.

Affirmative defenses are fact-driven, and they require factual analyses and a presentation

of evidence.  *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such

a fact-based determination can only be made based on the entirety of the factual record after

discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees

and factual inferences Appellees improperly seek to have drawn in their favor."); *see also United

Teamster Fund v. MagnaCare Admin. Serv*s., *LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014)

("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus

[are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d

295, 308 (2d Cir. 2013)).  That sort of factual analysis is not appropriate at this stage, particularly

with respect to a good faith defense.  *See, e.g., Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 257

15

(Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in good faith . . . is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

To get around the fact that the good faith pleading burden is no longer on the Trustee, Defendant makes an unsupportable argument that its good faith has been established as a matter of law on the face of the FAC. Motion at 15-16. But, as recognized in *Merkin I*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. To prevail under this limited exception, Defendant must show there is an "insuperable bar to securing relief" set forth on the face of the FAC. *Dreier*, 452 B.R. at 426. Defendant's argument that a diligent inquiry into BLMIS would have been futile is pure conjecture that is easily disputed and fails this standard.

Defendant cannot rely on an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy, and factual inferences it wishes this Court to draw from same in its favor. *ABN Ireland*, 2022 WL 1304589, at *3. Even were it appropriate to consider such arguments at the pleading stage, the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[14]

---

[14] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise").

Defendant's suggestion that it lacked sufficient resources to detect Madoff's fraud—despite being

a part of the Credit Suisse global enterprise with thousands of employees, and hundreds of millions

of dollars invested with the Fairfield Funds—is dubious on its face. Defendant is a sophisticated

party capable of performing its own investigations and diligence on its BLMIS investments—facts

which can only be developed in discovery.

Defendant makes similar arguments with regard to value and knowledge of voidability.

Motion at 13-15. However, these are also fact-driven affirmative defenses to be addressed later in

the litigation. *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the

Defendants gave value is a question of fact to be resolved either at the summary judgment stage

or at trial"). As was true in *Banque Syz* and *First Gulf*, the FAC does not mention Defendant

exchanging shares for consideration, and the value defense is therefore not pleaded on the face of

the FAC. *Banque Syz*, 2022 WL 2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10.

Moreover, to the extent Defendant argues value exists because the payments received were given

in exchange for the redemption of shares from the Fairfield Funds, this too cannot be decided on

a motion to dismiss. *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at

*10; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to whether

subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield

Funds . . . cannot be made as a matter of law or fact at this stage.")

Even if this Court were to consider Defendant's fact-intensive affirmative defense, the

Trustee must be given the opportunity to pursue discovery of those facts. *ABN Ireland*, 2022 WL

1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual

record after discovery); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in

good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS

17

funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."). *See also Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at *11.

## IV.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

In *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).  Defendant argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled the Fairfield Funds' actual knowledge.  Motion at 17-18.  As discussed below, Defendant's argument is based on a misreading of Section 546(e) and *Cohmad*, and this Court has now rejected this argument in thirteen other adversary proceedings commenced by the Trustee.[15]

### A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Defendant sets forth at length the requirements of Section 546(e) and how they are presumably met in this case with respect to the initial transfers from BLMIS to Sentry.  None of this matters.[16]  This Court previously held that the Trustee sufficiently pled that Sentry had actual

---

[15] *Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at *8-10; *Lombard Odier*, 2022 WL 2387523, at *8-10; *Lloyds*, 2022 WL 2390551, at *4-6; *Bordier*, 2022 WL 2390556, at *4-6; *Cantonale*, 2022 WL 2761044, at *4-6; *Barclays*, 2022 WL 2799924, at *6-7; *First Gulf*, 2022 WL 3354955, at *8-10; *Parson*, 2022 WL 3094092, at *8-10; *Meritz*, 2022 WL 3273044, at *8-10; *Delta*, 2022 WL 3365256, at *5-6; *PIFSS*, 2022 WL 3458962, at *10-13; *Union Sec.*, 2022 WL 3572509, at *8-10.

[16] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendant activates the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements.  The Trustee also does not concede that the initial transfers were made "for the benefit of" Defendant.  The

knowledge of Madoff's fraud and that such initial transfers are avoidable. *Multi-Strategy,* 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4). As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Defendant regardless of whether the Fairfield Funds or Defendant qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

The actual knowledge exception established in *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e), and as Defendant concedes, that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Motion at 22 (citing *Cohmad*). Defendant participated in the District Court proceedings and the District Court's review of this issue.[17] As such, Defendant is bound by *Cohmad* and that decision is law of the case.[18]

**B.    Section 546(e) Does Not Apply Independently to Recovery Actions**

Defendant is also wrong that the Trustee must allege that a subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Defendant argues that under *Cohmad*, the Defendant's agreements with Sentry are the relevant "securities contract[s]" for purposes of Section 546(e) (in lieu of BLMIS's account agreement), and as such, in a Section 550 recovery action against them, the court must look solely to Defendant's (i.e. the

---

Trustee plainly alleges in the FAC that Defendant is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (citing cases).

