AKERMAN LLP
David W. Parham (admitted pro hac vice)
Bryce Benson (admitted pro hac vice)
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:(214) 720-4300
Facsimile:(214) 981-9339
david.parham@akerman.com
bryce.benson@akerman.com
*Counsel for Cathay Life Insurance Co., Ltd*

**Hearing Date and Time: August 10, 2022 at 10:00 a.m.**
**Opposition Date and Time: June 24, 2022 at 4:00 p.m.**
**Reply Date and Time September 1, 2022 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789-CGM** |
| Plaintiff-Applicant, | |
| -v- | **SIPA Liquidation** |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | **(Substantively Consolidated)** |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | **Adv. Pro. No. 11-02568-CGM** |
| Plaintiff, | |
| -v- | |
| CATHAY LIFE INSURANCE CO. LTD., | |
| Defendant. | |

**CATHAY LIFE INSURANCE CO. LTD.'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT ...................................................................................................................... 1

I.    THE TRUSTEE FAILED TO ESTABLISH PERSONAL JURISDICTION
OVER CATHAY BECAUSE CATHAY DOES NOT HAVE SUFFICIENT
CONTACTS WITH NEW YORK AND CATHAY'S MINIMUM CONTACTS
WITH NEW YORK DO NOT RELATE TO THE REDEMPTION PAYMENTS
AT ISSUE ................................................................................................................ 1

    a.    "Knowledge" is Not Sufficient to Impute Sentry's or BLMIS's Contacts to
Cathay nor is it a Contact for Jurisdictional Purposes ........................................... 2

    b.    Trustee's Reliance upon *BLI*, *Multi-Strategy*, and *Banque SYZ* is
Misplaced Because they Involved Different Fact Patterns and Contacts .............. 3

    c.    A Third Party's Designation of a U.S. Bank Account to Effectuate two
Foreign Banking Transactions for Foreign Parties Is Not Enough to
Establish Jurisdiction Over Cathay ........................................................................ 4

        i.    The Sentry Subscription Agreement Is Not a Relevant
Jurisdictional Contact, Especially Under *Fairfield* .................................... 8

    d.    E-Mail Correspondence Directed FGG U.K. and a Single Meeting to
Discuss an Entirely Different Fund Are Not Sufficient to Establish
Jurisdiction ......................................................................................................... 10

    e.    The Assertion of Jurisdiction Over Cathay Would Not be Fair or
Reasonable .......................................................................................................... 12

    f.    The Trustee Does Not Need Additional Discovery and Should be Denied
Leave to Amend .................................................................................................. 13

II.    SECTION 546(e) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN
INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE
HARBOR .............................................................................................................. 14

    a.    *Cohmad* Does Not Divest Innocent Subsequent Transferee Defendants of
the Protections of the Statutory Safe Harbor ...................................................... 14

    b.    As a Financial Institution Redeeming Investments in Fairfield Sentry,
Cathay Is Separately Entitled to the Statutory Safe Harbor's Protection
Based on Securities Contracts with Fairfield Sentry. .......................................... 17

CONCLUSION .................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Hill v. HSBC Bank plc*,
    207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) ........................................................................6

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) ..........................................................................................12

*Berdeaux v. OneCoin Ltd*,
    2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021).....................................................................8

*Chase Manhattan Bank v. Banque Generale du Commerce*
    565 B.R. 275, 287 (Bankr. S.D.N.Y. 2017)........................................................................9

*Fairfield Sentry Ltd. (In Liquidation) v. CityBank, N.A. London*,
    19-CV-3911(VSB), 2022 WL 3756343 (Bankr. S.D.N.Y. Aug. 24, 2022) .....................2, 8, 9

*Hau Yin To v. HSBC Holdings, PLC*,
    2017 WL 816136, . (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) .............6

*Helicopteros Nacionales De Colombia v. Hall*,
    466 U.S. 408 (1984).......................................................................................................1, 3

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 .............................................................................................................14

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
    893 F. Supp. 1252 (S.D.N.Y. 1995)..................................................................................10

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018).........................................................................................................7

*Manko Window Systems, Inc. v. Prestik*,
    2017 WL 4355580 (D. Kan. Sept. 29, 2017) .......................................................................12

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 346 (S.D.N.Y. 2018).................................................................................7

*Off. Comm. Of Unsecured Creditor of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)..............................................................................................6

*Picard v. ABN AMRO Bank (Ireland) Ltd.*,
    505 B.R. 135 (S.D.N.Y. 2013)...........................................................................................17

