KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for RBC Investor Services S.A., RBC Investor Services Trust, and Banco Inversis, S.A.*

Hearing Date: December 14, 2022
Opposition Date: November 1, 2022
Reply Date: December 1, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789 (CGM)** |
| Plaintiff-Applicant, | **SIPA Liquidation** |
| v. | **(Substantively Consolidated)** |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff | **Adv. Pro. No. 12-01698 (CGM)** |
| Plaintiff, | **RBC-DEXIA DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT** |
| v. | |
| BANQUE INTERNATIONALE À LUXEMBOURG S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.); RBC INVESTOR SERVICES BANK S.A (*f/k/a* RBC Dexia Investor Services Bank S.A.); RBC INVESTOR SERVICES TRUST (*f/k/a* RBC Dexia Investor Services Trust); BANCO INVERSIS, S.A., as successor in interest to RBC Dexia Investor Services España S.A.; and BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.), | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................. 2

ARGUMENT ....................................................................................................... 3

POINT I: THE TRUSTEE'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH
JURISDICTION OVER THE RBC-DEXIA DEFENDANTS .......................................... 3

    a.    The Trustee's Allegations Fail to Establish General Jurisdiction Over the
RBC-Dexia Defendants ............................................................................ 4

    b.    The RBC-Dexia Defendants Lack Sufficient Minimum Contacts
Comporting with Traditional Notions of Fair Play and Substantial Justice .......... 5

          i.    Awareness of the Foreign Funds Subsequent Investment into
BLMIS in New York ............................................................. 8

          ii.    Use of Correspondent Bank Accounts ....................................... 9

          iii.    Use of New York Bank Accounts ........................................... 12

          iv.    Subscription Agreement Choice of Venue Provisions ............................ 14

          v.    Customer Claims ............................................................... 15

    c.    The Exercise of Personal Jurisdiction over the RBC-Dexia Defendants
Would Not Comport with Due Process ............................................... 15

POINT II: THE COMPLAINT FAILS UNDER RULE 12(b)(6) ................................ 16

    a.    The Trustee Does Not Adequately Plead the Avoidability of the Fairfield or
Rye Initial Transfers because Adopting the Entire Fairfield Second
Amended Complaint and Tremont Complaint by Reference Is Improper ........... 17

          i.    Fairfield ......................................................................... 18

          ii.    Rye Portfolio Limited ....................................................... 22

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ................................................................................................10

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
    No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ...................................6

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................19

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)..................................................................................9, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................16, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................16, 18

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)............................................................................5

*Brause v. Travelers Fire Ins. Co.*,
    19 F.R.D. 231 (S.D.N.Y. 1956) ........................................................................18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 12-
    mc-115, 2013 WL 1609154, at *7-*8 (S.D.N.Y. Apr. 16, 2013) ...........................................17

*D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
    29 N.Y.3d 292 (2017) .................................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................4, 5

*Davis v. Bifani*,
    No. 07-cv-00122-MEH-BN, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ...........................18

*Dozier v. Deutsche Bank Tr. Co. Ams.*,
    No. 09-cv-9865 (LMM), 2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) ...................................2

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London*,
    Adv. Pro. No. 19-CV-3911 (VSB) (S.D.N.Y. Aug. 24, 2022) ECF 593................................14

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*,
   No. 19-CV-03911 (VSB) 24 (S.D.N.Y. July 21, 2021), ECF. No. 440........................9, 11, 13

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
   [2014] UKPC 9, at ¶ 20 ...............................................................................................14, 15

*Fremay, Inc. v. Modern Plastic Mach.*,
   15 A.D. 2d 235, 222 N.Y.S. 2d 694 (1st Dep't 1961) ...........................................................12

*Ghazzaoui v. Anne Arundel Cnty.*,
   No. ELH-14-1410, 2014 WL 3973037 (D. Md. Aug. 11, 2014).............................................20

*Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.*,
   87 F.R.D. 93 (S.D.N.Y. 1980) ............................................................................................12

*Gucci Am. Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)..................................................................................................5

*Hastings v. Piper Aircraft Corp.*,
   274 A.D. 435, 84 N.Y.S.2d 580 (1st Dep't 1948) ................................................................12

*Hau Yin To v. HSBC Holdings, PLC*,
   700 Fed. App'x 66 (2d Cir. 2017).....................................................................................6, 10

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15-CV-3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
   700 F. App'x (2d Cir. 2017) ...............................................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..............................................................................................................8

*Hill v. HSBC Bank*
   *plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................10, 13

*Hinton v. Trans Union, LLC*,
   654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).....................20

*In re Banco Santander Sec.-Optimal Litig.*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010) ...............................................................................11

*In re Bernard L. Madoff Inv. Sec. LLC*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) .................................................................................15

*In re Fairfield Sentry Ltd.*,
   Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6,
   2018) ...........................................................................................................................8, 14, 15

*In re Lehman Brothers Holdings, Inc.*,
   544 B.R. 16, 36 (Bankr. S.D.N.Y. 2015).............................................................................15

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016) ....................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ............................................................................4, 9

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......................................................................................4, 16

*Jazini v. Nissan Motor Co.*,
148 F. 3d 181 (2d Cir. 1998) ................................................................................4

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
No. 20-cv-9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) .............................14

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
17-cv-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) .........................12

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012) ..........................................................................................6

*Lowden v. William M. Mercer, Inc.*,
903 F. Supp. 212 (D. Mass. 1995) ......................................................................19

*Marie v. Altshuler*,
817 N.Y.S.2d 261 (1st Dep't 2006) .......................................................................6

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
12 N.E. 3d 456 (N.Y. 2014) ................................................................................11

*Melnick v. Adelson-Melnick*,
346 F. Supp. 2d 499 (S.D.N.Y. 2004) ...................................................................4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ..............................................................................4, 16

*Muhammad v. Bethel-Muhammad*,
No. 11-0690-WS-B, 2012 WL 1854676 (S.D. Ala. May 21, 2012) ......................20

*Muth v. Dechert, Price & Rhoads*,
391 F. Supp. 935 (E.D. Pa. 1975) .......................................................................19

