**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Bankruptcy Court Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

        Debtor.

| | |
|---|---|
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF, | Bankruptcy Court Adv. Pro. No. 11-02551 (CGM) |
| Plaintiff, | |
| v. | |
| DELTA NATIONAL BANK AND TRUST COMPANY, | |
| Defendant. | |

**DEFENDANT DELTA NATIONAL BANK AND TRUST**
**COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. §158(a)(3)**

September 6, 2022

SULLIVAN & CROMWELL LLP
James L. Bromley
125 Broad Street
New York, New York  10004
(212) 558-4000
bromleyj@sullcrom.com
*Attorney for Delta National Bank and Trust*
*Company, Defendant in Adversary*
*Proceeding No. 11-02551 (CGM)*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................1

QUESTIONS PRESENTED ON APPEAL..................................................4

RELEVANT BACKGROUND ...................................................................4

I.    The Transfers and Claim at Issue ...................................................4

II.   This Court's *Cohmad* Decision ....................................................5

III.  Delta Bank's Motion to Dismiss ...................................................7

IV.   The Bankruptcy Court's Decision and Order.................................9

V.    Other Proceedings Against Alleged Subsequent Transferees ......................11

ARGUMENT ...........................................................................................11

I.    Whether and How Section 546(e) Applies Are Controlling Questions
      of Law. ..................................................................................12

II.   The Bankruptcy Court's Misinterpretation of *Cohmad* Provides
      Substantial Ground for a Difference of Opinion on the Application of
      Section 546(e). ......................................................................15

III.  Immediate Appeal Will Materially Advance the Termination of this
      Action by Reducing the Scope of Discovery and Relevant Factual
      Issues....................................................................................20

IV.   The Numerous Other Adversary Proceedings Establish Exceptional
      Circumstances Warranting an Immediate Appeal.........................21

CONCLUSION ........................................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

## Cases

*In re Ditech Holding Corp.*,
  2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021) ...................................................11

*Enron Corp.* v. *Springfield Assocs., L.L.C. (In re Enron Corp.)*,
  2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) .............................................*passim*

*Federal Housing Finance Agency* v. *UBS Americas, Inc.*,
  858 F. Supp. 306 (S.D.N.Y. 2012) ......................................................................22

*In re General Motors LLC Ignition Switch Litig.*,
  427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) ........................................................13

*Klinghoffer* v. *S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ...........................................................................12, 21

*MF Global Holdings, Ltd.* v. *Allied World Assurance Co. (In re MF
  Global Holdings Ltd.)*,
  296 F. Supp. 3d 662 (S.D.N.Y. 2017) ................................................................12

*N.Y. Racing Ass'n* v. *Perlmutter Publ'g, Inc.*,
  959 F. Supp. 578 (N.D.N.Y. 1997).....................................................................13

*Picard* v. *Banque Syz & Co., SA (In re Madoff)*,
  2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ........................................11

*Picard* v. *Banque Syz & Co., SA*,
  No. 22-cv-6512-JSR ...........................................................................................11

*Picard* v. *Ida Fishman Revocable Trust*,
  773 F.3d 411 (2d Cir. 2014) ...........................................................................6, 19

*Picard* v. *Multi-Strategy Fund Ltd. (In re Madoff)*,
  2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ........................................11

*Picard* v. *Multi-Strategy Fund Ltd.*,
  No. 22-cv-6502-JSR .....................................................................................11, 22

*United States ex rel. Quartararo v. Catholic Health Sys. of Long
Island Inc.*,
521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...............................................20

*Securities Investor Protection Corp.* v. *Bernard L. Madoff Investment
Securities LLC*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................*passim*

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019) ...............................................................18

**Statutes**

11 U.S.C. § 550(a) ..............................................................................4, 8

11 U.S.C. § 546(e) .........................................................................*passim*

28 U.S.C. § 158(a)(3)..........................................................................1, 11

28 U.S.C. § 1292(b) ...............................................................................11

**Other Authorities**

Fed. R. Bankr. P. 8004 .............................................................................1

Fed. R. Civ. P. 8 .......................................................................................7

Fed. R. Civ. P. 12 .....................................................................................7

Defendant Delta National Bank and Trust Company ("Delta Bank")
respectfully submits this memorandum of law and the exhibits thereto in support of
its motion, pursuant to 28 U.S.C. § 158(a)(3) and Rule 8004 of the Federal Rules of
Bankruptcy Procedure, for leave to appeal from an order (the "Order") of the United
States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court") (Hon. Cecelia G. Morris, Bankruptcy Judge) denying its motion to dismiss
the Complaint of plaintiff Irving H. Picard, Trustee (the "Trustee") for the
Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").[1]

## PRELIMINARY STATEMENT

This motion for leave to appeal should be granted because Delta Bank
raises two narrow legal issues regarding the statutory safe harbor established under
Section 546(e) of title 11, United States Code (the "Bankruptcy Code"), the
resolution of which would have immediate and substantial implications not just in
the present adversary proceeding (the "Action"), but also across the wide network
of BLMIS-related adversary proceedings.  The issues proposed for appeal relate to
the Bankruptcy Court's incorrect application of this Court's decision in *Securities
Investor Protection Corp.* v. *Bernard L. Madoff Investment Securities LLC*, 2013

---

[1] The Order (ECF No. 109) was entered on August 23, 2022; a copy is attached
hereto as Exhibit A.  The Bankruptcy Court entered its Memorandum of Decision
(ECF No. 105) on August 12, 2022; a copy is attached hereto as Exhibit B.  "ECF
No. ___" refers to filings on the Bankruptcy Court docket in Adv. Pro. No. 11-02551.

WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*").  In that decision,
this Court held that defendant transferees—whether an initial transferee or a
subsequent transferee—who had actual knowledge of BLMIS' fraud cannot invoke
the safe harbor.    Additionally, this Court held that the safe harbor reaches
withdrawals made by customers of BLMIS in connection with payment obligations
owed to financial institution investors pursuant to separate securities contracts, such
as redemption requests.

In the present Action, the Bankruptcy Court misinterpreted the
principle articulated in *Cohmad* that the knowledge of the defendant invoking the
safe harbor determines whether the safe harbor is available.  In *Cohmad*, this Court
emphasized that the purpose of Section 546(e) is to promote the ability of parties to
rely on valid securities contracts into which they enter that, in turn, support the
important public policy favoring stable securities markets.  Where a party has no
knowledge of any alleged fraud, that party should be permitted to rely on its
securities contracts, and no exception to the safe harbor is required.  The Trustee has
not alleged a single fact suggesting that Delta Bank had knowledge of Madoff's
fraud.  Nonetheless, the Bankruptcy Court concluded that because actual knowledge
of the fraud by Fairfield Sentry—a feeder fund integral to Madoff's scheme—has
been established, an innocent transferee such as Delta Bank cannot invoke Section

546(e). This ruling stretches *Cohmad* past the point of recognition. It undermines the purpose of the statutory safe harbor.

The Bankruptcy Court also ignored Delta Bank's argument that its securities contracts with Fairfield Sentry support the application of the safe harbor. In doing so, the Bankruptcy Court ignored another fundamental holding from *Cohmad*. This Court held that a subsequent transferee could raise the safe harbor based on its separate securities contracts with an initial transferee. 2013 WL 1609154, at *10. Redemption requests were offered as a specific example. *Id.* at *8. Here, Delta Bank identified its redemption requests to Fairfield Sentry as securities contracts that satisfy the requirements of Section 546(e). The Bankruptcy Court denied Delta Bank's motion to dismiss without addressing this argument.

The criteria for granting leave to appeal all apply. No factual disputes must be resolved to answer the controlling legal questions presented. The Bankruptcy Court's application of *Cohmad* presents substantial grounds for reversal. Directing the application of Section 546(e) as set forth in *Cohmad* will promote an expedited resolution of the Action by reducing the scope of discovery, and narrowing the set of potential issues to be addressed via summary judgment or at trial. Given the breadth of the adversary proceedings to which the questions presented here apply and the scale of the remaining clawback actions, this appeal

involves exceptional circumstances warranting reversal of a non-final order. This

Court should grant Delta Bank leave to pursue its interlocutory appeal.

## QUESTIONS PRESENTED ON APPEAL

1.    Did the Bankruptcy Court err in interpreting this Court's opinion

in *Cohmad* to preclude a subsequent transferee defendant from asserting a defense

under Section 546(e) on the basis that the initial transferee allegedly had knowledge

of BLMIS' fraud, even where there are no allegations that the subsequent transferee

defendant had such knowledge?

2.    Did the Bankruptcy Court err by failing to apply the holding in

*Cohmad* that Section 546(e) applies to securities contracts between an initial

transferee investment fund and the defendant invoking the safe harbor, contracts to

which BLMIS was not a party, where the Trustee alleged that the initial transferee

investment fund withdrew money from BLMIS to fulfill its payment obligations to

the defendant, which was redeeming shares in the initial transferee investment fund?

## RELEVANT BACKGROUND

### I.    The Transfers and Claim at Issue

On August 25, 2011, the Trustee filed his Complaint against Delta

Bank. *See* ECF No. 1. The Trustee asserts a single claim for recovery under Section

550(a) of the Bankruptcy Code. Complaint at ¶¶ 41-45. Specifically, the Trustee

alleges that Delta Bank was a subsequent transferee of purported BLMIS customer

property. *Id.* The Complaint contains only four allegations specific to Delta Bank,

and no allegation that Delta Bank had knowledge of the Madoff fraud. *See* Complaint at ¶¶ 2, 6, 32, and 39.

The Trustee seeks to recover approximately $20,634,958 from Delta Bank. Complaint at ¶¶ 39, 42. In Exhibit D to his Complaint, the Trustee identified 52 alleged subsequent transfers to Delta Bank, 35 of which occurred prior to December 12, 2006—at least two years prior to the December 12, 2008 appointment of a receiver of BLMIS' assets. Complaint at Ex. D. These 35 alleged subsequent transfers comprise approximately $12,244,735, or roughly 59% of the $20,634,958 sought by the Trustee in the Complaint. Any underlying initial transfer to Fairfield Sentry relevant to this set of 35 alleged transfers necessarily occurred on or before December 12, 2006. As a result, the alleged initial transfers totaling $12,244,735 are not subject to avoidance under Section 548(a)(1)(A), and cannot be recovered from Delta Bank as a matter of law.

## II.    This Court's *Cohmad* Decision

On April 15, 2013, this Court issued its opinion and order in *Cohmad*. 2013 WL 1609154. Delta Bank's proposed appeal relates to two holdings from that decision.

*First*, this Court held that actual knowledge of the underlying BLMIS fraud by a transferee defendant precluded *that defendant* from invoking the statutory safe harbor established pursuant to Section 546(e). Specifically, this Court

-5-

concluded that "while Section 546(e) generally applies to the adversary proceedings
brought by the Trustee, those defendants who claim the protections of Section 546(e)
through a Madoff Securities account agreement but who actually knew that Madoff
Securities was a Ponzi scheme are not entitled to the protections of the Section
546(e) safe harbor." *Id.* at *10. The rule set forth by this Court related to the
knowledge of the transferee raising the defense. "In sum, if the Trustee sufficiently
alleges that the transferee from whom he seeks to recover a fraudulent transfer knew
of Madoff Securities' fraud, that transferee cannot claim the protections of Section
546(e)'s safe harbor." *Id.* at *7. This rule was applied to both initial and subsequent
transferees. *Id.*

   *Second*, the Court held that securities contracts between an initial
transferee and a subsequent transferee provided an alternative basis for a defendant
without knowledge of the fraud to invoke the safe harbor. The Court noted that
Section 546(e)'s requirement that the alleged initial transfers be made "in connection
with" a valid "securities contract" is "broad" and simply means "related to." *Id.* at
*9. *See Picard* v. *Ida Fishman Revocable Trust*, 773 F.3d 411, 422 (2d Cir. 2014)
("*Fishman*") ("Section 546(e) sets a low bar for the required relationship between
the securities contract and the transfer sought to be avoided."). In *Cohmad*, this
Court determined that a financial participant investor (like Delta Bank) seeking
redemption of its investment under the terms of an investment contract is a "situation

[that] appears to fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at \*9. "Redemption requests" were identified as falling within the definition of "securities contract." *Id.* at \*8. This Court held that "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, the Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion." *Id.* at \*10.

## III.    Delta Bank's Motion to Dismiss

On April 29, 2022, Delta Bank moved to dismiss the Trustee's claim pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). *See* ECF No. 98. Among other arguments, Delta Bank moved to dismiss, pursuant to Section 546(e), the Trustee's claim with respect to the set of alleged initial transfers made on or prior to December 12, 2006. *See* Motion at p. 15-21.

Delta Bank argued that the safe harbor applied because (i) the payments at issue were made by a stockbroker (*i.e.*, BLMIS), (ii) both the contracts between BLMIS and Fairfield Sentry and also Delta Bank's separate redemption requests to Fairfield Sentry constituted "securities contracts" under Section 546(e), and (iii) the alleged transfers were made "in connection with" valid securities contracts, whether the contracts between BLMIS and Fairfield Sentry or the separate redemption requests by Delta Bank to Fairfield Sentry. *See* Motion at p. 16-20. Because such

initial transfers were not avoidable as a matter of law, Delta Bank argued that

Trustee's claim under Section 550(a) must be dismissed as to any alleged subsequent

transfers predating December 12, 2006.

On June 24, 2022, the Trustee filed his Memorandum of Law in

Opposition (the "Opposition"). *See* ECF No. 100. The Opposition did not contest

that the payments were made by a stockbroker, that the contracts between BLMIS

and Fairfield Sentry or the redemption requests Delta Bank made to Fairfield Sentry

constituted "securities contracts" within the meaning of Section 546(e), or that the

alleged transfers were made "in connection with" securities contracts. Rather, in his

Opposition the Trustee argued that "[n]one of this matters" because the Bankruptcy

Court "previously found that that Trustee has sufficiently pled that the initial

transferee [Fairfield] Sentry had actual knowledge of Madoff's fraud and that such

initial transfers are avoidable." Opposition at p. 23. The Trustee argued that

*Cohmad* precluded Delta Bank's reliance on the Section 546(e) safe harbor.

Opposition at p. 24-28. With respect to the separate redemption requests identified

by Delta Bank, the Trustee argued that, under *Cohmad*, Section 546(e) does not

provide an independent safe harbor for recovery actions against subsequent

transferees. Opposition at p. 26.

On July 25, 2022, Delta Bank filed its Reply Memorandum (the

"Reply"). *See* ECF No. 102. Delta Bank argued, among other things, that *Cohmad*

does *not* stand for the proposition that alleged knowledge of an initial transferee
creates a blanket "exception" to the application of Section 546(e), and that the
knowledge of the party seeking the protection of the safe harbor is the relevant
inquiry under *Cohmad*. Reply at p. 7. Delta Bank further argued that the Trustee's
interpretation would undermine the purpose of the safe harbor by preventing market
participants from relying on what they understood to be valid securities contracts.
Reply at p. 7-8. Delta Bank asserted that such an interpretation would prevent *any*
subsequent transferee that received money from a BLMIS feeder fund from relying
on what they understood to be valid securities contracts, regardless of how far
removed they were from BLMIS' fraud. Reply at p. 8.

## IV.    The Bankruptcy Court's Decision and Order

On August 12, 2022, the Bankruptcy Court issued its Memorandum
Decision denying Delta Bank's motion to dismiss, including with respect to transfers
predating December 12, 2006 ("Decision"). *See* ECF No. 105. The Bankruptcy
Court found that the Complaint "contains credible allegations demonstrating that
Fairfield Sentry had actual knowledge that BLMIS was not trading securities."
Decision at p. 11.[2]    The Bankruptcy Court noted that this Court in *Cohmad*

---

[2] In the barebones Complaint against Delta Bank, the Trustee incorporates by
reference an amended complaint (of 217 pages) he filed against Fairfield Sentry (the
"Fairfield Amended Complaint"). The Fairfield Amended Complaint does not
mention Delta Bank.

determined that "those *defendants who claim the protections of Section 546(e)* through a Madoff Securities account agreement *but who actually knew that Madoff Securities was a Ponzi scheme* are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." Decision at p. 11-12 (quoting *Cohmad*, 2013 WL 1609154, at \*10) (emphasis added). As the Trustee alleges no knowledge on the part of Delta Bank, it is Fairfield Sentry's knowledge—imputed to Delta Bank—on which the Bankruptcy Court relied.

Following this analysis, the Bankruptcy Court concluded that "[t]his Court has no discretion to reconsider this issue, agrees with the [D]istrict [C]ourt's reasoning, and finds its holding consistent with dicta set forth by the Court of Appeals for the Second Circuit." Decision at p. 12. The Bankruptcy Court did *not* address Delta Bank's arguments that (a) *Cohmad* requires courts to look to the alleged knowledge of the transferee raising the safe harbor, and (b) the redemption requests between Delta Bank and Fairfield Sentry constitute separate "securities contracts" supporting the application of the safe harbor. Decision at p. 10-13.

On August 23, 2022, the Bankruptcy Court issued the Order denying the Motion.

## V.    Other Proceedings Against Alleged Subsequent Transferees

The Bankruptcy Court has issued numerous opinions denying motions to dismiss filed by other subsequent transferees, including many motions that invoked Section 546(e).  Given the common allegations made by the Trustee, the grounds for the Bankruptcy Court's denial of Delta Bank's motion to dismiss with respect to pre-December 12, 2006 transfers have generally been applied in other adversary proceedings.[3]  Several subsequent transferee defendants have also moved for leave to appeal the denial of their respective motions to dismiss, with two such motions scheduled to be heard by this Court (Rakoff, J.) on September 20, 2022.[4]

## **ARGUMENT**

Delta Bank should be granted leave to appeal the Order.  Appeals from non-final bankruptcy court orders may be taken with leave under 28 U.S.C. § 158(a)(3).  Courts apply the standard set forth in 28 U.S.C. §1292(b), and consider three prongs.  *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) ("*Enron*").  The order

---

[3] *See, e.g., Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 2022 WL 2137073, at *8-10 (Bankr. S.D.N.Y. June 13, 2022); *Picard v. Banque Syz & Co., SA (In re Madoff)*, 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022).

[4] *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR; *Picard v. Banque Syz & Co., SA*, No. 22-cv-6512-JSR.

being appealed must "(1) involve a controlling question of law (2) over which there

is substantial ground for difference of opinion," and the movant must show that "(3)

an immediate appeal would materially advance the ultimate termination of the

litigation." *Enron*, 2006 WL 2548592, at *3.  Leave to appeal is warranted when the

movant demonstrates the existence of "exceptional circumstances" that overcome

the "general aversion to piecemeal litigation" and "justify a departure from the basic

policy of postponing appellate review until after the entry of a final judgment." *Id.*

Delta Bank's proposed appeal satisfies all three prongs.  Moreover, exceptional

circumstances exist because the questions presented have significant implications

for the many other adversary proceedings.

## I.    Whether and How Section 546(e) Applies Are Controlling Questions of Law.

"In regard to the first prong, the 'question of law' must refer to a 'pure'

question of law that the reviewing court could decide quickly and cleanly without

having to study the record." *Id.* at *4 (citation omitted).  "The question must also be

'controlling' in the sense that reversal of the bankruptcy court's order would

terminate the action, or at a minimum that determination of the issue on appeal would

materially affect the litigation's outcome." *Id.*  A question need not conclude the

entire litigation to be "controlling." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d

21, 24 (2d Cir. 1990). *See also MF Global Holdings, Ltd. v. Allied World Assurance

Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y. 2017)

(Rakoff, J.) ("Though it would not terminate the action, appeal of this issue presents a pure question of law that could be quickly resolved and would provide important guidance for similarly situated parties. It thus presents a controlling question of law."). "It is enough that the Court's determination 'could significantly affect the conduct of the action.'" *In re General Motors LLC Ignition Switch Litg.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) (citation omitted). *See N.Y. Racing Ass'n v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997) ("It only has to be an issue that could materially affect the outcome of the case."). Both aspects of this prong are easily satisfied here.

*First*, the questions presented here can be resolved through the clarification of the legal principles set forth in *Cohmad*, and neither involves a factual dispute. As to the first question presented, the Complaint does not include a single allegation about Delta Bank's knowledge of or involvement in the Madoff fraud. As to the second question, the Complaint alleges facts which would establish that the initial transfers relevant to this Action "relate to" Delta Bank's redemption requests to Fairfield Sentry. *See, e.g.*, Complaint at ¶ 6 (alleging that Delta Bank "received transfers of Customer Property by withdrawing money from Fairfield Sentry"); Complaint at ¶ 28 ("It was essential for BLMIS to *honor requests for payments* in accordance with the falsely inflated account statements.") (emphasis added).

The Trustee's Opposition confirms that this appeal involves purely legal questions. Rather than addressing the undisputed facts raised by Delta Bank, the Opposition instead states that "[n]one of this matters" and that "[s]uch information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's knowledge of fraud at BLMIS, not Delta's knowledge as a subsequent transferee." Opposition at p. 23. The Opposition similarly waves away Delta Bank's reliance on its redemption requests to Fairfield Sentry as a separate basis for the safe harbor as inconsistent with *Cohmad*. Opposition at p. 27-28.

*Second*, the questions of law presented here are also "controlling" because a decision reversing the Bankruptcy Court's application of Section 546(e) on either ground would foreclose the majority of the Trustee's claim against Delta Bank. The Trustee seeks to recover 52 alleged subsequent transfers totaling approximately $20,634,958 in this Action. Complaint at ¶ 2. Per the Trustee's own Complaint, specifically Exhibit D thereto, 35 of those alleged transfers comprising $12,244,735 of the total amount claimed (approximately 59%) occurred prior to December 12, 2006. Complaint at Ex. D. Any initial transfer relevant to these 35 alleged subsequent transfers could not be recovered as a matter of law under the correct application of Section 546(e). Reducing the scope of the solitary claim by

more than half will plainly "affect the conduct" of the parties, and reversal would "materially affect" the outcome of this case.

## II.    The Bankruptcy Court's Misinterpretation of *Cohmad* Provides Substantial Ground for a Difference of Opinion on the Application of Section 546(e).

"As to the second prong, the 'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4 (citation omitted). "The district court must analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Id.* (internal quotation omitted). The language and reasoning used by this Court in *Cohmad* provide substantial support for a conclusion opposite to that reached by the Bankruptcy Court.

*First*, the Bankruptcy Court concluded that a subsequent transferee's knowledge is irrelevant once the knowledge of the initial transferee is established. This is inconsistent with the plain language of *Cohmad*, which distinguished between innocent and tainted transferees. "[I]f the allegations adequately allege that a defendant had actual knowledge of Madoff's scheme, such a transferee *stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e).*" 2013 WL 1609154, at *4 (emphasis added). This Court analyzed

the knowledge of both initial transferees and subsequent transferees: "[T]he Trustee must show, at a minimum, that *the transferee* had actual knowledge that there were no actual securities transactions being conducted. Applying these principles, *the Court first turns to the initial transferees and then to subsequent transferees*." *Id.* at *4-5 (emphasis added). The Bankruptcy Court concluded that this discussion foreclosed application of the safe harbor to any defendant where the initial transferee had knowledge of the fraud. This Court's distinction between innocent transferees and those with knowledge of the fraud is destroyed if the inquiry stops with the initial transferee.

    *Second,* the Bankruptcy Court fashioned a significantly more expansive rule limiting the applicability of Section 546(e), purporting to base this rule on the specific and limited caveat identified in *Cohmad*. This Court discussed how a subsequent transferee may itself raise Section 546(e), and identified one caveat: "[T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, *that subsequent transferee* cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* at *7 (emphasis added). This single caveat was based on the knowledge of the defendant invoking the safe harbor. The Bankruptcy Court interpreted this caveat to foreclose the availability of the safe harbor to all subsequent transferees—innocent or otherwise—if an initial transferee knew about the fraud. Nothing in

*Cohmad* supports the leap to a bright-line rule eliminating the safe harbor for all

defendants if the initial transferee had knowledge of fraud. Given its impact, this

extension of the caveat should not be lightly inferred, and one would expect this

Court to have expressly proclaimed such a rule had it been intended.

   *Third*, the Bankruptcy Court's extension of this caveat has the effect of

creating a fraud or Ponzi scheme exception to Section 546(e), a concept which was

specifically rejected by this Court. In *Cohmad*, this Court reaffirmed "its

determination that there is no Ponzi scheme or fraud 'exception' to Section 546(e)."

*Id.* at *3. The Bankruptcy Court's decision carves out an exception to Section 546(e)

any time an initial transferee is part of the fraudulent scheme. That conclusion

excepts most if not all BLMIS-related adversary proceedings from the safe harbor.

It likely eliminates the safe harbor for many other Ponzi scheme fact patterns. Under

this interpretation, any litigation against a subsequent transferee in which an initial

transferee knew of the fraud (or was part of the scheme) falls entirely outside the

scope of Section 546(e), regardless of what the defendants knew. This is a fraud

exception.

   *Fourth*, the Bankruptcy Court's decision is inconsistent with the

purpose underlying Section 546(e). In *Cohmad*, this Court clarified the purpose of

the provision:

> As the [Second Circuit] noted in *Katz*, the purpose of this section is
> 'minimiz[ing] the displacement caused in the commodities and

securities markets in the event of a major bankruptcy affecting those industries.' In the context of Madoff Securities' fraud, ***that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but <u>a transferee who had actual knowledge of the Madoff 'Ponzi' scheme</u> did not have any such expectation***, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of securities markets and the reasonable expectations of legitimate investors.

*Id.* at \*4 (quoting *Picard* v. *Katz*, 462 B.R. 447 (S.D.N.Y. 2011) (internal citations omitted; emphasis added).

*See also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ("Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated market by limiting creditors' rights.").

In *Cohmad*, this Court explained, "where the Trustee has adequately alleged that these defendants had . . . actual knowledge of Madoff's scheme" then "the fact that these defendants signed account agreements is meaningless for purposes of Section 546(e)" because the parties knew "that the transfers could not have been made in connection with an actual 'securities contract.'" 2013 WL 1609154, at \*3. In other words, a party with knowledge of the fraud did not actually rely on a valid securities contract. The public policy underlying the safe harbor is not furthered in such circumstances. By contrast, eliminating access to the safe harbor for innocent subsequent transferees undermines the purpose underlying Section 546(e). If a party to a contract without knowledge of a fraud believed that

contract was valid and made investment decisions in reliance upon it, then stable financial markets are promoted by respecting that contract. *See Fishman*, 773 F.3d at 420 (Second Circuit explained that "[p]ermitting the clawback of millions, if not billions of dollars from BLMIS clients … would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e).")

*Fifth*, the Bankruptcy Court did not address Delta Bank's argument that its redemption requests with Fairfield Sentry provide an alternative basis for application of the safe harbor. This Court determined that requests to redeem an investment pursuant to an investment contract "appears to fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. Delta Bank demonstrated in its Motion that the facts alleged by the Trustee establish that the alleged initial transfers relevant to a claim against Delta Bank occurred in connection with redemption requests. Motion at p. 18-20; Reply at p. 3-4, 8-9. The Trustee's Opposition did not contest this point, instead offering only that "[n]one of this matters." Opposition at p. 23. Delta Bank's separate contracts with Fairfield Sentry *do* matter given this Court's holding that such contracts can support the safe harbor. The Bankruptcy Court's failure to address this aspect of Delta Bank's argument reflects a separate shortcoming of the Order warranting reversal.

Thus, as to both issues presented for appeal, there is "substantial ground

for difference of opinion." *See* 28 U.S.C. § 1292(b). Those differences can be

resolved through clarification of the principles expressed in *Cohmad*.

## III. Immediate Appeal Will Materially Advance the Termination of this Action by Reducing the Scope of Discovery and Relevant Factual Issues.

"Finally, in regard to the third prong, immediate appeal is considered

to advance the ultimate termination of the litigation if that appeal promises to

advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL

2548592, at *4 (citation omitted). "Courts place particular emphasis on the

importance of this last factor." *Id.* Reducing the scope of the claims and issues

under dispute based on resolution of a legal question materially advances the

litigation. *See Capitol Records*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013)

(determining that immediate appeal materially advanced the termination of litigation

where the question presented addressed whether "a large swap of those 332 instances

of infringement" are covered by a safe harbor, such that "many of those 332

instances of infringement would be dismissed"); *see also United States ex rel.

Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 279

(E.D.N.Y. 2021) (dismissal of action "at least in substantial part" would "advance

the trial schedule and expedite the litigation").

Reversing the Bankruptcy Court's Order would eliminate roughly 59%

of the alleged subsequent transfers at issue. Discovery would pertain to 17 alleged

transfers, rather than 52. Resolution of facts and issues pertaining to a smaller universe of transfers requires the production of fewer documents, less expert discovery, and fewer depositions prior to trial. Fewer issues would be raised via summary judgment. These impacts, taken together, would streamline the overall footprint of the Action and make it easier for the parties to efficiently proceed to trial, if required. Any trial would have a more targeted scope. Indeed, clarifying the transfers potentially recoverable at trial reduces the likelihood trial will be required at all by more accurately framing the values assigned by the parties to their respective positions. Prompt resolution of this Action can only be furthered by answering the legal questions presented.

## IV.   The Numerous Other Adversary Proceedings Establish Exceptional Circumstances Warranting an Immediate Appeal.

Based on consideration of these three prongs, "leave to appeal is warranted only when the movant demonstrates the existence of exceptional circumstances." *Enron*, 2013 WL 2548592, at *3. A key consideration is how granting leave to appeal can impact other cases beyond the immediate one. *Klinghoffer*, 921 F.2d at 24.

The broad set of BLMIS-related actions filed by the Trustee against subsequent transferees, just now entering discovery nearly 14 years after the fall of Bernie Madoff, presents a paradigmatic example of "exceptional circumstances." The Trustee has brought approximately 80 adversary proceedings against

subsequent transferees, each to be separately briefed.  Defendants in many of these proceedings seek to dismiss the claims against them with respect to alleged transfers predating December 12, 2006.  The statutory safe harbor should foreclose recovery based on those transfers as a matter of law, as to any defendant not alleged to have known about Madoff's fraud.  No inquiry into the facts would be required.

Resolution of the questions presented here by reversing the Bankruptcy Court would clarify and streamline the sprawling universe of BLMIS-related adversary proceedings, similar to the implications for the present Action described above.  *See* P. 18-19, *supra.*  This further favors appeal.  *See Federal Housing Finance Agency* v. *UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (noting that an appellate ruling would "remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases," was "likely to significantly affect the parties' bargaining positions," and could "hasten the termination of litigation through settlement").  In the case of 17 pending adversary proceedings, reversal would result in complete dismissal of claims seeking more than $700 million because all alleged transfers predate December 12, 2006.  *See Picard* v. *Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C.  In the case of another 41 adversary proceedings, including this one, the majority of the alleged subsequent

transfers predate the petition date by at least two years; application of the safe harbor would reduce these potential claims in the aggregate by more than $1.1 billion. *Id.*[5]

The impact on the orderly resolution of the BLMIS adversary proceedings from an immediate answer to the questions presented here far outweighs the downside of considering the appeal of a non-final order. Interlocutory appeal is both appropriate and necessary to bring the BLMIS-related litigation towards its ultimate conclusion.

## CONCLUSION

For the foregoing reasons, Delta Bank should be granted leave to appeal from the Bankruptcy Court's Order. Upon such appeal, the Order should be reversed and the Claim should be dismissed as to those alleged initial transfers that occurred prior to December 12, 2006.

---

[5] Exhibit C to Multi-Strategy Fund Ltd.'s motion for leave to appeal did not report the full amount of transfers in this Action that reversal of the order would place beyond the Trustee's reach. Exhibit D to the Complaint sets forth the set of relevant alleged transfers sought by the Trustee in this Action.

Dated:        September 6, 2022

Respectfully submitted,

/s/ *James L. Bromley*
James L. Bromley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
bromleyj@sullcrom.com

*Attorney for Delta National Bank and
Trust Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Fed R. Bankr. P.

8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R.

Bankr. P. 8015(g), this document contains 5,117 words, according to the word-count

function of the word-processing system used to prepare the document.

2.      This document complies with the typeface of requirements of

Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P.

8015(a)(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Word in 14-point Times New Roman font.


Dated:          September 6, 2022

                              Respectfully submitted,

                              <u>/s/ *James L. Bromley*            </u>