**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01202 (CGM) |
| Plaintiff, | |
| v. | |
| BANK VONTOBEL AG f/k/a BANK J. VONTOBEL & CO. AG and VONTOBEL ASSET MANAGEMENT INC., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................4

II.   DEFENDANTS AND THEIR INVESTMENTS IN THE FAIRFIELD FUNDS..............5

ARGUMENT ..........................................................................................................6

I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BANK
      VONTOBEL ..................................................................................................6

      A.    Defendant Bank Vontobel Purposefully Availed Itself of the Laws and
            Privileges of Conducting Business in New York by Investing in the
            Fairfield Funds .................................................................................9

            1.    Bank Vontobel's Intentional Investments with BLMIS through the
                  Fairfield Funds Establish Minimum Contacts ..............................9

                  a.    *BLI* and Recent Decisions of this Court Establish
                        Jurisdiction......................................................................11

                  b.    Bank Vontobel's Argument that the Trustee is Relying
                        Solely on the Unilateral Activity of the Fairfield Funds is
                        Misplaced ........................................................................12

            2.    The Forum Selection and Choice of Law Clauses in the
                  Subscription Agreements Are Strong Jurisdictional Contacts...................14

            3.    Bank Vontobel's Purposeful Use of New York Bank Accounts
                  Supports Specific Jurisdiction..................................................15

            4.    Bank Vontobel's Additional Contacts with New York in
                  Connection with Its Investments also Establish Minimum Contacts.........17

            5.    Bank Vontobel's Contacts with the Forum are Sufficiently Related
                  to the Trustee's Claims .........................................................18

            6.    Bank Vontobel's Remaining Arguments against Jurisdiction Are
                  Unavailing..............................................................................19

      B.    The Exercise of Personal Jurisdiction over Bank Vontobel is Reasonable ...........21

      C.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery .................22

II.     THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS THE
        AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS ...................... 23

III.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS ................... 27

        A.     The Fairfield Funds Had Actual Knowledge of Madoff's Fraud .......................... 27

        B.     Section 546(e) Does Not Apply Independently to Recovery Actions ................... 28

IV.     THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT
        DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER
        SECTION 550(a) ........................................................................................................... 31

        A.     Defendants Misstate the Trustee's Pleading Burden ............................................. 33

        B.     Defendants' Remaining Implausibility Arguments Fail on a Motion to
               Dismiss................................................................................................................... 35

V.      THE SECTION 550(b) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT
        BE RESOLVED AT THE MOTION TO DISMISS STAGE ........................................... 36

CONCLUSION .......................................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..............................................................32, 33

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996).........................................................................................8

*Am. Casein Co. v. Geiger (In re Geiger)*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................23

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008)....................................................................13

*Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)......................................................................15, 16, 18

*Ayyash v. Bank Al-Madina*,
  No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...................22

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
  640 B.R. 604 (S.D.N.Y. 2022).........................................................................15, 16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)......................................................................................6

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010).....................................................................38

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................................7, 8

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)..................................................................................7, 21

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................35

*DeMasi v. Benefico*,
  567 F. Supp. 2d 449 (S.D.N.Y. 2008)....................................................................26

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)........................................................................................6

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ..............................................................37, 38

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ............................................................................8

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) ........................................................................9

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
    No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............22

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd*
    *sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911
    (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) .........................................15

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ......................................................................26

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)........................................................................7, 18, 19, 20

*Giuliano v. Barch*,
    No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) .................21

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .............................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................7

*Hau Yin To v. HSBC Holdings plc*,
    No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).............................20

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................20

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009) .....................................................................25

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995)........................................................................21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)........................................................................................7, 8, 19

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ...........................................36

*Kelly–Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013)........................................................................................................37

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590 (Nov. 16, 2009)..................................22

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) .............................15

*Liberatore v. Calvino*,
293 A.D.2d 217 (N.Y. App. Div. 2002) ..................................................................................17

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012) .................................................................................................................16

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
843 F. Supp. 2d 191 (D. Mass. 2012) .....................................................................................24

*McGee v. Int'l Life Ins. Co.*,
335 U.S. 220 (1957)........................................................................................................................7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)...........................................................................................................8

*In re Motors Liquidation Co.*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017)......................................................................................16

*New Hampshire v. Maine*,
532 U.S. 742 (2001).....................................................................................................................15

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)..................25

*In re Old Carco LLC*,
454 B.R. 38 (Bankr. S.D.N.Y. 2011)........................................................................................35

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)........................................................................................................34

*Picard v. Avellino (In re BLMIS)*,
557 B.R. 89 (Bankr. S.D.N.Y. 2016).........................................................................................38

*Picard v. Banca Carige S.P.A.*,
Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
30, 2022) ............................................................................................................... *passim*

v

*Picard v. Banque Cantonale Vaudoise*,
Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
14, 2022) ................................................................................................ *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
30, 2022) ................................................................................................ *passim*

*Picard v. Banque Syz & Co., SA*,
Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
14, 2022) ................................................................................................ *passim*

*Picard v. Barclays Bank (Suisse) S.A., et al.*,
Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
15, 2022) ................................................................................................ *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................... *passim*

*Picard v. Bordier & Cie*,
Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
30, 2022) ................................................................................................ *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) .................................. 11, 12, 14, 20

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
2012) .......................................................................................................... 32

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021) ........................................................ 4, 26, 37

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...................................... 23, 30, 36

*Picard v. Delta Nat'l Bank and Trust Co.*,
Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
12, 2022) ................................................................................................ *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................................ 30

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................ 7, 8, 18

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
2021) ......................................................................................................................... *passim*

*Picard v. First Gulf Bank*,
Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
18, 2022) ................................................................................................................... *passim*

*Picard v. Lloyds TSB Bank PLC*,
Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
30, 2022) ................................................................................................................... *passim*

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) .......................................................................7, 10, 21

*Picard v. Mayer (In re BLMIS)*,
Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
27, 2021) .................................................................................................................................32

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
10, 2022) ................................................................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) .......................................................................37, 38, 39

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................................31, 32, 33, 36

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) .................................................................................36

*Picard v. Multi-Strategy Fund Ltd.*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ....................................................................... *passim*

*Picard v. Parson Finance Panama S.A.*,
Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
2022) ......................................................................................................................... *passim*

*Picard v. Picard v. Pub. Inst. for Soc. Sec.*,
Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
17, 2022) ................................................................................................................... *passim*

*Picard v. Shapiro (In re BLMIS)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................................................34

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*,
  Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
  18, 2022) ................................................................................................................ *passim*

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)....................................................................................10, 22, 29

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*,
  2 F. Supp. 2d 470 (S.D.N.Y. 1998) ...............................................................................21

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).............................................................................................27

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010).............................................................................................7

*Sapia v. Home Box Off., Inc.*,
  No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ...................34

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015).........................................................................28

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...............36, 37, 38, 39

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).................27, 29, 30, 31

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007)...........................................................................24

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007)...............................................................................33

*SIPC v. BLMIS (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. 2013)...............................................................................24, 26, 29

*In re Sledziejowski*,
  2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ...............................................17

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)......................................................................................19, 20

*Steinberg v. A Analyst Ltd.*,
  2009 WL 838989 (S.D. Fla. Mar. 26, 2009).................................................................13

*Suber v. VVP Servs., LLC*,
  2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021)..............................................................13

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ...................................................................30

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ..............................................................................................15

*In re Terrestar Corp.*,
    16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) ........................23

*Theraplant, LLC v. Makarechi*,
    2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .......................................................13

*Tymoshenko v. Firtash*,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .......................................................13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ...................................................................................8

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................................25

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014) ....................................................................37

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................17, 19

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) .................................................................................21

**Statutes**

11 U.S.C. § 544 .............................................................................................................28

11 U.S.C. § 545 .............................................................................................................28

11 U.S.C. § 546(e) ..................................................................................................*passim*

11 U.S.C. § 547 .............................................................................................................28

11 U.S.C. § 548(a) .........................................................................................................26

11 U.S.C. § 548(a)(1)(A) .........................................................................................27, 29

11 U.S.C. § 548(a)(1)(B) ...............................................................................................28

11 U.S.C. § 548(b) .........................................................................................................28

11 U.S.C. § 548(c) .........................................................................................................37

11 U.S.C. § 550 ................................................................................................................26, 28, 29

11 U.S.C. § 550(a) ...................................................................................................... *passim*

11 U.S.C. § 550(a)(2) ...................................................................................................................35

11 U.S.C. § 550(b) ...............................................................................................2, 3, 37, 39

11 U.S.C. § 550(d) ...................................................................................................................35

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................1, 2, 26

Fed. R. Civ. P. 8(a)(2) ...................................................................................................................23

Fed. R. Civ. P. 9 ...................................................................................................................1, 2

Fed. R. Civ. P. 9(b) ...................................................................................................................23

Fed. R. Civ. P. 10 ...................................................................................................................25

Fed. R. Civ. P. 10(c) ...............................................................................................................23, 24

Fed. R. Civ. P. 12(h) ...................................................................................................................1

NY CPLR § 302 ...................................................................................................................13

NY CPLR § 302(a)(3) ...................................................................................................................13

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and declaration of Chardaie C. Charlemagne

("Charlemagne Decl." or the "Declaration"), in opposition to the motion to dismiss the Complaint

pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6) of defendants Bank

Vontobel AG f/k/a Bank J. Vontobel & Co. AG ("Bank Vontobel") and Vontobel Asset

Management Inc. ("Vontobel Management") (together, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover at least $26,901,311 in subsequent transfers that Defendants received from Fairfield Sentry

Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, the "Fairfield

Funds"). Defendants for years invested in BLMIS through the Fairfield Funds and other BLMIS

feeder funds—investment funds created for the express purpose of funneling their investors'

money to BLMIS in New York. Nonetheless, Defendant Bank Vontobel argues that the claims

against it should be dismissed because this Court lacks jurisdiction over it.[1] Defendants further

move to dismiss the Trustee's Complaint based on the purported:  (i) violation of FRCP 8 and 9

through the incorporation by reference of the Trustee's initial transfer complaint against the

Fairfield Funds to plead avoidability of the initial transfers in the Complaint;[2] (ii) bar to recovery

---

[1] By not arguing otherwise, Vontobel Management has conceded that this court has jurisdiction over it. *See* FRCP 12(h).

[2] *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.").

provided by the Section 546(e) safe harbor; (iii) failure to sufficiently allege that Defendants received transfers of customer property; and (iv) entitlement of Defendants to the good faith defense under Section 550(b).  These same arguments, however, have already been rejected by this Court in numerous other subsequent transfer cases.[3]  For the reasons set forth below, Defendants' arguments likewise fail.[4]

First, there is no question that this Court has personal jurisdiction over Defendant Bank Vontobel.  Bank Vontobel purposefully invested in the Fairfield Funds knowing that BLMIS in New York was the *de facto* investment manager, broker dealer, and custodian of the Fairfield Funds' investments.  Bank Vontobel knew that the Fairfield Funds fed substantially all of their assets into BLMIS and that BLMIS was essential to the funds' investments.  Investing in BLMIS was the entire point.  Bank Vontobel also designated and used United States bank accounts in New York to deposit funds and receive transfers.  These facts, plus additional contacts detailed herein, establish jurisdiction.

Second, consistent with FRCP 8 and 9, the Trustee's Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief, and its incorporation by reference of the

---

[3] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. Picard v. Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*"); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ("*Union Sec.*").

[4] Defendants' Memorandum of Law in Support of their Motion to Dismiss is referred to herein as the "Motion."

Fairfield Amended Complaint is appropriate under the Federal Rules to demonstrate the avoidability of the initial transfers from BLMIS.[5]  In any event, this Court may take judicial notice of the operative Second Amended Complaint and its opinion in *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), holding that the Trustee had plausibly alleged the avoidability of the initial transfers from BLMIS.

Third, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of Madoff's fraud, and therefore, under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendants.  Defendants' argument—that the Trustee must plead Defendants' actual knowledge as opposed to that of Sentry—misinterprets and directly conflicts with precedent in this case.

Fourth, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants.  The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendants.  Nothing more is required at this stage of the litigation.

Finally, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate to assert on a motion to dismiss.  As this Court found in *Banque Syz* and other recent cases, it is Defendants' burden to plead this affirmative defense in an answer and prove it with evidence.  Defendants cannot

---

[5] After the Trustee filed his Complaint against Defendants, the Trustee filed a Second Amended Complaint (the "Second Amended Complaint") against the Fairfield Greenwich Group defendants.  *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

establish their purported good faith on the face of the Complaint.  2022 WL 2135019, at *11; *see also*, *e.g.*, *First Gulf*, 2022 WL 3354955, at *11.

For these reasons, as further detailed below, the Trustee respectfully requests that the Court deny Defendants' Motion.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Compl. ¶¶ 26, 34, ECF No. 1.[6]  BLMIS was registered as a securities broker-dealer with the U.S. Securities and Exchange Commission (the "SEC").  *Id.* ¶ 26.  BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.*  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 27-28.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶¶ 29-33.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶¶ 12, 34-35.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' monies into BLMIS.  *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021).  Each of the Defendants invested in one or both of the Fairfield Funds, which they knew were BLMIS feeder funds.  Compl. ¶¶ 2, 6-7, 58, 60, 62.

---

[6] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Bank Vontobel AG, et al.*, Adv. Pro. No. 12-01202 (CGM) (Bankr. S.D.N.Y.).

Defendant Bank Vontobel also knowingly invested in BLMIS through other feeder funds, including Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds").[7] Compl. ¶¶ 2, 44, 49.

## II.  DEFENDANTS AND THEIR INVESTMENTS IN THE FAIRFIELD FUNDS

Defendants are and were, during the relevant period, subsidiaries of Vontobel Holding AG, a Swiss independent private bank and international asset manager.  Compl. ¶ 3; Charlemagne Decl., Ex. 1.  Defendants began investing with the Fairfield Funds in the mid-1990s.  Charlemagne Decl., Ex. 2.  The Fairfield Funds were managed and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York.  Compl. ¶ 7; *Fairfield Inv. Fund*, 2021 WL 3477479, at *9.  Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS.  Compl. ¶ 2; Fairfield Am. Compl. ¶¶ 52, 318.  Sigma acted as a foreign currency feeder fund, facilitating Euro investments with BLMIS and investing all of its assets with Sentry.  Compl. ¶ 2; Fairfield Am. Compl. ¶ 52.

As was required for investors in the Fairfield Funds, Defendants entered into one or more subscription agreements with Fairfield Sentry.  Compl. ¶ 7.  In these agreements, Defendants acknowledged their sophistication as a "professional investor" and agreed to New York choice of law, jurisdiction, and forum clauses.  Charlemagne Decl., Ex. 3.  The subscription agreements also incorporated the Fairfield Funds' Private Placement Memoranda ("PPMs"), and by signing, investors warranted that they had "received and read" a copy of the PPMs.  *Id*.  With respect to Sentry, as with other investors, Defendants sent subscription payments to and received redemptions from Sentry's bank account at HSBC in New York (the "HSBC USA Account").

---

[7] In light of the Trustee's settlement with the Kingate Funds and their related entities, the Trustee's claims seeking recovery of Kingate-related subsequent transfers were dismissed pursuant to a Stipulation and Order entered on April 25, 2022.  ECF No. 109.

Compl. ¶ 7; Charlemagne Decl., Exs. 3-5. Subscription payments were then deposited into BLMIS's account at JP Morgan Chase Bank in New York. *Fairfield Am. Compl.* ¶ 35. For receipt of redemptions, Bank Vontobel used a bank account in its own name at JPMorgan Chase Bank NA in New York. Charlemagne Decl., Exs. 6-24.

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA liquidation proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property. Compl. ¶ 52. In 2011, the Trustee settled with the Fairfield Funds. *Id.* ¶ 57. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* Sigma separately consented to a judgment in the amount of $752.3 million. *See Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), ECF No. 110 (Sigma Consent Judgment). As a feeder fund that invested in BLMIS indirectly through Sentry, this $752.3 million represents a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *Id*. The Trustee then commenced a number of adversary proceedings to recover the approximately $3 billion in missing customer property, including this one.

## <u>ARGUMENT</u>

## I.    **THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BANK VONTOBEL**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction")).

A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, (2021)) (emphasis in original). Specific jurisdiction, however, does not require "proof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id.* at 88 (emphasis added). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Multi-Strategy*, 641 B.R. at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque Syz*, 2022 WL 2135019, at *4 (same); *Carige*, 2022 WL 2387522, at *3 (same). Moreover, minimum contacts

may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *4; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

Overall, rather than analyze each contact in isolation, the court must look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

A.   **Defendant Bank Vontobel Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in the Fairfield Funds**

Bank Vontobel had numerous contacts with New York that establish this Court's jurisdiction.  Bank Vontobel:  (1) purposefully targeted the New York securities market by investing in the Fairfield Funds (as well as the Kingate Funds[8]), knowing that their assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to their investments; (3) engaged in on-going communications with FGG in New York with respect to their investments; and (4) used New York banks to transact with Sentry.  Many of these contacts independently establish jurisdiction.  In their totality, they plainly establish that Bank Vontobel purposefully directed its activities to New York and the United States.  *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

1.   **Bank Vontobel's Intentional Investments with BLMIS through the Fairfield Funds Establish Minimum Contacts**

The Trustee's allegation that Bank Vontobel knowingly invested with BLMIS through the Fairfield Funds, alone, establishes a *prima facie* showing of jurisdiction over Defendant.  Compl. ¶ 6; *Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry…alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation."); *Lombard Odier*, 2022 WL 2387523, at *2 (same); *First Gulf*, 2022 WL 3354955, at

---

[8] This Court, in its recent Memorandum Decision in *Multi-Strategy*, stated that "allegations regarding the Defendant's investment in multiple BLMIS feeder funds lends support to the Trustee's allegations that Defendant purposefully invested in BLMIS."  *Multi-Strategy*, 641 B.R. at 87, n.2.

*2 (same); *Parson*, 2022 WL 3094092, at *2 (same); *Meritz*, 2022 WL 3273044, at 2 (same); *PIFSS*, 2022 WL 3458962, at *4 (same); *Union Sec.*, 2022 WL 3572509, at *3 (same).  As the Second Circuit recognized, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019) ("*ET Decision*"); *see also Maxam Absolute Return Fund*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that the funds it invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

By executing subscription agreements with Sentry and affirming that it received and read Sentry's PPMs, Bank Vontobel knew that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was registered with the SEC; (4) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills; (6) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (7) BLMIS was the custodian of Sentry's investments with BLMIS; and (8) BLMIS was "essential to the continued operations of" Sentry.[9] *See* Compl. ¶¶ 2, 7; Charlemagne Decl., Exs. 3, 5.

---

[9] Bank Vontobel likewise knew, when it invested in the Kingate Funds, that those investments were also being funneled to New York.  Kingate Global stated in its Information Memorandum that the fund's assets had been managed since its inception "by a New York based NASD registered broker-dealer…[utilizing] a 'split strike conversion' options strategy" and that such broker-dealer "invests primarily in the United States." *See* Charlemagne Decl., Ex. 25 at pp. ii, 2.

a.    ***BLI* and Recent Decisions of this Court Establish Jurisdiction**

Based on the demonstrated intent to invest with BLMIS in New York through the Fairfield

Funds, Judge Lifland concluded a number of years ago that investors like Bank Vontobel are

subject to personal jurisdiction in New York. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*,

480 B.R. 501, 516-518 (Bankr. S.D.N.Y. 2012) ("*BLI*"). It is perhaps unsurprising then, that Bank

Vontobel barely mentions this decision. Motion at 8. Here, as in *BLI*: (1) the Trustee's suit is

"based upon [the subsequent transferee's] investment of [more than ten million dollars] in Fairfield

Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit

therefrom" *BLI*, 480 B.R. at 506; and (2) Bank Vontobel was provided with PPMs and executed

subscription agreements establishing the investment's BLMIS-centric purpose. *Id*. at 507-08.

Similar to Bank Vontobel, BLI argued that its due process rights would be violated if it

were subjected to this Court's personal jurisdiction based on "isolated contacts" with the United

States and that it would be unfair to force it to defend itself in this forum for "simply having funds

which it invested in an entity outside of the United States and ultimately ended up in an account

located at BLMIS." *BLI*, 480 B.R. at 516-17. Judge Lifland rejected this argument as

"disingenuous" because BLI's investments "did not merely 'end up' in an account at BLMIS"

through "coincidence." *Id*. In fact, Judge Lifland found that BLI "purposefully availed itself of

the benefits and protections of New York Laws by knowing, intending and contemplating that the

substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New

York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

As confirmed by this Court's decisions in the past few months, *BLI* applies here. *See Multi-*

*Strategy*, 641 B.R. at 86-87, *Banque Syz*, 2022 WL 2135019, at *3-4; *Carige*, 2022 WL 2387522,

at *3; *Lombard Odier*, 2022 WL 2387523, at *3-4; *First Gulf*, 2022 WL 3354955, at *3-4; *Parson*,

2022 WL 3094092, at *3-5; *Meritz*, 2022 WL 3273044, at *3-4; *PIFSS*, 2022 WL 3458962, at *4-

5; *Union Sec.*, 2022 WL 3572509, at *3-4.  In those cases, as here, the Trustee asserted allegations

as to the purpose of the investment and the defendants' contacts with Sentry for ultimate

investment with BLMIS.  *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Banque Syz*, 2022 WL2135019,

at *3-4.  Based on those allegations, this Court found that "Defendant's alleged contacts with New

York [were] not random, isolated, or fortuitous."  *Multi-Strategy*, 641 B.R. at 87; *Banque Syz*,

2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523,

at *4; *First Gulf*, 2022 WL 3354955, at *4; *Parson*, 2022 WL 3094092, at *5; *Meritz*, 2022 WL

3273044, at *4; *Union Sec.*, 2022 WL 3572509, at *4.

Bank Vontobel is similarly situated to these defendants.  The Complaint, supplemented by

the Declaration, makes clear that Bank Vontobel knowingly directed its funds to be invested with

New York-based BLMIS and that this was the fundamental purpose of Bank Vontobel's Fairfield

Funds investments.  In short, Bank Vontobel "intentionally tossed a seed from abroad to take root

and grow as a new tree in the Madoff money orchard in the United States and reap the benefits

therefrom." *BLI*, 480 B.R. at 506.   As such, the foregoing cases are controlling and resolve Bank

Vontobel's personal jurisdiction defense without the need for inquiry into its additional U.S.

contacts.

### b.      Bank Vontobel's Argument that the Trustee is Relying Solely on the Unilateral Activity of the Fairfield Funds is Misplaced

In an effort to sidestep *BLI*, Bank Vontobel argues that the Trustee relies entirely on

Sentry's contacts with BLMIS as a basis for jurisdiction and by doing so grounds jurisdiction

solely on Bank Vontobel's ownership of Sentry shares.  Motion at 11-12.  Such an exercise of

jurisdiction by the Court would, according to Bank Vontobel, effect a "drastic expansion of U.S.

personal jurisdiction such that every investor in any foreign company may become amenable to

suit in any territory in the U.S. that the company does business."  *Id.* at 12-13.  But the Trustee is

not arguing that every investor should automatically be subject to jurisdiction in all forums where

its investment company happens to do business. Rather, under the facts of *this* case—where Bank

Vontobel has entered into subscription agreements with the Fairfield Funds expressly indicating

Bank Vontobel's intent to direct custody and control over all of its funds to a specific U.S. broker-

dealer in order to knowingly profit from the U.S. securities markets—such a defendant has

purposefully availed itself of the laws and protections of the United States.

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to

happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the

cases cited by Bank Vontobel are inapposite. *See In re Amaranth Natural Gas Commodities Litig.*,

587 F. Supp. 2d 513, 536–37 (S.D.N.Y. 2008) (jurisdiction denied because plaintiffs never actually

alleged that defendant directed any activity toward the United States); *Steinberg v. A Analyst Ltd.*,

2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (jurisdiction denied where plaintiff either did

not allege or made only a "bare assertion" that funds in which defendant invested had "assets,

accounts and management all located in New York," and there was no indication defendant knew

its redemptions were being made through New York); *Tymoshenko v. Firtash*, 2013 WL 1234943,

at *4 (S.D.N.Y. Mar. 27, 2013) (jurisdiction lacking where defendants did not "even kn[o]w" that

companies they invested in engaged in activities in the United States).[10]

Bank Vontobel's efforts to downplay its investments' New York destination as just an

unforeseeable consequence rather than a deliberate and purposeful targeting of the forum is the

same "disingenuous" argument this Court rejected in *BLI*. The Court should reject Bank

---

[10] *See also* Motion at 13, n.7 (citing various alter ego and veil piercing cases). Bank Vontobel also cites language
from *Suber v. VVP Servs., LLC*, 2021 WL 4429237, *9 (S.D.N.Y. Sept. 27, 2021), citing *Theraplant, LLC v.
Makarechi*, 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016), but these cases were both tort actions addressing the
"substantial revenue" requirement for out-of-state defendants under section 302(a)(3) of the New York Civil Practice
Law & Rules (the "CPLR"). They were not analyzing purposeful availment or the analogous "transacting business"
prong of CPLR section 302, and have nothing to do with Bank Vontobel's position.

Vontobel's invitation to ignore the reality of its activities—that they were intentionally directed into this forum in a specific effort to profit from conducting business in New York.

### 2.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements Are Strong Jurisdictional Contacts

Bank Vontobel's subscription agreements with the Fairfield Funds further support jurisdiction. *See Multi-Strategy*, 641 B.R. at 88 (finding defendant "irrevocably" submitted to the jurisdiction of New York courts when it signed its subscription agreements with the Fairfield Funds); *Banque Syz*, 2022 WL 2135019, at *5 (same); *Carige*, 2022 WL 2387522, at *5 (same); *Lombard Odier,* 2022 WL 2387523, at *5 (same); *First Gulf*, 2022 WL 3354955, at *5 (same); *Parson*, 2022 WL 3094092, at *5 (same); *Meritz*, 2022 WL 3273044, at *5 (same); *PIFSS*, 2022 WL 3458962, at *7 (same); *Union Sec.*, 2022 WL 3572509, at *5 (same).  Subscribers into Sentry submitted to venue in New York, the jurisdiction of the New York courts, the service of process from New York courts, and the application of New York law.  Compl. ¶ 7;  Charlemagne Decl., Exs. 3-4, 26-27.

Bank Vontobel argues that these provisions, and subscription agreements generally, are irrelevant to jurisdiction because the Trustee is not a party to the agreements and his claims do not arise under the subscription agreements.  Motion at 13-14.  But the Trustee is not arguing that this Court has jurisdiction based solely on Bank Vontobel's consent.  Rather, Bank Vontobel's agreements to be bound by New York law, New York jurisdiction, and New York venue show that Bank Vontobel purposefully directed its activities toward the forum and provide further strong jurisdictional contacts with New York.  For example, in *BLI*, the Court found that the choice of law and forum selection clauses in a Sentry subscription agreement "[f]urther evidenc[e] the strong nexus with New York."  480 B.R. at 517, n.15.  As such, contrary to Bank Vontobel's argument, this Court's prior decision in the Fairfield Chapter 15 liquidation proceedings, where the Fairfield

liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.[11] *See Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).

### 3.    Bank Vontobel's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

Without the benefit of any discovery from Defendants, the Trustee has identified documents confirming that Bank Vontobel repeatedly and intentionally used a bank account in its own name at JPMorgan Chase Bank NA in New York to receive its redemptions from Sentry. Charlemagne Decl., Exs. 6-24. That Bank Vontobel chose to use a U.S. bank account in New York to receive the transfers the Trustee seeks to recover confers jurisdiction over Bank Vontobel for purposes of recovering those transfers. *See Parson*, 2022 WL 3094092, at *4 (*citing Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022)). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70 & n.18.

---

[11] Though not necessary to the Court's analysis, we note that Bank Vontobel's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Motion at 13 n.8. Bank Vontobel cites no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

As this Court recently held, "Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita*, 549 B.R. at 71); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account" and its New York account gave it access to BLMIS through Sentry); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account).

The same reasoning applies to Bank Vontobel's use of the Fairfield Funds' HSBC USA Account for purposes of subscription payments. Compl. ¶ 7; Charlemagne Decl., Exs. 3-5. That the HSBC USA Account was correspondent does not change the analysis. Courts have held that the use of a correspondent bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful"). That the PPMs mandated that subscribers use the Fairfield Funds' New York Accounts is irrelevant because ultimately, Bank Vontobel "was free to accept or reject the proposed terms." *In re Arcapita*, 640 B.R. at 617-18 (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York

was dictated by agreement).[12]

### 4.    Bank Vontobel's Additional Contacts with New York in Connection with Its Investments also Establish Minimum Contacts

While a defendant's "physical presence in a forum is not a prerequisite to establishing jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092, at *5 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *Banque Syz*, 2022 WL 2135019 at *4. Meetings, telephone calls, and email communications can also be contributing factors for finding personal jurisdiction. *See Parson*, 2022 WL 3094092, at *4-5 (finding defendant's meetings in New York and email communications with FGG as evidence that Defendant purposefully availed itself of the benefits of doing business in the forum); *Meritz*, 2022 WL 3273044, at *4 (same); *PIFSS*, 2022 WL 3458962, at *14 (same); *Union Sec.*, 2022 WL 3572509, at *4 (same); *see also Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673(RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone calls, and video conferences with company in New York subjected defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 221 (N.Y. App. Div. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases). Bank Vontobel had similar U.S. contacts.

---

[12] Bank Vontobel barely engages with the Trustee's allegations concerning use of U.S. bank accounts and does not so much as mention this Court's recent holdings addressing same by similarly-situated defendants. Bank Vontobel instead lumps the issue into a general argument that the contacts identified by the Trustee are insufficient. *See* Motion at 14-15. In support of this proposition, Bank Vontobel cites *In re Sledziejowski*, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016), averring that "mere knowing receipt of funds in a bank account" does not establish jurisdiction. Motion at 15. This case, however, is distinguishable on its facts. In *In re Sledziejowski*, the court held that the transfer of funds by a third party from the United States to the defendant in Poland in connection with a loan agreement was not a contact relevant to specific jurisdiction because the transfer was not made by the defendant, contra the instant matter where subscription payments made by Bank Vontobel were sent to the HSBC USA Account and redemptions initiated by Bank Vontobel were sent to an account at JPMorgan Chase Bank NA in New York in its own name that Bank Vontobel so designated for the purpose. 2016 WL 6155929, at *7.

Bank Vontobel communicated regularly with FGG's New York personnel, including

Lourdes Barreneche, its designated Sentry relationship manager. Compl. ¶ 7; Charlemagne Decl.,

Exs. 28-33. Among these communications were direct requests by email and phone to FGG in

New York for further Sentry subscriptions in August 2003 (Charlemagne Decl., Exs. 30-31);

weekly and monthly Sentry and Sigma information updates sent by Barreneche to Bank Vontobel

by email (Charlemagne Decl., Ex. 32); and at least one in-person meeting with Madoff himself

and FGG (Charlemagne Decl., Ex. 33). These contacts support this Court's jurisdiction over Bank

Vontobel.

### 5.        Bank Vontobel's Contacts with the Forum are Sufficiently Related to the Trustee's Claims

Bank Vontobel argues that the Trustee's allegations with respect to forum contacts fail to

explain how the "communications/contacts with New York" relate to the Trustee's claims, once

again citing to the Court's holding as to subscription agreements in the Fairfield liquidators

Chapter 15 proceedings. Motion at 16. This Court's recent decisions and other applicable case

law, however, make clear that the Trustee's claims "arise out of or relate to" Bank Vontobel's

contacts with the United States. As the Supreme Court recently held, the "arise out of or relate to"

test does not require a causal relationship. *See Ford Motor*, 141 S. Ct. at 1026–30. Rather, this

test may be satisfied if the defendant's conduct involves "financial transactions that touch the

forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71

(requiring only that claim is not completely "unmoored" from transaction). This Court has already

found that the Trustee's recovery actions against defendants similarly situated to Bank Vontobel

are "directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy*,

641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4 (finding subsequent transfer claims directly

related to investment activities). Here, the Trustee is seeking to recover the very transfers that

Bank Vontobel received through its bank account in New York.  Bank Vontobel is no different than the many subsequent transferee defendants whose activities have previously been found to be related to the Trustee's claims.

### 6.    Bank Vontobel's Remaining Arguments against Jurisdiction Are Unavailing

Bank Vontobel also argues that it is the Trustee's burden to make a jurisdictional showing with respect to each claim in the Complaint and that "each transfer is a separate claim" for jurisdictional purposes.  Motion at 10 (citing *BNP*, 594 B.R. at 190).  But Bank Vontobel misconstrues the requirements for personal jurisdiction and this Court's decision in *BNP*.  Courts have personal jurisdiction over *defendants*, not *transfers*.  *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316.  Likewise, as Bank Vontobel recognizes, courts must assess a *defendant's* contacts with the forum, not a transfer's.  *See* Motion at 11 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 334 (2d Cir. 2018) (quoting *Walden*, 571 U.S. at 283–84) for proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"); *see also BNP*, 594 B.R. at 189 (quoting same).  Provided that the court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims, so long as they are sufficiently related to those contacts.  *See Ford Motor*, 141 S. Ct. at 1026–28, 1032.

This is exactly what this Court did in *BNP*.  The Court did not look at each transfer to determine jurisdiction; the Court assessed each defendant, focused on the overall relationship with the initial transferees and determined it had jurisdiction.  *BNP*, 594 B.R. at 191 (finding jurisdiction for "any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds" where "[t]he Tremont Funds were managed from offices in New York, and in their capacity as investors, the Defendants sent subscription agreements to New

York, wired funds in U.S. dollars to New York, sent redemption requests to New York and received redemption payments from a Bank of New York account in New York") (citations omitted).

Equally unavailing is Bank Vontobel's reliance on a trio of cases asserting common law claims brought against fund service providers for the proposition that the New York contacts identified by the Trustee are insufficient.  Motion at 14-15 (citing *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017); *SPV Osus*, 882 F.3d 333).  This Court has already determined that this line of cases is not relevant to the Trustee's actions against investors in BLMIS feeder funds, like Bank Vontobel.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").  This is not a dispute between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims in *SPV Osus*, *Hill*, and *Hau Yin To*.[13]  This action is brought by a SIPA Trustee in a SIPA liquidation proceeding in New York to recover fraudulent transfers from an investor whose transfers of funds to and from accounts or correspondent accounts in New York—intended to place money with BLMIS in New York—evidence an intent to direct activity toward the U.S. securities markets.  *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United

---

[13] Bank Vontobel's reliance on *SPV Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30. Also, *SPV Osus*'s finding that a "handful of communications and transfer of funds" do not support specific jurisdiction, which is cited by Bank Vontobel (*see* Motion at 14), is not availing here given Bank Vontobel's significant additional jurisdictional contacts, discussed above.

States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the

ultimate objective' and the 'raison d'etre' of the Agreement between BLI and Fairfield Sentry.").[14]

## B.    The Exercise of Personal Jurisdiction over Bank Vontobel is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of

personal jurisdiction over the defendant comports with 'traditional notions of fair play and

substantial justice' under the circumstances of the particular case." *Waldman v. Palestine*

*Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made

a threshold showing of minimum contacts, a defendant must present "a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d

at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum

contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force

the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted). Bank

Vontobel fails to present any reason, let alone a compelling reason, why jurisdiction would be

unreasonable.

This is not that "rare" case and the burden on Bank Vontobel is minimal. *See Maxam*

*Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern

communication and transportation minimize any such burden). Just as this Court found in *Multi-*

*Strategy*, *Banque Syz*, *Carige*, *Lombard Odier*, *First Gulf*, *Parson*, *Meritz*, *PIFSS*, and *Union*

*Securities*, the exercise of jurisdiction over Bank Vontobel is reasonable because "[d]efendant is

---

[14] Bank Vontobel also cites to cases where courts rejected as a basis for jurisdiction plaintiffs pointing to their own actions pursuant to contractual obligations. *See* Motion at 15 (citing *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998); and *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995)). Ultimately, to the extent these cases have any relevance to the instant matter, it is only to confirm that the focus of the jurisdictional analysis should be on the defendant, not the plaintiff. That is precisely the inquiry the Trustee has focused on.

not burdened by this litigation" because it "has actively participated in this Court's litigation for over ten years," it is "represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts when it signed its subscription agreements with [Sentry]." *Multi-Strategy*, 641 B.R. at 88.

Moreover, this "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz*, 2022 WL 2135019, at *5; *see also ET Decision*, 917 F.3d at 103 (noting that the United States has a "compelling interest in allowing domestic estates to recover fraudulently transferred property."). Accordingly, this Court's exercise of jurisdiction over Bank Vontobel is more than reasonable.

## C.      In the Alternative, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery.  "Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590, at *4 (Nov. 16, 2009).  The Trustee has shown how Bank Vontobel, *inter alia*, knowingly and purposely subscribed with the Fairfield Funds and other BLMIS feeder funds for the purpose of investing in the U.S. securities markets, repeatedly used U.S. bank accounts to transact business with Sentry, and had significant contacts with FGG personnel and even Madoff in the U.S.  *See supra* pp. 9-18. At a minimum, these facts establish a "threshold showing" of jurisdiction.  *Kiobel,* 2009 WL 3817590, at *6; *see also Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that this Court did not abuse its discretion in granting the Fairfield liquidators' request for jurisdictional discovery where allegations indicated that "additional facts to establish personal jurisdiction . . . lie within Defendants' knowledge"); *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6

(S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## II.    THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS

Defendants argue that the Complaint fails to satisfy the requirements of (1) Rule 8(a)(2), to include a "short and plain statement" showing the Trustee is entitled to relief, and (2) Rule 9(b), to "state with particularity" facts "suggesting the avoidability of any alleged initial transfers" from BLMIS.  Motion at 16-18.  In particular, Defendants argue that the Trustee's incorporation of the then-operative complaint against the Fairfield Funds is "wholly insufficient" to state such a claim and "wholly unauthorized by the Federal Rules." *Id*. at 18-19.  There is no doubt, however, as this Court has repeatedly held in substantively similar adversary proceedings, that the Trustee may incorporate the Fairfield Amended Complaint to demonstrate the avoidability of the initial transfers from BLMIS.[15]

In *Multi-Strategy*, for example, this Court held that "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)." *Multi-Strategy*, 641 B.R. at 91 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case.")); *see also In re*

---

[15] *See Banque Syz*, 2022 WL 2135019, at *7-8 (noting Second Circuit precedent instructs courts to adopt "a more liberal view" as to the Rule 9(b) pleading standard "[w]here the actual fraudulent transfer claim is asserted by a bankruptcy trustee" and holding that "[t]hrough the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud.") (quoting *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011); *Carige*, 2022 WL 2387522, at *6-7 (same).

*Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.").

Defendants' argument also conflicts with the District Court's opinion in *SIPC v. BLMIS*

*(In re Madoff Sec.)*, 501 B.R. 26 (S.D.N.Y. 2013), in which the Trustee's incorporation by

reference of the then-operative Fairfield complaint was found sufficient:

> [T]he Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53.
> Thus, the avoidability of the transfers from Madoff Securities to
> Kingate and Fairfield is sufficiently pleaded for purposes of section
> 550(a).

*Id*. at 36. *See also Multi-Strategy*, 641 B.R. at 91; *Banque Syz*, 2022 WL 2135019, at *7; *Carige*,

2022 WL 2387522, at *6; *Lombard Odier*, 2022 WL 2387523, at *7; *Lloyds*, 2022 WL 2390551,

at *3; *Bordier*, 2022 WL 2390556, at *3; *Cantonale*, 2022 WL 2761044, at *3; *Barclays*, 2022

WL 2799924, at *5; *First Gulf*, 2022 WL 3354955, at *7; *Parson*, 2022 WL 3094092, at *7;

*Meritz*, 2022 WL 3273044, at *7; *Delta*, 2022 WL 3365256, at *3; *PIFSS*, 2022 WL 3458962, at

*9; *Union Sec.*, 2022 WL 3572509, at *7 (all following "the district court's instruction").

Moreover, even if the Court were to find that the adversary proceedings are separate actions

for purposes of Rule 10(c), this Court still can permit incorporation by reference, as the Southern

District of New York and other federal courts have done in appropriate circumstances. *See*

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation

omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another

pleading in the same action and permitting incorporation of entire pleadings in separate cases);

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 191, 214 n.15 (D. Mass.

2012) (holding incorporation by reference appropriate where "the court [was] familiar with the

filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").

Cases cited by Defendants for the proposition that Rule 10 does not permit such "wholesale" incorporation are inapposite because, unlike in this case, plaintiffs there were incorporating pleadings by reference in an attempt to add new claims against their defendants.[16] In those cases, the court held that incorporation would have led to confusion and a lack of notice as to the additional claims asserted. *Id.* By contrast, the Trustee here is not seeking to add new claims, and Defendants would be hard-pressed to argue they lacked notice that the Trustee was seeking to avoid the initial transfers to Sentry.

Defendants also argue that the Trustee's incorporation of the Fairfield Amended Complaint imposes "an unacceptable burden on Defendants and on the Court." Motion at 19. Once again, the cases Defendants cite are not remotely pertinent here. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) involved a plaintiff's attempted incorporation of two prior versions of a complaint into a third amendment, with no guidance as to what was repetitive versus new material and which allegations could be found only in the incorporated pleadings. Likewise *Int'l Longshoremen's Ass'n*, in addition to concerning an attempt to add new claims, as discussed above, featured the Government seeking to incorporate, without even explicitly saying so, hundreds of pages of sometimes inconsistent indictments and complaints from multiple unrelated civil and criminal cases stretching back 17 years. 518 F. Supp. 2d at 461-66.

---

[16] *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 460–66 (E.D.N.Y. 2007) (finding improper incorporation by reference of pleadings from prior actions to plead entirely new claims not otherwise alleged in complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *3-4 (E.D.N.Y. Mar. 26, 2010) (rejecting plaintiff's attempt to state new claim by incorporating by reference a reply brief he filed in the case which included "no specific factual allegations" supporting the claim).

In citing such cases for their burden argument, Defendants ignore the purpose of the incorporation in the Trustee's Complaint:  to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from Defendants under Section 550(a).  *See Citibank,* 12 F.4th at 196-97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (citation removed) (emphasis in original).  The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers.  *See* Compl. ¶ 52.  Defendants can admit the allegations of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny.  This places no undue burden on Defendants in responding to the Trustee's claims against them or on the Court.  Doing as Defendants appear to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the Complaint.  Such duplication is unnecessary in pleading recovery under Section 550 and inconsistent with the purpose of Rule 8.  *See In re Madoff Sec.*, 501 B.R. at 36.

In any case, regardless of incorporation, this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers from BLMIS.  *See Fairfield Inv. Fund*, 2021 WL 3477479.  On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  Finally, the fact that the noticed complaint

was filed after this Complaint against Defendants is of no moment.  *See Rothman v. Gregor*, 220

F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding).  Should the

Court accept Defendants' argument and not take judicial notice of the avoidability of the initial

transfers, the Trustee respectfully requests the opportunity to replead.

## III.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS

In *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013

WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial

transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe

harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year

period referenced in Section 548(a)(1)(A).  Defendants argue that Section 546(e) bars all of the

Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even

though the Trustee has pled the Fairfield Funds' actual knowledge.  Motion at 20-23.  This Court

has rejected this same argument in numerous other adversary proceedings commenced by the

Trustee.[17]

### A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Defendants set forth at length the requirements of Section 546(e) and how they are

presumably met in this case with respect to the initial transfers from BLMIS.  Motion at 20-23.

---

[17] *See Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at *8-10; *Lombard Odier*, 2022 WL 2387523, at *8-10; *Lloyds*, 2022 WL 2390551, at *4-6; *Bordier*, 2022 WL 2390556, at *4-6; *Cantonale*, 2022 WL 2761044, at *4-6; *Barclays*, 2022 WL 2799924, at *6-7; *First Gulf*, 2022 WL 3354955, at *8-10; *Parson*, 2022 WL 3094092, at *8-10; *Meritz*, 2022 WL 3273044, at *8-10; *Delta*, 2022 WL 3365256, at *4-6; *PIFSS*, 2022 WL 3458962, at *10-12; *Union Sec.*, 2022 WL 3572509, at *8-10.

None of this matters.[18]  As Defendants concede, this Court has previously held that the Trustee has

sufficiently pled that Sentry had actual knowledge of Madoff's fraud.  *See* Motion at 23; *Multi-*

*Strategy*, 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).  As such,

Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers

may be recovered from Defendants regardless of whether the Fairfield Funds or either Defendant

qualify as financial institutions, their agreements qualify as securities contracts, or their transfers

qualify as settlement payments.

## B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Defendants are also wrong when they assert that the Section 546(e) safe harbor applies

unless the Trustee alleges that Defendants themselves had actual knowledge of Madoff's fraud.

Motion at 23.  As this Court recently held, defendants "[are] not permitted to raise the safe harbor

defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not

applicable to subsequent transfers."  *Multi-Strategy,* 641 B.R. at 94-95.[19]

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("Notwithstanding

sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer*

---

[18] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendants activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendants.   The Trustee also does not concede that the initial transfers were made "for the benefit of" Defendants.  The Trustee plainly alleges in the Complaint that Defendants are subsequent transferees, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

[19] *See also Banque Syz*, 2022 WL 2135019, at *9-10; *Lombard Odier*, 2022 WL 2387523, at *9-10; *Lloyds*, 2022 WL 2390551, at *5-6; *Bordier*, 2022 WL 2390556, at *5-6; *Cantonale*, 2022 WL 2761044, at *5-6; *Barclays*, 2022 WL 2799924, at *7; *First Gulf*, 2022 WL 3354955, at *9-10; *Parson*, 2022 WL 3094092, at *9-10; *Meritz*, 2022 WL 3273044, at *9-10; *Union Sec.*, 2022 WL 3572509, at *9-10.

. . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also Multi-Strategy,* 641 B.R. at 94 ("The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'") (quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*")).[20]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30. It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the

---

[20] *See also Banque Syz*, 2022 WL 2135019, at *9 (quoting *BNP* at 197); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf*, 2022 WL 3354955, at *9 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *Union Sec.*, 2022 WL 3572509, at *9 (same).

initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at *9.[21] The District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not recovery, and, notably, that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument made implicitly by the Motion that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id.* at 197. Like *Cohmad*, the holding in *BNP* on Section 546(e) is law of the case on this issue, and Defendants are bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation,

---

[21] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Without mentioning the case by name, Defendants misconstrue *Cohmad*'s holding—which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor.  *See* Motion at 23.  That holding does not, as Defendants suggest, require the Trustee to plead a subsequent transferee's actual knowledge in order to recover a subsequent transfer.  On the contrary, it merely ensures that any defendant that *doe*s have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently.  *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").  Adopting Defendants' position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.  It would also result in a situation whereby a determination as to the avoidability of an initial transfer would depend upon and vary based on whether there were subsequent transfers, and who received them.  This approach is simply not viable.

## IV.    THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Trustee's Complaint plausibly alleges that Defendants received subsequent transfers of BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*").  As this Court recently held, the Trustee is not required to perform a tracing analysis, or to present a

"dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy*, 641 B.R. at 90

(quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018)

("*BNP*")); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-

150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),

2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee need only allege

sufficient facts to show the relevant pathways through which the funds were transferred from

BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see

also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730,

747 (Bankr. S.D.N.Y. 2019).   In addition, the Trustee must allege "'the necessary vital

statistics—the who, when, and how much' of the purported transfers to establish an entity as a

subsequent transferee of the funds." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at

195).

The Trustee's Complaint meets these requirements.   The Complaint alleges that

Defendants received transfers, identified by date and amount in accompanying exhibits, from

Sentry, and that Sentry invested all or substantially all of its funds with BLMIS.  Compl. ¶¶ 2, 58,

60, Exs. G-J.  The Complaint likewise alleges that Defendant Bank Vontobel received transfers,

identified by date and amount in accompanying exhibits, from Sigma, and that Sigma invested all

of its funds with Sentry.  *Id*. ¶¶ 2, 62, Exs. K-L.  Thus, the Complaint plausibly alleges that

Defendants received subsequent transfers of customer property by (a) outlining the relevant

pathway through which customer property was transferred from BLMIS to the Fairfield Funds and

subsequently to Defendants, and (b) providing the necessary vital statistics (*i.e.*, the "who, when,

and how much") for each subsequent transfer.  Nothing more is required.  *See, e.g.*, *Picard v.

Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y.

Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover"). As this Court recently held in a number of decisions, these "exhibit[s] provide[] [Defendants] with the 'who, when, and how much' of each transfer." *See e.g. Multi-Strategy*, 641 B.R. at 95; *Banque Syz,* 2022 WL 2135019, at *12.[22]

A.      **Defendants Misstate the Trustee's Pleading Burden**

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendants argue for a new one, asserting that the Trustee must trace and tie each subsequent transfer Defendants received to a specific initial transfer from BLMIS. Motion at 6, 24-25. However, the Court already rejected this argument in *Merkin II*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150, *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, the Court already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin II*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding

---

[22] *See also Carige*, 2022 WL 2387522, at *7; *Lombard Odier*, 2022 WL 2387523, at *10; *Lloyds*, 2022 WL 2390551, at *6; *Bordier*, 2022 WL 2390556, at *6; *Cantonale*, 2022 WL 2761044, at *6; *Barclays*, 2022 WL 2799924, at *4; *First Gulf*, 2022 WL 3354955, at *11; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Delta*, 2022 WL 3365256, at *4; *PIFSS*, 2022 WL 3458962, at *10; *Union Sec.*, 2022 WL 3572509, at *10 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

"if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Defendants' reliance on *Picard v. Shapiro* is unavailing because *Shapiro* did not change the pleading burden for recovery under Section 550(a).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 104, 109, 119 (Bankr. S.D.N.Y. 2015).  However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers.  *Id*. at 119.  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim.  *Id*.  Here, where the Trustee has alleged the vital statistics of each transfer Defendants received and set out the investment relationship between Defendants and the Fairfield Funds, *Shapiro* supports denying the motion to dismiss.

Defendants also suggest, obliquely, through citation to *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) and *Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018), that the Trustee has a heightened pleading burden due to his access to information without the need for discovery.  Motion at 24-25.  Defendants do not specify what this information is or why the Trustee has sufficient access, but to the extent Defendants mean to say something about the Fairfield Funds, the contention is untrue.  The Trustee does not have all of the Fairfield Funds' books and records, and discovery in the Trustee's actions against the Fairfield management defendants is ongoing. *See, e.g.*, Stipulated Case Am. Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-

01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting November 22, 2023

deadline for fact discovery and August 23, 2024 deadline for expert discovery).  For this reason,

*Pension Benefit Guar. Corp.* and *Sapia* do not support Defendants' position.

      **B.**      **Defendants' Remaining Implausibility Arguments Fail on a Motion to Dismiss**

      Defendants argue that it is implausible that the transfers to Defendants contained BLMIS

customer property because the Trustee's claims are "mathematically impossible," as the Trustee

is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from

BLMIS.  Motion at 35 (citing *In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y. 2011)).

Defendants' argument misses the point.  As this Court has stated, "[t]here is no dispute that the

Trustee is limited to 'a single satisfaction' under § 550(a)."  *Multi-Strategy*, 641 B.R. at 95 (citing

§ 550(d)).  "He may nevertheless pursue any and all subsequent transferees in order to achieve that

satisfaction."  *Id*. at 95-96 (citing § 550(a)(2)).  And, under § 550(a), "a trustee may recover [an

avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation

among all [the] subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393

B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full amount of the

approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may

simultaneously seek recovery from Defendants in this action and from defendants in other actions

in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers.

*See Fairfield Inv. Fund*, 2021 WL 3477479, at *12.  "Calculation of whether the Trustee is fully

satisfied is a factual finding to be made by this Court at a later stage of litigation."  *Multi-Strategy*,

641 B.R. at 96.

      Defendants' arguments are also, absent discovery, premature.  "[I]n a case such as this one,

where 'the Trustee's lack of personal knowledge is compounded with complicated issues and

transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even

greater latitude' should be afforded." *In re BLMIS*, 454 B.R. at 329.  This is one reason why this

Court in *Merkin II* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim

must ultimately be proved through the books and records of the defendants."  515 B.R. at 151.

And even after fact discovery, expert opinion is necessary to determine what portion of the

subsequent transfer stemmed from the initial transfer where the subsequent transfers originated

from commingled accounts.  *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y.

2017); *see also Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073

(ECT/KMM), 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying summary judgment

because trustee introduced expert report and associated documents from which a jury could infer

that defendants received subsequent transfers of customer property).

## V.      THE SECTION 550(b) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendants argue that the Court should dismiss the Complaint as a matter of law because

their purported good faith is clear on the face of the Complaint.  Motion at 26-29.  This Court has

already rejected the "good faith" affirmative defense as inappropriate and untimely on a motion to

dismiss, and should similarly reject Defendants' efforts here to recycle the same arguments.  *See

Banque Syz*, 2022 WL 2135019, at *10-11 (holding that it is a defendant's burden to plead value,

good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be

established in a complaint."); *First Gulf*, 2022 WL 3354955, at *10 (same); *see also Sec. Inv. Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL

1304589, at *1 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*"); *Delta,* 2022 WL 3365256, at *6.  Like

Defendants here, the defendants in *Banque Syz*, *First Gulf*, *Delta*, and *ABN Ireland* argued that

their good faith defense was established on the face of the complaint.  *Banque Syz*, 2022 WL

2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10; *Delta,* 2022 WL 3365256, at *6; *ABN

*Ireland*, 2022 WL 1304589, at *3.  The Court in those cases concluded that the affirmative defense

could not be resolved at the pleading stage (*id.*), and the same result is warranted here.

Affirmative defenses are fact-driven, and they require factual analyses and a presentation

of evidence.  *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such

a fact-based determination can only be made based on the entirety of the factual record after

discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees

and factual inferences Appellees improperly seek to have drawn in their favor."); *see also United*

*Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014)

("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus

[are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717

F.3d 295, 308 (2d Cir. 2013)).   That sort of factual analysis is not appropriate at this stage,

particularly with respect to a good faith defense.  *See, e.g., Picard v. Merkin (In re BLMIS)*, 440

B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in

good faith . . . is a disputed issue that this Court can properly determine only upon consideration

of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452

B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably

factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved

at the motion to dismiss stage.").

To get around the fact that the good faith pleading burden is no longer on the Trustee,[23]

Defendants make an unsupportable argument that their good faith has been established as a matter

of law on the face of the Complaint.  Motion at 27-29.  But, as recognized in *Merkin I*, such an

---

[23] *Citibank,* 12 F.4th at 178, 195-96 (holding that in a SIPA liquidation proceeding the good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith).

argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss.  440 B.R. at 256.  To prevail under this limited exception, Defendants must show there is an "insuperable bar to securing relief" set forth on the face of the Complaint.  *Dreier*, 452 B.R. at 426.  Defendants' argument that a diligent inquiry into BLMIS would have been futile is pure conjecture that is easily disputed and fails this standard.

Defendants cannot rely on an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy, and factual inferences they wish this Court to draw from same in their favor.  *ABN Ireland*, 2022 WL 1304589, at *3.  Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud, for instance, is not dispositive as to a defendant's good faith.  *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[24] Defendants' suggestion (Motion at 29) that they lacked sufficient resources to detect Madoff's fraud—despite being part of one of Switzerland's foremost private banking groups—is dubious on its face.  *See* Complaint ¶ 3; Charlemagne Decl., Ex. 1.  Defendants are sophisticated parties capable of performing their own investigations and diligence on their BLMIS investments—facts which can only be developed in discovery.  *See also* Hauser Decl., ¶¶ 3, 4, 5, Exs. C-E.

---

[24] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise").

Defendants make similar arguments with regard to value.[25]  Motion at 26-27.  Value,
however, is also a fact-driven element of the affirmative defense to be addressed later in the
litigation.  *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the
Defendants gave value is a question of fact to be resolved either at the summary judgment stage
or at trial").  As was true in *Banque Syz* and *First Gulf*, the Complaint does not mention Defendants
exchanging shares for consideration, and the value defense is therefore not pleaded on the face of
the Complaint.  *Banque Syz*, 2022 WL 2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10.
Moreover, to the extent Defendants argue value exists because the payments they received were
given in exchange for their redemption of shares from the Fairfield Funds, this too cannot be
decided on a motion to dismiss.  *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL
3354955, at *11; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to
whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the
Fairfield Funds . . . cannot be made as a matter of law or fact at this stage.").

Even if this Court were to consider Defendants' fact-intensive affirmative defense, the
Trustee must be given the opportunity to pursue discovery of those facts.  *ABN Ireland*, 2022 WL
1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual
record after discovery); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in
good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS
funds is a disputed issue that this Court can properly determine only upon consideration of all of

---

[25] Defendants do not specifically address knowledge of voidability, but instead assert that this prong of the Section
550(b) affirmative defense is to be construed "the same as good faith." Motion at 27.  The Trustee takes no position
on this contention for purposes of this opposition but reserves his right to argue at the appropriate time, following
discovery, that the absence of knowledge of voidability is a distinct element of the affirmative defense requiring a
showing separate from good faith.

the relevant evidence obtained through the discovery process."). *See also Banque Syz*, 2022 WL

2135019, at *11; *First Gulf*, 2022 WL 3354955, at *11.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendants' Motion.

Dated: September 8, 2022
     New York, New York          */s/Amy E. Vanderwal*
                                         **BAKER & HOSTETLER LLP**
                                         45 Rockefeller Plaza
                                         New York, New York 10111
                                         Telephone: 212.589.4200
                                         Facsimile: 212.589.4201
                                         David J. Sheehan
                                         Email: dsheehan@bakerlaw.com
                                         Amy E. Vanderwal
                                         Email: avanderwal@bakerlaw.com
                                         Chardaie C. Charlemagne
                                         Email: ccharlemagne@bakerlaw.com

                                         *Attorneys for Irving H. Picard, as Trustee for the*
                                         *Substantively Consolidated SIPA Liquidation of*
                                         *BLMIS and the Chapter 7 Estate of Bernard L.*
                                         *Madoff*

                                         **WINDELS MARX LANE & MITTENDORF,
                                         LLP**
                                         156 West 56th Street
                                         New York, New York 10019
                                         Telephone: 212.237.1000
                                         Facsimile: 212.589.4201
                                         Howard L. Simon
                                         Email: hsimon@windelsmarx.com
                                         John J. Tepedino
                                         Email: jtepedino@windelsmarx.com

                                         *Special Counsel for Irving H. Picard, Trustee*
                                         *for the Substantively Consolidated SIPA Liquidation*
                                         *of Bernard L. Madoff Investment Securities LLC and*
                                         *for the Chapter 7 Estate of Bernard L. Madoff*