PILLSBURY WINTHROP SHAW PITTMAN LLP
Eric Fishman
Andrew Troop
Rahman Connelly
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
eric.fishman@pillsburylaw.com
andrew.troop@pillsburylaw.com
rahman.connelly@pillsburylaw.com

*Counsel to Falcon Private Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02923 (CGM) |
| Plaintiff, | |
| v. | |
| FALCON PRIVATE BANK LTD. (f/k/a AIG Privat Bank AG), | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF FALCON PRIVATE BANK'S MOTION**
**TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

RESERVATION OF RIGHTS ................................................................................... 1

PRELIMINARY STATEMENT ............................................................................... 1

FACTS PLED IN THE COMPLAINT ...................................................................... 4

I.   The Complaint's Allegations About Fairfield Sentry and Fairfield Sigma ............................. 4

II.  The Complaint's Allegations Regarding Payments Received by Falcon ................................ 5

III. The Complaint's Jurisdictional Allegations ...................................................................... 6

IV. The Trustee's Complaints in Other Fairfield Subsequent Transferee Actions ........................ 6

ARGUMENT ............................................................................................................ 7

I.   APPLICABLE PLEADING STANDARDS ........................................................ 7

   A.  Standard on a Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule
       12(b)(2) ....................................................................................................... 7

   B.  Standard on a Motion to Dismiss for Failure to State a Claim Pursuant to Rule
       12(b)(6) ....................................................................................................... 7

II.  THIS COURT LACKS PERSONAL JURISDICTION OVER FALCON ........................... 8

   A.  The Alleged Foreseeability of the Fairfield Funds' Investment With BLMIS Does
       Not Establish Personal Jurisdiction Over Falcon .......................................... 9

   B.  Falcon's Alleged Dealings With Fairfield Related to its Subscriptions do Not
       Establish Personal Jurisdiction .................................................................. 10

III. THE TRUSTEE'S CLAIMS ARE BARRED BY THE SAFE HARBOR
     PROVISION OF SECTION 546(e) OF THE BANKRUPTCY CODE ............................ 13

   A.  The Initial Transfers Cannot Be Avoided .................................................... 13

   B.  The "Actual Knowledge" Exception Does Not Apply .................................... 15

IV. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT FALCON
    RECEIVED CUSTOMER PROPERTY ORIGINALLY HELD BY BLMIS ....................... 17

CONCLUSION ...................................................................................................... 21

# **TABLE OF AUTHORITIES**

Page(s)

## Cases

*Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*,
   328 F. Supp. 3d 329 (S.D.N.Y. 2018)....................................................................11

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008).................................................................9, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................7, 8, 17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................7, 8

*Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*,
   137 S. Ct. 1773 (2017)..................................................................................9

*Colson Servs. Corp. v. Bank of Baltimore*,
   712 F. Supp. 28 (S.D.N.Y. 1989) .......................................................................11

*In re Commodore Int'l, Ltd.*,
   242 B.R. 243 (Bankr. S.D.N.Y. 1999)...............................................................9, 12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...................................................11

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
   2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)..................................................14

*Harris v. N.Y. State Dept. of Health*,
   202 F. Supp. 2d 143 (S.D.N.Y. 2002)..................................................................8

*Hau Yin To v. HSBC Holdings PLC*,
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) ...............11

*Helicopteros Nacionales De Colombia v. Hall*,
   466 U.S. 408 (1984)....................................................................................9

*Law v. Siegel*,
   571 U.S. 415 (2014)...................................................................................17

*In re Lehman Bros. Holdings Inc.*,
   535 B.R. 608 (Bankr. S.D.N.Y. 2015)..................................................................10

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
    138 S. Ct. 883 (2018) .......................................................................................................17

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................................8

*Picard v. Fairfield Inv. Fund Ltd.*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ..........................................................15

*Picard v. Ida Fishman Revocable Tr.*,
    773 F.3d 411 (2d Cir. 2014) ..........................................................................................14, 15

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr S.D.N.Y. 2015) .............................................................................18, 20

*Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*,
    No. 20-CV-10220 (PMH), 2022 WL 142375 (S.D.N.Y. Jan. 14, 2022) ...............................11

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................................8

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ....................................................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .....................................16

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ................................................................................17

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
    476 B.R. 715 (S.D.N.Y. 2012) ...........................................................................................14

*In re Sledziejowski*,
    No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ........................12

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ..............................................................................................11

*Steinberg v. A Analyst Ltd.*,
    2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ...................................................................10, 12

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ................................................................................................7

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ...........................................................................................7, 9

Statutes and Codes

United States Code,
Title 11, section 101(53A)(B)................................................................................13
Title 11, section 546(e) ................................................................................ *passim*
Title 11, section 548................................................................................13, 15, 17
Title 15, section 78fff-2(c)(3) ................................................................................18

Rules and Regulations

Federal Rules of Bankruptcy Procedure,
Rule 7012(b) ................................................................................1

Federal Rules of Civil Procedure,
Rule 8................................................................................17
Rule 12(b)(2)................................................................................1, 7
Rule 12(b)(6)................................................................................1, 7

Defendant Falcon Private Bank ("Falcon"), by and through its undersigned counsel, respectfully submits this memorandum of law and the accompanying declaration of Rahman Connelly in support of its motion to dismiss, with prejudice, the Complaint [Docket No. 1] (the "Complaint" or "Compl.") of plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (as incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure).

## RESERVATION OF RIGHTS

For the avoidance of doubt, Falcon expressly denies that it is subject to personal jurisdiction in the United States on the Trustee's claim in this action or otherwise, and lack of personal jurisdiction is the first basis on which the Falcon requests the Complaint be dismissed. Falcon's alternative bases for dismissal in this motion are addressed to the sufficiency of the pleading and do not constitute a defense on the merits and shall not be construed as implicit consent to this Court's jurisdiction.

## PRELIMINARY STATEMENT

At the outset, the Complaint should be dismissed because Switzerland-based Falcon is not subject to personal jurisdiction here. Under the limitations of due process, a plaintiff must make a *prima facie* showing that (i) the defendant purposefully availed itself of the privilege of conducting activities within the forum, and (ii) the claim arises out of or relates to the defendant's conduct in the forum. That showing can be made by complaint allegations or supplemental submissions. Here, the Complaint makes no such showing and, indeed, does just the opposite: it demonstrates why no such showing *can* be made.

For this subsequent transfer action arises out of conduct taken by New York-based BLMIS, not from conduct or transactions undertaken by Falcon. Falcon is a Swiss private bank with no

presence in New York (indeed, no presence in the United States) that passively invested (on behalf of clients) in British Virgin Island investment funds, Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma") (together, the "Fairfield Funds"), which, in turn, invested in BLMIS. The Trustee alleges that BLMIS made avoidable transfers to the BVI-based Fairfield Funds and speculates that some of that money may have been subsequently transferred to Falcon in Switzerland, and that this is sufficient to sue Falcon in New York.

But where in all of this are purposeful contacts with New York *by Falcon* giving rise to this lawsuit? Plainly, BLMIS had jurisdictional contacts with the forum. The Fairfield Funds may also have established contacts by investing with a New York-based stockbroker. The Complaint, however, has little to say about relevant contacts by Falcon itself.

Instead, it alleges that the contacts of Falcon's contract counterparty, the Fairfield Funds, may be imputed to Falcon because Falcon understood the Fairfield Funds' BLMIS-focused investment strategy. This is plainly insufficient as a matter of law. The Supreme Court teaches that personal jurisdiction must be based on a defendant's *own* contacts, not those of third parties with whom a defendant contracts. Were the rule otherwise, every time foreign company A contracted with foreign company B, understanding that foreign company B would transact business in New York in connection with the contract, foreign company A would be subject to jurisdiction here. A Swiss company that purchased widgets from a Swiss reseller, understanding that the widgets were supplied by a U.S. based company and that a significant part of the purchase price would be paid by the reseller to the U.S. supplier, could be called hauled into court here. Were third-party contacts so facilely attributable to a defendant, minimum contacts would be rendered essentially meaningless. It is for that reason that courts routinely dismiss claims, like the

one here, asserted against foreign investors that contracted with foreign investment vehicles, which, in turn, invested in U.S. securities.

Equally unavailing is the Complaint's reliance on allegations that Falcon entered into a subscription agreement with Fairfield Sentry containing a New York forum selection clause and that Falcon wired its subscription payments to a Fairfield Sentry account in New York.[1] For the subsequent transferee Complaint is not based on and does not relate to either the subscription agreement (to which BLMIS was not even a party) or the subscription payment made to Fairfield Sentry. These facts may have something to do with New York, but they have nothing to do with jurisdiction because they do not give rise or relate to this lawsuit. The Complaint should, therefore, be dismissed for lack of personal jurisdiction.

Wanting jurisdiction, however, is not the only reason the Complaint here fails: the Complaint should also be dismissed because it seeks to claw-back transfers protected from avoidance by the Bankruptcy Code. Each of the initial transfers at issue was made more than two years before the BLMIS bankruptcy by a stockbroker to a financial institution in connection with a securities contract – transfers that indisputably fall within the safe harbor protections of Section 546(e) of the Bankruptcy Code. The Complaint, moreover, nowhere alleges that Falcon had actual knowledge of the Madoff fraud – indeed, there are no allegations about Falcon's knowledge anywhere in the Complaint – which thus precludes the Trustee from contending that Falcon cannot invoke the 546(e) safe harbor. What is more, we respectfully submit that the "actual knowledge" exception should no longer be applied: Appellate precedent following the development of the equitable "actual knowledge" exception makes express that courts may not recognize

---

[1] For the avoidance of doubt, Falcon is not aware of any subscription agreement that it executed with Fairfield Sentry. Falcon does not admit, and reserves the right to present evidence refuting, the Trustee's jurisdictional allegations.

unenumerated exceptions to Bankruptcy Code. There is no "actual knowledge" exception in the Section 546(e) safe harbor provisions.

Finally, the Complaint also fails for a third reason: it does not contain facts sufficient to move the allegation that Falcon received funds traceable to BLMIS from merely possible to plausible, as required by the Supreme Court's *Twombly* and *Iqbal* decisions. The Trustee alleges that BLMIS transferred a total of $3 billion to Fairfield Sentry during the applicable lookback period, but, in other judicial filings – as to which the Court may take judicial notice on a motion to dismiss – the Trustee alleges that Fairfield Sentry transferred approximately $5 billion to Fairfield investors. Thus, while it is *possible* that the redemption payments to Falcon came from the BLMIS estate, it is quite possible that they did not. It is black letter law that a Complaint premised entirely on facts equally consistent with non-actionable conduct is not viable as a matter of law.

Each of these reasons is alone sufficient to warrant dismissal of the Complaint.

## FACTS PLED IN THE COMPLAINT

### I.    The Complaint's Allegations About Fairfield Sentry and Fairfield Sigma

The Trustee brings this proceeding pursuant to his statutory authority under the Securities Investor Protection Act ("SIPA") on the basis of alleged investments that Falcon made in Fairfield Sentry and Fairfield Sigma. Fairfield Sentry was an investment fund that sold shares directly to subscribing foreign investors from the 1990s through BLMIS's collapse in December 2008. (*See* Compl. ¶¶ 2, 6; *see also* Connelly Decl. Ex. 2 (First Am. Compl., *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) (the "Fairfield Action"), Docket No. 23 (the "Fairfield Amended Complaint") ¶¶ 23, 32-35.) The Complaint alleges that Fairfield Sentry invested 95% of its assets with BLMIS.

The Complaint also alleges that Fairfield Sigma was a BLMIS feeder fund. However, instead of investing in BLMIS directly, it invested 100% of its assets in Fairfield Sentry, which in turn invested those assets with BLMIS. Fairfield Sentry was a dollar denominated fund, while Fairfield Sigma was a Euro denominated fund. Fairfield Sentry and Fairfield Sigma were both incorporated in the British Virgin Islands and are both in liquidation proceedings pending there. (Fairfield Am. Compl. ¶¶ 32, 51, 56.)

During the six years prior to December 11, 2008, the date on which BLMIS entered liquidation (the "Filing Date"), BLMIS made transfers to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Sentry Initial Transfers") (Compl. ¶ 35). The Complaint alleges that these transfers are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273–279 of the New York Debtor Creditor Law ("NYDCL"), and applicable provisions of SIPA. (Compl. ¶¶ 36-37.)

## II.    The Complaint's Allegations Regarding Payments Received by Falcon

The Complaint says that Falcon is "a leading Swiss bank" that invested in, and received approximately $38,745,417 of redemption payments from the Fairfield Funds, consisting of (a) a payment of $38,091,032 from Fairfield Sentry on March 18, 2004, (b) a payment of "the equivalent of at least $70,288" from Fairfield Sigma on January 27, 2006, and (c) a payment of $584,097 from Fairfield Sentry on July 19, 2007. (Compl., Exh. C, E.)

The Complaint alleges that these payments are recoverable from Falcon pursuant to sections 550 and 551 of the Bankruptcy Code and section 278 of the NYDCL. (*Id.* ¶ 47.) Although the Trustee claims that each of these payments were subsequent transfers of BLMIS customer property, he fails to identify any specific Fairfield Sentry Initial Transfers to which those payments relate. Instead, the Trustee asserts, in a conclusory fashion, that "[a] portion of the Fairfield Sentry

Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of Falcon." (*Id.* ¶¶ 41, 43.)

## III.    The Complaint's Jurisdictional Allegations

The Trustee alleges that Falcon "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma," and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma." (*Id.* ¶ 6.)   The Trustee also alleges "[u]pon information and belief" that "Falcon entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent a copy of the subscription agreement to [Fairfield Greenwich Group's] New York City office, and wired funds to Fairfield Sentry through a bank in New York." (*Id.* ¶ 7.)  Based solely on these allegations, the Complaint concludes that "Falcon thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (*Id.*)

The Complaint does not say that Falcon entered into a subscription agreement with Fairfield Sigma or that it wired funds to a New York bank account in connection with its alleged investment in Fairfield Sigma.  As the Trustee alleges in the Fairfield Amended Complaint, which he purports to incorporate by reference (Compl. ¶ 35), Fairfield Sigma "accepted investments in Euros." (Fairfield Am. Compl. ¶ 52.)

## IV.    The Trustee's Complaints in Other Fairfield Subsequent Transferee Actions

The Trustee is seeking to recover approximately $5 billion in alleged "subsequent transfers" that flowed out of Fairfield Sentry, even though he simultaneously alleges that BLMIS made initial transfers of only $3 billion to Fairfield Sentry.  (*See* Connelly Decl., Exh. 6.)  In addition to the claims in this action against Falcon, the Trustee has also filed over eighty adversary proceedings against other Fairfield Fund investors.  (*See* Trustee's Twenty-Sixth Interim Report

For The Period April 21, 2021 Through September 3, 2021 ¶ 229, Ex. D, *In re Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Oct. 29, 2021) [Docket No. 20821].)  In those actions, the Trustee seeks to recover, in aggregate, alleged subsequent transfers totaling approximately $4 billion.  (*See* Connelly Decl., Exhs. 5, 6.)  In addition, the Trustee seeks to recover another approximately $1 billion in subsequent transfers from Fairfield Sentry to the Fairfield Greenwich Group ("FGG") Defendants.  (*See* Connelly Decl., Exh. 3.)

## ARGUMENT

### I.    APPLICABLE PLEADING STANDARDS

#### A.    Standard on a Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(2)

The Trustee bears the burden of demonstrating that Falcon is subject to personal jurisdiction in this Court.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016).  Establishing personal jurisdiction over a foreign defendant, requires a showing of three things: (a) that Falcon "purposefully availed itself of the privilege of conducting activities within the forum state or have purposefully directed its conduct into the forum State"; (b) that "the plaintiff's claim . . . arise[s] out of or relate[s] to [Falcon's] forum conduct"; and (c) that "the exercise of jurisdiction [would be] reasonable under the circumstances" and "would comport with fair play and substantial justice."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150-51 (2d Cir. 2019) (quotation and citation omitted).

#### B.    Standard on a Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

The allegations in a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plausible complaint must include facts that "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  Where, as here, conduct alleged is equally consistent with non-actionable conduct, a complaint does not state a plausible claim.  *Id.* at 679; *see also Twombly,* 550 U.S. at 547 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

On a motion to dismiss, a court should not consider a "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and should not assume the truth of allegations "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."  *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).  "In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference. In addition, the Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action."  *Harris v. N.Y. State Dept. of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002) (citations omitted).

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER FALCON

The Trustee alleges that Falcon can be subjected to this Court's jurisdiction because when Falcon invested with the Fairfield Funds it (a) allegedly knew that the Fairfield Funds invested most of their assets with BLMIS; and (b) supposedly sent a subscription payment to New York and executed a subscription agreement with a New York forum selection clause.  Neither of these alleged facts establish a *prima facie* basis to subject Falcon to this Court's jurisdiction.

### A.    The Alleged Foreseeability of the Fairfield Funds' Investment With BLMIS Does Not Establish Personal Jurisdiction Over Falcon

The Trustee's allegation that Falcon "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma" (Compl. ¶ 6) is not a proper jurisdictional predicate. The fact that Fairfield Sentry, a BVI company, invested funds with BLMIS, which in turn held those funds in New York shows, at most, that Fairfield Sentry created a forum contact with New York. It does not establish that Falcon did.

Personal jurisdiction is not measured by third-party contacts, but on contacts "the defendant *himself* creates." *Waldman*, 835 F.3d at 335 (emphasis in original); *In re Commodore Int'l, Ltd.*, 242 B.R. 243, 253 (Bankr. S.D.N.Y. 1999) ("It is fundamental that in determining whether we have specific . . . jurisdiction over [a defendant] . . . we are concerned only with [the defendant's] activities"). Thus, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 417 (1984) (citation omitted). Similarly, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (holding Bristol-Myers not subject to jurisdiction in California where even though it contracted with McKesson, a California company, to distribute a pharmaceutical that allegedly injured the plaintiffs, Bristol-Meyers itself was not alleged to have "engaged in relevant acts together with McKesson in California").

Consistent with this framework, courts routinely dismiss complaints for lack of personal jurisdiction where a foreign defendant's only connection to the jurisdiction is through an offshore investment vehicle or through an indirect commercial relationship with a U.S. entity. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008)

(rejecting assertion of specific jurisdiction where "only connection between [defendant] and the forum is that [it] invested in a foreign hedge fund located in the Cayman Islands but managed by plaintiffs [in the U.S.]"); *Steinberg v. A Analyst Ltd.*, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (dismissing fraudulent transfer claims related to redemption payments that foreign defendant received from an offshore hedge fund because plaintiff's allegation that the fund's "assets, records, accounts and management were all located in New York" did not show that the *defendant* "engaged in purposeful activity in New York in connection with the [redemption payments]"); *see also In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015) (finding that foreign investor did not "purposefully avail itself of the privilege of doing business in the forum" where its "only active connection to the United States was its indirect relationship to . . . [a U.S. credit default swap] counterparty chosen not by [the defendant] . . . but by [a third party]").

Ultimately, these precedents demonstrate the relevant inquiry is what (if any) contacts Falcon itself—not the Fairfield Funds or BLMIS—created with New York. The allegations in the Complaint make clear that there are none. Falcon did not invest with BLMIS; it invested with Fairfield Sentry and Fairfield Sigma, which were based in the British Virgin Islands. And while Falcon is alleged to have understood the Fairfield Funds' investment strategy, that does not constitute a contact with New York.

### B.    Falcon's Alleged Dealings With Fairfield Related to its Subscriptions do Not Establish Personal Jurisdiction

The Trustee also seeks to establish jurisdiction over Falcon on the basis of various dealings between Falcon and Fairfield Sentry related to Falcon's subscription in the Fairfield Funds. The Trustee alleges that Falcon "entered into a subscription agreement with Fairfield Sentry" with a New York forum selection clause, "wired funds to Fairfield Sentry through a bank in New York,"

and "communicated with FGG in New York regarding Fairfield Sentry." (Compl. ¶ 7.) These allegations are insufficient for at least three reasons.

First, neither the Trustee nor BLMIS are a party to or third-party beneficiary of the alleged subscription agreement, and they accordingly have no standing to base claims on it. *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 334-39 (S.D.N.Y. 2018) (rejecting enforcement of forum selection clause by non-signatory to relevant agreement and dismissing case for lack of personal jurisdiction). Moreover, the Trustee cannot demonstrate that the alleged forum selection clause applies to avoidance claims; indeed, this Court has already held that it does not. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11- 12 (Bankr. S.D.N.Y. Aug. 6, 2018) (holding that forum selection clauses in Fairfield Sentry's subscription agreements are "irrelevant to actions to recover the . . . redemption payments" and granting motion to dismiss "to the extent that personal jurisdiction is based solely on the forum selection clause").

Second, "a foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction" if the "communications with and payments to New York were made merely to ensure compliance with contract terms negotiated and executed outside of New York." *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017); *Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*, No. 20-CV-10220 (PMH), 2022 WL 142375, at *6 (S.D.N.Y. Jan. 14, 2022) (fact that "Defendant sent invoices and related correspondence to Plaintiff's New York office," did not show that defendant "purposefully availed itself of the privilege of conducting activities within New York").[2] Here, the Complaint alleges

---

[2]    *See also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Colson Servs. Corp. v. Bank of Baltimore*, 712 F. Supp. 28 (S.D.N.Y. 1989) (defendant not subject

that the subscription payments to Fairfield Sentry were made pursuant to an alleged contract between Falcon, a Swiss entity, and Fairfield Sentry, a BVI entity. That contract is not alleged to have been negotiated or executed in New York or to be the basis of the claims here. *Cf. Commodore*, 242 B.R. at 253 (holding no jurisdiction over foreign defendant where plaintiff "failed to allege any acts by [the defendant] . . . show[ing] that [it] entered New York to negotiate the loan agreements from which the alleged . . . fraudulent conveyance action arises").

Third, and most importantly, the Trustee's claim against Falcon does not arise from or relate to any of these contacts. The Trustee's claim is not based on Falcon's decision to invest with the Fairfield Funds or payments that it made to the Fairfield Funds in connection with its investments. It is based on payments that Falcon allegedly received as a subsequent transferee of BLMIS. The Trustee does not allege that Falcon created any purposeful jurisdictional contacts in connection with its alleged receipt of redemption payments. *See Steinberg*, 2009 WL 838989, at *5 (dismissing fraudulent transfer claims related to redemption payments from an offshore fund because the fact that the defendant "route[d], via wire transfer, the money used to purchase shares in [the fund]" through a New York bank account, was not "purposeful activity in connection with the [redemption payments]"); *Commodore*, 242 B.R. at 253 (dismissing fraudulent transfer action for lack of personal jurisdiction where plaintiff "failed to allege any facts to show that [defendant] . . . committed any acts within this state that have a nexus to the complained of transfers"); *In re Sledziejowski*, No. 13-22050 (RDD), 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) (same).

---

to jurisdiction in New York on a claim to recover payments on a CD even though defendant "effected purchase of its participation in the CD by wiring funds to [the issuer's] collection and payment agent in New York"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) ("Defendant's phone calls into New York do not suffice to confer personal jurisdiction" nor does the fact that it "[sent] payment to New York").

* * * * * * *

Thus, while the Complaint makes references to a limited number of New York-related facts, they are not facts that matter for jurisdictional purposes. What is more, the Trustee cannot make a *prima facie* showing of personal jurisdiction through the submission of affidavits or other evidence. For this action is simply not based on business that Falcon transacted in New York; it is based on BLMIS's actions and transfers made outside of the forum state. Falcon is a non-US entity that made an investment in a non-US fund and did nothing to give rise to the claim now asserted. Requiring Falcon to appear and defend in New York would violate due process and be wholly unreasonable under the circumstances.

## III.    THE TRUSTEE'S CLAIMS ARE BARRED BY THE SAFE HARBOR PROVISION OF SECTION 546(e) OF THE BANKRUPTCY CODE

### A.    The Initial Transfers Cannot Be Avoided

Section 546(e) of the Bankruptcy Code separately mandates dismissal of the Trustee's claim against Falcon. Section 546(e) bars a trustee from avoiding a transfer made by, to, or for the benefit of a covered entity, including a "stockbroker" or a "financial institution," "in connection with a securities contract" or comprising "settlement payments." 11 U.S.C. § 546(e). The only (inapplicable) statutory exception to this rule is for transfers avoided pursuant to section 548(a)(1)(A), which allows for recovery of intentional fraudulent transfers made in the two years preceding the debtor's bankruptcy. Here, the Complaint makes plain that the Fairfield Sentry Initial Transfers fall within the Section 546(e) safe harbor provision and cannot be avoided by the Trustee:

Payment "by" a covered entity. The alleged initial transfers were made by BLMIS, which is a stockbroker under section 546(e). A "stockbroker" is defined as an entity "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). Judge Rakoff

13

concluded a decade ago that BLMIS fits that definition. *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012).

Payment "to" a covered entity. The alleged initial transfers were also made to a covered entity, Fairfield Sentry. Judge Bernstein previously held that the Fairfield Funds are "financial institutions within the meaning of 11 U.S.C. § 546(e)" because they were "customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 2020 WL 7345988, at *4 (Bankr. S.D.N.Y. Dec. 14, 2020). That analysis applies with equal force here because the Trustee alleges that the initial transfers were made from BLMIS to accounts entitled "Citco Global Custody N.V. FBO Fairfield Sentry Ltd." (account numbers 1FN012 and 1FN045). (Compl. Ex. B.)

Payment made in connection with a securities contract or as a settlement payment. Section 546(e) also requires that a challenged transfer to be "in connection with a securities contract" or a "settlement payment." 11 U.S.C. § 546(e). The Second Circuit has already held that BLMIS customer account documents are securities contracts for purposes of section 546(e). *See Picard v. Ida Fishman Revocable Tr.*, 773 F.3d 411, 418 (2d Cir. 2014). The Complaint alleges that "Fairfield Sentry had direct customer accounts with BLMIS's investment advisory business" (Compl. ¶ 2) and entered into account agreements with BLMIS. (*See* Fairfield Am. Compl., ¶ 33.) "Section 546(e) only requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected to an actual securities transaction." *Fishman*, 773 F.3d at 418. The alleged Fairfield Sentry Initial Transfers satisfy this "low bar." *Id.* at 420.

Further, the Fairfield Sentry Initial Transfers were also settlement payments. In *Fishman*, the Second Circuit held that "[e]ach time a customer requested a withdrawal from BLMIS . . . each

14

transfer in respect of such an order or request constituted a settlement payment." *Fishman*, 773 F.3d at 422. That conclusion applies equally to Fairfield Sentry's withdrawals from BLMIS.

<u>Payment Not Subject to Section 546(e) Exception</u>. Section 546(e) recognizes an exception for transfers that are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code. However, the Trustee's avoidance powers under 548(a)(1)(A) are limited to transfers made within two years before the date on which BLMIS entered bankruptcy (*i.e.,* December 11, 2008). *See* 11 U.S.C. § 548(a)(1) (empowering trustee to avoid any transfer "made . . . on or within 2 years before the date of the filing of the petition"). Any transfer made before that date may not be avoided.

The Complaint alleges that Falcon received two subsequent transfers on March 18, 2004 ($38,745,417) and January 27, 2006 (the equivalent of $70,288), each more than two years prior to the commencement of BLMIS's bankruptcy proceedings. The Complaint also alleges that Falcon received a subsequent transfer on July 19, 2007 ($584,097); while that transfer is within two years of the bankruptcy, Exhibit B to the Complaint shows that the last Fairfield Sentry Initial Transfer preceding that subsequent transfer was April 13, 2006 – also more than two years prior to BLMIS's bankruptcy. Because the Fairfield Sentry Initial Transfers preceding the subsequent transfers to Falcon all occurred more than two years prior December 11, 2008, none of them (or the transfers that followed) can be avoided under section 548(a)(1)(A).

The Complaint should thus be dismissed because it is premised on transfers that the Trustee cannot avoid as a matter of law.

### B.   The "Actual Knowledge" Exception Does Not Apply

The Trustee will likely respond to this motion by arguing that the Section 546(e) safe harbor does not apply here because the alleged initial transferee, Fairfield Sentry, allegedly knew of BLMIS's fraud and thus knew that there was no actual "settlement payment" or "securities contract." In *Picard v. Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug.

6, 2021), the Court accepted that the Trustee had adequately pled Fairfield Sentry's actual knowledge. *Id.* at *4-5 (citing Fairfield Second Am. Compl.). It then denied a motion to dismiss based on section 546(e), relying on Judge Rakoff's statement that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Id.* at *4 (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 JSR, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")).

That ruling does not defeat application of the safe harbor here because there is simply no allegation suggesting that Falcon had actual knowledge of BLMIS's fraud. *See Cohmad*, 2013 WL 1609154, at *1 (to defeat motion to dismiss based on 546(e), the Trustee must "allege[ ] that the . . . *transferee* had actual knowledge of Madoff Securities' fraud") (emphasis added). And any argument that Fairfield Sentry's alleged knowledge of the fraud can be imputed to or otherwise bar Falcon from seeking safe harbor protection should be rejected as inconsistent with the rationale underlying the *Cohmad* exception: Judge Rakoff estopped Fairfield Sentry from invoking 546(e) because "equity" does not permit "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme" to "profit from a safe harbor intended to promote . . . the reasonable expectations of legitimate investors." *Id.* at *7. There is no equitable reason to estop an innocent subsequent transferee from relying on Section 546(e) and doing so would be contrary to the safe harbor's purpose of protecting legitimate investors. Actual (not imputed) knowledge is required, as Judge Rakoff expressly recognized: "In sum, if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, *that* transferee cannot claim the protections of Section 546(e)'s safe harbor." *Id.* (emphasis added).

Further, Falcon respectfully submits that appellate decisions following *Cohmad* counsel against application of any judge-made exception to the scope of Section 546(e). Congress expressly considered whether there should be any exceptions to the safe harbor in Section 546(e) and limited such exceptions to a claim under section 548(a)(1)(A), which involves actual fraudulent intent by the *transferor*. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant"). There is no exception in the statute based on the state of mind of the *transferee*.

When, as here, the Bankruptcy Code creates a safe harbor or other rule and specifies exceptions, a court may not create additional ones. *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014) ("The [Bankruptcy] Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exceptions confirms that courts are not authorized to create additional exceptions"); *Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018) (refusing to "deviate from the plain meaning of the language used in § 546(e)" to broaden the safe harbor exception). Although no court has expressly considered the continuing viability of the judge-made "actual knowledge" exception, Falcon respectfully submits that it should no longer be applied in light of these subsequently rendered appellate court decisions.

## IV.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT FALCON RECEIVED CUSTOMER PROPERTY ORIGINALLY HELD BY BLMIS

The Complaint must also be dismissed for a separate and independent reason: at best, it pleads facts suggesting it was *possible* that Falcon received BLMIS customer funds but fails to plead additional facts needed to show that it was *plausible* that Falcon received such funds. Federal Rule of Civil Procedure 8 requires allegations showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If a Complaint's allegations "are merely

17

consistent with a defendant's liability" the complaint "stops short of the line between possibility and plausibility." *Id.*

Such is the case here. In order to state a claim under SIPA, the Trustee must allege facts plausibly showing that the alleged subsequent property transfer was estate property. *See* 15 U.S.C. § 78fff-2(c)(3) ("trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property"). The Trustee asserts that BLMIS transferred approximately $3 billion to Fairfield Sentry (Complaint ¶ 35), but he simultaneously seeks to avoid nearly $4 billion in alleged subsequent transfers of "customer property" in the form of redemption payments made to dozens of defendants, including Fairfield Sentry's own feeder funds. (*See* Fairfield Second Am. Compl., Exh. 5 and 6.) And that is in addition to the approximately $1 billion that the Trustee seeks to recover from the Fairfield Greenwich defendants. (*See id.*, Exhs. 8, 10, 12, 13, 14, and 21.) In other words, the transfers from BLMIS to Fairfield Sentry are $2 billion less than subsequent transfers from Fairfield Sentry to third parties. It is thus *possible* that the money paid to Falcon originally came from BLMIS; but it is equally possible that it came from $2 billion of other monies received and distributed by Fairfield Sentry.

This is not enough to state a claim. In *Picard v. Shapiro*, 542 B.R. 100 (Bankr S.D.N.Y. 2015), this Court described what additional information must be plead to plausibly state a subsequent transferee claim:

> The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

18

*Id.* at 119 (dismissing a subsequent transferee claim where the complaint "[did] not tie any initial transfer to any subsequent transfer").

Here, the Complaint does not include these critical details.  Instead, the Trustee simply asserts, in conclusory fashion, that a "portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Falcon." (Compl. ¶ 41.)  Exhibit B does not add any support to this conclusory allegation; it simply lists transfers from BLMIS to Fairfield Sentry without tying those transfers to the payment of any redemption request from Falcon.  The "barebones" allegation that the transfers identified on Exhibits C and D (which specify the subsequent transfers at issue) originated with BLMIS is insufficient to move the allegations from conceivable to plausible, which mandates dismissal.

Indeed, the allegations here actually show that it is *implausible* to consider the primary transfer to Falcon – $38,091,032 from Fairfield Sentry on March 18, 2004 – to have originated from BLMIS.  The Trustee alleges that in the period from December 11, 2002 (*i.e.*, six years preceding the filing of the petition) through March 17, 2004 (the day before the transfer at issue), BLMIS transferred a total of $120 million to Fairfield Sentry in three transfers made on May 9, 2003, July 11, 2003, and July 22, 2003.  (*See* Compl. Exh. B pp. 19, 20 ("CHECK WIRE" entries).) The Trustee further alleges that from the date of the first BLMIS transfer to Fairfield Sentry, on May 9, 2003, through March 17, 2004 (the day before the alleged subsequent transfer to Falcon), Fairfield Sentry paid out approximately $270,460,475 of alleged customer property to redeeming shareholders (*see* Connelly Decl., Exh. 5, 6.) and $155,624,034 to defendants in the Fairfield Action (*see* Fairfield Second Am. Compl., Exhs. 10, 13, 14), and that Fairfield Sentry deposited an additional $100 million with BLMIS (pursuant to payments made on January 1, 2004 and March 10, 2004).  (Compl., Exh. 2.; Fairfield Second Am. Compl., Exh 2, at pp. 21 (Connelly Decl., Exh.

3).)  Given this, it is impossible to see how the $38,091,032 paid by Fairfield Sentry to Falcon on

March 18, 2004 originated from BLMIS, as illustrated in the following chart:

| | |
|---|---|
| BLMIS to Fairfield Sentry Through 3/17/04 (based on transfers dated 5/9/03, 7/11/03, and 7/22/03) | $120,000,000 |
| Fairfield Sentry to BLMIS on 1/21/04 | $50,000,000 |
| Fairfield Sentry to BLMIS on 3/10/04 | $50,000,000 |
| Fairfield Sentry to Defendants in the Fairfield Action Through 3/17/04 | $155,624,034 |
| Fairfield Sentry to Other Alleged Subsequent Transferees Through 3/17/04 | $270,460,475 |
| Balance as of 3/18/2004 | ($406,084,509) |
| Alleged Subsequent Transfer to Falcon on 3/18/04 | $38,091,031.54 |

Simply put, the Trustee fails to tie any payment received by Falcon to an initial transfer,

and the facts he does plead show that it is not plausible that Falcon is a subsequent transferee.  *Cf.*

*Shapiro*, 542 B.R. at 119 (dismissing subsequent transferee claim where complaint did not

"plausibly imply that the initial transferees even made subsequent transfers to the Subsequent

Transferees as opposed to third parties").  For these reasons, as well, the Court should dismiss the

Trustee's Complaint for failure to state a claim on which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, Falcon respectfully requests entry of an order (a) dismissing the

Trustee's Complaint in its entirety and (b) granting such additional relief as may be warranted

under the circumstances.

Dated: August 15, 2022               PILLSBURY WINTHROP SHAW
New York, NY                       PITTMAN LLP

By:  /s/ Eric Fishman
     Eric Fishman
     Andrew Troop
     Rahman Connelly
     31 West 52nd Street
     New York, NY 10019
     Telephone: (212) 858-1000
     eric.fishman@pillsburylaw.com
     andrew.troop@pillsburylaw.com
     rahman.connelly@pillsburylaw.com

     *Counsel to Falcon Private Bank*