KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
Telephone:  (212) 940-8800
Anthony L. Paccione
anthony.paccione@katten.com
Mark T. Ciani
mark.ciani@katten.com

*Attorneys for Defendant Lloyds TSB Bank PLC*
*(now known as Lloyds Bank plc)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | **Adv. Pro. No. 08-01789 (BRL)**<br><br>**SIPA Liquidation**<br><br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>LLOYDS TSB BANK PLC,<br><br>     Defendant. | **Adv. Pro. No. 12-01207 (CGM)**<br><br><br><br>**ANSWER WITH AFFIRMATIVE**<br>**DEFENSES AND JURY DEMAND** |

Defendant Lloyds TSB Bank PLC (now known as Lloyds Bank plc) (hereinafter, "Lloyds"), by its undersigned counsel, as and for its Answer to the Complaint of plaintiff Irving H. Picard (the "Trustee" or "Plaintiff"), Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard L. Madoff, respectfully avers as follows:

## I.    NATURE OF THE ACTION[1]

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**Response**:    Lloyds denies the allegations of paragraph 1 of the Complaint, except admits upon information and belief that Madoff perpetrated a Ponzi scheme and admits that the Trustee purports to bring this adversary proceeding as part of the Trustee's efforts to recover BLMIS customer property within the meaning of 15 U.S.C. § 78*lll*(4).

2.    With this Complaint, the Trustee seeks to recover approximately $11,183,410 in subsequent transfers of Customer Property made to Defendant Lloyds. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts. Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma Limited ("Fairfield Sigma"), which invested 100% of its assets in Fairfield Sentry. Fairfield Sigma also is in liquidation in the BVI.

**Response**:    Lloyds denies the allegations of paragraph 2 of the Complaint, including that Lloyds received subsequent transfers of customer property from BLMIS or any Madoff feeder fund, except Lloyds admits that the Trustee purports to recover approximately $11,183,410 in alleged subsequent transfers to Lloyds, and that, on information and belief, Fairfield Sentry was a

---

[1] Lloyds deems the section headings in the Complaint not to constitute allegations of the Complaint. To the extent any section headings are allegations, Lloyds admits or denies them consistent with its responses to the allegations contained in the numbered paragraphs of the Complaint.

Madoff feeder fund and a BVI company that had direct customer accounts with BLMIS's

investment advisory business, and that Fairfield Sigma is in liquidation in the BVI.

3.    When Defendant Lloyds received subsequent transfers of BLMIS Customer
Property, Defendant Lloyds operated a global private banking network, with branch offices
located, among other places, in Miami, Florida and Geneva, Switzerland.

**Response**:    Lloyds denies the allegations of paragraph 3 of the Complaint, except

admits that Lloyds maintained an office in Miami, Florida and an affiliate maintained an office in

Geneva, Switzerland.

## II.    JURISDICTION AND VENUE

4.    The Trustee brings this adversary proceeding pursuant to his statutory authority
under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 550(a), and 551 of title 11
of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"); and the New York
Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279
(McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Lloyds as
a subsequent transferee of funds originating from BLMIS.

**Response**:    Lloyds states that the allegations of paragraph 4 of the Complaint set forth

legal conclusions to which no response is required. To the extent that a response is required, Lloyds

admits that the Trustee has brought this adversary proceeding, but denies the remaining allegations

of paragraph 4 of the Complaint.

5.    This is an adversary proceeding brought in this Court, in which the main underlying
substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is
pending. The SIPA Case was originally brought in the United States District Court for the Southern
District of New York (the "District Court") as Securities Exchange Commission v. Bernard L.
Madoff Investment Securities LLC, et al., No. 08 CV 10791 (the "District Court Proceeding").
This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15
U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response**:    Lloyds admits the allegations of the first sentence of paragraph 5 of the

Complaint. Lloyds denies knowledge or information sufficient to form a belief as to the truth of

the allegations of the second sentence of paragraph 5. Lloyds states that the third sentence of

paragraph 5 states sets forth legal conclusions to which no response is required, but to the extent

that a response is required, Lloyds denies that this Court has jurisdiction to enter a final order or

judgment in this proceeding.

6.      Defendant Lloyds is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. Defendant Lloyds knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma, both Fairfield Greenwich Group ("FGG") managed Madoff feeder funds.

        **Response**:      Lloyds denies the allegations of paragraph 6 of the Complaint.

7.      By directing its investments through FGG, Defendant Lloyds knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant Lloyds entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent a copy of the agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. Defendant Lloyds thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York.

        **Response**:      Lloyds states that the allegations of paragraph 7 set forth legal conclusions

to which no response is required. To the extent that a response is required, Lloyds denies the

allegations of paragraph 7 of the Complaint.

8.      Defendant Lloyds is also subject to the jurisdiction of this Court because it filed customer claims with the Trustee, thereby invoking the jurisdiction of this Court. The Trustee has designated the customer claims filed by Defendant Lloyds as Claims # 014668, # 014669, # 014670, # 014671, # 014672, # 014673, # 014674, # 014675, and # 015602.

        **Response**:      Lloyds states that the allegations of paragraph 8 set forth legal conclusions

to which no response is required.

9.      Defendant Lloyds should reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules §§ 301 and 302 (McKinney 2001) and Bankruptcy Rule 7004. Where a federal statute provides for nationwide service of process, as does Rule 7004, a federal court has personal jurisdiction over any defendant with minimum contacts with the United States. Thus, this Court has personal jurisdiction over Defendant Lloyds based on Defendant Lloyds' contacts with the United States.

        **Response**:      Lloyds states that the allegations of paragraph 9 set forth legal conclusions

to which no response is required. To the extent that a response is required, Lloyds denies the

allegations of paragraph 9 of the Complaint.

10.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response**:    Lloyds states that the allegations of paragraph 10 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Lloyds denies the allegations in paragraph 10 of the Complaint. Lloyds does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court.

11.    Venue in this District is proper under 28 U.S.C. § 1409.

**Response**:    Lloyds admits the allegations of paragraph 11 of the Complaint.

## III.    BACKGROUND

12.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**Response**:    Lloyds admits on information and belief that Madoff was arrested on or around the Filing Date as alleged in the first sentence of paragraph 12 of the Complaint. Lloyds denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Complaint.

13.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint, and otherwise refers the Court to the order issued by the Honorable Louis L. Stanton for its complete and accurate contents.

14.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers

as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 14 of the Complaint, and otherwise refers the Court to the

application filed by SIPC alleged in paragraph 14 for its complete and accurate contents.

15.    Also on December 15, 2008, Judge Stanton granted the SIPC application and
entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the
business of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA §
78eee(b)(3); and

c.    removed the case to the United States Bankruptcy Court for the Southern District
of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 15 of the Complaint, and otherwise refers the Court to the

order issued by Judge Stanton alleged in paragraph 15 for its complete and accurate contents.

16.    By orders dated December 23, 2008, and February 4, 2009, respectively, the
Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person.
Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 16 of the Complaint, and otherwise refers the Court to the

orders issued by the Court alleged in paragraph 16 for their complete and accurate contents.

17.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned
*United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50),
Madoff pled guilty to an eleven-count criminal information filed against him by the United States
Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted
that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23.
Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong,
indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 17 of the Complaint, and otherwise refers to the transcript of

the plea hearing alleged in paragraph 17 for its complete and accurate contents.

18.     On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**Response**:     Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 18 of the Complaint, and otherwise refers the Court to the

alleged indictment and transcript of the referenced plea hearing for their complete and accurate

contents.

## IV.    TRUSTEE'S POWERS AND STANDING

19.     As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**Response**:     Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 19 of the Complaint, and states that the allegations concerning

the Trustee's authority under SIPA and the Bankruptcy Code set forth legal conclusions to which

no response is required. To the extent a response is required, Lloyds denies such allegations.

20.     Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response**:     Lloyds states that the allegations of paragraph 20 of the Complaint set forth

legal conclusions to which no response is required. To the extent a response is required, Lloyds

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 20 and therefore denies the allegations of paragraph 20 of the Complaint.

21.    Under SIPA §§ 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of
the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date
of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response**:    Lloyds states that the allegations of paragraph 21 of the Complaint set forth

legal conclusions to which no response is required.

22.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the
Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the
power and authority to avoid and recover transfers under §§ 544, 547, 548, 550(a), and 551 of the
Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**Response**:    Lloyds states that the allegations of paragraph 22 of the Complaint set forth

legal conclusions to which no response is required.

## V.    THE DEEFNDANT

23.    Defendant Lloyds is a public limited company organized under the laws of the
United Kingdom, with a business address of 25 Gresham Street, London EC2V 7HN, United
Kingdom. Defendant Lloyds operates branches in several locations, including Geneva,
Switzerland at 1 Place Bel-Air, Case Postale 5145, CH-1211 Geneva, Switzerland, and Miami,
Florida at One Biscayne Tower, Suite 3200, 2 South Biscayne Boulevard, Miami, Florida 33131.

**Response**:    Lloyds admits the allegations of paragraph 23 of the Complaint, except that

"Lloyds TSB Bank Plc" at the times relevant to the Complaint is now known as Lloyds Bank plc.

At the times relevant to the Complaint, Lloyds admits that it was located at 1 Place Bel-Air, Case

Postale 5145, CH-1211 Geneva, Switzerland.

## VI.    THE PONZI SCHEME

24.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated
from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as
founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several
of his friends and family members. BLMIS was registered with the SEC as a securities broker-
dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue
of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market
making, proprietary trading, and the IA Business.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 24 of the Complaint.

25.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 25 of the Complaint.

26.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 26 of the Complaint.

27.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 27 of the Complaint, and otherwise refers to the plea allocution

of Madoff and the corresponding plea hearing transcript for their complete and accurate contents.

28.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 28 of the Complaint.

29.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**Response**:    Lloyds admits upon information and belief that BLMIS claimed to invest

money deposited by customers in securities, but otherwise denies knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 29 of the

Complaint.

30.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 30 of the Complaint.

31.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 31 of the Complaint.

32.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response**:    Lloyds admits upon information and belief that Madoff's business continued until December 2008, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 32 of the Complaint.

33.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint.

34.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of the Complaint.

## VII.    THE TRANSFERS

35.    Fairfield Sentry received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant Lloyds.

**Response**:    Lloyds admits that it received funds from Fairfield Sentry, but denies that such funds constitute subsequent transfers of Customer Property or any other property transferred from BLMIS to Fairfield Sentry, and denies the remaining allegations of paragraph 35 of the Complaint.

### A.  INITIAL TRANSFERS FROM BLMIS TO FAIRFIELD SENTRY

36.    The Trustee has filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry*

*Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover the initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**<u>Response</u>**:    Lloyds (i) admits that the Trustee filed an action styled as *Picard v. Fairfield Sentry, Ltd., et al.*, Adv. Pro No. 09-1239 (BRL) (the "Sentry Action"), (ii) lacks knowledge and information sufficient to form a belief as to the truth of the allegation of the amounts of the alleged transfers alleged in paragraph 36 and therefore denies such allegations; (iii) lacks knowledge sufficient to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action and therefore denies such allegations, (iv) denies that the initial transfers of Customer Property to Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (v) to the extent necessary to support such denial, denies for lack of knowledge sufficient to form a belief as to the truth of the allegations, each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Sentry are or were avoided or avoidable, and (vi) objects to the incorporation by reference of, and therefore does not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, Lloyds lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint and therefore denies such allegations.

37.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield

Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegation of the timing and amounts of the alleged transfers alleged in paragraph 37

of the Complaint, and states that the remaining allegations set forth legal conclusions to which no

response is required. To the extent a response is required as to such allegations, Lloyds denies such

allegations in paragraph 37 of the Complaint.

38.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

alleged timing and amounts of the transfers alleged in paragraph 38 of the Complaint, and therefore

denies such allegations. Lloyds states that the remaining allegations set forth legal conclusions to

which no response is required. To the extent a response is required, Lloyds denies the allegations

in paragraph 38.

39.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

alleged timing and amounts of the transfers alleged in paragraph 39 of the Complaint, and therefore

denies such allegations. Lloyds states that the remaining allegations set forth legal conclusions to

which no response is required. To the extent a response is required, Lloyds denies the allegations

in paragraph 39.

40.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**Response**:    Lloyds lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 40 and therefore denies such allegations.

41.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment against Fairfield Sentry in the amount of $3,054,000,000. Fairfield Sentry is obliged to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

**Response**:    Lloyds admits upon information and belief that the Court approved the

settlement described in paragraph 41 of the Complaint and entered a judgment as described in

paragraph 41 on or about the dates alleged therein, and refers to the referenced settlement

agreement and the referenced judgment for their complete and accurate contents.

## B. SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO DEFENDANT LLOYDS

42.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lloyds and is recoverable from Defendant Lloyds pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $11,134,574 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Lloyds (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**Response**:    Lloyds states that the first sentence of paragraph 42 of the Complaint sets

forth legal conclusions to which no response is required. To the extent a response is required,

Lloyds denies the allegations in the first sentence of paragraph 42 of the Complaint. For the second

sentence of paragraph 42 of the Complaint, Lloyds admits that it received funds from Fairfield

Sentry, denies that any of such funds constitute subsequent transfers of Customer Property or any other property transferred from BLMIS to Fairfield Sentry, and denies any remaining allegations of paragraph 42.

43.    The Trustee's investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint.

## C.  SUBSEQUENT TANSFERS FROM FAIRFIELD SENTRY TO FAIRFIELD SIGMA AND SUBSEQUENTLY TO DEFENDANT LLOYDS

44.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lloyds through Fairfield Sigma and is recoverable from Defendant Lloyds pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma. Thereafter, the equivalent of at least $48,836 was transferred by Fairfield Sigma to Defendant Lloyds (the "Fairfield Sigma Subsequent Transfers"). Charts setting forth the presently known Fairfield Sigma Subsequent Transfers are attached as Exhibits D and E.

**Response**:    Lloyds states that the first sentence of paragraph 44 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Lloyds denies the allegations in the first sentence of paragraph 44 of the Complaint. For the second sentence of paragraph 44 of the Complaint, Lloyds denies knowledge or information sufficient to form a belief as to the truth of the allegations.  For the third sentence of paragraph 44 of the Complaint, Lloyds admits that it received funds from Fairfield Sigma but denies that any of such funds constitute subsequent transfers of Customer Property or any other property, and denies any remaining allegations in paragraph 44 of the Complaint.

45.    The Trustee's investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sigma Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional

transfers.

**Response**:    Lloyds denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 45 of the Complaint

46.    The Fairfield Sentry Subsequent Transfers and the Fairfield Sigma Subsequent
Transfers are collectively defined as the "Fairfield Subsequent Transfers."

**Response**:    Lloyds lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 46 and therefore denies such allegations.

## AS TO COUNT ONE

47.    The Trustee incorporates by reference the allegations contained in the previous
paragraphs of this Complaint as if fully rewritten herein.

**Response**:    Lloyds incorporates and reasserts its responses to the allegations contained

in each of the previous paragraphs of this Complaint as though set forth fully herein.

48.    Defendant Lloyds received the Fairfield Sentry Subsequent Transfers, totaling
approximately $11,134,574, and the Fairfield Sigma Subsequent Transfers, totaling the equivalent
of at least $48,836 (as defined above, the "Fairfield Subsequent Transfers"). The Fairfield
Subsequent Transfers, totaling approximately $11,183,410, are recoverable pursuant to section
550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**Response**:    Lloyds state that the allegations in paragraph 48 of the Complaint state legal

conclusions to which no response is required. To the extent any further response is required, Lloyds

denies the allegations in paragraph 48 of the Complaint.

49.    Each of the Fairfield Subsequent Transfers was made directly or indirectly to, or
for the benefit of, Defendant Lloyds.

**Response**:    Lloyds denies the allegations of paragraph 49 of the Complaint.

50.    Defendant Lloyds is an immediate or mediate transferee of the Fairfield Initial
Transfers.

**Response**:    Lloyds denies the allegations of paragraph 50 of the Complaint.

51.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy
Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against

Defendant Lloyds recovering the Fairfield Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response**:    Lloyds states that the allegations in paragraph 51 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Lloyds denies the allegations of paragraph 51 of the Complaint.

## RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF

Lloyds denies that the Trustee is entitled to his requested judgment in favor of the Trustee and against Lloyds or to any of the relief described herein.

## AFFIRMATIVE DEFENSES

In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Lloyds hereby preserves each and every defense at law, in equity, or otherwise, available under federal and state law, including common law. Further, Lloyds reserves the right to amend this Answer to assert other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so. In asserting the following defenses, Lloyds does not intend to suggest that matters designated herein as "defenses" are not elements of the Trustee's prima face case on the Trustee's purported claims or that they are not matters as to which the Trustee bears the burden of proof. These defenses are set forth cumulatively and in the alternative.

## FIRST DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

The alleged subsequent transfers to Lloyds may not be recovered because the alleged initial transfers are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e), in that the alleged initial transfers were (i) made by or to (or for the benefit of) a stockbroker (BLMIS), financial institution (Fairfield Sentry or Lloyds), financial participant (Lloyds), or other

covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract (between BLMIS and Fairfield Sentry, between Fairfield Sentry and Lloyds, between Fairfield Sentry and Fairfield Sigma, and/or between Fairfield Sigma and Lloyds); and (iii) made more than two years before the petition date and are thus not recoverable under 11 U.S.C. § 548(a)(1)(A). Because the Fairfield Six-Year Transfers are not avoidable, property received by Lloyds as part of the Fairfield Six-Year Transfers is not recoverable from Lloyds. In addition, at the time of the transfers (if any) from Fairfield Sentry/Fairfield Sigma to Lloyds, none of Fairfield Sentry, Fairfield Sigma, and Lloyds had actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

## SECOND DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

The transfers Lloyds received from Fairfield Sentry and Fairfield Sigma did not constitute BLMIS customer property. Upon information and belief, the redemption payments Lloyds received from Fairfield Sentry were sourced from subscription payments made to Fairfield Sentry by its investors. Many of Lloyds's redemption payments could not have come from BLMIS because prior avoidable transfers from BLMIS to Fairfield Sentry had been distributed by Fairfield Sentry to other investors or Fairfield Sentry affiliates before Fairfield Sentry made multiple of its transfers to Lloyds.

Specifically, the allegations of the Amended Complaint, including the exhibits thereto that are incorporated by reference into the Complaint at paragraph 36, and the allegations of the second amended complaint in *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. 2009) establish that any avoidable transfers from BLMIS received by Fairfield Sentry prior to Lloyds's redemptions were transferred by Fairfield Sentry to persons other than Lloyds

prior to the redemptions, and that many of the redemption payments Lloyds received from Fairfield Sentry thus could not have included any BLMIS customer property.

### THIRD DEFENSE

**For Value, in Good Faith, and Without Knowledge of the Voidability (11 U.S.C. § 550(b))**

Lloyds took the transfers from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of the transfers from BLMIS to Fairfield Sentry, and thus the transfers to Lloyds may not be recovered pursuant to 11 U.S.C. § 550(b).

Lloyds took for value because the transfers from Fairfield Sentry and Fairfield Sigma were made in exchange for Lloyds's surrender of its shares in those funds.

Lloyds did not have actual knowledge of any fraudulent purpose behind the transfers it received. Lloyds did not know facts that would have prompted a reasonable person in Lloyds's position to conduct further inquiry into whether there was any fraudulent purpose behind the transfers.

Even if Lloyds had been on inquiry notice of a possible fraudulent purpose behind the transfers it received, a diligent inquiry by Lloyds would not have discovered such a fraudulent purpose. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Lloyds, and with more access to BLMIS personnel and documentation than Lloyds, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. Lloyds did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud. Diligent inquiry by Lloyds would not have discovered the fraudulent purpose of the transfers.

Lloyds did not have knowledge of the voidability of the transfers from BLMIS to Fairfield Sentry when it received the alleged subsequent transfers (if any).

## FOURTH DEFENSE

### Lack of Subject Matter Jurisdiction

### (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## FIFTH DEFENSE

### Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Lloyds' Motion to Dismiss the Complaint, filed on February 15, 2022 in this adversary proceeding, ECF 88, and proceedings thereon.

## SIXTH DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

The Trustee may not recover the transfers from Fairfield Sentry to Lloyds because he has not avoided the initial transfers from BLMIS to Fairfield Sentry.

## SEVENTH DEFENSE

### No Ponzi Scheme Presumption

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from Lloyds were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

## EIGTH DEFENSE

### Lloyds as Initial Transferee – Mere Conduit Defense

In the alternative, Fairfield Sentry was a mere conduit, and consequently, the claimed transfers were initial transfers from BLMIS to Lloyds. As the Trustee stated in *Picard v. Grosvenor*

*Investment Management Ltd.*, No. 12-1021 (Bankr. S.D.N.Y. June 15, 2022), Fairfield Sentry's "sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed] between [Sentry] and BLMIS" (internal quotation marks and citation omitted). 12-1021 ECF 115, at 3, 6. As a result, the redemptions received by Lloyds were initial transfers from BLMIS to Lloyds that are subject to the safe harbor under 11 U.S.C. § 546(e); any Trustee proceeding to avoid the transfers is untimely; and Lloyds may retain the amount it received pursuant to 11 U.S.C. § 548(c) and 11 U.S.C. § 548(d)(2)(B) because it took the transfers for value and in good faith.

## NINTH DEFENSE

### Fairfield Sentry as Initial Transferee – Mere Conduit Defense

In the alternative, the Trustee's claims are barred because Lloyds was not a transferee of the subsequent transfers. To the extent, if any, that Lloyds received any subsequent transfer, Lloyds (a) received each subsequent transfer in good faith, in its capacity as a bank acting as custodian, and for the account and benefit of one or more of its customers, (b) did not have dominion or control or the right to assert dominion or control over subsequent transfers or the proceeds thereof or to use the subsequent transfers or the proceeds thereof for its own purposes; (c) rather, was a mere conduit for its customers; and (d) was obligated to credit the subsequent transfers to the account and for the benefit of one or more of its customers, who alone had the right to assert dominion and control over the subsequent transfers received by Lloyds for their benefit.

## TENTH DEFENSE

### New York Debtor and Creditor Law

The claims against Lloyds are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and

sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

## ELEVENTH DEFENSE

### Section 278(1) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Fairfield Sentry Initial Transfers were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

## TWELFTH DEFENSE

### Section 278(2) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Fairfield Sentry Initial Transfers were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## THIRTEENTH DEFENSE

### Sufficient SIPC Funds

Trustee's claims should be dismissed if Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

## FOURTEENTH DEFENSE

### Failure to Mitigate

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has failed to mitigate, minimize or avoid damages, if any.

## FIFTEENTH DEFENSE

### British Virgin Island Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## SIXTEENTH DEFENSE

### No Interest

The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## SEVENTEENTH DEFENSE

### Statute of Limitations

The Trustee's claim is barred by the statute of limitations.

## EIGHTEENTH DEFENSE

### Estoppel

The Trustee's claim is barred by estoppel.

## NINETEENTH DEFENSE

### Unreasonable Delay

The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago and concerns transfers made more than 17 years ago, is unreasonable and unfairly prejudices Lloyds's ability to defend itself.

## TWENTIETH DEFENSE

### Extraterritoriality

The Trustee's recovery of the transfers to Lloyds would constitute an impermissible extraterritorial application of U.S. law.

## TWENTY-FIRST DEFENSE

### Comity

The Trustee's recovery of the transfers to Lloyds would violate principles of comity.

## TWENTY-SECOND DEFENSE

### Violation of Due Process (U.S. Const. amend. V)

The use of the doctrine of law of the case to apply to Lloyds rulings made in other adversary proceedings to which it was not a party and in which it did not participate violates Lloyds's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWENTY-THIRD DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any subsequent transfer from Lloyds to the extent he has recovered the amount of the initial transfers from Fairfield Sentry or any other immediate or mediate transferee the amount of the avoided initial transfers that included the customer property that the Trustee alleges Lloyds received.

## TWENTY-FOURTH DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Lloyds, Lloyds reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

### TWENTY-FIFTH DEFENSE

### Double Recovery

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds. This Court approved the Fairfield Settlement Agreement on June 7, 2011 and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment"). The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the Liquidators recover from Lloyds in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should Lloyds be subject to recovery of identical funds from two separate entities.

### JURY DEMAND

Lloyds demands a trial by jury on all issues that may be tried by a jury.

### STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Lloyds does not consent to entry of final orders or judgment by the Bankruptcy Court.

### DEFENDANT'S REQUEST FOR RELIEF

WHEREFORE, Lloyds demands judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: September 9, 2022
     New York, New York

/s/ Anthony L. Paccione
Katten Muchin Rosenman LLP
Anthony L. Paccione
Mark T. Ciani
50 Rockefeller Plaza
New York, New York 10020
Telephone:  (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendant Lloyds TSB Bank PLC
(now known as Lloyds Bank plc)*