**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02922 (CGM) |
| Plaintiff, | |
| v. | |
| BANK JULIUS BAER & CO. LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTON TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ...................................................................................4

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...........................................4

II.     BJB AND ITS INVESTMENTS IN THE FGG FEEDER FUNDS ...................................4

ARGUMENT ...................................................................................................7

I.      THIS COURT HAS PERSONAL JURISDICTION OVER BJB ......................................7

        A.      BJB Purposefully Availed Itself of the Laws and Privileges of Conducting
                Business in the United States, and the Trustee's Claims Arise Out of or Relate
                to Such Availment.................................................................................7

                1.      BJB's Knowing and Intentional Investments With BLMIS Through the
                        FGG Feeder Funds Are Sufficient Grounds for Jurisdiction .....................8

                        a.      *BLI* and Recent Decisions of This Court Establish Jurisdiction
                                Over BJB........................................................................8

                        b.      *Walden* Does Not Save BJB From This Court's Jurisdiction ........10

                2.      BJB Had Numerous Additional Contacts With the Forum in
                        Connection With Its FGG Feeder Fund Investments.................................12

                3.      The Forum Selection and Choice of Law Clauses in the Subscription
                        Agreements Are Strong Jurisdictional Contacts .......................................14

                4.      BJB's Purposeful Use of New York Bank Accounts Establishes
                        Jurisdiction.............................................................................15

                5.      The Foregoing Contacts Are "Related to" the Trustee's Claims ...............17

        B.      The Exercise of Personal Jurisdiction Over BJB Is Reasonable...........................19

II.     SECTION 546(e) DOES NOT BAR RECOVERY FROM BJB.......................................20

        A.      Sentry Had Actual Knowledge of Madoff's Fraud..................................20

        B.      Section 546(e) Does Not Apply Independently to Recovery Actions ..................21

III.    THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT ...............25

IV.     THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE INITIAL
        TRANSFERS...........................................................................................26

V.      THE SECTION 550(b) DEFENSE IS AN AFFIRMATIVE DEFENSE AND THUS
        INAPPROPRIATE AT THE MOTION TO DISMISS STAGE ......................................28

VI.     THE TRUSTEE HAS PLED THAT BJB RECEIVED CUSTOMER PROPERTY.........29

        A.     BJB Misstates the Trustee's Pleading Burden ......................................................30

        B.     BJB's Claims of Double Recovery Are Premature...............................................31

        C.     BJB's Tracing Arguments Fail on a Motion to Dismiss.......................................32

VII.    THE NEW TRANSFERS RELATE BACK TO THE OC .................................................34

        A.     Relevant Legal Standards .....................................................................................35

        B.     The New Transfers Were Made as Part of the Same Course of Conduct as the
               Transfers Alleged in the OC .................................................................................36

        C.     The OC Provided Notice to BJB That the Trustee Would Sue for Any
               Additional Transfers That Were Part of the Same Course of Conduct.................38

CONCLUSION..............................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................29

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
  624 F. Supp. 2d 292 (S.D.N.Y. 2009) .......................................................35, 37, 40

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ...........................................................................................16

*Am. Casein Co. v. Geiger (In re Geiger)*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................26

*In re Arcapita Bank B.S.C.(C)*,
  No. 21 CIV. 8296 (AKH), 2022 WL 1620307 (S.D.N.Y. May 23, 2022) .............17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................13, 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..............................................................................................15

*In re Bernard L. Madoff Inv. Sec. LLC*,
  No. 1:21-CV-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................25

*In re Bernard L. Madoff Inv. Sec. LLC*,
  No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ............28, 29

*In re Chaus Sec. Litig.*,
  801 F. Supp. 1257 (S.D.N.Y. 1992) ......................................................................37

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ...............................................................................7, 19

*Citibank, N.A. v. Picard*,
  No. 21-1059, 2022 WL 585915 (U.S. Feb. 28, 2022) .............................................4

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008) .................................................................31

*CutCo Indus., Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986) ..................................................................................14

iii

*Dandong v. Pinnacle Performance Ltd.*,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013)............................................................15, 16

*Davis* v. *Bifani*,
   No. 07–cv–00122–MEH–BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)......................27

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)................................................................................7

*Eldesouky v. Aziz*,
   No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)..................................15

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019)......................................................................17

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
   No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............................19

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................15

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   26 N.Y.2d 280 (1970)..........................................................................................11

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..........................................................................................18

*Fowler v. Caliber Home Loans, Inc.*,
   277 F. Supp. 3d 1324 (S.D. Fla. 2016) ....................................................................32

*In re Fairfield Sentry Ltd.*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...................................................................18

*Goldberg v. Halbert (In re Woodbridge Group of Companies, LLC)*,
   No. 19-51027 (JKS), 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021) ...............................36

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11-3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ....................................12

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
   Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3,
   2014) ...........................................................................................................33, 34

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)..................................11

*Hill v. HSBC Bank PLC*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)......................................................................11

*Hill v. Oria (In re Juliet Homes, LP)*,
No. 07-36424, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011)........................36, 37, 40

*HSH Nordbank AG N.Y. Branch v. Street*,
No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012).........................15, 18

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151 (D. Minn. June 10, 2020) .................33, 34

*Leema Enters., Inc. v. Willi*,
575 F. Supp. 1533 (S.D.N.Y. 1983).........................................................................17

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
17 Civ. 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017)......................................16

*Liberatore v. Calvino*,
293 A.D.2d 217, 742 N.Y.S.2d 291 (App. Div. 2002) ...........................................12

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012) ............................................................................................16

*In re M. Fabrikant & Sons, Inc.*,
447 B.R. 170 (Bankr. S.D.N.Y. 2011)......................................................................37

*Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler )*,
66 B.R. 977 (Bankr. S.D.N.Y. 1986).........................................................................37

*In re Motors Liquidation Co.*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017).......................................................................17

*Muhammad v. Bethel-Muhammad*,
No. CIV.A. 11-0690-WS-B, 2012 WL 1854315 (S.D.Ala. May 21, 2012) ..........................27

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
No. 13 CIV 6705 DLC, 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014)................................27

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014).......................................................................................13

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................27

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016).............................................................................16, 17

*Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*,
443 B.R. 918 (Bankr. N.D. Ga. 2011) .....................................................................40

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*,
    67 B.R. 304 (Bankr. S.D.N.Y. 1986) ...............................................................38, 39

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .....................................................................29

*Picard v. Banca Carige, S.P.A.*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) .......................................................................................... *passim*

*Picard v. Banque Cantonale Vaudoise*,
    Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) .............................................................................2, 21, 26, 27

*Picard v. Banque SYZ & Co. SA*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) .......................................................................................... *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ...............................................................................2, 9, 10, 13

*Picard v. Barclays Bank (Suisse) S.A.*,
    Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) .............................................................................2, 23, 24, 34

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................... *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*Picard v. Bordier & Cie*,
    Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ...........................................................................................2

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ...............................................................................29, 32, 33

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) .............................................................................4, 29

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) .....................................................................33

*Picard v. Delta Nat'l Bank & Trust Co.*,
  Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
  12, 2022) ....................................................................................................................2

*Picard v. Est. of Stanley Chais (In re BLMIS, LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................39

*Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...................................................................17

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
  No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................ *passim*

*Picard v. First Gulf Bank*,
  Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr S.D.N.Y. July 18,
  2022) .................................................................................................... *passim*

*Picard v. JABA Assocs. LP (In re Madoff)*,
  528 F. Supp. 3d 219 (S.D.N.Y. 2021)....................................................................26

*Picard v. Lloyds TSB Bank, PLC,*
  Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
  30, 2022) ....................................................................................................................2

*Picard v. Meritz Fire & Marine Ins. Co. LTD.*,
  Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
  10, 2022) .................................................................................................................2, 16

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014)...............................................29, 30, 31, 34

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017)...........................................................32, 33

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022)............................................................ *passim*

*Picard v. Nelson (In re BLMIS)*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019)..........................................................25, 26

*Picard v. Parson Fin. Panama S.A.*,
  Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
  2022) .................................................................................................... *passim*

*Picard v. Peter Madoff (In re BLMIS)*,
  468 B.R. 620 (Bankr. S.D.N.Y. 2012)...............................................35, 37, 39, 40

*Picard v. Public Inst. for Soc. Sec.*,
    Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
    17, 2022) ...............................................................................................................2

*Picard v. Sage Realty*,
    No. 20 CIV. 10057 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ............................26

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................................31

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
    Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
    18, 2022) ...............................................................................................................2

*In re Picard*,
    917 F.3d 85 (2d. Cir. 2019) ...............................................................................................8, 22

*Roper Starch Worldwide*, *Inc. v. Reymer & Assocs.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ...................................................................................11

*Rosenblatt v. Coutts & Co. AG*,
    17 Civ. 3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017)....................................11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013)...................................................................................22, 24, 27

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)...................................................................................21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................................ *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 08-01789 (SMB), 2018 WL 3078149 (Bankr. S.D.N.Y. June 20, 2018) ........................25

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...................................... *passim*

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007)...................................................................................27

*Siegel v. Converters Transp., Inc.*,
    714 F.2d 213 (2d Cir. 1983)...................................................................................................35

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................................................35

*In re Sledziejoinwski*,
    Case No. 13-22050 (RDD), Case No. 13-22748, 2016 WL 6155929 (Bankr.
    S.D.N.Y. Oct. 21, 2016) ..............................................................................................17

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)........................................................................17

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................27

*United Teamster Fund v. MagnaCare Admin. Servs. LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014)........................................................................28

*In re Uplift RX, LLC*,
    625 B.R. 364 (Bankr. S.D. Tex. 2021) .....................................................................37

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................................10, 11, 13

**Statutes**

11 U.S.C. § 546(e) ............................................................................................... *passim*

11 U.S.C. § 550(a) ....................................................................................................31

**Rules**

Fed. R. Civ. P. 10......................................................................................................26, 27

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................................35

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of
Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection
Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully
submits this memorandum of law in opposition to the motion (the "Motion") to dismiss the
Amended Complaint (the "AC") pursuant to Federal Rules of Civil Procedure (the "Rules")
12(b)(2) and 12(b)(6), filed by defendant Bank Julius Baer & Co. Ltd. ("BJB").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover
BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action by the
Trustee seeks to recover approximately $64 million in subsequent transfers that BJB received from
BLMIS feeder funds Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), and
Fairfield Lambda Limited ("Lambda" and, together with Sentry and Sigma, the "FGG Feeder
Funds"). BJB moves to dismiss the AC, arguing that (i) this Court lacks personal jurisdiction over
BJB; (ii) the safe harbor under Section 546(e) of the Bankruptcy Code bars recovery; (iii) the
Trustee has failed to allege BLMIS's actual fraudulent intent; (iv) the Trustee violates Rules 8 and
10 by incorporating by reference the Trustee's Second Amended Complaint against the FGG
Feeder Funds (the "Fairfield SAC");[1] (v) the AC establishes BJB's Section 550(b) affirmative
defense; (vi) the Trustee has failed to allege BJB received customer property; and (vii) the newly-
alleged subsequent transfers to BJB from Sentry and Sigma (the "New Transfers") are barred by
the Section 550(f) statute of limitations because they do not relate back to the Trustee's original
Complaint (the "OC"). Other than as to relation back, these arguments are substantially the same

---

[1] *Picard v. Fairfield Inv. Fund Ltd.*, *et al.*, Adv. Pro. No. 09-01239 (CGM), ECF No. 286 (Bankr. S.D.N.Y. Aug. 28, 2020).

as those recently made by defendants and rejected by this Court in numerous other subsequent

transfer cases.[2]  For the reasons set forth herein, BJB's arguments fail.

First, this Court has personal jurisdiction over BJB.  BJB purposefully invested in the FGG

Feeder Funds, knowing from the funds' documents that BLMIS in New York was the *de facto*

investment manager, broker-dealer, and custodian of the funds' investments.  In addition, BJB

conducted a significant portion of its FGG Feeder Fund business from New York, met in-person

with Madoff in New York, met and corresponded with FGG Feeder Fund executives in New York,

and designated and used New York bank accounts to receive transfers at issue from Sentry.  These

facts are more than sufficient to establish jurisdiction.

Second, the safe harbor for settlement payments or transfers in connection with securities

contracts under Section 546(e) is inapplicable and does not bar recovery from BJB.  BJB's primary

argument—that the Trustee must plead *BJB's* actual knowledge as opposed to that of Sentry—

both misinterprets and directly conflicts with precedent in this SIPA liquidation proceeding.

Third, existing precedent, including in this SIPA liquidation proceeding, also defeats BJB's

argument that the Trustee has not adequately pled BLMIS's actual intent for purposes of avoiding

---

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banque Lombard Odier & Cie SA,* Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Banca Carige, S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Lloyds TSB Bank, PLC,* Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. LTD.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Delta Nat'l Bank & Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. Public Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*"); *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) (amended) ("*Union Securities*").  To avoid repetition and long string cites, the Trustee will avoid citing to all of these decisions, but they all support denial of BJB's Motion.

Pg 13 of 51

and recovering transfers of customer property. A long line of cases in this SIPA liquidation proceeding has found that BLMIS's transfers were made with actual intent based on the Ponzi scheme presumption and otherwise.

Fourth, the Trustee's incorporation by reference of the Fairfield SAC is appropriate under Rules 8(a) and 10(c). Such incorporation represents a practical method for the Trustee to plead avoidance of the initial transfers to Sentry, and BJB can respond to the allegations just as it would any other paragraph in the AC.

Fifth, the Section 550(b) defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate on a motion to dismiss. Consistent with this Court's recent decisions, it is BJB's burden to plead the defense in an answer and prove it with evidence; it cannot be established from the face of a complaint. *Banque Syz*, 2022 WL2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10.

Sixth, the Trustee has plausibly alleged that BJB received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the FGG Feeder Funds and subsequently to BJB. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer BJB received. At this stage of the litigation, nothing more is required.

Seventh, the New Transfers relate back to the OC and are therefore not time-barred because they were part of the same course of dealing between BJB and the FGG Feeder Funds as the transfers alleged in the OC. Moreover, the OC put BJB on notice that the Trustee was seeking to recover any and all avoidable transfers subsequently transferred to BJB by the FGG Feeder Funds.

For these reasons, the Trustee respectfully requests that the Court deny BJB's Motion.

<u>**STATEMENT OF FACTS**</u>

**I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS from New York until its collapse in 2008.  AC ¶ 36.

BLMIS was registered as a securities broker-dealer with the U.S. Securities and Exchange

Commission (the "SEC") beginning in January 1960.  *Id.* ¶37.  BLMIS had three principal business

units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment

advisory business (the "IA Business").   *Id.* ¶ 38.   For its IA Business customers, BLMIS

purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a)

investing in a basket of common stocks from the S&P 100 Index, (b) buying put options and selling

call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing

U.S. Treasury bills when the money was out of the market.  *Id.* ¶¶ 49, 51.  In reality, BLMIS

operated a Ponzi scheme through its IA Business.  *Id.* ¶¶ 39-67.  On December 11, 2008, Madoff's

fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws,

including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 24.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large

investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021),

*cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (U.S. Feb. 28,

2022) ("*Citibank*").  BJB invested in the FGG Feeder Funds, which it knew were BLMIS feeder

funds.  AC ¶¶ 15-17.

**II.    BJB AND ITS INVESTMENTS IN THE FGG FEEDER FUNDS**

At all relevant times, BJB was a Swiss bank providing global private banking and

investment services with significant expertise in hedge fund investments.  AC ¶¶ 3, 68.  From 1984

through April 2006, BJB maintained a New York branch.  *Id.* ¶¶ 11, 70.  At all relevant times, this

location was also the place of business of BJB's affiliate Julius Baer Investment Management LLC ("JBIM"), which acted as BJB's agent when vetting and approving BJB's investments in funds such as the FGG Feeder Funds. *Id.* ¶¶ 11-12, 71. Prior to BLMIS's collapse, BJB received at least the following subsequent transfers: $52,949,944 from Sentry; $11,262,340 from Sigma; and $363,949 from Lambda. *Id.* ¶¶ 79, 82, 88, Exs. C, E, G.

Sentry was created, operated, and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York. *Id.* ¶ 4; *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS. AC ¶¶ 4, 82; Fairfield SAC ¶ 89. Sigma and Lambda acted as foreign currency feeder funds, respectively facilitating euro and Swiss franc investments with BLMIS and investing all their assets with Sentry. AC ¶¶ 4, 86, 90; Fairfield SAC ¶ 96-97.

BJB entered into numerous subscription agreements with the FGG Feeder Funds, in which it agreed to New York choice of law, jurisdiction, and forum clauses. AC ¶¶ 17, 21. In these agreements, BJB affirmed that it had received and read the respective fund's Information Memorandum or Private Placement Memorandum (together, "PPMs"). *Id.* ¶ 17. The PPMs disclosed how the services of BLMIS were "essential to the continued operation of" the FGG Feeder Funds. *Id.* The PPMs also disclosed BLMIS's multiple roles as the *de facto* investment manager, broker-dealer, and custodian for the FGG Feeder Funds and highlighted the numerous U.S. connections inherent in investing in the funds. *Id.*

BJB's relationship with the FGG Feeder Funds was primarily established and maintained in New York by New York-based personnel. Among other things, BJB and JBIM personnel in

New York were responsible for approving BJB's investments in the FGG Feeder Funds, and met

in New York on several occasions with FGG executives and with Madoff. *Id*. ¶¶ 11-13. Foreign-

based BJB personnel also met and corresponded with New York-based FGG personnel regarding

BJB's FGG Feeder Fund investments. *Id*. ¶ 14.

In addition, BJB sent all of its Sentry subscription payments to, and received all of its

Sentry redemption payments from, Sentry's New York correspondent account (the "Sentry NY

Account"). AC ¶¶ 18, 20. All FGG Feeder Fund subscription payments were ultimately deposited

into BLMIS's account at JPMorgan Chase Bank in New York. *Id*. ¶¶ 18, 47.

BJB also designated and used both (i) a bank account in its own name at JPMorgan Chase

Bank in New York (the "JPMorgan NY Account"), and (ii) via Citco Global Custody NV ("Citco")

as its agent, a correspondent account at HSBC Bank USA in New York (the "HSBC NY

Account"), to receive dozens of its redemption payments from Sentry. *Id*. ¶ 20.

BJB also entered into a distribution and fee-sharing agreement with New York-based

Fairfield Greenwich Limited ("FG Limited"), pursuant to which it received quarterly retrocession

fees from FG Limited from at least 2005-2007 as compensation for investments it placed in Sentry.

*Id*. ¶¶ 22-23. Such agreements typically contained a New York governing-law clause. *Id*. ¶ 23.

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA

liquidation proceeding against the FGG Feeder Funds and related defendants to avoid and recover

fraudulent transfers of stolen customer property. AC ¶ 72. In 2011, the Trustee settled with the

FGG Feeder Funds. *Id.* ¶ 73. As part of the settlement, Sentry consented to a judgment in the

amount of $3.054 billion, but repaid only $70 million to the BLMIS estate. *Id.*; *Fairfield Inv.

Fund*, 2021 WL 3477479, at *3.[3] The Trustee then commenced a number of adversary proceedings

---

[3] Sigma and Lambda separately consented to judgments in the amounts of $752.3 million and $52.9 million, respectively. *See Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May

to recover the approximately $3 billion in missing customer property, including the above-captioned matter.  On April 15, 2022, with BJB's consent, the Trustee filed the AC, pursuant to the Stipulation and Order entered on March 18, 2022 (ECF No. 109).[4]

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER BJB

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only establish a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85.  These allegations are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

This Court has articulated the appropriate jurisdictional standard in its recent decisions in the Trustee's cases, describing the minimum contacts related to the claims at issue necessary to establish the Court's specific jurisdiction over a nonresident defendant.  *See, e.g.*, *Carige*, 2022 WL 2387522, at *2-5.  Accordingly, the requirements for purposeful availment, relatedness, and reasonableness will not be repeated at length here.

## A.    BJB Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the United States, and the Trustee's Claims Arise Out of or Relate to Such Availment

As detailed above and below, BJB had numerous contacts with New York that establish this Court's jurisdiction.  Many of these contacts independently establish jurisdiction, and based

---

18, 2009), ECF Nos. 108 (Lambda Consent Judgment) and 110 (Sigma Consent Judgment).  As feeder funds that invested in BLMIS indirectly through Sentry, these amounts represent a portion of Sentry's $3.054 billion in withdrawals from BLMIS.  *See id.*

[4] BJB formalized its consent and expressly reserved certain rights and waived certain arguments, as set forth in the Stipulation and Order entered on April 18, 2022 (ECF No. 112).

on their totality, jurisdiction unquestionably exists.

> **1.    BJB's Knowing and Intentional Investments With BLMIS Through the FGG Feeder Funds Are Sufficient Grounds for Jurisdiction**

BJB knowingly and intentionally directed tens of millions of dollars to BLMIS in New York through the FGG Feeder Funds in order to invest in the U.S. securities market.  AC ¶¶ 2, 15-17.  Such activity constitutes purposeful availment of the forum.

FGG Feeder Fund investors such as BJB were required to affirm in subscription agreements that they received and read the PPMs.  BJB thus knew that: (i) Sentry invested at least 95% of its assets with BLMIS, and Sigma and Lambda invested all of their assets with Sentry; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the SEC; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" Sentry.  *Id.* ¶ 17.  As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d. Cir. 2019).

> a.    <u>*BLI* and Recent Decisions of This Court Establish Jurisdiction Over BJB</u>

Based on a defendant's demonstrated intention to invest with BLMIS through Sentry, Judge Lifland concluded a number of years ago that FGG Feeder Fund investors such as BJB are subject to personal jurisdiction.  *See Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").  There, as here, the Trustee's suit was

"based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee executed subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507-08. And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous." *Id*. at 517 ("BLI's investments in Fairfield Sentry did not merely 'end up' in an account at BLMIS as a result of happenstance or coincidence.")

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions. *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Carige*, 2022 WL 2387522, at *3. In those cases, as here, the Trustee asserted allegations as to the purpose of the investment and the defendants' contacts with Sentry for ultimate investment with BLMIS. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87. Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Id.* at 87. This Court has further clarified that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the pre-discovery stage of litigation." *Carige*, 2022 WL 2387522, at *2; *see also, e.g., Lombard*, 2022 WL2387523, at *2 (same).

As with the foregoing cases, here, the AC makes clear that BJB knowingly directed its funds to be invested with New York-based BLMIS and that this was the fundamental purpose of its FGG Feeder Fund investments. In short, BJB "'intentionally tossed a seed from abroad to take

root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom.'" *Carige*, 2022 WL 2387522, at *3 (quoting *BLI*, 480 B.R. at 506). As such, the foregoing cases are controlling and resolve BJB's personal jurisdiction defense without any inquiry into its additional U.S. contacts.

<blockquote>b.    <u>*Walden* Does Not Save BJB From This Court's Jurisdiction</u></blockquote>

Seeking to sidestep *BLI*, BJB cites *Walden v. Fiore,* 571 U.S. 277 (2014), to argue that its investments' New York destination was just a known consequence of the unilateral activity of the FGG Feeder Funds, rather than its own deliberate and purposeful targeting of the forum. Motion at 8-9. However, *Walden* is of "no assistance to Defendant." *Multi-Strategy*, 641 B.R. at 87. The facts and applicable law of *Walden*, where the "effects test" was employed to assess whether injuries in a tort case arose within the forum based on tortious activity outside of the forum, are significantly different from those here. The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada. *See Walden*, 571 U.S. at 288-89. Under the facts of *this* case—where BJB has signed agreements expressly indicating its intent to direct custody and control over all of its funds to a specific U.S. broker-dealer in order to knowingly invest in the U.S. securities markets—it has purposefully availed itself of the laws and protections of the United States.

For similar reasons, BJB's effort to analogize its intentional investing into the U.S. markets to the mere entry into a contract with a plaintiff "that performed or was expected to perform in New York" also falls flat. Motion at 8-9. Unlike in *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285-86 (1970) (Motion at 8), the Trustee is not alleging that BJB's connection to the forum is limited to the benefits it received from a plaintiff's or third parties' activities in the

forum.[5]  Rather, the Trustee is alleging that BJB itself took actions both in, and intentionally directed towards, the forum.  The fact that many of these actions involved the FGG Feeder Funds does not defeat jurisdiction.   BJB's contacts with New York were "intertwined with [its] transactions or interactions with the plaintiff or other parties," *Walden*, 571 U.S. at 286, and thus support jurisdiction.

Equally unavailing are the cases BJB cites in support of its argument that "sending or receiving even large payments into or out of New York does not constitute purposeful availment if made to comply with a contract negotiated and executed outside of New York."  Motion at 9-10 & n.11 (citing *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590, 2017 WL 816136, at \*6 (S.D.N.Y. Mar. 1, 2017); *Rosenblatt v. Coutts & Co. AG*, 17 Civ. 3528 (AKH), 2017 WL 3493245, at \*4 (S.D.N.Y. Aug. 14, 2017); *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016); *Roper Starch Worldwide*, *Inc. v. Reymer & Assocs.,* 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998).  This Court has already determined that such cases are not relevant to the Trustee's actions against investors in BLMIS feeder funds.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").   Unlike all of the above cases, this action is not a dispute between two parties about services owed under a foreign contract. Rather, it is an action brought by a SIPA Trustee in a SIPA liquidation proceeding to recover fraudulent transfers from an investor whose transfers of funds to and from New York were for the sole purpose of investing with a New York-based broker-dealer purportedly trading U.S. securities.

---

[5] All of the other cases BJB cites in support of this point are similarly inapposite breach of contract cases where plaintiffs sought to base jurisdiction exclusively or primarily on their own contacts with the forum.  *See id.* n.8, n.9 (citing cases).

*See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

### 2.    BJB Had Numerous Additional Contacts With the Forum in Connection With Its FGG Feeder Fund Investments

As detailed in the AC, BJB also conducted a significant portion of its FGG Feeder Fund business out of BJB's New York branch, and had repeated and direct contacts with FGG and BLMIS in New York regarding its FGG Feeder Fund investments.  AC ¶¶ 11-14.  Specifically, personnel from BJB's New York branch, employed by BJB and/or its co-located affiliate and agent JBIM, (i) were responsible for approving BJB's investments in the FGG Feeder Funds, (ii) met and communicated with several FGG executives in New York, including at least five in-person meetings between 1999 and 2003, and (iii) met in-person with Madoff in New York on at least three occasions between 1998 and 2003.  *Id.* ¶ 12.  In addition, foreign-based BJB personnel met and communicated with New York-based FGG personnel.  *Id.* ¶ 14.

The foregoing contacts with New York related to BJB's transactions at issue in this action are a sufficient basis for personal jurisdiction.  *See*, *e.g.*, *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673 (RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone calls, and video conferences with company in New York subjected defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 221, 742 N.Y.S.2d 291 (App. Div. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases).  This Court has also repeatedly held that such contacts significantly support jurisdiction.  *See Lombard*, 2022 WL 2387523, at *3-4 (crediting allegations that defendant met in-person with Madoff, sent a Sentry subscription agreement to FGG's New York offices, and communicated with FGG employees in New York);

*First Gulf*, 2022 WL 3354955, at *3 (crediting allegations that defendant "traveled to New York City many times to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers in question here"); *Parson*, 2022 WL 3094092, at *4 (crediting allegations that defendant traveled to the U.S. on multiple occasions "to meet with FGG regarding the investments at issue in this case"). In addition, this Court has repeatedly noted that "'[a]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *E.g., Banque Syz*, 2022 WL 2137073, at *4 (quoting *Walden*, 577 U.S. at 285).

BJB asserts that the AC's allegations regarding BJB's meetings and communications in New York "lack even the minimal specificity required," because the Trustee does not specify the individuals who participated, the content of the discussions, or precisely how the discussions relate to the Trustee's claims. Motion at 12-14. BJB cites no authority for this "minimal specificity" requirement, because there is none.[6] All that is necessary for the Trustee's allegations to be accepted as true is that they are not "conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts must accept allegations as true but may reject "threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). The AC's allegations are plainly factual in nature and satisfy the Trustee's pleading burden. There is no requirement to provide the underlying factual support at

---

[6] BJB instead cites to a number of cases where jurisdiction based solely on communications with the forum was rejected because the communications were sporadic at best. *See* Motion at 12-13 (citing cases). These cases are not on point as (i) the Trustee is seeking to base jurisdiction on much more than just BJB's communications with New York, and (ii) the Trustee has alleged multiple substantial in-person meetings and other correspondence in and directed to New York, including three meetings with Madoff himself.

the motion to dismiss stage. *See, e.g.*, *Parson*, 2022 WL 3094092, at *2 ("At the pre-discovery stage, the allegations need not be factually supported."). The allegations are also far from conclusory, as they explain that the New York-based individuals in question "were responsible for approving BJB's investments in the FGG Feeder Funds," they specify the time periods during which the meetings took place, they name five FGG executives with whom BJB met, and they state that the meetings took place in New York, including at BLMIS's offices. AC ¶ 12.[7]

Finally, BJB devotes a single sentence to the argument that it is not "plausible, given Switzerland's strict privacy and banking secrecy laws, that BJB's New York personnel were handling BJB's Swiss accounts." Motion at 15. This vague argument both assumes that the New York BJB personnel must have specifically "handled" these accounts in order for their contacts to relate to the transfers at issue—an unwarranted assumption, as explained above—and is impermissibly factual and speculative in nature at the motion to dismiss stage.

### 3.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements Are Strong Jurisdictional Contacts

BJB's subscription agreements with the FGG Feeder Funds—in which it submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law—further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15. BJB argues that these provisions are irrelevant because the subscription agreements do not govern the redemptions at issue and therefore the Trustee cannot claim that BJB has consented to this Court's jurisdiction. Motion at 5-6. But the Trustee is not arguing

---

[7] For the same reason, the Trustee has adequately alleged that JBIM acted as BJB's agent, by alleging that JBIM acted for BJB regarding BJB's investments. The Trustee need not allege a formal agency relationship in order for JBIM's jurisdictional contacts to count as BJB's. *See BNP*, 594 B.R. at 190-91; *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986).

jurisdiction based on BJB's consent.[8]   Rather, as this Court found in *BLI*, BJB's agreements to New York venue, jurisdiction, and law further show that BJB purposefully directed its activities towards New York and provide another strong jurisdictional contact with New York.  480 B.R. at 517; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) ("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").[9]

### 4.    BJB's Purposeful Use of New York Bank Accounts Establishes Jurisdiction

This Court moreover has jurisdiction because BJB purposefully used the U.S. banking system to subscribe into and redeem from Sentry.

Courts have often held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction.  *See, e.g.*, *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same).  In this SIPA liquidation proceeding, this Court has similarly found jurisdiction where initial and subsequent transferee defendants invested through and

---

[8] As such, this Court's prior decision in the Fairfield chapter 15 liquidation proceedings, where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).

[9] For similar reasons, the Trustee's allegation that BJB entered into a Sentry-related distribution and fee-sharing agreement with New York-based FG Limited, which agreements were typically governed by New York law, is a valid jurisdictional contact, notwithstanding BJB's arguments to the contrary (Motion at 6 n.5).

received transfers from U.S. bank accounts. *See, e.g., Meritz*, 2022 WL 3273044, at *3 ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional.").

Based on the foregoing case law, BJB's uses of the JPMorgan NY Account, the HSBC NY Account, and the Sentry NY Account, described *supra*, alone are sufficient to confer personal jurisdiction over BJB.[10]

That the HSBC NY Account and the Sentry NY Account were correspondent does not change the analysis. Courts have held that the use of a correspondent bank account is also sufficient to establish personal jurisdiction. In the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012); *see also Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same). All that is necessary for "purposeful" use is that it was not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39 (distinguishing case where defendant passively received funds due entirely to another party's actions).

Here, the JPMorgan NY Account—a non-correspondent account—was in BJB's name, and BJB directed Sentry to send numerous redemption payments to this account, making the

---

[10] BJB argues that "[i]t is well established that 'payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction.'" Motion at 10-11 (quoting *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17 Civ. 3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (cleaned up)). As explained *supra* at pp. 11-12, cases involving disputes between two parties arising out of a foreign contract are inapposite.

purposeful use of such account obvious.  Similarly, Citco, as agent for BJB, designated and used

the HSBC NY Account to receive numerous redemption payments on behalf of BJB. [11]  And BJB's

use of the Sentry NY Account was also purposeful because BJB agreed and intended to use that

account.  *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,* 397 F. Supp. 3d

323, 346 (S.D.N.Y. 2019) ("[T]he point is not whether [defendant] owns the accounts, it is that

they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549

B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated

New York account for its own advantage, the receipt of the funds in New York is a 'contact'

properly attributed to [defendant].").  That Sentry's PPMs mandated subscribers to use the Sentry

NY Account is also irrelevant, because BJB voluntarily entered into its subscription agreements

with Sentry.  *See In re Arcapita Bank B.S.C.(C)*, No. 21 CIV. 8296 (AKH), 2022 WL 1620307, at

*6 (S.D.N.Y. May 23, 2022) (defendant's acceptance of contractual term designating New York

correspondent account supported finding of personal jurisdiction); *In re Motors Liquidation Co.,*

565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account

purposeful even where payment in New York was dictated by agreement). [12]

### 5.    The Foregoing Contacts Are "Related to" the Trustee's Claims

All of the foregoing contacts by BJB are sufficiently related to the Trustee's claims to

---

[11] It makes no difference if a Citco entity chose to use the Sentry NY Account on behalf of Sentry, as various Citco entities acted as FGG's agents.  *See Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (conduct of agent is attributed to principal for purposes of jurisdictional analysis).

[12] Because BJB made purposeful use of New York bank accounts, cases cited by BJB regarding defendants' "mere maintenance" of, or passive, "knowing receipt of funds" through, an account are inapposite.  Motion at 10-11 (citing *In re Sledziejoinwski*, Case No. 13-22050 (RDD), Case No. 13-22748, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010)).  For the same reason, the Trustee's action is not subject to BJB's concern that "[w]ere the *incidental* use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars in New York."  Motion at 11 n.13 (emphasis added; citing cases).

support jurisdiction. As the Supreme Court recently held, the "relate to" test does not require a causal relationship. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021). Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

Consistent with recent decisions by this Court, the Trustee's claims are directly related to BJB's investment activities with FGG and BLMIS. *See, e.g., Carige*, 2022 WL 2387522, at *4; *Parson*, 2022 WL 3094092, at *5. BJB argues that its sending of subscription payments to the Sentry NY Account is irrelevant, because only BJB's redemptions are at issue. Motion at 11. This view relies on an improperly narrow construction of relatedness. Investments and redemptions are two sides of the same coin. Thus, the Trustee's allegations regarding BJB's subscriptions plainly relate to the Trustee's claims.

For similar reasons, BJB has no basis to argue that its uses of New York accounts in connection with its redemptions are "entirely incidental to the Trustee's claims." Motion at 12. The Trustee is seeking to recover the very transfers that came through the New York accounts analyzed above, and thus BJB's use of these New York accounts is integral to the Trustee's claims. *See, e.g., HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts").

Finally, BJB's argument that there is no "specific nexus" alleged between BJB's meetings and communications and the subsequent transfers at issue is without merit. Motion at 13-15. The Trustee is not required to link every jurisdictional contact to a particular redemption or redemptions. Courts have jurisdiction over *defendants*, not *transfers*. *See, e.g., Parson*, 2022 WL 3094092, at *5 (considering the Trustee's jurisdictional allegations holistically and finding them

related to his claims).  Even in *BNP*, where the Court stated that "[e]ach transfer is a separate

claim" for personal jurisdiction purposes, 594 B.R. at 190, the Court did not conduct a transfer-

by-transfer analysis.  The Court focused on the overall relationship of each defendant with the

initial transferees, and determined it had jurisdiction.  *Id.* at 191.[13]

### B.      The Exercise of Personal Jurisdiction Over BJB Is Reasonable

Where a plaintiff has made a threshold showing of minimum contacts, a defendant must

present "a compelling case that the presence of some other considerations would render

jurisdiction unreasonable."  *Chloé*, 616 F.3d at 165.  BJB does not even attempt to make such a

case, and the Trustee submits that the exercise of jurisdiction is more than reasonable here.  *See,

e.g.*, *Multi-Strategy*, 641 B.R. at 88-89 (finding jurisdiction reasonable where, as here, defendant

had actively participated in the action, was represented by U.S. counsel, and had "irrevocably"

submitted to the jurisdiction of New York courts when it signed subscription agreements with

Sentry, and "[t]he forum and the Trustee both have a strong interest in litigating BLMIS adversary

proceedings in this Court").

Alternately, the Trustee respectfully requests jurisdictional discovery because, here, the

Trustee has made a threshold showing, and "additional facts to establish personal jurisdiction . . .

lie within [BJB's] knowledge."[14]

---

[13] Even if the Trustee was required to link each of BJB's communications and meetings to each transfer, he has done so here, because the AC alleges that these contacts were in connection with the investments underlying all the transfers, including the very approval of the investments.  AC ¶ 12.  It is thus of no consequence "that the alleged meetings predate, in many cases by several years, virtually all of the Redemptions" or that BJB's New York branch closed in 2006.  Motion at 15; *see Multi-Strategy*, 641 B.R. at 88 (holding that even if the timing of jurisdictional contacts mattered, there is no issue where "the Trustee is seeking to recover of [sic] funds Defendant received after its contacts were alleged to have occurred").

[14] *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a *prima facie* case for jurisdiction to obtain jurisdictional discovery).

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM BJB

In *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).  BJB's argument that Section 546(e) bars recovery against it, notwithstanding Sentry's actual knowledge, is based on a misreading of Section 546(e) and *Cohmad* and has been rejected by this Court in every case where it was raised to date.  *See, e.g., Parson*, 2022 WL 3094092, at *8.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

BJB sets forth at length the requirements of Section 546(e) and how they are presumably met in this case in multiple ways with respect to the initial transfers to Sentry, as established by *Cohmad*.  None of this matters.[15]  As BJB concedes, this Court has previously found the Trustee has sufficiently pled that the initial transferee Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable.  Motion at 21 (*citing Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *4).  As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from BJB, regardless of whether Sentry or BJB qualify as financial institutions or participants, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[16]

---

[15] The Trustee does not concede that any agreements or transfers between Sentry and BJB activate the safe harbor under Section 546(e), including, among other things, whether the initial transfers were in connection with the subscription agreements or were made for the benefit of BJB.  BJB is incorrect that the AC alleges that the initial transfers were made for BJB's benefit (*see* Motion at 17 (citing AC ¶¶ 10, 16)): the AC makes no such statement or implication.  But these issues are simply not relevant, because avoidability of the initial transfers turns on Sentry's actual knowledge of fraud at BLMIS.

[16] Though not necessary to the Court's analysis, BJB's argument (Motion at 4 n.3, 17 n.14) that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation, is incorrect.

The actual knowledge exception established in *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). BJB participated in the District Court proceedings and the District Court's review of this issue.[17] As such, BJB is bound by *Cohmad* and that decision is law of the case.[18]

## B.    Section 546(e) Does Not Apply Independently to Recovery Actions

BJB is incorrect that the Trustee must allege that the subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Specifically, BJB argues that under *Cohmad*, a defendant's subscription agreement with Sentry may act as the relevant "securities contract" in lieu of BLMIS's account agreement, and as such, in these Section 550 recovery actions, the Court must look solely to that *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable. Motion at 18-19. But *Cohmad* does not stand for this proposition, and BJB's argument is just a repackaging of the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions against subsequent transferees under Section 550. And as this Court has held, based on the same arguments BJB makes here, BJB "is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee" and the "safe harbor is not applicable to subsequent transfers." *E.g.*, *Multi-Strategy,* 641 B.R. at 94-95.[19]

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

---

[17] *See Picard v. Bank Julius Baer & Co. Ltd.*, Adv. Pro. No. 11-02922 (CGM), Mot. to Withdraw the Reference, ECF Nos. 6-8 (Bankr. S.D.N.Y. filed Mar. 27, 2012) (raising Section 546(e) as a grounds for withdrawal).

[18] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

[19] BJB's attempt to distinguish *Multi-Strategy* as a case where the Trustee "attempted to plead that the defendants had knowledge of Madoff's fraud" (Motion at 19 n.16) is thus unavailing. This holding as to the safe harbor was independent of any allegations as to the subsequent transferees' knowledge, and the Court has repeatedly reaffirmed it in the absence of such allegations. *See, e.g.*, *Cantonale*, 2022 WL 2761044, at *5-6.

the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard,* 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[20] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at \*4, \*9 (applying the "plain terms" of Section 546(e)); *id.* at \*7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and *id.* at \*10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances

---

[20] *See In re Madoff Sec.*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at \*9.[21]  Contrary to BJB's argument, the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  594 B.R. at 197.  In *BNP*, this Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme."  594 B.R. at 196-97 (emphasis in original).  Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee.  *Id*. at 197.

Most recently, this Court has repeatedly rejected the same arguments, holding that, notwithstanding the "securities agreement" at issue, "the safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'"  *See*, *e.g.,*

---

[21] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e).  *Cohmad,* 2013 WL 1609154, at \*8.  That argument became moot as both the Second Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement", and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore subject to Section 546(e).

*Multi-Strategy,* 641 B.R. at 94 (quoting *BNP*, 594 B.R. at 197); *Barclays,* 2022 WL 2799924, at *7 (same).

BJB's misinterpretation of *Cohmad* would mean the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection, thus effectively eliminating the point of the actual knowledge exception. It would also allow the determination as to avoidability of an initial transfer to vary based on whether there were subsequent transfers, and who received them. It further would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent. *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have.").

BJB also misconstrues *Cohmad*'s holding—which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor. Motion at 20-22. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. Rather, it merely ensures that any defendant that *doe*s have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7.

Finally, this Court's *Fairfield Inv. Fund* decision does not demand a different result. Motion at 20-21 n.18. Rather, as this Court has repeatedly held, in that case the Court "considered [a subsequent transferee's] actual knowledge of BLMIS's fraud only as it related to whether Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees

could raise the safe harbor defense on their own behalf, nor could it have, as § 546 is inapplicable to subsequent transferees." *E.g.*, *Multi-Strategy,* 641 B.R. at 95.

## III.    THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT

BJB argues that the Trustee has not adequately pled that BLMIS made the initial transfers to Sentry with actual fraudulent intent, and therefore, independent of Section 546(e), the Trustee also cannot avoid transfers under Section 548(a)(1)(A).  Motion at 22-24.  According to BJB, the Trustee must specifically allege that BLMIS made each transfer at issue with the requisite intent in order to comply with Rule 9(b)'s particularity requirement.  *Id.* at 22-23.

BJB is mistaken due to the Ponzi scheme presumption, which both this Court and the District Court recently reaffirmed applies in this SIPA liquidation proceeding.  *See First Gulf*, 2022 WL 3354955, at *10 ("The Ponzi scheme presumption is the law of this Circuit and the Trustee is entitled to rely on it to allege BLMIS' intent."); *In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *17-18 (S.D.N.Y. Feb. 17, 2022) (same).  The Ponzi scheme presumption is based on the recognition that "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 20, 2018) (citation omitted).  The intent to hinder, delay, or defraud creditors is presumed where the Trustee shows "(1) the transferor operated a Ponzi scheme; and (2) the transfers made to the transferee by the debtor were 'in furtherance' of the Ponzi scheme." *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019).

Like in *First Gulf*, 2022 WL 3354955, at *10, the allegations in the AC regarding BLMIS's Ponzi scheme are sufficient to plead the avoidability of the relevant transfers.  The AC contains detailed allegations that BLMIS engaged in a Ponzi scheme and that the initial transfers to Sentry were made in furtherance of that scheme.  *See* AC ¶¶ 42-67, 72-78, Ex. C.  Although BJB cites to

25

Judge Menashi's concurring opinion in *Citibank* as indicating that the law on this issue is unsettled, consistent with recent holdings by this Court and the District Court, the overwhelming weight of authority holds that the presumption is well-established. *See, e.g., Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022) ("Notwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'") (citation omitted); *see also First Gulf*, 2022 WL 3354955, at *10.[22]

## IV.    THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE INITIAL TRANSFERS

BJB argues that the Trustee's incorporation of the Fairfield SAC violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief. Motion at 25-26.  However, there is no doubt that the Trustee may incorporate the Fairfield SAC under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  As this Court recently held in, among other decisions, *Cantonale*, "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action," and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)."  *See Cantonale*, 2022 WL 2761044, at *3 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010)) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).[23]

BJB's argument conflicts with the prior opinion in *In re Madoff Sec.,* in which the District

---

[22] Alternately, and contrary to BJB's assertion (Motion at 23), the Trustee has sufficiently pled the necessary elements of BLMIS's actual intent to defraud.  *See* AC ¶¶ 42-67.  This Court and the District Court have recognized the independent sufficiency of the badges of fraud alleged here.  *See Nelson*, 610 B.R. at 235 (finding initial transfers made with actual fraudulent intent based on (i) concealment of facts and false pretenses by BLMIS, (ii) BLMIS's insolvency, and (iii) lack of consideration for the fictitious transfers); *see also Picard v. JABA Assocs. LP (In re Madoff)*, 528 F. Supp. 3d 219, 240-41 (S.D.N.Y. 2021).

[23] Cases cited by BJB, to the extent they reject incorporation of pleadings because the pleadings are from other actions, are thus inapposite.  *See* Motion at 25-26 (citing cases).

Court had already found sufficient the Trustee's incorporation by reference of the then-operative

Fairfield complaint. *See* 501 B.R. at 36; *see also, e.g., Multi-Strategy*, 641 B.R. at 91; *Cantonale*,

2022 WL 2761044, at *3 (each following "the district court's instruction"). BJB was a participant

in the omnibus withdrawal of the reference related to this decision. *See* Mot. to Withdraw the

Reference, ECF Nos. 6-8.

Moreover, even if this Court were to find that the adversary proceedings are separate

actions for purposes of Rule 10(c), the Court still can permit incorporation by reference, as the

District Court and other federal courts have done in appropriate circumstances. *See, e.g., Sherman*

*v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted)

(interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another

pleading in the same action, and permitting incorporation of entire pleadings in separate cases).

Cases cited by BJB rejecting incorporation are further distinguishable, because, unlike in

the instant matter, plaintiffs there were attempting to add new claims or defenses.[24]  A significant

issue in those decisions is that incorporation would have led to confusion and a lack of notice of

the claims asserted.  By contrast, the Trustee here is not seeking to add additional claims, and the

specific purpose of the incorporation is clear.  *See* AC ¶ 157 (incorporating Fairfield SAC in

connection with alleging avoidability of initial transfers, and noting Fairfield SAC paragraph

---

[24] *See Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 DLC, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (defendant attempted to incorporate additional affirmative defenses filed by defendants in other actions); *Davis* v. *Bifani*, No. 07–cv–00122–MEH–BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (plaintiff attempted to incorporate additional claims from parallel state-court action that were not alleged in the federal-court complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (plaintiff attempted to state new claim by incorporating reply brief he filed in the case that included "no specific factual allegations" supporting the claim); *Muhammad v. Bethel-Muhammad,* No. CIV.A. 11-0690-WS-B., 2012 WL 1854315, at *3 n.5 (plaintiff attempted to incorporate "100–page original complaint that has already been ruled legally improper, plus untold pages of 'evidence' found not in this lawsuit but in its predecessor"); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461-66 (E.D.N.Y. 2007) (plaintiff attempted to plead entirely new claims by referencing pleadings from prior actions, and complaint did not even expressly incorporate by reference these pleadings).

numbers of particular relevance). BJB's claim that the AC "fails to provide fair notice of the facts upon which the Trustee relies to establish his claims" (Motion at 26) is thus meritless.

In any case, regardless of incorporation, this Court may take judicial notice of its prior decision holding that the Fairfield SAC sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479, at \*7. Alternately, the Trustee respectfully requests the opportunity to replead.

## V.    THE SECTION 550(b) DEFENSE IS AN AFFIRMATIVE DEFENSE AND THUS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

This Court should also reject BJB's attempt to raise Section 550(b)'s three-pronged affirmative defense on a motion to dismiss, as it is premature and contrary to recent decisions by this Court and the District Court in this SIPA liquidation proceeding. *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 20-CV-02586 (CM), 2022 WL 1304589, at \*3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") (holding that the good faith element of the defense requires a post-discovery, fact-intensive inquiry); *First Gulf*, 2022 WL 3354955, at \*10 ("This affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint."); *Banque Syz*, 2022 WL 2135019, at \*10 (same). By their nature, affirmative defenses are fact-driven and require factual analyses and the presentation of evidence. *See, e.g.*, *United Teamster Fund v. MagnaCare Admin. Servs.*, LLC, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014).

BJB nonetheless contends that the Fairfield SAC on its face "shows that a diligent inquiry would not have enabled BJB to discover the fraudulent purpose of BLMIS's transfers," because other parties' allegedly diligent inquiries failed to do so. Motion at 28-29. The Court should again reject this argument. Whether BJB conducted a diligent inquiry, and what it did discover or would have discovered, is "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees." *ABN*

*Ireland*, 2022 WL 1304589, at *3 (quoting *Citibank*, 12 F.4th at 195); *see also First Gulf*, 2022

WL 3354955, at *11 (same); *Banque Syz*, 2022 WL 2135019, at *11 (same). Moreover, even if it

were appropriate to consider such arguments at this stage, others' failure to detect Madoff's fraud

is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R.

89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations

regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—

to detect the Ponzi scheme).

BJB makes similar arguments as to knowledge of voidability and value. Motion at 27-28,

30. But these are also fact-driven affirmative defenses to be addressed later in the litigation. *See*

*First Gulf*, 2022 WL 3354955, at *11 (holding that "'[v]alue' is Defendant's burden to plead and

prove" and that "[w]hether the Defendant gave value is a question of fact to be resolved either at

the summary judgment stage or at trial"); *Banque Syz*, 2022 WL 2135019, at *10-11 (same).

## VI.    THE TRUSTEE HAS PLED THAT BJB RECEIVED CUSTOMER PROPERTY

The AC plausibly alleges that BJB received subsequent transfers of BLMIS customer

property. To plead a subsequent transfer claim, the Trustee must allege facts that support an

inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515

B.R. 117, 149-150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). No tracing analysis is required, as the

pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds'

at issue." *Id*. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-

04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)); *see also Multi-Strategy*,

641 B.R. at 90. Rather, "the Trustee need only allege sufficient facts to show the relevant pathways

through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles*

*Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC*

*(In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee

must allege "'the necessary vital statistics—the who, when, and how much' of the purported

transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy*, 641 B.R.

at 90 (citing *BNP*, 594 B.R. at 195).

The AC meets these requirements. The AC alleges that BJB received transfers, identified

by date and amount, from Sentry, and that Sentry invested substantially all of its assets with

BLMIS. AC ¶¶ 4, 17, 72-82, Ex. C. The AC likewise alleges that BJB received transfers,

identified by date and amount, from Sigma and Lambda, and that Sigma and Lambda invested all

of their assets with Sentry. *Id.* ¶¶ 4, 17, 83-90, Exs. D-G. Thus, the AC plausibly alleges that BJB

received subsequent transfers of customer property by (a) outlining the relevant pathway through

which customer property was transferred from BLMIS to the FGG Feeder Funds and subsequently

to BJB and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for

each subsequent transfer. Nothing more is required. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 90.

### A.    BJB Misstates the Trustee's Pleading Burden

BJB argues that the Trustee must tie each subsequent transfer BJB received to a specific

initial transfer from BLMIS. Motion at 31-32. This is the same argument the Court has already

rejected numerous times. *See, e.g., Multi-Strategy*, 641 B.R. at 90; *see also Merkin I*, 515 B.R. at

150 (refusing to dismiss subsequent transfer claims even though the complaint did "not connect

each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS").

Likewise, the Court already rejected the argument that the Trustee must detail which and what

portion of each subsequent transfer comprises customer property. *See e.g., Multi-Strategy*, 641

B.R. at 90; *Merkin I*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of

the subsequent transfers . . . may be recoverable").[25]

---

[25] BJB attempts to distinguish *Merkin I* as a case where this Court gave the Trustee special latitude in pleading due to
the presence of inter-defendant transfers, which involved commingling of assets, and the need to investigate the books

BJB's reliance on *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),* 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Motion at 31-32), is unavailing because *Shapiro* did not change the pleading burden for recovery under Section 550(a).  Unlike here, the complaint in *Shapiro did not detail any* of the necessary vital statistics of the subsequent transfers and only alleged on information and belief that subsequent transfers were received by defendants.  *Id.* at 119.

**B.**     **BJB's Claims of Double Recovery Are Premature**

BJB argues that the Trustee's claims are "mathematically impossible" because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS.  Motion at 33-34. As this Court has stated, "[t]here is no dispute that the Trustee is limited to 'a single satisfaction' under § 550(a)."  *Multi-Strategy*, 641 B.R. at 95 (citing § 550(d)).  "He may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction."  *Id.* at 95-96 (citing § 550(a)(2)).  And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from BJB in this action and from defendants in other actions in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12.  "Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation."  *Multi-Strategy*, 641 B.R. at 96.

and records of the defendants.  Motion at 32-33.  But nothing in *Merkin I* indicates its holding is limited to those circumstances, and as set forth *infra* at pp. 32-34, similar circumstances exist here.

31

### C.    BJB's Tracing Arguments Fail on a Motion to Dismiss

BJB's other customer property arguments are fact-based tracing arguments inappropriate on a motion to dismiss. First, BJB claims that Sentry had already paid other investors with the customer property it received from BLMIS prior to making certain of the alleged transfers to BJB, implying that these transfers were funded by other Sentry investors' subscription payments. Motion at 32, 34-35. To reach this conclusion, BJB is in effect applying some undisclosed tracing methodology or methodologies of its choosing (presumably First In, First Out, or "FIFO").[26] But it is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances of this case. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.").[27] This Court noted in response to a similarly-styled argument in *Multi-Strategy* that it was "not convinced that this is the only method of calculating customer property." *Multi-Strategy*, 641 B.R. at 95.

This argument is also flawed to the extent it relies on the factual assumption that every subsequent transfer from Sentry preceding those to BJB was sourced solely by customer property.

---

[26] The declaration of BJB's counsel ("Halper Decl.") includes three charts reflecting calculations of various transfers from BLMIS to Sentry and Sentry to its investors, and a chart purporting to demonstrate that Sentry had no customer property on hand at the time it made certain transfers to BJB. *See* Halper Decl. ¶¶ 10-13, ECF No. 116. These calculations add and subtract transfers from over 90 proceedings, amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations. To this end, the Halper Decl. serves as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss).

[27] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin II*, 581 B.R. at 386.

Neither the AC nor its exhibits establish this, and at this stage, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at \*4 (D. Minn. June 10, 2020) (where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment). To the contrary, courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at \*3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at \*14-16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).

Moreover, without discovery, BJB's arguments are premature. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011). And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at \*5 (denying summary judgment because trustee introduced expert

33

report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).[28]

Finally, BJB argues that it could not have received any customer property because of the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to BJB that took place during a specific time period.  Motion at 34-35.[29]  This is a variation of BJB's tracing argument that Sentry transferred BLMIS's customer property to other investors. This Court has found the argument unavailing on a motion to dismiss. *See, e.g., Barclays*, 2022 WL 2799924, at *4 (holding that the Trustee plausibly alleged subsequent transfers of customer property even where in some instances the initial transfers took place ten to seventeen months beforehand).  Even if it may prove more difficult for the Trustee to trace all of the subsequent transfers sought here, this is not grounds for dismissal at the pleading stage.  *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *In re Dreier LLP,* 2014 WL 47774, at *15 ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

## VII.    THE NEW TRANSFERS RELATE BACK TO THE OC

Contrary to BJB's arguments, the Trustee's claims to recover the New Transfers are timely because they relate back to the OC.

---

[28] To this end, this Court should reject BJB's argument that the Trustee's claims should be dismissed because he "possesses all the records relevant to establishing whether any alleged transfers to BJB contained customer property." Motion at 32.  The Trustee does not have all of the FGG Feeder Funds' books and records, and discovery in the Trustee's actions against the FGG defendants continues.  *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 22, 2022 deadline for fact discovery and August 22, 2023 deadline for expert discovery).

[29] To the extent the Court finds it relevant, BJB conveniently ignores the many alleged transfers in the AC where the initial and subsequent transfers are close in time.

A.    **Relevant Legal Standards**

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original

pleading when . . . the amendment asserts a claim or defense that arose out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R.

Civ. P. 15(c)(1)(B).  Courts in the Second Circuit, including this Court, have "liberally construed"

Rule 15, which "does not set a high bar for relation back, so long as the claims attempted to be

asserted in the new complaint share a reasonable measure of common ground with the allegations

in the original pleading."  *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr.

S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou

Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)); *see also Siegel v. Converters Transp.,

Inc.*, 714 F.2d 213, 215-16 (2d Cir. 1983); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12.  This is

because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided

on its merits rather than on procedural technicalities."  *Fairfield Inv. Fund*, 2021 WL 3477479, at

*12 (quoting *Siegel*, 714 F.2d at 217).  Thus, "[t]he principal inquiry . . . is whether the general

fact situation alleged in the original pleading provides adequate notice to the opposing party of the

matters raised in the amended pleading."  *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

Additional fraudulent transfer claims against existing defendants relate back to the original

pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as

the originally alleged transfers.  *Peter Madoff*, 468 B.R. at 633 (citing *Adelphia Recovery Trust v.

Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)).  When examining "conduct" under

Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course

of conduct as the transfers alleged in the original complaint," and whether "the original complaint

g[a]ve sufficient notice to the defendants that the Trustee[] may sue for additional transfers that

35

were part of the same course of conduct[.]" *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted).

## B.    The New Transfers Were Made as Part of the Same Course of Conduct as the Transfers Alleged in the OC

Relation back should be permitted here because the Trustee has alleged an underlying common course of conduct involving BJB's investing into and redeeming from Madoff's fraud through BLMIS feeder funds in both the OC and the AC.  The New Transfers are subsequent transfers being sought under the same legal theories and as part of the same set of facts as set forth in the OC.  Both sets of transfers are being sought under Section 550(a) and are subsequent transfers of customer property received by BJB from FGG Feeder Funds in connection with the BLMIS Ponzi scheme.  Thus, any defenses BJB might have regarding the New Transfers will likely be the same as or similar to the defenses to the original transfers.  In sum, the New Transfers are no different in form or substance to the transfers alleged in the OC, and therefore they relate back.

BJB argues that the fact that the New Transfers are part of the same Ponzi scheme as those alleged in the OC is an insufficient basis for relation back.  Motion at 37-38.  Numerous courts have found otherwise.  *See, e.g., Goldberg v. Halbert, (In re Woodbridge Group of Companies, LLC)*, No. 19-51027 (JKS), 2021 WL 5774217, at *9-11 (Bankr. D. Del. Dec. 6, 2021) (finding relation back of new claims to recover principal, where original complaint just sought interest, because "both the initial and amended claims arise from the Defendant's investment in the Woodbridge Ponzi Scheme," and as an investor defendant was on notice that any of his transfers might be subject to clawback); *In re Juliet Homes,* 2011 WL 6817928, at *7 ("The fraudulent transfers alleged in the original complaint, along with the new transfers alleged in the [proposed amended complaint], are alleged to have been part of this overall Ponzi scheme.  Both the original

and the newly alleged fraudulent transfers therefore arose as part of the same course of alleged conduct."); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (holding allegations in amended complaint related back as part of same basic scheme even though events were distinct from those alleged in the original complaint).[30]

In any event, this Court need not reach this argument, because as set forth above, there is a more specific basis for relation back here: namely, that the relevant defendant, its investment in BLMIS through and receipt of subsequent transfers from BLMIS feeder funds, and the underlying legal basis for seeking the New Transfers are all the same as in the OC. *See Peter Madoff*, 468 B.R. at 633-34 (permitting relation back where original and amended complaints alleged transfers under the "same legal theories"); *Adelphia*, 624 F. Supp. 2d at 333-34 (permitting relation back where new transfers related to the same alleged fraudulent loan transactions); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12-13 (permitting relation back for subsequent transferees out of FGG Feeder Funds where the relevant entities were named as subsequent transferee defendants in the original complaint).

BJB also argues that this Court should follow *BNP*, 594 B.R. at 211-12, and distinguish *Adelphia* and *Peter Madoff*, on the grounds that here, the Trustee "does not allege that the [New] [T]ransfers were redeemed by the same BJB customer, at the same time, for the same amount, for the same reason, or pursuant to the same contract." Motion at 39. But *BNP* does not support

---

[30] BJB cites cases on this point (Motion at 37) that are distinguishable. *See In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 181-82 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) (plaintiff did not allege that new preference claims were part of any common scheme, and original complaint plainly failed to put defendants on notice; court distinguished the preferences from the categories of transfers originally alleged, including fraudulent transfers that were part of the debtors' scheme); *Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler )*, 66 B.R. 977, 979-84 (Bankr. S.D.N.Y. 1986) (plaintiff made no "allegations implying an overall scheme" uniting the old and new transfers, and the new transfers occurred during a different time period); *In re Uplift RX, LLC*, 625 B.R. 364, 376-77 (Bankr. S.D. Tex. 2021) (plaintiff made no allegations whatsoever suggesting that debtors and defendants "were engaged in any fraudulent scheme or common 'course of conduct'" that could unite the old and new transfers).

placing such exacting burdens on the Trustee. In *BNP*, the court denied relation back where over half the transfers involved a transferor that did not appear in the original complaint. 594 B.R. at 211-12. In addition, the transfers there varied in nature: some "arose from either separate and distinct loans, credit facilities or derivative transactions with various counterparties while others appear to relate to either redemptions or equity distributions to the Defendants as direct investors in the Tremont Funds." *Id.* at 211-12. The court therefore found that the "facts and circumstances surrounding the value given in exchange for the transfer will differ" and held that the transactions did not arise out of the same "core of operative facts." *Id.* at 211. In contrast, the transactions at issue here are all simple redemptions made from feeder fund investments that were, in turn, invested with BLMIS, and arise out of the same core of operative facts as the redemptions in the OC.[31]

### C.   The OC Provided Notice to BJB That the Trustee Would Sue for Any Additional Transfers That Were Part of the Same Course of Conduct

The OC also put BJB on notice that it would be asked to account for the New Transfers. In the OC, the Trustee indicated his intention to pursue all subsequent transfers to BJB, including those not known at the time of filing. As this Court has stated, "[t]he primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Fairfield Inv. Fund*, 2021 WL 3477479, at *12; *see also Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*, 67 B.R. 304, 306 (Bankr. S.D.N.Y. 1986) ("[I]f the original complaint indicates an intention to pursue all transactions, the adding of such

---

[31] Moreover, the existing and New Transfers were, in any event, "redeemed . . . pursuant to the same contract," namely the Sentry/Sigma Articles of Association, which governed BJB's investment relationship and all of its redemptions, as recognized by BJB (*see* Motion at 18). It is also irrelevant whether the New Transfers "were redeemed by the same BJB customer"—BJB is the subscriber and redeemer and sole defendant in this action.

transactions will relate back.").

For example, in *Fairfield Inv. Fund*, this Court held that the following language in the prior

complaint was sufficient to give defendants notice:

> The money transferred from BLMIS to the Feeder Funds was
> subsequently transferred by the Feeder Funds to the FGG Affiliates
> . . . . These payments from the Feeder Funds constitute subsequent
> transfers of the Initial Transfers from BLMIS to the Feeder Funds.
> Because the FGG Affiliates . . . did not take the funds in good faith
> or without knowledge of the voidability of the initial transfers, all
> transfers from BLMIS to the Feeder Funds, which the Feeder Funds
> subsequently transferred, either directly or indirectly, to the FGG
> Affiliates . . . (the "Subsequent Transfers"), were and remain
> Customer Property subject to turnover to the Trustee and/or are
> avoidable and recoverable by the Trustee.

2021 WL 3477479, at *12.  This Court reasoned that the Trustee, as an outsider to the transactions,

need not include every subsequent transfer in the initial complaint:

> [T]he Trustee is an outsider to these transactions and will need
> discovery to identify the specific subsequent transfers by date,
> amount and the manner in which they were effected.  The Moving
> Defendants are a group of interrelated individuals and entities . . . .
> Whether they additionally received Subsequent Transfers of BLMIS
> funds from one another is a question to which they, and they alone,
> have the requisite information to respond.

*Id.* at *13 (quoting *Picard v. Est. of Stanley Chais (In re BLMIS, LLC)*, 445 B.R. 206, 236 (Bankr.

S.D.N.Y. 2011)).

Here, the OC includes the following allegation: "The Trustee's investigation is ongoing,

and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial

Transfers, the [Sentry, Sigma, and Lambda] Subsequent Transfers, and any additional transfers,

and (ii) seek recovery of such additional transfers."  OC ¶¶ 41, 43, 45.  That language is even

clearer than the language used in *Fairfield Inv. Fund* as described above.  *See also Peter Madoff*,

468 B.R. at 633-34 (finding sufficient for relation back purposes language stating "[a]t this time,

39

the Trustee has identified at least $198,743,299 of customer funds"); *Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*, 443 B.R. 918, 922 (Bankr. N.D. Ga. 2011) ("The complaint expressly states that the Trustee intends to avoid all transfers that [defendant] received" from the Ponzi scheme "during the relevant time periods."); *In re Juliet Homes*, 2011 WL 6817928, at *7 (finding that defendants were on notice that the trustees would likely view any transfers from debtors as potentially fraudulent in light of the allegations concerning the Ponzi scheme); *Adelphia*, 624 F. Supp. 2d at 333 (permitting relation back where the original pleading sought *all* payments from margin loss).[32]

Based on the Trustee's express allegations in the OC, BJB was aware that the Trustee would be continuing his investigation and may identify additional transfers to recover. *See* OC ¶¶ 41, 43, 45; *see also id.* ¶¶ 40, 42, 44, 48 (stating that the subsequent transfers being sought are those "presently known" and "[b]ased on the Trustee's investigation to date," and that the Trustee is seeking "at least" the amounts alleged therein). The Trustee therefore not only included the transfers of which he had knowledge in the OC, but also specifically and unambiguously put BJB on notice that he would seek to recover any additional transfers that he later uncovered in his investigation.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests the Court deny the Motion.

---

[32] The fact that this same language existed in *BNP*, as pointed out by BJB (Motion at 39), is irrelevant. As detailed above, the Court there denied relation back based on a determination that the new transfers did not arise from the same common scheme or course of conduct; it did not address the sufficiency of this clause or even cite to it in the decision.

Dated:    September 12, 2022          /s/ David J. Sheehan
        New York, New York          **BAKER & HOSTETLER LLP**
                                     45 Rockefeller Plaza
                                     New York, New York 10111
                                     Telephone: (212) 589-4200
                                     Facsimile: (212) 589-4201
                                     David J. Sheehan
                                     dsheehan@bakerlaw.com
                                     Keith R. Murphy
                                     kmurphy@bakerlaw.com
                                     Ferve E. Khan
                                     fkhan@bakerlaw.com
                                     Eric B. Hiatt
                                     ehiatt@bakerlaw.com
                                     Anat Maytal
                                     amaytal@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**Windels Marx Lane & Mittendorf, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
Kim M. Longo
Email: klongo@windelsmarx.com
Alan D. Lawn
Email: alawn@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*