ALLEGAERT BERGER & VOGEL LLP
John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

MAYER BROWN LLP
Mark G. Hanchet
Kevin C. Kelly
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: 212-506-2500
Email: mhanchet@mayerbrown.com
Email: kkelly@mayerbrown.com

Marc R. Cohen
1999 K St NW
Washington, DC 20006
Tel. No.: 202-263-5282
Email: mcohen@mayerbrown.com

*Attorneys for Defendant Lombard Odier & Cie SA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |

| | |
|---|---|
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01693 (CGM) |
| Plaintiff, v. | **ANSWER TO COMPLAINT AND JURY DEMAND** |
| BANQUE LOMBARD ODIER & CIE SA, | |
| Defendant. | |

Banque Lombard Odier & Cie SA ("Lombard Odier"), by its undersigned counsel Allegaert Berger & Vogel LLP and Mayer Brown LLP, as and for its Answer to the Complaint dated June 6, 2012, of Plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff (the "Trustee" or the "Plaintiff") (the "Complaint"), states as follows:[1]

## GENERAL DENIAL

Except as otherwise expressly admitted herein, Lombard Odier denies each and every allegation in the Complaint. Lombard Odier states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, Lombard Odier does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint.

---

[1] Capitalized terms not defined herein have the meaning set forth in the Complaint.

To the extent it is later determined that a response is required to any allegation Lombard Odier

avers has been mooted by a prior dismissal of the Trustee's claims, Lombard Odier denies any

such allegation.  Lombard Odier expressly reserves the right to amend and/or supplement the

Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to
recover BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme
perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER**:    The allegations of paragraph 1 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies knowledge

or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the

Complaint, except admits that Plaintiff purports to bring this action as trustee for the liquidation

of BLMIS and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pursuant

to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq*, and that Madoff

perpetrated a Ponzi scheme through BLMIS.

2.    With this Complaint, the Trustee seeks to recover approximately
$179,432,380 in subsequent transfers of Customer Property made to Defendant Lombard Odier.
The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry
Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate Global"), which were
Madoff feeder funds (collectively, the "Feeder Funds").  The Feeder Funds are British Virgin
Islands ("BVI") companies that are in liquidation in the BVI.  The Feeder Funds had direct
customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose
of investing assets with BLMIS.  Each of the Feeder Funds maintained in excess of 95% of its
assets in its BLMIS customer accounts.  Some of the subsequent transfers from Fairfield Sentry
came through Fairfield Sigma Limited ("Fairfield Sigma"), which invested 100% of its assets in

---

[2] Footnote 1 of the Complaint states: "SIPA § 78*lll*(4) defines 'Customer Property' as cash and
securities at any time received, acquired, or held by, or for the account of, a debtor from, or for,
the securities accounts of a customer, and the proceeds of any such property transferred by the
debtor, including property unlawfully converted."

3

Fairfield Sentry. Fairfield Sigma also is in liquidation in the BVI.

**ANSWER**: The allegations of paragraph 2 contain legal conclusions to which

no response is required. To the extent a response is required, Lombard Odier denies the

allegations in paragraph 2 of the Complaint except admits that (1) Fairfield Sentry is a BVI

company currently in liquidation in the BVI; (2) Fairfield Sigma is a BVI company also

currently in liquidation in the BVI; and (3) the Trustee seeks to recover approximately

$94,791,451 in alleged subsequent transfers to Lombard Odier.[3]

3.    When Defendant Lombard Odier received the subsequent transfers of
BLMIS Customer Property, Defendant Lombard Odier was a global banking and wealth
management institution offering a wide range of financial advisory services to private and
institutional clients.

**ANSWER**: Lombard Odier denies the allegations of paragraph 3 except admits

that at all relevant times it was a Swiss bank that provided custody, brokerage and/or wealth

management services to private and institutional clients.

## II.    <u>JURISDICTION AND VENUE</u>

4.    The Trustee brings this adversary proceeding pursuant to his statutory
authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 550(a), and 551
of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the
New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§
273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant
Lombard Odier as a subsequent transferee of funds originating from BLMIS.

---

[3] Pursuant to a Stipulation and Order entered on January 27, 2022, ECF 86 (the "Kingate
Stipulation"), the Trustee's claims to recover (1) alleged subsequent transfers that Lombard
Odier allegedly received from Kingate Global Fund, Ltd. (*i.e.*, Count Two) and (2) five alleged
subsequent transfers that Lombard Odier allegedly received from Fairfield Sentry, as identified
in Schedule I to the Kingate Stipulation, were dismissed.

**ANSWER**:    The allegations of paragraph 4 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies the

allegations of paragraph 4 of the Complaint.

5.    This is an adversary proceeding brought in this Court, in which the main
underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA
Case"), is pending.  The SIPA Case was originally brought in the United States District Court for
the Southern District of New York (the "District Court") as *Securities Exchange Commission v.
Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court
Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §
1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER**:    The allegations in paragraph 5 contain legal conclusions to which

no response is required.  To the extent that a response is required, Lombard Odier denies the

allegations of paragraph 5 of the Complaint, except admits that the main substantively

consolidated SIPA case (No. 08-01789 (CGM)) is pending in this Court, and denies knowledge

or information sufficient to form a belief as to where that case was originally brought.

6.    Defendant Lombard Odier is subject to personal jurisdiction in this
judicial district because it purposely availed itself of the laws and protections of the United
States and the state of New York by, among other things, knowingly directing funds to be
invested with New York-based BLMIS through the Feeder Funds.  Defendant Lombard Odier
knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder
Funds.

**ANSWER**:    The allegations of paragraph 6 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies the

allegations of paragraph 6 of the Complaint.

7.    By directing its investments through Fairfield Sentry and Fairfield Sigma,
both Fairfield Greenwich Group ("FGG") managed feeder funds, Defendant Lombard Odier
knowingly accepted the rights, benefits, and privileges of conducting business and/or
transactions in the United States and New York.  Upon information and belief, Defendant
Lombard Odier entered into a subscription agreement with Fairfield Sentry under which it
submitted to New York jurisdiction, sent a copy of the subscription agreement to FGG's New
York City office, and wired funds to Fairfield Sentry through a bank in New York.  Defendant
Lombard Odier also regularly communicated by e-mail and letters with its FGG account
representatives located in FGG's New York City office.  Defendant Lombard Odier thus derived

significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

ANSWER:    The allegations of paragraph 7 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 7, except (1) admits that it entered into a subscription agreement with Fairfield Sentry, and refers the Court to that document for its contents and (2) admits that, on occasion, it wired funds to Fairfield Sentry through a bank in New York.

8.    Defendant Lombard Odier should reasonably expect to be subject to New York jurisdiction, and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

ANSWER:    The allegations of paragraph 8 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 8 of the Complaint.

9.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

ANSWER:    The allegations of paragraph 9 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 9 of the Complaint.

10.    Venue in this District is proper under 28 U.S.C. § 1409.

ANSWER:    The allegations of paragraph 10 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 6 of the Complaint.

## III.    **BACKGROUND**

11.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and

BLMIS.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.  The District Court Proceeding remains pending.

   **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies such allegations, except admits on information and belief that Madoff was arrested on December 11, 2008 and that the SEC filed a complaint against Madoff and BLMIS.

   12. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

   **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and therefore denies such allegations, and respectfully refers the Court to the Order dated December 12, 2008, for a complete and accurate statement of its contents.

   13. On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

   **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and therefore denies such allegations, and respectfully refers the Court to the application filed by SIPC referred to in paragraph 13 of the Complaint for a complete and accurate statement of its contents.

   14. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

    a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);
    b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and
    c. removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 14 of the Complaint and therefore denies

such allegations, and respectfully refers the Court to the Order issued by Judge Stanton dated

December 15, 2008, for a complete and accurate statement of its contents.

15.    By orders dated December 23, 2008, and February 4, 2009, respectively,
the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested
person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of
BLMIS.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 15 of the Complaint and therefore denies

such allegations, and respectfully refers the Court to the Orders dated December 23, 2008, and

February 4, 2009, for a complete and accurate statement of their contents.

16.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case
captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009)
(Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by
the United States Attorney's Office for the Southern District of New York.  At the Plea Hearing,
Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of
[BLMIS]." *Id.* at 23.  Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I
was doing [was] wrong, indeed criminal." *Id.*  On June 29, 2009, Madoff was sentenced to 150
years in prison.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies

such allegations, except admits on information and belief that Bernard L. Madoff pled guilty at a

plea hearing on March 12, 2009, and respectfully refers the Court to the transcript of that hearing

for a complete and accurate statement of its contents.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled
guilty to participating in and conspiring to perpetuate the Ponzi scheme.  At a plea hearing on
August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS)
(S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information.  Among

other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.  *Id*. at 46.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies such allegations, and respectfully refers the Court to the transcript of the plea hearing of Frank DiPascali on August 11, 2009, for a complete and accurate statement of its contents.

## IV.    TRUSTEE'S POWER AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway.  However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies such allegations, except states that the allegations concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code contain legal conclusions to which no response is required.

19.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER**:    The allegations of paragraph 19 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 19 of the Complaint.

20.      Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER**:      The allegations of paragraph 20 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 20 of the Complaint.

21.      The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER**:      The allegations of paragraph 21 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 21 of the Complaint.

## V.      THE DEFENDANT

22.      Defendant Lombard Odier is a Swiss limited partnership that maintains a place of business at Rue de la Corraterie 11, 1204 Geneva, Switzerland.

**ANSWER**:      Lombard Odier denies the allegations in paragraph 22, except (1) admits that, at all relevant times and until the end of 2013, Lombard Odier was a Swiss limited partnership that maintained a place of business at Rue de la Corraterie 11, 1204 Geneva, Switzerland; and (2) admits that, beginning early 2014, Lombard Odier converted to a Swiss limited company that maintains a place of business at Rue de la Corraterie 11, 1204 Geneva, Switzerland.

## VI.      THE PONZI SCHEME

23.      BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members.  BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. §

78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

    **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies such allegations.

    24. Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100") – a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

    **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore denies such allegations.

    25. The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

    **ANSWER**: Lombard Odier denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies such allegations.

    26. BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform

on which BLMIS reasonably could have traded securities.  Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

ANSWER:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 26 of the Complaint and therefore denies

such allegations, and respectfully refers the Court to the transcript of the Madoff Plea Hearing

for a complete and accurate statement of its contents.

27.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

ANSWER:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 27 of the Complaint and therefore denies

such allegations.

28.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme.  The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments to enrich himself, his associates, and his family.

ANSWER:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 28 of the Complaint and therefore denies

such allegations.

29.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 29 of the Complaint and therefore denies

such allegations.

30.    It was essential for BLMIS to honor requests for payments in accordance
with the falsely inflated account statements, because failure to do so promptly could have
resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 30 of the Complaint and therefore denies

such allegations.

31.    Madoff's scheme continued until December 2008, when the requests for
withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the
Ponzi scheme.

**ANSWER**:    Lombard Odier admits that the Ponzi scheme collapsed in

December 2008 but denies knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 31 of the Complaint and therefore denies such allegations.

32.    Based upon the Trustee's ongoing investigation, it now appears there were
more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December
2008, BLMIS generated account statements for its approximately 4,900 open customer accounts.
When added together, these statements purportedly showed that BLMIS customers had
approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth
only a fraction of that amount.  Customer accounts had not accrued any real profits because
virtually no investments were ever made.  By the time the Ponzi scheme came to light on
December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in
principal.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 32 of the Complaint and therefore denies

such allegations.

33.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of
dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than
the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the
time of the transfers, BLMIS was left with insufficient capital.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 33 of the Complaint and therefore denies

such allegations.

## VII.    THE TRANSFERS

34.    The Feeder Funds received initial transfers of BLMIS Customer Property.
Some or all of those transfers were subsequently transferred directly or indirectly to Defendant
Lombard Odier.

**ANSWER**:    Lombard Odier denies the allegations of paragraph 34 of the

Complaint.

### A.    Fairfield Sentry

### 1.    Initial Transfers from BLMIS to Fairfield Sentry

35.    The Trustee has filed an adversary proceeding against Fairfield Sentry,
Fairfield Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v.
Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought
to avoid and recover the initial transfers of Customer Property from BLMIS to Fairfield Sentry in
the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee
incorporates by reference the allegations contained in the Fairfield Amended Complaint as if
fully set forth herein.

**ANSWER**:    The allegations of paragraph 35 refer to proceedings in another

litigation to which Lombard Odier is not a party. Lombard Odier respectfully refers the Court to

the docket and filings in that action for their contents. To the extent a further response is

required, Lombard Odier states that it was never a party to Adv. Pro. No. 09-01239 (the

"Fairfield Adversary Proceeding") and was never served with a copy of the Fairfield Amended

Complaint in the Fairfield Adversary Proceeding. Lombard Odier objects to the purported

wholesale incorporation by reference of a pleading from another litigation as a violation of Rule

8 of the Federal Rules of Civil Procedure as incorporated by Rule 7008 of the Federal Rules of

Bankruptcy Procedure. To the extent a further response is required, Lombard Odier denies

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 35 of the Complaint and therefore denies such allegations.

36.     During the six years preceding the Filing Date, BLMIS made transfers to
Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers").
The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within
the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and
551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA,
particularly SIPA § 78fff-2(c)(3).

       **ANSWER**:     The allegations of paragraph 36 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies knowledge

or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the

Complaint and therefore denies such allegations.

37.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6
billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing
Date (the "Fairfield Sentry Two Year Initial Transfers").  The Fairfield Sentry Two Year Initial
Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and
are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code,
§§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

       **ANSWER**:     The allegations of paragraph 37 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies knowledge

or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the

Complaint and therefore denies such allegations.

38.     The Fairfield Sentry Two Year Initial Transfers include approximately
$1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing
Date (the "Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference
Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA
§ 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy
Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

       **ANSWER**:     The allegations of paragraph 38 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies knowledge

or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the

Complaint and therefore denies such allegations.

39.     The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**ANSWER**:     Lombard Odier denies the allegations of paragraph 39 of the

Complaint and respectfully refers the Court to Exhibits A and B for their complete and accurate

contents.

40.     Pursuant to the Bankruptcy Court's June 7 and June 10, 2011, orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment against Fairfield Sentry in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

**ANSWER**:     Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 40 of the Complaint and respectfully refers

the Court to the Settlement Agreement and the June 7, 2011, June 10, 2011, and July 13, 2011,

Orders referenced in paragraph 40 for their complete and accurate contents.

## 2.     Subsequent Transfers from Fairfield Sentry to Defendant Lombard Odier

41.     A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lombard Odier and is recoverable from Defendant Lombard Odier pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $95,595,385 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Lombard Odier (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**ANSWER**:     The allegations of paragraph 41 contain legal conclusions to which

no response is required. To the extent a response is required, Lombard Odier denies the

allegations of paragraph 41 of the Complaint, and respectfully refers the Court to Exhibit C to

the Complaint, as amended by the Stipulation and Order entered by the Court on January 27,

2022 [ECF No. 86] for their complete and accurate contents.

42.    The Trustee's investigation is on-going, and the Trustee reserves the right
to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry
Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional
transfers.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 42 of the Complaint and therefore denies

such allegations.

**3.      Subsequent Transfers from Fairfield Sentry to Fairfield Sigma and
Subsequently to Defendant Lombard Odier**

43.    A portion of the Fairfield Sentry Initial Transfers was subsequently
transferred either directly or indirectly to, or for the benefit of, Defendant Lombard Odier
through Fairfield Sigma and is recoverable from Defendant Lombard Odier pursuant to section
550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to
date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was
subsequently transferred by Fairfield Sentry to Fairfield Sigma.  Thereafter, the equivalent of
approximately $1,279,986 was transferred by Fairfield Sigma to Defendant Lombard Odier (the
"Fairfield Sigma Subsequent Transfers").  Charts setting forth the presently known Fairfield
Sigma Subsequent Transfers are attached as Exhibits D and E.

**ANSWER**:     The allegations of paragraph 43 contain legal conclusions to which

no response is required.  To the extent a response is required, Lombard Odier denies the

allegations of paragraph 43 of the Complaint and respectfully refers the Court to Exhibits D and

E to the Complaint for their complete and accurate contents.

44.    The Trustee's investigation is ongoing, and the Trustee reserves the right
to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sigma
Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional

transfers.

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 44 of the Complaint and therefore denies

such allegations.

45.    The Fairfield Sentry Subsequent Transfers and the Fairfield Sigma
Subsequent Transfers are collectively defined as the "Fairfield Subsequent Transfers."

**ANSWER**:    Lombard Odier denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 45 of the Complaint and therefore denies

such allegations, except admits that the term "Fairfield Subsequent Transfers" is defined in the

Complaint as the Fairfield Sentry Subsequent Transfers and the Fairfield Sigma Subsequent

Transfers.

B.    **KINGATE GLOBAL**

1.    **Initial Transfers from BLMIS To Kingate Global**

46.    The Trustee has filed an adversary proceeding against Kingate Global and
other defendants in the Bankruptcy Court under the caption *Picard v. Kingate Global Fund Ltd.,
et al.*, Adv. Pro. No. 09-01161 (BRL), in which, in part, the Trustee sought to avoid and recover
initial transfers of Customer Property from BLMIS to Kingate Global in the amount of
approximately $437,501,112 (the "Kingate Global Complaint").  The Trustee incorporates by
reference the allegations contained in the Kingate Global Complaint as if fully set forth herein.

**ANSWER**:    On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 46 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 46 of the Complaint.

47.    Over the lifetime of Kingate Global's account with BLMIS, from its
inception to the Filing Date, BLMIS made transfers to Kingate Global of approximately
$437,501,112 (the "Kingate Global Lifetime Initial Transfers").  The Kingate Global Lifetime
Initial Transfers were and continue to be Customer Property within the meaning of SIPA §

78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

   **ANSWER**:  On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 47 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 47of the Complaint.

   48.  The Kingate Global Lifetime Initial Transfers include approximately $398,704,065 which BLMIS transferred to Kingate Global during the six years preceding the Filing Date (the "Kingate Global Six Year Initial Transfers").  The Kingate Global Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

   **ANSWER**:  On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 48 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 48 of the Complaint.

   49.  The Kingate Global Six Year Initial Transfers include approximately $163,447,509 which BLMIS transferred to Kingate Global during the two years preceding the Filing Date (the "Kingate Global Two Year Initial Transfers").  The Kingate Global Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

   **ANSWER**:  On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 49 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 49 of the Complaint.

50.    The Kingate Global Two Year Initial Transfers include approximately
$101,753,145 which BLMIS transferred to Kingate Global during the 90 days preceding the
Filing Date (the "Kingate Global Preference Period Initial Transfers").  The Kingate Global
Preference Period Initial Transfers were and continue to be Customer Property within the
meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551
of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 50 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 50 of the Complaint.

51.    The Kingate Global Lifetime Initial Transfers, the Kingate Global Six
Year Initial Transfers, the Kingate Global Two Year Initial Transfers, and the Kingate Global
Preference Period Initial Transfers are collectively defined as the "Kingate Global Initial
Transfers."  Charts setting forth these transfers are attached as Exhibits F and G.

**ANSWER**:    On January 27, 2022, the Court entered a Stipulation and Order

amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to

subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no

response is required to the allegations of paragraph 51 of the Complaint.  To the extent a

response is required, Lombard Odier denies the allegations of paragraph 51 of the Complaint.

**2.    Subsequent Transfers from Kingate Global to Defendant Lombard
Odier**

52.    A portion of the Kingate Global Initial Transfers was subsequently
transferred either directly or indirectly to, or for the benefit of, Defendant Lombard Odier and is
recoverable from Defendant Lombard Odier pursuant to section 550 of the Bankruptcy Code and
§ 278 of the NYDCL.  Based on the Trustee's investigation to date, approximately $82,557,009
of the money transferred from BLMIS to Kingate Global was subsequently transferred by
Kingate Global to Defendant Lombard Odier (the "Kingate Global Subsequent Transfers").  A

chart setting forth the presently known Kingate Global Subsequent Transfers is attached as Exhibit H.

**ANSWER**:     On January 27, 2022, the Court entered a Stipulation and Order amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no response is required to the allegations of paragraph 52 of the Complaint.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 52 of the Complaint.

53.     The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Global Initial Transfers, the Kingate Global Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER**:     On January 27, 2022, the Court entered a Stipulation and Order amending the Complaint to, *inter alia,* dismiss Count Two against Lombard Odier related to subsequent transfers allegedly received from Kingate Global [*see* ECF No. 86]; accordingly no response is required to the allegations of paragraph 53 of the Complaint.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 53 of the Complaint.

## <u>COUNT ONE</u>
## <u>RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS –</u>
## <u>11 U.S.C. §§ 550 AND 551 AND NYDCL § 278</u>

54.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER**:     Lombard Odier incorporates and reasserts its responses to the allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

55.     Defendant Lombard Odier received the Fairfield Sentry Subsequent Transfers, totaling approximately $95,595,385, and the Fairfield Sigma Subsequent Transfers, totaling the equivalent of at least $1,279,986 (collectively, as defined above, the "Fairfield Subsequent Transfers").  The Fairfield Subsequent Transfers, totaling approximately

$96,875,371, are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

ANSWER:    The allegations of paragraph 55 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 55 of the Complaint.

56.    Each of the Fairfield Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Lombard Odier.

ANSWER:    The allegations of paragraph 56 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 56 of the Complaint.

57.    Defendant Lombard Odier is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

ANSWER:    The allegations of paragraph 57 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 57 of the Complaint.

58.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Lombard Odier recovering the Fairfield Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

ANSWER:    The allegations of paragraph 58 contain legal conclusions to which no response is required.  To the extent a response is required, Lombard Odier denies the allegations of paragraph 58 of the Complaint.

## RESPONSE TO REQUEST FOR RELIEF

Lombard Odier denies that the Trustee is entitled to his requested judgment in favor of the Trustee and against Lombard Odier.

### AFFIRMATIVE DEFENSES

Lombard Odier asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff. Lombard Odier reserves the right to assert any other defenses as discovery in this litigation proceeds or any counterclaims that it becomes aware of through discovery or other investigation as may be appropriate at a later time. Further, Lombard Odier also reserves the right to amend this Answer to assert cross-claims and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint must be dismissed because the Court lacks personal jurisdiction over Lombard Odier.

### THIRD AFFIRMATIVE DEFENSE

The Trustee's claims are barred to the extent they have been dismissed by the Court or are based on allegations that have been dismissed by the Court.

### FOURTH AFFIRMATIVE DEFENSE

The alleged Fairfield Subsequent Transfers may not be avoided or recovered because Lombard Odier took for value and in good faith within the meaning of 11 U.S.C. § 550(b). Lombard Odier did not have knowledge that BLMIS was not trading securities, did not know facts that would have prompted a reasonable person in Lombard Odier's position to conduct further inquiry into BLMIS's possible fraud, and even if Lombard Odier had conducted a diligent inquiry, it would not have discovered the fraudulent purpose of the Fairfield Sentry

Initial Transfers and that BLMIS was not trading securities. Additionally, Lombard Odier took for value because the Fairfield Subsequent Transfers totaled less than the amount that Lombard Odier had invested with Fairfield.

Lombard Odier acted as a broker, custodian, and nominee for its customers with investments tied to the Fairfield Subsequent Transfers, not for its own account. Lombard Odier had a limited role in the subscription and redemption process. A reasonable person with the facts in Lombard Odier's possession at the time of the Fairfield Subsequent Transfers would not have been on inquiry notice of the fraudulent purpose behind the Fairfield Sentry Initial Transfers, nor would those facts have led such a person to conduct further inquiry into whether BLMIS was trading securities or was a fraud or a Ponzi scheme.

Even if Lombard Odier had been on inquiry notice of the possible fraudulent purpose behind the Fairfield Sentry Initial Transfers or of facts that would have led a reasonable person to conduct further inquiry into whether BLMIS was trading securities or was a fraud or a Ponzi scheme, a diligent inquiry by Lombard Odier would not have discovered that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Indeed, other entities with vastly greater investigatory tools and resources than Lombard Odier, and with more access to BLMIS personnel and documentation than Lombard Odier, investigated BLMIS but failed to uncover that it was a Ponzi scheme before December 2008. This includes the United States Securities and Exchange Commission, which began an investigation into BLMIS in 2006, but could not discern BLMIS's fraudulent purpose. Lombard Odier, a foreign entity, did not have the

24

capability of discovering what U.S. federal regulators could not, and Lombard Odier could not

have discovered the fraudulent purpose of the Fairfield Sentry Initial Transfers.

## FIFTH AFFIRMATIVE DEFENSE

The alleged Fairfield Sentry Initial Transfers may not be avoided because they

were not made with actual intent to defraud and were settlement payments made by or to, or for

the benefit of, a financial institution or financial participant or were transfers made by or to, or

for the benefit of, a financial institution or financial participant in connection with a securities

contract within the meaning of 11 U.S.C. § 546(e).

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable

to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Defendant

Lombard Odier hereby demands a jury trial on all claims and issues that may be tried by a jury.

## FINAL ORDER

Lombard Odier objects to the entry of a final order or Judgment against Lombard

Odier by the Bankruptcy Court.

WHEREFORE, Defendant Lombard Odier requests that this Court dismiss the

Complaint with prejudice, award Lombard Odier its costs incurred in connection with this action,

and grant such other and further relief as the Court deems just and proper.


Dated:  September 12, 2022
        New York, New York

ALLEGAERT BERGER & VOGEL LLP

By: /s/ *John F. Zulack*

John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor

New York, New York 10006
Tel No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

MAYER BROWN LLP

By: /s/ *Mark G. Hanchet*
Mark G. Hanchet
Kevin C. Kelly
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: 212-506-2500
Email: mhanchet@mayerbrown.com
Email: kkelly@mayerbrown.com

Marc R. Cohen
1999 K St NW
Washington, DC 20006
Tel. No.: 202-263-5282
Email: mcohen@mayerbrown.com

*Counsel for Defendant Lombard Odier & Cie SA*