**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, as Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*BLMIS and the Chapter 7 Estate of Bernard L.*
*Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01566 (CGM) |
| Plaintiff, | |
| v. | |
| UKFP (ASIA) NOMINEES LIMITED, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT UKFP'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................2

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...........................2

II.     UKFP AND ITS INVESTMENTS IN FAIRFIELD ..........................................3

ARGUMENT ........................................................................................................5

I.      THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
        DEFENDANT...............................................................................................5

        A.      Defendant Purposefully Availed Itself of the Laws and Privileges of
                Conducting Business in New York and the United States by Investing in
                Sentry ........................................................................................................8

                1.      Defendant's Intentional Investments With BLMIS Through Sentry
                        Establish Minimum Contacts ......................................................8

                        a.      *BLI* and Recent Decisions of this Court Establish
                                Jurisdiction........................................................................9

                        b.      *Walden* Does Not Save Defendant from this Court's
                                Jurisdiction......................................................................11

                2.      Defendant's Communications with New York in Connection with
                        Its Investments also Establish Minimum Contacts ...................13

                3.      Defendant's Purposeful Use of New York Bank Accounts Supports
                        Specific Jurisdiction..................................................................14

                4.      Defendant's Remaining Arguments are Unavailing .................17

                5.      Defendant's Contacts with the Forum are Sufficiently Related to
                        the Trustee's Claims .................................................................19

        B.      The Exercise of Personal Jurisdiction Over Defendant is Reasonable .................19

        C.      Alternatively, the Trustee is Entitled to Jurisdictional Discovery .........................20

II.     SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT....................21

        A.      Sentry Had Actual Knowledge of Madoff's Fraud .................................22

i

B.      Section 546(e) Does Not Apply Independently to Recovery Actions ...................22

CONCLUSION .......................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)............................................................................................7

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................12

*Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)..........................................................................14, 15, 19

*Ayyash v. Bank Al-Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ....................21

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
    640 B.R. 604 (S.D.N.Y. 2022).................................................................................16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990).......................................................................................5

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985).......................................................................................6, 7, 18

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)................................................................................6, 20

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................15

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).........................................................................................5

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ...............15

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ..........................................................................7

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F.Supp.3d 323 (S.D.N.Y. 2019)........................................................................15

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
    No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............20

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
   *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-
   3911 (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ..................................................18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021).........................................................................6, 16, 17, 19

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .............................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).........................................................................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984).......................................................................................11

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)......................................................................16

*HSH Nordbank AG New York Branch v. Street*,
   No. 11 CIV. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012).........................15, 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................6, 7, 17

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
   2009) ..................................................................................................21

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
   No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............................18

*Liberatore v. Calvino*,
   293 A.D.2d 217, 742 N.Y.S.2d 291 (App. Div. 2002) ...........................................13

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ...................................................................................15

*McGee v. Int'l Life Ins. Co.*,
   335 U.S. 220 (1957)........................................................................................6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)................................................................................7

*In re Motors Liquidation Co.*,
   565 B.R. 275 (Bankr. S.D.N.Y. 2017) ..................................................................16

iv

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ....................................................................................................18

*Picard v. Banca Carige S.P.A.*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
    30, 2022) ........................................................................................ *passim*

*Picard v. Banque Cantonale Vaudoise*,
    Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
    14, 2022) ...................................................................................1, 21, 23, 24

*Picard v. Banque Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
    30, 2022) ........................................................................................ *passim*

*Picard v. Banque Syz & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
    14, 2022) ........................................................................................ *passim*

*Picard v. Barclays Bank (Suisse) S.A., et al.*,
    Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
    15, 2022) ...................................................................................1, 21, 23, 24

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) .................................................. *passim*

*Picard v. Bordier & Cie*,
    Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
    30, 2022) ...................................................................................1, 21, 23, 24

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......................................................... *passim*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
    No. 21-1059, 2022 WL 585915 (Feb. 28, 2022) ......................................................3

*Picard v. Delta Nat'l Bank and Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
    12, 2022) ...............................................................................................1, 21

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ....................................25

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..........................................................6, 7, 19

*Picard v. First Gulf Bank*,
  Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
  18, 2022) ................................................................................................... *passim*

*Picard v. JPMorgan Chase & Co.*,
  No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ........................ 10

*Picard v. Lloyds TSB Bank PLC*,
  Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
  30, 2022) ................................................................................................ 1, 21, 23, 24

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ............................................................ 6, 9, 20

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
  Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
  10, 2022) ................................................................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) .............................................................. *passim*

*Picard v. Parson Finance Panama S.A.*,
  Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
  2022) ........................................................................................................ *passim*

*Picard v. The Public Institution for Social Security*,
  2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ............................................. 1, 8, 10, 21

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*,
  Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
  18, 2022) ................................................................................................... *passim*

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019) ......................................................................... 9, 17, 20, 23

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ........................................................................................ 6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ..................... 3, 22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ................................................................ 22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) ................................................................ 23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)
..................................................................................................................21, 23, 24, 25

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ....................................................................24

*SPV Osus Ltd. v. UBG AG*,
882 F.3d 333 (2d Cir. 2018) ...................................................................................16

*Steinberg v. A Analyst Ltd.*,
No. 04-60898-CIV, 2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ...........................12

*Suber v. VVP Servs., LLC*,
No. 20-CV-08177 (AJN), 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ..............13

*In re SunEdison, Inc.*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ....................................................................25

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ................................................................................................18

*Theraplant, LLC v. Makarechi*,
No. 16-CV-0646 (DLC), 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .................13

*To v. HSBC Holdings, plc*,
No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .....................16

*Tymoshenko v. Firtash*,
No. 11-CV-2794 KMW, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .................12

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019) .....................................................................................7

*Walden v. Fiore*,
571 U.S. 277 (2014) ...........................................................................................11, 13

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ...................................................................................19

**Statutes**

11 U.S.C. § 546(e) ............................................................................................ *passim*

11 U.S.C. § 548(a)(1)(A) .............................................................................21, 22, 24

11 U.S.C. § 550 ............................................................................................22, 23, 24

11 U.S.C. § 550(a) .............................................................................................17, 22

**Rules**

Fed. R. Civ. P. 12(b)(2)...........................................................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................................................1

NY CPLR § 302......................................................................................................................................13

NY CPLR § 302(a)(3)............................................................................................................................13

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and declaration of Matthew K. Cowherd ("Cowherd

Decl."), in opposition to defendant UKFP (Asia) Nominees Limited's ("UKFP" or "Defendant")

motion to dismiss the Trustee's Complaint, ECF No. 1 ("Compl.") pursuant to Federal Rules of

Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

The Trustee filed this action against Defendant as part of his continuing efforts in this SIPA

liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's

Ponzi scheme.  In this action, the Trustee seeks to recover $5,182,325 in subsequent transfers

Defendant received from Fairfield Sentry Limited ("Sentry").[1]  Defendant moves to dismiss the

Trustee's Complaint, arguing that (1) this Court lacks personal jurisdiction over Defendant; and

(2) Defendant is entitled to protections afforded by 11 U.S.C. § 546(e).  Each of these arguments

lacks merit, and Defendant is no differently situated than the subsequent transferee defendants in

other recovery actions that have recently come before this court.[2]

---

[1] Under Stipulation and Order entered March 15, 2022, ECF No. 79, the Trustee amended his Complaint to dismiss seven alleged subsequent transfers identified therein, reducing the $8,012,183 originally sought by the Trustee by $2,829,858.

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 ((Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. The Public Institution for Social Security*, 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*"); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) ("*Union Securities*").

*First*, this Court has specific personal jurisdiction over Defendant. The Trustee's allegations here are based on similar contacts as those found sufficient in this Court's recent decisions in *Multi-Strategy*, *Banque Syz*, *Carige*, *Lombard Odier*, *First Gulf, Parson, Meritz, PIFSS, and Union Securities*. Defendant invested in Sentry knowing from Sentry's documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of Sentry's investments; that Sentry fed substantially all of its funds into BLMIS; and that BLMIS was essential to Sentry's investments. Investing in BLMIS was the entire point. Defendant also designated and used United States bank accounts in New York to deposit funds and receive the transfers at issue. Further, Defendant regularly communicated with Fairfield Greenwich Group ("FGG") in New York regarding Sentry. These facts establish jurisdiction.

*Second*, the Trustee has plausibly alleged Sentry's actual knowledge of fraud, and therefore under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendant. Defendant's argument – that the Trustee must plead Defendant's actual knowledge as opposed to that of Sentry – misinterprets and directly conflicts with precedent in this case.

The Trustee respectfully requests that the Court deny the Motion.

### STATEMENT OF FACTS

## I.   THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS in New York until its collapse in 2008. *See* Complaint ("Compl.") ¶¶ 23, 31. BLMIS was a registered broker-dealer in New York. *Id.* ¶ 23. BLMIS had three principal business units: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index;

(b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. Treasury securities ("Treasury Bills") when the money was out of the market. *Id.* ¶¶ 24-25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 28. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (Feb. 28, 2022) ("*Citibank*"). Defendant knowingly invested in Sentry, which it knew was a Madoff feeder fund. Compl. ¶ 6.

## II.    UKFP AND ITS INVESTMENTS IN FAIRFIELD

UKFP is a British Virgin Islands ("BVI") company with its registered office at Beaufort House, P.O. Box 438, Road Town, Tortola, BVI. *See* Compl. ¶ 22. UKFP maintains its principal place of business at Level 28, Three Pacific Place, 1 Queen's Road East, Hong Kong. *Id.* In March 2016, UKFP changed its name from Towry Law (Asia) Nominees Limited to UKFP (Asia) Nominees Limited. *See* Cowherd Decl., Exs. 1, 2. UKFP made its initial investment in Sentry in 1999 and continued investing in and receiving redemptions from BLMIS until August 2006. Cowherd Decl., Exs. 3, 8-10. Sentry was managed by FGG, a *de facto* partnership with its principal place of business in New York. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *9, (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund")*. Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its

3

assets with BLMIS. *Picard v. Fairfield Sentry Limited, et al.*, Adv. Pro. No. 09-01239 (CGM), ¶ 318 (ECF No. 23); Compl. ¶ 2.

Investors in Sentry, including Defendant, executed subscription agreements which acknowledged that they had "received and read" Sentry's Information Memorandum ("Info Memo"). Cowherd Decl., Exs. 3-6. Sentry's Info Memo made plain the New York-centric nature of investments in the fund (*Id.*, Ex. 6):

- Sentry invested all of its assets with New York-based BLMIS;

- BLMIS made all investment decisions;

- BLMIS was a registered broker-dealer in New York;

- BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf;

- BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and Treasury Bills traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York;

- BLMIS was the custodian of Sentry's investments with BLMIS; and

- BLMIS was "essential to the continued operations of" Sentry.

UKFP also regularly communicated about its Sentry investments with its primary FGG contact, New York-based Lourdes Barreneche ("Barreneche"), and other FGG New York personnel via emails and telephone calls. *See generally*, Cowherd Decl., Exs. 11-14. During one such call in April 2003, senior UKFP personnel responsible for overseeing UKFP's Sentry investments asked New York-based FGG Chief Financial Officer Dan Lipton numerous, highly-specific questions about Sentry, Madoff, and BLMIS. *Id.*, Ex. 13.

As expressly provided in its subscription agreements, UKFP sent subscription payments to Sentry's designated New York bank account. Compl. ¶ 7; Cowherd Decl., Exs. 3-5. Subscription

payments from UKFP were then deposited by Sentry into BLMIS's account at JPMorgan Chase Bank in New York.  Fairfield Am. Compl. ¶ 35.

In addition, UKFP used a bank account at Citibank in New York—in the name of UKFP's affiliate, UKFP (Asia) HK Limited, for the benefit of UKFP—to receive redemption payments from Sentry.  Cowherd Decl., Exs. 7-10.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  Compl. ¶ 35; *see also Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.  In 2011, the Trustee settled with Sentry.  Compl. ¶ 40.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against defendants like UKFP to recover the approximately $3 billion in missing customer property.

## <u>ARGUMENT</u>

### I.    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction")).  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings; these are to be construed in the

light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directed its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citations omitted) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (emphasis in original). Specific jurisdiction, however, does not require "proof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id*. (emphasis added). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Multi-Strategy*, 641 B.R. at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque Syz*, 2022 WL 2135019, at *4 (same). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry*

*Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320.  To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019 at *4; *Carige*, 2022 WL 2387522, at *4; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  Where the plaintiff has alleged purposeful availment the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

Overall, rather than analyze each contact in isolation, the Court must look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

A.    **Defendant Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York and the United States by Investing in Sentry**

Defendant had multiple contacts with New York that establish this Court's jurisdiction. Defendant: (1) purposefully targeted the New York securities market by investing in Sentry, knowing that its assets were managed and custodied by BLMIS in New York; (2) knowingly contacted the forum through communications to New York regarding its Sentry investments; and (3) used New York banks to transact with Sentry.  As discussed below, these contacts are each sufficient to support jurisdiction.   But in their totality, they plainly establish that Defendant purposely availed itself of the forum.

1.    **Defendant's Intentional Investments With BLMIS Through Sentry Establish Minimum Contacts**

Defendant claims a "paucity of well-pled jurisdictional allegations" distinguish this case from recent BLMIS subsequent transferee cases in which the Court found a basis to exercise personal jurisdiction.  Motion at 14.  However, the Trustee's allegation that Defendant knowingly invested with BLMIS through Sentry establishes a *prima facie* showing of jurisdiction over Defendant.[3]  *Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry…alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation."); *Lombard Odier*, 2022 WL 2387523, at *2 (same); *First Gulf*, 2022 WL 3354955, at *2 (same); *Parson*, 2022 WL 3094092, at *2 (same); *Meritz*, 2022 WL 3273044, at 2 (same); *PIFSS*, 2022 WL 3458962, at *4 (same); *Union Sec.*, 2022 WL 3572509, at *3 (same).  As the Second Circuit recognized, "[w]hen these [subsequent transfer] investors chose to buy into

---

[3] As explained, *infra*, the Trustee also demonstrates through the Cowherd Declaration and its accompanying exhibits that UKFP knowingly and regularly contacted the forum through communications with FGG New York personnel regarding its Sentry investment, and used New York banks to transact with Sentry.

feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 at 105 (2d Cir. 2019) ("*ET Decision*"); *see also Maxam Absolute Return Fund*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that the funds it invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

By executing the subscription agreements with Sentry and affirming that it received and read Sentry's Info Memo, and through its communications with FGG personnel in New York, as detailed below, Defendant knew that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was registered with the U.S. Securities and Exchange Commission; (4) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and Treasury Bills; (6) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (7) BLMIS was the custodian of Sentry's investments with BLMIS; and (8) BLMIS was "essential to the continued operation of" Sentry. Compl. ¶¶ 2, 6-7; Cowherd Decl., Exs. 6, 13.

### a.    *BLI* and Recent Decisions of this Court Establish Jurisdiction

Based on the demonstrated intent to invest with BLMIS in New York through Sentry, Judge Lifland concluded a number of years ago that investors like Defendant are subject to personal jurisdiction in New York. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-518 (Bankr. S.D.N.Y. 2012) ("*BLI*"). Here, as in *BLI*: (1) the Trustee's suit is based upon the subsequent transferee's investment in Sentry "with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom" *BLI*, 480 B.R. at 506; and (2) Defendant was provided with the fund's offering memoranda and executed subscription agreements

establishing the investment's BLMIS-centric purpose.  *Id*. at 507-08.  *BLI*, like Defendant, "purposefully availed itself of the benefits and protections of New York Laws . . . by intending" that its investment would ultimately end up at BLMIS.  *Id*. at 517; *see also Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transfers were subject to the Court's personal jurisdiction").

Based on this Court's recent decisions, *BLI* applies here.  *See Multi-Strategy*, 641 B.R. at 86-87; *Banque Syz*, 2022 WL 2135019, at *3-4; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *3-4; *First Gulf*, 2022 WL 3354955, at *3-4; *Parson*, 2022 WL 3094092, at *3-5; *Meritz*, 2022 WL 3273044, at *3-4; *PIFSS*, 2022 WL 3458962, at *4-5; *Union Secs.*, 2022 WL 3572509, at *3-4.  In those cases, as here, the Trustee asserted allegations as to the purpose of the investment and the defendants' contacts with Sentry for ultimate investment with BLMIS.  *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Banque Syz*, 2022 WL 2135019, at *3-4.  Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Multi-Strategy*, 641 B.R. at 87; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *4; *First Gulf*, 2022 WL 3354955, at *4; *Parson*, 2022 WL 3094092, at *5; *Meritz*, 2022 WL 3273044, at *4; *Union Secs.*, 2022 WL 3572509, at *4.

Defendant is similarly situated to these defendants.  The Complaint, as supplemented by the Cowherd Declaration, makes clear that Defendant knowingly directed its funds to be invested with New York-based BLMIS and that this was the fundamental purpose of Defendant's Sentry investment.  In short, Defendant "intentionally tossed a seed from abroad to take root and grow as

a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."
*BLI*, 480 B.R. at 506. As such, the foregoing cases are controlling and resolve Defendant's
personal jurisdiction defense without the need for inquiry into their additional U.S. contacts.

### b.    *Walden* Does Not Save Defendant from this Court's Jurisdiction

In an effort to sidestep *BLI*, Defendant argues that the foreseeability of Sentry investing for
Defendant with BLMIS in New York cannot establish jurisdiction and that the Supreme Court
rejected such a theory in *Walden v. Fiore*, 571 U.S. 277 (2014). Motion at 9. But *Walden* "is [of]
no assistance to Defendant." *Multi-Strategy*, 641 B.R. at 87. Using the "effects test" the *Walden*
court found that a Georgia police officer could not be sued in Nevada for an unlawful seizure of
money in Georgia merely because he knew that the plaintiff resided in Nevada. *Walden*, 571 U.S.
at 289. In this regard, the Court simply reaffirmed the well-established principle that personal
jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *Id.*
at 284 & 289 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417
(1984)).

The facts and applicable law of *Walden* are significantly different from those here. The
police officer's lack of "any jurisdictionally relevant contacts with Nevada", *Walden,* 571 U.S. at
289, is not even remotely comparable to Defendant intentionally directing millions of dollars in
investments over almost a decade to a New York investment manager, broker dealer, and custodian
through a feeder fund formed for this express purpose. *Id.* at 290. In any case, *Walden* stands for
the proposition that where a defendant's contacts with New York are "intertwined with [its]
transactions or interactions with the plaintiff or other parties" jurisdiction is proper. *Walden*, 571
U.S. at 286. Any assertion that the Trustee is arguing that jurisdiction exists here merely because
it was foreseeable that its funds would be invested in New York is disingenuous. *See BLI*, 480

B.R. at 516-18 (finding it disingenuous for defendant to claim that its investments in Sentry merely "ended[ed] up in an account at BLMIS as a result of happenstance or coincidence" when that was the entire purpose of the investment).

Defendant is also wrong that "[u]nder the Trustee's knowledge and imputation theory, the scope of U.S. personal jurisdiction would drastically expand and render every investor in any foreign company subject to litigation anywhere in the United States that the company, *not* the investor, does business." Motion at 10. First, the Trustee is not relying on an imputation theory, but is basing personal jurisdiction on Defendant's own contacts. Second, the Trustee is not arguing that every investor should automatically be subject to jurisdiction in all forums where its investment company happens to do business. Rather, under the facts of this case—where Defendant has signed subscription agreements with Sentry expressly indicating Defendant's intent to direct custody and control over all of its funds to a specific U.S. broker-dealer in order to knowingly profit from the U.S. securities markets—Defendant has purposefully availed itself of the laws and protections of the United States.

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the cases cited by Defendant are inapposite. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008) (jurisdiction denied because plaintiffs never actually alleged that defendant directed any activity toward the United States); *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (jurisdiction denied where plaintiff either did not allege or made only a "bare assertion" that funds in which defendant invested had "assets, records, accounts and management all located in New York," and there was no indication defendant knew its redemptions were being made through New York); *Tymoshenko*

*v. Firtash*, No. 11-CV-2794 KMW, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (jurisdiction lacking where defendants did not "even kn[o]w" that companies they invested in engaged in activities in the United States).[4]

### 2.    Defendant's Communications with New York in Connection with Its Investments also Establish Minimum Contacts

While a defendant's "physical presence in a forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092 at *5 (quoting *Walden*, 577 U.S. at 285); *Banque Syz*, 2022 WL 2135019, at *4. Email communications can also be a contributing factor for finding personal jurisdiction. *See Parson*, 2022 WL 3094092 at *4-5 (finding defendant's email communications with FGG as evidence that defendant purposefully availed itself of the benefits of doing business in the forum); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673(RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone calls, and video conferences with company in New York subjected defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291, 293 (App. Div. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases). Defendant had similar U.S. contacts.

During the relevant time period, Defendant regularly communicated, including by email and telephone, with high-level New York FGG executives regarding its investments in Sentry.

---

[4] Defendant also cites language from *Suber v. VVP Servs., LLC*, No. 20-CV-08177 (AJN), 2021 WL 4429237, *9 (S.D.N.Y. Sept. 27, 2021), quoting *Theraplant, LLC v. Makarechi*, No. 16-CV-0646 (DLC), 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016), but these cases were both tort actions addressing the "substantial revenue" requirement for out-of-state defendants under section 302(a)(3) of the New York Civil Practice Law & Rules (the "CPLR"). They were not analyzing purposeful availment or the analogous "transacting business" prong of CPLR section 302, and provide no support for Defendant's position.

Cowherd Decl., Exs. 11-14.  For example, FGG emailed Defendant monthly Sentry "tear sheets" which compared the fund's strategy and performance history to the S&P 100 Index and other benchmarks.  *Id*., Ex. 14.  On January 12, 2004, Defendant personnel replied to one such monthly email from FGG's Veronica Barco, who was based in New York, thanking FGG for a gift sent from FGG's New York office.  Defendant wrote: "I do hope we can go back to selling Fairfield Sentry (my favorite fund to sell, btw!) soon some time!"  *Id*.

On April 22, 2003, FGG's Barreneche summarized for senior FGG personnel a conference call held that day with UKFP "further to my exchange of emails for the last two weeks with regard to Fairfield Sentry."  Cowherd Decl., Ex. 13.  Barreneche recounted the numerous, highly-specific questions UKFP posed to FGG Chief Financial Officer Dan Lipton, like Barreneche based in New York, including:  (i) whether Madoff is still the largest market maker, (ii) the size of the Madoff team, (iii) whether Sentry was a discretionary account, (iv) "how much of the strategy we have with Madoff," (v) is Madoff registered, (vi) how Madoff oversees risk management, (vii) when is Madoff most likely to make money, and (viii) "if Madoff is gone, what happens to the Fund."  *Id*.

These contacts support this Court's jurisdiction over Defendant.

### 3.    Defendant's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

UKFP intentionally used a bank account at Citibank in New York—in the name of UKFP's affiliate, UKFP (Asia) HK Limited, for the benefit of UKFP—to receive redemption payments from Sentry.  Cowherd Decl., Exs. 7-10.  As this Court recently held: "Where a defendant chooses to use a United States bank account to received funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."  *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016)); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding

jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account"); *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG New York Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70, n.18.

Whether the Citibank New York account was used as a correspondent bank does nothing to change this analysis. Courts have held that the use of a correspondent bank account is sufficient to establish personal jurisdiction.[5] *See, e.g., Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful"); *see also Arcapita* 549 B.R. at 67-69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers at issue).

The same reasoning applies to Defendant's use of Sentry's Republic National Bank of New York Account. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account). That the

---

[5] It is also of no consequence that the bank account was in the name of Defendant's affiliate. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F.Supp.3d 323, 346 (S.D.N.Y. 2019) ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

subscription agreements mandated that subscribers use Sentry's New York Account is irrelevant; Defendant "was free to accept or reject the proposed terms." *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

Defendant's argument that *SPV Osus Ltd. v. UBG AG*, 882 F.3d 333 (2d Cir. 2018), *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016), and *To v. HSBC Holdings, plc*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) support dismissal of the Complaint because of limited contacts with New York also fails. This Court has already determined that this line of cases is not relevant to the Trustee's actions against defendants like UKFP who invested in BLMIS's feeder funds. *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").

This is not a dispute between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims in *SPV*,[6] *Hill*, and *To*. This action is a SIPA liquidation proceeding to recover fraudulent transfers from an investor whose transfers of funds to and from U.S. correspondent accounts evidence an intent to direct activity towards the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it

---

[6] Defendant's reliance on *SPV*, where the court found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is suspect following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield

Sentry.") (emphasis in original).   Contrary to Defendant's claims, its connections to New York

and Sentry do not "fall short" and include purposeful contact with New York.

### 4.    Defendant's Remaining Arguments are Unavailing

Additionally, this Court should reject UKFP's claim that the transfers the Trustee seeks to

recover "occurred entirely outside of the United States" and were "purely foreign." *See* Motion at

8.  UKFP bases this claim on arguments made by the Fairfield Liquidators in a different case that

turns on whether the Section 546(e) safe harbor applies to claims under British Virgin Islands law

by foreign liquidators in a chapter 15 proceeding—an issue plainly not relevant here. In this case,

however, the Second Circuit has already found, "[t]hese transfers are domestic activity."  *ET*

*Decision*, 917 F.3d at 100 ("When a domestic debtor commits fraud by transferring property from

a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States.").

UKFP also argues that it is the Trustee's burden to make a jurisdictional showing with

respect to "each individual alleged Fairfield Sentry Subsequent Transfer that he seeks to recover."

Motion at 5-6 (citing *BNP*, 594 B.R. at 190).   But UKFP misconstrues the requirements for

personal jurisdiction and this Court's decision in *BNP*.   Courts have personal jurisdiction over

defendants, not transfers.  *See, e.g., Int'l Shoe Co.*, 326 U.S. at 316.   The court must assess a

defendant's contacts with the forum, not a transfer's.  *BNP Paribas*, 594 B.R. at 189 ("The inquiry

whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the

relationship among the defendant, the forum, and the litigation.").  Provided that a court finds that

a defendant's minimum contacts with the forum support specific jurisdiction, the court may

adjudicate any claims, as long as they are sufficiently related to those contacts.  *See Ford Motor*

*Co.*, 141 S. Ct. at 1026-28. Such is the case here.

Finally, UKFP contends that its subscription agreements do not subject it to this Court's jurisdiction. Motion at 11. But the Trustee is not arguing that this Court has jurisdiction based solely on UKFP's consent to New York choice of law, jurisdiction, and forum in the subscription agreements. Rather, the Trustee's jurisdictional argument is also based on UKFP's intentional entry into New York to invest in BLMIS through Sentry, its use of New York bank accounts, and its ongoing and regular communications with FGG. As this Court found in *BLI*, a defendant's agreement to New York venue, jurisdiction, and law provides another strong jurisdictional contact with New York. 480 B.R. at 517, n. 15; *see also Burger King*, 471 U.S. at 482 (holding a choice of law "provision standing alone would be insufficient to confer jurisdiction" but "it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."). As such, contrary to UKFP's argument, this Court's prior decision in the Fairfield Chapter 15 liquidation proceedings, where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.[7] *See Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).

The subscription agreements entered into by Defendant identified to date by the Trustee, without the benefit of discovery, are "short form" in variety. *See* Cowherd Decl., Exs. 3-5. The

---

[7] Though not necessary to the Court's analysis, we note that Defendant's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield Chapter 15 liquidation proceedings is incorrect. *See* Motion at 19 n.8. Defendant cites no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

Trustee therefore alleges upon information and belief that UKFP entered into more detailed "long form" subscription agreements also typically signed by Sentry investors containing New York choice of law, jurisdiction, and forum clauses that, per the court in *BLI*, "[f]urther evidenc[e] the strong nexus with New York."  480 B.R. at 517, n.15.  *See* Compl. ¶ 7.

> 5.      **Defendant's Contacts with the Forum are Sufficiently Related to the Trustee's Claims**

The Trustee's claims also "arise out of or relate to" Defendant's contacts with the United States.  As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-30 (2021).  Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that claim is not completely "unmoored" from transaction).  This Court has already found that the Trustee's recovery actions against defendants similarly situated to Defendant are "directly related to [their] investment activities with Fairfield and BLMIS."  *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4 (finding subsequent transfer claims directly related to investment activities); *Parson*, 2022 WL 3094092, at *5 (same); *see, also*, *HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts").  Here, the Trustee is seeking to recover the very transfers that came through the U.S. bank accounts in New York.

> B.      **The Exercise of Personal Jurisdiction Over Defendant is Reasonable**

"The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made

a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted). Defendant fails to present a compelling reason why jurisdiction would be unreasonable.

This is not that "rare" case and the burden on Defendant is minimal. *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). As this Court found in *Multi-Strategy*, *Banque Syz*, *Carige*, *Lombard Odier*, *First Gulf*, *Parson*, *Meritz*, *PIFSS*, and *Union Securities*, the exercise of jurisdiction over Defendant is reasonable because "Defendant is not burdened by this litigation" because it "has actively participated in this Court's litigation for over ten years" and it is "represented by U.S. counsel." *Multi-Strategy*, 641 B.R. at 88. Finally, this "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz*, 2022 WL 2135019, at *5; *see also ET Decision*, 917 F.3d 85, 103 (2d Cir. 2019) (noting that the United States has a "compelling interest in allowing domestic estates to recover fraudulently transferred property."). Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### C.     Alternatively, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery because the Trustee has made a threshold showing of jurisdiction, and "additional facts to establish personal jurisdiction . . . lie within Defendant['s] knowledge." *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a

*prima facie* case for jurisdiction to obtain jurisdictional discovery); *see also Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at \*4 (S.D.N.Y. Nov. 16, 2009) ("Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction."). The Trustee has shown how Defendant, inter alia, knowingly and purposely subscribed with Sentry for the purpose of investing in the U.S. securities markets, used U.S. bank accounts to transact business with Sentry, and had significant contacts with FGG personnel in the U.S. *See supra*, pp. 8-20. At a minimum, these facts establish a "threshold showing" of jurisdiction. *Kiobel,* 2009 WL 3817590, at \*6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at \*6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013 WL 1609154, at \*1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). Defendant argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS, even though the Trustee has pled Sentry's actual knowledge. Motion at 22-23. This Court has rejected this same argument in numerous other adversary proceedings commenced by the Trustee.[8]

---

[8] *See Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at \*8-10; *Lombard Odier*, 2022 WL 2387523, at \*8-10; *Lloyds*, 2022 WL 2390551, at \*4-6; *Bordier*, 2022 WL 2390556, at \*4-6; *Cantonale*, 2022 WL 2761044, at \*4-6; *Barclays*, 2022 WL 2799924, at \*6-7; *First Gulf*, 2022 WL 3354955, at \*8-10; *Parson*, 2022 WL 3094092, at \*8-10; *Meritz*, 2022 WL 3273044, at \*8-10; *Delta*, 2022 WL 3365256, at \*4-6; *PIFSS*, 2022 WL 3458962, at \*10-12; *Union Sec.*, 2022 WL 3572509, at \*8-10.

## A.    Sentry Had Actual Knowledge of Madoff's Fraud

Defendant sets forth at length the requirements of Section 546(e) and how they are presumably met in this case with respect to the initial transfers from BLMIS.  Motion at 16-23. None of this matters because the Court has previously held that the Trustee has sufficiently pled that Sentry had actual knowledge of Madoff's fraud.  *Multi-Strategy*, 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).  As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Defendant regardless of whether Sentry or Defendant qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[9]

## B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also Multi-Strategy*, 641 B.R. at 94 ("The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not

---

[9] The Trustee does not concede that any agreements or transfers between Sentry and Defendant activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendant.  The Trustee also does not concede that the initial transfers were made "for the benefit of" Defendant.  The Trustee plainly alleges in the Complaint that Defendant is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

refer to the recovery claims under section 550.'") (quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*")).[10]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).

Defendant, however, seizes on language in *Cohmad* where the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute a relevant "securities contract," and that certain subsequent transferee defendants might qualify as a

---

[10] *See also Banque Syz*, 2022 WL 2135019, at *9 (quoting *BNP* at 197); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf*, 2022 WL 3354955, at *9 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *Union Sec.*, 2022 WL 3572509, at *9 (same).

"financial institution" or "financial participant." *See Cohmad*, 2013 WL 1609154, at *9. Defendant extrapolates from this hypothetical that, even if "there was no actual 'securities contract' between BLMIS and [Sentry]," due to Sentry's knowledge of the fraud, "there was still a 'securities contract' between [Sentry] and its investors" such that the Trustee must plead UKFP's actual knowledge to preclude application of the safe harbor. Motion at 22-23. But *Cohmad* does not stand for this proposition, and Defendant's argument merely repackages the already rejected arguments that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.[11]

*Cohmad* is clear that the focus of the safe harbor is on the *initial* transfers. The District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.[12] As this Court recently held, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *Multi-Strategy*, 641 B.R. at 94-95.[13]

---

[11] Defendant also here cites *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) for the proposition that the only exception to the safe harbor is a claim under Section 548(a)(1)(A) concerning *transferor* intent. Motion at 23. If Defendant means to question *Cohmad*'s holding that subsequent transferees with actual knowledge are prohibited from benefitting from the safe harbor, this argument too is unavailing. *See Cohmad*, 2013 WL 1609154, at *7. *Cohmad*'s holding merely ensures that any transferee that *does* have actual knowledge cannot benefit from the safe harbor, including a subsequent transferee (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See id.* ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

[12] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

[13] *See also Banque Syz*, 2022 WL 2135019, at *9-10; *Lombard Odier*, 2022 WL 2387523, at *9-10; *Lloyds*, 2022 WL 2390551, at *5-6; *Bordier*, 2022 WL 2390556, at *5-6; *Cantonale*, 2022 WL 2761044, at *5-6; *Barclays*, 2022 WL 2799924, at *7; *First Gulf*, 2022 WL 3354955, at *9-10; *Parson*, 2022 WL 3094092, at *9-10; *Meritz*, 2022 WL 3273044, at *9-10; *Union Sec.*, 2022 WL 3572509, at *9-10.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not recovery, and, notably, that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument made implicitly by the Motion that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id.* at 197. Like *Cohmad*, *BNP* is law of the case on this issue, and Defendant is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendant's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Adopting Defendant's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would also result in a situation whereby a determination as

to the avoidability of an initial transfer would depend upon and vary based on whether there were

subsequent transfers, and who received them.  This approach is simply not viable.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendant's Motion.

Dated: September 13, 2022           */s/ Amy E. Vanderwal*
New York, New York             **BAKER & HOSTETLER LLP**
            45 Rockefeller Plaza
            New York, New York 10111
            Telephone: 212.589.4200
            Facsimile: 212.589.4201
            David J. Sheehan
            Email: dsheehan@bakerlaw.com
            Amy E. Vanderwal
            Email: avanderwal@bakerlaw.com
            Matthew K. Cowherd
            Email: mcowherd@bakerlaw.com

            *Attorneys for Irving H. Picard, as Trustee for the*
            *Substantively Consolidated SIPA Liquidation of*
            *BLMIS and the Chapter 7 Estate of Bernard L.*
            *Madoff*

            **WINDELS MARX LANE & MITTENDORF,**
            **LLP**
            156 West 56th Street
            New York, New York 10019
            Telephone: 212.237.1000
            Facsimile: 212.589.4201
            Howard L. Simon
            Email: hsimon@windelsmarx.com
            John J. Tepedino
            Email: jtepedino@windelsmarx.com

            *Special Counsel to Irving H. Picard, Trustee for the*
            *Substantively Consolidated SIPA Liquidation of*
            *Bernard L. Madoff Investment Securities LLC and*
            *for the Chapter 7 Estate of Bernard L. Madoff*