RICHARD A. CIRILLO
Cirillo Law Office
246 East 33rd St.
New York, NY 10036
(917) 541-6778

*Attorney for Defendants National Bank of Kuwait
S.A.K. and NBK Banque (Privée) Suisse S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      *Plaintiff-Applicant,*<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>      *Defendant.* | Adv. Proc. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>      *Debtor.* | |
| IRVING H. PICARD, Plaintiff for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      *Plaintiff,*<br><br>    v.<br><br>NATIONAL BANK OF KUWAIT S.A.K. and NBK BANQUE PRIVÉE (SUISSE) S.A.,<br><br>      *Defendants.* | Adv. Proc. No. 11-2554 (CGM)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS NATIONAL BANK OF KUWAIT S.A.K. AND NBK BANQUE PRIVÉE (SUISSE) S.A. TO DISMISS THE AMENDED COMPLAINT** |

# Table of Contents

Table of Contents.................................................................................................... i

Table of Authorities................................................................................................ ii

The Allegations of the Complaint Relevant to this Motion...........................................

Summary of Argument .................................................................................................1

ARGUMENT ...............................................................................................................5

I.    The Amended Complaint Does Not Adequately Allege Facts Showing NBK Received
Any BLMIS Customer Property.............................................................. 5

II.    The Amended Complaint Violates Rule 8(a)(2) ...........................................

III.    The Plaintiff's Allegations Demonstrate that Section 546(e) Bars the Avoidance
of the Fairfield Initial Transfers More than Two Years Prior to the Filing Date...............14

A.    The Relevant Fairfield Initial Transfers Made More than Two Years Before
the Filing Date May Not Be Avoided Under Section 548(a)(1)(A)...........................15

B.    The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with
a Securities Contract ...............................................................................15

C.    The Fairfield Initial Transfers Were Made By or To a Covered Entity.................17

1.    The Fairfield Initial Transfers Were Made By a Stockbroker ...................17

2.    The Fairfield Initial Transfers Were Made To A "Financial Institution."........17

D.  Section 546(e) Does Not Contain a "Knowledge" Exception. ..................................18

CONCLUSION .......................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010)................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................2, 6-8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................2, 6-8

*Bellefonte re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985)........................................................5 n.4

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011).....................................................16 n.10

*Davis v. Bifani*,
2007 U.S. Dist. LEXIS 30800 (D. Colo. 2007)..................................12

*DeMasi v. Benefico*,
567 F. Supp. 2d 449 (S.D.N.Y. 2008)..................................................5

*DM Research, Inc. v. College of Am. Pathologists*,
170 F.3d 53 (1st Cir. 1999)...............................................................7

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
323 B.R. 857 (Bankr. S.D.N.Y. 2005) ........................................18 n.12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam) (In re Fairfield Sentry Ltd.)*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*")...................18, 19

*Fairfield Sentry Ltd. v. Migani*,
[2014] UKPC 9, https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf......17 n.11

*Ferrari v. County of Suffolk*,
790 F. Supp 2d 34 (E.D.N.Y. 2011)....................................................5

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019)..........................................10 n.5

*Guadagno v. Wallack Ader Levithan Associates*,
950 F. Supp. 1258 (S.D.N.Y. 1997) ....................................5 & n.4

*In re Greiger*,
446 B.R. 670 (Bankr. E.D. Pa. 2010)................................................4, 11

*In re Motors Liquidation Co.,*
   596 B.R. 774 (Bankr. S.D.N.Y. 2019) ................................................................20

*In re Roco Corp.,*
   701 F.2d 978 (1st Cir. 1983) ...................................................................20 n.13

*In re Tribune Co. Fraudulent Conveyance Litig.,*
   946 F.3d 66 (2d Cir. 2019) ("*Tribune I*") ......................................16, 18 n.12, 21

*Keller v. United States,*
   58 F.3d 1194 (7th Cir. 1995)...................................................................5

*Law v. Siegel,*
   571 U.S. 415 (2014)......................................................................................20

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.,*
   138 S. Ct. 883 (2018)...................................................................................20

*Mull v. Ford Motor Co.,*
   368 F.2d 713 (2d Cir. 1966) .............................................................5 n.4

*Papasan v. Allain,*
   *478 U.S. 265 (1986)...................................................................................2, 7*

*Picard v. Charles Ellerin Revocable Trust,*
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012)..........................................9

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") ....................10, 16, 19, 20

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC),*
   773 F.3d 411 (2d Cir. 2014) ("*Fishman*")........................................5-17, 20 n.13, 21

*Picard v. Mayer (In re Bernard L. Madoff),*
   2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)........................................10

*Picard v. Merkin (In re BLMIS),*
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*") ........................................9, 10

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.),*
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..............................................................20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.),*
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)...............................................................10 n.5

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
   476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC,*
   773 F.3d 411 (2d Cir. 2014) ("*Fairfield Inv. Fund*").....................................7, 19

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*")....................16 & n.10, 19, 20

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .......................................13, 14, 16, 17

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
   08-01789 CGM  (Bankr. S.D.N.Y. June 30, 2022)…………………………………………4, 11

*Storm v. Storm*,
   328 F.3d 941 (7th Cir. 2003)...........................................................................................20

*White v. Arco/Polymers, Inc.*,
   720 F.2d 1391 (5th Cir. 1983) …………………………………………………………5 n.4

## Statutes

11 U.S.C. § 101(22 ...........................................................................................................17

11 U.S.C. § 546(e) ................................................................................. 2, 14-17 & notes

11 U.S.C. § 547 ..................................................................................................................1

11 U.S.C. § 548(a) ...........................................................................................................14, 15

11 U.S.C. § 550(b) ...........................................................................................................14

11 U.S.C. § 741(7)(A)(i) .................................................................................................20

11 U.S.C. § 741(8) ...........................................................................................................20

## Other Authorities

Fed. R. Bankr. P. 7008 ......................................................................................................1

Fed. R. Bankr. P. 7012 ...................................................................................................1, 2

Fed. R. Civ. P. 8(a)(2) ..............................................................................1, 2, 6, 8, 10-14

Fed. R. Civ. P. 10(c) ....................................................................................................11, 12

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 6, 8, 10

Fed. R. Civ. P. 12(f)........................................................................................................11, 13

National Bank of Kuwait S.A.K. ("NBKK") and NBK Banque Privée (Suisse) S.A.

("NBKS" and with NBKK collectively "NBK") respectfully submit this memorandum

support of their motion to dismiss the Amended Complaint naming them as defendants, Adv.

No. 11-02554, ECF Dkt No. 105 ("Complaint" or "Compl.").[1] The Complaint seeks to recover

from NBK transfers of BLMIS "customer property" that NBK allegedly received from Fairfield

Sentry Ltd. ("Fairfield"), which Fairfield allegedly had received from BLMIS. NBK moves to

dismiss the claim under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), made applicable

by Bankruptcy Rules 7008 and 7012.

### The Allegations of the Complaint Relevant to this Motion

The Complaint alleges that NBKK and NBKS are Kuwaiti and Swiss banks, respectively.

Compl. ¶¶ 21, 27, 29. It alleges (i) that BLMIS transferred approximately $3 billion to Fairfield,

a BVI corporation, *id.* ¶¶ 109-11 and Exs A & B; (ii) that the transferred money constituted

BLMIS "customer property" under SIPA, *id.* ¶ 111; and (iii) that Fairfield made subsequent

transfers of approximately $19 million of that $3 billion of "customer property" to NBK, *id.* ¶

116 & Exs C & D. The plaintiff sues to recover the alleged subsequent transfers to NBK

allegedly derived from transfers BLMIS allegedly made to Fairfield within two and six years

before the Filing Date, citing Bankruptcy Code §§ 544(b), 547(b), 548(a), 550(a), and 551, and

Securities Investor Protection Act, 15 § U.S. § 78fff-2(c)(3). *Id.* ¶¶ 126, 128).

### Summary of Argument

Federal Rules 8(a)(2) and 12(b)(6), as the Supreme Court has interpreted and applied

them, require dismissal "when the allegations in a complaint, however true, could not raise a

---

[1] Capitalized terms not defined in this memorandum that are defined in the Complaint have the same meaning as in the Complaint.

claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The

claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 556, 570) (emphasis added).

The Court must assume the truth of well-pleaded factual allegations for purposes of the

motion; the presumption of truth, however, does not apply to non-factual allegations, *id*. at

678–79, or to "legal conclusion couched as a factual allegation[,]" *id.*, citing *Papasan v. Allain*,

478 U.S. 265, 286 (1986). In addition, factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at

678, but non-factual allegations are not entitled to any inferences. *See id.*

The NBK Complaint should be dismissed in whole or part for three reasons. First, it is

deficient because it does not plead directly or by permissible inference one of the essential

elements of the plaintiff's claim, namely that money NBK received any "customer property"

from Fairfield that originated with BLMIS. Second, the plaintiff's indiscriminate incorporation

by reference of the entirety of the plaintiff's separate complaint against Fairfield, its affiliates

and its personnel (the "Fairfield Complaint") violates the Federal Rule 8(a)(2) requirement a

pleading must be "a short and plain statement of the claim showing that the pleader is entitled

to relief," (emphasis added), which the NBK Complaint is not with the Fairfield Complaint

incorporated.  Third, the preclusive effect of the Bankruptcy Code § 546(e) safe harbor for

2

securities settlements is established as a matter of law.[2]

## ARGUMENT

### I. The Amended Complaint Does Not Adequately Allege Facts Showing NBK Received Any BLMIS Customer Property

An essential element of the plaintiff's claim is that the property he seeks to recover is the debtor's "customer property" as defined in SIPA. That requires adequate factual allegations that the money Fairfield transferred to NBK came from money BLMIS transferred to Fairfield. If this is not alleged directly with facts or through a reasonable inference drawn from factual allegations, the complaint fails to state a required element of the recovery claim and must be dismissed. That is the case here.

As noted, the Complaint alleges that BLMIS transferred $3 billion to Fairfield and that Fairfield transferred $19 million to NBK, giving the dates and amounts of each transfer by BLMIS and by Fairfield. This information is set out in Exhibits A and B to the Complaint for the BLMIS to Fairfield transfers and in Exhibits C and D listing Fairfield-to-NBK transfers. Although the Complaint says Fairfield transferred to NBK "a portion of the initial transfers" it received from BLMIS, Compl. ¶¶ 116, this is not a factual allegation is not a factual allegation but only a conclusory assertion that is unsupported by any factual content in the Complaint. Therefore, the Complaint does not allege that any of the $19 million Fairfield transferred to NBK originated from the $3 billion BLMIS transferred to Fairfield. The Complaint also does not allege that Fairfield had no source of funds to make redemption payments other than BLMIS. In fact, the plaintiff alleges just the contrary. Therefore, the plaintiff would need an inference to link

---

[2] NBK has carefully read the court's decisions in other subsequent-transfer cases. It respectfully believes the NBK Complaint and NBK's arguments are different from those previously decided and also that its appellate rights ought to be preserved.

the $19 million to the $3 billion, which, in turn, would require factual allegations to supporting

an inference. But no such facts are alleged. Guesses, speculation, and conjectures do not cover

the gap. Exhibits A & B have no tie to Exhibits C & D and the Complaint does not meet the

requirement for the plaintiff to factually allege that NBK received BLMIS "customer property."

To go a step farther, the plaintiff actually alleges and represents to the court and parties

that Fairfield paid out $5 billion dollars while receiving only $3 billion of BLMIS customer

property, which demonstrates that the plaintiff believes Fairfield had a source of funds, and a

substantial one, independent of BLMIS; the Complaint ignores that inconvenient fact. The

unmentioned $2 billion is found in the Exhibits to the subsequent transfer complaints showing

Fairfield's alleged transfers to the subsequent transferees as Exhibits C and D to for the NBK

Complaint. Only arithmetic addition leads to the $5 billion total. For three separate reasons, the

exhibits to all the subsequent transfer complaints must be considered as part of the plaintiff's

allegations in this NBK adversary proceeding:

**First**, the court has held that all the subsequent transfer actions are part of the same

case, citing Judge FitzSimon's decision in *In re Greiger*, 446 B.R. 670, 679 (Bankr. E.D. Pa.

2010). *E.g., SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 CGM at *12 (Bankr.

S.D.N.Y. June 30, 2022). The plaintiff agrees, saying in his Opposition Memorandum in

another subsequent transfer action that, "[i]n the bankruptcy context ... pleadings filed in the

'same action' may be properly adopted by reference in other pleadings in that action ...."[3]

**Second**, the exhibits to all the plaintiff's subsequent transfer complaints are judicial

admissions that are binding on the plaintiff as facts represented to the court and parties. The

---

[3] Trustee's Memorandum of Law in Opposition to Defendant Korea Exchange Bank's Motion to Dismiss the
Complaint, filed July 15, 2022, in *Picard v. Korea Exchange Bank, et al.*, 11-02572 (Bankr. S.D.N.Y.). ECF Dkt
No. 140 ("KEB Opp. Mem.") at 33.

4

plaintiff cannot escape his judicial admissions. *Guadagno v. Wallack Ader Levithan Associates*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (Rakoff, J.) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)).[4]

**Third**, the court may, and should, take judicial notice of the other subsequent transfer complaints and exhibits filed in this case and the facts the plaintiff represented to the court in them. The plaintiff urged with this approach in connection with his reasons why the Fairfield Complaint should be deemed part of this action saying, "On a motion to dismiss, 'a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." KEB Opp. Mem. at 35, citing *Ferrari v. County of Suffolk*, 790 F. Supp 2d 34, 38 n.4 (E.D.N.Y. 2011), and *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).

Therefore, the allegations present two possibilities – (a) NBK did, or (b) NBK did not, receive any BLMIS customer property. All $19 million of alleged subsequent transfers may have come from the $2 billion non-BLMIS property or some or all of it could have come from the $3 billion of BLMIS property. If the former is true case, NBK would face no liability; in the latter, NBK might fact liability (in an unknown amount). Factual allegations do not favor one possibility as more likely than the other or could factually support an inference that one is more possible. All the complaint contains is the conclusory, non-factual "a portion of" statement, which the

---

[4] In *Guadagno*, the District Court explained that, "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." [citations omitted]. A judicial admission is conclusive, unless a court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." *Guadagno*, 950 F. Supp. at 1261 (S.D.N.Y. 1997). *Accord Bellefonte re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); see *Mull v. Ford Motor Co.*, 368 F.2d 713, 715 (2d Cir. 1966). Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading.")

Supreme Court has held in *Twombly* and *Iqbal* is not entitled to a presumption of truth or to serve

as the basis for a reasonable inference. Therefore, under direct and controlling Supreme Court

precedents, the NBK Complaint is deficient under Federal Rules 8(a)(2) and 12(b)(6).

In fact, *Twombly* and *Iqbal* are astonishingly similar to this case. As here, both turn on

whether an essential element of a claim can be satisfied in a complaint by an inference drawn

from the allegations and the nature and character of the allegations that can support such an

inference. *Twombly* was a Sherman Act § 1 case, which requires the plaintiff to allege as an

indispensable element of his claim that the defendants acted in concert with each other (a

"contract, combination, or conspiracy") rather than individually. Without a sufficient allegation

of concerted action, the complaint would fail to allege the plaintiff's "entitlement to" or "a claim

for" "relief." The *Twombly* complaint set out detailed factual allegations showing that the

defendants' had reacted with the same behavior in response to what the plaintiff characterized as

a competitive threat. They asked the Court to infer from that similarity of conduct that the

complaint sufficiently alleged the "concert of action" element. Concerted action certainly was

one possible inference, but the Court pointed out that the same allegations were equally

consistent with each defendant having acted with its own assessment of its individual interests,

an inference that would defeat the complaint. Therefore, the Court said, the allegations showed

two equal possibilities with neither more plausible than the other.

That is the origin and meaning of the often-quoted *Twombly* phrase about "nudging"

allegations "across the line from conceivable possible to plausible," *Twombly*, 550 U.S. at 557

(and repeated in *Iqbal*, 556 U.S. at 680). Dismissing the complaint, the Court held that an

inference necessary to survive a Rule 12(b)(6) motion must be both reasonable and based on

factual allegations:

6

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265,
> 286, 106 S. Ct. 2932, (on a motion to dismiss, courts "are not bound to accept as
> true a legal conclusion couched as a factual allegation"). Factual allegations must
> be enough to raise a right to relief above the speculative level, see 5 C. Wright &
> A. Miller, *Federal Practice and Procedure* § 1216, pp 235-236 (3d ed. 2004)
> (hereinafter Wright & Miller) ("[T]he pleading must contain something more ...
> than ... a statement of facts that merely creates a suspicion [of] a legally
> cognizable right of action"), on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact)...."

*Twombly*, 550 U.S. at 555 (footnote omitted). "[W]ithout some further factual enhancement [the

complaint] stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"

*Id*. at 557 (citing *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir.

1999).).

Two years later, *Iqbal* reaffirmed the *Twombly* principles and analytical framework and

announced that they apply in all types of cases, which includes bankruptcy adversary

proceedings. The Court said, "Our decision in *Twombly* expounded the pleading standards "for

all civil actions," *Iqbal,* 556 U.S. at 684 (citing Federal Rule 1). Mr. Iqbal had asserted a *Bivens*

constitutional discrimination claim, alleging that he practiced Islam and came from the Middle

East. He claimed the government had relegated him to especially harsh prison confinement

because of his religion and nationality. That was possible on the facts alleged. But the

government noted that the plaintiff was also a combatant against the U.S. and it was that status

that provided the reason for Mr. Iqbal's special confinement, not his religion or nationality. That

also was possible on the facts alleged and no allegations made one more possible than the other.

The Court said:

> In keeping with the[] [*Twombly*] principles a court considering a motion to
> dismiss can choose to begin by identifying <u>pleadings that</u>, because they <u>are no</u>
> <u>more than conclusions, are not entitled to the assumption of truth</u>. While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations. <u>When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.</u>

*Id.* at 679 (emphasis added). This says that the sufficiency of a complaint depends on "factual allegations" of the type missing from the NBK Complaint. Applying *Twombly*, the *Iqbal* court identified the nub of the Federal Rule 8(a)(2) issue:

> But even if the complaint's well-pleaded facts give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination, that inference alone would not entitle respondent to relief.... To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post–September–11 detainees as "of high interest" because of their race, religion, or national origin.
>
> This the complaint fails to do. Though respondent alleges that various other defendants, who are not before us, may have labeled him a person of "of high interest" for impermissible reasons, his only factual allegation against petitioners accuses them of adopting a policy approving "restrictive conditions of confinement" for post–September–11 detainees until they were "'cleared' by the FBI." *Ibid.* Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the [Administrative Maximum Special Housing Unit] due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. <u>He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible."</u> *Twombly*, 550 U.S., at 570, 127 S.Ct. 1955.

*Id.* at 682-83 (emphasis added). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678, quoting *Twombly*. The Court dismissed Mr. Iqbal's complaint under Rules 8(a)(2) and 12(b)(6). The same reasons require dismissal of the NBK Complaint.

In this case, the plaintiff alleges, and admits that Fairfield received $3 billion of customer property from BLMIS but that it transferred out $5 billion. The possibilities are equal that NBK did nor did not receive any customer property. Therefore, the facts do not support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014) ("*Merkin*") (citations omitted), and the complaint must be dismissed.

NBK's argument for dismissal does not have anything at all to do with "tracing" or "comingling" or "dollar-for-dollar accounting." It also does not involve complicated arguments that compare myriad payment and receipt dates. It just takes the plaintiff's factual allegations in this case, adds them up, and shows that a missing $2 billion leaves the plaintiff's "customer property" theory possible but not plausible.

The NBK Complaint cannot be sustained on the argument that the plaintiff has alleged the "relevant pathway" for customer property to have traveled from BLMIS to NBK. But that is not true because the allegations do not in any way link what BLMIS paid Fairfield to what Fairfield paid NBK. The plaintiff is required to "allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]," NBK. *Picard v. Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012). The NBK Complaint does not do so; it only says that "maybe" NBK received money from BLMIS or "maybe" it came entirely from wherever the $2 billion originated, which was not BLMIS. The same gap also prevents using to the "necessary vital statistics" approach. That requires a plaintiff to allege factually "'the who, when, and how much' of the purported transfers to establish an entity as a transferee of the funds," *Merkin*, 515 B.R. at 150, meaning "the funds" that originated with the debtor. Here, the NBK Complaint makes no factual allegations stating or

9

permitting a reasonable inference of "who" originated the Fairfield-to-NBK transfers or "how much" of any of the transfers originated with BLMIS. Therefore, the "relevant pathways" and "necessary vital statistics" approaches fail because the required information would be only guesses.

Decisions that have sustained a "relevant pathways" or "vital statistics" approach have relied on factual allegations that supported the inference that the recipient had received customer property, which are not present here. *Picard v. Mayer (In re Bernard L. Madoff)*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting defendant's argument in part because "[l]edger entries note that these payments were in connection with" the initial fraudulent transfers (emphasis added)); *Merkin*, 515 B.R. at 149–150 ("several subsequent transfers took place contemporaneously or shortly after an initial transfer ... implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") (upholding the complaint because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives").[5] No such allegations are offered in the NBK Complaint.

Accordingly, the NBK Complaint must be dismissed under Federal Rules 8(a)(2) and 12(b)(6) because it does not adequately and factually allege that NBK received any BLMIS "customer property."

## II.    The Amended Complaint Violates Rule 8(a)(2)

---

[5] *Accord* 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC), 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (the complaint alleged that two payments totaling $29.4 million were deposited into an account and $29.4 million was transferred out within a day); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding the complaint pleaded linkage between the initial and subsequent transfers since "[t]he funds . . . were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the [subsequent] transfers").

In May 2009, the plaintiff filed his initial Fairfield Complaint against Fairfield, its

affiliates, and its insiders, later amending it twice.[6] The complaints are lengthy and complicated

and allege many different legal claims against many different defendants. The operative

Fairfield Complaint when the plaintiff filed his initial NBK Complaint was over 200 pages and

alleged 34 separate legal claims against 45 defendants in 800 paragraphs and 111 exhibits. The

current Fairfield Complaint is a bit more modest but still alleges 17 legal claims against 16

defendants in 105 pages with more than 400 paragraphs and 23 exhibits.[7] That is a great deal of

material and obviously not "a short and plain statement" under Rule 8(a)(2).

The plaintiff added the whole Fairfield Complaint into the NBK Complaint by

incorporation. Doing so, overwhelms the NBK Complaint, which is only 25 pages long, 128

paragraphs, four exhibits asserting one claim against two defendants. Naturally, the Fairfield

Complaint does not refer to NBK or its conduct, and seems to have been incorporated only to

allege that the initial transfers from BLMIS to Fairfield are avoidable or were avoided. The

issue NBK is raising is not whether the Fairfield Complaint complies with Federal Rule 8(a)(2)

but rather whether the NBK Complaint qualifies as "a short and plain statement of the claim

showing the pleader is entitled to relief." It does not, but the relief NBK seeks can be

accomplished effectively and quickly short of dismissal or motion to strike "immaterial

allegations under Federal Rule 12(f).

As noted earlier, the court invoked Judge FitzSimon's decision in *Greiger*, 446 B.R. at

679, in holding that Federal Rule 10(c) permits the incorporation of the whole Fairfield

---

[6] *Picard v. Fairfield Sentry Ltd.*, 09-1239 (Bankr. S.D.N.Y. May 18, 2009), ECF. Dkt No. 1 (May 2009); ECF Dkt
No. 23 (July 2010), and ECF Dkt No. 286 (Aug. 2020).

[7] As a legal matter, it is not clear if the incorporation by reference will apply to the first or the second amended
complaints in the *Fairfield* case. However, even if it were to be decided that the plaintiff seeks to incorporate the
second amended complaint, the NBK defendants arguments and modest request are still the same and the relief it
seeks is still necessary by application of Federal Rule 8(a)(2).

Complaint into subsequent-transfer complaints. *E.g.*, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*,

08-01789 CGM at \*12 (Bankr. S.D.N.Y. June 30, 2022). Judge FitzSimon did just that but then

in the next paragraph dismissed the complaint, holding that the incorporation caused the

pleading to violate the "short and plain statement" requirement of Rule 8(a)(2):

> That said [*i.e.*, allowing the incorporation], upon careful consideration of the
> Complaint in the Non-dischargeability Adversary, the Court finds that the
> pleading does not meet Rule 8's requirements that a pleading contain a "short and
> plain statement of the claim showing that the pleader is entitled to relief" and that
> "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2),
> (d)(1).
>
> The purpose of Rule 8 is "to prevent complaints that are ambiguous or vague
> enough to impede the defendant's ability to form a responsive pleading." *Young v.
> Centerville Clinic, Inc.*, 2009 WL 2448003, at \*1 (W.D.Pa.Aug.10, 2009) (citing
> *Schaedler v. Reading Eagle Publication, Inc.,* 370 F.2d 795, 798 (3d Cir.1967)).
> *Young*, which held that a "haphazard" and disorganized amended complaint
> should be dismissed, noted that the complaint "does not clarify which facts
> actually apply to which claims. The Amended Complaint ... creates an undue
> burden for the Court and the Defendant to sift through...." Id. at \*2. *See also
> Glenn v. Hayman*, 2007 WL 894213, at \*2 (D.N.J. Mar.21, 2007) ("length and
> complexity may doom a complaint by obfuscating the claim's essence ... judges
> and adverse parties need not try to fish a gold coin from a bucket of mud") (citing
> *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir.1996)) (additional
> citations omitted).

*Id*. at 679. The courts in *Davis v. Bifani*, 2007 U.S. Dist. LEXIS 30800 (D. Colo. 2007) and *Am.

Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), chose the same

approach as Judge FitzSimon, permitting the incorporation by reference under Federal Rule

10(c) and dismissing the pleading for failing to comply with Federal Rule 8(a)(2).

Federal Rule 8(a)(2) requires the plaintiff to exclude from the NBK Complaint the parts

that do not pertain to his claim against NBK. The Rule does not impose on a defendant a duty to

guess which allegations apply and to assume the risk of guessing wrong. Setting the contents of

the complaint clearly is important because the complaint defines the scope of the action and any

12

further proceedings in the case. What the plaintiff now, or in the future, will say is part of the

NBK case is exclusively within the plaintiff's.[8]

The court would be correct in observing that NBK and its attorney have labored in the

Madoff Defense Vineyard for many years. However, their attention and energies have been

devoted to particular proceedings and motions that gave them no knowledge about which

allegations in the Fairfield Complaint the plaintiff thinks are applicable to his claim against NBK

which other allegations he does not.  NBK and its attorney are entitled to a "short and plain"

statement providing notice, with some reasonable degree of certainty, of what is in the case they

are defending and what is not. Even if they were to make their best guesses, the Federal Rules do

put that burden and risk on defendants to ferret out meaning from 800 (or 400) paragraphs that

are not directed at them.

NBK certainly does want the plaintiff to type the whole Fairfield Complaint into a

further amended NBK Complaint. That would not achieve anything. NBK would be satisfied

with a list of the specific paragraphs or parts the plaintiff contends are part of his action against

NBK, expecting the plaintiff will select in good faith and judiciously. The list can be

documented in a stipulated order. This task would not be difficult or time-consuming task,

would not impose undue burden, expense, or prejudice on the plaintiff or delay the case, and

would provide NBK meaningful relief consistent with Federal Rule 8(a)(2). It is also  preferable

---

[8] It is true, as the court has observed, that NBK and its attorney have labored in the Madoff Defense vineyard for
many years. However, their attention and energies have been devoted to particular proceedings and motions that
have not given them knowledge about which of the allegations in the Fairfield Complaint the plaintiff thinks are
applicable to his claim against NBK which other allegations are not. that has given them no knowledge of which
allegations in the Fairfield Complaint are meant to apply in the NBK action and which are not. NBK and its attorney
are entitled to a "short and plain" statement of what is in the case against them, not to guess.  And, even if they made
their best guesses, the Federal Rules do not require the defendants to ferret out meaning from 800 (or 400)
paragraphs that are not directed at them. Defendants are entitled to certainty.

a motion under Federal Rule 12(f) to strike the many plainly "immaterial" allegations in the incorporated Fairfield Complaint.

### III.  The Allegations Demonstrate that Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers More than Two Years before the Filing Date

Bankruptcy Code § 546(e) precludes a debtor from recovering subsequent transfers from innocent transferees when the transfer is a settlement of a securities transaction. A motion to dismiss may rely on an affirmative defense if the facts necessary for the defense appear on the face of the complaint. *SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). The plaintiff's allegations show that § 546(e) prohibits the recovery of the Fairfield Initial Transfers and establish NBK's defenses to recovery under § 550(b).[9]

In an action to recover a subsequent transfer, the subsequent transferee may assert any defenses to avoidability of the initial transfer the initial transferee could have asserted, including § 546(e). *See id.* at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Plaintiff's avoidance of certain transfers, as is the case here … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

Section 546(e) bars the plaintiff from avoiding (other than under § 548(a)(1)(A) with a limited reach-back period of two years) a transfer, *inter alia*, (1) that was either a settlement payment or a transfer in connection with a securities contract; and (2) made by or to (or for the

---

[9] Section 546(e) reads: "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the plaintiff may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e).

benefit of) a covered entity such as a stockbroker, financial institution, or financial participant. Because BLMIS's initial transfers to Fairfield relevant to this adversary proceeding are protected from avoidance by § 546(e), they therefore cannot be recovered from a subsequent transferee, and the Complaint must be dismissed.

## A. The Relevant Fairfield Initial Transfers Made More than Two Years Before the Filing Date May Not Be Avoided Under Section 548(a)(1)(A)

Under § 548(a)(1)(A), a plaintiff may avoid only transfers made within two years before the Filing Date. Any transfer before that date is protected by § 546(e) and may not be avoided.

The Complaint does not specify which BLMIS transfers to Fairfield allegedly included customer property subsequently transferred to NBK. Any that occurred more than two years before the Filing Date are not subject to avoidance under § 548(a)(1)(A) or otherwise and the plaintiff may not recover redemption payments Fairfield made to NBK from such transfers.

## B. The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract

Section 546(e) applies to transfers from BLMIS to its account holders and shields them from avoidance, both because the documents governing BLMIS customers' accounts constituted securities contracts and because the payments BLMIS made to those customers were made "in connection with" those contracts and also constituted "settlement payments." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 417, 418–23 (2d Cir. 2014) ("*Fishman*"). Either of those reasons would suffice to invoke the safe harbor. The of Appeals rejected the plaintiff's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities Court transactions with BLMIS's customers. *Id.* at 419–20. Therefore, the Fairfield Initial Transfers were settlement payments made in connection with a securities contract that come within the protection of § 546(e).

There is another reason §546(e) applies to the Fairfield Initial Transfers. Section 546(e)

applies to a transfer "in connection with *a* securities contract," not just to a transfer in connection

with *the* securities contract between the initial transferor and transferee. If the initial transferee

withdrew funds from BLMIS to make a payment under a securities contract between the initial

transferee and the subsequent transferee, the withdrawal from BLMIS also would be a

transfer made in connection with the contract between the initial transferee and the

subsequent transferee and would not be avoidable. As Judge Rakoff stated:

> Take, for example, a hypothetical situation in which the Plaintiff alleges that a
> withdrawal of funds by an investment fund from its Madoff Securities customer
> account occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract. Assuming that either the
> investment fund or the investor qualifies as a financial institution or financial
> participant, and barring other circumstances that may appear on the facts of a given
> case, that situation appears to fit within the plain terms of Section 546(e): an
> initial transfer that was "made by or to (or for the benefit of) a … financial
> institution [or] financial participant … in connection with a securities contract."

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013)

("*Cohmad II*") (footnote omitted)[10]; *see Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar

for the required relationship between the securities contract and the transfer sought to be

avoided."). The definition of "securities contract" includes "a contract for the purchase, sale, or

loan of a security." 11 U.S.C. § 741(7)(A)(i). "The term 'redemption,' in the securities context,

means 'repurchase.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 80 (2d Cir.

2019) ("*Tribune I*"). Accordingly, "the definition of securities contract…includes…

redemption requests." *Cohmad II*, 2013 WL 1609154, at *8. All transfers from Fairfield

---

[10] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to
an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may
together comprise a 'settlement payment' under *Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d
329, 339 (2d Cir. 2011)]*, that transfer may fall within the purview of Section 546(e), assuming it meets the statute's
other requirements." *Cohmad II*, 2013 WL 1609154 *9 n.5.

to NBK were payments for the redemption of Fairfield shares. Therefore, a redemption request that Fairfield honored under its Articles of Association is itself a securities contract, the payment of the redemption amount is a settlement payment, and Fairfield's withdrawals of funds from BLMIS to make the redemption payment were therefore transfers in connection with a securities contract and unavoidable on that basis.[11]

### C. The Fairfield Initial Transfers Were Made By or To a Covered Entity.

The alleged Fairfield Initial Transfers were made by or to an entity covered by § 546(e) both because the alleged initial transfers were made by a stockbroker and because they were made to a financial institution, though either of those facts alone would suffice.

#### 1. The Fairfield Initial Transfers Were Made By a Stockbroker.

In a prior adversary proceeding in this SIPA case, the District Court concluded:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions…. [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). As the Second Circuit noted on appeal, "[i]t is not disputed [by the Plaintiff] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. That fact is no longer subject to dispute.

#### 2. The Fairfield Initial Transfers Were Made To A "Financial Institution."

---

[11] Fairfield's Articles of Association governed Fairfield's payments to NBK, which were for the redemption of NBK's shares in Fairfield. *See Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10, https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf (last visited Sept. 13, 2022) ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares…are to be found in the Articles of Association of the Fund").

Section 101(22) defines "financial institution" to include not only "an entity that is a

commercial or savings bank," but also the customer of such a bank "when [it] is acting as

agent or custodian for a customer…in connection with a securities contract." 11 U.S.C. §

101(22)(A). In *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC*

*Amsterdam)*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), this Court

held that the Fairfield funds (Fairfield, Sigma, and Lambda) were "financial institutions"

because they were customers of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), a

bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of

Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11,[12] which acted as the Fairfield Funds'

agent in connection with the securities contracts under which the BLMIS transfers to Sentry were

made. *Id.* at *7. As this Court found in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco
> Bank establishes the necessary agency. It is implausible to infer that Citco Bank
> made the redemption payments to specific redeemers in specific amounts absent
> the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted
> those directions by executing the redemption payments. Based on the
> foregoing, the Funds were customers of Citco Bank who acted as their agents
> in connection with the securities contracts pursuant to which the redemption
> payments were made, and the Funds were, therefore "financial institutions"
> within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* binds the

plaintiff because he was in privity with the Fairfield Liquidators. Even if not, there is no

---

[12] See De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V., https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relation Number=B0275 (last visited July 28, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including"[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch, http://registers.centralbank.ie/FirmDataPage.aspx?firmReference Number=C27278 (last visited July 28, 2022) (classifying Citco Bank as a "credit institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

reason for this Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

### D. Section 546(e) Does Not Contain a "Knowledge" Exception.

The plaintiff will likely respond that the safe harbor does not apply here because the initial transferee, Fairfield, allegedly knew of Madoff's fraud and thus knew that there was no actual "settlement payment" or "securities contract." In *Fairfield Investment Fund*, which involved a later version of the *Fairfield* complaint than the one that was incorporated by reference here, this Court accepted that the plaintiff adequately pled Fairfield's actual knowledge. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5 (citing Fairfield Second Amended Complaint). It then denied a motion to dismiss based on § 546(e), relying on Judge Rakoff's statement that "'if the Plaintiff sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Id.* at *4 (quoting *Cohmad II*, 2013 WL 1609154, at *7).

That argument does not defeat the application of § 546(e) in this case. *First*, as noted above, even if there were no actual securities contract between BLMIS and Fairfield, there still was a securities contract between Fairfield and NBK, and there is no allegation that the securities contracts between Fairfield and its investors were not real. As Judge Rakoff ruled in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Fairfield, and the subsequent transferee, NBK, and would not be avoidable. *Id.*

19

*Second*, nothing in §546(e) turns on the knowledge of the transferee.[13] The *only* exception

to §546(e) is a claim under §548(a)(1)(A), which involves actual fraudulent intent by the

*transferor. See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791,

808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the

transferee that is relevant") (citations omitted). Nor does knowledge play any role in the

definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id.* § 741(7).

Where the Code creates an exemption or safe harbor and specifies exceptions, a court is not free

to create additional exceptions, even when doing so is motivated by a party's alleged

wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014).

The courts must adhere to "the plain meaning of the language" of the statute. *See

Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018). A holding that

transferee knowledge defeats the safe harbor would be inconsistent with § 546(e)'s language.

And when a court does create an exception to an express Congressional command, as Judge

Rakoff did in imposing the "actual knowledge" exception to § 546(e), the exception

should be construed narrowly and not expanded. *See, e.g., Storm v. Storm*, 328 F.3d 941, 944 (7th

Cir. 2003) ("judicially created exception to the statutory grant of diversity jurisdiction should

be construed narrowly"); *In re Motors Liquidation Co.*, 596 B.R. 774, 788 (Bankr. S.D.N.Y.

2019) (narrowly construing judicially created "earmarking doctrine" in § 549 avoidance

action).

Judge Rakoff's *Cohmad* opinion is clear that the exception should apply only to a

---

[13] Although the Second Circuit noted in *Fishman* that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have differed had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder … was in a position to control the disposition of [the transferor's] property." *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

defendant, whether initial or subsequent, who had actual knowledge the debtor was not trading securities, not to any recipient in the chain of transfers: "In sum, if the Plaintiff sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor." 2013 WL 1609154, at *7 (emphasis added). The exception to § 546(e) should not be expanded to taint an initial transfer so as to ensnare a subsequent transferee who had no knowledge that the debtor was not trading securities.

Section 546(e) reflects a balancing of interests by Congress, one of which is the protection of market stability. "Unwinding settled securities transactions…would seriously undermine…markets in which certainty, speed, finality, and stability are necessary to attract capital." *Tribune I*, 946 F.3d at 90. "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

Accordingly, the court should dismiss the plaintiff's claims for recovery of subsequent transfers to NBK originating from initial transfers from BLMIS to Fairfield more than two years before the Filing Date.

## CONCLUSION

For the foregoing reasons, Defendants National Bank of Kuwait S.A.K. and NBK Banque Privée (Suisse) S.A. respectfully request the court to dismiss the Complaint.

Dated:   New York, New York
         September 14, 2022

By: /s/ *Richard A. Cirillo*

CIRILLO LAW OFFICE
Richard A. Cirillo
246 East 33rd Street – # 1
New York, NY 10016-4802
(212) 541-6778
e-mail: richard@cirillo-law.com

*Attorney for Defendants*
*National Bank of Kuwait*
*S.A.K. and NBK Banque*
*Privée (Suisse) S.A.*

22