David J. Mark
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Defendant Banca Carige S.p.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　Defendant. | No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>BANCA CARIGE S.P.A.,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 11-02570 (CGM) |

**<u>DEFENDANT BANCA CARIGE S.P.A.'S ANSWER TO COMPLAINT</u>**

Defendant Banca Carige S.p.A. ("Banca Carige") answers the Complaint of Plaintiff Irving H. Picard (the "Trustee") as follows.

## I. NATURE OF THE ACTION[1]

1. This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

ANSWER: Banca Carige admits that the Trustee purports to bring this adversary proceeding as part of the Trustee's efforts to recover BLMIS customer property within the meaning of 15 U.S.C. § 78lll(4) and that Madoff perpetrated a Ponzi scheme through BLMIS and denies the remaining allegations in Paragraph 1.

2. With this Complaint, the Trustee seeks to recover $10,532,489 in subsequent transfers of Customer Property made to Defendant Carige. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in BLMIS customer accounts.

ANSWER: Banca Carige admits that the Trustee seeks to recover $10,532,489 from Banca Carige and that Fairfield Sentry is currently in liquidation in the British Virgin Islands. Banca Carige denies all other allegations of Paragraph 2, including that Banca Carige received subsequent transfers of customer property from BLMIS or Fairfield Sentry.

3. When Defendant Carige received subsequent transfers of BLMIS Customer Property, Defendant Carige was an Italian bank and part of the Banca Carige Group, which provides banking and financial services to clients throughout Italy.

---

[1] Banca Carige does not deem the section headings in the Complaint to constitute allegations of the Complaint. To the extent any section headings are allegations, Banca Carige admits or denies them consistent with its responses to the allegations contained in the numbered paragraphs of the Complaint.

[2] SIPA § 78lll(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted.

2

ANSWER:  Banca Carige admits that it was an Italian bank and it provided banking and financial services to clients in Italy but otherwise denies the allegation of Paragraph 3.

## II.  JURISDICTION AND VENUE

4. The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Carige as a subsequent transferee of funds originating from BLMIS.

ANSWER:  Banca Carige avers that the allegations in Paragraph 4 state legal conclusions to which no response is required. To the extent any further response is required, Banca Carige admits that the Trustee has brought this adversary proceeding, but denies the remaining allegations in Paragraph 4.

5. This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

ANSWER:  Banca Carige denies that this Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4). Banca Carige states that the United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and SIPA § 78eee(b)(2)(A)(iii) and (b)(4), and this Court has jurisdiction over this adversary proceeding to the extent provided in SIPA § 78eee(b)(4). Banca Carige admits the remaining allegations in Paragraph 5.

6. Defendant Carige is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. Defendant Carige knowingly received transfers of Customer Property from BLMIS. The Trustee's investigation to date reveals that Defendant Carige obtained this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group

3

("FGG") managed Madoff feeder fund. By directing its investments through FGG, Defendant Carige knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant Carige entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, had a copy of the subscription agreement sent to FGG's office in New York City, and wired funds to Fairfield Sentry through a bank in New York. Defendant Carige thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

ANSWER: Banca Carige denies the allegations in Paragraph 6.

7. Defendant Carige should reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

ANSWER: Banca Carige denies the allegations in Paragraph 7.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

ANSWER: Banca Carige admits this adversary proceeding is of a kind specified as a core proceeding in 28 U.S.C. § 157(b)(2)(H) and denies the remaining allegations in Paragraph 8. Banca Carige does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court and demands trial by jury of all issues that may be tried by a jury.

9. Venue in this District is proper under 28 U.S.C. § 1409.

ANSWER: Banca Carige admits the allegations of Paragraph 9.

### III. BACKGROUND

10. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

ANSWER: Banca Carige admits on information and belief that Madoff was arrested on or around the Filing Date and that the SEC filed a complaint against BLMIS. Banca Carige lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10, and therefore denies the remaining allegations in Paragraph 10.

4

11.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

ANSWER:  Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the allegations in Paragraph 11.

12.     On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

ANSWER:  Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies the allegations in Paragraph 12.

13.     Also, on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

   a.   removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

   b.   appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

   c.   removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

ANSWER:  Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies the allegations in Paragraph 13.

14.     By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

ANSWER:  Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies the allegations in Paragraph 14.

15.     At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23.

5

Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies the allegations in Paragraph 15.

16. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies the allegations in Paragraph 16.

## IV.  TRUSTEE'S POWERS AND STANDING

17. As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

ANSWER: Banca Carige avers that the allegations in Paragraph 17 state legal conclusions to which no response is required. To the extent any further response is required, Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 17 and therefore denies such allegations.

18. Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

ANSWER:  Banca Carige avers that the allegations in Paragraph 18 state legal conclusions to which no response is required. To the extent any further response is required, Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore denies such allegations.

19.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

ANSWER:  Banca Carige avers that the allegations in Paragraph 19 state legal conclusions to which no response is required. To the extent any further response is required, Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 19 and therefore denies such allegations.

20.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544 and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

ANSWER:  Banca Carige avers that the allegations in Paragraph 20 state legal conclusions to which no response is required. To the extent any further response is required, Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore denies such allegations.

## V.    THE DEFENDANT

21.    Defendant Carige is a bank organized and existing under the laws of Italy and located at Via Cassa di Risparmio, 15 Casella Postale 897, 16100 Genoa, Italy.

ANSWER:  Banca Carige admits the allegations of Paragraph 21.

## VI.    THE PONZI SCHEME

22.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By

virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies the allegations in Paragraph 22.

23.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

ANSWER:   Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies the allegations in Paragraph 23.

24.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies the allegations in Paragraph 24.

25.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxx703.

ANSWER:   Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies the allegations in Paragraph 25.

26.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold

8

the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies the allegations in Paragraph 26.

27. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies the allegations in Paragraph 27.

28. The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies the allegations in Paragraph 28.

29. It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies the allegations in Paragraph 29.

30. Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies the allegations in Paragraph 30.

31. Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately

$65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies the allegations in Paragraph 31.

32. Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies the allegations in Paragraph 32.

## VII. THE TRANSFERS

33. Defendant Carige received subsequent transfers of Customer Property from Fairfield Sentry, which maintained customer accounts with BLMIS.

ANSWER: Banca Carige denies the allegations in Paragraph 33.

### A. Initial Transfers From BLMIS To Fairfield Sentry

34. The Trustee has filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

ANSWER: Banca Carige (a) admits that the Trustee filed an action styled as *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (BRL), Adv. Pro. No. 09-01239 (the "Sentry Action"), (b) lacks knowledge sufficient to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the complaint in this action and therefore denies such allegations, (c) denies that the initial transfers of Customer Property to Fairfield Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (d) to the extent necessary to support such denial, denies for lack of knowledge sufficient to form a belief

10

as to the truth of the allegations, each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Fairfield Sentry are or were avoided or avoidable, and (e) objects to the incorporation by reference of, and therefore does not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, Banca Carige lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 and therefore denies such allegations.

35.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER:  Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in Paragraph 35 and therefore denies such allegations. Banca Carige avers that the remaining allegations in Paragraph 35 state legal conclusions to which no response is required. To the extent that any further response is required, Banca Carige denies the allegations in Paragraph 35.

36.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

11

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in Paragraph 36 and therefore denies such allegations. Banca Carige avers that the remaining allegations in Paragraph 36 state legal conclusions to which no response is required. To the extent that any further response is required, Banca Carige denies the allegations in Paragraph 36.

37. The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and are recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in Paragraph 37 and therefore denies such allegations. Banca Carige avers that the remaining allegations in Paragraph 37 state legal conclusions to which no response is required. To the extent that any further response is required, Banca Carige denies the allegations in Paragraph 37.

38. The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore denies such allegations.

39. Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

ANSWER: Banca Carige refers the Court to the Settlement Agreement and the consent judgment alleged in Paragraph 39 for the contents thereof and otherwise denies the allegations of Paragraph 39.

### B. Subsequent Transfers From Fairfield Sentry To Defendant Carige

40. A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Carige and is recoverable from Defendant Carige pursuant to section 550 of the Bankruptcy Code. Based on the Trustee's investigation to date, approximately $10,532,489 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Carige (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

ANSWER: Banca Carige admits that it received approximately $10,532,489 from Fairfield Sentry and denies the remaining allegations of Paragraph 40.

41. The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

ANSWER: Banca Carige lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies such allegations.

### COUNT ONE
### RECOVERY OF SUBSEQUENT TRANSFERS –
### 11 U.S.C. §§ 550(a) AND 551

42. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

ANSWER: Banca Carige incorporates by reference its answers to the allegations contained in each of the previous paragraphs of this Complaint as if fully rewritten herein.

43. Defendant Carige received the Fairfield Sentry Subsequent Transfers, totaling approximately $10,532,489, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

ANSWER: Banca Carige admits the receipt of approximately $10,532,489 from Fairfield Sentry and denies the remaining allegations of Paragraph 43.

44. Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Carige.

ANSWER:  Banca Carige denies the allegations of Paragraph 44.

45. Defendant Carige is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

ANSWER:  Banca Carige denies the allegations of Paragraph 45.

46. As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Defendant Carige recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

ANSWER:  Banca Carige avers that the allegations of Paragraph 46 state legal conclusions to which no response is required. To the extent a response is required, Banca Carige denies the allegations of Paragraph 46.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense (Personal Jurisdiction)

47. This Court lacks personal jurisdiction over Banca Carige for each of the reasons stated in Banca Carige's Motion To Dismiss The Complaint, filed on January 28, 2022 in this adversary proceeding, and Banca Carige has not consented to a decision by this Court or to this Court's authority to hear and determine this action.

### Second Affirmative Defense (Failure to State a Claim)

48. The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Banca Carige's Motion To Dismiss The Complaint, filed on January 28, 2022 in this adversary proceeding.

### Third Affirmative Defense (Section 550(b), Value, Good Faith, Without Knowledge of Voidability)

49. The Fairfield Sentry Subsequent Transfers may not be recovered because Banca Carige took such Fairfield Sentry Subsequent Transfers for value and in good faith and without

14

knowledge of the voidability of the Fairfield Sentry Initial Transfers within the meaning of 11 U.S.C. § 550(b).

50. <u>Value</u>. Banca Carige took the Fairfield Sentry Subsequent Transfers in exchange for Fairfield Sentry's redemption of its own shares from Banca Carige and therefore took for value.

51. <u>Good Faith</u>. At no time on or before the date of the Fairfield Sentry Subsequent Transfers was any director, officer, employee, or agent of Banca Carige aware that BLMIS was not trading securities or was a fraud or a Ponzi scheme or that Fairfield Sentry or its directors, officers, employees, agents, or consultants knew or suspected that BLMIS was not trading securities or was a fraud or a Ponzi scheme. At the time the Fairfield Sentry Subsequent Transfers were made, Banca Carige was not aware of non-public information about Fairfield Sentry and about BLMIS. On or before the date of the Fairfield Sentry Subsequent Transfers, Banca Carige did not have access to non-public information regarding BLMIS. Banca Carige handled its Fairfield Sentry account consistent with its handling of similar investments made by Banca Carige and based on generally available information about Fairfield Sentry and about BLMIS. Banca Carige did not have any communications with BLMIS or its officers or employees or Madoff on or before the date of the last of the Fairfield Sentry Subsequent Transfers. None of the communications Banca Carige had with Fairfield Sentry or its directors, officers, or employees on or before the date of the Fairfield Sentry Subsequent Transfers revealed or suggested that BLMIS was not trading securities or was a fraud or a Ponzi scheme or that Fairfield Sentry or its directors, officers, or employees suspected that BLMIS was not trading securities or was a fraud or a Ponzi scheme.

52. The Fairfield Sentry Subsequent Transfers were routine transfers in exchange for redemption of shares in Fairfield Sentry. A reasonable person with the facts in Banca Carige's

15

possession at the time of the Fairfield Sentry Subsequent Transfers would not have been on inquiry notice of any fraudulent purpose behind the Fairfield Sentry Subsequent Transfers nor would those facts have led such a person to conduct further inquiry into whether there was a fraudulent purpose to such Fairfield Sentry Subsequent Transfers or the Fairfield Sentry Initial Transfers or whether BLMIS was trading securities or was a fraud or a Ponzi scheme.

53.    Assuming that Banca Carige was on inquiry notice of any fraudulent purpose behind the Fairfield Sentry Subsequent Transfers (which it was not), a diligent inquiry by Banca Carige would not have discovered that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Other entities with greater investigatory tools and resources than Banca Carige and with more access to BLMIS personnel and documentation than Banca Carige investigated BLMIS but failed to uncover that it was a Ponzi scheme before December 2008, including the SEC, which began an investigation into BLMIS in 2006 but could not determine BLMIS's fraudulent purpose. Banca Carige did not have the capability of discovering what United States government regulators could not and would not have discovered as the fraudulent purpose of the Fairfield Sentry Initial Transfers or, if there were any, the fraudulent purpose to the Fairfield Sentry Subsequent Transfers. As an entity without privity with BLMIS, Banca Carige did not have any reasonable ability to conduct a diligent investigation into BLMIS, including into its IA Business, that could have led to a discovery of the fraudulent purpose of the Fairfield Sentry Initial Transfers.

54.    <u>Without Knowledge of the Voidability of the Fairfield Initial Transfers</u>. Banca Carige did not have knowledge of the voidability of the Fairfield Sentry Initial Transfers when it received each of the Fairfield Sentry Subsequent Transfers.

### **Fourth Affirmative Defense (Non-Avoidability of Fairfield Sentry Initial Transfers Under Section 546(e)—Settlement Payment)**

55.    Under section 546(e) of the Bankruptcy Code, the Fairfield Sentry Six Year Initial

16

Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) are not avoidable because they were settlement payments, as defined in section 101 or 741 of the Bankruptcy Code, made before the commencement of the case by or to (or for the benefit of) BLMIS, which was then a stockbroker, or Fairfield Sentry, which was then a financial institution or financial participant and, on information and belief, did not have actual knowledge that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Because the Fairfield Sentry Six Year Initial Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) are not avoidable, property received by Banca Carige (if any) as part of the Fairfield Sentry Six Year Initial Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) is not recoverable from Banca Carige. In addition, at the time of the Fairfield Sentry Subsequent Transfers from Fairfield Sentry to Banca Carige, Banca Carige had no actual knowledge that BLMIS was not trading securities or that it was a fraud or a Ponzi scheme.

**Fifth Affirmative Defense (Non-Avoidability of Fairfield Sentry Initial Transfers Under Section 546(e)—Securities Contract)**

56.     Under section 546(e) of the Bankruptcy Code, the Fairfield Sentry Six Year Initial Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) were not avoided and are not avoidable because they were transfers made before the commencement of the case by or to (or for the benefit of) BLMIS, which was then a stockbroker, or Fairfield Sentry, which was then a financial institution or financial participant, and, on information and belief, did not have actual knowledge that BLMIS was not trading securities or was a fraud or a Ponzi scheme, in connection with a securities contract, as defined in section 741(7) of the Bankruptcy Code, between BLMIS and Fairfield Sentry or between Fairfield Sentry and Banca Carige. Because the Fairfield Sentry Six Year Initial Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) are not avoidable, property received by Banca Carige as part of the Fairfield Sentry Six Year Initial

17

Transfers (excluding the Fairfield Sentry Two Year Initial Transfers) is not recoverable from Banca Carige. In addition, at the Fairfield Sentry Subsequent Transfers from Fairfield Sentry to Banca Carige, Banca Carige had no actual knowledge that BLMIS was not trading securities or that it was a fraud or a Ponzi scheme.

### Sixth Affirmative Defense (Not Customer Property)

57. The property that Banca Carige received from Fairfield Sentry was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and therefore the property is not recoverable by the Trustee from Banca Carige.

### Seventh Affirmative Defense (Proceeds Not Recoverable)

58. In the alternative, to the extent that the property Banca Carige received from Fairfield Sentry or Fairfield Sigma was proceeds of Customer Property or other property that BLMIS transferred to Fairfield Sentry, it is not recoverable by the Trustee from Banca Carige under section 550(a)(2) of the Bankruptcy Code.

### Eighth Affirmative Defense (Section 550(d)—Single Satisfaction)

59. Under section 550(d) of the Bankruptcy Code, the Trustee may not recover any subsequent transfer from Banca Carige to the extent he has recovered from Fairfield Sentry or any other immediate or mediate transferee the amount of the avoided initial transfer that included the customer property that the Trustee alleges Banca Carige received.

### Ninth Affirmative Defense (Extraterritoriality)

60. The Trustee's recovery from Banca Carige of any transfer from Fairfield Sentry would constitute an impermissible extraterritorial application of U.S. law.

### Tenth Affirmative Defense (Comity)

61. The Trustee's recovery from Banca Carige of any transfer from Fairfield Sentry would violate principles of comity.

## DEMAND FOR JURY TRIAL

Banca Carige does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court and demands trial by jury before the District Court of all issues that may be tried by a jury.

WHEREFORE Defendant Banca Carige prays that Plaintiff trustee take nothing by his complaint and that the Court grant Banca Carige such other relief, including an award of attorneys' fees, costs, and disbursements, as may be just.

Dated: New York, New York
September 12, 2022

Respectfully submitted,

**KASOWITZ BENSON TORRES LLP**

By: */s/ David J. Mark*
David J. Mark
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Defendant Banca Carige S.p.A.*