**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01565 (CGM) |
| Plaintiff, | |
| v. | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK (LUXEMBOURG) S.A.), as represented by its Liquidator HANSPETER KRÄMER, | |

HANSPETER KRÄMER, in his capacities as liquidator and representative of STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A., STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LTD., f/k/a AMERICAN EXPRESS BANK INTERNATIONAL, and STANDARD CHARTERED HOLDINGS INC. (as successor in interest to STANDARD CHARTERED INTERNATIONAL (USA) LTD., f/k/a AMERICAN EXPRESS BANK LTD.),

Defendants.

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ................................................................3

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................................3

II.     THE FAIRFIELD FUNDS ................................................................4

III.    DEFENDANTS AND THEIR INVESTMENTS IN BLMIS FEEDER FUNDS ..............5

ARGUMENT ................................................................6

I.      LEGAL STANDARD................................................................6

II.     DEFENDANTS CANNOT RELY ON THE MERE CONDUIT DEFENSE ....................6

        A.      The Fact-Intensive Mere Conduit Defense is Inappropriate for a Motion to Dismiss................................................................7

        B.      The Pleadings Establish Defendants Were Transferees...........................................10

III.    THE 550(b) GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE PLEADING STAGE................................................................13

IV.     THE TRUSTEE'S CLAIMS TO RECOVER SIGMA TRANSFERS ARE TIMELY ................................................................16

        A.      The Sigma Transfers Were Made as Part of the Same Course of Conduct as the Sentry Transfers Alleged in the Original Complaint...................................16

        B.      The Original Complaint Provided Notice to Defendants That the Trustee Would Sue for Additional Transfers That Were Part of the Same Course of Conduct................................................................19

V.      SECTION 546(e) DOES NOT APPLY TO DEFENDANTS ...........................................21

        A.      The Fairfield Funds Had Actual Knowledge of Madoff's Fraud ..........................22

        B.      Section 546(e) Does Not Apply Independently to Recovery Actions ..................23

VI.     THE TRUSTEE'S AMENDED COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a) ................................................................25

CONCLUSION................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019)..............................................................................26, 27

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009)..............................................................................17, 21

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009)...................................................................................................................6

*Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007).....................................................................................................7, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................6

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ....................................................................................................9

*Cargo Partner AG v. Albatrons, Inc*.,
    352 F.3d 41 (2d Cir. 2003).........................................................................................................6

*In re Chaus Sec. Litig.*,
    801 F. Supp. 1257 (S.D.N.Y. 1992)........................................................................................17

*Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner,*
    *Heine, Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir. 1997)..............................................................................................7, 9, 10

*In re CVEO Corp.*,
    327 B.R. 210 (Bankr. D. Del. 2005) .........................................................................................9

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011)....................................................................................15

*Enron Corp. v. J.P. Morgan Securities Inc. (In re Enron Corp.)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006)........................................................................................7

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000)......................................................................................................13

*Geltzer v. D'Antona (In re Cassandra Group)*,
    312 B.R. 491 (Bankr. S.D.N.Y. 2004) ......................................................................................9

*In re Glob. Crossing, Ltd.*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008) ...................................................................8

*Hill v. Oria (In re Juliet Homes, LP)*,
    No. 07-36424, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) ..............17, 21

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) .........................................................................7

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011) .............................................................6, 13

*Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*,
    2022 WL 1419997 (2d Cir. May 5, 2022) ..........................................................9

*Jones v. Bock*,
    549 U.S. 199 (2007).........................................................................................12

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ....................................23

*Kelly–Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)..............................................................................14

*In re Lyondell Chem. Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) .................................................................9

*Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*,
    33 F.3d 42 (10th Cir. 1994) ...............................................................................9

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004)....................................................................10, 13, 15

*Menotte* v. *United States (In re Custom Contractors, LLC)*,
    745 F.3d 1342 (11th Cir. 2014) ..........................................................................9

*Meoli v. The Huntington Nat'l Bank*,
    848 F.3d 716 (6th Cir. 2017) ..............................................................................9

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) ......................................................................9

*Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*,
    2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ............................................8

*Nordberg* v. *Societe Generale (In re Chase & Sanborn Corp.)*,
    848 F.2d 1196 (11th Cir. 1988) ..........................................................................9

*Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*,
 443 B.R. 918 (Bankr. N.D. Ga. 2011) ...................................................................20

*Picard v. ABN Ireland (In re BLMIS)*,
 No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022)
 (McMahon, J.)..............................................................................................13, 14

*Picard v. Banque Syz (In re BLMIS)*,
 No. 08-01789 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)................ *passim*

*Picard v. BNP Paribas, S.A. (In re BLMIS)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018)........................................................... *passim*

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
 Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
 S.D.N.Y. Mar. 14, 2012)...............................................................................25, 26

*Picard. v. Citibank, N.A. (In re BLMIS)*,
 12 F.4th 171 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
 142 S. Ct. 1209 (2022).....................................................................................4, 14

*Picard v. Est. of Stanley Chais (In re BLMIS)*,
 445 B.R. 206 (Bankr. S.D.N.Y. 2011)...................................................................20

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
 No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................. *passim*

*Picard v. Fairfield Sentry Ltd. (In Liquidation)*,
 No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009) ..................................... 4-5

*Picard v. First Gulf Bank (In re BLMIS)*,
 No. 08-01789 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y Jul. 18, 2022) .................2, 13, 14

*Picard v. Keller Family Trust (In re BLMIS)*,
 634 B.R. 39 (Bankr. S.D.N.Y. 2021).......................................................7, 8, 9, 10

*Picard v. Mayer (In re BLMIS)*,
 No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ........................27

*Picard v. Merkin (In re BLMIS)*,
 440 B.R. 243 (Bankr. S.D.N.Y. 2010)...................................................6, 10, 14, 15

*Picard v. Merkin (In re BLMIS)*,
 515 B.R. 117 (Bankr. S.D.N.Y. 2014).............................................................25, 26, 27

*Picard v. Miller (In re BLMIS)*,
 631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) .............................................................8

*Picard v. Multi-Strategy Fund, Ltd. (In re BLMIS)*,
    No. 08-01789 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)................ *passim*

*Picard v. Parson Finance Panama S.A. (In re BLMIS)*,
    No. 08-01789 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ...................22, 27

*Picard v. Peter Madoff (In re BLMIS)*,
    468 B.R. 620 (Bankr. S.D.N.Y. 2012) ...................................................................16, 17, 19, 20

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................................28

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019)...................................................................................................24

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)...................................................................................................6

*Rupp v. Markgraf*,
    95 F.3d 936 (10th Cir. 1996) .................................................................................................9

*Sarachek v. Schochet (In re Agriprocessors)*,
    Adv. No. 10-09190, 2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14, 2012)...........................8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
    501 B.R. 26 (S.D.N.Y. 2013)..................................................................................................24

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ...................................................................................9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)................................21, 24, 25

*Siegel v. Converters Transp., Inc.*,
    714 F.2d 213 (2d Cir. 1983)...........................................................................................16, 17

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................................................16, 26, 28

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) .................................................................................9

*Tese-Milner* v. *Moon (In re Moon)*,
    385 B.R. 541 (Bankr. S.D.N.Y. 2008)...................................................................................9

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014)....................................................................................14

*In re Warnaco Grp., Inc.*,
    No. 01 B 41643 (RLB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006)........................................9

**Statutes**

11 U.S.C. § 546(e) ............................................................................................................ *passim*

11 U.S.C. § 548(a)(1)(A) .................................................................................................21, 23

11 U.S.C. § 550(a) ................................................................................................3, 18, 23, 25

11 U.S.C. § 550(b) ...................................................................................................................2, 13

15 U.S.C. §§ 78aaa–*lll* ............................................................................................................1

**Rules**

Fed. R. Bankr. P. 7012..............................................................................................................6

Fed. R. Bankr. P. 7015...............................................................................................................16

Fed. R. Civ. P. 8(a)(2)...............................................................................................................6

Fed. R. Civ. P. 12(b)(6)......................................................................................................... *passim*

Fed. R. Civ. P. 15.....................................................................................................2, 7, 16, 17

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to the motion to dismiss the Amended

Complaint ("Motion" or "Mot.") filed by Defendants Standard Chartered Financial Services

(Luxembourg) S.A. (f/k/a American Express Financial Services (Luxembourg) S.A. and before

that, American Express Bank (Luxembourg) S.A.) (together, "AEB Lux"); Standard Chartered

Bank International (Americas) Ltd. (f/k/a American Express Bank International) (together, "AEB

Miami"); and Standard Chartered Holdings Inc. ("SCHI") (as successor to Standard Chartered

International (USA) Ltd. ("SCIUSA"), f/k/a American Express Bank Ltd. together with SCIUSA

as "AEB New York") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure

12(b)(6).

## PRELIMINARY STATEMENT

This action by the Trustee within the SIPA liquidation proceeding seeks to recover

$274,029,164 in subsequent transfers of stolen BLMIS customer property that Defendants received

from Fairfield Sentry Limited ("Sentry") and $15,203,270 received from Fairfield Sigma Limited

("Sigma," and together with Sentry, the "Fairfield Funds"). Defendants move to dismiss the

Trustee's Amended Complaint pursuant to Rule 12(b)(6), arguing that (i) the Amended Complaint

establishes Defendants' status as a mere conduit, rather than a transferee; (ii) the Amended

Complaint establishes Defendants' good faith affirmative defense; (iii) the Trustee's claim to

recover the Sigma transfers is not timely; (iv) the safe harbor under Section 546(e) bars recovery;

and (v) the Trustee has not stated a claim for recovery of BLMIS customer property. All of

Defendants' arguments fail, and the motion should be denied in its entirety.

1

First, Defendants assert a defense that is rarely resolved at the pleading stage and argue in their motion to dismiss that they were "mere conduits" for the subsequent transfers of stolen BLMIS customer property. Flipping the defense on its head, Defendants argue that the Trustee must anticipate this defense and plead facts establishing that the Defendants are *not* mere conduits. But that is not the Trustee's pleading burden, and the Amended Complaint establishes on its face that Defendants were transferees. Nothing more needs to be alleged. Moreover, the mere conduit defense is fact-specific, premature at the pleading stage, and inappropriate for a motion to dismiss.

Second, like the mere conduit defense, the section 550(b) "good faith" defense is a defense that is plainly inappropriate on a motion to dismiss. As this court recently found, it is a subsequent transferee defendant's burden to plead this affirmative defense in an answer and prove with evidence; it cannot be established on the Trustee's pleadings. *Picard v. Banque Syz (In re BLMIS)*, No. 08-01789 (CGM), 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. First Gulf Bank (In re BLMIS)*, No. 08-01789 (CGM), 2022 WL 3354955, at *11 (Bankr. S.D.N.Y Jul. 18, 2022) ("*First Gulf*").

Third, the Trustee's claims to recover the Sigma transfers are timely under Rule 15 because they relate back to the claims to recover the Sentry transfers in the original Complaint (ECF No. 1). Both the Sentry and Sigma transfers arose out of the same course of conduct and the original Complaint provided Defendants with sufficient notice that the Trustee would be seeking all transfers originating from BLMIS and Sentry.

Fourth, the Section 546(e) safe harbor does not bar recovery from Defendants because the Trustee has sufficiently alleged the avoidability of the initial transfers based on the Fairfield Funds' actual knowledge of fraud, through incorporating by reference his Amended Complaint against

2

those funds (the "Fairfield Complaint").[1] Defendants argue that their knowledge as a subsequent transferee (and not the Fairfield Funds' knowledge as initial transferees) should determine the avoidability of the initial transfers from BLMIS. This argument conflicts with the plain language of the statute and has been roundly rejected.

Finally, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Defendants received. Nothing more is required at the pleading stage. Defendants argue that the Trustee must tie every subsequent transfer to specific initial transfers, but such arguments are plainly inappropriate on a motion to dismiss and run contrary to well-established case law.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Amended Complaint ("Am. Compl.") ¶ 24. BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC") beginning in January 1960. *Id.* ¶ 22. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 24. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's

---

[1] After the Trustee filed his Complaint against Defendants, the Trustee filed a Second Amended Complaint (the "Fairfield SAC") in the initial transfer action. *See* Fairfield Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 35-37. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 28. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Defendants knowingly invested in several such feeder funds, including the Fairfield Funds. Am. Compl. ¶ 3.

## II.    THE FAIRFIELD FUNDS

The Fairfield Funds were controlled by the Fairfield Greenwich Group ("FGG"), a de facto partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Fairfield SAC ¶¶ 52, 318. Sigma invested 100% of its assets in Sentry. Am. Compl. ¶ 2.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. Am. Compl. ¶ 102; *see also* Fairfield SAC. In 2011, the Trustee settled with the Fairfield Funds. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* Sigma separately consented to a judgment in the amount of $752.3 million. *See Picard v. Fairfield*

4

*Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), ECF

Nos. 110 (Sigma Consent Judgment). As a feeder fund that invested in BLMIS indirectly through

Sentry, this $752.3 million represents a portion of Sentry's $3.054 billion in withdrawals from

BLMIS. *Id.* Following the settlement, the Trustee commenced a number of adversary proceedings

against defendants like the ones here to recover the approximately $3 billion in stolen customer

property.

## III.    DEFENDANTS AND THEIR INVESTMENTS IN BLMIS FEEDER FUNDS

Defendants were part of the American Express Company's International banking business,

using the marketing name "American Express Bank" ("AEB"). Am. Compl. ¶ 71. Defendants were

acquired by Standard Chartered PLC in 2008, at which point Defendant entities AEB Miami, AEB

Lux, and AEB New York became wholly owned subsidiaries of Standard Chartered Bank. *Id.* ¶ 69.

Defendants acted collectively as a single enterprise and were agents and alter egos of each other

for purposes of their investments in and redemptions from the Fairfield Funds. *Id.* ¶ 3.

Before Madoff's scheme collapsed, Defendants had already received two separate

warnings from their own executives, telling them that it was "not possible to achieve such high

returns with such low volatility" and that Sentry was a "scam" which would "explode." *Id.* ¶ 87.

Nevertheless, Defendants skirted their own internal guidelines—which would have confirmed

Madoff's fraud—in order to invest in BLMIS through the Fairfield Funds. *Id.* ¶¶ 73, 91.

Defendants invested significant sums in the Fairfield Funds and together comprised Sentry's

largest shareholder, with holdings over $500 million in the aggregate. *Id.* ¶¶ 92, 100. The Fairfield

Funds, in turn, invested nearly all of their funds with BLMIS. *Id.* ¶ 4.

5

**ARGUMENT**

## I.    LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the pleading stage, the allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Amended Complaint here sets forth in full the elements of the Trustee's claims, pleading Defendants' receipt of subsequent transfers of customer property and the grounds upon which the Trustee seeks to recover such transfers made to Defendants. Thus, dismissal of the Amended Complaint at this juncture is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

## II.    DEFENDANTS CANNOT RELY ON THE MERE CONDUIT DEFENSE

Despite the Trustee's allegations establishing that Defendants sought out, participated in, and received subsequent transfers of BLMIS customer property, Defendants argue that they were "mere conduits" acting on instructions of unnamed third parties, rather than transferees. Mot. at 7,

10. But these are facts that Defendants assert outside of the four corners of the Amended Complaint, as the Amended Complaint plainly alleges that Defendants were shareholders and the recipients of the transfers. Defendants nevertheless assert that it is the Trustee's burden to anticipate and negate the mere conduit defense at the pleading stage. *See* Mot. at 14, n.11. Defendants are wrong. It is their burden to establish this fact-intensive defense. *See Enron Corp. v. J.P. Morgan Securities Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (in the context of a Rule 15(c) motion, "the burden of proving that [defendant] was not a transferee and/or beneficiary of the Transactions shifts to [defendant]"); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

## A.    The Fact-Intensive Mere Conduit Defense is Inappropriate for a Motion to Dismiss

To establish a mere conduit defense, Defendants must show that they lacked dominion and control over all transactions at issue. *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-58 (2d Cir. 1997) ("*In re Finley*"); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49-52 (Bankr. S.D.N.Y. 2021). The question of dominion and control often rests on, among other things, the degree to which a defendant has discretion over the use of the funds in question. *See Keller*, 634 B.R. at 52 (holding that where the defendant retained discretion over the use and transfer of the funds, he was not a mere conduit). And even if a recipient shows it is subject to some restrictions on the use of the funds, that alone does not make it a conduit. *Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 17-19 (S.D.N.Y. 2007). As Defendants acknowledge, the extent to which a recipient has legal rights to the redemption payments is similarly a relevant consideration. *In re Enron*, 361 B.R. at 48 (determining whether

entity was mere conduit required resolution of whether it had legal title to the payments); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 WL 1069303, at *1, 17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant was not a conduit where transfers were received without restriction into bank account in her name).

Consistent with the fact-specific nature of this defense, the question of a defendant's dominion and control often turns on internal information in the possession of the party asserting the defense—including the specific requirements of any agreements among the defendant, the transferor, and the purported ultimate recipients; communications related to the transfers; how and whether the defendant received fees; and the relationship between the transferor and the defendant, and between the defendant and the alleged ultimate recipients. For example, in *Keller*, this Court relied on documents and records produced by the defendants, including multiple declarations concerning the nature of the agreement between the defendant and supposed ultimate recipient, financial statements for a defendant entity, bank records for the accounts in question, and checks endorsed by the defendant. *Keller*, 634 B.R. at 44, 49-52.

Because of the many factual questions inherent in resolving this defense, courts rarely address this issue at the pleading stage. *See, e.g.*, *In re Glob. Crossing, Ltd.*, 385 B.R. 52, 57, n.1 (Bankr. S.D.N.Y. 2008) (denying a defendant's motion to dismiss and noting that the assertion of the mere conduit defense is "better addressed on summary judgment."); *Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *Sarachek v. Schochet (In re Agriprocessors)*, Adv. No. 10-09190, 2012 WL 4059897, at *10 (Bankr. N.D. Iowa Sept. 14, 2012) (denying motions to dismiss and for summary judgment to provide "[a]dditional time . . . necessary to further develop the factual record"). It is therefore not surprising that the vast majority of the

cases cited by Defendants in support of their Motion address the issue at the summary judgment stage or later.[2] And depending on the facts at issue, the conduit defense may not even be resolvable at the summary judgment stage. *See, e.g.*, *In re CVEO Corp.*, 327 B.R. 210, 217-18 (Bankr. D. Del. 2005) (holding that genuine issues of material fact preclude entry of summary judgment on mere conduit defense to preference claims).

The scarcity of caselaw regarding the application of the mere conduit defense at the pleading stage makes sense, as the defense would need to be apparent on the face of the complaint—which was the case in the few citations upon which Defendants rely. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) (dismissing complaint because the mere conduit defense was apparent on face of complaint alleging that defendant CFO took money from the debtor and transferred it to the debtor's principal but did not allege defendant received any of the subject payments, benefitted from them, orwas their intended beneficiary); *In re Mervyn's Holdings, LLC*, 426 B.R. 96 (Bankr. D. Del. 2010) (dismissing defendant bank in multi-defendant action that acted as the trustee for an identified trust holding mortgage pass-through certificates, loans, and liens generated in connection with the sale of the debtor).[3] Those cases are very different from the situation here.

---

[2] *See In re Finley*, 130 F.3d 52 (2d Cir. 1997) (ruling on motion for summary judgment); *Keller*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021) (same); *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890 (7th Cir. 1988) (same); *In re Warnaco Grp., Inc.*, No. 01 B 41643 (RLB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) (same); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1 (S.D.N.Y. 2007) (same); *Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42 (10th Cir. 1994) (same); *Geltzer v. D'Antona (In re Cassandra Group)*, 312 B.R. 491 (Bankr. S.D.N.Y. 2004) (same); *Tese-Milner* v. *Moon (In re Moon)*, 385 B.R. 541 (Bankr. S.D.N.Y. 2008) (same); *Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*, 2022 WL 1419997 (2d Cir. May 5, 2022) (same); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996) (ruling on a motion for a judgment as a matter of law following the close of the trustee's case); *Menotte* v. *United States (In re Custom Contractors, LLC)*, 745 F.3d 1342 (11th Cir. 2014) (ruling on appeal after trial); *Nordberg* v. *Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196 (11th Cir. 1988) (ruling on an appeal after trial); *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716 (6th Cir. 2017) (ruling on an appeal following two trials and multiple opinions, including a ruling on a motion for summary judgment).

[3] Defendants also cite to *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008) and *In re Lyondell Chem. Co.*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014). But *Super Vision* is a non-bankruptcy case and

As recognized in *Merkin I*, the argument advanced by Defendants applies only as a "limited exception to the general rule" that an affirmative defense cannot be established on a motion to dismiss. 440 B.R. at 256. Moreover, to prevail under this limited exception on a Rule 12(b)(6) motion, Defendants must meet a "more stringent standard" and show not only that "the facts supporting the defense appear on the face of the complaint," but also that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The "limited exception to the general rule" is inapplicable here. The Trustee has not alleged that Defendants received the funds as an intermediary for any third party, nor is there any allegation that Defendants lacked control over the subsequent transfers. Moreover, Defendants have not even identified anyone for whom they claim to have acted as a conduit, and the Trustee has not alleged that Defendants received the funds for the benefit of anyone else. *See, e.g.*, *In re Finley*, 130 F.3d at 58-59 (engaging in a detailed analysis of the relationship between the defendant and the supposed ultimate recipient of the funds in order to resolve the mere conduit issue); *Keller*, 634 B.R. at 51-52 (similar). Defendants identify the supposed ultimate recipients of the funds only as "clients." Mot. at 6-7 (citing Finn Decl. Exs. D-F). The question of whether Defendants were mere conduits cannot be resolved on summary judgment, much less a motion to dismiss, without this information.

### B.    The Pleadings Establish Defendants Were Transferees

There is nothing on the face of the pleadings to support Defendants' mere conduit argument, and Defendants' conclusory assertion that they were acting on behalf of unidentified

---

*Lyondell* arose out of leveraged buyout payments. Moreover, in both cases, once again, the complaints established the mere conduit defense on their face.

third parties in some unspecified manner is not sufficient to rebut the Trustee's allegations. Far from establishing the Defendants' supposed mere conduit status, the Trustee's Amended Complaint alleges that Defendants were shareholders in the Fairfield Funds and received subsequent transfers of BLMIS customer property as redemptions of their equity interests. Am. Compl. ¶¶ 112, 116. The Trustee has alleged that AEB Lux invested in and received redemption payments from the Fairfield Funds "on behalf of AEB and the other Defendants" and entered into subscription agreements, designating specific New York bank accounts to receive subsequent transfers "on behalf of AEB and the other Defendants." *Id.* ¶¶ 3, 62.

The Trustee has specifically alleged that Defendants also invested in Sentry for their own use in creating their Concentrated Elite Fund. *Id.* ¶ 85. Defendants incorrectly state that the Amended Complaint alleges only that a "non-party entity" purchased Fairfield Sentry shares for use in Defendants' Concentrated Elite Fund. *See* Mot. at 2 (citing Am. Compl. ¶ 85). The entity that Defendants wrongly describe as a "non-party entity" is AEB New York. Am. Compl. ¶ 85 ("In 2003 AEB New York initiated AEB's purchase of Fairfield Sentry shares. AEB initially purchased the Fairfield Sentry shares *for its own use in creating the Concentrated Elite Fund*.") (emphasis added). As stated, both in the opening paragraph and in the body of the Amended Complaint, "AEB New York" refers to Defendant entity, "Standard Chartered Holdings Inc. ('SCHI') (as successor to Standard Chartered International (USA) Ltd. ('SCIUSA'), which was formerly known as American Express Bank Ltd. (defined together with SCIUSA as 'AEB New York')." *Id.* at 1; *see also id.* at ¶ 56 ("AEB New York was liquidated in 2021, and its successor in interest is SCHI.").

Defendants also mischaracterize the Trustee's allegations by claiming that the Trustee has alleged that only AEB Lux (referred to as "SCFS" by Defendants) received subsequent transfers.

11

Mot. at 15. Contrary to Defendants' assertion, the Amended Complaint sets forth, at length, detailed allegations that all Defendants acted as agents and alter egos of each other in connection with their investments with the BLMIS feeder funds. *See* Am. Compl., ¶¶ 71-86. The Amended Complaint specifically alleges that "[e]ach of the Fairfield Subsequent Transfers was made to AEB Lux as part of AEB, which was operated collectively by Defendants, and that AEB Lux received those Fairfield Subsequent Transfers on behalf of AEB and the other Defendants." *Id.* ¶ 121; *see also id.* ¶¶ 86, 112, 116. Far from being "purely conclusory" as claimed by Defendants, the Trustee's allegations that all Defendants received subsequent transfers of customer property as part of a single enterprise are detailed and stated with sufficient particularity to survive a motion to dismiss. How Defendants accounted for or transferred the Fairfield Funds subsequent transfers throughout the AEB enterprise is a factual issue to be explored through discovery.

In a tacit acknowledgment of the weakness of their mere conduit argument at the pleading stage, Defendants' motion improperly cites to multiple documents not attached to or incorporated by reference in the Trustee's original Complaint or Amended Complaint. *See* Mot. at 6-7 (citing Finn Decl. Exs. D-F). Such reliance on information outside of the four corners of the Amended Complaint demonstrates that the defense cannot be established on the face of the pleadings and is inappropriate on a Rule 12(b)(6) motion. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."). Moreover, when a defendant presents factual submissions outside the record, the court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P.

56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal quotation marks omitted).

Instead, on a motion to dismiss, the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences" in favor of the plaintiff. *In re J.P. Jeanneret Assoc.*, 769 F. Supp. 2d at 353. Additionally, at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *McKenna*, 386 F.3d at 436. Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of the Trustee, the Trustee has adequately pled that Defendants received subsequent transfers of customer property as transferees. Nothing on the face of the pleadings establishes Defendants' alleged conduit status. Therefore, Defendants have failed to establish the mere conduit defense.

## III.    THE 550(b) GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE PLEADING STAGE

Just as Defendants' fact-dependent mere conduit arguments are inappropriate for determination at the pleading stage, so too is Defendants' assertion of the 550(b) good faith affirmative defense. Although it is not the Trustee's burden to plead good faith, Defendants nevertheless make an unsupportable argument that their good faith is established as a matter of law on the face of the Amended Complaint. *See* Mot. at 20.

This Court should reject Defendants' attempt to raise this affirmative defense on a motion to dismiss, just as this Court and the District Court recently did. *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at * 11; *Picard v. ABN Ireland (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (McMahon, J.) ("*ABN Ireland*"). Like Defendants here, the defendants in *Banque Syz*, *First Gulf*, and *ABN Ireland* argued that the complaint allegations established their good faith defense. *Banque Syz*, 2022 WL 2135019, at *11;

*First Gulf*, 2022 WL 3354955, at *11; *ABN Ireland*, 2022 WL 1304589, at *3. Both this Court and

the District Court rejected that argument and concluded that the good faith affirmative defense

could not be resolved at the pleading stage. *ABN Ireland*, 2022 WL 1304589, at *3; *Banque Syz*,

2022 WL 2135019, at *11 ("The burden of proving good faith falls squarely on [the defendants]

and this Court cannot make a determination on [the defendants'] affirmative defense until after a

fact-intensive inquiry."); *First Gulf*, 2022 WL 3354955, at *11 (same).

By their very nature, affirmative defenses are fact driven and require the presentation and

analysis of evidence. *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d

461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside

of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–

Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). The good faith defense turns on questions

of Defendants' motivation and intent and thus is not appropriate to assess at the pleading stage. In

its rejection of the defendants' good faith argument, the court in *ABN Ireland* highlighted the fact

that the good faith inquiry notice standard is "a fact-intensive inquiry to be determined on a case-

by-case basis, which naturally takes into account the disparate circumstances of differently-

situated transferees." *ABN Ireland*, 2022 WL 1304589, at *3 (quoting *Citibank*, 12 F.4th at 194).

As such, even if this Court were to consider Defendants' fact-intensive affirmative defense,

there are myriad unknown facts critical to opposing a good faith defense, which the Trustee must

be given the opportunity to uncover through discovery. *See ABN Ireland*, 2022 WL 1304589, at

*3 ("The Trustee rightfully points out that such a fact-based determination 'can only be made

based on the entirety of the factual record after discovery (which has not occurred here), not from

isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek

to have drawn in their favor.'"); *see also Merkin I*, 440 B.R. at 257 ("[W]hether the Moving

Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

Tellingly, Defendants do not cite to a single case in which a court has granted a motion to dismiss at the pleading stage based on a good faith defense. Defendants cannot prevail on the good faith affirmative defense on a motion to dismiss unless they can show that the Trustee is unable to prove any set of facts to support his claim. *See McKenna*, 386 F.3d at 436; *see also Merkin I*, 440 B.R. at 256 (characterizing the assertion of an affirmative defense at the pleading stage as a "limited exception to the general rule"). Defendants fail to meet that standard here.

Defendants contend that a diligent inquiry into BLMIS would have been futile. Mot. at 21-22. But this is pure conjecture, which can be easily disputed. In fact, the Trustee has alleged that Defendants deviated from their standard review policies which would have confirmed Madoff's fraud, that they ignored abnormalities in BLMIS trading, and that they received two separate warnings from AEB executives that BLMIS' returns were "not possible", and that Sentry was a "scam" which would "explode." Am. Compl. ¶¶ 73, 87-88. Far from demonstrating Defendants' good faith or the supposed impossibility of uncovering Madoff's scheme, the Trustee's Amended Complaint "suggests that [Defendants] had access to information about BLMIS's fraud and failed to concern [themselves] with such things." *Banque Syz*, 2022 WL 2135019, at *11.

Arguments concerning value are also inappropriate for a motion to dismiss barring highly unusual circumstances, which Defendants have not shown exist here. *See, e.g., Fairfield Inv. Fund*,

2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial."). Defendants identify no allegations in the Amended Complaint that on their face satisfy either affirmative defense. And indeed, this Court has previously concluded that "[a]s to whether the Defendants 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." *Id*.

## IV.    THE TRUSTEE'S CLAIMS TO RECOVER SIGMA TRANSFERS ARE TIMELY

Contrary to Defendants' arguments, the Trustee's claims to recover the subsequent transfers from Sigma to Defendants are timely under Rule 15. The Sigma transfer claims "relate back" to the claims to recover the Sentry transfers in the original Complaint filed in this action (ECF No. 1) because both the Sentry and Sigma transfers were made as part of the same course of conduct. Indeed, the Sigma transfers were indirect transfers from Sentry.

### A.    The Sigma Transfers Were Made as Part of the Same Course of Conduct as the Sentry Transfers Alleged in the Original Complaint

Under Rule 15, made applicable by Bankruptcy Rule 7015, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Courts in the Second Circuit, including this Court, have "liberally construed" Rule 15, which "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading." *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)); *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213,

215-16 (2d Cir. 1983); *Fairfield Inv. Fund*, 2021 WL 3477479, at \*12. As this Court has noted, "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Fairfield Inv. Fund*, 2021 WL 3477479, at \*12 (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted). To determine whether newly alleged fraudulent transfers relate back to the original pleading, courts typically analyze whether "the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint[,]" and whether "the original complaint g[a]ve sufficient notice to the defendants that the Trustee[] may sue for additional transfers that were part of the same course of conduct[.]" *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424, 2011 WL 6817928, at \*7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted).

The Sigma transfers relate back to the Sentry transfers sought in the original Complaint because all of the subsequent transfers from the Fairfield Funds were part of Defendants' course of conduct: investing with and profiting from BLMIS through the Fairfield Funds. *See Peter Madoff*, 468 B.R. at 633-34 (permitting relation back where the original and amended complaints alleged transfers under the "same legal theories"); *In re Juliet Homes*, 2011 WL 6817928, at \*7 (permitting relation back of additional fraudulent transfer claims when the transfers alleged in the original complaint and in the amended complaint were "alleged to have been part of this overall Ponzi scheme"); *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 333-34 (S.D.N.Y. 2009) (permitting relation back where new transfers related to the same alleged fraudulent loan transactions); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992)

(holding allegations in amended complaint related back as part of same basic scheme even though events were distinct from those alleged in the original complaint).

Defendants' assertion that there is "no indication" that the Sigma transfers relate to the Sentry transfers (*see* Mot. at 19) is contradicted by the facts and Trustee's allegations. Both Sentry and Sigma were created, marketed, managed and operated by FGG, and Defendants entered into "nearly identical" subscription agreements for the two feeder funds. *Id.* ¶¶ 2, 65. Moreover, Defendants knew that an investment in Sigma was merely an indirect method of investing in Sentry. *Id.* ¶¶ 64, 66. Sigma invested exclusively in Sentry, and Sentry invested substantially all of its funds in BLMIS. *Id.* All of the transfers Defendants received from Sigma not only flowed through Sentry first, but were also the result of Sigma's investment in Sentry. *See* Am. Compl. Exs. D, E. The Sigma and Sentry transfers were thus part of a single course of conduct through which Defendants sought to invest with BLMIS.

The Sigma transfers were also similar in kind, were made to the same Defendants, and are now being sought based on the same legal theories as those in the original Complaint. Both the Sigma and Sentry transfers are redemptions made from Defendants' investments in the Fairfield Funds. Am Compl. ¶¶ 112, 116. And like the Sentry transfers, the Trustee seeks to recover the Sigma transfers under section 550(a). Thus, any defenses Defendants might have for the Sigma transfers are likely the same or similar to the defenses to the Sentry transfers.

Defendants' reliance on *BNP* is misplaced. In that case, the additional transfers at issue arose from "separate and distinct loans, credit facilities or derivative transactions with various counterparties" as well as "redemptions or equity distributions to the Defendants as direct investors in the Tremont Funds." *Picard v. BNP Paribas, S.A. (In re BLMIS)*, 594 B.R. 167, 210-11 (Bankr. S.D.N.Y. 2018) ("*BNP*"). Because of the variety of ways in which the different types of leveraged

18

transactions were structured, the court concluded that the "facts and circumstances surrounding the value given in exchange for the transfer will differ" and held that the transactions did not arise out of the same "core of operative facts." *Id.* at 211. This is simply not the case here. Whereas the transactions at issue in *BNP* involved various counterparties and differing terms, the subscription agreements entered into by Defendants for both Sigma and Sentry were "nearly identical." Am. Compl. ¶¶ 2, 65. And unlike in *BNP*, the subsequent transfers from Sigma to Defendants resulted from investments which Defendants knew had gone directly to Sentry before being invested in BLMIS. *Id.* ¶¶ 64, 66.

In reaching his conclusion in *BNP*, Judge Bernstein recognized the distinction between the additional transfers in that case and the additional transfers sought in *Peter Madoff*. *BNP*, 594 B.R. at 211. He noted that in *Peter Madoff* the Trustee "relied on the same legal theories as the initial complaint which named the [same] Defendants, and gave reasonable notice that the Trustee was still uncovering additional transfers that he would seek to recover." *Id.* (citing *Peter Madoff*, 468 B.R. at 633). In other words, Judge Bernstein described what the Trustee is doing here.

**B.     The Original Complaint Provided Notice to Defendants That the Trustee Would Sue for Additional Transfers That Were Part of the Same Course of Conduct**

The original Complaint put Defendants on notice as to the Sigma transfers because the Trustee indicated his intention to pursue all transfers against Defendants, including those unknown at the time of filing the original Complaint, and because Defendants knew that the Sigma transfers were indirect transfers from Sentry. *See* Am. Compl. ¶¶ 64, 66; Exs. D, E. As this Court has stated, "[t]he primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Fairfield Inv. Fund*, 2021 WL 3477479, at *12. In *Fairfield*, this

Court held that the following language in the prior complaint was sufficient to give defendants

notice:

> The money transferred from BLMIS to the Feeder Funds was subsequently
> transferred by the Feeder Funds to the FGG Affiliates . . . . These payments from
> the Feeder Funds constitute subsequent transfers of the Initial Transfers from
> BLMIS to the Feeder Funds. Because the FGG Affiliates . . . did not take the funds
> in good faith or without knowledge of the voidability of the initial transfers, all
> transfers from BLMIS to the Feeder Funds, which the Feeder Funds subsequently
> transferred, either directly or indirectly, to the FGG Affiliates . . . (the "Subsequent
> Transfers"), were and remain Customer Property subject to turnover to the Trustee
> and/or are avoidable and recoverable by the Trustee.

*Fairfield Inv. Fund*, 2021 WL 3477479, at *12. This Court reasoned that the Trustee, as an outsider

to the transactions, need not include every subsequent transfer in the initial complaint:

> [T]he Trustee is an outsider to these transactions and will need discovery to identify
> the specific subsequent transfers by date, amount and the manner in which they
> were effected. The Moving Defendants are a group of interrelated individuals and
> entities . . . . Whether they additionally received Subsequent Transfers of BLMIS
> funds from one another is a question to which they, and they alone, have the
> requisite information to respond.

*Id.* at *13 (quoting *Picard v. Est. of Stanley Chais (In re BLMIS)*, 445 B.R. 206, 236 (Bankr.

S.D.N.Y. 2011)).

Here, the original Complaint includes the following allegation: "The Trustee's

investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on

the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional

transfers, and (ii) seek recovery of such additional transfers." ECF No. 1, ¶ 57. The Trustee

therefore specifically and unambiguously put Defendants on notice that he would seek to recover

any additional transfers of customer property that he later uncovered in his investigation. This

language is even clearer than the language this Court found sufficient in *Fairfield Inv. Fund* as

described above. *See also Peter Madoff*, 468 B.R. at 633-34; *Ogier v. UPAC Ins. Fin. (In re Bauer

Agency, Inc.)*, 443 B.R. 918, 922 (Bankr. N.D. Ga. 2011) ("The complaint expressly states that the

Trustee intends to avoid all transfers that [defendant] received" from the Ponzi scheme "during the relevant time periods"); *In re Juliet Homes*, 2011 WL 6817928, at *7 (finding that defendants were on notice that the Trustees would likely view any transfers from debtors as potentially fraudulent in light of the allegations concerning the Ponzi scheme); *Adelphia*, 624 F. Supp. 2d at 333 (permitting relation back where the original pleading sought *all* payments from margin loans).

The Defendants' knowledge of the direct link between Sentry and Sigma, combined with the Trustee's explicit allegation in the original Complaint that he may seek recovery of additional transfers is sufficient to provide Defendants adequate notice of the claims at issue. Therefore, the Trustee's claims to recover the Sigma transfers relate back to the original Complaint and are timely.

## V.    **SECTION 546(e) DOES NOT APPLY TO DEFENDANTS**

Defendants incorrectly argue that they are shielded by Section 546(e). Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). However, in *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the safe harbor, thereby allowing the Trustee to avoid transfers made prior to the two-year period. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1, 7 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"). Despite the fact that the Trustee has pled the Fairfield Funds' actual knowledge, Defendants now incorrectly argue that Section 546(e) bars the Trustee's claims. But Defendants' arguments are based on a misreading of Section 546(e) and *Cohmad* and have been rejected by this Court in every case where they have been raised to

date. *See, e.g.*, *Picard v. Parson Finance Panama S.A. (In re BLMIS)*, No. 08-01789 (CGM), 2022 WL 3094092, at *8 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*").

## A.  The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Defendants briefly address the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS; however, the other requirements of 546(e) are irrelevant because the Fairfield Funds had actual knowledge of fraud. This Court has previously held that the Trustee sufficiently pled that Sentry, as the initial transferee, had actual knowledge of the fraud taking place at BLMIS, and that such initial transfers are avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. Based on the allegations in the Fairfield SAC, this Court found it "plausible that the Defendants knowingly invested their money in a Ponzi scheme in order to enrich themselves, through fees and other means, at the expense of their investors." *Id.*, at *8. This Court also confirmed its *Fairfield* holding in multiple recent decisions. *See, e.g.*, *Picard v. Multi-Strategy Fund, Ltd. (In re BLMIS)*, No. 08-01789 (CGM), 2022 WL 2137073 at *8 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*") ("This Court has already determined that the Fairfield [Second Amended] Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion."); *Banque SYZ*, 2022 WL 2135019, at *9 (same). Because the Trustee has adequately pled Sentry's actual knowledge of fraud, Section 546(e) does not provide a safe harbor for the avoidance of the initial transfers to Sentry, and those transfers may be recovered from Defendants regardless of whether Sentry and Defendants qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[4]

---

[4] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendants activate the safe harbor under Section 546(e). Sentry's agreements with and transfers to Defendants are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not Defendant's knowledge as a subsequent transferee. Among other things, the Trustee does not

### B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Defendants are also wrong that the Trustee must allege that a subsequent transferee had actual knowledge in order to render Section 546(e) inapplicable to recovery actions. Defendants argue that their subscription agreements with the Fairfield Funds constitute "securities contracts," and as such, in these Section 550 recovery actions, the Court must look solely to Defendants' actual knowledge as a *subsequent transferee* to determine whether the initial transfer is avoidable. *See* Mot. at 23-24. However, this argument merely repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to actions under Section 550. *See, e.g.*, *Multi-Strategy*, 2022 WL 2137073, at *9 (finding that a subsequent transferee may only raise the safe harbor as a defense "so far as the avoidance of the initial transfer is concerned" and that the safe harbor is not available as a defense to subsequent transfer claims); *Banque Syz*, 2022 WL 2135019, at *9 ("[t]he safe harbor is not applicable to subsequent transfers.").

By its plain language, section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct*. 101, Ltd., No. 20-3330, 2022 WL 1177748, at *3 n.5 (8th Cir. Apr. 21, 2022) (citing *BNP*, 594 B.R. at 197).

---

concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendants. As discussed elsewhere herein, the Trustee believes he will prevail on showing that the subsequent transfers are customer property. However, showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between the initial transferee Feeder Funds and Defendants for purposes of application of the securities safe harbor.

The safe harbor's limitation to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (citation omitted). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019) (internal quotation marks omitted).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[5] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities") (emphasis added). Although the District Court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

---

[5] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

the safe harbor is still on the *initial* transfers. *See id.*, at *9.[6] As this Court recently reiterated, "[b]y

its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Banque Syz*, 2022

WL 2135019, at *9 (citing *BNP*, 594 B.R. at 197) (emphasis in original).

Based on *Cohmad* and this Court's recent opinions in many subsequent transfer cases,

Section 546(e) applies only to avoidance and not recovery and a subsequent transferee cannot

assert the protections of section 546(e) where the Trustee has adequately pled the initial

transferee's actual knowledge. *See, e.g.*, *Multi-Strategy*, 2022 WL 2137073, at *9; *Banque Syz*,

2022 WL 2135019, at *9-10; *Cohmad*, 2013 WL 1609154, at *4, *7, *10. Put simply: "Defendant

is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee."

*Multi-Strategy*, 2022 WL 2137073, at *10; *Banque Syz*, 2022 WL 2135019, at *10.

## VI.    THE TRUSTEE'S AMENDED COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Trustee's Amended Complaint states a claim for recovery under section 550(a)(2) by

plausibly alleging that Defendants received subsequent transfers of BLMIS customer property. To

plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the

funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149

(Bankr. S.D.N.Y. 2014) ("*Merkin II*") (citation omitted). No tracing analysis is required, as the

pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds'

at issue." *Id*. (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. Nos.

10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012));

---

[6] The original point of the *Cohmad* hypothetical was to address the subsequent transfer defendants' argument that, if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore subject to Section 546(e).

*see also Banque Syz*, 2022 WL 2135019, at *7 (the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue); *Multi-Strategy*, 2022 WL 2137073, at *6 (same). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). And the Trustee must allege only "the 'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin II*, 515 B.R. at 150 (quoting *In re Allou Distribs., Inc.*, 379 B.R. at 32).

The Trustee's Amended Complaint alleges that Defendants received specific transfers, on specific dates, in specific amounts from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Am. Compl. ¶¶ 64, 109 & Ex. C. The Amended Complaint likewise alleges that Defendants received specific transfers, on specific dates, in specific amounts from Sigma, and that Sigma invested all of its funds with Sentry, which in turn invested substantially all of its funds with BLMIS. *Id.* ¶¶ 66, 114 & Ex. E. Thus, the Amended Complaint plausibly alleges that Defendants received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Multi-Strategy*, 2022 WL 2137073, at *10 (finding that Trustee's complaint, which detailed transfers from Sentry to defendant, and included the dates and amounts of such transfers, was sufficient to survive a motion to dismiss); *Banque Syz*, 2022 WL 2135019, at *11 (finding the exhibits to the complaint "provide [defendant] with the "who, when, and how much" of each transfer."); *Picard v. Mayer*

*(In re BLMIS)*, No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding that the complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

Defendants make the baseless assertion that this Court's holdings in *Banque Syz* and *Multi-Strategy* on this point should not apply in this case. *See* Mot. at 24-25. They argue that because the Trustee has alleged that Defendants' total holdings with Sentry exceeded the subsequent transfers of customer property received by Defendants from Sentry, the Trustee should be required to allege "something more" because there has not been a tracing of "all subscribed and redeemed amounts to BLMIS." Mot. at 24-25.

The fact that Defendants make this argument without elaboration or citation to any authority is unsurprising because there is nothing in this case that distinguishes it from *Banque Syz*, *Multi-Strategy*, or any of the other cases in which this Court has flatly rejected the same argument. *See, e.g.*, *Parson*, 2022 WL 3094092, at *11 ("[T]he Complaint plausibly pleads that [the defendant] received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation."); *Merkin II*, 515 B.R. at 150 (refusing to dismiss subsequent transfer claims where the complaint "[did] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."); *45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, this Court has already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin II*, 515 B.R. at 152–53 (refusing

to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable");
*see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not
required at the proof stage, then surely it is not required at the pleading stage either"); *Banque Syz*,
2022 WL 2135019, at * 7 (same); *Multi-Strategy*, 2022 WL 2137073, at *6 (same).

Defendants also rely on a misapplication of *Shapiro*, which is factually distinguishable.
*See* Mot. at 24; *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). In *Shapiro*,
the Trustee alleged that certain trusts and members of the Shapiro family received approximately
$54 million in fraudulent transfers from BLMIS, and "upon information and belief" these
defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R.
at 104, 119. However, in that case the complaint *did not detail any* of the necessary vital statistics
of the subsequent transfers. *Id*. at 119. There were no allegations regarding the subsequent
transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and
consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*.
By contrast, in this case the Trustee has alleged the specific parties, dates, and amounts of each
transfer Defendants received from Sentry and Sigma as well as the investment relationship
between the parties. Am. Compl. ¶¶ 64, 66, 109, 114 & Exs. C-E. As such, Defendants' arguments
should be rejected.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny Defendants'

Motion in its entirety.

Dated: September 15, 2022
      New York, New York

*/s/ Robertson D. Beckerlegge*
                        
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Robertson D. Beckerlegge
Email: rbeckerlegge@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Michelle R. Usitalo
Email: musitalo@bakerlaw.com
Robyn M. Feldstein
Email: rfeldstein@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Chapter 7 Estate of
Bernard L. Madoff*