**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

Defendant.

Adv. Pro. No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

In re:

BERNARD L. MADOFF,

Debtor.

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

Plaintiff,

v.

THE HEBREW UNIVERSITY OF JERUSALEM, YISSUM RESEARCH DEVELOPMENT COMPANY OF THE HEBREW UNIVERSITY OF JERUSALEM LTD., BEN-GURION UNIVERSITY OF THE NEGEV, B.G. NEGEV TECHNOLOGIES AND APPLICATIONS LTD., THE WEIZMANN INSTITUTE OF SCIENCE, and BAR ILAN UNIVERSITY,

Defendants.

Adv. Pro. No. 21-01190 (CGM)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

February 10, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND .....................................................................................................4

    A.    Yeshaya Horowitz Association is created to advance scientific research at Israeli universities. .........................................................................................................................4

    B.    The Trustee sues to recover transfers to Yeshaya. ..........................................................4

    C.    The Trustee sues Israeli institutions in Israel. ................................................................5

    D.    The Trustee settles the *Magnify* action and files suit in this Court against defendants, seeking to recover the same transfers as in Israel. ........................................6

THE DEFENDANTS ..................................................................................................................6

ARGUMENT ...............................................................................................................................7

POINT I.    FRAMEWORK FOR PERSONAL JURISDICTION ..................................................7

POINT II.    DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION. ...............11

POINT III.    DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION .................12

    A.    Yair Green's conduct and knowledge have no relevance. .............................................12

    B.    The alleged actions of professors or other employees do not support jurisdiction over the universities. ....................................................................................................13

    C.    Allegations against particular defendants .....................................................................17

        1.    Bar-Ilan University........................................................................................................17

        2.    Ben-Gurion University of the Negev ...........................................................................18

        3.    Weizmann Institute of Science......................................................................................20

        4.    Hebrew University of Jerusalem ..................................................................................22

        5.    The Technology Companies...........................................................................................26

    D.    Allegations concerning ratification ...............................................................................27

POINT IV.    EVEN IF ANY DEFENDANT HAD SUFFICIENT CONTACTS WITH THE UNITED STATES, THE EXERCISE OF JURISDICTION WOULD BE UNREASONABLE. ...............................................................................................29

POINT V.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM, BECAUSE THE TRUSTEE CANNOT PLEAD THAT THE INITIAL TRANSFERS HAVE BEEN AVOIDED.........................................31

    A.    Section 550(a) requires a judgment of avoidance prior to seeking recovery. .................32

B.    The Consent Judgment cannot satisfy the Trustee's burden to plead that the initial transfers have been avoided. ...............................................................36

C.    Nothing in Section 550 overrides the rule against non-party preclusion. ........................38

D.    The defect in the Section 550(a) claims cannot be cured by amendment. ........................40

CONCLUSION ...........................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmTrust Fin. Servs., Inc.* v. *Lacchini*,
260 F. Supp. 3d 316 (S.D.N.Y. 2017) ..................................................................28

*Asahi Metal Indus. Co.* v. *Superior Ct.*,
480 U.S. 102 (1987) .............................................................................................29

*Astoria Federal Sav. & Loan Ass'n* v. *Solimino*,
501 U.S. 104 (1991) .............................................................................................39

*Azar* v. *Allina Health Servs.*,
139 S. Ct. 1804 (2019) ...................................................................................32 n.22

*Bell* v. *Reno*,
218 F.3d 86 (2d Cir. 2000) ...................................................................................33

*Bidonthecity.com LLC* v. *Halverston Holdings Ltd.*,
2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) .....................................................28

*Briscoe* v. *City of New Haven*,
654 F.3d 200 (2d Cir. 2011) .................................................................................37

*Burger King Corp.* v. *Rudzewicz*,
471 U.S. 462 (1985) .......................................................................................10, 12

*Burke* v. *Bimbo Bakeries USA, Inc.*,
2019 WL 6068038 (S.D.N.Y. Nov. 15, 2019) .....................................................30

*Chase Nat'l Bank* v. *Norwalk*,
291 U.S. 431 (1934) .............................................................................................38

*Chew* v. *Dietrich*,
143 F.3d 24 (2d Cir. 1998) .....................................................................................9

*Chou* v. *Univ. of Chicago*,
254 F.3d 1347 (Fed. Cir. 2001) ......................................................................17 n.13

*Citizens United* v. *Schneiderman*,
882 F.3d 374 (2d Cir. 2018) .................................................................................26

*Columbia Broad. Sys.* v. *American S. of Composers, Authors & Publishers*,
620 F.2d 930 (2d Cir. 1980) .................................................................................35

*Cornwell* v. *Credit Suisse Grp.*,
729 F. Supp. 2d 620 (S.D.N.Y. 2010) ..................................................................35

*Daimler AG* v. *Bauman*,
  571 U.S. 117 (2014)......................................................................9, 11, 11 n.9

*Davis* v. *Costa-Gavras*,
  580 F. Supp. 1082 (S.D.N.Y. 1984)..................................................16

*Edmonds* v. *Smith*,
  922 F.3d 737 (6th Cir. 2019) ...........................................................35

*Est. of Ungar* v. *Palestinian Auth.*,
  400 F. Supp. 2d 541 (S.D.N.Y. 2005).................................................8

*Ford Motor Co.* v. *Montana Eighth Judicial District Court*,
  141 S. Ct. 1017 (2021).................................................................10 n.8

*Friedman* v. *Bloomberg L.P.*,
  884 F.3d 83 (2d Cir. 2017)................................................................8

*Grow Grp., Inc.* v. *Jandernoa*,
  1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) .........................................8

*Hansberry* v. *Lee*,
  311 U.S. 32 (1940)..........................................................................36

*Hanson* v. *Denckla*,
  357 U.S. 235 (1958).........................................................................10

*Hau Yin To* v. *HSBC Holdings PLC*,
  2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ......................................15

*In re Direct Access Partners, LLC*,
  602 B.R. 495 (Bankr. S.D.N.Y. 2019)..............................................34

*In re Jones Storage & Moving, Inc.*,
  2005 WL 2590385 (Bankr. D. Kan. Apr. 14, 2005) .....................39, 40

*In re JVJ Pharmacy, Inc.*,
  630 B.R. 388 (S.D.N.Y. 2021).........................................................34

*In re Lehman Bros. Holdings Inc.*,
  535 B.R. 608 (Bankr. S.D.N.Y. 2015)..............................................26

*In re Lyondell Chem. Co.*,
  503 B.R. 348 (Bankr. S.D.N.Y. 2014)..........................................35, 36

*In re Lyondell Chem. Co.*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016)..............................................27

*In re M. Fabrikant & Sons, Inc.*,
394 B.R. 721 (Bankr. S.D.N.Y. 2008) ...................................................................32

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ....................................................................................34

*In re Staff Mortg. & Inv. Corp.*,
625 F.2d 281 (9th Cir. 1980) ...........................................................................35, 36

*In re Stillwater Cap. Partners Inc. Litig.*,
851 F. Supp. 2d 556 (S.D.N.Y. 2012) ....................................................................8

*Johansen* v. *HomeAdvisor, Inc.*,
218 F. Supp. 3d 577 (S.D. Ohio 2016) .................................................................27

*Law* v. *Siegel*,
571 U.S. 415 (2014) ....................................................................................33 n.22

*Lear* v. *Royal Caribbean Cruises Ltd.*,
2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ....................................................8 n.6

*Madison Square Garden Boxing, Inc.* v. *Shavers*,
562 F.2d 141 (2d Cir. 1977) ..................................................................................37

*Martin* v. *Wilks*,
490 U.S. 755 (1989) ...............................................................................................38

*Merit Mgmt. Group, LP* v. *FTI Consulting, Inc.*,
138 S. Ct. 883 (2018) .............................................................................................34

*Met. Life Ins. Co.* v. *Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ..............................................................................28, 30

*Minerva Surgical, Inc.* v. *Hologic, Inc.*,
141 S. Ct. 2298 (2021) ...........................................................................................39

*Picard* v. *BNP Paribas, S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*Picard* v. *Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*,
12 F.4th 171 (2d Cir. 2021) ............................................................................ *passim*

*Picard* v. *Estate (Succession) of Igoin*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..................................................................29

*Picard* v. *Magnify Inc.*,
2012 WL 2254995 (Bankr. S.D.N.Y. June 15, 2012) .............................5 n.5, 8, 9

*Picard* v. *Magnify Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ................................................................. 6

*Raylite Elec. Corp.* v. *Noma Elec. Corp.*,
    170 F.2d 914 (2d Cir. 1948) .......................................................... 31, 32, 37, 38

*Reiss* v. *Societe Centrale du Groupe des Assurances Nationales*,
    185 F. Supp. 2d 335 (S.D.N.Y. 2002) .............................................................. 27

*Rush* v. *Savchuk*,
    444 U.S. 320 (1980) ............................................................................................. 8

*Santa Fe Sci. & Tech., Inc.* v. *Drexel Univ.*,
    2002 WL 35649493 (D.N.M. Dec. 4, 2002) ................................... 17 n.13, 20, 21

*Securities Investor Protection Corp.* v. *Bernard L. Madoff Inv. Securities LLC*,
    501 B.R. 26 (S.D.N.Y. 2013) ................................................................... *passim*

*Smith* v. *Bayer Corp.*,
    564 U.S. 299 (2011) ........................................................................................... 37

*SPV OSUS Ltd.* v. *UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015) ............................................................... 15

*SPV Osus Ltd.* v. *UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .................................................................... *passim*

*SPV Osus Ltd.* v. *UniCredit Bank Austria*,
    2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) .......................................... 8, 9, 16

*Taylor* v. *Sturgell*,
    553 U.S. 880 (2008) ..................................................................................... 37, 38

*Tourangeau* v. *Uniroyal, Inc.*,
    101 F.3d 300 (2d Cir. 1996) ............................................................................. 37

*United States* v. *Bell*,
    524 F.2d 202 (2d Cir. 1975) ............................................................................. 35

*United States* v. *Nucci*,
    364 F.3d 3419 (2d Cir. 2004) ........................................................................... 39

*United States* v. *Texas*,
    507 U.S. 529 (1993) ........................................................................................... 39

*United States* v. *Wilson*,
    503 U.S. 329 (1992) ........................................................................................... 31

*Vista Food Exch., Inc.* v. *Champion Foodservice, LLC*,
  124 F. Supp. 3d 301 (S.D.N.Y. 2015) ................................................................8, 9

*Walden* v. *Fiore*,
  571 U.S. 277 (2014) ...................................................................................... *passim*

*Waldman* v. *Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ....................................................................................9

*Zim Integrated Shipping Servs. Ltd.* v. *Bellwether Design Tech.LLC*,
  2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ....................................................8 n.6

*Zornoza* v. *TerraForm Global, Inc.*,
  419 F. Supp. 3d 715 (S.D.N.Y. 2019) .....................................................................13

**Statutes and Rules**

11 U.S.C. § 349(b)(1)(B) ............................................................................33 n.22

11 U.S.C. § 546(a) ............................................................................................40

11 U.S.C. § 550(a) ................................................................................... *passim*

11 U.S.C. § 550(b)(1) .......................................................................................32

11 U.S.C. § 550(c) ............................................................................................32

11 U.S.C. § 550(f) ............................................................................................33

28 U.S.C. § 1334(b) ...........................................................................................9

Fed. R. Bankr. P. 7004(f) ..................................................................................9

Fed. R. Bankr. P. 7012(b) .............................................................................3 n.3

Fed. R. Bankr. P. 7018 .....................................................................................40

Fed. R. Civ. P. 12 ...............................................................................................3

Fed. R. Civ. P. 12(b) .................................................................................3 n.3, 7

Fed. R. Civ. P. 12(b)(2) ..........................................................................3, 15, 40

Fed. R. Civ. P. 12(b)(6) ............................................................................3, 40

Fed. R. Civ. P. 18(b) ..................................................................................39, 40

**Other Authorities**

Restatement (Second) of Agency § 14C (1958) ..............................................................13

Restatement (Second) of Conflicts of Law § 292 (1971) .............................................16

Restatement of the Law of Agency (Third) § 4.03 cmt. b ...........................................28

Restatement of the Law of Agency (Third) § 4.06 cmt. b ...........................................28

## PRELIMINARY STATEMENT

This Court lacks jurisdiction over any of the defendants in this case. The Complaint should be dismissed on that basis. Although the claims have other flaws, and there is at least one additional ground for dismissal on the pleadings, which is discussed below, there is no need to go beyond the issue of personal jurisdiction.

The defendants are six Israeli universities and related companies that received grants from an Israeli organization, Yeshaya Horowitz Association ("Yeshaya"), which had an account at Bernard L. Madoff Investment Securities LLC ("BLMIS"). The Trustee brought an avoidance action against Yeshaya in 2010, seeking to recover Yeshaya's withdrawals from BLMIS, and settled that action in 2019. In 2015, the Trustee commenced a separate suit in Israel — against the same Israeli defendants sued here — to recover the transfers they received from Yeshaya. The suit in Israel has been actively litigated for six years and remains pending.

This new lawsuit — commenced some 13 years after the revelation of the Madoff fraud — seeks to recover a subset of the transfers that the Trustee has sought to recover in Israel. The Complaint, however, fails to make out a *prima facie* case of jurisdiction as to any defendant. And, even if the Court were to look beyond the pleadings, the factual record — including the declarations submitted with this motion[1] — further refutes any claim of jurisdiction.

---

[1] Along with this motion, defendants have submitted the: (1) Declaration of Dror Frenkel ("Frenkel Decl."); (2) Declaration of Tamar Mund ("Mund Decl."); (3) Declaration of Professor Bracha Rager ("Rager Decl."); (4) Declaration of Pepi Yakirevich ("Yakirevich Decl."); (5) Declaration of Professor Hanoch Gutfreund ("Gutfreund Decl."); (6) Declaration of Michal Naveh ("Naveh Decl."); (7) Declaration of Professor Irun Cohen ("Cohen Decl."); (8) Declaration of Professor Shimon Ullman ("Ullman Decl."); and (9) the Declaration of Professor Amir N. Licht regarding certain issues of Israeli law ("Licht Decl."). The defendants have also submitted the declaration of Michael H. Cassel ("Cassel Decl.") to transmit certain documents to the Court.

Under controlling precedent, for a court to exercise specific jurisdiction over a defendant,[2] the defendant's "suit-related," "purposeful" contacts with the forum "must create a substantial connection with the forum." *Walden* v. *Fiore*, 571 U.S. 277, 284-85, 288 n.7 (2014). In this case, however, the suit-related connections between the defendants and this forum, far from being "substantial," are non-existent or at best far "too tenuous to support the exercise of specific jurisdiction." *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018).

The Complaint tries to bridge the 5700 miles between New York and Jerusalem in several ways. But it presents no viable theory of jurisdiction. The Complaint alleges that three of the defendants (The Hebrew University of Jerusalem, Ben-Gurion University of the Negev, and The Weizmann Institute of Science) are responsible for the New York contacts of Yair Green — who is alleged to have managed Yeshaya's account at BLMIS — because Green sat on their boards of governors or other governing bodies. That is plainly wrong. Although a board of governors can of course bind an organization when its members act collectively, *individual* board members such as Yair Green have no such authority or agency status. Jurisdiction over the universities thus cannot be predicated on the actions of Yair Green.

The Complaint also alleges that certain university professors had roles at Yeshaya and participated in Yeshaya's grant process, which resulted in Yeshaya arranging withdrawals from BLMIS. But under *Walden*, Yeshaya's contacts with BLMIS cannot support jurisdiction over the universities: "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." 571 U.S. at 291. In addition, a defendant with limited U.S. contacts can be subject to suit "only if the plaintiff's injury was proximately caused by those contacts."

---

[2] As discussed in Point II, *infra*, the Trustee has not alleged that any defendant is subject to general jurisdiction.

*Picard* v. *BNP Paribas, S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (quoting *SPV Osus*,

882 F.3d at 344).  Here, even if we assume (as the Trustee does) that the professors participated

in Yeshaya as agents for their universities, it was still only *Yeshaya* that had suit-related contacts

with the United States, and it was only *Yeshaya*'s contacts with the United States — namely, its

withdrawals from BLMIS during the relevant six-year period — that "proximately caused" any

harm to BLMIS' customers.  In any event, there is no basis for the assumption that the professors

participated in Yeshaya as agents for their universities:  the Complaint alleges no facts to support

that assumption, and the facts before the Court show that the opposite is true.

 For those reasons and others, the Trustee has failed to establish that any defendant had

the requisite minimum contacts with the United States.  But even if such contacts existed,

exercise of jurisdiction would still be unreasonable — not least because the Trustee has sued the

*same* defendants in Israel, where all the evidence and witnesses are based, to recover the *same*

transfers*,* and has been litigating in Israel for six years.

 The Complaint should thus be dismissed under Federal Rule of Civil Procedure 12(b)(2)

for lack of personal jurisdiction.[3]  Nonetheless, if the Court were to reach other Rule 12 issues,

the Complaint also fails to state a claim under Rule 12(b)(6).  Under section 550(a) of the

Bankruptcy Code, a prior judgment of avoidance is a necessary precondition to recovery from a

subsequent transferee.  Here, in seeking to recover alleged transfers from Yeshaya to defendants,

the Trustee purports to rely on a consent judgment with Yeshaya to which the defendants were

---

[3] Fed. R. Civ. P 12(b) is made applicable to this case by Fed. R. Bankr. P. 7012(b).  Pursuant to
the second sentence of Rule 7012(b), the defendants do not consent to the entry of final orders or
judgments by the bankruptcy court.

*not* parties.  But under settled law governing the use of judgments against non-parties, the

consent judgment cannot be used against the defendants in this action.

## FACTUAL BACKGROUND[4]

A.    **Yeshaya Horowitz Association is created to advance scientific**
      **research at Israeli universities.**

In 1983, a French industrialist, Albert Igoin, created a company, Magnify, to invest funds

with BLMIS.  (¶ 12.)  In 1988, Igoin created Yeshaya to distribute his wealth to scientific

research institutions in Israel.  (¶¶ 13, 14.)  Igoin was assisted by Yair Green, an Israeli attorney

who was his close friend.  (¶ 14.)  In 1989, Igoin transferred all of Magnify's shares to Yeshaya,

giving Yeshaya control over Magnify's assets, including its account at BLMIS.  (¶ 14.)  In 1990,

Magnify opened a second account at BLMIS.  (¶ 12.)

Between 1998 and 2008, Yeshaya transferred over $120 million to Israeli research

institutions.  (¶ 20.)  To fund those distributions, Yeshaya is alleged to have made withdrawals

from its BLMIS account, and to have transferred the withdrawn amounts to its Israeli bank

account.  (¶¶ 19, 20.)  The funds for the Israeli research institutions were then transferred from

Yeshaya's Israeli bank account to the institutions' Israeli bank accounts.  (¶ 19.)

B.    **The Trustee sues to recover transfers to Yeshaya.**

On December 6, 2010, the Trustee filed an action to avoid and recover transfers from

BLMIS to Magnify, Yeshaya, Yair Green, and certain others.  *Picard* v. *Magnify Inc.*, No. 10-

---

[4] The facts are drawn from the allegations in the complaint, sources of which the Court may take
judicial notice, and (where indicated) declarations submitted contemporaneously with this
motion.  Citations of "¶  " refer to the complaint.  Citations to "Ex." refer to exhibits to the
Cassel Decl.  Citations of "Magnify Compl. ¶  " refer to the complaint in the action *Picard* v.
*Magnify, Inc.*, No. 10-05279 (Bankr. S.D.N.Y.), and citations to "Magnify Dkt." refer to docket
entries in that action.  Defendants have submitted various declarations to address allegations
related to jurisdiction.  Many other statements in the complaint are not accurate and will be
addressed as needed if the action goes forward.

4

05279 (Bankr. S.D.N.Y. Dec. 6, 2010) (Magnify Dkt. 1).  The Trustee sought to avoid transfers

from BLMIS to Magnify or Yeshaya, as well as subsequent transfers to Green and others.[5]

**C.    The Trustee sues Israeli institutions in Israel.**

In December 2015, the Trustee filed suit in the District Court of Tel Aviv, Israel, against

30 Israeli research institutes, medical centers, academic institutions and technology transfer

companies that had received funds from Yeshaya.  The suit is captioned *Picard* v. *Hebrew*

*University of Jerusalem, et al.*, CC 18909-12-15. (Ex. 1.)  The defendants include the six entities

named here, and the Trustee seeks to recover transfers going back to 1989, including the

transfers made between 2002 and 2008.  (Ex. 1 ¶¶ 92, 104, 113, 120, 214.)

In the Israeli court, the Trustee represented and agreed that the transfers from Yeshaya to

defendants were made in Israel, and insisted that Israel is the place to challenge transfers made in

Israel, through Israeli banks, from one Israeli institution to another:

> [T]he Claim pertains to transfers of funds that were made in Israel,
> received in Israel among parties incorporated and residing in Israel,
> according to contracts (whether written or otherwise, whether void
> or voidable) that were entered in Israel, that are governed – to best
> knowledge, by Israeli law.  The relevant witnesses on behalf of the
> Defendants are all situated in Israel.  This Honorable Court has the
> territorial and subject-matter jurisdiction to hear the Claim,
> considering its essence and the *situs* of some of the Defendants.

(Ex. 1 ¶ 217.)

---

[5]  In August 2011, one of the defendants in the *Magnify* action — Kurt Brunner, a Swiss attorney
who allegedly controlled Magnify's New York-based account at BLMIS  — moved to dismiss
the claims against him for lack of jurisdiction.  (Magnify Dkt. 32.)  In June 2012, the Court
denied Brunner's motion, with leave to renew the motion after jurisdictional discovery had been
completed.  2012 WL 2254995 (Bankr. S.D.N.Y. June 15, 2012).  In February 2015, the Trustee
dismissed Brunner voluntarily.  (Magnify Dkt. 132.)

**D.      The Trustee settles the *Magnify* action and files suit in this Court against
defendants, seeking to recover the same transfers as in Israel.**

In September 2017, the Trustee filed a second amended complaint in the *Magnify* action

against Magnify, Yeshaya, Green and three other entities allegedly created by Green.  (Magnify

Dkt. 143.)  Certain defendants filed a motion to dismiss, which was denied.  *Picard* v. *Magnify*

*Inc.*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018).  The Trustee and the defendants subsequently

entered into a settlement.  As part of the settlement, each of the *Magnify* defendants, other than

Green, entered into consent judgments, which stated that $126 million of transfers from BLMIS

were "avoided."  (Magnify Dkt. 199 ¶ 1.)   None of the defendants in this action was party to the

*Magnify* action, including at the time of the consent judgments.

On September 27, 2021, the Trustee filed this action.  Invoking section 550(a) of the

Bankruptcy Code, the Trustee seeks to recover 119 transfers — $49.7 million in total —  from

Yeshaya's Israeli bank account to the defendants' Israeli bank accounts between 2002 and 2008.

### THE DEFENDANTS

Bar-Ilan University ("Bar-Ilan") is a public research university based in Ramat Gan,

Israel.  It is chartered in Israel as a registered association.  Frenkel Decl. ¶ 2(a).

Ben-Gurion University of the Negev ("Ben-Gurion") is a public research university based

in Beer Sheva, Israel.  It is recognized as an institute of higher education and chartered as a

corporation under Israeli law.  Mund Decl. ¶ 2.

The Hebrew University of Jerusalem ("Hebrew U.") is a public research university based

in Jerusalem, Israel.  It is recognized as an institution of higher education and chartered as a

corporation under Israeli law.  Yakirevich Decl. ¶ 2.

6

The Weizmann Institute of Science ("Weizmann Institute") is a research institution based in Rehovot, Israel.  It is accredited as a higher education institution and chartered under Israeli law as a company limited by guarantee with no share capital.  Naveh Decl. ¶ 2.

B. G. Negev Technologies and Applications Ltd. ("BGN Technologies") is a technology company associated with Ben-Gurion.  It is organized as a limited liability company under Israeli law.  Mund Decl. ¶ 8.

Yissum Research Development Company of the Hebrew University of Jerusalem Ltd. ("Yissum") is a technology company associated with Hebrew U.  It is organized as a limited liability company under Israeli law.  Yakirevich Decl. ¶ 9.

## ARGUMENT

Defendants respectfully move to dismiss under Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction and failure to state a claim.  Point I sets out the framework for personal jurisdiction.  Points II and III explain why the Complaint should be dismissed — on the pleadings or otherwise based on evidence — for failure to present facts supporting either general or specific jurisdiction.  Point IV shows that, even if minimum contacts were adequately pleaded (which is not the case), the Court should grant this motion on the basis that exercise of jurisdiction would be unreasonable.  Point V, finally, demonstrates that — even if the Court had jurisdiction over any defendant — the Complaint would be subject to dismissal for failure to state a claim, because the Trustee has not procured a judgment of avoidance that is binding on defendants, as is necessary to invoke section 550(a) of the Bankruptcy Code.

## POINT I.    FRAMEWORK FOR PERSONAL JURISDICTION

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the

exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation and quotation marks omitted).

The Trustee has the burden of pleading and proving that this Court has personal jurisdiction over each of the defendants. *Friedman* v. *Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017). The Trustee must establish jurisdiction on a defendant-by-defendant basis: it is "plainly unconstitutional" for a plaintiff to lump defendants together and consider their jurisdictional contacts as a group. *Grow Grp., Inc.* v. *Jandernoa*, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (citing *Rush* v. *Savchuk*, 444 U.S. 320, 322 (1980)).

In deciding a motion to dismiss for lack of personal jurisdiction, the first question is whether the complaint on its face makes out a "*prima facie* case" of jurisdiction over each and every defendant. *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 566-67 (S.D.N.Y. 2012); *Magnify*, 2012 WL 2254995, at *5. Where the complaint fails to make out a *prima facie* case, the claims should be dismissed, and the plaintiff is not entitled to "discovery – even jurisdictional discovery – from a foreign corporation." *Est. of Ungar* v. *Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009).[6]

If the plaintiff has pleaded sufficient facts as to a defendant, the defendant is entitled to make "factual submissions" in support of dismissal to "forestall the need for jurisdictional discovery." *Vista Food Exch., Inc.* v. *Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 313-14 (S.D.N.Y. 2015); *accord SPV Osus Ltd.* v. *UniCredit Bank Austria*, 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019); *Magnify*, 2012 WL 2254995. If the Court concludes that the

---

[6] *See also, e.g.*, *Lear* v. *Royal Caribbean Cruises Ltd.*, 2021 WL 1299489, at *13 (S.D.N.Y. Apr. 7, 2021) (denying discovery); *Zim Integrated Shipping Servs. Ltd.* v. *Bellwether Design Tech. LLC*, 2020 WL 5503557, at *6 (S.D.N.Y. Sept. 10, 2020) (same).

submissions support dismissal, it may dismiss "without ordering jurisdictional discovery." *E.g.*,
*Vista Food Exch.*, 124 F. Supp. 3d at 314-15.  If, on the other hand, the pleading and submissions
leave "questions that must be resolved in order to determine whether personal jurisdiction
exists," the Court may order jurisdictional discovery and limit discovery to jurisdictional issues.
*Magnify*, 2012 WL 2254995, at *8-9.

      "[W]hen a federal court's jurisdiction is based on 28 U.S.C. § 1334(b)," as in this case,
"some courts in this district have held that the relevant forum is the United States, not the state in
which the court sits." *SPV Osus*, 2019 WL 1438163, at *5; *see* Fed. R. Bankr. P. 7004(f).[7]  In
those circumstances, the relevant due process clause is in the Fifth Amendment, not the
Fourteenth.  The Second Circuit has held that "'[t]he due process analysis for purposes of the
court's *in personam* jurisdiction is basically the same under both the Fifth and Fourteenth
Amendments.'"  *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016)
(quoting *Chew* v. *Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)).

      ***General jurisdiction.***  When the plaintiff is relying on general jurisdiction, the minimum
contacts test is straightforward:  the defendant is either "at home" in the jurisdiction, or not.
*Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014).  As discussed in Point II, the Complaint does
not allege that this Court has general jurisdiction over any defendant.

      ***Specific jurisdiction.***  Specific jurisdiction depends on a defendant's "suit-related
conduct."  *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014).  That "conduct must create a *substantial
connection* with the forum State."  *Id*. (emphasis added).

---

[7]  In this case, the allegations of U.S. contacts all relate to New York; thus, whether the relevant
forum is New York or the United States, the analysis should not differ.

In *Walden*, two professional gamblers who were returning from Puerto Rico to Nevada had their winnings seized by a government agent on a layover in Georgia. They sued the agent in Nevada, even though the only contact that the agent had with Nevada was that he knew that his actions would prevent the return of funds to Nevada. The Supreme Court held that this was insufficient for the assertion of jurisdiction over the government agent: the defendant himself had no "suit-related" contacts with Nevada, and the suit thus had to be dismissed. *Id*. at 284, 291. As *Walden* makes clear, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 285-86, 291.

The Supreme Court has long held that, even where the defendant has contacts with a forum, specific jurisdiction will lie only where the defendant "*purposefully* avails itself of the privilege of conducting activities within the forum State." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958) (emphasis added). Each defendant, in other words, must have "*purposefully* directed" its activity toward the forum. *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis added); *accord Walden*, 571 U.S. at 285.

Specific jurisdiction also incorporates a causation requirement. Under Second Circuit precedent, "[w]here the defendant has had only limited contacts with the [forum] it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *BNP Paribas, S.A.*, 594 B.R. at 190 (quoting *SPV Osus*, 882 F.3d at 344).[8]

---

[8] In *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), the Supreme Court held that a "strict causal relationship" was not necessary where a defendant, rather than having limited contacts with the forum as in *SPV Osus*, marketed the allegedly defective products at issue through "every means imaginable" and "systemically served a market" in the states through dozens of dealerships. 141 S. Ct. at 1026-28. That is obviously not this case.

***Separate claims.***  In a prior Madoff-related case, Judge Bernstein correctly held that, when evaluating personal jurisdiction for purposes of a fraudulent transfer claim, "each transfer is a separate claim." *BNP Paribas S.A.*, 594 B.R. at 190 (citing cases).  The Trustee, moreover, "must establish the court's jurisdiction with respect to each claim asserted." *Id.* (internal quotation marks omitted).  It follows that, to establish personal jurisdiction here, the Trustee has to plead and prove facts showing that, as to each transfer that the Trustee wishes to recover, the relevant defendant engaged in conduct purposely "directed" toward, and sufficient to create a "substantial connection" with, the United States.  *Walden*, 571 U. S. at 285, 289.

## POINT II.    DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION.

The Complaint does not attempt to plead facts that could support general jurisdiction over any defendant.  To the contrary, it alleges *only* that the Court has "specific personal jurisdiction" of defendants.  (¶ 29.)

Although the Trustee's pleading concedes the point, the facts before the Court confirm there is no general jurisdiction.  Each defendant entity is an Israeli institution, organized under the laws of Israel, and is not chartered or headquartered in the United States.  Frenkel Decl. ¶ 2(a); Mund Decl. ¶ 2; Yakirevich Decl. ¶ 2; Naveh Decl. ¶ 2.  Defendants thus are not "at home" in the United States.  *Daimler*, 571 U.S. at 137.[9]

---

[9]  The Trustee has noted in passing that each university has an American "friends" society that raises money for the university.  (¶¶ 36, 51, 59, 74.)  Those allegations are irrelevant.  The "friends" organizations are distinct from their universities.  Frenkel Decl. ¶ 4; Mund Decl. ¶ 9; Yakirevich Decl. ¶ 10; Naveh Decl. ¶ 10.  And regardless, their conduct in raising funds for the Israel-based universities could not support general jurisdiction.  *Daimler*, 571 U.S. at 136.

**POINT III.    DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.**

The Complaint labors over many pages to try to support a claim of specific jurisdiction. But, as to each defendant, it falls short. We address below the particular allegations against each defendant. Yet the flaws in the Trustee's jurisdictional pleading cut across all of the defendants. Those common pleading flaws are addressed first.

The Trustee seeks to connect the defendants to BLMIS (and thus to the United States) in two primary ways: (1) through Yair Green, Yeshaya's counsel and the alleged manager of its account at BLMIS, and (2) through university professors or employees who allegedly had roles at Yeshaya. Neither set of allegations supports the claim that each defendant "purposefully directed" its activities toward the United States (*Burger King*, 471 U.S. at 476) and formed a "substantial connection" with this forum (*Walden*, 571 U.S. at 284).

**A.    Yair Green's conduct and knowledge have no relevance.**

In seeking to connect Weizmann Institute, Ben-Gurion and Hebrew U. (but not Bar-Ilan) to BLMIS, the Trustee asserts that Yair Green — Yeshaya's counsel and manager of Yeshaya's account at BLMIS — acted as an "agent" of those three universities. (¶¶ 11, 195-201, 239-41, 272-74.[10]) But there is no allegation that Green was employed by any of the universities or participated in Yeshaya at any university's behest. Rather, the only basis for the Trustee's conclusory assertion is that Green sat on the universities' governing boards. (¶¶ 195, 198, 239-241, 272-274.) It is self-evident, however, that serving on the board or other governing body of an organization does not make one an agent of the organization. A board is a body that proceeds by collective action, and it can bind and direct an organization to the extent permitted by law or

---

[10] The Complaint does not allege that Green was a board member or agent of Bar-Ilan.

governing documents.  By comparison, individual board members "generally are not understood to function as agents."  *Zornoza* v. *TerraForm Global, Inc.*, 419 F. Supp. 3d 715, 734 (S.D.N.Y. 2019); *see* Restatement (Second) of Agency § 14C (1958) (individual board member is not "as such, an agent of the corporation or of its members").  The Complaint, accordingly, offers no basis to conclude that Yair Green was an agent of any defendant or that his conduct or knowledge as a board member — including any actions he took to facilitate or solicit grants for any defendant — can be attributed to that defendant.

Although the Court need not look beyond the deficient pleading, the declarations submitted by defendants further confirm that Green did not act on behalf of the universities.  As the declarations show, the boards of Hebrew U. and Weizmann Institute have *hundreds* of members that meet once a year to "oversee" the functioning of the university.  No individual governor is authorized to act on behalf of either university.   Yakirevich Decl. ¶ 8; Naveh Decl. ¶¶ 7-8.   At Ben-Gurion, likewise, individual board members, or members of other governing bodies that Green is alleged to have joined, do not have authority to act on the university's behalf.  Mund Decl. ¶¶ 5-6.  In addition, as Professor Amir Licht — a leading expert on Israeli corporate law —  has testified, Israeli law (like U.S. law) does not treat individual board members or members of other governing bodies as "organs" of a university absent specific authority from their institutions to take particular actions.  Licht Decl. ¶¶ 15(b)(i), 52-57. Yair Green's conduct, therefore, cannot be used to support jurisdiction over any defendant.

## B.     The alleged actions of professors or other employees do not support jurisdiction over the universities.

Lacking any basis to impute Yair Green's conduct to any defendant, the Trustee tries to establish specific jurisdiction over defendants based on the conduct of other individuals.  The Trustee's theory appears to be that professors or others associated with the universities, as

members of Yeshaya, facilitated and solicited grants from Yeshaya, which in turn made

withdrawals from BLMIS.  (¶¶ 9, 15, 21, 24, 169-194, 202-210, 217-238, 251-271, 284-293.)

An overarching problem with the Trustee's theory is that the Trustee is fundamentally

seeking to predicate jurisdiction in this case not on the *defendants'* contacts with the United

States but on *Yeshaya's* contacts.  Under *Walden*, however, a third party cannot be "the only link

between the defendant and the forum," and "it is the defendant, not the plaintiff or third parties,

who must create contacts with the forum State."  571 U.S. at 285-86, 291.  Here, it was *Yeshaya*

that was the account-holder at BLMIS, and it was *Yeshaya* that made withdrawals from its

BLMIS account to fund transfers to its Israeli bank account and ultimately to recipients in Israel.

The Trustee, moreover, cannot begin to demonstrate, as required by the Second Circuit,

that Yeshaya's withdrawals from BLMIS — the alleged injury that the Trustee seeks to remedy

— were "proximately caused" by any professor's or other employee's conduct, let alone by any

suit-related contacts with the United States.  *SPV Osus*, 882 F.3d at 348.  As an initial matter, the

Complaint fails to allege that Yeshaya would have withdrawn less from BLMIS, or that any

withdrawals from BLMIS would not have occurred, had Yeshaya made different grant

decisions.[11]  But even assuming that particular grant decisions affected the quantum of

withdrawals from BLMIS, it was still *Yeshaya* — and not any particular member of Yeshaya —

that had to approve the grants.  None of the professors (or employees) is alleged to have had the

power to cause Yeshaya to approve a grant.  Rather, those individuals were at most members of a

committee that reviewed grant applications.  (¶¶ 184-194, 202-210, 218-238, 252-271, 285-293.)

---

[11] The declarations support the opposite conclusion:  Yair Green informed the members of YHA
of the annual budget *in advance*, and the members then evaluated how to allocate that budget.
Gutfreund Decl. ¶¶ 14-15; Cohen Decl. ¶ 6; Rager Decl. ¶ 6**.**

The Trustee, accordingly, has failed to draw the necessary connection between, on the one hand, the forum-based conduct of any professor or university employee and, on the other hand, the alleged injury to BLMIS customers.

Courts in this district have dismissed Madoff-related suits against foreign defendants with much closer connections to BLMIS and the United States. For example, in *SPV OSUS*, the defendant (UBS) had formed a BLMIS feeder fund, opened an account with BLMIS, "delivered the account opening documents to BLMIS on [the feeder fund's] behalf," and "contracted with BLMIS to serve as [the feeder fund's] custodian, processed investor redemptions, and engaged in regular communication with BLMIS concerning [the feeder fund]." *SPV OSUS Ltd.* v. *UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015). The Second Circuit, in affirming dismissal under Rule 12(b)(2), concluded that those contacts were "too tenuous" to support jurisdiction, because the plaintiff had failed to allege that the harm it suffered, as a BLMIS account-holder, was proximately caused by UBS's contacts with the United States. 882 F.3d at 339, 344-45; *see also Hau Yin To* v. *HSBC Holdings PLC*, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017) (dismissing similar suit against HSBC as feeder-fund manager, despite HSBC having "communicated with and transmitted funds to and from BLMIS").

The Trustee's jurisdictional theory fails for other reasons as well. As Judge Bernstein held, it is the Trustee's burden to "establish the court's jurisdiction with respect to *each claim* asserted." *BNP Paribas*, 594 B.R. at 190 (emphasis added). And, in the context of this fraudulent transfer case, "each transfer is a separate claim." *Id.* Here, however, the Trustee has made no attempt to establish jurisdiction on a transfer-by-transfer basis. Nothing in the Complaint seeks to connect specific transfers from Yeshaya to specific conduct by a defendant. Indeed, even while alleging that certain professors at the defendant universities had roles in

Yeshaya's grant process, the pleading fails to allege that any professor or employee (of any university) had any particular role in facilitating or soliciting the particular transfers at issue.[12] In that respect, this case is the opposite of *BNP Paribas*, where the Trustee defeated a jurisdictional motion by showing that each "subsequent transfer" being challenged arose from the "New York contacts" of the defendant's trading group based in New York. *Id.* at 190-91.

Finally, to state the obvious, the alleged conduct of individual professors concerning Yeshaya can only be attributed to defendants if the individuals acted on defendants' behalf. *See, e.g.*, *SPV Osus*, 2019 WL 1438163, at *10 (dismissing claims against feeder-fund managers where the complaint failed to allege that individuals associated with the managers "were acting in their capacities as direct or indirect owners controllers" of those managers when they "traveled to New York or met with Madoff"). Here, the Complaint, although stating the conclusion that the professors were agents of their institutions, does not allege *facts* showing that any professor was appointed to Yeshaya by any defendant or acted in any capacity other than his or her personal or private capacity.

That pleading deficiency again requires dismissal. And to the extent the Court looks beyond the Complaint, dismissal is still required. The status of Israeli individuals participating in Israeli institutions is necessarily governed by Israeli law. *See, e.g.*, *Davis* v. *Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984) ("As a general rule, the incidents of legal relationships . . . are governed by the rules of the state of common domicile or in which the relationship is centered"); *accord* Restatement (Second) of Conflicts of Law § 292 (1971) ("Whether a

---

[12] In a couple of instances, the Complaint asserts vaguely that grants were made to universities at times when professors from the universities were involved in Yeshaya. (*E.g.*, ¶¶ 207, 223.) But the Complaint stops short of alleging that any of the particular transfers the Trustee seeks to recover were caused or even facilitated by particular individuals.

principal is bound by action taken on his behalf by an agent in dealing with a third person is

determined by the local law of the state which, with respect to the particular issue, has the most

significant relationship to the parties and the transaction"). Defendants have submitted with this

motion the declaration of Professor Amir Licht, who has testified that, under Israeli law —

similar to U.S. law[13] — professors at Israeli universities are not "organs" of the universities to

the extent they choose to participate in organizations such as Yeshaya. Licht Decl. ¶¶ 15(b)(ii),

58-67. Based on Prof. Licht's declaration, as well as other facts described below, there is no

basis to ascribe the Yeshaya-related actions of the professors to the defendant institutions.

## C.    Allegations against particular defendants

Review of the allegations against each defendant confirms that, for the reasons discussed

above (and others), the Complaint fails to establish jurisdiction against any of the defendants.

The six defendants are each addressed below.

### 1.    Bar-Ilan University

The jurisdictional case against Bar-Ilan is exceedingly thin. It is based entirely on the

alleged conduct of Amnon Caspi, an adjunct professor at Bar-Ilan who allegedly joined Yeshaya

in 1995 and served on its audit committee between 2000 and 2013. (¶¶ 284-300.)

The Complaint does not allege that Caspi had any connection to BLMIS or New York,

except that he allegedly received financial statements with a line item stating that Yeshaya

invested in New York. (¶ 55.) But of course, receiving financial statements in Israel showing

someone else's funds in New York is not conduct "directed" toward the United States.

---

[13] *See, e.g.*, *Chou* v. *Univ. of Chi.*, 254 F.3d 1347, 1361-62 (Fed. Cir. 2001) ("[U]niversity
faculty are not agents of the university with respect to the selection and conduct of their research
projects . . . ."); *Santa Fe Sci. & Tech., Inc.* v. *Drexel Univ.*, 2002 WL 35649493, at *6 (D.N.M.
Dec. 4, 2002) (professors not treated as agents of universities for a particular purpose absent
"evidence of such agency").

The Complaint alleges that Caspi "requested" or "solicited" grants from Yeshaya for projects at Bar-Ilan. (¶¶ 289-92.)  But it does not allege that Caspi had any particular role in the transfers that the Trustee has sought to recover in this suit.  Nor does the Complaint allege that Caspi's (non-existent) contacts with the United States were the proximate cause — or the cause at all — of any injury to BLMIS customers.  As noted, the Complaint alleges that Caspi solicited grants from Yeshaya.  But it does *not* allege that Caspi, as one member of Yeshaya, had any ability to direct Yeshaya to make those grants or otherwise transfer funds.  The lack of causation between Caspi's alleged conduct and the supposed injury to BLMIS customers is again fatal. *BNP Paribas*, 594 B.R. at 190; *SPV Osus*, 882 F.3d at 344.

Finally, although the Trustee asserts that Caspi acted as an "agent" of Bar-Ilan in connection with his activities at Yeshaya (¶¶ 285, 295), the pleading is conclusory.  There are no facts showing that Caspi was appointed to any role at Yeshaya on Bar-Ilan's behalf.  To the contrary, Dror Frenkel of Bar-Ilan has stated in his declaration that Caspi, an adjunct professor, was *not* appointed to Yeshaya by Bar-Ilan.  Frenkel Decl. ¶ 3(c).

### 2.    Ben-Gurion University of the Negev

The jurisdictional case against Ben-Gurion is similarly lacking.  As an initial matter, as explained previously, the fact that Yair Green was a member of Ben-Gurion's Board of Governors (or other governing bodies) does not provide any basis to conclude that Green was an agent of Ben-Gurion, as alleged. (¶¶ 239, 245.)  Jurisdiction over Ben-Gurion, accordingly, cannot be based on the conduct of Yair Green.

The allegations against Ben-Gurion otherwise revolve around Professors Bracha Rager and Irun Cohen. The Complaint, however, fails to draw any relevant connection between them and this forum,[14] let alone the "substantial connection" required by the case law.

First, neither Prof. Rager nor Prof. Cohen is alleged to have directed or facilitated the particular transfers at issue in this litigation. For the reasons discussed, the failure to plead connections between Ben-Gurion's (non-existent) U.S. contacts and the transfers at issue defeats any claim of jurisdiction. *See BNP Paribas*, 594 B.R. at 190.[15]

Second, although both Prof. Rager and Prof. Cohen are alleged to have solicited funds from Yeshaya and participated in grant-making decisions (¶¶ 222-23, 232, 237), there is no allegation that either professor — as opposed to Yeshaya's membership as a whole — had the power or ability to approve any grants. To the contrary, in alleging that Prof. Rager solicited funds from the Center for the Study of Emerging Diseases ("CSED"), allegedly part of Yeshaya, the Complaint makes clear that *Yair Green* controlled the flow of funds from CSED. ¶ 222. And while the Complaint alleges that Prof. Cohen had "influence" over CSED's grant decisions, it acknowledges that he wrote to Yair Green to procure funding (for Weizmann Institute, not Ben-Gurion), and does not allege that he could authorize the funding himself. (¶¶ 256-57.) To the extent there is any doubt, Professors Cohen and Rager have testified that CSED's recommendations had to be approved by Green and others. Cohen Decl. ¶¶ 6, 11; Rager Decl.

---

[14] As in the case of Prof. Caspi, the Complaint alleges that Profs. Rager and Cohen received Yeshaya financial statements with a line item stating that Yeshaya had investments in New York. (¶¶ 78, 234.) That is not "purposeful availment." Indeed, both professors have testified that they did not focus on or discuss any such line item. Cohen Decl. ¶ 16; Rager Decl. ¶ 9.

[15] The Complaint includes allegations about Prof. Rager's involvement in the Israel Vaccine Research Initiative, or IVRI. (¶¶ 224-25.) But it does not allege IVRI had anything to do with the challenged transfers or took any particular action connected to the United States.

¶ 4. They have also both testified that, as individual members of Yeshaya, they did not have authority to approve grants to Ben-Gurion or anyone else. Cohen Decl. ¶ 6; Rager Decl. ¶ 6. Once again, therefore, the Trustee has failed to show the requisite connection between the professors' forum-related conduct and the alleged injury.

Third, as in the case of Prof. Caspi at Bar-Ilan, the Complaint asserts that Profs. Rager and Cohen were "agents" of Ben-Gurion in relation to their activities at Yeshaya (¶¶ 218, 226, 230, 237), but offers no factual support for that assertion. Under both Israeli and U.S. law, there is no basis to conclude, absent evidence of a particular appointment, that professors are agents of their universities when they participate in outside organizations. *See* Licht Decl. ¶¶ 15(b)(ii), 58-67; *Santa Fe Sci. & Tech.*, 2002 WL 35649493, at *6. Here, both Professor Cohen and Professor Rager have testified that they did *not* join or participate in Yeshaya as appointees or representatives of Ben-Gurion, and did not even take steps to inform Ben-Gurion of their Yeshaya activities. Cohen Decl. ¶¶ 3-4; Rager Decl. ¶ 5. Prof. Cohen, moreover, has testified that he was not even a professor at Ben-Gurion (he was merely a consultant for two years) and was involved with Yeshaya years before he was connected to Ben-Gurion. Cohen Decl. ¶¶ 3, 13.

### 3. Weizmann Institute of Science

The allegations against Weizmann Institute are focused on Yair Green, Professor Irun Cohen, and Professor Shimon Ullman.[16] They too are wholly inadequate.

As with Ben-Gurion, the allegations regarding Yair Green's role as a member of the Board of Governors of Weizmann Institute (¶¶ 272-78) have no jurisdictional relevance. As

---

[16] The Complaint also links Ilan Chet with Weizmann Institute, where he was president from 2001 to 2006. (¶¶ 15, 204.) However, the Complaint does not allege that Chet served as Weizmann Institute's agent. (¶¶ 251-78.) Indeed, Chet is alleged to have joined Yeshaya only *after* he ceased serving as Weizmann Institute's president. (¶ 206.)

explained, Green was one of several hundred members of the Board of Governors, and he had no

authority to act on Weizmann Institute's behalf.  Naveh Decl. ¶¶ 5, 8.

As regards Profs. Ullman and Cohen, the allegations in the Complaint do not support

jurisdiction over Weitzmann Institute.  First, as in the case of other professors, neither Prof.

Ullman nor Prof. Cohen is alleged to have caused or even facilitated any of the specific transfers

at issue in this litigation.  That failure to allege facts relating to the challenged transfers is enough

to require dismissal.

Second, while Prof. Cohen is alleged to have solicited funds from Yeshaya (¶¶ 258-59),

and Profs. Cohen and Ullman are alleged to have participated in grant-making decisions (¶¶ 256,

267), the Trustee has again offered no basis to conclude that either professor caused, or could

cause, any particular grants to be made without approval from Yeshaya's members more

broadly.  The allegations regarding Prof. Ullman's role are conclusory.  (¶ 267.)  As discussed in

the prior section, Prof. Cohen is alleged to have participated in the grant review processes, but it

was Yeshaya that had to approve the grants.  Prof. Cohen could not cause Yeshaya to approve

any grants, nor did he approve or participate in approving grants for his own research.  Cohen

Decl. ¶ 4.  Once again, therefore, the Complaint does not establish a causal nexus between the

professors' (non-existent) U.S. contacts and Yeshaya's withdrawals from BLMIS in New York.

Finally, although the Complaint proclaims that Profs. Ullman and Cohen were "agents"

of Weizmann Institute as they undertook activities at Yeshaya (¶¶ 252, 264, 266, 271), such

conclusory allegations of agency, with no factual support, again cannot be credited.  *See* Licht

Decl. ¶¶ 15(b)(ii), 58-67; *Santa Fe Sci. & Tech.*, 2002 WL 35649493, at *6.  And while there is

no need to go beyond the pleading, Profs. Ullman and Cohen have both testified that they were

*not* appointed to Yeshaya by Weizmann Institute, did not take steps to inform Weizmann

Institute of their roles at Yeshaya, and instead were acting in their own private capacities.

Ullman Decl. ¶ 2; Cohen Decl. ¶¶ 3-4.

### 4.    Hebrew University of Jerusalem

The Trustee devotes the most space to Hebrew U.  (¶¶ 169-216.)  But once again, the

Trustee has not shown that the individuals that are invoked — Yair Green, Yitzhak Amir, Henri

Atlan, Ilan Chet and Hanoch Gutfreund[17] — purposely directed conduct toward this jurisdiction

on Hebrew U.'s behalf.

*Yair Green*.  The allegations relating to Yair Green are irrelevant to Hebrew U. for the

same reasons they are irrelevant to Ben-Gurion and Weizmann Institute.  Although Green is

alleged to have acted "on behalf" of and as an "agent" for Hebrew U. (¶¶ 195, 201), the

Complaint points to nothing beyond Green's board role to support that claim.  Yair Green was

merely one of many board members and was not granted any particular authority by the

university.  Yakirevich Decl. ¶¶ 7-8.

*Yitzhak Amir*.  The Complaint alleges that in or around 1988, Yitzhak Amir, Hebrew

U.'s asset manager, was a founding member and then the "Manager" of Yeshaya.  (¶¶ 124,

171-172.)  It also alleges that Amir was involved in opening Yeshaya's BLMIS account in 1989

and signing withdrawals from the account.  (¶¶ 40, 126, 172.)  Amir is further alleged to have

participated in Yeshaya's grant activity and to have received Yeshaya's account statements from

BLMIS.  (¶¶ 174-75.)

---

[17]  The Complaint alleges that Professor Amnon Pazy, former president of Hebrew U. who died
in 2006, was a founding member of Yeshaya (¶¶ 13, 37, 137), but otherwise has no allegations
relating to Pazy, including any allegations connecting Pazy to any relevant transfer.

Those allegations, while indicating that Amir had connections to Yeshaya and its account at BLMIS, do not support jurisdiction over Hebrew U.  First, as the Trustee notes, Amir died in 1997.  (*See* ¶ 38.)  Amir, therefore, had absolutely nothing to do with the transfers at issue, or the withdrawals from BLMIS that allegedly funded those transfers.  Any contacts between Amir and this forum many years earlier cannot support jurisdiction over Hebrew U. with respect to the claims in the Complaint.  *See BNP Paribas*, 594 B.R. at 190.

In any event, the Complaint assumes, but offers no facts showing, that Amir was acting as Hebrew U.'s agent when he helped found and manage Yeshaya.  Given Amir's death years before the challenged transfers, there is no need to reach that agency issue.  But the evidence available undermines the Trustee's assumption.  In his declaration submitted to the Court, Professor Hanoch Gutfreund of Hebrew U. has testified that Amir became involved in Yeshaya as a friend of Albert Igoin, and that Amir was *not* appointed to Yeshaya by Hebrew U. and did *not* act on the university's behalf.  Gutfreund Decl. ¶¶ 11-12.  Hebrew U.'s other declarant, Pepi Yakirevich, has likewise testified that Amir was not appointed to Yeshaya by Hebrew U.  Yakirevich Decl. ¶ 17.

**Henri Atlan.**  The Complaint alleges that Henri Atlan — a professor at Hadassah University Hospital — was a founding member of Yeshaya, its first chairman, and served on Yeshaya's "Managing Board."  (¶¶ 13, 180.)  It also alleges that Atlan had signatory authority over Yeshaya's BLMIS account and signed letters to BLMIS requesting withdrawals.  (¶ 181.)

The Trustee's attempt to predicate jurisdiction over Hebrew U. on Henri Atlan's conduct has a simple and dispositive flaw:  Atlan was not even employed by Hebrew U., let alone in any

23

managerial or other role relating to Yeshaya's grants to Hebrew U.[18]  Rather, Atlan worked at

Hadassah Hospital, which the Trustee calls an "affiliate" of Hebrew U.  (¶¶ 13, 37.)  But any

attempt to conflate Hebrew U. and Hadassah Hospital would be futile, because they are not the

same.  As Pepi Yakirevich of Hebrew U. has explained, Hadassah is separate from Hebrew U.,

both as a corporate entity and in its operations.  Henri Atlan, as an employee of Hadassah, was

not an employee of Hebrew U.  Yakirevich Decl. ¶¶ 11-14.

Regardless, as shown by the declarations submitted to the Court, Atlan was not appointed

to Yeshaya by Hebrew U. and did not purport to act on behalf of Hebrew U.  Gutfreund Decl. ¶¶

11-12; Yakirevich Decl. ¶ 17.  Thus, Atlan's conduct cannot support jurisdiction in any event.

*Ilan Chet.*  Professor Chet is said to have joined Yeshaya in March 2007 — at the end of

the relevant period.  (¶ 206.)  In the brief time in which he was affiliated with Yeshaya, he is

alleged to have "attended several meetings" and to have approved, along with others at Yeshaya,

grants to Hebrew U.  (¶¶ 206, 207.)  But the pleading is otherwise threadbare.  Among other

things, it does not connect Prof. Chet to any of the specific transfers at issue, nor does it allege

that he had authority to cause Yeshaya to make any transfers.  In addition, as in the case of Amir,

Atlan and Gutfreund, the allegation that Prof. Chet joined Yeshaya as Hebrew U.'s "agent" (¶

210) is conclusory.  The evidence submitted by Hebrew U. shows that he was *not* appointed to

Yeshaya by the university and, during the relevant period, did not even have an active role at

Hebrew U.  Yakirevich Decl. ¶ 15.

---

[18]  In the specific paragraphs of the Complaint discussing Atlan, the Trustee avoids any reference
to Atlan being Hebrew U.'s agent.  (¶¶ 180-183.)  In paragraphs 48 and 170, Atlan is included in
a list of alleged agents.  Those conclusory references, at odds with the facts otherwise alleged
(namely that Atlan's position was not at Hebrew U.), are entitled to no weight.

***Hanoch Gutfreund.***  The Complaint alleges that Professor Hanoch Gutfreund, who was president of Hebrew U. from 1992 to 1997, joined Yeshaya in 1995 and had leadership roles at Yeshaya through 2008.  (¶¶ 38, 186-187.)  It alleges that Prof. Gutfreund knew Albert Igoin (¶ 185), was aware that Yeshaya's funds originated with Igoin and were invested with BLMIS (¶¶ 144, 151, 185), and met Madoff once in New York (¶ 43).  It also alleges that Prof. Gutfreund "participated" in meetings at which grants were awarded to Hebrew U.  (¶ 189.)

For several reasons, these allegations again fail to support jurisdiction over Hebrew U. First, as in the case of other professors, the Complaint does not allege facts showing that Prof. Gutfreund took any particular action relating to the *specific* transfers that the Trustee seeks to recover.  The Complaint likewise fails to allege that Prof. Gutfreund had the authority to cause (or did cause) those or other transfers to be made to or from Yeshaya.  Prof. Gutfreund has testified that he did *not* have such authority — rather, he was one of 15 members of a committee that reviewed research proposals, and had no authority on his own.  Gutfreund Decl. ¶¶ 14-16.

In addition, although the Complaint asserts that Prof. Gutfreund acted "on behalf of" Hebrew U. in connection with his work at Yeshaya (¶¶ 184, 193), it offers no factual support.  In contrast, Prof. Gutfreund has testified that Hebrew U. did *not* appoint him to Yeshaya and that he "did not act on behalf of" Hebrew U. to the extent he participated in Yeshaya.  Gutfreund Decl. ¶¶ 9-10.  Indeed, when he had a leadership role at Yeshaya, Prof. Gutfreund conveyed to others at Hebrew U. that his work at Yeshaya was in his private capacity rather than his role as president or professor at Hebrew U.  *Id.*[19]

---

[19] The fact that Prof. Gutfreund met Madoff, years after Gutfreund was president of Hebrew U., has no relevance.  The Complaint alleges no facts regarding the meeting.  Professor Gutfreund has testified that it was a "short courtesy meeting" and did not involve discussion of any relevant matters.  Gutfreund Decl. ¶ 13.

5.      **The Technology Companies**

The Trustee also brings claims against B.G. Negev Technologies and Applications Ltd. ("BGN Technologies"), a technology transfer company associated with Ben-Gurion, and Yissum Research Development Co. ("Yissum"), a technology transfer company associated with Hebrew U.  The Trustee does not try to allege jurisdiction over those entities in their own right.  Instead, the Trustee asserts, in summary fashion, that "[Hebrew U.] and Yissum are one and the same and act as alter egos of each other" (¶ 34), and that "[Ben-Gurion] and [BGN Technologies] are one and the same and act as alter egos of each other" (¶ 73).

The Trustee's half-hearted attempt to support jurisdiction over BGN Technologies and Yissum should be rejected.  As an initial matter, the Trustee appears to be invoking the "mere department" theory of jurisdiction, whereby a court "may exercise jurisdiction over a defendant not otherwise subject to the court's jurisdiction where the defendant is a 'mere department' of an entity over which the court has personal jurisdiction." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 625 (Bankr. S.D.N.Y. 2015).  However, because the Court lacks jurisdiction over Ben-Gurion and Hebrew U., it also lacks jurisdiction over the technology companies.

The jurisdictional claims fail for other reasons too.  First, the Trustee has failed to plead facts showing that BGN Technologies and Yissum are the alter egos of Ben-Gurion and Hebrew U.  As to both, the Trustee reels off a string of conclusory allegations, prefaced by "upon information and belief."  (¶¶ 33-34; ¶¶ 71-72.)  That is not sufficient.  "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United* v. *Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).  In addition, both Hebrew U. and Ben-Gurion have submitted evidence that the companies are legally

independent of the universities and have separate assets and liabilities as well as separate

management and governance.  Yakirevich Decl. ¶ 9; Mund Decl. ¶ 8.

Although the result would be the same under U.S. law, the question of whether the Israeli

companies are alter egos of the Israeli universities is necessarily governed by Israeli law.  *See,*

*e.g.*, *In re Lyondell Chem. Co.*, 543 B.R. 127, 139 n.38 (Bankr. S.D.N.Y. 2016).  Professor Licht

has explained that Israeli law (like U.S. law) generally respects corporate separateness and will

not pierce the corporate veil absent purposeful abuse of the corporate form to harm creditors.

Licht Decl. ¶¶ 15(d), 73-80.   Here, no such abuse is alleged, and the facts before the Court

defeat any effort to pierce the veil.

## D.    Allegations concerning ratification

The Trustee also asserts that each university "ratified" the acts of the individuals

associated with them by "retaining the benefit of [the] funds" received from Yeshaya.  (*E.g.*,

¶ 178 (Hebrew U. and Amir)).[20]   Under U.S. law, ratification is a "form of retroactive authority"

whereby a "principal, having knowledge of the material facts, accepts the benefits of the agent's

actions already made on his behalf."  *Reiss* v. *Societe Centrale du Groupe des Assurances*

*Nationales*, 185 F. Supp. 2d 335, 339 (S.D.N.Y. 2002).  Similarly, under Israeli law, ratification

involves approval by a principal, after the fact, of acts of someone purporting to be an agent.

Licht Decl. ¶¶ 15(c), 71.

The "ratification" allegations accomplish nothing.  *First*, the briefing above sets forth the

various reasons why the Complaint fails to plead jurisdiction over any of the universities,

---

[20] *See also* ¶ 193 (Hebrew U. and Chet), ¶ 201 (Hebrew U. and Gutfreund), ¶ 209 (Hebrew U.
and Green); ¶ 228 (Ben-Gurion and Rager), ¶ 237 (Ben-Gurion and Cohen), ¶ 245 (Ben-Gurion
and Green); ¶ 264 (Weizmann Institute and Cohen), ¶ 270 (Weizmann Institute and Ullman),
¶ 277 (Weizmann Institute and Green); ¶ 300 (Bar-Ilan and Caspi).

including that the Trustee has sought to predicate jurisdiction over the universities on *Yeshaya's* contacts with the United States. Even if the universities can be said to have "ratified" whatever the professors did, that has no significance if (as explained above) the professors' conduct cannot support jurisdiction. *Walden*, 571 U.S. at 285-86.

*Second*, the doctrine of ratification can apply only if there is an existing agency relationship or the actor is holding himself or herself out as having "apparent authority." *See, e.g.*, *Johansen* v. *HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (discussing Restatement of the Law of Agency (Third) § 4.03 cmt. b); Licht Decl. ¶¶ 15(c), 71. As set out above, the Complaint fails to allege plausibly, and the declarations refute any allegation, that the individuals at issue participated in Yeshaya as agents of their universities. *See supra* Pt. II. Moreover, there is no well-pleaded allegation that any professor or university employee purported to act on behalf of a university when taking actions in relation to Yeshaya. The various declarations before the Court show that the professors did *not* act on the universities' behalf.

*Third*, as ratification is a means of granting retroactive authority to an agent, the doctrine requires that the principal "ha[ve] knowledge of all material facts." *Bidonthecity.com LLC* v. *Halverston Holdings Ltd.*, 2014 WL 1331046, at *4 (S.D.N.Y. Mar. 31, 2014); *accord* Restatement of the Law of Agency (Third) § 4.06 cmt. b. Here, the Trustee has not alleged that anyone at the universities knew the facts regarding the alleged agents' particular roles at Yeshaya or that their alleged agents were involved in conduct that had a U.S. connection.

**POINT IV.    EVEN IF ANY DEFENDANT HAD SUFFICIENT CONTACTS WITH THE UNITED STATES, THE EXERCISE OF JURISDICTION WOULD BE UNREASONABLE.**

Given that minimum contacts are lacking, the Court does not have to determine whether the exercise of jurisdiction would be "reasonable" here.  *See, e.g.*, *AmTrust Fin. Servs., Inc.* v. *Lacchini*, 260 F. Supp. 3d 316, 334 (S.D.N.Y. 2017).  But in any case, the Trustee would fail that test as well.  Under the "sliding scale" adopted by the Second Circuit, the weaker the connection of the defendant with the forum, the greater the importance of the "reasonableness" test. *Met. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

This Court evaluates five factors in determining whether jurisdiction is reasonable:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Picard* v. *Estate (Succession) of Igoin*, 525 B.R. 871, 880-81 (Bankr. S.D.N.Y. 2015); *accord Asahi Metal Indus. Co.* v. *Superior Ct.*, 480 U.S. 102, 113 (1987).

Those factors weigh against the exercise of jurisdiction.  *First*, the defendants are being asked to defend this suit some 5700 miles from home.  The Supreme Court has held that such a burden is "severe," and that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Asahi*, 480 U.S. at 114.  Moreover, because many of the witnesses are retired and elderly (a problem exacerbated by the Trustee's long delay in bringing this action), the burden of defending here is all the heavier.

*Second*, although this Court would ordinarily have an interest in adjudicating avoidance and recovery actions brought by the Trustee, that interest evaporates when the Trustee brought

suit, six years ago, in a different forum (Israel) seeking the same recovery and more.  This forum

has no interest in allowing a plaintiff to bring a duplicative action.  To the contrary, federal

courts in New York routinely dismiss complaints against the same defendants in favor of cases

filed first in a different forum.  *See, e.g.*, *Burke* v. *Bimbo Bakeries USA, Inc.*, 2019 WL 6068038,

at *2 (S.D.N.Y. Nov. 15, 2019).

 *Third*, the Trustee's own conduct shows that he believes he can obtain relief in Israel.

The Trustee has been litigating intensely in Israel for six years.  The Trustee has taken broad

discovery in Israel, and all parties have made extensive submissions to the Israeli court.  The

Trustee is also seeking relief in Israel that is broader than the relief sought in New York.  In

Israel, the Trustee has sought to recover transfers going back to 1988 or earlier.  Ex. 1 ¶¶ 92,

104, 113, 120, 214.

 *Fourth*, the controversy will be "most efficient[ly]" resolved in Israel.  "In evaluating this

factor, courts generally consider where witnesses and evidence are likely to be located."

*Robertson-Ceco*, 84 F.3d at 574.  That is indisputably Israel, where all the defendants and

witnesses (including Yair Green) are based.

 *Fifth*, to the extent this suit threatens to erode social policies, it harms Israel's own

sovereign interest in adjudicating disputes arising out of its domestic transfers.  Israel has the

paramount interest in resolving a dispute regarding (in the Trustee's words) "transfers of funds

that were made in Israel, received in Israel among parties incorporated and residing in Israel,

according to contracts (whether written or otherwise, whether void or voidable) that were entered

in Israel, that are governed – to best knowledge, by Israeli law." Ex. 1 ¶ 217.[21]

**POINT V.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE
A CLAIM, BECAUSE THE TRUSTEE CANNOT PLEAD THAT THE
INITIAL TRANSFERS HAVE BEEN AVOIDED.**

Although the Complaint must be dismissed on threshold jurisdictional grounds, it also

fails to state a claim.  Each of the six counts of the Complaint seeks recovery of transfers under

section 550(a) of the Bankruptcy Code.  As the Second Circuit recently explained, section 550(a)

has two elements:  "that the transfer was avoided, and that the defendant is an initial or

subsequent transferee."  *Picard* v. *Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12

F.4th 171, 197 (2d Cir. 2021), *petition for cert. filed*, No. 21-1059 (U.S. Jan. 27, 2022).  As a

result, "before Picard can recover the funds . . . he must first avoid BLMIS's transfers."  *Id.* at

181.

In the Complaint, the Trustee asserts that the transfers were "avoided" solely on the

ground that Yeshaya consented to a judgment that includes a provision stating that the transfers

were "avoided."  (*See* ¶ 304 ("Pursuant to the settlement, the Initial Transfers were avoided . . .

as set forth in the consent judgment entered by the Bankruptcy Court on October 22, 2020.").

That allegation is insufficient, because the consent judgment cannot be used against

defendants.  Second Circuit precedent has been clear for over 70 years:  "A consent judgment

binds only the parties consenting to it," and a plaintiff's litigation against other parties "cannot be

aided by the consent judgment obtained against the original defendant."  *Raylite Elec. Corp.* v.

---

[21]  Defendants expressly reserve all other rights and remedies relating to the pendency of the
Israeli proceeding, including relief based on *forum non conveniens* or a stay of this proceeding.
Given the lack of jurisdiction, there is no need to reach those issues.

*Noma Elec. Corp.*, 170 F.2d 914, 915 (2d Cir. 1948), *abrogated in part on other grounds*,

*Chappell & Co.* v. *Frankel*, 367 F.2d 197 (2d Cir. 1966).  Without aid from the consent

judgment, the Complaint fails to state an element of the cause of action.

**A.      Section 550(a) requires a judgment of avoidance prior to seeking recovery.**

The plain meaning of section 550(a) is that the Trustee must first avoid a transfer using

an avoiding power before recovering transferred property.  Section 550(a) of the Code provides

that, "to the extent that a transfer is avoided under section [544 or 548], the trustee may recover"

from initial or subsequent transferees.  The key phrase, "is avoided," signifies the present state of

being "avoided," rather than the future possibility of becoming "avoided."  Or, as Judge

Bernstein had held, "'[a]void' is a verb that means 'to render void, or to annul, vacate, defeat,

evade, invalidate.'  It is not synonymous with 'avoidable.'  Avoidable, or 'voidable,' is an

adjective.  It describes a transaction that can be voided, but that is valid until annulled."  *In re M.*

*Fabrikant & Sons, Inc.*, 394 B.R. 721, 741 (Bankr. S.D.N.Y. 2008) (internal citations and

quotations omitted); *cf. United States* v. *Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a

verb tense is significant in construing statutes.").

The subsections that immediately follow section 550(a) confirm this understanding.  For

example, section 550(b)(1) provides a defense for subsequent transferees who take for value and

in good faith "without knowledge of the voidability of *the transfer avoided*," necessarily

distinguishing voidability and the state of being avoided.  11 U.S.C. § 550(b)(1) (emphasis

added).  Section 550(c) provides a defense for certain transferees of a transfer that "*is avoided*

under section 547(b)."  11 U.S.C. § 550(c) (emphasis added).  Section 550(f) limits the recovery

cause of action to being brought within "one year after the avoidance of the transfer on account

of which recovery under this section is sought," necessarily implying that there must be a fixed

date of "avoidance" rather than an indeterminate period of avoidability.  11 U.S.C. § 550(f).

And all of this is consistent with the title of section 550, "Liability of transferee of avoided

transfer," further indicating that section 550(a) is concerned with transfers that have actually

been avoided.  *See Bell* v. *Reno*, 218 F.3d 86, 91 (2d Cir. 2000) (Katzmann, J.) ("It is well

established that the title of a statute or section is an indication of its meaning.").[22]

Twice in the last three years, in *Madoff* cases alone, the Second Circuit has followed the

plain meaning of section 550(a) by treating prior avoidance as a prerequisite to a recovery action.

In September 2021, the Court decided *Picard* v. *Citibank*, which focused primarily on the good-

faith defense of section 550(b).  12 F.4th 171 (2d Cir. 2021).  In the course of examining the

relationship between the avoiding powers and the recovery cause of action, the Court stated that

"[s]ection 550 authorizes a trustee to recover the property transferred by the debtor to any

transferee (initial or subsequent) . . . to the extent that a transfer is avoided under [an avoiding

power].  *As a result, before Picard can recover the funds from Appellees, he must first avoid

BLMIS's transfers to Appellees*."  *Id.* at 181 (emphasis added).  The Court then reiterated that

"Section 550 authorizes a trustee to recover transfers *voided under Section 548* from initial and

subsequent transferees."  *Id.* (emphasis added)*.*  And the decision closed by delineating "the

elements a trustee must satisfy to recover transferred property: *that the transfer was avoided*, and

---

[22]  Other portions of the Bankruptcy Code similarly treat "avoided" as a present state rather than
a future possibility.  As one example among many, section 349(b)(1)(B) provides that unless
ordered otherwise, the dismissal of a bankruptcy case "reinstates — any transfer avoided under
sections [544 or 548]."  11 U.S.C. § 349(b)(1)(B).  It is impossible to "reinstate" that which has
not been undone, as in the case of a transfer that has not yet been avoided.  This is powerful
evidence that the word "avoided" in section 550(a) should be afforded its plain meaning, given
that courts do "not lightly assume that Congress silently attaches different meanings to the same
term in the same or related statutes."  *Azar* v. *Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019)
(citing *Law* v. *Siegel*, 571 U.S. 415, 422 (2014)).

that the defendant is an initial or subsequent transferee." *Id.* at 197 (citing 5 Collier on Bankruptcy ¶ 550.02 (16th ed. 2021) (emphasis added)).

The recent analysis in *Citibank* followed a similarly comprehensive treatment of avoidance and recovery in *In re Picard*, which reached the same result. 917 F.3d 85 (2d Cir. 2019). In *Picard*, the Second Circuit harmonized the roles of the avoiding powers and recovery actions by stating that "*only once a transfer is avoided may a trustee recover the underlying property.*" *Id.* at 95 (emphasis added). And it later concluded that "[s]ection 550(a) applies only 'to the extent that a transfer is avoided under section [544 or 548].'" 11 U.S.C. § 550(a). *In other words, a trustee cannot use § 550(a) to recover property unless the trustee has first avoided a transfer under one of these provisions.*" *Id.* at 97 (emphasis added).

These two recent Second Circuit decisions are also consistent with the Supreme Court's recent decision in *Merit Management Group, LP* v. *FTI Consulting, Inc.*, 138 S. Ct. 883, 889 (2018). There, the Supreme Court described the statutory background as follows: "*If a transfer is avoided*, § 550 identifies the parties from whom the trustee may recover either the transferred property or the value of that property to return to the bankruptcy estate." *Id.* (emphasis added).

Lower courts have followed. In *In re JVJ Pharmacy, Inc.*, the district court held that the relevant "[t]ransfers *must be avoided under section 548(a)(1) before the Trustee can invoke section 550 to seek recovery.*" 630 B.R. 388, 401 (S.D.N.Y. 2021) (citing *Picard*, 917 F.3d at 98) (emphasis added). Similarly, Judge Wiles has held that "section 550 makes clear that a trustee may only recover transfers from subsequent transferees if the initial transfer itself 'is avoided.'" *In re Direct Access Partners, LLC*, 602 B.R. 495, 518 (Bankr. S.D.N.Y. 2019).

The cases thus confirm what the text provides. Indeed, there would be no reason to belabor the point if not for the district court's decision in *Securities Investor Protection Corp.* v.

*Bernard L. Madoff Inv. Securities LLC*, 501 B.R. 26 (S.D.N.Y. 2013) ("*Consolidated § 550 Ruling*"). In the *Consolidated § 550 Ruling*, the district court concluded "that section 550(a)'s limitation on the Trustee's recovery of transfers 'to the extent that a transfer is avoided' requires the Trustee to show that a given transfer *is avoidable* and *does not require an actual judgment of avoidance*." *Id.* at 37 (emphases added). That interpretation was based on the district court's view that "the language of section 550(a) is ambiguous" and is not correctly understood as a "temporal limitation requiring prior avoidance." *Id.* at 31.

The *Consolidated § 550 Ruling* cannot be reconciled either with the text of the statute — which says "avoided" rather than "avoidable" — or with the subsequent decisions of both the Second Circuit and the Supreme Court. *Compare, e.g.*, *Citibank*, 12 F.4th at 181 ("before Picard can recover the funds from Appellees, he must first avoid BLMIS's transfers to Appellees."), *with Consolidated § 550 Ruling*, 501 B.R. at 31 ("not a temporal limitation requiring prior avoidance"). And while the Trustee may argue that the Second Circuit's statements can be disregarded as dicta, that is not persuasive. "[A]ppellate courts[] have an entirely legitimate function of elucidating principles of law, fairly raised by litigation, even if the resulting pronouncements are not absolutely required for the precise decision reached." *Columbia Broad. Sys.* v. *Am. Soc. of Composers, Authors & Publishers*, 620 F.2d 930, 935 (2d Cir.1980). Such guidance normally is to be followed. *United States* v. *Bell*, 524 F.2d 202, 206 (2d Cir. 1975); *accord Cornwell* v. *Credit Suisse Grp.*, 729 F. Supp. 2d 620, 625 (S.D.N.Y. 2010). The Second Circuit and the Supreme Court have now spoken: prior avoidance is an element of section 550(a).

In any event, as a decision of a district court, the *Consolidated § 550 Ruling* is at most persuasive authority — and no longer persuasive here given subsequent decisions. *See In re*

35

*Lyondell Chem. Co.*, 503 B.R. 348, 374 n.127 (Bankr. S.D.N.Y. 2014) ("district court decisions are not binding on bankruptcy courts except with respect to any district court mandate pursuant to an appeal"), *abrogated on other grounds*, *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019). Nor is there any law-of-the-case effect. "The defining feature of the law-of-the-case doctrine is that it applies only within the same case." *Edmonds* v. *Smith*, 922 F.3d 737, 739 (6th Cir. 2019). Or, put another way, "[n]othing about the law-of-the-case doctrine suggests that it can apply across cases to bind new parties, when generally not even res judicata—the doctrine actually charged to determine the preclusive effects of judgments—can do that." *Id.* at 740; *see also In re Staff Mortg. & Inv. Corp.*, 625 F.2d 281, 282-83 (9th Cir. 1980).

Finally, to avoid misunderstanding, it is important to make clear what defendants are *not* arguing: We do not contend that there is any requirement to avoid transfers against initial transferees prior to *suing* subsequent transferees. The position is simpler: A trustee is free to seek avoidance of a transfer against any transferee (initial or subsequent or both at the same time), but can only enforce a resulting determination of avoidance as permitted under principles of judgment preclusion and due process. That reading is supported by the plain text of the Bankruptcy Code. Sections 544 and 548 do not distinguish between initial transferees and subsequent transferees. Rather, it is section 550, not section 544 or 548, that "focuses on the transferee," *Citibank*, 12 F.4th at 181, and section 550 does not require a suit against an initial transferee as a prerequisite to a suit against a subsequent transferee.

## B.     The Consent Judgment cannot satisfy the Trustee's burden to plead that the initial transfers have been avoided.

Because prior avoidance of a transfer is an element of a section 550(a) cause of action, the Complaint must adequately plead that element. It does not.

Few rules are as fundamental as the rule that judgments cannot be used against non-parties. It is axiomatic that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith* v. *Bayer Corp.*, 564 U.S. 299, 312-13 (2011).[23] As the Supreme Court has explained, "the importance of this rule and the narrowness of its exceptions go hand in hand." *Id*. Similarly, the Second Circuit has reaffirmed "[t]he general principle in Anglo-American jurisprudence [] 'that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Briscoe* v. *City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011) (quoting *Hansberry* v. *Lee*, 311 U.S. 32, 40 (1940)); *accord Taylor* v. *Sturgell*, 553 U.S. at 893.

This policy against non-party preclusion is particularly powerful in the case of consent judgments. The Second Circuit has held for almost a century that "[a] judgment entered by consent and stipulation is binding upon the consenting parties only." *Madison Square Garden Boxing, Inc.* v. *Shavers*, 562 F.2d 141, 143 (2d Cir. 1977) (citing *Raylite Elec. Corp.* v. *Noma Elec. Corp.*, 170 F.2d 914, 915 (2d Cir. 1948)); *accord Tourangeau* v. *Uniroyal, Inc.*, 101 F.3d 300, 306 (2d Cir. 1996).

The Trustee in this case procured, and is now trying to use, a consent judgment in exactly the way the law prohibits. If the Trustee had wanted to settle with Yeshaya and others merely to obtain a monetary recovery, he did not need a consent judgment. The reason the Trustee wanted a consent judgment containing the magic words — the transfers are "avoided" — is to use that judgment offensively as a predicate to sue the current defendants under section 550(a). Yeshaya

---

[23] The recognized exceptions are categorized in *Taylor* v. *Sturgell*, 553 U.S. 880, 893-95 (2008). None of them apply here.

and other prior defendants had no incentive to resist the consent judgment: so long as their liability was being resolved, it would not have mattered to them whether their settlement involved a consent judgment, voluntary dismissal, or otherwise.

The Trustee's gambit, however, is at odds with the controlling law set forth above. Without serving and joining defendants, the Trustee is barred from using a consent judgment, or anything that occurred in the *Magnify* litigation, to affect or alter defendants' rights. *Raylite*, 170 F.2d at 915 (a plaintiff's litigation against other parties "cannot be aided by the consent judgment obtained against the original defendant"); *accord Martin* v. *Wilks*, 490 U.S. 755, 763 (1989) ("'Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights.'") (quoting *Chase Nat'l Bank* v. *Norwalk*, 291 U.S. 431, 441 (1934) (Brandeis, J.)). And without the consent judgment, the Trustee has failed to plead an element of his claim under section 550(a), namely that BLMIS's transfers were "avoided."

## C.    Nothing in Section 550 overrides the rule against non-party preclusion.

The Trustee cannot dispute that he is attempting to use a consent judgment offensively against a non-party. He will likely argue that section 550(a) somehow authorizes that result.

The burden of persuasion on that argument is great. The rule against using judgments against non-parties is fundamental. Any exceptions implicate the "deep-rooted historic tradition that everyone should have his own day in court." *Taylor* v. *Sturgell*, 553 U.S. at 892-93 (internal quotation omitted). Out of respect to this historic tradition and the requirements of due process, courts do not lightly find that Congress intended to alter such rules. As the Supreme Court has explained, "Congress is understood to legislate against a background of common-law adjudicatory principles Thus, where a common-law principle is well established, as are the rules

of preclusion, the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Federal Sav. & Loan Ass'n* v. *Solimino*, 501 U.S. 104, 108 (1991); *accord Minerva Surgical, Inc.* v. *Hologic, Inc.*, 141 S. Ct. 2298, 2307 (2021). "In order to abrogate a common-law principle," such as a rule of preclusion, "the statute must 'speak directly' to the question addressed by the common law." *United States* v. *Texas*, 507 U.S. 529, 534 (1993); *accord United States* v. *Nucci*, 364 F.3d 419, 423 (2d Cir. 2004).

There is nothing in the text of section 550, let alone a "direct" statement, to support a ruling that Congress intended to depart from the common-law rule against non-party preclusion.

Notably, at least one decision has applied the rule against non-party preclusion to a section 550 action. In *In re Jones Storage & Moving, Inc.*, the bankruptcy court had a case where one defendant in a section 547 preference case stipulated to a consent judgment with the trustee. 2005 WL 2590385, at *1 (Bankr. D. Kan. Apr. 14, 2005). The trustee then used the consent judgment to pursue litigation against a separate transferee, and was met with a motion to dismiss on the basis that the consent judgment could not be used under principles of *res judicata*. Now-Chief Bankruptcy Judge Somers granted the motion. Just as we urge, the court recognized that a prior judgment under an avoiding power is an element of section 550. *Id.* at *2. It then found that there was no applicable exception to *res judicata* that would permit the consent judgment to be used in order to satisfy this element. *Id.* at *4. And it decided that there was "nothing in section 547 which defines the proper defendant in a preference action," such that the avoidance action could somehow only have been brought against an initial transferee. *Id.* at *6. Thus, the court concluded that the "consent judgment . . . is not binding on the Bank," and that "it is too late for the Trustee to commence an action under section 547 against the Bank, which

can assert its own statute of limitations defense to the preference action." *Id.* at *7.

Accordingly, the complaint was dismissed for failure to state a claim.[24]

**D.      The defect in the Section 550(a) claims cannot be cured by amendment.**

A solution to the Trustee's inability to use the consent judgment would have been for him

to add an avoidance action under section 544 or 548 to the Complaint.  Rule 18(b) of the Federal

Rules of Civil Procedure (made applicable to this proceeding by Fed. R. Bankr. P. 7018)

provides that "[a] party may join two claims even though one of them is contingent on the

disposition of the other; but the court may grant relief only in accordance with the parties'

relative substantive rights.  In particular, a plaintiff may state a claim for money and a claim to

set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment

for the money."  Fed. R. Civ. P. 18(b).  This is exactly the sort of situation contemplated by

Rule 18(b), as success on the recovery action is contingent on success in the avoidance action.

Here, however, any attempt by the Trustee to assert an avoidance cause of action against

the defendants would be time-barred.  11 U.S.C. § 546(a) requires that an avoidance action be

commenced not later than two years after the commencement of the bankruptcy case.  The two-

year § 546(a) period expired more than *11 years* ago, in December 2010.  Any amendment to

assert an avoidance claim would therefore be futile.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed under Federal Rule of

Civil Procedure 12(b)(2) — and otherwise Rule 12(b)(6) — with prejudice.

---

[24]  The Trustee may try to distinguish *Jones Storage* on the basis that the avoidance action
against the initial defendant in that case, which resulted in the consent judgment, was itself
untimely.  But nothing in the reasoning of *Jones Storage* turned on that point.

February 10, 2022

By: /s/ Emil A. Kleinhaus
    Emil A. Kleinhaus
    Michael H. Cassel
    WACHTELL, LIPTON, ROSEN & KATZ
    51 West 52nd Street
    New York, NY  10019
    (212) 403-1000
    EAKleinhaus@wlrk.com
    MHCassel@wlrk.com

*Attorneys for Defendants*