**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                         Plaintiff-Applicant,<br>vs.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                         Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                         Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                         Plaintiff,<br>v.<br><br>THE HEBREW UNIVERSITY OF JERUSALEM, YISSUM RESEARCH DEVELOPMENT COMPANY OF THE HEBREW UNIVERSITY OF JERUSALEM LTD., BEN-GURION UNIVERSITY OF THE NEGEV, B.G. NEGEV TECHNOLOGIES AND APPLICATIONS LTD., THE WEIZMANN INSTITUTE OF SCIENCE, and BAR ILAN UNIVERSITY,<br><br>                         Defendants. | Adv. Pro. No. 21-01190 (CGM) |

**SUPPLEMENTAL DECLARATION OF PROFESSOR AMIR N. LICHT**

I, Amir N. Licht, declare under penalty of perjury under the laws of the United States of America, as follows:

I submit this supplemental declaration at the request of Wachtell, Lipton, Rosen & Katz, counsel to defendants in the above-captioned proceeding. I previously submitted a declaration in these proceedings, dated February 10, 2022, in which I provided my opinions

as an expert on Israeli law regarding certain matters (the "Declaration" or "Decl."). The purpose of this supplemental declaration is to provide brief responses to certain statements made in the declaration submitted by Retired Judge Varda Alshech, dated June 12, 2022 (the "Alshech Declaration").

## 1. Introduction[1]

1. Having carefully read the Alchech Declaration, I observe that it largely fails to address, and in any case does not refute, the legal analysis and conclusions set forth in my Declaration. In particular:

    a. The Alshech Declaration asserts that, under Israeli law, Yair Green's conduct at Yeshaya should be attributed to the three universities where Mr. Green acted a board member. But the declaration does not offer analysis to support that conclusion. The conclusion is asserted rather than substantiated. As set forth in my Declaration, Mr. Green's status as a member of certain universities' boards of governors does not provide a legal basis under Israeli law to attribute his actions or knowledge to any university. Indeed, the Israeli Supreme Court has stated expressly that a "single director, as opposed to the board of directors as a 'multiple-person organ' consisting of several directors," is generally not authorized to act on behalf of an organization (*Z. Bechor*).

    b. The Alshech Declaration likewise asserts, but does not support, the conclusion that the conduct of professors as members of Yeshaya can be attributed to the universities. In presenting this conclusion, the Alshech Declaration relies on irrelevant legal concepts (specifically in regard to "public-private entities"),

---

1. Terms not defined have the same meanings as in the Declaration.

2

draws irrelevant distinctions (specifically, between criminal law and civil law), and makes a number of inaccurate statements. The Alshech Declaration also refers to judicial precedents discussed in my Declaration — specifically, *Boublil* and *Gottesdinner* — while avoiding the key holdings and reasoning of those cases, which are at odds with the conclusions of the Alshech Declaration.

**2. The Altech Declaration provides unsupported opinions.**

2.      My Declaration addresses the legal theories, or bases, that Israeli law employs for attributing knowledge and conduct of individual persons to a corporation in order to establish corporate liability. Briefly, two theories could serve for this purpose – vicarious liability according to the Israeli Agency Law, and organ theory in Israeli corporate law. As my Declaration shows in detail, vicarious liability has not been abolished, as it serves a useful role in non-corporate settings. However, in all corporate settings, organ theory has superseded it, first through Supreme Court binding precedent and, second, through legislative amendments. Decl. ¶¶ 22-27.

3.      Again briefly, in order to establish liability based on vicarious liability, one has to show, first, that the pertinent individual was an agent of the pertinent principal, that the individual was liable for some legal infringement in light of his conduct and knowledge (where applicable), and that it is not inappropriate to ascribe that liability to the principal. Under organ theory, one has to show, first, that the pertinent individual was an organ of the pertinent corporation such that his conduct and knowledge (where applicable) are ascribed to the corporation and that it is not inappropriate to ascribe liability for the specific conduct at issue to the corporation. Decl. ¶¶. 19-21, 28-37.

4.      Crucially, therefore, under either theory, one must first establish that the pertinent individual is a relevant "player" – namely, that he was an agent under agency law rules or an organ under organ theory rules in corporate law. As detailed in my Declaration, to

3

establish the latter element, Israeli organ theory implements the hierarchical test and the functional test. If the relevant individual is neither an agent nor an organ of a corporation there simply cannot be corporate liability. Decl. ¶¶. 28-37.

5.   Against this backdrop, one is struck to find that the Alshech Declaration — rather than conducting the analysis summarized above — in large measure *asserts the conclusions* that it seeks to support. For example, paragraph 35 of the Alshech Declaration states (italics added):

> 35. It should be noted that the Companies Law not only refers to acts performed by the organ and fully imputes them to acts of the company, but also further provides and imputes the intentions of the organ as the intentions of the company itself. The essence is simple – imputing not only the act but also the intention. *In this case, when the Defendants' organs acted on their behalf to transfer funds from BLMIS and/or from the Yeshaya Association to the Defendants, the Law imputes the actions and intentions of these organs as the actions and intentions of each of the Defendants themselves*. Furthermore, section 53 of the Companies Law provides that a company is liable in tort, directly, for any wrongdoing committed by its organ, as follows: …

6.   The fallacy of "begging the question" is apparent in the above excerpt. The paragraph begins and ends with abstract restatements of the law. Between them is a statement that purports to apply the law "in this case". But the declaration assumes the conclusion that it is must substantitate – namely, that unnamed individuals (supposedly, the Professors and Yair Green) were the Universities' organs and that the former acted on behalf of the latter. The analysis glosses over the key issues, namely whether there was authorization sufficient to create agency and how exactly were certain individuals fulfilling concrete university functions, in their work outside the university at the Yeshaya organization, such that the hierarchical and functional tests are satisfied.

7.   To determine whether Israeli law would ascribe the conduct and knowledge of the Professors or of Green to the Universities with regard to Yeshaya activities, one must address in detail the legal requirements for creating agency or recognizing a particular individual as an organ with regard to that particular setting, as my Declaration does. The crucial test in the present case, for purposes of Israeli law, is the functional test prong of organ theory.

However, the Alshech Declaration never grapples with that issue – namely, what function of each university as its organ did each individual carry out in his or her activities in Yeshaya. (The reason is simple: none of them did and hence they were not organs for present purposes, as explained in my Declaration.)[2]

8.  The Alshech Declaration's question-begging — or assuming the conclusion it sets out to support — is perhaps most pronounced in the treatment of Yair Green.  The Alshech Declaration asserts several times that Mr. Green was an organ of the three universities where he was a board member.  See, e.g. paras. 8, 28.  But in making that assertion, the declaration glosses over the clear distinction between an individual board member, who has no authority or capacity to bind a university, and a "group organ" such as a board of directors.  Decl. ¶ 39.  As the Supreme Court of Israel stated in *Z. Bechor*, a "single director, as opposed to the board of directors as a 'multiple-person organ' consisting of several directors, is usually not authorized, by dint of his status, to take action on behalf of the company."  *Id*.  ¶¶ 39-40, 53-57.  Instead, a single director can bind a company only when he or she is given "specific authorization" to do so (*id*.  ¶¶ 39-40), which I understand is not alleged as to Yair Green.  Nothing in the Alshech Declaration provides any basis to depart from the clear guidance from the Israeli Supreme Court.

9.  The Alshech Declaration employs a similar approach with respect to the concept of "ratification."  As shown in my declaration, ratification under Israeli law requires that the purported agent holds himself or herself out as an organ of the principal.  Here, however, I am not aware of any facts indicating that the Professors, when they participated at Yeshaya, held themselves out as organs of the University defendants. Decl. ¶¶ 68-72.  The Alsech Declaration does not offer citations or analysis to refute that conclusion.  Instead, at para. 57, the Alsech

---

[2] I have identified a number of instances where the Alsech Declaration largely assumes the conclusion it sets out to prove.  See sections 25, 26, 29, 30, 31, 35, 36, 42, 43, 47, 49, 50, 53, 57, 58, 59, 67, 70, 72, 80, 81, 84, 87, 90, 96.

5

Declaration asserts: "[o]n this matter the Defendants' conduct in real time shows there was prior authorization and certainly ex post facto ratification and acceptance of the acts of their agents, the organs, operating on their behalf in the Yeshaya Association." No factual support is given for the conclusion that the universities provided "prior authorization."[3] And no facts are presented to show that any professor held himself or herself out as an organ.

10. The Alshech Declaration is again conclusory on the issue of veil piercing. At para. 93, the declaration appears to criticize my description of veil piercing doctrine in Israeli law: "Prof. Licht contends that the piercing of the corporate veil should not be permitted between a company and a subsidiary without the corporate structure having been abused to harm creditors. Prof. Licht is mistaken in this as well." However, at para. 97, the Alshech Declation itself quotes from the recent *Agrexco* decision as follows: "The purpose of piercing the corporate veil is to prevent abuse of the separate legal personality of the company, and to protect external creditors against improper conduct by the company and its shareholders …" In between, at para. 96, again there is a conclusory assertion about the issue at bar: "The main Defendants, by means of their organs and agents in the Yeshaya Association that withdrew its funds from BLMIS, decided on the transfer of funds as they saw fit, whether to themselves or the companies under their control." But that conclusion is again not supported by cited evidence or analysis; indeed, the judicial decision quoted by the Alshech Declation expressly requires "abuse" and "improper conduct" for veil-piercing, rather than just ownership or control.

3. **Irrelevant focus on "hybrid entities"**

11. The Alshech Declaration makes several references to the Universities as "hybrid private-public entities". For example, para. 28 of her Declaration states:

---

[3] Declarations submitted by multiple professors state that there was no such prior authorization to participate in Yeshaya.

6

28. The above comments are added to the Israeli legal norms under which public, or at least hybrid private-public, entities such as the Defendants are required to act with enhanced good faith and special fair dealing. Such was held for example, in Civ.A. 3979/01 **Isco Building and Properties Ltd. v. Israel Land Administration**, ILR 57(5) 423 (2003), and in HCJ 4289/00 **Abramowitz Heddy et al. v. Prime Minister of Israel** (Nevo Database, December 10, 2009). The duty to act with enhanced good faith and special fair dealing enhances both the presumption of Defendants' knowledge about the source of the funds they received as well as their responsibility for the actions of their agents where the funds are turned out to not be legitimate.[4]

12. With respect, the concept of "hybrid entities" is completely irrelevant for present purposes. The doctrine of hybrid entities in Israeli public law holds that corporations incorporated under private law statutes – e.g., as for-profit companies under the Companies Law or as non-profit associations under the Associations Law – could nonetheless be subject to public law obligations with regard to public functions that they carry out. In the seminal decision in *Kastenbaum*, the Supreme Court held that a burial society association's freedom of contract is limited by basic public law obligations of fairness, equality, reasonableness, honesty, and good faith, such that its burial contracts cannot prohibit non-Hebrew inscriptions on the tombstone.[5]

13. Although some cases suggest that universities would be deemed hybrid entities with regard to their public functions,[6] that is entirely beside the present point. There is nothing in the possible status of the Universities as public-private hybrid entities that somehow affects the working of organ theory or Israeli agency law for that matter. As detailed in my Declaration, organ theory applies equally to corporate organizations of all kinds, including universities. As it happens, in the Supreme Court's decision in *Gottesdinner*, Justice Barak-Erez applied organ theory with regard to the state itself – the quintessential public body

---

[4] I have identified at least seven places that Professor Alshech references "hybrid public-private entities." See sections 18, 22, 26, 28, 32, 49, 76 in Alshech's Declaration.

[5] Civ.App. 294/91 Hevra Kadisha GHSE "Kehilat Yerushalayim" v. Kastenbaum, 46(2) P.D. 464 (1992).

[6] *See*, e.g., A.A.M. 7151/04 HaTechnion – Machon Technologi LeIsrael v. Datz, 59(6) P.D. 433 (2005); HCJ 844/04 Universitat Haifa v. Oz (14.5.2008); HCJ 7793/05 Universitat Bar-Ilan v. Beit HaDin HaArtzi LeAvoda (31/1/2011).

7

corporate. Simply put, for purposes of ascribing individuals' conduct and knowledge to a corporation, a corporation is a corporation.

### 4. Irrelevant distinction between civil law and criminal law

14. In a similar vein, yet similarly in vain, the Alshech Declaration repeatedly invokes a distinction between civil law and criminal law. For example, para. 61 of the Declaration states:

> 61. First, Prof. Licht conflates criminal and civil matters in relation to corporations, their vicarious liability, the knowledge imputed to them and so forth. It is a commonplace and well-known rule in Israeli law, and probably in most of the world, that because criminal law deals with the law of persons and civil law with monetary laws, in criminal matters the burden of proving the components of the action is "heavier". This is true when it comes to the heavier burden of evidence at the time of a criminal indictment compared with an "ordinary" civil claim. And likewise true when it comes to the requirement that the language of the criminal law be precise and clear and absolutely defines the details of the offense in question, etc.

15. The purpose of drawing this distinction is not clear. The implication appears to be that applying organ theory in a civil claim is somehow easier than in a criminal case because criminal law is more restrictive in finding liability.[7]

16. With respect, the distinction between criminal and civil law does not matter in this context. Whatever differences exist between criminal and civil law with regard to procedural and evidentiary rules, none is relevant to the substantive doctrine of organ theory. As detailed in my Declaration, Sections 46-47 of the Companies Law apply seamlessly to companies in both contexts. Crucially, the Supreme Court in *Modi'im* stated that organ theory applies equally in both contexts:

> Organ theory is premised on the assumption that there is a legal norm that refers to the corporation. According to it certain outcomes emanate (whether they deal with imposing liability, whether they deal with an exemption from or a defense against liability, or whether they deal with another matter), if human qualities are formed in the corporation, such as a criminal thought (knowledge, intent), an active conduct and

---

[7] I have identified several references to the distinction between criminal and civil law. See sections 40, 44, 48, 55, 61, 62, 63, 66, 70, 71, 73, 75, 86, 88, 90 in the Alshech Declaration.

8

so forth. Thus, the corporation could be liable (civilly, criminally, or otherwise) even if the organ himself is not liable.[8]

17. The above excerpt confirms the consistent application of organ theory in civil and criminal contexts. It is quoted at para. 25 of my Declaration. The Alshech Declaration quotes the same holding at para. 68 of it.

### 5. Restating general principles while avoiding key holdings

18. The Alshech Declaration repeatedly restates the broad principles of organ theory, usually by quoting legal sources and occasionally by paraphrasing.[9] But the basic content of organ theory is not at the core of the dispute. What matters is whether, when properly applied, organ theory would lead to attributing the conduct and knowledge of the Professors and of Yair Green with regard to their actions in Yeshaya to the Universities. As I show in my Declaration, the key test in this respect is the functional test and applying it to the circumstances leads to the conclusion that those individuals were not performing any function of the Universities when they were acting in Yeshaya – they were not university organs there and, hence, there is no basis for attribution. Yair Green in particular also was not an organ because, as explained (see paragraph 8 above), he was no more than an individual member of a "group organ."

19. My Declaration explained the applicable legal test and reviewed key case law applying the test. The Alshech Declaration — while referencing some of the cases I cited — ignores their actual holdings. Paras. 85-87 of the Alshech Declaration deal with *Gottesdinner*. But the declaration glosses over the critical point in that decision — namely, that when the functional test is properly applied, a person can, on the one hand, be an organ of a corporation for certain functions for which he or she is authorized but, at the same time, not be deemed an

---

[8] *Modi'im*, at p. 378.

[9] I have identified at least nineteen such instances in total with regard to organ theory. See sections 35, 37, 38, 39, 41, 42, 45, 48, 54, 55, 67, 68, 71, 74, 77, 78, 79, 92 in the Alshech Declaration.

9

organ when he or she does not fulfill that function. Accordingly, in the case at bar, a university professor can, on the one hand, be an organ of the university for certain functions (teaching and research at the university) but not for others (including participation in a third-party non-profit such as Yeshaya).

20. Paras. 88-92 of the Alshech Declaration deal with *Boublil*. The Alshech Declaration ignores the most salient points in that decision, too — namely, that a person who engages in private activities is not deemed an organ and that a single member of a "group organ" like a board (the presidency there) cannot be an organ, such that no attribution will ensue. (The elements of *Boublil* raised in the Alshech Declaration are compatible with those points and only support them.) The import of *Boubil* is that university professors can participate in organizations such as Yeshaya in a private capacity, without being university organs. Individual board member, moreover, are likewise not organs absent specific authorization.

21. *Boubil* (along with *Buchbinder* and *Z. Bechor*) also establishes that a single member of a board, such as Yair Green, is <u>not</u> an organ of the corporation; rather, only the board as a whole, qua board, is a group organ or multiple-person organ. The Alshech Declaration does not address that critical aspect of *Boubil*, which (along with other cases) defeats any argument that Yair Green was an organ of the universities on whose boards he sat.

6. <u>Significantly inaccurate statements</u>

22. The Alshech Declaration is peppered with statements that are inaccurate to various degrees. It is not the purpose of this declaration to address every inaccuracy in detail. I will, however, touch upon two instances in which Alshech's Declaration makes inaccurate statements about my opinion.

23. At para. 13, the Alshech Declaration quotes from a 2004 article of mine, following which it states:

> 15. Therefore, according to case law and various scholars, including Prof. Licht himself, corporate law in Israel derives inspiration and assumes the norms customary in the United States. In this context, and in our case, there is no contradiction between the Israeli law and the American law.
>
> 16. Similarly, there is no contradiction between Israeli and American agency laws applicable to imputation of knowledge in this case.

24. Bearing in mind that I do not here opine on U.S. law, this is an inaccurate description of Israeli law and of my position on Israeli law. As detailed in my Declaration, Israeli courts in recent years have been attempting to draw inspiration from U.S. (mainly Delaware) corporate law. At the same time, there were also notable movements away from U.S. law. For example, in the seminal decision in *Berdichev*, the Supreme Court overruled prior doctrine that, based on U.S. law, imposed on controlling shareholders a fiduciary duty of loyalty, and replaced it with a different, weaker duty.[10] Likewise, the recent Law of Insolvency and Economic Recovery, 2018 reflects a shift back toward U.K. law.

25. Be that as it may, there is no basis for the statements at paras. 15-16 quoted above and certainly not for the notion that I agree with them. As my Declaration demonstrates, Israeli law on attributing individuals' conduct and knowledge to corporations is not the same as U.S. law. While I understand the universities have submitted that U.S. law also supports their position if it were to apply, that does not mean the legal analyses are the same. In fact the "organ theory" approach used in Israeli law is different from the agency doctrine used in U.S. law.

26. At para. 20, the Alshech Declaration states:

> 20. Prof. Licht referred briefly to agency laws in Israel (on pages 27-30 of the Licht Declaration) only to determine that the law in Israel does not recognize the ratification of acts of the Defendants' senior Personnel, because they (the Personnel) did not clearly present themselves as agents of the Defendants. According to Prof. Licht, under the law in Israel, when a person does not purport to present himself as an agent, there cannot be an act of ratification, and no agency relationship will be created. This is because, according to Prof. Licht, ratification requires the agent to present himself as being an agent or as an organ of the principal, and that the principal, after having learned about the agent's acts, will choose to ratify the agency (Id. at section

---

[10] Civ.App. 7657/17 Berdichev v. Feuchwanger (18.6.2020).

11

71). It seems that Prof. Licht's position is that the agent must actively present himself as agent of the principal so that the agency is satisfied and that the principal, after having learned of the agent's acts, has to actively ratify his acts. I believe Prof. Licht to be mistaken on this matter. As I shall explain below, Israeli law recognizes agency by conduct, even if it is not disclosed and explicit, and ratification of the agency by conduct. This is stated explicitly in the plain wording of the law.

27. From reading this text, which repeatedly refers to "Prof. Licht's position," one could get the impression that the points made in my Declaration represent solely my personal views. As it happens and is clearly indicated in my Declaration, in making those points about ratification under Israeli law — in particular the point that ratification requires an individual to hold himself or herself out as an agent — I was standing on the shoulders of a giant: the views presented there are drawn from Aharon Barak in his *opus magnum* on the Agency Law. Decl. ¶ 69 (quoting Aharon Barak's statement that ratification can apply when one "impersonates an agent").

28. Finally, I understand the Trustee has noted that, in Exhibit B to my Declaration, I did not list all the declarations submitted by university professors as documents I had reviewed. I have reviewed those declarations, including the declarations of professors Ullman, Cohen, Rager and Gutfreund. Those declarations do not change my opinions.

Executed on September 14, 2022
Jerusalem, Israel

_____
Professor Amir N. Licht