**Not for Publication**

```
--------------------------------------------------------- x
```
*In re:*
                         :

Bernard L. Madoff Investment Securities
LLC,

                         :    Chapter SIPA
                         :    Case No. 08-01789
                         :

                        *Debtor(s).*

```
---------------------------------------------x
```
IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,
                                             Adv. No. 12-01677

v.

SOCIETE GENERALE PRIVATE
BANKING (SUISSE) S.A.
(f/k/a SG Private Banking Suisse S.A.),
et al.

```
-------------------------------------------x
```

## Memorandum Decision Memorializing Oral Ruling
## upon Record of the September 19, 2022 Hearing

## BACKGROUND:

On April 29, 2022, the Defendants, OFI MGA Alpha Palmares ("OFI"), Oval Palmares

Europlus ("Palmares") and UMR Select Alternatif ("UMR") (collectively, the "OFI Funds" or

"Defendants"), filed a motion to dismiss.   The first argument is that the OFI Funds have no legal

existence and lack the capacity to be sued.  They also argue that the Court lacks personal

jurisdiction over the OFI Finds and that the safe harbor applied to the transfers. The Trustee

opposed the motion.  The Court held oral argument on the issue of whether the OFI Funds have

capacity to be sued on September 19, 2022.  The parties waived oral argument on all other

issues.  *See* Stip., ECF No. 185.  The Court issued an oral ruling upon record of that hearing.

This is a memorialization of that oral ruling. The Court assumes familiarity with the background

of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re*

**Not for Publication**

*BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,

142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

<u>**SUMMARY OF THE LAW:**</u>

**Whether the OFI Funds exist?**

Rule 17 of the Federal Rules of Civil Procedure requires that an action "be prosecuted in

the name of the real party in interest." Fed. R. Civ. P. 17(a). Defendants argue that they do not

legally exist under French law. According to the motion, the Defendants are "*fonds commun de

placement*" ("FCP").

The motion to dismiss states:

> Under French law, an FCP has no legal personality. Lecuyer Dec. ¶ 15
> (citing Monetary and Financial Code, Art L. 214-8). An FCP is a co-ownership
> of financial instruments and is a unique form of investment vehicle. *Id.* at ¶ 16.
> An FCP is different from a corporation, partnership, association or other form of
> business entity. *Id.* at ¶ 17. An FCP has no officers or employees of its own. *Id.*
> at ¶ 21. An FCP is an undivided pool of assets managed exclusively by a
> management company on behalf of investors who purchase redeemable non-
> voting units in the FCP. *Id.* at ¶ 30. The investors are generally referred to as
> "unit holders." *Id.*

> An FCP is established by a contract between the management company
> and the custodian bank, both of which create the fund's regulations. *Id.* at ¶ 39
> (citing Monetary and Financial Code, Art L. 214-8-1). The purchase by an
> investor of units in an FCP constitutes acceptance by the investor of the FCP's

**Not for Publication**

regulations. *Id.* at ¶ 31 (citing Monetary and Financial Code, Art L. 214-8-1).

The assets of the FCP must be kept in a

custodian bank account which is separate and apart from management company

accounts. *Id.* at ¶ 32 (citing Monetary and Financial Code, Art L. 214-9). The

management company has the exclusive right to manage the FCP. *Id.* at ¶ 40

(citing Monetary and Financial Code, Art L. 214-8). The management company

has no interest in the assets of the FCP. *Id.*

      The FCP units acquired by an investor represent that investor's pro rata

right in the undivided collection of assets held by the custodian bank. *Id.* at ¶ 34.

The unit holders are liable for the FCP's debts only to the extent of the FCP's

assets and in proportion to their own pro rata share. *Id.* at ¶ 35 (citing Monetary

and Financial Code, Art L. 214-8-5). In other words, the liability of the unit

holders is several, not joint, and each unit holder is only liable for the amount of

his individual share of the pooled assets. *Id.*

    In support of this reading of French law, the "non-existent" OFI Funds have

submitted the declaration of Herve Lecuyer, a professor at University Panthéon-Assas

(Paris 2). Decl. LeCuyer ¶ 1, ECF No. 140.

    The Court issued an OSC against the OFI Funds and Brian Butler, purported

attorney for the Funds. He argues that the OFI Asset Management Company, a

management company under French law, authorized it to act on behalf of the OFI Funds.

    "FCPs have no legal personality and require a management company to take

virtually all actions on their behalf, including filing lawsuits." *In re Vivendi Universal,*

*S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 580 (S.D.N.Y. 2009); *see also* CODE MONÉTAIRE ET

FINANCIER (MONETARY AND FINANCIAL CODE) art. L214-8-8 ("The mutual fund is
represented vis-à-vis third parties by the company in charge of its management. This
company may take legal action to defend or assert the rights or interests of
unitholders.").[1] "FCPs retain ownership of the funds['] assets and operate similar to
trusts." *Id.*

The Trustee argues that the OFI Funds can be sued though they must be
represented by a management company in court. He has no objection to the management
company participating on behalf of the OFI Funds in this action. The Trustee has
provided the declaration of Oliver Moriceau, a French attorney. Morceau Decl. ¶ 155,
ECF No. 155. Moriceau states that French law vests the management company with
authority to act on behalf of an FCP in court. *Id.* ¶ 6. He also provides examples of case
where FCP's filed lawsuits in U.S. Courts in their own names—though the papers were
filed under the authority of OFI Asset Management, the same asset manager that
represents the OFI Defendants here. *Id.* ex. A.

The Court agrees with Moriceau's interpretation of the French Monetary and
Financial Code, which state: "The mutual fund is represented vis-à-vis third parties by the
company in charge of its management." CODE MONÉTAIRE ET FINANCIER (MONETARY &
FINANCIAL CODE) art. L214-8-8. The French law does not state that the OFI Funds
cannot sue or be sued but only that a management company "may take legal action to
defend or assert the rights or interests of unit holders." *Id.*

In this case, the OFI Defendants are the "real part[ies] in interest" (Fed. R. Civ. P.
17(a)), they are represented by attorneys who were engaged by the management company

---

[1] Available at
https://www.legifrance.gouv.fr/codes/section_lc/LEGITEXT000006072026/LEGISCTA000006154126?etatTexte=VIGUEUR&etatTexte=VIGUEUR_DIFF&anchor=LEGISCTA000006154126#LEGISCTA000006154126

**Not for Publication**

to defend the OFI Defendants in this action.  This is exactly how the French law

contemplates legal actions against FCP's to go.

**Personal Jurisdiction**

The OFI Funds argue that this Court lacks personal jurisdiction over them.  The

Trustee has provided evidence that the Defendants received the transfers in a New York

bank account.  The Trustee relies on the subscription agreements and the use of a New

York bank account for the assertion of jurisdiction over the OFI Funds.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.

Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,

N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re

BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction."  *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendants "knowingly directing funds to be

invested with New York-based BLMIS." (Compl. ¶ 31). This allegation alone is sufficient to

establish a prima facie showing of jurisdiction over Defendants in the pre-discovery stage of

litigation. At the pre-discovery stage, the allegations need not be factually supported. *See*

*Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment

of facts is necessary only after discovery).

In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr.

S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant. First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the
> forum State or have purposefully directed its conduct into the forum State.
> Second, the plaintiff's claim must arise out of or relate to the defendant's forum
> conduct. Finally, the exercise of jurisdiction must be reasonable under the
> circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

**Not for Publication**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

In the Complaint, the Trustee alleges that the OFI Funds "knowingly directed funds to be invested with New York-based BLMIS through [Fairfield Sentry]." (Compl. ¶ 5). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-1239 Compl. ¶ 228 ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint). Additionally, the Trustee has alleged that the OFI Funds "entered into one or more subscription agreements with the Fairfield Funds agreeing not only that New York law would govern their dealings, but also that any related suit, action or proceeding would be brought in New York. Thus, they agreed to irrevocably submit to the

**Not for Publication**

jurisdiction of the New York courts and to forego any claim that the New York courts are an

inconvenient forum." Compl. ¶ 33.  "The subscription agreements, as well as Fairfield Fund

private placement memoranda, also confirmed that  substantially all of the funds' assets would

be invested with New York-based BLMIS, a United States-registered broker-dealer that used a

non-traditional options trading strategy described as a "split-strike conversion." These

documents deemed BLMIS and its personnel, who were located in New York, "essential" to the

Fairfield Funds and their profitability. Fairfield Sentry instructed its subscribers to send

subscription monies to a bank account in New York." ¶ 34.

In response to the motion to dismiss, the Trustee has provided evidence of the OFI Funds

use of New York bank accounts to receive the redemption payments at issue here.

(Longo Decl., ECF No. 156).   **OFI MGA Alpha Palmares (f/k/a Oval Alpha**

**Palmares)**

"Defendants OFI and SGBT entered into one or more subscription agreements

with Fairfield Sentry and received subsequent transfers from the feeder fund in the name

of "SGBT Lux/Oval Alpha Palmares."  OFI is a fonds commun de placement organized

under the laws of France, and its address is c/o OFI Asset Management at 1 rue Vernier,

75017 Paris, France." Compl. ¶ 22

Attached as Exhibit 23 to the Longo Declaration in redacted form are true and

correct copies of a Citco Sentry request for wire transfer payment dated March 16, 2007

(CFSSAL0013725) and a Citco Sentry redemption order confirmation dated January 29,

2007 (CFSSAL0013726) for Societe Generale Bank & Trust S.A. (former name of

Societe Generale Luxembourg S.A.) / OFI, in each case concerning use of a Societe

Generale New York branch bank account.

**Not for Publication**

## Oval Palmares Europlus ("Palmares")

Defendants Palmares and SGBT entered into one or more subscription agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund in the name of "SGBT Lux/Palmares Europlus." Palmares is a fonds commun de placement organized under the laws of France, and its address is c/o OFI Asset Management at 1 rue Vernier, 75017 Paris, France. Compl. ¶ 23

Attached as Exhibit 24, of the Longo Declaration, in redacted form are true and correct copies of a Citco Sentry request for wire transfer payment dated December 15, 2005 (ANWAR-CFSE00325494) and a Citco Sentry redemption confirmation dated July 29, 2009 (CFSSAD0007198) for Societe Generale Bank & Trust S.A. (former name of Societe Generale Luxembourg S.A.) Palmares, concerning use of a Societe Generale New York branch bank account.

## UMR Select Alternatif ("UMR")

Defendants UMR and SGBT entered into one or more subscription agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund in the name of "SGBT Lux/UMR." UMR is a fund of funds organized under the laws of France, and its address is c/o Union Mutualiste Retraite at 3 Square Max Hymans, 75015 Paris, France. Compl. ¶ 24

Attached as Exhibit 25, of the Longo Declaration, in redacted form are true and correct copies of a Citco Sentry request for wire transfer payment dated March 16, 2007 (CFSSAL0010419) and a Citco Sentry redemption order confirmation dated January 29, 2007 (CFSSAL0010422) for Societe Generale Bank & Trust S.A. (former name of

**Not for Publication**

Societe Generale Luxembourg S.A.) / UMR, in each case concerning use of a Societe

Generale New York branch bank account.

Where a defendant chooses to use a United States bank account to received funds,

exercising personal jurisdiction over the defendant for causes of action relating to those transfers

is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549

B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank*

*B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (a bank submits to personal jurisdiction in the

United States when it is "free to accept or reject the proposed terms" and still chooses to use a

United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL

7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm

statute based solely on defendant's use of New York account to receive payment at issue:

"receiving Plaintiffs' money at a New York bank account suffices to establish personal

jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405

DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012)("District courts in this Circuit have

upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in

New York where the use of that account was held to lay at the very root of the plaintiff's

action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir.

2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013)

(same).

The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d.

Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

**Not for Publication**

or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285

(2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree

in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v.*

*Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's

alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendants for monies it

received from the Fairfield Sentry. These allegations are directly related to its investment

activities with Fairfield Sentry. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191

(Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received

as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending

subscription agreements to New York, wiring funds in U.S. dollars to New York, sending

Not for Publication

redemption requests to New York, and receiving redemption payments from a Bank of New

York account in New York, and were the proximate cause of the injuries that the Trustee sought

to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires

Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted).  Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable.  Defendant is not burdened by this litigation.

Defendant has actively participated in this Court's litigation for over ten years.  It is represented

by U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the

jurisdiction of New York courts' when it signed its subscription agreements with the Fairfield

Funds.[2]  ( The forum and the Trustee both have a strong interest in litigating BLMIS adversary

proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R.

---

[2] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the
subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this
Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under
British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a
relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry
v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB),
2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement
does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions.").

**Not for Publication**

106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re*

*BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re*

*BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re*

*Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917

F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic

estates to recover fraudulently transferred property.").

By alleging that Defendants intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  And

by alleging that Defendants used a New York bank account, the Trustee has met his burden of

alleging jurisdiction over each transfer received through that New York bank account.  The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer]

investors chose to buy into feeder funds that placed all or substantially all of their assets

with Madoff Securities, they knew where their money was going."  *In re Picard*, 917

F.3d 85, 105 (2d Cir. 2019).

**Safe Harbor**

Defendants make the same tired arguments regarding the safe harbor: 1) there is

no knowledge exception to the safe harbor and 2) they did not have knowledge of the

scheme.  Judge Rakoff create the knowledge exception and directed this Court to apply it

in this case.  The safe harbor concerns only Fairfield's knowledge of the fraud, which this

Court has found is properly alleged.

**Not for Publication**

Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548

**Not for Publication**

B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[3] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

---

[3] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield

International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities.

They knew BLMIS's returns could not be the result of the split strike conversion strategy

(the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were

impossible. They knew that BLMIS reported impossible, out-of-range trades, which

almost always were in Madoff's favor. They knew Madoff's auditor was not certified and

lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker

or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due

diligence questions they would not and could not satisfactorily answer. They knew

Madoff would refuse to provide them with honest answers to due diligence questions

because it would confirm the details of his fraud.  They knew Madoff lied about whether

he traded options over the counter or through the exchange. They knew they lied to

clients about BLMIS's practices in order to keep the money flowing and their fees

growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading

securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).

The district court determined that "those defendants who claim the protections of Section

**Not for Publication**

546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013). And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be

Not for Publication

an initial transfer in order for the Trustee to collect against a subsequent transferee, a

subsequent transferee may raise the safe harbor as a defense—but only in so far as the

avoidance of the initial transfer is concerned.  The safe harbor cannot be used as a

defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent

transfer, "he recovers the value of the avoided initial transfer from the subsequent

transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery

claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197

(Bankr. S.D.N.Y. 2018).

## Conclusion

For the foregoing reasons, OFI Funds' motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

**Dated: September 19, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**