UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>INTESA SANPAOLO SPA (AS SUCCESSOR IN INTEREST TO BANCA INTESA SPA), EURIZON CAPITAL SGR SPA (AS SUCCESSOR IN INTEREST TO EURIZON INVESTIMENTI SGR SPA, F/K/A NEXTRA, INVESTMENT MANAGEMENT SGR SPA, AND EURIZON ALTERNATIVE INVESTMENTS SGR SPA, FKA NEXTRA ALTERNATIVE INVESTMENTS SGR SPA), EURIZON LOW VOLATILITY F/K/A NEXTRA LOW VOLATILITY, EURIZON LOW VOLATILITY II F/K/A NEXTRA LOW VOLATILITY II, EURIZON LOW VOLATILITY PB F/K/A NEXTRA LOW VOLATILITY PB, EURIZON MEDIUM VOLATILITY F/K/A NEXTRA MEDIUM VOLATILITY, EURIZON MEDIUM VOLATILITY II F/K/A NEXTRA MEDIUM VOLATILITY II, EURIZON TOTAL RETURN F/K/A NEXTRA TOTAL RETURN, | Adv. Pro. No. 12-01680 (CGM) |

|  |  |
|---|---|
| Defendants. |  |

# MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Young Conaway Stargatt & Taylor, LLP
1270 Avenue of the Americas, Suite 2210
New York, NY 10020
By:    Matthew B. Lunn (on papers)


*Counsels for Defendants, Eurizon Capital SGR SpA, f/k/a Nextra Alternative Investments SGR SpA, Eurizon Low Volatility, f/k/a Nextra Low Volatility, and Eurizon Medium Volatility, f/k/a Nextra Medium Volatility*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
By:    Andrew Ditchfield (on papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Eurizon Capital SGR SpA, f/k/a Nextra Alternative Investments SGR SpA, Eurizon Low Volatility, f/k/a Nextra Low Volatility, and Eurizon Medium Volatility, f/k/a Nextra Medium Volatility (collectively, the "Defendants," motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendants seek dismissal for failure to plead a cause of action due to improper adoption by reference; for failure to state a claim due to the safe harbor provision of the Bankruptcy Code, and for failure to plead that the transfers from BLMIS were customer property. For the reasons set forth herein, the motion to dismiss is denied.

### Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on May 31, 2012. Compl., ECF[1] No. 1. Eurizon Capital and its predecessor in interest served as the asset management division of a bank in Italy, Banca, Intesa SpA. *Id.* ¶ 3. Banca Intesa SpA "was a global provider of investment management and financial services to corporations, institutions, and high-net-worth individuals." *Id.* The Trustee alleges that Eurizon Capital managed defendants Low Volatility and Medium Volatility, which are Italian common investment funds. *Id.* ¶¶ 25, 28.

Via the complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to the Defendants. *Id.* ¶¶ 50, 51. The subsequent transfers were derived from investments with BLMIS made by other funds, including Fairfield Sentry Limited ("Fairfield Sentry"). *Id.* ¶ 2

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01680-cgm.

These funds are referred to as "feeder funds" because the intention of the fund was to invest in BLMIS. *Id.* ¶¶ 7, 8.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶¶ 44, 45. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 49. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendants to recover the approximately $3 billion in missing customer property. The Trustee alleges that Low Volatility received $7,913,079 of funds initially transferred from BLMIS to Fairfield Sentry and subsequently from Fairfield Sentry to Low Volatility. Compl. ¶ 50. The Trustee also alleges that Medium Volatility received $3,740,436 of funds initially transferred from BLMIS to Fairfield Sentry and subsequently from Fairfield Sentry to Medium Volatility. *Id.* ¶ 51.

## Discussion

This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee seeks to recover $11,653,515 in subsequent transfers that Defendants received from Fairfield Sentry under section 550 of title 11 of the United States Code.

Count One: Recovery of Subsequent Transfers

Section 550(a) of the Bankruptcy Code states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 44, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

<u>Adoption by Reference of the Fairfield Amended Complaint</u>

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Amended Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*, pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does not prejudice the Defendants. On the other hand, dismissing this Complaint and permitting the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Amended Complaint, would prejudice all parties by delaying the already overly prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

BLMIS Customer Property

The Trustee has pled that "[b]ased on the Trustee's investigation to date, approximately $20,047,109 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Hapoalim Switzerland." Compl. ¶ 50. The Trustee has also pled that "$1,712,100 of the money transferred from BLMIs to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Hapoalim B.M.

The exhibits attached to the Complaint provide Defendants with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); Compl., ECF No. 1, Ex. F–G. The Fairfield Amended Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. Fairfield Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Trustee need not prove the path that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming shareholder. The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendants received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Section 546(e)**

Defendants have raised the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

  This Court determined that the Fairfield Amended Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated*

*Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."). The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

<u>The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer</u>

Defendants argue that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendants on account of the securities contract between Fairfield and the Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

The Defendants argue that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[2] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendants would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendants. *Fairfield III* is not applicable here.

Defendants are not permitted to raise the safe harbor defense on its own behalf as subsequent transferees.

## Conclusion

---

[2] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

For the foregoing reasons, Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: September 21, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**