NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>Citibank, N.A., et al.,<br><br>Defendants. | Adv. Pro. No. 10-05345 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By: Chardaie C. Charlemagne, Esq.

*Counsel for Defendants Citibank, N.A., Citicorp North America, Inc., Citigroup Global Markets Limited*
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006
By:  Carmine Boccuzzi, Esq.

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Citicorp North America, Inc. and Citibank, N.A. (together with Citicorp, "Citibank") and Citigroup Global Markets Limited ("Citi Global") (collectively, the "Citi Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's standing order of reference, dated July 10, 1984, and the amended standing order of reference, dated January 31, 2012.  In addition, the District Court

removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)).

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme operated by Bernard L. Madoff ("Madoff") and its SIPA proceeding. *See Picard v. Citibank, N.A. (In re BLMIS),* 12 F.4th 171, 178-83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,* 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 8, 2010. Compl., ECF[1] No. 1. An amended complaint ("Complaint") was filed on February 11, 2022. Am. Compl., ECF No. 214. The Trustee is seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. According to the Complaint, the Trustee seeks to recover at least $443,084,590 of BLMIS customer property that the Citi Defendants received as subsequent transfers. *Id.* ¶ 2. Citibank allegedly received at least $343,084,590 in subsequent transfers of BLMIS customer property from Rye Select Broad Market Prime Fund, L.P. ("Prime Fund") that the Trustee seeks to recover. *Id.* ¶ 3. Citi Global allegedly received at least $130,000,000 in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Fairfield Sentry"), $100,000,000 of which the Trustee seeks to recover.[2] *Id.* ¶ 4. Prime Fund and Fairfield Sentry are BLMIS feeder funds that invested substantially all of their assets in BLMIS. *Id.* ¶¶ 5, 53, 54.

---

[1] All references to the Court's electronic docket are to the docket of adversary proceeding number 10-05345, unless otherwise indicated.
[2] The original complaint sought $130,000,000 from Citi Global. The District Court previously dismissed the Trustee's claim to recover a $30,000,000 transfer Citi Global received on or around October 14, 2005. *See Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS),* 505 B.R. 135, 151 (S.D.N.Y. 2013) ("*The Swap Safe Harbor Decision*"), 505 B.R. 135, 150-51 (S.D.N.Y. 2013). Am. Compl. ¶ 4 n.1.

The Citi Defendants make three main arguments in their motion to dismiss. They argue that BLMIS' initial transfers to Prime Fund and Fairfield Sentry are not avoidable because the Trustee has failed to plead BLMIS' actual fraudulent intent with respect to each transfer and that the Ponzi scheme presumption cannot be used to plead BLMIS' actual fraudulent intent. Memo. L. at 9, ECF No. 224. Citibank argues that the $343,084,590 it received from the Prime Fund was the repayment of a loan and did not deplete the BLMIS estate. *Id.* at 17. The Citi Defendants also argue that $60 million of the Trustee's claim against Citi Global and $43 million of the Trustee's claim against Citibank should be dismissed as untraceable to BLMIS. *Id.* at 19. The Trustee has opposed the motion and the Court heard oral argument on the motion to dismiss at a hearing held on September 14, 2022.

## Discussion

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Claims are facially plausible when the plaintiff pleads facts that allow courts to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). The Court when deciding a motion to dismiss should assume the factual allegations are true and determine whether, when read together, the factual allegations plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. Complaints may proceed even if the

finding of actual proof of the complaint is improbable, and recovery is unlikely. *Twombly*, 550 U.S. at 556.

"Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* U.S. 308, 322 (2007). Documents considered to be included in the complaint include written instruments attached to it as an exhibit, documents incorporated in it by reference, and other documents which are "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Documents are "integral" to complaints when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (*see also Chambers*, 282 F.3d at 153).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* 11 U.S.C. § 550(a) allows the Trustee to pursue any of the immediate or mediate transferees at any time. The Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry or Prime Fund is avoidable, but the Trustee is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).

When a fraudulent transfer claim is asserted by a bankruptcy trustee, courts adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. *Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (citations omitted). In a case such as this, where the Trustee lacks personal knowledge and the case is compounded with complex legal issues over time, the Trustee's leeway increases and even greater deference should be afforded. *Id.*

In this Complaint, the Trustee has pled that the initial transfers from BLMIS to Fairfield and from BLMIS to Prime Fund are avoidable. The Complaint alleges that that the transfers made from BLMIS to Prime Fund were "deemed avoided" in a court approved settlement on September 22, 2011. Am. Compl. ¶ 90. The Trustee has alleged that Prime Fund received $945 million within six years of the SIPA filing date, which is avoidable under § 544 of the

Bankruptcy Code and New York Debtor and Creditor Law §§ 279-279. *Id.* ¶ 175. Of that $945 million, Prime Fund received $495 million within two years of the SIPA filing date, which is recoverable under § 548 of the Bankruptcy Code. *Id.* ¶ 176.

With this Complaint, the Trustee is seeking to recover subsequent transfers made from Prime Fund to Citibank made from 6/16/2005 through 3/26/2008 totaling $343,084,590. Am. Compl, Ex. F.

The Trustee has alleged that the transfers made from BLMIS to Fairfield Sentry are avoidable in a complaint ("Fairfield Complaint") filed in a separate adversary proceeding (numbered 09-01239-CGM) and has adopted those allegations into this Complaint. Am. Compl. ¶¶ 162-65. By orders dated June 7 and June 10, 2011, this Court approved a settlement among the Trustee, Fairfield Sentry, and others, and on July 13, 2011, entered a consent judgment in favor of the Trustee and against Fairfield Sentry in the amount of $3,054,000,000. *Id.* ¶ 163. The Trustee has alleged that Fairfield Sentry received $2,895,000,000 within six years of the SIPA filing date, which is avoidable under § 544 of the Bankruptcy Code and New York Debtor and Creditor Law §§ 279-279. *Id.* ¶ 167. Of that $2.8 billion, approximately $1.6 billion was transferred to Fairfield Sentry during the two years preceding the SIPA filing date and is allegedly recoverable under § 548 if the Bankruptcy Code. *Id.* ¶ 168.

With this complaint, the Trustee is seeking to recover two subsequent transfers made from Fairfield Sentry to Citi Global: a $60 million transfer on 4/14/2008 and a $40 million transfer on 11/19/2008. Am. Compl, ex. C.

**Whether BLMIS's Initial Transfers Are Avoidable as Intentionally Fraudulent Conveyances?**

Citi Global argues that the Trustee's subsequent transfer claims fail without the Ponzi scheme presumption since the Trustee is required to plead the avoidability of the initial transfer

in order to avoid any subsequent transfers. *See* § 550(a) (requiring that the initial transfer be avoidable before a subsequent transfer can be recovered. In relevant part, § 548(a)(1)(A) allows the Trustee to avoid any transfer made within two years before the filing date of this SIPA action, if BLMIS made the transfer with "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A). The Citi Defendants argue that BLMIS' initial transfers to Prime Fund and Fairfield Sentry, made within two years of the SIPA filing date, are not avoidable because the Trustee has failed to plead BLMIS' actual fraudulent intent with respect to each transfer and that the Ponzi scheme presumption cannot be used to plead BLMIS' actual fraudulent intent. Memo. L. at 9, ECF No. 224. If the Citi Defendants can demonstrate that the initial transfers from BLMIS to Fairfield Sentry and Prime Fund are not avoidable, the Trustee would not be permitted to avoid the subsequent transfers of those funds.

Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied. Am. Compl. ¶ 15 (Madoff pled guilty to operating a Ponzi scheme through BLMIS). The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."). In this case, the Ponzi scheme presumption allows the Court to presume that BLMIS made the initial transfers with actual intent to defraud because Madoff has admitted to operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007). The "Ponzi scheme presumption" makes perfect sense in cases such as this one. BLMIS had no legitimate assets and therefore every transfer made by BLMIS was made with actual intent to defraud in order to ensure that Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS' actual fraudulent intent is presumed via the Ponzi scheme presumption. Am. Compl. ¶¶ 1, 15, 16, 18, 62–87. Intent to defraud is established as debtor operated a Ponzi scheme. *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"). That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688-93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

Citi Global relies on Judge Menashi's concurrence in *Picard v. Citibank, N.A., et al.* (*In re BLMIS*), 12 F.4th 171, 200–04 (2d Cir. 2021), in which he questions the use of the Ponzi scheme presumption and fraudulent transfer law in cases such as this. This Court has re-read Judge Menashi's concurrence and finds his concurrent opinion unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent. Without the presumption, Citi Global would not be "off-the-hook" for the two-year transfers because the Trustee would meet (and, in this case, has met) his pleading burden by pleading the "badges of fraud" with respect to BLMIS.

> Badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry.

*See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). The "concealment of facts and false pretenses by the transferor" is also a circumstance from which courts have inferred intent to defraud. *Id.* at 1582 (quoting 4 COLLIER ON BANKRUPTCY ¶ 548.02[5] at 548–34 to 38 (L. King 15th ed. 1983)). The existence of several badges can "constitute conclusive evidence of an actual intent to defraud." *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, No. 11-md-2296 (RJS), 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017) (citation omitted); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019).

BLMIS' actual fraudulent intent is well-plead in detail in the Complaint. Am. Compl. ¶¶ 62-87. The Court need not infer intent to defraud because Madoff has admitted that he had

actual intent to defraud when he admitted under oath that he operated a Ponzi scheme. *Id.* ¶ 15. In addition to this, the Trustee has alleged that "BLMIS's website omitted the investment advisory business entirely. BLMIS did not register as an investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register." *Id.* ¶ 59. For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its investment advisory business. *Id.* ¶ 60. BLMIS lied to the SEC in reports regarding the number of accounts it has and "grossly understated" the amount of assets under management. *Id.* ¶ 61. BLMIS had no legitimate business operations and produced no profits or earnings. *Id.* ¶ 62. "Madoff was assisted by several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud." *Id.* ¶ 62. BLMIS used its fraudulent investment advisory business to prop up its proprietary trading business, which also incurred significant losses. *Id.* ¶ 63. "BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments." *Id.* ¶ 70. "There are no records to substantiate Madoff's sale of call options or purchase of put options in any amount, much less in billions of notional dollars." *Id.* ¶ 75. "Madoff could not be using the SSC Strategy because his returns drastically outperformed the market. BLMIS showed only 16 months of negative returns over the course of its existence compared to 82 months of negative returns in the S&P 100 Index over the same time period. Not only did BLMIS post gains that exceeded (at times, significantly) the S&P 100 Index's performance, it would also regularly show gains when the S&P 100 Index was down (at times significantly). Such results were

impossible if BLMIS had actually been implementing the SSC Strategy." *Id.* ¶ 77. "There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC Strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities." *Id.* ¶ 83. Though unnecessary, the Trustee has sufficiently pleaded the badges of fraud.

The Trustee has successfully pleaded badges 2, 3, 4, 5, and 6. The Trustee need not plead all six badges of fraud to meet his burden of pleading actual fraudulent intent. *In re May*, 12 B.R. 618, 627 (N.D. Fla. 1980) ("Such indicators or badges, when established either singularly, but more often in combination, may justify the inference of the requisite intent to hinder, delay or defraud creditors.").

As to the Citi Defendants' argument that BLMIS' initial transfers to Fairfield Sentry were made for no consideration because BLMIS was repaying Fairfield Sentry's principal, these affirmative defenses do not appear on the face of the Trustee's Complaint. As such, these defenses are not an appropriate ground for dismissal at this stage of litigation. *In re Agape World, Inc.*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012). ("While the Defendant's argument regarding good faith and fair consideration is a permissible defense to these actual fraudulent transfer claims, and may be raised at the summary judgment stage and/or at trial, it is only sufficient to dismiss these claims at this stage if it appears from the face of the Complaint that the Defendant took the funds in good faith and for fair consideration.").

**Whether the Transfers made to the Citi Defendants are Traceable to BLMIS?**

The Court has already addressed the "BLMIS Customer Property" argument in its multitude of prior decisions in these subsequent transfer adversaries. *See, e.g., Picard v. Parson*

*Fin. Panama S.A.* (*In re BLMIS*), No. 08-01789 (CGM), 2022 WL 3094092, at *10–11 (Bankr. S.D.N.Y. Aug. 3, 2022).

> The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); see also (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").
> The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. Defendants ask this Court to consider allegations made in the other complaints filed by the Trustee in this SIPA proceeding. Memo. L. at 22, ECF No. 93. These complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).
> Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Parson received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

*Id.*

Citibank argues that because three months lapsed between when BLMIS initially transferred money to Fairfield Sentry and when Fairfield Sentry subsequently transferred it to Citibank, the Court cannot find it plausible that the subsequent transfer funds are BLMIS' customer property. Sept. 14, 2022 Hr'g Tr. at 129, ECF No. 237. However, the Court finds that the Trustee has plausibly alleged Citibank received BLMIS customer property. The Complaint states that Fairfield Sentry did not have any assets that were not BLMIS customer property. The Fairfield Complaint, which is incorporated by reference into this Complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for

BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").

Accepting these allegations as true, the three-month gap between the initial and subsequent transfer is of no consequence because 95% of all Fairfield assets are allegedly BLMIS customer property. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court must accept factual allegations as true). It is more plausible that $100,000,000 subsequent transfer funds that the Trustee seeks to recover from the CitiGlobal came from BLMIS customer property than that it came from some other unnamed source.

At oral argument, Citi Defendants alluded to the fact that Fairfield Sentry was running its own Ponzi-like scheme by stating that at least one $60 million transfer from Fairfield Sentry to Citi Global was funded by Fairfield Sentry's subscribers' rather than BLMIS. Sept. 14, 2022 Hr'g Tr. at 129:16–17, ECF No. 237; *see also id.* at 166:16-20 (a different Defendant arguing on its own motion to dismiss that "Fairfield was paying subsequent transfers out of newly-received subscription money rather than passing it to BLMIS and then having BLMIS pass it back to Fairfield."). While the Court is concerned that Citi Defendants' arguments may ultimately be proven, these accusations are not contained in the Complaint and, so, they are not an appropriate basis for dismissal on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). The Court will determine if this money came from BLMIS or from some other source at a later date.

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds through litigation at a later stage. At this stage, the Trustee need only assert allegations that make it plausible that Defendants received BLMIS monies.

Citibank makes a similar argument about the subsequent transfers it received from the Prime Fund: "[D]uring the last 12 months of 2005 when the allegation is that Citi[bank] received about $4.4 million in interest from the Prime fund, there were transfers in that period from Madoff to Prime." Sept. 14, 2020 Hr'g Tr. at 131:22–25. "And again in 2007, when there's about $18 million in interest flowing to Citi, you don't see any initial transfers going on from [BLMIS] to Prime." *Id.* at 131–32. The Trustee has plead that "Prime Fund . . . invested all or substantially all of [its] assets with BLMIS's investment advisory business." Am. Compl. ¶ 5. The Court finds it plausible that the funds Prime Fund received came from BLMIS customer property since the Trustee has alleged that Prime did not have any other significant sources of assets.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that the Citi Defendants received customer property because Fairfield Sentry and Prime Fund did not have other property to give. The calculation of Fairfield Sentry's and Prime Fund's customer property and what monies were used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Whether the Trustee's Principal Claim Against Citibank—for $301 Million In A Loan Repayment—Should Be Dismissed Because The Money Did Not Deplete the BLMIS Estate?**

Citibank argues that it should not have to repay the subsequent transfer funds that it allegedly received because another lender replaced the financing. Memo. L. at 3, ECF No. 224 ("When Prime Fund decided to repay the Citibank loan principal, it allegedly withdrew money from BLMIS and replaced it with money from another bank. In other words, it simply changed lenders."). If Citibank can prove that another lender repaid BLMIS, the other lender would be the party entitled to a credit from BLMIS, not Citibank. Citibank obtained complete dominion and control over BLMIS' customer property and was free to use it as it saw fit. If the Court were to credit Citibank for these funds as well as the other lender, the BLMIS estate would be giving two credits based on one deposit. *See Picard v. Lustig* (*In re BLMIS*), 568 B.R. 481, 487 (Bankr. S.D.N.Y. 2017). This is contrary to reason and contrary to the "Net Investment Method" approved by the Second Circuit. *Id.*; *In re BLMIS*, 654 F.3d 229, 239 (2d Cir. 2011) ("[T]he Net Investment Method allows the Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's books and records, and results in a distribution of customer property that is proper under SIPA."), *cert. denied*, 567 U.S. 934 (2012).

Additionally, the Trustee has not pled that the Citibank transfers were repaid by another party. Since Citibank's defense is not apparent on the face of this Complaint, the Court cannot grant its motion to dismiss. *United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) ("A court may dismiss a claim on the basis of an affirmative defense only if the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.").

## Conclusion

For the foregoing reasons, the Citi Defendants' motion to dismiss is denied in its entirety. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision,

directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: September 27, 2022**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**