UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 11-02538 (CGM) |
| v., | |
| QUILVEST FINANCE LTD, | |
| Defendant. | |

## MEMORANDUM DECISION
## DENYING DEFENDANT'S MOTION TO DISMISS

<u>**A P P E A R A N C E S**</u> :

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Robertson D. Beckerlegge
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

*Attorneys for the Defendant, QS Finance Ltd.*
*(formerly known as Quilvest Finance Ltd.)*
Thomas E. Lynch
Jones Day
250 Vesey Street
New York, New York 10281

## CECELIA G. MORRIS
## UNITED STATES BANKRUPTCY JUDGE

Pending before the Court is the motion by the Defendant, QS Finance Ltd., formerly known

as Quilvest Finance Ltd., ("QS Finance") to dismiss the complaint of Irving Picard, the trustee

("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS")

seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. The

Defendant seeks dismissal for lack of personal jurisdiction, for failure to state a claim due to the

safe harbor provision of the Bankruptcy Code, for failure to allege that it received BLMIS

customer property, and failure to plead a claim for relief under Rule 8 of the Federal Rules of

Civil Procedure. For the reasons set forth herein, the motion to dismiss should denied in its

entirety.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing fOrder of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on August 18, 2011. Compl., ECF[1] No. 1. The Defendant is a British Virgin Islands registered subsidiary of Quilvest S.A., a global independent wealth and private equity manager. *Id.* ¶ 2–3. Via the complaint ("Complaint"), the Trustee seeks to recover $34,198,295[2] in subsequent transfers made to the Defendant. *Id.* ¶ 2. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"). *Id.* This fund is referred to as "feeder funds" because the intention of the fund was to invest in BLMIS. *Id.* ¶¶ 2, 6.

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02538-cgm.

[2] The complaint originally sought to recover $37,800,115. A stipulation, entered by this Court on March 1, 2022, amended the Complaint to dismiss the Count One as to four separate transfers totaling $3,601,820. Stip., ECF No. 105

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  *Id.* ¶¶ 34, 35.  In 2011, the Trustee settled with Fairfield

Sentry.  *Id.* ¶ 40.  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendant to recover the approximately $3

billion in missing customer property.  The Trustee alleges that the Defendant received

approximately $37,800,115 of funds initially transferred from BLMIS to Fairfield Sentry and

subsequently from Fairfield Sentry to the Defendant.  Compl. ¶ 40, ECF No. 1; Stip., ECF 105

(amending Count One of the Complaint to recovery of one transfer in the amount of

$34,198,395).

## Discussion

**The Court has Personal Jurisdiction Over the Defendant**

QS Finance objects to the Trustee's assertion of personal jurisdiction over it.  The Trustee

argues in the Complaint that the Defendant purposefully availed itself of the laws of the United

States and New York by directing funds to be invested with New York-based BLMIS through

Fairfield Sentry and used New York banks to transact with Fairfield Sentry.  Compl. ¶¶ 6–8,

ECF No. 1.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Id.* (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP

Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendant "knowingly directing funds to be

invested with New York-based BLMIS through Fairfield Sentry." Compl. ¶ 6.  At the pre-

discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Securities

Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only

after discovery).  This allegation alone is sufficient to establish a prima facie showing of

jurisdiction over Defendant in the pre-discovery stage of litigation—but this was not the only

allegation made by the Trustee.

  In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  *BLI*, 480 B.R. at 516 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the

plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d

Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y.

2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

<u>Purposeful Availment</u>

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *BLI*, 480 B.R. at 517.

QS Finance argues that the Trustee has failed to allege sufficient minimum contacts with the United States. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that QS Finance "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry" and knowingly received transfers of customer property from BLMIS by withdrawing money from Fairfield Sentry. Compl. ¶ 6, ECF No. 1. The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint); *see, e.g.* Beckerlegge Decl., Fairfield Sentry Information Memo, ECF No. 114, Ex. 2 ("The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM'), a registered broker-dealer in New York, New York, which employs an options trading strategy described as 'split strike conversion'.").

The Trustee has submitted additional evidence that QS Finance knew that its investments in Fairfield Sentry were being managed by BLMIS. QS Finance used correspondent accounts in New York to send subscription payments and receive transfers. *Id.*, Ex. 3, 4. Affiliates of the Defendant were in frequent communication with Fairfield Greenwich Group employees at Fairfield's offices in New York to discuss investment with Fairfield Sentry and met with Fairfield Greenwich Group's partner in New York on QS Finance's behalf. *Id.*, Ex. 5, 6. These allegations are sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013).

Arise out of or relate to the defendant's forum conduct

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry. Compl. ¶¶ 40–47, ECF No. 1. These allegations are directly related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

<u>Reasonableness</u>

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable. The Defendant is not burdened by this

litigation. Defendant has actively participated in this Court's litigation for over ten years. It is

represented by highly competent U.S. counsel, filed a claim in this SIPA litigation, and

submitted to the jurisdiction of New York courts' when it signed its subscription agreements

with Fairfield Sentry. The forum and the Trustee both have a strong interest in litigating BLMIS

adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re*

*BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard*

*v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec.*

*Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich*

*Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re*

*Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in

allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent transfers at issue in this Case.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover the subsequent transfer of nearly $34.2 million made to

QS Finance by Fairfield Sentry ("Count One").

Section 550(a) of the Bankruptcy Code states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided
> under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may
> recover, for the benefit of the estate, the property transferred, or, if the court so
> orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer
> was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)).  "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re

Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re

BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,

N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much–of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 34, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,
the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad
Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Adoption by Reference

    Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.
Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference
elsewhere in the same pleading or in any other pleading or motion."  The district court has
already found that adoption by reference of the entire Fairfield Amended Complaint is proper.
*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36
(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services
incorporates by reference the complaints against Kingate and Fairfield, including the allegations
concerning the avoidability of the initial transfers, and further alleges the avoidability of these
transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and
Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

    The Court will follow the district court's instruction.  As was explained in *In re Geiger,*
pleadings filed in the "same action" may be properly adopted by reference in other pleadings in
that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was
filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases
within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re
Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)
("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");
*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.
S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. QS Finance, like many subsequent transfer defendants in this

SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA

liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF

No. 91 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice the Defendant. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

BLMIS Customer Property

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, approximately $37,800,115 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Quilvest." Compl. ¶ 40, ECF No. 1.   The parties later stipulated to dismissing recovery of four transfers in the cumulative amount of $3,601,820. Stip., ECF 105.

The exhibits attached to the Complaint provide QS Finance with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); Compl., ECF No. 1, Ex. D (indicating the dates and amounts of the transfers in question); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent transfers.).   The Fairfield Amended Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.   Fairfield Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment

decisions, but also the custody of its assets, to BLMIS."). The Trustee need not prove the path that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming shareholder. The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that QS Finance received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Section 546(e) Does Not Bar the Trustee's Claim to Recover Subsequent Transfers**

Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid

and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors.  If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account.  In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on*

*other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains

sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated*

*Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under

a separate securities contract" this Court was directed to "adjudicate those claims in the first

instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,

Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer**

The Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and QS Finance on account of the securities contract between Fairfield and the Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections).  Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

The Defendant's reliance on *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("Cohmad") is unavailing.  In *Cohmad*, Judge Rakoff clearly laid out the "one caveat" to the general rule that the Trustee must show "the initial transfer of . . . by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions."  *Id.*  That is, a subsequent transferee with actual knowledge of the fraud "cannot prevail on a motion to dismiss on the basis

of Section 546(e)'s safe harbor." *Id.* This caveat only pertains to a subsequent transferee with actual knowledge. It is the "one caveat." *Id. Cohmad* did not leave open any additional caveats to subsequent transferees who lack actual knowledge.

The Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[3] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendant. *Fairfield III* is not applicable here.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

---

[3] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

## <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**Dated: September 27, 2022**
**Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**