**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02731 (CGM) |
| v. | |
| TRINCASTAR CORPORATION, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

**Contents**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................2

    II.    TRINCASTAR AND ITS INVESTMENTS IN SENTRY ..................................3

ARGUMENT ...................................................................................................................6

    I.     THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
          TRINCASTAR .......................................................................................6

        A.    Trincastar Purposefully Availed Itself of the Laws and Privileges of
            Conducting Business in the United States and the Trustee's Claims
            Arise out of or Relate to Such Availment ....................................................8

            1.    Trincastar's Knowing and Intentional Investments with
                 BLMIS through Sentry Are Sufficient Grounds for
                 Jurisdiction .......................................................................................9

                 a.    *BLI* and Recent Decisions of This Court Establish
                      Jurisdiction .........................................................................9

                 b.    *Walden* Does Not Save Trincastar from This Court's
                      Jurisdiction ......................................................................11

            2.    Trincastar's Purposeful Use of New York Bank Accounts
                 Establishes Jurisdiction ....................................................................13

            3.    Trincastar Had Significant Other Contacts With the United
                 States in Connection with its FGG Investments ...........................16

            4.    Trincastar's Remaining Arguments Against Jurisdiction Are
                 Unavailing........................................................................................17

            5.    Trincastar's Contacts with the Forum Are Sufficiently Related
                 to the Trustee's Claims ..................................................................18

         B.    The Exercise of Personal Jurisdiction over Trincastar is Reasonable .......19

        C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery......20

    II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM TRINCASTAR........20

A.      Sentry Had Actual Knowledge of Madoff's Fraud ................................... 21

B.      Trincastar Is Precluded from Relitigating the Actual Knowledge
        Exception ................................................................................................... 22

C.      Section 546(e) Does Not Apply Independently to Recovery Actions ....... 22

CONCLUSION .......................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996) ................. 8

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016) ...................................................................... 14

*Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL),
    2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...................................................................... 20

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) .................................. 6

*Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ...................................................................... 6, 8

*Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41 (2d Cir. 2003) .............................................. 17

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ................................ 6, 19

*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ........................ 13

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ................................. 6

*Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ........ 13

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006),
    *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) .................................................. 26

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011) .............. 24

*ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35 (S.D.N.Y. 1999) ................................................... 8

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) .......................................................................... 8, 15

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP),
    2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ................................................................ 20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
    *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*,
    No. 19-CV-3911 (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ......................... 17

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ....................... 7, 16-18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)............................... 7, 17

*Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590 (LTS)(SN),
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ......................................................... 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................. 12

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) ............................................. 15, 16

*HSH Nordbank AG New York Branch v. Street*, No. 11 CIV. 9405 (DLC),
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) ........................................................ 13, 18

*In re Arcapita Bank B.S.C.(C)*, No. 21 CIV. 8296 (AKH),
    2022 WL 1620307 (S.D.N.Y. May 23, 2022) ................................................... 15

*In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................. 17

*In re Motors Liquidation Co.*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017) ......................................... 15

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019)............................................................................ 9, 20, 23

*In re SunEdison, Inc.*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) ...................................................... 25

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)............................................................... 6-7, 17

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022)......................... 23

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP),
    2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009)................................................... 20

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR),
    2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ................................................... 22

*Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291 (App. Div. 2002)........................... 17

*Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012)............................................ 14-15

*McGee v. Int'l Life Ins. Co.*, 335 U.S. 220 (1957)........................................................................ 7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................ 7

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ....................................................................... 21

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)................................................................................ 14-15, 18

iv

*Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM),
    2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022)................................................ passim

*Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM),
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).............................................. 1, 11, 25

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022).............................................. 1, 7, 19

*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018)............. passim

*Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012)........ passim

*Picard v. Chais (In re BLMIS)*, 440 B.R. 274 (Bankr. S.D.N.Y. 2010) ...................................... 18

*Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021),
    *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ........................... 3

*Picard v. Cohen*, Adv. Pro. No. 10-04311,
    2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016)...................................................... 22

*Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM),
    2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)...................................................................... 25

*Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ........................................................................ 14-15

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021)...................................................................... 6-8, 18

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM),
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................ 3-4, 21

*Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) ....... 22, 24

*Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........... 7, 19

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ......................... passim

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
    Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859
    (Bankr. S.D.N.Y. Sep. 19, 2022) .............................................................................. passim

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) .................................. 6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) ......................................................... 23, 26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ......................................................... 21-22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR),
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................................... passim

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ....................................... 16-17

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ......................................................... 22

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019) ...................................... 7

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................ 11-13, 17

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ......................................... 19

*Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928 (2d Cir. 1988) ......................................... 13

## Statutes

11 U.S.C. § 544 ......................................................................................... 23

11 U.S.C. § 545 ......................................................................................... 23

11 U.S.C. § 546(e) ............................................................................... passim

11 U.S.C. § 547 ......................................................................................... 23

11 U.S.C. § 548(a)(1)(A) ........................................................................ 21, 23

11 U.S.C. § 548(a)(1)(B) ............................................................................ 23

11 U.S.C. § 548(b) ...................................................................................... 23

11 U.S.C. § 550 ....................................................................................... 23-25

11 U.S.C. § 550(a) ................................................................................... 25-26

15 U.S.C. §§ 78aaa–*lll* ................................................................................. 1

**Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6)................................................................................................................ 1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and declaration of Kim M. Longo ("Longo Decl.") in opposition to the motion to dismiss the Trustee's Complaint (ECF No. 1, the "Complaint"),[1] pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(2) and 12(b)(6) of defendant Trincastar Corporation ("Trincastar").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $13.3 million in subsequent transfers that Trincastar received from Fairfield Sentry Limited ("Sentry"). Trincastar purposefully invested in BLMIS through Sentry—an investment fund created for the express purpose of funneling its investors' money into BLMIS in New York. Nonetheless, Trincastar now moves to dismiss the Trustee's Complaint, arguing that this Court lacks jurisdiction over it. Trincastar also argues that the safe harbor under Section 546(e) bars the Trustee's recovery. However, as acknowledged by Trincastar in its moving papers,[2] these arguments have been rejected by this Court in numerous other subsequent transfer cases.[3] For the reasons set forth below, Trincastar's arguments fail.

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Trincastar Corp.*, Adv. Pro. No. 11-02731 (CGM) (Bankr. S.D.N.Y.). In the Complaint, Trincastar's name was inadvertently misspelled "Trincaster." By Stipulation and Order entered on May 4, 2022, the parties agreed to change the spelling of defendant's name to "Trincastar." ECF No. 102.

[2] Trincastar's Memorandum of Law in Support of its Motion to Dismiss is referred to herein as the "Motion."

[3] *See*, *e.g.*, *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sep. 19, 2022) ("*Societe Generale*"). To

First, this Court undoubtedly has personal jurisdiction over Trincastar. Trincastar purposefully invested in Sentry, knowing from Sentry's documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of Sentry's investments, that Sentry fed substantially all of its funds into BLMIS, and that BLMIS was essential to the fund's investments. Investing in BLMIS was the entire point. Trincastar also designated and used United States bank accounts to deposit funds with and receive the transfers at issue from Sentry. These facts, plus the additional U.S. contacts discussed herein, establish jurisdiction.

Second, the Trustee has plausibly alleged Sentry's actual knowledge of fraud, and therefore under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Trincastar. Trincastar's argument—that there is no actual knowledge exception or, alternatively, that Trincastar's knowledge as the subsequent transferee (rather than Sentry's knowledge as the initial transferee) determines the avoidability of the initial transfers from BLMIS—misinterprets and directly conflicts with precedent in this SIPA liquidation proceeding.

For these reasons, the Trustee respectfully requests that the Court deny Trincastar's motion.

## STATEMENT OF FACTS

### I. THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. Compl. ¶¶ 21, 29. BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange Commission. *Id.* ¶ 21. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 21. For its IA Business customers, BLMIS purportedly executed a split-strike

---

avoid repetition and long string cites, the Trustee will avoid citing to all of these decisions, but these and the other similar decisions recently entered by the Court all support denial of Trincastar's Motion.

conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out of the market. *Id.* ¶¶ 22-23. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 24-28, 30. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 9.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' monies into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022). Trincastar invested in Sentry, one such feeder fund, which it knew was a BLMIS feeder fund. Compl. ¶ 5.

Sentry was managed and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York. Compl. ¶ 5; *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS. Compl. ¶ 2; *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 ("Fairfield Am. Compl."), ¶¶ 52, 318.

## II.    TRINCASTAR AND ITS INVESTMENTS IN SENTRY

Trincastar is a corporate entity located in the British Virgin Islands and, during the relevant period, was an indirect subsidiary of Credit Suisse Group Ltd., also known as Credit Suisse Group AG ("CS Group"). Corporate Ownership Statement of Trincastar Corp., ECF 10; Longo Decl. Ex. 1. Credit Suisse Trust AG, a subsidiary of CS Group, facilitated Trincastar's investments in

3

Sentry and functioned as a principal point of contact with Sentry for Trincastar. Compl. ¶ 20; Longo Decl., Exs. 2-6. CS Group's affiliated companies (collectively, "Credit Suisse") together invested hundreds of millions of dollars with numerous BLMIS feeder funds; this recovery action is one of several commenced by the Trustee for transfers received in connection with those investments.[4]

Among those involved with Trincastar's Sentry investment was Alex Haegler ("Haegler"), a one-time Credit Suisse Private Banking director. Longo Decl., Ex. 7. Per FGG representative Citco, Trincastar "belong[ed] to Alex Haegler" and FGG considered him to be synonymous with Trincastar. Longo Decl., Exs. 8-9. Haegler was brother-in-law to New York-based FGG co-founder Walter Noel. Longo Decl., Exs. 9-10; *Fairfield Inv. Fund*, 2021 WL 3477479, at *10. From the 1990s onward, Haegler and Noel together worked to get Sentry and other FGG funds onto Credit Suisse's global platform and as late as 2007 were engaged in marketing efforts directed at Latin America. Longo Decl., Exs. 11-12.

Trincastar began investing in Sentry in the early 1990s. Longo Decl., Ex. 13. During the six-year period prior to BLMIS's collapse, Trincastar received transfers from Sentry totaling over $13.3 million. Compl. ¶¶ 2, 39, Ex. C.

As was required for Sentry investors, Trincastar entered into subscription agreements with Sentry. Compl. ¶ 5; Longo Decl., Exs. 7-9. Sentry's subscription agreements incorporated Sentry's then-operative Information Memoranda ("IMs"), and by signing, investors like Trincastar warranted that they had "received and read" a copy of the IMs. *Id.*; *see also* Longo Decl., Ex. 14.

---

[4] Other recovery actions commenced by the Trustee against Credit Suisse entities invested with BLMIS feeder funds include *Picard v. Credit Suisse AG, et al.* (Adv. Pro. No. 11-02925); *Picard v. Credit Suisse AG (as successor in interest to Clariden Leu AG and Bank Leu AG)* (Adv. Pro. No. 12-01676); *Picard v. Mistral (SPC)* (Adv. Pro. No. 12-01273); *Picard v. Zephyros Limited* (Adv. Pro. No. 12-01278); and *Picard v. Solon Capital, Ltd.* (Adv. Pro. No. 12-01025) (since dismissed, as only involved transfers from Kingate Global Fund, Ltd.).

The IMs disclosed how the services of BLMIS were "essential" to the "continued operation" and/or "profitability" of the fund. Longo Decl., Ex. 15 at p. 16. The IMs disclosed BLMIS's multiple roles as the *de facto* investment manager, broker-dealer, and custodian for Sentry and highlighted the numerous U.S. connections inherent in investing in Sentry. *Id*. at pp. 1, 6, 10-11, 14-15, 30, 39, 41. The IMs further indicated that Sentry shares were available "only to professional investors." *Id.* at p. 2.

As with other Sentry investors, Trincastar sent subscription payments to Sentry's escrow account in New York, which during the time of Trincastar's subscriptions was at Republic National Bank of New York (the "Sentry New York Account"). Compl. ¶ 5; Longo Decl., Exs. 5 (at p. 1), 6, 15 (at p. 14), 16. Subscription payments were then deposited into BLMIS's account at JP Morgan Chase Bank in New York. Fairfield Am. Compl. ¶ 35. Trincastar also designated and used a bank account in the name of a Credit Suisse affiliate at the Bank of New York in New York (the "BNY Account") to receive Sentry redemptions and make subscription payments. Compl. ¶ 5; Longo Decl., Exs. 5 (at p. 6), 16-20. Trincastar received retrocession fees from FGG in connection with both its own and others' Sentry investments, including those of affiliate Credit Suisse London Nominees, Ltd.; Trincastar used the BNY Account to receive those fee payments as well. Longo Decl., Exs. 21 (at pp.11-12, Line 68), 22 (at p. 14, Line 68), 23.

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA liquidation proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property. Compl. ¶ 33. In 2011, the Trustee settled with Sentry. *Id.* ¶ 34. As part of the settlement, Sentry consented to a judgment for $3.054 billion, but repaid only $70 million to the BLMIS estate. *Id.* The Trustee then commenced a number of

adversary proceedings to recover the approximately $3 billion in missing customer property, including the above-captioned matter.

**ARGUMENT**

## I.      THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER TRINCASTAR

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.")). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) ("*In re Fairfield Sentry*"). First, the court assesses whether the defendant purposefully established "minimum contacts" with the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice."

6

*Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ("*Maxam*") (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, (2021)) (emphasis in original). Specific jurisdiction, however, does not require "proof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id.* (emphasis added). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Id.* at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque Syz*, 2022 WL 2135019, at *4 (same); *Carige*, 2022 WL 2387522, at *3 (same). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *4; *Societe Generale*, 2022 WL 4349859, at *5; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment the burden shifts to the defendant to present a

7

"compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

Overall, rather than analyze each contact in isolation, the court must look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

A.      **Trincastar Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the United States and the Trustee's Claims Arise out of or Relate to Such Availment**

As detailed above and below, Trincastar had a number of contacts with New York that establish this Court's jurisdiction. Most significantly, Trincastar, among other things, (1) purposefully targeted the New York securities market by investing in Sentry, knowing that its assets were managed and custodied by BLMIS in New York; (2) designated and used New York bank accounts to transact with Sentry including to receive redemptions and retrocession fee payments from FGG; and (3) worked together with FGG in New York as to Sentry investments and those of Credit Suisse globally and on marketing FGG investments in Latin America. Certain of these contacts independently establish jurisdiction. Based on the totality of these contacts, jurisdiction unquestionably exists. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum.").

### 1. Trincastar's Knowing and Intentional Investments with BLMIS through Sentry Are Sufficient Grounds for Jurisdiction

Trincastar knowingly and intentionally directed millions of dollars to BLMIS in New York through Sentry in order to invest in the U.S. securities markets. Compl. ¶¶ 2, 5. Such activity constitutes purposeful availment of the forum and establishes a *prima facie* showing of jurisdiction over Trincastar. *See, e.g., Carige*, 2022 WL 2387522, at *2; *Societe Generale*, 2022 WL 4349859, at *3.

Sentry investors such as Trincastar were required to affirm in subscription documents that they received and read the IMs. As such, Trincastar knew that (1) Sentry allocated its assets to an account at BLMIS, which acted as sub-custodian of those assets; (2) Sentry delegated management of its investment activities to BLMIS, which performed all investment management duties for those assets; (3) BLMIS was a registered broker-dealer in New York; (4) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury bills; (6) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; and (7) BLMIS was "essential to the continued operations of" Sentry. *See* Compl. ¶ 5; Longo Decl., Ex. 15 at pp. 6, 10-11, 15, 16-19, 39, 41. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("*ET Decision*").

### a. *BLI* and Recent Decisions of This Court Establish Jurisdiction

Based on a defendant's demonstrated intention to invest with BLMIS through Sentry, Judge Lifland concluded a number of years ago that Sentry investors such as Trincastar are subject

to personal jurisdiction. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of . . . millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee executed subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507-08. And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous." *Id.* at 517 ("BLI's investments in Fairfield Sentry did not merely 'end up' in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.").

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87; *Carige*, 2022 WL 2387522, at *3. In those cases, just as here, the Trustee asserted allegations as to the purpose of the investment in Sentry for ultimate investment with BLMIS. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87. Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Id.* at 87. This Court has further clarified that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the pre-

discovery stage of litigation." *Carige*, 2022 WL 2387522, at *2; *see also, e.g., Lombard Odier*, 2022 WL 2387523, at *2.

As with the foregoing cases, the Complaint, supplemented by the Longo Declaration, makes clear that Trincastar knowingly directed its funds to be invested with New York-based BLMIS and that this was the fundamental purpose of Trincastar's Sentry investments. Compl ¶ 2, 5. In short, Trincastar "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Carige*, 2022 WL 2387522, at *3 (quoting *BLI*, 480 B.R. at 506). As such, the foregoing cases are controlling and resolve Trincastar's personal jurisdiction defense without the need for inquiry into its additional U.S. contacts.

b.    <u>*Walden* Does Not Save Trincastar from This Court's Jurisdiction</u>

Rather than directly address *BLI*, Trincastar instead relies upon *Walden v. Fiore*, 571 U.S. 277 (2014), to argue that "[m]ere knowledge that Sentry would invest in New York is insufficient to support jurisdiction." Motion at 7. However, *Walden* is of "no assistance to Defendant." *Multi-Strategy*, 641 B.R. at 87. The facts and applicable law of *Walden* are significantly different from those here, and do not support Trincastar's argument.

The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada. *Id*. at 288-89. The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," nor was the officer's seizure of funds predicated in any way on the fact that their intended destination was Nevada. *Id*. at 289. The Court of Appeals applied the "effects" test applicable in intentional tort cases and found jurisdiction despite the above facts, because the officer had seized money in Georgia from a Nevada resident and therefore the seizure would have some foreseeable effect in Nevada. *Id*. at 290-91. The Supreme Court disagreed, finding that the defendant had "formed no jurisdictionally

11

relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff resided in Nevada. *Id.* at 289-91. In so holding, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *Id.* at 284, 289 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

This case is nothing like *Walden*. As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework (not the "effects" test), a concept that the Court in *Walden* did not apply. Nor is the police officer's lack of "any jurisdictionally relevant contacts with Nevada," *Walden*, 571 U.S. at 289, remotely analogous to Trincastar's intentionally directing millions of dollars in investments over the course of many years to New York-based BLMIS through a feeder fund formed for this express purpose.

Trincastar overstates its case when it argues that a finding of personal jurisdiction here would ensnare any "investor without any U.S. contacts who invests in a foreign investment fund that in turn invests the fund's assets in U.S. securities." Motion at 7. Trincastar's attempt to characterize its investments' New York destination as just a foreseeable consequence, rather than a deliberate and purposeful targeting of the forum, is the same "disingenuous" argument the Court rejected in *BLI*. The Trustee is also not arguing that every investor should automatically be subject to jurisdiction in all forums where its investment company happens to do business. Rather, under the facts of *this* case—where Trincastar has entered into agreements expressly indicating its intent to direct custody and control over all of its funds to a specific U.S. broker-dealer in order to knowingly profit from the U.S. securities markets—such a defendant has purposefully availed

itself of the laws and protections of the United States.[5]  The fact that Trincastar invested into

BLMIS through Sentry rather than directly also does not defeat jurisdiction—Trincastar's contacts

with New York were "intertwined with [its] transactions or interactions with the plaintiff or other

parties," *Walden*, 571 U.S. at 286, and thus support jurisdiction.

## 2.    Trincastar's Purposeful Use of New York Bank Accounts Establishes Jurisdiction

This Court further has jurisdiction because Trincastar purposefully used the New York

banking system to subscribe into and redeem from Sentry (as well as receive fees related to its and

its affiliate's investments).  As this Court has held, "by alleging that Defendants used a New York

bank account, the Trustee has met his burden of alleging jurisdiction over each transfer received

through that New York bank account." *Societe Generale*, 2022 WL 4349859, at *6.

Courts have often held that a defendant's purposeful use of a domestic bank account is

sufficient to establish personal jurisdiction.  *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC),

2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-

arm statute based solely on defendant's use of New York account to receive payment at issue);

*HSH Nordbank AG New York Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at

*4 (S.D.N.Y. July 18, 2012) (finding jurisdiction under New York long-arm statute based solely

on defendants' use of a New York account to receive fraudulent conveyances at issue); *Dandong

v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013) (finding jurisdiction

in New York based solely on defendant's use of New York accounts to facilitate alleged fraud).

In this SIPA liquidation proceeding, this Court has similarly found jurisdiction where initial and

subsequent transferee defendants invested through and received transfers from U.S. bank accounts.

---

[5] Trincastar's reliance on *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) is misplaced, as
the Trustee is not imputing Sentry's contacts to Trincastar as its agent.

*See Societe Generale*, 2022 WL 4349859, at *4 ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New York bank account); *see also Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

Based on the foregoing case law, Trincastar's uses of the BNY Account and the Sentry New York Account, described *supra*, alone are sufficient to confer personal jurisdiction over Trincastar. That the BNY Account and Sentry New York Account may have been correspondent does not change the analysis. Courts have held that the use of a correspondent bank account is also sufficient to establish personal jurisdiction. In the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012); *see also Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same). All that is necessary for "purposeful" use is that it was not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39 (finding jurisdiction where use of correspondent account was not "coincidental," and distinguishing case where defendant passively received funds due entirely to another party's actions).

14

Here, the BNY Account was in the name of Trincastar's affiliate, and Trincastar directed Sentry to send redemption payments to this account, making the purposeful use of such account by Trincastar obvious.  Trincastar's use of the Sentry New York Account was also purposeful because Trincastar agreed and intended to use that account.  *See Esso Expl. & Prod. Nigeria Ltd.,* 397 F. Supp. 3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].").  That Sentry's IMs mandated subscribers to use the Sentry New York Account is also irrelevant, because Trincastar voluntarily entered into its subscription agreements with Sentry.[6]  *See In re Arcapita Bank B.S.C.(C)*, No. 21 CIV. 8296 (AKH), 2022 WL 1620307, at *6 (S.D.N.Y. May 23, 2022) (defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *In re Motors Liquidation Co.,* 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

Trincastar relies on a trio of cases, where common law claims were brought against fund service providers, for the proposition that the jurisdictional contacts identified by the Trustee are insufficient.  Motion at 8-9 (citing *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590 (LTS)(SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)).  The Court has already determined that this line of cases is not relevant to the Trustee's actions against defendants like

---

[6] It makes no difference if a Citco entity chose to use the Sentry NY Account on behalf of Sentry, as various Citco entities acted as FGG's agents.  *See Igoin*, 525 B.R. at 884 (conduct of agent is attributed to principal for purposes of jurisdictional analysis).

Trincastar that invested in BLMIS feeder funds.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing

on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the

Tremont Funds which arose from their New York contacts with the Tremont Funds.").  This action

is not a dispute between two parties about services owed under a foreign contract, like the breach

of fiduciary duty and other claims in *SPV Osus*, *Hill*, and *Hau Yin To*.[7]  Rather, it is an action

brought by a SIPA Trustee in a SIPA liquidation proceeding to recover fraudulent transfers from

investors whose transfers of funds to and from New York were for the sole purpose of investing

with a New York-based broker-dealer purportedly trading U.S. securities.  *See BLI*, 480 B.R. at

513 ("This movement of money to and from BLMIS in the United States, as contemplated by the

Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the 'raison

d'etre' of the Agreement between BLI and Fairfield Sentry.").

### 3.    Trincastar Had Significant Other Contacts With the United States in Connection with its FGG Investments

Trincastar engaged in other significant and related business activity with FGG New York,

creating additional U.S. jurisdictional contacts.  As set forth *supra* at p. 4, Haegler worked directly

with Walter Noel, his brother-in-law, in New York on placing Sentry and other FGG funds on

Credit Suisse's global platform and on marketing FGG investments in Latin America.  These

business activities are additional jurisdictionally relevant contacts.  *See Liberatore v. Calvino*, 293

A.D.2d 217, 742 N.Y.S.2d 291, 293 (App. Div. 2002) (holding that jurisdictionally relevant

transactions may be found solely on the basis of phone, mail, and electronic communications)

(citing cases).[8]

---

[7] Trincastar's reliance on *SPV Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is particularly questionable given the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction.  141 S. Ct. at 1026-30.

[8] The Complaint also alleges, upon information and belief, that Trincastar submitted to New York jurisdiction pursuant to a subscription agreement and that it sent a copy of the subscription agreement to FGG's New York City office.

### 4.    Trincastar's Remaining Arguments Against Jurisdiction Are Unavailing

Trincastar's argument that personal jurisdiction "must be evaluated on a transaction-by-transaction basis" is unavailing.  Motion at 8-9 (citing *Goodyear Dunlop Tires Operations*, 564 U.S. at 919 (2011); *BNP*, 594 B.R. at 190).  Trincastar misconstrues the requirements for personal jurisdiction and the Court's prior holding in *BNP*.  Courts have personal jurisdiction over *defendants*, not *transfers*.  *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316.  Courts must assess a defendant's contacts with the forum, not a transfer's.  *SPV Osus*, 882 F.3d at 334 (quoting *Walden*, 571 U.S. at 283-84, for proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"); *see also BNP*, 594 B.R. at 189 (quoting same).  Provided the Court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the Court may adjudicate any claims, so long as they are sufficiently related to those contacts.  *See Ford Motor*, 141 S. Ct. at 1026-28, 1032.  This is precisely what the Court did in *BNP*.  The Court did not look at each transfer to determine jurisdiction; the Court assessed each defendant, focused on the overall relationship with the initial transferees, and determined it had jurisdiction.  *BNP*, 594 B.R. at 191 (finding jurisdiction for "any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds").

---

Compl. ¶ 5.  Trincastar questions these allegations (Motion at 9-10), but the allegations as to such actions—which are consistent generally with Sentry investor practices—shall be accepted as true for purposes of a motion to dismiss.  *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)).

In any event, contrary to Trincastar's arguments (Motion at 9), the Trustee is not arguing that this Court has jurisdiction based on Trincastar's consent to jurisdiction, but rather that Trincastar's agreement to New York jurisdiction provides yet another jurisdictional contact with New York.  *See BLI*, 480 B.R. at 517 n.15.  As such, Judge Bernstein's prior decision in the Fairfield Chapter 15 liquidation proceedings is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).

### 5.    Trincastar's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims

This Court's recent decisions and other applicable case law make clear that the Trustee's claims "arise out of or relate to" Trincastar's contacts with the United States.  As the Supreme Court recently held, the "relate to" test does not require a causal relationship.  *See Ford Motor*, 141 S. Ct. at 1026-30.  Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that claim is not completely "unmoored" from transaction).

This Court has already found that the Trustee's recovery actions against defendants similarly situated to Trincastar are "directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4.  Here, the Trustee is seeking to recover the very transfers that Trincastar received through the BNY Account, and thus Trincastar's use of this and other accounts supports jurisdiction.  *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts"); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding that defendant's contacts with the forum and the Trustee's claims are "inextricably related").  Similarly, Trincastar could not have received the transfers at issue from Sentry without first investing in Sentry and entering into the related agreements.  Thus, contrary to Trincastar's arguments, the Trustee's allegations as to its U.S. investment activity plainly "relate to" the Trustee's claims.  *See, e.g., Carige*, 2022 WL 2387522, at *4.

### B.        The Exercise of Personal Jurisdiction over Trincastar is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted).  Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165.  Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum."  *BNP*, 594 B.R. at 188 (citation omitted). Trincastar fails to present any reason, let alone a compelling reason, why jurisdiction would be unreasonable.

This is not that "rare" case and the burden on Trincastar is minimal.  *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden).  Just as this Court found in numerous other adversary proceedings in this SIPA liquidation proceeding, the exercise of jurisdiction over Trincastar is reasonable because "[d]efendant is not burdened by this litigation" as it "has actively participated in this Court's litigation for over ten years," and is "represented by highly competent U.S. counsel." *E.g., Banque Syz*, 2022 WL 2135019, at *5.  Moreover, this "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court."  *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz* at *5; *see also ET Decision*, 917 F.3d at 103 (noting that the United States has a "compelling interest in allowing domestic estates to recover fraudulently transferred property"). Accordingly, this Court's exercise of jurisdiction over Trincastar is more than reasonable.

19

C.      **In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery**

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery because the Trustee has made a threshold

showing of jurisdiction, and "additional facts to establish personal jurisdiction . . . lie within [the

defendant's] knowledge." *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022

WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a *prima

facie* case for jurisdiction to obtain jurisdictional discovery); *see also Kiobel v. Royal Dutch

Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16,

2009) ("Such discovery may be authorized where a plaintiff has made 'a threshold showing' that

there is some basis for the assertion of jurisdiction.").   The Trustee has shown how Trincastar,

*inter alia*, knowingly and purposely subscribed with Sentry for the purpose of investing in the U.S.

securities markets, and repeatedly used U.S. bank accounts to transact business with Sentry and

receive fees from FGG in connection with Sentry investments.  *See supra* pp. 8-17.  At a minimum,

these facts establish a "threshold showing" of jurisdiction.  *Kiobel*, 2009 WL 3817590, at *6; *see

also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar.

9, 2006) (granting discovery because allegations of wire transfers through United States made a

"sufficient start" toward establishing jurisdiction).

## II.      SECTION 546(E) DOES NOT BAR RECOVERY FROM TRINCASTAR

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013

WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial

transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe

harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year

period referenced in Section 548(a)(1)(A).  Trincastar now argues that Section 546(e) bars all of

the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period,

even though the Trustee has pled Sentry's actual knowledge.  Motion at 10-18.  As discussed

below, Trincastar's argument is based on a misreading of Section 546(e) and *Cohmad*, and this

Court has rejected this argument in numerous other adversary proceedings commenced by the

Trustee.  *See, e.g., Multi-Strategy*, 641 B.R. at 92-95.

### A.    <u>Sentry Had Actual Knowledge of Madoff's Fraud</u>

Trincastar sets forth at length the requirements of Section 546(e) and how they are

presumably met in this case with respect to the initial transfers from BLMIS to Sentry.  Motion at

11-16.  None of this matters.[9]  This Court previously held that the Trustee sufficiently pled that

Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable.  *Multi-*

*Strategy*, 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).  As such,

Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers

may be recovered from Trincastar regardless of whether Sentry qualifies as a financial institution,

any agreements between Sentry and Trincastar qualify as securities contracts, or their transfers

qualify as settlement payments.[10]

---

[9] The Trustee does not concede that any agreements or transfers between the Sentry and Trincastar activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede that the initial transfers were "in connection with" the subscription agreements with Trincastar or that they were made "for the benefit of" Trincastar.  The Trustee alleges in the Complaint that Trincastar is a subsequent transferee, and a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (citing cases).  The Trustee also takes no position on Trincastar's calculations as to which transfers are inside or outside the 2-year window (Motion at 4-5, 11-12); such information is irrelevant as Section 546(e) does not apply here.

[10] Though not necessary to the Court's analysis, we note that Trincastar's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect.  *See* Motion at 16 n.14.  Trincastar cites no relevant authority for this argument because none exists.  For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion.  And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties."  *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

### B.    Trincastar Is Precluded from Relitigating the Actual Knowledge Exception

Trincastar questions the propriety of the actual knowledge exception established in *Cohmad* (Motion at 17-18).   This exception was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e), and as Trincastar concedes, that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e).  Motion at 16-17 (quoting *Cohmad*, 2013 WL 1609154, at *7). Trincastar participated in the District Court proceedings and the District Court's review of this issue.  As such, Trincastar is bound by *Cohmad* and that decision is law of the case.  *See Omnibus Good Faith Decision*, 531 B.R. at 466 ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

Nor does the Second Circuit's decision in *Picard v. Ida Fishman Recoverable Trust (In re BLMIS)* warrant reconsideration of *Cohmad*'s actual knowledge exception.  773 F.3d 411 (2d Cir. 2014) ("*Fishman*").  As this Court has recognized, *Fishman* did not address the actual knowledge exception.  *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) ("The Court did not address the exception to the safe harbor regarding those investors who had actual knowledge that BLMIS was not trading securities.").

### C.    Section 546(e) Does Not Apply Independently to Recovery Actions

Trincastar is wrong that the Trustee must allege that a subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e).  Trincastar argues that under *Cohmad*, its agreements with Sentry function as the relevant "securities contract" for purposes of Section 546(e) (in lieu of BLMIS's account agreement), and as such suggests that the court must look to Trincastar's (i.e., the subsequent transferee's) knowledge, in a Section 550 recovery action against it, to determine whether the initial transfer is avoidable.  Motion at 17.  But

22

*Cohmad* does not stand for this proposition, and Trincastar's argument merely repackages the already-rejected arguments that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550. As this Court recently held, based on the same arguments made by Trincastar here, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *E.g., Multi-Strategy,* 641 B.R. at 94-95.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).[11] The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013) ("*In re Madoff Sec.*"). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See ET Decision*, 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[12] However, in its decision, the court specifically limited the safe harbor to avoidance claims

---

[11] *See also Multi-Strategy,* 641 B.R. at 94 (citing *BNP*, 594 B.R. at 197); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("*SHMA*") (citing same).

[12] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9

(applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees

can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and

subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to

the *initial* transfer from Madoff Securities.") (emphasis added).    And though the court

hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial

transferee feeder fund, and related agreements and transactions, might under certain circumstances

constitute relevant "securities contracts," and that certain subsequent transferee defendants might

qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

the safe harbor is still on the *initial* transfers.  *See id.*, at *9.[13]  Contrary to Trincastar's argument,

the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such

circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not

recovery, and most notably that a subsequent transferee cannot assert the protections of Section

546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  *See BNP*,

594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the

safe harbor defense only applies by its terms to the initial transfer").  In *BNP*, this Court explicitly

---

[13] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that, if necessary, their subscription agreements could act as the relevant securities agreements under Section 546(e) in lieu of the BLMIS customer agreements. *Id.*, 2013 WL 1609154, at *8.  That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cited in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome.  The focus is still on the initial transfers, which, as the Second Circuit has already determined for purposes of Section 546(e) and is no longer debatable, are the transfers from BLMIS to its feeder funds.  *See Fishman*, 773 F.3d at 422-23.

24

rejected the argument being made here that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee is afforded only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case on this issue, and Trincastar is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Trincastar nevertheless argues that to the extent a party relies on Sentry's agreements as the relevant "securities agreements" in accordance with *Cohmad*, the Court must look to the actual knowledge of the subsequent transferee. Motion at 17. But as explained above, the District Court did not conclude this, and *BNP* confirmed this was not the case. This Court rejected these same arguments time and again in other proceedings, holding in each that, "[t]he safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'" *See*, *e.g.*, *Multi-Strategy,* 641 B.R. at 94 (quoting *BNP*, 594 B.R. at 197); *Lombard Odier*, 2022 WL 2387523, at *9 (same).

Trincastar also misconstrues *Cohmad*'s holding—which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also

prohibited from benefitting from the safe harbor. Motion at 18. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. Rather, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7.

Trincastar's position on Section 546(e) and *Cohmad* is neither correct nor viable. Trincastar's misinterpretation of *Cohmad* would mean the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection, thus effectively eliminating the point of the actual knowledge exception. It would also allow the determination as to avoidability of an initial transfer to vary based on whether there were subsequent transfers, and who received them. It further would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent. *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."); *see also Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008).

## CONCLUSION

The Trustee respectfully requests that the Court deny Trincastar's motion.

Dated: September 28, 2022
      New York, New York

/s/ Howard L. Simon
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Robert J. Luddy
Email: rluddy@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Alex Jonatowski
Email: ajonatowski@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff*