**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT SUISSE AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG,<br><br>Defendants. | Adv. Pro. No. 12-01676 (CGM)<br><br>**REPLY IN FURTHER SUPPORT OF CREDIT SUISSE'S MOTION TO DISMISS** |

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Attorneys for Credit Suisse AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. THE FAIRFIELD COMPLAINT'S INCORPORATION IS IMPROPER. ..... 2

A. The Trustee's Incorporation by Reference Flouts Second Circuit Law. ..... 3

B. Law of the Case Cannot Salvage the Trustee's Defective Pleading. ..... 5

II. THE FAC DOES NOT PLAUSIBLY ALLEGE THAT THE CREDIT SUISSE REDEMPTIONS WERE BLMIS PROPERTY. ..... 6

A. The Trustee's Opposition Confirms That It Is Implausible That the Credit Suisse Redemptions Include BLMIS Customer Property. ..... 6

B. The Trustee Does Not Adequately Allege That the Funds Transferred Originated with BLMIS. ..... 9

III. THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE DEFENSE. ..... 12

IV. SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS. ..... 15

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page**

**CASES**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1, 7

*Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*,
801 F. Supp. 2d 211 (S.D.N.Y. 2011) .......... 3

*David v. Bifani*,
2007 WL 1216518 (D. Colo. Apr. 24, 2007) .......... 4

*DeLollis v. Friedberg, Smith & Co.*,
600 F. App'x 792 (2d Cir. 2015) .......... 14

*Gilmore v. Rivera*,
2014 WL 1998227 (S.D.N.Y. May 14, 2014) .......... 15

*Gowan v. Amaranth Advisors, LLC*,
2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .......... 8

*In re Dreier LLP*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011) .......... 13

*In re Geiger*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) .......... 3, 4

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019) .......... 18

*In re Terrestar Corp.*,
2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) .......... 6

*Jones v. Bock*,
549 U.S. 199 (2007) .......... 12, 15

*Kelley v. Westford Special Situations Master Fund, L.P.*,
2020 WL 3077151 (D. Minn. June 10, 2020) .......... 8

*Levitch v. Columbia Broad. Sys., Inc.*,
94 F.R.D. 292 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983) .......... 3, 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Mass. Mut. Life Ins. Co. v. Residential Funding Co.*,
843 F. Supp. 2d 191 (D. Mass. 2012) ........ 3

*Mishkin v. Ageloff*,
299 F. Supp. 2d 249 (S.D.N.Y. 2004) ........ 18

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ........ 3

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ........ 12, 13

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ........ 8

*Picard v. ABN Amro Bank N.A.*,
2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ........ 2, 14, 15

*Picard v. ABN Ireland*,
2022 WL 1304589 (S.D.N.Y. May 2, 2022) ........ 13

*Picard v. Banque Cantonale Vaudoise*,
No. 1:22-cv-07189-JSR (S.D.N.Y.) ........ 2

*Picard v. Banque SYZ & Co., SA*,
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ........ 12, 17

*Picard v. Banque SYZ & Co., SA*,
No. 1:22-cv-06512-JSR (S.D.N.Y.) ........ 2

*Picard v. Barclays Bank (Suisse) S.A.*,
2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ........ 4, 6

*Picard v. BNP Paribas S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........ 10, 17

*Picard v. Bordier & Cie SCmA*,
No. 1:22-cv-07195-JSR (S.D.N.Y.) ........ 2

*Picard v. Charles Ellerin Rev. Tr.*,
2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ........ 8, 10

*Picard v. Cohmad*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........ 16, 17, 18, 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Picard v. Cohmad*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........ 8, 9

*Picard v. Fairfield Inv. Fund*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........ 5, 7, 18

*Picard v. Ida Fishman Revocable Tr.*,
773 F.3d 411 (2d Cir. 2014) ........ 16

*Picard v. Lowrey (In re BLMIS)*,
596 B.R. 451 (S.D.N.Y. 2019) ........ 6

*Picard v. Merkin*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........ 12, 13, 14

*Picard v. Merkin*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........ 9, 11

*Picard v. Multi-Strategy Fund Limited*,
No. 1:22-cv-06502-JSR (S.D.N.Y.) ........ 2

*Picard v. Multi-Strategy*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........ 3, 6, 10, 17

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........ 7, 8, 10, 11

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ........ 5

*Sapia v. Home Box Off., Inc.*,
2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ........ 8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
501 B.R. 26 (S.D.N.Y. 2013) ........ 4, 6, 18

*Sherman v. A.J. Pegno Constr. Corp.*,
528 F. Supp. 2d 320 (S.D.N.Y. 2007) ........ 4

*SunEdison Litig. Tr. v. Seller Note, LLC*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ........ 17

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ........ 3

## TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. U.S. Telecom Long Distance, Inc.*,
2018 WL 4566673 (D. Nev. Sept. 24, 2018) ............ 4

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
39 F. Supp. 3d 461 (S.D.N.Y. 2014) ............ 13

**STATUTES**

11 U.S.C. § 546(e) ............ 1, 15, 18

11 U.S.C. § 550 ............ 13

11 U.S.C. § 550(a) ............ 5

11 U.S.C. § 550(b) ............ 1, 14

11 U.S.C.A. § 546 ............ 18

**OTHER AUTHORITIES**

2A Moore's Federal Practice P 10.05 (1981) ............ 4

**RULES**

Fed. R. Civ. P. 10(c) ............ 3, 4

Fed. R. Civ. P. 8 ............ 4

Fed. R. Civ. P. 8(a) ............ 4

Fed. R. Civ. P. 8(a)(2) ............ 1

## PRELIMINARY STATEMENT

The Trustee does not contest that the Federal Rules require a "short and plain statement" of a plausible claim for relief.[1] Yet he persists in his argument that his FAC[2] against Credit Suisse satisfies these standards even though it (i) incorporates wholesale unspecified portions of a 798-paragraph, 31-count complaint against other parties not named in this action (and therefore is not "short and plain"); (ii) asserts claims against subsequent transferees for amounts that exceed the alleged initial transfers (and therefore is not "plausible"); and (iii) alleges facts establishing Credit Suisse's affirmative defenses under Sections 550(b) and 546(e) (again rendering the Trustee's claims implausible). The Trustee's efforts to defend the indefensible all fall flat:

- In contending that his indiscriminate incorporation of the *Fairfield* complaint is permitted under Rule 8, the Trustee ignores controlling Second Circuit law requiring that a plaintiff make clear which statements are to be incorporated. Unsurprisingly, none of the cases the Trustee cites permitted a plaintiff to do what the Trustee tries to do here. For this reason, the Trustee's argument that some of those decisions are "law of the case" merely dooms his claims, because they are not adequately pleaded under those authorities.

---

[1] Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

[2] This Memorandum uses the following definitions: (i) "FAC" means the First Amended Complaint filed by the Trustee in this action, ECF No. 12, *Picard v. Credit Suisse AG,* Adv. Pro. No. 12-01676 (Bankr. S.D.N.Y. July 30, 2012); (ii) "Motion" means Credit Suisse's *Memorandum of Law in Support of Defendants' Motion to Dismiss*, ECF No. 88, *Picard v. Credit Suisse AG,* Adv. Pro. No. 12-01676 (cited herein as "Motion"); (iii) "Opposition" means the Opposition filed by the Trustee in this action, *Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint,* ECF No. 91, *Picard v. Credit Suisse AG*, Adv. Pro. No. 12-01676 (cited herein as "Opp."); (iv) "Credit Suisse" means Defendant Credit Suisse AG, the named defendant as successor-in-interest to Clariden Leu AG (f/k/a Clariden Bank AG) ("Clariden Leu") and Bank Leu AG ("Bank Leu"); (v) "Trustee" means Plaintiff Irving H. Picard; (vi) "BLMIS" means Bernard L. Madoff Investment Securities LLC; (vii) "Sentry" means Fairfield Sentry Limited; (viii) "Sigma" means Fairfield Sigma Limited; (ix) "Lambda" means Fairfield Lambda Limited; (x) "Fairfield Funds" means Sentry, Sigma, and Lambda, collectively; (xi) the "Fairfield Amended Complaint" means ECF No. 23 in *Picard v. Fairfield Sentry Limited*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) (cited herein as "Fairfield Am. Compl. ¶ __"); (xii) "Fairfield Second Amended Complaint" means ECF No. 286 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020); (xiii) "Fairfield Settlement Agreement" means ECF No. 69-2 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011); (xiv) "Redemption Payments" means payments Credit Suisse allegedly received in exchange for redeeming shares in Fairfield Funds in the relevant time period, as identified in Exs. E, G, and I of the FAC (the "Redemption Payments"). Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

- The Trustee concedes that the FAC must plead the "necessary vital statistics" showing that the transfers Credit Suisse received originated with Madoff Securities. (*See* Opp. at 10.) This should end the matter, because the Trustee seeks $1 billion more from subsequent transferees than he alleges Madoff transferred to Sentry. There is simply no way of telling from the FAC whether any one of the Credit Suisse transfers allegedly began with Madoff Securities or came from other funds that Sentry received, such as other investors' money destined to be invested with Madoff that Sentry simply "crossed" on their own books. Given this, the FAC does not plausibly plead that the transfers initiated with Madoff and must be dismissed for this separate and independent reason.

- As for the good-faith defense, the Trustee does not contest that an affirmative defense can provide the basis for dismissal where the facts establishing the defense are evident from the complaint's face. Instead, he argues that the FAC—which pleads that Credit Suisse surrendered interests in the feeder funds in exchange for the challenged transfers—does not plead that Credit Suisse gave "value" for those transfers. But Judge Bernstein has already held the opposite.[3] And the Trustee argues that Credit Suisse's good faith is suspect because it must have known Madoff was a fraud, but the FAC rests entirely on conclusory statements that separate it from the cases successfully alleging such claims based on particularized facts peculiar to the defendant at issue.

- And as for the section 546(e) defense, the Trustee's sole argument rests on a misreading of *Cohmad* to argue that subsequent transferees may not invoke the safe harbor at all. While the Trustee is correct that this Court has so held, the District Courts (whose decisions are binding on the Trustee and this Court) agree that this defense is available to subsequent transferees. Indeed, Judge Rakoff—who authored *Cohmad*—has accepted an interlocutory appeal on this Court's prior rulings in *Banque SYZ*, *Multi-Strategy*, *Bordier & Cie*, and *Banque Cantonale Vaudoise* and will be hearing oral argument on full briefing in October.[4] The Court should either follow *Cohmad* as correctly interpreted and dismiss the claims under Section 546(e), or else hold this motion in abeyance until Judge Rakoff can settle the issue.

## ARGUMENT

## I. THE FAIRFIELD COMPLAINT'S INCORPORATION IS IMPROPER.

The Trustee does not contest that the FAC cannot state a claim without relying on the *Fairfield* complaint because without those allegations, the FAC does not plead a voidable initial

[3] *See Picard v. ABN Amro Bank N.A.*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) ("*ABN Amro*") ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

[4] *Picard v. Banque SYZ & Co., SA*, No. 1:22-cv-06512-JSR (S.D.N.Y.) ("*Banque SYZ II*"); *Picard v. Multi-Strategy Fund Limited*, No. 1:22-cv-06502-JSR (S.D.N.Y.) ("*Multi-Strategy II*"); *Picard v. Bordier & Cie SCmA*, No. 1:22-cv-07195-JSR (S.D.N.Y.) ("*Bordier & Cie*"); *Picard v. Banque Cantonale Vaudoise*, No. 1:22-cv-07189-JSR (S.D.N.Y.) ("*Banque Cantonale Vaudoise*").

transfer. Instead, the Trustee focuses entirely on arguing that incorporation by reference was permissible here because this case and the *Fairfield* case are the same under Rule 10(c). (Opp. at 6–7.) The Trustee is wrong.

**A. The Trustee's Incorporation by Reference Flouts Second Circuit Law.**

The Trustee simply ignores controlling Second Circuit law requiring that a plaintiff make "clear which statements are to be incorporated."[5] Here, the Trustee incorporates unspecified portions of a sprawling 798-paragraph, 31-count complaint without explaining which allegations actually support his pleading here. Because the Trustee has tacitly conceded that, absent incorporation, his complaint fails to plead a voidable initial transfer—an indispensable element of his claims against Credit Suisse—the FAC should be dismissed. (Opp. at 6–9.)

None of the cases the Trustee cites is to the contrary. Far from endorsing his indiscriminate incorporation effort, those cases underscore that wholesale incorporation such as that the Trustee has attempted here is improper under the Federal Rules.[6] Only in cases such as *Multi-Strategy*, where the challenged complaint specified the relevant paragraphs from the incorporated pleading, was incorporation by reference permitted.[7] Here, in contrast, the Trustee

---

[5] *Levitch v. Columbia Broad. Sys., Inc.*, 94 F.R.D. 292, 294 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) ("references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation"); *Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action."); *see also In re Geiger*, 446 B.R. 670, 679–80 (Bankr. E.D. Pa. 2010) (dismissing complaint as "conclusory" and "wholly insufficient" for improperly incorporating by reference other pleadings and leaving "the Defendant and the Court [] to sift through many pages of attached material trying to figure out which fact goes with which allegation").

[6] *Mass. Mut. Life Ins. Co. v. Residential Funding Co.*, 843 F. Supp. 2d 191, 215 (D. Mass. 2012) ("Generally, Defendants cannot incorporate by reference documents filed in other cases" and allegations "in pleadings in another action, even if between the same parties, cannot be incorporated by reference."); *In re Geiger*, 446 B.R. at 678–79 (the wholesale incorporation by reference of another complaint was a violation of Rule 8 even if incorporation was allowed under Rule 10(c)).

[7] *See Picard v. Multi-Strategy*, 641 B.R. 78, 91 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*") (allowing incorporation of separate pleading where complaint specified that it incorporated "paragraphs 1–10, 79–313, and 315–16"); *Picard*

has incorporated the *entire Fairfield* complaint without identifying the relevant allegations. As the court held in *In re Geiger* (a case the Trustee cites), this tactic fails "to satisfy the pleading requirement of Rule 8" because "rather than set forth the facts that support and lead to their allegations, the Plaintiffs attempt[ed] simply to incorporate" pleadings by reference.[8]

The Trustee argues that he complied with Second Circuit law by suggesting that (i) Credit Suisse can choose which incorporated arguments to which to respond (Opp. at 8), or (ii) he may rely on judicial notice (*id.* at 8–9). But neither proposition is correct. As to the first, courts routinely hold that a defendant should not be required to sift through a separate pleading and guess which allegations apply and which do not; indeed, this is the exact scenario Rule 10(c) was created to avoid, and why Rule 8 requires a "short and plain" statement of facts.[9] *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 10(c); (Motion at 8–10). As for judicial notice, the Trustee's argument that the Court may take notice of the "operative Second Amended Complaint" (Opp. at 8–9) against Fairfield founders because the Trustee has not even attempted to incorporate the

---

*v. Barclays Bank (Suisse) S.A.*, 2022 WL 2799924, at *6 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*") (allowing incorporation of separate pleading where complaint specified that it is incorporating the Second Amended Complaint and paragraphs "314–33"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re Madoff Sec.*") (in addition to incorporating allegations by reference, the complaint "further alleges the avoidability of these transfers outright"); *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 (S.D.N.Y. 2007) (allowing incorporation by reference in multi-party litigation of a standard complaint comprising the entirety of the claims).

[8] *In re Geiger*, 446 B.R. at 679–80 ("the most serious problem with the Complaint is that it leaves the reader—the Defendant and the Court—to sift through many pages of attached material trying to figure out which fact goes with which allegation. The Complaint itself . . . is conclusory and, therefore, wholly insufficient.").

[9] *See id.*; *see also Levitch*, 94 F.R.D. at 294 ("when a pleading incorporates other documents it must be clear which statements are to be incorporated from the other documents" (citing Fed. R. Civ. P. 10(c); 2A Moore's Federal Practice P 10.05 (1981)); *United States v. U.S. Telecom Long Distance, Inc.*, 2018 WL 4566673, at *2 (D. Nev. Sept. 24, 2018) (wholesale incorporation was impermissible and warranted dismissal where the Government left the defendant "in the untenable position of not knowing which allegations underpin the government's claims and thus what content [defendant] must respond to in its answer"); *David v. Bifani*, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (the court should not "be required to look to a separate complaint filed years ago . . . and determine exactly what additional claims for relief Plaintiff intends to plead in this case").

Fairfield *Second* Amended Complaint in this action. [10] (*See* FAC ¶ 52 (incorporating by reference the Fairfield Amended Complaint).) The Trustee's reliance on *Fairfield Investment Fund* is unavailing. (Opp. at 9.) The Court there did not address whether wholesale incorporation of an earlier, superseded pleading comports with Rule 8(a) or 10(c).[11] In fact, this Court cautioned that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."[12] Judicial notice does not relieve the Trustee of his burden to meet the pleading requirements of the Federal Rules of Civil Procedure and applicable case law concerning incorporation by reference. By incorporating the entire Fairfield Amended Complaint, and not specifying between the Fairfield Amended Complaint and the Second Amended Complaint, the Trustee puts at issue all claims he asserted against the Fairfield defendants, including a plethora of irrelevant allegations and exhibits unrelated to avoidability. (*See* FAC ¶ 52.)

**B. Law of the Case Cannot Salvage the Trustee's Defective Pleading.**

The Trustee also argues that, because the District Court held in *In re Madoff Securities* that the avoidability of the transfers from BLMIS to Kingate and Fairfield were sufficiently pleaded for purposes of section 550(a), the incorporation by reference of those allegations is the law of the case and thus the Court's hands are tied. (Opp. at 6–7.) Not so. In *In re Madoff Securities*, as the Trustee quotes in his Opposition, the complaint not only incorporated

---

[10] The Trustee also cites *Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000), to argue that a court may judicially notice a later-filed complaint. But in *Rothman*, the appellants submitted a copy of the later-filed complaint—which was filed after they had amended their complaint—with their opposition papers in order to request judicial notice. Here, the Trustee has done no such thing, despite having had more than two years since the Fairfield Second Amended Complaint was filed to do so.

[11] *See Picard v. Fairfield Inv. Fund*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").

[12] *Id.* at *2.

allegations by reference, but "further allege[d] the avoidability of [the] transfers outright."[13] And the complaints in the other cases the Trustee cites—*Multi-Strategy* and *Barclays*—specified the paragraphs they sought to incorporate, which the Trustee has not done here.[14] Thus, to the extent that these decisions are "law of the case" (Opp. at 7), they mandate dismissal here.

None of the other cases the Trustee cites applies the law of the case doctrine where (as here) the party did not participate in the proceedings. Those cases apply the doctrine only to bind defendants to rulings on arguments they had a full opportunity to contest earlier in the case. In *Lowrey*, for example, the defendants were parties to the prior, related decision that the District Court determined was the law of the case—they actively participated in that prior litigation and made the same arguments then that they sought to make again in *Lowrey*.[15] And *In re Terrestar Corporation* similarly says nothing about the sufficiency of incorporating by reference a complaint based on a decision in another case between different parties.[16] But Credit Suisse had no separate opportunity to be heard in the other Madoff-related cases; its participation was limited to consolidated briefing with more than 200 other defendants.

## II. THE FAC DOES NOT PLAUSIBLY ALLEGE THAT THE CREDIT SUISSE REDEMPTIONS WERE BLMIS PROPERTY.

### A. The Trustee's Opposition Confirms That It Is Implausible That the Credit Suisse Redemptions Include BLMIS Customer Property.

The Opposition does not dispute the mathematical impossibility of the Trustee's effort to collect more in subsequent transfers than the sum-total of the initial transfers he has challenged.

---

[13] *In re Madoff Sec.*, 501 B.R. at 36.

[14] *Multi-Strategy*, 641 B.R. at 91 (allowing incorporation of separate pleading where complaint specified that it incorporated "paragraphs 1–10, 79–313, and 315–16"); *Barclays*, 2022 WL 2799924, at *6 (allowing incorporation of separate pleading where complaint specified that it is incorporating the Second Amended Complaint and paragraphs "314–33").

[15] *Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 464 (S.D.N.Y. 2019) ("*Lowrey*").

[16] *In re Terrestar Corp.*, 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017).

(Opp. at 12–14.) Instead, the Trustee asserts that he can seek "recovery from Defendants in this action and from defendants in other actions . . . even in an aggregate amount that exceeds initial transfers," until he has been "fully satisfied." (Opp. at 12 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *12).) But the case on which the Trustee relies for this proposition, *Fairfield Investment Fund*, did not find—or even address the possibility—that the Trustee can assert claims to claw back more money from subsequent transferees than he concedes was transferred to the initial or intermediate transferees.[17] Instead, that case concerned whether the Trustee may seek recovery "against subsequent transferees for the *same transfers* that he has already recovered from the initial transferees."[18]

The Trustee also argues that his effort to claw back from subsequent transferees more than the amounts he alleges BLMIS transferred to Sentry presents a factual question requiring a "dollar-for-dollar accounting" that cannot be resolved on a motion to dismiss. (Opp. at 10; *see id*. at 12–13.) Not so. As the Supreme Court has instructed, a complaint "must be dismissed" if the plaintiff has "not nudged the [] claims across the line from conceivable to plausible."[19] The mere "possibility" that the Trustee may have a claim against Credit Suisse is not enough.[20] The Trustee cites only summary judgment decisions—which of course say nothing about his pleading burden—to argue that Credit Suisse's "customer property arguments" are inappropriate on a

[17] *See generally* 2021 WL 3477479.

[18] *Id.* at *12.

[19] *Twombly*, 550 U.S. at 570; *accord Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").

[20] *See Twombly*, 550 U.S. at 557.

motion to dismiss. (*Id*. at 12–14.)[21] The Trustee's failure here is not one of evidence; it is a failure to plead the facts necessary to make his claim plausible.

While the Trustee is correct that commingling legitimate funds with debtor-transferred funds does not automatically foreclose tracing the transfers to subsequent transferees—and thus the Trustee need not plead that a subsequent transfer is comprised *solely* of customer property (Opp. at 13)—the Trustee must nevertheless allege precisely which transfers to Credit Suisse include customer property, and from which initial transfer each subsequent transfer originates.[22] The Trustee does not even attempt to argue that he has satisfied (or even could satisfy) this basic requirement. Instead, the Trustee fights a straw man, arguing that Credit Suisse demands a "dollar-for-dollar accounting." (*Id*. at 10–11.) But this is a gross overstatement, as even a casual review of Credit Suisse's motion would reveal. (Motion at 11 ("The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much.'").)[23]

The Trustee also argues that he should be permitted discovery before his claims are dismissed on this basis. (Opp. at 14.) While some courts have been willing to grant a trustee "greater latitude" at the pleading stage (*id*.), that is only where the Trustee lacks access to information he needs to plead his claims.[24] That is not the case here. The Fairfield Settlement

---

[21] Citing *Kelley v. Westford Special Situations Master Fund, L.P.*, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020); *Picard v. Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) ("*Charles Ellerin*"); *Gowan v. Amaranth Advisors, LLC*, 2014 WL 47774, at *14-16 (Bankr. S.D.N.Y. Jan. 3, 2014).

[22] See *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

[23] Quoting *Shapiro*, 542 B.R. at 119.

[24] *Picard v. Cohmad*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).

Agreement granted the Trustee unfettered access to the Fairfield Funds' books and records. (Motion at 5; Fairfield Settlement Agreement ¶ 14.) The Trustee's access to these materials for more than a decade well positioned him to map out the flow of funds from BLMIS to Credit Suisse. (*See id.*) In fact, the stipulation the Trustee cites in the Opposition states that the defendants, including the Fairfield Funds, have "produced to the Trustee approximately 1 million documents, including transcripts of deposition testimony."[25] Nor is there any need to wait for expert opinion, as the Trustee contends. (*See* Opp. at 14.) To the extent that expert opinion is necessary for the Trustee to plead his claims as required by Rule 8, he could have and should have—before filing his complaints—retained such experts and had them evaluate the information the Trustee obtained from the Fairfield Funds. The Court should not reward his dilatory conduct by allowing his defective claims to proceed.

### B. The Trustee Does Not Adequately Allege That the Funds Transferred Originated with BLMIS.

The Opposition misstates the standard the Trustee must satisfy to plead that Credit Suisse received BLMIS customer property. Courts determining whether payments to a subsequent transferee "originated" from a debtor examine (i) the close temporal proximity between the alleged initial and subsequent transfers, (ii) whether corresponding amounts of money were transferred, and (iii) whether general details surrounding the transfers imply linkage.[26] The FAC addresses none of those factors. The Trustee's argument confirms as much, pointing solely to

---

[25] Stipulated Case Am. Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355.

[26] *See, e.g.*, *Picard v. Merkin*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*") (concluding that linkage was sufficiently implied where "several subsequent transfers took place contemporaneously or shortly after an initial transfer," including, for example, within 22 days, 15 days, 18 days, and 3 days of the initial transfers); *Cohmad*, 454 B.R. at 341 (finding the allegations sufficient to support linkage where the trustee "allege[d] that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond[ed] to the amounts paid by BLMIS to [initial transferees] and, subsequently, to [subsequent transferees]").

(i) boilerplate allegations that some unspecified portion of the initial transfers made their way to Credit Suisse at some unspecified point in time (Opp. at 10 (citing FAC ¶¶ 4-5, 51-52, 54-60)),[27] and (ii) the FAC's voluminous exhibits, none of which shows how *any* of the initial transfers ended up with Credit Suisse (*id*. (citing Exs. C–E)).

Rather than try to explain how the Trustee's square-peg pleading fits into the standard's round hole, the Trustee suggests that all he must allege is "sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." (Opp. at 9.)[28] But in his next breath, the Trustee concedes that this alone is not enough; the Complaint must allege the "necessary vital statistics—the who, when, and how much" outlined in *Shapiro*, quoted again in *BNP Paribas*, and further affirmed by this Court in *Multi-Strategy*.[29] (*Id.* at 10.)

The Trustee mischaracterizes Credit Suisse as arguing that *Shapiro* has somehow changed the pleading standard. (Opp. at 11–12.) But the parties agree on the legal standard and that *Shapiro* governs here. (*See id.*; Motion at 11.) Credit Suisse never argued that the Trustee needed to "perform a tracing analysis" or present a "dollar-for-dollar accounting of the exact funds at issue," as *Shapiro* warned was unnecessary under Rule 8(a), nor did Credit Suisse argue that any amount of commingling of funds would necessarily defeat the Trustee's claim. (Opp. at

[27] *See also* FAC ¶¶ 58–60 ("a portion of the Sentry Initial Transfers was subsequently transferred to, or for the benefit of, [Credit Suisse]").

[28] Citing *Charles Ellerin*, 2012 WL 892514, at *3.

[29] *Shapiro*, 542 B.R. at 119 (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"); *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*") ("[t]o plead a subsequent transfer claim, the Trustee must plead that the funds at issue originated with the debtor . . . [and] must allege the 'necessary vital statistics—the who, when, and how much–' of the purported transfers to establish an entity as a subsequent transferee of the funds"); *Multi-Strategy*, 641 B.R. at 90 ("[t]he plaintiff must allege the necessary vital statistics—the who, when, and how much—of the purported transfers to establish an entity as a subsequent transferee of the funds").

9, 13; *see* Motion at 11–12.) Rather, courts uniformly agree on what *Shapiro* requires: the "necessary vital statistics" that the Trustee has failed to allege here.[30]

In *Shapiro*, the court found that the complaint "lack[ed] the vital statistics necessary to support a subsequent transfer claim" because it did "not tie any initial transfer to any subsequent transfer or Subsequent Transferee," nor did it "plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves."[31] The Trustee baldly states in his Opposition that his "FAC meets these requirements" outlined in *Shapiro* (Opp. at 10), but as explained in the Motion, the conclusory statements he cites do not satisfy his pleading burden. (Motion at 11–12.) The FAC "does not tie any initial transfer to any subsequent transfer or Subsequent Transferee"[32]; it merely lists transfers from BLMIS to Sentry, without tying those transfers to the payment of any redemption request from Credit Suisse. The unadorned conclusion that the subsequent transfers identified on Exhibits E, G, and I originated with BLMIS is insufficient and mandates dismissal.

The cases the Trustee cites on this point demonstrate that the allegations here are insufficient under *Shapiro*. (*See* Opp. at 9–10.) In each of these cases, the complaints alleged enough "vital statistics" about each initial transfer and each subsequent transfer to plausibly imply a direct link between at least some of those transfers. In *Merkin II*, for example, the complaint included exhibits clearly showing that "several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . implying linkage."[33] And in *In re 45*

---

[30] *Shapiro*, 542 B.R. at 119.

[31] *Id.*

[32] *Id.*

[33] *Merkin II*, 515 B.R. at 150.

*John Lofts, LLC*, the complaint similarly demonstrated contemporaneous initial transfers and subsequent transfers such that a link between them was plausibly alleged.[34] The allegations in the Trustee's FAC against Credit Suisse fail to do this, and the FAC must therefore be dismissed.

## III. THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE DEFENSE.

While the Trustee makes much of the fact that affirmative defenses are the defendant's burden (*see* Opp. at 15–16), he does not and cannot contest that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint."[35]

The Trustee rests his argument primarily on the recent *Banque SYZ* opinion. (Opp. at 15.) But in *Banque SYZ*, "the Complaint suggest[ed] that *Banque Syz* had access to information about BLMIS's fraud and failed to concern itself with such things."[36] For instance, the Trustee argued that "Banque Syz'[s] expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS."[37] Similarly, the complaint in *Merkin I* was rife with knowledge allegations absent here, including the defendants' receipt of account statements that "reflected hundreds of trades exercised at prices outside the daily range possible for those securities"[38] and that one of the defendants "had an unusually close business

---

[34] *45 John Lofts, LLC v. Meridian Cap. Grp. LLC*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) ("*In re 45 John Lofts, LLC*") (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing Complaint ¶¶ 60-69).

[35] *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007).

[36] *Picard v. Banque SYZ & Co., SA*, 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*").

[37] *Id.* (citing *Banque SYZ* Complaint ¶ 42).

[38] *Picard v. Merkin*, 440 B.R. 243, 252–53 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

and social relationship with Madoff, including sitting together on the Board of Trustees of Yeshiva University, and, as a result, intimate access to BLMIS."[39] Here, by contrast, there is no allegation (not even a conclusory one) suggesting that Credit Suisse had any knowledge, actual or otherwise, of the Madoff fraud. (*See generally* FAC.)

The Opposition relies on *ABN Ireland* to argue that the good-faith affirmative defense is fact-driven and cannot be resolved in a motion to dismiss. (Opp. at 15–16.) But the District Court in *ABN Ireland* held only that the bankruptcy court's decision should be reversed because it was based on an outdated good-faith standard.[40] The observation that the defendant's good-faith defense was not apparent on the face of the complaint was dicta; the court even acknowledged that the defense was "not appropriately framed for appellate review."[41] The other cases the Trustee cites are no more relevant. In *In re Dreier LLP*, the court held that the defendant had not established the good-faith defense because the "[c]omplaint does not contain allegations establishing good faith as a matter of law."[42] Here, by contrast, the very allegations the Trustee seeks to incorporate into his FAC establish Credit Suisse's good faith. (*See* Motion at 15–16.) And *United Teamster Fund* does not even address section 550 or the good-faith defense.[43]

The Trustee also criticizes Credit Suisse for relying on "cherry-picked allegations as to BLMIS's and FGG's secrecy" to show that the FAC pleads facts establishing that Credit Suisse

---

[39] *Id.* at 253.

[40] *Picard v. ABN Ireland*, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022).

[41] *Id.* at *4.

[42] *In re Dreier LLP*, 452 B.R. 391, 427 (Bankr. S.D.N.Y. 2011) ("Nevertheless, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.").

[43] *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) (citing *Pani*, 152 F.3d at 74).

could not have known of Madoff's fraud. (Opp. at 16.) But the dozen examples Credit Suisse cited in its Motion are allegations that the Trustee peppered repeatedly throughout his FAC. (*See* Motion at 15–16.) He cannot disavow his own pleading now just because the FAC, on its face, establishes Credit Suisse's good-faith defense. *See* 11 U.S.C. § 550(b). The Trustee contends that he has plausibly pleaded that Credit Suisse knew of Madoff's fraud because "Credit Suisse [is a] global enterprise with thousands of employees, and hundreds of millions of dollars invested with the Fairfield Funds." (Opp. at 17.) But if this were enough to plead knowledge, then any large financial institution—indeed, any large corporation or law firm—would be assumed to have knowledge of virtually everything in the world, and it would dispense with the 550(b) defense entirely. Perhaps that is why numerous cases, including cases involving Madoff's fraud, have found allegations such as these wanting.[44]

The Trustee fares no better with his argument that the question of "value" raises fact issues not pleaded in the Complaint. (Opp. at 17.) As the *Merkin I* court explained, a litigant can "plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense."[45] (*See* Opp. at 16.) The Trustee has done exactly that. (Motion at 14–16.) The FAC alleges that the transfers at issue arose from "subscription agreements," and Credit Suisse surrendered interests in Sentry in exchange for redemption payments. (FAC ¶¶ 8–10, 18–20.) This is enough as a matter of law to prove that Credit Suisse provided value when it received the alleged transfers at issue.[46] The Trustee also does not even address (let alone try to

[44] *See, e.g.*, *DeLollis v. Friedberg, Smith & Co.*, 600 F. App'x 792, 796 (2d Cir. 2015) (noting that "[n]umerous actions brought against auditors and investment advisors by victims of Madoff's fraud have been dismissed despite the presence of 'red flags,' which in hindsight arguably should have called attention to Madoff's illegal conduct").

[45] *Merkin I*, 440 B.R. at 256.

[46] *See ABN Amro*, 2020 WL 1584491, at *9 ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

distinguish) Judge Bernstein's decision in the related BLMIS case *ABN Amro*, where he expressly held on a Rule 12(b)(6) motion to dismiss that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).[47] That holding applies with equal force here.

In a last-ditch effort to avoid dismissal, the Trustee argues that he must be given an opportunity to pursue discovery of the facts related to this affirmative defense before the Court can dismiss. (Opp. at 17–18.) But that is not the law. So long as the Trustee has pleaded facts establishing Credit Suisse's section 550 defense, he is not entitled to discovery before dismissal.[48]

## IV. SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS.

The Trustee does not contest that section 546(e)'s elements are satisfied here. (*See* Opp. at 18–24.) He argues instead, based on a misreading of the District Court's decision in *Cohmad*, that Credit Suisse may not invoke the safe harbor at all because the FAC sufficiently pleads *Sentry's*—the alleged initial transferee's—knowledge of Madoff's fraud. As a result, the Trustee has not even attempted to show the relevant party's—Credit Suisse's—knowledge here. (*See id.*)

The Trustee's theory that the safe harbor only applies to the avoidance of initial transfers is contrary to both Second Circuit law and *Cohmad*. (Opp. at 20–24.) The Second Circuit intended for innocent transferees—both initial and subsequent—to be protected from liability from a Trustee in order to achieve the greater purpose of section 546(e): stability in the securities

---

[47] *See id.*

[48] *See, e.g.*, *Bock*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground[.]"); *Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

markets. The Second Circuit wrote, in ruling that defendants in BLMIS cases may invoke the 546(e) safe harbor, that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)."[49]

The Trustee's argument rests on a misreading of *Cohmad*. (Opp. at 18–24.) The Trustee acknowledges that *Cohmad* "held that *a party with actual knowledge* of Madoff's fraud cannot claim the protections of Section 546(e)" (*id*. at 19 (citing Motion at 22)), but the Trustee has not alleged any facts, not even conclusory ones, that Credit Suisse had any knowledge of Madoff's fraud. (*See generally* FAC.) The Trustee attempts to argue that Credit Suisse's knowledge is irrelevant—and thus the sole touchstone under 546(e) is the *feeder funds*' knowledge—because section 546(e) "does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees." (Opp. at 21). This is wrong. Judge Rakoff explained in *Cohmad* that the safe harbor applies to a subsequent transferee unless the "*subsequent transferee*"—*not the initial transferee*—had "actual knowledge of Madoff Securities' fraud," which the Trustee has not alleged here.[50]

The Trustee's argument that under *Cohmad* "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees" and "specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e)" rests on an irrelevant distinction between "avoidance" and "recovery." (Opp. at 21 (citing *Cohmad*, 2013 WL 1609154, at *7)). In fact, the District Court in *Cohmad* expressly stated that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense

---

[49] *Picard v. Ida Fishman Revocable Tr.*, 773 F.3d 411, 420 (2d Cir. 2014) ("*Fishman*").

[50] *Cohmad*, 2013 WL 1609154, at *7.

against the Trustee's avoidance of certain transfers . . . [,]the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against *recovery* of those funds."[51] This was not an idle observation. As the Trustee concedes, the *Cohmad* court wanted to "ensure that *any defendant* that *does* have *actual knowledge* . . . cannot benefit from the safe harbor" (Opp. at 24), but this does not provide a basis for a sprawling exception to the safe harbor for any subsequent transferee unfortunate enough unwittingly to have received a transfer from a feeder fund that did have actual knowledge of Madoff's fraud. Such an exception would permit exactly what the Second Circuit sought to curtail—recovery of transfers from innocent recipients. Credit Suisse is a textbook example of an investor *Fishman* was designed to protect: those with "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," and thus, "have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."[52] The cases the Trustee cites on this point are inapposite. Neither *BNP Paribas*[53] nor *SunEdison*[54] discusses whether subsequent transferees are barred from invoking the safe harbor where the initial transferee had actual knowledge of the fraud, nor is *Cohmad* discussed in those opinions.

The Opposition fares no better relying on *Multi-Strategy* and *Banque SYZ*.[55] (*See* Opp. at 18–24). As explained in its Motion, Credit Suisse respectfully submits that those decisions misread *Cohmad* and other decisions applying section 546(e) to subsequent transferees,

---

[51] *Id*.

[52] *Id*. at *2.

[53] *BNP Paribas*, 594 B.R. at 191–97.

[54] *SunEdison Litig. Tr. v. Seller Note, LLC*, 620 B.R. 505, 512–17 (Bankr. S.D.N.Y. 2020) (Judge Bernstein granted defendants' motion to dismiss constructive fraudulent transfer claims based on § 546(e) without discussing any alleged transferee's knowledge.).

[55] *Multi-Strategy*, 641 B.R. at 95; *Banque SYZ*, 2022 WL 2135019, at *10.

including in actions brought by the Trustee. (Motion at 17–19.) The Trustee is also incorrect that the "plain language" of section 546(e) indicates that the safe harbor applies only to "initial transfers" and not "subsequent transfers."[56] (Opp. at 20.) None of the cases the Trustee cites limits the safe harbor's application solely to initial transfers or hold that subsequent transfers cannot anchor in the safe harbor.[57]

Instead, *Cohmad* and other cases in which Judge Rakoff held that only the *subsequent* transferee's knowledge is relevant are binding here.[58] They also collaterally estop the Trustee from relitigating the issue. This is because "(1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."[59]

- The issue in both *Cohmad* and the present case is the application of the safe harbor to transferees.[60] (Opp. at 18–24; Motion at 17–22.)
- This issue was actually litigated in *Cohmad* as evidenced by the court's opinion.[61]
- The Trustee was given the opportunity to fully brief and argue his points on this issue.[62]

---

[56] *See* 11 U.S.C.A. § 546.

[57] *See In re Madoff Sec.*, 501 B.R. 26 (no discussion of section 546(e) at all); *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019) (discussing the relationship between sections 550(a) and 546(e) for the purposes of the extraterritoriality analysis).

[58] *Cohmad*, 2013 WL 1609154, at *7; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *6 ("Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud"); *id.* at *15 (dismissing all claims brought against Corina Noel Piedrahita in her individual capacity because the Trustee did not plead that she had actual knowledge of the fraud other than that which could be imputed to her, via the Fairfield Funds, in her official capacity as director of another defendant entity).

[59] *Mishkin v. Ageloff*, 299 F. Supp. 2d 249, 253 (S.D.N.Y. 2004).

[60] *Cohmad*, 2013 WL 1609154, at *7.

[61] *Id.*

[62] *See generally id.*

- And resolving the issue of which parties can assert the safe harbor defense was necessary to support the court's final judgment.[63]

## CONCLUSION

The FAC fails to satisfy the Federal Rules' most fundamental pleading standards. It flouts Rule 8 by attempting to incorporate pleadings from other cases involving other claims against other defendants without specifying what portions of those pleadings are relevant or why. It pleads implausible subsequent transfer claims because its allegations suggest the mere probability that the money Credit Suisse received from feeder funds originated with Madoff, rather than the plausibility Rule 8 requires. And it sets forth on its face all the facts necessary to establish Credit Suisse's good-faith and settlement-payment defenses.

This lawsuit should be dismissed with prejudice.

[63] *Id.* at *7.

Dated: September 29, 2022
New York, New York

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: */s/ William J. Sushon*

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
wsushon@omm.com
dshamah@omm.com
kharan@omm.com

*Attorneys for Credit Suisse AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG*