**WUERSCH & GERING LLP**
Gregory F. Hauser
Jascha D. Preuss
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
gregory.hauser@wg-law.com
jascha.preuss@wg-law.com
*Counsel for Defendant LGT Bank in Liechtenstein Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789 (CGM)** |
| *Plaintiff-Applicant*, | **SIPA Liquidation** |
| -v- | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **(Substantively Consolidated)** |
| *Defendant.* | |
| In re: | |
| BERNARD L. MADOFF, | |
| *Debtor.* | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities and the Chapter 7 Estate of Bernard L. Madoff, | **Adv. Pro. No. 11-02929 (CGM)** |
| *Plaintiff*, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |
| -v- | |
| LGT BANK IN LIECHTENSTEIN LTD., | |
| *Defendant*. | |

# **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND.................................................................... 3

ARGUMENT................................................................................................................................ 6

I.      Standard Of Review................................................................................................. 6

II.     The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2)....................... 8

A.     Defendant Did Not Consent to Personal Jurisdiction in New York ................................ 8

B.     This Court Lacks General Jurisdiction Over LGT Liechtenstein .................................... 9

C.     This Court Lacks Specific Jurisdiction Over LGT Liechtenstein................................... 10

1.     Knowledge that Fairfield Purported to Invest with BLMIS is Insufficient to Establish
       Jurisdiction.................................................................................................................. 11

2.     Alleged Business Communications or Actions Involving LGT Liechtenstein are
       Insufficient to Establish Jurisdiction........................................................................... 14

3.     Sending and Receiving Funds through a New York Bank Account is Insufficient to
       Establish Jurisdiction. ................................................................................................. 16

III.    The Complaint Fails to Meet Fed. R. Civ. P.  8(a) and 9(b) Pleading Standards............. 18

IV.    The Trustee's Claims are Barred by Bankruptcy Code § 546(e)...................................... 22

A.     § 546(e) Shields Initial Transfers from More than Two Years Before Filing. .............. 22

1.     The Initial Transfers Were Covered Entity Transfers.................................................. 23

2.     Initial Transfers Concern Securities Contracts and Settlement Payments.................. 24

3.     The Trustee Has Not Alleged that LGT Liechtenstein had Actual Knowledge of
       Madoff's Fraud. .......................................................................................................... 26

B.     The Section 546(e) Safe Harbor Shields the Remaining Initial Transfers.................... 28

V.      The Complaint Fails to Plausibly Allege That the Subsequent Transfers to LGT Were of
        BLMIS Customer Property.......................................................................................... 30

VI.    The Trustee Fails to Establish Defendant Was More Than a "Mere Conduit" for its
        Banking Principals..................................................................................................... 34

VII.   The Complaint Establishes LGT  Liechtenstein's Good Faith Defense, Warranting
        Dismissal.................................................................................................................... 36

A.     Value .......................................................................................................................... 36

B.     Good Faith .................................................................................................................. 37

C.     Without Knowledge of Voidability .............................................................................. 39

CONCLUSION.......................................................................................................................... 40

## Table of Authorities

**Cases**

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011)........................................................................................ 7

*Alki Partners, L.P. v. Windhorst*,
472 F. App'x 7 (2d Cir. 2012) ................................................................................................... 7

*Allied Dynamics Corp. v. Kennametal, Inc.*,
965 F. Supp. 2d 276 (E.D.N.Y. 2013)........................................................................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................... 7

*Atherton v. F.D.I.C.*,
519 U.S. 213 (1997) ................................................................................................................. 37

*Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Group, Inc.)*,
No. 01 B 41643(RLB) et al., 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ................................ 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................... 7

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................................................... 11

*Bodum U.S.A., Inc. v. Hantover, Inc.*,
No. 11 Civ. 8702(SAS), 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012) .................................... 10

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
838 F.2d 890 (7th Cir. 1988)................................................................................................... 35

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................................................................... 12, 14

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)....................................................................................................... 13

*Citibank, N.A. v. Picard*,
142 S. Ct. 1209 (2022) ............................................................................................................. 30

*In re Amaranth Nat. Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008)...................................................................................... 13

*Contemporary Indus. Corp. v. Frost*,
   564 F.3d 981 (8th Cir. 2009) ................................................................................................. 24

*Cooper v. Parsky*,
   No. 95CIV10543(JGK)(NRB), 1997 WL 242534 (S.D.N.Y. Jan. 8, 1997) ........................... 13

*Cooper v. Parsky*,
   140 F.3d 433 (2d Cir. 1998) .................................................................................................. 13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................................... 9

*Davis v. Bifani*,
   No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) .......................... 20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
   No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .......................... 23

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   26 N.Y.2d 280 (1970) ...................................................................................................... 12, 13

*Finn v. Alliance Bank*,
   860 N.W.2d 638 (Minn. 2015) ............................................................................................... 30

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) .......................................................................................................... 10

*Giuliano v. Barch*,
   No. 16 CV 0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ............................ 12, 15

*Hau Yin To v. HSBC Holdings, PLC*,
   15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ........................................... 16

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016) ............................................................................... 15, 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................................... 33

*In re Bernard L. Madoff Inv. Secs. LLC*,
   773 F.3d 411 (2d Cir. 2014) ................................................................................................... 23

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................................... 20

*In re Equip. Acq. Res., Inc.*,
   803 F.3d 835 (7th Cir. 2015) ................................................................................................. 39

iii

*In re Fairfield Sentry Ltd.,*
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..................................... 9, 16

*In re Fairfield Sentry Ltd.,*
No. 10-13164, 2022 WL 3644436, (S.D.N.Y. Aug. 24, 2022) ................................................... 9

*In re Flutie N.Y. Corp.,*
310 B.R. 31 (Bankr. S.D.N.Y. 2004) ........................................................................................ 20

*In re Lehman Bros. Holdings Inc.,*
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ........................................................................................ 7

*In re Livent, Inc. Noteholders Sec. Litig.,*
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................................................................................... 7

*In re Lyondell Chem. Co.,*
543 B.R. 127 (Bankr. S.D.N.Y. 2016) ........................................................................................ 7

*In re Lyondell Chem. Co.,*
503 B.R. 348 (Bankr. S.D.N.Y. 2014) ...................................................................................... 34

*In re Manhattan Inv. Fund,*
397 B.R. 1 (S.D.N.Y. 2007) ....................................................................................................... 35

*In re Old Carco LLC,*
454 B.R. 38 (Bankr. S.D.N.Y. 2011) ......................................................................................... 33

*In re PXRE Grp., Ltd., Sec. Litig.,*
600 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................................................................................ 18

*In re Robert Plan of N.Y. Corp.,*
456 B.R. 150 (Bankr. E.D.N.Y. 2011) ....................................................................................... 20

*In re Sharp Int'l Corp.,*
403 F.3d 43 (2d Cir. 2005) ................................................................................................... 19, 29

*In re Sledziejoinwski,*
Case Nos. 13-22050 (RDD) & 13-22748 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ............................................................................................................................................ 16

*In re Terrorist Attacks on Sept. 11, 2001,*
715 F.3d 659 (2d Cir. 2013) ....................................................................................................... 10

*In re Trib. Co. Fraudulent Conv. Litig.,*
946 F.3d 66 (2d Cir. 2019) ......................................................................................................... 22

*In re Tribune Co. Fraudulent Conveyance Litig.,*
10 F.4th 147 (2d Cir. 2021) ........................................................................................................ 25

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  818 F.3d 98 (2d Cir. 2016) ................................................................................................. 34

*Int'l Customs Assocs. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ..................................................................................... 15

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................................... 8

*Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  516 B.R. 18 (S.D.N.Y. 2014) ............................................................................................... 40

*Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  594 B.R. 167 (S.D.N.Y. 2018) ............................................................................................. 11

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018) ......................................................................................................... 17

*Jonas v. Estate of Leven*,
  116 F. Supp. 3d 314 (S.D.N.Y. 2015) .................................................................................. 12

*Law v. Siegel*,
  571 U.S. 415 (2014) .............................................................................................................. 27

*Leema Enters., Inc. v. Willi*,
  575 F. Supp. 1533 (S.D.N.Y. 1983) ..................................................................................... 16

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................................. 18

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
  12 N.E.3d 456 (N.Y. 2014) .................................................................................................. 17

*McKee Elec. Co. v. Rauland-Borg Corp.*,
  20 N.Y.2d 377 (1967) ........................................................................................................... 14

*Merit Mgmt. Grp. v. FTI Consulting*,
  138 S. Ct. 883 (2018) ........................................................................................................... 22

*Mtg. Funding Corp. v. Boyer Lake Pointe, LC*,
  379 F. Supp. 2d 282 (E.D.N.Y. 2005) .................................................................................. 13

*NCUA Bd. v. Morgan Stanley & Co.*,
  No. 13 Civ. 6705(DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ................................. 20

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................................... 9

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .................... 21

*Ortiz v. Guitian Music Bros.*,
No. 07 Civ. 3897, 2009 WL 2252107 (S.D.N.Y. July 28, 2009) .............................................. 36

*Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................................................................. 7

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*,
No. 09 CIV. 7401 (CM), 2010 WL 1956871 (S.D.N.Y. May 14, 2010) ................................... 8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) .............................................................................................. 32, 33

*Picard v. ABN AMRO Bank (Ireland) Ltd.*,
505 B.R. 135 (S.D.N.Y. 2013) ............................................................................................... 27

*Picard v. Banca Carige S.P.A. (In re BLMIS)*,
Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ........... 3

*Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ........... 3

*Picard v. Bureau of Labor Ins.*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) .................................................................................... 8

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*,
12 F.4th 171 (2d Cir. 2021) ........................................................................... 30, 37, 38, 40

*Picard v. Fairfield Inv. Fund Ltd.*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................. 22-23, 26, 27, 29, 37

*Picard v. Gerald & Barbara Keller Family Tr.*,
634 B.R. 39 (Bankr. S.D.N.Y. 2021) ...................................................................................... 35

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) ........................................................................................ 22, 24-26

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
12-01205 (CGM), 2022 WL 2137073 n.3 (Bankr. S.D.N.Y. June 13, 2022) ........................ 9, 19

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................................... 18, 31, 32

*RBC Cap. Mkts, LLC v. Garcia Hamilton & Assocs., LP*,
No. 19-cv-10247 (NRB), 2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ..................................... 15

vi

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
 2 F. Supp. 2d 470 (S.D.N.Y. 1998)........................................................................................... 15

*Rosenblatt v. Coutts & Co. AG*,
 No. 17-cv-3528, 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017).............................................. 11

*Russello v. United States*,
 464 U.S. 16 (1983)................................................................................................................... 36

*Salahuddin v. Cuomo*,
 861 F.2d 40 (2d Cir. 1988)....................................................................................................... 21

*Sapia v. Home Box Office, Inc.*,
 No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ................................... 32

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................................... 11

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
 No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)........................... 18, 26, 27

*Shields v. Citytrust Bancorp, Inc.*,
 25 F.3d 1124 (2d Cir. 1994)...................................................................................................... 18

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
 476 B.R. 715 (S.D.N.Y. 2012) .................................................................................................. 23

*SPV Osus Ltd. v. UBS AG*,
 882 F.3d 333 (2d Cir. 2018)...................................................................................................... 10

*SPV Osus Ltd. v. UBS AG*,
 114 F. Supp. 3d 161 (S.D.N.Y. 2015)........................................................................................ 14

*Steinberg v. A Analyst Ltd.*,
 No. 04-60898-CIV, 2009 WL 838989 (S.D. Fla. 2009) ........................................................... 13

*Suber v. VVP Servs., LLC*,
 No. 07 Civ. 6377(SAS), 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) .................................. 13

*Sullivan v. Kodsi*,
 373 F. Supp. 2d 302 (S.D.N.Y. 2005)........................................................................................ 31

*Tamam v. Fransabank Sal*,
 677 F. Supp. 2d 720 (S.D.N.Y. 2010)........................................................................................ 17

*Taylor v. Sturgell*,
 553 U.S. 880 (2008) ................................................................................................................... 9

*Trading & Inv. Co. v. Tymoshenko*,
  2012 WL 6186471 (S.D.N.Y. 2012) ..................................................................................... 17

*Tymoshenko v. Firtash*,
  No. 11-cv-2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ................................ 13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019).................................................................................................. 10

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007).................................................................................... 21

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020)............................................................................... 17-18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................................... 10, 12

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
  503 B.R. 348 (Bankr. S.D.N.Y. 2014) ................................................................................... 34

*Ziparo v. CSX Transp.*,
  15 F.4th 153 (2d Cir. 2021)................................................................................................... 36

Statutes

11 U.S.C. § 101(22)(A)................................................................................................... 23, 24

11 U.S.C. § 101(53A)(B)...................................................................................................... 23

11 U.S.C. § 546(e) ......................................................................................................... *passim*

11 U.S.C. § 547(b) ................................................................................................................ 20

11 U.S.C. § 548(a)(1)(A) ............................................................................................... *passim*

11 U.S.C. § 548(a)(1)(B) ...................................................................................................... 36

11 U.S.C. § 550................................................................................................................... 31

11 U.S.C § 550(A) ......................................................................................................... *passim*

11 U.S.C. § 550(B) ..................................................................................................... 2, 3, 36

11 U.S.C. § 741(7) ............................................................................................................... 25

NYDCL § 273...................................................................................................................... 19

NYDCL § 276...................................................................................................................... 20

Rules

C.P.L.R. § 302......................................................................................................................... 11

C.P.L.R. § 302(a)(3) ............................................................................................................... 13

C.P.L.R. § 302(a)(1) .......................................................................................................... 11, 14

Fed. R. Bankr. P. 7004............................................................................................................ 11

Fed. R. Bankr. P. 7004(f)........................................................................................................ 11

Fed. R. Civ. P. 8 ....................................................................................................................... 2

Fed. R. Civ. P. 8(a) ................................................................................................................ 17

Fed. R. Civ. P. 8(a)(2).............................................................................................................. 21

Fed. R. Civ. P. 9 ....................................................................................................................... 2

Fed. R. Civ. P. 9(b) ..................................................................................................... 18, 19, 29

Fed. R. Civ. P. 10(c) .......................................................................................................... 20, 21

Fed. R. Civ. P. 12(b)(2)................................................................................................. 1, 2, 6, 7, 8

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1, 2, 7

Defendant LGT Bank in Liechtenstein Ltd. ("LGT Liechtenstein"),[1] hereby submits this Memorandum of Law and the accompanying Declaration of Gregory F. Hauser (the "Hauser Decl.") in support of its Motion to Dismiss the Complaint (the "Complaint" or "Compl.")[2] of Trustee Irving H. Picard (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. As discussed below, the Complaint should be dismissed in its entirety and with prejudice.

## PRELIMINARY STATEMENT

LGT Liechtenstein is a victim of Madoff's Ponzi scheme. The Complaint alleges it invested on behalf and at the direction of its clients in dollar-denominated Fairfield Sentry Limited ("Fairfield Sentry") and Euro-denominated Fairfield Sigma Limited ("Fairfield Sigma"). Fairfield Sentry invested most (but not all) of its assets with BLMIS, and Fairfield Sigma invested 100% of its assets in Fairfield Sentry. Notwithstanding LGT Liechtenstein's lack of involvement in or knowledge of the fraud, the Trustee seeks to claw back $10,461,871 in alleged redemptions that LGT Liechtenstein received, in good faith, from Fairfield Sentry and Fairfield Sigma (not BLMIS) in the six years before the BLMIS bankruptcy filing. Although the Trustee commenced this litigation over ten years ago, his operative pleading remains the original Complaint filed in December 2011—a complaint rife with uncured defects and deficiencies, warranting dismissal of this action with prejudice. LGT Liechtenstein therefore moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).

---

[1] LGT Liechtenstein is now known as LGT Bank AG. Hauser Decl. ¶ 3 n.1.

[2] The Complaint, attached as Ex. A to the Hauser Decl., was filed on December 15, 2011. *See* Dkt. 1. Unless otherwise specified, all citations to "Dkt. __" refer to the docket in this adversary proceeding, Adv. Pro. No. 11-02929 (CGM).

First, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over LGT Liechtenstein. LGT Liechtenstein is a foreign defendant, headquartered abroad and not "at home" in New York, which had, at best, only remote and infrequent contacts with New York and the United States.

Additionally, the Court should dismiss the Trustee's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the pleading—even when construed in the Trustee's favor—fails to state a cognizable claim against LGT Liechtenstein. The Trustee seeks a judgment pursuant to certain provisions of the Bankruptcy Code and the Securities Investor Protection Act—notably, pursuant to 11 U.S.C. § 550(a), which sets forth means by which the Trustee may recover intermediate or mediate transfers avoided under the Bankruptcy Code, subject to a host of exceptions (including the good faith defense of § 550(b))—compelling LGT Liechtenstein to turn over redemptions LGT Liechtenstein received on behalf of its clients from Fairfield Sentry and Fairfield Sigma. The Trustee, however, fails to state a claim for at least five independent reasons. *First*, the Trustee has failed to meet his pleading obligations under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 9 because the Complaint makes only conclusory allegations implying, without basis, that *all* initial transfers allegedly received by LGT Liechtenstein from Fairfield Sentry and Fairfield Sigma are avoidable, but fails to plead the essential element of avoidance or avoidability of the alleged initial transfers. *Second*, the Trustee's own pleading establishes that LGT Liechtenstein is entitled to invoke the "safe harbor" of § 546(e) of the Bankruptcy Code, and otherwise fails to plead the requisite intent or knowledge to demonstrate that transfers received within the two years preceding the BLMIS bankruptcy filing date are avoided. *Third*, the Complaint demonstrates that the transfers the Trustee seeks to recapture could not have included the BLMIS customer property the Trustee seeks to recover—negating an essential element of the Trustee's claim. *Fourth*, the Trustee has failed to

2

plead allegations demonstrating that LGT Liechtenstein received transfers as anything more than a "mere conduit" for its banking customers at whose instructions and on whose behalf the Bank received the transfers, such that the Bank does not constitute a "transferee" under § 550(a) the Bankruptcy Code. *Fifth*, the Complaint establishes that LGT Liechtenstein—having taken transfers from Fairfield Sentry and Fairfield Sigma for value, in good faith, and without knowledge of the voidability of the transfers—is entitled to dismissal of the Trustee's claim under § 550(b) of the Bankruptcy Code.

Accordingly, LGT Liechtenstein respectfully submits that the Trustee's Complaint should be dismissed with prejudice.[3]

## PROCEDURAL AND FACTUAL BACKGROUND

In connection with the arrest of Bernard Madoff, on December 11, 2008, the U.S. Securities and Exchange Commission ("SEC") commenced proceedings in the U.S. District Court for the Southern District of New York against Madoff and his company, BLMIS. Compl. ¶ 11. On December 15, 2008, the Court (1) granted the application of the Securities Investor Protection Corporation ("SIPC") to combine its own action with the SEC's action, and (2) appointed the Trustee for the liquidation of BLMIS and removed the action to this Court. *Id.* ¶¶ 13–14.

In 2009, the Trustee commenced an adversary proceeding in the Bankruptcy Court styled as *Picard v. Fairfield Investment Fund Ltd.*, Adv. Pro. No. 09-01239 (the "Fairfield Action"), seeking to avoid and recover approximately $3 billion in transfers of alleged customer property from BLMIS to Fairfield Sentry (the "Initial Transfers"). *See id.* ¶ 35. On July 20, 2010, the

---

[3] LGT Liechtenstein acknowledges that the Court has rejected arguments similar to those raised in this motion in related cases. *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banca Carige S.P.A. (In re BLMIS)*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022). LGT Liechtenstein advances these arguments because the facts are sufficiently distinguishable to warrant a different outcome.

Trustee amended the complaint to seek recovery of approximately $752.3 million in subsequent transfers from Fairfield Sentry to Fairfield Sigma, and approximately $52.9 million in subsequent transfers from Fairfield Sentry to Fairfield Lambda Limited ("Fairfield Lambda") (collectively, with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"). *See* Fairfield Action, Dkt. 23 (the "Fairfield Action AC"). On August 28, 2020, the Trustee amended the Fairfield Action Amended Complaint. *See id.* Dkt. 286 (the "Fairfield Action SAC").

As alleged in the Fairfield Action, Fairfield Sentry was a hedge fund, organized under the laws of the British Virgin Islands. Fairfield Action AC ¶ 32; Fairfield Action SAC ¶ 12. Fairfield Sigma and Fairfield Lambda were BVI companies wholly invested in Fairfield Sentry. Fairfield Action AC ¶¶ 51, 56; Fairfield Action SAC ¶¶ 96, 97. On or about May 9, 2011, the Trustee settled with the Fairfield Funds, and this Court entered consent judgments against Fairfield Sentry for $3.054 billion and Fairfield Sigma for $752.3 million. *See* Fairfield Action, Dkts. 69-2, 109, 110.

On December 15, 2011, the Trustee commenced this adversary proceeding against LGT Liechtenstein. *See* Dkt. 1. After years of related litigation relating to the claims and issues sued over in the Complaint, the parties in 2022 agreed to a briefing-schedule stipulation for LGT Liechtenstein's response to the Complaint, which was So-Ordered by this Court on July 20, 2022. Dkt. 98.

The Complaint seeks recovery from LGT Liechtenstein of monies received from Fairfield Sentry or Fairfield Sigma investment redemptions in the form of alleged "subsequent transfers" of BLMIS customer property allegedly initially transferred to the Fairfield Funds and then transferred to LGT Liechtenstein, "totaling the equivalent of at least $10,461,871," including $10,350,118 allegedly received from Fairfield Sentry, and $111,753 allegedly received from Fairfield Sigma.

Compl. ¶ 47. The majority of the Complaint is dedicated to allegations related to the Madoff Ponzi scheme, including the transfers from BLMIS to the Fairfield Funds, and allegations that are not specific to LGT Liechtenstein. *Id.* ¶¶ 1, 9–21, 23–33, 35–40. The Complaint alleges that LGT Liechtenstein "was a subsidiary of the LGT Group, a global wealth and asset management group that offered wealth management services for private and institutional investors." *Id.* ¶ 3. The Complaint further alleges that "LGT Liechtenstein knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma," *id.* ¶ 6, but says nothing about whether LGT Liechtenstein had knowledge of the Ponzi scheme at the time of such transfers, and does not allege that LGT Liechtenstein received, controlled, or owned held any redemptions from Fairfield Sentry or Fairfield Sigma for its own account. Instead, while alleging that the greater LGT Group of which LGT Liechtenstein is a part offers wealth and asset management services, *id.* ¶¶ 3, 22, the Trustee acknowledges that BLMIS' investment advisory services were, at "all periods relevant hereto, . . . operated as a Ponzi scheme," *id.* ¶ 28.

The Complaint alleges that the Trustee has sought in the Fairfield Action to avoid and recover $3.0 billion in BLMIS Customer Property transferred from BLMIS to Fairfield Sentry (the "Initial Transfers"). *Id.* ¶ 35–36, 39. Though it purports to incorporate the entire Fairfield Action AC by reference,[4] *id.* ¶ 35, the Complaint does not allege that Fairfield Sentry received the Initial Transfers from BLMIS with actual knowledge (or any knowledge) of fraud at BLMIS. Nor does it allege any facts regarding LGT Liechtenstein's knowledge (or lack thereof) of fraud at BLMIS when it received subsequent transfers from Fairfield Sentry and Fairfield Sigma. Nevertheless, the

---

[4] Defendant respectfully submits that this Court should take judicial notice that the Fairfield Action AC has, since the filing of the Complaint, been superseded by the Fairfield Action SAC. Nevertheless, because the Trustee has failed to amend the Complaint, the Trustee is not entitled to the benefit of any allegations or implications of the Fairfield Action SAC which are not reflected in the Fairfield Action AC. And, for the reasons which follow below in Part III, Defendant respectfully submits that the Trustee's incorporation by reference of the entire Fairfield Action AC is contrary to law.

Trustee alleges that it is entitled to recover $10,350,118 from LGT Liechtenstein, simply because such monies were allegedly "transferred from BLMIS to Fairfield Sentry [and] subsequently transferred by Fairfield Sentry to Defendant." *Id.* ¶ 41; *id.* Ex. C. Similarly, the Trustee alleges it is entitled to recover $111,753 from LGT Liechtenstein, simply because such monies were allegedly transferred from BLMIS to Fairfield Sentry as part of the Fairfield Sentry Initial Transfers, and "subsequently transferred by Fairfield Sentry to Fairfield Sigma," and then transferred "either directly or indirectly to, or for the benefit of, Defendant LGT Liechtenstein through Fairfield Sigma." *Id.* ¶ 43; *id.* Exs. D & E.

Despite these allegations, however, the Complaint does not allege which portions of the Initial Transfers were subsequently transferred by Fairfield Sentry to LGT Liechtenstein, by Fairfield Sentry to Fairfield Sigma, or by Fairfield Sigma to LGT Liechtenstein, and does not explain how transfers to LGT Liechtenstein were calculated or are traceable from BLMIS to LGT Liechtenstein, or provide any other factual basis for its allegations—despite the fact that the Trustee has had more than a decade to investigate (and to seek to amend its Complaint). Similarly, the exhibits attached to the Complaint show the dates and amounts of the Initial Transfers, the alleged transfers from Fairfield Sentry to LGT Liechtenstein, the alleged transfers from Fairfield Sentry to Fairfield Sigma, and the alleged transfers from Fairfield Sigma to LGT Liechtenstein, but offer no other information to substantiate any link between the transferred sums and the BLMIS customer property allegedly in the Initial Transfers. *Id.* Exs. A–E.

## ARGUMENT

### I.   Standard Of Review

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6

face,'" and must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Under Rule 12(b)(6), "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the Court must dismiss the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A plausible claim pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While on a motion to dismiss the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor a "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Lyondell Chem. Co.*, 543 B.R. 127, 136 (Bankr. S.D.N.Y. 2016); *see also In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015) (to survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists"). "Conclusory allegations lacking factual specificity [] do not satisfy plaintiff's burden" of showing a *prima facie* case for exercising personal jurisdiction. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012).

7

**II.      The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2)**

It is well established that a court may exercise personal jurisdiction over out-of-state

defendants only where doing so is consistent with the due process of law. *See Allied Dynamics*

*Corp. v. Kennametal, Inc*., 965 F. Supp. 2d 276, 288–89 (E.D.N.Y. 2013). For personal jurisdiction

to comport with due process, a defendant must have "minimum contacts" with the forum, and the

exercise of personal jurisdiction must be reasonable, "such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.*,

480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945)); *see also Alki Partners, L.P.*, 769 F. Supp. 2d at 488; *see also Parker Waichman*

*Alonso LLP v. Orlando Firm, P.C.*, No. 09 CIV. 7401 (CM), 2010 WL 1956871, at *6 (S.D.N.Y.

May 14, 2010).  There are two circumstances in which courts may exercise personal jurisdiction

over a defendant: (i) when the defendant's contacts with the forum have been so continuous and

systematic so as to establish the court's *general* personal jurisdiction over him; or (ii) when the

defendant has purposefully directed its activities toward the forum and the litigation arises out of

or is related to its contact with the forum so that the court may exercise *specific* personal

jurisdiction.  *See Alki Partners, L.P.*, 769 F. Supp. 2d at 488.

There is no basis for this Court to exercise either general or specific personal jurisdiction

over LGT Liechtenstein in this Action.

### A.  Defendant Did Not Consent to Personal Jurisdiction in New York

As a preliminary matter, this Court should reject the Trustee's bald assertion that LGT

Liechtenstein "submitted to New York jurisdiction . . . [by] enter[ing] into a subscription

agreement with Fairfield Sentry." Compl. ¶ 7. Even if a subscription agreement executed by LGT

Liechtenstein contained a New York forum or dispute-resolution clause, the law is clear that the

subscription agreements do not control the jurisdictional determination. The highest court

interpreting BVI law, the Privy Council, held that redemptions are governed by Fairfield Sentry's Articles of Association and BVI law, not the subscription agreements. *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9, ¶¶ 10, 17, 20 (available at https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf). Following *Migani*, this Court rejected the Fairfield Liquidators' arguments that foreign defendants consented to personal jurisdiction in the United States by allegedly signing Fairfield subscription agreements. *See In re Fairfield Sentry Ltd.*, No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) (hereinafter *Fairfield I*), *aff'd*, 2022 WL 3644436, at *8–12 (S.D.N.Y. Aug. 24, 2022).[5] This Court's recent decisions also recognize that the subscription agreements cannot "be used as the sole basis for this Court's exercise of personal jurisdiction." *See, e.g.*, *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 12-01205 (CGM), 2022 WL 2137073, at *11 n.3 (Bankr. S.D.N.Y. June 13, 2022). Even when considered with the other allegations, the subscription agreements do not establish jurisdiction here.

### B. This Court Lacks General Jurisdiction Over LGT Liechtenstein

General jurisdiction exists only when the defendant is "at home" in the forum, either by being incorporated under the laws of the forum or having its principal place of business there. *Daimler AG v. Bauman*, 571 U.S. 117, 136–39 (2014). The Complaint alleges that LGT Liechtenstein is a "private bank that maintains a place of business at . . . Vaduz, Liechtenstein." Compl. ¶ 22. The Complaint does not allege that LGT Liechtenstein is incorporated or qualified

---

[5] The Court's holding in *Fairfield I* is binding on the Trustee because he was, and currently is, in privity with the Fairfield Liquidators, because: (i) the Trustee will receive a share of any funds received by the Liquidators in any redeemer action, and (ii) the Trustee and the Fairfield Liquidators stipulated "that a joint interest exists between them with respect to the Sharing Claims." See Fairfield Action, Dkt. 69-2, Ex. 5 ¶¶ 4, 7, 11, 14. This shared property interest justifies non-party issue preclusion, *see Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), meaning that the subscription-agreement determination in *Fairfield I* has preclusive effect in this Action, *see, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).

to transact business or has any physical presence or any substantial business in the State of New York or, more broadly, the United States, that could justify general jurisdiction in this Court. *See Bodum U.S.A., Inc. v. Hantover, Inc.*, No. 11 Civ. 8702(SAS), 2012 WL 1309176, at *4–5 (S.D.N.Y. Apr. 16, 2012) (granting motion to dismiss where the defendant had no physical presence in New York and only a minute fraction of its business was directed to New York). To be clear, LGT Liechtenstein is a bank incorporated under the laws of the Principality of Liechtenstein, headquartered in Vaduz, Liechtenstein. Hauser Decl., Exs. C–E. Accordingly, there is no basis for this Court to exercise general jurisdiction here.

### C. This Court Lacks Specific Jurisdiction over LGT Liechtenstein

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant: (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State;" (2) "the plaintiff's claims must arise out of or relate to the defendant's forum conduct;" and, (3) "the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). Due process under the Constitution requires that a party seeking to assert jurisdiction over a defendant must adequately allege (1) that the defendant has "certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citing *In re Terrorist Attacks on Sept. 11, 2001*, 715 F.3d 659, 674 (2d Cir. 2013)). The relationship with the forum and the claims at issue "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (the claims "must arise out of or relate to the defendant's contacts with the forum"). The Trustee has the burden

to make out a *prima facie* showing of jurisdiction over each defendant and with respect to *each* claim asserted in the Complaint. *See Rosenblatt v. Coutts & Co. AG*, No. 17-cv-3528, 2017 WL 3493245, at *2 (S.D.N.Y. Aug. 14, 2017), *aff'd*, 750 F. App'x 7 (2d Cir. 2018).[6]

In the Complaint, the Trustee seeks to establish jurisdiction over LGT Liechtenstein by alleging acts from which the Bank "should reasonably expect to be subject to New York jurisdiction," and "subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 [] and Bankruptcy Rule 7004."[7] Compl. ¶ 8. The Trustee fails, however, to sufficiently demonstrate specific personal jurisdiction over LGT Liechtenstein under the CPLR, the Federal Rules of Bankruptcy Procedure, and constitutional due process because the contacts alleged by the Trustee do not constitute purposeful availment by LGT Liechtenstein, and bear no substantial connection to the Trustee's claim to recover redemptions.

> 1. Knowledge that Fairfield Purported to Invest with BLMIS is Insufficient to Establish Jurisdiction.

The Trustee alleges that LGT Liechtenstein is subject to personal jurisdiction because the Bank "knowingly direct[ed] funds to be invested with and then redeemed from New York-based BLMIS through Fairfield Sentry," and then "knowingly received subsequent transfers from BLIMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma." *E.g.*, Compl. ¶¶ 6, 7. But the law is clear that anticipated performance in New York by a third party does not show

---

[6] This Court has previously held in a related lawsuit that "each transfer is a separate claim . . . and the Trustee must establish the court's jurisdiction with respect to each claim asserted." *See Picard v. BNP Paribas S.A. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

[7] CPLR § 302 provides personal jurisdiction over an out-of-state defendant only if: (i) the defendant "transacts any business within the State" and (ii) the plaintiff's claim arises from such business activity. CPLR § 302(a)(1) (McKinney 2022). As interpreted by the New York Court of Appeals, CPLR § 302(a)(1) overlaps with the first two requirements of the due process test. *See, e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–49 (2d Cir. 2007). Similarly, Bankruptcy Rule 7004(f) provides for personal jurisdiction if "the exercise of jurisdiction is consistent with the Constitution and laws of the United States." Thus, under both CPLR § 302(a)(1) and Bankruptcy Rule 7004(f), the statutory analysis largely collapses into the constitutional analysis..

purposeful availment, even when a foreign defendant contracts directly with a forum resident.
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985). "[U]nilateral activity of a third

party . . . cannot satisfy the requirement of contact with the forum State." *Walden*, 571 U.S. at 291

(citation omitted). The Supreme Court has made clear that specific jurisdiction must be established

by "contacts that the defendant himself creates with the forum State," not by "contacts between

the plaintiff (or third parties) and the forum State," and not by "the defendant's contacts with

persons who reside there." *Id.* at 284–85 (citations omitted). Thus, the actual or anticipated

activities of Fairfield Sentry, Fairfield Sigma, Fairfield Greenwich Group, or BLMIS in New York

are not relevant when determining whether LGT Liechtenstein engaged in purposeful conduct in

New York. Alleging that a defendant knew of a third party's "strong forum connections" does not

change the analysis. *Id*. at 289 (cleaned up).

     Courts routinely deny specific jurisdiction over a nonresident based on allegations that the

defendant contracted with a New York plaintiff that performed or was expected to perform in New

York.[8] As the New York Court of Appeals explained, "[t]he mere receipt by a nonresident of a

benefit or profit from a contract performed by others in New York is clearly not an act by the

recipient in this State sufficient to confer jurisdiction under our long-arm statute." *Ferrante Equip.*

*Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 (1970) (citation omitted). LGT Liechtenstein

was a shareholder of Fairfield Sentry and Fairfield Sigma—BVI companies—and not of BLMIS.

Whether LGT Liechtenstein hoped to profit from BLMIS's purported trading activities in New

York when it subscribed to shares of BVI-incorporated Fairfield Sentry and Fairfield Sigma, or

---

[8] *See, e.g.*, *Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("Plaintiff's
contention that the Court has personal jurisdiction because Plaintiff performed his obligations under the Agreements
in New York is also unavailing."); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) (allegations
that plaintiff "built out an office in New York, hired personnel, and performed trades and analyses here is also
unavailing" because "his unilateral activity in the forum state would be insufficient to establish jurisdiction").

initiated redemptions therefrom, is irrelevant for establishing that LGT Liechtenstein purposefully availed itself of the benefits of New York law.[9]

The pertinent question instead is whether and to what extent the defendant performed or was obligated to perform in New York. *See Mtg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282, 288 (E.D.N.Y. 2005) (holding that "[p]laintiff's business interactions with New York are not at issue when assessing personal jurisdiction. Rather, the Court must evaluate the Defendants' activities and conduct" in New York). Here, LGT Liechtenstein was simply a shareholder of Fairfield Sentry and Fairfield Sigma.[10] There is no allegation that LGT Liechtenstein was expected to provide any good, service, or other performance in New York or

---

[9] A defendant's mere act of investment in entities with New York contacts does not of itself suffice to confer personal jurisdiction over that defendant in a New York court. *See, e.g., Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989, at \*5 (S.D. Fla. 2009); *In re Amaranth Nat. Gas. Commodities Litig.*, 587 F. Supp. 2d 513, 536–37 (S.D.N.Y. 2008); *see also Suber v. VVP Servs., LLC*, No. 07 Civ. 6377(SAS), 2021 WL 4429237, at \*9 (S.D.N.Y. Sept. 27, 2021) ("[I]f offering securities in New York, or owning shares managed by a fund in New York were sufficient to establish personal jurisdiction over a foreign company under § 302(a)(3), then New York courts would have jurisdiction over every company that accesses New York's capital markets or invests in a New York managed fund so long as that company also committed a tort that harmed a New Yorker, which would be a reach too far.") (internal quotation omitted); *Tymoshenko v. Firtash*, No. 11-cv-2794 (KMW), 2013 WL 1234943, at \*4 (S.D.N.Y. Mar. 27, 2013) (rejecting as insufficient basis for specific jurisdiction an allegation that defendant purportedly invested in various "shell companies" in the U.S. because, "[a]lthough the companies in which [defendant] purportedly invested may have engaged in more extensive activities within the United States, the [Complaint] fails to allege that [defendant] controlled, directed, or even knew about these acts. Moreover, even if [defendant] were more involved in these corporations' investment decisions, that would not, in and of itself, suffice to show that [defendant] has the 'requisite continuous and systematic contact' with the United States").

[10] To the extent the Trustee seeks to attribute the jurisdictional contacts of Fairfield Sentry or Fairfield Sigma, or even BLMIS, to LGT Liechtenstein, this argument fails as a matter of law, because an entity's jurisdictional contacts may only be attributed to its shareholder under an alter ego or agency theory. *See, e.g., Ferrante Equip. Co.*, 26 N.Y.2d at 283; *Tymoshenko*, 2013 WL 1234943, at \*4; *Cooper v. Parsky*, No. 95CIV10543(JGK)(NRB), 1997 WL 242534, at \*14 (S.D.N.Y. Jan. 8, 1997) (internal quotation omitted) ("Even a controlling shareholder will not be subject to personal jurisdiction unless the record justifies piercing the corporate veil."), *aff'd in part, rev'd on other grounds*, 140 F.3d 433 (2d Cir. 1998). The Complaint does not allege any grounds for piercing the corporate veil, a necessary component of an alter ego theory. *See Cooper*, 1997 WL 242534, at \*14 (mere status as "a New York corporation's shareholder[] . . . does not justify piercing the corporate veil"). Even if Fairfield Sentry and Fairfield Sigma had New York connections, they were BVI companies, not New York corporations. Nor does the Complaint allege that Defendant had control over the investment activities of Fairfield Sentry, Fairfield Sigma, or BLMIS, a necessary element of agency theory. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring the alleged agent in New York to act "for the benefit of, with the knowledge and consent of, *and under some control by*, the nonresident principal") (emphasis added).

the United States, meaning there were no "continuing and wide-reaching contacts," *Burger King*, 471 U.S. at 479–80, sufficient to establish specific jurisdiction.

> 2.    Alleged Business Communications or Actions Involving LGT Liechtenstein are Insufficient to Establish Jurisdiction.

The Trustee also alleges that LGT Liechtenstein availed itself of jurisdiction in New York by "sen[ding] a copy of [the Fairfield Sentry subscription] agreement to FGG's New York City office," and intentionally directing investments to New York, Compl. ¶¶ 6, 7, conduct which needs not involve (and is not alleged to involve) any actual communications with New York. This is insufficient to assert personal jurisdiction. Because the nature and extent of the alleged communications are essential to the personal jurisdiction analysis, general allegations of communications are clearly inadequate. *See, e.g.*, *SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170–71 (S.D.N.Y. 2015) (no personal jurisdiction; defendants had "only sporadic or indirect contacts with the United States"), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 380, 381–82 (1967) (fact that Illinois corporation's representatives traveled to New York and spent one day conferring with plaintiff over a contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)). Nor can the Trustee argue that his claims arise out of or relate to these communications because the particulars of the alleged communications have not been sufficiently specified as to locations of all involved, the means of contacts, and the contents of any communications, and, in any event, do not necessarily implicate New York's jurisdiction since they related to investments in a fund situated in the BVI—not to goods or services in New York. For the avoidance of doubt, the Trustee merely alleges that LGT Liechtenstein sent a copy of its Fairfield Sentry subscription agreement to New York, or "directed funds to be invested" with BLMIS in New York through Fairfield Sentry, and received subsequent transfers from Fairfield Sentry and Fairfield Sigma, which were managed by FGG (though it is not

14

clearly alleged where). Compl. ¶¶ 6, 7. These fleeting, insignificant contacts are insufficient to support the exercise of specific personal jurisdiction over the Bank. *RBC Cap. Mkts, LLC v. Garcia Hamilton & Assocs., LP*, No. 19-cv-10247 (NRB), 2021 WL 230194, at \*4 (S.D.N.Y. Jan. 22, 2021) ("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction.") (internal quotation omitted).

Ultimately, the Trustee's jurisdictional allegations fail to establish that LGT Liechtenstein "project[ed]" itself into New York. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (dismissing the amended complaint for lack of specific jurisdiction, finding claims that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York . . . were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York"); *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) (holding plaintiff's performance in New York of his contractual obligations was insufficient to establish personal jurisdiction over foreign defendant); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.,* 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) ("knowledge or acquiescence" of New York Plaintiff's performance of contractual obligations in New York was insufficient to establish personal jurisdiction over nonresident corporation). The "appropriate focus . . . is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995).

LGT Liechtenstein was merely one of many investors in BVI-incorporated Fairfield Sentry and Fairfield Sigma, had no control over the Fairfield Funds, let alone BLMIS, or their respective actions or investment strategies, and did not, and was not expected to, provide any good, service,

or other performance in New York or the United States. The allegations in the Complaint fail to explain how any of the alleged communications or contacts with New York relate to the Trustee's claim against LGT Liechtenstein and are therefore insufficient. *See, e.g.*, *Fairfield I*, 2018 WL 3756343, at \*11 ("[T]he Subscription Agreement was irrelevant to actions to recover the inflated redemption payments."). The alleged New York communications or correspondence are therefore insignificant in the jurisdictional analysis and do not support the exercise of personal jurisdiction over Defendant.

### 3. Sending and Receiving Funds through a New York Bank Account is Insufficient to Establish Jurisdiction.

The Trustee also alleges that LGT Liechtenstein "wired funds to Fairfield Sentry through a bank in New York," and ultimately derived "significant revenue from New York," apparently through redemptions. Compl. ¶¶ 6, 7. As an initial matter, the Trustee only alleges that LGT Liechtenstein wired funds through a bank in New York; he does not allege that funds were received at a bank in New York. LGT Liechtenstein's alleged use of a New York bank to wire funds, however, is irrelevant for personal jurisdiction purposes. The "mere maintenance" of a U.S. bank account is insufficient to establish personal jurisdiction. *In re Sledziejoinwski*, Case Nos. 13-22050 (RDD) & 13-22748 (RDD), 2016 WL 6155929, at \*7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983).[11] Likewise, the use of a New York bank by a foreign defendant to clear transfers denominated in U.S. dollars does not confer jurisdiction over the foreign defendant. *See Hau Yin To*, 2017 WL 816136, at \*5–6 (rejecting personal jurisdiction over foreign defendants because the transmission of information and funds

---

[11] "[A] foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction" if, as here, "communications with and payments to New York were made merely to ensure compliance with contract terms negotiated and executed outside of New York." *See Hau Yin To v. HSBC Holdings, PLC*, 15CV3590-LTS-SN, 2017 WL 816136, at \*5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).

"to and from BLMIS . . . [was an] incidental consequence[] of fulfilling a foreign contract"); *Hill*, 207 F. Supp. 3d at 339–40 (same); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases).

Hundreds of thousands of foreign dollar transactions, valued at over $1.5 trillion, are cleared in New York each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018). Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459–60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Univ. Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.") (internal quotation omitted). Finally, the Trustee's claim does not relate to the technical details about how the Fairfield Funds received subscription payments or made redemption payments, and the claim and asserted injury would be the same if an alternative means of receiving or making payments to and from LGT Liechtenstein were used. *See Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020) (no specific jurisdiction over foreign bank defendant based on its use of correspondent bank account in New York for the transfers at issue, where use of the New York account was not

17

necessary to the Ponzi scheme). Here, there is no allegation that the transmission of funds through New York accounts (or through New York more generally, irrespective of bank account location) is the principal wrong that forms the basis for the Trustee's suit.

For all the foregoing reasons, the Trustee cannot establish that LGT Liechtenstein's alleged acts support the assertion of specific personal jurisdiction over LGT Liechtenstein in New York. This Action should be dismissed with prejudice on this basis alone.

## III.    The Complaint Fails to Meet Fed. R. Civ. P.  8(a) and 9(b) Pleading Standards

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Supra* Part I. Additionally, where, as here, a plaintiff alleges fraud, Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also In re PXRE Grp., Ltd., Sec. Litig*., 600 F. Supp. 2d 510, 524 (S.D.N.Y. 2009). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A*., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). Rule 9(b) does not grant an aggrieved party "license to base claims of fraud on speculation and conclusory allegations." *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted).

To bring a claim against a subsequent transferee under § 550(a)(2) of the Bankruptcy Code, the Trustee is first required to allege the avoidability of an initial transfer. *See, e.g.*, *Picard v. Shapiro* (*In re Bernard L. Madoff Inv. Secs. LLC*), , 119 (Bankr. S.D.N.Y. 2015); *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (hereinafter "*Cohmad*") ("In order to recover a fraudulent or preferential transfer of debtor property from a subsequent transferee, the Trustee must first show that the initial transfer of that property by the debtor is subject to avoidance under one of the

18

Bankruptcy Code's avoidance provisions."). Whether the Trustee properly pleaded the avoidability of the initial transfer is governed by Rule 9(b), which states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *See Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *7.

The Complaint fails to adequately allege the circumstances giving rise to avoidability of the initial transfers under the heightened pleading standard required by Rule 9(b) (and, in any case, under Rule 8). The Trustee's only allegations regarding the initial transfers are that: (i) the various Fairfield Sentry Initial Transfers "were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4)," Compl. ¶¶ 36–38; and (ii) the various Fairfield Sentry Initial Transfers "are avoidable and recoverable under [allegedly applicable provisions of] the Bankruptcy Code, §§ 273-279 of the NYDCL [the New York Debtor and Creditor Law], and applicable provisions of SIPA, particularly § 78fff-2(c)(3)," *id*. These are but conclusory statements that all asserted Initial Transfers are avoidable, without alleging any facts supporting the contention of avoidability.[12] A claim, however, only "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Among other defects, the Trustee fails to offer any factual allegation showing that: (i) any alleged initial transfer was made without "fair consideration," as required by NYDCL § 273 (*see In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005)); (ii) BLMIS "received less than a reasonably equivalent value in exchange for such

---

[12] As discussed below in Part IV, one consequence of the Trustee's pleading failure is that the Trustee cannot avoid any of the Initial Transfers—including the Fairfield Sentry Two Year Initial Transfers.

transfer," as required by Bankruptcy Code § 548(a)(1)(B)(i) (*see In re Dreier LLP*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011)); (iii) any alleged initial transfer was made with actual intent to defraud, as required by NYDCL § 276 (*see In re Flutie N.Y. Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004)), and Bankruptcy Code § 548(a)(1)(A) (*see Dreier*, 452 B.R. at 423)); and (iv) any alleged Initial Transfer made within 90 days of the Filing Date was made to or for the benefit of a creditor on account of an antecedent debt owed by the debtor before the transfer was made, or that the purported creditor who received the transfer(s) received more than it would otherwise have under Chapter 7, as required by Bankruptcy Code § 547(b) (*see In re Robert Plan of N.Y. Corp.*, 456 B.R. 150, 154–58 (Bankr. E.D.N.Y. 2011)).

The Trustee has attempted to fill this pleading gap improperly by "incorporat[ing] by reference the allegations [from the Fairfield Action] contained in the Fairfield Amended Complaint as if fully set forth herein," Compl. ¶ 35—namely, the entire 217-page, 798-paragraph complaint operative at the time the Trustee filed its Complaint. Not only is the Fairfield Action Amended Complaint now superseded by a new complaint which post-dates the Complaint against LGT Liechtenstein in the instant Action by nearly nine years (*i.e.*, the Fairfield Action SAC), but any attempt to incorporate by reference the Fairfield Action Amended Complaint itself is contrary to law. Although "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," Fed. R. Civ. P. 10(c), a pleader may not indiscriminately adopt whole pleadings from a different action, *NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705(DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer"); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a

complaint in a completely separate action"). Courts police the line drawn by Rule 10(c), which authorizes only adopting particular "statement[s] in a pleading," not an entire pleading. *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4, *8 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party.") (citation omitted); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (the "proposed method of pleading necessary elements of [the] claim by incorporating factual allegations contained in several prior lengthy . . . pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief") (citation omitted).

The Trustee's attempt to incorporate the entire Fairfield Action AC violates Fed. R. Civ. P. 8(a)(2), which serves two important purposes—"to give the adverse party fair notice of the claim asserted so as to enable [it] to answer and prepare for trial," and to avoid "[u]nnecessary prolixity in a pleading [that] places an unjustified burden on the court and the party who must respond to it because they are forced to select the material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (cleaned up). The Fairfield Action AC dwarfs the instant 15-page Complaint in this Action.

For these reasons, the Complaint should be dismissed with prejudice.[13]

---

[13] The Trustee purports in its Complaint—filed in December 2011—to "reserve the right to" "supplement the information on" Initial Transfers and subsequent transfers and to seek recovery of such additional transfers. Compl. ¶¶ 42, 44. Since the Complaint is nearly eleven years old, the Trustee does not have this right. Rather, the Trustee must seek Defendant's consent or this Court's leave to amend its Complaint, which it has not done. Fed. R. Civ. P. 15(a)(2) (made applicable herein by Fed. R. Bankr. P. 7015). This Court should therefore disregard the Trustee's suggestion of a "reserved" right to supplement the Complaint.

IV.     **The Trustee's Claims are Barred by Bankruptcy Code § 546(e)**

A.     **§ 546(e) Shields Initial Transfers from More than Two Years Before Filing**

The Trustee's sole claim against LGT Liechtenstein is to recover subsequent transfers made by Fairfield Sentry and Fairfield Sigma to the Bank. *E.g.*, Compl. ¶¶ 46–50. But the Trustee may recover subsequent transfers only to the extent that the initial transfer is avoided. 11 U.S.C. § 550(a) (2018). "The Code sets out a number of limits on the exercise of these avoiding powers," including the safe harbor of Section 546(e). *Merit Mgmt. Grp. v. FTI Consulting*, 138 S. Ct. 883, 889 (2018). That safe harbor bars the Trustee's claims here. Section 546(e) bars a trustee from avoiding a transfer (other than under section 548(a)(1)(A), which only has a two-year lookback period) if the transfer (1) was made by or to a covered entity such as a stockbroker or financial institution; and (2) was either a settlement payment or a transfer in connection with a securities contract. 11 U.S.C. § 546(e). "[I]n enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Tr.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 423 (2d Cir. 2014). "[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id.* "Unwinding settled securities transactions . . . would seriously undermine – a substantial understatement – markets in which certainty, speed, finality, and stability are necessary to attract capital." *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420.

In an action to recover a subsequent transfer, the subsequent transferee may assert any defenses to avoidability that the initial transferee could have asserted, including § 546(e). *See*

*Picard v. Fairfield Inv. Fund Ltd.*, No. 08-01789 (CGM), 2021 WL 3477479, at \*3 (Bankr.
S.D.N.Y. Aug. 6, 2021). A court can dismiss a complaint based on § 546(e) if its applicability is
established on the face of the complaint or documents that are incorporated by reference into, or
integral to, the complaint. *See id.* at \*2–4. LGT Liechtenstein has established the applicability of
the § 546(e) safe harbor, barring the Trustee's claims.

1.    The Initial Transfers Were Covered Entity Transfers.

A payment is subject to the safe harbor if it is made by, to, or for the benefit of a covered
entity, including a "stockbroker" and "financial institution." The redemptions in issue meet this
requirement in three separate ways. The Bankruptcy Code defines "stockbroker" to include entities
"engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). As
Judge Rakoff held, BLMIS qualifies as a stockbroker under the Code. *See SIPC v. Bernard L.
Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) ("[E]ven assuming . . . [Madoff
Securities] never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as
a stockbroker by virtue of the trading conducted by its market making and proprietary trading
divisions."), *aff'd sub nom. In re Bernard L. Madoff Inv. Secs. LLC*, 773 F.3d 411 (2d Cir. 2014).
While BLMIS's status as a stockbroker is sufficient to satisfy the "covered entity" requirement,
there are two additional, independent bases to reach the same conclusion. Fairfield Sentry, as initial
transferee, qualifies as a "financial institution," and is therefore a covered entity. *See* 11 U.S.C. §
101(22)(A) (stating that a "financial institution" includes the customer of a bank when the bank is
"acting as agent or custodian for a customer . . . in connection with a securities contract"); *Fairfield
Sentry Ltd. v. Theodoor GGC Amsterdam*, No. 10-13164 (SMB), 2020 WL 7345988, at \*6–8
(Bankr. S.D.N.Y. Dec. 14, 2020) (holding that Fairfield Sentry was a "financial institution,"
because Sentry was a customer of Citco, a bank regulated by the Central Bank of the Netherlands
and registered with the Central Bank of Ireland, and Citco acted as Sentry's agent in connection

23

with the securities contracts underlying Sentry's redemptions to shareholders).[14] Additionally, the Trustee has alleged that the initial transfers were made for the benefit of LGT Liechtenstein (Compl. ¶ 48), and that LGT Liechtenstein is a private bank in Liechtenstein (*Id.* ¶ 22). Thus, Defendant is indisputably a "financial institution" within the Code definition, which includes a "commercial or savings bank." 11 U.S.C. § 101(22)(A). Moreover, judicially noticeable public registry information confirms that, during the relevant period, LGT Liechtenstein was indeed a "bank," authorized to perform banking activities by the Liechtenstein Financial Market Authority (the "FMA"), from which it held a banking license during the years of the relevant transfers at issue in this lawsuit, Hauser Decl., Exs. C–E; *see also Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 987 (8th Cir. 2009) (finding that "a bank" "is a financial institution"), and thus is a covered entity.

2.    Initial Transfers Concern Securities Contracts and Settlement Payments.

The second requirement of the safe harbor is that the payment made by, to, or for the benefit of a covered entity be a "transfer . . . in connection with a securities contract" or a "settlement payment." 11 U.S.C. § 546(e). Although a transfer need only fit into one of those two categories to be protected under the safe harbor, here, the alleged Initial Transfers meet both requirements. In *Fishman*, the Second Circuit held that § 546(e) shielded transfers from BLMIS to its account holders because the documents governing BLMIS's customer accounts were "securities contracts" and payments that BLMIS made to its customers were made "in connection with" such contracts. *Fishman*, 773 F.3d at 417–22. Here, Fairfield Sentry "had direct customer accounts with BLMIS," and, in turn, Fairfield Sigma was 100% invested in Fairfield Sentry. Compl. ¶ 2. The same reasoning therefore applies to the Initial Transfers to Fairfield Sentry and the subsequent transfers

---

[14] For the reasons discussed in footnote 5, *supra*, this holding is binding on the Trustee, who was in privity with the Fairfield Liquidators, who brought suit as fiduciaries for the Trustee.

from Fairfield Sentry to Fairfield Sigma. In addition, insofar as the Trustee's theory is that the

Initial Transfers from BLMIS to Fairfield Sentry (and through Fairfield Sentry, to Fairfield Sigma)

were made to satisfy LGT Liechtenstein's redemption requests, those transfers were likewise made

"in connection with" the securities contract that governed LGT Liechtenstein's relationship with

Fairfield Sentry, namely, Sentry's Articles of Association. *Migani*, [2014] UKPC 9, ¶ 10 ("[T]he

terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . .

are to be found in the Articles of Association of the Fund").[15] Under the Bankruptcy Code, a

"securities contract" is defined as "a contract for the purchase, sale, or loan of a security; [or] . . .

any other agreement or transaction that is similar to [any such] agreement or transaction." 11

U.S.C. § 741(7). As Judge Rakoff observed, that broad definition "includes, inter alia, investment

fund subscription agreements and redemption requests." *Cohmad*, 2013 WL 1609154, at *8.

Importantly, § 546(e) does not require that the initial transfer be in connection with a

securities contract between the debtor and the initial transferee, so long as it is made "in connection

with a securities contract." 11 U.S.C. § 546(e); *see also Fishman*, 773 F.3d at 422 ("[A] transfer

can be connected to, and can be made in relation to, multiple documents or purposes

simultaneously."). Accordingly, the alleged securities contract between Fairfield Sentry and LGT

Liechtenstein also qualifies. *Cohmad*, 2013 WL 1609154, at *9 (noting that "hypothetical situation

in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff

Securities customer account occurred because an investor in that fund sought redemption of its

investment under the terms of its investment contract" would "fit within the plain terms of Section

546(e)"). The Second Circuit held in *Fishman* that BLMIS's payments to its clients also constituted

---

[15]  This Court may consider the Articles of Association because they are integral to the Complaint. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021).

25

"settlement payments" within the meaning of § 546(e) because they were "transfer[s] of cash or securities made to complete a securities transaction." *Fishman*, 773 F.3d at 422 (cleaned up). That reasoning applies equally here, and further brings the alleged redemption within the safe harbor.

> 3. The Trustee Has Not Alleged that LGT Liechtenstein had Actual Knowledge of Madoff's Fraud.

The only ground upon which the § 546(e) safe harbor could be rendered inapplicable is the judicially created rule that a subsequent transferee "who had actual knowledge of Madoff Securities' fraud . . . cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (quoting *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, at *7). Although Section 546(e) does not contain such an exception, the court in *Cohmad* concluded that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Cohmad*, 2013 WL 1609154, at *7. *Cohmad*, however, did not hold that an innocent subsequent transferee cannot seek safe harbor when the initial transferee has actual knowledge of the fraud; that holding would contradict the case's rationale based on the purpose of § 546(e)—*i.e.*, assuring the finality of settlements of securities transactions and minimizing the securities market disruption caused by bankruptcy proceedings. As Judge Rakoff noted, that goal is "achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract," but not by shielding the transactions of "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme [and therefore] did not have any such expectations." *Id.* at *4.

Because LGT Liechtenstein is not alleged to have had such actual knowledge, § 546(e)'s purpose is "achieved by protecting" its "reasonable expectations" and dismissing the Trustee's

claims. *Id.* at \*16. Even if the allegations in the Complaint are read to imply that LGT Liechtenstein should have known about Madoff's fraud—a proposition unsupported by the Complaint—the Trustee fails to plead that Defendant had actual knowledge and thereby to remove the claim from within the ambit of the safe harbor, in turn rendering his avoidance claim nonviable.

It is likewise immaterial that in *Fairfield Investment Fund*, this Court held that the Trustee sufficiently alleged actual knowledge on the part of Fairfield Sentry, the initial transferee. *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4. That finding cannot be imputed to infer knowledge of LGT Liechtenstein, which dealt with the Fairfield Funds at arm's length. *See id* at \*6–7 (deferring judgment on Fairfield Sentry's actual knowledge while holding that claim as to individual defendant must be dismissed because Trustee failed to plead her "independent actual knowledge of the BLMIS fraud"). The sole question is whether the Trustee has pleaded facts that, if proved, would establish LGT Liechtenstein's actual knowledge of Madoff's fraud. In *Fairfield Investment Fund*, this Court carefully differentiated five alleged subsequent transferees against whom the Trustee had sufficiently pleaded such facts from one alleged subsequent transferee against whom "the Trustee has failed to plead individualized factual allegations demonstrating . . . independent actual knowledge of the BLMIS fraud." *Id.* at \*6; *see also id.* at \*15 (dismissing the individual claims against the latter defendant). For the avoidance of doubt, to the extent the Trustee seeks to

---

[16] When a statute like § 546(e) creates a safe harbor, and specifies exceptions, courts are not free to create additional exceptions on policy or equitable grounds. *Law v. Siegel*, 571 U.S. 415, 424-25 (2014). LGT Liechtenstein notes its objection to *SIPC v. Bernard L. Madoff Inv. Secs. LLC* here to preserve the issue for appeal. Additionally, LGT Liechtenstein respectfully submits that this Court's recent decisions in *Banque Lombard Odier*, *Bordier & Cie*, *Lloyds TSB Bank*, *Banque SYZ* and *Multi-Strategy Fund* misinterpret Judge Rakoff's decisions on the applicability of the section 546(e) safe harbor to subsequent transferees. *Cf. Picard v. ABN AMRO Bank (Ireland) Ltd.*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ("[T]he Court has found that, in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)."). The Court's recent decisions also contradict its opinion in *Fairfield Investment Fund*, wherein the Court concluded as to one subsequent transferee that the plaintiff "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud," and dismissed all claims against her. *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4–6.

defeat the safe harbor by invoking the exception that applies for a "subsequent transferee who had actual knowledge" of the underlying fraud, such an exception does not apply here, as the Trustee has failed to allege even a single fact asserting that LGT Liechtenstein had actual knowledge of Madoff's fraud.

Moreover, the "securities contract" that LGT Liechtenstein allegedly "signed"—and which it reasonably expected § 546(e) to protect—was not a customer agreement between BLMIS and Fairfield Sentry or Fairfield Sigma, *id.* at *3, but rather a separate contract between LGT Liechtenstein and Fairfield Sentry, Compl. ¶ 7. The *Cohmad* court recognized that Section 546(e) applies where, as the Trustee has pleaded here, the initial transferee allegedly withdrew funds from BLMIS to pay financial institutions to redeem (*i.e.*, repurchase) their shares, pursuant to a separate securities contract between the initial and alleged subsequent transferees—here, the Fairfield Funds' Articles of Association. Because LGT Liechtenstein "claim[s] protection under Section 546(e) under [such] a separate securities contract as a . . . financial institution," *Cohmad*, 2013 WL 1609154, at *10, it is not barred from relying on § 546(e) absent allegations of its actual knowledge of the fraud.[17]

### B.        The Section 546(e) Safe Harbor Shields the Remaining Initial Transfers

The Trustee has failed to allege that the Initial Transfers were made with fraudulent intent. *Supra* Part III. This defect means that all claims predicated on the Initial Transfers—including the "Fairfield Sentry Six Year Initial Transfers" which are "Fairfield Sentry Two Year Initial Transfers" (Compl. ¶ 37)—should be dismissed. While § 546(e) bars the Trustee from avoiding

---

[17] The Complaint sets forth the alleged Initial Transfers, separated into the "Two Year Initial Transfers" and the "Six Year Initial Transfers." Compl., Ex. B. Under section 548(a)(1)(A), a trustee may avoid only transfers made within two years before the Filing Date. Any transfer made before that date is protected by § 546(e) and cannot be avoided as a matter of law.

all transfers other than actual fraudulent transfers under § 548(a)(1)(A) made within the two-year lookback period, the Trustee has failed to allege actual fraudulent intent, and the so-called "Ponzi scheme presumption" does not cure the pleading deficiencies.

The sole statutory exception to § 546(e) is for transfers avoidable under § 548(a)(1)(A), which has a two-year lookback period. "[W]here § 546(e) applies to the Trustee's claims, the Trustee may only proceed . . . insofar as he seeks to recover those subsequent transfers under § 550(a) as to which he could have avoided the initial transfer under § 548(a)(1)(A)." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4. The Trustee, however, has failed to plead the avoidability of any initial transfers under section 548(a)(1)(A), and cannot salvage any of his claims from the § 546(e) bar. Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became" indebted "on or after the date that such transfer was made." 11 U.S.C. § 548(a)(1)(A). Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted). The Complaint, however, lacks any allegations which, if proved, would establish that in making any of the alleged Two Year Transfers, BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors, as opposed to merely honoring its contractual commitments to the Fairfield Funds.[18] The Trustee has pleaded nothing about BLMIS's intent in making any (much less each) of the "specific transfers challenged" here, *id.*, and therefore fails to plead avoidability based on actual intent to defraud at all, let alone with the particularity Rule 9(b) requires.

---

[18] Since, for example, transfers intended to return capital to the Fairfield Funds or to satisfy an antecedent debt to them would not have been made with the "actual intent to hinder, delay or defraud" creditors, merely alleging that BLMIS paid money to the Fairfield Funds is insufficient to establish an actually fraudulent transfer.

Instead of pleading facts establishing the fraudulent intent behind each initial transfer, as required by section 548(a)(1)(A), the Trustee relies upon the presumption "that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 201 (2d Cir. 2021) (Menashi, J., concurring) ("*Citibank*"), *cert. denied*, 142 S. Ct. 1209 (2022); Compl. ¶ 1. Although the unchallenged application of the Ponzi scheme presumption has been accepted by this Court and the District Court in actions commenced by the Trustee, Judge Menashi's recent concurring opinion in *Citibank* makes clear that the issue is not settled at the Circuit level.[19] *Id.* at 201–02. As such, the presumption should not be applied here—especially in view of the Trustee's conclusory and insufficient pleading.[20] At least on the instant facts, the § 546(e) safe harbor bars the Trustee's recovery of the Fairfield Sentry Two Year Initial Transfers (and all transfers).

## V.    The Complaint Fails to Plausibly Allege That the Subsequent Transfers Were of BLMIS Customer Property.

To state a claim under either § 550(a) or § 78fff, the Trustee must plausibly plead facts showing that the challenged subsequent transfer was estate property. *See* 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3)

---

[19] Although the Second Circuit has on occasion applied the presumption "when its application was uncontested," *Citibank*, 12 F.4th at 202 n.7 (Menashi, J., concurring), it has not sanctioned use of the presumption in any case where the issue was litigated. Nor has the Supreme Court recognized the presumption.

[20] Among other reasons not to extend the Ponzi scheme presumption, § 548(a)(1)(A) does not even mention Ponzi schemes, much less authorize courts to relax the Trustee's pleading burden in such cases; fraudulent transfer cases warrant an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme,'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring); and the presumption "improperly treats preferences as fraudulent transfers," thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences," which is for Congress, not the courts, to articulate, *Citibank*, 12 F.4th at 201–02.

("[T]rustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property."); *see also Picard v. Stanley Shapiro* (*In re Bernard L. Madoff Inv. Secs. LLC*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds").[21]  While this Court has held that "at the pleading stage, the Trustee is not required to provide a dollar-for-dollar accounting of the exact funds at issue," it is nonetheless true that "barebones allegations that the funds at issue were transferred to the subsequent [t]ransferees, without more detail, are insufficient." *Id.* at 119 (citation omitted).

Here, the Complaint contains only conclusory allegations that the monies ultimately transferred to LGT Liechtenstein were customer property.  In fact, the Trustee only asserts that "approximately $10,350,118 of the money transferred from BLMIS to Fairfield Sentry was *subsequently* transferred by Fairfield Sentry to [] LGT Liechtenstein," and that "approximately $752,273,917 of money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma" and, "[t]hereafter, the equivalent of at least $111,753 was transferred by Fairfield Sigma to [] LGT Liechtenstein." Compl. ¶¶ 41, 43 (emphasis added). Nothing in the Complaint or its exhibits substantiates these allegations. Rather, the exhibits upon which the Trustee relies simply list transfers from BLMIS to Fairfield Sentry (*id.* Exs. A & B), from Fairfield Sentry to LGT Liechtenstein (*id.* Ex. C), from Fairfield Sentry to Fairfield Sigma (*id.* Ex. D), and from Fairfield Sigma to LGT Liechtenstein (*id.* Ex. E), without tying those

---

[21] Equally, New York Debtor and Creditor Law "permits *money damages* to be recovered only against parties who participate in the fraudulent transfer *and* are either transferees of the assets or beneficiaries of the conveyance." *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (cleaned up).

transfers to the payment by BLMIS of any redemption request from Fairfield Sentry or Fairfield Sigma by LGT Liechtenstein.[22] The "barebones" allegation that the transfers originated with BLMIS as Initial Transfers, *id.* ¶¶ 41, 43, 48, 49, without specifying which specific transfers to LGT Liechtenstein contained customer property, is insufficient to sustain the Trustee's claim. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Office, Inc.*, No. 18 Civ. 1317 (CM), 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession"). Critically, the Complaint fails to allege which, if any, of the alleged initial transfers of BLMIS customer property were subsequently transferred to LGT Liechtenstein. Essentially, the Trustee is asking the Court to infer that because BLMIS transferred a large amount of money to Fairfield Sentry (and Fairfield Sentry transferred a large amount of money to Fairfield Sigma) over a long period of time, any and all money that went from Fairfield Sentry to LGT Liechtenstein, or from Fairfield Sentry to Fairfield Sigma, and then to LGT Liechtenstein, must have come from BLMIS. But the Trustee alleges no factual basis to support this conclusion. In fact, Fairfield Sentry—and, in turn, Fairfield Sigma—did not invest all money with BLMIS. *See* Compl. ¶ 2 ("Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts."); *id.* ("Fairfield Sigma . . . invested 100% of its assets in Fairfield Sentry."). Moreover, the Fairfield Funds often funded redemptions with monies received from other Fairfield Fund

---

[22] *Cf. Shapiro*, 542 B.R. at 119 ("The SAC does not tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it does not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves.").

investors, *i.e.*, money that BLMIS never held at all and which, by definition, could not have been customer property. *See, e.g.*, Fifth Am. Compl. ¶ 138, *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Aug. 12, 2021), Dkt No. 679.

Furthermore, the Trustee's own allegations confirm that it is implausible that the transfers to LGT Liechtenstein include BLMIS customer property. As set forth above, under Rule 8, a Plaintiff is required to plead allegations demonstrating "more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (emphasis added); *see also* Parts I & III, *supra.* Here, the Trustee's claims, as pleaded, are mathematically impossible, and thus, fail to meet the requisite pleading standard.[23]

In the Complaint, the Trustee alleges that approximately **$3 billion** of Customer Property was transferred by BLMIS to Fairfield Sentry within the six years preceding the Filing Date and that **a portion** of those transfers were subsequently transferred to LGT Liechtenstein. *See* Compl. ¶¶ 36, 41, 43. Yet, the Trustee simultaneously seeks to recover in the Fairfield Action (of which the Court may take judicial notice) **more than $5 billion** of alleged **subsequent** transfers that Fairfield Sentry made to Fairfield Sigma, Fairfield Lambda, Fairfield Greenwich Group, and others. *See* Fairfield Action SAC, Exs. 5, 6, 8, 10, 12, 13, 14 & 21; *see also* Fairfield Action SAC ¶ 333; Compl. ¶ 36; Compl., Ex. B. Ultimately, the Trustee seeks to recover approximately $2

---

[23] *See In re Old Carco LLC*, 454 B.R. 38, 44–54 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claims based on implausible allegations). This case is nothing *like In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014), where this Court granted the Trustee "greater latitude" in pleading where the Trustee—having "specifie[d] numerous inter-defendant transfers" showing that "defendants commingled their assets, transferring their funds into and out of each other's accounts"—faced special "difficulties" because "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." *Id.* at 149–51. No latitude is warranted in this case, which does not require disentangling inter-Defendant transfers. To the contrary, for over a decade, the Trustee has had every piece of data he needs to determine whether an alleged subsequent transfer contains customer property, and from which initial transfer that transfer originates, yet he has failed to so allege—because to do so would lead to the inescapable conclusion that the Trustee is pursuing billions of dollars to which, as a matter of simple math, he is not entitled. *E.g.*, *Pension Ben. Guar. Corp.*, 712 F.3d at 709, 723.

billion more in subsequent transfers from Fairfield Sentry than was originally alleged to have been transferred to Fairfield Sentry by BLMIS. The math does not add up.

Accordingly, the Complaint fails to state a claim under § 550(a) or § 78fff (or the NYDCL) because it does not plausibly allege an essential element such a claim—the transfer of BLMIS customer property to the subsequent transferee.

## VI.   The Trustee Fails to Establish Defendant Was More Than a "Mere Conduit" for its Banking Principals

Under Section 550(a), a trustee may recover a fraudulent transfer from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). The Trustee alleges that LGT Liechtenstein was an "immediate or mediate transferee" of certain transfers from Fairfield Sentry. Compl. ¶ 49. The Trustee fails, however, to allege additional facts suggesting that LGT Liechtenstein held legal title to any money received from Fairfield Sentry (or, subsequently, Fairfield Sigma), or acted with discretion for using transfers it received, instead acknowledging that the Bank is a "private bank," and a subsidiary of a greater LGT "wealth and asset management group" serving "private and institutional investors." *See id.* ¶¶ 3, 22. As such, the Bank does not constitute an immediate or mediate transferee under the law, warranting dismissal of the Trustee's claim.

Establishing that a defendant is a "transferee" is an essential element of a claim to recover under section 550(a), which courts address at the motion to dismiss stage. *See Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016). Under the law, however, a recipient of funds does not constitute a § 550(a) "transferee" if it does not exercise "dominion over the money or other asset," meaning "the right to put the money to [its]

34

own purpose[s]." *Picard v. Gerald & Barbara Keller Family Tr.*, 634 B.R. 39, 49–52 (Bankr. S.D.N.Y. 2021); *In re Manhattan Inv. Fund*, 397 B.R. 1, 15 (S.D.N.Y. 2007) (holding that, in the context of funds delivered to a bank or broker, dominion turns on a showing of (i) receipt of transferred funds; (ii) the legal right by the bank or broker to control those transferred funds (*i.e.*, legal control); and (iii) the right by the bank or broker to use those transferred funds for its own purpose (*i.e.*, actual control)). The Complaint fails to plead that LGT Liechtenstein functioned as anything more than a mere conduit to receive its banking customers' redemptions. *See Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Group, Inc.)*, No. 01 B 41643(RLB) et al., 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006) (recognizing that, under the dominion and control test, "mere conduits" of money are not transferees because a "'mere conduit' . . . has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else. Mere conduits can do no more than transmit a transferor-debtor's funds to a transferee"). Indeed, the Complaint does not indicate that LGT Liechtenstein had dominion and control over monies transferred to it, and, instead, establishes the Bank's "mere conduit" role. *See, e.g.*, Compl. ¶¶ 34, 41, 43, 48–49. As such, LGT Liechtenstein was not a "transferee" under § 550(a). *E.g.*, *In re Manhattan Inv. Fund*, 397 B.R. at 15; *cf. Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894–96 (7th Cir. 1988) (holding that a bank was a subsequent transferee only after "it obtained dominion over the funds" when the customer instructed the bank to use the deposited funds to reduce the customer's debt to the bank).

For this reason, the Trustee's claim against LGT Liechtenstein must be dismissed with prejudice.

## VII.    The Complaint Establishes LGT Liechtenstein's Good Faith Defense, Warranting Dismissal

Under Section 550(b), a trustee may not recover from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer.  "Although a motion to dismiss is usually not the appropriate vehicle to raise affirmative defenses to a complaint, a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." *Ortiz v. Guitian Music Bros.*, No. 07 Civ. 3897, 2009 WL 2252107, at *2 (S.D.N.Y. July 28, 2009) (citation omitted). Dismissal is appropriate where "the complaint itself establishes the facts necessary to sustain [a] defendant's [affirmative] defense." *Id.* Here, it is readily apparent on the face of the Complaint that LGT Liechtenstein is entitled to the good faith defense under section 550(b) because, as alleged, LGT Liechtenstein took the subsequent transfers for value, in good faith, and without knowledge of the voidability of the associated initial transfer(s). *See* 11 U.S.C. § 550(b).

### A.    Value

For purposes of the good faith defense, "[t]he 'value' required to be paid by the secondary transferee is merely consideration sufficient to support a simple contract . . . . There is no requirement that the value . . . be a reasonable or fair equivalent. The term 'value' in this subsection is different from and does not mean value to the debtor." Collier on Bankruptcy ¶ 550.03[1] (16th ed. 2021) (footnotes omitted). Unlike, for example, 11 U.S.C. § 548(a)(1)(B), which provides that initial transfers may be recovered if the debtor "received less than a reasonably equivalent value in exchange for such transfer," *see* 11 U.S.C. § 548(a)(1)(B), Section 550(b) contains no such language. "Had Congress intended to include [such a] requirement[,] . . . it knew how to do so." *Ziparo v. CSX Transp.*, 15 F.4th 153, 161 (2d Cir. 2021); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but

36

omits it in another section of the same Act, it is generally presumed that Congress acts intentionally.") (cleaned up). "In addition, the 'value' element . . . looks to what the transferee gave up, rather than what the transferor received." *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *9.

The Complaint seeks recovery of transfers from Fairfield Sentry to LGT Liechtenstein, and from Fairfield Sigma to LGT Liechtenstein, for LGT Liechtenstein's redemption of Fairfield Sentry and Fairfield Sigma shares. Compl. ¶¶ 46–50. Because the Fairfield Funds are BVI companies, their relationship with their shareholders is governed by BVI law under the internal affairs doctrine. *See Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997); *see also Migani*, [2014] UKPC 9, ¶ 10 ("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund"). The Eastern Caribbean Court of Appeal held that an investor's surrender of Fairfield Sentry shares upon redemption for cash gives good consideration to support the exchange. *Migani*, [2014] UKPC 9, ¶ 7; *see also Quilvest Fin. Ltd. v. Fairfield Sentry Ltd.*, Case No. HCVAP 2011/041-052, ¶ 87 (available at https://www.eccourts.org/quilvest-finance-ltd-and-others-v-fairfield-sentry-ltd/). Therefore, the Complaint shows that the "value" element of the affirmative defense is satisfied. Compl. ¶¶ 6, 7, 41, 43, 47–48; *see also* Fairfield Action AC ¶ 23 (alleging that Fairfield Sentry "transferred funds to their investors, . . . which redeemed shares or limited partnership interests in the [] Fund[]");

## B.    Good Faith

The Second Circuit in *Citibank* recently set forth a three-step inquiry for establishing a good-faith defense. *Citibank*, 12 F.4th at 191–92. A court must examine (1) "what facts the defendant knew; this is a subjective inquiry and not a theory of constructive notice," (2) "whether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction," and (3) "whether diligent inquiry by the transferee would have discovered the fraudulent purpose of

the transfer." *Id.* (cleaned up). Thus, under *Citibank*, even if the transferee (1) knew facts that (2) would put it on inquiry notice of the fraudulent purpose underlying the transaction or transfer, the transferee still takes the transfer in good faith if (3) a diligent inquiry would not have discovered the fraudulent purpose of the transfer. The Fairfield Action SAC—now the operative pleading in the Fairfield Action— shows that a diligent inquiry would not have enabled LGT Liechtenstein to discover the fraudulent purpose of BLMIS's transfers.

The Trustee does not allege that LGT Liechtenstein had actual knowledge of any facts that would have put the Bank on inquiry notice of Madoff's fraud. Indeed, it does not appear the Trustee in the Complaint even alleges "red flags" that should have alerted investors generally to Madoff's fraud. Though the Trustee now alleges in the Fairfield Action that consultants and market analysts at various times raised questions about BLMIS's trading and reporting practices, *see, e.g.*, Fairfield Action SAC ¶ 265; *cf.* Fairfield Action AC ¶¶ 307, 383, these allegations show, at most, a lack of transparency at BLMIS, potential self-dealing, improper trading activities, and deviations from utilizing the SSC trading strategy. None of the inquiries resulting from such fact patterns led to discovery of the BLMIS fraud. Meanwhile, thousands of market participants with varying degrees of sophistication invested with BLMIS, either directly or through funds, sometimes conducting their own due diligence, sometimes of the feeder funds, sometimes also of BLMIS, sometimes none at all, during which time BLMIS was subject to stringent SEC regulatory oversight and was even investigated by the SEC on a number of occasions—yet never charged with any impropriety. *See, e.g.*, *id.* ¶ 262; *see generally id.* ¶¶ 236–62; *cf.* Fairfield Action AC ¶¶ 359–61.

Accordingly, even if LGT Liechtenstein had known some of these facts (as opposed to merely having constructive knowledge, the standard rejected in *Citibank*), and even if those facts had put LGT Liechtenstein on inquiry notice, the Fairfield Action SAC establishes that upon a

diligent inquiry, investors did not discover the fraudulent purpose of the transfers. Indeed, even a comprehensive SEC investigation failed to uncover BLMIS's fraud and merely led the SEC to impose additional compliance measures. The Trustee has alleged that "[t]he SEC collected documents from Madoff in June 2005," Fairfield Action SAC ¶ 239, and "[i]n 2006, the SEC began an investigation into allegations that BLMIS may have been a Ponzi scheme or illegally front running the market," Fairfield Action AC ¶ 351; *cf.* Fairfield Action SAC ¶¶ 239, 261–62, but that ultimately, Madoff's "scheme to defraud the SEC succeeded" and "the SEC closed any further investigation of BLMIS," Fairfield Action AC ¶ 361; Fairfield Action SAC ¶¶ 261–62. The SEC's failure to uncover the scheme—even with its powerful investigative tools, expansive subpoena powers, and substantial resources—establishes that even diligent inquiry by LGT Liechtenstein would not have discovered the fraud.[24] Accordingly, because the Trustee's own allegations establish that a diligent inquiry would not have enabled LGT Liechtenstein to discover the fraudulent purpose of the BLMIS transfers, the Complaint establishes LGT Liechtenstein's good faith defense.

### C.        Without Knowledge of Voidability

In applying this element of the good faith defense, the Court must test a subsequent transferee's knowledge of the voidability of the initial transfer, not of the subsequent transfer. *In re Equip. Acq. Res., Inc.*, 803 F.3d 835, 840 (7th Cir. 2015). Because courts construe "without knowledge of the voidability of the transfer" the same as good faith, this element of the defense is

---

[24] Even if a transferee has actual knowledge of facts that put it on inquiry notice of potential fraud underlying a transfer, the transferee is still entitled to the good faith defense unless a diligent inquiry would have uncovered that fraudulent purpose. Against this backdrop, the allegations in the Fairfield Action SAC, the operative complaint, show that an inquiry would not have revealed the fraud, as only a very small group of outliers suspected a Ponzi scheme, while thousands of other market participants, many extremely sophisticated, disagreed with these opinions and invested in BLMIS, either directly or through funds like the Fairfield Funds. Moreover, the allegations indicate that Fairfield Sentry's management engaged in deceptive conduct. *See, e.g.*, Fairfield Action SAC ¶¶ 5–9, 162, 165–66, 177, 183, 237; *see also* Fairfield Action AC ¶¶ 362–98, 464–69.

also met. *Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 516 B.R. 18, 23 n.3

(S.D.N.Y. 2014) ("In light of the legislative history, the most plausible reading is that this third

requirement is merely one specific type of subjective knowledge required."), *disapproved of on*

*other grounds sub nom. Citibank*, 12 F.4th 171 (2d Cir. 2021). Based on the Trustee's allegations,

Defendant acted in good faith and the Complaint should be dismissed with prejudice.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice and grant

all further relief which it deems just and proper.

Dated: September 29, 2022          Respectfully submitted,

**WUERSCH & GERING LLP**

*/s/ Gregory F. Hauser*
Gregory F. Hauser
Jascha D. Preuss
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
gregory.hauser@wg-law.com
jascha.preuss@wg-law.com
***Counsel for Defendant LGT Liechtenstein***