**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-1022 (CGM) |
| CRÉDIT AGRICOLE (SUISSE) S.A., and CRÉDIT AGRICOLE S.A., a/k/a BANQUE DU CRÉDIT AGRICOLE, | |
| Defendants. | |

29654060

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT CREDIT AGRICOLE (SUISSE) S.A.'S MOTION TO DISMISS**

29654060

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.......................... 2

II.   THE FAIRFIELD FUNDS ................................................................... 3

III.  CA SUISSE....................................................................................... 4

ARGUMENT ........................................................................................... 4

I.    THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CA
      SUISSE. ............................................................................................. 4

      A.    CA Suisse Purposefully Availed Itself of the Laws and Privileges of
            Conducting Business in the United States. ........................................ 5

            1.    CA Suisse Purposefully Invested in BLMIS. ............................. 6

            2.    CA Suisse's Contacts with FGG in New York Establish Personal
                  Jurisdiction. ......................................................................... 7

            3.    CA Suisse Utilized the New York Banking System to Invest with
                  Fairfield Sentry. .................................................................... 9

            4.    CA Suisse Also Purposefully Invested in Kingate. ................... 11

      B.    The Trustee's Claims to Recover the Fraudulent Transfers Received by
            CA Suisse Arise Out Of and Relate to CA Suisse's Forum Conduct.................. 11

      C.    The Court's Exercise of Personal Jurisdiction is Reasonable.............................. 12

      D.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery................ 14

II.   LEGAL STANDARD FOR RULE 12(b)(6) ..................................................... 15

III.  SECTION 546(E) DOES NOT BAR RECOVERY FROM CA SUISSE. ....................... 16

      A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud. .............................. 17

      B.    CA Suisse Is Bound by the Actual Knowledge Exception Established in
            *Cohmad*. ............................................................................................ 18

C.      CA Suisse Is Also Precluded From Arguing That Section 546(e) Applies
        Independently to Recovery Actions. ........................................................................ 19

IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE
       INITIAL TRANSFERS. ............................................................................................... 22

       A.      All Adversary Proceedings Are Part of the Main Case for Purposes of
               Rule 10(c). ................................................................................................................. 23

       B.      Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c). .......... 24

       C.      The Trustee's Allegations Are Sufficient Under Rule 8. ....................................... 24

V.     THE TRUSTEE SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS
       CUSTOMER PROPERTY UNDER SECTION 550(A). ................................................ 25

       A.      The Trustee's Complaint Meets the Pleading Requirements. ............................... 26

       B.      CA Suisse Misstates the Trustee's Pleading Burden. ........................................... 26

       C.      CA Suisse's Tracing Arguments are Inappropriate for a Motion to
               Dismiss. ...................................................................................................................... 28

               1.      The Trustee is Not Required to Trace Customer Property at the
                       Pleading Stage. ............................................................................................... 28

               2.      Whether Fairfield Sentry Paid Redemptions with Customer
                       Property is of No Moment. ......................................................................... 28

               3.      CA Suisse's Timing Arguments Also Fail. ................................................ 30

               4.      CA Suisse's Mere Conduit Argument is Inappropriate at This
                       Stage. ................................................................................................................ 31

CONCLUSION ...................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................25, 27

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009) ..................................................................................................15

*Ayyash v. Bank Al-Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ......................15

*BLI, Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...............................................................6, 17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .............................................................................................12, 13

*Chase Manhattan Bank v. Banque Generale Du Com.*,
    No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ...............13

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .................................................................................5, 13

*In re Ditech Holding Corp.*,
    No. 19-10412 (JLG), slip op., 2020 WL 3635547 (Bankr. S.D.N.Y. July 3,
    2020) .........................................................................................................................15

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) .........................................................................................4

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ................10

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006) .......................................................................31

*Esso Exploration & Prod. Nigeria Ltd. v. Nigeria Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) .................................................................6, 11

*Fairfield Sentry (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A.*,
    No. 21-cv-10316 (LAP), slip op., 2022 WL 3910679 (S.D.N.Y. Aug. 31,
    2022) ....................................................................................................................14, 15

*In re Fairfield Sentry Ltd.*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...................................................1, 5, 12, 30

*Ge Dandong v. Pinnacle Performance Ltd.*,
 966 F. Supp. 2d 374 (S.D.N.Y. 2013)...................................................................10

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global
 Crossing Ltd.)*,
 385 B.R. 52 (Bankr. S.D.N.Y. 2008)....................................................................31

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011)..............................................................................................12

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)...................................................31

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
 425 F.3d 158 (2d Cir. 2005)....................................................................................5

*HSH Nordbank New York Branch v. St.*,
 No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...............10

*In re J.P. Jeanneret Assoc., Inc.*,
 769 F. Supp 2d 340 (S.D.N.Y. 2011).....................................................................15

*Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*,
 31 F.4th 1058 (8th Cir. 2022) ...............................................................................19

*Kelley v. Westford Special Situations Master Fund, L.P.*,
 No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020)................28, 29, 30

*Kiobel v. Royal Dutch Petroleum Co.*,
 No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
 2009) .....................................................................................................................14

*Leon v. Shmukler*,
 992 F. Supp. 2d 179 (E.D.N.Y. 2014) ...................................................................14

*Licci v. Lebanese Can. Bank, SAL*,
 20 N.Y.3d 327 (N.Y. 2012) ..................................................................................10

*In re Madoff Sec.*,
 501 B.R. ...........................................................................................................19, 23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996)....................................................................................13

*In re Morrison*,
 375 B.R. 179 (Bankr. W.D. Pa. 2007) ...................................................................24

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ......................................................................................... 10, 12

*Picard v. BAM L.P.*,
624 B.R. 55 (Bankr. S.D.N.Y. 2020) .................................................................................. 17

*Picard v. Banque Cantonale Vaudoise*,
Adv. Pro. No. 12-01694 (CGM), slip op., 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ......................................................................................... *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), slip op., 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ........................................................................................ *passim*

*Picard v. Banque Syz & Co. SA.*,
Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ........................................................................................ *passim*

*Picard v. Barclays Bank S.A.*,
Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ............................................................................................................ 2

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .............................................................................. *passim*

*Picard v. Bordier & Cie*,
Adv. Pro. No. 12-01695 (CGM), slip op., 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ........................................................................................ *passim*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) ..................................................................... 1, 3, 23, 24

*Picard v. Cohen*,
Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ............................................................................................................ 18

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) .............................................................................. *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
No. 21-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) .................................. 21

*Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*,
773 F.3d 411 (2d Cir. 2014) ........................................................................................ 18, 20

*Picard v. Legacy Cap. Ltd.*,
603 B.R. 682 (Bankr. S.D.N.Y. 2019) ................................................................................ 17

*Picard v. Lloyds TSB Bank PLC*,
    Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551 (Bankr.
    S.D.N.Y. June 30, 2022) ........................................................................................... *passim*

*Picard v. Lowrey*,
    596 B.R. (S.D.N.Y. 2019) ...................................................................................18, 23

*Picard v. Magnify, Inc. (In re BLMIS)*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ......................................................................18

*Picard v. Maxam Absolute Return Fund, L.P., et al. (In re BLMIS)*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ...........................6

*Picard v. Mayer (In re BLMIS)*,
    Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
    27, 2021) ....................................................................................................................26

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...............................................................16, 30

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...................................................................29, 30

*Picard v. Miller (In re BLMIS)*,
    631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) .............................................................31

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ....................................................................... *passim*

*Picard v. Nelson, et al.*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) .....................................................................31

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................................27

*Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*,
    Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509 (Bankr. S.D.N.Y
    Aug. 18, 2022) ........................................................................................................... *passim*

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ................................................................................6, 19

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ......................................................................................15

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)..................................................................4

*Sass v. Barclays Bank PLC (In re Am. Home Mortg, Holdings, Inc.)*,
   501 B.R. 44 (Bankr. D. Del. 2013) ..............................................*passim*

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015)...................................................18

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................27

*In re SunEdison, Inc.*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020)............................................16, 20

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019)..................................................................5

*United States v. Henshaw*,
   388 F.3d 738 (10th Cir. 2004) .............................................................29

*United States v. Quintieri*,
   306 F.3d 1217 (2d Cir 2002)...............................................................23

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016)................................................................12

**STATUTES**

11 U.S.C. § 550(a) ....................................................................16, 24, 25

11 U.S.C. § 550(d) .................................................................................1

15 U.S.C. §§ 78aaa-*lll* ...........................................................................1

**RULES**

Fed. R. Civ. P. 8 ...................................................................................24

Fed. R. Civ. P. 8(a)(2)......................................................................15, 24

Fed. R. Civ. P. 10(c) .........................................................................23, 24

Fed. R. Civ. P. 12(b)(2)...........................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................1, 15

29654060

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to the motion to dismiss (the

"Motion") the Trustee's Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules

of Civil Procedure ("FRCP" or the "Rules") filed by Defendant Credit Agricole (Suisse) S.A. ("CA

Suisse").

## PRELIMINARY STATEMENT

None of the arguments advanced by CA Suisse in the Motion are novel.  The Court has

rejected CA Suisse's same tired arguments in nearly twenty (20) opinions in this SIPA liquidation

proceeding.  Contrary to CA Suisse's assertion, the Trustee alleged that CA Suisse purposefully

availed itself of the benefits and protections of New York laws by investing in New York-based

BLMIS through New York-based Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield

Sigma Limited ("Fairfield Sigma" and collectively with Fairfield Sentry, the "Fairfield Funds").

This is sufficient under relevant case law to establish personal jurisdiction over CA Suisse.  In

addition, CA Suisse purposefully availed itself of the privileges of conducting business in New

York by:  (1) investing in the Fairfield Funds, which were administered by Fairfield Greenwich

Group ("FGG"), the New York *de facto* partnership responsible for administering the Fairfield

Funds from FGG's New York headquarters; (2) utilizing the New York-banking system to

facilitate its investments in the Fairfield Funds; and (3) purposefully investing in BLMIS through

Kingate Global Fund Ltd. ("Kingate").[1]

---

[1] CA Suisse also invested in and redeemed from Kingate.  *See* Compl., ECF No. 1, ¶¶ 2, 36–56, 68–72.  The Trustee stipulated to dismiss Count I and all transfers from Kingate to CA Suisse with prejudice.  *See* Stipulation and Order to Dismiss (I) Credit Agricole S.A. and (II) Certain Transfers Alleged in the Complaint, ECF No. 110.  The Trustee is not seeking to recover those subsequent transfers from Kingate under the single satisfaction rule in 11 U.S.C. §

The Court, in those nearly twenty (20) opinions, disposed of the balance of CA Suisse's arguments, holding:  (1) Section 546(e) does not bar recovery of subsequent transfers from the Fairfield Funds to CA Suisse; (2) the Trustee sufficiently alleged the avoidability of the initial transfers by incorporating by reference the amended complaint in the matter styled *Picard v. Fairfield Inv. Fund Ltd.* (the "Fairfield Amended Complaint");[2] and (3) the Trustee was not required to submit a dollar-for-dollar accounting of the transfers from BLMIS to the Fairfield Funds, and then subsequently to CA Suisse.[3]    CA Suisse is no different, and the Court should deny the Motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Compl. ¶¶ 24, 32.  BLMIS was a securities broker-dealer registered with the United States Securities and Exchange Commission. *Id.* ¶ 24.  BLMIS had three principal business units, one of which was an investment advisory business that purported to employ strategies to maximize returns and minimize risk to its investors. *Id.* ¶¶ 24–26.  In reality, BLMIS operated a Ponzi scheme through its investment advisory business.  *Id.* ¶¶ 16–17, 27, 29–32.  BLMIS never

---

(footnote continued)

550(d).  *See Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2019), ECF No. 417.

[2] Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23.

[3] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 85–96 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*, Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509, at *2–11 (Bankr. S.D.N.Y Aug. 18, 2022) ("*Union Securities*"); *Picard v. Barclays Bank S.A.*, Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924, at *3–7 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. Banque Cantonale Vaudoise* (CGM), slip op., 2022 WL 2761044, at *2–7 (Bankr. S.D.N.Y. July 14, 2022) ("*Banque Cantonale*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Banque Lombard Odier & Cie SA* (CGM), slip op., 2022 WL 2387523, at *2–11 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Bordier & Cie* (CGM), slip op., 2022 WL 2390556, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier & Cie*"); *Picard v. Banque Syz & Co. SA.*, Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019, at *9–10 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*").

purchased any securities on behalf of its investors and sent falsified monthly statements showing fictitious transactions and gains. *Id.*; *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*"). After his arrest for securities fraud, investment advisor fraud, and mail and wire fraud, Madoff admitted through criminal plea allocutions that he (1) operated a Ponzi scheme through the investment advisory business and (2) never made the investments he promised his clients, using their money instead to pay withdrawals and make other avoidable transfers to other BLMIS account holders. Compl. ¶ 16. Failure to pay these withdrawals would have resulted in demand, investigation, the filing of claims, and disclosure of the Ponzi scheme. *Id.* ¶¶ 31–32. By the time of its collapse, BLMIS's liabilities were many billions of dollars above its assets. *Id.* ¶ 33.

## II.    THE FAIRFIELD FUNDS

The Fairfield Funds are Madoff "feeder funds," *i.e.* large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021) ("*Citibank*"). Fairfield Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Compl. ¶ 2. Fairfield Sigma was a Euro-denominated fund that invested 100% of its assets with Fairfield Sentry. *Id.* FGG's principal place of business was New York, where it managed and controlled the Fairfield Funds. *See id.* ¶ 7; *Fairfield Inv.*, 2021 WL 3477479, at *9. FGG conducted key operations of the Fairfield Funds from its New York office. For example, a New York-based partner approved or rejected subscriptions in the Fairfield Funds. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and certain related defendants to avoid and recover approximately $3 billion in fraudulent

3

transfers of stolen customer property.  Compl. ¶ 57.  In 2011, the Trustee settled with Fairfield

Sentry.  *Id.* ¶ 62.  As part of the settlement, the Court entered a $3.054 billion judgment against

Fairfield Sentry.  *Id.*  The Trustee then commenced adversary proceedings against CA Suisse, and

others, to recover the stolen customer property.

## III.    CA SUISSE

CA Suisse invested in and received transfers of stolen BLMIS customer property from the

Fairfield Funds beginning in 2003, if not earlier.  *See id.* ¶ 63; Ex. J.  CA Suisse knew the Fairfield

Funds were Madoff feeder funds.  *See id.* ¶ 6.

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, and as clearly alleged

in the Complaint, the Trustee seeks to recover (1) fifty-five transfers totaling $15,654,127 made

from Fairfield Sentry to CA Suisse between April 2003 and November 2008, and (2) five transfers

totaling $597,664 made from Fairfield Sigma to CA Suisse between May 2004 and November

2008.  *Id.* ¶ 74; Exs. J, L.  Each transfer CA Suisse received from the Fairfield Funds was a transfer

of stolen BLMIS customer property.  *Id.* ¶ 75.

## ARGUMENT

## I.    THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CA SUISSE.

The Trustee need only show a *prima facie* case that personal jurisdiction exists, which

"may be established solely by allegations."  *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d

81, 84, 86 (2d Cir. 2013).  The Trustee, however, is not limited solely to the allegations in the

complaint.  He may also establish a *prima facie* case of jurisdiction through affidavits and

supporting materials that contain averments of facts outside the pleadings.  *See S. New England*

*Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  These pleadings and affidavits are

to be construed in the light most favorable to the Trustee, resolving all doubts in his favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

The Court articulated the appropriate jurisdictional standard in recently issued opinions, describing the minimum contacts related to the claims at issue to establish this Court's personal jurisdiction over a nonresident defendant. *Multi-Strategy*, 641 B.R. at 85–89; *Union Securities*, 2022 WL 3572509, at *2–5; *Lombard*, 2022 WL 2387523, at *2–5; *Banque Syz*, 2022 WL 2135019, at *2–5. For this reason, the jurisdictional standard for purposeful availment and reasonableness will not be repeated at length here.

The Court may exercise personal jurisdiction over CA Suisse because the Trustee alleged that CA Suisse purposefully invested in New York-based BLMIS through the Fairfield Funds. This activity alone satisfies the jurisdictional standard. Indeed, minimum contacts may be found when a "'defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.'" *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

The Trustee's claims to recover the fraudulent transfers received by CA Suisse arise out of and relate to the totality of CA Suisse's forum conduct. The exercise of personal jurisdiction is reasonable. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (noting that courts analyze the totality of contacts rather than individual contacts in isolation).

### A.     CA Suisse Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the United States.

CA Suisse's numerous contacts with the United States establish personal jurisdiction. CA Suisse:  (1) purposefully invested in New York-based BLMIS through the New York-based Fairfield Funds; (2) purposefully invested in the New York-based Fairfield Funds, and thus, in BLMIS; (3) engaged with New York-based FGG regarding its investments in the Fairfield Funds;

(4) utilized the New York-banking system to invest in the Fairfield Funds; and (5) purposefully invested in BLMIS through New York-based Kingate.  Each of the above contacts likely establish jurisdiction, but in their totality, these contacts plainly establish that CA Suisse purposefully directed its activities to the United States.  *See Esso Exploration & Prod. Nigeria Ltd. v. Nigeria Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposefully availed itself of the forum.").

### 1.    CA Suisse Purposefully Invested in BLMIS.

CA Suisse's plan was to invest in BLMIS.  As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also Picard v. Maxam Absolute Return Fund, L.P., et al. (In re BLMIS)*, 460 B.R. 106, 116–20 (Bankr. S.D.N.Y. 2011) (finding jurisdiction where defendant knew and intended that funds invested in BLMIS feeder fund would be sent to BLMIS in New York for investment).

As the Court routinely finds in this SIPA liquidation proceeding, a party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in the Fairfield Funds would be transferred to BLMIS in New York to be invested in the New York securities market."  *Multi-Strategy*, 641 B.R. at 86 (quoting *BLI*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*")); *Union Securities*, 2022 WL 3572509, at *3 (same); *Lombard*, 2022 WL 2387523, at *3 (same); *Banque Syz*, 2022 WL 2135019, at *3 (same). In so finding, the Court quoted *BLI*, "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits

therefrom." *Multi-Strategy*, 641 B.R. at 87; *Union Securities*, 2022 WL 3572509, at *4; *Lombard*, 2022 WL 2387523, at *4; *Banque Syz*, 2022 WL 2135019, at *4.

CA Suisse knowingly and intentionally invested in New York-based BLMIS via its investments in the Fairfield Funds, executing at least fifty-eight (58), and likely more, subscription agreements with the Fairfield Funds. *See, e.g.*, Lunn Decl., Exs. 1–2. CA Suisse acknowledged receipt and review of the private placement memorandum ("PPM") in effect each time it executed a subscription agreement. *Id.* In turn, from CA Suisse's review of the various PPMs, CA Suisse knew that: (1) Fairfield Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was a registered broker-dealer in New York: (4) BLMIS was the executing broker for Fairfield Sentry's investments; (5) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (6) BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and (7) BLMIS was "essential to the continued operation of [Fairfield Sentry]." *See* Lunn Decl., Ex. 3, pp. 9-10, 16, 18. Likewise, CA Suisse knew that Fairfield Sigma invested 100% of its assets with Fairfield Sentry. The above facts, taken collectively, establish that CA Suisse purposefully availed itself of the laws and privileges of conducting business in the United States.

### 2. CA Suisse's Contacts with FGG in New York Establish Personal Jurisdiction.

#### a. *CA Suisse Knowingly Transacted Business with FGG in New York.*

FGG, a New York-partnership formed in 1988, was the *de facto* partnership responsible for creating, managing, and administering the Fairfield Funds from FGG's headquarters in New York. *See* Lunn Decl., Ex. 4 ¶¶ 87–88, 103–104. FGG personnel made all operational decisions regarding the Fairfield Funds, including approving all subscriptions into and redemptions out of

the funds. *Id.* ¶ 88. By investing in the Fairfield Funds, CA Suisse knowingly transacted business

with FGG in New York. Under similar facts, this Court found jurisdiction over investor defendants

based on the U.S. contacts inherent in doing business with the Tremont funds. *Picard v. BNP*

*Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*").

> b.    *CA Suisse Directly and Regularly Corresponded With New York-Based FGG Representatives.*

CA Suisse corresponded with FGG representatives in New York regarding CA Suisse's

investment in the Fairfield Funds. Indeed, FGG dedicated certain representatives in New York

and Miami to assist CA Suisse with its investments in the Fairfield Funds. *See* Lunn Decl., Ex. 4

¶¶ 68–69.

In 2003, Mr. Armand Salem, then president of CA Suisse, informed representatives of FGG

that he was "very familiar with the modified split strike conversion strategy" advertised by BLMIS

and was interested in investing in Fairfield Sentry. *See* Lunn Decl. Ex. 5. After this meeting, Ron

Thomann of FGG agreed to send CA Suisse due-diligence materials for the Fairfield Funds. *Id.*

FGG representatives also met with CA Suisse representatives in 2005, including members from

the "Product Group" and the centralized group responsible for third-party fund selection headed

up by Patrick Muller, a member of CA Suisse's Senior Fund Marketing Team. *See* Lunn Decl.

Ex. 6. CA Suisse spoke and corresponded with FGG representatives in New York via phone and

email regarding CA Suisse's subscriptions in Fairfield Sentry, through which FGG provided

subscription agreements and identified the New York-based bank accounts to which CA Suisse

was to wire subscription monies. *See* Lunn Decl. Ex. 7. CA Suisse continued corresponding with

FGG representatives regarding CA Suisse's investments in mid November 2005. *See* Lunn Decl.

Ex. 8. In August 2007, Carla Castillo, FGG's Vice President of Client Relations, emailed CA

Suisse representatives to provide information on BLMIS, noting that she was available if CA

Suisse had any further questions regarding the Fairfield Funds.  *See* Lunn Decl. Ex 9.  These contacts with New York-based FGG establish personal jurisdiction over CA Suisse.

### 3.    CA Suisse Utilized the New York Banking System to Invest with Fairfield Sentry.

The Court's exercise of personal jurisdiction over CA Suisse is appropriate because CA Suisse purposefully availed itself of the laws and privileges of conducting business in the United States by intentionally utilizing the New York banking system to subscribe to and take redemptions from the Fairfield Funds.  Each of CA Suisse's subscription agreements with the Fairfield Funds included specific wiring instructions designating United States-based bank accounts to which CA Suisse was to wire subscription funds and to which Fairfield Sentry was to wire redemption payments.[4]  Lunn Decl., Exs. 1–2.  CA Suisse also repeatedly sent updated redemption instructions to Fairfield Sentry, identifying the New York bank accounts Fairfield Sentry should use when sending redemption payments to CA Suisse.  Lunn Decl., Exs. 10–13.  In March 2008, CA Suisse identified Citibank in New York as the bank to which Fairfield Sentry should send redemption payments.  *See* Lunn Decl. Ex. 10.  In July 2008, CA Suisse updated those instructions, identifying Calyon in New York as the financial institution to receive redemption payments.  Lunn Decl., Ex. 11.  In August 2008, CA Suisse again updated its redemption instructions, instructing Fairfield Sentry to forward redemption payments to CA Suisse's account at JPMorgan Chase Bank NA, New York.  Lunn Decl., Ex. 12.  CA Suisse confirmed this instruction again in September 2008. Lunn Decl., Ex. 13.  CA Suisse also sent multiple requests for redemption and wire transfer payment, identifying the same New York banks referenced above.  *See* Lunn Decl. Exs. 14–18.

---

[4] CA Suisse's "Short Form" subscription agreements do not expressly provide wiring instructions, but instead acknowledge that CA Suisse previously delivered a fully executed Subscription Agreement, that the Short Form Subscription Agreement is in lieu of completing a new Subscription Agreement, and reaffirms every representation and covenant made in the original Subscription Agreement.  *See, e.g.*, Lunn Decl., Exs. 19–20.

When CA Suisse wished to invest, it wired subscription monies to Fairfield Sentry's HSBC bank account in New York. When CA Suisse wished to redeem its investment, Fairfield Sentry wired funds to one of CA Suisse's New York-based banks identified above. The intentional use of New York bank accounts to conduct significant and repeated transfers of funds is sufficient, in and of itself, to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding the defendant subject to jurisdiction under the New York long-arm statute based solely on its use of a New York account to receive payment at issue); *see also HSH Nordbank New York Branch v. St.*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (finding jurisdiction under the New York long-arm statute based solely on the defendants' use of a New York account to receive the fraudulent conveyances at issue); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–84 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on the defendant's use of New York accounts to facilitate the alleged fraud).

CA Suisse's argument that the bank accounts it used are correspondent accounts is unavailing. In *Licci v. Lebanese Can. Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful." 20 N.Y.3d 327, 338 (N.Y. 2012); *see also Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–71 (S.D.N.Y. 2016) (finding jurisdiction over the defendants based on designation and use of New York correspondent accounts to receive transfers). It does not matter that Fairfield Sentry identified its HSBC USA bank account to receive subscriptions because CA Suisse purposefully agreed to use the HSBC account to submit subscription monies. *Esso Expl.*, 397 F. Supp. 3d at

346 ("[T]he point is not whether [the defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

Many of the above-described contacts alone support jurisdiction, but together, they unequivocally establish that CA Suisse purposefully directed its activities to the United States. *See id.* at 344 ("When all [the defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.") (internal citations omitted). CA Suisse knew that by investing with the Fairfield Funds, it was investing with BLMIS. By investing with the Fairfield Funds, and by utilizing U.S. bank accounts to facilitate those investments, CA Suisse purposefully targeted the New York and U.S. securities markets thereby subjecting CA Suisse to the jurisdiction of the Court.

### 4. CA Suisse Also Purposefully Invested in Kingate.

Adding to its New York contacts, CA Suisse also knowingly and purposely invested in BLMIS through Kingate. Compl. ¶¶ 2, 36–56, 68–72. CA Suisse signed similar subscription agreements for its subscriptions into Kingate between 1999 and 2007. *See* Lunn Decl., Ex. 4 ¶¶ 31, 37–38, 63. CA Suisse's intentional investment in New York-based BLMIS through Kingate is an additional contact with New York that counts toward the totality of circumstances supporting personal jurisdiction. *See Multi-Strategy*, 641 B.R. at 87 n.2.

### B. The Trustee's Claims to Recover the Fraudulent Transfers Received by CA Suisse Arise Out Of and Relate to CA Suisse's Forum Conduct.

The exercise of personal jurisdiction over CA Suisse is appropriate because the Trustee's claims "arise out of *or relate to* [CA Suisse's] contacts with the forum." *Multi-Strategy*, 641 B.R. at 87–88 (emphasis in the original); *Union Securities*, 2022 WL 3572509, at *4; *Lombard*, 2022 WL 2387523, at *4; *Banque Syz*, 2022 WL 2135019, at *4. The Trustee is not required to show that his claims arise out of of the defendant's in-state conduct. *Id.* The Court "need only find 'an

affiliation between the forum and the underlying controversy.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *BNP*, 594 B.R. at 190). CA Suisse's conduct involves extensive financial transactions touching the forum and satisfying the "arise out of or relate to" test. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 67–71 (requiring only that a claim is not completely "unmoored" from transaction).

The Trustee asserts subsequent transfer claims against CA Suisse for monies it received from the Fairfield Funds. Compl. ¶¶ 2, 36–45, 63–67. The Trustee's allegations directly relate to CA Suisse's U.S.-based conduct. *Multi-Strategy*, 641 B.R. at 88 (citing *BNP*, 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending redemption requests to New York, and receiving payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress)); *Union Securities*, 2022 WL 3572509, at *4 (same); *Lombard*, 2022 WL 2387523, at *4 (same); *Banque Syz*, 2022 WL 2135019, at *4 (same). The Trustee's claims against CA Suisse are, therefore, related to the alleged in-forum contacts.

### C.    The Court's Exercise of Personal Jurisdiction is Reasonable.

CA Suisse's conduct is sufficient to establish personal jurisdiction and, as a result, the Court must now determine whether the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal citations omitted). To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (internal citations omitted).  Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloe*, 616 F.3d at 165.  CA Suisse fails to show that jurisdiction is unreasonable.

By executing the subscription agreements, CA Suisse expressly agreed to the jurisdictional clause therein.  Indeed, CA Suisse "irrevocably" submitted to the jurisdiction of the New York Courts and to the application of New York law every time it signed a subscription agreement.  *See* Lunn Decl., Exs. 1–2, 19–20.  "[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 ("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

Along with its intentional jurisdictional submission in the Fairfield Funds' subscription agreements, each of CA Suisse's other contacts with the United States—its knowing and intentional investment in New York-based BLMIS via the New York-based Fairfield Funds and Kingate, its intentional utilization of New York-based bank accounts, and its multiple contacts with FGG representatives based in New York—make it reasonably foreseeable that this Court

would have jurisdiction over CA Suisse.  No burden exists for CA Suisse to litigate these claims in New York.  "[I]t would be a 'rare' case where the defendant's contacts with the forum support the exercise of personal jurisdiction but it is unreasonable for the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (internal citation omitted).  This is not that "rare" case.  *Multi-Strategy*, 641 B.R. at 88; *Union Securities*, 2022 WL 3572509, at *5; *Lombard*, 2022 WL 2387523, at *5; *Banque Syz*, 2022 WL 2135019, at *5.  Indeed, CA Suisse, represented by highly competent U.S. counsel, has participated in this litigation for more than ten years.  *See generally*, Docket.

As the Court routinely holds, "the forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court."  *Multi-Strategy*, 641 B.R. at 88–89 (emphasis in the original); *Union Securities*, 2022 WL 3572509, at *5; *Lombard*, 2022 WL 2387523, at *5; *Banque Syz*, 2022 WL 2135019, at *5.  Here, finding jurisdiction is reasonable.

### D.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery.

If the Court finds that the Trustee has not made a *prima facie* showing of jurisdiction as to CA Suisse, the Trustee respectfully requests jurisdictional discovery and leave to amend the Complaint at the conclusion of that discovery.  "Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).  The Honorable Loretta A. Preska recently clarified the standard for jurisdictional discovery, holding that the Trustee is not required to make out a *prima facie* showing of jurisdiction before the court may grant jurisdictional discovery.  *See Fairfield Sentry (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A.*, No. 21-cv-10316 (LAP), slip op., 2022 WL 3910679, at *8 (S.D.N.Y. Aug. 31, 2022) (citing *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) ("It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its

discretion, when it concluded that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.")).

The Trustee has shown how CA Suisse purposefully invested in BLMIS in New York through the Fairfield Funds and Kingate and how CA Suisse received stolen BLMIS customer property through these funds.  The Trustee also provided documents evidencing CA Suisse's direct and regular correspondence with FGG regarding CA Suisse's investments in the Fairfield Funds.  At a minimum, these facts establish a "threshold showing" of jurisdiction justifying discovery.  *Id.* at \*4, \*6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at \*5– 6 (S.D.N.Y. Mar. 9, 2006) (granting jurisdictional discovery because allegations of wire transfers to the United States made a "sufficient start" toward establishing jurisdiction).

## II.    LEGAL STANDARD FOR RULE 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), the Court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the trustee."  *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), slip op., 2020 WL 3635547, at \*5 (Bankr. S.D.N.Y. July 3, 2020) (including omitted portion) (quoting *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003))); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At the pleading stage, the allegations in the complaint need only meet the "plausibility" standard.  In other words, they only need to "nudge[] [the] claims . . . across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal citation omitted).

Here, and as explained more fully below, the Complaint sets forth the elements of the Trustee's claims, plausibly pleading CA Suisse's receipt of subsequent transfers of stolen customer property and the grounds upon which the Trustee seeks to recover such transfers from CA Suisse. Accordingly, dismissal is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254–71, 273 (Bankr. S.D.N.Y. 2010).

## III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM CA SUISSE.

The safe harbor is not available to CA Suisse as a defense to the Trustee's subsequent transfer claims.  Indeed, as this Court has repeatedly held, "[t]he safe harbor is not applicable to subsequent transfers . . . [and] cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Multi-Strategy*, 641 B.R. at 94; *Union Securities*, 2022 WL 3572509, at *9; *Barclays*, 2022 WL 2799924, at *7; *Banque Cantonale*, 2022 WL 2761044, at *5; *Lloyds*, 2022 WL 2390551, at *5; *Lombard*, 2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Banque Syz*, 2022 WL 2135019, at *9; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer").

As discussed below, CA Suisse's Section 546(e) argument (1) is based on tortured misreadings of Section 546(e) and *Cohmad* (defined below), and (2) has already been rejected by the Court in numerous other adversary proceedings.

A.    **Fairfield Sentry Had Actual Knowledge of Madoff's Fraud.**

The Section 546(e) safe harbor applies to the *avoidance* of certain *initial* transfers.  It does not apply to the *recovery* of such transfers, or their value, from a subsequent transferee.  In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (often referred to as *Cohmad*), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS that are otherwise avoidable.  2013 WL 1609154, at *1, *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). In the Complaint, the Trustee sufficiently pleaded Fairfield Sentry's—the relevant transferee for purposes of a Section 546(e) analysis—actual knowledge of the Madoff fraud by incorporating the Fairfield Amended Complaint.  *Multi-Strategy*, 641 B.R. at 94 (citing *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer . . ..  [T]he safe harbor does not refer to the recovery claims under section 550.")); *Union Securities*, 2022 WL 3572509, at *9 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *Banque Cantonale*, 2022 WL 2761044, at *5 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Lombard*, 2022 WL 2387523, at *9 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Banque Syz*, 2022 WL 2135019, at *9 (same).  This Court repeatedly finds that the Fairfield Complaint is "replete with allegations that Fairfield Sentry had actual knowledge that BLMIS was not trading securities."  *Multi-Strategy*, 641 B.R. at 93; *Union Securities*, 2022 WL 3572509, at *9; *Barclays*, 2022 WL 2799924, at *7; *Banque Cantonale*, 2022 WL 2761044, at *5; *Lloyds*, 2022 WL 2390551, at *5; *Lombard*, 2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Banque Syz*, 2022 WL 2135019, at *9.

No sufficient reason exists to deviate from the established law of this SIPA liquidation proceeding.  *See Picard v. BAM L.P.*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("The prior decisions within this SIPA proceeding constitute law of the case."); *Picard v. Legacy Cap. Ltd.*,

29654060

17

603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (holding that the law of the case doctrine applies across adversary proceedings within the same bankruptcy case), *aff'd*, 943 F.3d 125 (2d Cir. 2019). Because the Trustee adequately pleaded Fairfield Sentry's actual knowledge of fraud, Section 546(e) does not bar the avoidance of initial transfers to Fairfield Sentry.

      **B.**    **CA Suisse Is Bound by the Actual Knowledge Exception Established in *Cohmad*.**

CA Suisse is bound by the actual knowledge exception in *Cohmad*. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015); *Picard v. Lowrey*, 596 B.R. at 463 (S.D.N.Y. 2019). CA Suisse cannot relitigate whether actual knowledge bars application of Section 546(e). *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). The District Court then remanded the relevant cases back to the Court, and the Court has since applied the actual knowledge "exception" on several occasions. *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying the actual knowledge exception); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same). CA Suisse participated in those District Court proceedings and is bound by the *Cohmad* decision.[5] The Second Circuit's decision in *Ida Fishman*, upon which CA Suisse relies heavily, also does not warrant reconsideration of *Cohmad*'s actual knowledge exception. *See Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). As the Court recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

---

[5] *See* Motion to Withdraw the Reference, *Picard v. Credit Agricole (Suisse) S.A., et al.*, Adv. Pro. No. 12-1022 (Bankr. S.D.N.Y. Mar. 30, 2012), ECF No. 8 (raising Section 546(e) as a ground for withdrawal).

### C.    CA Suisse Is Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.

The Trustee is not required to allege CA Suisse's actual knowledge to invoke the actual knowledge exception to Section 546(e).  As detailed above, Section 546(e) applies to the avoidance of *initial* transfers, not the recovery from subsequent transferees under Section 550.

The Eighth Circuit made this point clear in a recent decision involving a trustee's attempt to recover a subsequent transfer from a feeder fund in the Petters Ponzi scheme.  *See Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022).  As expressed in *Kelley*, "[t]hough [the trustee] is seeking to claw back the subsequent transfers made by [the feeder fund] to [the subsequent transferee] through this adversary proceeding, the focus of the § 546(e) analysis is the initial transfers made by [the initial transferor/debtor] to [the initial transferee/feeder fund]."  *Id*.  In other words, the transfers to consider here are the transfers from BLMIS to Fairfield Sentry.  "[A] subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor."  *Id.* (emphasis added) (quoting *BNP*, 594 B.R. at 197).

This safe harbor limitation is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *In re Madoff Sec.*, 501 B.R. at 30 (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)).  The Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019) (quoting Edward R. Morrison, *Extraterritorial Avoidance Actions: Lessons from Madoff*, 9 Brook. J. Corp. Fin. & Com. L. 268, 273 (2014)).  CA Suisse simply repackages the argument previously rejected on multiple occasions by the Court that the Section

546(e) safe harbor should independently apply to recovery actions under Section 550. *BNP*, 594 B.R. at 197. The Court should reject CA Suisse's attempt to muddle the law by conflating avoidance and recovery under Section 550.

*Cohmad* does not require the Court to look solely to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable. *Cohmad* held that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. In *Cohmad*, the Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)), at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*), and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the *Cohmad* court hypothesized in *dicta* that a subsequent transferee's subscription agreements with the initial transferee feeder fund might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the initial transfers. *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that the *initial transfer* was made in connection with (*i.e.*, related to) a covered securities contract . . ..") (emphasis added). The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *Ida Fishman*, 773 F.3d at 422–23.

Consistent with *Cohmad*, the Court held in *BNP* that Section 546(e) is applicable only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514

(Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer."). In *BNP*, the Court explicitly rejected the argument being made by CA Suisse here—that the "*only* way the Trustee can escape the application of Section 546(e) is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case. CA Suisse is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 21-CV-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

CA Suisse nevertheless seeks to relitigate this point, arguing that, to the extent the Court relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. *See* CA Suisse's *Memorandum of Law in Support of the Motion* (the "Memorandum") at 18. Such an interpretation would eliminate the point of the actual knowledge exception—to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting CA Suisse's position would mean that the safe harbor would apply even where the initial transferee feeder fund *knew* there were no securities transactions in need of protection. This would allow an initial transferee who had knowledge of the fraud to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

CA Suisse misconstrues *Cohmad*'s holding that a subsequent transferee with actual knowledge cannot benefit from the safe harbor. *See* Memorandum at 18–19, 24. The *Cohmad* case does not mean that to recover from a subsequent transferee, the Trustee must plead CA Suisse's actual knowledge. To the contrary, it ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). Evident from the Court's recent opinions, CA Suisse's reading of *Cohmad* is wrong. *Multi-Strategy*, 641 B.R. at 92–95; *Union Securities*, 2022 WL 3572509, at *8–10; *Barclays*, 2022 WL 2799924, at *6–7; *Banque Cantonale*, 2022 WL 2761044, at *4–6; *Lloyds*, 2022 WL 2390551, at *4–6; *Lombard*, 2022 WL 2387523, at *8–10; *Bordier*, 2022 WL 2390556, at *4–6; *Banque Syz*, 2022 WL 2135019, at *8–10.

For all of these reasons, the Court should reject CA Suisse's argument that Section 546(e) bars recovery of the fraudulent transfers they received from Fairfield Sentry.

## IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS.

As the Court continuously holds, incorporation of the Fairfield Amended Complaint is proper. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, 2022 WL 2135019, at *7. The Trustee sufficiently "pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *Id.* Similar to these cases, the

Complaint against CA Suisse alleged "the Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."  Compl. ¶ 57.

### A.    All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c).

The District Court has already found sufficient the Trustee's incorporation by reference of his initial transferee complaints, including the Fairfield Amended Complaint, in the Trustee's subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright . . .. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re Madoff Sec.*").  Since all adversary proceedings filed under the umbrella of a single bankruptcy case are considered one action for purposes of Rule 10(c), this decision allowing for incorporation by reference is law of the case.  No intervening change of controlling law exists to stray from this precedent.  *See Lowrey*, 596 B.R. at 463 (holding that the law of the case doctrine foreclosed relitigation of an issue where the district court "considered and rejected the very arguments that defendants now make"); *see also United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir 2002) (internal citations omitted) (holding that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless "cogent" and "compelling" reasons, such as an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice militate otherwise).

Because this adversary proceeding and the action filed against Fairfield Sentry fall under the same SIPA liquidation proceeding umbrella, and because CA Suisse cannot identify any

change of controlling law, the Trustee's incorporation of the Fairfield Amended Complaint is proper.

### B. Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c).

The Trustee's incorporation of the Fairfield Amended Complaint meets the purpose of Rule 10(c) to promote short, concise pleadings, free of unwarranted repetition. *In re Morrison*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007). The incorporation is addressed specifically to the initial transferee and is in the section of the Trustee's Complaint labeled "Initial Transfers From BLMIS to Fairfield Sentry" following allegations relating to the Trustee's avoidance claims in the Fairfield Amended Complaint. *See* Compl. ¶¶ 57–62. The Trustee references only the Fairfield Amended Complaint. Reference to the Fairfield Amended Complaint provides notice of the avoidability of initial transfers in a manner that avoids repetition and over-complication.

### C. The Trustee's Allegations Are Sufficient Under Rule 8.

Incorporation of the Fairfield Amended Complaint also satisfies Rule 8(a)(2). By incorporating the Fairfield Amended Complaint, the Trustee made a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from CA Suisse pursuant to Section 550(a). *See Citibank*, 12 F.4th at 196–97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original).

The Trustee makes specific allegations regarding CA Suisse's liability under Section 550(a) throughout, and only incorporates the Fairfield Amended Complaint as part of one paragraph in pleading the avoidability of the initial transfers. CA Suisse's burden is minimal. And the fact that CA Suisse already analyzed both the Fairfield Amended Complaint and the Fairfield Second Amended Complaint (Memorandum at 10–16) belies CA Suisse's arguments that it had

insufficient notice of the Trustee's allegations.  Here, as in other cases, the Trustee adequately

pleaded the avoidability of the initial transfers due to Fairfield Sentry's knowledge of BLMIS's

fraud.  *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022

WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at

*3; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, 2022 WL

2135019, at *7.

## V.      THE TRUSTEE SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A).

The Trustee's Complaint plausibly alleged that CA Suisse received subsequent transfers of

stolen BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege

facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin

(In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (quoting *Silverman v.

K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)).  As

this Court has repeatedly held, and as CA Suisse acknowledges (Memorandum at 11), the Trustee

is not required to perform a tracing analysis, or to present a "'dollar-for-dollar accounting' of 'the

exact funds' at issue."  *Multi-Strategy*, 641 B.R. at 90; *Union Securities*, 2022 WL 3572509, at *6;

*Barclays*, 2022 WL 2799924, at *3; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022

WL 2390551, at *3; *Lombard*, 2022 WL 2387523, at *6; *Bordier*, 2022 WL 2390556, at *3;

*Banque Syz*, 2022 WL 2135019, at *7.  Rather, "the Trustee need only allege sufficient facts to

show the relevant pathways through which the funds were transferred from BLMIS to [the

subsequent transferee]."  *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts,

LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y.

2019).  Specifically, the Trustee must allege the "'necessary vital statistics—the who, when, and

how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."

*Merkin I*, 515 B.R. at 150 (quoting *Silverman*, 379 B.R. at 32).

### A.    The Trustee's Complaint Meets the Pleading Requirements.

The Trustee's Complaint provides the necessary vital statistics, i.e., the "who, when, and how much" for each of the subsequent transfers, alleging that CA Suisse received (1) fifty-five transfers totaling $15,654,127 made from Fairfield Sentry to CA Suisse between April 2003 and November 2008, and (2) five transfers totaling $597,664 made from Fairfield Sigma to CA Suisse between May 2004 and November 2008.  *Id.* ¶ 74; Exs. J, L.  By including this information, the Trustee "provides [CA Suisse] with the 'who, when, and how much' of each transfer."  *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *10; *Banque Cantonale*, 2022 WL 2761044, at *6; *Lloyds*, 2022 WL 2390551, at *6; *Lombard*, 2022 WL 2387523, at *10; *Bordier*, 2022 WL 2390556, at *6; *Banque Syz*, 2022 WL 2135019, at *12.  The Trustee's Complaint plausibly alleged that CA Suisse received subsequent transfers of stolen customer property by outlining the relevant pathways through which such stolen customer property was transferred from BLMIS to Fairfield Sentry and subsequently to CA Suisse.  Nothing more is required.  *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting an argument that a "claim ha[d] not been plead with enough specificity as to how and what [the defendant] received" and holding that the complaint "contain[ed] sufficient information regarding which transfers the Trustee [was] seeking to recover").

### B.    CA Suisse Misstates the Trustee's Pleading Burden.

The Trustee is not required to tie each subsequent transfer CA Suisse received to a specific initial transfer from BLMIS.  In *Merkin I*, the Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150; *see also 45 John Lofts, LLC*, 599

B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Similarly, the Trustee is not required to detail what portion of each subsequent transfer comprises stolen customer property. *See Merkin I*, 515 B.R. at 152–53 (refusing to dismiss a complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either"). Any argument to the contrary is wrong and disregards the law of the adversary proceedings within this SIPA liquidation proceeding.

*Picard v. Shapiro* did not change the Trustee's pleading burden. *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *Id.* Unlike the Complaint against CA Suisse, the complaint in Shapiro did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers. *Id.* Consequently, the Court granted the defendants' motion to dismiss the subsequent transfer claim. *Id.*

Here, *Shapiro* actually supports denying the Motion because the Trustee sufficiently pleaded: (1) the investment relationship between CA Suisse and the Fairfield Funds; (2) the vital statistics of each transfer by alleging that CA Suisse received (i) the fifty-five transfers totaling $15,654,127 made from Fairfield Sentry to CA Suisse between April 2003 and November 2008, and (ii) the five transfers totaling $597,664 made from Fairfield Sigma to CA Suisse between May 2004 and November 2008; (3) that Fairfield Sentry invested substantially all of its funds with

BLMIS; and (4) that Fairfield Sigma invested all of its assets with Fairfield Sentry.

### C.    CA Suisse's Tracing Arguments are Inappropriate for a Motion to Dismiss.

CA Suisse's other tracing arguments fare no better.

### 1.    The Trustee is Not Required to Trace Customer Property at the Pleading Stage.

CA Suisse's tracing argument fails because the Trustee is not required to trace the flow of stolen customer property at the pleading stage. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from a debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *2)). CA Suisse's "impossibility" argument is also fatally flawed. As the Court held in *Multi-Strategy*, "Defendant's calculation ignores any money received by Fairfield Sentry prior to December 11, 2002. The Court is not convinced that this is the only method of calculating customer property." *Multi-Strategy*, 641 B.R. at 95. Moreover, the Court has repeatedly held that the calculation of customer property and what funds Fairfield Sentry used to make redemption payments "are issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *11; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *7; *Lloyds*, 2022 WL 2390551, at *7; *Lombard*, 2022 WL 2387523, at *11; *Bordier*, 2022 WL 2390556, at *7; *Banque Syz*, 2022 WL 2135019, at *12.

### 2.    Whether Fairfield Sentry Paid Redemptions with Customer Property is of No Moment.

Whether Fairfield Sentry paid other investors with stolen customer property it received from BLMIS prior to making any transfers to CA Suisse is a fact-intensive inquiry, which is inappropriate for resolution at this stage of the pleadings. *See Sass v. Barclays Bank PLC (In re*

*Am. Home Mortg, Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (holding that matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss").

In effect, CA Suisse is applying its own undisclosed tracing methodology. But it is for the Court to decide—after fact and expert discovery—on the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them")).

The argument that every subsequent transfer made prior to the transfers CA Suisse received was sourced solely by stolen customer property is also fact intensive and requires fact and expert discovery. Neither the Complaint nor its exhibits establish this, and at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of stolen customer property. *See Westford Special Situations*, 2020 WL 3077151, at *4 (holding that where a debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

The Trustee is a stranger to the transactions between the Fairfield Funds and CA Suisse, and he is entitled to discovery regarding the above-referenced transactions among them. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's

handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). This is one reason why the Court in *Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[6] And even after fact and expert discovery, there may be fact disputes that require a trial. For example, in *Merkin*, the Court denied the defendants' motion in limine to exclude the Trustee's accounting expert, finding expert testimony at trial "may assist the Court in making its own determination as to the proper methodology." 581 B.R. at 386; *see also Westford Special Solutions*, 2020 WL 3077151, at \*5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury may infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

### 3.    CA Suisse's Timing Arguments Also Fail.

The amount of time that elapsed between Fairfield Sentry's receipt of certain initial transfers from BLMIS and Fairfield Sentry's subsequent transfers to CA Suisse is a variation of CA Suisse's aforementioned tracing argument that Fairfield Sentry transferred BLMIS's stolen customer property to other investors before getting to CA Suisse. For the reasons stated above, tracing arguments are inappropriate on a motion to dismiss. And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan*

---

[6] CA Suisse argues that this case is unlike *Merkin I* in that the Trustee has had access to the Fairfield books and records "for over a decade." *See* Memorandum at 15–16. This is untrue. The Trustee does not have all of Fairfield Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Case Mgmt. Order, *Fairfield Inv.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting a November 22, 2022 deadline for fact discovery and an August 22, 2023 deadline for expert discovery). CA Suisse must have records it can provide on these same transactions.

*v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### 4. CA Suisse's Mere Conduit Argument is Inappropriate at This Stage.

To the extent CA Suisse asserts a mere conduit defense (Memorandum at 24–25, 28) such argument is inappropriate at the motion to dismiss stage because it requires a fact-intensive analysis. "[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection." *Isaiah*, 960 F.3d at 1304; *see also Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008); *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006). The "mere conduit is a defense that requires factual support and at a minimum, is better addressed on summary judgment, not at the pleading stage." *Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *see also, Picard v. Nelson, et al.*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) (determining conduit status post-trial).

*[Signature Page Follows]*

29654060

31

## CONCLUSION

The Trustee respectfully requests that the Court deny the Motion.

Dated:  September 30, 2022
New York, New York

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

By: _/s/ Matthew B. Lunn_
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855
Matthew B. Lunn
Email: mlunn@ycst.com
Michael S. Neiburg (admitted _pro hac vice_)
Email:  mneiburg@ycst.com
Justin P. Duda
Email: jduda@ycst.com
Christopher M. Lambe (admitted _pro hac vice_)
Email: clambe@ycst.com

_Attorneys for Plaintiff Irving H. Picard,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff_

29654060

32