**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-01670 (CGM) |
| CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK d/b/a CRÉDIT AGRICOLE PRIVATE BANKING MIAMI, f/k/a CALYON S.A. d/b/a CRÉDIT AGRICOLE MIAMI PRIVATE BANK | |

29654023

| SUCCESSOR IN INTEREST TO CREDIT LYONNAIS S.A., | |
|---|---|
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CREDIT AGRICOLE MIAMI'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................... 1

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.......................... 3

II.   FAIRFIELD SENTRY................................................................. 3

III.  CA MIAMI ....................................................................... 4

ARGUMENT ............................................................................. 5

I.    THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CA
      MIAMI. ......................................................................... 5

      A.    CA Miami Purposefully Availed Itself of the Laws and Privileges of
            Conducting Business in the United States. ............................ 6

            1.    CA Miami Purposefully Invested in BLMIS. ...................... 6

            2.    The Principal-Agent Relationship Between CA-Miami and BBH
                  Establishes Personal Jurisdiction Over CA Miami. .............. 8

            3.    CA Miami's Contacts with FGG in New York and Its Miami-based
                  Activities Establish Personal Jurisdiction. .................... 9

                  a.    CA Miami Knowingly Transacted Business with FGG in
                        New York. .............................................. 9

                  b.    CA Miami Analyzed Fairfield Sentry and Managed CA
                        Miami's Investments in Fairfield Sentry From Miami,
                        Florida. .............................................. 9

                  c.    CA Miami Directly and Regularly Corresponded With
                        FGG Representatives in New York. ...................... 11

            4.    CA Miami, Through Its Agent BBH, Utilized the New York
                  Banking System to Invest in Fairfield Sentry. ................ 11

      B.    The Trustee's Claims to Recover the Fraudulent Transfers Received by
            CA Miami Arise Out Of and Relate to CA Miami's Forum Conduct. ........ 13

      C.    The Court's Exercise of Personal Jurisdiction is Reasonable............. 14

      D.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery. ..... 16

II.    LEGAL STANDARD FOR RULE 12(b)(6) ................................................... 17

III.   SECTION 546(E) DOES NOT BAR RECOVERY FROM CA MIAMI........................ 18

       A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud. ............................... 19

       B.    CA Miami Is Bound by the Actual Knowledge Exception Established in
             *Cohmad.* .................................................................................................. 20

       C.    CA Miami Is Also Precluded From Arguing That Section 546(e) Applies
             Independently to Recovery Actions. ....................................................................... 21

IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE
       INITIAL TRANSFERS. ................................................................................. 24

       A.    All Adversary Proceedings Are Part of the Main Case for Purposes of
             Rule 10(c). ................................................................................................. 25

       B.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c). .......... 26

       C.    The Trustee's Allegations Are Sufficient Under Rule 8. ..................................... 26

V.     THE TRUSTEE SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS
       CUSTOMER PROPERTY UNDER SECTION 550(A). ................................................. 27

       A.    The Trustee's Complaint Meets the Pleading Requirements. ............................... 28

       B.    CA Miami Misstates the Trustee's Pleading Burden. ........................................... 28

       C.    CA Miami's Other Tracing Arguments are Inappropriate for a Motion to
             Dismiss. ................................................................................................. 30

             1.    The Trustee Is Not Required to Trace Customer Property at the
                   Pleading Stage. ......................................................................................... 30

             2.    Whether Fairfield Sentry Paid Redemptions with Customer
                   Property is of No Moment. ....................................................................... 30

             3.    CA Miami's Timing Arguments Also Fail. .............................................. 32

             4.    CA Miami's Mere Conduit Argument is Inappropriate at This
                   Stage. ................................................................................................. 33

CONCLUSION ................................................................................................. 33

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019)............................................................28, 29

*Ashcroft v. Iqbal*,
   556 U.S. 552 (2009)........................................................................................18

*In re AVI, Inc.*,
   389 B.R. 721 (9th Cir. BAP 2008)..................................................................21

*Ayyash v. Bank Al-Madina*,
   No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006)....................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................18

*BLI, Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012)............................................................7, 19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)....................................................................................14, 15

*Cargo Partner AG v. Albatrans, Inc.*,
   352 F.3d 41 (2d Cir. 2003)..............................................................................17

*Charles Schwab Corp. v. Bank of America Corp.*,
   883 F.3d 68 (2d Cir. 2018)............................................................................8, 9

*Chase Manhattan Bank v. Banque Generale Du Com.*,
   No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)..............15

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)........................................................................5, 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................11

*In re Ditech Holding Corp.*,
   No. 19-10412 (JLG), slip op., 2020 WL 3635547 (Bankr. S.D.N.Y. July 3,
   2020) ............................................................................................................17

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)..............................................................................5

*Eldesouky v. Aziz,*
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)................................12

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.),*
    361 B.R. 36 (Bankr. S.D.N.Y. 2006) .....................................................................................33

*Esso Exploration & Prod. Nigeria Ltd. v. Nigeria Nat'l Petroleum Corp.,*
    397 F. Supp. 3d 323 (S.D.N.Y. 2019)......................................................................................6

*Fairfield Sentry (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A.,*
    No. 21-cv-10316 (LAP), slip op., 2022 WL 3910679 (S.D.N.Y. Aug. 31,
    2022) ................................................................................................................................16, 17

*In re Fairfield Sentry Ltd.,*
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) .................................................................1, 5, 13, 32

*Ge Dandong v. Pinnacle Performance Ltd.,*
    966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................................12

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global
    Crossing Ltd.),*
    385 B.R. 52 (Bankr. S.D.N.Y. 2008) .....................................................................................33

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)...............................................................................................................13

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP),*
    2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)...................................................................33

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
    425 F.3d 158 (2d Cir. 2005)....................................................................................................6

*HSH Nordbank New York Branch v. St.,*
    No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................................12

*In re J.P. Jeanneret Assoc., Inc.,*
    769 F. Supp 2d 340 (S.D.N.Y. 2011)....................................................................................17

*Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.,*
    31 F.4th 1058 (8th Cir. 2022) ...............................................................................................21

*Kelley v. Westford Special Situations Master Fund, L.P.,*
    No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020)................................30, 31, 32

*Kiobel v. Royal Dutch Petroleum Co.,*
    No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) .....................................................................................................................................16

*Leon v. Shmukler*,
    992 F. Supp. 2d 179 (E.D.N.Y. 2014) ..................................................................17

*In re Madoff Sec.*,
    501 B.R. ..........................................................................................................21, 25

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...................................................................................14

*In re Morrison*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) .................................................................26

*Picard v. BAM L.P.*,
    624 B.R. 55 (Bankr. S.D.N.Y. 2020) ...................................................................20

*Picard v. Banque Cantonale Vaudoise*
    Adv. Pro. No. 12-01694 (CGM), slip op., 2022 WL 2761044 (Bankr.
    S.D.N.Y. July 14, 2022) ................................................................................ *passim*

*Picard v. Banque Lombard Odier & Cie SA* (CGM),
    Adv. Pro. No. 12-01693 (CGM), slip op., 2022 WL 2387523 (Bankr.
    S.D.N.Y. June 30, 2022) ................................................................................ *passim*

*Picard v. Banque Syz & Co. SA.*,
    Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019 (Bankr.
    S.D.N.Y. June 14, 2022) ................................................................................ *passim*

*Picard v. Barclays Bank S.A.*,
    Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924 (Bankr. S.D.N.Y.
    July 15, 2022)..........................................................................................................2

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................................... *passim*

*Picard v. Bordier & Cie* (CGM),
    Adv. Pro. No. 12-01695 (CGM), slip op., 2022 WL 2390556 (Bankr.
    S.D.N.Y. June 30, 2022) ................................................................................ *passim*

*Picard v. Brown Brothers Harriman & Co.*,
    Adv. Pro. No. 12-01217 (BRL) (Bankr. S.D.N.Y. 2012) .......................................1

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ........................................................................... *passim*

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
    25, 2016) ...............................................................................................................21

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) .......................................................................... *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 21-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................................23

*Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014) .................................................................................20, 21, 22

*Picard v. Legacy Cap. Ltd.*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019) ...................................................................................20

*Picard v. Lloyds TSB Bank PLC*,
    Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551 (Bankr.
    S.D.N.Y. June 30, 2022) ......................................................................................... *passim*

*Picard v. Lowrey*,
    596 B.R. (S.D.N.Y. 2019) .................................................................................................20, 25

*Picard v. Magnify, Inc. (In re BLMIS)*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ..................................................................................20

*Picard v. Maxam Absolute Return Fund, L.P., et al. (In re BLMIS)*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ...................................................................................7

*Picard v. Mayer (In re BLMIS)*,
    Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
    27, 2021) ............................................................................................................................28

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .............................................................................18, 32

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) .............................................................................31, 32

*Picard v. Miller (In re BLMIS)*,
    631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) ..........................................................................33

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) .............................................................................. *passim*

*Picard v. Nelson, et al.*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ...................................................................................33

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................29

*Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*,
    Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509 (Bankr. S.D.N.Y
    Aug. 18, 2022) .............................................................................................. *passim*

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) .................................................................................6, 22

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...................................................................................17

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) .....................................................................................5

*Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*,
    501 B.R. 44 (Bankr. D. Del. 2013) ........................................................... *passim*

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...................................................................20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..........................................................27, 28, 29

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ..............................................................18, 23

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) .....................................................................................5

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) ................................................................................31

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir 2002) ..................................................................................25

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ...................................................................................14

STATUTES

11 U.S.C. § 550(a) .................................................................................18, 25, 26, 27

15 U.S.C. §§ 78aaa-*lll* ...............................................................................................1

**RULES**

Fed R. Civ. P. 8 .................................................................................................................26

Fed. R. Civ. P. 8(a)(2) .................................................................................................18, 26

Fed. R. Civ. P. 10(c) ....................................................................................................25, 26

Fed. R. Civ. P. 12(b)(2) ........................................................................................................1

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 17

N.Y. C.P.L.R. § 302(a)(1) ....................................................................................................8

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to the motion to dismiss (the

"Motion") the Trustee's Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules

of Civil Procedure ("FRCP" or the "Rules") filed by Defendant Credit Agricole Corporate and

Investment Bank d/b/a Credit Agricole Private Banking Miami, f/k/a Calyon S.A. d/b/a Credit

Agricole Miami Private Bank successor in interest to Credit Lyonnais S.A. ("CA Miami").

## PRELIMINARY STATEMENT

None of the arguments advanced by CA Miami in the Motion are novel.  The Court has

rejected CA Miami's same tired arguments in nearly twenty (20) opinions in this SIPA liquidation

proceeding.  Despite prior decisions directly on point, CA Miami attempts to muddy the waters by

highlighting that it invested in Fairfield Sentry Limited ("Fairfield Sentry"), and thus BLMIS,

through Brown Brothers Harriman & Co. ("BBH"),[1] rather than investing directly through

Fairfield Sentry.  This is a distinction without a difference.  Directing an agent to invest in Fairfield

Sentry, and thus, BLMIS, results in the same personal jurisdiction over CA Miami.

CA Miami purposely invested in New York-based BLMIS by directing its New York-

based agent, BBH, to invest in Fairfield Sentry on behalf of CA Miami, knowing those funds were

to be invested in BLMIS.  Indeed, BBH sent a letter to Fairfield Sentry, noting that the

representations in the subscription agreement were those of CA Miami, not BBH, and that the

information provided to BBH for inclusion in the subscription agreement came directly from CA

---

[1] "BBH is a privately held financial institution organized under the laws of the state of New York and has its principal place of business at 140 Broadway, 16th Floor, New York, NY 10005."  *See* Compl., *Picard v. Brown Brothers Harriman & Co.*, Adv. Pro. No. 12-01217 (BRL) (Bankr. S.D.N.Y. 2012), ECF No. 1 ¶¶ 6, 21.

Miami. The use of an agent does not change the fact that CA Miami intended to invest in BLMIS, which establishes a basis for personal jurisdiction over CA Miami.

CA Miami also purposely availed itself of the privileges of conducting business in New York, and the United States generally, by: (1) hiring and utilizing a New York-based agent (BBH) in connection with its BLMIS investments; (2) investing in Fairfield Sentry, which was administered by Fairfield Greenwich Group ("FGG"), the New York *de facto* partnership responsible for administering Fairfield Sentry from its New York headquarters, through this agent, to invest in BLMIS; (3) analyzing and administering its investments in Fairfield Sentry using its Miami-based representatives, including engaging with FGG in New York regarding CA Miami's investments in Fairfield Sentry; and (4) utilizing the New York-banking system to facilitate its investments in Fairfield Sentry and BLMIS. Under recent precedent, each of these facts establish personal jurisdiction over CA Miami.

The Court, in those nearly twenty (20) opinions, disposed of CA Miami's remaining arguments, holding: (1) Section 546(e) does not bar recovery of subsequent transfers from Fairfield Sentry to CA Miami; (2) the Trustee sufficiently alleged the avoidability of the initial transfers by incorporating by reference the Fairfield Amended Complaint; and (3) the Trustee was not required to submit a dollar-for-dollar accounting of the transfers from BLMIS to Fairfield Sentry, and then ultimately to CA Miami.[2] Accordingly, the Court should deny the Motion.

---

[2] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 85–96 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*, Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509, at *2–11 (Bankr. S.D.N.Y Aug. 18, 2022) ("*Union Securities*"); *Picard v. Barclays Bank S.A.*, Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924, at *3–7 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. Banque Cantonale Vaudoise* (CGM), Adv. Pro. No. 12-01694, slip op., 2022 WL 2761044, at *2–7 (Bankr. S.D.N.Y. July 14, 2022) ("*Banque Cantonale*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Banque Lombard Odier & Cie SA* (CGM), Adv. Pro. No. 12-01693, slip op., 2022 WL 2387523, at *2–11 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Bordier & Cie* (CGM), Adv. Pro. No. 12-01695 (CGM), slip op., 2022 WL 2390556, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier & Cie*"); *Picard v. Banque Syz & Co. SA.*, Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019, at *9–10 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*").

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See*
Compl. ¶¶ 23, 31.  BLMIS was a securities broker-dealer registered with the United States
Securities and Exchange Commission. *Id.* ¶ 23.  BLMIS had three principal business units, one of
which was an investment advisory business that purported to employ strategies to maximize
returns and minimize risk to its investors. *Id.* ¶¶ 11, 23–26.  In reality, BLMIS operated a Ponzi
scheme through its investment advisory business. *Id.* ¶¶ 16–17, 26–33.  BLMIS never purchased
any securities on behalf of its investors and sent falsified monthly statements showing fictitious
transactions and gains. *Id.*¶ 26; *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,
197 (Bankr. S.D.N.Y. 2018) ("*BNP*").  After his arrest for securities fraud, investment advisor
fraud, and mail and wire fraud, Madoff admitted through criminal plea allocutions that he (1)
operated a Ponzi scheme through the investment advisory business and (2) never made the
investments he promised his clients, using their money instead to pay withdrawals and make other
avoidable transfers to other BLMIS account holders.  Compl. ¶ 16.  Failure to pay these
withdrawals would have resulted in demand, investigation, the filing of claims, and ultimate
disclosure of the Ponzi scheme. *Id.* ¶¶ 29–31.  By the time of its collapse, BLMIS's liabilities
were many billions of dollars greater than its assets. *Id.* ¶ 33.

### II.    FAIRFIELD SENTRY

Fairfield Sentry is a Madoff "feeder fund," *i.e.*, a large investment fund created for the
express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re
Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021) ("*Citibank*").  Fairfield Sentry
was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Compl. ¶ 2.
FGG, a *de facto* partnership with its principal place of business in New York, managed and

3

controlled Fairfield Sentry. *Fairfield Inv.*, 2021 WL 3477479, at *9. FGG conducted key operations of Fairfield Sentry from its New York office. For example, a New York-based partner approved or rejected subscriptions in Fairfield Sentry. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and certain related defendants to avoid and recover approximately $3 billion in fraudulent transfers of stolen customer property. Compl. ¶ 35. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 40. As part of the settlement, the Court entered a $3.054 billion judgment against Fairfield Sentry. *Id.* The Trustee then commenced adversary proceedings against CA Miami, and others, to recover the stolen customer property.

## III.    CA MIAMI

Through BBH, CA Miami invested in and received transfers of stolen BLMIS customer property from Fairfield Sentry beginning in 2005, if not earlier. *See id.* ¶¶ 41–42; Exs. C, D. CA Miami retained BBH, and explicitly directed BBH to invest in Fairfield Sentry on behalf of CA Miami. *See id.* ¶ 7.

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, and as clearly alleged in the Complaint, the Trustee seeks to recover twenty-four (24) transfers totaling $6,741,013 made from Fairfield Sentry to CA Miami through its agent and nominee BBH, on specific dates between October 2005 and March 2008. *Id.* ¶¶ 41–42; Exs. C, D. Each transfer CA Miami received from Fairfield Sentry was a transfer of stolen BLMIS customer property.

## ARGUMENT

### I.    THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CA MIAMI.

The Trustee need only show a *prima facie* case that personal jurisdiction exists, which "may be established solely by allegations." *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84, 86 (2d Cir. 2013). The Trustee, however, is not limited solely to the allegations in the Complaint. He may also establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are to be construed in the light most favorable to the Trustee, resolving all doubts in his favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

The Court articulated the appropriate jurisdictional standard in recently issued opinions, describing the minimum contacts related to the claims at issue to establish this Court's personal jurisdiction over a nonresident defendant. *Multi-Strategy*, 641 B.R. at 85–89; *Union Securities*, 2022 WL 3572509, at *2–5; *Lombard*, 2022 WL 2387523, at *2–5; *Banque Syz*, 2022 WL 2135019, at *2–5. For this reason, the jurisdictional standard for purposeful availment and reasonableness will not be repeated at length here.

The Court may exercise personal jurisdiction over CA Miami because the Trustee alleged that CA Miami purposefully invested in New York-based BLMIS through Fairfield Sentry. This activity alone satisfies the jurisdictional standard. Indeed, minimum contacts may be found when a "'defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.'" *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

The Trustee's claims to recover the fraudulent transfers received by CA Miami arise out of and relate to the totality of CA Miami's forum conduct. The exercise of personal jurisdiction is

reasonable. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (noting that courts analyze the totality of contacts rather than individual contacts in isolation).

### A.    CA Miami Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the United States.

CA Miami's numerous contacts with the United States establish personal jurisdiction. CA Miami: (1) purposefully invested in New York-based BLMIS through New York-based Fairfield Sentry; (2) retained New York-based BBH to act as its agent and utilized BBH in connection with its investments in BLMIS through Fairfield Sentry; (3) purposely invested in New York-based Fairfield Sentry to invest in BLMIS; (4) analyzed and administered its BLMIS investments utilizing its Miami-based representatives, including engaging with New York-based FGG regarding CA Miami's investments in Fairfield Sentry; and (5) utilized the New York-banking system to invest in Fairfield Sentry and BLMIS.

Each of the above contacts support jurisdiction over CA Miami, but in their totality, these contacts plainly establish that CA Miami purposefully directed its activities to the United States. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigeria Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposefully availed itself of the forum.").

### 1.    CA Miami Purposefully Invested in BLMIS.

CA Miami's plan was to invest in BLMIS. CA Miami did so by retaining New York-based BBH, developing and instituting a principal/agent relationship, and instructing BBH to invest in New York-based Fairfield Sentry, a known BLMIS feeder fund, on CA Miami's behalf.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also*

29654023

6

*see also Picard v. Maxam Absolute Return Fund, L.P., et al. (In re BLMIS)*, 460 B.R. 106, 116–20 (Bankr. S.D.N.Y. 2011) (finding jurisdiction where defendant knew and intended that funds invested in BLMIS feeder fund would be sent to BLMIS in New York for investment). After conducting due diligence into Fairfield Sentry, CA Miami instructed its New York-based agent BBH to invest in Fairfield Sentry and execute Fairfield Sentry subscription agreements on CA Miami's behalf—subscription agreements that affirmed CA Miami's receipt of Fairfield Sentry's private placement memorandum, which, among other things, required Fairfield Sentry to invest at least 95% of its assets with BLMIS. *See* Lunn Decl. Exs. 1–2. Trying to hide behind BBH does not insulate CA Miami from the jurisdiction of this Court.

As the Court routinely finds in this SIPA liquidation proceeding, a party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Multi-Strategy*, 641 B.R. at 86 (quoting *BLI*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*")); *Union Securities*, 2022 WL 3572509, at *3 (same); *Lombard*, 2022 WL 2387523, at *3 (same); *Banque Syz*, 2022 WL 2135019, at *3 (same). In so finding, the Court quoted *BLI*, "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Multi-Strategy*, 641 B.R. at 87; *Union Securities*, 2022 WL 3572509, at *4; *Lombard*, 2022 WL 2387523, at *4; *Banque Syz*, 2022 WL 2135019, at *4.

CA Miami, through its New York-based agent BBH, knowingly and intentionally invested in New York-based BLMIS by investing in Fairfield Sentry. BBH executed at least two, and likely more, subscription agreements with Fairfield Sentry as custodian for and on behalf of CA Miami.

*See* Lunn Decl., Exs. 1, 11.   The representations and warranties made in the subscription agreements are attributable to CA Miami, not BBH.   In each subscription agreement BBH executed on behalf of CA Miami, ***CA Miami*** acknowledged that it received and reviewed the private placement memorandum ("PPM") in effect at the time of the subscription.  *Id.*  As a result of its review of the various PPMs, CA Miami knew that:  (1) Fairfield Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was a registered broker-dealer in New York; (4) BLMIS was the executing broker for Fairfield Sentry's investments; (5) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (6) BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and (7) BLMIS was "essential to the continued operation of [Fairfield Sentry]."  *See* Lunn Decl., Ex. 2, pp. 9-10, 16, 18.  The above facts, taken collectively, establish that CA Miami purposefully availed itself of the laws and privileges of conducting business in the United States.

## 2.    The Principal-Agent Relationship Between CA-Miami and BBH Establishes Personal Jurisdiction Over CA Miami.

This Court has personal jurisdiction over CA Miami due to the principal-agent relationship that existed between CA Miami, the principal, and BBH, its agent.   As the Second Circuit explained, "[i]t is well established that a defendant can purposefully avail itself of a forum by directing its agents or distributors to take action there."  *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 84 (2d Cir. 2018); *see also* N.Y. C.P.L.R. § 302(a)(1) (New York courts "may exercise personal jurisdiction over any non-domiciliary . . . who in person *or through an agent . . . transacts business within the state*" where the cause of action arises from those transactions.") (emphasis added).  Here, as reflected in a November 2007 letter (the "BBH Letter"), BBH informs Fairfield Sentry that BBH is acting as CA Miami's agent with respect to CA Miami's investments

in Fairfield Sentry.  *See* Lunn Decl. Ex. 3.  At all relevant times, CA Miami knew that BBH, FGG, and Fairfield Sentry were all based in and acting in New York.

Although federal courts in New York have declined to exercise personal jurisdiction based on an agency relationship when a plaintiff provided only "sparse allegations of agency" that were "too conclusory to make a *prima facie* showing of personal jurisdiction," that is not the case here. *Id.* at 86.  The BBH Letter sent to Fairfield Sentry explicitly identifies and defines the agent/principal relationship between BBH and CA Miami with respect to CA Miami's investment. Thus, the principal/agent relationship between BBH and CA Miami pursuant to which CA Miami directed BBH to invest CA Miami's money in Fairfield Sentry establishes personal jurisdiction over CA Miami.

### 3.    CA Miami's Contacts with FGG in New York and Its Miami-based Activities Establish Personal Jurisdiction.

#### a.    *CA Miami Knowingly Transacted Business with FGG in New York.*

FGG, a New York-partnership formed in 1988, was the *de facto* partnership responsible for creating, managing, and administering Fairfield Sentry from FGG's headquarters in New York. *See* Lunn Decl. Ex. 4 ¶¶ 87–88, 103–104.  FGG personnel made all operational decisions regarding Fairfield Sentry, including approving all subscriptions into and redemptions out of the fund. *Id.* ¶ 88.  By investing in Fairfield Sentry, CA Miami knowingly transacted business with FGG in New York.  Under similar facts, this Court found jurisdiction over investor defendants based on the U.S. contacts inherent in doing business with the Tremont funds.  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*").

#### b.    *CA Miami Analyzed Fairfield Sentry and Managed CA Miami's Investments in Fairfield Sentry From Miami, Florida.*

CA Miami conducted due diligence and managed its investments in Fairfield Sentry from its Miami, Florida business location.  This involved, among other things, CA Miami directing its

agent (BBH) to invest in Fairfield Sentry and issue the required Fairfield Sentry subscription agreements on CA Miami's behalf. In the BBH Letter, beyond identifying the principal/agent relationship, BBH informed Fairfield Sentry that BBH submitted the subscription agreement to Fairfield Sentry "solely as the directed agent of our client [(CA Miami)]" and that "[a]ny and all representations and warranties and indemnities required by [BBH] . . . in the [subscription agreement] are made by [BBH] on behalf of [CA Miami] *in [BBH's] capacity as [CA Miami's] directed agent and custodian*, and *based solely upon information that has been provided to [BBH] by [CA Miami]*." *Id.* (emphasis added). FGG's points of contacts with CA Miami were Marco Aurelio de Sa Guerra (Vice President – Investment Center); Eduardo Beregovich (Client Advisor); and Fabiola Penaloza (Assistant VP – Investment Center). Each of these three individuals were based in Miami, Florida. *See* Lunn Decl. Ex. 5, p. 18. Before investing in Fairfield Sentry, Marco Aurelio—the Miami-based Vice President of CA Miami's Investment Center—conducted due diligence into Fairfield Sentry. *See* Lunn Decl. Ex. 6. Moreover, he spoke with FGG representatives in New York and requested confidential information to complete his due diligence. *Id.* Upon learning of Madoff's arrest and indictment, Emily Rodriguez, a CA Miami representative based in Miami, Florida, emailed FGG directly, asking about the estimated exposure to investments in Fairfield Sentry. *See* Lunn Decl. Ex. 7.

Despite the Trustee's allegation, the Motion fails to acknowledge CA Miami's Florida branch, located at 600 Brickell Avenue, 37th Floor, Miami, FL 33131. *See generally*, Motion. Also absent from the Motion is any assertion that CA Miami's principal place of business, as contemplated by the jurisdictional analysis laid out in *Daimler*[3] is somewhere other than the United States. If CA Miami's headquarters were located abroad, CA Miami surely would have said so.

---

[3] *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014).

> c.    *CA Miami Directly and Regularly Corresponded With FGG Representatives in New York.*

Beyond the engagement of its agent, BBH, CA Miami corresponded directly with FGG representatives in New York regarding CA Miami's investment in Fairfield Sentry. Indeed, Marco Aurelio had direct contact with FGG's vice president, Carla Castillo, requesting confidential financial information CA Miami needed to "finalize the analysis of Fairfield Sentry." *See* Lunn Decl. Ex. 6. Carla Castillo provided the requested information, inviting Marco Aurelio to "contact us at any time" if CA Miami had any further questions about Fairfield Sentry. *See* Lunn Decl. Ex. 8. Fabiola Penazola—Miami-based Assistant Vice President of CA Miami's Investment Center— emailed Carla Castillo asking FGG to allow CA Miami to invest $150,000 in Fairfield Sentry. *See* Lunn Decl. Ex. 9. Carla Castillo also communicated via phone and email with Eduardo Beregovich, a Miami-based client advisor, regarding a redemption from Fairfield Sentry. *See* Lunn Decl. Ex. 10. These contacts with New York-based FGG establish personal jurisdiction over CA Miami.

### 4.    CA Miami, Through Its Agent BBH, Utilized the New York Banking System to Invest in Fairfield Sentry.

CA Miami purposefully availed itself of the laws and privileges of conducting business in the United States when it intentionally used the New York banking systems to subscribe to and take redemptions from BBH, who sent and received CA Miami's subscriptions and redemptions through New York banks. Each of CA Miami's subscription agreements with Fairfield Sentry included specific wiring instructions designating New York-based bank accounts to which CA Miami was to wire subscription funds and to which Fairfield Sentry was to wire redemption payments.[4]

---

[4] CA Miami's "Short Form" subscription agreement does not expressly provide wiring instructions, but instead acknowledges that CA Miami previously delivered a fully executed Subscription Agreement, that the Short Form

When CA Miami wished to invest, BBH, as agent for CA Miami, wired subscription monies to Fairfield Sentry's HSBC bank account in New York. *See* Lunn Decl., Ex. 1. When CA Miami wished to redeem its investment, Fairfield Sentry wired funds to BBH's New York bank. *See* Lunn Decl., Ex. 1, 11. The intentional use of New York bank accounts to conduct significant and repeated transfers of funds is sufficient, in and of itself, to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding the defendant subject to jurisdiction under the New York long-arm statute based solely on its use of a New York account to receive payment at issue); *see also HSH Nordbank New York Branch v. St.*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (finding jurisdiction under the New York long-arm statute based solely on the defendants' use of a New York account to receive the fraudulent conveyances at issue); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–84 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on the defendant's use of New York accounts to facilitate the alleged fraud).

Many of the above-described contacts alone support jurisdiction, but together, they establish unequivocally that CA Miami purposefully directed its activities to the United States. *See id.* at 344 ("When all [the defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.") (internal citations omitted). CA Miami knew that by investing in Fairfield Sentry, it was investing with BLMIS. By investing in Fairfield Sentry, and by utilizing U.S. bank accounts to facilitate those investments, CA Miami

---

Subscription Agreement is in lieu of completing a new Subscription Agreement, and CA Miami reaffirms every representation and covenant made in the original Subscription Agreement. *See e.g.*, Lunn Decl., Ex. 11.

purposefully targeted the New York and U.S. securities markets, thereby subjecting CA Miami to the jurisdiction of the Court. The analysis can stop here.

> ### B. The Trustee's Claims to Recover the Fraudulent Transfers Received by CA Miami Arise Out Of and Relate to CA Miami's Forum Conduct.

The exercise of personal jurisdiction over CA Miami is appropriate because the Trustee's claims "arise out of *or relate to* [CA Miami's] contacts with the forum." *Multi-Strategy*, 641 B.R. at 87–88 (emphasis in the original); *Union Securities*, 2022 WL 3572509, at *4; *Lombard*, 2022 WL 2387523, at *4; *Banque Syz*, 2022 WL 2135019, at *4. The Trustee is not required to show that his claims arise out of of the defendant's in-state conduct. *Id.* The Court "need only find 'an affiliation between the forum and the underlying controversy.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *BNP*, 594 B.R. at 190). CA Miami's conduct involves extensive financial transactions touching the forum and satisfying the "arise out of or relate to" test. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Official Committee off Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 67–71 (S.D.N.Y. 2016) (requiring only that a claim is not completely "unmoored" from transaction).

The Trustee asserts subsequent transfer claims against CA Miami for monies it received from Fairfield Sentry through CA Miami's agent BBH. Compl. ¶¶ 2, 41–42, 44–48. The Trustee's allegations directly relate to CA Miami's U.S.-based conduct. *Multi-Strategy*, 641 B.R. at 88 (citing *BNP*, 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending redemption requests to New York, and receiving payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress)); *Union Securities*, 2022 WL 3572509, at *4 (same); *Lombard*, 2022 WL 2387523, at *4 (same); *Banque Syz*, 2022 WL 2135019, at *4 (same). The Trustee's claims against CA Miami

are, therefore, related to the alleged in-forum contacts.

**C.    The Court's Exercise of Personal Jurisdiction is Reasonable.**

CA Miami's conduct is sufficient to establish personal jurisdiction and, as a result, the

Court must now determine whether the exercise of jurisdiction is reasonable.  *Burger King Corp.*

*v. Rudzewicz,* 471 U.S. 462, 477 (1985).  "The reasonableness inquiry requires the court to

determine whether the assertion of personal jurisdiction over the defendant comports with

'traditional notions of fair play and substantial justice' under the circumstances of the particular

case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal citations

omitted).  To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most effective resolution of the controversy; and (5) the shared
> interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (internal citations

omitted).  Where a plaintiff has made a threshold showing of minimum contacts, a defendant must

present "a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." *Chloe*, 616 F.3d at 165.  CA Miami fails to show that jurisdiction is

unreasonable.

By authorizing and directing BBH to execute the subscription agreements, CA Miami

expressly agreed to the jurisdictional clause therein.  Indeed, CA Miami "irrevocably" submitted

to the jurisdiction of the New York Courts and to the application of New York law every time it

authorized BBH to sign a subscription agreement on CA Miami's behalf.  *See* Lunn Decl., Ex. 1.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is

relevant in determining whether a defendant has purposefully availed itself of a particular forum's

laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997

WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 ("Although

such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it

reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable

foreseeability of possible litigation there.").

Along with its intentional jurisdictional submission in the Fairfield Sentry subscription

agreements, each of CA Miami's other contacts with the United States—its knowing and

intentional investment in New York-based BLMIS through Fairfield Sentry via its New York-

based agent, its intentional utilization of New York-based bank accounts, and its contacts with

FGG representatives based in New York make it reasonably foreseeable that this Court would have

jurisdiction over CA Miami.  No burden exists for CA Miami to litigate these claims in New York.

"[I]t would be a 'rare' case where the defendant's contacts with the forum support the exercise of

personal jurisdiction but it is unreasonable for the defendant to defend the action in that forum."

*BNP*, 594 B.R. at 188 (internal citation omitted).  This is not that "rare" case. *Multi-Strategy*, 641

B.R. at 88; *Union Securities*, 2022 WL 3572509, at *5; *Lombard*, 2022 WL 2387523, at *5;

*Banque Syz*, 2022 WL 2135019, at *5.  Indeed, CA Miami, represented by highly competent U.S.

counsel, have participated in this litigation for more than ten years.

Even if the Court finds the above jurisdictional contacts insufficient to establish the

reasonableness of jurisdiction, CA Miami, through its parent, has submitted numerous U.S. Patriot

Act Certifications, stating that "Credit Agricole Corporate and Investment Bank New York Branch

is a resident of the United States at the following street address:  1301 Avenue of the Americas,

New York, NY 10019." *See* Lunn Decl. Exs. 12–15.  CA Miami also registered with the New York

Department of Financial Services as a foreign bank branch, and by doing so, is subject to

29654023                                          15

examination by the Federal Reserve Bank.  Compl. ¶ 6.  And CA Miami executed an application

by a foreign corporation for authorization to transact business in Florida stating that the official

address for its CEO and General Counsel/Managing Director was 1301 Avenue of the Americas,

New York, NY 10019.  *See* Lunn Decl. Ex. 16.  In fact, CA Miami filed annual reports with the

Florida Division of Corporations from its inception through 2022 noting that its address was 1301

Avenue of the Americas, New York, NY 10019.  In May 2022, CA Miami's CEO submitted an

application to withdraw authority to transact business in Florida, again stating CA Miami's address

is 1301 Avenue of the Americas, New York, NY 10019.  *See* Lunn Decl. Ex. 17.  CA Miami's

contacts with the United States government and regulatory agencies supports the reasonableness of

jurisdiction in this matter.

As the Court routinely holds, "the forum and the Trustee both have a strong interest in

litigating BLMIS adversary proceedings in this Court."  *Multi-Strategy*, 641 B.R. at 88–89

(emphasis in the original); *Union Securities*, 2022 WL 3572509, at *5; *Lombard*, 2022 WL

2387523, at *5; *Banque Syz*, 2022 WL 2135019, at *5.  Here, finding jurisdiction is reasonable.

### D.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery.

If the Court finds that the Trustee has not made a *prima facie* showing of jurisdiction as to

CA Miami, the Trustee respectfully requests jurisdictional discovery and leave to amend the

Complaint at the conclusion of that discovery.  "Such discovery may be authorized where a

plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction."

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009).  The Honorable Loretta A. Preska recently clarified the standard for

jurisdictional discovery, holding that the Trustee is not required to make out a *prima facie* showing

of jurisdiction before the court may grant jurisdictional discovery.  *See Fairfield Sentry (In*

*Liquidation), et al. v. HSBC Private Bank (Suisse) S.A.*, No. 21-cv-10316 (LAP), slip op., 2022

WL 3910679, at *8 (S.D.N.Y. Aug. 31, 2022) (citing *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194

(E.D.N.Y. 2014) ("It is well settled under Second Circuit law that, even where plaintiff has not

made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its

discretion, when it concluded that the plaintiff may be able to establish jurisdiction if given the

opportunity to develop a full factual record.")).

        The Trustee has shown how CA Miami purposefully retained BBH to act as its agent and

invest with BLMIS in New York through New York-based Fairfield Sentry using Fairfield

Sentry's New York bank accounts and using BBH's New York bank accounts to receive stolen

BLMIS customer property.  The Trustee has also provided documents evidencing CA Miami's

direct and regular correspondence with FGG regarding CA Miami's investments in Fairfield

Sentry.  At a minimum, these facts, along with the contacts discussed above, establish a "threshold

showing" of jurisdiction justifying discovery.  *Id*. at *4, *6; *see also Ayyash v. Bank Al-Madina*,

No. 04 Civ. 9201(GEL), 2006 WL 587342, at *5–6 (S.D.N.Y. Mar. 9, 2006) (granting

jurisdictional discovery because allegations of wire transfers to the United States made a

"sufficient start" toward establishing jurisdiction).

## II.    LEGAL STANDARD FOR RULE 12(b)(6)

        When considering a motion to dismiss under Rule 12(b)(6), the Court "must liberally

construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable

inferences in favor of the trustee."  *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), slip op.,

2020 WL 3635547, at *5 (Bankr. S.D.N.Y. July 3, 2020) (including omitted portion) (quoting *In

re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner

AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)); *see also Roth v. Jennings*, 489 F.3d 499,

510 (2d Cir. 2007).

        To survive a motion to dismiss, a complaint must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the pleading

stage, the allegations in the complaint need only meet the "plausibility" standard. In other words,

they only need to "nudge[] [the] claims . . . across the line from conceivable to plausible." *Ashcroft

v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678

(internal citation omitted).

Here, and as explained more fully below, the Complaint sets forth the elements of the

Trustee's claims, plausibly pleading CA Miami's receipt of subsequent transfers of stolen

customer property and the grounds upon which the Trustee seeks to recover such transfers from

CA Miami. Accordingly, dismissal here is inappropriate. *See Picard v. Merkin (In re BLMIS)*,

440 B.R. 243, 254–71, 273 (Bankr. S.D.N.Y. 2010).

## III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM CA MIAMI.

The safe harbor is not available to CA Miami as a defense to the Trustee's subsequent

transfer claims. Indeed, as this Court has repeatedly held, "[t]he safe harbor is not applicable to

subsequent transfers . . . [and] cannot be used as a defense by the subsequent transferee because

the Trustee is not 'avoiding' a subsequent transfer; he recovers the value of the avoided initial

transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not

refer to the recovery claims under section 550." *Multi-Strategy*, 641 B.R. at 94; *Union Securities*,

2022 WL 3572509, at *9; *Barclays*, 2022 WL 2799924, at *7; *Banque Cantonale*, 2022 WL

2761044, at *5; *Lloyds*, 2022 WL 2390551, at *5; *Lombard*, 2022 WL 2387523, at *9; *Bordier*,

2022 WL 2390556, at *5; *Banque Syz*, 2022 WL 2135019, at *9; *see also In re SunEdison, Inc.*,

620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to

the initial transfer").

As discussed below, CA Miami's Section 546(e) argument (1) is based on tortured misreadings of Section 546(e) and *Cohmad* (defined below), and (2) has already been rejected by the Court in numerous other adversary proceedings.

### A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud.

The Section 546(e) safe harbor applies to the *avoidance* of certain *initial* transfers.  It does not apply to the *recovery* of such transfers, or their value, from a subsequent transferee. In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*  (often referred to as *Cohmad*), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS that are otherwise avoidable.  2013 WL 1609154, at *1, *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").  In the Complaint, the Trustee sufficiently pleaded Fairfield Sentry's—the relevant transferee for purposes of a Section 546(e) analysis—actual knowledge of the Madoff fraud by incorporating the Fairfield Amended Complaint.  *Multi-Strategy*, 641 B.R. at 94 (citing *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer . . .. [T]he safe harbor does not refer to the recovery claims under section 550.")); *Union Securities*, 2022 WL 3572509, at *9 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *Banque Cantonale*, 2022 WL 2761044, at *5 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Lombard*, 2022 WL 2387523, at *9 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Banque Syz*, 2022 WL 2135019, at *9 (same).  This Court repeatedly finds that the Fairfield Amended Complaint is "replete with allegations that Fairfield Sentry had actual knowledge that BLMIS was not trading securities." *Multi-Strategy*, 641 B.R. at 93; *Union Securities*, 2022 WL 3572509, at *9; *Barclays*, 2022 WL 2799924, at *7; *Banque Cantonale*, 2022 WL 2761044, at *5; *Lloyds*, 2022 WL

2390551, at *5; *Lombard*, 2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Banque Syz*, 2022 WL 2135019, at *9.

No sufficient reason exists to deviate from the established law of this SIPA liquidation proceeding.  *See Picard v. BAM L.P.*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("The prior decisions within this SIPA proceeding constitute law of the case."); *Picard v. Legacy Cap. Ltd.*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (holding that the law of the case doctrine applies across adversary proceedings within the same bankruptcy case), *aff'd*, 943 F.3d 125 (2d Cir. 2019). Because the Trustee adequately pleaded Fairfield Sentry's actual knowledge of fraud, Section 546(e) does not bar the avoidance of initial transfers to Fairfield Sentry.

      **B.**      **CA Miami Is Bound by the Actual Knowledge Exception Established in *Cohmad*.**

CA Miami is bound by the actual knowledge exception in *Cohmad*.  *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015); *Picard v. Lowrey*, 596 B.R. at 463 (S.D.N.Y. 2019).   CA Miami cannot relitigate whether actual knowledge bars application of Section 546(e).   *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e).  The District Court then remanded the relevant cases back to the Court, and the Court has since applied the actual knowledge "exception" on several occasions.  *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying the actual knowledge exception); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same).  CA Miami participated in those District Court proceedings and is bound by the *Cohmad* decision.[5]  The Second Circuit's decision in *Ida Fishman*, upon which CA Miami relies heavily, also does not warrant reconsideration of *Cohmad*'s actual

---

[5] *See* Motion to Withdraw the Reference and corresponding Memorandum of Law, ECF Nos. 6, 8 (raising Section 546(e) as a ground for withdrawal).

knowledge exception. *See Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). As the Court recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### C.    CA Miami Is Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.

The Trustee is not required to allege CA Miami's actual knowledge to invoke the actual knowledge exception to Section 546(e). As detailed above, Section 546(e) applies to the avoidance of *initial* transfers, not the recovery from subsequent transferees under Section 550.

The Eighth Circuit made this point clear in a recent decision involving a trustee's attempt to recover a subsequent transfer from a feeder fund in the Petters Ponzi scheme. *See Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022). As expressed in *Kelley*, "[t]hough [the trustee] is seeking to claw back the subsequent transfers made by [the feeder fund] to [the subsequent transferee] through this adversary proceeding, the focus of the § 546(e) analysis is the initial transfers made by [the initial transferor/debtor] to [the initial transferee/feeder fund]." *Id.* In other words, the transfers to consider here are the transfers from BLMIS to Fairfield Sentry. "[A] subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." *Id.* (emphasis added) (quoting *BNP*, 594 B.R. at 197).

This safe harbor limitation is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30 (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)). The Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to

its ultimate resting place." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019) (quoting Edward R. Morrison, *Extraterritorial Avoidance Actions: Lessons from Madoff*, 9 Brook. J. Corp. Fin. & Com. L. 268, 273 (2014)). CA Miami simply repackages the argument previously rejected on multiple occasions by the Court that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550. *BNP*, 594 B.R. at 197. The Court should reject CA Miami's attempt to muddle the law by conflating avoidance and recovery under Section 550.

*Cohmad* does not require the Court to look solely to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable. *Cohmad* held that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. In *Cohmad*, the Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)), at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*), and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the *Cohmad* court hypothesized in *dicta* that a subsequent transferee's subscription agreements with the initial transferee feeder fund might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the initial transfers. *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that the *initial transfer* was made in connection with (*i.e.*, related to) a covered securities contract . . . .") (emphasis added). The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *Ida Fishman*, 773 F.3d at 422–23.

Consistent with *Cohmad*, the Court held in *BNP* that Section 546(e) is applicable only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer."). In *BNP*, the Court explicitly rejected the argument being made by CA Miami here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case. CA Miami is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 21-CV-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (2d Cir. May 20, 2022) (finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

CA Miami nevertheless seeks to relitigate this point, arguing that, to the extent the Court relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. *See* CA Miami's Memorandum of Law in Support of the Motion to Dismiss ("<u>Memorandum</u>"), ECF No. 64, at 18. Such an interpretation would eliminate the point of the actual knowledge exception—to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting CA Miami's position would mean that the safe harbor would

23

apply even where the initial transferee feeder fund *knew* there were no securities transactions in need of protection. This would allow an initial transferee who had knowledge of the fraud to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

CA Miami misconstrues *Cohmad*'s holding that a subsequent transferee with actual knowledge cannot benefit from the safe harbor. *See* Memorandum at 18–19, 24. The *Cohmad* case does not mean that to recover from a subsequent transferee, the Trustee must plead CA Miami's actual knowledge. To the contrary, it ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). Evident from the Court's recent opinions, CA Miami's reading of *Cohmad* is wrong. *Multi-Strategy*, 641 B.R. at 92–95; *Union Securities*, 2022 WL 3572509, at *8–10; *Barclays*, 2022 WL 2799924, at *6–7; *Banque Cantonale*, 2022 WL 2761044, at *4–6; *Lloyds*, 2022 WL 2390551, at *4–6; *Lombard*, 2022 WL 2387523, at *8–10; *Bordier*, 2022 WL 2390556, at *4–6; *Banque Syz*, 2022 WL 2135019, at *8–10.

For all of these reasons, the Court should reject CA Miami's argument that Section 546(e) bars recovery of the fraudulent transfers they received from Fairfield Sentry.

## IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS.

As the Court continuously holds, incorporation of the Fairfield Amended Complaint is proper. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque*

*Syz*, 2022 WL 2135019, at *7.  The Trustee sufficiently "pleaded the avoidability of the initial

transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint

filed against Fairfield Sentry in adversary proceeding 09-1239."  *Id.*  Similar to these cases, the

Complaint against CA Miami alleged "the Trustee incorporates by reference the allegations

contained in the Fairfield Amended Complaint as if fully set forth herein."  Compl. ¶ 35.

A.      **All Adversary Proceedings Are Part of the Main Case for
        Purposes of Rule 10(c).**

The District Court has already found sufficient the Trustee's incorporation by reference of

his initial transferee complaints, including the Fairfield Amended Complaint, in the Trustee's

subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer
> defendant] incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright . . .. Thus, the avoidability of the transfers from
> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
> for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re*

*Madoff Sec.*").  Since all adversary proceedings filed under the umbrella of a single bankruptcy

case are considered one action for purposes of Rule 10(c), this decision allowing for incorporation

by reference is law of the case.  No intervening change of controlling law exists to stray from this

precedent.  *See Lowrey*, 596 B.R. at 463 (holding that the law of the case doctrine foreclosed

relitigation of an issue where the district court "considered and rejected the very arguments that

defendants now make"); *see also United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir 2002)

(internal citations omitted) (holding that when a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case unless "cogent" and

"compelling" reasons, such as an intervening change in controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice militate otherwise).

Because this adversary proceeding and the action filed against Fairfield Sentry fall under the same SIPA liquidation proceeding umbrella, and because CA Miami cannot identify any change of controlling law, the Trustee's incorporation of the Fairfield Amended Complaint is proper.

### B.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c).

The Trustee's incorporation of the Fairfield Amended Complaint meets the purpose of Rule 10(c) to promote short, concise pleadings, free of unwarranted repetition. *In re Morrison*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007). The incorporation is addressed specifically to the initial transferee and is in the section of the Trustee's Complaint labeled "Initial Transfers From BLMIS to Fairfield Sentry" following allegations relating to the Trustee's avoidance claims in the Fairfield Amended Complaint. *See* Compl. ¶¶ 35–39. The Trustee references only the Fairfield Amended Complaint. Reference to the Fairfield Amended Complaint provides notice of the avoidability of initial transfers in a manner that avoids repetition and over-complication.

### C.    The Trustee's Allegations Are Sufficient Under Rule 8.

Incorporation of the Fairfield Amended Complaint also satisfies Rule 8(a)(2). By incorporating the Fairfield Amended Complaint, the Trustee made a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from CA Miami pursuant to Section 550(a). *See Citibank*, 12 F.4th at 196–97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original).

The Trustee makes specific allegations regarding CA Miami's liability under Section 550(a) throughout and only incorporates the Fairfield Amended Complaint as part of one

paragraph in pleading the avoidability of the initial transfers. CA Miami's burden is minimal. And the fact that CA Miami already analyzed both the Fairfield Amended Complaint and the Fairfield Second Amended Complaint (Memorandum at 10–16), belies CA Miami's arguments that it has insufficient notice of the Trustee's allegations. Here, as in other cases, the Trustee adequately pleaded the avoidability of the initial transfers due to Fairfield Sentry's knowledge of BLMIS's fraud. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, 2022 WL 2135019, at *7.

## V.     THE TRUSTEE SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A).

The Trustee's Complaint plausibly alleged that CA Miami received subsequent transfers of stolen BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)). As this Court has repeatedly held, and as CA Miami acknowledges (Memorandum at 12), the Trustee is not required to perform a tracing analysis, or to present a "'dollar-for-dollar accounting' of 'the exact funds' at issue." *Multi-Strategy*, 641 B.R. at 90; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *3; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, 2022 WL 2387523, at *6; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, 2022 WL 2135019, at *7. Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts*,

*LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y.

2019). Specifically, the Trustee must allege the "'necessary vital statistics—the who, when, and

how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."

*Merkin I*, 515 B.R. at 150 (quoting *Silverman*, 379 B.R. at 32).

### A.    The Trustee's Complaint Meets the Pleading Requirements.

The Trustee's Complaint provides the necessary vital statistics, i.e., the "who, when, and

how much" for each of the subsequent transfers, alleging that CA Miami received twenty-four (24)

transfers totaling $6,741,013 made from Fairfield Sentry to CA Miami, through its agent, on

specific dates between October 2005 and March 2008. *Id.* ¶¶ 41–42; Exs. C, D. By including this

information, the Trustee "provides [CA Miami] with the 'who, when, and how much' of each

transfer." *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *10; *Banque

Cantonale*, 2022 WL 2761044, at *6; *Lloyds*, 2022 WL 2390551, at *6; *Lombard*, 2022 WL

2387523, at *10; *Bordier*, 2022 WL 2390556, at *6; *Banque Syz*, 2022 WL 2135019, at *12. The

Trustee's Complaint plausibly alleged that CA Miami received subsequent transfers of stolen

customer property by outlining the relevant pathways through which such stolen customer property

was transferred from BLMIS to Fairfield Sentry and subsequently to CA Miami through its agent

BBH. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-

01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting an argument

that a "claim ha[d] not been plead with enough specificity as to how and what [the defendant]

received" and holding that the complaint "contain[ed] sufficient information regarding which

transfers the Trustee [was] seeking to recover").

### B.    CA Miami Misstates the Trustee's Pleading Burden.

The Trustee is not required to tie each subsequent transfer CA Miami received to a specific

initial transfer from BLMIS. In *Merkin I*, the Court refused to dismiss subsequent transfer claims

even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Similarly, the Trustee is not required to detail what portion of each subsequent transfer comprises stolen customer property. *See Merkin I*, 515 B.R. at 152–53 (refusing to dismiss a complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either"). Any argument to the contrary is wrong and disregards the law of the adversary proceedings within this SIPA liquidation proceeding.

*Picard v. Shapiro* did not change the Trustee's pleading burden. *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *Id.* Unlike the Complaint against CA Miami, the complaint in Shapiro did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers. *Id.* Consequently, the Court granted the defendants' motion to dismiss the subsequent transfer claim. *Id.*

Here, *Shapiro* actually supports denying the Motion because the Trustee sufficiently pleaded:  the (1) investment relationship between CA Miami, BBH, and Fairfield Sentry; (2) the vital statistics of each transfer by alleging that CA Miami received twenty-four (24) transfers totaling $6,741,013 made from Fairfield Sentry to CA Miami on specific dates between October

2005 and March 2008; and (3) Fairfield Sentry invested substantially all of its funds with BLMIS.

### C.    CA Miami's Other Tracing Arguments are Inappropriate for a Motion to Dismiss.

CA Miami's other tracing arguments fare no better.

#### 1.    The Trustee Is Not Required to Trace Customer Property at the Pleading Stage.

CA Miami's tracing argument fails because the Trustee is not required to trace the flow of stolen customer property at the pleading stage. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from a debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *2)). CA Miami's "impossibility" argument is also fatally flawed. As the Court held in *Multi-Strategy*, "Defendant's calculation ignores any money received by Fairfield Sentry prior to December 11, 2002. The Court is not convinced that this is the only method of calculating customer property." *Multi-Strategy*, 641 B.R. at 95. Moreover, the Court has repeatedly held that the calculation of customer property and what funds Fairfield Sentry used to make redemption payments "are issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *11; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *7; *Lloyds*, 2022 WL 2390551, at *7; *Lombard*, 2022 WL 2387523, at *11; *Bordier*, 2022 WL 2390556, at *7; *Banque Syz*, 2022 WL 2135019, at *12.

#### 2.    Whether Fairfield Sentry Paid Redemptions with Customer Property is of No Moment.

Whether Fairfield Sentry paid other investors with stolen customer property it received from BLMIS prior to making transfers to CA Miami is a fact-intensive inquiry, which is inappropriate for resolution at this stage of the pleadings. *See Sass v. Barclays Bank PLC (In re*

*Am. Home Mortg. Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (holding that matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss").

In effect, CA Miami is applying its own undisclosed tracing methodology. But it is for the Court to decide—after fact and expert discovery—on the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them")).

The argument that every subsequent transfer made prior to the transfers CA Miami received was sourced solely by stolen customer property is also fact intensive and requires fact and expert discovery. Neither the Complaint nor its exhibits establish this, and at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of stolen customer property. *See Westford Special Situations*, 2020 WL 3077151, at *4 (holding that where a debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

The Trustee is a stranger to the transactions between Fairfield Sentry and BBH, which were directed by CA Miami, and he is entitled to discovery regarding the transactions by and between (1) Fairfield Sentry and BBH, (2) Fairfield Sentry and CA Miami, and (3) BBH and CA Miami. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with

complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). This is one reason why the Court in *Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[6] And even after fact and expert discovery, there may be fact disputes that require a trial. For example, in *Merkin*, the Court denied the defendants' motion in limine to exclude the Trustee's accounting expert, finding expert testimony at trial "may assist the Court in making its own determination as to the proper methodology." 581 B.R. at 386; *see also Westford Special Solutions*, 2020 WL 3077151, at *5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury may infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

### 3.     CA Miami's Timing Arguments Also Fail.

The amount of time that elapsed between Fairfield Sentry's receipt of certain initial transfers from BLMIS and Fairfield Sentry's subsequent transfers to CA Miami is a variation of CA Miami's aforementioned tracing argument that Fairfield Sentry transferred BLMIS's stolen customer property to other investors before getting to CA Miami. For the reasons stated above, tracing arguments are inappropriate on a motion to dismiss. And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage. *See*

---

[6] CA Miami argues that this case is unlike *Merkin I* in that the Trustee has had access to the Fairfield books and records "for over a decade." *See* Memorandum at 15–16. This is untrue. The Trustee does not have all of Fairfield Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Case Mgmt. Order, *Fairfield Inv.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting a November 22, 2022 deadline for fact discovery and an August 22, 2023 deadline for expert discovery). CA Miami, even if only through its agent BBH, must have records it can provide on these same transactions.

*Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### 4. CA Miami's Mere Conduit Argument is Inappropriate at This Stage.

To the extent CA Miami asserts a mere conduit defense (Memorandum at 25–26, 31) such argument is inappropriate at the motion to dismiss stage because it requires a fact-intensive analysis. "[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection." *Isaiah*, 960 F.3d at 1304; *see also Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008); *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006). The "mere conduit is a defense that requires factual support and at a minimum, is better addressed on summary judgment, not at the pleading stage." *Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *see also, Picard v. Nelson, et al.*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) (determining conduit status post-trial).

### CONCLUSION

The Trustee respectfully requests that the Court deny the Motion.


*[Signature Page Follows]*

Dated:  September 30, 2022
New York, New York

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

By: */s/ Matthew B. Lunn*
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855
Matthew B. Lunn
Email: mlunn@ycst.com
Michael S. Neiburg (admitted *pro hac vice*)
Email:  mneiburg@ycst.com
Justin P. Duda
Email: jduda@ycst.com
Christopher M. Lambe (admitted *pro hac vice*)
Email: clambe@ycst.com

*Attorneys for Plaintiff Irving H. Picard,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*