**KOBRE & KIM LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Zachary.Rosenbaum@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com

*Attorneys for BSI AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01209 (CGM) |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| BSI AG, individually and as successor in interest to BANCO DEL GOTTARDO AG, | |
| Defendant. | |

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 1

    I.    The Amended Complaint Fails to Allege Sufficient Facts to Support Personal Jurisdiction Over BSI or BDG ............................................................................................... 1

        A.    Investments in the Fairfield Funds Do Not Establish Personal Jurisdiction ................... 2

        B.    The Forum Selection and Choice of Law Clauses in the Sentry Subscription Agreements Are Not Relevant Contacts ................................................................. 5

        C.    Incidental Use of a Correspondent Bank Account Is Insufficient to Confer Personal Jurisdiction ................................................................................................... 7

        D.    Unrelated Contacts Cannot Support Specific Jurisdiction ............................................ 10

        E.    Jurisdictional Discovery Would Be Inappropriate ....................................................... 11

    II.    The Trustee's Claim is Barred by the Section 546(e) Safe Harbor ................................. 12

    III.    The Amended Complaint Fails to Plausibly Allege that the BSI Defendants Received BLMIS Customer Property ........................................................................................ 16

    IV.    The Trustee's Own Allegations Establish that the BSI Defendants Are Entitled to the Application of the Good Faith Defense ........................................................................... 18

CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),*
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ................................................... 16

*Aguas Lenders Recovery Group. v. Suez, S.A.,*
   585 F.3d 696 (2d Cir. 2009) ................................................................... 6

*Al Rushaid v. Pictet & Cie,*
   28 N.Y.3d 316 (2016) ............................................................................ 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................. 16

*Beacon Enters., Inc. v. Menzies,*
   715 F.2d 757 (2d Cir. 1983) ................................................................. 10

*Bernard L. Madoff Inv. Sec. LLC,*
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................ 13, 14, 15

*Bernard L. Madoff Inv. Sec. LLC,*
   516 B.R. 18 (S.D.N.Y. 2014) ............................................................... 19

*Bonano v. Doe,*
   628 F. App'x 25 (2d Cir. 2015) ............................................................ 13

*Edmondson v. RCI Hosp. Holdings, Inc.,*
   2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ........................................ 17

*Fairfield Sentry Ltd. v. Citibank, N.A. London,*
   2022 WL 4391023 (S.D.N.Y. Sep. 22, 2022) ...................................... 5, 6

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.,*
   2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ..................................... 12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam,*
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ............................... 5

*Fiore v. Walden,*
   688 F.3d 558 (9th Cir. 2012) ................................................................. 3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
   141 S. Ct. 1017 (2021) .......................................................................... 5

*Hau Yin To v. HSBC Holdings, PLC*,
　2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ................................................................ 9

*Hau Yin To v. HSBC Holdings, PLC*,
　700 F. Appx. 66 (2d Cir. 2017) ................................................................................ 9

*Helms v. Metro. Life Ins. Co.* (*In re O'Malley*),
　601 B.R. 629 (Bankr. N.D. Ill. 2019) ............................................................... 17, 18

*Hill v. HSBC Bank plc*,
　207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................................... 7

*In re Fairfield Sentry Ltd.*,
　No. 10-13164 (CGM) (Bankr. S.D.N.Y. July 16, 2010) ........................................ 18

*In re Motors Liquidation Co.*,
　565 B.R. 275 (Bankr. S.D.N.Y. 2017) .................................................................... 2

*Kiobel v. Royal Dutch Petroleum Co.*,
　2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ........................................................ 11

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
　2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) .......................................................... 7

*Law v. Siegel*,
　571 U.S. 415 (2014) ................................................................................................ 12

*Licci v. Lebanese Canadian Bank, SAL*,
　20 N.Y.3d 327 (2012) ............................................................................................. 9

*Maranga v. Vira*,
　386 F. Supp. 2d 299 (S.D.N.Y. 2005) .................................................................... 10

*Miller v. Mercuria Energy Trading*, Inc.,
　291 F. Supp. 3d 509 (S.D.N.Y. 2018) .................................................................... 6

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*,
　2004 WL 1620874 (S.D.N.Y. July 20, 2004) ......................................................... 2

*Off. Comm. of Unsecured Creditors of Arcapita Bank v. Bahrain Islamic Bank*,
　549 B.R. 56 (S.D.N.Y. 2016) ................................................................................. 9

*Picard v. ABN AMRO Bank* (*Ireland*) *Ltd.* (*In re BLMIS*),
　2022 WL 1304589 (S.D.N.Y. May 2, 2022) .......................................................... 20

*Picard v. BNP Paribas S.A.* (*In re BLMIS*),
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................................. 9, 11

*Picard v. Bureau of Labor Ins.* (*In re BLMIS*),
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................... 3, 4

*Picard v. Charles Ellerin Revocable Tr.* (*In re BLMIS*),
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012)................................................ 16

*Picard v. Citibank, N.A.* (*In re BLMIS*),
   12 F.4th 171 (2d Cir. 2021)............................................................................... 19, 20

*Picard v. Fairfield Inv. Fund* (*In re BLMIS*),
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............................................... 19

*Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*),
   773 F.3d 411 (2d Cir. 2014)............................................................................... 12, 13

*Picard v. Merkin* (*In re BLMIS*),
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................................... 16

*Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*),
   2022 WL 2137073 (Bankr. S.D.N.Y. 2022) ............................................................ 4

*Picard v. Shapiro* (*In re BLMIS*),
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................... 16

*Rosenblatt v. Coutts & Co. AG*,
   2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ........................................................ 8, 9

*Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*),
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................................................ 16

*SPV OSUS Ltd. v. UBS AG*,
   114 F. Supp. 3d 161 (S.D.N.Y. 2015)...................................................................... 2

*Helms v. Metro. Life Ins. Co.* (*In re O'Malley*),
   633 B.R. 332 (N.D. Ill. 2021)................................................................................. 17

*U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019).................................................................................... 2

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................ 3, 4

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................................................ 5

**Statutes**

11 U.S.C. § 546(e) ............................................................................................... 12, 14, 15

11 U.S.C. § 548(a)(1)(A) ............................................................................................... 12

11 U.S.C. § 550(a) ............................................................................................... 19

11 U.S.C. § 550(a)(2) ............................................................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1

BSI AG ("BSI"), individually and as alleged successor-in-interest to Banca del Gottardo

AG ("BDG" and together with BSI, the "BSI Defendants"), by the undersigned, respectfully

submits this reply memorandum of law in support of its motion to dismiss, with prejudice, the

Amended Complaint filed by plaintiff Irving H. Picard (the "Trustee"), as trustee for the

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under Rules 12(b)(2)

and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

The BSI Defendants are two of dozens of alleged "subsequent transferees" from whom the

Trustee is seeking to recover transfers of alleged customer property made by BLMIS to Sentry.

The BSI Defendants have reviewed the Court's decisions on motions to dismiss filed by other

subsequent transferees and acknowledge that the Court has recently rejected arguments similar to

those raised by the BSI Defendants. The BSI Defendants continue to advance their motion to

dismiss to preserve the BSI Defendants' arguments on appeal and because, as to personal

jurisdiction, this motion warrants a different outcome due to the particular facts of this case.

## ARGUMENT

**I.   The Amended Complaint Fails to Allege Sufficient Facts to Support Personal
Jurisdiction Over BSI or BDG**

The Trustee failed to make a *prima facie* showing of personal jurisdiction, requiring

dismissal of the Amended Complaint with prejudice. BSI and BDG are Swiss entities that sent

instructions from Switzerland on behalf of foreign customers to a custodian located in the

Netherlands to redeem shares held in entities located in the British Virgin Islands.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the BSI Defendants' initial memorandum
of law (the "Opening Brief"), Dkt No. 123, cited as "Opening Br." Citations to "Opp'n." refer to the Trustee's
opposition memorandum (the "Opposition"), Dkt. No. 129. BSI AG is also known as BSI S.A. The Case Caption
misidentifies Banca del Gottardo as "Banco del Gottardo."

Despite the purely foreign nature of these transactions, the Trustee seeks to haul the BSI Defendants into this Court on the basis that they allegedly "(1) purposefully invested in the Fairfield Funds, whose assets were managed and custodied by BLMIS in New York and placed in U.S. investments; (2) used New York banks to transact with Fairfield Funds; (3) had direct connections with New York through its Sentry and Sigma subscription agreements; and (4) communicated with FGG representatives in New York and visited FGG's New York headquarters." Opp'n at 10. Whether viewed individually or as a whole, these contacts fail to establish personal jurisdiction because they are wholly unrelated to the alleged basis for liability—the redemptions made by customers of the BSI Defendants that gave rise to the alleged subsequent transfers.[2]

A. Investments in the Fairfield Funds Do Not Establish Personal Jurisdiction

The Trustee's primary argument as to why this Court has jurisdiction over the BSI Defendants is that they made "intentional investments with BLMIS in New York through known BLMIS feeder funds," thereby "deliberate[ly] targeting . . . BLMIS and the New York securities market . . . ." Opp'n at 10–11.[3] But a defendant's mere knowledge and intent that its investment in a foreign investment fund would provide it with exposure to the New York securities market

---

[2] The Trustee contends that "BDG's activities and contacts with New York may . . . be attributed to BSI" because "a successor-in-interest can 'step into the jurisdictional shoes' of its predecessor." Opp'n at 10 n.4. However, that only occurs "when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court"—*i.e.*, *with respect to the alleged liability incurred by its predecessor*. *In re Motors Liquidation Co.*, 565 B.R. 275, 287 (Bankr. S.D.N.Y. 2017) (citation omitted). There is no basis for considering contacts by BDG prior to its acquisition by BSI when assessing transfers solely alleged against BSI.

[3] The Trustee also references allegations related to the Kingate Funds. Opp'n at 1 n.1. Kingate investments have no relevance this case and the Trustee's claims do not "arise out of or relate to" those investments. *U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (no personal jurisdiction where contacts related to a contract not at issue in the claim); *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, No. 03-CV-2936 (MBM), 2004 WL 1620874, at *3–5 (S.D.N.Y. July 20, 2004) (no personal jurisdiction where the purported contacts did not relate to the specific payments at issue in the transaction at issue).

cannot support jurisdiction under controlling law, including *Walden v. Fiore*, 571 U.S. 277, 284 (2014). *See* Opening Br. at 9–12.

The Trustee argues *Walden* is inapplicable because it involved the issue of "foreseeability" and all it held was that jurisdiction could not be premised "solely on a plaintiff's unilateral contacts with the forum state." Opp'n at 14–15. Not so. In *Walden*, the Ninth Circuit was reversed for improperly basing personal jurisdiction on allegations that the defendant "must have known and intended that his actions" would have an impact in Nevada and performed his actions "with the purpose of having its consequences felt by someone in Las Vegas." *Fiore v. Walden*, 688 F.3d 558, 578–579, 580 (9th Cir. 2012). That is, the Ninth Circuit incorrectly endorsed a theory that is almost word-for-word identical to the theory the Trustee relies on here. *See, e.g.*, Opp'n at 14 (arguing jurisdiction exists "where defendant knew and intended that funds" would be sent to BLMIS in New York), 15–16 (arguing that jurisdiction exists because "BSI and BDG knowingly and purposefully directed activity into New York"). The Supreme Court rejected that theory outright on appeal. *Walden*, 571 U.S. at 289 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."). In doing so, the Supreme Court explicitly held that "look[ing] to petitioner's knowledge of respondents' 'strong forum connections' . . . impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.*

The Trustee's argument—premised on *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) ("*BLI*")—contradicts this maxim by arguing that knowledge of *the Fairfield Funds'* contacts with New York constitutes purposeful availment by BSI and BDG. *BLI* predates *Walden* and thus cannot control the outcome here.

3

Even assuming the continued validity of *BLI*, it has no bearing on this case. When this Court has applied cases like *BLI* to find jurisdiction over other redeemer defendants in other cases, the Court has focused on such defendants' "investment activities" and their intention to "reap the benefits" from investing in the "Madoff money orchard." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), Adv. Pro. No. 12-01205, 2022 WL 2137073, at *4 (CGM) (Bankr. S.D.N.Y. 2022) (citation omitted). That is decidedly not what BSI or BDG were doing. BSI and BDG acted merely as conduits to facilitate investments by their clients. (Antonini Decl. ¶ 9). Acting as an overseas intermediary, with no proprietary investments in BLMIS, is not remotely akin to other cases in which defendants took affirmative actions to invest in and generate profits from their own investments in BLMIS.[4]

Adopting the Trustee's interpretation of *BLI* incorrectly shifts the personal jurisdiction focus away from the place of defendant's primary conduct to wherever the effects of that conduct could conceivably be felt. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). The clients of the BSI Defendants purposefully invested in an offshore entity governed by foreign law as evidenced by the very Private Placement Memorandum ("PPM") cited by the Trustee. *See* Opening Br. at 17 n.8 (summarizing provisions of the PPM providing that the transactions will take place between "non-U.S. Persons" and that the Fairfield Funds "will not be deemed to be engaged in a U.S. trade or business"). Exercising personal jurisdiction based solely on mere knowledge that investments in

---

[4] The Trustee's only response to this distinction is the conclusory assertion that the BSI Defendants "obviously profited from these investments one way or another," because they allegedly participated in fee sharing arrangements with FGG. Opp'n at 13. But the claims here do not arise from those agreements. The Amended Complaint explicitly asserts that the payments allegedly received by the BSI Defendants were redemptions of equity interests by nominal shareholders in Fairfield Sentry. Am. Compl. ¶¶ 88, 91.

4

the Fairfield Funds could flow to New York would destroy a defendant's ability to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).[5]

Finally, the Trustee's primary theory for personal jurisdiction vitiates the principle that ownership of shares in a company that conducts business in New York does not suffice to establish jurisdiction. Opening Br. at 11. If the Trustee's theory were upheld, any investment in a foreign company that was foreseeably investing in U.S. assets would confer personal jurisdiction. There is no precedent for such a result.

    B.   <u>The Forum Selection and Choice of Law Clauses in the Sentry Subscription Agreements Are Not Relevant Contacts</u>

The Trustee points to New York choice of law and choice of forum provisions included in proffered Subscription Agreements between the BSI Defendants and the Fairfield Funds. *See* Opp'n at 16–17. The Trustee concedes that such clauses cannot establish jurisdiction by themselves, but argues that the Subscription Agreements are nevertheless relevant contacts demonstrating purposeful availment. Opp'n at 16. Because the Subscription Agreements are "irrelevant" to the claims, as Judge Bernstein previously found, they cannot be a relevant jurisdictional contact. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd*, 2022 WL 4391023 (S.D.N.Y. Sep. 22, 2022).

---

[5] The Trustee has consistently taken the position that parties such as the BSI Defendants cannot assert customer claims against BLMIS because their real legal relationship was with Fairfield—not BLMIS. The Trustee cannot have it both ways. He cannot claim that the Court has jurisdiction over the BSI Defendants for purposes of his clawback claim, while at the same time asserting that foreign defendants who invested indirectly through the Fairfield Funds have no statutory right to assert customer claims against BLMIS precisely because of their indirect foreign investment structure. This is fundamentally unfair and serves to highlight that the BSI Defendants did not purposefully avail themselves of the privileges and benefits of doing business in New York.

That the BSI Defendants may have consented to litigate claims in New York in limited, specified circumstances does not mean they purposefully availed themselves of New York law in *all* circumstances. *See Miller v. Mercuria Energy Trading*, Inc., 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) (declining to consider forum selection clause in jurisdictional analysis concerning claim by non-party to the contract when forum selection clause does not govern the claim). The Subscription Agreement "protects the members' expectation by specifically naming the type of claims that will drag them into New York," *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023, at *10 (S.D.N.Y. Sep. 22, 2022), and it is settled that claims related to redemptions are not one of those types of claims because they are governed by Sentry's Articles of Association and BVI law. *Id.* As Judge Broderick found on appeal, under the Trustee's logic "almost any dispute between the investors and the Funds would be litigated in New York, since the investors would not have been able to make their investments at all if it were not for the Subscription Agreement." *Id.* at *12.

Judge Broderick's reasoning is especially true here given that the Trustee seeks to enforce the forum selection clause on behalf of BLMIS, which is not even a party to the agreement and has no right to enforce the agreement. The Trustee cites *Aguas Lenders Recovery Group. v. Suez, S.A.*, 585 F.3d 696 (2d Cir. 2009) for the proposition that BLMIS may enforce a forum selection clause to which it is not a party. However, *Aguas Lenders Recovery Group* found only that certain exceptions exist that would allow a non-signatory to be bound by an agreement's forum selection clause. None of those exceptions are applicable here. *Id.* at 701–02. To enforce the forum selection clause in the Subscription Agreements, the Trustee would have had to allege facts establishing that BLMIS was a third-party beneficiary to the agreement, which the Trustee did not do. *See Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20-CV-9993 (KPF), 2021 WL 5909976,

6

at *460 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

For all these reasons, the BSI Defendants' alleged agreement to forum selection and choice of law clauses in Subscription Agreements with the Fairfield Funds cannot be considered a relevant contact when considering whether the BSI Defendants purposefully availed themselves of New York jurisdiction for a dispute with BLMIS concerning the redemptions.

C.    Incidental Use of a Correspondent Bank Account Is Insufficient to Confer Personal Jurisdiction

The Amended Complaint alleges that BSI and BDG purposefully availed themselves of New York law by receiving redemption payments into "correspondent accounts at HSBC USA in New York," Am. Compl. ¶ 69, and directing "subscription payments to Fairfield Sentry's designated U.S. bank accounts," *id*. ¶ 70. The Opposition, however, admits that the HSBC Bank USA correspondent account belonged to *Sentry*, not the BSI Defendants. Opp'n at 6 ("BSI and BDG sent subscription payments to and received at least 195 redemptions from Sentry's HSBC Bank USA [sic] in New York."), 7 ("The Sentry agreements also instructed investors to send subscription payments to the HSBC USA Account.").

The Trustee has thus failed to allege that BSI or BDG themselves maintained accounts in the United States into which they received funds from the Fairfield Funds. Critically, the BSI Defendants' mere receipt of funds overseas originating from a correspondent bank account in the United States is not purposeful availment. *See, e.g.*, *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]").

7

The BSI Defendants submitted an uncontested affidavit that the entirety of the alleged activity amounts to no more than: (i) the BSI Defendants wiring funds from Switzerland to the Fairfield Funds in the BVI, and specifically to the Fairfield Funds' bank account at Citco Bank Nederland N.V. Dublin Branch; and (ii) the Fairfield Funds transferring redemption payments from the BVI back to BSI and BDG's accounts at Citco. (Poretti Decl. ¶¶ 8–9). The Trustee has stated that for subscriptions, "[i]nvestors wired funds to Fairfield's account at Citco Bank in Ireland," Trustee's Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of the Trustee's Motion for Leave to Amend Complaints, Dkt No. 75, at 20 n.88, and conversely introduced exhibits stating that redemption payments were "made by Citco to BSI" and "in Switzerland." *See* Declaration of Robertson D. Beckerlegge, Dkt. No. 130 ("Becklerlegge Decl.") Ex. 2, at 2.

According to the Trustee, these entirely foreign transfers nonetheless should be considered relevant jurisdictional contacts because, when their clients subscribed to the Fairfield Funds, the BSI Defendants' purposefully directed payments towards an "ultimate" destination in New York. Opp'n at 17; Am. Compl. ¶ 70. Under these circumstances, the assertion that BSI and BDG's wiring of money was "knowing" or "purposeful" misses the mark. "[S]ending of monies into New York [is] not sufficient to establish personal jurisdiction without the defendant having 'projected' itself into New York for the purposes of conducting business there." *Rosenblatt v. Coutts & Co. AG*, No. 17-CV-3528 (AKH), 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017), *aff'd*, 750 F. App'x 7 (2d Cir. 2018).

Of course BSI and BDG purposefully directed money to *the Fairfield Funds* at the direction of their clients, but they did not direct that money towards the Fairfield Funds *in the United States*. The "center of gravity" of the transaction remained abroad; Swiss entities wired funds to Ireland

8

to pay for subscriptions to a fund located in the BVI. *See Id.* (explaining that foreign defendant's act of sending payment to plaintiff's New York bank account pursuant to agreement negotiated and executed in Switzerland, concerning property and funds in Switzerland, and contract subject to Swiss law was not purposeful availment). To the extent "funds were then ultimately deposited into BLMIS's account at JPMorgan Chase Bank NA in New York," Am. Compl. ¶ 70, that occurred through the Fairfield Funds' actions, not those of the BSI Defendants.

Even if use of a correspondent account was sufficiently purposeful to support jurisdiction, the Trustee's claim does not arise out of that aspect of the redemptions. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) ("The wiring of funds through New York in this case . . . was passive, rather than 'integral' to the alleged [Madoff] Ponzi scheme . . . . Here, the passage of money through the U.S. bank accounts were merely incidental and not specifically directed . . . to facilitate the Ponzi scheme."). There is no allegation that the correspondent accounts were anything more than a ministerial, intermediate step in the redemption of shares in the Fairfield Funds.[6]

The Trustee relies on terror-financing cases in which the defendants allegedly aided terrorist groups by giving them access to the U.S. financial system through a New York correspondent account, aptly illustrating the distinction between actions that are "purposeful" and "integral" to the claims as opposed to those that are incidental. *See Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012), *Off. Comm. of Unsecured Creditors of Arcapita Bank v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016), and *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d

---

[6] The Trustee claims that *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) ("*BNP*") ruled that *Hau Yin To* and *Hill* are not relevant to the Trustee's subsequent transfer actions. However, *BNP* is distinguishable because the alleged subsequent transferees operated in New York and the subsequent transfers were the result of New York activities, such as sending subscription agreements to New York, wiring funds to New York, sending redemption requests to New York, and receiving redemption payments from a bank account in New York. *Id.* Aside from the incidental use of a New York bank account by Sentry, none of the alleged connections to New York addressed in *BNP* exist here, making the facts much more akin to *Hau Yin To* and *Hill*.

316 (2016). In contrast, BSI and BDG are not alleged to, and did not in fact, have knowledge of BLMIS's illegal activity; nor did BSI or BDG use the correspondent bank accounts to facilitate an illegal scheme in the United States to which they were knowing participants.

D. Unrelated Contacts Cannot Support Specific Jurisdiction

According to the Trustee, the "the Amended Complaint includes almost five pages of allegations regarding BSI's and BDG's contacts with New York and the U.S. . . . ." Opp'n at 20. At most, these allegations establish that BSI and BDG communicated with FGG *about* the Fairfield Funds. There are zero alleged communications concerning the specific redemptions allegedly containing customer property or otherwise showing that BSI or BDG projected themselves into ongoing commerce in New York. This is fatal to the Trustee's attempt to invoke specific jurisdiction, as "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.'" *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)).[7]

In support of his allegation that BSI and BDG "regularly communicated" with FGG in New York, the Trustee attaches exhibits to the Opposition apparently intending to illustrate that BSI and BDG did, in fact, communicate with FGG. What those exhibits show are conversations that occurred in 2004 or later totally unrelated to the alleged subsequent transfers received by the BSI Defendants. None of those conversations concern redemptions. They are largely prospective in nature—*i.e.*, they concern attempts by FGG to generate future subscriptions that may never have occurred. And they often concern investment funds other than Sentry, Sigma, and Lambda. *See*

---

[7] The Trustee attempts to distinguish these cases because the "center of gravity of the transactions in those cases took place outside of New York." Opp'n. at 23 n.11. That is exactly what occurred here. Swiss entities sent instructions from Switzerland on behalf of foreign customers to a custodian located in the Netherlands to redeem shares held in entities located in the British Virgin Islands.

Beckerlegge Decl. Ex. 2 (discussing "new products" that "should help to correct the inaccurate notion of FGG as just Sentry" such as Trafalgar Funds), Beckerlegge Decl. Ex. 5 (describing conversations regarding BDG positions in Fairfield Dover, Paradigm, and Redstone). Because the Trustee must establish the Court's jurisdiction over each of the BSI Defendants for each individual redemption, these alleged communications fail to make a *prima facie* case for jurisdiction. *See BNP*, 594 B.R. at 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim . . . and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'") (citations omitted).[8]

### E. Jurisdictional Discovery Would Be Inappropriate

The Trustee contends that if the Court finds that he has not yet made a *prima facie* showing of jurisdiction as to the BSI Defendants, he should be granted jurisdictional discovery. Opp'n at 25. Jurisdictional discovery would be inappropriate because the Trustee has failed to make "a threshold showing" that there is a basis for jurisdictional discovery, including by failing to identify how any proposed discovery would uncover facts sufficient to sustain jurisdiction. *See, e.g., Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction."). Indeed, the Trustee had Rule 2004 subpoena power, had access to the Fairfield Funds' documents,

---

[8] The Trustee incorrectly asserts that *BNP* did not look at each transfer individually to determine jurisdiction and instead focused on the overall contacts with the transferees in New York. Opp'n at 9 n.3. The court began by stating that "the jurisdictional analysis focuses on the Defendants' U.S. contacts related to the receipt of the fifty-nine subsequent transfers at issue." *BNP*, 594 B.R. at 190. The Court then proceeded to note that "virtually all of the subsequent transfers that are the subject of the Trustee's claims" stemmed from a business unit of the defendants operated in New York, and that "[t]he redemption and any other payments the Defendants received as direct investors in the Tremont Funds arose from the aforementioned New York contact." *Id.* at 190, 191. In other words, unlike here, the Trustee in *BNP* adequately alleged facts establishing jurisdiction over all 59 subsequent transfers.

and clearly had documents relating to the BSI Defendants, as evidenced by the exhibits submitted with the Opposition. Yet, the Trustee elected not to include more specific allegations in the Amended Complaint. He should not be given another bite at the apple.[9]

## II. The Trustee's Claim is Barred by the Section 546(e) Safe Harbor

In their motion to dismiss, the BSI Defendants demonstrated each of the elements necessary to invoke the Section 546(e) safe harbor. Opening Br. at 25–32. The Trustee does not seriously attempt to challenge that conclusion. Instead, he tries to avoid dismissal by arguing the judicially created "knowledge" exception to Section 546(e) applies—not because BSI or BDG knew anything about Madoff's Ponzi scheme, but because the Fairfield Funds allegedly did. Opp'n at 26–27.

As explained in the Opening Brief, the "knowledge" exception should be rejected as contrary to Section 546(e)'s plain language. The Second Circuit has instructed courts to enforce Section 546(e)'s safe harbor whenever it applies by its terms, explaining that "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 423 (2d Cir. 2014) (citation omitted) ("*Fishman*"). Under the plain meaning of the statute, the only exception to section 546(e) is a claim under section 548(a)(1)(A), and courts are not free to create additional exceptions. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of

---

[9] The District Court's recent ruling in *Fairfield Sentry Ltd. v. HSBC Sec. Servs.* (*Luxembourg*) *S.A.*, No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) does not require jurisdictional discovery here. Judge Preska found only that the Court did not abuse its discretion by permitting jurisdictional discovery, not that such discovery was required. *Id.* at *9. The BSI Defendants respectfully submit that the Court should not exercise its discretion to permit jurisdictional discovery given the particular facts of this case.

exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions.").

The Trustee argues that that the "knowledge" exception is "law of the case," because it was applied in Judge Rakoff's decision in *SIPC v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"). However, the Trustee ignores the Second Circuit's subsequent opinion in *Fishman*, which rejected the Trustee's attempts to limit the applicability of Section 546(e) by adding language that Congress did not include. *See Fishman*, 773 F.3d at 419–23. Thus, while not directly addressing the issue, the clear import of *Fishman* is that courts should not interpret Section 546(e) to create a knowledge exception that does not exist in the text. The Trustee's argument also ignores that prior decisions of this Court are not binding, because "the law of the case . . . doctrine is 'discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" *Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015) (citation omitted).

But even assuming the validity of the "knowledge" exception, the Trustee is incorrect that it precludes innocent subsequent transferees from invoking the Section 546(e) safe harbor simply because of the actual knowledge of the initial transferee. The purpose of Section 546(e) is promoting reliance on valid financial contracts. *See Cohmad II*, 2013 WL 1609154, at *4 ("[T]he purpose of this section is minimiz[ing] the displacement caused in the commodities and securities market in the event of a major bankruptcy affecting those industries." (internal quotation omitted)). In line with this purpose, Judge Rakoff established in *Cohmad II* that transferees who had actual knowledge of fraud cannot claim to have relied on a valid securities contract, and thus cannot access the safe harbor. *See id.* at *3 ("[W]here the Trustee has adequately alleged that these defendants had . . . actual knowledge of Madoff's scheme" then "the fact that these defendants

13

signed account agreements is meaningless for purposes of Section 546(e)" because the parties knew "that the transfers could not have been made in connection with an actual 'securities contract.'").

Contrary to the Trustee's argument, there is no blanket "exception" to Section 546(e)'s safe harbor based on the alleged "actual knowledge" of an initial transferee. Rather, *Cohmad II* directs courts to consider the knowledge of the party seeking the protection of Section 546(e). On a motion to dismiss, "if the allegations adequately allege *that a defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee*, even as concerns the application of Section 546(e)." *Id.* at *4 (emphasis added). The structure of Judge Rakoff's opinion is instructive; he describes what a trustee must allege to bring an initial transfer outside the safe harbor, and then conducts separate analyses as to initial and subsequent transferees: "[T]he Trustee must show, at a minimum, that *the transferee* had actual knowledge that there were no actual securities transactions being conducted. Applying these principles, *the Court first turns to initial transferees and then to subsequent transferees*." *Id.* at *4–5 (emphasis added). Thus, to the extent any "exception" to Section 546(e) exists based on the knowledge of a defendant, it only applies to the defendant alleged to have knowledge.

The Trustee's proposed interpretation that *all* subsequent transferees that received money through Sentry, no matter how far removed from BLMIS's fraud, have no protections under the safe harbor cannot be squared with *Cohmad II*, which specifically described the scope of the exception with respect to subsequent transferees:

> (2) Where the Trustee has sought to recover transfers made to a <u>subsequent transferee</u>, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the <u>subsequent transferee</u> will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the <u>subsequent transferee</u> had actual knowledge of Madoff Securities' fraud.

14

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added, except "if"). This paragraph makes clear that the "knowledge" exception bars a subsequent transferee from relying on the safe harbor when they themselves had actual knowledge of the fraud, not when the initial transferee had knowledge.[10] On the other hand, a subsequent transferee without actual knowledge has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract. *Id.* at *4. By allowing the Fairfield Funds' knowledge to deprive an innocent subsequent transferee of access to the safe harbor, the Trustee's interpretation of *Cohmad II* would render this paragraph surplusage.

Finally, even if the "knowledge" exception is not transferee-specific, the initial transfers are still not avoidable under Section 546(e) because they were made in connection with "real" securities contracts. Under Judge Rakoff's construction of the "knowledge" exception, the defendant's knowledge negates the apparent satisfaction of the "securities contract" element of Section 546(e). *Cohmad II*, 2013 WL 1609154, at *3. But, as the Trustee concedes, Opp'n at 29 n.17, Judge Rakoff recognized that an initial transfer could be made "in connection with" a securities contract between the initial transferee and a subsequent transferee. *See* Opening Br. at 26–27. The Trustee has alleged that Sentry withdrew funds from BLMIS in order to pay BSI and BDG for redemptions of their equity interests as shareholders in Sentry. Am. Compl. ¶¶ 88, 91. Those redemptions were governed by Sentry's Articles of Association, a *bona fide* securities contract. As such, Section 546(e) applies to protect the initial transfers from avoidance, regardless of whether the Fairfield Funds had "actual knowledge" of the fraud at BLMIS.

---

[10] In implementing the Order, the Court included the quoted language above and underlined the word "subsequent" at the end, showing that the decision was directed to the subsequent transferees state of knowledge, not something that was inferred or informed through the initial transferee. Order, *Cohmad*, No. 12-MC-115 (JSR) (S.D.N.Y. Feb. 12, 2013), Dkt No. 439, at 3.

III.    **The Amended Complaint Fails to Plausibly Allege that the BSI Defendants Received BLMIS Customer Property**

The Amended Complaint pleads no facts that plausibly "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). Instead, the Trustee simply lists alleged initial and subsequent transfers and makes the bare, conclusory assertion that the entries in the two lists are sufficiently connected to each. That approach falls far short of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to BSI or BDG. Instead, he argues he need not do so. However, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Picard v. Charles Ellerin Revocable Tr.* (*In re BLMIS*), No. 08-01789 (BRL), 2012 WL 892514, at *3, cannot relieve the Trustee of his obligation to plead a plausible linkage between the initial and subsequent transfers. None of those cases uphold a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, because the Trustee has alleged that earlier Sentry distributions had exhausted all the BLMIS money at Sentry prior to the at-issue redemptions.[11]

---

[11] *See Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Trustee must "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee"); *Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (transfers by initial transferees "were preceded by fraudulent transfers of funds from [debtor] in amounts sufficient to cover the [subsequent] transfers"); *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . implying linkage"; (emphasis added)); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC* (*In re 45 John Lofts, LLC*), 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that payments totaling $29.4 million were deposited into account and $29.4 million was transferred out the same day and next business day).

16

The Trustee calls this a "commingling" argument, Opp'n at 33, but his pleadings establish long periods in which no commingling occurred—and the requisite linkage cannot be made—because no customer property remained at Sentry; it had already been paid out. As an example, the Trustee alleges that the BSI Defendants received approximately $8.8 million in subsequent transfers between October 14, 2003 and March 15, 2005, even though Sentry had exhausted all possible BLMIS customer property by September 18, 2003 and did not receive any other alleged initial transfers from BLMIS until April 1, 2005. Opening Br. at 35.

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every redemption payment from Sentry during the relevant period was comprised entirely of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. All the BSI Defendants did was subtract those redemptions from the amounts received from BLMIS—hardly the province of experts. Opening Br. at 34–35; *see also Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

The Trustee tries to justify this overreach because he "'can recover from any combination of [transferees]' up to the amount avoided." Opp'n at 33 (citing *Helms v. Metro. Life Ins. Co.* (*In re O'Malley*), 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)). This ignores the fact that for millions of dollars of the Trustee's claims, the defendant is not a "transferee" because there was no BLMIS money at Sentry to transfer. The only subsequent transferees from whom potentially duplicate recoveries may be obtained are those "who take[] in a later transfer down the chain of title or possession"—i.e., the "immediate or mediate transferee[s]

17

of [an] initial transferee" to which Section 550(a)(2) refers. *Helms*, 601 B.R. at 656 & n.17. Unlike

those cases, the Trustee here sues to recover various amounts from many defendants in dozens of

different alleged chains of title or possession, asserting—without alleging facts plausibly

supporting the assertion—that all the funds they received constitute subsequent transfers of

customer property. And he persists in doing so even though the total he seeks exceeds by

approximately $2 billion the sum of the initial transfers. Not surprisingly, the Trustee cites no

precedent for proceeding in this manner.

Finally, the Trustee attempts to excuse his pleading failure by arguing that he "does not

have all [of the fund's] books and records." Opp'n at 34. This is belied by his own pleadings

detailing thousands of alleged transfers from Sentry. *See* Am. Compl. Ex. B. Further, he says

nothing about his contractual right to records and cooperation from the Fairfield Liquidators, *see*

Fairfield Settlement ¶ 14, who admitted in this Court that they have most of the books and records

of the Fairfield Funds. Declaration of Kenneth Krys, (*In re Fairfield Sentry Ltd.*), No. 10-13164

(CGM) (Bankr. S.D.N.Y. July 16, 2010), Dkt. No. 40, ¶¶ 15, 19. The Trustee's cases, which offer

pleading latitude where subsequent transfers had to be proven with defendants' records, are

inapposite.

## IV.    The Trustee's Own Allegations Establish that the BSI Defendants Are Entitled to the Application of the Good Faith Defense

The Amended Complaint should also be dismissed because it establishes the BSI

Defendants' Section 550(b) affirmative defense. The Trustee, quoting from this Court's *Fairfield*

*Investment Fund* decision, asserts that "[w]hether the Defendants gave value is a question of fact

to be resolved either at the summary judgment stage or at trial." Opp'n at 37. The facts and

arguments in that case differed significantly from those here. The principal focus of the "for value"

defense argued in the *Fairfield Investment Fund* motion to dismiss was whether the Fairfield

insider defendants' services constituted "value" for purposes of Section 550(a). Here, in contrast, the BSI Defendants point to value that has already been determined to exist as a matter of law.

The Trustee alleges that Sentry was a British Virgin Islands fund and the alleged subsequent transfers were payments for redemption of shares in Sentry. Am. Compl. ¶¶ 88, 91; Fairfield Second Amended Complaint ¶¶ 95, 97. The internal affairs doctrine governs the relationship between Sentry and its shareholders, such as BSI and BDG, and a final decision of the Eastern Caribbean Court of Appeal has held as a matter of law that Fairfield Sentry's redemption of its shares from its shareholders was for good consideration. Opening Br. at 37. The facts are apparent on the face of the Amended Complaint, and the law has been clearly determined by the appellate court in an authoritative decision in the relevant jurisdiction that the redemption was for value.[12] Thus, this determination can, and should, "be made as a matter of law or fact at this stage," *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

Similarly with respect to good faith, the Trustee claims he wishes to take discovery on "myriad unknown facts critical to a good faith defense," Opp'n at 35, and brushes off the BSI Defendants' position as "pure conjecture," *id.* at 36. But the Trustee's argument relies on pre-*Citibank* law concerning the transferee's knowledge or suspicions and the investigation the transferee conducted, which Citibank reversed. *SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014) (good faith is based on the transferee's subjective knowledge), *overruled by Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021). As the Second Circuit made clear, the key

---

[12] The BSI Defendants recognize that this Court has found that *Fairfield Sentry Ltd. v. Migani* [2014] UKPC 9 does not establish lack of knowledge of voidability because this element is a defendant's burden to plead and prove. *Picard v. First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 at *10 (Bankr. S.D.N.Y. July 18, 2022) (citing *Theodoor GGC Amsterdam*, 2020 WL 7345988 at *6 n.7). The BSI Defendants respectfully submit that the Court may take judicial notice of *Migani* because its holding is a matter of public record. *See In re Extended Stay, Inc.*, No. 09-13764 (JLG), 2020 Bankr. LEXIS 2128, at *16 (Bankr. S.D.N.Y. Aug. 8, 2020).

question is whether the defendant upon "diligent inquiry . . . would have discovered the fraudulent purpose of the transfer." *Citibank*, 12 F.4th at 192 (internal citation and quotation marks omitted). The Second Circuit set forth a purely hypothetical test—"would have discovered"—not a test based on the investigation the defendant actually did or supposedly failed to do. Fact discovery is not relevant to this hypothetical question if the complaint itself, as here, makes clear the result of the hypothetical. The Amended Complaint alleges that even the SEC, with its awesome investigation and enforcement powers, did not discover the fraud. That is not "pure conjecture." That is the Trustee's allegation, and is indisputably true. Therefore, it is not plausible that an indirect investor such as BSI or BDG, with no leverage over BLMIS, "would have discovered the fraudulent purpose of the transfer." On this point, the Amended Complaint does not state a plausible basis for liability and should be dismissed.[13]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Dated:   September 30, 2022
         New York, New York

/s/ *Adam M. Lavine*

**KOBRE & KIM LLP**
Zachary D. Rosenbaum
Adam M. Lavine
Donna (Dong Ni) Xu
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Zachary.Rosenbaum@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com
*Attorneys for BSI AG*

---

[13] The Trustee's reliance on *Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) is misplaced. Rather than alleging futility, the defendant argued that the existence of red flags was insufficient to trigger inquiry notice because they lacked awareness of Madoff's fraud. In that context, the Court noted that the "*adequacy of an investigation* is 'a fact-intensive inquiry to be determined on a case-by-case basis,'" not that the entire good faith analysis is an issue of fact. *Id.* (quoting *Citibank, N.A.*, 12 F.4th at 195) (emphasis added).

20