Leo Muchnik
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
Email: davisjo@gtlaw.com
Email: alison.holdway@gtlaw.com

*Attorneys for Defendant The Public Institution for Social Security*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                  Plaintiff-Applicant,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | S.D.N.Y. Case No. _____<br><br>Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01002 (SMB) |

Official Form 417A – Notice of Appeal and Statement of Election

|  |
|---|
| Plaintiff, |
| v. |
| THE PUBLIC INSTITUTION FOR SOCIAL SECURITY, |
| Defendant. |

## **NOTICE OF APPEAL**

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):
    The Public Institution for Social Security _____

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject
    of this appeal:

    For appeals in an adversary proceeding.

    ☐ Plaintiff
    ☑ Defendant
    ☐ Other (describe) _____

    For appeals in a bankruptcy case and not in an adversary proceeding.

    ☐ Debtor
    ☐ Creditor
    ☐ Trustee
    ☐ Other (describe) _____

**Part 2:  Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:  Order denying Defendant The
    Public Institution for Social Security's Motion to Dismiss the Complaint under Fed. R. Civ.
    P. 12(b)(1), 12(b)(2), and 12(b)(6).  The Order (Dkt. No. 150) is attached as **Exhibit A**,
    and the Memorandum Decision (Dkt. No. 149) is attached as **Exhibit B**.

2.  State the date on which the judgment, order, or decree was entered:  September 1, 2022

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed form and the names,
addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

Official Form 417A – Notice of Appeal and Statement of Election

| | | | | |
|---|---|---|---|---|
| 1. | Party: | Plaintiff-Appellee IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff | Attorneys: | David J. Sheehan Brian W. Song Ganesh Krishna Ariana Dindiyal BAKER HOSTETLER LLP 45 Rockefeller Plaza New York, New York 10111 Tel.: (212) 589-4200 Fax: (212) 589-4201 dsheehan@bakerlaw.com bsong@bakerlaw.com gkrishna@bakerlaw.com adindiyal@bakerlaw.com |
| 2. | Party: | Defendant-Appellant THE PUBLIC INSTITUTION FOR SOCIAL SECURITY | Attorneys: | Leo Muchnik GREENBERG TRAURIG, LLP One Vanderbilt Avenue New York, New York 10017 Tel.: (212) 801-9200 Fax: (212) 801-6400 muchnikl@gtlaw.com

Joseph P. Davis III (*pro hac vice*) Alison T. Holdway (*pro hac vice*) GREENBERG TRAURIG, LLP One International Place Suite 2000 Boston, Massachusetts 02110 Tel.: (617) 310-6000 Fax: (617) 310-6001 davisjo@gtlaw.com alison.holdway@gtlaw.com |

Official Form 417A – Notice of Appeal and Statement of Election

**Part 4:  Optional election to have appeal heard by district court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

[Not applicable—No Bankruptcy Appellate Panel in this District.]

☐  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:  Sign below**

*/s/ Leo Muchnik*                                      Dated:  October 6, 2022
Signature of attorney for appellant

Name, address, and telephone number of attorney:

Leo Muchnik
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel.:  (212) 801-9200
Fax:  (212) 801-6400
muchnikl@gtlaw.com

Joseph P. Davis III (*pro hac vice*)
Alison T. Holdway (*pro hac vice*)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, Massachusetts 02110
Tel.:  (617) 310-6000
Fax:  (617) 310-6001
davisjo@gtlaw.com
alison.holdway@gtlaw.com

Fee waiver notice:  If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

Official Form 417A – Notice of Appeal and Statement of Election

[**Note to inmate filers**:  If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

Official Form 417A – Notice of Appeal and Statement of Election

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 6 of 106

12-01002-cgm    Doc 154-1    Filed 10/06/22    Entered 10/06/22 17:43:57    Exhibit A:
Order Denying PIFSS Motion to Dismiss    Pg 1 of 3

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01002 (CGM) |
| Plaintiff, | |
| v. | |
| The Public Institution for Social Security, | |
| Defendant. | |

**ORDER DENYING THE PUBLIC INSTITUTION FOR SOCIAL
SECURITY'S MOTION TO DISMISS THE COMPLAINT AND MOTION
TO STRIKE THE DECLARATION OF BRIAN W. SONG**

Defendant the Public Institution for Social Security's ("**Defendant**" or "**PIFSS**") motion to dismiss the Complaint under the Foreign Sovereign Immunities Act, 28 U.S.C. § § 1602-1611, Bankruptcy Rule 7012(b), and Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (the "**Motion to Dismiss**") and Defendant's motion to strike the declaration of Brian W. Song and

all attached exhibits numbered 1 through 13 (the "**Motion to Strike**") came on for hearing before

the Court on July 13, 2022 (the "**Hearing**").  The Court has considered the Motion to Dismiss and

the Motion to Strike, the papers filed in support of and in opposition to the motions, the Complaint,

and the statements of counsel at the Hearing, and the Court has issued a memorandum decision,

dated August 17, 2022, regarding the Motion (the "**Decision**").  For the reasons set forth in the

Decision, **IT IS ORDERED**:

    1.    The Motion to Dismiss the Complaint is denied.

    2.    The Motion to Strike is denied.

    3.    The deadline for Defendant to file an answer to the Complaint is October 14, 2022.

    4.    The Court shall retain jurisdiction to implement or enforce this Order.

/s/ Cecelia G. Morris



**Dated: September 1, 2022**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

# **EXHIBIT B**

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01002 (CGM) |
| v. | |
| The Public Institution for Social Security, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO
DISMISS AND MOTION TO STRIKE**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Brian Song (via Zoom)

*Counsels for Defendant, The Public Institution for Social Security*
Leo Muchnik
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
By:     Joseph P. Davis (via Zoom)
        Alison T. Holdway (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion by the Defendant, the Public Institution for Social

Security ("PIFSS"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  PIFSS seeks dismissal

for lack of subject matter jurisdiction, for lack of personal jurisdiction, for failure to plead a

cause of action due to improper adoption by reference; for failure to state a claim due to the safe

harbor provision of the Bankruptcy Code, and for failure to plead that the transfers from BLMIS

were customer property.  The Defendants further moves to strike the declaration of Brian W.

Song (the "Song Declaration") and all attached exhibits, numbered 1 through 13.  For the reasons

set forth herein, the motion to dismiss and motion to strike are denied in their entirety.

## <u>Jurisdiction</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  Submit

matter jurisdiction and personal jurisdiction have been contested by the Defendant and will be

discussed *infra*.

## **Background**

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on January 5, 2012. Compl., ECF[1] No. 1.  The

Defendant was a government agency of the State of Kuwait responsible for investing the assets

of and administering the Kuwaiti social security system.  *Id.* ¶ 3.  Via the complaint

("Complaint"), the Trustee seeks to recover subsequent transfers made to the Defendant.  *Id.* ¶ 2.

The subsequent transfers were derived from investments with BLMIS made by other funds,

including Fairfield Sentry Limited ("Fairfield Sentry").  *Id.*  These funds are referred to as

"feeder funds" because the intention of the fund was to invest in BLMIS.  *Id.* ¶ 7.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  *Id.* ¶¶ 35, 36.  In 2011, the Trustee settled with Fairfield

Sentry.  *Id.* ¶ 40.  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendant to recover the approximately $3

billion in missing customer property.  The Trustee alleges that the Defendant received

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01002-cgm.

approximately $20,000,000 of funds initially transferred from BLMIS to Fairfield Sentry and

subsequently from Fairfield Sentry to the Defendant.  Compl. ¶ 41, ECF No. 1; Stip., ECF 111

(amending Count One of the Complaint to recovery of one transfer in the amount of

$20,000,000).

## Discussion

**Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over these adversary proceedings pursuant to

28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July

10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition,

the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4),

(*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

The Defendant objects to the Court's subject matter jurisdiction, arguing that it is

immune from liability under the Foreign Sovereign Immunities Act (the "FSIA").  Mot. to

Dismiss, ECF No. 118.  The FSIA, 28 U.S.C. §§ 1602–1611, determines whether a federal court

may exercise jurisdiction over a foreign state.  *Argentine Republic v. Amerada Hess Shipping

Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L. Ed. 2d 818 (1989) ("[T]he FSIA provides

the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.").  A

foreign state is "presumptively immune from the jurisdiction of United States courts; unless a

specified exception applies."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S. Ct. 1471, 1476,

123 L. Ed. 2d 47 (1993).  Where no exception applies, "federal courts lack subject-matter

jurisdiction over claims against foreign states."  *Picard v. Bureau of Labor Ins.* (*In re Bernard L.*

*Madoff*), 480 B.R. 501, 510 (Bankr. S.D.N.Y. 2012) ("*BLI*"). After the Defendant has made a prima facie case that it is a foreign state, the "burden shifts to the plaintiff, who must then produce evidence to demonstrate that immunity should not be granted under exceptions to the FSIA." *Id.* (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993)).

<u>The Defendant is a Foreign State Under the FSIA</u>

The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an "agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). The Trustee has conceded that the Defendant is a foreign state under the FSIA. Compl. ¶ 22; Reply 7, ECF No. 122. The Defendant is presumptively immune from the jurisdiction of this Court. The Trustee argues that the Defendant is nevertheless exempt from immunity under the FSIA's commercial activity exception.

<u>The Commercial Activities Exception to the FSIA Applies</u>

Under 28 U.S.C.A. § 1605, a foreign state is not immune from jurisdiction of the federal courts in cases

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The Defendant argues that only the third and final clause of the exception could apply as it is "undisputed that PIFSS is a foreign governmental agency and that its conduct occurred outside the United States". Mot. to Dismiss, ECF No. 118. The final clause of the commercial activities exception,

> consists of three elements: (1) the operative act (i.e., the gravamen of the complaint) must have occurred outside the United States, (2) the act must have occurred in connection with a commercial activity of the foreign state elsewhere, and (3) the act [must have] cause[d] a direct effect in the United States.

*MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 54 (2d Cir. 2017) (cleaned up).

The gravamen of the complaint is the basis or foundation of a claim, that is, those elements that, if proven, would entitle a plaintiff to relief. *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 107 (2d Cir. 2016). The Defendant and the Trustee agree that the gravamen of the Complaint is PIFSS's receipt of funds due to its subscription into Fairfield Sentry. Mot. at 10, ECF No. 118; Opp'n at 8, ECF No. 122. This conduct occurred outside of the territory of the United States. *Id.* The Trustee has met the first prong of the final clause of the commercial activities exception.

The Act must have occurred in connection with a commercial activity. The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The activity of a foreign state is "commercial" within the meaning of the FSIA "if the sovereign undertakes the act 'not as regulator of a market, but in the manner of a private player within it.'" *MMA Consultants 1, Inc.*, 719 F. App'x at 52 (quoting *Republic of Argentina v. Weltover, Inc.* 504 U.S. 607, 614, 112 S. Ct. 2160, 2166, 119 L. Ed. 2d 394 (1992)). Judge Lifland found a foreign state agency's investment in Fairfield Sentry to be a commercial activity as it "did not involve the use of powers peculiar to sovereigns." *BLI*, 480 B.R. at 512.

The Complaint has alleged that PIFSS entered into subscription agreements with Fairfield Sentry and received subsequent transfers of BLMIS funds through Fairfield Sentry totaling approximately $30,000,000. Compl. ¶¶ 6, 7, 34–42, ECF No. 1. PIFSS was acting as a private player within a market through these actions, not as a regulator of a market. PIFSS does not dispute that the actions are commercial activity as it is used in the FSIA. Rather, PIFSS assumes this second prong arguendo and argues that the complaint should be dismissed for failure to

plead any direct effect in the United States.  The issue then is whether the Trustee has satisfied

the third prong; that is, whether the Defendant's actions had a direct effect in the United States.

Under the third clause of the commercial activities exception, "an effect is direct if it

follows as an immediate consequence of the defendant's ... activity."  *Republic of Argentina,* 504

U.S. at 618 (internal quotation marks omitted); *see also MMA Consultants 1, Inc.*, 719 F. App'x

at 54.  In construing whether the effect constitutes a "direct effect in the United States," the

Court will be mindful of "providing access to the courts to those aggrieved by the commercial

acts of a foreign sovereign."  *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d

300, 312 (2d Cir. 1981) (internal quotation marks omitted) *overruled on other grounds by*

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir.

2009); *see also BLI*, 480 B.R. at 513 (finding that courts in the Second Circuit must liberally

construe what constitutes a "direct effect in the United States").  The effect must be more than

merely "fortuitous or incidental, playing only a tangential role in the lawsuit."  *BLI*, 480 B.R. at

513 (citing *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993)

In *BLI*, Judge Lifland denied a similar motion to dismissed based on a FSIA claim of

immunity.  Judge Lifland found that the *BLI* defendant's actions caused a direct effect in the

United States by "causing a two-way flow of funds" in the "form of subscription and redemption

payments" into BLMIS to invest in the United States and from BLMIS in "the form of profits

from those investments."  *BLI*, 480 B.R. at 513.

The Defendant argues that BLI was overruled by the Supreme Court in *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27, 136 S.Ct. 390, 193 L. Ed. 2d 269 (2015).  This

argument is unavailing.  The Supreme Court, in *OBB Personenverkehr*, examined the first clause

of the commercial activities exception.  *Id.* at 31 n.1 ("As Sachs relies only on the first clause to

establish jurisdiction over her suit, we limit our inquiry to that clause."). The Court determined

that the conduct constituting the gravamen of the personal injury suit against the Austrian state-

owned railway carrier occurred abroad, where the plaintiff fell onto railroad tracks while

attempting to board a train. *Id.* at 35. The Court found that the suit was not based upon the sale

of a Eurail ticket in the United States. *Id.* at 38. The Court did not address or overrule Judge

Lifland's holding in *BLI*.

 Here, the Trustee's Complaint alleges the Defendant's subscription into and redemption

out of Fairfield Sentry. These actions created a two-way flow of funds that had a direct effect in

the United States. As immunity under the FSIA does not apply due to the third clause of the

commercial activities exception, the Court need not consider whether the Defendant's conduct

satisfied the first or second clauses. PIFSS is not entitled to immunity under the FSIA.

**Personal Jurisdiction**

 PIFSS objects to the Trustee's assertion of personal jurisdiction. The Trustee argues in

the Complaint that the Defendant purposefully availed itself of the laws of the United States and

New York by directing funds to be invested with New York-based BLMIS through Fairfield

Sentry, investing in a structured product based on Fairfield Sentry's investment returns through

the Bank of New York, and maintaining regular contact with Fairfield Greenwich Group account

representatives located in New York. Compl. ¶¶ 6–8, ECF No. 1.

 To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

08-01789-cgm   Doc 22384   Filed 10/06/22   Entered 10/06/22 18:12:27   Main Document
Pg 18 of 106

12-01200-cgm   Doc 49-154   Filed 07/20/22   Entered 07/20/22 13:43:57   Main Document
Memorandum Decision   Pg 9 of 28   Pg 10 of 29

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that PIFSS "knowingly directing funds to be invested with New York-based BLMIS." This allegation alone is sufficient to establish a prima facie showing of jurisdiction over the Defendant at the pre-discovery stage of litigation. This was not the only allegation made by the Trustee.

At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *BLI*, 480 B.R. at 516 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the forum
> State or have purposefully directed its conduct into the forum State.  Second, the
> plaintiff's claim must arise out of or relate to the defendant's forum conduct.
> Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

<u>Purposeful Availment</u>

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction."  *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market."  *BLI*, 480 B.R. at 517.

PIFSS argues that the Trustee has failed to allege sufficient minimum contacts with the

United States.  The Complaint suggests otherwise.  In the Complaint, the Trustee alleges that

PIFSS "knowingly directed funds to be invested with New York-based BLMIS through Fairfield

Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry." Compl. ¶ 6, ECF No. 1. The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint); *see, e.g.* Song Decl., Fairfield Sentry Information Memo., ECF No. 123, Ex. 1 ("The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM'), a registered broker-dealer in New York, New York, which employs an options trading strategy described as 'split strike conversion.'").

The Trustee has submitted additional evidence in response to the motion to dismiss. Attached as exhibits to the Song Declaration, the Trustee has provided evidence that PIFSS bank accounts in New York to send subscription payments to Fairfield Sentry totaling $5,000,000. Song Decl., Ex. 3. PIFSS used correspondent accounts in New York to send subscription payments totaling $15,000,000 and receive subsequent transfers totaling $20,000,000. Song Decl., Ex. 2. PIFSS's offshore subsidiary, Wafra, met with representatives of the Fairfield Greenwich Group at Fairfield's offices in New York to discuss investment with Fairfield Sentry. Song Decl., Ex. 10. These allegations are sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013).

The Defendant has moved to strike the Song Declaration and all attached exhibits. As will be discussed below, the Court will deny the Defendant's motion to strike. Nevertheless,

even without the Song Declaration and attached exhibits, the Trustee has sufficiently plead

allegations supporting jurisdiction over the Defendant.

<u>Arise Out of or Relate to the Defendant's Forum Conduct</u>

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against Defendant for monies it

received from the Fairfield Sentry. Compl. ¶¶ 44–47, ECF No. 1. These allegations are directly

related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).  The suit is affiliated with the alleged in-state

conduct.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Reasonableness

      Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted).  Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

      The exercise of jurisdiction is reasonable.  The Defendant is not burdened by this

litigation. Defendant has actively participated in this Court's litigation for over ten years.  It is

represented by highly competent U.S. counsel, filed a claim in this SIPA litigation, and

submitted to the jurisdiction of New York courts' when it signed its subscription agreements

with Fairfield Sentry.  The forum and the Trustee both have a strong interest in litigating BLMIS

adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re*

*BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard*

*v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec.*

*Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich*

*Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re*

*Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in

allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfer at issue in this Case.

### 12(b)(6) Standard

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover the subsequent transfer of approximately $20 million

made in 2004 to PIFSS by Fairfield Sentry ("Count One").

Count One: Recovery of Subsequent Transfers

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is avoided
under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may
recover, for the benefit of the estate, the property transferred, or, if the court so
orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such transfer
was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, (*In re

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 35, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy

trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a

trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.

Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,

the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad*

*Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

<u>Adoption by Reference of the Fairfield Amended Complaint</u>

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*,

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re*

*Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

08-01789-cgm     Doc 22384     Filed 10/06/22     Entered 10/06/22 18:12:27     Main Document
Pg 27 of 106

12-01202-cgm   Doc 49-1   Filed 07/20/20   Entered 07/20/20 13:43:57   Main Document
Memorandum Decision   Pg 18 of 28   Pg 19 of 29

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results.  *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).  That is not a

concern in these proceedings.  PIFSS, like many subsequent transfer defendants in this SIPA

proceeding, is uniquely aware of what has been filed in the other adversary proceeding in this

SIPA liquidation.   It routinely follows what is happening on a proceeding-wide basis.  *See* Stip.,

ECF No. 97 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice the Defendant.  On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

　　　　Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's

knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also*

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

<u>BLMIS Customer Property</u>

　　　　The Trustee has pleaded that "[b]ased on the Trustee's investigation to date,

approximately $30,00,000 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Defendant PIFSS."  Compl. ¶ 41, ECF No. 1.

The parties later stipulated to dismissing recovery of one transfer in the amount of $10,000,000.

Stip., ECF 111.

　　　　The exhibits attached to the Complaint provide PIFSS with the "who, when, and how

much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018); Compl., ECF No. 1, Ex. C (indicating the transfer in question occurred on

January 21, 2004); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent

transfers.).  The Fairfield Amended Complaint, which is incorporated by reference into this,

alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  Fairfield

Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's

requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment

decisions, but also the custody of its assets, to BLMIS."). The Trustee need not prove the path

that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming

shareholder. The Complaint plausibly alleges that Fairfield Sentry did not have any assets that

were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that PIFSS received customer property because Fairfield Sentry

did not have other property to give. The calculation of Fairfield Sentry's customer property and

what funds it used to make redemption payments are issues of fact better resolved at a later stage

of litigation.

## Section 546(e)

The Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the

Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a

transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial

institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. §

546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard

v. BNP Paribas S.A. (In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis

added). However, where the initial transferee fails to raise a § 546(e) defense against the

Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled

to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund (In re*

*BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 32 of 106

12-01200-cgm    Doc 49154-1    Filed 07/22/22    Entered 07/22/22 13:43:57    Main Document
Memorandum Decision Pg 23 of 28    Pg 24 of 29

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

    This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated*

*Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under

a separate securities contract" this Court was directed to "adjudicate those claims in the first

instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,

Ex. A at 24.

    This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint

are sufficient to survive a Rule 12(b)(6) motion on this issue.

<u>The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer</u>

The Defendant argues that the safe harbor prevents the Trustee from avoiding the

subsequent transfer between Fairfield Sentry and PIFSS on account of the securities contract

between Fairfield and the Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

The Defendant's reliance on *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11

U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

("Cohmad") is unavailing.  In *Cohmad*, Judge Rakoff clearly laid out the "one caveat" to the

general rule that the Trustee must show "the initial transfer of . . . by the debtor is subject to

avoidance under one of the Bankruptcy Code's avoidance provisions."  *Id.*  That is, a subsequent

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 34 of 106

12-01200-cgm    Doc 4154-2    Filed 08/17/20    Entered 08/17/20 21:43:57    Main Document
Memorandum Decision    Pg 25 of 28    Pg 26 of 29

transferee with actual knowledge of the fraud "cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* This caveat only pertains to a subsequent transferee with actual knowledge. It is the "one caveat." *Id. Cohmad* did not "leave open" any additional caveats to subsequent transferees who lack actual knowledge.

The Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[2] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendant. *Fairfield III* is not applicable here.

---

[2] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**The Motion to Strike**

The Defendant seeks to strike the declaration by Brian Song and the attached exhibits for lacking a basis in personal knowledge, lacking foundation, hearsay, failure to authenticate, and lack of relevance. The Court of Appeals for the Second Circuit has "long made clear" that a court has "considerable procedural leeway" in deciding a pretrial motion to dismiss for lack of personal jurisdiction. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). The Court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

It is only after discovery that the prima facie showings should be factually supported with admissible evidence. *Id.*; *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 121 (S.D.N.Y. 2020) "[A] court, in resolving a Rule 12(b)(2) motion ***made after jurisdictional discovery***, may consider only admissible evidence.") (emphasis added). Even at that later stage, the Court may consider evidence that is not presented in admissible form. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (rejecting the argument that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment").

The Defendant has not shown that the exhibits are ultimately inadmissible. Arguments as
to the lack of foundation and hearsay nature of the exhibits are premature.

At this stage of the proceedings, counsel may submit a sworn statement including facts
and exhibits. *Knowyourmeme.com Network v. Nizri*, No. 20-CV-9869 (GBD) (JLC), 2021 WL
3855490, at *9 (S.D.N.Y. Aug. 30, 2021); *see also Kulhawik v. Holder*, 571 F.3d 296, 298 (2d
Cir. 2009) ([W]hen an attorney makes statements under penalty of perjury in an affidavit or an
affirmation, the statements do constitute part of the evidentiary record and must be considered.").
"While bone fide evidentiary objections can and should be considered at the summary judgment
stage . . . the fact that documents were attached to an attorney declaration without a supplemental
affidavit by a document custodian or another with knowledge does not make them inadmissible
for that reason." *Ball v. Soundview Composite Ltd.* (*In re Soundview Elite Ltd.*), 543 B.R. 78,
100 (Bankr. S.D.N.Y. 2016).

The Defendant has not challenged the ultimate credibility of the Song Declaration and
attached exhibits. The Court will not strike any part of the Song Declaration or attached exhibits
for lack of authentication.

While personal jurisdiction can be established from the Complaint alone, the Song
Declaration and attached exhibits are relevant to the Trustee's claims. Evidence is relevant where
"it has any tendency to make a fact more or less probable than it would be without the evidence"
and where "the fact is of consequence in determining the action." Fed. R. Evid. 401. "When
sought to expunge irrelevant factual matters, a strike motion will not be granted unless those
matters have no clear bearing on the issues in dispute." *Yankees Entm't & Sports Network, LLC
v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 676 (S.D.N.Y. 2002) (citing *Reiter's Beer
Distributors, Inc. v. Schmidt Brewing Co.*, 657 F. Supp. 136, 143 (E.D.N.Y. 1987) ("Motions to

strike are generally disfavored and will not be granted unless the matter asserted clearly has no

bearing on the issue in dispute.”))

The exhibits attached to the Song Declaration may bear on the issues in dispute.  The

exhibits contain information that investors in Fairfield Sentry were given (Song Decl., Ex. 1);

records of PIFSS's subscriptions and redemptions with Fairfield Sentry (Ex. 2–6); and emails

showing meetings between the Fairfield Greenwich Group and PIFSS or its subsidiary, Wafra.

(Ex. 7–13).  These matters are closely related to establishing personal jurisdiction over the

Defendant.

The Trustee has made sufficient allegations concerning personal jurisdiction in the

Complaint.  Compl., ECF No. 1.  While these allegations are sufficient by themselves to

establish jurisdiction, the Trustee has provided further allegations in the opposition to the motion

to dismiss with the Song Declaration and attached exhibits.  Opp'n, ECF No. 122; Song Decl.,

ECF No. 123. The Court will not strike the Song Declaration or attached exhibits.

## Conclusion

For the foregoing reasons, PIFSS's motion to dismiss and motion to strike are denied.

The Trustee shall submit a proposed order within fourteen days of the issuance of this decision,

directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required

by Local Bankruptcy Rule 9074-1(a).

**Dated: August 17, 2022**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

JS 44C/SDNY
REV.
10/01/2020

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS
IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC

DEFENDANTS
THE PUBLIC INSTITUTION FOR SOCIAL SECURITY

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
Brian W. Song (bsong@bakerlaw.com)
Baker Hostetler LLP
45 Rockefeller Plaza, New York, NY 10111, Tel.: (212) 589-4200

ATTORNEYS (IF KNOWN)
Leo Muchnik (muchnikl@gtlaw.com)
Greenberg Traurig, LLP
One Vanderbilt Avenue, New York, NY 10017, Tel.: (212) 801-9200

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 158 -- Appeal from Bankruptcy Court's denial of motion to dismiss adversary proceeding

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ☐ Yes ☑    Judge Previously Assigned

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☒ Yes ☐ If yes, give date _____ & Case No. 12-mc-115

Hon. Jed. S. Rakoff

Is this an international arbitration case? No ☐ Yes ☐

(PLACE AN [x] IN ONE BOX ONLY)    NATURE OF SUIT

| TORTS | | | | | |
|---|---|---|---|---|---|
| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
| [ ] 110  INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | [x] 422 APPEAL 28 USC 158 | [ ] 375 FALSE CLAIMS |
| [ ] 120  MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 376 QUI TAM |
| [ ] 130  MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY | [ ] 690 OTHER | | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 140  NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | | PROPERTY RIGHTS | [ ] 410 ANTITRUST |
| [ ] 150  RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | PERSONAL PROPERTY | | [ ] 820 COPYRIGHTS | [ ] 430 BANKS & BANKING |
| | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | | [ ] 830 PATENT | [ ] 450 COMMERCE |
| [ ] 151  MEDICARE ACT | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION | [ ] 880 DEFEND TRADE SECRETS ACT |
| [ ] 152  RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | | | [ ] 840 TRADEMARK | [ ] 460 DEPORTATION |
| [ ] 153  RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | LABOR | SOCIAL SECURITY | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 861 HIA (1395ff) | [ ] 480 CONSUMER CREDIT |
| [ ] 160  STOCKHOLDERS SUITS | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 862 BLACK LUNG (923) | [ ] 485 TELEPHONE CONSUMER PROTECTION ACT |
| [ ] 190  OTHER CONTRACT | | PRISONER PETITIONS | [ ] 740 FAIR LABOR ACT | [ ] 863 DIWC/DIWW (405(g)) | [ ] 490 CABLE/SATELLITE TV |
| [ ] 195  CONTRACT PRODUCT LIABILITY | ACTIONS UNDER STATUTES | [ ] 463 ALIEN DETAINEE | [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA) | [ ] 864 SSID TITLE XVI | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 196  FRANCHISE | CIVIL RIGHTS | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | [ ] 865 RSI (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| | | [ ] 530 HABEAS CORPUS | [ ] 790 OTHER LABOR LITIGATION | FEDERAL TAX SUITS | [ ] 891 AGRICULTURAL ACTS |
| | [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | [ ] 535 DEATH PENALTY | [ ] 791 EMPL RET INC SECURITY ACT (ERISA) | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 893 ENVIRONMENTAL MATTERS |
| REAL PROPERTY | [ ] 441 VOTING | [ ] 540 MANDAMUS & OTHER | | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 210  LAND CONDEMNATION | [ ] 442 EMPLOYMENT | | IMMIGRATION | | [ ] 896 ARBITRATION |
| [ ] 220  FORECLOSURE | [ ] 443 HOUSING/ ACCOMMODATIONS | PRISONER CIVIL RIGHTS | [ ] 462 NATURALIZATION APPLICATION | | [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION |
| [ ] 230  RENT LEASE & EJECTMENT | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 550 CIVIL RIGHTS | [ ] 465 OTHER IMMIGRATION ACTIONS | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 240  TORTS TO LAND | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 555 PRISON CONDITION | | | |
| [ ] 245  TORT PRODUCT LIABILITY | [ ] 448 EDUCATION | [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT | | | |
| [ ] 290  ALL OTHER REAL PROPERTY | | | | | |

Check if demanded in complaint:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 20,000,000    OTHER _____

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE Hon. Jed. S. Rakoff    DOCKET NUMBER 12-mc-115 and 22-cv-6502-JSR; 22-cv-6512-JSR; 22-cv-7195-JSR; 22-cv-7189-JSR; 22-cv-7173-JSR; 22-cv-7372-JSR; 22-cv-7788-JSR; 22-cv-6561-LGS

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

12-01002-cgm    Doc 154-3    Filed 10/06/22    Entered 10/06/22 17:43:57    Civil Cover
Sheet    Pg 2 of 2

## ORIGIN

*(PLACE AN x IN ONE BOX ONLY)*

[x] 1 Original Proceeding   [ ] 2 Removed from State Court   [ ] 3 Remanded from Appellate Court   [ ] 4 Reinstated or Reopened   [ ] 5 Transferred from (Specify District)   [ ] 6 Multidistrict Litigation (Transferred)   [ ] 7 Appeal to District Judge from Magistrate Judge

[ ] a. all parties represented

[ ] b. At least one party is pro se.

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)* — **BASIS OF JURISDICTION** — *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [x] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [ ] 4 DIVERSITY

### CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Irving H. Picard, Trustee for the Liqudation of Bernard L. Madoff Investment Securities LLC and the
Chapter 7 Estate of Bernard L. Madoff
c/o Baker & Hostetler LLP
45 Rockefeller Plaza, New York, NY 10111

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

The Public Institution for Social Security
Al Murqab - Block 1 - Al Soor Street
Kuwait City, Kuwait

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN
THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

### COURTHOUSE ASSIGNMENT

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [x] MANHATTAN

/s/ Leo Muchnik

DATE 10/6/2022

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED Mo. April   Yr. 2013   )
Attorney Bar Code # LM1219

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

IH-32                                                                      Rev: 2014-1

# United States District Court
### for the
## Southern District of New York
## Related Case Statement

---

### Full Caption of Later Filed Case:

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC

| | Case Number |
|---|---|
| Plaintiff | |
| | Bankruptcy Court Adv. Pro. No. 12-01002 |
| vs. | |
| THE PUBLIC INSTITUTION FOR SOCIAL SECURITY | |
| | |
| Defendant | |

### Full Caption of Earlier Filed Case:

(including in bankruptcy appeals the relevant adversary proceeding)

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC

| | Case Number |
|---|---|
| Plaintiff | |
| | |
| vs. | 12-mc-115; |
| (1) Bernard L. Madoff Investment Securities LLC (12-mc-115); | 22-cv-6502-JSR (Adv. Pro. No. 12-01205); |
| (2) Multi-Strategy Fund Ltd (22-cv-6502-JSR (Adv. Pro. No. 12-01205)); | 22-cv-6512-JSR (Adv. Pro. No. 12-02149); |
| (3) Banque Syz & Co., SA (22-cv-6512-JSR (Adv. Pro. No. 12-02149)); | 22-cv-7195-JSR (Adv. Pro. No. 12-01695); |
| (4) Bordier & Cie (22-cv-7195-JSR (Adv. Pro. No. 12-01695)); | 22-cv-7189-JSR (Adv. Pro. No. 12-01694); |
| (5) Banque Catonale Vaudoise (22-cv-7189-JSR (Adv. Pro. No. 12-01694)); | 22-cv-7173-JSR (Adv. Pro. No. 12-01207); |
| (6) Lloyds TSB Bank PLC (22-cv-7173-JSR (Adv. Pro. No. 12-01207)); | 22-cv-7372-JSR (Adv. Pro. No. 12-02569); |
| (7) Barclays Bank (Suisse) S.A. (22-cv-7372-JSR (Adv. Pro. No. 12-02569)); | 22-cv-7788-JSR (Adv. Pro. No. 11-02551); |
| (8) Delta National Bank and Trust (22-cv-7788-JSR (Adv. Pro. No. 11-02551)); | 22-cv-6561-LGS (Adv. Pro. No. 12-01693) |
| (9) Banque Lombard Odier & Cie SA (22-cv-6561-LGS (Adv. Pro. No. 12-01693)) | |
| Defendant | |

IH-32                                                                                          Rev: 2014-1

Status of Earlier Filed Case:

☐  Closed          (If so, set forth the procedure which resulted in closure, e.g., voluntary
                   dismissal, settlement, court decision.  Also, state whether there is an appeal
                   pending.)

☑  Open            (If so, set forth procedural status and summarize any court rulings.)

Case (1) is a closed case in which Judge Rakoff withdrew the reference to the Bankruptcy Court in related
adversary proceedings brought by Irving Picard as trustee for the liquidation of Bernard L. Madoff Investment
Securities LLC ("Trustee"). Judge Rakoff issued a decision (2013 WL 1609154 (Apr. 15, 2013) ("Cohmad")) re:
the application of Bankruptcy Code § 546(e). Cases (2)-(8) are open cases that, like this appeal, directly relate
to Bankruptcy Court's interpretation of Cohmad. These cases, all assigned to Judge Rakoff, have pending
motions for leave to appeal Bankruptcy Court orders filed by defendants in adversary proceedings brought by
Trustee. Case (9) is an open case in which, like in this appeal, a defendant in an adversary proceeding brought
by Trustee is seeking to appeal the Bankruptcy Court's holding that it has personal jurisdiction.

Explain in detail the reasons for your position that the newly filed case is related to the
earlier filed case.

The newly filed case is an appeal from a September 2022 order of the Bankruptcy Court in a Madoff adversary
proceeding for which the reference to the Bankruptcy Court was previously withdrawn,  assigned to Judge
Rakoff in the District Court, and then returned to the Bankruptcy Court with instructions from Judge Rakoff in
the Cohmad case identified above.

This appeal presents two jurisdictional issues and one issue concerning the standard for an affirmative
defense:  (a) whether the Bankruptcy Court erred in holding that Defendant The Public Institution for Social
Security ("PIFSS"), an agency of the government of Kuwait, is not immune from suit under the Foreign
Sovereign Immunities Act ("FSIA"); (b) whether the Bankruptcy Court erred in finding that PIFSS is subject to
the court's personal jurisdiction; and (c) whether the Bankruptcy Court erred in its application of Judge
Rakoff's decision in Cohamd.

As to the jurisdictional issues (Issues (a) and (b)):

Issue (a): The issue of whether the Bankruptcy Court erred in finding it has subject matter jurisdiction based
on its analysis PIFSS' right to sovereign immunity under the FSIA is unique to this case.

Issue (b): This case presents the same legal issue that was raised in the motion for leave to appeal filed in
Case (9), which asks whether the Bankruptcy Court erred in its application of recent Supreme Court precedent
setting forth the standard for assessing the sufficiency of a defendant's contacts with the forum when
analyzing personal jurisdiction. Case (9) has already been assigned to Judge Schofield.

As to PIFSS' defense under Section 546(e), Issue (c): This case presents the same legal issue that was raised
in the motions for leave to appeal filed in Cases (2)-(8). This appeal requires the District Court to interpret
Judge Rakoff's decision in Cohmad and, consequently, Cases (2)-(8) have already been assigned to Judge
Rakoff. A hearing is scheduled on the motions for leave to appeal on October 13, 2022 before Judge Rakoff.

Signature:  __/s/ Leo Muchnik_____          Date: __10/6/2022_____

Firm:       Greenberg Traurig, LLP
            _____

Leo Muchnik
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone:  (212) 801-6826
Facsimile:  (212) 801-6400
Email:    muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone:  (617) 310-6000
Facsimile:  (617) 310-6001
Email:    davisjo@gtlaw.com
Email:    Alison.Holdway@gtlaw.com

*Attorneys for Defendant The Public Institution for Social Security*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | S.D.N.Y. Case No. _____ |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

<table>
<tr><td>

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC, and
Bernard L. Madoff,

         Plaintiff,

v.

THE PUBLIC INSTITUTION FOR
SOCIAL SECURITY,

         Defendant.

</td><td>

Adv. Pro. No. 12-01002 (CGM)

</td></tr>
</table>

## DEFENDANT THE PUBLIC INSTITUTION FOR
## <u>SOCIAL SECURITY'S MOTION FOR LEAVE TO APPEAL</u>

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Defendant The Public Institution for Social Security, by and through its undersigned counsel, states that it is governmental institution of the State of Kuwait.


Dated: October 6, 2022


/s/ *Leo Muchnik*
Leo Muchnik

i

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ..................................................... i

**TABLE OF AUTHORITIES** ................................................................... iii

**STATEMENT REGARDING ORAL ARGUMENT** ........................................... v

**PRELIMINARY STATEMENT** ........................................................... 2

**QUESTIONS PRESENTED** ................................................................. 4

**RELEVANT BACKGROUND** ............................................................... 5

**RELIEF SOUGHT** ............................................................................ 8

**ARGUMENT** ................................................................................... 8

    **A.**    **The Bankruptcy Court's Ruling that PIFSS Is Not Entitled to Sovereign Immunity Under the FSIA Is Immediately Appealable.** ........ 8

        1.    Alternatively, the Court Should Grant Leave to Appeal the Order Denying PIFSS' FSIA Immunity. ............................................... 10

    **B.**    **The Court Should Grant Leave to Appeal the Finding that PIFSS Is Subject to Personal Jurisdiction.** ............................................... 15

        1.    The Appeal Presents a Controlling Question of Law........................... 15

        2.    Substantial Ground for Difference of Opinion Exists as to Whether PIFSS Can Be Subjected to the Bankruptcy Court's Jurisdiction........ 17

        3.    Resolution on Appeal Materially Advances the Litigation. ................. 20

    **C.**    **The Court Should Grant Leave to Appeal the Bankruptcy Court's Misapplication of *Cohmad*.** ............... 20

**CONCLUSION** ................................................................................ 21

**CERTIFICATE OF COMPLIANCE** ....................................................... 23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987)......................................................................................20

*Bilello v. JPMorgan Chase Ret. Plan*,
    603 F. Supp. 2d 590 (S.D.N.Y. 2009) ...........................................................12

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine,*
    *Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997) ..........14

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) ..............................16

*EM Ltd. v. Banco Central De La Republica Argentina*,
    800 F.3d 78 (2d Cir. 2015) ..............................................................................9

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69 (2d Cir. 2009).......................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)............18

*In re Fairfield Sentry Ltd. Litig.*,
    458 B.R. 665 (S.D.N.Y. 2011) .................................................... 10, 11, 13, 15

*Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238 (2d Cir. 2006)...............9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
    *Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990)................ 15, 16

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ................................. 12, 13

*Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018) ............................................................................9

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...........................................................19

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................... 12, 13, 17, 19

*Picard v. Fairfield Inv. Fund (In re BLMIS)*, Adv. No. 09-01239,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)......................................8

*Primavera Familienstifung v. Askin*,
139 F. Supp. 2d 567 (S.D.N.Y. 2001) ...................................................... 15, 20

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ...................12

*Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131 (2d Cir. 2012)............................9

*Sec. Inv. Prot. Corp. v. Berarnd L. Madoff Inv. Sec. LLC*
    *(In re Madoff Sec.)*, No. 12 MC 115 (JSR),
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................. 1, 4, 8, 20

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .............................................................18

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    690 F. Supp. 170 (S.D.N.Y. 1987) .....................................................10

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................... 18, 19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).......................18

*Worms v. State Corp. "Deposit Ins. Agency"*, 20-CV-3505,
    2021 WL 706550 (S.D.N.Y. Feb. 22, 2021) ...................................................9

**Statutes**

11 U.S.C. § 546(e) ........................................................................ 1, 20

28 U.S.C. § 158(a)(1).........................................................................1, 9

28 U.S.C. § 158(a)(3)........................................................................ 1, 10

28 U.S.C. § 1291 ...............................................................................9

28 U.S.C. § 1292(b) ..................................................................... 10, 11

28 U.S.C. § 1605(a)(2).................................................................. 2, 7, 13

**Rules**

Fed. R. Bankr. P. 8004 ........................................................................1

iv

## STATEMENT REGARDING ORAL ARGUMENT

Defendant The Public Institution for Social Security supports oral argument to the extent that the Court deems it helpful in assessing the issues raised in this motion for leave to appeal.

Defendant The Public Institution for Social Security ("PIFSS"), a governmental agency of Kuwait, hereby moves pursuant to 28 U.S.C. § 158(a)(1), (3) and Fed. R. Bankr. P. 8004 for leave to appeal from an order ("Order") of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") denying PIFSS' motion to dismiss the Complaint (ECF No. 1) of plaintiff Irving H. Picard ("Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").[1] PIFSS seeks to appeal three rulings in the Order: (1) that PIFSS is not entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), (2) that PIFSS is subject to the court's personal jurisdiction, and (3) that this Court's decision in *In re Madoff Sec.*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") bars PIFSS, a subsequent transferee, from invoking the Bankruptcy Code Section 546(e) safe harbor defense because the initial transferee allegedly knew that BLMIS was not selling securities even though PIFSS was unaware.

---

[1] "ECF No. __" refers to filings on the Bankruptcy Court docket in Adversary Proceeding No. 12-01002.

The Order (ECF No. 150) was entered on September 1, 2022; a copy is attached hereto as **Exhibit A**. The Bankruptcy Court entered its Memorandum of Decision (ECF No. 149) on August 17, 2022; a copy is attached hereto as **Exhibit B**. On September 12, 2022, the Bankruptcy Court entered an order (ECF No. 153) extending PIFSS' time to file its notice of appeal and any motion required under 28 U.S.C. § 158 to October 6, 2022.

1

## PRELIMINARY STATEMENT

It is undisputed that PIFSS is a "foreign state" under the FSIA and presumptively immune from suit. PIFSS is the governmental agency that manages Kuwait's social security program. It provides Kuwaitis with sustainable insurance and social services, ensuring that Kuwaitis have a decent living and long-term benefits.

PIFSS invested with Fairfield Sentry Limited ("Sentry"), a British Virgin Islands entity. Sentry, in turn, allocated its assets to an account with BLMIS, and BLMIS managed the account and executed investment strategies. Although PIFSS fell victim to Madoff's Ponzi scheme, Trustee sued PIFSS and seeks to recover a single $20 million transfer from Sentry because the proceeds allegedly constitute BLMIS customer property.

First, even though PIFSS is a foreign state, the Bankruptcy Court held that PIFSS was not immune from suit because the third clause of the commercial activity exception under 28 U.S.C. § 1605(a)(2)—which permits suit against a foreign state based upon an act taken by the foreign state in connection with commercial activity abroad that has a direct effect in the U.S.—applied. The Bankruptcy Court found that PIFSS' subscription into and redemption out of Sentry was commercial activity outside the U.S. that caused a direct effect in the U.S. because of the two-way flow of funds between BLMIS, a New York entity, and Sentry. In reaching this

2

conclusion, the Bankruptcy Court applied the wrong legal standard, choosing to follow the decision by another bankruptcy court rather than more recent Supreme Court precedent. As discussed below, application of the FSIA is an issue of subject matter jurisdiction and the collateral order doctrine permits direct appeal of the Bankruptcy Court's FSIA holding.

Second, the Bankruptcy Court adopted an unprecedented test for personal jurisdiction. The Bankruptcy Court determined it had personal jurisdiction over PIFSS despite the absence of any well-pled U.S. contacts *by PIFSS*. Instead, the Bankruptcy Court adopted a broad and erroneous standard that allegations of PIFSS' investments in Sentry, a foreign fund, outside the U.S. constituted contacts with the U.S. because PIFSS allegedly knew that Sentry would invest with BLMIS in the U.S. This Court should grant leave for PIFSS to appeal that decision, which conflicts with Supreme Court precedent instructing courts to consider only the defendant's claim-related contacts with the forum and disregard third-party contacts. Resolving the personal jurisdictional question would advance this adversary proceeding and conserve resources by providing appellate guidance on this potentially dispositive issue.

Third, the Bankruptcy Court misapplied this Court's holding in *Cohmad*. There, the Court held that a transferee's actual knowledge of Madoff's fraud precluded *that transferee*, initial or subsequent, from invoking Section 546(e). 2013

3

WL 1609154, at *4, *7. The Court also held that Section 546(e) could shield an initial transfer from BLMIS if it was made on account of a securities contract between the initial and subsequent transferees. *Id.* at *9. The Bankruptcy Court, citing *Cohmad*, erred by holding that Sentry's (the initial transferee) knowledge of BLMIS' fraud barred PIFSS from invoking Section 546(e). Decision at 21–23. *Cohmad*, however, did not address the applicability of Section 546(e) to an innocent subsequent transferee (PIFSS) asserting the defense to an initial transfer when the initial transferee (Sentry) failed to raise it. *Cohmad*, 2013 WL 1609154, at *1, *9– 10.

This Court should grant leave for PIFSS to appeal the Bankruptcy Court's interpretation of *Cohmad*. This is a controlling question of law about which there is substantial ground for difference in opinion, whose resolution in PIFSS' favor would result in the termination of this and dozens of subsequent transferee actions Trustee brought against Sentry's investors.

## QUESTIONS PRESENTED

1.    Whether the Bankruptcy Court erred in holding that it had subject matter jurisdiction pursuant to the third clause of the FSIA's commercial activity exception.

2.    Whether the Bankruptcy Court erred in holding that PIFSS is subject to personal jurisdiction in the United States.

3.      Whether the Bankruptcy Court erred in interpreting *Cohmad* to bar a

subsequent transferee from asserting a Section 546(e) defense if the initial transferee

is alleged to have had actual knowledge of Madoff's fraud, even though the

subsequent transferee is not alleged to have had such knowledge and/or where the

initial transfer was on account of a separate securities contract between the initial

and subsequent transferees.

## RELEVANT BACKGROUND[2]

On January 5, 2012, Trustee filed the Complaint against PIFSS for recovery

pursuant to Section 550(a) of the Bankruptcy Code. Compl. ¶ 47. Trustee alleges

that PIFSS was a subsequent transferee of purported BLMIS customer property. *Id.*

¶¶ 4, 46. The Complaint contains minimal allegations specific to PIFSS, instead

focusing almost entirely on Madoff's Ponzi scheme. The Complaint contains no

allegation that PIFSS had knowledge of Madoff's fraud.

The Complaint seeks to recover two transfers that PIFSS purportedly received

from Sentry: (i) $10 million on April 14, 2003, and (ii) $20 million on January 21,

2004. Compl. ¶ 2, at Ex. C. Trustee dismissed with prejudice his claim regarding the

$10 million transfer because he failed to plead that there was an initial, avoidable

---

[2] For purposes of this Motion only, PIFSS takes the Complaint's factual
allegations—but not legal or boilerplate conclusions couched as factual
allegations—as true. PIFSS does not admit factual allegations and reserves all rights
to contest any such factual allegations that are false or inaccurate at the appropriate
stage of the case.

transfer from BLMIS to Sentry. ECF No. 111. Accordingly, the remaining claim

relates to only the $20 million transfer ("Transfer").

On February 25, 2022, PIFSS moved to dismiss the Complaint under Fed. R.

Civ. P. 12(b)(1), (b)(2), and (b)(6) ("Motion to Dismiss"). ECF Nos. 116–118.

Among other arguments, PIFSS argued:

- the Bankruptcy Court lacked subject matter jurisdiction as PIFSS, a
  Kuwaiti governmental agency, is immune from suit under the FSIA, *see*
  Memorandum of Law ("MOL"), ECF No. 118, at 8–11;

- the Bankruptcy Court lacked personal jurisdiction because PIFSS did not
  have sufficient minimum contacts with the U.S., *see id*. at 12–22; and

- Section 546(e)'s safe harbor applied to the initial transfers from BLMIS to
  Sentry, meaning that the Transfer was shielded from recovery, *see id*. at
  27–34.

On April 26, 2022, Trustee filed an opposition and a supporting declaration

from Attorney Brian W. Song with 13 exhibits ("Song Declaration and Exhibits").

ECF Nos. 122 and 123, respectively. On May 26, 2022, PIFSS moved to strike the

Song Declaration and Exhibits ("Motion to Strike"), ECF Nos. 129–130, which the

Bankruptcy Court denied, ECF Nos. 149–150.

On August 17, 2022, the Bankruptcy Court denied PIFSS' Motion to Dismiss

and Motion to Strike ("Decision"). ECF No. 149. As to the FSIA, the Bankruptcy

Court found that third clause of the commercial activity exception applied. Under

that clause, a foreign state is not immune from suit when the action is (1) based upon

on an act outside the territory of the U.S., (2) taken in connection with commercial

activity of the foreign state elsewhere, and (3) that that act caused a direct effect in the U.S. *See* 28 U.S.C. § 1605(a)(2). The Bankruptcy Court determined that PIFSS' subscription into and redemption out of Sentry was commercial activity outside the U.S. that caused a direct effect in the U.S. as the transaction was a two-way funds flow between Sentry and BLMIS. Decision at 7–8. Thus, the Bankruptcy Court held that PIFSS was not immune from suit.

Regarding personal jurisdiction, the Bankruptcy Court held that Trustee sufficiently alleged that PIFSS purposefully availed itself of the privilege of conducting business in the U.S. *Id.* at 9–14. The Bankruptcy Court primarily relied on an allegation in the Complaint that PIFSS "knowingly directed funds to be invested with" BLMIS, stating that this allegation "alone is sufficient to establish a prima facie showing of jurisdiction." *Id.* at 9.[3]

Finally, the Bankruptcy Court held that Section 546(e) did not apply because it had previously "determined that the Fairfield Amended Complaint contains sufficient allegations of [] Sentry's actual knowledge [of Madoff's fraud] to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Id.* at 21–23 (citing *Picard v. Fairfield Inv. Fund (In re BLMIS)*, Adv. No. 09-01239, 2021 WL 3477479 (Bankr.

---

[3] The Bankruptcy Court also noted that the Song Declaration and Exhibits evidenced connections with New York but explained that "even without the Song Declaration and attached exhibits, the Trustee has sufficiently plead allegations supporting jurisdiction" over PIFSS. Decision at 11–12.

S.D.N.Y. Aug. 6, 2021)). The Bankruptcy Court stated that this Court in *Cohmad*

"determined that 'those defendants who claim the protections of Section 546(e)

through a Madoff Securities account agreement but who actually knew that Madoff

Securities was a Ponzi scheme are not entitled to the protections of the

Section 546(e) safe harbor, and their motions to dismiss Trustee's claims on this

ground must be denied.'" Decision at 23 (quoting *Cohmad*, 2013 WL 1609154, at

*10). The Bankruptcy Court did *not* address PIFSS' arguments that (a) *Cohmad*

requires courts to look to the alleged knowledge of the transferee raising the safe

harbor, and (b) Sentry's Articles of Association, which governed the Transfer,

constitutes a separate securities contract independently sufficient to bring the

Transfer within the safe harbor.

On September 1, 2022, the Bankruptcy Court entered the Order denying the

Motion to Dismiss and Motion to Strike.

On October 6, 2022, PIFSS timely filed a notice of appeal and this Motion.

## RELIEF SOUGHT

PIFSS requests leave to appeal the Order denying its Motion to Dismiss.

## ARGUMENT

### A.    The Bankruptcy Court's Ruling that PIFSS Is Not Entitled to Sovereign Immunity Under the FSIA Is Immediately Appealable.

The Bankruptcy Court's denial of sovereign immunity to PIFSS under the

FSIA is appealable as of right under the collateral order doctrine. Under that

doctrine, an interlocutory order that is "sufficiently final and distinct from the merits [is] appealable without waiting for a final judgment to be entered." *EM Ltd. v. Banco Central De La Republica Argentina*, 800 F.3d 78, 87 (2d Cir. 2015) (quotation marks, citation and footnote omitted); *accord* 28 U.S.C. §§ 158(a)(1), 1291; *see also Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) ("[T]he collateral order doctrine . . . allows an immediate appeal from an order denying immunity under the FSIA." (quotation marks omitted)). This doctrine applies to appeals from bankruptcy courts under Section 158(a)(1). *Worms v. State Corp. "Deposit Ins. Agency"*, 20-CV-3505, 2021 WL 706550, at *2 (S.D.N.Y. Feb. 22, 2021).

The Second Circuit has held repeatedly that the collateral order doctrine "allows an immediate appeal from an order denying immunity under the FSIA." *Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 203 (2d Cir. 2018) (quotation marks and citation omitted); *see also EM*, 800 F.3d at 88 & nn.36, 41 (collecting cases); *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 240 (2d Cir. 2006) ("A denial of the claim of FSIA immunity from suit is immediately appealable because any ultimate success [on appeal from a final judgment] would not redress the erroneous denial of an immunity from the trial itself." (quotation marks and citation omitted) (alteration in original)). It is undisputed, as Trustee conceded, that PIFSS is a foreign state under the FSIA.

9

Decision at 5. Accordingly, the Bankruptcy Court's denial of PIFSS' claim of FSIA immunity from suit is immediately appealable as of right under the collateral order doctrine.

### 1. Alternatively, the Court Should Grant Leave to Appeal the Order Denying PIFSS' FSIA Immunity.

Even if the collateral order doctrine does not apply with respect to the FSIA, the Court should grant PIFSS leave to appeal the issue under Section 158(a)(3).

In determining whether to grant an interlocutory appeal under Section 158(a)(3), courts apply the standard governing interlocutory appeals from district courts to courts of appeals under 28 U.S.C. § 1292(b). *See In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 672–73 (S.D.N.Y. 2011). Under that standard, a court may permit appeal if (1) the "order involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" regarding that question; and (3) "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In weighing those considerations, courts determine whether "exceptional circumstances" overcome the presumption against piecemeal appeals. *Fairfield Sentry*, 458 B.R. at 673. "Exceptional circumstances" include cases where appellate review might "avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987). All three factors are easily satisfied here.

10

a. The Appeal Presents a Controlling Question of Law.

To be a "controlling question of law," the question must "refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Fairfield Sentry*, 458 B.R. at 673 (quotation marks and citations omitted). In addition, the question must "be 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *Id.* (quotation marks and citations omitted).

The jurisdictional question of whether PIFSS is immune from suit under FSIA plainly qualifies as a "controlling question of law." 28 U.S.C. § 1292(b). If the Court holds that PIFSS has sovereign immunity, the Bankruptcy Court would have no jurisdiction, and the adversary proceeding would terminate immediately. This issue therefore satisfies the first prong of Section 1292(b).

b. Substantial Ground for Difference of Opinion Exists as to Whether PIFSS Is Immune from Suit.

An appeal satisfies the second prong of the section 1292(b) if there is "substantial ground for difference of opinion," *i.e.*, "a genuine doubt as to whether the district court applied the correct legal standard in its order." *Fairfield Sentry*, 458 B.R. at 673 (quotation marks and citations omitted). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration*

11

*(Alaska) Inc.*, 643 F.3d 681, 686 (9th Cir. 2011). "To determine whether the issue for appeal is truly one on which there is a substantial ground for dispute, a district court must analyze the strength of the arguments in opposition to the challenged ruling." *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593–94 (S.D.N.Y. 2009) (quotation marks and citation omitted).

The Bankruptcy Court applied the wrong legal standard when it held that the third clause of the commercial activity exception applied to defeat PIFSS' immunity. In reaching its decision, the Bankruptcy Court relied solely on a 2012 opinion in *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), which found that the third clause was met because a subsequent transferee's investment in and redemption out of Sentry caused a two-way flow of funds between Sentry and BLMIS. Decision at 6–8.

However, *BLI* predates the Supreme Court's decision in *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015), which clarified the "based upon" requirement of the commercial activity exception. Courts now are required to "look to the basis or foundation for a claim, those elements . . . that, if proven, would entitle a plaintiff to relief and the gravamen of the complaint." *Id*. at 33–34 (quotation marks and citations omitted). Thus, the *BLI* court wrongly focused on BLI's investment (rather than its receipt of alleged customer property) when it summarily concluded that "the Trustee's instant suit is based upon BLI's investment of tens of millions of

12

dollars in [] Sentry with the specific goal of having funds invested in BLMIS in New

York, with intent to profit therefrom." *BLI*, 480 B.R. at 506. *OBB* makes clear that

the only conduct relevant to Trustee's claim against PIFSS is its receipt of the

Transfer, *see* 577 U.S. at 33–34, which is the act "upon" which the Complaint is

"based."[4] The Bankruptcy Court agreed that PIFSS' receipt of the Transfer is the

relevant conduct for the first prong, Decision at 6, but, relying on *BLI*, then focused

on altogether different conduct for the third prong—the two-way flow of funds

between Sentry and BLMIS—to find that there was a "direct effect," *id.* at 8. The

Bankruptcy Court did not zero in on the correct conduct and, as a result, did not

apply the proper standard for the commercial activity exception under *OBB*.

Moreover, application of the third clause of the commercial activity exception

to a subsequent transferee that is a foreign state is an issue of first impression. *See*

*Fairfield Sentry*, 458 B.R. at 673 ("Substantial ground would exist if the issue is

difficult and of first impression." (quotation marks and citations omitted)). Indeed,

the Bankruptcy Court's finding that there was a direct effect in the United States

based on the flow of funds between Sentry and BLMIS supports the opposite

---

[4] The relevant "act" for "direct effect" is the one that underpins the "based upon" prong. *See* 28 U.S.C. § 1605(a)(2) ("based . . . upon *an act* outside the territory the territory of the United States in connection with a commercial activity of the foreign state elsewhere *and that act* causes a direct effect in the United States" (emphasis added)).

conclusion that PIFSS' acts caused a "direct" effect. "[A]n effect is 'direct' if it follows 'as an *immediate* consequence of the *defendant's . . . activity*.'" *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2009) (emphasis added) (citation omitted). There must be "no intervening element." *Id.* (citations omitted). Here, however, Sentry's alleged acts of sending money to BLMIS, issuing requests to receive money from BLMIS, honoring PIFSS' redemption request, and/or using its own funds to satisfy PIFSS' redemption request are all intervening elements that sever the connection between PIFSS' conduct in receiving the Transfer and any effect in the U.S.[5] *See generally Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57–58 (2d Cir. 1997) (holding that initial transferee is one that, at minimum, has dominion over the money, with the right to put the money to one's own purposes).

The Bankruptcy Court thus applied the wrong legal standard when it (1) failed to apply the "based upon" standard as articulated in *OBB* and therefore focused on the wrong conduct in its analysis of the focus of the first and third prongs of the third clause of the commercial activity exception, and (2) ignored that Sentry, the initial transferee, was an intervening element that precludes a finding that PIFSS' foreign acts caused a direct effect in the United States.

---

[5] The Bankruptcy Court nevertheless recognized Sentry's role as an initial transferee when it denied PIFSS' assertion of the Section 546(e) defense.

14

c. <u>Resolution on Appeal Materially Advances the Litigation</u>.

Resolution of PIFSS' sovereign immunity materially advances the termination of the adversary proceeding. An appeal materially advances the termination of the litigation if it "promises to advance the time for trial or to shorten the time required for trial" or has "the potential for substantially accelerating the disposition of the litigation." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citations omitted). If this Court grants leave to appeal and reverses the Bankruptcy Court's determination that the commercial activity exception defeats PIFSS' sovereign immunity, the adversary proceeding would be dismissed for lack of subject matter jurisdiction.

**B.    The Court Should Grant Leave to Appeal the
Finding that PIFSS Is Subject to Personal Jurisdiction.**

1. <u>The Appeal Presents a Controlling Question of Law</u>.

Whether PIFSS is subject to the Bankruptcy Court's personal jurisdiction is a "controlling question of law" because "reversal of the bankruptcy court would terminate the action," which this Court "could decide quickly and cleanly without having to study the record." *Fairfield Sentry*, 458 B.R. at 673 (quotation marks and citations omitted); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[W]e have granted certification [of interlocutory appeals] when the order involved issues of in personam . . . jurisdiction."). That standard is met here. The

15

only issue is whether Trustee sufficiently alleged that PIFSS had contacts with the U.S. justifying the exercise of specific personal jurisdiction. A motion to dismiss for lack of personal jurisdiction is resolved by analyzing the complaint and accompanying affidavits. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The case would terminate if the Court were to determine the Bankruptcy Court lacked personal jurisdiction over PIFSS.

The Court also may "properly consider the system-wide costs and benefits of the allowing the appeal" by evaluating the "impact that an appeal will have on other cases." *Klinghoffer*, 921 F.2d at 24. Foreign defendants in other Madoff-related cases have challenged the Bankruptcy Court's personal jurisdiction over them because their purported contacts with the U.S. are actually contacts with foreign entities that in turn had contacts with the U.S.[6] As described in Section B.2 below, the issue of personal jurisdiction raises a legal question about whether the Bankruptcy Court erred in concluding that a transaction between a foreign defendant and a foreign entity suffices to establish U.S. jurisdiction. This question is common to other Madoff-related cases against foreign defendants that allegedly received

---

[6] According to Trustee's Twenty-Seventh Interim Report for the Period October 1, 2021 Through March 31, 2022, defendants in 27 of Trustee's 79 pending subsequent transfer actions moved to dismiss. *In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 21473 at ¶¶ 229, 231.

16

redemption payments from Sentry. Obtaining appellate resolution of that issue will impact other pending cases, which weighs in favor of certifying this appeal.

2. Substantial Ground for Difference of Opinion Exists as to Whether PIFSS Can Be Subjected to the Bankruptcy Court's Jurisdiction.

Substantial ground for difference of opinion exists as to whether a single allegation that a foreign defendant "knowingly directed funds to be invested with" a U.S. entity through a third-party foreign entity, *see* Decision at 9, suffices to confer personal jurisdiction.[7]

The Bankruptcy Court concluded that a party like PIFSS "'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.'" Decision at 10 (quoting *BLI*, 480 B.R. at 517). Reasonable jurists have disagreed with this conclusion.

Indeed, Supreme Court precedent establishes that the Bankruptcy Court erred

---

[7] The Bankruptcy Court also generally referred to Trustee's allegations, made upon information and belief, that PIFSS wired funds through a New York bank and maintained contact with FGG representatives in New York. Decision at 8; Compl. ¶ 7. These allegations are not the basis of the Bankruptcy Court's decision to exercise personal jurisdiction over PIFSS, and, as identified by a similarly situated defendant in another subsequent transferee case, these allegations are substantially the same as those in many complaints Trustee filed against foreign investors. *Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*, 22-cv-06561-LGS (S.D.N.Y.), Dkt. No. 4 at 16–17.

in holding that PIFSS' contacts with a foreign third party are jurisdictional contacts. The Supreme Court has set forth two related principles for specific jurisdiction: (1) "the relationship must arise out of contacts that the '*defendant* himself' creates with the forum State"; (2) the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). The defendant's "suit-related conduct must create a substantial connection with the forum state." *Id.* at 284; *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). Contacts "between . . . third parties . . . and the forum" are irrelevant, *id.*, because "unilateral activity of . . . a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Accordingly, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction," *Walden*, 571 U.S. at 286, even if the third party's activity in the forum is foreseeable, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–97 (1980) ("[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

The Bankruptcy Court did not cite precedent from the Supreme Court, Second

18

Circuit, or this Court in support of its conclusion that personal jurisdiction can be based on a defendant's alleged knowledge that an investment made with a foreign fund would end up with a New York-based entity. The only case the Bankruptcy Court cited is *BLI*, a decision made by another bankruptcy court before the Supreme Court rendered its opinion in *Walden*, and the holding of *Walden* calls into question the propriety of *BLI*. The *BLI* court held that a foreign defendant that invested with Sentry was subject to the Court's personal jurisdiction based on the defendant's alleged knowledge of Sentry's investments in BLMIS. *See* 480 B.R. at 515–17. This analysis improperly focused on a third party's contacts with the U.S. and is based on exactly the type of foreseeability argument the Supreme Court rejected in *Walden*. *See* 571 U.S. at 289.

Here, the Complaint is devoid of well-pled allegations of contacts between PIFSS and the U.S. related to the Transfer. *Contra Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) (finding sufficient contacts where defendants invested in domestic funds, defendants' derivatives group, which offered customers access to BLMIS transactions, monitored Madoff transactions, and "operated from New York," and "the subsequent transfers were largely the result of those New York activities"). The Bankruptcy Court's conclusion that PIFSS' alleged knowledge that funds from its investment in Sentry would eventually end up in New York would significantly expand the jurisdiction of all U.S. courts to cover

19

foreign entities that invest in foreign funds that in turn invest with U.S. entities. This expansive conception of personal jurisdiction runs afoul of settled Supreme Court precedent and ignores "policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987) (emphasis omitted).

> 3. <u>Resolution on Appeal Materially Advances the Litigation</u>.

Resolution of the issue of personal jurisdiction materially advances the termination of this case. *See Primavera*, 139 F. Supp. 2d at 570 (appeal materially advances the litigation if it has "the potential for substantially accelerating the disposition of the litigation") (citations omitted). If this Court reverses the Bankruptcy Court's decision to exercise personal jurisdiction over PIFSS, then the case will be dismissed. This factor weighs in favor of allowing the appeal.

> **C.     The Court Should Grant Leave to**
> **Appeal the Bankruptcy Court's Misapplication of *Cohmad*.**

The Court should also grant PIFSS leave to appeal the Bankruptcy Court's holding that *Cohmad* precludes PIFSS' Bankruptcy Code Section 546(e) defense. All three criteria under Section 1292(b) are met here. <u>First</u>, no factual disputes must be resolved to answer the controlling legal questions presented. <u>Second</u>, the Bankruptcy Court's application of *Cohmad* presents substantial grounds for reversal. <u>Third</u>, reversal of the Bankruptcy Court on the correct interpretation of *Cohmad* would necessarily result in dismissal of this proceeding.

As noted, the Bankruptcy Court's application of *Cohmad* not only stripped PIFSS of its ability to assert a Section 546(e)defense, but also stripped dozens of similarly situated subsequent transferees of this defense. There are currently at least seven pending motions for leave to appeal the Bankruptcy Court's decisions on *Cohmad* pending before The Honorable Jed S. Rakoff, with a hearing to consider the motions scheduled for October 13, 2022.[8] To the extent the District Court grants these motions, PIFSS seeks leave to join in those appeals.

## CONCLUSION

The Court should grant leave to appeal the Bankruptcy Court's Order denying PIFSS' Motion to Dismiss.

Dated: October 6, 2022
New York, New York

**GREENBERG TRAURIG, LLP**

By: /s/ *Leo Muchnik*
Leo Muchnik
One Vanderbilt Avenue
New York, New York 10017
Telephone:  (212) 801-6826
Facsimile:  (212) 801-6400
Email:      muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone:  (617) 310-6000

---

[8] *See* S.D.N.Y. dockets for civil action nos. 22-cv-6512, 22-cv-7195, 22-cv-7173, 22-cv-7189, 22-cv-6502, 22-cv-7372, and 22-cv-7788.

Facsimile:    (617) 310-6001
Email:        davisjo@gtlaw.com
Email:        Alison.Holdway@gtlaw.com

*Attorneys for Defendant The Public*
*Institution for Social Security*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Bankruptcy Rule 8013(f)(3)(A) because, excluding the parts of the document exempted by Bankruptcy Rule 8015(g), this document contains 4,966 words, according to the wordcount function of the word-processing system used to prepare the document.

2.      This document complies with the typeface requirements of Bankruptcy Rule 8015(a)(5) and the type-style requirements of Bankruptcy Rule 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version in 14-point Times New Roman font.

Dated: October 6, 2022

/s/ *Leo Muchnik*
Leo Muchnik

23

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01002 (CGM) |
| Plaintiff, | |
| v. | |
| The Public Institution for Social Security, | |
| Defendant. | |

**ORDER DENYING THE PUBLIC INSTITUTION FOR SOCIAL
SECURITY'S MOTION TO DISMISS THE COMPLAINT AND MOTION
TO STRIKE THE DECLARATION OF BRIAN W. SONG**

Defendant the Public Institution for Social Security's ("**Defendant**" or "**PIFSS**") motion

to dismiss the Complaint under the Foreign Sovereign Immunities Act, 28 U.S.C. § § 1602-1611,

Bankruptcy Rule 7012(b), and Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6)

(the "**Motion to Dismiss**") and Defendant's motion to strike the declaration of Brian W. Song and

all attached exhibits numbered 1 through 13 (the "**Motion to Strike**") came on for hearing before

the Court on July 13, 2022 (the "**Hearing**").  The Court has considered the Motion to Dismiss and

the Motion to Strike, the papers filed in support of and in opposition to the motions, the Complaint,

and the statements of counsel at the Hearing, and the Court has issued a memorandum decision,

dated August 17, 2022, regarding the Motion (the "**Decision**").  For the reasons set forth in the

Decision, **IT IS ORDERED**:

    1.    The Motion to Dismiss the Complaint is denied.

    2.    The Motion to Strike is denied.

    3.    The deadline for Defendant to file an answer to the Complaint is October 14, 2022.

    4.    The Court shall retain jurisdiction to implement or enforce this Order.

/s/ **Cecelia G. Morris**



**Dated: September 1, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

# <u>EXHIBIT B</u>

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01002 (CGM) |
| v. | |
| The Public Institution for Social Security, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Brian Song (via Zoom)

12-01002-cgm-ngm    Doc 49155-2    Filed 17/12/06/22    Entered 08/17/12/06/22 13:50:54    Main Document
Memorandum Decision    Pg 3 of 29    Pg 3 of 28

*Counsels for Defendant, The Public Institution for Social Security*
Leo Muchnik
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
By:    Joseph P. Davis (via Zoom)
       Alison T. Holdway (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the motion by the Defendant, the Public Institution for Social

Security ("PIFSS"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  PIFSS seeks dismissal

for lack of subject matter jurisdiction, for lack of personal jurisdiction, for failure to plead a

cause of action due to improper adoption by reference; for failure to state a claim due to the safe

harbor provision of the Bankruptcy Code, and for failure to plead that the transfers from BLMIS

were customer property.  The Defendants further moves to strike the declaration of Brian W.

Song (the "Song Declaration") and all attached exhibits, numbered 1 through 13.  For the reasons

set forth herein, the motion to dismiss and motion to strike are denied in their entirety.

### <u>Jurisdiction</u>

      This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). Submit

matter jurisdiction and personal jurisdiction have been contested by the Defendant and will be

discussed *infra*.

## **Background**

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on January 5, 2012. Compl., ECF[1] No. 1. The

Defendant was a government agency of the State of Kuwait responsible for investing the assets

of and administering the Kuwaiti social security system. *Id.* ¶ 3. Via the complaint

("Complaint"), the Trustee seeks to recover subsequent transfers made to the Defendant. *Id.* ¶ 2.

The subsequent transfers were derived from investments with BLMIS made by other funds,

including Fairfield Sentry Limited ("Fairfield Sentry"). *Id.* These funds are referred to as

"feeder funds" because the intention of the fund was to invest in BLMIS. *Id.* ¶ 7.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion. *Id.* ¶¶ 35, 36. In 2011, the Trustee settled with Fairfield

Sentry. *Id.* ¶ 40. As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate. The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendant to recover the approximately $3

billion in missing customer property. The Trustee alleges that the Defendant received

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01002-cgm.

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 79 of 106

12-01002-cgm    Doc 49155-1    Filed 07/20/22    Entered 07/20/22 13:50:54    Main Document
Memorandum Decision    Pg 5 of 28    Pg 5 of 29

approximately $20,000,000 of funds initially transferred from BLMIS to Fairfield Sentry and

subsequently from Fairfield Sentry to the Defendant.  Compl. ¶ 41, ECF No. 1; Stip., ECF 111

(amending Count One of the Complaint to recovery of one transfer in the amount of

$20,000,000).

<u>Discussion</u>

**Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over these adversary proceedings pursuant to

28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July

10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition,

the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4),

(*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

The Defendant objects to the Court's subject matter jurisdiction, arguing that it is

immune from liability under the Foreign Sovereign Immunities Act (the "FSIA").  Mot. to

Dismiss, ECF No. 118.  The FSIA, 28 U.S.C. §§ 1602–1611, determines whether a federal court

may exercise jurisdiction over a foreign state.  *Argentine Republic v. Amerada Hess Shipping

Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L. Ed. 2d 818 (1989) ("[T]he FSIA provides

the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.").  A

foreign state is "presumptively immune from the jurisdiction of United States courts; unless a

specified exception applies."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S. Ct. 1471, 1476,

123 L. Ed. 2d 47 (1993).  Where no exception applies, "federal courts lack subject-matter

jurisdiction over claims against foreign states."  *Picard v. Bureau of Labor Ins. (In re Bernard L.*

*Madoff*), 480 B.R. 501, 510 (Bankr. S.D.N.Y. 2012) ("*BLI*").  After the Defendant has made a

prima facie case that it is a foreign state, the "burden shifts to the plaintiff, who must then

produce evidence to demonstrate that immunity should not be granted under exceptions to the

FSIA."  *Id.* (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993)).

<u>The Defendant is a Foreign State Under the FSIA</u>

The FSIA defines "foreign state" to include "a political subdivision of a foreign state or

an "agency or instrumentality of a foreign state as defined in subsection (b)."  28 U.S.C. §

1603(a).  The Trustee has conceded that the Defendant is a foreign state under the FSIA.  Compl.

¶ 22; Reply 7, ECF No. 122.  The Defendant is presumptively immune from the jurisdiction of

this Court.  The Trustee argues that the Defendant is nevertheless exempt from immunity under

the FSIA's commercial activity exception.

<u>The Commercial Activities Exception to the FSIA Applies</u>

Under 28 U.S.C.A. § 1605, a foreign state is not immune from jurisdiction of the federal

courts in cases

> in which the action is based upon a commercial activity carried on in the United States
> by the foreign state; or upon an act performed in the United States in connection with
> a commercial activity of the foreign state elsewhere; or upon an act outside the territory
> of the United States in connection with a commercial activity of the foreign state
> elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  The Defendant argues that only the third and final clause of the

exception could apply as it is "undisputed that PIFSS is a foreign governmental agency and that

its conduct occurred outside the United States".  Mot. to Dismiss, ECF No. 118.  The final clause

of the commercial activities exception,

> consists of three elements: (1) the operative act (i.e., the gravamen of the complaint)
> must have occurred outside the United States, (2) the act must have occurred in
> connection with a commercial activity of the foreign state elsewhere, and (3) the
> act [must have] cause[d] a direct effect in the United States.

*MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 54 (2d Cir. 2017) (cleaned up).

The gravamen of the complaint is the basis or foundation of a claim, that is, those elements that, if proven, would entitle a plaintiff to relief. *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 107 (2d Cir. 2016). The Defendant and the Trustee agree that the gravamen of the Complaint is PIFSS's receipt of funds due to its subscription into Fairfield Sentry. Mot. at 10, ECF No. 118; Opp'n at 8, ECF No. 122. This conduct occurred outside of the territory of the United States. *Id.* The Trustee has met the first prong of the final clause of the commercial activities exception.

The Act must have occurred in connection with a commercial activity. The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The activity of a foreign state is "commercial" within the meaning of the FSIA "if the sovereign undertakes the act 'not as regulator of a market, but in the manner of a private player within it.'" *MMA Consultants 1, Inc.*, 719 F. App'x at 52 (quoting *Republic of Argentina v. Weltover, Inc.* 504 U.S. 607, 614, 112 S. Ct. 2160, 2166, 119 L. Ed. 2d 394 (1992)). Judge Lifland found a foreign state agency's investment in Fairfield Sentry to be a commercial activity as it "did not involve the use of powers peculiar to sovereigns." *BLI*, 480 B.R. at 512.

The Complaint has alleged that PIFSS entered into subscription agreements with Fairfield Sentry and received subsequent transfers of BLMIS funds through Fairfield Sentry totaling approximately $30,000,000. Compl. ¶¶ 6, 7, 34–42, ECF No. 1. PIFSS was acting as a private player within a market through these actions, not as a regulator of a market. PIFSS does not dispute that the actions are commercial activity as it is used in the FSIA. Rather, PIFSS assumes this second prong arguendo and argues that the complaint should be dismissed for failure to

plead any direct effect in the United States.  The issue then is whether the Trustee has satisfied

the third prong; that is, whether the Defendant's actions had a direct effect in the United States.

Under the third clause of the commercial activities exception, "an effect is direct if it

follows as an immediate consequence of the defendant's ... activity."  *Republic of Argentina,* 504

U.S. at 618 (internal quotation marks omitted); *see also MMA Consultants 1, Inc.*, 719 F. App'x

at 54.  In construing whether the effect constitutes a "direct effect in the United States," the

Court will be mindful of "providing access to the courts to those aggrieved by the commercial

acts of a foreign sovereign."  *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d

300, 312 (2d Cir. 1981) (internal quotation marks omitted) *overruled on other grounds by*

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir.

2009); *see also BLI*, 480 B.R. at 513 (finding that courts in the Second Circuit must liberally

construe what constitutes a "direct effect in the United States").  The effect must be more than

merely "fortuitous or incidental, playing only a tangential role in the lawsuit."  *BLI*, 480 B.R. at

513 (citing *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993)

In *BLI*, Judge Lifland denied a similar motion to dismissed based on a FSIA claim of

immunity.  Judge Lifland found that the *BLI* defendant's actions caused a direct effect in the

United States by "causing a two-way flow of funds" in the "form of subscription and redemption

payments" into BLMIS to invest in the United States and from BLMIS in "the form of profits

from those investments."  *BLI*, 480 B.R. at 513.

The Defendant argues that BLI was overruled by the Supreme Court in *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27, 136 S.Ct. 390, 193 L. Ed. 2d 269 (2015).  This

argument is unavailing.  The Supreme Court, in *OBB Personenverkehr*, examined the first clause

of the commercial activities exception.  *Id.* at 31 n.1 ("As Sachs relies only on the first clause to

establish jurisdiction over her suit, we limit our inquiry to that clause."). The Court determined

that the conduct constituting the gravamen of the personal injury suit against the Austrian state-

owned railway carrier occurred abroad, where the plaintiff fell onto railroad tracks while

attempting to board a train. *Id.* at 35. The Court found that the suit was not based upon the sale

of a Eurail ticket in the United States. *Id.* at 38. The Court did not address or overrule Judge

Lifland's holding in *BLI*.

Here, the Trustee's Complaint alleges the Defendant's subscription into and redemption

out of Fairfield Sentry. These actions created a two-way flow of funds that had a direct effect in

the United States. As immunity under the FSIA does not apply due to the third clause of the

commercial activities exception, the Court need not consider whether the Defendant's conduct

satisfied the first or second clauses. PIFSS is not entitled to immunity under the FSIA.

**Personal Jurisdiction**

PIFSS objects to the Trustee's assertion of personal jurisdiction. The Trustee argues in

the Complaint that the Defendant purposefully availed itself of the laws of the United States and

New York by directing funds to be invested with New York-based BLMIS through Fairfield

Sentry, investing in a structured product based on Fairfield Sentry's investment returns through

the Bank of New York, and maintaining regular contact with Fairfield Greenwich Group account

representatives located in New York. Compl. ¶¶ 6–8, ECF No. 1.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP

Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that PIFSS "knowingly directing funds to be invested

with New York-based BLMIS."  This allegation alone is sufficient to establish a prima facie

showing of jurisdiction over the Defendant at the pre-discovery stage of litigation.  This was not

the only allegation made by the Trustee.

At the pre-discovery stage, the allegations need not be factually supported.  *See

Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment

of facts is necessary only after discovery).  In order to be subjected to personal jurisdiction in the

United States, due process requires that a defendant have sufficient minimum contacts with the

forum in which defendant is sued "'such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'"  *BLI*, 480 B.R. at 516 (quoting *Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed

"'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v.

Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

<u>Purposeful Availment</u>

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *BLI*, 480 B.R. at 517.

PIFSS argues that the Trustee has failed to allege sufficient minimum contacts with the

United States.  The Complaint suggests otherwise.  In the Complaint, the Trustee alleges that

PIFSS "knowingly directed funds to be invested with New York-based BLMIS through Fairfield

Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry."  Compl. ¶ 6, ECF No. 1.  The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS.  *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint); *see, e.g.* Song Decl., Fairfield Sentry Information Memo., ECF No. 123, Ex. 1 ("The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM'), a registered broker-dealer in New York, New York, which employs an options trading strategy described as 'split strike conversion.'").

The Trustee has submitted additional evidence in response to the motion to dismiss. Attached as exhibits to the Song Declaration, the Trustee has provided evidence that PIFSS bank accounts in New York to send subscription payments to Fairfield Sentry totaling $5,000,000. Song Decl., Ex. 3.  PIFSS used correspondent accounts in New York to send subscription payments totaling $15,000,000 and receive subsequent transfers totaling $20,000,000.  Song Decl., Ex. 2.  PIFSS's offshore subsidiary, Wafra, met with representatives of the Fairfield Greenwich Group at Fairfield's offices in New York to discuss investment with Fairfield Sentry. Song Decl., Ex. 10.  These allegations are sufficient to constitute a prima facie showing of jurisdiction.  *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013).

The Defendant has moved to strike the Song Declaration and all attached exhibits. As will be discussed below, the Court will deny the Defendant's motion to strike.  Nevertheless,

even without the Song Declaration and attached exhibits, the Trustee has sufficiently plead

allegations supporting jurisdiction over the Defendant.

<u>Arise Out of or Relate to the Defendant's Forum Conduct</u>

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against Defendant for monies it

received from the Fairfield Sentry. Compl. ¶¶ 44–47, ECF No. 1. These allegations are directly

related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).  The suit is affiliated with the alleged in-state

conduct.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Reasonableness

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted).  Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable.  The Defendant is not burdened by this

litigation. Defendant has actively participated in this Court's litigation for over ten years.  It is

represented by highly competent U.S. counsel, filed a claim in this SIPA litigation, and

submitted to the jurisdiction of New York courts' when it signed its subscription agreements

with Fairfield Sentry.  The forum and the Trustee both have a strong interest in litigating BLMIS

adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re

BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard

v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec.

Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich

Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re

Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in

allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfer at issue in this Case.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover the subsequent transfer of approximately $20 million

made in 2004 to PIFSS by Fairfield Sentry ("Count One").

Count One: Recovery of Subsequent Transfers

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is avoided
under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may
recover, for the benefit of the estate, the property transferred, or, if the court so
orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such transfer
was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re*

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much–of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 35, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy

trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a

trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.

Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,

the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad

Secs. Corp., (In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

<u>Adoption by Reference of the Fairfield Amended Complaint</u>

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re

Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 93 of 106

12-01002-cgm    Doc 149-15    Filed 07/20/22    Entered 07/20/22 13:50:54    Main Document
Memorandum Decision    Pg 18 of 28    Pg 19 of 29

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'")

   Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. PIFSS, like many subsequent transfer defendants in this SIPA

proceeding, is uniquely aware of what has been filed in the other adversary proceeding in this

SIPA liquidation.   It routinely follows what is happening on a proceeding-wide basis. *See* Stip.,

ECF No. 97 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

   Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice the Defendant. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 94 of 106

12-01002-cgm    Doc 49155-1    Filed 10/06/22    Entered 10/06/22 13:50:54    Main Document
Memorandum Decision    Pg 20 of 29    Pg 20 of 29

prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

      Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's

knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also

SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

<u>BLMIS Customer Property</u>

      The Trustee has pleaded that "[b]ased on the Trustee's investigation to date,

approximately $30,00,000 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Defendant PIFSS."  Compl. ¶ 41, ECF No. 1.

The parties later stipulated to dismissing recovery of one transfer in the amount of $10,000,000.

Stip., ECF 111.

      The exhibits attached to the Complaint provide PIFSS with the "who, when, and how

much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018); Compl., ECF No. 1, Ex. C (indicating the transfer in question occurred on

January 21, 2004); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent

transfers.).  The Fairfield Amended Complaint, which is incorporated by reference into this,

alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  Fairfield

Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's

requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment

decisions, but also the custody of its assets, to BLMIS."). The Trustee need not prove the path

that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming

shareholder. The Complaint plausibly alleges that Fairfield Sentry did not have any assets that

were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that PIFSS received customer property because Fairfield Sentry

did not have other property to give. The calculation of Fairfield Sentry's customer property and

what funds it used to make redemption payments are issues of fact better resolved at a later stage

of litigation.

**Section 546(e)**

The Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the

Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a

transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial

institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. §

546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard

v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis

added). However, where the initial transferee fails to raise a § 546(e) defense against the

Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled

to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re*

*BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr.

S.D.N.Y. Aug. 6, 2021).

      In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid

and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors. If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account. In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on*

*other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

      This Court has already determined that the Fairfield Amended Complaint contains

sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

　　　　This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under

a separate securities contract" this Court was directed to "adjudicate those claims in the first

instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,

Ex. A at 24.

　　　　This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint

are sufficient to survive a Rule 12(b)(6) motion on this issue.

The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer

The Defendant argues that the safe harbor prevents the Trustee from avoiding the

subsequent transfer between Fairfield Sentry and PIFSS on account of the securities contract

between Fairfield and the Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

The Defendant's reliance on *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11

U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

("Cohmad") is unavailing.  In *Cohmad*, Judge Rakoff clearly laid out the "one caveat" to the

general rule that the Trustee must show "the initial transfer of . . . by the debtor is subject to

avoidance under one of the Bankruptcy Code's avoidance provisions."  *Id.*  That is, a subsequent

transferee with actual knowledge of the fraud "cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* This caveat only pertains to a subsequent transferee with actual knowledge. It is the "one caveat." *Id.* *Cohmad* did not "leave open" any additional caveats to subsequent transferees who lack actual knowledge.

The Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[2] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendant. *Fairfield III* is not applicable here.

---

[2] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

08-01789-cgm    Doc 22384    Filed 10/06/22    Entered 10/06/22 18:12:27    Main Document
Pg 101 of 106

12-01200-cgm    Doc 49155-Red Filed 17/06/22 Entered 07/06/22 13:50:54 Main Excerpt
Memorandum Decision    Pg 26 of 28    Pg 27 of 29

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**The Motion to Strike**

The Defendant seeks to strike the declaration by Brian Song and the attached exhibits for lacking a basis in personal knowledge, lacking foundation, hearsay, failure to authenticate, and lack of relevance.  The Court of Appeals for the Second Circuit has "long made clear" that a court has "considerable procedural leeway" in deciding a pretrial motion to dismiss for lack of personal jurisdiction.  *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  The Court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

It is only after discovery that the prima facie showings should be factually supported with admissible evidence.  *Id.*; *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 121 (S.D.N.Y. 2020) "[A] court, in resolving a Rule 12(b)(2) motion ***made after jurisdictional discovery***, may consider only admissible evidence.") (emphasis added).  Even at that later stage, the Court may consider evidence that is not presented in admissible form.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (rejecting the argument that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment").

08-01789-cgm   Doc 22384   Filed 10/06/22   Entered 10/06/22 18:12:27   Main Document
Pg 102 of 106

12-01002-cgm  Doc 49155-1  Filed 06/17/20  Entered 06/17/20 13:50:54  Main Document
Memorandum Decision  Pg 28 of 29  Pg 27 of 28

The Defendant has not shown that the exhibits are ultimately inadmissible. Arguments as to the lack of foundation and hearsay nature of the exhibits are premature.

At this stage of the proceedings, counsel may submit a sworn statement including facts and exhibits. *Knowyourmeme.com Network v. Nizri*, No. 20-CV-9869 (GBD) (JLC), 2021 WL 3855490, at *9 (S.D.N.Y. Aug. 30, 2021); *see also Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ([W]hen an attorney makes statements under penalty of perjury in an affidavit or an affirmation, the statements do constitute part of the evidentiary record and must be considered."). "While bone fide evidentiary objections can and should be considered at the summary judgment stage . . . the fact that documents were attached to an attorney declaration without a supplemental affidavit by a document custodian or another with knowledge does not make them inadmissible for that reason." *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.*), 543 B.R. 78, 100 (Bankr. S.D.N.Y. 2016).

The Defendant has not challenged the ultimate credibility of the Song Declaration and attached exhibits. The Court will not strike any part of the Song Declaration or attached exhibits for lack of authentication.

While personal jurisdiction can be established from the Complaint alone, the Song Declaration and attached exhibits are relevant to the Trustee's claims. Evidence is relevant where "it has any tendency to make a fact more or less probable than it would be without the evidence" and where "the fact is of consequence in determining the action." Fed. R. Evid. 401. "When sought to expunge irrelevant factual matters, a strike motion will not be granted unless those matters have no clear bearing on the issues in dispute." *Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 676 (S.D.N.Y. 2002) (citing *Reiter's Beer Distributors, Inc. v. Schmidt Brewing Co.*, 657 F. Supp. 136, 143 (E.D.N.Y. 1987) ("Motions to

strike are generally disfavored and will not be granted unless the matter asserted clearly has no

bearing on the issue in dispute.”))

The exhibits attached to the Song Declaration may bear on the issues in dispute.  The

exhibits contain information that investors in Fairfield Sentry were given (Song Decl., Ex. 1);

records of PIFSS's subscriptions and redemptions with Fairfield Sentry (Ex. 2–6); and emails

showing meetings between the Fairfield Greenwich Group and PIFSS or its subsidiary, Wafra.

(Ex. 7–13).  These matters are closely related to establishing personal jurisdiction over the

Defendant.

The Trustee has made sufficient allegations concerning personal jurisdiction in the

Complaint.  Compl., ECF No. 1.  While these allegations are sufficient by themselves to

establish jurisdiction, the Trustee has provided further allegations in the opposition to the motion

to dismiss with the Song Declaration and attached exhibits.  Opp'n, ECF No. 122; Song Decl.,

ECF No. 123. The Court will not strike the Song Declaration or attached exhibits.

<u>Conclusion</u>

For the foregoing reasons, PIFSS's motion to dismiss and motion to strike are denied.

The Trustee shall submit a proposed order within fourteen days of the issuance of this decision,

directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required

by Local Bankruptcy Rule 9074-1(a).

**Dated: August 17, 2022**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **28** of **28**

Leo Muchnik
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
Email: davisjo@gtlaw.com
Email: Alison.Holdway@gtlaw.com

*Attorneys for Defendant The Public Institution for Social Security*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No.  12-01002 (CGM) |
| Plaintiff, | |

> v.
>
> THE PUBLIC INSTITUTION FOR
> SOCIAL SECURITY,
>
>                Defendant.

## NOTICE OF DEFENDANT THE PUBLIC INSTITUTION FOR SOCIAL SECURITY'S MOTION FOR LEAVE TO APPEAL

Defendant The Public Institution for Social Security ("PIFSS") hereby provides notice in

accordance with Local Bankruptcy Rule 8010-1 that it has filed with the clerk of this Court at ECF

No. 155 for transmittal to the United States District Court for the Southern District of New York

a motion pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004 for

leave to appeal this Court's Order entered September 1, 2022 (ECF No. 150) denying PIFSS'

motion to dismiss the complaint of Plaintiff Irving H. Picard, Trustee for the Liquidation of

Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff.

Dated:  October 6, 2022
        New York, New York

**GREENBERG TRAURIG, LLP**

By: /s/ *Leo Muchnik*
Leo Muchnik
One Vanderbilt Avenue
New York, New York 10017
Telephone:    (212) 801-9200
Facsimile:    (212) 801-6400
Email:        muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone:    (617) 310-6000
Facsimile:    (617) 310-6001
Email:        davisjo@gtlaw.com

2

Email:        Alison.Holdway@gtlaw.com

*Attorneys for Defendant The Public*
*Institution for Social Security*

3