**WUERSCH & GERING LLP**
Gregory F. Hauser
Joshua A. Dachs
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
Gregory.Hauser@WG-Law.com
Joshua.Dachs@WG-Law.com
*Counsel for Defendants Bank Vontobel AG f/k/a Bank J.*
*Vontobel & Co. AG and Vontobel Asset Management Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789 (CGM)** |
| *Plaintiff-Applicant,* | **SIPA Liquidation** |
| -v- | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **(Substantively Consolidated)** |
| *Defendant.* | |
| In re: | |
| BERNARD L. MADOFF, | |
| *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | **Adv. Pro. No. 12-01202 (CGM)** |
| *Plaintiff,* | |
| -v- | |
| BANK VONTOBEL AG f/k/a BANK J. VONTOBEL & CO. AG and VONTOBEL ASSET MANAGEMENT, INC., | |
| *Defendants.* | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS**
**BANK VONTOBEL AG f/k/a BANK J. VONTOBEL & CO. AG AND VONTOBEL**
**ASSET MANAGEMENT, INC.'S MOTION TO DISMISS THE COMPLAINT**

## Table of Contents

TABLE OF AUTHORITIES ..................................................................................... iii

REPLY PRELIMINARY STATEMENT .................................................................. 1

REPLY ARGUMENT .......................................................................................... 3

    I. This Court Lacks Jurisdiction Over Bank Vontobel as the Trustee Has Failed to
    Establish that Bank Vontobel Has Sufficient Contacts With New York........................... 3

    II.  The Complaint Fails to Satisfactorily Plead the Avoidability of the Initial Transfers,
    and the Trustee Cannot Cure It's Fatal Pleading Defects Through Wholesale
    Incorporation by Reference of a Superseded Complaint. ................................................... 9

    III. The Bulk of the Trustee's Claims are Barred by 546(e)'s Safe Harbor...................... 11

    IV. The Complaint Fails to Plausibly Allege That the Subsequent Transfers Were of
    BLMIS Customer Property. ............................................................................................... 13

    V. The Good Faith Defense Provides for Dismissal of This Action, As the Applicability
    of the Defense is Apparent on the Face of the Complaint. ............................................... 15

CONCLUSION.................................................................................................... 19

CERTIFICATE OF SERVICE .............................................................................. 20

## Table of Authorities

**Cases**                                                                                                    **Pages(s)**

*Ayyash* v. *Bank Al-Madina*,
   No. 04-cv-920, 2006 WL 587342 (S.D.N.Y. March 9, 2006) ................................................... 8

*Bernard L. Madoff Inv. Sec. LLC*,
   No. 08-01789 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ........................... 6

*Bernard L. Madoff Inv. Sec. LLC*,
   No. 08-01789 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ......................... 7

*Bernard L. Madoff Inv. Sec. LLC*,
   No. 12 MC 115 JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...................................... 11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ......................................................................................... 5

*Comm. Of Unsecured Creditor of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) ...................................................................................... 8

*Cooper v. Parsky*,
   1997 WL 242534 (S.D.N.Y. Jan. 8, 1997) .................................................................. 5

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008) ...................................................................... 11

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*,
   No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ................................ 8

*Ferrari v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) ......................................................................... 11

*Gilmore v. Rivera*,
   2014 WL 1998227 (S.D.N.Y. May 14, 2014) ............................................................ 16

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11 CIV. 3673 RJS, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ......................................... 7

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   206 F. Supp. 3d 869 (S.D.N.Y. 2016) ....................................................................... 16

*Hau Yin To v. HSBC Holdings, PLC*,
   2017 WL 816136. (S.D.N.Y. Mar. 1, 2017) ................................................................ 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................ 4

*Hill v. HSBC Bank plc*,
   207 F.Supp. 3d 333 (S.D.N.Y. 2016) ................................................ 8

*Hillel v. Obvio Health USA, Inc.*,
   No. 20-CV-4647 (LAP), 2021 WL 229967 (S.D.N.Y. Jan. 21, 2021) ..................... 7

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
   331 F. Supp. 3d 130 (S.D.N.Y. 2018) ............................................. 8

*In re 680 Fifth Ave. Assocs.*,
   209 B.R. 314 (Bankr. S.D.N.Y. 1997) ............................................. 9

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008) ............................................. 4

*In re Bernard L. Madoff Inv. Sec., LLC*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................. 16, 18, 19

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................ 17

*In re Fairfield Sentry Ltd.*,
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................... 6

*In re Geiger*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ............................................. 10

*In re SunEdison, Inc.*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ............................................ 13

*Int'l Controls Corp. v. Vesco*,
   556 F.2d 665 (2d Cir. 1977) ........................................................... 9

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   505 B.R.  (S.D.N.Y. 2013) ........................................................... 11

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................... 13

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 08-01789 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022)........... 18

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP,
No. 08-01789 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ........................ 16

*Licci v. Lebanese Canadian Bank*,
(732 F.3d 161 (2d Cir. 2013)................................................................................. 8

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ......................................................... 10

*Ocean Units LLC v. Illinois Union Ins. Co.*,
528 F. Supp. 3d 99 (E.D.N.Y. 2021)....................................................................... 8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)................................................................................. 15

*Picard v. ABN Ireland*,
2022 WL 1304589 (S.D.N.Y. May 2, 2022)............................................................ 17

*Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM),
2021 WL 3477479 (Bankr. S.D.N.Y. 2021) ............................................................ 13

*Picard v. Ida Fishman Revocable Tr.*,
773 F.3d 411 (2d Cir. 2014)................................................................... 11, 12, 13

*Picard v. Multi-Strategy*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ..................................................................... 10

*Picard v. Stanley Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................... 14

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)................................................................................. 11

*Sapia v. Home Box Off., Inc.*,
2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018).......................................................... 15

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)................................................................................. 6

*Steinberg v. A Analyst Ltd.*,
2009 WL 838989 (S.D. Fla., Mar. 26, 2009) ............................................................ 4

*Suber v. VVP Servs., LLC*,
2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) .......................................................... 5

*Tymoshenko v. Firtash*,
  2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ............................................................. 5

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007)...................................................................... 10

**Statutes**

11 U.S.C. § 550....................................................................................................... 3, 14,15

11 U.S.C. § 546(e) ................................................................................................. 2, 11,12, 13

This Reply Memorandum of Law is respectfully submitted on behalf of Defendant Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG ("Bank Vontobel") and Defendant Vontobel Asset Management Inc. ("VAMUS") (together, with Bank Vontobel, "Defendants" or the "Vontobel Defendants"),[1] by counsel, in further support of their Motion to Dismiss the Complaint (the "Complaint" or "Compl.") of Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "FRCP").

For the foregoing reasons and those set forth in the Vontobel Defendants' initial moving submission, the Complaint should be dismissed in its entirety and with prejudice.[2]

### Reply Preliminary Statement

The Trustee's Opposition ("Opp.") is comprised of references to inapposite and unpersuasive case law and, at bottom, only reiterates the conclusory and flawed allegations in the Complaint. Ultimately, the Complaint fails to state a cognizable claim for several reasons:

*First,* as against Bank Vontobel, the Trustee fails to allege sufficient facts to demonstrate that Bank Vontobel "purposefully availed" itself in the forum state. In fact, the peripheral contacts alleged in the Complaint do not establish that Bank Vontobel availed itself of jurisdiction in New York as it has been previously established that neither the forum selection clause in the subscription agreements or mere email and phone communications with individuals in New York and/or the use of a New York bank account are sufficient to establish jurisdiction. Seemingly recognizing this damning reality, the Trustee doubles-down on his attempt to impart the contacts

---

[1] Defendant Vontobel Absolute Return Fund was voluntarily dismissed from this action on May 13, 2013. *See* Dkt. 34.

[2] All defined terms herein shall be ascribed the same meaning as in the Vontobel Defendants' initial moving submission (hereafter referred to as the "Moving Br.") [Dkt. 119].

of a third-party to establish jurisdiction over Bank Vontobel.  Here too, however, the Trustee's argument fails as a matter of law, as there is no plausible legal theory upon which this Court may find jurisdiction exists over Bank Vontobel based on a third-party's contacts.

*Second,* the Trustee's Opp. does little to explain the failure to meet the pleading standards set forth in Rules 8(a) and 9(b). While the Trustee acknowledges that a pleading must contain a "short and plain statement" of relief, and that allegations of fraud require compliance with a heightened pleading standard, he nevertheless insists that the Complaint, as plead, meets the requisite standards.  As set forth in greater detail below, however, that is simply not the case, as the Trustee asks this Court for numerous leniencies to which is not entitled, such as: (i) permitting the improper wholesale incorporation of the Fairfield Amended Complaint, without specifying the relevant excerpts; (ii) accepting the incorporation of a pleading that has been superseded and thus rendered moot, and; (iii) taking judicial notice of a pleading that was not referenced in the original Complaint (*i.e.* the Fairfield Second Amended Complaint), without explaining why judicial notice is warranted or how the allegations contained therein can be squared with those in the Fairfield Amended Complaint. The Trustee has had over a decade to cure these pleadings defects, yet deliberately chose not to do so, choosing instead to place the burden of sifting through all of its referenced allegations on both this Court and the Vontobel Defendants.

*Third,* the Trustee's opposition to the Vontobel Defendant's use of the section 546(e) defense is based purely on a self-serving and incorrect interpretation of *Cohmad*.  Contrary to the Trustee's position, as set forth more fully below, both Second Circuit precedent and Congressional intent weigh in favor of permitting innocent subsequent transferee's to utilize the safe harbor defense.  Accordingly, the bulk of the Trustee's claims should be dismissed.

*Fourth,* rather than explain how the allegations in the Complaint are sufficient to establish

2

that the subsequent transfers were of customer property, the Trustee argues instead that it need not

do so under the requisite pleading standard.  Yet, as set forth in the Moving Br. and further

explained below, the Trustee's conclusory allegations listing the transfers from BLMIS to Sentry,

without any explanation as to the relevance of those transfers, is wholly insufficient to state a claim

under 11 U.S.C. § 550.  Without such necessary facts, the Trustee fails to state a claim under §

550(a) or § 78fff.

*Lastly,* the Complaint must be dismissed as the Vontobel Defendants are protected by the

good-faith defense.  The Trustee does not contest that an affirmative defense, such as the good-

faith defense, may provide the basis for dismissal where the facts establishing such a defense are

apparent on the face of the pleading. Here, there are no allegations (nor could there be) that the

Vontobel Defendants had knowledge of Madoff's scheme.  The Trustee may not conjure issues of

fact to escape dismissal at the motion to dismiss stage where no such issues exist.

In light of the foregoing, the Complaint should be dismissed in its entirety and with

prejudice.

## Reply Argument

**I.      This Court Lacks Jurisdiction Over Bank Vontobel as the Trustee Has Failed to Establish that Bank Vontobel Has Sufficient Contacts With New York.**

In opposing Bank Vontobel's motion to dismiss for lack of personal jurisdiction, the

Trustee contends that specific personal jurisdiction exists over Bank Vontobel because Bank

Vontobel's investments in, and communications with, the Fairfield Funds constitute "purposeful

availment" in New York.[3]  *See* Opp., p. 9.  In support of this theory, the Trustee asserts that

---

[3]      The Trustee does not contest the argument that this Court lacks general jurisdiction over
Bank Vontobel.  Accordingly, that point has been conceded. *See* Moving Br., pp. 8-9; *see* Opp.,
*generally.*

jurisdiction here is warranted because Bank Vontobel maintained the following contacts with the forum state: "(1) purposefully targeted the New York securities market by investing in the Fairfield Funds (as well as the Kingate Funds), knowing that their assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to their investments; (3) engaged in on-going communications with FGG in New York with respect to their investments; and (4) used New York banks to transact with Sentry." *Id.* The foregoing allegations, however, are wholly insufficient to establish personal jurisdiction over Bank Vontobel for numerous, equally fatal, reasons.

*First*, the allegation that Bank Vontobel knew the funds it invested with Fairfield Sentry were being directed to New York, as plead, is plainly inadequate to establish personal jurisdiction over Bank Vontobel because it concerns Fairfield Sentry's contacts in the forum state with BLMIS, not Bank Vontobel's. The contacts of a third party cannot be attributed to defendant as the basis to establish jurisdiction, as it is well settled that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum . . . to justify an assertion of jurisdiction." *See Hall*, 466 U.S. 408, 417 (1984). In fact, this Court, and others similarly situated, have held that the investment of funds in New York is not a sufficient basis to establish jurisdiction. *See Steinberg,* 2009 WL 838989, at *5 (finding lack of personal jurisdiction where the investor's sole contact with New York was to route money via wire transfer through New York bank); *In re Amaranth*, 587 F. Supp. 2d at 536-37 (finding lack of personal jurisdiction where company's sole contact with the forum was investment in foreign hedge fund managed by members in the forum state); *Suber v. VVP Servs., LLC,* 2021 WL 4429237, at *9 (S.D.N.Y. Sept. 27, 2021). Furthermore, a court may only attribute the jurisdictional contacts of an entity to its shareholder(s) under an alter ego or agency theory.

4

*See Tymoshenko v. Firtash*, 2013 WL 1234943, at \*4 (S.D.N.Y. Mar. 27, 2013)*; Cooper v. Parsky*, 1997 WL 242534, at \*14 (S.D.N.Y. Jan. 8, 1997) (internal citation omitted) ("Even a controlling shareholder will not be subject to personal jurisdiction unless the record justifies piercing the corporate veil").

Here, the Complaint does not plead facts sufficient to find jurisdiction under an alter ego theory, as there are no facts to support a piercing of the corporate veil, a necessary component of such a theory. *See Cooper*, 1997 WL 242534, at \*14 (mere status as "a New York corporation's shareholder[]… does not justify piercing the corporate veil"). Nor are there any allegations suggesting facts that Defendants had any control at all over the investment activities of Fairfield Sentry or BLMIS, a necessary element of an agency theory. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring the alleged agent in New York to have acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal"). In fact, the allegations in the Complaint are clear that Bank Vontobel, as mere shareholders, did not control or direct Sentry's actions, nor could it. Bank Vontobel's knowledge, therefore, is irrelevant as Fairfield Sentry actively directed the investments to New York, not Bank Vontobel. The Trustee's argument that Bank Vontobel bought shares in Sentry knowing that Sentry was investing in the New York-based BLMIS and, therefore, purposefully availed itself in the forum state fails as a matter of law as the Trustee does not, and cannot, establish that the investment of funds with a third-party who directs those funds into New York results in the original investor's "purposeful availment" of the privileges of doing business in N.Y.

*Second,* the Trustee's reliance on the subscription agreements to establish jurisdiction, is no more availing. As previously set forth in the Moving Br., in *Fairfield I* this Court considered – and rejected - the very argument made by the Trustee here. *In re Fairfield Sentry Ltd.*, 2018 WL

3756343, at *11-*12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").  Specifically, in *Fairfield I,* the Court held that the forum selection clause in the Fairfield subscription agreements did not apply to recover a redemption payment from Fairfield Sentry on the basis that such a suit is not one "with respect to" the subscription agreements, but rather related to Fairfield Sentry's Articles of Association.  Notably, the Trustee does not address the Court's holding in *Fairfield I* in his Opp. The reason for this is simple – *Fairfield I* plainly forecloses the Trustee from relying on the Subscription Agreements a basis for jurisdiction.

*Third,* the Trustee's allegation that Bank Vontobel maintained "on-going communications with FGG in New York with respect to their investments" is similarly insufficient to establish jurisdiction. In his Opposition, the Trustee acknowledges that Bank Vontobel does not have physical presence within the forum state.  Instead, the Trustee insists that Bank Vontobel's email and telephone communications with FGG are sufficient "contributing factors" to find jurisdiction. It is well-settled, however, that a "handful of communications…are insufficient to allow the exercise of specific personal jurisdiction" over a foreign defendant.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018); *see also* Moving Br., pp. 14-16 (collecting cases). The cases upon which the Trustee relies for a finding to the contrary are inapposite or otherwise irrelevant. For example, in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 3094092, at *3 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"), the Trustee alleged that the defendant maintained significantly more contacts with the forum state, including but not limited to maintaining more than 95% of its fund in New York and *regular* in-person meetings in New York with both FGG management and Madoff himself.  Similarly, in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 3273044, at *4 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz"),* the Court found minimum contacts existed only after the

Trustee submitted additional evidence that the defendant "traveled to New York City to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers in question here." Here, there are no such allegations[4] and the Trustee has failed to demonstrate how any of Bank Vontobel's peripheral contacts with New York are sufficient to establish jurisdiction.[5]

*Fourth,* the Trustee's last alleged contact – namely, Bank Vontobel's use of a New York bank - is similarly insufficient to establish jurisdiction.  In support of its argument, the Trustee alleges that a handful of redemption payments and requests for wire transfers from Bank Vontobel through JP Morgan Chase Bank NA, a New York bank, is sufficient to establish jurisdiction. Contrary to the Trustee's assertion, however, the mere use of a bank account by a foreign entity under a foreign contract does not confer jurisdiction. *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (holding the court lacked personal jurisdiction over foreign defendants based solely on the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *see also Hill v. HSBC Bank plc*, 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission

---

[4]    While the Trustee alleges that Bank Vontobel engaged in "at least one in-person meeting with Madoff himself and FGG," he does not specify whether this meeting took place in New York. *See* Opp. p. 18. While the facsimile upon which the Trustee relies was sent from New York, there are no other details as to where or when this meeting occurred, or even if the meeting occurred. *See* Charlemagne Decl., Ex. 33.  Even if such a meeting did, in fact, occur, without such context it may not be considered relevant to the jurisdictional issue at bar.

[5]    The Trustee's reliance on *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 CIV. 3673 RJS, 2012 WL 123989, at *1 (S.D.N.Y. Jan. 3, 2012) is similarly unavailing, as the proposition upon which the Trustee relies has since been rejected.  *See Hillel v. Obvio Health USA, Inc.*, No. 20-CV-4647 (LAP), 2021 WL 229967, at *8 (S.D.N.Y. Jan. 21, 2021) (distinguishing *Golden Archer*, finding that to establish personal jurisdiction, a plaintiff must allege "something more" than mere e-mail, phone calls, and online video communications with persons in the forum state).

of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract...insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]").[6]

*Lastly,* the Trustee's request for jurisdictional discovery to cure its defective pleadings should not be granted, as the Trustee has had ample time and access to relevant records; yet has failed to do so. This case has been going on for more than a decade, during which the Trustee has had full access to Madoff's records, the discovery produced from the Fairfield Funds, as well as from many other parties. To the extent the Trustee will be able to show Bank Vontobel's contacts with New York, it is already in possession of all it needs to do so.[7] Jurisdictional discovery here will only further delay this decade-old proceeding and is highly unlikely to produce any further relevant information.

---

[6]     The Trustee's reliance on *Licci v. Lebanese Canadian Bank,* (732 F.3d 161 (2d Cir. 2013) and *Off. Comm. Of Unsecured Creditor of Arcapita v. Bahrain Islamic Bank,* 549 B.R. 56, 69 (S.D.N.Y. 2016) is easily distinguishable because both of those cases involve banks that used accounts located in New York in furtherance of illegal activity. *See* Opp., p. 16. Here, there is no allegation that Bank Vontobel had knowledge of any illegal activity at the time of the subsequent transfers or that the use of the accounts was conducted in furtherance of any illegal activity.

[7]     Unlike in *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.,* No. 21-CV-10316 (LAP), 2022 WL 3910679, at *1 (S.D.N.Y. Aug. 31, 2022), where the Court granted jurisdiction discovery because it found the defendants likely possessed additional facts to establish jurisdiction, here, there is no allegation that Bank Vontobel is in possession of any additional facts that could give rise to personal jurisdiction. *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,* 331 F. Supp. 3d 130, 147 (S.D.N.Y. 2018) (distinguishing *Kiobel,* and denying request for jurisdictional discovery because, in part, the party requesting discovery failed to explain "how discovery would permit it to support any such theory."); *see also Ocean Units LLC v. Illinois Union Ins. Co.,* 528 F. Supp. 3d 99, 103 (E.D.N.Y. 2021) (challenging *Ayyash* v. *Bank Al-Madina,* No. 04-cv-920, 2006 WL 587342 (S.D.N.Y. March 9, 2006)*,* in holding that jurisdictional discovery should be limited, as "discovery is not a substitute for a guess, or a hope, or the absence of knowledge…").

II.     **The Complaint Fails to Satisfactorily Plead the Avoidability of the Initial Transfers, and the Trustee Cannot Cure It's Fatal Pleading Defects Through Wholesale Incorporation by Reference of a Superseded Complaint.**

The Trustee does not dispute that the allegations set forth in the Complaint, standing alone, are insufficient to state a claim for fraud under the heightened pleading standard imposed by Rule 9(b). Instead, the Trustee insists the Court must accept and incorporate the full 217-page complaint (the "Fairfield Amended Complaint") filed in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 as if plead herein. Yet, even if permitted, the Trustee's wholesale incorporation of the Fairfield Amended Complaint is of no consequence, as that pleading has been superseded by a second amended pleading and thus, rendered moot. Furthermore, even if incorporation were permitted here to fill in the glaring holes of the Trustee's Complaint, the manner in which the Trustee seeks to incorporate the Fairfield Amended Complaint is wholly improper and cannot be permitted, as the Trustee makes no attempt to designate the specific portions of the complaint he wishes to incorporate, as required by both the Federal Rules and Second Circuit precedent.

As an initial matter, the Trustee does not contest that the Fairfield Amended Complaint – the pleading he seeks to incorporate - has been superseded and thus, rendered moot. *See In re 680 Fifth Ave. Assocs.*, 209 B.R. 314, 323 (Bankr. S.D.N.Y. 1997) citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("an amended complaint, after it has been properly served, supersedes the original and renders it of no legal effect."). The Trustee offers no explanation as to why it has failed to cure this fatal pleading defect, despite the fact that it has had more than a decade to do so. Rather, the Trustee cites a slew of cases for the proposition that incorporation of the Fairfield Amended Complaint is proper because it was filed in a related adversary proceeding and not a "separate action" – a point that the Vontobel Defendants do not contest. *See* Opp., pp. 23-25; *see also* Moving Br., p. 6.

In addition to the foregoing, the Trustee's failure to specify which portions of the Fairfield Amended Complaint it seeks to incorporate creates an undue burden on the Vontobel Defendants and this Court. In *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007), the Court held that "references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation." *see also Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at \*4 (E.D.N.Y. Mar. 26, 2010) ("[a]lthough there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."). The cases cited by the Trustee further support the Vontobel Defendant's position. For example, in *In re Geiger* the court dismissed a complaint for improperly incorporating by reference other pleadings and leaving "the Defendant and the Court—to sift through many pages of attached material trying to figure out which fact goes with which allegation." *In re Geiger*, 446 B.R. 670, 679–80 (Bankr. E.D. Pa. 2010). Similarly, in *Multi-Strategy* incorporation by reference was permitted because the operative pleading specified which excerpts from the other complaint it wished to incorporate. *See Picard v. Multi-Strategy*, 641 B.R. 78, 91 (Bankr. S.D.N.Y. 2022); *see* Opp., p. 23. By contrast, here, the Trustee failed to specify which portions of the vast Fairfield Amended Complaint it seeks to incorporate, leaving both the Defendants and this Court to "sift through" to try to determine which allegations are relevant.

Further confusing the issue, the Trustee argues that the Court may take judicial notice of the Fairfield Second Amended Complaint. This argument, however, should be given no credence because the Trustee has not even attempted to incorporate the Fairfield *Second* Amended Complaint in this action. *See* Compl. ¶ 52 (incorporating by reference the Fairfield Amended

Complaint, only). Furthermore, the Trustee has failed to explain whether it now seeks to incorporate both the Fairfield Amended Complaint and the Fairfield Second Amended Complaint, or just the latter, creating additional headaches for both the Court and the Vontobel Defendants. Judicial notice is not a cure-all for a litigant's failure to comply with the pleading requirements set forth in the FRCP. None of the cases upon which the Trustee relies support a finding to the contrary.[8]

### III.    The Bulk of the Trustee's Claims are Barred by 546(e)'s Safe Harbor.

The Trustee does not contest the fact that (with the exception of those transfers made within two years of the Filing Date) the initial transfers from BLMIS to Sentry satisfy Section 546(e). *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 JSR, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*") (holding BLMIS transfers meet the criteria of Section 546(e)); *see also Picard v. Ida Fishman Revocable Tr.*, 773 F.3d 411, 420 (2d Cir. 2014) ("*Fishman*"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 140 (S.D.N.Y. 2013) ("*ABN AMRO*"). Specifically, there is no dispute that (i) the initial transfers are settlement payments made in connection with multiple securities contracts, and (ii) were made by a stockbroker, to, and for the benefit of, multiple financial institutions. *See* Opp. pp. 27-31.

---

[8]    In support of its argument that the Court should take judicial notice of the Second Amended Complaint, the Trustee relies upon *Fairfield Investment Fund*. However, there, the Court did not address whether wholesale incorporation of a superseded pleading comports with Rules 8(a) and/or 10(c). In fact, the Court cautioned that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) is irrelevant as the Trustee is seeking to incorporate a superseded pleading, not a decision in a prior lawsuit. Similarly, *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) bears no weight here because the "prior pleading" sought to be incorporated has been superseded and thus, rendered moot. Lastly, the Trustee's reliance on *Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) is misplaced as, unlike in that case, here, the Trustee has not submitted a copy of the later-filed complaint to request judicial notice be taken.

In challenging the Vontobel Defendants' use of the safe harbor, the Trustee relies upon *Cohmad* and its progeny (*Multi-Strategy* and *Banque SYZ,* in particular) to circumvent the safe harbor protections by arguing that the Complaint sufficiently pleads that the alleged initial transferees (*i.e.* Sentry) had the requisite knowledge of Madoff's fraud and, therefore, the safe harbor does not apply.  This self-serving interpretation of the law, however, is incorrect and runs afoul of both legislative intent and legal precedent.

In *Cohmad,* the Court allowed the trustee to escape the safe harbor's application because the defendant "subsequent transferee" had "actual knowledge of Madoff Securities' fraud," *not the initial transferee*. *See Cohmad II*, 2013 WL 1609154, at *7 ("In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover* a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.") (emphasis added). The relevant inquiry, therefore, was whether the **subsequent transferee** had knowledge of the fraud, *not* whether the initial transferee did.

This reading is consistent with Second Circuit precedent and Congressional intent.  In enacting the safe harbor protection, Congress clearly intended to protect the stability of the securities market by enacting protections for innocent transferees—both initial and subsequent— from liability.  The Second Circuit noted as much in *Fishman*, where it held that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d 411, 420 (2d Cir. 2014).  Permitting the Trustee to recover from the Vontobel Defendants here, based solely on the initial transferees' knowledge, would create an exception to § 546(e) such that would undermine its very purpose, as the Vontobel Defendants believed BLMIS was "actually engaged in the business of effecting

securities transactions," and, therefore, "have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)." *Id.*

There is no reason to depart from Second Circuit precedent here, and none of the remaining cases cited by the Trustee contradict this position. Not one of the cases cited by the Trustee discusses whether a subsequent transferee that is ignorant of the underlying fraud is barred from invoking the safe harbor where the initial transferee had actual knowledge of the fraud. In fact, nowhere in *Cohmad,* nor in any of the decisions that follow, did the Court ever suggest that a subsequent transferee that lacked knowledge of the fraud should be deprived of the safe harbor defense merely because the *initial transferee* allegedly knew of Madoff's fraud. Here, the Trustee's reliance on *Cohmad, Multi-Strategy* and *Banque SYZ* for the proposition that section 546(e) is "inapplicable to subsequent transferees," is inaccurate and should therefore, be rejected.

Furthermore, a subsequent transferee is entitled to raise a 546(e) defense on its own behalf, regardless of whether such defense was raised by the initial transferee. *See* Moving Br. P. 21, quoting *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. 2021) ("…the subsequent transferee is [] entitled to raise a § 546(e) defense against recovery of those funds."). The Trustee's reliance on *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("BNP Paribas") and *In re SunEdison, Inc.*, 620 B.R. 505, 513 (Bankr. S.D.N.Y. 2020) is inapposite, as neither case discussed whether the subsequent transferee is barred from invoking the safe harbor protections of 546(e) based on the initial transferee's knowledge. *See* Opp., p. 30.

## IV.   The Complaint Fails to Plausibly Allege That the Subsequent Transfers Were of BLMIS Customer Property.

The Trustee agrees that to successfully plead a claim under either § 550(a) or § 78fff, a plaintiff must ***plausibly*** plead facts showing that the subsequent transfer being challenged was estate

property. While a "tracing analysis" or "dollar-for-dollar accounting" is not required, "barebones allegations" will not suffice.

In opposing the Vonobel Defendants' Motion, the Trustee simply reiterates the scarce, conclusory, allegations of the Complaint and insists that the details alleged therein are sufficient to meet its pleading burden.  Rather than attempt to explain how the calculations contained in the Complaint are mathematically plausible, the Trustee, instead, shifts the focus away from its insufficient allegations by arguing that the Vontobel Defendants somehow seek to change the Trustee's pleading burden. That is simply not the case. In the Moving Br., the Vontobel Defendants rely upon *Shapiro* for the applicable legal standard.  *See* Moving Br., pp. 26-27; *Picard v. Stanley Shapiro* (*In re Bernard L. Madoff Inv. Secs. LLC*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"). Contrary to the Trustee's assertion, the Vontobel Defendants never claimed that *Shapiro* changed the pleading standard, nor did the Vontobel Defendants argue that an exact accounting was necessary at this stage of the litigation, or that any commingling of funds would defeat the Trustee's claim.  In fact, the Vontobel Defendants rely upon *Shapiro* because there, the court found that the Trustee's pleading "lack[ed] the vital statistics necessary to support a subsequent transfer claim" because it failed to "tie any initial transfer to any subsequent transfer or Subsequent Transferee," and failed to "plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro,* 542 B.R. 100 at119. While the Trustee

14

attempts to distinguish *Shapiro* by claiming that the Complaint here meets the *Shapiro* requirements, he does not elaborate as to how.  At bottom, the Complaint fails to sufficiently tie the alleged initial transfers "to any subsequent transfer or Subsequent Transferee," as it merely lists transfers from BLMIS to Sentry without explaining how those transfers are related to the payment of any redemption request from the Vontobel Defendants. Such conclusory allegations are wholly insufficient to survive dismissal.

Similarly, the Trustee mischaracterizes the Vontobel Defendants' argument concerning any alleged "heightened" pleading burden.  The Vontobel Defendants cite to *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) and *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) to clarify the burden already in place – namely, that the Trustee must allege sufficient facts to state a claim and that it may not create issues of fact to avoid dismissal where the necessary facts to resolve such issues are all within its possession.

In light of the Trustee's failure to plausibly allege the transfer of BLMIS property to the subsequent transferee, the Complaint fails to state a claim under § 550(a) or §78fff and should therefore be dismissed in its entirety.

## V.    The Good Faith Defense Provides for Dismissal of This Action, As the Applicability of the Defense is Apparent on the Face of the Complaint.

Section 550(b) of the Bankruptcy Code bars a trustee from recovering from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer.  *See* 11 U.S.C. § 550(b).  The Trustee does not dispute that the good faith defense, if proven successful, would bar recovery of the subsequent transfers from the Vontobel Defendants. Instead, the Trustee claims only that the assessment of such a defense is not warranted at this stage

of the litigation because it is a "fact-driven" defense, requiring "factual analyses and a presentation of evidence."  Opp., p. 37.

This Court has previously stated that a litigant can "plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense." *See In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010).   That is precisely the case here.   Where, as here, the affirmative defense of good faith can be ascertained from the face of the pleadings, the complaint must be dismissed. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 890 (S.D.N.Y. 2016) ("a complaint is subject to dismissal for failure to state a claim when an affirmative defense clearly appears on the face of the complaint."); *see also Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").   The allegations set forth in the Fairfield Second Amended Complaint plainly establish that the Vontobel Defendants were subsequent transferees who took (i) for value, (ii) in good faith, and (iii) without knowledge of the voidability of the transfer.

Regarding the first element, that the subsequent transferees take "for value," there is no question that the surrender of shares in exchange for cash constitutes an exchange "for value."  *See Quilvest Finance Ltd. v. Fairfield Sentry ltd.*, Case Nos. HCVAP 2011/041-062; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").   In opposing the Vontobel Defendants' motion, the Trustee argues that the determination of whether the Vontobel Defendants took for value is a "fact-driven element," which cannot be decided at this

stage of the litigation because "the Complaint does not mention Defendants exchanging shares for consideration."  This argument, however, is unavailing, as the Complaint clearly alleges that the Trustee seeks recovery of transfers received by the Vontobel Defendants in exchange for the redemption of their equity interests as shareholders in the Fairfield Funds.  Those allegations are sufficient to meet the "for value" requirement of 550(b).

Turning to the "good faith" and "without knowledge" elements, the Trustee again argues that those are factual issues which cannot be decided on a motion to dismiss and, further, that that the good-faith defense may only be granted at this stage in certain, limited, exceptions.  Here, too, the Trustee's argument is unavailing as the allegations in the Complaint plainly establish that the Vontobel Defendants took in good faith and without knowledge of the underlying fraud.

The cases cited by the Trustee do not support a finding in his favor.  In *In re Dreier LLP*, for example, the court denied the defendant's motion to dismiss pursuant to good faith defense because the complaint there did not "contain allegations establishing good faith as a matter of law." *In re Dreier LLP*, 452 B.R. 391, 427 (Bankr. S.D.N.Y. 2011).  By contrast, here, the Trustee's own allegations in the Fairfield Second Amended Complaint, on its face, establish the Vontobel Defendants' good faith, as the allegations make clear that the Vontobel Defendants did not and could not have reasonably discovered the fraudulent purpose of the transfers.  *See* Moving Br., p. 31.  The *In re Dreier* court acknowledged that "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." *Id.*[9]

---

[9]    The Trustee's reliance on *Picard v. ABN Ireland*, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") is similarly misplaced as there, the Court simply held that the bankruptcy court's decision should be reversed because it was based on an outdated good-faith standard.

17

In a further attempt to distract the Court from the applicability of the good faith defense, the Trustee argues that the Vontobel Defendants inappropriately "cherry-picked" allegations and factual inferences from the Fairfield Second Amended Complaint that demonstrate the Vontobel Defendants' taking "for value" and in good faith, so as to draw the Court to a conclusion in their favor. As an initial matter, the allegations upon which the Vontobel Defendants were not "cherry-picked" or taken at random; rather, the Vontobel Defendants cite to more than twenty (20) statements in the operative pleading wherein the Trustee himself alleged that BLMIS operated under a cloak of secrecy, such that even the SEC was unaware of the ongoing scheme. *See* Moving Br., p. 31.

Additionally, while the Trustee relies on the opinions in *Banque Syz*, *First Gulf, Delta, ABN Ireland,* and *Merkin I* for the proposition that the affirmative defense of good faith could not be established at the motion to dismiss stage of the litigation, none of those cases are applicable here as each such case involved pleadings with far more extensive allegations concerning the likelihood that the defendant had knowledge. *See* Opp., pp. 36-37. By way of specific example, in both *Banque Syz* and *First Gulf,* the Trustee argued that "[the defendant's] expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore [the defendant] knew or should have known of numerous irregularities concerning investing through BLMIS." *Picard v. Banque SYZ & Co., SA*, 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (CGM), 2022 WL 3354955, at *11 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"). Similarly, in *Merkin I*, the Trustee alleged far more specific facts demonstrating the defendant's likely knowledge of the underlying fraud, including, in particular, the defendant's "unusually close business and social relationship

18

with Madoff" and possession of account statements that "reflected hundreds of trades exercised at prices outside the daily range possible for those securities" *Picard v. Merkin*, 440 B.R. 243, 252–53 (Bankr. S.D.N.Y. 2010).

Here, by contrast, there is no allegation suggesting that the Vontobel Defendants had, or could have had, any knowledge of the Madoff fraud. *See* Compl., *generally.* The Trustee seemingly recognizes this fact by arguing that discovery is necessary before the Court may dismiss the Complaint. However, as previously established, discovery is not warranted or justified where, as here, the pleading is subject to dismissal because the affirmative defense is present on the face of the pleadings. *See Gilmore*, 2014 WL 1998227, at *2, *supra.*

<u>Conclusion</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, and with prejudice.

Dated: October 10, 2022                  Respectfully submitted,

**WUERSCH & GERING LLP**

*/s/ Gregory F. Hauser*
Gregory F. Hauser
Joshua A. Dachs
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
Gregory.Hauser@WG-Law.com
Joshua.Dachs@WG-Law.com
*Counsel for Defendants Bank Vontobel*
*AG f/k/a Bank J. Vontobel & Co. AG and*
*Vontobel Asset Management Inc.*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of October, 2022, a true and correct PDF copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ Gregory F. Hauser*
Gregory F. Hauser