**McKool Smith, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

*Attorneys for Defendant Bank Julius Baer & Co. Ltd.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-1789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>BANK JULIUS BAER & CO. LTD.,<br><br>Defendant. | Adv. Pro. No. 11-2922 (CGM) |

## DEFENDANT BANK JULIUS BAER & CO., LTD.'S
## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.     This Court Does Not Have Personal Jurisdiction Over BJB .................................. 1

     A.     BJB Did Not Purposefully Avail Itself of the Laws and Privileges of Conducting Business in the United States and the Trustee's Claims Do Not Relate to BJB's Limited Contacts with the Forum............ 2

          1.     *BJB's Knowing and Intentional Investments with BLMIS Through the Funds Are Not Sufficient Grounds for Jurisdiction* .................................................................................. 2

          2.     *BJB's Other Alleged Contacts Do Not Establish Personal Jurisdiction over BJB* ..................................................................... 4

          3.     *The Forum Selection and Choice of Law Clauses in The Subscription Agreements Do Not Establish Personal Jurisdiction* .................................................................................. 5

          4.     *BJB's Use of New York Bank Accounts Does Not Establish Personal Jurisdiction* ..................................................................... 5

          5.     *The Foregoing Contacts Are Not Sufficiently "Related to" the Trustee's Claims* ............................................................... 7

II.     The Trustee's Claim is Barred by Section 546(e)'s Safe Harbor .......................... 9

     A.     Sentry's Knowledge is Irrelevant................................................. 9

     B.     Section 546(e) Applies Independently to Recovery Actions.................... 11

III.     The Trustee Has Not Pled Actual Fraudulent Intent Under Section 548(a)(1)(A) ................................................................................................... 12

IV.     The Trustee Has Not Pled The Avoidability of The Initial Transfers ................. 13

V.     The Section 550(b) Defense Is Supported By Facts Apparent On The Face of the Complaint And Thus Appropriate At The Motion To Dismiss Stage ........ 14

VI.     The Trustee Has Not Pled That BJB Received Customer Property..................... 15

VII.     The New Transfers Do Not Relate Back to the OC ............................................ 18

CONCLUSION...................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al Rushaid v. Pictet & Cie,*
    28 N.Y.3d 316 (2016) ..................................................................................................6

*American Casein Co. v. Geiger,*
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ......................................................................14

*Amigo Foods Corp. v Marine Midland Bank-N.Y.,*
    39 N.Y.2d 391 (Ct. App. N.Y. 1976).........................................................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................15

*Bah v. Apple Inc.,*
    No. 19-cv-3539, 2021 WL 4894677 (S.D.N.Y. July 26, 2021)..................................8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (1995).................................................................................................15

*Burger King Corp v. Rudzewicz,*
    471 U.S. 462 (1985)..........................................................................................2, 3, 5

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.,*
    No. 15-cv-824, 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) ......................................5

*Fairfield Sentry Ltd. (In Liquidation) v. Migani,*
    [2014] UKPC 9 ........................................................................................................5

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018).........................5

*Feldman v. Silverleaf Resorts, Inc.,*
    No. 98-CV-4566, 2000 WL 35542530 (E.D.N.Y. Jan. 31, 2000) .............................7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021)...........................................................................................7, 8

*Goldberg v. Halbert (In re Woodbridge Group of Companies, LLC),*
    No. 19-51027, 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021).........................19

*Golden Archer Invs., LLC v. Skynet Fin. Sys.,*
    No. 11-3673, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .........................................8

4872-1979-0393

*Goodyear Dunlop Tires Op. S.A. v. Brown*,
  546 U.S. 915 (2011)................................................................................2, 7

*Hau Yin To v. HSBC Holdings PLC*,
  No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)...................................4

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
  601 B.R. 629 (Bankr. N.D. Ill. 2019) ......................................................17

*Hill v. HSBC Bank*,
  207 F.Supp. 3d 333 (S.D.N.Y. 2016)................................................3, 4, 6

*In re. 360networks (USA) Inc.*,
  367 B.R. 428 (Bankr. S.D.N.Y. 2007)........................................................18

*In re Aozora Bank Ltd.*,
  480 B.R. 117 (S.D.N.Y. 2012)................................................................2

*In re Banco Santander Sec.Optimal Litig.*,
  732 F. Supp. 2d 1305 (S.D. Fla. 2010) ....................................................6

*In re Bernard L. Madoff Investment Securities LLC*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015)........................................................3

*In re M. Fabrikant*,
  447 B.R., *aff'd*, 447 B.R. 170 (S.D.N.Y. 2011)...............................13, 18

*In re Sledziejoinwski*,
  Case No. 13-22748, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ...............5

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  946 F.3d 66 (2d Cir. 2019)................................................................11

*Kelley v. Westford Special Situations Master Fund, L.P.*,
  No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ...........................16

*Knight v. Standard Chartered Bank*,
  531 F. Supp. 3d 755 (S.D.N.Y. 2021)........................................................8

*Leema Enters., Inc. v. Willi*,
  575 F. Supp. 1533 (S.D.N.Y. 1983)........................................................5

*Licci v. Lebanese Canadian Bank*,
  20 N.Y.3d 327 (2012) ......................................................................6

*Lustig v. Weisz & Assocs. (In re Unified Com. Cap., Inc.)*,
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) ....................................................13

4872-1979-0393

*Off. Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) ...................................................................7, 13

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
  No. 17-civ-241, 2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018)................................8

*Picard v. Banque Cantonale Vaudoise*,
  Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022)...........1

*Picard v. Banque Lombard Odier & Cie SA*,
  Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ......1, 9

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...........................................................3, 8, 18

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012)...............................................................3, 18

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) (Menashi, J., concurring) ...........................................13

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) ....................................................................16

*Picard v. Fairfield Investment Fund Ltd.*,
  No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)....................10, 11, 14, 18

*Picard v. First Gulf Bank*,
  Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022)...........9

*Picard v. Ida Fishman Recoverable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  773 F.3d 411 (2d Cir. 2014)..............................................................................11, 12

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).................................................................15, 16

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  641 B.R. 78 (Bankr. S.D.N.Y. June 13, 2022)............................................... passim

*Picard v. Parson Fin. Panama S.D.*,
  Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022)...........9

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
  2 F. Supp. 2d 470 (S.D.N.Y. 1998)......................................................................4, 6

*Rosenblatt v. Coutts & Co. AG*,
  No. 17 Civ. 3528, 2017 WL 3493245 (S.D.N.Y. Aug 14. 2017) .........................4, 6

iv

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.,*
   No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......................................10, 12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.,*
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................................18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   No. 08-01789, 2018 WL 3078149 (Bankr. S.D.N.Y. June 20, 2018) ....................................13

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.),*
   379 B.R. 5 (Bankr. E.D.N.Y. 2007).......................................................................................16

*SPV Osus Ltd. v. UBS AG,*
   114 F. Supp. 3d 161 (S.D.N.Y. 2015).....................................................................................6

*SPV Osus Ltd. v. UBS AG,*
   882 F.3d 333 (2d Cir. 2018)....................................................................................................3

*United States v. International Longshoremen's Ass'n,*
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................................................................14

*United Teamster Fund v. MagnaCare Administrative Services, LLC,*
   39 F. Supp. 3d 461 (S.D.N.Y. 2014)................................................................................14, 15

*V Cars, LLC v. Israel Corp.,*
   902 F. Supp. 2d 349 (S.D.N.Y. 2012).....................................................................................8

*Walden v. Fiore,*
   571 U.S. 277 (2014)................................................................................................................3

*Waldman v. Palestine Liberation Org.,*
   835 F.3d 317 (2d Cir. 2016)....................................................................................................2

**STATUTES**

11 U.S.C. § 550(f)......................................................................................................................18

15 U.S.C. § 78fff-2(c)(3) ...........................................................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)...........................................................................................................1, 14

Fed. R. Civ. P. 9(b) ..............................................................................................................12, 13

Fed. R. Civ. P. 15 ................................................................................................................17, 19

Fed. R. Civ. P. 15(c)(1)(B) ........................................................................................................18

v

Defendant Bank Julius Baer & Co. Ltd. ("BJB")[1] respectfully submits this reply

memorandum in further support of its Motion to Dismiss the Amended Complaint ("Motion to

Dismiss" or "Br.").[2]

BJB's Motion to Dismiss should be granted for several independent reasons. First, the

Trustee has failed to allege minimum contacts with New York sufficient to establish personal

jurisdiction over BJB. Second, BJB's reasonable expectations under Section 546(e)'s safe harbor

bar the Trustee's recovery claim. Third, the Trustee failed to allege actual fraudulent intent as

required under Section 548(a)(1)(A). Fourth, the Trustee has not pled the avoidability of the

initial transfers under Fed. R. Civ. P. 8(a)(2). Fifth, BJB's Section 550(b) defense, that BJB

received the alleged transfers in good faith, for value, and without knowledge of the fraud, is

supported by facts apparent on the face of the complaint. Sixth, based on the Trustee's

allegations, it is implausible that the alleged redemptions are BLMIS property. Seventh, the new

subsequent transfers alleged for the first time in the Trustee's Amended Complaint ("AC") are

time barred because they do not relate back to the Original Complaint ("OC"). For these reasons,

the Court should dismiss the Trustee's Amended Complaint in its entirety.

## I.    This Court Does Not Have Personal Jurisdiction Over BJB

The Trustee cannot demonstrate a statutory basis for specific personal jurisdiction that

---

[1] Unless otherwise defined, all abbreviations are used as defined in BJB's opening brief.

[2] BJB acknowledges that the Court has rejected arguments similar to those raised in this motion in related cases. *See, e.g., Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Banque Lombard Odier & Cie SA* (*In re BLMIS*), Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Banque Lombard Odier*"); *Picard v. Banca Carige S.P.A.* (*In re BLMIS*), Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Banca Carige S.P.A.*"); *Picard v. Bordier & Cie* (*In re BLMIS*), Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier & Cie*"); *Picard v. Lloyds TSB Bank PLC* (*In re BLMIS*), Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds TSB Bank*"); *Picard v. Banque SYZ & Co., SA* (*In re BLMIS*), Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"); BJB advances these arguments because the facts are sufficiently distinguishable to warrant a different outcome or to preserve the arguments for appeal.

1

comports with due process because he does not adequately allege that BJB's contacts with New York "*gave rise to the episode-in-suit.*" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (denying exercise of personal jurisdiction because the defendant's actions were not expressly aimed at the forum, the effects of those actions were not tangentially felt in the forum, and the other contacts did not constitute a sufficient basis) (quoting *Goodyear Dunlop Tires Op. S.A. v. Brown*, 546 U.S. 915, 923 (2011)) (emphasis in original).

> A.   BJB Did Not Purposefully Avail Itself of the Laws and Privileges of Conducting Business in the United States and the Trustee's Claims Do Not Relate to BJB's Limited Contacts with the Forum

The alleged contacts identified by the Trustee do not constitute purposeful availment by BJB and bear no substantial connection to the Trustee's claim to recover redemptions.

> 1.   *BJB's Knowing and Intentional Investments with BLMIS Through the Funds Are Not Sufficient Grounds for Jurisdiction*

The Trustee makes much of BJB's investments in the Fairfield Funds and BJB's knowledge that the Funds would invest the majority of their assets in BLMIS. (Opp. 2.) But BJB neither directed nor controlled the Funds' investments in U.S. Securities, (Br. 9), and mere knowledge of the Funds' U.S. centered investment strategy and corresponding activities does not subject BJB to personal jurisdiction in the U.S. *See In re Aozora Bank Ltd.*, 480 B.R. 117, 125 (S.D.N.Y. 2012) ("It was the Feeder Funds who entrusted assets to BLMIS, and not [their investors]"). Anticipated third-party performance in a jurisdiction does not show purposeful availment. (Br. 7); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 478 (1985) (finding that a defendant is not subject to personal jurisdiction due solely to the unilateral activity of another party or third person).

The Fairfield Funds and BLMIS's activity in and contacts with the forum do not establish jurisdiction over BJB. The "performance in New York *by a third party* does not show purposeful

2

availment, even when a foreign defendant contracts *directly* with a forum resident." (Br. at 7

(citing *Burger King*, 471 U.S. at 478)).[3] The Trustee relies heavily on *Picard v. Bureau of Labor*

*Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), but Judge Bernstein

subsequently eschewed *BLI*'s reasoning in his discussion of personal jurisdiction. *Picard v. BNP*

*Paribas S.A. (In re BLMIS),* 594 B.R. 167, 187-192 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*").

Judge Bernstein instead applied *Walden v. Fiore*, 571 U.S. 277 (2014) and *SPV Osus Ltd. v. UBS*

*AG*, 882 F.3d 333 (2d Cir. 2018), holding that the activities of a corporation cannot be attributed

to its investors. Accordingly*, BLI* does not support personal jurisdiction based on activities of the

Funds in which BJB was merely an investor.

Instead, "the relationship must arise out of the contacts that the 'defendant himself'

creates with the forum state." *In re Bernard L. Madoff Investment Securities LLC,* 525 B.R. 871,

883 (Bankr. S.D.N.Y. 2015) (quoting *Walden*, 571 U.S. at 277). Neither "contacts between the

plaintiff (or third parties) and the forum State," nor "the defendant's contacts with persons who

reside there" independently suffice. *Walden*, 571 U.S. at 284-85. Further, Sentry is a separate

legal entity from BLMIS. (AC ¶ 4.) Thus, BJB's connections with Sentry—a foreign third-

party—do not constitute connections with BLMIS. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d

333, 336-39 (S.D.N.Y. 2016) (holding that interactions with the Feeder Funds and BLMIS

should not be considered one and the same). The Trustee's allegations that BJB knew of the

Funds' strong forum connections are irrelevant to the jurisdictional analysis. *See Walden*, 571

U.S. at 291 ("it is the defendant, not the plaintiff or third parties, who must create contacts with

---

[3] Cases cited by the Trustee are distinguishable. For example, In *Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC),* 641 B.R. 78, 87 (Bankr. S.D.N.Y. June 13, 2022), the Trustee alleged that the defendant had knowledge of the fraud and explicitly intended to invest in BLMIS "after [Defendant's president] discussed 'Madoff and the potential Ponzi [sic] scheme,'" and the defendant's reputation as a "'Madoff addict'", *Multi-Strategy*, 641 B.R. at 86-87. No such knowledge or intention was alleged against BJB.

the forum State.").

              2.    *BJB's Other Alleged Contacts Do Not Establish Personal Jurisdiction over BJB*

       The Trustee points to isolated in-state contacts, including BJB's alleged communications with Fund personnel in New York. (Opp. 12.) But the Trustee's opposition ignores key arguments in BJB's opening brief.[4] (Br. 12-15.) Personal jurisdiction is not established by "*communications with* and payment to New York merely to ensure compliance with contract terms negotiated and executed outside of New York." *Hau Yin To v. HSBC Holdings PLC,* No. 15-CV-3590, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017) (emphasis added); *see also Roper Starch Worldwide, Inc.*, 2 F. Supp. 2d at 474-75 (foreign company's contract and related communications with New York company did not subject it to personal jurisdiction).

       Although the Trustee alleges that BJB met with Madoff in New York years earlier, he does not allege any factual connection between these alleged meetings and the cause of action other than the vague and unsupported assertion that the meetings were "in connection" with BJB's investments in the Funds. (AC ¶ 12.) Such conclusory allegations do not plausibly establish that any business was transacted or advanced, that the meetings were more than exploratory, or any other substantial nexus between the meetings and the Trustee's claims. *See* (Br. 14 (citing cases).) Indeed, any such nexus is implausible because the majority of the alleged

---

[4] The Trustee argues that BJB's cases refer to "dispute[s] between two parties about services owned under a foreign contract" while this is "an action brought by a SIPA Trustee in a SIPA liquidation proceeding to recover fraudulent transfers." (Opp. 11.) The Trustee assumes that the configuration of parties and claims factors into the determination of personal jurisdiction. BJB is not aware of any such authority, and the Trustee does not cite any. The proper inquiry examines the defendant's connections with the forum. *See Hill*, 207 F. Supp. 3d at 338-40; *Rosenblatt v. Coutts & Co. AG*, No. 17 Civ. 3528, 2017 WL 3493245, at *2-4 (S.D.N.Y. Aug 14. 2017); *Roper*, 2 F Supp. 2d at 472-75 (holding that defendant's "knowledge of, and acquiescence in," New York plaintiff's performance in New York under the parties' contract did not suffice to establish personal jurisdiction over nonresident corporation).

redemptions were made years after the alleged meetings and after BJB's New York branch had

closed. (Br. 15.)

3.    *The Forum Selection and Choice of Law Clauses in The Subscription Agreements Do Not Establish Personal Jurisdiction*

The Trustee alleges that choice of law and forum selection clauses in Sentry's

subscription agreements establish that BJB purposefully directed its activities towards New

York.[5] (Opp. 14-15.) However, this Court previously ruled that the Sentry subscription

agreements are "irrelevant" because they do not cover redemptions. *Fairfield I*, 2018 WL

3756343, at *11-12.[6] Contractual clauses pointing to New York that are unrelated to the

redemptions at issue do not create a "strong nexus" as alleged by the Trustee. (Opp. 14.)[7]

Additionally, because the Trustee is neither a party nor a third-party beneficiary of the

agreements, he cannot invoke the forum selection clause. *Dean St. Cap. Advisors, LLC v. Otoka*

*Energy Corp.*, No. 15-cv-824, 2017 WL 476720, at *2, *4, *5 (S.D.N.Y. Feb. 2, 2017).

4.    *BJB's Use of New York Bank Accounts Does Not Establish Personal Jurisdiction*

Allegations concerning BJB's use of U.S. Dollar accounts are also insufficient to

establish personal jurisdiction. *In re Sledziejoinwski,* Case No. 13-22748, 2016 WL 6155929, at

---

[5] The Trustee also applies this reasoning to an alleged distribution and fee-sharing agreement between Fairfield Greenwich Limited and BJB. (Opp. n. 9.) But the Trustee alleges no connection between the agreement and the forum or the agreement and his claims. The Trustee does not allege they are governed by New York law, have forum selection clauses, or were negotiated or executed in the United States. Accordingly, they are "irrelevant." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").

[6] The Trustee narrowly construes Judge Bernstein's holding as being limited to personal jurisdiction exercised on the basis of consent. (Opp. n. 8.) But the key basis for the holding was that the agreement in question did not govern or relate to redemptions from the Funds. As explained in *Fairfield I,* the Privy Council held in *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*"), that redemptions are governed by Sentry's Articles of Association and BVI Law, not the subscription agreements. (Br. 5.) Accordingly, the subscriptions agreements neither establish consent to jurisdiction nor are they a relevant contact.

[7] Indeed, "a [choice of law] provision standing alone would be insufficient to confer jurisdiction" over a franchisee who agreed to the clause as part of the agreement establishing the disputed franchisor-franchisee relationship. *Burger King*, 471 U.S. at 482.

*7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi,* 575 F. Supp. 1533, 1537

(S.D.N.Y. 1983). The AC is surprisingly vague regarding what accounts were used, for which

transactions, and to whom the accounts belong. Only one alleged account belonged to BJB,

which the Trustee concedes was used for only some of the transfers, although it does not specify

which. The other accounts, at least some of which were merely correspondent accounts,

belonged to Sentry, BLMIS, or Citco. To the extent the accounts did not belong to BJB, they do

not establish jurisdictional contacts. Nor does the use of a correspondent account to deposit and

receive funds pursuant to subscription agreements establish jurisdiction because there is no

allegation that BJB used the account of its own accord. (AC ¶¶ 18-20.) Courts must "closely

examine the defendant's contacts for their quality." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d

327, 338 (2012). In *Licci*, the Court of Appeals held that personal jurisdiction cannot be found

where the defendant's use of the correspondent account is "adventitious – i.e., it was not even

[the defendant's] doing." *Id.* (discussing *Amigo Foods Corp. v Marine Midland Bank-N.Y.*, 39

N.Y.2d 391 (Ct. App. N.Y. 1976)). As alleged, BJB merely maintained and used the account

incidentally pursuant to subscription agreements executed outside of New York.[8] (AC ¶¶ 18-20.)

*See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (allegations that

"Foreign Defendants communicated with and transmitted…funds to and from BLMIS located in

New York" failed to demonstrate purposeful availment because these "communications and

---

[8] *See also Rosenblatt*, 2017 WL 3493245, at *4 (foreign defendant's act of sending payment to plaintiff's New York bank account pursuant to agreement negotiated and executed outside the United States was not purposeful availment); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 328-29 (2016); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 166, 169–70 (S.D.N.Y. 2015) (rejecting personal jurisdiction claim where one bank defendant for Madoff "feeder fund" had a New York correspondent account), *aff'd*, 882 F.3d 333, 345 (2d Cir. 2018); *In re Banco Santander Sec.Optimal Litig.*, 732 F. Supp. 2d 1305, 1323-24 (S.D. Fla. 2010) (finding no personal jurisdiction where intermediary bank, not defendant bank, designated the New York correspondent account to receive funds related to the Madoff scheme). Here, there is no allegation that use of a New York correspondent account was anything other than incidental to the alleged transfers.

payments were incidental consequences of fulfilling a foreign contract"); *see also Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998) ("merely sending payment to New York" pursuant to contract negotiated and executed in Illinois or Michigan "is not sufficient to establish personal jurisdiction"). The Trustee mistakenly relies on *Official Committee Of Unsecured Creditors of Arcapita, Bank B.S.C.*, ignoring that in that case the defendants selected the terms of each transaction, including using U.S. dollars as the transaction currency. (Opp. 16.) (citing *Off. Comm. Of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank,* 549 B.R. 56, 67-69 (S.D.N.Y. 2016))). The Trustee has not made (and cannot make) any such allegation in this case.

Further, that BJB allegedly used a JP Morgan account to receive some redemptions is similarly unavailing. "The fact that [defendant] maintains an investment bank account in New York City" does not constitute a basis for personal jurisdiction. *Feldman v. Silverleaf Resorts, Inc.*, No. 98-CV-4566, 2000 WL 35542530, at *4 (E.D.N.Y. Jan. 31, 2000). If "participation in New York's international financial markets alone could constitute 'doing business'" then "personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns." *Id.*

    5.  *The Foregoing Contacts Are Not Sufficiently "Related to" the Trustee's Claims*

The Trustee fails to demonstrate that the alleged redemptions "arise out of or relate to" BJB's contacts with the United States. *Multi-Strategy*, 641 B.R. at 87 (Morris, J.) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)) ("*Multi-Strategy")*. The Trustee fails to identify anyone who participated in the alleged communications, specify the content, or allege any nexus to the claims at issue, namely the alleged redemptions. (Br. 12.) Courts have specific jurisdiction over only "'issues deriving from, or connected with, the very

7

controversy that establishes jurisdiction.'" *Goodyear Dunlop*, 564 U.S. at 919. "[T]he

jurisdictional analysis focuses on the Defendants' U.S. contacts related to the receipt of the fifty-

nine subsequent transfers at issue. Each transfer is a separate claim, and the Trustee 'must

establish the court's jurisdiction with respect to each claim asserted.'" *BNP Paribas*, 594 B.R. at

190 (citations omitted).

The Trustee wrongly assumes that BJB's contacts are related to the redemptions at issue.

But in-state activity does not constitute a basis for personal jurisdiction in the absence of a

connection to the claims. *Ford*, 141 S. Ct. at 1026 (finding that even if "a strict causal

relationship" is not required, "that does not mean anything goes… [T]he phrase 'relate to'

incorporates real limits, as it must to adequately protect defendants foreign to a forum"). "Under

*Ford*, specific personal jurisdiction still requires a 'relationship among the defendant, the forum,

and the litigation'"—in other words, "a 'connection between the plaintiffs' claims and

[defendant's] activities in th[e forum].'" *Bah v. Apple Inc.*, No. 19-cv-3539, 2021 WL 4894677,

at *2 (S.D.N.Y. July 26, 2021) (quoting *Ford*, 141 S. Ct. at 1032).[9] Conclusory allegations are

not enough. The Trustee cites cases in support of his assertion that "the foregoing contacts with

New York related to BJB's transactions at issue in this action are a sufficient basis for personal

jurisdiction." (*See* Opp. 12 (citing cases).) But, unlike here, the contacts cited in these cases were

directly relevant to the claim. *See, e.g., Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-

---

[9] The Trustee has not demonstrated that BJB's maintenance of a New York branch or the activities of its New York personnel were related to the claims. *See, e.g., Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 767-68 (S.D.N.Y. 2021) (holding that operating a New York branch does not subject a foreign bank to specific jurisdiction without a specific nexus between the New York branch's operations and the claims); *Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 17 CIV. 241 (ER), 2018 WL 1605985, at *13 (S.D.N.Y. Mar. 29, 2018) ("Meetings [in New York] that do not result in the execution of a contract or are not essential to or do not substantially advance the business relationship rarely provide the basis for jurisdiction pursuant to Section 302(a)(1)"); *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2012) (finding contacts insufficient where "the only meetings that occurred in New York were 'exploratory,'" nothing was promised, and no agreements were negotiated).

3673, 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding personal jurisdiction on the basis

of communications discussing development of *the project in dispute*); *Picard v. Banque*

*Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *3-*4 (Bankr.

S.D.N.Y. June 30, 2022) (crediting allegations that defendant met in-person with Madoff, sent a

Sentry subscription agreement to FGG's New York offices, and communicated with FGG

employees in New York *in regards to the disputed transactions*); *Picard v. First Gulf Bank*, Adv.

Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *3 (Bankr. S.D.N.Y. July 18, 2022) (crediting

allegations that defendant "traveled to New York City many times to meet with Fairfield Sentry

insiders about the investments *that ultimately led to the subsequent transfers in question here*")

(emphasis added); *Picard v. Parson Fin. Panama S.D.*, Adv. Pro. No. 11-02542 (CGM), 2022

WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022) (crediting allegations that defendant traveled

to the U.S. on multiple occasions "to meet with FGG *regarding the investments at issue in this*

*case*") (emphasis added). By contrast, the Trustee failed to plead that BJB's alleged meetings in

New York related to any investment or redemption at issue in this case. Indeed, the Trustee's

allegations regarding the purported meetings are so vague, it is unclear when the meetings

occurred, who attended, and what was discussed. Lacking any factual allegations connecting

these meetings to the transactions at issue, these allegations do not even constitute relevant

contacts, let alone establish jurisdiction.

## II.    The Trustee's Claim is Barred by Section 546(e)'s Safe Harbor

### A.    Sentry's Knowledge is Irrelevant

The Trustee does not refute BJB's arguments that the initial transfers were subject to

Section 546(e)'s safe harbor[10], instead claiming "none of this matters" because Sentry (not BJB)

---

[10] *See* (Br. 24-30) (BJB paid value sufficient to support a simple contract, in good faith, and without knowledge of
voidability).

9

had knowledge of BLMIS's Ponzi scheme.[11] (Opp. 20.) But the applicability of Section 546(e) to

the initial transfers *does* matter because Sentry's knowledge is irrelevant to *BJB's* assertion of

the Section 546(e) safe harbor defense. In *Cohmad*, Judge Rakoff recognized a subsequent

transferee's right to assert the safe harbor as a defense to recovery actions except where the

*subsequent transferee* has knowledge of the fraud. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC.,* No. 12 MC 115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

As Judge Rakoff explained, the "actual knowledge" exception to a subsequent transferee's safe

harbor defense is based on the "general principle" that Section 546(e) protects "the reasonable

expectations of investors who believed they were signing a securities contract." *Id.* at *4.[12]

Because the Trustee does not allege that BJB had knowledge of the fraud, BJB can assert a

Section 546(e) defense to protect its reasonable expectations in its dealings with the Funds,[13] and

the Trustee's claim should be dismissed.

The Court's recent holding in *Picard v. Fairfield Investment Fund Ltd.*, Adv. Pro. No. 09-

01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) supports BJB's position.

(Opp. 20.) In *Fairfield Investment Fund*, this Court held that Sentry's knowledge as initial

transferee did not preclude dismissal of claims against subsequent transferees. After establishing

---

[11] Additionally, the Trustee does not dispute that the transfer was made for the benefit of BJB as a covered entity pursuant to a securities contract. *See* (AC. ¶ 10) ("BJB derived significant revenue . . . in connection with the claims); *see also* (AC. ¶ 16) ("BJB . . . redeemed from . . . BLMIS . . . [and] knowingly accepted the . . . benefits").

[12] The "actual knowledge" exception is a judicially-created rule not found in the plain language of § 546(e). (Br. 20.) Accordingly, under the statute, knowledge on the part of either the initial or subsequent transferee is irrelevant. Because the Trustee does not refute BJB's assertions that it is a covered entity receiving a transfer made in connection with a securities contract, the safe harbor clearly applies. (Br. 16-19.) To the extent there is any exception, it is a limited one and does not apply to an innocent transferee like BJB.

[13] Moreover, denying BJB safe harbor based on Sentry's knowledge is inconsistent with the purpose of the exception to prevent a wrongful subsequent transferee from obtaining safe harbor by laundering the subsequent transfer through an innocent initial transferee. *Cohmad*, 2013 WL 1609154, at *3. No such facts are alleged here that would justify denying BJB safe harbor based on this concern. BJB is in the same position as Sentry would have been if Sentry were an innocent Trustee, and there is no reason to deny BJB's reasonable expectations because someone else (here Sentry) had knowledge of the fraud.

10

that Sentry's knowledge of fraud was well-pleaded, the Court examined whether the Trustee had

sufficiently alleged actual knowledge as to each individual defendant who received subsequent

transfers from Sentry. The Court held that, for one of the subsequent transferees, "[t]he Trustee

has failed to plead individualized factual allegations demonstrating" "independent actual

knowledge of the BLMIS fraud." *Id*. at *6. The Court then dismissed all individual claims

against that subsequent transferee, even though it found that the Trustee had adequately pleaded

Sentry's actual knowledge. *Id*. at *4-*6, *15.

      B.      Section 546(e) Applies Independently to Recovery Actions

      The Trustee argues that BJB's reading of *Cohmad* would "provide a subsequent

transferee with more rights than an initial transferee, which is inconsistent with congressional

intent." (Opp. 24.) Not so.

      First, BJB's motion respects the letter and spirit of Section 546(e). Prior to the Court's

recent decisions denying motions to dismiss actions brought by the Trustee against subsequent

transferees, there is no case law establishing that subsequent transferees do not separately qualify

for protection under Section 546(e), even when the initial transferee has knowledge of the

fraud.[14] In attempting to distinguish between the avoidance of initial transfers and the recovery

of subsequent transfers, the Trustee draws a false dichotomy inconsistent with the purpose of

Section 546(e). *Picard v. Ida Fishman Recoverable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,

773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*"). Section 546(e)'s "purpose is to protect a

national, heavily regulated market by limiting creditors' rights." *See In re Tribune Co.*

*Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019). "Permitting the clawback of

---

[14] Nowhere in *BNP Paribas* did the Trustee advance the argument that *Cohmad* strips a subsequent transferee of
protection under Section 546(e). Consequently, the court's holding does not address the issue and the Trustee's
reliance is misplaced.

millions, if not billions, of dollars from BLMIS clients… would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420. That is no less true when such "clawbacks" are aimed at innocent subsequent transferees. *Id.*

Second, as the Trustee concedes, *Cohmad* contemplated "that a subsequent transferee's subscription agreements with the initial transferee feeder fund" can "constitute relevant 'securities contracts,' and that certain subsequent transferee defendants" can "qualify as 'financial institutions' or 'financial participants'" to establish a Section 546(e) defense. (Opp. 22-23) (quoting *Cohmad*, 2013 WL 1609154, at *9). BJB entered into a contract with Sentry, not with BLMIS, and thus the safe harbor analysis should focus on the relationship between BJB and the Fairfield Funds. *See* (Br. 18-19); *Cohmad*, 2013 WL 1609154, at *9 ("a withdrawal by a Madoff Securities customer caused by that party's payment obligations to a subsequent transferee under a securities contract could qualify as "related to" that later transaction under the securities contract"). Under that analysis, Fairfield's knowledge of fraud in connection with Fairfield's contract with Madoff is beside the point. It is undisputed that BJB made the alleged redemption requests in connection with its securities contracts with the Fairfield Funds, and that BJB is a financial institution. Therefore, under *Cohmad*, BJB is entitled to a safe harbor defense to the Trustee's claim for recovery.

## III. The Trustee Has Not Pled Actual Fraudulent Intent Under Section 548(a)(1)(A)

Although the Trustee may pursue actual fraudulent transfers made within the two-year lookback period under section 548(a)(1)(A), even in cases where the safe harbor applies, here the Trustee has failed to adequately plead actual fraudulent intent. Section 548(a)(1)(A) requires the Trustee to plead with particularity facts demonstrating that BLMIS "made such transfer…with actual intent to hinder, delay, or defraud" creditors. 548(a)(1)(A); Fed. R. Civ. P. 9(b). The Trustee cannot rely on allegations about BLMIS's business in general, but rather must plead

12

fraud with particularity as to each transfer. *Off. Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006). The Trustee does not even attempt to do so. Instead, the Trustee relies on the Ponzi scheme presumption, but the presumption does not meet the particularity demanded by the statutory requirement of actual intent or Rule 9(b) with regards to each of the specific transfers at issue. (Opp. 25) (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 20, 2018) (citation omitted)). Applying this judge-made presumption is, at best, "questionable." *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),* 12 F.4th 171, 202 (2d Cir. 2021) (Menashi, J., concurring). Especially here, where § 548(a)(1)(A) does not relax the Trustee's pleading burden.

The Ponzi scheme presumption is also a poor fit because it "improperly treats preferences as fraudulent transfers." *Citibank, N.A.*, 12 F.4th at 201-02; *accord Lustig v. Weisz & Assocs. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001) ("fraudulent conveyance statutes cannot and should not be utilized by courts as a super preference statute to effect a further reallocation and redistribution that should be specifically provided for in a statute enacted by Congress"). Even the Trustee's cases distinguish "preferences from the categories of transfers originally alleged, including fraudulent transfers." (Opp. n. 30 (citing *In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 181-82 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013)).) The Trustee does not seriously refute these arguments, but urges application of the presumption merely because it has been used before. The Trustee should not be permitted to rely on the Ponzi scheme presumption to avoid his pleading burden.

## IV.    The Trustee Has Not Pled The Avoidability Of The Initial Transfers

The Trustee attempted to plead avoidability of the transfers by incorporating virtually all

13

of the Fairfield SAC, contrary to the Federal Rules and established legal precedent. *See American Casein Co. v. Geiger*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) (dismissing the complaint because of its impermissible attempt to incorporate by reference). The attempt is particularly egregious here where the significance of the incorporated material is not specified and more than doubles the size of the allegations included in the complaint against BJB.

As in *American Casein Company* and *United States v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ("*ILA*"), the incorporated pleading is replete with allegations extraneous to the purported reason for the incorporation. Defending the AC would unfairly require the defendants "to select the relevant material from the mass of verbiage," in "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim.'" *ILA*, 518 F. Supp. 2d at 463. Moreover, the Trustee makes no attempt to plead, as he must, that each transfer is avoidable, but rather impermissibly groups hundreds, if not thousands, of separate transactions together with the conclusory allegation that Fairfield Sentry received each transfer with knowledge of fraud. (AC ¶ 76.)

## V.   The Section 550(b) Defense Is Supported By Facts Apparent On The Face of the Complaint And Thus Appropriate At The Motion To Dismiss Stage

BJB received the transfers at issue in good faith, for value, and without knowledge. (Br. 27-28, 30.) The Court should grant BJB's Motion because the facts necessary to support this dispositive Section 550(b) affirmative defense are apparent on the face of the AC. *Fairfield*, 2021 WL 3477479, at *9. In response, the Trustee cites legal holdings selectively and out of context. For example, the Trustee cites *United Teamster Fund v. MagnaCare Administrative Services, LLC*, 39 F. Supp. 3d 461 (S.D.N.Y. 2014) to assert that "affirmative defenses are fact-driven and require factual analyses and the presentation of evidence," (Opp. 28), but neglects the rest of the holding, that "[a]n affirmative defense may be raised by a…motion to dismiss…if the

14

defense appears on the face of the complaint." 39 F. Supp. 3d at 475 (citations omitted). Notably, the Trustee does not engage on the merits or challenge the factual premise for the defense.

The Trustee clearly alleges and does not dispute the collective failure of countless investors, financial institutions, hedge funds, and regulators to discover Madoff's fraud. And the Trustee does not allege that BJB had any basis for suspicion, let alone knowledge of the Ponzi scheme. Yet, the Trustee contends that BJB's good faith is somehow open to question. Not so. Given that no one, including the SEC—a powerful government agency that investigated BLMIS—was able to discover the fraud, it is implausible that BJB—an indirect, foreign investor with no visibility into Madoff's investments—would have discovered it. Thus, the AC does not state a plausible basis for liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## VI.    The Trustee Has Not Pled That BJB Received Customer Property

A plaintiff must allege each and every claim with "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Based on the facts pleaded in the AC, the Trustee cannot plausibly allege that the transfers BJB received from Sentry, Sigma, and Lambda consist of BLMIS customer property. *See Id.* ("to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (1995)). The Trustee did not plead facts connecting the alleged initial transfers to the alleged subsequent transfers—*i.e.*, the AC fails to support an inference "that the funds at issue originated with the debtor" and were subsequently transferred to BJB. *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (citations omitted). Although the Trustee argues that BJB received transfers from the Funds over an extended period, that alone does not cure the pleading deficiency.

15

Courts have held that the "tracing burden may prove formidable" and ultimately bring an end to litigation. *Merkin I,* 515 B.R. at 152. The Trustee argues that it is premature to make such a determination on a motion to dismiss because BJB has usurped the Court's role in determining which tracing methodology to use. However, BJB is not advocating for a specific tracing methodology. (Opp. 30-33.) Rather, the argument is both simpler and more fundamental: the amount and timing of the alleged transfers, and their link back to customer property, are not plausibly alleged in the AC. Indeed, it is mathematically impossible that the Funds transferred more to subsequent transferees than they received from BLMIS. Moreover, during lengthy periods when no customer property remained in Sentry's coffers, commingling could not have occurred. (Br. 33-35.) Thus, the Trustee's reliance on cases such as *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020), in which courts applied a more lenient standard that did not require a Trustee to account for "the exact funds at issue" or establish that transfers "originated solely" with the debtor due to commingling, is misplaced. Put simply, billions more in funds were transferred out of Sentry than were transferred in from BLMIS, and there are no allegations linking any one of the numerous separate transfers, let alone all, back to BLMIS. Precedent has consistently required more.[15] The Trustee argues it need not establish the transfers "originated solely" with the debtor. (Opp. 33.) But that argument is just a strawman and misses the point. What the Trustee must do, but has failed to do, is plead that at least some portion of the transfers contain customer property.

---

[15] *See, e.g., Merkin I*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS; *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers[.]"). Requiring the Trustee to plead facts alleging some "linkage," *Merkin I*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as the Trustee asserts.

16

The Trustee has no right to recover non-customer property. *See* 15 U.S.C. § 78fff-2(c)(3).

The Trustee's supposed lack of personal knowledge is no excuse for his failure to plead even minimal facts linking the initial and subsequent transfers. Since the 2011 Fairfield Settlement Agreement, the Trustee has had full access to all the documents necessary to configure the payment schedules connecting BLMIS and the Fairfield Funds to BJB. *See* (Br. 32 (citing Fairfield Settlement, ¶ 14 (Halper Decl. Ex. 7)).)

The Trustee seeks to recover $2 billion more than the sum of all alleged initial transfers, and there are no allegations in the AC from which one could reasonably infer that the subsequent transfers are customer property. Effectively conceding the point, the Trustee instead argues he can "'pursue any and all subsequent transferees in order to achieve that satisfaction.'" *Multi-Strategy*, 641 B.R. at 95-96 (citing § 550(a)(2)). However, Section 550(a)(2) allows the Trustee to pursue recoveries only from the "immediate or mediate transferee[s] of [an] initial transferee…who take[] in a later transfer down the chain of title or possession." *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 322 (N.D. Ill. 2021)). Furthermore, "the trustee is entitled to only a single satisfaction." § 550(d). Here, the Trustee pursues multiple satisfactions from multiple defendants in different chains of title. Additionally, the Trustee does not plausibly allege that all the funds received by the defendants constitute subsequent transfers of customer property. Exhibit B to the AC, which lists thousands of transactions recorded in Sentry's accounts at BLMIS, and Exhibit C, which lists alleged transfers from Sentry to BJB, are simply two unconnected lists of transfers.[16] Since

---

[16] BJB's analysis of the transfers illustrates the point and clearly explains the methodology applied, all of which is based on the dates and amounts alleged by the Trustee. *See* Halper Decl. ¶¶ 10-13. Contrary to the Trustee's contention (Opp. n. 26), it does not interject expert testimony. While the Trustee complains that some of the amounts included have changed, he does not assert by what amount, or, critically, whether those changes—or anything else—refute the fact that Sentry had no customer property when many of the redemptions were made. Regardless, the Trustee cannot amend the amounts through argument in his opposition. *See* Fed. R. Civ. P. 15.

the Funds did not invest all of their money into BLMIS and often used money from other

investors to fund redemptions, the Trustee's allegations fail on their face. (Br. 32.)

## VII.    The New Transfers Do Not Relate Back to the OC

Contrary to the Trustee's assertion, the newly-added alleged redemptions in the AC do

not relate back to the OC and thus are time barred by the applicable statute of limitations. 11

U.S.C. § 550(f).

Since the new claims of additional subsequent transfers are time barred by more than a

decade,[17] the Trustee's amendments must arise "out of the conduct, transaction, or occurrence set

out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[T]he

central inquiry is whether adequate notice of the matters raised in the amended pleading has been

given to the opposing party within the statute of limitations by the general fact situation alleged

in the original pleading." *Fairfield*, 2021 WL 3477479, at *12 (*citing In re. 360networks (USA)

Inc.,* 367 B.R. 428, 433 (Bankr. S.D.N.Y. 2007)). The Trustee has not and cannot meet this

objective standard.

The Trustee cannot find a common thread to tie the transfers together because he has not

alleged that BJB had knowledge of the Ponzi scheme.[18] Without a common scheme, each

redemption is a discrete claim that does not put BJB on notice of additional redemptions. *See In

re M. Fabrikant*, 447 B.R. at 181–82, *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x

55 (2d Cir. 2013) ("In avoidance litigation, each transfer is treated as a separate transaction for

---

[17] The Trustee settled with the Fairfield Liquidators on May 9, 2011, triggering a statute of limitations that expired on May 9, 2012. *See* Fairfield Settlement; *see also (In re BLMIS)*, 480 B.R. 501, 522; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.,* 594 B.R. 167, 210-11 (Bankr. S.D.N.Y. 2018) ("A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f)).

[18] The Trustee relies on cases where defendants were either the original tortfeasor or were initial transferees with actual knowledge of the fraudulent transfers. (Opp. 35) (citing cases). The Trustee does not allege that BJB played either role. Unlike the claims relating to transactions involving the Rigas or Madoff families, the Defendants were not at the center of a common scheme to strip assets from BLMIS. *See BNP Paribas*, at 211-12.

18

purposes of applying the 'relation back' doctrine."); *see also BNP Paribas*, 594 B.R. at 210–11

(holding in case seeking subsequent transfers of BLMIS property that "[e]ach transfer is a

separate claim"). As was the case in *BNP Paribas*, which denied relation back, BJB's

redemptions are sufficiently different to constitute distinct claims as they were made by different

BJB customers, at different times, for different amounts and different reasons, pursuant to

different contracts and subscription agreements. (Br. 39.)

The Trustee's authorities are distinguishable. For example, in *Goldberg v. Halbert* the

Court allowed the Trustee to amend his complaint because the original complaint only sought to

recover interest and subsequently the Trustee sought to recover principal from the *same*

transaction. *Goldberg v. Halbert,* (*In re Woodbridge Group of Companies, LLC),* No. 19-51027,

2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021). By contrast, here the Trustee seeks to allege

entirely new transactions that have no connection to the original set of transfers alleged. Whether

there are any similarities with the original transfers is not the test. They plainly do not arise out

of the *same* "conduct, transaction or occurrence … set out in the original pleading" as Rule 15

requires.

Additionally, if the Trustee's catchall "notice" were adequate, the relation back exception

to otherwise time-barred claims would swallow the rule. But Rule 15 is not intended to permit

plaintiffs to revive long outdated claims so long as they include a general reservation in their

original pleading that if they find additional conduct, they will add it. If it did, every plaintiff

would include such language and be entitled to relation back. But the notice requirement is not

so meaningless and such disclaimers are not a substitute for substantive analysis as to whether

the proposed amendments actually arise out of the same conduct, transaction or occurrence

asserted in the original pleading. An identical reservation of rights in *BNP Paribas* could not

4872-1979-0393

save the newly-alleged transfers in that case because the transfers did not otherwise relate back

to the initial pleading. 594 B.R. at 210–12. Similarly, here, the introduction of multiple,

independent transactions, separate from the original transfers, over a decade after the action was

commenced, that nearly double the amount at issue should not be permitted.

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in BJB's moving papers, the Court should

dismiss the Complaint in its entirety.

Dated: October 12, 2022
      New York, New York

                        MCKOOL SMITH, P.C.

                        By:   */s/ Eric B. Halper*
                            Eric B. Halper
                            Hal M. Shimkoski

                        One Manhattan West
                        395 9th Avenue, 50th floor
                        New York, NY 10036
                        T: (212) 402-9400
                        F: (212) 402-9444
                        ehalper@mckoolsmith.com
                        hshimkoski@mckoolsmith.com

                        *Attorneys for Defendant*
                        *Bank Julius Baer & Co. Ltd.*