**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01566 (CGM) |
| v. | |
| UKFP (ASIA) NOMINEES LIMITED, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.     THE TRUSTEE HAS FAILED TO MAKE A PRIMA FACIE SHOWING OF
PERSONAL JURISDICTION ............................................................................................ 2

     A.     The Trustee Fails to Establish that UKFP Purposefully Availed Itself of
the Laws of New York and the United States .......................................................... 2

          1.     UKFP's Indirect Investment Through Fairfield Sentry Is
Insufficient to Establish Personal Jurisdiction .......................................... 2

          2.     UKFP's Alleged Communications With FGG Are Insufficient to
Establish Jurisdiction ................................................................................. 3

          3.     UKFP's Use of Correspondent Accounts in New York Does Not
Support Jurisdiction ................................................................................... 4

     B.     The Exercise of Personal Jurisdiction Over UKFP Would Be
Unreasonable And Would Not Comply With Due Process .................................... 6

     C.     The Trustee Is Not Entitled to Jurisdictional Discovery ........................................ 7

II.     SECTION 546(E) SAFE HARBOR BARS TRUSTEE'S CLAIMS TO
RECOVER ALLEGED SUBSEQUENT TRANSFERS TO UKFP ................................. 8

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016)..................................................................................5

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021)......................................................................5

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................................2, 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018).....................................................................................3, 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)............................................................................................4

*Hau Yin To v. HSBC Holdings PLC*,
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
   2017) ......................................................................................................................3, 5

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)...................................................................................7

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 KMWHBP, 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16,
   2009) ......................................................................................................................7

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ............................................................................................5

*Picard v. Banque SYZ & Co., SA (In re BLMIS)*,
   Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *9, *10 (Bankr.
   S.D.N.Y. June 14, 2022) ........................................................................................10

*Picard v. BNP Paribas S.A. (In re Madoff)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018).................................................................4, 6, 11

*Picard v. Bureau of Labor Insurance (In re Madoff)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012)...................................................................3

*Picard v. Ida Fishman Revocable Tr.*,
   773 F.3d 411 (2d Cir. 2014)...................................................................................10

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
   2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ........................................................3, 10

*Picard v. Multi-Strategy Fund Ltd.*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022) ...................................................................................10

*Royalty Network Inc. v. Dishant.com, LLC*,
   638 F. Supp. 2d 410 (S.D.N.Y. 2009)....................................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*SIPC v. Bernard L. Madoff Investment Securities LLC (Picard v. Fairfield Inv.
   Fund Ltd.)*,
   No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...........................11

*Spetner v. Palestine Inv. Bank*,
   495 F. Supp. 3d 96 (E.D.N.Y. 2020) ......................................................................................6

*SPV OSUS Ltd. v. UBS AG*,
   114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ...............................4

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020).................................................................................11

*Tamam v. Fransabank Sal*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010)....................................................................................4

*Universal Trading & Inv. Co. v. Tymoshenko*,
   No. 11-CV-7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)..................................5

*Vasquez v. H.K. & Shanghai Banking Corp.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020).....................................................................................5

*Walden v. Fiore*,
   571 U.S. 277 (2014)................................................................................................2, 3, 6

**Statutes**

Bankruptcy Code Section 546(e) ........................................................................................ *passim*

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rule 7012(b) .....................................................................1

Federal Rules of Civil Procedure 12(b) ...........................................................................................1

*Memorandum of Law In Support of Defendant's Motion to Dismiss the
   Complaint*, ECF No. 83 .........................................................................................................1

Defendant UKFP (Asia) Nominees Limited ("UKFP" or "Defendant"),[1] by its undersigned counsel, respectfully submits this reply memorandum of law (the "Reply") to the *Trustee's Memorandum of Law In Opposition To Defendant UKFP's Motion to Dismiss*, ECF No. 86 (the "Opposition") in further support of its motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

**PRELIMINARY STATEMENT**

The Trustee cannot make a *prima facie* case for personal jurisdiction over UKFP, a British Virgin Islands ("BVI") entity with no operations in and no meaningful contacts with the United States. Neither the Complaint nor the Opposition adequately alleges any connection between UKFP and BLMIS sufficient to establish jurisdiction. Instead, the Trustee improperly relies on purported *indirect* connections based on Fairfield Sentry's alleged contacts with New York and UKFP's purported knowledge of such connection. The Trustee's remaining arguments for personal jurisdiction, which are premised on attenuated email communications unrelated to the redemptions at issue and UKFP's use of a correspondent U.S. bank account, are likewise unavailing and contrary to established law. Finally, the Trustee's contention that the Section 546(e) safe harbor is inapplicable because the Trustee has plausibly alleged Fairfield Sentry's actual knowledge of fraud is inconsistent with the District Court's controlling decision in *Cohmad*. Accordingly, for the reasons more fully described in the Opening Brief and below, UKFP respectfully requests that the Complaint be dismissed.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Defendant's initial *Memorandum of Law In Support of Defendant's Motion to Dismiss the Complaint*, ECF No. 83 (the "Opening Brief").

**ARGUMENT**

**I.    The Trustee Has Failed to Make a *Prima Facie* Showing of Personal Jurisdiction.**

    **A.    The Trustee Has Failed to Establish that UKFP Purposefully Availed Itself of the Laws of New York and the United States.**

        1.    UKFP's Indirect Investment Through Fairfield Sentry Is Insufficient to Establish Personal Jurisdiction.

The Trustee argues that UKFP's investment in Fairfield Sentry, combined with UKFP's purported knowledge of Fairfield Sentry's investments in BLMIS, gives rise to personal jurisdiction.  Although the Trustee contends that it is "not relying on an imputation theory," Opp. at 12, the Trustee's position effectively amounts to an impermissible imputation of Fairfield Sentry's New York contacts to UKFP.

Indeed, UKFP's purported knowledge of *Fairfield Sentry's* contacts with New York is insufficient to establish that *UKFP* purposefully availed itself of the privilege of conducting activities in the forum.  "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985) (emphasis in original)).  The Supreme Court's decision in *Walden* makes clear that, in all cases, specific jurisdiction must be based on the defendant's own contacts with the forum, not on the defendant's relationship with persons who reside in the forum, and not on the plaintiff's or a third party's contacts with the forum.  *Walden* 571 U.S. at 284-6 (holding that while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish

2

sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

In arguing that UKFP's contacts with Fairfield Sentry are sufficient to confer jurisdiction, the Trustee heavily relies on *Picard v. Bureau of Labor Insurance (In re Madoff)* ("BLI"), 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012).[2]  However, *BLI* does not directly address the argument that Fairfield Sentry's intent to invest funds with BLMIS cannot be imputed to a foreign third party like UKFP, a result foreclosed by the Supreme Court's decision in *Walden*.  Here, a BVI entity (UKFP) contracted with another BVI entity (Fairfield Sentry), and even if UKFP could have foreseen that its actions would have an effect in the U.S., "[m]ere foreseeability" does "not suffice" for specific jurisdiction.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (emphasis added).

2.    UKFP's Alleged Communications With FGG Are Insufficient to Establish Jurisdiction.

The Trustee also argues that alleged email communications between representatives of UKFP and Fairfield Greenwich Group ("FGG") support this Court's exercise of personal jurisdiction, but a closer look at the emails reveals their limited relevance to the issue of jurisdiction.  Cowherd Decl., Exs. 12-14.  The first two emails submitted by the Trustee are correspondence *within* FGG, and one of them even concerns the proposed *rejection* of a transfer from UKFP.  *Id.*, Exs. 12-13.  The only communication from UKFP introduced by the Trustee is an email thanking certain FGG employees for a gift—a book on Frida Kahlo.  *Id.*, Ex. 14.[3]

---

[2] The Trustee also cites *Picard v. JPMorgan Chase & Co. (In re BLMIS)*, 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014), but that case simply cited to other cases in which personal jurisdiction was established, and the court did not rule on any personal jurisdiction issues itself.

[3] Further, "a foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction" if the "communications with and payments to New York were made merely to ensure compliance with contract terms negotiated and executed outside of New York." *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).

3

Moreover, even if UKFP representatives asked FGG representatives questions regarding

Fairfield Sentry, as the Trustee alleges, *see* Opp. at 14; Cowherd Decl., Ex. 13., the Trustee does

not claim that any of the alleged communications "arise out of or relate to" the subsequent transfers

at issue. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)

(finding that, for specific personal jurisdiction over a nonresident defendant, the plaintiff's claims

"must arise out of or relate to the defendant's contacts" with the forum); *see also SPV OSUS Ltd.*

*v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (finding

no jurisdiction for foreign bank defendants that had "only sporadic or indirect contacts with the

United States"). Furthermore, even if any of the communications did concern redemptions, the

Trustee has not identified which ones. "Each transfer is a separate claim, and the Trustee 'must

establish the court's jurisdiction with respect to each claim asserted.'" *Picard v. BNP Paribas S.A.*

*(In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("BNP Paribas") (citations omitted).[4]

Here, the Trustee has not even attempted to tie any of the alleged subsequent transfers to any of

the alleged contacts.

3.    UKFP's Use of Correspondent Accounts in New York Does Not Support
      Jurisdiction.

The Trustee argues that, because UKFP used a Citibank New York bank account (held in

the name of its affiliate) to receive redemption payments from Fairfield Sentry, it is subject to this

Court's jurisdiction. *See* Opp. at 14-15; Cowherd Decl., Exs. 7-10. However, "courts in this

district have routinely held that merely maintaining a New York correspondent bank account is

---

[4] The Trustee cites to the same *BNP Paribas* decision to argue that the court must "assess a defendant's contacts with the forum, not the transfer's," but the Trustee's assertion is inconsistent with the decision in *BNP Paribas*. In *BNP Paribas,* this Court cited the Second Circuit requirement of a proximate cause connection between the defendant's jurisdictional contacts and the underlying claim. *BNP,* 594 B.R. at 190 (quoting *SPV Osus,* 882 F.3d at 344); *see also Charles Schwab*, 883 F.3d at 83 (a plaintiff "must establish the court's jurisdiction with respect to *each claim asserted*.").

insufficient to subject a foreign bank to personal jurisdiction." *Tamam v. Fransabank Sal*, 677 F.

Supp. 2d 720, 727 (S.D.N.Y. 2010) (citing cases). Specifically, where a correspondent account

"does not appear to have been necessary to the Ponzi scheme's success," courts have not found

the use of the account to be purposeful. *Vasquez v. H.K. & Shanghai Banking Corp.*, 477 F. Supp.

3d 241, 262 (S.D.N.Y. 2020) (no specific jurisdiction over foreign bank defendant where use of

correspondent bank account was not essential to the Ponzi scheme); *see, e.g., Hau Yin To v. HSBC

Holdings, PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017)

("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged

Ponzi scheme."), aff'd, 700 F. App'x 66, 67-68 (2d Cir. 2017). Here, the Trustee does not allege

that the account was anything more than a passive, incidental step in the redemption of shares,

rendering it insufficient to confer jurisdiction.[5]

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) is instructive. In

*Berdeaux*, Judge Caproni held that the at-issue transfer's passage through a New York

correspondent account was insufficient to show a non-bank defendant's "purposeful" use of the

account, "even if [he] not only knew that a New York correspondent account was being used but

actually coordinated [its] use," where he did not maintain the account and the money only passed

through it en route to a foreign bank account. *Berdeaux*, 561 F. Supp. 3d at 403 (citations and

footnote omitted); *see also Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-CV-7877 (PAC),

2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (finding no personal jurisdiction where "a

---

[5] The Trustee's argument that "[w]hether the Citibank New York account was used as a correspondent bank does nothing to change [the] analysis" is misplaced. Opp. at 15. The Trustee relies on *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) and *Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016) to advance this argument, but these were cases where the correspondent account was the defendant bank's own account and therefore they are inapplicable. Here, the correspondent account was at a third-party bank and was not even held in UKFP's name.

foreign individual holding foreign accounts . . . moved money through New York via a correspondent account.").[6]

The transfers at issue in this case are between UKFP and Fairfield Sentry, two foreign entities. The Fairfield Liquidators themselves confirmed that the same transfers the Trustee seeks to recover here occurred entirely outside of the United States. *See* Op. Br. at 8. UKFP's incidental use of a correspondent account is not sufficient to subject UKFP to the jurisdiction of this Court.[7]

## B. The Exercise of Personal Jurisdiction Over UKFP Would Be Unreasonable And Would Not Comply With Due Process.

As demonstrated above, the Complaint and Opposition fail to satisfy the Trustee's burden to plead minimum contacts. For similar reasons, the exercise of personal jurisdiction over UKFP would be unreasonable and would fail to comply with due process. *See World-Wide Volkswagen Corp.,* 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted); *see also Walden,* 571 U.S. at 286. Specifically, given that "foreseeability" of suit in the forum "is critical to due process analysis," *Burger King v. Rudciewicz*, 471 U.S. 462, 474 (1985), this Court's exercise of personal jurisdiction would be improper since UKFP could

---

[6] The Trustee's argument that "[t]he same reasoning applies to Defendant's use of Sentry's Republic National Bank of New York Account" is again misplaced and is yet another attempt to impute third-party contact that Fairfield Sentry had with New York to UKFP. *See Spetner v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 113 (E.D.N.Y. 2020) (no jurisdiction where defendant engaged in a "standard correspondent banking relationship" with a third party and did not set up or direct the correspondent account at issue). The Trustee cites *BNP Paribas*, which found jurisdiction based on multiple other jurisdictional contacts not present here, including the fact that employees operated out of New York and that the subsequent transfers arose, for the most part, from those employees' New York contacts. *BNP Paribas*, 594 B.R. at 190. UKFP's jurisdictional contact, if any, is nothing close to that in *BNP Paribas*, nor does the Trustee make any comparable allegations.

[7] With respect to the issue of subscription agreement addressed in the Opposition, the Trustee concedes that the subscription agreements alone cannot establish jurisdiction. Opp. at 18. And for the reasons set forth in the Opening Brief, the subscription agreements, whether alone or combined with any other contacts alleged by the Trustee, does not subject UKFP to jurisdiction of this Court. Opening Brief at 11-13.

not have possibly foreseen that a foreign investor like itself who invested in a foreign feeder fund like Fairfield Sentry could be sued in New York.

### C.       The Trustee Is Not Entitled to Jurisdictional Discovery.

Well aware of UKFP's lack of contacts with New York, the Trustee argues in the alternative that, if this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, it should be granted jurisdictional discovery. Opp. at 20. This request should be denied because (1) UKFP has based its dismissal motion solely on the Trustee's allegations in the Complaint and has not submitted any evidence; (2) the Trustee has failed to make "a threshold showing" that there is a basis for jurisdictional discovery; and (3) the Trustee has failed to identify how any proposed discovery would uncover facts sufficient to sustain jurisdiction. *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 KMWHBP, 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards."). Indeed, given that the Trustee has failed to identify any particular topics on which it requires discovery, jurisdictional discovery would be little more than a fishing expedition. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (denying request for jurisdictional discovery where plaintiff failed to "identify any particular facts it would seek to adduce through such discovery or suggest how discovery could aid in this Court's jurisdictional inquiry"). Moreover, as evidenced from the exhibits introduced by the Trustee, the Trustee already possesses communications with UKFP; the

mere fact that those documents fail to evince sufficient contacts with New York is not a basis for additional discovery. Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

## II.        The Section 546(e) Safe Harbor Bars the Trustee's Claims.

The Complaint is barred by the statutory safe harbor set forth in Section 546(e) of the Bankruptcy Code. Indeed, UKFP established each of the required elements of a 546(e) defense in its motion to dismiss, and the Trustee fails to challenge that Section 546(e)'s elements are satisfied here.[8] Instead, the Trustee relies on the so-called "knowledge" exception set out in *Cohmad* to argue that UKFP may not invoke the safe harbor because Fairfield Sentry, as the alleged initial transferee, purportedly had actual knowledge of Madoff's fraud. In so doing, the Trustee does not even attempt to demonstrate that UKFP, the alleged subsequent transferee, had actual knowledge of Madoff's fraud.

The knowledge exception is not found in the plain language of Section 546(e). Instead, it is a limited, non-statutory exception to Section 546(e) that the District Court in *Cohmad* created, based on a transferee's level of knowledge about the underlying transactions from which the transfer originated. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154, at \*4 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("[T]he Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted"). The Trustee seizes on this exception to claim that Fairfield Sentry's alleged actual knowledge of Madoff's fraud bars not only Fairfield Sentry, but also subsequent transferees like UKFP, from invoking the safe harbor.

---

[8] The Trustee fails to respond to any of UKFP's arguments showing that the alleged transfers to UKFP satisfy Section 546(e)'s requirements. Instead, reasoning that "the Trustee has sufficiently pled that Sentry had actual knowledge of Madoff's fraud," the Trustee simply deems UKFP's arguments to be irrelevant. Opp. at 22.

8

However, the Trustee misconstrues the *Cohmad* ruling.  The knowledge exception to the safe harbor constructed in *Cohmad* is based on the knowledge of the *particular transferee* seeking to apply the safe harbor, whether an initial *or* subsequent transferee.  Accordingly, when an initial transferee has actual knowledge of the fraud, and thus knows there is no bona fide settlement payment or securities contract, *that initial transferee* cannot invoke the safe harbor to protect the initial transfer.  Similarly, when a subsequent transferee has actual knowledge of the fraud, *that subsequent transferee* cannot invoke the safe harbor that would otherwise apply to the initial transfer.  *Id.* at \*7 ("to the extent that an innocent customer transferred funds to *a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee* cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor") (emphasis added).  But nowhere in the *Cohmad* decision does it suggest that an innocent subsequent transferee like UKFP should be deprived of the safe harbor defense merely because the initial transferee allegedly knew of Madoff's fraud.  *Id.* at \*7.

To the contrary, where the subsequent transferee lacks actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract, and that reasonable expectation should be protected by the safe harbor that Congress enacted.  *Id.* at \*4.  Indeed, Judge Rakoff noted that the purpose of Section 546(e) is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries[,]" which "goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract."  *Id.* at \*3.  UKFP, a "legitimate investor" with no actual knowledge of Madoff's fraud, but with "reasonable expectations" that it is receiving a settlement payment, is precisely the type of transferee that Section 546(e) is intended to protect.  *Id.* at \*4.  *See also Picard v. Ida Fishman Revocable Tr.*,

9

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)").

Relying on the notion that "the concepts of avoidance and recovery are separate and distinct," the Trustee also argues that, under *Cohmad*, "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees." Opp. at 23 (citing *Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013)). In line with that reasoning, this Court has recently held in *Multi Strategy* and other adversary proceedings that the 546(e) "safe harbor is not applicable to subsequent transfers." *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 94-95 (Bankr. S.D.N.Y. 2022); *Picard v. Banca Carige S.P.A. (In re BLMIS)*, Adv. Proc. No. 08-01789, 2022 WL 2387522, at *5, *6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque SYZ & Co., SA (In re BLMIS)*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *9, *10 (Bankr. S.D.N.Y. June 14, 2022). However, UKFP respectfully submits that these decisions misapply *Cohmad* and disregard other holdings applying the Section 546(e) safe harbor to subsequent transferees, including in actions brought by this Trustee. Indeed, the District Court in *Cohmad* expressly stated that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against *recovery* of those funds." *Cohmad*, 2013 WL 1609154, at *7. Judge Rakoff explained that the District Court had previously held that Section 546(e) "required the dismissal" of both the Trustee's avoidance claims and "*related recovery claims under Section 550(a).*" *Id.* at *3 (emphasis added). Similarly, in *SIPC v. Bernard L. Madoff Investment*

10

*Securities LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-1789 (CGM), 2021 WL 3477479

(Bankr. S.D.N.Y. Aug. 6, 2021), this Court, citing *Cohmad*, explained that a subsequent transferee

is "entitled to raise a § 546(e) defense *against recovery*" of funds sought by the Trustee. *Id.* at \*3

(emphasis added).[9]

In any event, UKFP is not arguing that Section 546(e) protects the alleged subsequent

transfers from Fairfield Sentry to UKFP. Rather, it bases its safe harbor defense on Section

546(e)'s applicability to the alleged *initial transfers* from BLMIS to Fairfield Sentry. *See* Opening

Br. at 16-22. The issue is not whether the safe harbor applies to the initial transfer (it clearly does),

but whether the actual knowledge of the initial transferee strips the safe harbor's protection from

a subsequent transferee that does not have, and is not alleged to have, actual knowledge of fraud.

As discussed above, *Cohmad* stands for the proposition that innocent transferees were

meant to be protected from liability. Judge Rakoff noted that the "one caveat" to the subsequent

transferee's entitlement to the safe harbor is where the subsequent transferee itself has "actual

knowledge of Madoff Securities' fraud," which the Trustee has not alleged here. *Cohmad*, 2013

WL 1609154, at \*7. Thus, the inquiry centers on the subsequent transferee's knowledge, rather

than the initial transferee's. The Trustee has not alleged (and cannot allege) that UKFP had actual

knowledge of Madoff's fraud, and the Complaint must therefore be dismissed.

[*Remainder of page intentionally left blank.*]

---

[9] The Trustee also cites to *BNP* and *SunEdison* in furtherance of its argument, but neither case discusses whether subsequent transferees are barred from invoking the 546(e) safe harbor where the initial transferee had actual knowledge of fraud. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191-97 (Bankr. S.D.N.Y. 2018); *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 512-14 (Bankr. S.D.N.Y. 2020). Furthermore, in *BNP*, the trustee alleged that the subsequent transferees did, in fact, have knowledge of the fraud. This case is inapplicable here, given that the Trustee has not alleged that UKFP had knowledge of the fraud.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the Opening Brief, UKFP respectfully

requests that the Court dismiss the Complaint with prejudice.


Dated:  October 13, 2022
       New York, New York

                     Respectfully submitted,

                     MAYER BROWN LLP

                     By: *Joaquin M. C de Baca*
                        Joaquin M. C de Baca
                        1221 Avenue of the Americas
                        New York, New York 10020
                        Tel: (212) 506-2500
                        Email: jcdebaca@mayerbrown.com

                     *Counsel for Defendant UKFP (Asia) Nominees Limited*

12