James L. Bromley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
bromleyj@sullcrom.com

*Counsel for Defendant Delta National Bank and Trust Company*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF, <br><br> Plaintiff, <br><br> v. <br><br> DELTA NATIONAL BANK AND TRUST COMPANY, <br><br> Defendant. | Adv. Pro. No. 11-02551 (CGM) <br><br> **ANSWER TO COMPLAINT AND JURY DEMAND** |

Defendant Delta National Bank and Trust Company ("Delta Bank"), by its undersigned counsel Sullivan & Cromwell LLP, as and for its Answer to the Complaint of Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard L. Madoff, states as follows:

## GENERAL DENIAL

Except as otherwise expressly admitted herein, Delta Bank denies each and every allegation in the Complaint. Delta Bank states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, Delta Bank does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint. To the extent it is later determined that a response is required to any allegation Delta Bank claims has been mooted by a prior dismissal of the Trustee's claims, Delta Bank denies any such allegation. Delta Bank expressly reserves the right to amend and/or supplement the Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

### I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER**:    The allegations of paragraph 1 contain legal conclusions to which no response is required. To the extent a response is required, Delta Bank denies the allegations of

---

[1] Footnote 1 of the Complaint states:  "SIPA § 78*lll*(4) defines 'Customer Property' as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

paragraph 1 of the Complaint, except admits on information and belief that Madoff perpetrated a

Ponzi scheme and admits that the Trustee purports to bring this adversary proceeding as part of

the Trustee's efforts to recover BLMIS Customer Property within the meaning of 15 U.S.C. §

78*lll*(4).

2.      With this Complaint, the Trustee seeks to recover approximately
$20,634,958 in subsequent transfers of Customer Property made to Defendant Delta Bank. The
subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry
Limited ("Fairfield Sentry"), which was a Madoff feeder fund.  Fairfield Sentry is currently in
liquidation in the British Virgin Islands ("BVI").  It was a BVI company that had direct customer
accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing
assets with BLMIS.

**ANSWER**:    The allegations of paragraph 2 contain legal conslusions to which

no response is required.  To the extent a response is required, Delta Bank denies the allegations of

paragraph 2 of the Complaint, including that Delta Bank received subsequent transfers of

Customer Property from BLMIS or any Madoff feeder fund, except admits that the Trustee

purports to recover approximately $20,634,958 in alleged subsequent transfers to Delta Bank, and

that, on information and belief, Fairfield Sentry is a BVI company currently in liquidation in the

BVI.  Delta Bank denies knowledge or information sufficient to form a belief as to whether

Fairfield Sentry had direct customer accounts with BLMIS's investment advisory business.

3.      When Defendant Delta Bank received the subsequent transfers of BLMIS
Customer Property, Defendant Delta Bank offered private banking services through its main office
in New York, its branch office in Miami, and affiliates in Geneva and Grand Cayman.  With twenty
five years of experience, Delta Bank has $3.193 billion in assets under management, and claims
to utilize prudent management strategy.  *See* Exhibit A.

**ANSWER**:    Delta Bank denies the allegations of paragraph 3 of the Complaint,

except admits that Delta Bank offered private banking services through its main office in New

York, its branch office in Miami, and affiliates in Geneva and Grand Cayman, and that Exhibit A

to the Complaint reflects information published on Delta Bank's website in 2011.

## II.    **JURISDICTION AND VENUE**

4.    The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Delta Bank as subsequent transferee of funds originating from BLMIS.

**ANSWER**:    The allegations of paragraph 4 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, Delta Bank admits that the Trustee has brought this adversary proceeding, but denies the remaining allegations of paragraph 4 of the Complaint.

5.    This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending.  The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER**:    Delta Bank admits the allegations of the first sentence of paragraph 5 of the Complaint.  Delta Bank denies knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 5.  The third sentence of paragraph 5 sets forth legal conclusions to which no response is required, but to the extent a response is required, Delta Bank denies that this Court has jurisdiction to enter a final order or judgment in this proceeding.

6.    Defendant Delta Bank is a New York entity and subject to personal jurisdiction in this judicial district pursuant to New York Civil Practice Law and Rules § 301 (McKinney 2001) and Bankruptcy Rule 7004.  In addition, Defendant Delta Bank purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund.  Defendant Delta Bank also knowingly received transfers of Customer Property from BLMIS by withdrawing money from Fairfield Sentry.

**ANSWER**:    The allegations of paragraph 6 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, Delta Bank admits that it has its headquarters in New York, but otherwise denies the allegations of paragraph 6 of the Complaint.

7.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**ANSWER**:    The allegations of paragraph 7 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, Delta Bank denies the allegations of paragraph 7 of the Complaint.  Delta Bank does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court.

8.    Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER**:    Delta Bank admits the allegations of paragraph 8 of the Complaint.

## III.    BACKGROUND

9.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.  The District Court Proceeding remains pending.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore denies such allegations.

10.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint, and respectfully refers

the Court to the order issued by the Honorable Louis L. Stanton for its complete and accurate

contents.

11.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 11 of the Complaint, and respectfully refers

the Court to the application filed by SIPC alleged in paragraph 11 of the Complaint for its complete

and accurate contents.

12.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

    a.    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

    b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

    c.    removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 12 of the Complaint, and respectfully refers

the Court to the order issued by Judge Stanton alleged in paragraph 12 for its complete and accurate

contents.

13.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 13 of the Complaint, and respectfully refers

the Court to the orders issued by the Court alleged in paragraph 13 for their complete and accurate

contents.

14.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case
captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket
No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the
United States Attorney's Office for the Southern District of New York.  At the Plea Hearing,
Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of
[BLMIS]." *Id.* at 23.  Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I
was doing [was] wrong, indeed criminal." *Id.*  On June 29, 2009, Madoff was sentenced to 150
years in prison.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 14 of the Complaint, and respectfully refers

the Court to the transcript of the plea hearing alleged in paragraph 14 for its complete and accurate

contents.

15.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled
guilty to participating in and conspiring to perpetuate the Ponzi scheme.  At a plea hearing on
August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS)
(S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information.  Among other
things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the
1980s. *Id.* at 46.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 15 of the Complaint, and respectfully refers

the Court to the transcript of that hearing for a complete and accurate statement of its contents.

## IV.    TRUSTEE'S POWERS AND STANDING

16.    As Trustee appointed under SIPA, the Trustee is charged with recovering
and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any
other assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process
of marshaling BLMIS's assets, and this liquidation is well underway.  However, the estate's
present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they
invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under
SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities
that received preferences and fraudulent transfers to the detriment of defrauded customers whose
money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee
will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-
2(c)(1).

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint and therefore denies such allegations, and states that the allegations concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code set forth legal conclusions to which no response is required. To the extent a response is required, Delta Bank denies such allegations.

17.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER**:    The allegations of paragraph 17 set forth legal conclusions to which no response is required.

18.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER**:    The allegations of paragraph 18 set forth legal conclusions to which no response is required.

19.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544 and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER**:    The allegations of paragraph 19 set forth legal conclusions to which no response is required.

## V.    THE DEFENDANT

20.    Defendant Delta Bank offers private banking services and maintains a place of business at 650 Fifth Avenue, 26th Floor, New York, New York 10019.

**ANSWER**:    Delta Bank admits the allegations of paragraph 20 of the Complaint.

## VI.    THE PONZI SCHEME

21.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff,

as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under § 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 21 of the Complaint and therefore denies such

allegations.

      22.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 22 of the Complaint and therefore denies such

allegations.

      23.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 23 of the Complaint and therefore denies such

allegations.

      24.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for

the IA Business's customer accounts.  In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities.  Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 24 of the Complaint, and respectfully refers

the Court to the plea hearing transcript for its complete and accurate contents.

      25.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 25 of the Complaint and therefore denies such

allegations.

      26.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme.  The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments to enrich himself, his associates, and his family.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of paragraph 26 and therefore denies such

allegations.

      27.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS Accountholders, BLMIS did not have the funds to pay investors for those new investments.  BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

      **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 27 of the Complaint and therefore denies such

allegations.

28.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 28 of the Complaint and therefore denies such

allegations.

29.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 29 of the Complaint and therefore denies such

allegations.

30.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth only a fraction of that amount.  Customer accounts had not accrued any real profits because virtually no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 30 of the Complaint and therefore denies such

allegations.

31.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 31 of the Complaint and therefore denies such

allegations.

## VII.    THE TRANSFERS

32.    Defendant Delta Bank received subsequent transfers of Customer Property from Fairfield Sentry, which maintained one or more customer accounts with BLMIS.

**ANSWER**:    Delta Bank admits that it received funds from Fairfield Sentry, but

otherwise denies the allegations of paragraph 32 of the Complaint.

### A.    Initial Transfers From BLMIS to Fairfield Sentry

33.    The Trustee has filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv.  Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry, in the amount of approximately $3 billion (the "Fairfield Amended Complaint").  The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**ANSWER**:    Delta Bank (i) admits that the Trustee filed an action styled as

*Picard* v. *Fairfield Sentry, Ltd., et al.*, Adv. Pro No. 09-1239 (BRL) (the "Sentry Action"), (ii)

lacks knowledge and information sufficient to form a belief as to the truth of the allegation of the

amounts of the alleged transfers alleged in paragraph 33 and therefore denies such allegations, (iii)

lacks knowledge sufficient to form a belief as to which of the three complaints filed in the Sentry

Action the Trustee purports to incorporate by reference in the Complaint in this action and

therefore denies such allegations, (iv) denies that the initial transfers of Customer Property to

Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable,

(v) to the extent necessary to support such denial, denies for lack of knowledge sufficient to form

a belief as to the truth of the allegations, each and every paragraph of each of the three complaints

filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to

Sentry are or were avoided or avoidable, and (vi) objects to the incorporation by reference of, and

therefore does not answer, each and every other paragraph and allegation in the three complaints

in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by

any of the three complaints in the Sentry Action other than the issue of the avoidance or

avoidability of the initial transfers of Customer Property, but reserves the right to rely on and

introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as

opposing party admissions admissible for the truth of their contents.  To the extent any further

response is required, Delta Bank lacks knowledge sufficient to form a belief as to the truth of the

remaining allegations in paragraph 33 of the Complaint and therefore denies such allegations.

34.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the existence, alleged timing and amounts of the transfers alleged in

paragraph 34  of the Complaint and therefore denies such allegations.  The remaining allegations

of paragraph 34 set forth legal conclusions to which no response is required.  To the extent a

response is required, Delta Bank denies such allegations in paragraph 34 of the Complaint.

35.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers").  The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the existence, alleged timing and amounts of the transfers alleged in paragraph 35 of

the Complaint and therefore denies such allegations.  The remaining allegations in paragraph 35

set forth legal conclusions to which no response is required.  To the extent a response is required,

Delta Bank denies such allegations in paragraph 35 of the Complaint.

36.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference Period

Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

      **ANSWER**:   Delta Bank denies knowledge or information sufficient to form a belief as to the existence, alleged timing and amounts of the transfers alleged in paragraph 36 of the Complaint and therefore denies such allegations.  The remaining allegations in paragraph 36 set forth legal conclusions to which no response is required.  To the extent a response is required, Delta Bank denies such allegations in paragraph 36 of the Complaint.

      37.   The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers."  Charts setting forth these transfers are included as Exhibits B and C.

      **ANSWER**:   Delta Bank lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 of the Complaint and therefore denies such allegations, except admits that Exhibits B and C are attached to the Complaint.

      38.   Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement").  As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment against Fairfield Sentry in the amount of $3,054,000,000.  Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

      **ANSWER**:   Delta Bank admits upon information and belief that the Court entered orders and a judgment as described in paragraph 38 on or about the dates alleged therein, and respectfully refers the Court to the referenced orders and the referenced judgment for their complete and accurate contents.

### B.    Subsequent Transfers From Fairfield Sentry To Defendant Delta Bank

      39.   A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Delta Bank and is recoverable from Defendant Delta Bank pursuant to section 550 of the Bankruptcy Code.  Based on the Trustee's investigation to date, approximately $20,634,958 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Delta

Bank (the "<u>Fairfield Sentry Subsequent Transfers</u>").  A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit D.

        **ANSWER**:    The first sentence of paragraph 39 of the Complaint sets forth legal

conclusions to which no response is required.  To the extent a response is required, Delta Bank

denies the allegations in the first sentence of paragraph 39 of the Complaint.  As to the second

sentence of paragraph 39 of the Complaint, Delta Bank admits that it received funds from Fairfield

Sentry, but denies any remaining allegations of paragraph 39.

        40.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

        **ANSWER**:    Delta Bank denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 40 of the Complaint and therefore denies such

allegations.

**<u>COUNT ONE</u>**
**<u>RECOVERY OF SUBSEQUENT TRANSFERS –</u>**
**<u>11 U.S.C. §§ 550(a) AND 551</u>**

        41.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

        **ANSWER**:    Delta Bank incorporates and reasserts its responses to the allegations

contained in each of the previous paragraphs of this Complaint as though set forth fully herein.

        42.    Defendant Delta Bank received the Fairfield Sentry Subsequent Transfers, totaling approximately $20,634,958, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

        **ANSWER**:    The allegations of paragraph 42 set forth legal conclusions to which

no response is required.  To the extent a response is required, Delta Bank denies the allegations of

paragraph 42 of the Complaint.

        43.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Delta Bank.

**ANSWER**:     Delta Bank denies the allegations of paragraph 43 of the Complaint.

44.    Defendant Delta Bank is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**ANSWER**:     Delta Bank denies the allegations of paragraph 44 of the Complaint.

45.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Defendant Delta Bank recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER**:     The allegations of paragraph 45 set forth legal conclusions to which no response is required.  To the extent a response is required, Delta Bank denies the allegations of paragraph 45 of the Complaint.

## **RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF**

Delta Bank denies that the Trustee is entitled to his requested judgment in favor of the Trustee and against Delta Bank or to any of the relief described herein.

## **AFFIRMATIVE DEFENSES**

Delta Bank asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff.  In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Delta Bank hereby preserves each and every defense at law, in equity, or otherwise, available under federal and state law, including common law.  Further, Delta Bank reserves the right to amend this Answer to assert other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.  These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

The alleged subsequent transfers to Delta Bank, if any, may not be recovered because the alleged initial transfers—the alleged Fairfield Six-Year Transfers (excluding the alleged Fairfield Two-Year Transfers)—if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e). Any such alleged initial transfers were (i) made by or to (or for the benefit of) a stockbroker (BLMIS), financial institution (Fairfield Sentry or Delta Bank), financial participant (Delta Bank), or other covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract (between BLMIS and Fairfield Sentry, and/or between Fairfield Sentry and Delta Bank); and (iii) made more than two years before the petition date and are thus not recoverable under 11 U.S.C. § 548(a)(1)(A). Because the alleged Fairfield Six-Year Transfers (excluding the alleged Fairfield-Two Year Transfers) are not avoidable, property received by Delta Bank as part of the alleged Fairfield Six-Year Transfers (excluding the alleged Fairfield-Two Year Transfers), if any, is not recoverable from Delta Bank.

In addition, at the time of the alleged transfers from Fairfield Sentry to Delta Bank, Delta Bank took any funds received from Fairfield Sentry for value and in good faith, and Delta Bank had no actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

## SECOND AFFIRMATIVE DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

Any property that Delta Bank received from Fairfield Sentry was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and therefore any such property is not recoverable by the Trustee from Delta Bank.

17

## THIRD AFFIRMATIVE DEFENSE

### For Value, in Good Faith, and Without Knowledge of Voidability
### (11 U.S.C. § 550(b))

Delta Bank took any funds it received from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of any alleged initial transfers from BLMIS to Fairfield Sentry, and thus the alleged transfers to Delta Bank, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

Delta Bank took for value because the alleged transfers it received from Fairfield Sentry, if any, were made in exchange for Delta Bank's surrender of its shares in Fairfield Sentry.

Delta Bank did not have actual knowledge of any fraudulent purpose behind the alleged transfers it received, if any. Delta Bank did not know facts that would have prompted a reasonable person in Delta Bank's position to conduct further inquiry into whether there was any fraudulent purpose behind any alleged transfers. Even if Delta Bank had been on inquiry notice of a possible fraudulent purpose behind any alleged transfers it received, a diligent inquiry by Delta Bank would not have discovered such a fraudulent purpose. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Delta Bank, and with more access to BLMIS personnel and documentation than Delta Bank, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. Delta Bank did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud. Diligent inquiry by Delta Bank would not have discovered the fraudulent purpose of any alleged transfers.

Delta Bank did not have knowledge of the voidability of any alleged transfers from BLMIS to Fairfield Sentry when it received the alleged subsequent transfers, if any.

## FOURTH AFFIRMATIVE DEFENSE

### Lack of Subject Matter Jurisdiction
### (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## FIFTH AFFIRMATIVE DEFENSE

### Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Delta Bank's Motion to Dismiss the Complaint, filed on April 29, 2022 in this adversary proceeding, ECF 97, and proceedings thereon.

## SIXTH AFFIRMATIVE DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

The Trustee may not recover the alleged transfers from Fairfield Sentry to Delta Bank, if any, because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sentry.

## SEVENTH AFFIRMATIVE DEFENSE

### No Ponzi Scheme Presumption

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from Delta Bank were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

## EIGHTH AFFIRMATIVE DEFENSE

### Delta Bank as Initial Transferee—Mere Conduit Defense

Fairfield Sentry was a mere conduit, and consequently, any claimed transfers were initial transfers from BLMIS to Delta Bank.  As the Trustee stated in *Picard* v. *Grosvenor*

*Investment Management Ltd.*, No. 12-1021 (Bankr. S.D.N.Y. June 15, 2022), Fairfield Sentry's

"sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed] between

[Sentry] and BLMIS" (internal quotation marks and citation omitted). 12-1021 ECF 115, at 3, 6.

As a result, any redemptions received by Delta Bank were initial transfers from BLMIS to Delta

Bank that are subject to the safe harbor under 11 U.S.C. § 546(e); any Trustee proceeding to avoid

the alleged transfers is untimely; and Delta Bank may retain the amount it received, if any, pursuant

to 11 U.S.C. § 548(c) and 11 U.S.C. § 548(d)(2)(B) because it took any alleged transfers for value

and in good faith.

## NINTH AFFIRMATIVE DEFENSE

### Fairfield Sentry as Initial Transferee—Mere Conduit Defense

In the alternative, the Trustee's claims are barred because Delta Bank was not a

transferee of any transfers claimed by the Trustee to be subsequent transfers. To the extent that

Delta Bank received any alleged subsequent transfer, Delta Bank (a) received each alleged

subsequent transfer in good faith, in its capacity as a bank acting as custodian, and for the account

and benefit of one or more of its customers, (b) did not have dominion or control or the right to

assert dominion or control over such alleged subsequent transfers or the proceeds thereof or to use

such alleged subsequent transfers or the proceeds thereof for its own purposes; (c) rather, was a

mere conduit for its customers; and (d) was obligated to, and did, credit such alleged subsequent

transfers to the account and for the benefit of one or more of its customers, who alone had the right

to assert dominion and control over such alleged subsequent transfers received by Delta Bank for

their benefit.

### TENTH AFFIRMATIVE DEFENSE

**New York Debtor and Creditor Law**

The claims against Delta Bank are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

### ELEVENTH AFFIRMATIVE DEFENSE

**Section 278(1) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

### TWELFTH AFFIRMATIVE DEFENSE

**Section 278(2) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## THIRTEENTH AFFIRMATIVE DEFENSE

### Sufficient SIPC Funds

Trustee's claims should be dismissed if Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

## FOURTEENTH AFFIRMATIVE DEFENSE

### Failure to Mitigate

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has failed to mitigate, minimize or avoid damages, if any.

## FIFTEENTH AFFIRMATIVE DEFENSE

### British Virgin Island Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## SIXTEENTH AFFIRMATIVE DEFENSE

### No Interest

The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### Statute of Limitations

The Trustee's claim is barred by the statute of limitations.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### Estoppel

The Trustee's claim is barred by estoppel.

## NINETEENTH AFFIRMATIVE DEFENSE

### Unreasonable Delay

The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago, lay dormant for years and concerns alleged transfers made nearly 20 years ago, is unreasonable and unfairly prejudices Delta Bank's ability to defend itself, including, without limit, with respect to any claim by the Trustee for interest accruing from an after the date of the filing of Complaint.

## TWENTIETH AFFIRMATIVE DEFENSE

### Violation of Due Process (U.S. Const. Amend. V)

The use of the doctrine of law of the case to apply to Delta Bank rulings made in other adversary proceedings to which it was not a party and in which it did not participate violates Delta Bank's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent transfer from Delta Bank to the extent he has recovered the amount of the initial transfers from Fairfield Sentry or any other immediate or mediate transferee, and the amount of the avoided initial transfers is included the alleged Customer Property that the Trustee alleges Delta Bank received.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Delta Bank, Delta Bank reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### Double Recovery

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds. This Court approved the Fairfield Settlement Agreement on June 7, 2011 and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment"). The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the Liquidators recover from Delta Bank in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should Delta Bank be subject to recovery of identical funds from two separate entities.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Delta Bank demands a trial by jury on all issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Delta Bank does not consent to entry of final orders or judgment by the Bankruptcy Court.

## <u>DEFENDANT'S REQUEST FOR RELIEF</u>

WHEREFORE, Delta Bank demands judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: October 13, 2022
      New York, New York

/s/ James L. Bromley
James L. Bromley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  100004
Telephone: (212) 558-4000
Email:  bromleyj@sullcrom.com

*Counsel for Defendant Delta National Bank and Trust Company*