**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>      Plaintiff,<br><br>  v.<br><br>ZEPHYROS LIMITED,<br><br>      Defendant. | Adv. Pro. No. 12-01278 (CGM) |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ...................................................................................3

    I.       THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................3

    II.      DEFENDANT AND ITS INVESTMENTS IN RYE PORTFOLIO......................4

ARGUMENT ......................................................................................................6

    I.       THE AMENDED COMPLAINT PLAUSIBLY PLEADS THAT
           DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER
           SECTION 550(A) .....................................................................................6

           A.      The Trustee Has Plausibly Alleged That the Subsequent Transfers
                   Defendant Received Contained Stolen BLMIS Customer Property...........6

           B.      Defendant Misstates the Trustee's Pleading Burden ..................................7

    II.      THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE
           CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE...............9

    III.     SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT.........13

           A.      Rye Portfolio Had Actual Knowledge of Madoff's Fraud........................13

           B.      Section 546(e) Does Not Apply Independently to Recovery Actions .......14

    IV.     THE TRUSTEE HAS PLED THAT RYE PORTFOLIO HAD ACTUAL
           KNOWLEDGE ........................................................................................19

    V.      THE NEW TRANSFER RELATES BACK TO THE ORIGINAL
           COMPLAINT .........................................................................................25

           A.      Relevant Legal Standards .........................................................................25

           B.      The New Transfer Was Made as Part of the Same Course of Conduct
                   as the Transfers Alleged in the OC .........................................................26

           C.      The OC Provided Notice to Defendant That the Trustee Would Sue
                   for Any Additional Transfers...................................................................28

CONCLUSION.................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ............................................................. 6-7

*Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292 (S.D.N.Y. 2009) .... 26-27, 30

*Adler v. Pataki*, 185 F.3d 35 (2d. Cir 1999) ................................................ 19

*Carbon Inv. Partners, LLC v. Bressler*, No. 20 Civ. 3617 (ER),
    2021 WL 3913526 (S.D.N.Y. Sep. 1, 2021) .................................................... 24

*Goldberg v. Halbert (In re Woodbridge Group of Companies, LLC)*,
    No. 19-51027 (JKS), 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021) ......................... 27

*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d. Cir 1994) ................................... 19

*Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424,
    2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) .....................................26-27, 29-30

*In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ........................... 11

*In re Chaus Sec. Litig.*, 801 F. Supp. 1257 (S.D.N.Y. 1992) ................................. 27

*In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................... 10-11

*In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560 (S.D.N.Y. 2007),
    *aff'd sub nom. Pappas v. Bank of America Corp.*, 309 F. App'x 536 (2d Cir. 2009) ...... 25

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ................................................................. 15

*In re SunEdison, Inc.*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................. 16

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022) .................. 15, 18

*Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM),
    2020 WL 3077151 (D. Minn. June 10, 2020) ................................................ 9

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ...................................... 10

*Lynch v. City of N.Y.*, 952 F.3d 67 (2d Cir. 2020) ........................................ 21

*Mallis v. Bankers Trust Co.*, 717 F.2d 683 (2d Cir. 1983) .......................................................... 25

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
     Adv. Pro. No. 18-50489 (CSS), 2022 WL 2240122 (Bankr. D. Del. June 22, 2022) ...... 19

*Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*, 443 B.R. 918 (Bankr. N.D. Ga. 2011) ...... 29

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013).... 8

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*,
     67 B.R. 304 (Bankr. S.D.N.Y. 1986) ................................................................................ 28

*Picard v. Avellino (In re BLMIS)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) .................................... 11

*Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM),
     2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).................................................... 2, 17

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
     2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)................................................ passim

*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018)............. passim

*Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (CGM),
     2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ............................................... passim

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),
     2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) .......................................................... 6

*Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021),
     *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ...................... 4, 11

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) .................. 8

*Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM),
     2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) .................................................. 2, 10

*Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM),
     2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)...................................................................... 17

*Picard v. Estate of Chais (In re BLMIS)*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011) ....................... 29

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM),
     2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................ passim

*Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM),
     2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ......................................... 2, 9-10, 12

*Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM),
    2022 WL 4371908 (Bankr. S.D.N.Y. Sep. 21, 2022)....................................................... 2, 9

*Picard v. Magnify Inc. (In re BLMIS*), 583 B.R. 829 (Bankr. S.D.N.Y. 2018) ........................... 21

*Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM),
    2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ......................................................... 7

*Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................... 10-12

*Picard v. Merkin (In re BLMIS)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................... 6-8

*Picard v. Merkin (In re BLMIS)*, 581 B.R. 370 (Bankr. S.D.N.Y. 2017) ....................................... 9

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................... passim

*Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620 (Bankr. S.D.N.Y. 2012) ............... 25-27, 29

*Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................... 8

*Picard v. Square One Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 10-04330 (CGM),
    ECF No. 181 (Bankr. S.D.N.Y. May 30, 2019)............................................................. 23-24

*Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM),
    2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ................................................................... 8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ....................... 9-12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26 (S.D.N.Y. 2013) ..... 15, 18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)....................................................................... 13-14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR),
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................................................ passim

*Siegel v. Converters Transp., Inc.*, 714 F.2d 213 (2d Cir. 1983)............................................ 25-26

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................................... 7-8, 25

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014)............................................................................... 10

*Williams v. Time Warner Inc.*, 440 F. App'x 7 (2d Cir. 2011) ....................................................... 9

**Statutes**

11 U.S.C. § 544 ........................................................................................................... 15

11 U.S.C. § 545 ........................................................................................................... 15

11 U.S.C. § 546(e) ................................................................................................. passim

11 U.S.C. § 547 ........................................................................................................... 15

11 U.S.C. § 548(a)(1)(A) ...................................................................................... 13, 15

11 U.S.C. § 548(a)(1)(B) ............................................................................................. 15

11 U.S.C. § 548(b) ...................................................................................................... 15

11 U.S.C. § 548(c) ...................................................................................................... 11

11 U.S.C. § 550 .................................................................................................14-15, 17

11 U.S.C. § 550(a) ................................................................................................ passim

11 U.S.C. § 550(b) .............................................................................................1-2, 9, 11

11 U.S.C. § 550(f) ......................................................................................................... 2

15 U.S.C. §§ 78aaa–*lll* ................................................................................................. 1

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 19

Fed. R. Civ. P. 8(d)(2) ............................................................................................... 19

Fed. R. Civ. P. 8(d)(3) ............................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 9

Fed. R. Civ. P. 15 ................................................................................................... 25-26

Fed. R. Civ. P. 15(c)(1)(B) ........................................................................................ 25

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss the Trustee's Amended Complaint (ECF No. 124, the "Amended Complaint" or "AC")[1] pursuant to Federal Rule of Civil Procedure (collectively, the "Rules") 12(b)(6) of defendant Zephyros Limited ("Defendant").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $95 million in subsequent transfers that Defendant received from Rye Select Broad Market Portfolio Limited (*f/k/a* American Masters Broad Market Fund II Limited) ("Rye Portfolio"). For years, Defendant purposefully invested in BLMIS through Rye Portfolio— an investment fund created for the express purpose of funneling its investors' money into BLMIS in New York. Defendant now moves to dismiss the Amended Complaint, arguing that (i) the Trustee insufficiently alleges that Defendant received transfers of customer property; (ii) the Amended Complaint and the Trustee's Complaint against Rye Portfolio (the "Tremont Complaint" or "TC")[2] establish Defendant's affirmative defense under Section 550(b); and (iii) the safe harbor under Section 546(e) of the Bankruptcy Code bars recovery. However, as acknowledged by Defendant in its moving papers,[3] the foregoing arguments are substantially the same as those

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (CGM) (Bankr. S.D.N.Y.).

[2] *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (CGM), ECF No. 1 (Bankr. S.D.N.Y. Dec. 7, 2010).

[3] Defendant's Memorandum of Law in Support of its Motion to Dismiss is referred to herein as the "Motion."

recently rejected by this Court in other subsequent transfer cases.[4]  Defendant also argues that the

newly-alleged subsequent transfer to Defendant from Rye Portfolio (the "New Transfer") is barred

by the Section 550(f) statute of limitations because it does not relate back to the Trustee's original

Complaint against Defendant (ECF No. 1, the "OC").  For the reasons set forth below, Defendant's

arguments fail.

First, the Trustee has plausibly alleged that Defendant received customer property under

Section 550(a) by outlining the relevant pathways through which customer property was

transferred from BLMIS to Rye Portfolio and subsequently to Defendant.  The Trustee has also

alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent

transfer received by Defendant.  Nothing more is required at this stage of the litigation.

Second, the Section 550(b) defense available to subsequent transferees is a fact-intensive

affirmative defense that is premature and plainly inappropriate on a motion to dismiss.  Consistent

with this Court's recent decisions, it is Defendant's burden to plead the defense in an answer and

prove it with evidence; it cannot be established from the face of a complaint.  *Banque Syz*, 2022

WL 2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10.

Third, by incorporating by reference the Tremont Complaint, and supplementing it with

additional allegations in the Amended Complaint as to actual knowledge (AC ¶¶ 79-150, the

"Tremont Supplement"), the Trustee has plausibly alleged Rye Portfolio's actual knowledge of

---

[4] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sep. 21, 2022) ("*KEB*").  To avoid repetition and long string cites, the Trustee has not listed here, and will avoid citing to, all of this Court's recent decisions, but these and the other similar decisions recently entered by the Court all support denial of Defendant's Motion.

fraud.  Therefore, under controlling law, the safe harbor for settlement payments pursuant to

securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendant.

Defendant's primary argument—that the Trustee must plead Defendant's actual knowledge as

opposed to that of Rye Portfolio—misinterprets and directly conflicts with precedent in this SIPA

liquidation proceeding.  Defendant's contention that the Tremont Complaint makes it clear that

Rye Portfolio did not have actual knowledge is also meritless.

Fourth, the New Transfer relates back to the OC and is therefore not time-barred because

it was part of the same course of dealing between Defendant and Rye Portfolio as the transfers

from Rye Portfolio to Defendant alleged in the OC.  Moreover, the OC put Defendant on notice

that the Trustee was seeking to recover any and all avoidable transfers subsequently transferred to

Defendant by Rye Portfolio.

For these reasons, the Trustee respectfully requests that the Court deny Defendant's

motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  AC ¶¶ 18,

20, 47.  BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange

Commission (the "SEC") beginning in January 1960.  *Id.* ¶¶ 18-19.  BLMIS purported to operate

three principal business units: (i) a proprietary trading business; (ii) a market-making business;

and (iii) an investment advisory business (the "IA Business").  *Id.* ¶ 20.  For its IA Business

customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"),

which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index,

(b) buying put options and selling call options to hedge against price changes in the underlying

basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out of the market.

3

*Id.* ¶¶ 33-36, 41. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 10, 12-14, 24-25, 45-46, 48. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 5.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' monies into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Defendant invested in Rye Portfolio, which it knew was a BLMIS feeder fund. AC ¶¶ 2, 52, 66. Defendant knowingly invested in BLMIS through other feeder funds as well, including Kingate Global Fund, Ltd. ("Kingate Global") and Fairfield Sentry Limited. *Id.* ¶ 67.

## II.    DEFENDANT AND ITS INVESTMENTS IN RYE PORTFOLIO

Defendant—a wholly-owned, indirect subsidiary of Credit Suisse Group AG (together with its affiliated companies, "Credit Suisse")—was formed in 2003 as a proprietary investment product by the global Credit Suisse enterprise, a highly sophisticated financial organization. AC ¶¶ 4, 51. Credit Suisse invested hundreds of millions of dollars with numerous BLMIS feeder funds; this recovery action is one of several commenced by the Trustee for transfers received in connection with those investments.[5] *Id.* ¶ 4 fn. 2.

Defendant began investing in Rye Portfolio shortly after its inception. *Id.* ¶ 157, Ex. C. At all relevant times, Credit Suisse personnel operated Defendant out of Credit Suisse's New York

---

[5] Other recovery actions commenced by the Trustee against Credit Suisse entities invested with BLMIS feeder funds include *Picard v. Credit Suisse AG, et al.* (Adv. Pro. No. 11-02925); *Picard v. Credit Suisse AG (as successor in interest to Clariden Leu AG and Bank Leu AG)* (Adv. Pro. No. 12-01676); *Picard v. Mistral (SPC)* (Adv. Pro. No. 12-01273); *Picard v. Trincastar Corp.* (Adv. Pro. No. 11-02731); and *Picard v. Solon Capital, Ltd.* (Adv. Pro. No. 12-01025) (since dismissed (ECF No. 81), as that matter only sought transfers received from Kingate Global).

offices. *Id.* ¶¶ 4, 51. Defendant's only operations were its investments in BLMIS feeder funds, such as Rye Portfolio, and other hedge funds tracked by a prominent hedge fund index known as the Credit Suisse/Tremont Hedge Fund Index (the "CS/Tremont Index"). *Id.* ¶ 52. The CS/Tremont Index was launched in 1999 as a joint venture between Credit Suisse and Tremont. *Id*. ¶ 53. Credit Suisse created funds such as Defendant and Mistral (SPC) to provide investors with vehicles through which to invest in hedge funds tracked by the CS/Tremont Index.[6] *Id.* ¶ 54.

Rye Portfolio was owned, managed, and operated by New York-based Tremont Group Holdings, Inc. (together with predecessors and affiliates, "Tremont"). AC ¶ 66; TC ¶¶ 8, 42, 46-51. Rye Portfolio was at all relevant times managed and operated out of Tremont's principal office in New York. AC ¶ 66; TC ¶ 39. Rye Portfolio invested all or substantially all of its assets with BLMIS. AC ¶¶ 2, 160; TC ¶¶ 36, 38-39.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Rye Portfolio and related feeder funds and other defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $2.1 billion. *Id.* ¶¶ 79, 151. In 2011, the Trustee settled that action, and the settlement (i) required the settling defendants to pay the Trustee $1.025 billion, (ii) provided that the initial transfers to Rye Portfolio and other Tremont funds were "deemed avoided," and (iii) stated that transfers to subsequent transferee defendants were not recovered with the partial payment by the settling defendants. *Id*. ¶¶ 81, 152.

The Trustee then commenced a number of adversary proceedings against Defendant and others to recover the outstanding stolen customer property of more than $1 billion. On June 9, 2022, with Defendant's consent, the Trustee filed the Amended Complaint.

---

[6] Mistral (SPC)—another proprietary investment product owned and operated by Credit Suisse—raises a number of identical arguments in its motion to dismiss the Trustee's action. *See* Mem. of Law, *Picard v. Mistral (SPC)*, Adv. Pro. No. 12-01273 (CGM) (Bankr. S.D.N.Y. filed Aug. 15, 2022), ECF No. 119. Motion to dismiss briefing in the Zephyros Limited and Mistral (SPC) cases are occurring simultaneously.

## ARGUMENT

I.    **THE AMENDED COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)**

The Amended Complaint plausibly alleges that Defendant received subsequent transfers of BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*").  As this Court recently held, the Trustee is not required at this stage to perform a tracing analysis, or to present a "dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy*, 641 B.R. at 90 (quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP*")); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195).  The Amended Complaint clearly meets these requirements.

### A.    The Trustee Has Plausibly Alleged That the Subsequent Transfers Defendant Received Contained Stolen BLMIS Customer Property

The Amended Complaint alleges that Defendant received transfers, identified by date and amount in an accompanying exhibit, from Rye Portfolio, and that Rye Portfolio invested all or substantially all of its funds with BLMIS. AC ¶¶ 2, 65-66, 75, 153-157, Ex. C. Thus, the Amended

6

Complaint plausibly alleges that Defendant received subsequent transfers of customer property by (a) outlining the relevant pathway through which stolen customer property was transferred from BLMIS to Rye Portfolio and subsequently to Defendant and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover"). As this Court recently held in a number of decisions, these "exhibit[s] provide[] [Defendant] with the 'who, when, and how much' of each transfer." *See, e.g.*, *Multi-Strategy*, 641 B.R. at 95; *Banque Syz,* 2022 WL 2135019, at *12.

## B.    Defendant Misstates the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendant attempts to argue for a new one, asserting that the Trustee must tie each subsequent transfer received by Defendant to a specific initial transfer from BLMIS. Motion at 4-5, 7-8. However, the Court already rejected this argument in *Merkin II*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, the Court has already rejected the argument that the Trustee must detail which, and what portion of each, subsequent transfer comprises stolen customer property. *Merkin II*, 515 B.R. at 152-53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr.

7

E.D.N.Y. 2007) (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Defendant's reliance on *Picard v. Shapiro* is misplaced because *Shapiro* did not change the pleading burden for recovery under Section 550(a).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 104, 109, 119 (Bankr. S.D.N.Y. 2015).  However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers.  *Id.* at 119.  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim.  *Id.*  Here, where the Trustee has alleged the vital statistics of each transfer Defendant received and set out the investment relationship between Defendant and Rye Portfolio, *Shapiro* supports denying the motion to dismiss.

Furthermore, without discovery, Defendant's arguments are premature.  "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded."  *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).  This is one reason why this Court in *Merkin II* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[7]  And even after fact discovery,

---

[7] Defendant cites cases that dismissed claims for being inadequately pled, where all of the necessary underlying facts were already in plaintiffs' possession, without the need for discovery.  *See* Motion at 8 n.12 (citing *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013); *Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)).  These cases are inapposite, because (i) as set forth

8

expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *see also Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

## II.     THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendant argues that the Court should dismiss the Amended Complaint as a matter of law because its purported good faith is clear on the face of the Amended Complaint and the Tremont Complaint, and is further supported by the Trustee's Amended Complaint against Fairfield Sentry Limited and other defendants (collectively, "Fairfield").[8]  Motion at 2, 8-11.  This Court has already rejected the "good faith" affirmative defense as inappropriate and untimely on a motion to dismiss, and should similarly reject Defendant's efforts here to recycle the same arguments. *See, e.g.*, *Banque Syz*, 2022 WL 2135019, at *10-11 (it is defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint"); *First Gulf*, 2022 WL 3354955, at *10 (same); *see also Sec. Inv. Prot. Corp. v.*

---

herein, the Trustee has sufficiently alleged that Defendant received customer property, and (ii) the Trustee is a stranger to the transactions between Rye Portfolio and Defendant, and does not have access to all of the information relevant to his claims at the pre-discovery stage of this litigation.

[8] *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 (the "Fairfield AC").  The Amended Complaint does not refer to, incorporate, or otherwise rely on the Fairfield AC, and the Court need not consider the allegations therein. *See, e.g., KEB*, 2022 WL 4371908, at *11 (quoting *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.")); *see also id.* at *6. However, the Court need not reach the issue, because it should reject as a matter of law Defendant's attempt to raise the Section 550(b) affirmative defense at the pleading stage.

*Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589,

at *1 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*"); *Delta,* 2022 WL 3365256, at *6.  Like Defendant

here, the defendants in *Banque Syz*, *First Gulf*, *Delta*, and *ABN Ireland* argued that their good faith

defense was established on the face of the complaint.  *Banque Syz*, 2022 WL 2135019, at *10;

*First Gulf*, 2022 WL 3354955, at *10; *Delta*, 2022 WL 3365256, at *6; *ABN Ireland*, 2022 WL

1304589, at *3.  The Court in those cases concluded that the affirmative defense could not be

resolved at the pleading stage (*id.*), and the same result is warranted here.

        Affirmative defenses are fact-driven.  They require factual analyses and a presentation of

evidence.  *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a

fact-based determination can only be made based on the entirety of the factual record after

discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees

and factual inferences Appellees improperly seek to have drawn in their favor."); *see also United

Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014)

("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus

[are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d

295, 308 (2d Cir. 2013)).  That sort of factual analysis is not appropriate at this stage, particularly

with respect to a good faith defense.  *See, e.g., Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 257

(Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in good faith . . .

is a disputed issue that this Court can properly determine only upon consideration of all of the

relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426

(Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual

inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the

motion to dismiss stage.").

Ignoring the fact that the good faith pleading burden is no longer on the Trustee, Defendant makes an unsupportable argument that its good faith has been established as a matter of law on the face of the aforementioned complaints. Motion at 8-11. But, as recognized in *Merkin I*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. To prevail under this limited exception, Defendant must show there is an "insuperable bar to securing relief" set forth on the face of the Amended Complaint. *Dreier*, 452 B.R. at 426. Defendant's argument that a diligent inquiry into BLMIS would have been futile is pure conjecture that is easily disputed and fails this standard.

Defendant cannot rely on an assortment of cherry-picked allegations as to BLMIS's, Tremont's, and Fairfield's secrecy, and factual inferences it wishes this Court to draw from same in its favor.[9] *ABN Ireland*, 2022 WL 1304589, at *3. Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[10] Defendant's suggestion that it lacked sufficient resources to detect Madoff's fraud—despite being a part of the Credit Suisse global enterprise, which invested hundreds of millions of dollars in BLMIS feeder funds and operated the prominent CS/Tremont Index (*see* AC ¶¶ 4, 51-

---

[9] Furthermore, contrary to Defendant's assertions (Motion at 6, 11), the Trustee does not seek to allege in Paragraph 155 (which alleges Rye Portfolio's actual knowledge, not Defendant's) or otherwise in the Amended Complaint that Defendant had actual knowledge, nor is he required to. The good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard, and the Trustee does not bear the burden of pleading a subsequent transferee's lack of good faith, much less actual knowledge. *Citibank*, 12 F.4th at 185-86, 195-96. Whether Defendant had actual knowledge is not at issue, and Defendant's contention that "it is not plausible that [Defendant], a subsequent transferee, could have had actual knowledge" (Motion at 6) should be disregarded.

[10] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise").

11

54)—is dubious on its face. Defendant was a hedge fund managed by sophisticated parties capable of performing their own investigations and diligence on their BLMIS investments—facts which can only be developed in discovery.

Defendant makes similar arguments with regard to value and knowledge of voidability. Motion at 8-9. However, these are also fact-driven affirmative defenses to be addressed later in the litigation. *See, e.g., Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*") (stating that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial"). To the extent Defendant argues value exists because the payments it received were given in exchange for its redemption of shares from Rye Portfolio (Motion at 1 n.2 & 9), this too cannot be decided on a motion to dismiss. *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at *10; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage.").

Even if this Court were to consider Defendant's fact-intensive affirmative defense, the Trustee must be given the opportunity to pursue discovery of those facts. *ABN Ireland*, 2022 WL 1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual record after discovery); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *see also Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at *11.

12

## III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).  Defendant argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled Rye Portfolio's actual knowledge.  Motion at 12-19.  As discussed below, Defendant's argument is based on a misreading of Section 546(e) and *Cohmad*, and this Court has rejected this argument in numerous other adversary proceedings commenced by the Trustee.  *See, e.g., Multi-Strategy*, 641 B.R. at 92-95.

### A.    Rye Portfolio Had Actual Knowledge of Madoff's Fraud

Defendant sets forth at length the requirements of Section 546(e) and how they are presumably met in this case with respect to the initial transfers from BLMIS to Rye Portfolio. Motion at 12-15, 16-17.  None of this matters.[11]  As explained in section IV below, the Trustee has sufficiently pled that the initial transferee Rye Portfolio had actual knowledge.  As such, Section 546(e) does not bar the avoidance of initial transfers made to Rye Portfolio, and those transfers may be recovered from Defendant regardless of whether Rye Portfolio or Defendant qualify as

---

[11] The Trustee does not concede that any agreements or transfers between Rye Portfolio and Defendant activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Rye Portfolio are avoidable turns on Rye Portfolio's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede— by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendant.  The Trustee also does not concede that the initial transfers were made "for the benefit of" Defendant.  The Trustee plainly alleges in the Amended Complaint that Defendant is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (citing cases).

financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

The actual knowledge exception established in *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e), and as Defendant concedes, that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Motion at 13-14 (citing *Cohmad*). Defendant participated in the District Court proceedings and the District Court's review of this issue.[12] As such, Defendant is bound by *Cohmad* and that decision is law of the case.[13]

**B.      Section 546(e) Does Not Apply Independently to Recovery Actions**

Defendant is also wrong that the Trustee must allege that a subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Defendant argues that under *Cohmad*, its agreements with Rye Portfolio are the relevant "securities contract" for purposes of Section 546(e) (in lieu of BLMIS's account agreement), and as such, in a Section 550 recovery action against it, the court must look solely to Defendant's (i.e., the subsequent transferee's) actual knowledge to determine whether the initial transfer is avoidable. Motion at 18-19. But *Cohmad* does not stand for this proposition, and Defendant's argument merely repackages the already rejected arguments (by many court decisions) that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550. As this Court recently held, based on the same arguments as Defendant makes here, defendants "[are] not permitted to

---

[12] *See* Motion to Withdraw the Reference, ECF Nos. 7-9 (Bankr. S.D.N.Y. filed April 26, 2012) (raising Section 546(e) as a grounds for withdrawal).

[13] *See Omnibus Good Faith Decision*, 531 B.R. at 466 ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

14

raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *E.g., Multi-Strategy,* 641 B.R. at 94-95.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).[14]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26, 30 (S.D.N.Y. 2013) ("*In re Madoff Sec.*"). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[15] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees

---

[14] *See also Multi-Strategy,* 641 B.R. at 94 (citing *BNP,* 594 B.R. at 197); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("*SHMA*") (citing same).

[15] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at *9.[16] Contrary to Defendant's argument, the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument being made here that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id.* at 197. Like

---

[16] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

*Cohmad*, *BNP* is law of the case on this issue, and Defendant is bound by both decisions.  *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendant nevertheless continues to argue that to the extent a party relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, the Court must look only to the actual knowledge of the subsequent transferee.  Motion at 13-14, 18-19.  But as stated above, the District Court did not conclude this, and *BNP* confirmed this was not the case. This Court itself rejected the same arguments in several other proceedings, holding in each that, "the safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'"  *See*, *e.g.*, *Multi-Strategy*, 641 B.R. at 94 (quoting *BNP*, 594 B.R. at 197); *Lombard Odier*, 2022 WL 2387523, at *9 (same).

Defendant's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'").  Adopting Defendant's position would mean that the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.  It would also result in a situation whereby a determination as

to the avoidability of an initial transfer would depend upon and vary based on whether there were subsequent transfers, and who received them.

Moreover, Defendant's interpretation of *Cohmad* would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on § 546(e). *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 31 F.4th at 1064 n.5 (cleaned up; emphasis added).

Defendant also misconstrues *Cohmad*'s holding—which was not a part of the District Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor. Motion at 18-19. That holding does not require the Trustee to plead a subsequent transferee's actual knowledge in order to recover a subsequent transfer. On the contrary, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Finally, this Court's decision in *Fairfield Inv. Fund* does not demand a different result. Motion at 14, n. 29. Rather, in that case, as this Court has held, the Court "considered [a subsequent

18

transferee's] actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had

actual knowledge of the fraud.  The Court never considered whether the subsequent transferees

could raise the safe harbor defense on their own behalf, nor could it have, as § 546 is inapplicable

to subsequent transferees."  *E.g.*, *Multi-Strategy*, 641 B.R. at 94-95.

## IV.    THE TRUSTEE HAS PLED THAT RYE PORTFOLIO HAD ACTUAL KNOWLEDGE

The Amended Complaint alleges that Rye Portfolio and other Tremont BLMIS feeder

funds (collectively, the "Rye Select Funds") had actual knowledge of Madoff's fraud by

incorporating by reference the Tremont Complaint and adding the Tremont Supplement.[17]

Defendant does not argue that the totality of the allegations made and incorporated by reference in

the Amended Complaint inadequately plead Tremont's actual knowledge and facilitation of the

fraud.  Defendant instead focuses almost exclusively on the Tremont Complaint and relies on the

illusory argument that the Tremont Complaint actually "makes clear that the Rye Select Funds did

not have actual knowledge."  Motion at 18.  This argument is not supported by the record or the

law.

The Tremont Complaint pleads various facts that support Tremont's (including the Rye

Select Funds') actual knowledge.[18]  For example, the Tremont Complaint alleges that Tremont (i)

---

[17] The Trustee filed the Tremont Complaint in 2010, and the case settled in 2011. AC ¶¶ 79, 81. The Tremont Complaint alleged that Tremont and its feeder funds knew or should have known of Madoff's fraud. TC ¶¶ 10, 15. In 2013, the District Court decided *Cohmad*, establishing the actual knowledge exception to the application of Section 546(e).  In light of *Cohmad* and because the Tremont case is closed, the Trustee has supplemented the Tremont Complaint with the Tremont Supplement that provides further support for Tremont's actual knowledge.  While the Trustee incorporates the Tremont Complaint, the Amended Complaint standing alone sufficiently pleads actual knowledge.

[18] The Tremont Complaint pleads inquiry notice and the Tremont Supplement pleads actual knowledge, each of which is just a different standard of bad faith.  Rule 8 permits the pleading of two different theories with inconsistent allegations in the alternative.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."), 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95-96 (2d. Cir 1994) (explaining that Rule 8 allows a plaintiff to plead inconsistently and that "[t]he inconsistency may lie either in the statement of the facts or in the legal theories adopted") (citation omitted); *Adler v. Pataki*, 185 F.3d 35, 41 (2d. Cir 1999) ("[Rule 8] offers sufficient latitude to construe separate allegations in a

was repeatedly advised of BLMIS trading impossibilities and other indicia of fraud, including by

a client who questioned "the legitimacy of the whole Bernie thing" (TC ¶¶ 158, 194-95, 197, 215);

(ii) independently knew of trading impossibilities, including that BLMIS reported having

conducted hundreds of trades for the Rye Select Funds that "took place outside of the range of

stock and options prices for such securities traded in the market on the days in question," and that

there was insufficient market volume for BLMIS to conduct its reported equities and options trades

(*id.* ¶¶ 165-68, 170-74, 200-03); and (iii) "falsely led others to believe they knew the

counterparties" to BLMIS's purported options trades, even though Tremont knew that Madoff

inexplicably refused to disclose this information (*id.* ¶ 190).

Defendant disregards these and other incriminating allegations in the Tremont Complaint.

Instead, Defendant tries to misdirect with its contention that the Tremont Complaint shows a *lack*

of actual knowledge entirely based on a handful of cherry-picked statements (Motion at 14-15

n.32, 18 n.42), none of which are at odds with Tremont and its feeder funds having actual

knowledge.[19]   To the contrary, the allegations Defendant cites—such as that Tremont "did not

'perform independent . . . due diligence' on BLMIS, 'blindly rel[ied] on Madoff,'. . . [and] 'should

have questioned how Madoff's alleged trades could account for such a high percentage of the total

volume traded on the exchanges of a particular stock'" (*id.*)—plausibly support the inference that

Tremont was perpetuating the fraud of which it was aware.  *See, e.g., Picard v. Ceretti (In re*

*BLMIS*), Adv. Pro. No. 09-01161 (CGM), 2015 WL 4734749, at *4, *13 (Bankr. S.D.N.Y. Aug.

11, 2015) ("*Kingate*") (Trustee adequately alleged the Kingate feeder funds' actual knowledge

where, among other things, their manager "did not apply its high due diligence standards to BLMIS

---

complaint as alternative theories . . ."); *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, Adv. Pro.
No. 18-50489 (CSS), 2022 WL 2240122, at *45 (Bankr. D. Del. June 22, 2022).

[19] For sake of clarity, we point out that fns. 32 and 42 of the Motion refer to identical language in the Tremont
Complaint.

and acknowledged as much"); *Picard v. Magnify Inc. (In re BLMIS*), 583 B.R. 829, 843 (Bankr.

S.D.N.Y. 2018) (Trustee adequately alleged Magnify investment manager's actual knowledge,

where BLMIS stopped generating customer statements for those accounts and otherwise "made it

impossible for [manager] to do his job" as to due diligence, raising a "fair inference . . . that both

he and Madoff knew that there was no trading activity to oversee.").  Here too, the Trustee is

entitled to every reasonable inference from these and his other allegations.  *Lynch v. City of N.Y.*,

952 F.3d 67, 74-75 (2d Cir. 2020).

It is also particularly difficult to view another allegation Defendant points to—that Tremont

"was not concerned with 'understanding what Madoff really was doing with . . . money'" (Motion

at 14-15 n.32, 18 n.42)—as anything but indicative of Tremont's choosing to look away because

it knew Madoff was a fraud.  Defendant also misquotes the Tremont Complaint as alleging that

Tremont was "ignorant of the fraud."  *Id*.  The Tremont Complaint actually makes a significantly

different allegation.  It alleges that *"[i]f the Defendants were ignorant of the fraud, it was because

they failed in their due diligence and investment management obligations."*  TC ¶ 4 (emphasis

added).  Defendant's argument that the Tremont Complaint "makes clear" (Motion at 14, 18) that

Tremont did not have actual knowledge and undermines the sufficiency of the Amended

Complaint is meritless.

Notably, Defendant does not address the sufficiency of the Trustee's combined actual

knowledge allegations in the Amended Complaint.[20]   The Tremont Complaint and Tremont

Supplement together allege that Tremont knew numerous facts collectively giving rise to a

---

[20] Defendant almost completely disregards the Tremont Supplement, only addressing a single allegation from its 72
paragraphs, arguing that a Tremont manager's "'bragg[ing] internally that he taught Madoff how to trade options' . .
. would only make sense if he believed Madoff was, in fact, trading options." Motion at 18 (quoting AC ¶ 121).
Nothing on the face of that allegation is inconsistent with the manager's knowing that BLMIS was not actually trading
options. What is more, read in context, the allegation supports the inference that Tremont had the expertise to know
that BLMIS could not have been trading options as reported.

plausible inference of Tremont's (and the Rye Select Funds') actual knowledge, and facilitation of the fraud—including many of the same facts this Court found sufficient in *Fairfield Inv. Fund* and *Kingate*. These factual allegations include, *inter alia*, the following:

Fraud Warnings. Tremont was warned on multiple occasions that BLMIS might be a fraud, including that it might be a Ponzi scheme. AC ¶¶ 85, 93, 97; TC ¶¶ 3, 197.

Unknown Counterparties. Tremont knew that BLMIS had no International Swaps and Derivatives Association agreements in place for its purported OTC options trades, although such agreements were required, and that Madoff had never given Tremont a single counterparty name, although Tremont bore the risk of counterparty default and those names should have been on every trade confirmation. AC ¶¶ 122-123, 128-31; TC ¶¶ 89, 184-89. Tremont asked for but was never informed of the characteristics or number of the purported counterparties. AC ¶¶ 127-139; TC ¶¶ 185, 230. Nevertheless, Tremont repeatedly lied to others and claimed that Madoff had provided this information—even naming JPMorgan Chase as a counterparty to one investor a mere month after JPMorgan Chase asked Tremont if it knew of any counterparties. AC ¶¶ 130-32; TC ¶ 190.

Impossibilities. Tremont was repeatedly informed by third parties of BLMIS trading impossibilities and other indicia of fraud, including BLMIS's impossibly stable returns, its use of a small auditor with no other clients, its lack of a third-party custodian and that it self-cleared, its unknown counterparties, its failure to charge a management fee, its utter lack of transparency, and the inability to verify its assets. AC ¶¶ 85, 87, 89, 91-92, 96-97, 122-23, 127-30; TC ¶¶ 158, 185, 194-97, 215. Tremont also analyzed BLMIS's reported trading information, which reflected quantitative impossibilities demonstrating that trades could not have taken place. AC ¶¶ 98-99, 124.

<u>Exceptions for Madoff</u>.  Tremont intentionally exempted BLMIS from the due diligence requirements it strictly enforced for other managers.  *Id.* ¶¶ 100-11.  Tremont's CEO prohibited virtually everyone other than himself from contacting BLMIS.  *Id.* ¶¶ 103, 112.  Tremont employees knew that "ya don't ask" about BLMIS's assets under management, how it generated its purported returns, or its auditor.  *Id.* ¶ 102.  Tremont's founder admitted post-fraud that when it came to Madoff, Tremont simply threw out the rule book.  TC ¶¶ 192-193, 216.

<u>Helping Further the Fraud</u>.  Tremont intentionally facilitated BLMIS's fraud, including by aggressively attempting to impede its agents, investors, and even its own auditors from having contact with BLMIS.  TC ¶ 90; AC ¶¶ 112-120.  Tremont did just enough to ensure that the fraud was not brought to light, such as when it stopped by the place of business of BLMIS's auditor just "to make sure they exist."  AC ¶ 104.

<u>Lying to Others</u>.  Tremont actively hindered the due diligence efforts of third parties through obfuscation and lies.  TC ¶ 190; AC ¶¶ 120-39.  Among the tales Tremont wove were (i) that BLMIS's auditor audited other broker-dealers, (ii) that Tremont had verified the existence of BLMIS's assets, and (iii) fabrications regarding BLMIS's purported options trading, including with respect to BLMIS's non-existent options counterparties, as set forth above.  TC ¶ 190; AC ¶¶ 120-39.  In the wake of Lehman Brothers' collapse—which upended the entire options market—Tremont did nothing but make up responses to investors, driven solely by a desire to quiet them.  AC ¶¶ 135-39.

<u>Access to Madoff</u>.  Tremont had unique access to Madoff, including its CEO visiting BLMIS multiple times throughout the year.  AC ¶ 83; *see Picard v. Square One Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 10-04330 (CGM), ECF No. 181, at 40:8-12 (Bankr. S.D.N.Y. May 30, 2019) ("Generally actual knowledge or at least willful blindness will be inferred where the

defendant has access to the usually secretive Madoff and his business . . . and shielded Madoff from third-party inquiries" (citations omitted)).

<u>Dependence on Madoff</u>.  Tremont was utterly dependent on BLMIS's fraud.  Various Tremont executives observed that BLMIS accounted for "all of the profits of the firm," that the Tremont feeder funds' "only reason for being" was as feeders into BLMIS, and that BLMIS was Tremont's "crack addiction business."  AC ¶ 142.  Tremont's parent company similarly concluded that "the economics of Tremont's business [was] Madoff."  *Id*. ¶ 143.  This business yielded Tremont hundreds of millions of dollars in fees, and millions of dollars in compensation to its executives.  *Id*. ¶ 141; TC ¶¶ 14, 31, 58-59, 82, 103-10, 124.  Its chief executives had longstanding, unusually close relationships with Madoff for almost two decades, which Tremont touted in its marketing materials to investors.  AC ¶¶ 82-84.

The above allegations—all of which Defendant essentially ignores—demonstrate that the Trustee has alleged the Rye Select Funds' actual knowledge.  On factual allegations similar to these, this Court determined that the Trustee sufficiently alleged the actual knowledge of two other major BLMIS feeder funds.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-7; *Kingate*, 2015 WL 4734749, at *13-15.  Such allegations should also be accepted as true at this stage of the litigation. *See, e.g., Multi-Strategy*, 641 B.R. at 89.  "Of course, often '[p]articipants in a fraud do not affirmatively declare to the world that they are engaged in the perpetration of a fraud,' so New York courts have emphasized that actual knowledge need not be based on an explicit acknowledgement of the fraud but can be inferred from the allegations in a complaint."  *Carbon Inv. Partners, LLC v. Bressler*, No. 20 Civ. 3617 (ER), 2021 WL 3913526, at *4 (S.D.N.Y. Sep. 1, 2021) (citations omitted).

24

In addition, the actual knowledge of Kingate Management Limited ("Kingate") is imputable to Tremont. Tremont co-managed, with Kingate, Kingate Global. AC ¶¶ 145-50. This Court has found that the Trustee plausibly alleged Kingate's actual knowledge. *See Kingate*, 2015 WL 4734749, at *14-15. Defendant ignores these allegations in the Amended Complaint. Tremont's operating of Kingate Global as co-agent with Kingate is sufficient on its own to support actual knowledge. *See, e.g., In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 590 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of America Corp.*, 309 F. App'x 536 (2d Cir. 2009) ("Knowledge of a joint adventurer is imputed to its co-adventurers."); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 689 n. 9 (2d Cir. 1983).

## V.    THE NEW TRANSFER RELATES BACK TO THE ORIGINAL COMPLAINT

Contrary to Defendant's arguments, the Trustee's claim to recover the New Transfer is timely because the New Transfer relates back to the OC.

### A.    Relevant Legal Standards

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Courts in the Second Circuit, including this Court, have "liberally construed" Rule 15, which "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (*quoting Silverman*, 379 B.R. at 27); *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215-16 (2d Cir. 1983); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12. This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided

25

on its merits rather than on procedural technicalities." *Fairfield Inv. Fund*, 2021 WL 3477479, at

*12 (quoting *Siegel*, 714 F.2d at 217).  Thus, "[t]he principal inquiry . . . is whether the general

fact situation alleged in the original pleading provides adequate notice to the opposing party of the

matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

        Additional fraudulent transfer claims against existing defendants relate back to the original

pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as

the originally alleged transfers.  *Peter Madoff*, 468 B.R. at 633 (citing *Adelphia Recovery Trust v.*

*Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)).  When examining "conduct" under

Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course

of conduct as the transfers alleged in the original complaint," and whether "the original complaint

g[a]ve sufficient notice to the defendants that the Trustee[] may sue for additional transfers that

were part of the same course of conduct[.]"  *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424,

2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted).

    **B.    The New Transfer Was Made as Part of the Same Course of Conduct as the**
    **Transfers Alleged in the OC**

        Relation back should be permitted because the Trustee has alleged an underlying common

course of conduct involving Defendant's investing into and redeeming from Madoff's fraud

through BLMIS feeder funds in both the OC and the Amended Complaint.  The New Transfer is

a subsequent transfer being sought under the same legal theories and as part of the same set of

facts as set forth in the OC.  Both sets of transfers are being sought under Section 550(a) and are

subsequent transfers of customer property received by Defendant from Rye Portfolio in connection

with the BLMIS Ponzi scheme.  Thus, any defense Defendant might have regarding the New

Transfer will likely be the same as or similar to the defenses to the original transfers.  In sum, the

26

New Transfer is no different in form or substance to the transfers alleged in the OC, and therefore it relates back.

Courts have found relation back on the grounds that the new amounts sought are part of the same Ponzi scheme as those originally alleged. *See, e.g., Goldberg v. Halbert (In re Woodbridge Group of Companies, LLC)*, No. 19-51027 (JKS), 2021 WL 5774217, at *9-11 (Bankr. D. Del. Dec. 6, 2021) (finding relation back of new claims to recover principal, where original complaint just sought interest, because "both the initial and amended claims arise from the Defendant's investment in the Woodbridge Ponzi Scheme," and as an investor defendant was on notice that any of his transfers might be subject to clawback); *In re Juliet Homes*, 2011 WL 6817928, at *7 ("The fraudulent transfers alleged in the original complaint, along with the new transfers alleged in the [proposed amended complaint], are alleged to have been part of this overall Ponzi scheme.  Both the original and the newly alleged fraudulent transfers therefore arose as part of the same course of alleged conduct."); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (holding allegations in amended complaint related back as part of same basic scheme even though events were distinct from those alleged in the original complaint).

Here, not only are the New Transfer and those in the OC part of the same Ponzi scheme, but (i) the relevant defendant, (ii) its investments with BLMIS through and receipt of subsequent transfers from BLMIS feeder funds, and (iii) the underlying legal basis for seeking the New Transfers, are all the same as in the OC.  *See Peter Madoff*, 468 B.R. at 633-34 (permitting relation back where original and amended complaints alleged transfers under the "same legal theories"); *Adelphia*, 624 F. Supp. 2d at 333-34 (permitting relation back where new transfers related to the same alleged fraudulent loan transactions); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12-13

(permitting relation back for subsequent transferees out of FGG feeder funds where the relevant entities were named as subsequent transferee defendants in the original complaint).

Defendant contends that the core of operative facts regarding the New Transfer "would likely be significantly different" than regarding the old transfers, citing the fact that the New Transfer took place two years before the earliest alleged transfers in the OC. Motion at 20-21. Defendant speculates that as a result, it may be necessary to consider different evidence as to the issues of good faith and tracing, and different underlying subscription agreements, with respect to each set of transfers. *Id*. Defendant cites no authority for the view that this difference precludes the existence of a common core of operative facts, which is not surprising as the case law does not support such a narrow view.

### C.    The OC Provided Notice to Defendant That the Trustee Would Sue for Any Additional Transfers

The OC also put Defendant on notice that it would be asked to account for the New Transfer. In the OC, the Trustee indicated his intention to pursue all subsequent transfers to Defendant, including those not known at the time of filing. As this Court has stated, "[t]he primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Fairfield Inv. Fund*, 2021 WL 3477479, at *12; *see also Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*, 67 B.R. 304, 306 (Bankr. S.D.N.Y. 1986) ("[I]f the original complaint indicates an intention to pursue all transactions, the adding of such transactions will relate back.").

For example, in *Fairfield Inv. Fund*, this Court held that the following language in the prior complaint was sufficient to give defendants notice:

> The money transferred from BLMIS to the Feeder Funds was subsequently transferred by the Feeder Funds to the FGG Affiliates

> . . . . These payments from the Feeder Funds constitute subsequent
> transfers of the Initial Transfers from BLMIS to the Feeder Funds.
> Because the FGG Affiliates . . . did not take the funds in good faith
> or without knowledge of the voidability of the initial transfers, all
> transfers from BLMIS to the Feeder Funds, which the Feeder Funds
> subsequently transferred, either directly or indirectly, to the FGG
> Affiliates . . . (the "Subsequent Transfers"), were and remain
> Customer Property subject to turnover to the Trustee and/or are
> avoidable and recoverable by the Trustee.

2021 WL 3477479, at *12.  This Court reasoned that the Trustee, as an outsider to the

transactions, need not include every subsequent transfer in the initial complaint:

> [T]he Trustee is an outsider to these transactions and will need
> discovery to identify the specific subsequent transfers by date,
> amount and the manner in which they were effected.  The Moving
> Defendants are a group of interrelated individuals and entities . . . .
> Whether they additionally received Subsequent Transfers of BLMIS
> funds from one another is a question to which they, and they alone,
> have the requisite information to respond.

*Id*. at *13 (quoting *Picard v. Estate of Chais (In re BLMIS)*, 445 B.R. 206, 236 (Bankr.

S.D.N.Y. 2011)).

The OC includes the following allegation: "The Trustee's investigation is ongoing, and he

reserves the right to: (i) supplement the information on the Rye Select Initial Transfers and Rye

Select Subsequent Transfers; and (ii) seek recovery of any additional transfers."  OC ¶ 60.  That

language is even clearer than the language used in *Fairfield Inv. Fund* as described above.  *See

also Peter Madoff*, 468 B.R. at 633-34 (finding sufficient for relation back purposes language

stating "[a]t this time, the Trustee has identified at least $198,743,299 of customer funds"); *Ogier

v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*, 443 B.R. 918, 922 (Bankr. N.D. Ga. 2011) ("The

complaint expressly states that the Trustee intends to avoid all transfers that [defendant] received

[from the Ponzi scheme] during the relevant time periods."); *In re Juliet Homes*, 2011 WL

6817928, at *7 (finding that defendants were on notice that the trustees would likely view any

transfers from debtors as potentially fraudulent in light of the allegations concerning the Ponzi

29

scheme); *Adelphia*, 624 F. Supp. 2d at 333 (permitting relation back where the original pleading sought all payments from margin loss).

Defendant attempts to distinguish *Fairfield Inv. Fund* on the grounds that there, the subsequent transferee defendants were alleged to have not taken in good faith, while the OC does not allege the same as to Defendant.  Motion at 21.  This purported distinction is baseless.  This Court's decision finding relation back in *Fairfield Inv. Fund* was not based on the Trustee's allegations of lack of good faith, but rather as noted above, on the conclusion that, like here, the defendants "were adequately appraised that the Trustee intended to collect 'all' subsequent transfers that they received." *Fairfield Inv. Fund*, 2021 WL 3477479, at *13.

Based on the Trustee's express allegations in the OC, Defendant here was similarly aware that the Trustee would be continuing his investigation and may identify additional transfers to recover.  *See* OC ¶¶ 50, 59, 62, 67 (stating that the subsequent transfers being sought are those "presently known" and "[b]ased on the Trustee's investigation to date" and that the Trustee is seeking "at least" the amounts alleged therein).  The Trustee therefore not only included the transfers of which he had knowledge, he specifically and unambiguously put Defendant on notice that he would seek to add any additional transfers that he later uncovered in his investigation.

## **CONCLUSION**

The Trustee respectfully requests that the Court deny Defendant's motion.

Dated: October 14, 2022
      New York, New York

*/s/  Howard L. Simon*
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Robert J. Luddy
Email: rluddy@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Alex Jonatowski
Email: ajonatowski@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

31