**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02923 (CGM) |
| Plaintiff, | |
| v. | |
| FALCON PRIVATE BANK LTD. (f/k/a AIG Privat Bank AG), | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................3

    I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................3

    II.     FALCON AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS..................4

ARGUMENT ........................................................................................................7

    I.      THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
         DEFENDANT...............................................................................................7

        A.     Defendant Purposefully Availed Itself Of The Laws And Privileges
             Of Conducting Business In New York And The United States By
             Investing In The Fairfield Funds....................................................9

           1.    Defendant's Intentional Investments with BLMIS through the
               Fairfield Funds Establish Minimum Contacts ...............................10

               a.     BLI and Recent Decisions of this Court Establish
                   Jurisdiction.......................................................................11

               b.     Defendant's Argument that the Trustee is Relying
                   Solely on the Unilateral Activity of the Fairfield Funds
                   is Misplaced ......................................................................13

           2.    The Forum Selection and Choice of Law Clauses in Sentry
               Subscription Agreements are Strong Jurisdictional Contacts........14

           3.    Defendant's Purposeful Use of New York Bank Accounts
                Supports Specific Jurisdiction.........................................................15

           4.    Defendant's Communications with FGG New York in
                Connection with Investments in Sentry also Establish
                Minimum Contacts.........................................................................16

           5.    Defendant's Contacts with the Forum are Sufficiently Related
                to the Trustee's Claims .................................................................17

            6.    Defendant's Remaining Arguments against Jurisdiction Are
                Unavailing.....................................................................................18

        B.     The Exercise of Personal Jurisdiction Over Defendant is Reasonable......19

        C.     Alternatively, the Trustee is Entitled to Jurisdictional Discovery ............20

II.      SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT .........20

          A.      Sentry Had Actual Knowledge of Madoff's Fraud ....................................21

          B.      Section 546(e) Does Not Apply Independently to Recovery Actions .......21

III.     THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT
          DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER
          SECTION 550(a) ................................................................................................25

          A.      Defendant Misstates the Trustee's Pleading Burden .................................27

          B.      Defendant's Tracing Argument Fails on a Motion to Dismiss .................28

CONCLUSION...........................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019)..............................................................26, 27

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ........................................................................................9

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)....................................................................13

*Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016)....................................................................15, 16, 18

*Ayyash v. Bank Al-Madina*,
   No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006)....................20

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
   640 B.R. 604 (S.D.N.Y. 2022)................................................................................16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990)......................................................................................7

*Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*,
   137 S. Ct. 1773 (2017)............................................................................................13

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985)......................................................................................8, 9, 14

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)..............................................................................7, 19

*Colson Servs. Corp. v. Bank of Baltimore*,
   712 F. Supp. 28 (S.D.N.Y. 1989)...........................................................................18

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986)....................................................................................17

*Dandong v. Pinnacle Performance Ltd.*,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................15

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)..............................................................................1, 2, 7

*Eldesouky v. Aziz*,
   No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)................................15

*ESI, Inc. v. Coastal Corp.*,
   61 F. Supp. 2d 35 (S.D.N.Y. 1999)...........................................................................................9

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
   No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............................20

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
   *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-
   3911 (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ...................................................15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..............................................................................................8, 17, 18

*Fowler v. Caliber Home Loans, Inc.*,
   277 F. Supp. 3d 1324 (S.D. Fla. 2016) ...................................................................................28

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ..............................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)....................................................................................................................8

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*
   Adv. Pro. Nos. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3,
   2014) ........................................................................................................................................29

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)...............................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..................................................................................................................13

*HSH Nordbank AG New York Branch v. Street*,
   No. 11 CIV. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...............................15

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)....................................................................................................................8

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .......................................29, 30

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
   2009) ........................................................................................................................................20

*Kreutter v. McFadden Oil Corp.*,
  71 N.Y.2d 460 (1988) ...................................................................................17

*In re Lehman Bros. Holdings Inc.*,
  535 B.R. 608 (Bankr. S.D.N.Y. 2015) ..........................................................14

*Liberatore v. Calvino*,
  293 A.D.2d 217, 742 N.Y.S.2d 291 (App. Div. 2002) ..................................17

*Licci v. Lebanese Canadian Bank, SAL*,
  20 N.Y.3d 327 (2012) ....................................................................................16

*McGee v. Int'l Life Ins. Co.*,
  335 U.S. 220 (1957) .........................................................................................8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ..............................................................................9

*In re Motors Liquidation Co.*,
  565 B.R. 275 (Bankr. S.D.N.Y. 2017) ..........................................................16

*Picard v. Avellino (In re BLMIS)*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ............................................................24

*Picard v. Banca Carige S.P.A.*,
  Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
  30, 2022) ................................................................................................ *passim*

*Picard v. Banque Cantonale Vaudoise*,
  Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
  14, 2022) ...........................................................................................................1

*Picard v. Banque Lombard Odier & Cie SA*,
  Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
  30, 2022) ................................................................................................ *passim*

*Picard v. Banque Syz & Co., SA*,
  Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
  14, 2022) ................................................................................................ *passim*

*Picard v. Barclays Bank (Suisse) S.A., et al.*,
  Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
  15, 2022) ...............................................................................................1, 21, 22

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................. *passim*

*Picard v. Bordier & Cie*,
   Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
   30, 2022) ...........................................................................................................................1

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................ *passim*

*Picard v. Ceretti, et al (In re BLMIS)*,
   Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
   11, 2015) .........................................................................................................................24

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
   Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
   2012) ...................................................................................................25, 26, 28, 29

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
   No. 21-1059, 2022 WL 585915 (Feb. 28, 2022) ....................................................3

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ............................................................ *passim*

*Picard v. Delta Nat'l Bank and Trust Co.*,
   Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
   12, 2022); .........................................................................................................................2

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
   No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ....................................23

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................ *passim*

*Picard v. Fairfield Sentry Ltd. (In Liquidation)*,
   Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009) ............................................6, 7

*Picard v. First Gulf Bank*,
   Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
   18, 2022 ...........................................................................................................................2

*Picard v. JPMorgan Chase & Co.*,
   No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ........................11

*Picard v. Lloyds TSB Bank PLC*,
   Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
   30, 2022) ...........................................................................................................................1

*Picard v. Lowrey (In re BLMIS)*,
   596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184 (2d Cir. 2020) .....................................................................25

*Picard v. Magnify, Inc. (In re BLMIS)*,
   583 B.R. 829 (Bankr. S.D.N.Y. 2018) ................................................................24

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011) .........................................................8, 10, 19

*Picard v. Mayer (In re BLMIS)*,
   Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) .............................................................................................................26

*Picard v. Mendelow, et al (In re BLMIS)*,
   560 B.R. 208 (Bankr. S.D.N.Y. 2016) ................................................................24

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
   Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .........................................................................................................2, 15

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..............................................24, 25, 27, 30

*Picard v. Merkin (In re BLMIS)*,
   581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..........................................................28, 30

*Picard v. Multi-Strategy Fund Ltd.*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022) ....................................................... *passim*

*Picard v. Parson Finance Panama S.A.*,
   Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ........................................................................................................ *passim*

*Picard v. The Public Institution for Social Security*,
   Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ............................................................................................................2

*Picard v. Quilvest Finance Ltd.*,
   Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022) ............................................................................................................2

*Picard v. Schroder*,
   Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept. 27, 2022) ............................................................................................................2

*Picard v. Shapiro (In re BLMIS)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..........................................................24, 27, 28

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
    Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept.
    19, 2022) ......................................................................................................................... *passim*

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ......................................................................................10, 19, 22

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*,
    Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
    18, 2022) .............................................................................................................................2

*Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*,
    No. 20-CV-10220 (PMH), 2022 WL 142375 (S.D.N.Y. Jan. 14, 2022) ................................18

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ....................................................................................18

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ...............................................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) ................................................................................22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...............4, 21, 24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ................................................................................25

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ....................................................................................27

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ................................................................................25

*SPV Osus Ltd. v. UBG AG*,
    882 F.3d 333 (2d Cir. 2018) ..............................................................................................18

*Steinberg v. A Analyst Ltd.*,
    No. 04-60898-CIV, 2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ...........................................13

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................................23

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................13, 16

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)................................................19

**Statutes**

11 U.S.C. § 544................................................................21

11 U.S.C. § 545................................................................21

11 U.S.C. § 546(e) ........................................................ *passim*

11 U.S.C. § 547................................................................21

11 U.S.C. § 548(a)(1)(A) ................................................20, 21, 25

11 U.S.C. § 548(a)(1)(B) ................................................21

11 U.S.C. § 548(b)................................................................21

11 U.S.C. § 550................................................................21, 22

11 U.S.C. § 550(a) ........................................................3, 22, 25, 27

15 U.S.C. §§ 78aaa-*lll*................................................1

**Rules**

Fed. R. Civ. P. 12(b)(2)........................................................1

Fed. R. Civ. P. 12(b)(6)........................................................1, 28

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and declaration of Matthew K. Cowherd ("Cowherd

Decl."), in opposition to the motion to dismiss (the "Motion") the Trustee's Complaint, ECF Nos.

1-2 ("Compl."),[1] pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), of defendant

Falcon Private Bank LTD. (f/k/a AIG Privat Bank AG) ("Falcon" or "Defendant").

## PRELIMINARY STATEMENT

As part of his continuing efforts in this SIPA liquidation proceeding to recover BLMIS

customer property that was stolen as part of Madoff's Ponzi scheme, the Trustee seeks to recover

$38,745,417 in subsequent transfers Defendant received from Fairfield Sentry Limited ("Sentry")

and Fairfield Sigma Limited ("Sigma" and, together with Sentry, the "Fairfield Funds").

Defendant moves to dismiss the Trustee's Complaint, arguing that (1) this Court lacks personal

jurisdiction over Defendant; (2) Defendant is entitled to protections afforded by the § 546(e) safe

harbor; and (3) the Complaint does not plausibly allege that Defendant received customer property

originally held by BLMIS.  Each of these arguments lacks merit, and Defendant is no differently

situated than the subsequent transferee defendants in other recovery actions that have recently

come before this court.[2]

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Falcon Private Bank Ltd.*, Adv. Pro. No. 11-02923 (CGM) (Bankr. S.D.N.Y.).

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro.

*First*, this Court has specific personal jurisdiction over Defendant. The Trustee's allegations here are based on contacts similar to those found sufficient in this Court's recent decisions, including, for example, *Multi-Strategy*, *Carige*, *Lombard Odier*, *Parson*, and *Societe Generale*. Defendant purposefully invested in the Fairfield Funds knowing from the Fairfield Funds' documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of Sentry's investments; that Sentry fed substantially all of its funds into BLMIS; that Sigma was fully invested in Sentry; and that BLMIS was essential to Sentry's investments. Investing in BLMIS was the entire point. Defendant also designated United States bank accounts in New York to deposit funds and receive transfers. These facts, plus additional U.S. contacts discussed herein, establish jurisdiction.

*Second*, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of Madoff's fraud, and therefore, under controlling law, the safe harbor for settlement payments made pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendant. Defendant's arguments—that the Trustee must plead Defendant's actual knowledge as opposed to that of Sentry, and in the alternative that there is no actual knowledge exception to the safe harbor—directly conflict with precedent in this case, including the Court's most recent decisions.

---

No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022); *Picard v. The Public Institution for Social Security*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022), *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept. 19, 2022) ("*Societe Generale*"); *Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Schroder*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept. 27, 2022).

*Third*, the Trustee has plausibly alleged that Defendant received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendant. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendant. Nothing more is required at this stage of the litigation.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS in New York until its collapse in 2008. Compl. ¶¶ 23, 31. BLMIS was a registered broker-dealer in New York. *Id.* ¶ 23. BLMIS "purported to operate" three principal business units: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory business (the "IA Business"). *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013 WL 1609154, at *2 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. Treasury securities ("Treasury Bills") when the money was out of the market. Compl. ¶¶ 24-25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 28. On December 11, 2008, Madoff's fraud was publicly revealed. He was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (Feb.

28, 2022) ("*Citibank*").  Defendant knowingly invested in the Fairfield Funds, which it knew were Madoff feeder funds.  Compl. ¶ 6.

## II.    FALCON AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

Defendant was founded in 1965 as AIG Privat Bank AG and is organized under Swiss law, maintaining a principal place of business in Zurich.  Compl. ¶ 22.  Defendant was at all relevant times a highly sophisticated subsidiary of United States-based American International Group, Inc. ("AIG"), specializing in providing "personalized private banking and structured wealth management solutions, including investment advisory and asset management products to a worldwide clientele."  Cowherd Decl., Ex. 1.  In April 2009, Aabar Investments PJSC, a diversified company incorporated and located in Abu Dhabi, UAE, purchased Defendant and renamed it Falcon.  Cowherd Decl., Ex. 2.

AIG Global Investment Corp. ("AIG Global") was a New York-based subsidiary of AIG and an affiliate of Defendant.  Defendant and AIG Global were two of three primary operating entities comprising AIG's Global Investment Group, a key part of AIG's world-wide asset management business.  Cowherd Decl., Ex. 3.

The Fairfield Funds were managed and controlled by Fairfield Greenwich Group ("FGG"), a de facto partnership with its principal place of business in New York.  Compl. ¶¶ 6-7; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *9, (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").  Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS.  Compl. ¶ 2; *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 ("Fairfield Am. Compl."), ¶¶ 52, 318.  Sigma acted as a foreign currency feeder fund, facilitating Euro investments with BLMIS and investing all of its assets with Sentry.  Compl. ¶ 2; Fairfield Am. Compl. ¶ 52.

4

Defendant began investing in the Fairfield Funds in early 2000. Cowherd Decl., Exs. 5-7. Prior to BLMIS's collapse, Defendant received redemptions from Sentry totaling $38,675,129 and from Sigma totaling $70,288. Compl. ¶¶ 41, 43, Exs. C, E.

Investors in the Fairfield Funds, including Defendant, executed subscription agreements which acknowledged the investor's sophistication as a "professional investor" that had "such knowledge and experience in financial matters sufficient to evaluate" the risks of the investment. Compl. ¶ 7; Cowherd Decl., Exs. 8-9. In connection with its subscriptions, which Defendant entered into both in its own name and via Citco Global Custody NV as its agent, Defendant agreed to New York choice of law, jurisdiction, and forum selection clauses. *Id*. The subscription agreements also incorporated the then-operative Information Memoranda ("IMs") or Private Placement Memoranda (together with IMs, "PPMs"), and by signing, investors like Defendant warranted that they had "received and read" a copy of the PPMs. Cowherd Decl., Exs. 5-8. Sentry's PPMs made plain the New York-centric nature of investments in the fund (*Id*., Exs. 10-12):

- Sentry invested all of its assets with New York-based BLMIS;

- BLMIS made all investment decisions;

- BLMIS was a registered broker-dealer in New York;

- BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf;

- BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and Treasury Bills traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York;

- BLMIS was the custodian of Sentry's investments with BLMIS; and

- BLMIS was "essential to the continued operations of" Sentry and if its "services were no longer available" its absence "would have an adverse impact upon an investment in the Fund."

Like all Sentry investors, Defendant sent its Sentry subscription payments to and received redemptions from an HSBC Bank correspondent bank account in New York (the "HSBC USA Account"). Compl. ¶ 7; Cowherd Decl., Exs. 8, 23. Subscription payments from Defendant were then deposited by Sentry into BLMIS's account at JPMorgan Chase Bank in New York. Fairfield Am. Compl. ¶ 35. For receipt of redemptions, Defendant designated a bank account at Chase Manhattan Bank in New York and, upon information and belief based on that designation, used this account to receive the transfers at issue. Cowherd Decl., Exs. 5-7.

Defendant also communicated directly with FGG New York personnel via email, had a New York-based FGG agent, and had further contact with the jurisdiction through its New York-based affiliate AIG Global. Cowherd Decl., Exs. 11-21. As acknowledged by FGG personnel in New York, Defendant and AIG Global had "synergy" which included (i) Defendant marketing AIG Select Hedge Ltd., a fund of funds managed by AIG Global, with significant investments in Sentry; and (ii) AIG Global selecting investments for a fund portfolio of Defendant. *See generally*, Cowherd Decl., Exs. 4, 17, 21. Defendant had the benefit of AIG Global's communications with FGG New York which included phone calls, emails, and site visits. For example, in the latter part of 2003, AIG Global representatives met with FGG New York and following the meeting received Sentry's due diligence questionnaire ("DDQ"). Cowherd Decl., Exs. 18-19. Shortly thereafter, AIG Global fully redeemed AIG Select Hedge Ltd.'s Sentry investments and within months, Defendant itself made significant Sentry redemptions. *Id*., Exs. 22, 24.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. Compl. ¶ 35; *see also Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. In 2011, the Trustee settled with Sentry.

Compl. ¶ 40.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  Sigma separately consented to judgment in the amount of $752.3 million.  *Id.*  As a feeder fund that invested in BLMIS indirectly through Sentry, this amount represents a portion of Sentry's $3.054 billion in withdrawals from BLMIS.  *See Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), Sigma Consent Judgment, ECF No. 110.  The Trustee then commenced a number of adversary proceedings against defendants like Falcon to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

## I.  THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists.  *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction")).  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings; these are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor.  *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directed its activities into the forum and the underlying cause of action arises out of or relates to those activities.  *See Picard v.*

*Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citations omitted) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (emphasis in original). Specific jurisdiction, however, does not require "proof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id*. (emphasis added). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Multi-Strategy*, 641 B.R. at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque Syz*, 2022 WL 2135019, at *4 (same). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in

8

obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019 at *4; *Carige*, 2022 WL 2387522, at *4; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

Overall, rather than analyze each contact in isolation, the Court must look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

### A.    Defendant Purposefully Availed Itself Of The Laws And Privileges Of Conducting Business In New York And The United States By Investing In The Fairfield Funds

Defendant had multiple contacts with New York that establish this Court's jurisdiction. Defendant: (1) purposefully targeted the New York securities market by investing in the Fairfield Funds, knowing that their assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, and choice of law provisions related to its Fairfield Funds' investments; (3) used New York bank accounts to transact with Sentry; and (4) worked together with its New York affiliate including as to Sentry investments and communicated with FGG in New York both directly and through that affiliate. As discussed below, these contacts are

each sufficient to support jurisdiction. But in their totality, they plainly establish that Defendant purposely availed itself of the forum.

### 1. Defendant's Intentional Investments with BLMIS through the Fairfield Funds Establish Minimum Contacts

Defendant claims the Trustee's allegations that Falcon knowingly directed funds for investment with New York-based BLMIS through the Fairfield Funds "is not a proper jurisdictional predicate." Motion at 9. However, as this Court has held on numerous occasions, the Trustee's allegation that Defendant knowingly invested with BLMIS through the Fairfield Funds establishes a *prima facie* showing of jurisdiction over Defendant. *See*, *e.g.*, *Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry…alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation."); *Lombard Odier*, 2022 WL 2387523, at *2 (same); *Parson*, 2022 WL 3094092, at *2 (same); *Societe Generale*, 2022 WL 4349859, at *3 (same). As the Second Circuit recognized, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 at 105 (2d Cir. 2019) ("*ET Decision*"); *see also Maxam Absolute Return Fund*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that the funds it invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

By executing subscription agreements with Sentry and affirming that it received and read Sentry's PPMs, and through its affiliate AIG Global's receipt of Sentry's DDQ and similar materials, Defendant knew that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was registered

with the U.S. Securities and Exchange Commission; (4) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and Treasury Bills; (6) decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (7) BLMIS was the custodian of Sentry's investments with BLMIS; and (8) BLMIS was "essential to the continued operation of" Sentry.  Compl. ¶¶ 2, 6-7; Cowherd Decl., Exs. 5-8, 10, 12, 19.

      a.     ***BLI* and Recent Decisions of this Court Establish Jurisdiction**

Based on the demonstrated intent to invest with BLMIS in New York through the Fairfield Funds, Judge Lifland concluded over ten years ago that investors like Defendant are subject to personal jurisdiction in New York. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-518 (Bankr. S.D.N.Y. 2012) ("*BLI*").  It is perhaps unsurprising then, that Defendant ignores this decision.  Here, as in *BLI*: (1) the Trustee's suit is "based upon [the subsequent transferee's] investment of tens of millions of dollars in [the Fairfield Funds] with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom" *BLI*, 480 B.R. at 506; and (2) Defendant was provided with PPMs and executed subscription agreements establishing the investments' BLMIS-centric purpose.  *Id*. at 507-08.  BLI, like Defendant, "purposefully availed itself of the benefits and protections of New York Laws . . . by intending" that its investment would ultimately end up at BLMIS.  *Id*. at 517; *see also Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transfers were subject to the Court's personal jurisdiction").

Similar to Defendant, BLI argued that its due process rights would be violated if it were

subjected to this Court's personal jurisdiction based on "isolated contacts" with the United States and that it would be unfair to force it to defend itself in this forum for "simply having funds which it invested in an entity outside of the United States and ultimately ended up in an account located at BLMIS." *BLI*, 480 B.R. at 516-17. Judge Lifland rejected this argument as "disingenuous" because BLI's investments "did not merely 'end up' in an account at BLMIS" through "coincidence." *Id*. In fact, Judge Lifland found that BLI "purposefully availed itself of the benefits and protections of New York Laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

Based on this Court's recent decisions, *BLI* applies here. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *3-4; *Parson*, 2022 WL 3094092, at *3-5; *Societe Generale*, 2022 WL 4349859, at *3. In those cases, as here, the Trustee asserted allegations as to the purpose of the investment with Sentry for ultimate investment with BLMIS. *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Banque Syz*, 2022 WL 2135019, at *3-4. Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Multi-Strategy*, 641 B.R. at 87; *Carige*, 2022 WL 2387522, at *3; *Lombard Odier*, 2022 WL 2387523, at *4; *Parson*, 2022 WL 3094092, at *5; *Societe Generale*, 2022 WL 4349859, at *5.

Defendant is similarly situated to these defendants. The Complaint, as supplemented by the Cowherd Declaration, makes clear that Defendant knowingly directed its funds to be invested with New York-based BLMIS and that this was the fundamental purpose of Defendant's Fairfield Funds investments. In short, Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits

therefrom." *Id*. at 506.  As such, the foregoing cases are controlling and resolve Defendant's

personal jurisdiction defense without the need for inquiry into their additional U.S. contacts.

**b.    Defendant's Argument that the Trustee is Relying Solely on
the Unilateral Activity of the Fairfield Funds is Misplaced**

Making no mention of *BLI*, Defendant attempts to sidestep its implications by arguing that

the Trustee relies entirely on the Fairfield Fund's contacts with BLMIS as a basis for jurisdiction

and by doing so grounds jurisdiction solely on Defendant's investments with funds "based in the

British Virgin Islands." Motion at 9-10.  However, under the facts of *this* case—where Defendant

has entered into subscription agreements with the Fairfield Funds expressly indicating Defendant's

intent to direct custody and control over all of its funds to a specific U.S. broker-dealer in order to

knowingly profit from the U.S. securities markets—such a defendant has purposefully availed

itself of the laws and protections of the United States.  The fact that Defendant invested in BLMIS

through Sentry rather than directly does not defeat jurisdiction—Defendant's contacts with New

York were "intertwined with [its] transactions or interactions with the plaintiff or other parties,"

and thus support jurisdiction.[3]  *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to

happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the

cases cited by Defendant are inapposite.  *See, e.g., In re Amaranth Natural Gas Commodities

Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008) (jurisdiction denied because plaintiffs never

actually alleged that defendant directed any activity toward the United States); *Steinberg v. A

Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (jurisdiction

---

[3] This contrasts with *Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137 S. Ct. 1773, 1781
(2017) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984), cited by Defendant, which
stand for nothing more than the well-established principle that personal jurisdiction cannot be premised solely on
another party's or a third person's unilateral contacts with the forum state.

denied where plaintiff either did not allege or made only a "bare assertion" that funds in which defendant invested had "assets, records, accounts and management all located in New York," and there was no indication defendant knew its redemptions were being made through New York); *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 612, 624 (Bankr. S.D.N.Y. 2015) (rejecting credit default swap counterparty plaintiff's argument that foreign noteholder's actions outside the United States provided sufficient minimum contacts for jurisdiction because actions had "significant and foreseeable" effects on plaintiff in the United States).

### 2.    The Forum Selection and Choice of Law Clauses in Sentry Subscription Agreements are Strong Jurisdictional Contacts

Defendant contends that its subscription agreements with Sentry do not subject it to this Court's jurisdiction because, as non-parties to the agreements, neither the Trustee nor BLMIS can enforce them. Motion at 11. But the Trustee is not arguing that this Court has jurisdiction based on Defendant's consent. Rather, the Trustee's jurisdictional argument is based on Defendant's intentional entry into New York to invest in BLMIS through the Fairfield Funds, its use of New York bank accounts, and other contacts discussed below. As this Court found in *BLI*, a defendant's agreement to New York venue, jurisdiction, and law provides another strong jurisdictional contact with New York. 480 B.R. at 517, n. 15; *see also Burger King*, 471 U.S. at 482 (holding a choice of law "provision standing alone would be insufficient to confer jurisdiction" but "it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").[4] As such, contrary to Defendant's argument, this Court's prior decision in the Fairfield Chapter 15 liquidation proceedings, where the Fairfield liquidators argued that

---

[4] *See also, e.g., Multi-Strategy*, 641 B.R. at 88 (finding defendant "irrevocably" submitted to the jurisdiction of New York courts' when it signed its subscription agreements with the Fairfield Funds); *Carige*, 2022 WL 2387522, at *4 (same); *Lombard Odier*, 2022 WL 2387523, at *5 (same); *Parson*, 2022 WL 3094092, at *5 (same); *Societe Generale*, 2022 WL 4349859, at *5 (same).

defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here. *See Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).

### 3.    Defendant's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

Without the benefit of any discovery from Defendant, the Trustee has identified documents confirming that Defendant designated and, upon information and belief, used a U.S. bank account at Chase Manhattan Bank for Sentry redemption payments.  Cowherd Decl., Exs. 5-7.  As this Court recently held: "Where a defendant chooses to use a United States bank account to received funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016)); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account"); *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG New York Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70, n.18.

Whether Defendant's Chase Manhattan Bank account was used as a correspondent bank does nothing to change this analysis. Courts have held that the use of a correspondent bank account is sufficient to establish personal jurisdiction. *See, e.g., Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful"); *see also Arcapita* 549 B.R. at 67-69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers at issue). The same reasoning applies to Defendant's use of Sentry's HSBC USA Account. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account).

That the subscription agreements mandated that subscribers use Sentry's HSBC USA Account is irrelevant; Defendant "was free to accept or reject the proposed terms." *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

### 4.    Defendant's Communications with FGG New York in Connection with Investments in Sentry also Establish Minimum Contacts

While a defendant's "physical presence in a forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Parson*, 2022 WL 3094092 at *5 (quoting *Walden*, 577 U.S. at 285); *Banque Syz*, 2022 WL 2135019, at *4. Meetings and email

16

communications can also be a contributing factor for finding personal jurisdiction.  *See Parson*, 2022 WL 3094092 at *4-5 (finding defendant's email communications with FGG as evidence that defendant purposefully availed itself of the benefits of doing business in the forum); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673(RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone calls, and video conferences with company in New York subjected defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291, 293 (App. Div. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases).

Here, as noted above, not only did Defendant communicate with FGG New York, Defendant worked with Defendant's New York affiliate and had the benefit of that affiliate's in-person meetings and email and phone communications with FGG New York regarding investments in Sentry.  Cowherd Decl., Exs. 3-4, 11-21.  Those communications further support jurisdiction.  *See*, e.g., *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (focusing on "the realities of the relationship in question rather than the formalities of agency law" and holding that "[t]o be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal.") (citations omitted); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (same).

### 5.    Defendant's Contacts with the Forum are Sufficiently Related to the Trustee's Claims

The Trustee's claims also "arise out of or relate to" Defendant's contacts with the United States.  As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-

30 (2021). Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that claim is not completely "unmoored" from transaction). This Court has already found that the Trustee's recovery actions against defendants similarly situated to Defendant are "directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4 (finding subsequent transfer claims directly related to investment activities); *Parson*, 2022 WL 3094092, at *5 (same).

### 6.    Defendant's Remaining Arguments against Jurisdiction Are Unavailing

Defendant relies on *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017) and *SPV Osus Ltd. v. UBG AG*, 882 F.3d 333, 345 (2d Cir. 2018)[5] for the proposition that a foreign defendant's communications with or sending of funds into New York are insufficient to establish jurisdiction if the actions were taken to comply with a contract negotiated and executed outside of the forum. Motion at 11-12 & n.2. Unlike in those cases, however, this action is not a dispute between two parties about services owed under a foreign contract.[6] Rather, this action is brought by a SIPA Trustee in a SIPA liquidation proceeding in New York to recover fraudulent transfers from an investor that transferred funds to and from accounts in New York for the sole purpose of investing with BLMIS in New York—evidencing a clear intent to direct activity toward the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements,

---

[5] Defendant's reliance on *SPV*, where the court found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is suspect following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

[6] *Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*, No. 20-CV-10220 (PMH), 2022 WL 142375, at *6 (S.D.N.Y. Jan. 14, 2022), *Colson Servs. Corp. v. Bank of Baltimore*, 712 F. Supp. 28 (S.D.N.Y. 1989), and *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998), cases involving forum contacts incidental to out of state agreements between the litigants, are similarly inapposite.

was not fortuitous or incidental; instead, it was 'the ultimate objective' and the 'raison d'etre' of

the Agreement between BLI and Fairfield Sentry.").

### B.    The Exercise of Personal Jurisdiction Over Defendant is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of

personal jurisdiction over the defendant comports with 'traditional notions of fair play and

substantial justice' under the circumstances of the particular case." *Waldman v. Palestine*

*Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made

a threshold showing of minimum contacts, a defendant must present "a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d

at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum

contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force

the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

Defendant fails to present a compelling reason why jurisdiction would be unreasonable.

This is not that "rare" case and the burden on Defendant is minimal. *See Maxam Absolute*

*Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern

communication and transportation minimize any such burden). As this Court found in, for

example, *Multi-Strategy*, *Carige*, *Lombard Odier*, *Parson*, and *Societe Generale*, the exercise of

jurisdiction over Defendant is reasonable because "Defendant is not burdened by this litigation"

because it "has actively participated in this Court's litigation for over ten years" and it is

"represented by U.S. counsel." *Multi-Strategy*, 641 B.R. at 88. Finally, this "forum and the

Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court."

*Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz*, 2022 WL 2135019, at *5; *see also ET Decision*,

917 F.3d 85, 103 (2d Cir. 2019) (noting that the United States has a "compelling interest in

19

allowing domestic estates to recover fraudulently transferred property."). Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### C.  Alternatively, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery because the Trustee has made a threshold showing of jurisdiction, and "additional facts to establish personal jurisdiction . . . lie within Defendant['s] knowledge." *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a *prima facie* case for jurisdiction to obtain jurisdictional discovery); *see also Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction."). The Trustee has shown how Defendant, inter alia, knowingly and purposely subscribed with the Fairfield Funds for the purpose of investing in the U.S. securities markets, designated a U.S. bank account to transact business with Sentry, and had significant contacts with FGG personnel in the U.S. *See supra*, pp. 5-6, 9-17. At a minimum, these facts establish a "threshold showing" of jurisdiction. *Kiobel,* 2009 WL 3817590, at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

In *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). *Cohmad*, 2013 WL 1609154, at *1. Defendant argues that Section 546(e) bars all of the Trustee's

claims to avoid or recover transfers made by BLMIS, even though the Trustee has pleaded Sentry's

actual knowledge. Motion at 13-16. This Court has rejected this same argument in numerous

other adversary proceedings commenced by the Trustee.[7]

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Defendant sets forth at some length the requirements of Section 546(e) and how they are

presumably met in this case with respect to the initial transfers from BLMIS. Motion at 13-15.

None of this matters.[8] This Court has previously held that the Trustee has sufficiently pled that

Sentry had actual knowledge of Madoff's fraud. *Multi-Strategy*, 641 B.R. at 92-93 (citing

*Fairfield Inv. Fund*, 2021 WL 3477479, at *4). As such, Section 546(e) does not bar the avoidance

of initial transfers made to Sentry, and those transfers may be recovered from Defendant regardless

of whether the Fairfield Funds qualify as financial institutions, their agreements qualify as

securities contracts, or their transfers qualify as settlement payments.

### B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding

sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer*

. . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also Multi-Strategy*,

641 B.R. at 94 ("The safe harbor cannot be used as a defense by the subsequent transferee because

the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial

---

[7] *See, e.g.*, *Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at *8-10; *Lombard Odier*, 2022 WL 2387523, at *8-10; *Barclays*, 2022 WL 2799924, at *6-7; *Societe Generale*, 2022 WL 4349859, at *6-7.

[8] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendant activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant. Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.

transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'") (quoting *BNP*, 594 B.R. at 197).[9]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). As this Court recently held, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *Multi-Strategy,* 641 B.R. at 94-95.[10]

---

[9] *See also, e.g.*, *Banque Syz*, 2022 WL 2135019, at *9 (quoting *BNP* at 197); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *Societe Generale*, 2022 WL 4349859, at *7 (same).

[10] *See also, e.g.*, *Banque Syz*, 2022 WL 2135019, at *9-10; *Lombard Odier*, 2022 WL 2387523, at *9-10; *Barclays*, 2022 WL 2799924, at *7; *Societe Generale*, 2022 WL 4349859, at *7.

This has not stopped Defendant, however, from making what the Court has called "the same tired arguments regarding the safe harbor" that it has repeatedly rejected, namely that (1) the Trustee has failed to allege that Defendant had actual knowledge of BLMIS's fraud, and (2) there is no actual knowledge exception to the safe harbor. *Societe Generale*, 2022 WL 4349859, at *6; Motion at 16-17. As to the former, this Court had held based on *Cohmad* that Section 546(e) is applicable only to avoidance, not recovery, and, notably, that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the same argument made by the Motion that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97 (emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case on this issue, and Defendant is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendant misconstrues *Cohmad*'s holding that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor. *See* Motion at 16. That holding does not, as Defendant suggests, require the Trustee to plead a subsequent transferee's

actual knowledge in order to recover a subsequent transfer. On the contrary, it merely ensures that

any defendant that *does* have actual knowledge, including a subsequent transferee, cannot benefit

from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual

knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A

defendant cannot be permitted to in effect launder what he or she knows to be fraudulently

transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Adopting Defendant's position means the safe harbor would apply even where the initial transferee

feeder fund knew there were no securities transactions in need of protection. It would also result

in a situation whereby a determination as to the avoidability of an initial transfer would depend

upon and vary based on whether there were subsequent transfers, and who received them. This

approach is simply not viable

    As to the latter, Defendant argues that *Cohmad*'s "judge-made" actual knowledge

exception should not be applied. Motion at 17. Defendant is precluded from doing so. The District

Court issued *Cohmad* in connection with consolidated proceedings on the application of Section

546(e). As Defendant concedes, *Cohmad* held that a transferee with actual knowledge of Madoff's

fraud cannot claim the protections of Section 546(e). *Id.* at 16. The District Court then remanded

the relevant cases back to this Court, and this Court has since applied the actual knowledge

"exception" on numerous occasions.[11]

    Defendant participated in the District Court *Cohmad* proceedings. *See* Mot. to Withdraw

the Reference, ECF No. 10 (raising Section 546(e) as grounds for withdrawal). Given its

---

[11] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); Bench Ruling on Motion to Dismiss, *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow, et al (In re BLMIS)*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Shapiro*, 542 B.R. at 100 (same); *Picard v. Ceretti, et al (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Merkin I*, 515 B.R. at 117 (same).

participation, Defendant is bound by *Cohmad*, which is law of the case. *See SIPC v. BLMIS (In re Bernard L. Madoff)*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 463-64 (S.D.N.Y. 2019) (law of the case doctrine foreclosed relitigating of issue where the district court "considered and rejected the very arguments that defendants now make"), *aff'd sub nom. Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184 (2d Cir. 2020). Defendant did not seek leave to appeal the *Cohmad* decision.[12]

## III. THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint plausibly alleges that Defendant received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). As this Court recently held, the Trustee is not required to perform a tracing analysis, or to present a "dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the

---

[12] Defendant also cites *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) for the proposition that the only exception to the safe harbor is a claim under Section 548(a)(1)(A) based on *transferor* intent. Motion at 17. If Defendant means to question *Cohmad*'s holding that transferees with actual knowledge are prohibited from benefitting from the safe harbor, this argument too is unavailing. *See Cohmad*, 2013 WL 1609154, at *7. *Cohmad*'s holding merely ensures that any transferee that *does* have actual knowledge cannot benefit from the safe harbor, including a subsequent transferee (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See id.* ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195).

The Trustee's Complaint meets these requirements. The Complaint alleges that Defendant received transfers, identified by date and amount in accompanying exhibits, from Sentry, and that Sentry invested all or substantially all of its funds with BLMIS. Compl. ¶¶ 2, 36-39, 41, Exs. A-C. The Complaint likewise alleges that Defendant received transfers, identified by date and amount in accompanying exhibits, from Sigma, and that Sigma invested all of its funds with Sentry. *Id*. ¶¶ 2, 43, Exs. D-E. Thus, the Complaint plausibly alleges that Defendant received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendant, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover"). As this Court recently held in a number of decisions, these "exhibit[s] provide[] [Defendant] with the 'who, when, and how much' of each transfer." *See, e.g., Multi-Strategy*, 641 B.R. at 95; *Banque Syz*, 2022 WL 2135019, at *12.

A.        **Defendant Misstates the Trustee's Pleading Burden**

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendant

attempts to argue for a new one, asserting that the Trustee must trace and tie each subsequent

transfer Defendant received to a specific initial transfer from BLMIS.   Motion at 4, 17-20.

However, the Court has already rejected this argument in *Merkin II*, where the Court refused to

dismiss subsequent transfer claims even though the complaint did "not connect each of the

subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150;

*see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual

dollar amounts from the transferor to the transferees to survive a motion to dismiss").   Likewise,

the Court has already rejected the argument that the Trustee must detail which and what portion of

each subsequent transfer comprises customer property.   *See Merkin II*, 515 B.R. at 152–53

(refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be

recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R.

5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-dollar accounting is not required at the proof

stage, then surely it is not required at the pleading stage either").

Defendant's reliance on *Picard v. Shapiro* is unavailing because *Shapiro* did not change

the pleading burden for recovery under Section 550(a).  In *Shapiro*, the Trustee alleged that certain

trusts and members of the Shapiro family received approximately $54 million in fraudulent

transfers from BLMIS, and that "upon information and belief" these defendants subsequently

transferred this same amount to other defendants.   *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100,

104, 109, 119 (Bankr. S.D.N.Y. 2015).  However, that complaint *did not detail any* of the necessary

vital statistics of the subsequent transfers.   *Id*. at 119.   There were no allegations regarding the

subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent

transfers, and consequently this Court granted defendants' motion to dismiss the subsequent

transfer claim.  *Id*.  Here, where the Trustee has alleged the vital statistics of each transfer

Defendant received and set out the investment relationship between Defendant and the Fairfield

Funds, *Shapiro* supports denying the motion to dismiss.

### B.    Defendant's Tracing Argument Fails on a Motion to Dismiss

Defendant's other customer property argument is a fact-based, tracing argument

inappropriate on a motion to dismiss.   Defendant claims that Sentry had already paid other

subsequent transferees with the customer property it received from BLMIS prior to making the

largest of the alleged transfers to Defendant.[13]   Motion at 19-20.   To reach this conclusion,

Defendant is in effect applying some undisclosed tracing methodology or methodologies of its

choosing (presumably First In, First Out, or "FIFO").[14]   But it is for this Court to decide—after

fact and expert discovery—the appropriate tracing methodology under the circumstances of this

case.  *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin

II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's

discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion

to determine which monies of commingled funds derive from fraudulent sources.").[15]   This Court

---

[13] Defendant also notes certain cash deposits by Sentry into BLMIS during this period, but it is unclear if in doing so Defendant means to implausibly allege without basis that there was no customer property left at the time of the transfers to Defendant because Sentry had returned to BLMIS the same customer property Sentry had previously withdrawn.

[14] The declaration of Defendant's counsel (Connelly Decl.) and the Motion itself include purported calculations of various transfers from BLMIS to Sentry and Sentry to its investors.  *See* Connelly Decl. ¶¶ 3, 5-6, ECF No. 120; Motion at 19-20.  These calculations add and subtract transfers from over 75 proceedings, amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations.  To this end, the Connelly Decl. and the Motion serve as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss).

[15] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality.  These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin II*, 581 B.R. at 386.

noted in response to a similarly-styled argument in *Multi-Strategy* that it was "not convinced that

this is the only method of calculating customer property." *Multi-Strategy*, 641 B.R. at 95.

Defendant's argument is also flawed to the extent it relies on the factual assumption that

every subsequent transfer from Sentry preceding those to Defendant was sourced solely by

customer property. Neither the Complaint nor its exhibits establish this, and at this stage, the

Trustee is not required to plead, much less establish, that an alleged subsequent transfer is

comprised solely of customer property.[16] *See Kelley v. Westford Special Situations Master Fund,*

*L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (where debtors' funds

are commingled with "cash from new subscribing investors," a trustee is not required to establish

transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on

summary judgment). To the contrary, courts in this District and in this SIPA liquidation

proceeding have denied summary judgment where only an undetermined or small portion of the

subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Rev. Tr.*, 2012

WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to

specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from

BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. Nos. 10-

03493 (SMB), 2014 WL 47774, at *14–16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to

proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi

scheme).

Moreover, at this stage and without discovery, Defendant's arguments are premature. "[I]n

a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with

---

[16] This is equally applicable to Defendant's insinuation that because the Trustee is seeking more money from all of
Sentry's subsequent transferees than the fund withdrew from BLMIS, it is "possible" that the transfers to Defendant
originated not from BLMIS, but from "other monies received and distributed by Fairfield Sentry." Motion at 18.

complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011). This is one reason why this Court in *Merkin I* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property). As this Court held in *Multi-Strategy*, "[t]he calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 2022 WL 2137073, at *10; *Banque Syz*, 2022 WL 2135019, at *12 (same); *Lombard Odier*, 2022 WL 2387523, at *11 (same).

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny Defendant's Motion.

Dated: October 14, 2022
New York, New York

/s/ Amy E. Vanderwal
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Matthew K. Cowherd
Email: mcowherd@bakerlaw.com

*Attorneys for Irving H. Picard, as Trustee for the
Substantively Consolidated SIPA Liquidation of
BLMIS and the Chapter 7 Estate of Bernard L.
Madoff*

**WINDELS MARX LANE & MITTENDORF,
LLP**
156 West 56th Street
New York, New York 10019
Telephone: 212.237.1000
Facsimile: 212.589.4201
Howard L. Simon
Email: hsimon@windelsmarx.com
John J. Tepedino
Email: jtepedino@windelsmarx.com

*Special Counsel to Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
for the Chapter 7 Estate of Bernard L. Madoff*