KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, )<br>Plaintiff-Applicant, )<br>v. )<br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, )<br>Defendant. ) | **Adv. Pro. No. 08-01789 (CGM)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re: )<br>)<br>BERNARD L. MADOFF, )<br>)<br>Debtor. ) | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff )<br>)<br>Plaintiff, )<br>v. )<br>ROYAL BANK OF CANADA, individually and as successor in interest to Royal Bank of Canada (Asia) Limited; GUERNROY LIMITED; RBC TRUST COMPANY (JERSEY) LIMITED; BANQUE SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A.; RBC DOMINION SECURITIES INC.; and RBC ALTERNATIVE ASSETS, L.P., )<br>Defendants. ) | **Adv. Pro. No. 12-01699 (CGM)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.  THE AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO
    SUPPORT PERSONAL JURISDICTION OVER THE FOREIGN DEFENDANTS ......... 2

    A.  The Foreign Defendants Did Not Purposefully Avail Themselves of U.S. Jurisdiction
    ............................................................................................................................. 2

    B.  The Forum Selection and Choice of Law Clauses in the Subscription Agreements Are
    Irrelevant and Not Sufficiently Related to the At-Issue Redemptions ........................ 4

    C.  Guernroy's Customer Claims Do Not Establish Jurisdiction ....................................... 5

    D.  The Foreign Defendants' Purported and Incidental Use of a New York Correspondent
    Bank Account Does Not Establish Personal Jurisdiction ............................................. 5

    E.  The Trustee's Claims against the Foreign Defendants Do Not "Arise Out of" Their
    Alleged Contacts with the Forum ............................................................................ 7

        i.  Due Diligence Is Not a Sufficient Jurisdictional Contact .................................... 8

    F.  The Trustee's Proffered Contacts Do Not Establish Jurisdiction over the Foreign
    Defendants under *BNP*, and *BLI* Is Distinguishable if It Even Applies ...................... 9

    G.  The Exercise of Personal Jurisdiction over the Foreign Defendants Would Be
    Unreasonable and Violate Due Process ...................................................................... 10

II.  SECTION 546(e) SAFE HARBOR APPLIES TO THE TRUSTEE'S CLAWBACK
    CLAIM ......................................................................................................................... 10

    A.  The 546(e) Safe Harbor Applies in This Case Because Defendants Had No Actual
    Knowledge of the Madoff Ponzi Scheme. ................................................................ 11

    B.  The Trustee Does Not Allege the Rye Select Funds' Actual Knowledge. ................. 13

        i.  The Trustee's Allegations Reflect the Rye Select Funds Lack of Actual
    Knowledge ........................................................................................................ 13

III.  THE TRUSTEE'S AMENDED COMPLAINT DOES NOT COMPLY WITH RULES 8(a)
    AND 10(c) ...................................................................................................................... 16

IV.  THE STATUTE OF LIMITATIONS BARS THE TRUSTEE FROM RECOVERING
    NEWLY ALLEGED TRANSFERS .................................................................................. 17

    A.  Six of the Newly Alleged Transfers Are Outside the Six-Year Lookback Period ..... 19

V.  THE TRUSTEE SHOULD NOT BE GRANTED LEAVE TO REPLEAD ....................... 20

CONCLUSION ..................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ............................................................................................6

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021) ...................................................................6

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) ...............................................................................................4

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*,
    137 S. Ct. 1773 (2017) ...........................................................................................3

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) .....................................................................................7

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998) .....................................................................................7

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .................................................................................10

*Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) ...................................................................6

*Fagan v. Republic of Austria*,
    No. 08-CV-6715 (LTS) (JCF), 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011) ........8

*Sec. Inv. Prot. Corp. v. Fairfield Inv. Fund*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) .....................................................................................................................18

*Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y., Aug. 6, 2018) .............................................4

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    141 S. Ct. 1017 (2021) .....................................................................................7, 10

*Goldberg v. Halbert*,
    2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2011) ...............................................19

*Hansen v. Wwebnet, Inc.*,
    No. 1:14–cv–2263 (ALC), 2015 WL 4605670 (S.D.N.Y. July 13, 2015) ............20

*Hau Yin To v. HSBC Holdings PLC*,
No. 15-CV-3590 (LTS) (SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ............................6

*In re Chaus Litig.*,
801 F. Supp. 1257 (S.D.N.Y. 1992)................................................................19

*In re: Fabrikant & Sons, Inc.*,
480 B.R. 480 (S.D.N.Y. 2012)....................................................................18

*In re Juliet Homes*,
2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) ..........................................19

*In re Mexican Gov't Bonds Antitrust Litig.*,
2022 WL 950955 (S.D.N.Y. Mar. 30, 2022) ....................................................7

*In re Parmalat Securities Litigation*,
501 F. Supp. 2d 560 (S.D.N.Y. 2007), *aff'd some nom. Pappas v. Bank of Am.
Corp.*, 309 F. App'x 536 (2d Cir. 2009)........................................................16

*In re UBS AG Sec. Litig.*,
No. 07-CV-112252012, 2012 WL 4471265 (S.D.N.Y. 2012), *aff'd on other
grounds sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS
AG*, 752 F.3d 173 (2d Cir. 2014) ...............................................................5

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
140 S. Ct. 768 (2020).......................................................................14, 15

*J. McIntyre Mach., Ltd v. Nicastro*,
564 U.S. 873 (2011).............................................................................4

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*,
160 F. Supp. 2d 722 (S.D.N.Y. 2001)............................................................8

*Licci v. Lebanese Can. Bank, SAL*,
20 N.Y.3d 327 (2012) ..........................................................................6

*Maranga v. Vira*,
386 F. Supp. 2d 299 (S.D.N.Y. 2005)............................................................9

*Marsh v. Kitchen*,
480 F.2d 1270 (2d Cir. 1973)....................................................................8

*Mazzaro de Abreu v. Bank of Am. Corp.*,
525 F. Supp. 2d 381 (S.D.N.Y. 2007)...........................................................15

*Miller v. Mercuria Energy Trading, Inc.*,
291 F. Supp. 3d 509 (S.D.N.Y. 2018)............................................................4

*Nat'l Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
175 F. Supp. 2d 489 (S.D.N.Y. 2000) ...................................................................15

*NewMarkets Partners LLC v. Oppenheimer*,
638 F. Supp. 2d 394 (S.D.N.Y. 2009) .....................................................................8

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain
Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ...................................................................................6

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
Adv. Pro. No. 08-01789 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
14, 2022) .................................................................................................................3

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...........................................................4, 9, 10

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014)..........................................................................12, 13

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................14, 15

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) .......................................................................3

*Picard v. Public Institute for Social Security*,
Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
17, 2022) .................................................................................................................3

*Picard v. Quilvest*,
Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
27, 2022) .................................................................................................................3

*Rosner v. Bank of China*,
349 F. App'x 637 (2d Cir. 2009) .........................................................................15

*Ryan v. Hunton & Williams*,
2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ......................................................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018)................................................9, 10, 13, 18

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
LLC (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y.
Apr. 15, 2013) ............................................................................................. *passim*

*Sedig v. Okemo Mountain,*
204 A.D.2d 709 (2d Dep't 1994) ........................................................8

*SPV Osus Ltd. v. UBS AG,*
882 F.3d 333 (2d Cir. 2018)..........................................................9, 10

*Tamam v. Fransabank Sal,*
677 F. Supp. 2d 720 (S.D.N.Y. 2010)....................................................5

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,*
916 F.3d 143 (2d Cir. 2019)..............................................................7

*United States v. Int'l Longshoremen's Ass'n,*
518 F. Supp. 2d 422 (E.D.N.Y. 2007) .................................................17

*Universal Trading & Inv. Co. v. Tymoshenko,*
No. 11-CV-7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)...................6

*Vasquez v. Hong Kong & Shanghai Banking Corp.,*
477 F. Supp. 3d 241 (S.D.N.Y. 2020).....................................................5

*Voltaire v. Westchester Cty. Dept. of Social Svcs.,*
No. 11-CV-8876 (CS), 2016 WL 4540837 (S.D.N.Y. Aug. 29, 2016) ...................20

*Walden v. Fiore,*
571 U.S. 277 (2014).................................................................3, 4, 9

*Waldman v. Palestine Liberation Org.,*
835 F.3d 317 (2d Cir. 2016)..............................................................3

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)...................................................................10

**Statutes**

11 U.S.C. § 546(e) ...........................................................................1

11 U.S.C. § 550(f)........................................................................2, 17

**Rules**

Fed. R. Civ. P. 8(a) .........................................................................2, 16, 17

Fed. R. Civ. P. 8(d)(2)....................................................................15

Fed. R. Civ. P. 10(c) .....................................................................2, 16

Defendants Royal Bank of Canada, individually and as successor in interest to Royal Bank of Canada (Asia) Limited, Guernroy Limited, RBC Trust Company (Jersey) Limited, Banque SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A., RBC Dominion Securities Inc., and RBC Alternative Assets, L.P.'s (collectively, "Defendants"), by their undersigned counsel, respectfully submit this reply memorandum of law (the "Reply") in further support of their motion to dismiss the Amended Complaint (ECF No. 155).

## PRELIMINARY STATEMENT

The arguments presented in the Trustee's Opposition[1] fail as a matter of law. The Foreign Defendants—all organized and conducting business abroad—entered into contracts with international foreign feeder funds, and the transfers at issue in this case were made pursuant to those purely foreign relationships. Yet, the Trustee asks this Court to impose personal jurisdiction over the Foreign Defendants on the basis of those *feeder funds'* U.S. activities. The Trustee also asserts jurisdiction over the Foreign Defendants on the basis of activity of a poorly defined "RBC Cap/Alt Group" that conducted business in New York. But that so-called entity's relationship with the Foreign Defendants is not ever alleged. The only allegation connecting the Foreign Defendants themselves to New York is the allegation that they used correspondent bank accounts in connection with their investments in the feeder funds. That allegation alone is not sufficient to establish jurisdiction over the Foreign Defendants. *See* Section I, *infra*.

Moreover, the 546(e) safe harbor protects all of the Defendants from the Trustee's attempt to recover all transfers dating two years before December 11, 2008, totaling $43,449,712 of the

---

[1] "Opposition" or "Opp." refer to the Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF No. 158). "Moving Brief" or "Mov. Br." refer to Defendants' Memorandum of Law in Support of Their Motion to Dismiss (ECF No. 155). Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in Defendants' Moving Brief. Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01699 (CGM).

1

$77 million sought in this proceeding. The Trustee's only argument is that the *initial transferees—* Sentry and the Rye Select Funds—had actual knowledge of the Madoff Ponzi scheme. That argument cannot prevail <u>first</u>, because the Trustee premises his argument on a misreading of District Court and Second Circuit precedent by focusing on the knowledge of the initial transferee and, <u>second</u>, even if that initial transferee focus is accepted, the Trustee's pleadings against the Rye Select Funds actually allege that those initial transferees ***did not*** have knowledge of the Madoff Ponzi scheme. *See* Section II, *infra*.

The Trustee also attempts to argue that his incorporation of complaints against Sentry and the Rye Select Funds is appropriate, even though the result is an inconsistent, bloated document, rife with allegations and claims that have nothing to do with the Defendants. The pleading violates Federal Rules of Civil Procedure 10(c) and 8(a). *See* Section III, *infra*.

Finally, the Trustee makes no credible argument that over $30 million in previously unalleged transfers can be added to his claims at this late date, given that nearly all of them pre-date the transfers alleged in his original Complaint. Consequently, the Trustee should be prohibited from seeking to recover these newly alleged transfers because the claim to recover them violates the Section 550(f) statute of limitations. *See* Section IV, *infra*.

For these reasons and those stated in Defendants' Moving Brief, the Trustee's Amended Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

## I. THE AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT PERSONAL JURISDICTION OVER THE FOREIGN DEFENDANTS

### A. The Foreign Defendants Did Not Purposefully Avail Themselves of U.S. Jurisdiction

The Trustee argues that the Foreign Defendants "availed themselves of the benefits and protections of New York laws" by investing in Sentry and the Rye Select Funds. Opp. 10-20. As

2

amplified in the Moving Brief, the Supreme Court held in *Walden* that a non-party's contacts with a forum cannot support the imposition of jurisdiction over a defendant without meaningful contact with that jurisdiction. Mov. Br. 10. "For a State to exercise jurisdiction consistent with due process … [t]he relationship between the defendant and the forum 'must arise out of contacts that the 'defendant *himself*' creates with the forum.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)); *see Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("[A] defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction.") (quoting *Walden*, 571 U.S. at 286). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285.

The Amended Complaint contains no plausible allegation, as required by *Walden,* that the Foreign Defendants had any meaningful "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means." *Walden*, 571 U.S. at 285. Indeed, it is not disputed that the Foreign Defendants effected investments on behalf of clients in Sentry or the Rye Select Funds—not in BLMIS—and that it was Sentry or the Rye Select Funds that directly or indirectly invested substantially all of their assets into BLMIS.[2] Opp. 5-6. This is nothing more than a variation on the "stream of commerce" theory of personal jurisdiction that the

---

[2] This case is readily distinguishable from the Court's recent opinions in the Trustee's cases against Public Institute for Social Security, Quilvest Banque SYZ and Multi-Strategy Fund.  *See Picard v. Banque Syz & Co., SA (In re Madoff)*, Adv. Pro. No. 08-01789 (CGM), 2022 WL 2135019 at *3 (Bankr. S.D.N.Y. June 14, 2022) (among other things, the Trustee made allegation that defendant Banque Syz solicited its own clients to invest in Madoff Feeder Funds); *see also Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 641 B.R. 78, 86 (Bankr. S.D.N.Y. 2022) (among other things, the Trustee alleged that defendant was a "Madoff addict"); *Picard v. Public Institute for Social Security*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 at *6 (Bankr. S.D.N.Y. Aug. 17, 2022) (among other things, the Trustee asserted that subsidiary of defendant attended in-person meetings with Sentry representatives in New York and included details about the relationship between subsidiary and defendant); *Picard v. Quilvest*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 at *3 (Bankr. S.D.N.Y., Sept. 27, 2022) (similar).

courts have consistently rejected. *See J. McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."). [3]

### B.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements Are Irrelevant and Not Sufficiently Related to the At-Issue Redemptions

The Trustee points to New York choice of law and choice of forum provisions included in the Fairfield subscription agreements between the Foreign Defendants and Sentry. *See* Opp. 15-16. But those provisions in the subscription agreements fail to establish personal jurisdiction over the Foreign Defendants for any of the claims here, and the Trustee concedes that such clauses cannot establish jurisdiction by themselves. Opp. 16.

The subscription agreements concern the Foreign Defendants acts of subscribing, and investing in, Sentry or the Rye Select Funds. Judge Bernstein held in *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)* that the Fairfield Sentry subscription agreements are "irrelevant" to claims, like the Trustee's claims, to recover redemption payments. *See* 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y., Aug. 6, 2018) ("*Fairfield I*"); *see also* Mov. Br. 10, 14-15, n.10. The subscription agreements' relevance to this proceeding is even more attenuated because neither BLMIS nor the Trustee is a party to them. *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) (declining to consider forum selection clause in

---

[3] The Trustee relies on *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") to support his argument that the Foreign Defendants' investment into Sentry or the Rye Select Funds, with knowledge that the investment would end up with BLMIS, is sufficient to establish jurisdiction. Opp. 10-12. *BLI* is not controlling law and the court there did not decide this issue. *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (decision not precedent for issues not "squarely addressed"). Second, *BLI* predates and is inconsistent with *Walden*. *Walden* clarifies that knowing of or intending a consequence in the forum state cannot give rise to personal jurisdiction. Mov. Br. 10-11. If the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction.

4

jurisdictional analysis concerning claim by non-party to the contract when forum selection clause does not govern the claim).

### C.    Guernroy's Customer Claims Do Not Establish Jurisdiction

As explained in the Moving Brief, the alleged filing of customer claims unrelated to the transfers at issue in this proceeding does not bear on the jurisdictional analysis. Mov. Br. at 15. The customer claims at issue in this case are doubly irrelevant in this case because, as the Trustee concedes, the customer claims filed by Guernroy were "in connection with investments it made in another BLMIS feeder fund," not at issue in this case.[4] *See* Opp. at 13.  The Trustee's Opposition fails to rebut this point.

### D.    The Foreign Defendants' Purported and Incidental Use of a New York Correspondent Bank Account Does Not Establish Personal Jurisdiction

The Trustee alleges in a conclusory manner that it was each "Defendant's practice to use New York bank accounts in either its own or its affiliate's name…to send subscriptions to and receive redemptions" and subscription payments "sent by Defendants to the Feeder Funds were deposited into BLMIS's account at JPMorgan Chase Bank in New York." Opp. 7, 16-19; Am. Comp. ¶¶ 78-79. But "courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) (citing cases); *see also* Mov. Br. 11-14. That is so even where funds relevant to the claims passed through those accounts. *See, e.g.*, *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020)

---

[4] The Trustee's Opposition does not argue that the filing of customer claims by Banque Syz contributes to a finding of jurisdiction over Banque Syz. *Compare* Opp. 13 *with* Mov. Br. 15 (explaining why the filing of customer claims by Banque Syz and Guernroy do not support jurisdiction); *see also* Am. Comp. ¶ 64. By not contesting Banque Syz's argument in the Moving Brief, the Trustee concedes the argument. *In re UBS AG Securities Litigation*, No. 07-CV-112252012, 2012 WL 4471265, at *11 (S.D.N.Y. 2012) (finding Plaintiff "concede[d] through silence" Defendant's assertion by failing to respond to it in opposition brief), *aff'd on other grounds sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

(no specific jurisdiction over foreign bank defendant where use of correspondent bank account was not essential to the Ponzi scheme); Mov. Br. 12-13.

The Trustee concedes that a defendant's mere use of a correspondent account does not create jurisdiction under New York law—the use must be "purposeful." Opp. 16-17. *See Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS) (SN), 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017). Here, there is no allegation that the correspondent accounts were anything more than an intermediate step in the redemption of shares in the Sentry and Rye Select funds. Opp. 17-18. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403 (S.D.N.Y. 2021) (finding that a transfer at issue passing through a New York correspondent account did not show a non-bank defendant's "purposeful" use of the account where he did not maintain the account and the money only passed through it en route to a foreign bank account.); *see also Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-CV-7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (finding no personal jurisdiction where "a foreign individual holding foreign accounts . . . moved money through New York via a correspondent account.").[5]

Here, there is no allegation that the Foreign Defendants' use of a correspondent bank account was purposeful. Opp. at 17-18; *cf. Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 338-39 (2012) (finding defendant's repeated use of New York correspondent bank account was purposeful, not incidental); *Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-71 (S.D.N.Y. 2016) (jurisdiction existed over Bahrain bank using correspondent bank account where bank set terms of transaction and selected dollars as currency of transaction); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327-28 (2016) (purposeful

---

[5] The Trustee's reliance on *Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323 (S.D.N.Y. 2019) (Opp. 18) is misplaced. In that case, the defendant maintained three relevant U.S. bank accounts and deliberately directed transfers to and from those accounts. *Id.* at 338-39, 345.

use of correspondent account where defendants allegedly aided groups through money-laundering by giving them access to a New York correspondent account).

Without citing any law for the proposition, the Trustee makes the argument that any correspondent bank account in a defendant or an affiliate's own name is purposeful availment *ipso facto*. Opp. 18. Courts repeatedly have held that correspondent accounts held in a defendant's name are *not* sufficient to impose personal jurisdiction, if the use of such account is *incidental* to foreign investment contracts that were negotiated and performed entirely abroad. *See* Mov. Br. 11-12, n.8 (collecting cases). The Trustee has not alleged any purposeful use of the bank accounts to deviate from this settled law.

> ### E.    The Trustee's Claims against the Foreign Defendants Do Not "Arise Out of" Their Alleged Contacts with the Forum

To establish personal jurisdiction over the Foreign Defendants, the Trustee must show that, *inter alia*, the underlying causes of action "arise out of or relate to" the defendant's contact with the United States. *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). Contrary to the Trustee's assertion, the Second Circuit has made clear that where, as here, "the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (internal citations omitted).[6]

The Trustee argues that the Foreign Defendants "had a number of direct contacts with the forum related to their Sentry and Rye Portfolio investments" because the ***RBC Cap Alt Group*** was

---

[6] The Trustee's attempt to rely on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) (Opp. 19) to avoid New York's "causal" requirement has already been rejected by the Southern District. *See In re Mexican Gov't Bonds Antitrust Litig.*, 2022 WL 950955, at *3 (S.D.N.Y. Mar. 30, 2022) (holding that *Ford Motor Co.*, by its terms, does not compel the conclusion that there is specific jurisdiction over foreign misconduct that occurs in the United States). Indeed, in New York, claims alleging fraud or concerning financial instruments require U.S. contacts to give rise to the claim. *See id.* (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)).

located in New York, "met with Madoff in the late 1990s," "met and corresponded with Feeder

Fund managers, including meetings in New York with FGG and Tremont executives at least once

a year from 2003 through 2007," and "was responsible for due diligence and risk management for

RBC's hedge fund and other alternative asset investments, including all Defendants' BLMIS

feeder fund investments." *See* Opp. 14-15; Am. Comp. ¶¶ 74-75. The Trustee does not define the

RBC Cap Alt Group with any particularity; it is only described as an "RBC business unit." Opp.

8. While the Trustee alleges that the RBC Cap Alt Group "managed and controlled" Royal Bank

of Canada and RBC Alternative, (Opp. 8), he does not describe the relationship between the

Foreign Defendants and the RBC Cap Alt Group at all. Indeed, the Trustee does not allege that the

RBC Cap Alt Group was a "mere department or agent" of the Foreign Defendants nor does he

allege facts that would establish that connection.[7] The Trustee also fails to allege any facts to

support a finding that the RBC Cap Alt Group acted as an agent of the Foreign Defendants.[8]

### i.    Due Diligence Is Not a Sufficient Jurisdictional Contact

The Trustee's only allegation connecting the RBC Cap Alt Group to the Foreign

Defendants is that the RBC Cap Alt Group allegedly conducted "due diligence and risk

---

[7] To warrant disregarding corporate forms and find jurisdiction based on an alter ego or mere department theory, a plaintiff must allege facts demonstrating: (1) common ownership and the presence of an interlocking directorate and executive staff; (2) the subsidiary's financial dependency on the parent; (3) the parent's interference in the selection and assignment of the subsidiary's executive personnel and a failure to observe corporate formalities; and (4) the parent's control of the subsidiary's marketing and operational policies. *Fagan v. Republic of Austria*, No. 08-CV-6715 (LTS) (JCF), 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011) (declining to find personal jurisdiction).

[8] Jurisdiction based on an agency theory requires that the domestic agent "do[] all the business which [the foreign corporation] could do were it here by its own officials." *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 737 (S.D.N.Y. 2001). Courts have developed several showings necessary to establish an agency relationship and impute the local entity's contacts to its foreign counterpart: (1) there must be a showing that the foreign "principal" exercises some element of control over the alleged in-state agent. *See Marsh v. Kitchen*, 480 F.2d 1270, 1273 (2d Cir. 1973) (finding no agency relationship where, among other things, the alleged agent was not under purported principal's control), (2) the U.S. "agent" corporation must have the authority to contractually bind the foreign "principal." *Sedig v. Okemo Mountain*, 204 A.D.2d 709, 710 (2d Dep't 1994), and (3) a purported agent must be "primarily employed by the [foreign] defendant and not engaged in similar services for other clients." *NewMarkets Partners LLC v. Oppenheimer*, 638 F. Supp. 2d 394, 401 (S.D.N.Y. 2009).

management" in New York for all defendants, but he does not allege what due diligence the RBC Cap Alt Group performed for the Foreign Defendants. Opp. 15; Am. Comp. ¶ 74. The Trustee's allegation is far too general and conclusory to be credited. On this point, the Trustee urges the Court to disregard case law cited by Defendants because "the alleged contacts were limited" in that case. *See* Opp. 15 (citing *Maranga v. Vira*, 386 F. Supp. 2d 299 (S.D.N.Y. 2005)). In *Maranga,* the court wrote, "receipt of New York financial and banking information in order to perform due diligence does not imply that [defendant] transacted business in New York." 386 F. Supp. 2d at 309. Here, the Trustee does even less, making no allegation at all about the due diligence performed by the RBC Cap Alt Group *for the Foreign Defendants*.

### F.    The Trustee's Proffered Contacts Do Not Establish Jurisdiction over the Foreign Defendants under *BNP*, and *BLI* Is Distinguishable if It Even Applies

The contacts proffered by the Trustee fail to establish personal jurisdiction under *BNP*, which supersedes *BLI* and controls. In *BNP*, Judge Bernstein cited the Second Circuit requirement of a proximate cause connection between the defendant's jurisdictional contacts and the underlying claim. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("*BNP*"), (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018)). Disregarding *BLI* and instead relying upon *SPV Osus* and *Walden*, Judge Bernstein held that the Trustee is required to establish jurisdiction with respect to *each* of the redemptions he sought to avoid based on the *defendant's* own contacts with the forum. *See BNP,* 594 B.R. at 189-90. Although *BNP* found jurisdiction, it did so based on numerous, extensive, direct New York contacts related to the redemptions at issue. *Id*. at 190-91.

But even if *BLI* retains vitality after *BNP*, it is nonetheless distinguishable based on the Trustee's own concession that *BLI* involved a defendant that, unlike the Foreign Defendants, invested its *own* money in the Fairfield Funds. *BLI,* 480 B.R. at 517 (emphasis added). Here, in

marked contrast, the Trustee does not allege that the Foreign Defendants invested their own funds in the Sentry or the Rye Select Funds, or were seeking a profit from a New York investment.

The Trustee attempts to cast doubt on the applicability of this framework by citing *Ford Motor Co. See* Opp. 19. Although the Trustee correctly notes that *Ford* held that no proximate cause requirement exists when there are sufficient related contacts, the Court emphasized that "[i]n the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford,* 141 S. Ct. at 1026. That limitation is critical in this case where the Trustee has alleged almost no contacts that relate to each of the redemptions at issue. *See SPV Osus*, 882 F.3d at 344.

### G.    The Exercise of Personal Jurisdiction over the Foreign Defendants Would Be Unreasonable and Violate Due Process

Even if the Trustee had alleged sufficient contacts between the Foreign Defendants and New York, the Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 297 (1980). The Trustee suggests that once the plaintiff shows bare minimum contacts, the burden shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable (Opp. 20), but his own cited case holds that jurisdiction is merely "favored" when minimum contacts are shown. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010). It is not reasonable to impose personal jurisdiction over foreign defendants in a case about completely foreign investments, where the only allegation of direct contact with New York relevant to those investments is the use of a correspondent bank account.

## II.    SECTION 546(e) SAFE HARBOR APPLIES TO THE TRUSTEE'S CLAWBACK CLAIM

In their Moving Brief, the Defendants established their entitlement to § 546(e) safe harbor protection for all subsequent transfers the Trustee seeks to recover from the Defendants pre-dating

10

December 11, 2006. Mov. Br. 21-33. The Trustee concedes that the transfers at issue satisfy the statutory criteria for such protection (Opp. 21, 23-26), and argues instead only that the transfer should be excepted from the safe harbor due to the alleged "actual knowledge" of Sentry and the Rye Select Funds. The Trustee's argument is based on a misreading of the District Court's controlling decision in *Cohmad*, and of its own allegations. *See Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154, *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); Opp. 27-33.[9]

### A.    The 546(e) Safe Harbor Applies in This Case Because Defendants Had No Actual Knowledge of the Madoff Ponzi Scheme.

The Trustee gets the "actual knowledge" exception wrong. *Cohmad* holds that a subsequent transferee's "actual knowledge" of the Madoff Ponzi scheme defeats the application of the Section 546(e) safe harbor when the Trustee seeks to recover from the subsequent transferee:

> (2) Where the Trustee has sought to recover transfers made to a <u>subsequent transferee</u>, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the <u>subsequent transferee</u> will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" if the Trustee has alleged that the <u>subsequent transferee</u> had actual knowledge of Madoff Securities' fraud.

*Cohmad*, 2013 WL 1609154, at *1. Implied in *Cohmad* is the inverse—that the Trustee cannot recover from a subsequent transferee *without actual knowledge*.

The Trustee argues that this reading of *Cohmad* is a "repackaging" of the argument that Section 546(e) applies to subsequent transfers, when the "plain language" of the statute applies only to initial transfers. Opp. 23. Indeed, Section 546(e) focuses on the initial transfer, and the

---

[9] The Trustee writes that he "does not concede that any agreements or transfers between the Feeder Funds and Defendants activate the safe harbor under Section 546(e)" (Opp. 21 n.18), but offers no support for his position. Indeed, the Trustee acknowledged that the District Court in *Cohmad* concluded that a contract between a feeder fund and subsequent transferee can constitute a "relevant 'securities agreements'" for purposes of the Section 546(e) safe harbor. Opp. 24 n. 24. For the reasons stated in Defendants' Moving Brief, the subscriptions agreements between the Defendants and Sentry and the Rye Select Funds are "securities contracts" under Section 546(e), forming an independent basis for the application of the Section 546(e) safe harbor. *See* Mov. Br. 21-27.

Trustee does not challenge that—using the plain language of the statute—the initial transfer is subject to the Section 546(e) safe harbor. The plain language of Section 546(e) contains no "actual knowledge" exception to its application.

The Trustee, however, now seeks to invoke the exception set forth in *Cohmad*. But that exception is *not* focused on the initial transfer. *Cohmad* teaches that the application of Section 546(e) turns on whether the *particular transferee sued in a given adversary proceeding* had actual knowledge of the Madoff fraud. *Cohmad*, 2013 WL 1609154 at *7 (where "Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor") (emphasis added). Accordingly, the initial transferee's alleged actual knowledge does not preclude the innocent subsequent transferee defendant from asserting the Section 546(e) defense. *See id.*

The Second Circuit clearly intended for innocent transferees—both initial and subsequent—to be protected from liability from the Trustee in order to achieve the greater purpose of Section 546(e), *i.e.*, to create stability in the securities markets. Indeed, the Second Circuit wrote, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) ("*Fishman*") (citation omitted). By creating a massive exemption from the safe harbor due to the feeder funds' alleged actual knowledge, the Trustee is asking this Court to permit exactly what the Second Circuit sought to curtail. Indeed, the Defendants are precisely the investors the *Fishman* Court wanted to protect—those investors who had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, [and thus,] have every right to avail themselves of

12

all the protections afforded to the clients of stockbrokers, including the protection offered by §

546(e)." *Id.* at 420. Nothing in *Cohmad* (or in Section 546(e)) remotely supports its barring a

subsequent transferee defendant that lacked actual knowledge of the underlying fraud from

invoking the safe harbor merely because it happened to deal at arm's length with an initial

transferee allegedly possessing such knowledge.[10]

### B.    The Trustee Does Not Allege the Rye Select Funds' Actual Knowledge.

The Trustee's argument that the "actual knowledge" exception should apply in this case

rings especially false with respect to the Rye Select Funds' transfers, because the Trustee clearly

and repeatedly alleges that the Rye Select Funds did *not* have actual knowledge of the Madoff

Ponzi scheme.

### i.    The Trustee's Allegations Reflect the Rye Select Funds Lack of Actual Knowledge

The Trustee incorporates the Tremont Complaint's allegations in their entirety into the

Amended Complaint. Am. Compl. ¶ 80. As stated in the Moving Brief, (*see* Mov. Br. 30), the

Tremont Complaint could not be clearer that those controlling the Rye Select Funds had no actual

knowledge of the Madoff Ponzi scheme. There, the Trustee alleged that the Rye Select Funds

managers had the "opportunity to uncover" the fraud, but instead, "ignored . . . obvious warning

signs of fraud." Tremont Complaint ¶ 3. The refrain of "blindly relying on Madoff" and "ignor[ing]

whatever they saw that seemed suspicious" is repeated throughout the Tremont Complaint. *Id.* ¶

9; *see also* Mov. Br. 30.

The Trustee argues that the Tremont Complaint actually supports a finding of actual

knowledge. *See* Opp. 26. It does not. Even the cherry-picked paragraphs of the Tremont Complaint

---

[10] Case law cited by the Trustee is not to the contrary. *BNP* does not support the Trustee's argument; the issue of whether subsequent transferees are barred from asserting the safe harbor where the initial transferee had actual knowledge of the fraud is not even addressed in that opinion, nor is *Cohmad* cited. *BNP*, 594 B.R. at 197; Opp. 24.

that he cites reflect a lack of actual knowledge. For example, those paragraphs reflect that the Rye Select Funds merely had knowledge of "red flags" sufficient to "put the [Rye Select Funds] on inquiry notice that Madoff was committing fraud." Tremont Complaint ¶ 159. The Trustee's cited allegations further reflect that the Rye Select Funds had information available to them, suggesting that they did not "properly monitor[]" the Madoff investments and "should have questioned" them. Tremont Complaint ¶¶ 166, 203. Indeed, the Trustee concluded in the Tremont Complaint that "Tremont did not conduct any [] reasonable inquiry," "fail[ed] to confirm or independently question" aspects of the Madoff operation, and did not focus on "actually understanding what Madoff really was doing with that money." *Id.* ¶¶ 169, 190, 195.

Even in his Opposition, the Trustee characterizes the Rye Select Funds as "choosing to look away." Opp. 28. That is not actual knowledge. *See Cohmad*, 2013 WL 1609154, at *6. Dictionaries confirm that, "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020). Blind reliance and a deliberate focus to not have knowledge, as the Trustee pleads in the Tremont Complaint, do not satisfy this standard. The case law makes clear that the Rye Select Funds' level of knowledge— the avoidance of red flags and/or a strong suspicion of fraud—is not actual knowledge. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge") ("*Merkin*"). Nor is actual knowledge what a reasonably diligent person would have known in the same position. *See Intel Corp.*, 140 S. Ct. at 776-77.

To address his own clear articulation that the Rye Select Funds did *not* have actual knowledge of the Madoff Ponzi scheme, the Trustee attempts to couple his new allegations in the Amended Complaint with the allegations in the Tremont Complaint to draw parallels to cases in

14

which defendants were held to have actual knowledge. Opp. 27. That argument falls flat for two

reasons. First, this case is unlike cases cited by the Trustee, because in none of those cases did the

Trustee clearly state in his allegations that the initial transferee ignored suspicions, blindly relied

on Madoff, and actively avoided understanding Madoff's business, as the Trustee has alleged here.

*See supra* pages 13-14. Irrespective of the Trustee's other allegations, he cannot get around his

own allegation clearly and directly proclaiming a lack of the Rye Select Funds' actual knowledge.[11]

Second, the Trustee should not be permitted to couple his new allegations with the

allegations in the Tremont Complaint because they are inconsistent. The Trustee argues that Rule

8(d)(2) allows different theories between pleadings, but "there is no authority for the proposition

that within a statement of a given claim a party may assert as fact two assertions that directly

contradict each other." *National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000). The Trustee, through his incorporation by

reference, does not plead two different theories; he pleads two different *sets of facts* to demonstrate

Tremont's state of mind towards BLMIS. Either the Rye Select Funds had actual knowledge or

not; the Trustee cannot plead it both ways. And, the Trustee has clearly pleaded allegations fatal

to his claims.[12]

---

[11] Even if the Trustee's new allegations are credited (*see generally* Am. Compl., Opp. 30-33) and his allegations in the Tremont Complaint ignored, they are at best, red flags, the avoidance of red flags, or strong suspicions of Madoff's fraud. *See Merkin*, 515 B.R. at 140 (dismissing avoidance claims after finding that such red flags do not equate to actual knowledge); *see also Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) ("Even if [Bank of China] had reason to suspect that Siu Lap was laundering money, this does not mean that [Bank of China] had actual knowledge of the fraudulent scheme perpetrated by IFS and Siu Lap."); *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (explaining that while patterns of bank transfers and low balances gave rise to inferences of fraud, they at most indicated constructive knowledge of a fraudulent scheme); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (allegations of suspected fraudulent activity by an internal fraud investigation unit did not raise an inference of actual knowledge of a Ponzi scheme).

[12] Indeed, his pleading is rife with allegations inconsistent with the Tremont Complaint. *See* Paccione Reply Decl. ¶ 3.

In a last ditch attempt to argue that he has plead the Rye Select Funds' actual knowledge, the Trustee argues that the knowledge of Kingate Global Fund, Ltd. should be imputed to the Rye Select Funds. Opp. 33. The Trustee, however, includes no allegations in the Amended Complaint, or in the incorporated pleadings, about Kingate's level of knowledge. And he also fails to plead any characteristics of the relationship between Kingate and the Rye Select Funds that would justify imputation of knowledge from one to the other.[13]

## III.    THE TRUSTEE'S AMENDED COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND 10(c)

The Defendants demonstrated in their Moving Brief that the Trustee's attempt to incorporate the 217-page Fairfield Second Amended Complaint ("SAC") and the 136-page Tremont Complaint into the Amended Complaint does not comply with Rule 8(a)'s "short and plain statement" requirement or Rule 10(c)'s limitations on incorporation by reference. Moreover, the Trustee's effort to incorporate two entire pleadings—without specifying the relevant allegations he wishes to incorporate—flies in the face of well-established statutory and case law limiting incorporation by reference for this very purpose. *See United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (citation omitted) ("references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."); *see also* Mov. Br. 33-39.

By incorporating the entirety of the Fairfield SAC and Tremont Complaint, the Trustee puts at issue all claims he asserted against Sentry, the other Fairfield defendants, and the Rye Select

---

[13] The Trustee relies on case law supporting the imputation of knowledge by and between joint venture partners. *In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 590 (S.D.N.Y. 2007), *aff'd some nom. Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d Cir. 2009). In *In re Parmalat*, the Court found that co-auditors were not joint venturers because they did not "become as one," there was no free flow of information, unfettered access to the other's projects, or mutual control over each other and the purported enterprise. *See id.* at 590-591. The Amended Complaint contains no allegations to establish that Tremont and Kingate "bec[a]me as one" to justify imputation.

Funds and their co-defendants, including a plethora of irrelevant allegations and exhibits that have nothing to do with avoidability. It is no answer to say that the Defendants may respond only to those allegations in the two separate complaints that address avoidability. A defendant should not be required to guess which of the plaintiff's allegations apply and which do not: the plaintiff must state a claim in a short and plain statement of facts entitling the plaintiff to relief, to which the defendant can respond. Fed. R. Civ. P. 8(a); *see also* Mov. Br. 33-39.

The Trustee contends the Court may take judicial notice of the SAC in *Fairfield Investment Fund* and its decision in that case. *See* Opp. 35. However, judicial notice does not relieve the Trustee of his burden to align with the Federal Rules of Civil Procedure pleading requirements and applicable case law concerning incorporation by reference. Because he has not fulfilled these pleading requirements, the Court should dismiss the Amended Complaint.

## IV.    THE STATUTE OF LIMITATIONS BARS THE TRUSTEE FROM RECOVERING NEWLY ALLEGED TRANSFERS

The Trustee alleges 26 transfers in his Amended Complaint that were not pleaded in his original Complaint. The Trustee is time-barred from asserting these new transfers under Section 550(f). *See* Mov. Br. 18. The Trustee argues that the new transfers relate back to the original Complaint. *See* Opp. 35-38. But as Defendants explain in the Moving Brief, nearly all of the 26 new transfers pre-date the originally pleaded transfers by a magnitude of years, and as such, are different claims that would require separate factual inquiries. *See* Mov. Br. 20. Most significantly, the knowledge of each separate redeeming defendant may differ over time. *See Securities Inv'r Pro. Corp. v. BLMIS*, 594 B.R. 167, 210 (Bankr. S.D.N.Y 2018) (finding that new subsequent transfer claims in an amended complaint arising from different facts and circumstances required different thresholds of proof).

17

To support his argument that the newly alleged transfers relate back to the original Complaint, the Trustee cites the wrong standard. He writes that he need only establish that newly alleged transfers were part of the "same course of conduct" as the transfers pleaded in the original Complaint. Opp. 36. To support his argument, he cites old precedent and ignores *BNP*, where the Court expressly stated that "relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct." *BNP*, 594 B.R. at 210 (citation and quotation omitted). As explained in Defendants' Moving Brief, the Supreme Court has instead instructed that relation back requires "a common 'core of operative facts' uniting the original and newly asserted claims."[14] *See* Mov. Br. 19.

There are no allegations in this case suggesting a "common core of operative facts" *or* "the same course of conduct." There are no allegations at all about the transfers, other than the parties to them and the dates. The Trustee argues that the defenses concerning both the new and original transfers are "likely [to] be the same . . . or similar," but that is false. Opp. 37. Most of the 26 newly alleged transfers pre-date the originally pleaded transfers. *See* Paccione Reply Decl. Ex. H-

---

[14] This Court has also stated a relevant question is whether the original Complaint "put the defendant on notice that additional transfers may be pursued at a later date." *Sec. Inv. Prot. Corp. v. Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021). The original Complaint merely stated that the Trustee "reserves the right to . . . seek recovery of any additional transfers." Compl. ¶ 70. That allegation does not specify the transferor or transferee of any such transfers, or any other details of future transfers the Trustee may seek. The Trustee did not even allege that additional transfers made to the Defendants are customer property. Judge Bernstein reached the same result in *BNP* where he distinguished *Picard v. Peter Madoff*, 468 B.R. 620 (Bankr. S.D.N.Y. 2012), by noting the "reasonable notice that the Trustee was uncovering additional transfers that he would seek to recover." *BNP*, 594 B.R. at 211. In declining to apply the relation back doctrine, the "reasonable notice" in *Peter Madoff* was in stark contrast to the *unreasonable notice* provided in *BNP*—where the Trustee reserved the right to "supplement the information on . . . any additional transfers, and . . . seek recovery of such additional transfers." *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-1576, Complaint (Bankr. S.D.N.Y. May 4, 2012) ¶ 114 (ECF No. 1). The insufficient notice provided in *BNP* is nearly identical to that provided in this case. In contrast, in *Fairfield Inv. Fund*, the Court held that the defendants were on notice where they were informed in the original pleading that transfers made from Madoff to specific entities were customer property and that those transfers could be avoidable and/or recoverable. As one court wrote, "overly general original pleadings do not provide defendants with adequate notice as to what facts they are to defend against, and, therefore, such general allegations cannot be hooks on which to hang later amended pleadings." *In re: Fabrikant & Sons, Inc.*, 480 B.R. 480, 493 (S.D.N.Y. 2012) (holding that the relation back doctrine did not apply).

18

1. Consequently, the facts regarding the Defendants' knowledge and good faith may be entirely different. The Trustee cites cases to support his position, but none of those cases related to newly alleged transfers that conceivably turn on completely different facts as those alleged in the original pleading. *See Goldberg v. Halbert*, 2021 WL 5774217 at *10-*11 (Bankr. D. Del. Dec. 6, 2011) (unlike in this case, holding that newly alleged recovery related back to identical transfers alleged in the original pleading); *In re Juliet Homes*, 2011 WL 6817928 at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (unlike in this case, holding that defendants' business was the alleged Ponzi scheme, and thus, newly alleged transfers related back to the same conduct); *In re Chaus Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (unlike in this case, holding that new allegations of wrongdoing were part of the same overall fraudulent scheme).

### A.    Six of the Newly Alleged Transfers Are Outside the Six-Year Lookback Period

Of the 26 new transfers the Trustee alleges in his Amended Complaint, six transfers totaling $8,209,298 were made on dates preceding the six-year look-back period available under the New York Debtor Creditor Law. *See* Am. Compl. Exs. C, I; Paccione Reply Decl. Ex. H-1. The Trustee makes the argument that he should be entitled to seek recovery of these six transfers on the premise that the Tremont Complaint "sought avoidance of the full history of initial transfers to the Rye Select Funds." Opp. 38 n.35. The Trustee appears to be arguing that these newly asserted transfers for which he seeks recovery against Defendants for the first time in 2022 should be permitted because he sought to avoid the initial transfers from which the newly alleged subsequent transfers derived in 2010. That argument fails because the Trustee must allege avoidability of the transfers and entitlement to recovery in the Amended Complaint, here and now. The Amended Complaint contains no allegation, nor any factual showing to support the argument that these six new transfers could only have been discovered recently, or even in the two years prior to the filing of the Tremont Complaint. As a result, the pleading fails to state the transfers' avoidability. That silence is fatal

19

here. *See Hansen v. Wwebnet, Inc.*, No. 1:14–cv–2263 (ALC), 2015 WL 4605670, at *6 (S.D.N.Y.

July 13, 2015) ("The burden of establishing that the fraud could not have been discovered during

the two-year period before the commencement of the action rests on the plaintiff, who seeks the

benefit of the discovery exception to the six-year statute of limitations."); *see also Voltaire v.*

*Westchester Cty. Dept. of Social Svcs.*, No. 11-CV-8876 (CS), 2016 WL 4540837, at *5 (S.D.N.Y.

Aug. 29, 2016) ("Where a plaintiff's claims are time-barred on the face of her own complaint, she

bears the burden of pleading facts sufficient to establish that the statute of limitations should be

tolled."). Indeed, in *BNP*, Judge Bernstein rejected the Trustee's bid to add newly added transfers

from Tremont-affiliated Rye funds without regard to what transfers were alleged in the Tremont

Complaint. The same result should apply here.

## V.    THE TRUSTEE SHOULD NOT BE GRANTED LEAVE TO REPLEAD

The Trustee purports to "reserve[] the right to amend" the Amended Complaint to add

allegations of Defendants' knowledge of the Madoff Ponzi scheme. Opp. 22 n.21. The Trustee had

ten years to investigate, and then add, new allegations to the Amended Complaint. He should not

be permitted another opportunity to drag this proceeding on any longer. His excuse—that he no

longer has the burden of pleading bad faith—rings hollow, because he does indeed have the burden

to demonstrate the Defendants' actual knowledge to survive a motion to dismiss on the basis of

the Section 546(e) safe harbor. *See Cohmad*, 2013 WL 1609154 at *4.

### CONCLUSION

For the foregoing reasons and the reasons set forth in the Defendants' Moving Brief, the

Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety.

20

Dated: October 17, 2022
New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

/s/ Anthony L. Paccione
Anthony L. Paccione
Mark T. Ciani
Zachary S. Beal
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com
zachary.beal@katten.com

*Attorneys for Defendants*