KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | **Adv. Pro. No. 08-01789 (CGM)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff<br><br>Plaintiff,<br><br>v.<br><br>ROYAL BANK OF CANADA, individually and as successor in interest to Royal Bank of Canada (Asia) Limited; GUERNROY LIMITED; RBC TRUST COMPANY (JERSEY) LIMITED; BANQUE SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A.; RBC DOMINION SECURITIES INC.; and RBC ALTERNATIVE ASSETS, L.P.,<br><br>Defendants. | **Adv. Pro. No. 12-01699 (CGM)** |

# REPLY DECLARATION OF ANTHONY L. PACCIONE IN FURTHER SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT

ANTHONY L. PACCIONE, under penalty of perjury, declares:

1. I am a member of the bar of the State of New York and of this Court and a member of Katten Muchin Rosenman LLP, counsel for defendants Royal Bank of Canada, individually and as successor in interest to Royal Bank of Canada (Asia) Limited, Guernroy Limited, RBC Trust Company (Jersey) Limited, Banque SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A., RBC Dominion Securities Inc., and RBC Alternative Assets, L.P. (collectively, "Defendants") in this adversary proceeding. I submit this Reply Declaration in further support of the Defendants' motion to dismiss the Amended Complaint[1] (No. 12-01699, ECF No. 145) filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff in this proceeding.

2. The purpose of this declaration is to make a correction to the Chart that was submitted under my prior Declaration as Exhibit H by submitting the Chart attached hereto as **Exhibit H-1.** Exhibit H-1 is a chart listing all of the alleged redemption payments from initial transferees to the RBC Defendants set forth in the Amended Complaint and highlighting those transfers that did not appear in the original Complaint, which is meant to replace the Defendants' Exhibit H that was filed with its original Motion to Dismiss the Amended Complaint (No. 12-01699, ECF No. 154-8). Original Exhibit H contained information compiled from Exhibits C, F, I and L of the Amended Complaint. However, Original Exhibit H did not reflect certain alleged

---

[1] Capitalized terms not defined in this Declaration have the meaning provided in the Memorandum of Law in Support of RBC Defendants' Motion to Dismiss the Amended Complaint (ECF 155).

subsequent transfers from Rye Prime Fund to Royal Bank of Canada. The attached Exhibit H-1 is a revised version of that Exhibit H, which now includes those alleged subsequent transfers.

3.  Based upon a review of the Amended Complaint and the Tremont Complaint, I prepared the chart below, which contains a side-by-side comparison of inconsistent statements in the two pleadings. This list is illustrative and is not meant to be an exhaustive list of all inconsistencies between the Amended Complaint and the Tremont Complaint.

| Tremont Complaint | Amended Complaint |
|---|---|
| The Rye Select Funds "**should have questioned** how Madoff's alleged trades could account for such a high percentage of the total volume traded on the exchanges of a particular stock." ¶ 166 | "Given that **Tremont knew** BLMIS had "well in excess of $20 billion" in AUM by May 2003, and that according to Johnston it "monitored all trade activity," **Tremont knew** there was insufficient volume for dozens, if not hundreds of the trades Madoff purported to complete." ¶ 100 |
| "[Tremont] had **very little understanding** as to how Madoff was able to capture the extraordinarily consistent returns from a traditionally low rate of return performance, pedestrian investment strategy." ¶ 152<br><br>"This **red flag** would have and **should have** put a reasonable money manager **on inquiry notice** that Madoff may be illegitimately backdating trades, front-running, or capitalizing on inside information." ¶ 180 | "Tremont's senior management **knew** that the options trades were a central part of the SSC Strategy and **were well aware** of how the options trading for the strategy worked." ¶ 123 |
| "[Tremont] was provided **only vague or inconsistent descriptions** by Madoff of the split-strike conversion strategy." ¶ 89<br><br>"This "knowledge" was merely **a recitation of the unverified information** provided to them by Madoff himself." ¶ 190 | "Tremont's senior management knew that the options trades were a central part of the SSC Strategy and were **well aware** of how the options trading for the strategy worked." ¶ 123 |
| "Tremont, as well as the other Defendants, essentially **looked the other way** when it came to Madoff" ¶ 154<br><br>"…there were over 600 highly questionable and impossible information on purported trades that | "**Tremont knew** from the monthly analytic summaries its senior management prepared based on these BLMIS documents that the positions and prices BLMIS reported differed from prices Bloomberg reported." ¶ 99 |

| | |
|---|---|
| **Tremont missed or failed to question** as part of their highly touted due diligence procedures." ¶ 183 | |
| Tremont's "main concern was feeding "a lot of money" to Madoff, **as opposed to actually understanding** what Madoff was really doing with that money." ¶ 195 | "**Tremont knew** that Madoff could not be trading options over-the-counter ("OTC") as he represented, in light of (i) the CUSIP numbers on BLMIS's trade confirmations, which indicated the options were traded on an exchange, and (ii) the lack of counterparty information that should be on all OTC trade confirmations." ¶ 124 |
| "Tremont…knew or **should have known** that such glaring irregularities concerning such improbable trades and implausible trading volumes were indicia of fraud." ¶ 169 | "Fees were a powerful reason for funds like Tremont to **close their eyes and hide what they knew about BLMIS's fraud**." ¶ 146 |
| "Had Tremont employed any [financial tools], **they would have determined** that Madoff's uncanny consistency with little risk was likely a fraud." ¶ 164 | "Rye Broad Market received each of the Rye Broad Market Initial Transfers **with actual knowledge of fraud at BLMIS**, or, at a minimum, while aware of suspicious facts that would have led Rye Broad Market to inquire further into the BLMIS fraud." ¶ 169 |
| "Analyzing the Rye Fund's statements **should have caused** sophisticated hedge fund managers and advisors like Tremont … **to question how** the Madoff customers' transactions could have exceeded the total volume listed as traded on a particular day." ¶ 165 | "Rye Prime Fund received each of the Rye Prime Fund Initial Transfers **with actual knowledge of fraud** at BLMIS, or, at a minimum, while aware of suspicious facts that would have led Rye Prime Fund to inquire further into the BLMIS fraud." ¶ 178 |
| "Tremont and their management were aware of **many of the troubling questions** surrounding Madoff well before Madoff's fraud were revealed. For example…and email from a foreign client of Tremont…set forth **a number of suspicious facts** concerning Madoff." ¶ 158 | "Rye Portfolio Limited received each of the Rye Portfolio Limited Initial Transfers **with actual knowledge of fraud at BLMIS**, or, at a minimum, while aware of suspicious facts that would have led Rye Portfolio Limited to inquire further into the BLMIS fraud." ¶ 187 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 17, 2022.

/s/ *Anthony Paccione*
Anthony L. Paccione