**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01565 (CGM) |
| Plaintiff, | |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK | |

(LUXEMBOURG) S.A.), as represented by its
Liquidator HANSPETER KRÄMER,
HANSPETER KRÄMER, in his capacities as
liquidator and representative of STANDARD
CHARTERED FINANCIAL SERVICES
(LUXEMBOURG) S.A., STANDARD
CHARTERED BANK INTERNATIONAL
(AMERICAS) LTD., f/k/a AMERICAN
EXPRESS BANK INTERNATIONAL, and
STANDARD CHARTERED HOLDINGS INC.
(as successor in interest to STANDARD
CHARTERED INTERNATIONAL (USA)
LTD., f/k/a AMERICAN EXPRESS BANK
LTD.),

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
STANDARD CHARTERED DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ....................................................................................................4

I.    THE OPPOSITION CONFIRMS THE LACK OF WELL-PLEADED
      FACTUAL ALLEGATIONS ESTABLISHING ANY STANDARD
      CHARTERED DEFENDANT WAS A TRANSFEREE UNDER
      SECTION 550(A) OF THE BANKRUPTCY CODE....................................4

      A.    The Trustee's Allegations Fail To Plausibly Establish Any
            Defendant Had Dominion or Control Over the Transferred
            Amounts .............................................................................4

      B.    To the Extent the Court Permits the Trustee's Claims To
            Proceed, the Court Should Direct the Parties To Address the
            Dominion and Control Issue Through a Summary Proceeding ..........11

II.   THE TRUSTEE'S CLAIMS FAIL FOR OTHER REASONS....................13

CONCLUSION ...............................................................................................19

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Anwar* v. *Fairfield Greenwich Ltd.*,
  826 F. Supp. 2d 578 (S.D.N.Y. 2011) ...................................................8

*Bear, Stearns Secs. Corp.* v. *Gredd (In re Manhattan Inv. Fund Ltd.)*,
  397 B.R. 1 (S.D.N.Y. 2007).....................................................................5

*Buchwald Cap. Advisors LLC* v. *JP Morgan Chase Bank, N.A.* (*In re
  M. Fabrikant & Sons, Inc.*),
  480 B.R. 480 (S.D.N.Y. 2012) ........................................................14, 15

*Christy* v. *Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble,
  Wagner, Heine, Underberg, Manley, Myerson and Casey)*,
  130 F.3d 52 (2d Cir. 1997) ...............................................................1, 9

*Enron Corp.* v. *J.P. Morgan Secs. Inc.* (*In re Enron Corp.*),
  361 B.R. 36 (Bankr. S.D.N.Y. 2006)....................................................10

*Fair Housing in Huntington Comm.* v. *Town of Huntington*,
  2010 WL 2730757 (E.D.N.Y. July 8, 2010)........................................15

*Isaiah* v. *JPMorgan Chase Bank*,
  960 F.3d 1296, 1304 (11th Cir. 2020) ...........................................9, 10

*Jalbert* v. *Gryaznova (In re Bicom NY, LLC)*,
  2022 WL 1419997 (2d Cir. May 5, 2022)..............................................5

*Mervyn's LLC* v. *Lubert-Adler Group IV, LLC (In re Mervyn's
  Holdings, LLC)*,
  426 B.R. 96 (Bankr. D. Del. 2010)........................................................5

*Metzeler* v. *Bouchard Transportation Co.* (*In re Metzeler*),
  66 B.R. 977 (Bankr. S.D.N.Y. 1986)....................................................14

*Nat'l Market Share, Inc.* v. *Sterling Nat'l Bank*,
  392 F.3d 520 (2d Cir. 2004) ..................................................................9

## TABLE OF AUTHORITIES
### (*continued*)

*Page(s)*

*The Official Comm. of Unsecured Creditors of 360Networks (USA)*
   *Inc.* v. *Pirelli Commc'ns Cables and Sys. USA LLC* (*In re*
   *360Networks (USA) Inc.*),
   367 B.R. 428 (Bankr. S.D.N.Y.)...........................................................................14

*Orix Fin. Servs., Inc.* v. *Thunder Ridge Energy, Inc.*,
   2006 WL 587483 (S.D.N.Y. Mar. 8, 2006).......................................................2, 9

*Pani* v. *Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ..................................................................................11

*Picard* v. *ABN Amro N.A. (In re BLMIS)*,
   2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ........................................16

*Picard* v. *ABN Ireland* (*In re BLMIS*),
   2022 WL 1304589 (S.D.N.Y. May 2, 2022) .......................................................16

*Picard* v. *Banque SYZ & Co., SA*,
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) .........................................17

*Picard* v. *Citibank, N.A. (In re BLMIS)*,
   12 F.4th 171 (2d Cir. 2021) ................................................................................17

*Picard* v. *Citibank, N.A.* (*In re BLMIS*),
   2022 WL 4493234 (Bankr. S.D.N.Y. 2022)..........................................................5

*Picard* v. *Fairfield Inv. Fund Ltd.*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)......................................8, 16

*Picard* v. *Multi-Strategy Fund Ltd.*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022)..................................................................17

*Picard* v. *Shapiro (In re BLMIS)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015).................................................................18

*Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.*,
   234 B.R. 293 (Bankr. S.D.N.Y. 1999)..............................................................4, 9

# TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

*Secs. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Secs. LLC*,
  2013 WL 1609154 (Apr. 15, 2013) ...................................................................18

*Vengalattore* v. *Cornell Univ.*,
  36 F.4th 87 (2d Cir. 2022) .................................................................................8

*Weisfelner* v. *Fund 1* (*In re Lyondell Chem. Co.*),
  503 B.R. 348 (Bankr. S.D.N.Y. 2014)..............................................................2, 9

*Whitlock* v. *Street*,
  2012 WL 3686434 (E.D. Va. Aug. 24, 2012) ...................................................11

## Statute

11 U.S.C. § 550(a) .............................................................................*passim*

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................11

Fed. R. Civ. P. 15(c).......................................................................................10, 14

## PRELIMINARY STATEMENT

The Trustee's Opposition to Defendants' Motion to Dismiss (the "Opposition") (ECF No. 156) confirms that the Amended Complaint does not plead any plausible claim against the Standard Chartered Defendants.[1]

*First*, the Trustee fails to identify any factual allegations in the Amended Complaint that (even if true) would establish each of the Standard Chartered Defendants were "immediate or mediate transferee[s]" of the transfers that the Trustee seeks to recover under Section 550(a) of the Bankruptcy Code. The Trustee's allegation that a single Standard Chartered Defendant, SCFS, was a shareholder in the Fairfield Funds and received transfers in a bank account does not establish that SCFS (let alone any other Defendant) had dominion and control over any money allegedly transferred. It is well-settled law that the mere receipt of money or other assets does not render a person or entity a "transferee." *See Christy* v. *Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson and Casey)*, 130 F.3d 52, 57 (2d Cir. 1997). The Trustee's other allegations fare no better. At most, they establish only a typical banking or brokerage relationship in which a bank recommended investments in the

---

[1] Capitalized terms as used herein have the same meanings as those set forth in the Memorandum of Law in Support of the Standard Chartered Defendants' Motion to Dismiss ("Opening Brief"). (ECF No. 151.)

Fairfield Funds to clients, shares were subscribed and redeemed by the bank for those clients and money was sent and received by a bank on behalf of clients for that purpose.

Moreover, the Trustee's attempt to avoid his own pleading by arguing that the question of whether a Defendant was a "mere conduit" raises factual questions or is an affirmative defense is unavailing. Section 550(a) authorizes recovery only from a "transferee," meaning that the Trustee has the initial burden of pleading facts that could plausibly establish each Defendant as such. *See Orix Fin. Servs., Inc.* v. *Thunder Ridge Energy, Inc.*, 2006 WL 587483, at *2 (S.D.N.Y. Mar. 8, 2006) (Holwell, J.) ("In this [D]istrict, a defense is not considered affirmative where it 'merely negates an element of the plaintiff's prima facie case.'"). Contrary to the Trustee's assertions (Opp. at 7–10), courts in this District (and outside the Second Circuit) have granted motions to dismiss claims brought under Section 550(a) where, as here, a trustee seeks to recover from mere conduits, as opposed to "transferees." *See, e.g., Weisfelner* v. *Fund 1* (*In re Lyondell Chem. Co.*), 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"). The Trustee has failed to do so here.

To the extent that the Court declines to dismiss the Amended Complaint at the pleading stage, Defendants respectfully request that the Court direct the parties

to resolve the threshold mere conduit issue in the first instance. In other bankruptcy proceedings in this District, courts have adopted summary procedures whereby bank defendants submit prima facie evidence demonstrating their conduit status as to each transfer, with a streamlined process for the trustee to seek additional information or challenge those designations. Utilizing a similar streamlined process here would substantially focus and potentially expedite the resolution of this case, as well as conserve the Court's and the parties' resources by addressing this threshold question before engaging in time-consuming and costly discovery on other issues.

Second, the Trustee's claims fail for other, independent reasons. The Trustee's newly asserted claims to recover transfers from Fairfield Sigma do not relate back to the original complaint filed 10 years ago, as the Trustee argues, and are therefore time-barred. Those claims are not simply additional alleged transfers from the same BLMIS feeder fund, which this Court has permitted the Trustee to include in other related cases. Rather, the Trustee has pled that Fairfield Sigma was a different fund that used different currency (Euros rather than U.S. Dollars) and allegedly made transfers at different times than the Fairfield Sentry fund. It is far too late for the Trustee to add claims related to other Madoff feeder funds beyond Fairfield Sentry.

Further, the Amended Complaint's allegation that Defendants conducted initial and ongoing due diligence of Fairfield Sentry and BLMIS over

-3-

several years and did not uncover Madoff's fraud demonstrates that any transfers received by the Standard Chartered Defendants were in good faith and for value and thus cannot be recovered under Section 550(b) of the Bankruptcy Code.  Finally, although this Court has disagreed in related cases, Defendants respectfully submit that the Trustee's claims are barred by Section 546(e) of the Bankruptcy Code and that the Trustee has not adequately alleged that the amounts transferred by the Fairfield Funds were all traceable to BLMIS.

## ARGUMENT

**I.    THE OPPOSITION CONFIRMS THE LACK OF WELL-PLEADED FACTUAL ALLEGATIONS ESTABLISHING ANY STANDARD CHARTERED DEFENDANT WAS A TRANSFEREE UNDER SECTION 550(A) OF THE BANKRUPTCY CODE.**

### A.    The Trustee's Allegations Fail To Plausibly Establish Any Defendant Had Dominion or Control Over the Transferred Amounts.

There is no dispute that under Section 550(a) of the Bankruptcy Code, the Trustee can only recover avoided transfers from "immediate or mediate transferee[s]," or that "[t]he minimum requirement of status as a 'transferee' is dominion over the money or other asset," meaning "the right to put the money to one's own purposes." *Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (quoting *Bonded Fin. Servs., Inc.* v. *Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).  Nor does the Trustee dispute that in the context of a bank or broker, to establish dominion and control there must be (i)

receipt of transferred funds; (ii) the legal right to control those transferred funds (*i.e.*, legal control); *and* (iii) the right to use those transferred funds for its own purpose (*i.e.*, actual control). *Bear, Stearns Secs. Corp.* v. *Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) (Buchwald, J.).

As set forth in the Standard Chartered Defendants' Opening Brief, the Amended Complaint falls well short of plausibly alleging that any Standard Chartered Defendant had dominion and control over the transferred funds in question. The Amended Complaint is devoid of any allegations establishing that each of the Standard Chartered Defendants received the transferred funds, held legal title to those funds (as opposed to mere physical possession), and otherwise had the right and opportunity to use those funds for their own purpose. *See In re Mervyn's Holdings, LLC*, 426 B.R. 96 at 103 (applying the dominion and control test and finding "the Committee fails to plead how Bank of America has legal title to the Notional Rent funds"); *compare Jalbert* v. *Gryaznova (In re Bicom NY, LLC)*, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (agreeing that defendant was a mere conduit where it was "undisputed that she never had 'a realistic opportunity to' use the funds") *with Picard* v. *Citibank, N.A.* (*In re BLMIS*), 2022 WL 4493234, at *8 (Bankr. S.D.N.Y. 2022) (Morris, J.) ("Citibank obtained complete dominion and control over BLMIS' customer property and was free to use it as it saw fit.").

-5-

In response, the Trustee argues that the Amended Complaint sufficiently alleges "Defendants were shareholders" of the Fairfield Funds "and the recipients of the transfers," and that this is sufficient to plead a claim. (Opp. at 7.) This is wrong as a matter of law and contrary to the Trustee's own pleading.

*First*, the Trustee ignores the allegations in the Amended Complaint, which establish, at most, a typical banking or brokerage relationship in which a bank recommended the Fairfield Funds to clients, shares were subscribed and redeemed by the bank for those clients and money was sent and received by a bank on behalf of clients for that purpose. In particular, the Amended Complaint alleges:

- SCI (referred to as "AEB") and/or SCBI "marketed" and "promoted" the Fairfield Funds to private banking clients initially in 2003 through the Concentrated Elite Fund, a non-party "fund of funds that allocated 25% of its assets to purchase Fairfield Sentry shares" and was sold to clients (Am. Compl. ¶¶ 61, 76–79, 90, 94), and "[l]ater AEB expanded the purchase of Fairfield Sentry *for clients*" directly rather than through a fund of funds (Am. Compl. ¶ 85) (emphases added). [2]  The Amended Complaint further acknowledges that SCI invested "*clients'* funds" in the Fairfield Funds (Am. Compl. ¶¶ 74, 85), and not the SCB Defendants' own funds in its control.

---

[2]      The Opposition conflates two entities, SCI and Concentrated Elite Fund, to argue SCI "purchased Fairfield Sentry shares for use in Defendants' Concentrated Elite Fund." (Opp. at 11.)  However, the Amended Complaint makes clear that Concentrated Elite Fund was a separate "fund of funds," which has not been named as a defendant to this action (Am. Compl. ¶ 85), and SCI did not purchase shares in the Fairfield Funds (*see* Am. Compl. ¶ 86).  In any event, the Trustee nowhere alleges that any Fairfield Sentry shares purposed by Concentrated Elite Fund were redeemed or led to any transfer sought to be recovered here.

- In marketing and promoting the Fairfield Funds, SCI and/or SCBI "negotiated and entered into distribution agreements with Fairfield Greenwich Limited," (Am. Compl. ¶ 67), pursuant to which SCI or its affiliates would distribute shares in the Fairfield Funds (among others) and "provide nominee services" for the ultimate *clients* who chose to invest in the funds, (Ex. E to Declaration of Andrew J. Finn ("Finn Decl.") at 1, ECF No. 152-5.)[3]

- The Standard Chartered Defendants effectuated transactions in the Fairfield Funds for clients using affiliated entities. In particular, SCFS (referred to as "AEB Lux") would "sign the subscription agreements and hold the shares in" the Fairfield Funds and send and receive payments from the Fairfield Funds "on behalf of" SCI and SCBI who in turn were selling "the BLMIS Feeder Funds shares to ***AEB clients***" and thus transacting for clients.[4] (Am. Compl. ¶¶ 74, 85, 86, 94 (emphasis added); *see also* Am. Compl. at 22 ("Defendants Acted Collectively to Invest Their ***Clients'*** Money in the BLMIS Feeder Funds." (emphasis added).)

Seeking to avoid the thrust of his own pleading, the Trustee argues that the Court should ignore the distribution agreements referred to in the Amended Complaint, arguing they are "outside of the four corners of the Amended Complaint" and that the question of dominion and control is a factual issue that cannot be resolved at this stage. (Opp. at 7–10, 12). But the Amended Complaint refers to and

---

[3]    (*See also* Ex. F to Finn Decl. at 2, ECF No. 152-6 (setting forth the terms by which "subscriptions by clients [would be] introduced by [SCI] directly or indirectly" to the Fairfield Funds).)

[4]    Contrary to the Trustee's assertions (Opp at 11), the Amended Complaint makes clear that as U.S. entities SCI and SCBI could not hold shares in the Fairfield Funds, because "investments in those funds were foreclosed to U.S. taxpayers." (Am. Compl. ¶ 86.)

relies upon those agreements expressly (Am. Compl. ¶¶ 61–62, 67–68), and this Court has recognized that it "must consider" on a motion to dismiss "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Picard* v. *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.) (quoting *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *Vengalattore* v. *Cornell Univ.*, 36 F.4th 87, 93 (2d Cir. 2022) (same).[5]

      *Second*, the fact that one of the Standard Chartered Defendants (SCFS) is alleged to be a shareholder and received money from the Fairfield Funds (Am. Compl. ¶ 86) does not establish dominion and control over the alleged transfers from the Fairfield Funds for redemptions of those shares.    The Amended Complaint (including the distribution agreements relied upon by the Trustee to bring his claims) suggest one or more of the Standard Chartered Defendants acted as a nominee shareholder for customers.    (Am. Compl. ¶¶ 85, 86, 90.)    Moreover, the Second Circuit has long established that the "mere receipt" of money, even if traceable to an

---

[5]      Moreover, the Trustee does not dispute that the Court may take judicial notice of the District Court's findings in *Anwar* v. *Fairfield Greenwich Ltd*., 826 F. Supp. 2d 578, 590 (S.D.N.Y. 2011) (Marrero, J.) that SCBI "owed only a limited set of duties to [the plaintiff clients] because they held nondiscretionary accounts at SCBI—meaning that SCBI needed authorization prior to making investments on their behalf."    The fact that SCBI did not control its clients' investments in the Fairfield Funds further undermines any plausible inference that SCBI (or the other Standard Chartered Defendants) were transferees under Section 550(a).

initial avoidable transfer, is insufficient to establish liability under Section 550(a).
*In re Finley*, 130 F.3d at 57.

      *Third*, Trustee's argument that the so-called "mere conduit" defense is an affirmative defense that should be raised at a later stage is wrong and irrelevant here. (*See* Opp. at 7–10.) "In this [D]istrict, a defense is not considered affirmative where it 'merely negates an element of the plaintiff's prima facie case.'" *Orix Fin. Servs., Inc.*, 2006 WL 587483, at *2 (quoting *Hadar* v. *Concordia Yacht Builders*, 886 F. Supp. 1082, 1089 (S.D.N.Y. 1995) (Carter, J.)); *see also Nat'l Market Share, Inc.* v. *Sterling Nat'l Bank*, 392 F.3d 520, 527 (2d Cir. 2004). The Trustee must establish each defendant is a "transferee," and the Trustee simply ignores that courts in this Circuit have treated the transferee status of a defendant as an indispensable element of a Section 550(a) claim. *See, e.g.*, *In re Lyondell Chem. Co.*, 503 B.R. at 381–83 (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"); *Stratton Oakmont, Inc.*, 234 B.R. at 312, 314–15 (finding "the Trustee has not alleged any facts which would permit a recovery pursuant to § 550(a)" because "[a]s the [c]omplaint stands, [defendant] was a mere conduit").

      The Trustee's reliance on dicta in one bankruptcy case in this District, or the decision by the Eleventh Circuit, are unavailing. (*See* Opp. at 7 (citing *Isaiah* v. *JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020).) In the sole

in-Circuit decision cited by the Trustee, *Enron Corp.* v. *J.P. Morgan Secs. Inc.* (*In re Enron Corp.*), 361 B.R. 36 (Bankr. S.D.N.Y. 2006) (Gonzalez, J.), the Court mentions only in dicta that "[i]t is likely [the] burden [of the defendant asserting the conduit defense]—not [the plaintiff's]—to demonstrate the applicability of [a] mere conduit defense." *Id.* at 49 (alterations in original) (quoting *Alberts* v. *Arthur J. Gallagher & Co.* (*In re Greater Se. Cmty. Hosp. Corp. I*), 341 B.R. 91, 99 (Bankr. D.D.C. 2006)). However, the Court did not make this statement in relation to the pleading standard on a Section 550(a) claim, but rather in the context of assessing whether a plaintiff "meets the criteria for a mistake under Rule 15(c) if it had legally and/or factually misidentified" a defendant to the extent that defendant were not a transferee.[6] *Id.* at 48–49.

In any event, the Trustee acknowledges that application of the mere conduit defense at the pleading stage is proper when it is "apparent on the face of the complaint." (Opp. at 9.) Indeed, "[a]n affirmative defense may be raised by a

---

[6]    Similarly, the question of whether a trustee had, as a threshold matter, alleged that a defendant was a transferee under Section 550(a) was never presented to the Eleventh Circuit in *Isaiah*, which involved a claim brought by a court-appointed receiver under the Florida Uniform Fraudulent Transfer Act ("FUFTA"). In affirming dismissal of the receiver's claim on different grounds, the Eleventh Circuit observed that "[n]either th[e Eleventh] Circuit nor the Florida courts have decided whether th[e mere conduit] defense should [] apply" under FUFTA and ruled that it need not reach the question because "the mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection" "unless the defense is apparent on the face of the complaint." *Isaiah*, 960 F.3d at 1304–5.

-10-

pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint. *Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Whitlock* v. *Street*, 2012 WL 3686434, at *4 (E.D. Va. Aug. 24, 2012) ("[C]ourts recognize that a plaintiff 'can plead himself out of court by pleading facts that show that he has no legal claim.'").  As set forth above, the Amended Complaint's own allegations establish a lack of any relevant dominion and control over transfers from the Fairfield Funds.

### B.    To the Extent the Court Permits the Trustee's Claims To Proceed, the Court Should Direct the Parties To Address the Dominion and Control Issue Through a Summary Proceeding.

In his Opposition, the Trustee argues "[h]ow Defendants accounted for or transferred the Fairfield Funds subsequent transfers throughout the AEB [now SCI] enterprise is a factual issue to be explored through discovery."  (Opp. at 12.) To the extent that the Court declines to dismiss the Trustee's claims at the pleading stage, the Court should direct the parties to resolve the threshold transferee and mere conduit issue in the first instance.  As the Court is undoubtedly aware, this is not the first bankruptcy case involving avoidance and recovery claims against banks and financial institutions that commonly act as financial intermediaries and are often subject to the mere conduit defense.  In other proceedings in this District, courts have adopted summary procedures whereby bank defendants submit prima facie evidence

demonstrating their conduit status as to each transfer, with a streamlined process for the trustee to seek additional information or challenge those designations.

For example, in *Kirschner* v. *Fitzsimons* (*In re Tribune Co. Fraudulent Conveyance Litig.*), the District Court endorsed a protocol whereby "[a] defendant may establish that it was a Conduit with respect to a portion of the Shareholder transfers" and may "submit to . . . [plaintiff] a declaration" providing, among other information, the defendant's role with respect to each transfer and the persons and entities on whose behalf each transfer was received.[7] (*See* Conduit Protocol at 2–3, No. 12-cv-02652 (S.D.N.Y. Apr. 24, 2014) (Sullivan, J.), ECF No. 4239.)  The plaintiff was then allowed to "submit reasonable follow-up requests" for additional information that plaintiff "believe[d] in good faith [was] needed to make a determination of Conduit status." (*Id.* at 4.)  In the event there was a disagreement over a defendant's mere conduit status, the parties were ordered to "meet and confer in an attempt to resolve the disagreement," and if there was no resolution, the "[defendant] may then make a motion for summary judgment." (*Id.* at 4, 6.)

---

[7]     If the disclosure of such information was prohibited by "(i) foreign data privacy laws, (ii) foreign bank secrecy laws, or (iii) other similar foreign laws," the protocol allowed the defendant to "(a) cite the applicable law(s) and state the reason for its inability to provide such information; and (b) use an individualized code instead of disclosing such information (i.e., "Customer 1," "Customer 2," etc.)." (*See* Conduit Protocol at 3, No. 12-cv-02652, ECF No. 4239.)  Similar protections would be required here.

-12-

Similarly, in *Weisfelner* v. *CIBC World Markets* (*In re Lyondell Chem. Co.*), Judge Gerber endorsed a protocol whereby the defendant would "submit to [p]laintiff a sworn declaration . . . setting forth the facts and circumstances pursuant to which it claims to be a full or partial Conduit," and then within 30 days, "[p]laintiff may make a follow-up request to the [d]efendant for additional information that [p]laintiff believes in good faith is needed to make a determination of Conduit or Non-Transferee status." (Order at 3, 8, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014) (Gerber, J.), ECF No. 2124.) If the plaintiff disagreed that the defendant acted as a conduit, the parties would "meet and confer within 14 days of the [d]efendant's receipt of such notification to resolve the dispute," and if the parties could not resolve the dispute, then the "[d]efendant may request a conference with the Bankruptcy Court." (*Id.* at 9.)

The Standard Chartered Defendants respectfully submit that a similar streamlined process would conserve the parties' and the Court's resources by focusing this case on recoverable transfers (if any), rather than engage in full discovery only to determine that the transferred money at issue here was not owned or controlled by Defendants.

## II.    THE TRUSTEE'S CLAIMS FAIL FOR OTHER REASONS.

The Trustee's opposition to the Standard Chartered Defendants' other arguments are likewise unpersuasive and each fails to salvage his claim.

-13-

*First*, the Trustee is incorrect that his newly added claims to recover alleged transfers from Fairfield Sigma are timely because they "relate back to the Sentry transfers sought in the original Complaint" filed in 2012. (Opp. at 17.) In the context of avoidance actions, "the law is clear each preferential and fraudulent transaction is treated separately and distinctly," because the "[p]roof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct." *Buchwald Cap. Advisors LLC* v. *JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 480 B.R. 480, 492 (S.D.N.Y. 2012) (Sullivan, J.).[8] Furthermore, the "mere allegation" that the previously identified transfers and the newly added transfers are "all . . . fraudulent transfers does not make them part of the same conduct." *Metzeler*, 66 B.R. at 983, 984 ("[T]here is no indication that, merely because different transactions bear the same label, relation back is to be ordered on the ground that they arise from similar conduct").

---

[8]    *See also Metzeler* v. *Bouchard Transportation Co.* (*In re Metzeler*), 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986) (Buschman, III, J.) (noting that "[c]ourts have consistently treated preferential transactions as separate and distinct under Rule 15(c)" and that "[t]he same should be true of separate fraudulent transfers"); *The Official Comm. of Unsecured Creditors of 360Networks (USA) Inc.* v. *Pirelli Commc'ns Cables and Sys. USA LLC* (*In re 360Networks (USA) Inc.*), 367 B.R. 428, 434 (Bankr. S.D.N.Y.) (Glenn, J.) ("[A] preference action based on one transfer does not put defendant on notice of claims with respect to any other unidentified transfers.").

-14-

Here, the Amended Complaint makes clear that Fairfield Sentry and Fairfield Sigma were two separate feeder funds that transacted in different currencies (*see* Am. Compl. ¶ 2 (noting that "Fairfield Sentry was a U.S. Dollar-based fund" whereas "Fairfield Sigma was a Euro-denominated currency fund")), and the Trustee treats transfers from each Fund as separate and distinct from one another (*see* Exs. C & E to Am. Compl.). Moreover, the newly alleged Sigma transfers occurred on different dates than the originally pleaded Sentry transfers. (*Compare* Ex. E to Am. Compl. *with* Ex. C to Compl.). As such, the circumstances that led to those transfers, including any evidence relating to (at a minimum) good faith, value and traceability, may also differ from the alleged transfers from Fairfield Sentry set forth in the original complaint. (*See* Am. Compl. at 25 (describing Defendants' "*ongoing* analysis of BLMIS and the BLMIS Feeder Funds," including the Fairfield Funds) (emphasis added).)

Because the "core of operative facts" concerning the newly alleged transfers could be significantly different and require separate factual inquiries, they cannot relate back to the original Complaint, and the Trustee is therefore time-barred from asserting these new claims. *See In re M. Fabrikant & Sons, Inc.*, 480 B.R. at 492; *Fair Housing in Huntington Comm.* v. *Town of Huntington*, 2010 WL 2730757, at *5–6 (E.D.N.Y. July, 8 2010) (rejecting argument that claims concerning two housing developments "relate back to the original pleading because the two

-15-

developments are 'intimately intertwined'" where the complaint "contains no reference to Sanctuary and is instead narrowly focused on one particular housing development, viz. the Greens").

*Second*, relying on *Picard* v. *ABN Ireland* (*In re BLMIS*), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (McMahon, J.), the Trustee argues that the good faith and for value defense is fact-driven and cannot be resolved in a motion to dismiss. However, unlike other related cases, the Trustee's own allegations establish the defense here. (*See* Am. Compl. ¶¶ 61, 74, 76–79, 85, 90, 94.) The Trustee, quoting from *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *9, asserts that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial." (Opp. at 16.) But the facts and arguments in *Fairfield* differed significantly from those here. The principal focus of the "for value" defense argued in *Fairfield* was whether the defendants' services constituted "value" for purposes of Section 550(a). Here, in contrast, the Amended Complaint contends that the alleged transfers were payments to Fairfield Funds' shareholders who subscribed (*i.e.*, gave value) in those funds pursuant to subscription agreements.[9] (Am. Compl. ¶¶ 3, 112, 116; *see also* Opp. at 11 (arguing "that

---

[9]    *See Picard* v. *ABN Amro N.A. (In re BLMIS)*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) (Bernstein, J.) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

Defendants were shareholders in the Fairfield Funds and received subsequent transfers of BLMIS customer property as redemptions of their equity interests."))

Similarly with respect to good faith, the Trustee argues that "there are myriad unknown facts critical to opposing a good faith defense" (Opp. at 14), but as the Second Circuit made clear, the key question is whether a defendant upon "diligent inquiry . . . would have discovered the fraudulent purpose of the transfer." *Picard* v. *Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 192 (2d Cir. 2021) (citations omitted). Here, the Trustee alleges that the Standard Chartered Defendants conducted additional and ongoing due diligence into the Fairfield Funds and BLMIS, including meeting with Madoff in April 2008. (Am. Compl. ¶¶ 95–101.) However, the Trustee does not plausibly allege that those efforts uncovered BLMIS's long-running Ponzi scheme or that some further diligent inquiry would have revealed Madoff's fraud.

*Third*, the Trustee's argument that Section 546(e)'s safe harbor does not apply because the Fairfield Funds allegedly were aware of BLMIS's fraud is wrong. (Opp. at 21–25.) The Standard Chartered Defendants are mindful of the Court's recent rulings endorsing the Trustee's interpretation of Section 546(e),[10] but

---

[10]    *See Picard* v. *Multi-Strategy Fund Ltd.*, 641 B.R. 78, 95 (Bankr. S.D.N.Y. 2022) (Morris, J.); *Picard* v. *Banque SYZ & Co., SA*, 2022 WL 2135019, at *9–10 (Bankr. S.D.N.Y. June 14, 2022) (Morris, J.).

respectfully submit that those rulings were inconsistent with Judge Rakoff's rulings

in *Secs. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154

(S.D.N.Y. Apr. 15, 2013) (Rakoff, J.). There, the District Court stated that "even if

the initial (or mediate) transferee fails to raise a Section 546(e) defense against the

Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless

entitled to raise a Section 546(e) defense against recovery of those funds" unless the

"*subsequent transferee*" (*i.e.*, the defendant) had "actual knowledge of Madoff

Securities' fraud." *Id.* at *7 (emphasis added).

      *Finally*, the Trustee does not deny that he has failed to tie any of the

thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged

subsequent transfers to SCFS. He argues instead that he is not required to provide a

dollar-for-dollar accounting of the exact funds at issue at the pleading stage. (Opp.

25–26.) But there is no dispute that the Trustee must "allege facts that support the

inference that the funds at issue originated with the BLMIS" and "tie any initial

transfer to any subsequent transfer or Subsequent Transferee," in order to notify

defendants of the Trustee's claims so they can prepare their defenses. *Picard* v.

*Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Bernstein, J.).

Where, as here, the Trustee has alleged that SCFS had "holdings over $500 million"

in Fairfield Sentry (*i.e.*, at least $500 million in subscriptions) but only $274,029,164

in redemptions from that fund made over a multi-year period, (Am. Compl. ¶¶ 1,

-18-

100), the Trustee should be required to allege which portion of those redemption payments came from BLMIS as opposed to other sources (including other Fairfield Sentry investors or investments).

## CONCLUSION

For the reasons set forth above and in the Standard Chartered Defendants' Opening Brief (ECF No. 151), the Amended Complaint should be dismissed with prejudice.

Dated:  October 17, 2022
      New York, New York

Respectfully Submitted,

/s/  *Andrew J. Finn*
Andrew J. Finn
Mark A. Makar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  finna@sullcrom.com
Email:  makarm@sullcrom.com

Diane L. McGimsey (*pro hac vice*)
1888 Century Park East
Los Angeles, California  90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800
Email:  mcgimseyd@sullcrom.com

*Attorneys for Standard Chartered Defendants*

-19-