**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-01670 (CGM) |
| CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK d/b/a CRÉDIT AGRICOLE PRIVATE BANKING MIAMI, f/k/a CALYON S.A. d/b/a CRÉDIT AGRICOLE MIAMI PRIVATE BANK SUCCESSOR IN INTEREST TO CRÉDIT LYONNAIS S.A., | |
| Defendant. | |

**CRÉDIT AGRICOLE MIAMI'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

ARGUMENT ............................................................................................... 1

I.   THE TRUSTEE HAS FAILED TO ESTABLISH
     PERSONAL JURISDICTION.................................................................. 1

     A.   The Trustee Has Not Shown That Crédit Agricole
          Miami Has The Contacts Required To Establish Specific
          Personal Jurisdiction ................................................................... 1

          1.   The Trustee Does Not Allege That Crédit Agricole
               Miami Transacted Business In New York ...................... 2

          2.   Use Of Correspondent Accounts Is Insufficient
               To Establish Specific Jurisdiction................................. 4

     B.   The Trustee Makes No Argument For General
          Personal Jurisdiction ................................................................... 5

     C.   Jurisdictional Discovery Is Unwarranted.................................... 5

II.  THE SAFE HARBOR OF 11 U.S.C. § 546(e) BARS THE
     TRUSTEE'S CLAIMS ......................................................................... 7

     A.   The Trustee Incorrectly Focuses On Fairfield Sentry's
          Knowledge, Rather Than Crédit Agricole Miami's, As
          Instructed By *Cohmad* ................................................................ 7

     B.   Crédit Agricole Miami Is Independently Subject To
          Section 546(e)'s Safe  Harbor Protection .................................... 11

III. THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THE
     AVOIDABILITY OF THE INITIAL TRANSFERS ............................. 12

IV.  THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THAT
     CRÉDIT AGRICOLE MIAMI RECEIVED CUSTOMER
     PROPERTY PURSUANT TO 11 U.S.C. § 550(a) ............................... 15

CONCLUSION.......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 546(e) .......................................................... 11

Fed. R. Civ. P. 8(a) ........................................................ 12, 13

Fed. R. Civ. P. 10(c) ...................................................... 12, 13

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................... 17

*Constellation Energy Commodities Grp. v. Transfield ER Cape Ltd.*,
801 F. Supp. 2d 211 (S.D.N.Y. 2011) ....................................... 14

*Davis v. Bifani*,
No. 07–cv–00122–MEH–BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ......... 13

*Ge Dandong v. Pinnacle Performance Ltd.*,
966 F. Supp. 2d 374 (S.D.N.Y. 2013) ....................................... 5

*Goodman v. Port Auth. of N.Y. & N.J.*,
850 F. Supp. 2d 363 (S.D.N.Y. 2012) ....................................... 3

*Hill v. HSBC Bank PLC*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016) ....................................... 4

*In re Bernard L. Madoff Inv. Sec. LLC*
*(Picard v. Ida Fishman Revocable Tr.)*,
773 F.3d 411 (2d Cir. 2014) ............................................... 10

*In re Fairfield Sentry Ltd.*
*(Fairfield Sentry Ltd. (In Liquidation) v. Amsterdam)*,
Case No. 10-13164 (SMB), Adv. Proc. No. 10-03496 (SMB),
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .......................... 12

**Page(s)**

*Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Sec. Servs. (Luxembourg) S.A.,*
No. 21-cv-10316 (LAP), No. 21-cv-10334 (LAP),
2022 WL 3910679, (S.D.N.Y. Aug. 31, 2022) ................................................. 6

*In re Lyondell Chem. Co. (Weisfelner v. Fund 1),*
503 B.R. 348 (Bankr. S.D.N.Y. 2014) ................................................. 18-19

*In re Madoff (Picard v. Shapiro),*
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................. 16, 17

*In re Mervyn's Holdings LLC*
*(Mervyn's LLC v. Lubert-Adler Grp. IV, LLC),*
426 B.R. 96 (Bankr. D. Del. 2010) ................................................. 18-19

*In re Tribune Co. Fraudulent Conv. Litig.,*
946 F.3d 66 (2d Cir. 2019) ................................................. 10

*Levitch v. Columbia Broad. Sys., Inc.,*
94 F.R.D. 292 (S.D.N.Y. 1982), *aff'd,* 697 F.2d 495 (2d Cir. 1983) ................................................. 13, 14

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.,*
No. 08-CV-5023 (CBA)(RLM),
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ................................................. 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
*(In re Bernard L. Madoff) (Picard v. Fairfield Inv. Fund Ltd),*
No. 08-01789 (CGM), Ad. Pro. No. 09-01239 (CGM),
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................. 11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
*(In re Bernard L. Madoff) (Picard v. Multi-Strategy Fund Ltd.),*
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................. 2

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
*(In re Madoff Sec.),*
501 B.R. 26 (S.D.N.Y. 2013) ................................................. 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff*
*Inv. Sec. LLC (In re Madoff Sec.),*
No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................................. 8, 9, 12

**Page(s)**

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999) .................................................................. 18-19

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ................................................................................ 4

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) ............................................................... 18-19

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................. 4

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................ 14

*United States v. U.S. Telecom Long Distance, Inc.*,
No. 2:17-cv-02917-JAD-NJK, 2018 WL 4566673 (D. Nev. Sept. 24, 2018) .................... 13

Defendant Crédit Agricole Corporate and Investment Bank d/b/a Crédit Agricole

Private Banking Miami, f/k/a Calyon S.A. d/b/a Crédit Agricole Miami Private Bank as

successor-in-interest to Crédit Lyonnais S.A. ("Crédit Agricole Miami" or "Defendant"), by

its undersigned counsel, respectfully submits this reply memorandum of law in further

support of its Motion to Dismiss (the "Motion" or "Mot.") the Complaint, as amended (the

"Complaint" or "Compl.")[1] of plaintiff Irving Picard, Trustee (the "Trustee" or "Plaintiff")

for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and in

response to the Trustee's Memorandum of Law in Opposition to Defendant Crédit Agricole

Miami's Motion to Dismiss (the "Opposition" or "Opp."), pursuant to Federal Rule of Civil

Procedure 12(b)(2) and 12(b)(6), made applicable here by Rule 7012(b) of the Federal Rules

of Bankruptcy Procedure.[2]

## **ARGUMENT**

## I.    **THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION**

### A.    The Trustee Has Not Shown That Crédit Agricole Miami Has The Contacts Required To Establish Specific Personal Jurisdiction

In the Motion, Crédit Agricole Miami argues that the Complaint should be dismissed

because the Trustee does not allege that it engaged in any transactions with BLMIS that would

subject Crédit Agricole Miami to personal jurisdiction in New York.  Mot. 30.  In response, the

Trustee instead seeks to establish personal jurisdiction through Crédit Agricole Miami's limited

contacts with third-party British Virgin Islands ("BVI") entity Fairfield Sentry via yet another

---

[1] The Complaint in *Picard v. Crédit Agricole Corporate and Investment Bank, et al.*, Adv. Pro. 12-01670 (Bankr. S.D.N.Y.), ECF No. 1 (Vicens Decl. Ex. 1), was filed May 25, 2012.  Unless otherwise specified, all "ECF No. __" citations refer to Adv. Pro. No. 12-01670.  Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or its supporting memorandum of law.

[2] Crédit Agricole Miami's Motion to Dismiss was filed on July 18, 2022.  ECF No. 64.  The Trustee's reply was filed on September 30, 2022.  ECF No. 69.

third party, Brown Brothers Harriman ("BBH"), arguing that these contacts amounted to

purposeful engagement with BLMIS.  Opp. 5.  The Trustee relies on four purported contacts

between Crédit Agricole Miami and New York: (1) agreements between BBH and Fairfield

Sentry that neither Crédit Agricole Miami nor BLMIS directly executed; (2) retention of BBH;

(3) irrelevant Miami-based correspondence about Crédit Agricole Miami or between personnel

of Crédit Agricole Miami and third parties; and (4) the incidental use of U.S. correspondent

banks to facilitate U.S. dollar-denominated payments related to foreign securities transactions.

*Id.* at 6-13.  Alone and together, the contacts that the Trustee has alleged, and the acts out of

which the claims against Crédit Agricole Miami allegedly arise, are insufficient to establish a

*prima facie* case of personal jurisdiction.  The Trustee has not met its burden, and the arguments

in its Opposition fail to demonstrate otherwise.

     1.   *The Trustee Does Not Allege That Crédit Agricole Miami Transacted Business In New York*

     The Trustee does not allege any in-forum contacts between Crédit Agricole Miami and

Fairfield Sentry, and in his Opposition he instead points to Fairfield Sentry's contacts with New

York, imputing those contacts to Crédit Agricole Miami, and to BBH's contacts with New York.

*Id.*; *cf. Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*

*(Picard v. Multi-Strategy Fund Ltd.)*, 641 B.R. 78, 86 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*")

("Defendant, through its president, director and authorized signatory, asked about additional

capacity for Fairfield Sentry on at least seven occasions.").  In doing so, the Trustee concedes it

has no direct basis on which to assert personal jurisdiction, but nevertheless asks this Court to

accept that Crédit Agricole Miami, through BBH, purposefully availed itself of the foreign laws

*of the transactional partners* of its transactional partners, even though Crédit Agricole Miami

itself had no contacts with those partners.  This level of contact is simply too attenuated to

support a finding of personal jurisdiction.

The Trustee argues in the Opposition that Crédit Agricole Miami is "[t]rying to hide behind BBH" to defeat personal jurisdiction. Opp. 7. This is not so. The Motion relies on the fact that neither Crédit Agricole Miami nor BBH is alleged to have initiated contacts with New York sufficient to establish specific personal jurisdiction. And although the Trustee repeatedly emphasizes that BBH itself is "New York-based," *id.* at 7, 11-13, that is not the relevant inquiry here. The present dispute does not arise out of the terms of the relationship between Crédit Agricole Miami and BBH, but out of acts that BBH undertook to invest in Fairfield Sentry, none of which occurred in New York. Recognizing this, the Trustee has not gone so far as to claim that Crédit Agricole Miami's contact with BBH is in and of itself a proper minimum forum contact. In fact, as previously argued in the Motion, the Trustee has not even pled the facts of BBH's home jurisdiction. Mot. 30. None of the new allegations or arguments raised in the Opposition cures this basic deficiency. *See Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380-81 (S.D.N.Y. 2012) (holding that "memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint") (citations omitted). Nor has the Trustee pointed to any acts that establish specific personal jurisdiction. Instead he relies on allegations concerning the relationship between Crédit Agricole Miami and BBH, and that is plainly insufficient.

In addition to his insufficient allegations regarding BBH, the Trustee alleges that Crédit Agricole Miami communicated with the Fairfield Funds, including with employees based in FGG's New York headquarters, through Crédit Agricole Miami's Miami, Florida office, describing the details of these interactions in his Opposition. Opp. 9-11. Not only does the Trustee fail to cite any legal authority supporting the suggestion that Florida operations serve to

establish New York jurisdiction, but this limited set of exchanges in any event is plainly

insufficient to establish that Crédit Agricole Miami intended to transact business in New York.

*See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (finding "a handful of

communications and transfers of funds . . . . are insufficient to allow the exercise of specific

personal jurisdiction over the [Foreign] Defendants").  That Crédit Agricole Miami's individual

Miami-based employees spoke on the phone and over email on a handful of occasions with the

Fairfield Funds' individual New York-based employees does not constitute meaningful contact

by Crédit Agricole Miami for purpose of the claims at issue.  The fact that Crédit Agricole

Miami engaged in these communications from an entirely different U.S. state fails to create the

necessary ties to New York.

> ## 2. Use Of Correspondent Accounts Is Insufficient To Establish Specific Jurisdiction

BBH's use of U.S. correspondent bank accounts to wire subscription payments to and

receive redemptions from Fairfield Sentry via Six Sis AG cannot establish jurisdiction over

Crédit Agricole Miami.  In the first instance, the mere passing of funds through a New York

correspondent account on the way to a foreign transferee account cannot subject a foreign bank

to personal jurisdiction.  *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016);

*see also Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726-27 (S.D.N.Y. 2010) (citing cases).

To skirt this issue, the Trustee claims in its Opposition that Crédit Agricole Miami purposefully

directed BBH's use of these correspondent bank accounts within the "New York Banking

System."  Opp. 11-13.  The Trustee cites to inapposite bank terrorism and credit default swap

cases, where the illicit activity (i.e., the substance of the claims) was the specific use of the

correspondent bank accounts by foreign institutions for the purpose of holding or laundering

their customers' illegally obtained funds.  *Id.* 12 (citing cases).  In those cases, the correspondent

bank accounts were not incidental to the alleged wrongful conduct; they formed the basis for the

claims and the alleged illegal activity. *Ge Dandong v. Pinnacle Performance Ltd*., 966 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013) (finding specific jurisdiction where the illicit funds were deposited and kept in the U.S. correspondent accounts for the purpose of facilitating the purchase of fraudulent investments) (citation omitted). Here, the wiring of money through New York was entirely incidental, and was several steps removed from Crédit Agricole Miami's direct actions. Its use of the correspondent accounts was not premeditated in any way and was certainly not purposefully done to evade other jurisdictions.

B.  The Trustee Makes No Argument For General Personal Jurisdiction

The Trustee does not dispute that the existence of Crédit Agricole Miami's office in New York is an insufficient basis for general personal jurisdiction under *Daimler*. He rather presents this fact for consideration as part of a due process analysis. Opp. 15-16. Having failed to allege sufficient forum contacts giving rise to his claims in order to establish specific personal jurisdiction, and having failed to present any case for general personal jurisdiction, the Trustee has failed to establish that Crédit Agricole Miami may be haled into court in New York. The Trustee's claims should therefore be dismissed

C.  Jurisdictional Discovery Is Unwarranted

Recognizing he cannot rely on personal jurisdiction, the Trustee in the alternative requests discovery on Crédit Agricole Miami's contacts with New York. However, Crédit Agricole Miami respectfully submits that this would be a fruitless and unduly burdensome exercise without a basis proportionate to the ensuing time and expense, as required by Rule 26(b) of the Federal Rules of Civil Procedure. Such discovery would implicate a host of bank secrecy and data privacy regulations applicable to Crédit Agricole Miami, rendering the process inevitably complex and costly. With the factual basis of the claims at issue stretching back in time nearly twenty years, the parties also would be likely to encounter substantial practical and

logistical obstacles.  It is not hard to foresee that such discovery, directed solely at Crédit

Agricole Miami, would quickly become disproportionate to the needs of the case and to the size

of the claims at issue.

In the Opposition, the Trustee cites Judge Preska's ruling in *Fairfield Sentry Ltd. (In*

*Liquidation), et al. v. HSBC Securities Services (Luxembourg) S.A.*, which provided that

jurisdictional discovery may be ordered at the discretion of the Court "'when it concludes that

the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual

record.'"  No. 21-cv-10316 (LAP), No. 21-cv-10334 (LAP), 2022 WL 3910679, at *8 (S.D.N.Y.

Aug. 31, 2022) (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)); Opp. 16-

17.  Nothing in the Trustee's allegations supports that conclusion.  Here, the Trustee's Complaint

already reflects access to substantial information that a typical plaintiff seeking jurisdictional

discovery would not possess, due to the Settlement Agreement between the Trustee and the

Liquidators.  *See* Mot. 5 (citing Settlement Agreement ¶ 14, *Picard v. Fairfield Sentry Ltd.*, Adv.

Proc. No. 09-01239-cgm (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (the "Fairfield

Settlement Agreement") (Vicens Decl. Ex. 3) ("[T]he Trustee and the Liquidators each agree to

provide reasonable access to the other's documents, data, and other information relating to, or

beneficial to the pursuit of, the Sharing Claims.").  The Trustee has not specified what further

information he seeks, or identified why he believes his present access to documentation is

insufficient to identify the possible bases for jurisdiction.

Particularly in light of this unique arrangement, Crédit Agricole Miami asks this Court, in

its discretion, not to order the requested alternative relief.

## II.    THE SAFE HARBOR OF 11 U.S.C. § 546(e) BARS THE TRUSTEE'S CLAIMS

### A.    The Trustee Incorrectly Focuses On Fairfield Sentry's Knowledge, Rather Than Crédit Agricole Miami's, As Instructed By *Cohmad*

The Trustee alleges that "[b]ased on" Judge Rakoff's ruling in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge."[3] Opp. 23. Not so. As the Trustee himself concedes, "a subsequent transferee's subscription agreements with the initial transferee feeder fund might qualify" for Section 546(e) protections. *Id.* at 22. Yet the Trustee argues that the only determinative factor is the initial transferee's knowledge, the implication of which is that Sentry's alleged actual knowledge of Madoff's fraud bars not only Sentry, but also

---

[3] The Trustee points to other recently decided decisions of this court, holding that the safe harbor exception codified at Section 546(e) is solely applicable to subsequent transferees as a result of an initial transferee's Section 546(e) defense. Opp. 24 (citing *Multi-Strategy*, 641 B.R. at 92-95; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Union Sec. Inv. Tr. Co.)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509, at *8-10 (Bankr. S.D.N.Y. Aug. 18, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Barclays Bank (Suisee) S.A.)*, No. 08-01789 (CGM), Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924, at *6-7 (Bankr. S.D.N.Y. July 15, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque Cantonale Vaudoise)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y. July 14, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Lloyds TSB Bank PLC)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque Lombard Odier & Cie SA)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *8-10 (Bankr. S.D.N.Y. June 30, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Bordier & Cie)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque SYZ & Co., SA)*, No. 08-01789 (CGM), Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022)). But as Crédit Agricole Miami has already respectfully asserted, this Court misinterprets Judge Rakoff's decisions about the application of Section 546(e) safe harbor to subsequent transferees." *See* Mot. 19-20. Instead, Judge Rakoff has articulated that even where an initial transferee cannot raise a Section 546(e) defense, "'the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds,'" unless the subsequent transferee himself had actual knowledge. *Id.* at 19 (citing *Cohmad II*, 2013 WL 1609154, at *7). The Trustee has not alleged any actual knowledge on behalf of Crédit Agricole Miami, and thus cannot argue that Crédit Agricole Miami is not entitled to protection from the Section 546(e) safe harbor provision.

subsequent transferees, from invoking the safe harbor for initial transfers made more than two years before bankruptcy.

To arrive at this conclusion, the Trustee points to an Eighth Circuit case, *Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022). In addition to being out-of-circuit and therefore nonbinding, *Kelley* merely describes the actual knowledge of the initial transferee as the "focus" of the inquiry, but importantly not to the exclusion of the subsequent transferee's knowledge. Opp. 21 (citing *Kelley*, 31 F.4th at 1064 n.5).

The case law of this district instead dictates that Section 546(e)'s safe harbor applies to innocent subsequent transferees. Judge Rakoff described his decision in *Cohmad II* as "generally appl[ying] to the adversary proceedings brought by the Trustee," *see* 2013 WL 1609154, at *10, indicating his intention to give a broad reach to what the Trustee dismissively labeled as "dicta," Opp. 22. As part of this conclusion, Judge Rakoff held that the relevant "actual knowledge" is that of the party from which the Trustee seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and

> (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphases added except for "if").

Paragraph (2) above focused on a subsequent transferee's inability to assert the safe

harbor defense where that *subsequent transferee* rather than the *initial transferee* had actual

knowledge of Madoff's fraud.  To illustrate this point, in Judge Rakoff's original "bottom line"

Order that included the language quoted above, he underlined "subsequent" at the end of

paragraph (2).  *See* Order at 3, *Cohmad II*, No. 12 MC 00115 (S.D.N.Y. Feb. 12, 2013), ECF No.

439.  In arriving at his ruling, Judge Rakoff explicitly expressed the importance of the

subsequent transferee's knowledge when recovery was sought from that subsequent transferee:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge
> of Madoff's scheme, *such a transferee stands in a different posture from an
> innocent transferee, even as concerns the application of Section 546(e)* . . . . [T]he
> purpose of this section is "minimiz[ing] the displacement caused in the
> commodities and securities markets in the event of a major bankruptcy affecting
> those industries." . . . In the context of Madoff Securities' fraud, that goal is best
> achieved by protecting the reasonable expectations of investors who believed they
> were signing a securities contract; but a transferee who had actual knowledge of the
> Madoff "Ponzi" scheme did not have any such expectations, but was simply
> obtaining moneys while he could. Neither law nor equity permits such a person to
> profit from a safe harbor intended to promote the legitimate workings of the
> securities markets and the reasonable expectations of legitimate investors.
>
> * * *
>
> [T]o the extent that an innocent customer transferred funds to a *subsequent
> transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent
> transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s
> safe harbor. Again, this follows from the general principles enunciated earlier in
> this Opinion. A defendant cannot be permitted to in effect launder what he or she
> knows to be fraudulently transferred funds through a nominal third party and still
> obtain the protections of Section 546(e) . . . . In sum, if the Trustee sufficiently
> alleges that *the transferee from whom he seeks to recover a fraudulent transfer*
> knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of
> Section 546(e)'s safe harbor.

*Cohmad II*, 2013 WL 1609154, at *4, *7 (emphases added) (citations omitted).

Through this reasoning, Judge Rakoff made clear that the exception to the Section 546(e)

safe harbor applies with equal force to subsequent and initial transferees with actual knowledge

that the funds it received had been fraudulently transferred.  The Trustee's Opposition concedes

the rationale for this rule, acknowledging that "the point of the actual knowledge exception [is]

to restrict *any* transferee with actual knowledge from hiding behind the safe harbor."  Opp. 23

(emphasis added).

The Trustee argues that Crédit Agricole Miami's reliance on *In re Bernard L. Madoff*

*Investment Securities LLC (Picard v. Ida Fishman Revocable Tr.)*, 773 F.3d 411 (2d Cir. 2014)

("*Ida Fishman*") in challenging *Cohmad II* is misplaced.  *Id.* at 20-21.  He claims that "*Ida*

*Fishman* did not address the actual knowledge exception."  *Id.* at 21 (citing *Sec. Inv. Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Cohen)*, Adv. Proc. Nos. 8–01789(SMB), 10–

04311(SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016)).  But his

argument fails.  *Ida Fishman* helped to clarify that Section 546(e) protection is not subordinate to

the avoidance doctrine, a point further articulated in 2019 when the Second Circuit made clear

that the purpose of Section 546(e) is "protect[ing] a national, heavily regulated market by

limiting creditors' rights."  *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 94 (2d Cir.

2019).  This conflicts with the avoidance provision of the Code, which aims to "maximize[e] the

assets available to creditors."  *Id.*  As such, *Ida Fishman* is directly on point, and instructs that

Crédit Agricole Miami's reading of *Cohmad II* is correct.  Indeed, "Section 546(e) cannot be

trumped by the Code's goal," *id.*, if Congress rejected it, and courts "are obliged to respect the

balance [it] struck," *Ida Fishman*, 773 F.3d at 423.  Under this reading—the correct reading—the

Trustee's claim against Crédit Agricole Miami fails due to the safe harbor protection of Section

546(e), because Crédit Agricole Miami, as a subsequent transferee, did not have actual

knowledge.

Lastly, and tellingly, the Trustee devotes most of his brief on Section 546(e) to the

argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged

subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the

alleged initial transfer. *See* Opp. 18-24. Crédit Agricole Miami has not contended otherwise,

instead basing its safe harbor defense on Section 546(e)'s applicability to the alleged initial

transfer from BLMIS to Sentry *and* the lack of actual knowledge alleged against Crédit Agricole

Miami. *See* Mot. 18-26. As discussed in note 3, *supra*, the issue here is not whether the safe

harbor applies to the initial *transfer* (it clearly does), but whether the actual knowledge of the

initial transferee can be used to strip the safe harbor's protection from a subsequent transferee

that does not have, and is not alleged to have, actual knowledge (it clearly cannot).

> B. Crédit Agricole Miami Is Independently Subject To Section 546(e)'s Safe
>    Harbor Protection

Having established that the inquiry for actual knowledge focuses on the transferee in

question,[4] here the subsequent transferee, Crédit Agricole Miami is independently protected by

the safe harbor exception. The safe harbor exception of Section 546(e) applies where: the

transfers were made (1) "by or to (or for the benefit of)" a covered entity, such as a stockbroker

or financial institution; and (2) was a settlement payment or a transfer in connection with a

securities contract. *See* 11 U.S.C. § 546(e).

---

[4] To be sure, in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC (In re Bernard L. Madoff) (Picard v. Fairfield Investment Fund Ltd)*, this Court reiterated that the relevant inquiry is the actual knowledge of each individual subsequent transferee, rather than a blanket evaluation. No. 08-01789 (CGM), Ad. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *4, *5-7 (Bankr. S.D.N.Y. Aug. 6, 2021) (emphases added) (quoting *Cohmad II*, 2013 WL 1609154, at *7) ("'[I]f the Trustee sufficiently alleges that the transferee *from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor."). In that case, the Court concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud," *id.* at *6, and therefore dismissed all claims against her, *id.* at *15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the *initial* transferees and the *other* subsequent transferee defendants, *id.* at *4-6; *see also id.* at *15 (denying motion to dismiss except as to the individual claims against Ms. Piedrahita). Similarly, actual knowledge cannot be imputed onto Crédit Agricole Miami based on an evaluation of Fairfield Sentry's knowledge.

As already explained, Mot. 25-26, the initial transfers from BLMIS were from a

stockbroker and Fairfield Sentry is a financial institution, facts that have both been previously

affirmed by this Court and others. *See, e.g.*, *Cohmad II*, 2013 WL 1609154, at *2; *In re Fairfield*

*Sentry Ltd. (Fairfield Sentry Ltd. (In Liquidation) v. Amsterdam)*, Case No. 10-13164 (SMB),

Adv. Proc. No. 10-03496 (SMB), 2020 WL 7345988, at *4, *6-7 (Bankr. S.D.N.Y. Dec. 14,

2020). It is similarly undisputed that Crédit Agricole Miami is a financial institution, as

conceded by the Trustee himself, Compl. ¶¶ 3, 22, and based on uncontested judicially-

noticeable materials. Accordingly, the facts alleged here "fit within the plain terms of Section

546(e)." *Cohmad II*, 2013 WL 1609154, at *9.[5] *Cohmad II* therefore provides an independent

basis for the statutory safe harbor to protect Crédit Agricole Miami, premised on the Articles,

rather than the BLMIS-Fairfield Sentry customer agreements, as the relevant "securities

contract."

## III. THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THE AVOIDABILITY OF THE INITIAL TRANSFERS

As previously articulated, the Trustee's complaint should be dismissed because he failed

to adequately plead the avoidability of the initial transfers. Mot. 10-14. The Trustee's pleadings

consisted only of conclusory statements without any factual allegations. *Id.* at 10-11. The

Trustee attempts to cure his failure to plead "a short and plain statement of the claim

showing that the pleader is entitled to relief," as required by Rule 8(a)(2), *see* Mot. 11-14, by

pointing to Rule 10(c)'s provision that "[a] statement in a pleading may be adopted by reference

---

[5] The Trustee cites various cases on this point, but they are inapposite. Opp. 23 (first citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. BNP Paribas S.A.)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018); and then citing *In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020)). Neither *BNP Paribas* nor *SunEdison* discusses whether subsequent transferees such as Crédit Agricole Miami are barred from invoking the safe harbor where the initial transferee had actual knowledge of the fraud, nor is *Cohmad II* discussed in those opinions. Accordingly, they cannot be used to undermine the rightful application of the safe harbor to Crédit Agricole Miami.

elsewhere in the same pleading or in any other pleading or motion," *see* Opp. 25-26.  But this

argument fails.  The Trustee does not seek to adopt such a "statement," *id.*, but instead the

entirety of the Fairfield Amended Complaint, a document in a separate proceeding that has since

been superseded by a Second Amended Complaint.  Conceding that his effort to incorporate the

Complaint wholesale violates Rules 10(c) and pleading standards, the Trustee tries to cure this

deficiency by now alleging he meant the section of the Complaint labeled "Initial Transfers from

BLMIS to Fairfield Sentry."  *Id.* at 26 (citing Compl. ¶¶ 35-39).  But even if the Court were to

permit this belated effort to save his pleading, a defendant should not be required to sift through a

separate pleading and guess which allegations, or which paragraphs of which allegations, apply

and which do not, as courts routinely hold.  *See Levitch v. Columbia Broad. Sys., Inc.*, 94 F.R.D.

292, 294 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983) (citing Fed. R. Civ. P. 10(c); 2A

Moore's, Federal Practice P 10.05 (1981)) ("[W]hen a pleading incorporates other documents it

must be clear which statements are to be incorporated from the other documents."); *United States*

*v. U.S. Telecom Long Distance, Inc.*, No. 2:17-cv-02917-JAD-NJK, 2018 WL 4566673, at *2 (D.

Nev. Sept. 24, 2018) (wholesale incorporation was impermissible and warranted dismissal where

the Government left the defendant "in the untenable position of not knowing which allegations

underpin the government's claims and thus what content [defendant] must respond to in its

answer"); *Davis v. Bifani*, No. 07–cv–00122–MEH–BNB, 2007 WL 1216518, at *1 (D. Colo.

Apr. 24, 2007) (noting the court should not "be required to look to a separate complaint filed

years ago . . . and determine exactly what additional claims for relief Plaintiff intends to plead in

this case").  Indeed, this is the exact scenario Rule 10(c) was created to avoid, and why Rule 8

requires a "short and plain" statement of facts.  *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 10(c);

Mot. 11-14.

Accordingly, the Trustee's attempt to incorporate the Fairfield Amended Complaint is

indisputably *not* a short and plain statement, in violation of not only Rule 8(a)(2), but also

Second Circuit law requiring that the plaintiff make "clear which statements are to be

incorporated." *See, e.g.*, *Levitch*, 94 F.R.D. at 294; *Nycomed U.S. Inc. v. Glenmark Generics

Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010)

(citation omitted) ("Although there is no prescribed procedure for referring to incorporated

matter, the references to prior allegations must be direct and explicit, in order to enable the

responding party to ascertain the nature and extent of the incorporation."); *United States v. Int'l

Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (citation omitted) (same);

*Constellation Energy Commodities Grp. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223

(S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action.").

The Trustee also improperly argues that because this adversary proceeding and the action

against Fairfield Sentry fall "under the umbrella of a single bankruptcy case," then the

incorporation by reference of another case is authorized.  Opp. 25-26 (citing *Sec. Inv. Prot. Corp.

v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re

Madoff Sec.*")).  That is incorrect, and even in the Trustee's cited case on this point, the

complaint not only incorporated allegations by reference, but also specifically "allege[d] the

avoidability of [the] transfers outright."  *In re Madoff Sec.*, 501 B.R. 26, 36 (S.D.N.Y. 2013).

Moreover, the complaints in the other cases the Trustee cites—*i.e. Multi-Strategy* and

*Barclays*—specified the paragraphs they sought to incorporate, which the Trustee has not done

here.

Relatedly, Crédit Agricole Miami's status as a defendant in a consolidated bankruptcy

proceeding does not justify incorporation of pleadings from cases where Crédit Agricole Miami

did not participate. *Cf.* Opp. 26 ("Because this adversary proceeding and the action filed against Fairfield Sentry fall under the same SIPA liquidation proceeding umbrella, . . . the Trustee's incorporation of the Fairfield Amended Complaint is proper."). The Trustee is flatly wrong. The cases he cites allow only incorporation of holdings as binding to rulings on arguments [the party] had a full opportunity to contest earlier in the case. In *Lowrey*, for example, the defendants were parties to the prior, related decision that the District Court determined was the law of the case— they actively participated in that prior litigation and made the same arguments then that which they sought to make again in *Lowrey*. Opp. 25 (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Lowrey)*, 596 B.R. 451, 463 (S.D.N.Y. 2019) ("*Lowrey*")). And *Quintieri* similarly says nothing about the sufficiency of incorporating by reference a *complaint* based on a decision in another case between *different* parties. Opp. 25-26 (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (holding that a criminal sentencing, following an appeal and remand, should be enforced against the *same defendant* absent a contradictory ruling from a higher court)). Crédit Agricole Miami did not have an opportunity to be heard in the other Madoff-related cases.

Accordingly, this Court should find that the Trustee cannot incorporate the entirety of the Fairfield Amended Complaint, thus granting Crédit Agricole Miami's motion to dismiss for the Trustee's failure to plead avoidability.

## IV.    THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THAT CRÉDIT AGRICOLE MIAMI RECEIVED CUSTOMER PROPERTY PURSUANT TO 11 U.S.C. § 550(a)

The Trustee and Crédit Agricole Miami agree on the standard to successfully make a Section 550(a) claim: a plaintiff must plausibly plead facts. Mot. 12-13; *accord* Opp. 27-28. Moreover, both parties also agree that a full "'dollar-for-dollar accounting'" is not needed. *Id.* But despite acknowledging this standard, the Trustee only alleges "'[b]arebone[] allegations,'"

which are indisputably insufficient to meet the pleading standard.  *See* Mot. 12 (citing *In re Madoff (Picard v. Shapiro)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (*"Shapiro"*)).  The Trustee also contradicts himself, demonstrating that he has not met the pleading burden.  The Trustee writes that he need only "provide[] the necessary vital statistics, i.e., the 'who, when, and how much' for *each* of the subsequent transfers."  Opp. 28 (emphasis added) (citation omitted).  But he then lists the *total* number and amount of transfers.  *Id.*  Listing the total does not satisfy the requirement of providing the necessary vital statistics for each subsequent transfer.

In his opposition, the Trustee merely repeats the scarce, conclusory allegations of the Complaint, arguing that the details alleged therein are sufficient to meet the "plausibly allege" pleading standard.  But they are not.  Rather than engaging with Crédit Agricole Miami's arguments that the Trustee's calculations are mathematically impossible, the Trustee tries to argue that Crédit Agricole Miami cited *Shapiro* as changing the pleading standard.  Crédit Agricole Miami never claimed this, nor claimed that an exact accounting was necessary at this stage of the litigation, or that any commingling of funds would defeat the Trustee's claim.  Instead, both parties agree that the *Shapiro* court correctly dismissed the complaint because it "did not detail any of the necessary vital statistics of the subsequent transfers," *id.* at 29 (citing *Shapiro*, 542 B.R. at 119), such as "t[ying] any initial transfer to any subsequent transfer."  *In re Madoff (Picard v. Shapiro)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (*"Shapiro"*).  The same applies here.  The Trustee fails to sufficiently detail the vital statistics or tie any initial transfers to any subsequent transfers, instead listing transfers from BLMIS to Fairfield Sentry and Six Sis AG to BBH to Crédit Agricole Miami without explaining how those transfers were related to any redemption request payments from Crédit Agricole Miami.

16

The Trustee then engages in a litany of tangents to distract from the issue at hand. *See* Opp. 30-33. For example, the Trustee argues that he "Is Not Required to Trace Customer Property at the Pleading Stage." *Id.* at 30. But the issue is not just that he fails to trace the customer property at this time, but that he fails to plead the facts necessary to make his claim plausible. In other words, the Trustee fails to "nudge[] the[] claims across the line from conceivable to plausible," and thus his complaint should be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007); *see also Shapiro*, 542 B.R. at 119 (discussing the "standards for pleading"). To refute this point, the Trustee cites only summary judgment decisions—which of course say nothing about his pleading burden—to argue that Crédit Agricole Miami's "customer property" arguments are inappropriate on a motion to dismiss. Opp. 30 (citing *Kelley as Tr. of Liquidating Tr. v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Charles Ellerin Rev. Tr.)*, No. 08–01789 (BRL), Adv. Nos. 10–04398 (BRL), 10–05219(BRL), 2012 WL 892514, at *2 (Bank. S.D.N.Y. Mar. 14, 2012))).

Next the Trustee argues that he should be entitled to discovery before his claims that Crédit Agricole Miami received Customer Property can be adequately assessed.[6] Opp. 30-32. While some courts have been willing to grant a trustee "greater latitude" at the pleading stage, *id.* at 31-32 (citing *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Cohmad Sec. Corp.)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)), that is only where the Trustee lacks access to information he

---

[6] The crux of all of the Trustee's arguments boils down to timing–he alleges that he was not required to trace customer property at the pleading stage, that he is not required to proof customer property at the pleading stage, and that Crédit Agricole Miami's timing arguments fail here. But this is wrong, and the Trustee's attempt to couch the same timing arguments in three different subsections is of no help. Instead, the Trustee here needed to demonstrate that he plausibly alleged that Crédit Agricole Miami received Customer Property, which he has failed to do.

needs to plead his claims. Here, the Trustee has readily accessed the Fairfield Funds' records, pursuant to the Settlement Agreement. *See* Mot. 5 (citing the Fairfield Settlement Agreement ¶ 14) ("[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims.")). Unlike *Merkin I*, the Trustee has had Fairfield's records for over a decade, which ongoing discovery does not negate. Nor is there any need to wait for expert opinion, again contradicting the Trustee's baseless assertions. Opp. 32 (citation omitted) (arguing that "finding expert testimony at trial 'may assist the Court in making its own determination as to the proper methodology'"). To the extent that expert opinion is necessary for the Trustee to plead his claims as required by Rule 8, he could have and should have—before filing his complaints— retained such experts and had them evaluate the information the Trustee obtained from the Fairfield Funds. The fact that he did not do so does not entitle him to now proceed on his defective claims.

Lastly, the Trustee argues that "C[rédit ]A[gricole] Miami's Mere Conduit Argument is Inappropriate at This Stage." *Id.* at 33. Not so. Courts have granted motions to dismiss on these grounds. *See, e.g.*, *In re Lyondell Chem. Co. (Weisfelner v. Fund 1)*, 503 B.R. 348, 381-83 (Bankr. S.D.N.Y. 2014) (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"); *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 315 (Bankr. S.D.N.Y. 1999) (granting motion to dismiss in part because, "[a]s the Complaint stands, [defendant] was a mere conduit"); *In re Mervyn's Holdings LLC (Mervyn's LLC v. Lubert-Adler Grp. IV, LLC)*, 426 B.R. 96, 102-04 (Bankr. D. Del. 2010) (finding that there was insufficient pleadings showing that the movant was a "transferee" for the purposes of an avoidance action); *Super Vision Int'l, Inc. v. Mega Int'l*

*Com. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) (dismissing claims because

"[plaintiff] has not stated a claim for fraudulent transfer against [defendant] because at best,

[defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have

controlled the funds at issue").

In any event, to the extent that the Court declines to dismiss the Trustee's claims at the

pleading stage, Crédit Agricole Miami respectfully requests that the Court direct the parties to

resolve the threshold mere conduit issue in the first instance.  In other proceedings, this Court

and the District Court have previously adopted summary procedures whereby bank defendants

submit *prima facie* evidence demonstrating their conduit status as to each transfer, with a

streamlined process for the trustee to seek additional information or challenge those

designations.  *See, e.g.*, Conduit Protocol, *In re Tribune Co. Fraudulent Conveyance Litig.*

(*Kirschner v. Fitzsimons, et al.*), No. 12-cv-02652-DLC (S.D.N.Y. Apr. 24, 2014), ECF No.

4239 (creating a protocol whereby disputes about conduit status were resolved by the defendant

submitting a declaration, the plaintiff requesting more information, the parties meeting and

conferring, and, if no resolution was reached, then the defendant making a motion for summary

judgment); Stipulation and Order Regarding Protocol For Dismissal of Conduits and Non-

Transferees, *In re Lyondell Chem. Co. (Weisfelner v. Fund 1, et al.)*, Adv. Pro. No. 10-04609

(REG) (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 2124 (same).

Utilizing a similar streamlined process here would substantially focus and potentially

expedite the resolution of this case, as well as conserve the Court's and the parties' resources by

addressing this threshold question before engaging in time-consuming and costly discovery.  The

Trustee pleads as much when he writes that the mere conduit defense is "'better address[ed] on

summary judgment.'"  Opp. 33 (citations omitted).  Standard Charter has argued accordingly at

length in their Reply Memorandum of Law in Further Support of Standard Chartered

Defendants' Motion to Dismiss, and Crédit Agricole Miami endorses their arguments as well.

*See* Reply 11-13, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*

*Madoff) (Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A., et al.*), Adv. Pro. No. 12-

01565 (CGM), ECF No. 158.

## **CONCLUSION**

For the above reasons, Crédit Agricole Miami requests that this Court grant the motion to

dismiss.

Dated:       October 31, 2022
             New York, New York

Respectfully submitted,

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: */s/ Elizabeth Vicens*

One Liberty Plaza
New York, New York 10006
Telephone: 212.225.2000
Facsimile: 212.225.3999
Elizabeth Vicens
Email:  evicens@cgsh.com
Rebecca D. Rubin
Email :  rrubin@cgsh.com

*Attorneys for Crédit Agricole Corporate and
Investment Bank d/b/a Crédit Agricole Private
Banking Miami, f/k/a Calyon S.A. d/b/a Crédit
Agricole Miami Private Bank successor in
interest to Crédit Lyonnais S.A.*