**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-1022 (CGM) |
| CRÉDIT AGRICOLE (SUISSE) S.A., and CRÉDIT AGRICOLE S.A., a/k/a BANQUE DU CRÉDIT AGRICOLE, | |
| Defendants. | |

**CRÉDIT AGRICOLE (SUISSE) S.A.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| ARGUMENT | | 1 |
| I. | THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION | 1 |
| | A. The Trustee Has Not Alleged That C.A. Suisse Has The Contacts Required To Establish Specific Personal Jurisdiction | 1 |
| | 1. The Trustee Does Not Allege That C.A. Suisse Transacted Business In New York | 2 |
| | 2. Use Of Correspondent Accounts Is Insufficient To Establish Specific Jurisdiction | 3 |
| | 3. Contacts Between C.A. Suisse And Kingate Are Irrelevant | 4 |
| | B. Jurisdictional Discovery Is Unwarranted | 5 |
| II. | THE SAFE HARBOR OF 11 U.S.C. § 546(e) BARS THE TRUSTEE'S CLAIMS | 6 |
| | A. The Trustee Incorrectly Focuses On Fairfield Sentry's Knowledge, Rather Than C.A. Suisse's, As Instructed By *Cohmad* | 6 |
| | B. C.A. Suisse Is Independently Subject To Section 546(e)'s Safe Harbor Protection | 10 |
| III. | THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THE AVOIDABILITY OF THE INITIAL TRANSFERS | 11 |
| IV. | THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THAT C.A. SUISSE RECEIVED CUSTOMER PROPERTY PURSUANT TO 11 U.S.C. § 550(a) | 15 |
| CONCLUSION | | 19 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 546(e) .......................................................................................... 11

Fed. R. Civ. P. 8(a) ........................................................................................ 12, 13

Fed. R. Civ. P. 10(c) ...................................................................................... 12, 13

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................... 16

*Constellation Energy Commodities Grp. v. Transfield ER Cape Ltd.*,
801 F. Supp. 2d 211 (S.D.N.Y. 2011)........................................................... 13

*Davis v. Bifani*,
No. 07–cv–00122–MEH–BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)................. 12-13

*Ge Dandong v. Pinnacle Performance Ltd.*,
966 F. Supp. 2d 374 (S.D.N.Y. 2013)........................................................... 4

*Hill v. HSBC Bank PLC*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)........................................................... 3-4

*In re Bernard L. Madoff Inv. Sec. LLC*
*(Picard v. Ida Fishman Revocable Tr.)*,
773 F.3d 411 (2d Cir. 2014)........................................................................... 10

*In re Fairfield Sentry Ltd.*
*(Fairfield Sentry Ltd. (In Liquidation) v. Amsterdam)*,
Case No. 10-13164 (SMB), Adv. Proc. No. 10-03496 (SMB),
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)...................................... 11

*Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Sec. Servs. (Luxembourg) S.A.*,
No. 21-cv-10316 (LAP), No. 21-cv-10334 (LAP),
2022 WL 3910679, (S.D.N.Y. Aug. 31, 2022) ............................................... 5

*In re Lyondell Chem. Co.*
*(Weisfelner v. Fund 1)*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014)......................... 17-18

Page(s)

*In re Madoff (Picard v. Shapiro)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................. 15-16

*In re Mervyn's Holdings LLC
(Mervyn's LLC v. Lubert-Adler Grp. IV, LLC)*,
426 B.R. 96 (Bankr. D. Del. 2010) ...................................................................... 17-18

*In re Tribune Co. Fraudulent Conv. Litig.*,
946 F.3d 66 (2d Cir. 2019) .................................................................................. 9, 10

*Levitch v. Columbia Broad. Sys., Inc.*,
94 F.R.D. 292 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983) ................... 12-13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) .................................................................................... 4

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012) ............................................................................................. 4

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
No. 08-CV-5023 (CBA)(RLM),
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ........................................................ 13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC
(In re Bernard L. Madoff) (Picard v. BNP Paribas S.A.)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................................. 4-5

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC
(In re Bernard L. Madoff) (Picard v. Fairfield Inv. Fund Ltd)*,
No. 08-01789 (CGM), Ad. Pro. No. 09-01239 (CGM),
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........................................... 10-11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC
(In re Bernard L. Madoff) (Picard v. Multi-Strategy Fund Ltd.)*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ....................................................................... 2

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC
(In re Madoff Sec.)*,
501 B.R. 26 (S.D.N.Y. 2013) ................................................................................. 13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff
Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............... 7, 8, 9, 11

**Page(s)**

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................................ 17-18

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ................................................................................ 3

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) .............................................................. 17-18

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................ 3-4

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................ 13

*United States v. U.S. Telecom Long Distance, Inc.*,
No. 2:17-cv-02917-JAD-NJK, 2018 WL 4566673 (D. Nev. Sept. 24, 2018) .................... 12-13

Defendant Crédit Agricole (Suisse) S.A. ("C.A. Suisse" or "Defendant"), by its

undersigned counsel, respectfully submits this reply memorandum of law in further support

of its Motion to Dismiss (the "Motion" or "Mot.") the Complaint, as amended (the

"Complaint" or "Compl.")[1] of plaintiff Irving Picard, Trustee (the "Trustee" or "Plaintiff")

for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and in

response to the Trustee's Memorandum of Law in Opposition to Defendant Crédit Agricole

(Suisse) S.A.'s Motion to Dismiss (the "Opposition" or "Opp."), pursuant to Federal Rule of

Civil Procedure 12(b)(2) and 12(b)(6), made applicable here by Rule 7012(b) of the Federal

Rules of Bankruptcy Procedure.[2]

## ARGUMENT

### I.    THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION

#### A.    The Trustee Has Not Alleged That C.A. Suisse Has The Contacts Required To Establish Specific Personal Jurisdiction

In the Motion, C.A. Suisse argues that the Complaint should be dismissed because the

Trustee does not allege that it engaged in any transactions with BLMIS that would subject C.A.

Suisse to personal jurisdiction in New York.  Mot. 26-28.  In response, the Trustee instead seeks

to establish personal jurisdiction through C.A. Suisse's limited contacts with third-party British

Virgin Islands ("BVI") entities Fairfield Sentry and Fairfield Sigma Limited, arguing that these

contacts amounted to purposeful engagement with BLMIS and Fairfield Greenwich Group

---

[1] The Complaint in *Picard v. Crédit Agricole (Suisse) S.A., et al.*, Adv. Proc. No. 12-1022 (CGM) (Vicens Decl. Ex. 1), ECF No. 1, was filed January 12, 2012.  It was amended by stipulation and order entered on February 24, 2022 (Vicens Decl. Ex. 2), ECF No. 110.  The February 2022 Stipulation and Order amended the Complaint to: (i) dismiss the transfers that were dismissed pursuant to the Kingate Settlement, reducing the amount sought by the Trustee to $16,002,424.10; and (ii) dismiss all claims against Crédit Agricole S.A. a/k/a Banque du Crédit Agricole. Unless otherwise specified, all "ECF No. __" citations refer to Adv. Pro. No. 12-01022.  Capitalized terms not defined herein shall have the meaning ascribed in the Motion or its supporting memorandum of law.

[2] Crédit Agricole (Suisse) S.A.'s Motion to Dismiss was filed on July 18, 2022.  ECF No. 118.  The Trustee's reply was filed on September 30, 2022.  ECF No. 123.

("FGG").  Opp. 6-7.  The Trustee relies on five purported contacts between C.A. Suisse and New York: (1) agreements (executed outside the United States) between C.A. Suisse and a third party to purchase shares in that third party; (2) meetings in Geneva, Switzerland between C.A. Suisse and that third-party; (3) irrelevant electronic correspondence about C.A. Suisse or between C.A. Suisse personnel and third parties; (4) the incidental use of U.S. correspondent banks to facilitate U.S. dollar-denominated payments related to foreign securities transactions; and (5) contacts with another third party, Kingate Global Fund Ltd. ("Kingate"), over transfers that the Trustee voluntarily dismissed from this action.  *See id.* at 5-11.  Alone and together, the contacts that the Trustee has alleged, and the acts out of which the claims against C.A. Suisse allegedly arise, are insufficient to establish a *prima facie* case of personal jurisdiction.  The Trustee has not met its burden, and the arguments in its Opposition fail to demonstrate otherwise.

> 1.   *The Trustee Does Not Allege That C.A. Suisse Transacted Business In New York*

The Trustee does not allege any in-forum contacts between C.A. Suisse and either the Fairfield Funds or Kingate and in his Opposition he instead points to the Fairfield Funds' contacts with New York, imputing those contacts to C.A. Suisse.  *Cf. Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Multi-Strategy Fund Ltd.)*, 641 B.R. 78, 86 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*") ("Defendant, through its president, director and authorized signatory, asked about additional capacity for Fairfield Sentry on at least seven occasions.").  In doing so, the Trustee concedes it has no direct basis on which to assert personal jurisdiction, but nevertheless asks this Court to accept that C.A. Suisse purposefully availed itself of the foreign laws *of the transactional partners* of its transactional partners, even though C.A. Suisse itself had no contacts with those partners.  C.A. Suisse signed subscription agreements with the Fairfield Funds and, according to the Opposition, met on only a handful of occasions with the Fairfield representatives who facilitated those business relationships.  None of

2

those activities occurred in New York or anywhere else in the United States.  C.A. Suisse took

no further actions with respect to that transaction, which was between itself and the Fairfield

Funds, and certainly no actions that reached or that it ever intended would reach New York.

The Trustee's inclusion in his Opposition of a handful of emails between C.A. Suisse and

the Fairfield Funds and the content of those emails are simply insufficient to establish that C.A.

Suisse intended to transact business in New York.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333,

345 (2d Cir. 2018) (finding "a handful of communications and transfers of funds . . . . are

insufficient to allow the exercise of specific personal jurisdiction over the [Foreign]

Defendants").  Of five email exhibits presented by the Trustee, two emails contain no C.A.

Suisse employees and are merely notes on meetings held outside of New York in Geneva,

Switzerland between C.A. Suisse and the Fairfield Funds.  Of the remaining three emails, two

emails are from Fairfield Funds to C.A. Suisse, but with no response back from the C.A. Suisse

employees to which they were addressed, belying any claim of contacts by C.A. Suisse to New

York.  The last email correspondence between C.A. Suisse and the Fairfield Funds merely

clarifies the correct transferee entity and the involvement of a foreign custodian not based in the

United States.  These emails present no meaningful contact by C.A. Suisse for the claims at issue

in New York, or otherwise refute the arguments made in C.A. Suisse's Motion that it transacted

no business there.  If anything, the fleeting communications noted in the Trustee's Opposition

confirm C.A. Suisse's argument that it is a foreign entity engaging in business outside of the

United States, and the Trustee has failed to show otherwise.

2.  *Use Of Correspondent Accounts Is Insufficient To Establish Specific Jurisdiction*

C.A. Suisse's limited use of U.S. correspondent bank accounts to wire subscription

payments to and receive redemptions from the Fairfield Funds also cannot establish jurisdiction.

In the first instance, the mere passing of funds through a New York correspondent account on the

way to a foreign transferee account cannot subject a foreign bank to personal jurisdiction. *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016); *see also Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726-27 (S.D.N.Y. 2010) (citing cases). To skirt this issue, the Trustee claims that C.A. Suisse purposefully used these correspondent bank accounts within the "New York Banking System." Opp. 9-11. The Trustee cites to inapposite bank terrorism and credit default swap cases, where the illicit activity (i.e., the substance of the claims) was the specific use of the correspondent bank accounts by foreign institutions for the purpose of holding or laundering their customers' illegally obtained funds. *Id.* at 10-11 (citing cases). In those cases, the correspondent bank accounts were not incidental to the alleged wrongful conduct; they formed the basis for the claims and the alleged illegal activity. *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013) (finding specific jurisdiction where the illicit funds were deposited and kept in the U.S. correspondent accounts for the purpose of facilitating the purchase of fraudulent investments) (citation omitted); *see also Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (2012); *accord Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170-71 (2d Cir. 2013). Here, C.A. Suisse merely made transfers via the specified pathway. Its use of the correspondent accounts was not premeditated in any way and certainly not purposefully done to evade other jurisdictions.

3. *Contacts Between C.A. Suisse And Kingate Are Irrelevant*

As jurisdiction must be established with respect to each individual transfer and the Trustee's allegations of personal jurisdiction from C.A. Suisse's contact with Kingate are regarding transfers already dismissed in this action, any alleged contact between C.A. Suisse and Kingate is irrelevant to establishing personal jurisdiction over other transfers still remaining in this action. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. BNP Paribas S.A.)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("*BNP*")

4

(citations omitted) ("Each transfer is a separate claim . . . and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'").  These dismissed claims cannot form the basis for personal jurisdiction for the remaining transfers, all of which are separate transfers unrelated to the Kingate Funds.

    B.  Jurisdictional Discovery Is Unwarranted

    Recognizing he cannot rely on personal jurisdiction, the Trustee in the alternative requests discovery on C.A. Suisse's contacts with New York.  However, C.A. Suisse respectfully submits that this would be a fruitless and unduly burdensome exercise without a basis proportionate to the ensuing time and expense, as required by Rule 26(b) of the Federal Rules of Civil Procedure.  Such discovery would implicate a host of bank secrecy and data privacy regulations applicable to C.A. Suisse as a Swiss *société anonyme* and financial institution, rendering the process inevitably complex and costly.  With the factual basis of the claims at issue stretching back in time nearly twenty years, the parties also would be likely to encounter substantial practical and logistical obstacles.  It is not hard to see that such discovery, directed solely at C.A. Suisse, would quickly become disproportionate to the needs of the case and to the size of the claims at issue.

    In the Opposition, the Trustee cites Judge Preska's ruling in *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities Services (Luxembourg) S.A.*, which provided that jurisdictional discovery may be ordered at the discretion of the Court "'when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.'"  No. 21-cv-10316 (LAP), No. 21-cv-10334 (LAP), 2022 WL 3910679, at *8 (S.D.N.Y. Aug. 31, 2022) (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)); Opp. 14-15.  Nothing in the Trustee's allegations supports that conclusion.  Here, the Trustee's Complaint already reflects access to substantial information that a typical plaintiff seeking jurisdictional

5

discovery would not possess, due to the Settlement Agreement between the Trustee and the Liquidators. *See* Mot. 5 (citing Settlement Agreement ¶ 14, *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-01239-cgm (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (the "Fairfield Settlement Agreement") (Vicens Decl. Ex. 4) ("[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."). The Trustee has not specified what further information he seeks, or identified why he believes his present access to documentation is insufficient to identify the possible bases for jurisdiction.

Particularly in light of this unique arrangement, C.A. Suisse asks this Court, in its discretion, not to order the requested alternative relief.

## II.    THE SAFE HARBOR OF 11 U.S.C. § 546(e) BARS THE TRUSTEE'S CLAIMS

### A.    The Trustee Incorrectly Focuses On Fairfield Sentry's Knowledge, Rather Than C.A. Suisse's, As Instructed By *Cohmad*

The Trustee alleges that "[b]ased on" Judge Rakoff's ruling in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge."[3] Opp. 20. Not so. As the Trustee

---

[3] The Trustee points to other recently decided decisions of this Court, holding that the safe harbor exception codified at Section 546(e) is solely applicable to subsequent transferees as a result of an initial transferee's Section 546(e) defense. Opp. at 22 (citing *Multi-Strategy*, 641 B.R. at 92-95; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Union Sec. Inv. Tr. Co.)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509, at *8-10 (Bankr. S.D.N.Y. Aug. 18, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Barclays Bank (Suisee) S.A.)*, No. 08-01789 (CGM), Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924, at *6-7 (Bankr. S.D.N.Y. July 15, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque Cantonale Vaudoise)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y. July 14, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Lloyds TSB Bank PLC)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque Lombard Odier & Cie SA)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *8-10 (Bankr. S.D.N.Y. June 30,

himself concedes, "a subsequent transferee's subscription agreements with the initial transferee

feeder fund might qualify" for Section 546(e) protections. *Id.* at 22. Yet the Trustee argues that

the only determinative factor is the initial transferee's knowledge, the implication of which is

that Sentry's alleged actual knowledge of Madoff's fraud bars not only Sentry, but also

subsequent transferees, from invoking the safe harbor for initial transfers made more than two

years before bankruptcy.

To arrive at this conclusion, the Trustee points to an Eighth Circuit case, *Kelley as Tr. of*

*PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022). In

addition to being out-of-circuit and therefore nonbinding, *Kelley* merely describes the actual

knowledge of the initial transferee as the "focus" of the inquiry, but importantly not to the

exclusion of the subsequent transferee's knowledge. Opp. at 19 (citing *Kelley*, 31 F.4th at 1064

n.5).

The case law of this district instead dictates that Section 546(e)'s safe harbor applies to

innocent subsequent transferees. Judge Rakoff described his decision in *Cohmad II* as "generally

appl[ying] to the adversary proceedings brought by the Trustee," *see* 2013 WL 1609154, at *10,

indicating his intention to give a broad reach to what the Trustee dismissively labeled as "dicta,"

Opp. 20. As part of this conclusion, Judge Rakoff held that the relevant "actual knowledge" is

that of the party from which the Trustee seeks recovery:

---

2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Bordier &
Cie)*, No. 08-01789 (CGM), Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556, at *4-6 (Bankr. S.D.N.Y. June 30,
2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Banque SYZ &
Co., SA)*, No. 08-01789 (CGM), Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y.
June 14, 2022)). But as C.A. Suisse has already respectfully asserted, this Court misinterprets Judge Rakoff's
decisions about the application of Section 546(e) safe harbor to subsequent transferees. *See* Mot. 17-19. Instead,
Judge Rakoff has articulated that even where an initial transferee cannot raise a Section 546(e) defense, "'the
subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds,'"
unless the subsequent transferee himself had actual knowledge. *Id.* at 18 (citing *Cohmad II*, 2013 WL 1609154, at
*7). The Trustee has not alleged any actual knowledge on behalf of C.A. Suisse, and thus cannot argue that C.A.
Suisse is not entitled to protection from the Section 546(e) safe harbor provision.

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and
>
> (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphases added except for "if").

Paragraph (2) above focused on a subsequent transferee's inability to assert the safe harbor defense where that *subsequent transferee* rather than the *initial transferee* had actual knowledge of Madoff's fraud. To illustrate this point, in Judge Rakoff's original "bottom line" Order that included the language quoted above, he underlined "subsequent" at the end of paragraph (2). *See* Order at 3, *Cohmad II*, No. 12 MC 00115 (S.D.N.Y. Feb. 12, 2013), ECF No. 439. In arriving at his ruling, Judge Rakoff explicitly expressed the importance of the subsequent transferee's knowledge when recovery was sought from that subsequent transferee:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)* . . . . [T]he purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . . In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.
>
> * * *
>
> [T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s

8

> safe harbor. Again, this follows from the general principles enunciated earlier in
> this Opinion. A defendant cannot be permitted to in effect launder what he or she
> knows to be fraudulently transferred funds through a nominal third party and still
> obtain the protections of Section 546(e) . . . . In sum, if the Trustee sufficiently
> alleges that *the transferee from whom he seeks to recover a fraudulent transfer*
> knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of
> Section 546(e)'s safe harbor.

*Cohmad II*, 2013 WL 1609154, at *4, *7 (emphases added) (citations omitted).

Through this reasoning, Judge Rakoff made clear that the exception to the Section 546(e)

safe harbor applies with equal force to subsequent and initial transferees with actual knowledge

that the funds it received had been fraudulently transferred.  The Trustee's Opposition concedes

the rationale for this rule, acknowledging that "the point of the actual knowledge exception [is]

to restrict *any* transferee with actual knowledge from hiding behind the safe harbor."  Opp. at 21

(emphasis added).

The Trustee argues that C.A. Suisse's reliance on *In re Bernard L. Madoff Investment*

*Securities LLC (Picard v. Ida Fishman Revocable Tr.)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida*

*Fishman*") in challenging *Cohmad II* is misplaced.  *Id.* at 18.  He claims that "*Ida Fishman* did

not address the actual knowledge exception." *Id.* at 18 (citing *Sec. Inv. Prot. Corp. v. Bernard L.*

*Madoff Inv. Sec. LLC (Picard v. Cohen)*, Adv. Proc. Nos. 8–01789(SMB), 10–04311(SMB),

2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016)).  But his argument fails.  *Ida*

*Fishman* helped to clarify that Section 546(e) protection is not subordinate to the avoidance

doctrine, a point further articulated in 2019 when the Second Circuit made clear that the purpose

of Section 546(e) is "protect[ing] a national, heavily regulated market by limiting creditors'

rights."  *In re Tribune Co. Fraudulent Conv. Litig*., 946 F.3d 66, 94 (2d Cir. 2019).  This

conflicts with the avoidance provision of the Code, which aims to "maximize[e] the assets

available to creditors."  *Id.*  As such, *Ida Fishman* is directly on point, and instructs that C.A.

9

Suisse's reading of *Cohmad II* is correct.  Indeed, "Section 546(e) cannot be trumped by the

Code's goal," *id.*, if Congress rejected it, and courts "are obliged to respect the balance [it]

struck," *Ida Fishman*, 773 F.3d at 423.  Under this reading—the correct reading—the Trustee's

claim against C.A. Suisse fails due to the safe harbor protection of Section 546(e), because C.A.

Suisse, as a subsequent transferee, did not have actual knowledge.

Lastly, and tellingly, the Trustee devotes most of his brief on Section 546(e) to the

argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged

subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the

alleged initial transfer.  *See* Opp. 16-22.  C.A. Suisse has not contended otherwise, instead basing

its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from

BLMIS to Sentry *and* the lack of actual knowledge alleged against C.A. Suisse.  *See* Mot. 17-25.

As discussed in note 3, *supra*, the issue here is not whether the safe harbor applies to the initial

*transfer* (it clearly does), but whether the actual knowledge of the initial transferee can be used to

strip the safe harbor's protection from a subsequent transferee that does not have, and is not

alleged to have, actual knowledge (it clearly cannot).

B.    C.A. Suisse Is Independently Subject To Section 546(e)'s Safe Harbor Protection

Having established that the inquiry for actual knowledge focuses on the transferee in

question,[4] here the subsequent transferee, C.A. Suisse is independently protected by the safe

---

[4] To be sure, in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC (In re Bernard L. Madoff) (Picard v. Fairfield Investment Fund Ltd)*, this Court reiterated that the relevant inquiry is the actual knowledge of each individual subsequent transferee, rather than a blanket evaluation.  No. 08-01789 (CGM), Ad. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *4, *5-7 (Bankr. S.D.N.Y. Aug. 6, 2021) (emphases added) (quoting *Cohmad II*, 2013 WL 1609154, at *7) ("'[I]f the Trustee sufficiently alleges that the transferee *from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.").  In that case, the Court concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud," *id*. at *6, and therefore dismissed all claims against her, *id*. at *15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the *initial* transferees and the *other* subsequent transferee defendants, *id*. at *4-6; *see also id*. at *15 (denying motion to dismiss except as to the

harbor exception.  The safe harbor exception of Section 546(e) applies where: the transfers were

made (1) "by or to (or for the benefit of)" a covered entity, such as a stockbroker or financial

institution; and (2) was a settlement payment or a transfer in connection with a securities

contract.  *See* 11 U.S.C. § 546(e).

As already explained, Mot. 24-25, the initial transfers from BLMIS were from a

stockbroker and Fairfield Sentry is a financial institution, facts that have both been previously

affirmed by this Court and others.  *See, e.g.*, *Cohmad II*, 2013 WL 1609154, at *2; *In re Fairfield*

*Sentry Ltd. (Fairfield Sentry Ltd. (In Liquidation) v. Amsterdam)*, Case No. 10-13164 (SMB),

Adv. Proc. No. 10-03496 (SMB), 2020 WL 7345988, at *4, *6-7 (Bankr. S.D.N.Y. Dec. 14,

2020).  It is similarly undisputed that C.A. Suisse is a financial institution, as conceded by the

Trustee himself, Compl. ¶¶ 3, 22, and based on uncontested judicially-noticeable materials.

Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)."  *Cohmad II*,

2013 WL 1609154, at *9.[5]  *Cohmad II* therefore provides an independent basis for the statutory

safe harbor to protect C.A. Suisse, premised on the Articles, rather than the BLMIS-Fairfield

Sentry customer agreements, as the relevant "securities contract."

## III.    THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THE AVOIDABILITY
##         OF THE INITIAL TRANSFERS

As previously articulated, the Trustee's complaint should be dismissed because he failed

to adequately plead the avoidability of the initial transfers.  Mot. 10-14.  The Trustee's pleadings

---

individual claims against Ms. Piedrahita).  Similarly, actual knowledge cannot be imputed onto C.A. Suisse based on
an evaluation of Fairfield Sentry's knowledge.

[5] The Trustee cites various cases on this point, but they are inapposite.  Opp. 20-21 (first citing *Sec. Inv. Prot. Corp.
v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. BNP Paribas S.A.)*, 594 B.R. 167, 197
(Bankr. S.D.N.Y. 2018); and then citing *In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020)).  Neither
*BNP Paribas* nor *SunEdison* discusses whether subsequent transferees such as C.A. Suisse are barred from invoking
the safe harbor where the initial transferee had actual knowledge of the fraud, nor is *Cohmad II* discussed in those
opinions.  Accordingly, they cannot be used to undermine the rightful application of the safe harbor to C.A. Suisse.

consisted only of conclusory statements without any factual allegations. *Id.* at 10-11. The

Trustee attempts to cure his failure to plead "a short and plain statement of the claim showing

that the pleader is entitled to relief," as required by Rule 8(a)(2), *see* Mot. 10-13, by pointing to

Rule 10(c)'s provision that "[a] statement in a pleading may be adopted by reference elsewhere

in the same pleading or in any other pleading or motion," *see* Opp. 23-24. But this argument

fails. The Trustee does not seek to adopt such a "statement," *id.*, but instead the entirety of the

Fairfield Amended Complaint, a document in a separate proceeding that has since been

superseded by a Second Amended Complaint. Conceding that his effort to cure his original

pleading defects by incorporating the Complaint wholesale *also* violates pleading standards and

Rule 10(c), the Trustee now attempts to again save his claims by alleging he meant the section of

the Complaint labeled "Initial Transfers From BLMIS to Fairfield Sentry." *Id.* at 24 (citing

Compl. ¶¶ 57-62). But even if the Court were to permit this belated effort to save his pleading, a

defendant should not be required to sift through a separate pleading and guess which allegations,

or which paragraphs of which allegations, apply and which do not, as courts routinely hold. *See*

*Levitch v. Columbia Broad. Sys., Inc.*, 94 F.R.D. 292, 294 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495

(2d Cir. 1983) (citing Fed. R. Civ. P. 10(c); 2A Moore's, Federal Practice P. 10.05 (1981))

("[W]hen a pleading incorporates other documents it must be clear which statements are to be

incorporated from the other documents."); *United States v. U.S. Telecom Long Distance, Inc.*,

No. 2:17-cv-02917-JAD-NJK, 2018 WL 4566673, at *2 (D. Nev. Sept. 24, 2018) (wholesale

incorporation was impermissible and warranted dismissal where the Government left the

defendant "in the untenable position of not knowing which allegations underpin the

government's claims and thus what content [defendant] must respond to in its answer"); *Davis v.*

*Bifani*, No. 07–cv–00122–MEH–BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (the

court should not "be required to look to a separate complaint filed years ago . . . and determine

exactly what additional claims for relief Plaintiff intends to plead in this case"). Indeed, this is

the exact scenario Rule 10(c) was created to avoid, and why Rule 8 requires a "short and plain"

statement of facts. *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 10(c); Mot. 10-13.

Accordingly, the Trustee's attempt to incorporate the Fairfield Amended Complaint is

indisputably *not* a short and plain statement, in violation of not only Rule 8(a)(2), but also

Second Circuit law requiring that the plaintiff make "clear which statements are to be

incorporated." *See, e.g.*, *Levitch*, 94 F.R.D. at 294; *Nycomed U.S. Inc. v. Glenmark Generics

Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010)

(citation omitted) ("Although there is no prescribed procedure for referring to incorporated

matter, the references to prior allegations must be direct and explicit, in order to enable the

responding party to ascertain the nature and extent of the incorporation."); *United States v. Int'l

Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (citation omitted) (same);

*Constellation Energy Commodities Grp. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223

(S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action.").

The Trustee also improperly argues that because C.A. Suisse was a defendant in an

adversary proceeding "under the umbrella of a single bankruptcy case," then the incorporation by

reference of another case is authorized. Opp. 23 (citing *Sec. Inv. Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re Madoff

Sec.*")). That is incorrect, and even in the Trustee's cited case on this point, the complaint not

only incorporated allegations by reference, but also specifically "allege[d] the avoidability of

[the] transfers outright." *In re Madoff Sec.*, 501 B.R. 26, 36 (S.D.N.Y. 2013). Moreover, the

complaints in the other cases the Trustee cites—*i.e. Multi-Strategy* and *Barclays*—specified the paragraphs they sought to incorporate, which the Trustee has not done here.

Relatedly, C.A. Suisse's status as a defendant in a consolidated bankruptcy proceeding does not justify incorporation of pleadings from cases where C.A. Suisse did not participate.  *Cf.* Opp. 23-24 ("Because this adversary proceeding and the action filed against Fairfield Sentry fall under the same SIPA liquidation proceeding umbrella , . . . the Trustee's incorporation of the Fairfield Amended Complaint is proper.").  The Trustee is flatly wrong.  The cases he cites allow only incorporation of holdings as binding to rulings on arguments [the party] had a full opportunity to contest earlier in the case.  In *Lowrey*, for example, the defendants were parties to the prior, related decision that the District Court determined was the law of the case—they actively participated in that prior litigation and made the same arguments then that which they sought to make again in *Lowrey*.  Opp. 23 (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)* (*Picard v. Lowrey*), 596 B.R. 451, 463 (S.D.N.Y. 2019) ("*Lowrey*")).  And *Quintieri* similarly says nothing about the sufficiency of incorporating by reference a *complaint* based on a decision in another case between *different* parties.  Opp. 23 (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (holding that a criminal sentencing, following an appeal and remand, should be enforced against the *same defendant* absent a contradictory ruling from a higher court)).  C.A. Suisse did not have a separate opportunity to be heard in the other Madoff-related cases; its participation was limited to consolidated briefing with more than 200 other defendants.

Accordingly, this Court should find that the Trustee cannot incorporate the entirety of the Fairfield Amended Complaint, thus granting C.A. Suisse's motion to dismiss for the Trustee's failure to plead avoidability.

### IV.    THE TRUSTEE FAILS TO SUFFICIENTLY PLEAD THAT C.A. SUISSE RECEIVED CUSTOMER PROPERTY PURSUANT TO 11 U.S.C. § 550(a)

The Trustee and C.A. Suisse agree on the standard to successfully make a Section 550(a) claim: a plaintiff must plausibly plead facts.  Mot. 11-12; *accord* Opp. 15.  Moreover, both parties also agree that a full "'dollar-for-dollar accounting'" is not needed.  *Id.* at 25 (citation omitted).  But despite acknowledging this standard, the Trustee only alleges "'[b]arebone[] allegations,'" which are indisputably insufficient to meet the pleading standard.  *See* Mot. 11 (citing *In re Madoff (Picard v. Shapiro)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (*"Shapiro"*)).  The Trustee also contradicts himself, demonstrating that he has not met the pleading burden.  The Trustee writes that he need only "provide[] the necessary vital statistics, i.e., the 'who, when, and how much' for *each* of the subsequent transfers."  Opp. 26 (emphasis added) (citation omitted).  But he then lists the *total* number and amount of transfers.  *Id.*  Listing the total does not satisfy the requirement of providing the necessary vital statistics for each subsequent transfer.

In his opposition, the Trustee merely repeats the scarce, conclusory allegations of the Complaint, arguing that the details alleged therein are sufficient to meet the "plausibly allege" pleading standard.  But they are not.  Rather than engaging with C.A. Suisse's arguments that the Trustee's calculations are mathematically impossible, the Trustee tries to argue that C.A. Suisse cited *Shapiro* as changing the pleading standard.  C.A. Suisse never claimed this, nor claimed that an exact accounting was necessary at this stage of the litigation, or that any commingling of funds would defeat the Trustee's claim.  Instead, both parties agree that the *Shapiro* court correctly dismissed the complaint because it "did not detail any of the necessary vital statistics of the subsequent transfers," *id.* at 27 (citing *Shapiro*, 542 B.R. at 119), such as "t[ying] any initial transfer to any subsequent transfer."  *In re Madoff (Picard v. Shapiro)*, 542 B.R. 100, 119

(Bankr. S.D.N.Y. 2015) (*"Shapiro"*).  The same applies here.  The Trustee fails to sufficiently

detail the vital statistics or tie any initial transfers to any subsequent transfers, instead listing

transfers from BLMIS to Fairfield Sentry and Sigma to C.A. Suisse without explaining how

those transfers were related to any redemption request payments from C.A. Suisse.  These are the

minimal pleading requirements intended to put C.A. Suisse on notice of the claims against it.

The Trustee then engages in a litany of tangential arguments to distract from his pleading

failures.  *See* Opp. 28-31.  For example, the Trustee argues that he "is Not Required to Trace

Customer Property at the Pleading Stage."  *Id.* at 28.  But the issue is not that he fails to trace

customer property at this time, it is that he fails to plead the facts necessary to make his claim

plausible or even to put C.A. Suisse on notice of those claims.  In other words, the Trustee fails

to "nudge[] the [] claims across the line from conceivable to plausible," and thus his complaint

should be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007); *see also*

*Shapiro*, 542 B.R. at 119 (discussing the "standards for pleading").  To refute this point, the

Trustee cites only summary judgment decisions—which of course say nothing about his pleading

burden—to argue that C.A. Suisse's "customer property" arguments are inappropriate on a

motion to dismiss.  Opp. at 28 (citing *Kelley as Tr. of Liquidating Tr. v. Westford Special*

*Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn.

June 10, 2020) (citing *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Charles Ellerin Rev.*

*Tr.*), No. 08–01789 (BRL), Adv. Nos. 10–04398 (BRL), 10–05219(BRL), 2012 WL 892514, at

*2 (Bankr. S.D.N.Y. Mar. 14, 2012))).

Next the Trustee argues that he should be entitled to discovery before his claims that C.A.

Suisse received Customer Property can be adequately assessed.[6]  Opp. 28-30.  While some courts

---

[6] The crux of all of the Trustee's arguments boils down to timing–he alleges that he was not required to trace
customer property at the pleading stage, that he is not required to proof customer property at the pleading stage, and

have been willing to grant a trustee "greater latitude" at the pleading stage, *id.* at 29-30 (citing *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Cohmad Sec. Corp.)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)), that is only where the Trustee lacks access to information he needs to plead his claims. Here, the Trustee has readily accessed the Fairfield Funds' records, pursuant to the Settlement Agreement. *See* Mot. 5 (citing the Fairfield Settlement Agreement ¶ 14) ("[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims.")). Unlike *Merkin I*, the Trustee has had Fairfield's records for over a decade, which ongoing discovery does not negate. Nor is there any need to wait for expert opinion, again contradicting the Trustee's baseless assertions. Opp. 30 (citation omitted) (arguing that "finding expert testimony at trial 'may assist the Court in making its own determination as to the proper methodology'"). To the extent that expert opinion is necessary for the Trustee to plead his claims as required by Rule 8, he could have and should have—before filing his complaints— retained such experts and had them evaluate the information the Trustee obtained from the Fairfield Funds. The fact that he did not do so does not entitle him to now proceed on his defective claims and they should be dismissed.

Lastly, the Trustee argues that C.A. Suisse's "Mere Conduit Argument is Inappropriate at This Stage." *Id.* at 31. Not so. Courts have granted motions to dismiss on these grounds. *See, e.g.*, *In re Lyondell Chem. Co. (Weisfelner v. Fund 1)*, 503 B.R. 348, 381-83 (Bankr. S.D.N.Y. 2014) (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"); *Sec. Inv. Prot. Corp. v. Stratton*

---

that C.A. Suisse's timing arguments fail here. But this is wrong, and the Trustee's attempt to couch the same timing arguments in three different subsections is of no help. Instead, the Trustee here needed to demonstrate that he plausibly alleged that C.A. Suisse received Customer Property, which he has failed to do.

*Oakmont, Inc.*, 234 B.R. 293, 315 (Bankr. S.D.N.Y. 1999) (granting motion to dismiss in part

because, "[a]s the Complaint stands, [defendant] was a mere conduit"); *In re Mervyn's Holdings*

*LLC (Mervyn's LLC v. Lubert-Adler Grp. IV, LLC)*, 426 B.R. 96, 102-04 (Bankr. D. Del. 2010)

(finding that there was insufficient pleadings showing that the movant was a "transferee" for the

purposes of an avoidance action); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F.

Supp. 2d 1326, 1344 (S.D. Fla. 2008) (dismissing claims because "[plaintiff] has not stated a

claim for fraudulent transfer against [defendant] because at best, [defendant] was the conduit, not

the transferee, and because [defendant] is not alleged to have controlled the funds at issue").

   In any event, to the extent that the Court declines to dismiss the Trustee's claims at the

pleading stage, C.A. Suisse respectfully requests that the Court direct the parties to resolve the

threshold mere conduit issue in the first instance.  In other proceedings, this Court and the

District Court have previously adopted summary procedures whereby bank defendants submit

prima facie evidence demonstrating their conduit status as to each transfer, with a streamlined

process for the trustee to seek additional information or challenge those designations.  *See, e.g.*,

Conduit Protocol, *In re Tribune Co. Fraudulent Conveyance Litig.* (*Kirschner v. Fitzsimons, et*

*al.)*, No. 12-cv-02652-DLC (S.D.N.Y. Apr. 24, 2014), ECF No. 4239 (creating a protocol

whereby disputes about conduit status were resolved by the defendant submitting a declaration,

the plaintiff requesting more information, the parties meeting and conferring, and, if no

resolution was reached, then the defendant making a motion for summary judgment); Stipulation

and Order Regarding Protocol For Dismissal of Conduits and Non-Transferees, *In re Lyondell*

*Chem. Co. (Weisfelner v. Fund 1, et al.)*, Adv. Pro. No. 10-04609 (REG) (Bankr. S.D.N.Y. Dec.

4, 2014), ECF No. 2124 (same).

Utilizing a similar streamlined process here would substantially focus and potentially expedite the resolution of this case, as well as conserve the Court's and the parties' resources by addressing this threshold question before engaging in time-consuming and costly discovery.  The Trustee pleads as much when he writes that the mere conduit defense is "'better addressed on summary judgment.'"  Opp. 31 (citations omitted).  Standard Charter has argued accordingly at length in their Reply Memorandum of Law in Further Support of Standard Chartered Defendants' Motion to Dismiss, and C.A. Suisse endorses their arguments as well.  *See* Reply at 11-13, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff) (Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A., et al.*), Adv. Pro. No. 12-01565 (CGM), ECF No. 158.

## **CONCLUSION**

For the above reasons, C.A. Suisse requests that this Court grant the motion to dismiss.

Dated:      October 31, 2022
            New York, New York

                              Respectfully submitted,

                              **CLEARY GOTTLIEB STEEN &
                              HAMILTON LLP**

                              By: _/s/ Elizabeth Vicens_ _____

                              One Liberty Plaza
                              New York, New York 10006
                              Telephone: 212.225.2000
                              Facsimile: 212.225.3999
                              Elizabeth Vicens
                              Email:  evicens@cgsh.com
                              Rebecca Rubin
                              Email : rrubin@cgsh.com

                              _Attorneys for Defendant Crédit Agricole
                              (Suisse) S.A._