**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01698 (CGM) |
| Plaintiff, | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT** |
| v. | |
| BANQUE INTERNATIONALE À LUXEMBOURG S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.); RBC INVESTOR SERVICES BANK S.A (*f/k/a* RBC Dexia Investor Services Bank S.A.); RBC INVESTOR SERVICES TRUST (*f/k/a* RBC Dexia Investor Services Trust); BANCO INVERSIS, S.A., as successor in interest to RBC Dexia Investor Services España S.A.; and BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.), | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

    I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................. 3

    II.    DEFENDANTS AND THEIR INVESTMENTS IN THE FEEDER FUNDS....... 4

ARGUMENT .................................................................................................................. 8

    I.      THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ....... 8

          A.    Defendants Purposefully Availed Themselves of the Laws and
               Privileges of Conducting Business in the United States, and the
               Trustee's Claims Arise Out of or Relate to Such Availment................... 11

               1.    Defendants' Knowing and Intentional Investments With
                      BLMIS Through the Feeder Funds Are Sufficient Grounds
                      for Jurisdiction ............................................................................ 11

                     a.    *BLI* and Recent Decisions of This Court Establish
                           Jurisdiction......................................................... 12

                     b.    *Walden* Does Not Save Defendants From This
                           Court's Jurisdiction........................................... 14

                     c.    RBC-Dexia España's Customer Claims Support
                           Jurisdiction......................................................... 16

                 2.    Defendants' Purposeful Use of New York Bank Accounts
                        Establishes Jurisdiction.............................................................. 17

                 3.    The Forum Selection and Choice of Law Clauses in the
                        Fairfield Funds' Subscription Agreements Are Strong
                        Jurisdictional Contacts............................................................... 21

                 4.    Dexia Banque Had Significant Other Contacts With New
                        York in Connection With Its Fairfield Funds Investments........... 22

                 5.    Defendants' Contacts With the Forum Are Sufficiently
                        Related to the Trustee's Claims .................................................. 24

          B.    The Exercise of Personal Jurisdiction Over Defendants Is
                Reasonable ............................................................................................. 26

C.      In the Alternative, the Trustee Is Entitled to Jurisdictional
Discovery ................................................................................................. 27

II.      THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE INITIAL
TRANSFERS ...................................................................................................... 28

CONCLUSION ........................................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Pataki*, 185 F.3d 35 (2d. Cir 1999) ................................................................ 32

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996) ................ 10

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448 (JGK),
    2005 WL 2385854 (S.D.N.Y. Sept. 26, 2005) .................................................... 31

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016) .......................................................... 18

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................ 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 24

*Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL),
    2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...................................................... 28

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) .................................... 8

*Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ................................................... 9-10, 22

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .............................. 9, 26

*Cohen v. Bucci*, 905 F.2d 1111 (7th Cir. 1990) .............................................................. 28

*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ........................ 17

*Davis v. Bifani*, No. 07-cv-00122 (MEH) (BN),
    2007 WL 1216518 (D. Colo. Apr. 24, 2007) ...................................................... 29

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) .................................. 8

*Dozier v. Deutsche Bank Tr. Co. Americas*, No. 09 Civ. 9865 (LMM),
    2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) ...................................................... 32

*Eldesouky v. Aziz*, No. 11–CV–6986 (JLC),
    2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .................................................... 17

*ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35 (S.D.N.Y. 1999) .................................................. 10

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) ...................................................... 11, 19

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP),
    2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ................................................................ 27

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
    *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*,
    No. 19-CV-3911 (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ........................ 22

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ...................... 9, 24, 26

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673 (RJS),
    2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ...................................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................................... 9

*Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS) (SN),
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 Fed. App'x 66 ........................... 20

*Hau Yin To v. HSBC Holdings, PLC*, 700 Fed. App'x 66 (2d Cir. 2017) ...................................... 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................. 15

*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d. Cir 1994) ............................................................ 32

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................... 20

*HSH Nordbank AG New York Branch v. Street*, No. 11 Civ. 9405 (DLC),
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) ............................................................ 17, 24

*In re Arcapita Bank B.S.C.(C)*, No. 21 Civ. 8296 (AKH),
    2022 WL 1620307 (S.D.N.Y. May 23, 2022) ................................................................. 19

*In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010) .................. 20

*In re Motors Liquidation Co.*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017) .................................... 19-20

*In re Picard*, 917 F.3d 85 (2d Cir. 2019) ....................................................................... 12, 26, 27

*In re Terrestar Corp.*, No. 16 Civ. 1421 (ER),
    2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) ................................................................ 28

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................................ 9-10, 25

*Johnson v. Holder*, 564 F.3d 95 (2d Cir. 2009) .......................................................................... 22

*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008) .......................................... 31

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP),
    2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ........................................................... 27-28

*Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012)................................................18-19

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
    Adv. Pro. No. 18-50489 (CSS),
    2022 WL 2240122 (Bankr. D. Del. June 22, 2022)....................................................31-32

*McGee v. Int'l Life Ins. Co.*, 335 U.S. 220 (1957)..........................................................9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................ 10

*Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B,
    2012 WL 1854315 (S.D. Ala. May 21, 2012) ................................................. 29

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC),
    2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014).................................................... 29

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM),
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010).................................................... 29

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)................................................................18-19, 24

*Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261 (JS) (AKT),
    2011 WL 1655575 (E.D.N.Y. May 2, 2011),
    *aff'd*, 457 F. App'x 40 (2d Cir. 2012).......................................................... 31

*Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM),
    2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022)................................................ passim

*Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM),
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)........................................... 2, 14, 23

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)................................................ passim

*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018)............. passim

*Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012)........ passim

*Picard v. Chais (In re BLMIS)*, 440 B.R. 274 (Bankr. S.D.N.Y. 2010) ................................24-25

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
    No. 21-1059, 2022 WL 585915 (U.S. Feb. 28, 2022) ......................................... 4

*Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015)........................................................18-19

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..................................................... 9-10, 24

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM),
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .......................................... 5, 8, 29-30

*Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM),
2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ............................................ passim

*Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........... 9, 27

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) .......................... passim

*Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM),
2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ................................................ 2, 23-25

*Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538 (CGM),
2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022) ................................................ 2, 23

*Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM),
2022 WL 4349859 (Bankr. S.D.N.Y. Sept. 19, 2022) ............................................ passim

*Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM),
2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022) ......................................... 2, 23, 28-29

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................. 31

*Roper Starch Worldwide, Inc. v. Reymer & Assocs*, 2 F. Supp. 2d 470 (S.D.N.Y. 1998) ........... 20

*Rosenblatt v. Coutts & Co. AG*, No. 17-cv-3528 (AKH),
2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ....................................................... 20

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
501 B.R. 26 (S.D.N.Y. 2013) ............................................................................. 29

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR),
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ....................................................... 30

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320 (S.D.N.Y. 2007) ...................... 29

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015),
*aff'd*, 882 F.3d 333 (2d Cir. 2018) .................................................................. 20

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) .......................................... 25

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019) ......................... 10

*United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007) .............. 29

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................ passim

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ........................................ 26

*Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633 (E.D.N.Y. 1963) ........................... 21

**Statutes**

11 U.S.C. § 546(e) ................................................................................................ 30, 32

15 U.S.C. §§ 78aaa-*lll* ............................................................................................ 1

**Rules**

Fed. R. Bankr. P. 1334 .......................................................................................... 28

Fed. R. Civ. P. 8 .......................................................................................... 2, 29, 31-32

Fed. R. Civ. P. 8(a) ........................................................................................... 3, 30

Fed. R. Civ. P. 8(d)(2) ............................................................................................ 32

Fed. R. Civ. P. 8(d)(3) ............................................................................................ 32

Fed. R. Civ. P. 10 .................................................................................................... 2

Fed. R. Civ. P. 10(c) ......................................................................................... 3, 28-29

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in opposition to the two motions to dismiss the Amended Complaint (the "AC") pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(2) and 12(b)(6) filed by (i) defendants Banque Internationale à Luxembourg S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.) ("Dexia Banque") and Banque Internationale à Luxembourg (Suisse) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.) ("Dexia Suisse" and, together with Dexia Banque, the "Dexia Defendants"); and (ii) defendants RBC Investor Services Bank S.A. (*f/k/a* RBC Dexia Investor Services Bank S.A.) ("RBC-Dexia Bank"); RBC Investor Services Trust (*f/k/a* RBC Dexia Investor Services Trust) ("RBC-Dexia Trust"); and Banco Inversis, S.A. ("Banco Inversis") (as successor in interest to RBC Dexia Investor Services España S.A. ("RBC-Dexia España")) (collectively, the "RBC-Dexia Defendants" and, together with the Dexia Defendants, "Defendants").[1]

## **PRELIMINARY STATEMENT**

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action by the Trustee seeks to recover approximately $66 million in subsequent transfers that Defendants received from BLMIS feeder funds Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma" and, together with Sentry, the "Fairfield Funds"), and Rye Select Broad Market Portfolio Limited ("Rye Portfolio") (collectively, the "Feeder Funds").

---

[1] Allegations made herein as to activities of, or transfers received by, "Defendants" during the relevant time frame are meant to include RBC-Dexia España, as the predecessor in interest to Banco Inversis.

Defendants argue that this adversary proceeding should be dismissed because the Court

lacks jurisdiction over them.[2]    In addition, the RBC-Dexia Defendants argue that the Trustee

violates Rules 8 and 10 by incorporating by reference the Trustee's Second Amended Complaint

against the Fairfield Funds (the "Fairfield SAC")[3] and the Trustee's Complaint against Rye

Portfolio (the "Tremont Complaint" or "TC").[4]    However, the foregoing arguments are

substantially the same as those recently rejected by this Court in other subsequent transfer cases.[5]

For the reasons set forth herein, Defendants' arguments fail.

First, this Court has personal jurisdiction over Defendants.    Defendants purposefully

invested in the Feeder Funds, knowing from the Feeder Funds' documents that BLMIS in New

York was the *de facto* investment manager, broker-dealer, and custodian of the Feeder Funds'

investments.    Defendants also designated and used New York bank accounts to deposit funds with

and receive the transfers at issue from Sentry and Rye Portfolio in particular.    In addition, Dexia

Banque met and communicated on numerous occasions with Fairfield Greenwich Group ("FGG"),

---

[2] The Dexia Defendants' Motion to Dismiss is located at ECF No. 143 and is referred to herein as the "Dexia Motion" and the RBC-Dexia Defendants' Motion to Dismiss is located at ECF No. 138 and is referred to herein as the "RBC-Dexia Motion" (together, the "Motions").

[3] *Picard v. Fairfield Inv. Fund Ltd.*, *et al.*, Adv. Pro. No. 09-01239 (CGM), ECF No. 286 (Bankr. S.D.N.Y. Aug. 28, 2020).

[4] *Picard v. Tremont Group Holdings, Inc.*, *et al.*, Adv. Pro. No. 10-05310 (CGM), ECF No. 1 (Bankr. S.D.N.Y. Dec. 7, 2010).

[5] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept. 19, 2022) ("*Societe Generale I*"); *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ("*KEB*"); *Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022) ("*Quilvest*"); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022) ("*Societe Generale II*").    To avoid repetition and long string cites, the Trustee has not listed here, and will avoid citing to, all of this Court's recent decisions, but these and the other similar decisions recently entered by the Court all support denial of Defendants' Motions.

a *de facto* partnership with its principal place of business in New York, and other BLMIS feeder

fund executives in New York. These and the other allegations in the AC are more than sufficient

to establish jurisdiction.

Second, the Trustee's incorporation of the Fairfield SAC and the Tremont Complaint is

appropriate under Rules 8(a) and 10(c). Such incorporation represents a practical method for the

Trustee to plead avoidance of the initial transfers to the Feeder Funds, and Defendants can respond

to the allegations just as they would any other paragraph in the AC. The RBC-Dexia Defendants'

contention that incorporation of the Tremont Complaint would result in an "incoherent" pleading

relies on the flawed argument that the Trustee's allegations as to Rye Portfolio's bad faith in the

Tremont Complaint are "contradictory" to the supplementary allegations as to Tremont and its

feeder funds included in the AC (AC ¶¶ 76-148, the "Tremont Supplement").

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. AC ¶ 18.

BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange

Commission (the "SEC") beginning in January 1960. *Id.* ¶ 19. BLMIS purported to operate three

principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii)

an investment advisory business (the "IA Business"). *Id.* ¶ 20. For its IA Business customers,

BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which

involved (a) investing in a basket of common stocks from the S&P 100 Index, (b) buying put

options and selling call options to hedge against price changes in the underlying basket of stocks,

and (c) purchasing U.S. Treasury bills when the money was out of the market. *Id.* ¶¶ 31, 33. In

reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 24-49. On December 11,

2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal

securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.*

¶ 5.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds" (including the Feeder Funds at issue here)—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (U.S. Feb. 28, 2022).  Each Defendant invested in one or more Feeder Funds, which it knew were BLMIS feeder funds.  AC ¶¶ 66, 69, 71-72.  Defendants knowingly invested in BLMIS through other feeder funds as well.  *Id.* ¶ 3 n.3.

## II.    DEFENDANTS AND THEIR INVESTMENTS IN THE FEEDER FUNDS

As illustrated in the diagram below, Defendants consist of two closely-related, overlapping sets of sophisticated financial entities: (1) the Dexia Defendants—Dexia Banque and its 100%-owned subsidiary Dexia Suisse—which were part of the worldwide financial enterprise headed by a non-party formerly known as Dexia S.A.;[6] and (2) the RBC-Dexia Defendants, which were subsidiaries of a joint venture between Defendant Dexia Banque and non-party Royal Bank of Canada.  AC ¶ 4.



---

[6] The Dexia Motion refers to Dexia Banque as BIL and Dexia Suisse as BIL Suisse.

Defendants Dexia Banque, Dexia Suisse, RBC-Dexia Bank, and RBC-Dexia España (now

Banco Inversis) (collectively, the "Fairfield Transferee Defendants") received transfers from

Sentry; each of these Defendants except RBC-Dexia Bank also received transfers from Sigma; and

Defendant RBC-Dexia Trust received transfers from Rye Portfolio. *Id.* ¶ 2, Exs. C, E, H.

Specifically, Defendants received the following subsequent transfers (via the initial transferee(s)

indicated):

| Defendant | Feeder Fund(s) | Transfers |
|---|---|---|
| Dexia Banque | Sentry | $52,331,690 |
| | Sigma | $537,645 |
| Dexia Suisse | Sentry | $2,000,067 |
| | Sigma | $5,758 |
| RBC-Dexia Bank | Sentry | $5,146,594 |
| Banco Inversis as successor to RBC-Dexia España | Sentry | $2,037,173 |
| | Sigma | $1,503,877 |
| RBC-Dexia Trust | Rye Portfolio | $2,433,046 |

The Fairfield Funds were owned, managed, and operated by FGG. AC ¶ 67; *Picard v.*

*Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9

(Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). Sentry was a U.S. dollar-denominated

fund that invested all or substantially all of its assets with BLMIS. AC ¶¶ 2, 159; Fairfield SAC ¶

89. Sigma acted as a foreign currency feeder fund, facilitating euro investments with BLMIS and

investing all of its assets with Sentry. AC ¶¶ 3, 69, 163; Fairfield SAC ¶ 96.

Rye Portfolio, along with other "Rye Select" BLMIS feeder funds (together with Rye

Portfolio, the "Rye Select Funds"), was owned, managed, and operated by New York-based

Tremont Group Holdings, Inc. (together with predecessors and affiliates, "Tremont") out of

Tremont's New York office.  AC ¶ 70; TC ¶¶ 8, 39, 42, 46-51.  The Rye Select Funds invested all or substantially all of their assets with BLMIS.  AC ¶¶ 2, 174; TC ¶¶ 36, 38-39.

Each of the Fairfield Transferee Defendants entered into one or more subscription agreements with Sentry, and each of these Defendants except RBC-Dexia Bank also entered into one or more subscription agreements with Sigma.  AC ¶¶ 63, 68.  In these agreements, the Fairfield Transferee Defendants agreed to New York choice of law, jurisdiction, and forum selection clauses, and affirmed that they had received and read the respective Fairfield Fund's Information Memorandum or Private Placement Memorandum (together, the "PPMs").  *Id*. ¶ 69.  The PPMs disclosed how the services of BLMIS were "essential to the continued operation of" the Fairfield Funds.  *Id*.  The PPMs also disclosed BLMIS's multiple roles as the *de facto* investment manager, broker-dealer, and custodian for the Fairfield Funds and highlighted the numerous U.S. connections inherent in investing in the funds.  *Id*.

Similarly, Defendant RBC-Dexia Trust entered into one or more subscription agreements with Rye Portfolio, in which it affirmed that it had received and read Rye Portfolio's prospectus.  *Id*. ¶ 71.  That prospectus provided essentially the same information as the PPMs, including that Rye Portfolio's assets would be invested with a manager using the SSC Strategy.  *Id*.  The Rye Select Funds' due diligence questionnaires also disclosed such information, including that each fund's investments in U.S. securities would be custodied in New York by a New York investment adviser using the SSC Strategy.  *Id*. ¶ 72.

The Fairfield Transferee Defendants sent all of their Sentry subscription payments to, and received all of their redemption payments from, that fund's New York correspondent account (the "Sentry NY Account").  *Id*. ¶ 74.  Defendant RBC-Dexia Trust sent one of its two Rye Portfolio subscription payments to, and received both of its redemption payments from, that fund's New

6

York bank account (the "Rye Portfolio NY Account"). *Id.* Subscription payments sent by Defendants to the Feeder Funds were deposited into BLMIS's account at JPMorgan Chase Bank in New York. *Id.*

As detailed in the AC, it was each Defendant's practice to use a New York bank account in either its own or its affiliate's name (collectively, the "Defendant NY Accounts")[7] to receive redemptions from Sentry and Rye Portfolio in particular. *Id.* ¶ 73. Based on the Trustee's information to date, each Defendant designated and used a Defendant NY Account(s) to receive a number of redemptions, totaling tens of millions of dollars in the aggregate, and upon information and belief, Defendants used the Defendant NY Accounts for all of their Sentry and Rye Portfolio redemptions.[8] *Id.*

In addition, representatives of Defendant Dexia Banque met in New York with FGG and other BLMIS feeder fund executives—including FGG co-founder Jeffrey Tucker—on multiple occasions in connection with Dexia Banque's Fairfield Funds and other BLMIS feeder fund investments. *Id.* ¶ 65. Dexia Banque also engaged in numerous communications with FGG and other BLMIS feeder fund personnel in New York in connection with these investments, including Tucker and Lauren Ross. *Id.*

RBC-Dexia España filed two customer claims with the Trustee in connection with the BLMIS SIPA liquidation proceeding. *Id.* ¶ 64.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of

---

[7] With respect to one Sentry redemption by Defendant Dexia Banque, Citco Global Custody NV, acting as Dexia Banque's agent, used a correspondent account at HSBC Bank USA in New York. *Id.* ¶ 73.

[8] Because the Trustee has alleged that the Fairfield Transferee Defendants each received Sentry redemptions at a New York bank account, and sent Sentry subscriptions to a New York correspondent account, the Dexia Defendants' assertion that "there is no specific action by [Dexia] Suisse that is alleged to have taken place in the United States" is plainly incorrect. Dexia Motion at 6.

approximately $3 billion. *Id*. ¶ 149. In 2011, the Trustee settled with Sentry. *Id*. ¶ 150. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id*.; *Fairfield Inv. Fund*, 2021 WL 3477479, at *3.

Similarly, the Trustee filed an adversary proceeding against the Rye Select Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $2.1 billion. AC ¶¶ 76, 164. In 2011, the Trustee settled that action, and the settlement (i) required the settling defendants to pay the Trustee $1.025 billion, (ii) provided that the initial transfers to the Rye Select Funds and other Tremont funds were "deemed avoided," and (iii) stated that transfers to subsequent transferee defendants were not recovered with the partial payment by the settling defendants. *Id*. ¶¶ 78, 165.

The Trustee then commenced a number of adversary proceedings against Defendants and others to recover the outstanding stolen customer property. On April 4, 2022, this Court entered a Stipulation and Order in which the parties to this action agreed to make changes to the named defendants (ECF No. 128). On June 30, 2022, with Defendants' consent, the Trustee filed the AC, pursuant to the Stipulation and Order entered on April 12, 2022 (ECF No. 129).

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.")). These pleadings are to be construed in the light most favorable to the plaintiff, resolving all doubts

in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) ("*In re Fairfield Sentry*"). First, the court assesses whether the defendant purposefully established "minimum contacts" with the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ("*Maxam*") (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).[9]

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)) (emphasis in original). Specific jurisdiction, however, does not require "proof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id.* (emphasis added). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Id.* at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque Syz*, 2022 WL 2135019, at *4 (same); *Carige*, 2022 WL 2387522, at *3 (same). Moreover, minimum contacts may be found when a "defendant's allegedly

---

[9] The RBC-Dexia Defendants misstate the requirements for purposeful availment in their Motion, where they assert that "[t]he defendant must 'seek[] out and initiate[] contact with New York, solicit[] business in New York, and establish[] a continuing relationship,'" and "[a]t a minimum, the defendant must 'on his or her own initiative . . . project himself or herself into the state to engage in a sustained and substantial transaction of business.'" RBC-Dexia Motion at 6 (quoting *Hau Yin To v. HSBC Holdings, PLC*, 700 Fed. App'x 66, 67 (2d Cir. 2017)). These types of contacts may be sufficient for New York long-arm jurisdiction, but they are not necessary for personal jurisdiction in all situations.

culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *Banque Syz*, 2022 WL 2135019, at *4; *Carige*, 2022 WL 2387522, at *4; *Societe Generale I*, 2022 WL 4349859, at *5; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

Overall, rather than analyze each contact in isolation, the court must look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly analyze each contact as if it were the defendant's sole contact . . . whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'") (citation omitted).

A.    **Defendants Purposefully Availed Themselves of the Laws and Privileges of Conducting Business in the United States, and the Trustee's Claims Arise Out of or Relate to Such Availment**

As detailed above and below, Defendants had a number of contacts with New York that establish this Court's jurisdiction.  Most significantly, Defendants (1) purposefully targeted the U.S. securities markets by investing in the Feeder Funds, knowing that the funds' assets were managed and custodied by BLMIS in New York; (2) designated and used New York bank accounts to make subscriptions to and receive redemptions from Sentry and Rye Portfolio; and (3) in the case of Dexia Banque, met and communicated with FGG and other BLMIS feeder funds in New York.  Certain of these contacts independently establish jurisdiction.  Based on the totality of these contacts, jurisdiction unquestionably exists.[10]  *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum.").

1.    **Defendants' Knowing and Intentional Investments With BLMIS Through the Feeder Funds Are Sufficient Grounds for Jurisdiction**

Defendants knowingly and intentionally directed tens of millions of dollars to BLMIS in New York through the Feeder Funds in order to invest in the U.S. securities markets.  AC ¶¶ 66, 69, 71-72.  Such activity constitutes purposeful availment of the forum and establishes a *prima facie* showing of jurisdiction over Defendants.  *See, e.g., Carige*, 2022 WL 2387522, at *2; *Societe Generale I*, 2022 WL 4349859, at *3.

---

[10] The RBC-Dexia Defendants assert, without pointing to any specific allegation, that "[t]he Trustee group-pleads that his claims against all Defendants 'arise from business they transacted within New York.'"  RBC-Dexia Motion at 3 (quoting AC ¶ 62).  As detailed in the AC and herein, the Trustee's jurisdiction-related allegations are specific to each Defendant, and the general term "Defendants" is used appropriately as to allegations that apply to all Defendants.

Fairfield Funds investors such as the Fairfield Transferee Defendants were required to affirm in subscription agreements that they received and read the PPMs. The Fairfield Transferee Defendants thus knew that: (i) Sentry invested at least 95% of its assets with BLMIS, and Sigma invested all of its assets with Sentry; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the SEC; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" the Fairfield Funds. AC ¶ 69. Similarly, Defendant RBC-Dexia Trust entered into one or more subscription agreements with Rye Portfolio, and Rye Portfolio's offering documents and due diligence questionnaires disclosed essentially the same information as the PPMs, including that the fund's investments in U.S. securities would be custodied in New York by a New York investment adviser using the SSC Strategy. *Id.* ¶¶ 71-72. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard,* 917 F.3d 85, 105 (2d Cir. 2019).

a.      *BLI* and Recent Decisions of This Court Establish Jurisdiction

Based on a defendant's demonstrated intention to invest with BLMIS through Sentry, Judge Lifland concluded a number of years ago that Feeder Fund investors such as Defendants are subject to personal jurisdiction. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of . . . millions of dollars in Sentry with the specific

goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee executed subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507-08. And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous." *Id.* at 517 ("BLI's investments in Fairfield Sentry did not merely 'end up' in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market."). Moreover, with respect to Rye Portfolio, transferee RBC-Dexia Trust knew it was directing its activity to New York based on, as held by Judge Bernstein, the New York contacts inherent in doing business with the Tremont feeder funds. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*").

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87; *Carige*, 2022 WL 2387522, at *3. In those cases, as here, the Trustee asserted allegations that the ultimate purpose of the feeder fund investments was investment with BLMIS. *See, e.g., Multi-Strategy*, 641 B.R. at 86-87. Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Id.* at 87. This Court has further clarified that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the

13

pre-discovery stage of litigation." *Carige*, 2022 WL 2387522, at *2; *see also, e.g., Lombard*, 2022 WL 2387523, at *2.

As with the foregoing cases, the AC makes clear that Defendants knowingly directed their funds to be invested with New York-based BLMIS and that this was the fundamental purpose of their Feeder Fund investments. AC ¶¶ 66, 69, 71-72. In short, Defendants "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Carige*, 2022 WL 2387522, at *3 (quoting *BLI*, 480 B.R. at 506). As such, the foregoing cases are controlling and resolve Defendants' personal jurisdiction defense without the need for inquiry into their additional U.S. contacts.

The RBC-Dexia Defendants attempt to distinguish *Multi-Strategy*, *Banque Syz*, and other of this Court's decisions by pointing out allegedly unique jurisdictional allegations made in those cases. RBC-Dexia Motion at 6-7. As set forth above, this Court has repeatedly held that such allegations support but are not necessary for jurisdiction over a subsequent transferee defendant. *See, e.g.*, *Carige*, 2022 WL 2387522, at *2. In any event, additional significant contacts are also present here, including, *inter alia*, the use of New York bank accounts and in-person meetings with FGG and other BLMIS feeder fund managers in New York, as addressed further herein.

b.    *Walden* Does Not Save Defendants From This Court's Jurisdiction

Seeking to sidestep *BLI*, the RBC-Dexia Defendants cite *Walden v. Fiore*, 571 U.S. 277 (2014), in support of their argument that their "knowledge that the foreign Sentry, Sigma, and Rye Portfolio Limited funds would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction" (RBC-Dexia Motion at 9), and the Dexia Defendants make substantially the same argument (Dexia Motion at 6-7). However, *Walden* is of "no assistance to Defendant[s]." *Multi-Strategy*, 641 B.R. at 87. The facts and applicable law of *Walden* are significantly different from those here, and do not support Defendants' argument.

The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada. 571 U.S. at 288-89. The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," nor was the officer's seizure of funds predicated in any way on the fact that their intended destination was Nevada. *Id.* at 289. The Court of Appeals applied the "effects" test applicable in intentional tort cases and found jurisdiction despite the above facts, because the officer had seized money in Georgia from a Nevada resident and therefore the seizure would have some foreseeable effect in Nevada. *Id.* at 290-91. The Supreme Court disagreed, finding that the defendant had "formed no jurisdictionally relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff resided in Nevada. *Id.* at 289-91. In so holding, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *Id.* at 284, 289 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

This case is nothing like *Walden*. As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework (not the "effects" test), a concept that the Court in *Walden* did not apply. Nor is the police officer's lack of "any jurisdictionally relevant contacts with Nevada," *Walden,* 571 U.S. at 289, remotely analogous to Defendants' intentionally directing tens of millions of dollars in investments over the course of many years to New York-based BLMIS through feeder funds formed for this express purpose.

The Dexia Defendants contend that the Trustee's position "improperly ignores the corporate forms" separating the Dexia Defendants and the Fairfield Funds, because the Fairfield Funds invested their own property with BLMIS, whereas the Dexia Defendants were merely shareholders of the funds. Dexia Motion at 7. The Dexia Defendants' attempt to characterize

15

themselves as passive shareholders uninvolved in the decision to invest with BLMIS in New York, rather than parties that deliberately and purposefully targeted the forum, is the same "disingenuous" argument the Court rejected in *BLI*. The Trustee is not arguing that every investor should automatically be subject to jurisdiction in all forums where its investment company happens to do business, or tying jurisdiction to foreseeability. Rather, under the facts of *this* case—where Defendants have entered into subscription agreements expressly indicating their intent to direct custody and control over all of their funds to a specific U.S. broker-dealer in order to knowingly profit from the U.S. securities markets—such defendants have purposefully availed themselves of the laws and protections of the United States.

For the same reason, the Court should reject the RBC-Dexia Defendants' argument that "the Trustee inappropriately conflates the RBC-Dexia Defendants' investment in the Fairfield Funds and Rye Portfolio Limited with a non-existent direct investment in BLMIS." RBC-Dexia Motion at 7. The fact that Defendants invested into BLMIS through the Feeder Funds rather than directly does not defeat jurisdiction—Defendants' contacts with New York were "intertwined with [their] transactions or interactions with the plaintiff or other parties," *Walden*, 571 U.S. at 286, and thus support jurisdiction.[11]

c.    RBC-Dexia España's Customer Claims Support Jurisdiction

RBC-Dexia España, the predecessor of Defendant Banco Inversis, filed two customer claims in this SIPA liquidation proceeding, in connection with investments it made in BLMIS feeder funds. AC ¶ 64. The filing of these claims in BLMIS's SIPA liquidation proceeding further

---

[11] The Court should also reject the RBC-Dexia Defendants' argument that *Walden* applies here because there is no "meaningful" physical entry by the RBC-Dexia Defendants into the forum. RBC-Dexia Motion at 9 (quoting *Walden*, 571 U.S. at 285). The law is clear that physical entry is not a requirement. *See Walden*, 571 U.S. at 285. In any event, the Trustee has alleged physical entry here, by Defendants' use of New York bank accounts and by Dexia Banque's attending meetings in New York.

evidences RBC-Dexia España's understanding that investing with BLMIS in New York was the whole point of doing business with a feeder fund. These customer claims clearly are additional New York contacts that are part of the totality of circumstances supporting jurisdiction. *KEB*, 2022 WL 4371908, at *4 ("KEB's customer claims are another contact demonstrating that KEB has purposefully availed itself to this Court's jurisdiction.") (citing *Banque Syz*, 2022 WL 2135019, at *4).

### 2. Defendants' Purposeful Use of New York Bank Accounts Establishes Jurisdiction

This Court further has jurisdiction because Defendants purposefully used the New York banking system to subscribe into and redeem from Sentry and Rye Portfolio. As this Court has held, "by alleging that Defendants used a New York bank account, the Trustee has met his burden of alleging jurisdiction over each transfer received through that New York bank account." *Societe Generale I*, 2022 WL 4349859, at *6.

Courts have often held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG New York Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding jurisdiction under New York long-arm statute based solely on defendants' use of a New York account to receive fraudulent conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on defendant's use of New York accounts to facilitate alleged fraud). In this SIPA liquidation proceeding, this Court has similarly found jurisdiction where initial and subsequent transferee defendants invested through and received transfers from U.S. bank accounts.

*See Societe Generale I*, 2022 WL 4349859, at *4 ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *BNP*, 594 B.R. at 191 (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New York bank account); *see also Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) ("*Igoin*") (finding jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

Based on the foregoing case law, Defendants' uses of the Defendant NY Accounts, the Sentry NY Account, and the Rye Portfolio NY Account, described *supra*, alone are sufficient to confer personal jurisdiction over Defendants. That any of the accounts were or could be correspondent does not change the analysis.[12] Courts have held that the use of a correspondent bank account is also sufficient to establish personal jurisdiction. In the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012); *see also Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) ("*Arcapita*") (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same). All that is necessary for "purposeful" use is that it was not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39

---

[12] Defendants label the Defendant NY Accounts as "correspondent" (*see* RBC-Dexia Motion at 7-12; Dexia Motion at 8-9). But the AC does not allege that they were, and this Court is not bound to accept Defendants' unsupported characterization of the accounts on a motion to dismiss.

(finding jurisdiction where use of correspondent account was not "coincidental," and distinguishing case where defendant passively received funds due entirely to another party's actions).[13]

Here, the Defendant NY Accounts designated and used by Defendants for redemptions were in Defendants' own names or their affiliates' names, making the purposeful use of such accounts obvious. Defendants' use of the Sentry NY Account and the Rye Portfolio NY Account was also purposeful because Defendants agreed and intended to use those New York accounts. *See Esso Expl. & Prod. Nigeria Ltd.,* 397 F. Supp. 3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]."). That Sentry's PPMs and Rye Portfolio's offering documents required subscribers to use the New York accounts is also irrelevant, because Defendants voluntarily entered into the subscription agreements.[14] *See In re Arcapita Bank B.S.C.(C)*, No. 21 Civ. 8296 (AKH), 2022 WL 1620307, at *6 (S.D.N.Y. May 23, 2022) (defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *In re Motors Liquidation Co.,* 565 B.R. 275, 288-89

---

[13] Because purposeful use is pled here, the Trustee's action does not raise the RBC-Dexia Defendants' policy concern that "[c]onferring jurisdiction over foreign entities through their *incidental* use of U.S.-based accounts to effectuate international transactions would have unintentional but significant ramifications." RBC-Dexia Motion at 11 (citing cases; emphasis added).

[14] It makes no difference if a Citco entity chose to use the Sentry NY Account on behalf of Sentry, as various Citco entities acted as FGG's agents. *See Igoin*, 525 B.R. at 884 (conduct of agent is attributed to principal for purposes of jurisdictional analysis).

(Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).[15]

Citing several of the same cases, the RBC-Dexia Defendants argue that "a foreign defendant is not subject to jurisdiction if it sent or received payment in New York pursuant to a contract executed outside of New York" (RBC-Dexia Motion at 10-12, 10 n.7 (citing cases)), while the Dexia Defendants argue that their use of New York correspondent accounts is insufficient to establish jurisdiction (Dexia Motion at 9 (citing cases)).   Judge Bernstein in *BNP* already determined that such cases are not relevant to the Trustee's actions against investors in BLMIS feeder funds.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").  Unlike the cases Defendants cite, this action is not a dispute between two parties about services owed under a foreign contract.[16]  Rather, it is an action brought by a SIPA Trustee in a SIPA liquidation proceeding to recover fraudulent transfers from investors whose transfers of funds to and from New York were for the sole purpose of investing with a New York-based broker-dealer purportedly trading U.S. securities.  *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

---

[15] It is for similar reasons irrelevant if the Fairfield liquidators admitted that the RBC-Dexia Defendants were required to maintain a non-U.S. account with a foreign bank to invest in and to receive redemptions from the Fairfield Funds. RBC-Dexia Motion at 13.

[16] *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS) (SN), 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 Fed. App'x 66, *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 166, 169-70 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018), *Rosenblatt v. Coutts & Co. AG*, No. 17-cv-3528 (AKH), 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017), *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016), *Roper Starch Worldwide, Inc. v. Reymer & Assocs*, 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998), and *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1323-24 (S.D. Fla. 2010), cases involving forum contacts incidental to foreign agreements between the litigants, are therefore inapposite.

Therefore, contrary to the RBC-Dexia Defendants' argument, it is also of no consequence the AC does not allege that they "entered into any contracts with BLMIS or maintained an account with BLMIS in New York." RBC-Dexia Motion at 13.

Curiously, the RBC-Dexia Defendants also argue that the Trustee "only alleges" that they "'used an account' in New York" but that he needed to allege something more, such as that they "solicited business in New York or performed functions relating to the funds in New York." RBC-Dexia Motion at 12-13 (citing *Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633, 639-40 (E.D.N.Y. 1963)). In *Weinberg*, the court declined to find jurisdiction merely based on defendant's maintenance of New York bank accounts. 215 F. Supp. at 639-40. Accordingly, *Weinberg* does not stand for the proposition that a defendant's use of a New York account is insufficient on its own for jurisdiction, and as set forth *supra*, such use of New York accounts here is sufficient. *Weinberg* also does not support Defendants' argument that additional activities such as soliciting business in New York are required, and as set forth in n.9 and n.11 above, they are not.

### 3.    The Forum Selection and Choice of Law Clauses in the Fairfield Funds' Subscription Agreements Are Strong Jurisdictional Contacts

The Fairfield Transferee Defendants' subscription agreements with the Fairfield Funds—in which they submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law—further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15. The Fairfield Transferee Defendants argue that their consent to jurisdiction is inapplicable in this action because the Trustee, as a non-party to the subscription agreements, cannot invoke the terms of the agreements, and because Judge Bernstein held in the Fairfield Chapter 15 proceedings that the consent provision did not apply to the liquidators' claims. RBC-Dexia Motion at 14-15; Dexia Motion at 4. But the Trustee is not

arguing jurisdiction based on the Fairfield Transferee Defendants' consent.[17]  Rather, as this Court

found in *BLI*, the Fairfield Transferee Defendants' agreements to New York venue, jurisdiction,

and law further show that these Defendants purposefully directed their activities towards New

York and provide another strong jurisdictional contact with New York.  480 B.R. at 517; *see also*

*Burger King*, 471 U.S. at 482 ("Although such a [choice of law] provision standing alone would

be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the

forum State and the reasonable foreseeability of possible litigation there.").

### 4.    Dexia Banque Had Significant Other Contacts With New York in Connection With Its Fairfield Funds Investments

As detailed in the AC, Dexia Banque engaged in repeated direct contacts with the forum

related to its investments in the Fairfield Funds and other BLMIS feeder funds.  AC ¶ 65.  Dexia

Banque representatives (i) met in New York with FGG and other BLMIS feeder fund executives

on multiple occasions, and (ii) had numerous communications with FGG and other BLMIS feeder

fund personnel in New York.  *Id.*

These contacts with New York related to Dexia Banque's Fairfield Funds investments are

a sufficient basis for personal jurisdiction.  *See*, *e.g.*, *Golden Archer Invs., LLC v. Skynet Fin. Sys.*,

No. 11-3673 (RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications

including emails, phone calls, and video conferences with company in New York subjected

---

[17] As such, Judge Bernstein's decision, where the Fairfield liquidators unsuccessfully argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8-12 (S.D.N.Y. Aug. 24, 2022).  Moreover, although not necessary to decide the Motions, the Court should reject the RBC-Dexia Defendants' unsupported assertion that Judge Bernstein's decision is "law of the case" in this action.  RBC-Dexia Motion at 14 n.9.  The Trustee is not in privity with the liquidators, and the Fairfield Chapter 15 proceedings and this SIPA liquidation proceeding are separate cases.  *See*, *e.g.*, *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (law of the case applies only to "subsequent stages in the same case") (citation and quotation marks omitted).

defendant to personal jurisdiction). This Court has also repeatedly held that contacts of the type alleged here support jurisdiction. *See, e.g., Lombard*, 2022 WL 2387523, at *3-4 (crediting, *inter alia*, allegation that defendant communicated with FGG employees in New York); *Parson*, 2022 WL 3094092, at *4 (crediting allegations that defendant traveled to the U.S. on multiple occasions "to meet with FGG regarding the investments at issue in this case"); *Quilvest*, 2022 WL 4493184, at *3 (credit allegations that "[a]ffiliates of the Defendant were in frequent communication with Fairfield Greenwich Group employees at Fairfield's offices in New York to discuss investment with Fairfield Sentry and met with Fairfield Greenwich Group's partner in New York on [Defendant]'s behalf"); *Societe Generale II*, 2022 WL 6237071, at *4 (crediting various allegations regarding defendants' communications with New York, including that defendants "were in frequent communication with Fairfield Greenwich Group employees at Fairfield's offices in New York to discuss investment with Fairfield Sentry and Madoff"). This Court has repeatedly noted that "'[a]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *E.g., Banque Syz*, 2022 WL 2135019, at *4 (quoting *Walden*, 577 U.S. at 285).

The Dexia Defendants nevertheless contend that the foregoing allegations should be disregarded as "conclusory" because the AC does not sufficiently detail the timing or substance of the meetings and communications. Dexia Motion at 5-6. The Dexia Defendants fail to cite any authority for this view, and ignore the fact that the allegations specify that the meetings and communications began at least as early as 2005, involved BLMIS feeder fund personnel including FGG co-founder Jeffrey Tucker, Access International Advisors co-founder Thierry Magon de La Villehuchet, and FGG's Lauren Ross, and explicitly state that such meetings and communications

23

were "in connection with" Dexia Banque's BLMIS feeder fund investments.  AC ¶ 65.  Such factual allegations are plainly sufficient under the case law cited above and must be accepted as true now.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts must accept factual allegations as true though may reject "threadbare recitals of a cause of action's elements, supported by mere conclusory statements"); *Parson*, 2022 WL 3094092, at *2 ("At the pre-discovery stage, the allegations need not be factually supported.").

     **5.**     **Defendants' Contacts With the Forum Are Sufficiently Related to the Trustee's Claims**

This Court's recent decisions and other applicable case law make clear that the Trustee's claims "arise out of or relate to" Defendants' contacts with the United States.  As the Supreme Court recently held, the "relate to" test does not require a causal relationship.  *See Ford Motor*, 141 S. Ct. at 1026-30.  Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that claim is not completely "unmoored" from transaction).

This Court has already found that the Trustee's recovery actions against defendants similarly situated to Defendants are "directly related to [their] investment activities with Fairfield and BLMIS."  *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4.  Here, the Trustee is seeking to recover the very transfers that came through the New York bank accounts discussed above, and thus—contrary to the RBC-Dexia Defendants' arguments (RBC-Dexia Motion at 10)— Defendants' uses of these New York accounts are integral to the Trustee's claims.  *See, e.g., HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts"); *Picard v. Chais (In re BLMIS)*, 440

B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding that defendant's contacts with the forum and the Trustee's claims are "inextricably related").

Defendants contend that their Feeder Funds investment activities, and associated meetings and communications, are irrelevant, because the Trustee's recovery claim "relates to and arises out of" their transfers. RBC-Dexia Motion at 8; *see also* Dexia Motion at 5-6. The RBC-Dexia Defendants also contend that their subscription agreements are unrelated to the Trustee's claims. RBC-Dexia Motion at 14-15. But consistent with decisions by this Court, the Trustee's claims are directly related to Defendants' investment activities, because Defendants could not have received the transfers at issue without first investing in the Feeder Funds and entering into the related subscription agreements. *See, e.g., Carige*, 2022 WL 2387522, at *4; *Parson*, 2022 WL 3094092, at *5.[18]

The Dexia Defendants' argument that "the Trustee must establish personal jurisdiction with respect to each individual transfer" is also unavailing. Dexia Motion at 5-6 n.1 (citing *BNP*, 594 B.R. at 190). Courts have personal jurisdiction over *defendants*, not *transfers*. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316. Courts must assess a defendant's contacts with the forum, not a transfer's. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 334 (2d Cir. 2018) (quoting *Walden*, 571 U.S. at 283-84, for proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"); *see also BNP*, 594 B.R. at 189 (quoting same). Provided the Court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the Court may

---

[18] The Court should also reject the Dexia Defendants' argument that "[t]he Trustee's claims arise from relatively small redemptions from the Fairfield Sentry and Fairfield Sigma funds, the funding for which is not alleged to have come from Fairfield Sentry's BLMIS account." Dexia Motion at 7-8. The Dexia Defendants fail to cite any authority in support of their suggestion that relatedness should be evaluated based on the size or amount of redemptions (which in any event total approximately $55 million), or based on the tracing of customer property (which the Dexia Defendants do not contest in their Motion and which the Trustee in any event alleges sufficiently).

adjudicate any claims, so long as they are sufficiently related to those contacts. *See Ford Motor*, 141 S. Ct. at 1026-28, 1032. This is precisely what the Court did in *BNP*. The Court did not look at each transfer to determine jurisdiction. The Court assessed each defendant, focused on the overall relationship with the initial transferees, and determined it had jurisdiction. *BNP*, 594 B.R. at 191 (finding jurisdiction for "any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds"); *see also KEB*, 2022 WL 4371908, at *5 ("By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.").

It is also of no consequence that the Fairfield liquidators argued in their chapter 15 cases that Sentry's redemption payments to investors are foreign transactions. RBC-Dexia Motion at 8-9, 11 n.8. As noted at n.17 *supra*, the Trustee is not in privity with the Fairfield liquidators, and the characterization is in any event at odds with the Second Circuit's decision on extraterritoriality in this SIPA liquidation proceeding, which concluded that the Trustee's subsequent transfer actions—including this one—seek the recovery of domestic transfers. *See In re Picard*, 917 F.3d at 96-100.

### B.    The Exercise of Personal Jurisdiction Over Defendants Is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force

the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted). Defendants do not specifically challenge reasonableness, but merely assert that jurisdiction would be unreasonable based on their foregoing arguments. RBC-Dexia Motion at 15-16; Dexia Motion at 9-10.

This is not that "rare" case, and the burden on Defendants is minimal. *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). Just as this Court found in numerous other adversary proceedings in this SIPA liquidation proceeding, the exercise of jurisdiction over Defendants is reasonable because each "[d]efendant is not burdened by this litigation" as it "has actively participated in this Court's litigation for over ten years," and is "represented by highly competent U.S. counsel." *E.g., Banque Syz*, 2022 WL 2135019, at *5. Moreover, this "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz* at *5; *see also In re Picard*, 917 F.3d at 103 (noting that the United States has a "compelling interest in allowing domestic estates to recover fraudulently transferred property"). Accordingly, this Court's exercise of jurisdiction over Defendants is more than reasonable.

### C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery because the Trustee has made a threshold showing of jurisdiction, and "additional facts to establish personal jurisdiction . . . lie within [the defendant's] knowledge." *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a *prima facie* case for jurisdiction to obtain jurisdictional discovery); *see also Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16,

2009) ("Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction."). The Trustee has shown how Defendants, *inter alia*, knowingly and purposely subscribed with the Feeder Funds for the purpose of investing in the U.S. securities markets, and repeatedly used U.S. bank accounts to transact business with the Feeder Funds. *See supra* pp. 11-26. At a minimum, these facts establish a "threshold showing" of jurisdiction. *Kiobel*, 2009 WL 3817590, at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## II.   THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE INITIAL TRANSFERS

The RBC-Dexia Defendants argue that the Court should reject the AC's incorporation by reference of the Fairfield SAC because "[c]ourts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action." RBC-Dexia Motion at 18. This Court has repeatedly rejected this argument, holding that "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action," and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)." *See, e.g., KEB*, 2022 WL 4371908, at *7 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010); *In re Terrestar Corp.*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)); *Societe Generale II*, 2022 WL 6237071, at *7 (same).[19] The RBC-

---

[19] The RBC-Dexia Defendants criticize *Geiger*, arguing that adversary proceedings within the same bankruptcy case should be treated as separate actions based on the language of Federal Rule of Bankruptcy Procedure 1334. RBC-Dexia Motion at 19 n.11. The RBC-Dexia Defendants cite no authority for this contention, and this Court should continue to reject it. Bankruptcy Rule 1334 addresses subject matter jurisdiction, and it provides no barrier to or rationale for rejecting incorporation of pleadings by reference across adversary proceedings. *See also Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case.").

Dexia Defendants' argument also conflicts with the prior opinion in *In re Madoff Sec.,* in which the District Court had already found sufficient the Trustee's incorporation by reference of the then-operative Fairfield complaint. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 501 B.R. 26, 36 (S.D.N.Y. 2013); *see also, e.g., Multi-Strategy*, 641 B.R. at 91 (following "the district court's instruction").[20]  Moreover, even if this Court were to find that the adversary proceedings are separate actions for purposes of Rule 10(c), the Court still can permit incorporation by reference, as the District Court and other federal courts have done in appropriate circumstances. *See*, *e.g.*, *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted).

The RBC-Dexia Defendants also argue that the AC violates Rule 8 because it incorporates the entire Fairfield SAC and does not specify the relevant allegations.  RBC-Dexia Motion at 19-22 (citing cases).  The cases cited by the RBC-Dexia Defendants—where incorporation led to confusion and a lack of notice of the claims asserted—are inapposite.[21]  Here the Trustee references only one other document—the Fairfield SAC (AC ¶ 153)—and the incorporation is straightforward and its purpose is obvious. *See, e.g., KEB*, 2022 WL 4371908, at *7 (confusion "is not a concern in these proceedings" because defendant "routinely follows what is happening on a proceeding-wide basis"); *Societe Generale II*, 2022 WL 6237071, at *7 (same).[22]  In any event, the AC does

---

[20] The cases cited by the RBC-Dexia Defendants, which rejected incorporation of pleadings because the pleadings were from other actions, are thus inapposite. RBC-Dexia Motion at 18-19 (citing cases).

[21] Several of the cases are further distinguishable because plaintiffs there were attempting to add brand new claims or defenses. *See Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014); *Davis v. Bifani*, No. 07-cv-00122 (MEH) (BN), 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010); *Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461-66 (E.D.N.Y. 2007).

[22] The RBC-Dexia Defendants contend that many of the Fairfield SAC's allegations "have nothing to do with the claim in this Adversary Proceeding" (RBC-Dexia Motion at 21), but this Court has already found that the Fairfield SAC as a whole plausibly alleges the avoidability of the Sentry initial transfers. *Fairfield Inv. Fund*, 2021 WL

refer to the specific Fairfield SAC paragraphs of particular relevance.  AC ¶ 153 (citing Fairfield

SAC ¶¶ 1-10, 79-313, 315-16).  And regardless, this Court may take judicial notice of its decision

that the Fairfield SAC sufficiently alleges avoidability of the BLMIS initial transfers.  *See Fairfield*

*Inv. Fund*, 2021 WL 3477479, at *7.

With respect to the AC's incorporation of the Tremont Complaint, the RBC-Dexia

Defendants assert these same meritless arguments as to incorporation.  RBC-Dexia Motion at 22.

In addition, the RBC-Dexia Defendants raise the illusory argument that the Tremont Supplement's

allegations as to Tremont's knowledge of fraud "contradict" the Tremont Complaint, rendering the

AC an "incoherent" pleading that violates Rule 8(a).[23]  RBC-Dexia Motion at 17-18, 22-23.

However, the RBC-Dexia Defendants fail to cite to a single conflicting allegation.[24]  Far from

contradicting the Tremont Complaint, the Tremont Supplement builds upon the Tremont

Complaint by adding, for example, allegations that Tremont was not confronted with a fraud

warning from just one investor but was consistently confronted with such warnings from a host of

investors and others and that despite this, Tremont routinely and intentionally exempted BLMIS

from its rigorous due diligence requirements.  *See, e.g.*, AC ¶¶ 82-94 (Tremont investors and other

third parties repeatedly raised BLMIS trading impossibilities, indicia of fraud, and fraud warnings

---

3477479, at *4; *see also KEB*, 2022 WL 4371908, at *8 (concluding that "[t]he Trustee has to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable").

[23] The Trustee filed the Tremont Complaint in 2010, and the case settled in 2011.  AC ¶¶ 80, 82.  The Tremont Complaint alleged that Tremont and its feeder funds knew or should have known of Madoff's fraud.  TC ¶¶ 10, 15. In 2013, the District Court established the actual knowledge exception to the application of 11 U.S.C. § 546(e).  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013).  In light of that decision and because the Tremont case is closed, the Trustee has supplemented the Tremont Complaint with the Tremont Supplement that provides further support for Tremont's actual knowledge. Although Section 546(e) is not implicated in this case (as the Rye Portfolio transfers occurred during the two years prior to the BLMIS bankruptcy), the Trustee added the Tremont Supplement to the AC to provide consistency across cases as to Tremont's bad faith.

[24] This is similar to assertions made by subsequent transferees in *Fairfield Inv. Fund* that an earlier complaint contradicted allegations of actual knowledge in a later amended complaint.  *See, e.g., Fairfield Inv. Fund*, Adv. Pro. No. 09-01239, ECF No. 305 at 33.  There, this Court nonetheless found that the Trustee had sufficiently pled the Fairfield funds' actual knowledge.  *See* 2021 WL 3477479, at *4-7.

with Tremont, including the possibility BLMIS was a Ponzi scheme), ¶¶ 97-102 (Tremont's failure

to perform meaningful due diligence on BLMIS was part of an intentional practice of exempting

BLMIS from its due diligence standards and prohibiting its employees from asking key questions).

The one case the RBC-Dexia Defendants cite, *Rieger v. Drabinsky (In re Livent, Inc. Noteholders*

*Sec. Litig.)*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001), does not support their argument.  There, the

pleadings included blatantly contradictory allegations that plaintiffs had and did not have

knowledge of facts essential to their fraud claim.  *See id.* at 441.  *Rieger* is also the rare case where

the contradictory allegations were as to plaintiffs' own state of mind.[25]

Unable to identify any actual contradiction, the RBC-Dexia Defendants argue that the

Tremont Complaint and Tremont Supplement allege "contradictory levels of knowledge of Rye

Portfolio Limited that could impact the viability of the Trustee's claims."  RBC-Dexia Motion at

23.  But there is nothing contradictory about the legal theories in the Tremont Complaint and in

the AC, or the allegations that support those theories.  The Tremont Complaint pleads inquiry

notice and the Tremont Supplement pleads actual knowledge, each of which is just a different

standard of bad faith.[26]  *See, e.g., Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.),*

Adv. Pro. No. 18-50489 (CSS), 2022 WL 2240122, at *21 (Bankr. D. Del. June 22, 2022).

Moreover, even if they were inconsistent—which they are not—this is precisely what Rule 8

---

[25] Typically, even where there is some tension between allegations in a pleading and an amended pleading, courts read the latter as a permissible clarification and refinement of the former. *See, e.g., Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) (accepting allegations because "[t]he changes between the complaint and amended complaint are, when taken as a whole, not 'blatant' or 'directly contradict[ory],' and can be described as clarifying but, at most, as inconsistent") (citation omitted); *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448 (JGK), 2005 WL 2385854, at *12 (S.D.N.Y. Sept. 26, 2005) (plaintiffs' amended pleadings added "much more precise" fraud allegations that "resolved" concerns raised by court's prior opinion) (citation omitted); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261 (JS) (AKT), 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (noting that "there are valid reasons why a plaintiff would amend a complaint in a contradictory fashion," including "acquir[ing] new information through discovery, or its own investigation, that fundamentally alters its theory of the case").

[26] Moreover, by pleading inquiry notice, the Tremont Complaint does not purport to be limiting the extent of Tremont's actual knowledge.

permits: the pleading of two different theories with inconsistent allegations in the alternative. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."), 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95-96 (2d. Cir 1994) (explaining that Rule 8 allows a plaintiff to plead inconsistently and that "[t]he inconsistency may lie either in the statement of the facts or in the legal theories adopted") (citation omitted); *Adler v. Pataki*, 185 F.3d 35, 41 (2d. Cir 1999) ("[Rule 8] offers sufficient latitude to construe separate allegations in a complaint as alternative theories . . ."); *Maxus*, 2022 WL 2240122, at * 45.[27]

Together, the Tremont Complaint and Tremont Supplement allege that Tremont knew numerous facts collectively giving rise to a plausible inference of Tremont's (and Rye Portfolio's) actual knowledge and facilitation of the fraud (though the Court need not reach this determination, as the Rye Portfolio transfers are two-year transfers and the actual knowledge exception to Section 546(e) is not at issue). Accordingly, for multiple reasons, none of the RBC-Dexia Defendants' arguments provide a rationale for contesting the incorporation of the Tremont Complaint into the AC.

Alternately, if the Court determines that incorporation of either the Fairfield SAC or the Tremont Complaint is improper, the Trustee respectfully requests the opportunity to replead.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests the Court deny the Motion.

---

[27] By contrast, the case the RBC-Dexia Defendants cite as to inconsistent pleading, *Dozier v. Deutsche Bank Tr. Co. Americas*, No. 09 Civ. 9865 (LMM), 2011 WL 4058100, at *4 (S.D.N.Y. Sept. 1, 2011), does not involve alternative theories, only an effort by plaintiff to introduce contradictory facts in an amended pleading after its complaint had been dismissed.

Dated:  November 1, 2022
       New York, New York

/s/ Howard L. Simon

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Alan D. Lawn
Email: alawn@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*