**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
SECURITIES INVESTOR PROTECTION      :
CORPORATION,                        :
                                    :
          Plaintiff-Applicant,      :
                                    :          SIPA Liquidation
          v.                        :
                                    :          No. 08-01789 (CGM)
BERNARD L. MADOFF INVESTMENT        :
SECURITIES LLC,                     :          (Substantively Consolidated)
                                    :
          Defendant.                :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re                               :
                                    :
BERNARD L. MADOFF,                  :
                                    :
          Debtor.                   :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IRVING H. PICARD, Trustee for the   :
Liquidation of Bernard L. Madoff    :
Investment Securities LLC,          :          Adv. Pro. No. 10-05345 (CGM)
                                    :
          Plaintiff,                :          **ORAL ARGUMENT**
                                    :          **REQUESTED**
          v.                        :
                                    :
CITIBANK, N.A., CITICORP NORTH      :
AMERICA, INC., AND CITIGROUP        :
GLOBAL MARKETS LIMITED,             :
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE CITI DEFENDANTS' MOTION FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT .................................................................. 1

BACKGROUND ........................................................................................ 5

    A.    The Trustee Seeks To Recover From CGML $100 Million It Received From Fairfield Sentry In Connection With A CGML Swap ............................................... 5

    B.    The Trustee Seeks To Recover From Citibank Money It Received From Prime Fund As Repayment On A Loan ................................................................. 6

    C.    The Bankruptcy Court's Decision ............................................ 6

QUESTIONS PRESENTED ........................................................................ 8

ARGUMENT .............................................................................................. 8

    I.    The Bankruptcy Court Erred In Concluding That The Trustee Adequately Alleged Actual Fraudulent Intent As To The Relevant Initial Transfers .......................................................... 8

        A.    The Ponzi Scheme Presumption Is Extra-Statutory And Improper ................................................. 9

        B.    The Trustee Has Alleged No "Badges Of Fraud" For The Relevant Initial Transfers ...................... 12

    II.    The Bankruptcy Court Erred In Concluding That The Initial Transfer For The Prime Fund Loan Repayment Is Avoidable .............................................. 14

    III.    Leave To Appeal Should Be Granted ...................................... 18

CONCLUSION ........................................................................................... 23

CERTIFICATE OF COMPLIANCE ............................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

11 U.S.C. § 546(g) ................................................................... 2, 5

11 U.S.C. § 548 ................................................................... *passim*

11 U.S.C. § 550(a) ................................................................... 1, 2, 8

28 U.S.C. § 158(a) ................................................................... 18, 19

28 U.S.C. § 1292(b) ................................................................... 19

Fed. R. Bankr. P. § 8013(f) ........................................................... 24

Fed. R. Bankr. P. § 8015(g) ........................................................... 24

## Cases

*Adelphia Recovery Trust v. Bank of America N.A.*,
No. 03 MDL 1529, 2007 WL 2585065 (S.D.N.Y. Sept. 5, 2007) .................. 19

*Ades-Berg Inv. v. Breeden (In re The Bennett Funding Grp.)*,
439 F.3d 155 (2d Cir. 2006) ............................................................. 11

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd* 264 B.R. 303 (S.D.N.Y. 2001)    10

*Bear, Stearns Sec. Corp. v. Gredd*,
275 B.R. 190 (S.D.N.Y. 2002) ........................................................... 15

*Boston Trading Grp. Inc. v. Burnazos*,
835 F.2d 1504 (1st Cir. 1987) ........................................................... 10

*Capitol Recs., LLC v. Vimeo, LLC*,
972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..................................... 20, 21, 22

**Page(s)**

*Daly v. Deptula* (*In re Carrozzella & Richardson*),
286 B.R. 480 (D. Conn. 2002) ......................................................... 9, 11

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
No. 01-16034,  2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ................... 19, 21, 22

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*,
No. 21-cv-10316 (LAP), No. 21-cv-10334 (LAP), 2022 WL 3910679
(S.D.N.Y. Aug. 31, 2022) ........................................................... 18, 19

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012) ............................................. 20

*Finn v. Alliance Bank*,
860 N.W.2d 638 (Minn. 2015) ...................................................... 9

*Geltzer v. Barish (In re Geltzer)*,
502 B.R. 760 (S.D.N.Y. 2013) ...................................................... 13

*Ginx, Inc. v. Soho All.*,
720 F. Supp. 2d 342 (S.D.N.Y. 2010) ............................................. 17

*In re Adelphia Commc'ns Corp.*,
333 B.R. 649 (S.D.N.Y. 2005) ...................................................... 19

*In re BLMIS*,
654 F.3d 229 (2d Cir. 2011) ......................................................... 7, 18

*In re Harris*,
464 F.3d 263 (2d Cir. 2006) (Sotomayor, J.) .................................... 4

*In re Lloyd's Am. Tr. Fund Litig.*,
No. 96 CIV. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ..... 22

*In re McCann, Inc.*,
318 B.R. 276 (Bankr. S.D.N.Y. 2004) ............................................. 15

*In re Old CarCo LLC*,
435 B.R. 169 (Bankr. S.D.N.Y. 2010) ............................................. 16

**Page(s)**

*In re WorldCom, Inc.*,
No. 1:08-cv-10354-RJH, 2009 WL 2215296 (S.D.N.Y. July 23, 2009)........    19

*Ivey v. First-Citizens Bank & Tr. Co. (In re Whitley)*,
Bankr. No. 10-10426, 2014 WL 6910837 (Bankr. M.D.N.C. Dec. 8, 2014),
*aff'd*, 539 B.R. 77 (M.D.N.C. 2015), *aff'd*, 848 F.3d 205 (4th Cir. 2017).....    15

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
260 B.R. 343 (Bankr. W.D.N.Y. 2001), *aff'd* 2002 WL 32500567
(W.D.N.Y. June 21, 2002) ...............................................................    9

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*,
296 F. Supp. 3d 662 (S.D.N.Y. 2017) ..............................................    20

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2d Cir. 1993)...............................................................    16

*Pereira v. WWRD US, LLC (In re Waterford Wedgwood USA, Inc.)*,
500 B.R. 371 (Bankr. S.D.N.Y. 2013)..............................................    16

*Picard v. Citibank, N.A.*,
12 F.4th 171 (2d Cir. 2021) ...............................................  9, 10, 11, 21

*Picard v. Lustig (In re BLMIS)*,
568 B.R. 481 (Bankr. S.D.N.Y. 2017)..............................................    18

*Picard v. Tremont Grp. Holdings, Inc.*,
No. 10-5310 (Bankr. S.D.N.Y. Dec. 7, 2010) ..................................    6

*Pioneer Liquidating Corp. v. San Diego Tr. & Savings Bank (In re Consol. Pioneer Mortg. Entities)*,
211 B.R. 704 (S.D. Cal. 1997), *aff'd in part, rev'd on other grounds* ...........    15

*Salomon v. Kaiser (In re Kaiser)*,
722 F.2d 1574 (2d Cir. 1983)...........................................................    12, 14

iv

**Page(s)**

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
505 B.R. 135 (S.D.N.Y. 2013).......................................................... 2, 5

*Sharp Int'l Corp. v. State Street Bank & Tr. Co. (In re Sharp)*,
403 F.3d 43 (2d Cir. 2005)........................................................... 8, 12, 13

*Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*,
284 B.R. 355 (Bankr. S.D.N.Y. 2002)............................................ 16

*Tantaros v. Fox News Network, LLC*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020) ............................................ 20

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
521 F. Supp. 3d 265 (E.D.N.Y. 2021) ............................................ 22

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006)........................................... 9, 11, 12

*Welt v. Publix Super Markets, Inc. (In re Phoenix Diversified Inv. Corp.)*,
Bankr. No. 08-15917, 2011 WL 2182881 (Bankr. S.D. Fla. June 2, 2011) ... 3

## Other Authorities

*Amy J. Sepinwall, Righting Others' Wrongs: A Critical Look at Clawbacks
in the Madoff-Type Ponzi Schemes and Other Fraud*s, 78 BROOK. L. REV. 1,
23–24 (2012) ............................................................................... 10

Defendants Citibank, N.A., Citicorp North America, Inc. (together with Citibank, N.A., "Citibank"), and Citigroup Global Markets Limited ("CGML," and together with Citibank, the "Citi Defendants") submit this memorandum in support of their Motion for Leave to Appeal the Bankruptcy Court's decision denying their motion to dismiss the Trustee's Amended Complaint for failure to state a claim.

## PRELIMINARY STATEMENT

The Citi Defendants seek leave to appeal two discrete legal issues.  First, did the Bankruptcy Court err in relying on the "Ponzi scheme presumption" to find that the Trustee satisfied his burden to plead intentionally fraudulent transfer under 11 U.S.C. § 548(a)(1)(A) in contravention of the relevant statutory text?  Second, did the Bankruptcy Court err in holding that the Trustee could recover a transfer under 11 U.S.C. § 550(a) when that transfer, as pleaded in the Amended Complaint and in documents cognizable on a motion to dismiss, was an isolated segment of an integrated transaction that did not deplete the bankruptcy estate?

This Court should review and reverse the Bankruptcy Court's rulings, which would result in complete dismissal of the Trustee's claims against CGML and dismissal of over 90% of the value of the Trustee's claims against the Citi Defendants more broadly, as well as advance the resolution of the Trustee's claims against dozens of other similarly situated defendants.

The Trustee seeks to recover at least $443,084,590 transferred to the Citi

Defendants as part of regular commercial transactions with Fairfield Sentry

Limited ("Fairfield Sentry") and Rye Select Broad Market Prime Fund, L.P.

("Prime Fund"), two Bernard L. Madoff Investment Securities LLC ("BLMIS")

feeder funds.  The Trustee alleges that the relevant initial transfers from BLMIS to

Fairfield Sentry and Prime Fund are avoidable fraudulent transfers under 11 U.S.C.

§ 548(a)(1)(A) and therefore any subsequent transfers deriving from those funds

are recoverable under 11 U.S.C. § 550(a).  But the Trustee's Amended Complaint

fails to plausibly allege the avoidability of the initial transfers.

*First*, with respect to the Fairfield Sentry initial transfers, Fairfield Sentry

allegedly made withdrawals from its BLMIS account to fund CGML's redemption

of $100 million worth of Fairfield Sentry shares held as a hedge on a swap that

CGML had entered into with a counterparty seeking synthetic exposure to Fairfield

Sentry.  Am. Comp. ¶ 4.[1]  The Trustee has made no plausible allegations that the

initial transfers were made with the requisite fraudulent intent, instead relying on

an improper extra-statutory presumption.  The Bankruptcy Court ignored the plain

text of Section 548(a)(1)(A), which requires that each transfer be made "with

---

[1] Swaps are core to the functioning of the securities market and therefore subject to
a safe harbor in the Bankruptcy Code.  *See* 11 U.S.C. § 546(g); *Sec. Inv. Prot.
Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 141 (S.D.N.Y. 2013)
("*Swap Decision*") (explaining CGML swap is subject to safe harbor intended to
"protect against systemic risk").

actual intent to hinder, delay, or defraud," and erroneously held that when a plaintiff alleges the existence of a Ponzi scheme, any and all transfers are necessarily intentionally fraudulent as a matter of law. Mem. Decision at 9, *Picard v. Citibank, NA*, No. 10-05345 (Bankr. S.D.N.Y. Sep. 27, 2022) (C. Morris), Dkt. 239 ("Bankr. Op.").[2] The Bankruptcy Court's opinion improperly empowers trustees to seek recovery of funds paid for a debtor's routine expenses, such as groceries, as fraudulent conveyances, rather than mere preferences. *See Welt v. Publix Super Markets, Inc. (In re Phoenix Diversified Inv. Corp.)*, 2011 WL 2182881, at *3 (Bankr. S.D. Fla. June 2, 2011) (declining to apply Ponzi scheme presumption to debtors' payments to grocery store chain).

The Bankruptcy Court here ignored that the return of investment principal – distinct from the payment of fictitious investment profits – is not in furtherance of a Ponzi scheme because it does nothing to encourage others to invest. The Bankruptcy Court erred by ignoring the case law that has rejected the presumption and dismissing as "unpersuasive" the reasoning of appellate jurists like Judge Menashi. Bankr. Op. at 10. This Court should address application of the Ponzi scheme presumption to the Trustee's allegations and hold that it cannot relieve the Trustee of his burden to plead actual fraudulent intent specific to the transfers at

---

[2] The Bankruptcy Court's opinion and related order are attached hereto as Exhibits A and B, respectively.

3

issue. Because the Trustee fails to plead that the Citi Defendants received BLMIS customer property that was initially fraudulently transferred, the Trustee's case against CGML must be dismissed in its entirety.

*Second*, with respect to the Prime Fund initial transfers, Prime Fund allegedly withdrew funds from its BLMIS account to repay an approximately $300 million loan from Citibank, which funds were replaced with funds from another bank. There was thus no alleged depletion of the BLMIS estate, which precludes a fraudulent transfer claim. The Bankruptcy Code's avoidance provisions, including Section 548, "protect a debtor's estate from depletion to the prejudice of the unsecured creditor." *In re Harris*, 464 F.3d 263, 273 (2d Cir. 2006) (Sotomayor, J.) (citations omitted). In denying the motion to dismiss, the Bankruptcy Court engaged in an erroneously formalistic analysis of the initial transfers as purported fraudulent conveyances and an inapplicable analysis of a settlement agreement controlling the Trustee's calculation of *customer claims* against BLMIS.

# BACKGROUND[3]

## A.    The Trustee Seeks To Recover From CGML $100 Million It Received From Fairfield Sentry In Connection With A CGML Swap

Fairfield Sentry is an investment fund that was a customer of BLMIS.   The

Trustee's claim against CGML concerns funds that CGML allegedly received in

connection with an April 2005 swap agreement that it entered into with a hedge

fund, Auriga International Ltd. ("Auriga") that sought exposure to Fairfield Sentry.

*See Swap Decision*, 505 B.R. at 141.  As a hedge on the swap, CGML bought

shares in Fairfield Sentry, and whenever Auriga requested a reduction in exposure

to Fairfield Sentry shares, CGML would reduce its hedge in Fairfield Sentry shares

in a corresponding amount, including by $60 million on April 14, 2008 and $40

million on November 19, 2008.  *See id.*

This Court has already found that initial transfers underlying the Trustee's

claims against CGML are covered by the swap safe harbor in 11 U.S.C. § 546(g)

and can therefore only be avoided if they were avoidable fraudulent transfers under

11 U.S.C. § 548(a)(1)(A).  *Swap Decision*, 505 B.R. at 150.  If the Trustee cannot

plead facts to show that these initial transfers were intentionally fraudulent, his

claims against CGML should be dismissed.  *See id.*

---

[3] For purposes of this motion only, the Citi Defendants accept the allegations in the Amended Complaint as true.

**B.    The Trustee Seeks To Recover From Citibank Money It Received From Prime Fund As Repayment On A Loan**

Prime Fund is also an investment fund that was a customer of BLMIS.  On June 15, 2005, Prime Fund entered into a loan agreement with Citibank, and it allegedly used at least some of the loan monies to invest in BLMIS.  Am. Compl. ¶ 3; *see also* Tremont Complaint ¶ 91, *Picard v. Tremont Grp. Holdings, Inc.*, No. 10-5310 (Bankr. S.D.N.Y. Dec. 7, 2010), Dkt. 1 ("Tremont Compl.").[4]  On March 25, 2008, Prime Fund withdrew $475 million from its BLMIS account.  The next day, Prime Fund repaid Citibank the loan of approximately $300 million.  *See* Am. Compl., Ex. F.  When Prime Fund decided to repay Citibank its loan principal, the money was replaced with money from another bank, i.e., the source simply changed.  *See* Tremont Compl. ¶ 198 ("Tremont sought out another bank that would continue providing leverage to exploit Madoff's returns."); ABN AMRO Compl. ¶ 57, *Picard v. ABN AMRO Bank (Ireland) Ltd. (In re Madoff)*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y. June 18, 2012), Dkt. 42 ("ABN Amro Compl.").  Thus, there was no alleged depletion of the BLMIS estate.

**C.    The Bankruptcy Court's Decision**

In denying the Citi Defendants' motion to dismiss, the Bankruptcy Court held that by pleading that BLMIS operated a Ponzi scheme, the Trustee sufficiently

---

[4] The Trustee incorporated by reference the factual allegations in the Tremont Complaint into his Amended Complaint.  Am. Comp. ¶ 88 & n.3.

6

pleaded actual fraudulent intent of the initial alleged transfers from BLMIS to counterparties of the Citi Defendants under Rule 9(b) and Section 548(a)(1)(A). *See* Bankr. Op. at 8.  The Bankruptcy Court further held that even without the Ponzi scheme presumption, the Trustee sufficiently pleaded fraudulent intent by alleging certain "badges of fraud."  But the "badges of fraud" the Bankruptcy Court identified were simply that BLMIS ran a Ponzi scheme.  *See id.* at 11–12.

The Bankruptcy Court further concluded that the loan repayment to Citibank should be considered as an isolated transaction, rather than part of an integrated transaction that did not deplete the bankruptcy estate.  In so concluding, the Bankruptcy Court ignored the purpose and context of the transaction, and all authorities applying the integrated transaction doctrine in the fraudulent conveyance context.  *See infra* at 16–17.  The Bankruptcy Court instead reasoned that accounting for the nature of the transfer would contravene the "Net Investment Method."  *Id.* at 16.  But that analysis applies solely to customer claims against the estate.  It has nothing to do with the threshold issue of depletion of the estate in a fraudulent conveyance claim against a subsequent transferee.  *In re BLMIS*, 654 F.3d 229, 239 (2d Cir. 2011).

## QUESTIONS PRESENTED

1. Did the Bankruptcy Court err when it determined that the Trustee adequately pleaded actual fraudulent intent by relying on the Ponzi scheme presumption?

2. Did the Bankruptcy Court err when it determined that an initial transfer is avoidable even when part of an integrated transaction that did not allegedly deplete the estate?

## ARGUMENT

I. **The Bankruptcy Court Erred In Concluding That The Trustee Adequately Alleged Actual Fraudulent Intent As To The Relevant Initial Transfers**

The Bankruptcy Court's decision improperly relieved the Trustee of his burden to plead that BLMIS's relevant initial transfers to Fairfield Sentry and Prime Fund are avoidable as intentionally fraudulent conveyances under 11 U.S.C. § 548(a)(1)(A). A trustee may only recover property under Section 550(a) "to the extent that a transfer is avoided under" the Bankruptcy Code. 11 U.S.C. § 550(a). Section 548(a)(1)(A) makes avoidable transfers made by BLMIS "with actual intent to hinder, delay, or defraud" creditors. *See Sharp Int'l Corp. v. State Street Bank & Tr. Co. (In re Sharp)*, 403 F.3d 43, 56 (2d Cir. 2005) (plaintiff must plead actual intent or "badges of fraud" giving rise to inference of fraud). Allegations of fraudulent intent must go to the "specific transfers challenged." *Verestar, Inc. v.*

8

*Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006).

### A.    The Ponzi Scheme Presumption Is Extra-Statutory And Improper

Section 548(a)(1)(A) permits avoidance of a transfer only when the debtor "made *such transfer*…with actual intent to hinder, delay, or defraud" creditors.  11 U.S.C. § 548(a)(1)(A) (emphasis added).  The statute specifically uses the singular term "transfer," establishing that at a minimum, a plaintiff would need to plead fraud for each transfer.  In contrast, the Ponzi scheme presumption assumes actual fraudulent intent as to specific transfers existed as to all transfers.  *Picard v. Citibank, N.A.*, 12 F.4th 171, 181 (2d Cir. 2021) (explaining and applying, but not affirming, the presumption).

Numerous courts have dismissed avoidability claims premised on the Ponzi scheme presumption, holding that it is extra-statutory, overbroad, and improperly sweeps in valid and unavoidable transfers.  *See Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) ("[T]here is no statutory justification for relieving the [trustee] of its burden of proving—or for preventing the transferee from attempting to disprove—fraudulent intent."); *see also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001), *aff'd* 2002 WL 32500567 (W.D.N.Y. June 21, 2002); *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 490 (D. Conn. 2002) ("[T]he proper focus of a

9

fraudulent transfer inquiry is on the transfer itself, not the overall business practices of the Debtor."); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000) ("Section 548 is not a catch-all provision."), *aff'd* 264 B.R. 303, 308 (S.D.N.Y. 2001).

In a concurring opinion in this very case, Judge Menashi, citing the above authorities, questioned the presumption's validity here, noting that the Second Circuit has never explicitly endorsed application of the presumption, and instead has only applied it "when its application was uncontested." *See Citibank, N.A.*, 12 F.4th at 202 n.7 (Menashi, J., concurring). That is because, without transfer-specific facts, the Ponzi scheme presumption "improperly treats preferences as fraudulent transfers," empowering a trustee to avoid, as fraudulent transfers, any and all payments made by a Ponzi scheme operator—even those made by the debtor to a creditor "to satisfy an antecedent debt." *Id.* at 201; *Boston Trading Grp. Inc. v. Burnazos*, 835 F.2d 1504, 1509 (1st Cir. 1987) ("The basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them."). The purpose of fraudulent transfer law is not to recapture every transfer made by a debtor, but "to prevent the debtor from secreting away his assets, typically for his own benefit, such that they are beyond the reach of his creditors." *See Amy J. Sepinwall, Righting Others' Wrongs: A Critical Look at Clawbacks in the Madoff-*

10

*Type Ponzi Schemes and Other Fraud*s, 78 BROOK. L. REV. 1, 23–24 (2012).

"Simply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance." *Carrozzella & Richardson*, 286 B.R. at 489 (citation omitted). Though the concern underlying the presumption is that Ponzi scheme operators attract new customers by paying out artificial profits,[5] a debtor's simple return of an investor's money does not attract new investors, further the Ponzi scheme, or suggest anything about the debtor's intent as to the specific transaction.

Here, the Amended Complaint fails to provide any facts regarding BLMIS's initial transfers, instead presuming that each and every one must have been made with fraudulent intent. The Amended Complaint contains no allegations that BLMIS's initial transfers to Fairfield Sentry or Prime Fund were with the intent to "shortchang[e] creditors by squirreling away assets out of [its] creditors' reach." *Citibank, N.A.*, 12 F.4th at 204 (Menashi, J., concurring); *see also Verestar*, 343 B.R. at 468 ("[C]onclusory allegations that do not evidence fraudulent intent with respect to the specific transfers challenged do not suffice" to state a claim, even if "combined with . . . an alleged overall 'pattern of inappropriate transfers'").

---

[5] *See Ades-Berg Inv. v. Breeden (In re The Bennett Funding Grp.)*, 439 F.3d 155, 157 n.2 (2d Cir. 2006).

As alleged, any redemptions by Fairfield Sentry from BLMIS underpinning
the $100 million transfer to CGML were necessarily redemptions of principal, and
not fictitious profits.  They could not have been in furtherance of the Ponzi
scheme.  In settling his claims against Fairfield Sentry, the Trustee acknowledged
that Fairfield Sentry invested nearly $1.2 billion in excess of the amount it ever
withdrew from BLMIS.  *See* Mot. for Entry of Order at 7, *Picard v. Fairfield
Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), Dkt. 69
("Fairfield Sentry Settlement Motion").  The Bankruptcy Court thus erred in
determining "as a matter of law" that "[i]ntent to defraud is established as
[BLMIS] operated a Ponzi scheme."  Bankr. Op. at 9.  Eliminating the Trustee's
pleading burden in this way disregards the plain language of the Bankruptcy Code
and improperly subjects the Citi Defendants to litigation on an unsupported claim.

## B.    The Trustee Has Alleged No "Badges Of Fraud" For The Relevant Initial Transfers

The Bankruptcy Court erred in concluding that, even without application of
the Ponzi scheme presumption, the Trustee "has met . . . his pleading burden by
pleading the 'badges of fraud' with respect to BLMIS."  Bankr. Op. at 10–12
(citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983)).
Even when relying on alleged badges of fraud to satisfy their pleading burden,
trustees must still allege actual fraudulent intent for the specific transfers they seek
to avoid.  *See supra* Section I.A; *see also Verestar*, 343 B.R. at 468; *Sharp*, 403

12

F.3d at 56 (dismissing fraudulent conveyance claim because the debtor

"inadequately alleges fraud with respect to the transaction that [it] seeks to avoid,"

despite its claims that "fraud was so clearly established that it need not be detected

by indicia").

Here, the Bankruptcy Court improperly deemed irrelevant the most

important badge of fraud—whether the initial transfer from BLMIS to Fairfield

Sentry was made for inadequate consideration—deeming it an "affirmative

defens[e]." Bankr. Op. at 12. But pleading badges of fraud is an essential element

of the Trustee's claims, not an affirmative defense. *See Sharp*, 403 F.3d at 56.

While the Amended Complaint artfully excludes the fact that Fairfield Sentry was

a net-loser in the BLMIS Ponzi scheme, the Trustee acknowledged that undeniable

– and judicially noticeable – fact in settling its claims with Fairfield. *See* Fairfield

Sentry Settlement Motion at 7. The return of principal plainly reflects a transfer

for adequate consideration. *See Geltzer v. Barish (In re Geltzer)*, 502 B.R. 760,

770 (S.D.N.Y. 2013) ("[A] trustee is not permitted to sue innocent investors in a

Ponzi scheme under fraudulent transfer law for the return of their principal.").

The Bankruptcy Court also erroneously relied on a series of allegations from

the Amended Complaint as "badges of fraud" to conclude the Trustee pleaded five

badges of fraud. *See* Bankr. Op. at 10–12 (identifying badges of fraud including

Madoff's admission to operating a Ponzi scheme, filing of fraudulent financial

reports with SEC, falsifying trade data and enlisting family in carrying out the

fraud).  But these allegations only address whether Madoff was operating a Ponzi

scheme as a general matter; they do not establish that the particular initial transfer

was undertaken with actual fraudulent intent.  Indeed, a more traditional "badges

of fraud," analysis never would have fit the facts alleged here.  *Compare In re*

*Kaiser*, 722 F.2d at 1583 (describing debtor's efforts to hide assets by transferring

them to spouse for no consideration while retaining their "possession, benefit, and

use" as "classic badge of fraud"), *with* Am. Compl. ¶ 3–4 & n.1 (describing Citi

Defendants' receipt of funds pursuant to commercial agreements).

## II.    The Bankruptcy Court Erred In Concluding That The Initial Transfer For The Prime Fund Loan Repayment Is Avoidable

The Bankruptcy Court further erred by refusing to consider the nature of the

transfer from Prime Fund to Citibank and whether the underlying initial transfer to

Prime Fund depleted the BLIMS estate.  Here, the Trustee cannot avoid the $475

million BLMIS-to-Prime Fund initial transfer allegedly underlying Prime Fund's

approximately $300 million Prime Fund-to-Citibank subsequent transfer because it

was part of an "integrated series of transactions" that did not deplete any assets of

the BLMIS estate.  Rather, Tremont replaced Citi's loan with funds from another

source.  *See* Tremont Compl. ¶ 198; ABN AMRO Compl. ¶ 57.

In holding otherwise, the Bankruptcy Court refused to recognize that a

transfer cannot be a fraudulent transfer unless it allegedly depleted the estate.  *See,*

14

*e.g.*, *In re McCann, Inc.*, 318 B.R. 276, 283 (Bankr. S.D.N.Y. 2004) ("[C]reditors

must actually be harmed in order to avoid a fraudulent transfer under [11 U.S.C. §

548].") (alteration in original) (citation omitted); *Bear, Stearns Sec. Corp. v.

Gredd,* 275 B.R. 190, 195 (S.D.N.Y. 2002) (dismissing claims at motion to dismiss

stage where transfers did not deplete estate); *Pioneer Liquidating Corp. v. San

Diego Tr. & Savings Bank (In re Consol. Pioneer Mortg. Entities)*, 211 B.R. 704,

717 (S.D. Cal. 1997) (dismissing fraudulent transfer claims where the transfers at

issue did not deplete the debtor's estate), *aff'd in part, rev'd on other grounds*, 166

F.3d 342 (Table), 1999 WL 23156 (9th Cir. Jan. 13, 1999); *Ivey v. First-Citizens

Bank & Tr. Co. (In re Whitley)*, 2014 WL 6910837, at *1 (Bankr. M.D.N.C. Dec.

8, 2014) ( "[T]ransfers to the Bank in this case . . . were not fraudulent transfers

because . . . they did not diminish the Debtor's estate. . . ."), *aff'd*, 539 B.R. 77

(M.D.N.C. 2015), *aff'd*, 848 F.3d 205 (4th Cir. 2017).  Ignoring this authority, the

Bankruptcy Court opinion does not even address this threshold issue.

Additionally, the Bankruptcy Court held that even if the loan repaid to

Citibank was replaced with funds from another bank, the two transactions should

not be considered together.  Bankr. Op. at 16 (relying instead on the "Net

Investment Method").  But in the fraudulent conveyance context, the integrated

transaction doctrine directs that "interrelated yet formally distinct steps in an

integrated transaction may not be considered independently of the overall

15

transaction." *Pereira v. WWRD US, LLC (In re Waterford Wedgwood USA, Inc.)*, 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013) (analyzing transactions as single integrated transaction "compatible with fraudulent conveyance principles as both emphasize substance over form"); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35–36 (2d Cir. 1993) (applying the integrated transaction doctrine in the fraudulent conveyance context). The transfers need not be between the same parties. "Courts have 'collapsed' a series of transactions into one transaction when it appears that despite the formal structure erected and the labels attached, the segments, in reality, comprise a single integrated scheme. . . ." *Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 370 (Bankr. S.D.N.Y. 2002); *see In re Old CarCo LLC*, 435 B.R. 169, 183–184 (Bankr. S.D.N.Y. 2010) (treating transactions under several different agreements and involving several parties as an integrated transaction).

Without engaging with this authority, the Bankruptcy Court erroneously held that, because the Trustee's Amended Complaint omits the fact that another funding source replaced the loan repaid to Citibank, Citibank's argument must be rejected. In so holding, the Bankruptcy Court disregarded its own statement that "[c]ourts *must* consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a

16

court may take judicial notice." Bankr. Op. at 5 (emphasis added) (citation
omitted). Documents are incorporated into the complaint when the "plaintiff has
'actual notice' of the extraneous information and relied on it in framing the
complaint." Bankr. Op. at 5 (citation omitted). In their Motion, the Citi
Defendants cited the Trustee's allegations against Tremont (Prime Fund's
manager), which the Trustee incorporated into his Amended Complaint and which
stated that when Prime Fund decided to repay the Citibank loan principal,
"Tremont sought out another bank that would continue providing leverage to
exploit Madoff's returns." Tremont Compl. ¶ 198. The Trustee never disputed that
Tremont replaced the funds withdrawn from BLMIS to repay Citibank. The
Bankruptcy Court should have taken judicial notice of those allegations because
they were incorporated into the Trustee's Amended Complaint, Am. Compl. ¶ 88
& n.3, rather than permit the Trustee to cherry pick his allegations as to different
defendants. *See Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 345 (S.D.N.Y. 2010)
(considering "important court and administrative documents" that had been
"inexplicably and improperly omitted from the Amended Complaint, thereby
creating a demonstrably false impression of certain key facts").

The Bankruptcy Court's reliance on the "Net Investment Method" is
likewise erroneous. The "Net Investment Method" does not apply to the question
of whether an initial transfer to an investor is fraudulent. It is simply a method of

calculating customer claims against the estate, allowing the Trustee "to make

payments based on withdrawals and deposits" to distribute customer property. *In

re BLMIS*, 654 F.3d at 239.[6]  For the Trustee to plead a fraudulent initial transfer,

he must allege the transfer depleted the estate, which requires assessing the nature

of the transfer.  A withdrawal from the BLMIS estate that was then replaced with

funds from another source did not, by its nature, deplete the BLMIS estate and

cannot as a matter of law establish a fraudulent initial transfer here.  Reversing the

Bankruptcy Court's clear legal error would result in dismissal of approximately

$300 million of the $343 million claim against Citibank.

## III.    Leave To Appeal Should Be Granted

This Court possesses substantial discretion to exercise its authority to review

the Bankruptcy Court's erroneous holdings under 28 U.S.C. § 158(a)(3).  *See, e.g.*,

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, 2022 WL 3910679, at *5

---

[6] The Bankruptcy Court also erroneously relied on the distinguishable case *Picard v. Lustig (In re BLMIS)*, 568 B.R. 481 (Bankr. S.D.N.Y. 2017).  As an initial matter, the *Lustig* defendants "did not dispute . . . that the transfers of fictitious profits they received [were] avoidable under Bankruptcy Code § 548(a)." *Id.* at 486.  Moreover, the case addressed the defendants' equitable defense that they should receive an "equitable credit" to offset the Trustee's claim for recovery of fictitious profits that they received but then reinvested (and ultimately lost) in BLMIS feeder funds. *See Lustig*, 568 B.R. at 491.  The defendants were not entitled to an "equitable credit," in part, because the feeder fund and the feeder fund customer could not both claim the same "credit" for deposits made to BLMIS under the "Net Investment Method."  But Citibank is not asserting an equitable defense or seeking "equitable credit" relating to receipt of fictitious profits; Citibank is challenging the threshold avoidability of the initial transfer.

(S.D.N.Y. Aug. 31, 2022) ("The Court has discretion to grant an interlocutory appeal of an order of the Bankruptcy Court."); *In re WorldCom, Inc.*, 2009 WL 2215296, at *3 (S.D.N.Y. July 23, 2009) (deciding "when to grant leave to appeal … is committed to the discretion of the district court"); *Adelphia Recovery Trust v. Bank of America N.A.*, 2007 WL 2585065, at *1 (S.D.N.Y. Sept. 5, 2007) (emphasizing 28 U.S.C. § 158(a) is less strict than 28 U.S.C. § 1292(b)).

The factors governing interlocutory appeals from the district courts to the courts of appeal, often used by district courts in considering Section 158(a)(3) motions, further support the exercise of appellate review here. *See HSBC Sec. Servs. (Lux.) S.A.*, 2022 WL 3910679, at *5. Those factors provide for review where the appeal "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion," and where "[3] an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Appeal may also be granted where the issue presents "exceptional circumstances." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005).

*First*, both the question of application of the Ponzi scheme presumption and the depletion of the estate requirement are "pure" controlling questions of law that this Court "could decide quickly and cleanly without having to study the record." *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592,

19

at *4 (S.D.N.Y. Sept. 5, 2006).  They are threshold issues that go "directly to the plaintiff's ability to maintain some or all of its claims." *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012).  This Court will solely need to determine as a matter of law: (1) whether a plaintiff may use the Ponzi scheme presumption to evade its obligation to plead actual fraudulent intent for the transfers it is seeking to avoid under Section 548(a)(1)(A); and (2) whether a plaintiff must allege that the initial transfers at issue – taken in context as part of an integrated transaction – depleted the estate.

Rejecting the Ponzi scheme presumption, in particular, "would provide important guidance for similarly situated parties," which also renders it a controlling question of law.  *See MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y. 2017); *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020).  The Trustee has sued dozens of defendants using substantially similar complaints.  Rejecting the Ponzi scheme presumption would directly affect multiple cases in which the Trustee has brought similar claims against these other defendant-transferees.  Owing to the "far-reaching implications in this case" and many others, this case qualifies as an exceptional circumstance in which the court should grant leave to appeal.  *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 553 (S.D.N.Y. 2013).

*Second*, there are substantial grounds for disagreement when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Recs.*, 972 F. Supp. 2d at 551. This factor is also met when there is "genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4.

As to the Ponzi scheme presumption, the decisions of courts that have embraced the Ponzi scheme presumption conflict with well-reasoned decisions holding that the presumption is overbroad and inconsistent with statutory authority. *See supra* Section I.A. Judge Menashi's thoughtful concurring opinion explaining why applying the Ponzi scheme presumption to these allegations transforms preferences into fraudulent conveyances, which the Bankruptcy Court summarily dismissed as "unpersuasive," Bankr. Op. at 10, demonstrates the need for considered review of this issue. Finally, as Judge Menashi also recognized, the Second Circuit has never explicitly accepted the presumption, applying it only "when its application was uncontested." *See Citibank, N.A.*, 12 F.4th at 202 n.7 (Menashi, J., concurring).

As to Citibank's receipt of repayment on its loan principal when it was replaced as lender, there is "genuine doubt as to whether the Bankruptcy Court applied the correct legal standard" because the court did not even address the

21

threshold issue that transfers that do not deplete the estate are unavoidable. *See supra* at Section II.

*Finally*, an immediate appeal will materially advance the termination of the litigation.[7] *See Enron*, 2006 WL 2548592, at *4 ("An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial."); *Capitol Records*, 972 F. Supp. 2d at 552 (certifying interlocutory appeal where nearly three quarters of the copyright infringements at issue might be dismissed); *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 279 (E.D.N.Y. 2021) (granting leave to appeal and collecting cases).

If this Court finds that the Trustee cannot rely on the Ponzi scheme presumption, then his claims against CGML must be dismissed, and his claims against Citibank would be substantially narrowed. If this Court finds that Prime Fund's withdrawal of funds to repay Citibank's loan was part of an integrated transaction that did not deplete the estate, then $300 out of $343 million of the Trustee's claim against Citibank fails for this reason, too. Plainly, review of these issues will advance termination of this litigation.

---

[7] When reversal of a legal conclusion could "result in dismissal of the action," Courts also deem the question to be "controlling." *See In re Lloyd's Am. Tr. Fund Litig.*, 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).

## CONCLUSION

For the foregoing reasons, the Citi Defendants respectfully request that the

Court grant the Motion.

Dated:        November 2, 2022
              New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON
LLP

By:  */s/ Carmine D. Boccuzzi, Jr.*
    Carmine D. Boccuzzi, Jr.
    (cboccuzzi@cgsh.com)
    One Liberty Plaza
    New York, New York 10006
    T: 212-225-2000
    F: 212-225-3999

    Elsbeth Bennett
    (ebennett@cgsh.com)
    2112 Pennsylvania Ave NW
    Washington, DC 20037
    T: 202-974-1500
    F: 202-974-1999

    *Attorneys for Citibank, N.A., Citicorp North
    America, Inc., and Citigroup Global Markets
    Limited*

## CERTIFICATE OF COMPLIANCE

1.      This motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f)(3)(A), because it contains 5,198 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

2.      This motion complies with the typeface and the type style requirements of Federal Rule of Bankruptcy Procedure 8013(f)(2) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:     November 2, 2022
           New York, New York

                                    By:  */s/ Carmine D. Boccuzzi, Jr.*
                                         Carmine D. Boccuzzi, Jr.