SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

*Attorneys for the Union Securities Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant, | Adv. Pro. No. 08-01789 (cgm) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br> v. <br><br> UNION SECURITIES INVESTMENT TRUST CO., LTD., UNION USD GLOBAL ARBITRAGE FUND, UNION USD GLOBAL ARBITRAGE A FUND, and UNION ARBITRAGE STRATEGY FUND, <br><br> Defendants. | Adv. Pro. No. 12-01211 (CGM) <br><br> **ANSWER WITH AFFIRMATIVE <br> DEFENSES AND JURY DEMAND** |

Defendants Union USD Global Arbitrage Fund ("Union Global Fund"), Union USD

Global Arbitrage A Fund ("Union Global A Fund"), Union Arbitrage Strategy Fund

("Union Strategy Fund", and collectively, the "Funds"), and Union Securities Investment Trust

Co., Ltd. ("USITC," and together with the Funds, the "Union Securities Defendants"), by and

through their undersigned counsel, as and for their Answer to the Complaint of Irving H. Picard

(the "Trustee" or "Plaintiff"), trustee for the liquidation of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff,

individually, under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*,

respectfully aver the following:

## I.    <u>NATURE OF THE ACTION</u>[1]

1.      This adversary proceeding is part of the Trustee's continuing efforts to recover
BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff") and others.

**<u>Response</u>:**     The Union Securities Defendants deny each and every allegation in

paragraph 1 of the Complaint, except they admit that the Trustee purports to bring this adversary

proceeding as part of the Trustee's efforts to recover BLMIS Customer Property within the

meaning of 15 U.S.C. § 78lll(4) and, upon information and belief, Madoff perpetrated a Ponzi

scheme.

2.      With this Complaint, the Trustee seeks to recover at least $17,206,126 in
subsequent transfers of Customer Property collectively made to the Union Securities Defendants
by Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Sentry is currently in liquidation in the
British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with

---

[1] The Union Securities Defendants do not deem the section headings in the Complaint to constitute allegations of the
Complaint.  However, to the extent any section headings are allegations, the Union Securities Defendants admit or
deny them consistent with their responses to the allegations contained in the numbered paragraphs of the Complaint.

[2] SIPA § 78lll(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for
the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property
transferred by the debtor, including property unlawfully converted.

BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and on that basis deny each and every allegation in paragraph 2 of the Complaint, except the Union Securities Defendants deny that they received subsequent transfers of Customer Property from BLMIS or Fairfield Sentry, and the Union Securities Defendants admit that the Trustee seeks to recover $17,206,126 in alleged subsequent transfers made to the Union Securities Defendants and that, upon information and belief, Fairfield Sentry was a BVI company that had direct customer accounts with BLMIS's investment advisory business and is currently in liquidation in the BVI.

3.    When the Union Securities Defendants received the subsequent transfers of BLMIS Customer Property, Defendant USITC was a Taiwanese commercial banking and investment management institution and the fund manager for Defendant Union Global Fund, Defendant Union Global A Fund, and Defendant Union Strategy Fund.

**Response:**    The Union Securities Defendants deny each and every allegation in paragraph 3 of the Complaint, including that they received subsequent transfers of BLMIS Customer Property, except the Union Securities Defendants admit that USITC was a Taiwanese investment management institution and the fund manager for Defendant Union Global Fund, Defendant Union Global A Fund, and Defendant Union Strategy Fund.

## II.    JURISDICTION AND VENUE

4.    The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by the Union Securities Defendants as subsequent transferees of funds originating from BLMIS.

**Response:**    Paragraph 4 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 4 of the Complaint, except the Union Securities Defendants admit that the Trustee has brought this adversary proceeding.

5.    This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response:**    Paragraph 5 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 5 of the Complaint, including that the Court has jurisdiction to enter a final order or judgment in this proceeding, except the Union Securities Defendants admit that this is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending.

6.    The Union Securities Defendants are subject to personal jurisdiction in this judicial district because they purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. The Union Securities Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund.

**Response:**    The Union Securities Defendants deny each and every allegation in paragraph 6 of the Complaint, including that they are subject to personal jurisdiction in this judicial district.

7.    By directing investments through FGG, the Union Securities Defendants knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, the Union Securities Defendants entered into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction, sent copies of the agreements to FGG's New York City office, and had funds wired to Fairfield Sentry through a bank in New York. The Union Securities Defendants thus

derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**Response:**    The Union Securities Defendants deny each and every allegation in paragraph 7 of the Complaint, except the Union Securities Defendants admit that they entered into a subscription agreement with Fairfield Sentry.

8.    The Union Securities Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**Response:**    Paragraph 8 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 8 of the Complaint.

9.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response:**    Paragraph 9 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 9 of the Complaint, including that the Court has jurisdiction to enter a final order or judgment in this proceeding, except the Union Securities Defendants admit this adversary proceeding is of a kind specified as a core proceeding in 28 U.S.C. § 157(b)(2)(H).

10.    Venue in this District is proper under 28 U.S.C. § 1409.

**Response:**    Paragraph 10 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants admit the allegation in paragraph 10 of the Complaint.

III.    **BACKGROUND**

11.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The

SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and on that basis deny each and every allegation in paragraph 11 of the Complaint, except the Union Securities Defendants admit upon information and belief that Madoff was arrested on or about the Filing Date and that the SEC filed a complaint against BLMIS.

12.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and on that basis deny each and every allegation in paragraph 12 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

13.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and on that basis deny each and every allegation in paragraph 13 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

14.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b.        appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c.        removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response:**        The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and on that basis deny each and every allegation in paragraph 13 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

15.        By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response:**        The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the Complaint and on that basis deny each and every allegation in paragraph 15 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

16.        At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response:**        The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and on that basis deny each and every allegation in paragraph 16 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and on that basis deny each and every allegation in paragraph 17 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

## IV.    **TRUSTEE'S POWERS AND STANDING**

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**Response:**    Paragraph 18 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and on that basis deny each and every allegation in paragraph 18 of the Complaint.

19.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response:**    Paragraph 19 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and on that basis deny each and every allegation in paragraph 19 of the Complaint.

20.    Under SIPA §§ 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response:**    Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and on that basis deny each and every allegation in paragraph 20 of the Complaint.

21.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**Response:**    Paragraph 21 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and on that basis deny each and every allegation in paragraph 21 of the Complaint.

## V.    THE DEFENDANTS

22.    Defendant USITC is a Taiwanese limited company that maintains a place of business at 6th Floor, No. 137, Section 2, Nanking East Rd., Taipei, Taiwan.

**Response:**    Defendant USITC denies each and every allegation in paragraph 22 of the

Complaint, except it admits that it maintains a place of business at 6th Floor, No. 137, Section 2,

Nanking East Rd., Taipei, Taiwan.

23.    Defendant Union Global Fund is a fund managed by Defendant USITC and, upon
information and belief, is a Taiwanese corporate entity having its registered address at 6th Floor,
No. 137, Section 2, Nanking East Rd., Taipei, Taiwan.

**Response:**    Defendant Union Global Fund denies each and every allegation in

paragraph 23 of the Complaint, except it admits that it is a fund managed by Defendant USITC.

24.    Defendant Union Global A Fund is a fund managed by Defendant USITC and, upon
information and belief, is a Taiwanese corporate entity having its registered address at 6th Floor,
No. 137, Section 2, Nanking East Rd., Taipei, Taiwan.

**Response:**    Defendant Union Global A Fund denies each and every allegation in

paragraph 24 of the Complaint, except it admits that it is a fund managed by Defendant USITC.

25.    Defendant Union Strategy Fund is a fund managed by Defendant USITC and, upon
information and belief, is a Taiwanese corporate entity having its registered address at 6th Floor,
No. 137, Section 2, Nanking East Rd., Taipei, Taiwan.

**Response:**    Defendant Union Strategy Fund denies each and every allegation in

paragraph 25 of the Complaint, except it admits that it is a fund managed by Defendant USITC.

## VI.    THE PONZI SCHEME

26.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated
from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as
founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several
of his friends and family members. BLMIS was registered with the SEC as a securities broker-
dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue
of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market
making, proprietary trading, and the IA Business.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and

on that basis deny each and every allegation in paragraph 26 of the Complaint.

27.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**Response:**     The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the Complaint and on that basis deny each and every allegation in paragraph 27 of the Complaint.

28.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**Response:**     The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and on that basis deny each and every allegation in paragraph 28 of the Complaint.

29.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxx703.

**Response:**     The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and on that basis deny each and every allegation in paragraph 29 of the Complaint.

30.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through

any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and

on that basis deny each and every allegation in paragraph 30 of the Complaint.

31.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 31 of the Complaint and

on that basis deny each and every allegation in paragraph 31 of the Complaint.

32.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and

on that basis deny each and every allegation in paragraph 32 of the Complaint.

33.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 33 of the Complaint and

on that basis deny each and every allegation in paragraph 33 of the Complaint.

34.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 of the Complaint and on that basis deny each and every allegation in paragraph 34 of the Complaint.

35.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 35 of the Complaint and on that basis deny each and every allegation in paragraph 35 of the Complaint.

36.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 36 of the Complaint and on that basis deny each and every allegation in paragraph 36 of the Complaint.

## VII.    THE TRANSFERS

37.    Fairfield Sentry received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to the Union Securities Defendants.

**Response:**    The Union Securities Defendants deny each and every allegation in paragraph 37 of the Complaint, except the Union Securities Defendants admit that they received funds from Fairfield Sentry, but the Union Securities Defendants deny that such funds constitute BLMIS Customer Property or any other property transferred from BLMIS to Fairfield Sentry.

### A.    Initial Transfers from BLMIS to Fairfield Sentry

38.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**Response:**    The Union Securities Defendants (i) upon information and belief, admit that the Trustee filed an action styled as *Picard v. Fairfield Sentry, Ltd., et al*., Adv. Pro No. 09-1239 (BRL) (the "Sentry Action") and respectfully refer this Court to the public record as to any matters of public record, (ii) deny having sufficient knowledge and information to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action and on that basis deny such allegations, (iii) deny that the initial transfers of Customer Property to Fairfield Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (iv) to the extent necessary to support such denial, deny having sufficient knowledge and information to form a belief as to the truth of the allegations and on that basis deny each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Fairfield Sentry are or were avoided or avoidable, and (v) object to the incorporation by reference of, and therefore do not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserve the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, the Union Securities Defendants deny having sufficient knowledge and information to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint and on that basis deny such allegations.

39.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**     The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 39 of the Complaint and on that basis deny such allegations. The remaining allegations in paragraph 39 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Union Securities Defendants deny each and every remaining allegation in paragraph 39 of the Complaint.

40.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**     The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 40 of the Complaint and on that basis deny such allegations. The remaining allegations in paragraph 40 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Union Securities Defendants deny each and every remaining allegation in paragraph 40 of the Complaint.

41.     The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**       The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 41 of the Complaint and on that basis deny such allegations.  The remaining allegations in paragraph 41 of the Complaint set forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every remaining allegation in paragraph 41 of the Complaint.

42.       The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**Response:**       The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42 of the Complaint and on that basis deny each and every allegation in paragraph 42 of the Complaint.

43.       Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**Response:**       The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 43 of the Complaint and on that basis deny each and every allegation in paragraph 43 of the Complaint, except the Union Securities Defendants respectfully refer this Court to the public record as to any matters of public record.

**B.       Subsequent Transfers from Fairfield Sentry to Defendant Union Global Fund and/or Defendant USITC**

44.       A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Global Fund and/or Defendant USITC and is recoverable from Defendant Union Global Fund and/or Defendant USITC pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the

Trustee's investigation to date, approximately $9,283,664 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Global Fund and/or Defendant USITC through an account at Cathay United Bank Ltd. (the "Fairfield Sentry-Union Global Fund Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Union Global Fund Subsequent Transfers is attached as Exhibit C.

**Response:**    Paragraph 44 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 44 of the Complaint, except the Union Securities Defendants admit that Defendant Union Global Fund received approximately $9,283,664 from Fairfield Sentry.

45.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Union Global Fund Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 of the Complaint and on that basis deny each and every allegation in paragraph 45 of the Complaint.

## C.    Subsequent Transfers from Fairfield Sentry to Defendant Union Global A Fund and/or Defendant USITC

46.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Global A Fund and/or Defendant USITC and is recoverable from Defendant Union Global A Fund and/or Defendant USITC pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $6,477,447 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Global A Fund and/or Defendant USITC through an account at Cathay United Bank Ltd. (the "Fairfield Sentry-Union Global A Fund Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Union Global A Fund Subsequent Transfers is attached as Exhibit D.

**Response:**    Paragraph 46 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 46 of the Complaint, except the Union Securities

Defendants admit that Defendant Union Global A Fund received approximately $6,477,437 from

Fairfield Sentry.

47.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Union Global A Fund Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or

information to form a belief as to the truth of the allegations in paragraph 47 of the Complaint and

on that basis deny each and every allegation in paragraph 47 of the Complaint.

### D.    Subsequent Transfers from Fairfield Sentry to Defendant Union Strategy Fund and/or Defendant USITC

48.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Strategy Fund and/or Defendant USITC and is recoverable from Defendant Union Strategy Fund and/or Defendant USITC pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $1,445,016 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Strategy Fund and/or Defendant USITC through an account at Cathay United Bank Ltd. (the "Fairfield Sentry-Union Strategy Fund Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Union Strategy Fund Subsequent Transfers is attached as Exhibit E.

**Response:**    Paragraph 46 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, the Union Securities Defendants deny

each and every allegation in paragraph 46 of the Complaint, except the Union Securities

Defendants admit that Defendant Union Strategy Fund received approximately $1,445,016 from

Fairfield Sentry.

49.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Union Strategy Fund Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 49 of the Complaint and on that basis deny each and every allegation in paragraph 49 of the Complaint.

50.    The Fairfield Sentry-Union Global Fund Subsequent Transfers, the Fairfield Sentry-Union Global A Fund Subsequent Transfers, and the Fairfield Sentry-Union Strategy Fund Subsequent Transfers are collectively defined as the "Fairfield Sentry Subsequent Transfers."

**Response:**    The Union Securities Defendants deny having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 50 of the Complaint and on that basis deny each and every allegation in paragraph 50 of the Complaint.

## COUNT ONE
## RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

51.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response:**    The Union Securities Defendants incorporate by reference their answers to the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

52.    Defendant Union Global Fund and/or Defendant USITC received the Fairfield Sentry-Union Global Fund Subsequent Transfers, totaling approximately $9,283,664; Defendant Union Global A Fund and/or Defendant USITC received the Fairfield Sentry-Union Global A Fund Subsequent Transfers, totaling approximately $6,477,447; and Defendant Union Strategy Fund and/or Defendant USITC received the Fairfield Sentry-Union Strategy Fund Subsequent Transfers, totaling approximately $1,445,016 (collectively, as defined above, the "Fairfield Sentry Subsequent Transfers"). The Fairfield Sentry Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**Response:**    The Union Securities Defendants deny each and every allegation in paragraph 52 of the Complaint, except the Union Securities Defendants admit that Defendant Union Global Fund received approximately $9,283,664 from Fairfield Sentry, Defendant Union Global A Fund received approximately $6,477,447 from Fairfield Sentry, and Defendant Union Strategy Fund received approximately $1,445,016 from Fairfield Sentry.

53.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Union Securities Defendants.

**Response**:    The Union Securities Defendants deny each and every allegation in paragraph 53 of the Complaint.

54.    The Union Securities Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

**Response**:    The Union Securities Defendants deny each and every allegation in paragraph 54 of the Complaint.

55.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Union Securities Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response**:    Paragraph 55 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, the Union Securities Defendants deny each and every allegation in paragraph 55 of the Complaint.

## RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF

The Union Securities Defendants deny and dispute each and every allegation and request for relief contained in the WHEREFORE Paragraph following paragraph 55 of the Complaint.

## AFFIRMATIVE DEFENSES

Meritz reserves the right to amend this Answer to assert other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.  In asserting the following defenses, Meritz does not intend to suggest that matters designated herein as "defenses" are not elements of the Trustee's *prima face* case on the Trustee's purported claims or that they are not matters as to which the Trustee bears the burden of proof. These defenses are set forth cumulatively and in the alternative.

### FIRST AFFIRMATIVE DEFENSE
**Failure to State a Claim**
**(Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))**

1.       The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in the Union Securities Defendants' Motion to Dismiss the Complaint, dated April 4, 2022 [Dk. No. 98] and proceedings thereon.

### SECOND AFFIRMATIVE DEFENSE
**Lack of Personal Jurisdiction**

2.       This Court lacks personal jurisdiction over the Union Securities Defendants, for the reasons included in the Union Securities Defendants' Motion to Dismiss the Complaint, dated April 4, 2022 [Dk. No. 98] and proceedings thereon.

### THIRD AFFIRMATIVE DEFENSE
**Bankruptcy Code Good Faith Defense**
**(11 U.S.C. § 550(b))**

3.       The alleged Fairfield Sentry Subsequent Transfers may not be recovered from the Union Securities Defendants because they took for value, in good faith, and without knowledge of the alleged voidability of the Fairfield Sentry Subsequent Transfers within the meaning of 11 U.S.C. § 550(b).

4.       The Union Securities Defendants took the Fairfield Sentry Subsequent Transfers for value because they were made in exchange for the Union Securities Defendants' surrender of their shares in those funds.  Furthermore, Defendant Union Global Fund subscribed $9,827,940, Defendant Union Global A Fund subscribed $6,426,974, and Defendant Union Strategy Fund subscribed $1,386,090, and thus each provided value in at least that amount.

5.       The Union Securities Defendants did not have actual knowledge of any fraudulent purpose behind the transfers they received or that BLMIS was not trading securities or was a fraud or a Ponzi scheme or that Fairfield Sentry or its directors, officers, employees, agents, or

consultants allegedly knew or suspected that BLMIS was not trading securities or was a fraud or a Ponzi scheme.

6.      The Union Securities Defendants did not know facts at the time of the Fairfield Sentry Subsequent Transfers that would have prompted a reasonable person in their position to conduct further inquiry into whether there was any fraud behind the transfers.

7.      Even if the Union Securities Defendants had been on inquiry notice of a possible fraud behind the transfers they received, a diligent inquiry by the Union Securities Defendants would not have discovered that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Other entities, including the Securities and Exchange Commission, with greater investigatory tools and resources than the Union Securities Defendants, and with more access to BLMIS personnel and documentation than the Union Securities Defendants, investigated BLMIS but failed to uncover its fraud before December 2008.

8.      The Union Securities Defendants did not have actual knowledge of the alleged voidability of the Fairfield Sentry Initial Transfers when they received each of the Fairfield Sentry Subsequent Transfers.

## FOURTH AFFIRMATIVE DEFENSE
### No Customer Property
### (15 U.S.C. § 78fff-2(c)(3))

9.      The property that the Union Securities Defendants received from Fairfield Sentry was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and therefore the property is not recoverable by the Trustee from the Union Securities Defendants.  Upon information and belief, at least one of the redemption payments received by the Union Securities Defendants from Fairfield Sentry could not have come from BLMIS because prior avoidable transfers from BLMIS to Fairfield Sentry had been distributed by Fairfield Sentry to other investors or Fairfield Sentry affiliates before Fairfield Sentry made its transfer to the Union

Securities Defendants and was instead sourced from subscription payments made to Fairfield Sentry by its investors.

### FIFTH AFFIRMATIVE DEFENSE
### Bankruptcy Code Safe Harbor
### (11 U.S.C. § 546(e))

10.     The alleged Fairfield Sentry Subsequent Transfers to the Union Securities Defendants may not be recovered because the alleged Fairfield Sentry Initial Transfers were (i) made by or to, or for the benefit of, a stockbroker, financial institution, financial participant, or other covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract; and (iii) made more than two years before the petition date and/or were not made with actual intent to defraud.

11.     The Trustee may not rely on a "Ponzi scheme presumption" to prove that the initial transfers from BLMIS to Fairfield Sentry were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

12.     At the time of the alleged transfers from Fairfield Sentry to the Union Securities Defendants, the Union Securities Defendants did not have actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

13.     Any portion of the Fairfield Six-Year Transfers allegedly received by the Union Securities Defendants are not recoverable pursuant to 11 U.S.C. § 546(e).

### SIXTH AFFIRMATIVE DEFENSE
### Initial Transfer Not Avoided
### (11 U.S.C. § 550(a))

14.     The Trustee cannot recover the Fairfield Sentry Subsequent Transfers because he has not avoided the initial transfers from BLMIS to Fairfield Sentry.

SMRH:4860-7935-2375.2

## SEVENTH AFFIRMATIVE DEFENSE
### Single Satisfaction
### (11 U.S.C. § 550(d))

15.     Under section 550(d) of the Bankruptcy Code, the Trustee may not recover any

subsequent transfer from the Union Securities Defendants to the extent he has recovered from

Fairfield Sentry or any other immediate or mediate transferee the amount of the avoided initial

transfer that included the customer property that the Trustee alleges the Union Securities

Defendants received.

## EIGHTH AFFIRMATIVE DEFENSE
### New York Debtor and Creditor Law
### (N.Y. Debt & Cred §§ 273-79; 11 U.S.C. § 544)

16.     The claims against the Union Securities Defendants are barred, in whole or in part,

because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of

the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York

Debtor and Creditor Law with sufficient particularity and factual support.

## NINTH AFFIRMATIVE DEFENSE
### New York Debtor and Creditor Law
### (N.Y. Debt & Cred § 278)

17.     The claims against the Union Securities Defendants are barred, in whole or in part,

because the Fairfield Sentry Subsequent Transfers were taken for fair consideration and without

knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law,

and/or without actual fraudulent intent and for fair consideration, as provided by section 278(2) of

the New York Debtor and Creditor Law.

## TENTH AFFIRMATIVE DEFENSE
### No Interest

18.     The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## ELEVENTH AFFIRMATIVE DEFENSE
### Unreasonable Delay

19.     The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago and concerns transfers made more than 17 years ago, is unreasonable and unfairly prejudices the Union Securities Defendants' ability to defend themselves.

## TWELFTH AFFIRMATIVE DEFENSE
### Extraterritoriality

20.     The Trustee's recovery from the Union Securities Defendants of any transfer from Fairfield Sentry would constitute an impermissible extraterritorial application of U.S. law.

## THIRTEENTH AFFIRMATIVE DEFENSE
### Comity

21.     The Trustee's recovery from the Union Securities Defendants of any transfer from Fairfield Sentry would violate principles of comity.

## FOURTEENTH AFFIRMATIVE DEFENSE
### Preservation of Rights
### (11 U.S.C. § 502(h))

22.     To the extent the Trustee recovers from the Union Securities Defendants, the Union Securities Defendants reserve their right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, the Union Securities Defendants hereby demand a jury trial on all claims and issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

The Union Securities Defendants do not consent to entry of final orders or judgment by the Bankruptcy Court.

## <u>DEFENDANTS' REQUEST FOR RELIEF</u>

WHEREFORE, the Union Securities Defendants request that this Court dismiss the

Complaint with prejudice, grant the Union Securities Defendants attorneys' fees, costs,

disbursements, and grant such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          November 1, 2022

                                        By: */s/ Michael T. Driscoll*_____

                                        SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                        Michael T. Driscoll
                                        Blanka K. Wolfe
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Telephone: (212) 653-8700
                                        mdriscoll@sheppardmullin.com
                                        bwolfe@sheppardmullin.com

                                        *Attorneys for the Union Securities Defendants*

## **CERTIFICATE OF SERVICE**

Michael T. Driscoll, certifies that:

1.     I am not a party to the action, am over 18 years of age and reside in New York, New York.

2.     On the 1st day of November, 2022, I caused the foregoing *Answer with Affirmative Defenses and Jury Demand* to be served by CM/ECF on all counsel of record in the above-referenced adversary proceeding.

Dated: November 1, 2022
      New York, New York

*/s/ Michael T. Driscoll*
      Michael T. Driscoll