SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

*Counsel for Defendant Meritz Fire & Marine Insurance Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant, | Adv. Pro. No. 08-01789 (cgm)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>MERITZ FIRE & MARINE INSURANCE CO., LTD.,<br><br>        Defendant. | Adv. Pro. No. 11-02539 (CGM)<br><br>**ANSWER WITH AFFIRMATIVE DEFENSES AND JURY DEMAND** |

Defendant Meritz Fire & Marine Insurance Co., Ltd. ("Meritz"), by and through its

undersigned counsel, as and for its Answer to the Complaint of Irving H. Picard (the "Trustee" or

"Plaintiff"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC

("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff, individually, under

the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, respectfully avers the

following:

## I.    NATURE OF THE ACTION[1]

1.      This adversary proceeding is part of the Trustee's continuing efforts to recover
BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff") and others.

**Response:**    Meritz denies each and every allegation in paragraph 1 of the Complaint,

except Meritz admits that the Trustee purports to bring this adversary proceeding as part of the

Trustee's efforts to recover BLMIS Customer Property within the meaning of 15 U.S.C. § 78lll(4)

and, upon information and belief, Madoff perpetrated a Ponzi scheme.

2.      With this Complaint, the Trustee seeks to recover the equivalent of at least
$21,855,898 in subsequent transfers of Customer Property made to Defendant Meritz.    The
subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry
Limited ("Fairfield Sentry"), which was a Madoff feeder fund.    Fairfield Sentry is currently in
liquidation in the British Virgin Islands ("BVI").    It was a BVI company that had direct customer
accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing
assets with BLMIS.    Fairfield Sentry maintained in excess of 95% of its assets in BLMIS customer
accounts.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 2 of the Complaint and on that basis denies each and

---

[1] Meritz does not deem the section headings in the Complaint to constitute allegations of the Complaint.  However, to
the extent any section headings are allegations, Meritz admits or denies them consistent with its responses to the
allegations contained in the numbered paragraphs of the Complaint.

[2] SIPA § 78lll(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for
the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property
transferred by the debtor, including property unlawfully converted.

every allegation in paragraph 2 of the Complaint, except Meritz denies that it received subsequent

transfers of Customer Property from BLMIS or Fairfield Sentry, and Meritz admits that the Trustee

seeks to recover $21,855,898 in alleged subsequent transfers made to Meritz and, upon information

and belief, that Fairfield Sentry was a BVI company that had direct customer accounts with

BLMIS's investment advisory business and is currently in liquidation in the BVI.

3.      When Defendant Meritz received the subsequent transfers of BLMIS Customer
Property, Defendant Meritz was a financial services group with business lines that included
insurance, securities, investment banking, asset management, and information services.

**Response**:      Meritz denies each and every allegation in paragraph 3 of the Complaint,

including that it received subsequent transfers of BLMIS Customer Property.

## II.    **JURISDICTION AND VENUE**

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority
under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title
11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New
York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279
(McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Meritz as
a subsequent transferee of funds originating from BLMIS.

**Response**:      Paragraph 4 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, Meritz denies each and every allegation

in paragraph 4 of the Complaint, except Meritz admits that the Trustee has brought this adversary

proceeding.

5.      This is an adversary proceeding brought in this Court, in which the main
underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is
pending.  The SIPA Case was originally brought in the United States District Court for the
Southern District of New York (the "District Court") as *Securities Exchange Commission v.
Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court
Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C.
§ 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response**:      Paragraph 5 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, Meritz denies each and every allegation

in paragraph 5 of the Complaint, including that the Court has jurisdiction to enter a final order or

judgment in this proceeding, except Meritz admits that this is an adversary proceeding brought in

this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789

(BRL) (the "SIPA Case"), is pending.

6.      Defendant Meritz is subject to personal jurisdiction in this judicial district because
it purposely availed itself of the laws and protections of the United States and the state of New
York by, among other things, knowingly directing funds to be invested with New York-based
BLMIS through Fairfield Sentry.  Defendant Meritz knowingly received transfers of Customer
Property from BLMIS.  The Trustee's investigation to date reveals that Defendant Meritz obtained
this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group
("FGG") managed Madoff feeder fund.  By directing its investment through FGG, Defendant
Meritz knowingly accepted the rights, benefits, and privileges of conducting business and/or
transactions in the United States and New York.  Upon information and belief, Defendant Meritz
entered into a subscription agreement with Fairfield Sentry under which Defendant Meritz
submitted to New York jurisdiction, sent a copy of the subscription agreement to FGG's New York
City office, wired funds to Fairfield Sentry through a bank in New York, and regularly
communicated with its Fairfield Sentry account representatives located in FGG's New York City
office.  Upon information and belief, Defendant Meritz also met  with  its Fairfield Sentry account
representatives in FGG's New York City office.  Defendant Meritz thus derived significant
revenue from New York and maintained minimum contacts and/or general business contacts with
the United States and New York in connection with the claims alleged herein.

**Response:**      Meritz denies each and every allegation in paragraph 6 of the Complaint,

including that it is subject to personal jurisdiction in this judicial district, except Meritz admits that

it entered into a subscription agreement with Fairfield Sentry.

7.      Defendant Meritz should reasonably expect to be subject to New York  jurisdiction
and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302
(McKinney 2001) and Bankruptcy Rule 7004.

**Response:**      Paragraph 7 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, Meritz denies each and every allegation

in paragraph 7 of the Complaint.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response:**      Paragraph 8 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, Meritz denies each and every allegation

in paragraph 8 of the Complaint, including that the Court has jurisdiction to enter a final order or judgment in this proceeding, except Meritz admits this adversary proceeding is of a kind specified as a core proceeding in 28 U.S.C. § 157(b)(2)(H).

9.      Venue in this District is proper under 28 U.S.C. § 1409.

**Response:**      Paragraph 9 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Meritz admits the allegation in paragraph 9 of the Complaint.

## III.    **BACKGROUND**

10.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**Response:**      Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and on that basis denies each and every allegation in paragraph 10 of the Complaint, except Meritz admits upon information and belief that Madoff was arrested on or about the Filing Date and that the SEC filed a complaint against BLMIS.

11.      On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response:**      Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and on that basis denies each and every allegation in paragraph 11 of the Complaint, except Meritz respectfully refers this Court to the public record as to any matters of public record.

12.      On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District

Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and on that basis denies each and every allegation in paragraph 12 of the Complaint, except Meritz respectfully refers this Court to the public record as to any matters of public record.

13.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c.    removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and on that basis denies each and every allegation in paragraph 13 of the Complaint, except Meritz respectfully refers this Court to the public record as to any matters of public record.

14.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of the Complaint and on that basis denies each and every allegation in paragraph 14 of the Complaint, except Meritz respectfully refers this Court to the public record as to any matters of public record.

15.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted

that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 15 of the Complaint and on that basis denies each

and every allegation in paragraph 15 of the Complaint, except Meritz respectfully refers this Court

to the public record as to any matters of public record.

16.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 16 of the Complaint and on that basis denies each

and every allegation in paragraph 16 of the Complaint, except Meritz respectfully refers this Court

to the public record as to any matters of public record.

## IV.    TRUSTEE'S POWERS AND STANDING

17.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**Response:**    Paragraph 17 of the Complaint sets forth legal conclusions to which no

response is required. To the extent a response is required, Meritz denies having sufficient

knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and on that basis denies each and every allegation in paragraph 17 of the Complaint.

18.     Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response:**     Paragraph 18 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and on that basis denies each and every allegation in paragraph 18 of the Complaint.

19.     Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response:**     Paragraph 19 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and on that basis denies each and every allegation in paragraph 19 of the Complaint.

20.     The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544 and 704(a)(1), because, among other reasons, the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**Response:**     Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and on that basis denies each and every allegation in paragraph 20 of the Complaint.

## V.     **THE DEFENDANT**

21.     Defendant Meritz is a public limited company maintaining its business at 825-2 Yeoksam-Dong, Gangnam-Gu, Seoul, 150878, Republic of Korea.

**Response:**      Meritz admits the allegations in paragraph 21 of the Complaint.

## VI.      THE PONZI SCHEME

22.      BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**Response:**      Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 22 of the Complaint and on that basis denies each

and every allegation in paragraph 22 of the Complaint.

23.      Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**Response:**      Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 23 of the Complaint and on that basis denies each

and every allegation in paragraph 23 of the Complaint.

24.      The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**Response:**      Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 24 of the Complaint and on that basis denies each

and every allegation in paragraph 24 of the Complaint.

25.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxx703.

**Response:**     Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 25 of the Complaint and on that basis denies each

and every allegation in paragraph 25 of the Complaint.

26.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response:**     Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 26 of the Complaint and on that basis denies each

and every allegation in paragraph 26 of the Complaint.

27.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**Response:**     Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 27 of the Complaint and on that basis denies each

and every allegation in paragraph 27 of the Complaint.

28.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and on that basis denies each and every allegation in paragraph 28 of the Complaint.

29.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and on that basis denies each and every allegation in paragraph 29 of the Complaint.

30.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and on that basis denies each and every allegation in paragraph 30 of the Complaint.

31.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts.  When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth only a fraction of that amount.  Customer accounts had not accrued any real profits because virtually no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31 of the Complaint and on that basis denies each and every allegation in paragraph 31 of the Complaint.

32.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and on that basis denies each and every allegation in paragraph 32 of the Complaint.

## VII.    THE TRANSFERS

33.    Defendant Meritz received subsequent transfers from Fairfield Sentry, which maintained customer accounts with BLMIS.

**Response:**    Meritz denies each and every allegation in paragraph 33 of the Complaint, except Meritz admits, upon information and belief, that Fairfield Sentry maintained customer accounts with BLMIS.

### A.    Initial Transfers From BLMIS To Fairfield Sentry

34.    The Trustee has filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Sentry Amended Complaint as if fully set forth herein.

**Response:**    Meritz (i) admits that the Trustee filed an action styled as *Picard v. Fairfield Sentry, Ltd., et al*., Adv. Pro No. 09-1239 (BRL) (the "Sentry Action"), (ii) denies having sufficient knowledge and information to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action and on that basis denies such allegations, (iii) denies that the initial transfers of Customer Property to Fairfield Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (iv) to the extent necessary to support such denial, denies having sufficient knowledge and information to form a belief as to the truth of the allegations and on that basis denies each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Fairfield Sentry are or were avoided or avoidable, and (v) objects to the incorporation by reference of, and therefore does not answer, each and every

-12-

other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in

this adversary proceeding of any issue implicated by any of the three complaints in the Sentry

Action other than the issue of the avoidance or avoidability of the initial transfers of Customer

Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield

Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their

contents. To the extent any further response is required, Meritz denies having sufficient knowledge

and information to form a belief as to the truth of the remaining allegations in paragraph 34 of the

Complaint and on that basis denies such allegations.

35.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield
Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield
Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning
of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 544, 550, and 551 of the
Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly
SIPA § 78fff-2(c)(3).

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 35

of the Complaint and on that basis denies such allegations. The remaining allegations in paragraph

35 of the Complaint set forth legal conclusions to which no response is required. To the extent a

response is required, Meritz denies each and every remaining allegation in paragraph 35 of the

Complaint.

36.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion
which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the
"Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers
were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable,
and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable
provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 36

of the Complaint and on that basis denies such allegations. The remaining allegations in paragraph

36 of the Complaint set forth legal conclusions to which no response is required.  To the extent a

response is required, Meritz denies each and every remaining allegation in paragraph 36 of the

Complaint.

37.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion
which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the
"Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference Period
Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4),
are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and
applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 37

of the Complaint and on that basis denies such allegations.  The remaining allegations in paragraph

37 of the Complaint set forth legal conclusions to which no response is required.  To the extent a

response is required, Meritz denies each and every remaining allegation in paragraph 37 of the

Complaint.

38.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial
Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as
the "Fairfield Sentry Initial Transfers."  Charts setting forth these transfers  are attached as Exhibits
A and B.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 38 of the Complaint and on that basis denies each

and every allegation in paragraph 38 of the Complaint.

39.    Pursuant to the Bankruptcy Court's June 7 and Jun 10, 2011 orders, the Bankruptcy
Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement
Agreement").  As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court
entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000.
Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement
Agreement.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 39 of the Complaint and on that basis denies each

and every allegation in paragraph 39 of the Complaint, except Meritz respectfully refers this Court

to the public record as to any matters of public record.

### B.    Subsequent Transfers From Fairfield Sentry To Defendant Meritz

40.    Based on the Trustee's investigation to date, approximately $21,855,898 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Meritz (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**Response:**    Meritz denies each and every allegation in paragraph 40 of the Complaint,

except Meritz admits that it received approximately $21,855,898 from Fairfield Sentry.

41.    As set forth in paragraph 40, a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Meritz and is recoverable from Defendant Meritz pursuant to section 550 of the Bankruptcy Code.

**Response:**    Paragraph 41 of the Complaint sets forth legal conclusions to which no

response is required. To the extent a response is required, Meritz denies each and every allegation

in paragraph 41 of the Complaint.

42.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response:**    Meritz denies having sufficient knowledge or information to form a belief

as to the truth of the allegations in paragraph 42 of the Complaint and on that basis denies each

and every allegation in paragraph 42 of the Complaint.

### COUNT ONE
### RECOVERY OF SUBSEQUENT TRANSFERS –
### 11 U.S.C. §§ 550(a) AND 551

43.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response:**    Meritz incorporates by reference its answers to the allegations contained in

the previous paragraphs of the Complaint as if fully rewritten herein.

44.    Defendant Meritz received the Fairfield Sentry Subsequent Transfers, totaling approximately $21,855,898, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

**Response:**    Meritz denies each and every allegation in paragraph 44 of the Complaint,

except Meritz admits that it received approximately $21,855,898 from Fairfield Sentry.

45.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Meritz.

**Response:**    Meritz denies each and every allegation in paragraph 45 of the Complaint.

46.    Defendant Meritz is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**Response:**    Meritz denies each and every allegation in paragraph 46 of the Complaint.

47.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Meritz recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response:**    Paragraph 47 of the Complaint sets forth legal conclusions to which no

response is required.  To the extent a response is required, Meritz denies each and every allegation

in paragraph 47 of the Complaint.

## RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF

Meritz denies and disputes each and every allegation and request for relief contained in the

WHEREFORE Paragraph following paragraph 47 of the Complaint.

## AFFIRMATIVE DEFENSES

Meritz reserves the right to amend this Answer to assert other and further defenses, cross-

claims, and/or third party claims when and if, in the course of investigation, discovery, or

preparation for trial, it becomes appropriate to do so.  In asserting the following defenses, Meritz

does not intend to suggest that matters designated herein as "defenses" are not elements of the

Trustee's *prima face* case on the Trustee's purported claims or that they are not matters as to which

the Trustee bears the burden of proof. These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim
### (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

1.      The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Meritz's Motion to Dismiss the Complaint, dated April 11, 2022 [Dk. No. 119] and proceedings thereon.

## SECOND AFFIRMATIVE DEFENSE
### Lack of Personal Jurisdiction

2.      This Court lacks personal jurisdiction over Meritz, for the reasons included in Meritz's Motion to Dismiss the Complaint, dated April 11, 2022 [Dk. No. 119] and proceedings thereon..

## THIRD AFFIRMATIVE DEFENSE
### Bankruptcy Code Good Faith Defense
### (11 U.S.C. § 550(b))

3.      The alleged Fairfield Sentry Subsequent Transfers may not be recovered from Meritz because Meritz took for value, in good faith, and without knowledge of the alleged voidability of the Fairfield Sentry Subsequent Transfers within the meaning of 11 U.S.C. § 550(b).

4.      Meritz took the Fairfield Sentry Subsequent Transfers for value because they were made in exchange for Meritz's surrender of its shares in those funds.  Furthermore, Meritz subscribed $20,000,000.00 in Fairfield Sentry, and thus provided value in at least that amount.

5.      Meritz did not have actual knowledge of any fraudulent purpose behind the transfers it received or that BLMIS was not trading securities or was a fraud or a Ponzi scheme or that Fairfield Sentry or its directors, officers, employees, agents, or consultants allegedly knew or suspected that BLMIS was not trading securities or was a fraud or a Ponzi scheme.

SMRH:4866-8333-2151.4

6.      Meritz did not know facts at the time of the Fairfield Sentry Subsequent Transfers that would have prompted a reasonable person in Meritz's position to conduct further inquiry into whether there was any fraud behind the transfers.

7.      Even if Meritz had been on inquiry notice of a possible fraud behind the transfers it received, a diligent inquiry by Meritz would not have discovered that BLMIS was not trading securities or was a fraud or a Ponzi scheme.  Other entities, including the Securities and Exchange Commission, with greater investigatory tools and resources than Meritz, and with more access to BLMIS personnel and documentation than Meritz, investigated BLMIS but failed to uncover its fraud before December 2008.

8.      Meritz did not have actual knowledge of the alleged voidability of the Fairfield Sentry Initial Transfers when it received each of the Fairfield Sentry Subsequent Transfers.

**FOURTH AFFIRMATIVE DEFENSE**
**No Customer Property**
**(15 U.S.C. § 78fff-2(c)(3))**

9.      The property that Meritz received from Fairfield Sentry was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and therefore the property is not recoverable by the Trustee from Meritz.  Upon information and belief, at least one of the redemption payments Meritz received from Fairfield Sentry could not have come from BLMIS because prior avoidable transfers from BLMIS to Fairfield Sentry had been distributed by Fairfield Sentry to other investors or Fairfield Sentry affiliates before Fairfield Sentry made its transfer to Meritz and was instead sourced from subscription payments made to Fairfield Sentry by its investors.

## FIFTH AFFIRMATIVE DEFENSE
### Bankruptcy Code Safe Harbor
### (11 U.S.C. § 546(e))

10.     The alleged Fairfield Sentry Subsequent Transfers to Meritz may not be recovered because the alleged Fairfield Sentry Initial Transfers were (i) made by or to, or for the benefit of, a stockbroker, financial institution, financial participant, or other covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract; and (iii) made more than two years before the petition date and/or were not made with actual intent to defraud.

11.     The Trustee may not rely on a "Ponzi scheme presumption" to prove that the initial transfers from BLMIS to Fairfield Sentry were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

12.     At the time of the alleged transfers from Fairfield Sentry to Meritz, Meritz did not have actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

13.     Any portion of the Fairfield Six-Year Transfers allegedly received by Meritz are not recoverable pursuant to 11 U.S.C. § 546(e).

## SIXTH AFFIRMATIVE DEFENSE
### Initial Transfer Not Avoided
### (11 U.S.C. § 550(a))

14.     The Trustee cannot recover the Fairfield Sentry Subsequent Transfers because he has not avoided the initial transfers from BLMIS to Fairfield Sentry.

## SEVENTH AFFIRMATIVE DEFENSE
### Single Satisfaction
### (11 U.S.C. § 550(d))

15.     Under section 550(d) of the Bankruptcy Code, the Trustee may not recover any subsequent transfer from Meritz to the extent he has recovered from Fairfield Sentry or any other

immediate or mediate transferee the amount of the avoided initial transfer that included the customer property that the Trustee alleges Meritz received.

### EIGHTH AFFIRMATIVE DEFENSE
### No Interest

16.     The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

### NINTH AFFIRMATIVE DEFENSE
### Unreasonable Delay

17.     The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago and concerns transfers made more than 17 years ago, is unreasonable and unfairly prejudices Meritz's ability to defend itself.

### TENTH AFFIRMATIVE DEFENSE
### Extraterritoriality

18.     The Trustee's recovery from Meritz of any transfer from Fairfield Sentry would constitute an impermissible extraterritorial application of U.S. law.

### ELEVENTH AFFIRMATIVE DEFENSE
### Comity

19.     The Trustee's recovery from Meritz of any transfer from Fairfield Sentry would violate principles of comity.

### TWELFTH AFFIRMATIVE DEFENSE
### Preservation of Rights
### (11 U.S.C. § 502(h))

20.     To the extent the Trustee recovers from Meritz, Meritz reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

### <u>JURY TRIAL DEMANDED</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Meritz hereby demands a jury trial on all claims and issues that may be tried by a jury.

## <u>STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)</u>

Meritz does not consent to entry of final orders or judgment by the Bankruptcy Court.

## <u>DEFENDANT'S REQUEST FOR RELIEF</u>

WHEREFORE, Meritz requests that this Court dismiss the Complaint with prejudice, grant

Meritz attorneys' fees, costs, disbursements, and grant such other and further relief as the Court

deems just and proper.

Dated:    New York, New York
          November 1, 2022

By:  */s/ Michael T. Driscoll*_____

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

*Counsel for Defendant Meritz Fire & Marine Insurance
Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

Michael T. Driscoll, certifies that:

1.    I am not a party to the action, am over 18 years of age and reside in New York, New York.

2.    On the 1st day of November, 2022, I caused the foregoing *Answer with Affirmative Defenses and Jury Demand* to be served by CM/ECF on all counsel of record in the above-referenced adversary proceeding.


Dated: November 1, 2022
New York, New York

*/s/ Michael T. Driscoll*
Michael T. Driscoll