USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/07/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                :

In Re: Bernard L. Madoff Investment Securities LLC   :

                                        Debtor.    :

----------------------------------------------------------------- :       22-CV-3914 (VEC)
                                                :

BONNIE JOYCE KANSLER *et al.*,                 :       OPINION & ORDER

                              Appellants,    :

                              -against-

IRVING H. PICARD, TRUSTEE,                  :

                              Appellee.    :
------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

        This appeal arises out of one of the many clawback actions brought by Irving H. Picard ("Trustee"), the Trustee in the liquidation proceedings for Bernard L. Madoff Investment Securities LLC ("BLMIS"). The parties do not dispute that the Trustee is entitled to avoid approximately $1.2 million in transfers from BLMIS to its former client Fairfield Pagma Associates, LP ("Fairfield Pagma"), pursuant to Section 550(a) of the Bankruptcy Code, or that the general partners of Fairfield Pagma at the time of the transfers are liable for its debts to the BLMIS estate. The executrix of the estate of Marjorie Kleinman ("Marjorie") and Seymour Kleinman ("Seymour")[1] appeal the Bankruptcy Court's conclusion at summary judgment that

---

[1]       Appellants criticize the Trustee in a footnote for not moving to substitute the executor of Seymour's estate in his stead because Seymour reportedly died in September 2015, Appellants' Brief, Dkt. 9, at 3 n.2, but Appellants do not expressly contest the Bankruptcy Court's decision that the Trustee's ninety-day window to amend the complaint has not been triggered because Defendants have not filed a formal suggestion of death, *see Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 640 B.R. 285, 295 (Bankr. S.D.N.Y. 2022). The Court need not address this issue on appeal, *see Fox v. Nat'l R.R. Passenger Corp.*, 370 F. App'x 156, 156 (2d Cir. 2010) (noting that "when a litigant . . . raises an issue before the district court but does not raise it on appeal, it is abandoned," and an appellant's "single conclusory sentence" in a brief on appeal is "tantamount to a waiver of that claim") (internal quotation marks and citations omitted), but recommends that Appellants file a suggestion of death and serve it on the Trustee so that the parties in the case can be aligned with current reality.

Marjorie and Seymour were general partners of Fairfield Pagma when the fraudulent transfers occurred. For the following reasons, the Court concludes that the Bankruptcy Court erred and remands the case for further proceedings consistent with this Opinion and Order.

## BACKGROUND[2]

On December 3, 2010, the Trustee commenced this adversary proceeding against Fairfield Pagma and its alleged general partners: Seymour, Marjorie,[3] Seyfair, LLC ("Seyfair"), and Fairfox, LLC ("Fairfox") (together, "Defendants" or "Appellants"). *See generally* Compl., AA0008–AA0035. There is no dispute that less than two years prior to BLMIS's bankruptcy filing, Fairfield Pagma withdrew $1,247,929 in fictitious profits stemming from Bernard Madoff's Ponzi scheme. Trustee's Statement of Material Facts, AA0244–AA0277, ¶ 134.[4] It is also not disputed that Seymour and Marjorie were general partners of Fairfield Pagma at the time of its formation, and that Seyfair and Fairfox[5] were general partners of Fairfield Pagma from 2005 through the partnership's termination in 2010. Defs.' Counterstatement of Material Facts, AA1042–AA1047, ¶¶ 108–10. Liability depends on whether Seymour and Marjorie continued to be general partners after Seyfair and Fairfox became general partners.

There was minimal discovery in this case. In September 2015, Defendants answered the Complaint, denying that Seymour and Marjorie were general partners of Fairfield Pagma during the relevant period. Answer, AA0161–AA0181, ¶ 8. Defendants then filed initial disclosures

---

[2] "AA" citations in this opinion refer to Appellants' Appendix, Dkts. 9-1–13, and "TA" citations refer to the Trustee's Appendix, Dkt. 10-1.

[3] Upon Marjorie's death in 2014 and pursuant to a stipulation dated April 7, 2015, her estate and the estate's executrix were substituted as a Defendant in her stead. *See* TA044–TA047. "Marjorie" refers to the person Marjorie Kleinman, but "Defendants" and "Appellants" collectively include only the executrix of her estate.

[4] Appellants "do not dispute the Trustee's Statements of Material Fact Nos. 1 through 107 and Nos. 113-134." Defs.' Counterstatement of Material Facts, AA1042–AA1047, at 2.

[5] Fairfox and Seyfair were formed on December 13, 2004. *See* Defs.' Counterstatement of Material Facts ¶ 2.

2

identifying Marjorie's daughter and executrix of her estate, Bonnie Joyce Kansler ("B. Kansler"), as an individual who may be used to support their defenses, as well as three relevant categories of documents, including "Fairfield Pagma Associates, LP tax returns (2005 – 2008)." *See* Defs.' Initial Disclosures, AA1156–AA1161, at 3. As part of his initial disclosures, the Trustee produced a partnership account agreement between BLMIS and Fairfield Pagma.[6] The partnership account agreement identifies Seymour and Marjorie as general partners of Fairfield Pagma who have "unlimited liability for the obligations of the Partnership," and it states that "representations" made within the agreement "shall remain in effect until written notice to the contrary is received by" BLMIS.[7] *See* Trustee's Initial Disclosures, AA1165–AA1173, at 4–5; Account Agreement, AA0767–AA0768. In January 2017, the Trustee served interrogatories, document requests, and requests for admission on Fairfield Pagma and document requests on Marjorie's estate. *See* Neville Decl., AA1097–AA1101, ¶ 10. Defendants did not produce any documents or information in response, and the Trustee did not move to compel responses.[8] *See* Neville Decl. ¶¶ 10–15; Trustee Brief, Dkt. 10, at 4–5.

Discovery closed on November 14, 2017, and the Trustee moved for summary judgment. *See* Trustee Brief 5; Notice of Mot., AA0190–AA0192. In opposition to the Trustee's motion, Defendants submitted several declarations and accompanying exhibits, *see generally* AA1048–AA1119; the exhibits had not previously been produced to the Trustee, *see* AA1132.

As relevant to this appeal, Ronni Leo ("Leo"), Seymour's son and a certified public accountant, *see* Leo Decl., AA1111–AA1114, ¶¶ 1–2, stated in a declaration that:

---

[6] The partnership account agreement is undated, but it is undisputed that Fairfield Pagma's account was opened on January 22, 1993. *See* Trustee's Statement of Material Facts, AA0244–AA0277, ¶ 128.

[7] There is no evidence in the record that any Defendant ever provided written notice to BLMIS that the identity of the general partners had changed.

[8] At the time the requests were served, Fairfield Pagma no longer existed, and Seymour and Marjorie were dead. Neville Decl., AA1097–AA1101, ¶¶ 11–13.

3

- He prepared the tax returns, including Form K-1s, for Fairfield Pagma from 2003 through 2005 and provided "general support and assistance on tax related matters";

- Seyfair was formed in late 2004 to replace Seymour as general partner of Fairfield Pagma, and around that same time, Seymour contributed 100 percent of his general partnership interest in Fairfield Pagma ($35,000) to Seyfair and Seyfair contributed $35,000 to Fairfield Pagma for its initial capital contribution;[9]

- Fairfield Pagma's Form K-1s (attached to his declaration) reflect that Seymour and Marjorie each withdrew their capital investments in Fairfield Pagma ($35,000 and $50,000, respectively) and Seyfair and Fairfox each contributed corresponding initial capital to Fairfield Pagma ($35,000 and $50,000, respectively) as general partners; and

- Seymour and Marjorie were not general partners of Fairfield Pagma at any time from December 11, 2006 to December 11, 2008.

*See id.*, ¶¶ 2, 4, 7, 10; Schedule K-1s, AA1116–AA1119. The Bankruptcy Court admitted Leo's declaration and accompanying exhibits. *See Secs. Investor Prot. Corp.*, 640 B.R. at 293.

B. Kansler, Marjorie's daughter and also a certified public accountant, *see* B. Kansler Decl., AA1078–AA1081, ¶¶ 1–2, stated in her declaration that:

- She prepared Fairfield Pagma's tax returns in 2007 and 2008 and "provided general support and assistance on tax related matters during that time period";

- Fairfox was formed in late 2004 to replace Marjorie as general partner of Fairfield Pagma, and around that same time Marjorie contributed 100 percent of her general

---

[9] In exchange, Seymour received 100 percent of the ownership interest in Seyfair. *See* Leo Decl., AA1111–AA1114, ¶ 4.

4

- partnership interest in Fairfield Pagma ($50,000) to Fairfox and Fairfox contributed $50,000 to Fairfield Pagma for its initial capital contribution;[10]

- Form K-1s issued by Fairfield Pagma to Marjorie, Seymour, Fairfox, and Seyfair in 2005 (attached to Leo's declaration) reflect that Marjorie and Seymour each withdrew their capital investments in Fairfield Pagma and Fairfox and Seyfair each contributed corresponding initial capital to Fairfield Pagma as general partners; and

- Seymour and Marjorie were not general partners of Fairfield Pagma at any time from December 11, 2006 to December 11, 2008.

*See id.*, ¶¶ 2, 4, 7, 11. The Bankruptcy Court admitted B. Kansler's declaration and accompanying exhibits. *See Secs. Investor Prot. Corp.*, 640 B.R. at 294 n.8.

Adam Kansler ("A. Kansler"), Marjorie's grandson and an attorney, *see* A. Kansler Decl., AA1048–AA1051, ¶¶ 1–2, stated in a declaration that:

- In late 2004, to substitute Seyfair and Fairfox for Seymour and Marjorie as general partners of Fairfield Pagma, he prepared articles of organization and operating agreements for Seyfair and Fairfox;

- Seyfair's and Fairfox's operating agreements[11] provided that Seymour and Marjorie contributed 100 percent of their interests in Fairfield Pagma to Seyfair and Fairfox; and

- Seymour and Marjorie were not general partners of Fairfield Pagma at any time from December 11, 2006 to December 11, 2008.

---

[10] In exchange, Marjorie received 100 percent of the ownership interest in Fairfox. *See* B. Kansler Decl., AA1078–AA1081, ¶ 4.

[11] The purported operating agreements do not include specific dates beyond the year 2004, and both are unsigned. Fairfox's purported operating agreement misspells the entity's name. *See* Operating Agreements, AA1064–AA1077.

5

*See id.* ¶¶ 3–7, 11; Operating Agreements, AA1064–AA1077.  As further discussed below, the Bankruptcy Court did not admit A. Kansler's declaration or its accompanying exhibits.  *See Secs. Investor Prot. Corp.*, 640 B.R. at 293.

The Bankruptcy Court granted summary judgment in favor of the Trustee on April 13, 2022.  *See id.* at 296.  This appeal followed.

## DISCUSSION

Appellants argue that the Bankruptcy Court erred: (i) in excluding A. Kansler's declaration as a discretionary sanction under Federal Rule of Civil Procedure 37(c)(1); (ii) in concluding that there was no genuine issue of fact regarding whether Seymour and Marjorie were general partners of Fairfield Pagma when the fraudulent transfers occurred; and (iii) in awarding the Trustee prejudgment interest.  *See* Appellants' Brief, Dkt. 9, at 1–2.[12]  Because the Court finds that the Bankruptcy Court made an error of law in its analysis granting summary judgment, it does not address the final issue on appeal.

---

[12]  Appellants argue for the first time on appeal that the Trustee lacks standing to challenge Appellants' withdrawal as general partners.  *See* Appellants' Brief 11–12.  Putting aside the fact that this argument was not raised below, the only case Appellants cite in support of their argument, *Baird Ward Printing Co. v. Great Recipes Pub. Assocs.*, 811 F. 2d 305, 308–09 (6th Cir. 1987), is distinguishable.  The court in *Baird* held that a plaintiff creditor had no standing to challenge a former general partner's "attempted withdrawal and substitution" of a new general partner at trial, 811 F. 2d at 308, not that the creditor lacked standing to move for summary judgment against a purported general partner.

Appellants also argue that the Bankruptcy Court made improper determinations of fact.  Appellants' Brief 14–24.  Courts have "discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion."  *Presser v. Key Food Stores Co-Op., Inc.*, 316 F. App'x 9, 11 (2d Cir. 2009) (citation omitted).  The Bankruptcy Court was entitled to consider a letter in the record even though the letter was not mentioned in the parties' briefing.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *Ayazi v. United Fed'n of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012) (finding that "there was no error in the magistrate judge considering and relying on evidence not specifically cited by the [moving party] in its Local Rule 56.1 statement").  The cases Appellants cite are not to the contrary; they involve "*sua sponte*" summary judgment decisions based on novel legal theories, not summary judgment decisions based on evidence that is in the record but not mentioned in the parties' briefs.

Finally, Appellants accuse the Bankruptcy Court of improperly "rely[ing] upon the [written] notice provision" in Fairfield Pagma's partnership account agreement with BLMIS.  Appellants' Brief 21–22.  Contrary to Appellants' argument, the Bankruptcy Court did not hold that Appellants failed to establish a genuine dispute as to their general partnership status because they failed to notify BLMIS of their withdrawal; it merely referenced the written notice requirement as a source of evidence that could have been in Appellants' favor.  *See Secs. Investor Prot. Corp.*, 640 B.R. at 294–95.

6

I. **Legal Standard**

District courts have appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The purpose of the Rule 37(c)(1) exclusion is "to prevent the practice of 'sandbagging' an opposing party with new evidence," especially when, as here, new evidence is submitted for the purpose of precluding summary judgment. *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 606–07 (S.D.N.Y. 2004) (citations omitted). When determining whether to exclude such evidence, courts should generally consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (citation omitted).

The Court reviews the Bankruptcy Court's exclusion of evidence under Rule 37(c)(1) for abuse of discretion. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citation omitted). Abuse of discretion only lies if "(1) [the Bankruptcy Court's] decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294–95 (2d Cir. 2006) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

On an appeal from a bankruptcy court's summary judgment order, on the other hand, the standard of review is de novo, and the district court must draw all factual inferences in favor of

7

the non-moving party. *Hanover Direct, Inc. v. T.R. Acquisition Corp.*, 309 B.R. 830, 835 (S.D.N.Y. 2003). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Sec. & Exch. Comm'n v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### II. The Bankruptcy Court's Decision Rests on an Error of Law

The Bankruptcy Court held that summary judgment was appropriate because none of the evidence presented by Appellants, including the excluded A. Kansler declaration and its exhibits, created a question of fact whether Seymour and Marjorie remained as general partners of Fairfield Pagma at the time of the fraudulent transfers at issue in this case. *See Secs. Investor Prot. Corp.*, 640 B.R. at 294–95. While the Court tends to agree with that assessment, the Bankruptcy Court's analysis rested on the premise that "[o]nly a written notice to the other partners shows an effective withdrawal [as a general partner]." *Id.* at 294 (citing N.Y. P'ship Law § 121-602). Because none of the evidence presented by Appellants showed that written notice had been given to the other partners, that ended the inquiry, according to the Bankruptcy Court. *Id.* at 295.

While it is true that under New York law[13] "[a] general partner *may* withdraw from a limited partnership at any time by giving written notice to the other partners," N.Y. P'ship Law §

---

[13] The parties do not dispute that Fairfield Pagma was, at all relevant times, a New York limited partnership. *See* Defs.' Counterstatement of Material Facts ¶ 108.

121-602 (emphasis added), that is not the only way to cease being a general partner of a New York limited partnership, *see* N.Y. P'ship Law § 121-402 (listing eleven events that cause a person to cease being a general partner of a limited partnership, including "as provided in section 121-702" of the act). As may be relevant here, in the absence of contractual language to the contrary,[14] "[a] partner ceases to be a partner and to have the power to exercise any rights or powers of a partner upon assignment of all of his partnership interest." *Id.* § 121-702. "No special language or form is required for an assignment, so long as the intention to effect a present transfer is apparent." *Whalen v. Gerzof*, 615 N.Y.S.2d 465, 467 (3d Dep't 1994) (citation omitted); *see also TD Bank N.A. v. Hill*, 928 F.3d 259, 274 (3d Cir. 2019) (stating that an assignment agreement under New York law "need not comply with any formalities or invoke particular language to constitute an assignment") (citations omitted); *Citibank (S.D.), N.A. v. Martin*, 11 Misc. 3d 219, 226 (N.Y. Civ. Ct. 2005) (noting that in case of "oral assignment," the assignee must provide "evidence of consideration paid and delivery of the assignment") (citing *Hooker v. Eagle Bank of Rochester*, 30 N.Y. 83, 87 (1864)).

By assuming that New York law requires written notice for a general partner to withdraw from a limited partnership, the Bankruptcy Court failed adequately to consider whether, notwithstanding Defendants' failure to produce the documents in discovery, the operating agreements attached to A. Kansler's declaration create a material question of fact and are, therefore, sufficiently important to Defendants' case that the equities weigh in favor of excusing the failure to produce and admitting the "evidence."[15] In a similar vein, the Bankruptcy Court

---

[14] New York law generally does not require partnership agreements to be in writing. *See Gelman v. Buehler*, 20 N.Y.3d 534, 535–36 (2013). There is no evidence whether the Fairfield Pagma partnership agreement was in writing.

[15] The Bankruptcy Court noted that the agreements are "undated and unsigned" and "do not show the structure of the Fairfield Pagma partnership," *Secs. Investor Prot. Corp.*, 640 B.R. at 295, but the Court did not otherwise assess their evidentiary significance in determining whether an assignment took place under New York law. The Court also did not consider the evidentiary significance of the Form K-1s.

dismissed the significance of Form K-1s that purport to reflect Appellants' withdrawal of their capital contributions in Fairfield Pagma and Seyfair and Fairfox's corresponding infusions of capital into Fairfield Pagma without considering whether they also raise a material question of fact whether Appellants assigned their partnership interests before the fraudulent transfers took place.

This Court recognizes that, putting aside the failure to timely produce the documents, the admissibility and probative value of the documents are questionable. Because, however, those determinations should be made in the first instance by the Bankruptcy Court applying the proper substantive law, summary judgment is reversed.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's judgment granting summary judgment to the Trustee is VACATED, and the case is REMANDED for further proceedings consistent with this opinion and order.

**SO ORDERED.**

Date: **November 7, 2022**
      **New York, NY**

           **VALERIE CAPRONI**
           **United States District Judge**