**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05348 (CGM) |
| Plaintiff, | |
| v. | |
| NOMURA INTERNATIONAL PLC, | |
| Defendant. | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT NOMURA INTERNATIONAL PLC'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................3

    I.       THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS................................3

    II.      NOMURA'S INVESTMENTS IN THE FAIRFIELD FUNDS............................4

          A.     Nomura Purposefully Invested with BLMIS in New York ........................4

          B.     Nomura Used New York Bank Accounts for its Investments in the
                 Fairfield Funds ..........................................................................................5

          C.     Nomura Met and Communicated with FGG Personnel in New York
                 Regarding its Fairfield Fund Investments....................................................6

          D.     Nomura Executed Subscription Agreements and a Non-Disclosure
                 Agreement with New York Jurisdiction, Forum Selection, and
                 Choice-of-Law Provisions ..........................................................................6

          E.     Nomura Understood BLMIS's Significant Role With Respect to its
                 Harley Investment and Received the Harley Redemptions in its Own
                 New York Bank Account..............................................................................7

    III.     THE FAIRFIELD SETTLEMENT......................................................................8

ARGUMENT ...................................................................................................................8

    I.       THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
       NOMURA........................................................................................................8

          A.     Nomura Purposefully Availed Itself of the Laws and Privileges of
                 Conducting Business in New York by Investing with BLMIS Through
                 the Fairfield Funds ...................................................................................10

               1.     Nomura's Intentional Investment with BLMIS Through the
                       Fairfield Funds Establishes Minimum Contacts...........................11

                     a.     BLI and Recent Decisions of this Court Establish this
                            Court's Jurisdiction Over Nomura.....................................12

                     b.     Walden Does Not Save Nomura from this Court's
                            Jurisdiction .......................................................................14

i

2.      Nomura's Purposeful Use of New York Bank Accounts Establishes Specific Jurisdiction....................................................17

3.      Nomura's Contacts with FGG in New York Also Support Personal Jurisdiction ....................................................................21

4.      The Subscription Agreements and Non-Disclosure Agreement Evidence a Strong Nexus with New York ....................................24

B.    The Exercise of Personal Jurisdiction Over Nomura Is Reasonable .........25

C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery......28

CONCLUSION .....................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
　98 F.3d 25 (2d Cir. 1996)...................................................................................10

*Al Rushaid v. Pictet & Cie*,
　28 N.Y.3d 316 (2016) ...........................................................................17, 19, 20

*Arigna Tech. Ltd. v. Nissan Motor Co.*,
　No. 2:22-cv-00126 (JRG) (RSP), 2022 WL 3020136 (E.D. Tex. July 29,
　2022) ...............................................................................................................27, 28

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..........................................................................................22

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
　640 B.R. 604 (S.D.N.Y. 2022)...........................................................................19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
　902 F.2d 194 (2d Cir. 1990)................................................................................8

*Beacon Enters., Inc. v. Menzies*,
　715 F.2d 757 (2d Cir. 1983)..............................................................................23

*Berdeaux v. Onecoin Ltd.*,
　561 F. Supp. 3d 379 (S.D.N.Y. 2021)...............................................................20

*Burger King Corp. v. Rudzewicz*,
　471 U.S. 462 (1985)..............................................................................9, 10, 25

*Chase Manhattan Bank v. Banque Generale Du Com.*,
　No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ................25

*Chloé v. Queen Bee of Beverly Hills, LLC*,
　616 F.3d 158 (2d Cir. 2010)..............................................................................25

*CutCo Indus., Inc. v. Naughton*,
　806 F.2d 361 (2d Cir. 1986)..............................................................................10

*Dandong v. Pinnacle Performance Ltd.*,
　966 F. Supp. 2d 374 (S.D.N.Y. 2013)...............................................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
　722 F.3d 81 (2d Cir. 2013)..................................................................................8

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    102 F. App'x 192 (2d Cir. 2004) .........................................................................22

*Eldesouky v. Aziz*,
    No. 11-cv-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)...................17

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
    No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............28

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub
    nom. Fairfield Sentry Ltd. v. Citibank, N.A.*, No. 19-cv-3911 (VSB), 2022 WL
    4391023 (S.D.N.Y. Sept. 22, 2022).....................................................................24

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    26 N.Y.2d 280 (1970) ..........................................................................................17

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)..........................................................................9, 16, 20, 25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................................9

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)..................................................................................10

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-cv-3590 (LTS) (SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ............23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..............................................................................................15

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................17

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................................9

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) ....................................................................................................................28

*Leema Enters., Inc. v. Willi*,
    575 F. Supp. 1533 (S.D.N.Y. 1983).......................................................................18

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327, 338 (2012) ...................................................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)................................................................................19

*Maranga v. Vira*,
    386 F. Supp. 2d 299 (S.D.N.Y. 2005)...............................................................23

*McGee v. Int'l Life Ins. Co.*,
    335 U.S. 220 (1957)..............................................................................................9

*McKee Elec. Co. v. Rouland Borg*,
    20 N.Y.2d 377 (1967) ........................................................................................21

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)................................................................................10

*Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation
Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) .............................................................20

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
    Adv. Pro. No. 15-08207, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016).....................18

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic
Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ............................................................................19

*Picard v. Abu Dhabi Inv. Auth.*,
    Adv. Pro. No. 11092483 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct.
31, 2022) ................................................................................................................2

*Picard v. Banca Carige S.P.A.*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
30, 2022) ...................................................................................................1, 12, 14

*Picard v. Bank Hapoalim B.M.*,
    Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915 (Bankr. S.D.N.Y. Sept.
22, 2022) ................................................................................................................1

*Picard v. Banque Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
30, 2022) ..........................................................................................................1, 23

*Picard v. Banque Syz & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
14, 2022) ..........................................................................................................1, 21

*Picard v. Barfield Nominees Ltd.*,
    2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)..........................................1

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................................14, 26

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................................ *passim*

*Picard v. Cathay Life Ins. Co.*,
  Adv. Pro. No. 11-02568, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ...............2, 12

*Picard v. Citibank, N.A.*
  Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234 (Bankr. S.D.N.Y. Sept.
  27, 2022) .................................................................................................................................13

*Picard v. Citibank, N.A. (In re BLMIS)*,
  12 F.4th 171 (2d Cir. 2021), *cert. denied,* 142 S. Ct. 1209, 212 L. Ed. 2d 217
  (2022) ...................................................................................................................................3, 27

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..........................................................................8, 9, 10

*Picard v. First Gulf Bank*,
  Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
  18, 2022) ...................................................................................................................................1

*Picard v. Fullerton Capital Pte., Ltd.*,
  Adv. Pro. No. 12-01004,  2022 WL 16556714 (Bankr. S.D.N.Y. Oct. 28,
  2022) .........................................................................................................................................2

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
  Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10,
  2014) .......................................................................................................................................16

*Picard v. Korea Exch. Bank*,
  Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
  21, 2022) ...............................................................................................................................1, 21

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 76 (S.D.N.Y. 2012) ...............9, 11, 26

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
  Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
  10, 2022) ...............................................................................................................................1, 17

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022)............................................................................. *passim*

*Picard v. Parson Fin. Panama S.A.*,
  Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
  2022) .................................................................................................................1

*Picard v. Public Inst. for Soc. Sec.*,
  2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ............................................1

*Picard v. Quilvest Fin. Ltd.*,
  Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
  27, 2022) ...........................................................................................................1

*Picard v. Schroder & Co Bank AG*,
  Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept.
  27, 2022) ...........................................................................................................1

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
  Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept.
  19, 2022) ...........................................................................................................1

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
  Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7,
  2022) .................................................................................................................1

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
  Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
  18, 2022)............................................................................................................1

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)........................................................................11, 26, 27

*Rushaid v. Pictet & Cie*,
  No. 652375/11, 2014 WL 4226466 (N.Y. Sup. Ct. Aug. 26, 2014), *aff'd*, 127
  A.D.3d 610 (N.Y. App. Div. 2015), *rev'd*, 28 N.Y.3d 316 (2016).........................18

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011)................................................................27

*SPV Osus Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ............21

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)...............................................................................9

*Universal Trading & Inv. Co. v. Tymoshenko*,
  No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ...............20

*Walden v. Fiore*,
  571 U.S. 277 (2014).................................................................................. *passim*

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..................................................................................25

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ............................................................1

**Other Authorities**

Article 49(1)(e), *GDPR*: Regulation (EU) 2016/679, 2016 O.J. L 119/1 ...............................27, 28

CPLR 302(a)(1) ..................................................................................................................17, 23

Federal Rule of Civil Procedure 12(b)(2) ....................................................................................1

Guidelines 2/2018 on derogations of Article 49 under Regulation (EU) 2016/679 .....................28

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to defendant Nomura International plc's ("Nomura") motion to dismiss, ECF No. 125, the Trustee's Second Amended Complaint ("SAC"), ECF No. 121, pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion").[1]

## **PRELIMINARY STATEMENT**

As part of his continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, the Trustee seeks to recover $34,074,372 in subsequent transfers Nomura received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," together with Sentry, the "Fairfield Funds"). Nomura moves to dismiss the Trustee's SAC, arguing that this Court lacks personal jurisdiction over Nomura. This argument lacks merit. Nomura is no differently situated than the subsequent transferee defendants in other recovery actions that have recently come before this Court.[2]

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Nomura Int'l plc (In re BLMIS)*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y.).

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Public Inst. for Soc. Sec.*, 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022); *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept. 19, 2022); *Picard v. Korea Exch. Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ("*Korea Exch.*"); *Picard v. Bank Hapoalim B.M.*, Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915 (Bankr. S.D.N.Y. Sept. 22, 2022); *Picard v. Quilvest Fin. Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Schroder & Co Bank AG*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Barfield Nominees Ltd.*, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct.

This Court has specific personal jurisdiction over Nomura. Nomura purposefully invested in the Fairfield Funds knowing from the Fairfield Funds' documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of the funds' investments; that the Fairfield Funds fed substantially all of their funds into BLMIS; and that BLMIS was essential to their investments. Aware of BLMIS's central role in the Fairfield Funds, Nomura created marketing materials detailing many of these facts to promote its access to BLMIS through the Fairfield Funds. The marketing materials highlighted that the Fairfield Funds sent substantially all of their assets to BLMIS in New York and touted the "remarkably consistent" returns of Madoff's purported split-strike conversion strategy (the "SSC Strategy"). Nomura also used New York bank accounts to deposit and redeem funds from Sentry, and signed subscription agreements through which it submitted to the jurisdiction of New York courts. Further, Nomura communicated with Fairfield Greenwich Group ("FGG") personnel in New York and travelled to New York to meet with FGG personnel regarding Nomura's investments in the Fairfield Funds. This Court has repeatedly held that these contacts establish jurisdiction.

Nomura attempts to distinguish itself by arguing it did not intend to profit from BLMIS's investment performance because it was merely facilitating investments on behalf of unidentified foreign counterparties. This is irrelevant. Nomura admits that it invested in the Fairfield Funds and does not claim that it was acting as a conduit for these unnamed counterparties, which would in any event be inappropriate on a motion to dismiss. Investing with BLMIS was the entire point of Nomura's transactions with the Fairfield Funds, and just because Nomura chose to further market and monetize BLMIS's purported returns does not deprive this Court of jurisdiction.

---

7, 2022); *Picard v. Fullerton Capital Pte., Ltd.*, Adv. Pro. No. 12-01004, 2022 WL 16556714 (Bankr. S.D.N.Y. Oct. 28, 2022); *Picard v. Abu Dhabi Inv. Auth.*, Adv. Pro. No. 11092483 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct. 31, 2022); *Picard v. Cathay Life Ins. Co.*, Adv. Pro. No. 11-02568, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*").

## STATEMENT OF FACTS

**I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS out of New York, New York until its collapse in 2008.  *See* SAC ¶¶ 62, 64.  BLMIS was a registered broker-dealer in New York.  *Id*. ¶ 63.  BLMIS purported to operate three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* ¶ 64.  For its IA Business customers, BLMIS purportedly executed the SSC Strategy, which involved (a) investing in a basket of common stocks from the S&P 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury Bills when the money was out of the market.  *Id.* ¶¶ 75–78.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶ 68.  On December 11, 2008, Madoff's fraud was publicly revealed.  He was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 12.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).  The Fairfield Funds were the largest BLMIS feeder funds, funneling more than $7 billion into the BLMIS Ponzi scheme.  *See* Second Amended Complaint at 70, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

The Fairfield Funds were created, managed, and controlled by FGG, a *de facto* partnership headquartered in New York.  SAC ¶ 25.  Sentry custodied and invested substantially all of its assets with BLMIS.  *Id.* ¶ 26.  Sigma invested all of its assets in Sentry and, therefore, custodied

and invested substantially all of its assets with BLMIS.  *Id.* ¶ 27.  FGG managed and controlled the Fairfield Funds from its headquarters in New York.  *Id.* ¶¶ 26–27.

## II.    NOMURA'S INVESTMENTS IN THE FAIRFIELD FUNDS

Nomura is incorporated under the laws of the United Kingdom.  SAC ¶ 24.  Since at least 1998, Nomura has been registered with the U.S. Securities and Exchange Commission ("SEC") as an institutional investment manager.  *Id.* ¶ 30.  Since at least 1999, Nomura has filed required quarterly Form 13Fs with the SEC.  *Id.*

### A.  Nomura Purposefully Invested with BLMIS in New York

Nomura knowingly invested in the Fairfield Funds for the express purpose of having its funds custodied and invested with BLMIS in New York.  Nomura admits that it purchased shares in the Fairfield Funds in its own name.  *See* Saunders Decl. ¶¶ 2, 7; Motion at 5.  To do so, Nomura executed subscription agreements with the Fairfield Funds, affirming that it had received and read the Fairfield Funds' private placement memoranda (the "PPMs").  SAC ¶ 33.

From the PPMs, Nomura knew the New York-centric nature of its investments in the Fairfield Funds and BLMIS's critical role in New York, including that:

- The Fairfield Funds invested substantially all of their assets with BLMIS in New York, *id.* ¶ 32;

- BLMIS custodied substantially all of the Fairfield Funds' assets in New York, *id.* ¶ 37(c);

- BLMIS served as investment advisor for the Fairfield Funds, *id.* ¶ 34;

- BLMIS was registered as a broker-dealer in New York, *id.* ¶ 37(c), served as the executing broker for the Fairfield Funds' investments, *id.*, and purportedly executed the SSC Strategy on the Fairfield Funds' behalf, *id.* ¶ 37(a);

4

- BLMIS's SSC Strategy purportedly involved the purchase and sale of U.S. securities, options, and Treasury Bills, *id.* ¶ 35, and BLMIS decided which U.S. securities to purportedly purchase, and when to make such purchases in New York, *id.* ¶ 37(b);

- Any returns on Nomura's investment in the Fairfield Funds would purportedly be earned by BLMIS in New York through its execution of the SSC Strategy, *id.* ¶ 35; and

- BLMIS was "essential to the continued operation" and "profitability" of the Fairfield Funds, and its absence "would have an adverse impact" on an investment in the Fairfield Funds, *id.* ¶ 39.

Nomura understood BLMIS served these central roles in the Fairfield Funds, and Nomura prepared marketing materials detailing many of these facts to promote its access to BLMIS through the Fairfield Funds. The marketing materials highlighted that the Fairfield Funds sent substantially all of their assets to BLMIS in New York. *Id.* ¶ 40. The marketing materials also stated that the SSC Strategy achieved "remarkably consistent" returns through the purchase and sale of S&P 100 Index equities, options, and U.S. Treasury Bills. *Id.*

## B. Nomura Used New York Bank Accounts for its Investments in the Fairfield Funds

Nomura maintained a New York bank account in its own name at Bank of America. SAC ¶ 45. Nomura directed Sentry to send redemption payments to that account and Nomura received redemption payments from Sentry in that account. *Id.* ¶ 46. Those redemption payments include the subsequent transfers of customer property the Trustee seeks to recover with the SAC. As expressly provided in its subscription agreements, Nomura sent subscription payments to Sentry's designated New York bank account. Subscription payments from Nomura were then deposited into BLMIS's account at JP Morgan Chase Bank NA in New York. *Id.* ¶ 47.

**C. Nomura Met and Communicated with FGG Personnel in New York Regarding
its Fairfield Fund Investments**

Nomura personnel traveled to New York to meet with FGG regarding Nomura's investments with BLMIS. SAC ¶ 50. Nomura personnel also directed email and telephone communications regarding Nomura's investments with BLMIS to FGG personnel in FGG's New York office. *Id.* ¶ 49.

**D. Nomura Executed Subscription Agreements and a Non-Disclosure Agreement
with New York Jurisdiction, Forum Selection, and Choice-of-Law Provisions**

By executing subscription agreements to invest in the Fairfield Funds, Nomura agreed that "any suit, action or proceeding . . . with respect to this Agreement and [the Fairfield Funds] may be brought in New York" and "irrevocably submit[ted] to the jurisdiction of the New York courts." SAC ¶ 44. In the subscription agreements, Nomura also submitted to venue in New York, service of process out of New York courts, and that its investments in the Fairfield Funds would "be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions." *Id.* ¶¶ 41–43.

Additionally, to receive non-public information about Sentry, Nomura executed a non-disclosure agreement with FGG that contained New York choice of law and jurisdiction provisions. *Id.* ¶ 51. Nomura understood that the non-disclosure agreement would be "governed by, and construed in accordance with the laws of the State of New York, without reference to its conflict of law principles." *Id.* The non-disclosure agreement also provided that Nomura "irrevocably and unconditionally consent[ed] to submit to the jurisdiction of the courts of the State of New York" for any action relating to the agreement. *Id.*

**E. Nomura Understood BLMIS's Significant Role With Respect to its Harley Investment and Received the Harley Redemptions in its Own New York Bank Account**

Nomura's investments with Madoff were not limited to its investments in the Fairfield Funds. Nomura also invested in Harley International (Cayman) Ltd. ("Harley"). SAC ¶¶ 3, 52. Harley was a Cayman-registered BLMIS feeder fund that invested all of its assets with BLMIS in New York. *Id.* ¶ 28. Nomura knew and intended that the funds it invested in Harley would be transferred to BLMIS to be custodied and purportedly invested in U.S.-listed securities. *Id.* ¶¶ 52–54.

To invest in Harley, Nomura was required to execute a subscription agreement affirming that it received and read the terms of the Harley Confidential Explanatory Memorandum (the "Harley PPM"). *Id.* ¶ 56. Nomura was also required to affirm that it received copies of Harley's annual audited financial statements (collectively, the "Audited Financial Statements"). *Id.* The Harley PPM and the Audited Financial Statements informed Nomura that substantially all of Harley's assets were custodied by BLMIS in New York and any return on Nomura's investment in Harley would be earned by BLMIS in New York. *Id.* ¶¶ 57, 59.

Nomura instructed Harley to send redemption payments to Nomura's own bank account at Bank of America in New York—the same account it used to receive the subsequent transfers of stolen customer property from Sentry. *Id.* ¶ 60. The Trustee is seeking to recover the subsequent transfers of stolen customer property that Nomura received from Harley in a separate action.[3]

---

[3] *Picard v. Nomura Int'l plc (In re BLMIS)*, Adv. Pro. No. 11-02759 (CGM) (Bankr. S.D.N.Y.). Nomura declined the Trustee's request to consent to consolidate these two proceedings. The Trustee reserves his right to move to consolidate these two proceedings for discovery and/or trial.

Nomura viewed its investments in the Fairfield Funds and Harley similarly as exposure to Madoff's SSC Strategy and informed third parties that its willingness to make additional BLMIS feeder fund investments depended on its aggregate exposure to Madoff. *Id.* ¶¶ 53–54.

## III.   THE FAIRFIELD SETTLEMENT

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion. SAC ¶ 92. In 2011, the Trustee settled with Sentry and others. *Id.* ¶ 93. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.* The Trustee then commenced a number of adversary proceedings against subsequent transferees like Nomura to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

## I.   THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER NOMURA

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.")).

Specific jurisdiction exists where the defendant purposefully directed its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the

defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (first citing *Burger King*, 471 U.S. at 476; then citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Specific jurisdiction does not require "proof that [the] plaintiff's claim came about because of the defendant's in-state conduct." *Multi-Strategy*, 641 B.R. at 88 (quoting *Ford Motor Co.*, 141 S. Ct. at 1027). Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the Court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To do so, courts consider:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared

9

> interest of the states in furthering fundamental substantive social
> policies.

*See Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citations omitted).  Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable.  *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

Rather than analyze each contact in isolation, the court should look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction.  *See, e.g.*, *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper.") (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### A.  Nomura Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing with BLMIS Through the Fairfield Funds

Nomura's numerous and purposeful contacts with New York establish this Court's jurisdiction.  Nomura: (i) purposefully targeted the New York securities market by investing with BLMIS through the Fairfield Funds, knowing and intending that those funds would be custodied and managed by BLMIS in New York; (ii) used the New York banking system to transact with Sentry, designating its own Bank of America account in New York to receive redemptions from Sentry; (iii) met and communicated with FGG personnel in New York regarding Nomura's investments with New York-based BLMIS through the Fairfield Funds; and (iv) agreed to New York jurisdiction, forum selection, service of process, and choice-of-law provisions related to

Nomura's investments in the Fairfield Funds.  Many of these contacts independently establish

jurisdiction.  In their totality, these contacts demonstrate that Nomura availed itself of the forum.

    1.  <u>Nomura's Intentional Investment with BLMIS Through the Fairfield Funds
Establishes Minimum Contacts</u>

Nomura's knowing and intentional investment with BLMIS through the Fairfield Funds

establishes a *prima facie* showing of jurisdiction.  As the Second Circuit has recognized, "[w]hen

these [subsequent transferee] investors chose to buy into feeder funds that placed all or

substantially all of their assets with [BLMIS], they knew where their money was going."  *In re

Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also Maxam Absolute Return Fund*, 460 B.R. at 116–

20 (finding jurisdiction where defendant knew and intended that the funds it invested in BLMIS

feeder funds would be sent to BLMIS to be invested in New York).  Based on information

contained in the subscription agreements and the PPMs, Nomura knew that: (i) Sentry invested

substantially all of its assets with BLMIS, and that Sigma invested substantially all of its assets in

Sentry, SAC ¶¶ 32, 36; (ii) BLMIS in New York was the custodian of Sentry's investments with

BLMIS, *id.* ¶ 34; (iii) any returns on Nomura's investment in the Fairfield Funds' would

purportedly be earned by BLMIS in New York through its execution of the SSC Strategy, *id.* ¶ 35;

(iv) BLMIS performed all investment management duties for the Fairfield Funds, *id.* ¶ 34, and the

decisions regarding when and which U.S. securities to purportedly purchase were made by BLMIS

in New York, *id.* ¶ 37; (v) BLMIS's SSC Strategy purportedly involved the purchase and sale of

U.S. securities, U.S. options, and U.S. Treasury Bills, *id.* ¶ 35; and (vi) BLMIS was "essential to

the continued operation of" the Fairfield Funds and BLMIS's "absence would have [had] an

adverse impact upon an investment in [the Fairfield Funds]," *id.* ¶ 39.  Investing with BLMIS was

the whole point of Nomura's investments in the Fairfield Funds.

       a.  *BLI and Recent Decisions of this Court Establish this Court's Jurisdiction Over Nomura*

This Court has already concluded that subsequent transferees like Nomura are subject to personal jurisdiction where the Trustee has alleged facts demonstrating they intended to invest with BLMIS through BLMIS feeder funds. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). Thus, Nomura's deliberate targeting of BLMIS and the New York securities market through the Fairfield Funds is dispositive. *See Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry . . . alone is sufficient to establish a *prima facie* showing of jurisdiction . . . in the pre-discovery stage of litigation"); *see also Cathay Life*, 2022 WL 16626325, at *4 ("By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to the subsequent transfer that originated with BLMIS.").

This case is indistinguishable from *BLI* with respect to Nomura's intent to invest with BLMIS through the Fairfield Funds. As in *BLI*, the Trustee's suit is "based upon [the subsequent transferee's] investment of tens of millions of dollars in [a BLMIS feeder fund] with the specific goal of having funds invested in BLMIS in New York." *BLI*, 480 B.R. at 506. As in *BLI*, Nomura received PPMs and other materials establishing the investment's BLMIS-centric purpose. *Id.* at 507–08; SAC ¶¶ 37–39. Because Nomura is identically situated to the defendant in *BLI* with respect to the fundamental purpose of its investment in the Fairfield Funds, *BLI* is controlling and resolves Nomura's jurisdictional defense. The allegations that Nomura purposefully targeted the New York securities market are even stronger than in *BLI* because Nomura also invested in Harley for that same purpose. Nomura's intent to invest with BLMIS through these feeder funds is further supported by the fact that Nomura calculated its exposure to Madoff's SSC Strategy based on its

aggregate investments in those funds.  SAC ¶ 53.  Nomura also informed third parties that its willingness to make additional BLMIS feeder fund investments depended on its overall exposure to Madoff through these BLMIS feeder funds.  *Id.* ¶ 54.

Nomura does not dispute these allegations.  To the contrary, Nomura admits that it "subscribed in" the Fairfield Funds in its own name with its own money and "made redemptions from" the Fairfield Funds.  *See* Saunders Decl. ¶¶ 2, 7; Motion at 5.  Once Nomura received these subsequent transfers, it "obtained complete dominion and control over BLMIS's customer property and was free to use it as it saw fit."  *Picard v. Citibank*, *N.A.*, Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234, at *8 (Bankr. S.D.N.Y. Sept. 27, 2022).

Despite these facts, Nomura argues that *BLI* does not apply because Nomura did not expect to "make or lose money based on the performance of the Fairfield Funds or BLMIS itself."  *See* Motion at 3, 5, 7 n.4, 9; Saunders Decl. ¶ 7.  Instead, Nomura argues, it sought to profit from its investments in the Fairfield Funds by entering into unspecified contracts with unnamed counterparties to facilitate those parties' investment objectives in exchange for "fixed fees or other income."  *See* Motion at 2, 5-6; Saunders Decl. ¶ 7.

Nomura's attempt to distinguish *BLI* fails.  The holding in *BLI* does not exclude investors like Nomura who sought to profit from its BLMIS feeder fund investments by selling others synthetic exposure to BLMIS's SSC Strategy.  Moreover, Nomura's argument that it did not intend to profit from BLMIS's purported performance is unpersuasive, particularly in light of the Trustee's allegations that Nomura made similar investments in Harley and created marketing materials touting the SSC Strategy's "remarkably consistent" returns.  SAC ¶¶ 3, 40.  Because Nomura invested in the Fairfield Funds "knowing, intending and contemplating that the substantial majority of funds invested in [the Fairfield Funds] would be transferred to BLMIS in New York

13

to be invested in the New York securities market," purposeful availment is established and that is the end of the inquiry. *See Carige*, 2022 WL 2387522, at *3 (citing *BLI*, 480 B.R. at 517). Here, as in *BLI*, Nomura "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506. The fact that Nomura chose to further market and monetize the fruits of its investment does not deprive this Court of jurisdiction.

Nomura suggests that this Court's decision in *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*") requires a defendant to have physical contacts in New York to establish jurisdiction. This is wrong. *Walden v. Fiore* makes clear that "physical presence in the forum is not a prerequisite to jurisdiction." 571 U.S. 277, 285 (2014). While *BNP* discussed defendants' offices and employees in New York, it alternatively found that the defendants' investments in New York-based BLMIS feeder funds and utilization of the New York banking system independently established jurisdiction. *BNP*, 594 B.R. at 191.[4]

### b. *Walden Does Not Save Nomura from this Court's Jurisdiction*

Relying on *Walden*, Nomura advances the same arguments it concedes this Court has rejected in several prior decisions, Motion at 7 n.4, that the Trustee's theory of jurisdiction relies on third parties' contacts with New York and that Nomura's mere "knowledge that the Fairfield Funds and BLMIS had strong forum contacts" is insufficient to support personal jurisdiction. *See* Motion at 8. But as this Court has found, *Walden* is of "no assistance" to a subsequent transferee like Nomura who invested in a feeder fund with the specific goal of having funds invested with BLMIS in New York. *See Multi-Strategy*, 641 B.R. at 87.

---

[4] In any event, the Trustee has alleged physical contacts here, including Nomura's use of New York bank accounts.

*Walden* is distinguishable on the facts and the law.  The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada:  He had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," nor was the officer's seizure of funds predicated in any way on the fact that their intended destination was Nevada.  *Walden*, 571 U.S. at 288–89.  Nevertheless, the Ninth Circuit found jurisdiction because the officer had seized money in Georgia from a Nevada resident and therefore the seizure would have some foreseeable effect in Nevada.  *Id.* at 289–91.  The Supreme Court disagreed, finding that the defendant had "formed no jurisdictionally relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff resided in Nevada.  *Id.*  In reversing the Ninth Circuit's holding that the officer's knowledge of plaintiff's Nevada connections and the "foreseeable harm" that plaintiff suffered there were dispositive, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state.  *Id.* at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

This case is nothing like *Walden*.  As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework, a concept that the *Walden* Court did not reference, let alone apply.  Nor is the police officer's lack of any "jurisdictionally relevant contacts with Nevada," *id.* at 289, remotely analogous to Nomura intentionally directing investments to a New York investment manager, broker-dealer, and custodian through feeder funds formed specifically for that purpose.  Quoting the Supreme Court, Nomura argues that personal jurisdiction must be established by "contacts that the 'defendant *himself*' creates with the forum State."  Motion at 7 (quoting *Walden*, 571 U.S. at 284–85).  That is precisely what Nomura

15

did when it sent the Fairfield Funds millions of dollars with the intent that they be custodied and

invested by BLMIS in New York.  Nomura attempts to downplay its investments' New York

destination as some sort of "anticipated" consequence rather than a deliberate and purposeful

targeting of the forum.  *See* Motion at 8.  Not only has this Court rejected this argument, as Nomura

concedes, Judge Lifland called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an
> account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposely availed itself of the benefits and protections
> of New York laws by knowing, intending, and contemplating that
> the substantial majority of funds invested in Fairfield Sentry would
> be transferred to BLMIS in New York to be invested in the New
> York securities market.

*BLI*, 480 B.R. at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-

99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting that courts in

this SIPA liquidation proceeding have already "confirmed that defendants who invested directly

or indirectly with BLMIS and received payments from BLMIS as initial transferees or as

subsequent transferees of those initial transferees were subject to the Court's personal

jurisdiction").

Nomura also misinterprets *Walden* to the extent it argues, in effect, that Nomura's

connections to the forum must be viewed in a vacuum.  Motion at 7–8.  *Walden* recognized that "a

defendant's contacts with the forum State may be intertwined with his transactions or interactions

with the plaintiff or other parties."  *Walden*, 571 U.S. at 286; *see also Ford Motor Co.*, 141 S. Ct.

at 1031–32 (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and

place of injury can never support jurisdiction" and explaining that "[t]hose places still may be

relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

Finally, Nomura's effort to analogize its intentional investing into the U.S. markets to

contracting with a plaintiff "that performed or was expected to perform under the contract in New

16

York" falls flat.  Motion at 8–9.  Unlike in *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26

N.Y.2d 280, 285 (1970), Motion at 9, the Trustee is not alleging that Nomura's connection to the

forum is limited to the benefits it received from a plaintiff's or third parties' activities in the forum.[5]

Rather, the Trustee is alleging that Nomura itself took actions both in, and intentionally toward,

the forum.  The fact that many of these actions involved BLMIS feeder funds does not defeat

jurisdiction.  Nomura's contacts with New York were "intertwined with [its] transactions or

interactions" with the Fairfield Funds, *Walden*, 571 U.S. at 286, and thus support jurisdiction.  *See*

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016) (finding the transacts business requirement

under CPLR 302(a)(1) is satisfied where a defendant purposefully "avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and privileges of its laws")

(citations omitted).

      2.   <u>Nomura's Purposeful Use of New York Bank Accounts Establishes Specific
Jurisdiction</u>

Nomura purposefully used the New York banking system to invest with BLMIS through

Sentry and to receive subsequent transfers of stolen BLMIS customer property from Sentry.  SAC

¶¶ 45–46.  The Trustee's allegations regarding Nomura's use of its Bank of America account in

New York establish jurisdiction.  *See, e.g.*, *Meritz*, 2022 WL 3273044, at *3 (jurisdiction warranted

where "a defendant chooses to use a United States bank account to receive[] funds"); *see also*

*Eldesouky v. Aziz*, No. 11-cv-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014)

(finding jurisdiction under New York long-arm statute based solely on defendant's use of New

York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank

account suffices to establish personal jurisdiction over [defendant]"); *HSH Nordbank AG N.Y.*

---

[5] All of the other cases Nomura cites in support of this point are similarly inapposite breach of contract cases where
plaintiffs sought to base jurisdiction exclusively or primarily on their own contacts with the forum.  *See* Motion at 8
n.5 (citing cases).

*Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012)

(finding jurisdiction based solely on defendant's use of New York accounts to receive fraudulent

conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83

(S.D.N.Y. 2013) (finding jurisdiction over subsequent transferee based solely on defendant's use

of New York accounts to facilitate alleged fraud).

Nomura attempts to downplay its use of its own New York bank account, suggesting that

its "mere maintenance" of and "knowing receipt of funds" in that account do not support

jurisdiction. *See* Motion at 10 (quoting *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537

(S.D.N.Y. 1983); *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Adv. Pro. No. 15-

08207, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016)).[6]    But Nomura did not merely

maintain this account and the subsequent transfers from Sentry did not end up there by

happenstance.  On its own volition, Nomura directed Sentry to send the redemption payments to

Nomura's Bank of America account in New York, SAC ¶ 46, and upon receipt, Nomura had

control over the transfers it received from Sentry.

Moreover, the two cases Nomura cites as authority are factually inapposite.  The court in

*Sledziejowski* declined to base jurisdiction on an allegation that the defendant received funds in a

bank account *in Poland*.  2016 WL 6155929, at *7.  Here, the Trustee alleges that Nomura received

the transfers at issue in its bank account *in New York*.  And the court in *Leema* declined to exercise

specific jurisdiction over a Swiss bank based solely on the fact that it maintained correspondent

bank accounts in the United States that were unrelated to the claims.  575 F. Supp. at 1537.  By

contrast, Nomura's Bank of America account is not alleged to be a correspondent account, and it

---

[6] Notably, the case the *Sledziejowski* court relied on for its holding was reversed on appeal.  *See Rushaid v. Pictet & Cie*, No. 652375/11, 2014 WL 4226466 (N.Y. Sup. Ct. Aug. 26, 2014), *aff'd*, 127 A.D.3d 610 (N.Y. App. Div. 2015), *rev'd*, 28 N.Y.3d 316 (2016).

is directly related to the Trustee's claims to recover the subsequent transfers Nomura received from Sentry.

Nomura also used Sentry's New York correspondent account to deliver its subscription funds to Sentry, which is an additional contact with New York that supports jurisdiction. *See* SAC ¶ 47. In *Licci v. Lebanese Canadian Bank, SAL*, the Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful," not coincidental or passive. 20 N.Y.3d 327, 338 (2012) (cleaned up); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid*, 28 N.Y.3d at 322–29 (same).

Nomura argues that its repeated use of Sentry's New York account does not support jurisdiction because it only did so to comply with Sentry's subscription agreements and such use was "purely mechanical in nature" and thus does not "establish any of the requirements for specific jurisdiction in this case." Motion at 11. This argument ignores that Nomura voluntarily entered into those agreements. Nomura could have opted to not invest with BLMIS through Sentry. *See Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 617–18 (S.D.N.Y. 2022) (holding that defendant's acceptance of contractual term designating New York correspondent account supports finding of personal jurisdiction). Instead, Nomura agreed to use Sentry's New York correspondent account for its subscriptions into Sentry. That Nomura made

19

these choices over others made its "New York connection volitional and not coincidental." *Al Rushaid*, 28 N.Y.3d at 328. Each of Nomura's subscriptions was thus a volitional act supporting jurisdiction. *Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

Nomura's reliance on a pair of cases standing for the proposition that a defendant may not be subject to jurisdiction based solely on the incidental passage of funds through a New York bank account is also misplaced. *See* Motion at 11–12 (first citing *Berdeaux v. Onecoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021); then citing *Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)). The courts in *Berdeaux* and *Universal Trading* declined to base jurisdiction on the use of New York bank accounts because there were no allegations that the use of those accounts was purposeful. *See Berdeaux*, 561 F. Supp. 3d at 402 (declining to find jurisdiction because there was no allegation that the defendant played a role in directing the transfer of funds through the New York bank account); *Universal Trading*, 2012 WL 6186471, at *3 (declining to exercise jurisdiction over a bank's customer merely because the bank moved the customer's money through New York via a correspondent account). By contrast, the Trustee alleges that Nomura repeatedly directed subscription payments to Sentry's correspondent account in New York and redemptions to its own New York bank account at Bank of America. SAC ¶¶ 46–47. Thus, Nomura's use of those accounts was purposeful.

Finally, Nomura argues that its subscription payments do not relate to the Trustee's claims. This is wrong. Nomura's subscription payments plainly relate to the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor Co.*, 141 S. Ct. at 1026 (finding

that plaintiffs' claims related to defendant's in-state activity and rejecting the requirement of a "strict causal relationship between the defendant's in-state activity and the litigation").  Nomura's subscription payments into and redemptions from Sentry are two sides of the same coin, and Nomura could not invest in and profit from Sentry without making subscription payments. Because Nomura's subscriptions were necessary predicates to the subsequent transfers from Sentry, the subscription payments are sufficiently related to the Trustee's claims to recover that stolen customer property from Nomura.

### 3.  Nomura's Contacts with FGG in New York Also Support Personal Jurisdiction

As this Court has recognized, while a defendant's "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the state—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Korea Exch.*, 2022 WL 4371908, at *4 (quoting *Walden*, 571 U.S. at 285); *Banque Syz*, 2022 WL 213509, at *4. The Trustee alleges that Nomura personnel physically entered the state—both in person and through emails and telephone calls—to communicate with FGG personnel regarding Nomura's investments with BLMIS, through the Fairfield Funds.  SAC ¶¶ 49, 50.  These contacts are relevant and provide additional bases to support this Court's jurisdiction over Nomura.

Nomura argues that "it would be impossible for this Court to assess the jurisdictional relevance" of these allegations because they are "entirely conclusory," "hopelessly generic," and "lacking in even the minimal specificity required for notice pleading."  Motion at 12–14.[7]  To the contrary, these allegations are factual and sufficiently detailed both to provide Nomura with notice

---

[7] Nomura cites principally to *SPV Osus Ltd. v. UBS AG* and *McKee Elec. Co. v. Rouland Borg* to suggest the Trustee is required to allege Nomura's meetings and communications with FGG with additional particularity.  114 F. Supp. 3d 161, 164 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018); 20 N.Y.2d 377, 282–83 (1967) (*cited in* Motion at 12–14).  But jurisdiction was found wanting in *SPV Osus* and *McKee* because none of the alleged contacts related to the claims at issue, not because the courts were unable to assess the nature and quality of the alleged communications. *See SPV Osus*, 114 F. Supp. at 164 (S.D.N.Y. 2015); *McKee*, 20 N.Y.2d at 282–83.

of the bases for this Court's jurisdiction and to allow this Court to assess their jurisdictional

relevance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring courts to credit allegations

that go beyond "threadbare recitals of a cause of action's elements" made in conclusory fashion).

Specifically, the Trustee alleges that: (i) "Nomura personnel traveled to New York and met

with FGG personnel in FGG's New York office regarding Nomura's investments with BLMIS

through the Fairfield Funds;" and (ii) "Nomura personnel directed email and telephone

communications regarding Nomura's investments with BLMIS through the Fairfield Funds to

FGG personnel in FGG's New York office." SAC ¶¶ 49–50. These allegations identify the

participants in the communications (Nomura personnel and New York-based FGG personnel); the

location of the in-person meetings (FGG's New York office); the modality of the communications

(email, telephone, and in-person meetings); and, critically, the subject matter discussed (Nomura's

investments with BLMIS through the Fairfield Funds). *Id.*

Nomura's argument that the Trustee fails to specify the frequency or quantity of Nomura's

meetings and communications with FGG is misplaced. This Court has previously held that even

a single meeting with FGG in New York related to a subsequent transferee's investment with

BLMIS through the Fairfield Funds supports jurisdiction. *See Multi-Strategy*, 641 B.R. at 87; *see
also Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 193–94 (2d Cir. 2004) (finding

one or two meetings concerning a "fund's investment strategy" supported jurisdiction in fraud suit

related to the investment). Nomura's argument that the Trustee fails to identify the "timeframe"

of the meetings and communications is wrong. The relevant timeframe is evident from the

Trustee's allegation that the communications relate to Nomura's investments with BLMIS through

the Fairfield Funds, inherently encompassing the period during which Nomura first considered and

later held those investments. Nomura also argues the Trustee must specify the location of Nomura

personnel because New York courts have held that communications into the forum "in connection with a contract negotiated and executed outside New York" do not support jurisdiction. *See* Motion at 13–14 (citing *Hau Yin To v. HSBC Holdings PLC*, No. 15-cv-3590 (LTS) (SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)). This argument is irrelevant because the Trustee's claims do not sound in breach of contract, foreign or otherwise. The Trustee's claims arise out of Nomura's investment with BLMIS through the Fairfield Funds and thus Nomura's communications with FGG personnel in New York regarding that investment support jurisdiction.

The Trustee's allegations also provide the relevant details this Court needs to determine whether Nomura's contacts with FGG in New York support jurisdiction. *See Lombard*, 2022 WL 2387523, at *4 (allegation that defendant "communicated by e-mail and letters with its with FGG account representatives located in FGG's New York City office" supported *prima facie* showing of jurisdiction). Moreover, despite being in the best position to assess the details of its communications with FGG, Nomura does not suggest that it communicated with FGG personnel for some other purpose unrelated to its investments with BLMIS through the Fairfield Funds.

Finally, Nomura's reliance on several cases holding that New York courts will not "sustain section 302(a)(1) jurisdiction *solely* on the basis of defendant's communication from another locale with a party in New York" is a misguided attempt to treat Nomura's contacts with FGG in New York in isolation. *See, e.g.*, *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)) (emphasis added) (*cited in* Motion at 13). First, this argument completely ignores Nomura's in-person meetings with FGG in New York. Second, the Trustee is not asking this Court to find jurisdiction based solely on Nomura's communications with FGG. Rather, the Trustee asks this Court to consider them

among the other jurisdictional contacts he has alleged in the SAC, each of which this Court has previously found supports jurisdiction.

    4.  <u>The Subscription Agreements and Non-Disclosure Agreement Evidence a Strong Nexus with New York</u>

As this Court has recognized, Nomura's subscription agreements and non-disclosure agreement with the Fairfield Funds further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy*, 641 B.R. at 88 n.3 (finding that defendant's irrevocable submission to the jurisdiction of New York courts when it signed its subscription agreements with Sentry is a relevant factor in determining whether jurisdiction is reasonable). When Nomura invested in the Fairfield Funds, it signed subscription agreements through which it submitted to venue in New York, the jurisdiction of New York courts, the service of process from New York courts, and the application of New York law. SAC ¶ 41. Nomura also agreed to a non-disclosure agreement with FGG in connection with its ongoing management of its investments in the Fairfield Funds that contained similar New York choice of law and forum selection provisions. *Id.* ¶ 51.

Nomura's argument that the subscription agreements and non-disclosure agreement cannot provide consent to a suit over redemptions by the Trustee misses the mark. *See* Motion at 14–15. The Trustee is not arguing that this Court has jurisdiction based on Nomura's consent, which was the specific issue analyzed by the Court in *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A.*, No. 19-cv-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022). Rather, Nomura's consent to New York jurisdiction, choice of law and venue in the subscription agreements, and nondisclosure agreement show that Nomura

24

purposefully directed its activities toward New York and provide additional contacts with New York that further support this Court's jurisdiction.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"). For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517 n.15. Moreover, as discussed above, the subscription agreements plainly relate to the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor Co.*, 141 S. Ct. at 1026.

## B. The Exercise of Personal Jurisdiction Over Nomura Is Reasonable

Nomura fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010). Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal

jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case. The burden on Nomura is minimal. *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). As this Court has found with respect to several other similarly situated subsequent transferees, Nomura "is not burdened by this litigation" because it "has actively participated in this Court's litigation for over ten years," it is represented by U.S. counsel, and voluntarily submitted to venue in New York, the jurisdiction of New York courts, the service of process from New York courts, and the application of New York law when it signed its subscription agreements with the Fairfield Funds. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 88. Nomura participated in the omnibus motions to withdraw the reference and to dismiss the Trustee's complaints on extraterritoriality grounds. *See, e.g.*, ECF Nos. 20–22, 57, 80. In addition, Nomura has been registered with the SEC as an institutional investment manager since at least 1998 and has filed required quarterly Form 13Fs since at least 1999. SAC ¶ 30. This "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *See, e.g.*, *Multi-Strategy*, 641 B.R. at 88–89; *see also In re Picard*, 917 F.3d at 103 (noting that the "United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property").

Nomura argues that subjecting it to the jurisdiction of this Court would be unfair because it is unable to participate in the SIPA customer property fund and thus "stands to lose vastly more than the average victim of the Madoff fraud." Motion at 1, 16. This argument is unsupported by the record and has no bearing on the personal jurisdiction analysis. As this Court has recognized, the "concept of jurisdiction and the notion of a 'customer' under SIPA [are] two entirely different

standards requiring completely different analyses." *BLI*, 480 B.R. at 518 ("That BLI intended to purposefully avail itself of the forum warrants a finding of personal jurisdiction over BLI, but does not necessarily warrant any finding regarding customer status under SIPA."); *see In re Picard*, 917 F.3d at 105  (holding that § 550 allows recovery from "remote subsequent transferees" whether or not they have a "direct relationship" with BLMIS); *SIPC v. BLMIS (In re Bernard L. Madoff)*, 454 B.R. 285, 301 n.22 (Bankr. S.D.N.Y. 2011) (holding that subsequent transferee claimants' intent to invest with BLMIS was "of no consequence" to customer status).  Moreover, Nomura fails to explain how it is situated any differently from the many other subsequent transferee defendants this Court has recently held are subject to personal jurisdiction.

Nomura also argues that subjecting it to jurisdiction would be unfair because it received the transfers at issue in good faith.  Motion at 2.  However, Nomura's assertion that it received the subsequent transfers in good faith is unsupported by the record, premature, and irrelevant to jurisdiction.  *Citibank*, 12 F.4th at 200 (good faith is an affirmative defense under section 550(b) which must be pled and proved by the defendant).

In addition, Nomura argues that the burdens it will face as a London-based entity are overwhelming in part because "compliance with the EU General Data Protection Regulation ("GDPR") will impose substantial logistical challenges in defending this case."  Motion at 16. This argument should be rejected out of hand.  As several courts have recognized, simply invoking the GDPR does not excuse a party from its discovery obligations, much less insulate it from this Court's jurisdiction.  *See, e.g.*, *Arigna Tech. Ltd. v. Nissan Motor Co.*, No. 2:22-cv-00126 (JRG) (RSP), 2022 WL 3020136, at *1–2 (E.D. Tex. July 29, 2022).  Further, Article 49(1) of the GDPR "specifically contains an exemption that allows for the production of information that is 'necessary for the establishment, exercise or defense of legal claims,'" and the European Union states in its

27

GDPR implementation guidelines that information disclosed during pre-trial discovery in civil litigation falls within Article 49. *Id.* at *2 (quoting Article 49(1)(e), *GDPR*: Regulation (EU) 2016/679, 2016 O.J. L 119/1; Guidelines 2/2018 on derogations of Article 49 under Regulation (EU) 2016/679, p. 11). Moreover, concerns regarding GDPR can be addressed by the parties with a protective order.

### C.  In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. "Such discovery may be authorized where a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) (cleaned up). The Trustee has plausibly alleged that Nomura, *inter alia*, purposefully invested with BLMIS through the Fairfield Funds, had contacts with FGG personnel in the U.S., and used U.S. bank accounts to first subscribe into Sentry and then redeem stolen BLMIS customer property. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient to trigger jurisdictional discovery. *Kiobel*, 2009 WL 3817590, at *6; *see also Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding that this Court did not abuse its discretion in granting the Fairfield liquidators' request for jurisdictional discovery where allegations indicated that "additional facts to establish personal jurisdiction . . . lie within Defendants' knowledge").

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny Nomura's

Motion in its entirety.

Dated: November 8, 2022
New York, New York

*/s/ David J. Sheehan*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Matthew D. Feil
Email:  mfeil@bakerlaw.com
Frank M. Oliva
Email:  foliva@bakerlaw.com
Andrew M. Serrao
Email:  aserrao@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Chapter 7 Estate of Bernard L.
Madoff*