**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02759 (CGM) |
| Plaintiff, | |
| v. | |
| NOMURA INTERNATIONAL PLC, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT NOMURA INTERNATIONAL PLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................2

II.    NOMURA'S INVESTMENTS IN HARLEY .........................................................3

     A.     Nomura Purposefully Invested with BLMIS in New York ........................4

     B.     Nomura Used New York Bank Accounts For its Harley Investments ........5

     C.     On Information and Belief, Nomura Communicated with FAM
           Personnel in New York....................................................................................6

     D.     On Information and Belief, Nomura Personnel Visited FAM In New
           York ...................................................................................................................6

     E.     To Invest with Harley, Nomura Agreed to be Subject to Binding
           Arbitration in New York....................................................................................6

     F.     On Information and Belief, Nomura Prepared Marketing Materials to
           Promote its Access to BLMIS Through Harley .........................................7

III.   THE HARLEY DEFAULT JUDGMENT..............................................................7

ARGUMENT ......................................................................................................................7

I.     THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
      NOMURA ............................................................................................................7

     A.     Nomura Purposefully Availed Itself of the Laws and Privileges of
           Conducting Business in New York by Investing with BLMIS Through
           Harley...............................................................................................................9

         1.     Nomura's Intentional Investment with BLMIS Through
               Harley Establishes Minimum Contacts.........................................10

               a.     BLI and Recent Decisions of this Court Establish this
                     Court's Jurisdiction Over Nomura...................................11

               b.     Walden Does Not Save Nomura from this Court's
                     Jurisdiction.......................................................................13

2.      Nomura's Purposeful Use of New York Bank Accounts
        Establishes Specific Jurisdiction ..................................................16

3.      Nomura's Contacts with FAM in New York Also Support
        Personal Jurisdiction ....................................................................20

4.      The Subscription Agreement Evidences a Strong Nexus with
        New York ......................................................................................23

B.      The Exercise of Personal Jurisdiction Over Nomura Is Reasonable .........23

C.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery ......26

CONCLUSION .............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) .......................................................................................9

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) .............................................................................16, 18, 19

*Arigna Tech. Ltd. v. Nissan Motor Co.*,
  No. 2:22-cv-00126 (JRG) (RSP), 2022 WL 3020136 (E.D. Tex. July 29,
  2022) ....................................................................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................21

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
  640 B.R. 604 (S.D.N.Y. 2022) .............................................................................18

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990) ...................................................................................7

*Beacon Enters., Inc. v. Menzies*,
  715 F.2d 757 (2d Cir. 1983) .................................................................................22

*Berdeaux v. Onecoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ..................................................................19

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .....................................................................................8, 9, 23

*Chase Manhattan Bank v. Banque Generale Du Com.*,
  No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ................23

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) .................................................................................24

*CutCo Indus., Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986) ...................................................................................9

*Dandong v. Pinnacle Performance Ltd.*,
  966 F. Supp. 2d 374 (S.D.N.Y. 2013) ..................................................................17

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) .....................................................................................7

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
   102 F. App'x 192 (2d Cir. 2004) .......................................................................21

*Eldesouky v. Aziz*,
   No. 11-cv-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)....................16

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
   No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ..............26

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   26 N.Y.2d 280 (1970) ..........................................................................................16

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)....................................................................8, 15, 19, 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................................8

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005).................................................................................9

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15-cv-3590 (LTS) (SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ............22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..............................................................................................14

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................16

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)...........................................................................................8, 9

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
   2009) ....................................................................................................................26

*Leema Enters., Inc. v. Willi*,
   575 F. Supp. 1533 (S.D.N.Y. 1983).....................................................................17

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ...........................................................................................18

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013).................................................................................18

*Maranga v. Vira*,
   386 F. Supp. 2d 299 (S.D.N.Y. 2005)...................................................................22

*McGee v. Int'l Life Ins. Co.*,
    335 U.S. 220 (1957)............................................................................................8

*McKee Elec. Co. v. Rouland Borg*,
    20 N.Y.2d 377 (1967).......................................................................................20

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)................................................................................9

*Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation
    Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)...........................................................19

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
    Adv. Pro. No. 15-08207, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016).....................17

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic
    Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)..........................................................................18

*Picard v. Abu Dhabi Inv. Auth.*,
    Adv. Pro. No. 11092483 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct.
    31, 2022) ...........................................................................................................1

*Picard v. Banca Carige S.P.A.*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
    30, 2022) .............................................................................................1, 11, 13

*Picard v. Bank Hapoalim B.M.*,
    Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915 (Bankr. S.D.N.Y. Sept.
    22, 2022) ...........................................................................................................1

*Picard v. Banque Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
    30, 2022) .....................................................................................................1, 22

*Picard v. Banque Syz & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
    14, 2022) .....................................................................................................1, 20

*Picard v. Barfield Nominees Ltd.*,
    2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)......................................1

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018).......................................................13, 24

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012).................................................. *passim*

*Picard v. Cathay Life Ins. Co.*,
   Adv. Pro. No. 11-02568, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ...............2, 11

*Picard v. Citibank, N.A.*,
   Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234 (Bankr. S.D.N.Y. Sept.
   27, 2022) ......................................................................................................................12

*Picard v. Citibank, N.A. (In re BLMIS)*,
   12 F.4th 171 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209, 212 L. Ed. 2d 217
   (2022)............................................................................................................................3, 25

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..................................................................8, 9

*Picard v. First Gulf Bank*,
   Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
   18, 2022)......................................................................................................................1

*Picard v. Fullerton Capital Pte., Ltd.*,
   Adv. Pro. No. 12-01004, 2022 WL 16556714 (Bankr. S.D.N.Y. Oct. 28,
   2022) ............................................................................................................................1

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
   Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10,
   2014) ............................................................................................................................15

*Picard v. Korea Exch. Bank*,
   Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
   21, 2022) ......................................................................................................................1, 20

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ...............8, 10, 24

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
   Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
   10, 2022) ......................................................................................................................1, 16

*Picard v. Multi-Strategy Fund Ltd.*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022).............................................................. *passim*

*Picard v. Parson Fin. Panama S.A.*,
   Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
   2022) ............................................................................................................................1

*Picard v. Public Inst. for Soc. Sec.*,
   2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ............................................1

*Picard v. Quilvest Fin. Ltd.*,
    Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
    27, 2022) ............................................................................................................1

*Picard v. Schroder & Co Bank AG*,
    Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept.
    27, 2022) ............................................................................................................1

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
    Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept.
    19, 2022) ............................................................................................................1

*Picard v. Societe Generale Private Banking (Suisse) S.A.*,
    Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7,
    2022) ..................................................................................................................1

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
    Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
    18, 2022)..............................................................................................................1

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019)........................................................................10, 24, 25

*Rushaid v. Pictet & Cie*,
    No. 652375/11, 2014 WL 4226466 (N.Y. Sup. Ct. Aug. 26, 2014), *aff'd*, 127
    A.D.3d 610 (N.Y. App. Div. 2015), *rev'd*, 28 N.Y.3d 316 (2016).........................17

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011)...................................................................25

*SPV Osus Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ............20

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)..................................................................................8

*Universal Trading & Inv. Co. v. Tymoshenko*,
    No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ................19

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................................... *passim*

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..................................................................................23

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* .............................................1

**Other Authorities**

Article 49(1)(e), *GDPR*: Regulation (EU) 2016/679, 2016 O.J. L 119/1 ......................................26

CPLR 302(a)(1) .........................................................................................................................16, 22

Federal Rule of Civil Procedure 12(b)(2) ......................................................................................1

Guidelines 2/2018 on derogations of Article 49 under Regulation (EU) 2016/679 ......................26

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to defendant Nomura International

plc's ("Nomura") motion to dismiss, ECF No. 95, the Trustee's Amended Complaint ("AC"), ECF

No. 91, pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion").[1]

## PRELIMINARY STATEMENT

As part of his continuing efforts in this SIPA liquidation proceeding to recover BLMIS

customer property that was stolen as part of Madoff's Ponzi scheme, the Trustee seeks to recover

$24,449,920 in subsequent transfers Nomura received from Harley International (Cayman) Ltd.

("Harley"). Nomura moves to dismiss the Trustee's AC, arguing that this Court lacks personal

jurisdiction over Nomura. This argument lacks merit. Nomura is no differently situated than the

subsequent transferee defendants in other recovery actions that have recently come before this

Court.[2]

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Nomura Int'l plc (In re BLMIS)*, Adv. Pro. No. 11-02759 (CGM) (Bankr. S.D.N.Y.).

[2] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Public Inst. for Soc. Sec.*, 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022); *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 4349859 (Bankr. S.D.N.Y. Sept. 19, 2022); *Picard v. Korea Exch. Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ("*Korea Exch.*"); *Picard v. Bank Hapoalim B.M.*, Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915 (Bankr. S.D.N.Y. Sept. 22, 2022); *Picard v. Quilvest Fin. Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Schroder & Co Bank AG*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Barfield Nominees Ltd.*, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022); *Picard v. Societe Generale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022); *Picard v. Fullerton Capital Pte., Ltd.*, Adv. Pro. No. 12-01004, 2022 WL 16556714 (Bankr. S.D.N.Y. Oct. 28, 2022); *Picard v. Abu Dhabi Inv. Auth.*, Adv. Pro. No. 11092483 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y.

This Court has specific personal jurisdiction over Nomura. Nomura purposefully invested in Harley knowing from Harley's documents that Harley's funds would be custodied and invested with BLMIS in New York and invested in the New York securities market. Nomura also used New York bank accounts to deposit and redeem funds from Harley, and signed a subscription agreement through which it submitted to binding arbitration in New York pursuant to the rules established by the American Arbitration Association. Further, on information and belief, Nomura communicated with Harley's manager, Fix Asset Management Services, Inc. ("FAM"), in New York and travelled to New York to meet with FAM personnel regarding Nomura's investments in Harley. This Court has repeatedly held that these types of contacts establish jurisdiction.

Nomura attempts to distinguish itself by arguing it did not intend to profit from BLMIS's investment performance because it was merely facilitating investments on behalf of an unidentified foreign counterparty. This is irrelevant. Nomura admits that it invested in Harley and does not claim that it was acting as a conduit for this unnamed counterparty, which would in any event be inappropriate on a motion to dismiss. Investing with BLMIS was the entire point of Nomura's transactions with Harley, and just because Nomura chose to further market and monetize BLMIS's purported returns does not deprive this Court of jurisdiction.

### **STATEMENT OF FACTS**

### I.    **THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS out of New York, New York, until its collapse in 2008. AC ¶¶ 10, 53, 80. BLMIS was a registered broker-dealer in New York. *Id.* ¶¶ 54–55. BLMIS purported to operate three principal business units: (i) a proprietary trading desk; (ii) a

---

Oct. 31, 2022); *Picard v. Cathay Life Ins. Co.*, Adv. Pro. No. 11-02568, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*").

market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 55.

For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the

"SSC Strategy"), which involved (a) investing in a basket of common stocks from the S&P 100

Index, (b) buying put options and selling call options to hedge against price changes in the

underlying basket of stocks, and (c) purchasing U.S. Treasury Bills when the money was out of

the market. *Id.* ¶¶ 66-69, 74. In reality, BLMIS operated a Ponzi scheme through its IA Business.

*Id.* ¶ 59. On December 11, 2008, Madoff's fraud was publicly revealed. He was arrested for

criminal violations of federal securities laws, including securities fraud, investment adviser fraud,

and mail and wire fraud. *Id.* ¶ 9.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder

funds"—large investment funds created for the express purpose of funneling investors' funds into

BLMIS. *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied*,

142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022). Nomura knowingly invested in BLMIS feeder funds,

including Harley. AC ¶ 3.

Harley was a Cayman-registered BLMIS feeder fund that invested all of its assets with

BLMIS in New York. *Id.* ¶ 22. Harley had no employees or offices of its own. *Id.* Harley acted

primarily through FAM, an institutional fund of funds manager incorporated under New York law

with a principal place of business in New York. *Id.* ¶¶ 22–23. FAM was owned and controlled

by Charles Fix, a New York resident who owned and controlled all of the voting shares for Harley.

*Id.* ¶ 23.

## II.    NOMURA'S INVESTMENTS IN HARLEY

Nomura is incorporated under the laws of the United Kingdom. AC ¶ 21. Since at least

1998, Nomura has been registered with the U.S. Securities and Exchange Commission ("SEC") as

an institutional investment manager. *Id.* ¶ 28. Since at least 1999, Nomura has filed required

quarterly Form 13Fs with the SEC. *Id.*

### A. Nomura Purposefully Invested with BLMIS in New York

Nomura knowingly invested in Harley for the express purpose of having its funds custodied

and invested with BLMIS in New York. AC ¶¶ 29, 34. Nomura admits that it purchased shares

in Harley in its own name. *See* Saunders Decl. ¶¶ 2, 7; Motion at 5. As a precondition to investing

in Harley, Nomura was required to execute a subscription agreement with Harley. AC ¶ 31. By

executing subscription agreements, Harley investors affirmed having read, understood, and

accepted the terms set forth in the Harley Confidential Explanatory Memorandum (the "Harley

PPM"). *Id.* As set forth in the Harley PPM, Harley investors also received copies of Harley's

annual audited financial statements (collectively, the "Audited Financial Statements"). *Id.*

Based on information contained in the Harley PPM and the Audited Financial Statements

for the years 2003 through 2007, Nomura knew the New York-centric nature of its investments in

Harley and BLMIS's critical role in New York, including that:

- Harley invested substantially all of its assets with BLMIS in New York, *id.* ¶ 30;

- BLMIS custodied substantially all of Harley's assets in New York, *id.* ¶ 34;

- Any returns on Nomura's investment in Harley would purportedly be earned by BLMIS in New York through its execution of the SSC Strategy, *id.* ¶ 32; and

- BLMIS's SSC Strategy purportedly involved the purchase and sale of U.S. securities, options, and Treasury Bills, *id.*

Nomura also invested in Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited

("Sigma," together with Sentry, the "Fairfield Funds") with the specific purpose of having its funds

custodied and invested with BLMIS in New York. *Id.* ¶¶ 32, 34. The Fairfield Funds, like Harley,

were among the various investment vehicles that invested all or substantially all of their assets

with BLMIS. *Id.* ¶ 3. The Trustee seeks to recover the subsequent transfers of stolen BLMIS customer property that Nomura received from the Fairfield Funds in a separate action.[3] *Id.* ¶ 4.

To invest in the Fairfield Funds, Nomura executed subscription agreements through which it affirmed having received and read the Fairfield Funds' private placement memoranda (the "Fairfield Funds PPMs") and agreed to be bound by the terms set forth in the Fairfield Funds' PPMs. *Id.* ¶ 40. The Fairfield Funds PPMs informed Nomura that BLMIS served as the investment advisor, prime broker, and actual custodian of the assets in Sentry's BLMIS investment advisory accounts. *Id.* ¶ 41. Like the Harley PPM, the Fairfield Funds' PPMs informed Nomura that any returns on its investments in the Fairfield Funds would be and were earned in New York by BLMIS's purported execution of the SSC Strategy, which involved the purchase and sale of United States securities, options, and Treasury Bills. *Id.* ¶ 42.

Nomura viewed its investments in the Fairfield Funds and Harley similarly as exposure to Madoff's SSC Strategy and informed third parties that its willingness to make additional BLMIS feeder fund investments depended on its aggregate exposure to Madoff. *Id.* ¶¶ 37–38.

### B. Nomura Used New York Bank Accounts For its Harley Investments

Nomura maintained a New York bank account in its own name at Bank of America. AC ¶ 43. Nomura directed Harley to send redemption payments to that account and Nomura received redemption payments from Harley in that account. *Id.* ¶ 44. Those redemption payments comprise the subsequent transfers of customer property the Trustee seeks to recover with the AC. *Id.*

To invest in Harley, investors sent subscription payments to a New York correspondent bank account. *Id.* ¶ 45. From 2005 through December 2008, Harley investors sent subscription

---

[3] *Picard v. Nomura Int'l plc (In re BLMIS)*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.). Nomura declined the Trustee's request to consent to consolidate these two proceedings. The Trustee reserves his right to move to consolidate these two proceedings for discovery and/or trial.

payments to a New York bank account at the Northern Trust Banking Corporation in the name of Fortis Prime Fund Solutions (IOM), Harley's administrator, banker, and nominal custodian. *Id.* Before 2005, Harley investors sent subscription payments to a New York bank account at JPMorgan Chase. *Id.*

### C. On Information and Belief, Nomura Communicated with FAM Personnel in New York

Nomura knew that the Fairfield Funds were operated and controlled by Fairfield Greenwich Group ("FGG") in New York. AC ¶ 47. Likewise, Nomura knew that Harley was operated and controlled by FAM in New York. *Id.* Nomura directed email and telephone communications regarding Nomura's investments with BLMIS through the Fairfield Funds to FGG personnel located in FGG's New York office. *Id.* ¶ 48. On information and belief, Nomura likewise directed email and telephone communications regarding Nomura's investments with BLMIS through Harley to FAM personnel located in New York. *Id.*

### D. On Information and Belief, Nomura Personnel Visited FAM In New York

Nomura personnel visited FGG's New York office to meet with FGG personnel regarding Nomura's investments with BLMIS through the Fairfield Funds. AC ¶ 49. On information and belief, Nomura personnel likewise visited FAM's New York office to meet with FAM personnel regarding Nomura's investments with BLMIS through Harley. *Id.* ¶ 50.

### E. To Invest with Harley, Nomura Agreed to be Subject to Binding Arbitration in New York

As set forth in the Harley PPM, Harley shareholders agreed that investments in Harley would be governed by Harley's articles of association (the "Harley Articles of Association"). AC ¶ 35. The Harley Articles of Association, in turn, provided that all disputes between Harley and its shareholders were subject to binding arbitration in New York pursuant to the rules established by the American Arbitration Association. *Id.*

### F. On Information and Belief, Nomura Prepared Marketing Materials to Promote its Access to BLMIS Through Harley

Nomura prepared marketing materials detailing BLMIS's central roles with respect to the Fairfield Funds to promote Nomura's access to BLMIS through the Fairfield Funds. AC ¶ 51. Those marketing materials highlighted that the Fairfield Funds sent substantially all of their assets to BLMIS in New York to be invested using the SSC Strategy, which Nomura touted as generating "remarkably consistent" returns through the purchase and sale of S&P 100 Index equities, options, and United States Treasury Bills. *Id.* On information and belief, Nomura likewise promoted its access to BLMIS through Harley. *Id.*

## III. THE HARLEY DEFAULT JUDGMENT

Following BLMIS's collapse, the Trustee commenced a separate adversary proceeding against Harley in this Court under the caption, *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. Pro. No. 09-01187 (BRL), seeking to avoid and recover initial transfers of customer property from BLMIS to Harley in the approximate amount of $1,074,592,422. *Id.* ¶ 83. By order dated November 10, 2010, this Court entered a default judgment against Harley in the amount of $1,072,820,000 (the "Harley Judgment Amount"). *Id.* ¶ 84. Of the Harley Judgement Amount, $1,066,800,000 was awarded in a default summary judgment against Harley. *Id.* ¶ 90. The Trustee has not recovered any monies as a result of the November 10, 2010 default judgment against Harley. *Id.* ¶ 91.

## ARGUMENT

## I. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER NOMURA

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d

194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.")).

Specific jurisdiction exists where the defendant purposefully directed its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (first citing *Burger King*, 471 U.S. at 476; then citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Specific jurisdiction does not require "proof that [the] plaintiff's claim came about because of the defendant's in-state conduct." *Multi-Strategy*, 641 B.R. at 88 (quoting *Ford Motor Co.*, 141 S. Ct. at 1027). Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

8

Finally, the Court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To do so, courts consider:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*See Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citations omitted). Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

Rather than analyze each contact in isolation, the court should look at "the totality of the circumstances" when determining whether a defendant's contacts with the forum establish personal jurisdiction. *See, e.g.*, *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper.") (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### A. Nomura Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing with BLMIS Through Harley

Nomura's numerous and purposeful contacts with New York establish this Court's jurisdiction. Nomura: (i) purposefully targeted the New York securities market by investing with BLMIS through Harley, knowing and intending that those funds would be custodied and managed

by BLMIS in New York; (ii) used the New York banking system to transact with Harley, designating its own Bank of America account in New York to receive redemptions from Harley; (iii) on information and belief, met and communicated with FAM personnel in New York regarding Nomura's investments with New York-based BLMIS through Harley; and (iv) agreed to be subject to binding arbitration in New York pursuant to the rules established by the American Arbitration Association.    Many of these contacts independently establish jurisdiction.    In their totality, these contacts demonstrate that Nomura availed itself of the forum.

      1.   <u>Nomura's Intentional Investment with BLMIS Through Harley Establishes Minimum Contacts</u>

Nomura's knowing and intentional investment with BLMIS through Harley establishes a *prima facie* showing of jurisdiction.    As the Second Circuit has recognized, "[w]hen these [subsequent transferee] investors chose to buy into feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also Maxam Absolute Return Fund*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that the funds it invested in BLMIS feeder funds would be sent to BLMIS to be invested in New York).    Based on information contained in the subscription agreement, the Harley PPM, and the Audited Financial Statements, Nomura knew that:  (i) Harley invested substantially all of its assets with BLMIS, AC ¶ 30; (ii) BLMIS in New York was the custodian of Harley's investments with BLMIS, *id.* ¶ 34; (iii) any returns on Nomura's investment in Harley would purportedly be earned by BLMIS in New York through its execution of the SSC Strategy, *id.* ¶ 32; and (iv) BLMIS's SSC Strategy purportedly involved the purchase and sale of U.S. securities, U.S. options, and U.S. Treasury Bills, *id.*    Investing with BLMIS was the whole point of Nomura's investment in Harley.

      a. *BLI and Recent Decisions of this Court Establish this Court's Jurisdiction Over Nomura*

This Court has already concluded that subsequent transferees like Nomura are subject to personal jurisdiction where the Trustee has alleged facts demonstrating they intended to invest with BLMIS through BLMIS feeder funds. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). Thus, Nomura's deliberate targeting of BLMIS and the New York securities market through Harley is dispositive. *See Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry . . . alone is sufficient to establish a *prima facie* showing of jurisdiction . . . in the pre-discovery stage of litigation"); *see also Cathay Life*, 2022 WL 16626325, at *4 ("By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to the subsequent transfer that originated with BLMIS.").

This case is indistinguishable from *BLI* with respect to Nomura's intent to invest with BLMIS through Harley. As in *BLI*, the Trustee's suit is "based upon [the subsequent transferee's] investment of tens of millions of dollars in [a BLMIS feeder fund] with the specific goal of having funds invested in BLMIS in New York." *BLI*, 480 B.R. at 506. As in *BLI*, Nomura received the Harley PPM and other materials establishing the investment's BLMIS-centric purpose. *Id.* at 507–08; AC ¶¶ 32, 34. Because Nomura is identically situated to the defendant in *BLI* with respect to the fundamental purpose of its investment in Harley, *BLI* is controlling and resolves Nomura's jurisdictional defense. The allegations that Nomura purposefully targeted the New York securities market are even stronger than in *BLI* because Nomura also invested in the Fairfield Funds for that same purpose. Nomura's intent to invest with BLMIS through these feeder funds is further supported by the fact that Nomura calculated its exposure to Madoff's SSC Strategy based on its

aggregate investments in those funds.  AC ¶ 37.  Nomura also informed third parties that its

willingness to make additional BLMIS feeder fund investments depended on its overall exposure

to Madoff through these BLMIS feeder funds.  *Id.* ¶ 38.

Nomura does not dispute these allegations.  To the contrary, Nomura admits that it

"subscribed in" Harley in its own name with its own money and "made redemptions from" Harley.

*See* Saunders Decl. ¶ 2, 7; Motion at 5.  Once Nomura received these subsequent transfers, it

"obtained complete dominion and control over BLMIS's customer property and was free to use it

as it saw fit."  *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234, at *8

(Bankr. S.D.N.Y. Sept. 27, 2022).

Despite these facts, Nomura argues that *BLI* does not apply because Nomura did not expect

to "make or lose money based on the performance of Harley or BLMIS itself."  *See* Motion at 3,

5, 7 n.4, 9; Saunders Decl. ¶ 7.  Instead, Nomura argues, it sought to profit from its investments in

Harley by entering into unspecified contracts with an unnamed counterparty to facilitate that

party's investment objectives in exchange for "fixed fees or other income."  *See* Motion at 2, 5–6;

Saunders Decl. ¶ 7.

Nomura's attempt to distinguish *BLI* fails.  The holding in *BLI* does not exclude investors

like Nomura who sought to profit from its BLMIS feeder fund investments by selling others

synthetic exposure to BLMIS's SSC Strategy.  Moreover, Nomura's argument that it did not intend

to profit from BLMIS's purported performance is unpersuasive, particularly in light of the

Trustee's allegations that Nomura made similar investments in the Fairfield Funds and created

marketing materials touting the SSC Strategy's "remarkably consistent" returns.  AC ¶¶ 3, 51.

Because Nomura invested in Harley "knowing, intending and contemplating that the substantial

majority of funds invested in [Harley] would be transferred to BLMIS in New York to be invested

in the New York securities market," purposeful availment is established and that is the end of the inquiry. *See Carige*, 2022 WL 2387522, at *3 (citing *BLI*, 480 B.R. at 517). Here, as in *BLI*, Nomura "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506. The fact that Nomura chose to further market and monetize the fruits of its investment does not deprive this Court of jurisdiction.

Nomura suggests that this Court's decision in *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*") requires a defendant to have physical contacts in New York to establish jurisdiction. This is wrong. *Walden v. Fiore* makes clear that "physical presence in the forum is not a prerequisite to jurisdiction." 571 U.S. 277, 285 (2014). While *BNP* discussed defendants' offices and employees in New York, it alternatively found that the defendants' investments in New York-based BLMIS feeder funds and utilization of the New York banking system independently established jurisdiction. *BNP*, 594 B.R. at 191.[4]

> b. *Walden Does Not Save Nomura from this Court's Jurisdiction*

Relying on *Walden*, Nomura advances the same arguments it concedes this Court has rejected in several prior decisions, Motion at 7 n.4, that the Trustee's theory of jurisdiction relies on third parties' contacts with New York and that Nomura's mere "knowledge that Harley and BLMIS had strong forum contacts" is insufficient to support personal jurisdiction. *See* Motion at 8. But as this Court has found, *Walden* is of "no assistance" to a subsequent transferee like Nomura who invested in a feeder fund with the specific goal of having funds invested with BLMIS in New York. *See Multi-Strategy*, 641 B.R. at 87.

---

[4] In any event, the Trustee has alleged physical contacts here, including Nomura's use of New York bank accounts.

*Walden* is distinguishable on the facts and the law.  The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada:  He had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," nor was the officer's seizure of funds predicated in any way on the fact that their intended destination was Nevada.  *Walden*, 571 U.S. at 288–89.  Nevertheless, the Ninth Circuit found jurisdiction because the officer had seized money in Georgia from a Nevada resident and therefore the seizure would have some foreseeable effect in Nevada.  *Id.* at 289–91.  The Supreme Court disagreed, finding that the defendant had "formed no jurisdictionally relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff resided in Nevada.  *Id.*  In reversing the Ninth Circuit's holding that the officer's knowledge of plaintiff's Nevada connections and the "foreseeable harm" that plaintiff suffered there were dispositive, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state.  *Id.* at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

This case is nothing like *Walden*.  As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework, a concept that the *Walden* Court did not reference, let alone apply.  Nor is the police officer's lack of any "jurisdictionally relevant contacts with Nevada," *id.* at 289, remotely analogous to Nomura intentionally directing investments to a New York investment manager, broker-dealer, and custodian through feeder funds formed specifically for that purpose.  Quoting the Supreme Court, Nomura argues that personal jurisdiction must be established by "contacts that the 'defendant *himself*' creates with the forum State."  Motion at 7 (quoting *Walden*, 571 U.S. at 284–85).  That is precisely what Nomura

14

did when it sent Harley millions of dollars with the intent that they be custodied and invested by

BLMIS in New York.  Nomura attempts to downplay its investments' New York destination as

some sort of "anticipated" consequence rather than a deliberate and purposeful targeting of the

forum.  *See* Motion at 7.  Not only has this Court rejected this argument, as Nomura concedes,

Judge Lifland called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an
> account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposely availed itself of the benefits and protections
> of New York laws by knowing, intending, and contemplating that
> the substantial majority of funds invested in Fairfield Sentry would
> be transferred to BLMIS in New York to be invested in the New
> York securities market.

*BLI*, 480 B.R. at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-

99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting that courts in

this SIPA liquidation proceeding have already "confirmed that defendants who invested directly

or indirectly with BLMIS and received payments from BLMIS as initial transferees or as

subsequent transferees of those initial transferees were subject to the Court's personal

jurisdiction").

Nomura also misinterprets *Walden* to the extent it argues, in effect, that Nomura's

connections to the forum must be viewed in a vacuum.  Motion at 7–8.  *Walden* recognized that "a

defendant's contacts with the forum State may be intertwined with his transactions or interactions

with the plaintiff or other parties."  *Walden*, 571 U.S. at 286; *see also Ford Motor Co.*, 141 S. Ct.

at 1031–32 (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and

place of injury can never support jurisdiction" and explaining that "[t]hose places still may be

relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

Finally, Nomura's effort to analogize its intentional investing into the U.S. markets to

contracting with a plaintiff "that performed or was expected to perform under the contract in New

York" falls flat. Motion at 8–9. Unlike in *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 (1970), Motion at 9, the Trustee is not alleging that Nomura's connection to the forum is limited to the benefits it received from a plaintiff's or third parties' activities in the forum.[5] Rather, the Trustee is alleging that Nomura itself took actions both in, and intentionally toward, the forum. The fact that many of these actions involved BLMIS feeder funds does not defeat jurisdiction. Nomura's contacts with New York were "intertwined with [its] transactions or interactions" with Harley, *Walden*, 571 U.S. at 286, and thus support jurisdiction. *See Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016) (finding the transacts business requirement under CPLR 302(a)(1) is satisfied where a defendant purposefully "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws") (citations omitted).

2. Nomura's Purposeful Use of New York Bank Accounts Establishes Specific Jurisdiction

Nomura purposefully used the New York banking system to invest with BLMIS through Harley and to receive subsequent transfers of stolen BLMIS customer property from Harley. AC ¶¶ 43–45. The Trustee's allegations regarding Nomura's use of its Bank of America account in New York establish jurisdiction. *See, e.g.*, *Meritz*, 2022 WL 3273044, at *3 (jurisdiction warranted where "a defendant chooses to use a United States bank account to receive[] funds"); *see also Eldesouky v. Aziz*, No. 11-cv-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [defendant]"); *HSH Nordbank AG N.Y.*

---

[5] All of the other cases Nomura cites in support of this point are similarly inapposite breach of contract cases where plaintiffs sought to base jurisdiction exclusively or primarily on their own contacts with the forum. *See* Motion at 8 n.5 (citing cases).

*Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding jurisdiction based solely on defendant's use of New York accounts to receive fraudulent conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (finding jurisdiction over subsequent transferee based solely on defendant's use of New York accounts to facilitate alleged fraud).

Nomura attempts to downplay its use of its own New York bank account, suggesting that its "mere maintenance" of and "knowing receipt of funds" in that account do not support jurisdiction. *See* Motion at 10 (quoting *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983); *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Adv. Pro. No. 15-08207, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016)).[6] But Nomura did not merely maintain this account and the subsequent transfers from Harley did not end up there by happenstance. On its own volition, Nomura directed Harley to send the redemption payments to Nomura's Bank of America account in New York, AC ¶ 44, and upon receipt, Nomura had control over the transfers it received from Harley.

Moreover, the two cases Nomura cites as authority are factually inapposite. The court in *Sledziejowski* declined to base jurisdiction on an allegation that the defendant received funds in a bank account *in Poland*. 2016 WL 6155929, at *7. Here, the Trustee alleges that Nomura received the transfers at issue in its bank account *in New York*. And the court in *Leema* declined to exercise specific jurisdiction over a Swiss bank based solely on the fact that it maintained correspondent bank accounts in the United States that were unrelated to the claims. 575 F. Supp. at 1537. By contrast, Nomura's Bank of America account is not alleged to be a correspondent account, and it

---

[6] Notably, the case the *Sledziejowski* court relied on for its holding was reversed on appeal. *See Rushaid v. Pictet & Cie*, No. 652375/11, 2014 WL 4226466 (N.Y. Sup. Ct. Aug. 26, 2014), *aff'd*, 127 A.D.3d 610 (N.Y. App. Div. 2015), *rev'd*, 28 N.Y.3d 316 (2016).

is directly related to the Trustee's claims to recover the subsequent transfers Nomura received from Harley.

Nomura also used Harley's New York correspondent account to deliver its subscription funds to Harley, which is an additional contact with New York that supports jurisdiction. AC ¶ 45. In *Licci v. Lebanese Canadian Bank, SAL*, the Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful," not coincidental or passive. 20 N.Y.3d 327, 338 (2012) (cleaned up); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid*, 28 N.Y.3d at 322–29 (same).

Nomura argues that its repeated use of Harley's New York account does not support jurisdiction because it only did so to comply with Harley's subscription agreement and such use was "purely mechanical in nature" and thus does not "establish any of the requirements for specific jurisdiction in this case." Motion at 10. This argument ignores that Nomura voluntarily entered into that agreement. Nomura could have opted to not invest with BLMIS through Harley. *See Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 617–18 (S.D.N.Y. 2022) (holding that defendant's acceptance of contractual term designating New York correspondent account supports finding of personal jurisdiction). Instead, Nomura agreed to use Harley's New York correspondent account for its subscriptions into Harley. That Nomura made

these choices over others made its "New York connection volitional and not coincidental." *Al Rushaid*, 28 N.Y.3d at 328. Each of Nomura's subscriptions was thus a volitional act supporting jurisdiction. *Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

Nomura's reliance on a pair of cases standing for the proposition that a defendant may not be subject to jurisdiction based solely on the incidental passage of funds through a New York bank account is also misplaced. *See* Motion at 11 (first citing *Berdeaux v. Onecoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021); then citing *Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)). The courts in *Berdeaux* and *Universal Trading* declined to base jurisdiction on the use of New York bank accounts because there were no allegations that the use of those accounts was purposeful. *See Berdeaux*, 561 F. Supp. 3d at 402 (declining to find jurisdiction because there was no allegation that the defendant played a role in directing the transfer of funds through the New York bank account); *Universal Trading*, 2012 WL 6186471, at *3 (declining to exercise jurisdiction over a bank's customer merely because the bank moved the customer's money through New York via a correspondent account). By contrast, the Trustee alleges that Nomura directed subscription payments to Harley's correspondent account in New York and redemptions to its own New York bank account at Bank of America. AC ¶¶ 44, 45. Thus, Nomura's use of those accounts was purposeful.

Finally, Nomura argues that its subscription payments do not relate to the Trustee's claims. Motion at 11. This is wrong. Nomura's subscription payments plainly relate to the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor Co.*, 141 S. Ct. at 1026 (finding that plaintiffs' claims related to defendant's in-state activity and rejecting

the requirement of a "strict causal relationship between the defendant's in-state activity and the litigation"). Nomura's subscription payments into and redemptions from Harley are two sides of the same coin, and Nomura could not invest in and profit from Harley without making subscription payments. Because Nomura's subscription payments were necessary predicates to the subsequent transfers from Harley, the subscription payments are sufficiently related to the Trustee's claims to recover that stolen customer property from Nomura.

### 3. Nomura's Contacts with FAM in New York Also Support Personal Jurisdiction

As this Court has recognized, while a defendant's "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the state—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Korea Exch.*, 2022 WL 4371908, at *4 (quoting *Walden*, 571 U.S. at 285); *Banque Syz*, 2022 WL 213509, at *4. The Trustee alleges, on information and belief, that Nomura personnel physically entered the state—both in person and through emails and telephone calls—to communicate with FAM personnel regarding Nomura's investments with BLMIS through Harley. AC ¶¶ 48–50. These contacts are relevant and provide additional bases to support this Court's jurisdiction over Nomura.

Nomura argues that "it would be impossible for this Court to assess the jurisdictional relevance" of these allegations because they are "entirely conclusory," "hopelessly generic," and "lacking in even the minimal specificity required for notice pleading." Motion at 12.[7] To the contrary, these allegations are factual and sufficiently detailed both to provide Nomura with notice of the bases for this Court's jurisdiction and to allow this Court to assess their jurisdictional

---

[7] Nomura cites principally to *SPV Osus Ltd. v. UBS AG* and *McKee Elec. Co. v. Rouland Borg* to suggest the Trustee is required to allege Nomura's meetings and communications with FGG with additional particularity. 114 F. Supp. 3d 161, 164 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018); 20 N.Y.2d 377, 282–83 (1967) (*cited in* Motion at 12–14). But jurisdiction was found wanting in *SPV Osus* and *McKee* because none of the alleged contacts related to the claims at issue, not because the courts were unable to assess the nature and quality of the alleged communications. *See SPV Osus*, 114 F. Supp. at 164 (S.D.N.Y. 2015); *McKee*, 20 N.Y.2d at 282–83.

relevance.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring courts to credit allegations

that go beyond "threadbare recitals of a cause of action's elements" made in conclusory fashion).

Specifically, the Trustee alleges, on information and belief, that: (i) "Nomura personnel

visited FAM's New York office to meet with FAM personnel regarding Nomura's investments

with BLMIS through Harley;" and (ii) "Nomura directed email and telephone communications

regarding Nomura's investments with BLMIS through Harley to FAM personnel located in New

York." AC ¶¶ 48, 50.  These allegations identify the participants in the communications (Nomura

personnel and New York-based FAM personnel); the location of the in-person meetings (FAM's

New York office); the modality of the communications (email, telephone, and in-person meetings);

and, critically, the subject matter discussed (Nomura's investments with BLMIS through Harley).

*Id.*

Nomura's argument that the Trustee fails to specify the frequency or quantity of Nomura's

meetings and communications with FAM is misplaced.  This Court has previously held that even

a single meeting with a BLMIS feeder fund manager in New York regarding the defendant's

investment with BLMIS through that feeder fund supports jurisdiction.  *See Multi-Strategy*, 641

B.R. at 87; *see also Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 193–94 (2d Cir.

2004) (finding one or two meetings concerning a "fund's investment strategy" supported

jurisdiction in fraud suit related to the investment).  Nomura's argument that the Trustee fails to

identify the "timeframe" of the meetings and communications is wrong.  The relevant timeframe

is evident from the Trustee's allegation that the communications relate to Nomura's investments

with BLMIS through Harley, inherently encompassing the period during which Nomura first

considered and later held those investments.  Nomura also argues the Trustee must specify the

location of Nomura personnel because New York courts have held that communications into the

forum "in connection with a contract negotiated and executed outside New York" do not support

jurisdiction. *See* Motion at 13–14 (citing *Hau Yin To v. HSBC Holdings PLC*, No. 15-cv-3590

(LTS) (SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)). This argument is irrelevant because the

Trustee's claims do not sound in breach of contract, foreign or otherwise. The Trustee's claims

arise out of Nomura's investment with BLMIS through Harley and thus Nomura's

communications with FAM personnel in New York regarding that investment support jurisdiction.

The Trustee's allegations also provide the relevant details this Court needs to determine

whether Nomura's contacts with FAM in New York support jurisdiction. *See Lombard*, 2022 WL

2387523, at *4 (allegation that defendant "communicated by e-mail and letters with its with FGG

account representatives located in FGG's New York City office" supported *prima facie* showing

of jurisdiction). Moreover, despite being in the best position to assess the details of its

communications with FAM, Nomura does not suggest that it communicated with FAM personnel

for some other purpose unrelated to its investments with BLMIS through Harley.

Finally, Nomura's reliance on several cases holding that New York courts will not "sustain

section 302(a)(1) jurisdiction *solely* on the basis of defendant's communication from another

locale with a party in New York" is a misguided attempt to treat Nomura's contacts with FAM in

New York in isolation. *See, e.g.*, *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005)

(quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)) (emphasis added)

(*cited in* Motion at 13). First, this argument completely ignores Nomura's in-person meetings with

FAM in New York. Second, the Trustee is not asking this Court to find jurisdiction based solely

on Nomura's communications with FAM. Rather, the Trustee asks this Court to consider them

among the other jurisdictional contacts he has alleged in the AC, each of which this Court has

previously found supports jurisdiction.

4. <u>The Subscription Agreement Evidences a Strong Nexus with New York</u>

As this Court has recognized, Nomura's subscription agreement with Harley further evidences a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy*, 641 B.R. at 88 n.3 (finding that defendant's irrevocable submission to the jurisdiction of New York courts when it signed its subscription agreements with Sentry is a relevant factor in determining whether jurisdiction is reasonable). When Nomura invested in Harley, it signed a subscription agreement through which it submitted to binding arbitration in New York pursuant to the rules established by the American Arbitration Association. AC ¶ 35.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"). For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517 n.15. Moreover, as discussed above, the subscription agreement plainly relates to the Trustee's claims and evidences a strong nexus between this case and New York. *See Ford Motor Co.*, 141 S. Ct. at 1026.

**B. The Exercise of Personal Jurisdiction Over Nomura Is Reasonable**

Nomura fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*,

835 F.3d 317, 331 (2d Cir. 2016) (citations omitted).  Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010).  Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case.  The burden on Nomura is minimal.  *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden).  As this Court has found with respect to several other similarly situated subsequent transferees, Nomura "is not burdened by this litigation" because it "has actively participated in this Court's litigation for over ten years," it is represented by U.S. counsel, and voluntarily submitted to binding arbitration in New York when it signed its subscription agreement with Harley.  *See, e.g.*, *Multi-Strategy*, 641 B.R. at 88.  Nomura participated in the omnibus motions to withdraw the reference and to dismiss the Trustee's complaints on extraterritoriality grounds.  *See, e.g.*, ECF Nos. 8–10, 25, 48.  In addition, Nomura has been registered with the SEC as an institutional investment manager since at least 1998 and has filed required quarterly Form 13Fs since at least 1999.  AC ¶ 28.  This "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court."  *See, e.g.*, *Multi-Strategy*, 641 B.R. at 88–89; *see also In re Picard*, 917 F.3d at 103 (noting that the "United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property").

Nomura argues that subjecting it to the jurisdiction of this Court would be unfair because it is unable to participate in the SIPA customer property fund and thus "stands to lose vastly more than the average victim of the Madoff fraud." Motion at 1, 16.  This argument is unsupported by the record and has no bearing on the personal jurisdiction analysis.  As this Court has recognized, the "concept of jurisdiction and the notion of a 'customer' under SIPA [are] two entirely different standards requiring completely different analyses." *BLI*, 480 B.R. at 518 ("That BLI intended to purposefully avail itself of the forum warrants a finding of personal jurisdiction over BLI, but does not necessarily warrant any finding regarding customer status under SIPA."); *see In re Picard*, 917 F.3d at 105 (holding that § 550 allows recovery from "remote subsequent transferees" whether or not they have a "direct relationship" with BLMIS); *SIPC v. BLMIS (In re Bernard L. Madoff)*, 454 B.R. 285, 301 n.22 (Bankr. S.D.N.Y. 2011) (holding that subsequent transferee claimants' intent to invest with BLMIS was "of no consequence" to customer status).  Moreover, Nomura fails to explain how it is situated any differently from the many other subsequent transferee defendants this Court has recently held are subject to personal jurisdiction.

Nomura also argues that subjecting it to jurisdiction would be unfair because it received the transfers at issue in good faith.  Motion at 2.  However, Nomura's assertion that it received the subsequent transfers in good faith is unsupported by the record, premature, and irrelevant to jurisdiction.  *Citibank*, 12 F.4th at 200 (good faith is an affirmative defense under section 550(b) which must be pled and proved by the defendant).

In addition, Nomura argues that the burdens it will face as a London-based entity are overwhelming in part because "compliance with the EU General Data Protection Regulation ("GDPR") will impose substantial logistical challenges in defending this case."  Motion at 16. This argument should be rejected out of hand.  As several courts have recognized, simply invoking

the GDPR does not excuse a party from its discovery obligations, much less insulate it from this Court's jurisdiction. *See, e.g.*, *Arigna Tech. Ltd. v. Nissan Motor Co.*, No. 2:22-cv-00126 (JRG) (RSP), 2022 WL 3020136, at *1–2 (E.D. Tex. July 29, 2022). Further, Article 49(1) of the GDPR "specifically contains an exemption that allows for the production of information that is 'necessary for the establishment, exercise or defense of legal claims'" and the European Union states in its GDPR implementation guidelines that information disclosed during pre-trial discovery in civil litigation falls within Article 49. *Id.* at *2 (quoting Article 49(1)(e), *GDPR*: Regulation (EU) 2016/679, 2016 O.J. L 119/1; Guidelines 2/2018 on derogations of Article 49 under Regulation (EU) 2016/679, p. 11). Moreover, concerns regarding GDPR can be addressed by the parties with a protective order.

### C.  In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. "Such discovery may be authorized where a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) (cleaned up). The Trustee has plausibly alleged that Nomura, *inter alia*, purposefully invested with BLMIS through Harley, had contacts with FAM personnel in the U.S., and used U.S. bank accounts to first subscribe into Harley and then redeem stolen BLMIS customer property. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient to trigger jurisdictional discovery. *Kiobel*, 2009 WL 3817590, at *6; *see also Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding that this Court did not abuse its discretion in granting the Fairfield liquidators' request for jurisdictional discovery where allegations indicated that "additional facts to establish personal jurisdiction . . . lie within Defendants' knowledge").

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny Nomura's

Motion in its entirety.

Dated: November 8, 2022
      New York, New York

/s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Matthew D. Feil
Email: mfeil@bakerlaw.com
Frank M. Oliva
Email: foliva@bakerlaw.com
Andrew M. Serrao
Email: aserrao@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Chapter 7 Estate of Bernard L.
Madoff*