**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> SNS BANK N.V. and SNS GLOBAL CUSTODY B.V., <br><br> Defendants. | Adv. Pro. No. 12-01046 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SNS BANK N.V. AND**
**SNS GLOBAL CUSTODY B.V.'S MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND....................................................3

ARGUMENT ..................................................................................................................5

I.      Standard Of Review ..........................................................................................5

II.     The Complaint Should Be Dismissed, Pursuant To Fed. R. Civ. P. 12(B)(2), For
        Lack Of Personal Jurisdiction ..........................................................................6

        A.     This Court Lacks General Jurisdiction Over Defendants ........................7

        B.     This Court Lacks Specific Jurisdiction over Defendants........................8

III.    The Complaint Fails To Meet The Pleading Standards Set Forth In
        Fed. R. Civ. P. 8(a) And 9(b)............................................................................15

IV.     The Majority of The Trustee's Claims Are Barred By Bankruptcy Code § 546(e) ..........19

V.      The Complaint Fails To Plausibly Allege That The Subsequent Transfers To
        Defendants Were Of BLMIS Customer Property ...............................................23

VI.     Defendants Are Entitled To The Good Faith Defense.......................................25

CONCLUSION...............................................................................................................28

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alki Partners, L.P. v. Vatas Holding GmbH,*
    769 F. Supp. 2d 478 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P.*
    *v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) ...................................................6, 7

*Allied Dynamics Corp. v. Kennametal, Inc.,*
    965 F. Supp. 2d 276 (E.D.N.Y. 2013) ...............................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................6, 15, 24

*Atherton v. F.D.I.C.,*
    519 U.S. 213 (1997)........................................................................................26

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................6, 15

*Bodum U.S.A., Inc. v. Hantover, Inc.,*
    No. 11 Civ. 8702 (SAS), 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012)............8

*Capitol Records, Inc. v. MP3tunes, LLC,*
    No. 07 Civ. 9931, 2008 U.S. Dist. LEXIS 75329 (S.D.N.Y. Sept. 29,
    2008) ................................................................................................................14

*Contemporary Indus. Corp. v. Frost,*
    564 F.3d 981 (8th Cir. 2009), *abrogated on other grounds by Merit Mgmt.*
    *Grp., LP v. FTI Consulting, Inc.,* 138 S. Ct. 883 (2018) ....................................22

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)........................................................................................8

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.,*
    No. 15-cv-824, 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) ..............................13

*Fairfield Sentry Ltd. v. Migani,*
    [2014] UKPC 9, 2014 WL 1219748 (B.V.I. Ct. App. Apr. 16, 2014)...............26

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
    Adv. Proc. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6,
    2018) ("*Fairfield I*") ............................................................................12, 13, 15

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  Adv. Proc. No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14,
  2020) ("*Fairfield II*"), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank,
  N.A.*, No. 19-CV-3911, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022)
  ("*Fairfield III*"), *appeal filed,* No. 22-2116 (2d Cir. Sept. 26, 2022) ...............................21

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .................................................................................................9

*Giuliano v. Barch*,
  No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ...........................14

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ....................................................................................................10

*Hill v. HSBC Bank plc,*
  207 F. Supp. 3d 333 (S.D.N.Y. 2016) ...........................................................................14

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd,* 382 F. App'x 256 (4th Cir.
  2010) ......................................................................................................................18

*In re Amaranth Nat. Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd sub nom. Gracey v. J.P.
  Morgan Chase & Co. (In re Amaranth Nat. Gas Commodities Litig.*)*,* 730
  F.3d 170 (2d Cir. 2013) ...............................................................................................11

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE
  Grp., Ltd.,* 357 F. App'x 393 (2d Cir. 2009) ....................................................................15

*Int'l Customs Assocs. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) .........................................................................14, 15

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ......................................................................................................7

*Kirschenbaum v. Leeds Morelli & Brown P.C.(In re Robert Plan of N.Y. Corp.)*,
  456 B.R. 150 (Bankr. E.D.N.Y. 2011) ............................................................................17

*Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*,
  310 B.R. 31 (Bankr. S.D.N.Y. 2004) ..............................................................................17

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros.
Holdings Inc.)*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ...................................................................6

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)...............................................................................15

*Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*,
454 B.R. 38 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 11 Civ. 5039, 2011 WL
5865193 (S.D.N.Y. Nov. 22, 2011), *aff'd*, 509 F. App'x 77 (2d Cir. 2013) ...................24

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................................................12

*Nycomed U.S. Inc. v. Glenmark Generics Lt*d.,
No. 08-CV-5023, 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010).......................18

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016)...................13

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
714 F.3d 659 (2d Cir. 2013)..................................................................................8

*Ortiz v. Guitian Music Bros., Inc.*,
No. 07 Civ. 3897, 2009 WL 2252107 (S.D.N.Y. July 28, 2009) .......................25

*Papasan v. Allain*,
478 U.S. 265 (1986)..............................................................................................6

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*,
No. 09 Civ 7401(CM), 2010 WL 1956871 (S.D.N.Y. May 14, 2010)................7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)................................................................................24

*Pettaway v. Nat'l Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020)................................................................................18

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v.
Picard*, 142 1S. Ct. 1209 (2022).............................................................3, 19, 27

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 422 (2d Cir. 2014).........................................................................20, 21

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC),*
    548 B.R. 13 (Bankr. S.D.N.Y. 2016), *vacated on other grounds, Picard v.*
    *Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d
    Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,* 142 1S. Ct.
    1209 (2022) .........................................................................................................19

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC*),
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................16, 23, 24

*Quilvest Fin. Ltd. v. Fairfield Sentry Ltd.,*
    Nos. HCVAP 2011/041-062 (E.C.S.C. BVI Ct. App. June 13, 2012).............................26

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP,*
    No. 19-cv-10247 (NRB), 2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ...................... 13-14

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.),*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................................6

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)...........................................................................15

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.,*
    2 F. Supp. 2d 470 (S.D.N.Y. 1998).................................................................14

*Rosenblatt v. Coutts & Co. AG,*
    No. 17 Civ. 3528, 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017), *aff'd,* 750
    F. App'x 7 (2d Cir. 2018) ...............................................................................9

*Sapia v. Home Box Off., Inc.,*
    No. 18 Civ. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)....................................24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...............................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")..............16, 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    516 B.R.18 (S.D.N.Y. 2014)...........................................................................27

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 08-01789, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ..............................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff),*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018).........................................................9, 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff),*
    No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................20

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)........................................................................17, 19

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994).......................................................................16

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018).................................................................8, 10, 13

*Steinberg v. A Analyst Ltd.*,
    No. 04-60898, 2009 WL 838989 (S.D. Fla. Mar. 26, 2009)..........................11

*Suber v. VVP Servs., LLC*,
    No. 20-cv-08177, 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ...................11

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..................................................................................12

*Theraplant, LLC v. Makarechi*,
    No. 16Cv0646, 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016).........................11

*To v. HSBC Holdings PLC*,
    No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F.
    App'x 66 (2d Cir. 2017)............................................................................13

*Tymoshenko v. Firtash*,
    No. 11-CV-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ................ 11-12

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019).......................................................................8

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) .........................................................18

*Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*,
    No. 13 Civ. 4588, 2014 WL 772215 (S.D.N.Y. Feb. 21, 2014) .......................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................9, 10

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016).........................................................6

## STATUTES

11 U.S.C. § 101.................................................................................2, 19, 21, 22

11 U.S.C. § 544...............................................................................................16, 19

11 U.S.C. § 545 ..................................................................................................................19

11 U.S.C. § 546 ............................................................................................2, 19, 20, 21, 22

11 U.S.C. § 547 ...........................................................................................................17, 19

11 U.S.C. § 548 ..............................................................................................16, 17, 19, 20

11 U.S.C. § 549 ..................................................................................................................19

11 U.S.C. § 550 ....................................................................3, 16, 17, 19, 23, 25, 26

11 U.S.C. § 551 ...........................................................................................................16, 17

11 U.S.C. § 553 ..................................................................................................................19

11 U.S.C. § 724 ..................................................................................................................19

11 U.S.C. § 741 ...........................................................................................................19, 21

N.Y. C.P.L.R. § 302 ......................................................................................................9, 10

N.Y. Debt. & Cred. Law § 273 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 274 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 275 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 276 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 277 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 278 ..................................................................................16, 17

N.Y. Debt. & Cred. Law § 279 ..................................................................................16, 17

## RULES

Fed. R. Bankr. P. 7004 ................................................................................................9, 10

Fed. R. Bankr. P. 7012 ........................................................................................................1

Fed. R. Civ. P. 8 ........................................................................2, 5, 15, 18, 19, 24, 25

Fed. R. Civ. P. 9 ..................................................................................2, 15, 16, 18, 19

Fed. R. Civ. P. 10 ..............................................................................................................18

Fed. R. Civ. P. 12 .................................................................................................1, 6, 7, 25

Defendants SNS Bank N.V. and SNS Global Custody B.V. ("Defendants"),[1] pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), hereby submit this Memorandum of Law and the accompanying Declaration of George W. Shuster, Jr. (the "Shuster Decl.") in support of their Motion to Dismiss the Complaint (the "Complaint" or "Compl.")[2] of Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

For the reasons set forth below, the Complaint should be dismissed in its entirety and with prejudice.

## PRELIMINARY STATEMENT

Plaintiff, the Trustee for the bankruptcy estates of BLMIS and Bernard L. Madoff ("Madoff"), through the Complaint, seeks to recover from Defendants approximately $74.5 million in purported subsequent transfers of "customer property" from BLMIS to Madoff "Feeder Funds"—Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), and Fairfield Lambda Limited ("Fairfield Lambda," and together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds").

As set forth in greater detail below, the Complaint should be dismissed in its entirety for at least five reasons.

***First***, the Complaint should be dismissed for lack of personal jurisdiction. Due process prohibits federal courts from adjudicating claims against a defendant where it does not have specific or general jurisdiction over that defendant. Here, the Court does not have personal

---

[1] SNS Bank N.V. has been renamed de Volksbank N.V. since January 1, 2017, but all matters relevant to Defendants' Motion to Dismiss relate to the time period before such date.

[2] The Complaint, attached as Ex. A to the Shuster Decl., was filed on February 9, 2012. *See* Dkt. 1. Unless otherwise specified, all citations to "Dkt. __" refer to the docket in this adversary proceeding, Adv. Pro. No. 12-01046.

jurisdiction over Defendants, foreign banking entities, because Defendants did not avail themselves of the privileges and benefits of New York—the relevant nexus for purposes of evaluating personal jurisdiction in this action—or for that matter, the United States. The Complaint fails to allege any facts that Defendants have sufficient contacts such that this Court may exercise jurisdiction over them. Rather, the Trustee seeks to assert jurisdiction over Defendants based on a third-party's connections to the forum state, in direct contravention of well-settled precedent.

*Second*, the Complaint fails to adequately allege the avoidability of the initial transfers, as required under Federal Rules of Civil Procedure 8(a) and 9(b). The Complaint contains little more than conclusory allegations that the initial transfers are avoidable and, thus, recoverable under title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"). To the extent the Trustee relies upon the pleading in a related matter, such reliance is wholly unavailing as the pleading upon which the Trustee relies has been superseded by amendment and, thus, rendered moot. Accordingly, the Complaint fails to plead sufficient factual information to satisfy both the Rule 8(a) standard and Rule 9(b)'s heightened standard.

*Third*, the Trustee's claim is barred by Section 546(e) of the Bankruptcy Code, which prevents the Trustee from avoiding a transfer that was (1) either a settlement payment or a transfer in connection with a securities contract, and (2) made by or to (or for the benefit of) a covered entity, such as a stockbroker, financial institution, or financial participant. As discussed in greater detail below, the transfers at issue in the Complaint fall within the plain text of Section 546(e)'s safe harbor, thus barring the Trustee from recovering redemptions more than two years before BLMIS's Petition Date of December 11, 2008.

*Fourth*, the Trustee's allegations that the subsequent transfers it seeks to recover are BLMIS "customer property" are not plausible on their face. Specifically, the allegations set forth

in the Complaint propose a mathematical impossibility in that the Trustee seeks to recover at least two billion dollars more from the subsequent transferees than the initial transferees (the Fairfield Funds) are alleged to have received from BLMIS. Accordingly, the Trustee's allegations are insufficient to establish a plausible entitlement to relief, and the Complaint must be dismissed.

*Fifth,* the Trustee's claim is similarly barred by the good-faith defense, under Section 550(b) of the Bankruptcy Code, because Defendants acted in good faith and provided value in exchange for their receipt of redemption payments. In *Picard v. Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,* 142 1S. Ct. 1209 (2022), the Second Circuit recently held that, to lose the protections afforded by the good faith defense, a defendant must have been able to reasonably discover the Madoff fraud, even if that defendant was on inquiry notice of suspicious facts. The Complaint offers no allegations that Defendants could reasonably have discovered Madoff's underlying fraud. In fact, the Second Amended Fairfield Complaint (defined below) makes clear that Madoff and Fairfield masterminded an incredibly complex scheme that duped not only thousands of individual investors but also the federal government. There is no reasonable basis to conclude that Defendants could, or should, have discovered the underlying fraud, and they must, therefore, have proceeded in good faith.

## PROCEDURAL AND FACTUAL BACKGROUND

In connection with the arrest of Madoff, on December 11, 2008 (the "Petition Date"), the U.S. Securities and Exchange Commission ("SEC") commenced proceedings in the U.S. District Court for the Southern District of New York (the "District Court") against Madoff and his company, BLMIS. Compl. ¶ 11. The following day, on December 12, 2008, the District Court entered an Order appointing a receiver for the assets of BLMIS. *Id.* ¶ 12. Thereafter, on December 15, 2008, the Court granted the application of the Securities Investor Protection Corporation

3

("SIPC") to combine its own action with the SEC's action. *Id.* ¶ 13. In a Protective Decree, the District Court removed the receiver and instead appointed the Trustee for the liquidation of BLMIS and removed the action to the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). *Id.* ¶ 14.

On May 18, 2009, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Fairfield Sentry and other defendants, styled as *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (the "Fairfield Action"), seeking to avoid and recover approximately $3 billion in transfers of alleged customer property from BLMIS to Fairfield Sentry (the "Initial Transfers"). *See* Compl. ¶¶ 36-37. On July 20, 2010, the Trustee amended the complaint in the Fairfield Action to, among other things, seek to recover approximately $752.3 million in subsequent transfers from Fairfield Sentry to Fairfield Sigma and approximately $52.9 million in subsequent transfers from Fairfield Sentry to Fairfield Lambda. *See* Fairfield Action, Dkt. 23 ¶¶ 53, 58 (the "Fairfield Amended Complaint").[3]

As alleged in the Fairfield Action, Fairfield Sentry was an investment fund organized under the laws of the British Virgin Islands, which sold shares directly to foreign investors. Fairfield Am. Compl. ¶ 32. Fairfield Sigma and Fairfield Lambda were both British Virgin Islands International Business Companies wholly invested in Fairfield Sentry. *Id.* ¶¶ 51, 56.

On May 9, 2011, the Trustee settled with liquidators of the Fairfield Funds and, on July 13, 2011, this Court entered consent judgments in favor of the Trustee against Fairfield Sentry for $3.054 billion and against Fairfield Sigma for $752.3 million. *See* Fairfield Action, Dkts. 69-2, 109 and 110.

---

[3] On August 28, 2020, the Trustee amended the Fairfield Amended Complaint. *See* Fairfield Action, Dkt. 286 (the "Fairfield Second Amended Complaint").

4

On February 9, 2012, the Trustee commenced this adversary proceeding against Defendants by filing the Complaint in the Bankruptcy Court. In the Complaint, the Trustee alleges that Defendants received approximately $74,468,402 of purported BLMIS customer property from the Fairfield Funds. *See* Compl. ¶ 50. The vast majority of the Complaint is dedicated to allegations related to the Madoff Ponzi scheme, including the transfers from BLMIS to the Fairfield Funds. *Id.* ¶¶ 24-41. As related to Defendants specifically, the Complaint alleges that certain BLMIS funds were transferred to the Fairfield Funds and that a portion of those funds were "subsequently transferred either directly or indirectly to … Defendants." *Id.* ¶¶ 37, 42, 44, 46. The Complaint does not allege which portions of the initial transfers to the Fairfield Funds were transferred to Defendants. While the Complaint alleges the amounts alleged transferred to Defendants, it does not explain how those amounts were calculated, how to trace those amounts from BLMIS to Defendants, or any other factual basis for its allegations, despite the fact that the Trustee has had more than a decade to investigate. The exhibits attached to the Complaint show the dates and amounts of alleged payments from the Fairfield Funds to Defendants but offer no other factual information to substantiate its allegations, such as the source of the funds at issue. *Id.,* Exs. C, E & G.

## ARGUMENT

### I.    Standard Of Review.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Under Rule 12(b)(6), "when the allegations in

a complaint, however true, could not raise a claim of entitlement to relief," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 558. A plausible claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 136 (Bankr. S.D.N.Y. 2016) (citation omitted); *see also Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015) (to survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists."). "Conclusory allegations lacking factual specificity [] do not satisfy plaintiff's burden" of showing a *prima facie* case for exercising personal jurisdiction. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012).

## II.    The Complaint Should Be Dismissed, Pursuant To Fed. R. Civ. P. 12(b)(2), For Lack Of Personal Jurisdiction.

It is well-established that a court may exercise personal jurisdiction over out-of-state defendants only where doing so is consistent with the due process of law. *See Allied Dynamics*

6

*Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 288–89 (E.D.N.Y. 2013). For personal jurisdiction

to comport with due process, a defendant must have "minimum contacts" with the forum, and the

exercise of personal jurisdiction must be reasonable, "such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.'" *Sec. Inv. Prot. Corp. v. Bernard*

*L. Madoff Inv. Sec. LLC,* 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v.*

*Washington,* 326 U.S. 310, 316 (1945)); *see also Alki Partners, L.P.*, 769 F. Supp. 2d at 488; *see*

*also Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 Civ. 7401(CM), 2010 WL

1956871, at *6 (S.D.N.Y. May 14, 2010). There are two circumstances in which courts may

exercise personal jurisdiction over a defendant: (i) when the defendant's contacts with the forum

have been continuous and systematic so as to establish the court's *general* jurisdiction over it; or

(ii) when the defendant has purposefully directed its activities toward the forum and the litigation

arises out of or is related to its contact with the forum so that the court may exercise *specific*

jurisdiction. *See Alki Partners, L.P.*, 769 F. Supp. 2d at 488.

    Here, whether examined under the rubric of general or specific jurisdiction, there is no

basis for this Court to exercise personal jurisdiction over Defendants.

### A.    This Court Lacks General Jurisdiction Over Defendants.

    In the Complaint, the Trustee fails to satisfactorily allege that the Court has general

jurisdiction over Defendants and pleads no facts to support such a finding. For starters, as alleged

in the Complaint, Defendants are foreign banking entities organized under the law of, and located

in, the Netherlands, and Defendants are not "at home" in New York such that this Court could

exercise general jurisdiction over them. *See* Compl. ¶¶ 23-34. The Complaint does not allege any

substantive connection to the relevant forum, the State of New York, or for that matter, to the

United States, that could justify general jurisdiction in this Court. *See Bodum U.S.A., Inc. v.*

*Hantover, Inc.*, No. 11 Civ. 8702 (SAS), 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012) (granting

motion to dismiss where the defendant had no physical presence in New York and only a minute fraction of its business was directed to New York); s*ee also Daimler AG v. Bauman,* 134 S. Ct. 746, 760-61 & n.19 (2014) (providing for general jurisdiction in a corporation's place of incorporation and principal place of business and, in an "***exceptional*** case," where the corporation has sufficient contacts with a forum to establish general jurisdiction) (emphasis added). Accordingly, there is no proper basis for this Court to assert general jurisdiction here.

> **B.      This Court Lacks Specific Jurisdiction over Defendants.**

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant: (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State;" (2) "the plaintiff's claim must arise out of or relate to the defendant's forum conduct;" and, (3) "the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,* 916 F.3d 143, 150 (2d Cir. 2019).

Due process under the Constitution requires that a party seeking to assert jurisdiction over a defendant must adequately allege (1) that the defendant has "certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 343 (2d Cir. 2018) (citing *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 674 (2d Cir. 2013)). The relationship with the forum and the claims at issue "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (the claims "'must arise out of or relate to the *defendant's* contacts' with the forum.") (emphasis added). Furthermore, it is the Trustee's burden to make a *prima facie* showing of jurisdiction over each defendant and with respect to *each* claim

8

asserted in the Complaint. *See Rosenblatt v. Coutts & Co. AG,* No. 17 Civ. 3528, 2017 WL

3493245 (S.D.N.Y. Aug. 14, 2017), *aff'd,* 750 F. App'x 7 (2d Cir. 2018).[4]

      In the Complaint, the Trustee seeks to establish jurisdiction over Defendants under both

New York's long arm statute, N.Y. C.P.L.R. § 302, and Fed. R. Bankr. P. 7004(f). Under either

statute, however, the Complaint fails to establish that this Court has jurisdiction over Defendants.

      As set forth above, to establish specific jurisdiction, the Trustee must first demonstrate that

Defendants purposefully availed themselves of the privilege of conducting activities within New

York. To that end, the Trustee alleges that "Defendants are subject to personal jurisdiction in this

judicial district because they purposefully availed themselves of the laws and protections of the

United States and the state of New York" by, among other things: (1) "knowingly directing funds

to be invested with New York-based BLMIS through [the Fairfield Funds,]" and (2) "knowingly

received subsequent transfers from BLMIS by withdrawing money from [the Fairfield Funds]."

Compl. ¶ 6.

      The Trustee further alleges:

> By directing investments through [Fairfield Greenwich Group ("FGG")],
> the SNS Defendants knowingly accepted the rights, benefits, and privileges
> of conducting business and/or transactions in the United States and New
> York. … [T]he SNS Defendants entered into subscription agreements with
> Fairfield Sentry and Fairfield Sigma under which they submitted to New
> York jurisdiction, sent a copy of the agreements to FGG's New York City
> office, and wired funds to Fairfield Sentry through a bank in New York.
> Defendant SNS Bank also regularly communicated with its FGG account
> representatives located in FGG's New York City office.  The SNS
> Defendants thus derived significant revenue from New York and
> maintained minimum contacts and/or general business contacts with the
> United States and New York in connection with the claims alleged herein.

*Id.* ¶ 7. Lastly, the Trustee alleges, in wholly conclusory fashion, that "Defendants should

---

[4] This Court has previously held in a related lawsuit that "[e]ach transfer is a separate claim … and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'" *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (citation omitted).

reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004." *Id.* ¶ 8.

The foregoing allegations, even if accepted as true for the purposes of Defendants' Motion to Dismiss, are wholly insufficient to establish jurisdiction over Defendants for numerous, equally fatal, reasons.

*First,* the Trustee's allegations focus on Fairfield Sentry's contacts with BLMIS in the forum, not on Defendants' contacts.[5] *See, e.g.,* Compl. ¶ 6. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *SPV Osus*, 882 F.3d at 344 (quoting *Walden*, 571 U.S. at 283-84); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). A defendant lacks the requisite minimum contacts with the forum where "[t]he only connection between [Defendant] and the forum is that the company invested in a foreign hedge fund located in the Cayman Islands but managed by plaintiffs" and "never allegedly directed any activity toward the United States." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008), *aff'd sub nom. Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Nat. Gas Commodities Litig.),* 730 F.3d 170 (2d Cir. 2013); *accord Steinberg v. A Analyst Ltd.*, No. 04-60898, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26,

---

[5] On June 13, 2022, this Court entered a Decision denying Defendant Multi-Strategy Fund Limited's ("MSFL") Motion to Dismiss, finding in relevant part, that the Trustee made a *prima facie* showing of personal jurisdiction by "devot[ing] over five pages of his twenty-seven-page Complaint to [MSFL's] contacts with New York." Mem. Decision Den. Def.'s Mot. to Dismiss, p. 6, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205(CGM) (Bankr. S.D.N.Y. June 13, 2022), Dkt. 122. By stark contrast, here, the Trustee has devoted only two paragraphs of its 53-paragraph Complaint to describing Defendants' purported contacts with the forum.

2009) (refusing to find jurisdiction over defendant based on facts that it was an investor in funds that were managed in New York, had assets, records, and accounts in New York, and invested in U.S. securities on U.S. exchanges).

Here, this Court lacks jurisdiction over Defendants, foreign banking entities, based solely on their ownership of shares in a fund that the Trustee alleges was primarily managed in New York (*i.e.,* Fairfield Sentry) and/or engaged in New York-based conduct (*i.e.,* invested with BLMIS). *See, e.g., Steinberg,* 2009 WL 838989, at *5; *Amaranth,* 587 F. Supp. 2d at 536-37; *Suber v. VVP Servs., LLC,* No. 20-cv-08177, 2021 WL 4429237, at *9 (S.D.N.Y. Sept. 27, 2021) ("'[I]f offering securities in New York, or owning shares managed by a fund in New York were sufficient to establish personal jurisdiction over a foreign company under § 302(a)(3), then New York courts would have jurisdiction over every company that accesses New York's capital markets or invests in a New York managed fund so long as that company also committed a tort that harmed a New Yorker,' which 'would be a reach too far.'") (quoting *Theraplant, LLC v. Makarechi*, No. 16Cv0646, 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016)) (Nathan, J.); *Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (rejecting as insufficient basis for specific jurisdiction an allegation that defendant purportedly invested in various "shell companies" in the U.S. because, "[a]lthough the companies in which [defendant] purportedly invested may have engaged in more extensive activities within the United States, the AC fails to allege that [defendant] controlled, directed, or even knew about these acts. Moreover, even if [defendant] were more involved in these corporations'' investment decisions, that would not, in and of itself, suffice to show that [defendant] has 'the 'requisite continuous and systematic contact' with the United States") (citation omitted). Asserting jurisdiction over Defendants would be a drastic expansion of U.S. personal jurisdiction, such that every investor in any foreign

11

company would become amenable to suit in any territory in the U.S. that the company does business. Such an expansion is not in line with the due process clause of the Constitution.

*Second,* to the extent the Trustee relies on the Subscription Agreements between Defendants and Fairfield Sentry and/or Fairfield Sigma to justify an assertion of jurisdiction here, such reliance is wholly misplaced as this Court has already considered—and rejected—this argument. This Court has previously held that the forum selection clause in the Fairfield Funds' subscription agreements did not apply to a lawsuit seeking to recover a redemption payment from Fairfield Sentry on the basis that such a suit is not one "with respect to" the subscription agreements, but rather related to Fairfield Sentry's Articles of Association. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Proc. No. 10-03496, 2018 WL 3756343, at \*11-\*12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). In so holding, the Court followed the U.K. Privy Council's determination "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments."[6] *Id.* at \*11. Furthermore, even if the Trustee's reliance on the Subscription Agreements to justify jurisdiction was not squarely foreclosed by *Fairfield I*, which it plainly is*,* the Trustee would not be entitled to rely on a forum selection clause to which he is neither a party nor "an intended third-party beneficiary of the contract under which he seeks to bring suit." *See Dean St. Cap. Advisors, LLC v. Otoka Energy*

---

[6] The Court's holding in *Fairfield I* is binding because the Trustee was, and currently is, in privity with Fairfield Sentry's Liquidators, on the basis that: (i) the Trustee will receive a share of any funds received by the Liquidators in any redeemer, and (ii) the Trustee and Liquidators stipulated "that a joint interest exists between them with respect to the Sharing Claims." See Fairfield Action, Dkt. 69-2 (Settlement Agreement) ¶¶ 4, 7, 11, 14. This shared property interest constitutes the kind of "preexisting 'substantive legal relationship[]' between the person to be bound and a party to the judgment" sufficient to justify non-party issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). And because the question of whether a lawsuit seeking to recover a redemption payment from Fairfield Sentry to the defendants was a suit "with respect to" the subscription agreements "actually litigated" and "essential to the prior judgment" of *Fairfield I*, the Court's conclusion thereabout has preclusive effect. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).

*Corp.*, No. 15-cv-824, 2017 WL 476720, at *4 (S.D.N.Y. Feb. 2, 2017) (Sullivan, J.).[7]

*Lastly,* the Trustee's remaining allegations regarding Defendants' alleged communications with Fairfield Sentry and Fairfield Greenwich Group are flatly insufficient to establish specific jurisdiction over Defendants. In brief, Defendants' total alleged contact with the forum is that: SNS Bank, specifically, (i) "regularly communicated with its FGG account representatives located in FGG's New York City office," and that the Defendants, collectively, (ii) "sent a copy of the [subscription] agreements to FGG's New York City office," and (iii) "wired funds to Fairfield Sentry through a bank in New York." Compl. ¶ 7. It is well-settled that a "handful of communications and transfers of funds … are insufficient to allow the exercise of specific personal jurisdiction" over foreign defendants. *SPV Osus*, 882 F.3d at 345; *see also To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017) ("communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it."); *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, No. 13-22050 (RDD), 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) ("the mere knowing receipt of funds in a bank account is insufficient to establish jurisdiction.") *RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, No. 19-cv-10247 (NRB), 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (quoting *Int''l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995))("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to

---

[7] Additionally, this Court has previously recognized that subscription agreements, such as the ones at issue in this lawsuit, "could not be used as the sole basis for this Court's exercise of personal jurisdiction." Mem. Decision Den. Def.'s Mot. to Dismiss, p. 10 n.3, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205(CGM) (Bankr. S.D.N.Y. June 13, 2022), Dkt. 122.

establish personal jurisdiction."). Even in-person contacts with the forum are not necessarily sufficient, particularly where those contacts are sporadic or lack a clear nexus to the underlying claims. *Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13 Civ. 4588, 2014 WL 772215, at *8 (S.D.N.Y. Feb. 21, 2014) (three in-forum meetings incidental to the contractual relationship at issue do not qualify as purposeful availment and cannot subject defendant to personal jurisdiction); *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931, 2008 U.S. Dist. LEXIS 75329, at *12 (S.D.N.Y. Sept. 29, 2008) (in-forum meetings are insufficient to establish jurisdiction absent additional evidence that the meetings related to the plaintiff's claims). The Trustee's jurisdictional allegations fail to establish that Defendants "project[ed]" themselves into New York. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (dismissing the amended complaint for lack of specific jurisdiction, finding claims that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York . . . were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York."); *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) (holding plaintiff's performance in New York of his contractual obligations was insufficient to establish personal jurisdiction over foreign defendant); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) ("knowledge [or] acquiescence" of New York Plaintiff's performance of contractual obligations in New York was insufficient to establish personal jurisdiction over nonresident corporation). The "appropriate focus … is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *Int'l Customs Assocs.*, 893 F. Supp. at 1262. At bottom, Defendants were nominal investors in the Fairfield Funds who did not, and were not expected to, provide any good, service or other performance in New York or the United States.

14

Furthermore, the allegations in the Complaint fail to explain how any of the alleged communications/contacts with New York relate to the Trustee's claims, and are therefore, insufficient. *See, e.g., Fairfield I*, 2018 WL 3756343, at *11 ("the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"). Accordingly, for the foregoing reasons, the Complaint should be dismissed for lack of personal jurisdiction.

## III.     The Complaint Fails To Meet The Pleading Standards Set Forth In Fed. R. Civ. P. 8(a) And 9(b).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570).

Where a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 524 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp., Ltd.,* 357 F. App'x 393 (2d Cir. 2009). To comply, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Rule 9(b) does not grant an aggrieved party "license to base claims of fraud on speculation and conclusory allegations." *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1127-28 (2d Cir. 1994) (citation omitted).

To bring a claim against a subsequent transferee under § 550(a)(2) of the Bankruptcy Code, the Trustee is first required to allege the avoidability of an initial transfer. *See, e.g., Picard v.*

15

*Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154, *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("In order to recover a fraudulent or preferential transfer of debtor property from a subsequent transferee, the Trustee must first show that the initial transfer of that property by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions."). The question of whether the Trustee properly pleaded the avoidability of the initial transfer is governed by Rule 9(b), which states "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *See* Mem. Decision Den. Def.'s Mot. to Dismiss, p. 13, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205(CGM) (Bankr. S.D.N.Y. June 13, 2022), Dkt. 122.

Here, the Trustee fails to adequately allege such avoidability under the heightened pleading standard required by Rule 9(b). Rather, the Trustee's only allegations regarding the initial transfers are that: (i) "Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 37); (ii) "Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 38); and (iii) "Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly

16

SIPA § 78fff-2(c)(3)" (Compl. ¶ 39). These conclusory allegations are wholly insufficient, as the

Trustee fails to offer any factual allegation showing that: (i) any alleged initial transfer was made

without "fair consideration," as required by the former New York Debtor and Creditor Law ("N.Y.

Debt. & Cred. Law") § 273 (*see Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l

Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005)); (ii) BLMIS "received less than a reasonably equivalent

value in exchange for such transfer," as required by Bankruptcy Code § 548(a)(1)(B)(i) (*see

Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 436 n.40 (Bankr. S.D.N.Y. 2011));

(iii) any alleged initial transfer was made with actual intent to defraud, as required by former N.Y.

Debt. & Cred. Law § 276 (*see Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31,

56 (Bankr. S.D.N.Y. 2004)) and Bankruptcy Code § 548(a)(1)(A) (see *Dreier*, 452 B.R. at 423);

and (iv) any alleged initial transfer made within 90 days of the Petition Date was made to or for

the benefit of a creditor on account of an antecedent debt owed by the debtor before the transfer

was made or that the purported creditor who received the transfers received more than it would

otherwise have under Chapter 7, as required by Bankruptcy Code § 547(b) (*see Kirschenbaum v.

Leeds Morelli & Brown P.C.(In re Robert Plan of N.Y. Corp.)*, 456 B.R. 150, 155-58 (Bankr.

E.D.N.Y. 2011)).

While the Trustee attempts to obviate his clear pleading failure by "incorporate[ing] by

reference the allegations contained in the Fairfield Amended Complaint" (Compl. ¶ 36), the

purported incorporation is wholly insufficient to state a claim as the allegedly incorporated

pleading has itself been superseded by a second amended pleading, and therefore has been

"render[ed] of no legal effect." *See, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299,

303 (2d Cir. 2020); *see* Fairfield Action, Dkt. 286. In the more than ten years since the Trustee

filed the Complaint, he has left his improper incorporation undisturbed, failing to adequately plead

facts under Rule 9(b) suggesting the avoidability of any alleged initial transfers of BLMIS

Customer Property to Fairfield Sentry, despite the fact that he has had more than a decade of access

to Fairfield Funds' books and records.[8] The Trustee's improper incorporation imposes an

unacceptable burden on Defendants and on the Court. *See Hinton v. Trans Union, LLC*, 654 F.

Supp. 2d 440, 446-47 (E.D. Va. 2009) (holding to avoid "confusion and inconvenience" from

requiring a party "to take into account a number of other, superseded pleadings … wholesale

incorporations—particularly those that seek to incorporate superseded versions of a complaint—

must be examined with special care."), *aff'd,* 382 F. App'x 256 (4th Cir. 2010); *see also, e.g.,*

*Longshoremen's Ass'n*, 518 F. Supp. 2d at 464. ("If Rule 8(a) implies that the Davis court should

not be obliged to review a single prior complaint for the purpose of discerning the claims made in

the action before it, it follows a fortiori that this Court should not be required to read through six

different pleadings, stretching back some seventeen years, in addition to various peripheral

documents, in order to decipher the basic elements of the Government''s claim in this action, nor

should the defendants be expected to undertake such an endeavor in preparing an Answer to the

Amended Complaint.").

   In light of the foregoing, the Complaint must be dismissed in its entirety.

---

[8] While Fed. R. Civ. P. 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion," such wholesale incorporation as attempted by the Trustee is wholly unauthorized by the Federal Rules. *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (the "proposed method of pleading necessary elements of [the] claim by incorporating factual allegations contained in several prior lengthy . . . pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief") (internal quotation marks omitted); *see also Nycomed U.S. Inc. v. Glenmark Generics Lt*d., No. 08-CV-5023, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation. A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite "guidance to the responding party.") (internal citations and quotation marks omitted).

## IV.     The Majority of The Trustee's Claims Are Barred By Bankruptcy Code § 546(e).

The Trustee asserts one cause of action against Defendants under Section 550(a) of the

Bankruptcy Code, which provides that: "to the extent that a transfer is avoided under section 544,

545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the

estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the

initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any

immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). In order to properly

plead a subsequent transfer claim, the Trustee must first sufficiently allege that the initial transfer

from BLMIS to Fairfield Sentry is avoidable.[9] *See In re Madoff*, 594 B.R. at 195 ("To plead a

subsequent transfer claim, the Trustee must plead that the *initial* transfer is avoidable, and the

defendant is a subsequent transferee of that initial transferee, that is, 'that the funds at issue

originated with the debtor.'"); *see also Cohmad*, 2013 WL 1609154, at *7 (consolidated

proceedings on 11 U.S.C. § 546(e)).

With respect to any transfer that constitutes a "settlement payment, as defined in section

101 or 741 of this title, made by or to (or for the benefit of) a … stockbroker, financial institution

[or] financial participant … or that is a transfer made by or to (or for the benefit of) a …

stockbroker, financial institution [or] financial participant … in connection with a securities

contract," Section 546(e) provides a safe harbor, barring the Trustee from exercising avoidance

powers. 11 U.S.C. § 546(e). The safe harbor provision applies to any such transfer other than one

for which recovery is sought pursuant to § 548(a)(1)(A). *Id.* Furthermore, while the safe harbor

---

[9] "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer, and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *In re Madoff*, 594 B.R. at 195 (citing *'In re Sharp Int'l Corp.*, 403 F.3d at 56 and *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *'vacated on other grounds, Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 1S. Ct. 1209 (2022)).

provision is ordinarily a defense to the avoidance of an initial transfer, where, as here, "the initial

transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers …

the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of

those funds."[10] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, No. 08-

01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021); *See also* Mem. Decision Den.

Def.'s Mot. to Dismiss, p. 16, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM)

(Bankr. S.D.N.Y. June 13, 2022), Dkt. 122.

Under § 546(e), the safe harbor blocks the Trustee from avoiding a transfer (except those

within two years of the Petition Date, pursuant to § 548(a)(1)(A)) if that transfer was: (i) made "by

or to (or for the benefit of)" a covered entity such as a stockbroker, financial institution, or financial

participant; and (ii) was either a transfer in connection with a securities contract or a settlement

payment. Here, the safe harbor requires the dismissal of the Trustee's claims for any initial transfer

made more than two years before the Petition Date because (i) the initial transfers are settlement

payments made in connection with multiple securities contracts, and (ii) were made by a

stockbroker, to, and for the benefit of, multiple covered entities.

Regarding the first element, the Second Circuit has previously held that initial transfers

from BLMIS to its customers pursuant to account agreements constitute settlement payments made

in connection with a securities contract, as defined by section 546(e). *Picard v. Ida Fishman

Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 422, 417, 418–23 (2d Cir. 2014).

The account agreements between BLMIS and its customers plainly qualify as "securities

contracts" under the Bankruptcy Code. *See* 11 U.S.C. § 741(7)(A)(i)-(vii) (defining "securities

contract" as "a contract for the purchase, sale, or loan of a security," and "any other agreement or

---

[10] Notably, the safe harbor applies even where, as here, the alleged initial transferee consented to entry of judgment
against it. *See In re Madoff,* 2021 WL 3477479, at *3.

transaction that is similar to an agreement or transaction referred to in this subparagraph"); *see also Fishman*, 773 F.3d at 419 (noting that Congress intended to "sweep broadly" in defining "securities contract" under section 741(7) of the Bankruptcy Code).

Regarding the second element, there is no dispute that the transactions were made by a "stockbroker," as required under § 546(e). *See* Compl. *generally*; *see also Fishman*, 773 F.3d at 417 ("[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)"); *see also* Br. for Pl.-Appellant Irving H. Picard at i-ii, 5, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-2557 (2d Cir. May 15, 2013), Dkt. 145 (not challenging stockbroker finding on appeal). On that basis alone, the safe harbor applies to the initial transfers at issue in this case.

Yet, further, the safe harbor also applies because the initial transfers were made to, and/or for the benefit of, financial institutions. Under Bankruptcy Code § 101(22) the definition of "financial institution" includes not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A). This Court has already held that the Fairfield Funds are "financial institutions," and thus, fall within the purview of § 546(e). *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Proc. No. 10-03496, 2020 WL 7345988, at *6 & n.11 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield II*"), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A.*, No. 19-CV-3911, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("*Fairfield III*"), *appeal filed,* No. 22-2116 (2d Cir. Sept. 26, 2022). In reaching its decision to apply safe harbor to redemption payments by Fairfield Sentry, the Court found that Fairfield Sentry was a "financial institution" because it was a customer of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank") and Citco Bank acted as Fairfield Sentry's agent in connection with the securities contracts under which the BLMIS transfers were made. Defendants are also

21

covered entities within the ambit of Section 546(e)'s safe harbor. SNS Bank is a "financial institution," within the meaning of § 101(22)(A). Specifically, SNS Bank (n/k/a de Volksbank N.V.) has been authorized since at least 1990, and was authorized at the time of the relevant transfers alleged in the Complaint, to "[c]arry[] on the business of a bank." *See* Compl. ¶ 3 ("SNS Bank was the banking and financial services arm of SNS Reaal N.V."); *see also* Shuster Decl., ¶ 2, Ex. B; *see also Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 987 (8th Cir. 2009) (finding that "a bank" "is a financial institution"), *abrogated on other grounds by Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,* 138 S. Ct. 883 (2018). SNS Global Custody, a custodian and affiliate of SNS Bank, qualifies for section 546(e)'s protections because it is a financial institution or financial participant. SNS Bank, also a financial institution, acted through its custodian entity, SNS Global Custody, when servicing its clients, as prescribed by Dutch law at the time.

Lastly, to the extent the Trustee seeks to defeat safe harbor by invoking the exception that applies for a "subsequent transferee who had actual knowledge" of the underlying fraud, such exception does not apply here as the Trustee has failed to allege even a single fact that Defendants had knowledge (constructive, actual, or otherwise) of Madoff's fraud. While this Court has recently held that there are sufficient allegations in the Fairfield Second Amended Complaint to find that Fairfield Sentry had actual knowledge of the fraudulent scheme, that finding cannot be imputed to infer knowledge on Defendants. At bottom, the Complaint fails to allege that Defendants were anything other than innocent victims.

Accordingly, the safe harbor applies, and the Trustee's claims to recover transfers made more than two years before the Petition Date must be dismissed.

**V.      The Complaint Fails To Plausibly Allege That The Subsequent Transfers To Defendants Were Of BLMIS Customer Property.**

To state a claim under either § 550(a) or § 78fff, the Trustee must plausibly plead facts showing that the challenged subsequent transfer was estate property. See 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3) ("trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property"); *see also Shapiro*, 542 B.R. at 119 (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"). While this Court has held that "at the pleading stage, the Trustee is not required to provide a 'dollar-for-dollar accounting' of the exact funds at issue …" it is nonetheless true that "barebones allegations that the funds at issue were transferred to the [s]ubsequent [t]ransferees, without more detail, are insufficient." *Shapiro*, 542 B.R. at 119.

Here, the Complaint contains only conclusory allegations that the transferees to Defendants were customer property. In fact, the Trustee asserts only that "a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, [Defendants]." Compl. ¶¶ 42, 44, 46. Nothing in the Complaint's exhibits substantiates these allegations. Rather, the exhibits upon which the Trustee relies simply list transfers from BLMIS to Fairfield Sentry (and from Fairfield Sentry to Fairfield Sigma and Fairfield Lambda), without tying those transfers to the payment of any redemption request from Defendants.[11] The

---

[11] *See Shapiro*, 542 B.R. at 119 (holding "[t]he SAC does not tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it does not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves.").

"barebones" allegation that the transfers originated with BLMIS, without specifying which specific transfers to Defendants contained customer property, is wholly insufficient to sustain the Trustee's claim. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18 Civ. 1317, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

Furthermore, the Trustee's own allegations confirm that it is implausible that the transfers to Defendants include BLMIS customer property. As set forth above, under Rule 8, a plaintiff is required to plead allegations demonstrating "more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (emphasis added); *see also* Section III, *supra.* Here, the Trustee's claims, as plead, are mathematically impossible, and thus, fail to meet the requisite pleading standard.[12]

In the Complaint, the Trustee alleges that approximately **$3 billion** of customer property was transferred by BLMIS to Fairfield Sentry within the six years preceding the Petition Date and that **a portion** of those transfers were subsequently transferred to Defendants. *See* Compl. ¶¶ 37-48. Yet, on the face of the Trustee's own pleadings, the Trustee simultaneously seeks to recover **more than $5 billion** of alleged subsequent transfers that Fairfield Sentry made to Fairfield Greenwich Group and others who allegedly received redemption payments from Fairfield Sentry

---

[12] *See Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 454 B.R. 38, 44-47 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claims based on implausible allegations), *aff'd,* No. 11 Civ. 5039, 2011 WL 5865193 (S.D.N.Y. Nov. 22, 2011), *aff'd,* 509 F. App'x 77 (2d Cir. 2013).

through the Fairfield Funds (including Defendants). *See, e.g.*, Fairfield Second Am. Compl., Exs.

5, 6, 8, 10, 12, 13, 14, and 21 (Dkt. 286-5, 286-6, 286-8, 286-10, 286-12, 286-13, 286-14, 286-21).

Ultimately, the Trustee seeks to recover approximately $2 billion more in subsequent transfers

from Fairfield Sentry than was originally alleged to have been transferred to Fairfield Sentry by

BLMIS. These allegations are on their face implausible and fail to satisfy the threshold standards

imposed by Rule 8.

Accordingly, the Complaint fails to state a claim under § 550(a) or § 78fff because it does

not plausibly allege an essential element such a claim—the transfer of BLMIS property to the

subsequent transferee.

## VI.    Defendants Are Entitled To The Good Faith Defense.

Under section 550(b), a trustee may not recover from a subsequent transferee who took for

value, in good faith, and without knowledge of the voidability of the transfer. "Although a motion

to dismiss is usually not the appropriate vehicle to raise affirmative defenses to a complaint, a

complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising

an affirmative defense if the defense appears on the face of the complaint." *Ortiz v. Guitian Music

Bros., Inc.*, No. 07 Civ. 3897, 2009 WL 2252107, at *2 (S.D.N.Y. July 28, 2009) (internal citation

and quotation marks omitted). Dismissal is appropriate where "the complaint itself establishes the

facts necessary to sustain [a] defendant''s [affirmative] defense." Here, it is readily apparent on

the face of the Complaint that Defendants are entitled to the good faith defense under section

550(b) because, as alleged, Defendants took the subsequent transfers for value, in good faith, and

without knowledge of the voidability of the initial transfer(s). *See* 11 U.S.C. § 550(b).

The Complaint seeks recovery of transfers from the Fairfield Funds received by Defendants

in exchange for redemption of Defendants' interests in such funds. In other words, Defendants

surrendered interests in the Fairfield Funds in exchange for the redemption payments at issue in

this case. The surrender of those shares constitutes sufficient "value" under § 550(b) of the

Bankruptcy Code. The Fairfield Funds are British Virgin Islands ("BVI") companies, therefore,

under the internal affairs doctrine, the corporate relationship with their shareholders is governed

by BVI law. *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997); *see Fairfield Sentry Ltd. v. Migani*,

[2014] UKPC 9[13], ¶ 10, 2014 WL 1219748 (B.V.I. Ct. App. Apr. 16, 2014) ("the terms of the

subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be

found in the Articles of Association of the Fund"). BVI courts have recently held that the surrender

by a Sentry investor of Sentry shares upon Sentry's redemption of the shares for cash is valid

consideration to support the exchange. *Id.* ¶¶ 8, 87; *Quilvest Fin. Ltd. v. Fairfield Sentry Ltd.*, Nos.

HCVAP 2011/041-062 (E.C.S.C. BVI Ct. App. June 13, 2012).[14]; *see also Sec. Inv. Prot. Corp. v.

Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar.

31, 2020) (Bernstein, J.) ("Surrendering equity interests constitutes value for purposes of section

550(b) because it is consideration sufficient to support a simple contract."). Therefore, on the face

of the Complaint, the "value" element of § 550(b) is satisfied.

Regarding the "good faith" element, the Fairfield Second Amended Complaint establishes

that upon a diligent inquiry, neither of Defendants could have reasonably discovered the fraudulent

purpose of the transfers. In evaluating a claim of good faith, the Second Circuit recently held that

courts must examine three factors: (1) the actual facts that the defendant knew; (2) whether these

facts put the defendant on inquiry notice of the fraudulent purpose underlying a transfer, and (3)

whether a diligent inquiry would not have discovered the fraudulent purpose of the transfer. *In re

Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th at 178. Courts construe "without knowledge of the

[13] See https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf.

[14] See https://www.eccourts.org/quilvest-finance-ltd-and-others-v-fairfield-sentry-ltd/.

26

voidability of the transfer" the same as good faith. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R.18, 23 n.3 (S.D.N.Y. 2014) (as Judge Rakoff noted, "[i]n light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required"). Accordingly, even if a transferee has actual knowledge of facts that put it on inquiry notice of potential fraud underlying a transfer, the transferee is still entitled to the good faith defense unless a diligent inquiry would have uncovered that fraudulent purpose.

Here, the Complaint fails to allege facts demonstrating that a diligent inquiry would have revealed Madoff's fraud. In fact, the allegations in the Fairfield Second Amended Complaint show that an inquiry would not have revealed the fraud, as only a very small group of outliers suspected a Ponzi scheme, while thousands of other market participants, many extremely sophisticated, disagreed with these opinions and invested in BLMIS, either directly or through funds like the Fairfield Funds.

The Fairfield Second Amended Complaint alleges that BLMIS operated under a cloak of secrecy and that Sentry's management: "were willing to lie to protect their relationship" with Madoff (Fairfield Second Am. Compl. ¶ 5); "spun information to pacify existing FGG investors," (*id.*); "omitted material information about Madoff from their representations," (*id.*); "covered for Madoff in deliberate efforts to get investors and regulators off the scent," (*id.* ¶ 6); "suppressed … observations about BLMIS's inexplicable operations," (*id.* ¶ 7); "protected BLMIS from inquiry," (*id.* ¶ 8); "lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing," (*id.* ¶ 9); "advanced various stories to attempt to defuse investor concerns,"(*id.* ¶ 153); "had privileged access to Madoff,"(*id.* ¶ 162); "prevent[ed] prospective investors from contacting Madoff directly," (*id.* ¶ 164); "downplay[ed] Madoff's role," (*id.* ¶ 165); "evad[ed] investor inquiries" and "deliberately tried to conceal Madoff's role with the FGG feeder funds,"

27

(*id.* ¶ 166); "guarded the relationship with Madoff," (*id.* ¶ 170); were "unwilling to release" information, (*id.* ¶ 177); "provided evasive answers,"(*id.* ¶ 183); and in 2004, "scrubbed references to BLMIS from FGG materials to avoid disclosure of Madoff's role" (*id.* ¶ 237).

Even when the SEC began an investigation in 2005, as alleged in the Fairfield Second Amended Complaint, into whether BLMIS was a Ponzi scheme or engaged in other illegal activity, the SEC itself, with all of its power, was stymied by the efforts of BLMIS and Fairfield Sentry insiders to hinder the government investigation through false statements and refusal to hand over responsive documents. *Id.* ¶¶ 236–62. Notably, the Fairfield Second Amended Complaint explicitly argues that these efforts prevented the SEC from "gain[ing] an accurate understanding of FGG's operations and relationship with BLMIS," (*id.* ¶ 248); gave "the appearance of cooperating with the SEC [without] disclos[ing] information useful to the SEC's investigation," (*id.* ¶ 251); and "misle[d] the SEC to believe that it was FG Bermuda, not BLMIS, that made the investment decisions" (*id.* ¶ 255). The Trustee's allegations that some consultants and market analysts believed that BLMIS *may* have been involved in improper activity is not sufficient evidence that Defendants could or should have known about the underlying fraud. *See* Fairfield Second Amended Compl. ¶¶ 3-4. The fact is that Defendants—which have nowhere near the level of power, information access and other resources of the SEC—could not have reasonably uncovered the underlying fraud.

Based on the Trustee's own allegations, it is apparent that Defendants acted in good faith and thus, are entitled to dismissal as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, and with prejudice.

Dated: October 14, 2022
    New York, New York

Respectfully Submitted,


WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/* George W. Shuster, Jr.
George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: 212-230-8800
Facsimile: 212 230-8888
Email: george.shuster@wilmerhale.com

*Counsel for Defendants SNS Bank N.V. and SNS Global Custody B.V.*