**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02733 (CGM) |
| Plaintiff, | |
| v. | |
| NAIDOT & CO. and BESSEMER TRUST COMPANY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS**

Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................1

ARGUMENT ...................................................................................................2

I.    THE TRUSTEE'S CLAIMS AGAINST BTC ARE BARRED BY THE
      STATUTE OF LIMITATIONS ................................................................2

II.   THE TRUSTEE'S CLAIMS AGAINST NAIDOT AND BTC ARE
      BARRED BY THE MERE CONDUIT DEFENSE OR THE SECTION 546(e)
      SAFE HARBOR ...................................................................................8

      A.  Naidot And BTC Are "Mere Conduits" And Not Transferees Subject To
          Section 550.................................................................................9

      B.  The Amended Complaint Itself Establishes A Good Faith Defense For
          Both Naidot and BTC ..................................................................15

      C.  Section 546(e)'s Safe Harbor Insulates Naidot and BTC From Liability..............17

          1.   The Trustee Has Misframed The Transaction It Seeks To Avoid .............17

          2.   The Court Should Find That Section 546(e) Applies To
               Subsequent Transfers As Well As Initial Transfers...................................20

          3.   Naidot and BTC Have An Alternative Basis For Invoking
               Section 546(e)'s Safe Harbor....................................................24

CONCLUSION ................................................................................................26

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 101(22)(A) ........................................................................................19

11 U.S.C. § 546(e) ...........................................................................1-2, 8-9, 17-25

11 U.S.C. § 550.............................................................................................. 1, 9

11 U.S.C. § 550(a) ........................................................................9, 10, 14, 18

11 U.S.C. § 550(b) ........................................................................................ 1-2, 15

11 U.S.C. § 550(f) ..............................................................................................2

Fed. R. Civ. P. 12(b) ..........................................................................................1

Fed. R. Civ. P. 15(c) ...................................................................................3-5, 7-8

Fed. R. Evid. 201(b) ........................................................................................17


**Court Documents**

Dkt. 1 (Complaint) ...............................................................................2, 5, 25

*In re BLMIS (Banque Lombard Odier)*, No. 12-01693, hearing (Bankr. S.D.N.Y.
June 15, 2022) ...............................................................................................19

Dkt. 100 (Amended Complaint) ................................................1-6, 12-17, 19, 25


**Cases**

*Al-Dahir v. FBI*, 454 F. App'x 238 (5th Cir. 2011) .......................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................12

*Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Group, Inc.)*,
2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ...............................................10

*Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995) ...................................3, 6

*Barrow v. Weathersfield Police Dep't.*, 74 F.3d 1366 (2d Cir. 1996)............................5

*Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1
(S.D.N.Y. 2007) ...................................................................................... 10-11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................12

*Bloom v. Alvarez*, 498 F. App'x 867 (11th Cir. 2012) .................................5

*Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988) .................... 10-11

*B.T. Produce Co. v. Robert A. Johnson Sales, Inc.*, 354 F. Supp. 2d 284 (S.D.N.Y. 2004) .........17

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant &
Sons, Inc.)*, 480 B.R. 480 (S.D.N.Y. 2012)........................................................16

*Celestine v. City of San Jose*, 1994 WL 9145 (9th Cir. Jan. 12, 1994) ...........................7

*Clark v. Hawkins*, 1994 WL 685037 (5th Cir. 1994) ....................................................8

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) ................................................ 6-7

*Curkin v. City of N.Y.*, 2020 WL 5628042 (S.D.N.Y. Sept. 21, 2020) ..........................5

*Farrell v. McDonough*, 966 F.2d 279 (7th Cir. 1992) ..................................................3

*Fetterman v. Westmoreland Cty. Children's Bureau*, 681 F. App'x 166 (3d Cir. 2017) ..............7

*Fischer v. Forrest*, 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017) ..................................4

*Fogel v. Wal-Mart de Mexico*, 2017 WL 751115 (S.D.N.Y. Feb. 27, 2017) ...............7

*Garvin v. City of Philadelphia*, 354 F.3d 215 (3d Cir. 2003) ......................................5

*Gleason v. McBride*, 869 F.2d 688 (2d Cir. 1989) .......................................................5

*Gill v. Bd. of the Nat'l Credit Union Admin.*, 2018 WL 5045755 (E.D.N.Y. Oct. 16, 2018) ........8

*Houghtaling v. Eaton*, 2018 WL 522342 (E.D.N.Y. Jan. 22, 2018) ............................7

*In re AES Thames*, LLC, 2016 WL 11595116 (D. Del. Oct. 28, 2016) ........................13

*In re Bicom NY, LLC*, 2022 WL 1419997 (2d Cir. May 5, 2022) ...............................18

*In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014)................... 9, 19-20

*In re BLMIS*, 468 B.R. 620 (Bankr. S.D.N.Y. 2012) ...................................................8

*In re BLMIS*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016).....................................................16

*In re BLMIS*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018)....................................2, 16, 17

*In re BLMIS*, 976 F.3d 184 (2d Cir. 2020)..................................................................9

*In re Finley*, 130 F.3d 52 (2d Cir. 1997)..................................................8, 10, 18

*In re Kaiser Steel Corp.*, 110 B.R. 514 (D. Colo. 2009) ............................................13

*In re Nat'l Consum. Mortgage LLC*, 2013 WL 6844494 (D. Nev. Dec. 20, 2013) ......................9

*In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187 (S.D.N.Y. 2020).......................18

*In re Rocco*, 2014 WL 7404566 (D.N.J. Dec. 29, 2014) .............................................13

*In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) ............14

*Jhagroo v. Brown*, 2020 WL 3472424 (S.D.N.Y. June 25, 2020) ................................4

*Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853 (9th Cir. 1986) ......................................8

*Lovelace v. O'Hara*, 985 F.2d 847 (6th Cir. 1993) .....................................................5

*Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173 (3d Cir. 1994) ......................................8

*Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42
    (10th Cir. 1994)....................................................................................................11

*Menotte v. United States (In re Custom Contractors, LLC)*, 745 F.3d 1342
    (11th Cir. 2014) ...................................................................................................11

*Meoli v. Huntington Nat'l Bank*, 848 F.3d 716 (6th Cir. 2017) .................................11

*Merit Management Group LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018)...........................18

*Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*,
    426 B.R. 96 (Bankr. Del. 2010) ..................................................................14

*Miller v. Mancuso*, 388 F. App'x 389 (5th Cir. 2010) ...........................................................5

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196
    (11th Cir. 1988)..........................................................................................12

*Palmer v. Stuart*, 274 F. App'x 58 (2d Cir. 2008) ................................................................5

*Picard v. ABN Amro N.A. (In re BLMIS)*, 2020 WL 1584491
    (Bankr. S.D.N.Y. Mar. 31, 2020) ................................................................15

*Pierre v. Cty. Of Nassau*, 2022 WL 2872651 (E.D.N.Y. July 21, 2022)........................................4

*Pikos v. Liberty Maint., Inc.*, 2015 WL 6830670 (E.D.N.Y. Nov. 6, 2015)....................................4

*Powers v. Graff*, 148 F.3d 1223 (11th Cir. 1998) ..............................................................3

*Ramos-Santiago v. Ins. Co. of State of Pa.*, 379 F. App'x 596 (9th Cir. 2010) .............................5

*Reich v. City of N.Y.*, 2021 WL 6423983 (E.D.N.Y. Aug. 15, 2021) .............................................7

*Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996)...............................................................11

*Schiavone v. Fortune*, 477 U.S. 21 (1986) ....................................................................3

*SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................ 20-24

*SIPC v. BLMIS*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)............................. 17-19, 22

*SIPC v. BLMIS (Banque SYZ)*, 2022 WL 2135019
    (Bankr. S.D.N.Y. June 14, 2022) ......................................................9, 15, 17, 21

*SIPC v. BLMIS*, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) .........................................21

*SIPC v. BLMIS*, 476 B.R. 715 (S.D.N.Y. 2012) ...............................................................24

*SIPC v. BLMIS*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................3

*SIPC v. BLMIS*, 501 B.R. 26 (S.D.N.Y. 2013) .................................................................3

*SIPC v. BLMIS*, 505 B.R. 135 (S.D.N.Y. 2013) ...............................................................19

*SIPC v. BLMIS*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021) .........................................................10

*SIPC. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) .............................10, 14

*Smith v. City of N.Y.*, 2020 WL 1689572 (S.D.N.Y. Apr. 6, 2020) .............................................3

*Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326
    (S.D. Fla. 2008) ......................................................................................14

*Tese–Milner v. Moon (In re Moon)*, 385 B.R. 541 (Bankr. S.D.N.Y.2008)..................................14

*Turner v. Suffolk Cty.*, 2022 WL 3357944 (E.D.N.Y. Aug. 15, 2022)..........................................7

*In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) ..............................14

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014) ..........14

*Wilson v. U.S. Government*, 23 F.3d 559 (1st Cir. 1994) ................................................................3

*Wingspan Records, Inc v. Simone*, 2014 WL 6879849 (S.D.N.Y. Dec. 5, 2014) ..........................3

*Worthington v. Wilson*, 8 F.3d 1253 (7th Cir.1993) ........................................................................4

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) .................................................11

United States Securities and Exchange Commission, Office of Investigations, Report No. OIG-
        509: *Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme*
        (Aug. 31, 2009). .............................................................................................................17

## INTRODUCTION

Naidot & Co. ("Naidot") and Bessemer Trust Company ("BTC") move to dismiss the Amended Complaint for failure to state a claim because its allegations make Naidot and BTC mere conduits, rather than "transferees," for purposes of the Trustee's claim under 11 U.S.C. § 550, and the Amended Complaint on its face demonstrates that Naidot and BTC both have a good faith defense under Section 550(b) and the safe harbor in 11 U.S.C. § 546(e).  *See* FRCP 12(b)(6).  In addition, BTC alone moves to dismiss the Complaint for violating the statute of limitations.  *See* FRCP. 12(b)(2).  The Trustee of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeks to claw-back nearly $13 million that BLMIS sent to a British Virgin Islands ("BVI") company, Fairfield Sentry Ltd. ("Sentry"), that the Amended Complaint claims was later sent by Sentry to Naidot and BTC.  The Trustee alleges that Sentry sent the money to Defendants as redemptions for the sale of equity interests in Sentry and that Naidot held these securities as a "nominee" for BTC, which in turn held the investments for its customers.  (Dkt. 100 ¶4).  But neither Naidot nor BTC is the appropriate target for the Trustee's claw-back action.

If the Trustee has a viable claim against those who received redemptions from the BLMIS Ponzi scheme, it should bring it against those investors who decided to invest and later redeem their investment in BLMIS—any of BTC's customer who directed these investments and redemptions.  In crafting a claw-back provision to reach those persons, Congress exempted mere conduits of those transactions, such as Naidot and BTC based on the facts alleged in the Amended Complaint.

The Amended Complaint on its face also alleges the facts necessary to establish two defenses.  First, the Amended Complaint pleads that Naidot and BTC were victims of the BLMIS fraud and that they transferred equity for the redemption funds, which places them

1

within the good faith exception of Section 550(b). Second, the Trustee's six-year claims fall

within the safe harbor of Section 546(e) for three reasons: (1) if not a mere conduit itself, Naidot

or BTC would be the initial transferee because Sentry was a mere conduit, and Naidot and BTC

satisfy the elements of Section 546(e) and were unaware of the BLMIS fraud; (2) even if viewed

as a subsequent transferee, Naidot and BTC can challenge the initial transfer because they were

unaware of the BLMIS fraud; and (3) each has an alternative basis for invoking Section 546(e)

because Naidot had a securities contract with Sentry, a financial institution, and Naidot held the

Sentry stock for BTC, a financial institution, on behalf of its customer or customers.

Before addressing these issues on the merits, BTC will address the fact that it has only

just now been brought into this decade-long case and the claims against it are time-barred.

## ARGUMENT

## I.   THE TRUSTEE'S CLAIMS AGAINST BTC ARE BARRED BY THE STATUTE OF LIMITATIONS

The Trustee's claims against BTC come roughly a decade after the statute of limitations

expired. The Trustee's original Complaint was filed on September 22, 2011 against Naidot

*alone*, and BTC was not added as a defendant until the Amended Complaint was filed on August

5, 2022. (*Compare* Dkt. 1 *with* Dkt. 100.) The Trustee's claim for the recovery of the transfer

from Sentry was required to be filed within one year of the date that BLMIS' transfer to Sentry

was avoided or the case closed under 11 U.S.C. § 550(f), whichever is earlier. *See, e.g.*, *In re*

*BLMIS*, 594 B.R. 167, 207 (Bankr. S.D.N.Y. 2018) ("Claims to recover subsequent transfers

must be commenced not later than the earlier of one year after the initial transfer is avoided or

the date that the case closed.") (citing Section 550(f)). As Judge Rakoff explained: "For

subsequent transferees of Fairfield [Sentry], the Trustee must have brought recovery actions

against Fairfield's subsequent transferees within one year of the June 2011 approval of the

Trustee's settlement with Fairfield, as that disposed of the case against Fairfield." *SIPC v. BLMIS*, 501 B.R. 26, 32 (S.D.N.Y. 2013) (Rakoff, J.); *see SIPC v. BLMIS*, 480 B.R. 501, 523 (Bankr. S.D.N.Y. 2012) (Lifland, J.).  Consequently, the Trustee's Amended Complaint adding BTC on August 5, 2022 was filed a decade too late.  (Dkt. 100.)

Although Federal Rule of Civil Procedure 15(c) permits an amended complaint that adds a defendant to relate back to the date of the original pleading in some circumstances, those circumstances are not present here.  Rule 15(c) is applied "strictly and literally," *Farrell v. McDonough*, 966 F.2d 279, 283 (7th Cir. 1992) (citing *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)), because "[w]hen relation back is too liberally allowed the important policy reasons for limitations periods are circumvented." *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998). "It is the plaintiff's burden to establish that an amended claim relates back to the date of the original complaint." *Smith v. City of N.Y.*, 2020 WL 1689572, at *2 (S.D.N.Y. Apr. 6, 2020); *see Wingspan Records, Inc v. Simone*, 2014 WL 6879849, at *5 (S.D.N.Y. Dec. 5, 2014) ("[I]t is plaintiff's burden to prove *every* element of relation back.") (emphasis in original); *Al-Dahir v. FBI*, 454 F. App'x 238, 242 (5th Cir. 2011) ("Plaintiffs have the burden to demonstrate that an amended complaint relates back under Rule 15(c)").

Rule 15(c) applies only when the "amendment changes the party or the naming of the party against whom a claim is asserted" due to a "mistake," but the Trustee did not substitute a defendant to correct a mistakenly identified party, he just added a new party.  *See* FRCP 15(c); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995) ("[T]he rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification."); *Wilson v. U.S. Government*, 23 F.3d 559, 563 (1st Cir. 1994) ("[A]mendment [of a complaint] with relation

3

back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued.  But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.") (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993)).  Adhering to the language of Rule 15, "[c]ourts in this Circuit do not apply Rule 15(c) to permit relation back where a plaintiff seeks to add an additional party as a defendant after the statute of limitations has expired." *Pierre v. Cty. Of Nassau*, 2022 WL 2872651, at *6 (E.D.N.Y. July 21, 2022); *see, e.g.*, *Jhagroo v. Brown*, 2020 WL 3472424, at *2 (S.D.N.Y. June 25, 2020)) ("Rule 15(c)(1)(C) 'applies only where an amendment changes the party or the naming of the party against whom a claim is asserted—not where, as here, Plaintiff seeks to add new parties."); *Fischer v. Forrest*, 2017 WL 128705, at *10–11 (S.D.N.Y. Jan. 13, 2017) ("[E]ven if [plaintiff] was unaware that [the newly added defendant] could be sued ... relation back still would be inappropriate because [plaintiff] never named an improper party to begin with."); *Pikos v. Liberty Maint., Inc.*, 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015) ("Courts in this circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants.").

In addition to the defect in adding, rather than substituting, a defendant, any claim by the Trustee under Rule 15(c) would fail because the Trustee cannot prove that "the party brought in by the amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FRCP 15(c)(ii). "Of course, an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at

that time." *Garvin v. City of Philadelphia*, 354 F.3d 215, 221-22 (3d Cir. 2003). That is the situation here. The Trustee plainly identified BTC prior to filing the original Complaint, so the Trustee's decision not to name BTC as a defendant was no mistake. More importantly, because the focus of the rule is on what the newly-added defendant knew, BTC could not have known that the Trustee made a mistake. *See* FRCP 15(c)(1)(C) ("the party brought in by the amendment . . . knew"); *Gleason v. McBride*, 869 F.2d 688, 694 (2d Cir. 1989). There is an avalanche of cases across the Circuits holding that a plaintiff's failure to sue a known potential defendant will preclude a subsequent amended complaint adding that defendant from relating back.[1]

Here, it is clear that the Trustee was aware of BTC as a potential defendant when he filed the original complaint because he identified BTC in the original complaint itself. The Trustee's original complaint even implicated BTC, alleging that Naidot was liable for "directing its investment with BLMIS through not just FGG, but also Bessemer Trust Company, N.A., located in New Jersey" and explaining "Defendant Naidot is an investment company with a principal point of contact at Bessemer Trust Company, N.A., 100 Woodbridge Center Drive, Woodbridge, New Jersey 07095." (Dkt. 1 ¶¶ 6, 21; *see also* Dkt. 100 (Amended Complaint) ¶ 54 ("Defendant BTC is a state-chartered bank and depository trust company in New Jersey. Its registered address is 100 Woodbridge Center Drive, Woodbridge, New Jersey 07095.").) Even the Trustee's amended complaint reflects that he knew—or would be expected by BTC to know—of BTC's existence well-before the original complaint was filed. (*See* Dkt. 100 ¶ 4 ("BTC first

---

[1] *See, e.g.*, *Palmer v. Stuart*, 274 F. App'x 58, 59 (2d Cir. 2008); *Barrow v. Weathefield Police Dep't.*, 74 F.3d 1366, 1367 (2d Cir. 1996); *Miller v. Mancuso*, 388 F. App'x 389, 391 (5th Cir. 2010); *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993); *Ramos-Santiago v. Ins. Co. of State of Pa.*, 379 F. App'x 596, 597 (9th Cir. 2010); *Bloom v. Alvarez*, 498 F. App'x 867, 873 (11th Cir. 2012); *Curkin v. City of N.Y.*, 2020 WL 5628042, at *9 (S.D.N.Y. Sept. 21, 2020) ("Plaintiffs' knowledge of the names of [subsequently added defendants] at the time they filed the original complaint defeats any claim of relation back under Rule 15(c)(1)(C).").

invested in Fairfield Sentry in or around 1992, registering its shares in the name of Naidot, a partnership whose members were Bessemer Trust executives, including officers of BTC. Naidot's purpose was to act as nominee for securities and other investments held by BTC."). The Amended Complaint alleges that "according to its state regulatory filings, [Naidot] has the 'limited purpose of having registered, in the name of the said partnership, stock, bonds, notes and other securities and property from time to time held by [BTC] in various fiduciary capacities.' BTC registered its Fairfield Sentry shares in Naidot's name" and "Naidot was formed for the purpose of acting as BTC's nominee in connection with investments held by BTC." (*Id.* ¶¶ 57, 59.). Thus, the Trustee's original complaint made clear that he was aware of BTC and the role that it played with respect to Naidot, and his amended complaint clarified that he gleaned much of this information from publicly available materials, including state regulatory filings. Consequently, BTC had no way of knowing that there was any sort of mistake in it not being sued. Rather, that decision appeared to have been a deliberate and tactical choice.

The fact that the Trustee identified BTC and explained BTC's relationship with Naidot with respect to the BLMIS investments in the original complaint, but chose not to name BTC as a defendant, dooms any hope the Trustee may have for this Amended Complaint to relate back. The Second Circuit found it "abundantly clear" that this requirement was not satisfied in a similar case where an exhibit to the plaintiff's complaint identified the persons at issue, but the complaint did not name them as defendants. *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994), *accord Barrow*, 66 F.at 469 ("In *Cornwell,* the plaintiff 'knew the identities' of the newly-added defendants at the time she filed her original complaint. We thus found that her failure to name them originally 'must be considered a matter of choice, not mistake,' and, we held, therefore, that the amended complaint did not relate back to the original.") (quoting

6

*Cornwell*, 23 F.3d at 705).  As the Second Circuit explained, the plaintiff "was not required to sue them," so newly added defendants could not know that the plaintiff's failure to add them as defendants earlier was a mistake.  *Cornwell*, 23 F.3d at 705.  When a plaintiff does identify someone it could sue by name in a complaint while declining to name that person as a defendant, courts routinely find that decision to be a choice – not a mistake – and relation back is barred by Rule 15(c).  *See, e.g.*, *Fetterman v. Westmoreland Cty. Children's Bureau*, 681 F. App'x 166, 169 (3d Cir. 2017) (rejecting relation back where "original complaint alleged substantially all of Supancic and Haywood's conduct, yet failed to include them as defendants"); *Celestine v. City of San Jose*, 1994 WL 9145, at *2 (9th Cir. Jan. 12, 1994) ("Because Celestine mentioned each of the individual defendants by name in his original complaint, it is clear that he was not mistaken about their identities.  His claims against them in the second amended complaint therefore do not relate back to the date of the original complaint."); *Turner v. Sufffolk Cty.*, 2022 WL 3357944, at *7 (E.D.N.Y. Aug. 15, 2022) (potential defendants identified in exhibits to complaint); *Reich v. City of N.Y.*, 2021 WL 6423983, at *6 n.7 (E.D.N.Y. Aug. 15, 2021) ("[T]he allegations in the Complaint identified former Governor Cuomo by name and described his alleged illegal conduct . . . yet failed to name him as a defendant.  Accordingly, Plaintiff's failure to name him as a defendant was a choice, not a mistake."); *Houghtaling v. Eaton*, 2018 WL 522342, at *5 (E.D.N.Y. Jan. 22, 2018) (rejecting relation back because "Plaintiff was aware of C.O. Zmuda's identity, because Plaintiff had referred to C.O. Zmuda within the original complaint"); *Fogel v. Wal-Mart de Mexico*, 2017 WL 751115, at *11 (S.D.N.Y. Feb. 27, 2017) (rejecting amendment to add named defendant's CEO and parent company because the identities of both were referenced in the original complaint).

7

Importantly, even if the Trustee had made a mistake in not naming BTC as a defendant in the original complaint, the Trustee cannot show that BTC had any reason to know that the Trustee had made a mistake.  Given that the Trustee is a "sophisticated party who has commenced hundreds of adversary proceedings in this case," this Court has rejected claims that defendants named in a subsequent complaint would know that their omission from the original complaint was a mistake (even where those defendants knew they were beneficiaries of the transactions challenged in the initial complaint).  *In re BLMIS*, 468 B.R. 620, 624, 629 (Bankr. S.D.N.Y. 2012) (Lifland, J.) (finding Trustee's avoidance claims against Madoff family spouses do not relate back to original complaint and are time-barred).  Moreover, the fact that the Trustee waited a decade to add BTC as a defendant would have reassured BTC that no mistake had been made.  *See, e.g.*, *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857 (9th Cir. 1986); *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1198 (3d Cri. 1994) (Becker, J., concurring); *Gill v. Bd. of the Nat'l Credit Union Admin.*, 2018 WL 5045755, at *16 (E.D.N.Y. Oct. 16, 2018) ("The determination to omit these parties for over seven years cannot be viewed as a mistake, excusing the passage of the statute of limitations."); *see also Clark v. Hawkins*, 1994 WL 685037, at *2 n.7 (5th Cir. 1994) (Rule 15(c) "is not intended to assist anyone who fails to add promptly after being notified of a potential defendant.").  That delay also is inherently prejudicial to BTC, as the availability of evidence and recollection of witnesses fades substantially over a decade, which is an independent reason why the relation back doctrine does not apply.  *See* FRCP 15(c)(1)(C)(i) (requiring plaintiff to prove lack of prejudice to newly added defendant).

## II.    THE TRUSTEE'S CLAIMS AGAINST NAIDOT AND BTC ARE BARRED BY THE MERE CONDUIT DEFENSE OR THE SECTION 546(e) SAFE HARBOR

The Trustee's claims against Naidot and BTC are barred because they acted as mere conduits and, as such, cannot be considered a transferee, *In re Finley*, 130 F.3d 52, 57 (2d Cir.

8

1997), or the Trustee's claim is barred by Section 546(e)'s safe harbor. Section 546(e) has been litigated extensively in the Madoff litigation, and the Second Circuit has affirmed the dismissal of the Trustee's claims on this basis in some cases. *In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Fishman*"), *accord In re BLMIS*, 976 F.3d 184, 193 (2d Cir. 2020). This Court recently explained: "Section 546(e) is referred to as the safe harbor because it protects a transfer that is a 'settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant,' or that is 'made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract.'" *SIPC v. BLMIS (Banque SYZ)*, 2022 WL 2135019, at *8 (Bankr. S.D.N.Y. June 14, 2022) (citing 11 U.S.C. § 546(e)). The Second Circuit has emphasized that "Section 546(e) is a very broadly worded safe-harbor provision." *Fishman*, 773 F.3d at 416. There is no doubt that if Naidot and BTC are subject to Section 550 as transferees, which they contest, then the redemption payments made for the benefit of Naidot's and BTC's customers fall within this safe harbor.

## A.   Naidot And BTC Are "Mere Conduits" And Not Transferees Subject To Section 550

The Trustee invokes Section 550(a) of the Bankruptcy Code in his effort to recover transfers of BLMIS property to Naidot and BTC, but Section 550(a) is inapplicable because it applies only to a "transferee" and Naidot and BTC were mere conduits, not transferees. 11 U.S.C. § 550(a). The law is clear: "Distinct from a transferee is a 'mere conduit,' which is an entity that holds the property but lacks the ability to use the property as it sees fit. The conduit theory avoids the harsh practical and financial consequences that would befall financial intermediaries if 'anyone who touches the money,' including possessors, holders, and agents, were treated as transferees for § 550(a) purposes." *In re Nat'l Consum. Mortgage LLC*, 2013 WL 6844494, at *2 (D. Nev. Dec. 20, 2013).

9

The Second Circuit has made clear that a mere recipient of money or other assets is not a transferee. *In re Finley*, 130 F.3d at 57.  Rather, the Second Circuit has adopted what has become known as the "dominion and control test"—*i.e.*, a transferee must exercise "dominion over the money or other asset," meaning "the right to put the money to [its] own purposes." *Keller Family Trust*, 634 B.R. at 49–50 (citing *In re Finley*, 130 F.3d at 57).  Thus, Section 550(a) is limited in scope and does not reach "every courier, every bank and every escrow agent" that may have touched the assets at issue. *In re Finley*, 130 F.3d at 56.  This test applies equally to subsequent transferees (which is how the Trustee describes Naidot and BTC) as it does to initial transferees. *SIPC. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (Brozman, J.) (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "to qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives" (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988))).

Under the dominion and control test, "mere conduits" of money are not transferees because a "'mere conduit' . . . has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else.  Mere conduits can do no more than transmit a transferor-debtor's funds to a transferee." *Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Group, Inc.)*, 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006); *see also Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) ("In other words, just because a party is not a 'mere conduit' in the prototypical sense of the term—*i.e.*, a party that receives the money merely to pass it on to a third-party—does not mean that the party has requisite 'dominion and control' over the funds.") (citing *Bonded*, 838 F.2d at 891)); *see also* COLLIER ON BANKRUPTCY ¶

10

550.02[4][a] (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee[.]'").

In the context of a bank or broker, to establish that someone was a "transferee" courts require a showing of (1) receipt of transferred funds; (2) the legal right to control those transferred funds (*i.e.*, legal control); *and* (3) the right to use those transferred funds for its own purpose (*i.e.*, actual control). *See In re Manhattan Inv. Fund*, 397 B.R. at 15. Thus, a financial institution that only nominally holds the assets of a client will not be considered a transferee under the statute. *See, e.g.*, *Bonded*, 838 F.2d at 893 (holding bank was not an initial transferee because it was contractually obligated to follow the customer's instructions to deposit funds and "held [the customer's] check only for the purpose of fulfilling an instruction to make the funds available to someone else"). Even where a bank "use[s] the deposits until the depositor withdraws them," courts have found a lack of dominion and control. *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 726 (6th Cir. 2017) (citation omitted); *see also Menotte v. United States (In re Custom Contractors, LLC)*, 745 F.3d 1342, 1350 n.6 (11th Cir. 2014) ("[A] party who has nearly unlimited ability to use funds does not, for the purposes of our mere conduit or control test, 'control' those funds when there exists an obligation to provide those funds to a third party."); *Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42, 43 (10th Cir. 1994) (holding bank was not an initial transferee where transferor "exercised complete discretion regarding deposits to and disbursements from the account, and he was entitled to possession of all account funds upon demand"); *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir. 1996) (holding bank "must (1) actually receive the funds, and (2) have full dominion and control over them for [the bank's] own account, as opposed to receiving them in trust or as agent for

11

someone else." (citation omitted)); *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1200 (11th Cir. 1988).

The Amended Complaint itself makes clear that Naidot and BTC are mere conduits, rather than transferees[2]. The Trustee alleges that "BTC is a highly sophisticated private bank . . . which provides investment management and other financial services to high net-worth individuals using a combination of internal and external money managers." (Dkt. 100 ¶ 3.) The Trustee also alleges: "Bessemer Trust describes itself as a sophisticated multifamily office that provides 'best-in-class expertise across investment management, wealth planning, and family office services,' with an investment approach that is 'flexible and highly disciplined.' By the end of 2008, Bessemer Trust had amassed '1,995 clients who h[ad] placed $51.6 billion under [its] supervision. . . .'" (*Id.* ¶ 55.) In other words, the Amended Complaint acknowledges that that the investments made through BTC were on behalf of its clients.

With respect to Sentry, the Trustee alleges: "BTC first invested in Fairfield Sentry in or around 1992, registering its shares in the name of Naidot, a partnership whose members were Bessemer Trust executives, including officers of BTC. Naidot's purpose was to act as nominee for securities and other investments held by BTC." (*Id.* ¶ 4.) The Trustee then alleges: "Defendant Naidot . . . , according to its state regulatory filings, has the 'limited purpose of having registered, in the name of the said partnership, stock, bonds, notes and other securities and property from time to time *held by [BTC] in various fiduciary capacities*.' BTC registered

---

[2] The Amended Complaint's assertion that "Defendants are immediate or mediate transferees of the Fairfield Subsequent Transfers," (Dkt. 100 ¶ 79), is purely conclusory and cannot defeat a motion to dismiss. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678–79 (2009) (holding that conclusory assertions that are unsupported by factual allegations are inadequately plead); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007) (holding that factual allegations in a complaint must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action").

its Fairfield Sentry shares in Naidot's name." (*Id.* ¶57 (emphasis added).)  Thus, the Trustee has unambiguously alleged that it was BTC's customers who invested in Sentry, BTC held the investment "in various fiduciary capacities" for its customers, and Naidot was a mere nominee holding the investment.  In other words, the Trustee nowhere alleges that Naidot or BTC had dominion and control over the investment.

Factually, this case is similar to *In re Kaiser Steel Corporation*, 110 B.R. 514 (D. Colo. 2009), *aff'd* 913 F.2d 846 (10th Cir. 1990).  In that case, the Trustee sought to recover stock redemption payments from a broker which were held in a nominee account on behalf of the broker's customers, but the court rejected the broker's liability as it was a mere conduit.  *Id.* at 521; *accord In re AES Thames, LLC*, 2016 WL 11595116, at *4 n.26 (D. Del. Oct. 28, 2016) (describing *In re Kaiser* as "holding stock broker a conduit for stock redemption payments it received on behalf of its customers").  Those are essentially the same facts here.[3]

Additionally, the Trustee's allegations are illogical in that it brings the same claim against both Naidot and BTC.  The Trustee acknowledges that Naidot and BTC are separate entities, but treats them the same in Exhibit C, which supposedly reflects that Sentry transferred the exact same funds to both Defendants at the same time on four separate days.  These transfers were allegedly the "redemption of equity interest by Defendants in Fairfield Sentry."  (Dkt. 100 ¶ 75.) Whatever equity interest Defendants' held in Sentry, it could only be sent to one Defendant at a time – the identical equity interest could not be sent to two different entities at once.  Here, the

---

[3] In these sorts of cases, even where some fee is provided to the bank or broker, that does not defeat the claim that they were a mere conduit for the transaction with respect to proceeds that are conveyed to the customer.  Rather, the Trustee's claim would be limited to whatever fee from that transaction that was retained by the bank or broker because those would be the only funds that the bank or broker had dominion over.  *See e.g., In re Rocco*, 2014 WL 7404566, at *10 n.2 (D.N.J. Dec. 29, 2014) ("[T]he majority rule is that where a mere conduit retains possession of the funds, he will be liable up to the amount which he retains.") (quoting *Tese–Milner v. Moon (In re Moon),* 385 B.R. 541, 553 (Bankr. S.D.N.Y. 2008)).

Amended Complaint alleges that Naidot was acting as nominee for investments that BTC had placed on behalf of its client, so there is no reason for Sentry to have sent funds directly to BTC.

The Trustee uses a similar sleight of hand in grouping Defendants in claiming that they would know that investments in Sentry would in turn be invested in BLMIS because each investor was required to sign a subscription agreement disclosing this information when investing in Sentry. (Dkt. 100 ¶ 63.) But the Trustee does not allege that both Naidot and BTC were required to or did sign these agreements, and there would be no need for BTC to do so with the investment being made in Naidot's name.

Because alleging that a defendant is a "transferee" is an essential element of a claim to recover under Section 550(a), courts grant motions to dismiss where the allegations establish that a defendant was a mere conduit. *See Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016); *Stratton Oakmont, Inc.*, 234 B.R. at 312–15 (granting motion to dismiss in part because,"[a]s the Complaint stands, [defendant] was a mere conduit"); *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 102–04 (Bankr. Del. 2010) (Gross, J.) (finding that there were insufficient facts plead to show that the movant was a "transferee" for the purposes of an avoidance action); *Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) (finding "that [plaintiff] has not stated a claim for fraudulent transfer against [defendant] because at best, [defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have controlled the funds at issue"). Here, the Amended Complaint fails to plausibly allege that

14

Naidot or BTC had dominion and control over any alleged subsequent transfers and, therefore, it fails to plausibly plead an essential element of the Trustee's claim.

### B. The Amended Complaint Itself Establishes A Good Faith Defense For Both Naidot and BTC

The Trustee cannot recover funds received in good faith and for value under Section 550(b) of the Bankruptcy Code, but that is exactly what the Amended Complaint seeks here. 11 U.S.C. § 550(b). In particular, the Amended Complaint contends that the alleged transfers were redemption payments to Fairfield Sentry investors who subscribed (*i.e.*, gave value) to those funds pursuant to subscription agreements. That exchange of money for equity is an exchange for value. *See Picard v. ABN Amro N.A. (In re BLMIS)*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) (Bernstein, J.) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

Although this Court deferred ruling on a good faith defense in a recent case because that complaint specifically alleged that the defendant should have been aware of the BLMIS fraud, there is no such allegation here. *See Banque SYZ*, 2022 WL 2135019, at *11 ("Rather than demonstrate Banque Syz's good faith on its face, the Complaint suggests that Banque Syz had access to information about BLMIS's fraud and failed to concern itself with such things. (Compl. ¶ 42) ('Banque Syz' expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS.').") By contrast, the Amended Complaint makes no allegations that Naidot or BTC should have been aware of the fraud. To the contrary, the Amended Complaint references the BLMIS scheme as a "fraud" fifteen times and goes into great detail about how the discovery of the fraud was obstructed, including the use of

false accountants and misstatements on BLMIS' public reports, emphasizing that much of this false information was "publicly available." (Dkt. 100 ¶¶ 28, 31.) More specifically, the Amended Complaint repeatedly claims that this fraud was perpetrated against investors in BLMIS. (*Id.* ¶ 31 ("Investors were told they would gain profits"); 35 ("Madoff began telling BLMIS customers that he employed the SSC Strategy for their accounts, even though in reality BLMIS never traded any securities for its BLMIS customers"); 36 ("BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers"); 45 ("Madoff also lied to customers when he told them that he carefully timed securities purchases and sales to maximize value"); 64 (explaining how funds would be invested in subscription agreements).) Having pled that BLMIS sought to defraud investors, and succeeded in even fooling regulators, the Trustee has acknowledged that Naidot and BTC were unaware of the fraud. Indeed, they surely would have warned their customers about making the investment had they known of the fraud. *See, e.g., In re BLMIS*, 548 B.R. 13, 32 (Bankr. S.D.N.Y. 2016) ("While greed may cloud judgment, it is not plausible that the average financial professional owing fiduciary duties to its own clients and investors would knowingly invest their money in a Ponzi scheme that is doomed to collapse."); *In re BLMIS*, 594 B.R. at 204 (finding it "implausible" that defendants would invest "if they subjectively believed that there was a high probability that BLMIS was not actually trading securities"); *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 480 B.R. 480, 489 (S.D.N.Y. 2012) (dismissing claim that banks would knowingly invest in a debtor they knew was "shuffling money around to meet short term obligations"), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).[4]

---

[4] Additionally, the fact that the SEC conducted five examinations and investigations based on three substantive complaints and yet did not uncover Madoff's Ponzi scheme is beyond dispute and readily confirmable by reference to the SEC's Office of Inspector General's Report Number

### C. Section 546(e)'s Safe Harbor Insulates Naidot and BTC From Liability

#### 1. The Trustee Has Misframed The Transaction It Seeks To Avoid

Alleged transfers made beyond the two-year period prior to the filing of the liquidation of BLMIS on December 11, 2008 are protected by the safe harbor under Section 546(e) of the Bankruptcy Code. *See* 11 U.S.C. § 546(e). That safe harbor is available if the transfer to be avoided was (1) made "in connection with a securities contract" and/or constituted "settlement payments" within the meaning of Section 546(e); (2) was made by, to, and/or for the benefit of qualifying entities, including a stockbroker and financial institutions; and (3) the transferee had no actual knowledge of Madoff's fraud.

This Court has repeatedly rejected the Section 546(e) pleas in the past because "the safe harbor is a defense to the avoidance of the *initial* transfer." *Banque SYZ*, 2022 WL 2135019, at *8 (quoting *In re BLMIS*, 594 B.R. at 197 (emphasis in *Banque SYZ*)). The Trustee has treated Sentry as the initial transferee from BLMIS (Dkt. 100 ¶ 66) and this Court has explained both that if "the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS'] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor," and that Sentry could not invalidate the BLMIS transfers to it because Sentry is alleged to have known of the fraud. *Banque SYZ*, 2022 WL 2135019, at *8-9 (quoting *BLMIS*, 2021 WL 3477479, at *4) (alterations in 2022 opinion).

Nevertheless, the Supreme Court's decision in *Merit Management Group LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018), demonstrates that, in its initial complaint, the Trustee

---

OIG-509, entitled Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme, made available through the SEC, http://www.sec.gov/news/studies/2009/oig-509.pdf. *See B.T. Produce Co. v. Robert A. Johnson Sales, Inc.*, 354 F. Supp. 2d 284, 285 n.2 (S.D.N.Y. 2004) (Marrero, J.) ("Courts have frequently taken judicial notice of official government reports as being 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned[.]'" (quoting FRE 201(b)).).

misidentified the "initial transferee" for purposes of Section 550(a)(1) and that it did so again in the Amended Complaint. In *Merit*, the Supreme Court ultimately "determine[d] how the safe harbor operates in the context of a transfer that was executed via one or more transactions, *e.g.,* a transfer from A → D that was executed via B and C as intermediaries, such that the component parts of the transfer include A → B → C → D." 138 S. Ct. at 888. The Supreme Court held that "the relevant transfer for purposes of the § 546(e) safe-harbor inquiry is the overarching transfer that the trustee seeks to avoid," and "not any component part of that transfer." *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 206 (S.D.N.Y. 2020) (quoting *Merit*, 138 S. Ct. at 893).[5] As the Second Circuit explained, "the term 'initial transferee' references something more particular than the initial recipient" and it accordingly has "held that 'mere conduits' of fraudulent transfers are not 'initial transferees.'" *In re Bicom NY, LLC*, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (quoting *In re Finley,* 130 F.3d at 52).

When this case is viewed through the lens of *Merit*, the overarching transfer is between BLMIS in returning money to its ultimate investors, BTC's customers. As this Court recently noted, the Trustee's position is that these "Fairfield Funds were created as conduits" for investing in BLMIS. *SIPC v. BLMIS*, 2021 WL 3477479, at *7 (Bankr. S.D.N.Y. Aug. 6, 2021). We explained above why Naidot and BTC would be mere conduits as well, which would exempt Naidot and BTC from having to defend this case, and would allow BTC's customers—the actual investors in BLMIS—to assert a Section 546(e) defense.

---

[5] Whether Section 546(e) applies to a transaction may very well depend upon how a transaction is defined. In *Merit*, the defendant pointed to intermediate bank-to-bank transfers that would fall within Section 546(e) in isolation, but the Court viewed the transaction from end-to-end and Section 546(e) did not apply because the recipient was not "a 'financial institution' or other covered entity." 138 S. Ct. at 897.

But even if Naidot or BTC were viewed as the transferee here, they would be the initial transferee because Sentry was just a conduit.[6]  Framed in that manner, the other elements of Section 546(e) are clearly present.  The Second Circuit already has found that "BLMIS was a 'stockbroker' for the purposes of § 546(e)," and that transactions from BLMIS to its customers were in connection with securities contracts, and that "the transfers constituted 'settlement payments,' which provides another basis to shield the transfers from avoidance under § 546(e)." *Fishman*, 773 F.3d at 417, 422.  More specifically, Judge Rakoff "has held that section 564(e) bars the Trustee's claims . . . except where a transferee had actual knowledge of Madoff Securities' fraud," such that "in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims."  *SIPC v. BLMIS*, 505 B.R. 135, 142 (S.D.N.Y. 2013); *see also BLMIS*, 2021 WL 3477479, at *6 (granting FGG employee Corina Noel Piedrahita Section 546(e) safe harbor in her personal capacity due to lack of personal knowledge).

Additionally, the Amended Complaint alleges that BTC is a "sophisticated private bank" that "provides investment management and other financial services" (Dkt. 100 ¶3), so it is covered under Section 546(e) as a "financial institution," 11 U.S.C. § 101(22)(A) ("financial institution" includes a "commercial or savings bank").  The Amended Complaint also alleges that "Naidot's purpose was to act as nominee for securities and other investments held by BTC," so that relationship is related to a securities contract with a financial institution as well.  As discussed above, the Amended Complaint establishes the good faith of Naidot and BTC.

---

[6] Even more recently, at the June 15, 2022 hearing, counsel for the Trustee told the Court that "BLMIS was Sentry's de facto investment manager [and] BLMIS made the investment decisions for Sentry and that Sentry had no control over those decisions."  *In re BLMIS* (Banque Lombard Odier), No. 12-01693, Tr. at 104 (Bankr. S.D.N.Y. June 15, 2022) (statement of Mr. Calvani). He also said there is not "much daylight between Sentry and BLMIS.  Sentry was not an independent and legitimate fund.  It was just Madoff's marketing arm.  It was wholly dependent upon Madoff and its sole purpose was to feed investors in Madoff."  *Id.* at 106.  That is a plain acknowledgment that Sentry was just a mere conduit.

This "safe harbor [is] intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors," so the focus must be on the transferee's intent. *SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). Given BLMIS' pervasive fraud, Judge Rakoff found that BLMIS' customers, "having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protection offered by § 546(e)." *Id.* at *2 (internal citations omitted). The Second Circuit agreed. *Fishman*, 773 F.3d at 420, 423.

This conclusion is supported by the Second Circuit's observation that "Section 546(e) is a very broadly worded safe-harbor provision." *Id.* at 416. The Second Circuit has highlighted the importance of allowing defendants, such as Naidot and BTC, which were unaware of the fraud, to seek refuge in Section 546(e)'s safe harbor:

> The magnitude of BLMIS's scheme, which included thousands of customers and billions of dollars under management, is unprecedented. Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very "displacement" that Congress hoped to minimize in enacting § 546(e). The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).

*Fishman*, 773 F.3d at 420.

## 2. The Court Should Find That Section 546(e) Applies To Subsequent Transfers As Well As Initial Transfers

Although this Court has limited the applicability of Section 546(e) to the initial transferee, Naidot and BTC ask this Court to reconsider that ruling if the Court concludes that they are subsequent transferees. A legitimate investor's defense under Section 546(e) cannot be defeated simply because Mr. Madoff had the funds delivered by an equally crooked henchman.

20

Otherwise, the protection of Section 546(e)'s safe harbor would not turn on "the reasonable expectations of legitimate investors," but the fortuity of whether the intermediaries chosen by BLMIS to deliver the funds were innocent or crooked.

Judge Rakoff made clear that a subsequent transferee can challenge the initial transfer under Section 546(e), *Cohmad*, 2013 WL 1609154, at *4, but the case law is muddled when such challenges are viewed in practice. Again, Naidot and BTC are mindful that this Court has held that a subsequent transferee can use Section 546(e) to challenge the initial transfer, but not to challenge the subsequent transfer received by that defendant. *Banque SYZ*, 2022 WL 2135019, at *9; *SIPC v. BLMIS*, 2022 WL 2137073, at *10 (Bankr. S.D.N.Y. June 13, 2022). Nevertheless, those decisions require a subsequent defendant to prove the innocent knowledge of a third-party, the initial transferee, rather than their own innocent knowledge with respect to that initial transfer. Respectfully, Naidot and BTC believe those conclusions are inconsistent with Judge Rakoff's prior opinion and the statutory language. Defendants ask this Court to reconsider its opinion and, alternatively, they write to preserve this argument for appeal.

The controlling factor in Judge Rakoff's opinions is the innocence of the defendant transferee, regardless of whether that defendant is the initial or a subsequent transferee. He explains that Section 546(e)'s safe harbor exists for the "protection of the securities markets and of the reasonable expectations of legitimate participants in these markets." *Cohmad*, 2013 WL 1609154, at *4. Where an initial transferee invokes Section 546(e), allowing the initial transferee to point to their own innocence in receiving those funds makes sense and is entirely consistent with the purpose of protecting "the reasonable expectations of legitimate participants." If the defense fails due to the initial transferee's knowing participation in the wrongdoing, fault clearly lies in the hands of the initial transferee.

21

But that is not true of the way this Court has applied Section 546(e) when invoked by a subsequent transferee. The subsequent transferee should be afforded standing to assert their own innocent knowledge with respect to the initial and subsequent transfers. That would restore parity among all transferees under Section 546(e) and ensure that "the reasonable expectations of legitimate participants" are protected. Placing the burden on a subsequent transferee to prove the innocent knowledge of a third-party, the initial transferee, puts the subsequent transferee in an impossible position of mind reader and one where its own innocent knowledge will not provide it with a safe harbor despite being an innocent "legitimate participant."

That does not appear to be what Judge Rakoff intended. Instead, when the subsequent transferee was the defendant, Judge Rakoff focused on the subsequent transferee's intent. Even when the initial transferee had innocent intent and would be protected by Section 546(e)'s safe harbor, a subsequent transferee who knew of the fraud would not benefit. Quoting Judge Rakoff and then explaining his reasoning, this Court explained:

> 'There is one caveat to this rule: to the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor.' This is because a defendant is not permitted to launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of § 546(e).

*BLMIS*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7). That, of course, makes sense, as it ties the availability of Section 546(e)'s safe harbor to the subsequent transferee's own knowledge.

It also demonstrates that Judge Rakoff's focus was on the intent of each defendant personally, rather than just the formalism of looking at the transaction between BLMIS and the initial transferee. If the initial transferee was an "innocent customer," the initial transfer would not be avoidable as to the initial transferee, but it would be when challenged by a subsequent

transferee who knew better.  Thus, where guilty knowledge exists on the part of a transferee, whether initial or subsequent, the loss of the safe harbor makes sense as to that defendant.  It makes no sense that an innocent initial transferee can still benefit from the safe harbor, while an equally innocent subsequent transferee cannot.  If anything, such a rule is a particularly perverse form of guilt by association that does not apply to someone who deals directly with the guilty party, but applies only to those with a more distant connection.  That cannot be what either Congress or Judge Rakoff intended.

The statutory language confirms this view.  There is no explicit "actual knowledge" exception in Section 546(e), but Judge Rakoff did not just invent that limitation.  Rather, it is somewhat of a compromise with the position taken by the Trustee in the prior proceeding.  Section 546(e) requires the transaction to be "in connection with a securities contract," and the Trustee argued that there was no genuine "securities contract" with BLMIS because it did not actually purchase securities.  Judge Rakoff and the Second Circuit rejected that argument to the extent that defendants *believed* BLMIS' promises that it would purchase securities.  But that rationale does not hold where a defendant is aware of BLMIS' fraud, there is no genuine securities contract and, therefore, there are no legitimate investor expectations to protect.

Moreover, there is no disagreement that both the initial transferee and subsequent transferee have standing to invoke Section 546(e) with respect to the initial transfer.  The issue when Section 546(e) is invoked by a subsequent transferee is whether the subsequent transferee believed there was a valid securities contract with respect to the initial transfer.  Nothing in the statutory language says that a subsequent transferee must prove what the initial transferee did or did not know, and there is no reason that the subsequent and initial transferee must have believed the same thing.  Again, parity and good policy are restored to Section 546(e) by holding that a

23

transferee—initial or subsequent—can invoke the safe harbor if they are innocent, but not if they had actual knowledge of the BLMIS fraud.

### 3. Naidot and BTC Have An Alternative Basis For Invoking Section 546(e)'s Safe Harbor

Judge Rakoff also blessed an alternative basis for invoking Section 546(e)'s safe harbor in *Cohmad* where "the transfers to these defendants were made in conjunction with agreements that independently satisfy Section 546(e)'s requirements." 2013 WL 1609154, at *8. Section 546(e) requires that a transfer be "in connection with a securities contract" and a transfer may be in connection with more than one securities contract. 11 U.S.C. § 546(e).[7] That is the case here.

Unlike BLMIS's direct customers and many others, Naidot can invoke Section 546(e) on an alternative basis: its subscription agreements with Sentry. Likewise, BTC can rely upon that subscription agreement as well because it is "for the benefit" of BTC, which is a "financial institution." 11 U.S.C. § 546(e). Judge Rakoff recognized that "a securities contract includes . . . the Madoff Securities account agreements," but he went on to explain that "the definition of a securities contract is in fact much broader and includes, *inter alia,* investment fund subscription agreements." *Cohmad*, 2013 WL 1609154, at *8. Judge Rakoff evaluated the statutory language and concluded that "Section 546(e)'s reach does not depend on the involvement of the debtor in the securities contract at issue." *Id.* at *9. As the Trustee recognizes in the Complaint, "[e]ach

---

[7] As Judge Rakoff explained in rejecting the Trustee's argument that defendants cannot invoke Section 546(e) because BLMIS did not really trade in securities: "Those clients, the defendants here, having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protection offered by § 546(e)." *SIPC v. BLMIS*, 476 B.R. 715, 720 (S.D.N.Y. 2012). The controlling factor is "that the defendants invested with Madoff Securities in the expectation that Madoff Securities would perform under the account agreements by purchasing specific securities." *Id*. Again, that rationale holds no force where a defendant is aware of the fraud and that BLMIS was not investing in securities.

time an investor invested with Fairfield Sentry it signed a subscription agreement" with Fairfield

Sentry, which makes this alternative argument applicable. (Dkt. 1 ¶7.)

Judge Rakoff also found that "where the Trustee alleges that a defendant is 'a banking

institution,' 'a national bank,' or 'a nationally chartered bank,' . . . the defendant may be deemed

to constitute a protected 'financial institution' or 'financial participant' for the purposes of

Section 546(e) on the face of the complaint." *Cohmad*, 2013 WL 1609154, at \*8. And here, the

Trustee's Complaint recognizes that BTC is a financial institution, and Naidot was BTC's

nominee in holding the securities of BTC's customers in its name. (Dkt. 100 ¶¶ 3, 4.)

> Accordingly, Naidot and BTC satisfy the hypothetical Judge Rakoff offered in *Cohmad.*
>
> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was 'made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract.'

*Cohmad*, 2013 WL 1609154, at \*9; *see also id.* at \*10 ("[T]o the extent that a defendant claims

protection under Section 546(e) under a separate securities contract as a financial participant or

financial institution, the Bankruptcy Court must adjudicate those claims in the first instance

consistent with this Opinion.")    Accordingly, Naidot's subscription agreement with Sentry

provides an alternative basis for Defendants to invoke Section 546(e), and the Trustee's six-year

claims should be dismissed.

## CONCLUSION

For the reasons above, the Court should dismiss the Amended Complaint against Naidot

and BTC in its entirety.[8]

Date: October 20, 2022

<u>/s/ Heather Lamberg</u>
Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

---

[8] Naidot and BTC also dispute whether the Trustee can prove his claim that all the funds that he seeks can be traced to BLMIS, but that issue becomes moot if the Court dismisses the Amended Complaint. If not, Naidot and BTC will raise this issue in seeking summary judgment.