**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01577 (CGM) |
| Plaintiff, | |
| v. | |
| UBS EUROPE SE, formerly known as UBS Deutschland AG, as successor in interest to Dresdner Bank Lateinamerika AG, and LGT BANK (SWITZERLAND) LTD. as successor in interest to Dresdner Bank (Schweiz) AG, | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LGT BANK (SWITZERLAND) LTD'S MOTION TO DISMISS** |
| Defendants. | |

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ............................................................. 1

II.    FACTUAL BACKGROUND ............................................................... 3

    A.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS ............................. 3

    B.    FAIRFIELD SENTRY ............................................................... 4

    C.    DEFENDANT AND ITS INVESTMENT IN SENTRY ................................. 5

ARGUMENT ................................................................................ 5

III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..................... 5

    A.    DRESDNER SCHWEIZ PURPOSEFULLY AVAILED ITSELF OF THE LAWS AND PRIVILEGES OF CONDUCTING BUSINESS IN NEW YORK BY INVESTING IN SENTRY ............................................... 8

        1.    Defendant's Investments with New York-Based BLMIS Through Sentry Establish Minimum Contacts ........................... 9

        2.    This Court Has Jurisdiction Over Defendant Under *BLI* ......... 10

        3.    Dresdner Schweiz' Direct Contacts with New York Give Rise to Personal Jurisdiction ........................................ 11

            a.    Dresdner Schweiz's Employees Regularly Corresponded with FGG's New York Office Regarding its Account with Sentry, Giving Rise to Personal Jurisdiction ................ 11

            b.    Dresdner Schweiz Instructed Sentry to Subscribe and Redeem to New York Correspondent Accounts ................ 12

            c.    Dresdner Schweiz's Subscription Agreements Support Specific Personal Jurisdiction ................................ 14

            d.    Customer claims Filed by Defendant in the BLMIS Liquidation are Another Jurisdictional Contact ............ 16

        4.    The Exercise of Personal Jurisdiction Over Defendant Is Reasonable ............................................................ 17

    B.    IN THE ALTERNATIVE, THE TRUSTEE IS ENTITLED TO JURISDICTIONAL DISCOVERY AND, IF NEEDED, THE OPPORTUNITY TO AMEND THE COMPLAINT ............................ 19

IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS ............................................................... 19

    A.    ALL ADVERSARY PROCEEDINGS ARE PART OF THE MAIN CASE FOR PURPOSES OF RULE 10(C) ............................................ 20

B.    INCORPORATION IS PERMITTED WHERE IT ACHIEVES THE PURPOSE OF RULE 10(C) ................................................................. 21

C.    THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 8................................................................................................................ 21

V.    SECTION 546(E) SAFE HARBOR ................................................................ 22

A.    THE TRUSTEE SUFFICIENTLY ALLEGED SENTRY HAD ACTUAL KNOWLEDGE OF MADOFF'S FRAUD ............................................. 23

B.    SECTION 546(E) DOES NOT APPLY INDEPENDENTLY TO RECOVERY ACTIONS ..................................................................... 24

C.    WHETHER DEFENDANT CAN AVAIL ITSELF OF A SECTION 546(E) SAFE HARBOR BASED ON SEPARATE AGREMENTS WITH SENTRY IS A FACT-INTENSIVE INQUIRY AND NOT APPROPRIATE AT THE MOTION TO DISMISS STAGE.............................. 25

VI.    LGT SWISS'S ASSERTION OF A MERE CONDUIT DEFENSE IS IMPROPER AT THIS STAGE ....................................................................... 25

A.    THE PLEADINGS ESTABLISH DEFENDANT IS A TRANSFEREE ............. 26

B.    MERE CONDUIT IS AN AFFIRMATIVE DEFENSE AND DEFENDANT'S BURDEN TO PLEAD ............................................. 27

C.    MERE CONDUIT DEFENSE IS INAPPROPRIATE ON MOTION TO DISMISS ................................................................................ 28

D.    EVEN IF ANALYSIS OF THE MERE CONDUIT DEFENSE IS APPROPRIATE, DEFENDANT'S MOTION FAILS TO ALLEGE ANY FACTS IN SUPPORT OF THE DEFENSE ........................................ 29

VII.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE IS SIMILARLY IMPROPER FOR A MOTION TO DISMISS ........................................... 31

VIII.    CONCLUSION ............................................................................... 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016)..............................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009)......................................................................................................6

*Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc.* (*In re The Warnaco*
    *Group, Inc.*),
    Nos. 01 B 41643 (RLB), 01-03628 (RLB), 03 Civ. 4201 (DAB), 2006 WL
    278152 (S.D.N.Y. Feb. 2, 2006).................................................................................28

*Banca Carige*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr.
    S.D.N.Y. June 30, 2022)..............................................................................................18

*Banque Cantonale*, 2022 WL 2761044 ...................................................................20, 22

*Barclays*, 2022 WL 2799924 ...................................................................................20, 22

*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*),
    397 B.R. 1 (S.D.N.Y. 2007).....................................................................................28, 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................6

*Bernard L. Madoff Inv. Secs. LLC* (*In re Consolidated Proceedings on 11 U.S.C.*
    *546(e)*), No. MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..............2

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) .....................................................................................28

*Bordier*, 2022 WL 2390556...................................................................................20, 22

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................. *passim*

*Cargo Partner AG v. Albatrons, Inc.*,
    352 F.3d 41 (2d Cir. 2003)............................................................................................5

*Chase Manhattan Bank v. Banque Générale du Commerce*,
    No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ...................16

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)......................................................................6, 18

*In re CVEO Corp.*,
    327 B.R. 210 (Bankr. D. Del. 2005) ...................................................................28

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).......................................................................................6

*In re Enron*,
    361 B.R. ..........................................................................................................................29

*Esso Expl. & Prod. Nigeria Ltd v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019)...................................................................9

*Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 ........................4, 23, 33

*In re Finley*,
    130 F.3d 52 (2d Cir. 1997)......................................................................28, 29, 30

*First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, ECF No. 100...........7, 18, 31, 32

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021)...........................................................................................7, 16

*In re Glob. Crossing, Ltd.*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008) .................................................................28

*Haber v. United States*,
    823 F.3d 746 .............................................................................................................19

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................................6, 7

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) .........................................................................27

*In Re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................5

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)................................................................................32

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) ...........................................................................................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)...............................................................12, 13, 16

*Licci v. Lebanese Canadian Bank, SAL*,
    984 N.E.2d 893 (N.Y. 2012) ............................................................................. 16

*Lion Global* ......................................................................................................... 19

*Lloyds*, 2022 WL 2390551 ............................................................................ 20, 22

*Lombard*, Adv. Pro. No. 12-01693 (CGM) ...................................................... 18

*Lowrey*, 596 B.R. at 463 ................................................................................... 21

*In re Lyondell Chem. Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) ............................................................. 29

*Malloy v. Citizens Bank of Sapulpa* (*In re First Sec. Mortg. Co.*),
    33 F3d 42 (10th Cir. 1994) .............................................................................. 28

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004) ........................................................................ 25, 33

*Menotte v. United States* (*In re Custom Contractors, LLC*),
    745 F.3d 1342 (11th Cir. 2014) ....................................................................... 28

*Meoli v. Huntington Nat'l Bank*,
    848 F.3d 716 (6th Cir. 2017) ........................................................................... 28

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) ................................................................... 29

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ................................................................................. 7

*In re Morrison*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) ............................................................. 21

*Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*),
    2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ...................................... 30

*Nordberg v. Société Générale* (*In re Chase & Sanborn Corp.*),
    848 F.2d 1196 (11th Cir. 1988) ....................................................................... 28

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ........................................................................... 13

*In re Palm Beach Finance Partners, L.P.*,
    488 B.R. 758 (Bankr. S.D. Fla. 2013) ............................................................. 27

*Picard v. ABN Ireland (In re BLMIS)*,
No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022)
(McMahon, J.) ...................................................................................................31, 32

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
30, 2022) ......................................................................................................8, 20, 22

*Picard v. Banque SYZ & Co. SA*,
Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
14, 2022) ....................................................................................................... *passim*

*Picard v. Barfield Nominees Ltd.*,
Adv. Pro. No. 12-01669 (CGM) (Bankr. S.D.N.Y. Sept. 28, 2022).......................17

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) .................................................7, 10, 11, 16

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
440 B.R. 274 (Bankr. S.D.N.Y. 2010) ...............................................................14, 18

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021), *cert denied sub nom. Citibank, N.A. v. Picard*,
142 S. Ct. 1209 (2022) ................................................................................. *passim*

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
418 B.R. 75 (Bankr. S.D.N.Y. 2009) ............................................................. *passim*

*Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015) .............................................................14, 20

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...........................................................6, 7, 18

*Picard v. Fairfield Investment Fund, Ltd.*,
Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
2021) ..................................................................................................................2

*Picard v. First Gulf Bank*,
Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
18, 2022) ....................................................................................1, 18, 31, 32

*Picard v. JPMorgan Chase & Co.*,
Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y.
Oct. 10, 2014) ....................................................................................................10

*Picard v. Keller Family Trust (In re BLMIS)*,
634 B.R. 39 (Bankr. S.D.N.Y. 2021) ......................................................28, 29, 30

*Picard v. Korea Exchange Bank*,
  Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) .................................................................................................1

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 76 (S.D.N.Y. 2012) .........................18

*Picard v. Merkin (In re BLMIS)*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...........................................................8, 32, 33

*Picard v. Miller* (*In re BLMIS*),
  631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) .............................................................28

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) ............................................................. *passim*

*Picard v. Multi-Strategy Fund, Ltd.*,
  No. 22-cv-06502-JSR, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)...................2, 23, 24, 25

*Picard v. The Pub. Inst. for Soc. Sec.*,
  Adv. Pro. No. 12-01002 (CGM) (Bankr. S.D.N.Y. Aug. 17, 2022)........................................13

*Picard v. Quilvest Finance Ltd.*,
  Adv. Pro. No. 11-02538 (CGM) (Bankr. S.D.N.Y. Sept. 27, 2022)................................13, 17

*Picard v. Société Générale Private Banking (Suisse) S.A.*,
  Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022) ...............................................................................................7

*Picard v. UBS Deutschland AG, et al.*,
  Case No. 12-cv-09380-JSR, ECF No. 18 ...............................................................22

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)...............................................................9, 14, 18, 24

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)............................................................................5

*Rupp v. Markgraf*,
  95 F.3d 936 (10th Cir. 1996) ..........................................................................28

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)............................................................................6

*Sarachek v. Schochet* (*In re Agriprocessors*),
  Adv. Pro. No. 10-09190, 2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14, 2012) ...............................................................................................28

*Sec. Inv. Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013)...........................................................................20, 24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018).........................................................6, 14, 26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ..............22, 23, 24

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999).........................................................................29

*Société Générale*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 .....................................17

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) .....................................................................29

*Sweatland v. Park Corp.*,
    181 A.D.2d 243, 587 N.Y.S.2d 54 (N.Y. App. Div., 4th Dept. 1992) ....................................19

*Union Securities*, 2022 WL 3572509.............................................................................20, 22

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002)...................................................................................21

*United Teamster Fund v. MagnaCare Admin. Servs.*,
    LLC, 39 F. Supp. 3d 461 (S.D.N.Y. 2014) .................................................................32

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)......................................................................................6

**Statutes**

11 U.S.C. § 546(e) ............................................................................22, 23, 24, 25

11 U.S.C. § 548(a) .................................................................................21, 22

11 U.S.C. § 550..............................................................................24, 25, 26, 27

11 U.S.C. § 550(a) .................................................................................. *passim*

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll*............................................1

**Rules**

Fed. R. Bankr. P. 7012 ..............................................................................................5

Fed. R. Civ. P. 8(a)(2) .........................................................................................6, 21

Fed. R. Civ. P. 10(c) ...........................................................................................................20, 21

Fed. R. Civ. P. 12(b)(2)..............................................................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2, 5

Fed. R. Civ. P. 550(b) ...........................................................................................................26, 27

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021) ....................................................................26

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendant LGT Bank (Switzerland) Ltd.'s ("Defendant" or "LGT Swiss") Mmotion to Dismiss the Amended Complaint ("Motion").

## I.    PRELIMINARY STATEMENT

This adversary proceeding is part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS Customer Property that was stolen as part of Madoff's Ponzi scheme. In this action, the Trustee seeks to recover at least $1,095,980 in subsequent transfers of Customer Property that LGT Swiss, in its capacity as successor in interest to Dresdner Bank Schweiz ("Dresdner Schweiz"), received from Fairfield Sentry Limited ("Sentry"). Despite this Court's guidance in no fewer than 25 decisions in 25 similar adversary proceedings in this SIPA liquidation proceeding, LGT Swiss moves to dismiss on numerous similar grounds.[1] All of LGT Swiss's arguments are without merit and should be rejected.

First, despite the fact that: (1) Dresdner Schweiz always intended to invest with BLMIS in New York; (ii)Dresdner Schweiz engaged regularly with Fairfield Greenwich Group ("FGG") employees in New York; (iii) Dresdner Schweiz relied on New York bank accounts to invest with Sentry and redeem from Sentry; and (iv) Dresdner Schweiz agreed to submit to New York jurisdiction and choice of law provisions, Defendant (as successor in interest to Dresdner Schweiz)

---

[1] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022).

attempts to assert that this Court lacks personal jurisdiction. Defendant is clearly wrong. All of Dresdner Schweiz's contacts with New York, which Defendant does not deny can be imputed to it as a successor in interest, establish this Court's jurisdiction. Further, Defendant itself reached out to this forum when it filed two substantively similar customer claims with the Trustee to recover funds from the BLMIS estate. *See* Hunt Decl. Ex.1 (Claim Nos. 015023 and 015374).

The Trustee plausibly alleges the avoidability of the initial transfers based on Sentry's actual knowledge of fraud by incorporating the second amended complaint (the "Fairfield SAC") filed in *Picard v. Fairfield Investment Fund, Ltd.*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (the "*Fairfield Inv. Fund*"). LGT Swiss attempts to relitigate Judge Rakoff's decision in *Bernard L. Madoff Inv. Sec. LLC (In re Consolidated Proceedings on 11 U.S.C. 546(e))*, No. MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), arguing that the "safe harbor bars the Trustee's claims here." Mot. at 21. However, this Court has already determined that "the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy*, 641 B.R. at 92. Further, as made clear in the District Court's recent denial of motions for interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants, LGT Swiss's hypothetical arguments are fact-intensive and "do not appear answerable on the pleadings." *Picard v. Multi-Strategy Fund, Ltd.*, No. 22-cv-06502-JSR, 2022 WL 16647767, at *8-9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*").

Next, Defendant argues that the Trustee has not plausibly alleged that the transfers he seeks to recover are Customer Property. The Trustee has alleged the relevant pathways through which Customer Property was transferred from BLMIS to Sentry and subsequently to Defendant, as well as the necessary vital statistics (*i.e.*, the who, when, and how much) of the subsequent transfers

Defendant received. Further, the Trustee pled that Sentry invested "in excess of 95% of its assets in BLMIS customer accounts." Am. Compl. ¶ 2. Thus, as this Court has found in many other cases, the "Complaint plausibly pleads that Defendant received customer property because Fairfield Sentry did not have other property to give," and the specific facts surrounding what funds were used to pay redemptions are "issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 95.

Defendant's arguments regarding its status as a mere conduit and good faith are a thinly veiled attempt to shift the burden of pleading its fact intensive affirmative defenses to the Trustee. The Trustee has met his burden under Section 550(a) to plead that the transfers from BLMIS to Sentry are avoidable and that Dresdner Schweiz (and Defendant as its successor in interest) is a subsequent transferee, having received transfers of BLMIS Customer Property from Sentry as set forth in the exhibits to his Amended Complaint. It is now LGT Swiss's burden to establish its purported defenses, neither of which can be determined at this stage of the litigation.

For the reasons set forth in the plethora of decisions of this Court and the district court, as well as the reasons set forth more fully herein, the Trustee respectfully requests that the Court deny Defendant's Motion.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    <u>THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS</u>

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Am. Compl. ¶ 56. BLMIS was a securities broker-dealer registered with the United States Securities and Exchange Commission (the "SEC") beginning in January 1960. *Id.* BLMIS purportedly operated three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 58. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC

Strategy"), which involved investing in United States common stocks, options, and treasury bills. *Id.* ¶¶ 66, 70. In reality, BLMIS operated its IA Business as a Ponzi scheme. *Id.* ¶ 62. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for, and subsequently pleaded to, criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 40.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*").

## B.    FAIRFIELD SENTRY

Sentry was controlled by the Fairfield Greenwich Group ("FGG"), a de facto partnership with its principal place of business in New York. *See Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Fairfield SAC ¶ 89.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of Customer Property in the amount of approximately $3 billion. *Id.* ¶ 92; *see also* Fairfield SAC. In 2011, the Trustee settled with Sentry and Sentry consented to a judgment in the amount of $3.054 billion. *Id.* ¶ 93. As a feeder fund that invested in BLMIS indirectly through Sentry, the $752.3 million represents a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *Id.* ¶ 93. Following the settlement, the Trustee commenced a number of adversary proceedings against defendants, like the one here, to recover the approximately $3 billion in stolen Customer Property.

### C.    DEFENDANT AND ITS INVESTMENT IN SENTRY

Dresdner Schweiz was a subsidiary of Dresdner Bank AG, one of Germany's largest banks. Am. Compl. ¶ 7. In 2009,[2] LGT Group acquired Dresdner Schweiz from Commerzbank. Prior to LGT's acquisition, Dresdner Schweiz became a shareholder in Sentry, voluntarily investing significant sums in Sentry, executing subscription agreements, knowing at all times that nearly all of the money was intended to be invested with BLMIS in New York. Am. Compl. ¶¶ 29–32.

In those subscription agreements, Dresdner Schweiz consented to the jurisdiction of New York and agreed its investments would be governed by New York Law. *Id.* ¶ 31. It also regularly communicated with New-York based FGG personnel regarding those investments and used New York bank accounts to transfer money to and from Sentry. *Id.* ¶¶ 34–36.

After Madoff confessed to running a Ponzi scheme and after LGT Swiss acquired Dresdner Schweiz, LGT Swiss filed two nearly identical customer claims in the BLMIS liquidation, seeking the recovery of $2,128,043.68 from the BLMIS estate. *Id.* ¶ 38.

### ARGUMENT

### III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

When considering a Rule 12(b)(6) motion to dismiss, applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the Trustee's favor." *In Re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement

---

[2] The exact date of the acquisition is unknown to the Trustee, although online reports indicate it was announced in July 2009 and completed by November 2009. However, since it is clear that the timing occurred after Bernard Madoff confessed in December of 2008 and after all of the transfers the Trustee seeks to recover, the specific date does not change the analysis here. *See* "Commerzbank AG – Press Release," Hunt Decl. Ex. 2; Corporate Ownership Statement of LGT Bank (Switzerland) Ltd., ECF No. 98 (stating LGT Swiss is "successor to" Dresdner Schweiz).

of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). At the pleading

stage, the allegations need only meet the "plausibility" standard, such that they "nudge[] [the]

claims . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 552, 680

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

where "the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Trustee need only show a prima facie case that personal jurisdiction exists. *Dorchester*

*Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). The prima facie showing "may

be established solely by allegations." *Id.* at 84–85. The Trustee may also establish a prima facie

case of jurisdiction through affidavits and supporting materials that contain averments of facts

outside the pleadings that, "if credited, would suffice to establish jurisdiction over the defendant.'"

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 188 (Bankr. S.D.N.Y.

2018) ("*BNP*") (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)); *see*

*also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)) (a prima facie

case of jurisdiction may be established through affidavits and supporting materials that contain

averments of facts outside the pleadings). The pleadings and affidavits must be construed in the

light most favorable to the Trustee, resolving all doubts in the Trustee's favor. *See Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directed its activities into the

forum and the underlying cause of action arises out of or relates to those activities. *See Picard v.*

*Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

The court first determines whether the defendant purposefully availed itself of the privilege of

conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945);

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Next, the court determines if the claims "arise out of or relate to the defendant's contacts" with the forum. *Multi-Strategy*, 641 B.R. at 87–88 (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025–26 (2021)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine if jurisdiction is reasonable, the court considers "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where a plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

This Court has repeatedly found in similar adversary proceedings in this SIPA liquidation proceeding that it has jurisdiction over a "party [that] purposefully avails itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*"); *Picard v. Société Générale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022) ("*Société Générale*"); Memorandum Decision, *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022

WL 3354955, ECF No. 100, at *6–7; *Multi-Strategy*, 641 B.R. 78; Memorandum Decision, *Picard
v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr.
S.D.N.Y. June 30, 2022), ECF No. 115, at *6 ("*Lombard*").

The Amended Complaint sets forth in full the elements of the Trustee's claims, pleading
Dresdner Schweiz's intent to invest with BLMIS through New York based FGG, as well as receipt
of subsequent transfers made to Defendant and its predecessor, thus demonstrating this Court's
jurisdiction over Defendant. Further, Defendant's Motion and supporting exhibits are not sufficient
to refute Trustee's *prima facie* showing of personal jurisdiction and dismiss the case under Rule
12(b)(2). Defendant's Motion should be denied. *See Picard v. Merkin (In re BLMIS),* 440 B.R.
243, 254–71, 273 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

### A.   DRESDNER SCHWEIZ PURPOSEFULLY AVAILED ITSELF OF THE LAWS AND PRIVILEGES OF CONDUCTING BUSINESS IN NEW YORK BY INVESTING IN SENTRY

Defendant argues that the Trustee does not allege sufficient contacts between Dresdner
Schweiz and the forum to find that the Court has personal jurisdiction over it. Notably, however,
Defendant clearly fails to challenge the factual allegations themselves, and Defendant fails to
challenge the imputation of Dresdner Schweiz's actions in and with the forum to LGT Swiss in its
capacity as Dresdner Schweiz's successor in interest. Defendant further blatantly ignores the many
prior rulings of this Court, as well as the numerous and purposeful contacts between Dresdner
Schweiz and New York.

Defendant (through its predecessor in interest): (i) invested in Sentry with the knowledge
and intention that its funds would be invested, managed, and custodied by BLMIS in New York;
(ii) met and communicated with FGG personnel in New York regarding its investments with New
York based BLMIS through Sentry; (iii) agreed to New-York jurisdiction, forum-selection,
service-of-process, and choice-of-law provisions related to its Sentry investments; and (iv) used

the New York banking system to transact its investments with Sentry. Many of these contacts are sufficient on their own to support jurisdiction, but especially in their totality, these contacts forcefully establish that Dresdner Schweiz purposefully directed its activities to New York. *See Esso Expl. & Prod. Nigeria Ltd v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [of the defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely available itself of the forum.").

1.    **Defendant's Investments with New York-Based BLMIS Through Sentry Establish Minimum Contacts**

Dresdner Schweiz knew and intended that its investments in Sentry were ultimately investments with New York-based BLMIS and that the funds it invested were purportedly to be used to purchase United States securities. Setting aside the numerous other contacts with New York, Dresdner Schweiz's deliberate targeting of New York-based BLMIS and the U.S. securities market—through Sentry which was expressly established for that purpose—is dispositive.

As the Second Circuit recognized, "[w]hen these subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). By executing Sentry subscription agreements and affirming that it "received and read" Sentry's PPM, Dresdner Schweiz knew that "Sentry maintained in excess of 95% of its assets in BLMIS customer accounts." Am. Compl. ¶¶ 2, 30, 32. Dresdner Schweiz not only knew that BLMIS was the principal target of its investments, it invested with Sentry for precisely that reason.

Dresdner Schweiz also intended that any profits from its Sentry investment would be generated by BLMIS's purported investments in U.S. securities. The Sentry PPM that Dresdner Schweiz reviewed made clear that Madoff's purported SSC Strategy entailed the purchase of U.S. equity securities and U.S. Treasury Bills.

### 2.    This Court Has Jurisdiction Over Defendant Under *BLI*

Dresdner Schweiz purposefully availed itself of the benefits and protections of New York when it invested in Sentry, through FGG, with the objective of accessing New York-based BLMIS in U.S. markets. As long as it was making money through its investments in BMIS in New York through Sentry, Dresdner Schweiz continued to avail itself of the benefits and protections of doing so. After Madoff's confession and arrest in December 2008, Defendant merged Dresdner Schweiz into LGT Swiss, knowing it had invested in New York-based BLMIS through Sentry. Am. Compl. ¶ 55. Defendant cannot now claim this Court lacks personal jurisdiction. This Court's opinion in *Picard v. BLI* confirms that this Court has personal jurisdiction. *See BLI*, 480 B.R. at 517.

In *BLI*, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. Similarly, Dresdner Schweiz affirmed the PPMs and executed subscription agreements that established the investment's BLMIS-centric purpose. *Id.* at 507–08.

This Court has already concluded that Sentry investors like Dresdner Schweiz are subject to personal jurisdiction in this Court. *Id.* at 516–18. *BLI* holds that the defendant in *BLI*, just like Dresdner Schweiz here, "purposefully availed itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Multi-Strategy*, 641 B.R. at 86 (citing *BLI*, 480 B.R. at 517); *see also Picard v. JPMorgan Chase & Co.*, Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (courts in this SIPA liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal

jurisdiction"). "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506; *Multi-Strategy*, 641 B.R. at 87.

Defendant attempts to differentiate its position in this adversary proceeding by attempting to argue that the Trustee's allegations relate to third-parties' contacts—those of Sentry, FGG, or BLMIS—but this misrepresents the Trustee's allegations. Mot. at 11–13. The Trustee specifically alleges that Dresdner Schweiz, predecessor to Defendant, itself intended to invest in U.S. securities, through New York-based BLMIS, corresponding with New York-based employees of Sentry regarding those investments. All of the contacts alleged by the Trustee were performed by Dresdner Schweiz, who intentionally aimed those activities directly at New York.

Because Dresdner Schweiz invested in Sentry with the objective of reaching the U.S. securities market and LGT Swiss intentionally assumed Dresdner Schweiz's Sentry account, evidenced by its filing of two customer claims in the BLMIS liquidation, LGT Swiss is similarly situated to the defendants in *BLI* and *Multi-Strategy* with respect to the fundamental purpose of its investment.

### 3. Dresdner Schweiz' Direct Contacts with New York Give Rise to Personal Jurisdiction

a. Dresdner Schweiz's Employees Regularly Corresponded with FGG's New York Office Regarding its Account with Sentry, Giving Rise to Personal Jurisdiction

Dresdner Schweiz's contacts with New York include regular correspondence with FGG personnel in New York to further its investments and realize profits from those investments through redemptions. These contacts directly relate to the transfers the Trustee seeks to recover.

For example, in June of 2003, Dominik Morabito of Dresdner Schweiz sent emails memorializing a phone conversation he had with Philip Toub of FGG New York regarding

Dresdner Schweiz's Sentry investments and confirming subscription details. Hunt Decl. Exs. 3 and 4. In July 2006, an email chain between FGG New York and Dresdner Schweiz employee Florian Deisler shows that Dresdner Schweiz requested Sentry information from FGG New York and FGG responded with the information and latest tear sheets for funds including Sentry. Hunt Decl. Ex. 5. Dresdner Schweiz's Xaver Kurzen emailed FGG New York's Lauren Ross with the subject line "Buys in Fairfield Sentry" on June 6, 2007 outlining its placement of "a buy 40 units" of Sentry on May 29, 2007 and even including a reference number. Hunt Decl. Ex. 6.

Dresdner Schweiz employees directly contacted FGG's New York office to assess and manage its subscriptions and redemptions into and from the Sentry account that LGT Swiss acquired from Dresdner Schweiz.

> b.     Dresdner Schweiz Instructed Sentry to Subscribe and Redeem to New York Correspondent Accounts

Dresdner Schweiz purposely authorized and directed Sentry to use New York bank accounts to wire the transfers of stolen Customer Property the Trustee seeks to recover to a New York bank account, demonstrating an "essential element" of the Trustee's claim. *See Multi-Strategy*, 641 B.R. at 87 (citing *Multi-Strategy*, ECF No. 97, ¶¶ 97, 110–13) ("Defendant sent wiring instructions specifically designating a New York based bank account to which defendant directed FGG to wire defendant's redemption payments from Fairfield Sentry.").  This was not a one-time request to use a New York bank account. It was the parties' regular course of dealing. A defendant's use of a domestic bank account in connection with the activity alleged is sufficient to establish jurisdiction. *See Licci*, 984 N.E.2d at 899–900 (leading case, holding defendant's purposeful "use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" suffices to show defendant transacted business in New York); Memorandum Decision, *Picard v. The Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-

01002 (CGM) (Bankr. S.D.N.Y. Aug. 17, 2022), ECF No. 149, at *11 (finding use of New York correspondent bank accounts as "additional evidence" of personal jurisdiction); Memorandum Decision, *Picard v. Quilvest Finance Ltd*.., Adv. Pro. No. 11-02538 (CGM) (Bankr. S.D.N.Y. Sept. 27, 2022), ECF No. 122, at *11 (same).

Dresdner Schweiz authorized and instructed use of New York bank accounts for the redemption payments the Trustee seeks to recover. In 2007 and 2008 alone, Dresdner Schweiz directed the proceeds of redemptions from Sentry be sent to a bank account at HSBC Bank USA, New York on at least 9 occasions. Hunt Decl. Exs. 9–17 (various redemption forms).

Moreover, Citco subscription confirmations show that Dresdner Schweiz, under its Citco account number, used Citco's New York HSBC account to subscribe into Sentry as well. Hunt Decl. Ex. 18 (Citco subscription confirmations); Hunt Decl. Ex. 19 (Citco account number chart).

Even if the HSBC account referenced in the redemption requests cited above and attached as Exhibits 9 through 17 to the Hunt Declaration was a correspondent account, New York cases consistently hold purposeful use of a U.S. correspondent account can provide a sufficient basis on its own for jurisdiction. *See Licci*, 984 N.E.2d at 899–900 (leading case, holding defendant's purposeful "use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" suffices to show defendant transacted business in New York); *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (foreign defendants subject to jurisdiction based solely on their designation and use of New York correspondent accounts to receive preferential transfers); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 6–11 (N.Y. 2016) (same, in connection with money laundering scheme).

In this SIPA liquidation proceeding, this Court on multiple occasions has found jurisdiction where initial and subsequent transferee defendants received the transfers at issue from a BLMIS feeder fund into U.S. bank accounts. *See BNP*, 594 B.R. at 191 (jurisdiction over subsequent transferee defendant that sent subscriptions to, and received redemptions from, feeder fund's New York bank account); *Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC),* 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (jurisdiction over initial transferee defendant who received transfers from BLMIS's New York bank account); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279–80 (Bankr. S.D.N.Y. 2010) (same, plus defendants used their California bank account to receive transfers); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) (jurisdiction over initial transferee defendants that made "financial transactions to and from their New York BLMIS bank accounts"). Therefore, this contact, alone, supports personal jurisdiction over Defendant.

        c.      Dresdner Schweiz's Subscription Agreements Support Specific Personal Jurisdiction

The Sentry subscription agreements executed by Dresdner Schweiz made clear that Sentry placed all or substantially all of its assets with BLMIS. *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019). The Sentry subscription agreements contained affirmations that the signatory received, read, and was bound by Sentry's private placement memoranda ("PPM"). Hunt Decl. Ex. 7. The PPMs, amended from time to time, included details about BLMIS' investment strategy, historical performance, and trades in the S&P 100 Index. When it was doing business with FGG and Sentry regarding its account, Dresdner Schweiz clearly knew from the PPMs:

        (i)      all investment management duties were delegated to BLMIS;

(ii)    BLMIS had controlling authority over Dresdner Schweiz's investment;

(iii)    BLMIS was a registered broker-dealer in New York and was the executing broker for Sentry's investments;

(iv)    the SSC Strategy involved the purchase of U.S. securities and options;

(v)    most of the stocks for which BLMIS acted as a market maker were also listed on the New York Stock Exchange;

(vi)    the decisions regarding which U.S. Securities to purportedly purchase, and when to make such purchases, were delegated to BLMIS;

(vii)    BLMIS was the sub-custodian of Sentry's investments; and

(viii)    BLMIS was "essential to the continued operations of" Sentry.

When Dresdner Schweiz signed Sentry subscription agreements, it submitted to venue in New York, the jurisdiction of the New York courts, the service of process from New York courts, and the application of New York law, and acknowledged that U.S. counsel would act as "counsel to the Fund[s]." Am. Compl. ¶ 31; Hunt Decl. Ex. 8. Thus, in addition to knowing the relationship between Sentry and New York, Dresdner Schweiz knowingly consented to jurisdiction in the forum.

Each of the Short Form Subscription Agreements contained an express reaffirmation by Dresdner Schweiz of "each and every representation and covenant made by the undersigned in the original Subscription Agreement as of the date hereof." Hunt Decl. Ex. 8. However, even if Dresdner Schweiz's execution of Sentry subscription agreements is not found to be "consent" to personal jurisdiction in New York as Defendant would have this Court rule (Mot. at 8), the terms

of the subscription agreements, including choice of law and forum selection provisions, further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Chase Manhattan Bank v. Banque Générale du Commerce*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("A choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."); *Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

Moreover, the Sentry subscription agreements were a necessary predicate to Dresdner Schweiz's receipt of stolen Customer Property and are sufficiently related to the Trustee's claims to recover that stolen Customer Property from LGT Swiss. *See Ford Motor Co*., 141 S. Ct. at 1026 (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (noting the New York Court of Appeals "made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but rather, "it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'") (quoting *Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 900 (N.Y. 2012)).

> d.     Customer claims Filed by Defendant in the BLMIS Liquidation are Another Jurisdictional Contact

On July 2, 2019, LGT Swiss filed Claim Nos. 015023 and 015374 with the Trustee seeking to recover $2,128,043.68 from the BLMIS Estate. Hunt Decl. Ex. 1. These customer claims are yet another substantive contact demonstrating that this Court has personal jurisdiction over Defendant given the totality of the circumstances. *See Syz*, 2022 WL 2135019, at *4 (noting the

filing of customer claim as factor in denying motion to dismiss based on personal jurisdiction).
Filing claims in the BLMIS SIPA liquidation proceeding clearly shows LGT Swiss knew that the
purpose of the investments in Sentry was really to direct money to BLMIS in New York.

When considered with the other jurisdictional contacts set forth herein, including (i) a
course of dealing with FGG in New York, (ii) the use of New York bank accounts, (iii) subscription
agreements, PPM disclosures clearly establishing the New York nexus of the investments and
agreeing to New York choice of law and jurisdiction, the customer claims forcefully demonstrate
that personal jurisdiction was a foreseeable consequence of investments in New York managed
Sentry. The totality of these contacts prove that investment with BLMIS was not happenstance.
Rather, it was the entire purpose of investing with Sentry.

### 4.    The Exercise of Personal Jurisdiction Over Defendant Is Reasonable

As this Court has found in multiple prior adversary proceedings in this SIPA liquidation
proceeding, the exercise of jurisdiction will not offend traditional notions of "fair play and
substantial justice" under the circumstances of the particular case. *See, e.g.*, *Société Générale*, Adv.
Pro. No. 12-01677 (CGM), 2022 WL 6237071, at *10–11 (finding that the exercise over a
subsequent transferee is reasonable after weighing the "forum State's interest in adjudicating the
dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial
system's interest in obtaining the most efficient resolution of controversies, and the shared interest
of the several States in furthering fundamental substantive social policies" (citing *Burger King*,
471 U.S. at 477)); Memorandum Decision, *Picard v. Barfield Nominees Ltd.*, Adv. Pro. No. 12-
01669 (CGM) (Bankr. S.D.N.Y. Sept. 28, 2022), ECF No. 105, at *9–10 (same); Memorandum
Decision, *Picard v. Quilvest Finance Ltd*., Adv. Pro. No. 11-02538 (CGM) (Bankr. S.D.N.Y.
Sept. 27, 2022), ECF No. 122, at *9–10 (same). Where the plaintiff has alleged purposeful
availment, as the Trustee does here, this Court has correctly held that the burden shifts to the

defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73). LGT Swiss has not satisfied this burden. LGT Swiss has failed to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).

As this Court found in 25 previous denials of defendants' motions to dismiss in this SIPA liquidation proceeding, the exercise of jurisdiction over LGT Swiss is reasonable because LGT Swiss is "not burdened by this litigation. Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts when it signed its subscription agreements with the Fairfield Funds." *Multi-Strategy*, 641 B.R. at 88; *Banca Carige*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at *8–9 (Bankr. S.D.N.Y. June 30, 2022); *Lombard*, Adv. Pro. No. 12-01693 (CGM), ECF No. 115, at *9; *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, ECF No. 100, at *10; *Banque SYZ*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, ECF No. 167, at *9 (adding that the defendant "filed a claim in this SIPA litigation"). And, as this Court held in *Multi-Strategy*, "[t]he forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88–89 (citing *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117, 119 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 76 (S.D.N.Y. 2012)); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *In re BLMIS*, 418 B.R. at 82; *In re Fairfield Sentry Ltd.*, 627 B.R. at 568); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property."). Moreover, Dresdner Schweiz worked with FGG New York as a subagent, receiving payment directly from the funds for placing

other accounts in Sentry and other Fairfield Funds. *See* Hunt Decl. Exs. 20–21. Therefore, it is beyond doubt that this adversary proceeding is not now suddenly burdensome for Defendant to litigate.

Therefore, it "comport[s] with fair play and substantial justice" to pursue LGT Swiss, in its capacity as successor in interest to Dresdner Schweiz, where Dresdner Schweiz knowingly did business. *Burger King*, 471 U.S. at 477.

### B. IN THE ALTERNATIVE, THE TRUSTEE IS ENTITLED TO JURISDICTIONAL DISCOVERY AND, IF NEEDED, THE OPPORTUNITY TO AMEND THE COMPLAINT

If this Court finds the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee has certainly made a "threshold showing" warranting jurisdictional discovery, and respectfully requests that here. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009); *see also Sweatland v. Park Corp.*, 181 A.D.2d 243, 245, 587 N.Y.S.2d 54 (N.Y. App. Div., 4th Dept. 1992) (where the plaintiff raised "an issue of material fact . . . regarding whether the transaction constituted a de facto merger" a motion for summary judgment was improper and further discovery was warranted). As this Court recently noted in the *Lion Global* case, "a plaintiff may obtain discovery in connection with issues related to the court's jurisdiction." *Lion Global,* Transcript from Oct. 19, 2022 Hearing on Defendant's Motion to Dismiss, 56:25–57:2 (citing *Haber v. United States*, 823 F.3d 746). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the parties in the forum state, the plaintiff's right to conduct jurisdictional discovery must be sustained." *Id.*

### IV. THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS

As the Court continuously holds, incorporation of the Fairfield Amended Complaint is

proper. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *7. The Trustee sufficiently "pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *Multi-Strategy*, 641 B.R. at 13. Similar to these cases, the Amended Complaint against LGT Swiss alleged "[t]he Trustee incorporates by reference the allegations contained in the [Fairfield] Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16." Am. Compl. ¶ 96.

A.    **ALL ADVERSARY PROCEEDINGS ARE PART OF THE MAIN CASE FOR PURPOSES OF RULE 10(C)**

The District Court has already found the Trustee's incorporation by reference of the Fairfield Amended Complaint is sufficient in the Trustee's subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complains against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re Madoff Sec.*"). Since all adversary proceedings filed under the umbrella of a single bankruptcy case are considered one action for purposes of Rule 10(c), the court's decision in *In re Madoff Sec.* allowing for incorporation by reference is law of the case. No intervening change of controlling law exists to stray from this precedent. *See Lowrey*, 596 B.R. at 463 (holding that the law of the case doctrine foreclosed relitigation of an issue where the district court "considered and rejected the very arguments that defendants now make."); *United States v. Quintieri*, 306 F.3d 1217, 1225

(2d Cir. 2002) (internal citations omitted) (holding that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless "cogent" and "compelling" reasons, such as an intervening change in controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice militate otherwise).

Because this adversary proceeding and the action filed against Sentry fall under the same SIPA liquidation proceeding umbrella, and because LGT Swiss has failed to identify any change of controlling law, the Trustee's incorporation of the Fairfield SAC is proper.

## B.  INCORPORATION IS PERMITTED WHERE IT ACHIEVES THE PURPOSE OF RULE 10(C)

The Trustee's incorporation of the Fairfield SAC meets the purpose of Rule 10(c) to promote short, concise pleadings, free of unwarranted repetition. *In re Morrison*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007). The incorporation is addressed specifically to the initial transferee and is in the section of the Amended Complaint labeled "Initial Transfers from BLMIS to Fairfield Sentry" following allegations relating to the Trustee's avoidance claims in the Fairfield SAC. *See* Am. Compl. ¶¶ 92–96. The Trustee references only the Fairfield SAC which provides notice of the avoidability of the initial transfers in a manner that avoids repetition and over-complication.

## C.  THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 8

Incorporation of the Fairfield SAC also satisfies Rule 8(a)(2). By incorporating the Fairfield SAC, the Trustee made a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from LGT Swiss pursuant to Section 550(a). *See Citibank*, 12 F.4th at 196 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original).

The Trustee makes specific allegations regarding LGT Swiss's liability under Section 550(a) throughout his Amended Complaint and only incorporates the Fairfield SAC as part of one paragraph in pleading the avoidability of the initial transfers. Am. Compl. ¶ 96. LGT Swiss's burden is minimal. Here, as in many other cases, the Trustee adequately pleaded the avoidability of the initial transfers due to Sentry's knowledge of BLMIS's fraud. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *7.

## V.    SECTION 546(e) SAFE HARBOR

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"),[3] the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). Defendant attempts to argue that Section 546(e) bars recovery from it, notwithstanding Sentry's actual knowledge. *See* Mot. at 13. However, as made clear in the District Court's recent denial of seven motions for leave for an interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants, this issue is fact-intensive and "do[es] not appear answerable on the pleadings." *Multi-Strategy II*, 2022 WL 16647767, at *8-9.

---

[3] The decision in *Cohmad* finding that when a transferee, initial or otherwise, had knowledge of the fraud, does not fall under the protections of Section 546(e) was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). Defendant participated in those consolidated District Court proceedings and the District Court's review of this issue. *See* Opinion and Order ("546(e) Opinion"), *Picard v. UBS Deutschland AG, et al.*, Case No. 12-cv-09380-JSR, ECF No. 18; Mem. of Law in Supp. of Def. UBS Deutschland AG's Mot. to Withdraw the Reference, ECF No. 16.  As such, Defendant is bound by *Cohmad* and that decision is law of the case.

In *Multi-Strategy II*, the District Court ruled that this Court has handled the issue correctly at the pleadings stage. Where the Trustee has pled Sentry's actual knowledge, *Multi-Strategy II* confirms that any further analysis of Section 546(e) is inappropriate at the pleadings stage because it is Defendant's burden to plead and prove on a complete record whether the Section 546(e) safe harbor applies to the transfers the Trustee seeks to recover from Defendant. *See id.* at *9 ("Questions that turn on factual allegations that have not yet been subject to any discovery or summary judgment motion practice but simply have to be taken most favorably to the plaintiff in their current state are better addressed after discovery is complete . . . .").

### A.      THE TRUSTEE SUFFICIENTLY ALLEGED SENTRY HAD ACTUAL KNOWLEDGE OF MADOFF'S FRAUD

This Court has previously found the Trustee has sufficiently pled that the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *Picard v. Fairfield Inv. Fund Ltd.*, No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). In *Multi-Strategy II*, the District Court clarified that "Section 546(e) could not be read to protect payments received by persons or entities who knew they were not 'settlement payments' or transfers made in connection with a securities contract." *Multi-Strategy II,* 2022 WL 16647767, at *6 (citing *Cohmad*, No. 12-MC-115, 2013 WL 1609154, at *3). The court further expounded on its decision in *Cohmad* finding that the avoidability of the initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee and the Trustee is not required to plead actual knowledge of the subsequent transferee. *Id.* at *5-7 (defendants' "lack of knowledge of Madoff's fraud cannot render unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield").

**B.**    **SECTION 546(E) DOES NOT APPLY INDEPENDENTLY TO RECOVERY ACTIONS**

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer.") (internal citations omitted) (emphasis in original)). This is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of the debtor's estate, while Section 550 is a "utility provision," intended to execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether or not Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[4] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, No. 12-MC-115, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities." (emphasis added)).

---

[4] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115, ECF No. 119 (S.D.N.Y. May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

**C.    WHETHER DEFENDANT CAN AVAIL ITSELF OF A SECTION 546(e) SAFE HARBOR BASED ON SEPARATE AGREMENTS WITH SENTRY IS A FACT-INTENSIVE INQUIRY AND NOT APPROPRIATE AT THE MOTION TO DISMISS STAGE**

Defendant also argues that Section 546(e) applies based on separate agreements between Dresdner Schweiz and Sentry, but this similarly provides no basis for granting their Motion. *Multi-Strategy II* addressed this hypothetical and confirmed that any such application of the Section 546(e) safe harbor "do[es] not appear answerable on the pleadings." Multi-Strategy II, 2022 WL 16647767, at *9. Specifically, Judge Rakoff held that whether an initial transfer could have been made "in connection with" an agreement between an initial transferee and subsequent transferee for purposes of Section 546(e) was a factual question that provided no basis for an interlocutory appeal. *Id.* at *8-9. This is because whether or not an initial transfer is avoidable will require a fact-intensive inquiry surrounding each of the initial transfers. These facts, which are Defendant's burden to plead and prove, *id.* at *3 n.3, are not known at this stage of the litigation and certainly cannot be determined from the pleadings or from Defendant's Motion.

**VI.    LGT SWISS'S ASSERTION OF A MERE CONDUIT DEFENSE IS IMPROPER AT THIS STAGE**

Defendant improperly tries to shift its burden to plead an affirmative defense that it was a mere conduit under Section 550 of the Bankruptcy Code. As recognized by this Court, whether a transferee is a mere conduit is an affirmative defense, and an affirmative defense cannot be established on the face of a complaint, unless under the "limited exception" where "facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Defendant has not proven and cannot prove that here.

### A.    THE PLEADINGS ESTABLISH DEFENDANT IS A TRANSFEREE

To recover a subsequent transfer under Section 550(a), the Trustee must show "that the transfer was avoided and that the defendant is an initial or subsequent transferee." *Citibank*, 12 F. 4th at 197 (citing COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021). The Trustee must also "allege the 'necessary vital statistics—the who, when, and how much—' of the purported transfers to establish an entity as a subsequent transferee of the funds." *BNP*, 594 B.R. at 195 (citations omitted). At the pleading stage this "does not require dollar-for-dollar 'accounting' of the exact funds at issue." *Id*.

In compliance with Rule 550(b)'s pleading requirements, the Trustee alleges that Defendant's predecessor, Dresdner Schweiz, was a shareholder in the Fairfield Funds and received subsequent transfers of stolen BLMIS Customer Property as redemptions of its equity interests. Am. Compl. ¶¶ 2, 3, 5, 25, 101, 112. The Trustee alleges that Dresdner Schweiz purposefully invested in and received redemption payments from Sentry and entered into subscription agreements, designating specific New York bank accounts to receive subsequent transfers. *Id.* ¶¶ 5, 10, 16, 19, 23; *see also* Am. Compl. ¶¶ 7, 24, 91, 99, 101, 104. The Trustee alleges the necessary vital statistics of the Transfers he seeks to recover in exhibits to the Amended Complaint. Am. Compl. Ex. D. The Trustee also alleges that the transfers from BLMIS to Fairfield Sentry are avoidable. Am. Compl. at ¶¶ 97, 98. Therefore, the Trustee has met his pleading burden under Section 550.

Additionally, nothing on the face of the Amended Complaint supports an argument that Defendant, or its predecessor, was a mere conduit. The Trustee, for example, does not allege that Defendant lacked control over the subsequent transfers.

### B.    MERE CONDUIT IS AN AFFIRMATIVE DEFENSE AND DEFENDANT'S BURDEN TO PLEAD

Regardless of how it frames the argument in its Motion, what Defendant really wants is to have this Court shift the burden of pleading its affirmative defense to the Trustee and require the Trustee to plead facts necessary to support Defendant's affirmative defense, by making the elements of the defense an element of the Trustee's Section 550 claim. *See* Mot. at 22–23. Defendant is wrong, negating a mere conduit affirmative defense is not an element of a 550 claim and it is the Defendant's burden to plead that defense.

The Second Circuit was clear in *Citibank*, 12 F. 4th 171, that the party seeking the protection of an affirmative defense has the burden to plead that defense. Defendant is asking this Court to disregard *Citibank,* contort the pleading obligations under Section 550(b), find it is the Trustee's burden to negate the mere conduit affirmative defense at the pleadings stage, and dismiss the Amended Complaint. *See* Mot. at 23. Defendant argues that in order to plead it was a transferee, the Trustee must show not only receipt of the transferred funds, but also that Defendant held the legal right of control and use of those transferred funds. Mot. at 21–23. Defendant is wrong on the legal standard and ignores the Trustee's allegations that it—not its unnamed clients—submitted the redemption requests and Defendant—not its unnamed clients—was a subsequent transferee of stolen Customer Property. Now, it is Defendant's burden to establish the fact-intensive mere conduit defense. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection."); *In re Palm Beach Finance Partners, L.P.*, 488 B.R. 758, 771 (Bankr. S.D. Fla. 2013) ("The defendant's burden of pleading an affirmative defense means that it will rarely be appropriate for a court to grant a motion to dismiss based upon an affirmative defense.

This is especially true when the affirmative defense is comprised of factually intensive elements. . . .").

### C.   MERE CONDUIT DEFENSE IS INAPPROPRIATE ON MOTION TO DISMISS

Because of the many factual questions inherent in resolving this defense, courts rarely address this issue at the pleading stage. *See, e.g.*, *In re Glob. Crossing, Ltd.*, 385 B.R. 52, 57, n.1 (Bankr. S.D.N.Y. 2008) (denying a defendant's motion to dismiss and noting that the assertion of the mere conduit defense is "better addressed on summary judgment."); *Picard v. Miller* (*In re BLMIS*), 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (same); *Sarachek v. Schochet* (*In re Agriprocessors*), Adv. Pro. No. 10-09190, 2012 WL 4059897, at *10 (Bankr. N.D. Iowa Sept. 14, 2012) (denying motions to dismiss and for summary judgment to provide "[a]dditional time . . . necessary to further develop the factual record"). It is not surprising that the vast majority of the cases cited by Defendant address the issue at the summary judgment stage or later.[5] In fact, depending on the facts at issue, the conduit defense may not even be resolvable through summary judgment. *See, e.g.*, *In re CVEO Corp.*, 327 B.R. 210, 217-18 (Bankr. D. Del. 2005) (holding that genuine issues of material fact preclude entry of summary judgment on mere conduit defense to preference claims).

---

[5] *See In re Finley*, 130 F.3d 52 (2d Cir. 1997) (ruling on motion for summary judgment); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021) (same); *Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re The Warnaco Group, Inc.)*, Nos. 01 B 41643 (RLB), 01-03628 (RLB), 03 Civ. 4201 (DAB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) (affirming decision granting partial summary judgment); *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988) (same); (*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1 (S.D.N.Y. 2007) (ruling on motion for summary judgment); *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716 (6th Cir. 2017) (ruling on an appeal following two trials and multiple opinions, including a ruling on a motion for summary judgment); *Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F3d 42 (10th Cir. 1994) (appeal of judgment); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996) (ruling on motion for judgment as a matter of law following the close of the trustee's case); *Menotte v. United States (In re Custom Contractors, LLC)*, 745 F.3d 1342 (11th Cir. 2014) (ruling on an appeal after trial); *Nordberg v. Société Générale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196 (11th Cir. 1988) (same).

The scarcity of caselaw applying the mere conduit defense at the pleading stage makes sense, as the defense would need to be apparent on the face of the complaint—which was the case in very few of the citations upon which Defendant relies.[6]  Those cases differ greatly from the situation here, where the Amended Complaint alleges specifically that Dresdner Schweiz received the Customer Property at issue.

### D.    EVEN IF ANALYSIS OF THE MERE CONDUIT DEFENSE IS APPROPRIATE, DEFENDANT'S MOTION FAILS TO ALLEGE ANY FACTS IN SUPPORT OF THE DEFENSE

To establish a mere conduit defense, Defendant must show that it or its predecessor lacked dominion and control over all transactions at issue. *See Christy v. Alexander & Alexander of N.Y. Inc.* (*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*), 130 F.3d 52, 57–58 (2d Cir. 1997) ("*In re Finley*") (summary judgment decision); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49–52 (Bankr. S.D.N.Y. 2021) (summary judgment decision), (aff'd, No. 1:21-cv-08678-JPO (S.D.N.Y. Sept. 30, 2022)).

"Mere" means "mere." While asking this Court to rule preemptively, even Defendant, through the cases it cites, recognizes that the extent to which a recipient has legal rights to the redemption payments is a relevant consideration. *Bear, Stearns Securities Corp. v. Gredd* (*In re Manhattan Investment Fund Ltd.*), 397 B.R. 1, 17–19 (S.D.N.Y. 2007) (if a recipient is subject to some restrictions on the use of the funds, it is not a conduit) (summary judgment decision); *In re*

---

[6] *See, e.g.*, *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) (dismissing complaint because the mere conduit defense was apparent on the face of complaint alleging that defendant CFO took money from the debtor and transferred it to debtor's principal but did not allege defendant received any of the subject payments, benefitted from them, or was the intended beneficiary); *In re Mervyn's Holdings, LLC*, 426 B.R. 96 (Bankr. D. Del. 2010) (dismissing defendant bank in multi-defendant action that acted as the trustee for an identified trust holding mortgage pass-through certificates, loans, and liens generated in connection with the sale of the debtor). Defendant also cites to *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008) and *In re Lyondell Chem. Co.*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014).  However, *Super Vision* is a non-bankruptcy case alleging RICO claims and *Lyondell* arose out of leverage buyout payments. Moreover, in both cases, unlike the case here, the complaints established the mere conduit defense on their face.

*Enron*, 361 B.R. at 48 (summary judgment determining whether entity was mere conduit required resolution of whether it had legal title to the payments); *Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*), 2016 WL 1069303, at *1, 17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant was not a conduit where transfers were received without restriction into bank account in her name). The question of Defendant's dominion and control will turn on information possessed by Defendant, including: (i) the specific requirements of any agreements among the Defendant, the transferor, and the purported ultimate recipients; (ii) communications related to the transfers; (iii) how and whether the Defendant received fees; and (iv) the relationship between the transferor and the Defendant, and between the Defendant and the alleged ultimate recipients.

Defendant's Motion fails to even allege that it received the funds on behalf of any "private and business clients" or identify anyone for whom they claim to have acted as a conduit and for which transfers. *See, e.g.*, *In re Finley*, 130 F.3d at 58–59 (engaging in a detailed analysis of the relationship between the defendant and the supposed ultimate recipient of the funds in order to resolve the mere conduit issue); *Keller*, 634 B.R. at 51–52 (similar). Defendant merely notes that the Amended Complaint "fails . . . to allege additional facts suggesting that Dresdner Schweiz held legal title to any money received from Fairfield Sentry or acted with discretion for using transfers it received, instead acknowledging that Dresdner Schweiz provided 'wealth management services' on behalf of private and business clients." Mot. at 33. However, Defendant fails to affirmatively allege that it was acting on behalf of any such "customers" or "clients" or identify the supposed ultimate recipients of the funds. *Id.*

At this stage, only Defendant knows what it did with the stolen Customer Property after it received it from Sentry. If Defendant intends to assert the mere conduit defense, the Trustee has

the right to know who was on the receiving end of the purported conduit and explore Defendant's relationship with its purported end-user clients. Consideration of this defense clearly must wait for another day.

## VII. THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE IS SIMILARLY IMPROPER FOR A MOTION TO DISMISS

Just as Defendant's fact-dependent mere conduit arguments are inappropriate for determination at the pleading stage, so too is Defendant's assertion of the 550(b) good faith affirmative defense. Although it is not the Trustee's burden to plead good faith, as expressly found by the Second Circuit in *Citibank*, Defendant nevertheless attempts to make an unsupportable argument that its good faith is established as a matter of law on the facts of the Amended Complaint. *See* Mot. at 35–39.

This Court should reject Defendant's attempt to raise this affirmative defense on a motion to dismiss, just as it and the District Court recently did. *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11; *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11; *Picard v. ABN Ireland (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (McMahon, J.) ("*ABN Ireland*"). Like Defendant here, the defendants in *Banque Syz*, *First Gulf*, and *ABN Ireland* argued that the complaint allegations established their good faith defense. *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11; *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11; *ABN Ireland*, 2022 WL 1304589, at *3. Both this Court and the District Court rejected that argument and concluded that the good faith affirmative defense could not be resolved at the pleading stage. *ABN Ireland*, 2022 WL 1304589, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11 ("The burden of proving good faith falls squarely on [the defendants] and this Court cannot make a determination on [the defendants'] affirmative defense until after a fact-

31

intensive inquiry."); *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11 (same).

As discussed above, by their very nature, affirmative defenses are fact-driven and require the presentation and analysis of evidence. *United Teamster Fund v. MagnaCare Admin. Servs.*, LLC, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).  In its rejection of the defendants' good faith argument, the District Court in *ABN Ireland* highlighted the fact that the good faith inquiry notice standard is "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees." *ABN Ireland*, 2022 WL 1304589, at *3 (quoting *Citibank*, 12 F.4th at 194).

As such, even if this Court were to consider Defendant's fact-intensive affirmative defense, there are myriad unknown facts critical to opposing a good faith defense, which the Trustee must be given the opportunity to uncover through discovery. *See ABN Ireland*, 2022 WL 1304589, at *3. ("The Trustee rightfully points out that such a fact-based determination 'can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.'"); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process.").

Tellingly, Defendant fails to cite to a single case in which a court has granted a motion to dismiss at the pleading stage based on a good faith defense. Defendant clearly cannot prevail on

the good faith affirmative defense on a motion to dismiss unless it can show that the Trustee is unable to prove any set of facts to support his claim. *See McKenna*, 386 F.3d at 436; *Merkin I*, 440 B.R. at 256 (characterizing the assertion of an affirmative defense at the pleading stage as a "limited exception to the general rule"). Defendant does not meet that standard here.

Arguments concerning value are also inappropriate for a motion to dismiss barring highly unusual circumstances, which Defendant has failed to show exist here. *See, e.g.*, *Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial."). Indeed, this Court has previously concluded that "[a]s to whether the Defendant 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." *Id.*

## VIII.    <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, should the Court conclude it is necessary and appropriate, the Trustee respectfully requests the opportunity to conduct jurisdictional discovery regarding Dresdner Schweiz and LGT Swiss.

Dated: November 14, 2022
         New York, New York

Of Counsel:

**Baker & Hostetler LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
Dean D. Hunt
Marie L. Carlisle

*/s/ David J. Sheehan*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Torello Calvani

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*