**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01278 (CGM) |
| v. | |
| ZEPHYROS LIMITED, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**ZEPHYROS LIMITED'S MOTION TO DISMISS**

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Attorneys for Zephyros Limited*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

    I.     THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE ZEPHYROS
          REDEMPTIONS WERE BLMIS PROPERTY ...................................................... 2

          A.     The Trustee's Opposition Confirms That It Is Implausible That the
                Zephyros Redemptions Include BLMIS Customer Property ...................... 2

          B.     The Trustee Does Not Adequately Allege That the Funds
                Transferred Originated with BLMIS. ......................................................... 4

    II.    THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE
          BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE
          DEFENSE. ...................................................................................................... 7

    III.   SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS. ............ 10

    IV.   THE STATUTE OF LIMITATIONS BARS THE TRUSTEE FROM
          RECOVERING THE NEWLY PLEADED TRANSFER IN THE AC. .............. 16

CONCLUSION ....................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ................................................................... 6

*Ajinomoto Co. v. CJ CheilJedang Corp.*,
    2021 WL 4430200 (S.D.N.Y. Sept. 27, 2021) ....................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...……………………………………………………………………………..2

*Banque Cantonale Vaudoise*,
    2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ........................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 2

*DeLollis v. Friedberg, Smith & Co.*,
    600 F. App'x 792 (2d Cir. 2015) ............................................................................ 9

*Gilmore v. Rivera*,
    2014 WL 1998227 (S.D.N.Y. May 14, 2014) ....................................................... 10

*Goldberg v. Halbert*,
    2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2011) ................................................ 17

*In re Chaus Litig.*,
    801 F. Supp. 1257 (S.D.N.Y. 1992) ...................................................................... 17

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................... 8

*In re Fabrikant & Sons*,
    480 B.R. 480 (S.D.N.Y. 2012) .............................................................................. 19

*In re Juliet Homes, LP*,
    2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) ........................................... 17

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................... 13

*In re Parmalat Sec. Litig.*,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of Am.
    Corp.*, 309 F. App'x 536 (2d Cir. 2009) ......................................................... 15, 16

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) ............................................................................................ 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Jones v. Bock*,
549 U.S. 199 (2007) ................................................................................................ 7, 10

*Mallis v. Bankers Tr. Co.*,
717 F.2d 683 (2d Cir. 1983) ......................................................................................... 15

*Mayle v. Felix*,
545 U.S. 644 (2005) ....................................................................................................... 17

*Mazzaro de Abreu v. Bank of Am. Corp.*,
525 F. Supp. 2d 381 (S.D.N.Y. 2007) .......................................................................... 13

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
175 F. Supp. 2d 489 (S.D.N.Y. 2000) ........................................................................... 13

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) .......................................................................................... 7, 8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ............................................................................................ 3

*Picard v. ABN Amro Bank N.A.*,
2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ..................................................... 9, 10

*Picard v. ABN Ireland*,
2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...................................................................... 8

*Picard v. Banque SYZ & Co., SA*,
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ................................................... 7, 11

*Picard v. BNP Paribas S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................. 5, 16, 17, 18

*Picard v. Bordier & Cie*,
2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ...................................................... 11

*Picard v. Charles Ellerin Irrevocable Tr.*,
2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ........................................................ 5

*Picard v. Cohmad*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................................................. 12

*Picard v. Cohmad*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) .......................................................................... 3, 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Picard v. Fairfield Inv. Fund*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................. 12, 16, 18

*Picard v. Kingate*,
  2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .......................................................... 12

*Picard v. Merkin*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................................................................. 7, 9

*Picard v. Merkin*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................................ passim

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................................. 5, 11

*Picard v. Multi-Strategy, et al.*,
  No. 1:22-cv-06512 (S.D.N.Y. Nov. 3, 2022) ..................................................................... 2, 10

*Picard v. Peter Madoff*,
  468 B.R. 620 (Bankr. S.D.N.Y. 2012) .................................................................... 16, 17, 18

*Picard v. Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................................... 2, 3, 5, 6

*Rosner v. Bank of China*,
  349 F. App'x 637 (2d Cir. 2009) ........................................................................................... 13

*Ryan v. Hunton & Williams*,
  2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ...................................................................... 13

*Sapia v. Home Box Off., Inc.*,
  2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ......................................................................... 3

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
  39 F. Supp. 3d 461 (S.D.N.Y. 2014) ....................................................................................... 8

## <u>STATUTES</u>

11 U.S.C. § 546(e) ..................................................................................................... passim

11 U.S.C. § 550 ......................................................................................................... 8, 10

11 U.S.C. § 550(b) ................................................................................................... 1, 9, 10

11 U.S.C. § 550(f) ............................................................................................................ 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................. 9

Fed. R. Civ. P. 15 ........................................................................................................... 16

Fed. R. Civ. P. 8 ........................................................................................................ 4, 19

Fed. R. Civ. P. 8(a) ......................................................................................................... 5

## PRELIMINARY STATEMENT

The Opposition fails to show how the AC's[1] limited factual allegations could satisfy even

the lax pleading standards the Trustee advocates.  The AC fails to plausibly allege that the

Redemptions were BLMIS property while at the same time alleging facts establishing

Zephyros's affirmative defenses under Sections 550(b) and 546(e) on the face of the AC.  This

mandates the AC's dismissal in its entirety.  Further, the Trustee's newly alleged $22 million

transfer claim should be barred based on the statute of limitations.  The Trustee's efforts to

defend these indefensible allegations all fall flat:

- The Trustee concedes that the AC must plead the "necessary vital statistics" showing that the transfers Zephyros received originated with Madoff Securities.  (*See* Opp. at 6.)  There is simply no way of telling from the AC whether any one of the Zephyros transfers allegedly began with Madoff Securities or came from other funds that Rye received, such as other investors' money destined to be invested with Madoff that Rye simply "crossed" on their own books.  Given this, the AC does not plausibly plead that the transfers initiated with Madoff and must be dismissed.

- As for the good-faith defense, the Trustee does not contest that an affirmative defense can provide the basis for 12(b)(6) dismissal where the facts establishing the defense are evident from the complaint's face.  Nor does the Trustee challenge that Zephyros gave

---

[1] This Memorandum uses the following definitions: (i) "Complaint" means the Original Complaint filed by the Trustee in this action, ECF No. 1, *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (Bankr. S.D.N.Y. June 9, 2022) (cited herein as "Compl."); (ii) "AC" means the Amended Complaint filed by the Trustee in this action, ECF No. 124, *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (Bankr. S.D.N.Y. June 9, 2022) (cited herein as "AC"); (iii) "Motion" means Zephyro's *Memorandum of Law in Support of Defendants' Motion to Dismiss*, ECF No. 130, *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (cited herein as "Motion"); (iv) "Opposition" means the Opposition filed by the Trustee in this action, *Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint*, ECF No. 134, *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (cited herein as "Opp."); (v) "Zephyros" means Defendant Zephyros Limited; (vi) "Trustee" means Plaintiff Irving H. Picard; (vii) "BLMIS" means Bernard L. Madoff Investment Securities LLC; (viii) "Rye Select Funds" means collectively Rye Select Broad Market Fund LP (f/k/a American Masters Broad Market Fund, L.P.), Rye Select Broad Market Prime Fund LP (f/k/a American Masters Broad Market Prime Fund, L.P.), and Rye Portfolio Limited; (ix) "Rye" means Rye Portfolio Limited, which is the only fund that the Trustee alleges Zephyros received subsequent transfers from; (x) "Tremont" means Tremont Group Holdings, Inc. (f/k/a Tremont Capital Management, Inc. f/k/a Tremont Advisers, Inc. and, together with its affiliates, including Tremont Partners, Inc., "Tremont Partners"; (xi) "Tremont Complaint" means ECF No. 1 in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (cited herein as "Tremont Compl. ¶ __"); (xii) "Tremont Settlement" means, collectively, (a) the settlement agreement at ECF No. 17-1 and (b) the order at ECF No. 38-1, each as filed on the docket in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.); (xiii) "Redemption Payments" means payments Zephyros allegedly received in exchange for redeeming shares in Rye in the relevant time period, as identified in Ex. C of the AC (the "Redemption Payments").  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

1

"value" for the challenged transfers. The Trustee argues only that Zephyros's good faith is suspect based on speculation that Zephyros must have known Madoff was a fraud. But the Trustee fails to explain how such speculation, based entirely on impermissibly conclusory allegations, suffices to state a claim under *Iqbal*.[2]

- As for the section 546(e) defense, the Trustee argues that *Cohmad* bars subsequent transferees from invoking the safe harbor. After Zephyros filed its Motion, the District Court issued its decision affirming this Court's recent decisions barring the application of section 546(e) to subsequent transfers where the Trustee has alleged the initial transferee's actual knowledge.[3] Zephyros continues to maintain that this Court's ruling on section 546(e) is inconsistent with Second Circuit law and preserves all arguments presented in its Motion for appeal. (*See* Motion at 12–15.) But even if the initial transferee's knowledge were the correct inquiry, the Trustee's pleadings against Rye affirmatively allege that Rye (the initial transferee here) did *not* have actual knowledge of the Madoff Ponzi scheme.

- The Trustee also makes no credible argument that he can recover a previously unalleged transfer added to his claims at this late date, given that it predates the transfers alleged in his original Complaint. Consequently, the Trustee should be prohibited from seeking to recover this newly alleged transfer because the claim to recover it violates the Section 550(f) statute of limitations.

## ARGUMENT

## I.    THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE ZEPHYROS REDEMPTIONS WERE BLMIS PROPERTY.

### A.    The Trustee's Opposition Confirms That It Is Implausible That the Zephyros Redemptions Include BLMIS Customer Property.

As the Supreme Court has instructed, a complaint "must be dismissed" if the plaintiff has "not nudged the [] claims across the line from conceivable to plausible."[4] The mere "possibility" that the Trustee may have a claim against Zephyros is not enough.[5]

While the Trustee is correct that at this stage a tracing analysis is not required (Opp. at

---

[2] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility").

[3] *Picard v. Multi-Strategy, et al.*, No. 1:22-cv-06512 (S.D.N.Y. Nov. 3, 2022).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").

[5] *See Twombly*, 550 U.S. at 557.

6)—the Trustee must nevertheless allege precisely which transfers to Zephyros include customer

property, and from which initial transfer each subsequent transfer originates.[6]  The Trustee does

not even attempt to argue that he has satisfied (or even could satisfy) this basic requirement.

Instead, the Trustee fights a straw man, arguing that Zephyros demands a "dollar-for-dollar

accounting." (*Id*.)  But this is a gross overstatement, as even a casual review of Zephyros's

motion would reveal.  (Motion at 7–8 ("The Trustee must allege facts that support the inference

that the funds at issue originated with . . . BLMIS, and contain the 'necessary vital statistics'—

the 'who, when, and how much.'").)[7]

The Trustee also argues that he should be permitted discovery before his claims are

dismissed on this basis.  (Opp. at 8.)  While some courts have been willing to grant a trustee

"greater latitude" at the pleading stage (*id*.), that is only where the Trustee lacks access to

information he needs to plead his claims.[8]  That is not the case here.  The Tremont Settlement

Agreement noted that in "settl[ing] the dispute . . . the Trustee conducted a comprehensive

investigation . . . includ[ing] the review of all BLMIS-related transaction histories for the

Tremont Defendants . . . interviews of witnesses, account statements, correspondence, other

records, Bankruptcy Rule 2004 examinations and substantial review and analysis of records and

documents produced by the Tremont Defendants[.]"  (Tremont Settlement Agreement, Ex. A

¶ DD.)  The Trustee's access to these materials for more than a decade well positioned him to

---

[6] See *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013)
(affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs
necessarily have access, without discovery, to plan documents and reports that provide specific information from
which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17,
2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in
[p]laintiffs' possession").

[7] Quoting *Shapiro*, 542 B.R. at 119.

[8] *Picard v. Cohmad*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).

map out the flow of funds from BLMIS to Zephyros.  (*See id.*)  Nor is there any need to wait for

expert opinion, as the Trustee contends.  (*See* Opp. at 9.)  To the extent that expert opinion is

necessary for the Trustee to plead his claims as required by Rule 8, he could have and should

have—before filing his complaints—retained such experts and had them evaluate the

information the Trustee obtained from Rye.  The Court should not reward his dilatory conduct by

allowing his defective claims to proceed.

> **B.     The Trustee Does Not Adequately Allege That the Funds Transferred
> Originated with BLMIS.**

The Opposition misstates the standard the Trustee must satisfy to plead that Zephyros

received BLMIS customer property.  Courts determining whether payments to a subsequent

transferee "originated" from a debtor examine (i) the close temporal proximity between the

alleged initial and subsequent transfers, (ii) whether corresponding amounts of money were

transferred, and (iii) whether general details surrounding the transfers imply linkage.[9]  The AC

addresses none of those factors.  The Trustee's argument confirms as much, pointing solely to

(i) boilerplate allegations that some unspecified portion of the initial transfers made their way to

Zephyros at some unspecified point in time (Opp. at 6 (citing AC ¶¶ 2, 65-66, 75, 153-157)), and

(ii) the AC's voluminous Exhibit C, which does not show how *any* of the initial transfers ended

up with Zephyros (*id.* (citing Ex. C)).

Rather than try to explain how the Trustee's square-peg pleading fits into the standard's

round hole, the Trustee suggests that all he must allege is "sufficient facts to show the relevant

---

[9] *See, e.g.*, *Picard v. Merkin*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*") (concluding that linkage was sufficiently implied where "several subsequent transfers took place contemporaneously or shortly after an initial transfer," including, for example, within 22 days, 15 days, 18 days, and 3 days of the initial transfers); *Cohmad*, 454 B.R. at 341 (finding the allegations sufficient to support linkage where the trustee "allege[d] that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond[ed] to the amounts paid by BLMIS to [initial transferees] and, subsequently, to [subsequent transferees]").

pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." (Opp. at 6.)[10]  But in his next breath, the Trustee concedes that this alone is not enough; the Complaint must allege the "necessary vital statistics—the who, when, and how much" outlined in *Shapiro*, quoted again in *BNP Paribas*, and further affirmed by this Court in *Multi-Strategy*.[11] (*Id.*)

The Trustee mischaracterizes Zephyros as arguing that *Shapiro* has somehow changed the pleading standard.  (Opp. at 7–8.)  But the parties agree on the legal standard and that *Shapiro* governs here.  (*See id.*; Motion at 7–8.)  Zephyros never argued that the Trustee needed to "perform a tracing analysis" or present a "dollar-for-dollar accounting of the exact funds at issue," as *Shapiro* warned was unnecessary under Rule 8(a), nor did Zephyros argue that any amount of commingling of funds would necessarily defeat the Trustee's claim.  (Opp. at 6; *see* Motion at 7–8.)  Rather, courts uniformly agree on what *Shapiro* requires: the "necessary vital statistics" that the Trustee has failed to allege here.[12]

In *Shapiro*, the court found that the complaint "lack[ed] the vital statistics necessary to support a subsequent transfer claim" because it did "not tie any initial transfer to any subsequent transfer or Subsequent Transferee," nor did it "plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they

---

[10] Citing *Picard v. Charles Ellerin Irrevocable Tr.*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) ("*Charles Ellerin*").

[11] *Shapiro*, 542 B.R. at 119 (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"); *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*") ("[t]o plead a subsequent transfer claim, the Trustee must plead that the funds at issue originated with the debtor . . . [and] must allege the 'necessary vital statistics—the who, when, and how much–' of the purported transfers to establish an entity as a subsequent transferee of the funds"); *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 90 (Bankr. S.D.N.Y. 2022) ("[t]he plaintiff must allege the necessary vital statistics—the who, when, and how much—of the purported transfers to establish an entity as a subsequent transferee of the funds").

[12] *Shapiro*, 542 B.R. at 119.

made the subsequent transfers rather than simply keep the initial transfers for themselves."[13]

The Trustee baldly states in his Opposition that his "Amended Complaint clearly meets these

requirements" outlined in *Shapiro* (Opp. at 6), but as explained in the Motion, the conclusory

statements he cites do not satisfy his pleading burden.  (Motion at 7–8.)  The AC "does not tie

any initial transfer to any subsequent transfer or Subsequent Transferee"[14]; it merely lists

transfers from BLMIS to Rye, without tying those transfers to the payment of any redemption

request from Zephyros.  The unadorned conclusion that the subsequent transfers identified on

Exhibit C originated with BLMIS is insufficient and mandates dismissal.

The cases the Trustee cites on this point demonstrate that the allegations here are

insufficient under *Shapiro*.  (*See* Opp. at 6–9.)  In each of these cases, the complaints alleged

enough "vital statistics" about each initial transfer and each subsequent transfer to plausibly

imply a direct link between at least some of those transfers.  In *Merkin II*, for example, the

complaint included exhibits clearly showing that "several subsequent transfers took place

contemporaneously or shortly after an initial transfer . . . implying linkage."[15]  And in *In re

45 John Lofts, LLC*, the complaint similarly demonstrated contemporaneous initial transfers and

subsequent transfers to plausibly allege a link between them.[16]  The allegations in the Trustee's

AC against Zephyros fail to do this, and the AC must therefore be dismissed.

---

[13] *Id.*

[14] *Id.*

[15] *Merkin II*, 515 B.R. at 150.

[16] *45 John Lofts, LLC v. Meridian Cap. Grp. LLC*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) ("*In re 45 John Lofts, LLC*") (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing Complaint ¶¶ 60-69).

## II.    THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE DEFENSE.

While the Trustee makes much of the fact that affirmative defenses are the defendant's burden (*see* Opp. at 9–12), he does not and cannot contest that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint."[17]

The Trustee rests his argument primarily on the recent *Banque SYZ* opinion.  (Opp. at 9.) But in *Banque SYZ*, "the Complaint suggest[ed] that *Banque Syz* had access to information about BLMIS's fraud and failed to concern itself with such things."[18]  For instance, the Trustee argued that "Banque Syz'[s] expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS."[19]  Similarly, the complaint in *Merkin I* was rife with knowledge allegations absent here, including the defendants' receipt of account statements that "reflected hundreds of trades exercised at prices outside the daily range possible for those securities"[20] and that one of the defendants "had an unusually close business and social relationship with Madoff, including sitting together on the Board of Trustees of Yeshiva University, and, as a result, intimate access to BLMIS."[21]  Here, by contrast, there is no

---

[17] *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007).

[18] *Picard v. Banque SYZ & Co., SA*, 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*").

[19] *Id.* (citing *Banque SYZ* Complaint ¶ 42).

[20] *Picard v. Merkin*, 440 B.R. 243, 252–53 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

[21] *Id.* at 253.

allegation (not even a conclusory one) suggesting that Zephyros had any knowledge, actual or otherwise, of the Madoff fraud.  (*See generally* AC.)

The Opposition relies on *ABN Ireland* to argue that the good-faith affirmative defense is fact-driven and cannot be resolved in a motion to dismiss.  (Opp. at 10.)  But the District Court in *ABN Ireland* held only that the bankruptcy court's decision should be reversed because it was based on an outdated good-faith standard.[22]  The observation that the defendant's good-faith defense was not apparent on the face of the complaint was dicta; the court even acknowledged that the defense was "not appropriately framed for appellate review."[23]  The other cases the Trustee cites are no more relevant.  In *In re Dreier LLP*, the court held that the defendant had not established the good-faith defense because the "[c]omplaint does not contain allegations establishing good faith as a matter of law."[24]  Here, by contrast, the very allegations the Trustee seeks to incorporate into his AC establish Zephyros's good faith.  (*See* Motion at 10–11.)  And *United Teamster Fund* does not even address section 550 or the good-faith defense.[25]

The Trustee also criticizes Zephyros for relying on "cherry-picked allegations as to BLMIS's, Tremont's, and Fairfield's secrecy" to show that the AC pleads facts establishing that Zephyros could not have known of Madoff's fraud.  (Opp. at 11.)  But the dozen examples Zephyros cited in its Motion are allegations that the Trustee peppered repeatedly throughout his AC.  (*See* Motion at 10–11.)  He cannot disavow his own pleading now just because the AC and the allegedly incorporated Tremont Complaint, on their face, establish Zephyros's good-faith

---

[22] *Picard v. ABN Ireland*, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022).

[23] *Id.* at *4.

[24] *In re Dreier LLP*, 452 B.R. 391, 427 (Bankr. S.D.N.Y. 2011) ("Nevertheless, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.").

[25] *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) (citing *Pani*, 152 F.3d at 74).

defense. *See* 11 U.S.C. § 550(b).  The Trustee contends that he has plausibly pleaded that

Zephyros knew of Madoff's fraud because "Defendant was a hedge fund managed by

sophisticated parties capable of performing their own investigations and diligence on their

BLMIS investments[.]"  (Opp. at 12.)  But if this were enough to plead knowledge, then any

large financial institution—indeed, any large corporation or law firm—would be assumed to

have knowledge of virtually everything in the world, and it would dispense with the 550(b)

defense entirely.  Perhaps that is why numerous cases, including cases involving Madoff's fraud,

have found allegations such as these wanting.[26]

The Trustee fares no better with his argument that the question of "value" raises fact

issues not pleaded in the AC.  (Opp. at 12.)  As the *Merkin I* court explained, a litigant can

"plead itself out of court by unintentionally alleging facts (taken as true) that establish an

affirmative defense."[27]  (*See* Opp. at 11.)  The Trustee has done exactly that.  (Motion at 10–11.)

The AC alleges that the transfers at issue arose from "subscription agreements," and Zephyros

surrendered interests in Rye in exchange for redemption payments.  (AC ¶ 72.)  This is enough

as a matter of law to prove that Zephyros provided value when it received the alleged transfers at

issue.[28]  The Trustee also does not even address (let alone try to distinguish) Judge Bernstein's

decision in the related BLMIS case *ABN Amro*, where he expressly held on a Rule 12(b)(6)

---

[26] *See, e.g.*, *DeLollis v. Friedberg, Smith & Co.*, 600 F. App'x 792, 796 (2d Cir. 2015) (noting that "[n]umerous actions brought against auditors and investment advisors by victims of Madoff's fraud have been dismissed despite the presence of 'red flags,' which in hindsight arguably should have called attention to Madoff's illegal conduct").

[27] *Merkin I*, 440 B.R. at 256.

[28] *See Picard v. ABN Amro Bank N.A.*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) ("*ABN Amro*") ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

motion to dismiss that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).[29] That holding applies with equal force here.

In a last-ditch effort to avoid dismissal, the Trustee argues that he must be given an opportunity to pursue discovery of the facts related to this affirmative defense before the Court can dismiss. (Opp. at 12.) But that is not the law. So long as the Trustee has pleaded facts establishing Zephyros's section 550 defense, he is not entitled to discovery before dismissal.[30]

## III.    SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS.

The Trustee does not contest that section 546(e)'s elements are satisfied here. (*See* Opp. at 13–19.) He argues instead that Zephyros may not invoke the safe harbor at all because the AC sufficiently pleads *Rye's*—the alleged initial transferee's—knowledge of Madoff's fraud. As a result, the Trustee has not even attempted to show Zephyros's knowledge here. (*See id.*) While Zephyros acknowledges that the District Court recently held (after Zephyros filed its opening brief) in *Picard v. Multi-Strategy* that Section 546(e) does not bar claims against subsequent transferees where the complaint adequately pleads the alleged initial transferee's actual knowledge,[31] that holding is at odds with Second Circuit law for the reasons laid out in Zephyros's opening brief. (*See* Motion at 12–15.) But the Court need not reach that issue because the Trustee fails to plead even the initial transferee's—Rye's—actual knowledge, dooming his claim even under the District Court's *Multi-Strategy* decision.

---

[29] *See id.*

[30] *See, e.g.*, *Bock*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground[.]"); *Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

[31] *Picard v. Multi-Strategy, et al.*, No. 1:22-cv-06512 (S.D.N.Y. Nov. 3, 2022) (ECF No. 13).

Unlike the related cases in which this Court has rejected defendants' 546(e) arguments,[32] all of the subsequent transfers at issue here came from Rye. Whereas the Court has held that the Trustee sufficiently alleged actual knowledge against the Fairfield Funds (who were the initial transferees in the vast bulk of the related cases) and other initial transferees, the Trustee's pleadings against Rye expressly and repeatedly allege that Rye *did not* have actual knowledge of Madoff's Ponzi scheme.

The Trustee tries to deny this reality by arguing that the Tremont Complaint adequately alleges Rye's actual knowledge of the Madoff Ponzi scheme. (*See* Opp. at 19–24.) But even the allegations that the Trustee cherry-picked from the Tremont Complaint plead, at most, that Rye was on inquiry notice of Madoff's fraud. For example, those paragraphs assert that Rye was privy merely to "red flags" sufficient to "put [Rye] on inquiry notice that Madoff was committing fraud" (Tremont Complaint ¶ 159), failed to "properly monitor[]" the Madoff investments, and "should have questioned" them (*id*. ¶¶ 166, 203). Indeed, the Trustee concluded in the Tremont Complaint that "Tremont did not conduct any [] reasonable inquiry," "fail[ed] to confirm or independently question" aspects of the Madoff operation, and did not focus on "actually understanding what Madoff really was doing with that money." (*Id*. ¶¶ 169, 190, 195.) Such inquiry-notice pleading is insufficient to overcome the Section 546(e) safe harbor.[33]

Even in his Opposition, the Trustee characterizes Rye as "choosing to look away." (Opp. at 21.) But "looking away" from a fraud is not the same thing as having *actual* knowledge of the

---

[32] *See, e.g.*, *Multi-Strategy*, 641 B.R. at 95; *Banque SYZ*, 2022 WL 2135019, at *10; *Picard v. Bordier & Cie*, 2022 WL 2390556, at *5–6 (Bankr. S.D.N.Y. June 30, 2022); *Banque Cantonale Vaudoise*, 2022 WL 2761044, at *5–6 (Bankr. S.D.N.Y. July 14, 2022).

[33] *See, e.g.*, *Merkin II*, 515 B.R. at 140 (dismissing avoidance claims after finding that such red flags do not equate to actual knowledge).

fraud.[34]  In order "to have 'actual knowledge' of a piece of information, one must in fact be

aware of it."[35]  Blind reliance and actions taken to avoid knowledge, as the Trustee pleads in the

Tremont Complaint, are simply not enough.  Controlling case law makes clear that Rye's alleged

mental state—the avoidance of red flags and a strong suspicion of fraud—is not actual

knowledge.[36]  Nor is actual knowledge what a reasonably diligent person would have known in

the same position.[37]

To refute his own allegations that Rye did not have actual knowledge of the Madoff

Ponzi scheme, the Trustee attempts to couple his new allegations in the AC with the mutually

inconsistent allegations in the Tremont Complaint and declare that the hybrid pleads actual

knowledge.  (Opp. at 19–24.)  That argument falls flat for two reasons.  First, none of the cases

the Trustee cites rested solely on allegations that the initial transferee ignored suspicions, blindly

relied on Madoff, and actively avoided understanding Madoff's business, as the Trustee has

alleged here; instead each involved *actual* knowledge.[38]  But courts routinely conclude that

---

[34] *See Picard v. Cohmad*, 2013 WL 1609154, at *6 (S.D.N.Y. Apr. 15, 2013).

[35] *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020).

[36] See *Merkin II*, 515 B.R. at 140 (refusing to equate "strong suspicion" with "actual knowledge").

[37] *See Intel Corp.*, 140 S. Ct. at 776–77.

[38] *Picard v. Fairfield Inv. Fund*, 2021 WL 3477479, at *4–7 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*")
(the Trustee alleged that defendant Vijayvergiya "lied to the SEC to assist Madoff in covering up his fraud…. [and]
that Vijayvergiya joked in an email with a colleague about how Madoff was running a Ponzi scheme similar to that
of Bayou's. ¶ 198. [He also] attempt[ed] to liquidate his personal investment in Fairfield Sentry as Madoff's scheme
was unraveling in 2008. ¶ 313."); *id.* (the Trustee also alleged that defendant Tucker was quoted in an article
"published in MAR/Hedge and Barron's insinuating that Madoff was operating a Ponzi scheme. ¶ 132… [and] in
January 2006, Tucker lied to the SEC to protect Madoff during the SEC's investigation into BLMIS. ¶ 259" and
"that Tucker knew Madoff was operating a Ponzi scheme and purposefully withheld information from clients about
how similar BLMIS was to Bayou after Bayou's Ponzi scheme was exposed. ¶ 196."); *id.* (the Trustee alleged that
defendant Noel "conspired with Madoff to avoid SEC scrutiny by creating a Bermuda corporation rather than a U.S.
based one. ¶ 151."); *id.* (the Trustee also alleged that defendant Piedrahita "was allegedly lying to clients in order to
cover up the fraudulent activity exposed by the Barron's and MAR/Hedge articles. ¶¶ 136, 173" and "allegedly
admit[ted] that he has "always been concerned" about what was happing at BLMIS and … lied to the SEC to assist
Madoff in covering up his fraud[.]"); *Picard v. Kingate*, 2015 WL 4734749, at *13–15 (Bankr. S.D.N.Y. Aug. 11,
2015) (the Trustee alleged that, "[i]n a February 2008 email … [defendant] Grosso expressed his fear that PwC
might actually 'start to ask all sort [sic] of questions next time they visit Madoff.' (¶ 136) and that defendant Lazear
emailed Grosso the day after Madoff's arrest and "reminded Grosso that he had previously emailed Grosso 'all the

relying on red flags and reasonable suspicion, as the Trustee does here, is inadequate to plead

actual knowledge defeating a 546(e) defense.[39]  Second, to the extent the AC contradicts the

Tremont Complaint and alleges Rye's actual knowledge, the Trustee runs headlong into the

commonsense holding that a plaintiff may not "assert as fact two assertions that directly

contradict each other."[40]  The Trustee, through his incorporation by reference of the Tremont

Complaint, does not plead two different theories, as he contends; rather, he pleads two entirely

different sets of facts to demonstrate Tremont's knowledge of Madoff's fraud, a tactic courts

uniformly reject[41]:

| **Tremont Complaint** | **Amended Complaint** |
|---|---|
| The Rye Select Funds "should have questioned how Madoff's alleged trades could account for such a high percentage of the total volume traded on the exchanges of a particular stock."  ¶ 166. | "Given that Tremont knew BLMIS had "well in excess of $20 billion" in AUM by May 2003, and that according to Johnston it "monitored all trade activity," Tremont knew there was insufficient volume for dozens, if not hundreds of the trades Madoff purported to complete."  ¶ 99. |

details' to support his belief that BLMIS was a 'scam.' (¶ 134)"); *compare with Merkin II*, 515 B.R. at 140 (the court found that cited statements did "not imply that Merkin *actually believed* that BLMIS was a Ponzi scheme, and at most, indicated that he had a strong suspicion," that "the complaint [did not] allege that [Merkin] conducted an analysis other than maintaining a single folder containing documents and analyses relating to the lack of correlation between of BLMIS' performance and the performance of the S & P 500," and that "[i]nstead, the complaint painted a picture of someone who saw the red flags and ignored them," which the court found insufficient to show actual knowledge).

[39] *See Merkin II*, 515 B.R. at 140 (dismissing avoidance claims after finding that such red flags do not equate to actual knowledge); *see also Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) ("Even if [Bank of China] had reason to suspect that Siu Lap was laundering money, this does not mean that [Bank of China] had actual knowledge of the fraudulent scheme perpetrated by IFS and Siu Lap."); *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (explaining that while patterns of bank transfers and low balances gave rise to inferences of fraud, they at most indicated constructive knowledge of a fraudulent scheme); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (allegations of suspected fraudulent activity by an internal fraud investigation unit did not raise an inference of actual knowledge of a Ponzi scheme).

[40] *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).

[41] *See, e.g.*, *Ajinomoto Co. v. CJ CheilJedang Corp.*, 2021 WL 4430200, at *3 (S.D.N.Y. Sept. 27, 2021) ("Rule 8(d) does not give plaintiffs 'license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim.'") (emphasis in original); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) ("Internally conflicting factual assertions that constitute integral components of a claim must be distinguished from a permissible alternative statement embodying a theory of a whole sufficient claim.").

| **Tremont Complaint** | **Amended Complaint** |
|---|---|
| "[Tremont] had very little understanding as to how Madoff was able to capture the extraordinarily consistent returns from a traditionally low rate of return performance, pedestrian investment strategy." ¶ 152.<br><br>"This red flag would have and should have put a reasonable money manager on inquiry notice that Madoff may be illegitimately backdating trades, front-running, or capitalizing on inside information." ¶ 180. | "Tremont's senior management knew that the options trades were a central part of the SSC Strategy and were well aware of how the options trading for the strategy worked." ¶ 121. |
| "[Tremont] was provided only vague or inconsistent descriptions by Madoff of the split-strike conversion strategy." ¶ 89.<br><br>"This "knowledge" was merely a recitation of the unverified information provided to them by Madoff himself." ¶ 190. | "Tremont's senior management knew that the options trades were a central part of the SSC Strategy and were well aware of how the options trading for the strategy worked." ¶ 121. |
| "Tremont, as well as the other Defendants, essentially looked the other way when it came to Madoff." ¶ 154.<br><br>"…there were over 600 highly questionable and impossible information on purported trades that Tremont missed or failed to question as part of their highly touted due diligence procedures." ¶ 183. | "Tremont knew from the monthly analytic summaries its senior management prepared based on these BLMIS documents that the positions and prices BLMIS reported differed from prices Bloomberg reported." ¶ 98. |
| Tremont's "main concern was feeding 'a lot of money' to Madoff, as opposed to actually understanding what Madoff was really doing with that money." ¶ 195. | "Tremont knew that Madoff could not be trading options over-the-counter ('OTC') as he represented, in light of (i) the CUSIP numbers on BLMIS's trade confirmations, which indicated the options were traded on an exchange, and (ii) the lack of counterparty information that should be on all OTC trade confirmations." ¶ 122. |
| "Had Tremont employed any [financial tools], they would have determined that Madoff's uncanny consistency with little risk was likely a fraud." ¶ 164. | "Rye Portfolio Limited received each of the Initial Transfers with actual knowledge of fraud at BLMIS, or, at a minimum, while aware of suspicious facts that would have led Rye Portfolio Limited to inquire further into the BLMIS fraud." ¶ 155. |
| "Analyzing the Rye Fund's statements should have caused sophisticated hedge fund managers and advisors like Tremont … to question how the Madoff customers' | "Rye Portfolio Limited received each of the Initial Transfers with actual knowledge of fraud at BLMIS, or, at a minimum, while aware of suspicious facts that would have led |

14

| **Tremont Complaint** | **Amended Complaint** |
|---|---|
| transactions could have exceeded the total volume listed as traded on a particular day." ¶ 165. | Rye Portfolio Limited to inquire further into the BLMIS fraud." ¶ 155. |
| "Tremont and their management were aware of many of the troubling questions surrounding Madoff well before Madoff's fraud were revealed.  For example … an email from a foreign client of Tremont … set forth a number of suspicious facts concerning Madoff."  ¶ 158. | "Rye Portfolio Limited received each of the Initial Transfers with actual knowledge of fraud at BLMIS, or, at a minimum, while aware of suspicious facts that would have led Rye Portfolio Limited to inquire further into the BLMIS fraud."  ¶ 155. |

Either Rye had actual knowledge or it did not; the Trustee cannot have it both ways.

In a last-ditch attempt to show that he has pleaded Rye's actual knowledge, the Trustee argues Kingate Global Fund, Ltd.'s knowledge should be imputed to Rye.  (Opp. at 25.)  The Trustee, however, includes no allegations in the AC, nor in the incorporated pleadings, about Kingate's supposed knowledge.  (*See generally* AC; Tremont Complaint.)  And he also fails to plead any basis to impute Kingate's knowledge to Rye.  The Trustee relies on case law supporting the imputation of knowledge by and between joint venture partners.[42]  But the Trustee does not allege that Kingate and Tremont were joint venturers; he alleges that they were "co-managers" or "co-agents."  (*See, e.g.*, AC ¶ 148 ("Kingate Global was co-managed by Kingate Management and Tremont affiliate Tremont (Bermuda) Ltd."); *id.* ¶ 150 ("Tremont Bermuda and Kingate Management were co-agents to Kingate Global").)  Whereas knowledge of one joint venturer is ordinarily imputed to the other as a matter of law,[43] that is not the case with co-agents.[44]  In *In re Parmalat*, for example, the court found that co-auditors were not joint venturers because they did not "become as one"; there was no free flow of information between

---

[42] *See In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 590 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d Cir. 2009).

[43] *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 689 n.9 (2d Cir. 1983) ("It is a basic tenet of the law of agency that the knowledge of an agent, or for that matter a partner or joint venturer, is imputed to the principal.").

[44] *In re Parmalat*, 501 F. Supp. 2d at 590–91.

them, unfettered access to the other's projects, or mutual control over each other and the alleged enterprise.[45]  Likewise here, the AC is bereft of allegations that Kingate and Rye had a free-flowing information exchange or exercised any control or agency on behalf of each other.  As such, it fails to plead sufficient facts to impute knowledge from one to the other.

## IV.    THE STATUTE OF LIMITATIONS BARS THE TRUSTEE FROM RECOVERING THE NEWLY PLEADED TRANSFER IN THE AC.

The Trustee does not dispute that he missed the deadline to assert a new fraudulent transfer claim by nearly a decade.  He argues instead that the new transfer claim relates back to the original Complaint because all of the transfers involve the same Ponzi scheme, and that the original Complaint sufficiently put Zephyros on notice that the Trustee may pursue recovery of additional transfers.  (Opp. 25–30.)  The Trustee's relation-back argument relies on *Fairfield Investment Fund*[46] and *Picard v. Peter Madoff*[47] for the general notion that a plaintiff can add new fraudulent transfer claims after the statute of limitations expired if the new claims arise from the same Ponzi scheme.  But this argument ignores this Court's instruction in *BNP Paribas* that a generalized connection alone cannot establish the requisite "common 'core of operative facts'"[48] that would satisfy Rule 15's relation-back requirements.  Here, the newly pleaded transfer predates all the originally pleaded transfers by two years and nearly doubles the amount of any other alleged transfers.  Therefore, the newly pleaded transfer does not arise out of "a common 'core of operative facts'" uniting it with the originally asserted transfers and cannot relate back.[49]

---

[45] *Id.*

[46] 2021 WL 3477479, at *12.

[47] 468 B.R. 620 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*").

[48] *BNP Paribas*, 594 B.R. at 210.

[49] *Fairfield Inv. Fund*, 2021 WL 3477479, at *12.

The Trustee is wrong in arguing that he need establish only that the newly alleged transfer was part of the "same course of conduct" as the transfers pleaded in the original Complaint.  (Opp. at 26.)  We know this is wrong because the Court in *BNP Paribas* said so: "relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct."[50]  As explained in the Motion, the Supreme Court has instead instructed that relation back requires "a common 'core of operative facts' uniting the original and newly asserted claims."  (Motion at 20) (citing *Mayle v. Felix*, 545 U.S. 644, 659 (2005)).  The Trustee has not even attempted to show the requisite common core of operative facts here.

The Trustee cannot even establish that the newly allegedly transfer was part of "the same course of conduct."[51]  (*See generally* AC.)  There are no allegations at all about the transfers, other than their participants and dates.  (*See generally id.*; *see also id.*, Ex. C.)  The Trustee retorts that the defenses concerning both the new and original transfers are "likely [to] be the same . . . or similar," but that, too, is false.  (Opp. at 26.)  The newly alleged transfer predates the originally pleaded transfers by two years, and thus arises from different facts and circumstances as the transfers alleged in the original complaint.  (*See* AC, Ex. C.)  None of the cases the Trustee cites found that a later-filed claim could relate back to an earlier complaint under circumstances such as these.[52]

---

[50] *BNP Paribas*, 594 B.R. at 210; *see Peter Madoff*, 468 B.R. at 633; *In re Juliet Homes, LP*, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011).

[51] *See Peter Madoff*, 468 B.R. at 633.

[52] *See Goldberg v. Halbert*, 2021 WL 5774217, at *10–*11 (Bankr. D. Del. Dec. 6, 2011) (newly alleged recovery related back to *identical* transfers alleged in the original pleading); *In re Juliet Homes*, 2011 WL 6817928, at *7 (newly alleged transfers related back where they were all made within the same time frame as transfers alleged in original complaint); *In re Chaus Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (holding that the new allegations of fraudulent manipulation of accounts receivable related back where original complaint described same underlying facts including "questionable" financial reporting).

The Trustee also argues that the newly pleaded transfer relates back to the original complaint because his initial pleading "put the defendant on notice that additional transfers may be pursued at a later date."[53]  (Opp. at 28.)  Here, the original Complaint merely stated that the Trustee "reserves the right to . . . seek recovery of any additional transfers."  (Compl. ¶ 60.)  That conclusory allegation provides no guidance concerning the transferor or transferee of any such transfers, or any other details of future transfers the Trustee might seek, to put Zephyros on notice that it may be haled into court years later on this newly alleged claim.  The Trustee did not even allege that additional transfers made to Zephyros are customer property.  (*See generally* Compl.)

This case is thus like *BNP Paribas*, where Judge Bernstein distinguished *Picard v. Peter Madoff*[54] on the grounds that the prior pleading provided "reasonable notice that the Trustee was uncovering additional transfers that he would seek to recover"[55] and declined to find that the pleading before him related back because the prior complaint merely reserved the right to "supplement the information on . . . any additional transfers, and . . . seek recovery of such additional transfers."[56]  *Fairfield Investment Fund* is not to the contrary.  The Court there found that there was proper notice because the defendants were informed in the original pleading that transfers made from Madoff to specific entities were customer property and could be avoidable and/or recoverable.[57]  (*See* Opp. at 29.)  That is simply not the case here.  As the District Court has held, "overly general original pleadings do not provide defendants with adequate notice as to

---

[53] *Fairfield Inv. Fund*, 2021 WL 3477479, at *12.

[54] 468 B.R. 620 (Bankr. S.D.N.Y. 2012).

[55] *BNP Paribas*, 594 B.R. at 211.

[56] *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-1576, Complaint (Bankr. S.D.N.Y. May 4, 2012) ¶ 114 (ECF No. 1).

[57] *Fairfield Inv. Fund*, 2021 WL 3477479, at *12.

18

what facts they are to defend against, and, therefore, such general allegations cannot be hooks on which to hang later amended pleadings."[58]

## CONCLUSION

The AC fails to plead an essential element of the subsequent transfer claims and only suggests the mere probability that the money Zephyros received from the feeder funds originated with Madoff, rather than the plausibility Rule 8 requires.  The AC also sets forth on its face all the facts necessary to establish Zephyros's good-faith and safe harbor defenses.  But even if the AC is not dismissed, the new $22 million transfer should be stricken as time-barred.

Dated:  November 14, 2022
New York, New York

Respectfully Submitted,

O'MELVENY & MYERS LLP

By:  */s/ William J. Sushon*
       William J. Sushon
       Daniel S. Shamah
       Kayla N. Haran
       7 Times Square
       New York, New York 10036
       Telephone: (212) 326-2000
       Facsimile: (212) 326-2061
       wsushon@omm.com
       dshamah@omm.com
       kharan@omm.com

*Attorneys for Zephyros Limited*

---

[58] *In re Fabrikant & Sons*, 480 B.R. 480, 493 (S.D.N.Y. 2012) (holding that the relation back doctrine did not apply).