PILLSBURY WINTHROP SHAW PITTMAN LLP
Eric Fishman
Andrew Troop
Rahman Connelly
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
eric.fishman@pillsburylaw.com
andrew.troop@pillsburylaw.com
rahman.connelly@pillsburylaw.com

*Counsel to Falcon Private Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02923 (CGM) |
| Plaintiff, | |
| v. | |
| FALCON PRIVATE BANK LTD. (f/k/a AIG Privat Bank AG), | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FALCON PRIVATE BANK'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

Page

RESERVATION OF RIGHTS ................................................................................. 1

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 4

I.      The Trustee Has Not Made a *Prima Facie* Showing That Falcon is Subject to Personal Jurisdiction in the United States ............................................................... 4

      A.      The Trustee Has Not Established that Falcon Directed Funds to be Invested in the United States .................................................................... 4

      B.      The Alleged Foreseeability of the Fairfield Funds' Investment with BLMIS Does Not Establish Personal Jurisdiction Over Falcon ........................... 6

      C.      The Forum Selection Clause in Fairfield Sentry's Subscription Agreements is Irrelevant .................................................................... 8

      D.      Falcon's Alleged Use of a New York Correspondent Bank Account Does Not Establish Personal Jurisdiction ...................................................... 8

      E.      Contacts Between AIG Global and Fairfield Greenwich Group Are Irrelevant ................................................................................. 10

      F.      Jurisdictional Discovery Is Not Warranted ........................................... 11

II.     The Section 546(e) Safe Harbor Bars the Trustee's Claims ............................ 12

III.    The Complaint Does Not Plausibly Allege That Falcon is a Subsequent Transferee of BLMIS Customer Property ...................................................... 14

CONCLUSION ..................................................................................................... 16

TABLE OF AUTHORITIES

Page(s)

Cases

*Agostini v. Felton*,
    521 U.S. 203 (1997)..................................................................................................13

*Aozora Bank Ltd. v. SIPC*,
    480 B.R. 117 (S.D.N.Y. 2011)...................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................15

*Berdeaux v. OneCoin Ltd.*,
    No. 19-CV-4074 (VEC), 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)..................9

*Bonano v. Doe*,
    628 F. App'x 25 (2d Cir. 2015) ...............................................................................13

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986).....................................................................................10

*Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*,
    No. 11-CV-1529 (KMW), 2016 WL 2944685 (S.D.N.Y. May 19, 2016) ................6

*ESI, Inc. v. Coastal Corp.*,
    61 F.Supp. 2d 35 (S.D.N.Y. 1999) ..........................................................................10

*Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y., Aug. 6, 2018) ...............................................8

*Fiore v. Walden*,
    688 F.3d 558 (9th Cir. 2012) .....................................................................................7

*In re 45 John Lofts, LLC*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019).....................................................................14

*In re Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015)........................................................................11

*In re Arcapita Bank B.S.C.(C)*,
    640 B.R. 604 (S.D.N.Y. 2022)...................................................................................9

*In re LATAM Airlines Grp. S.A.*,
    No. 20-11254 (JLG), 2022 WL 2206829 (Bankr. S.D.N.Y. June 18, 2022) ...........................13

*In re N. Sea Brent Crude Oil Futures Litig.*,
    No. 13-MD-02475 (ALC), 2017 WL 2535731 (S.D.N.Y. June 8, 2017), *aff'd sub
    nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019) ................5, 10, 11

*In re Richards*,
    642 B.R. 777 (B.A.P. 6th Cir. 2022).......................................................................................13

*Kelley as Tr. of PCI Liquidating Tr. v. Westford Special Situations Master Fund, L.P.*,
    No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020)..............................................14

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ..................11

*Law v. Siegel*,
    571 U.S. 415 (2014)................................................................................................................13

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018).......................................................................................8

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)....................................................................................................9

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) . (Opp. .) ...................................................................6, 7

*Picard v. Charles Ellerin Rev. Tr.*,
    2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..............................................................15

*Picard v. Merkin*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014).................................................14, 15

*Picard v. Multi-Strategy Fund Ltd.*,
    No. 22-CV-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)....................................12, 13

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)...............................................................................14, 15

*Russul Corp. v. Zim American Integrated Shipping Services Co.*,
    No. 06 Civ. 0037, 2009 WL 3247141 (S.D.N.Y. Oct. 5, 2009) ..............................................13

*Sanchez v. Aviva Life & Annuity Co.*,
    No. CIV. S-09-1454 FCD/DAD, 2009 WL 10694223 (E.D. Cal. Nov. 18, 2009).................16

*Sealed Appellant 1 v. Sealed Appellee 1*,
    625 F. App'x 628 (5th Cir. 2015) .............................................................................................6

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Sec.),*
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..........................3, 12, 13

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.),*
    337 B.R. 791 (Bankr. S.D.N.Y. 2005)....................................................................................12

*Silverman v. K.E.R.U. Realty Corp.,*
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................................................................14

*Spetner v. Palestine Inv. Bank,*
    495 F. Supp. 3d 96 (E.D.N.Y. 2020) .......................................................................................9

*Walden v. Fiore,*
    571 U.S. 277 (2014)...............................................................................................................6, 7

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016)...................................................................................................5, 6

## Statutes and Codes

Bankruptcy Code
    Section 546(e) .....................................................................................................................3, 12, 13
    Section 548(a)(1)(A).....................................................................................................................12

## Rules and Regulations

Federal Rule of Civil Procedure
    Rule 8...............................................................................................................................................15

Defendant Falcon Private Bank ("Falcon"), by and through its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss [Docket No. 118], with prejudice, the Complaint [Docket No. 1] (the "Complaint" or "Compl.") of plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and in response to the Trustee's Memorandum of Law in Opposition to Defendant's Motion to Dismiss [Docket No. 122] (the "Opp.") and the declaration of Matthew K. Cowherd in support thereof [Docket No. 123] (the "Cowherd Decl.").[1]

## RESERVATION OF RIGHTS

For the avoidance of doubt, Falcon expressly denies that it is subject to personal jurisdiction in the United States on the Trustee's claim in this action or otherwise, and lack of personal jurisdiction is the first basis on which the Falcon requests the Complaint be dismissed. Falcon's alternative bases for dismissal in this reply are addressed to the sufficiency of the pleading and do not constitute a defense on the merits and shall not be construed as implicit consent to this Court's jurisdiction.

## PRELIMINARY STATEMENT

Falcon demonstrated, in its opening brief, that the Complaint does not make a *prima facie* showing of personal jurisdiction. The Trustee's opposition, which adds a host of brand new jurisdictional allegations, does not correct that deficiency. It does just the opposite.

The Trustee's principal jurisdictional theory is that Falcon "purposely availed itself of the laws and protection of the United States" by "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma." (Compl. ¶ 6.) However, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Memorandum of Law in Support of Falcon Private Bank's Motion to Dismiss the Complaint* [Docket No. 119] (the "Mem.").

exhibits attached to the Cowherd Declaration show that Fairfield Sentry shares were in fact transferred to Falcon on the secondary market from another Swiss bank, Bank Julius Baer & Co Ltd., and that Falcon was not required to make any payment to Fairfield Sentry on account of those shares.  In other words, the Trustee's opposition demonstrates that Falcon, a Swiss bank, received custody of shares in a BVI company from another Swiss bank and did not actually "direct[ ] funds to be invested" anywhere, let-alone with BLMIS.  This cannot possibly amount to a "contact" with the United States.

The Trustee's other jurisdictional theories are also deficient. The Trustee speculates that a U.S. correspondent or intermediary bank account may have been used to facilitate the redemption payments allegedly received by Falcon, but he offers no support for that conclusory allegation and one of his own exhibits appears to contradict it.  Exhibit 23 to the Cowherd Declaration, which is a confirmation slip related to a July 1, 2007 redemption request, suggests that Falcon received its redemption payments at "Citco Bank Nederland NV Dublin Branch."  Citco Bank Nederland NV Dublin Branch is, to state the obvious, not located in the United States.

The Trustee also points to meetings between Fairfield Greenwich Group and AIG Global, a former affiliate of Falcon, that allegedly took place in New York.  However, he makes no effort to show, nor has he alleged sufficient facts from which it can be plausibly inferred, that AIG Global was acting as Falcon's agent for purposes of these meetings or that there is any basis to ignore the corporate separateness of AIG Global and Falcon.  He does not even allege that Falcon was aware that the meetings took place.  AIG Global's alleged jurisdictional contacts cannot be imputed to

Falcon, and they are irrelevant. The Complaint should therefore be dismissed for lack of personal jurisdiction.[2]

If the Complaint is not dismissed for lack of personal jurisdiction, it should be dismissed because, as shown in Falcon's opening brief, the relevant initial transfers are barred from avoidance under section 546(e) of the Bankruptcy Code. The Trustee does not dispute that the initial transfers satisfy the elements of section 546(e), but he contends that the so-called "actual knowledge" exception created by the District Court in *Cohmad* bars Falcon from raising the safe harbor as a defense. *Cohmad*'s actual knowledge exception is contrary to subsequent appellate authority, which holds that when Congress has enumerated express exceptions to a general prohibition, courts are not free to create additional unenumerated exceptions. *Cohmad* runs afoul of that precedent and it should thus not be applied.

Finally, as demonstrated in Falcon's opening brief, the facts pled by the Trustee do not create a plausible inference that Falcon is a subsequent transferee of BLMIS customer property. The Trustee's only response is that this is a "fact-based, tracing argument inappropriate on a motion to dismiss." But that misses the point. It is not Falcon's burden to prove that it did not receive customer property. It is the Trustee's burden to demonstrate more than a sheer possibility that Falcon is a subsequent transferee by pleading facts sufficient to state a claim to relief that is plausible on its face. As the Trustee has not carried that burden, his Complaint should be dismissed with prejudice.

---

[2] The Trustee contends that subjecting Falcon to jurisdiction in the United States would not impose an undue burden on Falcon and cites to prior decisions in which this Court found that other subsequent transferee defendants were "not burdened by this litigation" because they had "actively participated . . . for over ten years." (Opp. at 19 (citing cases).) To be perfectly clear, neither Falcon nor its counsel has actively participated in this litigation, and there would be no basis for the Court to make that factual finding here. In the ten years that this litigation has been pending, Falcon has drafted a total of two substantive motions—a motion to withdraw the reference [*see* Docket No. 10] and the current motion to dismiss—and signed on to a few omnibus briefs prepared by other similarly-situated defendants. Falcon either contested, or expressly reserved the right to contest, personal jurisdiction in each of those filings.

**ARGUMENT**

I.     **The Trustee Has Not Made a *Prima Facie* Showing That Falcon is Subject to Personal Jurisdiction in the United States**

The Trustee alleges that Falcon is subject to personal jurisdiction in the United States because (a) Falcon invested funds with Fairfield Sentry and Fairfield Sigma with the expectation that Fairfield Sentry and Fairfield Sigma would turn around and invest those funds with BLMIS in New York; (b) Falcon entered into a subscription agreement with Fairfield Sentry that had a New York forum selection clause; (c) Falcon supposedly used New York bank accounts in connection with its Fairfield investments; and (d) Falcon's former affiliate, AIG Global, met and had communications with Fairfield Greenwich Group in New York. Many of these allegations are not found in the Complaint but were raised for the first time in the Trustee's opposition brief. Regardless, none of them are sufficient to make a *prima facie* showing of personal jurisdiction.

A.     **The Trustee Has Not Established that Falcon Directed Funds to be Invested in the United States**

The Complaint alleges that Falcon is subject to personal jurisdiction in the United States because it "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma." (Compl. ¶ 6.) The exhibits attached to the Cowherd Declaration belie that assertion. Exhibit 5, which the Trustee refers to as a "Sentry short-form subscription agreement," does not reflect a "subscription" at all. It reflects the transfer of 316.58 already-subscribed Fairfield Sentry shares on the secondary market from Bank Julius Baer & Co Ltd., another Swiss bank, to Falcon, and it says nothing about Falcon making any payment on account of the share transfer. To the contrary, on the first page, "N/A" is written over a provision regarding the payment of subscription funds to Fairfield Sentry. Exhibits 6 and 7 are the same. In each of them, the word "purchase" is crossed out and replaced with "receive," as follows: Falcon "agreed to ~~purchase~~ receive" the specified number of shares. These exhibits therefore contradict

the Trustee's assertion that Falcon "direct[ed] funds to be invested" in the United States. (Compl.

¶ 6.)[3]  They show that Falcon, a Swiss bank, received custody of shares in a BVI company from

another Swiss bank.  These facts do not support personal jurisdiction in the United States.  *See*

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (personal jurisdiciton

must be based on "contacts that the 'defendant himself' creates with the forum").

The only other subscription document offered by the Trustee is a subscription agreement

for 225.99 Fairfield Sentry shares, dated March 7, 2007, which is attached as Exhibit 8 to the

Cowherd Declaration.  However, that subscription agreement does not bear Falcon's name, and

Falcon did not execute it.  Falcon has no record of a subscription for 225.99 shares on March 7,

2007.  Moreover, Exhibit 8 does not indicate that any money was sent to Fairfield Sentry.  To the

contrary, section 30(a), entitled "Amount of Subscription," simply says "225.99 shares," and the

following is crossed out: "U.S. $_____."

The Trustee has thus not made a *prima facie* showing that Falcon "knowingly direct[ed]

funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma."

(Compl. ¶ 6).  Personal jurisdiction cannot be premised on a conclusory allegation in the Complaint

that is directly contradicted by the Trustee's own supporting exhibits.  *See In re N. Sea Brent Crude*

*Oil Futures Litig.*, No. 13-MD-02475 (ALC), 2017 WL 2535731, at *5 (S.D.N.Y. June 8, 2017),

*aff'd sub nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019) (granting

motion to dismiss for lack of personal jurisdiction because although "the Court must credit

Plaintiffs' averment of jurisdictional facts, the materials on which Plaintiffs rely for this

---

[3]  The Confidential Private Placement Memorandum for Fairfield Sentry, attached as Exhibit 10 to the Cowherd
Declaration, indicates that Fairfield Sentry shares could be sold or transferred to a third party with "the Fund's
consent," which could "only be withheld if the transfer would result in regulatory, pecuniary, legal, taxation or
material administrative disadvantages for the Fund or its shareholders as a whole."  (Cowherd Decl., Exh. 10, p.
26.)

proposition do not support it"); *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW), 2016 WL 2944685, at *1 (S.D.N.Y. May 19, 2016) (denying plaintiff's motion for default judgment where its "arguments contradicted . . . the Second Circuit's prior holding that Dorchester had made a prima facie showing of personal jurisdiction"); *see also Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (plaintiff failed to state prima facie case of personal jurisdiction where proffered evidence was inadmissible and was also contradicted by affidavits submitted by the defendants).

> **B.    The Alleged Foreseeability of the Fairfield Funds' Investment with BLMIS Does Not Establish Personal Jurisdiction Over Falcon**

In any event, as demonstrated in Falcon's opening brief, the Trustee's allegation that Falcon purposefully availed itself of the benefits and protections of New York law by investing in the Fairfield Funds, which invested most of their assets with BLMIS, shows, at most, that the Fairfield Funds had a forum contact with New York.  (Mem. at 9-10.)  It does not establish that Falcon did.  Personal jurisdiction is not measured by third-party contacts, but on contacts "the defendant *himself* creates."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

In response, the Trustee contends that jurisdiction in this case is controlled by *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("BLI").  (Opp. at 11.) There, Judge Lifland treated Fairfield Sentry as essentially a mere conduit for its shareholders, rather than as a separate legal entity, and concluded that a foreign entity's mere decision to invest with Fairfield Sentry in the BVI was sufficient to conclude that the foreign entity had purposefully availed itself of conducting business in the United States.  But the Supreme Court subsequently held that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Walden*, 571 U.S. at 286; *see also Aozora Bank Ltd. v. SIPC*, 480 B.R. 117

(S.D.N.Y. 2011) ("It was the Feeder Funds who entrusted assets to BLMIS, and not the appellants."). *Walden* abrogated the reasoning used in *BLI*.

In *Walden*, the Ninth Circuit was reversed for improperly basing personal jurisdiction on allegations that the defendant "must have known and intended that his actions" would have an impact in Nevada and that he performed his actions "with the purpose of having its consequences felt by someone in Las Vegas." *Fiore v. Walden*, 688 F.3d 558, 578–579, 580 (9th Cir. 2012). The Ninth Circuit's theory was almost word-for-word identical to the theory espoused in *BLI*. *See BLI*, 480 B.R. at 517 (holding that BLI "purposefully availed itself of the benefits and protections of New York Laws by knowing, intending and contemplating that the majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York"). The Supreme Court rejected that theory outright on appeal. *Walden*, 571 U.S. at 289 ("look[ing] to petitioner's knowledge of respondents' 'strong forum connections' . . . impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."). The Trustee's theory, premised on *BLI*, contradicts *Walden* by arguing that knowledge of the Fairfield Funds' contacts with New York constitutes purposeful availment by Falcon.

In addition, the facts set forth in BLI are distinguishable. There, Judge Lifland concluded that "BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517. That logic does not apply where, as here, according to the Trustee's own exhibits, Fairfield Sentry shares were transferred to Falcon on the secondary market from another Swiss financial institution, and Falcon was not required to invest any funds in Fairfield Sentry. (*See* Cowherd Decl., Exhs. 5-7.)

C.      **The Forum Selection Clause in Fairfield Sentry's Subscription Agreements is Irrelevant**

The Trustee points to New York choice of law and choice of forum provisions included in Fairfield Sentry's standard subscription agreement as a basis to assert personal jurisdiction over Falcon. (Opp. at 14-15.) But the subscription agreements concern the acts of subscribing and investing in Fairfield Sentry. In *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y., Aug. 6, 2018), Judge Bernstein held that the Fairfield Sentry subscription agreements are "irrelevant" to claims like the Trustee's, which seek to claw back redemption payments. The relevance to this proceeding is even more attenuated because neither BLMIS nor the Trustee is a party to the Fairfield Sentry subscription agreements. *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) (declining to consider forum selection clause in jurisdictional analysis concerning claim by non-party to the contract when forum selection clause does not govern the claim).

D.      **Falcon's Alleged Use of a New York Correspondent Bank Account Does Not Establish Personal Jurisdiction**

Although appearing nowhere in his Complaint, the Trustee's opposition alleges, "upon information and belief," that Falcon used a U.S. bank account at Chase Manhattan Bank to receive Fairfield Sentry redemption payments. (Opp. at 15.) As support, the Trustee cites Exhibits 5-7 to the Cowherd declaration (*id.*), but those exhibits say nothing about use of a U.S. bank account for redemptions. Exhibits 5-7, which purport to reflect transfers of Fairfield Sentry shares from third-party banks to Falcon (and are dated in 1999 and 2000, years before the alleged redemptions were paid), simply list Chase Manhattan Bank as the "remitting bank."[4] In contrast, Exhibit 23, which purports to reflect a redemption payment made on or around July 1, 2007, appears to indicate that

---

[4] Exhibit 8, a purported subscription agreement, provides that the instructions for making redemption payments are set forth on an "Attached List," but the Trustee did not include that list as part of his submission.

the redemption payment was paid to "Citco Bank Nederland NV Dublin Branch." This sets Falcon apart from the defendants in the subsequent transferee cases cited by the Trustee, who "[chose] to use a United States bank account" to receive redemption payments. (Opp. at 15 (citing cases).)

The Trustee also alleges, for the first time in his opposition, that redemption payments were sent to Falcon "from an HSBC Bank correspondent bank account in New York" that belonged to Fairfield Sentry. (Opp. at 6.)[5] To the extent that this is even true, it does not constitute purposeful availment because Falcon had no control over how Fairfield Sentry operated. It was not, for example, a term in any of the contracts appended to the Cowherd Declaration, that redemption payments would come from a U.S. bank account. This fact distinguishes this case from *In re Arcapita Bank B.S.C.(C)*, 640 B.R. 604 (S.D.N.Y. 2022), where it was the defendant who "designated correspondent bank accounts in New York." *Id.* at 617-18.

The mere use of a correspondent bank account to facilitate an international monetary transaction is not a sufficient basis to confer jurisdiction over a foreign defendant unless that "use was purposeful and not coincidental or adventitious." *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 67 (S.D.N.Y. 2016). The element of purposefulness is not satisfied unless it was the defendant that "directed the use of [the] New York correspondent account." *Berdeaux v. OneCoin Ltd.*, No. 19-CV-4074 (VEC), 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (holding that it was insufficient to that defendant "was aware that a New York account would be used" where there was no allegation that he "directed the use of [it]"); *see also Spetner v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 112 (E.D.N.Y. 2020) (no purposeful availment where defendant "may have expected, or even known for a fact, that AJIB

---

[5] The Trustee also asserts that Falcon "sent its Sentry subscription payments to . . . an HSBC Bank correspondent bank account in New York," (Opp. at 6), but as noted above the Trustee's exhibits reflect that Fairfield Sentry shares were transferred to Falcon on the secondary market and that Falcon did not make any payments to Fairfield Sentry in connection with those transactions.

would need to settle the wire transfers in New York" because "knowing and expecting are not the same as directing and controlling").

The Trustee does not allege that Falcon directed Fairfield Sentry to use a U.S. correspondent bank account to make payments. He therefore has not shown or sufficiently alleged purposeful availment. Fairfield Sentry's (not Falcon's) alleged use of an HSBC bank account in New York is irrelevant.

### E.    Contacts Between AIG Global and Fairfield Greenwich Group Are Irrelevant

The Trustee alleges, for the first time in his opposition brief, that Falcon is subject to personal jurisdiction in New York because a former affiliate, AIG Global, supposedly communicated and had in-person meetings with Fairfield Greenwich Group in New York. (Opp. at 6.) Falcon and AIG Global are distinct entities. AIG Global's alleged jurisdictional contacts are thus irrelevant.

A plaintiff may only establish "personal jurisdiction over a foreign [entity] based upon the presence of its [affiliate]" by piercing the corporate veil or by showing that the affiliate was acting as an agent for the foreign defendant. *See ESI, Inc. v. Coastal Corp.,* 61 F.Supp. 2d 35, 51 (S.D.N.Y. 1999). Piercing the corporate veil for jurisdictional purposes is appropriate only when "the activities of the [domestic affiliate] show a disregard for the separate corporate existence of the [foreign defendant]," *see id.*, and prevailing on an agency theory of personal jurisdiction requires the plaintiff to "demonstrate that the foreign defendant exerted control over the domestic entity, among other factors." *See In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-MD-02475 (ALC), 2017 WL 2535731, at *8 (S.D.N.Y. June 8, 2017), *aff'd sub nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (while courts should "focus[ ] on the realities of the relationship in question rather

10

than the formalities of agency law ... some control is necessary to establish agency for jurisdictional purposes").

The Trustee does not make the required showing.  He alleges that Falcon and AIG Global "had synergy" because they "were two of three primary operating entities comprising AIG's Global Investment Group" and Falcon's clients supposedly had access to hedge funds sponsored by AIG Global (Opp. at 4, 6).  However, these supposed connections are irrelevant absent any allegation that Falcon controlled AIG Global or directed AIG Global to meet with representatives of Fairfield Greenwich Group.  *Cf. In re N. Sea Brent Crude Oil Futures Litig.*, 784 F. App'x at *9 (granting motion to dismiss for lack of personal jurisdiction where "Plaintiffs discuss[ed] the ways in which STASCO and STUSCO are 'operated as part of one overall entity in crude oil trading' but [did] not present facts that support an allegation that STASCO controlled STUSCO or any other domestic Shell Trading affiliate or that these entities disregarded corporate formalities"); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (website touting "global reach of a family of companies" insufficient where corporate formalities observed).

## F.    Jurisdictional Discovery Is Not Warranted

The Trustee asserts that if the Court finds that he has not yet made a *prima facie* showing of personal jurisdiction, he should be granted jurisdictional discovery.  (Opp. at 20.)  Jurisdictional discovery is not warranted because the Trustee has not demonstrated why he needs it.  He does not say what information he would seek in discovery or even indicate that there is any relevant information that is not already available to him.  Jurisdictional discovery is not warranted in these circumstances.  *Cf.*, *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction,

or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction.").

## II.    The Section 546(e) Safe Harbor Bars the Trustee's Claims

In its opening brief, Falcon established that the Trustee's subsequent transferee claims against Falcon are barred by section 546(e) because the alleged initial transfers to which they relate were settlement payments made by a stockbroker (BLMIS) to a financial institution (the Fairfield Funds, as customers of Citco Bank), in connection with a securities contract (the BLMIS account documents).  (Mem. 13-15.)  The Trustee does not dispute any of this.  Instead, the Trustee argues that Fairfield Sentry's alleged "actual knowledge" of the Madoff Ponzi scheme precludes Falcon from raising section 546(e) as a defense.  *See Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("Cohmad").

*Cohmad*'s so-called "actual knowledge" exception is contrary to subsequent appellate authority, and it should not be applied.  Congress considered whether there should be any exceptions to the safe harbor in section 546(e) and it included just one: intentional fraudulent transfer claims asserted under section 548(a)(1)(A) of the Bankruptcy Code, which requires proof that the *transferor* had actual fraudulent intent.  *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant").  In contrast, *Cohmad* purports to make application of the safe harbor hinge on the mental state of the initial *transferee*.  *See Picard v. Multi-Strategy Fund Ltd.*, No. 22-CV-06502, 2022 WL 16647767, at *3 (S.D.N.Y. Nov. 3, 2022) (any initial transferee who "knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments or transfers in connection with a security agreement, meaning that Section 546(e) could not apply").

12

Following *Cohmad*, the Supreme Court held that when the Bankruptcy Code expressly enumerates exceptions to a general prohibition, courts are not free to create additional unenumerated exceptions. *See Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The [Bankruptcy] Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."); *see also In re Richards*, 642 B.R. 777, 787 (B.A.P. 6th Cir. 2022) ("When Congress has explicitly enumerated certain exceptions to a general prohibition, additional exceptions are not to be implied."); *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2206829, at *23 (Bankr. S.D.N.Y. June 18, 2022) (same). Although no court has expressly considered the continuing viability of the judge-made "actual knowledge" exception, Falcon respectfully submits that it should no longer be applied in light of these subsequently rendered appellate court decisions.

The Trustee does not meaningfully respond to any of these points. Instead, he simply claims that the law of the case doctrine bars Falcon from making them because Falcon did not appeal from *Cohmad*. The law of the case doctrine does not apply when there has been a change in governing law, and in any event, it is a discretionary doctrine that does not limit a court's power to reconsider its own decisions prior to final judgment. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997); *Russul Corp. v. Zim American Integrated Shipping Services Co.*, No. 06 Civ. 0037, 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009); *Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015).[6]

---

[6] Finally, to the extent that *Cohmad* remains good law, it does not foreclose Falcon from demonstrating that section 546(e) nevertheless applies because the initial transfers were made in connection with securities contracts between the Fairfield Funds and Falcon that governed the redemption payments Falcon allegedly received. *See Cohmad*, 2013 WL 1609154, at * 9 (noting that a transfer from BLMIS to a feeder fund might be deemed to be "in connection with" a securities contract between the feeder fund and its investors); *Picard v. Multi-Strategy Fund Ltd.*, No. 22-CV-06502, 2022 WL 16647767, at *3-4 (S.D.N.Y. Nov. 3, 2022) (same). Falcon reserves all rights to show that the initial transfers at issue are protected from avoidance under that framework because they were also made in connection with, *inter alia*, securities contracts between Fairfield Sentry and its investors.

## III.    The Complaint Does Not Plausibly Allege That Falcon is a Subsequent Transferee of BLMIS Customer Property

As demonstrated in Falcon's opening brief (*see* Mem. at 17-21), the Complaint does not plausibly allege that Falcon is a subsequent transferee of BLMIS customer property because it does not "tie any initial transfer to any subsequent transfer or Subsequent Transferee." (*See* Mem. at 18 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).) The Trustee responds by contending that he need not "tie each subsequent transfer . . . to a specific initial transfer" and accuses Falcon of "attempt[ing] to argue for a new [pleading burden]." (Opp. at 27.) In the Trustee's view, it is sufficient for him to simply recite the dates and amounts of the alleged initial transfers and the dates and amounts of the alleged subsequent transfers. (Opp. at 26.)

The cases cited by the Trustee do not support such a lax pleading standard. To the contrary, in each of them, circumstances such as a close temporal proximity between the initial transfer and the alleged subsequent transfer or matching dollar amounts created a plausible inference of a "linkage." *See, e.g.*, *Picard v. Merkin*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*"); *Silverman v. K.E.R.U. Realty Corp.*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (transfers by initial transferees "were preceded by fraudulent transfers of funds from [debtor] *in amounts sufficient to cover the [subsequent] transfers*"); *In re 45 John Lofts, LLC*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that $29.4 million was deposited into paying agent's account and then disbursed to the defendants on the same day or the next day).[7] These

---

[7] The Trustee also cites several decisions issued on a motion for summary judgment. Those decisions do not address the Trustee's pleading burden and are accordingly not relevant. *See, e.g.*, *Kelley as Tr. of PCI Liquidating Tr. v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (ECT/KMM), 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying defendant's motion for summary judgment where plaintiff had introduced expert testimony

14

linkages were sufficient to satisfy Federal Rule of Civil Procedure 8 because they plausibly "tie[d] [the] initial transfer to [the] subsequent transfer." *Shapiro*, 542 B.R. at 119.

The Trustee's Complaint contains no factual allegations that would support a plausible linkage between any initial transfers and the subsequent transfers allegedly received by Falcon. There is no close temporal proximity – for example, approximately eight months elapsed between the date of the most recent initial transfer from BLMIS to Sentry in July 2003 and the date on which Falcon received the alleged $38 million from Sentry on March 18, 2004. *Cf. Merkin*, 515 B.R. at 150-51 (concluding that a linkage could be inferred where the subsequent transfers took place within 22 days of the initial transfers). The dollar amounts do not match either. As detailed in Falcon's opening brief, Sentry received a total of only $120 million in initial transfers from BLMIS prior to March 2004. (*See* Mem. at 20.) Between the date of the most recent of those transfers (July 2003) and the date on which the $38 million payment to Falcon was made, Sentry transferred more than *$526 million* to other recipients. (*Id.*) This leads to the inescapable conclusion that Sentry had at least $406 million of funds that did not originate from BLMIS.

The Trustee writes this off as a "fact-based, tracing argument inappropriate on a motion to dismiss" (Opp. at 28), but that is a mischaracterization. It is not Falcon's burden to disprove that the funds it received can be traced to BLMIS. Rather, it is the Trustee's burden to allege "more than a sheer possibility" that Falcon is a subsequent transferee by pleading facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts highlighted in Falcon's opening motion, all of which came directly from the Trustee's own pleadings, demonstrate that there is no plausible

---

on tracing); *Picard v. Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) (denying summary judgment motion because there was "genuine issue of material fact" as to whether defendant had received "fictitious profits originating from BLMIS").

connection between the initial transfers and the alleged subsequent transfers received by Falcon. Regardless, even if it is possible that there is a connection, it is equally plausible there is no connection.  Where conduct is equally consistent with innocent behavior, a complaint does not state a plausible claim.  *Iqbal*, 556 U.S. at 679; *see also Sanchez v. Aviva Life & Annuity Co.*, No. CIV. S-09-1454 FCD/DAD, 2009 WL 10694223, at *4 (E.D. Cal. Nov. 18, 2009) (dismissing claim that company paid "kickbacks" and aided Ponzi scheme where payments were "equally consistent with an obvious alternative explanation" that company "simply loaned or advanced operating funds to its sales agent") (omitting quotes).  The Trustee's Complaint should accordingly be dismissed.

## CONCLUSION

For the foregoing reasons, Falcon respectfully requests entry of an order (a) dismissing the Trustee's Complaint in its entirety and (b) granting such additional relief as may be warranted under the circumstances.

Dated: November 14, 2022           PILLSBURY WINTHROP SHAW
New York, NY                    PITTMAN LLP

                                  By:  /s/ Andrew Troop
                                      Eric Fishman
                                      Andrew Troop
                                      Rahman Connelly
                                      31 West 52nd Street
                                      New York, NY 10019
                                      Telephone: (212) 858-1000
                                      eric.fishman@pillsburylaw.com
                                      andrew.troop@pillsburylaw.com
                                      rahman.connelly@pillsburylaw.com

                                      *Counsel to Falcon Private Bank*