**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>MISTRAL (SPC),<br><br>    Defendant. | Adv. Pro. No. 12-01273 (CGM) |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MISTRAL (SPC)'S MOTION TO DISMISS**

          William J. Sushon
         Daniel S. Shamah
         Kayla N. Haran
         O'Melveny & Myers LLP
         7 Times Square
         New York, New York 10036
         Telephone: (212) 326-2000

         *Attorneys for Mistral (SPC)*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE MISTRAL REDEMPTIONS WERE BLMIS PROPERTY ...................................................... 2

        A.    The Trustee's Opposition Confirms That It Is Implausible That the Mistral Redemptions Include BLMIS Customer Property. ........................ 2

        B.    The Trustee Does Not Adequately Allege That the Funds Transferred Originated with BLMIS. ........................................................... 3

    II.    THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE DEFENSE. ........................................................................................................... 6

CONCLUSION ............................................................................................................................ 10

i

## TABLE OF AUTHORITIES

Page

**CASES**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ............................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)………………………………………………………………………..2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 2

*DeLollis v. Friedberg, Smith & Co.*,
   600 F. App'x 792 (2d Cir. 2015) ........................................................................................ 9

*Gilmore v. Rivera*,
   2014 WL 1998227 (S.D.N.Y. May 14, 2014) ................................................................. 10

*In re Allou Distribs., Inc.*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ................................................................................... 6

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................................... 8

*Jones v. Bock*,
   549 U.S. 199 (2007) ....................................................................................................... 6, 9

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ............................................................................................ 6, 8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ............................................................................................... 2

*Picard v. ABN Ireland*,
   2022 WL 1304589 (S.D.N.Y. May 2, 2022) ..................................................................... 8

*Picard v. Banque SYZ & Co., SA*,
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ....................................................... 7

*Picard v. BNP Paribas S.A.*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................................... 4

*Picard v. Charles Ellerin Irrevocable Tr.*,
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ......................................................... 4

*Picard v. Cohmad*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........................................................................... 3, 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Picard v. Merkin*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................................................................. 7, 9

*Picard v. Merkin*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................................. 4, 6

*Picard v. Multi-Strategy Fund, Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................................... 4

*Picard v. Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................... 2, 3, 4, 5

*Sapia v. Home Box Off., Inc.*,
  2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ..................................................................... 2

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ..................... 7

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
  39 F. Supp. 3d 461 (S.D.N.Y. 2014) ................................................................................... 8

**STATUTES**

11 U.S.C. § 550 .......................................................................................................................... 8, 9

11 U.S.C. § 550(b) ................................................................................................................. 1, 8, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 9

Fed. R. Civ. P. 8 ...................................................................................................................... 3, 10

Fed. R. Civ. P. 8(a) ........................................................................................................................ 5

## PRELIMINARY STATEMENT

The Opposition fails to show how the AC's[1] limited factual allegations could satisfy even the lax pleading standards the Trustee advocates. The AC fails to plausibly allege that the Redemptions were BLMIS property, while at the same time alleging facts establishing Mistral's affirmative defenses under Section 550(b) on the face of the AC. This mandates the AC's dismissal in its entirety. The Trustee's efforts to defend these indefensible allegations all fall flat:

- The Trustee concedes that the AC must plead the "necessary vital statistics" showing that the transfers Mistral received originated with Madoff Securities. (*See* Opp. at 5.) There is simply no way of telling from the AC whether any one of the Mistral transfers allegedly began with Madoff Securities or came from other funds that Rye received, such as other investors' money destined to be invested with Madoff that Rye simply "crossed" on their own books. Given this, the AC does not plausibly plead that the transfers initiated with Madoff and must be dismissed.

- As for the good-faith defense, the Trustee does not contest that an affirmative defense can provide the basis for 12(b)(6) dismissal where the facts establishing the defense are evident from the complaint's face. Nor does the Trustee challenge that Mistral gave

---

[1] This Memorandum uses the following definitions: (i) "AC" means the Amended Complaint filed by the Trustee in this action, ECF No. 113, *Picard v. Mistral (SPC)*, Adv. Pro. No. 12-01273 (Bankr. S.D.N.Y. June 9, 2022); (ii) "Motion" means Mistral's *Memorandum of Law in Support of Defendants' Motion to Dismiss*, ECF No. 119, *Picard v. Mistral*, Adv. Pro. No. 12-01273 (cited herein as "Motion"); (iii) "Opposition" means the Opposition filed by the Trustee in this action, *Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint*, ECF No. 122, *Picard v. Mistral*, Adv. Pro. No. 12-01273 (cited herein as "Opp."); (iv) "Mistral" means Defendant Mistral (SPC); (v) "Trustee" means Plaintiff Irving H. Picard; (vi) "BLMIS" means Bernard L. Madoff Investment Securities LLC; (vii) "Rye Select Funds" means collectively Rye Select Broad Market Fund LP (f/k/a American Masters Broad Market Fund, L.P.), Rye Select Broad Market Prime Fund LP (f/k/a American Masters Broad Market Prime Fund, L.P.), and Rye Portfolio Limited; (viii) "Rye" means Rye Portfolio Limited, which is the only fund that the Trustee alleges Mistral received subsequent transfers from; (ix) "Tremont" means Tremont Group Holdings, Inc. (f/k/a Tremont Capital Management, Inc. f/k/a Tremont Advisers, Inc. and, together with its affiliates, including Tremont Partners, Inc., "Tremont Partners"; (x) "Tremont Complaint" means ECF No. 1 in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (cited herein as "Tremont Compl. ¶ __"); (xi) "Tremont Settlement" means, collectively, (a) the settlement agreement at ECF No. 17-1 and (b) the order at ECF No. 38-1, each as filed on the docket in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.); (xii) the "Fairfield Amended Complaint" means ECF No. 23 in *Picard v. Fairfield Sentry Limited*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) (cited herein as "Fairfield Am. Compl. ¶ __"); (xiii) "Fairfield Second Amended Complaint" means ECF No. 286 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020); (xiv) "Fairfield Settlement Agreement" means ECF No. 69-2 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011); (xv) "Redemption Payments" means payments Mistral allegedly received in exchange for redeeming shares in Rye in the relevant time period, as identified in Ex. C of the AC (the "Redemption Payments"). Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

"value" for the challenged transfers. The Trustee argues only that Mistral's good faith is suspect based on speculation that Mistral must have known Madoff was a fraud. But the Trustee fails to explain how such speculation, based entirely on impermissibly conclusory allegations, suffices to state a claim under *Iqbal*.[2]

## ARGUMENT

### I. THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE MISTRAL REDEMPTIONS WERE BLMIS PROPERTY.

#### A. The Trustee's Opposition Confirms That It Is Implausible That the Mistral Redemptions Include BLMIS Customer Property.

As the Supreme Court has instructed, a complaint "must be dismissed" if the plaintiff has "not nudged the [] claims across the line from conceivable to plausible."[3] The mere "possibility" that the Trustee may have a claim against Mistral is not enough.[4]

While the Trustee is correct that at this stage a tracing analysis is not required (Opp. at 5)—the Trustee must nevertheless allege precisely which transfers to Mistral include customer property, and from which initial transfer each subsequent transfer originates.[5] The Trustee does not even attempt to argue that he has satisfied (or even could satisfy) this basic requirement. Instead, the Trustee fights a straw man, arguing that Mistral demands a "dollar-for-dollar accounting." (*Id*. at 7.) But this is a gross overstatement, as even a casual review of Mistral's motion would reveal. (Motion at 6 ("The Trustee must allege facts that support the inference

---

[2] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility").

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").

[4] *See Twombly*, 550 U.S. at 557.

[5] See *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

2

that the funds at issue originated with . . . BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much.'").)[6]

The Trustee also argues that he should be permitted discovery before his claims are dismissed on this basis. (Opp. at 8.) While some courts have been willing to grant a trustee "greater latitude" at the pleading stage (*id.*), that is only where the Trustee lacks access to information he needs to plead his claims.[7] That is not the case here. The Tremont Settlement Agreement noted that in "settl[ing] the dispute . . . the Trustee conducted a comprehensive investigation . . . includ[ing] the review of all BLMIS-related transaction histories for the Tremont Defendants . . . interviews of witnesses, account statements, correspondence, other records, Bankruptcy Rule 2004 examinations and substantial review and analysis of records and documents produced by the Tremont Defendants[.]" (Tremont Settlement Agreement, Ex. A ¶ DD.) The Trustee's access to these materials for more than a decade well positioned him to map out the flow of funds from BLMIS to Mistral. (*See id.*) Nor is there any need to wait for expert opinion, as the Trustee contends. (*See* Opp. at 8.) To the extent that expert opinion is necessary for the Trustee to plead his claims as required by Rule 8, he could have and should have—before filing his complaints—retained such experts and had them evaluate the information the Trustee obtained from Rye. The Court should not reward his dilatory conduct by allowing his defective claims to proceed.

### B. The Trustee Does Not Adequately Allege That the Funds Transferred Originated with BLMIS.

The Opposition misstates the standard the Trustee must satisfy to plead that Mistral received BLMIS customer property. Courts determining whether payments to a subsequent

---

[6] Quoting *Shapiro*, 542 B.R. at 119.

[7] *Picard v. Cohmad*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).

3

transferee "originated" from a debtor examine (i) the close temporal proximity between the alleged initial and subsequent transfers, (ii) whether corresponding amounts of money were transferred, and (iii) whether general details surrounding the transfers imply linkage.[8]  The AC addresses none of those factors.  The Trustee's argument confirms as much, pointing solely to (i) boilerplate allegations that some unspecified portion of the initial transfers made their way to Mistral at some unspecified point in time (Opp. at 6 (citing AC ¶¶ 2, 65-66, 75, 152-156)), and (ii) the AC's voluminous exhibit C, which does not show how *any* of the initial transfers ended up with Mistral (*id*. (citing Ex. C)).

Rather than try to explain how the Trustee's square-peg pleading fits into the standard's round hole, the Trustee suggests that all he must allege is "sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." (Opp. at 5.)[9]  But in his next breath, the Trustee concedes that this alone is not enough; the Complaint must allege the "necessary vital statistics—the who, when, and how much" outlined in *Shapiro*, quoted again in *BNP Paribas*, and further affirmed by this Court in *Multi-Strategy*.[10] (*Id.* at 5–6.)

---

[8] *See, e.g.*, *Picard v. Merkin*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*") (concluding that linkage was sufficiently implied where "several subsequent transfers took place contemporaneously or shortly after an initial transfer," including, for example, within 22 days, 15 days, 18 days, and 3 days of the initial transfers); *Cohmad*, 454 B.R. at 341 (finding the allegations sufficient to support linkage where the trustee "allege[d] that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond[ed] to the amounts paid by BLMIS to [initial transferees] and, subsequently, to [subsequent transferees]").

[9] Citing *Picard v. Charles Ellerin Irrevocable Tr.*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012).

[10] *Shapiro*, 542 B.R. at 119 (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"); *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*") ("[t]o plead a subsequent transfer claim, the Trustee must plead that the funds at issue originated with the debtor . . . [and] must allege the 'necessary vital statistics—the who, when, and how much–' of the purported transfers to establish an entity as a subsequent transferee of the funds"); *Picard v. Multi-Strategy Fund, Ltd.*, 641 B.R. 78, 90 (Bankr. S.D.N.Y. 2022) ("[t]he plaintiff must allege the necessary vital statistics—the who, when, and how much—of the purported transfers to establish an entity as a subsequent transferee of the funds").

4

The Trustee mischaracterizes Mistral as arguing that *Shapiro* has somehow changed the pleading standard. (Opp. at 7.) But the parties agree on the legal standard and that *Shapiro* governs here. (*See id.*; Motion at 6–7.) Mistral never argued that the Trustee needed to "perform a tracing analysis" or present a "dollar-for-dollar accounting of the exact funds at issue," as *Shapiro* warned was unnecessary under Rule 8(a), nor did Mistral argue that any amount of commingling of funds would necessarily defeat the Trustee's claim. (Opp. at 5; *see* Motion at 6–7.) Rather, courts uniformly agree on what *Shapiro* requires: the "necessary vital statistics" that the Trustee has failed to allege here.[11]

In *Shapiro*, the court found that the complaint "lack[ed] the vital statistics necessary to support a subsequent transfer claim" because it did "not tie any initial transfer to any subsequent transfer or Subsequent Transferee," nor did it "plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves."[12] The Trustee baldly states in his Opposition that his "Amended Complaint clearly meets these requirements" outlined in *Shapiro* (Opp. at 6), but as explained in the Motion, the conclusory statements he cites do not satisfy his pleading burden. (Motion at 7.) The AC "does not tie any initial transfer to any subsequent transfer or Subsequent Transferee"[13]; it merely lists transfers from BLMIS to Rye, without tying those transfers to the payment of any redemption request from Mistral. The unadorned conclusion that the subsequent transfers identified on Exhibit C originated with BLMIS is insufficient and mandates dismissal.

---

[11] *Shapiro*, 542 B.R. at 119.

[12] *Id.*

[13] *Id.*

5

The cases the Trustee cites on this point demonstrate that the allegations here are insufficient under *Shapiro*. (*See* Opp. at 6–8.) In each of these cases, the complaints alleged enough "vital statistics" about each initial transfer and each subsequent transfer to plausibly imply a direct link between at least some of those transfers. In *Merkin II*, for example, the complaint included exhibits clearly showing that "several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . implying linkage."[14] And in *In re 45 John Lofts, LLC*, the complaint similarly demonstrated contemporaneous initial transfers and subsequent transfers to plausibly allege a link between them.[15] The complaint in *In re Allou Distributors, Inc.*, also "described several transfer[s]," alleged that "those funds were used . . . to benefit [] the Defendants," and "identifie[d] the date and amounts of the transfers from [intermediaries] to several of the Defendants."[16] The allegations in the Trustee's AC against Mistral fail to do this, and the AC must therefore be dismissed.

## II. THE GOOD-FAITH DEFENSE CAN BE DECIDED AT THIS STAGE BECAUSE THE TRUSTEE'S OWN PLEADINGS ESTABLISH THE DEFENSE.

While the Trustee makes much of the fact that affirmative defenses are the defendant's burden (*see* Opp. at 8–10), he does not and cannot contest that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint."[17]

---

[14] *Merkin II*, 515 B.R. at 150.

[15] *45 John Lofts, LLC v. Meridian Cap. Grp. LLC*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) ("*In re 45 John Lofts, LLC*") (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing Complaint ¶¶ 60-69).

[16] *In re Allou Distribs., Inc.*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007).

[17] *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007).

The Trustee rests his argument primarily on the recent *Banque SYZ* opinion. (Opp. at 9.) But in *Banque SYZ*, "the Complaint suggest[ed] that *Banque Syz* had access to information about BLMIS's fraud and failed to concern itself with such things."[18]  For instance, the Trustee argued that "Banque Syz'[s] expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS."[19]  Similarly, the complaint in *Merkin I* was rife with knowledge allegations absent here, including the defendants' receipt of account statements that "reflected hundreds of trades exercised at prices outside the daily range possible for those securities"[20] and that one of the defendants "had an unusually close business and social relationship with Madoff, including sitting together on the Board of Trustees of Yeshiva University, and, as a result, intimate access to BLMIS."[21]  Here, by contrast, there is no allegation (not even a conclusory one) suggesting that Mistral had any knowledge, actual or otherwise, of the Madoff fraud. (*See generally* AC.)[22]

The Opposition relies on *ABN Ireland* to argue that the good-faith affirmative defense is fact-driven and cannot be resolved in a motion to dismiss. (Opp. at 9–10.) But the District Court in *ABN Ireland* held only that the bankruptcy court's decision should be reversed because it was

---

[18] *Picard v. Banque SYZ & Co., SA*, 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*").

[19] *Id.* (citing *Banque SYZ* Complaint ¶ 42).

[20] *Picard v. Merkin*, 440 B.R. 243, 252–53 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

[21] *Id.* at 253.

[22] *Compare with Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 3354955, at *3–4 (Bankr. S.D.N.Y. July 18, 2022) ("The Trustee has submitted additional evidence . . . that shows First Gulf Bank traveled to New York City many times to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers in question here . . . [and] emails indicating that 'F[irst] [G]ulf [B]ank is an existing investor [in Fairfield Sentry], whom Jeffrey knows well, from Zafar Habib Khan's visits to NY.'").

7

based on an outdated good-faith standard.[23]  The observation that the defendant's good-faith defense was not apparent on the face of the complaint was dicta; the court even acknowledged that the defense was "not appropriately framed for appellate review."[24]  The other cases the Trustee cites are no more relevant.  In *In re Dreier LLP*, the court held that the defendant had not established the good-faith defense because the "[c]omplaint does not contain allegations establishing good faith as a matter of law."[25]  Here, by contrast, the very allegations the Trustee seeks to incorporate into his AC establish Mistral's good faith.  (*See* Motion at 9–10.)  And *United Teamster Fund* does not even address section 550 or the good-faith defense.[26]

The Trustee also criticizes Mistral for relying on "cherry-picked allegations as to BLMIS's, Tremont's, and Fairfield's secrecy" to show that the AC pleads facts establishing that Mistral could not have known of Madoff's fraud.  (Opp. at 10.)  But the dozen examples Mistral cited in its Motion are allegations that the Trustee peppered repeatedly throughout his AC.  (*See* Motion at 9–10.)  He cannot disavow his own pleading now just because the AC and the allegedly incorporated Tremont Complaint, on their face, establish Mistral's good-faith defense.  *See* 11 U.S.C. § 550(b).  The Trustee contends that he has plausibly pleaded that Mistral knew of Madoff's fraud because "Defendant was a hedge fund managed by sophisticated parties capable of performing their own investigations and diligence on their BLMIS investments[.]"  (Opp. at 11.)  But if this were enough to plead knowledge, then any large financial institution—indeed, any large corporation or law firm—would be assumed to have knowledge of virtually everything

---

[23] *Picard v. ABN Ireland*, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022).

[24] *Id.* at *4.

[25] *In re Dreier LLP*, 452 B.R. 391, 427 (Bankr. S.D.N.Y. 2011) ("Nevertheless, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.").

[26] *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) (citing *Pani*, 152 F.3d at 74).

8

in the world, and it would dispense with the 550(b) defense entirely. Perhaps that is why numerous cases, including cases involving Madoff's fraud, have found allegations such as these wanting.[27]

The Trustee fares no better with his argument that the question of "value" raises fact issues not pleaded in the AC. (Opp. at 11.) As the *Merkin I* court explained, a litigant can "plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense."[28] (*See id*. at 10.) The Trustee has done exactly that. (Motion at 8.) The AC alleges that the transfers at issue arose from "subscription agreements," and Mistral surrendered interests in Rye in exchange for redemption payments. (AC ¶ 72.) This is enough as a matter of law to prove that Mistral provided value when it received the alleged transfers at issue.[29] The Trustee also does not even address (let alone try to distinguish) Judge Bernstein's decision in the related BLMIS case *ABN Amro*, where he expressly held on a Rule 12(b)(6) motion to dismiss that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).[30] That holding applies with equal force here.

In a last-ditch effort to avoid dismissal, the Trustee argues that he must be given an opportunity to pursue discovery of the facts related to this affirmative defense before the Court can dismiss. (Opp. at 12.) But that is not the law. So long as the Trustee has pleaded facts establishing Mistral's section 550 defense, he is not entitled to discovery before dismissal.[31]

---

[27] *See, e.g.*, *DeLollis v. Friedberg, Smith & Co.*, 600 F. App'x 792, 796 (2d Cir. 2015) (noting that "[n]umerous actions brought against auditors and investment advisors by victims of Madoff's fraud have been dismissed despite the presence of 'red flags,' which in hindsight arguably should have called attention to Madoff's illegal conduct").

[28] *Merkin I*, 440 B.R. at 256.

[29] *See ABN Amro*, 2020 WL 1584491, at *9 ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

[30] *See id.*

[31] *See, e.g.*, *Bock*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground[.]");

9

## CONCLUSION

The AC fails to plead an essential element of the subsequent transfer claims and only suggests the mere probability that the money Mistral received from feeder funds originated with Madoff, rather than the plausibility Rule 8 requires. And it sets forth on its face all the facts necessary to establish Mistral's good-faith defense. The AC must therefore be dismissed.

Dated: November 14, 2022
New York, New York

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: */s/ William J. Sushon*
    William J. Sushon
    Daniel S. Shamah
    Kayla N. Haran
    7 Times Square
    New York, New York 10036
    Telephone: (212) 326-2000
    Facsimile: (212) 326-2061
    wsushon@omm.com
    dshamah@omm.com
    kharan@omm.com

*Attorneys for Mistral (SPC)*

---

*Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").