**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02554 (CGM) |
| Plaintiff, | |
| v. | |
| NATIONAL BANK OF KUWAIT S.A.K. and NBK BANQUE PRIVÉE (SUISSE) S.A., | |
| Defendants. | |

## TRUSTEE'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

   I.   THE PONZI SCHEME................................................................................. 3

   II.  THE BLMIS FEEDER FUNDS ................................................................. 3

   III. DEFENDANTS' INVESTMENTS IN AND REDEMPTIONS FROM SENTRY ........... 4

   IV. THE FAIRFIELD SETTLEMENT....................................................................... 5

ARGUMENT .................................................................................................... 5

   I.   THE AMENDED COMPLAINT STATES A VALID CAUSE OF ACTION FOR
       RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION
       550(a) .................................................................................................. 6

      A. The Trustee Has Plausibly Alleged that All of the Subsequent Transfers Defendants
         Received Contained Stolen BLMIS Customer Property ................................. 6

      B. Defendants' Tracing Arguments Fail at the Pleading Stage ........................... 7

   II.  THE AMENDED COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY
       OF THE SENTRY INITIAL TRANSFERS ..................................................... 11

      A. The Incorporated Material Complies with Rules 8 and 10 ........................... 12

      B. The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision...................... 14

   III. SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS .................. 15

      A. The Trustee Has Alleged Sentry's Actual Knowledge of Madoff's Fraud.................... 15

      B. Section 546(e) Does Not Apply Independently to Recovery Actions ........................... 17

      C. Whether Defendants Can Avail Themselves of a Section 546(e) Safe Harbor Based on
         Their Separate Agreements with Sentry Is a Fact-Intensive Inquiry and Not Appropriate
         at the Motion to Dismiss Stage ...................................................................... 18

CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ............................................................7, 9, 10

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................................................11, 12, 13

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................5, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5, 8

*Cargo Partner AG v. Albatrans, Inc.*,
   352 F.3d 41 (2d Cir. 2003)................................................................................5

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................9

*Davis v. Bifani*,
   No. 07-cv-00122 (MEH) (BNB), 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ....................13

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008)................................................................14

*Dery v. United States (In re Bridge)*,
   90 B.R. 839 (E.D. Mich. 1988)................................................................11

*Ferrari v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) ............................................................14, 15

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
   Adv. Pro. Nos. 10-03493 & 10-05447 (SMB), 2014 WL 47774, (Bankr.
   S.D.N.Y. Jan. 3, 2014)................................................................10

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)............................9

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
   408 F.3d 689 (11th Cir. 2005) ................................................................11

*In re J.P. Jeanneret Assoc. Inc.*,
   769 F.Supp.2d 340 (S.D.N.Y. 2011)........................................................................................5

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-Civ.-1073 (ECT) (KMM), 2020 WL 3077151 (D. Minn. June 10,
   2020) ....................................................................................................................................8, 9

*Kramer v. Time Warner*, Inc.,
   937 F.2d 767 (2d Cir.1991)..................................................................................................14

*Mass Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191 (D. Mass. 2012) ..................................................................................13

*Picard v. Banca Carige, S.P.A.*,
   Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
   30, 2022) ............................................................................................................................2, 6

*Picard v. Banque Cantonale Vaudoise*,
   Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
   14, 2022) .........................................................................................................................2, 3, 6

*Picard v. Banque Lombard Odier & Cie SA*,
   Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ............2, 6

*Picard v. Banque SYZ & Co.*,
   SA, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y.
   June 14, 2022) ................................................................................................................2, 6, 7

*Picard v. Barclays Bank (Suisse) S.A.*,
   Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
   15, 2022) ............................................................................................................................3, 6

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018)..................................................................................17

*Picard v. Bordier & Cie*,
   Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
   30, 2022) ............................................................................................................................2, 6

*Picard v. Cathay Life Ins. Co. Ltd.*,
   Adv. Pro. No. 08-01789 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
   1, 2022) ......................................................................................................................... *passim*

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
   Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
   2012) ....................................................................................................................6, 7, 8, 10

*Picard v. Citibank, N.A. (In re BLMIS)*,
    Adv. Pro. No. 10-05354 (CGM), 2022 WL 4493234  (Bankr. S.D.N.Y. Sept.
    27, 2022) ....................................................................................................................3

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..............................................................6, 7

*Picard v. Delta Nat'l Bank & Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
    12, 2022) ....................................................................................................................3

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug.
    6, 2021) .........................................................................................................5, 14, 16

*Picard v. First Gulf Bank*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) .................................................................................................................3, 6

*Picard v. Korea Exch. Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ........................................................................................................ *passim*

*Picard v. Lloyds TSB Bank, PLC*,
    Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
    30, 2022) .................................................................................................................2, 6

*Picard v. Meritz Fire & Marine Ins. Co. LTD.*,
    Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
    10, 2022) ....................................................................................................................3

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .........................................................6, 9, 10

*Picard v. Multi-Strategy Fund Ltd.*,
    --- B.R. ---, No. 22-CV-06502, 2022 WL 16647767 (JSR) (S.D.N.Y. Nov. 3,
    2022) ............................................................................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022).........................................................2, 6, 7, 15

*Picard v. Parson Fin. Panama S.A.*,
    Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug.
    3, 2022) .................................................................................................................3, 8

*Picard v. Public Inst. for Soc. Sec.*,
    Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
    17, 2022) ....................................................................................................................3

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
   Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
   18, 2022) (amended) ............................................................................................3

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007).................................................................................5

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
   501 B.R. 26 (S.D.N.Y. 2013)...............................................................................12

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
   No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).......................15, 16, 17

*Sherman v. A.J. Pegno Constr. Corp.*,
   528 F. Supp. 2d 320 (S.D.N.Y. 2007)......................................................12, 13, 14

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
   239 F.3d 365, 2000 WL 1741550 (5th Cir. Dec. 11, 2000)................................11

*United States v. Henshaw*,
   388 F.3d 738 (10th Cir. 2004) .........................................................................8, 11

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
   543 B.R. 60 (Bankr. S.D.N.Y. 2015) .................................................................13

**Statutes**

11 U.S.C. § 546(e) ............................................................................................ *passim*

11 U.S.C. § 548(a) ....................................................................................................13

11 U.S.C. § 548(a)(1)(A) .............................................................................15, 16, 17

11 U.S.C. § 550...........................................................................................................17

11 U.S.C. § 550(a) ...................................................................................1, 6, 9, 12, 17

11 U.S.C. § 550(d) ......................................................................................................9

15 U.S.C. §§ 78aaa-*lll*...........................................................................1, 2, 10, 15

**Rules**

Fed. R. Bankr. P. 7012 ...........................................................................................5

Fed. R. Evid. 201 .................................................................................................14

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 5, 8, 16

Federal Rule of Civil Procedure 8(a) ...................................2, 5, 6, 11, 12, 14

Federal Rule of Civil Procedure 10(c) .................................2, 11, 12, 13, 14

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of
Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection
Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully
submits this memorandum of law in opposition to the Motion to Dismiss the Amended Complaint
filed by Defendants National Bank of Kuwait S.A.K. ("NBK") and NBK Banque Privée (Suisse)
S.A. ("NBK Suisse" and, together with NBK, "Defendants") pursuant to Federal Rule of Civil
Procedure 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

As part of his continuing efforts in this SIPA liquidation proceeding to recover BLMIS
customer property that was stolen as part of Madoff's Ponzi scheme, the Trustee seeks to recover
over $19 million in subsequent transfers that Defendants received from Fairfield Sentry Limited
("Sentry").    Defendants move to dismiss the Trustee's Amended Complaint ("Amended
Complaint"), arguing that (i) Defendants did not receive any customer property; (ii) the Amended
Complaint violates Federal Rule of Civil Procedure ("Rule") 8(a); and (iii) the safe harbor under
11 U.S.C. § 546(e) bars recovery.  Each of these arguments fails.

*First*, the Trustee has plausibly alleged that Defendants received customer property under
Section 550(a) by outlining the relevant pathways through which customer property was
transferred from BLMIS to Sentry and subsequently to Defendants.  The Amended Complaint
includes the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent
transfer Defendants received.  At this stage of the litigation, nothing more is required.  Defendants
misstate the pleading burden and attempt to reframe a tracing argument, based on an undisclosed
tracing methodology, as a pleading issue.  This is plainly inappropriate on a motion to dismiss and
runs contrary to well-established case law in this SIPA liquidation proceeding.

1

*Second*, the Amended Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief. Defendants argue that the Trustee has somehow violated Rule 8(a) by incorporating by reference his second amended complaint (the "Fairfield SAC") against Sentry and related defendants. The Trustee's incorporation is straightforward, clear, and complies with Rule 8 as well as Rule 10(c). The Amended Complaint even identifies the specific paragraphs of the Fairfield SAC to be incorporated by reference, which is precisely what Defendants seek in their Motion. Defendants can respond to the incorporation by reference paragraph just as they would any other paragraph in the Amended Complaint.

*Third*, the Trustee has plausibly alleged the avoidability of the initial transfers from BLMIS based on Sentry's actual knowledge of fraud. Defendants argue that their knowledge as subsequent transferees should determine the avoidability of the initial transfers from BLMIS. This argument conflicts with the plain language of the statute and the precedent in this SIPA liquidation proceeding stating that Section 546(e) does not independently protect against the recovery of avoidable fraudulent transfers from a subsequent transferee. Further, as the District Court held in denying seven motions for interlocutory appeal filed by similarly situated defendants, Defendants' hypothetical arguments about third-party securities contracts are fact-intensive and cannot be decided on the pleadings.

Defendants' arguments conflict with numerous prior rulings in this SIPA liquidation proceeding,[1] lack supporting precedent, and are otherwise meritless. The Trustee respectfully requests that the Court deny Defendants' Motion in its entirety.

---

[1] *See Picard v. Multi-Strategy Fund Ltd*., 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co*. SA, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Banca Carige, S.P.A*., Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Lloyds TSB Bank, PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro.

# STATEMENT OF FACTS

## I.    THE PONZI SCHEME

Madoff founded and operated BLMIS out of New York, New York until its collapse in

2008.  Am. Compl. ¶¶ 77, 83, 106, ECF No. 105.  BLMIS was a registered securities broker-dealer

in New York.  BLMIS purportedly operated three principal business units:  (i) a proprietary trading

desk; (ii) a broker-dealer operation; and (iii) an investment advisory business (the "IA Business").

*Id.* ¶ 79.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion

strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from

the S&P 100 Index, (b) buying put options and selling call options to hedge against price changes

in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out

of the market.  *Id.* ¶¶ 92-95.  In reality, BLMIS operated a Ponzi scheme through its IA Business.

*Id.* ¶ 83.  On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for

criminal violations of federal securities laws, including securities fraud, investment adviser fraud,

and mail and wire fraud.  *Id.* ¶ 9.

## II.    THE BLMIS FEEDER FUNDS

Among BLMIS's customers were BLMIS "feeder funds"—large investment funds created

for the express purpose of funneling their investors' money into BLMIS.  *See Picard v. Citibank,*

---

No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. LTD.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022); *Picard v. Delta Nat'l Bank & Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022); *Picard v. Public Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022); *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) (amended); *Picard v. Korea Exch. Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ("*KEB*"); *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05354 (CGM), 2022 WL 4493234 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Cathay Life Ins. Co. Ltd.*, Adv. Pro. No. 08-01789 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*").

*N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021). Defendants knowingly invested in the BLMIS feeder fund, Sentry. Am. Compl. ¶ 25.

Sentry was created, managed, and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership headquartered in New York. *Id.* ¶ 33. Sentry invested substantially all of its assets with BLMIS. *Id.* ¶¶ 34, 59. Sentry was a shell company with no employees of its own and was instead operated by FGG. *Id.* ¶¶ 33-34.

## III.    DEFENDANTS' INVESTMENTS IN AND REDEMPTIONS FROM SENTRY

In 2007, Defendants began investing with BLMIS through Sentry. *Id.* ¶ 44. At all relevant times, NBK worked hand-in-hand with NBK Suisse to effectuate and manage its investments in Sentry. *Id.* ¶ 25. NBK Suisse assisted with the day-to-day oversight and administration of NBK's investments in Sentry and was authorized and directed to correspond with Sentry, negotiate transactions and fees, and otherwise act on behalf of and for the benefit of NBK. *Id.* Furthermore, NBK Suisse managed an investment committee, which approved investment decisions on behalf of NBK, including NBK's investments in Sentry. *Id.* Defendants NBK Suisse and NBK shared information about BLMIS and Sentry, collaborated to conduct their BLMIS-related transactions, and operated as a cohesive unit with respect to their investments in and redemptions from Sentry that resulted in the subsequent transfers of customer property at issue here. *Id.* ¶ 31. Defendant NBK received at least 28 redemption payments from Sentry, all of which the Trustee seeks to recover from NBK as subsequent transfers of stolen customer property. *Id.* ¶¶ 3, 46 & Ex. C. Defendant NBK Suisse received at least two redemption payments from Sentry, both of which the Trustee seeks to recover from NBK as subsequent transfers of stolen customer property. *Id.* ¶ 4 & Ex. D.

4

## IV.    THE FAIRFIELD SETTLEMENT

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶ 109. In 2011, the Trustee settled with Sentry and others. *Id.* ¶ 110. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.*; *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendants to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

When considering motions to dismiss under Rule 12(b)(6), applicable to adversary proceedings under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the [Amended Complaint] as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc. Inc.*, 769 F.Supp.2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). To survive a motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

5

## I.  THE AMENDED COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Amended Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Defendants received subsequent transfers of stolen BLMIS customer property from Sentry.  Defendants argue that the Amended Complaint falls short because the Trustee's aggregated claims to recover subsequent transfers made by Sentry across all adversary proceedings exceed the total amount Sentry received in initial transfers and because the Amended Complaint does not tie or link the subsequent transfers to specific initial transfers.  Mot. at 4, 9-10.  This Court has repeatedly rejected these arguments, finding that the Trustee has alleged the "vital statistics" of the subsequent transfers and Defendants' fact-based tracing arguments were premature.[2]

### A.    The Trustee Has Plausibly Alleged that All of the Subsequent Transfers Defendants Received Contained Stolen BLMIS Customer Property

To meet his pleading burden under Rule 8(a) for a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014); *see also Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011) (finding under Rule 8(a), "Trustee must plead a statement of facts that 'adequately apprises' the [defendant] of the Subsequent Transfers . . . he seeks to recover").  As Defendants acknowledge, Mot. at 9, "the Trustee is not required to provide a dollar-for-dollar accounting" of the exact funds at issue. *Merkin*, 515 B.R. at 150 (*quoting Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  No tracing

---

[2] *See, e.g., First Gulf*, 2022 WL 3354955, at *6; *Barclays,* 2022 WL 2799924, at *3; *Cantonale*, 2022 WL 2761044, at *4-6; *Lombard*, 2022 WL 2387523, at *10-11; *Bordier*, 2022 WL 2390556, at *6-7; *Carige*, 2022 WL 2387522, at *7-8; *Lloyds*, 2022 WL 2390551, at *6-7; *Banque Syz*, 2022 WL 2135019, at *11-12; *Multi-Strategy*, 641 B.R. at 78, 90-91; *KEB*, 2022 WL 4371908, at *6-7, *10-11.

analysis is required.  Rather, "the Trustee need only allege sufficient facts to show the relevant

pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."

*Ellerin*, 2012 WL 892514, at *3; s*ee also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC, (In re*

*45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  In addition, the Trustee must

allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers

to establish an entity as a subsequent transferee of the funds." *Cohmad Sec.*, 454 B.R. at 340.

The Amended Complaint easily meets these requirements.  The Amended Complaint

alleges that Defendants received the subsequent transfers, identified by date and amount, from

Sentry, and that Sentry invested substantially all of its funds with BLMIS and received initial

transfers from BLMIS.  Am. Compl. ¶¶ 2-4, 34, Exs. C, D.  Thus, the Amended Complaint

plausibly alleges that Defendants received subsequent transfers of BLMIS stolen customer

property by (a) outlining the relevant pathways through which customer property was transferred

from BLMIS to Sentry and subsequently to Defendants, and (b) providing the necessary vital

statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer.  Nothing more is

required.  *See, e.g. Multi-Strategy*, 641 B.R. at 78, 95 (finding that the Trustee's complaint, which

detailed the date and amount of the relevant transfer from Sentry to defendant, was sufficient to

survive a motion to dismiss); *Banque Syz*, 2022 WL 2135019, at *12 (finding that the exhibits to

the complaint "provide [defendant] with the 'who, when, and how much' of each transfer").

## B.    Defendants' Tracing Arguments Fail at the Pleading Stage

Defendants' fact-based tracing arguments are clearly inappropriate for a motion to dismiss.

Defendants argue that the subsequent transfers they received from Sentry cannot plausibly have

consisted of any BLMIS customer property because Sentry paid out more money than it received

from BLMIS.  Mot. at 4.  Defendants then posit a binary suggestion that either (i) they received

customer property, or (ii) all of their subsequent transfers are completely independent of BLMIS and somehow untainted.[3]  Mot. at 5.

First, Defendants do not disclose the tracing methodology on which they base their conclusion that they did not receive any BLMIS customer property.  There is a good reason for that:  it is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances.  *See Ellerin*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them.")).

Second, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property.  *See Parson*, 2022 WL 3094092, at *11 ("The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation."); *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-Civ.-1073 (ECT) (KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely"

---

[3] Rather than offering any supporting precedent, Defendants offer an exhaustive explanation of the facts of *Iqbal* and *Twombly*.  Not only are these cases factually inapposite, they do not support Defendants' argument that the Trustee's allegations are not plausible because they "do not favor one possibility as more likely than the other."  Mot. at 5.  "The plausibility standard is not akin to a 'probability requirement'[.]"  *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 189-90 (2d Cir. 2012) ("[T]he plausibility standard is lower than a probability standard" and "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives.").  But even if Defendants' interpretation of *Iqbal* and *Twombly* was correct, by Defendants' own flawed logic, it is more likely than not (*i.e.*, not only possible or plausible, but probable) that Defendants' transfers emanated from the $3 billion Sentry received from BLMIS rather than from the $2 billion Sentry allegedly received from another source.  Mot. at 4.

8

with the debtor or even to account for "the exact funds at issue" on summary judgment); *45 John Lofts, LLC*, 599 B.R. at 746-47 (rejecting defendant's argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property because the plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss") (cleaned up).

Third, at this stage of the proceedings, the Trustee's subsequent transfer claims against Defendants are not rendered implausible simply because the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings exceed the amount of Sentry's initial transfers from BLMIS. While limited to "a single satisfaction" under Section 550(a), *see* 11 U.S.C. § 550(d), the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds the initial transfers.

Fourth, Defendants argue that the Trustee has failed to plausibly allege that they received customer property because "the allegations do not in any way link what BLMIS paid Fairfield to what Fairfield paid NBK." Mot. at 9. But this is not the Trustee's pleading burden. *See Cathay Life*, 2022 WL 16626325, at *7 ("The Trustee need not prove the path that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming shareholder."); *Merkin*, 515 B.R.

at 150 (refusing to dismiss subsequent transfer claims where the complaint "[did] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS"); *In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). The Court has already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin*, 515 B.R. at 152-53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also KEB*, 2022 WL 4371908, at *11 (refusing to "hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not").

Fifth, Defendants' tracing arguments are not only wrong, they are premature. Courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Ellerin*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 & 10-05447 (SMB), 2014 WL 47774, at *14-16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme). And where, as here, the Trustee "has not been afforded the opportunity to conduct discovery," courts only dismiss such claims "in the rarest of cases." *Ellerin*, 2012 WL 892514, at *2.

Finally, this is not a case where the Court should prematurely cut off the Trustee's ability to trace the subsequent transfers at the pleading stage. The circumstances of the transfers,

10

including the purposes of the transfers and the parties' intent, are relevant to the equitable principles applied to tracing. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (the court's "task here is to look beyond the particular transfers in question to the entire circumstance of the transactions") (cleaned up). Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification." *Henshaw*, 388 F.3d at 741 (cleaned up). And "[i]t is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (E.D. Mich. 1988)). Accordingly, equity weighs against cutting the Trustee off at the pleading stage.

## II.    THE AMENDED COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

Defendants' arguments regarding incorporation by reference of the Fairfield SAC under Rule 10(c) and the need for a "short and plain statement" under Rule 8(a) misconstrue the language and purpose of these rules and ignore the substance of the Trustee's allegations, as well as all of this Court's recent rulings on this issue. *See Cathay Life*, 2022 WL 16626325, at *5-7 (allowing adoption of the Fairfield SAC in its entirety). The Trustee may incorporate the Fairfield SAC under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS to Sentry. *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation). Contrary to Defendants' arguments, the Trustee also has referenced the relevant paragraphs of the operative Fairfield SAC. Regardless, this Court may take judicial notice of the Fairfield SAC as well as its own decision on the avoidability of the initial transfers.

11

### A.      The Incorporated Material Complies with Rules 8 and 10

Defendants argue that the Trustee may not incorporate by reference the Fairfield SAC because courts in other contexts have declined to allow incorporation by reference of pleadings in different proceedings. *See* Mot. at 11-13. In the bankruptcy context, however, all matters under the umbrella of one liquidation are considered one proceeding for purposes of Rule 10(c). *See In re Geiger*, 446 B.R. at 679 (allowing incorporation by reference of pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case.").

Defendants ignore the District Court's prior opinion on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26 (S.D.N.Y. 2013). In that decision, the District Court found sufficient the Trustee's incorporation by reference of initial transfer complaints, including the then-operative Fairfield complaint:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id*. at 36. There is no sound reason to depart from the District Court's guidance. *See Cathay Life*, 2022 WL 16626325, at *6.

Regardless, Rule 10(c) does not prohibit the incorporation of entire pleadings from other actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action and permitting

incorporation of entire pleadings in separate cases); *Mass Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force").[4]

Here, the Trustee references only one other pleading—the Fairfield SAC—and the incorporation is clear, with its purpose obvious—to make a prima facie showing that the initial transfers are avoidable under Section 548(a). *See* Am. Compl. ¶ 113; 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1326 (4th ed. 2008) ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation will not provide adequate notice as to claims or allegations, but allowing incorporation because "there is no danger of prejudice"). This neither prejudices nor places an undue burden on Defendants, as they can admit the substance of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny.

The Trustee's reference to the relevant paragraphs in the Fairfield SAC provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication. "The ability to incorporate matters from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same

---

[4] Defendants cite to *Davis v. Bifani*, No. 07-cv-00122 (MEH) (BNB), 2007 WL 1216518 (D. Colo. Apr. 24, 2007), to bolster their claims, but this is unavailing. Mot. at 12. Unlike the Trustee here, the *Davis* plaintiffs were incorporating pleadings by reference in separate actions in an attempt to add entirely new claims. *Bifani*, 2007 WL 1216518, at *1. Defendants' reliance on *In re Geiger*, 446 B.R. 670, is similarly misplaced. Mot. at 12. The *Geiger* court found that incorporation under the circumstances would have led to confusion of the claims asserted. *See In re Geiger*, 446 B.R. at 679. By contrast, Defendants here would be hard-pressed to argue they are confused that the Trustee is seeking to avoid the initial transfers.

side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings."). By contrast, repleading all initial transfer allegations would unnecessarily add countless pages to the Amended Complaint.

Feigning ignorance, Defendants complain that they would be "satisfied with a list of the specific paragraphs or parts the plaintiff contends are part of his action against NBK." Mot. at 13. Yet, the Trustee has already done this for Defendants: "The Trustee incorporates by reference the allegations contained in the [Fairfield SAC] as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16." Am. Compl. ¶ 113. And regardless, this Court has already found that this exercise is unnecessary and would overly complicate proceedings: "[Defendant] has been following this and the [Sentry] chapter 15 case and has been familiar with the allegations contained in the Fairfield Complaint for over a decade." *KEB*, 2022 WL 4371908, at *8. The incorporated Fairfield SAC plainly complies with Rule 8 and Rule 10.

### B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

Defendants' arguments about incorporation are really much ado about nothing because this Court may take judicial notice of the operative Fairfield SAC and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479. "On a motion to dismiss, a court may also consider matters 'of which judicial notice may be taken under Fed. R. Evid. 201.' Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (quoting *Kramer v. Time Warner*, Inc., 937 F.2d 767, 773 (2d Cir.1991)); s*ee also Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) (On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of

14

prior litigation and that relate to the case *sub judice*."). Thus, the Trustee has adequately pleaded the avoidability of the initial transfers.

### III.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS

Defendants argue that the Amended Complaint must be dismissed because the safe harbor under Section 546(e) bars the Trustee from avoiding initial transfers from BLMIS to Sentry made more than two years before the filing date in this SIPA liquidation proceeding. Mot. 14-18.[5] This argument has been repeatedly rejected by this Court, *see, e.g. Multi-Strategy*, 641 B.R. at 92-95, and now by the District Court. On November 3, 2022, Judge Rakoff issued a decision denying interlocutory appeal of this Court's decisions denying seven motions to dismiss on the Section 546(e) issue, finding no reasonable grounds for disagreement as to the Bankruptcy Court's orders. *Picard v. Multi-Strategy Fund Ltd.*, --- B.R. ---, No. 22-CV-06502, 2022 WL 16647767 (JSR) (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*").

### A.    The Trustee Has Alleged Sentry's Actual Knowledge of Madoff's Fraud

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer . . . except under section 548(a)(1)(A) of this title."). However, in *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precludes application of the safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section

---

[5] The first initial transfer from BLMIS to Sentry within the two-year period occurred on September 6, 2007. *See* Am. Compl. Ex. B at 29. All but one of the 30 subsequent transfers the Trustee seeks to recover from Defendants occurred <u>after</u> September 6, 2007. As such, Section 546(e) is only at issue as to that one transfer for $51,577. The other 29 transfers, which total $19,123,946 of the $19,175,523 that the Trustee seeks to recover, are completely unaffected by the application of Section 546(e).

548(a)(1)(A).  In *Multi-Strategy II*, the District Court confirmed this holding, explaining that the

Section 546(e) safe harbor "did <u>not</u> apply to transfers from Madoff Securities to customers that

were in on the fraud" and that "*Cohmad*'s holding in this respect concerned Madoff Securities'

'initial transferees.'  *Multi-Strategy II*, 2022 WL 16647767, at *6-7 (emphasis in original) (citing

*Cohmad*, 2013 WL 1609154, at *3-4).[6]

As Defendants concede, this Court has previously held that the Trustee has pleaded

Sentry's actual knowledge of fraud and that such initial transfers are avoidable.  *See* Mot. at 19;

*see also Fairfield Inv. Fund*, 2021 WL 3477479, at *4-5, *7.  "This Court has already determined

that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual

knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion."  *Cathay Life*, 2022 WL

16626325, at *8.  In *Multi-Strategy II*, the District Court clarified that "Section 546(e) could not

be read to protect payments received by persons or entities who knew they were not 'settlement

payments' or transfers made in connection with a securities contract."  *Multi-Strategy II*, 2022 WL

16647767, at *6 (citing *Cohmad*, 2013 WL 1609154, at *3).  The District Court further explained

that avoidability of initial transfers does not turn on the "subjective mental knowledge" of the

subsequent transferee, and the Trustee is not required to plead actual knowledge of the subsequent

transferee.  *Id.* at *13-15 (Defendants' "lack of knowledge of Madoff's fraud cannot render

unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield.").

---

[6] In their Motion, Defendants argue that Section 546(e) does not contain a knowledge exception.  Mot. at 19-21. However, the actual knowledge exception is settled law of the case and Defendants are bound by it.  The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e), in which Defendant NBK participated.  *See* Mot. to Withdraw the Reference, ECF No. 8 (through incorporation by reference, raising Section 546(e) as grounds for withdrawal).  As Defendants concede, *Cohmad* held that a transferee with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e).  Mot. at 20-21.

### B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Defendants nevertheless argue that the actual knowledge exception should apply "to a defendant, whether initial or subsequent . . . ." Mot. at 20-21. But as the District Court recently confirmed in *Multi-Strategy II*, this is wrong.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Multi-Strategy II*, 2022 WL 16647767, at *13 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer") (internal citations omitted) (emphasis in original)).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court had withdrawn the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550. However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*). Consistent with *Cohmad*, this Court has held that "a subsequent transferee may raise the safe harbor as a defense . . . only in so far as the avoidance of the initial transfer is concerned." *KEB*, 2022 WL 4371908, at *10; s*ee also Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming *Cohmad* did not provide subsequent transferees the right to independently assert Section 546(e)

where initial transferee is sufficiently alleged to have actual knowledge).  Put simply:  "The safe harbor is not applicable to subsequent transfers."  *Cathay Life*, 2022 WL 16626325, at *9.

In *Multi-Strategy II*, the District Court confirmed its holding in *Cohmad* that avoidability of initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee and that the Trustee is not required to plead actual knowledge of the subsequent transferee.  *Multi-Strategy II*, 2022 WL 16647767, at *13-15 (Defendants' "lack of knowledge of Madoff's fraud cannot render unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield.").  As such, subsequent transferees like Defendants cannot assert Section 546(e) protections where the Trustee has adequately pleaded Sentry's actual knowledge.

### C.    Whether Defendants Can Avail Themselves of a Section 546(e) Safe Harbor Based on Their Separate Agreements with Sentry Is a Fact-Intensive Inquiry and Not Appropriate at the Motion to Dismiss Stage

Defendants also argue that Section 546(e) applies to them based on their separate agreements with Sentry, but this similarly provides no basis for granting their Motion.  *Multi-Strategy II* addressed this hypothetical and confirmed that any such application of the Section 546(e) safe harbor "do[es] not appear answerable on the pleadings."  *Multi-Strategy II*, 2022 WL 16647767, at *9.  Specifically, Judge Rakoff held that whether an initial transfer could have been made "in connection with" an agreement between an initial transferee and subsequent transferee for purposes of Section 546(e) was a factual question that provided no basis for an interlocutory appeal.  *Id*. at *8-9.  This is because whether or not an initial transfer is avoidable will require a fact-intensive inquiry surrounding each of the initial transfers.  These facts, which are Defendants'

18

burden to plead and prove, *id.* at *3 n.3, are not known at this stage of the litigation and certainly cannot be determined from the pleadings or from Defendants' Motion.[7]

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Defendants' Motion.

Dated: November 14, 2022
New York, New York

*/s/ David J. Sheehan*

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Matthew D. Feil
Email:  mfeil@bakerlaw.com
Elizabeth McCurrach
Email:  emccurrach@bakerlaw.com
David Choi
Email:  dchoi@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 estate of Bernard L. Madoff*

---

[7] The Trustee does not concede that any agreements or transfers between Sentry and Defendants independently activate the safe harbor under Section 546(e) as to Defendants.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers are customer property—that the initial transfers were "in connection with" any agreements with Defendants, or subscription or redemption requests from Defendants, for purposes of Section 546(e).  The Trustee also does not concede that, in any event, Defendants' knowledge would become relevant, as opposed to that of the initial transferee.