Richard A. Cirillo
CIRILLO LAW OFFICE
246 East 33rd Street – # 1
New York, NY 10016-4802
Telephone: 917-541-6778
E-mail: rcirillo@cirillo-law.com
*Attorney for Defendant*
*Korea Exchange Bank*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                   Plaintiff-Applicant, <br><br>     v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                   Defendant. | No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>                   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, <br><br>                   Plaintiff, <br><br>     v. <br><br> KOREA EXCHANGE BANK, individually and as Trustee for Korea Global All Asset Trust I-1, and as Trustee for Tams Rainbow Trust III, <br><br>                   Defendant. | Adv. Pro. No. 11-02572 (CGM) |

**KOREA EXCHANGE BANK'S ANSWER AND DEFENSES
TO THE FIRST AMENDED COMPLAINT**

Defendant Korea Exchange Bank ("KEB") answers the First Amended Complaint (the

"Complaint") filed on June 6, 2012 by Plaintiff Irving H. Picard, Trustee for the Liquidation of

Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (the "Trustee") and

asserts defenses as follows:

<u>THE TRUSTEE'S ALLEGATIONS AGAINST "DEFENDANTS"</u>

The Complaint added as a codefendant with KEB another Korean entity called Korea

Investment Trust Management Company ("KITMC"). The Complaint repeatedly makes

allegations against "Defendants" without differentiating the alleged conduct of one from that of

the other. KEB and KITMC are separate, independent, non-affiliated companies and have

conduct any business between them at arms' length. The Trustee dismissed KITMC from the

action without prejudice on December 22, 2021. However, the Trustee did not amend the

Complaint to specify which of the two entities the Trustee means by allegations made about the

"Defendants" collectively. KEB answers the Complaint only for itself and not for KITMC and

denies it has any liability for any act or omission by KITMC.

<u>KEB'S ANSWER TO THE TRUSTEE'S ALLEGATIONS AGAINST KEB</u>

I.    NATURE OF THE ACTION[*]

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover
BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff") and others.

---

[*] For the purpose of its answer and defenses, KEB is treating the captions in the Complaint as conveniences and not
allegations requiring an answer.

[1] Footnote 1 alleges that SIPA § 78lll(4) defines "Customer Property" as cash and securities at any time
received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer,
and the proceeds of any such property transferred by the debtor, including property unlawfully converted.
ANSWER TO FN 1: This footnote accurately but incompletely quote from the cited statute and KEB states that
the meaning of Customer Property requires reference also to other provisions of SIPA and other statutes and
decisional law.

ANSWER TO ¶ 1: KEB admits that this paragraph states the Trustee's view of his goal in

filing this proceeding and denies that KEB received any "Customer Property" (as defined)

and that the Trustee is entitled to recover any amount from or obtain any relief against KEB.

2.     With this Complaint, the Trustee seeks to recover at least $33,593,108 in
subsequent transfers of Customer Property made to Defendants. The subsequent transfers were
derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"),
which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin
Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's
investment advisory business ("IA Business") for the purpose of investing assets with BLMIS.
Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts.

ANSWER TO ¶ 2: KEB admits that the Trustee seeks to recover "at least $33,593,108" from

KEB and that Fairfield Sentry Limited ("Fairfield Sentry") is a British Virgin Island ("BVI")

corporation in liquidation before BVI courts; denies that the Trustee is entitled to recover that

amount or any other amount from KEB; and states that it lacks knowledge or information

sufficient to form a belief about the truth of all other allegations of this paragraph. KEB lacks

knowledge or information sufficient to form a belief about the truth of allegations of this

paragraph as directed at KITMC.

## II.    JURISDICTION AND VENUE

3.     The Trustee brings this adversary proceeding pursuant to his statutory authority
under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of
title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"); and the
New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§
273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendants
as subsequent transferees of funds originating from BLMIS.

ANSWER TO ¶ 3: KEB admits that the Trustee brings this adversary proceeding

pursuant to and under the cited statutes; denies the Trustee is entitled to exercise any

statutory authority to avoid and/or recover any transfer to KEB received from any source;

and states that this paragraph contains contentions of law to which no answer is required

and, if any answer is required, denies them. KEB lacks knowledge or information

sufficient to form a belief about the truth of allegations of this paragraph as directed at

KITMC.

4.      This is an adversary proceeding brought in this Court, in which the main
underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is
pending. The SIPA Case was originally brought in the United States District Court for the
Southern District of New York (the "District Court") as Securities Exchange Commission v.
Bernard L. Madoff Investment Securities LLC, et al., No. 08 CV 10791 (the "District Court
Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §
1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

ANSWER TO ¶ 4:  KEB admits the first and second sentences of this paragraph and states

that the third sentence is a contention of law to which no answer is required and, if an answer

is required, denies it.

5.      Defendants are subject to personal jurisdiction in this judicial district because they
purposely availed themselves of the laws and protections of the United States and the state of
New York by, among other things, knowingly directing funds to be invested with New York-
based BLMIS through Fairfield Sentry. Defendants knowingly received transfers of Customer
Property from BLMIS. The Trustee's investigation to date reveals that Defendants obtained this
Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group
("FGG") managed Madoff feeder fund. By directing its investment through FGG, Defendants
knowingly accepted the rights, benefits, and privileges of conducting business and/or
transactions in the United States and New York. Defendant KEB, on behalf of Defendants,
entered into a subscription agreement that subjected it to New York jurisdiction, sent a copy of
the subscription agreement to FGG's New York City office, wired funds to Fairfield Sentry
through a bank in New York, and received funds through its own bank account in New York.
Defendants thus derived significant revenue from New York and maintained minimum contacts
and/or general business contacts with the United States and New York in connection with the
claims alleged herein.

ANSWER TO ¶ 5:  KEB denies the allegations of the first, second, fourth, and sixth

sentences of this paragraph. As to the third sentence, KEB lacks knowledge or information

sufficient to form a belief about the truth of the allegations concerning an investigation

conducted by Trustee and otherwise denies the allegations of that sentence except it admits

that KEB, acting solely in its capacity as trustee on behalf of certain Korean investment trusts

at the direction of the trusts' asset managers, redeemed through a Citco entity certain

Fairfield Sentry shares that were held by the trusts; denies it knew Fairfield Sentry was a

"Madoff Feeder fund;" and denies it dealt with an entity called Fairfield Greenwich Group.

As to the fifth sentence, KEB admits that, acting solely in its capacity as trustee on behalf of

certain Korean investment trusts at the direction of the trusts' asset managers, it signed

certain subscription agreements with Fairfield Sentry and wired funds from a bank account in

Korea to a Citco bank account in Ireland and received funds in a bank account in Korea from

a Citco bank account in Ireland with facilitation by New York correspondent banks; denies

all other allegations of a factual nature in the fifth sentence of this paragraph; and, to the

extent of the allegations of this paragraph that are contentions of law, states that no answer is

required and, if an answer to them is required, denies them. KEB lacks knowledge or

information sufficient to form a belief about the truth of allegations of this paragraph as

directed at KITMC.

6.      Defendants are also subject to the jurisdiction of this Court because Defendant
KEB, on behalf of Defendants, filed three customer claims with the Trustee, designated as
Claims #014622, #015071 and #015092, thereby subjecting Defendants to New York
jurisdiction.

ANSWER TO ¶ 6:  KEB denies that it is subject or submitted itself to the jurisdiction of this

Court; admits that, acting solely in its capacity as trustee on behalf of certain Korean

investment trusts, it filed certain customer claims with the Trustee; states the allegations of

this paragraph that are legal contentions do not require an answer and, to the extent they

require an answer, denies them. KEB lacks knowledge or information sufficient to form a

belief about the truth of allegations of this paragraph as directed at KITMC.

4

7.      Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

ANSWER TO ¶ 7:  KEB denies the allegations of this paragraph. KEB lacks knowledge or information sufficient to form a belief about the truth of allegations of this paragraph as directed at KITMC.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

ANSWER TO ¶ 8:  This is a contention of law to which no answer is required and, if an answer is required, denies it.

9.      Venue in this District is proper under 28 U.S.C. § 1409.

ANSWER TO ¶ 9:  This is a contention of law to which no answer is required. KEB contests the Court's jurisdiction over KEB but not venue in this District if jurisdiction is found.

III.    BACKGROUND

10.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

ANSWER TO ¶ 10:  KEB admits that the allegations in this paragraph present information made available to KEB and others in public sources after they occurred and otherwise lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

11.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

ANSWER TO ¶ 11:  KEB admits that the allegations in this paragraph present information that became available to KEB from public sources after they occurred and otherwise lacks

5

knowledge or information sufficient to form a belief about their truth but does not contest

them.

12.     On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a
combination of its own action with an application of the Securities Investor Protection
Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in
the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to
securities customers as they came due and, accordingly, its customers needed the protections
afforded by SIPA.

ANSWER TO ¶ 12:  KEB admits that the allegations in this paragraph present information

that became available to KEB from public sources after they occurred and lacks knowledge

or information sufficient to form a belief about their truth but does not contest them.

13.     Also on December 15, 2008, Judge Stanton granted the SIPC application and
entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part: a.
removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS
under SIPA § 78eee(b)(3); b. appointed Baker & Hostetler LLP as counsel to the Trustee under
SIPA § 78eee(b)(3); and c. removed the case to the United States Bankruptcy Court for the
Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

ANSWER TO ¶ 13:  KEB admits that the allegations in this paragraph present information

that became available to KEB from public sources after they occurred and lacks knowledge

or information sufficient to form a belief about their truth but does not contest them.

14.     By orders dated December 23, 2008, and February 4, 2009, respectively, the
Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person.
Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

ANSWER TO ¶ 14:  KEB admits that the allegations in this paragraph present information

that became available to KEB from public sources after they occurred and lacks knowledge

or information sufficient to form a belief about their truth but does not contest them.

15.     At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned
United States v. Madoff, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No.
50), Madoff pled guilty to an eleven-count criminal information filed against him by the United
States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff

6

admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."
Id. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing
[was] wrong, indeed criminal." Id. On June 29, 2009, Madoff was sentenced to 150 years in
prison.

ANSWER TO ¶ 15:  KEB admits that the allegations in this paragraph present information

that became available to KEB from public sources after they occurred and lacks knowledge

or information sufficient to form a belief about their truth but does not contest them.

16.      On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to
participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11,
2009, in the case entitled United States v. DiPascali, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug.
11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things,
DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.
Id. at 46.

ANSWER TO ¶ 16:  KEB admits that the allegations in this paragraph present information

that became available to KEB from public sources after they occurred and lacks knowledge

or information sufficient to form a belief about their truth but does not contest them.

IV.      TRUSTEE'S POWERS AND STANDING

17.      As Trustee appointed under SIPA, the Trustee is charged with recovering and
paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other
assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of
marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present
assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they
invested with BLMIS over the years. Consequently, the Trustee must use his broad authority
under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and
entities that received preferences and fraudulent transfers to the detriment of defrauded
customers whose money was consumed by the Ponzi scheme. Absent this and other recovery
actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through
(D) of SIPA § 78fff-2(c)(1).

ANSWER TO ¶ 17: KEB admits the allegations of the first and second sentences of this

paragraph and states that it lacks knowledge or information sufficient to form a belief about

the truth of the allegations in the remaining sentences of this paragraph.

18.     Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

ANSWER TO ¶ 18: KEB states that the allegations of this paragraph are legal contentions to

which no answer is required but does not contest them.

19.     Under SIPA §§ 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

ANSWER TO ¶ 19:  KEB states that the allegations of this paragraph are legal contentions to

which no answer is required but does not contest them.

20.     The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

ANSWER TO ¶ 20: KEB states that the allegations of this paragraph are legal contentions to

which no answer is required but does not contest them; that there are no claims that the

Trustee may bring and no transfers received by KEB that the Trust may avoid or recover; and

otherwise denies the allegations of this paragraph,.

## V.     THE DEFENDANTS

21.     Defendant KEB is a Korean foreign exchange bank maintaining its principal executive office at 181- 2ga, Euljiro, Chung-gu, Seoul 100-793, South Korea.

ANSWER TO ¶ 21: KEB admits that this was the principal executive office address of KEB

at the time the amended complaint was filed.

22.     Defendant KITMC is an investment and asset management company maintaining its principal executive office at 27-1, Yeouido-dong Yeondeungpo-gu, Seoul 150-745, South Korea.

8

ANSWER TO ¶ 22:  KEB Admits that KITMC has or had an office at that address but

cannot admit or deny that it was KITMC's "principal executive office."

## VI.    THE PONZI SCHEME

23.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

ANSWER TO ¶ 23: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph except admits that BLMIS was at one time

registered with the United States Securities and Exchange Commission as a broker-dealer.

24.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

ANSWER TO ¶ 24: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

25.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

ANSWER TO ¶ 25: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

26.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities.   Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

ANSWER TO ¶ 26: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

27.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

ANSWER TO ¶ 27: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

28.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

ANSWER TO ¶ 28: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

29.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments.

BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

ANSWER TO ¶ 29: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

30.     It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

ANSWER TO ¶ 30: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

31.     Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

ANSWER TO ¶ 31: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

32.     Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

ANSWER TO ¶ 32: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

33.     Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

ANSWER TO ¶ 33: KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph.

## VII.    THE TRANSFERS

34.    Defendants received subsequent transfers of Customer Property from Fairfield Sentry, which maintained customer accounts with BLMIS.

ANSWER TO ¶ 34:  KEB lacks knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph. KEB lacks knowledge or information sufficient

to form a belief about the truth of allegations of this paragraph as directed at KITMC.

A.    Initial Transfers From BLMIS To Fairfield Sentry

35.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption Picard v. Fairfield Sentry Ltd., Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

ANSWER TO ¶ 35:  KEB admits the first sentence of this paragraph.  KEB acknowledges

that the Trustee purports to incorporate the Fairfield Amended Complaint into this Complaint

by reference and states that such incorporation is impermissible under the Federal Rules of

Civil Procedure and prejudicial to KEB's rights.

36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), are avoidable, and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 36: KEB lacks knowledge or information sufficient to form a belief about

the truth of allegations of the first sentence of this paragraph; states that the second sentence

is a legal contention to which no answer is required and, if an answer is required, denies it;

and denies that the Trustee may avoid or recover any transfer made to KEB.

37.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the

12

"Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), are avoidable, and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 37: KEB lacks knowledge or information sufficient to form a belief about

the truth of allegations of the first sentence of this paragraph; states that the second sentence

is a legal contention to which no answer is required and, if an answer is required, denies it;

and denies that the Trustee may avoid or recover any transfer made to KEB.

38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 38: KEB lacks knowledge or information sufficient to form a belief about

the truth of allegations of the first sentence of this paragraph; states that the second sentence

is a legal contention to which no answer is required and, if an answer is required, denies it;

and denies that the Trustee may avoid or recover any transfer made to KEB.

39.    The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are included as Exhibits A and B.

ANSWER TO ¶ 39:  KEB admits that the Trustee adopts the terminology in the first sentence

of this paragraph and states that it lacks knowledge or information sufficient to form a belief

about the truth of allegations about what Exhibits A and B show or purport to show.

40.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment against Fairfield

13

Sentry in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

ANSWER TO ¶ 40: KEB admits the allegations of this paragraph but also states that they are an incomplete description of the referenced orders, Settlement Agreement, and consent judgment.

B.      Subsequent Transfers From Fairfield Sentry To Defendants

41.     A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendants and is recoverable from Defendants pursuant to section 550 of the Bankruptcy Code. Based on the Trustee's investigation to date, approximately $33,593,108 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendants (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

ANSWER TO ¶ 41: KEB admits that from time to time, solely in its capacity as trustee of certain Korean investment trusts for which it acted as trustee, it received from a Citco entity payments for redemptions of Fairfield Sentry shares made at the direction of the trusts' asset managers totaling approximately $33,593,108 over a period of time; denies that any part of the amount received is recoverable from KEB by the Trustee pursuant to section 550 of the Bankruptcy Code or otherwise; states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; and, as to allegations that are contentions of law, states that no answer is required and, if an answer is required, it denies them.  KEB lacks knowledge or information sufficient to form a belief about the truth of allegations of this paragraph as directed at KITMC.

42.     The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

ANSWER TO ¶ 42: KEB acknowledges that the Trustee says his investigation is ongoing

and that he reserves certain rights but denies that the Trustee has any rights to reserve for

purposes of seeking recovery of any transfers from KEB.

COUNT ONE

RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 550 AND 551

43.    The Trustee incorporates by reference the allegations contained in the previous
paragraphs of this Complaint as if fully rewritten herein.

ANSWER TO ¶ 43: KEB incorporates by reference its answers to the previous paragraphs of

the Complaint as if fully rewritten herein.

44.    Defendants received the Fairfield Sentry Subsequent Transfers totaling
approximately $33,593,108, which are recoverable pursuant to Section 550 of the Bankruptcy
Code.

ANSWER TO ¶ 44:  KEB admits that from time to time, solely in its capacity as trustee of

certain Korean investment trusts for which it acted as trustee, it received from a Citco entity

payments for redemptions of Fairfield Sentry shares made at the direction of the trusts' asset

managers totaling approximately $33,593,108 over a period of time; and denies that the

Trustee is entitled to recover any part of that amount pursuant to Section 550 of the

Bankruptcy Code or otherwise. KEB lacks knowledge or information sufficient to form a

belief about the truth of allegations of this paragraph as directed at KITMC.

45.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly
to, or for the benefit of, Defendants.

ANSWER TO ¶ 45: KEB denies that any transfer to it by Fairfield Sentry was made for its

benefit directly or indirectly. KEB lacks knowledge or information sufficient to form a belief

about the truth of allegations of this paragraph as directed at KITMC.

15

46.     Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

ANSWER TO ¶ 46: KEB denies the allegations in this paragraph. KEB lacks knowledge or information sufficient to form a belief about the truth of allegations of this paragraph as directed at KITMC.

47.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

ANSWER TO ¶ 47:  KEB denies that the Trustee is entitled to a judgment against KEB in any amount pursuant to the cited statutes or otherwise. KEB lacks knowledge or information sufficient to form a belief about the truth of allegations of this paragraph as directed at KITMC.

## KEB'S ANSWER TO THE TRUSTEE'S PRAYER FOR RELIEF

The Trustee is not entitled to any relief from KEB.

## KEB'S DEFENSES TO THE TRUSTEE'S CLAIM AGAINST KEB

KEB, without accepting the burden of proof on any issue or element that is the Trustee's burden, states the following defenses to the Trustee's claim. KEB incorporates herein by reference the contents of its memorandum and reply memorandum and the declaration filed in support of KEB's motion to dismiss the Complaint in this action as if fully rewritten herein

FIRST
(KEB Was a Mere Conduit)

16

1.      The Trustee may not recover from KEB for any transfer of funds to KEB because KEB was not a mediate or intermediate transferee of any initial transferee of property within the meaning of Section 550(a) of the Bankruptcy Code.

2.      KEB acted solely in the capacity of the trustee of certain Korean investment trusts when it purchased and redeemed Fairfield Sentry shares on behalf of the trusts and acted solely at the direction of the trusts' asset managers.

3.      KEB did not have or exercise any discretion or decision-making as to the purchases or redemptions of Fairfield Shares. KEB did not have or exercise any dominion or control over the trusts' funds used to invest in, or over the payments it received on behalf of the trusts in exchange for the trusts' redemptions of, Fairfield Sentry shares.

4.      KEB had no right to and did not control the trusts' funds used to purchase Fairfield Sentry shares or received for redemptions of such shares and was required to pay funds only in conformity with the trust documents when and as directed by the trusts' asset managers.

5.      KEB had no right to use any of the trusts' funds for its own purposes. KEB did not invest any of its own money in Fairfield Sentry shares and did not own any Fairfield Sentry shares, including the shares it purchased and redeemed on behalf of the trusts or any gain on the trusts' investments.

6.      KEB had only bare legal title to and had no beneficial ownership of the Fairfield Sentry shares it held for the trusts, the trusts' funds used to purchase such shares, or payments it received upon redeeming the Fairfield Sentry shares on the trusts' behalf.

7.      KEB derived no benefit from the trusts' investments and was paid only a modest fee for its ministerial, administrative services as trustee.

SECOND

17

(KEB Acted in Good Faith)

8.      The Trustee may not recover from KEB because KEB took all the transfers in good faith and without knowledge of the alleged voidability of the transfers within the meaning of Bankruptcy Code § 550(b) of the Bankruptcy Code.

9.      KEB took transfers for value within the meaning of Bankruptcy Code § 550(b) because the payments KEB received as trustee on behalf of the trusts for redemptions of the Fairfield Sentry shares were in exchange for the surrender of the trusts' shares being redeemed.

10.     At the times when KEB received transfers from Fairfield Sentry, KEB had no knowledge of fraud by Madoff, BLMIS, Fairfield Sentry, or any of their respective affiliates, officers, directors, employees, agents, or other personnel, and did not know or suspect that Madoff and BLMIS were not making securities trades or were engaged in a fraud.

11.     KEB did not know facts at the times when it purchased or redeemed Fairfield Sentry shares on behalf of the trusts at the trusts' investment managers' direction that would have led a reasonable person to inquire into whether there was fraud behind the transfers.

12.     Even if KEB had been on inquiry notice of possible fraud, it would not have discovered or obtained knowledge of fraud by investigation.

13.     This is evidenced by the fact that, upon information and belief, many substantial investors in Fairfield Sentry shares and other financial companies that provided funds that were used in connection with investments in Fairfield Sentry shares did conduct diligent investigations and did not obtain knowledge of the fraud.

14.     Similarly, significant independent public auditing companies with substantial incentive to inquire into the financial position of Fairfield Sentry and other so-called "Madoff feeder funds" did not, upon information and belief, discover or obtain knowledge of fraud and

18

certified Fairfield Sentry's and other "feeder funds'" financial statements as fairly presenting

their respective financial positions.

15.    In addition, one or more government entities, at least one after reportedly

receiving detailed third-party analyses of BLMIS' activities on two occasions and after

conducting regulatory inquiries into BLMIS and Madoff, and did not, upon information and

belief, discover or obtain knowledge of fraud.

THIRD
(Transfers to KEB Were Not "Customer Property")

16.    All or some of the transfers received by KEB from Fairfield Sentry, upon

information and belief, did not consist in whole or part of "Customer Property" and, accordingly,

may not be avoided and recovered by the Trustee from KEB.

17.    The information contained in the Exhibits to the Complaint and the complaints in

similar adversary proceedings in case number 08-ap-01789 (the "Exhibits") show that some or

all the transfers by Fairfield Sentry to KEB did not originate with BLMIS, must have originated

from other sources, and are not "Customer Property."

18.    Those other sources include, upon information and belief, proceeds that Fairfield

Sentry received from selling shares to new investors and used to make payments for redemptions

of shares by other Fairfield Sentry shareholders without the proceeds ever having been remitted

to BLMIS.  Those funds paid to redeeming Fairfield Sentry shareholders are not "Customer

Property."

FOURTH
(Transfers to KEB Are Protected by the Safe Harbor)

19

19.     The transfers received by KEB more than two years prior to the Filing Date are protected from avoidance and recovery by the safe harbor provided by Bankruptcy Code § 546(e).

20.     BLMIS, Fairfield Sentry, and KEB were at all relevant times covered entities under that statute, being stockbrokers, financial institutions, financial participants, and/or otherwise covered entities.

21.     All the transfers received by KEB were received in connection with or relation to a securities agreement between BLMIS and Fairfield and/or between Fairfield and KEB.

22.     All the transfers to KEB but one took place at least two years before the Filing Date.

23.     None of the transfers was made with intent to hinder, delay, or defraud BLMIS' or Fairfield Sentry's creditors.  The so-called "Ponzi scheme presumption" does not meet the "intent to hinder delay or defraud" element because it is based on faulty legal and factual reasoning and has not been adopted by the Second Circuit Court of Appeals or  the Supreme Court.

24.     At the times when KEB received transfers from Fairfield Sentry, KEB had no knowledge of fraud committed by Madoff, BLMIS, Fairfield Sentry, or any of their respective affiliates, officers, directors, employees, agents, or other personnel, and it did not know or suspect that Madoff and BLMIS were not making securities trades or were engaged in a fraud.

FIFTH
(State Claims Under NY Debtor & Creditor Law Barred)

25.     The Trustee's claim under Bankruptcy Code § 544 that relies on the New York Debtor & Creditor Law is barred because the transfers to KEB were taken for fair consideration

20

and without knowledge of the fraud, and without actual fraudulent intent and for fair

consideration, within the meaning of § 278(1) and (2), respectively.

### SIXTH
### (*In Pari Delicto*—Unclean Hands)

26.     The Trustee stands in the shoes of BLMIS, which committed the alleged frauds

that resulted in the alleged losses the Trustee seeks to recover from KEB. The Trustee is barred

from recovering such losses from KEB because BLMIS' acts and omissions are attributed to the

Trustee by the doctrines of *in pari delicto* and unclean hands.

### SEVENTH
### (Predicate Initial Transfer Not Avoided)

27.     The Trustee may not recover transfers from KEB until and unless transfers

between BLMIS and Fairfield have been avoided, which has not occurred and may not occur.

### EIGTH
### (Single Satisfaction)

28.     If and to the extent the Trustee recovers from another mediate or immediate

transferee the amount of any avoided initial transfer that includes customer property the Trustee

alleges KEB received, the Trustee is barred from recovering that amount from KEB by virtue of

Bankruptcy Code § 550(d).

### NINTH
### (Recovery from Liquidators)

29.     If and to the extent the Trustee recovers from the Liquidators of Fairfield Sentry

all or any portion of the amount it seeks from KEB pursuant to the sharing provisions of the

settlement agreement into which the Trustee and Liquidators entered and the Court approved in

2011, or otherwise, the Trustee may not recover the same amount from KEB because it would

constitute an impermissible double recovery for a single loss.

21

## TENTH
### (Reservation of Possible Claim)

30.     KEB reserves its rights of claim and recovery under Bankruptcy Code § 502(h) if

and to the extent the Trustee were to recover from KEB.

## ELEVENTH
### (Trustee Not Entitled to Interest)

31.     If the Trustee were to recover from KEB, the Trustee is not entitled to

prejudgment interest on the award.

## TWELFTH
### (Lack of Personal Jurisdiction)

32.     This Court lacks personal jurisdiction over KEB because KEB did not

purposefully avail itself of the privilege of conducting activities within the forum State and thus

did not invoke the benefits and protections of its laws.

## KEB'S JURY TRIAL DEMAND

KEB demands a jury trial on all claims and issues that may be tried by a  jury pursuant to

Federal Rule of Civil Procedure 38(b) made applicably by Federal Rule of Bankruptcy

Procedure 9015.

## KEB'S RULE 7012(b) STATEMENT

KEB does not consent to entry of final orders or judgment by the Bankruptcy Court.

WHEREFORE, KEB respectfully asks this Court to dismiss the Complaint and this

action with prejudice and award KEB its legal and expert fees and expenses, court costs, and

such other relief as may be just and equitable.

22

Dated:  New York, NY
November 14, 2022

Respectfully submitted,

CIRILLO LAW OFFICE

/s/ Richard A. Cirillo

_____

Richard A. Cirillo
246 East 33rd Street – # 1
New York, NY 10016-4802
Telephone:  917-541-6778
E-mail: rcirillo@cirillo-law.com

*Attorney for Defendant*
*Korea Exchange Bank*