Joshua E. Abraham
BUTZEL LONG, P.C.
477 Madison Avenue, Suite 1230
New York, New York 10022
(212) 374-5370
abraham@butzel.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01048 (CGM) |
| Plaintiff, | |
| v. | |
| BANCO GENERAL, S.A., and BG VALORES, S.A., f/k/a WALL STREET SECURITIES, S.A. | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    Fairfield Sentry, Ltd. ............................................................................................................ 2

    The Trustee's Inconsistent Calculations of BLMIS Customer Property
    Transferred to Fairfield Sentry ............................................................................................. 3

    The Fairfield Liquidators' Actions Against the Defendants ................................................ 4

    The Present Action ............................................................................................................... 5

ARGUMENT ................................................................................................................................... 5

I.    The Trustee's Claims Are Barred by Section 546(e) ........................................................... 5

    A.    Introduction ............................................................................................................ 5

    B.    The Alleged Initial Transfers Are Covered by
           Section 546(e) ........................................................................................................ 7

        1.    The Fairfield Sentry Initial Transfers Were Made in Connection With the
            BLMIS-Fairfield Sentry Account Agreements, Which Are "Securities
            Contracts" .................................................................................................. 7

        2.    The Fairfield Sentry Initial Transfers Were "Settlement Payments" .............. 8

II.    The Trustee's Claims Must Be Dismissed for Failure to Plead Plausably that Defendants
     are Subsequent Transferees of BLMIS' Customer Property ............................................... 9

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fairfield Sentry Ltd. v. Banco General S.A.*,
  Adv. Pro. No. 12-1286 ............................................................................................4

*Fairfield Sentry Ltd. v. Citco Global Custody NV*,
  No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF 19, ¶ 63 ..........................10

*Fairfield Sentry Ltd. v. Citibank, NA London*,
  No. 1:19-cv-03911-VSB (S.D.N.Y.) .....................................................................5

*Fairfield Sentry Ltd. v. Wall Street Securities S.A.*,
  Adv. Pro. No. 10-03778 ..........................................................................................4

*Garfinkle v. Conf. on Jewish Material Claims Against Ger.*, Inc.,
  2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) .........................................................10

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
  Trust)*, 773 F.3d 411 (2d Cir. 2014) .......................................................................7

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  946 F.3d 66 (2d Cir. 2019) ................................................................................6, 7

*Kirschner v. FitzSimons*,
  2022 WL 161692 (U.S. Jan. 5, 2022) ......................................................................7

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018) ...............................................................................................6

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .................................................................................11

*Picard v. Banque Lombard Odier & Cie SA*,
  Adv. Pro. No. 12-01693 (CGM), ECF No. 90 ¶ 12 .........................................3, 9

*Picard v. Shapiro (In re Madoff)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....................................................................9

*Sapia v. Home Box Off., Inc.*,
  No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ......................11

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No.
  08-1789, 2021 WL 3477749 (Bankr. S.D.N.Y. Aug. 6, 2021) .............................2

ii

*Tellabs, Inc. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)..................................................................................................2

**Statutes**

11 U.S.C. § 546(e) ...............................................................................................1, 6, 7, 8

11 U.S.C. § 550(a)(1).....................................................................................................5

11 U.S.C. § 550(a)(1)(2).................................................................................................5

11 U.S.C. § 741(7) .........................................................................................................8

11. U.S.C § 548(a)(1)(A)................................................................................................6

11 U.S.C. § 741(7)(A).....................................................................................................7

SIPA § 78fff-2(C)(3).......................................................................................................9

**Rules**

Rule 12(b)(6)..................................................................................................................1

Defendants Banco General, S.A., and BG Valores, S.A., f/k/a Wall Street Securities, S.A., (collectively, "Defendants") respectfully submit this memorandum of law and the accompanying declaration of Joshua E. Abraham ("Abraham Declaration") in support of their motion to dismiss the complaint, (the "Complaint") (ECF No. 1) of plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Defendants are "net losers." They invested in BLMIS feeder-fund Fairfield Sentry Ltd., and lost millions of dollars after it was discovered that BLMIS was operating as a Ponzi scheme. In his Complaint, the Trustee does not allege that the Defendants' investment in Fairfield Sentry was profitable, or that the Defendants had any inkling or suspicion whatsoever that BLMIS was a fraud. Nevertheless, the Trustee has sued the Defendants as subsequent transferees of BLMIS customer property, seeking a judgement in excess of $9.4 million.

The Complaint – which asserts one cause of action under Section 550 of the Bankruptcy Code – should be dismissed on two legal grounds.

First, the Trustee's claim is barred by the Section 546(e) "safe harbor." The Trustee's Complaint establishes, as a matter of law, that the alleged initial transfers to the Defendants fall within the statute's safe harbor because: (i) they were made "in connection with a securities contract;" and (ii) they constituted "settlement payments" within the meaning of Section 546(e).

Second, the Complaint should be dismissed for its failure to plead an essential element of the Trustee's Section 550(a) subsequent transfer claim: the Defendants' actual receipt of

BLMIS customer property. Through various pleadings filed in this Court (here and in 81 other related subsequent transfer actions), the Trustee has asserted that BLMIS transferred $3 billion in customer property to Fairfield Sentry. Yet the Trustee has simultaneously asserted that Fairfield Sentry transferred $5 billion in BLMIS customer property to various subsequent transferees. As should be evident, this is not mathematically possible. More plausibly, the transfers made to the Defendants did not originate with BLMIS – they were redemption payments made by Fairfield Sentry of *Fairfield Sentry* property. Because the Trustee has failed to actually trace the transfers he alleges from BLMIS, the Complaint should be dismissed.

## BACKGROUND

**Fairfield Sentry, Ltd.**

Fairfield Sentry – in which the Defendants invested – was an investment fund that sold shares directly to subscribing foreign investors from the 1990s through BLMIS's collapse in December 2008. *See* Abraham Declaration ("Decl."), Exhibit A ("Ex. A") (the "Fairfield Amended Complaint") ¶¶ 23, 32–35.[1]

On May 18, 2009, the Trustee commenced an action against Fairfield Sentry and others (the "Fairfield Action") to avoid and recover initial transfers of customer property that they allegedly had received from BLMIS. *See* Complaint ("Compl.") ¶¶ 37-38.

On May 9, 2011, the Trustee and the Fairfield Liquidators entered into a settlement agreement (the "Fairfield Settlement Agreement"). *See* Abraham Decl., Ex. B ("Ex. B")

---

[1] On a Rule 12(b)(6) motion, "courts must consider," in addition to "the complaint in its entirety," including exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-1789, 2021 WL 3477749, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

2

(Fairfield Settlement Agreement). In the Fairfield Settlement Agreement, "the Trustee and the Liquidators each agree[d] to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims." *See id.*, Ex. B (Fairfield Settlement Agreement) ¶ 14. (The "Sharing Claims" include this action.) Thus, for over a decade, the Trustee has had the benefit of the Fairfield Funds' cooperation and full access to their records, including records demonstrating precisely how much customer property was received by BLMIS and how much customer property was transferred to third-party investors (such as Defendants and others).

**The Trustee's Inconsistent Calculations of BLMIS**
**Customer Property Transferred to Fairfield Sentry**

Notwithstanding its access to these records, the Trustee has not been able to establish how much customer property flowed from BLMIS to Fairfield Sentry and then on to investors in Fairfield Sentry. The Trustee asserts that BLMIS transferred "**approximately $3 billion**" in customer property to Fairfield Sentry in the six years prior to the filing date. *See* Compl. ¶¶ 37-38 (emphasis added). However, the Trustee seeks the recovery of **over $5 billion** in BLMIS customer property from various subsequent transferees of Fairfield Sentry, as follows:

- **$3.211 billion** from Fairfield Sentry's investors in 81 subsequent transfer actions, including this one. *See Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), ECF No. 90 ¶ 12 (detailing and itemizing the 81 Fairfield subsequent transfer actions and the recoveries the Trustee is seeking in each such action);

- **$1.139 billion** in subsequent transfers to certain non-settling defendants in the Fairfield Action (made to them in the form of management fees, incentive fees, and

3

other compensation or remuneration).  *See* Abraham Decl., Ex. C (Exs. 8, 10, 12, 13, 14, and 21 to Fairfield Second Am. Compl.); and

- **$824 million** from Fairfield Sigma and Fairfield Lambda, as subsequent transferees of Fairfield Sentry.  *See* Abraham Decl., Ex. A ¶¶ 53, 58.

Consequently, there is no match between (i) the amount of customer property that the Trustee alleges was transferred from BLMIS to Fairfield Sentry (*i.e.*, $3 billion), and (ii) the amount of customer property that the Trustee alleges was subsequently transferred from Fairfield Sentry to its investors and others (*i.e.*, $5 billion).  The Trustee fails to account for over $2 billion in alleged subsequent transfers.

**The Fairfield Liquidators' Actions Against the Defendants**

Commencing in or about April 2010, the Fairfield Liquidators filed actions in New York against hundreds of Fairfield investors, seeking to "claw back" redemption payments.  *See* Abraham Decl., Ex. B (Ex. G to the Fairfield Settlement Agreement at 1–5 (listing 209 such actions filed in this Court as of May 9, 2011)).

Among these were two adversary proceedings in this Court in which the Fairfield Liquidators sued the Defendants to recover substantially the same transfers at issue in this action.  *See Fairfield Sentry Ltd. v. Wall Street Securities S.A.*, Adv. Pro. No. 10-03778, and *Fairfield Sentry Ltd. v. Banco General S.A.*, Adv. Pro. No. 12-1286.

After a series of decisions by this Court, the Fairfield Liquidators' claims against the Defendants were dismissed (which decisions were affirmed by the District Court and are now on appeal to the Second Circuit).  *See Fairfield Sentry Ltd. v. Citibank, NA London*, No. 1:19-

4

cv-03911-VSB (S.D.N.Y.) (lead case in the administratively consolidated appeals), ECF No. 600 (Amended Opinion & Order).

**The Present Action**

The Trustee filed this action on February 9, 2012. *See* ECF No. 1. Stripped of its allegations concerning the operations of BLMIS and Fairfield Sentry (which are identical to the Trustee's pleadings in dozens of other actions), the Complaint asserts only the following bare facts concerning the Defendants: they invested in Fairfield Sentry and received approximately $9.4 million in redemption payments allegedly recoverable as subsequent transfers under Section 550. *Id.*, ¶¶ 2, 3, 43, 45. The Complaint does not plead which transfers from BLMIS to Fairfield Sentry were subsequently transferred to the Defendants. Nor does the Complaint assert that the Defendants are "net winners" on their investment, or that the Defendants had any suspicion concerning BLMIS's fraudulent operations.

## ARGUMENT

**I.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(E)**

    **A.    Introduction**

The Trustee's cause of action in this case is asserted under Section 550(a), which provides that, to the extent a transfer is avoided under enumerated Code provisions, "the trustee may recover, for the benefit of the estate, the property transferred," or its value, from "the initial transferee" or any subsequent "transferee of the initial transferee." 11 U.S.C. § 550(a)(1), (2). However, "[t]he Code sets out a number of limits on the exercise of these avoiding powers,"

5

including the "securities safe harbor" of Section 546(e). *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 889 (2018).[2]

Section 546(e) provides, as relevant, that "[n]otwithstanding" certain Code provisions granting avoidance powers, "the trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . . stockbroker [or] financial institution, . . . or that is a transfer made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . in connection with a securities contract . . . except under section 548(a)(1)(A)." "Where the initial transferee fails to raise a defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a defense against the recovery of those funds." *Picard v. Fairfield Inv. Fund Ltd.*, No. 08-01789 (CGM), 2021 WL 3477479, at *3 (S.D.N.Y. Bankr. Aug. 6, 2021).

As detailed below, Section 546(e) bars the Trustee's claims against the Defendants because the alleged Fairfield Sentry Initial Transfers purportedly underpinning those claims fall squarely within the statutory safe harbor. Section 546(e) shields from avoidance *covered transactions – i.e.*, transfers "in connection with a securities contract" or "settlement payments"

---

[2] Section 546(e) exemplifies how, "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality"—and "courts are obliged to respect the balance struck among these complex competing considerations." *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411, 423 (2d Cir. 2014). In particular, "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id.* "Unwinding settled securities transactions . . . would seriously undermine—a substantial understatement—markets in which certainty, speed, finality and stability are necessary to attract capital." *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019).

6

– that were made by, to or for the benefit of a *covered entity*, such as a stockbroker, financial institution or financial participant.[3]

### B.     The Alleged Initial Transfers Are Covered by Section 546(e)

The alleged initial transfers from BLMIS to Fairfield Sentry are shielded from avoidance by Section on two separate and independent grounds which the Second Circuit settled definitively in *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Fishman*").  *First*, these transfers were made "in connection with securities contracts" – *i.e.*, the BLMIS–Fairfield Sentry account agreements. *Second*, they were "settlement payments" made by BLMIS in response to Fairfield Sentry's requests for withdrawals under those agreements.

#### 1.     The Fairfield Sentry Initial Transfers Were Made in Connection With the BLMIS-Fairfield Sentry Account Agreements, Which Are "Securities Contracts"

In *Fishman*, the Second Circuit held that BLMIS's account agreements with customers "satisfy the broad definition of 'securities contracts'" in 11 U.S.C. § 741(7)(A), which applies to Section 546(e). *Fishman*, 773 F.3d at 418.  The court rejected a series of contrary arguments made by the Trustee, "none" of which it found "persuasive." *Id*. at 419; *see also id.* at 419-21. The *Fishman* court then had "little difficulty concluding that the payments BLMIS made to its customers were made 'in connection with' the securities contracts identified above." *Id*. at 421.

---

[3]    The "application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield III*, 2020 WL 7345988, at *7 (quoting *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786, at *7 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147, 175–77 (2d Cir. 2021), *petition for cert. filed sub nom. Kirschner v. FitzSimons*, 2022 WL 161692 (U.S. Jan. 5, 2022)). Courts therefore do not hesitate to dismiss, under Rule 12(b)(6), claims that are barred by Section 546(e).

7

Here, the Trustee has pleaded that Fairfield Sentry maintained "direct customer accounts with BLMIS's investment advisory business" – Compl. ¶ 2 – and has asserted in the Fairfield Action that Fairfield Sentry entered into account agreements with BLMIS. *See* Abraham Decl., Ex. A (Fairfield Am. Compl.) ¶ 33 (listing such accounts) & Ex. 1 (exemplar account agreement). Just as in *Fishman*, those agreements are "securities contracts," and the BLMIS-to-Fairfield Sentry transfers were made "in connection with" them.

### 2. The Fairfield Sentry Initial Transfers Were "Settlement Payments"

Although *Fishman's* holding that BLMIS-to-customer payments are transfers "in connection with securities contracts" suffices to "shield the transfers from avoidance," the Second Circuit identified in Section 546(e) yet "another basis" for protecting those transfers. *Fishman*, 773 F.3d at 421. Such transfers also constitute "settlement payments" within the definition (in 11 U.S.C. § 741(7)) incorporated into Section 546(e). *Id*. at 421-22. Rejecting the Trustee's argument to the contrary, the Second Circuit held in *Fishman* that "each transfer in respect of" a customer's order or request to withdraw funds from BLMIS "constituted a settlement payment." *Id*. at 422.

Here, the Trustee has alleged that Fairfield Sentry received approximately $3 billion in respect of such withdrawal orders or requests. *See* Compl. ¶¶ 37-42; *see also* Abraham Decl. Ex. A (Fairfield Am. Compl.) ¶ 33 & Ex. 2.

As in *Fishman*, those are all "settlement payments" for Section 546(e) purposes.

Consequently, the Trustee's claim against the Defendants is barred by Section 546(e.

8

## II. THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD PLAUSIBALY THAT DEFENDANTS ARE SUBSEQUENT TRANSFEREES OF BLMIS' CUSTOMER PROPERTY

The single count in the Complaint relies on Code section 550(a) and SIPA § 78fff-2(c)(3) to avoid the redemption payments as subsequent transfers of BLMIS property. The applicability of both those sections turns on whether the subsequent transfer sought to be avoided actually contained estate property. *See* 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3) ("trustee may recover any property "transferred by the debtor which, except for such transfer, would have been customer property").

The Trustee bears the burden of identifying which of the funds transferred to Defendants originated with BLMIS. *See Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS").

Here, the Trustee cannot meet his burden because his allegations are mathematically impossible. Thus, the Trustee alleges that BLMIS transferred a total of approximately $3 billion in customer property to Fairfield Sentry in the six years preceding BLMIS's bankruptcy petition. *See* Compl ¶¶ 37-38 (emphasis added). However, the Trustee seeks the recovery of over $5 billion in the aggregate in BLMIS customer property from various subsequent transferees of Fairfield Sentry. *See Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), ECF No. 90 ¶ 12 (detailing and itemizing the 81 Fairfield subsequent transfer actions and $3.211 billion in recoveries the Trustee is seeking in total in these actions); Abraham Decl., Ex. C (Exs. 8, 10, 12, 13, 14, and 21 to Fairfield Second Am. Compl.) (identifying $1.139 billion in subsequent transfers that the Trustee is seeking from certain non-settling defendants in the

9

Fairfield Action); Abraham Decl., Ex. A ¶¶ 53, 58 (identify $824 million in subsequent transfers that the Trustee is seeking from Fairfield Sigma and Fairfield Lambda). In other words, the Trustee is attempting to recover $2 billion **more** in subsequent transfers than he alleges BLMIS initially transferred to Fairfield Sentry. As such, the Trustee's theory that all of the redemption payments are customer property is facially implausible.

The Trustee's own pleadings make clear why Fairfield Sentry distributed far more to its investors than BLMIS transferred to Fairfield Sentry: Fairfield Sentry was receiving funds from several sources, including not just BLMIS, but also its own investors. To make redemption payments, Fairfield Sentry sometimes used subscription payments from other investors, rather than withdrawing any funds from BLMIS accounts. *See* Abraham Decl. Ex. D, First Amended Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF 19, ¶ 63 ("From time to time, to make Redemption Payments, Fairfield Sentry (and Sigma and Lambda through Fairfield Sentry) … utilized subscription monies of other investors on hand.").

This is an "obvious alternative explanation" for the source of the redemption funds, which demonstrates the facial implausibility of the Trustee's theory. *See Garfinkle v. Conf. on Jewish Material Claims Against Ger.*, Inc., 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020).

This pleading failure cannot be excused for lack of information. The Trustee possesses all the records relevant to establishing whether and to what extent Fairfield Sentry's transfers to subsequent transferees included any BLMIS customer property. By virtue of the document-sharing provisions of the Fairfield Settlement, the Trustee had access to Fairfield Sentry's books and records prior to filing the Complaint. *See* Abraham Decl. Ex. B (Fairfield Settlement) ¶ 14

10

(Trustee and Liquidators "each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims").

Nonetheless, the Trustee fails to allege precisely what transfers contained customer property traceable to BLMIS, and from which initial transfer that transfer originates. This is grounds for dismissal. *See, e.g., Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18 CIV. 1317, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: New York, New York
November 7, 2022                         BUTZEL LONG, P.C.


By:   */s/ Joshua E. Abraham*
      Joshua E. Abraham
      477 Madison Avenue, Suite 1230
      New York, New York 10022
      Telephone: (212) 347-5370
      abraham@butzel.com

      *Attorneys for Defendants Banco General, S.A., and BG Valores, S.A., f/k/a Wall Street Securities, S.A.*

11