UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

---

In re:

BERNARD L. MADOFF,

                Debtor.

---

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

                Plaintiff,

v.

BANK VONTOBEL AG f/k/a BANK J. VONTOBEL
& CO. AG, and VONTOBEL ASSET
MANAGEMENT INC.

                Defendants.

Adv. Pro. No. 12-01202 (CGM)

---

## MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, as Trustee for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York
By:    Amy E. Vanderwal (on the papers)
       David J. Sheehan Email:
       Chardaie C. Charlemagne

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
By:     Howard L. Simon (on the papers)
        John J. Tepedino

*Counsel for Defendants, Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG and Vontobel Asset
Management Inc.*
Wuersch & Gering LLP
100 Wall Street, 10th Floor
New York, New York 10005
By:     Gregory F. Hauser (on the papers)
        Joshua A. Dachs

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

        Pending before the Court is the motion by the Defendants, Bank Vontobel AG f/k/a Bank

J. Vontobel & Co. AG ("Bank Vontobel") and Vontobel Asset Management Inc ("Vontobel

Management") (collectively, "Defendants"), to dismiss the complaint of Irving Picard, the trustee

("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS")

seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.

Defendants seek dismissal for lack of personal jurisdiction, failure to state a claim for relief due

to the safe harbor provision of the Bankruptcy Code, failure to allege that Defendants received

customer property, and failure to plead a claim for relief under Rule 8 of the Federal Rules of

Civil Procedure.  Defendants argue that the Court should dismiss the complaint due to the

affirmative defense of good faith under Section 550(b).  For the reasons set forth below, the

motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by

Defendants and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on March 22, 2012.  Compl., ECF[1] No. 1.  Via the

complaint ("Complaint"), the Trustee seeks to recover approximately $26,901,311 in subsequent

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01202-cgm.

transfers made to Defendants. *Id.* ¶ 2; Stip., ECF No. 109 (amending the complaint to dismiss transfers from Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. under Counts One and Two and two transfers from Fairfield Sentry under Count Three). The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). Compl. ¶ 2, ECF No. 1. Fairfield Sentry and Fairfield Sigma (collectively, the "Fairfield Funds") are referred to as "feeder funds" because the intention of the funds was to invest in BLMIS. *Id.* ¶¶ 2, 6–7.

At the time of the alleged transfers, Defendants were part of Vontobel Holding AG, a Swiss independent private bank and international asset manager. *Id.* ¶ 3. Bank Vontobel is a Swiss private bank with headquarters located in Zurich. *Id.* ¶ 23. Vontobel Management is a New York Corporation with an address in New York, NY. *Id.* ¶ 25.

 Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶ 52. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 57. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. Compl. ¶ 57, ECF No. 1. The Trustee then commenced a number of adversary proceedings against subsequent transferees like Bank Vontobel and Vontobel Management to recover the approximately $3 billion in missing customer property.

Defendants argue that the Trustee has failed to plead personal jurisdiction, improperly incorporated by reference allegations necessary to allege avoidability of the initial transfers, and failed to plausibly allege that Defendants received customer property. Defendants argue that the Court should dismiss the complaint due to the affirmative defense of good faith under Section

550(b) and that Bankruptcy Code Section 546(e) bars the trustee's claims. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

**Discussion**

**Personal Jurisdiction**

Defendants object to the Trustee's assertion of personal jurisdiction. The Trustee argues in the Complaint that Defendants purposefully availed themselves of the laws of the United States and New York by directing funds to be invested with New York-based BLMIS through the Fairfield Funds and receiving subsequent transfers of customer property from BLMIS by withdrawing money from the Fairfield Funds. *Id.* ¶¶ 6–7.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendants "knowingly direct[ed] funds to be

invested with New York-based BLMIS through the Feeder Funds."  Compl. ¶ 6, ECF No. 1.

This allegation alone is sufficient to establish a prima facie showing of jurisdiction over

Defendants in the pre-discovery stage of litigation.  That being stated, this was not the only

allegation made by the Trustee.

At the pre-discovery stage, the allegations need not be factually supported.  *See*

*Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment

of facts is necessary only after discovery).  In order to be subjected to personal jurisdiction in the

United States, due process requires that a defendant have sufficient minimum contacts with the

forum in which defendant is sued "'such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re*

*BLMI*S), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the forum
> State or have purposefully directed its conduct into the forum State.  Second, the
> plaintiff's claim must arise out of or relate to the defendant's forum conduct.
> Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

Defendants argue that the Trustee has failed to allege sufficient minimum contacts with the United States. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that Defendants "direct[ed] funds to be invested with New York-based BLMIS through the Fairfield Funds" and "knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds." Compl. ¶ 6, ECF No. 1. The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference at paragraph 52 of

this Complaint); *see, e.g.* Charlemagne Decl. Ex. 5, Fairfield Sentry Placement Mem. 6, ECF No.

123 ("The manager has established a discretionary account for the Fund at Bernard L. Madoff

Investment Securities, Inc. . . . . a registered broker-dealer in New York who utilizes a strategy

described as "split strike conversion", to which it allocates the predominant portion of the Fund's

assets.")

     The Trustee has submitted additional evidence in response to the motion to dismiss.

Attached as exhibits to the Charlemagne Declaration, the Trustee has provided evidence that

Defendants used bank accounts in New York to send subscription payments to and receive

redemption payments from Fairfield Sentry's bank account at HSBC in New York.

Charlemagne Decl. Exs. 3–5, ECF No. 123.  Bank Vontobel communicated with Fairfield

Greenwich Group personnel in New York to discuss investments with Fairfield Sentry.  *Id.* Exs.

30–31.  One fax cover page sent to Bernard Madoff by Jeffrey Tucker of Fairfield Greenwich

Group attests to a meeting in New York between Bernard Madoff, Fairfield Greenwich Group,

and representatives of several entities including "three people from Bank Vontobel, Peter

Newell, Henry Schlegel and Thomas Wittwer."  *Id.* Ex. 33.

**Arise out of or relate to the defendant's forum conduct**

     As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy."  *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

The Trustee is asserting subsequent transfer claims against Defendants for monies they received from Fairfield Sentry and Fairfield Sigma. Compl. ¶¶ 58–64, ECF No. 1. These allegations are directly related to investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Bank Vontobel and Vontobel Management is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in

obtaining the most efficient resolution of controversies, and the shared interest of the several

States in furthering fundamental substantive social policies. *Id.* at 477

 The exercise of jurisdiction is reasonable.  Defendants are not burdened by this litigation.

Bank Vontobel and Vontobel Management have actively participated in this Court's litigation for

over ten years.  They are represented by highly competent U.S. counsel, filed claims in this SIPA

litigation, and submitted to the jurisdiction of New York courts' when they signed subscription

agreements with Fairfield Sentry.  The forum and the Trustee both have a strong interest in

litigating BLMIS adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund,*

*L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y.

2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v.*

*Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield*

*Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see*

*also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest

in allowing domestic estates to recover fraudulently transferred property.").

 By alleging that Defendants intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfers at issue in this Case.

**12(b)(6) Standard**

 "To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $26.9 million in subsequent transfers made to Bank Vontobel and Vontobel Management by Fairfield Sentry and Fairfield Sigma. Compl. ¶¶ 58–62, ECF No. 1; Stip., ECF No. 109.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-01239. Compl. ¶ 52, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion."  The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction.  As was explained in *In re Geiger*,

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re

Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

     Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. Defendants, like many other subsequent transfer defendants in this

SIPA proceeding, are aware of what has been filed in the other adversary proceeding in this

SIPA liquidation. They routinely follow what is happening on a proceeding-wide basis. *See*

Stip., ECF No. 96 (dismissing adversary proceeding based on consolidated extraterritoriality

ruling).

     Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice Defendants. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

     Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds'

knowledge of BLMIS' fraud. Fairfield Compl. ¶¶ 314–18, Adv. Pro. No. 09-01239, ECF No.

286; *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R.

26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendants have raised the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations concerning the Fairfield Funds transfers.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).

The safe harbor "is an affirmative defense, but it can be raised in the context of a motion to dismiss if the complaint and other documents that the Court can consider establish it and 'where the facts are not in dispute, or where there is already a sufficiently detailed factual record to decide whether the applicable statutory definitions are met, such that the application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings.'"  *Halperin v. Morgan Stanley Inv. Mgmt.* (*In re Tops Holding II Corp.*), No. 18-22279 (RDD), Adv. No. 20-08950 (RDD), 2022 WL 6827457, at *9 (Bankr. S.D.N.Y. Oct. 12, 2022) (quoting *Bankr. Estate of Norkse Skogindustrier ASA v. Cyrus Capital Partners*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021)).  "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).  However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery

of those funds.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320, Adv. No. 09-01239, ECF No. 286 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in

Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12-MC-115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). And, "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract," this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *Id.*

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),
773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that
BLMIS was actually engaged in the business of effecting securities transactions, have every right
to avail themselves of all the protections afforded to the clients of stockbrokers, including the
protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint
are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendants argue that the safe harbor prevents the Trustee from avoiding the subsequent
transfers between Fairfield Sentry and Defendants on account of "multiple securities contracts"
in connection with which the initial transfers were made.  Def.'s Mem. 21, ECF No. 119.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is
a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)
(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the
Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe
harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The
safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not
"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the
subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the
recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,
197 (Bankr. S.D.N.Y. 2018).

In *Cohmad*, Judge Rakoff laid out the requirement for recovery of a fraudulent transfer
from a subsequent transferee: "the Trustee must first show that the initial transfer of that property

by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions (e.g., 11 U.S.C. §§ 544, 547 & 548)." *Id.* This requirement is subject to a rule allowing a subsequent transferee to raise a Section 546(e) defense "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense." *Id.* There is "one caveat" to this rule: "to the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* As Judge Rakoff explained, this caveat follows from the general principles of recovery: "[a] defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)." *Id.* (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 707 (11th Cir.2005)).

Judge Rakoff has further clarified the inapplicability of the safe harbor to transfers such as those made to Bank Vontobel and Vontobel Management. *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[*Cohmad*] simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."). Where Section 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Id.* To the extent that Defendants seek to apply Section 546(e) to a transfer made in connection with a securities contract between it and the Fairfield Funds not involving BLMIS, this issue is "fact-intensive" and better addressed at a later stage of litigation. *Id.* *8.

Defendants argue that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020)

("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this

SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield

Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is

analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The

safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims

under BVI law[2] to recover "unfair preferences," "undervalue transactions," and constructive trust

claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the

[Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield

Sentry Ltd*., No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020),

*reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23,

2021). The Court was not considering the safe harbor's effect on subsequent transfer claims

brought under § 550 of the Bankruptcy Code. *Fairfield III* is not applicable here.

Defendants are not permitted to raise the safe harbor defense on their own behalf as

subsequent transferees.

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations, "approximately $8,470,371 of

the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield

Sentry to Bank Vontobel," and "approximately $17,922,008 of the money transferred from

BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Vontobel Fund

and/or Vontobel Management." Compl. ¶¶ 58, 60, ECF No. 1. The Trustee has pleaded that

---

[2] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's
chapter 15 case is ancillary to the primary proceeding brought in the BVI.

following the transfer of approximately $752,273,917 from BLMIS to Fairfield Sentry and

subsequently by Fairfield Sentry to Fairfield Sigma, "the equivalent of at least $1,163,932 was

transferred by Fairfield Sigma to Bank Vontobel."  Compl. ¶ 62, ECF No. 1.

The exhibits attached to the Complaint provide Defendants with the "who, when, and

how much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195

(Bankr. S.D.N.Y. 2018); Compl. Exs. I and J, ECF No. 1 (indicating the dates and amounts of

the transfers from Fairfield Sentry); Compl. Exs. K and L, ECF No. 1 (indicating the dates and

amounts of the transfers from Fairfield Sigma); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R.

100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial

transferee made any subsequent transfers.).  The Fairfield Amended Complaint, which is

incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of

its assets in BLMIS.  Fairfield Compl. ¶ 89, Adv. Pro. No. 09-01239, ECF No. 286; *see also*

Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's requirement for BLMIS

feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the

custody of its assets, to BLMIS.").  The Complaint plausibly alleges that Fairfield Sentry did not

have any assets that were not customer property.

Defendants argue that the allegations create a mathematical impossibility; that is, the

Trustee alleges a greater amount of aggregate subsequent transfers from among all subsequent

transfer defendants than what the trustee alleges BLMIS transferred to Fairfield Sentry initially.

Def.'s Mem. 25, ECF No. 119.  Defendants seeks dismissal unless the Trustee can account for

every dollar he seeks to recover from all subsequent transferee defendants in all cases.  That task

is not required at this stage of the litigation.  The other complaints have not been adopted by

reference by the Trustee in this adversary proceeding and, as such, are not within the Court's

power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9

(2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6),

is generally limited to the facts as presented within the four corners of the complaint, to

documents attached to the complaint, or to documents incorporated within the complaint by

reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

The Trustee "can sue each transferee for [the amount of the initial transfer]. For this

reason, the aggregate subsequent transfer claim can greatly exceed the amount of the initial

transfer." *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014). In order

to ultimately determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need to review financial documents in order to trace the monies to all

of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation. At this stage, the Trustee need only assert plausible allegations that

Defendants received BLMIS monies.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendants received customer property because Fairfield

Sentry did not have other property to give.

**Affirmative Defenses**

Defendants argue that this Court should dismiss the Trustee's complaint because they

took for value, in good faith, and without knowledge of the voidability of the transfer.

*i.      For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special*

*Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.  The Complaint contains no mention of Defendants exchanging

shares for consideration.  Compl. ¶¶ 58–64, ECF No. 1.  The "value" defense is not asserted on

the face of the Complaint.

Defendants argue that the payments they received from the Fairfield Funds were given in

exchange for the redemption of shares in the Fairfield Funds.  If Defendants knew at the time

they redeemed their shares that the shares were worthless, then they did not receive the

subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry Ltd. v.*

*Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y.

2018), *aff'd sub nom. Fairfield Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB),

2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge

Defendants that received redemption payments with the knowledge that the NAV was wrong.  In

those circumstances, the Liquidators may seek to impose a constructive trust.").  It has not yet

been determined whether Defendants knew if the shares they redeemed from the Fairfield Funds

had value.

"Value" is Defendants' burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether Defendants gave value is a

question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

*ii.    Good Faith*

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.* ] *Citibank*[*, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022). And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." Id. (internal quotation omitted).

The burden of proving good faith falls squarely on Defendants, and this Court cannot make a determination on Defendants' affirmative defense until after a fact-intensive inquiry.

*iii.    Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny Defendants' motion on this element.  Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendants' burden to plead and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into what Defendants subjectively knew; "whether these facts put [Defendants] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the [Defendants'] position to conduct further inquiry into a debtor-

transferor's possible fraud; and whether "diligent inquiry by [Defendants] would have

discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the

litigation.

### <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris



**Dated: November 18, 2022**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**