**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>    Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>    Plaintiff,<br>v.<br><br>151797 CANADA INC.; JUDITH PENCER; and SAMUEL PENCER,<br>    Defendants. | Adv. Pro. No. 10-04631 (SMB) |

**EXPERT REPORT OF**
**LISA M. COLLURA, CPA, CFE, CFF**

**Proof of Transfers**
**To the Canada Inc. Defendants**

December 1, 2015

# TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ........................................................................................... 2

II. SCOPE OF ASSIGNMENT ...................................................................................................... 2

III. METHODOLOGY ................................................................................................................... 4

IV. SUMMARY OF FINDINGS .................................................................................................... 5

V. RECONCILIATION OF CASH TRANSACTIONS FOR ALL BLMIS CUSTOMERS .................. 7
    A.    OVERVIEW    7
    B.    BLMIS BANK ACCOUNTS    7
    C.    RESULTS OF RECONCILIATION    11

VI. RECONCILIATION OF CASH TRANSACTIONS FOR THE CANADA INC. ACCOUNT ...... 12
    A.    OVERVIEW    12
    B.    BLMIS BANK ACCOUNTS    12
    C.    BLMIS CUSTOMER FILES    13
    D.    RESULTS OF RECONCILIATION    13

VII. TRACING CASH WITHDRAWALS FROM THE CANADA INC. ACCOUNT ...................... 14
    A.    OVERVIEW    14
    B.    RESULTS OF TRACING    15

VIII. SIGNATURE AND RIGHT TO MODIFY ............................................................................ 15

IX. LIST OF EXHIBITS ............................................................................................................... 16

**I. PROFESSIONAL BACKGROUND**

1.      I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with more than 20 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.      I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.      I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA) and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience and qualifications, including my testimony in the last four years.

**II. SCOPE OF ASSIGNMENT**

4.      Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme. On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of BLMIS, including all records of the "cash in/cash out" transactions related to the BLMIS customer accounts as far back as the records allow.

2

5.      Matthew B. Greenblatt, also a Senior Managing Director at FTI, and a team of professionals working under his supervision, was specifically tasked with creating chronological listings of all cash and principal transactions, including cash deposit and withdrawal transactions, for every BLMIS customer account, as set forth more fully in the Expert Report of Matthew B. Greenblatt regarding the Methodology for the Principal Balance Calculation (the "Principal Balance Calculation Report").

6.      The sources of cash deposit and withdrawal transactions related to BLMIS customer accounts include customer statements and other relevant information available within BLMIS's records, including Portfolio Management Reports, Portfolio Management Transaction Reports, spiral-bound notebooks, and a data table from BLMIS's computer system referred to as the "Checkbook File," which is the only available BLMIS record of cash transactions for the time period from December 1, 2008 through December 11, 2008.  *See* Principal Balance Calculation Report for further discussion regarding these sources.  For purposes of my report, I use the term "customer statements" to refer to these sources collectively.

7.      I, along with a team working under my supervision, was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions as reflected on the customer statements (as defined in paragraph 6) for *all* BLMIS customers reconciled (as further explained in paragraph 8) to available BLMIS bank records;

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the *Canada Inc. Defendants'*[1] customer account at BLMIS that is at issue in this matter (the "Canada Inc. Account"[2]) reconciled to available documentation; and

- Whether, based on my review of available bank account records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the

---

[1] The defendants in this matter are 151797 Canada Inc., Judith Pencer and Samuel Pencer (collectively, the "Canada Inc. Defendants").

[2] The Canada Inc. Defendants maintained BLMIS customer account 1FR028 under the name "151797 CANADA INC C/O JUDY PENCER."

3

Canada Inc. Account during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced (as further explained in paragraph 8) to bank accounts held by, or for the benefit of, the Canada Inc. Defendants.

8.  For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.,* amounts on BLMIS bank records and/or correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals). For purposes of my report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.,* BLMIS's bank account) to another bank account (*e.g.,* the Canada Inc. Defendants' bank account).

9.  This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

10. FTI is being compensated at a rate of $554 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

### III. METHODOLOGY

11. To determine whether the cash deposit and withdrawal transactions reflected on the customer statements for *all* BLMIS customers reconciled to available BLMIS bank records, I, using my experience as a forensic accountant and investigator, along with my staff, first identified and gathered the relevant and available records related to the BLMIS bank accounts. We then performed the following procedures:

- Reviewed hundreds of thousands of pages of records related to BLMIS's bank accounts, including monthly bank statements, cancelled checks and deposit slips,

4

>   obtained from BLMIS's files and/or produced by third-party financial institutions, which cover a ten-year period from December 1998 to December 2008;
> - Analyzed close to 150,000 transactions reflected within these bank records; and
> - Reconciled the cash deposit and withdrawal transactions reported in the available BLMIS bank records to the cash transactions reflected on the customer statements related to *all* BLMIS customer accounts.

12. Next, to determine specifically whether the cash transactions reflected on the customer statements for the Canada Inc. Account reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described above. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in the customer file related to the Canada Inc. Account. Based on my review and analysis of these materials, I identified the cash transactions related to the Canada Inc. Account that reconciled to these documents.

13. Finally, to determine whether the cash withdrawals (*i.e.,* transfers from BLMIS) reflected on the customer statements for the Canada Inc. Account during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Canada Inc. Defendants, I again used the available information from the BLMIS bank records as described above. Using these available bank records, I identified the recipients of the transfers from BLMIS.

14. The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

**IV. SUMMARY OF FINDINGS**

15. Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

5

- My team and I reconciled 99% of the approximately 225,000 cash deposit and withdrawal transactions reflected on *all* BLMIS customer statements during the time period of December 1998 to December 2008 to the available BLMIS bank records for the same time period. The remaining 1% that we were unable to reconcile consists primarily of withdrawal transactions for which copies of the related cancelled checks were not available. Based on the results of our reconciliation of 99% of the cash transactions, I can reasonably infer that my team and I would have been able to reconcile these withdrawal transactions had copies of the related cancelled checks been available. Only 13 transactions of this remaining 1% (representing less than 0.006% of the approximately 225,000 cash transactions) were reflected on the customer statements, but could not be reconciled to available BLMIS bank records.
- For my reconciliation analysis, I analyzed the cash transactions during the entire period for the Canada Inc. Account, from August 1997 to December 2008. During this time-period, the customer statements for the Canada Inc. Account reflected six cash deposit and withdrawal transactions. I reconciled 100% of the six cash transactions reflected on the customer statements for the Canada Inc. Account to available BLMIS bank records and/or documentation contained in the BLMIS customer file related to the Canada Inc. Account. In addition, based on my review of documents contained in the customer file maintained at BLMIS for the Canada Inc. Account, I have not found any instance of the Canada Inc. Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Canada Inc. Account.
- For my tracing analysis, I analyzed the cash withdrawals from the Canada Inc. Account during the Two Year Period. Based on available bank records from BLMIS, I traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Canada Inc. Account during the Two Year Period to a bank account held by defendant 151797 Canada Inc.

6

**V. RECONCILIATION OF CASH TRANSACTIONS FOR ALL BLMIS CUSTOMERS**

*A. OVERVIEW*

16.         As set forth in the Principal Balance Calculation Report, a team from FTI working under Mr. Greenblatt's supervision created chronological listings of all cash and principal transactions, including cash deposit and withdrawal transactions, for every BLMIS customer account. I was tasked with reconciling the customer cash deposit and withdrawal transactions to available BLMIS bank records to assist in the determination of whether the cash transactions reflected on the customer statements for all BLMIS customers were fairly and accurately represented.

*B. BLMIS BANK ACCOUNTS*

17.         My team and I reviewed available bank account records for more than 90 bank and brokerage accounts in the name of either BLMIS or Bernard L. Madoff,[3] and found that, primarily, the following three bank accounts were used by BLMIS for customer deposits and withdrawals during at least the ten-year period from December 1998 to December 2008:

- JPMorgan Chase account #xxxxx1703 (the "703 Account")[4]
- JPMorgan Chase account #xxxxxxxx1509 (the "509 Account")
- Bankers Trust account #xx-xx0-599 (the "BT Account")

18.         Records for these three accounts consist of monthly bank statements, copies of deposited checks, deposit slips and cancelled checks. Records related to the 703 Account and the 509 Account were available from December 1998 to December 2008 and were obtained from

---

[3] *See* **Exhibit 3** for a listing of known bank accounts held by BLMIS and/or Bernard L. Madoff.
[4] Personal Identifying Information has been redacted throughout this report and the accompanying exhibits.

7

BLMIS's files as well as from JPMorgan Chase & Co. ("JPMC").[5] In addition to hard copy documents, JPMC produced an electronic file that provides details of wire transfers in and out of the 703 Account from January 1, 2002 to December 11, 2008 (the "JPMC Wire File").[6] Records related to the BT Account were available from December 1998 to May 1999 and were obtained from BLMIS's files.[7]

19.     In the aggregate, FTI had available bank records related to the BLMIS bank accounts used for customer deposits and withdrawals for a ten-year period from December 1998 to December 2008. To assist in our analysis of these bank records, which included copies of monthly bank statements and cancelled checks, we captured the transaction information from these records and converted the information into an electronic format through the use of a combination of Optical Character Recognition (OCR) software and manual entry. This electronic data, which accurately reflects the underlying records, became the basis for our reconciliation of the cash transactions reported in the BLMIS bank records to the cash deposits and withdrawals reflected on BLMIS customer statements.

**The 703 Account**

20.     Based on my review of the available BLMIS bank records, I determined that the 703 Account was the primary bank account used for BLMIS customer deposits and withdrawals.

---

[5] The October 1999 bank statement for the 509 Account could not be located. However, I was able to use other available documents, such as the 703 Account statements, to estimate the activity in the 509 Account during October 1999. In addition, there is activity reflected on the monthly bank statements for the 703 Account and 509 Account for which corresponding copies of deposited checks, deposit slips and/or cancelled checks were missing from the documents produced by JPMC and/or could not be located in BLMIS's records. As reflected in my summary of findings and other results described throughout my report, these missing documents had a minimal impact on my overall analysis and reconciliation.

[6] This file was missing data for transactions dated December 11, 2004 to December 31, 2004. However, we were able to use other available documents, such as the 703 Account statements, to obtain the necessary information to complete our analysis and reconciliation.

[7] Statements for June through August 1999, October 1999, December 1999 and July 2000 for the BT Account were also found in BLMIS's records. However, May 1999 appears to be the last month of significant activity in the BT Account. There was no activity in the account during the months of June through August 1999, and the statements for these months showed an ending balance of $26,523. In October 1999, the only transaction in the account was to transfer the $26,523 remaining balance to the 703 Account and zero out the BT Account. The December 1999 and July 2000 statements for the BT Account both showed a zero balance.

My team and I reviewed and analyzed every one of the transactions reported in the available monthly bank statements for the 703 Account from December 1998 to December 2008 to determine, among other things, whether the transactions were related to a BLMIS customer deposit or withdrawal.

21.     The results of our analysis of the activity in the 703 Account from the available bank records for December 1998 to December 2008 are set forth in an Excel spreadsheet titled "JPMC 703 Account Activity – December 1998 to December 2008" which is attached as **Exhibit 4**.

22.     In conducting our reconciliation of the cash transactions reported in the 703 Account bank records to the cash transactions reflected on the BLMIS customer statements, we first matched transactions based on the transaction date and amount, but also manually reviewed thousands of transactions to confirm our results. In addition, there were instances when we reconciled multiple transactions on the BLMIS customer statements to a single transaction on the BLMIS bank statements. For example, a deposit into the 703 Account that related to multiple BLMIS customers appeared as one transaction on the monthly bank statement for the 703 Account. In that case, we reconciled the 703 Account transaction to a combination of multiple BLMIS customer transactions.[8]

23.     FTI assigned a unique identification number to each of the transactions reported on the available 703 Account bank statements. *See* "703 ID" in the first column of the detail tab of Excel spreadsheet "JPMC 703 Account Activity – December 1998 to December 2008" (attached as **Exhibit 4**). FTI also assigned a unique identification number to each one of the customer deposit and withdrawal transactions for every BLMIS customer account. *See* "CM ID" in a separate column of the detail tab of **Exhibit 4**. Once a specific transaction reported in a 703 Account statement was matched to a specific customer deposit or withdrawal transaction reflected on the BLMIS customer statements, we recorded the corresponding unique CM ID in the respective column of **Exhibit 4**. This matching formed a link between the cash transactions

---

[8] As another example, BLMIS withheld certain amounts from foreign account holders and made payments to the Internal Revenue Service on behalf of these customers. In these cases, we reconciled one payment from the 703 Account to multiple related transactions per the BLMIS customer statements. The Canada Inc. Account included these tax withholding transactions.

9

per the bank records and the cash transactions per the customer statements. This link ensured that no two customer cash transactions were incorrectly matched to the same cash transaction per the bank records or vice versa.

24.     Based on my review of the activity in the 703 Account from December 1998 to December 2008, I determined that approximately 97% of the inflows into the account during this period related to customer deposits and approximately 98% of the outflows from this account during this period related to customer withdrawals.

**The 509 Account**

25.     Based on my review of the available bank records related to the 509 Account, I determined that the 509 Account was a checking account funded by the 703 Account. From December 1998 to December 2008, the inflows into the 509 Account consisted solely of transfers from the 703 Account and the outflows from the 509 Account were solely in the form of checks.

26.     My team and I performed an analysis of the activity in the 509 Account, similar to the analysis we performed with respect to the 703 Account, to determine whether the outflows from the 509 Account were related to BLMIS customer withdrawals. However, in this case, our analysis relied more heavily on our review of the cancelled checks because the statements themselves lacked the necessary detail. The results of our analysis of the activity in the 509 Account from the available bank records for December 1998 to December 2008 are set forth in an Excel spreadsheet titled "JPMC 509 Account Activity – December 1998 to December 2008" which is attached as **Exhibit 5**.

27.     Based on my review of the activity in the 509 Account, I determined that approximately 99% of the checks written from the 509 Account from December 1998 to December 2008 were related to customer withdrawals.

**The BT Account**

28.     Based on my review of the available bank records related to the BT Account, from at least December 1998 through May 1999, the BT Account was also funded by transfers from the

10

703 Account. Outflows from the BT Account were in the form of both checks and wire transfers.

29. My team and I performed a reconciliation analysis of the activity in the BT Account, similar to those described above, to determine whether the outflows from the BT Account were related to BLMIS customer withdrawals. The results of our analysis of the activity in the BT Account from the available bank records for December 1998 to May 1999 are set forth in an Excel spreadsheet titled "BT 599 Account Activity – December 1998 to May 1999" which is attached as **Exhibit 6**.

30. Based on my review of the activity in the BT Account during this period, I determined that over 97% of the outflows from the BT Account were related to customer withdrawals.

C. *RESULTS OF RECONCILIATION*

31. My team and I reconciled 99% of the approximately 225,000 cash deposit and withdrawal transactions reflected on *all* BLMIS customer statements during the time period of December 1998 to December 2008 to the available BLMIS bank records for the same time period. The majority of the remaining 1%, or approximately 2,200 transactions, consist primarily of withdrawal transactions for which copies of the related cancelled checks were not available. Based on the results of our reconciliation of 99% of the cash transactions, I can reasonably infer that my team and I would have been able to reconcile these withdrawal transactions had the related cancelled checks been available. Only 13 transactions of this remaining 1% (representing less than 0.006% of the approximately 225,000 cash transactions) were reflected on the customer statements, but could not be reconciled to available BLMIS bank records. The cash transactions in the Canada Inc. Account are not among those included in the 1% of cash transactions that could not be reconciled to available BLMIS bank records.

11

**VI. RECONCILIATION OF CASH TRANSACTIONS FOR THE CANADA INC. ACCOUNT**

A.  *OVERVIEW*

32.     The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI included the cash transactions for the Canada Inc. Account. From August 1997 to December 2008, the customer statements for the Canada Inc. Account reflected six cash transactions, which consisted of one cash deposit into the Canada Inc. Account of $3,600,000 and five cash withdrawals from the Canada Inc. Account totaling $9,000,000.[9] I was tasked with reconciling these six cash transactions to available BLMIS bank records and/or BLMIS customer files. *See* **Exhibit 7** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 10** – "Reconciliation and Tracing Results – Canada Inc. Account."

B.  *BLMIS BANK ACCOUNTS*

33.     Of the six cash transactions reflected on the customer statements for the Canada Inc. Account, five occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described above. I have reconciled all five cash withdrawal transactions reflected on the customer statements for the Canada Inc. Account to available BLMIS bank records, including monthly bank statements. The five cash transactions were cash withdrawals via wire transfer and were reconciled to the 703 Account.

34.     Based on the results of my reconciliation, I can reasonably infer that if BLMIS bank records prior to December 1998 were available to me, I would be able to reconcile the pre-December 1998 cash transaction in the Canada Inc. Account.

---

[9] In addition to these five cash withdrawal transactions, there were approximately 700 transactions totaling $103,011 that represented purported tax obligations being withheld from the Canada Inc. Account. BLMIS withheld certain amounts from foreign and other account holders and made combined payments to the Internal Revenue Service (IRS), generally on a monthly basis, on behalf of these BLMIS customers. More specifically, BLMIS made a single payment from the 703 Account to the IRS related to multiple tax withholding transactions across multiple BLMIS customer statements (including the Canada Inc. Account). The count of total cash withdrawals from the Canada Inc. Account excludes these tax withholding transactions.

12

C. <u>BLMIS CUSTOMER FILES</u>

35.     In addition to reconciling the cash deposit and withdrawal transactions for the Canada Inc. Account to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Canada Inc. Account.

36.     Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number. These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, and customer, trust and other agreements.

37.     As part of my analysis, I identified the customer file for the Canada Inc. Account within BLMIS's records. I reviewed the documents contained in this customer file to identify correspondence that related to the cash transactions reflected on the customer statements for the Canada Inc. Account. I identified letters and/or other correspondence in this file that support all six cash transactions in the Canada Inc. Account. One of these letters, which is a request for a cash withdrawal from the Canada Inc. Account, is attached as **Exhibit 8** and is described further below:

- In a letter dated November 21, 2008, defendant Judy Pencer states, "Please wire $1,000,000 from account #1-FR028-3-0 (151797 Canada Inc.) to the wire account you set up at the TD Canada Trust."

38.     Furthermore, based on my review of the documents contained in the customer file for the Canada Inc. Account, I have not found any instance of the Canada Inc. Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash deposit or withdrawal transactions reflected on the customer statements for the Canada Inc. Account.

D. <u>RESULTS OF RECONCILIATION</u>

39.     In total, based on my analyses described above, I reconciled 100% of the six cash transactions reflected on the customer statements for the Canada Inc. Account to available

13

BLMIS bank records and/or documentation contained in the BLMIS customer files. **Exhibit 7**, which is the chart that lists each of the six cash transactions for the Canada Inc. Account, contains two columns that indicate the results of my reconciliation to each of these sources of information.

40.      In addition, as noted above, I have not found any instance of the Canada Inc. Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Canada Inc. Account.

**VII. TRACING CASH WITHDRAWALS FROM THE CANADA INC. ACCOUNT**

*A. OVERVIEW*

41.      The available BLMIS bank records, as described above, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to accounts held by, or for the benefit of, the Canada Inc. Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

42.      During the Two Year Period, the customer statements for the Canada Inc. Account reflected two cash withdrawal transactions totaling $2,000,000.[10] These cash withdrawal transactions were in the form of wire transfers from the 703 Account.

43.      My tracing of cash withdrawals from the 703 Account via wire transfers was based on the transaction description contained on the monthly bank statements. Often, the description on the bank statements for the 703 Account included the identification of both the banking institution that received the cash transfer and the beneficiary of the transfer. In some cases, the description also included the corresponding bank account number. The JPMC Wire File produced to the Trustee by JPMC detailing the activity in the 703 Account contained the same, and in some cases additional, detail related to the transactions via wire transfers.

---

[10] In addition, there were tax withholding transactions in the Two Year Period totaling approximately $22,500 that are excluded from my tracing analysis.

14

Therefore, I also relied on the JPMC Wire File to identify information regarding the flow of funds related to wire transfers in and out of the 703 Account.

B. *RESULTS OF TRACING*

44. **Exhibit 9** summarizes the results of my Receiving Bank analysis and lists the bank account I identified by tracing cash withdrawals from BLMIS during the Two Year Period.[11] This exhibit supports that 100% of the total dollar amount of the cash withdrawals reflected on the customer statements for the Canada Inc. Account during the Two Year Period went to a bank account held by defendant 151797 Canada Inc.[12]

**VIII. SIGNATURE AND RIGHT TO MODIFY**

45. This report and the exhibits contained herein present my findings and the bases thereof. To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
December 1, 2015

---

[11] *See also* **Exhibit 10**.

[12] In addition, defendant Judith Pencer states that defendant 151797 Canada Inc. "received $1 million from a BLMIS account on or about October 29, 2008 and an additional $1 million on or about November 28, 2008." *See* Responses of Judith Pencer to Trustee's First Set of Interrogatories at Interrogatory No. 1; *see also* Response of 151797 Canada Inc. to Trustee's First Set of Interrogatories at Interrogatory No. 4.

15

**IX. LIST OF EXHIBITS**

Exhibit 1:   Curriculum Vitae
Exhibit 2:   Documents Considered
Exhibit 3:   List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts
Exhibit 4:   Excel Spreadsheet "JPMC 703 Account Activity – December 1998 to December 2008"
Exhibit 5:   Excel Spreadsheet "JPMC 509 Account Activity – December 1998 to December 2008"
Exhibit 6:   Excel Spreadsheet "BT 599 Account Activity – December 1998 to May 1999"
Exhibit 7:   List of All Cash Transactions in the Canada Inc. Account
Exhibit 8:   Letter from BLMIS Customer File for the Canada Inc. Account
Exhibit 9:   Results of Receiving Bank Analysis – Canada Inc. Account (*During the Two Year Period*)
Exhibit 10: Reconciliation and Tracing Results – Canada Inc. Account