**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 11-02761 (CGM) |
| Plaintiff, | |
| v. | |
| KBC INVESTMENTS LIMITED, | |
| Defendant. | |

**KBC INVESTMENTS LIMITED'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT**

SIDLEY AUSTIN LLP
John J. Kuster
Martin B. Jackson
Andrew P. Propps
Danica L. Brown
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for Defendant*
*KBC Investments Limited*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ...........................................................................................................................3

      A.     General Background Regarding BLMIS and Harley..............................................3

      B.     The Adversary Proceeding Against KBC Investments............................................3

      C.     At All Relevant Times, KBC Investments Was an Offshore Company with Offshore Operations...................................................................................................5

      D.     Harley and Other BLMIS Feeder Funds Investment Decisions Were Made by KBC Investments' Clients, Not KBC Investments....................................................6

      E.     Fairfax's Investments in Harley Were Held in a Citco Custody Account..............7

      F.     KBC Investments Did Not Use U.S. Accounts for Harley Redemptions ...............7

      G.     Fairfax, Not KBC Investments, Made the Harley Investment and Redemption Decisions.................................................................................................................7

ARGUMENT .................................................................................................................................8

I.     THE COURT LACKS PERSONAL JURISDICTION OVER KBC INVESTMENTS .....8

      A.     KBC Investments Is Not Subject to General Jurisdiction.......................................9

      B.     KBC Investments Is Not Subject to Specific Jurisdiction In New York .................9

            1.     KBC Investments Did Not Purposefully Avail Itself of the Privileges of Conducting Business In New York ......................................10

                  a.     The Actions of KBC Investments' Affiliates Do Not Show Purposeful Availment by KBC Investments.................................11

                  b.     Transfers Made Through a "Custodian" Bank Account Do Not Support Specific Jurisdiction .........................................13

                  c.     Harley Subscription Agreements that Were Not Entered Into by KBC Investments Do Not Support Specific Jurisdiction...............15

                  d.     Knowledge that Harley Invested in BLMIS Does Not Establish Purposeful Availment ...................................................16

             2.     The Trustee Has Failed to Establish That His Claims "Arise Out of or Relate To" KBC Investments' Incidental Contacts with New York ......................................................................................................20

             3.     The Exercise of Jurisdiction Over KBC Investments Would Be Unreasonable and Would Not Comport with Due Process.......................22

II.    THE TRUSTEE'S CLAIMS IN THE AMENDED COMPLAINT CONCERNING TWO NEW SUBSEQUENT TRANSFERS THAT WERE NOT IDENTIFIED IN THE INITIAL COMPLAINT ARE TIME BARRED......................................................23

CONCLUSION.............................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*
No. 13 Civ. 98) 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ...............................................18

*Aguas Lenders Recovery Grp. v. Suez, S.A.,*
585 F.3d 696 (2d Cir. 2009)...................................................................................................15

*Aquiline Capital Partners LLC v. FinArch LLC,*
861 F. Supp. 2d 378 (S.D.N.Y. 2012)....................................................................................22

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.,*
480 U.S. 102 (1987)................................................................................................................22

*Bank of Am. Nat. Ass'n v. Sopher,*
No. 10 CIV. 8870 (LTS) (KNF), 2011 WL 2419872 (S.D.N.Y. June 8, 2011) .....................12

*Berdeaux v. OneCoin Ltd.,*
561 F. Supp. 3d 379 (S.D.N.Y. Sept. 20, 2021) ....................................................................14

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007)...................................................................................................20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)................................................................................................................10

*Charles Schwab Corp. v. Bank of Am. Corp.,*
883 F.3d 68 (2d Cir. 2018)........................................................................................................8

*In re Chaus Sec. Litig.,*
801 F. Supp. 1257 (S.D.N.Y. 1992)........................................................................................24

*Chew v. Dietrich,*
143 F.3d 24 (2d Cir. 1998)....................................................................................................20

*Chirag v. MT Marida Marguerite Schiffahrts,*
604 F. App'x 16 (2d Cir. 2015) .............................................................................................10

*In re CIL Ltd.,*
582 B.R. 46 (S.D.N.Y. 2016).................................................................................................23

*Daimler AG v. Bauman,*
571 U.S. 117 (2014)..................................................................................................................9

*Dennis v. JPMorgan Chase & Co.*,
   343 F. Supp. 3d 122 (S.D.N.Y. 2018) ................................................................................18

*Ehrenfeld v. Bin Mahfouz*,
   881 N.E.2d 830 (N.Y. 2007) .....................................................................................12, 19

*In re Enron Corp.*,
   298 B.R. 513 (Bankr. S.D.N.Y. 2003) ..............................................................................25

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
   357 B.R. 257 (Bankr. S.D.N.Y. 2006) ..............................................................................24

*Fairfield Sentry Ltd. v. Theodoor GCG Amsterdam (In re Fairfield Sentry Ltd.)*,
   No. 10-13163 (SMB), 2018 WL 3756343 (Bankr S.D.N.Y. Aug. 6, 2018),
   *aff'd* 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) .........................................................15

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   26 N.Y.2d 280 (1970) ......................................................................................................19

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ..........................................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................................................................10

*Hill v. HSBC Bank plc*,
   No. 14-cv-09745 (LTS), 2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016) ...............................14

*Indelible Media Corp. v. Meat & Potatoes, Inc.*,
   No. 12-CV-0978 GBD, 2012 WL 3893523 (S.D.N.Y. Sept. 7, 2012) ..................................20

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
   64 F. Supp. 3d 494 (S.D.N.Y. 2014) .................................................................................11

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) .............................................................................................12

*Leema Enters., Inc. v. Willi*,
   575 F. Supp. 1533 (S.D.N.Y. 1983) ..................................................................................13

*In re Lehman Bros. Holdings Inc.*,
   535 B.R. 608 (Bankr. S.D.N.Y. 2015) ..............................................................................10

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
   No. 17-CV-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ................................13

*In re M. Fabrikant & Sons, Inc.*,
   447 B.R. 170 (Bankr. S.D.N.Y. 2011) ..........................................................................24, 25

*Mariac Shipping Co., LTD. v. Meta Corp.*,
  No. 05 CIV. 2224 (LAK), 2005 WL 1278950 (S.D.N.Y. May 31, 2005) ............................ 15

*McKee Elec. Co. v. Rauland-Borg Corp.*,
  20 N.Y.2d 377 (1967) ....................................................................................................... 12

*Metzeler v. Bouchard Transp. Co., Inc.*,
  66 B.R. 977 (Bankr. S.D.N.Y. 1986) ................................................................................. 25

*O'Toole v. Myplace Dev. Sp. Z O.O. (In re Sledziejowski)*,
  No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ........................ 13

*Picard v. Banca Carige S.P.A. (In re BLMIS), Adv. Pro. No. 11-02570 (CGM)*,
  2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) .............................................................. 2

*Picard v. Harley Int'l (Cayman) Ltd.*,
  Case No. 09-01187 (BRL), Dkt. No. 15 (Bankr. S.D.N.Y. Nov. 10, 2010) ............................ 3

*Realuyo v. Villa Abrille*,
  No. 01 Civ. 10158 (JGK), 2003 WL 21537754 (S.D.N.Y. July 8, 2003) .............................. 22

*Sec. & Exch. Comm'n v. Carrillo Huettel LLP*,
  No. 13 CIV. 1735 (GBD), 2014 WL 12785242 (S.D.N.Y. June 4, 2014) ............................. 21

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) .......................................................................................................... 21

*Sino Clean Energy Inc. v. Little*,
  953 N.Y.S.2d 553 (N.Y. Sup. Ct. N.Y. Cty. May 21, 2012) ................................................ 21

*SPV Osus Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) .......................... 12

*St. Paul Fire and Marine Ins. Co. v. Eliahu Ins. Co., Ltd.*,
  No. 96 Civ. 7269(MBM), 1997 WL 357989 (S.D.N.Y. June 26, 1997) ................................ 19

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................................ 14

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .............................................................................................. 18

*Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.*,
  933 F. Supp. 1170 (S.D.N.Y. 1996) ................................................................................... 12

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................... 10, 17, 18

**Statutes and Rules**

Bankruptcy Code Section 548(a) ........................................................................................................3

Bankruptcy Code Section 550(f) .............................................................................................24, 25

Bankruptcy Rule 7015 ..............................................................................................................24

11 U.S.C. § 550.................................................................................................................2, 24, 25

F.R.C.P. Rule 15(c)...............................................................................................................24, 25

Pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules" or the "Rules"), made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Defendant KBC Investments Ltd. ("KBC Investments") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint ("Amended Complaint") of Irving Picard ("Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over KBC Investments in this Adversary Proceeding. KBC Investments is a private limited company in the United Kingdom that had no subsidiaries or offices in the United States. In 2008, at the time of the alleged subsequent transfers the Trustee seeks to recover, KBC Investments had an offshore (non-U.S.) fund derivatives business that provided non-recourse funding to offshore entities to increase their financial returns from investments in offshore hedge funds. KBC Investments did not direct investment decisions for its fund derivatives clients, did not provide investment advice to its clients, and did not participate in its clients' investment returns. Rather, KBC Investments only charged its clients a small margin interest fee for providing funding, required them to follow certain guidelines regarding portfolio concentration limits and investment diversification, and prohibited them from investing in any hedge funds organized under the laws of any state or territory of the United States. KBC Investments itself did not invest in BLMIS and took directions from its fund derivatives clients with respect to all decisions concerning investments in BLMIS.

Notwithstanding these indisputable facts, in the Amended Complaint the Trustee seeks to recover from KBC Investments at least $86 million in subsequent transfers of BLMIS customer property that the Trustee alleges were initially transferred from BLMIS to Harley International

(Cayman) Limited ("Harley")—an offshore hedge fund that invested all or substantially all of its assets in BLMIS. Even though the redemptions from Harley by KBC Investments' clients were all foreign transactions involving foreign parties, the Trustee asks the Court (i) to assert personal jurisdiction over KBC Investments for redemptions from Harley by its foreign fund derivatives client that were neither directed by KBC Investments nor made for KBC Investments' benefit, and (ii) to recover two newly identified subsequent transfers that the Trustee did not previously identify and have been asserted for the first time in the Amended Complaint more than a decade after the Trustee filed his initial complaint in 2011 ("Initial Complaint").

While KBC Investments is confident that the Court will ultimately reject the Trustee's claims against KBC Investments on the basis of, *inter alia,* the "good faith and for value" defense under Section 550 of the Code (11 U.S.C. § 550(b)), the Court should dismiss the Amended Complaint now because the Court lacks personal jurisdiction over KBC Investments and the Trustee's delay of nearly 11 years to identify and seek recovery of subsequent transfers not included in the Initial Complaint sufficiently prejudices KBC Investment to preclude the relation back doctrine from saving the Trustee's otherwise time-barred claims.

KBC Investments is aware that this Court has denied motions to dismiss filed by several other defendants who have sought dismissal on personal jurisdiction and statute of limitations grounds.[1]  But KBC Investments' motion to dismiss rests on unique facts and allegations by the Trustee—improperly imputing the actions of third parties and non-subsidiary affiliates to KBC Investments and basing jurisdiction on transfers involving "custodian's" U.S. bank accounts—

---

[1] *See e.g. Picard v. Farfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021); *Picard v. Banca Carige S.P.A. (In re BLMIS), Adv. Pro. No. 11-02570 (CGM)*, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Cathay Life Ins. Co. (In re BLMIS)*, Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022).

which require dismissal here.  Simply put, the Trustee should not be permitted to cure his fatal

pleading deficiencies in the Amended Complaint, which he filed more than 14 years after the

initial transfers from BLMIS.  For these reasons and as explained below, KBC Investments

respectfully requests dismissal of the Amended Complaint in its entirety with prejudice.

## BACKGROUND

### A.    General Background Regarding BLMIS and Harley

On December 11, 2008, the U.S. Securities and Exchange Commission commenced

proceedings in the United States District Court for the Southern District of New York against

BLMIS.  (Am. Compl. ¶ 10).  The District Court appointed the Trustee and removed the action

to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy

Court").  (*Id.* ¶ 11).

In 2009, the Trustee commenced an adversary proceeding against Harley to avoid and

recover initial transfer from BLMIS to Harley in the amount of $1,072,800,000 ("Harley Initial

Transfers").  (*Id.* ¶ 73).  On November 10, 2010, on a motion for summary default judgment, the

Bankruptcy Court entered judgments against Harley for the amount of the Harley Initial

Transfers, including a summary judgment of avoidance of transfers pursuant to Section

548(a)(1)(A) of the Bankruptcy Code in the amount of $1,066,800,000.  (*Id.* ¶¶ 74-75; *Picard v.

Harley Int'l (Cayman) Ltd.*, Case No. 09-01187 (BRL), Dkt. No. 15 (Bankr. S.D.N.Y. Nov. 10,

2010), at 10-11 ¶ 1(b)).[2]

### B.    The Adversary Proceeding Against KBC Investments

On October 6, 2011, the Trustee commenced this adversary proceeding against KBC

Investments by filing the Initial Complaint seeking to recover a portion of the "Harley Initial

---

[2] At this stage of the litigation, KBC Investments does not concede that any portion of the Harley
Initial Transfers was avoidable and reserves all arguments in that regard.

3

Transfers" that it alleges were subsequently transferred to KBC Investments as an immediate or mediate transferee. (Am. Compl. ¶¶ 77-84). In the Initial Complaint, the Trustee only identified a single subsequent transfer from Harley to KBC Investments that allegedly occurred in or about February 2008 ("Feb. 2008 Transfer").

On August 5, 2022, more than a decade after filing the Initial Complaint, the Trustee filed the Amended Complaint seeking to recover two additional subsequent transfers from Harley to KBC Investments that were not identified in the Initial Complaint. Although the Trustee had previously alleged KBC Investments received $110 million from Harley as a subsequent transfer from BLMIS in February 2008, he conceded that $60 million of that transfer was not a subsequent transfer of BLMIS property and amended his claims in the Amended Complaint to reflect this fact. *Compare* Initial Compl. Ex. C [Dkt. No. 1-3] *with* Am. Compl. Ex. C [Dkt. No. 104-3]. The Trustee does not identify any details concerning the source of the alleged transfers from Harley to KBC Investments, he does not tie any specific portion of the Harley Initial Transfers to KBC Investments, and he does not indicate what portions of the alleged transfers from Harley to KBC Investments were sourced from BLMIS. Instead, the Trustee makes broad general allegations that a portion of the Harley Initial Transfers went to KBC Investments.

In support of his assertion that KBC Investments is subject to personal jurisdiction, the Trustee alleges the following five general sets of facts:

- KBC Investments worked with U.S. Affiliates in managing feeder fund investments in New York, whose employees frequently met with feeder fund personnel in New York on behalf and for the benefit of KBC Investments (Am. Compl. ¶¶ 55-56, 67-68, 70);

- KBC Investments "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS" and maintained investments in other BLMIS feeder funds managed by entities based in New York (*id.* ¶¶ 60-61, 69);

- KBC Investments executed subscription agreements with Harley that were governed by Harley's articles of incorporation, which provided that all

shareholder disputes would be arbitrated in New York, and Harley subscription documents required all subscription payments to be made in Harley's New York bank accounts (*id.* ¶¶ 63-64);

- KBC Investments directed Harley redemption payments to be paid to its HSBC Bank USA account in New York and KBC Investments had a Depository Trust Company Participation ("DTC") account with the Bank of New York and owned U.S. stocks (*id.* ¶¶ 65, 70); and

- KBC Investments knew that Harley was a BLMIS feeder fund with 99.99% of its assets invested in BLMIS in New York (*id.* ¶¶ 62, 66).

As detailed below and in the accompanying Declaration of Jatin Tosar ("Tosar Declaration"), the Trustee's allegations are contravened by irrefutable transaction documentation or concern incidental contacts unrelated to the alleged transfers, Harley or BLMIS, which are insufficient to establish personal jurisdiction.

### C.    At All Relevant Times, KBC Investments Was an Offshore Company with Offshore Operations

KBC Investments is a private limited company with its registered office in the United Kingdom and principal place of business in London.  (Am. Compl. ¶ 3; Tosar Decl. ¶ 2).  KBC Investments is a direct subsidiary of KBC Bank, N.V. ("KBC Bank"), which is a direct subsidiary of KBC Group N.V., a publicly listed bancassurance company in Belgium.  (Tosar Decl. ¶ 2).  The Trustee does not allege, nor could he, that KBC Investments had U.S. offices or was incorporated here.

The Trustee also concedes that non-parties KBC Financial Products USA Inc. ("KBC US") and KBC Asset Management Ltd. ("KBCAM") are not subsidiaries of KBC Investments. To the Trustee, however, this is no issue because he erroneously alleges without any detail or factual support that (apparently solely based on their status as corporate affiliates) KBC US and KBCAM worked closely with KBC Investments and assisted in managing its investments in Harley and other BLMIS feeder funds.  (Am Compl. ¶¶ 55-56, 67-68).  On the contrary, KBC

Investments did not make such investments on its own behalf. (Tosar Decl. ¶¶ 23, 26, 32, 38).

Moreover, KBC US and KBCAM did not assist KBC Investments in managing its clients'

investments in Harley or other BLMIS feeder funds. (*Id*. ¶ 15).

>    **D.    Harley and Other BLMIS Feeder Funds Investment Decisions Were Made
>            by KBC Investments' Clients, Not KBC Investments**

As part of its fund derivatives business, KBC Investments provided its offshore clients

with non-recourse funding collateralized by a portfolio of offshore hedge fund investments

selected by its clients without any advice from KBC Investments. (Tosar Decl. ¶ 5). KBC

Investments did not provide asset management services, advisory services or any other

discretionary investment services to its fund derivatives clients. (*Id*.).

One of its fund derivatives clients was Fairfax Fund Limited ("Fairfax"), an offshore

investment vehicle incorporated under the laws of the British West Indies that invested

exclusively in offshore hedge funds. (*Id*. ¶ 6). As with all of its fund derivatives clients, KBC

Investments prohibited Fairfax from investing in any hedge fund "organized under the laws of

any state or territory of the United States." (*Id*. ¶¶ 5, 18; Ex. 2 at 1). Fairfax representatives (not

KBC Investments) directed all investments in and redemptions from Harley. KBC Investments

did not direct investment decisions nor did it participate in its clients' investment returns, and

only charged clients a minimal interest margin or spread of approximately 1% for providing

funding. (*Id*. ¶ 7). As is true for Fairfax's investments in Harley, KBC Investments did not

maintain investments in other BLMIS feeder funds for its own account and investments in other

BLMIS feeder funds by KBC Investments' clients were directed by its clients, not KBC

Investments. (*Id*. ¶¶ 10-11, 43).

### E. Fairfax's Investments in Harley Were Held in a Citco Custody Account

Fairfax's investments in Harley were held in an offshore custody account established by

KBC Investments for Fairfax with Citco Global Custody N.V. ("Citco Custody"), which is based

in Dublin, Ireland.  (Tosar Decl. ¶¶ 10, 17).  KBC Investments did not execute a subscription

agreement with Harley.  (*Id.* ¶ 20).  All investments and redemptions in Harley directed by

Fairfax that are the subject of the Amended Complaint were held by Citco Custody in offshore

accounts.  (*Id.*).

### F. KBC Investments Did Not Use U.S. Accounts for Harley Redemptions

KBC Investments did not use any U.S. bank account or its DTC Participation Account for

any transfers related to Fairfax's redemptions from Harley.  (*Id.* ¶ 22).  Any use of correspondent

bank accounts by Fortis Prime Fund Solutions (Isle of Man) Limited ("Fortis"), as administrator

for Harley, or Citco Custody in relation to Fairfax's redemption from Harley, were unknown to

KBC Investments.  (*Id.* ¶¶ 30, 36, 42; Exs. 7, 11, 15).

### G. Fairfax, Not KBC Investments, Made the Harley Investment and Redemption Decisions

Although KBC Investments set investment guidelines for its fund derivatives clients to

manage the risks associated with providing funding for those clients, the only due diligence

performed by KBC Investments on the individual hedge funds that its clients chose to invest in

was limited to ensuring compliance with those investment guidelines – which, for example, set

concentration and diversification limits, and required all investments to be in offshore hedge

funds and investment vehicles that were not U.S. entities.  (*Id.* ¶ 9).  KBC Investments did not

engage in any due diligence with respect to the merits of any investments made by its clients

because it did not advise its clients concerning their investment decisions and KBC Investments'

income was not generated based upon whether its clients made or lost money on their respective investments (it only charged clients interest for the funding it provided them).  (*Id*. ¶¶ 5-6, 9).

Most relevant to the Amended Complaint, KBC Investments (i) did not direct any transaction between Harley and BLMIS, (ii) did not have knowledge of whether Harley used redemptions from BLMIS or funds from other sources to pay any redemptions from Harley, and (iii) did not have knowledge of the source of funds Harley used to fund Fairfax's redemptions from Harley in 2008.  (*Id*. ¶ 22).  Moreover, with respect to all of Fairfax's investments in and redemptions from Harley, KBC Investments did not provide any investment advice to Fairfax, did not exercise investment discretion, did not receive any profits related to the performance of the investments in Harley, and only provided purchase and redemption instructions to Citco Custody for Fairfax when directed to do so by Fairfax representatives.  (*Id*. ¶ 23).

## **ARGUMENT**

### I.    **THE COURT LACKS PERSONAL JURISDICTION OVER KBC INVESTMENTS**

The erroneous, unsupported and conclusory allegations in the Amended Complaint fail to meet the Trustee's burden to make a *prima facie* showing that personal jurisdiction exists over KBC Investments.  *See, e.g., Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (Plaintiff bears the burden of establishing a *prima facie* basis for jurisdiction). First, the Amended Complaint does not contain allegations that satisfy the requirements for general jurisdiction over KBC Investments because KBC Investments is not "at home" in the United States.  Second, the Trustee does not establish specific jurisdiction because (i) the claims in the Amended Complaint do not arise out of sufficient minimum contacts that KBC Investments had with New York (or the United States) to establish that it availed itself of the benefits and protections of New York (or the United States), (ii) KBC Investments' incidental contacts with New York are not related to the subsequent transfers from Harley that the Trustee

8

seeks to recover, and (iii) exercising jurisdiction over KBC Investments would be unreasonable and would not comport with due process. Therefore, the Court should decline to exercise general or specific personal jurisdiction over KBC Investments and the Amended Complaint should be dismissed in its entirety with prejudice pursuant to Civil Rule 12(b)(2).

A.      **KBC Investments Is Not Subject to General Jurisdiction**

The Trustee does not, and could not, allege that this Court has general jurisdiction over KBC Investments. General jurisdiction exists when the defendant is "at home" in the forum, either by incorporation under the laws of the forum or by having its principal place of business in the forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). Even the Trustee acknowledges that "Defendant KBC Investments is a private limited company with its registered office in the United Kingdom." (Am. Compl. ¶ 54). Moreover, at all relevant times, KBC Investments had it principal place of business in London, was managed and operated in London, and did not have any subsidiaries or offices in the United States. (Tosar Decl. ¶¶ 2, 4). Thus, the Trustee has not and cannot establish general jurisdiction over KBC Investments.

B.      **KBC Investments Is Not Subject to Specific Jurisdiction In New York**

Having failed to allege facts supporting general jurisdiction over KBC Investments, the Trustee must plead sufficient facts to support specific jurisdiction over KBC Investments. *See Daimler AG*, 571 U.S. at 136–40. To establish specific jurisdiction over a nonresident defendant, the Trustee must demonstrate that the exercise of jurisdiction comports with due process, which requires showing that KBC Investments "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); (2) the Trustee's claims "arise out of or relate to the foreign corporation's activities in the forum State," *Helicopteros*

9

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and (3) the exercise of

jurisdiction is reasonable under the circumstances, *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 477-78 (1985).

To survive a motion to dismiss, the Trustee "bears the burden to make a prima facie

showing the jurisdiction exists." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr.

S.D.N.Y. 2015). "A *prima facie* case requires non-conclusory fact-specific allegations or

evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag

v. MT Marida Marguerite Schiffahrts et al.*, 604 F. App'x 16, 19 (2d Cir. 2015) (emphasis

added).

Here, in an effort to meet his burden of establishing jurisdiction, the Trustee

impermissibly relies upon forum contacts of third parties (not KBC Investments) and incidental

contacts KBC Investments had with this forum that are unrelated to the subsequent transfers the

Trustee seeks to recover. As detailed below, the Amended Complaint must be dismissed.

## 1.    KBC Investments Did Not Purposefully Avail Itself of the Privileges of Conducting Business In New York

The Supreme Court has made clear that specific jurisdiction may only be established by

the minimum contacts that a defendant itself creates with the forum, *not* by "contacts between

the plaintiff (or third parties) and the forum State," and *not* by "the defendant's contacts with

persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (internal citations

omitted). The purposeful availment prong is satisfied only when the defendant's contact with the

forum State "proximately results from actions by the defendant *himself* that create a 'substantial

connection' with the forum state." *Burger King v. Rudzewicz¸* 471 U.S. 462, 475 (1985)

(emphasis added). This ensures that a defendant is not subject to jurisdiction due to "random,

fortuitous, or attenuated contacts." *Id*. The Trustee's reliance on the actions of third parties to

establish jurisdiction, as opposed to KBC Investments' contacts with this forum, do not justify a finding that KBC Investments purposefully availed itself of the rights and privileges of conducting business in New York.

### a.   The Actions of KBC Investments' Affiliates Do Not Show Purposeful Availment by KBC Investments

In order to create a jurisdictional hook where none exists, the Trustee makes conclusory allegations without any factual support concerning conduct of KBC Investments' corporate affiliates: (1) "KBC USA and KBCAM worked with KBC Investments and assisted in managing its investments [in] Feeder Funds in New York" (Am Compl. ¶ 67), and (2) "[e]mployees of KBC USA and KBCAM frequently communicated with Feeder Fund personnel in New York on behalf of and for the benefit of KBC Investments . . . [and] shared information learned about Harley, other Feeder Funds, Madoff, and BLMIS" (*id.* ¶ 68).  These general allegations are wholly unsupported and contradicted by the actual facts.  (Tosar Decl. ¶¶ 13-15) (affiliates did not assist KBC Investments with managing client investments in Harley or other BLMIS feeder funds).  Moreover, the Trustee's allegations concerning KBC Investments' non-subsidiary affiliates (one of which itself is a foreign entity in Ireland) cannot be attributed to KBC Investments for purposes of specific personal jurisdiction because the Trustee does not allege facts to support a finding of an agency relationship nor do the allegations concern KBC Investments' conduct in New York or the U.S.  Instead, the Trustee's allegations concern the actions of non-subsidiary, corporate affiliates alleged to have taken place in the U.S.

While the Trustee suggests that KBC USA and KBCAM acted as agents of KBC Investments, his unspecific allegations are unavailing because personal jurisdiction based upon agency principles requires allegations that KBC Investments (as principal) exercised control over its affiliates (the purported agents).  *See Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.),*

11

*Inc. et al.*, 64 F. Supp. 3d 494, 519 (S.D.N.Y. 2014) (explaining that personal jurisdiction under

agency theory turns on whether defendant "exercised some control over [the agent] in the

matter").  A plaintiff fails to make a *prima facie* showing of personal jurisdiction where, as here,

a party merely sets forth non-specific and conclusory allegations as to the purported agency

relationship.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (plaintiff failed to

allege *prima facie* showing of personal jurisdiction based on agency where plaintiff's

"conclusory statement[s]" were nothing more than "a restatement, with slight changes, of the

legal standard for determining agency").  It is also well-settled that "[c]orporate affiliation alone

is insufficient to create an agency relationship." *Bank of Am. Nat. Ass'n v. Sopher,* No. 10 CIV.

8870 (LTS) (KNF), 2011 WL 2419872, at *3 (S.D.N.Y. June 8, 2011); *see also Usina Costa*

*Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.*, 933 F. Supp. 1170, 1176 (S.D.N.Y.

1996) ("Independent corporate affiliation, by itself, does not create a master/servant or

principal/agent relationship.").

    The Trustees allegations concerning KBC Investments' corporate affiliates are also

inadequate because specific jurisdiction cannot be based upon KBC Investments' receipt of a

benefit from actions of affiliates in New York without specific actions by KBC Investments in

New York.  *See, e.g., Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 837 (N.Y. 2007) ("[T]he mere

receipt by a nonresident of a benefit or profit from a contract performed by others in New York

is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-

arm statute.").[3]  Thus, the Trustee's attempts to use actions of KBC Investments' non-subsidiary

---

[3] The Second Circuit has also held that personal jurisdiction cannot be established where defendants have only had
"sporadic or indirect contacts with the United States." *SPV Osus Ltd. v. UBS AG et al.*, 114 F. Supp. 3d 161, 170-71
(S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *see also McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d
377, 380, 382 (1967) (finding the fact that Illinois corporation's representatives traveled to New York and spent one
day there conferring with plaintiff over contract dispute did not rise to purposeful availment under CPLR §
302(a)(1)).

affiliates in New York without allegations sufficient to establish an agency relationship do not provide a basis for specific personal jurisdiction over KBC Investments.

> **b.    Transfers Made Through a "Custodian" Bank Account Do Not Support Specific Jurisdiction**

The Trustee next alleges that "KBC Investments used its *custodian's* HSBC Bank USA account in New York to receive transfers from Harley . . . [and] redemption confirmations indicate that KBC Investments directed all of its Harley redemption payments – totaling three payments over a four month period – to this HSBC Bank USA account in New York." (Am. Compl. ¶ 65) (emphasis added). The Trustee's allegations are confusing at best because KBC Investments did not have a custody relationship with HSBC Bank USA. (Tosar Decl. ¶ 17). KBC Investments also did not receive transfers from Harley into a KBC Investments New York bank account. (*Id.* ¶¶ 17, 22).

Moreover, even assuming the Trustee had alleged (and he has not) that KBC received transfers from Harley in its own HSBC Bank USA account in New York (as opposed to a "custodian's" bank account), such allegations by the Trustee would be insufficient because the "mere maintenance" of a U.S. bank account and the "knowing receipt of funds" through the account does not establish personal jurisdiction. *See, e.g., O'Toole v. Myplace Dev. Sp. Z O.O. (In re Sledziejowski) et al.*, No. 13-22050 (RDD), 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983). The law is also clear that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-CV-3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017).

Finally, to the extent the Trustee intended to allege that a correspondent bank account in the United States was used by a custodian's account in New York (Citco Custody or another unidentified "custodian") to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction—here, the redemption of shares in Harley based in the Cayman Islands on behalf of KBC Investments' offshore client Fairfax—such allegations do not establish personal jurisdiction. Passing funds through a New York correspondent bank account knowingly and intentionally is not "purposeful" for jurisdictional purposes, if the transfers were incidental to routing funds to a foreign bank account. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403-04 (S.D.N.Y. Sept. 20, 2021) ("Plaintiffs have identified no authority, nor is the Court aware of any, standing for the principle that a non-domiciliary individual defendant may be subject to specific jurisdiction in New York under Section 302(a)(1) because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through New York via a correspondent account."); *Hill v. HSBC Bank plc*, No. 14-cv-09745 (LTS), 2016 WL 4926199, at *3 (S.D.N.Y. Sept. 15, 2016) (finding no jurisdiction against HSBC custodians and feeder funds located outside the U.S. where they "communicated with and transmitted information and funds to and from BLMIS located in New York."); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases).

For these reasons, the Trustee's allegations concerning use of a custodian's bank account or a correspondent bank account in New York do not show any purposeful availment by KBC Investments that would support personal jurisdiction.

c.    **Harley Subscription Agreements that Were Not Entered Into
by KBC Investments Do Not Support Specific Jurisdiction**

The Trustee also makes several arguments that KBC Investments should be subject to

jurisdiction because "investors [in Harley] were required to execute Harley subscription

agreements." (Am. Compl. ¶¶ 63-64). As an initial matter, KBC Investments did not make

investment decisions concerning investments in Harley and did not execute Harley subscription

agreements (Tosar Decl. ¶¶ 6, 20), rendering the forum selection clause within the Harley

subscription agreement referenced by the Trustee a nullity. *See Aguas Lenders Recovery Grp. v.

Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (finding that non-signatories to an agreement

cannot be bound by agreement's forum selection clause absent limited exceptions not applicable

here); *see also Mariac Shipping Co., LTD. v. Meta Corp., N.V., et al.*, No. 05 CIV. 2224 (LAK),

2005 WL 1278950, at *1 (S.D.N.Y. May 31, 2005) (finding that a forum selection clause in an

arbitration provision "goes no farther than proceedings relating to enforcement of the arbitration

agreement").

The Harley subscription agreements do not support jurisdiction for the additional reason

that the forum selection clause in the Articles of Association (not even contained in the Harley

subscription agreements) concerned shareholder disputes, not redemptions, making it

inapplicable to the Trustee's claims because neither the Trustee nor BLMIS were parties to, or

third-party beneficiaries, of the Harley subscription agreements. *Cf. Fairfield Sentry Ltd. v.

Theodoor GCG Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-13163 (SMB), 2018 WL

3756343, at *11-12 (Bankr S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (holding that defendant's

consent to a forum selection clause in the Subscription Agreement, which governed subscriptions

but not redemptions, did not constitute consent to personal jurisdiction in the same forum in an

15

action under the Articles of Association that governed redemptions), *aff'd* 2022 WL 4391023, at

8-9 (S.D.N.Y. Sept. 22, 2022).

>           **d.      Knowledge that Harley Invested in BLMIS Does Not Establish
>                    Purposeful Availment**

In his attempt to obtain personal jurisdiction over KBC Investments, the Trustee also

heavily relies on allegations that "KBC Investments knowingly directed funds to be invested

with, and then redeemed from, New York-based BLMIS . . . through Harley," including facts

showing Harley was a feeder funds for BLMIS.  (Am. Compl. ¶¶ 61-62).  While this Court has

denied motions to dismiss on jurisdictional grounds in which the complaints included similar

allegations concerning the defendant's knowledge that investments were being made in a BLMIS

feeder fund, the facts here are markedly different from other cases and the Trustee's allegations

are insufficient to establish personal jurisdiction over KBC Investments because the Harley

investment and redemption decisions were *not made by KBC Investments.*  Rather, all such

decisions were made by KBC Investments' client Fairfax and with respect to investment in

Harley and other BLMIS feeder funds:

- KBC Investments did not itself invest in Harley or other BLMIS feeder funds
  (Tosar Decl. ¶¶ 20, 22);

- KBC Investments did not solicit clients to invest in Harley or other BLMIS feeder
  funds and only executed derivatives transactions at the direction of its offshore
  clients (*id.* ¶¶ 6-7);

- KBC Investments did not have investment discretion and did not provide
  investment advice to its clients concerning their investment choices (*id.* ¶¶ 5, 6,
  22);

- Custody of client investments and related subscriptions and redemptions in Harley
  were held by offshore custodians, like Citco Custody, in an account for Fairfax
  (*id.* ¶¶ 10, 20);

- KBC Investments provided its fund derivatives clients with funding, it had no
  interest in the investment performance of its clients' investments and only

received a nominal margin interest for the funding it provided (*id.* ¶¶ 5, 7, 23); and

- KBC Investments monitored client investments to assess compliance with investment guidelines concerning concentration, diversification and other structural limits for clients' portfolio of off-shore hedge fund investments, including Fairfax, but it did not conduct due diligence on client investments to provide investment advice – monitoring was undertaken to maintain compliance with the guidelines (*id.* ¶ 9).

Notwithstanding these facts, several of the Trustee's jurisdiction allegations focus on KBC Investments' knowledge that Harley was a BLMIS feeder fund and invested all or substantially all of its assets in BLMIS. (Am. Compl. ¶¶ 61-62). These allegations appear to be an impermissible attempt by the Trustee to use the activities of BLMIS and Harley in this forum and the foreseeability of their activities here to establish jurisdiction over KBC Investments. These allegations fail. KBC Investments' purported knowledge that investments in Harley would be used to conduct business with BLMIS in New York and investment returns were intended to come from BLMIS's trading activities on U.S. stock exchanges (which never actually occurred) do not establish that KBC Investments purposefully availed itself of the rights and protections of doing business in New York for several reasons.

First, as set forth directly above, KBC Investments did not make the decision to invest in Harley and did not anticipate obtaining profits from Harley's transactions with BLMIS. Instead, KBC Investments' client Fairfax directed the investment in Harley and was the entity that anticipated profits from Harley's anticipated investments in BLMIS and BLMIS's transactions in the U.S.

Second, alleged knowledge that Harley would transact with BLMIS in the United States and was managed from the United States are insufficient to establish specific personal jurisdiction over KBC Investments because only the forum contacts of KBC Investments itself should be assessed in determining purposeful availment. *See, e.g., Walden v. Fiore*, 571 U.S.

277, 284-85 (2014); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 207 (S.D.N.Y.

2018) (granting motion to dismiss for personal jurisdiction where there were "no allegations that

the Foreign Defendants expressly aimed their conduct at the forum – just that they expressly

aimed their conduct at counterparties to BBSW-Based Derivative transactions around the world,

some of whom happened to be in the United States"), adhered to on denial of reconsideration,

No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018).  In *Walden*, the Supreme

Court clarified that personal jurisdiction must be established by "contacts that the 'defendant

himself' creates with the forum State," not by "contacts between the plaintiff (or third parties)

and the forum State," and not by "the defendant's contacts with persons who reside there."  571

U.S. at 284-85 (internal citations omitted).

Third, foreseeability that Harley would invest in BLMIS and BLMIS would use Harley's

investments to transact business in New York likewise fails to provide a basis for personal

jurisdictions because allowing personal jurisdiction to be driven by foreseeability "impermissibly

allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional

analysis."[4] *Walden*, 571 U.S. at 289; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d

659, 674 (2d Cir. 2013) (stating that foreseeability is "insufficient" for the exercise of specific

personal jurisdiction); *7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981

(PGG), 2015 WL 1514539, at *9 (S.D.N.Y. Mar. 31, 2015) ("It is not sufficient that conduct

incidentally had an effect in the forum, or even that effects in the forum were foreseeable.

---

[4] In *Walden*, the Supreme Court held that the Nevada courts lacked specific jurisdiction even though the plaintiffs
were Nevada residents and suffered foreseeable harm in Nevada, "[b]ecause the relevant conduct occurred entirely
in Georgi[a] [and] . . . the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id]
not suffice to establish jurisdiction." *Walden*, 571 U.S. at 289, 291 (internal quotations omitted). Thus, foreseeability
may not be used to confer jurisdiction for KBC Investments. To hold otherwise would bring nearly every investment
that could potentially touch the United States under this Court's jurisdiction.

Instead, the *defendant* must have intentionally caused—i.e., expressly aimed to cause—an effect in the forum through his conduct elsewhere.") (internal citations omitted) (emphasis added).

Fourth, allegations that KBC obtained redemption proceeds from Harley as a result of transactions between Harley and BLMIS in New York similarly fail to establish jurisdiction. As the New York Court of Appeals has long held, "[t]he mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our longarm statute." *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 (1970) (internal citation omitted); *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 837 (2007) (finding no purposeful availment where defendant's only connection to New York was through a foreign judgment and plaintiff's unilateral activities in New York); *see also St. Paul Fire and Marine Ins. Co. v. Eliahu Ins. Co., Ltd.*, No. 96 Civ. 7269(MBM), 1997 WL 357989, at *4 (S.D.N.Y. June 26, 1997) ("It would be stretching the purposefulness requirement too thin to attribute actions taken by an entity in negotiating a contract to another entity merely because the second entity later assumes the benefits of the contract.").

Therefore, even if KBC Investments had obtained investment returns linked to the results of trading by BLMIS or transactions between Harley and BLMIS (and it did not), this would not establish a *prima facie* case that KBC Investments purposefully availed itself of the benefits of New York law, because all of the relevant U.S.-based commercial and investment activity was undertaken by parties other than KBC Investments. Moreover, the known or anticipated activities of BLMIS or Harley in New York as a result of foreign transactions to invest in Harley

outside of this forum are likewise insufficient to establish that KBC Investments engaged in

purposeful conduct in New York.[5]

> ## 2.    The Trustee Has Failed to Establish That His Claims "Arise Out of or Relate To" KBC Investments' Incidental Contacts with New York

The Trustee's remaining allegations against KBC Investments—that "KBC Group also

filed quarterly 13-F reports with the SEC on behalf of KBC Investments beginning in 2008,

acknowledging holdings of many U.S. stocks . . . [and] KBC Investments also maintained a

Depository Trust Company Participation Account through the Bank of New York" (Am. Compl.

¶ 68)—do not relate to the claims against KBC Investments in the Amended Complaint.

For jurisdictional purposes, "a suit will be deemed to have arisen out of a party's

activities in New York if there is an articulable nexus, or a substantial relationship, between the

claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490

F.3d 239, 246 (2d Cir. 2007). "To establish the minimum contacts necessary to justify specific

jurisdiction, the plaintiff [] must show that his claim arises out of or relates to [defendant's]

contacts with [the forum state]." *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998) (citing

*Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1027 (2d Cir. 1997)) (cleaned up); *see also Indelible

Media Corp. v. Meat & Potatoes, Inc.*, No. 12-CV-0978 GBD, 2012 WL 3893523, at *6

(S.D.N.Y. Sept. 7, 2012) (citing *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 472 (1985))

(minimum contacts require that "the defendant has 'purposefully directed' his activities at

residents of the forum, and the litigation resulted from alleged injuries that 'arise out of or relate

to' those activities").

---

[5] For the same reasons, the Trustee's allegations concerning investments by KBC Investments in other BLMIS feeder funds (Am. Compl. ¶ 69) do not support jurisdiction.

There is no relationship between KBC Investments' alleged contacts with New York concerning U.S. stock holdings and the Trustee's claims concerning BLMIS and the Harley Initial Transfers.  The Trustee does not even attempt to articulate any nexus between the claims asserted in the Amended Complaint and KBC Investments' alleged DTC account and holding of U.S. stocks.  (Am. Compl. ¶ 70).  These allegations appear to be thrown into the Amended Complaint merely to draw attention away from the fact that KBC Investments' alleged conduct in New York relating to the Trustee's claims was all conducted by parties other than KBC Investments.  These are precisely the type of unrelated and incidental contacts that courts routinely reject as a basis to assert personal jurisdiction.  *See Shaffer v. Heitner*, 433 U.S. 186 (1977) (finding Delaware's assertion of jurisdiction over appellants inconsistent with constitutional limits where the stocks appellants owned in a Delaware corporation were not the subject matter of the litigation or related to the underlying cause of action); *Sec. & Exch. Comm'n v. Carrillo Huettel LLP*, No. 13 CIV. 1735 (GBD), 2014 WL 12785242, at *5 (S.D.N.Y. June 4, 2014) ("Contrary to Plaintiff's arguments, the mere sale by a foreign entity of unregistered shares of a U.S. company does not automatically result in injury to American investors sufficient to support personal jurisdiction (or a securities violation) under U.S. law."); *Sino Clean Energy Inc. v. Little*, 953 N.Y.S.2d 553, at *8-9 (N.Y. Sup. Ct. N.Y. Cty. May 21, 2012) ("[I]f this Court accepts as meritorious plaintiff's contentions [that defendant's use of its DTC account should confer jurisdiction in New York State courts], almost every corporation would be subject to the jurisdiction of New York, without any other jurisdictional requirements.").

Thus, the Trustee's allegations concerning a DTC account and ownership of U.S. stocks that are wholly unrelated to the Harley Initial Transfers do not support the exercise of jurisdiction over KBC Investments.

### 3.    The Exercise of Jurisdiction Over KBC Investments Would Be Unreasonable and Would Not Comport with Due Process

As a final consideration, the Court must assess whether exercising jurisdiction over KBC Investments is sufficiently reasonable to comport with due process.  To evaluate the reasonableness of personal jurisdiction, courts consider several factors set forth by the Supreme Court in *Asahi Metal* that weigh competing burden and interest factors.  *See Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 113 (1987).  Here, even if the Trustee had met his burden with respect to the first two requirements for exercising jurisdiction over KBC Investments, the reasonableness factors weigh against the Court doing so.

First, with respect to evidence, because the relationship and transactions among KBC Investments, Citco Custody and Fairfax occurred in Europe, potentially relevant records and witnesses are located outside of this jurisdiction.  *See Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) (finding that the exercise of personal jurisdiction did not comport with due process where in part defendants' relevant representatives, documents and records were located abroad); *Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *8 (S.D.N.Y. July 8, 2003) (finding defendant would bear a substantial burden in litigating in New York where foreign defendant corporations had no offices or employees in New York).  The foreign nature of the transactions and related evidence creates an undue burden for KBC Investments to defend a suit in the United States that is disproportionate to the modest interest fees KBC Investments earned for providing funding to Fairfax for its investments in Harley.

Second, the interests of the United States are diminished here because the Trustee's

claims are premised on transactions that settled outside of the United States, between parties that

are at home in foreign countries. *See e.g., In re CIL Ltd.*, 582 B.R. 46, 80 (S.D.N.Y. 2018)

(finding jurisdiction unreasonable where litigation involved "mostly foreign defendants over a

transaction that took place almost entirely outside of the United States").

Lastly, insofar as KBC Investments prohibited its fund derivatives clients from investing

in U.S. entities, provided funding to Fairfax (a foreign investor) who invested in Harley (a

foreign hedge fund), and provided Fairfax's instructions to make redemptions from Harley to

Citco Global (a foreign custodian bank), KBC Investments could never reasonably have

anticipated that it would be subject to jurisdiction in New York.  Under these circumstances,

requiring KBC Investments to litigate here is unreasonable and does not comport with due

process.

## II.   THE TRUSTEE'S CLAIMS IN THE AMENDED COMPLAINT CONCERNING TWO NEW SUBSEQUENT TRANSFERS THAT WERE NOT IDENTIFIED IN THE INITIAL COMPLAINT ARE TIME BARRED[6]

In addition to failing to establish that personal jurisdiction exists over KBC Investments,

the applicable statute of limitations bars the Trustee's claims to recover two subsequent transfers

that were not asserted in the Initial Complaint, filed on October 6, 2011.  The new transfers the

Trustee seeks to recover in the Amended Complaint are: (1) a subsequent transfer allegedly made

from Harley to KBC on March 28, 2008 in the amount of $6 million, and (2) a subsequent

transfer allegedly made from Harley to KBC on June 5, 2008 in the amount of $30 million.  (Am

---

[6] KBC Investments is aware that this Court denied similar arguments in related cases, but nonetheless respectfully asserts that KBC Investments' arguments should nonetheless prevail because permitting new transfers to be asserted for the first time nearly 14 years after the initial transfers and more than a decade after the avoidance of the Harley Initial Transfers and the filing of the Initial Complaint eviscerates the statute of limitations and expands the relation back doctrine in a way that would permit new transfers to be asserted against foreign defendants at any time in the future regardless of the passage of decades of time.

Compl. Ex. C). These new subsequent transfers do not relate back to the Initial Complaint

because they were identified for the first time when the Trustee filed the Amended Complaint on

August 5, 2022, more than a decade after the filing of the Initial Complaint.

Section 550(f) of the Bankruptcy Code provides that the Trustee generally only has up to

one year after the avoidance of an initial transfer to file suit to recover said transfer from

subsequent transferees. *See* 11 U.S.C. § 550(f). "[A]n amendment should be denied where the

additional claims sought to be asserted would be barred by the statute of limitations unless the

amendment relates back under Rule 15(c)." *360networks (USA) Inc.*, 367 B.R. 428, 433 (Bankr.

S.D.N.Y. 2007) (citing *Metzeler v. Bouchard Transp. Co., Inc.*, 66 B.R. 977, 981 (Bankr.

S.D.N.Y. 1986)). Here, the newly alleged subsequent transfers were asserted more than one year

after the Trustee successfully obtained a judgment on November 10, 2020 that "resulted in the

avoidance of the Harley Initial Transfers" (Am. Compl. ¶ 77) and are untimely absent relation

back under Civil Rule 15(c), made applicable to this proceeding by Bankruptcy Rule 7015.

To relate back to the filing of the Initial Complaint in 2011, Rule 15(c)(1)(B) provides

that "[a]n amendment to a pleading relates back to the date of the original pleading when … the

amendment asserts a claim or defense that arose of the conduct, transaction, or occurrence set

out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The

principal inquiry is whether adequate notice of the matters raised in the amended pleading has

been given to the opposing party 'by the general fact situation alleged in the original pleading."

*In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011) (quoting *In re Chaus*

*Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992)), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012),

*aff'd*, 541 F. App'x 55 (2d Cir. 2013). In assessing whether a claim relates back to the original

pleading, a court should not "undermine the purpose of repose for which statutes of limitations

were designed." *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 357 B.R. 257, 263

(Bankr. S.D.N.Y. 2006).  The party asserting relation back under Rule 15(c) bears the burden of

proof.  *See In re Enron Corp.*, 298 B.R. 513, 522 (Bankr. S.D.N.Y. 2003).

        Here, the new subsequent transfers sought to be recovered in the Amended Complaint do

not 'relate back' to the filing of the Initial Complaint because they are not the same subsequent

transfer alleged in the Initial Complaint and permitting two additional subsequent transfers to

relate back to the 2011 Initial Complaint would eviscerate the statute of limitations altogether.

The Trustee's delay of more than a decade to identify the two additional subsequent transfers

(totaling $36 million) should not be permitted because "[i]n an avoidance litigation, each transfer

is treated as a separate transaction for the purposes of applying the 'relation back' doctrine." *M.*

*Fabrikant*, 447 B.R. at 181 (citing *360networks (USA) Inc.*, 367 B.R. at 434 ("A preference

action based on one transfer does not put defendant on notice of claims with respect to any

unidentified transfers."); *see also Metzeler v. Bouchard Transp. Co., Inc.*, 66 B.R. 977, 984

(Bankr. S.D.N.Y. 1986) (different allegedly fraudulent transactions are separate and distinct for

purposes of Rule 15(c)); *M. Fabrikant*, 447 B.R. at 181 (subsequent transfer claims did not relate

back as the "claims d[id] not amplify any of the transactions alleged in the original Complaint").

        In the Initial Complaint, the Trustee only identified a single subsequent transfer that it

alleged occurred on February 28, 2008.  The Trustee did not assert claims for two additional

subsequent transfers (totaling $36 million) from Harley that allegedly occurred in March and

June 2008, respectively.  These are separate transfers from the February 28, 2008 subsequent

transfer identified in the Initial Complaint, which the Trustee sought to recover.  *Compare* Initial

Compl. Ex. C [Dkt. No. 1-3] *with* Am. Compl. Ex. C [Dkt. No. 104-3].  Because the Trustee

identified these separate subsequent transfers in his Amended Complaint more than a decade

after the running of the applicable statute of limitations, the Court should find that the new

subsequent transfer allegations do not related back to the filing of the Initial Complaint under

Civil Rule 15(c)(1)(B), and dismiss them pursuant to 11 U.S.C. § 550(f).

## **CONCLUSION**

For the foregoing reasons, KBC Investments respectfully requests that the Court dismiss

the Trustee's Amended Complaint in its entirety with prejudice and grant KBC Investments such

further and additional relief as it deems proper.


Dated:  November 18, 2022         SIDLEY AUSTIN LLP
       New York, New York

                                        */s/ John J. Kuster*
                                        John J. Kuster
                                        Martin B. Jackson
                                        Andrew P. Propps
                                        Danica L. Brown
                                        SIDLEY AUSTIN LLP
                                        787 Seventh Avenue New
                                        York, NY 10019
                                        Tel: (212) 839-5300
                                        Fax: (212) 839-5599
                                        jkuster@sidley.com
                                        mjackson@sidley.com
                                        apropps@sidley.com
                                        dbrown@sidley.com

                                        *Counsel for Defendant*
                                        *KBC Investments Limited*