**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>KBC INVESTMENTS LIMITED,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 11-02761 (CGM) |

## DECLARATION OF JATIN TOSAR
### IN SUPPORT OF KBC INVESTMENT LIMITED'S MOTION TO DISMISS

I, Jatin Tosar, declare pursuant to 28 U.S.C. 1746, under penalty of perjury under the laws of the United States, that the following is true and correct:

1.　　　I was employed by Defendant KBC Investments Limited ("KBC Investments") from in or about February 2000 through in or about July 2014. In 2008, I was head of trading and structuring for the fund derivatives business at KBC Investments. I submit this declaration in support of KBC Investments' Motion to Dismiss the Trustee's August 5, 2022 Amended Complaint ("Amended Complaint"). The facts stated herein are true to the best of my knowledge and are based upon (i) my personal knowledge, and (ii) records maintained by KBC Investments

in its regular course of business. If called as a witness, I could and would testify competently to the following facts.

**KBC Investments**

2.     KBC Investments was formed on or about July 9, 2003 as a private limited company under the laws of the United Kingdom with its principal place of business in London, England. Until it discontinued commercial operations in or about June 2017, KBC Investments operated out of the United Kingdom as a direct subsidiary of KBC Bank, N.V. ("KBC Bank"), which is a direct subsidiary of KBC Group N.V., a publicly listed bancassurance company in Belgium.

3.     KBC Investments had various business lines, but fund derivatives was the only business line involved in transactions that relate to the claims in the Amended Complaint.

4.     KBC Investments did not have any U.S. subsidiaries and did not maintain offices in the United States.

**KBC Investments' Business Model**

5.     As part of the offshore (non-U.S.) fund derivatives business, KBC Investments provided funding to its offshore clients ("Clients") to enable those Clients to leverage their investment returns. KBC Investments did not provide asset management services, advisory services or any other discretionary investment services to those Clients. Instead, KBC Investments provided Clients with non-recourse funding collateralized by a portfolio of offshore hedge fund investments selected by the Clients themselves without any advice from KBC Investments. KBC Investments was agnostic as to its Clients' investment choices provided that they complied with investment guidelines set for each Client, which always included a prohibition against investing in hedge funds organized under the laws of any state or territory of the United States.

6.      One of KBC Investments' fund derivatives Clients was Fairfax Fund Limited ("Fairfax"), an offshore investment vehicle that invested in offshore hedge funds. As documented inf the January 31, 2008 derivatives agreement with Fairfax ("2008 Fairfax Agreement"), KBC Investments did not direct its Clients' investment decisions nor did it participate in its Clients' investment returns. A true and correct copy of 2008 Fairfax Agreement is attached hereto as Exhibit 1 and a true and correct copy the KBC Investment Guidelines referenced in the 2008 Fairfax Agreement as Appendix B ("Investment Guidelines") are attached hereto as Exhibit 2.

7.      KBC Investments charged its Clients an interest margin or spread (generally around 95-100 basis points or approximately 1%) for providing funding to Clients through derivative transactions to increase their investment returns. KBC Investments did not make any direct investment in any offshore hedge funds for its own benefit and all of its Clients' offshore investments (both subscriptions and redemptions) were directed by its Clients.

8.      The amount of funding KBC Investments provided its Clients was determined based upon the value of the Clients' underlying offshore hedge fund investments and the diversification of those investments.

9.      KBC Investments continuously monitored the amount of funding it provided to each Client and ensured each Client's investments (which served as collateral for KBC Investments), were adequately diversified and sufficiently valued to support the level of funding provided by KBC Investments. The funding ratio, concentration limits and diversification requirements for each Client were set forth in investment guidelines agreed to by each Client as a condition of the contract. Because KBC Investments set investment guidelines to manage the risks associated with providing funding to its Clients, KBC Investments did not conduct extensive due

diligence on the individual hedge funds that its Clients chose to invest in and did not advise its Clients concerning their investment decisions.

10.    Each of the investments of KBC Investments' Clients were held in offshore (non-U.S.) custody accounts. KBC Investments maintained separate custody accounts for each Client with independent custodian banks ("Custodians") that provided custody and financial services for the execution, settlement and custody of investments. The Custodians were all based outside of the United States and were the legal owners of the investments. One of the Custodians that KBC Investments used for the execution, settlement and custody of funds for its clients was Citco Global Custody N.V. ("Citco Custody"). The terms of the custody agreement with Citco Custody are set forth in the Brokerage and Custody Agreement, dated August 25, 2003, among KBC Investments, Citco Custody and Citco Bank Nederland N.V. Dublin Branch ("Citco Bank" and together with Citco Custody "Citco Dublin"). A true and correct copy of the Citco Brokerage and Custody Agreement is attached hereto as Exhibit 3. The Citco Dublin entities are offshore companies with addresses in Dublin, Ireland. (Ex. 3 at 1).

11.    KBC Investments' Clients would direct KBC Investments to purchase or redeem shares in a particular offshore hedge fund. After receiving instructions from a Client, KBC Investments would confirm that the instructions conformed with the Clients' investment guidelines, and then KBC Investments would fund the Client's custody account or request a redemption from the Client's custody account in accordance with the Client's instruction.

**KBC Investments Cayman Islands V Ltd**

12.    From 2004 through 2008, KBC Investments utilized KBC Investments Cayman Islands V Ltd ("KBC Cayman V"), an entity organized under the laws of the Cayman Islands, to book client-facing offshore derivatives transactions with KBC Investments fund derivatives

4

Clients. KBC Cayman V was an indirect subsidiary of KBC Bank, and was not controlled, owned or operated by any U.S. entity.

**Affiliates Referenced in the Amended Complaint**

13.     KBC Asset Management Ltd. ("KBC AM") was headquartered in Dublin, Ireland. While KBC AM was an indirect subsidiary of KBC Bank, it was not a subsidiary or parent (directly or indirectly) of KBC Investments. KBC AM did not direct or make any investment decisions with respect to any of the transactions alleged in the Amended Complaint.

14.     KBC Financial Products USA Inc. ("KBC USA") was incorporated in the state of Delaware. While KBC USA was an indirect subsidiary of KBC Bank, it was not a subsidiary or parent (directly or indirectly) of KBC Investments. KBC USA did not direct or make any investment decisions with respect to any of the transactions alleged in the Amended Complaint.

15.     KBC USA and KBC AM did not assist KBC Investments' Clients with managing their investments in Harley or other hedge funds that are listed in the Amended Complaint as having invested in Bernard L. Madoff Investment Securities LLC ("BLMIS"). KBC USA and KBC AM did not frequently communicate or attend meetings in New York on behalf of or for the benefit of KBC Investments.

**Fairfax Fund Limited**

16.     Fairfax, an offshore investment vehicle that invested in offshore hedge funds based outside of the United States, was one of KBC Investments' fund of funds clients. KBC Investments contracted with Fairfax through its affiliate KBC Cayman V. Fairfax was incorporated under the laws of the British West Indies and was managed by Fix Asset Management SA ("FAM"). The commercial relationship between KBC Investments and FAM was based in London and

5

Switzerland and KBC Investments received investments instructions on behalf of Fairfax from FAM employees based in Switzerland and Greece.

17.   KBC Investments established a custody account for Fairfax at Citco Custody. The Citco Brokerage and Custody Agreement provides that it is governed under the laws of the Netherlands and that claims related to the agreement must be brought "exclusively in Amsterdam, Netherlands." (Ex. 3 §§ 22.1, 22.2). The 2008 Fairfax Agreement governed the transactions that are alleged in the Amended Complaint and listed Citco Custody and HSBC Institutional Trust Services (Ireland) Limited (not HSBC Bank USA) as Custodians for transactions involving Fairfax. (Ex. 1 at 3).  KBC Investments did not have a custodial relationship with HSBC Bank USA.

18.   The Investment Guidelines attached to the 2008 Fairfax Agreement provided that eligible investment funds for Fairfax must "not be organized under the laws of any state or territory of the United States." (Ex. 2 at 1).

**Fairfax's Investments in Harley**

19.   One of the more than 100 investments directed by Fairfax as a Client of KBC Investments was Harley, an offshore fund established under the laws of the Cayman Islands that primarily invested in BLMIS.

20.   KBC Investments did not execute any subscription agreements with Harley or have custody of any investments in Harley. Instead, investments directed by Fairfax, including investments in Harley, were held by Citco Custody in the offshore Citco Custody account established by KBC Investments for Fairfax.

21.     With respect to Fairfax's investments in Harley, KBC Investments received subscription and redemption instructions from FAM employees in Geneva and Athens, which KBC Investments notified to Citco Custody.

22.     With respect to Fairfax's investments in Harley, KBC Investments (i) did not direct any transaction between Harley and BLMIS, (ii) did not have knowledge of whether Harley used subscription payments from Fairfax for purchases in BLMIS or for other purposes, including to pay any redemptions made by other Harley investors, (iii) did not have knowledge of the source of funds Harley used to fund redemptions by Fairfax and (iv) did not use any U.S. bank account or its DTC Participation Account for any transfers related to Fairfax's redemptions from Harley.

23.     With respect to all of Fairfax's investments, including those in Harley (all of which were non-U.S. investments pursuant to the Investment Guidelines), KBC Investments did not have custody of the investments, did not provide any investment advice, did not exercise investment discretion, did not receive any profits related to the performance of the investments, and only provided purchase and redemption instructions to Custodians for Fairfax when directed to do so by Fairfax representatives.

24.     With respect to the three transfers involving Harley alleged in the Amended Complaint, the transaction documents demonstrate the following:

**The February 2008 Fairfax Redemption from Harley**

25.     On or about February 13, 2008, Christina Guerrero, a representative of FAM based in Geneva, Switzerland, sent KBC Investments a Trade Ticket and KBC Order Template to my attention with instructions to redeem US $110,000,000 in Class C shares from Harley on behalf of Fairfax with value date February 1, 2008 ("Fairfax February 2008 Redemption"). A true and

correct copy of the email, trade ticket attachment, and relevant portions of the KBC Order Template attachment are attached hereto as Exhibit 4.

26.     KBC Investments did not make the investment decision on behalf of Fairfax to redeem the Class C Harley shares held by Citco Custody and did not provide any advice to Fairfax with respect to that investment. The transaction was governed by the 2008 Fairfax Agreement and Investment Guidelines. (Exs. 1-2).

27.     On or about February 19, 2008, Ms. Guerrero sent KBC Investments a signed Trade Ticket for the Fairfax February 2008 Redemption. A true and correct copy of the email and signed trade ticket attachment are attached hereto as Exhibit 5.

28.     On or about February 19, 2008, KBC Investments entered the Fairfax February 2008 Redemption in the Citco Dublin trade system and received a trade confirmation from Citco Dublin. A true and correct copy of a February 19, 2008 Trade Notification from Citco Dublin is attached hereto as Exhibit 6.

29.     Subsequently, Fortis Prime Fund Solutions (Isle of Man) Limited ("Fortis"), as administrator for Harley, sent a Redemption Note to Citco Custody, confirming the redemption and transfer of US $110,000,000 to Citco Custody for the Fairfax February 2008 Redemption. A copy of the Fortis Redemption Note for the Fairfax February 2008 Redemption is attached hereto as Exhibit 7.

30.     The redemption amount for the Fairfax February 2008 Redemption that was deposited in the offshore Citco Custody account established by KBC Investments for Fairfax was dispersed in accordance with Fairfax's instructions to KBC Investments and Fairfax's Investment Guidelines. Any use of correspondent bank accounts by Fortis, as administrator for Harley, or

8

Citco Custody in relation to the Fairfax February 2008 Redemption were unknown to KBC Investments.

**The April 2008 Fairfax Redemption from Harley**

31.     On or about March 20, 2008, Elina Barbini, a representative of FAM based in Athens, Greece, sent KBC Investments a Trade Ticket and KBC Order Template to my attention with instructions to redeem US $6,000,000 in Class C shares from Harley on behalf of Fairfax with value date April 1, 2008 ("Fairfax April 2008 Redemption"). A true and correct copy of the email, trade ticket attachment, and relevant portions of the KBC Order Template attachment are attached hereto as Exhibit 8.

32.     KBC Investments did not make the investment decision on behalf of Fairfax to redeem the Class C Harley shares held by Citco Custody and did not provide any advice to Fairfax with respect to that investment.  The transaction was governed by the 2008 Fairfax Agreement and Investment Guidelines. (Exs. 1-2).

33.     On or about March 20, 2008, KBC Investments entered the Fairfax April 2008 Redemption in the Citco Dublin trade system, received a trade confirmation from Citco Dublin, and forwarded the trade confirmation to Elina Barbini, Christina Guerrero and others. A true and correct copy of a March 20, 2008 cover email and Trade Notification from Citco Dublin is attached hereto as Exhibit 9.

34.     On or about April 2, 2008, Ms. Guerrero sent KBC Investments a signed Trade Ticket for the Fairfax April 2008 Redemption. A true and correct copy of the email and signed trade ticket attachment are attached hereto as Exhibit 10.

35.     On or about April 14, 2008, Fortis (as administrator for Harley) faxed a Redemption Note to Citco Custody, confirming the redemption and transfer of US $6,000,000 to Citco Custody

for the Fairfax April 2008 Redemption. A copy of the Fortis Redemption Note for the Fairfax April 2008 Redemption is attached hereto as Exhibit 11.

36.    The redemption amount for the Fairfax April 2008 Redemption that was deposited in the offshore Citco Custody account established by KBC Investments for Fairfax was dispersed in accordance with Fairfax's instructions to KBC Investments and Fairfax's Investment Guidelines. Any use of correspondent bank accounts by Fortis, as administrator for Harley, or Citco Custody in relation to the Fairfax April 2008 Redemption from Harley, were unknown to KBC Investments.

**The June 2008 Fairfax Redemption from Harley**

37.    On or about May 15, 2008, Antonis Varagkis, a representative of FAM based in Athens Greece, sent KBC Investments a Trade Ticket and KBC Order Template to my attention with instructions to redeem US $30,000,000 in Class C shares from Harley on behalf of Fairfax with value date May 31, 2008 ("Fairfax June 2008 Redemption"). A true and correct copy of the email and relevant portions of the KBC Order Template attachment are attached hereto as Exhibit 12.

38.    KBC Investments did not make the investment decision on behalf of Fairfax to redeem the Class C Harley shares held by Citco Custody and did not provide any advice to Fairfax with respect to that investment. The transaction was governed by the 2008 Fairfax Agreement and Investment Guidelines. (Exs. 1-2).

39.    On or about May 16, 2008, Ms. Guerrero sent KBC Investments a signed Trade Ticket for the Fairfax June 2008 Redemption. A true and correct copy of the email and signed trade ticket attachment are attached hereto as Exhibit 13.

40.    On or about May 16, 2008, KBC Investments entered the Fairfax June 2008 Redemption in the Citco Dublin trade system, received a trade confirmation from Citco Dublin, and forwarded the trade confirmation to Antonis Varagkis, Christina Guerrero and others. A true and correct copy of a May 16, 2008 cover email and Trade Notification from Citco Dublin is attached hereto as Exhibit 14.

41.    On or about June 10, 2008, Fortis (as administrator for Harley) faxed a Redemption Note to Citco Custody, confirming the redemption and transfer of US $30,000,000 to Citco Custody for the Fairfax June 2008 Redemption. A copy of the Fortis Redemption Note for the Fairfax June 2008 Redemption is attached hereto as Exhibit 15.

42.    The redemption amount for the Fairfax June 2008 Redemption that was deposited in the offshore Citco Custody account established by KBC Investments for Fairfax was dispersed in accordance with Fairfax's instructions to KBC Investments and Fairfax's Investment Guidelines. Any use of correspondent bank accounts by Fortis, as administrator for Harley, or Citco Custody in relation to the Fairfax June 2008 Redemption from Harley, were unknown to KBC Investments.

**Other Fund of Funds Investments in Offshore Hedge Funds**

43.    Similar to the investments in and redemptions from Harley by Fairfax, KBC Investments did not direct the investments or redemptions by other Clients in Fairfield Sentry Fund Limited, Rye Select Broad Market Portfolio Limited, Rye Select Broad Market XL Portfolio Limited, and Kingate Global Fund Limited, which are alleged to have been feeder funds for BLMIS.

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2022

_____
Jatin Tosar