# **<u>EXHIBIT 1</u>**

**KBC Investments Cayman Islands V Ltd.**



January 31, 2008
]

TO:       Fairfax Fund Ltd
Intertrust Offices
The Valley
Anguilla
British West Indies
Attention: Mr Charles Fix
Telephone: +31 264 479 2189
Facsimile: +31 264 479 5007

FROM:    KBC Investments Cayman Islands V Ltd.
111 Old Broad Street
London  EC2N 1FP
United Kingdom
Attention: Fund Derivatives Middle Office
Telephone: +44 20 7614 6000
Rapidfax: +44 20 7979 6161

RE:    Transaction between KBC INVESTMENTS CAYMAN ISLANDS V LTD. ("**KBCFP**") and FAIRFAX FUND LTD ("**Counterparty**")

The purpose of this letter agreement (including the Appendices hereto, and as amended from time to time, this "**Confirmation**"), which constitutes a "Confirmation" within the meaning of the Agreement referred to below, is to confirm the terms and conditions of the Transaction (this "**Transaction**") entered into between KBCFP and Counterparty on the Trade Date specified below. This Confirmation shall supersede any and all prior written or oral agreements relating to this Transaction.

KBC Financial Products UK Limited has arranged this Transaction for KBCFP.

1.    This Confirmation evidences a complete binding agreement between KBCFP and Counterparty as to the terms of this Transaction. KBCFP and Counterparty may in the future negotiate, execute and deliver an agreement (the "**Future Agreement**") in the form of the 1992 ISDA Master Agreement (Multicurrency-Cross Border) (the "**ISDA Form**"), as published by the International Swaps and Derivatives Association, Inc. ("**ISDA**"), with such modifications as KBCFP and Counterparty will in good faith agree. Upon the execution and delivery by KBCFP and Counterparty of any Future Agreement, this Confirmation will supplement, form a part of, and be subject to the Future Agreement. Unless and until any Future Agreement is executed and delivered, this Confirmation, together with all other documents referring to the ISDA Form confirming Transactions entered into between KBCFP and Counterparty (notwithstanding anything to the contrary in a Confirmation), shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if KBCFP and Counterparty had executed an agreement in such form with a Schedule in which KBCFP and Counterparty agreed upon the terms set forth in paragraph 11 below on the Trade Date of the first such Transaction between KBCFP and Counterparty (the "**Original Agreement**"). As used herein, "**Agreement**" refers to (a) prior to the execution and delivery of any Future Agreement, the Original Agreement and (b) thereafter, the Future Agreement. All provisions contained in or incorporated by reference into the Agreement shall govern this Confirmation except as expressly modified below. In the event of any inconsistency between this Confirmation and the Agreement, this Confirmation shall govern.

- 1 -

Deal Reference #
[      ]

The definitions and provisions contained in the 2000 ISDA Definitions (the "**Swap Definitions**") and in the 1996 ISDA Equity Derivatives Definitions (the "**Equity Definitions**", and together with the Swap Definitions, the "**Definitions**"), in each case as published by ISDA, are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the Equity Definitions, the Equity Definitions shall govern. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation shall govern.

2.    The terms of this Transaction are as follows:

**General Terms:**

| | |
|---|---|
| **Buyer:** | Counterparty. |
| **Seller:** | KBCFP. |
| **Calculation Agent:** | KBCFP. The determinations and calculations of Calculation Agent will be binding on the parties absent manifest error. |
| **Trade Date:** | January 31, 2008. |
| **Effective Date:** | February 3, 2008. |
| **Business Day:** | London. |
| **Business Day Convention:** | Modified Following. |
| **Option Style:** | European. |
| **Option Type:** | Call. |
| **Payments:** | Unless otherwise specified herein, each party shall make each payment specified in this Confirmation as being payable by it, in immediately available funds in USD, not later than 2:00 p.m. (London time) on the due date for such payment. Any payments received from the issuer of an Eligible Interest, whether as a result of a redemption or otherwise, if received by such time on any day will be credited as described below on such day. Any payments received after such time, whether from a party or an issuer of an Eligible Interest, will be credited on the next succeeding Business Day. |
| **Reference Basket:** | A basket of Eligible Interests as described in Appendix A, which Appendix shall be deemed to be amended upon Seller or any of its Affiliates remitting or receiving (as applicable) funds or other assets in connection with the purchase, subscription, sale, redemption, or transfer of any Eligible Interest |

      i.   in response to a written request by or on behalf of Buyer for a change to the Reference Basket in connection with a Strike Addition, Strike Reduction, or otherwise, which request shall be substantially in the form of Exhibit I,

     ii.   on Seller's own motion in connection with a Seller Adjustment or the removal of such Eligible Interest from the Reference Basket in accordance with this Confirmation, or

    iii.   imposed by or on behalf of the issuer of such Eligible Interest,

in each case as necessary to give effect to such purchase, subscription, sale, redemption, or transfer.

Buyer acknowledges and agrees that Seller shall not be held responsible for any delay in effecting, or failure to effect, any change to the Reference Basket so long as Seller submits the relevant purchase, subscription, sale, redemption, or transfer orders (as applicable) to the relevant Custodian on a timely basis; provided that under no circumstances shall Seller be required to submit any such order less than two Business Days following a written request therefor by or on behalf of Buyer. Seller agrees to take

- 2 -

such measures as may be reasonably requested by or on behalf of Buyer to recover from the relevant Custodian and any hedge fund administrator, as the case may be, any losses suffered by Buyer as a result of any delay or failure by such Custodian or administrator in processing such purchase, subscription, sale, redemption, or transfer orders so long as Buyer funds in advance the costs and assumes any liabilities associated therewith.

In addition, subject to the immediately following sentences, Buyer acknowledges and agrees that Seller shall have no obligation, whether of a fiduciary nature or otherwise, to monitor any of the Eligible Interests included in the Reference Basket, to notify Buyer of any events or developments with respect to any such Eligible Interest, or to take any action with respect to any such Eligible Interest unless expressly requested by Buyer and so long as Buyer funds in advance the costs and assumes any liabilities associated therewith. Seller shall, however, forward to Buyer copies of any and all notices and other written communications received by it that are issued by or on behalf of the issuer of any Eligible Interest or its investment manager or advisor. In addition, in recognition of the fact that this Transaction effectively results in Buyer receiving the economic benefits and having the economic burdens of a leveraged investment in the Eligible Interests included in the Reference Basket from time to time, Seller confirms and agrees that, as long as no Buyer Event has occurred, it will (i) to the extent Seller considers the exercise of any voting, consent or similar rights with respect to such Eligible Interests or any claim, action or proceeding against the issuer of any Eligible Interest or its investment manager or advisor, consult with Buyer regarding such exercise, and as long as Buyer funds in advance the costs and assumes any liabilities associated therewith to the reasonable satisfaction of Seller, will generally follow Buyer's requests in this regard (including by taking such measures, including litigation, as may be reasonably requested by or on behalf of Buyer to recover from any third party any losses suffered by Buyer (or by Seller or any of its Affiliates as holder of any Eligible Interest included in the Reference Basket) as a result of any action or inaction of such third party), in each case unless Seller, in its reasonable discretion, determines that doing so could be materially adverse to the interests or position of Seller or any of its Affiliates, whether in connection with this Transaction or otherwise, and (ii) if requested to do so by Buyer, make the issuers of such Eligible Interests aware of Buyer's indirect economic interest in such Eligible Interests (including by identifying Buyer as an interested party on any subscription or similar forms) and facilitate direct contacts between Buyer and the issuers of such Eligible Interests.

For purposes of this Confirmation, a "**Buyer Event**" shall be deemed to have occurred if (i) an Event of Default of a type specified in Section 5(a)(i) through (v) of the Agreement has occurred with respect to Buyer, (ii) an Event of Default of a type specified in Section 5(a)(vii) or (viii) of the Agreement has occurred with respect to Buyer, (iii) a Termination Event has occurred with respect to which Buyer is an Affected Party, (iv) an event listed under "Seller Early Termination" below has occurred, or (v) in connection with any adjustment of a type described under "Seller Adjustments" below, Buyer and its designee fail, within five Business Days following a request therefor by Seller, to give irrevocable instructions to Seller for Eligible Interests to be added to or removed from the Reference Basket, or any such instructions given by or on behalf of Buyer to Seller (x) are inconsistent with the Investment Guidelines or other applicable requirements set forth under "Seller Adjustments" or (y) would not remedy the relevant issue(s) underlying such adjustment, as determined by Calculation Agent.

**Custodians:**            Citco Global Custody NV and HSBC Institutional Trust Services (Ireland) Limited.

**Eligible Interests:**    Interests in Hedge Funds (as defined in the Investment Guidelines) that meet the eligibility criteria set forth in the Investment Guidelines, cash, and marketable securities (provided, in the case of marketable securities only, that such securities are approved by Seller in its sole and absolute discretion); provided that, where the context requires, "Eligible Interests" shall be deemed to include any interests in Hedge Funds included in

- 3 -

the Reference Basket that, at the time they were included in the Reference Basket, met the eligibility criteria set forth in the Investment Guidelines but that no longer meet such criteria.

**Derivative Transaction:**

Any derivative transaction entered into by Seller, in its sole and absolute discretion, at the request of Buyer or its designee in connection with this Transaction.

The parties agree that upon the termination of this Transaction, Seller shall close out any open Derivative Transactions at then prevailing market prices. The absolute value of any losses or gains (expressed in USD) realized by Buyer or its designee under any Derivative Transaction, as determined by Calculation Agent, shall be added to (in the case of losses) or subtracted from (in the case of gains) the Strike Price upon the settlement of any cash flow pursuant to such Derivative Transaction, whether during the term of such Derivative Transaction or upon its termination. Any such realized losses added to the Strike Price shall be Strike Additions and any such realized gains subtracted from the Strike Price shall be Strike Reductions.

The parties agree that, except as expressly provided under "Strike Price" below, unrealized losses and unrealized gains under any Derivative Transaction shall not be taken into account when Calculation Agent makes any calculations under this Confirmation.

**Investment Guidelines:**

The Investment Guidelines, dated as of the Trade Date, set forth in Appendix B to this Confirmation, as such guidelines may be amended by the parties from time to time.

**Initial Option Premium:**

On or prior to the Effective Date, Buyer shall pay to Seller a premium in cash or by transfer of other Eligible Interests (the premium so received by Seller, the "**Initial Option Premium**"). If any Eligible Interests are to be transferred in respect of the Initial Option Premium, the terms of such transfer shall be subject to the Premium Payment Agreement, dated as of the date hereof, by and among Buyer, Seller and any designated affiliate of Seller. The value of any Initial Option Premium paid by transfer of an Eligible Interest shall be determined by Calculation Agent as described under "Net Asset Value Determination" below.

**Additional Option Premium:**

Buyer shall have the right, by giving at least two Business Days' prior notice to Seller, to pay further amounts ("**Additional Option Premium**") to Seller on any Business Day prior to the Expiration Date. Each payment of Additional Option Premium received by Seller shall have a value, as determined by Calculation Agent, at least equal to USD 2 million. Additional Option Premium shall be paid in cash or by transfer of other Eligible Interests. The value of any Additional Option Premium paid by transfer of an Eligible Interest shall be determined by Calculation Agent as described under "Net Asset Value Determination" below.

Upon Seller's receipt of cash or transfer or similar orders (in the case of other Eligible Interests) in respect of a payment of Additional Option Premium, the Notional Amount will be increased by an amount equal to the aggregate Net Asset Value of such Eligible Interests.

**Net Asset Value Determination:**

The net asset value of any particular Eligible Interest (the "**Net Asset Value**") shall be determined by Calculation Agent in good faith and in a commercially reasonable manner. In the case of an interest in a Hedge Fund, Calculation Agent may (but shall not be obligated to) make such determination by reference to the relevant net asset valuation report provided by such Hedge Fund (or its manager or administrator).

Notwithstanding anything to the contrary herein, if
   i.   Seller, any of its Affiliates, or the relevant Custodian is notified at any time by or on behalf of any Hedge Fund included in the Reference Basket (or by the administrator or custodian for any such Hedge Fund) that Seller, such Affiliate,

or such Custodian may not subscribe for or may no longer hold an interest in such Hedge Fund,

    ii.   an Eligible Interest included in the Reference Basket is not Received within 60 days of the date the purchase, subscription, transfer, or similar order for such Eligible Interest was first submitted to the issuer thereof (or its administrator or custodian) or other relevant person, or

    iii.  with respect to any Eligible Interest included in the Reference Basket, the relevant Custodian employs a sub-custodian that is not acceptable to Seller in its reasonable discretion and ten Business Days have expired after written notice thereof has been given by Seller to Buyer and such Custodian,

then, in each such case, such Eligible Interest will have attributed to it a Net Asset Value of zero for purposes of determining the Notional Amount, until such time (if any) as such condition ceases to exist (in the case of clause i or iii above) or such Eligible Interest is Received (in the case of clause ii above). For the avoidance of doubt, the parties acknowledge and agree that the Strike Price shall not be reduced in connection with a reduction in the attributed value of an Eligible Interest to zero pursuant to the immediately preceding sentence (except to the extent that a cash payment in USD in respect of such Eligible Interest has been received by Seller from Buyer or another person or entity required to make such a payment).

For purposes of the foregoing, "**Received**" means,

    i.   with respect to any Eligible Interest that is a Hedge Fund, receipt by Seller, any of its Affiliates, or the relevant Custodian for the benefit of Seller from such Eligible Interest (or its administrator or custodian) of an acknowledgement that the interest of Seller or its nominee in such Hedge Fund has been recorded in the books and records of such issuer (or administrator or custodian), and

    ii.  with respect to any other Eligible Interest, such other manifestation of receipt as may be deemed satisfactory by Seller.

| | |
|---|---|
| **Initial Notional Amount:** | The aggregate Net Asset Value of the Eligible Interests included in the Reference Basket on the Effective Date. |
| **Notional Amount:** | At any time, the aggregate Net Asset Value of the Eligible Interests included in the Reference Basket, as determined by Calculation Agent. |
| **Strike Price:** | On the Effective Date, the amount notified by Seller to Buyer in writing. On each day after the Effective Date, the amount determined in accordance with this Confirmation. |

On each day during the term of this Transaction, the Strike Price will accrue interest in an amount equal to the applicable Daily Accretion Amount. On the first Business Day of each month, the Strike Price will be increased by the aggregate of the Daily Accretion Amounts accrued for each day of the month immediately preceding such day.

In the case of a Strike Addition or Strike Reduction that is effective on any day other than the first Business Day of a month, the Strike Price will be increased or decreased, as the case may be, by an amount (the "**LIBOR Breakage Amount**") representing LIBOR breakage adjustments (determined by Calculation Agent in accordance with normal industry standards) for the period from and including the date of such Strike Addition or Strike Reduction, to but excluding the earlier of (i) the first Business Day of the next following month and (ii) the Initial Payment Determination Date (in the case of Cash Settlement) or the Expiration Date (in the case of Physical Settlement). The absolute value of the LIBOR Breakage Amount will be added to (or, if the LIBOR Breakage Amount is negative, subtracted from) the Strike Price on the first Business Day of the next following month.

Notwithstanding the foregoing, for purposes of determining

    i.   the Trigger on any day,

- 5 -

     ii.   whether the Strike Price exceeds, or any Strike Addition would cause the Strike Price to exceed, the Maximum Strike Price on any day,

     iii.  the Strike Price to be reduced in connection with a Cash Settlement, or

     iv.  the amount payable by Buyer to Seller in cash in connection with a Physical Settlement,

the Strike Price for such day shall include (x) the aggregate of any Daily Accretion Amounts accrued up to and including such day and not yet included in the Strike Price , and (y) the aggregate of any LIBOR Breakage Amounts accrued up to and including such day and not yet included in the Strike Price, and (z) with respect to (i) and (ii) only, the aggregate amount of any unrealized losses (expressed in USD and as a positive amount) on such day under Derivative Transactions, all as determined by Calculation Agent.

**Minimum Strike Price:** USD 1.0 billion.  Seller shall promptly notify Buyer if the Strike Price falls below the Minimum Strike Price.

**Maximum Strike Price:** USD 2.0 billion.

**Daily Accretion Amount:** For any day from but excluding the Effective Date to and including the Initial Payment Determination Date (in the case of Cash Settlement) or the Expiration Date (in the case of Physical Settlement), the sum of

     i.   the product of
         a.  the Strike Price on the immediately preceding day, and
         b.  the quotient of
             1.  the percentage rate equal to the sum of
                 A.  the Accretion Rate on the second to last Business Day of the immediately preceding month, and
                 B.  the Spread, and
             2.  360, and

     ii.  if the Strike Price on the immediately preceding day is less than the Minimum Strike Price, the quotient of
         a.  the product of
             1.  the absolute value of the difference between the Strike Price on the immediately preceding day and the Minimum Strike Price, and
             2.  the Spread, and
         b.  360.

**Accretion Rate:** One-month USD-LIBOR-BBA.

**Spread:** 95 basis points per annum.

**Strike Additions:** So long as the Trigger does not exceed the Base Trigger, Buyer or its designee shall have the right to request at any time (except during the 30 Business Days immediately preceding the Expiration Date) to add to the Eligible Interests included in the Reference Basket by increasing the Notional Amount and the Strike Price by an equal amount (each such increase, a "**Strike Addition**"); provided that no Strike Addition may cause

     i.   the Trigger to exceed the Base Trigger,

     ii.  the Reference Basket to (a) include a Hedge Fund that does not satisfy the eligibility criteria set forth in section 1.1 of the Investment Guidelines or (b) violate section 3.1 or 5.1 of the Investment Guidelines,

     iii.  the Strike Price to exceed the Maximum Strike Price, or

     iv.  the Volatility of the Reference Basket to exceed 10%.

For purposes of this Transaction, "**Volatility**" shall be the greater of

     i.   annualized 12-week volatility with weekly observations, and

     ii.  annualized 12-month volatility with monthly observations,

- 6 -

as determined by Calculation Agent in accordance with the Investment Guidelines.

Each Strike Addition involving the purchase of, or subscription for, Eligible Interests will be carried out, to the extent practicable, in accordance with instructions given by or on behalf of Buyer as to the Eligible Interests to be added, and shall be effective on the date on which Seller or its relevant Affiliate remits funds in connection with its related purchase of, or subscription for, Eligible Interests.

Notwithstanding anything to the contrary herein, the actual amount of any Strike Addition involving the purchase, subscription, or transfer of Eligible Interests shall be the subscription, purchase, or transfer price (as applicable), together with any Costs incurred by (or charged to or against) Seller or its Affiliates in effecting (or causing to be effected) such actions.

For purposes of this Transaction, "**Costs**" shall be all of the following, as determined by Calculation Agent: subject to the immediately following sentence, all fees, costs, expenses, losses, liabilities, or taxes paid, incurred or otherwise borne by (or charged to or against) Seller or its Affiliates in connection with or related to Seller's or its Affiliates' purchase of, subscription for, holding of, or sale, redemption or transfer of, any Eligible Interests included, or requested by or on behalf of Buyer to be included, in the Reference Basket. Costs shall (i),include, without limitation, any and all fees, costs, expenses, losses, liabilities, or taxes for which Seller or its Affiliates may be liable pursuant to or in connection with indemnification or other provisions included in the subscription documentation for any such Eligible Interest but (ii) exclude any and all (a) fees of the Custodians and (b) fees, costs, expenses, losses, liabilities, or taxes that would not arise if Buyer were to purchase, subscribe of, hold, sell, redeem or transfer, as applicable, Eligible Interests itself, either directly or through a custodian. For the avoidance of doubt, Costs shall not include any taxes or duties imposed on, or measured by the net income of Seller or any of its Affiliates, or comparable franchise taxes in lieu of income taxes.

In connection and concurrently with any Strike Addition satisfying the requirements set forth above, Buyer or its designee may request that a payment equal to the amount of such Strike Addition be transferred to an account of Buyer maintained by its administrator, in which case
  i.   the amount of such Strike Addition shall be equal to the amount of such payment, and
  ii.  such Strike Addition shall be effective on the date Seller makes such payment.
Any such request must be in writing, in form and substance acceptable to Seller, and signed by or on behalf of Buyer or its designee, Buyer and its administrator.

**Strike Reductions:**  Buyer or its designee shall have the right to request Seller at any time (except (i) during the 30 Business Days immediately preceding the Expiration Date or (ii) before the purchases of, or subscriptions for, the relevant Eligible Interests have settled) to remove Eligible Interests included in the Reference Basket by reducing the Notional Amount and the Strike Price by an equal amount (such decrease, a "**Strike Reduction**"); provided that no such Strike Reduction may cause
  i.   the Reference Basket to violate section 3.1 or 5.1 of the Investment Guidelines,
  ii.  the Volatility of the Reference Basket to exceed 10%, or
  iii. the aggregate Net Asset Value of the Eligible Interests remaining in the Reference Basket following such Strike Reduction to be less than the product of (a) 2.0, (b) the Minimum Strike Price, (c) the Spread and (d) a quotient where (1) the number of days from and including the date of such Strike Reduction to but excluding the next available Expiration Date (assuming for this purpose that notice in respect of a Buyer Early Termination is given concurrently with such Strike Reduction), unless an amount equal to the product of the items specified in the aforementioned clauses (b), (c) and (d), in immediately available funds in USD, is paid by or on behalf of Buyer to Seller concurrently with such Strike

Reduction (in which case such amount is credited to the Strike Price).

Buyer and Seller agree that a Strike Reduction shall also occur, without any request by or on behalf of Buyer, if there is a redemption (in whole or in part) of an Eligible Interest that is imposed by or on behalf of the issuer of such Eligible Interest.

Notwithstanding anything to the contrary herein:

i.  the actual amount of any Strike Reduction involving the sale, redemption, or transfer of Eligible Interests shall be the amount Seller or its relevant Affiliate actually receives upon such sale, redemption, or transfer, less any Costs incurred by (or charged to or against) Seller or its Affiliates in effecting (or causing to be effected) such sale, redemption, or transfer, and

ii. if Seller or its relevant Affiliate receives sale, redemption, or transfer proceeds in a form other than cash, Seller shall ascribe a value to such proceeds, such value to be determined in its sole and absolute discretion, and the Notional Amount shall be adjusted accordingly. If, following receipt of such proceeds, (a) the Trigger is less than or equal to the Base Trigger, Seller shall deliver to Buyer such proceeds and (b) if the Trigger is greater than the Base Trigger, Seller shall liquidate such proceeds in a commercially reasonable manner and apply the liquidation proceeds to reduce the Strike Price upon receipt thereof, it being understood and agreed that Seller is not acting as a fiduciary to Buyer in connection with any such liquidation. The parties agree that if clause (b) above is applicable to any sale, redemption, or transfer proceeds, at any time prior to Seller's liquidation of such proceeds Buyer may purchase, or cause a third party to purchase, such proceeds for a price which, after the application of such purchase price to a reduction of the Strike Price and the removal of such proceeds from the Reference Basket, would not result in the Trigger being greater than the Base Trigger.

Each Strike Reduction involving the sale, redemption, or transfer of Eligible Interests will be carried out, to the extent practicable, in accordance with instructions given by or on behalf of Buyer as to the Eligible Interests to be removed, and shall be effective on the date on which Seller or its relevant Affiliate receives funds in connection with such sale, redemption, or transfer. Notwithstanding anything herein to the contrary, Buyer or its designee shall give Seller at least 10 days' prior notice of any such instruction involving the transfer of any interest in a Hedge Fund. Seller agrees to take such measures as may be reasonably requested by or on behalf of Buyer to recover from the relevant party the full amount owed to Seller in connection with the sale, redemption, or transfer of any Eligible Interest (taking into account, among other things, the provisions of any side letter or other bilateral arrangement relating to such Eligible Interest) so long as Buyer funds in advance the costs and assumes any liabilities associated therewith. The parties agree that Seller cannot guarantee the performance by the relevant party of any side letter or other bilateral arrangement relating to an Eligible Interest, and Buyer agrees not to hold Seller responsible for any failure by the relevant party to adhere to the terms thereof.

In addition, subject to the conditions for a Strike Reduction specified above, Buyer or its designee may request a Strike Reduction upon paying Additional Option Premium in cash, in which case

i.  the amount of such Strike Reduction shall be equal to the amount of such payment, and

ii. such Strike Reduction shall be effective on the date Seller receives such payment.

**Seller Adjustments:**

i.  If at any time Calculation Agent determines that the Trigger exceeds the Maximum Trigger or the Strike Price exceeds the Maximum Strike Price, Seller shall have the right (but not the obligation), in lieu of or in addition to Seller's other rights and remedies hereunder, to cause a Strike Reduction and adjust the Strike Price and the Notional Amount such that, after such adjustments, the

- 8 -

    Trigger is less than or equal to the Base Trigger and the Strike Price is less than or equal to 97% of the Maximum Strike Price, all as determined by Calculation Agent.

ii.    If at any time Calculation Agent determines that the Volatility of the Reference Basket exceeds 10%, Seller shall have the right (but not the obligation), in lieu of or in addition to Seller's other rights and remedies hereunder, to adjust the Reference Basket such that the Volatility of the adjusted Reference Basket is equal to or less than 10%.

iii.    If at any time Calculation Agent determines that (<u>a</u>) an interest in a Hedge Fund does not or no longer satisfies the eligibility criteria set forth in section 1.1 of the Investment Guidelines or (<u>b</u>) there has been a breach of section 3.1 or 5.1 of the Investment Guidelines, then, in each such case, Seller shall have the right (but not the obligation), in lieu of or in addition to Seller's other rights and remedies hereunder, to adjust the Reference Basket in such a manner as it in its sole discretion deems appropriate to bring the Reference Basket into compliance with the Investment Guidelines.

Seller may use any or all of the adjustment mechanisms described above. The provisions in the third paragraph under "Strike Reductions" above shall apply to any Strike Reduction caused by Seller pursuant to paragraph i above. Notwithstanding anything herein to the contrary, any Strike Reduction or other adjustment caused or carried out pursuant to the foregoing provisions of this paragraph on "Seller Adjustments" will be carried out (<u>x</u>) if Buyer has submitted to Seller, within five Business Days after receiving a request therefor, a written proposal to cure the issue(s) in question by providing for the sale, redemption, or transfer of one or more Eligible Interests (a "**Cure Plan**"), Seller has approved such proposal, and such approval remains effective pursuant to the Cure Plan Effectiveness Condition, then in accordance with such Cure Plan or (<u>y</u>) otherwise, after consultation, if practicable, with Buyer or its designee as to any Eligible Interests to be sold, redeemed, or transferred; <u>provided</u> that Seller shall not

    i.    be required to delay the submission of any sale, redemption, or transfer order for purposes of any such consultation if such delay would result in a sale, redemption, or transfer deadline for an Eligible Interest to be missed, unless such delay is contemplated by a Cure Plan that has been approved by Seller, for as long as such approval remains effective pursuant to the Cure Plan Effectiveness Condition, or

    ii.    be liable to Buyer for its selection of any particular Eligible Interests to be sold, redeemed, or transferred if (<u>a</u>) Buyer fails to submit a Cure Plan to Seller within the five-Business Day period specified above, (<u>b</u>) Seller has not approved a Cure Plan submitted by Buyer within the five-Business Day period specified above, taking into account the understanding and agreement contained in the immediately following sentence, or (<u>c</u>) Seller determines not to delay the submission of any sale, redemption, or transfer order pursuant to clause i above.

It is understood and agreed that: (<u>i</u>) Seller (<u>a</u>) shall consider in good faith, taking into account all relevant factors (including without limitation any adverse developments or information with respect to any Hedge Fund, its Fund Manager (as defined in the Investment Guidelines), its administrator or its trading practices, concentrations within the Reference Basket, the diversification and liquidity of the Reference Basket, the performance of any Hedge Fund, and the strategy followed by any Hedge Fund), any Cure Plan submitted by Buyer to Seller as contemplated by this paragraph, but (<u>b</u>) may refuse its approval in respect of any such Cure Plan in its reasonable discretion (including without limitation on the basis of a determination that (<u>1</u>) the implementation of such Cure Plan would not remedy the issue(s) in question or (<u>2</u>) the time period within which the issue(s) in question would be expected to be remedied pursuant to such Cure Plan is unnecessarily long in light of the liquidity profile of the Reference Basket, the existence of any secondary market for Eligible Interests included in the Reference Basket, and other relevant factors), it being understood and agreed that, without

- 9 -

prejudice to the foregoing, under no circumstances shall such time period exceed 90 days; and (ii) any approval of a Cure Plan by Seller will be premised and therefore contingent on a number of assumptions regarding the liquidity of the Eligible Interests proposed to be sold, redeemed, or transferred or other relevant factors, and if and when any such assumption turns out not to be or ceases to be true, such Cure Plan may need to be amended promptly in order for such approval to remain effective (the "**Cure Plan Effectiveness Condition**"). In the event that Seller refuses its approval in respect of any Cure Plan pursuant to the immediately preceding sentence, it shall set out its reasons therefor in a written communication to Buyer.

Buyer shall have a Right of First Refusal with respect to any sale, redemption, or transfer of any Eligible Interest proposed to be effected pursuant to this paragraph on "Seller Adjustments".

For the avoidance of doubt, the parties acknowledge that no cash payment is required to be made by Seller to Buyer in connection with a Seller Adjustment, but all cash proceeds from such Seller Adjustment shall be retained by Seller and applied to the Strike Price.

**Right of First Refusal:**

Where this Confirmation specifies that a Right of First Refusal applies with respect to the sale, redemption, transfer, or other liquidation of any Eligible Interest, Seller shall, prior to agreeing or effecting any sale, redemption, transfer, or other liquidation with the issuer of such Eligible Interest or any third party, notify Buyer of the then current Net Asset Value of such Eligible Interest and request that Buyer make an irrevocable, unconditional and binding offer to purchase the relevant quantity of such Eligible Interest, at a price equal to such Net Asset Value; provided that nothing herein shall in any way restrict Seller in concurrently taking preliminary steps relating to a sale, redemption, transfer, or other liquidation involving the issuer of such Eligible Interest or any third party. If Buyer in its sole and absolute discretion (i) submits a written offer satisfying the requirements set forth in the immediately preceding sentence and (ii) transfers, or causes to be transferred, an amount equal to the then current Net Asset Value of the Eligible Interest in question to the account of Seller specified in Section 3 below, in each case within five Business Days of Seller's notification (or such shorter period notified by Seller to ensure that the next sale, redemption, or transfer deadline for such Eligible Interest is not missed), Seller shall accept such offer and use reasonable efforts to transfer (or cause to be transferred) to Buyer or its designee such Eligible Interest, with the provisions of clause ii under "Physical Settlement" below applying, *mutatis mutandis*, to any such transfer. If either or both of the conditions contained in the immediately preceding sentence are not satisfied, Seller shall be free to proceed with any other sale, redemption, transfer, or other liquidation of the Eligible Interest in question.

**Trigger:**

On any day, an amount determined by Calculation Agent pursuant to the following formula:

Trigger = Notional Amount on such day/(Notional Amount on such day – Strike Price on such day)

For the purpose of calculating the Trigger,
   i. interests in Hedge Funds included in the Reference Basket that, at the time they were included in the Reference Basket, met the eligibility criteria set forth in the Investment Guidelines but that no longer meet such criteria, will be attributed a value of zero and will be excluded from the calculation of the Notional Amount, and
   ii. Seller in its role as Calculation Agent may exclude from calculation of the Notional Amount those Eligible Interests that are interests in Hedge Funds with respect to which
      a. the value or liquidity have become materially impaired,
      b. the administrator does not satisfactorily discharge its responsibilities or is otherwise not (or no longer) acceptable to Seller, or

      c.   Seller becomes aware of any other adverse developments or information with respect to the Hedge Fund, its investment adviser or investment manager, or its administrator,

in each case as determined by Seller in its reasonable discretion.

| | |
|---|---|
| **Base Trigger:** | The lesser of<br>i.   4.00, and<br>ii.  1/Haircut, as determined by Calculation Agent on any day. |
| **Maximum Trigger:** | The lesser of<br>i.   4.75 and<br>ii.  1/Haircut, as determined by Calculation Agent on any day. |
| **Haircut:** | For any day, the decimal amount corresponding to the "Total Reference Basket Haircut Percentage" determined in accordance with the Investment Guidelines as of such day. |

**Procedure for Exercise:**

| | |
|---|---|
| **Expiration Time:** | 12:00 p.m. (London time). |
| **Expiration Date:** | The earliest to occur of the Scheduled Termination Date, the Optional Termination Date or the Early Termination Date. |
| **Scheduled Termination Date:** | The fifth anniversary of the Effective Date. |
| **Buyer Early Termination:** | Buyer or its designee shall have the right to terminate this Transaction on any Business Day in whole, but not in part, by giving at least 90 days' prior notice to Seller |
| **Seller Early Termination:** | Seller shall have the right to terminate this Transaction on any Business Day, by giving at least 90 days' prior notice to Buyer and its designee, if any. |

In addition and notwithstanding anything to the contrary herein, Seller shall have the right (but not the obligation), in lieu of or in addition to its other rights and remedies hereunder, to terminate this Transaction by giving notice to Buyer and its designee, if any, designating the date of termination, if:

   i.   any of the following events occurs with respect to Buyer or its investment manager:

      a.   it is dissolved,

      b.   becomes insolvent or unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due,

      c.   it makes a general assignment, arrangement or composition with or for the benefit of its creditors,

      d.   it institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition

         1.   results in judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation, or

         2.   is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof,

      e.   it has a resolution passed for its winding-up, official management or

liquidation,

    f.    it seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets,

    g.    it has a secured party or other creditor take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 30 days thereafter,

    h.    it causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses a. to g. (inclusive), or

    i.    it takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts,

ii.    the investment adviser or investment manager of Buyer is removed or resigns and is not immediately replaced by a suitable replacement investment manager acceptable to Seller within five Business Days from the date of such removal or resignation, as the case may be,

iii.    as a result of a change in law or regulation in any applicable jurisdiction (including without limitation any change in the official interpretation or administration of any such law or regulation), the continued performance of this Transaction by Seller is likely, in Seller's reasonable judgment, to become materially more burdensome to Seller and at least three months have expired since the giving of written notice thereof by Seller to Buyer,

iv.    for any reason (including without limitation by reason of a change in law or regulation in any applicable jurisdiction, including without limitation any change in the official interpretation or administration of any such law or regulation), either

    a.    Seller is unable to continue to fully hedge its exposure in connection with this Transaction (other than solely as a result of practices or policies internal to Seller), or

    b.    the cost to Seller and its Affiliates of maintaining any such hedge increases, or is reasonably likely to increase, materially, and at least three months have expired since the giving of written notice thereof by Seller to Buyer,

v.    at any time

    a.    section 3.1 or 5.1 of the Investment Guidelines is breached,

    b.    the Strike Price exceeds the Maximum Strike Price, or

    c.    the Trigger exceeds the Maximum Trigger,

and, in each such case, (x) the five-Business Day period available to Buyer for submitting a Cure Plan to Seller to remedy the issue(s) in question, as contemplated under "Seller Adjustments" above, has expired without such a Cure Plan having been submitted by Buyer and approved by Seller (provided that Seller shall not be required to delay the submission of any redemption or transfer order during such period if such delay would result in a redemption or transfer deadline for an Eligible Interest to be missed), (y) Seller's approval with respect to any such Cure Plan ceases to be effective pursuant to the Cure Plan Effectiveness Condition, or (z) any such Cure Plan is not implemented in all respects in accordance with the terms thereof,

vi.    this Transaction at any time is in violation of the terms described in, or is not permitted by, any offering document or constitutive document of Buyer (as supplemented, amended, or updated by Buyer from time to time),

- 12 -

vii. at any time
    a.    there is a breach by Buyer of any of the provisions of its offering documents or constitutive documents that would reasonably be expected to have a material adverse effect on Seller, or
    b.    any of the constitutive documents of Buyer is amended or supplemented in a manner that materially adversely affects, or could reasonably be expected to materially adversely affect, Seller's rights in connection with this Transaction,

viii. the Volatility of the Reference Basket exceeds 10% and (x) the five-Business Day period available to Buyer for submitting a Cure Plan to Seller to reduce the Volatility of the Reference Basket to 10% or less, as contemplated under "Seller Adjustments" above, has expired without such a Cure Plan having been submitted by Buyer and approved by Seller (provided that Seller shall not be required to delay the submission of any sale, redemption or transfer order during such period if such delay would result in a sale, redemption or transfer deadline for an Eligible Interest to be missed), (y) Seller's approval with respect to any such Cure Plan ceases to be effective pursuant to the Cure Plan Effectiveness Condition, or (z) any such Cure Plan is not implemented in all respects in accordance with the terms thereof,

ix. any of the trading activities undertaken by the investment adviser or investment manager of Buyer, or by Buyer, are deemed to be illegal by a court or governmental authority in any jurisdiction,

x. at any time, any judicial, regulatory or administrative proceeding, or any investigation or inquiry, is announced or commenced by a governmental or regulatory entity or authority against Buyer, the investment adviser or investment manager of Buyer, or any of the key personnel of either of the foregoing, or

xi. at any time, any claim, demand or proceeding is, or is threatened to be, made or brought against Buyer, the investment adviser or investment manager of Buyer, or any of the key personnel of Buyer or the investment adviser or investment manager of Buyer, in each case which alleges any impropriety, illegality, negligence, breach of contract or fiduciary duty or other wrongdoing related to the performance of services by such person.

For the avoidance of doubt, no early termination fee shall be payable by Seller in respect of a Seller Early Termination pursuant to the foregoing provisions.

**Optional Termination Date:**    The date of a Buyer Early Termination or Seller Early Termination.

**Settlement Terms:**

**Settlement:**    Buyer or its designee shall have the right to elect either Cash Settlement or Physical Settlement by providing notice of such election to Seller at least 60 days prior to the Scheduled Termination Date or, in the case of termination of this Transaction prior to the Scheduled Termination Date, within one Business Day following the designation of the Optional Termination Date or Early Termination Date, as applicable, by the party entitled to make such designation If Buyer and its designee fail to elect either Cash Settlement or Physical Settlement within the aforementioned 60-day or one-Business Day period, then Cash Settlement shall apply.

Notwithstanding the provisions of Section 6(d) or (e) of the Agreement, the only payments or deliveries required to be made in connection with a termination of this Transaction (whether as of the Scheduled Termination Date, any Optional Termination Date or any Early Termination Date) shall be the payments or deliveries calculated or

- 13 -

otherwise determined in accordance with the provisions under the heading "Settlement Terms". For the avoidance of doubt, no payment shall be payable by either party pursuant to Section 6(d) or (e) of the Agreement following the occurrence of any Optional Termination Date or Early Termination Date, whether based on a Buyer Event or otherwise.

The provisions under the heading "Settlement Terms" shall survive the Expiration Date.

**Cash Settlement:**   If Cash Settlement is applicable, upon termination of this Transaction in connection with the occurrence of the Expiration Date, Seller shall sell (or cause to be sold), redeem (or cause to be redeemed), transfer (or cause to be transferred), or otherwise liquidate (or cause to be liquidated) the Eligible Interests then held by it or its Affiliates in connection with this Transaction and apply (or cause to be applied) any cash sale, redemption, transfer, or other liquidation proceeds actually received by Seller or its relevant Affiliate to reduce the Strike Price on the day of receipt. Seller agrees to take such measures as may be reasonably requested by or on behalf of Buyer to recover from the relevant party the full amount owed to Seller in connection with the liquidation of any Eligible Interest (taking into account, among other things, the provisions of any side letter or other bilateral arrangement relating to such Eligible Interest) so long as Buyer funds in advance the costs and assumes any liabilities associated therewith. The parties agree that Seller cannot guarantee the performance by the relevant party of any side letter or other bilateral arrangement relating to an Eligible Interest, and Buyer agrees not to hold Seller responsible for any failure by the relevant party to adhere to the terms thereof.

Once the Strike Price is reduced to or below zero in accordance with the first sentence of the immediately preceding paragraph (the date of such reduction to or below zero, if any, the "**Initial Payment Determination Date**"), on the second Business Day following each receipt by Seller or its Affiliate of any cash sale, redemption, transfer, or other liquidation proceeds in respect of such Eligible Interests ("**Additional Proceeds**") that are not required to reduce the Strike Price to or below zero, Seller shall pay (or cause to be paid) to Buyer the amount of such Additional Proceeds, less any Costs not previously taken into account; provided that no Additional Proceeds received after the date that is on the second anniversary of the Expiration Date shall be required to be paid by Seller or its Affiliates to Buyer. Notwithstanding the foregoing, on the second anniversary of the Expiration Date Seller or its Affiliate shall begin to use reasonable efforts to transfer to Buyer any Eligible Interests then held by it in connection with this Transaction with respect to which Additional Proceeds may still be received thereafter, it being agreed that if the Initial Payment Determination Date has not occurred by such second anniversary, no such transfer needs to be made.

Buyer shall have a Right of First Refusal with respect to any sale, redemption, transfer, or other liquidation of any Eligible Interest proposed to be effected pursuant to this paragraph on "Cash Settlement".

**Physical Settlement:**   If Physical Settlement is applicable, then

  i.   on the Expiration Date, Buyer shall pay to Seller an amount in cash equal to the Strike Price as of such date, together with any Costs not previously taken into account, and

  ii.   upon receipt of such cash amount, Seller shall use reasonable efforts to transfer (or cause to be transferred) to Buyer or its designee each Eligible Interest held by Seller or its Affiliates in connection with this Transaction as of the Expiration Date. In the event that any such Eligible Interest is not transferred to Buyer or its designee in accordance with the immediately preceding sentence within 90 days following the Expiration Date, Seller shall sell (or cause to be sold), redeem (or cause to be redeemed), transfer (or cause to be transferred), or otherwise liquidate (or cause to be liquidated) such Eligible Interest and pay (or cause to be paid) to Buyer, on the second Business Day after each receipt of cash sale, redemption, transfer, or liquidation proceeds in respect thereof, an amount equal

- 14 -

to such proceeds. The second and third sentences of the first paragraph under "Cash Settlement" above shall apply to any such liquidation.

Notwithstanding any election by Buyer to the contrary, if Buyer fails to pay to Seller on the Expiration Date an amount in cash equal to the Strike Price (or, in the case of a combination of Cash Settlement and Physical Settlement, the relevant portion of the Strike Price) as of such date, Cash Settlement shall apply.

Claw-Back Right:    If at any time during or after the settlement of this Transaction, (i) Seller or any of its Affiliates is obligated to return to the issuer of any Eligible Interest any amount previously received by Seller or such Affiliate and remitted to Buyer in respect of the sale, redemption, transfer, or other liquidation of such Eligible Interest or (ii) it is determined that Buyer received any excess amount in connection with Cash Settlement or paid an insufficient amount in connection with Physical Settlement, then, in each such case Buyer shall immediately on demand pay a corresponding amount to Seller. In addition, to the extent that a payment in accordance with the immediately preceding sentence has not been made, Seller may offset any payment obligation of Buyer pursuant to such sentence against any further payment obligation Seller may have to Buyer under or in connection with the Agreement or any Transaction.

3.    Account Details:

Payments to Buyer:    To be provided by Buyer before payments are made.

Payments to Seller:    JPMorgan Chase Bank, N.A., New York (          )
Acc Number: 
JPMorgan Chase Bank, N.A. London (          )
Acc Number: 
KBC Investments Limited

4.    Offices:

(a)    Buyer is acting through its [Cayman Islands] Office;

and

(b)    Seller is acting through its Cayman Islands Office.

5.    Additional Representations:

Each party will be deemed to represent to the other party, as follows:

(a)    *No Reliance.* It is acting for its own account, and it has made its own independent decision to enter into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisors as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. It has not received from the other party any assurance or guarantee as to the expected results of this Transaction.

(b)    *Assessment and Understanding.* It is capable of assessing and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions, and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

Comment [FO1]: FAM to confirm whether the reference to Cayman Islands is accurate.

- 15 -

(c) *Status of Parties.* The other party is not acting as a fiduciary for or as an advisor to it in respect of this Transaction, including any Derivative Transactions, and this Transaction does not constitute a joint venture or similar arrangement.

6. <u>Additional Buyer Representations, Warranties and Covenants:</u>

(a) Buyer acknowledges that it has consulted, and is relying solely on, its own advisors with respect to the legal, tax, regulatory, financial reporting, and accounting treatment of this Transaction, and neither Seller nor any Affiliate of Seller (nor anyone acting on their behalf) has provided any representation or advice as to the foregoing to Buyer or any of its Affiliates.

(b) Buyer represents and warrants to Seller that (i) it is able to bear the economic risk related to its investment in the option purchased by it pursuant to this Transaction and can afford a complete loss of such investment, (ii) it has no need for liquidity of such investment, (iii) it has no reason to anticipate any change in financial condition or circumstances that might cause or require it to sell or terminate such option, and (iv) it understands that no market for such option exists or will develop.

(c) Buyer represents and warrants to Seller that it and its Affiliates have complied with all anti-money laundering laws and regulations and similar requirements under all applicable laws. Buyer covenants that it will provide, or procure that any Affiliate of Buyer provides, promptly following a request from Seller or any Affiliate of Seller, any information that Seller or any Affiliate of Seller may from time to time request for the purpose of complying with applicable anti-money laundering laws and regulations and similar requirements.

(d) Buyer represents and warrants to Seller that its investment in the option purchased by it pursuant to this Transaction (taking into account the portfolio comprising the Reference Basket, both before and after giving effect to any change to be made to the Reference Basket on the date that such representation is made), taken together with all other investments of Buyer, is in full compliance with the terms described in, and is permitted by, the offering documents of Buyer (as supplemented, amended or updated by Buyer from time to time), and does not violate any provision of Buyer's constitutive documents or of any agreement to which Buyer is a party.

(e) Buyer agrees that it shall notify Seller promptly upon becoming aware of the occurrence of any event or circumstance that constitutes a basis for a Seller Early Termination or an Event of Default, a Potential Event of Default or a Termination Event by or attributable to Buyer or for which Buyer is the sole Affected Party.

(f) Buyer represents and warrants to Seller that, either directly or through others acting on its behalf, it has received and reviewed, and it understands, the offering, subscription and other relevant documents with respect to each Eligible Interest in the Reference Basket for which such documents are available. Without limiting the generality of the foregoing, Buyer acknowledges that it has read and understands all documents and other material it deems necessary to enter into this Transaction and is fully aware of all material details relating to the Eligible Interests included in the Reference Basket, including, among others, their investment objective and investment process, investment guidelines, risk factors, conflicts of interest, tax considerations, sales restrictions and general information, as more fully described in such materials. Buyer further represents and warrants to Seller that it meets all eligibility and suitability standards imposed by each issuer of Eligible Interests included in the Reference Basket or by applicable law with respect to a direct investment in each such Eligible Interest, can make (and hereby makes) all of the representations or warranties required to be made by any person making such a direct investment, and is capable of making each such direct investment.

(g) Buyer represents and warrants to Seller that it is not an investment company required to be registered under the U.S. Investment Company Act of 1940, as amended (the "**Investment Company Act**"), or a business development company as defined in Section 202(a)(22) of the U.S. Investment Advisers Act of 1940, as amended.

(h)     Buyer represents and warrants to Seller that it is not a defined contribution plan (such as a 401(k) plan).

(i)     Buyer represents and warrants to Seller (which representation and warranty shall be deemed to be repeated on the date on which this Transaction is initially entered into and on each day during this Transaction's existence) that (i) it is not an employee benefit plan (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**")) subject to Title I of ERISA or a plan (as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "**Code**")) subject to Section 4975 of the Code and (ii) none of its assets are or will be deemed to be "plan assets" within the meaning of U.S. Department of Labor Regulation 29 C.F.R. Section 2510.3-101 or otherwise.

(j)     Buyer represents and warrants to Seller (which representation and warranty shall be deemed to be repeated on the date on which this Transaction is initially entered into and on each day during this Transaction's existence) that either (i) it is not a "restricted person" (as defined in paragraph (i)(10) of Rule 2790 of the Conduct Rules of the National Association of Securities Dealers, Inc. (the "**New Issues Rule**")) or (ii) it qualifies for one of the exemptions set forth in paragraph (c) of the New Issues Rule.

(k)     Buyer acknowledges that the offering and sale of the option purchased by it pursuant to this Transaction have not been and will not be registered under the U.S. Securities Act of 1933, as amended.

(l)     Buyer shall (i) retain only duly registered selling agents to market beneficial interests in Buyer to third parties and (ii) obtain assurances from each selling agent to the effect that such selling agent will follow appropriate private placement procedures in marketing such interests.

(m)     Any references to Seller or any of its Affiliates, as well as any description of this Transaction, in any materials pursuant to which Buyer or anybody acting on its behalf has offered or is offering beneficial or other economic interests (of any variety, including through derivatives) in Buyer to third parties (including without limitation any offering memoranda, written presentations or summaries and other documents) shall be subject to the prior approval of Seller, but Seller shall not have any responsibility for such materials.  Buyer agrees that it shall not (i) make any statements regarding Seller or any of its Affiliates not approved in writing by Seller prior to being made (any such approval in no respect to be taken to indicate that Seller accepts any responsibility for any such statement) or (ii) include any information regarding Seller or any of its Affiliates in any report to Buyer's investors or other third parties which has not been approved in writing by Seller (any such approval in no respect to be taken to indicate that Seller accepts any responsibility for any such report).

(n)     Buyer shall not, and shall not permit any of its Affiliates to, engage in any activity in any way related to this Transaction if doing so could reasonably be expected to cause reputational damage to Seller or any of its Affiliates.

(o)     Buyer agrees to provide to Seller, as soon as reasonably practicable following a request by Seller, any Buyer Information reasonably requested by Seller.  "**Buyer Information**" means any information, report, document, or other material of whatever nature with respect to Buyer's business to the extent it relates to, or is required with respect to or in connection with, this Transaction, including without limitation (i) information or reports relating to Buyer's investment portfolio, investment management process, key personnel, redemption and subscription notices, and investor profile and (ii) information regarding any actual or possible impairment of the value or liquidity of any Eligible Interest included in the Reference Basket.  In the event of any material change, or the discovery of any material inaccuracy or incompleteness, with respect to any Buyer Information from time to time (including prior to the date hereof) provided by Buyer to Seller, Buyer shall promptly provide an updated, corrected, or completed version of such Buyer Information to Seller.  In addition, Buyer shall forward to Seller copies of any and all notices and other written communications received by it that are issued by or on behalf of the issuer of any Eligible Interest or its investment manager or advisor.

(p)     Buyer (i) understands and agrees that Derivative Transactions are not guaranteed to be successful in reducing or eliminating the risk or risks they are meant to address and (ii) agrees to bear any losses it may incur as a result of or in connection with this Transaction, including any Derivative Transactions, and to hold Seller and its Affiliates harmless from any such losses.

(q)     Buyer acknowledges and agrees that: (i) each Derivative Transaction will be on the terms and subject to the conditions set forth in the documentation provided with respect thereto (the "**Derivative Transaction Documentation**") by or on behalf of Seller to Buyer or its investment manager or advisor, which documentation (A) may take the form of a confirmation, term sheet or other communication (whether in draft or executed form) and (B) absent manifest or proven error, will be binding on Buyer in respect of such terms and conditions, without any separate manifestation of acknowledgment or assent by Buyer; and (ii) any Derivative Transaction Documentation may not reflect customary or arm's length terms for transactions of the same type as the Derivative Transaction in question, in particular where the Derivative Transaction Documentation is in draft form or where the counterparty to the Derivative Transaction is an Affiliate of Seller.  Buyer hereby unconditionally and irrevocably waives any right it might otherwise have to challenge any terms or conditions reflected in the Derivative Transaction Documentation that do not constitute a manifest or proven error.

(r)     Buyer acknowledges and agrees that Seller or any of its Affiliates may act as counterparty to, calculation agent under, or in any other capacity related to, any Derivative Transaction, and in any such role may have interests or take actions that are adverse to the position of Buyer in respect of this Transaction or any Derivative Transaction.  Without limiting the generality of the foregoing, Buyer acknowledges and agrees that Seller or any of its Affiliates, in its role as calculation agent under any Derivative Transaction, (i) may make determinations that involve commercial judgments or entail a degree of subjectivity and (ii) will not be able or required to take into account the position of Buyer in respect of this Transaction or any Derivative Transaction. Buyer hereby unconditionally and irrevocably waives any related conflict of interest that Seller or any of its Affiliates may be subject to as a result of their roles in any Derivative Transaction.

(s)     Buyer acknowledges and agrees that Seller and its Affiliates may (i) deal in any Derivative Transaction or any of the securities, indices or other assets referenced therein or otherwise related thereto (each, a "**Reference Asset**"), (ii) make loans or otherwise extend credit to, and generally engage in any kind of commercial, investment banking or other business with, any entity referenced in any Derivative Transaction (each, a "**Reference Entity**"), any Affiliate of any Reference Entity, or any other person or entity having obligations relating to any Reference Entity, and (iii) generally act in the same manner as if this Transaction and any Derivative Transaction did not exist, regardless of whether any such action might have an adverse effect on the value of any Reference Asset, any Reference Entity or the position of Buyer in respect of this Transaction or any Derivative Transaction.

(t)     Buyer acknowledges and agrees that Seller and its Affiliates may, at the time a Derivative Transaction is included in the Reference Basket or at any time thereafter, be in possession of information regarding a Reference Asset, a Reference Entity or any of its Affiliates that is or may be material in the context of this Transaction or a Derivative Transaction and that may or may not be publicly available to Buyer.  This Confirmation does not create any obligation on the part of Seller or any of its Affiliates to disclose to Buyer any such information, whether or not confidential.

(u)     Buyer acknowledges and agrees that Seller or any of its Affiliates: (i) may, but shall not be under any obligation to, hedge its exposure related to any Derivative Transaction or to own any Reference Obligation in connection with this Transaction or any Derivative Transaction, irrespective of whether the related Derivative Transaction Documentation suggests the entering into of any hedging transaction; and (ii) without limiting the generality of the foregoing, may establish, maintain, modify, terminate or re-establish any hedge position or any methodology for hedging at any time without regard to Buyer.  Buyer represents and warrants to Seller that it is not relying on any representation, warranty or statement by Seller or any of its Affiliates as to whether, at what times, in what manner or by what method Seller or any of its Affiliates may engage in any hedging activities.

(v)    Buyer agrees that, if at any time during the term of this Transaction, either it or any of its Affiliates receives any funds from or on behalf of any Hedge Fund included in the Reference Basket, to the extent that such funds relate to an investment by or on behalf of Seller or any of its Affiliates in such Hedge Fund, Buyer shall promptly turn such funds over to Seller.

Buyer shall be deemed to repeat the representations and warranties applicable to it set forth in the Agreement or this Confirmation on and as of each date on which it (i) pays Additional Option Premium or (ii) requests a Strike Addition or Strike Reduction.

7.    Indemnification:

(a)    Buyer shall indemnify and hold harmless Seller, any Affiliate of Seller, and any agent, officer, director or employee of Seller or any Affiliate of Seller (each, an "**Indemnified Person**"), from and against any and all (i) withholding or other Indemnifiable Taxes imposed with respect to any actual or deemed payment to Seller in respect of the Strike Price (including recovery by Seller out of proceeds from the assets in the Reference Basket or other satisfaction of the Strike Price or any portion thereof, whether upon Cash or Physical Settlement, in connection with an adjustment to the Strike Price, or otherwise) or (ii) direct losses, obligations, damages, actions, claims, penalties, judgments, suits or liabilities (including without limitation all reasonable legal or other costs, charges and expenses paid or incurred in disputing, investigating, defending or settling any of the foregoing, but excluding, for the avoidance of doubt, any reduction in value of any Eligible Interest) (collectively, "**Losses**") that are actually incurred by or made against any Indemnified Person insofar as such Losses arise from or are related to (a) any representation or warranty made or deemed to be made by Buyer pursuant to this Confirmation or the Agreement not being true when made or repeated, (b) any covenant or agreement of Buyer pursuant to this Confirmation or the Agreement being breached, (c) any event or circumstance of a type specified under "Seller Early Termination" above (other than any event or circumstance of a type specified in clause iii. or iv. under such caption), or (d) irrespective of whether indemnification would be available pursuant to the preceding clause (c), any claim, action, suit or proceeding being made or brought by any investor in Buyer at any time against or with respect to Seller or any of its Affiliates and related to this Transaction this Transaction (in each case except to the extent that such Losses result solely from the gross negligence or willful misconduct of such Indemnified Person, as determined by a final judgment of a court of competent jurisdiction). In addition, Buyer shall reimburse each Indemnified Person promptly upon demand for all costs, charges and expenses (including without limitation reasonable counsel fees and disbursements) which any such Indemnified Person pays or incurs in connection with investigating, disputing, defending or settling any such Losses. The indemnity provided in this paragraph on "Indemnification" will be in addition to any liability that Buyer may otherwise have.

In the event that any legal action is brought against an Indemnified Person relating to this Transaction (other than a legal action brought by Buyer or an Affiliate of Buyer or a situation where Buyer could reasonably be considered to have an interest that is adverse to or different from the interests of such Indemnified Person, as determined by Seller), Buyer may, at its expense, but without limiting its obligation to indemnify each Indemnified Person upon the occurrence of a Loss affecting such Indemnified Person, appoint counsel of Buyer's choice reasonably satisfactory to Seller, and such counsel will be permitted by such Indemnified Person to jointly defend such action on such Indemnified Person's behalf with such Indemnified Person's counsel (subject to any applicable rules relating to the conduct of such legal action).

(b)    Neither Seller nor any of its Affiliates shall have any liability or obligation to Buyer or its Affiliates with respect to any losses in respect of any assets included in the Reference Basket due to any action or inaction of any person in connection therewith, any operational error by any person, fraud by the investment adviser or investment manager of Buyer or by any administrator, manager or other representative of any hedge fund or by any other person (other than Seller and its Affiliates), or otherwise. Without limiting the foregoing, neither Seller nor any of its Affiliates will (i) be responsible for the performance of the Reference Basket or any asset included therein or (ii) be required to supervise, monitor or instruct the investment adviser or investment manager of Buyer or any other person in any manner.

- 19 -

(c)    The provisions of this paragraph on "Indemnification" shall survive the termination of the Agreement, this Confirmation, and this Transaction.

8.    Governing Law; Third Party Rights:

(a)    This Confirmation shall be governed by, and construed in accordance with, the laws of England and Wales.

(b)    Nothing in this Confirmation is intended to confer on any person any right to enforce any provision of this Confirmation which that person would not have had but for the UK Contracts (Rights of Third Parties) Act 1999.

9.    Notices: All notices and other communications pursuant or related to this Confirmation shall be in writing and shall be delivered to the office of Seller or Buyer, as applicable, specified on the first page hereof. Notices may be delivered by Seller to Buyer by email to the email address, if any, specified above. Any such notice shall be deemed to be delivered upon transmission so long as verbal notice is also delivered telephonically

10.    Confidentiality: Buyer agrees that it shall not disclose without the prior consent of Seller (other than to Buyer's employees, auditors or counsel) any information with respect to Seller or this Transaction; provided that Buyer may disclose any such information (i) as has become generally available to the public, (ii) as may be required or appropriate in any report, statement or testimony submitted to any municipal, state or national (including foreign) regulatory body having jurisdiction over Buyer, (iii) as may be required or appropriate in response to any summons or subpoena or in connection with any litigation, (iv) to the extent necessary in order to comply with any law, order, regulation, ruling or other governmental request applicable to Buyer, and (v) to its professional advisors (it being understood and agreed, for the avoidance of doubt, that any other financing providers do not constitute professional advisors for purposes of this sentence). The foregoing does not, however, limit any disclosure of the U.S. tax treatment or tax structure of this Transaction, except that this sentence does not authorize disclosure of (i) the identity of the parties hereto or their Affiliates or other identifying details relating to such persons, (ii) other information the non-disclosure of which is reasonably necessary to comply with applicable securities laws, or (iii) any information or materials not related to the U.S. tax treatment or structure of this Transaction. The provisions of this paragraph on "Confidentiality" shall survive the termination of the Agreement, this Confirmation, and this Transaction.

11.    Elections for ISDA Form: Unless and until any Future Agreement is executed and delivered by each of Seller and Buyer, the following selections and modifications with respect to the ISDA Form shall form  part of the Original Agreement:

(a)    *Payments on Early Termination.*  Notwithstanding anything to the contrary in the Agreement, payments upon the termination of this Transaction (whether pursuant to an Event of Default, a Termination Event or under any of the circumstances set forth in this Confirmation) shall be effected in accordance with the "Settlement Terms" above.

(b)    **"Termination Currency"** means USD.

(c)    *Details of any Credit Support Document:*

In relation to Seller:  The guarantee provided by KBC Bank NV and any pledge agreements entered into by and among Buyer, the relevant Custodian and KBC Investments Limited in connection with this Transaction.

In relation to Buyer:  None.

(d)    *Rights of Set-Off.*  The parties agree to amend Section 6 of the Agreement by adding a new Section 6(f), as follows:

"(f)  Upon the occurrence of an Event of Default or Termination Event under Section 5(b)(iv) with respect to a party ("**X**"), the other party ("**Y**") will have the right (but not be obliged) without prior

- 20 -

notice to X or any other person to set off or apply any obligation of X owed to Y (or any Affiliate of Y) (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation) against any obligation of Y (or any Affiliate of Y) owed to X (whether or not matured or contingent and whether or not arising under this Agreement, and regardless of the currency, place of payment or booking office of the obligation).   Y will give notice to the other party of any set-off effected under this Section 6(f).

Amounts (or the relevant portion of such amounts) subject to set-off may be converted by Y into the Termination Currency at the rate of exchange at which Y would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency.

If any obligation is unascertained, Y may in good faith estimate that obligation and set off in respect of the estimate, subject to Y accounting to X when the obligation is ascertained.

Nothing in this Section 6(f) shall be effective to create a charge or other security interest.   This Section 6(f) shall be without prejudice and in addition to any right of set-off, combination of accounts, lien or other right to which any party is at any time otherwise entitled (whether by operation of law, contract or otherwise)."

(e)   *Consent to Recording*.   Each party (i) consents to the recording of the telephone conversations of trading and marketing personnel of the parties in connection with the Agreement, this Transaction or any potential Transaction, (ii) agrees to obtain any necessary consent of, and give notice of such recording to, such personnel and (iii) agrees that such recordings may be submitted in evidence in any Proceedings.

(f)   *Exceptions to Transfer*.   Notwithstanding anything in Section 7 of the Agreement to the contrary, Seller may transfer in whole but not in part its rights and obligations under this Transaction as supplemented by this Confirmation to any Affiliate of Seller upon 10 Local Business Days' prior written notice, provided (i) such notice is accompanied by a written instrument pursuant to which the transferee acquires and assumes the rights and obligations of Seller so transferred, (ii) if such transfer is to a person other than KBC Bank NV, such notice is accompanied by a guarantee by KBC Bank NV of the transferee's obligations in substantially the form of any Credit Support Document to be delivered by KBC Bank NV in connection with this Transaction, (iii) Buyer will not as a result of such transfer be required on the next Scheduled Payment Date to pay to the transferee an additional amount in respect of an Indemnifiable Tax under Section 2(d)(i)(4) of the Agreement (except in respect of interest under Section 2(e), 6(d)(ii) or 6(e)) of the Agreement greater than the amount that Buyer would have been required to pay to Seller absent such transfer, (iv) Buyer will not as a result of such transfer receive on the next Scheduled Payment Date, by reason of any deduction or withholding for or on account of a Tax (except in respect of interest under Section 2(e), 6(d)(ii) or 6(e) of the Agreement, but after giving effect to the payment of any additional amount required to be paid under Section 2(d)(i)(4)) of the Agreement, a payment from Seller in an amount less than it would have received had such transfer not occurred and (v) no Event of Default or Termination Event occurs as a result of such transfer.  Any costs and expenses resulting from any such transfer by Seller shall be for the account of Seller or the transferee.

(g)   *Cross Default, Credit Event Upon Merger and Automatic Early Termination*.   The Cross Default provisions of the ISDA Form will apply to both parties but shall exclude any payment default that results solely from wire transfer difficulties or an error or omission of an administrative or operational nature unless such payment default continues for more than three Business Days. The term "Specified Indebtedness" in the ISDA Form shall exclude any limited recourse transaction (i.e., any transaction in which the recourse of a counterparty other than a party to this Transaction is limited to specified collateral).   The Credit Event Upon Merger provisions of the ISDA Form will apply with respect to both parties, but Automatic Early Termination shall not apply.   Threshold Amount shall be, with respect to each of Seller and Buyer, 3% of such party's

- 21 -

total shareholder equity or net asset value (as the case may be), as specified in such party's most recently published audited financial statements.

Please execute and return a copy of this Confirmation to the attention of Fund Derivatives Middle Office c/o KBC. Cayman Islands V Ltd. at Rapidfax +44 20 7979 6161. Any failure by you to respond to this Confirmation shall not affect the validity or enforceability of this Transaction, and shall be deemed to be an affirmation of the terms and conditions set forth herein, absent manifest error.

Yours sincerely,

Accepted and confirmed:

**KBC INVESTMENTS CAYMAN ISLANDS V LTD.**

**FAIRFAX FUND LTD**

By: _____
Name:
Title:

By: _____
Name:
Title:        David P. M. Blair
              DIRECTOR

By: _____
Name:
Title:

- 23 -

**APPENDIX A**

**Eligible Interests included in Reference Basket**

[List of Eligible Interests begins on following page.]

**APPENDIX B**

**Investment Guidelines**

[Investment Guidelines begin on following page.]

**EXHIBIT I**

**Order Form**

[Order Form begins on following page.]

- 26 -