NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                      Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                      Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>UBS AG, et al.,<br><br>                      Defendants. | Adv. Pro. No. 10-04285 (CGM) |

**MEMORANDUM DECISION DENYING DUMBAULD'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
*Attorneys for Defendant Theodore Dumbauld*
By:    Cathy Liu, Esq.

BAKER HOSTETLER LLP
45 Rockefeller Plaza

New York, NY 10111
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
By:     Jessica Fernandez, Esq.

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Theodore Dumbauld ("Dumbauld"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. (Mot. Dismiss, ECF No. 295). The Defendant seeks dismissal for failure to state a claim due to the "safe harbor" provision of the Bankruptcy Code; for failure to adequately plead that Dumbauld is a subsequent transferee; and he asserts the "for value" defense for any BLMIS customer property paid to him as employee compensation. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has not been contested by Dumbauld.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme operated by Bernard L. Madoff ("Madoff") and its SIPA proceeding. *See Picard v. Citibank, N.A. (In re BLMIS),* 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,* 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on November 23, 2010. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint on February 28, 2022 ("Complaint"). (Am. Compl., ECF No. 274). Via the Complaint, the Trustee is seeking to recover transfers of customer property allegedly made by BLMIS to Defendants, Luxalpha SICAV ("Luxalpha") and Groupement Financier. Luxalpha and Groupement Financier (collectively, the "Feeder Funds" or the "Feeder Fund Defendants") were investment vehicles that fed into BLMIS. (Am. Compl. ¶ 16). It is alleged that the Feeder Funds were created to invest in BLMIS with full knowledge of BLMIS' fraud. (*Id.* ¶ 6) ("Defendants knew BLMIS was operating a fraud."); (*id.* ¶¶ 233, 352, 397). A network of Access-related entities and shell corporations were used to service the Feeder Funds. (*Id.* ¶ 77).

Dumbauld served these Access entities in various roles. (*Id.* ¶ 85). He "was a Partner at [Access International Advisors LLC] beginning in 2002 and then became the Chief Investment

---

[1] Citations to this Court's electronic docket refer to the docket of adversary case number 10-04285 unless otherwise noted.

Officer of [Access International Advisors LLC]." (*Id.*) "Dumbauld held both of these positions until his 2006 departure." (*Id.*) Dumbauld was also a director of [Access International Advisors LLC]. (*Id.*)

According to the Complaint, "[t]he Feeder Fund Defendants collectively invested approximately $2 billion with BLMIS through more than 150 separate transfers via check and wire directly into the [JPMorgan Chase in New York, Account No. xxxxxxxxxxx1703 (the "703 Account")]." (Am. Compl. ¶ 326). The Trustee is seeking to avoid at least $1.1 billion in transfers paid from BLMIS to the Feeder Funds within six years of the filing date of this SIPA case (the "Six Year Transfers"). (*Id.* ¶ 327). Of the Six Year Transfers, $1.01 billion was transferred from BLMIS to the Feeder Funds during the two years preceding the filing of this SIPA case ("the Two Year Transfers"). (*Id.* ¶ 328). "The Two Year Transfers included transfers of approximately $735 million to Luxalpha and approximately $275 million to Groupement Financier." (*Id.*)

Count seven is asserted against Dumbauld and all of the other non-Feeder Fund defendants—referred to as the "Subsequent Transferee Defendants." (Am. Compl. ¶ 332); (*id.* ¶¶ 332–40) (explaining the subsequent transfers to each Subsequent Transferee in detail); (*id.* ¶¶ 389–92). In count seven, the Trustee is seeking to recover subsequent transfers of BLMIS customer property that was initially transferred from BLMIS to the Feeder Funds and then subsequently transferred from the Feeder Funds to the Subsequent Transfer Defendants. (*Id.* ¶¶ 332–40). It is alleged that Dumbauld "[a]t minimum, . . . received $1.25 million in compensation paid from bank accounts controlled by Access's New York office from 2004 through 2007." (*Id.* ¶ 337). And that he "received these transfers as distributions, payments, or

other transfers of value in connection with his role as Access partner and Chief Investment Officer." (*Id.*)

On April 22, 2022, the Dumbauld filed a motion to dismiss the Trustee's complaint against him. In the motion to dismiss, Defendant argues: that § 546(e) of the Bankruptcy Code, known as the "the safe harbor," bars the Trustee from avoiding initial transfers from BLMIS to the Feeder Funds made more than two years before the petition date; that the Trustee has failed to adequately plead a subsequent transfer claim against Dumbauld; and that Dumbauld received BLMIS customer property "for value" as employee compensation. The Trustee has opposed the motion. The Court heard oral argument on these issues on September 14, 2022. (9/14/2022 Hr'g Tr., ECF No. 326).

For a more robust discussion of the Feeder Funds, please see *Picard v. UBS, AG* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 10-04285 (CGM), 2022 WL 17085033, at *1–*5 (Bankr. S.D.N.Y. Nov. 18, 2022).

## Discussion

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

While the Trustee must allege that the initial transfer from BLMIS to Feeder Fund Defendants are avoidable, he is not required to avoid the transfers received by the initial transferees before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005).

**The Safe Harbor does not bar the avoidance of the Initial Transfers to the Feeder Funds**

Dumbauld has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). By its terms, the safe harbor is a defense to the avoidance of the Initial Transfers—those transfers from BLMIS to the Feeder Fund Defendants. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018). As a subsequent transferee, Dumbauld is entitled to raise a § 546(e) defense against Trustee's recovery of the initial transfer funds. *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021). To the extent that the safe harbor bars the Trustee from collecting the initial transfer, he would also be barred from collecting any subsequent transfers.

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[2] *Id.*

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by § 546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains. The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds the district court's holding consistent with *dicta* set forth by the Court of Appeals for

---

[2] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

Here, the Court has already determined that the Trustee has sufficiently plead that the Feeder Funds (and most of the subsequent transferees[3]) had actual knowledge that BLMIS was not trading securities, which makes the safe harbor inapplicable by its express terms. *Picard v. UBS, AG* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 10-04285 (CGM), 2022 WL 17085033, at *12–*14 (Bankr. S.D.N.Y. Nov. 18, 2022) (finding that the Feeder Funds had actual knowledge of BLMIS' fraud).

Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to the Feeder Funds were made in connection with the Feeder Fund's contracts with its customers (rather than the Feeder Funds' contracts with BLMIS) is not answerable on the pleadings. If a fact-specific determination is needed, the Court will make it with the benefit of a "full factual record." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**BLMIS Customer Property**

Dumbauld argues that the Trustee has failed to plead facts that create a plausible inference that the subsequent transfers made to him by the Feeder Fund Defendants consisted of customer property. Rule 8(a) governs the Trustee's pleading burden and a short and plain statement that the pleader is entitled to relief is all that is required. Fed. R. Civ. P. 8(a). This

---

[3] Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

standard of pleading is meant to ensure that the defendant has proper notice of the claim, while recognizing the limitations a plaintiff may have in setting out each detail of the claim before discovery. *In re Enron Corp.*, No. 01-16034 AJG, 2006 WL 2400369, at *4 (Bankr. S.D.N.Y. May 11, 2006). In a subsequent transfer claim, this means only that a defendant must be adequately apprised of the subsequent transfers that the Trustee seeks to recover. *Picard v. Cohmad* (*In re BLMIS*), 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011) ("*Cohmad II*"). In the Complaint, the Trustee provides Dumbauld with the "who, when, and how much" of the purported transfers. *Cohmad II*, 454 B.R. at 340; (Am. Compl. ¶¶ 332–40).

> 337. Based on the Trustee's investigation to date, a portion of the Subsequent Transfers received by AIA Ltd., AIA LLC, AP (Lux), and AML (f/k/a AIA (Lux)) were subsequently transferred to Dumbauld, in an amount to be proven at trial. At minimum, Dumbauld received $1.25 million in compensation paid from bank accounts controlled by Access's New York office from 2004 through 2007. Dumbauld received these transfers as distributions, payments, or other transfers of value in connection with his role as Access partner and Chief Investment Officer.

(*Id.*)

The Trustee has alleged that Luxalpha was established entirely with BLMIS customer property that was withdrawn from the Oreades' BLMIS account. (*Id.* ¶ 4). And that the Feeder Fund Defendants invested 100% of their assets directly with BLMIS. (9/14/2022 Hr'g Tr. 74:25–75:4) ("[A]s to [Groupment and Luxalpha], they were . . . a hundred percent invested in Madoff."); (Am. Compl. ¶ 104) ("Groupement Financier . . . invested 100% of its assets directly with BLMIS."). The Trustee also alleges that BLMIS customer property accounts for 92% of Access' total revenue. (*Id.* ¶ 79). As such, any and all subsequent transfers made from the Feeder Fund Defendants to Dumbauld are very likely comprised of BLMIS customer property.

As has previously been stated by this Court,

> the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they

> were effected. The Moving Defendants are a group of interrelated individuals and entities .... Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Picard v. Mayer (In re BLMIS)*, No. 08-01789, Adv. No. 20-01316, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021). These allegations provide more than enough detail to apprise the Dumbauld of the subsequent transfers the Trustee is seeking to collect.

**For Value**

Section 550(b)(1) of the Bankruptcy Code provides subsequent transferees who take a transfer "for value, . . . in good faith, and without knowledge of the voidability of the transfer avoided" with an affirmative defense to prevent the Trustee's recovery of that transfer. 11 U.S.C. § 550(b)(1). "All three elements (value, good faith, and lack of knowledge) must be proved by a defendant in order for it to take advantage of this affirmative defense." *Picard v. Banque SYZ & Co., SA (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 11-02149 (CGM), 2022 WL 2135019, at *10 (Bankr. S.D.N.Y. June 14, 2022).

Dumbauld argues that the subsequent transfers he received are alleged to be "compensation," "distributions, payments, or other transfers of value in connection with his role as Access partner and Chief Investment Officer." (Am. Compl. ¶ 337). The cause of action should be dismissed against him as he received the transfers "for value." Defendant relies on *Geltzer v. Barish (In re Starr)*, 502 B.R. 760, 772–73 (Bankr. S.D.N.Y. 2013), for the proposition that the Trustee cannot establish his case for recovery of a subsequent transfer of funds used to pay a salary. Memo. L. 29, ECF No. 300. In *Geltzer*, the bankruptcy court held that "an officer or employee who is the recipient of a salary from a company that received an allegedly fraudulent transfer is not, without more, the subsequent transferee of the conveyance." *Geltzer*, 502 B.R. at 773. The Trustee argues that he has plead "more" in that he has alleged that

Page **11** of **13**

Dumbauld has not received the transfers in good faith and that Dumbauld had knowledge of their voidability. The Trustee also argues that the compensation Dumbauld received was not "for value." Opp'n 69, ECF No. 307.

Even if the "for value" prong of § 550(b)(1) was conceded by the Trustee, the Complaint cannot be dismissed against Dumbauld because Dumbauld is also required to plead and prove that he took the transfers in good faith and without knowledge of their avoidability. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 195 (2d Cir. 2021) ("Federal Rule of Civil Procedure 8(c) places the burden of pleading an affirmative defense [such as good faith] on the defendant.").

The Trustee has alleged that Dumbauld had actual knowledge of BLMIS' fraud. Dumbauld knew that the Feeder Funds were reporting "non-existent securities transactions" and "trading impossibilities." (Am. Compl. ¶ 219). Dumbauld confirmed that BLMIS' traders were not reported accurately and did not appear on the options clearing database. (*Id.* ¶ 221). Dumbauld knew that this meant that BLMIS had not made the trades it reported to have made. (*Id.* ¶ 222). This was confirmed by an outside consultant who reported his findings to Dumbauld. (*Id.* ¶¶ 226, 268, 270). Ultimately, the fact that BLMIS was not trading securities was covered up by Dumbauld and his collegues. (*Id.* ¶ 273).

If the Trustee can prove that Dumbauld knew that BLMIS was not actually trading securities, then he may be said to not have received his compensation "for value." See *Picard v. Banque SYZ & Co., SA* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 11-02149 (CGM), 2022 WL 2135019, at *10 (Bankr. S.D.N.Y. June 14, 2022) ("If [the subsequent transferee] knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds 'for value' as is required under § 550.").

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021). The allegations set forth in the Complaint are sufficient to demonstrate that Dumbauld's affirmative defense is not asserted on the face of the Complaint.

### Conclusion

For the foregoing reasons, Dumbauld's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: December 1, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**