ROPES & GRAY LLP
Martin J. Crisp
Andrew G. Devore
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9193

*Counsel for Defendant Schroder & Co. Bank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (cgm) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> SCHRODER & CO. BANK AG, <br><br> Defendant. | Adv. Pro. No. 12-01210 (CGM) <br><br><br> **ANSWER WITH AFFIRMATIVE DEFENSES AND JURY DEMAND** |

Defendant Schroder & Co. Bank AG ("Schroder AG" or "Defendant") answers the claims

of Plaintiff Irving H. Picard (the "Trustee") as follows:

### GENERAL DENIAL

Except as otherwise expressly admitted herein, Schroder AG denies each and every

allegation in the Trustee's Complaint, as amended by the Stipulation and Order to Dismiss Certain

Transfers (Dkt. No. 89) (the "Complaint"). Schroder AG states that the headings and sub-headings

throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require

no response. To the extent a response is required, the allegations in the headings and subheadings

in the Complaint are denied. In answering the allegations in the Complaint, Schroder AG does not

intend to waive, and does not waive, any and all applicable objections to the relevance,

admissibility, or prejudicial effect of any of the allegations in the Complaint. Schroder AG

expressly reserves the right to amend and/or supplement the Answer.

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover
BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff") and others.

**Response:**  Schroder AG denies each and every allegation in paragraph 1 of the Complaint,

except Schroder AG admits the Trustee purports to bring this adversary proceeding as part of the

Trustee's efforts to recover BLMIS Customer Property within the meaning of 15 U.S.C. § 78*lll*(4),

and, based on its current understanding and publicly-available information, Madoff perpetrated a

Ponzi scheme.

---

[1] Footnote 1 of the Complaint states: "SIPA § 78*lll*(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

2.      With this Complaint, the Trustee seeks to recover approximately $30,393,837 in subsequent transfers of Customer Property made to Defendant Schroder by Fairfield Sentry Limited ("Fairfield Sentry"), Kingate Global Fund Ltd. ("Kingate Global"), and Kingate Euro Fund Ltd. ("Kingate Euro") (collectively, "the Feeder Funds"), which were Madoff feeder funds. The Feeder Funds are currently in liquidation in the British Virgin Islands ("BVI").  All were BVI companies that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS.   The Feeder Funds maintained in excess of 95% of their assets in its BLMIS customer accounts.  Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma Limited ("Fairfield Sigma"), which invested 100% of its assets in Fairfield Sentry.  Fairfield Sigma is also in liquidation in the BVI.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and on that basis denies each and every allegation in paragraph 2 of the Complaint, except Schroder AG denies that the Trustee seeks to recover approximately $30,393,837 in subsequent transfers made to Schroder AG because the Trustee has dismissed all claims relating to transfers from Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (together, the "Kingate Funds"), denies that it received subsequent transfers of Customer Property from BLMIS or Fairfield Sentry and admits, upon information and belief, that Fairfield Sentry was a BVI company that had direct customer accounts with BLMIS's investment advisory business and is currently in liquidation in the BVI.

3.      When Defendant Schroder received the subsequent transfers of BLMIS Customer Property, it was a global asset management company that also provided private banking services to both individuals and institutions.  Defendant Schroder is a subsidiary of Schroders PLC, a holding company for a global group of affiliated entities known as the Schroders Group.

**Response:**  Schroder AG denies each and every allegation in paragraph 3 of the Complaint, including that Schroder AG received subsequent transfers of BLMIS Customer Property, except Schroder AG admits that it was a global asset management company that provided banking services to both individuals and institutions and it is a subsidiary of Schroders PLC, a holding company for a global group of affiliated entities known as the Schroders Group.

## II.   **JURISDICTION AND VENUE**

4.     The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Schroder as a subsequent transferee of funds originating from BLMIS.

**Response:**  Paragraph 4 of the Complaint sets forth legal conclusions to which no response

is required. To the extent a response is required, Schroder AG denies each and every allegation in

paragraph 4 of the Complaint, except Schroder AG admits that the Trustee has brought this

adversary proceeding asserting he has the authority to bring such action pursuant to the cited

statutory authorities.

5.     This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.,* No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response:**   Schroder AG denies that this Court has jurisdiction over this adversary

proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(4). Schroder AG states that the

United States District Court for the Southern District of New York has jurisdiction over this

adversary proceeding under 28 U.S.C. § 1334(b) and SIPA § 78eee(b)(2)(A)(iii) and (b)(4) and

this Court has jurisdiction over this adversary proceeding to the extent provided in SIPA §

78eee(b)(4). Schroder AG admits the remaining allegations in Paragraph 5.

6.     Defendant Schroder is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York- based BLMIS through the Feeder Funds. Defendant Schroder knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds.

**Response:** Paragraph 6 of the Complaint sets forth legal conclusions to which no response

is required. To the extent a response is required, Schroder AG denies each and every allegation in

paragraph 6 of the Complaint.

7.    By directing investments through Fairfield Sentry, a Fairfield Greenwich Group
("FGG") managed feeder fund, Defendant Schroder knowingly accepted the rights, benefits, and
privileges of conducting business and/or transactions in the United States and New York. Upon
information and belief, Defendant Schroder entered into a subscription agreement with Fairfield
Sentry under which it submitted to New York jurisdiction, sent a copy of the agreement to FGG's
New York City office, and wired funds to Fairfield Sentry through a bank in New York. Further,
upon information and belief, Defendant Schroder maintained a bank account at Northern Trust
International Banking Corp. in New York into which Defendant Schroder deposited Fairfield
Sentry redemption proceeds. Defendant Schroder thus derived significant revenue from New York
and maintained minimum contacts and/or general business contacts with the United States and
New York in connection with the claims alleged herein.

**Response:** Paragraph 7 of the Complaint sets forth legal conclusions to which no response

is required. To the extent a response is required, Schroder AG denies each and every allegation in

paragraph 7 of the Complaint, including that it is subject to personal jurisdiction in this action,

except Schroder AG admits that it entered into a subscription agreement with Fairfield Sentry,

maintained a bank account at Northern Trust International Banking Corp. in New York, and that

funds were transferred to Fairfield Sentry through a US-based correspondent bank, as is mandatory

when a foreign bank makes a transfer of funds in US Dollars.

8.    Defendant Schroder should reasonably expect to be subject to New York
jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law &
Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**Response:** Paragraph 8 of the Complaint sets forth legal conclusions to which no response

is required. To the extent a response is required, Schroder AG denies each and every allegation in

paragraph 8 of the Complaint.

9.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response:** Schroder AG admits this adversary proceeding is of a kind specified as a core

proceeding in 28 U.S.C. §§ 157(b)(2)(H) and denies the remaining allegations in Paragraph 9.

Schroder AG does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court and demands trial by jury of all issues that may be tried by a jury.

10.    Venue in this District is proper under 28 U.S.C. § 1409.

**Response:**  Paragraph 10 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG admits the allegation in paragraph 10 of the Complaint.

## III.    **BACKGROUND**

11.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia,* securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and on that basis denies each and every allegation in paragraph 11 of the Complaint, except Schroder AG admits, based on its current understanding and publicly available information, that Madoff was arrested on or about the Filing Date and that the SEC filed a complaint against BLMIS.

12.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and on that basis denies each and every allegation in paragraph 12 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

13.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia,* that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and on that basis denies each and every allegation in paragraph 13 of the Complaint, except that Schroder AG respectfully refers this Court to the public record as to any matters of public record.

14.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c.    removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of the Complaint and on that basis denies each and every allegation in paragraph 14 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

15.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the Complaint and on that basis denies each and every allegation in paragraph 15 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

16.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff,* Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response:** Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and on that basis denies each and every allegation in paragraph 16 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**Response:** Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and on that basis denies each and every allegation in paragraph 17 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

## IV.    TRUSTEE'S POWERS AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**Response:** Paragraph 18 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and on that basis denies each and every allegation in paragraph 18 of the Complaint.

19.    Under SIPA § 78fff-l(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-

1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response:**    Paragraph 19 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and on that basis denies each and every allegation in paragraph 19 of the Complaint.

20.      Under SIPA §§ 78fff(b) and 78111(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response:**    Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and on that basis denies each and every allegation in paragraph 20 of the Complaint.

21.      The Trustee has standing to bring these claims under § 78fff-l(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-l(a) and 78fff-2(c)(3).

**Response:**    Paragraph 21 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and on that basis denies each and every allegation in paragraph 21 of the Complaint.

## V.    **THE DEFENDANT**

22.      Defendant Schroder is a Swiss *aktiengesellschaft* maintaining a place of business at Central 2, 8001 Zurich, Switzerland.

**Response:**    Schroder AG admits the allegations of Paragraph 22.

## VI.    **THE PONZI SCHEME**

23.      BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as

founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units:  market making, proprietary trading, and the IA Business.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and on that basis denies each and every allegation in paragraph 23 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

24.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and on that basis denies each and every allegation in paragraph 24 of the Complaint.

25.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and on that basis denies each and every allegation in paragraph 25 of the Complaint.

26.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy.

He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and on that basis denies each and every allegation in paragraph 26 of the Complaint.

27.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the Complaint and on that basis denies each and every allegation in paragraph 27 of the Complaint.

28.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and on that basis denies each and every allegation in paragraph 28 of the Complaint.

29.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and on that basis denies each and every allegation in paragraph 29 of the Complaint.

30.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response:** Schroder AG denies having sufficient knowledge or information to form a

belief as to the truth of the allegations in paragraph 30 of the Complaint and on that basis denies

each and every allegation in paragraph 30 of the Complaint.

31.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a

belief as to the truth of the allegations in paragraph 31 of the Complaint and on that basis denies

each and every allegation in paragraph 31 of the Complaint.

32.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a

belief as to the truth of the allegations in paragraph 32 of the Complaint and on that basis denies

each and every allegation in paragraph 32 of the Complaint.

33.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response:**  Schroder AG denies having sufficient knowledge or information to form a

belief as to the truth of the allegations in paragraph 33 of the Complaint and on that basis denies

each and every allegation in paragraph 33 of the Complaint.

## VII.   **THE TRANSFERS**

34.     The Feeder Funds received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant Schroder.

**Response:** The first sentence of Paragraph 34 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 of the Complaint that the Feeder Funds received initial transfers of BLMIS Customer Property. Schroder AG denies each and every remaining allegation in paragraph 34 of the Complaint, except that Schroder AG admits that it received funds from Fairfield Sentry and Fairfield Sigma, but Schroder AG denies that such funds constitute BLMIS Customer Property or any other property transferred from BLMIS to Fairfield Sentry or Fairfield Sigma.

### A.     **FAIRFIELD SENTRY**

#### 1.     **Initial Transfers from BLMIS to Fairfield Sentry**

35.     The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**Response:** Schroder AG (i) upon information and belief, admits that the Trustee filed an action styled as *Picard v. Fairfield Sentry, Ltd., et al.,* Adv. Pro No. 09-1239 (BRL) (the "Sentry Action") and respectfully refers this Court to the public record as to any matters of public record, (ii) denies having sufficient knowledge and information to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action and on that basis denies such allegations, (iii) denies that the initial transfers of Customer Property to Fairfield Sentry the Trustee seeks to avoid and recover in the

Sentry Action were avoided or are avoidable, (iv) to the extent necessary to support such denial, denies having sufficient knowledge and information to form a belief as to the truth of the allegations and on that basis denies each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Fairfield Sentry are or were avoided or avoidable, and (v) objects to the incorporation by reference of, and therefore does not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, Schroder AG denies having sufficient knowledge and information to form a belief as to the truth of the remaining allegations in paragraph 35 of the Complaint and on that basis denies such allegations.

36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78111(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**  Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 36 of the Complaint and on that basis denies such allegations. The remaining allegations in paragraph 36 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every remaining allegation in paragraph 36 of the Complaint.

37.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78111(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**    Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 37 of the Complaint and on that basis denies such allegations. The remaining allegations in paragraph 37 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every remaining allegation in paragraph 37 of the Complaint.

38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78111(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response:**    Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations of the timing and amounts of the transfers alleged in paragraph 38 of the Complaint and on that basis denies such allegations. The remaining allegations in paragraph 38 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, the Schroder AG denies each and every remaining allegation in paragraph 38 of the Complaint.

39.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**Response:** Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39 of the Complaint and on that basis denies each and every allegation in paragraph 39 of the Complaint.

40.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**Response:** Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40 of the Complaint and on that basis denies each and every allegation in paragraph 40 of the Complaint, except Schroder AG respectfully refers this Court to the public record as to any matters of public record.

## 2.    Subsequent Transfers from Fairfield Sentry to Defendant Schroder

41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $25,143,816 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Schroder (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**Response:** The first sentence of Paragraph 41 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every allegation in paragraph 41 of the Complaint, except Schroder AG admits that it received funds from Fairfield Sentry but denies that such funds constitute subsequent transfers of Customer Property or any other property transferred from BLMIS to Fairfield Sentry.[2]

---

[2] Schroder AG further notes that, as set forth in the Stipulation and Order in this adversary proceeding entered on February 22, 2022 [Dkt. No. 89], the Trustee has dismissed its claims as it relates to the transfers noted on Schedule 1 to that stipulation.

42.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**:    Paragraph 42 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Schroder AG denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42 of the Complaint and on that basis denies each and every allegation in paragraph 42 of the Complaint.

### 3. Subsequent Transfers from Fairfield Sentry to Fairfield Sigma and Subsequently to Defendant Schroder

43.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder through Fairfield Sigma and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma.  Thereafter, the equivalent of at least $3,419,198 was transferred  by Fairfield Sigma to Defendant Schroder (the  "Fairfield Sigma  Subsequent Transfers").  Charts setting forth the presently known Fairfield Sigma Subsequent Transfers are attached as Exhibits D and E.

**Response**:  The first sentence of Paragraph 43 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every allegation in paragraph 43 of the Complaint, except Schroder AG admits that it received funds from Fairfield Sigma but denies that such funds constitute subsequent transfers of Customer Property or of any other property transferred from BLMIS to Fairfield Sentry.

44.    The Trustee's investigation is on-going, and the Trustee reserves the right to:  (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sigma Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**:    Paragraph 44 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Schroder AG denies having sufficient

knowledge or information to form a belief as to the truth of the allegations in paragraph 44 of the

Complaint and on that basis denies each and every allegation in paragraph 44 of the Complaint.

### B.    KINGATE GLOBAL

#### 1.    Initial Transfer from BLMIS to Kingate Global

45.    The Trustee has filed an adversary proceeding against the Kingate Global, Kingate Euro, and other defendants in the Bankruptcy Court under the caption Picard v. Kingate Global Fund, et al., Adv. Pro. No. 10-05310 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Kingate Global in the amount of approximately $437,501,112 (the "Kingate Global Complaint"). The Trustee incorporates by reference the allegations contained in the Kingate Global Complaint as if fully set forth herein.

46.    Over the lifetime of Kingate Global's account with BLMIS, from its inception to the Filing Date, BLMIS made transfers to Kingate Global of approximately $437,501,112 (the "Kingate Global Lifetime Initial Transfers"). The Kingate Global Lifetime Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

47.    The Kingate Global Lifetime Initial Transfers include approximately $398,704,065 which BLMIS transferred to Kingate Global during the six years preceding the Filing Date (the "Kingate Global Six Year Initial Transfers"). The Kingate Global Six Year initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff- 2(c)(3).

48.    The Kingate Global Six Year Initial Transfers include approximately $163,447,509 which BLMIS transferred to Kingate Global during the two years preceding the Filing Date (the "Kingate Global Two Year Initial Transfers"). The Kingate Global Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

49.    The Kingate Global Two Year Initial Transfers include approximately $101,753,145 which BLMIS transferred to Kingate Global during the 90 days preceding the Filing Date (the "Kingate Global Preference Period Initial Transfers"). The Kingate Global Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

50.    The Kingate Global Lifetime Initial Transfers, the Kingate Global Six Year Initial Transfers, the Kingate Global Two Year Initial Transfers, and the Kingate Global Preference Period Initial Transfers are collectively defined as the "Kingate Global Initial Transfers." Charts detailing these transfers are attached as Exhibits F and G.

### 2.    Subsequent Transfers from Kingate Global to Defendant Schroder

51.    A portion of the Kingate Global Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $1,527,475 of the money transferred from BLMIS to Kingate Global was subsequently transferred by Kingate Global to Defendant Schroder (the "Kingate Global Subsequent Transfers"). A chart setting forth the presently known Kingate Global Subsequent Transfers is attached as Exhibit H.

52.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Global Initial Transfers, the Kingate Global Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

### C.    KINGATE EURO

### 1.    Initial Transfers from BLMIS to Kingate Euro

53.    The Trustee has filed an adversary proceeding against Kingate Global, Kingate Euro, and other defendants in the Bankruptcy Court under the caption Picard v. Kingate Global Fund, et al., Adv. Pro. No. 09-01161 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Kingate Euro in the amount of approximately $538,040,617 (as previously defined, the "Kingate Global Complaint"). The Trustee incorporates by reference the allegations contained in the Kingate Global Complaint as if fully set forth herein.

54.    During the six years preceding the Filing Date, BLMIS made transfers to Kingate Euro of $475,485,759 (the "Kingate Euro Six Year Initial Transfers"). The Kingate Euro Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff- 2(c)(3).

55.    The Kingate Euro Six Year Initial Transfers include approximately $248,979,674 which BLMIS transferred to Kingate Euro during the two years preceding the Filing Date (the "Kingate Euro Two Year Initial Transfers"). The Kingate Euro Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

56.    The Kingate Euro Two Year Initial Transfers include approximately $155,606,833 which BLMIS transferred to Kingate Euro during the 90 days preceding the Filing Date (the "Kingate Euro Preference Period Initial Transfers"). The Kingate Euro Preference Period Initial Transfers were and are Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

57.    The Kingate Euro Six Year Initial Transfers, the Kingate Euro Two Year Initial Transfers, and the Kingate Euro Preference Period Initial Transfers are collectively defined as the "Kingate Euro Initial Transfers." Charts detailing these transfers are attached as Exhibit I and J.

### 2.    Subsequent Transfers from Kingate Euro to Defendant Schroder

58.    A portion of the Kingate Euro Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, the equivalent of at least $303,348 of the money transferred from BLMIS to Kingate Euro was subsequently transferred by Kingate Euro to Defendant Schroder (the "Kingate Euro Subsequent Transfers"). A chart setting forth the presently known Kingate Euro Subsequent Transfers is attached as Exhibit K.

59.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Euro Initial Transfers, the Kingate Euro Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response:**  The Trustee has dismissed all claims against Schroder AG relating to transfers from BLMIS to the Kingate Funds, as set forth in the Stipulation and Order in this adversary proceeding entered on February 22, 2022 [Dkt. No. 89]. Therefore, no response to the allegations in paragraphs 45 through 59 is required. If any further response is required, Schroder AG denies the allegations of paragraphs 45 through 59 of the Complaint.

## COUNT ONE
## RECOVERY OF FAIRFIELD SUBSEQUENT TRANSFERS –
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

60.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response:**  Schroder AG incorporates by reference its answers to the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

61.    Defendant Schroder received the Fairfield Sentry Subsequent Transfers, totaling approximately $25,143,816; and the Fairfield Sigma Subsequent Transfers, totaling the equivalent of at least $3,419,198; (collectively, the "Fairfield Subsequent Transfers"). The Fairfield Subsequent Transfers, totaling approximately $28,563,014, are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**Response:**    Schroder AG denies each and every allegation in paragraph 61 of the Complaint, except Schroder AG admits that it received funds from Fairfield Sentry and Fairfield Sigma but denies that such funds constitute subsequent transfers of Customer Property or of any other property transferred from BLMIS to Fairfield Sentry. Schroder AG further notes that, as set forth in the Stipulation and Order in this adversary proceeding entered on February 22, 2022 [Dkt. No. 89], the Trustee has dismissed its claims as it relates to the transfers noted on Schedule 1 to that stipulation.

62.    Each of the Fairfield Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Defendant Schroder.

**Response:** Paragraph 62 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every allegation in paragraph 62 of the Complaint.

63.    The Defendant Schroder is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**Response:** Paragraph 63 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every allegation in paragraph 63 of the Complaint.

64.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Schroder recovering the Fairfield Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response:** Paragraph 64 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Schroder AG denies each and every allegation in paragraph 64 of the Complaint.

**COUNT TWO**
**RECOVERY OF KINGATE GLOBAL SUBSEQUENT TRANSFERS –**
**11 U.S.C. §§ 550 AND 551 AND NYDCL § 278**

65.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response:** Schroder AG incorporates by reference its answers to the allegations contained

in the previous paragraphs of this Complaint as if fully rewritten in this paragraph.

66.     Defendant Schroder received the Kingate Global Subsequent Transfers, totaling approximately $1,527,475. The Kingate Global Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

67.     Each of the Kingate Global Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Schroder.

68.     Defendant Schroder is an immediate or mediate transferee of the Kingate Initial Transfers.

69.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Schroder recovering the Kingate Global Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response:**  The Trustee has dismissed all claims against Schroder AG relating to transfers

from BLMIS to the Kingate Funds, as set forth in the Stipulation and Order in this adversary

proceeding entered on February 22, 2022 [Dkt No. 89.] Therefore, no response to the allegations

in paragraphs 66 through 69 is required.

**COUNT THREE**
**RECOVERY OF KINGATE EURO SUBSEQUENT TRANSFERS –**
**11 U.S.C. §§ 550 AND 551 AND NYDCL § 278**

70.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response:** Schroder AG incorporates by reference its answers to the allegations contained

in the previous paragraphs of this Complaint as if fully rewritten in this paragraph.

71.     Defendant Schroder received the Kingate Euro Subsequent Transfers, totaling the equivalent of at least $303,348. The Kingate Euro Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

72.     Each of the Kingate Euro Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Schroder.

73.     Defendant Schroder is an immediate or mediate transferee of the Kingate Initial Transfers.

74.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Schroder recovering the Kingate Euro Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response:**  The Trustee has dismissed all claims against Schroder AG relating to transfers from BLMIS to the Kingate Funds, as set forth in the Stipulation and Order in this adversary proceeding entered on February 22, 2022 [Dkt. No. 89]. Therefore, no response to the allegations in paragraphs 71 through 74 is required.

## AFFIRMATIVE DEFENSES

In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Schroder AG hereby preserves each and every defense at law, in equity, or otherwise available under federal and state law, including common law. Further, Schroder AG reserves the right to amend this Answer to assert other and further defenses when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so. In asserting the following defenses, Schroder AG does not intend to suggest that matters designated herein as "affirmative defenses" are not elements of the Trustee's prima facie case on the Trustee's purported claims or that they are not matters as to which the Trustee bears the burden or proof. These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim
### (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

1.　　The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Schroder AG's Motion to Dismiss the Complaint, dated March 11, 2022 [Dkt. No. 90] and the associated briefing.

## SECOND AFFIRMATIVE DEFENSE
### Lack of Personal Jurisdiction

2.　　This Court lacks personal jurisdiction over Schroder AG, for the reasons stated in Schroder AG's Motion to Dismiss the Complaint, dated March 11, 2022 [Dkt. No. 91] and the associated briefing, and Schroder AG has not consented to jurisdiction in this action.

## THIRD AFFIRMATIVE DEFENSE
### Dismissed Claims

3.　　The Trustee's claims are barred to the extent they have been dismissed by the Trustee or the Court or are based on allegations that have been dismissed by the Trustee or the Court, including any claims relating to transfers to or from the Kingate Funds, as set forth in the Stipulation and Order in this adversary proceeding entered February 22, 2022 [Dkt. No. 89] or relating to the transfers noted on Schedule 1 to that stipulation.

## FOURTH AFFIRMATIVE DEFENSE
### Bankruptcy Code Good Faith Defense
### (11 U.S.C. § 550(b))

4.　　Any transfers from Fairfield Sentry or Fairfield Sigma to Schroder AG may not be recovered from Schroder AG because Schroder AG took for value, in good faith, and without knowledge of the alleged voidability of such transfers within the meaning of 11 U.S.C. § 550(b).

5.　　Schroder AG took any transfers from Fairfield Sentry to Fairfield Sigma for value because they were made in exchange for Schroder AG's surrender of its shares in Fairfield Sentry or Fairfield Sigma, and therefore took for value.

6.      Schroder AG did not have actual knowledge of any fraudulent purpose behind the transfers it received, or that BLMIS was not trading securities or was a fraud or a Ponzi scheme, or that Fairfield Sentry or Fairfield Sigma or their directors, officers, employees, agents, or consultants allegedly knew or suspected that BLMIS was not trading securities or was a fraud or a Ponzi scheme.

7.      Schroder AG did not know facts at the time of any transfers from Fairfield Sentry or Fairfield Sigma that would have prompted a reasonable person in their position to conduct further inquiry into whether there was any fraud behind the transfers.

8.      Even if Schroder AG had been on inquiry notice of a possible fraud behind any transfers from Fairfield Sentry or Fairfield Sigma, a diligent inquiry by Schroder AG would not have discovered that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Schroder AG, and with more access to BLMIS personnel and documentation than Schroder AG, investigated BLMIS but failed to uncover its fraud before December 2008.

9.      Schroder AG did not have actual knowledge of the alleged voidability of any transfers from Fairfield Sentry or Fairfield Sigma when such transfers were received.

### FIFTH AFFIRMATIVE DEFENSE
### No Customer Property
### (15 U.S.C. § 78fff-2(c)(3))

10.     The property that Schroder AG received from Fairfield Sentry or Fairfield Sigma was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry or Fairfield Sigma, and therefore the property is not recoverable by the Trustee from Schroder AG.

## SIXTH AFFIRMATIVE DEFENSE
### Mere Conduit/Lack of Dominion or Control

11.    The Trustee's claims are barred because Schroder AG was not a transferee of any transfers from Fairfield Sentry or Fairfield Sigma. To the extent, if any, that Schroder AG received any transfers from Fairfield Sentry or Fairfield Sigma, Schroder AG (a) received each of such transfers  in good faith, in its capacity as a bank acting as nominee, and for the account and benefit of one or more of its customers; (b) did not have dominion or control or the right to assert dominion or control over any transfers from Fairfield Sentry or Fairfield Sigma or the proceeds thereof or to use any transfers from Fairfield Sentry or Fairfield Sigma or the proceeds thereof for its own purposes; (c) rather, was a mere conduit for its customers; and (d) was obligated to credit any transfers from Fairfield Sentry or Fairfield Sigma to the account and for the benefit of one or more of its customers, who alone had the right to assert dominion and control over any transfers from Fairfield Sentry or Fairfield Sigma received by Schroder AG for their benefit.

## SEVENTH AFFIRMATIVE DEFENSE
### Bankruptcy Code Safe Harbor
### (11 U.S.C. § 546(e))

12.    Any transfers from Fairfield Sentry or Fairfield Sigma that are subsequent transfers or initial transfers that occurred more than two years prior to the Filing Date from BLMIS to Fairfield Sentry or Fairfield Sigma may not be avoided or recovered pursuant to 11 U.S.C. § 546(e), including for each of the reasons stated in Schroder AG's Motion to Dismiss the Complaint, dated March 11, 2022 [Dkt. No. 90] and the associated briefing.

## EIGHTH AFFIRMATIVE DEFENSE
### Initial Transfer Not Avoided
### (11 U.S.C. § 550(a))

13.    The Trustee cannot recover any transfers from Fairfield Sentry or Fairfield Sigma because he has not avoided the initial transfers from BLMIS to Fairfield Sentry or Fairfield Sigma.

### NINTH AFFIRMATIVE DEFENSE
**Single Satisfaction**
**(11 U.S.C. § 550(d))**

14.    Under section 550(d) of the Bankruptcy Code, the Trustee may not recover any subsequent transfer from Schroder AG to the extent he has recovered from Fairfield Sentry or Fairfield Sigma or any other immediate or mediate transferee the amount of the avoided initial transfer that included the customer property that the Trustee alleges Schroder AG received.

### TENTH AFFIRMATIVE DEFENSE
**New York Debtor and Creditor Law**
**(N.Y. Debt & Cred §§ 273-79; 11 U.S.C. § 544)**

15.    The claims against Schroder AG are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

### ELEVENTH AFFIRMATIVE DEFENSE
**New York Debtor and Creditor Law**
**(N.Y. Debt & Cred § 278)**

16.    The claims against Schroder AG are barred, in whole or in part, because any transfers from Fairfield Sentry or Fairfield Sigma were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law, and/or without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

### TWELFTH AFFIRMATIVE DEFENSE
**No Interest**

17.    The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

### THIRTEENTH AFFIRMATIVE DEFENSE
**Extraterritoriality**

18.    The Trustee's recovery from Schroder AG of any transfers from Fairfield Sentry or Fairfield Sigma would constitute an impermissible extraterritorial application of U.S. law.

### FOURTEENTH AFFIRMATIVE DEFENSE
**Comity**

19.    The Trustee's recovery from Schroder AG of any transfer from Fairfield Sentry or Fairfield Sigma would violate principles of comity.

### FIFTEENTH AFFIRMATIVE DEFENSE
**Preservation of Rights**
**(11 U.S.C. § 502(h))**

20.    To the extent the Trustee recovers from Schroder AG, Schroder AG reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

### <u>JURY TRIAL DEMANDED</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Schroder AG hereby demands a jury trial on all claims and issues that may be tried by a jury.

### <u>STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(B)</u>

Schroder AG does not consent to entry of final orders or judgment by the Bankruptcy Court.

### <u>DEFENDANT'S REQUEST FOR RELIEF</u>

WHEREFORE, Schroder AG requests that this Court dismiss the Complaint with prejudice, grant Schroder AG its attorneys' fees, costs, disbursements, and grant such other and further relief as the Court deems just and proper.

Dated:  December 1, 2022
New York, New York

**ROPES & GRAY LLP**

_/s/ Martin J. Crisp_
Martin J. Crisp
Andrew G. Devore
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9193

_Counsel for Defendant Schroder & Co. Bank AG_