**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                             Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                             Defendant. | Adv. Proc. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>                             Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>                             Plaintiff,<br><br>v.<br><br>BANQUE INTERNATIONALE À LUXEMBOURG, S.A. (*f/k/a* Dexia Banque Internationale a Luxembourg S.A.); RBC INVESTOR SERVICES BANK S.A. (*f/k/a/* RBC Dexia Investor Services Bank S.A.); RBC INVESTOR SERVICES TRUST (*f/k/a* RBC Dexia Investor Services Trust); BANCO INVERSIS, S.A., as successor in interest to RBC Dexia Investor Services España S.A.; and BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.),<br><br>                             Defendants | Adv. Pro. No. 12-01698 (CGM) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY BANQUE INTERNATIONALE À LUXEMBOURG, S.A. AND BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A.**

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................... 1

I.   KNOWLEDGE THAT THE FAIRFIELD FUNDS INVESTED IN BLMIS SHOULD NOT BE ENOUGH TO SUPPORT PERSONAL JURISDICTION. ............................................. 1

II.  ALLEGED MEETINGS AND COMMUNICATIONS BETWEEN BIL AND FGG ARE INSUFFICIENT TO SUPPORT PERSONAL JURISDICTION. ........................................ 3

III. ALLEGATIONS CONCERNING USE OF A NEW YORK BANK ACCOUNT ARE INSUFFICIENT TO SUPPORT SPECIFIC PERSONAL JURISDICTION. ....................... 4

Conclusion ............................................................................................................................. 6

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ................................................................................................ 4

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ............................................................................................. 5, 6

*NetJets Aviation, Inc. v. LHC Communications, LLC*,
   537 F.3d 168 (2d Cir. 2008) ....................................................................................... 2

*United States v. Hoskins*,
   44 F.4th 140 (2d Cir. 2022) ....................................................................................... 2

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................. 1, 2

Defendants Dexia Banque Internationale à Luxembourg SA, now known as Banque Internationale à Luxembourg SA ("BIL") and Dexia Private Bank (Switzerland) Ltd., now known as Banque Internationale à Luxembourg (Suisse) S.A. ("BIL Suisse"), by their undersigned counsel, respectfully submit this Reply Memorandum in further support of their Motion to Dismiss the Amended Complaint.

## Preliminary Statement

The Trustee argues that specific person jurisdiction should be assessed based on the totality of the circumstances. (Opp. 10.) We agree. The totality of the circumstances alleged in the Amended Complaint, however, does not support the exercise of personal jurisdiction over BIL or BIL Suisse in this case. The Trustee relies on only a handful of alleged contacts with New York, none of which is alleged with any detail or specificity in the Amended Complaint. Respectfully, more should be required to subject foreign investors, who were themselves victims of the collapse of BLMIS and the Fairfield Funds, to personal jurisdiction in the United States.

## Argument

**I.    KNOWLEDGE THAT THE FAIRFIELD FUNDS INVESTED IN BLMIS SHOULD NOT BE ENOUGH TO SUPPORT PERSONAL JURISDICTION.**

The Trustee argues that a foreign investment in the Fairfield Funds, combined with the knowledge that the Fairfield Funds generally invested heavily in BLMIS, is sufficient to establish specific personal jurisdiction over the foreign investor. We acknowledge that decisions of this Court arising from the liquidation of BLMIS contain language endorsing this knowledge-based approach. (*See* Opp. 11-16.) Respectfully, however, this standard for specific personal jurisdiction is not consistent with controlling precedents and should be reconsidered.

The exercise of personal jurisdiction traditionally has been determined by the defendant's own conduct, and not by the conduct of other parties or the defendant's intent. *See Walden v.*

1

*Fiore*, 571 U.S. 277, 284 (2014).  Here, the Trustee contends that a purely foreign redemption from a Fairfield Fund, combined with the knowledge that the Fairfield Funds invested most of their assets in BLMIS, is equivalent to a redemption by the foreign investor *directly* from BLMIS for purposes of personal jurisdiction.  This should not be the case.  There are well-recognized circumstances in which the conduct of one person may be attributed to another person—for example, when one is the agent or the alter ego of another.  *See, e.g.*, *United States v. Hoskins*, 44 F.4th 140, 149-50 (2d Cir. 2022); *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176-77 (2d Cir. 2008).  No such circumstances are alleged to exist in this case.  The Fairfield Funds certainly are not alleged to be the agents or alter egos of BIL or BIL Suisse.  Accordingly, alleged transactions between the Fairfield Funds and BLMIS should not be viewed as contacts relevant to BIL or BIL Suisse.

Even if the knowledge—as opposed to the conduct—of a defendant can be considered a relevant contact for jurisdictional purposes, it is important to keep in mind that the claims in this case arise from *redemptions* from the Fairfield Funds.  The Amended Complaint contains allegations that BIL and BIL Suisse knew or should have known that the Fairfield Funds invested 95% of their assets in BLMIS.  (Am. Compl. ¶ 69.)  There is no allegation, however, concerning the source of funds for redemptions.  Given that the Fairfield Funds were constantly accepting new investments from subscribers, it is plausible and even likely that many redemption requests were funded by cash on hand at the Fairfield Funds, and not from corresponding withdrawals from BLMIS.  For this reason, it was impossible for BIL or BIL Suisse to know the source of funding for its redemptions.  Perhaps for this reason, the Amended Complaint does not say anything about knowledge of the source of funding for the alleged redemptions by BIL or BIL Suisse.

2

## II. ALLEGED MEETINGS AND COMMUNICATIONS BETWEEN BIL AND FGG ARE INSUFFICIENT TO SUPPORT PERSONAL JURISDICTION.

The Trustee relies heavily on cursory allegations of meetings and communications between BIL and FGG. (Opp. 22-24 (citing Am. Compl. ¶ 65).) Without question, an allegation of physical presence in New York is a contact that could, under the right circumstances, support a finding of specific personal jurisdiction. The allegation of a contact, however, is not enough. There also must be a *connection* between the alleged contact and the subject matter of the lawsuit. Here, the Amended Complaint fails to allege any significant connection between the alleged meetings and the transfers at issue in this case.

As a preliminary matter, it should be noted that the allegations of meetings and other communications apply only to BIL. There are no comparable allegations of meetings or communications involving BIL Suisse. Thus, for BIL Suisse, there is no argument that specific personal jurisdiction arises from physical presence in New York or communications with persons in New York.

Even as to BIL, the Amended Complaint fails to allege any significant connection between the alleged meetings and the redemptions from Fairfield Sentry and Fairfield Sigma at issue in this case. Presumably, the words used in the Amended Complaint were chosen carefully. Paragraph 65 does not say that the subject of these meetings was "redemptions from Fairfield Sentry" and/or "redemptions from Fairfield Sigma." Instead, the allegation refers only to "BLMIS feeder fund investments."[1] From such a vague allegation concerning the subject matter of the alleged meetings, it cannot reasonably be inferred that the alleged meetings had a significant connection to the redemptions at issue in this case.

---

[1] Similarly, with respect to communications, Paragraph 65 says only "concerning its investments."

3

In addition, the alleged meetings are not alleged to be proximate in time with the transfers at issue in this case. The Amended Complaint says only that meetings began "at least as early as 2005." (Am. Compl. ¶ 65.) In contrast, the transfers at issue involving BIL took place over a broad span of time from 2003 through 2008. (*See* Am. Compl. Exs. C, E.) Thus, temporally, there is no reasonable basis to infer a connection between the alleged meetings and the alleged transfers to BIL.

The Trustee contends that even a very weak connection between an alleged forum contact and the transactions at issue should support a finding of specific personal jurisdiction. That is not the law. The Trustee relies on a recent Supreme Court decision, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), for the proposition that a plaintiff's claims need only "relate to" the defendant's contacts with the forum. (Opp. 9.) In articulating that position, however, the Court stressed: "That does not mean anything goes." *Id.* at 1026. The Court went on to clarify: "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* In other words, a mere tenuous connection between the alleged contact and the claim at issue is not enough. There must be a significant connection to support a finding of specific personal jurisdiction. Applying that standard here, the Amended Complaint fails to allege any significant connection between the alleged contacts—meetings and other communications between BIL and FGG—and the alleged transfers to BIL at issue in this case.

### III. ALLEGATIONS CONCERNING USE OF A NEW YORK BANK ACCOUNT ARE INSUFFICIENT TO SUPPORT SPECIFIC PERSONAL JURISDICTION.

The Trustee contends that the use of a New York bank account to receive payments alone may support a finding of personal jurisdiction even if no other contacts exist. (Opp. 18-21.) This argument applies only to some of the redemptions at issue. With respect to redemptions

from Fairfield Sigma, the Amended Complaint does not allege that *any* New York bank account was used. The Trustee simply ignores this inconvenient fact in its opposition brief.

For the alleged transfers from Fairfield Sentry, even the Trustee concedes that use of a New York bank account must be "purposeful" in order to count as a contact for assessing personal jurisdiction. (Opp. 18.) The meaning of this term, however, is not completely clear. The Trustee interprets the meaning to be "intentional" such that any use of a bank account that is not purely accidental should count as a relevant contact. (*See* Opp. 18 ("All that is necessary for 'purposeful' use is that it was not coincidental or passive.") However, this is not the only definition of the term. "Purposeful" can also mean "with a purpose" or "meaningful." (*Purposeful*, MERRIAM-WEBSTER (10th ed. 2001).) Under this interpretation, the use of a New York bank account must be a significant aspect of the transaction at issue.

The principal New York Court of Appeals decision articulating the "purposeful" requirement, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012), supports the interpretation that "purposeful" means "meaningful" and not merely "intentional." The Court of Appeals emphasized that the requisite inquiry "may be complicated by the nature of inter-bank activity, especially given the widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Id.* at 338. This strongly suggests that the mere routine use of a correspondent account to facilitate a transfer having no other connection to New York or the United States should not count as "purposeful."

Here, the Amended Complaint does not allege that the use of New York bank accounts was significant or meaningful for the transfers at issue. In the case of BIL, the Amended Complaint alleges only that such accounts were "designated and used" for US Dollar

5

redemptions from Fairfield Sentry. (Am. Compl. ¶ 73.) In the case of BIL Suisse, the alleged use is not even connected with redemptions from Fairfield Sentry. (*Id.*) There is no allegation that the use of New York bank accounts was necessary, important or significant for any of these alleged transfers. For this reason, the Amended Complaint fails to allege that use of New York bank accounts by BIL or BIL Suisse was "purposeful" in the way required by the *Licci* decision.

## Conclusion

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(2) as to BIL and BIL Suisse for failure to allege a sufficient basis for the exercise of personal jurisdiction.

Dated:  December 1, 2022
        New York, New York

Respectfully Submitted,

CLIFFORD CHANCE US LLP

By: /s/ Jeff E. Butler

Jeff E. Butler
Meredith K. George
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-8000
Email: jeff.butler@cliffordchance.com
Email: meredith.george@cliffordchance.com

*Counsel for Defendants Banque Internationale à Luxembourg SA (f/k/a Dexia Banque Internationale a Luxembourg SA) and Banque Internationale à Luxembourg (Suisse) SA (f/k/a Dexia Private Bank (Switzerland) Ltd.)*