UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

Plaintiff,

Adv. Pro. No. 12-01209 (CGM)

v.

BSI AG., individually and as a successor in interest to BANCO DEL GOTTARDO AG,

Defendant.

## AMENDED MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
By:     Robert D. Beckerlegge (on the papers)
        David J. Sheehan

*Attorneys for Defendant, BSI AG.*
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
By:    Adam M. Lavine (on the papers)
        Zachary D. Rosenbaum
        Donna (Dong Ni) Xu

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion by the Defendant, BSI AG ("BSI" or the

"Defendant"), individually and as a successor in interest to Banca[1] Del Gottardo AG ("BDG"), to

dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Defendant seeks dismissal for lack of personal

jurisdiction, failure to allege that Defendant received customer property, and failure to state a

claim for relief due to the safe harbor provision of the Bankruptcy Code.  Defendant further

argues that the Court should dismiss the complaint due to the affirmative defense of good faith

under Section 550(b).  For the reasons set forth below, the motion to dismiss is denied in its

entirety.

## <u>Jurisdiction</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

---

[1] This case is captioned with Banca del Gottardo misspelled as "Banco del Gottardo."

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on March 23, 2012.  Compl., ECF[2] No. 1.  Via the amended complaint (the "Complaint"), the Trustee seeks to recover nearly $61 million in subsequent transfers made to Defendant. Am. Compl. ¶ 2, ECF No. 116.  The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma").  *Id.* ¶¶ 4–5.  Fairfield Sentry and Fairfield Sigma (collectively, the "Fairfield Funds") are referred to as "feeder funds" because the intention of the funds was to invest in BLMIS.  *Id.* ¶¶ 2, 4.

---

[2] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01209-cgm.

BSI and BDG were multi-billion-dollar private banks, offering investment management services. *Id.* ¶ 3. BSI is a *société anonyme* with a place of business located in Switzerland. *Id.* ¶ 54. BDG was likewise a *société anonyme* with a place of business located in Switzerland. *Id*. ¶ 56. In March 2008, BSI acquired BDG and created a new *société anonyme* while retaining its name, BSI AG. *Id.* ¶ 57.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶ 78. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 79. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. Settlement Agreement ¶ 23, 09-01239-cgm, ECF No. 69. The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendant to recover the approximately $3 billion in missing customer property.

Defendant argues that the Trustee has failed to plead personal jurisdiction and plausibly allege that Defendant received customer property. Defendant further argues that the Court should dismiss the complaint due to the affirmative defense of good faith under Section 550(b) and that Bankruptcy Code Section 546(e) bars the trustee's claims. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

### Personal Jurisdiction

Defendant objects to the Trustee's assertion of personal jurisdiction. The Trustee argues in the Complaint that Defendant purposefully availed itself of the laws of the United States and

New York by directing funds to be invested with New York-based BLMIS through Fairfield

Sentry.  Am. Compl. ¶ 59, ECF No. 116.

      To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP

Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

      "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendant "knowingly direct[ed] funds to be

invested with New York-based BLMIS through Fairfield Sentry."  Am. Compl. ¶ 59, ECF No.

116.  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over

Defendant in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations

need not be factually supported.  *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722

F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery).  In order to

be subjected to personal jurisdiction in the United States, due process requires that a defendant

have sufficient minimum contacts with the forum in which defendant is sued "'such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012)

("*BLI*") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and

affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in

their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)

(quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP

Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the forum
> State or have purposefully directed its conduct into the forum State.  Second, the
> plaintiff's claim must arise out of or relate to the defendant's forum conduct.
> Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there."  *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction."  *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

Defendant argues that the Trustee has failed to allege sufficient minimum contacts with the United States. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that Defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry" and "received at least 195 Fairfield Sentry redemption payments into correspondent accounts at HSBC USA in New York." Am. Compl. ¶¶ 59, 69, ECF No. 116. Defendant directed subscription payments to Fairfield Sentry's designated bank accounts in the United States, which were then used to deposit into BLMIS's account at JPMorgan Chase Bank NA in New York. *Id.* ¶ 70. The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference at paragraph 82 of this Amended Complaint).

The Complaint alleges further that Defendant understood BLMIS's role as the investment adviser, broker-dealer, and custodian for Fairfield Sentry. Am. Compl. ¶ 66, ECF No. 116 ("In the subscription agreements, BSI and BDG each affirmed that they received and read the relevant Fairfield Fund's information memo or Private Placement Memoranda ('PPM'). . . . At least one PPM applicable to BSI's and BDG's investments specifically mentioned that BLMIS would serve as sub-custodians for certain assets of Fairfield Sentry and that BLMIS held

approximately 95% of the fund's assets."). Employees and agents of the Defendant located in

New York communicated with the Fairfield Greenwich Group, a New York partnership and the

operator of the Fairfield Funds, to discuss BSI's investments with Fairfield Sentry and Fairfield

Sigma. *Id.* ¶ 60. Employees of BDG communicated regularly with Jeffrey Tucker and other

Fairfield Greenwich Group employees in New York. *Id.* ¶ 62. BSI and BDG both used advisors

in New York to provide advice for investing with the Fairfield Funds and BLMIS. *Id.* ¶¶ 61, 63.

One New York-based advisor of BDG met with a partner of Fairfield Greenwich Group

regarding investments with the Fairfield Funds. *Id.* ¶ 63.

     The Trustee has submitted additional evidence in response to the motion to dismiss.

Attached as exhibits to the Beckerlegge Declaration, the Trustee has provided evidence that BSI

personnel communicated with Fairfield Greenwich Group employees regarding Defendant's

investments with the Fairfield Funds. Beckerlegge Decl. Ex. 3, ECF No. 130 (showing an email

exchange between Robert Puccio, at "BSI-Advisors.com" and Philip J. Toub, at "fggus.com,"

concerning investments with Fairfield Sentry). Emails show that Fairfield Greenwich Group

personnel met with representatives of Defendant in Miami to discuss "interest[] in restarting the

process with FGG products especially Fairfield Sentry Ltd. (Class B)." *Id.* Exs. 1, 4.

**Arise out of or relate to the defendant's forum conduct**

     As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the

Court need only find "an affiliation between the forum and the underlying controversy."

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's

contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is

not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against BSI for monies it received

from the Fairfield Funds.  Am. Compl. ¶¶ 100–02, ECF No. 116.  These allegations are directly

related to investment activities with Fairfield and BLMIS.  *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct.  *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over BSI is reasonable and "comport[s] with fair play and substantial

justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations

omitted).  Factors the Court may consider include the burden on the defendant, the forum State's

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective

relief, the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. BSI has actively participated in this Court's litigation for over ten years. It is represented by highly competent U.S. counsel and submitted to the jurisdiction of New York courts when it signed subscription agreements with the Fairfield Funds. The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P.* (*In re BLMIS*), 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais* (*In re BLMIS*), 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp.* (*In re BLMIS*), 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to the subsequent transfers that originated with BLMIS. And by alleging that Defendant used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d at 105. The Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent transfers at issue in this Complaint.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $60.9 million of subsequent transfers

made to BSI and BDG by the Fairfield Funds.  Am. Compl. ¶¶ 2, 85–98, ECF No. 116.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover

avoided transfers of customer property from initial transferees as well as from "any immediate or

mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent

transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a

subsequent transferee of that initial transferee, that is, that the funds at issue originated with the

debtor."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018);

*see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC

115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11

U.S.C. § 546(e)).  "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial

intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the

subsequent transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re Sharp Int'l Corp.*),

403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36

(Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12

F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  The plaintiff's burden at the pleading stage does not require exact accounting of the

funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary

vital statistics – the who, when, and how much – of the purported transfers to establish an entity

as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading

stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is

avoidable, he is not required to avoid the transfer received by the initial transferee before

asserting an action against subsequent transferees. The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l,*

*Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against

Fairfield Sentry in adversary proceeding 09-01239. Am. Compl. ¶ 82, ECF No. 116 ("The

Trustee incorporates by reference the allegations contained in the Second Amended Complaint as

if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, and 315-16.").

Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer,

is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)
(cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.
Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference
elsewhere in the same pleading or in any other pleading or motion." The district court has
already found that adoption by reference of the entire Fairfield Amended Complaint is proper.
*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36
(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services
incorporates by reference the complaints against Kingate and Fairfield, including the allegations
concerning the avoidability of the initial transfers, and further alleges the avoidability of these
transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and
Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

Defendant has not objected to the adoption of the Fairfield Amended Complaint.
Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded,
with particularity, the avoidability of the initial transfers due to the Fairfield Funds' knowledge
of BLMIS' fraud. Fairfield Compl. ¶¶ 315–16, Adv. Pro. No. 09-01239, ECF No. 286; *see also*
*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36
(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to
the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the
Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a

transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial

institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. §

546(e).

The safe harbor "is an affirmative defense, but it can be raised in the context of a motion

to dismiss if the complaint and other documents that the Court can consider establish it and

'where the facts are not in dispute, or where there is already a sufficiently detailed factual record

to decide whether the applicable statutory definitions are met, such that the application of

Section 546(e) presents a straightforward question of statutory interpretation of the type that is

appropriately resolved on the pleadings.'" *Halperin v. Morgan Stanley Inv. Mgmt.* (*In re Tops*

*Holding II Corp.*), No. 18-22279 (RDD), Adv. No. 20-08950 (RDD), 2022 WL 6827457, at *9

(Bankr. S.D.N.Y. Oct. 12, 2022) (quoting *Bankr. Estate of Norkse Skogindustrier ASA v. Cyrus*

*Capital Partners*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021)). "By its terms, the safe harbor is a

defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee

fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case

here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those

funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid

and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors.  If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account.  In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on

other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6,

2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard

v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7

(S.D.N.Y. Nov. 3, 2022).

The Trustee alleges in the Complaint that "Fairfield Sentry received each of the Fairfield

Sentry Initial Transfers with actual knowledge of fraud at BLMIS, or, at a minimum, while

aware of suspicious facts that would have led Fairfield Sentry to inquire further into the BLMIS

fraud."  Am. Compl. ¶ 82, ECF No. 116.  For further support, the Complaint adopts the Fairfield

Amended Complaint in full.  *Id.*

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 9, Adv. Pro. No. 09-1239, ECF No. 286. ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12-MC-115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").  And, "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract," this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *Id.*

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Defendant raises *Fairfield III* in support of their argument that the safe harbor should bar these claims. *Fairfield Sentry Ltd. V. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-13164 (SMB), 2020 WL 7345988, at *5 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield*

III"), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB),

2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022). This argument fails for two reasons. First, and

most obviously, Fairfield III was a holding in Fairfield Sentry's chapter 15 case, which is not

binding on the Court in this adversary proceeding. Whereas the district court's decision

in *Cohmad*, 2013 WL 1609154, at *10, which holds that the safe harbor does not apply in this

exact situation, is binding on the Court on this issue. Second, the issue in *Fairfield III* is not

comparable. The Court found that the Liquidators had not met their pleading burden and were

not permitted to amend their complaints. *Fairfield III*, 2020 WL 7345988, at *9 (Bankr.

S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint **_alleges_** that the [Fairfield] Funds were

duped, believing that their BLMIS investments were worth what the BLMIS monthly statements

showed. The Funds were the transferors and if they were duped, they could not have intended to

'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they

believed to be accurate.") (emphasis added). In *Fairfield III*, Fairfield Sentry was the initial

transferor, not the initial transferee as it is here. And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied. Here, the Trustee has sufficiently pleaded

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS's

transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with BSI

and BDG (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the

pleadings. If such a fact-specific determination is needed, the Court will make it with the benefit

of a "full factual record." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502

(JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

BSI argues that the safe harbor prevents the Trustee from avoiding the subsequent

transfers between the Fairfield Funds and Defendant on account of the securities contract

between BLMIS and its customers and the securities contracts between the Fairfield Funds and

Defendant.  Def.'s Mem. 27, ECF No. 123.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

Defendant's reliance on *Cohmad*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), is

unavailing.  In *Cohmad*, Judge Rakoff laid out the requirement for recovery of a fraudulent

transfer from a subsequent transferee: "the Trustee must first show that the initial transfer of that

property by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance

provisions (e.g., 11 U.S.C. §§ 544, 547 & 548)."  *Id.*  This requirement is subject to a rule

allowing a subsequent transferee to raise a Section 546(e) defense "even if the initial (or

mediate) transferee fails to raise a Section 546(e) defense."  *Id.*  There is "one caveat" to this

rule: "to the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* As Judge Rakoff explained, this caveat follows from the general principles of recovery: "[a] defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)." *Id.* (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 707 (11th Cir.2005)).

Judge Rakoff has further clarified the inapplicability of the safe harbor to transfers such as those made to BSI. *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[*Cohmad*] simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."). Where Section 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Id.* To the extent that Defendant seeks to apply Section 546(e) to a transfer made in connection with a securities contract between it and the Fairfield Funds not involving BLMIS, this issue is "fact-intensive" and better addressed at a later stage of litigation. *Id.* *8.

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, "the Fairfield Sentry-BSI Subsequent Transfers total at least $27,315,638" and the "Subsequent Transfers [from Fairfield Sentry to BDG] total at least $20,270,860." Am. Compl. ¶¶ 85, 89, Adv. Pro. No. 09-01239, ECF No. 116. The Trustee has further pleaded that, based on its investigations to date, following the transfer of $772,690,257 from Fairfield Sentry to Fairfield Sigma, "Fairfield Sigma transferred at least $8,695,673 to BSI" and "Fairfield Sigma transferred at least $4,622,074 of the

Fairfield Sigma Subsequent Transfers to BDG." Am. Compl. ¶¶ 92–93, 96, ECF No. 116.

These exhibits provide BSI with the "who, when, and how much" of each transfer. *Picard v.*

*BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

      BSI argues that the Trustee's "barebones" allegations that the subsequent transfers made

to Defendant by the Fairfield Funds consisted of BLMIS customer property are "facially

implausible." Def.'s Mem. 34, ECF No. 123 ("[T]he Trustee is endeavoring to recover over $2

billion more than the total amount that the Trustee himself alleges that BLMIS transferred to

Sentry. As such, the Trustee's theory that all of the redemption payments are customer property

is not merely implausible, it is mathematically impossible."). Rule 8(a) governs the Trustee's

pleading burden and a short and plain statement that the pleader is entitled to relief is all that is

required. Fed. R. Civ. P. 8(a). This standard of pleading is meant to ensure that the defendant

has proper notice of the claim, while recognizing the limitations a plaintiff may have in setting

out each detail of the claim before discovery. *In re Enron Corp.*, No. 01-16034 AJG, 2006 WL

2400369, at *4 (Bankr. S.D.N.Y. May 11, 2006). In a subsequent transfer claim, this means only

that a defendant must be adequately apprised of the subsequent transfers that the Trustee seeks to

recover. *Picard v. Cohmad (In re BLMIS)*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011)

("*Cohmad II*").

      The Complaint and attached exhibits provide Defendant with the "who, when, and how

much" of each transfer. *Cohmad II*, 454 B.R. at 340; Am. Compl. ¶¶ 85–98, ECF No. 116; Am.

Compl. Exs. C–G, ECF No. 116 (indicating the dates and amounts of the transfers in question

from Fairfield Sentry and Fairfield Sigma to Defendant); *cf. Picard v. Shapiro (In re BLMIS)*,

542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the

initial transferee made any subsequent transfers.).

To the extent that Defendant argues that the Court must consider the aggregate amount all

of the subsequent transfer cases pending before this Court in order to determine the feasibility of

the allegations in this Complaint, that task is not required at this stage of the litigation.  The other

complaints have not been adopted by reference by the Trustee in this adversary proceeding and,

as such, are not within the Court's power to consider on a Rule 12(b)(6) motion.  *Williams v.*

*Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to

dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the

four corners of the complaint, to documents attached to the complaint, or to documents

incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d

768, 776 (2d Cir. 2002)).

The Trustee "can sue each transferee for [the amount of the initial transfer]. For this

reason, the aggregate subsequent transfer claim can greatly exceed the amount of the initial

transfer." *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014).  In order

to ultimately determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need to review financial documents in order to trace the monies to all

of Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation.  At this stage, the Trustee need only assert plausible allegations that

Defendant received BLMIS monies.

The Fairfield Amended Complaint, which is incorporated by reference into this

complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.

Fairfield Compl. ¶ 89, Adv. Pro. No. 09-1239, ECF No. 286; *see also id.* ¶ 91 ("From the

beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry

ceded control of not only its investment decisions, but also the custody of its assets, to

BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that

were not customer property. Taking all allegations as true and reading them in a light most

favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer

property because Fairfield Sentry did not have other property to give. The calculation of

Fairfield Sentry's customer property and what funds it used to make redemption payments are

issues of fact better resolved at a later stage of litigation.

**Affirmative Defenses**

BSI argues that this Court should dismiss the Trustee's complaint because it took for

value, in good faith, and without knowledge of the voidability of the transfer.

i.      *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received. The Complaint contains no mention of BSI's exchanging shares for

consideration. Am. Compl. ¶¶ 85–103, ECF No. 116. Therefore, the "value" defense is not

asserted on the face of the Complaint.

Defendant argues that the payments it received from the Fairfield Funds were given in

exchange for the redemption of shares in the Fairfield Sentry fund. Def.'s Mem. 36, ECF No.

123. If Defendant knew at the time it redeemed its shares that the shares were worthless, then it

did not receive the subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  It has not yet been determined whether Defendant knew if the shares it redeemed from Fairfield Sentry had value.

"Value" is Defendant's burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

ii.    *Good Faith*

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022),] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

iii.    *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry into what BSI subjectively knew; "whether these facts put [BSI] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the [BSI]'s position to conduct further inquiry into a debtor-transferor's possible fraud; and whether "diligent inquiry by [BSI] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

## <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

**Dated: December 2, 2022**
**Poughkeepsie, New York**

Page **27** of **27**