KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendant*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) )  **Adv. Pro. No. 08-1789 (CGM)** |
| Plaintiff-Applicant, | ) |
| v. | )  **SIPA Liquidation** |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | )  **(Substantively Consolidated)** )  ) |
| Defendant. | ) |
| In re: | ) ) |
| BERNARD L. MADOFF, | ) ) |
| Debtor. | ) ) ) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | ) ) ) |
| Plaintiff, | )  **Adv. Pro. No. 12-01669 (CGM)** ) |
| v. | ) )  **ANSWER WITH** |
| | )  **AFFIRMATIVE DEFENSES** )  **AND JURY DEMAND** |
| Barfield Nominees Ltd., | ) ) |
| Defendant. | ) ) ) ) |

Defendant Barfield Nominees Ltd. (hereinafter, "Barfield"), by its undersigned counsel, as

and for its Answer to the Complaint of plaintiff Irving H. Picard (the "Trustee" or "Plaintiff"),

Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the

Chapter 7 Estate of Bernard L. Madoff, respectfully avers as follows:[1]

## I.    NATURE OF THE ACTION[2]

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover
BLMIS Customer Property that was stolen as part of the massive Ponzi scheme perpetrated by
Bernard L. Madoff ("Madoff") and others.

**Response**:    Barfield denies the allegations of paragraph 1 of the Complaint, except

admits upon information and belief that Madoff perpetrated a Ponzi scheme and admits that the

Trustee purports to bring this adversary proceeding as part of the Trustee's efforts to recover

BLMIS customer property within the meaning of 15 U.S.C. § 78*lll*(4).

2.    With this Complaint, the Trustee seeks to recover at least $70,083,978 in
subsequent transfers of Customer Property collectively made to the Barfield Defendants by
Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate Global")
(collectively, the "Feeder Funds"), which were Madoff feeder funds. Fairfield Sentry and Kingate
Global are British Virgin Islands ("BVI") companies that are in liquidation in the BVI. The Feeder
Funds had direct customer accounts with BLMIS's investment advisory business ("IA Business")
for the purpose of investing assets with BLMIS, and each of the Feeder Funds maintained in excess
of 95% of their assets in their BLMIS customer accounts.

**Response**:    Barfield denies the allegations of paragraph 2 of the Complaint, including

that Barfield received subsequent transfers of customer property from BLMIS or any Madoff

feeder fund, except Barfield admits that the Trustee alleges claims to recover approximately

$70,083,978 in alleged subsequent transfers to Barfield, and that, on information and belief,

Fairfield Sentry and Kingate Global were Madoff feeder funds and BVI companies that had direct

---

[1] Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern
Trust Corporation ("Northern Trust") was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-
01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust.
[2] Barfield deems the section headings in the Complaint not to constitute allegations of the Complaint. To the extent
any section headings are allegations, Barfield admits or denies them consistent with its responses to the allegations
contained in the numbered paragraphs of the Complaint.

customer accounts with BLMIS's investment advisory business. On March 8, 2022, the Trustee

and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to

recover subsequent transfers that Barfield allegedly received from Kingate Global. Adv. Pro. No.

12-01669 ECF 85. Thus, Barfield is not required to respond to allegations of paragraph 2 as they

relate to the alleged subsequent transfers from Kingate Global to Barfield, and to the extent

necessary, denies those allegations.

3.      When the Barfield Defendants received the subsequent transfers of BLMIS
Customer Property, Defendant Northern Trust was a global provider of investment management
and financial services to corporations, institutions, and high net worth individuals, and Defendant
Barfield Nominees was a Guernsey subsidiary of Defendant Northern Trust.

**Response**:      Pursuant to the Stipulation and Order entered into between the Trustee and

Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice.

Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations

as they relate to Northern Trust, and Barfield otherwise denies the allegations of paragraph 3 of

the Complaint, except admits that Barfield is a Guernsey subsidiary of Northern Trust.

## II.    **JURISDICTION AND VENUE**

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority
under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title
11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"); and the New
York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279
(McKinney 2001), to obtain avoidable and recoverable transfers received by the Barfield
Defendants as subsequent transferees of funds originating from BLMIS.

**Response**:      Barfield states that the allegations of paragraph 4 of the Complaint set forth

legal conclusions to which no response is required. To the extent that a response is required,

pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22,

2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-

01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to

2

Northern Trust, and Barfield admits that the Trustee has brought this adversary proceeding, but

denies the remaining allegations of paragraph 4 of the Complaint.

5.     This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al., No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response**:     Barfield admits the allegations of the first sentence of paragraph 5 of the

Complaint. Barfield denies knowledge or information sufficient to form a belief as to the truth of

the allegations of the second sentence of paragraph 5. Barfield states that the third sentence of

paragraph 5 sets forth legal conclusions to which no response is required, but to the extent that a

response is required, Barfield denies that this Court has jurisdiction to enter a final order or

judgment in this proceeding.

6.     The Barfield Defendants are subject to personal jurisdiction in this judicial district because they purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through the Feeder Funds. The Barfield Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds.

**Response**:     Pursuant to the Stipulation and Order entered into between the Trustee and

Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice.

Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations

as they relate to Northern Trust, and Barfield otherwise denies the allegations of paragraph 6 of

the Complaint.

7.     By directing investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund, the Barfield Defendants knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. The Barfield Defendants entered into a subscription agreement with Fairfield Sentry under which they submitted to New York jurisdiction, sent a copy of the agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. The Barfield

3

Defendants thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. Barfield states that the allegations of paragraph 7 set forth legal conclusions to which no response is required. To the extent that a response is required, Barfield denies the allegations of paragraph 7 of the Complaint.

8.    The Barfield Defendants are also subject to the jurisdiction of this Court because they have filed customer claims with the Trustee, thereby invoking the jurisdiction of this Court. The Trustee has designated the Barfield Defendants' customer claims as Claims 5476 and 8904.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. Barfield states that the allegations of paragraph 8 set forth legal conclusions to which no response is required.  To the extent that a response is required, Barfield denies the allegations of the first sentence of paragraph 8 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 8 of the Complaint.

9.    The Barfield Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules §§ 301 and 302 (McKinney 2001) and Rule 7004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations

as they relate to Northern Trust. Barfield states that the allegations of paragraph 9 set forth legal conclusions to which no response is required. To the extent that a response is required, Barfield denies the allegations of paragraph 9 of the Complaint.

10.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response**:    Barfield states that the allegations of paragraph 10 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Barfield denies the allegations in paragraph 10 of the Complaint. Barfield does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court.

11.    Venue in this District is proper under 28 U.S.C. § 1409.

**Response**:    Barfield admits the allegations of paragraph 11 of the Complaint.

## III.    **BACKGROUND**

12.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**Response**:    Barfield admits on information and belief that Madoff was arrested on or around the Filing Date as alleged in the first sentence of paragraph 12 of the Complaint. Barfield denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Complaint.

13.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint, and otherwise refers the Court to the order issued by the Honorable Louis L. Stanton for its complete and accurate contents.

14.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").

Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 14 of the Complaint, and otherwise refers the Court to the

application filed by SIPC alleged in paragraph 14 for its complete and accurate contents.

15.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

> a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); andc. removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 15 of the Complaint, and otherwise refers the Court to the

order issued by Judge Stanton alleged in paragraph 15 for its complete and accurate contents.

16.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 16 of the Complaint, and otherwise refers the Court to the

orders issued by the Court alleged in paragraph 16 for their complete and accurate contents.

17.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned United States v. Madoff, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Id. at 1. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." Id. On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response**:        Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 17 of the Complaint, and otherwise refers to the transcript

of the plea hearing alleged in paragraph 17 for its complete and accurate contents.

18.        On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to
participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11,
2009, in the case entitled United States v. DiPascali, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug.
11, 2009), DiPascali pled guilty to a ten-count criminal information.

**Response**:        Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 18 of the Complaint, and otherwise refers the Court to the

alleged indictment and transcript of the referenced plea hearing for their complete and accurate

contents.

## IV.    TRUSTEE'S POWERS AND STANDING

19.        As Trustee appointed under SIPA, the Trustee is charged with recovering and
paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other
assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of
marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present
assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested
with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA
and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that
received preferences and fraudulent transfers to the detriment of defrauded customers whose
money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee
will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-
2(c)(1).

**Response**:        Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 19 of the Complaint, and states that the allegations

concerning the Trustee's authority under SIPA and the Bankruptcy Code set forth legal

conclusions to which no response is required. To the extent a response is required, Barfield denies

such allegations.

20.        Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee
in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-

1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response**:    Barfield states that the allegations of paragraph 20 of the Complaint set forth legal conclusions to which no response is required. To the extent a response is required, Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.    Under SIPA §§ 78fff(b) and 78111(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response**:    Barfield states that the allegations of paragraph 21 of the Complaint set forth legal conclusions to which no response is required.

22.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**Response**:    Barfield states that the allegations of paragraph 22 of the Complaint set forth legal conclusions to which no response is required.

## V.    THE DEFENDANTS

23.    Defendant Barfield Nominees is a Guernsey limited company that maintains a place of business at Trafalgar Court, Les Banques, St. Peter Port, Guernsey,  GYI 3DA. Defendant Barfield Nominees is a subsidiary of Defendant Northern Trust through Northern Trust Fiduciary Services (Guernsey) Limited that is 99% owned by Defendant Northern Trust.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. At the times relevant to the Complaint, Barfield admits that it was a limited company, located at Trafalgar Court, Les Banques, St. Peter Port, Guernsey,  and that it

is a subsidiary of Northern Trust Fiduciary Services (Guernsey) Limited, and otherwise denies the allegations of paragraph 23 of the Complaint.

24.    Defendant Northern Trust is a Chicago corporation that maintains a place of business at 50 South LaSalle Street, Chicago, Illinois 60603.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust.

25.    Upon information and belief, the Barfield Defendants collectively function as one entity for all of the purposes herein.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. Barfield otherwise denies the allegations of paragraph 25 of the Complaint.

## VI.    THE PONZI SCHEME

26.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint.

27.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he

would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 27 of the Complaint.

28.    The second part of the SSC Strategy was a hedge of Madoffs stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 28 of the Complaint.

29.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 29 of the Complaint, and otherwise refers to the plea

allocution of Madoff and the corresponding plea hearing transcript for their complete and accurate

contents.

30.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 30 of the Complaint.

31.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**Response**:    Barfield admits upon information and belief that BLMIS claimed to invest

money deposited by customers in securities, but otherwise denies knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 of the

Complaint.

32.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 32 of the Complaint.

33.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 33 of the Complaint.

34.    Madoffs scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response**:    Barfield admits upon information and belief that Madoff's business

continued until December 2008, but otherwise denies knowledge or information sufficient to form

a belief as to the truth of the remaining allegations of paragraph 34 of the Complaint.

35.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no

investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoffs arrest, investors had already lost approximately $20 billion in principal.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint.

36.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint.

## VII.    THE TRANSFERS

37.    The Feeder Funds received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to the Barfield Defendants.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. Barfield admits that it received funds from Fairfield Sentry, but denies that such funds constitute subsequent transfers of Customer Property or any other property transferred from BLMIS to Fairfield Sentry, and denies the remaining allegations of paragraph 37 of the Complaint.

### A.  FAIRFIELD SENTRY

#### 1. Initial Transfers from BLMIS to Fairfield Sentry

38.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption Picard v. Fairfield Sentry Ltd., et al., Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**Response**:        Barfield (i) admits that the Trustee filed an action styled as Picard v. Fairfield Sentry, Ltd., et al., Adv. Pro No. 09-1239 (BRL) (the "Sentry Action"), (ii) lacks knowledge and information sufficient to form a belief as to the truth of the allegation of the amounts of the alleged transfers alleged in paragraph 38 and therefore denies such allegations; (iii) lacks knowledge sufficient to form a belief as to which of the three complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action and therefore denies such allegations, (iv) denies that the initial transfers of Customer Property to Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (v) to the extent necessary to support such denial, denies for lack of knowledge or information sufficient to form a belief as to the truth of the allegations, each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Sentry are or were avoided or avoidable, and (vi) objects to the incorporation by reference of, and therefore does not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, Barfield lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint and therefore denies such allegations.

39.        During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $2,985,136,619 (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78111(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegation of the timing and amounts of the alleged transfers alleged in paragraph 39 of the Complaint, and states that the remaining allegations set forth legal conclusions to which no response is required. To the extent a response is required as to such allegations, Barfield denies such allegations in paragraph 39 of the Complaint.

40.    The Fairfield Sentry Six Year Initial Transfers include approximately $1,614,067,088 which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the alleged timing and amounts of the transfers alleged in paragraph 40 of the Complaint, and therefore denies such allegations. Barfield states that the remaining allegations set forth legal conclusions to which no response is required. To the extent a response is required, Barfield denies the allegations in paragraph 40.

41.    The Fairfield Sentry Two Year Initial Transfers include approximately $1,134,628,244 which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to the alleged timing and amounts of the transfers alleged in paragraph 41 of the Complaint, and therefore denies such allegations. Barfield states that the remaining allegations set forth legal conclusions to which no response is required. To the extent a response is required, Barfield denies the allegations in paragraph 41.

14

42.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**Response**:    Barfield lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore denies such allegations.

43.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**Response**:    Barfield admits upon information and belief that the Court approved the settlement described in paragraph 43 of the Complaint and entered a judgment as described in paragraph 43 on or about the dates alleged therein, and refers to the referenced settlement agreement and the referenced judgment for their complete and accurate contents.

## 2. Subsequent Transfers from Fairfield Sentry to the Barfield Defendants

44.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, the Barfield Defendants and is recoverable from the Barfield Defendants pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $16,178,329 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to the Barfield Defendants (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**Response**:    Pursuant to the Stipulation and Order entered into between the Trustee and Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice. Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations as they relate to Northern Trust. Barfield states that the first sentence of paragraph 44 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Barfield denies the allegations in the first sentence of paragraph 44 of the Complaint.

For the second sentence of paragraph 44 of the Complaint, Barfield admits that funds were sent

from Fairfield Sentry to accounts maintained at Barfield, denies that any of such funds constitute

subsequent transfers of Customer Property or any other property transferred from BLMIS to

Fairfield Sentry, and denies any remaining allegations of paragraph 44.

45.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i)
supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent
Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**:    Barfield denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 45 of the Complaint.

## B. KINGATE GLOBAL

### 1. Initial Transfers from BLMIS to Kingate Global

46.    The Trustee has filed an adversary proceeding against Kingate Global and other
defendants in the Bankruptcy Court under the caption *Picard v. Kingate Global Fund, et al.*, Adv.
Pro. No. 10-05310 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers
of Customer Property from BLMIS to Kingate Global in the amount of approximately
$437,501,112 (the "Kingate Global Complaint"). The Trustee incorporates by reference the
allegations contained in the Kingate Global Complaint as if fully set forth herein.

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 46 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield (i) admits that the Trustee

filed an action styled as *Picard v. Kingate Global Fund, et al.*, Adv. Pro. No. 10-05310 (BRL) (the

"Kingate Action"), (ii) lacks knowledge and information sufficient to form a belief as to the truth

of the allegation of the amounts of the alleged transfers alleged in paragraph 46 and therefore

denies such allegations; (iii) lacks knowledge sufficient to form a belief as to which of the

complaints filed in the Kingate Action the Trustee purports to incorporate by reference in the

Complaint in this action and therefore denies such allegations, (iv) denies that the initial transfers

of Customer Property to Kingate the Trustee seeks to avoid and recover in the Kingate Action

were avoided or are avoidable, (v) to the extent necessary to support such denial, denies for lack

of knowledge or information sufficient to form a belief as to the truth of the allegations, each and

every paragraph of each of the complaints filed in the Kingate Action that supports the claim that

any initial transfers of Customer Property to Kingate are or were avoided or avoidable, and (vi)

objects to the incorporation by reference of, and therefore does not answer, each and every other

paragraph and allegation in the complaints in the Kingate Action and to the inclusion in this

adversary proceeding of any issue implicated by any of the complaints in the Kingate Action other

than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but

reserves the right to rely on and introduce any allegations in the referenced "Kingate Global

Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents.

To the extent any further response is required, Barfield lacks knowledge sufficient to form a belief

as to the truth of the remaining allegations in paragraph 46 of the Complaint and therefore denies

such allegations.

47.    During the six years preceding the Filing Date, BLMIS made transfers to Kingate
Global of approximately $398,704,065 (the "Kingate Global Six Year Initial Transfers"). The
Kingate Global Six Year Initial Transfers were and continue to be Customer Property within the
meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551
of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA,
particularly SIPA § 78fff-2(c)(3).

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 47 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield denies knowledge or

information sufficient to form a belief as to the truth of the allegation of the timing and amounts

of the alleged transfers alleged in paragraph 47 of the Complaint, and states that the remaining

allegations set forth legal conclusions to which no response is required. To the extent a response

is required as to such allegations, Barfield denies such allegations in paragraph 47 of the

Complaint.

48.    The Kingate Global Six Year Initial Transfers include approximately $163,447,509
which BLMIS transferred to Kingate Global during the two years preceding the Filing Date (the
"Kingate Global Two Year Initial Transfers"). The Kingate Global Two Year Initial Transfers
were and continue to be Customer Property within the meaning of SIPA § 78111(4), and are
avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-
279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 48 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield denies knowledge or

information sufficient to form a belief as to the truth of the allegation of the timing and amounts

of the alleged transfers alleged in paragraph 48 of the Complaint, and states that the remaining

allegations set forth legal conclusions to which no response is required. To the extent a response

is required as to such allegations, Barfield denies such allegations in paragraph 48 of the

Complaint.

49.    The Kingate Global Two Year Initial Transfers include approximately
$101,753,145 which BLMIS transferred to Kingate Global during the 90 days preceding the Filing
Date (the "Kingate Global Preference Period Initial Transfers"). The Kingate Global Preference
Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA §
78111(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy
Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not required to respond to allegations of paragraph 49 as they relate to the alleged subsequent transfers from Kingate Global to Barfield, and to the extent necessary, Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegation of the timing and amounts of the alleged transfers alleged in paragraph 49 of the Complaint, and states that the remaining allegations set forth legal conclusions to which no response is required. To the extent a response is required as to such allegations, Barfield denies such allegations in paragraph 49 of the Complaint.

50.    The Kingate Global Six Year Initial Transfers, the Kingate Global Two Year Initial Transfers, and the Kingate Global Preference Period Initial Transfers are collectively defined as the "Kingate Global Initial Transfers." Charts detailing these transfers are attached as Exhibits D and E.

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not required to respond to allegations of paragraph 49 as they relate to the alleged subsequent transfers from Kingate Global to Barfield, and to the extent necessary, Barfield denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint.

## 2. Subsequent Transfers from Kingate Global to the Barfield Defendants

51.    A portion of the Kingate Global Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, the Barfield Defendants and is recoverable from the Barfield Defendants pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $53,905,649 of the money transferred from BLMIS to Kingate Global was subsequently transferred by Kingate Global to the

Barfield Defendants (the "Kingate Global Subsequent Transfers"). A chart setting forth the presently known Kingate Global Subsequent Transfers is attached as Exhibit F.

**Response**:        Pursuant to the Stipulation and Order entered into between the Trustee and

Barfield on July 22, 2022, Northern Trust was dismissed from this proceeding without prejudice.

Adv. Pro. No. 12-01669 ECF 96. Accordingly, Barfield is not required to respond to the allegations

as they relate to Northern Trust. On March 8, 2022, the Trustee and counsel for Barfield entered

into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that

Barfield allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield

is not required to respond to allegations of paragraph 51 as they relate to the alleged subsequent

transfers from Kingate Global to Barfield, and to the extent necessary, Barfield states that the first

sentence of paragraph 51 of the Complaint sets forth legal conclusions to which no response is

required. To the extent a response is required, Barfield denies the allegations in the first sentence

of paragraph 51 of the Complaint. For the second sentence of paragraph 51 of the Complaint,

Barfield admits that it received funds from Kingate Global, denies that any of such funds constitute

subsequent transfers of Customer Property or any other property transferred from BLMIS to

Kingate Global, and denies any remaining allegations of paragraph 51.

52.        The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Global Initial Transfers, Kingate Global Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**:        On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 51 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield denies knowledge or

information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the

Complaint.

## COUNT ONE

### RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS - 11 U.S.C. §§ 550 AND 551 AND NYDCL 278

53.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response**:    Barfield incorporates and reasserts its responses to the allegations contained

in each of the previous paragraphs of this Complaint as though set forth fully herein.

54.    The Barfield Defendants received the Fairfield Sentry Subsequent Transfers, totaling approximately $16,178,329, which are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**Response**:    Barfield states that the allegations in paragraph 54 of the Complaint state

legal conclusions to which no response is required. To the extent any further response is required,

Barfield denies the allegations in paragraph 54 of the Complaint.

55.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Barfield Defendants.

**Response**:    Barfield denies the allegations of paragraph 55 of the Complaint.

56.    The Barfield Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

**Response**:    Barfield denies the allegations of paragraph 56 of the Complaint.

57.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Barfield Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response**:    Barfield states that the allegations in paragraph 57 of the Complaint set forth

legal conclusions to which no response is required. To the extent a response is required, Barfield

denies the allegations of paragraph 57 of the Complaint.

## COUNT TWO

RECOVERY OF KINGATE GLOBAL SUBSEQUENT TRANSFERS- 11 U.S.C. §§ 550 AND
551 AND NYDCL 278

58.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response**:        On March 8, 2022, the Trustee and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not required to respond to allegations of paragraph 58 as they relate to the alleged subsequent transfers from Kingate Global to Barfield, and to the extent necessary, Barfield incorporates and reasserts its responses to the allegations contained in each of the previous paragraphs of this Complaint as though set forth fully herein.

59.     The Barfield Defendants received the Kingate Global Subsequent Transfers, totaling approximately $53,905,649, which are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**Response**:        On March 8, 2022, the Trustee and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not required to respond to allegations of paragraph 59 as they relate to the alleged subsequent transfers from Kingate Global to Barfield, and to the extent necessary, Barfield states that the allegations in paragraph 59 of the Complaint state legal conclusions to which no response is required. To the extent any further response is required, Barfield denies the allegations in paragraph 59 of the Complaint.

60.     Each of the Kingate Global Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Barfield Defendants.

**Response**:        On March 8, 2022, the Trustee and counsel for Barfield entered into a Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 60 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield denies the allegations of

paragraph 60 of the Complaint.

61.    The Barfield Defendants are immediate or mediate transferees of the Kingate
Global Initial Transfers.

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 61 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield denies the allegations of

paragraph 61 of the Complaint.

62.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy
Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against
the Barfield Defendants recovering the Kingate Global Subsequent Transfers, or the value thereof,
for the benefit of the estate of BLMIS.

**Response**:    On March 8, 2022, the Trustee and counsel for Barfield entered into a

Stipulation and Order dismissing the Trustee's claims to recover subsequent transfers that Barfield

allegedly received from Kingate Global. Adv. Pro. No. 12-01669 ECF 85. Thus, Barfield is not

required to respond to allegations of paragraph 61 as they relate to the alleged subsequent transfers

from Kingate Global to Barfield, and to the extent necessary, Barfield states that the allegations in

paragraph 62 of the Complaint set forth legal conclusions to which no response is required. To the

extent a response is required, Barfield denies the allegations of paragraph 62 of the Complaint.

## RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF

Barfield denies that the Trustee is entitled to his requested judgment in favor of the Trustee

and against Barfield or to any of the relief described herein.

## **AFFIRMATIVE DEFENSES**

In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Barfield hereby preserves each and every defense at law, in equity, or otherwise, available under federal and state law, including common law. Further, Barfield reserves the right to amend this Answer to assert other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so. In asserting the following defenses, Barfield does not intend to suggest that matters designated herein as "defenses" are not elements of the Trustee's prima face case on the Trustee's purported claims or that they are not matters as to which the Trustee bears the burden of proof. These defenses are set forth cumulatively and in the alternative.

## **FIRST DEFENSE**

### **Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))**

The alleged subsequent transfers to Barfield may not be recovered because the alleged initial transfers are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e), in that the alleged initial transfers were (i) made by or to (or for the benefit of) a stockbroker (BLMIS), financial institution (Fairfield Sentry or Barfield), financial participant (Barfield), or other covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract (between BLMIS and Fairfield Sentry, and/or between Fairfield Sentry and Barfield); and (iii) made more than two years before the petition date and are thus not recoverable under 11 U.S.C. § 548(a)(1)(A). Because the Fairfield Six-Year Transfers are not avoidable, property received by Barfield as part of the Fairfield Six-Year Transfers is not recoverable from Barfield. In addition, at the time of the transfers (if any) from Fairfield Sentry to Barfield, none of Fairfield Sentry or Barfield had actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

24

## SECOND DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

The transfers Barfield received from Fairfield Sentry did not constitute BLMIS customer property.  Upon information and belief, the redemption payments Barfield received from Fairfield Sentry were sourced from subscription payments made to Fairfield Sentry by its investors.  Many of Barfield's redemption payments could not have come from BLMIS because prior avoidable transfers from BLMIS to Fairfield Sentry had been distributed by Fairfield Sentry to other investors or Fairfield Sentry affiliates before Fairfield Sentry made multiple of its transfers to Barfield.

Specifically, the allegations of the Fairfield Amended Complaint, including the exhibits thereto that are incorporated by reference into the Complaint at paragraph 38, and the allegations of the second amended complaint in *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. 2009) establish that any avoidable transfers from BLMIS received by Fairfield Sentry prior to Barfield's redemptions were transferred by Fairfield Sentry to persons other than Barfield prior to the redemptions, and that many of the redemption payments Barfield received from Fairfield Sentry thus could not have included any BLMIS customer property.

## THIRD DEFENSE

### For Value, in Good Faith, and Without Knowledge of the Voidability (11 U.S.C. § 550(b))

Barfield took the transfers from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of the transfers from BLMIS to Fairfield Sentry, and thus the transfers to Barfield may not be recovered pursuant to 11 U.S.C. § 550(b).

Barfield took for value because the transfers from Fairfield Sentry were made in exchange for Barfield's surrender of its shares in those funds.

Barfield did not have actual knowledge of any fraudulent purpose behind the transfers it received. Barfield did not know facts that would have prompted a reasonable person in Barfield's

position to conduct further inquiry into whether there was any fraudulent purpose behind the transfers.

Even if Barfield had been on inquiry notice of a possible fraudulent purpose behind the transfers it received, a diligent inquiry by Barfield would not have discovered such a fraudulent purpose. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Barfield, and with more access to BLMIS personnel and documentation than Barfield, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. Barfield did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud. Diligent inquiry by Barfield would not have discovered the fraudulent purpose of the transfers.

Barfield did not have knowledge of the voidability of the transfers from BLMIS to Fairfield Sentry when it received the alleged subsequent transfers (if any).

## FOURTH DEFENSE

### Lack of Subject Matter Jurisdiction

### (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## FIFTH DEFENSE

### Lack of Personal Jurisdiction

### (U.S. Const. Amend. V; Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012(b))

This Court lacks personal jurisdiction over Barfield with respect to the claim herein.

### SIXTH DEFENSE

**Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))**

The Complaint fails to state a claim upon which relief can be granted, including for each

of the reasons stated in Barfield's Motion to Dismiss the Complaint, filed on April 28, 2022 in this

adversary proceeding, ECF 90, and proceedings thereon.

### SEVENTH DEFENSE

**Initial Transfer Not Avoided (11 U.S.C. § 550(a))**

The Trustee may not recover the transfers from Fairfield Sentry to Barfield because he has

not avoided the initial transfers from BLMIS to Fairfield Sentry.

### EIGHTH DEFENSE

**No Ponzi Scheme Presumption**

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the initial

transfers from BLMIS to Fairfield Sentry that he seeks to recover from Barfield were made with

actual intent to hinder, delay, or defraud any BLMIS creditor.

### NINTH DEFENSE

**Barfield as Initial Transferee – Mere Conduit Defense**

In the alternative, Fairfield Sentry was a mere conduit, and consequently, the claimed

transfers were initial transfers from BLMIS to Barfield. As the Trustee stated in *Picard v.*

*Grosvenor Investment Management Ltd.*, No. 12-1021 (Bankr. S.D.N.Y. June 15, 2022), Fairfield

Sentry's "sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed]

between [Sentry] and BLMIS" (internal quotation marks and citation omitted). 12-1021 ECF 115,

at 3, 6. As a result, the redemptions received by Barfield were initial transfers from BLMIS to

Barfield that are subject to the safe harbor under 11 U.S.C. § 546(e); any Trustee proceeding to

avoid the transfers is untimely; and Barfield may retain the amount it received pursuant to 11 U.S.C. § 548(c) and 11 U.S.C. § 548(d)(2)(B) because it took the transfers for value and in good faith.

## TENTH DEFENSE

### Fairfield Sentry as Initial Transferee – Mere Conduit Defense

In the alternative, the Trustee's claims are barred because Barfield was not a transferee of the subsequent transfers. To the extent that Barfield received any subsequent transfer, Barfield (a) received each subsequent transfer in good faith, in its capacity as nominee of a bank acting as custodian, and for the account and benefit of one or more of its customers, (b) did not have dominion or control or the right to assert dominion or control over subsequent transfers or the proceeds thereof or to use the subsequent transfers or the proceeds thereof for its own purposes; (c) rather, was a mere conduit for its customers; and (d) was obligated to credit the subsequent transfers to the account and for the benefit of one or more of its customers, who alone had the right to assert dominion and control over the subsequent transfers received by Barfield for their benefit.

## ELEVENTH DEFENSE

### New York Debtor and Creditor Law

The claims against Barfield are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

## TWELFTH DEFENSE

### Section 278(1) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Fairfield Sentry Initial Transfers were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

### THIRTEENTH DEFENSE

### Section 278(2) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Fairfield Sentry Initial Transfers were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

### FOURTEENTH DEFENSE

### Sufficient SIPC Funds

The Trustee's claims should be dismissed if Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

### FIFTEENTH DEFENSE

### Failure to Mitigate

The Trustee's claims are barred, in whole or part, because the Trustee has failed to mitigate, minimize or avoid damages, if any.

### SIXTEENTH DEFENSE

### British Virgin Island Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## SEVENTEENTH DEFENSE

### No Interest

The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## EIGHTEENTH DEFENSE

### Statute of Limitations

The Trustee's claim is barred by the statute of limitations.

## NINETEENTH DEFENSE

### Estoppel

The Trustee's claim is barred by estoppel.

## TWENTIETH DEFENSE

### Unreasonable Delay

The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago and concerns transfers made more than 17 years ago, is unreasonable and unfairly prejudices Barfield's ability to defend itself.

## TWENTY-FIRST DEFENSE

### Extraterritoriality

The Trustee's recovery of the transfers to Barfield would constitute an impermissible extraterritorial application of U.S. law.

## TWENTY-SECOND DEFENSE

### Comity

The Trustee's recovery of the transfers to Barfield would violate principles of comity.

## TWENTY-THIRD DEFENSE

### Violation of Due Process (U.S. Const. amend. V)

The use of the doctrine of law of the case to apply to Barfield rulings made in other adversary proceedings to which it was not a party and in which it did not participate violates Barfield's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWENTY-FOURTH DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any subsequent transfer from Barfield to the extent he has recovered the amount of the initial transfers from Fairfield Sentry, Kingate, or any other immediate or mediate transferee the amount of the avoided initial transfers that included the customer property that the Trustee alleges Barfield received.

## TWENTY-FIFTH DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Barfield, Barfield reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## TWENTY-SIXTH DEFENSE

### Double Recovery

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds. This Court approved the Fairfield Settlement Agreement on June 7, 2011 and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment"). The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the Liquidators recover from Barfield in settlement or otherwise, the Trustee is

barred from recovering on the ground that he is not entitled to double recovery, nor should Barfield

be subject to recovery of identical funds from two separate entities.

## JURY DEMAND

Barfield demands a trial by jury on all issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Barfield does not consent to entry of final orders or judgment by the Bankruptcy Court.

## DEFENDANT'S REQUEST FOR RELIEF

WHEREFORE, Barfield demands judgment dismissing the Complaint with prejudice,

together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court

deems just and appropriate.

Dated: December 2, 2022                   */s/ Anthony L. Paccione*
      New York, New York            Katten Muchin Rosenman LLP
                                      Anthony L. Paccione
                                      Mark T. Ciani
                                      Zachary S. Beal
                                      50 Rockefeller Plaza
                                        New York, New York 10020
                                        Telephone:  (212) 940-8800
                                        anthony.paccione@katten.com
                                        mark.ciani@katten.com
                                        zachary.beal@katten.com

                                        *Attorneys for Defendant Barfield Nominees*
                                        *Ltd.*