**LATHAM & WATKINS LLP**
Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for ABN Ireland*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05355 (CGM) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK (IRELAND), LTD, (f/k/a FORTIS PRIME FUND SOLUTIONS BANK (IRELAND) LIMITED) and | |
| ABN AMRO CUSTODIAL SERVICES (IRELAND), LTD (f/k/a FORTIS PRIME FUND SOLUTIONS CUSTODIAL SERVICES (IRELAND) LTD.), | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ABN IRELAND'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ........................................................................................1

I.    The Trustee Has Not Established that the Initial Transfers at Issue Were
      Avoidable ...........................................................................................................3

      A.    The Section 546(g) Safe Harbor Protects These Initial Transfers ..........................3

            1.    The Law of the Case Doctrine Does Not Preclude ABN Ireland
                  from Establishing that Section 546(g) Applies to the Collateral
                  Transfers ....................................................................................3

            2.    The Section 546(g) Safe Harbor Protects These Transfers........................6

                  a.    The District Court Has Already Held that the Collateral
                        Transfer Was for the Benefit of the Rye Funds .............................6

                  b.    Rye XL Is a Financial Participant ....................................................7

                  c.    The Prime Fund Is a Financial Participant.......................................7

      B.    The Section 546(e) Safe Harbor Protects These Transfers from Avoidance.........10

      C.    The Trustee Has Not Shown that the Initial Transfers Were Made with
            Actual Fraudulent Intent .....................................................................12

II.   The Court May Consider the "Good Faith Defense," which is Established on the
      Face of the Complaint and the Documents Incorporated Therein ....................................13

      A.    ABN Ireland's Good Faith Defense is Pleaded on the Face of the
            Complaint.........................................................................................13

            1.    The Trustee's Brief Underscores that ABN Ireland Was Not on
                  Inquiry Notice of BLMIS's Fraud ............................................................14

            2.    The Trustee Cannot Rebut that ABN Ireland Conducted a
                  "Reasonably Diligent Inquiry" .................................................................16

      B.    Judge McMahon's Dicta on the "Good Faith Defense" Does Not Prevent
            This Court from Examining the Trustee's Complaint ...........................................17

III.  The Trustee Cannot Recover $95.5 Million in Initial Transfers Pursuant to Section
      548(A)(1)(A).......................................................................................................18

CONCLUSION.........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re 45 John Lofts*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ....................................................................20

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
2006 WL 1206333 (S.D.N.Y. May 2, 2006) ...........................................................15

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund. Ltd.)*,
397 B.R. 1 (S.D.N.Y. 2007)....................................................................................15

*In re Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*,
2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...........................................14, 17, 18

*De Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009)....................................................................................4, 6

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
2020 WL 4349840 (S.D.N.Y. July 29, 2020) ...........................................................4

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
130 F.3d 52 (2d Cir. 1997).......................................................................................5

*Gowan v. Amarinth Advisors LLC (In re Dreier LLP)*,
2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)....................................................20

*Heller v. Goldin Restructuring Fund*,
590 F. Supp. 2d 603 (S.D.N.Y. 2008).....................................................................11

*Jones v. Bock*,
549 U.S. 199 (2007)................................................................................................14

*Kerman v. City of New York*,
374 F.3d 93 (2d Cir. 2004)......................................................................................18

*Leeming v. Dean Witter Reynolds Inc.*,
676 F. Supp. 541 (S.D.N.Y. 1988) .........................................................................11

*Meoli v. Huntington Nat'l Bank*,
848 F.3d 716 (6th Cir. 2017) ..................................................................................15

*Picard v. ABN AMRO Bank (Ireland) Ltd. et al.*,
505 B.R. 135 (S.D.N.Y. 2013)........................................................................ *passim*

*Picard v. ABN AMRO Bank (Ireland) Ltd. et al.*,
   2020 WL 401822 (S.D.N.Y. Jan. 23, 2020) ..........................................................2, 14, 16, 17

*Picard v. Avellino*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) .......................................................................................11

*Picard v. Banque SYZ & Co. S.A.*,
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022).............................................................18

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ......................................................................................3

*Picard v. Charles Ellerin Revocable Tr.*,
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..............................................................20

*Picard v. Citibank, N.A.("Citibank")*,
   12 F.4th 171 (2d Cir. 2021) ...........................................................................................14, 16

*Picard v. Citibank, N.A., et al*,
   2022 WL 4493234 (Bankr. S.D.N.Y. Sept. 27, 2022).....................................................12, 13

*Picard v. Citibank, N.A., et al*,
   Adv. No. 10-05345, ECF 248 (Bankr. S.D.N.Y. Nov. 2, 2022)..............................................12

*Picard v. Fishman*,
   773 F.3d 411 (2d Cir. 2014)...............................................................................................9, 10

*Picard v. JABA Assocs. LP*,
   2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021) .......................................................................13

*Picard v. Lisa Beth Nissenbaum Tr.*,
   2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) .......................................................................13

*Picard v. Merkin*,
   581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...................................................................................20

*Picard v. Multi-Strategy Fund Ltd.*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022)................................................................3, 10, 18, 19

*Picard v. Multi-Strategy Fund Ltd., et al.*,
   2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ....................................................................9, 11

*Picard v. Taylor*,
   326 B.R. 505 (Bankr. S.D.N.Y. 2005).....................................................................................13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2012 WL 13041475 (S.D.N.Y. May 15, 2012) .........................................................................5

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...........................................................8, 9, 10, 12

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005)...........................................................................................12

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLC)*,
   808 F.3d 94 (2d Cir. 2015)...........................................................................................18

*Stratton v. Dep't for the Aging*,
   132 F.3d 869 (2d Cir. 1997).........................................................................................19

*United States v. Charmoli*,
   2022 WL 2158947 (E.D. Wis. Feb. 9, 2022)................................................................19

*United States v. Henshaw*,
   388 F.3d 738 (10th Cir. 2004)......................................................................................20

*United States v. Quinteri*,
   306 F.3d 1217 (2d Cir. 2002)..........................................................................................6

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*,
   343 B.R. 444 (Bankr. S.D.N.Y. 2006)..........................................................................13

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000)............................................................................................11

*Yick Man Mui v. United States*,
   614 F.3d 50 (2d Cir. 2010).....................................................................................4, 5, 18

## STATUTES

11 U.S.C.
   § 101(22A)......................................................................................................................7, 8
   § 544..............................................................................................................................3, 10, 12
   § 546(e)............................................................................................................................ *passim*
   § 546(g)............................................................................................................................ *passim*
   § 548(a)(1)(A).................................................................................................................. *passim*
   § 548(a)(1)(B)................................................................................................................3, 10, 12
   § 550(b)............................................................................................................................ *passim*
   § 741..................................................................................................................................8

## RULES

Fed. R. Civ. P 9(b) ..............................................................................................................11

## PRELIMINARY STATEMENT

In its opening brief, ABN Ireland established several core points that the Trustee (in his Opposition) either concedes or does not dispute, and which make this case different from the other motions to dismiss before this Court. Simply put, given the unique and long history of this case, this Court or the District Court have already decided most of the elements needed for dismissal.

First, regarding Section 546(g), the Trustee concedes that the District Court has already held that:

- the $30 million redemption payment is shielded from avoidance, *see Picard v. ABN AMRO Bank (Ireland) Ltd. et al.*, 505 B.R. 135, 150 (S.D.N.Y. 2013) ("*546(g) Op.*");

- all the transfers at issue were in connection with a swap agreement (the bespoke Swap Transaction), *see id.*; and

- the $235.5 million in collateral transfers were made for the benefit of the Rye Funds, *see id.* at 150.

Thus, the only open issue is whether either of the Rye Funds is a "financial participant"—which the Complaint establishes they are. The Trustee cannot escape the Section 546(g) safe harbor by reading into it an "actual knowledge" requirement that does not exist, and that has been rejected by the District Court.

Nor can he avoid his obligation to plead that each initial transfer was made with fraudulent intent, either by blindly invoking the "Ponzi scheme presumption," or by misapplying a "badges of fraud" analysis to the BLMIS enterprise as a whole. Regarding Section 546(e), the Trustee also concedes that the initial transfers he seeks to avoid were protected settlement payments made pursuant to securities contracts, and that he has not specifically alleged that the Rye Funds or their parent Tremont had "actual knowledge" of BLMIS's fraud such that the Section 546(e) safe harbor would not apply.

Regarding ABN Ireland's good faith defense under Section 550(b), the Trustee does not

1

(and cannot) contest that this Court has already held that:

- ABN Ireland received the transfers "for value," *Picard v. ABN AMRO Bank (Ireland) Ltd. et al.*, 2020 WL 401822, at *5 (S.D.N.Y. Jan. 23, 2020) ("*Bernstein Op.*");

- ABN Ireland did not have actual knowledge that BLMIS was not trading securities, *id.* at *16; and

- ABN Ireland conducted extensive diligence into BLMIS before it entered the Swap Transaction, *id.*

The Trustee also does not contest that:

- the relevant time period to assess ABN Ireland's state of mind is 2007 and 2008, when it entered into the challenged transactions;

- the Motion to Dismiss appropriately considers the documents incorporated into the Complaint (which, together with the Trustee's allegations, establish that ABN Ireland conducted a thorough and extensive diligence process before it entered into the underlying Swap Transaction); and

- the amount of its own money ABN Ireland put at risk here dwarfed the paltry fees it could possibly gain—a tacit acknowledgment that (as this Court has already held) it would have been illogical for it to enter into the Swap Transaction while on notice of fraud. *Id.* at *13.

And although the Trustee seeks to exaggerate his allegations by imputing the purported knowledge of non-parties to ABN Ireland, he does not dispute that no such "knowledge" was communicated to ABN Ireland, as the law requires. These undisputed points bar the Trustee's claims *entirely* under Section 550(b) because the subsequent transfers were received in good faith and for value.

Further, the Trustee's argument that ABN Ireland is foreclosed from invoking the good faith defense wholly misapprehends the import of Judge McMahon's narrow opinion on appeal, which remanded that issue expressly so that this Court could consider it after a review of the record—including the documents incorporated by reference into the Complaint.

Finally, the Trustee's attempts to cast basic arithmetic as "tracing" or "expert testimony" fail. His own pleading shows that more than $95 million of the transfers he seeks to recover occurred outside the two-year-window of Section 548(a)(1)(A) and so are not avoidable thereby.

For these reasons, as set forth herein and in ABN Ireland's opening brief, the Trustee's Complaint should be dismissed with prejudice.

## I. THE TRUSTEE HAS NOT ESTABLISHED THAT THE INITIAL TRANSFERS AT ISSUE WERE AVOIDABLE

The Trustee may not recover a subsequent transfer unless he has first avoided the initial transfer or, at the very least, established that the initial transfer is avoidable. *See, e.g.*, *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 90 (Bankr. S.D.N.Y. 2022) (quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). The Trustee has not done so here.

### A. The Section 546(g) Safe Harbor Protects These Initial Transfers

To the extent the Trustee seeks to avoid the initial transfers here pursuant to Sections 544 (through New York law) or 548(a)(1)(B) (as constructively fraudulent transfers), he is barred by the safe harbor set forth in Section 546(g) to protect swap transactions. The Trustee does not dispute that Section 546(g) prevents him from recovering the $30 million redemption that ABN Ireland received in connection with the Swap Transaction, unless the initial transfer is avoidable as an actual fraudulent transfer. *See* Trustee's Opposition to Defendants' Motion to Dismiss ("Opp.") at 2, 9; *see also 546(g) Op.*, 505 B.R. at 150.

And, as ABN Ireland explained in its opening brief, this safe harbor applies with equal force to the remaining $235.5 million in collateral transfers. In an attempt to undercut the straightforward application of the safe harbor to those transfers, the Trustee advances two arguments: (1) that the law of the case doctrine forecloses ABN Ireland's argument; and (2) that the Prime Fund does not qualify as a financial participant. Opp. at 31-34. Both arguments fail.

#### 1. The Law of the Case Doctrine Does Not Preclude ABN Ireland from Establishing that Section 546(g) Applies to the Collateral Transfers

The Trustee raises a hyper-technical and incorrect argument that the law of the case doctrine precludes ABN Ireland from arguing that the Rye Funds' status as financial participants

satisfies Section 546(g) because "th[at] issue was already decided and/or impliedly resolved by the district court." Opp. at 32.  Not so.  The District Court only considered the question of whether the collateral payments "were made for the benefit of" ABN Ireland, *546(g) Op.*, 505 B.R. at 150, not whether they had been made for the benefit of another entity who might qualify as a "financial participant."  That question is ripe for resolution now.

It is axiomatic that the "actual decision of an issue is required to establish the law of the case" and therefore, the "law of the case does not reach a matter that was not decided."  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 2020 WL 4349840, at *3 (S.D.N.Y. July 29, 2020) (internal alterations and quotation marks omitted).  And here, "no earlier decision in this case," by the District or Bankruptcy Court, "addressed the precise issue raised in [ABN Ireland's] motion," *id.*, namely that either Rye Fund is a financial participant for the purpose of the application of the safe harbor.  The Trustee does not seriously contend otherwise.

Instead, the Trustee incorrectly argues that matters that "could have been" raised are law of the case, based on an inapplicable doctrine about issues that a party failed to *appeal*.  That appellate doctrine provides that if a party fails to appeal an issue and then seeks to raise it on remand back to the lower court, the appellate waiver constitutes an implied decision by the appellate court.  This of course has nothing to do with the situation here.  The District Court was not hearing an appeal from this Court; it withdrew the reference to make an initial determination on discrete, previously-undecided issues.  Thus, the Trustee's cases, which deal with appeals from lower court judgments, are inapposite.[1]

---

[1] *See*, *e.g.*, *Yick Man Mui v. United States*, 614 F.3d 50, 51 (2d Cir. 2010) (applying holding to "a defendant who raises [claims] *on direct appeal*"); *De Johnson v. Holder*, 564 F.3d 95 (2d Cir. 2009) (precluding appellant from raising issue that could have been raised on "initial appeal").  Indeed, *Yick Man Mui*, a case involving claims of ineffective assistance of counsel, expressly held that claims "involving a different strategy, action, or inaction of counsel" could be raised in a later

Moreover, even if the District Court's decision were an appeal (which it was not), here it made no implied decision about the Rye Funds because the issue of whether they are financial participants was not part of the withdrawal. Instead, the withdrawn issue was "whether *defendants* were 'financial participants' in swap agreements and received transfers from Madoff Securities 'in connection with' those agreements such that Section 546(g) limits the Trustee's availability to avoid transfers[.]" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2012 WL 13041475 at *4 (S.D.N.Y. May 15, 2012) ("*Withdrawal Op.*") (emphasis added) (explaining that withdrawal was "*for the limited purposes* of deciding" seven enumerated questions of law). All other issues were specifically reserved. *See 546(g) Op.*, 505 B.R. at 135; *see also Withdrawal Op.*, 2012 WL 13041475, at *3 (stressing that "whether defendants qualify as 'financial participants' in a swap" pursuant to Section 546(g) and received transfers "in connection with" a swap were the only Section 546(g) "issue[s] [that] merit[] withdrawal").

And even if the withdrawal were an appeal, and even if the issue of the Rye Funds' status were part of the withdrawal, this doctrine still would not apply. Prior to Judge Rakoff's ruling, both parties—including the Trustee—believed that a transfer could not be "for the benefit" of a transferee, such as the Prime Fund. *See 546(g) Op.*, 505 B.R. at 149 ("The Trustee urges that because defendants actually received Madoff Securities customer property they are, as a matter of law, subsequent transferees, not entities for whose benefit the initial fraudulent transfers were made.") (citing *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997)). However, as discussed *infra* § I.A.2.b, Judge Rakoff expressly held in that opinion that the transfer was for the benefit of the Rye Funds. *546(g) Op.*, 505 B.R. at 150.

---

proceeding. *Id.* at 56-57. So too here, where the issue is whether payments for the benefit of a different entity could qualify the transfers for the safe harbor.

Prior to Judge Rakoff's opinion, the issue was not, and could not have been, ripe for review. *Cf. De Johnson*, 564 F.3d at 99 (noting that the issue "was certainly 'ripe for review'" during initial appeal). The appellate implied waiver doctrine thus does not apply. *See, e.g.*, *United States v. Quinteri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (law of the case does not apply if there is "an intervening change of controlling law") (internal quotation marks omitted). And, responding to the effect of that ruling now, as ABN Ireland is doing here, is entirely appropriate.[2]

Because Judge Rakoff did not decide (expressly or impliedly) whether the Rye Funds are a financial participant, that determination is left to this Court, and the Trustee cannot hide behind the law of the case doctrine.

### 2.    The Section 546(g) Safe Harbor Protects These Transfers

#### a.    The District Court Has Already Held that the Collateral Transfer Was for the Benefit of the Rye Funds

As noted in the opening brief and as the Trustee does not dispute, the District Court has already held that the collateral transfer was "for the benefit" of the Rye Funds, in particular the Prime Fund (the initial transferee which made the BLMIS redemption) and Rye XL (the entity that the collateral payment enabled to enter into the Swap Transaction). *See 546(g) Op.*, 505 B.R. at 150 ("[As] alleged in the complaints, and as is the most plausible inference from the factual context of these swap transactions, the investment funds withdrew money from their Madoff Securities accounts in order to benefit themselves by receiving leveraged returns on their assets.");[3] *see also* SAC ¶¶ 193-94, 196. Thus, the only issue is whether either Rye Fund is a financial participant.

---

[2] The Trustee's complaint that this argument raises "new legal theories," (Opp. at 32) is ironic, to say the least. The Trustee has amended scores of complaints to address similar new standards that the District Court articulated after withdrawing the reference on various issues.

[3] *Id.* at 147-48 ("Furthermore, the fact that the initial transferees [*e.g.*, the Prime Fund] and the synthetic funds [*e.g.*, Rye XL]. . . were owned and operated by Tremont Partners suggests a coordinated scheme to leverage their investments.")

### b.    Rye XL Is a Financial Participant

As discussed below, the Trustee argues that the Prime Fund does not qualify as a financial participant.  The Court need not reach this question, however, because the Rye XL fund *also* qualifies as a financial participant and so triggers the application of Section 546(g).

Rye XL qualifies as a financial participant not because of a contract with BLMIS, but because of its "swap agreement" with ABN Ireland, *see* 11 U.S.C. § 101(22A).  The District Court has already held that the Swap Transaction had an "'Equity Notional Amount' of . . . $706.5 million . . . far in excess of the $100 million required by the Bankruptcy Code's definition." *546(g) Op.*, 505 B.R. at 148.  And because "there is no dispute that the swap transactions actually occurred," *see id.* at 142 n.6, Rye XL's knowledge of BLMIS's fraud, or lack thereof, is irrelevant.[4]

As noted above, the District Court already held that the initial transfer was intended to benefit Rye XL, along with the other Rye Funds, by allowing it to obtain a leveraged return.  *Id.* at 149-50.  Thus, because the $235.5 million in initial transfers were made for the benefit of a financial participant—namely, Rye XL—in connection with the Swap Transaction, Section 546(g)'s safe harbor bars their avoidance.

### c.    The Prime Fund Is a Financial Participant

Also as noted in the opening brief and also as the Trustee does not dispute, the Prime Fund also meets the definition of a financial participant based on the alleged notional amount of its securities contract with BLMIS.  Mot. at 14-16.

Nevertheless, the Trustee advances a novel argument to elude the safe harbor, arguing that

---

[4] Even if the "actual knowledge" exception applied to Section 546(g), it would be irrelevant to Rye XL, whose status as a financial participant is due to the admittedly valid Swap Transaction—the reason the District Court held that Section 546(g) had no such exception. *546(g) Op.*, 505 B.R. at 142 n.6.

*Cohmad II*, which did not so much as mention Section 546(g), bars its application here. His tortured reasoning can be summarized as follows: the Prime Fund (allegedly) knew that no securities were traded under its contract with BLMIS; the Prime Fund is only a "financial participant" because it is a party to that securities contract; and because the Prime Fund (allegedly) had actual knowledge that no securities were transferred under that contract, it is not a "financial participant." *See* Opp. at 33-34. This byzantine argument stretches *Cohmad II* far past its holding.

*Cohmad II* was exclusively concerned with the safe harbor designed to protect *securities transactions*, *i.e.*, Section 546(e), not Section 546(g). *See generally Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"). This distinction matters. *Cohmad II* did not apply an "actual knowledge" exception to the *definition* of a "securities contract" in 11 U.S.C. § 741, but rather only to whether the safe harbor protected the specific transfers. Judge Rakoff reasoned that parties who knew that securities were not being traded "must have known" that the transactions they were effecting were not "securities transactions" protected by the safe harbor *specific* to securities contracts. *Cohmad II*, 2013 WL 1609154 at *3. But that reasoning does not apply to the Swap Transaction at issue here. Here— unlike in *Cohmad II*—the District Court recognized that "there is no dispute that the swap transactions actually occurred," *546(g) Op.*, 505 B.R. at 142 n.6, such that the application of Section 546(g)'s safe harbor is absolute. *Id.* Indeed, there is no reason to prohibit the use of a protection for swap agreements based on a knowledge that securities transactions did not occur.

Because Judge Rakoff has already held that such an exception to Section 546(g) is inappropriate, the Trustee seeks to revise the statutory definition of "financial participant" in Section 101(22)(A) as a back-channel around Judge Rakoff's holding regarding Section 546(g). This goes far beyond *Cohmad II* and indeed, would contradict its rationale. Judge Rakoff did not

apply such reasoning in *Cohmad II*. *See generally Cohmad II*, 2013 WL 1609154. To the contrary, when explaining the "actual knowledge" exception to Section 546(e), he analyzed the meaning of "financial participant" at length, *id.* at *8, but never held (or even hinted) that if an initial transferee had "actual knowledge" it did not qualify as a financial participant, or that actual knowledge "precludes *any finding* that [an entity] had *any* 'securities contracts' with BLMIS." Opp. at 33 (emphasis added); *see also generally Cohmad II*. To the contrary, when revisiting the Section 546(e) "actual knowledge" exception in *Picard v. Multi-Strategy Fund Ltd., et al.*, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022), Judge Rakoff explained that contracts between the Fairfield family of feeder funds and its subsequent transferees could qualify as "securities contracts", *id.* at *7-8, (relying on *Picard v. Fishman*, 773 F.3d 411, 422 (2d Cir. 2014))—even though his opinion assumed that Fairfield knew its underlying securities contracts with BLMIS did not involve the trading of actual securities, *Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at *8-9. As he noted, "it is hard to see why the initial transferee's knowledge of Madoff's fraud would render a Section 546(e) defense based on a securities contract between the initial and subsequent transferee unavailable." *Id.* at *7 n.7. Even more so, an initial transferee's knowledge should have no effect on a Section 546(g) defense based on a swap transaction between two entirely *different* parties. No court has ever applied the Trustee's attenuated chain of reasoning to Section 546(g), or to the definition of "financial participant" in any other context.

In reality, the Trustee's argument is a variation on an argument that has been repeatedly rejected by several courts in the context of the Section 546(e) safe harbor, including the Second Circuit: that the securities contracts with BLMIS were void because of the alleged fraud. The Trustee argues that the Prime Fund cannot be a "financial participant" because it knew that its securities contract with BLMIS was a sham. But the Second Circuit rejected a very similar

argument, explaining:

> [W]hether or not BLMIS actually transacted in securities is not
> determinative.  Section 546(e) only requires that a covered transfer
> be broadly related to a 'securities contract,' not that it be connected
> to an actual securities transaction.  In other words, whether an
> agreement satisfies the definition of 'securities contract' does not
> depend on the broker's performance, because a breach of a contract
> neither changes nor nullifies the nature of the underlying agreement.
> The existence of a securities contract is not vitiated because a broker
> fails to make good on his commitment.

*Picard v. Fishman*, 773 F.3d 411, 420 (2d Cir. 2014) (citation omitted).  *See also Cohmad II*, 2013

WL 1609154, at *3 ("[W]hile the Trustee here argues that the defendants' account agreements

with Madoff Securities are illegal and therefore are void and unenforceable, this argument is but a

new articulation of the Trustee's previously-rejected argument in favor of a 'fraud' exception to

Section 546(e), which the Court once again rejects.").  The securities contract is real, not void, so

the Prime Fund is in fact a financial participant, even if it cannot benefit from the safe harbor for

securities transactions because it allegedly knew there were none (which it did not, for the reasons

set forth in Section I.B below).

For all of these reasons, the Trustee's tortured argument that ABN Ireland cannot invoke

Section 546(g)'s protections fails as a matter of law.

**B.       The Section 546(e) Safe Harbor Protects These Transfers from Avoidance**

Section 546(e) similarly protects the transfers at issue from avoidance under Sections 544

or 548(a)(1)(B).  The Trustee concedes that the initial transfers here qualify for the safe harbor but

for the "actual knowledge" exception set forth in *Cohmad II*.  Opp. at 6-8.  He also concedes that

"the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds,"

*Multi-Strategy Fund Ltd.*, 641 B.R. at 92, so long as the defense is asserted to protect against

avoidance, not recovery.  Opp. at 8.

In its opening brief, ABN Ireland argued that the safe harbor applied in part because *it* did

not have actual knowledge of BLMIS's fraud. The District Court has now ruled that Section 546(e) turns exclusively on the initial transferee's knowledge. *Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at *7. Nonetheless, the safe harbor still applies because the Trustee also has not pleaded that the initial transferees, the Rye Funds, had "actual knowledge."

The Trustee concedes he did not explicitly allege anywhere that the Rye Funds had actual knowledge. Instead, he counters in a footnote that "magic words" are not necessary to plead an entity's state of mind.[5] Opp. at 28 n.26. True—but he has had several chances to amend his Complaint to plead actual knowledge if he could. He has not, apparently because he cannot. Like the plaintiff in *Leeming v. Dean Witter Reynolds Inc.*, 676 F. Supp. 541 (S.D.N.Y. 1988), on which the Trustee purports to rely, this Court need not "resolve" any factual issues about Tremont's knowledge, because (even if taken as true) the Trustee's allegations "have not raised a triable issue" about Tremont's actual knowledge. *Id.* at 545.

Indeed, allegations that a BLMIS investor had "close relationships" with Madoff, entertained customer complaints and "rumors" about BLMIS, was aware of facts that arguably conflicted with its trading strategy, and/or conducted inadequate diligence (Opp. at 28-30), do not show *knowledge* of fraud, but merely suspicions and so-called "red flags" from which the Trustee seeks to *infer* fraud. "Actual knowledge" requires more. *See Picard v. Avellino*, 557 B.R. 89, 113 (Bankr. S.D.N.Y. 2016) ("Knowledge is an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact. 'Actual knowledge' is direct and clear knowledge, as distinguished from constructive knowledge. Thus,

---

[5] Neither of the cases the Trustee cites for this proposition implicate an "actual knowledge" standard and thus neither bears on the issues here. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91-92 (2d Cir. 2000) (scienter as required under Rule 9(b)); *Heller v. Goldin Restructuring Fund*, 590 F. Supp. 2d 603, 619 (S.D.N.Y. 2008) (scienter to prove securities fraud under the PSLRA).

'actual knowledge' implies a high level of certainty and absence of any substantial doubt regarding

the existence of a fact.") (internal quotation marks and citations omitted).  *Cohmad II* itself says

that "actual knowledge" is not met by "mere suspicions."  *See Cohmad II*, 2013 WL 1609154 at

*3.  The Trustee avoided the so-called "magic words" of "actual knowledge" not due to a pleading

oversight or stylistic choice, but because he cannot plead the facts necessary to sustain that

allegation.  Thus, no exception applies and the Section 546(e) safe harbor shields the transfers at

issue here from avoidance pursuant to Sections 544 and 548(a)(1)(B).

### C. The Trustee Has Not Shown that the Initial Transfers Were Made with Actual Fraudulent Intent

Finally, the Trustee cannot use Section 548(a)(1)(A) to avoid these transfers because he

has not shown that the initial transfers were made with the actual intent to hinder, delay, or defraud.

In its opening brief, ABN Ireland explained why the Trustee cannot rely on the "Ponzi

scheme presumption" to plead BLMIS's fraudulent intent.  Mot. at 21-26.  After that brief was

filed, this Court held that the presumption is good law.  *Picard v. Citibank, N.A., et al*, 2022 WL

4493234, at *4-5 (Bankr. S.D.N.Y. Sept. 27, 2022).  That decision is the subject of a request for

an interlocutory appeal, *Picard v. Citibank, N.A., et al*, Adv. No. 10-05345, ECF 248 (Bankr.

S.D.N.Y. Nov. 2, 2022), and ABN Ireland respectfully rests on the arguments in its opening brief.

The Trustee argues in the alternative that certain "badges of fraud" may be used to infer

that the transfers here were made with fraudulent intent.  *In re Sharp Int'l Corp.*, 403 F.3d 43, 56

(2d Cir. 2005); *see also* Opp. at 18-19.  However, the Trustee only pleads badges of fraud as to the

*entity*, BLMIS (Opp. at 18-19), rather than the circumstances surrounding the transfers

themselves.[6]  This focus on the BLMIS enterprise as a whole improperly presumes that all transfers

---

[6] Tellingly, the Trustee cannot cite a case outside of the BLMIS liquidation that applies the badges of fraud analysis to the *debtor*, not the transfers.  Opp. at 19.  And the transfers in those cases are

made by a fraudulent entity, no matter how benign or commonplace, are fraudulent. This is merely a restatement of the suspect Ponzi scheme presumption and insufficient as a matter of law; the Trustee must establish the intent behind each particular *transfer*. *See Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006) (Allegations of fraudulent intent must relate to the "specific transfers challenged."). But he has not done so. Regarding these transfers, the Trustee alleges only that BLMIS was insolvent at the time they occurred; but "[g]enerally, the presence of a single badge of fraud is insufficient to establish actual fraudulent intent." *Picard v. Taylor*, 326 B.R. 505, 518 (Bankr. S.D.N.Y. 2005). Thus, the Trustee cannot avoid the transfers at issue as actually fraudulent pursuant to Section 548(a)(1)(A).

## II. THE COURT MAY CONSIDER THE "GOOD FAITH DEFENSE," WHICH IS ESTABLISHED ON THE FACE OF THE COMPLAINT AND THE DOCUMENTS INCORPORATED THEREIN

ABN Ireland, as a subsequent transferee, may also avail itself of the defense that it received the transfers for value, in good faith, and without knowledge of the voidability of the initial transfer. 11 U.S.C. § 550(b). The District Court's remand decision does not prevent this Court from deciding whether the Trustee pleaded ABN Ireland's good faith on the face of the Complaint and on the strength of the documents incorporated therein. This Court should find that it has.

### A. ABN Ireland's Good Faith Defense is Pleaded on the Face of the Complaint

The Trustee's opposition did nothing to dispel the conclusion that is apparent from the face of the Complaint: that ABN Ireland was a subsequent transferee that received the transfers for value, in good faith, and without knowledge of the voidability of the initial transfers. *See* 11 U.S.C.

---

distinguishable. *See Citibank*, 2022 WL 4493234, at *2 (loan repayments); *Picard v. JABA Assocs. LP*, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021) (fictitious profits paid by BLMIS to defendants); *Picard v. Lisa Beth Nissenbaum Tr.*, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) (same).

§ 550(b).[7]  A subsequent transferee is entitled to the good faith defense if the facts it knew did not

put it on inquiry notice *or* if it conducted a "reasonably diligent" investigation.  *Picard v. Citibank,*

*N.A.("Citibank")*, 12 F.4th 171, 191-92 (2d Cir. 2021).  ABN Ireland has carried its burden to

establish this affirmative defense, *see In re Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, 2022

WL 1304589, at *1 (S.D.N.Y. May 2, 2022), on the face of the Trustee's complaint and the

documents incorporated into it by reference.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (an

affirmative defense can be "the basis for dismissal for failure to state a claim [if] the allegations in

the complaint suffice to establish [it]").

### 1.    The Trustee's Brief Underscores that ABN Ireland Was Not on Inquiry Notice of BLMIS's Fraud

First, ABN Ireland was not on inquiry notice of BLMIS's fraud.  The Trustee does not

deny that the Complaint and its incorporated documents show ABN Ireland knew the following:

- Basic information about BLMIS's options trading and the attendant market risks, SAC ¶¶ 173-74;

- That an affiliate had a "six-year investment relationship with Tremont," *id.* at ¶ 168;

- That BLMIS used a "'split-strike conversion' investment strategy," *id.* at ¶ 177;

- That "Madoff has been successfully executing [the split-strike conversion] strategy since the 1960's and it is understood that over USD 20bio is traded under this strategy," Mot. Ex. A at 3;

- That "Madoff provide[d] copies of individual trade tickets" to Tremont "for each and every trade on the brokerage account on a daily basis," *id.* at 4;

- That Tremont had a long-term relationship with BLMIS, regularly evaluated investment managers as a matter of course, and had "carried out extensive due diligence on [BLMIS] in line with the Tremont Investment Process," *id.* at 4; and

- That BLMIS's clients included many large, reputable financial institutions, *id.* at 8.

---

[7] The Trustee does not contest, and this Court has already held, that the transfers here were for value. *Bernstein Op.*, 2020 WL 401822, at *5.

Far from putting ABN Ireland on inquiry notice, these facts would have provided a reasonable

entity with *comfort* about the transaction; and, in fact, they did, as shown by the very large sum of

its own money that ABN Ireland chose to put at risk, in exchange for a minimal potential return.[8]

In an attempt to obscure his own allegations, the Trustee relies on alleged "facts" learned

by other entities years prior to the Swap Transaction. But these stale allegations are irrelevant for

two reasons.[9] First, he does not contest that only facts known at the time of the transfers—here,

2007 and 2008 rather than years earlier—are relevant to whether the subsequent transferee was on

inquiry notice. *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 730-32 (6th Cir. 2017).

Second, he inappropriately conflates ABN Ireland with "Fortis," a corporate family

consisting of far-flung companies all over the world. Opp. at 22-24. But his vague, footnoted

reference to "agency principles," (Opp. at 23 n.22), is unsupported by case law and insufficient as

a matter of law to impute the knowledge held by other entities to ABN Ireland. Indeed, the Trustee

does not seriously contest that imputation is appropriate only when specific information is shared

between those non-parties and ABN Ireland. *See AIG Glob. Sec. Lending Corp. v. Banc of Am.*

*Sec. LLC*, 2006 WL 1206333, at *2 (S.D.N.Y. May 2, 2006) (knowledge acquired by employees

"in the course of . . . other transactions, unless actually communicated to the specific employees

who made the investment decision that gave rise to [ ] this action is not chargeable to . . . the

specific employees who made the investment decision at issue"). But he neither alleges nor argues

that any non-defendant communicated its alleged knowledge to the relevant employees. At most,

---

[8] These reassuring facts contrast starkly with *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund. Ltd.)*, 397 B.R. 1 (S.D.N.Y. 2007), in which, among other things, the defendant "confirmed that the Fund was losing money" but was reporting a profit, and learned that a peer firm was pulling out of the fund in part due to its inability to conduct diligence. *Id.* at 23-24.

[9] For the reasons set forth in ABN Ireland's opening brief, these allegations are also insufficient even to put these non-parties on inquiry notice. Mot. at 31-33.

he alleges that (a) the Fortis corporate family maintained a global risk framework and (b) some employees of other Fortis entities who had evaluated BLMIS's creditworthiness in prior years were also part of the Credit Committee that evaluated and approved the Swap Transaction. Opp. at 23 n.22; SAC ¶ 237. Neither allegation constitutes, or even implies, direct communications between the employees of the relevant non-party entities and the relevant employees of ABN Ireland, and so they do not rebut the facts he actually alleges about ABN Ireland's knowledge.

### 2.    The Trustee Cannot Rebut that ABN Ireland Conducted a "Reasonably Diligent Inquiry"

But the Court need not even determine the issue of inquiry notice, because the Complaint clearly establishes that ABN Ireland conducted a "reasonably diligent inquiry." The Complaint is rife with allegations that support the conclusion that ABN Ireland acted with appropriate diligence, diligence that *alone* is sufficient to satisfy Section 550(b). *Citibank*, 12 F.4th at 191-92.

The Trustee does not contest that this Court, in examining the Trustee's allegations in a prior opinion, has already held that ABN Ireland "performed extensive due diligence in the late summer and fall of 2006 in connection with the Swap Transaction." *Bernstein Op.*, 2020 WL 401822, at *16. This Court's conclusion is well-supported by the Complaint. ABN Ireland's diligence included: making direct inquiries to Tremont employees (SAC ¶ 168); forcing reluctant Tremont employees to respond to formal Due Diligence Questionnaires (SAC ¶¶ 152-53, 175); reviewing the private placement memoranda for the Rye Funds (SAC ¶ 173); making internal inquiries about Tremont's relationship with other Fortis entities (SAC ¶ 168); and, ultimately, submitting the results to Fortis's Central Credit Committee for review and approval (SAC ¶ 176).

In his single paragraph purportedly about diligence, the Trustee has no response to any of this. He does not explain how this diligence was incomplete, what more should have been done, or what diligence could have revealed a fraud that had been so effectively hidden from every major

16

market participant and regulator, including the SEC.  Instead, the Trustee's only responses have nothing to do with diligence at all, but rather (to the extent they are relevant to anything) concern inquiry notice.  He points to a decision made by a *different* Fortis entity, years earlier, to change the jurisdiction of the administrator of a *different* fund.  Opp. at 22-23; SAC ¶¶ 98-122.  This decision has no connection whatsoever to diligence, much less to the diligence ABN Ireland conducted in advance of the 2007/2008 Swap Transaction.  The Trustee also claims that the Fortis entities negotiated protections into the Swap Transaction to guard against counterparty insolvency and "potential fraud."  Opp. at 24; SAC ¶¶ 197-214.  Not only do these have nothing to do with ABN Ireland's diligence, but as this Court has already held, these are normal-course business risks that "do not imply a subjective belief that BLMIS was in all likelihood a Ponzi scheme." *Bernstein Op.*, 2020 WL 401822, at *15.

ABN Ireland's reasonable diligence is established on the face of the Complaint and the documents incorporated within it, satisfying Section 550(b).

### B.    Judge McMahon's Dicta on the "Good Faith Defense" Does Not Prevent This Court from Examining the Trustee's Complaint

Hoping to prevent this Court from examining the Complaint and its incorporated documents (as it did previously under the prior good faith standard), the Trustee argues that Judge McMahon's decision to remand, *In re BLMIS*, 2022 WL 1304589, already decided this issue.  Opp. at 19-21.  This could not be farther from the truth.  The District Court explicitly remanded to allow the Bankruptcy Court to decide the good faith defense in the first instance.   Indeed, as it explained, the "good faith" issue was "not appropriately framed for appellate review," *In re BLMIS,* 2022 WL 1304589, at *3-4 (internal quotations omitted), and "remand [was] appropriate to permit the record to be developed, and the lower court to make findings, in accordance with the Citibank decision." *Id.* at *4.

It is apparent that the District Court did not intend to usurp the Bankruptcy Court's role of conducting the searching review of the record required by the *Citibank* decision. While it expressed its belief, in *dicta*, that "ABN Ireland's good faith is not apparent from the face of the . . . Complaint," *id.* at *3, it did not address any specific facts alleged in the Complaint, much less examine the documents incorporated by reference. Instead, it left that determination to this Court, which has a robust record to consider in the form of the many documents that the Trustee cited or relied on in his Complaint (which he obtained through Rule 2004 discovery, and which ABN Ireland submitted with its declaration in support of this motion).[10] *See* ECF 210.

Because the District Court expressly reserved the good faith issue for this Court's determination, none of *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLC)*, 808 F.3d 94 (2d Cir. 2015), *Yick Man Mui*, 614 F.3d 50, nor *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) prevent review here. The District Court here did not "impliedly resolve[]" the issue, *Yick Man Mui*, 614 F.3d at 53, examine the entire record, *Kerman*, 374 F.3d at 119, nor mandate a specific outcome. *See Statek,* 808 F.3d at 100-101. Indeed, as the Second Circuit explained in *Statek*: "[w]hen the mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court." *Id.* at 98. Similarly, the District Court left the issue open to allow the Bankruptcy Court to decide the issue based on its own review of the record.

## III.    THE TRUSTEE CANNOT RECOVER $95.5 MILLION IN INITIAL TRANSFERS PURSUANT TO SECTION 548(A)(1)(A)

As explained above, it is axiomatic that the Trustee may only recover avoidable transfers. *Multi-Strategy Fund Ltd.*, 641 B.R. at 90. But if either the Section 546(g) or 546(e) safe harbors

---

[10] Unlike other cases in which this Court has declined to consider the "good faith" defense on the face of the complaint alone, this robust record permits the Court to find ABN Ireland's good faith now, for the reasons set forth in the opening brief. *See*, *e.g.*, *Picard v. Banque SYZ & Co. S.A.*, 2022 WL 2135019, at * 11 (Bankr. S.D.N.Y. June 14, 2022).

apply here, the only provision available to the Trustee is Section 548(a)(1)(A).  That provision *only* allows the Trustee to avoid initial transfers made "within 2 years before the date of the filing of the [debtor's bankruptcy] petition"—here, December 11, 2008.  11 U.S.C. § 548(a)(1)(A).  But he does not allege that the entire $265.5 million he seeks to recover was initially transferred within those two years.  The Trustee does not deny that his own allegations establish that $95.5 million of the $265.5 million come from initial transfers more than two years before the petition.

Instead, he tries to dodge the issue, by arguing that this argument has already been rejected by the Court in other proceedings.  Opp. at 39.  It has not.  In those cases, the subsequent transferee defendants looked to other complaints to question whether all of the initial transfers came from BLMIS.  *See*, *e.g.*, *Multi-Strategy Fund Ltd.*, 641 B.R. at 95 ("Defendant's argument is essentially that . . . the funds that Multi-Strategy received from Fairfield Sentry could not have come from BLMIS.") (citation omitted).  That is not what ABN Ireland argues here; it does not dispute *whether* the funds came from BLMIS, but *when* the funds came.  More than $95 million of the initial transfers here must have predated the two-year lookback period in Section 548(a)(1)(A)— a conclusion demonstrated by the Complaint, and one unrelated to the Court's prior decisions.

The Trustee has only two responses: that ABN Ireland's calculations are improper expert testimony (Opp. at 37 n.33), and that they constitute tracing unsuitable for a motion to dismiss.  Opp. at 38-39.  They are neither.  First, ABN Ireland's calculations are simple arithmetic: addition and subtraction.  And simple arithmetic neither constitutes nor requires expert testimony.  *See*, *e.g.*, *Stratton v. Dep't for the Aging*, 132 F.3d 869, 877 (2d Cir. 1997) (holding that "no expert was required" where "simple arithmetic was used" and "[t]here were no sophisticated statistical theories that needed explanation."); *United States v. Charmoli*, 2022 WL 2158947, at * 2 (E.D. Wis. Feb. 9, 2022) (noting that "one does not need to be an expert to complete . . . elementary

mathematics") (internal quotation marks omitted).  For those reasons, the Trustee's objection to Appendix A, as setting forth an expert "methodology" (Opp. at 37 n.33), falls flat.  The Appendix simply illustrates, for the Court's benefit, the addition and subtraction set forth in ABN Ireland's brief.  Mot. at 39.  Tellingly, the Trustee disputes none of ABN Ireland's math.

Nor is this analysis "tracing."  None of the accounting principles the Trustee invokes (*e.g.*, LIFO, FIFO, and Lowest Intermediate Balance (Opp. at 39)), are relevant here.   Those methodologies, and cases the Trustee cites, are concerned with identifying the source of commingled funds.[11]  They are irrelevant here because (as the Trustee does not dispute) under Section 548(a)(1)(A), the accounts must be assumed to begin at a zero balance two years prior to the petition date.  From that point on, it is merely a question of whether *any* avoidable funds had been transferred to the Rye Funds and then to ABN Ireland.   Applying that common-sense principle, this Court can and should conclude that $95.5 million of the funds the Trustee seeks to recover were *never* avoidable under Section 548(a)(1)(A).

## CONCLUSION

For each of the foregoing reasons, Plaintiffs' Second Amended Complaint against ABN Ireland should be dismissed in its entirety and with prejudice.

---

[11] *United States v. Henshaw*, 388 F.3d 738, 740 (10th Cir. 2004) ("commingling of funds . . . made straightforward legal attribution of particular sums impossible"); *In re 45 John Lofts*, 599 B.R. 730, 746-747 (Bankr. S.D.N.Y. 2019) (individual transfers made through a "commingled account"); *Picard v. Merkin*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("the subsequent transfers originated from commingled accounts"); *Gowan v. Amarinth Advisors LLC (In re Dreier LLP)*, 2014 WL 47774 at *14 (Bankr. S.D.N.Y. Jan. 3, 2014) (initial transfers "never represented more than 3.5% of [transferee's] total assets");  *Picard v. Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2 (Bankr. S.D.N.Y. Mar. 14, 2012) (fictitious profits "comingled with legitimate funds of the Trust").

Dated:  December 2, 2022
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By:    /s/ Christopher R. Harris

Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
Email: thomas.giblin@lw.com

*Attorneys for ABN Ireland*