**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02929 (CGM) |
| Plaintiff, | |
| v. | |
| LGT BANK IN LIECHTENSTEIN LTD., | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LGT BANK IN LIECHTENSTEIN LTD'S MOTION TO DISMISS** |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.    FACTUAL BACKGROUND ............................................................... 3

     A.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................ 3

     B.    THE FAIRFIELD FUNDS ....................................................... 4

     C.    DEFENDANT AND ITS INVESTMENT IN THE FAIRFIELD FUNDS........... 5

ARGUMENT ............................................................................. 5

III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..................... 6

     A.    LGT LIECHTENSTEIN PURPOSEFULLY AVAILED ITSELF OF THE LAWS AND PRIVILEGES OF CONDUCTING BUSINESS IN NEW YORK BY INVESTING IN THE FAIRFIELD FUNDS...................................... 8

         1.    Defendant's Investments with New York-Based BLMIS Through the Fairfield Funds Establish Minimum Contacts ..................................... 9

         2.    This Court Has Jurisdiction Over Defendant Under *BLI*........................... 10

         3.    LGT Liechtenstein's Contacts with New York Give Rise to Specific Personal Jurisdiction ..................................................... 13

             a.    LGT Liechtenstein's Employees Regularly Corresponded with FGG's New York Office Regarding Its Investment with Sentry .................................................................. 13

             b.    LGT Liechtenstein's Knowledge That It Was Investing in a New York Fund Controlled by BLMIS Was Confirmed by LGT Capital Partners ..................................................... 14

             c.    LGT Liechtenstein Instructed the Fairfield Funds to Use New York Correspondent Accounts for Subscriptions and Redemptions ........................................................ 16

             d.    LGT Liechtenstein's Subscription Agreements Support Specific Personal Jurisdiction.......................................... 18

         4.    The Exercise of Personal Jurisdiction Over Defendant Is Reasonable ............................................................... 20

     B.    IN THE ALTERNATIVE, THE TRUSTEE IS ENTITLED TO JURISDICTIONAL DISCOVERY ..................................................... 22

IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS ...................................................... 22

i

A. ALL ADVERSARY PROCEEDINGS ARE PART OF THE MAIN CASE FOR PURPOSES OF RULE 10(C) ............................................................... 23

B. INCORPORATION IS PERMITTED WHERE IT ACHIEVES THE PURPOSE OF RULE 10(C) .................................................................... 24

C. THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 8 .................................................................................................... 24

D. THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 9 .................................................................................................... 25

V. SECTION 546(E) SAFE HARBOR ...................................................... 26

A. THE TRUSTEE SUFFICIENTLY ALLEGED SENTRY HAD ACTUAL KNOWLEDGE OF MADOFF'S FRAUD .......................................... 27

B. SECTION 546(E) DOES NOT APPLY INDEPENDENTLY TO RECOVERY ACTIONS..................................................................... 28

C. WHETHER DEFENDANT CAN AVAIL ITSELF OF A SECTION 546(E) SAFE HARBOR BASED ON SEPARATE AGREEMENTS WITH THE FAIRFIELD FUNDS IS A FACT-INTENSIVE INQUIRY AND NOT APPROPRIATE AT THE MOTION TO DISMISS STAGE........... 29

VI. LGT LIECHTENSTEIN'S ASSERTION OF A MERE CONDUIT DEFENSE IS IMPROPER AT THIS STAGE ........................................................... 29

A. THE COMPLAINT PLEADS THAT DEFENDANT IS A SUBSEQUENT TRANSFEREE .................................................... 30

B. MERE CONDUIT IS AN AFFIRMATIVE DEFENSE AND DEFENDANT'S BURDEN TO PLEAD .............................................. 31

C. THE MERE CONDUIT DEFENSE IS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE........................................................ 32

D. EVEN THOUGH CONSIDERATION OF THE MERE CONDUIT DEFENSE IS NOT GERMANE, DEFENDANT'S MOTION FAILS TO ESTABLISH ANY FACTS IN SUPPORT OF THE DEFENSE........................ 33

VII. THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE IS SIMILARLY IMPROPER FOR A MOTION TO DISMISS ........................................... 35

VIII. CONCLUSION.................................................................................. 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016) ........................................................17

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008) .....................................11

*Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) ..................................6

*Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc.* (*In re The Warnaco Group, Inc.*),
    Nos. 01 B 41643 (RLB), 01-03628 (RLB), 03 Civ. 4201 (DAB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ...........................................32

*Banca Carige*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ..........................................................21

*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*),
    397 B.R. 1 (S.D.N.Y. 2007) .............................................32, 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................6

*In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184 (2d Cir. 2020) .........................................23

*Bernard L. Madoff Inv. Secs. LLC* (*In re Consolidated Proceedings on 11 U.S.C. 546(e)*), No. MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................2, 27

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ..............................................32

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................... *passim*

*Cargo Partner AG v. Albatrons,* Inc., 352 F.3d 41 (2d Cir. 2003) ................................................5

*Chase Manhattan Bank v. Banque Générale du Commerce*,
    No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ................................19

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ...............................................6

*In re CVEO Corp.*,
    327 B.R. 210 (Bankr. D. Del. 2005) .....................................32

iii

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)..................................................................................6, 9

*In re Enron Corp.*,
   361 B.R. 36 (Bankr. S.D.N.Y. 2006) ......................................................................34

*Esso Expl. & Prod. Nigeria Ltd v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019)......................................................................9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ..................26, 27

*In re Finley*,
   130 F.3d 52 (2d Cir. 1997)..........................................................................32, 33, 34

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
   141 S. Ct. 1017 (2021) ...........................................................................7, 20

*In re Glob. Crossing, Ltd.*,
   385 B.R. 52 (Bankr. S.D.N.Y. 2008) ......................................................................32

*Haber v. United States*,
   823 F.3d 746 (2d Cir. 2016)..................................................................................22

*Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y.
   Mar. 1, 2017).........................................................................................12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..................................................................................6, 7

*Isaiah v. JPMorgan Chase Bank*,
   960 F.3d 1296 (11th Cir. 2020) ...............................................................................31

*In Re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011) ......................................5

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)..................................................................................36

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
   2009) ...............................................................................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)..................................................................................17, 20

*Licci v. Lebanese Canadian Bank, SAL*,
   984 N.E.2d 893 (N.Y. 2012)..................................................................................20

*In re Lyondell Chem. Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) ........................................................33

*Malloy v. Citizens Bank of Sapulpa* (*In re First Sec. Mortg. Co.*),
    33 F.3d 42 (10th Cir. 1994) ......................................................................32

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004) ...............................................................30, 37

*Menotte v. United States* (*In re Custom Contractors, LLC*),
    745 F.3d 1342 (11th Cir. 2014) ...............................................................32

*Meoli v. Huntington Nat'l Bank*,
    848 F.3d 716 (6th Cir. 2017) ....................................................................32

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) ............................................................33

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ..........................................................................7

*In re Morrison*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) .....................................................24

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) ..................................................4, 17

*Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*),
    2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ...............................34

*Nordberg v. Société Générale* (*In re Chase & Sanborn Corp.*),
    848 F.2d 1196 (11th Cir. 1988) ...............................................................32

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ....................................................................17

*In re Palm Beach Finance Partners, L.P.*,
    488 B.R. 758 (Bankr. S.D. Fla. 2013) ......................................................31

*Picard v. ABN Ireland (In re BLMIS)*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022)
    (McMahon, J.) ....................................................................................35, 36

*Picard v. Banque Cantonale Vaudoise*, 2022 WL 2761044 (Bankr. S.D.N.Y.
    July 14, 2022) ....................................................................................23, 25

v

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y.
June 30, 2022) ...............................................................................................8, 9, 21, 23, 25

*Picard v. Banque SYZ & Co. SA*,
Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y.
June 14, 2022) ...................................................................................................... *passim*

*Picard v. Barclays Bank (Suisse) S.A.*, 2022 WL 2799924 (Bankr. S.D.N.Y.
July 15, 2022)...............................................................................................................22, 25

*Picard v. Barfield Nominees Ltd.*,
Adv. Pro. No. 12-01669 (CGM) (Bankr. S.D.N.Y. Sept. 28, 2022).......................................21

*Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 ....................23, 25

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................................... *passim*

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
440 B.R. 274 (Bankr. S.D.N.Y. 2010) ................................................................18, 21

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021), *cert denied sub nom. Citibank, N.A. v. Picard*,
142 S. Ct. 1209 (2022)........................................................................................ *passim*

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
418 B.R. 75 (Bankr. S.D.N.Y. 2009)................................................................... *passim*

*Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015) ................................................................18, 23

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021).......................................................4, 6, 7, 21

*Picard v. Fairfield Investment Fund, Ltd.*,
Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
2021) ....................................................................................................2, 4, 27, 37

*Picard v. First Gulf Bank*,
Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.
July 18, 2022)....................................................................................................... *passim*

*Picard v. Grosvenor Investment Mgmt. Ltd.*,
Adv. Pro. No. 12-01021 (CGM) (Bankr. S.D.N.Y. Nov. 21, 2022) ..........................................1

*Picard v. JPMorgan Chase & Co.*,
    Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10,
    2014) ...........................................................................................................................11

*Picard v. Keller Family Trust (In re BLMIS)*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021)..........................................................32, 33, 34

*Picard v. Korea Exchange Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y.
    Sept. 21, 2022) ...........................................................................................................1

*Picard v. LGT Bank in Liechtenstein Ltd.*,
    Case No. 13-cv-01394-JSR, ECF No. 10 ................................................................26

*Picard v. Lion Global Investors Limited*, Adv. Pro. No. 12-01194 (CGM) .................................22

*Picard v. Lloyds TSB Bank PLC*, Adv. Pro No. 12-01207, 2022 WL 2390551
    (Bankr. S.D.N.Y. June 30, 2022).......................................................................23, 25

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 76 (S.D.N.Y. 2012) .........21

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)..................................................8, 30, 36, 37

*Picard v. Miller* (*In re BLMIS*),
    631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) ...........................................................32

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022).............................................................. *passim*

*Picard v. Multi-Strategy Fund, Ltd.*,
    No. 22-cv-06502-JSR, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)........... *passim*

*Picard v. The Pub. Inst. for Soc. Sec.*,
    Adv. Pro. No. 12-01002 (CGM) (Bankr. S.D.N.Y. Aug. 17, 2022)......................17

*Picard v. Quilvest Finance Ltd.*,
    Adv. Pro. No. 11-02538 (CGM) (Bankr. S.D.N.Y. Sept. 27, 2022)......................17

*Picard v. Société Générale Private Banking (Suisse) S.A.*,
    Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7,
    2022) .....................................................................................................................7, 20

*Picard v. Union Securities Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM),
    2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022)......................................22, 25

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d
85 (2d Cir. 2019)..........................................................................................9, 18, 21, 28

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ...........................................................5

*Rupp v. Markgraf*,
95 F.3d 936 (10th Cir. 1996) ...............................................................................32

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010)..................................................................................6

*Sarachek v. Schochet* (*In re Agriprocessors*),
Adv. Pro. No. 10-09190, 2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14,
2012) ...................................................................................................................32

*Sec. Inv. Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*,
501 B.R. 26 (S.D.N.Y. 2013)...........................................................................23, 28

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ....................................................6, 12, 18, 30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*,
596 B.R. 451 (S.D.N.Y. 2019).............................................................................23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ...................27, 28

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999)..................................................................33

*SPV Osus Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015) aff'd, 882 F.3d 333 (2d Cir. 2018)............................12

*Steinberg v. A Analyst Ltd.*,
2009 WL 838989 (S.D. Fla. Mar. 26, 2009)...........................................................11

*Suber v. VVP Servs., LLC*,
2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021).......................................................12

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) .................................................................33

*Theraplant, LLC v. Makarechi*,
2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .......................................................12

*Tymoshenko v. Firtash*,
2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .......................................................12

*United States v. Quintieri*,
 306 F.3d 1217 (2d Cir. 2002)......................................................................24

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
 39 F. Supp. 3d 461 (S.D.N.Y. 2014)...........................................................36

*Whitaker v. Am. Telecasting, Inc.*,
 261 F.3d 196 (2d Cir. 2001)..........................................................................6

**Statutes**

11 U.S.C. § 546(e) ......................................................................... *passim*

11 U.S.C. § 548(a) ...............................................................................25, 26

11 U.S.C. § 550.............................................................................28, 29, 30, 31

11 U.S.C. § 550(a) ......................................................................... *passim*

11 U.S.C. § 550(b) .....................................................................................31

15 U.S.C. §§ 78aaa-lll.................................................................................1

N.Y. CPLR § 302 .......................................................................................12

N.Y. CPLR § 302(a)(3)...............................................................................12

**Rules**

FED. R. BANKR. P. 7012 ............................................................................5, 6

FED. R. CIV. P. 8(a)(2)..............................................................................24

Fed. R. Civ. P. 9 ......................................................................................25

Fed. R. Civ. P. 9(b) .................................................................................25

Fed. R. Civ. P. 10(c) ...........................................................................23, 24

Fed. R. Civ. P. 12(b)(2)...........................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................2

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021) ...................................30

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendant LGT Bank in Liechtenstein Ltd.'s ("Defendant" or "LGT Liechtenstein") Motion to Dismiss the Complaint ("Motion").

## I.    PRELIMINARY STATEMENT

This adversary proceeding is part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS Customer Property that was stolen as part of Madoff's Ponzi scheme. In this action, the Trustee seeks to recover at least $10,461,871 in subsequent transfers of Customer Property that LGT Liechtenstein received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," together with Sentry, the "Fairfield Funds"). Despite this Court's guidance in no fewer than 34 decisions in 34 similar adversary proceedings in this SIPA liquidation proceeding, LGT Liechtenstein moves to dismiss on the same grounds.[1] All of LGT Liechtenstein's arguments are without merit and should be rejected.

First, despite the fact that: (i) LGT Liechtenstein always intended to invest with BLMIS in New York; (ii) LGT Liechtenstein engaged regularly with Fairfield Greenwich Group ("FGG") employees in New York; (iii) LGT Liechtenstein used New York bank accounts to invest with the Fairfield Funds and redeem from the Fairfield Funds; and (iv) LGT Liechtenstein agreed to submit to New York jurisdiction and choice of law provisions, Defendant incorrectly asserts that this

---

[1] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"); *Picard v. Grosvenor Investment Mgmt. Ltd.*, Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Grosvenor*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022).

Court lacks personal jurisdiction. Defendant is wrong. LGT Liechtenstein's numerous contacts with New York establish this Court's jurisdiction.

Second, the Trustee plausibly alleges the avoidability of the initial transfers based on the Fairfield Funds' actual knowledge of fraud by incorporating the amended complaint against Sentry and its related funds and affiliates (the "Fairfield Amended Complaint"). *See Picard v. Fairfield Investment Fund, Ltd.*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (the "*Fairfield Inv. Fund*"). LGT Liechtenstein attempts to relitigate Judge Rakoff's decision in *Bernard L. Madoff Inv. Sec. LLC (In re Consolidated Proceedings on 11 U.S.C. 546(e))*, No. MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), arguing that the "safe harbor bars the Trustee's claims here." Mot. at 22. However, this Court has repeatedly determined that "the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy*, 641 B.R. at 92. Further, as made clear in the District Court's recent denial of motions for interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants, Section 546(e) does not independently protect subsequent transferees against the recovery of avoidable fraudulent transfers, and LGT Liechtenstein's hypothetical arguments based on its own agreements with the Feeder Funds are fact-intensive and "do not appear answerable on the pleadings." *Picard v. Multi-Strategy Fund, Ltd.*, No. 22-cv-06502-JSR, 2022 WL 16647767, at *8–9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*").

Third, Defendant wrongly argues that the Trustee has not plausibly alleged that the transfers he seeks to recover are Customer Property. The Trustee has alleged the relevant pathways through which Customer Property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendant, as well as the necessary vital statistics (*i.e.*, the who, when, and how

2

much) of the subsequent transfers Defendant received. Further, the Trustee pleads that Sentry invested "in excess of 95% of its assets in BLMIS customer accounts." Compl. ¶ 2. Thus, as this Court has found in many other cases, the "Complaint plausibly pleads that Defendant received customer property because Fairfield Sentry did not have other property to give," and the specific facts surrounding what funds were used to pay redemptions are "issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 95.

Finally, Defendant's arguments regarding its good faith and status as a mere conduit are an obvious attempt to shift the burden of pleading its fact intensive affirmative defenses to the Trustee. The Trustee has met his burden under Section 550(a) to plead that the transfers from BLMIS to the Fairfield Funds are avoidable and that Defendant is a subsequent transferee, having received transfers of BLMIS Customer Property from the Fairfield Funds, as set forth in the exhibits to his Complaint. It is LGT Liechtenstein's burden to establish its purported defenses, neither of which can be determined at this stage of the litigation.

For the reasons set forth in the plethora of decisions of this Court and the district court, as well as the reasons set forth more fully herein, the Trustee respectfully requests that the Court deny Defendant's Motion.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    <u>THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS</u>

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Compl. ¶¶ 23, 31. BLMIS was a securities broker-dealer registered with the United States Securities and Exchange Commission (the "SEC") beginning in January 1960. *Id.* ¶ 23. BLMIS purportedly operated three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC

Strategy"), which involved investing in United States common stocks, options, and treasury bills. *Id.* ¶¶ 24–25. In reality, BLMIS operated its IA Business as a Ponzi scheme. *Id.* ¶ 26. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for, and subsequently pleaded to, criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.*

The extent of damage Madoff caused was made possible by BLMIS "feeder funds," like the Fairfield Funds, which were large investment funds created to funnel investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*").

### B.    THE FAIRFIELD FUNDS

The Fairfield Funds were controlled by the FGG, a de facto partnership with its principal place of business in New York. *See Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at \*9. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Second Amended Complaint, *Picard v. Fairfield Investment Fund, Ltd.*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ¶ 89 ("Fairfield SAC"). Sigma invested 100% of its assets in Sentry. Compl. ¶¶ 2, 8.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of Customer Property in the amount of approximately $3 billion. *Id.* ¶ 92. In 2011, the Trustee settled with the Fairfield Funds and Sentry consented to a judgment in the amount of $3.054 billion. *Id.* ¶ 93. Sigma separately consented to a judgment in the amount of $752.3 million. *See* Sigma Consent Judgment, *Picard. v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), ECF No. 110. As a feeder fund that invested in BLMIS indirectly through Sentry, the $752.3 million represents a portion of Sentry's $3.054 billion in withdrawals

from BLMIS. Fairfield SAC ¶ 93. Following the settlement, the Trustee commenced a number of adversary proceedings against defendants, like the one here, to recover the approximately $3 billion in stolen Customer Property.

### C.    DEFENDANT AND ITS INVESTMENT IN THE FAIRFIELD FUNDS

LGT Liechtenstein is a wholly owned subsidiary of LGT Group Holding Ltd ("LGT"). LGT is a wealth and asset management group wholly owned by LGT Group Foundation, which is, in turn, wholly owned by the Prince of Liechtenstein Foundation. Corporate Ownership Statement of LGT Bank in Liechtenstein Ltd., ECF No. 92; Compl. ¶ 22. LGT Liechtenstein retained its form, throughout all relevant times and to this day.

Defendant voluntarily invested significant sums in and redeemed significant funds from the Fairfield Funds, knowing at all times that nearly all of the money was intended to be invested with BLMIS in New York. Defendant entered into subscription agreements, consenting to the jurisdiction of New York and agreed its investments would be governed by New York law. Compl. ¶ 7. It also regularly communicated with New York-based FGG personnel regarding those investments and used New York bank accounts to transfer money to and from Sentry. *Id.*

### ARGUMENT

When considering a Rule 12(b)(6) motion to dismiss, applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the Trustee's favor." *In Re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the pleading stage, the allegations need only meet the "plausibility" standard, such that they "nudge[] [the]

5

claims . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 552, 680

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

where "the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

When considering a Rule 12(b)(2) motion to dismiss, applicable to an adversary proceeding

under FED. R. BANKR. P. 7012, the Trustee need only show a *prima facie* case that personal

jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

The *prima facie* showing "may be established solely by allegations." *Id.* at 84–85. The Trustee

may also establish a *prima facie* case of jurisdiction through affidavits and supporting materials

that contain averments of facts outside the pleadings that, "if credited, would suffice to establish

jurisdiction over the defendant." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594

B.R. 167, 188 (Bankr. S.D.N.Y. 2018) ("*BNP*") (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d

196, 208 (2d Cir. 2001)); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138

(2d Cir. 2010) (a *prima facie* case of jurisdiction may be established through affidavits and

supporting materials that contain averments of facts outside the pleadings). The pleadings and

affidavits must be construed in the light most favorable to the Trustee, resolving all doubts in the

Trustee's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directed its activities into the

forum and the underlying cause of action arises out of or relates to those activities. *See Picard v.

Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

The court first determines whether the defendant purposefully availed itself of the privilege of

conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945);

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Next, the court determines if the

claims "arise out of or relate to the defendant's contacts" with the forum. *Multi-Strategy*, 641 B.R. at 87–88 (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025–26 (2021)).

Finally, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine if jurisdiction is reasonable, the court considers "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Multi-Strategy*, 641 B.R. at 88; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where a plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

This Court has correctly found, in similar adversary proceedings in this SIPA liquidation proceeding, that it has jurisdiction over a "party [that] purposefully avails itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*"); *Picard v. Société Générale Private Banking (Suisse) S.A.*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct. 7, 2022) ("*Société Générale*"); *Picard v. Grosvenor*, Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716, at *7 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Grosvenor*"); *Picard v. First Gulf*, Adv. Pro. No. 11-

7

02541 (CGM), 2022 WL 3354955,at *6–7 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Multi-Strategy*, 641 B.R. 78; *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *6 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*").

The Complaint sets forth LGT Liechtenstein's intent to invest with BLMIS through New York-based FGG, as well as receipt of subsequent transfers made to Defendant in New York bank accounts, thus demonstrating this Court's jurisdiction over Defendant. Further, Defendant's Motion and supporting exhibits are not sufficient to refute Trustee's *prima facie* showing of personal jurisdiction and dismiss the case under Rule 12(b)(2). Defendant's Motion should be denied. *See Picard v. Merkin (In re BLMIS),* 440 B.R. 243, 254–71, 273 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

### A.    LGT LIECHTENSTEIN PURPOSEFULLY AVAILED ITSELF OF THE LAWS AND PRIVILEGES OF CONDUCTING BUSINESS IN NEW YORK BY INVESTING IN THE FAIRFIELD FUNDS

Defendant argues that the Trustee does not allege sufficient contacts between LGT Liechtenstein and the forum to find that the Court has personal jurisdiction over it. However, in doing so, it ignores the many prior rulings of this Court, as well as the numerous and purposeful contacts between LGT Liechtenstein and New York.

Defendant: (i) invested in the Fairfield Funds with the knowledge and intention that its money would be invested, managed, and custodied by BLMIS in New York; (ii) knew BLMIS was a registered securities broker-dealer in New York; (iii) met and communicated with FGG personnel in New York regarding its investments with New York-based BLMIS through Sentry; (iv) agreed to New-York jurisdiction, forum-selection, service-of-process, and choice-of-law provisions related to its Fairfield-Fund investments; and (v) used the New York banking system to transact with the Fairfield Funds. Many of these contacts are sufficient on their own to support jurisdiction, but especially in their totality, these contacts forcefully establish that LGT

8

Liechtenstein purposefully directed its activities to New York. *See Esso Expl. & Prod. Nigeria Ltd v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [of the defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely available itself of the forum.").

### 1. Defendant's Investments with New York-Based BLMIS Through the Fairfield Funds Establish Minimum Contacts

LGT Liechtenstein knew and intended that its investments in the Fairfield Funds were ultimately investments with New York-based BLMIS and that the funds it invested were purportedly to be used to purchase United States securities. Setting aside the numerous other contacts with New York, LGT Liechtenstein's deliberate targeting of New York-based BLMIS and the U.S. securities market—through the Fairfield Funds which were expressly established for that purpose—is dispositive. This Court has stated as much in many similar adversary proceedings in this SIPA liquidation proceeding. *See, e.g.*, *Grosvenor*, Adv. Pro. No. 11-02929, 2022 WL 17098716, at *5 (citing *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013)) (the allegation that "[d]efendants "knowingly direct[ed] funds to be invested with New York-based BLMIS" is alone "sufficient to establish a prima facie showing of jurisdiction over [d]efendants in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported"); *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *5 (same); *Lombard*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *5 (same).

As the Second Circuit recognized, "[w]hen these subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). By executing Sentry subscription agreements and affirming that it "received and read" Sentry's private placement memoranda ("PPM"), LGT Liechtenstein knew that "Sentry maintained in excess of

95% of its assets in BLMIS customer accounts." Compl. ¶¶ 2, 7; Hunt Decl. Ex. 1. In executing

Sigma subscription agreements, LGT Liechtenstein acknowledges it read and agreed to be bound

by the Sigma PPM. Hunt Decl. Ex. 2. LGT Liechtenstein not only knew that BLMIS was the

principal target of its investments, it invested with the Fairfield Funds precisely for that reason.

LGT Liechtenstein also intended that any profits from its Fairfield Fund investments would

be generated by BLMIS' purported investments in U.S. securities. The Sentry PPM that LGT

Liechtenstein reviewed made clear that Madoff's purported SSC Strategy entailed the purchase of

U.S. equity securities and U.S. Treasury Bills. Hunt Decl. Ex. 3. The Sigma PPM specifies that

Sigma will purchase shares in Sentry, noting that Sentry principally utilized the SSC strategy and

all of those assets "are custodied at Bernard L. Madoff Investment Securities." Hunt Decl. Ex. 48.

### 2.    This Court Has Jurisdiction Over Defendant Under *BLI*

This Court's opinion in *Picard v. BLI* confirms that this Court has personal jurisdiction.

*See BLI*, 480 B.R. at 517. LGT Liechtenstein purposefully availed itself of the benefits and

protections of New York when it invested in the Fairfield Funds through FGG with the objective

of accessing New York-based BLMIS in U.S. markets. As long as it was making money through

its investments in BLMIS in New York through Sentry, LGT Liechtenstein continued to avail itself

of the benefits and protections of doing so. Defendant cannot now claim this Court lacks personal

jurisdiction.

In *BLI*, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment

of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS

in New York, with intent to profit therefrom." *Id.* at 506. Similarly, LGT Liechtenstein affirmed

the PPMs and executed subscription agreements that established the investment's BLMIS-centric

purpose. *Id.* at 507–08; Hunt Decl. Exs. 1–3, 48.

*BLI* holds that, just like LGT Liechtenstein here, a defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Multi-Strategy*, 641 B.R. at 86 (citing *BLI*, 480 B.R. at 517); *see also Picard v. JPMorgan Chase & Co.*, Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (courts in this SIPA liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal jurisdiction"). "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506; *Multi-Strategy*, 641 B.R. at 87.

Defendant attempts to differentiate its position in this adversary proceeding by arguing that the Trustee's allegations relate to third-parties' contacts—those of Sentry, Sigma, FGG, or BLMIS—but this misreads the Trustee's allegations. Mot. at 11–12. The Complaint specifically alleges that LGT Liechtenstein deliberately aimed its activities at New York, intending to invest in U.S. securities, through New York-based BLMIS, and corresponding with New York-based employees of the Fairfield Funds regarding those investments.

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the cases cited by Defendant are inapposite. *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008) (jurisdiction denied because plaintiffs never actually alleged that defendant directed any activity toward the United States); *Steinberg v. A Analyst Ltd.*, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (jurisdiction denied where plaintiff either did

not allege or made only a "bare assertion" that funds in which defendant invested had "assets,

accounts and management all located in New York," and there was no indication defendant knew

its redemptions were being made through New York); *Tymoshenko v. Firtash*, 2013 WL 1234943,

at *4 (S.D.N.Y. Mar. 27, 2013) (jurisdiction lacking where defendants did not "even kn[o]w" that

companies they invested in engaged in activities in the United States).[2]

Equally unavailing is Defendant's reliance on a trio of cases asserting common law claims

brought against fund service providers for the proposition that the New York contacts identified

by the Trustee are insufficient.  Motion at 14-17 (citing *Hill v. HSBC Bank plc*, 207 F. Supp. 3d

333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136

(S.D.N.Y. Mar. 1, 2017); *SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170-71 (S.D.N.Y. 2015)

aff'd, 882 F.3d 333 (2d Cir. 2018)). This Court has already determined that this line of cases is not

relevant to the Trustee's actions against investors in BLMIS feeder funds, like LGT Liechtenstein.

*See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from

the Defendant's redemptions as investors in the Tremont Funds which arose from their New York

contacts with the Tremont Funds."). This is not a dispute between two parties about services owed

under a foreign contract, like the breach of fiduciary duty and other claims in *SPV Osus*, *Hill*, and

*Hau Yin To*. This action is brought by a SIPA Trustee in a SIPA liquidation proceeding in New

York to recover fraudulent transfers from an investor whose transfers of funds to and from

accounts or correspondent accounts in New York—intended to place money with BLMIS in New

York—evidence an intent to direct activity toward the U.S. securities markets.  *See BLI*, 480 B.R.

---

[2] Defendant also cites language from *Suber v. VVP Servs., LLC*, 2021 WL 4429237, *9 (S.D.N.Y. Sept. 27, 2021),
citing *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016), but these cases were both
tort actions addressing the "substantial revenue" requirement for out-of-state defendants under section 302(a)(3) of
the New York Civil Practice Law & Rules (the "CPLR"). They were not analyzing purposeful availment or the
analogous "transacting business" prong of the CPLR Section 302, and have nothing to do with Defendant's position.

at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the "raison d'etre' of the Agreement between BLI and Fairfield Sentry.").

Because LGT Liechtenstein invested in Sentry and Sigma with the objective of reaching the U.S. securities market, LGT Liechtenstein is similarly situated to the defendants in *BLI* and *Multi-Strategy* with respect to the fundamental purpose of its investment.

### 3.    LGT Liechtenstein's Contacts with New York Give Rise to Specific Personal Jurisdiction

#### a.    LGT Liechtenstein's Employees Regularly Corresponded with FGG's New York Office Regarding Its Investment with Sentry

LGT Liechtenstein's contacts with New York include regular correspondence with FGG personnel in New York to further its investments and realize profits from those investments through redemptions. These contacts directly relate to the transfers the Trustee seeks to recover.

For example, in July 2007, LGT Liechtenstein corresponded with FGG New York employees at the U.S.-based **fggus.com** web address and FGG New York's subagent, Lion Fairfield Capital Management ("Lion Fairfield"), regarding LGT Liechtenstein's investment in Sentry and stating that LGT Liechtenstein has put "13 mm into sentry in four months." Hunt Decl. Ex. 4; *see also* Hunt Decl. Ex. 5 (FGG email discussing LGT Liechtenstein's investment into Sentry and showing Lion Fairfield as FGG's subagent). Defendant again corresponded with FGG through Lion Fairfield in January of 2008 regarding a Sentry redemption. Hunt Decl. Ex. 6. In the same email correspondence, FGG confirms that "LGT has invested a total of $12.35m in Fairfield Sentry" and "$5.5mm into 10 fgg funds" in one month. *Id.* These exchanges with FGG's New York office regarding LGT Liechtenstein's large investments into Sentry support specific jurisdiction.

A September 2007 email from LGT Liechtenstein's subagent Lion Fairfield to FGG confirms that LGT Liechtenstein was "looking to get more of their clients into Fairfield funds, and Fairfield Sentry in particular." Hunt Decl. Ex. 7. The same email chain shows that FGG New York's Philip Toub "met with Thomas Webber from LGT Liechtenstein" who was "supsicious [sic]of madoff" and that Toub "continued [his] relationship with [LGT's] Stefan muehlmann." Hunt Decl. Ex. 7. LGT Liechtenstein met with FGG and discussed Madoff. *Id.* It knew Sentry was invested with BLMIS. *Id.*

> b.    LGT Liechtenstein's Knowledge That It Was Investing in a New York Fund Controlled by BLMIS Was Confirmed by LGT Capital Partners

LGT Liechtenstein used LGT's subsidiary investment arm, LGT Capital Partners, to assist in vetting its investments. Both LGT's website and internal FGG notes show that LGT Capital Partners advised LGT Liechtenstein on the very type of investments at issue here. *See* Hunt Decl. Ex. 8 ("LGT Private Banking **relies** on the expertise of its **sister company** LGT Capital Partners, a globally leading asset management company that specializes in alternative investments." (emphasis added)); Hunt Decl. Ex. 9 (internal FGG email discussing relationship between "LGT Capital Advisors" and LGT Liechtenstein). Through LGT Capital Partners, LGT Liechtenstein bolstered its understanding that the Fairfield Funds were almost solely invested in BLMIS. Internal documents prepared by FGG show that Sentry was invested in BLMIS and identify real concerns about BLMIS' operations. *See* Hunt Decl. Exs. 11.[3]

For example, internal FGG meeting notes show the Vice President of LGT Capital Partners, Stefan Muehlemann, met with FGG in 2003—before LGT Liechtenstein made most of the redemptions the Trustee seeks to recover—"to discuss Madoff Securities (yet again)" and discuss

---

[3] Exhibit 10 is intentionally omitted.

his concerns that Madoff was attempting to avoid SEC scrutiny because that fear was "prevalent in Switzerland and ha[d] been expressed by a good number of investor or potential investors in Fairfield Sentry." Hunt Decl. Ex. 11. The meeting notes state that despite that concern, "Muehlemann []and Bruno Hidber . . . need and want more capacity to Madoff, but cannot easily find $5.0-$10.0 mm more." *Id.* The meeting notes also state that "Muehlemann asked [FGG] to send him the FGG RFP for Sentry which he wants to review" and "may be compelled to take any capacity we may offer depending on how badly they want it." *Id.* That the coordination and sharing of information between LGT Capital Partners, LGT Liechtenstein, and FGG had been going on for years is confirmed by the email correspondence showing that FGG New York's Philip Toub "met with Thomas Webber from LGT Liechtenstein *some years ago* and he was kind of supsicious [sic] of Madoff" and that Toub "continued [his] relationship with Stefan muehlmann [sic]." Hunt Decl. Ex. 7 (emphasis added).

Simply put, the information currently available to the Trustee demonstrates meaningful contacts with FGG regarding the Fairfield Funds and further confirms LGT Liechtenstein's intent to invest with BLMIS in New York, despite serious concerns about Madoff and the propriety of its investments. Yet, relying in part on the expertise of its sister company LGT Capital Partners, LGT Liechtenstein continued to intentionally toss seeds from abroad to take root and grow as new trees in the Madoff money orchard in the United States. *See BLI*, 480 B.R. at 506; *Multi-Strategy*, 641 B.R. at 87; Hunt Decl. Exs. 9, 11. LGT Liechtenstein cannot now claim it invested in the Fairfield Funds without knowledge their money was going directly to New York to be invested in BLMIS.

       c.      LGT Liechtenstein Instructed the Fairfield Funds to Use New York
Correspondent Accounts for Subscriptions and Redemptions

LGT Liechtenstein authorized and instructed the use of New York and other United States bank accounts for the redemption payments the Trustee seeks to recover. For example, Citco Fund Services (Europe) B.V. ("Citco") confirmations show that LGT Liechtenstein, under its Citco client number, instructed redemptions from Sentry and Sigma go to Citco's New York HSBC account. Hunt Decl. Exs. 12, 13 (redemption requests with Citco number); *see also* Hunt Decl. Ex. 14, 15 (showing more Citco confirmations of redemptions that do not show New York bank account but seem to use the same process); Hunt Decl. Ex. 16 (shows LGT Liechtenstein's Citco client number in email); Hunt Decl. Ex. 23 (chart showing Citco client numbers). Further, on April 20, 2001, LGT Liechtenstein, through Citco, directed Sigma to wire funds from its Sigma account to its UBS AG correspondent bank account in Stamford, Connecticut. Hunt Decl. Ex. 17.

Moreover, Citco subscription confirmations show that LGT Liechtenstein, under its Citco client number, used Citco's New York HSBC account to *subscribe* into Sentry as well. Hunt Decl. Ex. 18; Hunt. Dec. Ex. 19 at ANWAR-CFSE-00092093, 2095, 2097; Hunt Decl. Ex. 20 at ANWAR-CFSE-00096424, 6427, 6428; Hunt Decl. Ex. 21 at ANWAR-CFSE-00100822, 0824; Hunt Decl. Ex. 23 (Citco client number chart).

LGT Liechtenstein purposely authorized and directed the Fairfield Funds to use New York bank accounts to wire the transfers of stolen Customer Property the Trustee seeks to recover to a New York bank account, demonstrating an "essential element" of the Trustee's claim. *See Multi-Strategy*, 641 B.R. at 87 (citing *Multi-Strategy*, ECF No. 97, ¶¶ 97, 110–13) ("Defendant sent wiring instructions specifically designating a New York based bank account to which defendant directed FGG to wire defendant's redemption payments from Fairfield Sentry."). This was not a one-time request to use a New York bank account. It was the parties' regular course of dealing.

16

A defendant's use of a domestic bank account in connection with the activity alleged is sufficient to establish jurisdiction. *See Licci*, 984 N.E.2d at 899–900 (leading case, holding defendant's purposeful "use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" suffices to show defendant transacted business in New York); *Picard v. The Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962, at *11 (Bankr. S.D.N.Y. Aug. 17, 2022), (finding use of New York correspondent bank accounts as "additional evidence" of personal jurisdiction); *Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184, at *11 (Bankr. S.D.N.Y. Sept. 27, 2022), (same).

Even if the HSBC and USB AG accounts used by LGT Liechtenstein—corroborated by the redemption requests and subscription confirmations cited above and attached as Exhibits 17–21 to the Hunt Declaration—were correspondent accounts, New York cases consistently hold purposeful use of a U.S. correspondent account can provide a sufficient basis on its own for jurisdiction. *See Licci*, 984 N.E.2d at 899–900; *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (foreign defendants subject to jurisdiction based solely on their designation and use of New York correspondent accounts to receive preferential transfers); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 6–11 (N.Y. 2016) (same, in connection with money laundering scheme). That LGT Liechtenstein may have been required as a subscriber to use the Fairfield Feeder Funds' accounts is also irrelevant, because it voluntarily entered into those agreements. *See In re Motors Liquidation Co.*, 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account to be purposeful even where payment in New York was dictated by agreement).

17

In this SIPA liquidation proceeding, this Court, on multiple occasions, has found jurisdiction where initial and subsequent transferee defendants received the transfers at issue from a BLMIS feeder fund into U.S. bank accounts. *See BNP*, 594 B.R. at 191 (jurisdiction over subsequent transferee defendant that sent subscriptions to, and received redemptions from, feeder fund's New York bank account); *Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC),* 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (jurisdiction over initial transferee defendant who received transfers from BLMIS's New York bank account); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279–80 (Bankr. S.D.N.Y. 2010) (same, plus defendants used their California bank account to receive transfers); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) (jurisdiction over initial transferee defendants that made "financial transactions to and from their New York BLMIS bank accounts"). These contacts, alone, support personal jurisdiction over Defendant.

        d.      LGT Liechtenstein's Subscription Agreements Support Specific Personal Jurisdiction

The Fairfield Fund subscription agreements executed by LGT Liechtenstein made clear to LGT Liechtenstein that Sentry placed all or substantially all of its assets with BLMIS and that Sigma was invested in Sentry. *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019). The Fairfield Fund subscription agreements contained affirmations that the signatory received, read, and was bound by the respective Fairfield Funds' PPM. Hunt Decl. Exs. 1–2. The PPMs, amended from time to time, included details about BLMIS' investment strategy, historical performance, and trades in the S&P 100 Index. *See, e.g.*, Hunt Decl. Exs. 3, 48. When it was doing business with FGG and the Fairfield Funds regarding its account, LGT Liechtenstein clearly knew from the PPMs:

        (i)      all investment management duties were delegated to BLMIS;

18

      (ii)    BLMIS had controlling authority over LGT Liechtenstein's investment;

      (iii)   BLMIS was a registered broker-dealer in New York and was the executing broker for Sentry's investments;

      (iv)   the SSC Strategy involved the purchase of U.S. securities and options;

      (v)    most of the stocks for which BLMIS acted as a market maker were also listed on the New York Stock Exchange;

      (vi)   the decisions regarding which U.S. Securities to purportedly purchase, and when to make such purchases, were delegated to BLMIS;

      (vii)  BLMIS was the sub-custodian of Sentry's investments; and

      (viii) BLMIS was "essential to the continued operations of" Sentry.

*See, e.g., id.*

When LGT Liechtenstein signed the Fairfield Fund subscription agreements, it submitted to venue in New York, the jurisdiction of the New York courts, service of process from New York courts, and the application of New York law, and acknowledged that U.S. counsel would act as "counsel to the Fund[s]." Hunt Decl. Ex. 1 at CFSSAM00097072; Hunt Decl. Ex. 2 at PUBLIC0683393. Thus, in addition to knowing the relationship between the Fairfield Funds and New York, LGT Liechtenstein knowingly consented to jurisdiction in the forum.

The plethora of Short Form Subscription Agreements executed by LGT Liechtenstein contained an express reaffirmation by LGT Liechtenstein of "each and every representation and covenant made by the undersigned in the original Subscription Agreement as of the date hereof." Hunt Decl. Exs. 22, 24–46. Defendant incorrectly suggests that LGT Liechtenstein's execution of subscription agreements for the Fairfield Funds should not be found to be "consent" to personal jurisdiction in New York, (Mot. at 8–9) but ignores how the subscription agreements, including choice of law and forum selection provisions, further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Chase Manhattan Bank v. Banque Générale du Commerce*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20,

1997) ("A choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."); *Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

Moreover, the Fairfield Funds' subscription agreements were a necessary predicate to LGT Liechtenstein's receipt of stolen Customer Property and are sufficiently related to the Trustee's claims to recover that stolen Customer Property from Defendant. *See Ford Motor Co.*, 141 S. Ct. at 1026 (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (noting the New York Court of Appeals "made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but rather, "it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'") (quoting *Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 900 (N.Y. 2012)).

### 4.    The Exercise of Personal Jurisdiction Over Defendant Is Reasonable

Time and again, this Court has found in dozens of adversary proceedings in this SIPA liquidation proceeding that the exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice" under nearly identical circumstances. *See, e.g.*, *Société Générale*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071, at *10–11 (finding that the exercise over a subsequent transferee is reasonable after weighing the "forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest

of the several States in furthering fundamental substantive social policies." (citing *Burger King*,

471 U.S. at 477)); *Picard v. Barfield Nominees Ltd.*, Adv. Pro. No. 12-01669 (CGM), 2022 WL

4542915 (Bankr. S.D.N.Y. Sept. 28, 2022), at \*9–10 (same); *Quilvest Finance Ltd.*, Adv. Pro. No.

11-02538 (CGM), 2022 WL 4493184, at \*9–10 (Bankr. S.D.N.Y. Sept. 27, 2022)  (same). This

case is no different. Where the plaintiff has alleged purposeful availment, as the Trustee does here,

this Court has correctly held that the burden shifts to the defendant to present a "compelling case"

that jurisdiction would be unreasonable. *In re Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*,

471 U.S. at 472–73). LGT Liechtenstein does not satisfy its burden.

Just as this Court found in 34 previous denials of defendants' motions to dismiss in this

SIPA liquidation proceeding, the exercise of jurisdiction over LGT Liechtenstein is reasonable

because LGT Liechtenstein is "not burdened by this litigation. Defendant has actively participated

in this Court's litigation for over ten years. It is represented by U.S. counsel with offices on Wall

Street and 'irrevocably' submitted to the jurisdiction of New York courts when it signed its

subscription agreements with the Fairfield Funds." *Multi-Strategy*, 641 B.R. at 88; *Banca Carige*,

Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at \*8–9 (Bankr. S.D.N.Y. June 30, 2022);

*Lombard*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at \*9; *First Gulf*, Adv. Pro. No.

11-02541 (CGM), 2022 WL 3354955, at \*10. And, as this Court held in *Multi-Strategy*, "[t]he

forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in

this Court." *Multi-Strategy*, 641 B.R. at 88–89 (citing *Picard v. Maxam Absolute Return Fund,*

*L.P. (In re BLMIS)*, 460 B.R. 106, 117, 119 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 76 (S.D.N.Y.

2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *In re BLMIS*,

418 B.R. at 82; *In re Fairfield Sentry Ltd.,* 627 B.R. at 568); *see also In re Picard*, 917 F.3d 85,

103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to

recover fraudulently transferred property."). Moreover, LGT Liechtenstein's financial advisement arm, LGT Capital Partners, that advised it on its FGG investments, and that will undoubtedly provide essential testimony and documents, has an office between Times Square and Bryant Park in New York. *See* Hunt Decl. Ex. 47 (LGT website showing LGT Capital Partners' New York office). This adversary proceeding is not now suddenly burdensome for Defendant to litigate. It "comport[s] with fair play and substantial justice" to pursue LGT Liechtenstein in New York where it knowingly did business. *Burger King*, 471 U.S. at 477.

### B.    IN THE ALTERNATIVE, THE TRUSTEE IS ENTITLED TO JURISDICTIONAL DISCOVERY

If this Court finds the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee has certainly made a "threshold showing" warranting jurisdictional discovery, and respectfully requests that here. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009). As this Court recently noted in the *Lion Global* case, "a plaintiff may obtain discovery in connection with issues related to the court's jurisdiction." Transcript from Oct. 19, 2022 Hearing on Defendant's Motion to Dismiss, *Picard v. Lion Global Investors Limited*, Adv. Pro. No. 12-01194 (CGM) at 56:25–57:2 (citing *Haber v. United States*, 823 F.3d 746 (2d Cir. 2016)). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the parties in the forum state, the plaintiff's right to conduct jurisdictional discovery must be sustained." *Id.*

### IV.    THE TRUSTEE SUFFICIENTLY PLEADED THE AVOIDABILITY OF THE INITIAL TRANSFERS

Defendant attempts to ignore this Court's multiple unfailing rulings that incorporation of the Fairfield Amended Complaint is proper. *Multi-Strategy*, 641 B.R. at 91; *Picard v. Union Securities Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509, at *6 (Bankr. S.D.N.Y. Aug. 18, 2022); *Picard v. Barclays Bank (Suisse) S.A.*, 2022 WL 2799924, at *5 (Bankr.

S.D.N.Y. July 15, 2022); *Picard v. Banque Cantonale Vaudoise*, 2022 WL 2761044, at *3 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro No. 12-01207, 2022 WL 2390551, at *3 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *7 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *7. The Trustee sufficiently "pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *Multi-Strategy*, 641 B.R. at 13. Similar to these cases, the Complaint against LGT Liechtenstein alleged "[t]he Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl. ¶ 35.

A.    **ALL ADVERSARY PROCEEDINGS ARE PART OF THE MAIN CASE FOR PURPOSES OF RULE 10(C)**

The District Court has already found the Trustee's incorporation by reference of the Fairfield Amended Complaint is sufficient in the Trustee's subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complains against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re Madoff Sec.*"). Since all adversary proceedings filed under the umbrella of a single bankruptcy case are considered one action for purposes of Rule 10(c), the court's decision in *In re Madoff Sec.* allowing for incorporation by reference is law of the case. No intervening change of controlling law exists to stray from this precedent. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, 596 B.R. 451, 463 (S.D.N.Y. 2019), aff'd sub nom. *In re Bernard L. Madoff*

*Inv. Sec. LLC*, 976 F.3d 184 (2d Cir. 2020) (holding that the law of the case doctrine foreclosed

relitigation of an issue where the district court "considered and rejected the very arguments that

defendants now make."); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal

citations omitted) (holding that when a court has ruled on an issue, that decision should generally

be adhered to by that court in subsequent stages in the same case unless "cogent" and "compelling"

reasons, such as an intervening change in controlling law, the availability of new evidence or the

need to correct a clear error or prevent manifest injustice militate otherwise).

Because this adversary proceeding and the action filed against Sentry fall under the same

SIPA liquidation proceeding umbrella, and because LGT Liechtenstein has failed to identify any

change of controlling law, the Trustee's incorporation of the Fairfield Amended Complaint is

proper.

### B.    INCORPORATION IS PERMITTED WHERE IT ACHIEVES THE PURPOSE OF RULE 10(C)

The Trustee's incorporation of the Fairfield Amended Complaint meets the purpose of Rule

10(c)—to promote short, concise pleadings, free of unwarranted repetition. *In re Morrison*, 375

B.R. 179, 193 (Bankr. W.D. Pa. 2007). The incorporation is addressed specifically to the initial

transferee and is in the section of the Complaint labeled "Initial Transfers from BLMIS to Fairfield

Sentry" following allegations relating to the Trustee's avoidance claims in the Fairfield Amended

Complaint. Compl. ¶ 35. The Trustee references only the Fairfield Amended Complaint, which

provides notice of the avoidability of the initial transfers in a manner that avoids repetition and

over-complication.

### C.    THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 8

Incorporation of the Fairfield Amended Complaint also satisfies Rule 8(a)(2). By

incorporating the Fairfield Amended Complaint, the Trustee made a *prima facie* showing that the

initial transfers are avoidable under Section 548(a) so that the Trustee can recover from LGT Liechtenstein pursuant to Section 550(a). *See Citibank*, 12 F.4th at 196 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original).

The Trustee makes specific allegations regarding LGT Liechtenstein's liability under Section 550(a) throughout his Complaint and only incorporates the Fairfield Amended Complaint as part of one paragraph in pleading the avoidability of the initial transfers. Compl. ¶ 35. LGT Liechtenstein's burden is minimal. Here, as in many other cases, the Trustee adequately pleaded the avoidability of the initial transfers due to Sentry's knowledge of BLMIS's fraud. *Multi-Strategy*, 641 B.R. at 91; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL 2390551, at *3; *Lombard*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *7.

### D.   THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENT UNDER RULE 9

The Trustee's Complaint meets the pleading standard under FED. R. CIV. P. 9(b). While Rule 9 requires a heightened pleading standard for allegations of fraud, this Court has found that for bankruptcy trustees, "applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Grosvenor*, Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716, at *16 (quoting *Picard*, 454 B.R. at 329) (internal quotations omitted).  It also found that "in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Id.* The Trustee makes specific allegations regarding

LGT Liechtenstein's liability under Section 550(a) throughout his Complaint, meeting this standard as he has done in similar proceedings. *See, e.g.*, *id.*

## V.    SECTION 546(e) SAFE HARBOR

In *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). The decision in *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). Defendant participated in those consolidated District Court proceedings. *See* Opinion and Order ("546(e) Opinion"), *Picard v. LGT Bank in Liechtenstein Ltd.*, Case No. 13-cv-01394-JSR, ECF No. 10; Mem. of Law of Def. LGT Bank AG, Vaduz (f/k/a LGT Bank in Liechtenstein AG, Vaduz) in Support of its Mot. to Withdraw the Reference to Bankruptcy Court, ECF No. 13. As such, Defendant is bound by *Cohmad* and that decision is law of the case. Yet, Defendant attempts to argue that Section 546(e) bars recovery from it, notwithstanding Sentry's actual knowledge. *See* Mot. at 26–28. This argument has been repeatedly rejected by this Court, *see, e.g. Multi-Strategy*, 641 B.R. at 92–95, and by the District Court in its recent denial of seven motions for leave for an interlocutory appeal on the applicability of Section 546(e)'s safe harbor. *Multi-Strategy II*, 2022 WL 16647767, at *8–9 (finding no reasonable grounds for disagreement as to the Bankruptcy Court's orders).

Defendant misconstrues *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2020 WL 7345988, at *6–8 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") to assert that Section 546(e) safe harbor applies. Mot. at 23. In any event, as this Court noted recently, *Fairfield III* does not apply here for several reasons.

First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the

district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546 (e),* No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on the issue.

*Grosvenor*, Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716, at *23. Also, *Fairfield III* does not apply because there, (1) the plaintiffs did not meet their pleading burden, (2) the funds were transferors and not initial transferees, as they are here, and (3) the court did not rule on whether the knowledge exception to the safe harbor applied. *Id.* at 23–24. For the same reasons that this Court distinguished *Fairfield III* in *Grosvenor*, *Fairfield III* does not apply here either.

While *Fairfield III* does not apply, *Multi-Strategy II* does. *Id.* at *24. In *Multi-Strategy II*, the District Court ruled that this Court has handled the issue correctly at the pleadings stage. Where the Trustee has pled Sentry's actual knowledge, *Multi-Strategy II* confirms that subsequent transferees do not have an independent right under Section 546(e) to argue their actual knowledge should instead apply. *See id.* at *9.

A.     **THE TRUSTEE SUFFICIENTLY ALLEGED SENTRY HAD ACTUAL KNOWLEDGE OF MADOFF'S FRAUD**

This Court has previously found that the Trustee has sufficiently pled that the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *Picard v. Fairfield Inv. Fund Ltd.*, No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). In *Multi-Strategy II*, the District Court clarified that "Section 546(e) could not be read to protect payments received by persons or entities who knew they were not 'settlement payments' or transfers made in connection with a securities contract." *Multi-Strategy II,* 2022 WL 16647767, at *6 (citing *Cohmad*, No. 12-MC-115, 2013 WL 1609154, at *3). The court further expounded on its decision in *Cohmad* finding that the avoidability of the initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee and the Trustee is not required to plead actual knowledge of the subsequent transferee. *Id.* at *5–7

(defendants' "lack of knowledge of Madoff's fraud cannot render unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield").

### B.    SECTION 546(E) DOES NOT APPLY INDEPENDENTLY TO RECOVERY ACTIONS

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer.") (internal citations omitted) (emphasis in original)). This is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of the debtor's estate, while Section 550 is a "utility provision," intended to execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether or not Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[4] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, No. 12-MC-115, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth

---

[4] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115, ECF No. 119 (S.D.N.Y. May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

initial transferees and subsequent transferees are entitled to raise a defense based on the application

of Section 546(e) to the *initial* transfer from Madoff Securities." (emphasis added)).

### C. WHETHER DEFENDANT CAN AVAIL ITSELF OF A SECTION 546(e) SAFE HARBOR BASED ON SEPARATE AGREEMENTS WITH THE FAIRFIELD FUNDS IS A FACT-INTENSIVE INQUIRY AND NOT APPROPRIATE AT THE MOTION TO DISMISS STAGE

Defendant also argues that Section 546(e) applies based on separate agreements between

LGT Liechtenstein and Fairfield Funds, but this similarly provides no basis for granting their

Motion. *Multi-Strategy II* addressed this hypothetical and confirmed that any such application of

the Section 546(e) safe harbor "do[es] not appear answerable on the pleadings." *Multi-Strategy

II*, 2022 WL 16647767, at *9. Specifically, Judge Rakoff held that whether an initial transfer could

have been made "in connection with" an agreement between an initial transferee and subsequent

transferee for purposes of Section 546(e) was a factual question that provided no basis for an

interlocutory appeal. *Id.* at *8–9. This is because whether or not an initial transfer is avoidable

will require a fact-intensive inquiry surrounding each of the initial transfers. These facts, which

are Defendant's burden to plead and prove, *id.* at *3 n.3, are not known at this stage of the litigation

and certainly cannot be determined from the pleadings or from Defendant's Motion.[5]

### VI. LGT LIECHTENSTEIN'S ASSERTION OF A MERE CONDUIT DEFENSE IS IMPROPER AT THIS STAGE

Defendant improperly tries to shift its burden to plead an affirmative defense that it was a

mere conduit under Section 550 of the Bankruptcy Code. Whether a transferee is a mere conduit

is an affirmative defense, and, as recognized by this Court, an affirmative defense cannot be

---

[5] The Trustee does not concede that any agreements or transfers between Sentry and Defendant independently activate the safe harbor under Section 546(e) as to Defendant. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendant or Sentry's articles of association for purposes of Section 546(e). The Trustee also does not concede that in any event, Defendants' knowledge would become relevant, as opposed to that of the initial transferee.

established on the face of a complaint, unless under the "limited exception" where "facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Picard v. Merkin*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Defendant has not proven and cannot prove that here.

## A.    THE COMPLAINT PLEADS THAT DEFENDANT IS A SUBSEQUENT TRANSFEREE

To recover a subsequent transfer under Section 550(a), the Trustee must show "that the transfer was avoided and that the defendant is an initial or subsequent transferee." *Citibank*, 12 F. 4th at 197 (citing COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021)). The Trustee must also "allege the 'necessary vital statistics—the who, when, and how much—' of the purported transfers to establish an entity as a subsequent transferee of the funds." *BNP*, 594 B.R. at 195 (citations omitted). At the pleading stage this "does not require dollar-for-dollar 'accounting' of the exact funds at issue." *Id*.

Here, the Trustee alleges that Defendant was a shareholder in the Fairfield Funds and received subsequent transfers of stolen BLMIS Customer Property as redemptions of its equity interests. Compl. ¶¶ 2, 3, 34, 41–43, 47. The Trustee alleges that LGT Liechtenstein purposefully invested in and received redemption payments from the Fairfield Funds and entered into subscription agreements, designating specific New York bank accounts to receive subsequent transfers. *Id.* ¶¶ 6–7. The Trustee alleges the necessary vital statistics of the Transfers he seeks to recover in exhibits to the Complaint. Compl. Exs. C, E. The Trustee also alleges that the transfers from BLMIS to the Fairfield Funds are avoidable. Compl. at ¶¶ 4, 36–38. Therefore, the Trustee has met his pleading burden under Section 550.

Additionally, nothing on the face of the Complaint supports an argument that Defendant was a mere conduit. The Trustee, for example, does not allege that Defendant lacked control over the subsequent transfers.

### B.    MERE CONDUIT IS AN AFFIRMATIVE DEFENSE AND DEFENDANT'S BURDEN TO PLEAD

Regardless of how it frames the argument in its Motion, Defendant asks this Court to shift the burden of pleading its affirmative defense to the Trustee, by making the elements of the defense an element of the Trustee's Section 550 claim. *See* Mot. at 34. Defendant is wrong, and clearly ignores precedent in this SIPA liquidation proceeding. Negating a mere conduit affirmative defense is not an element of a 550 claim and it is the Defendant's burden to plead that defense.

The Second Circuit was clear in *Citibank*, 12 F. 4th 171, that the party seeking the protection of an affirmative defense has the burden to plead that defense. Defendant is asking this Court to disregard *Citibank,* contort the pleading obligations under Section 550(b), find it is the Trustee's burden to negate the mere conduit affirmative defense at the pleadings stage, and dismiss the Complaint. *See* Mot. at 34. Defendant argues that in order to plead that Defendant was a transferee, the Trustee must show not only receipt of the transferred funds, but also that Defendant held the legal right of control and use of those transferred funds. Mot. at 34–35. Defendant is wrong on the legal standard and ignores the Trustee's allegations that it—not its unnamed clients— submitted the redemption requests and Defendant—not its unnamed clients—was a subsequent transferee of stolen Customer Property. Now, it is Defendant's burden to attempt to establish the fact-intensive mere conduit defense. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection."); *In re Palm Beach Finance Partners, L.P.*, 488 B.R. 758, 771 (Bankr. S.D. Fla. 2013) ("The defendant's burden of pleading an affirmative defense means

that it will rarely be appropriate for a court to grant a motion to dismiss based upon an affirmative defense. This is especially true when the affirmative defense is comprised of factually intensive elements. . . .").

### C.    THE MERE CONDUIT DEFENSE IS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Because of the many factual questions inherent in resolving this defense, courts rarely address this issue at the pleading stage. *See, e.g.*, *In re Glob. Crossing, Ltd.*, 385 B.R. 52, 57 n.1 (Bankr. S.D.N.Y. 2008) (denying a defendant's motion to dismiss and noting that the assertion of the mere conduit defense is "better addressed on summary judgment."); *Picard v. Miller* (*In re BLMIS*), 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (same); *Sarachek v. Schochet* (*In re Agriprocessors*), Adv. Pro. No. 10-09190, 2012 WL 4059897, at *10 (Bankr. N.D. Iowa Sept. 14, 2012) (denying motions to dismiss and for summary judgment to provide "[a]dditional time . . . necessary to further develop the factual record"). It is not surprising that the vast majority of the cases cited by Defendant address the issue at the summary judgment stage or later.[6] In fact, depending on the facts at issue, the mere conduit defense may not even be resolvable through summary judgment. *See, e.g.*, *In re CVEO Corp.*, 327 B.R. 210, 217–18 (Bankr. D. Del. 2005) (holding that genuine issues of material fact preclude entry of summary judgment on mere conduit defense to preference claims).

---

[6] *See In re Finley*, 130 F.3d 52 (2d Cir. 1997) (ruling on motion for summary judgment); *Picard v. Keller Family Trust* (*In re BLMIS*), 634 B.R. 39 (Bankr. S.D.N.Y. 2021) (same); *Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc.* (*In re The Warnaco Group, Inc.*), Nos. 01 B 41643 (RLB), 01-03628 (RLB), 03 Civ. 4201 (DAB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) (affirming decision granting partial summary judgment); *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988) (same); (*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1 (S.D.N.Y. 2007) (ruling on motion for summary judgment); *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716 (6th Cir. 2017) (ruling on an appeal following two trials and multiple opinions, including a ruling on a motion for summary judgment); *Malloy v. Citizens Bank of Sapulpa* (*In re First Sec. Mortg. Co.*), 33 F.3d 42 (10th Cir. 1994) (appeal of judgment); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996) (ruling on motion for judgment as a matter of law following the close of the trustee's case); *Menotte v. United States* (*In re Custom Contractors, LLC*), 745 F.3d 1342 (11th Cir. 2014) (ruling on an appeal after trial); *Nordberg v. Société Générale* (*In re Chase & Sanborn Corp.*), 848 F.2d 1196 (11th Cir. 1988) (same).

The scarcity of caselaw applying the mere conduit defense at the pleading stage makes sense, as the defense would need to be apparent on the face of the complaint—which was the case in the few cases upon which Defendant relies.[7] Those cases differ greatly from the situation here, where the Complaint alleges specifically that LGT Liechtenstein received the stolen Customer Property at issue.

**D.    EVEN THOUGH CONSIDERATION OF THE MERE CONDUIT DEFENSE IS NOT GERMANE, DEFENDANT'S MOTION FAILS TO ESTABLISH ANY FACTS IN SUPPORT OF THE DEFENSE**

To establish a mere conduit defense, Defendant must show that it lacked dominion and control over all transactions at issue. *See Christy v. Alexander & Alexander of N.Y. Inc.* (*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*), 130 F.3d 52, 57–58 (2d Cir. 1997) ("*In re Finley*") (summary judgment decision); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49–52 (Bankr. S.D.N.Y. 2021) (summary judgment decision), (aff'd, No. 1:21-cv-08678-JPO (S.D.N.Y. Sept. 30, 2022)).

"Mere" means "mere." While asking this Court to rule preemptively, even Defendant, through the cases it cites, recognizes that the extent to which a recipient has legal rights to the redemption payments is a relevant consideration. *Bear, Stearns Securities Corp. v. Gredd* (*In re Manhattan Investment Fund Ltd.*), 397 B.R. 1, 17–19 (S.D.N.Y. 2007) (even if a recipient is subject to some restrictions on the use of the funds, it is not a conduit) (summary judgment

---

[7] *See, e.g.*, *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) (dismissing complaint because the mere conduit defense was apparent on the face of complaint alleging that defendant CFO took money from the debtor and transferred it to debtor's principal but did not allege defendant received any of the subject payments, benefitted from them, or was the intended beneficiary); *In re Mervyn's Holdings, LLC*, 426 B.R. 96 (Bankr. D. Del. 2010) (dismissing defendant bank in multi-defendant action that acted as the trustee for an identified trust holding mortgage pass-through certificates, loans, and liens generated in connection with the sale of the debtor). Defendant also cites to *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008) and *In re Lyondell Chem. Co.*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014). However, *Super Vision* is a non-bankruptcy case alleging RICO claims and *Lyondell* arose out of leverage buyout payments. Moreover, in both cases, unlike the case here, conduit status was apparent on the face of the complaint. *See, e.g.*, *Lyondell*, 503 B.R. at 381 (noting that the dismissed defendants were "sued as conduits").

decision); *In re Enron Corp.*, 361 B.R. 36, 48 (Bankr. S.D.N.Y. 2006) (summary judgment determining whether entity was mere conduit required resolution of whether it had legal title to the payments); *Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*), 2016 WL 1069303, at *1, *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant was not a conduit where transfers were received without restriction into bank account in her name).

The question of Defendant's dominion and control will turn on information possessed by Defendant, including: (i) the specific requirements of any agreements among the Defendant, the transferor, and the purported ultimate recipients; (ii) communications related to the transfers; (iii) how and whether the Defendant received fees; and (iv) the relationship between the transferor and the Defendant, and between the Defendant and the alleged ultimate recipients.

Defendant's Motion clearly fails to even allege that it received the funds on behalf of any "private and business clients" or identify anyone for whom they claim to have acted as a conduit and for which transfers. *See, e.g.*, *In re Finley*, 130 F.3d at 58–59 (engaging in a detailed analysis of the relationship between the defendant and the supposed ultimate recipient of the funds in order to resolve the mere conduit issue); *Keller*, 634 B.R. at 51–52 (similar). Defendant merely notes that the Complaint

> fails . . . to allege additional facts suggesting that LGT Liechtenstein held legal title to any money received from Fairfield Sentry (or, subsequently, Fairfield Sigma), or acted with discretion for using transfers it received, instead acknowledging that the Bank is a "private bank," and a subsidiary of a greater LGT "wealth and asset management group" serving "private and institutional investors."

Mot. at 34. However, as noted, it is Defendant's burden to show it lacked dominion and control, and here, Defendant fails to even affirmatively allege that it was acting on behalf of any such "customers" or "clients" or identify the supposed ultimate recipients of the funds. *See id.*

34

At this stage, only Defendant knows what it did with the stolen Customer Property after it received the stolen Customer Property from the Fairfield Funds. If Defendant intends to assert the mere conduit defense, the Trustee has the right to know who was on the receiving end of the purported conduit and explore Defendant's relationship with its purported end user clients. Consideration of this defense clearly must wait for another day.

## VII.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE IS SIMILARLY IMPROPER FOR A MOTION TO DISMISS

Just as Defendant's fact-dependent mere conduit arguments are inappropriate for determination at the pleading stage, so too is Defendant's assertion of the 550(b) good faith affirmative defense. Although it is not the Trustee's burden to plead good faith, as expressly found by the Second Circuit in *Citibank*, Defendant nevertheless attempts to make an unsupportable argument that its good faith is established as a matter of law on the facts of the Complaint. *See* Mot. at 36–40.

This Court should reject Defendant's attempt to raise this affirmative defense on a motion to dismiss, just as it and the District Court recently did. *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11; *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11; *Picard v. ABN Ireland (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (McMahon, J.) ("*ABN Ireland*"). Like Defendant here, the defendants in *Banque Syz*, *First Gulf*, and *ABN Ireland* argued that the complaint allegations established their good faith defense. *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11; *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11; *ABN Ireland*, 2022 WL 1304589, at *3. Both this Court and the District Court rejected that argument and concluded that the good faith affirmative defense could not be resolved at the pleading stage. *ABN Ireland*, 2022 WL 1304589, at *3; *Banque Syz*, Adv. Pro. No. 11-02149 (CGM), 2022 WL

2135019, at *11 ("The burden of proving good faith falls squarely on [the defendants] and this Court cannot make a determination on [the defendants'] affirmative defense until after a fact-intensive inquiry."); *First Gulf*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11 (same).

As discussed above, by their very nature, affirmative defenses are fact-driven and require the presentation and analysis of evidence. *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). In its rejection of the defendants' good faith argument, the District Court in *ABN Ireland* highlighted the fact that the good faith inquiry notice standard is "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees." *ABN Ireland*, 2022 WL 1304589, at *3 (quoting *Citibank*, 12 F.4th at 194).

As such, even if this Court were to consider Defendant's fact-intensive affirmative defense, there are myriad unknown facts critical to opposing a good faith defense, which the Trustee must be given the opportunity to uncover through discovery. *See ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a fact-based determination 'can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.'"); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process.").

Tellingly, Defendant has failed to cite to a single case in which a court has granted a motion to dismiss at the pleading stage based on a good faith defense. Defendant clearly cannot prevail on the good faith affirmative defense on a motion to dismiss unless it can show that the Trustee is unable to prove *any* set of facts to support his claim. *See McKenna*, 386 F.3d at 436; *Merkin I*, 440 B.R. at 256 (characterizing the assertion of an affirmative defense at the pleading stage as a "limited exception to the general rule"). Defendant does not meet that standard here.

Arguments concerning value are also inappropriate for a motion to dismiss barring highly unusual circumstances, which Defendant has failed to show exist here. *See, e.g.*, *Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial."). Indeed, this Court has previously concluded that "[a]s to whether the Defendant 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." *Id.*

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, should the Court conclude it is necessary and appropriate, the Trustee respectfully requests the opportunity to conduct discovery regarding LGT Liechtenstein's purported grounds for dismissal.

Dated: December 5, 2022
     New York, New York

Of Counsel:

**Baker & Hostetler LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Marie L. Carlisle
Email: mcarlisle@bakerlaw.com

*/s/ David J. Sheehan*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello Calvani
Email: tcalvani@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*