**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05346 (CGM) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH INTERNATIONAL, | |
| Defendant. | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT MERRILL LYNCH INTERNATIONAL'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

I.      THE BLMIS PONZI SCHEME..........................................................................3

II.     MLI AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS ......................................3

ARGUMENT ............................................................................................................6

I.      THIS COURT HAS PERSONAL JURISDICTION OVER MLI ......................................6

        A.      MLI Purposefully Availed Itself of the Laws and Privileges of New York
                by Investing in the Fairfield Funds ..........................................................8

                1.      MLI's Intentional Investments in BLMIS Through the Fairfield
                        Funds Establish Minimum Contacts ............................................8

                        a.      *BLI* and Recent Decisions of this Court Support
                                Jurisdiction Over MLI...................................................10

                2.      The Forum Selection and Choice of Law Clauses in the
                        Subscription Agreements Are Strong Jurisdictional Contacts..................13

                3.      MLI's Purposeful Use of New York Bank Accounts Supports
                        Specific Jurisdiction...................................................................14

                4.      MLI's Communications with New York in Connection with Its
                        Investments Also Establish Minimum Contacts.......................................16

                5.      The Underlying Cause of Action Arises Out of and Relates to
                        MLI's Contacts with the Forum................................................19

        B.      The Exercise of Personal Jurisdiction Is Reasonable .............................................20

        C.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery..................22

II.     THE AMENDED COMPLAINT AND THE INCORPORATED MATERIAL
        COMPLY WITH RULES 8 AND 10 ..................................................................22

III.    THE TRUSTEE ADEQUATELY PLEADS THAT MLI RECEIVED BLMIS
        CUSTOMER PROPERTY ...............................................................................24

        A.      The Trustee Has Met His Pleading Burden .........................................................25

|   | B. | MLI's Tracing Arguments Are Inappropriate at the Pleading Stage | 27 |

IV.    SECTION 546(e) DOES NOT BAR RECOVERY FROM MLI .......................................28

V.    THE TRUSTEE ADEQUATELY ALLEGES ACTUAL FRAUDULENT INTENT UNDER SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE ...............30

VI.    THE SECTION 550(b) AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE ..............................................................................33

    A.    MLI Cannot Show That It Gave Value on a Motion to Dismiss. ..........................34

    B.    The Amended Complaint Does Not Demonstrate that MLI Received the Transfers in Good Faith ........................................................................................35

    C.    MLI Is Not Entitled to Dismissal of Subsequent Transfer Recovery Claims by Recasting Them as Preference Claims..............................................................38

CONCLUSION...................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*,
  96 F.Supp.3d 182 (S.D.N.Y. 2015) ...................................................................35

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019)............................................................26, 27

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996)..................................................................................8

*Anwar v. Fairfield Greenwich Ltd.*,
  286 F.R.D. 258 (S.D.N.Y. 2012) ......................................................................33

*Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)........................................................................14, 15

*Arigna Tech. Ltd. v. Nissan Motor Co. Ltd.*,
  No. 2:22-cv-00126 (JRG)(RSP), 2022 WL 3020136 (E.D. Tex. July 29, 2022) ..................21

*Averbach v. Cairo Amman Bank*,
  19-cv-0004-GHW-KHP, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) ..............................18

*Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C), (In re Arcapita Bank
  B.S.C.(C))*,
  640 B.R. 604 (S.D.N.Y. 2022)...........................................................................15

*In re Bayou Grp., LLC*,
  439 B.R. 284 (S.D.N.Y. 2010)...........................................................................34

*In re Bernard L. Madoff*
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
  2021) ...........................................................................................4, 29, 34

*In re Bernard L. Madoff*
  Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
  14, 2022) ...................................................................................... *passim*

*In re Bernard L. Madoff*
  Adv. Pro. No. 11-02539 (CGM) 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
  10, 2022) .................................................................................14, 23

*In re Bernard L. Madoff*
 Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
 2022) .................................................................................................................15, 17, 19, 27

*In re Bernard L. Madoff*
 Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. 2022)...........13, 14, 19

*In re Bernard L. Madoff*
 Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714 (Bankr. S.D.N.Y. Oct.
 28, 2022) .......................................................................................................................20, 23

*In re Bernard L. Madoff*
 Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct.
 17, 2022) .................................................................................................................................9

*In re BLMIS*
 Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
 30, 2022) .................................................................................................................................9

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462 (1985).....................................................................................................7, 12, 13

*Chloé v. Queen Bee of Beverly Hills, LLC,*
 616 F.3d 158 (2d Cir. 2010)...................................................................................................20

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.),*
 393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................................28

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.,*
 801 F. Supp. 2d 211 (S.D.N.Y. 2011) ....................................................................................24

*Dandong v. Pinnacle Performance Ltd.,*
 966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................................14

*Davis v. Bifani,*
 No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007).........................24

*Diaz v. Loc. No. 241, Transp. Workers Union of Am., Univ. Div.,*
 No. 17 cv 8898, 2019 WL 3765924 (S.D.N.Y. Aug. 9, 2019) ................................................35

*In re Dreier LLP,*
 452 B.R. 391 (Bankr. S.D.N.Y. 2011)...............................................................................34, 37

*In re Dreier LLP,*
 453 B.R. 499 (Bankr. S.D.N.Y. 2011)....................................................................................37

*Eldesouky v. Aziz,*
 No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)..................................14

*ESI, Inc. v. Coastal Corp.*,
   61 F. Supp. 2d 35 (S.D.N.Y. 1999) ........................................................................8

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019) *aff'd in part, vacated in part on other
   grounds,* 40 F.4th 56 (2d Cir. 2022) ......................................................................8

*Fairfield Sentry Ltd. v. HSBC Sec. Serv. (Luxembourg) S.A.*,
   Nos. 21-cv-10316, 21-cv-10334 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug.
   31, 2022) ...............................................................................................................22

*Finn v. All. Bank*,
   860 N.W.2d 638 (Minn. 2015).........................................................................31, 37

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)........................................................................7, 16, 18, 19

*Gettinger v. Picard*,
   141 S. Ct. 2603 (2021)...........................................................................................31

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ..............................17

*Hau Yin To v. HSBC Holdings plc*,
   No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)...............................................................................................11

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........28

*Hill v. HSBC Bank plc*
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................18

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...........14, 19

*Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB),
   2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ........................................................13

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .....13

*Int'l Controls Corp. v. Vesco*,
   556 F.2d 665 (2d Cir. 1977).................................................................................35

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..................................................................................7

*Irving Trust Co. v. Chase Nat. Bank*,
    65 F.2d 409 (2d Cir. 1933)......................................................................39

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) ......................................................................................................22

*Liberatore v. Calvino*,
    293 A.D.2d 217 (N.Y. App. Ct. 1st Dep't. 2002) ..................................17

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) .............................................................................15

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ..................................................31

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).......................................................................7

*Motors Liquidation Co. Avoidance Action Tr. v. JP Morgan Chase Bank, N.A. (In
    re Motors Liquidation Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)....................................................16

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co. Inc.*,
    No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ...............................24

*Picard v. ABN Ireland (In re BLMIS)*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022)
    (McMahon, J.)............................................................................33, 34, 38

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)......................................................38

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)........................................... *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012).......................................... *passim*

*Picard v. Cathay Life Ins. Co. Ltd.*,
    Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
    1, 2022) ...............................................................................................29, 30

*Picard v. Charles Ellerin Revocable Trust*,
    Adv. Pro. No. 10-04398, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ...............24, 25

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................................ *passim*

*Picard v. Cohen (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*,
    Adv. Pro. Nos. 08-01789, 10-04311 (SMB), 2016 WL 1695296 (Bankr.
    S.D.N.Y. Apr. 25, 2016) ................................................................................ 34

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009) .............................................................. 22, 29

*Picard v. Delta Nat'l Bank & Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
    12, 2022) ......................................................................................................... 33, 38

*Picard v. Est. of Seymour Epstein*,
    No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................................... 31

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................. *passim*

*Picard v. First Gulf Bank (In re Bernard L. Madoff)*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) ......................................................................................................... 9, 33, 34, 35

*Picard v. The Gerald and Barbara Keller Family Tr.*,
    2022 WL 4592898 (S.D.N.Y. Sept. 30, 2022) .................................................. 32

*Picard v. Gettinger*,
    976 F.3d 184 (2d Cir. 2020) ............................................................................. 31, 32

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
    No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .................... 10, 24

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
    638 B.R. 41 (Bankr. S.D.N.Y. 2022) ............................................................... 31

*Picard v. Korea Bank Exchange*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ......................................................................................................... 23

*Picard v. Korea Exchange Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ......................................................................................................... 30

*Picard v. Lisa Beth Nissenbaum Tr.*,
    No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ............................................ 31

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ....................7, 20

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................................34

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (S.D.N.Y. 2014)....................................................................................24, 25, 26

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff)*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022).............................................................................. *passim*

*Picard v. Multi-Strategy Fund, Ltd.*,
    No. 22-cv-06502-JSR (S.D.N.Y. Nov. 3, 2022) ........................................................28, 29, 30

*Picard v. Public Inst. for Soc. Sec.*,
    Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
    17, 2022) ................................................................................................................................23

*Picard v. Sage Realty*,
    No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ...............................31

*Picard v. Shapiro (In re Madoff)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................................26

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
    Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
    18, 2022) ................................................................................................................................23

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019)..........................................................................................9, 16, 21

*Salomon v. Kaiser (In re Kaiser)*,
    722 F.2d 1574 (2d Cir. 1983).................................................................................................32

*Sec. Inv. Prot. Corp. v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §
    550(a))*,
    501 B.R. 26 (S.D.N.Y. 2013)..................................................................................................23

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................28, 29

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)...............................................................................................31, 39

*Silverman v. K.E.R.U Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................................25, 26

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ............................................................................ 18

*Stoebner v. Opportunity Fin., LLC*,
  909 F.3d 219 (8th Cir. 2018) .......................................................................... 31

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019) ......................................................................... 7, 9

*U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*,
  68 B.R. 690 (Bankr. S.D.N.Y. 1986) .............................................................. 21

*U.S. v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ........................................................... 24

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................... 11, 12, 17

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ........................................................................... 20

## Statutes

11 U.S.C. § 546(e) ....................................................................................... *passim*

11 U.S.C. § 547 .................................................................................................. 39

11 U.S.C. § 548(a) ............................................................................................... 2

11 U.S.C. § 548(a)(1)(A) ....................................................................... 28, 30, 31

11 U.S.C. § 548(c) ............................................................................................. 34

11 U.S.C. § 550 ..................................................................................... 30, 38, 39

11 U.S.C. § 550(a) ................................................................................ 2, 16, 27, 28

11 U.S.C. § 550(a)(2) ........................................................................................ 24

11 U.S.C. § 550(b) ............................................................................................. 33

11 U.S.C. § 550(d) ............................................................................................. 27

15 U.S.C. §§ 78aaa-*lll* ........................................................................................ 1

**Rules**

Fed. R. Civ. P. 8(a)(2).............................................................................................................22

Fed. R. Civ. P. 9(b) ...............................................................................................................32

Fed. R. Civ P. 10(c) .........................................................................................................22, 23

Fed. R. Civ. P. 12(b)(6).........................................................................................................29

N.Y. C.P.L.R. 302(a)(1)..........................................................................................................14

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this memorandum of law and the supporting Declaration of Carrie Longstaff ("Longstaff Decl.") in opposition to defendant Merrill Lynch International's ("MLI") motion to dismiss the Amended Complaint ("Motion").

## PRELIMINARY STATEMENT

This action seeks to recover over $16 million in subsequent transfers of stolen BLMIS customer property that MLI received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, the "Fairfield Funds"). MLI purposefully invested in BLMIS through the Fairfield Funds, entities created for the express purpose of funneling investments into BLMIS in New York. Nonetheless, MLI moves to dismiss the Trustee's Amended Complaint, arguing that (i) this Court does not have personal jurisdiction over it, (ii) the Trustee has failed to provide sufficient notice of his claims, (iii) MLI did not receive transfers of customer property, (iv) the safe harbor under Section 546(e) bars recovery, (v) the Trustee failed to adequately allege the avoidability of the initial transfers, and (vi) MLI is entitled to prevail on the good faith and for value defense. MLI's arguments fail.

There is no question that this Court has personal jurisdiction over MLI. MLI purposefully invested in the Fairfield Funds knowing that these funds fed substantially all their money into BLMIS. MLI knew that BLMIS was the *de facto* investment manager, broker-dealer, and custodian of the Fairfield Funds' (and MLI's) investments. MLI communicated with Fairfield Greenwich Group ("FGG") in New York regarding its related BLMIS investments, relied on New

York bank accounts to invest in and redeem money from Sentry, and agreed to submit to New York jurisdiction and choice of law provisions. These facts, plus the additional contacts discussed herein, are similar contacts to those found sufficient in this Court's recent decisions to establish specific jurisdiction over MLI.

The Trustee's Amended Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief. MLI asserts that the Trustee violates Rules 8 and 10 by incorporating by reference his second amended complaint against the Fairfield Funds, but then concedes that it has notice of the reason for the incorporation and of the claims against it. In any event, MLI's argument conflicts with precedent from the District Court, the purpose of the rules, and this Court's many holdings that adoption by reference here is proper.

The Trustee also plausibly alleges that MLI received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to MLI. The Trustee further alleges the necessary vital statistics (*i.e.*, the "who, when, and how much") concerning the subsequent transfers. Nothing more is required at this stage of the litigation. MLI's fact-based arguments to the contrary are both unavailing and premature.

MLI's contention that Section 546(e) requires dismissal of the Trustee's claims has been repeatedly rejected by this Court and now by the District Court. MLI provides the Court no reason to break with this line of precedent. Likewise, MLI's arguments that BLMIS's actual intent under Section 548(a) has not been adequately alleged by virtue of the Ponzi scheme presumption are also contrary to existing precedent.

Finally, MLI's purported "good faith" and "for value" defense is a fact-intensive affirmative defense that cannot be established on the face of the Amended Complaint and is inappropriate at the

motion to dismiss stage.  Accordingly, the Trustee respectfully requests that the Court deny MLI's

Motion in its entirety.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS in New York until its collapse in 2008.  (*See* Am.

Complaint ¶¶ 38, 40, ECF No. 137.)  BLMIS purportedly operated three principal business units:

(i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory

business (the "IA Business").  (*Id.* ¶ 40.)  For its IA Business customers, BLMIS purportedly

executed a split-strike conversion strategy ("SSC Strategy"), which involved (a) investing in a

basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling

call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing

U.S. treasury bills when the money was out of the market.  (*Id.* ¶¶ 48, 53, 61.)  In reality, BLMIS

operated a Ponzi scheme through its IA Business.  (*Id.* ¶ 44.)  On December 11, 2008, Madoff's

fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws,

including securities fraud, investment advisor fraud, and mail and wire fraud.  (*Id.* ¶¶ 1, 67.)

### II.    MLI AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

MLI is a United Kingdom broker-dealer that is part of the larger global Merrill Lynch

organization, which includes various affiliates and subsidiaries (collectively, "Merrill Lynch").

(Am. Compl. ¶¶ 4, 18.)  Merrill Lynch's organization was divided into three groups: (i) Global

Markets & Investment Bank group ("GMI"), (ii) Global Private Client Group, and (iii) Merrill

Lynch Investment Managers group.  (*See id.* ¶ 20.)  Although Merrill Lynch operated through

these three different groups, each group had members from Merrill Lynch International as well as

various other Merrill Lynch entities.  (*See id.*)  Because "there [was] only one Merrill Lynch,"

these three groups operated seamlessly and would communicate and share knowledge with each other. (*Id.*)

The directors at MLI and within Merrill Lynch's GMI group had significant concerns about BLMIS, instituting a "No Madoff" policy and refusing to offer products on BLMIS funds including Sentry. (*See id.* ¶¶ 5-6.) A member of GMI, Fabio Savoldelli, said that Merrill Lynch was aware of "many, many, many red flags" at BLMIS. (*Id.* ¶ 6.) Likewise, MLI executives knew something was wrong at BLMIS and, after the fraud was revealed, stated in emails it was not a surprise and their "suspicions ha[d] been confirmed[.]" (*Id.* ¶¶ 11-12.)[1]

Yet, Merrill Lynch's GMI group, including members of MLI, decided to create leveraged products to invest in the Fairfield Funds, which would invest nearly all of those funds into BLMIS. (*Id.* at ¶¶ 3, 7-8; Longstaff Decl., Exs. 8, 13-14, 26.) Knowing that the Fairfield Funds invested with BLMIS and because of its concerns, MLI's leveraged products were intentionally limited to allow only 10% of the basket of funds to be invested in the Fairfield Funds, with the first 25% of any losses relating to the entire basket of funds being passed onto its clients. (Am. Compl. ¶¶ 3, 8-9, 35.) In addition to these protections, MLI shorted its BLMIS investment in the Fairfield Funds, and in November 2008, MLI tried to redeem its "total holdings" in Sentry, which was never fully executed before BLMIS's fraud broke. (Am. Compl. ¶ 10; Longstaff Decl., Ex. 25.)

MLI created these leveraged products with the Fairfield Funds knowing they were managed and controlled by FGG, a *de facto* partnership with its principal place of business in New York. (Am. Compl. ¶¶ 3, 33-34); *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021). MLI

---

[1] While the allegations in Paragraphs 11 and 12 refer to executives at "Merrill Lynch," these emails were written by MLI executives. *See* Am. Compl. ¶¶ 11-12.

communicated with and received information about its investments from FGG in New York,

including from Lauren Ross, Lina Pava, and Philip Toub.  (*See generally*, Longstaff Decl. Exs. 9-

12, 19, 22, 27; Am. Compl. ¶¶ 33-34.)

    In order to invest in Sentry and Sigma, MLI executed subscription agreements

acknowledging (i) its sophistication as an investor and (ii) that MLI had "such knowledge and

experience in financial matters sufficient to evaluate the risks involved in an investment in the

Fund." (Longstaff Decl., Exs. 1-4 ¶¶ 5, 8; *see also* Am. Comp. ¶ 24.)  The subscription agreements

also required that MLI agree to New York choice of law, jurisdiction, and forum clauses.  (*See*

Longstaff Decl., Exs. 1-3 ¶¶ 16, 19; Ex. 4 ¶¶ 17, 20.)  For Sentry investments, the agreements

instructed MLI to send subscription payments to Sentry's bank account with HSBC Bank USA in

New York (the "HSBC NY Account"), which MLI did.  (*Id.*, Exs. 1-3 ¶ 3; Exs. 5-7 (exemplars of

subscriptions); Am. Compl. ¶ 25.)  MLI also used a bank account at J.P. Morgan Chase Bank in

New York to receive redemption funds from Sentry.  (Longstaff Decl., Exs. 1-3 ¶ 30; Exs. 23-25

(exemplars of redemptions); Am. Compl. ¶ 26; Fairfield SAC ¶¶ 89, 91, 96.)

    The subscription agreements incorporated the Fairfield Funds' Private Placement

Memoranda ("PPMs"), and by signing, MLI warranted that it had "received and read a copy of the

[PPMs]."  (Longstaff Decl., Exs. 1-3 ¶ 7; Ex. 4 ¶ 7.)  The PPMs made plain the New York-centric

nature of the Fairfield Funds, stating that nearly all Sentry's assets were invested with BLMIS and

that Sigma invested all its assets in Sentry.  (*Id.*, Exs. 8, 13-14, 26; *see also* Am. Compl. ¶ 3.)  The

PPMs explicitly disclosed that BLMIS was a registered broker-dealer in New York and held

multiple roles as the *de facto* investment manager, broker dealer, and custodian for Sentry.

(Longstaff Decl. Exs. 8, 13-14, 26.)  The PPMs specifically informed investors that BLMIS would

have custody of Sentry's assets in the United States and would execute the funds' purported

investment strategy using the SSC Strategy by purchasing U.S. equities, U.S. options, and Treasury Bills traded on U.S. exchanges.  (*Id.*)

Prior to BLMIS's collapse, MLI received approximately $16,077,730 in subsequent transfers from the Fairfield Funds.  (Am. Compl. ¶ 2.)  For each transfer, the Trustee's Amended Complaint sets forth the subsequent transferor (Sentry or Sigma), the subsequent transferee (MLI), and the date and amount of the subsequent transfer.  (Am. Compl. ¶¶ 77-85, Exs. C, D, E.)

The Trustee also filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover the fraudulent transfers of stolen customer property in the amount of approximately $3 billion.  (Am. Compl. ¶ 70; *see also* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 (the "Fairfield SAC".)  In 2011, the Trustee settled with the Fairfield Funds.  (Am. Compl. ¶ 71.)  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  (Am. Compl. ¶ 71.)  Sigma separately consented to a judgment in the amount of $752.3 million.  *See* Consent J., *Picard v. Fairfield Sentry Ltd. (In re Bernard L. Madoff)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 19, 2009), ECF No. 110.  The Trustee then commenced adversary proceedings, including this one, to recover the missing customer property.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER MLI

Specific jurisdiction exists where the defendant purposely directs its activities into the forum, and the underlying cause of action arises out of or relates to those activities.  *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) ("*Fairfield*").  The specific jurisdiction analysis is a two-step inquiry.  First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant

purposely availed itself of the privilege of conducting activity in the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012). Moreover, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *See Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff)*, 641 B.R. 78, 87-88 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*") (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). Minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *See Fairfield*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Second, the Court conducts a reasonableness inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *Fairfield*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

The court must look at the "totality of the circumstances," rather than analyze each contact in isolation, when determining whether a defendant's contacts with the forum establish personal

jurisdiction. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29

(2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 57, (S.D.N.Y. 1999). The totality of

the circumstances here demonstrates that MLI purposefully availed itself of the protections and

privileges of conducting business in New York and that exercise of personal jurisdiction over it is

reasonable.

### A.    MLI Purposefully Availed Itself of the Laws and Privileges of New York by Investing in the Fairfield Funds

MLI had multiple contacts with New York that establish this Court's jurisdiction. MLI:

(i) purposefully targeted the New York securities market by investing in the Fairfield Funds, which

MLI knew was managed by, custodied with, and invested with BLMIS in New York; (ii) agreed

to direct connections with New York through the Fairfield Funds' subscription agreements as to

jurisdiction, forum selection, service of process, and choice of law provisions; (iii) used New York

bank accounts to send subscription payments to and receive redemption payments from Sentry;

and (iv) engaged in communications with FGG in New York with respect to its investments. While

many of these contacts are sufficient to establish personal jurisdiction on their own, in their totality,

they plainly establish that MLI purposefully directed its activities to New York and the United

States. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F.

Supp. 3d 323, 344 (S.D.N.Y. 2019) *aff'd in part, vacated in part on other grounds,* 40 F.4th 56

(2d Cir. 2022) ("When all [defendant]'s Agreement-related contacts are considered together it is

clear [the defendant] purposely availed itself of the forum.").

### 1.    MLI's Intentional Investments in BLMIS Through the Fairfield Funds Establish Minimum Contacts

The Trustee's allegation that MLI knowingly invested with BLMIS through the Fairfield

Funds alone establishes personal jurisdiction. (Am. Compl. ¶¶ 7-10, 12, 21, 23, 73-74; Fairfield

SAC ¶¶ 89, 91, 96.) This Court has repeatedly found in similar adversary proceedings within this

SIPA liquidation proceeding that it has jurisdiction over a party that "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516–518 (Bankr. S.D.N.Y. 2012) ("*BLI*"); *see also Picard v. Société Générale Private Banking (Suisse) S.A. (In re Bernard L. Madoff)*, Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071, at *4 (Bankr. S.D.N.Y. Oct. 17, 2022); *Picard v. First Gulf Bank (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *3–4 (Bankr. S.D.N.Y. July 18, 2022); *Multi-Strategy*, 641 B.R. at 86; *Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *3–4 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*").    As the Second Circuit recognized, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019) ("*ET Decision*").

The Trustee's Amended Complaint sets forth MLI's intention to invest with BLMIS through New York-based FGG, as well as receipt of the subsequent transfers made to MLI in New York thereby demonstrating this Court's jurisdiction.    (Am. Compl. ¶¶ 2-3, 21-37, 77-86.) Additionally, by executing subscription agreements with the Fairfield Funds and affirming that it received and read the Fairfield Funds' PPMs, MLI knew that: (i) Sentry invested substantially all its assets with BLMIS and Sigma invested all its assets in Sentry; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC

Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operations of" Sentry. (*See* Am. Compl. ¶¶ 27-30, 35; Longstaff Decl., Exs. 8, 13-14, 26.)

a.    ***BLI* and Recent Decisions of this Court Support Jurisdiction Over MLI**

Judge Lifland already concluded that investors like MLI who intentionally invest with BLMIS in New York through the Fairfield Funds are subject to personal jurisdiction in New York. *See BLI*, 480 B.R. at 516-518. Here, as in *BLI*, (1) the Trustee's suit is based upon the subsequent transferee's investment in Sentry "with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom"; and (2) MLI was provided with PPMs and executed subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 506-08. BLI, like MLI, "purposefully availed itself of the benefits and protections of New York Laws . . . by . . . intending" that its investment would ultimately end up at BLMIS. *Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transfers were subject to the Court's personal jurisdiction").

Faced with the obvious weight of *BLI*, MLI attempts to distinguish itself by arguing that "the Trustee does not allege that MLI knew substantially all money invested in the Funds would be invested in BLMIS." (Def.'s Br. Mot. Dismiss at 12, ECF No. 141 (hereinafter cited as "Mot. at ____").) This plainly is incorrect. The Trustee alleges that MLI knew and created its leveraged

10

products using the Fairfield Funds with the fundamental purpose of investing in BLMIS.  (Am.
Compl.  ¶ 7-12, 35.)  These allegations coupled with the PPMs, which MLI avowed it had read
and reviewed when it signed the subscription agreements, makes clear that MLI knew and
intentionally directed its funds to be invested with BLMIS in New York.  (Am. Compl. ¶¶ 27-28,
31; Longstaff Decl. Exs. 8, 13-14, 26.)

MLI ignores this and asserts that the Trustee's allegations are made "on the basis of
documents MLI received *only after* its initial investment" that bear no relation to any particular
investment.  (Mot. at 13.)  As this Court has noted, "[t]his is not the test."  *Multi-Strategy*, 641
B.R. at 88.  The Court must assess a defendant's contacts with the forum, not a transfer's contacts.
*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 189 (Bankr. S.D.N.Y. 2018) ("The
inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses
on the relationship among the defendant, the forum, and the litigation.").

MLI also contends that the Trustee conflates the Fairfield Funds' actions with those of MLI
and that Supreme Court precedent forbids jurisdiction premised on the acts of an intermediary.
(Mot. at 14 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).)  But *Walden* "is [of] no assistance
to Defendant."  *Multi-Strategy*, 641 B.R. at 87.  Using the "effects test," the *Walden* court found
that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in
Georgia merely because he knew that the plaintiff resided in Nevada.  *Walden*, 571 U.S. at 289.
In this regard, the Court simply reaffirmed the well-established principle that personal jurisdiction
cannot be premised solely on a plaintiff's unilateral contacts with the forum state.  *Id*. at 284, 289
(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

The facts and applicable law of *Walden* are significantly different from those here.  Rather,
the Trustee has pleaded that MLI's contacts with New York are "intertwined with [its] transactions

or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286. As discussed above,

MLI intentionally directed millions of dollars in investments to BLMIS in New York. MLI also

physically entered New York through its use of mail and other means of communication with

FGG's New York office, receiving redemptions and selling shares through its New York based

bank account, and using a New York bank account to gain access, through Sentry, to BLMIS,

which are all relevant contacts. *Multi-Strategy*, 641 B.R. at 87; (Longstaff Decl. Exs. 5-7, 9-12,

19, 22-25.) A finding of personal jurisdiction on the basis of such purposeful actions directed at a

New York broker-dealer and the U.S. securities markets centered in New York comports with the

traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 471–74

(noting that due process concerns are satisfied when an out-of-state defendant purposely directs

his activities at residents of the forum state and purposely benefits from those activities).

The Trustee also is not arguing that every investor should be subject to jurisdiction in all

forums where its investment company decides to make investments, but contrary to MLI's stream

of commerce argument (Mot. at 14-15), its investments in the Fairfield Funds "did not merely 'end

up' in an account at BLMIS as a result of happenstance or coincidence. Rather, [MLI] purposefully

availed itself of the benefits and protections of New York laws by knowing, intending and

contemplating the substantial majority of funds invested in [the Fairfield Funds] would be

transferred to BLMIS in New York to be invested" there. *BLI*, 480 at 517. The fact that the

Fairfield Funds invested MLI's funds with BLMIS in New York was not merely foreseeable to

MLI, it was MLI's sole objective. Therefore, a finding of jurisdiction here is proper. *See e.g.*,

*Multi-Strategy*, 641 B.R. at 86–89; *Picard v. Banque SYZ & Co., SA (In re Bernard L. Madoff)*,

Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *3–4 (Bankr. S.D.N.Y. June 14, 2022)

12

("*Banque Syz*"); *Picard v. Banca Carige (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02570
(CGM), 2022 WL 2387522, at *3 (Bankr. S.D.N.Y. 2022).

**2.    The Forum Selection and Choice of Law Clauses in the Subscription
Agreements Are Strong Jurisdictional Contacts**

MLI's contentions that the subscription agreements it signed do not give rise to jurisdiction
because the Trustee is not a party to the agreements and the Trustee's claims do not arise under
the subscription agreements misapprehends the relevance of these provisions in this action.  (Mot.
at 8-9.)  The Trustee is not seeking to enforce the choice of venue and choice of law provisions,
nor does the Trustee argue that this Court has jurisdiction based solely on MLI's consent.  Rather,
MLI's repeated agreement to New York law, jurisdiction, and venue is a significant jurisdictional
contact and serves as evidence that MLI purposefully directed its activities toward New York.
(Am. Compl. ¶ 24; Longstaff Decl., Exs. 1-3 ¶¶ 16, 19; Ex. 4 ¶¶ 17, 20.)

As this Court found in *BLI*, a defendant's agreement to New York venue, jurisdiction, and
law provides a strong jurisdictional contact with New York.  480 B.R. at 517, n.15; *see also Burger
King*, 471 U.S. at 482 (holding a choice of law "provision standing alone would be insufficient to
confer jurisdiction" but "it reinforced [defendant's] deliberate affiliation with the forum State and
the reasonable foreseeability of possible litigation there").  Contrary to MLI's argument, then, this
Court's prior decision in the Fairfield Chapter 15 liquidation proceedings—where the Fairfield
liquidators argued that defendants had consented to personal jurisdiction based *solely* on the forum
selection clause in subscription agreements—is of no relevance here.  *See Fairfield Sentry Ltd. v.
Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL
3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank,
N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8–12 (S.D.N.Y. Aug. 24, 2022).

MLI's consent to New York choice of law, jurisdiction, and forum is a relevant factor in the jurisdictional inquiry. *See Multi-Strategy*, 641 B.R. at 88 (finding the fact that defendant "irrevocably" submitted to the jurisdiction of New York courts when it signed its subscription agreements with the Fairfield Funds was a relevant factor in determining whether to exercise jurisdiction); *Banque Syz*, 2022 WL 2135019, at *5 (same); *Carige*, 2022 WL 2387522, at *4 (same). Taken as a whole with MLI's other intentional actions directed toward this forum discussed herein, MLI's consent is another contact to support the exercise of jurisdiction here.

### 3.    MLI's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

Courts have repeatedly held that the purposeful use of New York bank accounts to transfer funds is sufficient in and of itself to establish personal jurisdiction under either the due process analysis or the New York long-arm statute, N.Y. C.P.L.R. 302(a)(1).[2] *See, e.g., Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same). As this Court has held: "Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Picard v. Meritz Fire & Marine Ins. Co. LTD. (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02539 (CGM) 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*") (citing *Arcapita v. Bahrain*

---

[2] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous") (citations omitted).

14

*Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016)); *Picard v. Parson Fin. Panama S.A. (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*") (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account").

MLI intentionally used a bank account at J.P. Morgan Chase in New York—in the name of "MLI Equity Derivatives"—to receive redemption payments from Sentry. (Am. Compl. ¶ 26; Longstaff Decl., Exs. 1-3 ¶ 30; Exs. 23-25 (exemplars of redemptions).) Contrary to MLI's contention, it does not matter that MLI's New York bank account might have been used as a correspondent bank because courts have held that the use of a correspondent bank account is sufficient to establish personal jurisdiction. *See, e.g., Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful"); *see also Arcapita*, 549 B.R. at 67–69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers at issue). Because MLI "directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [MLI]." *Arcapita*, 549 B.R. at 70, n.18.

The same reasoning applies to MLI's use of the Fairfield Funds' HSBC NY Account for purposes of subscription payments. (Am. Compl. ¶ 25; Longstaff Decl. Exs. 1-3 ¶ 3; Exs. 5-7 (exemplars of subscriptions).) That the subscription agreements mandated that subscribers use Sentry's New York account is irrelevant because ultimately MLI "was free to accept or reject the proposed terms." *Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C), (In re Arcapita Bank*

15

*B.S.C.(C))*, 640 B.R. 604, 617–18 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual

term designating New York correspondent account supported finding of personal jurisdiction); *see*

*also Motors Liquidation Co. Avoidance Action Tr. v. JP Morgan Chase Bank, N.A. (In re Motors*

*Liquidation Co.)*, 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a

correspondent account purposeful even where payment in New York was dictated by agreement).

MLI's argument that the Trustee falls short of his obligation to "establish jurisdiction with

respect to each of the subsequent transfers" because the Amended Complaint does not specify

which redemption payments were received by MLI in a New York bank also fails.  (Mot. at 11

(citing *BNP*, 594 B.R. at 190).)  MLI misconstrues the requirements for personal jurisdiction and

this Court's decision in *BNP*.  A court must assess a defendant's contacts with the forum, not a

transfer's.  *BNP*, 594 B.R. at 189 ("The inquiry whether a forum State may assert specific

jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the

forum, and the litigation.").  Provided that a court finds that a defendant's minimum contacts with

the forum support specific jurisdiction, the court may adjudicate any claims, so long as they are

sufficiently related to those contacts.  *See Ford Motor Co.*, 141 S. Ct. at 1026–28.  Such is the case

here.  The Second Circuit has already found that, "[t]hese transfers are domestic activity."  *ET*

*Decision*, 917 F.3d at 105 ("When a domestic debtor commits fraud by transferring property from

a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States.").

Additionally, the Trustee provides this Court with documents evidencing that the transfers from

Sentry to MLI went through MLI's New York bank account.  (Longstaff Decl., Exs. 23-25.)

### 4.    MLI's Communications with New York in Connection with Its Investments Also Establish Minimum Contacts

While a defendant's "physical presence in a forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092, at *5 (quoting

*Walden*, 571 U.S. at 285); *Banque Syz*, 2022 WL 2135019, at *4. Email communications can also

be a contributing factor for finding personal jurisdiction. *See Parson*, 2022 WL 3094092, at *4–5

(finding defendant's email communications with FGG as evidence that defendant purposefully

availed itself of the benefits of doing business in the forum); *Golden Archer Invs., LLC v. Skynet*

*Fin. Sys.*, No. 11-3673(RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding

communications including emails, phone calls, and video conferences with company in New York

subject defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 220-21 (N.Y.

App. Ct. 1st Dep't. 2002) (holding that jurisdictionally relevant transactions may be found solely

on the basis of phone, mail, and electronic communications) (citing cases).

During the relevant period, MLI emailed FGG's New York personnel, including Lauren

Ross, a Director of Investor Relations and MLI's designated relationship manager, as well as

others, to get information regarding its investments in the Fairfield Funds. (Longstaff Decl., Exs.

2-3 ¶ 6; Exs. 9-12, 19, 22, 27.) Even without discovery, the documentation currently available to

the Trustee shows that MLI called and emailed FGG in New York to request information about

Fairfield Greenwich Group and the Fairfield Funds and in exchange received information such as:

(i) Private Placement Memorandums and track records of returns for the Fairfield Funds;

(ii) Sentry "tear sheets" which compared the fund's strategy and performance history to the S&P

Index and other benchmarks for the Fairfield Funds; and (iii) weekly and monthly performance

updates for the Fairfield Funds. (Longstaff Decl, Exs. 8, 10-17, 19-22, 26.) FGG also sent MLI

fund presentations and marketing materials regarding BLMIS's strategy, rates of return, and

comparisons of BLMIS's rates of return over time to market indices. (Longstaff Decl., Ex. 18.)

MLI relied on the information from FGG to track the Fairfield Funds' returns.  These contacts

support this Court's jurisdiction over MLI.

MLI's reliance on a trio of cases asserting common law claims brought against fund service

providers for the proposition that the New York contacts identified by the Trustee are insufficient

is unavailing.  (Mot. at 10, 12, 16 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir.

2018); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC

Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)).)  This Court has

determined that this line of cases is not relevant to the Trustee's actions against investors in BLMIS

feeder funds, like MLI.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal

jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which

arose from their New York contacts with the Tremont Funds.").  This is not a dispute between two

parties about services owed under a foreign contract, like the breach of fiduciary duty and other

claims in *SPV Osus*, *Hill*, and *Hau Yin To*.[3]  This action is brought by a SIPA Trustee in a SIPA

liquidation proceeding in New York to recover fraudulent transfers from an investor whose

transfers of funds to and from accounts in New York—intended to place money with BLMIS in

New York—evidence an intent to direct activity toward the U.S. securities markets.  *See BLI*, 480

B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated

---

[3] MLI's reliance on *SPV Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by
defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor Co.*, which held that
causation is not a perquisite for jurisdiction. 141 S. Ct. at 1026–30.  In *Ford Motor Co.*, the Supreme Court found
that specific jurisdiction does not always require proof of causation, and instead, a lawsuit can "relate to" the
defendant's contacts with the forum. *Id.* at 1026*; see also Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW-KHP,
2022 WL 2530797, at *7 (S.D.N.Y. Apr. 11, 2022) (in a report and recommendation, Magistrate Judge Parker found
that *SPV Osus* did not set out a definitive standard requiring proximate cause for jurisdiction and that the New York
Court of Appeals clarified that "causation is not required" for New York long-arm jurisdiction).  Also, *SPV Osus*'s
finding that a "handful of communications and transfer of funds" do not support jurisdiction, which is cited by MLI
(*see* Mot. at 16), is not availing here given MLI's significant jurisdiction contacts, discussed above.

by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

5.    <strong>The Underlying Cause of Action Arises Out of and Relates to MLI's Contacts with the Forum</strong>

The Trustee's claims also "arise out of or relate to" MLI's contacts that touch this forum. As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship. *See Ford Motor Co.*, 141 S. Ct. at 1026–30. Rather, this test may be satisfied if the defendant's conduct "involves at least in part financial transactions that touch the forum." *Fairfield*, 627 B.R. at 566.

MLI argues that its communications with FGG lack the "nexus" to the redemptions at issue. (Mot. at 15.) The Trustee, however, is not required to link every jurisdictional contact to a particular redemption. Courts have jurisdiction over defendants, not transfers. *See, e.g.*, *Parson*, 2022 WL 3094092, at *5 (considering the Trustee's jurisdictional allegations holistically and finding them related to his claims); *see also BNP*, 594 B.R. at 190 (even though each transfer is a separate claim, the court did not conduct a transfer-by-transfer analysis but instead focused on the overall relationship of each defendant).

This Court has found that the Trustee's recovery actions against defendants similarly situated to MLI are "directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4 (same); *see also HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts"). Those activities include MLI's wiring funds in U.S. dollars to New York, communicating with FGG in New York about its New York-based investments, requesting and receiving redemption payments in New York bank accounts, knowing that its investments were being placed with BLMIS in New York, and knowing that because the

19

transfers were originating from BLMIS, MLI could be subject to litigation in the United States. (Longstaff Decl. Exs. 1-4, 5-7, 9-12, 19, 22, 23-25; *see* Am. Compl. ¶¶ 7-12, 21-37, 73-74; Fairfield SAC ¶¶ 89, 91, 96.) Accordingly, the Trustee's recovery action arises out of and relates to MLI's contacts and financial transactions that touch this forum.

## B.    The Exercise of Personal Jurisdiction Is Reasonable

MLI fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where, as here, a plaintiff has made a threshold showing of minimum contacts, the burden lies with the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010). Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendants to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case, and any burden on MLI is minimal. *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any burden on a foreign defendant). Just as this Court found in *Multi-Strategy*, as well as other matters, the exercise of jurisdiction over MLI is reasonable because "[d]efendant is not burdened by this litigation" and "has actively participated in this Court's litigation for over ten years," is "represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts when it signed its subscription agreements with the Fairfield Funds." *Multi-Strategy*, 641 B.R. at 88; *Picard v. Fullerton Capital Pte. Ltd. (In re*

*Bernard L. Madoff)*, Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714, at \*4 (Bankr. S.D.N.Y. Oct. 28, 2022).

MLI raises the specter of the UK's implementation of the EU General Data Protection Regulation ("GDPR"), the UKDPA, and conjectures that it might impose a burden in evaluating how "Personal Data" may be "permissibly transferred to and processed in the United States." (Mot. at 19.)   But any such "burden" is purely speculative and reference to the UKDPA is a smokescreen.   As several courts have recognized, simply invoking the GDPR does not excuse a party from its discovery obligations, much less insulate it from this Court's jurisdiction.   *See, e.g., Arigna Tech. Ltd. v. Nissan Motor Co. Ltd.*, No. 2:22-cv-00126 (JRG)(RSP), 2022 WL 3020136, at \*1–2 (E.D. Tex. July 29, 2022).   Further, Article 49(1) of the GDPR expressly allows the transfer of data outside the UK and EU when "necessary for the establishment, exercise or defence [sic] of legal claims," and the European Union states in its GDPR implementation guidelines that information disclosed during pre-trial discovery in civil litigation falls with Article 49.   *Id.* at \*2 (quoting Article 49(1)(e), EU GDPR: Regulation (EU) 2016/679, O.J. 2016 L 119/1; Guidelines 2/2018 on derogations of Article 49 under Regulation (EU) 2016/679, p. 11).[4]   Moreover, concerns regarding GDPR can be addressed by the Litigation Protective Order available in this matter.

Additionally, the United Kingdom is not a more appropriate forum as MLI contends. Rather, the United States has a strong interest in applying the provisions of its Bankruptcy Code and in overseeing the estates of U.S. debtors.   *See U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*, 68 B.R. 690, 699 (Bankr. S.D.N.Y. 1986); *ET Decision*, 917 F.3d at 103

---

[4] MLI's UKDPA argument is, in any event, likely to be rendered moot by President Biden's October 7, 2022 Executive Order to Implement the European Union-U.S. Data Privacy Framework (available at https://www.whitehouse.gov/briefing-room/statements-releases/2022/10/07/fact-sheet-president-biden-signs-executive-order-to-implement-the-european-union-u-s-data-privacy-framework/ (last visited November 14, 2022)), which provides for data protections that would enable the creation of the EU-U.S. Data Privacy Framework and allow for data transfers between the U.S. and the EU and UK.

(noting that the United States has a "compelling interest in allowing domestic estates to recover fraudulently transferred property."). This "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 641 B.R. at 88–89; *Banque Syz*, 2022 WL 2135019, at *5. This Court's exercise of personal jurisdiction over MLI is reasonable, especially since the "'most efficient resolution of the controversy' would be in the United States, where the inextricably-related BLMIS liquidation is ongoing." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009).

### C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery because the Trustee has made a threshold showing of jurisdiction, and "additional facts to establish personal jurisdiction . . . lie within Defendant['s] knowledge." *Fairfield Sentry Ltd. v. HSBC Sec. Serv. (Luxemborg) S.A.*, Nos. 21-cv-10316, 21-cv-10334 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022). The Trustee has shown how MLI, *inter alia*, (i) knowingly and purposely subscribed with the Fairfield Funds for the purpose of investing in the U.S. securities markets; (ii) used U.S. bank accounts to transact business with Sentry; and (iii) had significant contacts with FGG personnel in the U.S. *See supra*, pp. 8-20. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient for discovery. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *6 (S.D.N.Y. Nov. 16, 2009).

## II.    THE AMENDED COMPLAINT AND THE INCORPORATED MATERIAL COMPLY WITH RULES 8 AND 10

MLI contends that the Trustee's incorporation by reference of the Fairfield SAC violates Rules 8(a)(2) and 10(c). (Mot. at 19-22.) It is well established, however, that the Trustee may

incorporate by reference the Fairfield SAC to demonstrate the avoidability of the initial transfers from BLMIS to Sentry. (Am. Compl. ¶¶ 73-74.)

MLI professes that it would have to expend undue effort to "ferret out" the relevant allegations from the "morass" of the Fairfield SAC, but then concedes that it is well aware of the single purpose of the incorporation: to plead "the avoidability of the initial transfers from BLMIS to the Funds." (Mot. at 20-21.) It is clear, then, that MLI has more than adequate notice of the claims against it and the relevant allegations of the Fairfield SAC to which it needs to respond and is therefore not prejudiced or unduly burdened by the incorporation. Furthermore, as this Court has found, if leave to amend the complaint was granted, "all parties would be prejudiced by delay" and the Trustee would need "to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable." *Picard v. Korea Bank Exchange*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *8 (Bankr. S.D.N.Y. Sept. 21, 2022).

MLI's contention that the incorporation of the Fairfield SAC violates Rule 10(c) fares no better. Indeed, this Court and the District Court have already found that the Trustee's adoption by reference of the entire Fairfield Complaint is proper. *See e.g., Sec. Inv. Prot. Corp. v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 36 (S.D.N.Y. 2013); *Fullerton*, 2022 WL 16556714, at *6–7; *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 at *7–8 (Bankr. S.D.N.Y. Aug. 18, 2022); *Picard v. Public Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 at *9–10 (Bankr. S.D.N.Y. Aug. 17, 2022); *Meritz*, 2022 WL 3273044 at *7–8. Because all the adversary proceedings were filed under the umbrella of a single bankruptcy case, they are considered one action for purposes of Rule 10(c), and "may be properly adopted by reference in other pleadings in that action." *Fullerton*, 2022 WL 16556714, at *6.

23

The cases cited by MLI are inapposite as they, unlike here, involve the incorporation by reference of pleadings in separate, unrelated actions to add entirely new claims in circumstances that would have led to confusion or lack of notice of the claims asserted. *See Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co. Inc.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007); *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007). Since MLI has given this Court no reason to depart from its numerous previous decisions holding that the Trustee's adoption by reference of the Fairfield SAC is proper, its motion should be denied.

## III. THE TRUSTEE ADEQUATELY PLEADS THAT MLI RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee states a claim for recovery under Section 550(a)(2) by plausibly alleging that MLI received subsequent transfers of stolen BLMIS customer property from the Fairfield Funds. MLI contends that the Amended Complaint falls short because the Trustee fails "to trace the funds from BLMIS" (Mot. at 3), and because the Trustee's aggregated claims to recover subsequent transfers made by Sentry across all adversary proceedings exceed the total amount of transfers Sentry received from BLMIS. (Mot. at 22-26.)

This Court has repeatedly rejected these arguments, finding that the Trustee has alleged the "vital statistics" of the subsequent transfers and is not required to perform a tracing analysis as MLI acknowledges. (Mot. at 23); *see also Multi-Strategy*, 641 B.R. at 90; *Banque Syz*, 2022 WL 2135019, at *7; *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (S.D.N.Y. 2014) ("*Merkin*") (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only

allege sufficient facts to show the relevant pathways through which the funds were transferred

from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514,

at *3. Specifically, the Trustee must allege the "'necessary vital statistics—the who, when, and

how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."

*Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U Realty Corp. (In re Allou Distribs., Inc.*),

379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

### A.    The Trustee Has Met His Pleading Burden

The Trustee's Amended Complaint, along with the Fairfield SAC incorporated by

reference, easily meets the Trustee's pleading burden. The Trustee alleges that MLI received

transfers, identified by date and amount, from Sentry and Sigma, and that Sentry and Sigma

invested substantially all their funds with BLMIS and received initial transfers from BLMIS. (*See*

Am. Compl. ¶ 2, 73-74, 77-86; Exs. B-E; *see* Fairfield SAC ¶¶ 89, 91, 96.) The Trustee thus

plausibly alleges that MLI received subsequent transfers of customer property by (a) outlining the

relevant pathways through which stolen customer property was transferred either from BLMIS to

Sentry and subsequently to MLI or from BLMIS to Sentry and then subsequently from Sentry to

Sigma, and subsequently from Sigma to MLI, and (b) providing the necessary vital statistics (*i.e.*,

the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See,*

*e.g.*, *Multi-Strategy*, 641 B.R. at 91(finding that Trustee's complaint, which detailed the date and

amount of the relevant transfer from Sentry to defendant, was sufficient to survive a motion to

dismiss); *Banque Syz*, 2022 WL 2135019, at *12 (finding the exhibits to the complaint "provide

[defendant] with the 'who, when, and how much' of each transfer.").

Unable to demonstrate that the Trustee fails to meet the relevant pleading burden here, MLI

argues for a new one, asserting that the Trustee must tie each subsequent transfer MLI received to

a specific initial transfer from BLMIS. (Mot. at 23-24.) In *Merkin*, however, this Court refused

to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). And to the extent MLI argues that the Trustee must detail which and what portion of each subsequent transfer comprises customer property, this too is wrong. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding that "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

MLI's reliance on this Court's decision in *Picard v. Shapiro* is unavailing because it did not change the Trustee's pleading burden. (*See* Mot. at 23 (citing *Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*")).) In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. That complaint, however, did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amount of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.* Here, the Trustee has alleged the vital statistics of each

transfer MLI received and sets out the investment relationship between MLI and Sentry and Sigma.[5]

### B.    MLI's Tracing Arguments Are Inappropriate at the Pleading Stage

MLI's fact-based tracing arguments fair no better and are clearly inappropriate for a motion to dismiss.  MLI contends that the subsequent transfers it received from Sentry cannot plausibly have consisted of any BLMIS customer property because Sentry paid out more money than it received from BLMIS and that "Sentry sometimes used subscription payments from other investors, rather than withdrawing any funds from BLMIS accounts."  (Mot. at 24-25.)  The Trustee, however, is not required to plead, much less establish, that an alleged subsequent transfer solely comprised customer property.  *See Parson*, 2022 WL 3094092, at *11 ("The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation."); *45 John Lofts, LLC*, 599 B.R. at 746–47 (denying motion to dismiss premised, in part, on a transfer from initial transferee's commingled account because a plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").

At this stage of the proceedings, moreover, the Trustee's subsequent transfer claims against MLI are not rendered implausible simply because the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings exceed the amount of Sentry's initial transfers from BLMIS.  While limited to "a single satisfaction" under Section 550(a), *see* 11 U.S.C. § 550(d), the Trustee "can recover from any combination of [transferees]" up to the amount

---

[5] MLI further contends that "the Amended Complaint does not specify the legal basis for avoiding each *initial* transfer from BLMIS to Sentry alleged to have been subsequently transferred to MLI." (Mot. at 23.)  The Amended Complaint, however, incorporated by reference the Fairfield SAC, which sets forth the basis for avoiding each transfer to Sentry and may considered by this Court.  *See* Point II *supra*.

avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021); *see also Multi-Strategy*, 641 B.R. at96 (the Trustee "may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction"). And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from MLI and from defendants in other actions. *See Multi-Strategy*, 641 B.R. at 96 ("[c]alculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation").

## IV.    SECTION 546(e) DOES NOT BAR RECOVERY FROM MLI

In *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). MLI attempts to argue that the Trustee's claims outside of those asserted under Section 548(a)(1)(A) are barred by the Section 546(e) safe harbor because the transfers were made by BLMIS to the Fairfield Funds in connection with securities contracts and as settlement payments. (Mot. at 3.) This argument has been repeatedly rejected by this Court, *see, e.g. Multi-Strategy*, 641 B.R. at 92–95, and by the District Court, in its recent denial of seven motions for leave for an interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants. *Picard v. Multi-Strategy Fund, Ltd.*, No. 22-cv-06502-JSR, , at *8–9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*") (finding no reasonable grounds for

disagreement as to the Bankruptcy Court's orders).  In its decision, the District Court explained

that the Section 546(e) safe harbor "did not apply to transfers from Madoff Securities to customers

that were in on the fraud" and that "*Cohmad [II]*'s holding in this respect concerned Madoff

Securities' 'initial transferees.'"  *Id.* at *3 (emphasis in original) (citing *Cohmad II*, 2013 WL

1609154, at *3–4, *5–6).

As this Court has found, the Trustee has pleaded Sentry's actual knowledge of fraud and

that the initial transfers are avoidable.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5, *7;

*see also Picard v. Cathay Life Ins. Co. Ltd.*, Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325,

at *8 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*") (finding that the Trustee has pleaded

"sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion").  The Amended Complaint properly incorporates by reference the

Fairfield SAC (*see* Point II *supra*), and MLI does not contest that Sentry had actual knowledge of

the BLMIS fraud.  The Trustee has therefore sufficiently alleged Sentry's actual knowledge,

thereby precluding MLI from invoking the Section 546(e) defense generally available to an initial

transferee.

MLI nevertheless argues that it has an independent right to assert the Section 546(e)

defense.  (Mot. at 26.)  But as the District Court confirmed in *Multi-Strategy II*, this is wrong.

*Cohmad II* did not provide subsequent transferees the right to independently assert Section 546(e)

where the initial transferee is sufficiently alleged to have actual knowledge nor does avoidability

of the initial transfers does not turn on the "subjective mental knowledge" of the subsequent

transferee.  *Multi-Strategy II*, 2022 WL 16647767, at *5, 13–15.  Therefore, "[a] subsequent

transferee may raise the safe harbor as a defense . . . only in so far as the avoidance of the initial

transfer is concerned." *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *10 (Bankr. S.D.N.Y. Sept. 21, 2022).

Section 546(e)'s plain language applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title") (emphasis added); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer") (internal citations omitted) (emphasis in original)). Put simply: "The safe harbor is not applicable to subsequent transfers." *Cathay Life*, 2022 WL 16626325, at *9.[6] MLI cannot assert Section 546(e) protections here because the Trustee has adequately pleaded Sentry's actual knowledge.

## V.   THE TRUSTEE ADEQUATELY ALLEGES ACTUAL FRAUDULENT INTENT UNDER SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

MLI contends that the Trustee has failed to allege BLMIS's "actual intent to hinder, delay or defraud" creditors with respect to each transfer and instead improperly relies on the "Ponzi scheme presumption." (Mot. at 28-31.) MLI baldly asserts that the presumption is not settled law and simply ignores the fact that this Court and the District Court have accepted the Ponzi scheme

---

[6] The District Court also held that whether an initial transfer could have been made "in connection with" an agreement between an initial transferee and subsequent transferee for purposes of Section 546(e) was a factual question that required discovery and was not answerable on the pleadings. *Multi-Strategy II*, 2022 WL 16647767, at *8–9. The Trustee also does not concede that any agreements or transfers between the Fairfield Funds and MLI independently activate the safe harbor under Section 546(e) as to MLI. Among other things, the Trustee does not concede—by alleging that the subsequent transfers are customer property—that the initial transfers were "in connection with" any agreements with MLI, or subscription or redemption requests from MLI, for purposes of Section 546(e). The Trustee also does not concede that, in any event, MLI's knowledge would become relevant, as opposed to that of the initial transferee.

presumption[7] (while also acknowledging that the Second Court has applied it).  (Mot. at 29 (citing *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 202 (Menashi, J., concurring) (2d Cir. 2021).)  This Court has also already rejected MLI's arguments and found Judge Menashi's concurrence unpersuasive because "[t]he Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers[, and] . . . save[s] the Trustee and the courts time and resources by presuming each transfer was made with actual fraudulent intent."  *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234, at *4 (Bankr. S.D.N.Y. Sept. 27, 2022) (finding that the Trustee's burden of pleading actual fraudulent intent is satisfied "[b]ecause the Trustee has pleaded that BLMIS operated a Ponzi scheme.").

MLI attempts to cast doubt on the presumption's validity by citing inapplicable and non-binding authority.  (Mot. at 29-31.)  None of the cases cited by MLI reject the Ponzi presumption as applied to Section 548(a)(1)(A).  *See Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (under Minnesota state law, the presumption did not apply as a matter of law where each transaction must be analyzed individually); *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 226 (8th Cir. 2018) (same); *Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350–54 (Bankr. W.D.N.Y. 2001) (addressing recovery of a fraudulent conveyance under a *constructive fraud* theory).  Nor are MLI's arguments supported by *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005), which the Second Circuit has already found does not apply in a SIPA liquidation.  *Picard v. Gettinger* (*In re BLMIS*), 976

---

[7] *See, e.g.*, *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022); *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137; *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *17–18 (S.D.N.Y. Feb. 17, 2022); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021), judgment entered, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021); *Picard v. Ken-Wen Fam. Ltd. P'ship*, 638 B.R. 41, 49 (Bankr. S.D.N.Y. 2022); *see also Picard v. Gettinger*, 976 F.3d 184, 187–88 (2d Cir. 2020), cert. denied sub nom. *Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (noting that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

F.3d 184, 200-01 (2d Cir. 2020) ("*Gettinger*"); *see also Picard v. The Gerald and Barbara Keller Family Tr.*, 2022 WL 4592898, at *3 (S.D.N.Y. Sept. 30, 2022) (refusing "to reconsider *Gettinger* in light of Judge Menashi's concurrence in *Citibank*" and finding that the Court is controlled by the 2nd Circuit and its majority decision).

Notwithstanding the Ponzi scheme presumption, the Trustee has in any event satisfied Rule 9(b). In the *Citibank* matter, in which the exact same arguments as MLI's were made, this Court found that BLMIS's actual fraudulent intent was pleaded in the complaint. 2022 WL 4493234, at *5. This Court specifically walked through the same allegations as have been pleaded here to find that five out of the six badges of fraud were pleaded.[8] *Id.* at *5 (finding that the Trustee does not need to "plead all six badges of fraud to meet his burden of pleading actual fraudulent intent"). These badges of fraud do not look solely to the intent of each individual transfer but at the entire scheme collectively. *See id.* (*citing Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983)).

As in *Citibank*, here the Trustee pleads the badges of fraud, including without limitation, that: (i) Madoff had the actual intent to defraud because he admitted under oath to running a Ponzi scheme; (ii) BLMIS's website omitted the investment advisory business entirely along with BLMIS not being registered as an investment advisor until 2006; (iii) BLMIS did not reveal to the SEC "the existence of billions of dollars of customer funds BLMIS managed"; and (iv) various Madoff employees were found guilty of helping to carry out the fraud. (Am. Compl. ¶¶ 38-69.) While the Trustee adequately pleads the badges of fraud, the existence of the Ponzi scheme alone

---

[8]The badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).

is also sufficient as a matter of law for actual intent to defraud as to the initial transfers because

Madoff admitted to operating a Ponzi scheme, and that the defendant "would not be 'off-the-hook'

for the two-year transfers because the Trustee . . . met . . . his pleading burden by pleading the

'badges of fraud' with respect to BLMIS." *Citibank*, 2022 WL 4493234, at *4; (Am. Compl. ¶¶

38-69).  Accordingly, where the Trustee sufficiently pleads BLMIS's actual fraudulent intent,

MLI's motion should be denied.

## VI.    THE SECTION 550(b) AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Although it is not the Trustee's burden to rebut MLI's affirmative defenses, MLI

nevertheless argues that this Court should dismiss the Amended Complaint because of MLI's

purported good faith and value defenses under Section 550(b).  (Mot. at 32-39.)  This Court has

already rejected these affirmative defenses as inappropriate and untimely on a motion to dismiss

and should similarly reject MLI's efforts here.  *E.g.*, *Banque Syz*, 2022 WL 2135019, at *11; *First

Gulf*, 2022 WL 3354955, at * 11; *Picard v. Delta Nat'l Bank & Trust Co.*, Adv. Pro. No. 11-02551

(CGM), 2022 WL 3365256, at *6 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *see also Picard v.

ABN Ireland (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2,

2022) (McMahon, J.) ("*ABN Ireland*").  Yet MLI still relies on cases in which it was the Trustee's

(now reversed) burden to plead willful blindness, such as *BNP Paribas*, 594 B.R. at 197, or the

plaintiffs' obligation to plead a strong inference of scienter, such as *Anwar v. Fairfield Greenwich

Ltd.*, 286 F.R.D. 258, 260 (S.D.N.Y. 2012), to argue its good faith affirmative defense under an

*inquiry notice* standard.  *See Citibank*, 12 F.4th at 195–200.

Any determination of MLI's fact-intensive affirmative defenses "can only be made based

on the entirety of the factual record after discovery (which has not occurred here), not from isolated

documents cherry-picked by [MLI] and factual inferences [MLI] improperly seek[s] to have drawn

in [its] favor." *ABN Ireland*, 2022 WL 1304589, at *3 (internal citation and quotation marks omitted); *see also Picard v. Merkin*, 440 B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("whether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process"); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

### A.    MLI Cannot Show That It Gave Value on a Motion to Dismiss.

MLI contends that it received the transfers for value.  (Mot. at 31-32.)  Value is a fact-driven affirmative defense that should be addressed later in the litigation.  *See, e.g., Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *9 (denying in part motion to dismiss and finding that "[w]hether the Defendants gave value is a question of fact to be resolved either at summary judgment stage or at trial").  To the extent MLI argues that value exists because the payments it received were in its redemption of equity interests in the Fairfield Funds, this cannot be decided on a motion to dismiss.  *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at *10; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage").

MLI further contends that it gave value because it was a so-called "net loser."  (Mot. at 32.)  Tellingly, however, MLI only cites cases concerning initial transferees, which do not address net equity as to subsequent transferees.  *See In re Bayou Grp., LLC*, 439 B.R. 284, 309 (S.D.N.Y. 2010) (reviewing value in the context of 11 U.S.C. § 548(c)); *Picard v. Cohen (Sec. Inv. Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 08-01789, 10-04311 (SMB), 2016 WL 1695296, at *10, 14 (Bankr. S.D.N.Y. Apr. 25, 2016) (involving a BLMIS account holder).

Assuming MLI's net equity status is even relevant, the Trustee has not had the benefit of discovery to know the full extent of MLI's deposits, withdrawals, or value given, if any.[9]  These are issues for fact discovery and should not be resolved on a motion to dismiss by improperly looking at a non-operative pleading.  *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F.Supp.3d 182, 206 (S.D.N.Y. 2015) (refusing to consider prior pleading because new complaint was not contradictory; it "merely removed certain allegations . . . instead of alleging directly contradictory facts").  Value is MLI's "burden to plead and prove" with evidence that "cannot be established in a complaint."  *First Gulf*, 2022 WL 3354955, at *10-11.

### B.      The Amended Complaint Does Not Demonstrate that MLI Received the Transfers in Good Faith

The Second Circuit made clear that the inquiry notice standard requires "a fact-intensive inquiry" that can only be made after discovery.  *See Citibank*, 12 F.4th at 195.  MLI nevertheless contends that there are no allegations directly relating to its knowledge or, if there are, they all relate to emails after BLMIS's fraud was revealed.  While the Court should reject MLI's attempt to raise this affirmative defense on a motion to dismiss, the Trustee's allegations here in any event do not on their face demonstrate that MLI received the transfers in good faith nor do they establish that MLI was without inquiry notice of the fraud.

---

[9] MLI asks this Court to consider allegations from the Trustee's initial complaint to show that it was a net loser.  (Mot. at 5 (citing Initial Compl. ¶¶ 120, 121, ECF No. 1).)  The law in the Second Circuit is clear, however, that except in rare circumstances, courts should not consider prior pleadings because "an amended complaint ordinarily supersedes the original and renders it of no legal effect."  *Diaz v. Loc. No. 241, Transp. Workers Union of Am., Univ. Div.*, No. 17 cv 8898, 2019 WL 3765924, at *2 (S.D.N.Y. Aug. 9, 2019) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).  Rather, a court should only consider a prior pleading in a rare circumstance when the allegations in the amended complaint directly contradict the facts in the original complaint.  *Diaz*, 2019 WL 3765924, at *2.

The Trustee pleads that Merrill Lynch held itself out as "one Merrill Lynch" that worked across three different umbrella groups comprising employees from various Merrill Lynch entities—including MLI—that "communicated and shared information with each other." (Am. Compl. ¶ 20.)  As detailed in the Amended Complaint, a member of Merrill Lynch's GMI group—which included MLI—said that Merrill Lynch refused to do anything with Madoff and that it had identified "many, many, many red flags" at BLMIS.  *Id.* ¶ 6.  This information was confirmed by a MLI executive who explained that the "decision was taken some time ago that Merrill Lynch does not offer any products on [Madoff] funds." *Id.*  That same executive further explained, after BLMIS's fraud broke, that "[w]e all knew there was something wrong at Madoff – I guess now our suspicions have been confirmed." *Id.* ¶ 11.  A different MLI executive expressed similar suspicions, following the exposure of BLMIS's Ponzi scheme, by saying in an email to others at Merrill Lynch that this was "Not a big surprise . . . ." *Id.*

MLI ignores these allegations and contends that it was a net loser and that its leveraged products do not show that MLI suspected BLMIS was a Ponzi because it "set itself up to *lose* money if the index *rose* and to *make* money if the index *fell*." (Mot. at 35; *see also* Mot. at 5 (citing Compl. ¶¶ 11-16, 120-121).)  While asking this Court to improperly rely on allegations from the superseded initial complaint, MLI tellingly fails to fully describe the facts surrounding the leveraged products at issue.

Due to its concerns with BLMIS, Merrill Lynch's GMI group created the leveraged products to ensure that there was no more than a 10% exposure in any BLMIS fund and to have the first 25% of any losses across the entire basket of funds fall onto the client. (Am. Compl. ¶ 9.) Extraneous to the Amended Complaint, MLI claims that this means that for every $1 of client money that was invested in one of the Fairfield Funds, $3 of MLI's money was invested. (Mot. at

36

36.)  MLI fails to explain, however, that if the investment in BLMIS went to zero, it was only 10%

of the basket of investments and the client would be responsible for this entire 10% loss because

it was required to cover losses up to 25% of the investment amount in the basket regardless of

where the loss occurred.  (Am. Compl. ¶ 9.)

Despite the Trustee's allegations that MLI intentionally limited its exposure, MLI contends

that it had no actual or constructive knowledge of BLMIS's fraud because it would not have

knowingly chosen to facilitate Madoff's fraud just to earn fees.  (Mot. at 35 (citing *In re Dreier*

*LLP*, 453 B.R. 499 (Bankr. S.D.N.Y. 2011)).)  The facts here, however, are very different from

*Dreier*, which involved an inaccurate assessment of the debtor's credit risk.  As discussed above

and in the Amended Complaint, MLI knew of red flags, had its suspicions about BLMIS, and

protected itself from risk.  MLI also chose to short its position in the Fairfield Funds rather than

fully hedging its investment because it was betting that the Fairfield Funds would fail and BLMIS

would collapse.  (Am. Compl. ¶ 10.)  MLI did not short its position due to the market conditions

in 2008 as it now claims because if it had, MLI would have touted the fact that it shorted *all* its

investments in the basket of funds, including non-Madoff funds.  In fact, MLI was so convinced

that BLMIS was going to fail, MLI requested a full redemption of its Sentry position in November

2008, but it was never completed before BLMIS's Ponzi scheme broke in December.  *See*

Longstaff Decl., Ex. 25.

MLI professes it was not aware of anything suspicious and contends that a diligent inquiry

into BLMIS would have been futile in light of BLMIS's secretiveness, the funds covering for

Madoff, and the SEC failing to uncover the fraud.  (Mot. at 38-39.)  These arguments are pure

conjecture that fail to meet the standard of showing good faith on the face of a complaint, which

is an "insuperable bar to securing relief."  *Dreier*, 452 B.R. at 426.

MLI cannot rely on an assortment of cherry-picked allegations regarding BLMIS's and Fairfield's secrecy, and factual inferences it wishes this Court to draw from the same in its favor. *ABN Ireland*, 2022 WL 1304589, at *3. Even if it were appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme). MLI's suggestion that it could not detect Madoff's fraud—despite being a part of the Merrill Lynch global enterprise, which had been refusing to invest in BLMIS and saw many red flags (*see* Am. Compl. ¶¶ 6, 11-12)—is dubious on its face. MLI was a sophisticated broker and dealer specializing in securities and financial instruments. *Id.* ¶ 18.

Far from demonstrating Defendants' good faith or the supposed impossibility of uncovering Madoff's scheme, the Amended Complaint "suggests that [MLI] had access to information about BLMIS's fraud and failed to concern itself with such things." *Banque Syz*, 2022 WL 2135019, at *11. In short, MLI fails to meet the "stringent standard of showing "beyond a doubt that the [Trustee] can prove no set of facts in support of his claim." *Delta*, 2022 WL 3365256, at *6.

### C.    MLI Is Not Entitled to Dismissal of Subsequent Transfer Recovery Claims by Recasting Them as Preference Claims

MLI asks this Court to conflate avoidance and recovery and to dismiss any subsequent transfers subject to preference claims. (Mot. at 39.) The Trustee, however, is not seeking to avoid preference claims, but rather to recover subsequent transfers under Section 550. (Am. Compl. ¶¶ 79, 83, 90.) MLI contends that "[t]he Second Circuit limited its *Citibank* holding on good faith to fraudulent transfer claims under section 548 and 550" and thus carved out subsequent transfers of

preferences as somehow different from subsequent transfers of fraudulent transfers.  (Mot. at 39.)

The Second Circuit made no such distinction, and the pleading standard for a Section 550 claim

remains that of inquiry notice regardless of whether avoidance is based on Section 547 or 548.  *See*

*Citibank*, 12 F.4th at 191 (2d Cir. 2021) (discussing inquiry notice in the context of an 11 U.S.C.

§ 547 claim).

MLI's only cited authority concerns the avoidance of initial transfers from the debtor.  *See*

*In re Sharp Intern. Corp.*, 403 F.3d at 53–54 (discussing New York's Uniform Fraudulent

Conveyance Act and bad faith in relation to a preference payment from the debtor); *Irving Trust*

*Co. v. Chase Nat. Bank*, 65 F.2d 409, 410 (2d Cir. 1933) (discussing good faith and Section 67e

of the Bankruptcy Act in relation to a debtor giving a preference payment ten days prior to filing

for bankruptcy).  These cases have nothing to do with the recovery of subsequent transfers, the

standard for which remains inquiry notice, which the Trustee has met.  It is now MLI's burden to

prove its good faith and come forward with evidence during discovery on this issue.  *See, e.g.*,

*Banque Syz*, 2022 WL 2135019, at *10–11 (it is defendant's burden to plead value, good faith, and

lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a

complaint").  However, until that occurs, dismissal of the Trustee's subsequent transfer claims is

improper and premature.

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny MLI's

Motion.

Dated: December 9, 2022
      New York, New York

Respectfully submitted,

/s/ David J. Sheehan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Carrie Longstaff
Email: clongstaff@bakerlaw.com
Peter B. Shapiro
Email: pshapiro@bakerlaw.com
Brittany A. Yantis
Email: byantis@bakerlaw.com
Deirdre Farrell
Email: dfarrell@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*