# EXHIBIT 9

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

## TRUSTEE'S TWENTY-EIGHTH INTERIM REPORT
## FOR THE PERIOD APRIL 1, 2022 THROUGH SEPTEMBER 30, 2022

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|

I. EXECUTIVE SUMMARY ...................................................................................1

II. BACKGROUND ..................................................................................................3

III. FINANCIAL CONDITION OF THE ESTATE ...................................................3

IV. CLAIMS ADMINISTRATION...........................................................................4

    A. Claims Processing ....................................................................................4

        i. Customer Claims .........................................................................4

        ii. General Creditor Claims ..............................................................5

        iii. The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process ...........................................................................5

        iv. The Hardship Program .................................................................6

    B. Objections To Claims Determinations......................................................7

    C. Settlements Of Customer Claims Disputes...............................................8

V. PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ..............8

    A. Net Equity Dispute ...................................................................................8

    B. Time-Based Damages .............................................................................10

    C. "Customer" Definition ............................................................................11

    D. Inter-Account Transfers .........................................................................12

    E. Profit-Withdrawal Issue .........................................................................14

VI. LITIGATION.....................................................................................................16

    A. The District Court—Motions to Dismiss Heard by Judge Rakoff........16

    B. Good Faith Actions ................................................................................17

        i. Resolution of Good Faith Avoidance Actions ...........................17

        ii. Trial-Related Motion Practice ...................................................17

            (a) Sage Actions .................................................................17

            (b) RAR Entrepreneurial Fund Ltd. Action.........................18

        iii. Summary Judgment Motions .....................................................21

            (a) Estate of Seymour Epstein Action ................................21

            (b) JABA Associates LP Action.........................................22

            (c) Gerald and Barbara Keller Family Trust Action............24

            (d) Jacob M. Dick Rev Living Trust DTD 4/6/01 Action ...25

            (e) Estate of James M. Goodman Action ...........................26

            (f) Doron Tavlin Trust U/A 2/4/91 Action .........................27

            (g) Stuart Leventhal 2001 Irrevocable Trust ......................27

            (h) Kuntzman Family LLC .................................................28

            (i) Estate of Robert Shervyn Savin ...................................28

# TABLE OF CONTENTS
(continued)

(j) Sharon Knee .................................................................................28

C. Bad Faith Actions .........................................................................................29

    i. Picard v. Avellino & Bienes .............................................................29

D. Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees .............31

    i. Extraterritoriality ............................................................................31

    ii. Good Faith Appeal ...........................................................................32

        (a) Procedural Background on Good Faith Defense Under
            Sections 548(c) and 550 ...........................................................32

E. BLMIS Feeder Fund Actions .........................................................................39

    i. Picard v. Fairfield Greenwich .........................................................39

    ii. The HSBC Action .............................................................................50

    iii. The UBS Action ...............................................................................51

    iv. Picard v. Square One ........................................................................55

    v. Picard v. Legacy ..............................................................................56

F. Subsequent Transfer Actions ..........................................................................60

    i. Picard v. Citibank, N.A., et al. ..........................................................61

    ii. Picard v. Natixis, et al. .....................................................................64

    iii. Picard v. Nomura International PLC .................................................66

    iv. Picard v. Merrill Lynch International. ..............................................68

    v. Picard v. ABN AMRO Bank N.V. .....................................................69

    vi. Picard v. ABN AMRO Bank (Ireland) Ltd., et al. ...........................74

VII. INTERNATIONAL INVESTIGATION AND LITIGATION ..........................................77

A. Austria ..........................................................................................................78

B. BVI ...............................................................................................................78

C. Cayman Islands ..............................................................................................78

D. England .........................................................................................................78

E. France ...........................................................................................................78

F. Ireland ..........................................................................................................79

G. Israel .............................................................................................................79

    i. Picard v. Magnify Inc. .....................................................................79

H. Liechtenstein .................................................................................................81

I. Switzerland and Luxembourg ..........................................................................81

VIII. RECOVERIES AND CONTINGENCIES ...............................................................81

A. Recoveries Accomplished During Prior Report Periods .....................................81

B. Recoveries Accomplished During This Report Period .........................................82

**TABLE OF CONTENTS**
(continued)

<u>Page</u>

IX. THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO
CUSTOMERS...................................................................................................82

    A.    The Customer Fund.................................................................................82

    B.    The General Estate ................................................................................84

X. FEE APPLICATIONS AND RELATED APPEALS........................................85

    A.    Objections to Prior Fee Applications ...................................................85

    B.    Thirty-Eighth Fee Application ..............................................................85

    C.    Thirty-Ninth Fee Application ................................................................85

XI. CONCLUSION................................................................................................87

TO THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and

collectively, the "Debtors"), respectfully submits his Twenty-Eighth Interim Report (this

"Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an

Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief

entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the

Claims Procedures Order, the Trustee shall file additional interim reports every six months. This

Report covers the period between April 1, 2022 and September 30, 2022 (the "Report Period").

## I.  EXECUTIVE SUMMARY

1.      The Trustee has worked tirelessly for almost fourteen years to recover customer

property and distribute it to BLMIS customers who have not fully recovered the money they

deposited with BLMIS. The Trustee has successfully recovered nearly $14.538 billion through

September 30, 2022.

2.      On January 11, 2022, this Court approved the Trustee's thirteenth allocation and

distribution to customers, in which the Trustee allocated approximately $128 million to the

Customer Fund.  On February 25, 2022, the Trustee distributed approximately $112.6 million on

allowed claims relating to 791 accounts, or 0.604% of each customer's allowed claim, unless the

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."
[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

claim was fully satisfied. When combined with the prior twelve distributions, and $849.9 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[3] the Trustee has distributed approximately $14.331 billion to BLMIS customers through the Report Period, with 1,509 BLMIS accounts fully satisfied, or 70.452% of each customer's allowed claim. The 1,509 fully satisfied accounts represent nearly 66% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers. All allowed customer claims up to approximately $1.692 million have been fully satisfied.

3.    The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various other special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.    This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. This fraud involved many billions of dollars and thousands of people and entities located across the world. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

---

[3] SIPC has advanced $849,473,412.47 through the Report Period to the Trustee to pay allowed claims. The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

5.     All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website")

## II.     BACKGROUND

6.     The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[4]

## III.     FINANCIAL CONDITION OF THE ESTATE

7.     No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims. Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); April 1, 2018 through September 30, 2018 (the "Twentieth Interim Report") (ECF No. 18146); October 1, 2018 through March 31, 2019 (the "Twenty-First Interim Report") (ECF No. 18716), April 1, 2019 through September 30, 2019 (the "Twenty-Second Interim Report") (ECF No. 19097); October 1, 2019 through March 31, 2020 (the "Twenty-Third Interim Report") (ECF No. 19502); April 1, 2020 through September 30, 2020 (the "Twenty-Fourth Interim Report") (ECF No. 19896); October 1, 2020 through March 31, 2021 (the "Twenty-Fifth Interim Report") (ECF No. 20480); April 1, 2021 through September 30, 2021 (the "Twenty-Sixth Interim Report") (ECF No. 20821); and October 1, 2021 through March 31, 2022 (the "Twenty-Seventh Interim Report") (ECF No. 21473).

litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

8.      A summary of the financial condition of the estate as of September 30, 2022 is provided in Exhibit A attached hereto.

9.      This summary reflects cash of $14,430,892.31, short term investments, money market funds, savings accounts and other investments, including alternative investments of $499,661,655, and short-term United States Treasuries in the principal amount of $260,023,671. *See* Exhibit A, page 3, note (3) and page 5, notes (4) and (5).

10.      As detailed in Exhibit A, as of September 30, 2022, the Trustee requested and SIPC advanced $3,077,811,171.81, of which $849,473,412.47 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $2,228,337,759.34 was used for administrative expenses. *See* Exhibit A, page 1.

## IV.      CLAIMS ADMINISTRATION

### A.      <u>Claims Processing</u>

#### i.      <u>Customer Claims</u>

11.      During the Report Period, the Trustee allowed $77,516,050.00 in customer claims, bringing the total amount of allowed claims as of September 30, 2022 to $19,493,795,916.92. The Trustee has paid or committed to pay $849,868,412.47 in cash advances from SIPC through September 30, 2022.[5] This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

---

[5] See footnote 2.

12.     As of September 30, 2022, there were 11 customer claims relating to 7 customer accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such customer claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.     General Creditor Claims

13.     As of September 30, 2022, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.     The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process

14.     Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15.     The Trustee Website (www.madofftrustee.com) allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing

recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

16.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of September 30, 2022, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.    **The Hardship Program**

18.     This SIPA liquidation proceeding had offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of September 30, 2022, there were 191 Hardship Applications that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. After nearly 12 years, the Hardship Program was officially terminated.

**B.** **Objections To Claims Determinations**

19.     As of September 30, 2022, 1,729 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,252 unique customer claims and 698 customer accounts. As of September 30, 2022, 33 docketed objections (related to 26 unique customer claims and 23 customer accounts) remained.

20.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

21.     The Trustee departed from past practice in SIPA liquidation proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

22.     As part of his ongoing efforts to resolve pending objections, the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has

identified circumstances that require resolution by the Bankruptcy Court. Prior disputes are described in the Trustee's previous reports.

## C. Settlements Of Customer Claims Disputes

23.     As of September 30, 2022, the Trustee had reached agreements relating to 1,172 customer accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

## A. Net Equity Dispute

24.     For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

25.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "Net Equity Decision"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

26.     Under the *Net Equity Decision*, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

27.     The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

28.     Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would

create 'potential absurdities.'" *Id.* at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

29.    A petition for panel rehearing, or, in the alternative, for rehearing en banc was denied. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551). Three petitions for certiorari were filed with the Supreme Court, which were denied. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard,* 132 S. Ct. 2712 (2012).

## B.    Time-Based Damages

30.    Following the litigation regarding the Net Investment Method, the Trustee filed a motion to affirm his net equity calculations and denying requests for "time-based damages." (ECF Nos. 5038, 5039). The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims. This Court agreed. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "Time-Based Damages Decision"); *see also* ECF No. 5463.

31.    On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id.* at 83.

32.    Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest.

The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id*. at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id*. at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id*. at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id*. at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id*. at 83.

33.  The Supreme Court denied the petition for certiorari filed. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

## C.  **"Customer" Definition**

34.  In this liquidation, the Trustee discovered that many claimants did not invest directly with BLMIS, but through an intermediary such as a "feeder fund." The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS, the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

35.  On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285 (Bankr. S.D.N.Y. 2011). The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased

- 11 -

ownership interests in the feeder funds. The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

36.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

37.     On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

38.     On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the Bankruptcy Court. *See Kruse v. Sec. Inv'r Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013). No petitions for certiorari were filed.

**D.     Inter-Account Transfers**

39.     The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. *The Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers

maintained more than one BLMIS account and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

40.     On December 8, 2014, the Bankruptcy Court issued a decision upholding the Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id*. at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

41.     On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's Net Equity Decision and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d at 238 n.7 (2d Cir. 2011).

42.     On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's

machinations.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

43.     No petitions for certiorari were filed.

### E.     Profit-Withdrawal Issue

44.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

45.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

46.     Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order

Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

47.     An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the profit withdrawal transactions were properly treated as debits under the Net Investment Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019) 18 Civ. 7449 (PAE). The District Court found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

48.     On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. On December 27, 2019, appellants filed their opening brief repeating their claims that this Court failed to apply the Federal Rules of Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not have ratified the transactions in his BLMIS account that occurred before 1992.

49.     The Trustee and SIPC's opposition briefs were filed on April 17, 2020. Appellants filed their reply on May 27, 2020, and oral argument was held on September 21, 2020.

50.     On October 6, 2020, the Second Circuit issued its Summary Order upholding the District Court's judgment affirming this Court's decision that the Trustee properly treated PW transactions as debits to BLMIS customer accounts. Summary Order, *In re: Bernard L. Madoff*

*Investment Securities LLC*, 830 Fed.Appx. 669 (2020). The Second Circuit found that the District Court properly upheld this Court's admission of the BLMIS books and records as within the "permissible bounds of its discretion." *Id*. at 4. Further, the Second Circuit found no clear error as to this Court's factual determination that Blecker "ratified the PW Transactions whether as a result of the 10-day clause in the 1992 customer agreements (for PW Transactions postdating those agreements), or through his 23 years-long, knowing acceptance of the PW Transactions and the corresponding reductions to his BLMIS accounts" prior to the 1992 customer agreements. *Id*. The Second Circuit found all other arguments by Mr. Blecker without merit and rejected them without discussion. *Id*. at 5.

51.     No petitions for certiorari were filed.

## VI.     LITIGATION

52.     The Trustee is actively involved in dozens of litigations and appeals. This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

### A.     The District Court—Motions to Dismiss Heard by Judge Rakoff

53.     Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings. The District Court (Rakoff, J.) consolidated briefing and argument on certain common issues raised in the motions to withdraw (the "Common Briefing"). *See* Trustee's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the Common Briefing issues and returned all proceedings to the Bankruptcy Court.

**B.    Good Faith Actions**

    **i.    Resolution of Good Faith Avoidance Actions**

54.    At the beginning of the Report Period, there were 28 active good faith avoidance actions.  Twelve were closed during the Report Period, leaving a total of 16 open good faith avoidance actions by the end of the Report Period, as set forth in the attached Exhibit B.  In certain avoidance actions, the Trustee's professionals entered into mediations, considered settlement offers and engaged in settlement negotiations, which led to 5 cases entering into documented settlements during the Report Period.  In addition, as a result of the Trustee obtaining judgments, 6 cases were closed during the Report Period. One additional case was closed during the Report Period based upon the personal bankruptcy of defendants and related distribution received by the Trustee on account of the Trustee's claim in that bankruptcy.

    **ii.    Trial-Related Motion Practice**

        **(a)    Sage Actions**

55.    On December 1, 2020, counsel for Defendants Sage Associates, Sage Realty, Malcolm Sage, Ann Passer Sage, and Martin Sage moved for permissive withdrawal of the reference.  *See* Nos. 20-cv-10057 (lead case) & 20-cv-10109, ECF No. 1.

56.    On May 18, 2021, Judge Nathan granted Defendants' motion to withdraw the reference to the bankruptcy court.  *See* No. 20-cv-10057, ECF No. 19.  Judge Nathan directed the parties to submit a joint letter by June 14, 2021 on the status of discovery and next steps.  *See id.*

57.    On November 2, 2021, the actions were reassigned to District Judge John F. Keenan.

58.    On January 19, 2022, trial in the consolidated actions began before Judge Keenan. Trial continued on January 21, 24, and 25, in addition to February 2, 2022.

59.     On April 15, 2022, the Court entered judgment in favor of the Trustee in the amount of $16,880,000 against all Defendants, jointly and severally.  *See* No. 20-cv-10057, ECF No. 111.

60.     On April 19, 2022, the Court modified the April 15, 2022 judgment to enter judgment in favor of the Trustee (1) in the amount of $13,510,000 against Defendants Sage Associates, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally, and (2) in the amount of $3,370,000 against Defendants Sage Realty, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally.  *See* No. 20-cv-10057, ECF No. 113.

61.     On May 20, 2022, Malcolm Sage filed a Notice of Appeal of the District Court's judgment in both actions.  *See* No. 20-cv-10057, ECF No. 118; No. 20-cv-10109, ECF No. 74. On June 3, 2022, the Trustee filed the Notice of Cross-Appeal of the District Court's judgment. *See id.*, ECF No. 120.  Defendants filed their opening brief before the Second Circuit on September 16, 2022.  *See* Lead Case No. 22-1107, ECF No. 61.

### (b)     RAR Entrepreneurial Fund Ltd. Action

62.     On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved for permissive withdrawal of the reference.  *See* No. 20-cv-01029, ECF No. 1.

63.     On February 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendant's counsel agreed to, and the Court so ordered on March 5, 2020.  *See* No. 20-cv-01029, ECF Nos. 5, 7.

64.     On April 1, 2020, the Trustee filed his motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 12-20. On June 5, 2020, Defendant filed its memorandum of law in opposition to the Trustee's motion for summary judgment and in support of its cross-motion for summary judgment dismissing the case in its entirely.  On June 9, 2020, Defendant filed its

notice of cross-motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 25-29. On June 23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition to his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 33-35. Defendant filed its reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

65.     On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding that the Trustee did have standing to pursue the Two-Year Transfers and established the elements of his claim except that there were issues of fact with respect to whether the transfers were made by the LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is ultimately likely to prevail on its claim." *See* No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y. Mar. 3, 2021).

66.     On May 6, 2021, the court held a telephonic conference with the parties, during which the trial was scheduled to begin on July 19, 2021. *See* No. 20-cv-01029, ECF No. 49.

67.     On May 11, 2021, the Trustee filed a letter motion seeking to stay the trial pending a decision from the Second Circuit in the similarly situated avoidance action, *Picard v. JABA Assocs. LP*, No. 21-872 (2d Cir.), which Defendant opposed in a letter response dated May 13, 2021. *See* No. 20-cv-01029, ECF Nos. 54-55. The District Court denied the motion. *See id.*, ECF No. 56.

68.     On June 2, 2021, the court issued an order rescheduling the trial to begin on July 20, 2021. *See* No. 20-cv-01029, ECF No. 59.

69.     On August 27, 2021, the court issued an order rescheduling the trial to begin on October 18, 2021. *See* No. 20-cv-01029, ECF No. 104.

70.     On October 13, 2021, the trial was adjourned and subsequently rescheduled for March 3, 2022.  *See* No. 20-cv-01029, ECF Nos. 110 & 115.

71.     On February 28, 2022, the final pretrial conference was held and the trial began three days later on March 3, 2022.  *See* No. 20-cv-01029, ECF Nos. 121, 134, 135, 137.  On March 7, 2022, after closing statements were made, the jury deliberated and reached a verdict in favor of the Trustee, finding that the investment advisory business of Madoff's sole proprietorship was transferred to the limited liability company before December 11, 2006 (two years prior to the filing of the SIPA liquidation), and awarding the Trustee $12,800,065 (the total amount in fraudulent transfers received by Defendant between December 11, 2006 and December 11, 2008).  *See id.*, ECF No. 132.

72.     On March 22, 2022, the parties filed their supplemental memoranda of law as to whether prejudgment interest should be awarded to the Trustee.  *See* No. 20-cv-01029, ECF Nos. 141–42.

73.     On September 20, 2022, the District Court granted the Trustee prejudgment interest from the date of the complaint against the Defendant through the date of entry of judgment, at a rate of 4% per annum.  *See* No. 20-cv-01029, ECF No. 149.

74.     On September 23, 2022, the District Court entered its final judgment in favor of the Trustee in the total amount of $18,867,295.81, which includes prejudgment interest at a rate of 4% from November 12, 2010 through the date of entry of judgment.  *See* No. 20-cv-01029, ECF No. 151

75.     On October 21, 2021, Defendant filed a motion seeking judgment as a matter of law or, in the alternative, a new trial. *See* No. 20-cv-01029, ECF No. 154. On October 24, 2021, the District Court denied the Defendant's motion. *See id.*, ECF No. 157.

### iii.  **Summary Judgment Motions**

(a)  **Estate of Seymour Epstein Action**

76.     On September 4, 2020, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-04438, ECF Nos. 113–19.  On October 9, 2020, Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction.  *See id.*, ECF Nos. 122–25.  On October 30, 2020, the Trustee filed his combined reply in further support of his motion for summary judgment and opposition to Defendant's cross-motion to dismiss for lack of subject matter jurisdiction.  *See id.*, ECF Nos. 129–31.  On November 6, 2020, Defendant filed his reply in further support of his cross-motion to dismiss for lack of subject matter jurisdiction.  *See id.*, ECF No. 136.

77.     On January 27, 2021, the Bankruptcy Court entered its Memorandum Decision granting summary judgment in favor of the Trustee, determining funds held in the bank accounts are customer property, and awarding prejudgment interest at the rate of 4% from November 30, 2010 through February 1, 2021.  *See* Adv. Pro. No. 10-04438, ECF Nos. 155, 158.

78.     On February 5, 2021, Defendant moved to vacate the Judgment, sought entry of a proposed counter order, and requested a stay of enforcement of the Judgment pending appeal to an Article III Court (the "Reconsideration Motion").  On March 3, 2021, the Bankruptcy Court heard oral arguments, and subsequently denied Defendant's motion in its entirety.  *See* Adv. Pro. No. 10-04348, ECF Nos. 160–162, 168–169.

79.     On March 15, 2021, Defendant filed a notice of appeal to the District Court, where it was assigned to District Judge Colleen McMahon under case docket no. 21-cv-02334.  *See* Adv. Pro. No. 10-04348, ECF No. 172.

80.     On May 5, 2021, Defendant-Appellant filed his opening brief, and refiled it again on May 28, 2021, after the District Court approved his motion to amend the record to add

additional documents. The Trustee's brief was filed on June 14, 2021, and Defendant-Appellant's reply brief was filed on July 12, 2021. *See* No. 21-cv-02334, ECF Nos. 20–21, 27–28, 30.

81.     On February 17, 2022, the District Court granted the Trustee's motion for summary judgment in his favor, plus prejudgment interest at a rate of 4% from November 30, 2010 through the date of entry of judgment. *See* No. 21-cv-02334, 2022 WL 493734 at *20 (S.D.N.Y. Feb. 17, 2021), ECF Nos. 38–39. Specifically, the District Court granted in favor of the Trustee to recover $1,110,538.16 in avoidable transfers from the Estate of Seymour Epstein and Muriel Epstein as Executrix of the Seymour Estate and Trustee of the Trusts created by the Last Will and Testament of Seymour Epstein, plus prejudgment interest in the amount of $498,616.42 for a total sum of $1,609,154.58. The District Court further granted in favor of the Trustee to recover $1,511,900.39 in avoidable transfers from Shelburne Shirt Company, Inc., plus prejudgment interest in the amount of $678,822.56 for a total sum of $2,190,722.95. *See id.*, ECF No. 39.

82.     On March 16, 2022, Defendant filed a notice of appeal of the District Court's judgment against him. *See* No. 21-cv-02334, ECF No. 40. On April 23, 2022, the Defendant voluntarily dismissed the appeal before the Second Circuit. *See* No. 22-551, ECF No. 36. The Stipulation of Voluntary Dismissal was filed on April 28, 2022, and so ordered on May 20, 2022. *See* No. 22-551, ECF Nos. 38, 55.

**(b)     JABA Associates LP Action**

83.     On May 15, 2020, counsel for Defendants Audrey M. Goodman, Goodman Charitable Foundation, in its capacity as a limited partner of JABA Associates LP, Audrey Goodman, in her capacity as a general and limited partner of JABA Associates LP, Bruce Goodman, in his capacity as a general Partner of JABA Associates LP, Andrew Goodman, in his

capacity as a general partner of JABA Associates LP, JABA Associates LP, and The Estate of James Goodman ("Defendants") moved for permissive withdrawal of the reference. *See* No. 20-cv-03836, ECF No. 1.

84.     On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020.  *See* No. 20-cv-03836, ECF Nos. 3–5.

85.     The Trustee's motion for summary judgment was filed on July 14, 2020. *See* No. 20-cv-02872, ECF Nos. 11–17. Defendants' opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 18, 2020.  *See id.*, ECF No. 20–24. The Trustee's reply on his motion and opposition on the cross-motion was filed on September 8, 2020.  *See id.*, ECF No. 31–33. Defendants' reply on the cross-motion was filed on September 15, 2020.  *See id.*, ECF No. 34.

86.     On March 24, 2021, District Judge John G. Koeltl granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $2,925,000, plus prejudgment interest at a rate or 4%, from November 12, 2010 through the date of entry of judgment in the amount of $1,213,273.97 for a total sum of $4,138,273.97.  *See* No. 20-cv-0386, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021), ECF Nos. 41–42.

87.     On April 6, 2021, Defendants filed their notice of appeal of the District Court's judgment against them.  *See* No. 20-cv-0386, ECF No. 43.

88.     In furtherance of enforcing the Judgment, the Trustee received the transcript of the Judgment from the District Court, which was docketed with the New York County Clerk's Office on May 20, 2021, to place liens on real property held by Defendants within the state.

89.     On July 30, 2021, Defendants filed their appellant brief before the Second Circuit. *See* Case No. 21-872, ECF No. 62.  The Trustee's appellee brief was filed on October 22, 2021. *See id.*, ECF No. 90.  On November 11, 2021, Defendants filed their reply brief.  *See id.*, ECF No. 109.  Oral arguments were held on March 16, 2022.  *See id.*, ECF Nos. 122, 123, 127.

90.     On September 20, 2022, the Second Circuit affirmed the District Court's decision granting the Trustee's motion for summary judgment.  *See* Case No. 21-872, ECF No. 141.

### (c)     Gerald and Barbara Keller Family Trust Action

91.     On July 22, 2021, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-04539, ECF Nos. 99–105.   On August 17, 2021, Defendants filed their memorandum of law in opposition to the Trustee's motion for summary judgment and in support of their cross-motion for summary judgment dismissing the case in its entirely.  *See id.*, ECF Nos. 110–15.  On September 1, 2021, the Trustee filed his brief in reply to Defendants' cross-motion and Defendants' opposition to his motion for summary judgment.  *See id.*, ECF Nos. 119–21.  Defendants filed their reply brief in support of their cross-motion on September 13, 2021.  *See id.*, ECF Nos. 124–26.  On September 15, 2021, oral arguments were held before Judge Morris in the Bankruptcy Court.

92.     On September 30, 2021, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $1,896,148.00, plus prejudgment interest at a rate of 4%, from December 1, 2010 through October 13, 2021 in the amount of $ 824,237.48 for a total sum of $2,720,385.48.  *See Picard v. The Gerald and Barbara Keller Family Tr.*, 634 B.R. 39, 53–54 (Bankr. S.D.N.Y. 2021), ECF Nos. 136, 142.

93.     On October 13, 2021, Defendants filed their notice of appeal to the district court, where it was assigned to District Judge J. Paul Oetken under case docket no. 21-cv-08678.  *See* Adv. Pro. No. 10-04539, ECF Nos. 140, 143.

94.     On December 22, 2021, Defendants-Appellants filed their opening brief.  *See* No. 21-cv-08678, ECF No. 10.  The Trustee's brief was filed on January 21, 2022.  *See id.*, ECF No. 14.  Defendants-Appellants' reply brief was filed on February 16, 2022.  *See id.*, ECF No. 19. The court advised that oral argument would not be held unless the court ordered otherwise.  *See id.*, ECF No. 6.

95.     On September 30, 2022, the district court affirmed Judge Morris's grant of summary judgment in favor of the Trustee and denial of cross-motion for summary judgment filed by Defendants-Appellants.  *See* No. 21-cv-08678, ECF No. 26 (amended opinion and order entered October 6, 2022).

**(d)     Jacob M. Dick Rev Living Trust DTD 4/6/01 Action**

96.     On January 26, 2021, Defendants Jacob M. Dick Rev. Living Trust Dtd 4/6/01, individually and as tenant in common, Estate of Jacob M. Dick, as grantor of the Jacob M. Dick Rev. Living Trust Dtd 4/6/01, Andrea J. Marks, as trustee of the Jacob M. Dick Rev. Living Trust Dtd 4/6/01, as executor of the Estate of Jacob M. Dick, and as trustee of the Article 8.1 Trust created under the Jacob M. Dick Rev Living Trust Dtd 4/6/01, R.D.A., and Article 8.1 Trust (collectively, "Defendants") moved for permissive withdrawal of the reference.  *See* No. 21-cv-00706, ECF No. 1.  On February 9, 2021, the Trustee filed his opposition brief and on February 10, 2021, Defendants filed their reply brief in further support of their motion.  *See id.*, ECF Nos. 3–4.  On February 10, 2022, District Judge J. Paul Oetken denied the motion to withdraw the reference, stating that Defendants may renew their motion after the Bankruptcy Court addressed the Trustee's anticipated motion for summary judgment.  *See id.*, ECF No. 7.

97.     On February 28, 2022, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-04570, ECF Nos. 102–108.  On March 25, 2022, Defendants filed their memorandum of law in opposition to the Trustee's motion for summary judgment.  *See id.*, ECF

Nos. 113–16. On March 25, 2022, the Trustee filed his brief in reply to Defendants' opposition to his motion for summary judgment. *See id.*, ECF Nos. 118–20. Oral arguments were scheduled to be held before Judge Morris on April 20, 2022.

98. On April 18, 2022, Defendants filed a letter with the court stating they would rely upon their papers in lieu of oral argument, scheduled to be held before Judge Morris on April 20, 2022. The Trustee filed a letter in response, stating he had no objections. *See* Adv. Pro. No. 10-04570, ECF Nos. 122–23. On April 19, 2022, Judge Morris canceled the scheduled oral arguments. *See id.*, No. 125.

99. On June 6, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $1,681,299.00, plus prejudgment interest at a rate of 4%, from December 1, 2010 through the date of entry of judgment in the amount of $774,742.58 for a total sum of $2,456,041.58. *See* Adv. Pro. No. 10-04570, ECF Nos. 141, 152.

### (e)    Estate of James M. Goodman Action

100. On February 2, 2021, Defendants Estate of James M. Goodman (the "Estate"), and Audrey M. Goodman, in her capacity as Personal Representative of the Estate of James M. Goodman (collectively, the "Defendants") moved for permissive withdrawal of the reference. *See* No. 21-cv-00907, ECF No. 1. On February 16, 2021, the Trustee filed his opposition brief and on February 17, 2021, Defendants filed their reply brief in further support of their motion. *See id*., ECF Nos. 3–4. On March 8, 2022, District Judge Vernon S. Broderick denied the motion to withdraw the reference, stating that Defendants may renew their motion after the Bankruptcy Court addressed the Trustee's anticipated motion for summary judgment. *See id.*, ECF No. 7.

101. On March 22, 2022, the Trustee filed his motion for summary judgment. *See* No. 10-04762, ECF Nos. 104–110. On April 13, 2022, Defendants filed their opposition brief, and

on April 15, 2022, the Trustee filed his reply brief in further support of his motion for summary judgment. *See* Adv. Pro. No. 10-04762, ECF Nos. 112–13.

102.    On April 18, 2022, Defendants filed a letter with the Court stating they would rely upon their papers in lieu of oral argument, scheduled to be held before Judge Morris on April 20, 2022.  The Trustee filed a letter in response, stating he had no objection to the parties' reliance on the summary judgment submissions, and asserted his right to judgment as a matter of law because Defendants failed to respond to the Trustee's Statement of Material Facts and failed to provide their own statement of facts, as required by Local Rule 7056-1(c).  *See* Adv. Pro. No. 10-04762, ECF Nos. 118–19.  On April 19, 2022, Judge Morris canceled the scheduled oral arguments. *See id.*, No. 121.

103.    On June 6, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $350,000.00, plus prejudgment interest at a rate of 4%, from December 1, 2010 through the date of entry of judgment in the amount of $161,280.00 for a total sum of $511,280.00. *See* Adv. Pro. No. 10-04762, ECF Nos. 127, 133.

### (f)    Doron Tavlin Trust U/A 2/4/91 Action

104.    On May 24, 2022, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-05312, ECF Nos. 107–113.  Defendants did not file any response to the Trustee's motion.  On June 16, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $489,272, plus prejudgment interest at a rate of 4% from December 11, 2008 through the date of judgment in the amount of $264,402.59 for a total sum of $753,674.59.  *See* Adv. Pro. No. 10-05312, ECF No. 115.

### (g)    Stuart Leventhal 2001 Irrevocable Trust

105.    On May 25, 2022, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-04492, ECF Nos. 67–73.  Defendants did not file any response to the Trustee's

motion. On June 16, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $1,290,000, plus prejudgment interest at a rate of 4% from December 11, 2008 through the date of judgment in the amount of $697,116.00 for a total sum of $1,987,116.00. *See* Adv. Pro. No. 10-04492, ECF No. 75.

### (h)    **Kuntzman Family LLC**

106.    On July 22, 2022, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04752, ECF Nos. 121-127. Defendants did not file any response to the Trustee's motion. On August 16, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $762,075.00, plus prejudgment interest at a rate of 4% from December 11, 2008 through the date of judgment in the amount of $416,702.61 for a total sum of $1,178,777.61. *See id.*, ECF No. 132.

### (i)    **Estate of Robert Shervyn Savin**

107.    On July 22, 2022, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04889, ECF Nos. 113-118. On July 27, 2022, in opposition to the Trustee's motion, Defendants' counsel submitted a one-page declaration stating that "any judgment entered by this Court is limited to a judgment against [Barbara] Savin as 'Personal Representative of the Estate of Robert Shervyn Savin.'" *See id.*, ECF No. 120. Defendants otherwise did not file any response to the Trustee's motion. On August 16, 2022, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $450,500.00, plus prejudgment interest at a rate of 4% from December 11, 2008 through the date of judgment in the amount of $46,333.40 for a total sum of $696,833.40. *See id.*, ECF No. 126.

### (j)    **Sharon Knee**

108.    On August 24, 2022, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04986, ECF Nos. 60-66. On September 7, 2022, the parties stipulated to

extend the deadlines to respond to the Trustee's motion and adjourn the hearing date on the Trustee's motion. *See id.*, ECF No. 75. On October 7, 2022, the parties reached a settlement in principle, and stipulated that the deadlines to respond to the Trustee's motion would be adjourned *sine die* to allow the parties to complete the settlement by October 31, 2022, ECF No. 77.

## C.     Bad Faith Actions

109.    The Trustee has one bad faith action still pending as of the end of the Report Period, as set forth on the attached Exhibit C.

### i.     Picard v. Avellino & Bienes

110.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y.) (the "A&B Action").

111.    During the Report Period, B&H attorneys focused on developing the Trustee's reply in further support of his partial summary judgment motion. This included drafting the Trustee's reply memorandum of law, a response to the A&B Defendants' objections to the Trustee's Rule 56.1 statement of material facts, which included over 460 factual paragraphs, and a declaration to support his motion. On May 23, 2022, the Trustee filed his reply papers.

112.    B&H attorneys prepared for and appeared for oral argument at a Court hearing on June 15, 2022.

113.     B&H attorneys drafted a proposed order at the directive of the Court, incorporating the Court's Memorandum Decision granting the Trustee partial summary judgment, dated July 15, 2022 ("Memorandum Decision").

114.     B&H attorneys focused on opposing the A&B Defendants' motion to amend the Memorandum Decision and objection to the Trustee's proposed order ("Motion to Amend"). The Trustee's opposition papers were filed on August 3, 2022.

115.     B&H attorneys also prepared for and appeared for oral argument at a Court hearing on August 10, 2022, concerning the A&B Defendants' Motion to Amend.

116.     B&H attorneys then drafted a proposed order at the directive of the Court, incorporating the Court's Memorandum Decision and its denial of the Motion to Amend.

117.     Since September 5, 2022, B&H attorney have primarily focused on responding to Defendants' Notice of Appeal, which included drafting a letter to the Hon. Gregory H. Woods seeking permission to file a motion to dismiss the A&B Defendants' appeal.

118.     B&H attorneys prepared for and appeared for oral argument at a Court hearing on September 22, 2022, on the Trustees' motion to dismiss the A&B Defendants' appeal.

119.     B&H attorneys focused on drafting the Trustee's motion to dismiss the A&B Defendants' appeal. The motion to dismiss was filed on October 6, 2022. *Picard v. Mayfair Ventures. G.P.*, No. 22-cv-07711-GHW, ECF Nos. 13-15.

120.     B&H attorneys reviewed and edited a proposed stipulation from the A&B Defendants to dismiss their appeal and dismiss the Trustee's motion to dismiss as moot, which was filed with and so ordered by the Court on October 19, 2022. *Id.*, ECF Nos. 18, 19

121.     B&H attorneys also performed overall case management and prepared for trial.

**D.    Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees**

**i.    Extraterritoriality**

122.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "District Court ET Decision").

123.    On November 22, 2016, this Court issued a decision granting in part and denying in part Defendants' motion to dismiss on extraterritoriality (the "Bankruptcy Court ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

124.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Upon Defendants' motion, the Second Circuit then stayed the issuance of the mandate. *Id.*, (ECF No. 1503).

125.    On August 29, 2019, Defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

126.    On September 30, 2019, amicus briefs in support of Defendants were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring

professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the

Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities

Industry and Financial Markets Association, the Institute of International Bankers, and the U.S.

Chamber of Commerce.

127.    On October 30, 2019, the Trustee and SIPC filed separate briefs in opposition to

Defendants' petition, and on November 12, 2019, Defendants filed a brief in reply.

128.    On December 9, 2019, the Supreme Court invited the Solicitor General to file a

brief expressing the views of the United States, and on April 10, 2020, the Solicitor General filed

a brief recommending that the Supreme Court deny the petition.

129.    The petition was distributed on April 28, 2020 for consideration at the Court's

May 14, 2020 conference. On June 1, 2020, the Supreme Court denied Defendants' petition.

 **ii.**  **Good Faith Appeal**

  **(a)**  **Procedural Background on Good Faith Defense Under Sections 548(c) and 550**

130.    When the Trustee brought his intentional fraudulent transfer claims under section

548(a)(1)(A), he met his pleading burden under governing case law by alleging that BLMIS was

a Ponzi scheme and that the defendants received transfers from BLMIS. *See Picard v. Merkin (In*

*re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2010) (citing

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y.

2007)); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II L.P., (In re Bayou Grp.,*

*LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007). The burden then shifted to defendants to prove

their affirmative defense, as set forth in section 548(c), that they received the transfers for value

and in good faith. *See Merkin*, 440 B.R. at 256 (citing *Gredd v. Bear, Stearns Sec. Corp. (In re*

*Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002)).

131.    From 2009 through 2011, bad faith defendants brought motions to dismiss the Trustee's complaints under Federal Rule of Civil Procedure 12(b)(6), claiming, *inter alia*, that the Trustee had not adequately pled a lack of good faith on the part of the defendant. *See, e.g., Merkin*, 440 B.R. at 255–56; *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 331 (Bankr. S.D.N.Y. 2011); *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 220–21 (Bankr. S.D.N.Y. 2011).

132.    As to this argument, the Bankruptcy Court (Lifland, J.) denied the motions. *See Merkin*, 440 B.R. at 273; *Cohmad*, 454 B.R. at 342; *Chais*, 445 B.R. at 221. The Bankruptcy Court found that "a trustee need not dispute a transferee's good faith defense upon the face of the Complaint. Rather, the transferee bears the burden of establishing its good faith under section 548(c) of the Code as an *affirmative defense* that 'may be raised and proved by the transferee at trial.'" *Merkin*, 440 B.R. at 256 (citation omitted) (quoting *Bayou Superfund*, 362 B.R. at 639); *see also Cohmad*, 454 B.R. at 331; *Chais*, 445 B.R. at 220–21. Accordingly, the Bankruptcy Court found defendants' arguments regarding section 548(c) of the Code irrelevant to the Trustee's pleading burden.

133.    Beginning in 2011, hundreds of defendants moved the District Court to withdraw its reference to the Bankruptcy Court.[6] The District Court withdrew the reference on numerous issues, including whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

134.    With regard to the pleading burden, although good faith is an element of the affirmative defense to actions under sections 548 and 550, the District Court held that, in SIPA cases, a SIPA trustee must *plead* the absence of good faith, with particularized allegations, as

---

[6] *See* Common Briefing discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

part of his *prima facie* case to avoid and recover transfers under the Bankruptcy Code (the "Good Faith Decision"). *SIPC v. BLMIS*, 516 B.R. 18, 23–24 (S.D.N.Y. 2014). The Court reasoned that the usual rule that a defendant bears the burden of pleading an affirmative defense "would totally undercut SIPA's twin goals of maintaining marketplace stability and encouraging investor confidence." *Id*. at 24.

135.    With regard to the standard used to evaluate a transferee's lack of good faith, the District Court discarded the objective "inquiry notice" standard that governed the good faith affirmative defense for over a century. In its place, the District Court held that for purposes of SIPA recovery actions, "'good faith' means that the transferee neither had actual knowledge of the . . . fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." *Id*. at 23. The District Court reasoned that because a securities investor has no inherent duty to inquire about his stockbroker, the inquiry notice standard that usually applied to avoidance actions was "unfair and unworkable." *Id*. at 22. The District Court then returned the withdrawn actions to the Bankruptcy Court for further proceedings consistent with its ruling. *Id*. at 24.

136.    The Trustee moved for certification of an interlocutory appeal, and numerous defendants opposed. *SIPC v. BLMIS (In re Madoff Sec.)*, No. 12-mc-00115, ECF Nos. 544, 550 (S.D.N.Y. June 23 & July 2, 2014). The District Court denied certification, holding that the Second Circuit should review the Good Faith Decision only after the Bankruptcy Court determined, in individual cases, whether the Trustee sufficiently pleaded a given defendant's willful blindness. *SIPC v. BLMIS*, 516 B.R. at 25–26 (S.D.N.Y. July 21, 2014).

137.    Two months later, the District Court issued the District Court ET Decision, concluding that because section 550(b) does not apply extraterritorially, the Trustee must plead

certain facts to establish that the subsequent transfers he seeks to recover are "domestic" transfers.[7] *SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014). Alternatively, the District Court held that recovery of subsequent transfers received from an entity in foreign liquidation proceedings would violate principles of international comity. *Id.* at 231–32. Following these decisions, the District Court returned the cases to this Court. Order Entered July 10, 2014, *In re Madoff Sec.*, No. 12-mc-115 (JSR) (S.D.N.Y.), ECF No. 552.

138.    In view of the altered pleading standards, the Trustee filed an Omnibus Motion for Leave to Replead Pursuant to Federal Rule Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (CGM), ECF No. 7827. In this motion, the Trustee sought leave to file amended complaints with allegations sufficient to meet the new standards articulated by the District Court and leave to take limited discovery.

139.    In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. Hr'g Tr. of Sept. 17, 2014 at 16:14–17, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Nov. 11, 2014), ECF No. 8636. In December 2014, this Court agreed, and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y.), ECF No. 8800 (the "December 10 Scheduling Order") (staying proceedings on the Trustee's

---

[7] *See* discussion *supra* Section (VI)(D)(i).

request for discovery and to replead based on good faith until after the Court ruled on the Defendants' motion to dismiss based on extraterritoriality).[8]

140.    In November 2016, this Court issued its ruling on extraterritoriality.[9] *See SIPC v. BLMIS (In re Madoff)*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689, at *36 (Bankr. S.D.N.Y. Nov. 22, 2016). The Bankruptcy Court ET Decision resulted in partial dismissals of the Trustee's claims in approximately 20 actions and a complete dismissal of approximately 70 actions. The Trustee appealed that ruling to the Second Circuit, which reversed the decisions of the District Court and Bankruptcy Court. *In re Picard*, 917 F.3d 85 (2d Cir. 2019). In June 2020, the Supreme Court denied *certiorari*. *HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020). *See* discussion *supra* Section (VI)(D)(i).

141.    While the Trustee's appeal on extraterritoriality was pending before the Second Circuit, in July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion for those actions that remained pending. Order at ¶¶ 1, 4, Adv. Pro. No. 08-1789 (CGM) (Bankr. S.D.N.Y. July 24, 2017), (ECF No. 16428). That order deferred proceedings on the issue of leave to replead concerning the Good Faith Issue in the Omnibus Motion until after the Court's disposition on the Trustee's request for limited discovery. In June 2018, the Court denied the Trustee's request for limited discovery concerning good faith. *SIPC v. BLMIS*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018).

142.    Thereafter, the Trustee moved for leave to amend his complaints to comport with the new standard articulated in the Good Faith Decision without any additional discovery on that issue. Judge Bernstein denied leave to amend in three separate cases against *Citibank, Fortis,* and

---

[8] The December 10 Scheduling Order was subsequently modified three times. *See* 08-1789, ECF Nos. 8990, 9350, 9720. None of the subsequent orders modified the original paragraph 14 of the December 10 Order concerning discovery and repleading as to good faith. *See also* Hr'g Tr. of Sept. 17, 2014 at 27:17–25, 08-1789 (Nov. 11, 2014), ECF No. 8636.

[9] *See* discussion *supra* Section (VI)(D)(i).

*RBS*, finding that the Trustee did not plead sufficient facts to meet the willful blindness standard. *See Picard v. Citibank, N.A.*, 608 B.R. 181 (Bankr. S.D.N.Y. 2019); *Picard v. ABN Amro Bank (Ireland) Ltd (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited)*, Adv. Pro. No. 10-05355 (SMB), 2020 WL 401822 (Bankr. S.D.N.Y. Jan. 23, 2020); *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. March 31, 2020). Because the *Citibank* decision was the first to result in a final judgment, the Trustee was finally able to appeal Judge Rakoff's 2014 ruling on good faith to the Second Circuit.

143.    Proceeding on a slightly different track was the Trustee's case against Legacy Capital and Khronos.[10] Following the return of the cases from Judge Rakoff in 2014, the Trustee filed an amended complaint in the Bankruptcy Court and defendants Legacy and Khronos moved to dismiss, arguing that the Trustee had not adequately alleged willful blindness on the face of his complaint. The Bankruptcy Court agreed, dismissing those counts of the Trustee's complaint for which lack of good faith was an element of the affirmative defense under section 548(c) for initial transferee Legacy and under section 550(b) for subsequent transferee Khronos. *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016). The Court did not dismiss counts relating to transfers of fictitious profits to defendants. *See Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016). After the parties engaged in discovery, in December 2018, the Trustee moved for summary judgment,[11] which was granted in part.[12] Thereafter, the parties stipulated to

---

[10] While the issues against Legacy Capital and Khronos were on appeal, the Trustee continued to litigate against other subsequent transferees in the *Legacy Capital* action, which is discussed in Section (VI)(E)(v) below.

[11] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 192.

[12] *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682 (Bankr. S.D.N.Y. 2019).

judgment concerning the transfers of fictious profits, and a final judgment was entered on November 12, 2019.[13] *See* discussion *infra* Section (VI)(E)(v).

144.    With two final judgments in hand, the Trustee sought and obtained direct appeals to the Second Circuit on the issues of the good faith defense presented by the *Citibank* and *Legacy* cases. The appeals presented two common issues:

- Whether the District and Bankruptcy Courts erred by holding that transferees on inquiry notice of a broker-dealer's fraud nevertheless are protected by the statutory "good faith" defense so long as they do not willfully blind themselves to the fraud.

- Whether the District and Bankruptcy Courts erred by holding that SIPA shifts the burden of pleading a transferee's affirmative defense of good faith to the plaintiff-trustee.

*See* Appellant Brief at 2, *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78; Appellant Brief at 2, *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF No. 73.

145.    Each appeal also presented the issue of whether, if the District Court did not err with respect to the standard for good faith or the pleading burden, whether the Bankruptcy Court therefore erred by either denying the Trustee leave to amend his complaint (*Citibank*) or dismissing certain claims in the Trustee's amended complaint (*Legacy*) where the Trustee had plausibly pleaded defendants' willful blindness to fraud at BLMIS. *Id.* The Second Circuit heard the appeals in tandem on March 12, 2021 before Circuit Judges Wesley, Sullivan, and Menashi.

146.    On August 30, 2021, the Second Circuit issued a decision, holding that in a SIPA liquidation proceeding the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith. *See Picard v. Citibank (In re Bernard L. Madoff Inv.*

---

[13] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 231.

*Sec. LLC), 12 F.4th 171 (2d. Cir. 2021)) (the "Decision"). The Decision vacated Judge Rakoff's 2014 consolidated good faith decision holding that in a SIPA liquidation proceeding good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.[14] The Decision also vacated Judge Bernstein's decisions in the Trustee's actions against Citibank, N.A. and Legacy Capital applying Judge Rakoff's good faith decision. *See Picard v. Citibank, N.A.*, 601 B.R. 181 (S.D.N.Y. 2019); *Picard v. Legacy Capital Ltd.,* 548 B.R. 13 (S.D.N.Y. 2016).

147.    On October 13, 2021, the Second Circuit issued the mandate, vacating the judgment of the District Court. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 197; *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 187. On January 27, 2022, Defendants Citibank, N.A. and Citicorp North America, Inc. petitioned the Supreme Court for a writ of certiorari to review the Second Circuit's judgment. The Trustee and SIPC declined to submit an opposition. On February 28, 2022, the Supreme Court denied the petition for writ of certiorari.

### E.    BLMIS Feeder Fund Actions

148.    There are nine active feeder fund cases, as set forth on the attached Exhibit C. A few of those with activity during the Report Period are discussed herein.

#### i.    Picard v. Fairfield Greenwich

149.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma"), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the

---

[14] *See SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014).

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009). On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

150. On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

151. As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker and all of their individual and entity affiliates, employees, officers, and partners (the "Management Defendants"), and the Trustee retained his own claims

against the Management Defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

152.   On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against the Management Defendants and agreed to share with the Trustee any recoveries they receive against service providers.

153.   On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

154.   On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barreneche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this

Court. None of the defendants in the three actions have responded yet to the Trustee's complaints.

155. On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section (VI)(D)(i). Under the decision, some of the claims against the moving defendants in the Fairfield, Barreneche, and RD Trust actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.

156. On March 16, 2017, the Trustee filed his notice of appeal in the Fairfield, Barreneche, and RD Trust actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Odier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari.

157. On January 24, 2019, in the action filed by the Joint Liquidators against the Management Defendants, *In re Fairfield Sentry Limited, et al.*, Case No. 10-13164 (CGM), Adv. No. 10-03800 (CGM), the parties entered a stipulation substituting the Trustee as the plaintiff.

(ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

158.    On March 25, 2019, this Court approved a settlement between the Trustee and certain Management Defendants, Lourdes Barreneche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barreneche, Inc., Dove Hill Trust, Fortuna Asset Management, Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Management Defendants remain pending.

159.    On June 19, 2019, this Court entered a stipulated order consolidating the Fairfield, Barreneche, and RD Trust actions. (ECF No. 274).

160.    On September 25, 2019, this Court held a hearing with the Trustee and the remaining Management Defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

161.    On November 18, 2019, this Court entered the Second Order Concerning Mediation in which Richard Davis was appointed to serve as mediator in the action and with all deadlines held in abeyance until March 3, 2020. (ECF No. 276).

162.    On November 25, 2019, the pretrial conference scheduled for November 26, 2019 was adjourned until April 29, 2020. (ECF No. 277).

163.     On February 19, 2020, this Court entered the Third Order Concerning Mediation whereby the parties were to report on the status of the mediation by May 19, 2020, a status conference was scheduled for May 27, 2020, and all deadlines were held in abeyance until June 30, 2020. (ECF No.279).

164.     On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020. (ECF No. 282).

165.     On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the stay in actions consolidated under *Picard v. Fairfield Investment Fund Ltd., et al.*, Adv. No. 09-01239. (ECF No. 285). The Court further ordered the Management Defendants to file their Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group* Adv. No. 10-03800 on or before October 2, 2020. The Court also ordered the Trustee to file an Amended Complaint on or before August 31, 2020 with the parties to provide a proposed briefing schedule in response to the Amended Complaint on or before October 15, 2020.

166.     On August 28, 2020, the Trustee filed a Second Amended Complaint in *Picard v. Fairfield Investment Fund Ltd., et al.*, Adv No. 09-01239. (ECF No. 286).

167.     On October 2, 2020, the Management Defendants filed their Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800 (ECF No. 129) with a letter regarding foreign authorities. (ECF No. 130). On October 20, 2020, this adversary proceeding was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 138). On November 18, 2020, Chief Judge Morris held a joint conference with the parties in *Picard v. Fairfield Investment Fund Ltd., et al.* and *Picard v. Fairfield Greenwich Group*. Also on November 18, 2020, the Court entered a stipulated order providing for supplemental briefing in

response to the Defendants' Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, whereby the Trustee was to file his Supplemental Memorandum in Opposition to the Motion to Dismiss by November 25, 2020 and the Defendants were to file their Supplemental Memorandum in Support of the Motion to Dismiss by December 11, 2020. (ECF No. 137).

168.    On November 25, 2020, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Trustee filed a Supplemental Memorandum in Opposition to the Motion to Dismiss. (ECF No. 141). On December 11, 2020, the parties in this action submitted a letter to the Court regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss. (ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum in Support of the Motion to Dismiss. (ECF No. 146). On December 18, 2020, the parties submitted a letter to the Court regarding the choice of law issues involved in the Motion to Dismiss. (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion to Dismiss in Picard v. Fairfield Greenwich Group, Adv. No. 10-03800.

169.    On March 25, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 161). On April 8, 2021, the Court issued its order Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 162). Under the Court's order, the Defendants' Motion to Dismiss count one for breach of contract against defendant Fairfield Greenwich Limited, counts two and three for breach of contract against defendant Fairfield Greenwich Bermuda, and count five for constructive trust against all defendants, were denied. Under the Court's order, Defendants Fairfield Greenwich Limited and Fairfield Greenwich Bermuda's Motion to Dismiss count four for unjust enrichment was granted and was denied for all other Defendants. The Court further ordered that the Trustee could proceed with discovery

with respect to Defendant Andres Piedrahita to determine the issue of general personal jurisdiction. (ECF No. 162).

170.    On October 20, 2020, *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 288). On October 21, 2020, a scheduling order was entered in this adversary proceeding whereby Defendants were to file a Motion to Dismiss in response to the Second Amended Complaint by January 15, 2021, the Trustee was to file his Opposition to the Motion to Dismiss by April 15, 2021, and the Defendants were to file their Reply in Support of the Motion to Dismiss by May 31, 2021. (ECF No. 289).

171.    On January 15, 2021, in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, the Defendants filed a Motion to Dismiss Adversary Proceeding (the Second Amended Complaint). (ECF No. 305). On April 15, 2021, the Trustee filed his Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (ECF No. 311).  On May 28, 2021, Defendants filed their Reply to the Motion to Dismiss. (ECF No. 313).  On June 16, 2021, the Court held a hearing on the Motion to Dismiss.

172.    On May 6, 2021 and May 28, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Defendants filed Answers to the Second Amended Complaint. (ECF Nos. 164 – 168, 170 and 173).

173.    On June 22, 2021, in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, Defendants submitted a letter to the Court seeking leave to file 121 pages of documents, consisting of selected exhibits to the Trustee's First Amended Complaint.  On June 23, 2021, the Trustee submitted a letter to the Court responding and objecting to Defendants' submission. (ECF No. 326).  On June 24, 2021, the Court denied the relief requested in the Defendants'

letter, without prejudice to Defendants' submission of a motion formally requesting the relief sought. (ECF No. 329). On June 25, 2021, Defendants filed a Motion for Leave to File Copies of Documents Incorporated in the Trustee's Pleadings. (ECF No. 330). On June 28, 2021, the Court denied Defendants' Motion for Leave. (ECF No. 331).

174. On August 2, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Court entered a Case Management Order stipulated by the parties, establishing discovery procedures and deadlines in this action. (ECF. No. 174).

175. Also on August 2, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Court entered an order stipulated by the parties that the Litigation Protective Order entered in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 08-01789 (CGM) on June 6, 2011, as modified, shall govern the disclosure of confidential information to the same extent in this action. (ECF No. 175).

176. On August 6, 2021, *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, the Court issued its Memorandum Decision Denying Motion to Dismiss as to All Claims Except Those Made Against Corina Noel Piedrahita in her Individual Capacity. (ECF No. 336). On September 14, 2021, the Court entered its Order Denying Defendants' Motion to Dismiss as to All Claims Except Those Against Corina Noel Piedrahita in her Individual Capacity. (ECF No. 339). Under the Court's Order, Defendants' motion was denied, except that it was granted with respect to Counts Eight and Fourteen to the extent those counts assert individual claims against Corina Noel Piedrahita, which claims were dismissed without prejudice. With respect to Counts Eight and Fourteen, Defendants' motion was denied to the extent those counts assert claims against Corina Noel Piedrahita as an alleged partner of Fairfield Greenwich Group. (ECF No. 339).

177.    On September 1, 2021 and September 3, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the parties served Initial Disclosures.

178.    On September 30, 2021, Defendants filed Answers to the Second Amended Complaint in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239. (ECF Nos. 342 – 347 and 349).

179.    In *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Trustee served his First Requests for Production of Documents on August 20, 2021 and his First Set of Interrogatories to Defendants on December 21, 2021.

180.    On November 2, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Court entered an order stipulated by the parties, appointing a discovery arbitrator. (ECF No. 176).

181.    On December 6, 2021, in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, the Court entered a Case Management Order stipulated by the parties establishing discovery procedures and deadlines in this action and providing that all discovery produced in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, is deemed produced in the *Picard v. Fairfield Investment Fund Limited* action, and vice versa. (ECF No. 353).

182.    On January 5, 2022 and January 10, 2022, in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, the parties served Initial Disclosures.

183.    In February 2022, the Defendants were given access to the Trustee's electronic data rooms containing millions of documents, including non-confidential documents produced to the Trustee by third parties.  On February 3, 2022, Third-Party Defendant Fairfield Sentry produced approximately 1,000 documents to the Trustee in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800.  Throughout the Report Period, the Defendants have continued to

produce documents to the Trustee on a rolling basis, totaling approximately one million documents as of August 8, 2022. In accordance with the parties' agreement, productions in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, are also deemed produced in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, and vice versa.

184. On April 22, 2022, Defendants in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239 served the Defendants' First Request for Production of Documents to the Trustee. The Trustee met and conferred with Defendants and in June 2022, the Trustee made two productions of documents (totaling approximately 4,500 documents), which are deemed produced in *Fairfield Greenwich Group*, Adv. No. 10-03800 and *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239.

185. On May 17, 2022, the Court entered Stipulated Amended Case Management Orders previously agreed upon and submitted by the parties on May 16, 2022 in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800 (ECF No. 179) and *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239 (ECF No. 355) establishing amended discovery deadlines in both actions.

186. Throughout the Report Period, B&H attorneys, on behalf of the Trustee, have continued to analyze legal issues in *Fairfield Greenwich Group*, Adv. No. 10-03800 and *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239; reviewed relevant documents produced by the Defendants; prepared discovery requests for party and non-party witnesses; and conferred with counsel for certain Defendants and third parties who previously produced documents to the Trustee designated as confidential, to request and obtain the de-designation of such discovery materials.

ii.    **The HSBC Action**

187.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

188.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

189.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

190.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

191.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

192.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. (ECF No. 497).

193.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. (ECF No. 545). On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. (ECF No. 548). Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. (ECF No. 566).

194.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. (ECF No. 567). Litigation is ongoing.

195.    On June 20, 2022, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which narrowed most of the issues between those parties. (ECF No. 715).

### iii.    **The UBS Action**

196.    On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

197.    On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals,

Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

198.    On February 12, 2020, the Trustee filed a Motion for Order Issuing Letter Rogatory to AA Alternative Investment PLC on Behalf of Landmark Investment Fund Ireland in the LIF Action, which the Bankruptcy Court granted by Order dated February 25, 2020.

199.    On March 2, 2020, the Trustee filed a Motion for Leave to File a Second Amended Complaint in the Luxalpha Action. On April 3, 2020, Luxalpha filed its Memorandum Of Law In Opposition To Trustee's Motion For Leave To File A Second Amended Complaint And In Support Of Cross Motion For Claim Determination And Allowance. On May 4, 2020, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Cross Motion for Claim Determination and Allowance. On May 18, 2020, Luxalpha filed its Reply Memorandum of Law in Support of its Cross-Motion for Claim Determination and Allowance.

200.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with the Trustee and Luxalpha regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court directed that hearings on the motions will be adjourned sine die pending issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*,

Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. On June 22, 2020, the Trustee and Luxalpha filed a joint notice adjourning the hearing on the motions accordingly.

201.    The Trustee and Luxalpha Liquidators subsequently signed a stipulation agreeing to proceed with discovery and the appointment of a discovery arbitrator, which the court so-ordered on October 27, 2020, as amended by order dated November 24, 2020.

202.    With respect to the LIF Action, in October 2020, B&H attorneys, on behalf of the Trustee, finalized settlement terms with Landmark Investment Fund Ireland, and on October 27, 2020 filed a Rule 9019 motion seeking approval of the settlement from the Bankruptcy Court. By order dated November 16, 2020, the Bankruptcy Court approved the motion, authorized the settlement agreement between the Trustee and Landmark Investment Fund Ireland, and ordered that the transfers from BLMIS to Landmark Investment Fund Ireland set forth in Exhibit C of the Complaint filed on December 7, 2010 [ECF No.1] are deemed avoided.

203.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith. *See In re Bernard L. Madoff Inv. Secs. LLC,* 12 F.4th 171 (2d. Cir. 2021). *See* discussion *supra* Section (VI)(D)(ii). The Second Circuit's decision governs the Trustee's actions against other defendants, including the Luxalpha Defendants and LIF Defendants.

204.    On January 19, 2022, the Bankruptcy Court held a status conference with the parties in the Luxalpha and LIF actions. On January 20, 2022, the Bankruptcy Court entered a so-ordered stipulation between the Parties in the Luxalpha Action regarding the filing of the Trustee's Second Amended Complaint. Pursuant to the stipulation, on February 7, 2022 the

Trustee provided Defendants with the Proposed Second Amended Complaint. On February 18, 2022, Defendants consented to the Trustee filing the Proposed Second Amended Complaint, which was filed by the Trustee on February 28, 2022.

205.    During the Report Period, on April 22, 2022, Luxalpha SICAV filed its Answer to the Second Amended Complaint in the Luxalpha Action. Also on April 22, 2022, the remaining Defendants, including the UBS Defendants, the Access Defendants, Groupement Financier Ltd. and certain individual defendants (the "Moving Defendants") filed motions to dismiss the Second Amended Complaint. On June 17, 2022, the Trustee filed oppositions to the Moving Defendants' motions to dismiss. On July 29, 2022, the Moving Defendants filed their reply briefs in support of their motions to dismiss. On September 14, 2022, the Court heard oral argument on the Moving Defendants' motions to dismiss.

206.    B&H attorneys, on behalf of the Trustee, continued to analyze legal issues in the case and reviewed relevant documents in connection with drafting an amended complaint in the LIF Action, which involved analysis of allegations under the pleading burden and good faith standard set forth in the Second Circuit's August 30, 2021 decision, as well as analysis of issues relating to related subsequent transfer claims and the subordination or disallowance of certain customer claims. B&H attorneys also reviewed and analyzed the Moving Defendants' opening and reply briefs in support of their motions to dismiss in the Luxalpha Action, and prepared opposition briefs to those motions. B&H attorneys prepared for and participated in the hearing and oral argument on the Moving Defendants' motions to dismiss. B&H attorneys also continued planning for discovery and witness interviews in both the Luxalpha and LIF matters, and engaged in discussions with opposing counsel and analysis related to potential settlements or cooperation agreements with certain defendants.

### iv. **Picard v. Square One**

207.     On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd. ("Square One"), Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefits of the Square One Defendants. *Picard v. Square One Fund Ltd.,* Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y. Nov. 29, 2010).

208.     On December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.*, (ECF No. 167-69).

209.     Square One filed a motion to dismiss on February 14, 2019. *Id.*, (ECF No. 170). On May 29, 2019, the Court held a hearing on Square One's motion to dismiss.  At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss. The Court subsequently entered an order granting in part and denying in part Square One's motion to dismiss on June 13, 2019. *Id.*, (ECF No. 177).

210.     On July 16, 2019, the Court so-ordered a Case Management Plan. *Id.*, (ECF No. 178).

211.     During the Report Period, the Trustee and Square One were engaged in active discovery. On May 4, 2022, the Trustee attended and took the deposition of Mr. Christophe Khaw in New York, New York, in accordance with the Trustee's Rule 45 Subpoena.

212.     On May 16, 2022, Judge Morris signed and ordered a Stipulation and Order for Second Amended Case Management Plan submitted by counsel for the Trustee and counsel for Square One (ECF No. 245).

213.    On May 20, 2022, the Trustee attended and took the examination of Mr. Jérôme Müller in London, United Kingdom, in accordance with the Order Issuing the Letter of Request for Service Abroad of Judicial or Extrajudicial Documents in a Civil or Commercial Matter (ECF No. 243).

214.    On June 9, 2022, a Notice of Adjournment of Hearing was filed and the Pre-Trial conference was adjourned to November 16, 2022.

215.    On July 12, 2022, the Trustee filed a Motion for the Issuance of Letter of Request for Service Abroad of Judicial or Extrajudicial Documents in a Civil or Commercial Matter for the examination of Mr. Timothée Henry.  (ECF No. 249).  This motion was unopposed and on July 25, 2022, the Trustee filed a Certificate of No Objection to the Trustee's Motion for the Issuance of a Letter of Request for Service Abroad of Judicial or Extrajudicial Documents in a Civil or Commercial Matter for the examination of Mr. Timothée Henry.  (ECF No. 251).

216.    On July 25, 2022, Judge Morris entered an Order Issuing a Letter of Request for Service Abroad of Judicial or Extrajudicial Documents in a Civil or Commercial Matter for the examination of Mr. Timothée Henry.  (ECF No. 252).

217.    Finally,  the  Trustee  filed  and  served  one  notice  adjourning  the  pre-trial conference.  (ECF No. 248).

**v.    Picard v. Legacy**

218.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010) (the "Legacy Initial Transfer Action").

219.    As background, on November 12, 2019, the Bankruptcy Court entered a Stipulation and Order for Entry of Final Judgment ("Stipulated Order"), that included, among other things: (i) the Trustee's and Legacy's consent to the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's avoidance claim, and (ii) entry of the final order and judgment against Legacy in the amount of $79,125,781.00. The Stipulated Order further provided that "the Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and recoverable from Legacy under §550(a) of the Bankruptcy Code."

220.    On November 11, 2020, and within the time period set forth in §550(f) of the Bankruptcy Code, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer, Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA Holdings, LLC, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. (collectively, the "Subsequent Transfer Defendants").  The complaint sought recovery of approximately $49,505,850 in subsequent transfers of BLMIS customer property originally made to Montpellier and Prince by Legacy. *See Picard v. Mayer et al.*, Adv. No. 20-01316 (CGM) (the "Legacy Subsequent Transfer Action").  Among the claims were claims for vicarious liability, including alter ego liability, and piercing the corporate veil concerning the individual defendants.

221.    On August 30, 2021, the Second Circuit issued a decision concerning an appeal in *Picard v. Citibank, N.A.* and *Picard v. Legacy Capital, Ltd*., holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith (the "Good Faith Decision"). The Good Faith Decision vacated Judge Rakoff's 2014 consolidated good faith decision holding that in a SIPA liquidation good faith is governed

by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith. The Good Faith Decision also vacated Judge Bernstein's 2016 motion to dismiss decision in the Trustee's action against Legacy applying Judge Rakoff's good faith decision, which had dismissed all claims in that action except for Count I to the extent it related to avoidance of fictitious profits. The Second Circuit remanded the Legacy Initial Transfer Action to the Bankruptcy Court for the proceedings to continue consistent with the appellate decision.

222. During the Report Period, B&H attorneys, on behalf of the Trustee, prepared a motion to consolidate the Legacy Initial Transfer Action and the Legacy Subsequent Transfer Action for all pre-trial purposes (the "Motion to Consolidate"). The Motion to Consolidate was fully briefed and the Trustee's counsel prepared for oral argument. Pursuant to a stipulation, the parties set April 7, 2022 as the hearing date for the Motion to Consolidate.

223. On April 7, 2022, the Court heard oral argument on the Motion to Consolidate. On the same day, Judge Morris read her opinion into the record and granted the Trustee's Motion to Consolidate in part as to consolidated discovery on the issue of Legacy Capital's and the Subsequent Transfer Defendants' "good faith" defense. Judge Morris also ordered that the Legacy Initial Transfer Action and Legacy Subsequent Transfer Action proceed to discovery as to all other case issues.

224. During the Report Period, B&H attorneys, on behalf of the Trustee, filed a complaint on April 27, 2022 seeking to recover from BNP Paribas - Dublin Branch ("BNP Paribas") pursuant to Section 550 of the Bankruptcy Code, initial transfers in the amount of $49.5 million made from BLMIS to BNP Paribas from Legacy's BLMIS account. *See Picard v. BNP Paribas – Dublin Branch,* Adv. No. 2201087 (CGM) (the "BNP Paribas Recovery

Action"). These transfers sought were avoided in the November 12, 2019 Final Judgment and Stipulated Order as fictitious profits transferred from BLMIS to, or for the benefit of Legacy. Prior to filing the BNP Paribas Recovery Action, B&H attorneys, on behalf of the Trustee entered into a tolling agreement with BNP Paribas's counsel in order to preserve such potential recovery claims against BNP Paribas.

225. During the Report Period, B&H attorneys worked with local counsel in Ireland to serve the BNP Paribas Recovery Action. Judge Morris scheduled an initial pre-trial conference for June 15, 2022. After the complaint was served, BNP Paribas's counsel and the Trustee agreed to adjourn the initial pre-trial conference to September 14, 2022, so that the parties could determine if the Trustee's claims could potentially be resolved through early mediation. The Trustee and BNP Paribas's counsel entered into a stipulation extending the time for BNP Paribas to file its responsive pleading until October 31, 2022 while the parties continued to meet and confer on a framework for mediation and potential mediators. Subsequently, the parties agreed to adjourn the September 14, 2022 pre-trial conference until December 14, 2022.

226. During the Report Period, B&H attorneys, on behalf of the Trustee, worked with opposing counsel on a Rule 26(f) case management conference and discovery plan for the Legacy Initial Transfer Action. The parties agreed to appoint Frank Maas, Esq. as a Discovery Arbitrator for the Legacy Initial Transfer Action. On June 13, 2022, Judge Morris entered a Second Amended Stipulated Case Management Order in the Legacy Initial Transfer Action. The Order provided that Legacy would file an amended Answer on June 15, 2022, and set fact and expert discovery completion dates of December 22, 2023 and September 30, 2024, respectively.

227. During the Report Period, B&H attorneys, on behalf of the Trustee, reviewed Legacy's amended Answer and Affirmative Defenses. In response, the Trustee drafted discovery

requests for party and third-party witnesses in connection with the Legacy Initial Transfer Action.

228.     During the Report Period, B&H attorneys, on behalf of the Trustee, began to work on a case management and discovery plan for the Legacy Subsequent Transfer Action. The parties agreed to appoint Frank Maas, Esq. as a Discovery Arbitrator for the Legacy Subsequent Transfer Action. On August 23, 2022, Judge Morris entered a Stipulated Case Management Order in the Legacy Subsequent Transfer Action. The Order set fact and expert discovery completion dates of December 22, 2023 and September 30, 2024, respectively. Further, B&H attorneys prepared initial disclosures as well as discovery requests for party and third-party witnesses in connection with the Legacy Subsequent Transfer Action.

## F.     **Subsequent Transfer Actions**

229.     The Trustee and B&H attorneys continue to pursue recovery actions against entities that received subsequent transfers of Customer Property from BLMIS through primarily the Fairfield Funds, the Tremont Funds, and Harley.

230.     The Trustee settled his claims against the Fairfield Funds in 2011. *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-1239 (CGM), ECF No. 107. As part of the settlement, the Bankruptcy Court entered a consent judgment in the amount of approximately $3 billion, and the Fairfield Funds repaid $70 million to the Trustee. The Trustee then commenced dozens of cases to recover the subsequent transfers of Customer Property that defendants received from the Fairfield Funds. *See* discussion *supra* Section (VI)(E)(i).

231.     In 2011, the Trustee also settled his claims against the Tremont Funds in 2011. *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (SMB), ECF No. 38. As part of this settlement, the Tremont Funds repaid the Trustee $1.025 billion out of the $2.1 billion received from BLMIS. The Trustee has nine actions against defendants who received

subsequent transfers from the Tremont Funds. These actions seek to recover a portion of the $1 billion in transfers, which were not recovered as part of the settlement with the Tremont Funds.

232.    The Trustee has eight actions against defendants who received subsequent transfers from Harley. In 2009, the Trustee filed an adversary proceeding against Harley that sought to avoid and recover approximately $1 billion in initial transfers received from BLMIS. *Picard v. Harley International (Cayman) Limited, Inc.*, Adv. Pro. No. 09-01187 (CGM), ECF No. 1. Harley never responded to the complaint, and on November 10, 2010, the Bankruptcy Court entered a default judgment and summary judgment against Harley. The Trustee's actions seek to recover all of the avoided transfers that defendants received from Harley.

233.    As of today, the Trustee has 79 subsequent transfer actions pending, as set forth in the attached Exhibit D.

234.    All of these cases were affected by the Second Circuit's decision on good faith under sections 548(c) and 550(b) in the Trustee's cases against Citibank, N.A. and Legacy Capital Ltd. *See Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021) (the "Citibank Decision"). *See* discussion *supra* Section (VI)(D)(ii).

235.    Now that the Second Circuit has issued the Citibank Decision, the parties are actively litigating the subsequent transfer cases in the Bankruptcy Court. In approximately 15 cases, the Trustee has already or intends to file amended complaints based on information now available to the Trustee. In approximately 50 cases, defendants have moved to dismiss the Trustee's operative complaints, and the Bankruptcy Court has already decided—and denied— defendants' motions to dismiss in approximately 25 cases.

**i.**    **Picard v. Citibank, N.A., et al.**

236.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank")

seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).[15]

237.　On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint. (ECF No. 170). *See* discussion *supra* Section (VI)(D)(ii).

238.　On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (ECF No. 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment. (ECF No. 176).

239.　On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (CGM)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28,

---

[15] The Trustee refers the Court to the discussion *supra* Section (VI)(D)(ii) for additional information on the Citibank Action.

2014, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

240.    On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

241.    On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 1. On April 23, 2020, the Second Circuit granted the Trustee's Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 23.

242.    On May 28, 2020, the Trustee filed a motion for the appeals in *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to proceed in tandem and to therefore be heard before the same panel. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 28. On June 2, 2020, Defendants filed their opposition to the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 31. On June 8, 2020, the Trustee filed a Reply in support of his motion, and on that same day, the Second Circuit granted the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), ECF No. 45.

243.    On August 6, 2020, the Trustee filed his appellate brief and appendices.   On August 13, professors of bankruptcy law, the National Association of Bankruptcy Trustees, and professors of civil procedure filed their respective briefs in support of the Trustee as *amici curiae*. On November 5, 2020, Defendants-Appellees filed their opposition brief, ECF No. 134. On November 12, 2020, (i) the Securities Industry and Financial Markets Association and the

American Bankers Association; (ii) ABN AMRO Bank N.V.; and (iii) ABN AMRO Retained Custodial Services (Ireland) Limited and ABN AMRO Custodial Services (Ireland) Ltd. filed their respective briefs in support of the Defendants-Appellees' opposition as *amici curiae*, ECF Nos. 136, 139, 140. On November 25, 2020, the Trustee and SIPC filed their respective reply briefs, ECF Nos. 166, 167.

244.    Oral argument was heard on March 12, 2021, before the Second Circuit.  On March 23, 2021 and June 11, 2021, the Trustee filed notices to adjourn the pre-trial conference while awaiting the Second Circuit judgment, which was issued on August 31, 2021.  The Second Circuit judgment vacated the judgments of the bankruptcy court and remanded the case for proceedings consistent with the Second Circuit's opinion.  *See* discussion *supra* Section (VI)(D)(ii).

245.    On February 11, 2022, the Trustee filed an amended complaint against Defendants.  On April 22, 2022, Defendants filed a motion to dismiss the amended complaint.

246.    During the Report Period, B&H attorneys, on behalf of the Trustee, analyzed Defendants' motion to dismiss and filed his opposition to the motion to dismiss on July 1, 2022. B&H attorneys prepared for oral argument on Defendants' motion to dismiss and argued the motion before Judge Cecelia M. Morris on September 14, 2022.  On September 27, 2022, Judge Morris denied Defendants' motion to dismiss in its entirety.

**ii.**    **Picard v. Natixis, et al.**

247.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the recovery of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences,

fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (Bankr. S.D.N.Y. Dec. 8, 2010).

248.    On February 25, 2019, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019).  *See* discussion *supra* Section (VI)(D)(i). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).  On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived.  *Id.* (ECF No. 181).

249.    The Bankruptcy Court so ordered a stipulation on July 1, 2020, staying the Natixis Action pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 185). *See* discussion *supra* Section (VI)(D)(ii).

250.    Following the Second Circuit's decision in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),* 12 F.4th 171 (2d Cir. 2021),[16] B&H attorneys are analyzing the filed complaint in the Natixis Action, investigating potential amendments, conferring with opposing counsel regarding scheduling, and assessing potential motion practice.

---

[16] *See* discussion *supra* Section (VI)(D)(ii).

iii.    **Picard v. Nomura International PLC**

251.    On December 8, 2010, the Trustee commenced an action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010). On June 6, 2012, the Trustee filed an Amended Complaint in the Nomura Action.

252.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the "Extraterritoriality Issue"). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

253.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

254.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

255.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec.*

*LLC*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *supra* Section (VI)(D)(i).

256. On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB), ECF No. 108.

257. On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties. *Id.*, ECF No. 113. The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

258. On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order. *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i).

259. On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court. On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari. *See* discussion *supra* Section (VI)(D)(i). Also on June 1, 2020, the Second Circuit issued the mandate, returning the Nomura Action to the Bankruptcy Court.

260. On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith. *See In re Bernard L. Madoff Inv. Secs. LLC*, 12 F.4th 171, 185-200 (2d Cir. 2021). *See* discussion *supra* Section (VI)(D)(ii). The Second Circuit's decision governs the Trustee's actions against other subsequent transferee defendants, including Nomura.

261.    During the Report Period, B&H attorneys prepared amended complaints against Nomura in the Nomura Action and a separate adversary proceeding captioned as *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011).  B&H attorneys agreed with Nomura's counsel to submit stipulated scheduling orders governing briefing schedules for the Trustee's motions for leave to file amended complaints or, alternatively, for Nomura's motions to dismiss the amended complaints.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 120; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 90.  B&H attorneys subsequently met and conferred with Nomura's counsel to obtain Nomura's consent to file the amended complaints.  On June 13, 2022, B&H attorneys filed the amended complaints.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 121; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 91.  On August 26, 2022, Nomura filed motions to dismiss the Trustee's proceedings. B&H attorneys prepared oppositions to Nomura's motions to dismiss.

### iv.    <u>Picard v. Merrill Lynch International.</u>

262.    On December 8, 2010, the Trustee commenced an action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action*"). Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

263.    On August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith.  The *Citibank Decision*

vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.

264.    During the Report Period and following the *Citibank Decision*, the Trustee updated and prepared a revised schedule for MLI to answer or move to dismiss the Complaint. Stip. and Order, ECF No. 126.  On May 26, 2022, MLI filed a motion to dismiss the Complaint, which was reviewed and analyzed by the Trustee.  Mot. Dismiss, ECF No. 128.  Thereafter, the parties discussed, and it was agreed, that the Trustee could file an amended complaint and set the deadline to file that amendment for August 19, 2022.  Second Amend. Stip. and Order, ECF No. 134 at 4.

265.    During the Report Period, the Trustee reviewed various materials and prepared the amended complaint, which was filed with the Court on August 19, 2022.  Amend. Compl., ECF No. 137.  Based on the revised schedule, MLI originally had until October 5, 2022 to respond to the amended complaint (ECF No. 134, at 5), but the Trustee has discussed with MLI's counsel and has further updated the schedule which gave MLI until October 19, 2022 to answer or move to dismiss.  Third Amend. Stip. and Order, ECF No. 139, at 5.  MLI filed a motion to dismiss on October 19, 2022, the Trustee has until December 9, 2022 to respond to the motion, and the deadline for MLI to file a reply shall be January 11, 2023.  *See id.*  B&H attorneys continue to analyze the various motions to dismiss pending in the other Madoff related actions and assess potential upcoming motion practice and discovery.

        **v.      Picard v. ABN AMRO Bank N.V.**

266.    The Trustee and B&H attorneys are pursuing two now-consolidated avoidance actions against ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.) ("ABN").

267.    In the first action, the Trustee seeks the return of approximately $286 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property ABN received from Rye Select Broad Market XL Portfolio, Ltd., Rye Select Broad Market Portfolio Limited, Rye Select Broad Market XL Fund L.P., and Rye Select Broad Market Fund L.P. *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.)*, Adv. No. 10-05354 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010) ("ABN Rye Bankruptcy Court Action").

268.    On June 10, 2019, the Trustee filed a motion for leave to file a second amended complaint in the ABN Rye Bankruptcy Court Action. *Id.*, ECF No. 179. On March 31, 2020, the Bankruptcy Court denied the Trustee's motion. *Id.*, ECF No. 200. On April 9, 2020, the Bankruptcy Court entered a final judgment in the matter (the "Final Judgment"). *Id.*, ECF No. 201.

269.    On April 23, 2020, the Trustee filed a Notice of Appeal, appealing the Final Judgment to the District Court. *Id.*, ECF No. 202. On May 12, 2020, the Record of Appeal was transmitted to the District Court and the appeal was assigned to Judge Valerie E. Caproni. *Picard v. ABN AMRO Bank N.V.*, No. 20-cv-3684 (VEC) (S.D.N.Y. May 12, 2020) ("ABN District Court Appeal"), ECF No. 1.

270.    On May 28, 2020, the Trustee moved the District Court for a stay of his appeal pending a decision by the Second Circuit in two similarly situated actions: *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively, the "Good Faith Appeals"). ABN District Court Appeal, ECF Nos. 3-4. On June 8, 2020, the District Court granted the Trustee's motion and stayed his appeal, with exception to

permit a motion by ABN for certification of the appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 12.

271.    On June 9, 2020, ABN moved the District Court to certify the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF Nos. 17-18. On July 16, 2020, the District Court granted ABN's motion and certified the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 22.

272.    On July 21, 2020, ABN moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with the Related Appeals. *Picard v. ABN AMRO Bank, N.V.*, No. 20-2291 (2d Cir. July 21, 2020) ("ABN Second Circuit Appeal"), ECF Nos. 1-2. On August 4, 2020, the Second Circuit denied ABN's motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Good Faith Appeals. *Id.*, ECF No. 37. On October 6, 2020, the Second Circuit issued an order deferring its decision on ABN's motion for leave to appeal pending resolution of the Good Faith Appeals. *Id.*, ECF No. 48.

273.    On August 30, 2021, the Second Circuit entered its decision in the Good Faith Appeals. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. Aug. 30, 2021), ECF No. 182-1 (the "Good Faith Decision").

274.    On October 26, 2021, the parties filed a Stipulation in the Second Circuit to withdraw the ABN Second Circuit Appeal with prejudice pursuant to Federal Rule of Appellate Procedure 42(b). ABN Second Circuit Appeal, ECF No. 51. On October 27, 2021, the Second Circuit "so-ordered" the Stipulation and issued the mandate. *Id.*, ECF Nos. 57-58.

275.    On November 12, 2021, the parties filed a letter in the District Court to so order a Stipulation vacating the Bankruptcy Court's Final Judgment in the ABN Rye Bankruptcy Court

Action and remand the case to the Bankruptcy Court for further proceedings. ABN District Court Appeal, ECF No. 25. On November 12, 2021, the District Court "so-ordered" the Stipulation, vacated the Bankruptcy Court's Final Judgment, and remanded the ABN Bankruptcy Court Action to the Bankruptcy Court for further proceedings. *Id.*, ECF No. 26.

276.    On November 16, 2021, the ABN Rye Bankruptcy Court Action was formally reopened in the Bankruptcy Court. ABN Rye Bankruptcy Court Action, ECF No. 214.

277.    On October 6, 2011, the Trustee commenced his second action against ABN in the adversary proceeding *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.) et al*, Adv. Pro. 11-02760 (CGM), seeking the return of approximately $21 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with subsequent transfers of BLMIS customer property ABN received from Harley International (Cayman) Limited ("ABN Harley Bankruptcy Court Action").

278.    On July 6, 2014, the District Court entered an Opinion and Order ruling on extraterritoriality and international comity issues (the "District Court ET Decision") and returned certain matters to the Bankruptcy Court for further proceedings consistent with the District Court ET Decision, *see SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222 (S.D.N.Y. 2014).

279.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Bankruptcy Court ET Decision") dismissing certain claims to recover subsequent transfers on grounds of international comity resulting in the dismissal of all claims against ABN in the ABN Harley Bankruptcy Court Action. ABN Harley Bankruptcy Court Action, ECF No. 74; *see Picard v. Bureau of Labor Ins.*

*(SIPC v. BLMIS)*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016).

280.    On February 25, 2019, the Second Circuit issued an order, *In re Picard*, 917 F.3d 85 (2d Cir. 2019) which, *inter alia*, vacated the Bankruptcy Court ET Decision.

281.    On January 19, 2022, the Bankruptcy Court "so-ordered" a Stipulation between the parties setting forth a schedule for the Trustee to file a motion to amend the complaints and consolidate his two actions against ABN. ABN Rye Bankruptcy Court Action, ECF No. 217; ABN Harley Bankruptcy Court Action, ECF No. 109.

282.    On March 2, 2022, the Bankruptcy Court "so-ordered" an amendment to the Parties' January 19, 2022 Stipulation (the "Amended Stipulation") setting forth, among other things, a deadline for ABN to inform the Trustee whether it would consent to the Trustee filing a Consolidated Second Amended Complaint (the "Consolidated Amended Complaint") and a briefing schedule for ABN's motion to dismiss in the event that it consented to the Trustee filing the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 219; ABN Harley Bankruptcy Court Action, ECF No. 110.

283.    On March 7, 2022, ABN consented to the Trustee's filing of the Consolidated Amended Complaint.

284.    On March 22, 2022, the Trustee filed the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 220; ABN Harley Bankruptcy Court Action, ECF No. 111.

285.    During the Compensation Period, B&H attorneys conferred with opposing counsel and negotiated the terms of consolidation of the Trustee's two actions against ABN. On April 20, 2022, the Court "so-ordered" a Stipulation and Order for Consolidation, consolidating

the ABN Rye Bankruptcy Court Action and the ABN Harley Bankruptcy Court Action under the

ABN Rye Bankruptcy Court Action. ABN Rye Bankruptcy Court Action, ECF No. 222; ABN

Harley Bankruptcy Court Action, ECF No. 113.

286.    Pursuant to the briefing schedule in the Amended Stipulation, on May 23, 2022,

ABN filed its motion to dismiss the Consolidated Amended Complaint. ABN Rye Bankruptcy

Court Action, ECF No. 224. On July 22, 2022, the Trustee filed his opposition to ABN's motion,

and ABN filed its reply in further support of its motion on August 22, 2022. *Id.*, ECF Nos. 226,

230. B&H attorneys currently are preparing for oral argument on ABN's motion to dismiss,

which is scheduled for November 16, 2022. B&H attorneys also are preparing for discovery in

the matter.

### vi.    **Picard v. ABN AMRO Bank (Ireland) Ltd., et al.**

287.    On December 8, 2010, the Trustee commenced an action against ABN AMRO

Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO

Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland)

Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye

Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for preferences and fraudulent conveyances in connection with certain transfers of property

by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN

AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

288.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order

Concerning the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 162). On

February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. (ECF

No. 165). On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion

for Leave to File an Amended Complaint. (ECF No. 169). On May 23, 2019, the Trustee filed the Reply in Further Support of the Motion for Leave to File an Amended Complaint. (ECF No. 179). Oral argument in this matter was held on September 25, 2019. On January 23, 2020, the Bankruptcy Court issued its Memorandum Decision Denying Motion for Leave to File Second Amended Complaint. (ECF No. 188). On February 6, 2020, the Bankruptcy Court entered the Stipulated Order Denying the Trustee's Motion for Leave to Amend and Entering Final Judgment. (ECF No. 189).

289.    On February 19, 2020, the Trustee filed his Notice of Appeal. (ECF No. 189).  On March 4, 2020, the Trustee filed his Designation of Items to be Included in the Record on Appeal and Statement of Issues to Presented. (ECF No. 192).  On March 18, 2020, the Fortis Defendants filed a Counter-Designation of Additional Items to be Included in the Record on Appeal. (ECF No. 194).  On March 27, 2020, the Record of Appeal was transmitted to the United States District Court of Appeal and assigned to Judge Colleen McMahon. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 27, 2020) (ECF Nos. 1, 3).

290.    On April 6, 2020, the Fortis Defendants moved for Leave to Appeal directly to the Second Circuit pursuant to § 158(d)(2)(A). (ECF Nos. 8-10).  On April 10, 2020, the Trustee filed a joint letter motion for an Extension of Time to Complete Merits Briefing and Trustee's Response and Consent to Defendants' Motion Requesting Permission to Appeal to the Second Circuit. (ECF No. 14).  On May 7, 2020, the Trustee filed a Letter Motion for an Extension of Time of Briefing Schedule beyond May 15, 2020. (ECF No. 17).  On May 8, 2020 Judge McMahon granted the Trustee's Letter Motion. (ECF Nos. 18, 19).  On June 11, 2020, Judge McMahon granted the Fortis Defendants' motion for Leave to Appeal and stayed merits briefing pending resolution of the motion. (ECF No. 24).

291.    On June 18, 2020, the Fortis Defendants filed a motion for Leave to Appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Jun 18, 2020) (ECF Nos. 1-2).   The Fortis Defendants also filed a motion to expedite so that the Fortis Defendants' briefing could be heard in tandem with the related appeals of *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir.) and *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir.) (together, the "Related Appeals"). (ECF No. 2). On August 4, 2020, the Second Circuit denied the Fortis Defendants' motion to expedite and for hearing in tandem. (ECF No. 42).   On October 6, 2020, the Second Circuit deferred a decision on the motion for leave to appeal to the Second Circuit until the resolution of the Related Appeals. (ECF No. 48).

292.    On August 30, 2021, the Second Circuit rendered its decision in the Related Appeals, overturning the District Court's standard for pleading good faith, vacating the judgments of the Bankruptcy Court, and remanding for further proceedings consistent with the opinion. *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir. Aug. 30, 2021) (ECF No. 182); *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir. Aug. 30, 2021) (ECF No. 177).   *See* discussion *supra* Section (VI)(D)(ii).

293.    On October 1, 2021, the Fortis Defendants filed an updated petition requesting permission to appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Oct. 1, 2021) (ECF No.50).  On October 12, 2021, the Trustee filed an opposition to this motion. (ECF No. 67). The matter was heard on February 1, 2022, and the Second Circuit denied the request for direct appeal on February 3, 2022. (ECF No. 84). The Trustee filed his merits brief on March 7, 2022.  *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 7, 2022) (ECF No. 27). The Fortis Defendants filed their opposition on April 6,

2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Apr. 6, 2022) (ECF No. 32). The Trustee replied on April 21, 2022.

294. Judge McMahon rendered her decision for the Trustee and vacated the Bankruptcy Court's 2020 decision and remanded the matter back to the Bankruptcy Court. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. May 2, 2022) (ECF No. 35).

295. The Trustee and the Fortis Defendants conferred and agreed upon a briefing schedule that allowed for the Trustee to file his second amended complaint. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Jun. 13, 2022) (ECF No. 203). The Trustee filed his second amended complaint on consent on June 17, 2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Jun. 17, 2022) (ECF No. 205). The Fortis Defendants filed a motion to dismiss on August 19, 2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Aug. 19, 2022) (ECF No. 209). The Trustee filed his opposition on October 18, 2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2022) (ECF No. 214).

## VII. INTERNATIONAL INVESTIGATION AND LITIGATION

296. The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved

in actions and investigations in several jurisdictions, including Austria, Cayman Islands, France, Israel, and the United Kingdom, among others.

297.  The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

**A.   <u>Austria</u>**

298.  The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction. In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

**B.   <u>BVI</u>**

299.  The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme.

**C.   <u>Cayman Islands</u>**

300.  The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

**D.   <u>England</u>**

301.  The Trustee currently has protective claims pending in England against HSBC and related entities. In addition, the Trustee is actively engaged in discovery involving English documents and witnesses.

**E.   <u>France</u>**

302.  The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France. In addition, the Trustee is actively engaged in discovery involving French documents and witnesses.

F.    **Ireland**

303.    The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland. In addition, the Trustee is actively engaged in discovery involving Irish documents and witnesses.

G.    **Israel**

   i.    **Picard v. Magnify Inc.**

304.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (CGM). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint. (ECF No. 143).

305.    Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181), and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. action and the Trustee's action in Israel against certain defendants ("Direct Action"). Following the mediation session, discussions among the parties continued, and the terms of a settlement were reached.

306.    The Trustee negotiated and drafted agreements for the resolution of those actions, along with consent judgments to be entered against the defendants and other ancillary

documents. The Trustee entered into a settlement agreement with the U.S. defendants, which was approved by the Bankruptcy Court on September 28, 2020, and with the defendants in the Direct Action as well. In addition to a settlement payment of $3.5 million USD, which exceeded the two-year fictitious profits alleged against certain defendants, the settlement avoided the full life to date amount of the initial transfers as fictitious profits pursuant to the Bankruptcy Code. The settlement resulted in consent judgments against Defendants Magnify, Premero, Strand, and YHA for the full amount of the unrecovered liability alleged by the Trustee, among other benefits. YHA has no assets and did not contribute to the settlement payment. The consent judgments were entered by the Court on October 22, 2020.

307. After the settlement was approved by the Bankruptcy Court, the Trustee focused on potential claims against several subsequent transferees.

308. The Trustee also continued to prosecute his action commenced in 2015 in Israel to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts ("Indirect Action"). During the Report Period, the Trustee worked with Israeli counsel to analyze strategic issues relating to the case, including the extensive production of documents, affidavits, and other supporting materials in support of his case.

309. Additionally, following the settlement, the Trustee's counsel prepared a subsequent transferee complaint to be filed in the United States against various Israeli academic institutions that received transfers from YHA. In connection with that complaint, Trustee's counsel researched various legal issues, examined the defendants' activities and roles, and confirmed analyses associated with the money received by these defendants. The Trustee filed the subsequent transfer complaint on September 27, 2021 in the U.S. Bankruptcy Court for the Southern District of New York.

310.     On February 10, 2022, the Subsequent Transfer Defendants filed a motion (ECF Nos. 6-27) to dismiss the Trustee's complaint arguing, among other things, that the Court lacks jurisdiction over the Israeli defendant institutions.  In connection with the motion to dismiss, the Trustee's counsel engaged in analysis and research on jurisdictional issues and various Bankruptcy Code arguments raised in the motion, as well as consulted an Israeli expert on Israeli corporate law, who prepared a comprehensive declaration that was submitted along with the Trustee's opposition to the motion to dismiss.  The Trustee filed his opposition to the motion to dismiss on June 15, 2022 (ECF No. 36).  The Subsequent Transfer Defendants filed their reply on September 15, 2022 (ECF No. 45).  Oral argument on the motion to dismiss is scheduled for December 21, 2022.

## H.     Liechtenstein

311.     The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

## I.     Switzerland and Luxembourg

312.     In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals. The Trustee also continues to monitor certain BLMIS-related third-party actions currently pending in these jurisdictions. In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.   RECOVERIES AND CONTINGENCIES

## A.     Recoveries Accomplished During Prior Report Periods

313.     In the Sixth through Twenty-Seventh Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this

Report Period, the Trustee had recovered or reached agreements to recover $14,529,466,675.78 for the benefit of BLMIS customers.

**B.    Recoveries Accomplished During This Report Period**

314.    During the Report Period, the Trustee settled 10 cases. Additionally, the Trustee received recoveries in connection with settlements totaling $6,277,233.36. As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover nearly $14.538 billion.

315.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. During the Report Period, the Trustee had received distributions from seven of these class action settlements totaling over $91,000. The Trustee has not and will not receive any distributions from the eighth class action settlement.

316.    In addition, the Trustee has identified claims that BLMIS may have in 201 other class action suits also arising out of its proprietary and market making activities. The Trustee has filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 73 additional cases. As of September 30, 2022, the Trustee has recovered $2,654,804.95 from settlements relating to 62 of the 128 claims filed directly by the Trustee during the Report Period, of which $0 was recovered during this Report Period.

## IX.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

**A.    The Customer Fund**

317.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's

estate. The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate. Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

318.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

319.    There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

320.    The Trustee previously filed thirteen motions seeking entry of orders approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed Through 9/30/22 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $888.2 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.458 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 | $904.4 million | 4.721% | 5230 | 5271 |

| | | billion | | | | |
|---|---|---|---|---|---|---|
| 4 | 05/05/2014 | $477.504 million | $608.4 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million | $524.3 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[17] | $1.573 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $247.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $327.7 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $719.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $514.2 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/20 | $988.770 million | $370.8 million | 1.975% | 19226 | 19245 |
| 12 | 2/26/21 | $74.325 million | $232.4 million | 1.240% | 20066 | 20209 |
| 13 | 2/25/2022 | $128.570 million | $113.0 million | 0.604% | 20963 | 21036 |
| **TOTAL** | N/A | $14.497 billion | $13.481 billion | 70.452% | N/A | N/A |

## B.   The General Estate

321.   If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

322.   All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

---

[17] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

## X. FEE APPLICATIONS AND RELATED APPEALS

### A. Objections to Prior Fee Applications

323.     Objections were filed to six of the thirty-nine fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.). The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B. Thirty-Eighth Fee Application

324.     On March 3, 2022, the Trustee and his counsel filed the Thirty-Eighth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2021 through and including November 30, 2021 with the Bankruptcy Court. (ECF No. 21212). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 21213 - 21225). A Certificate of No Objection was filed on April 8, 2022, and an Order was entered granting the Applications on April 12, 2022. (ECF No. 21365

### C. Thirty-Ninth Fee Application

325.     On July 1, 2022, the Trustee and his counsel filed the Thirty-Ninth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary

Expenses incurred from December 1, 2021 through and including March 31, 2022 with the

Bankruptcy Court. (ECF No. 21842). Special counsel and international special counsel also filed

applications for Interim Professional Compensation. (ECF Nos. 21843 - 21857). A Certificate of

No Objection was filed on August 1, 2022, and an Order was entered granting the Applications

on August 2, 2022. (ECF No. 22063).

# XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through September 30, 2022, unless otherwise indicated. This Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
   November 1, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

/s/ Irving H. Picard
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

# EXHIBIT A

**SECURITIES INVESTOR PROTECTION CORPORATION**
**Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC**

**Period Ended September 30, 2022**                                   Report No. 166

*CASH RECEIPTS:*

| General Cash Receipts | Net Change for Period | Prior Period Cumulative | Total Received | Customer Fund | General Estate | SIPC | Code |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $20,810,793.87 | | | | | | |
| Transfer from Debtor's Estate - Securities | 0.00 | 289,841,911.70 | 289,841,911.70 | 289,841,911.70 | | | 4011 |
| Transfers from Debtor's Estate - BNY Account | 0.00 | 336,660,934.06 | 336,660,934.06 | 336,660,934.06 | | | 4014 |
| Transfers from Debtor's Estate - Chase Account | 0.00 | 235,156,309.36 | 235,156,309.36 | 235,156,309.36 | | | 4016 |
| Transfers from Debtor's Estate - Other | 0.00 | 4,036,145.08 | 4,036,145.08 | 4,036,145.08 | | | 4018 |
| Interest and Dividends | 0.00 | 1,843,180.59 | 1,843,180.59 | 1,843,180.59 | | | 4040 |
| Closeout Proceeds - Broker Dealers | 0.00 | 37,316,297.78 | 37,316,297.78 | 37,316,297.78 | | | 4030 |
| Closeout Proceeds - NSCC | 0.00 | 21,783,082.40 | 21,783,082.40 | 21,783,082.40 | | | 4031 |
| Closeout Proceeds - DTCC | 0.00 | 18,001,787.96 | 18,001,787.96 | 18,001,787.96 | | | 4032 |
| Sale of Debtor's Assets | 0.00 | 47.26 | 47.26 | 47.26 | | | 4070 |
| - Sports Tickets | 0.00 | 91,037.20 | 91,037.20 | 91,037.20 | | | 4071 |
| - Bank Debt Participations | 0.00 | 7,959,450.94 | 7,959,450.94 | 7,959,450.94 | | | 4072 |
| - DTCC Shares | 0.00 | 204,170.51 | 204,170.51 | 204,170.51 | | | 4073 |
| - Market Making Business | 0.00 | 1,419,801.63 | 1,419,801.63 | 1,419,801.63 | | | 4075 |
| - Abtech | 0.00 | 795,000.00 | 795,000.00 | 795,000.00 | | | 4076 |
| - NSX Shares | 0.00 | 100,734.60 | 100,734.60 | 100,734.60 | | | 4077 |
| - BLM Air Charter | 0.00 | 6,494,631.95 | 6,494,631.95 | 6,494,631.95 | | | 4074 |
| - Auction Sales | 0.00 | 644,579.15 | 644,579.15 | 644,579.15 | | | 4078 |
| - Other | 0.00 | 11,428.57 | 11,428.57 | 11,428.57 | | | 4079 |
| Administrative Subtenant Rent Revenue | 0.00 | 531,078.49 | 531,078.49 | 531,078.49 | | | 4111 |
| *Adjusting Administrative Subtenant Rent Revenue* | 0.00 | (531,078.49) | -531,078.49 | (531,078.49) | | | 4111a |
| Refunds - Deposits | 0.00 | 9,841.45 | 9,841.45 | 9,841.45 | | | 4091 |
| - Dues/Subscriptions | 0.00 | 177,247.15 | 177,247.15 | 177,247.15 | | | 4092 |
| - Car Registrations | 0.00 | 157.00 | 157.00 | 157.00 | | | 4093 |
| - Vendors | 0.00 | 62,451.27 | 62,451.27 | 62,451.27 | | | 4094 |
| - Transit Cards | 0.00 | 833.61 | 833.61 | 833.61 | | | 4095 |
| - Insurance/Workers Comp | 0.00 | 442,311.56 | 442,311.56 | 442,311.56 | | | 4096 |
| - Ref. - Political Contributions | 0.00 | 144,500.00 | 144,500.00 | 144,500.00 | | | 4097 |
| - Refunds Other | 0.00 | 50.84 | 50.84 | 50.84 | | | 4099 |
| Recoveries - Customer Avoidances | 0.00 | 112,392,379.79 | 112,392,379.79 | 112,392,379.79 | | | 4020 |
| - Pre-Litigation Settlements | 0.00 | 1,903,783,597.98 | 1,903,783,597.98 | 1,903,783,597.98 | | | 4021 |
| - Litigation Settlements | 2,255,072.76 | 11,425,590,978.38 | 11,427,846,051.14 | 11,427,846,051.14 | | | 4022 |
| - Donation Settlements | 0.00 | 875,000.00 | 875,000.00 | 875,000.00 | | | 4023 |
| - Vendor Preferences | 0.00 | 809,850.39 | 809,850.39 | 809,850.39 | | | 4024 |
| - MSIL Liquidation | 0.00 | 1,034,311.82 | 1,034,311.82 | 1,034,311.82 | | | 4025 |
| - Employees | 0.00 | 10,674.74 | 10,674.74 | 10,674.74 | | | 4102 |
| - Taxing Authorities | 0.00 | 12,777.56 | 12,777.56 | 12,777.56 | | | 4103 |
| - Class Actions | 0.00 | 2,746,747.64 | 2,746,747.64 | 2,746,747.64 | | | 4104 |
| - NASDAQ | 0.00 | 308,948.49 | 308,948.49 | 308,948.49 | | | 4105 |
| - NYSE | 0.00 | 183,683.79 | 183,683.79 | 183,683.79 | | | 4106 |
| - Transaction Fees | 0.00 | 96,816.23 | 96,816.23 | 96,816.23 | | | 4107 |
| - Other | 0.00 | 796,298.73 | 796,298.73 | 796,298.73 | | | 4109 |
| Miscellaneous | 0.00 | 0.36 | 0.36 | 0.36 | | | 4110 |
| Earnings on Trustee's Investments | 2,841.67 | 113,885,489.51 | 113,888,331.18 | 113,888,331.18 | | | 4120 |
| Interest on Trustee's Savings Accounts | 515,452.99 | 9,407,269.00 | 9,922,721.99 | 9,922,721.99 | | | 4140 |
| | $2,773,367.42 | $14,535,132,748.03 | $14,537,906,115.45 | $14,537,906,115.45 | | | |
| | | | | | | | |
| Administration - Advances | 0.00 | 2,228,337,759.34 | 2,228,337,759.34 | | | 2,228,337,759.34 | 2901 |
| Securities - Paid Bank Loans | 0.00 | 0.00 | 0.00 | | | 0.00 | 2921 |
| - Cash in Lieu | 0.00 | 849,473,412.47 | 849,473,412.47 | | | 849,473,412.47 | 2922 |
| | | | | | | | |
| Sub-total SIPC Advances | $0.00 | $3,077,811,171.81 | $3,077,811,171.81 | | | $3,077,811,171.81 | |
| | | | | | | | |
| Funds Transferred from Investment Accounts  *See Note (2) on Page 3 | 0.00 | 12,557,304,815.23 | 12,557,304,815.23 | | | | 1901 |
| | | | | | | | |
| Total Cash Receipts | $2,773,367.42 | $30,170,248,735.07 | $30,173,022,102.49 | $14,537,906,115.45 | $0.00 | $3,077,811,171.81 | |

**Period Ended September 30, 2022**                                                        Report No. 166

*CASH DISBURSEMENTS:*

*Administrative Disbursements*

| General Administrative Disbursements | Net Change for Period | Prior Period Cumulative | Cumulative Total Paid | Code |
|---|---|---|---|---|
| Computer - Rental | 0.00 | 11,121.59 | 11,121.59 | 5011 |
| - Software Support | 0.00 | 55,159.20 | 55,159.20 | 5012 |
| - Equipment Leases | 0.00 | 204,159.01 | 204,159.01 | 5013 |
| Employee Related - Salaries-Net | 0.00 | 4,361,844.80 | 4,361,844.80 | 5020 |
| - FICA-Employer | 0.00 | 318,550.60 | 318,550.60 | 5021 |
| - Fed. & St. Unemploy. | 0.00 | 4,296.08 | 4,296.08 | 5023 |
| - Temporary Help | 0.00 | 29,612.50 | 29,612.50 | 5024 |
| - Employee Medical Plan | 0.00 | 830,103.99 | 830,103.99 | 5025 |
| - Employee LTD | 0.00 | 6,887.03 | 6,887.03 | 5026 |
| - Employee Expense Reimbursement | 0.00 | 1,125.87 | 1,125.87 | 5027 |
| - Employee Life/AD&D | 0.00 | 9,006.83 | 9,006.83 | 5028 |
| - Other | 0.00 | 1,622.90 | 1,622.90 | 5029 |
| Insurance - Trustee Bond | 0.00 | 7,800.00 | 7,800.00 | 5030 |
| Insurance - Surety & Fidelity Bonds | 0.00 | 37,400.00 | 37,400.00 | 5031 |
| Insurance Workers Comp | 0.00 | 12,578.00 | 12,578.00 | 5032 |
| - Other | 0.00 | 69,884.04 | 69,884.04 | 5039 |
| Fees - Payroll Processing | 0.00 | 8,195.96 | 8,195.96 | 5045 |
| Fees - Escrow | 0.00 | 1,221,698.85 | 1,221,698.85 | 5046 |
| - Other | 0.00 | 24,168.64 | 24,168.64 | 5047 |
| Expenses for Asset Sales | 0.00 | 48,429.09 | 48,429.09 | 5048 |
| Rent - Office | 0.00 | 3,987,347.17 | 3,987,347.17 | 5050 |
| - *Adjustment for Administrative Subtenant Rent Revenue* | 0.00 | (531,078.49) | (531,078.49) | 5050a |
| - Equipment | 0.00 | 1,695.89 | 1,695.89 | 5051 |
| - Warehouse | 0.00 | 2,690,128.27 | 2,690,128.27 | 5052 |
| - Bulova | 0.00 | 310,130.75 | 310,130.75 | 5053 |
| - Other | 0.00 | 69,725.61 | 69,725.61 | 5059 |
| Costs - Vacating 885 Third Avenue | 0.00 | 20,179.46 | 20,179.46 | 5111 |
| Telephone and Telegraph | 0.00 | 360,456.68 | 360,456.68 | 5060 |
| Communication Fees | 0.00 | 670,057.02 | 670,057.02 | 5061 |
| Utilities - Electricity | 332.65 | 60,167.83 | 60,500.48 | 5070 |
| Office Supplies & Expense - Maint. & Repairs | 0.00 | 79,338.86 | 79,338.86 | 5080 |
| - Moving & Storage | 3,452.04 | 555,353.30 | 558,805.34 | 5081 |
| - Postage/Handling/Preparation | 0.00 | 40,961.12 | 40,961.12 | 5082 |
| - Reproduction | 0.00 | 183,889.65 | 183,889.65 | 5083 |
| - Locksmith | 0.00 | 5,811.39 | 5,811.39 | 5084 |
| - Security | 0.00 | 249,897.70 | 249,897.70 | 5085 |
| - Supplies | 0.00 | 3,865.31 | 3,865.31 | 5086 |
| - Temporary Help | 0.00 | 4,588,642.69 | 4,588,642.69 | 5087 |
| - Process Server - Complaint | 0.00 | 244,026.52 | 244,026.52 | 5088 |
| - Other | 0.00 | 36,250.63 | 36,250.63 | 5089 |
| Taxes | 0.00 | 555.51 | 555.51 | 5090 |
| NYC Commercial Rent Tax | 0.00 | 154,269.47 | 154,269.47 | 5091 |
| Claims Related Costs - Mailing Costs | 0.00 | 23,053.28 | 23,053.28 | 5101 |
| - Publication | 0.00 | 163,961.13 | 163,961.13 | 5102 |
| - Supplies | 0.00 | 16,244.58 | 16,244.58 | 5103 |
| - Printing | 0.00 | 2,207.42 | 2,207.42 | 5104 |
| Court Related Noticing - Postage/Handling/Preparation  *See Note (1) Below | 0.00 | 0.00 | 0.00 | 5106 |
| - Reproduction | 0.00 | 0.00 | 0.00 | 5107 |
| - Supplies | 0.00 | 0.00 | 0.00 | 5108 |
| Scanning - Investigation | 0.00 | 5,189,846.75 | 5,189,846.75 | 5110 |
| Foreign Research | 0.00 | 38,975.00 | 38,975.00 | 5112 |
| Miscellaneous | 0.00 | 666.91 | 666.91 | 5115 |
| Hosting Expense | 404,785.05 | 68,056,221.90 | 68,461,006.95 | 5244 |
| **Sub-total General Admin. Disbursements** | **$408,569.74** | **$94,536,494.29** | **$94,945,064.03** | |

*Professional Fees and Expenses*

| | Net Change for Period | Prior Period Cumulative | Cumulative Total Paid | Code |
|---|---|---|---|---|
| Trustee Fees | 0.00 | 4,377,662.10 | 4,377,662.10 | 5200 |
| Trustee Expenses | 0.00 | 2,549.25 | 2,549.25 | 5201 |
| Trustee Counsel Fees (Baker) | 5,806,623.22 | 1,420,582,838.77 | 1,426,389,461.99 | 5210 |
| Trustee Counsel Expenses (Baker) | 108,431.65 | 21,076,865.51 | 21,185,297.16 | 5211 |
| Trustee Counsel Fees (Windels) | 1,861,547.20 | 80,692,947.03 | 82,554,494.23 | 5212 |
| Trustee Counsel Expenses (Windels) | 16,630.03 | 758,010.37 | 774,640.40 | 5213 |
| Special Counsel Fees | 0.00 | 104,497,861.78 | 104,497,861.78 | 5220 |
| Special Counsel Expenses | 0.00 | 15,212,066.44 | 15,212,066.44 | 5221 |
| Accountant Fees | 0.00 | 0.00 | 0.00 | 5230 |
| Accountant Expenses | 0.00 | 0.00 | 0.00 | 5231 |
| Consultant Fees | 303,069.04 | 478,825,147.54 | 479,128,216.58 | 5240 |
| Consultant Expenses  *See Note (1)  Below | 76,713.44 | 20,946,489.71 | 21,023,203.15 | 5241 |
| Investment Banker Fees | 0.00 | 1,050,000.00 | 1,050,000.00 | 5242 |
| Sales Tax | 28,390.00 | 1,821,110.94 | 1,849,500.94 | 5243 |
| Mediator Fees | 25,000.00 | 5,622,755.93 | 5,647,755.93 | 5245 |
| Mediator Expenses | 0.00 | 15,067.90 | 15,067.90 | 5246 |
| Receiver Counsel Fees | 0.00 | 300,000.00 | 300,000.00 | 5260 |
| Receiver Counsel Expenses | 0.00 | 6,449.08 | 6,449.08 | 5261 |
| Receiver's Consultants Fees | 0.00 | 316,000.00 | 316,000.00 | 5262 |
| Receiver's Consultants Expenses | 0.00 | 15,000.00 | 15,000.00 | 5263 |
| **Sub-total Professional Fees and Expenses** | **$8,226,404.58** | **$2,156,118,822.35** | **$2,164,345,226.93** | |
| **Total Administrative Disbursements** | **$8,634,974.32** | **$2,250,655,316.64** | **$2,259,290,290.96** | |

Page 2

* Note (1) See Supporting Schedule on Page 6

**Period Ended September 30, 2022**                                                                                                                           Report No. 166

| _CASH DISBURSEMENTS:_ | Net Change | Prior Period | Total | Cumulative Totals | | | |
|---|---|---|---|---|---|---|---|
| **Claim Related Disbursements** | for Period | Cumulative | Paid | **Customer Fund** | **General Estate** | **SIPC** | Code |
| Customer - Paid Bank Loan | | $ | | | $ | | 6021 |
|   - Securities - Cash in Lieu | 0.00 | 14,330,315,880.93 | 14,330,315,880.93 | 13,480,842,468.46 | | 849,473,412.47 | 6022 |
|   - Securities - Purchases | | | | | | | 6023 |
|   - Indemnification | | | | | | | 6031 |
|   - Cash Balance | | | | | | | 6041 |
| Customer - | | | | | | | 6050 |
| Customer - | | | | | | | 6060 |
| Customer - Trustee Journal Entry | | | | | | | |
|      per Allocation | | | | | | | 6000 |
| Other - Contractual Commitments | | | | | | | 6111 |
|   - Pd. Bank Loan | | | | | | | 6121 |
|   - Indemnification | | | | | | | 6131 |
| Other - | | | | | | | 6140 |
| Other - | | | | | | | 6150 |
| Other - | | | | | | | 6160 |
| Other - Trustee Journal Entry | | | | | | | |
|      per Allocation | | | | | | | 6100 |
| General Creditor | | | | | | | 6200 |
| | | | | | | | |
| **Sub-total Claim Disbursements** | **$0.00** | **$14,330,315,880.93** | **$14,330,315,880.93** | **$13,480,842,468.46** | **$0.00** | **$849,473,412.47** | |
| | | | | | | | |
| **Other Disbursements (except investments)** | | | | | | | |
| SIPC - Refunds - Recoupment | | | | | | | 6301 |
|   - Indemnification | | | | | | | 6310 |
|   - Contr. Commitments | | | | | | | 6311 |
|   - Paid Bank Loan | | | | | | | 6321 |
|   - Subrogation | 0.00 | 252,646,671.98 | 252,646,671.98 | 252,646,671.98 | | | 6322 |
| Other - | | | | | | | 6400 |
| Other - | | | | | | | 6401 |
| Other - | | | | | | | 6402 |
| Other - | | | | | | | 6403 |
| Other - | | | | | | | 6404 |
| | | | | | | | |
| **Sub-total Other Disbursements** | **$0.00** | **$252,646,671.98** | **$252,646,671.98** | **$252,646,671.98** | **$0.00** | **$0.00** | |
| | | | | | | | |
| **Investments by Trustee - Purchases *See Note (2) Below** | **$518,294.66** | **$13,315,820,071.65** | **$13,316,338,366.31** | | | | 1900 |
| | | | | | | | |
| **Sub-total Administrative Disb. - page 2** | **$8,634,974.32** | **$2,250,655,316.64** | **$2,259,290,290.96** | **$0.00** | **$0.00** | **$2,259,290,290.96** | |
| | | | | | | | |
| **Total Disbursements** | **$9,153,268.98** | **$30,149,437,941.20** | **$30,158,591,210.18** | **$13,733,489,140.44** | **$0.00** | **$3,108,763,703.43** | |
| | | | | | | | |
|     **Total Receipts less Disbursements** | **($6,379,901.56)** | **$20,810,793.87** | **$14,430,892.31** | **$804,416,975.01** | **$0.00** | **($30,952,531.62)** | |
| | | | | | | | |
|     **Ending Cash Balance *See Note (3) Below** | **$14,430,892.31** | | | | | | |

* Note (2) Two preferred custody accounts and an insured money market account have been established at Citibank for investment purposes and additional investment accounts are maintained at JP Morgan Chase and Goldman Sachs. The Goldman Sachs Account was established in December 2016 in connection with the Chais Settlement.  A Broker's account, which was previously established at Morgan Joseph, was closed in January 2012. Since January 20, 2009, $13,316,338,366.31 of recovered funds have been transferred into these investment accounts and $12,557,304,815.23 of these funds have subsequently been used for interim distributions to customers with allowed claims and for operations. (See Page 5 for more details).

* Note (3) The ending cash balance includes a $12,973,022.12 balance in the Citibank Business Checking Account and $1,457,870.19 in the Citibank Distribution Account.

Period Ended September 30, 2022                                      Report No. 166

## SUMMARY INFORMATION ON STATUS OF LIQUIDATION

|  | Customer Claimants | Broker/Dealer Claimants | General Estate Claimants |
|---|---|---|---|
| Claims received | 16,521 | 49 | 95 |
| Claims satisfied by distribution of cash and/or securities: | | | |
| a. As part of the transfer in bulk | | | |
| b. On an account by account basis-Fully Satisfied | 1,741 | | |
| c. On an account by account basis-Partially Satisfied | 913 | | |
|  | 2,654 | - | - |
| | | | |
| Claims Determined - no claims | 12 | | |
| Claims Deemed Determined - pending litigation | 11 | | |
| Claims Determined - withdrawn | 417 | | |
| Claims Determined but not yet satisfied | 1 | | |
| Claims under review | - | 49 | 95 |
| Claims Denied: | | | |
| a. Other Denials for which no objections were filed | 10,338 | | |
| b. Denials for which objections were filed: | | | |
| - Trustee's Determinations Affirmed | 3,063 | | |
| - Hearing not yet set | 25 | | |
| - Set for Hearing | - | | |
|  | 13,867 | 49 | 95 |

| Filing Date Value | |
|---|---|
| Customer name securities distributed | |
| Customer fund securities distributed | |
|  | $ |

_Irving H. Picard / by Denis O. Evans_
(Trustee's Signature)

10/18/2022
(Date)

_William Kingsford_
(Accountant's Signature)

10/18/2022
(Date)

Page 4

<u>Period Ended September 30, 2022</u>                                                                     **Report No. 166**

**IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BLMIS, LLC**
**Investment Accounts**

| | Citibank Preferred Custody Account | | | | Citibank IMMA Account | |
|---|---|---|---|---|---|---|
| | Cash Assets/Mutual Funds (5) | U.S. Treasury Bills (4) | Accrued Interest (4) | Account Balance | Account Balance (5) | Total Citibank |
| **Balance August 31, 2022** | 987,733 | 159,329,109 | 1,493 | 160,318,335 | 198,579,971 | 358,898,306 |
| Maturing of U.S. Treasury Bills | | | | - | | - |
| Purchase of U.S. Treasury Bills | | | | - | | - |
| Sales of Equity Securities | | | | - | | |
| Realized Gains (Losses) | | | | - | | |
| Unrealized Gain or (Loss) | | 283,317 | | 283,317 | | 283,317 |
| Interest and Dividends Earned | | | | | | |
| Interest | 1,493 | | 325 | 1,818 | 96,592 | 98,410 |
| Dividends | | | | - | | |
| Transfer of Funds to the Citibank Operating Account | | | | | | |
| **Balance September 30, 2022** | 989,226 | 159,612,426 | 1,818 | 160,603,470 | 198,676,563 | 359,280,033 |

| | JP Morgan Chase | | | | Goldman Sachs | | |
|---|---|---|---|---|---|---|---|
| | Cash/Escrow Fund (5) | Savings/Commercial (5) | U.S. Treasury Bills (4) | Account Balance | Funds (5) | Investments (5) | Account Balance |
| **Balance August 31, 2022** | 22,234 | 296,320,308 | 100,270,098 | 396,612,640 | 558,130 | 2,678,337 | 3,236,467 |
| Maturing of U.S. Treasury Bills | | | | - | | | |
| Purchase of U.S. Treasury Bills | | | | - | | | |
| Annual Bank Fee | | | | | | | - |
| Distributions Received | | | | | 142,673 | (142,673) | - |
| Realized Gain on Sale of Securities | | | | | | | - |
| Unrealized Gain or (Loss) | | | 139,329 | 139,329 | 22 | (3,374) | (3,352) |
| Interest and Dividends Earned | 17 | 418,861 | | 418,878 | 1,331 | | 1,331 |
| Transfer between Funds | | | | - | | | - |
| **Balance September 30, 2022** | 22,251 | 296,739,169 | 100,409,427 | 397,170,847 | 702,156 | 2,532,290 | 3,234,446 |

Page 5

* Note (4) The summation of U.S. Treasury Bills is $260,023,671.

* Note (5) The summation of these short-term investments, money market funds, savings accounts, mutual fund accounts and other investments, including alternative investments is $499,661,655.

**IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BLMIS, LLC**
**Consultant Expenses for Court Related Noticing and Interim Distributions**

| | Net Change for Period | Prior Period Cumulative | Cumulative Total Paid |
|---|---|---|---|
| Postage / Handling / Preparation | 0.00 | 545,036.89 | 545,036.89 |
| Printing | 0.00 | 44,945.40 | 44,945.40 |
| Reproduction Costs | 0.00 | 762,418.30 | 762,418.30 |
| Supplies | 0.00 | 101,433.61 | 101,433.61 |
| **Total  *See Note Below** | **$0.00** | **$1,453,834.20** | **$1,453,834.20** |

**Page 6**

*Note: All of the expenses above were incurred by consultants in connection with court related noticing procedures and Interim Distributions, which are included in the Consultant Expenses line (Account #5241) on Page 2 of the SIPC Form 17.

# EXHIBIT B

## SIPC v. BLMIS

08-01789 (CGM)

### ACTIVE GOOD FAITH CASES[1]

| APN | DEFENDANT(S) | CASE STATUS |
|---|---|---|
| 10-04352 | RAR Entrepreneurial Fund LTD, et al. | Judgment entered in S.D.N.Y. on September 23, 2022 in favor of Trustee[2] |
| 10-04362 | Sage Associates, et al. | Appeal and Cross-Appeal pending in Second Circuit[3] |
| 10-04400 | Sage Realty, et al. | Appeal and Cross-Appeal pending in Second Circuit[3] |
| 10-04468 | Ken-Wen Family Limited Partnership, et al. | Appeal pending in S.D.N.Y.[2] |
| 10-04539 | The Gerald and Barbara Keller Family Trust, et al. | Amended Opinion and Order affirming U.S.B.C. decision entered October 6, 2022 |
| 10-04631 | 151797 Canada Inc., Judith Pencer, Samuel Pencer, et al. | |
| 10-04667 | David Gross, et al. | |
| 10-04669 | Zieses Investment Partnership, et al. | Summary Judgment Motion pending in S.D.N.Y.[2] |
| 10-04709 | Andrew M. Goodman | Motion to Withdraw the Reference pending in S.D.N.Y.[2] |
| 10-04986 | Sharon Knee | Summary Judgment motion pending before this Court; parties have reached settlement in principle |
| 10-05079 | Estate of James M. Goodman, et al. | Motion to Withdraw the Reference pending in S.D.N.Y.[2] |

---

[1] Four cases were settled and the parties entered into settlement agreements during the Report Period. *See Picard v. Frederic Z. Konigsberg, et al.*, Adv. Pro. No. 10-04394; *Picard v. Judd Robbins,* Adv. Pro. No. 10-04503; *Picard v. James B. Pinto Revocable Trust U/A dtd 12/1/03, et al.* Adv. Pro. No. 10-04538 and *Picard v. Estate of Bernard J. Kessel, et al.* Adv. Pro. No. 10-05144; The Bankruptcy Court has closed all of these matters.

[2] *See Picard v. RAR Entrepreneurial Fund LTD, et al.*, No. 20-cv-01029 (JMF); *Picard v. Kenneth W. Brown,* No. 22-cv-03882 (VEC) (S.D.N.Y.); *Picard v. Zieses Investment Partnership, et al.,* No. 20-cv-02872 (VSB) (S.D.N.Y.); *Picard v. Goodman,* No. 20-cv-04767 (MKV) (S.D.N.Y.); *Picard v. Estate of James M. Goodman,* No. 21-cv-01763 (ER) (S.D.N.Y.); *Picard v. Fairfield Pagma Associates, et al.,* No. 22-cv-03914 (VEC) (S.D.N.Y.)

[3] *See Malcolm H. Sage v. Picard,* 22-1107 and 22-1210 (2d Cir.); *Malcolm H. Sage v. Picard,* 22-1110 and 22-1212 (2d Cir.).

| APN | DEFENDANT(S) | CASE STATUS |
|---|---|---|
| 10-05083 | The S. James Coppersmith Charitable Remainder Unitrust, et al. | |
| 10-05128 | JABA Associates LP, et al. | Opinion affirming judgment of the S.D.N.Y. entered September 20, 2022 Second Circuit |
| 10-05169 | Fairfield Pagma Associates,et al. | Appeal pending in S.D.N.Y.[2] |
| 10-05380 | Srione, LLC, an Idaho limited liability company, et al. | |
| 10-05394 | Glantz | Defendant's Chapter 7 Bankruptcy pending in the U.S. Bankruptcy Court, Northern District of California, Case No. 20-30749 (DM) |
| TOTAL: 16 | | |

# EXHIBIT C

### SIPC v. BLMIS
Case No. 08-01789 (CGM)

### ACTIVE BAD FAITH/FEEDER FUND CASES

| APN | DEFENDANT(S) | TYPE |
|-----|--------------|------|
| 10-05421 | Avellino, et al. | Bad Faith |
| 09-01239 | Fairfield Investment Fund Ltd., et al. | Feeder Fund |
| 09-01364 | HSBC Bank PLC, et al. | Feeder Fund |
| 10-04285 | UBS AG, et al. | Feeder Fund |
| 10-04330 | Square One Fund Ltd, et al. | Feeder Fund |
| 10-04457 | Equity Trading Portfolio Ltd., et al. | Feeder Fund |
| 10-04471 | Citrus Investment Holdings Ltd. | Feeder Fund |
| 10-05120 | Oreades SICV, et al. | Feeder Fund |
| 10-05286 | Legacy Capital Ltd., et al. | Feeder Fund |
| 10-05311 | UBS AG, et al. | Feeder Fund |
| **Total: 10** | | |

# EXHIBIT D

## SIPC v. BLMIS
Case No. 08-01789 (CGM)

## ACTIVE SUBSEQUENT TRANSFEREE CASES

| APN | DEFENDANT(S) |
|---|---|
| 10-05345 | Citibank, N.A., et al. |
| 10-05346 | Merrill Lynch International |
| 10-05348 | Nomura International PLC |
| 10-05351 | Banco Bilbao Vizcaya Argentaria, S.A. |
| 10-05353 | Natixis, et al. |
| 10-05354 | ABN AMRO Bank, N.V. |
| 10-05355 | ABN AMRO Bank (Ireland) Ltd, et al. |
| 11-02149 | Banque Syz & Co., SA |
| 11-02493 | Abu Dhabi Investment Authority |
| 11-02538 | Quilvest Finance Ltd. |
| 11-02539 | Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Lion Global Investors Limited |
| 11-02541 | First Gulf Bank |
| 11-02542 | Parson Finance Panama S.A. |
| 11-02551 | Delta National Bank and Trust Company |
| 11-02553 | Unifortune Asset Management SGR SpA, et al. |
| 11-02554 | National Bank of Kuwait S.A.K. |
| 11-02568 | Cathay Life Insurance Co. LTD. |
| 11-02569 | Barclays Bank (Suisse) S.A. et al. |
| 11-02570 | Banca Carige S.P.A. |
| 11-02572 | Korea Exchange Bank |
| 11-02573 | The Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Atlantic Security Bank |
| 11-02731 | Trincaster Corporation |
| 11-02732 | Bureau of Labor Insurance |
| 11-02733 | Naidot & Co. |
| 11-02758 | Caceis Bank Luxembourg, et al. |
| 11-02759 | Nomura International PLC |
| 11-02761 | KBC Investments Limited |
| 11-02763 | Inteligo Bank LTD. |
| 11-02784 | Somers Dublin Limited et al. |
| 11-02796 | BNP Paribas Arbitrage SNC |
| 11-02910 | Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Bank Julius Baer & Co. Ltd. |
| 11-02923 | Falcon Private Bank Ltd. |
| 11-02925 | Credit Suisse AG et al. |
| 11-02929 | LGT Bank in Liechtenstein Ltd. |

| APN | DEFENDANT(S) |
|---|---|
| 12-01002 | The Public Institution For Social Security |
| 12-01004 | Fullerton Capital PTE Ltd. |
| 12-01005 | SICO Limited |
| 12-01019 | Banco Itau Europa Luxembourg S.A., et al. |
| 12-01021 | Grosvenor Investment Management Limited |
| 12-01022 | Credit Agricole (Suisse) SA |
| 12-01023 | Arden Asset Management, et al. |
| 12-01046 | SNS Bank N.V. et al. |
| 12-01047 | Koch Industries, Inc., |
| 12-01048 | Banco General S.A. et al. |
| 12-01194 | Kookmin Bank |
| 12-01195 | Six Sis AG |
| 12-01202 | Bank Vontobel AG et. al. |
| 12-01205 | Multi Strategy Fund Ltd., et al. |
| 12-01207 | Lloyds TSB Bank PLC |
| 12-01209 | BSI AG |
| 12-01210 | Schroder & Co. |
| 12-01211 | Union Securities Investment Trust Co., Ltd., et al. |
| 12-01216 | Bank Hapoalim B.M. |
| 12-01273 | Mistral (SPC) |
| 12-01278 | Zephyros Limited |
| 12-01512 | ZCM Asset Holding Co (Bermuda) LLC |
| 12-01565 | Standard Chartered Financial Services (Luxembourg) SA, et al. |
| 12-01566 | UKFP (Asia) Nominees |
| 12-01576 | BNP Paribas S.A. et al |
| 12-01577 | UBS Deutschland AG, et al. |
| 12-01669 | Barfield Nominees Limited et al |
| 12-01670 | Credit Agricole Corporate and Investment Bank et al. |
| 12-01676 | Clariden Leu AG |
| 12-01677 | Société General Private Banking (Suisse) SA, et al. |
| 12-01680 | Intesa Sanpaolo SpA, et al. |
| 12-01690 | EFG Bank S.A., et al. |
| 12-01693 | Banque Lombard Odier & Cie |
| 12-01694 | Banque Cantonale Vaudoise |
| 12-01695 | Bordier & Cie |
| 12-01697 | ABN AMRO Fund Services (Isle of Man) Nominees Limited, et al. |
| 12-01698 | Banque International a Luxembourg SA, et al. |
| 12-01699 | Royal Bank of Canada, et al. |
| 12-01701 | RD Trust, et al. (Piedrahita) |
| 20-01316 | Montpellier, et al. |
| 21-01190 | The Hebrew University of Jerusalem, et al. |
| 22-01087 | BNP Paribas – Dublin Branch |
| **Total: 79** | |