**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01195 (CGM) |
| Plaintiff, | |
| v. | |
| SIX SIS AG, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

NATURE OF THE CASE .......................................................................................... 3

ARGUMENT .............................................................................................................. 4

    I.   The Court Lacks Personal Jurisdiction Over SIX SIS ........................................ 4

       A.  Personal Jurisdiction Legal Framework ........................................................ 4

       B.  This Court's Prior Opinions on Jurisdiction Do Not Control the Outcome in this Case . 5

       C.  The Amended Complaint Fails to Allege Sufficient Minimum Contacts with New York or the United States .................................................................................................. 8

       D.  The Exercise of Jurisdiction over SIX SIS is Not Reasonable. ..................................... 12

    II.  The Trustee is Time Barred from Recovering the Newly Pleaded Transfers in the Second Amended Complaint ................................................................................................. 14

    III.   The Trustee Fails to Allege that SIX SIS was a Transferee of Any Subsequent Transfer 19

       A.  The Trustee Fails to Plausibly Allege that SIX SIS Had Dominion or Control over the Redemptions ....................................................................................................... 19

       B.  The Court Should Direct the Parties to Address Dominion and Control Through a Summary Proceeding ............................................................................................ 22

    IV.   The Second Amended Complaint Establishes that SIX SIS is Entitled to the Good-Faith Defense ................................................................................................................... 23

       A.  SIX SIS Received the Redemptions for Value .......................................................... 24

       B.  It is Clear From the Allegations in the Second Amended Complaint That SIX SIS Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where Others Better Situated To Do So Did Not. ................................................................................... 25

CONCLUSION .......................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
   480 U.S. 102 (1987) ........................................................................................... 10, 13

*Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Grp., Inc.)*,
   2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ..................................................... 21

*Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007) ............................................................................. 21, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 22

*BLD Prods., LLC v. Viacom, Inc.*,
   2011 WL 1327340 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom, BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) ....................................................................................... 27

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ........................................................................... 20, 21, 22

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*,
   447 B.R. 170 (Bankr. S.D.N.Y. 2011) ............................................................. 15

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ......................................................................................... 5

*Chirag v. MT Marida Marguerite Schiffahrts*,
   604 F. App'x 16 (2d Cir. 2015) ....................................................................... 5, 7

*Christy v. Alexander & Alexander of NY, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
   130 F.3d 52 (2d Cir.1997) ............................................................................... 20, 21

*In re CIL Lmtd.*,
    582 B.R. 46 (S.D.N.Y. 2016)..................................................................13, 14

*Daimler AG v. Bauman*,
    517 U.S. 117 (2014)...................................................................................4

*Fairfield Sentry Ltd. v. Migani*,
    UKPC 9 [2014] ....................................................................................12, 25

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
    No. 10-13164, Adv. No. 10-03496, 2020 Bankr. LEXIS 2324 (Bankr.
    S.D.N.Y. Aug. 6, 2018) ........................................................................12, 15

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    31 A.D.2d 355 (1969), *aff'd*, 26 N.Y.2d 280 (1970) .............................10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...............................................................................5

*Gilmore v. Rivera*,
    2014 WL 1998227 (S.D.N.Y. May 14, 2014) .........................................27

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...................................................................................4

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-CV-3590 (LTS), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ....................11

*Hau Yin To v. HSBC Holdings, PLC*,
    No. 15CV3590, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017)..............10

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016).......................................10

*In re Hoosick Falls PFOA Cases*,
    431 F.Supp.3d 69 (N.D.N.Y. 2020).........................................................8

*Jones v. Bock*,
    549 U.S. 199 (2007)..................................................................................27

*LaMonica v. CEVA Grp. (In re CIL Ltd.)*,
    582 B.R. 46 (S.D.N.Y. 2016)..................................................................13, 14

*Leema Enters., Inc. v. Willi*,
    575 F. Supp. 1533 (S.D.N.Y. 1983).........................................................11

*In re Leff*,
631 B.R. 106 (E.D.N.Y. 2021) ........................................................................................26

*Lehman Bros. Special Fin., Inc. v. Bank of Am. (In re Lehman Bros. Holdings Inc.)*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) .............................................................................5

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
No. 17-CV-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017).................................11

*Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*,
33 F.3d 42 (10th Cir. 1994) ................................................................. *passim*

*Mayle v. Felix*,
545 U.S. 644 (2005)..........................................................................................15

*Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*,
426 B.R. 96 (Bankr. Del. 2010) ...................................................................19

*Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*,
66 B.R. 977 (Bankr. S.D.N.Y. 1986)......................................................16, 17, 18

*Picard v. ABN Amro Bank N.A. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*,
No. AP 08-01789, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020)...........................24

*Picard v. Banque SYZ & Co., SA*,
No. AP 11-02149, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ................. *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018).................................................... *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................................15

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021) .................................................................25

*Picard v. Cohen (In re BLMIS)*,
2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016)..........................................24

*Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*,
634 B.R. 39 (Bankr. S.D.N.Y. 2021) .............................................................2, 21

*Picard v. Multi-Strategy Fund Ltd.*,
No. AP 12-01205, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ................. *passim*

iv

*Rupp v. Markgraf*,
    95 F.3d 936 (10th Cir. 1996) ................................................................21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*,
    No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021).......................................24

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ...........................................................19, 20

*Sledziejowski v. MyPlace Dev. SP ZO.O. (In re Sledziejowski)*,
    2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ............................................11

*Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...........................................................19

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)...........................................................11

*In re Uplift RX, LLC*,
    625 B.R. 364 (S.D. Tex. 2021) ...........................................................19

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................5, 10

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)...........................................................9

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (S.D.N.Y. 2016)...........................................................8, 23

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) (Gerber, J.) 818 F.3d 98 (2d Cir. 2016).......................19

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................5, 13

**Statutes**

11 U.S.C. § 550................................................................................................ *passim*

Swiss Data Protection Act ...............................................................................14

Swiss Financial Market Infrastructures Act.................................................................14

**Other Authorities**

Collier on Bankruptcy ¶ 550.02 (16th ed. 2021) .......................................................21

Fed. R. Civ. P. 12(b) ............................................................................................................. *passim*

Fed. R. Civ. P. 15(c) ...........................................................................................................16

Fed. R. Bankr. P. 7012(b) ....................................................................................................1

Defendant, SIX SIS AG ("SIX SIS"), pursuant to the Federal Rules of Civil Procedure

12(b)(2) and 12(b)(6), made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure, hereby submits this Memorandum of Law and declarations of Erin Valentine, dated

December 13, 2022, ECF No. 131, and Stephan Hänseler, dated July 8, 2022, ECF No. 133, in

support of SIX SIS's Motion to Dismiss the Second Amended Complaint (the "Second Amended

Complaint", "SAC", ECF No. 126) filed by Irving H. Picard (the "Trustee"), trustee for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

SIX SIS, a Swiss corporation, is the national Central Securities Depository ("CSD") of

the Swiss financial market.  It provides transaction settlement and custody of securities for

independently regulated, financial institution clients.  In other words, SIX SIS provides security

settlement and acts as a custodian for banks and financial institutions; it does not trade securities

for its own account.

At the instruction of its financial institution clients, SIX SIS invested their funds in two

British Virgin Islands investment funds – Fairfield Sentry Limited ("Sentry") and Fairfield

Sigma Limited ("Sigma", together with Sentry, the "Fairfield Funds").  As SIX SIS's role was

purely administrative, it charged its clients a nominal fee, generally $125, to process

transactions.

The Second Amended Complaint alleges that SIX SIS redeemed shares in the Fairfield

Funds 186 times between May 2003 and November 2008, in the total amount of $52,653,947.

By way of a single count in the Second Amended Complaint, the Trustee seeks to recover that

amount under 11 U.S.C. § 550(a) as comprising subsequent transfers of alleged fraudulent

conveyances from BLMIS to Sentry.  The Second Amended Complaint does not allege that SIX

SIS knew or could have known that BLMIS was a Ponzi scheme or that SIX SIS acted with bad

faith when it redeemed its clients' shares on their behalf.

The Second Amended Complaint should be dismissed for at least four reasons.

*First*, this Court does not have personal jurisdiction over SIX SIS.  SIX SIS is a Swiss

company that did no business in New York or the United States at the relevant times.  SIX SIS

did not invest its own money in the Fairfield Funds; it merely executed investments in the BVI

funds on behalf of its clients.  In carrying out these entirely foreign, administrative activities, SIX

SIS did not avail itself of the privileges and benefits of this forum.  The Trustee has not and

cannot allege that SIX SIS has sufficient minimum contacts with New York or the United States

to support jurisdiction.  And even if the Trustee could meet the minimum threshold for

jurisdiction, the undisputed facts regarding SIX SIS's limited operations put it in a fundamentally

different position from the many defendants who traded as principals and make assertion of

jurisdiction unreasonable here.

*Second*, the limitations period expired over a decade ago – the Trustee is time barred

from adding the 125 redemptions that were not alleged or referenced in the original complaint

filed in 2012 (the "2012 Complaint").  Further, the newly added redemptions do not relate back

to the 2012 Complaint.

*Third*, the Second Amended Complaint fails to plausibly allege that SIX SIS was a

transferee under section 550.  This Court has held that a party is considered a transferee only

when it exercises dominion over the asset – dominion is "the right to put the money to one's own

purpose." *Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*, 634 B.R. 39,

49–50 (Bankr. S.D.N.Y. 2021) (Morris, J.). Here, there is no allegation that SIX SIS exercised

dominion over the shares or otherwise controlled any of the amounts received from the Fairfield

Funds. The Trustee does not plausibly allege that SIX SIS was a "transferee." As such, the

Second Amended Complaint fails as a matter of law.

*Fourth*, the Second Amended Complaint, by its terms, establishes that SIX SIS is entitled

to the "good faith for value defense" under section 550 of the Code. Specifically, it is clear from

the face of the Second Amended Complaint that SIX SIS took for value, in good faith, and

without knowledge of the voidability of the transfers. *See* 11 U.S.C. § 550(b).

SIX SIS acknowledges that this Court recently denied motions to dismiss filed by other

defendants who invoked defenses based on personal jurisdiction, pleading deficiency, customer

property, section 546(e), and good-faith. *See Picard v. Multi-Strategy Fund Ltd*., Adv. Pro. No.

12-01205 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"), ECF No. 122; *Picard v. Banque

SYZ & Co., SA*, Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"), ECF

No. 167. While this motion includes two of those grounds, it rests on facts that are unique to

SIX SIS and the allegations made against it. These facts place SIX SIS's motion beyond the

reasoning that supported denial of those prior motions and require the opposite result.

Accordingly, SIX SIS respectfully requests that this Court dismiss the Second Amended

Complaint with prejudice.

## NATURE OF THE CASE

SIX SIS is the Swiss national Central Securities Depository and, at all relevant times,

operated only in Switzerland. (Declaration of Stephan Hänseler in Support of Defendant's

Motion to Dismiss the Amended Complaint, dated July 8, 2022 ("Hänseler Decl."), at ¶¶ 2, 9).

On behalf of its financial institution clients, SIX SIS placed and held custody of investments in

the two BVI Fairfield Funds.  (Id. at ¶¶ 9–17).  The Trustee now seeks to recover the redemption

payments made from those BVI funds to SIX SIS.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER SIX SIS

The Second Amended Complaint's unsupported and conclusory allegations fail to support

jurisdiction over SIX SIS as a matter of law.  Rather, as further established by the Hänseler

Declaration, SIX SIS has had no substantial connections with New York.  Simply put, SIX SIS

did not avail itself of the benefits and protections of New York (or the United States) and the

exercise of jurisdiction is not reasonable here.  Accordingly, the Second Amended Complaint

should be dismissed with prejudice for lack of personal jurisdiction.

### A.  Personal Jurisdiction Legal Framework

The Supreme Court has set clear limits on a U.S. court's ability to exercise its judicial

power over a foreign defendant.  There are two bases for personal jurisdiction – "general

jurisdiction" and "specific jurisdiction."  General jurisdiction applies when the defendant is "at

home" in the jurisdiction where the plaintiff has sued, based on the defendant's place of

incorporation and principal place of business.  *Daimler AG v. Bauman*, 517 U.S. 117, 136–37

(2014).  This case does not present such circumstances.

In the absence of general jurisdiction, the Trustee must plead facts supporting the exercise

of specific jurisdiction.  Specific jurisdiction requires the plaintiff to demonstrate prima facie

that:  (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws," *Hanson v.*

4

*Denckla*, 357 U.S. 235, 253 (1958);  (2) the plaintiff's claim arises out of the foreign defendant's

activities in the forum State, *Walden v. Fiore*, 571 U.S. 277, 284 (2014);  and (3) the exercise of

jurisdiction is reasonable under the circumstances, *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 477–78 (1985).  This inquiry focuses on "the relationship among the defendant, the forum,

and the litigation." *Walden*, 571 U.S. at 284.  A foreign defendant can only be "haled into court

in a forum State based on his own affiliation with the State." *Id.* at 286;  *see also World-Wide

Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to

due process analysis . . . is that the defendant's conduct and connection with the forum . . . are

such that he should reasonably anticipate being hauled into court there.").  This allows a

defendant to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's

courts." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)

(*quoting Volkswagen*, 444 U.S. at 297).

To survive a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), "the plaintiff

bears the burden to make a prima facie showing that jurisdiction exists." *Lehman Bros. Special

Fin., Inc. v. Bank of Am. (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr.

S.D.N.Y. 2015).  "A *prima facie* case requires non-conclusory fact-specific allegations or

evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag

v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015).

### B.  This Court's Prior Opinions on Jurisdiction Do Not Control the Outcome in this Case

This Court has rejected jurisdictional challenges by other entities that received

redemptions from the Fairfield Funds.  *See, e.g.*, *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at

\*5;  *Banque Syz & Co., SA*, 2022 WL 2135019, at \*5.  In many of those cases, the Court found

that specific facts alleged against those defendants established "a prima facie showing of personal jurisdiction with respect to the Fairfield Funds subsequent transfers at issue." *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *5;  *Banque Syz & Co., SA*, 2022 WL 2135019, at *5. Here, in contrast, the Second Amended Complaint against SIX SIS does not allege several of the jurisdictional contacts that this Court relied upon in finding jurisdiction over other defendants. The absence of these critical allegations requires a different outcome in this case.

Specifically, the Court's finding of jurisdiction over other defendants relied principally on the allegations that both of those defendants knowingly directed money towards New York with the intent to profit from those investments – including by maintaining their own accounts with BLMIS, soliciting their clients to invest in the Fairfield Funds, and then enticing customers to increase their investments by offering loans to fund the investments. *See, e.g.*, *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *3–4 (*quoting Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 504 (Bankr. S.D.N.Y. 2012));  *Banque Syz & Co., SA*, 2022 WL 2137073, at *6–7.

However, unlike the defendants in those cases, SIX SIS is an execution-only custodian. (Hänseler Decl. at ¶¶ 2, 8, 10, 17).  This means it had no such profit motive, as it did not own any of the money it transferred to the Fairfield Funds.  (*Id.* at ¶ 15).  Nor, in further contrast to other defendants held to be subject to this Court's jurisdiction, did SIX SIS conduct due diligence or give investment advice to its clients.  (*Id.* at ¶¶ 11–14).  Thus, this case presents none of the specific allegations that the Court considered to be important to its finding of jurisdiction in other cases.  For example, in *Multi Strategy Fund* and *Bank Syz*, the Court relied on the following allegations:

- "Defendant, through its president, director and authorized signatory, asked about additional capacity for Fairfield Sentry on at least seven occasions." *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *3.

- "Defendant's knowledge and intention that its investments in Fairfield Sentry . . . were investments with BLMIS are reflected in Defendant's total redemption of its investments in both BLMIS Feeder Funds after [Defendant's president] discussed 'Madoff and the potential ponzi [sic] scheme.'" *Id.* at *4.

- "[I]n connection with Defendant's Fairfield Sentry investments, persons associated with the Defendant asked for 'info that you've got on Madoff,' including asking 'how Maddoff [sic] made money' and for help 'understand[ing] when Maddoff [sic] was invested.'" *Banque Syz & Co., SA*, 2022 WL 2135019, at *3.

- "Banque Syz 'solicited its own clients to invest in Madoff Feeder Funds' and enticed those customers to increase their investments by offering them loans to fund the investments." *Id.* at *4.

- Banque Syz "maintained its own account with BLMIS in New York and used New York bank to transfer funds into and receive funds from BLMIS, and filed a customer claim in this SIPA proceeding." *Id.*

Such allegations were critical to the finding of jurisdiction in *Multi-Strategy Fund Ltd.* and *Bank Syz.* As we show in the next section, their absence here requires the opposite conclusion.

### C. The Amended Complaint Fails to Allege Sufficient Minimum Contacts with New York or the United States

As a preliminary matter, the Second Amended Complaint does not allege that SIX SIS is subject to general jurisdiction – nor could it.  SIX SIS is incorporated and maintains its principal place of business in Switzerland.  (SAC ¶ 61).

Instead, the Trustee conclusorily asserts that SIX SIS purposefully availed itself of the laws and protections of the United States and New York by transacting business within New York and maintaining "general business contacts" within the forum.  (SAC ¶¶ 8–9).  However, the Second Amended Complaint is devoid of specific factual allegations to support those broad-brush conclusions and meaningfully tie SIX SIS to New York or the United States.

Importantly, the absence of specific jurisdictional allegations supports dismissal under Rule 12(b)(2).  *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 136 (S.D.N.Y. 2016) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.") (citations omitted);  *In re Hoosick Falls PFOA Cases*, 431 F.Supp.3d 69, 76 (N.D.N.Y. 2020) ("[P]laintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.  Pleadings that assert only conclusory non-fact-specific jurisdictional allegations or state a legal conclusion couched as a factual allegation do not meet this burden.") (internal quotation marks and citations omitted).  In addition, here, the indisputable facts set forth in the accompanying Hänseler Declaration establish that SIX SIS had no "general business contacts" in New York and did not "derive[] significant revenue" there because:

- SIX SIS had no offices or employees in New York.  (Hänseler Decl. at ¶ 9).

- SIX SIS did not invest on its own behalf.  (*Id.* at ¶¶ 15, 17).

- SIX SIS did not solicit clients to invest in the Fairfield Funds or BLMIS. (*Id.* at ¶¶ 12, 16).

- SIX SIS executed transactions solely at the direction of its financial institution clients. (*Id.* at ¶ 17).

- SIX SIS did not conduct due diligence, have investment discretion, or provide advice concerning its clients' investments. (*Id.* at ¶¶ 11–14).

- SIX SIS provided custody and execution services only, none of which activities occurred in the United States. (*Id.* at ¶¶ 2, 9, 10, 17).

- SIX SIS did not seek and had no ability to profit from funds invested in the Funds; it received only a nominal administrative fee for each transaction. (*Id.* at ¶¶ 15–19).

These facts preclude as a matter of law any finding that SIX SIS "project[ed]" itself into ongoing commerce in New York.

> i.      *The Fairfield Funds' Contacts with New York Do Not Provide a Basis for this Court to Assert Jurisdiction over SIX SIS*

None of the Trustee's attempts to plead around these conclusive jurisdictional facts has merit. The Trustee first attempts to rely on the Fairfield Funds' (rather than SIX SIS's) contacts with BLMIS in New York – arguing that SIX SIS's knowledge of the Funds' New York contacts is sufficient to support jurisdiction over SIX SIS. This is not correct because third-party contacts cannot support jurisdiction. Rather, jurisdiction can rest only on contacts "the Defendant himself creates." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (citations omitted). Thus, the Funds' contacts with BLMIS provide no support for the Second Amended Complaint's allegation that SIX SIS "accepted the rights, benefits, privileges, and responsibilities of conducting business and transactions in the United States and New York." (SAC ¶ 11).

Moreover, as a matter of law, mere knowledge on the part of SIX SIS that Fairfield Sentry would invest money it raised in the BVI with BLMIS is insufficient to support jurisdiction. Settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between … third parties and the forum State." *Walden*, 571 U.S. at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' … [for] minimum contacts must come about by an action of the defendant purposefully directed toward the forum State."); *see also Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 31 A.D.2d 355, 356 (1969), *aff'd*, 26 N.Y.2d 280 (1970) ("The mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long arm statute.").

The Trustee then attempts to rely on Fairfield Sentry's use of a correspondent bank account in New York. (SAC ¶ 13). Even if Fairfield Sentry's banking arrangements could be attributed to SIX SIS for jurisdictional purposes – which they cannot for the reasons just stated – this would be insufficient to establish personal jurisdiction over SIX SIS. As a matter of law, the mere use of a correspondent account by a foreign entity to clear transfers under a foreign contract does not confer jurisdiction in the U.S. over the foreign entity. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign

10

contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the forum); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726–27 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (collecting cases)).  It is also settled that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York does not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-CV-3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank account did not establish specific jurisdiction).

> ii.     *The Alleged Use of a Bank Account for Routine Transfers in a Lawful Commercial Transaction is Not a Basis for Personal Jurisdiction*

Third, the Second Amended Complaint alleges that SIX SIS designated and used a bank account in New York to transfer investor funds and receive redemption payments made by the Fairfield Funds.  (SAC ¶ 15).  However, the "mere maintenance" of a U.S. bank account, and the "knowing receipt of funds" through the account, does not establish personal jurisdiction.  *See, e.g.*, *Sledziejowski v. MyPlace Dev. SP ZO.O. (In re Sledziejowski)*, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983).  To the extent SIX SIS used a New York bank for some of the transfers, such use was incidental to foreign investment contracts between SIX SIS (on behalf of its foreign investors) and the BVI Fairfield Funds.  *See Hau Yin To v. HSBC Holdings PLC,* No. 15-CV-3590 (LTS), 2017 WL 816136, at *6–7 (S.D.N.Y. Mar. 1, 2017) (contact with U.S. banking system pursuant to foreign feeder fund service contracts does not support jurisdiction); *Hill*, 207 F. Supp. 3d at 339–40 (same).

11

      *iii.*     *Subscription Agreements between SIX SIS and the Fairfield Funds do not*
                  *Support the Claim that SIX SIS Consented to Jurisdiction in this Dispute*

Finally, the Trustee alleges that "SIX SIS voluntarily executed multiple subscription

agreements in connection with its investments in Fairfield Sentry and Sigma." (SAC ¶ 12). In

essence, he contends that because those subscription agreements included New York choice of

law and choice of forum clauses in the event of a dispute between SIX SIS and the Funds, SIX

SIS consented to this Court's jurisdiction over the claims brought against SIX SIS by the

Trustee. This argument is a non-sequitur and foreclosed by controlling precedent. Specifically,

before this issue came before this Court, the UK Privy Council held in *In re Fairfield Sentry Ltd.*

*v. Migani*, that the Subscription Agreement does not govern redemptions from Fairfield Sentry,

and that therefore, New York law was inapplicable to redemptions. [2014] UKPC 9, ¶¶ 10, 17,

20. (See Ex. 1 to Declaration of Erin Valentine in Support of Defendant's Motion for Summary

Judgment, dated December 13, 2022 ("Valentine Decl."). Thereafter, and in light of *Migani*, this

Court rejected the Fairfield liquidators' jurisdictional argument based on New York choice of

law and forum selection clauses in the subscription agreements. *See Fairfield Sentry Ltd. v.*

*Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Ch. 15 Case No. 10-13164, Adv. No.

10-03496, 2020 Bankr. LEXIS 2324, at *31 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Fairfield I")

(holding that "Defendants' consent to the Subscription Agreement does not constitute consent to

personal jurisdiction"). Accordingly, choice of law and forum provisions in the Fairfield Funds'

subscription agreements, to which neither BLMIS nor the Trustee is a party, do not establish

jurisdiction for this dispute over SIX SIS by consent.

### D.  The Exercise of Jurisdiction over SIX SIS is Not Reasonable.

Even if the Trustee established that SIX SIS had sufficient contacts to enable this Court

to exercise jurisdiction, which it has not, this Court would still have to find the exercise of

jurisdiction to be reasonable under the circumstances for it to be consistent with due process.

*Volkswagen*, 444 U.S. at 297 ("The Due Process Clause . . . gives a degree of predictability to the

legal system that allows potential defendants to structure their primary conduct with some

minimum assurance as to where that conduct will and will not render them liable to suit.")

(citation omitted).  When evaluating reasonableness of exercising jurisdiction, courts consider

the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining

convenient and effective relief.  *LaMonica v. CEVA Grp. (In re CIL Ltd.)*, 582 B.R. 46, 79

(S.D.N.Y. 2016); *see also Asahi Metal Indus. Co.*, 480 U.S. at 113.  Where, as here, a

defendant's connections with the forum are weak, the bar for showing reasonableness is high.

*See In re CIL Ltd.*, 582 B.R. at 79 ("[T]he weaker the plaintiff's showing on minimum contacts,

the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction.").

Therefore, because the Trustee relies on the most incidental of contacts to establish jurisdiction

(*see supra* Sec. II.C), he must make a *stronger showing* that the exercise of jurisdiction would be

reasonable.

Yet all relevant factors weigh against the exercise of jurisdiction here being reasonable.

*First*, the burden of forcing SIX SIS to defend a suit in the United States would be

disproportionate to the nominal administrative fees it earned processing its clients' transactions.

This is particularly so considering that none of the activities potentially relevant for discovery

involved U.S.-based entities or occurred in the United States.  All evidence would be located in

foreign jurisdictions and would implicate foreign law; in particular, because SIX SIS is the Swiss

Central Securities Depository subject to the Swiss Financial Market Infrastructures Act

("FMIA"), Swiss Data Protection Act, and the Swiss Criminal Code, each of which regulates

disclosure.  The FMIA provides heightened secrecy and data protection obligations and allows

13

for criminal prosecution for any violations. (*See e.g.*, Valentine Decl. Ex. 2, Art. 147). These restrictions will limit most cross-border discovery and will require significant legal costs on all parties.

*Finally*, and of equal importance to all of these considerations, effective relief is available to the Trustee in Switzerland. Given the foreign law concerns with litigating here and potential for SIX SIS to face criminal sanctions in Switzerland arising out of cross-border discovery, Switzerland is a more sensible forum for the Trustee.

For all of these reasons, SIX SIS could never reasonably have anticipated that its purely administrative, non-substantive interactions with the Fairfield Funds would provide a basis for it to be haled into court in New York. Therefore, forcing SIX SIS to litigate here is unreasonable. *See e.g.*, *In re CIL Ltd.*, *supra*, 582 B.R at 80 (finding jurisdiction unreasonable where litigation involved "mostly foreign defendants over a transaction that took place almost entirely outside of the United States").

## II.    THE TRUSTEE IS TIME BARRED FROM RECOVERING THE NEWLY PLEADED TRANSFERS IN THE SECOND AMENDED COMPLAINT

In the Second Amended Complaint alleges for the first time 125 redemptions, totaling $33,000,038. The Trustee's claims for these newly added transfers are time-barred. Section 550(f)(1) of the Bankruptcy Code provides that subsequent transfer actions must be brought within one year after either the avoidance of the initial transfers or the date the case is closed or dismissed. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 207 (Bankr. S.D.N.Y. 2018) (*citing* 11 U.S.C. § 550(f)). "A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f)." *See id.* (*citing SIPC v. BLMIS (In re BLMIS)*, 501 B.R. 26, 32 (S.D.N.Y. 2013), *denying motion to amend*, No. 12 MC 115 (JSR), 2014 WL

465360 (S.D.N.Y. Jan. 14, 2014);  *Bureau of Labor Ins.*, 480 B.R. at 522.  This Court has held

that the one-year limitations period for actions against subsequent transferees was triggered by

the Bankruptcy Court's June 2011 approval of the Trustee's settlement with Fairfield Sentry.

*Bureau of Labor Ins.,* 480 B.R. at 522 ("Although the Settlement does not constitute a formal

avoidance of the initial transfer from BLMIS to Fairfield, it presents the Court with finality with

respect to Fairfield Sentry. This finality triggers the relevant one-year statute of limitations under

section 550(f) of the Code.").  The limitations period ran in June 2012 – over a decade ago.

       As the statute of limitations has expired, the Trustee is time-barred from asserting new

claims unless those additional claims relate back to the date of an earlier, timely pleading.  *BNP*

*Paribas S.A.*, 594 B.R. at 207 ("An amendment filed after the applicable statute of limitations

has run asserting additional claims that do not relate back to the date of an earlier timely pleading

is futile.").  Section § 550(f) is silent on relation-back.  As such, the court looks to Fed. R. Civ. P.

15(c)(1)(b), which provides that amended pleadings relate back if they arise "out of the conduct,

transaction or occurrence set out – or attempted to be set out – in the original pleading."  To

relate back to the 2012 Complaint, the new claims must arise out of "a common 'core of

operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644,

659 (2005).  "The 'central inquiry is whether adequate notice of the matters raised in the

amended pleading has been given to the opposing party . . . by the general fact situation alleged

in the original pleading.'"  *BNP Paribas S.A.*, 594 B.R. at 210 (*citing Slayton v. Am. Express*

*Co.*, 460 F.3d 215, 228 (2d Cir. 2006)).

       Under Second Circuit precedent, "[i]n avoidance litigation, each transfer is treated as a

separate transaction for purposes of applying the 'relation back' doctrine."  *Buchwald Capital*

*Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 447 B.R. 170,

181–82 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55

(2d Cir. 2013);  *see also BNP Paribas S.A.*, 594 B.R. at 190 (holding in case seeking subsequent

transfers of BLMIS property that "[e]ach transfer is a separate claim");  *Metzeler v. Bouchard*

*Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986) ("Courts have

consistently treated preferential transactions as separate and distinct under Rule 15(c) . . . The

same should be true of separate fraudulent transfers.").

This court's decision in *Metzeler* is instructive.  There, as here, the trustee sought to

amend its complaint to plead additional transfers that occurred prior to the transfers alleged in

the original pleading.  The court noted that avoiding fraudulent transfers requires alleging and

proving intent, insolvency, or unreasonably small capital at the time of each transfer, and that

"proof offered for one transaction is not governing as to another."  66 B.R. at 983–84.  The court

continued:

> These observations, furthermore, lead to the conclusion that a
> defendant, because of the separateness of these elements, would not
> be put on notice that the allegation of three alleged fraudulent
> transfers contemplated the litigation of four earlier transactions
> during the one year period provided for by § 548(a). Indeed, the
> opposite conclusion would obtain. The originally pleaded
> transactions occurred shortly before bankruptcy. The claims sought
> to be added arose from earlier transactions. Significant elements of
> § 548(a), *e.g.*, undercapitalization, insolvency and intent to defraud
> creditors, are more likely to occur as a company approaches
> bankruptcy. If the earlier transactions were pleaded originally and
> the amendment sought to add later transactions, the likelihood of
> notice and expectation would seemingly increase. Here the converse
> occurred.

*Id.* at 984.  As such, the court rejected the trustee's argument that the newly alleged transfers

related back to the original petition.

Likewise this Court should reject any argument that the newly added transfers relate back

to the 2012 Complaint.  In the 2012 Complaint, the Trustee sought to recover 14 redemptions

totaling $1,279,585 made from Fairfield Sentry and Fairfield Sigma to SIX SIS between

December 2007 and November 2008.  (Complaint at ¶ 60, Exs. C and E, ECF No. 1).  In

addition, in 2012, the Trustee brought an action against Brown Brothers Harriman ("BBH")

seeking to recover 47 redemptions made from Fairfield Sentry to a SIX SIS custodial account

between October 2007 and November 2008.  (Complaint at ¶ 50, Ex. C, *Picard v. Brown

Brothers Harriman & Co.*, Adv. Pro. No. 12-01217 (Bankr. S.D.N.Y. 2015), Dkt. No. 1).  On

consent, the Trustee added transfers to the instant adversary proceeding.[1]

The 125 redemptions alleged for the first time in the Second Amended Complaint do not

relate back to the original complaint filed against SIX SIS in 2012.  While the 2012 Complaint

was focused on redemptions that occurred between October 2007 and November 2008, the 125

redemptions added to the Second Amended Complaint occurred much earlier – between 2003

and 2007.  There is nearly no overlap with the 2012 Complaint – 120 of the 125 newly alleged

redemptions occurred prior to the *first* redemption alleged in the 2012 Complaint.  (Compare

Complaint at Exs. C and E, ECF No. 1, with Second Amended Complaint at Exs. C and E, ECF

No. 126).  As was true in *Metzeler*, the 2007–2008 redemptions included in the 2012 Complaint

did not put SIX SIS on notice that, over ten years later, the Trustee would reach back to 2003 --

seeking an additional 125 redemptions, for over $33 million.

Further, the factual predicate for each transfer is unique.  As discussed in the Hänseler

Declaration, SIX SIS is a custodian that holds assets on behalf of financial institutions.  Each

redemption was received by SIX SIS on behalf of a custodial client pursuant to a discrete

---

[1] While SIX SIS consented to the amendment in 2015, the complaint was not amended until May
6, 2022.  SIX SIS does not challenge the addition of these redemptions on statute of limitations
grounds.

redemption request.  The Trustee does not allege (nor can he) that the redemptions were

requested by the same SIX SIS customer, at the same time, for the same amount, for the same

reason, or pursuant to the same subscription agreement.  Therefore, any assertion by the Trustee

"that all the original subsequent transfer claims and the New Subsequent Transfer Claims arose

from a 'common core of operative facts' lacks merit."  *BNP Paribas S.A.*, 594 B.R. at 211.

The Trustee's allegation that the transfers involve property which BLMIS stole "as part

of the massive Ponzi scheme perpetuated by Madoff and others," SAC ¶ 1, is not enough to cure

the deficiencies.  This court has acknowledged that the "mere allegation" that the previously

identified transfers and the newly added transfers are "all … fraudulent transfers *does not make*

*them part of the same conduct*." *Metzeler*, 66 B.R. at 983 (emphasis added); *see also id.* at 984

("[T]here is no indication that, merely because different transactions bear the same label, relation

back is to be ordered on the ground that they arise from similar conduct."); *BNP Paribas S.A.*,

594 B.R. at 210–11 ("The New Subsequent Transfer Claims arise from different facts and

circumstances and depend on different proof. … Furthermore, each subsequent transfer, old or

new, arose from either separate and distinct loans, credit facilities or derivative transactions with

various counterparties while others appear to relate to either redemptions or equity distributions

to the Defendants as direct investors in the Tremont Funds. The assertion that all the original

subsequent transfer claims and the New Subsequent Transfer Claims arose from a 'common core

of operative facts' lacks merit.").

Nor does the Trustee's reservation of the right to amend the complaint save his belated

claims.  The Trustee stated in the 2012 Complaint that his investigations were "ongoing" and that

he "reserves the right" to add "any additional transfers" and "seek recovery of such additional

transfers."  (2012 Compl. ¶ 42).  These words – which could easily be added to any complaint –

do not put SIX SIS on notice that the newly-alleged transfers were "associated with the course of

conduct alleged in the Original Complaint." *In re Uplift RX, LLC*, 625 B.R. 364, 376 (S.D. Tex.

2021). Indeed, the Trustee used an identical reservation of rights in *BNP Paribas S.A.*

Complaint at ¶ 53, *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y.

2018) (Adv. Pro. 12-01576). The court nonetheless held that the newly alleged subsequent

transfers did not relate back and were therefore time barred. *Id.* at 210–12. The same finding is

warranted here.

## III.    THE TRUSTEE FAILS TO ALLEGE THAT SIX SIS WAS A TRANSFEREE OF ANY SUBSEQUENT TRANSFER

### A.    The Trustee Fails to Plausibly Allege that SIX SIS Had Dominion or Control over the Redemptions

Section 550(a) of the Bankruptcy Code limits recovery of transfers of property from the

debtor estate (here, BLMIS) to "transferee[s]" of that property. 11 U.S.C. § 550(a). Establishing

that a defendant is a "transferee" is an essential element of a claim to recover under section

550(a) that courts address at the motion to dismiss stage. *See Weisfelner v. Fund 1 (In re

Lyondell Chem. Co.)*, 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (dismissing

"claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not

beneficial owners, of Lyondell stock"), *abrogated on other grounds by In re Tribune Co.

Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016).[2]

---

[2] *See also Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 312–15 (Bankr.
S.D.N.Y. 1999) (Brozman, J.) (granting motion to dismiss in part because,"[a]s the Complaint
stands, [defendant] was a mere conduit"); *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re
Mervyn's Holdings, LLC)*, 426 B.R. 96, 102–04 (Bankr. Del. 2010) (Gross, J.) (finding that there
was insufficient pleadings showing that the movant was a "transferee" for the purposes of an
avoidance action); *Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d
1326, 1344 (S.D. Fla. 2008) (finding "that [plaintiff] has not stated a claim for fraudulent transfer

The Second Circuit has long recognized that a mere recipient of money or other assets is not a transferee. *Christy v. Alexander & Alexander of NY, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir.1997). Rather, the Second Circuit has adopted what has become known as the "dominion and control test" – i.e., a transferee must exercise "dominion over the money or other asset," meaning "the right to put the money to one's own purposes." *Keller Family Tr.*, 634 B.R. at 49–50 (*citing In re Finley*, 130 F.3d at 57). Thus, section 550(a) is limited in scope and does not reach "every courier, every bank and every escrow agent" that may have touched the assets at issue. *In re Finley*, 130 F.3d at 56. Rather, where the party 'has 'no discretion or authority to do anything else but transmit the money' to another, like a contractual obligation", the party may be a mere conduit. *Keller Family Tr.*, 634 B.R. at 50 (*quoting In re Finley*, 130 F.3d at 56). This test applies equally to subsequent transferees as it does to initial transferees. *Stratton Oakmont, Inc.*, 234 B.R. at 313 n.9 (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "to qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives" (*citing Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988))).[3]

Under the dominion and control test, "mere conduits" of money are not transferees because a "'mere conduit' . . . has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else. Mere

---

against [defendant] because at best, [defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have controlled the funds at issue").

[3] *See also Bonded*, 838 F.2d at 896 (recognizing that "[t]he method we employed . . . to decide that the [b]ank was not an 'initial transferee' governs the question whether entities are subsequent transferees, too").

conduits can do no more than transmit a transferor-debtor's funds to a transferee." *Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Grp., Inc.)*, 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006); *see also Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) ("In other words, just because a party is not a 'mere conduit' in the prototypical sense of the term—i.e., a party that receives the money merely to pass it on to a third-party—does not mean that the party has requisite 'dominion and control' over the funds." (*citing Bonded*, 838 F.2d at 891)); *see also* COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee[.]'").

In the context of a bank or broker, courts require a showing of (i) receipt of transferred funds;  (ii) the legal right to control those transferred funds (i.e., legal control);  and (iii) the right to use those transferred funds for its own purpose (i.e., actual control). *See In re Manhattan Inv. Fund*, 397 B.R. at 15.  Thus, a financial institution that only nominally holds the assets of a client will not be considered a transferee under the statute. *See, e.g.*, *Bonded*, 838 F.2d at 893 (holding that bank was not an initial transferee because it was contractually obligated to follow customer's instructions to deposit funds and "held [customer's] check only for the purpose of fulfilling an instruction to make the funds available to someone else").[4]  The Seventh Circuit's decision in *Bonded Financial Servs., Inc.*, 838 F.2d 890, is instructive.  There, the court considered whether a bank that received a transfer of funds for the debtor was a transferee for purposes of section

---

[4] *See also Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42, 43 (10th Cir. 1994) (holding bank was not an initial transferee where transferor "exercised complete discretion regarding deposits to and disbursements from the account, and he was entitled to possession of all account funds upon demand"); *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir. 1996) (holding that a bank "must (1) actually receive the funds, and (2) have full dominion and control over them for [the bank's] own account, as opposed to receiving them in trust or as agent for someone else." (citation omitted)).

550.  The Seventh Circuit held that it was not a transferee, but rather a mere conduit.  The bank "acted as a financial intermediary" of the transfer and "received no benefit" for its role.  *Id.* at 893.  Rather than exercising dominion over the funds, the bank simply followed the instructions to deposit the transfer into the debtor's account.  *Id.*  The court explained that the bank "was no different from a courier or an intermediary on a wire transfer."  *Id.*

Here, the Second Amended Complaint fails to plausibly allege that SIX SIS had dominion or control over any alleged subsequent transfers, and thus fails to plausibly plead an essential element of the Trustee's claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory….") (citation omitted).  The Second Amended Complaint alleges no facts that suggest that SIX SIS held legal title to any of the money that it received from the Fairfield Funds at any time.  Moreover, the Trustee fails to allege that SIX SIS exercised actual control over any transfer it received.  There is no allegation that SIX SIS had control over the funds received.  Nor is there any allegation that SIX SIS had discretion to use any of the alleged transfers it received for its own purported benefit.  To the contrary, "SIX SIS was and is an infrastructure company responsible only for the settlement and custody of securities on behalf of its clients."  Hänseler Decl. ¶ 8.  As was the case in *Bonded*, SIX SIS received transfers on behalf of its clients – it acted as a custodian for its clients.  The Second Amended Complaint fails to plausibly allege that SIX SIS was anything more than a mere conduit.

> **B.    The Court Should Direct the Parties to Address Dominion and Control Through a Summary Proceeding.**

Should the Trustee argue that there are factual questions to be resolved, the Court should direct the parties to resolve the threshold mere conduit issue in summary proceedings.  In other

proceedings in this District, courts have adopted summary procedures whereby bank defendants submit prima facie evidence demonstrating their conduit status as to each transfer, with a streamlined process for the Trustee to seek additional information.  For example, in *Weisfelner v. CIBC World Markets* (*In re Lyondell Chem. Co.)*, Judge Gerber endorsed a protocol whereby the defendant would "submit to [p]laintiff a sworn declaration . . . setting forth the facts and circumstances pursuant to which it claims to be a full or partial Conduit," and then within 30 days, "[p]laintiff may make a follow-up request to the [d]efendant for additional information that [p]laintiff believes in good faith is needed to make a determination of Conduit or Non-Transferee status." (Order at 3, 8, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014) (Gerber, J.), ECF No. 2124.)  If the plaintiff disagreed that the defendant acted as a conduit, the parties would "meet and confer within 14 days of the [d]efendant's receipt of such notification to resolve the dispute," and if the parties could not resolve the dispute, then the "[d]efendant may request a conference with the Bankruptcy Court." *Id*. at 9;  *see also In re Tribune Co. Fraudulent Conveyance Litig.*, Conduit Protocol at 2–3, No. 12-cv-02652 (S.D.N.Y. Apr. 24, 2014) (Sullivan, J.), ECF No. 4239.  SIX SIS respectfully submits that a streamlined process here would conserve judicial and party resources.

## IV.    THE SECOND AMENDED COMPLAINT ESTABLISHES THAT SIX SIS IS ENTITLED TO THE GOOD-FAITH DEFENSE

Under section 550(b), a trustee may not recover from a subsequent transferee who took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b).  Even if the Court had jurisdiction over SIX SIS, it should nonetheless grant this motion to dismiss for the independent reason that the Second Amended Complaint, on its face, establishes SIX SIS's "good faith" as a matter of law.  Specifically, it is clear from the face of the Second Amended

Complaint that SIX SIS took for value, in good faith, and without knowledge of the voidability

of the transfer.  *See* 11 U.S.C. § 550(b).

### A.    SIX SIS Received the Redemptions for Value

To establish "value," the Code simply requires that a redemption is "sufficient to support

a simple contract, analogous to the 'value' required under state law to achieve the status of a

bona fide purchaser for value."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re*

*BLMIS)*, No. 08-01789, 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021); *see also*

*Picard v. ABN Amro Bank N.A. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, No.

AP 08-01789, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020) (*citing* 5 Collier on

Bankruptcy ¶ 550.03[1] at 550-25 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019)).

Here, the Second Amended Complaint clearly shows the redemption payments were in

exchange for SIX SIS's "redemptions of equity interests," (SAC ¶¶ 8–16, 69, 72), which

"constitutes value for purposes of section 550(b)."  *ABN Amro Bank N.A.*, 2020 WL 1584491, at

*8 ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is

consideration sufficient to support a simple contract.");  *Picard v. Cohen (In re BLMIS)*, 2016

WL 1695296, at *10, *14 (Bankr. S.D.N.Y. Apr. 25, 2016) (holding that the "transferee does not

give value beyond his deposits of principal" and "[i]n all Ponzi scheme fraudulent transfer

litigation, a transferee must return transfers in excess of his principal deposits");  *see also*

*Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9. (Valentine Decl. Ex. 1).

**B.      It is Clear From the Allegations in the Second Amended Complaint That SIX SIS Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where Others Better Situated To Do So Did Not.**

The Second Circuit recently held that, in evaluating a claim of good faith in the context of the Trustee's SIPA litigation against subsequent transferees of alleged fraudulent conveyances of BLMIS customer property, courts must examine three factors:

- *First*, what facts the transferee defendant actually knew;

- *Second*, whether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction – that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud; and

- *Third*, whether diligent inquiry by the transferee would have discovered the fraudulent purpose of the transfer.

*See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 191–92 (2d Cir. 2021), *cert. denied sub nom*, *Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).  An objective "reasonable person" standard controls in the second and third steps.  *Id.*

Here, the Second Amended Complaint does not allege any, specific, non-conclusory fact to support an inference that SIX SIS had a basis to suspect fraud.  The reasons for this are obvious:  as a central securities depository, SIX SIS merely holds securities on behalf of its clients and administers the settlement of securities transactions.  (Hänseler Decl. at ¶¶ 2–10, 17–18).[5]  SIX SIS executes trades, not on its own behalf, but at the direction of, and for the benefit

---

[5] SIX SIS submits the Hänseler Declaration in support of its motion to dismiss for lack of personal jurisdiction.  To the extent that the undisputable facts in the Hänseler Declaration may also be relevant to establish SIX SIS's qualification as a matter of law for the good faith defense

of, its customers, all of which are financial institutions.  (*Id.* at ¶¶ 7, 10, 17).  SIX does not

exercise any discretion or engage in any due diligence, as it does not recommend trades or make

any investment decisions.  (*Id.* at ¶¶ 11–14).  *See In re Leff*, 631 B.R. 106, 127 (E.D.N.Y. 2021)

(dismissing complaint in part based on section 550(b) good-faith because there was "nothing in

the record to suggest that the Defendants were aware of any adverse financial situation the

Debtor may have been in during the relevant time periods nor does the record indicate the

Defendants had knowledge of such facts that could have put them on notice").

Moreover, the Fairfield Amended Complaint itself demonstrates that a purely ministerial

business like SIX SIS could never have been on notice of Madoff's fraud.  Specifically, it asserts

that Fairfield defendants "misled the SEC," *id.* ¶ 9, "misled ratings agencies," *id.* ¶¶ 263–66, and

misled third-party consultants, *id.* ¶ 267.  It also asserts that these tactics worked and a host of

entities were misled.  *Id.* ¶¶ 235–262 (alleging that Fairfield "strategized with Madoff to mislead

the SEC," "misled third parties," "downplayed investor concerns to induce them to ignore" that

"the misappropriation of assets [by BLMIS] was a real threat," and that the SEC "closed its

investigation into BLMIS and [Fairfield] in November 2007" without "intend[ing] to recommend

any enforcement action against [Fairfield]").  *A priori*, if the Fairfield defendants successfully

concealed the Madoff fraud from regulators and sophisticated market participants, all of whose

business was to look for and guard against fraud, there is no possibility that a purely ministerial

actor such as SIX SIS, with neither the responsibility nor capability to evaluate securities

transactions, could have known of any impropriety.  The Second Amended Complaint's

conclusory assertions to the contrary cannot survive a motion to dismiss.  *BLD Prods., LLC v.*

---

created by 11 U.S.C. § 550(b), Rule 12(d) authorizes the Court to treat this motion as one for
summary judgment.

*Viacom, Inc.*, 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part*, *vacated in part*, *remanded sub nom*, *BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) (this "Court need not accept factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint").

In short, the allegations of the Fairfield Amended Complaint itself establish that a diligent inquiry would not have uncovered the Madoff fraud, mandating dismissal as a matter of law. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground."); *Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
        December 13, 2022

                                    CHAFFETZ LINDSEY LLP

                                    By:      /s/ Andreas Frischknecht
                                             Andreas A. Frischknecht
                                             Erin E. Valentine

                                    1700 Broadway, 33rd Floor
                                    New York, New York 10019
                                    Tel. (212) 257-6960
                                    Andreas.Frischknecht@chaffetzlindsey.com
                                    Erin.Valentine@chaffetzlindsey.com