UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL BANK OF KUWAIT AND NBK BANQUE PRIVÉE (SUISSE) SA,<br><br>          Defendants. | Adv. Pro. No. 11-02554 (CGM) |

**REPLY MEMORANDUM OF DEFENDANTS**
**NATIONAL BANK OF KUWAIT AND NBK BANQUE PRIVÉE (SUISSE) SA ON**
**MOTION DISMISS THE COMPLAINT**

CIRILLO LAW OFFICE
Richard A. Cirillo
246 East 33rd Street – # 1
New York, NY 10016-4802
T: 917-541-6778
E: rcirillo@cirillo-law.com

*Attorney for Defendants National Bank of Kuwait and NBK Banque Privée (Suisse) SA*

# TABLE OF CONTENTS

Page

TABLE OF CASES, STATUTES, AND RULES .................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I. THE NBK COMPLAINT DOES NOT PROPERLY ALLEGE THAT NBK RECEIVED CUSTOMER PROPERTY ............................................................................................. 1

II. THE NBK COMPLAINT DOES NOT PROPERLY ALLEGE THE REQUIRED ELEMENT OF AVOIDABILITY ........................................................................... 5

III. NBK RESERVES ITS SAFE HARBOR DEFENSES ............................................. 8

CONCLUSION ....................................................................................................................... 9

# TABLE OF CASES, STATUTES, AND RULES

**Cases**

*Page(s)*

*Angell v. BER Care, Inc.* (*In re Caremerica, Inc.*),
409 B.R. 737 (Bankr. E.D.N.C. 2009)

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 2, 3, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 2, 3, 4, 6

*Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*,
2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020)

*In re Geiger*
446 B.R. 670 (E.D. Pa. 2010) ................................................................................... 8

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2014)

**Statutes**

11 U.S.C. § 546(e) ...................................................................................................... 8

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................. 7, 8

Fed. R. Civ. P. 8(d) ................................................................................................. 7, 8

Fed. R. Civ. P. 10(c) ............................................................................................... 7, 8

The undersigned respectfully submits this reply memorandum on behalf of National Bank of Kuwait S.P.K. and NBK Banque Privée (Suisse) S.A. (together, "NBK") in response to the plaintiff's opposition memorandum, Civ. No. 11-02554-cgm, ECF Doc. 111 ("Opp. Mem."), responding to NBK's motion to dismiss, *id.*, ECF Docs. 107-09.

## PRELIMINARY STATEMENT

The parties do not so much disagree on the law that governs NBK's grounds for dismissal as they do its application to the amended complaint. *Id.*, ECF Doc. 106 ("NBK Complaint"). NBK's motion is entirely based on the face of the NBK Complaint and undisputed documents the plaintiff filed in this cases that constitute his judicial admissions binding in this action. Much of the plaintiff's opposition memorandum argues against grounds of dismissal that NBK never advanced. The balance misinterprets what NBK did advance. The purpose of this reply memorandum is to return the focus to NBK's arguments and the plaintiff's opposition does not refute them. Properly applied, the law requires dismissal of the NBK Complaint.

## ARGUMENT

### I. The NBK Complaint Does Not Properly Allege that NBK Received Customer Property

The plaintiff says that the NBK Complaint

> need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Opp. Mem. at 5. We agree. But NBK Complaint does not do these things. Instead, it presents two "possible" or "conceivable" but inconsistent scenarios for the origin of redemption money paid to NBK. One would support that the money was "customer property" and the other that it was not customer property. The presence of the plaintiff's inconsistent allegations means that

1

neither is or "plausible" and that the inference the plaintiff's argument that the court should draw one and not the other is not "reasonable." That is precisely the situation in *Twombly* and *Iqbal*, where the Supreme Court dismissed the complaints in both those cases. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[1]

In *Twombly*, the plaintiff said that allegations that the defendants' parallel behavior permitted the reasonable inference that they had acted in concert. Concert of action was an indispensable element of the plaintiff's claim. The defendants and Court said the allegations equally supported the possibility the defendants had acted independently of each other, not in concert.[2] Because the plaintiff's allegations did not make one inference plausible or reasonable compared to the conflicting inference, the Court dismissed the complaint.

The plaintiff in *Iqbal* alleged he was Islamic and that he had suffered harsh treatment in prison. The asked for an inference that he was punished and discriminated against due to his religious faith. The defendant pointed out that the plaintiff was an enemy combatant against the US and was a dangerous person. This provided an equally possible inference to explain the allegedly stringent prison measures. The Court found both inferences possible, or conceivable, but that neither was plausible or reasonable. The *Iqbal* Court dismissed the complaint.

Here, the plaintiff alleges in his NBK Complaint and binding judicial admissions in complaints in this case him that (i) BLMIS sent $3 billion to Fairfield Sentry, (ii) Fairfield Sentry disbursed $5 billion to others, and (iii) NBK received its redemption payments from the former not from the latter. That leaves the plaintiff admitting that Fairfield paid $2 billion it did not get

---

[1] The plaintiff relies on both Twombly and Iqbal, Opp. Mem. at 5, but then asserts they are inapposite. *Id.* at 8 n.3. They are on point and indeed they are controlling here.

[2] The *Twombly* Court emphasized repeatedly that only fact-based allegations may be considered in deciding if the plaintiff has shown that it "is entitled to relief." Factual allegations are not what the plaintiff believes but allegations founded in and advancing objective fact. The plaintiff's allegations relevant to this motion are generalized suppositions, not assertions shown to be drawn from factual sources. *Ipse dixit* is not fact.

from BLMIS and was not customer property. It was paid to someone, but nothing ties it to the $19 million of redemptions paid to NBK. The allegations present two equal possibilities and two equal inferences about the origin of the Fairfield redemption payments: one would make them customer property and the other not. Therefore an essential element of the claim is not pled adequately because the equal possibilities, do not "nudge" either over the line" from possibility to plausibility.[3] The Supreme Court says offsetting possibilities will not sustain the complaint. The plaintiff must try again with fact allegations sufficient under the Supreme Court's interpretation to make his preferred inference plausible.[4]

The inference that the money did not come from BLMIS is founded not only by the totals of the plaintiff's figures in the exhibits to complaints in this case that he prepared and filed. On this motion, the plaintiff endorses and relies on the same exhibits in the NBK Complaint, arguing they accurately show the pathway of money paid for redemptions to NBK. In addition, the plaintiff alleges that "[f]rom time to time, to make Redemption Payments, Sentry ... utilized subscription monies of other investors on hand that were directed for investment in BLMIS." First Amended Complaint ¶ 63, Fairfield Sentry Ltd. v. Citco Global Custody NV, 19-1122

---

[3] The plaintiff tries to misdirect the court's attention by creating a straw man. He asserts that "[t]he plausibility standard is not akin to a 'probability requirement'[.]" *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 189-90 (2d Cir. 2012) ("[T]he plausibility standard is lower than a probability standard' and 'on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives.')." Opp. Mem. at 8 n.3. NBK does not disagree but this is irrelevant to the issue. Rather, NBK points out that neither possibilities passes over the line to plausibility when the other is equally possible (and equally plausible). NBK has never argued for a "probability" standard.

The plaintiff then makes an improper and baseless statement: "But even if Defendants' interpretation of *Iqbal* and *Twombly* was correct, by Defendants' own flawed logic, it is more likely than not (i.e., not only possible or plausible, but probable) that Defendants' transfers emanated from the $3 billion Sentry received from BLMIS rather than from the $2 billion Sentry allegedly received from another source." *Id.* This is an improper assertion because the plaintiff nothing argued by NBK could justify it and the plaintiffs does not even try to explain his preposterous assertion. NBK does not assert it is probable that its NBK's redemptions came from the $3 billion rather than the $2 billion, but that the complaint does not make the former, pointing towards liability, plausible in face of the other possibility, pointing towards non-liability.

[4] Although the court may be concerned that verifying that the plaintiff has alleged $5 billion of Fairfield outbound payments could be a complicated exercises, it is actually only the addition of the totals in the relevant exhibit(s) to 80± complaints.

3

(Bankr. S.D.N.Y. Nov. 26, 2019), Doc. 19. This is an explanation by the plaintiff that the source of redemption money was not BLMIS but other resources Fairfield Sentry had at its disposal. As the district court has held, when "[t]here is an 'obvious alternative explanation'" "that explanation renders [plaintiff's] competing explanation 'conceivable [but not] plausible.'" *Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, 570 (2007)).

The plaintiff's second argument is that it is possible that some of the redemption payments to NBK came from BLMIS and some from other sources and that he is not required to plead that "an alleged subsequent transfer is comprised solely of customer property." Opp. Mem. at 8, 9. Again, NBK does not disagree. It is indeed possible that some of NBK's redemption payments came from the $3 billion and some came from the $2 billion. But that does not resolve the fact that none of the three possibilities is rendered "plausible." Maybe the $19 million of redemptions all came from the $3 billion; maybe it all came from the $2 billion; and maybe some came from each. Two billion dollars is a sufficient amount to cover all $19 million. The NBK Complaint makes no allegation making one of the three possibilities objectively plausible and the others not. Unless the plaintiff nudges one over the plausibility line, the court may not choose among the "all/none/some" possibilities alleged in the NBK Complaint. They rest on equal footing, requiring dismissal of the NBK Complaint

The plaintiff's third argument is that "the Trustee must allege the only "'necessary vital statistics – the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." Opp. Mem. at 7. NBK agrees, but the plaintiff has not "provid[ed] the necessary vital statistics (i.e., the 'who, when, and how much') for each subsequent transfer." *Id.* (Emphasis added.)

4

The plaintiff argues that he carries his burden with exhibits A, B, C and D to the NBK Complaint. Opp. Mem. at 7. Exhibits A and B state the "who and when and how much" of BLMIS' outbound payments to Fairfield. Exhibits C and D state "who and when and how much" of Fairfield Sentry made in outbound payments to NBK. But nothing in the exhibits or elsewhere satisfies the third element the trustee admits he "must" allege, namely "how much" of "stolen customer property" of "each subsequent transfer" to NBK came from BLMIS. Only the plaintiff's unsupported, non-factual supposition tries to make that connection by choosing one of the three possibilities over the others.

The plaintiff makes several additional objections to NBK's arguments. He says that NBK is demanding at the pleading stage a "dollar for dollar accounting" or a "tracing" of the funds or untangling a "comingling" of funds and they should be held until the merits stage. Opp. Mem. at 6-10. That is not so and NBK's argument does not resort to or require any of those analyses. They would be merits issues only if the NBK Complaint actually stated a claim by plausibly alleging receipt of customer property. NBK's argument is different and well recognized. For example, in *Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2014), the court dismissed the complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *See Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (preference claim dismissed because the trustee failed to adequately allege that transfers into and

5

out of an account and amounts received by supposed transferees were sufficiently tie together, citing *Twombly and Iqbal*).[5]

NBK's argument is just that: the face of the plaintiffs pleadings failed to show plausibly that any NBK redemption money came from BLMIS. It may have. It may not have. Some may have. But alleging that adequately is not an exercise in tracing, or dollar-for-dollar analysis, or evaluating questions of commingling. It requires sufficient, fact-based allegations that plausibly advance one of these possibilities over others. The plaintiff admits it is his burden to allege plausibly on the face of the complaint that NBK's redemptions came from BLMIS. He has not done so and his own allegations undermine that conclusions.[6]

The plaintiff asserts that his claim is "not rendered implausible simply because the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings exceed the amount of Sentry's initial transfers from BLMIS." Opp. Mem. at 9. That is a clever effort to switch the burden and is also wrong for the reasons already discussed. As to the burden, the statement assumes incorrectly that the plaintiffs has made a plausible showing and that the defendant has the burden to show it is implausible. That is not the law; the plaintiff must show, and has not shown, the plausibility and reasonableness of his preferred inference among the three. Second, properly phased, the question could be rephrased to ask if the plaintiff has shown

---

[5] The plaintiff also argues that it "is not the Trustee's pleading burden" to "'link what BLMIS paid Fairfield to what Fairfield paid NBK,'" Opp. Mem. at 9-10. He cites tracing, dollar-for-dollar, and other irrelevant decisions, which are beside the point. As Shapiro and Angell demonstrate, tying the BLMIS payments to the NBK receipts is a basic obligation of the plaintiff. He can confuse the issue but not avoid the burden to plead plausibly and factually that what NBK received came from BLMIS and not another source.

[6] It has been suggested that allegation in the Fairfield Sentry Insider complaint makes the connection because it alleges that, in 1990, Fairfield Sentry told investors in an offering memorandum that 95% of Fairfield's assets were required to be invested in BLMIS, 09-1239, ECF Doc. 286, ¶ 89, and later private placement memoranda said BLMIS was sub-custodian of 95% of Fairfield's assets. As to the former, alleging in one document that another document said something does not constitute a factual allegation that what was said was true or actually occurred. Alleging that a newspaper headline said "Dewey Beats Truman" is not a factual allegation that Dewey did. As to the latter, the plaintiff and everyone else know that BLMIS did not make trades and therefore was not the custodian of any Fairfield assets. That is the reason for this massive litigation. Even if acting as a sub-custodian could be tied to redemptions (which it cannot), the references to these assertions are not probative.

6

his claim to be plausible when he has alleged no reason why NBK's $19 million of redemptions could not just as easily have come from the $2 billion he alleges Fairfield Sentry disbursed as from the $3 billion it allegedly received from BLMIS.

A claw-back defendant's receipt of customer property is the most central legal element the plaintiff must allege. If not properly alleged, the case may not proceed. NBK does not say the plaintiff may not try to cure this fatal defect, although the fact that fourteen years of investigation into where BLMIS' and Fairfield Sentry's money came from and went before he filed the NBK Complaint on July 11, 2022 makes that unlikely. But the current NBK Complaint cannot stand.

## II. The NBK Complaint Does Not Properly Allege the Required Element of Avoidability

Another essential element of the plaintiff's entitlement to relief is adequate allegations that a transfer is avoidable. The plaintiff says he has alleged avoidability by incorporating the second amended complaint in his Fairfield Sentry Insider case, 09-1239, ECF Doc. 286, into his NBK Complaint. 11-2554, ECF Doc. 105 at ¶ 113; *see* Opp. Mem. at 12. Even if his incorporation satisfies Federal Rule 10(c), it still violates Federal Rules 8(a) and 8(d).

Rule 8(a) requires a "short and plain" complaint. Rule 8(d) requires "[e]ach allegation [to be] be simple, concise, and direct." The plaintiff says he has limited his incorporation to a mere 247 paragraphs of the 408 paragraphs of the Fairfield Insider complaint. Opp. Mem. 13-14. But that is untrue because he actually alleges all 408 paragraphs and 23 exhibits. NBK Complaint ¶ 113 states that it "incorporates by reference <u>the allegations</u> contained in the [Fairfield SAC] as if fully set forth herein, <u>including but not limited to</u> paragraphs 1-10, 79-313, 315-16." (Emphasis added.) No one can seriously assert that the post-incorporation complaint is "short and plain" or "simple, concise, and direct."

NBK has cited authorities directly on point that reject incorporation of entire complaints when the incorporation results in a violation of Federal Rules 8(a) and (d). NBK Opening

7

Memorandum at 11-14. The plaintiff actually relies on one of those authorities, which the court has repeatedly cited with approval. That decision makes the exact point NBK is making. In *In re Geiger*, 446 B.R. 670 (E.D. Pa. 2010), Judge Fitzsimon allowed a whole complaint to be incorporated under Federal Rule 10(c). The plaintiff quotes a few words from that part of her opinion. But the plaintiff does not cite, quote, or advert to the very next section of her opinion, titled "The Complaint Does not Comply with Rule 8. Judge Fitzsimon dismissed the post-incorporation complaint "find[ing] that the pleading does not meet Rule 8's requirements that a pleading contain a 'short and plain statement of the claim showing that the pleader is entitled to relief' and that '[e]ach allegation must be simple, concise, and direct.' Fed.R.Civ.P. 8(a)(2), (d)(1)." Judge Fitzsimon's opinion could not be more on-point.

The plaintiff says NBK is not prejudiced by the prolix, complicated post-incorporation NBK Complaint because it "can admit the substance of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny." That does not solve any problem for NBK or the court. The 408 (or 247) paragraphs are not directed at and do not deal with NBK. For NBK to say it lacks information to admit or deny them does not advance the action. Much of the incorporated Fairfield Securities Insider complaint do not relate to avoidability and that could expand pretrial discovery to explore what the plaintiff can and cannot and may and may not try to establish. It is not the defendant's burden to pare down the NBK Complaint. The Federal Rules assign that burden to the plaintiff and he has not met it.

### III. NBK Reserves its Safe Harbor Defenses

In light of Judge Rakoff's November 3, 2022, decision denying interlocutory review of the court's decisions on the Bankruptcy Code § 546(e) safe harbor defense, NBK will reserve its defense and not press this ground for dismissal at this time.

8

## CONCLUSION

NBK respectfully asks this court to dismiss the NBK Complaint.[*]

Dated: New York, NY
December 14, 2022

CIRILLO LAW OFFICE

/s/ Richard A. Cirillo

———————————————
Richard A. Cirillo
246 East 33rd Street -- # 1
New York, NY 10016
T: 917-541-6778
E: richard@cirillo-law.com

---

[*] NBNK does not consent to the court's entry of final judgment.

9