<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 11-02922 (CGM) |
| v. | |
| Bank Julius Baer & Co. Ltd., | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019
By:    Kim M. Longo, Esq. (via Zoom)


*Counsel for Bank Julius Baer & Co. Ltd.*

MCKOOL SMITH, P.C.
395 9th Avenue, 50th Floor
New York, New York 10001
By:    Eric B. Halper, Esq. (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Bank Julius Baer & Co. Ltd. ("BJB"), motion to

dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Defendant seeks dismissal for lack of personal

jurisdiction; for failure to state a claim due to the safe harbor provision of the Bankruptcy Code;

for failure to allege actual fraud through the Trustee's reliance on the Ponzi scheme presumption;

for improperly using adoption by reference; for failure to allege that they received BLMIS

customer property; and because new allegations do not properly "relate back" to the initial

pleading.  Defendant also asserts that its affirmative defenses of "value," "good faith," and

"without knowledge of voidability" are clear from the four corners of the complaint.  For the

reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by the Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 8, 2011. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint ("Complaint") on April 15, 2022. Am. Compl., ECF No. 110). Via the Complaint, "[t]he Trustee seeks to recover at least $64,576,233 in subsequent transfers of BLMIS customer property (the "Transfers") that BJB received by redeeming shares it owned in BLMIS feeder funds Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), and Fairfield Lambda Limited ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "FGG Feeder Funds"). (*Id.* ¶ 2). BJB is a Swiss private bank, organized as a limited company, which offers asset and wealth management, financial planning, and portfolio management services. (*Id.* ¶ 3).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02922-cgm.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion. (*Id.* ¶ 38). In 2011, the Trustee settled with Fairfield

Sentry. (*Id.* ¶ 43). As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate. The Trustee then commenced a number of adversary

proceedings against subsequent transferees, like Defendant, to recover the approximately $3

billion in missing customer property.

In its motion to dismiss, BJB argues that this Court lacks personal jurisdiction over it, the

Trustee has failed to state a claim due to the safe harbor provision of the Bankruptcy Code; has

failed to allege actual fraud through the Trustee's reliance on the Ponzi scheme presumption; has

improperly used adoption by reference; has failed to allege that they received BLMIS customer

property; and that the Trustee's new allegations in the amended complaint do not properly "relate

back" to the initial pleading. Defendant also asserts that its affirmative defenses of "value,"

"good faith," and "without knowledge of voidability" are clear from the four corners of the

complaint. The Trustee opposes the motion to dismiss. The Court held a hearing to consider

this motion on November 30, 2022. (Hr'g Tr., ECF No. 133).

## Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction. In the Complaint,

the Trustee argues that Defendant purposefully availed itself of the laws of the United States and

New York. (Am. Compl. ¶¶ 9).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that "BJB knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS, via the FGG Feeder Funds."  (Compl. ¶ 16).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery).  That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which the defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

BJB argues that the Trustee has not alleged that they have sufficient contacts with New York. The Complaint is replete with BJB's contacts with New York, which takes the Trustee over four pages to summarize. (Am. Compl. ¶¶ 9–23). In the Complaint, the Trustee alleges that "BJB knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS, via the FGG Feeder Funds." (Am. Compl. ¶ 16). Fairfield Sigma and Fairfield Lambda invested all of their assets in Fairfield Sentry, and Fairfield Sentry, in turn, invested all or substantially all of its assets into the BLMIS Ponzi scheme. (*Id.* ¶¶ 86, 90); (09-01239 Compl. ¶ 228) ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 72, of this Complaint). Thus, by knowing investing in FGG Feeder Funds, BJB purposefully invested in BLMIS.

The Trustee has alleged that "BJB's and FGG's relationship was primarily established and maintained in New York by New York-based BJB and FGG personnel." (Am. Compl. ¶ 13). "BJB conducted a significant portion of its FGG Feeder Funds business out of its New York branch, through personnel employed by BJB and/or its co-located affiliate, Julius Baer

Investment Management LLC ("JBIM")[2], as agent for BJB. (Am. Compl. ¶ 11). BJB, or its agent, "met and communicated with New York-based FGG personnel in New York in connection with BJB's FGG Feeder Fund investments, including at least five meetings during the time period 1999 through 2003 with FGG executives Jeffrey Tucker, Philip Toub, Cornelis Boele, Harold Greisman, and/or Robert Blum." (*Id.* ¶12). It is also alleged that BJB, or its agent, met directly with Bernard L. Madoff ("Madoff") at BLMIS' New York office on at least three occasions from 1998 through 2003, in connection with BJB's BLMIS feeder fund investments. (*Id.* ¶ 12). BJB's New York-based personnel were responsible for approving BJB's investment in the FGG Feeder Funds. (*Id.*). Additionally, "foreign-based employees of BJB met and corresponded with New York-based FGG personnel regarding BJB's investments in the FGG Feeder Funds." (*Id.* ¶ 14).

BJB relinquished control over investment decisions to Madoff. (¶ 15). BJB voluntarily executed a subscription agreement each time it invested in an FGG Feeder Fund. (¶ 17). In these agreements, BJB affirmed that it received and read the fund's information memorandum or private placement memorandum ("PPM"). *Id.* Based on these documents, BJB knew the following facts indicating that it was transacting in New York:

- Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS, and Fairfield Sigma and Fairfield Lambda invested 100% of their assets with Fairfield Sentry;

- BLMIS performed all investment management duties for these assets;

- BLMIS was registered with the U.S. Securities and Exchange Commission (the "SEC");

---

[2] JBIM is now known as Artio Global Management LLC.

• BLMIS was the executing broker for Fairfield Sentry's investments, and purportedly operated and executed the split-strike conversion strategy (the "SSC Strategy") on the fund's behalf;

• BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury securities ("Treasury Bills"), and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York;

• Fairfield Sentry's investment documents provided that subscription payments be wired in U.S. dollars to New York;

• BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and

• BLMIS was "essential to the continued operation of" Fairfield Sentry. (*Id.*).

"The Fairfield Sentry subscription agreements provided that all money for the purchase of Fairfield Sentry shares be directed to a New York correspondent bank account." (*Id.* ¶ 18). BJB used a New York bank account to receive the redemption payments from Fairfield Sentry at issue here. (*Id.* ¶ 20). BJB designated a New York bank account located at JP Morgan Chase, which it used to receive "dozens" of transfers. (*Id.*). BJB also used an HSBC Bank USA correspondent account in New York via Citco Global Custody NV, as its agent, to receive a number of additional transfers. (*Id.*). Where a defendant chooses to use a United States bank account to received funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the

proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012)("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

BJB being sued in a New York court was foreseeable. "In its FGG Feeder Funds subscription agreements, BJB submitted to New York jurisdiction, venue, service of process, and law. Specifically, BJB (i) 'irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding,' (ii) 'agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York,' (iii) 'consent[ed] to the service of process out of any New York court,' and (iv) agreed that '[t]his Agreement shall be governed and enforced in accordance with the laws of New York . . . .'" (*Id.* ¶ 21).

BJB also entered into at least one distribution and fee-sharing agreement with Fairfield Greenwich Limited ("FG Limited"), an FGG management entity, which agreement compensated BJB for investments it placed in Fairfield Sentry. Pursuant to this agreement, BJB received quarterly fee payments (commonly known as retrocession fees) from FG Limited from at least

2005-2007.[3]  (*Id.* ¶ 22).  FG Limited was registered to do business in New York and listed its

principal executive office as that of FGG in New York. FG Limited's fee-sharing agreements

with respect to FGG funds typically provided that the agreement is governed by New York law.

The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d.

Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285

(2014).  "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree

in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v.

Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012).  Defendant's

alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the Defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear

Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

---

[3] BJB allegedly entered into more fee-sharing agreements with FGG in connection with FGG funds Chester Global Strategy Fund Limited and Irongate Global Strategy Fund Limited.

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against BJB for monies it received from the FGG Feeder Funds.  (Am. Compl. ¶¶ 54–58).  These allegations are directly related to its investment activities with the FGG Feeder Funds and BLMIS.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted).  Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

The exercise of jurisdiction is reasonable. BJB is not burdened by this litigation. Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the jurisdiction of New York courts' when they signed subscription agreements with the FGG Feeder Funds.[4] (Am. Compl. ¶ 5). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendant used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer that received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee

---

[4] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds

subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S.

at 679. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Defendant by Fairfield

Sentry.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue.  *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Id.*

However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Am. Compl. ¶ 35). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

The Trustee has adopted by reference allegations contained in his complaint against

Fairfield Sentry. (Am. Compl. ¶ 76). "Adoption by reference is governed by Rule 10 of the

Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a

pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or

motion." The district court has already found that adoption by reference of the entire Fairfield

Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. §

550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered

Financial Services incorporates by reference the complaints against Kingate and Fairfield,

including the allegations concerning the avoidability of the initial transfers, and further alleges

the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff

Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).")

(cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the

"same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this

SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar*

*Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary

proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec.*

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv.*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019),

(citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine

applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir.

2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL

1040448, at \*4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy

case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

\*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. BJB, like many subsequent transfer defendants in this SIPA

proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA

liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF

No. 89 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not

prejudice BJB. If the Court were to dismiss this Complaint and permit the Trustee to amend his

Complaint to include all of the allegations that are already contained in the Fairfield Complaint,

all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See*

*Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM),

2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on

making motions to amend pleadings and permits the amending of pleadings "when justice so

requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

Defendant argues that the wholesale adoption of the Fairfield Complaint violates Federal Rule of Civil Procedure 8, which requires a "short and plain statement of [a] claim." Fed. R. Civ. P. 8(a)(2). The Court disagrees. Defendant has been following this and the Fairfield Sentry chapter 15 case and has been familiar with the allegations contained in the Fairfield Complaint for over a decade. Indeed, Defendant has been privy to information that this Court has not seen. Fairfield Sentry has a complicated[5] corporate structure with various insiders many of whom are alleged to have had knowledge of BLMIS' fraud. The Trustee has to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable. This Court has reviewed the Fairfield Complaint, in detail, on numerous occasions and there is not much of that document that could be omitted. Insisting that the Trustee re-allege all of the allegations contained in the Fairfield Complaint is an unnecessary, dilatory tactic by the Defendant.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

BJB has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial

---

[5] In a related adversary proceeding, *Picard v. Fairfield Greenwich Group, et al.*, 10-03800-cgm, the Court asked the parties to provide it with a chart showing the relationships of the Fairfield entities. The Court received three different charts. *See* Feb. 12, 2021 Hr' Tr. at 51:9-10, *Picard v. Fairfield Greenwich Grp., et al.*, 10-03800-cgm, ECF No. 158 ("I ask you all for charts and ended up with three.").

participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of the initial transfer. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff

Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe

harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC*

*v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013

WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In*

*re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n

circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e)

d[oes] not apply as a matter of its express terms.").

   This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").

   This Court has already determined that the Fairfield Complaint[6] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

---

[6] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders. *Fairfield III* is inapplicable in this case for two reasons. First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on this issue. Second, the issue in *Fairfield III* is not comparable. The Court found that the plaintiffs had not met their pleading burden and were not permitted to amend their complaints. *Fairfield III*, 2020 WL 7345988, at *9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint *__alleges__* that the [Fairfield] Funds were duped, believing that their BLMIS investments were worth what the BLMIS monthly statements

showed. The Funds were the transferors and if they were duped, they could not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they believed to be accurate.") (emphasis added). In *Fairfield III*, Fairfield Sentry was the initial transferor, not the initial transferee as it is here. And the Court did not rule on whether the "knowledge exception" to the safe harbor applied. Here, the Trustee has sufficiently plead Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with BJB (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the pleadings. If such a fact-specific determination is needed, the Court will make it with the benefit of a "full factual record." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

BJB argues that the safe harbor governs its relationship with Fairfield Sentry. The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between Fairfield Sentry/the FGG Feeder Funds and BJB on account of the securities contracts between Fairfield Sentry and BJB.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

**Whether BLMIS's Initial Transfers Are Avoidable as Intentionally Fraudulent
Conveyances?**

BJB argues that the Trustee's subsequent transfer claims fail without the Ponzi scheme

presumption since the Trustee is required to plead the avoidability of the initial transfer in order

to avoid any subsequent transfers. *See* § 550(a) (requiring that the initial transfer be avoidable

before a subsequent transfer can be recovered.  In relevant part, § 548(a)(1)(A) allows the

Trustee to avoid any transfer made within two years before the filing date of this SIPA action, if

BLMIS made the transfer with "actual intent to hinder, delay, or defraud."  11 U.S.C. §

548(a)(1)(A).  BJB argues that BLMIS' initial transfers to Fairfield Sentry, made within two

years of the SIPA filing date, are not avoidable because the Trustee has failed to plead BLMIS'

actual fraudulent intent with respect to each transfer and that the Ponzi scheme presumption

cannot be used to plead BLMIS' actual fraudulent intent. Memo. L. at 22, ECF No. 115.  If BJB

can demonstrate that the initial transfers from BLMIS to Fairfield Sentry and Prime Fund are not

avoidable, the Trustee would not be permitted to avoid the subsequent transfers of those funds.

Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's

burden of pleading actual fraudulent intent is satisfied.  (Am. Compl. ¶ 42– 67); *see also* ¶ 29 (

(Madoff pled guilty to operating a Ponzi scheme through BLMIS).  The "Ponzi scheme

presumption" allows courts to presume actual intent to defraud on part of the operator of the

Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a

Ponzi scheme is sufficient to establish actual intent to defraud.").  In this case, the Ponzi scheme

presumption allows the Court to presume that BLMIS made the initial transfers with actual intent

to defraud because Madoff has admitted to operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law

because transfers made in the course of a Ponzi scheme could have been made for no purpose

other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd* (*In re

Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007)*.  The "Ponzi scheme presumption"

makes perfect sense in cases such as this one.  BLMIS had no legitimate assets and therefore

every transfer made by BLMIS was made with actual intent to defraud in order to ensure that

Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS'

actual fraudulent intent is presumed via the Ponzi scheme presumption.  (Am. Compl. ¶¶ 42–

67).   Intent to defraud is established as debtor operated a Ponzi scheme*. Picard v. Cohen*, Adv.

Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing

*Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi

scheme presumption pursuant to which all transfers are deemed to have been made with actual

fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011)

("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law

by virtue of the 'Ponzi scheme presumption'").  That BLMIS operated as a Ponzi scheme is

well-established and the Court relies on earlier findings of same and holds that the Trustee has

met its burden of pleading BLMIS' actual intent on this issue*. See Picard v. Legacy Capital

Ltd.*, 603 B.R. 682, 688-93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a

Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to

prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

BJB argues that this Court should follow Judge Menashi's concurrence in *Picard v. Citibank, N.A., et al. (In re BLMIS)*, 12 F.4th 171, 200–04 (2d Cir. 2021), in which he questions the use of the Ponzi scheme presumption and fraudulent transfer law in cases such as this. This Court has re-read Judge Menashi's concurrence and finds his concurrent opinion unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent. Without the presumption, BJB would not be "off-the-hook" for the two-year transfers because the Trustee would meet (and, in this case, has met) his pleading burden by pleading the "badges of fraud" with respect to BLMIS.

> Badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry.

*See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). The "concealment of facts and false pretenses by the transferor" is also a circumstance from which courts have inferred intent to defraud. *Id.* at 1582 (quoting 4 COLLIER ON BANKRUPTCY ¶ 548.02[5] at 548–34 to 38 (L. King 15th ed. 1983)). The existence of several badges can "constitute conclusive evidence of an actual intent to defraud." *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, No. 11-md-2296 (RJS), 2017 WL 82391, at *13 (S.D.N.Y. Jan.

6, 2017) (citation omitted); *Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019).

BLMIS' actual fraudulent intent is well-plead in detail in the Complaint.  (Am. Compl. ¶¶ 36–67).  The Court need not infer intent to defraud because Madoff has admitted that he had actual intent to defraud when he admitted under oath that he operated a Ponzi scheme.  *Id.* ¶ 29. In addition to this, the Trustee has alleged that "BLMIS's website omitted the investment advisory business entirely.  BLMIS did not register as an investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register."  *Id.* ¶ 39.  For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its investment advisory business.  *Id.* ¶ 40.  BLMIS lied to the SEC in reports regarding the number of accounts it has and "grossly understated" the amount of assets under management. *Id.* ¶ 41.  BLMIS had no legitimate business operations and produced no profits or earnings.  *Id.* ¶ 42. "Madoff was assisted by several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud."  *Id.* ¶ 42. BLMIS used its fraudulent investment advisory business to prop up its proprietary trading business, which also incurred significant losses.  *Id.* ¶ 43.  "BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments."  *Id.* ¶ 50.  "There are no records to substantiate Madoff's sale of call options or purchase of put options in any amount, much less in billions of notional dollars."  *Id.* ¶ 55.  "Madoff could not be using the SSC Strategy because his returns drastically outperformed the market. BLMIS showed only

16 months of negative returns over the course of its existence compared to 82 months of negative returns in the S&P 100 Index over the same time period. Not only did BLMIS post gains that exceeded (at times, significantly) the S&P 100 Index's performance, it would also regularly show gains when the S&P 100 Index was down (at times significantly). Such results were impossible if BLMIS had actually been implementing the SSC Strategy." *Id.* ¶ 57.  "There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC Strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities." *Id.* ¶ 63.  Though unnecessary, the Trustee has sufficiently pleaded the badges of fraud.

The Trustee has successfully pleaded badges 2, 3, 4, 5, and 6.  The Trustee need not plead all six badges of fraud to meet his burden of pleading actual fraudulent intent.  *In re May*, 12 B.R. 618, 627 (N.D. Fla. 1980) ("Such indicators or badges, when established either singularly, but more often in combination, may justify the inference of the requisite intent to hinder, delay or defraud creditors.").

**BLMIS Customer Property**

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, the subsequent transfers [from Fairfield Sentry] to BJB total at least $52,949,944." (Am. Compl. ¶ 79). "Fairfield Sigma transferred at least $11,262,340 to BJB."  (*Id.* ¶ 83).  "Fairfield Lambda transferred at least $363,949 to BJB." (*Id.* ¶ 88).  Exhibits C, E, and G to the Complaint provide BJB with the exact date and amount of each transfer the Trustee is seeking to recover.  These exhibits provide BJB with the "who, when, and how much" of each transfer.  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

BJB argues that this Court needs to consider all of the subsequent transfer cases pending before this Court in order to determine whether allegations in this Complaint are feasible. It is alleged that Fairfield Sentry received only $3 billion in transfers from BLMIS. Yet, if one were to total all of the alleged subsequent transfers across all of these BLMIS adversary proceedings, the Trustee has alleged that Fairfield Sentry paid out approximately $5 billion. Defendant has asserted that the money they received from Fairfield Sentry is untainted money that never was invested with BLMIS simply because the Trustee has filed complaints against other defendants who may have taken the money first.

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that Defendant received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the

Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see*

*also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for

BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also

the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did

not have any assets that were not customer property. In this case, the Trustee is not seeking to

collect $5 billion from BJB. He is seeking approximately $64,576,233.00, which easily could

from the $3 billion Fairfield received from BLMIS. If the Court were to accept Defendant's

argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent

transfer claims in all of the adversary proceedings since the Court has no idea which transfers

came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent

transfers actions to determine which transfers were made from the $3 billion of BLMIS customer

property and which were not. The Court is simply not willing to have such a trial at this stage of

litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendant received customer property because Fairfield

Sentry did not have other property to give. The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

BJB argues that Fairfield Sentry was running its own Ponzi scheme—"Fairfield often

funded redemptions with monies received from other Fairfield investors, i.e., money that BLMIS

never held at all and which, by definition, could not have been customer property." Memo. L. at

32, ECF No. 115. This is not the first time that the Court has heard such allegations from

subsequent transfer defendants—but these allegations are not contained in the Complaint and so, they are not an appropriate basis for dismissal on a Rule 12(b)(6) motion. The Court will determine if this money came from BLMIS or from some other source at a later date.

**Relation Back**

The Trustee's Complaint alleges $27,339,136 in new subsequent transfers: $17,691,330 from Fairfield Sentry to BJB and $9,647,806 from Fairfield Sentry to Sigma to BJB. BJB argues that the Trustee's new allegations of subsequent transfers do not "relate back" to the initial pleading because each transaction is a separate and independent from the others. (Hr'g Tr. 10:6–7, ECF No. 133). As such, BJB argues that the new allegations are time barred.

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Rule 15 "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)). Rule 15(c) should be "liberally construed." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983). This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the

opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

New fraudulent transfer claims relate back to the original pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as the originally alleged transfers. *Peter Madoff*, 468 B.R. at 633 (citing *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)). When examining "conduct" under Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint," and whether "the original complaint gave sufficient notice to the defendants that the Trustee may sue for additional transfers that were part of the same course of conduct." *Hill v. Oria (In re Juliet Homes, LP)*, Bankr. No. 07-36424, Adv. No. 09-03429, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted) (cleaned up).

The two additional transfers relate back to the original complaint. The original complaint states:

> With this Complaint, the Trustee seeks to recover approximately $37,314,021 in subsequent transfers of Customer Property made to Defendant BJB. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is a British Virgin Islands ("BVI") company that is in liquidation in the BVI. Fairfield Sentry had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts. Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda"), which each invested 100% of their assets in Fairfield Sentry.

(Compl. ¶ 2, ECF No. 1.). It goes on to state: "The Trustee's investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial

Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek

recovery of such additional transfers." (*Id.* ¶ 41).

As this Court stated about another Defendant in a similar litigation, "Defendant[] had

over 10 years notice that they would be asked to account for these transfers." *Picard. v. Fairfield

Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at

*13 (Bankr. S.D.N.Y. Aug. 6, 2021). And this Court has been clear that

> the Trustee is an outsider to these transactions and will need discovery to
> identify the specific subsequent transfers by date, amount and the manner
> in which they were effected. Whether they additionally received
> Subsequent Transfers of BLMIS funds from one another is a question to
> which they, and they alone, have the requisite information to respond.

*Id.* (citing *Picard v. Chais* (*In re BLMIS*), 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011). BJB was

adequately appraised that the Trustee intended to collect any additional subsequent transfers that

were uncovered. The new transfers "relate back" and are properly brought.

**Affirmative Defenses**

    *i.  For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received. The Complaint contains no mention of BJB's exchanging shares

for consideration. (Compl. ¶¶ 39–45). Therefore, the "value" defense is not asserted on the face

of the Complaint.

Defendant argues that the payments it received from Fairfield Sentry were given in exchange for the redemption of shares in the Fairfield Sentry fund. If Defendant knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust."). It has not yet been determined whether Defendant knew if the shares it redeemed from Fairfield Sentry had value.

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

### ii. *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble. 2 Bankruptcy Desk Guide § 19:105. The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] Citibank[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard

requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes

into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*,

Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can

only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal

quotation omitted).

The burden of proving good faith falls squarely on Defendant and this Court cannot make

a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

Discovery is required on this issue.

### iii. *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendant's motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what BJB

subjectively knew; "whether these facts put [BJB] on inquiry notice of the fraudulent purpose

behind a transaction—that is, whether the facts the transferee knew would have led a reasonable

person in the [BJB]'s position to conduct further inquiry into a debtor-transferor's possible fraud;

and whether "diligent inquiry by [BJB] would have discovered the fraudulent purpose of the

transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

### Conclusion

For the foregoing reasons, BJB's motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: December 15, 2022**
**Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**