| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | Hearing Date: March 15, 2023 at 10:00 a.m. |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>                Plaintiff,<br><br>   v.<br><br>NOMURA INTERNATIONAL PLC,<br><br>                Defendant. | Adv. Pro. No. 11-02759 (CGM) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>NOMURA INTERNATIONAL PLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT .....................................................................................................................................2

I.  THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION
    OVER NOMURA INTERNATIONAL PLC ...................................................................2

    A.  NIP Was Facilitating Client Investments in Harley and Did Not Benefit
        from the Returns on Investments Offered by BLMIS, Distinguishing This
        Case from the *BLI* and *BNP* Precedents ................................................................2

    B.  NIP's Use of Correspondent and Other Bank Accounts Was Not
        Sufficiently Purposeful to Establish Personal Jurisdiction ......................................4

    C.  Generic Allegations of Unspecified Contacts with FAM Cannot Support
        Personal Jurisdiction Under Controlling Precedent .................................................6

    D.  The Subscription Agreement Shows That NIP Never Agreed or Expected
        to Litigate Issues Related to Redemptions in the U.S. .............................................7

II. THE EXERCISE OF JURISDICTION WOULD NOT BE REASONABLE ....................8

III. THE TRUSTEE SHOULD BE DENIED LEAVE TO AMEND AND DOES NOT
     NEED JURISDICTIONAL DISCOVERY .......................................................................9

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Al Rushaid v. Pictet & Cie*, 28 N.Y.S.3d at 327, 328 (2016).......................................................5, 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779 (2d Cir. 1999)...............6

*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ............................5

*Hau Yin To v. HSBC Holdings*, PLC, No. 15-CV-3590-LTS-SN, 2017 WL 816136
 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F App'x 66 (2d Cir. 2017).................................................5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ........................6

*McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377 (1967) ....................................................7

*Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167, 190-92 (Bankr. S.D.N.Y.
 2018) ......................................................................................................................................3, 4

*Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y.
 2012) ..................................................................................................................................2, 3, 4

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333
 (2d Cir. 2018).............................................................................................................................7

*In re Trib. Co. Fraudulent Conveyance Litig.*, 11-MD-2296 (RJS), 2017 WL 82391
 (S.D.N.Y. Jan. 6, 2017), *aff'd,* 10 F.4th 147 (2d Cir. 2021)  .....................................................9

*Vasquez v. Hong Kong and Shanghai Banking Corp.*, 477 F. Supp. 3d (S.D.N.Y. 2020) ..............5

*Walden v. Fiore*, 571 U.S. 277 (2014)............................................................................................3

**Other Authorities**

Memorandum Decision Denying Defendant's Motion to Dismiss, Adv. Proc. No. 12-
 1205, Case No. 08-1789, Docket No. 21,729 ............................................................................3

Memorandum of Law in Support of Nomura International PLC's Motion to Dismiss .......1, 4, 8, 9

Second Amended Complaint ..........................................................................................................6

Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss............... *passim*

Defendant Nomura International PLC ("NIP") respectfully submits this reply brief in response to the Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") and in further support of its Memorandum of Law in Support of Nomura International PLC's Motion to Dismiss ("Opening Brief").[1]

## PRELIMINARY STATEMENT

The present motion presents a fact pattern unlike most or all of those previously considered by this Court in similar cases.  As explained in the Opening Brief, and the accompanying Saunders Declaration, NIP was not investing in Harley with a view to securing investment returns that mimicked BLMIS returns for its own account.  Rather, NIP was a London-based financial institution that was effectively facilitating investments on behalf of clients who sought to make returns that would track those of Harley and BLMIS.  In exchange for facilitating such investments on behalf of clients, NIP earned fees and other similar fixed compensation, rather than investment returns based on anticipated investments in the U.S. securities markets or from the U.S.-based BLMIS.  That distinction is critical—because most or all of this Court's prior decisions on similar jurisdictional motions held that the key fact supporting jurisdiction was that the defendants in those cases were knowingly seeking investment returns from BLMIS.  But that simply is not true with respect to NIP, and, critically, the Trustee's Opposition shows that the Trustee does not contest that NIP's proffered facts are true, nor does the Trustee argue they are inconsistent with his factual allegations.  (*See*, I.A. *infra.*).

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Opening Brief.

Moreover, none of the other facts or arguments asserted by the Trustee can support jurisdiction. NIP's use of bank accounts was incidental, rather than instrumental, to the claims at issue in this case. (*See*, I.B. *infra.*). Nor can the Trustee's utterly generic allegations of unspecified meetings and communications support jurisdiction, because the details necessary to assess the relevance of those contacts have not been pled. (*See*, I.C. *infra.*). Finally, the mere fact that NIP agreed to arbitrate with Harley, says nothing meaningful about whether NIP also fairly expected to litigate with an entirely different party (*i.e.*, the Trustee), in the United States. (*See*, I.D. *infra.*).

## ARGUMENT

### I.  THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER NOMURA INTERNATIONAL PLC

In his Opposition, the Trustee argues that four alleged "purposeful contacts with New York" establish personal jurisdiction over NIP, focusing on NIP's alleged investments in BLMIS, its use of U.S. bank accounts, generic allegations of communications with people in New York, and an arbitration clause from a contract with Harley. Opposition at 9-10. None of these alleged contacts, either individually, or taken as a whole, support the exercise of personal jurisdiction in this case.

### A.  NIP Was Facilitating Client Investments in Harley and Did Not Benefit from the Returns on Investments Offered by BLMIS, Distinguishing This Case from the *BLI* and *BNP* Precedents

The Trustee seeks to cast NIP as an entity indistinguishable from other defendants in cases already adjudicated by this Court, and as being "identically situated to the defendant in *BLI* with respect to the fundamental purpose of its investment in Harley." Opposition at 11, citing *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"). But this is an unpersuasive contention, because, as the Trustee concedes, NIP was not

2

investing to secure investment returns from Harley or BLMIS itself, but was in effect investing to facilitate such returns on behalf of other parties that are not defendants here. This critical admission of facts first raised by NIP in a declaration filed in support of NIP's Opening Brief plainly demonstrates that the present fact pattern is entirely different from the others already addressed by this Court, and different from the fact pattern addressed in *BLI* and *BNP*. In those entirely distinguishable cases, the core fact that was held to support jurisdiction was the fact that the defendants were seeking to profit directly from BLMIS and its investments in the U.S. securities markets. *See*, *e.g.*, Memorandum Decision Denying Defendant's Motion to Dismiss, Adv. Proc. No. 12-1205, Case No. 08-1789, Docket No. 21,729, at 8-9 (quoting *BLI*) ("Multi-Strategy Decision") (holding that jurisdiction was supported by defendants' "investment activities" and their intention to "reap the benefits" from investing in the "Madoff money orchard.").[2] As the Trustee himself puts it, the defendants in these other cases "purposefully targeted the New York securities market." Opposition at 11. But NIP did no such thing as the Trustee appears to admit. Indeed, as the Trustee further acknowledges, NIP was not enjoying returns from BLMIS or the U.S. securities market, but rather, was generating "fixed fees or other income" from overseas counterparties with whom the London-based NIP was entering into foreign contracts. Opposition at 12.

---

[2] Notably, *BNP* also appears to have recognized, likely due to the intervening Supreme Court decision *Walden v. Fiore*, 571 U.S. 277 (2014), that additional jurisdictional contacts were also required in order to adequately ground specific jurisdiction. Thus, Judge Bernstein's finding of personal jurisdiction in *BNP* was premised on several strong jurisdictional contacts, including the presence of numerous employees and offices in New York, admissions by defendants that they were based in New York, and the conclusion that the redemptions "arose, for the most part" from those New York contacts and employees. *BNP* at *190-91. Neither the quality or quantity of NIP's jurisdictional contacts are remotely similar to the facts in *BNP*, as discussed below.

3

In light of these admissions, it is unsurprising that the Trustee cannot point to any specific holding or analysis in *BLI, BNP*, or in any other precedent (whether from this Court or any other), that addresses this specific fact pattern. Instead of invoking any applicable authority, the Trustee is left asserting that "[t]he holding in *BLI* does not exclude investors like Nomura who sought to profit from its BLMIS feeder fund investments by selling others synthetic exposure to BLMIS's SSC Strategy." Opposition at 12. But this misses the point: because *BLI* did not address this fact pattern at all, *BLI* is not controlling here, and the Trustee must instead point to some other adequate jurisdictional contact, given that NIP was not seeking to secure investment returns from the U.S. securities markets or from BLMIS (whether directly or indirectly).

      B.      **NIP's Use of Correspondent and Other Bank Accounts Was Not Sufficiently Purposeful to Establish Personal Jurisdiction**

The parties dispute over the jurisdictional relevance of NIP's alleged use of U.S. based bank accounts to make subscription payments to the foreign-based Harley, or to receive redemption payments, comes down largely to the question of the whether the choice was merely incidental, in which case the banking activity does not support jurisdiction, or whether it was adequately purposeful, in which case it might. *See*, *e.g.*, Opening Brief at 9-11; Opposition at 16-20. The Trustee repeatedly rejects the notion that the choice to use U.S. accounts was incidental, arguing instead that the use of such accounts was a matter of NIP's "own volition" (Opposition at 17) and that NIP "voluntarily entered into" the relevant agreement (Opposition at 18). Indeed, the Trustee appears to believe jurisdiction is supported merely because NIP "could have opted to not invest with BLMIS through Harley." Opposition at 18. But this simply is not the relevant test for assessing whether the use of bank accounts is adequately purposeful, which generally turns on questions of whether the use of a bank account was instrumental to some

4

alleged wrong or whether the use of the U.S. accounts was peripheral to the wrongful conduct at the heart of the suit, which is plainly the case here.

For example, when assessing whether the use of bank accounts was deliberate enough to merit the assertion of jurisdiction, courts consider matters such as "the necessity" of the account "to the alleged scheme." *Vasquez v. Hong Kong and Shanghai Banking Corp.*, 477 F. Supp. 3d at 258 (S.D.N.Y. 2020). This is the opposite of the test proposed by the Trustee, because the relevant question is not whether a defendant could have elected not to engage in the at-issue transaction at all (which of course is always true), but instead, whether the underlying scheme or illegal activity was in some essential sense connected the specific bank accounts used. Thus, where use of a New York correspondent bank account was an "essential step" in and "integral" to the money laundering scheme in *Rushaid*, the court found the defendant bank's use of the account to be "volitional." *Al Rushaid v. Pictet & Cie*, 28 N.Y.S.3d at 327, 328 (2016). But in cases like this one, where the use of a specific account "does not appear to have been necessary to the Ponzi scheme's success," courts have not found use of the account to be purposeful. *Vasquez*, 477 F. Supp. 3d at 262 (citing *Hau Yin To v. HSBC Holdings*, PLC, No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F App'x 66 (2d Cir. 2017). ("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme.")). Simply put, the Trustee's proposed test is not supported by applicable authority, and his consistent reliance on cases that arise in contexts where it was the very use of the subject bank accounts that was the wrongful act at the center of the case, is entirely misplaced. *See, e.g.*, Opposition at 17, citing *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (finding jurisdiction over subsequent transferee based solely on defendant's use of New York accounts *to facilitate alleged fraud*) (emphasis added);

5

Opposition at 18, citing *Rushaid*, 28 N.Y.S. 3d at 322-29 (money laundering case in which use of U.S. bank accounts was at the heart of the alleged wrong) and *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (same).

### C. Generic Allegations of Unspecified Contacts with FAM Cannot Support Personal Jurisdiction Under Controlling Precedent

The Trustee also argues that this Court can assert personal jurisdiction over NIP because the Trustee has alleged that some unspecified NIP personnel allegedly traveled to New York, on some unspecified occasion, and had a conversation that allegedly had *something* to do with NIP's alleged investments in Harley, although the Trustee offers absolutely no details about what was discussed. Opposition 20-22; SAC 48-50. The Trustee similarly argues that jurisdiction can be based on equally generic allegations of some unspecified number of telephone calls and emails directed to FAM employees in New York, regardless of the fact that the nature of the alleged communications is not alleged. *Id*. No precedent from the Second Circuit, or the Southern District of New York, has ever supported the conclusion that entirely generic allegations of this type can support jurisdiction. In fact, as discussed below (and in the Opening Brief), the applicable authorities are clearly to the contrary.

For example, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999), the Second Circuit held that when assessing jurisdiction "courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." But this Court cannot possibly apply this test here, because the Trustee's allegations concerning the alleged meetings and communications are entirely devoid of any details or content that would render any assessment of "the totality of circumstances" possible.

The Trustee's only response is to argue that it is enough that he has alleged that the communications had something to do with NIP's alleged investments. Opposition 21-23. But

6

this is plainly an inadequate response, because courts routinely hold that it is the frequency, nature, and content of the alleged communications that drive the jurisdictional analysis. *See*, *e.g.*, *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 380, 382 (1967) (length and nature of the alleged communications were central to the analysis of their jurisdictional import); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170-71 (S.D.N.Y. 2015) (same), *aff'd*, 882 F.3d 333 (2d Cir. 2018).

Indeed, if the law were otherwise, the bar for asserting jurisdiction would be so low as to be meaningless. A single allegation of a single unspecified communication into New York would always be enough to support jurisdiction. There is no support for that view under applicable law.

### D. The Subscription Agreement Shows That NIP Never Agreed or Expected to Litigate Issues Related to Redemptions in the U.S.

The Trustee's final argument in support of personal jurisdiction relies on a contract that has nothing to do with the claims asserted in this action—a subscription agreement with Harley. Opposition at 23. The Trustee points out that this contract, which did not govern the redemptions that are at issue in this case, included an agreement to arbitrate with Harley in New York, and claims the contract evidences a "strong nexus with New York". *Id*. But the Trustee has ignored that the contract in question was with the wrong party (*i.e.*, with Harley, not the Trustee), dealt with a different type of dispute resolution (*i.e.*, arbitration, not litigation), and dealt with as a subject matter different from that at issue in this case (*i.e.*, subscriptions, not redemptions). The Trustee offers no authority or argument showing why these critical distinctions should be overlooked. In fact, the Trustee's argument gets things exactly backwards. When parties contractually agree to arbitrate, they are expressing an intention and desire to *avoid* dispute resolution through the courts. NIP signed a contract indicating a desire to avoid litigation

7

through the cumbersome rules and procedures that prevail in the U.S. courts. To treat that clear intention as an indication that NIP understood or agreed it might be compelled to litigate in the U.S. courts completely misconstrues the clear intention of the arbitration clause.

## II. THE EXERCISE OF JURISDICTION WOULD NOT BE REASONABLE

In its Opening Brief, NIP argued that even if the Trustee could show the requisite minimum jurisdictional contacts, the exercise of jurisdiction would nonetheless be unfair and unreasonable. Opening Brief at 14-15.

The Trustee's first set of responses to these arguments center on the fact that NIP has "actively participated" in this case for ten years and joined in various procedural motions and motions to dismiss, and that NIP is therefore "not burdened" by being compelled to litigate this matter through a trial in the United States. Opposition at 24. NIP recognizes that these arguments are drawn from prior rulings of this Court, but respectfully suggests they do not take into account two significant points. *First*, there can be no fair comparison between the burdens associated with the initial stages of this case, which involved motion practice easily handled by U.S.-based counsel, and the burdens associated with subsequent phases, which will require significant involvement by Europe-based witnesses and the collection and review of Europe-based documents. *Second*, NIP did not waive its right to object to personal jurisdiction by participating in this case for ten years: the right to raise the arguments presently before the Court were preserved through stipulations and agreements among the parties and approved by this Court, during a period of time when it appeared that these cases would be dismissed on grounds of extraterritoriality.

Furthermore, NIP explained in its Opening Brief that the exercise of jurisdiction would be particularly unreasonable in this case, because the Trustee is effectively arguing that NIP should be subject to all of the Trustee's recovery powers under the Bankruptcy Code, even though NIP

8

can never benefit from the protections of SIPA, precisely because NIP has no customer claim against the estate, given that it intended its transactions and rights to be entirely foreign. Opening Brief at 14-15.  In response, the Trustee argues that NIP's position is "unsupported by the record."  Opposition at 25.  That is nonsense:  it is beyond dispute that NIP has no customer claim against the estate, and that the Trustee does not seriously deny this.  The Trustee offers no other serious response to NIP's argument, and the Court has not previously considered it in any prior case of which NIP is aware.  NIP respectfully requests that the Court address this previously unresolved argument in connection with any resolution of NIP's motion to dismiss.

### III.     THE TRUSTEE SHOULD BE DENIED LEAVE TO AMEND AND DOES NOT NEED JURISDICTIONAL DISCOVERY

The Trustee should not be granted further jurisdictional discovery or leave to amend.  This case has lasted more than a decade already.  The Trustee has had access to the records of Mr. Madoff and has also completed substantial discovery from BLMIS's feeder funds and from innumerable other third parties.  Any evidence supporting contacts between NIP and BLMIS or Harley should already be in the Trustee's possession and control.  In addition, despite having access to significant discovery, the Trustee has not shown any meaningful meetings, communications, or other contacts between NIP and the forum, and there is no reason to expect additional discovery will cure this defect.  Moreover, the same substantial access to prior discovery also shows that leave to amend would be futile here and should not be granted.  *See*, *e.g.*, *In re Trib. Co. Fraudulent Conveyance Litig.*, 11-MD-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017), *aff'd,* 10 F.4th 147 (2d Cir. 2021) (denying leave to amend clawback suit because "Trustee is a sophisticated bankruptcy professional" who had access to significant prior Rule 2004 discovery and because prejudice to defendants would be unacceptably high because they had "been in limbo for almost a decade").

## **CONCLUSION**

For the foregoing reasons NIP respectfully requests that the Trustee's Complaint should be dismissed with prejudice.

Dated: December 19, 2022  
      New York, New York

SHEARMAN & STERLING LLP

By: */s/ Jeffrey Resetarits*
    Jeffrey Resetarits
    Randall Martin
    599 Lexington Avenue
    New York, NY 10022-6069
    Telephone: (212) 848-4000
    Facsimile: (646) 848-7174

*Attorneys for Defendant Nomura International PLC*