**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02733 (CGM) |
| Plaintiff, | |
| v. | |
| NAIDOT & CO. and BESSEMER TRUST COMPANY, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND..................................................................................3

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................3

    II.    DEFENDANTS AND THEIR INVESTMENTS IN SENTRY ............................4

ARGUMENT ....................................................................................................5

    I.     THE AMENDED COMPLAINT IS TIMELY BECAUSE IT MEETS THE
          STANDARD FOR RELATION BACK ....................................................5

         A.    Relevant Legal Standards ........................................................5

         B.    The Claims against BTC Arise Out of the Same Conduct,
              Transactions, and Occurrences as were Alleged in the Trustee's
              Original Complaint ....................................................................6

         C.    BTC had Timely Notice of the Original Complaint ....................................7

         D.    BTC Knew or Should Have Known That Its Omission from the
              Trustee's Original Complaint Was a Mistake...............................9

         E.    Rule 15(c) Does Not Apply Only to Substitution of Parties.....................14

    II.    DEFENDANTS' MERE CONDUIT AFFIRMATIVE DEFENSE IS
          PREMATURE AND NOT ESTABLISHED ON THE FACE OF THE
          COMPLAINT ....................................................................18

         A.    The Mere Conduit Defense is Premature....................................18

         B.    Even if Analysis of the Mere Conduit Defense is Appropriate on a
              Motion to Dismiss, Defendants' Motion Fails to Allege Facts
              Sufficient to Establish it.........................................................20

    III.   SECTION 546(E)'S SAFE HARBOR DOES NOT APPLY TO
          DEFENDANTS AND DEFENDANTS' RELIANCE ON *MERIT* IS
          MISPLACED ....................................................................23

          A.    Sentry is Not a Mere Conduit ..................................................23

         B.    The Trustee and this Court Correctly Interpret *Cohmad* ..........................26

         C.    Defendants' Alternative Arguments are Premature...................................28

i

IV.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE
        CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE..............28

CONCLUSION....................................................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*,
  480 F.3d 636 (2d Cir. 2007) ................................................................ 18

*Abdell v. City of New York*,
  759 F. Supp. 2d 450 (S.D.N.Y. 2010) ................................... 8, 11, 14, 15

*Almazo v. M.A. Angeliades, Inc.*,
  No. 11 CV 1717 MGC, 2015 WL 6965116 (S.D.N.Y. Nov. 10, 2015) .............................. 15

*Astropower Liquidating Tr. v. Xantrex Tech., Inc., (In re Astropower Liquidating Tr.)*,
  No. 05-50867, 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006) ................................. 18, 19

*Barrow v. Wethersfield Police Dep't*,
  66 F.3d 466 (2d Cir. 1995) ................................................................ 12

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*,
  289 F.R.D. 401 (S.D.N.Y. 2013) ......................................................... 10, 14

*Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
  397 B.R. 1 (Bankr. S.D.N.Y. 2007) ..................................................... 21

*Bloom v. Alvereze*,
  498 F. App'x 867 (11th Cir. 2012) ...................................................... 12

*Brown v. Kelly*,
  244 F.R.D. 222 (S.D.N.Y. 2007) ........................................................... 6

*Cargo Partner AG v. Albatrons, Inc.*,
  352 F.3d 41 (2d Cir. 2003) ................................................................ 20

*Celestine v. City of San Jose*,
  15 F.3d 1083 (9th Cir. 1994) ............................................................. 12

*Christy v. Alexander & Alexander of NY Inc. (In re Finley Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)*, 130 F.3d 52 (2d Cir.1997) ............................ 19, 20

*Cornwell v. Robinson*,
  23 F.3d 694 (2d Cir. 1994) ................................................................ 12

*Curkin v. City of New York*,
  No. 18 CIV. 7541 (ER), 2020 WL 5628042 (S.D.N.Y. Sept. 21, 2020) ................................. 12

*Fetterman v. Westmoreland Cnty. Childrens Bureau*,
    681 F. App'x 166 (3d Cir. 2017) ........................................................ 12

*Fischer v. Forrest*,
    No. 14CIV1304PAEAJP, 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017) ................................ 15

*Fogel v. Wal-Mart de Mexico SAB de CV*,
    No. 13 CIV. 2282 (KPF), 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) ................................ 12

*Forte v. City of New York*,
    No. 16-CV-560 (VSB), 2018 WL 4681610 (S.D.N.Y. Sept. 28, 2018) ................................ 13

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000) ................................................................ 20

*Gabriel v. Kent General Hospital Inc.*,
    95 F.R.D. 391 (D.Del.1982) ................................................................ 17

*Gill v. Bd. of Nat'l Credit Union Admin. for Sikh Fed. Credit Union*,
    No. CV 93-1597 (MDG), 2018 WL 5045755 (E.D.N.Y. Oct. 16, 2018) ................................ 11

*Glob. Crossing Est. Representative v. Winnick*,
    No. 04 CIV.2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ................................ 14

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008) ........................................................ 19

*Hahn v. Office & Prof'l Emps. Int'l Union*,
    107 F. Supp. 3d 379 (S.D.N.Y. 2015) ........................................................ 7

*Hernandez Jimenez v. Calero Toledo*,
    604 F.2d 99 (1st Cir. 1979) ................................................................ 7, 8

*Houghtaling v. Eaton*,
    No. 6:14-CV-6416 EAW, 2018 WL 522342 (W.D.N.Y. Jan. 22, 2018) ................................ 12

*In re Allbrand Appliance & Television Co., Inc.*,
    875 F.2d 1021 (2d Cir.1989) ................................................................ 7

*In re Bankr. Est. of Norske Skogindustrier ASA*,
    629 B.R. 717 (Bankr. S.D.N.Y. 2021) ........................................................ 16

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ........................................................ 31

*In re Bernard L. Madoff Inv. Sec. LLC*,
    468 B.R. 620 (Bankr. S.D.N.Y. 2012) .................................................................... 12

*In re Bernard L. Madoff Inv. Securities LLC (Picard v. Ida Fishman Rev. Trust)*,
    773 F.3d 411 (2d Cir. 2014) ................................................................................... 25

*In re CVEO Corp.*,
    327 B.R. 210 (Bankr. D. Del. 2005) ...................................................................... 20

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................... 30

*In re Enron Corp.*,
    357 B.R. 257 (Bankr. S.D.N.Y. 2006) ....................................................... 16, 17, 23

*In re Enron Corp.*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006) ......................................................... 14, 18, 21

*In re Greater Se. Cmty. Hosp. Corp. I*,
    341 B.R. 91 (Bankr. D.D.C. 2006), ........................................................................ 16

*In re Integrated Res. Real Estate Ltd. Partnerships Sec. Litig.*,
    815 F. Supp. 620 (S.D.N.Y. 1993) ........................................................................... 7

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp.2d 340 (S.D.N.Y. 2011) ...................................................................... 20

*In re Kaiser Steel Corp.*,
    110 B.R. 514 (D. Colo.) ........................................................................... 19, 21, 22

*In re Kingate Mgmt. Ltd. Litig.*,
    *No.* 09-CV-5386 (DAB), 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) ........................ 13, 14

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ..................................................................................... 25

*In re Pretty Girl, Inc.*,
    644 B.R. 298 (Bankr. S.D.N.Y. 2022) .................................................................... 18

*In re Randall's Island Family Golf Centers*,
    2002 WL 31496229 (Bankr. S.D.N.Y. Nov. 8, 2002) ..................................... *passim*

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) .............................................................................. 18

*Javier H. v. Garcia-Botello*,
    No. 02-CV-0523S(SR), 2009 WL 10681860 (W.D.N.Y. Mar. 30, 2009) ............................ 17

*Jhagroo v. Brown*,
    No. 116CV03426MKVSDA, 2020 WL 3472424 (S.D.N.Y. June 25, 2020) ........................ 15

*Kelly–Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013) ................................................................................. 29

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010) ................................................................................... *passim*

*Leonard v. Gen. Motors L.L.C.*,
    504 F. Supp. 3d 73 (D. Conn. 2020) ................................................................. 15, 16

*Lovelace v. O'Hara*,
    985 F.2d 847 (6th Cir. 1993) ................................................................................. 12

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004) .......................................................................... 18, 30

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018) ......................................................................................... 24

*Miller v. Mancuso*,
    388 F. App'x 389 (5th Cir. 2010) ......................................................................... 12

*Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
    *(In re Motors Liquidation Company)*, 552 B.R. 253 (Bankr. S.D.N.Y. 2016) ...................... 19

*Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*,
    No. 11-11388 (JLG), 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ........................ 21

*Palmer v. Stuart*,
    274 F. App'x 58 (2d Cir. 2008) ............................................................................. 12

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................................................... 30

*Picard v. Bank Julius Baer & Co. Ltd.*, Adv. Pro. No. 11-02922 (CGM)
    (Bankr. S.D.N.Y. Dec. 15, 2022), Memorandum Decision, ECF No. 134 ............................. 6

*Picard v. Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG and Vontobel Asset*
    *Management Inc.*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr.
    S.D.N.Y. Nov. 18, 2022) ................................................................. 26, 27, 28, 31

*Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149 (CGM),
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)................................................... 3, 27, 29

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)..................................................................................... 31

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)..................................................................................... 25

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ............................................................................................ 4, 18

*Picard v. Delta Nat'l Bank and Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022). 29, 30

*Picard v. Fairfield Inv. Fund, Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........... 5, 27, 31

*Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM),
    2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ........................................... 3, 23, 24, 29

*Picard v. Grosvenor Investment Mgmt. Ltd.*,
    Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716 (Bankr. S.D.N.Y. Nov. 21,
    2022) ........................................................................................................................................ 3

*Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*,
    Adv. Pro. No. 11-02763 (CGM) (Bankr. S.D.N.Y. Dec. 15, 2022), Amended
    Memorandum Decision, ECF No. 135 .................................................................... 2, 3, 22, 25

*Picard v. Keller Family Trust (In re BLMIS)*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021)....................................................................................... 20

*Picard v. Korea Exchange Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21,
    2022) ........................................................................................................................................ 3

*Picard v. Mendelow (In re BLMIS)*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016)....................................................................................... 6

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010).......................................................................... 18, 29, 30

*Picard v. Miller (In re BLMIS)*,
    631 B.R. 1 (Bankr. S.D.N.Y. 2021)......................................................................................... 19

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................................................ 3, 25, 27

*Picard v. Multi-Strategy Fund, Ltd.*,
    No. 22-cv-06502-JSR, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ................ 25, 26, 27, 28

*Picard v. Nelson (In re BLMIS)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) .................................................................... 19

*Pierre v. Cnty. of Nassau*,
    No. 17CV6629LDHRER, 2022 WL 2872651 (E.D.N.Y. July 21, 2022) ............................ 15

*Pikos v. Liberty Maint., Inc.*,
    No. 09-CV-4031 WFK RER, 2015 WL 6830670 (E.D.N.Y. Nov. 6, 2015) .......................... 15

*Ramos-Santoya v. Ins. Co. of State of Pennsylvania*,
    379 F. App'x 596 (9th Cir. 2010) .......................................................................... 12

*Reich v. City of New York*,
    No. 19CV6491EKRER, 2021 WL 6423983 (E.D.N.Y. Oct. 5, 2021) .................................. 12

*Roe v. Johnson*,
    No. 07-CV-2143 RJD RER, 2011 WL 8189861 (E.D.N.Y. Aug. 12, 2011), *report and
    recommendation adopted*, No. 07 CV 2143 RJD RER, 2012 WL 2575340 (E.D.N.Y.
    July 3, 2012 .................................................................................................. 16

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) .................................................................................. 20

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*,
    2013 WL 1234937 (S.D.N.Y. Mar. 26, 2013) ............................................................ 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ........................... 29, 30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013) ................................................................................ 26

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................... 23, 27, 28

*Siegel v. Converters Transp., Inc.*,
    714 F.2d 213 (2d Cir. 1983) .................................................................................... 6

*Sounds Exp. Int'l Ltd. v. Am. Themes & Tapes, Inc.*,
    101 F.R.D. 694 (S.D.N.Y. 1984) ............................................................................ 17

*Staggers v. Otto Gerdau Co.*,
 359 F.2d 292 (2d Cir.1966) ................................................................................... 6

*State Teachers Ret. Bd. v. Fluor Corp.*,
 654 F.2d 843 (2d Cir. 1981) ................................................................................. 9

*Trustees of the Nat. Ret. Fund v. Wildwood Corp.*,
 No. 11 CIV. 6287 NSR LMS, 2013 WL 8446003 (S.D.N.Y. Dec. 17, 2013) ....................... 13

*Turner v. Suffolk Cnty.*,
 No. 18CV5235JMAAKT, 2022 WL 3357944 (E.D.N.Y. Aug. 15, 2022) ............................ 12

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
 39 F. Supp. 3d 461 (S.D.N.Y. 2014) ..................................................................... 29

**Statutes**

11 U.S.C. § 546(e) ................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) ........................................................................... 27

11 U.S.C. § 550 ....................................................................................... 26

11 U.S.C. § 550(b) ................................................................... 1, 3, 25, 28

11 U.S.C. § 550(f) ................................................................................... 1

15 U.S.C. §§ 78aaa–*lll* .......................................................................... 1

42 U.S.C. § 1983 .................................................................................... 12

**Rules**

Fed. R. Civ. P.  4(m) ............................................................................ 6, 7

Fed. R. Civ. P. 12(b)(2) ........................................................................... 1

Fed. R. Civ. P.  12(b)(6) .................................................................. 1, 18, 20

Fed. R. Civ. P.  12(h) .............................................................................. 1

Fed. R. Civ. P.  15(c) ..................................................................... *passim*

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint (the "Motion"), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6), of defendants Naidot & Co. ("Naidot") and Bessemer Trust Company ("BTC," and together with Naidot, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover $12,654,907 in subsequent transfers (the "Subsequent Transfers") that Defendants received from BLMIS feeder fund Fairfield Sentry Limited ("Sentry").[1] Defendants move to dismiss the adversary proceeding in its entirety, arguing that (1) Defendants are mere conduits of the subsequent transfers because BTC invested with Sentry on behalf of BTC's customers and Naidot acted as BTC's nominee; (2) if not conduits, Defendants are initial transferees entitled to the protections afforded by Section 546(e) or even if viewed as subsequent transferees, otherwise covered by this statutory safe harbor; and (3) Defendants' Section 550(b) defense is established on the face of the Trustee's Amended Complaint (the "Am. Compl."), ECF No. 100.[2] BTC also argues separately that the Amended Complaint should be dismissed as to BTC because the claims against it are barred by the Section 550(f) statute of limitations.[3] Except for timeliness,

---

[1] Pursuant to his Amended Complaint, the Trustee dismissed one alleged subsequent transfer, dated February 14, 2003, identified in his original complaint, thus reducing the total amount sought to be recovered by $1,000,000.

[2] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Naidot & Co., et al.*, Adv. Pro. No. 11-02733 (CGM).

[3] By not contesting personal jurisdiction, Defendants have conceded that this Court has jurisdiction over them. *See* FRCP 12(h).

which was not at issue, these same arguments were recently rejected by this Court in its

Amended Memorandum Decision in *Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*, Adv. Pro.

No. 11-02763 (CGM) (Bankr. S.D.N.Y. Dec. 15, 2022), ECF No. 135 ("*Inteligo*").  For the

reasons set forth therein and herein, Defendants' arguments fail.

*First,* the Trustee's claims against BTC are timely because they relate back to the

allegations in the original Complaint (the "OC"), ECF No. 1.  The Trustee added BTC as a

defendant in the Amended Complaint because of his mistake, cognizable pursuant to FRCP

15(c), in not identifying BTC as a recipient of the Subsequent Transfers in the OC.  Although

aware of BTC's existence at the time the OC was filed, the Trustee believed, and alleged in the

OC, that Naidot invested with Sentry <u>through</u> BTC.  OC ¶ 6.  The Trustee has since learned from

public filings that Naidot's description of the relationship between the two entities was just the

opposite, with BTC ostensibly using Naidot to invest in Sentry.  The Trustee's addition of BTC

as a defendant should be no surprise to BTC, as BTC knew of the Subsequent Transfers it

received, in whole or in part, as identified in the original Complaint, and Naidot and BTC shared

the same offices and senior executives.

*Second*, the mere conduit defense asserted by Defendants is premature at the pleading

stage and should be developed during discovery for resolution at a later stage of this case.  It is

well-settled that the defense requires a fact-intensive analysis that is inappropriate for resolution

on a motion to dismiss.  In arguing for dismissal on this ground, Defendants improperly read

their own unsupported facts into the Amended Complaint and, in any event, come nowhere near

establishing mere conduit status.

*Third*, Defendants' alternate argument that if they are not mere conduits, then Sentry is,

making Defendants initial transferees protected by Section 546(e), has no basis in fact, is

unmoored from the Amended Complaint, and is inconsistent with the position Naidot has taken in court filings for more than a decade that it is a subsequent transferee. Defendants are in fact subsequent transferees of Sentry, and as this Court has repeatedly held and the District Court recently affirmed, Section 546(e) does not independently shield recovery of subsequent transfers. To this end, Defendants are no differently situated than the subsequent transferee defendants in other recovery actions that have recently come before this Court.[4]

Finally, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate to assert on a motion to dismiss. As this Court has found in numerous recent cases concerning similarly situated defendants, it is Defendants' burden to plead this affirmative defense in an answer and prove it with evidence. Defendants cannot establish their purported good faith on the face of the Amended Complaint. *See*, *e.g.*, *Banque Syz,* 2022 WL 2135019, at *11; *First Gulf,* 2022 WL 3354955, at *11.

The Trustee respectfully requests that the Court deny the Motion.

## FACTUAL BACKGROUND

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS in New York until its collapse in 2008. Am. Compl. ¶¶ 22, 51. BLMIS was a registered broker-dealer in New York. *Id.* ¶ 23. BLMIS purportedly operated three principal business units: (1) a proprietary trading business; (2) a broker-dealer operation; and (3) an investment advisory business (the "IA Business"). *Id.* ¶ 24.

---

[4] *See, e.g.*, *Inteligo*, Adv. Pro. No. 11-02763; *Picard v. Grosvenor Investment Mgmt. Ltd*., Adv. Pro. No. 12-01021 (CGM), 2022 WL 17098716 (Bankr. S.D.N.Y. Nov. 21, 2022); *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*").

For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy which involved (a) investing in a basket of common stocks from the S&P 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. Treasury securities when the money was out of the market. *Id.* ¶¶ 37-40, 45. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 10, 28, 52. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 5.

The extensive financial damage caused by Madoff was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (Feb. 28, 2022) ("*Citibank*"). Defendants knowingly invested in Sentry, which they knew was a Madoff feeder fund. Am. Compl. ¶¶ 62, 64.

## II.    DEFENDANTS AND THEIR INVESTMENTS IN SENTRY

BTC is the founding entity of a group of companies commonly referred to as "Bessemer Trust," which operate collectively as an integrated multifamily office providing investment management and other financial services. Am. Compl. ¶¶ 54-56.

Naidot is a New Jersey partnership which, as per its state regulatory filings, has the "limited purpose of having registered, in the name of the said partnership, stock, bonds, notes and other securities and property from time to time held by [BTC] in various fiduciary capacities." Am. Compl. ¶ 57.

Naidot and BTC (along with BTC's holding company parent) share the same corporate address and Naidot's partners were during the relevant period solely or predominantly Bessemer

4

Trust executives and officers of BTC. Am. Compl. ¶¶ 56, 58. The Trustee has found no evidence that Naidot ever had any personnel apart from those of BTC or Bessemer Trust. *Id*. ¶ 59.

Defendants first invested in Sentry in 1992 and received their last Sentry redemption in October 2005. Am. Compl. ¶ 4, Ex. C. Prior to BLMIS's collapse, Defendants received redemptions from Sentry totaling at least $12,654,907. *Id*. ¶¶ 2, 72.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. Am. Compl. ¶ 66; *see also Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. In 2011, the Trustee settled with Sentry. Am. Compl. ¶ 67. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id*.; *Picard v. Fairfield Inv. Fund, Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), at *3. The Trustee then commenced a number of adversary proceedings against defendants like Naidot and BTC to recover the approximately $3 billion in missing customer property.

## ARGUMENT

## I.    THE AMENDED COMPLAINT IS TIMELY BECAUSE IT MEETS THE STANDARD FOR RELATION BACK

The addition of BTC as a defendant in this action is timely because it relates back to the OC under FRCP 15(c).

### A.    Relevant Legal Standards

As BTC acknowledges, FRCP 15(c) "permits an amended complaint that adds a defendant to relate back to the date of the original pleading." Motion at 3.

As this Court has explained, in the Second Circuit, complaint amendments "are favored because they 'tend to facilitate a proper decision on the merits.'" *Picard v. Mendelow (In re BLMIS)*, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016) (citation omitted).  Moreover, as this Court recently held with regard to relation back, "Rule 15(c) should be 'liberally construed.'" Memorandum Decision at p. 32, *Picard v. Bank Julius Baer & Co. Ltd.*, Adv. Pro. No. 11-02922 (CGM) (Bankr. S.D.N.Y. Dec. 15, 2022), ECF No. 134 (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983)).  This general liberality in allowing amendments under Rule 15 applies to the addition of new parties.  *Brown v. Kelly,* 244 F.R.D. 222, 227 (S.D.N.Y. 2007) (citing *Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296–97 (2d Cir.1966)) (reversed on other grounds).

Pursuant to the language of FRCP 15(c), an amended pleading "relates back to the date of the original pleading" when:  (i) it asserts claims arising from the same "conduct, transaction, or occurrence" as those asserted in the original pleading; (ii) the new party was on notice of the pending action pursuant to FRCP 4(m) such that it will not be "prejudiced in defending on the merits;" and (iii) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  FRCP 15(c)(1); s*ee also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 545 (2010) ("*Krupski*").  As addressed below, all three elements are satisfied here.

**B.      The Claims against BTC Arise Out of the Same Conduct, Transactions, and Occurrences as were Alleged in the Trustee's Original Complaint**

It is indisputable that the claims against BTC arise from the same conduct, transactions, and occurrences as those alleged in the Trustee's original complaint against Naidot, and BTC does not argue otherwise.  All of the transfers now alleged to have been received by Defendants were identified in the original Complaint as transfers to Naidot.  The Amended Complaint seeks

6

recovery of these same transfers from Defendants under the same provisions of the Bankruptcy

Code pursuant to which the Trustee previously sought recovery from Naidot alone. *See In re*

*Randall's Island Family Golf Centers*, 2002 WL 31496229, at \*2 (Bankr. S.D.N.Y. Nov. 8,

2002) ("*Randall's Island*") (proposed additional defendant could not dispute that claims arose

out of the same transaction or occurrence because the new claim involves the same transfers as

those implicated in the preference claims against the original defendant).

### C.    BTC had Timely Notice of the Original Complaint

BTC was also on notice pursuant to FRCP 4(m) such that it is clearly not prejudiced in

defending on the merits by any delay.  Courts recognize that this requirement is satisfied where

the new party had constructive notice of the claims against it.  *Krupski*, 560 U.S. at 554 (holding

district court's finding of constructive notice sufficient to satisfy notice prong of Rule 15(c)).

It is well established in the Second Circuit that a party added after the limitations period

has expired is on constructive notice of the claims against it when the original and added parties

are so closely related that it is fair to presume the added party learned of the institution of the

action shortly after it was commenced.  *See Hahn v. Office & Prof'l Emps. Int'l Union*, 107 F.

Supp. 3d 379, 384 (S.D.N.Y. 2015) (stating that "[t]o satisfy the notice requirement under Rule

15(c)(1)(C)(i), a plaintiff may plead that two defendants are so 'closely related in their business

activities or linked in their corporate structure' as to have an 'identity of interest'; in such a case,

'the institution of an action against one party will constitute imputed notice' to the related party

later named in an amended complaint.") (quoting *In re Allbrand Appliance & Television Co.,*

*Inc.*, 875 F.2d 1021, 1025 (2d Cir.1989)); *In re Integrated Res. Real Estate Ltd. Partnerships*

*Sec. Litig.*, 815 F. Supp. 620, 646 (S.D.N.Y. 1993) ("In the Second Circuit, [c]ourts have

generally held that Rule 15(c) is satisfied where the original party and added party have a close

identity of interests.") (quotations omitted).  As explained in *Hernandez Jimenez v. Calero*

7

*Toledo*, 604 F.2d 99, 103 (1st Cir. 1979), "[t]he identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, *two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space*, past and present forms of the same enterprise, or co-executors of an estate." (emphasis added).

Here, BTC's and Naidot's identity of interest is clearly pleaded in the Amended Complaint:  Naidot had no apparent personnel, offices or activity independent of BTC or Bessemer Trust.  Am. Compl. ¶¶ 57-59.  Naidot's stated purpose in state filings was to serve as nominee for certain investments by BTC, the two entities shared a New Jersey corporate address, and Naidot's partners were solely or predominantly Bessemer Trust executives, including officers of BTC.  *Id.*  Given the undisputed intimate closeness of the relationship between the entities, BTC had constructive notice of the claims against it and will not be prejudiced by having to defend those claims as set forth in the Amended Complaint.[5]

BTC argues, without citation to any authority, that it would be prejudiced for purposes of FRCP 15(c) because "the availability of evidence and recollection of witnesses fades substantially over a decade."  Motion at 8.  This is legally and factually wrong.  First, "it is clear that the *Krupski* opinion considered and rejected the argument that a plaintiff's undue delay in seeking to amend could justify the denial of relation back."  *Abdell v. City of New York*, 759 F. Supp. 2d 450, 458 (S.D.N.Y. 2010); *see also Krupski*, 560 U.S. at 553 ("The Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them.").  Second, such an argument in any event would be unfounded where, as here—due to the complex procedural history of these consolidated proceedings—the case is still

---

[5] Notably, BTC nowhere argues that it lacked *actual* notice of the action and to the contrary, suggests that it was aware of its commencement.  Motion at 8 ("[T]he fact that the Trustee waited a decade to add BTC as a defendant would have reassured BTC that no mistake had been made.").

at an early stage and discovery has not even started. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (finding no prejudice where no trial date had been set, no motion for summary judgment had been filed, and amendment would not involve much additional discovery).

### D.    BTC Knew or Should Have Known That Its Omission from the Trustee's Original Complaint Was a Mistake

Contrary to its arguments, BTC also "knew or should have known" that the action would have been brought against it, but for the Trustee's mistake.

As the Supreme Court has noted, "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge." *Krupski*, 560 U.S. at 541.  As the bankruptcy court has explained previously, mistake under FRCP 15(c) "is not limited to cases of misnomer, or to a specific type of misidentification; rather, it is concerned fundamentally with the *new party's* awareness that failure to join it was error rather than a deliberate strategy."  *Randall's Island*, 2002 WL 31496229, at *3 (emphasis added) (quotations omitted).

Here, it is clear that the Trustee intended to sue the recipient of the Subsequent Transfers identified in the original Complaint, whom he mistakenly believed was limited to Naidot.  This mistake was based on a misunderstanding of BTC's relationship with Naidot and their respective roles with regard to Sentry investments and the redemptions received in connection therewith. As such, the Trustee alleged in the original Complaint that Naidot invested in Sentry "through" BTC and that BTC was nothing more, for purposes of subscriptions and redemptions, than Naidot's "principal point of contact."  OC ¶¶ 6, 21.  Naidot's state filings, however, describe the relationship as just the opposite, with Naidot's purpose to make investments in its own name on behalf of BTC. Am. Compl. ¶ 57.  BTC should have also been named as a subsequent transferee

in the original Complaint and both BTC and Naidot should be in the action until such time as further information, which is exclusively in Defendants' possession, can be obtained about the relationship between these two entities—including who had legal title to the Sentry shares, the amount of discretion or authority each had over the Subsequent Transfers, what portion of the transfers was received and retained by each Defendant, and whether Naidot was simply BTC's alter ego.  This is precisely the kind of mistake the Supreme Court has described as consistent with FRCP 15(c) relation back:

> A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Krupski*, 560 U.S. at 549.

The instant matter is in this way similar to *Randall's Island*, in which Judge Bernstein granted the same relief to add a new defendant that the Trustee seeks here.  In that case, the plaintiff's failure in a preference action to identify as a transferee an entity of which it was aware at the time of the original complaint was held to be a mistake.  *Randall's Island*, 2002 WL 31496229, at *4-5 (debtors learned that new defendant "might be the initial transferee" when the original defendants claimed to be mere conduits).  *See also Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 289 F.R.D. 401, 406 (S.D.N.Y. 2013) (quoting *Krupski*, 560 U.S. at 549) (allowing addition of defendant to gross negligence claim and explaining that FRCP 15(c)(1)(C)'s concept of "mistake" includes cases where a plaintiff "harbor[s] a misunderstanding about [the prospective defendant's] status or role in the events giving rise to

10

the claim at issue."). In the foregoing cases, as is true here, the plaintiffs misunderstood the relationship between the prospective defendants and the events giving rise to plaintiffs' claims.

In its Motion, BTC acknowledges that the proper focus is on what the newly added defendant would have known, but then argues that it "could not have known the Trustee made a mistake," because (i) "the Trustee's original complaint made clear that he was aware of BTC and the role that it played with respect to Naidot" and (ii) per the Amended Complaint, the information on which the Trustee is relying to correct his error is from publicly available materials. Motion at 5-6.

As to the latter, BTC is wrong for two reasons. The source of the information the Trustee ultimately located and used to determine his mistake is irrelevant to BTC's own knowledge of its potential liability at the time, and such a statement in any event misses the point that *BTC's* knowledge is what's relevant. *Krupski*, 560 U.S. at 541.

As to the former, BTC is wrong because, based on Naidot's public filings, the OC mistakenly describes the roles of Naidot and BTC. Indeed, as explained above, the Trustee's entire rationale for amending is that at the time of filing the OC, he did *not* understand those relationships and as a result pled them incorrectly. If anything, BTC's knowledge that it could ultimately be named as a defendant should have been cemented when it saw the error in the Trustee's pleading.[6] BTC knew the only reason it would not have been sued by the Trustee for

---

[6] BTC argues, citing three pre-*Krupski* cases from outside the Second Circuit, that the time between the OC and the Amended Complaint would have "reassured" BTC that no mistake had been made. Motion at 8. As addressed in Section I.C. *supra*, promptness by the Trustee in seeking to amend his complaint is simply not amongst the criteria for relation back. *Krupski*, 560 U.S. at 553; *Abdell*, 759 F. Supp. 2d at 458. A final case cited by BTC on this point, *Gill v. Bd. of Nat'l Credit Union Admin. for Sikh Fed. Credit Union*, No. CV 93-1597 (MDG), 2018 WL 5045755, at *16 (E.D.N.Y. Oct. 16, 2018), does not even mention this erroneous argument that the further passage of time eventually becomes relevant to a FRCP 15(c) analysis, but instead simply holds, contra the instant matter, that "there is no indication that any such new defendant was omitted from the complaint … by mistake."

11

recovery of the Subsequent Transfers is because the Trustee misunderstood BTC's role with regard to the Sentry investments.

To this end, BTC's "avalanche" of purportedly analogous cases—where courts denied relation back because at the time of filing, a plaintiff was aware of, or even referenced in the original complaint, the party sought to be added—are inapposite.  Motion at 5-7, n.1.  The majority of these cases are not mistake cases at all, but rather concern 42 U.S.C. § 1983 civil rights actions where the plaintiff was aware of and/or had properly spelled out the alleged misconduct and perpetrator in the original complaint, but intentionally failed to name them as defendants.  *See*, *e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 700 (2d Cir. 1994) (where plaintiff did not even allege a mistake and knew who had harassed and discriminated against her); *Palmer v. Stuart*, 274 F. App'x 58, 59 (2d Cir. 2008); *Fetterman v. Westmoreland Cnty. Childrens Bureau*, 681 F. App'x 166, 169 (3d Cir. 2017); *Miller v. Mancuso*, 388 F. App'x 389, 391 (5th Cir. 2010)*; Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993)*; Celestine v. City of San Jose*, 15 F.3d 1083, at *1, n.2 (9th Cir. 1994); *Bloom v. Alvereze*, 498 F. App'x 867, 873 (11th Cir. 2012); *Turner v. Suffolk Cnty.*, No. 18CV5235JMAAKT, 2022 WL 3357944, at *7 (E.D.N.Y. Aug. 15, 2022); *Reich v. City of New York*, No. 19CV6491EKRER, 2021 WL 6423983, at *5-6 (E.D.N.Y. Oct. 5, 2021); *Curkin v. City of New York*, No. 18 CIV. 7541 (ER), 2020 WL 5628042, at *9 (S.D.N.Y. Sept. 21, 2020); *Houghtaling v. Eaton*, No. 6:14-CV-6416 EAW, 2018 WL 522342, at *4-6 (W.D.N.Y. Jan. 22, 2018).[7]

---

[7] The remaining cases cited by Defendants are also easily distinguishable based on their facts.  *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469-470 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996) (lack of knowledge of John Doe defendants' names does not constitute a mistake ); *Ramos-Santoya v. Ins. Co. of State of Pennsylvania*, 379 F. App'x 596, 597 (9th Cir. 2010) (failure to add insurer as a defendant in automobile personal injury action was not a mistake); *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13 CIV. 2282 (KPF), 2017 WL 751155, at *11 (S.D.N.Y. Feb. 27, 2017) (claims against new defendants untimely because plaintiff never argued mistake); *In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. 620, 630-31 (Bankr. S.D.N.Y. 2012) (denying relation back where Trustee had in his possession at time of complaint and first amended complaint extensive documentation regarding roles of spouse defendants and had chosen to sue them separately in other adversary proceedings).

Unlike here, none of these cases cited by Defendants include plaintiffs that misunderstood the relationship between relevant parties and the claims at issue at the time of the original complaint. And to the extent any language in these cases implies that prior knowledge of the existence of a proposed new defendant is dispositive (Motion at 4-6), such case is simply wrong on the law post-*Krupski*. As the Supreme Court held in *Krupski*, "it would be error to conflate knowledge of a party's existence with the absence of mistake." 560 U.S. at 548. *See also Forte v. City of New York*, No. 16-CV-560 (VSB), 2018 WL 4681610, at *8 (S.D.N.Y. Sept. 28, 2018) (citing *Krupski* and holding that claims relate back where plaintiff was aware of existence of added defendants, but "mistaken as to their role in the misconduct and the resulting liability they faced"); *Trustees of the Nat. Ret. Fund v. Wildwood Corp.*, No. 11 CIV. 6287 NSR LMS, 2013 WL 8446003, at *8 (S.D.N.Y. Dec. 17, 2013) (holding that, post-*Krupski*, FRCP 15(c) is satisfied where plaintiff knew of newly added party's existence but lacked knowledge regarding its conduct or liability).[8]

BTC argues that the Trustee's failure to name BTC was not a mistake but rather a "deliberate and tactical choice." But this argument fails for the same reasons—in short, the Trustee's misunderstanding of the parties' relationship was an error apparent on the face of the original Complaint. It is illogical that the Trustee, who is trying to recover millions in stolen customer property, would, as a litigation strategy, solely sue Naidot, an obscure New Jersey partnership with no employees and unknown assets, rather than BTC, the founding entity in a massive multifamily office with over $50 billion in assets under management. *See* Motion at 6; Am. Compl. ¶ 55. Rather, given the relationship between BTC and Naidot, BTC could not have

---

[8] Not even awareness by a plaintiff that a prospective new defendant had *some* role in the events at issue in the original complaint precludes a finding of relation back. *See, e.g.*, *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 WL 5339538, at *3-4, 34 (S.D.N.Y. Sept. 21, 2016), aff'd, 746 F. App'x 40 (2d Cir. 2018) (finding relation back despite feeder fund information memoranda referenced in original complaint describing added defendants as consultants on feeder funds' operations).

reasonably believed that the Trustee's failure to name it was a strategic decision. The Trustee

has thus met all elements of the standard to relate back his allegations against BTC to the

original complaint.

### E.    Rule 15(c) Does Not Apply Only to Substitution of Parties

BTC argues that FRCP 15(c) does not permit relation back where a plaintiff seeks to add

an additional party, rather than substitute one party for another named erroneously. Motion at 3-

4. But there is no such prohibition under FRCP 15(c) or under case law in this Circuit. To the

contrary, numerous cases, particularly in this jurisdiction, have allowed a party to be added

pursuant to FRCP 15(c). *See*, *e.g.*, *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB),

2016 WL 5339538, at *34-35 (allowing relation back of claims against later added defendants

where "related entities and parties" were named as defendants in the original complaint);

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, 2013 WL 1234937, at *6

(S.D.N.Y. Mar. 26, 2013) (allowing the addition of the president and a director of the original

defendant and stating, "The Court agrees with other courts that have held, in light of *Krupski*,

that Rule 15(c) can be satisfied where the plaintiff '[lacked] knowledge regarding the conduct or

liability' of the newly added party.) (quotation omitted); *Bayerische Landesbank*, 289 F.R.D. at

406 (holding that "[t]here is no requirement, however, that an amendment must replace a party in

order to establish a mistake warranting relation back. Amendments adding new defendants may

relate back if the requirements described above [of *Krupski*] are met."); *Abdell*, 759 F.Supp.2d at

456-58 (granting motion to amend to add defendant post-*Krupski*); *Glob. Crossing Est.*

*Representative v. Winnick*, No. 04 CIV.2558 (GEL), 2006 WL 2212776, at *7 (S.D.N.Y. Aug. 3,

2006) (allowing addition of defendant's subsidiaries as new defendants in fraudulent transfer

action pursuant to Rule 15(c)); *In re Enron Corp.*, 361 B.R. 36, 48 (Bankr. S.D.N.Y. 2006)

("[T]he Second Circuit allows relation-back of an additional defendant to the extent that a

mistake in identity of an existing defendant's role in the same transaction occurred."); *Randall's Island*, 2002 WL 31496229, at *4 (allowing a new party to be added in a preference action without dismissal of existing defendants where debtors learned that the existing defendants might be "mere conduits" for the new defendant).

In support of its erroneous argument that courts "in this Circuit" do not permit relation back in added party cases, BTC cites to two cases from the Eastern District of New York, which are not controlling here. *See* Motion at 4, citing *Pierre v. Cnty. of Nassau*, No. 17CV6629LDHRER, 2022 WL 2872651, at *6 (E.D.N.Y. July 21, 2022) and *Pikos v. Liberty Maint., Inc.*, No. 09-CV-4031 WFK RER, 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015). BTC also cites to two Southern District of New York cases. *See* Motion at 4. *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 128705, at *10 (S.D.N.Y. Jan. 13, 2017) relies on Eastern District authority without citing to contrary Southern District cases. *Jhagroo v. Brown*, No. 116CV03426MKVSDA, 2020 WL 3472424, at *2, n.2 (S.D.N.Y. June 25, 2020) acknowledges contrary authority and holds that plaintiff hadn't satisfied the other criteria for relation back regardless.

Notwithstanding the cases BTC cites, as demonstrated by the cases cited by the Trustee above, courts in the Southern District of New York have repeatedly declined to adopt such a narrow interpretation of FRCP 15(c) and have held such a restrictive view to be inconsistent with *Krupski*. *See Abdell*, 759 F.Supp.2d at 456-57 ("Careful review of the *Krupski* opinion ... belies [a] narrow understanding of a Rule 15(c) 'mistake'" under which relation back is limited to wrong-party cases and does not contemplate mistakes consisting of "lack of knowledge regarding the involvement of additional parties."); *Almazo v. M.A. Angeliades, Inc.*, No. 11 CV 1717 MGC, 2015 WL 6965116, at *6 (S.D.N.Y. Nov. 10, 2015); s*ee also Leonard v. Gen.*

15

*Motors L.L.C.*, 504 F. Supp. 3d 73, 92 (D. Conn. 2020) (restrictive view of FRCP 15(c) fails to apply the lessons of *Krupski*); *Roe v. Johnson*, No. 07-CV-2143 RJD RER, 2011 WL 8189861, at *4 (E.D.N.Y. Aug. 12, 2011), *report and recommendation adopted*, No. 07 CV 2143 RJD RER, 2012 WL 2575340 (E.D.N.Y. July 3, 2012).

As such, the addition of BTC as a defendant relates back and should be permitted.  In the alternative, if the Court disagrees that BTC can or should be added as a second defendant (as opposed to substituted in for Naidot), the Trustee urges the Court to defer the issue until summary judgment in order to allow discovery to move forward and further clarify the roles played by Naidot and BTC.  This approach is consistent with other cases in this Circuit that have considered the issue of whether to add a defendant to be more appropriately determined after discovery.  *See, e.g.*, *In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. 717, 746–47 (Bankr. S.D.N.Y. 2021) (deeming the questions of whether a prospective new defendant to be added "received notice of the action and knew or should have known that, but for the Plaintiff's mistake, it would have been named" to require factual determinations "which cannot be resolved in ruling on a motion to dismiss."); *In re Enron Corp.*, 357 B.R. 257, 260 (Bankr. S.D.N.Y. 2006) ("*Enron-EarthLink*"), *modified on reconsideration,* 2007 WL 680764 (Bankr. S.D.N.Y. Mar. 1, 2007).

In *Enron-EarthLink*, Judge Gonzalez granted a motion by the plaintiff debtor to add an additional defendant, relating back to its previous complaint, as the potential transferee of proceeds from redemptions of Enron commercial paper in a preference action where the original defendant asserted mere conduit status.  *Enron-EarthLink*, 357 B.R. at 262.  There, the court, finding the FRCP 15(c) analysis analogous to that in *Randall's Island* and *In re Greater Se. Cmty. Hosp. Corp. I*, 341 B.R. 91, 95 (Bankr. D.D.C. 2006), *amended on reconsideration sub*

*nom. In re Greater Se. Cmty. Hosp. Corp.*, No. 02-02250, 2006 WL 2083500 (Bankr. D.D.C. June 26, 2006), deferred a final determination whether the amended complaint related back to the original pleadings to allow plaintiff to conduct discovery to further clarify the roles of the two defendants in the transactions at issue, including the possibility that "each of the parties could be an initial transferee for only a portion of the funds." *Enron-EarthLink*, 357 B.R. at 266-268, 272.

A similar situation confronts the Court here. The Trustee does not allege, contrary to Defendants' assertions (Motion at 12), that Naidot is a mere conduit or otherwise not a transferee or proper party to the litigation. Rather, the Trustee alleges that Naidot expressed its purpose in state filings as investing on behalf of BTC, but in Naidot's own name, and that they are potentially *both* transferees. Am. Compl. ¶¶ 57-59, 72. But like the debtor in *Enron-EarthLink*, the Trustee, without discovery, lacks visibility into, among other relevant factors, the level of "dominion and control" each of Naidot and BTC exerted over the Subsequent Transfers and what portion of same may have been received or retained by either Defendant. The Trustee has amended the original Complaint to add BTC as a defendant at the pre-answer stage, because moving forward with both Defendants would allow for more efficient discovery and an increased likelihood of resolution of the action on the merits.[9]

---

[9] Notably, several courts in this Circuit have allowed the addition of new parties where it was uncertain a FRCP 15(c) mistake had occurred, pending further development of the facts based on the mere "possibility." *See, e.g.*, *Javier H. v. Garcia-Botello*, No. 02-CV-0523S(SR), 2009 WL 10681860, at *3 (W.D.N.Y. Mar. 30, 2009) ("Where there is a close identity of interests of the parties and where there exists a possibility that the plaintiff may have made a mistake in selecting the original defendants.... plaintiff need not substitute a new party for the original, but instead may add the new party and at the same time preserve [the] right to show that the original complaint was correct.") (internal citations and quotations omitted); *Sounds Exp. Int'l Ltd. v. Am. Themes & Tapes, Inc.*, 101 F.R.D. 694, 697 (S.D.N.Y. 1984) ("[FRCP 15(c)] clearly covers not only cases where a party has been misnamed or misdescribed, but also cases where there exists 'a *possibility* that the plaintiff *may have* made a mistake in selecting the original defendants.'") (quoting *Gabriel v. Kent General Hospital Inc.*, 95 F.R.D. 391, 395 (D.Del.1982)) (emphasis added).

## II.    DEFENDANTS' MERE CONDUIT AFFIRMATIVE DEFENSE IS PREMATURE AND NOT ESTABLISHED ON THE FACE OF THE COMPLAINT

Defendants argue that the mere conduit defense requires dismissal of the Trustee's claims under FRCP 12(b)(6).  Motion at 1, 8-15.  Whether a transferee is a mere conduit is an affirmative defense.  As recognized by this Court, an affirmative defense cannot be established on the face of a complaint unless under the "limited exception" where "the facts supporting the defense appear on the face of the complaint," and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) ("*Merkin I*"); *see also McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004).  Defendants have not and cannot establish that here.

### A.    The Mere Conduit Defense is Premature

Defendants' mere conduit argument is premature.  "The party asserting the 'mere conduit defense' has the burden of proof of establishing its status as a mere conduit, rather than a transferee."  *In re Pretty Girl, Inc.*, 644 B.R. 298, 309 (Bankr. S.D.N.Y. 2022) (citations omitted); *see also Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020); *In re Enron Corp.*, 361 B.R. at 49.  The Trustee is not required to anticipate and rebut this defense in the Amended Complaint.  *Citibank*, 12 F.4th at 195-96 (holding the Trustee does not bear the burden of negating an affirmative defense); *Isaiah*, 960 F.3d at 1304 ("A Complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the Complaint."); *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedures, however, do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses."); *Astropower Liquidating Tr. v.*

18

*Xantrex Tech., Inc., (In re Astropower Liquidating Tr.)*, No. 05-50867, 2006 WL 1173853, at *1-
2 (Bankr. D. Del. Apr. 19, 2006).

Resolving the mere conduit defense at the pleading stage is particularly inappropriate
because an inquiry into the applicability of the defense is fact-intensive. *See Global Crossing
Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1
(Bankr. S.D.N.Y. 2008) ("[M]ere conduit" is a "defense" that requires "factual[] support[] . . .
[and] is better addressed on summary judgment," not at the pleading stage.); *In re Astropower*,
2006 WL 1173853, at *1 (agreeing that "'mere conduit' argument is an affirmative defense that
is properly raised in a summary judgment motion but not in a Rule 12(b)(6) motion to dismiss.");
*Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re
Motors Liquidation Company)*, 552 B.R. 253, 266 (Bankr. S.D.N.Y. 2016) (noting the conduit
defense is fact specific and does not lend itself to a motion to dismiss); *see also Picard v. Miller
(In re BLMIS)*, 631 B.R. 1, 14-15 (Bankr. S.D.N.Y. 2021) (ruling on conduit defense at the
summary judgment stage with detailed application of law to facts); *Picard v. Nelson (In re
BLMIS)*, 610 B.R. 197, 238 (Bankr. S.D.N.Y. 2019) (determining conduit status post-trial).

It is instructive, for instance, that Defendants cite *Christy v. Alexander & Alexander of
NY Inc. (In re Finley Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)*, 130 F.3d
52 (2d Cir.1997) ("*Finley Kumble*"), for the test for conduit status used in the Second Circuit.
That case involved a determination of the conduit issue on summary judgment and not on a
motion to dismiss.  Likewise, *In re Kaiser Steel Corp.*, 110 B.R. 514, 516 (D. Colo.) ("*Kaiser
Steel*"), *aff'd sub nom.*, 913 F.2d 846 (10th Cir. 1990), the case Defendants argue has "essentially
the same facts" as this one, was decided on a motion for summary judgment, with no remaining
facts in dispute. *Id.*  And depending on the facts at issue, the conduit defense may not even be

19

resolvable at the summary judgment stage.  *See, e.g.*, *In re CVEO Corp.*, 327 B.R. 210, 217-18

(Bankr. D. Del. 2005) (holding that genuine issues of material fact preclude entry of summary

judgment on mere conduit defense to preference claims).

**B.    Even if Analysis of the Mere Conduit Defense is Appropriate on a Motion to Dismiss, Defendants' Motion Fails to Allege Facts Sufficient to Establish it**

To establish a mere conduit defense, Defendants must show they lacked dominion and

control over all transactions at issue.  *See Finley Kumble*, 130 F.3d at 57–58; *Picard v. Keller*

*Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49–52 (Bankr. S.D.N.Y. 2021) (denying motion

for summary judgment based on mere conduit defense where defendants failed to establish

absence of "dominion and control" over the transfers sought to be avoided and recovered), *aff'd*,

No. 21-CV-8678 (JPO), 2022 WL 7219262 (S.D.N.Y. Oct. 6, 2022).

When considering a motion to dismiss under FRCP 12(b)(6), made applicable by Federal

Rule of Bankruptcy Procedure 7012, "the Court must liberally construe all claims, accept all

factual allegations in the Complaint as true, and draw all reasonable inferences" in the Trustee's

favor.  *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp.2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo*

*Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499,

510 (2d Cir. 2007)).  As the Second Circuit has stated many times, "a district court errs when it  .

. . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6)

motion to dismiss."  *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).

Taking each Defendant in turn, Defendants make no showing that BTC is a mere conduit

beyond conclusory statements about its customers that say nothing about whether BTC had

dominion and control over the Subsequent Transfers.  Motion at 12.  The Amended Complaint

certainly suggests that BTC has customers.  After all, the Trustee alleges that BTC and Bessemer

Trust provide investment management services to high net-worth individuals and families.  Am.

Compl. ¶¶ 3, 55. But the Trustee nowhere "unambiguously allege[s] that it was BTC's customers who invested in Sentry." Motion at 13. To the contrary, the Amended Complaint expressly states that BTC invested in Sentry, and that the shares were registered in the name of Naidot, making Defendants the investors. Am. Compl. at 4. And even if it turns out to be true that BTC invested in Sentry on behalf of its customers, that in no way resolves the question whether BTC was a mere conduit. Nor does the reference in Naidot's state filings to investments held by BTC "in various fiduciary capacities" self-evidently establish BTC as a conduit. *Id.* at 12. *See In re Enron*, 361 B.R., at 48 (determining whether entity was mere conduit required resolution of whether it had legal title to, discretion or authority over, or benefited from payments at issue); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, No. 11-11388 (JLG), 2016 WL 1069303, at *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant "had the absolute right to utilize the Transfers in her discretion" and was not a conduit); *Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 21 (Bankr. S.D.N.Y. 2007) (affirming, in relevant part, grant of summary judgment to Chapter 11 trustee, and holding that "the degree of decision-making authority Bear Stearns possessed with respect to the funds demonstrates a level of 'dominion and control' sufficient to create transferee liability"). Indeed, even if a recipient shows it is subject to some restrictions on the use of funds, that alone does not make it a conduit. *In re Manhattan Investment Fund Ltd.*, 397 B.R. at 17-19.

In *Kaiser Steel*, the case Defendants say has "essentially the same facts" as this one, the district court took up the conduit issue on appeal of denial of a motion for summary judgment. 110 B.R. at 516. Being at the summary judgment stage, and with no facts in dispute, the court based its holding on a review of the defendant broker's form customer account agreements,

21

relevant industry rules, and other evidence establishing, inter alia, that the broker "never held a beneficial interest in" the stock redemptions at issue, "received no consideration for facilitating the conversion of its customers' stock," and "had no ability to control the disposition of funds paid to its customers." *Id*. at 521. The Amended Complaint provides no such visibility into the formal relationship between BTC and its customers and on its face suggests facts to the contrary as concerns BTC's shareholding relationship with, and investments in and out of, Sentry. The Court in a similar case recently rejected the same basis for conduit status that Defendants raise here for BTC. *See Inteligo*, Adv. Pro. No. 11-02763, at p. 23 ("Nothing in the Trustee's Complaint suggests that [defendant] is a mere conduit.").

As for Naidot, Defendants base their entire argument on allegations in the Amended Complaint that Naidot described its purpose as being a nominee for investments made by BTC. Motion at 12-13. But this is not equivalent to the Trustee having alleged that Naidot was a pure conduit. While the Trustee now has enough information about Naidot and BTC to add BTC as a defendant for purposes of FRCP 15(c), his pleading resolves none of the issues affecting conduit status fully addressed at the summary judgment stage in cases like *Kaiser Steel*. For example, discovery is required to reveal, inter alia, the extent of each Defendants' control over the redemptions they received, their overall role and purported good faith, the benefits they received from their transactions with Sentry,[10] the terms of any relevant agreements between Naidot and BTC, and the identity of BTC's purported customers.

Nor is it in some way fatal to the Trustee's claims that he has alleged that Naidot and BTC are both subsequent transferees. As the Trustee explained *supra* at pp. 9-10, there is much information about the relationship between Naidot and BTC and their Sentry investments and

---

[10] Defendants acknowledge that if Naidot or BTC are otherwise mere conduits, but retained any portion of the Subsequent Transfers as fees, the Trustee would have a claim to recovery to the extent of those fees. Motion at 13, n.3.

redemptions that is possessed only by Defendants and, therefore, much should be clarified in discovery. Faced with similar facts concerning an existing defendant and one sought to be added by the plaintiff debtor in the *Enron-EarthLink* case discussed previously, the court deferred determination of the conduit issue until the parties had the benefit of discovery. 357 B.R. at 266-268, 272.

### III. SECTION 546(E)'S SAFE HARBOR DOES NOT APPLY TO DEFENDANTS AND DEFENDANTS' RELIANCE ON *MERIT* IS MISPLACED

Defendants make three contentions in arguing that they are entitled to the protections of Section 546(e): (1) that this Court and the Trustee have acknowledged that Sentry is a conduit, making either Defendants or BTC's customers the initial transferees; (2) that even if the Court considers Defendants to be subsequent transferees, they are still entitled to protection under Section 546(e) because this Court misinterprets Judge Rakoff's decision in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115(JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); and (3) that Defendants have an alternative basis for invoking the safe harbor—that the Subsequent Transfers were made in connection with Defendants' Sentry subscription agreements. Each of these arguments fails.

#### A.    Sentry is Not a Mere Conduit

Defendants base their entire argument as to Sentry's conduit status on a few select statements made by the Court and the Trustee's counsel that Defendants misconstrue. Motion at 18-19. Specifically, while the Court and the Trustee have observed that Sentry's primary function was to funnel funds to BLMIS, it is obvious that neither was characterizing Sentry as a mere conduit as opposed to a transferee. In fact, recently, in *First Gulf,* the Court confirmed that Sentry was the initial transferee of transfers from BLMIS, finding that the "Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the

entirety of the Complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *First Gulf*, 2022 WL 3354955, at *6.

Defendants' reliance on the Supreme Court's decision in *Merit Management Group, LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) ("*Merit*"), to claim the Trustee has improperly defined the transfers sought to be avoided because the initial and subsequent transfers are part of an integrated, overarching series of transfers for purposes of Section 546(e), is misplaced. *See* Motion at 17-20. In *Merit*¸ the Supreme Court held that the only relevant transfer protected by Section 546(e) is the transfer that is subject to the trustee's avoidance powers. *Merit*, 138 S. Ct. at 897 (concluding that "the relevant transfer for purposes of the Section 546(e) safe harbor is the same transfer the trustee seeks to avoid pursuant to its substantive avoiding powers"). *Merit* involved a transfer from the debtor to the defendant through two mere conduits—the debtor's foreign bank and a third-party escrow agent. Merit, the transferee, argued that because the transfer the trustee sought to avoid included as its "component parts" the transfers to these financial institution conduits, Section 546(e) applied. *Id.* at 892. The trustee argued that the only relevant transfer was the transfer from the debtor, Valley View Downs, LP, to the defendant, Merit. *Id.* The Court agreed with the trustee, finding that "[t]he language of § 546(e), the specific context in which that language is used, and the broader statutory structure all support the conclusion that the relevant transfer for purposes of the § 546(e) safe-harbor inquiry is the overarching transfer that the trustee seeks to avoid under one of the substantive avoidance provisions." *Id.* at 892-93.

While Defendants attempt to cloud the issue, *Merit* confirms and supports the recent findings of this Court and the District Court that the safe harbor only applies to the initial transfers from BLMIS to Sentry, which is clearly the overarching transfer the Trustee seeks to

24

avoid. *See Picard v. Multi-Strategy Fund, Ltd.*, No. 22-cv-06502-JSR, 2022 WL 16647767, at

*5 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*"); *Multi-Strategy,* 641 B.R. at 94-95. Here, there

is no real question about the transfers to be avoided and recovered. The Second Circuit has

already determined, and it is now not debatable, that the Trustee properly identified the initial

transfers from BLMIS to its customers as the relevant transfers to be avoided. *See In re Bernard

L. Madoff Inv. Securities LLC (Picard v. Ida Fishman Rev. Trust)*, 773 F.3d 411, 422-23 (2d Cir.

2014); *see also In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019) (holding "when a trustee seeks to

recover subsequently transferred property under § 550(a), the only transfer that must be avoided

is the debtor's initial transfer") (citing *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R.

501, 524 (Bankr. S.D.N.Y. 2012). This Court as well recently rejected as "meritless" the precise

argument Defendants make here concerning *Merit* and Sentry purportedly being a conduit. *See

Inteligo*, Adv. Pro. No. 11-02763, at p. 23 ("The relevant transfers in question for purposes of the

safe harbor are the payments made by BLMIS to its customer. Fairfield Sentry is the alleged

customer of BLMIS, not [defendant].") (citation omitted).

Naidot itself has admitted in this SIPA liquidation proceeding that it is a subsequent

transferee. In its motion to withdraw the bankruptcy reference as to, inter alia, the Section

546(e) safe harbor and the standard for, and burden to plead, good faith under Section 550(b),

Naidot repeatedly referred to itself as a subsequent transferee and its arguments were supported

by subsequent transferee case law. *See generally*, Memorandum of Law in Support of

Defendant's Motion to Withdraw the Reference, dated March 28, 2012 ("*Naidot Mot. to

Withdraw the Ref.*"), ECF No. 15. In fact, Naidot presented the very question at issue here in its

motion to withdraw the reference: "whether the safe harbor applies to shield *subsequent* transfers

made in connection with securities contracts contemplating investment in BLMIS through a

feeder fund." *Naidot Mot. to Withdraw the Ref.* at 16 (emphasis in original).  Naidot's motion brief is replete with similar references to "subsequent transferees."  *See, e.g.*, *Naidot Mot. to Withdraw the Ref.* at 20 ("Subsequent transferees, such as Naidot, who were not investors in the debtor-stockbroker, should not be held to a higher standard of due diligence than the initial transferee and actual customer of BLMIS.").

> **B.    The Trustee and this Court Correctly Interpret *Cohmad***

In Defendants' view, this Court has repeatedly misapplied Judge Rakoff's *Cohmad* decision in cases such as *Banque Syz*, when the Court has held that the safe harbor is a defense to the avoidance of the initial transfer and does not refer to recovery claims under Section 550. Motion at 21.  Defendants are, however, plainly wrong and their assertion that, to the extent they are considered subsequent transferees, they are thus still protected by Section 546(e) because "[t]he controlling factor in Judge Rakoff's opinions is the innocence of the defendant transferee," is its own misinterpretation of relevant precedent.  *Id.*

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer.") (internal citations omitted) (emphasis in original); *Picard v. Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG and Vontobel Asset Management Inc.*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560, at *9 (Bankr. S.D.N.Y. Nov. 18, 2022) ("*Vontobel*") ("The safe harbor is not applicable to subsequent transfers.").  This is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.).

In *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). 2013 WL 1609154, at *1. This Court has previously found the Trustee has sufficiently pled that the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4; *see also Multi-Strategy*, 641 B.R. at 92 ("the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion.").

Defendants' argument that this Court must look to Defendants' actual knowledge rather than that of Sentry is based on a misreading of Section 546(e) and *Cohmad* that has not only time and again been rejected by this Court,[11] but was also recently put to rest by the District Court. Expounding on its decision in *Cohmad,* the District Court found that the avoidability of the initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee, and the Trustee is not required to plead actual knowledge of the subsequent transferee. *Multi-Strategy II*, 2022 WL 16647767, at *5-7 (defendants' "lack of knowledge of Madoff's fraud cannot render unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield").

Defendants also misconstrue *Cohmad*'s "one caveat" that subsequent transferees with actual knowledge are prohibited from benefitting from the safe harbor regardless of the knowledge of the initial transferee. Motion at 22-23. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. "As Judge Rakoff explained, this caveat

---

[11] *See, e.g., Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at *8-10; *Vontobel*, 2022 WL 17087560, at *7-10.

follows from the general principles of recovery: '[a] defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).'" *Vontobel*, 2022 WL 17087560, at *9 (quoting *Cohmad,* 2013 WL 1609154, at *7).

### C.    Defendants' Alternative Arguments are Premature

Defendants argue in the alternative that "Naidot's subscription agreement with Sentry provides an alternative basis" for Defendants to invoke the Section 546(e) safe harbor.  Motion at 24-25.  The District Court, however, also addressed this issue in its recent decision denying seven motions for leave for an interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants, deeming such an alternative argument to be "fact-intensive", not "answerable on the pleadings," and best addressed "with a full factual record" before the court.  *Multi-Strategy II*, 2022 WL 16647767, at *8-9.  As such, to the extent that Defendants seek to apply Section 546(e) to a transfer allegedly made in connection with a securities contract "not involving BLMIS, this issue is…better addressed at a later stage of litigation."[12]  *Vontobel*, 2022 WL 17087560, at *10.

## IV.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendants argue that the Court should dismiss the Complaint as a matter of law because the Trustee "makes no allegations that Naidot or BTC should have been aware of the fraud" and their purported good faith is actually clear on the face of the Amended Complaint.  Motion at 15-16.  This Court has already rejected the "good faith" affirmative defense as inappropriate and untimely on a motion to dismiss, and should similarly reject Defendants' efforts here to recycle

---

[12] The Trustee does not herein agree with or waive his right to contest that any agreements or transfers between Sentry and Defendants activate the safe harbor under Section 546(e), including, among other things, whether any initial transfer was in connection with a Sentry subscription agreement or made for the benefit of either Defendant.

the same arguments. *See Banque Syz*, 2022 WL 2135019, at *10-11 (holding that it is a defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint."); *First Gulf*, 2022 WL 3354955, at *10 (same); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *1 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256, at *6 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"). Like Defendants here, the defendants in *Banque Syz*, *First Gulf*, *Delta*, and *ABN Ireland* argued that their good faith defense was established on the face of the complaint. *Banque Syz*, 2022 WL 2135019, at *10; *First Gulf*, 2022 WL 3354955, at *10; *Delta,* 2022 WL 3365256, at *6; *ABN Ireland*, 2022 WL 1304589, at *3. The Court in those cases concluded that the affirmative defense could not be resolved at the pleading stage (*id.*), and the same result is warranted here.

Affirmative defenses are fact-driven, and they require factual analyses and a presentation of evidence. *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a fact-based determination can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor."); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). That sort of factual analysis is not appropriate at this stage, particularly with respect to a good faith defense. *See, e.g., Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith . . . is a disputed issue

that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

To try to get around the fact that the good faith pleading burden is no longer on the Trustee,[13] Defendants make an unsupportable argument that their good faith has been established as a matter of law on the face of the Amended Complaint. Motion at 15-16. But, as recognized in *Merkin I*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. "To bring a good faith defense during a motion to dismiss, the defendant must meet a stringent standard and show beyond a doubt that the plaintiff can prove no set of facts in support of his claim." *Delta*, 2022 WL 3365256, at *6 (citing *McKenna v. Wright*, 386 F.3d at 436). Defendants do not come close to meeting this standard.

Defendants cannot rely on an assortment of cherry-picked allegations as to BLMIS's secrecy, and factual inferences they wish this Court to draw from same in their favor. *ABN Ireland*, 2022 WL 1304589, at *3. Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud, for instance, is not dispositive as to a defendant's good faith and does not mean that "the Trustee has acknowledged that Naidot and BTC were unaware of the fraud" (Motion at 16). *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations

---

[13] *Citibank*, 12 F.4th at 178, 195-96 (holding that in a SIPA liquidation proceeding the good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith).

regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[14]

Arguments concerning value are similarly inappropriate for a motion to dismiss barring highly unusual circumstances, which Defendants have failed to show exist here. *See*, *e.g.*, *Vontobel*, 2022 WL 17087560, at *12 ("Whether Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial.") (citing *Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9). The Amended Complaint does not mention Defendants exchanging shares for consideration, and the value defense is therefore not pleaded on the face of the Amended Complaint. Indeed, this Court has previously concluded that "[a]s to whether the Defendant 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." *Fairfield Inv. Fund*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9. "'Value' is Defendants' burden to plead and prove." *Vontobel*, 2022 WL 17087560, at *12 (citing *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018)).

---

[14] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise").

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendants' Motion.


Dated: New York, New York                By: <u>/s/ Howard L. Simon</u>
       December 19, 2022                Howard L. Simon (hsimon@windelsmarx.com)
                                    Kim M. Longo (klongo@windelsmarx.com)
                                    John J. Tepedino (jtepedino@windelsmarx.com)
                                    Windels Marx Lane & Mittendorf, LLP
                                    156 West 56th Street
                                    New York, New York 10019
                                    Tel:  (212) 237-1000
                                    Fax: (212) 262-1215

                                    *Special Counsel for Irving H. Picard, Trustee for the*
                                    *Substantively Consolidated SIPA Liquidation of*
                                    *Bernard L. Madoff Investment Securities LLC and the*
                                    *Chapter 7 Estate of Bernard L. Madoff*