**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02763 (CGM) |
| Plaintiff, | |
| v. | |
| INTELIGO BANK LTD., F/K/A BLUBANK LTD, | |
| Defendant. | |

**REPLY BRIEF IN SUPPORT OF**
**INTELIGO BANK DEFENDANTS' MOTION TO DISMISS**

Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 1

    I.      THE COURT LACKS PERSONAL JURISDICTION OVER INTELIGO BANK .... 1

        A.  The Trustee's Personal Jurisdiction Theory Has Been Rejected by the Supreme Court ................................................................................................................. 1

        B.  The Trustee Failed to Identify a "Substantial Connection" Between Inteligo and New York ................................................................................................................. 7

    II.     THE TRUSTEE'S CLAIM IS BARRED BY THE MERE CONDUIT DEFENSE OR THE SECTION 546(e) SAFE HARBOR ................................................................ 11

        A.  Inteligo Bank Is Either Subject To The Mere Conduit Defense Or Is The Initial Transferee For Purposes Of The Section 546(e) Safe Harbor .................................... 12

        B.  Inteligo Bank Is Entitled To Section 546(e)'s Safe Harbor Even If It Were A Subsequent Transferee ................................................................................................. 15

        C.  Inteligo Bank Has An Alternative Basis For Invoking Section 546(e)'s Safe Harbor ................................................................................................................. 15

CONCLUSION ........................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 546(e) ......................................................................................................... 1, 11-16

Section 550(a)(1) ...................................................................................................................12

**Court Documents**

Dkt. 1 (Complaint) ................................................................................8, 10, 12, 14, 16

Dkt. 116 (Defendant's Motion to Dismiss)..................................................................8

Dkt. 117 (Defendant's Memorandum of Law in Support of Motion to Dismiss) ........................15

Dkt. 120 (Trustee's Opposition to Defendant's Motion to Dismiss).............. 3-4, 6-7, 9-10, 13-15

Dkt. 121 (Decl. of A. Vanderwal with Exhibits) ................................................. 10-11

*In re BLMIS (Banque Lombard Odier)*, No. 12-01693, Tr. at 104 (Bankr. S.D.N.Y. June 15, 2022) ...............................................................................................................13

**Cases**

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).........................2-7

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 480 B.R. 480 (S.D.N.Y. 2012)...................................................................................15

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ...............................................................4

*Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*, 2022 WL 2236946 (June 22, 2022) 8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).................................................................. 2, 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ........................... 2-3, 9

*Hanson v. Denckla*, 357 U.S. 235 (1958) .........................................................................2

*Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66 (2d Cir. 2017) ....................................... 8-9

*In re Bicom NY, LLC*, 2022 WL 1419997 (2d Cir. May 5, 2022) ...............................................13

*In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014)..................... 11, 13-14

*In re BLMIS (Picard v. Bureau of Labor Insurance)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......3

*In re BLMIS*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016).........................................................14

*In re BLMIS*, 594 B.R. 197 (Bankr. S.D.N.Y. 2018).......................................................14

*In re BLMIS*, 976 F.3d 184 (2d Cir. 2020).....................................................................11

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52 (2d Cir. 1997) ...........................................................................................................11, 13

*In re Mexican Gov't Bonds Antitrust Litig.*, 2022 WL 950955 (S.D.N.Y. Sept. 3, 2022) ..............9

*In re Nine West LBO Sec. Litig.*, 482 F. Supp.3d 187 (S.D.N.Y. 2020).....................................13

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) .......................................................1

*Johnson v. UBS AG*, 791 F. App'x 240 (2d Cir. 2019)............................................................ 7-8

*Mallory v. Norfolk S. Ry.*, No. 21-1168, Br. of United States (filed Sept. 2, 2022) (*Mallory* Br.) 2-3, 6

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) .................................................................12

*Merit Management Group LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018)....................... 12-13

*Pani v. Empire Blue Cross Blue Shield*, 152 F.2d 67 (2d Cir. 1998) ...........................................12

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ...........................................................4

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................................2

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ...................................6

*SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................ 15-16

*SIPC v. BLMIS*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)................................... 12-13

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)...............................................................9

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) .............................................12

*United States ex rel. TZAC Inc v. Christian Aid*, 2022 WL 2165751 (2d Cir. June 16, 2022) (*Christian Aid*) ...........................................................................................................................4, 9

*Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)......12

*Walden v. Fiore*, 571 U.S. 277 (2014)................................................................................. 4-5, 8

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ........................................2-3, 6

*Yak v. BiggerPockets LLC*, 2022 WL 67740 (2d Cir. Jan. 7, 2022)...............................................7

## INTRODUCTION

The Complaint should be dismissed because the Trustee has failed to establish personal jurisdiction over the foreign defendant, Inteligo Bank (Inteligo), based on its interactions with the third-party Fairfield Funds who in turn invested in BLMIS in New York. Additionally, the Trustee's six-year claims fall within the safe harbor of Section 546(e) for three reasons: (1) if not a mere conduit itself, Inteligo would be the initial transferee because Fairfield Sentry and Fairfield Sigma were merely conduits, and Inteligo satisfies the elements of Section 546(e) and was unaware of the BLMIS fraud; (2) even if viewed as a subsequent transferee, Inteligo can challenge the initial transfer because it was unaware of the BLMIS fraud; and (3) Inteligo has an alternative basis for invoking Section 546(e) as a bank that had a securities contract with Sentry.

## ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER INTELIGO BANK

### A. The Trustee's Personal Jurisdiction Theory Has Been Rejected By The Supreme Court

The Trustee ignores that the general rule is that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter," and that principle plainly applies to Inteligo because it is undeniably based and primarily operates abroad. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Instead, the Trustee seems to mistakenly believe that the Supreme Court designed the minimum contacts test as some sort of broad exception designed to eviscerate this very rule. The Trustee views the "minimum contacts" test for personal jurisdiction as asking whether a defendant has had even minimal contacts with a forum state, such that any minimal contact will do. But the "minimum contacts" test is not satisfied by the Trustee rattling off any number of minimal contacts with a forum, rather the inquiry is whether there are sufficient minimum contacts to warrant a state exercising personal

1

jurisdiction over a defendant.  As the Supreme Court has explained: "The purpose of this test, of course, is to protect a defendant from the travail of defending in a distant forum, unless the defendant's contacts with the forum make it just to force him to defend there." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985).

Confining each state's ability to exercise personal jurisdiction over a defendant to that defendant's acts within its territory also promotes comity and respect for the sovereignty of other states.  Thus, more recent Supreme Court case law emphasizes that personal jurisdiction "rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'"  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).  Restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation.  They are a consequence of territorial limitations on the power of the respective States." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1784 (2017) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).  Each state retains "the sovereign power to try causes in its courts.  The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States." *Id* at 1780 (quoting *Volkswagen*, 444 U.S. at 293).  Not only is this a significant federalism concern among American states, it impacts "international comity" because foreign countries typically do not follow an "expansive view" of personal jurisdiction and expansive claims to jurisdiction by American courts have impeded U.S. interests abroad. *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  The Solicitor General recently advised the Supreme Court: "It poses risks to international comity by allowing state courts to hear cases against foreign defendants arising out of occurrences in foreign countries." *Mallory v. Norfolk S. Ry.*, No. 21-1168, Br. of United States at 4 (filed Sept. 2, 2022) (*Mallory* Br.).  "Foreign countries have objected to our state courts'

expansive assertions of personal jurisdiction against foreign defendants in cases that concern foreign activities. Those objections have impeded the negotiation of international conventions on the reciprocal recognition and enforcement of judgments." *Id.* at 11. "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

Given this "idea of reciprocity between a defendant and a State: When (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the company to account for related misconduct," more recent "decisions have added that our doctrine similarly provides defendants with 'fair warning'—knowledge that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Ford*, 141 S. Ct. at 1025; *see also Volkswagen*, 444 U.S. at 297 ("clear notice"). Clear notice means a "defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

Not surprisingly, the Trustee relies on the theory that a defendant who "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom," has subjected itself to personal jurisdiction and notes that this Court has applied that theory in several cases. (Dkt. 120 at 13 (quoting *In re BLMIS (Picard v. Bureau of Labor Insurance)*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012) (*BLI*).) The Trustee even claims that Inteligo investing in the Fairfield Funds abroad, knowing those funds would be invested in BLMIS, "alone" is sufficient to confer personal jurisdiction. (Dkt. 120 at 10.) But that line of cases is no longer good law, and the principle itself does not apply to the facts.

3

In the first place, Inteligo did not toss that seed into New York, rather the Trustee alleges that seed was tossed by Fairfield Sentry.  The Trustee acknowledges that Inteligo is a foreign entity that invested in another foreign entity, Fairfield Sentry (and Fairfield Sigma, which invested most of its funds into Sentry), and that Fairfield Sentry invested the funds with BLMIS in New York. That fact alone is dispositive in Inteligo's favor because more recent Supreme Court caselaw emphasizes that "to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'"  *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127).  "[T]he defendant's suit-related conduct must create a *substantial connection* with the forum," and "the relationship must arise out of contacts that the 'defendant *himself* ' creates with the forum State."  *Walden*, 571 U.S. at 284 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (first emphasis added, second emphasis in *Walden*).  The Second Circuit has followed this more recent Supreme Court case law in making clear that even a more direct contact with the United States will not "alone" confer jurisdiction.  *See United States ex rel. TZAC Inc v. Christian Aid*, 2022 WL 2165751, at *2 (2d Cir. June 16, 2022) (rejecting that the U.S. had personal jurisdiction over a foreign defendant that signed a contract with the U.S. government, even where that contract was the source of plaintiff's claim).

The Trustee tries to salvage the *BLI* line of cases by claiming there is a distinction between whether a defendant's conduct will foreseeably have impacts within a state and whether such conduct is intended to have impacts within a state, but that is no distinction at all and whatever daylight exists between the two is irrelevant.  (Dkt. 120 at 12.)  It is well-settled "presumption, common to the criminal and civil law, that a person intends the natural and foreseeable consequences of his voluntary actions."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 278 (1979).

4

*Walden* demonstrates that this purported distinction is irrelevant. In that case, plaintiffs were travelling from Puerto Rico to their home in Nevada, but they were detained while catching a connecting flight in Georgia and a large quantity of their cash was seized. 571 U.S. at 280. Plaintiffs sued the law enforcement officer in Nevada for having illegally seized their money in Georgia, arguing that "Nevada may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." *Id.* at 279. Nevertheless, the Supreme Court reversed the Court of Appeals' finding of personal jurisdiction because the focus of the minimum contacts test is on where the defendant's conduct occurred, not where he knew the injury would occur.

The Trustee's effort to distinguish *Walden* ignores the facts. The Trustee claims that its case is different because it alleges that Inteligo's contact with New York was purposeful, and not merely "a result of happenstance or coincidence," even if foreseeable, but there was no issue of "happenstance or coincidence" in *Walden* either. In *Walden*, the defendant knew that the plaintiffs were travelling home to Nevada when it seized their money, so he knew for certain that it would precisely be Nevada where the Plaintiffs would land without their money. What matters is that the defendant in *Walden*, just like Inteligo here, took no meaningful action in the forum state. Indeed, Inteligo's conduct with New York is even more attenuated because the conduct in New York was taken by intervening third-parties.

The *BLI* line of cases followed the same line of reasoning that the Supreme Court reversed in *Walden* and *Bristol-Myers*, so the Trustee errs in imagining that that same analysis has survived in *BLI*. But just as *BLI* is inconsistent with the explicit language of more recent Supreme Court case law, so is its result. As noted above, the Supreme Court has placed a heavy emphasis on a clear test that allows defendants to structure their transactions to avoid being haled into foreign

5

forums and to avoid turf wars between competing jurisdictions. That is accomplished by a test that focuses strictly upon the territory in which defendants' conduct actually occurred because where that conduct occurred can typically be identified decisively. By contrast, allowing personal jurisdiction over completely foreign transactions simply because there would ultimately be some third-party's activity in New York would become unwieldy, totally unpredictable, and readily subject to dispute.

The Trustee does not even try to square its theory of personal jurisdiction with the Supreme Court's concerns, instead it trivializes the Supreme Court's concerns. The Trustee claims that if minimum contacts are established it would be "rare" for other concerns to render personal jurisdiction inappropriate (Dkt. 120 at 23), but the Supreme Court does not craft a test that is rarely of use in the real world. To the contrary, the Supreme Court has emphasized that "this federalism interest may be decisive," "'[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; [and] even if the forum State is the most convenient location for litigation.'" *Bristol-Myers*, 137 S. Ct. at 1780-81 (second quote from *Volkswagen*, 444 U.S. at 294). The Solicitor General also recognizes that "even in the absence of any unfairness, principles of interstate federalism alone can preclude a state court's exercise of personal jurisdiction." *Mallory* Br. at 13.

Similarly, the Trustee dismissed Inteligo's interest in being able to structure its affairs to avoid being subject to litigation in New York by improperly suggesting that the focus should not by on a defendant's due process rights, but on "the plaintiff's interest in obtaining convenient and effective relief." (Dkt. 120 at 19 (quoting *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022).) But *Bristol-Myers*, discussed above, plainly demonstrates that is false.

6

In that case, for the convenience of the plaintiffs and efficiency of the litigation, plaintiffs from across the country sought to sue the pharmaceutical company in California for alleged harms in the distribution for a drug nationwide. The defendant had substantial ties to California, used a California distributor, and made $900 million worth of sales of the drug in California, but the Supreme Court held that the non-California resident plaintiffs could not sue in California because the defendant's conduct toward those plaintiffs occurred in different forums. *Bristol-Myers*, 137 S. Ct. at 1778.

*Bristol-Myers* demonstrates that the focus on each defendant's conduct within a state's territory is controlling, even if it were more efficient to try all the related cases in one jurisdiction and the selected forum is not particularly burdensome to the defendant.[1] In a fraud with global ramifications, such as the one committed by Madoff, it should not be surprising that some parts of the case are more appropriately litigated elsewhere.

**B.** **The Trustee Failed to Identify A "Substantial Connection" Between Inteligo and New York**

The Trustee continues to play this game of "gotcha" by listing every incidental contact that Inteligo had with New York in an effort to pretend that any one in isolation, or viewed

---

[1] The Trustee also seeks to minimize the burden of foreign litigation on Inteligo, but the burden on Inteligo is certainly greater than on the defendant in *Bristol-Myers* that had facilities in California. The Trustee's arguments on the lack of a burden border on absurd. The Trustee notes that Inteligo has U.S. counsel, but that is surely irrelevant. (Dkt. 120 at 24.) Any distant company can hire U.S. counsel, but that does not make litigation in the U.S. convenient. It also claims that Inteligo has been actively litigating this case for more than a decade, but that reflects a very loose use of the word "actively." (*Id.*) A decade into this litigation, very little has occurred with respect to Inteligo—we are only now litigating motions to dismiss. Finally, the Trustee persists in making the same tired argument that Inteligo agreed to litigate claims that could arise with others in New York. Those agreements are inapplicable here and therefore irrelevant. *Yak v. BiggerPockets LLC*, 2022 WL 67740, at *3 (2d Cir. Jan. 7, 2022) (inapplicable forum selection clause does not confer personal jurisdiction). Even where a defendant actually litigated in New York previously (and not just agreed to do so), that is not sufficient to establish convenience. *Johnson v. UBS AG*, 791 F. App'x 240, 243 (2d Cir. 2019).

cumulatively, is sufficient to confer personal jurisdiction, but the Trustee is playing by his own

rules. This Court is bound by the rules set by the Supreme Court, including: "[T]he defendant's

suit-related conduct must create a *substantial connection* with the forum," and "the relationship

must arise out of contacts that the 'defendant *himself*'' creates with the forum State." *Walden*, 571

U.S. at 284 (citations omitted); *accord Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019).

The Trustee points chiefly at the actions taken by the Fairfield Funds with money sent by Inteligo,

and it points to incidental meeting, phone calls and emails with New York and the transfer of

money through New York banks, but Inteligo already has shown that none of this creates a

substantial connection. (Dkt. 116 at 4-13.)[2]

In the wake of more recent Supreme Court case law, the Second Circuit has rejected these

bases for personal jurisdiction in other Madoff-related cases. In affirming dismissal on personal

jurisdiction grounds in *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017),

the Second Circuit explained: "The communication and transmission of information to and from

Bernard L. Madoff Investment Securities LLC ('BLMIS') in connection with fund administration

and custodial duties do not give rise to personal jurisdiction … Nor does the mere maintenance of

correspondent bank accounts at an affiliate bank in New York." The bank defendants in *Hau Yin

To* corresponded and sent money directly to BLMIS and, thus, they had a closer relationship to

BLMIS than Inteligo. Inteligo sent money to Sentry and Sigma, which merely passed through a

U.S. bank before being deposited in the Sentry and Sigma bank accounts in Ireland. (Dkt. 1 ¶7

---

[2] In the event that the Trustee has not identified enough of these incidental contacts, he seeks jurisdictional discovery to find more. But this sort of fishing expedition should be rejected. Plaintiff has the burden of establishing that personal jurisdiction exists and jurisdictional discovery is unwarranted without a showing that a contact that is likely to be sufficient has been identified, which is the case here. *See, e.g., Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*, 2022 WL 2236946, at *3 (June 22, 2022). Adding a bunch of insufficient contacts together will not change the result anymore than adding a bunch of zeroes to an equation.

("wired funds to Fairfield Sentry through a bank in New York"). Sigma, in turn, invested the money in Sentry, and Sentry sent money to BLMIS. Consequently, the plaintiffs' failure to establish personal jurisdiction in *Hau Yin To* makes the Trustee's attempt to establish personal jurisdiction over Inteligo Bank much more of a stretch.

In another Madoff-related case, the Second Circuit affirmed dismissal for lack of personal jurisdiction where the defendant's contacts with "the forum and the litigation amount to a handful of communications and transfers of funds," concluding: "These limited contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS Defendants." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018). Like *Hau Yin To*, the defendants in *SPV* were banks that represented certain BLMIS feeder funds, similar to Sentry in the present case, demonstrating once again that the Second Circuit has rejected claims of personal jurisdiction over defendants with a much closer connection to BLMIS and New York than whatever attenuated connection the Trustee claims exists with Inteligo

The Trustee attempts to elude the force of these holdings by noting they involve different agreements than the ones at issue here, but the point is that the same kinds of contacts that the Trustee alleges here were inadequate to confer personal jurisdiction there.[3] Given these more recent cases, including *Christian Aid*, none of the contacts alleged by the Trustee are sufficient.

Those specific contacts are addressed in more detail in Inteligo's motion, so we will not repeat those arguments here, but the Trustee invokes some new supposed contacts that Inteligo

---

[3] Remarkably, the Trustee claims without much intelligible explanation that one of these cases, *SPV*, is now "suspect" due to the Supreme Court's decision in *Ford*, but that is neither correct nor appropriate for this Court to decide. (Dkt. 120 at 21 n.5.) Judge Oetken recently rejected a similar claim that *Ford* undermined Second Circuit law and made clear that it is for the Second Circuit to decide whether to revisit its opinions given *Ford*, but Second Circuit precedent remains binding unless and until it is altered by the Second Circuit. *In re Mexican Gov't Bonds Antitrust Litig.*, 2022 WL 950955, at *3 (S.D.N.Y. Sept. 3, 2022).

will address briefly.  The Trustee previously identified Inteligo as having a single meeting in New York in 2008, which is too incidental and comes too late in the alleged scheme to establish personal jurisdiction.  But now the Trustee claims that Inteligo had additional meetings in New York even earlier, but it is mistaken.

The Trustee alleges a New York meeting occurred in February was 2004, but the Trustee's evidence is not that this meeting was with Inteligo.  (Dkt. 120 at 15 (citing Exs. 1, 25-26 attached to Dkt. 121).)  Exhibit 25 shows that Fairfield Group anticipated meeting with "Interbank" and Exhibit 26 explains that a meeting occurred with "Interbank Ltd. (Peru)," which is a different legal entity form Inteligo.  Fairfield identified Blubank (now Inteligo) as a subsidiary of Interbank, but in 2004 Blubank was not a subsidiary of Interbank, it was a subsidiary of IFH Peru Ltd.  Additionally, while Fairfield is optimistic that it can grow the Interbank account to over $100 million, Inteligo never invested more than $9 million in those funds, which reflects a disconnect.  Thus, there is no indication that this informational meeting was to promote Inteligo's investment in BLMIS.

The Trustee makes a similar error with a suggested meeting in 2005.  (*Id.*).  Ex. 27 reflects that Fairfield is improperly conflating Interbank with Blubank.  Again, the exhibit refers to meeting "Blubank based in Lima, Peru" and claims "Blubank is the second largest bank in Peru," but Interbank was the Peruvian bank.  Blubank is incorporated in the Bahamas and has a branch in Panama, but never operated in Peru.  The Trustee knows this, as it is in the Complaint.  (Dkt. 1 ¶2.)

More problematically, there is no indication that this was an in-person meeting or that it took place in New York.  Exhibit 27 is requesting that a Fairfield employee who is based in the Bermuda meet with Blubank (Dkt. 121, Ex. 1 at 7) which is based in the Bahamas.  Again, Exhibit

27 identifies the investment at the time as already around $10 million, which is also the most Inteligo had invested in the fund. Thus, at most this was an inconsequential meeting because it did nothing to cause Inteligo to increase its investment.

The Trustee also makes new claims regarding a fee sharing arrangement with Fairfield for promoting its funds, but this adds nothing. The entire complaint is premised on Inteligo's relationship with Fairfield, and this agreement with Fairfield is more of the same. There is no indication that it was even negotiated or signed in New York, there is no signature from Blubank on the document which suggests that Blubank signed the document in New York. (Dkt. 121, Ex. 15.) And this fee sharing is roughly $5,000, an incidental amount that would surely offend any notion of fair play and substantial justice to serve as a basis for hauling Inteligo into a foreign court to defend claims for $11,000,000 – more than 2,000 times that amount. The minimal fees also reflect that this agreement could not have incentivized Inteligo to aggressively promote the Fairfield Funds.

## II.     THE TRUSTEE'S CLAIM IS BARRED BY THE MERE CONDUIT DEFENSE OR THE SECTION 546(e) SAFE HARBOR

The Trustee's claim is barred either because Inteligo was a mere conduit and, as such, cannot be considered a transferee, *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997), or the Trustee's claim is barred by the Section 546(e) safe harbor. The safe harbor of Section 546(e) has been litigated extensively in the Madoff-related litigation, and the Second Circuit has affirmed the dismissal of the Trustee's claims on this basis in some cases. *In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Fishman*"), *accord In re BLMIS*, 976 F.3d 184, 193 (2d Cir. 2020).

11

### A. Inteligo Bank Is Either Subject To The Mere Conduit Defense Or Is The Initial Transferee For Purposes Of The Section 546(e) Safe Harbor

The Trustee claims that the mere conduit defense is an affirmative defense and that it is premature to decide the issue now, which is generally true but is not true here. An affirmative defense can be raised where on a motion to dismiss "if the defense appears on the face of the complaint," which is the case here. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.2d 67, 74 (2d Cir. 1998).

As Inteligo explained in its motion, long after the Trustee brought this claim against Inteligo (and similar claims against others), the Supreme Court's decision in *Merit Management Group LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018), indicated that the Trustee had misidentified the "initial transferee" for purposes of Section 550(a)(1). The Trustee's complaint alleges that Inteligo invested in Sentry and Sigma, knowing those funds would be invested in BLMIS. (Dkt. 1 ¶6.) As this Court recently noted, the Trustee's position is that these "Fairfield Funds were created as *conduits*" for investing in BLMIS. *SIPC v. BLMIS*, 2021 WL 3477479, at *7 (Bankr. S.D.N.Y. Aug. 6, 2021) (emphasis added). Thus, the Trustee's Complaint alleges that when Inteligo sought to redeem its customers' investment, "Inteligo knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma, both Fairfield Greenwich Group ('FGG') managed Madoff feeder funds." (Dkt. 1 ¶6.)

Although the Complaint characterizes these transactions as "subsequent transfers," substance takes precedence over labels and the Supreme Court's decision in *Merit* makes clear that the Trustee has mislabeled the transaction. In *Merit*, the Supreme Court ultimately "determine[d] how the safe harbor operates in the context of a transfer that was executed via one or more transactions, *e.g.,* a transfer from A → D that was executed via B and C as intermediaries, such that the component parts of the transfer include A → B → C → D." 138 S. Ct. at 888. That is

12

essentially the same fact-pattern here, where Inteligo sought the return on its customers' ultimate investment in BMLIS and those funds were returned to it through a conduit in Sentry. In *Merit*, "the Supreme Court held that "the relevant transfer for purposes of the § 546(e) safe-harbor inquiry is the overarching transfer that the trustee seeks to avoid," and "not any component part of that transfer." *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 206 (S.D.N.Y. 2020) (quoting *Merit*, 138 S. Ct. at 893). As the Second Circuit explained, "the term 'initial transferee' references something more particular than the initial recipient" and it accordingly has "held that 'mere conduits' of fraudulent transfers are not 'initial transferees.'" *In re Bicom NY, LLC*, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (quoting *In re Finley,* 130 F.3d at 52). Properly viewed then, the transaction should be viewed as BLMIS transferring the funds to Inteligo's customers as the initial transferee, with Sentry, Sigma, and Inteligo acting as mere conduits in those transactions. As a mere conduit, Inteligo would not be liable. *In re Finley*, 130 F.3d at 57.[4]

Alternatively, because Sentry is recognized as a mere conduit even by the Trustee, even if Inteligo were viewed as the initial transferee, Inteligo qualifies for the Section 546(e) safe harbor. *SIPC*, 2021 WL 3477479, at *7.[5] Framed in that manner, the other elements of Section 546(e) are clearly present. The Second Circuit already has found that "BLMIS was a 'stockbroker' for the purposes of § 546(e)," and that transactions from BLMIS to its customers were in connection with

---

[4] The Trustee claims that in 2014 the Second Circuit accepted its framing of these transactions as subsequent and that Inteligo had done so as well "[m]any years ago," but that predates the Supreme Court's 2018 decision in *Merit*. (Dkt. 120 at 31 (citing *Fishman*, 773 F.3d at 422-23.)

[5] Even more recently, at the June 15, 2022 hearing, counsel for the Trustee told the Court that "BLMIS was Sentry's de facto investment manager [and] BLMIS made the investment decisions for Sentry and that Sentry had no control over those decisions." *In re BLMIS* (Banque Lombard Odier), No. 12-01693, Tr. at 104 (Bankr. S.D.N.Y. June 15, 2022) (statement of Mr. Calvani). He also said there is not "much daylight between Sentry and BLMIS. Sentry was not an independent and legitimate fund. It was just Madoff's marketing arm. It was wholly dependent upon Madoff and its sole purpose was to feed investors in Madoff." *Id.* at 106. That is a plain acknowledgment that Sentry was just a mere conduit.

securities contracts, and that "the transfers constituted 'settlement payments,' which provides another basis to shield the transfers from avoidance under § 546(e)." *Fishman*, 773 F.3d at 417, 422.[6]

Likewise, the Complaint makes no allegations that Inteligo did not invest in good faith, but instead explains how Madoff sought to deceive regulators and investors, like Inteligo. The Trustee alleges that "[o]utwardly" Madoff credited his success to a so-called split-strike conversion strategy and "Madoff assured clients and regulators" that he was making genuine transactions. (Dkt. 1 ¶¶ 24, 26.) Like the complaint in *Fishman*, the complaint here claims that Madoff "promised" clients that he would make investments, and the Second Circuit credited the defendants with believing that promise. (*Compare* Dkt. 1 ¶26 *with Fishman*, 773 F.3d at 419.) There is no allegation in the Complaint that Inteligo knew otherwise.[7]

---

[6] The Trustee seeks to muddle the facts to manufacture a non-existent dispute in an effort to prolong this litigation. The Trustee claims that Inteligo moved funds into an account with its own "name" and claims the investment were on behalf of its "purported, unnamed customers" (Dkt. 120 at 27, 29), and even asserts that it is unaware of any documents reflecting that "redemption payments refer to Defendant's customers or indicate that Defendant was acting as an intermediary in the transaction" (*id.* at 6). These statements are not credible. The Trustee's Complaint explains "Defendant Inteligo was a private financial advisory and banking services company," and describes its website marketing its "investment portfolio," which is an acknowledgment that it was selling its investment services to others. (Dkt. 1 ¶3.) Moreover, the Trustee claims in this *same* filing that Inteligo met with Fairfield to discuss investments that it could market to its customers. (*See* Exs. 25 ("introduce their client[s to] our other investment funds"); 26 ("Their focus is to look for opportunities in which they can offer their clients products with limited risk and volatility" and Fairfield expressing hope of tapping the bank's "exclusive network of high net worth individuals"); 27 ("actively marketed our funds"). There is no genuine dispute over the fact that Inteligo was acting as an intermediary on behalf of its clients, rather than itself, and that its clients owned the money at issue.

[7] Absent some credible factual allegation to the contrary, the Court should presume that Inteligo Bank would not knowingly invest in a Ponzi scheme. *See, e.g.*, *In re BLMIS*, 548 B.R. 13, 32 (Bankr. S.D.N.Y. 2016) ("While greed may cloud judgment, it is not plausible that the average financial professional owing fiduciary duties to its own clients and investors would knowingly invest their money in a Ponzi scheme that is doomed to collapse."); *In re BLMIS*, 594 B.R. 197, 204 (Bankr. S.D.N.Y. 2018) (finding it "implausible" that defendants would invest "if they subjectively believed that there was a high probability that BLMIS was not actually trading

## B. Inteligo Is Entitled To Section 546(e)'s Safe Harbor Even If It Were A Subsequent Transferee

Inteligo has set forth its understanding of Judge Rakoff's order in *SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), concerning why it believes Section 546(e)'s safe harbor is applicable, while acknowledging that this Court has ruled differently. (Dkt. 117 at 20-23.)  The Trustee simply provides a string-cite to all the times this Court has ruled differently (Dkt. 120 at 33), which obviously is no reason for the Court to continue doing so if Inteligo can convince the Court that its prior view was mistaken.  At any rate, the issue is fully briefed for this Court to consider.

## C. Inteligo Bank Has An Alternative Basis For Invoking Section 546(e)'s Safe Harbor

Judge Rakoff also blessed an alternative basis for invoking Section 546(e)'s safe harbor in his *Cohmad* decision where "the transfers to these defendants were made in conjunction with agreements that independently satisfy Section 546(e)'s requirements," and that is the case here. 2013 WL 1609154, at *8.  Section 546(e) requires that a transfer be "in connection with a securities contract."  11 U.S.C. § 546(e).  Unlike BLMIS's direct customers and many others, Inteligo can invoke Section 546(e) on an alternative basis: its agreements with Sentry.  Judge Rakoff recognized that "a securities contract includes . . . the Madoff Securities account agreements," but he went on to explain that "the definition of a securities contract is in fact much broader and includes, *inter alia,* investment fund subscription agreements."  *Cohmad*, 2013 WL 1609154, at *8.  Judge Rakoff evaluated the statutory language and concluded that "Section 546(e)'s reach

---

securities"); *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 480 B.R. 480, 489 (S.D.N.Y. 2012) (dismissing allegations that banks would knowingly invest in a debtor they knew was "shuffling money around to meet short term obligations"), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).

does not depend on the involvement of the debtor in the securities contract at issue." *Id.* at *9. As the Trustee recognizes in the Complaint, "Defendant Inteligo entered into a subscription agreement with Fairfield Sentry." (Dkt. 1 ¶7.)

Judge Rakoff also found that "where the Trustee alleges that a defendant is 'a banking institution,' 'a national bank,' or 'a nationally chartered bank,' . . . the defendant may be deemed to constitute a protected 'financial institution' or 'financial participant' for the purposes of Section 546(e) on the face of the complaint." *Cohmad*, 2013 WL 1609154, at *8. And here, the Trustee's Complaint recognizes that Inteligo "was a private financial advisory and banking services company." (Dkt. 1 ¶3.) Accordingly, Inteligo's subscription agreement with Sentry provides an alternative basis for it to invoke Section 546(e), and the Trustee's six-year claims should be dismissed.

## CONCLUSION

The Court should dismiss the Complaint against Inteligo in its entirety for lack of personal jurisdiction and, alternatively, for failure to state a claim under either the mere conduit defense or the Section 546(e) safe harbor.

Date:    September 26, 2022

/s/ Heather Lamberg
Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)