**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01046 (CGM) |
| Plaintiff, | |
| v. | |
| SNS BANK N.V., and SNS GLOBAL CUSTODY B.V., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................4

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................................4

II.   DEFENDANTS INVESTED WITH BLMIS THROUGH THE FAIRFIELD
      FUNDS ............................................................................................................5

ARGUMENT ..................................................................................................................7

I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER
      DEFENDANTS ..................................................................................................7

      A.    Defendants Purposefully Availed Themselves of the Laws and Privileges
            of Conducting Business in New York by Investing in BLMIS through the
            Fairfield Funds ......................................................................................9

            1.    Defendants' Intentional Investments with BLMIS through the
                  Fairfield Funds Establish Minimum Contacts ............................................9

                  a.    BLI and Recent Decisions of this Court Establish
                        Jurisdiction ..................................................................................11

                  b.    Defendants' Argument that the Trustee is Relying Solely
                        on the Unilateral Activity of the Fairfield Funds is
                        Misplaced ..................................................................................12

            2.    Defendants' Additional Contacts with New York in Connection
                  with Their Investments also Establish Minimum Contacts ......................13

                  a.    Defendants Directed Communications Regarding Their
                        Investments with BLMIS Through Feeder Funds to New
                        York ..........................................................................................13

                  b.    Defendants' Purposeful Use of New York Bank Accounts
                        Supports Specific Jurisdiction..........................................................15

                  c.    The Subscription Agreements Evidence a Strong Nexus
                        with New York..............................................................................17

            3.    Defendants' Contacts with the Forum are Sufficiently Related to
                  the Trustee's Claims ..................................................................19

4.    Defendants' Remaining Arguments Against Jurisdiction Are Unavailing..................................................................................20

B.    The Exercise of Personal Jurisdiction over Defendants Is Reasonable.................21

C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery.................23

II.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS TO SENTRY .............................................................................23

III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS .................27

A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud .........................27

B.    Section 546(e) Does Not Apply Independently to Recovery Actions...................28

IV.    THE TRUSTEE PLAUSIBLY PLEADS THAT DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a).......................................30

A.    Defendants Misstate the Trustee's Pleading Burden .............................................31

B.    Defendants' Remaining Implausibility Arguments Fail on a Motion to Dismiss..................................................................................................................33

V.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE ...........................................34

CONCLUSION...............................................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ............................................................30, 31

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ......................................................................................9

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................24

*In re Amaranth Natural Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd sub nom. Gracey v. J.P. Morgan*
   *Chase & Co. (In re Amaranth Nat. Gas Commodities Litig.)*, 730 F.3d 170 (2d
   Cir. 2013) ............................................................................................................13

*Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) ..........................................................................16, 19

*Averbach v. Cairo Amman Bank*,
   19-cv-0004-GHW-KHP, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) ................21

*Ayyash v. Bank Al-Madina*,
   No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ..................23

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
   640 B.R. 604 (S.D.N.Y. 2022) ..........................................................................16, 17

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990) ..................................................................................7

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010) ..................................................................37

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................................... *passim*

*Capitol Records, Inc. v. MP3tunes*,
   LLC, No. 07 Civ. 9931 (WHP), 2008 WL 4450250 (S.D.N.Y. Sept. 29, 2008),
   2008 WL 4450259 ...............................................................................................15

*Chase Manhattan Bank v. Banque Generale Du Com.*,
   No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ..................19

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)........................................................................7, 22

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...................................................................33

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)...........................................................................9

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
    No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .........................................18

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)....................................................................27

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)............................................................................7

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ..............................................................35, 36

*Eldesouky v. Aziz*,
    No. 11-cv-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)........................................16

*Fairfield Sentry Ltd. v. HSBC Sec. Serv. (Luxembourg) S.A.*,
    No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) .....................................23

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd
    sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911
    (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) (amended) ..........................................18

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ..................................................................27

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...................................................................8, 19, 20, 21

*Giuliano v. Barch*,
    No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ......................................21

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11 Civ. 3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012)......................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)....................................................................................8

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)......................................................................................9

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)....................20

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).................................................................20

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 383 F. App'x 256 (4th Cir. 2010).....................26

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995)....................................................................21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...............................................................................7, 8, 20

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ..............................34

*Kelly–Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)...............................................................................35

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (Nov. 16, 2009)................23

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............18

*Liberatore v. Calvino*,
    293 A.D.2d 217 (N.Y. App. Div. 2002) ..............................................................14

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ........................................................................................17

*Mass. Mut. Life Ins. Co. v. Residential Funding Co.*,
    843 F. Supp. 2d 191 (D. Mass. 2012) .................................................................25

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...................................................................................8

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)................................................................17

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...........................................................................................18

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................25

*O'Toole v. MyPlace Dev. SP. ZO.O.* (*In re Sledziejowski*),
   No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016).........................17

*In re Old Carco LLC*,
   454 B.R. 38 (Bankr. S.D.N.Y. 2011)......................................................................................33

*Picard v. Abu Dhabi Inv. Auth.*,
   Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct.
   28, 2022) ................................................................................................................................31

*Picard v. Avellino (In re BLMIS)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016)......................................................................................37

*Picard v. Banca Carige S.P.A.*,
   Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
   30, 2022) ........................................................................................................................ *passim*

*Picard v. Bank Hapoalim B.M.*,
   Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915 (Bankr. S.D.N.Y. Sept.
   22, 2022) (amended) .............................................................................................................31

*Picard v. Bank Julius Baer & Co.*,
   Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec.
   15, 2022) ........................................................................................................................ *passim*

*Picard v. Bank Vontobel*,
   Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov.
   18, 2022) ........................................................................................................................ *passim*

*Picard v. Banque Cantonale Vaudoise*,
   Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
   14, 2022) ................................................................................................................................31

*Picard v. Banque SYZ & Co., SA*,
   Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
   14, 2022) ........................................................................................................................ *passim*

*Picard v. Barclays Bank (Suisse) S.A.*,
   Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
   15, 2022) ................................................................................................................................31

*Picard v. Barfield Nominees Limited*,
   Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept.
   28, 2022) ................................................................................................................................31

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................ *passim*

*Picard v. Bordier & Cie*,
    Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
    30, 2022) ........................................................................................................ 31

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................... *passim*

*Picard v. Cathay Life Ins. Co.*,
    Adv. Pro. No. 08-01789 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
    1, 2022) ................................................................................... 2, 11, 29, 31

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
    2012) .............................................................................................................. 30

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................ 4, 26, 36, 37

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........................................................ 24, 34

*Picard v. Credit Suisse AG*,
    Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676 (Bankr. S.D.N.Y. Nov.
    21, 2022) .................................................................................................. 2, 35, 36

*Picard v. Credit Suisse AG, as*
*successor-in-interest to Clariden Leu AG and Bank Leu AG*, Adv. Pro. No.
    12-01676 (CGM), 2022 WL 17098739 (Bankr. S.D.N.Y. Nov. 21, 2022)
    .............................................................................................................. 2, 35, 37, 38

*Picard v. Delta Nat'l Bank and Tr. Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
    12, 2022) .................................................................................................. 2, 31, 35

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................................ 7, 8, 9, 19

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ............................................................................................................. *passim*

*Picard v. First Gulf Bank*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) ....................................................................................................... *passim*

*Picard v. Fullerton Capital PTE Ltd.*,
    Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714 (Bankr. S.D.N.Y. Oct.
    28, 2022) ...................................................................................................................31

*Picard v. Intesa Sanpaolo SPA*,
    Adv. Pro. No. 12-01680 (CGM), 2022 WL 4458952 (Bankr. S.D.N.Y. Sept.
    22, 2022) (amended) ................................................................................................31

*Picard v. Korea Exch. Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ................................................................................................................2, 29

*Picard v. Lloyds TSB Bank PLC*,
    Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
    30, 2022) ...................................................................................................................31

*Picard v. Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
    30, 2022) ................................................................................................................2, 31

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ...............7, 10, 22

*Picard v. Meritz Fire & Marine Ins. Co.*,
    Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
    10, 2022) ..........................................................................................................2, 14, 16, 31

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........................................................35, 36, 38

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................30, 31, 32, 34

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) .................................................................34

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
    No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)...................27, 28, 29

*Picard v. Parson Finance Panama S.A.*,
    Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
    2022) ................................................................................................................ *passim*

*Picard v. Picard v. Pub. Inst. for Soc. Sec.*,
    Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
    17, 2022) ................................................................................................................2, 14, 31

*Picard v. Quilvest Finance Ltd.*,
    Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
    27, 2022) ........................................................................................................................31

*Picard v. Schroder & Co.*,
    Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept.
    27, 2022) (amended) ......................................................................................................31

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)...........................................................................32

*Picard v. Sumitomo Tr. and Banking Co.*,
    Adv. Pro. No. 11-02573 (CGM), 2022 WL 4389919 (Bankr. S.D.N.Y. Sept.
    22, 2022) ........................................................................................................................31

*Picard v. Union Sec. Inv. Trust Co.*,
    Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
    18, 2022) (amended) ..............................................................................................2, 14, 31

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019)........................................................................................10, 22

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*,
    2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) .................................................................14, 15

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) .................................................................................21

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...............................................................................................27

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010)...............................................................................................7

*Sapia v. Home Box Off., Inc.*,
    No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) .................................32

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013).....................................................................................24, 25, 26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    516 B.R. 18 (S.D.N.Y. 2014)............................................................................................37

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..................................29

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) .....................35, 36, 38

*Sherman v. A.J. Pegno Constr. Corp.*,
528 F. Supp. 2d 320 (S.D.N.Y. 2007)..................................................................................25

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................................................32

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)...........................................................................................20, 21

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).................................................................................................32

*Steinberg v. A Analyst Ltd.*,
No. 04-60898-CIV (KAM), 2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ............................13

*Suber v. VVP Servs., LLC*,
No. 20-cv-08177 (AJN), 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ...............................13

*Taylor v. Sturgell*,
553 U.S. 880 (2008)...............................................................................................................18

*In re Terrestar Corp.*,
16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017)........................................24

*Theraplant, LLC v. Makarechi*,
No. 16Cv0646 (DLC), 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) ..................................13

*Tymoshenko v. Firtash*,
No. 11-CV-2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .............................13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)....................................................................................................8

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................................25, 26

*United States v. Space Hunters, Inc.*,
429 F.3d 416 (2d Cir. 2005)....................................................................................................36

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
39 F. Supp. 3d 461 (S.D.N.Y. 2014)......................................................................................35

*Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*,
    No. 13 Civ. 4588 (JSR), 2014 WL 772215 (S.D.N.Y. Feb. 21, 2014) ...................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................................12, 14

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ..............................................................................................22

**Statutes**

11 U.S.C. § 546(e) ................................................................................................. *passim*

11 U.S.C. § 550 ...............................................................................................26, 28, 29

11 U.S.C. § 550(a) ........................................................................................................28

11 U.S.C. § 550(a)(2) ...................................................................................................33

11 U.S.C. § 550(b) .......................................................................................................2, 3

11 U.S.C. § 550(d) .......................................................................................................33

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................1, 3, 26

Fed. R. Civ. P. 8(a)(2) .................................................................................................23

Fed. R. Civ. P. 9 ...........................................................................................................1, 3

Fed. R. Civ. P. 9(b) ......................................................................................................23

Fed. R. Civ. P. 12(b)(2) ...............................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1

NY CPLR § 302(a)(1) ..................................................................................................13

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and declaration of Matthew D. Feil ("Feil Decl." or

the "Declaration") in opposition to the motion to dismiss the Complaint pursuant to Federal Rules

of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6) filed by defendants SNS Bank N.V. ("SNS

Bank") and SNS Global Custody B.V. ("SNS Global Custody") (together, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover at least $74,468,402 in subsequent transfers that Defendants received from Fairfield Sentry

Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), and Fairfield Lambda Limited

("Lambda," and together with Sentry and Sigma, the "Fairfield Funds").  For years Defendants

invested with and received transfers from BLMIS through the Fairfield Funds—investment funds

created for the express purpose of funneling investors' money to BLMIS in New York.

Nonetheless, Defendants argue that the claims against them should be dismissed because this Court

lacks jurisdiction over them.  Defendants further move to dismiss the Trustee's Complaint based

on the purported:  (i) violation of FRCP 8 and 9 through the incorporation by reference of the

Trustee's initial transfer complaint against the Fairfield Funds;[1] (ii) bar to avoidance provided by

the Section 546(e) safe harbor; (iii) failure to plausibly allege that Defendants received transfers

---

[1] Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23 (the "Fairfield Amended Complaint").  After the Trustee filed his Complaint against Defendants, the Trustee filed a Second Amended Complaint against the Fairfield Funds. *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Fairfield Second Amended Complaint").

of customer property; and (iv) entitlement of Defendants to the good faith defense under Section

550(b).  This Court has already rejected these arguments in numerous other subsequent transfer

cases.[2]  For the reasons set forth below, Defendants' arguments likewise fail.

*First*, Defendants are similarly situated to the many other subsequent transferees over

whom this Court has already exercised personal jurisdiction.  Defendants purposefully invested in

the Fairfield Funds knowing that BLMIS in New York was the *de facto* investment manager,

broker-dealer, and custodian of the Fairfield Funds' investments.  Defendants knew that the

Fairfield Funds fed substantially all of their assets to BLMIS and that BLMIS was essential to the

funds' investments.  Investing with BLMIS was the entire point.  Defendants designated and used

bank accounts in New York to deposit funds and receive transfers.  Moreover, Defendants

regularly communicated with New York-based Fairfield Greenwich Group ("FGG") regarding

their investments in the Fairfield Funds, and at least once, SNS Bank personnel met directly with

Madoff in New York.  These facts, plus additional contacts detailed herein, establish jurisdiction.

---

[2] *See, e.g.*, *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy I*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Delta Nat'l Bank and Tr. Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *Picard v. Picard v. Pub. Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug. 17, 2022) ("*PIFSS*"); *Picard v. Union Sec. Inv. Trust Co.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug. 18, 2022) (amended) ("*Union Sec.*"); *Picard v. Korea Exch. Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ("*KEB*"); *Picard v. Cathay Life Ins. Co.*, Adv. Pro. No. 08-01789 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*"); *Picard v. Bank Vontobel*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov. 18, 2022) ("*Vontobel*"); *Picard v. Credit Suisse AG*, Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse I*"); *Picard v. Credit Suisse AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG*, Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse II*"); *Picard v. Bank Julius Baer & Co.*, Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) ("*BJB*").

*Second*, consistent with FRCP 8 and 9, the Trustee's Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief, and its incorporation by reference of the Fairfield Amended Complaint is appropriate under the Federal Rules to demonstrate the avoidability of the initial transfers from BLMIS. In any event, this Court may take judicial notice of the operative Fairfield Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), holding that the Trustee had plausibly alleged the avoidability of the initial transfers from BLMIS.

*Third*, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of Madoff's fraud, and therefore, under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendants. Defendants' argument—that the Trustee must plead Defendants' actual knowledge as opposed to that of Sentry—misinterprets and directly conflicts with controlling precedent.

*Fourth*, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendants. Nothing more is required at this stage of the litigation.

*Finally*, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate to assert on a motion to dismiss. As this Court found in numerous cases, it is Defendants' burden to plead this affirmative defense in an answer and prove it with evidence. Defendants cannot establish their purported good faith on the face of the Complaint.

3

For these reasons, as further detailed below, the Trustee respectfully requests that this Court deny Defendants' motion to dismiss.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Compl. ¶¶ 24, 32, ECF No. 1.[3]  BLMIS was registered as a securities broker-dealer with the U.S. Securities and Exchange Commission (the "SEC").  *Id.* ¶ 24.  BLMIS purportedly operated three principal business units:  (i) a proprietary trading business; (ii) a broker-dealer operation; and (iii) an investment advisory business (the "IA Business").  *Id.*  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the S&P 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 25-26.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶¶ 27-31.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶¶ 11, 32-33.

The extensive financial damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021).  The Fairfield Funds were the largest BLMIS feeder funds, funneling more than $7 billion into the BLMIS Ponzi scheme.  *See* Fairfield Second Am. Compl. ¶ 295.

---

[3] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. SNS Bank N.V.*, Adv. Pro. No. 12-01046 (CGM) (Bankr. S.D.N.Y.).

The Fairfield Funds were created, managed, and controlled by FGG, a *de facto* partnership with its principal place of business in New York. *See* Fairfield Am. Compl. ¶¶ 35, 334-35, 338; Fairfield Second Am. Compl. ¶¶ 11, 118-20. Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS. Compl. ¶ 2; Fairfield Am. Compl. ¶¶ 52, 318. Sigma and Lambda acted as foreign currency feeder funds, respectively facilitating euro and Swiss franc investments with BLMIS and investing all of their assets with Sentry. Compl. ¶ 2; Fairfield Am. Compl. ¶¶ 52, 57. Defendants invested in each of the Fairfield Funds, which they knew were BLMIS feeder funds. Compl. ¶¶ 2, 6-7, 42, 44, 46.

## II.    DEFENDANTS INVESTED WITH BLMIS THROUGH THE FAIRFIELD FUNDS

During the relevant period, SNS Bank was the banking and financial services arm of SNS REAAL N.V., a global bank, insurer, and investment advisory institution. Compl. ¶ 3. Concurrently, SNS Global Custody was an affiliate of SNS Bank. *Id.* During this time, Defendants invested with BLMIS through the Fairfield Funds and received subsequent transfers of stolen BLMIS customer property from the Fairfield Funds. *Id.* ¶¶ 6, 42, 44, 46.

Defendants regularly communicated with New York-based FGG personnel through both email and telephone calls regarding their investments in the Fairfield Funds. *See, e.g.*, Feil Decl., Exs. 4, 16. SNS Bank personnel met directly with Madoff in New York in the winter of 2003-2004. *Id.*, Ex. 21. And in the summer of 2004, personnel from SNS Management met with FGG in New York to discuss investments in the Fairfield Funds. *Id.*, Ex. 22.

Defendants entered into subscription agreements with the Fairfield Funds.[4] Compl. ¶ 7; Feil Decl., Exs. 1-2, 9-12. In these agreements, Defendants acknowledged their sophistication as a "professional investor" and agreed to New York choice of law, jurisdiction, and forum selection

---

[4] The Trustee is not in possession of an executed subscription agreement with Lambda, but as a prerequisite to investing in Lambda, Defendants were required to execute a subscription agreement. *See* Feil Decl., Ex. 3.

clauses. Feil Decl., Exs. 1-2. The subscription agreements also incorporated the Fairfield Funds' Private Placement Memoranda ("PPMs"), and by signing, investors warranted that they had "received and read" a copy of the PPMs. *Id.* Exs. 1-2, 4, 32. With respect to Sentry, Defendants sent subscription payments to Sentry's bank account at HSBC in New York (the "HSBC USA Account"). Compl. ¶ 7; Feil Decl., Ex. 1. Subscription payments were then deposited into BLMIS's account at JP Morgan Chase Bank in New York. Fairfield Am. Compl. ¶ 35. Defendants used three New York bank accounts to receive subsequent transfers from Sentry: a Citibank NA bank account in their own name; a Deutsche Bank Trust Company Americas bank account in their own name; and a Citibank correspondent account. *See, e.g.*, Feil Decl., Exs. 24, 26, 31. Defendants directed Sentry to send redemption payments to these New York bank accounts and Defendants received redemptions payments from Sentry in these same New York bank accounts.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion. Compl. ¶ 36. In 2011, the Trustee settled with the Fairfield Funds. *Id.* ¶ 41. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.* Sigma and Lambda separately consented to judgments in the amounts of $752.3 million and $52.9 million, respectively. Sigma Consent Judgment, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 13, 2011), ECF No. 110; Lambda Consent Judgment, *id.*, ECF No. 108. As feeder funds that invested in BLMIS indirectly through Sentry, these amounts represent a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *See id.* The Trustee then commenced a number of adversary proceedings to recover the approximately $3 billion in stolen customer property, including this proceeding.

## ARGUMENT

I.    **THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.")). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Specific jurisdiction exists where the defendant purposefully directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "The defendant's activity need not have taken place within the forum and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (first citing *Burger King*,

471 U.S. at 476; then citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).

Second, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum." *Multi-Strategy I*, 641 B.R. at 87-88 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). Specific jurisdiction does not require "[p]roof that [the] plaintiff's claim came about *because* of the defendant's in-state conduct." *Id.* at 88 (emphasis added) (quoting *Ford Motor Co.*, 141 S. Ct. at 1027). Instead, "the court need only find 'an affiliation between the forum and the underlying controversy.'" *Multi-Strategy I*, 641 B.R. at 88 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Banque SYZ*, 2022 WL 2135019, at *4 (same); *Carige*, 2022 WL 2387522, at *3 (same). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Finally, the Court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To do so, courts must consider:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citations omitted). Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present

a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

Rather than analyze each contact in isolation, the court should consider "the totality of the circumstances" to determine whether a defendant's contacts with the forum establish jurisdiction. *See, e.g.*, *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, *the totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper.") (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### A. Defendants Purposefully Availed Themselves of the Laws and Privileges of Conducting Business in New York by Investing in BLMIS through the Fairfield Funds

Defendants' numerous and purposeful contacts with New York establish this Court's jurisdiction. Defendants: (i) targeted the New York securities market by investing with BLMIS through the Fairfield Funds, knowing that their assets were managed and custodied by BLMIS in New York; (ii) directed communications regarding their investments with BLMIS through the Fairfield Funds to New York; (iii) used New York banks to transact with Sentry; and (iv) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to their investments. Many of these contacts independently establish jurisdiction. In their totality, these contacts demonstrate that Defendants availed themselves of the forum.

### 1. Defendants' Intentional Investments with BLMIS through the Fairfield Funds Establish Minimum Contacts

Defendants' knowing and intentional investment with BLMIS through the Fairfield Funds establishes a *prima facie* showing of jurisdiction. Compl. ¶ 6; *Carige*, 2022 WL 2387522, at *2 (finding the allegation that defendant "knowingly direct[ed] funds to be invested with New York-

based BLMIS through Fairfield Sentry . . . alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation"); *Vontobel*, 2022 WL 17087560, at *2 (same). As the Second Circuit recognized, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with [BLMIS], they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019) ("*ET Decision*"); *see also Maxam Absolute Return Fund*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that the funds it invested in a BLMIS feeder fund would be sent to New York for investment by BLMIS in New York); *BJB,* 2022 WL 17726520, at *6 (finding that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS").

By executing subscription agreements with the Fairfield Funds and affirming that they received and read the funds' PPMs, Defendants knew that: (i) Sentry invested substantially all of its assets with BLMIS, and that Sigma and Lambda invested substantially all of their assets with BLMIS through Sentry; (ii) BLMIS in New York was the custodian of Sentry's investments with BLMIS; (iii) any returns on Defendants' investment in the Fairfield Funds would purportedly be earned by BLMIS in New York through its execution of the SSC Strategy; (iv) BLMIS's SSC Strategy purportedly involved the purchase and sale of U.S. securities, U.S. options, and U.S. Treasury Bills; (v) BLMIS performed all investment management duties for the Fairfield Funds, and the decisions regarding when and which U.S. securities to purportedly purchase were made by BLMIS in New York; and (vi) BLMIS was "essential to the continued operation of" the Fairfield Funds and BLMIS's "absence would have [had] an adverse impact upon an investment in [the Fairfield Funds]." *See* Compl. ¶¶ 2, 7; Feil Decl., Exs. 1-8, 13-15, 32. Investing with BLMIS was the whole point of Defendants' investments in the Fairfield Funds.

> a.    *BLI and Recent Decisions of this Court Establish Jurisdiction*

This Court has already concluded that subsequent transferees like Defendants are subject to personal jurisdiction where the Trustee has alleged facts demonstrating they intended to invest with BLMIS through BLMIS feeder funds.  *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").   Thus, Defendants' deliberate targeting of BLMIS and the New York securities market through the Fairfield Funds is dispositive. *See Cathay Life*, 2022 WL 16626325, at *4 ("By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to the subsequent transfer that originated with BLMIS.").

This case is indistinguishable from *BLI* with respect to Defendants' intent to invest with BLMIS through the Fairfield Funds.  As in *BLI*, the Trustee's suit is "based upon [the subsequent transferee's] investment of tens of millions of dollars in [a BLMIS feeder fund] with the specific goal of having funds invested in BLMIS in New York."  *BLI*, 480 B.R. at 506.  As in *BLI*, Defendants received PPMs and other materials establishing the investment's BLMIS-centric purpose.  *Id.* at 507-08; Feil Decl., Exs. 4, 7-8, 32.  Because Defendants are identically situated to the defendant in *BLI* with respect to the fundamental purpose of their investments in the Fairfield Funds, *BLI* is controlling and resolves Defendants' jurisdictional defense.

Similar to Defendants, *see* Motion at 11-12,[5] BLI argued that its due process rights would be violated if it were subjected to this Court's personal jurisdiction based on "isolated contacts" with the United States and that it would be unfair to force it to defend itself in this forum for "simply having funds which it invested in an entity outside of the United States and ultimately ended up in an account located at BLMIS."  *BLI*, 480 B.R. at 516-17.  Judge Lifland rejected this

---

[5] Defendants' Memorandum of Law in Support of their Motion to Dismiss is referred to herein as the "Motion."

argument as "disingenuous" because BLI's investments "did not merely 'end up' in an account at

BLMIS" through "coincidence." *Id*. at 517. In fact, Judge Lifland found that BLI "purposefully

availed itself of the benefits and protections of New York laws by knowing, intending and

contemplating that the substantial majority of funds invested in Fairfield Sentry would be

transferred to BLMIS in New York to be invested in the New York securities market." *BLI*, 480

B.R. at 517.

> b.      *Defendants' Argument that the Trustee is Relying Solely on the*
> *Unilateral Activity of the Fairfield Funds is Misplaced*

In an effort to sidestep *BLI*, Defendants argue that the Trustee relies entirely on Sentry's

contacts with BLMIS as a basis for jurisdiction and, by doing so, grounds jurisdiction solely on

Defendants' ownership of Sentry shares. Motion at 10-11. Such an exercise of jurisdiction by the

Court would, according to Defendants, effect a "drastic expansion of U.S. personal jurisdiction,

such that every investor in any foreign company would become amenable to suit in any territory

in the U.S. that the company does business." *Id*. at 11-12. But the Trustee is not arguing that

every investor should be subject to jurisdiction in all forums where its investment company

conducts business. Rather, under the facts of *this* case—where Defendants have entered into

subscription agreements with the Fairfield Funds expressly indicating Defendants' intent to direct

custody and control over their funds to a specific U.S. broker-dealer in order to knowingly profit

from the U.S. securities markets—such defendants have purposefully availed themselves of the

laws and protections of the United States. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014)

(recognizing that "a defendant's contacts with the forum State may be intertwined with his

transactions or interactions with the plaintiff or other parties").

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to

happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the

cases cited by Defendants are inapposite. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536–37 (S.D.N.Y. 2008), *aff'd sub nom. Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Nat. Gas Commodities Litig.)*, 730 F.3d 170 (2d Cir. 2013) (denying jurisdiction because plaintiffs never actually alleged that defendant directed any activity toward the United States); *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV (KAM), 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (denying jurisdiction where plaintiff made only a "bare assertion" that defendant invested in funds with "assets, records, accounts and management . . . all located in New York," and there was no indication defendant knew its redemptions were being made through New York); *Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (denying jurisdiction where defendants did not "even kn[o]w" that companies they invested in engaged in activities in the United States).[6]

Defendants' efforts to downplay their investments' New York destination as an unforeseeable consequence rather than a deliberate and purposeful targeting of the forum is the same "disingenuous" argument this Court rejected in *BLI*.

### 2. Defendants' Additional Contacts with New York in Connection with Their Investments also Establish Minimum Contacts

#### a. Defendants Directed Communications Regarding Their Investments with BLMIS Through Feeder Funds to New York

While a defendant's "physical presence in the forum is not a prerequisite to establishing jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092,

---

[6] Defendants also quote language from *Suber v. VVP Servs., LLC*, No. 20-cv-08177 (AJN), 2021 WL 4429237, at *9 (S.D.N.Y. Sept. 27, 2021) (quoting *Theraplant, LLC v. Makarechi*, No. 16Cv0646 (DLC), 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016)), *see* Motion at 11, but these cases were both tort actions addressing the "substantial revenue" requirement for out-of-state defendants under section 302(a)(3) of the New York Civil Practice Law & Rules (the "CPLR"). They were not analyzing purposeful availment or the analogous "transacting business" prong of CPLR 302(a)(1) and have nothing to do with Defendants' position.

at *5 (quoting *Walden*, 571 U.S. at 285); *Banque SYZ*, 2022 WL 2135019, at *4 (same).  Meetings,

telephone calls, and email communications can also support a finding of personal jurisdiction.  *See*

*Parson*, 2022 WL 3094092, at *4-5 (finding defendant's meetings in New York and email

communications with FGG demonstrate that defendant purposefully availed itself of the benefits

of doing business in the forum); *Meritz*, 2022 WL 3273044, at *4 (same); *PIFSS*, 2022 WL

3458962, at *14 (same); *Union Sec.*, 2022 WL 3572509, at *4 (same); *see also Golden Archer*

*Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3,

2012) (finding email, telephone, and video communications with a company in New York

subjected defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 221 (N.Y.

App. Div. 2002) (holding that jurisdiction may be found solely on the basis of telephone, mail, and

electronic communications) (citing cases).  Defendants had similar U.S. contacts.

Defendants communicated regularly with FGG's New York personnel regarding their

investments in the Fairfield Funds.  Compl. ¶ 7; Feil Decl., Exs. 4, 16-20, 32.  For example, in July

2004, Teus Hoogendoorn, a trader for SNS Bank, successfully sought direct approval from the

New York-based Chief Financial Officer of FGG, Daniel Lipton, to waive the late notice period

for a Sigma redemption.  Feil Decl., Ex. 16.  Other communications involved direct requests by

email and telephone to FGG in New York for further subscriptions in the Fairfield Funds.  *See,*

*e.g.*, *id.*, Exs. 16, 17.

Defendants' reliance on *RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, for the

proposition that these types of contacts are insufficient to establish personal jurisdiction is

misplaced.  No. 19-cv-10247 (NRB), 2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ("*RBC Cap.*")

(*cited in* Motion at 13).  In *RBC Cap.*, jurisdiction was found wanting because the defendant's only

alleged contacts with the forum consisted of "two online communications over the course of 18

hours." *RBC Cap.*, 2021 WL 230194, at \*3.  In contrast, Defendants engaged in regular communication with FGG personnel during a business relationship that lasted nearly a decade. These New York contacts support this Court's jurisdiction over Defendants.

Defendants also attended in-person meetings in New York on at least two occasions.  In the winter of 2004, SNS Bank personnel met with Madoff.  Feil Decl., Ex. 21.  A few months later, personnel from SNS Management met with FGG regarding "an update on the Fairfield Sentry Fund."  *Id.*, Ex. 22.  Defendants cite *Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13 Civ. 4588 (JSR), 2014 WL 772215 (S.D.N.Y. Feb. 21, 2014) and *Capitol Records, Inc. v. MP3tunes*, LLC, No. 07 Civ. 9931 (WHP), 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008) for the proposition that even in-person meetings are not necessarily sufficient where they are sporadic or tangential to the underlying claim.  Motion at 14.  In *Visual Footcare*, the meetings under scrutiny were found to be "incidental" to the underlying contractual relationship, occurring only when the defendant was travelling to New York or nearby on other business, and consisting primarily of "general consulting" talk.  2014 WL 772215, at \*8.  Similarly, in *Capitol Records*, personal jurisdiction was found wanting over one of the defendants because his only contacts with New York did not relate to the plaintiffs' claims.  2008 WL 4450259, at \*4 (finding "a trip to speak at an industry forum" and a trip for a meeting with an unrelated third-party too generalized to establish personal jurisdiction).  Here, Defendants' meetings in New York with both FGG and Madoff related directly to their investment in BLMIS feeder funds and thus support this Court's exercise of jurisdiction.

       b.      *Defendants' Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction*

Defendants purposefully used the New York banking system to invest with BLMIS through Sentry and to receive multiple subsequent transfers of stolen BLMIS customer property from

Sentry. Feil Decl., Exs. 23-31. Specifically, Defendants received the subsequent transfers from Sentry in New York bank accounts at Citibank NA and Deutsche Bank Trust Company Americas. *See id.*

Defendants' purposeful use of New York bank accounts to receive subsequent transfers confers jurisdiction over Defendants for purposes of recovering those same transfers. *See Parson*, 2022 WL 3094092, at *4 (citing *Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022)); *see also Eldesouky v. Aziz*, No. 11-cv-6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [defendant]"). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70 & n.18.

As this Court recently held, "[w]here a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita*, 549 B.R. at 71); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy I*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account," which gave it access to BLMIS through Sentry); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account).

16

That Defendants received some of these redemption payments in a correspondent account does not change the analysis. Courts have held that the purposeful use of a correspondent bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful") (cleaned up).

Similar reasoning applies to Defendants' use of Sentry's HSBC USA Account to make subscription payments. Compl. ¶ 7; Feil Decl., Ex. 1. It is irrelevant that the Sentry PPM mandated that subscribers use Sentry's New York account because ultimately, Defendants were "free to accept or reject the proposed terms." *In re Arcapita*, 640 B.R. at 617-18 (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).[7]

> ### c. The Subscription Agreements Evidence a Strong Nexus with New York

As this Court has recognized, a defendant's subscription agreements with the Fairfield Funds further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy I*, 641 B.R. at 88 n.3 (finding that defendant's irrevocable

---

[7] Defendants barely engage with the Trustee's allegation concerning use of a U.S. bank account and fail to address this Court's recent holdings finding that use of a U.S. bank account supports jurisdiction. Defendants instead lump the issue into a general argument that the contacts identified by the Trustee are insufficient. *See* Motion at 13-15. In support of this proposition, Defendants cite *O'Toole v. MyPlace Dev. SP. ZO.O. (In re Sledziejowski)*, No. 13-22050 (RDD), 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016), averring that "mere knowing receipt of funds in a bank account" does not establish jurisdiction. Motion at 13. This case, however, is distinguishable on its facts. In *In re Sledziejowski*, the court held that the transfer of funds by a third party from the United States to the defendant in Poland in connection with a loan agreement was not a contact relevant to specific jurisdiction because the transfer was not made by the defendant. 2016 WL 6155929, at *7. Whereas, here, Defendants sent subscription payments to the HSBC USA Account and designated at least three New York-based bank accounts to receive redemption payments.

submission to the jurisdiction of New York courts when it signed its subscription agreements with

Sentry is a relevant factor in determining whether jurisdiction is reasonable). When Defendants

invested in the Fairfield Funds, they signed subscription agreements through which they submitted

to venue in New York, the jurisdiction of New York courts, the service of process from New York

courts, and the application of New York law. Compl. ¶ 7; Feil Decl., Exs. 1-2.

Defendants' argument that the subscription agreements cannot provide consent to a suit by

the Trustee over redemptions misses the mark. Motion at 12-13. The Trustee is not arguing that

this Court has jurisdiction based on Defendants' consent, which was the specific issue analyzed

by the Court in *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,

Adv. No. 10-03496, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"),

*aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL

4391023 (S.D.N.Y. Sept. 22, 2022) (amended).[8] Rather, Defendants' consent to New York

jurisdiction, choice of law, and venue in the subscription agreements shows that Defendants

purposefully directed their activities toward New York and provides additional contacts with New

York that further support this Court's jurisdiction.[9]

---

[8] Though not necessary to the Court's analysis, we note that Defendants' argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Motion at 12 n.6. Defendants cite no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[9] Defendants reliance on *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.* is misplaced because, unlike in that case, the forum selection clause at issue here is not serving as the "only basis for personal jurisdiction." *See* No. 15-cv-824 (RJS), 2017 WL 476720, at *3 (S.D.N.Y. Feb. 2, 2017) (*cited in* Motion at 12). Moreover, Defendants cite *Multi-Strategy I* for the similar proposition that jurisdictional clauses may not be used "as the sole basis for" personal jurisdiction, yet they conveniently omit the second clause of the sentence, which was the thrust of this Court's analysis: "the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable." *Multi-Strategy I*, 641 B.R. at 88 n.3 (first clause *cited in* Motion at 13 n.7).

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws[.]"  *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) (citation omitted);  *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").  For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidence[d] the strong nexus with New York."  480 B.R. at 517 n.15.  Moreover, as discussed above, the subscription agreements plainly relate to the Trustee's claims and evidence a strong nexus between this case and New York.  *See Ford Motor Co.*, 141 S. Ct. at 1026.

3.    Defendants' Contacts with the Forum are Sufficiently Related to the Trustee's Claims

Defendants argue that the Trustee's allegations with respect to forum contacts fail to explain how the "communications/contacts with New York" relate to the Trustee's claims.  Motion at 15.  This Court has repeatedly held that the Trustee's recovery actions against subsequent transferees similarly situated to Defendants are "directly related to [their] investment activities with Fairfield and BLMIS."  *Multi-Strategy I*, 641 B.R. at 88; *Vontobel*, 2022 WL 17087560, at *4 (finding subsequent transfer claims directly related to investment activities).  As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship.  *See Ford Motor*, 141 S. Ct. at 1026–30.  Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-71 (requiring only that claim is not completely "unmoored" from transaction).  Here, Defendants communicated with FGG personnel in New York via email,

telephone calls, and in-person meetings regarding various issues directly related to their investments in the Fairfield Funds, including subscription payments, redemption requests, and the timing and amount of additional investments. *See, e.g.*, Feil Decl., Exs. 4, 16-20. And Defendants used New York bank accounts to invest in and redeem from Sentry, including using New York bank accounts to receive the very subsequent transfers from Sentry that the Trustee seeks to recover here. *Id.*, Exs. 24, 30. Defendants are no different than the many subsequent transferee defendants whose activities have previously been found to be related to the Trustee's claims.

4.    Defendants' Remaining Arguments Against Jurisdiction Are Unavailing

Defendants argue that it is the Trustee's burden to make a jurisdictional showing with respect to each claim in the Complaint and that "each transfer is a separate claim" for jurisdictional purposes. Motion at 8-9, n.4 (citing *BNP*, 594 B.R. at 190). But Defendants misconstrue the requirements for personal jurisdiction and this Court's decision in *BNP*. Courts have personal jurisdiction over *defendants*, not *transfers*. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316. Likewise, as Defendants recognize, courts must assess a *defendant's* contacts with the forum, not a transfer's contacts. *See* Motion at 10 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 334 (2d Cir. 2018) for the proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"). Where a defendant's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims related to those contacts. *See Ford Motor*, 141 S. Ct. at 1026–28, 1032.

Separately, Defendants' reliance on a trio of cases asserting common law claims brought against fund service providers is unavailing for the proposition that the New York contacts identified by the Trustee are insufficient. Motion at 13-14 (citing *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN,

2017 WL 816136 (S.D.N.Y. Mar. 1, 2017); *SPV Osus*, 882 F.3d at 333).  This Court has already

determined that this line of cases is not relevant to the Trustee's actions against investors in BLMIS

feeder funds, like Defendants.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of

personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds

which arose from their New York contacts with the Tremont Funds.").  This is not a dispute

between two parties about services owed under a foreign contract, like the breach of fiduciary duty

and other claims in *SPV Osus*,[10] *Hill*, and *Hau Yin To*.  This is an adversary proceeding brought to

recover fraudulent transfers from investors whose use of New York bank accounts to place money

with BLMIS demonstrates a clear intent to direct activity toward the U.S. securities market.  *See*

*BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as

contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate

objective' and the 'raison d'etre' of the Agreement between BLI and Fairfield Sentry.").[11]

### B.    The Exercise of Personal Jurisdiction over Defendants Is Reasonable

Defendants fail to present a compelling reason why jurisdiction would be unreasonable.

"The reasonableness inquiry requires the court to determine whether the assertion of personal

---

[10] Defendants' reliance on *SPV Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.  In *Ford Motor Co.*, the Supreme Court found that specific jurisdiction does not always require proof of causation, and instead, a lawsuit can "relate to" the defendant's contacts with the forum. *Id.* at 1026; *see also Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW-KHP, 2022 WL 2530797, at *7 (S.D.N.Y. Apr. 11, 2022) (in a report and recommendation, Magistrate Judge Parker found that SPV Osus did not set out a definitive standard requiring proximate cause for jurisdiction and that the New York Court of Appeals clarified that "causation is not required" for New York long-arm jurisdiction).  Also, *SPV Osus*'s finding that a "handful of communications and transfer of funds" do not support specific jurisdiction, which is cited by Defendants (*see* Motion at 13), is not availing here given Defendants' significant additional jurisdictional contacts, discussed above.

[11] Defendants also cite to cases where courts rejected plaintiffs pointing to their own actions pursuant to contractual obligations as a basis for jurisdiction.  *See* Motion at 14 (citing *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998); and *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995)).  Ultimately, to the extent these cases have any relevance to the instant matter, it is only to confirm that the focus of the jurisdictional analysis should be on the defendant, not the plaintiff.  That is precisely the analysis the Trustee has focused on.

jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477). Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case. The burden on Defendants is minimal. *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). As this Court has found, Defendants "[are] not burdened by this litigation" because they "[have] actively participated in this Court's litigation for over ten years," they are represented by U.S. counsel, and voluntarily submitted to venue in New York, the jurisdiction of New York courts, the service of process from New York courts, and the application of New York law when they signed their subscription agreements with the Fairfield Funds. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 88. Defendants participated in the omnibus motions to withdraw the reference and to dismiss the Trustee's complaints on extraterritoriality grounds. *See, e.g.*, ECF Nos. 5-7, 67. This "forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 88–89; *see also ET Decision*, 917 F.3d at 103 (noting that the "United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property"). Accordingly, this Court's exercise of jurisdiction over Defendants is reasonable.

C.    **In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery**

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery.  "Such discovery may be authorized where

a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction."

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4

(Nov. 16, 2009) (cleaned up).  The Trustee has shown how Defendants, *inter alia*, knowingly and

purposely subscribed to the Fairfield Funds for the purpose of investing in the U.S. securities

markets, repeatedly used U.S. bank accounts to transact business with Sentry, and had significant

contacts with FGG personnel and even Madoff in New York.  At a minimum, these facts establish

a "threshold showing" of jurisdiction.  *Id.*, at *6;  *see also Fairfield Sentry Ltd. v. HSBC Sec. Serv.*

*(Luxembourg) S.A.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022)

(holding that this Court did not abuse its discretion in granting the Fairfield liquidators' request

for jurisdictional discovery where allegations indicated that "additional facts to establish personal

jurisdiction . . . lie within defendants' knowledge"); *Ayyash v. Bank Al-Madina*, No. 04 Civ.

9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because

allegations of wire transfers through United States made a "sufficient start" toward establishing

jurisdiction).

II.    **THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
       INITIAL TRANSFERS TO SENTRY**

Defendants argue that the Complaint fails to satisfy the requirements of (i) Rule 8(a)(2), to

include a "short and plain statement" showing the Trustee is entitled to relief, and (ii) Rule 9(b),

to "state with particularity" facts "suggesting the avoidability of any alleged initial transfers" from

BLMIS.  Motion at 15-18.  In particular, Defendants argue that the Trustee's incorporation of the

then-operative complaint against the Fairfield Funds is "wholly insufficient" to state such a claim

and "wholly unauthorized by the Federal Rules." *Id*. at 17-18, n.8. But as this Court has repeatedly held in substantively similar adversary proceedings, the Trustee may incorporate the Fairfield Amended Complaint to demonstrate the avoidability of the initial transfers from BLMIS. [12]

In *Multi-Strategy I*, for example, this Court held that "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)." *Multi-Strategy I*, 641 B.R. at 91 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case")); *see also In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.").

Defendants' argument also conflicts with the District Court's opinion in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26 (S.D.N.Y. 2013), where the Trustee's incorporation by reference of the then-operative Fairfield complaint was found sufficient:

> [T]he Trustee's complaint against [defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

---

[12] *See Banque SYZ*, 2022 WL 2135019, at *7-8 (noting Second Circuit precedent instructs courts to adopt "a more liberal view" as to the Rule 9(b) pleading standard "[w]here the actual fraudulent transfer claim is asserted by a bankruptcy trustee" and holding that "[t]hrough the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud") (quoting *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011); *Carige*, 2022 WL 2387522, at *6-7 (same); *Vontobel*, 2022 WL 17087560, at *7 (same).

*In re Madoff Sec.*, 501 B.R. at 36.  As this Court has repeatedly held, "the district court's instruction" is to be followed.  *See, e.g.*, *Vontobel*, 2022 WL 17087560, at *6.

Moreover, even if the Court were to find that the adversary proceedings are separate actions for purposes of Rule 10(c), this Court still can permit incorporation by reference in appropriate circumstances.  *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co.*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other eight cases, which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force").

Cases cited by Defendants for the proposition that Rule 10 does not permit such "wholesale" incorporation are inapposite because, unlike in this case, plaintiffs there were incorporating pleadings by reference in an attempt to add new claims against their defendants.[13] In those cases, the court held that incorporation would have led to confusion and a lack of notice as to the additional claims asserted.  *Id.*  By contrast, the Trustee here is not seeking to add new claims, and Defendants would be hard-pressed to argue they lacked notice that the Trustee was seeking to avoid the initial transfers to Sentry.

Defendants also argue that the Trustee's incorporation of the Fairfield Amended Complaint imposes "an unacceptable burden on Defendants and on the Court."  Motion at 18.  Once again,

---

[13] *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 460–66 (E.D.N.Y. 2007) (finding improper incorporation by reference of pleadings from prior actions to plead entirely new claims not otherwise alleged in complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *3-4 (E.D.N.Y. Mar. 26, 2010) (rejecting plaintiff's attempt to state new claim by incorporating by reference a reply brief he filed in the case which included "no specific factual allegations" supporting the claim).

the cases Defendants cite are not remotely pertinent here. *Hinton v. Trans Union, LLC*, 654 F.

Supp. 2d 440, 446-47 (E.D. Va. 2009), *aff'd*, 383 F. App'x 256 (4th Cir. 2010), involved a

plaintiff's attempted incorporation of two prior versions of a complaint into a third amendment,

with no guidance as to what was repetitive versus new material and which allegations could be

found only in the incorporated pleadings.  Likewise *Int'l Longshoremen's Ass'n*, in addition to

concerning an attempt to add new claims, as discussed above, featured the Government seeking to

incorporate, without even explicitly saying so, hundreds of pages of sometimes inconsistent

indictments and complaints from multiple unrelated civil and criminal cases stretching back 17

years.  518 F. Supp. 2d at 461-66.

In citing such cases for their burden argument, Defendants ignore the purpose of the

incorporation in the Trustee's Complaint:  to make a *prima facie* showing that the initial transfers

are avoidable under Section 548(a) so that the Trustee can recover from Defendants under Section

550(a).  *See Citibank*, 12 F.4th at 196-97 (holding that "[i]f a trustee establishes a *prima facie* case

under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee

can establish an *affirmative defense*") (citation omitted).  The Complaint only incorporates the

Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the

initial transfers.  *See* Compl. ¶ 36.  Defendants can admit the allegations of the avoidability of the

initial transfers, deny them, or respond that they do not have sufficient information to admit or

deny.  This places no undue burden on Defendants in responding to the Trustee's claims against

them or on the Court.  Doing as Defendants appear to suggest—repleading all initial transfer

allegations—does nothing to provide a "short and plain statement" and would unnecessarily add

countless pages to the Complaint.  Such duplication is unnecessary in pleading recovery under

Section 550 and inconsistent with the purpose of Rule 8.  *See In re Madoff Sec.*, 501 B.R. at 36.

In any case, regardless of incorporation, this Court may take judicial notice of the operative

Second Amended Complaint against Fairfield and its prior decision holding that the complaint

sufficiently alleges the avoidability of the initial transfers from BLMIS.  *See Fairfield Inv. Fund*,

2021 WL 3477479, at *2.  On a motion to dismiss, "a court may take judicial notice of prior

pleadings, orders, judgments, and other related documents that appear in the court records of prior

litigation and that relate to the case *sub judice*."  *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34,

38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits."  *DeMasi*

*v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  Finally, the fact that the noticed complaint

was filed after this Complaint against Defendants is of no moment.  *See Rothman v. Gregor*, 220

F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding).

## III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS

Defendants argue that Section 546(e) bars all of the Trustee's claims to avoid or recover

transfers made by BLMIS prior to the two-year period, even though the Trustee has pled the

Fairfield Funds' actual knowledge.  Motion at 19-22.  This argument has been repeatedly rejected

by this Court, *see, e.g.*, *Multi-Strategy I*, 641 B.R. at 92-95, and now by the District Court.  On

November 3, 2022, Judge Rakoff issued a decision denying interlocutory appeal of this Court's

decisions denying seven motions to dismiss on the Section 546(e) issue, finding no reasonable

grounds for disagreement as to the Bankruptcy Court's orders.  *Picard v. Multi-Strategy Fund Ltd.*

*(In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ("*Multi-*

*Strategy II*").

### A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Defendants set forth at length the requirements of Section 546(e) and how they are

presumably met in this case with respect to the initial transfers from BLMIS.  Motion at 20-22.

None of this matters.[14]  As Defendants concede, this Court has previously held that the Trustee has sufficiently pled that Sentry had actual knowledge of Madoff's fraud.  *See id.* at 22; *Multi-Strategy I*, 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).  As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Defendants regardless of whether the Fairfield Funds or either Defendant qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

### B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Defendants are also wrong when they assert that the Section 546(e) safe harbor applies unless the Trustee alleges that Defendants themselves had actual knowledge of Madoff's fraud. Motion at 22.  As this Court recently held, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as . . . subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers."  *Multi-Strategy I*, 641 B.R. at 94-95;  *see also Vontobel*, 2022 WL 17087560, at *9.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Multi-Strategy II*,

---

[14] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendants activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendants or "for the benefit of" Defendants.

2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer") (internal citations omitted).

     The District Court confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). The District Court had withdrawn the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550. However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to avoidance). Consistent with *Cohmad*, this Court has held that "a subsequent transferee may raise the safe harbor as a defense . . . only in so far as the avoidance of the initial transfer is concerned." *KEB*, 2022 WL 4371908, at *10; *see also Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming *Cohmad* did not provide subsequent transferees the right to independently assert Section 546(e) where initial transferee is sufficiently alleged to have actual knowledge). Put simply: "The safe harbor is not applicable to subsequent transfers." *Cathay Life*, 2022 WL 16626325, at *9.

     In *Multi-Strategy II*, the District Court confirmed its holding in *Cohmad* that avoidability of initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee and that the Trustee is not required to plead actual knowledge of the subsequent transferee. *Multi-Strategy II*, 2022 WL 16647767, at *5-6 (Defendants' "lack of knowledge of Madoff's fraud cannot render unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield."). As such, subsequent transferees like Defendants cannot assert Section 546(e) protections where the Trustee has adequately pleaded Sentry's actual knowledge.

IV.    **THE TRUSTEE PLAUSIBLY PLEADS THAT DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)**

The Trustee's Complaint plausibly pleads that Defendants received subsequent transfers of BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin II*") (citation omitted).  As this Court recently held, the Trustee is not required to perform a tracing analysis or to present a "dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy I*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195); *Banque SYZ*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-50 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee] . . . ."  *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).   In addition, the Trustee "must allege the necessary vital statistics—the who, when, and how much-of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy I*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195).

The Trustee's Complaint meets these requirements by alleging that Defendants received transfers, identified by date and amount in accompanying exhibits, from Sentry, and that Sentry invested all or substantially all of its funds with BLMIS.  Compl. ¶¶ 2, 42, Ex. C.  The Complaint also alleges that Defendants received transfers, identified by date and amount in accompanying exhibits, from Sigma and Lambda, and that Sigma and Lambda invested all of their funds with Sentry.  *Id.* ¶¶ 2, 44, 46, Exs. D-G.  Thus, the Complaint plausibly alleges that Defendants received

subsequent transfers of customer property by (a) outlining the relevant pathways through which

customer property was transferred from BLMIS to the Fairfield Funds and subsequently to

Defendants, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much")

for each subsequent transfer.  Nothing more is required.  As this Court recently held in a number

of decisions, these "exhibit[s] provide[] [defendants] with the 'who, when, and how much' of each

transfer."  *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 95; *Banque SYZ*, 2022 WL 2135019, at *12.[15]

### A.    Defendants Misstate the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendants

argue for a new one, asserting that the Trustee must trace and tie each subsequent transfer

Defendants received to a specific initial transfer from BLMIS.  Motion at 5, 23-25.  However, the

Court already rejected this argument in *Merkin II*, refusing to dismiss subsequent transfer claims

even though the complaint did "not connect each of the subsequent transfers with an initial,

voidable transfer emanating from BLMIS."  515 B.R. at 150; *see also 45 John Lofts, LLC*, 599

B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the

---

[15] *See also Carige*, 2022 WL 2387522, at *7; *Lombard Odier*, 2022 WL 2387523, at *10; *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551, at *6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556, at *6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044, at *6 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Barclays Bank (Suisse) S.A.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924, at *4 (Bankr. S.D.N.Y. July 15, 2022); *First Gulf*, 2022 WL 3354955, at *11; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Delta*, 2022 WL 3365256, at *4; *PIFSS*, 2022 WL 3458962, at *10; *Union Sec.*, 2022 WL 3572509, at *10; *Picard v. Sumitomo Tr. and Banking Co.*, Adv. Pro. No. 11-02573 (CGM), 2022 WL 4389919, at *4 (Bankr. S.D.N.Y. Sept. 22, 2022); *Picard v. Bank Hapoalim B.M.*, Adv. Pro. No. 12-01216 (CGM), 2022 WL 4390915, at *7 (Bankr. S.D.N.Y. Sept. 22, 2022) (amended); *Picard v. Intesa Sanpaolo SpA*, Adv. Pro. No. 12-01680 (CGM), 2022 WL 4458952, at *4 (Bankr. S.D.N.Y. Sept. 22, 2022) (amended); *Picard v. Schroder & Co. Bank AG*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022) (amended); *Picard v. Quilvest Fin. Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Barfield Nominees Ltd.*, Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915, at *8 (Bankr. S.D.N.Y. Sept. 28, 2022); *Picard v. Abu Dhabi Inv. Auth.*, Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049, at *9 (Bankr. S.D.N.Y. Oct. 28, 2022); *Picard v. Fullerton Cap. Pte Ltd.*, Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714, at *7 (Bankr. S.D.N.Y. Oct. 28, 2022); *Cathay Life*, 2022 WL 16626325, at *7; *Vontobel*, 2022 WL 17087560, at *10; *BJB*, 2022 WL 17726520, at *14 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

transferees to survive a motion to dismiss"). Likewise, the Court already rejected the argument
that the Trustee must detail which and what portion of each subsequent transfer comprises
customer property. *See Merkin II*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at
least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U.
Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if
dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the
pleading stage either").

Defendants' reliance on *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) is
unavailing because *Shapiro* did not change the pleading burden for recovery under Section 550(a).
*See* Motion at 23 (citing *Shapiro*, 542 B.R. at 119). In *Shapiro*, the Trustee alleged that certain
trusts and members of the Shapiro family received approximately $54 million in fraudulent
transfers from BLMIS, and that "upon information and belief" these defendants subsequently
transferred this same amount to other defendants. *Id.* at 104, 119. However, that complaint *did
not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at 119. There were
no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or
amounts of the subsequent transfers, and consequently this Court granted defendants' motion to
dismiss the subsequent transfer claim. *Id*. Here, where the Trustee has alleged the vital statistics
of each transfer Defendants received and set out the investment relationship between Defendants
and the Fairfield Funds, *Shapiro* supports denying the motion to dismiss.

Defendants also suggest, obliquely, through citation to *Pension Benefit Guar. Corp. ex rel.
St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d
Cir. 2013) and *Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y.
Dec. 17, 2018), that the Trustee has a heightened pleading burden due to his access to information

without the need for discovery. Motion at 23-24. Defendants do not specify what this information

is or why the Trustee has sufficient access, but to the extent Defendants mean to say something

about the Fairfield Funds, the contention is untrue. The Trustee does not have all of the Fairfield

Funds' books and records, and discovery in the Trustee's actions against the Fairfield management

defendants is ongoing. *See, e.g.*, Stipulated Case Am. Mgmt. Order, *Picard v. Fairfield Inv. Fund

Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting

November 22, 2023 deadline for fact discovery and August 23, 2024 deadline for expert

discovery). For this reason, *Pension Benefit Guar. Corp.* and *Sapia* do not support Defendants'

position.

> **B.    Defendants' Remaining Implausibility Arguments Fail on a Motion to Dismiss**

Defendants argue that it is implausible that the transfers to Defendants contained BLMIS

customer property because the Trustee's claims are "mathematically impossible," as the Trustee

is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from

BLMIS. Motion at 24-25, 24 n.12 (citing *In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y.

2011)). Defendants' argument misses the point. As this Court has stated, "[t]here is no dispute

that the Trustee is limited to 'a single satisfaction' under § 550(a)." *Multi-Strategy I*, 641 B.R. at

95 (citing § 550(d)). "He may nevertheless pursue any and all subsequent transferees in order to

achieve that satisfaction." *Id*. at 95-96 (citing § 550(a)(2)). And, under § 550(a), "a trustee may

recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity

for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l,

Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount

of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may

simultaneously seek recovery from Defendants in this action and from defendants in other actions

in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers.

*See Fairfield Inv. Fund*, 2021 WL 3477479, at *12. "Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation." *Multi-Strategy I*, 641 B.R. at 96.

Defendants' arguments are also, absent discovery, premature. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *In re BLMIS*, 454 B.R. at 329. This is one reason why this Court in *Merkin II* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); s*ee also Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

## V.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendants argue that the Court should dismiss the Complaint as a matter of law because their purported good faith is clear on the face of the Complaint. Motion at 25-28. This Court has already rejected the "good faith" affirmative defense as inappropriate and untimely on a motion to dismiss, and should similarly reject Defendants' efforts here to recycle the same arguments. *See Banque SYZ*, 2022 WL 2135019, at *10-11 (holding that it is a defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be

established in a complaint"); *Vontobel*, 2022 WL 17087560, at *11-12; *Credit Suisse I*, 2022 WL

17098676, at *8; *Credit Suisse II*, 2022 WL 17098739, at *8-10; *First Gulf*, 2022 WL 3354955,

at *10-11; *BJB*, 2022 WL 17726520, at *17; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff

*Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *1-3 (S.D.N.Y.

May 2, 2022) ("*ABN Ireland*"); *Delta*, 2022 WL 3365256, at *6.

Affirmative defenses are fact-driven, requiring factual analyses and a presentation of

evidence. *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a

fact-based determination can only be made based on the entirety of the factual record after

discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees

and factual inferences Appellees improperly seek to have drawn in their favor.") (cleaned up); *see*

*also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y.

2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and

thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*,

717 F.3d 295, 308 (2d Cir. 2013)). That sort of factual analysis is not appropriate at this stage,

particularly with respect to a good faith defense. *See, e.g.*, *Picard v. Merkin (In re BLMIS)*, 440

B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in

good faith . . . is a disputed issue that this Court can properly determine only upon consideration

of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452

B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably

factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved

at the motion to dismiss stage.").

To get around the fact that the good faith pleading burden is no longer on the Trustee,[16] Defendants make an unsupportable argument that their good faith has been established as a matter of law on the face of the Complaint. Motion at 25-28. Tellingly, Defendants fail to cite a single case where a court has dismissed an action at the pleading stage based on a good faith defense, which this Court has recognized underscores that such a defense is premature on the pleadings. *See, e.g.*, *Credit Suisse I*, 2022 WL 17098676, at *8 ("Credit Suisse does not meet this [stringent] standard and it does not provide any cases where good faith was successfully plead on a motion to dismiss."). As recognized in *Merkin I*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. To prevail under this limited exception, Defendants must show there is an "insuperable bar to securing relief" set forth on the face of the Complaint. *Dreier*, 452 B.R. at 426 (citation omitted); *see also United States v. Space Hunters, Inc*., 429 F.3d 416, 426 (2d Cir. 2005) (denying motion to dismiss unless "the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief") (cleaned up). Defendants' argument that a diligent inquiry into BLMIS would have been futile fails this standard.

Defendants cannot rely on an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy, and factual inferences they wish this Court to draw in their favor. *See ABN Ireland*, 2022 WL 1304589, at *3. Defendants argue that based on (i) the Trustee's Fairfield Complaint-related allegations and (ii) the fact that others did not discover the fraud, diligent inquiry by Defendants would have been futile. But this is pure conjecture, which can be easily disputed.

---

[16] *Citibank*, 12 F.4th at 178, 195-96 (holding that in a SIPA liquidation proceeding the good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith).

Defendants are sophisticated parties who did their own investigations and diligence on investments—facts which by their nature will come to light during discovery. Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud, for instance, is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[17]

Defendants make similar arguments with regard to value.[18] Motion at 25-26. Value, however, is also a fact-driven element of the affirmative defense to be addressed later in the litigation. *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial"). As was true in *Banque SYZ*, *BJB*, *Vontobel*, *First Gulf*, and *Credit Suisse II*, the Complaint does not mention Defendants exchanging shares for consideration, and the value defense is therefore not pleaded on the face of the Complaint. *Banque SYZ*, 2022 WL 2135019, at *10; *BJB*, 2022 WL 17726520, at *16; *Vontobel*, 2022 WL 17087560, at *11-12; *First Gulf*, 2022 WL 3354955, at *10; *Credit Suisse II*, 2022 WL 17098739, at *8. Moreover, to the extent Defendants argue value exists because the payments they received were given in exchange for

---

[17] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 402 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise") (citation omitted).

[18] Defendants do not specifically address knowledge of voidability, but instead assert that this prong of the Section 550(b) affirmative defense is to be construed "the same as good faith." *See* Motion at 26-27 (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014) ("In light of the legislative history [of 550(b)], the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required[.]"). The Trustee takes no position on this contention for purposes of this opposition but reserves his right to argue at the appropriate time, following discovery, that the absence of knowledge of voidability is a distinct element of the affirmative defense requiring a showing separate from good faith. Additionally, the Trustee notes that Defendants' only support for this contention is a footnote in the District Court's good faith decision, which was directly superseded by the Second Circuit's good faith decision. *Citibank*, 12 F.4th at 178.

their redemption of shares from the Fairfield Funds, this too cannot be decided on a motion to dismiss. *Banque SYZ*, 2022 WL 2135019, at *11; *BJB*, 2022 WL 17726520, at *16; *Vontobel*, 2022 WL 17087560, at *11-12; *First Gulf*, 2022 WL 3354955, at *11; *Credit Suisse II*, 2022 WL 17098739, at *9; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (holding that whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage").

Even if this Court were to consider Defendants' fact-intensive affirmative defense, the Trustee must be given the opportunity to pursue discovery of those facts. *ABN Ireland*, 2022 WL 1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual record after discovery); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *see also Banque SYZ*, 2022 WL 2135019, at *11; *Vontobel*, 2022 WL 17087560, at *12; *First Gulf*, 2022 WL 3354955, at *11; *Credit Suisse II*, 2022 WL 17098739, at *9.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Defendants' Motion.

Dated:  December 20, 2022
      New York, New York

*/s/ David J. Sheehan*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Matthew D. Feil
Email: mfeil@bakerlaw.com
Elizabeth G. McCurrach
Email: emccurrach@bakerlaw.com
Matthew K. Cowherd
Email: mcowherd@bakerlaw.com
Luke E. Record
Email: lrecord@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*