**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
Marshall R. King
Gabriel Herrmann
Keith R. Martorana

*Attorneys for Defendant UBS Europe SE*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>          Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>          Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br>          Plaintiff, <br><br> v. <br><br> UBS EUROPE SE, formerly known as UBS Deutschland AG, as successor in interest to Dresdner Bank Lateinamerika AG, and LGT BANK (SWITZERLAND) LTD. as successor in interest to Dresdner Bank (Schweiz) AG, <br><br>          Defendants. | Adv. Proc. No. 12-01577 (CGM) |

**DEFENDANT UBS EUROPE SE'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    The Trustee Fails to Establish Any Valid Basis for Asserting Personal
Jurisdiction Over UBS Europe.............................................................................. 1

    A.    The Trustee's New Jurisdictional Allegations Regarding UBS
Europe, Raised for the First Time in His Opposition, Must Be
Disregarded ........................................................................................... 1

    B.    The Trustee's New Theories and Allegations Do Not  Establish
Personal Jurisdiction over UBS Europe.................................................... 5

    C.    The Trustee Is Not Entitled to Jurisdictional Discovery........................... 10

II.    The Section 546(e) Safe Harbor Shields All of the Alleged Initial
Transfers ............................................................................................................ 11

    A.    The Trustee Concedes that Section 546(e) Applies in the First
Instance ................................................................................................. 11

    B.    Section 546(e) Does Not Contain a "Knowledge" Exception ................. 14

III.    The Amended Complaint Establishes UBS Europe's Good-Faith Defense ........ 16

IV.    The Amended Complaint Establishes UBS Europe's Mere Conduit
Defense .............................................................................................................. 17

CONCLUSION....................................................................................................... 20

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ABKCO Music, Inc. v. McMahon*,
   175 A.D.3d 1201 (1st Dep't 2019) ..........................................................................5

*Agostini v. Felton*,
   521 U.S. 203 (1997)...........................................................................................15

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316 (2016) .........................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................17

*Azzarmi v. Neubauer*,
   2022 WL 4357865 (S.D.N.Y. Sept. 20, 2022).........................................................3

*Bartlett v. Societe Generale de Banque Au Liban SAL*,
   2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020)..................................................9, 10

*Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007)...............................................................................17

*Beatie and Osborn LLP v. Patriot Scientific Corp.*,
   431 F. Supp. 2d 367 (S.D.N.Y. 2006)....................................................................5

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ........................................................................17, 20

*Colvin v. Keen*,
   900 F.3d 63 (2d Cir. 2018)................................................................................15

*Deutsch v. JPMorgan Chase & Co.*,
   2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019)......................................................11

*Devone v. Finley*,
   2014 WL 1153773 (D. Conn. Mar. 20, 2014) ........................................................3

*Deylii v. Novartis Pharms. Corp.*,
   2014 WL 2757470 (S.D.N.Y. June 16, 2014) .........................................................2

*Fadem v. Ford Motor Co.*,
   352 F. Supp. 2d 501 (S.D.N.Y. 2005)....................................................................2

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Fairfield Sentry Ltd. v. Citibank, N.A. London,*
  2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022)..................................................................8

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020), *aff'd sub nom.*, *Fairfield Sentry Ltd. v.
  Citibank, N.A. London*, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022).............................12, 13

*Hadar v. Concordia Yacht Builders,*
  886 F. Supp. 1082 (S.D.N.Y. 1995)..............................................................................18

*Hau Yin To v. HSBC Holdings, PLC,*
  2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) .........6, 7, 8

*Hill v. HSBC Bank plc,*
  2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016)..................................................................7

*Jalbert v. Gryaznova (In re Bicom NY, LLC),*
  2022 WL 1419997 (2d Cir. May 5, 2022) .......................................................................17, 18

*Jesner v. Arab Bank, PLC,*
  138 S. Ct. 1386 (2018)...............................................................................................7

*Kennedy v. Yousaf,*
  127 A.D.3d 519 (1st Dep't 2015) ................................................................................5

*In re LATAM Airlines Grp. S.A.,*
  2022 WL 2206829 (Bankr. S.D.N.Y. June 18, 2022).........................................................15

*Law v. Siegel,*
  571 U.S. 415 (2014)..................................................................................................15

*Lelchook v. Societe Generale De Banque Au Liban SAL,*
  2021 WL 4931845 (E.D.N.Y. Mar. 31, 2021)..................................................................9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
  732 F.3d 161 (2d Cir. 2013).......................................................................................8

*Licci v. Lebanese Canadian Bank, SAL,*
  984 N.E.2d 893 (2012)..............................................................................................8

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.,*
  23 N.Y.3d 129 (2014)...............................................................................................6, 7

*Meridian Horizon Fund, LP v. KPMG (Cayman),*
  487 F. App'x 636 (2d Cir. 2012) ................................................................................16

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*,
    426 B.R. 96 (Bankr. D. Del. 2010) ...................................................................17, 18

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir. 2004).................................................................................18

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (Bankr. S.D.N.Y. 2016) .....................................................................7

*Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*,
    2006 WL 587483 (S.D.N.Y. Mar. 8, 2006) .........................................................18

*In re PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991)................................................................................15

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ..........................................................................15, 16

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    2022 WL 4493234 (Bankr. S.D.N.Y. 2022) ...................................................17, 18

*Picard v. Greiff (In re Madoff Sec.)*,
    476 B.R. 715 (S.D.N.Y. 2012)..............................................................................14

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411, 417 (2d Cir. 2014).........................................................................14

*Picard v. Multi-Strategy Fund Ltd.*,
    2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)..........................................12, 13, 16

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)............................................5

*Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*,
    2022 WL 142375 (S.D.N.Y. Jan 14, 2022) ............................................................3

*In re Richards*,
    642 B.R. 777 (B.A.P. 6th Cir. 2022).....................................................................15

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)................................................................................3, 4

*Schenin v. Micro Cooper Corp.*,
    272 F. Supp. 523 (S.D.N.Y. 1967) ........................................................................9

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................................16, 17, 18, 19, 20

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re
    Madoff Securities)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......................................................11, 12, 14, 15

*U.S. ex rel. Siegel v. Roche Diagnostics, Corp.*,
    988 F. Supp. 2d 341 (E.D.N.Y. 2013) ...............................................................................2

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ...............................................................................14

*Southwick Clothing LLC v. GFT (USA) Corp.*,
    2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) .......................................................................2

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ..............................9

*SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
    578 F. Supp. 3d 511 (S.D.N.Y. 2022)...............................................................................8, 9

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...............................................................................18

*Univ. Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. 2012)................................................................................7, 8

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................................6

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re Trib. Co.
    Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016).............................................................18

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)................................................................................................2, 3

*Yak v. BiggerPockets, LLC*,
    2020 WL 5505351 (S.D.N.Y. Sept. 10, 2020),
    *aff'd*, 2022 WL 67740 (2d Cir. Jan. 7, 2022)...................................................................2, 3, 4

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

**STATUTES**

11 U.S.C. § 101(22)(A)..........................................................................................................12

11 U.S.C. § 548(a)(1)(A) ......................................................................................................14

**OTHER AUTHORITIES**

EDMUND M. A. KWAW,
    THE LAW & PRACTICE OF OFFSHORE BANKING & FINANCE (1996) ...........................................6

TAKATOSHI ITO ET AL.,
    INTERNATIONAL CAPITAL MARKETS:
    DEVELOPMENTS, PROSPECTS, AND KEY POLICY ISSUES (1996)....................................................6

Defendant UBS Europe SE ("***UBS Europe***"), as alleged successor to Dresdner Bank Lateinamerika AG ("***DBLA***"), respectfully submits this reply in further support of its motion to dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

The Trustee's Opposition fails to salvage his claims against UBS Europe. On the issue of personal jurisdiction, the Trustee largely abandons the only theory he pleaded in his Amended Complaint—instead substituting an entirely new theory, based on new allegations and facts that were nowhere set forth, or even alluded to, in his Amended Complaint. Governing law requires that the Court disregard this effort at bait-and-switch. And even if the Court were to consider the Trustee's new theories and allegations, they fail to establish that UBS Europe purposefully availed itself of the privilege of conducting activities in the United States and that the Trustee's claims arise out of such activities. On the merits, the Trustee similarly provides no effective response to the applicability of section 546(e), the good-faith defense, and the mere conduit defense—all of which apply on the face of the Amended Complaint here, and all of which bar the Trustee's efforts to recover alleged subsequent transfers from UBS Europe. This case should be dismissed.

## ARGUMENT

**I.     The Trustee Fails to Establish Any Valid Basis for Asserting Personal Jurisdiction Over UBS Europe**

**A.     *The Trustee's New Jurisdictional Allegations Regarding UBS Europe, Raised for the First Time in His Opposition, Must Be Disregarded***

Recognizing that the conclusory allegations in his Amended Complaint fail to establish jurisdiction over UBS Europe, the Trustee dedicates the bulk of his opposition brief to efforts at bolstering his case with new allegations and theories he never pleaded—despite having recently

---

[1]   "***ECF No.  __***" refers to Adv. Pro. No. 12-1577.  Defined terms in UBS Europe's moving brief, ECF No. 115 (cited here as "***Mem.***"), are incorporated herein.  "***Opp.***" refers to the Trustee's opposition, ECF No. 121.

amended his complaint after undertaking years of extensive investigative efforts. That approach
flies in the face of settled law barring consideration of such newly raised allegations and theories,
and his effort to redraft his pleading to contrive a new jurisdictional theory should be rejected.

Under this Circuit's long-standing precedent, a complaint "cannot be amended merely by
raising new facts and theories in plaintiffs' opposition papers." *Southwick Clothing LLC v. GFT
(USA) Corp*., 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004); *accord, e.g.*, *Wright v. Ernst &
Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint
through statements made in . . . . [its] opposition memoranda to the motion to dismiss" (citation
omitted)); *Deylii v. Novartis Pharms. Corp*., 2014 WL 2757470, at *8 (S.D.N.Y. June 16, 2014)
("It is well-settled that a party may not amend its complaint through statements in motion papers.");
*Fadem v. Ford Motor Co*., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("parties cannot amend their
pleadings through issues raised solely in their briefs" (collecting cases)). In deciding a motion to
dismiss, the Court should "not consider these newly raised allegations." *U.S. ex rel. Siegel v.
Roche Diagnostics, Corp*., 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (alterations omitted).

This rule holds true in the context of Rule 12(b)(2) motions to dismiss for lack of personal
jurisdiction, where courts have routinely rejected jurisdictional theories newly raised in a
plaintiff's opposition papers. For example, in *Yak v. BiggerPockets, LLC*, 2020 WL 5505351
(S.D.N.Y. Sept. 10, 2020), *aff'd*, 2022 WL 67740 (2d Cir. Jan. 7, 2022) (summary order), the court
rejected a plaintiff's efforts to "expand" her "argument for jurisdiction under N.Y. C.P.L.R. § 302"
by raising for the first time "in her opposition to [a] motion to dismiss" an unpleaded theory that
"jurisdiction [wa]s proper over [the defendant] because it 'has a website where its customers and
members can purchase New York-specific landlord forms' which are 'used in the New York real
estate market.'" 2020 WL 5505351, at *4 n.6. The court expressly "disregard[ed that] argument,"

citing the principle that "a party may not amend her pleading by presenting new theories in briefs." *Id.* (quoting *Wright*, 152 F.3d at 178); *accord, e.g.*, *Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*, 2022 WL 142375, at *4 n.5 (S.D.N.Y. Jan 14, 2022).

This rule is rooted in the foundational principle that a complaint must provide "fair notice of the claim[s] asserted so as to enable [the adverse party] to answer and prepare for trial." *Azzarmi v. Neubauer*, 2022 WL 4357865, at *3 (S.D.N.Y. Sept. 20, 2022) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  The upshot is that "a complaint which 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised' will fail to comply with Rule 8(a)." *Devone v. Finley*, 2014 WL 1153773, at *5 (D. Conn. Mar. 20, 2014) (quoting *Salahuddin*, 861 F.2d at 42).  Thus, in evaluating the sufficiency of a pleading on a motion to dismiss, "the sole consideration should be whether, consistent with the requirements of Rule 8(a), the complaint gives the defendant sufficient notice to [*inter alia*] prepare an answer." *Id.*

In derogation of this well-established rule, the Trustee's opposition advances new arguments and theories of jurisdiction that are nowhere pleaded in his Amended Complaint, and as to which UBS Europe has been provided no notice.  Most egregiously, the Trustee now dedicates a dozen pages of his brief to advancing an entirely new theory of jurisdiction, based on *UBS Europe's* own alleged contacts with the United States, *see* Opp. at 12–28—as opposed to the theory of successor jurisdiction that is the sole jurisdictional basis identified in his Amended Complaint. *See* Am. Compl. ¶ 15.  This new theory is predicated on the claim that "UBS Europe purposefully availed itself of the benefits and protections of New York when it acquired the shares and chose to continue doing business with FGG related to the Fairfield Funds with the objective of accessing New York-based BLMIS in U.S. markets."  Opp. at 12.  The Amended Complaint contains no such allegations, however, and purports to premise jurisdiction over UBS Europe solely on the

3

theory that UBS Europe inherited *DBLA's* jurisdictional contacts as DBLA's alleged "successor-in-interest." Indeed, other than alleging that UBS Europe is "subject to personal jurisdiction in this judicial district as successor in interest to DBLA," the Amended Complaint's jurisdictional allegations do not even *mention* UBS Europe. Am. Compl. ¶¶ 15-27. Given the well-settled principle that a plaintiff "may not amend her pleading by presenting new theories in briefs" opposing a motion to dismiss, *Yak*, 2020 WL 5505351, at *4 n.6, this Court should disregard the Trustee's new theory of jurisdiction based on UBS Europe's alleged contacts with the forum.

For the same reason, this Court should disregard all of the Trustee's newly presented assertions regarding UBS Europe's status as the supposed successor to DBLA's jurisdictional contacts with the United States. The Amended Complaint alleges *nothing* about UBS Europe's status as DBLA's purported successor, other than the conclusory assertion that "Defendant UBS Europe is subject to personal jurisdiction in this judicial district as successor in interest to DBLA," and the barebones statement that "[i]n 2005, DBLA sold its banking and wealth management operations to a subsidiary of UBS AG ('UBS'), and UBS merged DBLA into UBS Deutschland." Am. Compl. ¶ 54. Recognizing the clear deficiencies of these jurisdictional allegations, the Trustee proffers an entirely new set of facts and allegations—spanning numerous pages of his brief, *see* Opp. at 4, 7-11— purporting to show that UBS Europe had inherited DBLA's jurisdictional contacts. These new facts and allegations, of which the Trustee blatantly failed to provide "fair notice" in his pleading, *Salahuddin*, 861 F.2d at 42, must be disregarded.

**B.**     **The Trustee's New Theories and Allegations Do Not Establish Personal Jurisdiction over UBS Europe.**

Even if this Court were to consider the Trustee's newfound jurisdictional theories and factual contentions—which it should not—dismissal would still be warranted because the Trustee fails to establish a viable basis for asserting jurisdiction over UBS Europe.

*First*, the Trustee attempts to subject UBS Europe to jurisdiction on the basis that, after it acquired DBLA's wealth management business (which had invested in the Fairfield Funds), UBS Europe "continued communicating" with Fairfield personnel in New York who were responsible for administering those investments. Opp. at 10. That does not suffice. Indeed, courts have repeatedly held that "telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 388 (S.D.N.Y. 2006) (internal quotation omitted); *accord, e.g.*, *ABKCO Music, Inc. v. McMahon*, 175 A.D.3d 1201, 1201 (1st Dep't 2019) ("The trustee's requests from Ohio, by letter, telephone, and/or email, to plaintiff in New York to send him monies due under the royalty agreement that plaintiff had entered into in 1986 with [a] nonparty . . . do not constitute the transaction of business under CPLR 302(a)(1)."); *Kennedy v. Yousaf*, 127 A.D.3d 519, 520 (1st Dep't 2015) ("The fact that defendants negotiated . . . and communicated with plaintiffs via email and telephone is insufficient to constitute the transaction of business in New York.").[2]

*Second*, the Trustee cannot base jurisdiction over UBS Europe on the unpleaded contention that UBS Europe received Fairfield redemption payments at correspondent bank accounts located in the United States. *See* Opp. at 10-11, 18-19. That incidental U.S. contact is irrelevant.

Like many foreign financial institutions, UBS Europe maintains a correspondent account at a bank located in the United States in order to facilitate U.S. dollar-denominated transfers. That is because substantial dollar-denominated transactions typically must be cleared through Federal Reserve member banks that have access to the Clearing House Interbank Payment System

---

[2] Notably, this case is unlike *Picard v. Multi-Strategy Fund Ltd.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2022 WL 2137073, at *3–4 (Bankr. S.D.N.Y. June 13, 2022) (Morris, J.), in several respects, including that the Trustee does not allege that UBS Europe ever "met with" Fairfield's managers "in New York."

("CHIPS"), "the international private clearing system for large dollar transfers" through which

virtually "all wholesale international transactions involving the use of the dollar" are cleared.[3]

Thus, the Trustee's newfound allegations about UBS Europe's receipt of redemptions using such

an account—*i.e.*, that UBS Europe received money that Sentry transmitted to a U.S.-based

correspondent account—are not allegations of any affirmative forum-based conduct *by UBS

Europe*. Rather, they concern only *Sentry's* forum in-forum conduct—which fails to establish

personal jurisdiction over UBS Europe. *See Walden v. Fiore*, 571 U.S. 277, 289 (2014) (*plaintiff's*

forum connections cannot "drive the . . . analysis" regarding jurisdiction over the defendant).

Indeed, any alleged use of U.S. correspondent accounts to transmit redemption payments

from Sentry to UBS Europe was merely a function of the fact that *Sentry's* Articles of Association

designated Sentry as a dollar-denominated fund, requiring all redemptions to be paid in dollars.

*See* Sentry Articles Arts. 1, 10(1)(c), *available at* https://www.fairfieldsentry.com/wp-content/

uploads/2018/05/Fairfield-Sentry-Memorandum-and-Articles-of-Association-10.01.04.pdf. The

mere use of a U.S. correspondent account by a foreign bank to clear transfers for a foreign contract

denominated in U.S. dollars does not subject the foreign bank to jurisdiction in New York. *See

Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017) (rejecting

personal jurisdiction over foreign defendants based on alleged transmission of information and

funds "to and from BLMIS"; such contacts were "incidental consequences of fulfilling a foreign

---

[3]    EDMUND M. A. KWAW, THE LAW & PRACTICE OF OFFSHORE BANKING & FINANCE 15–21 (1996) (copy attached
as Exhibit A hereto); *see Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 23 N.Y.3d 129, 137 (2014)
(noting that, "as a practical matter," large dollar-denominated transactions "must go through New York" (citing
KWAW, *supra*, at 19)); TAKATOSHI ITO ET AL., INTERNATIONAL CAPITAL MARKETS: DEVELOPMENTS, PROSPECTS,
AND KEY POLICY ISSUES 130–32 (1996) ("Typically, only banks licensed within the local jurisdiction have direct
access to that country's payment facilities. Most counterparties (other than local banks with direct access) will
use a correspondent bank to carry out the settlement procedure. . . . CHIPS is a private, dollar-clearing system
owned by the New York Clearing House Association, a group of major New York banks.") (copy attached as
Exhibit B hereto).

contract [that] are insufficient to 'project' the Foreign Defendants into New York" and "do not amount to 'purposeful availment' of the laws of" the forum), *aff'd*, 700 F. App'x 66 (2d Cir. 2017); *Hill v. HSBC Bank plc*, 2016 WL 4926199, at *4 (S.D.N.Y. Sept. 15, 2016) (same).[4]

The Trustee erroneously relies on cases such as *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (Bankr. S.D.N.Y. 2016), in attempting to premise jurisdiction on this unpleaded contention about UBS Europe's use of a U.S. correspondent account. *Arcapita* is inapposite because the defendants' jurisdictional contacts there were far more purposeful than those alleged against UBS Europe. *Arcapita* concerned an investment scheme in which the debtor entered into placement agreements with defendant banks that allowed the banks to propose investments by sending offers to Arcapita *specifying the currency and bank account* for Arcapita to transfer funds. *Id.* at 70. Arcapita accepted three such offers proposed by the banks wherein *the banks had specifically instructed Arcapita* to make payments of U.S. dollars into U.S. correspondent accounts. *Id.* The court found it had jurisdiction over the banks because they "deliberately chose to receive Arcapita's funds in U.S. dollars and designated correspondent bank accounts in New York to receive the funds, even though they presumably could have performed the Placement transactions without ever directing the funds through New York." *Id.* at 69-70. Unlike in *Arcapita*, UBS Europe did not select U.S. dollars as the relevant currency—Sentry did. That is not a purposeful U.S. contact by UBS Europe. *See Univ. Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there

---

[4]    Indeed, New York banks clear hundreds of thousands of foreign, dollar-denominated transactions valued at over $1.5 trillion each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018). If the incidental use of U.S.-based accounts were sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for a vast number of foreign commercial disputes having no meaning connection to this forum, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars. *See, e.g.*, *Tymoshenko*, 2012 WL 6186471, at *3; *Mashreqbank*, 23 N.Y.3d at 137 ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York.").

are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account.").[5]

**Third**, the Trustee argues that UBS Europe is subject to jurisdiction because it "assumed DBLA's Fairfield Fund shares" and DBLA's obligations under the associated "Subscription Agreements." *See* Opp. at 13, 17. Even if true, that argument could not possibly suffice to establish jurisdiction over UBS Europe. To begin with, the District Court has unequivocally held that the forum selection clause in the Subscription Agreements does not establish jurisdiction for claims relating to *redemptions*, because such claims are not "with respect to" the Subscription Agreement. *Fairfield Sentry Ltd. v. Citibank, N.A. London*, 2022 WL 4391023, at *12 (S.D.N.Y. Sept. 22, 2022). Moreover, to the extent the Subscription Agreement is evidence of *DBLA's* contacts with New York, the Trustee's argument founders for the same reason that *all* of DBLA's alleged New York contacts are insufficient to establish jurisdiction over UBS Europe: because the Trustee fails to adequately plead a basis for imposing "successor jurisdiction" that would impute DBLA's jurisdictional contacts to UBS Europe. *See* Mem. at 7-11. The Trustee's argument conflates the doctrine of successor jurisdiction with the separate and independent issue of successor *liability*—and amounts to little more than an attempted end run around the settled law holding that "jurisdictional contacts are not imputed" from a predecessor to an alleged successor

---

[5] Nor does *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012), support the Trustee's newly contrived theory. After the New York Court of Appeals answered questions of New York law that had been certified to it, the Second Circuit found there that transfers from a correspondent account can establish personal jurisdiction *if* the transfers are part of the "principal wrong" alleged. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170-71 (2d Cir. 2013). The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of antiterrorism laws. *Id.* at 171. Here, there is no allegation that the transmission of funds through a correspondent account is the "principal wrong" that forms the basis of the Trustee's claim. Indeed, *the Trustee alleges no fraudulent scheme or breach of duty by UBS Europe at all*. He merely seeks to recover from UBS Europe as a subsequent transferee of funds initially paid as part of *fraudulent transfers by Madoff* to Fairfield Sentry. UBS Europe is not alleged to have had a hand in those fraudulent initial transfers. *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (finding defendant's use of correspondent account to be merely incidental). *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 328 (2016), is inapposite for the same reason.

unless the two entities "remain one and the same after" a "corporate-restructuring event" equivalent to a "merger." *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 536 (S.D.N.Y. 2022); *Bartlett v. Societe Generale de Banque Au Liban SAL*, 2020 WL 7089448, at *16 (E.D.N.Y. Nov. 25, 2020). "[Successor j]urisdiction and liability are of course two distinct considerations," *Lelchook v. Societe Generale De Banque Au Liban SAL*, 2021 WL 4931845, at *2–3 (E.D.N.Y. Mar. 31, 2021), and the Trustee cites no authority for his attempt to circumvent his burden of establishing grounds for the imposition of successor *jurisdiction* merely by parroting allegations that UBS Europe "assumed" the obligations of its alleged predecessor.[6]

**Finally**, the Trustee contends that UBS Europe has failed to "prove" that the transaction with DBLA was an asset transfer, rather than a merger with DBLA, and therefore does not "refute personal jurisdiction." Opp. at 22. But the Trustee has the burden backwards: it is well-settled that the *party seeking to establish successor jurisdiction*—i.e., the Trustee—bears the burden of adducing evidence of continuity of ownership. *See Schenin v. Micro Cooper Corp.*, 272 F. Supp. 523, 528 (S.D.N.Y. 1967). "Although ambiguities in the pleadings should be resolved in the plaintiff's favor, 'conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction.'" *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018). The *only* allegation the Trustee makes about the transaction is the conclusory assertion that "UBS merged DBLA into UBS [Europe]." Am. Compl. ¶ 54. And even this conclusory assertion is contradicted by the Trustee's own (slightly) more detailed allegation that DBLA simply "sold

---

[6]    The Trustee also speculates that UBS Europe must have contacted Fairfield's New York-based service providers to arrange for assignment of the Subscription Agreements, Opp. at 17, but notably made no such allegation in his Amended Complaint and presents no evidence to support his supposition. Even if he had, contact with New York for the purpose of assigning Subscription Agreements is unrelated to the Trustee's subsequent-transfer claims.

its banking and wealth management operations"—rather than the entire company. *Id.* Because it is the Trustee's burden to make a prima facie showing of jurisdiction, which he has failed to do, DBLA's jurisdictional contacts cannot be imputed to UBS Europe.

Even if the burden were not on the Trustee, the Hive Down Plan submitted by UBS Europe makes clear that DBLA transferred *assets* to a newly formed subsidiary ("NewCo"), the shares of which were then purchased by UBS Europe. *See* King Decl., Ex. 1 § 1.1 ("DBLA hereby hives down its assets described below and transfers them in their entirety . . . to the newly founded NewCo."). The Trustee cites nothing even suggesting otherwise. It is true that UBS Europe did not attach *all* of the documents relating to the transaction—such as the annexes specifying the particular assets included in the hive down, or the agreement by which UBS Europe purchased NewCo's shares—but none of those details are relevant to the basic structure of the transaction. The Hive Down Plan is the governing document relating to the transfer by DBLA of its assets to NewCo, and because the Trustee does not dispute that this initial phase of the transaction between UBS and DBLA was a transfer of assets from DBLA to NewCo—not a merger—"the jurisdictional contacts are not imputed." *Bartlett*, 2020 WL 7089448, at *16.

## C.    *The Trustee Is Not Entitled to Jurisdictional Discovery*

The Trustee's alternative request for jurisdictional discovery should likewise be rejected. The Trustee has had more than ample time and opportunity to probe the jurisdictional basis for his claims, and his opposition papers cite *dozens* of documents concerning DBLA and UBS Europe procured in the massive investigation the Trustee has undertaken—documents he could have included in his Amended Complaint, but instead chose to hold back so as to spring his new theories and allegations in opposition to UBS Europe's motion to dismiss. Nor is there any need for discovery concerning the DBLA-UBS Europe transaction; the Hive Down Plan provides the only information needed to establish the lack of successor jurisdiction.

## II.      The Section 546(e) Safe Harbor Shields All of the Alleged Initial Transfers

### A.      The Trustee Concedes that Section 546(e) Applies in the First Instance

As UBS Europe has explained, the section 546(e) safe harbor shields all of the initial transfers alleged in the Amended Complaint. Mem. at 13–20. And the Trustee concedes that section 546(e) applies in the first instance. *See* Opp. at 30 ("Section 546(e) applies to the avoidance of initial transfers"). UBS Europe has established that the alleged initial transfers from BLMIS to the Fairfield Funds qualify for the section 546(e) safe harbor because: (a) they are transfers and settlement payments made "in connection with a securities contract," and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker and multiple financial institutions. *See* Mem. at 14–18. The Trustee does not contest these points, and thus has conceded that the alleged initial transfers satisfy section 546(e)'s requirements. *See, e.g.*, *Deutsch v. JPMorgan Chase & Co.*, 2019 WL 4805689, at *5 (S.D.N.Y. Sept. 30, 2019).

Instead, the Trustee focuses his arguments on the so-called "knowledge exception" to section 546(e) (an issue that is discussed in detail below), alleging that because this "exception" purportedly applies to the transfer between BLMIS and the Fairfield Funds, it then also automatically applies by imputation to the subsequent transfers to DBLA. In so doing, the Trustee ignores the fact that the section 546(e) safe harbor analysis is not limited to only one securities contract in the chain of transfers. In *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court specifically held that where an initial transfer was caused by a redemption made by a subsequent transferee pursuant to a securities contract between the initial and subsequent transferee, then the initial transfer was made "in connection" with a covered securities contract and the section 546(e) safe harbor would apply:

Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

*Cohmad*, 2013 WL 1609154, at \*9; *see also Picard v. Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at \*3–4, 7 n.7 (S.D.N.Y. Nov. 3, 2022) ("[B]ecause the entire point of this theory relates to the bona fide securities contract between the initial transferee and a subsequent transferee, it is hard to see why the initial transferee's knowledge of Madoff's fraud would render a Section 546(e) defense based on a securities contract between the initial and subsequent transferee unavailable.").

Here, the transfers at issue were made in connection with the independent securities contracts *between the Fairfield Funds and DBLA* that governed the redemption payments DBLA allegedly received, and the Fairfield Funds' alleged knowledge of Madoff's fraud does nothing to invalidate these securities contracts. *See Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at 7 n.7. Indeed, according to the Trustee's own allegations, DBLA allegedly received the Subsequent Transfers "by redeeming, at the reported net asset value on the redemption date, shares of the Fairfield Funds previously purchased," and such purchase and redemptions "were governed by the subscription agreements [DBLA] entered into with the Fairfield Funds." Am. Compl. ¶ 5. Therefore, on the face of the Amended Complaint, (a) the alleged initial transfers were made in connection with securities agreements between the Fairfield Funds[7] and DBLA, and (b) there are

---

[7]   The Fairfield Funds are "financial institutions" for purposes of section 546(e). Section 101(22) of the Bankruptcy Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020), *aff'd sub nom.*, *Citibank*, 2022 WL 4391023, this Court held that the Fairfield Funds were "financial institutions" because they were customers of Citco Bank, which acted as their agent in connection with the securities contracts pursuant to which the

no allegations that DBLA had actual knowledge of Madoff's fraud, so (c) the so-called "actual knowledge" exception does not preclude the application of section 546(e) to the initial transfers that were allegedly subsequently transferred to DBLA.

The District Court's recent decision in *Multi-Strategy Fund Limited* does nothing to undermine the foregoing conclusion. 2022 WL 16647767. In *Multi-Strategy*, Judge Rakoff held that the complaint "allege[d] too little about the circumstances of [the defendants'] withdrawals from Fairfield to know whether such withdrawals, even if undertaken in connection with a securities agreement between Fairfield and [the defendants], were sufficiently related to Fairfield's earlier withdrawals from [BLMIS] to implicate the Section 546(e) safe harbor." *Id.* at *9. Judge Rakoff hypothesized that an initial transfer from BLMIS to the Fairfield Funds may not have been "in connection with" a securities agreement between the Fairfield Funds and their investors if such a transfer was "part of a regularly scheduled distribution from [BLMIS] to Fairfield that occurred irrespective of any specific agreements between Fairfield and its clients," or if a transfer was made to "ensure a generally adequate cash pool with which to cover whichever client redemption requests came in." *Id.* at *8. Here, however, the allegations of the Amended Complaint preclude both of these speculative scenarios. According to the Trustee, "[t]he Fairfield Funds were *wholly invested* in BLMIS," Am. Compl. ¶ 5 (emphasis added), an allegation that was not included in the *Multi-Strategy* complaint, *see* Adv. Pro. No. 12-1205, ECF No. 97. Therefore, *a fortiori*, when "customer property was [allegedly] received by DBLA . . . by redeeming . . . shares of the Fairfield Funds previously purchased by DBLA," *id.*, the Fairfield Funds had to request and receive from BLMIS a transfer of the funds they had "wholly invested" with BLMIS.

---

redemption payments were made. *Id.* at *7. Likewise here, the Amended Complaint alleges that the initial transfers from BLMIS to the Fairfield Funds were made from BLMIS accounts entitled "Citco Global Custody NV FBO Fairfield Sentry Ltd.," Am. Compl. Exs. A, B, confirming that Citco Bank acted as the Fairfield Funds' agent in connection with the initial transfers.

**B.      *Section 546(e) Does Not Contain a "Knowledge" Exception***

Moreover, there is no applicable "knowledge exception" or any other exception to the applicability of section 546(e) of the Bankruptcy Code, other than the express provisions of section 548(a)(1)(A).  Mem. at 18–20; *see Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant").  Nevertheless, the Trustee has repeatedly sought to narrow the scope of the safe harbor.

For example, in *Fishman*, the Trustee argued that section 546(e) "should not apply" to the BLMIS liquidation at all, because that supposedly would "be tantamount to giving legal effect of Madoff's fraud."  *Picard v. Ida Fishman Revocable Tr. (In re BLMIS)*, 773 F.3d 411, 417 (2d Cir. 2014).  The Second Circuit "rejected these arguments," *id.*, and instead applied the statute as written, *see id.* at 418–23, emphasizing that the Trustee's strained interpretation "risks the very sort of significant market disruption that Congress was concerned with," and that "[t]he clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every reason to avail themselves of all the protections" afforded by section 546(e), *id.* at 420.  The Second Circuit declined to create a "Ponzi scheme" or general fraud exception to the safe harbor, beyond the limited and explicit exception under section 548(a)(1)(A).  *See id.* at 421–22; *see also Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("Nothing in the express language of § 546(e) suggests that it is not designed to protect the legitimate expectations of customers, as well as the securities market in general, even when the stockbroker is engaged in fraud.").

The *Cohmad* decision provided another opportunity for the Trustee to seek to constrain the applicability of section 546(e).  The District Court there created a limited, non-statutory, exception to section 546(e) based on a transferee's level of knowledge about the underlying transactions from

which the transfer originated. *Cohmad*, 2013 WL 1609154, at *4. But *Cohmad's* so-called "actual knowledge" exception is contrary to subsequent appellate authority, and it should not be applied.

After *Cohmad* was decided, the Supreme Court held that when the Bankruptcy Code expressly enumerates exceptions to a general prohibition, courts are not free to create additional unenumerated exceptions. *Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The Code's meticulous— not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."); *see In re Richards*, 642 B.R. 777, 787 (B.A.P. 6th Cir. 2022) ("When Congress has explicitly enumerated certain exceptions to a general prohibition, additional exceptions are not to be implied."); *In re LATAM Airlines Grp. S.A.*, 2022 WL 2206829, at *23 (Bankr. S.D.N.Y. June 18, 2022) (same). Although no court has since revisited the judge-made "actual knowledge" exception, UBS Europe respectfully submits that it cannot be squared with these later-decided appellate authorities.

The Trustee does not meaningfully respond to any of these arguments. Instead, he simply claims that "law of the case" bars UBS Europe from raising these issues because it did not appeal in *Cohmad*. The law of the case doctrine does not apply when there has been a change in governing law, *see Agostini v. Felton*, 521 U.S. 203, 236 (1997), and in any case "is not a rule that bars courts from reconsidering prior rulings, but is rather 'a discretionary rule of practice [that] generally does not limit a court's power to reconsider an issue,'" *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)). Accordingly, the Court should decline the Trustee's invitation to apply the "actual knowledge" exception to section 546(e).

## III.     The Amended Complaint Establishes UBS Europe's Good-Faith Defense

The Trustee similarly disregards the standard the Second Circuit set forth in *Citibank* regarding the applicability of the section 550(b) good faith defense. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 191–92 (2d Cir. 2021). The Second Circuit

made clear that, even if a complaint alleges that a transferee knew facts that would have led a reasonable person to conduct a further inquiry into a debtor-transferor's possible fraud, the court must still examine "whether diligent inquiry by the transferee would have discovered the fraudulent purpose of the transfer." *Id.* at 191–92.[8] As set forth in the Memorandum, Madoff successfully deployed practices that prevented the most sophisticated investors, investigators, and even the SEC from uncovering the scheme. *See* Mem. at 25–26; *see also* Am. Compl. ¶¶ 59–61, 84. Even though the Trustee contends that he must conduct discovery to uncover facts related to UBS Europe's good faith defense, thus implying that perhaps Madoff's fraud would have been revealed through inquiry, *see* Opp. at 38, the Trustee does not—and cannot—dispute that Madoff successfully thwarted outside attempts to obtain information about BLMIS that could have uncovered the scheme, and it is because of Madoff's calculated efforts that any diligent inquiry by UBS Europe would not have discovered the fraud. *Cf. Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 640–41 (2d Cir. 2012) (dismissing allegations of "fraud by hindsight" and finding that "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals"). Therefore, under *Citibank*, the Amended Complaint establishes UBS Europe's good faith defense.

## IV.    The Amended Complaint Establishes UBS Europe's Mere Conduit Defense

As set forth in the Memorandum, under section 550(a) of the Bankruptcy Code, the Trustee can only recover avoided transfers from "immediate or mediate transferee[s]," and "[t]he minimum requirement of status as a 'transferee' is dominion over the money or other asset," meaning "the

---

[8] *Cf. Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at *3 n.3 (reasoning that although Section 546(e) is an affirmative defense, where the Trustee pleads facts such that Section 546(e) otherwise would apply based on the face of the complaint, to overcome a motion to dismiss, the Trustee is required to affirmatively allege countervailing "circumstances demonstrating why the facially applicable defense" does not preclude his suit).

right to put the money to one's own purposes." *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (quoting *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)). The Trustee does not dispute that, to establish dominion and control with respect to a bank or broker, there must be (i) a receipt of transferred funds; (ii) the legal right to control those transferred funds (i.e., legal control); and (iii) the right to use those transferred funds for its own purpose (i.e., actual control). *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007). Rather, the Trustee urges the Court to accept his conclusory allegation that DBLA was a "transferee" for purposes of section 550(a), Opp. at 32–33, notwithstanding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable [to] threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When read as a whole, the Amended Complaint fails to allege that DBLA was a "mediate or immediate transferee" that exercised "dominion and control" over any initial transfer, as opposed to a "mere conduit" bank acting for and on behalf of its client principals.

The Amended Complaint falls well short of plausibly alleging that DBLA had dominion and control over the transferred funds. The Amended Complaint lacks any allegations establishing that DBLA held legal title to any funds received from BLMIS (as opposed to mere physical possession), and otherwise had the right and opportunity to use those funds for its own purposes. *See Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. Del. 2010) (applying the dominion and control test and finding that "the Committee fails to plead how Bank of America has legal title to the Notional Rent funds"); *compare Jalbert v. Gryaznova (In re Bicom NY, LLC)*, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (agreeing that defendant was a mere conduit where it was "undisputed that she never had 'a realistic

17

opportunity to' use the funds") *with Picard v. Citibank, N.A. (In re BLMIS)*, 2022 WL 4493234, at *8 (Bankr. S.D.N.Y. 2022) (Morris, J.) ("Citibank obtained complete dominion and control over BLMIS' customer property and was free to use it as it saw fit.").

The Trustee urges the Court not to consider UBS Europe's mere conduit defense at this stage, but he concedes that such a defense *can* be established on the face of the complaint. *See* Opp. at 31–32.[9] Indeed, he glosses over several instances cited by UBS Europe in which courts held, on the pleadings, that a complaint established the mere conduit defense. *See, e.g., In re Mervyn's Holdings, LLC*, 426 B.R. at 103 ("[T]he Committee does not plead in the Second Amended Complaint how Bank of America, acting as trustee had 'dominion and control' over the funds."); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) ("Super has not stated a claim for fraudulent transfer against Mega because at best, Mega was the conduit, not the transferee, and because Mega is not alleged to have controlled the funds at issue."); *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 382 (Bankr. S.D.N.Y. 2014) ("Under federal and state law alike, an allegedly fraudulent transfer may not be recovered from a defendant who was a mere conduit in the transfer."), *abrogated on other grounds by In re Trib. Co. Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016); *Stratton Oakmont, Inc.*, 234 B.R. at 313 ("the person whose hands touch the money or property simply to forward it to the

---

[9] "In this district, a defense is not considered affirmative where it 'merely negates an element of the plaintiff's prima facie case.'" *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, 2006 WL 587483, at *2 (S.D.N.Y. Mar. 8, 2006) (quoting *Hadar v. Concordia Yacht Builders*, 886 F. Supp. 1082, 1089 (S.D.N.Y. 1995)); *see also Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 527 (2d Cir. 2004). The Trustee must establish DBLA was a "transferee," and the Trustee simply ignores that courts in this Circuit have treated the transferee status of a defendant as an indispensable element of a Section 550(a) claim. *See, e.g., Lyondell Chem. Co.*, 503 B.R. at 381–83 (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"); *Stratton Oakmont, Inc.*, 234 B.R. 293 at 314–15 (finding "the Trustee has not alleged any facts which would permit a recovery pursuant to § 550(a)" because "[a]s the [c]omplaint stands, [defendant] was a mere conduit").

initial transferee is but a mere conduit or intermediary if he or she does not receive any benefit from the initial transfer").

Similarly here, notwithstanding that the Trustee attempts to relegate the relevant allegations to a discussion of "the general nature of Defendant's business," Opp. at 33, the Court would have to disregard common sense to construe the allegations of the Amended Complaint as anything other than an admission that DBLA was nothing more than a mere conduit in the relevant transactions.  Not only does the Trustee allege specifically that DBLA was a "sophisticated, international *investment entit[y]*," Am. Compl. ¶ 7 (emphasis added), a "subsidiary of . . . one of the largest banks in Germany," *id.*, and "part of a large international banking organization with *millions of private and business clients* and over 900 offices within Germany and around the world," *id.* (emphasis added), the Trustee also alleges that "DBLA sold its banking and *wealth management operations* to" UBS, *id.* ¶ 54 (emphasis added), that DBLA had, and UBS Europe has, "considerable experience and expertise in wealth management and investment funds," *id.* ¶ 87, and that DBLA's Private Banking Division became part of UBS Wealth Management AG, Opp. at 4.  The only plausible inference from the Trustee's allegations is that any BLMIS positions that DBLA sold to UBS Europe were investments held by DBLA as nominee for its customers.

Accordingly, because the Amended Complaint fails to allege facts plausibly demonstrating that DBLA was a "mediate or immediate transferee" that exercised "dominion and control" over any initial transfer, as opposed to a "mere conduit" acting for its client principals, the allegations on the face of the Amended Complaint establish UBS Europe's mere conduit defense.[10]

---

[10]  For the avoidance of doubt, UBS Europe asserts that, based on the non-conclusory factual assertions in the Amended Complaint, DBLA was a "mere conduit"—not a subsequent transferee—with respect to any alleged transfer of funds from the Fairfield Funds to DBLA's customers.  *See Stratton Oakmont, Inc.*, 234 B.R. at 313 n.9 (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "to qualify as a subsequent transferee, one must have dominion and

The Trustee asserts that there are "many factual questions inherent in resolving" the mere conduit defense such that he should be entitled to embark on a discovery fishing expedition before the Court considers this defense.  Opp. at 34.  To the extent the Court accepts that argument, it should direct the parties to address the dominion and control issue through a summary proceeding in the interest of judicial economy, rather than send the case to full-scale discovery.

## **CONCLUSION**

For all of the foregoing reasons and those stated in UBS Europe's moving papers, the Court should grant the motion to dismiss the Amended Complaint in its entirety as against UBS Europe, with prejudice, and award UBS Europe such other and further relief as is necessary and just.

Dated: December 21, 2022
    New York, New York

Respectfully Submitted,

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Marshall R. King*
Marshall R. King
Gabriel Herrmann
Keith R. Martorana

200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
mking@gibsondunn.com
gherrmann@gibsondunn.com
kmartorana@gibsondunn.com

*Attorneys for Defendant UBS Europe SE*

105873069.12

---

control over the funds or property one receives" (citing *Bonded Fin. Servs.*, 838 F.2d at 896)).  This defense is separate from UBS Europe's entitlement to the protections of the section 546(e) safe harbor.