ALLEGAERT BERGER & VOGEL LLP
John F. Zulack
Lauren J. Pincus
David A. Shaiman
Bianca Lin
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com
Email: blin@abv.com

MAYER BROWN LLP
Steven Wolowitz
Christopher J. Houpt
Bradley A. Cohen
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: 212-506-2500
Email: swolowitz@mayerbrown.com
Email: choupt@mayerbrown.com
Email: bacohen@mayerbrown.com

*Counsel for Lyxor Asset Management Inc. (f/k/a SG Asset
Management, Inc.), as general partner of SG AM AI Premium Fund
L.P., Lyxor Premium Fund (f/k/a SGAM Alternative Multi Manager
Diversified Fund), now acting by and through its trustee, Societe
Generale S.A., Societe Generale S.A., as Trustee for Lyxor Premium
Fund, SG Audace Alternatif (f/k/a SGAM AI Audace Alternatif), now
acting by and through its manager, Lyxor Asset Management S.A.S.,
and SGAM AI Equilibrium Fund (f/k/a SGAM Alternative Diversified
Fund), now acting by and through its liquidator, KPMG Advisory Sarl*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |

|  |  |
|---|---|
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01677 (CGM) |
| Plaintiff, | |
| v. | |
| SOCIETE GENERALE PRIVATE BANKING (SUISSE) S.A. (*f/k/a* SG Private Banking Suisse S.A.), individually and as successor in interest to Societe Generale Private Banking (Lugano-Svizzera) S.A.; SOCGEN NOMINEES (UK) LIMITED; LYXOR ASSET MANAGEMENT INC. (*f/k/a* SG Asset Management, Inc.), as General Partner of SG AM AI Premium Fund L.P.; SG AUDACE ALTERNATIF (*f/k/a* SGAM AI Audace Alternatif), now acting by and through its manager, Lyxor Asset Management S.A.S.; SGAM AI EQUILIBRIUM FUND (*f/k/a* SGAM Alternative Diversified Fund), now acting by and through its liquidator, KPMG Advisory Sarl; LYXOR PREMIUM FUND (*f/k/a* SGAM Alternative Multi Manager Diversified Fund), now acting by and through its trustee, Societe Generale S.A.; SOCIETE GENERALE S.A., as Trustee for Lyxor Premium Fund and Successor in Interest to Banque de Reescompte et de Placement a/k/a Barep and to Societe Generale Asset Management Banque d/b/a Barep; SOCIETE GENERALE LUXEMBOURG (*f/k/a* Societe Generale Bank & Trust S.A.); OFI MGA ALPHA PALMARES (*f/k/a* Oval Alpha Palmares); OVAL PALMARES EUROPLUS; and UMR SELECT ALTERNATIF, | **ANSWER TO COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Defendants Lyxor Asset Management Inc. (*f/k/a* SG Asset Management, Inc.) ("Lyxor Asset"), as general partner of SG AM AI Premium Fund L.P. ("SG Premium"), Lyxor Premium Fund (*f/k/a* SGAM Alternative Multi Manager Diversified Fund), now acting by and through its trustee, Societe Generale S.A., Societe Generale S.A., as Trustee for Lyxor Premium Fund ("SG as Trustee", together with Lyxor Premium Fund, "Lyxor Premium"), SG Audace Alternatif (*f/k/a* SGAM AI Audace Alternatif) ("SG Audace"), now acting by and through its manager, Lyxor Asset Management S.A.S., and SGAM AI Equilibrium Fund (*f/k/a* SGAM Alternative Diversified Fund) ("SG Equilibrium"), now acting by and through its liquidator, KPMG Advisory Sarl (collectively, "Answering Defendants"), by their undersigned counsel Allegaert Berger & Vogel LLP and Mayer Brown LLP, as and for their Answer to the Complaint dated May 30, 2012, of Plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the estate of Bernard L. Madoff (the "Trustee" or the "Plaintiff") (the "Complaint")[1], state as follows:[2]

---

[1] A Stipulation and Order entered on April 18, 2022, ECF 133 (the "2022 Stipulation and Order"), between Plaintiff and Answering Defendants, Société Générale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.) ("SGPBS"), individually and as successor in interest to Societe Generale Private Banking (Lugano-Svizzera) S.A. ("SG Lugano"), Socgen Nominees (UK) Limited ("SG UK"); Societe Generale S.A. ("SG"), as Successor in Interest to Banque de Reescompte et de Placement a/k/a Barep and to Societe Generale Asset Management Banque d/b/a Barep ("Barep"), and Societe Generale Luxembourg (*f/k/a* Societe Generale Bank & Trust S.A.) ("SG Luxembourg") (collectively, the "SG Defendants"), OFI MGA Alpha Palmares (*f/k/a* Oval Alpha Palmares) ("OFI"), Oval Palmares Europlus ("Palmares"), UMR Select Alternatif ("UMR"), and Bank Audi S.A.M.- Audi Saradar Group (*f/k/a* Dresdner Bank Monaco S.A.M.)("Bank Audi"), amended the Complaint (1) to amend various names of the SG Defendants, (2) to substitute certain SG Defendants in place of defendants originally named in the Complaint, (3) to dismiss the Trustee's claims against SG Premium and Bank Audi, and (4) to dismiss the Trustee's claims to recover alleged subsequent transfers that the SG Defendants allegedly received from Kingate Global Fund, Ltd. (*i.e.*, Count Four). For clarity, unless stated otherwise herein, (1) Answering Defendants are answering the Complaint in their respective individual capacity and (2) where the 2022 Stipulation and Order amended the name or status of any defendant originally named in the Complaint, the responses in this Answer refer to the

### GENERAL DENIAL

Except as otherwise expressly admitted herein, Answering Defendants deny each and every allegation in the Complaint.  Answering Defendants state that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response.  To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied.  In answering the allegations in the Complaint, Answering Defendants do not intend to waive, and do not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint.  To the extent it is later determined that a response is required to any allegation Answering Defendants aver has been mooted by a prior dismissal of the Trustee's claims, Answering Defendants deny any such allegation.  Answering Defendants expressly reserve the right to amend and/or supplement this Answer.

### RESPONSES TO SPECIFIC ALLEGATIONS

### I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[3] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER**:    The allegations of paragraph 1 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in

---

current SG Defendants as described in the 2022 Stipulation and Order.

[2] Capitalized terms not defined herein have the meaning set forth in the Complaint.

[3] Footnote 1 of the Complaint states: "SIPA § 78*lll*(4) defines 'Customer Property' as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

paragraph 1 of the Complaint, except admit that Plaintiff purports to bring this action as trustee

for the substantively consolidated liquidation of BLMIS and the estate of Bernard L. Madoff

("Madoff") pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et*

*seq.*, and that Madoff perpetrated a Ponzi scheme through BLMIS.

2.      The Trustee seeks to recover from Defendants subsequent transfers of
Customer Property from BLMIS feeder funds Fairfield Sentry Limited ("Fairfield Sentry"),
Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda")
(together, the "Fairfield Funds") and Kingate Global Fund, Ltd. ("Kingate") totaling
$162,888,559.  Charts setting forth the subsequent transfers are attached here as Exhibits E, G, I
and M.

**ANSWER**:      The allegations of paragraph 2 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations in paragraph 2 of the Complaint as to themselves, except admit that the Trustee seeks

to recover from the defendants the amount of alleged subsequent transfers alleged in the

Complaint, as amended by the 2022 Stipulation and Order, and respectfully refer the Court to the

Complaint, Exhibits E, G, I and M thereto and the 2022 Stipulation and Order for their complete

and accurate contents.[4]  Answering Defendants deny knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 2 of the Complaint and

therefore deny such allegations.

3.      The subsequent transfers followed avoidable initial transfers from BLMIS
to the Fairfield Funds or Kingate.  The Trustee has filed separate actions to avoid the initial
transfers, namely *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) as to the
Fairfield Funds and *Picard v. Kingate Global Fund, Ltd., et al.*, Adv. Pro. No. 09-01161 (BRL),
Case Nos. 11-CV-07256 (JSR) and 11-CV-07134 (JSR) as to Kingate.  The Fairfield and
Kingate complaints are attached here as Exhibits A and J, respectively.

---

[4] As set forth in Footnote 1 hereto, pursuant to the 2022 Stipulation and Order, the Trustee's
claims to recover alleged subsequent transfers that the Defendants allegedly received from
Kingate Global Fund, Ltd. (*i.e.*, Count Four), were dismissed.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers they allegedly received from Kingate Global [*see* ECF

No. 133]; accordingly, no response is required to the allegations of paragraph 3 of the Complaint

concerning Kingate.  The remaining allegations of paragraph 3 contain legal conclusions to

which no response is required or refer to proceedings in an action to which Answering

Defendants are not parties.  Answering Defendants respectfully refer the Court to the docket and

filings in Adv. Pro. No. 09-01239 (the "Fairfield Action") for their contents and Exhibit A to the

Complaint for its complete and accurate contents.  To the extent a further response is required,

Answering Defendants deny that "[t]he subsequent transfers followed avoidable initial transfers

from BLMIS to the Fairfield Funds" and further deny knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 3 of the Complaint and

therefore deny such allegations.

## II.    THE TRANSFEREES AND DEFENDANTS

4.    Initial transferee Fairfield Sentry Limited ("Fairfield Sentry") maintained customer accounts at BLMIS and was one of BLMIS' largest feeder funds.  Fairfield Sentry invested all or substantially all of its assets with BLMIS and was managed by New York-based parent Fairfield Greenwich Group ("FGG").

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore

deny such allegations.

5.    Fairfield Sigma and Fairfield Lambda, affiliates of Fairfield Sentry, acted as foreign currency feeder funds, facilitating Euro (Fairfield Sigma) or Swiss Franc (Fairfield Lambda) investments with BLMIS.  Each fund invested 100% of its assets with Fairfield Sentry and was a subsequent transferee of BLMIS transfers by virtue of this relationship.  Fairfield Sigma and Fairfield Lambda were both managed by FGG.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore deny such allegations.

6.    Initial transferee Kingate maintained a customer account at BLMIS and was a large BLMIS feeder fund.  Kingate invested all or substantially all of its assets with BLMIS.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No. 133]; accordingly, no response is required to the allegations of paragraph 6 of the Complaint concerning Kingate.

7.    The Fairfield Funds and Kingate are currently in liquidation.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No. 133]; accordingly, no response is required to the allegations of paragraph 7 of the Complaint concerning Kingate.  Answering Defendants admit that the Fairfield Funds are currently in liquidation.

8.    Defendant SG Suisse entered into one or more subscription agreements with Fairfield Sentry, Fairfield Sigma, Fairfield Lambda and Kingate and received subsequent transfers from the feeder funds.  SG Suisse is a *société anonyme* organized under the laws of Switzerland, and has its principal office at Rue de la Corraterie 6, CH-1211 Geneva, Switzerland, and a representative office at 701 Brickell Avenue, Suite 2410, Miami, Florida 33131.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 8 of the Complaint

concerning Kingate.  SG as Trustee denies knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 8 of the Complaint and therefore denies such

allegations, except admits that, at certain times, SGPBS was a Swiss *société anonyme* and

maintained a place of business at Rue du Rhone 8, CH-1204 Geneva, Switzerland and

maintained a representative office at 701 Brickell Avenue, Suite 2410, Miami, Florida 33131.

The remaining Answering Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 8 of the Complaint and therefore deny such

allegations.

9.     Defendant SG Lugano entered into one or more subscription agreements
with Fairfield Sentry and Fairfield Sigma and received subsequent transfers from the feeder
funds.  SG Lugano is a *société anonyme* organized under the laws of Switzerland, and its
registered address is Viale Stefano Franscini 22, CH-6901 Lugano, Switzerland.

**ANSWER**:     SG as Trustee denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore denies

such allegations, except admits that, at certain times, SG Lugano was a Swiss *société anonyme*

and SG Lugano's registered address was Viale Stefano Franscini 30, CH-6900 Lugano,

Switzerland.  The remaining Answering Defendants deny knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore deny

such allegations.

10.     Defendant SG UK entered into one or more subscription agreements with
Fairfield Sentry and received subsequent transfers from the feeder fund. SG UK is a limited
company organized under the laws of the United Kingdom, and its registered address is c/o
Group Legal at SG House, 41 Tower Hill, London, United Kingdom, EC3N 4SG.

**ANSWER**:     SG as Trustee denies knowledge or information sufficient to form

a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore denies

such allegations, except admits that, at certain times, SG UK was a limited company organized

under the laws of England and Wales and its registered address was 41 Tower Hill, London,

United Kingdom, EC3N 4SG.  The remaining Answering Defendants deny knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the

Complaint and therefore deny such allegations.

11.    Barep entered into one or more subscription agreements with Fairfield
Sentry and received a subsequent transfer from the feeder fund.  Barep, a *société anonyme*
organized under the laws of France, deregistered sometime after it received the subsequent
transfer.

**ANSWER**:    SG as Trustee denies the allegations in paragraph 11 of the

Complaint, except (1) admits that Barep entered into one or more subscription agreements with

Fairfield Sentry and refers the Court to those documents for their contents, (2) admits that, on

occasion, Barep received transfers from Fairfield Sentry for its customers as depository bank

and/or in other capacities, and (3) admits that, at certain times, Barep was a French *société*

*anonyme* until it was dissolved in 2007.  The remaining Answering Defendants deny knowledge

or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the

Complaint and therefore deny such allegations.

12.    Defendant Lyxor SA is a successor in interest to Barep. Lyxor SA is a
*société anonyme* organized under the laws of France, and its registered address is 17 Cours
Valmy, 92987 Paris La Défense, France.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* substituted SG in place of and as successor to

Barep and stating that Lyxor SA was incorrectly named in the Complaint as successor in interest

to Barep; accordingly, no response is required to the allegations in the first sentence of paragraph

12 of the Complaint.  Answering Defendants deny the remaining allegations in paragraph 12 of

the Complaint, except admit that, at certain times, Lyxor SA was a *société par actions simplifiée*

*à associé unique* organized under the laws of France, and its registered address was 17 Cours

Valmy, 92800 Puteaux, France.

13.     Defendant SG Holding is also a successor in interest to Barep. SG Holding is a *société anonyme* organized under the laws of France, and its registered address is 170 Place Henri Regnault, 92400 Courbevoie, France.

**ANSWER**:     On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* substituted SG in place of and as successor to

Barep and stating that SG Holding was incorrectly named in the Complaint as successor in

interest to Barep; accordingly, no response is required to the allegations in the first sentence of

paragraph 13 of the Complaint.  SG as Trustee denies the remaining allegations of paragraph 13

of the Complaint, except admits that, at certain times, SG Holding was a *société anonyme*

organized under the laws of France, and its registered address was 170 Cours Valmy, 92800

Puteaux, France.  The remaining Answering Defendants deny knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and

therefore deny such allegations.

14.     Defendant SG Premium entered into one or more subscription agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund.  SG Premium, a limited partnership organized under the laws of Delaware with an address c/o Lyxor Asset Management Inc. at 1251 Avenue of the Americas, New York, NY 10020, began winding up in or around 2007.

**ANSWER**:     Lyxor Asset, as general partner of SG Premium, denies the

allegations in paragraph 14 of the Complaint, except (1) admits that SG Premium subscribed

with Fairfield Sentry, (2) admits that SG Premium received a subsequent transfer from the feeder

fund, (3) admits that SG Premium was a limited partnership organized under the laws of

Delaware and began winding up in or around 2007, and (4) avers that the limited partnership

status of SG Premium was cancelled in or around November 2007 as pursuant to the Certificate

of Cancellation of Certificate of Limited Partnership of SG AM AI Premium L.P. as filed in the

office of the Secretary of State of the State of Delaware. As the allegations of paragraph 14

relate only to SG Premium, no response is required from the remaining Answering Defendants.

To the extent a response is required, the remaining Answering Defendants deny knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the

Complaint and therefore deny such allegations, except admit that, at certain times, SG Premium

was a limited partnership organized under the laws of Delaware.

15.    Defendant Lyxor Asset is the general partner of SG Premium. Lyxor
Asset is a corporation organized under the laws of Delaware, and it maintains a place of business
at 1251 Avenue of the Americas, New York, NY 10020.

**ANSWER**:    Lyxor Asset denies the allegations in paragraph 15 of the

Complaint, except (1) admits that, at certain times, Lyxor Asset was a corporation organized

under the laws of Delaware and maintained a place of business at 1251 Avenue of the Americas,

New York, NY 10020 and (2) admits that, at certain times, it was the general partner of SG

Premium. As the allegations of paragraph 15 relate only to Lyxor Asset, no response is required

from the remaining Answering Defendants. To the extent a response is required, the remaining

Answering Defendants deny knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 15 of the Complaint and therefore deny such allegations, except

admit that, at certain times, Lyxor Asset was a corporation organized under the laws of Delaware

and maintained a place of business at 1251 Avenue of the Americas, New York, NY 10020.

16.    Defendant SG Audace entered into one or more subscription agreements
with Fairfield Sentry and received a subsequent transfer from the feeder fund. SG Audace is a
*fonds commun de placement* organized under the laws of France, and its registered address is c/o
Lyxor Asset Management S.A. at 17 Cours Valmy, 92987 Paris La Défense, France.

**ANSWER**:    SG Audace denies the allegations in paragraph 16 of the

Complaint, except (1) admits that SG Audace subscribed with Fairfield Sentry, (2) admits that

SG Audace received a subsequent transfer from the feeder fund, and (3) admits that at certain

times, SG Audace was a *fonds commun de placement* organized under the laws of France and its

registered address was c/o Lyxor Asset Management S.A. at 17 Cours Valmy, 92987 Paris La

Défense, France.  As the allegations of paragraph 16 relate only to SG Audace, no response is

required from the remaining Answering Defendants.  To the extent a response is required, the

remaining Answering Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 16 of the Complaint and therefore deny such allegations,

except admit that, at certain times, SG Audace was a *fonds commun de placement* organized

under the laws of France and its registered address was c/o Lyxor Asset Management S.A. at 17

Cours Valmy, 92987 Paris La Défense, France.

> 17.    Defendant SG Equilibrium entered into one or more subscription
> agreements with Fairfield Sentry and Kingate and received a subsequent transfer from each of
> the feeder funds.  SG Equilibrium is a *Societe d'Investissement a Capital Variable* organized
> under the laws of Luxembourg, and its registered address is 16 boulevard Royale, L-2449
> Luxembourg.  SG Equilibrium is in liquidation and is represented by its liquidator, KPMG
> Advisory Sarl, which is located at 9 allee Scheffer, L-2520 Luxembourg.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 17 of the Complaint

concerning Kingate.  SG Equilibrium denies the remaining allegations in paragraph 17 of the

Complaint, except (1) admits that SG Equilibrium subscribed with Fairfield Sentry, (2) admits

that SG Equilibrium received a subsequent transfer from the feeder fund, (3) admits that at

certain times, SG Equilibrium was a *Societe d'Investissement a Capital Variable* organized under

the laws of Luxembourg, and its registered address was 28-32 Place de la gare, L-1616

Luxembourg, and (4) admits that SG Equilibrium is in liquidation and is represented by its

liquidator, KPMG Advisory Sarl, which, at certain times, was located at 9 allee Scheffer, L-2520

Luxembourg.  As the allegations of paragraph 17 relate only to SG Equilibrium, no response is

required from the remaining Answering Defendants.  To the extent a response is required, the

remaining Answering Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 17 of the Complaint and therefore deny such allegations,

except (1) admit that, at certain times, SG Equilibrium was a *Societe d'Investissement a Capital*

*Variable* organized under the laws of Luxembourg and its registered address was 28-32 Place de

la gare, L-1616 Luxembourg, and (2) admit that SG Equilibrium is in liquidation and is

represented by its liquidator, KPMG Advisory Sarl, which, at certain times, was located at 9

allee Scheffer, L-2520 Luxembourg.

18.    Defendant Lyxor Premium entered into one or more subscription
agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund.  Lyxor
Premium is a unit trust organized under the laws of Ireland, and its registered address is c/o
Lyxor Asset Management (Ireland) Limited at International Financial Service Centre, 3rd Floor,
Dublin 1, Ireland.

**ANSWER**:    SG as Trustee and Lyxor Premium deny the allegations in

paragraph 18 of the Complaint, except (1) admit that Lyxor Premium subscribed with Fairfield

Sentry, (2) admit that Lyxor Premium received a transfer from the feeder fund, and (3) admit

that, at certain times, Lyxor Premium was a unit trust, now liquidated, organized under the laws

of Ireland, and its registered address was c/o Lyxor Asset Management (Ireland) Limited at

International Financial Service Centre, 3rd Floor, Dublin 1, Ireland.  As the allegations of

paragraph 18 relate only to Lyxor Premium, no response is required from the remaining

Answering Defendants.  To the extent a response is required, the remaining Answering

Defendants deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 18 of the Complaint and therefore deny such allegations, except admit

that, at certain times, Lyxor Premium was a unit trust organized under the laws of Ireland, and its

registered address was c/o Lyxor Asset Management (Ireland) Limited at International Financial

Service Centre, 3rd Floor, Dublin 1, Ireland.

19.    Defendant SG is the trustee for Lyxor Premium, and is named in this
Complaint solely in its capacity as trustee. SG is a *société anonyme* organized under the laws of
France, and its corporate headquarters is at 29 Boulevard Haussmann, 75009 Paris, France.

**ANSWER**:    SG as Trustee and Lyxor Premium deny the allegations in

paragraph 19 of the Complaint, except (1) admit that, at certain times, SG was the trustee for

Lyxor Premium, and (2) admit that SG is a *société anonyme* organized under the laws of France,

and its corporate headquarters is at 29 Boulevard Haussmann, 75009 Paris, France.  As the

allegations of paragraph 19 relate only to SG as the trustee of Lyxor Premium, no response is

required from the remaining Answering Defendants.  To the extent a response is required, the

remaining Answering Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 19 of the Complaint and therefore deny such allegations,

except admit that SG is a *société anonyme* organized under the laws of France, and its corporate

headquarters is at 29 Boulevard Haussmann, 75009 Paris, France.

20.    Defendant SGBT on its own entered into one or more subscription
agreements with Fairfield Sentry and Fairfield Sigma and received subsequent transfers from the
feeder funds.  SGBT is a *societe anonyme* organized under the laws of Luxembourg, and its
registered address is 11 Avenue Emile Reuter, L-2420 Luxembourg. SGBT is sometimes
referred to as "SGBT Lux."

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and therefore

deny such allegations, except (1) admit that, at certain times, SGBT was a *societe anonyme*

organized under the laws of Luxembourg, and its registered address was 11 Avenue Emile

Reuter, L-2420 Luxembourg, and (2) aver that, as described in the 2022 Stipulation and Order,

SGBT changed its name to Societe Generale Luxembourg in 2020.

21.    SGBT also entered into subscriptions agreements and received transfers from the feeder funds together with other Defendants.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and therefore

deny such allegations.

22.    Defendants OFI and SGBT entered into one or more subscription agreements with Fairfield Sentry and received subsequent transfers from the feeder fund in the name of "SGBT Lux/Oval Alpha Palmares."  OFI is a *fonds commun de placement* organized under the laws of France, and its address is c/o OFI Asset Management at 1 rue Vernier, 75017 Paris, France.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 22 of the Complaint and therefore

deny such allegations.

23.    Defendants Palmares and SGBT entered into one or more subscription agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund in the name of "SGBT Lux/Palmares Europlus."  Palmares is a *fonds commun de placement* organized under the laws of France, and its address is c/o OFI Asset Management at 1 rue Vernier, 75017 Paris, France.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore

deny such allegations.

24.    Defendants UMR and SGBT entered into one or more subscription agreements with Fairfield Sentry and received a subsequent transfer from the feeder fund in the name of "SGBT Lux/UMR."  UMR is a fund of funds organized under the laws of France, and its address is c/o Union Mutualiste Retraite at 3 Square Max Hymans, 75015 Paris, France.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore

deny such allegations.

25.    Defendants Bank Audi and SGBT entered into one or more subscription
agreements with Kingate and received a subsequent transfer from the feeder fund in the name of
"SGBT Lux/Dresdner Monaco."  Bank Audi is a *société anonyme* organized under the laws of
Monaco, and its registered address is Villa de Lotus, 24 Boulevard des Moulins, Monte Carlo,
Monaco.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global and dismissed

the Trustee's claims against Bank Audi [*see* ECF No. 133]; accordingly, no response is required

to the allegations of paragraph 25 of the Complaint concerning Kingate or Bank Audi.

## III.    <u>JURISDICTION AND VENUE</u>

26.    The Trustee brings this adversary proceeding pursuant to his statutory
authority and power to avoid and recover transfers under SIPA §§ 78fff(b), 78fff-1(a) and 78fff-
2(c)(3); 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), including Sections 105(a), 323(b),
544, 548, 550(a), 551 and 704(a)(1); New York Debtor & Creditor Law ("NYDCL") §§ 273-
279; and N.Y. C.P.L.R. 203(g) and 213(8).

**ANSWER**:    The allegations of paragraph 26 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations of paragraph 26 of the Complaint.

27.    The main, underlying substantively-consolidated SIPA case, Adv. Pro.
No. 08-01789 (BRL) (the "SIPA Case"), is pending in this Court.  The SIPA Case was originally
brought in the United States District Court for the Southern District of New York (the "District
Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et
al.*, Case No. 08-CV-10791 (LLS) (the "District Court Proceeding").

**ANSWER**:    Answering Defendants deny the allegations of paragraph 27 of the

Complaint, except admit that the main substantively consolidated SIPA case (No. 08-01789

(CGM)) is pending in this Court and denies knowledge or information sufficient to form a belief

as to where that case was originally brought.

28.    This Court has jurisdiction over the instant adversary proceeding under 28
U.S.C. § 1334(b) and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER**:    The allegations in paragraph 28 contain legal conclusions to which

no response is required.  To the extent that a response is required, Answering Defendants deny

the allegations of paragraph 28 of the Complaint.

29.    This Court has personal jurisdiction over Defendants pursuant to N.Y.
C.P.L.R. 301 and 302 and Bankruptcy Rule 7004.  Where a federal statute provides for
nationwide service of process, as does Rule 7004, a federal court has personal jurisdiction over
any defendant with minimum contacts with the United States.

**ANSWER**:    The allegations of paragraph 29 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations of paragraph 29 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29

of the Complaint and therefore deny such allegations.

30.    Defendants have the required minimum contacts with the United States
under Bankruptcy Rule 7004 either through their own contacts or business dealings, or contacts
or business dealings that can be attributed or imputed to them in their capacity as a successor in
interest, general partner or trustee.

**ANSWER**:    The allegations of paragraph 30 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations of paragraph 30 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30

of the Complaint and therefore deny such allegations.

31.    Defendants, directly or through acts attributed or imputed to them,
purposely availed themselves of the laws and protections of the United States and the State of
New York by, among other things, knowingly directing funds to be invested with New York-

based BLMIS through the Fairfield Funds or Kingate, and then receiving transfers from these funds (the subsequent transfers).

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 31 of the Complaint

concerning Kingate.  The remaining allegations of paragraph 31 contain legal conclusions to

which no response is required.  To the extent a response is required, Answering Defendants deny

the allegations of paragraph 31 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31

of the Complaint and therefore deny such allegations.

32.    Through their investments and receipt of transfers, Defendants, directly or through acts attributed or imputed to them: (i) knowingly accepted the rights, benefits and privileges of conducting business or transactions in the United States and New York; (ii) derived significant revenue from the United States and New York; and (iii) maintained minimum contacts or general business contacts with the United States and New York.

**ANSWER**:    The allegations of paragraph 32 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations of paragraph 32 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32

of the Complaint and therefore deny such allegations.

33.    SG Suisse, SG Lugano, SG UK, Barep, SG Premium, SG Audace, SG Equilibrium, Lyxor Premium, SGBT, OFI, Palmares and UMR entered into one or more subscription agreements with the Fairfield Funds agreeing not only that New York law would govern their dealings, but also that any related suit, action or proceeding would be brought in New York.  Thus, they agreed to irrevocably submit to the jurisdiction of the New York courts and to forego any claim that the New York courts are an inconvenient forum.

**ANSWER**:    The allegations of paragraph 33 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 33 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 of the Complaint and therefore deny such allegations, except (1) Answering Defendants admit that SG Premium, SG Audace, SG Equilibrium, and Lyxor Premium, respectively, subscribed with the Fairfield Funds, and (2) SG as Trustee admits that Barep entered into one or more subscription agreements with the Fairfield Funds and refers the Court to those documents for their contents.

34.    SG Suisse, SG Lugano, SG UK, Barep, SG Premium, SG Audace, SG Equilibrium, Lyxor Premium, SGBT, OFI, Palmares and UMR certified that they were professional investors when they entered into subscription agreements with the Fairfield Funds. The subscription agreements, as well as Fairfield Fund private placement memoranda, also confirmed that substantially all of the funds' assets would be invested with New York-based BLMIS, a United States-registered broker-dealer that used a non-traditional options trading strategy described as a "split-strike conversion."  These documents deemed BLMIS and its personnel, who were located in New York, "essential" to the Fairfield Funds and their profitability. Fairfield Sentry instructed its subscribers to send subscription monies to a bank account in New York.  Several of the subscribers to the Fairfield Funds also communicated regularly with FGG account representatives located in New York City.

**ANSWER**:    The allegations of paragraph 34 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 34 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 of the Complaint and therefore deny such allegations, except (1) Answering Defendants admit that SG Premium, SG Audace, SG Equilibrium, and Lyxor Premium, respectively, subscribed with the Fairfield Funds , and (2) SG as Trustee admits that Barep entered into one or more

subscription agreements with the Fairfield Funds and refers the Court to those documents for

their contents.

35.    SG Suisse, SG Equilibrium, SGBT and Bank Audi entered into one or
more subscription agreements with Kingate, and sent their subscription monies to a New York
bank account, as Kingate instructed.  The Kingate subscription agreements and associated
information memoranda did not mention New York-based BLMIS or Madoff by name, but the
memoranda confirmed that the fund would have an "Investment Advisor" that was based in New
York, invested "primarily" in the United States and used a non-traditional "split-strike
conversion" trading strategy -- a reference to BLMIS and Madoff.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 35 of the Complaint

concerning Kingate.

36.    Defendants have other strong ties to the United States and New York apart
from the contacts specific to the causes of action in this Complaint. SG is one of the largest
foreign banking organizations in the United States, with approximately 2,500 professionals
working in 13 cities across the United States. SG maintains a branch office at 1221 Avenue of
the Americas, New York, NY 10020 and registers this branch with the New York State
Department of Financial Services and the Federal Reserve Bank.  SG Suisse, SG Lugano, SG
UK, Lyxor SA, SG Holding, Lyxor Asset and SGBT are all wholly-owned subsidiaries of SG.
Lyxor SA, in turn, manages the operations of SG Premium, SG Audace, SG Equilibrium and
Lyxor Premium.

**ANSWER**:    Answering Defendants deny the allegations of paragraph 36 of the

Complaint as to themselves, and deny knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 36 of the Complaint and therefore deny such

allegations, except (1) Answering Defendants (a) admit that, at certain times, SG maintained a

branch office at 1221 Avenue of the Americas, New York, NY 10020, (b) admit that, at certain

times, SG was the ultimate parent of Lyxor SA and Lyxor Asset, (c) admit that at certain times

after December 2009, Lyxor SA managed the operations of SG Audace, Lyxor Premium and SG

Equilibrium, and (d) state that Lyxor Asset's predecessor entity, not Lyxor SA, managed the

operations of SG Premium and (2) SG as Trustee (a) admits that, at the time the Complaint was

filed, SG had approximately 1,900 employees in the United States, (b) admits that, at certain

times, SG maintained a branch office at 1221 Avenue of the Americas, New York, NY 10020

and registered this branch with the Federal Reserve Bank, (c) admits that, at certain times, SG

registered a branch office located in New York with the New York State Department of

Financial Services, and (d) admits that SG is the ultimate parent corporation of SG Suisse, SG

Luxembourg, SG UK, and SG Holding.

> 37.    Several other Defendants maintain offices or regularly conduct business in
> the United States or New York.  SG Suisse maintains a representative office in Florida that is
> registered with the Florida Office of Financial Services. Lyxor Asset, a Delaware corporation
> based in New York, is registered with the National Futures Association as a Commodity Pool
> Operator and conducts business through New York entities SG Americas Securities LLC and
> Societe Generale New York.  Lyxor Asset and Lyxor Premium have filed forms with the U.S.
> Securities and Exchange Commission (the "SEC") in connection with their dealings in the
> United States.

> **ANSWER**:    Answering Defendants deny the allegations of paragraph 37 of the

Complaint as to themselves and deny knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 37 of the Complaint and therefore deny such

allegations, except (1) Answering Defendants admit that, at certain times, Lyxor Asset was a

corporation organized under the laws of Delaware, (2) Lyxor Asset admits that, at certain times,

Lyxor Asset was registered with the National Futures Association as a Commodity Pool

Operator and filed forms with the U.S. Securities and Exchange Commission (the "SEC") and

respectfully refers the Court to those documents for a complete and accurate statement of their

contents, (3) Lyxor Premium and SG as Trustee admit that Lyxor Premium filed forms with the

SEC and respectfully refer the Court to those documents for a complete and accurate statement

of their contents, and (4) SG as Trustee admits that, at certain times, Société Générale Private

Banking (Suisse) S.A. (*f/k/a* SG Private Banking Suisse S.A.) maintained a representative office in Florida.

38.    This Court has personal jurisdiction over Defendants based on all of these specific and general contacts with the United States and New York.  Defendants should reasonably expect to be subject to jurisdiction based on these contacts.

**ANSWER**:    The allegations of paragraph 38 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 38 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint and therefore deny such allegations.

39.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**ANSWER**:    The allegations of paragraph 39 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 39 of the Complaint.

40.    Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to the entry of final orders or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

**ANSWER**:    The allegations of paragraph 40 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 40 of the Complaint and object to the entry of final orders or judgment against Answering Defendants.

41.    Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER**:    The allegations of paragraph 41 contains a legal conclusion to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 41 of the Complaint.

## IV.    BACKGROUND

### A.    THE MAIN CASE

42.    Madoff was arrested by federal agents on December 11, 2008 (the "Filing Date") for violation of the criminal securities laws, including for, among other things, securities fraud, investment adviser fraud and mail and wire fraud.  At about the same time, the SEC commenced the District Court Proceeding against Madoff and BLMIS.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.  The District Court Proceeding is still pending.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint and therefore deny such allegations, except admit on information and belief that Madoff was arrested on December 11, 2008, and that the SEC filed a complaint against Madoff and BLMIS and respectfully refer the Court to that document for a complete and accurate statement of its contents.

43.    The Honorable Louis L. Stanton of the District Court entered an order on December 12, 2008 appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint and therefore deny such allegations, and respectfully refer the Court to the order dated December 12, 2008 for a complete and accurate statement of its contents.

44.    On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC") under SIPA § 78eee(a)(4)(B).  The SIPC application alleged, among other things, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 44 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the application filed by SIPC referred to

in paragraph 44 of the Complaint for a complete and accurate statement of its contents.

45.    Judge Stanton granted the SIPC application and included in the order a
SIPA decree (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the
business of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA §
78eee(b)(3); and

c.    removed the case to the United States Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court") under SIPA § 78eee(b)(4).

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 45 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the order issued by Judge Stanton

referred to in paragraph 45 of the Complaint for a complete and accurate statement of its

contents.

46.    By orders dated December 23, 2008 and February 4, 2009, respectively,
the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested
person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of
BLMIS.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 46 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the Bankruptcy Court orders dated

December 23, 2008 and February 4, 2009 for a complete and accurate statement of their

contents.

47.    At a plea hearing on March 12, 2009 in the criminal case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23.  He further admitted, "[A]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.*  Then District Court Judge Denny Chin sentenced Madoff on June 29, 2009 to 150 years in prison.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 47 of the Complaint and therefore

deny such allegations, except admit on information and belief that Bernard L. Madoff pled guilty

at a plea hearing on March 12, 2009 and respectfully refer the Court to the transcript of that

hearing for a complete and accurate statement of its contents.

48.    Former BLMIS employee Frank DiPascali is awaiting sentencing after pleading guilty on August 11, 2009 to participating in and conspiring to perpetuate the Ponzi scheme.  In the case, entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali admitted that, among other things, the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 48 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the transcript of the plea hearing of

Frank DiPascali on August 11, 2009 for a complete and accurate statement of its contents.

49.    Former BLMIS trader David Kugel is awaiting sentencing after pleading guilty on November 21, 2011 to charges that he participated in the Ponzi scheme.  See *United States v. Kugel*, Case No. 10-CR-00228 (LTS) (S.D.N.Y. Nov. 21, 2011).  Kugel stated under oath that the scheme began in the early 1970s, and he admitted that he worked with two other BLMIS employees, JoAnn Crupi and Annette Bongiorno, to create false trades.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 49 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the docket and filings in Case No. 10-

CR-00228 (LTS) for a complete and accurate statement of their contents.

### B.    TRUSTEE'S POWER AND STANDING

50.    The Trustee has a responsibility under SIPA to recover and pay out Customer Property to BLMIS customers, assess claims and liquidate any other assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years and lost.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme.  Absent the instant case and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint and therefore deny such allegations, except state that the allegations concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code contain legal conclusions to which no response is required.

51.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER**:    The allegations of paragraph 51 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 51 of the Complaint.

52.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of Section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of Section 544 of the Bankruptcy Code.

**ANSWER**:    The allegations of paragraph 52 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations of paragraph 52 of the Complaint.

53.     The Trustee has standing to bring the claims in this adversary proceeding pursuant to his statutory authority and power to avoid and recover transfers under SIPA §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3); Bankruptcy Code Sections 105(a), 323(b), 544, 547, 548, 550(a), 551 and 704(a)(1); NYDCL §§ 273-279; and N.Y. C.P.L.R. 203(g) and 213(8).

**ANSWER**:     The allegations of paragraph 53 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations of paragraph 53 of the Complaint.

## V.     THE PONZI SCHEME

54.     BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer and sole owner, operated BLMIS together with several of his friends and family members.  BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b).  By virtue of that registration, BLMIS was a member of SIPC.  BLMIS had three business units: market making, proprietary trading and the investment advisory business (the "IA Business").

**ANSWER**:     Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 54 of the Complaint and therefore

deny such allegations.

55.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy (the "SSC Strategy").  Under this strategy, Madoff purported to invest BLMIS customer funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100") -- a collection of the 100 largest publicly-traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100.  He also claimed he would carefully time purchases and sales to maximize value, and BLMIS customer funds would, intermittently, be out of the equity markets.

**ANSWER**:     Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 55 of the Complaint and therefore

deny such allegations.

56.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts.  Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 56 of the Complaint and therefore

deny such allegations.

57.    Madoff told BLMIS customers that, when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills.  Madoff also told customers that he would enter and exit the market between six and ten times each year.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 57 of the Complaint and therefore

deny such allegations.

58.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts.  The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious.  Madoff admitted at his plea hearing that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted (as later confirmed by Frank DiPascali and David Kugel) that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts.  In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities.  Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 58 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to the transcript of the plea hearing

referred to in paragraph 58 for a complete and accurate statement of its contents.

59.    Madoff assured clients and regulators prior to his arrest that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 59 of the Complaint and therefore

deny such allegations.

60.    For all relevant periods, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options; rather it was used to pay withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments to enrich himself and his associates and family.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 60 of the Complaint and therefore

deny such allegations.

61.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 61 of the Complaint and therefore

deny such allegations.

62.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in a demand, investigation, the filing of a claim and disclosure of the fraud.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 62 of the Complaint and therefore

deny such allegations.

63.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER**:    Answering Defendants admit that the Ponzi scheme collapsed in December 2008 but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 of the Complaint and therefore deny such allegations.

64.    It now appears based upon the Trustee's ongoing investigation that there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  BLMIS generated account statements in early December 2008 for its approximately 4,900 open customer accounts.  When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth only a fraction of that amount.  Customer accounts had not accrued any real profits because virtually no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint and therefore deny such allegations.

65.    Thus, at all relevant times, the liabilities of BLMIS were billions of dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of all transfers, BLMIS was left with insufficient capital.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint and therefore deny such allegations.

## VI.    THE TRANSFERS

66.    Fairfield Sentry and Kingate each received initial transfers of Customer Property from BLMIS.  Some or all of those initial transfers were subsequently transferred to, or for the benefit of, Defendants, either directly or through Fairfield Sigma or Fairfield Lambda as set forth in more detail below.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 66 of the Complaint

concerning Kingate.  Answering Defendants deny the remaining allegations of paragraph 66 of

the Complaint as to themselves and deny knowledge or information sufficient to form a belief as

to the truth of the remaining allegations in paragraph 66 of the Complaint and therefore deny

such allegations.

A.     **FAIRFIELD**

*The Fairfield Action*

67.     The Trustee filed a complaint in which he sought to avoid and recover
initial and subsequent transfers of Customer Property from BLMIS to Fairfield Sentry, Fairfield
Sigma, Fairfield Lambda and others.  See *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No.
09-01239 (BRL) (the "Fairfield Action").  The Trustee incorporates by reference the allegations
in the Fairfield complaint as if fully set forth in this Complaint. A copy of the Fairfield Amended
Complaint (without exhibits) is attached here as Exhibit A.

**ANSWER**:     The allegations of paragraph 67 refer to proceedings in another

litigation to which Answering Defendants were not parties.  Answering Defendants respectfully

refer the Court to the docket and filings in that action for their contents.  To the extent a further

response is required, Answering Defendants state that they were never parties to the Fairfield

Action.  Answering Defendants object to the purported wholesale incorporation by reference of a

pleading from another litigation as a violation of Rule 8 of the Federal Rules of Civil Procedure

as incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure.  To the extent a

further response is required, Answering Defendants deny knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 67 of the Complaint and therefore

deny such allegations, and respectfully refer the Court to Exhibit A to the Complaint for its

complete and accurate contents.

68.     Pursuant to orders dated June 7 and June 10, 2011, the Bankruptcy Court
approved a settlement among the Trustee, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda
(the "Settlement Agreement").  As part of the approved resolution, the Bankruptcy Court entered

consent judgments for the Trustee in the amount of $3,054,000,000 against Fairfield Sentry, $752,300,000 against Fairfield Sigma and $52,900,000 against Fairfield Lambda. The judgments represented the settled amounts of the Trustee's "Avoiding Power Claims." See Settlement Agreement (without exhibits), attached here as Exhibit B, at p. 4, section 1.

**ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 68 of the Complaint and

respectfully refer the Court to Exhibit B to the Complaint and the referenced orders dated June 7

and June 10, 2011 for their complete and accurate contents.

### Initial Transfers from BLMIS to Fairfield Sentry

69.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of $2,985,136,619 (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff- 2(c)(3).

**ANSWER**:    The allegations of paragraph 69 contain legal conclusions to which

no response is required. To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 69 of the Complaint and therefore deny such allegations.

70.    The Fairfield Sentry Six Year Initial Transfers include $1,614,067,088 that BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under Sections 548, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    The allegations of paragraph 70 contain legal conclusions to which

no response is required. To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

70 of the Complaint and therefore deny such allegations.

71.    The Fairfield Sentry Two Year Initial Transfers include $1,134,628,244 that BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under Sections 547, 550 and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    The allegations of paragraph 71 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

71 of the Complaint and therefore deny such allegations.

72.    The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers and Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers."  A chart setting forth the BLMIS accounts from which the Fairfield Sentry Initial Transfers were made is attached here as Exhibit C.  A chart setting forth the transfers is attached here as Exhibit D.

**ANSWER**:    The allegations of paragraph 72 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 72 of the Complaint and therefore deny such allegations and respectfully refer the

Court to Exhibits C and D for their complete and accurate contents.

### *Subsequent Transfers from Fairfield Sentry to Defendants SG Suisse, SG Lugano, SG UK, Lyxor SA, SG Holding, SG Premium, Lyxor Asset, SG Audace, SG Equilibrium, Lyxor Premium, SG, SGBT, OFI, Palmares and UMR*

73.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred to, or for the benefit of, Defendants SG Suisse; SG Lugano; SG UK; Lyxor SA and SG Holding through their predecessor Barep; SG Premium; Lyxor Asset as the general partner of SG Premium; SG Audace; SG Equilibrium; Lyxor Premium; SG as trustee for Lyxor Premium; SGBT; OFI; Palmares; and UMR.  These parties are referred to below as the "SG Sentry Defendants."  The subsequent transfers are recoverable from the SG Sentry Defendants pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, $128,678,138 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to, or for the benefit of, the SG Sentry

Defendants (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached here as Exhibit E.

        **ANSWER**:    The allegations of paragraph 73 contain legal conclusions to which

no response is required. To the extent a response is required, Answering Defendants deny the

allegations of paragraph 73 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73

of the Complaint and therefore deny such allegations, and respectfully refer the Court to Exhibit

E to the Complaint for its complete and accurate contents.

        ***Subsequent Transfers from Fairfield Sentry to Fairfield Sigma and then to
Defendants SG Suisse, SG Lugano and SGBT***

        74.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred through Fairfield Sigma to, or for the benefit of, Defendants SG Suisse, SG Lugano and SGBT (the "SG Sigma Defendants"), and is recoverable from them pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma. A chart setting forth those transfers is attached here as Exhibit F. Fairfield Sigma, in turn, transferred the equivalent of $2,090,254 of the money it received from Fairfield Sentry to, or for the benefit of, the SG Sigma Defendants (the "Fairfield Sigma Subsequent Transfers"). A chart setting forth the presently known Fairfield Sigma Subsequent Transfers is attached here as Exhibit G.

        **ANSWER**:    The allegations of paragraph 74 contain legal conclusions to which

no response is required. To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 74 of the Complaint and therefore deny such allegations, and respectfully refer the

Court to Exhibits F and G to the Complaint for their complete and accurate contents.

        75.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred through Fairfield Lambda to, or for the benefit of, Defendant SG Suisse and is recoverable from SG Suisse pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, $52,935,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Lambda. A chart setting forth those transfers is attached here as Exhibit H. Fairfield Lambda, in turn, transferred the equivalent of $6,287,866 of the money it received from Fairfield Sentry to,

or for the benefit of, Defendant SG Suisse (the "Fairfield Lambda Subsequent Transfers").  A chart setting forth the presently known Fairfield Lambda Subsequent Transfers is attached here as Exhibit I.

       **ANSWER**:    The allegations of paragraph 75 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 75 of the Complaint and therefore deny such allegations, and respectfully refer the

Court to Exhibits H and I to the Complaint for their complete and accurate contents.

       76.    The Trustee's investigation is ongoing, and he reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers, Fairfield Sigma Subsequent Transfers and Fairfield Lambda Subsequent Transfers; and (ii) seek the recovery of any additional transfers.

       **ANSWER**:    Answering Defendants deny knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 76 of the Complaint and therefore

deny such allegations.

    B.    **KINGATE**

       *The Kingate Action*

       77.    The Trustee filed a complaint in which he sought to avoid and recover initial transfers of Customer Property from BLMIS to Kingate and others.  See *Picard v. Kingate Global Fund, Ltd., et al.*, Adv. Pro. No. 09-01161 (BRL) (the "Kingate Action"); see also District Court Case Nos. 11-CV-07256 (JSR) and 11-CV-07134 (JSR).  The Trustee incorporates by reference the allegations in the Kingate complaint as if fully set forth in this Complaint.  A copy of the Kingate Third Amended Complaint (without exhibits) is attached here as Exhibit J. The Kingate Action is still pending.

       **ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 77 of the Complaint.

       *Initial Transfers from BLMIS to Kingate*

78.    Over the lifetime of Kingate's account with BLMIS, from its inception to the Filing Date, BLMIS made transfers to Kingate in the amount of $437,501,112 (the "Kingate Lifetime Initial Transfers"). The Kingate Lifetime Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3); and N.Y. C.P.L.R. 203(g) and 213(8).

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 78 of the Complaint.

79.    The Kingate Lifetime Initial Transfers include $398,704,065 that BLMIS transferred to Kingate during the six years preceding the Filing Date (the "Kingate Six Year Initial Transfers"). The Kingate Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 79 of the Complaint.

80.    The Kingate Six Year Initial Transfers include $163,447,509 that BLMIS transferred to Kingate during the two years preceding the Filing Date (the "Kingate Two Year Initial Transfers"). The Kingate Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 548, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia,* dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 80 of the Complaint.

81.    The Kingate Two Year Initial Transfers include $101,753,145 that BLMIS transferred to Kingate during the 90 days preceding the Filing Date (the "Kingate Preference Period Initial Transfers"). The Kingate Preference Period Initial Transfers were and are Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 547, 550 and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia*, dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 81 of the Complaint.

82.    The Kingate Lifetime Initial Transfers, Kingate Six Year Initial Transfers, Kingate Two Year Initial Transfers and Kingate Preference Period Initial Transfers are collectively defined as the "Kingate Initial Transfers." A chart setting forth the BLMIS account from which the Kingate Initial Transfers were made is attached here as Exhibit K. A chart setting forth the transfers is attached here as Exhibit L.

ANSWER:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia*, dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 82 of the Complaint.

### *Subsequent Transfers from Kingate to Defendants SG Suisse, SG Equilibrium, SGBT and Bank Audi*

83.    A portion of the Kingate Initial Transfers was subsequently transferred directly or indirectly to, or for the benefit of, Defendants SG Suisse, SG Equilibrium, SGBT and Bank Audi. These parties are referred to below as the "SG Kingate Defendants." The subsequent transfers are recoverable from the SG Kingate Defendants pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, $25,832,301 of the money transferred from BLMIS to Kingate was subsequently transferred by Kingate to, or for the benefit of, the SG Kingate Defendants (the "Kingate Subsequent Transfers"). A chart setting forth the presently known Kingate Subsequent Transfers is attached here as Exhibit M.

ANSWER:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia*, dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [see ECF No.

133]; accordingly, no response is required to the allegations of paragraph 83 of the Complaint.

84.    The Trustee's investigation is ongoing, and the Trustee reserves the right
to: (i) supplement the information on the Kingate Initial Transfers and Kingate Subsequent
Transfers; and (ii) seek the recovery of any additional transfers.

**ANSWER**:    On April 18, 2022, the Court entered the 2022 Stipulation and

Order amending the Complaint which, *inter alia*, dismissed Count Four against the SG

Defendants related to subsequent transfers allegedly received from Kingate Global [*see* ECF No.

133]; accordingly, no response is required to the allegations of paragraph 84 of the Complaint.

## COUNT ONE
## RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS–
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

**(SG Suisse, SG Lugano, SG UK, Lyxor SA, SG Premium, Lyxor Asset, SG Holding, SG
Audace, SG Equilibrium, Lyxor Premium, SG, SGBT, OFI, Palmares and UMR)**

85.    The Trustee incorporates by reference the allegations contained in the
previous paragraphs of this Complaint as if fully rewritten here.

**ANSWER**:    Answering Defendants incorporate and reassert their responses to

the allegations contained in the previous paragraphs of this Complaint as though set forth fully

herein.

86.    The SG Sentry Defendants received the Fairfield Sentry Subsequent
Transfers, which totaled at least $128,678,138 and are recoverable by the Trustee under Section
550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER**:    The allegations of paragraph 86 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny the

allegations in paragraph 86 of the Complaint as to themselves and deny knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 86

of the Complaint and therefore deny such allegations.

87.    Each of the Fairfield Sentry Subsequent Transfers was made to, or for the benefit of, an SG Sentry Defendant.

**ANSWER**:    The allegations of paragraph 87 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in paragraph 87 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 of the Complaint and therefore deny such allegations.

88.    The SG Sentry Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers, which are avoidable and recoverable as set forth in the Fairfield Action.

**ANSWER**:    The allegations of paragraph 88 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in paragraph 88 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 of the Complaint and therefore deny such allegations.

89.    As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment (i) against Defendants SG Suisse, SG Lugano, SG UK, Lyxor SA, SG Premium, Lyxor Asset, SG Holding, SG Audace, SG Equilibrium, Lyxor Premium, SGBT, OFI, Palmares and UMR recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS; and (ii) directing Defendant SG to effect or facilitate the surrender and transfer of the Fairfield Sentry Subsequent Transfer received by Defendant Lyxor Premium, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER**:    The allegations of paragraph 89 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny the allegations in paragraph 89 of the Complaint as to themselves and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 89 of the Complaint and therefore deny such allegations.

## COUNT TWO
## RECOVERY OF FAIRFIELD SIGMA SUBSEQUENT TRANSFERS–
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

### (SG Suisse, SG Lugano and SGBT)

90.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten here.

**ANSWER**:     Answering Defendants incorporate and reassert their responses to the allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

91.     The SG Sigma Defendants received the Fairfield Sigma Subsequent Transfers, which totaled at least $2,090,254 and are recoverable by the Trustee under Section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER**:     The allegations of paragraph 91 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91 of the Complaint and therefore deny such allegations.

92.     Each of the Fairfield Sigma Subsequent Transfers was made to, or for the benefit of, an SG Sigma Defendant.

**ANSWER**:     The allegations of paragraph 92 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint and therefore deny such allegations.

93.     The SG Sigma Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers, which are avoidable and recoverable as set forth in the Fairfield Action.

**ANSWER**:     The allegations of paragraph 93 contain legal conclusions to which no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 93 of the Complaint and therefore deny such allegations.

94.    As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the SG Sigma Defendants recovering the Fairfield Sigma Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER**:    The allegations of paragraph 94 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 94 of the Complaint and therefore deny such allegations.

## COUNT THREE
## RECOVERY OF FAIRFIELD LAMBDA SUBSEQUENT TRANSFERS–
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

### (SG Suisse)

95.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten here.

**ANSWER**:    Answering Defendants incorporate and reassert their responses to

the allegations contained in the previous paragraphs of this Complaint as though set forth fully

herein.

96.    Defendant SG Suisse received the Fairfield Lambda Subsequent Transfers, which totaled at least $6,287,866 and are recoverable by the Trustee under Section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER**:    The allegations of paragraph 96 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 96 of the Complaint and therefore deny such allegations.

97.    Each of the Fairfield Lambda Subsequent Transfers was made to, or for the benefit of, Defendant SG Suisse.

**ANSWER**:       The allegations of paragraph 97 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 97 of the Complaint and therefore deny such allegations.

98.      Defendant SG Suisse is an immediate or mediate transferee of the
Fairfield Sentry Initial Transfers, which are avoidable and recoverable as set forth in the Fairfield
Action.

**ANSWER**:       The allegations of paragraph 98 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 98 of the Complaint and therefore deny such allegations.

99.      As a result of the foregoing, pursuant to Sections 550(a) and 551 of the
Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a
judgment against Defendant SG Suisse recovering the Fairfield Lambda Subsequent Transfers,
or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER**:       The allegations of paragraph 99 contain legal conclusions to which

no response is required.  To the extent a response is required, Answering Defendants deny

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 99 of the Complaint and therefore deny such allegations.

## RESPONSE TO REQUEST FOR RELIEF

Answering Defendants deny that the Trustee is entitled to his requested judgment

in favor of the Trustee and against Answering Defendants.

## AFFIRMATIVE DEFENSES

Answering Defendants assert the following defenses without assuming the

burden of proof or any other burden if such burdens would otherwise be on Plaintiff.  Answering

Defendants reserve the right to assert any other defenses as discovery in this litigation proceeds

or any counterclaims that it becomes aware of through discovery or other investigation as may be appropriate at a later time. Further, Answering Defendants also reserve the right to amend this Answer to assert cross-claims and/or third-party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint must be dismissed because the Court lacks personal jurisdiction over Lyxor Premium, SG Audace, and SG Equilibrium.

## THIRD AFFIRMATIVE DEFENSE

The Trustee's claims are barred to the extent they have been or may in the future be dismissed by the Court or are based on allegations that have been or may in the future be dismissed by the Court or are based on theories or allegations that have been or may in the future be rejected by this Court or by another court on appeal from any orders of this Court.

## FOURTH AFFIRMATIVE DEFENSE

The alleged Fairfield Sentry Subsequent Transfers may not be avoided or recovered because, to the extent that Answering Defendants received redemption payments from the Fairfield Funds, they did so in exchange for value and in good faith within the meaning of 11 U.S.C. § 550(b). Answering Defendants did not have knowledge that BLMIS was not trading securities, did not know facts that would have prompted a reasonable person in its position to conduct further inquiry into BLMIS's possible fraud, and even if Answering Defendants had

conducted a diligent inquiry, they would not have discovered the fraudulent purpose of the

Fairfield Sentry Initial Transfers and that BLMIS was not trading securities.

A reasonable person with the facts in Answering Defendants' possession at the

time of the Fairfield Sentry Subsequent Transfers would not have been on inquiry notice of the

fraudulent purpose behind the Fairfield Sentry Initial Transfers, nor would those facts have led

such a person to conduct further inquiry into whether BLMIS was trading securities or was a

fraud or a Ponzi scheme.

Even if Answering Defendants had been on inquiry notice of the possible

fraudulent purpose behind the Fairfield Sentry Initial Transfers or of facts that would have led a

reasonable person to conduct further inquiry into whether BLMIS was trading securities or was a

fraud or a Ponzi scheme, a diligent inquiry by Answering Defendants would not have discovered

that BLMIS was not trading securities or was a fraud or a Ponzi scheme.  Indeed, other entities

with vastly greater investigatory tools and resources than Answering Defendants, and with more

access to BLMIS personnel and documentation than Answering Defendants, investigated BLMIS

but failed to uncover that it was a Ponzi scheme before December 2008.  This includes the SEC,

which began an investigation into BLMIS in 2006, but could not discern BLMIS's fraudulent

purpose.  Unlike U.S. federal regulatory agencies, Answering Defendants did not have the ability

to compel the production of information from third parties that would have been necessary to

establish that BLMIS was committing fraud and did not have the capability of discovering what

U.S. federal regulators could not.  Answering Defendants could not have discovered the

fraudulent purpose of the Fairfield Sentry Initial Transfers.

## FIFTH AFFIRMATIVE DEFENSE

The alleged Fairfield Sentry Initial Transfers may not be avoided because they were not made with actual intent to defraud and were settlement payments made by or to, or for the benefit of, a financial institution or financial participant or were transfers made by or to, or for the benefit of, a financial institution or financial participant in connection with a securities contract within the meaning of 11 U.S.C. § 546(e).  In addition, at the time of the alleged Fairfield Sentry Subsequent Transfers, Answering Defendants had no actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

## SIXTH AFFIRMATIVE DEFENSE

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds.  This Court approved the Fairfield Settlement Agreement on June 7, 2011, and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment").  The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred.  To the extent that the Liquidators recover from Answering Defendants in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should Answering Defendants be subject to recovery of identical funds from two separate entities.

## SEVENTH AFFIRMATIVE DEFENSE

Lyxor Asset is not liable for the Fairfield Sentry Subsequent Transfer alleged to have been received by SG Premium, as the limited partnership status of SG Premium was cancelled in or around November 2007 as pursuant to the Certificate of Cancellation of Certificate of Limited Partnership of SG AM AI Premium L.P. as filed in the office of the Secretary of State of the State of Delaware.

## EIGHTH AFFIRMATIVE DEFENSE[5]

To the extent that the alleged Fairfield Sentry Subsequent Transfers, or any portion thereof, alleged to have been received by Answering Defendants were not Customer Property under 15 U.S.C. § 78fff-2(c)(3) or any other section of the U.S. Bankruptcy Code that BLMIS transferred to the Fairfield Funds, such funds are not recoverable by the Trustee from Answering Defendants.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Answering Defendants hereby demands a jury trial on all claims and issues that may be tried by a jury.

## FINAL ORDER

Answering Defendants object to the entry of a final order or judgment against Answering Defendants by the Bankruptcy Court.

WHEREFORE, Answering Defendants request that this Court dismiss the Complaint with prejudice, award Answering Defendants their costs incurred in connection with this action, and grant such other and further relief as the Court deems just and proper.

Dated:  December 21, 2022
        New York, New York

ALLEGAERT BERGER & VOGEL LLP

By: /s/ John F. Zulack

John F. Zulack
Lauren J. Pincus
David A. Shaiman
Bianca Lin
111 Broadway, 20th Floor
New York, New York 10006
Tel No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com
Email: blin@abv.com

MAYER BROWN LLP

By: /s/ Christopher J. Houpt

Steven Wolowitz
Christopher J. Houpt
Bradley A. Cohen
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: 212-506-2500
Email: swolowitz@mayerbrown.com
Email: choupt@mayerbrown.com
Email: bacohen@mayerbrown.com

*Counsel for Lyxor Asset Management Inc. (f/k/a SG Asset Management, Inc.), as general partner of SG AM AI Premium Fund L.P., Lyxor Premium Fund (f/k/a SGAM Alternative Multi Manager Diversified Fund), now acting by and through its trustee, Societe Generale S.A., Societe Generale S.A., as Trustee for Lyxor Premium Fund, SG Audace Alternatif (f/k/a SGAM AI Audace Alternatif), now acting by and through its manager, Lyxor Asset Management S.A.S., and SGAM AI Equilibrium Fund (f/k/a SGAM Alternative Diversified Fund),*

---

[5] By asserting the Eighth Affirmative Defense Answering Defendants do not, in any way, acknowledge or concede that they have the burden of proof for any issues as to which applicable law places such burden of proof on Plaintiff.

*now acting by and through its liquidator, KPMG Advisory Sarl*