<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01565 (CGM) |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK (LUXEMBOURG) S.A.), as represented by its Liquidator HANSPETER KRÄMER, HANSPETER KRÄMER, in his capacities as liquidator and representative of STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A., STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LTD., f/k/a AMERICAN EXPRESS BANK INTERNATIONAL, and STANDARD CHARTERED HOLDINGS INC. (as successor in interest to STANDARD CHARTERED INTERNATIONAL (USA) LTD., f/k/a AMERICAN EXPRESS BANK LTD.), | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Robertson D. Beckerlegge, Esq.

*Attorneys for Standard Chartered Defendants*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
By:    Andrew J. Finn, Esq.

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Standard Chartered Financial Services

(Luxembourg) S.A. ("AEB Lux/SCFS"), Standard Chartered Bank International (Americas) Ltd.

("AEB Miami/SCBI"), and Standard Chartered International (USA) Ltd. ("AEB New

York/SCI") (together the "SC Defendants"[1]), motion to dismiss the complaint of Irving Picard,

the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC

("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer

property.  Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure

to plead a claim for subsequent transfers against AEB New York/SCI and AEB Miami/SCBI;

failure to allege that the SC Defendants received customer property; and that the Trustee's

allegations in his amended complaint do not relate back to the original complaint.  The SC

Defendants also raised the following affirmative defenses: "safe harbor" defense; the "mere

---

[1] The Court has combined the defined names used by the Trustee in the Compliant with the defined names used by
the SC Defendants in their motion to dismiss.

conduit" defense; and the "good faith, for value" defense.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has not been contested by the Defendants.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on April 26, 2012. (Compl., ECF[2] No. 1). An amended complaint ("Complaint") was filed on May 17, 2022. (Am. Compl., ECF No. 147). Via the Complaint, the Trustee seeks to recover at least $289,232,434 of BLMIS customer property that the SC Defendants allegedly received from Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). (Id. ¶ 1).

The SC Defendants are wholly owned subsidiaries of Standard Chartered Bank. (Id. ¶ 54). AEB New York/SCI was originally incorporated under the laws of Connecticut and changed into an Agreement Corporation[3] in February 2008. (Id. ¶ 56). It maintained an office in New York and its current successor in interest is registered in Delaware. (Id.). AEB Miami/SCBI is an Edge Act corporation[4] organized under the laws of the United States of America. (Id. ¶ 57). AEB Miami/SCBI maintained offices in Miami and New York City throughout its involvement with the BLMIS Feeder Funds.[5] (Id. ¶ 59). Its current principal place of business is located at 1111 Brickell Avenue, Miami, Florida 33131. (Id.). AEB Lux/SCFS "was incorporated and organized under the laws of the Grand Duchy of Luxembourg as a société anonyme, a type of public limited company common in civil law countries." (Id. ¶ 60).

The Trustee alleges that prior to being acquired by Standard Charted Bank PLC, AEB New York/SCI managed AEB Miami/SCBI and AEB Lux/SCFS, "which operated as a single enterprise." (Id. ¶ 61). AEB Miami/SCBI "marketed the Fairfield Funds and coordinated the

---

[2] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01565-cgm.
[3] "Agreement Corporations are corporations chartered by a state to engage in international banking that enter into agreements with the Federal Reserve Board of Governors to limit themselves to certain permitted activities." (Am. Compl. ¶ 55).
[4] "Edge Act corporations are organizations chartered by the Federal Reserve to engage in international banking and financial operations." (Am. Compl. ¶ 57).
[5] In the Complaint, the Trustee has defined "BLMIS Feeder Funds" as Fairfield Sentry Limited, Fairfield Sigma Limited (the Fairfield Funds"), feed and Kingate Global. The Trustee is not seeking recovery of any Kingate Global subsequent transfers because he has recovered all of the initial transfers. (Am. Compl. ¶¶ 4–5).

client relationships with" AEB New York/SCI and AEB Lux/SCFS. (*Id.*). "As part of this single enterprise [SC] Lux entered into the subscription agreements with the Fairfield Funds and distribution agreements with FG Limited. (*Id.*). It is alleged that the SC Defendants acted as one enterprise. (*Id.* ¶¶ 71–86). And it is alleged that the SC Defendants ignored warnings that BLMIS's returns were "not possible" and that Fairfield Sentry was a "scam" and would "explode." (*Id.* ¶ 73). "For Defendants, the promise of fees from BLMIS exceeded the obvious risk of fraud." (*Id.* ¶ 6).

The transfers that the Trustee seeks to recover were derived from investments the SC Defendants made in BLMIS via Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). (*Id.* ¶ 44). AEB Lux/SCFS received $274,029,164 in subsequent transfers from Fairfield Sentry and $15,203,270 in subsequent transfers from Fairfield Sigma. (*Id.* ¶¶ 109, 114). The Trustee has alleged that AEB Lux/SCFS accepted these transfers on behalf of the other SC Defendants. (*Id.*).

Fairfield Sentry is considered a "feeder fund" of BLMIS because the intention of the fund was to invest in BLMIS. (*Id.* ¶¶ 2, 4). Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 102). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 103). As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion. (*Id.*; Consent J., 09-01239-cgm, ECF No. 109).

In its motion to dismiss, the SC Defendants argue that this Court should dismiss the Complaint for failure to plead that AEB New York/SCI and AEB Miami/SCBI received subsequent transfers; for failure to plead that the SC Defendants received BLMIS customer

property; and because the Trustee's new allegations in the Complaint do not relate back to the

original complaint.  The SC Defendants also raised the "mere conduit" defense; the safe harbor

defense; and the "good faith, for value" defense.  The Trustee opposes the motion to dismiss.

The Court held a hearing to consider this motion on December 14, 2022.  (Hr'g Tr., ECF No.

167).

## Discussion

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.*

However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018).

   While the Trustee must allege that the initial transfer is avoidable, he is not required to

avoid the transfer received by the initial transferee before asserting an action against subsequent

transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07

(11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and

nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin.*

*Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

   The Trustee is seeking to recover subsequent transfers made to the SC Defendants by

Fairfield Sentry and Fairfield Sigma.

**AEB Miami/SCBI's and AEB New York/SCI's subsequent transfers**

   SC Defendants argue that the Trustee has failed to allege that AEB New York/SCI or

AEB Miami/SCBI received funds. Memo. L. at 15, ECF No. 151. The Trustee has alleged that

the SC Defendants operated as a "single enterprise" and "acted as agents and alter egos of each

other in connection with their investments in the BLMIS Feeder Funds." (Am. Compl. ¶ 86).

"Under New York law, courts may pierce the corporate veil either in the event of a fraud or

where the corporation has been so dominated by an individual or corporate parent that the

subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego." *In re Saba*

*Enterprises, Inc.*, 421 B.R. 626, 650 (Bankr. S.D.N.Y. 2009). To determine whether a

corporation has been used as an alter ego, the Court of Appeals for the Second Circuit has set

forth the following ten factor test:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm[']s length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). No factor is dispositive; the Court must conduct a fact intensive analysis. *Saba*, 421 B.R. at 650.

The Trustee has alleged that the SC Defendants acted as one business. (Am. Compl. ¶¶ 71–86). They marketed themselves collectively as "American Express Bank." (*Id.* ¶ 71). There was allegedly an overlap of officers and directors. (*Id.* ¶¶ 73, 76–84). As part of the enterprise, each SC Defendant played a role in the AEB New York/SCI managed AEB Miami/SCBI and AEB Lux/SCFS. (*Id.* ¶ 61). The Trustee has asserted that AEB New York/SCI directed AEB Lux/SCFS to sign the subscription agreements and hold the shares in the BLMIS feeder funds for the other SC Defendants "because investments in those funds were foreclosed to U.S. taxpayers." (*Id.* ¶ 86). AEB Miami/SCBI then sold these BLMIS Feeder Funds shares to American Express Bank clients. (*Id.*)

AEB Miami/SCBI marketed the Fairfield Funds. (*Id.*). While the exhibits to the Complaint only demonstrate that AEB Lux/SCFS received redemptions from Fairfield Sentry and Fairfield Sigma, the Trustee has alleged that AEB Lux/SCFS "received the subsequent transfers on behalf of AEB and the other Defendants." (*Id.* ¶ 86).

The Complaint also contains allegations that the other SC Defendants received BLMIS customer property in the form of fees. For example, the Trustee has alleged that "AEB received

a percentage of management fees paid to FGG entities by the Fairfield Funds." (*Id.* ¶ 67; ¶ 90).

AEB Miami/SCBI received performance and management fees paid out of BLMIS customer

property. (*Id.* ¶ 68). The Trustee also alleges that insiders of these entities received BLMIS

customer property in the form of fees for the roles they played in the SC Defendants. (*Id.* ¶¶ 92,

67).

> [T]he Trustee is an outsider to these transactions and will need discovery to
> identify the specific subsequent transfers by date, amount and the manner in
> which they were effected. The Moving Defendants are a group of interrelated
> individuals and entities
> . . . . Whether they additionally received Subsequent Transfers of BLMIS funds
> from one another is a question to which they, and they alone, have the requisite
> information to respond.

*Picard v. Chais* (*In re BLMIS*), 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011). The allegations

contain plausible grounds to infer that AEB New York/SCI and AEB Miami/SCBI received

subsequent transfers as part of a larger enterprise and that discovery may reveal additional

information regarding these transfers. These allegations provide sufficient notice to the SC

Defendants to know which funds the Trustee is seeking to recover. No one could have more

information regarding the allegations in the Complaint than the SC Defendants themselves. If

they did not receive BLMIS customer property, the evidence shall bear it out.

**Relation Back**

The Trustee's Complaint alleges $15,203,270 in new transfers from Fairfield Sigma to

the SC Defendants. The SC Defendants argue that the Trustee's new allegations of subsequent

transfers do not "relate back" to the initial pleading and are, therefore, time barred. Under Rule

15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Rule 15

"does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)). Rule 15(c) should be "liberally construed." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983). This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

New fraudulent transfer claims relate back to the original pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as the originally alleged transfers. *Peter Madoff*, 468 B.R. at 633 (citing A*delphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)). When examining "conduct" under Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint," and whether "the original complaint gave sufficient notice to the defendants that the Trustee may sue for additional transfers that were part of the same course of conduct." *Hill v. Oria (In re Juliet Homes, LP)*, Bankr. No. 07-36424, Adv. No. 09-03429, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted) (cleaned up).

The additional transfers relate back to the original complaint. The original complaint states:

> A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or *indirectly* to, or for the benefit of, Defendant Standard Chartered Luxembourg, and upon information and belief Defendant Standard Chartered Luxembourg transferred some or all of those subsequent transfers to Defendant Standard Chartered USA and/or Defendant Standard Chartered Americas (the "Fairfield Sentry Subsequent Transfers"). Based on the Trustee's investigation to date, the Fairfield Sentry Subsequent Transfers total approximately $275,267,978 and are recoverable from the Standard Chartered Defendants pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. A chart setting forth the *presently known* Fairfield Sentry Subsequent Transfers is attached as Exhibit F.

(Compl. ¶ 56, ECF No. 1.) (emphasis added). It goes on to state: "The Trustee's investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers." (*Id.* ¶ 57).

As this Court stated about another defendant in a similar litigation, "Defendant[] had over 10 years notice that they would be asked to account for these transfers." *Picard. v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *13 (Bankr. S.D.N.Y. Aug. 6, 2021). And this Court has been clear that

> the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. The Moving Defendants are a group of interrelated individuals and entities .... Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Id.* (citing *Picard v. Chais* (*In re BLMIS*), 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011). The SC Defendants were adequately appraised that the Trustee intended to collect any additional subsequent transfers that were uncovered. The new transfers "relate back" and are properly brought.

**Tracing BLMIS Customer Property**

SC Defendants argue that the Trustee should be required to "trac[e] all subscribed or redeemed amounts" that Fairfield Sentry received from BLMIS.   Memo. L. at 24–25, ECF No. 151.  This is the same argument that the Court has consistently rejected.  The Trustee is not required to allege a "dollar-for-dollar accounting of the exact funds at issue."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation.  At this stage, the Trustee need only assert allegations that make it seem plausible that the SC Defendants received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  (Am. Compl. ¶¶ 2, 102; *see also* Fairfield Compl. ¶¶ 89, 91) ("From the beginning, to comport with Madoff's requirement for BLMIS Feeder Funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").  The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.  In this case, the Trustee is not seeking to collect $5 billion from the SC Defendants.  He is seeking approximately $289,232,434.00, which easily could come from the $3 billion Fairfield received from BLMIS.  If the Court were to accept Defendants' argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all

of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendants received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Affirmative Defenses**

The SC Defendants have raised several affirmative defenses in its motion to dismiss: the "safe harbor" defense; the "mere conduit" defense; and the "good faith, for value" defense. "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up). A "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

### i. *Mere Conduit Defense for Subsequent Transferees*

In this case, the initial transfers the Trustee sought to avoid are the transfers of BLMIS customer property from BLMIS to Fairfield Sentry. (Am. Compl. ¶¶ 102–108). The Trustee is

then entitled to recover BLMIS' customer property from "any immediate or mediate good faith

transferee of" Fairfield Sentry.  11 U.S.C. § 550(a)(2).   The Trustee has alleged that the SC

Defendants are subsequent transferees under § 550(a)(2).  (Am. Compl. ¶¶ 109–118).

The SC Defendants raise *In re Finley* and argue that they are "mere conduits" and not

subsequent transferees because they did not exercise dominion and control over the BLMIS

customer property.  *Finley v. Alexander (In re Finley)*, 130 F.3d 52, 57 (2d Cir. 1997).   In

*Finley*, the Court of Appeals for the Second Circuit held that a financial intermediary is not an

"initial transferee" for purposes of § 550.  *Id.*  Some courts have applied this same "dominion or

control" test to subsequent transferees.  *See Miller v. Porush (In re Stratton Oakmont, Inc.)*, 234

B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (applying the dominion and control test to subsequent

transferees) (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir.

1988)).

Although the Defendants have provided agreement between AEB New York/SCI and

Fairfield Greenwich Limited that indicates that it was AEB New York/SCI 's intention to offer

and sell shares of the Fairfield funds (Finn Decl. exs. D–F), it is not "beyond doubt" that the SC

Defendants are "mere conduits."  The SC Defendants are alleged to be agents that maintained

dominion and control over the BLMIS customer property.[6]  The Trustee has alleged that the SC

Defendants collectively acted as one business.   (Am. Compl. ¶ 71).  The SC Defendants, not

their clients, were customers of Fairfield Sentry and Fairfield Sigma.  (*Id.* ¶¶ 71, 62–70).  The SC

Defendants, not their clients, signed subscription agreements and distribution agreements with

Fairfield Sentry and Fairfield Sigma.  (*Id.*).  The accounts at Fairfield Sentry and Fairfield Sigma

---

[6] By way of distinction, the Trustee has alleged the existence of intermediary financial institutions that moved BLMIS customer property from Fairfield Sentry and Fairfield Sigma to the SC Defendants.  Those intermediary banks are the correspondent banks that the SC Defendants used to receive redemption payments from Fairfield Sentry and rebates and fees from FG Limited.  (Am.Compl. ¶ 62(e)).  These are the types of institutions that are normally considered "mere conduits."

were held in the name of AEB Lux/SCFS and not in the name of any of AEB Lux/SCFS' clients. (*Id.*, exs. C & E).  The SC Defendants managed the investments in the Fairfield entities and did all of the purchasing and redeeming of their investments in Fairfield Sentry and Fairfield Sigma. (*Id.* ¶¶ 67, 68).   The SC Defendants reviewed and approved investments for their clients.  (*Id.* ¶ 78).  It is alleged that Robert Friedman, an executive at the SC Defendants, was the "gate keeper" and "decision-maker" for all of the SC Defendants investment products.  (*Id.* ¶ 81). There is no allegation in the Trustee's complaint that suggests that any of the SC Defendants' clients could have invested directly in Fairfield Sentry or redeemed shares from Fairfield Sentry directly.  Instead, the Compliant asserts that the SC Defendants of intentionally invested in the Fairfield Funds in order to to gain access to BLMIS and sell these shares to American Express Bank's clients.  (*Id.* ¶¶ 85–86).  By doing so, American Express Bank was able to generate fees for itself for managing and selling the purchase of Fairfield Sentry shares.  (*Id.* ¶ 90).

The SC Defendants argue that this Court should look to *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) and argue that they never used these funds for their own purpose and as such cannot be mere conduits.  (Hr'g Tr. 93, ECF No. 167).  The Trustee has not alleged that the SC Defendants were merely holding the money to pass on to their clients.  The Trustee has alleged that SC Defendants were integral parties to BLMIS' scheme and knowingly invested in the Feeder Funds in order to "reap profits." (Am. Compl. ¶ 6).  The act of generating fees on what the Defendants considered to be a "scam" is "putting [the BLMIS customer property] to [their] own purposes."  *Manhattan Fund*, 397 B.R. at15.  This scheme of creating feeder funds upon feeder funds in exchange for generating enormous management fees is the exact scenario that allowed BLMIS to operate as a Ponzi scheme for decades.  (Am. Compl. ¶¶ 44, 64(e), 67, 68, 90, 92).  To say that entities who

invested in BLMIS feeder funds and received management fees for their own benefit exercised

no control over the BLMIS assets would be ignoring the reality of BLMIS' fraud.

Though it is not his burden to plead, the Trustee's Complaint contains plausible

allegations that the SC Defendants exercised dominion and control over BLMIS customer

property.  Defendants are free plead and prove otherwise at a later stage of litigation.  *See Enron*

*Corp. v. J.P. Morgan Securities Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y.

2006) (stating that the burden of proof is on the defendant asserting a mere conduit defense);

*Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit

defense is an affirmative defense that must be proved by the defendant seeking its protection.").

### *ii.   Safe Harbor*

#### The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers

Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of those funds.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-

01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6,

2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the

Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers

qualified as payments made "in connection with" securities contracts between BLMIS and its

customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d

Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the

transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No.

22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any

transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in

connection with a security agreement" and therefore, § 546(e) cannot apply.[7] *Id.*

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors. If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account. In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016)

(internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In

re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by §

546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do

not prevent the Trustee from clawing back complicit parties' ill-gotten gains. The district court

has already determined that "those defendants who claim the protections of Section 546(e)

through a Madoff Securities account agreement but who actually knew that Madoff Securities

---

[7] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out
any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded
that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply
as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022
WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

    This Court has already determined that the Fairfield Complaint[8] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

---

[8] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

 "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders.  *Fairfield III* is inapplicable in this case for two reasons. First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is

not binding on the Court in this adversary proceeding; whereas the district court's decision in

*SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR),

2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not

apply in this case, is binding on the Court on this issue.  Second, the issue in *Fairfield III* is not

comparable*.*  In *Fairfield III*, the Court found that the plaintiffs had not met their pleading burden

because the complaint stated that Fairfield Sentry did not have knowledge of BLMIS' fraud and

the plaintiffs were not permitted to amend their complaints.  *Fairfield III*, 2020 WL 7345988, at

*9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint alleges that the [Fairfield]

Funds were duped, believing that their BLMIS investments were worth what the BLMIS

monthly statements showed. The Funds were the transferors and if they were duped, they could

not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming

investments at prices they believed to be accurate.").  In *Fairfield III*, Fairfield Sentry was the

initial transferor, not the initial transferee as it is here.  And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Inteligo has also raised the safe harbor defense in connection with its contract with

Fairfield Sentry.  Whether the safe harbor applies to the initial transfers under the theory that

BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contract

with Defendants (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the

pleadings.  The district court has already instructed this Court that such a determination is fact-

specific and that the Court should make such a determination with the benefit of a "full factual

record."  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL

16647767, at *24 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent

transfer between Fairfield Sentry and Defendants on account of the securities contracts between

Fairfield Sentry and Defendants.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer.  "[H]e recovers the value of the avoided initial transfer from

the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

### iii.  *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value."  *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special*

*Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.  The Complaint contains no mention of the SC Defendants'

exchanging shares for consideration.  (Am. Compl. ¶¶ 109–23).  Therefore, the "value" defense

is not asserted on the face of the Complaint.

Defendants argue that the payments it received were given in exchange for the

redemption of shares in the Fairfield Sentry fund.  If Defendants knew at the time it redeemed its

shares that the shares were worthless, then it did not receive the subsequent transfer funds "for

value" as is required under § 550.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re*

*Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry*

*Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22,

2022) ("The only exception concerns the Knowledge Defendants that received redemption

payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators

may seek to impose a constructive trust.").  It has not yet been determined whether the SC

Defendants knew if the shares they redeemed from Fairfield Sentry had value.  However, the

Trustee has alleged that the SC Defendants knew Fairfield Sentry was a "scam" and that BLMIS'

returns were "not possible."  (Am. Compl. ¶ 73).

 "Value" is Defendant's burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether the Defendants gave value is a

question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

### iv.  Good Faith

Where, in light of surrounding circumstances, a transferee should have known of the

debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith,

unless an investigation into the debtor's financial condition actually discloses no reason to

suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently

explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The

Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th

171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard

requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes

into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*,

Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can

only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal

quotation omitted).

The burden of proving good faith falls squarely on Defendants and this Court cannot

make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

Discovery is required on this issue.

### v.  *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendant's motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what the SC

Defendants subjectively knew; "whether these facts put [them] on inquiry notice of the

fraudulent purpose behind a transaction—that is, whether the facts the transferee[s] knew would

have led a reasonable person in the[ir] position to conduct further inquiry into a debtor-transferor's possible fraud; and whether "diligent inquiry by [the SC Defendants] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

<u>**Conclusion**</u>

For the foregoing reasons, the SC Defendants' motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: January 6, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **26** of **26**