[17] *See* Motion to Withdraw the Reference, ECF Nos. 5-7 (Bankr. S.D.N.Y. filed June 15, 2012) (raising Section 546(e) as a grounds for withdrawal).

[18] *See Omnibus Good Faith Decision*, 531 B.R. at 466 ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

subsequent transferees') actual knowledge to determine whether the initial transfer is avoidable. Motion at 19-23. But *Cohmad* does not stand for this proposition, and Defendant's argument merely repackages the already rejected arguments that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550, coupled with generalized criticism of this Court's recent decisions. As this Court recently held, based on the same arguments as Defendant makes here, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *Multi-Strategy,* 641 B.R. at 94-95.[19]

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).[20]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30. It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

---

[19] *See also Banque Syz*, 2022 WL 2135019, at *9-10; *Lombard Odier*, 2022 WL 2387523, at *9-10; *Lloyds*, 2022 WL 2390551, at *5-6; *Bordier*, 2022 WL 2390556, at *5-6; *Cantonale*, 2022 WL 2761044, at *5-6; *Barclays*, 2022 WL 2799924, at *7; *First Gulf*, 2022 WL 3354955, at *9-10; *Parson*, 2022 WL 3094092, at *9-10; *Meritz*, 2022 WL 3273044, at *9-10; *PIFSS*, 2022 WL 3458962, at *12-13; *Union Sec.*, 2022 WL 3572509, at *9-10.

[20] *See also Multi-Strategy*, 641 B.R. at 94 (citing *BNP*, 594 B.R. at 197); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n. 5 (8th Cir. 2022) ("*SHMA*") (citing same).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for

Section 550 recovery actions against subsequent transferees. The District Court withdrew the

reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section

550.[21] However, in its decision, the court specifically limited the safe harbor to avoidance claims

based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9

(applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees

can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and

subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to

the *initial* transfer from Madoff Securities.") (emphasis added). And though the court

hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial

transferee feeder fund, and related agreements and transactions, might under certain circumstances

constitute relevant "securities contracts," and that certain subsequent transferee defendants might

qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

the safe harbor is still on the *initial* transfers. *See id.* at *9.[22] Contrary to Defendant's argument,

the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such

circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not

recovery, and most notably that a subsequent transferee cannot assert the protections of Section

---

[21] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[22] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument being made here that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case on this issue, and Defendant is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendant nevertheless continues to argue that to the extent a party relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, the Court must look only to the actual knowledge of the subsequent transferee. Motion at 21-23. But as stated above, the District Court did not conclude this, and *BNP* confirmed this was not the case. This Court itself rejected the same arguments in numerous other proceedings, holding in each that "the safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'"[23]

---

[23] *See, e.g., Multi-Strategy*, 641 B.R. at 94 (quoting *BNP* at 197); *Banque Syz*, 2022 WL 2135019, at *9 (same); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Bordier*, 2022 WL

Defendant's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Adopting Defendant's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would also result in a situation whereby a determination as to the avoidability of an initial transfer would depend upon and vary based on whether there were subsequent transfers, and who received them.

Defendant's interpretation of *Cohmad* would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on 546(e). *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 31 F.4th at 1064 n.5 (cleaned up; emphasis added).

Defendant also misconstrues *Cohmad*'s holding—which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor. Motion at 22-23. That holding does not require

2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf*, 2022 WL 3354955, at *9 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *PIFSS*, 2022 WL 3458962, at *12 (same); *Union Sec.*, 2022 WL 3572509, at *9 (same).

the Trustee to plead a subsequent transferee's actual knowledge in order to recover a subsequent transfer. On the contrary, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Finally, this Court's decision in *Fairfield Inv. Fund* does not demand a different result. Motion at 22-23. Rather, in that case, as this Court has held, the Court "considered [a subsequent transferee's] actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf, nor could it have, as § 546 is inapplicable to subsequent transferees." *Multi-Strategy,* 641 B.R. at 94-95.[24]

## **CONCLUSION**

The Trustee respectfully requests that the Court deny Defendant's Motion.

---

[24] *See also Banque Syz,* 2022 WL 2135019, at *10; *Lombard Odier*, 2022 WL 2387523, at *10; *Lloyds*, 2022 WL 2390551, at *6; *Bordier*, 2022 WL 2390556, at *6; *Cantonale*, 2022 WL 2761044, at *6; *First Gulf*, 2022 WL 3354955, at *10; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Union Sec.*, 2022 WL 3572509, at *10.

Dated:  August 29, 2022
      New York, New York

/s/  Howard L. Simon
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Robert J. Luddy
Email: rluddy@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Alex Jonatowski
Email: ajonatowski@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*