*Picard v. Banque SYZ & Co., SA*
  2022 WL 21355019 (Bankr.S.D.N.Y June 14, 2022)...............................................................3

*Picard v. Bureau of Labor Ins.*, *(BLI)*
  480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012).....................................................................3, 4

*Picard v. Multi-Strategy Fund Ltd.*
  Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073 (Bank. S.D.N.Y. June 13, 2022.........3, 4

*Rocky Mountain Chocolate Factory v. Arellano*,
  2017 WL 4697503 (D. Colo. Oct. 19, 2017) .........................................................................12

*S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC*
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .........................................................................14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,*
  460 B.R. 106 (Bankr. S.D.N.Y 2011). ....................................................................................3

*Trading & Inv. Co. v. Tymoshenko*,
  2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ..........................................................................8

*Tymoshenko v. Firtash*,
  2013 U.S. Dist. LEXIS 43543 (S.D.N.Y. Mar. 26, 2013) .....................................................12

*U.S. Bank Nat'l Ass'n v. Bank of Am.*,
  916 F.3d 143 (2d. Cir. 2019)....................................................................................................1

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020).......................................................................................7

*Walden v. Fiore*,
  134 S.C. 1115 (2014) ........................................................................................................1, 2, 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).................................................................................................................12

Defendant Cathay Life Insurance Co. Ltd ("Cathay") respectfully submits this reply memorandum in further support of its motion to dismiss the Complaint[1]

## ARGUMENT

### I.    THE TRUSTEE FAILED TO ESTABLISH PERSONAL JURISDICTION OVER CATHAY BECAUSE CATHAY DOES NOT HAVE SUFFICIENT CONTACTS WITH NEW YORK AND CATHAY'S MINIMUM CONTACTS WITH NEW YORK DO NOT RELATE TO THE REDEMPTION PAYMENTS AT ISSUE

The Trustee premised his flawed jurisdictional argument on actions he deems reflective of Cathay's "purposeful availment of New York ("N.Y.") laws." Opp. at 8. The purposeful availment framework requires three elements. *First*, the "defendant must have purposefully availed itself of the privileges of conducting activities within the forum state." *U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d. Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017)). *Second*, the "plaintiff's claim must arise out of, or relate to, the defendant's forum conduct." *Id. Finally*, "the exercise of jurisdiction must be reasonable under the circumstances." *Id*. A defendant's relationship with a third party, standing alone, is an insufficient basis to demonstrate purposeful availment. *Id*; *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 417 (1984). Defendant must create the contacts which serve the bases for jurisdiction and those contacts must be with the forum state itself -- not simply with persons who reside there. *Walden v. Fiore*, 134 S.C. 1115, 1121-22 (2014).

In support of his availment theory, Trustee only alleges that (1) Cathay invested in Sentry, knowing the funds would be invested with BLMIS, (2) JPMorgan Chase employed N.Y. correspondent accounts to execute (two) transactions with Sentry; (3) Cathay had connections with

---

[1] Unless otherwise specified, citations to "ECF No. __" refer to Adv. Pro. 11-02568. Capitalized terms not defined herein have the meanings ascribed to them in the Cathay Defendants' initial memorandum of law, ECF No. 119, cited as "Mem." Citations to "Opp." refer to the Trustee's opposition memorandum (the "Opposition"), ECF No. 123. Unless otherwise stated, all internal quotations and citations in judicial decisions are omitted.

N.Y. through its Sentry subscription agreements, which the *Fairfield I* [2] court already deemed to be irrelevant in a jurisdictional analysis; and (4) Cathay communicated with a U.K. FGG representative and visited FGG's N.Y. headquarters, after the first of the two redemptions at issue, and more than a year before the last. Opp. at 9.

Cathay's contacts with N.Y. do not establish that Cathay availed itself of the N.Y. jurisdiction because Cathay's contacts with N.Y. do not give rise to any of the two claims at issue. Only Cathay's contacts with the forum may serve as a relevant bases for jurisdiction. *Fiore*, 134 S.C. 1115, 1121-22. Here, the only contact that can be attributed to Cathay is Cathay's meeting in N.Y. This contact, however, does not relate to or give rise to Trustee's claims because (a) the meeting took place two years after the first redemption, and more than a year before the last, and (b) Cathay sought to -and in fact did- primarily discuss Fairfield's Chester Global Fund.

> **a.    "Knowledge" is Not Sufficient to Impute Sentry's or BLMIS's Contacts to Cathay nor is it a Contact for Jurisdictional Purposes**

The Trustee's first argument is that Cathay knew that Sentry was investing in BLMIS. Opp. at 9. Cathay's knowledge, however, is of no consequence. Sentry —not Cathay— directed investments. In this case, Sentry directed its investments to N.Y. Cathay did not direct, control, or even meaningfully monitor Sentry's actions, nor could it. Here, Cathay bought shares in Sentry. The Trustee alleges that Sentry invested with N.Y. based BLMIS. The Trustee asserts that this third party action results in Cathay's purposeful availment of the privileges of doing business in N.Y. The Trustee goes as far as to argue that this is "dispositive," but utterly fails to provide a cogent legal basis for his assertion. Opp. at 9.

First, the Trustee relies on *In re Picard* for the proposition that "when subsequent transfer

---

[2] *Fairfield Sentry Ltd. (In Liquidation) v. CityBank, N.A. London  (In re Fairfield Sentry Ltd.),* 19-CV-3911(VSB), 2022 WL 3756343 (Bankr. S.D.N.Y. Aug. 24, 2022)

investors choose to buy into feeder funds that placed all or substantially all their assets with Madoff securities, they knew where their money was going." 917 F.3d 85, 105 (2d Cir.) This, however, is misleading. *In re Picard* purely discusses dismissal on international comity grounds, not personal jurisdiction. *Id*. The Trustee's reliance upon *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* ("*Maxam*") is equally disingenuous because it oversimplifies and mischaracterizes the court's findings.  460 B.R. 106 (Bankr. S.D.N.Y 2011). In *Maxam*, defendant hired an investment manager. The court's holding turned on defendant's use of the investment manager who had authority to allocate assets and to broker dealers on defendant's behalf, with a BLMIS feeder fund. Critically, *Maxam*'*s* investment manager used a "*Connecticut* address" in connection with the investments. *Id.* at 118 (emphasis in original). Here, Cathay did not use a U.S. based investment manager or financial advisor in connection with any Sentry investments.

Ultimately, Cathay's knowledge of Sentry's investment in BLMIS cannot serve as a relevant basis for jurisdiction. *See Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum . . . to justify an assertion of jurisdiction.").

>    **b.    Trustee's Reliance upon *BLI*, *Multi-Strategy*, and *Banque SYZ* is Misplaced Because they Involved Different Fact Patterns and Contacts**

Defendant's actions and contacts in the cases cited by the Trustee are distinguishable from Cathay's alleged contacts. Opp. at 10; *See Picard v. Banque SYZ & Co., SA* 2022 WL 21355019 (Bankr.S.D.N.Y June 14, 2022) ("*Banque Syz*") (defendant maintained own account with BLMIS); *Picard v. Multi-Strategy Fund Ltd*., Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073 (Bank. S.D.N.Y. June 13, 2022) ("*Milti-Strategy*") (defendant requested additional capacity for Fairfield Sentry, executed total redemption, and sought additional information about Bernie Madoff). In *Picard v. Bureau of Labor Ins.*, (*BLI*), for example, the defendant (1) hired an advisor to conduct

diligence on Fairfield. 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012). Thereafter, the advisor, (2) opened accounts with JPMorgan Chase N.Y. *Id*. Additionally, *BLI* (3) received —beyond the private placement memorandum and other general information about the fund— detailed, specific, and ongoing information about the fund's investment strategy, along with past results and details of specific trades in the Standard and Poor's 100 Index. at 507. *Id*. In *Multi-Strategy*, this Court noted that the Trustee devoted over five pages of his twenty-seven-page complaint to defendant's contacts with N.Y. Here, the Trustee sets forth two (2) thin paragraphs -with de minimis substance– to establish Cathay's "purposeful" availment of N.Y. laws. Comp. para. 6 & 7. *Multi-Strategy* 2022 WL 2137073, at *3-4.

Moreover, Cathay had no fundamental knowledge about the fund's investment and operation, beyond general information about Sentry. Mem. at 12. Cathay did not seek total redemption of its investments. Nor are there any allegations, nor could it be alleged, that Cathay solicited or promoted investments with BLMIS feeder funds, that Cathay maintained its own account with BLMIS or that Cathay sent correspondence to, communicated with, or had any dealings whatsoever with, BLMIS representatives. Cathay never directed its subscription agreements to N.Y. Mem. at 2. Rather, Cathay executed its subscription agreement in Taiwan and delivered it to the Fund administrator in the Netherlands.

Lastly Cathay never procured a N.Y. bank account— nor did it seek or avail itself of the N.Y. banking system.

### c.    A Third Party's Designation of a U.S. Bank Account to Effectuate two Foreign Banking Transactions for Foreign Parties Is Not Enough to Establish Jurisdiction Over Cathay

Trustee asserts that Cathay purposefully used the N.Y. banking system. Opp. at 16. In support of this assertion, the Trustee asserts that Cathay's September 2003 subscription agreement references JPMorgan Chase as the financial institution for the payment of subscription funds. *Id*.

Cathay's JPMorgan account corresponds to JPMorgan Chase London, not JPMorgan Chase N.Y. Moreover, it is *redemption payments*, not *subscriptions*, that give rise to this action. Therefore, Cathay's reference to JPMorgan Chase in its Subscription Agreement is not a relevant consideration when determining jurisdiction.

The Trustee further asserts that Cathay wired funds to Sentry's HSBC N.Y. account in accordance with its subscription agreements. Opp. at 6. The subscription agreement, executed in 2003, instructs Cathay to transfer a payment to an HSBC account in N.Y. belonging to Citco Bank Netherland N.V. Amsterdam. Opp. at 2 and 6. Cathay, however, did not have control over choosing Citco's designated accounts. The same is true for Cathay's short form subscription agreement, executed in 2007. Such "action" simply cannot be attributed to Cathay. Cathay executed the first subscription agreement two years before the first redemption, and more than five years before the second redemption payment; the short form agreement was executed two years after the first redemption and more than a year prior to the second redemption.

Thereafter, the Trustee asserts that Cathay used the accounts with JPMorgan Chase N.Y. to receive transfers form Sentry. Opp. at 16. In support, the Trustee relies on two "Request for Wire Transfer Payment" ("Request" in the singular and "Requests" in the plural). One Request is from a Citco entity, located in Amsterdam, to Citco Bank N.V. Dublin Branch, in Ireland, and one Request is from Cathay, an entity undisputedly located in Taipei, Taiwan. Fish Decl., Ex. G, H.

While the Requests list JPMorgan Chase N.Y. as the bank to be credited, it specifically states that the funds are to be further credited to JPMorgan Chase London, with Cathay is listed as the beneficiary of the foreign account. *Id.* The Trustee does not attempt to –nor can he– establish that Cathay requested, created, or controlled the correspondent bank account in N.Y. Cathay created an account with JPMorgan Chase London. The use of a N.Y. correspondent account was

not Cathay's doing. Cathay could not conjure wiring instructions and designate a JPMorgan Chase

bank of its choice. Cathay's wiring instructions came from JPMorgan Chase and JPMorgan Chase

designated a N.Y. correspondent account to effectuate these transfers. In fact, Cathay's name

appears only on the account maintained with JPMorgan Chase London –not on the account

maintained with the respective correspondent N.Y. branch. Thus, if Cathay directed action to any

forum, it was London – not NY.

As a general matter, use of a correspondent account, by a foreign entity under a foreign

contract –which is exactly what the Trustee alleges– does not confer jurisdiction. Mem. at 14; *See

Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar.  1, 2017), *aff'd*,

700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because

their alleged connection to the forum was the transmission of information  and funds "to and from

BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign  contract"); *Hill v. HSBC Bank

plc*, 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds

to and from BLMIS to be "incidental consequences of fulfilling a foreign contract...insufficient

to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment'

of the laws of [the forum]").

The cases the Trustee cites in his opposition do not support the exercise of specific personal

jurisdiction. All cases cited deal specifically with defendant *banks* that made use of their own

correspondent bank accounts in connection with allegedly illegal activity connected to the U.S. In

*Licci v. Lebanese Canadian Bank*, (*Licci*) for example, the court found jurisdiction over a

defendant *bank* proper when it "deliberately" selected a N.Y. correspondent account over a dozen

times to effectuate its support of terrorist goals. 732 F.3d 161 (2d Cir. 2013); *Off. Comm. Of

Unsecured Creditor of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016) ("[T]he

defendant Banks weren't simply complicit, or even mere participants, in the selection of the N.Y.

correspondent bank accounts. Rather, the selection of N.Y. correspondent bank accounts that received the funds *originated with* the Banks; they actively directed the funds at issue unto those New York accounts." (emphasis in original)).

Here, in contrast, Cathay did not select the N.Y. correspondent account and the Trustee has only identified two alleged transfers. Moreover, the redemption payments identified were in route to London and the BVI and did not violate any law or duty – but rather were transmitted in the ordinary course of business. *See Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 of these transfers [Clearing House Interbank Payments System (CHIPS) — the system used for most large banking transactions], occur, in dollar amounts totaling about $1.5 trillion.").

In the context of correspondent accounts, courts have made it clear that it is the "repeated use" and "deliberate selection" of the accounts that justified the exercise of personal jurisdiction. *Lucci*, 732 F.3d 161 at 171; *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 356 (S.D.N.Y. 2018) (determining "hundreds of occasions" was sufficient), *with Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 257-58 (S.D.N.Y. 2020) (three transactions "too sparse" to find purposeful). As to deliberateness, courts have considered various factors, including "the necessity of the correspondent account to the alleged scheme." *Vasquez*, 477 F. Supp. 3d at 258. Thus, for example, where the use of a N.Y. correspondent bank account was an "essential step" in and "integral" to the money laundering scheme in *Rushaid v. Pictet & Cie*, the court found the defendant bank's use of the account to be "volitional." *Rushaid*, 28 N.Y.3d at 327, 328. In cases where, like here, the correspondent account "does not appear to have been necessary to the Ponzi scheme's success," courts have not found use of the account to be purposeful. *Vasquez*, 477 F. Supp. 3d at 262 (citing *Hau Yin To*, 2017 WL 816136, at *7 n.6 ("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme.")).

Even in those instances, courts have only found it proper to exercise jurisdiction over the *banks* which designate the correspondent accounts. *See Berdeaux v. OneCoin Ltd*, 2021 WL 4267693, at 12 (S.D.N.Y. Sept. 20, 2021) (finding that there is no principle which allows for a non-domiciliary individual defendant to be subject to specific jurisdiction in N.Y. under Section 302(a)(1) because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through N.Y. via a correspondent account); *Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012).

This adheres to the well-established principle –reaffirmed by the Supreme Court in *Walden* and recognized by the Trustee– that specific jurisdiction must in all cases be *based* on the defendant's own contacts with the forum, not a third party's unilateral contact. *Walden* at 284-85, Opp. at 11. The Court has not done away with this principle –even under the purposeful availment framework– the relevant forum connections and contacts start and end with Cathay's created contacts. The correspondent accounts simply cannot serve as a basis for jurisdiction.

### i.    The Sentry Subscription Agreement Is Not a Relevant Jurisdictional Contact, Especially Under *Fairfield*

The Trustee's third argument is that a forum selection clause in a subscription agreement with Sentry is a relevant jurisdictional contact. Opp. at 13. The Trustee acknowledges that he cannot argue that the forum selection clause meant that Cathay consented to jurisdiction. Opp. at 14-15. That argument was foreclosed by Judge Bernstein's well-reasoned decision in *Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)* (*Fairfield I*), where the forum selection clause was held to be "*irrelevant*" to actions involving redemptions, such as this one. The Trustee's argument is thus a clear collateral attack on Judge Bernstein's prior ruling.  Adv. Proc. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018).

Additionally, this Court has held that the forum selection clauses did not give rise to

consent to litigation over redemptions in this forum. *See, e.g., Multi-Strategy Decision*, at footnote 3. This Court then further observed that while the forum selection clauses could be relevant to the assessment of the reasonableness of asserting jurisdiction based on other contacts, the clause did not itself provide an independent basis for asserting jurisdiction. *Id.* As set forth herein, the Trustee fails to allege any other sufficiently relevant contacts and the clauses themselves are insufficient to establish jurisdiction; thus, the subscription agreements do not aid the Trustee's jurisdictional argument.

The precedents relied upon by the Trustee are equally unpersuasive because they rely on different fact patterns and contracts. In *Burger King v. Rudezwicz*, Court found jurisdiction because, unlike here, the defendant entered into an agreement that envisioned "continued and wide-reaching contacts" with the forum. 471 U.S. 479-80 (1985). In *Chase Manhattan Bank v. Banque Generale du Commerce*, the choice of law clause broadly governed "the parties' relationship," whereas here, the choice of law clause does not govern the redemption at issue. 1997 * 2 WL 266968 (S.D.N.Y. May 20, 1997). Similarly, in *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A.*, the agreement's forum selection clause patently applied to the transaction at issue in the clawback claim, unlike here. 565 B.R. 275, 287 (Bankr. S.D.N.Y. 2017)

The most glaring difference between the present fact pattern and the facts in the cases relied upon by the Trustee is that, in this case, there are *two* relevant contracts rather than one. In this case, Cathay was party to subscription agreements which included a forum selection clause, but which has no bearing upon suits related to redemptions. Cathay was also party to Sentry's Articles of Association which do govern redemptions, but which do not include a forum selection clause. Thus, what the parties to these contracts clearly agreed and intended was that lawsuits over subscriptions could be litigated in N.Y. under N.Y. law, but that suits regarding redemptions would

be litigated under the laws of the British Virgin Islands, with no agreement or understanding that

they would be litigated in N.Y. *See, Fairfield I*, at \*11-12.

Thus, viewed side by side, the subscription agreements and the Articles of Association

show exactly the opposite of what the Trustee suggests: they show that Cathay could not have

reasonably foreseen or expect litigation over redemptions in N.Y. Comp. at para. 7.

> **d.     E-Mail Correspondence Directed FGG U.K. and a Single Meeting to
> Discuss an Entirely Different Fund Are Not Sufficient to Establish
> Jurisdiction**

Lastly, the Trustee argues that Cathay's contacts with U.K. FGG personnel and a meeting

in N.Y. to discuss an entirely different fund establishes personal jurisdiction over Cathay.   In

support, the Trustee relies on three documents, two of which are email correspondence and one of

which is an agenda, Exhibits K, I, and J.[3] None meaningfully further Trustee's purposeful

availment theory.

Exhibit K consists of email correspondence, exclusively internal communication between

FGG personnel, and U.K. FGG personnel and Cathay. The only email correspondence directed at

the U.S. is an email from U.K. FGG personnel, Richard Langberg, to U.S. FGG personnel, Andrew

Smith, not anyone associated with Cathay. Moreover, the substance of the communication does

not relate to Sentry or any activity in N.Y. *See* Exhibit K p. 1 email no. 3 (email from U.K. FGG

personnel to Cathay noting "I thought you were interested in discussing Sentry, not …."). While

the email contemplates a call, there is no indication that the call took place; and even if it did, a

telephone call would not support a personal jurisdiction fining .  *Int'l Customs Assocs., Inc. v. Ford

Motor Co.*, 893 F. Supp. 1252, 1261 (S.D.N.Y. 1995) ("Telephone calls and correspondence sent

---

[3] As a preliminary matter, all three documents constitute inadmissible hearsay, lack foundation, none is authenticated, and two are dated after the transfers at issue in this case. Additionally, the attorney declaration is not based on personal knowledge. Thus, all are inadmissible and fail to further Trustee's arguments. Cathay, nonetheless, will address each in turn.

into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction.") (collecting cases). Therefore, this document adds nothing to the Trustee's argument.

Exhibits J and I, an agenda and FGG's internal email correspondence, respectively, relate to a single meeting in N.Y. in 2007. Cathay's primary purpose in visiting N.Y., however, was to attend a seminar with other asset management companies. The visit to Fairfield was incidental. Even the FGG meeting discussed other Fairfield funds, the Chester Global Fund, not Sentry. *See* Fish Decl., Ex. J (discussing "review of Chester Global Strategy Fund"); *Id*. Exhibit I (e-mail correspondence from U.K. FGG personnel to U.S. FGG personnel requesting availability to introduce Cathay to FILFA Fund); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999) (when assessing jurisdiction "courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state"). Moreover, this meeting took place after the first redemption and more than a year before the last redemption.

As such, these contacts, namely the correspondence from Cathay to U.K. FGG personnel and the meeting to discuss other funds, which occurred after the first redemption and more than a year before the last, do not and cannot relate to or give rise to jurisdiction as to the redemption payments at issue here.

Moreover, the Trustee's reliance on *SAS Group, Inc. v. Worldwide Inventions, Inc*. and *Burlington Industries, Inc. v. Salem International Co*. are unpersuasive, because in both of those cases, the in-forum meetings involved negotiations between the parties that *directly* gave rise to the claims at issue. 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003); 645 F. Supp. 872, 874 (S.D.N.Y. 1986); Opp. at 13. That is not the case here.

e.     **The Assertion of Jurisdiction Over Cathay Would Not be Fair or Reasonable**

Even if the Trustee had alleged or established sufficient jurisdictional contacts (and he has not), the Court's exercise of jurisdiction must also be reasonable under the circumstances for it to be consistent with due process. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980). "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." *See Tymoshenko v. Firtash*, 2013 U.S. Dist. LEXIS 43543, at *14-16 (S.D.N.Y. Mar. 26, 2013)

As set forth above, the Trustee relies on the most incidental of contacts to purportedly establish specific jurisdiction here. Thus, if those contacts are deemed sufficient, which they should not be, the Trustee must make the strongest of showings that the exercise of jurisdiction would also be reasonable. However, each of the factors that courts consider in assessing reasonableness weighs against jurisdiction. Indeed, courts have dismissed cases in circumstances like this, where even though defendants' contacts with the forum "'barely satisf[y] the minimum contacts standard'" – and Cathay's do not – "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017); *see Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017)

The Trustee fails to make a strong (or any) showing that the exercise of jurisdiction would also be reasonable. Moreover, the Trustee does not explain why N.Y. is more reasonable than other available fora, including Taiwan, where Cathay has its principal place of business, offering no more than that "the Trustee has a strong interest in litigating in the United States." The Trustee simply casually asserts that the "burden on Cathay" will be "minimal" but nothing

could be further from the truth. Opp. at 19. Cathay will incur substantial cost in accessing documents and testimony from witnesses, none of which is merited by Cathay's *de minimis* jurisdictional contacts. The Trustee should have brought his suit elsewhere.

Lastly, the Trustee asserts that Cathy purposefully availed itself of the privileges and benefits of doing business in N.Y., but at the same time has consistently taken the position that Cathay cannot assert a customer claim against BLMIS because Cathay's real legal and commercial relationship was with the Fairfield Funds, not BLMIS. As a result, while investors who *in fact* availed themselves of U.S. law, like SIPA, have customer claims that will see them keep or have returned at least 70 percent of any principal investment that the Trustee successfully claws back, truly foreign investors, such as Cathay, will not participate in the ratable distribution scheme established under SIPA because they had no direct relationship with BLMIS. And that is precisely because they did *not* avail themselves of the protections of U.S. law under SIPA.

The Trustee cannot have it both ways. Previously, the Trustee consistently pointed out that defendants like Cathay do not have customer claims against the estate, because they did not in truth invest in BLMIS. Now, the Trustee should not be heard to argue that these same investors were in essence investing in BLMIS – purposefully availing themselves of the privileges and benefits of doing business in N.Y. – and thus making it reasonable to sue them here. It would be fundamentally unfair and unreasonable to exercise personal jurisdiction on these grounds alone.

### f.    The Trustee Does Not Need Additional Discovery and Should be Denied Leave to Amend

The Trustee should not be granted further jurisdictional discovery or leave to amend. This case has lasted a decade already. The Trustee has complete access to the records of Mr. Madoff and has also completed substantial discovery from the Fairfield Funds (with whom he is cooperating in this litigation), as well as from innumerable other third parties. Any evidence

supporting contacts between Cathay and BLMIS should already be in the Trustee's possession and

control. In addition, despite having access to significant discovery, the Trustee has not shown any

meaningful contacts between Cathay and the forum, and there is no reason to expect additional

discovery will cure this defect.

## II.     SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR

Trustee does not dispute that (a) BLMIS was a stockbroker, (b) Sentry was a financial

institution, and (c) that the initial transfer from BLMIS to Sentry was a settlement payment or a

transfer in connection with a securities contract (here, between Sentry and BLMIS and also

between Sentry and Cathay). Mot. at 19-28. Accordingly, Trustee has conceded that the transfers

from BLMIS to Sentry satisfy Section 546(e). *In re UBS AG Sec. Litig.*, 2012  WL 4471265, at

*11. Trustee instead argues that under the District Court's holding in *S.I.P.C. v. Bernard L.  Madoff*

*Inv. Sec. LLC*,  Section 546(e) is not available to Cathay because Sentry was alleged to have been

aware of BLMIS's fraud. Opp. at 21-26; No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15,

2013) ("*Cohmad*"). This argument fails, as shown below.

### a.     *Cohmad* Does Not Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor

Trustee overstates the holding in *Cohmad*. Indeed, *Cohmad* left open the use of the safe

harbor in Section 546(e) when, as here, there is an innocent subsequent transferee (Cathay)

asserting the defense to an initial transfer where the initial transferee (Sentry) failed to raise

the  defense. *Id*. at *1, *9–10. Trustee's contention that an innocent subsequent transferee loses its

Section 546(e) defense based on the knowledge of an unrelated initial transferee does not survive

a close reading of *Cohmad*. Opp. at 16.  In *Cohmad*, Judge Rakoff, in a ruling that he directed be

applied to many adversary proceedings (and therefore was not "dicta") held that the relevant

"actual knowledge" is that of the party from which the Trustee seeks recovery:

   (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and

   (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad*, 2013 WL 1609154, at *1, *10.

  While paragraph (2) above addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the *subsequent transferee* had actual knowledge of Madoff's fraud, it pointedly did *not* prevent a subsequent transferee from asserting the safe harbor where the *initial transferee* had actual knowledge of Madoff's fraud. The reason for this is displayed in Judge Rakoff's explanation of his ruling, in which he stated:

  [I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)*. . . [T]he purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . . In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.

***

[T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor. Again, this follows from the general principles enunciated earlier in this Opinion. A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e). . . . In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.

*Id*. at *4, 7 (emphasis added; citations omitted).

  In these excerpts from the decision, Judge Rakoff announced an exception to the safe

harbor for subsequent transferees parallel to (not greater than) the one he announced for initial transferees, precluding Section 546(e) from being invoked in a situation in which it otherwise would apply if doing so would benefit a defendant (whether an initial or subsequent transferee) with actual knowledge that the funds it received had been fraudulently transferred.

*Cohmad* established that when an initial transferee has actual knowledge of the fraud and thus knows there is no bona fide settlement payment or securities contract, it cannot invoke the safe harbor to protect the initial transfer. Similarly, when a subsequent transferee has actual knowledge of the fraud, it cannot invoke the safe harbor that would otherwise apply to the initial transfer, even if the initial transferee was "innocent," because the subsequent transferee knows there is no bona fide settlement payment or securities contract and allowing the culpable subsequent transferee to invoke the safe harbor would permit it to "launder . . . fraudulently transferred funds through a nominal third party," like the initial transferee. But where the subsequent transferee *lacks actual knowledge of the fraud*, it has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract. That reasonable expectation should be protected by the safe harbor that Congress enacted.

The Trustee also cites *Picard v. BNP Paribas S.A. (In re Madoff)*, and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, in support of his argument, but neither case discussed whether the initial transferee's actual knowledge bars a subsequent transferee's invocation of Section 546(e). Opp. at 25-26; 594 B.R. 167 (Bankr. S.D.N.Y. 2018); 620 B.R. 505 (Bankr. S.D.N.Y. 2020). Instead, both cases focused on the same straw man argument raised by the Trustee here. *See BNP Paribas*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the safe harbor defense only applies by its terms to the initial transfer"). And to the extent *BNP Paribas* might be read to imply that an innocent

subsequent transferee cannot invoke the safe harbor, it is inconsistent both with *Cohmad* and this Court's decision in *Fairfield Inv. Fund*.

> **b.    As a Financial Institution Redeeming Investments in Fairfield Sentry, Cathay Is Separately Entitled to the Statutory Safe Harbor's Protection Based on Securities Contracts with Fairfield Sentry.**

Moreover, *Cohmad* provides a separate, second basis for the statutory safe harbor to protect Cathay, premised on the Articles, rather than upon the BLMIS-Sentry customer agreements. Thus, where a BLMIS customer (Sentry) made a "withdrawal" from its BLMIS account that was allegedly "caused by [its] payment obligations to a subsequent transferee under a securities contract" (Sentry's Articles), the initial transfer "could qualify." Since it is undisputed that Sentry is a "financial institution" and BLMIS's initial transfers were made to Sentry at Sentry's request to fund redemption payments to Sentry's investors, such as Cathay, and the Trustee failed to contest that the Articles were a real securities contract pursuant to which securities were redeemed and sold, the facts here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. under Section 546(e) "as 'related to' that later transaction under the securities contract." *Id*. Because this second alternative path to Section 546(e) protection does not implicate Sentry's contract with BLMIS, Sentry's alleged knowledge of BLMIS's fraud is irrelevant to the analysis. *Cf. Picard v. ABN AMRO Bank (Ireland) Ltd.*, 505 B.R. 135, 142 n.6 (S.D.N.Y. 2013) (explaining "issue of knowledge was irrelevant to the application of Section 546(g)," the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred" between the initial transferee and its swap counterparty, and "so the mindset of the participants is irrelevant").

Here, it is undisputed that Sentry is a "financial institution" and BLMIS's initial transfers were made to Sentry at Sentry's request to fund redemption payments to Sentry's investors, such as Cathay. It is also undisputed that the Trustee failed to contest that the Articles were a real

securities contract pursuant to which securities were redeemed and sold, and accordingly, the facts

here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9.

## CONCLUSION

For the foregoing reasons and those set forth in the Memorandum of Law in Support of

Cathay's Motion to Dismiss, the Complaint against Cathay should be dismissed.

Dated: September 1, 2022

Respectfully submitted,

AKERMAN LLP

By: */s/ David W. Parham*
    David W. Parham (admitted pro hac vice)
    Bryce Benson (admitted pro hac vice)
    2001 Ross Avenue, Suite 3600
    Dallas, TX 75201
    Telephone: (214) 720-4300
    Facsimile:(214) 981-9339
    E-mail: david.parham@akerman.com
    E-mail: bryce.benson@akerman.com

*Counsel for Defendant Cathay Life Insurance Co., Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 1st day of September, 2022, a true and correct PDF

copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record.

    */s/ David W. Parham*
    David W. Parham