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
No. 13-cv-6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ...................18

*National Am. Corp. v. Federal Republic of Nigeria*,
425 F. Supp. 1365 (S.D.N.Y. 1977) ....................................................................12

*Norex Petroleum Ltd. v. Blavatnik*,
48 Misc. 3d 1226(A) (Sup. Ct., N.Y. Cnty. 2015) ..................................................4

*Nycomed U.S., Inc. v. Glenmark Generics Ltd.*,
No. 08-cv-5023 (CBA)(RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .....................20

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016).........................................................................................5

*Papasan v. Allain*,
478 U.S. 265 (1986)...................................................................................................16

*Picard v. Banque Internationale*
*à Luxembourg S.A. (In re Madoff)*, Adv. Pro. No. 12-01698 (BRL) (Bankr.
S.D.N.Y. June 6, 2012) ................................................................................................1

*Picard v. Banque SYZ & Co., SA*,
Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
14, 2022) ...............................................................................................................6, 7

*Picard v. Fairfield Sentry Ltd.*,
Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020)....................................................18

*Picard v. First Gulf Bank*,
Adv. Pro. No. 11-02541 (CGM), ECF 100, at 7 (Bankr. S.D.N.Y. July 18,
2022) .......................................................................................................................7

*Picard v. Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 at *3 (Bankr. S.D.N.Y.
June 30, 2022)............................................................................................................7

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*
515 B.R. 117 (Bankr. S.D.N.Y. 2014).................................................................................2

*Picard v. Multi-Strategy Fund Ltd.*,
Adv. Pro. No. 12-01205 (CGM) -- B.R. --, 2022 WL 2137073 (Bankr.
S.D.N.Y. June 13, 2022).............................................................................................6, 7

*Picard v. Tremont Group Holdings, Inc., et al. (In re Bernard L. Madoff Inv.*
Secs., LLC), Adv. Pro. No. 10-05310, ECF No. 1 (Bankr. S.D.N.Y. Dec. 7,
2010) .....................................................................................................................22

*Reich v. Lopez*,
858 F.3d 55 (2d Cir. 2017)............................................................................................4

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................................................16

*Roper Starch Worldwide, Inc. v. Reymer & Assocs*,
2 F. Supp. 2d 470 (S.D.N.Y. 1998)..................................................................................10

*Rosenblatt v. Coutts & Co. AG*,
No. 17-cv-3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ..............................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................................................2, 3

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ...........................10

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) .......................................................................................3, 8, 13

*Tamam v. Fransabank SAL*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ......................................................................................4

*Texas Water Supply Corp. v. Reconstruction Fin. Corp.*,
204 F.2d 190 (5th Cir. 1953) ..................................................................................................18

*Toberman v. Copas*,
800 F. Supp. 1239 (M.D. Pa. 1992) ..................................................................................19, 20

*Toppel v. Marriott Int'l, Inc.*,
No. 03-cv-3042, 2006 WL 2466247 (S.D.N.Y. Aug. 24, 2006)................................................4

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...............................................................................20, 21

*Universal Trading & Inv. Co. v. Tymoshenko*,
No. 11-cv-7877, 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) .............................................12

*Vasquez v. Hong Kong and Shanghai Banking Corp, Ltd.*,
477 F. Supp. 3d 241 (S.D.N.Y. 2020) ....................................................................................10

*Walden v. Fiore*,
571 U.S. 277 (2014)..........................................................................................................9, 13, 16

*Wallert v. Atlan*,
141 F. Supp. 3d 258 (S.D.N.Y. 2015).......................................................................................4

*Weinberg v. Colonial Williamsburg, Inc.*,
215 F. Supp. 633 (E.D.N.Y. 1963) .........................................................................................13

*Wolfe v. Charter Forest Behav. Health Sys., Inc.*,
185 F.R.D. 225 (W.D. La. 1999) ............................................................................................19

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980).................................................................................................................15

*Xiu Feng Li v. Hock*,
371 Fed. App'x 171 (2nd Cir. 2010)..........................................................................................5

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC,*
 No. 19-cv-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ...........................................5, 6

**Statutes**

11 U.S.C. § 546(e) ....................................................................................................................18

11 U.S.C. § 550 .........................................................................................................................17

11 U.S.C. § 550(a) ..................................................................................................................2, 17

18 U.S.C. § 1961 et seq, ...........................................................................................................20

28 U.S.C. § 1334(a) ..................................................................................................................19

28 U.S.C. § 1334(b) ..................................................................................................................19

**Rules**

Fed. R. Bankr. P. 7008 .............................................................................................................19

Fed. R. Civ. P. 8(a) ........................................................................................................ *passim*

Fed. R. Civ. P. 8(d)(1) .............................................................................................................19

Fed. R. Civ. P. 10(c) .................................................................................................1, 18, 19, 20

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................1, 3, 4

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1, 16

Fed. R. Civ. P. 7004 ...................................................................................................................5

Fed. R. Civ. P. 7004(f) ...............................................................................................................5

N.Y. C.P.L.R. § 302 (McKinney 2001) ......................................................................................5

**Other Authorities**

Moore's Federal Practice-Civil § 10.04[1] (2021) .................................................................18, 19

Defendants RBC Investor Services Bank S.A. ("RBC-Dexia Bank"); RBC Investor Services Trust ("RBC-Dexia Trust"); and Banco Inversis, S.A. ("Banco Inversis") (as successor in interest to RBC Dexia Investor Services España S.A.) ("RBC-Dexia España") (collectively, the "RBC-Dexia Defendants" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint, ECF No. 134 (the "Amended Complaint" or "Am. Compl.")[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to the Federal Civil Procedure Rules 8(a), 10(c), 12(b)(2), and 12(b)(6) (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

Nearly ten years after filing his Complaint[2] against the RBC-Dexia Defendants, the Trustee filed the Amended Complaint that is at the center of this motion. That pleading, however, fails to contain allegations necessary to establish this Court's personal jurisdiction over RBC-Dexia Bank and Banco Inversis. Those defendants — who are foreign entities that invested in foreign funds using foreign bank accounts — move to dismiss the Amended Complaint for lack of personal jurisdiction. There are no allegations that any agreement governing the redemptions at issue in this case was made in the United States, or governed by U.S. law. Instead, the Amended Complaint contains allegations relating to personal jurisdiction that do not bear on actual U.S. contacts that Defendants had in connection with the transfers and redemptions at issue in this case. Accordingly, this Court cannot extend its jurisdiction over Defendants.

---

[1] The Amended Complaint is attached as Exhibit A to the Declaration of Anthony L. Paccione in Support of Defendants' Motion to Dismiss the Amended Complaint ("Paccione Decl."). Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01698 (CGM).

[2] *Picard v. Banque Internationale à Luxembourg S.A. (In re Madoff)*, Adv. Proc. No. 12-01698 (BRL) (Bankr. S.D.N.Y. June 6, 2012), ECF No. 1 (the "Complaint" or "Compl."). A copy of the Complaint is attached as Paccione Decl. Ex. B.

Second, Section 550(a) is clear that the Trustee cannot recover from subsequent transferees like the RBC-Dexia Defendants unless the initial transfers are "avoided." The Trustee has not adequately alleged that the transfers from BLMIS to the feeder funds, Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") (together, the "Fairfield Funds") and Rye Portfolio Limited ("Rye"), are avoided, or even avoidable. Instead, the Trustee improperly attempts to incorporate in their entirety complaints from separate proceedings, an endeavor that violates Federal Rule of Civil Procedure pleading standards and should be rejected by this Court.

For these reasons, the Court should grant the RBC-Dexia Defendants' Motion to Dismiss.

## **FACTUAL BACKGROUND**

For the purpose of this Motion to Dismiss, the facts set forth below are drawn from allegations contained in the Amended Complaint, which the RBC-Dexia Defendants neither admit nor concede. As explained below, however, many of the Trustee's allegations are contradicted by documents the Trustee expressly relies on or by the Trustee's own admissions in the Complaint he filed in this Action. This Court is not bound by the Trustee's false version of events, and can and should consider the inconsistencies and contradictions between the Complaint and the Amended Complaint, as well as full versions of documents the Trustee cites (and often mischaracterizes).[3]

**The Defendants Alleged Contacts with the United States[4]**

Based on the Trustee's own allegations, there is little doubt that the RBC-Dexia Defendants are truly foreign: (i) RBC-Dexia Bank is a *société anonyme* incorporated, and with its principal

---

[3] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*"), ("court may consider prior iterations of pleadings containing statements inconsistent with the latest version."); *Dozier v. Deutsche Bank Tr. Co. Ams.*, No. 09-cv-9865 (LMM), 2011 WL 4058100 at *2 (S.D.N.Y. Sept. 1, 2011) (court "need not accept as true allegations that conflict with a plaintiff's prior allegations."); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC) (Merkin)*, 515 B.R. 117, 137 (Bankr. S.D.N.Y. 2014) ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.") (citations omitted).

[4] As set forth in the Stipulation and Order Regarding Changes to Defendants so-ordered by this Court on April 4, 2022 (ECF No. 128) (the "Stipulation"), at the relevant times, Defendants RBC-Dexia Bank, RBC-Dexia Trust, and RBC-Dexia España were operating subsidiaries of a 50/50 joint venture between Dexia Banque and nonparty Royal

places of business in Luxembourg, (Am. Compl. ¶ 54); (ii) RBC-Dexia Trust is a trust company

incorporated in Canada, with its principal place of business in Toronto (Am. Compl. ¶ 55); and

(iii) Banco Inversis, as successor in interest to RBC-Dexia España, is a *sociedad anónima*

organized in, and with its principal place of business in, Spain. Am. Compl. ¶ 56. The Amended

Complaint contains no allegations that any RBC-Dexia Defendant was aware of, or had suspicions

of, any irregularity concerning BLMIS.

The Trustee group-pleads that his claims against all RBC-Dexia Defendants "arise from

business they transacted within New York." Am. Compl. ¶ 62. RBC-Dexia Defendants made

investments into one or more of, (a) Sentry, which is alleged to be an entity organized in the British

Virgin Islands (Am. Compl. ¶ 2; Compl. Exs. B ¶ D), (b) Rye Portfolio Limited, which is organized

in the Cayman Islands and has a registered office in Bermuda. (Am. Compl. ¶ 2; Compl. Ex. L ¶

39), and/or (c) Sigma, an entity organized in the British Virgin Islands. Am. Compl. ¶ 2; Compl.

Ex. B ¶ E.

## <u>ARGUMENT</u>

## POINT I: THE TRUSTEE'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH JURISDICTION OVER THE RBC-DEXIA DEFENDANTS

"To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee 'must make a *prima facie* showing that

jurisdiction exists.'" *BNP Paribas,* 594 B.R. at 187 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d

333, 342 (2d Cir. 2018)).

---

Bank of Canada (the "JV"). In July 2012, Royal Bank of Canada acquired Dexia Banque's 50% interest in the JV, and RBC-Dexia Bank was renamed RBC Investor Services Bank S.A., RBC-Dexia Trust was renamed RBC Investor Services Trust, and RBC-Dexia España was renamed RBC Investor Services España S.A. In October 2016, Banco Inversis, S.A. acquired RBC-Dexia España, and RBC-Dexia España was renamed Bancoval Securities Services, S.A. In May 2017 Bancoval Securities Services, S.A., was merged into, and absorbed by, Banco Inversis. *See* Stipulation, ECF No. 128; Am. Compl. ¶¶ 53-56.

A *prima facie* showing requires more than "some evidence" that jurisdiction over the defendant is proper – the plaintiff must instead plead "facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal citation omitted). Accordingly, the Trustee cannot rely on "[c]onclusory non-fact-specific jurisdictional allegations," (*id.*), nor is the Court required to accept as true a "legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) ("A party … 'may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a [Rule 12(b)(2)] motion to dismiss.'") (internal quotations omitted). Instead, the plaintiff must plead specific facts showing jurisdiction. *Toppel v. Marriott Int'l, Inc.*, No. 03-cv-3042, 2006 WL 2466247, at *2-4 (S.D.N.Y. Aug. 24, 2006); *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004). The Court should dismiss the Amended Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

a.    **The Trustee's Allegations Fail to Establish General Jurisdiction over the RBC-Dexia Defendants**

In New York, general jurisdiction may be established only if (1) the defendant is domiciled, incorporated in, or has its principal place of business in the forum state or (2) in exceptional cases, the defendant's contacts with a forum are so extensive as to support general jurisdiction notwithstanding domicile elsewhere. *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *see also Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A), at *20 (Sup. Ct., N.Y. Cnty. 2015) (*Daimler* "brought an end to 'doing business' jurisdiction"). Rather, *Daimler* premised invocation of general jurisdiction on a corporation's

4

in-state place of incorporation and principal place of business in all but exceptional cases. *See* 571

U.S. at 139, n.19.

The allegations in the Amended Complaint fail to plead that the RBC-Dexia Defendants

are subject to general jurisdiction in New York; as noted above, the RBC-Dexia Defendants are

domiciled outside of the United States. *See supra* p. 2-3. Moreover, there is no allegation that the

RBC-Dexia Defendants do business in New York or the United States "with a fair measure of

permanence and continuity." *Xiu Feng Li v. Hock*, 371 Fed. App'x 171, 174 (2nd Cir. 2010). And

this is not an exceptional case where the Trustee has pled that the RBC-Dexia Defendants had

contacts in New York or the United States sufficient to establish general jurisdiction. *Gucci Am.*

*Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (finding the bank's activities in New York

"plainly [did] not approach" the required level of contact required by *Daimler*) (citing *Daimler*,

571 U.S. at 139 n.19). Accordingly, the Court cannot exercise general jurisdiction over the

RBC-Dexia Defendants. *See Daimler*, 571 U.S. at 136-42.

**b.      The RBC-Dexia Defendants Lack Sufficient Minimum Contacts Comporting with Traditional Notions of Fair Play and Substantial Justice**

To establish specific jurisdiction under New York's long-arm statute,[5] the Trustee must

satisfy two exacting pleading requirements: (1) the RBC-Dexia Defendants must have transacted

business within the state; and (2) the claims asserted must arise from their separate business

activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-

3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines,*

---

[5] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Am. Compl. ¶ 61. Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable, but Rule 7004(f) accounts for contacts throughout the United States. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

*Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Trustee also must demonstrate that the

exercise of personal jurisdiction over the RBC-Dexia Defendants "would comport with due

process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations

omitted); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL

2022626, at *3 (S.D.N.Y. Apr. 30, 2018).

Exercise of long-arm jurisdiction also requires an "articulable nexus" or "substantial

relationship" between a New York transaction and the legal claim asserted. *Licci v. Lebanese

Canadian Bank*, *SAL*, 20 N.Y.3d 327, 339 (2012) (internal citations omitted); *see also Marie v.

Altshuler*, 817 N.Y.S.2d 261, 272 (1st Dep't 2006) ("situs of the injury for long-arm [jurisdiction]

purposes is where the event giving rise to the injury occurred, not where the resultant damages

occurred"). The defendant must "seek[] out and initiate[] contact with New York, solicit[] business

in New York, and establish[] a continuing relationship." *Hau Yin To v. HSBC Holdings, PLC*, 700

Fed. App'x 66, 67 (2d Cir. 2017) (quoting *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon

Pineiro*, 29 N.Y.3d 292, 298 (2017)) (internal citation omitted). At a minimum, the defendant must

"on his or her own initiative . . . project himself or herself into the state to engage in a sustained

and substantial transaction of business." *Id.* Such a projection does not exist here.

The Trustee alleges here that the RBC-Dexia Defendants invested in the foreign feeder

funds, Sentry, Sigma, and Rye Portfolio Limited, but he fails to allege that the RBC-Dexia

Defendants had sufficient New York contacts with respect to these transfers. Am. Compl. ¶ 2.

Indeed, this case is markedly different from cases like *Picard v. Multi-Strategy Fund Ltd.*,

Adv. Pro. No. 12-01205 (CGM) -- B.R. --, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)

("*Multi-Strategy Fund Ltd.*") and *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149

(CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"), in which the Court

recently held that it had personal jurisdiction over certain subsequent transferee defendants. In

*Multi-Strategy*, the defendant was alleged to be a "Madoff addict" that "asked about additional capacity for Fairfield Sentry on at least seven occasions." *Multi-Strategy*, 2022 WL 2137073 at *3 (citing *Multi-Strategy Fund Ltd.* Complaint). Moreover, persons associated with the defendant asked about how Madoff made money and invested. *Id.*; *Multi-Strategy Fund Ltd.* Complaint at ¶ 93. Likewise, in *Banque SYZ*, the Trustee alleged that the defendant had solicited its own clients to invest in New York-based BLMIS, and maintained its own bank accounts in New York to receive redemptions. *Banque SYZ*, 2022 WL 2135019 at *3.[6]

None of these alleged facts are present in this case. The Trustee does not allege that any of the Defendants traveled to New York to meet with individuals from Fairfield Sentry, or to meet with Madoff directly. Indeed, the Trustee fails to allege that any of the RBC-Dexia Defendants ever entered New York or the United States, except to use correspondent bank accounts. *See generally* Am. Compl. ¶¶ 61-75. Instead, the Trustee relies on the RBC-Dexia Defendants' alleged knowledge that its investment in the Fairfield Funds or Rye Portfolio Limited would, in turn, be invested in BLMIS in New York. Am. Compl. ¶¶ 66, 69. But the Trustee inappropriately conflates the RBC-Dexia Defendants' investment in the Fairfield Funds and Rye Portfolio Limited with a non-existent direct investment in BLMIS. There is no precedent holding that such investments warrant jurisdiction over the Defendants.

Here, the Trustee attempts to suggest that personal jurisdiction is proper over the RBC-Dexia Defendants on four different grounds: (1) the RBC-Dexia Defendants separately invested in the Fairfield Funds or Rye Portfolio Limited and were aware that those foreign entities were transacting business in New York through their investments into BLMIS (Am. Compl. ¶¶ 66,

---

[6] And in *Picard v. First Gulf Bank*, the Trustee submitted evidence alleging that the defendant traveled to New York City "many times" to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers at issue. Adv. Pro. No. 11-02541 (CGM), ECF 100, at 7 (Bankr. S.D.N.Y. July 18, 2022). Similarly, in *Picard v. Lombard Odier & Cie SA*, the Trustee submitted evidence alleging that the defendant met directly with Madoff in his New York City office. Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 at *3 (Bankr. S.D.N.Y. June 30, 2022).

69, 72); (2) each RBC-Dexia Defendant used a correspondent bank account at a New York bank (*id.* ¶ 73); (3) the Fairfield Subscription Agreement includes choice of venue provisions for New York (*id.* ¶ 63); and (4) Banco Inversis, as successor in interest to RBC-Dexia España, submitted customer claims with the Trustee in connection with the BLMIS SIPA liquidation proceeding (*id.* ¶ 64). None of these allegations, collectively or individually, create a basis to impose personal jurisdiction over the RBC-Dexia Defendants.

### i.    Awareness of the Foreign Funds Subsequent Investment into BLMIS in New York

The allegation that the RBC-Dexia Defendants allegedly knew that a non-U.S. fund (Sentry, Sigma and/or Rye Portfolio Limited), in which Defendants' banking customers invested, would invest in BLMIS (Am. Compl. ¶¶ 66, 68, 71) does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd.*, 882 F.3d at 344 (substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). The Trustee's claims do not focus on the decision to *invest* with Sentry or Sigma or Rye Portfolio Limited as the basis for liability. *See In re Fairfield Sentry Ltd.,* Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343, at *8-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (subscription agreements irrelevant to claim not based on subscription). Instead, the Trustee's claim to recover the transfers the RBC-Dexia Defendants received from Sentry, Sigma, and Rye Portfolio Limited outside the United States relates to and arises out of those foreign transfers. *See, e.g.*, Am. Compl. ¶¶ 68, 71. As the Fairfield Liquidators maintain, every element of Sentry's transactions (i.e., redemptions to shareholders) is "purely foreign." Plaintiff-Appellants' Opening Brief for Second-Round Appeal

8

("Liquidators' Appeal") at 24, *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 19-CV-03911 (VSB) 24 (S.D.N.Y. July 21, 2021), ECF. No. 440, at 24.

Moreover, the knowledge that the foreign Sentry, Sigma, and Rye Portfolio Limited funds would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction over the RBC-Dexia Defendants. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014). As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. Instead, "[t]he substantial connection … between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (internal quotation omitted) (emphasis in original). Indeed, *Walden* most certainly applies to this case because there is no plausible allegation of meaningful "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means." 571 U.S. at 285. If the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction. There is no precedent for such a sweeping result that would flood U.S. courts with cases against parties with no U.S. contacts. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674. (noting foreseeability by itself is "insufficient" for the exercise of personal jurisdiction).

### ii.    Use of Correspondent Bank Accounts

The Trustee alleges that it "was Defendants' practice to use New York bank accounts to receive redemptions (i.e., the Transfers) from [the] BLMIS feeder funds," and that "each

Defendant designated and used its relevant New York account(s) to send and receive numerous redemptions[.]" Am. Compl. ¶ 73. But the Trustee cannot assert proper jurisdiction over the RBC-Dexia Defendants based on their use of correspondent bank accounts.

It is well-established that foreign affiliates are not subject to jurisdiction in New York simply because they maintain a correspondent bank account in New York. *Hau Yin To v. HSBC Holdings PLC*, 700 Fed. App'x, at 67.[7] Indeed, a foreign defendant is not subject to jurisdiction if it sent or received payment in New York pursuant to a contract executed outside of New York. *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590-LTS-SN, 2017 WL 816136 at *5 (S.D.N.Y. Mar. 1, 2017) ("foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction" if the "communications with and payments to New York were made merely to ensure compliance with contract terms negotiated and executed outside of New York."), *aff'd*, 700 F. App'x at 66 (2d Cir. 2017). The Trustee has not alleged that these correspondent bank accounts were "integral" to the illegal acts in a manner that would create sufficient minimum contacts. *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 328 (2016); *Vasquez v. Hong Kong and Shanghai Banking Corp, Ltd.*, 477 F. Supp. 3d 241, 261-62 (S.D.N.Y. 2020), *on appeal* (rejecting claims of specific jurisdiction over a bank defendant's use of an in-state correspondent account in a Ponzi scheme); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 166, 169–70 (S.D.N.Y. 2015) (rejecting personal jurisdiction claim where one bank defendant for Madoff "feeder fund" had a New York correspondent account),

---

[7] *See Rosenblatt v. Coutts & Co. AG*, No. 17-cv-3528 (AKH), 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (foreign defendant's act of sending payment to plaintiff's New York bank account pursuant to agreement negotiated and executed outside the United States was not purposeful availment); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (allegations that "Foreign Defendants communicated with and transmitted . . . funds to and from BLMIS located in New York" failed to demonstrate purposeful availment because these "communications and payments were incidental consequences of fulfilling a foreign contract"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs,* 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998) ("merely sending payment to New York" pursuant to contract negotiated and executed in Illinois or Michigan "is not sufficient to establish personal jurisdiction").

*aff'd*, 882 F.3d 333, 345 (2d Cir. 2018) ("At bottom, the contacts alleged by [plaintiff] between the [bank defendants], the forum and the litigation amount to a handful of communications and transfers of funds. These limited contacts are insufficient to allow the exercise of personal jurisdiction over [defendants]."); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1323-24 (S.D. Fla. 2010) (finding no personal jurisdiction where intermediary bank, not defendant bank, designated the New York correspondent account to receive funds related to the Madoff scheme).[8] New York does not permit asserting personal jurisdiction over the RBC-Dexia Defendants' innocent use of a correspondent bank account for lawful transfers regardless of whether the payments passed to, from, or through New York. Accordingly, the RBC-Dexia Defendants' use of a correspondent bank account for the transfers is insufficient grounds to establish jurisdiction.

Indeed, exercising jurisdiction over the RBC-Dexia Defendants' use of correspondent bank accounts would be contrary to federal and state policy. Global transactions are frequently converted or cleared in U.S. dollars in New York. Conferring jurisdiction over foreign entities through their incidental use of U.S.-based accounts to effectuate international transactions would have unintentional but significant ramifications. Virtually any foreign commercial dispute could command New York as a forum. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks…is not

---

[8] The Liquidators for the Fairfield Sentry fund (the "Fairfield Liquidators") confirmed that virtually all of the Fairfield transfers the Trustee seeks to recover here allegedly occurred entirely outside of the United States and were foreign in nature:

> The redemption transfers at issue here were purely foreign. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). [E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.

Liquidators' Appeal at 24, *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), ECF No. 440.

significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-cv-7877, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on ... a correspondent bank account.") (internal quotation omitted). For the reasons discussed, the Trustee's allegations concerning the RBC-Dexia Defendants' use of correspondent bank accounts are insufficient to establish jurisdiction over them in this case.

### iii.    Use of New York Bank Accounts

First, even if the RBC-Dexia Defendants had sent their subscription money directly into a New York account as its final destination, that still would not have constituted purposeful availment. It is well established that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17-cv-3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (the fact that the contract required payments to a New York bank account did not establish specific jurisdiction).

Courts routinely hold that the mere presence of a physical bank account in New York is not enough to establish jurisdiction over defendants. *Fremay, Inc. v. Modern Plastic Mach.*, 15 A.D. 2d 235, 241, 222 N.Y.S. 2d 694, 700 (1st Dep't 1961); *Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.*, 87 F.R.D. 93, 95 (S.D.N.Y. 1980); *National Am. Corp. v. Federal Republic of Nigeria*, 425 F. Supp. 1365, 1370-71 (S.D.N.Y. 1977); *Hastings v. Piper Aircraft Corp.*, 274 A.D. 435, 84 N.Y.S.2d 580, 583 (1st Dep't 1948). Here, the Trustee only alleges that the RBC-Dexia Defendants "used an account" in New York. Am. Comp. ¶ 73. The Trustee fails to allege that the RBC-Dexia Defendants solicited business in New York or performed functions

relating to the funds in New York. *Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633, 639–40 (E.D.N.Y. 1963).

Second, even if accepted as true, allegations that a defendant sent contracts or emails to New York or wired money through New York are insufficient to establish that it was transacting business in New York or had minimum contacts with the United States. *See SPV Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (internal quotations omitted); *see also Walden*, 571 U.S. at 285 (instructing that the relevant analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

Here, the Trustee alleges that the RBC-Dexia Defendants invested in the foreign Fairfield Funds and/or Rye Portfolio Limited fund, but he fails to allege that the RBC-Dexia Defendants had any sufficient New York contacts. He does not allege that the RBC-Dexia Defendants entered into any contracts with BLMIS or maintained an account with BLMIS in New York. With respect to Sentry, the Fairfield Sentry Liquidators even admitted that the RBC-Dexia Defendants were required to maintain a non-U.S. account with a foreign bank—not BLMIS in New York—in order to even invest in and to receive redemptions from the foreign Fairfield Fund. *See* Liquidators' Appeal at 24, *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), ECF No. 440.

### iv.    Subscription Agreement Choice of Venue Provisions

The Trustee cites a choice of venue provision in the Fairfield subscription agreement in an effort to support his jurisdictional allegations, but that effort is unavailing. Am. Compl. ¶ 63. Any theory of jurisdiction predicated on the subscription agreement is not applicable because the Trustee cannot invoke a choice of forum clause in a contract to which he is a stranger to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance.[9] *See Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20-cv-9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff).

Furthermore, the Trustee makes no allegation that the Rye Portfolio Limited subscription agreements contain any choice of venue provision relevant to this Court's personal jurisdiction over Defendants. *See* Am. Compl. ¶ 71.

As for Sentry, the British Virgin Islands Privy Council rejected the Fairfield Liquidators' arguments that clawback claims were "with respect to" the subscription agreements containing choice of venue provisions. *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9, at ¶ 20. Judge Broderick in the District Court recently upheld this interpretation as well. *See Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London*, Adv. Pro. No. 19-CV-3911 (VSB) (S.D.N.Y. Aug. 24, 2022) ECF 593. The Amended Complaint presents no allegation to depart from these rulings. *See* Am. Compl. ¶¶ 69, 70. Specifically, this Court held that the New York choice of forum provisions in the subscription agreement did not apply to the disputes concerning

---

[9] Additionally, the law of the case disposes of this theory of jurisdiction. In the Sentry Liquidators' proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants to personal jurisdiction. *Fairfield I*, 2018 WL 3756343, at *12. Specifically, this Court held that the New York choice of forum provisions in the subscription agreement did not apply to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the Subscription Agreements. *Id.*, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

subsequent transfers because the Fairfield Sentry Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Fairfield I*, 2018 WL 3756343 at \*11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"). This Court has accepted the *Migani* court's decision that redemption payments are governed by the Fairfield Amended and Restated Articles of Association, not the subscription agreement. *Fairfield I*, 2018 WL 3756343 at \*12.

v.    <b>Customer Claims</b>

The Trustee alleges that Banco Inversis' predecessor's (RBC-Dexia España) filings of two customer claims with the Trustee support a finding of personal jurisdiction over Banco Inversis. *See* Am. Compl. ¶¶ 64. Those customer claims—both denied—are not relevant contacts for this Court's personal jurisdiction analysis. The Amended Complaint presents a cause of action to recover allegedly avoidable transfers from a subsequent transferee; it has nothing to do with a customer claim, or whether it should or should not be allowed. Only when the customer claim is at issue will the filing of such a claim impact a personal jurisdiction analysis. *See In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015) (where "adversary proceeding does not implicate the claims allowance process," parties will not be found to submit "themselves to personal jurisdiction with respect to the Trustee's fraudulent transfer action by filing SIPA claims."); *In re Lehman Brothers Holdings, Inc.,* 544 B.R. 16, 36 (Bankr. S.D.N.Y. 2015) (Court found that defendant's filing of proof of claim constitutes "submission to the jurisdiction of the Court *only with respect to litigation concerning the claims allowance process*") (emphasis added).

**c.    The Exercise of Personal Jurisdiction over the RBC-Dexia Defendants Would Not Comport with Due Process**

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). On a motion to dismiss, the Trustee bears the burden of establishing that a defendant has

15

sufficient minimum contacts with the forum state such that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum … thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co.*, 480 U.S. at 109. The Court should dismiss the Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.,* 84 F.3d at 568 (quoting *Int'l Shoe Co.*, 326 U.S. at 316.)

As demonstrated above, the Trustee has not alleged that the RBC-Dexia Defendants had sufficient contacts with the United States related to the Trustee's claims to recover the alleged subsequent transfers. Accordingly, personal jurisdiction over the RBC-Dexia Defendants would not comport with due process. *See Walden*, 571 U.S. at 286.

## POINT II: THE COMPLAINT FAILS UNDER RULE 12(b)(6)

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678*.*

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions unsupported by factual allegations (*id.* at 678-79), nor "legal conclusion[s] couched as [] factual allegation[s,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its [plaintiff's] pleadings rely."

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

a.     **The Trustee Does Not Adequately Plead the Avoidability of the Fairfield or Rye Initial Transfers because Adopting the Entire Fairfield Second Amended Complaint and Tremont Complaint by Reference Is Improper**

To recover from a subsequent transferee, the Trustee must plead and prove, among other things, an initial transfer that is avoided, or at least avoidable. 11 U.S.C. § 550(a); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 12-mc-115, 2013 WL 1609154, at *7-*8 (S.D.N.Y. Apr. 16, 2013). The Trustee seeks to recover from the RBC-Dexia Defendants under 11 U.S.C. § 550 as subsequent transferees of alleged fraudulent conveyances of funds from BLMIS to Sentry, from Sentry to Sigma, and from BLMIS to Rye Portfolio Limited. *See* Am. Compl. ¶¶ 158, 162, 173, 178. In his Amended Complaint, the Trustee attempts to plead an avoidable initial transfer from BLMIS to Rye Portfolio Limited, in part by "incorporat[ing] by reference the factual allegations in the Tremont Complaint, as supplemented below." Am. Compl. ¶ 76. The Trustee attempts to plead an avoidable initial transfer from BLMIS to Sentry *solely* with a single, conclusory allegation, "incorporat[ing] by reference the allegations contained in the [Fairfield] Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16." Am. Compl. ¶ 153. The allegation as to Fairfield Sentry is insufficient on its own to establish the avoidability of the Fairfield transfers. Further, if the initial transfer to Sentry is not avoidable, the transfer from Sentry to Sigma is also not avoidable. Thus, the Trustee's allegation that it can recover the Fairfield Sigma transfers to RBC-Dexia España is also insufficient. Am. Compl. ¶ 163. Finally, the allegation as to Rye Portfolio Limited renders the allegations made in the incorporated pleading inconsistent with the claims made within the Amended Complaint. Am. Compl. ¶ 173. Thus, the allegations are incoherent and violate

17

Rule 8(a)—accordingly, the Trustee's attempts at incorporating by reference doom the Amended Complaint.

### i.    Fairfield

The Amended Complaint asserts in a conclusory manner that the Sentry initial transfers were avoidable without any supporting factual allegations that would meet the pleading requirements of *Twombly* and *Iqbal*. Without more, the Amended Complaint is missing essential factual allegations and must be dismissed for failure to state a claim on which relief may be granted. For example, Section 546(e) bars the Trustee from asserting many claims against transferees, and Judge Rakoff held that only a transferee with "actual knowledge" of BLMIS' fraud can be sued for claims that would otherwise be barred by Section 546(e). Yet, the only allegations that relate at all to Sentry's knowledge about BLMIS are contained in the Fairfield Second Amended Complaint,[10] which the Trustee's Amended Complaint purports to incorporate in its entirety by reference in paragraph 153.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading." The rule "eliminates redundancy and repetition." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)). For example, the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief obviates the need to repeat general allegations.

However, the authority to adopt by reference has its limits. Courts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action. *Texas Water Supply Corp. v. Reconstruction Fin. Corp.*, 204 F.2d 190, 196 (5th Cir. 1953); *Nat'l Credit Union*

---

[10] Fairfield Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF 286 (without exhibits) (copy attached as Paccione Decl. Ex. C).

*Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014); *see Davis v. Bifani*, No. 07-cv-00122-MEH-BN, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").

Courts are hesitant to incorporate an entire pleading,[11] but if permitted, that incorporation must also comply with Rule 8's requirement that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1); Fed. R. Bankr. P. 7008. Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) also requires that a pleading must be clear and concise, and the adoption must be "with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behav. Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). "[T]he reference must be clear and explicit and must specifically identify the statements incorporated." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

---

[11] The Trustee will likely rely on a reported bankruptcy court decision that has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding. *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). But the reasoning in that case was incorrect because it treated the bankruptcy case itself as a single action. That reading improperly confuses the terminology used in the Federal Rules of Civil Procedure (the "Civil Rules") with different terminology used in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as a separate proceeding, analogous to a civil action under the Civil Rules. *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11). Moreover, the *Geiger* court granted the defendant's motion to dismiss the complaint because its incorporation of the other pleading in its entirety failed to comply with Rule 8(a)'s requirement to plead short plain statements.

Finally, the resulting pleading must be clear, concise, and specific, and the incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (internal quotation and citation omitted); *accord Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"). Rule 10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings. *Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2012 WL 1854676, at *6 n.10 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to his 100-page complaint"). The requirement that references be explicit and direct is not merely for form; it "enable[s] the responding party to ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cnty.*, No. ELH-14-1410, 2014 WL 3973037, at *4 (D. Md. Aug. 11, 2014). *See also*, *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) (internal footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) ("risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading"). Thus, a "Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed U.S., Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023 (CBA)(RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (internal quotation and citation omitted).

The District Court for the Eastern District of New York synthesized these requirements in dismissing a complaint that relied on numerous prior pleadings. In *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the government brought a civil RICO action in a complaint which attached as exhibits pleadings from several prior criminal and civil actions against some of the same defendants. The court rejected the attempt to incorporate the initial pleadings. First, "[t]he Government's failure to specifically identify which portions of

the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Id.* at 462. Second, the wholesale incorporation of the prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim,'" and it would have rendered the complaint, as it does here, "utterly incoherent" and "an unintelligible morass of self-contradictory allegations." *Id.* at 462 n.72, 463. Finally, the court noted that if the incorporation were accepted, the defendants would have been required to respond to the 85-page complaint, and every paragraph in the 400 pages of exhibits. *Id.* at 464.

In this case, the Trustee's attempt to plead the avoidability of the Sentry initial transfers rests solely by incorporating by reference "the allegations contained in the Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-316." Am. Compl. ¶ 153. The attempt to incorporate by reference 798 paragraphs of a 217-page complaint (which itself attaches and refers to 111 exhibits) into what would otherwise be a 48-page complaint against the Defendants violates numerous pleading rules and requirements: (1) it improperly incorporates by reference a pleading from another action; (2) it improperly incorporates an entire pleading, not the statements in a pleading; and (3) it improperly fails to specify the relevant allegations (as opposed to "all" allegations) that are being incorporated. Furthermore, the Trustee's inability to plead the avoidability of the Sentry initial transfers also dooms the Trustee's allegations as to the Fairfield Sigma Subsequent Transfers because the Trustee may not recover the Sigma transfers if the initial Sentry transfers are deemed unavoidable.

Permitting the Trustee's incorporation by reference here might require the RBC-Dexia Defendants to answer all the allegations in all 798 paragraphs in the Fairfield Second Amended Complaint, even those that have nothing to do with the claim in this Adversary Proceeding. Even

if the Defendants could respond to the Fairfield Second Amended Complaint, the result would be

to expand the scope of this adversary proceeding well beyond the claims asserted in the Complaint

for recovery of subsequent transfers of allegedly avoidable transfers of BLMIS customer property

and put in issue here all the other claims for relief in the Second Amended Complaint. The Trustee

does not assert liability of the RBC-Dexia Defendants for any of the Trustee's claims against any

of the defendants named in the Fairfield Second Amended Complaint. The RBC-Dexia Defendants

should not be required to address those claims, with all the associated discovery and trial time that

would likely result, or guess, at its peril, which of the incorporated allegations are relevant and

must be addressed.

### ii.    Rye Portfolio Limited

These legal principles apply equally to the same effect with respect to the Rye Portfolio

Limited transfers. The Trustee makes separate allegations relating to Rye Portfolio Limited's

relationship with Madoff. But he also incorporates the entire 467-paragraph, 136-page Tremont

Complaint,[12] which contains allegations that contradict the independent allegations in the

Amended Complaint, rendering the Trustee's pleading in this case incoherent.[13] The pleading runs

afoul of Rule 8(a)'s requirement for "a short and plain statement of the claim showing that the

---

[12] *Picard v. Tremont Group Holdings, Inc.*, *et al.* (In re Bernard L. Madoff Inv. Secs., LLC), Adv. Pro. No. 10-05310, ECF No. 1 (Bankr. S.D.N.Y. Dec. 7, 2010) (copy attached as Paccione Decl. Ex. D).

[13] The Trustee alleges in the Amended Complaint that Rye Portfolio Limited had actual knowledge of the fraud (Am. Compl. ¶¶ 66, 169), which directly contradicts allegations the Trustee seeks to incorporate from the Tremont Complaint. Indeed, in the Tremont Complaint, the Trustee alleges that the Rye funds, including Rye Portfolio Limited, "blindly relied on Madoff" and were ignorant of his fraud because they failed to perform independent and reasonable due diligence on BLMIS. *See* Tremont Complaint ¶¶ 4, 8, 9, 119, 153, 156. The Trustee also alleges in the Tremont Complaint that the Rye funds "should have questioned how Madoff's alleged trades could account for such a high percentage of the total volume traded on the exchanges of a particular stock," (*Id.* ¶ 166) but instead "wrongly relied on Madoff's reputation." *Id.* ¶ 85. *See also*, id. ¶ 89, 92, 117, 152, 195. Yet, to meet his burden, the Trustee now contends that Rye Portfolio Limited had actual knowledge of the fraud, despite incorporating allegations that the Rye funds "buried their collective heads in the proverbial sand and refused to reasonably inquire into many red flags well known to them and many others throughout the financial and hedge fund industries" (*id.* ¶ 157). The Trustee's incorporation of the Tremont Complaint is contradictory, making his pleadings in this action disjointed and incomprehensible.

pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a). It also demonstrates the negative effect of incorporating an entire pleading, rather than precisely adopting specific allegations. As it stands, the Trustee has alleged contradictory levels of knowledge of Rye Portfolio Limited that could impact the viability of the Trustee's claims. The Tremont Complaint's incorporation, coupled with the Amended Complaint's allegations about Rye Portfolio Limited, create an incoherent jumble that Rule 8(a) expressly proscribes.

For all these reasons, the Court should reject the Trustee's attempt to incorporate these pleadings by reference. Without the allegations incorporated from these other pleadings, the Amended Complaint pleads avoidability of the Fairfield transfers in only a conclusory fashion. And, the Trustee must contend with the inconsistent allegations concerning Rye Portfolio Limited, some of which may be fatal to his claims. Accordingly, the Amended Complaint does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Sentry and Rye initial transfers—and should be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth above, the RBC-Dexia Defendants respectfully request that the Court grant the RBC-Dexia Defendants' motion to dismiss the Trustee's Amended Complaint.

Dated: September 2, 2022
New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

/s/ Anthony L. Paccione
Anthony L. Paccione
Mark T. Ciani
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendants*