AKERMAN LLP
David W. Parham (admitted pro hac vice)
Bryce Benson (admitted pro hac vice)
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:(214) 720-4300
Facsimile:(214) 981-9339
david.parham@akerman.com
Brycebenson@akerman.com
*Counsel for Cathay Life Insurance Co., Ltd Adv. Pro. No.  11-02568-CGM*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789-CGM** |
| Plaintiff-Applicant, | |
| -v- | **SIPA Liquidation** |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | **(Substantively Consolidated)** |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | **Adv. Pro. No.  11-02568-CGM** |
| -v- | |
| CATHAY LIFE INSURANCE CO. LTD., | |
| Defendant. | |

## CATHAY'S ANSWER TO COMPLAINT

Defendant, Cathay Life Insurance Co. Ltd. ("Defendant" or "Cathay"), hereby files its Answer to the Complaint (the "Complaint") filed by plaintiff, IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, ("Plaintiff" or the "Trustee") on or about September 1, 2011, and states as follows:[1]

## GENERAL DENIAL

Except as otherwise expressly admitted herein, Defendant denies each and every allegation in the Complaint.  Defendant states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response.  To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, Defendant does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint.  To the extent that it is later determined that a response is required to any allegation Defendant has been mooted by a prior dismissal of the Trustee's claims, Defendant denies any such allegation. Defendant expressly reserves the right to amend and/or supplement the Answer.

## CATHAY'S ANSWER TO THE TRUSTEE'S ALLEGATIONS AGAINST CATHAY

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

---

[1] Capitalized terms not defined herein have the meaning set forth in the Complaint.

[2] Footnote 1 alleges that SIPA § 78*lll*(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted. ANSWER to FN 1: This footnote accurately but incompletely quotes from the cited statute and Cathay states that the meaning of Customer Property also requires reference to other provisions of SIPA and other statutes and governing law.

67693994;4

ANSWER TO ¶ 1:  Cathay admits that this paragraph states the Trustee's view of this proceeding but denies that Cathay received any "Customer Property" (as defined) and further denies that the Trustee is entitled to recover any amount from or obtain any relief against Cathay.

2.      With this Complaint, the Trustee seeks to recover approximately $41,702,925 in subsequent transfers of Customer Property made to the Cathay Defendants.[3] The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in BLMIS customer accounts.

ANSWER TO ¶ 2:  Cathay admits that the Trustee seeks to recover $24,496,799 from Cathay, as set forth in Paragraph 42 of the Complaint, and that Fairfield Sentry is a BVI corporation in liquidation before BVI courts. Cathay denies that the Trustee is entitled to recover that amount or any other amount from Cathay and states that it lacks knowledge or information sufficient to form a belief about the truth of all other allegations of this paragraph. According to Paragraph 44 of the Complaint, the remaining amount ($17,206,126) was sought from Cathay Bank, which is no longer a party to this action; to the extent required, Cathay denies this allegation.

3.      When the Cathay Defendants received subsequent transfers of BLMIS Customer Property, the Cathay Defendants were part of one of the largest financial institutions in Taiwan, Cathay Financial Holdings Co., Ltd ("Cathay Holdings"). The Cathay Defendants provided life insurance products through Defendant Cathay Insurance and wealth management, consumer financing, corporate financing, and investment services through Defendant Cathay Bank. *See* Exhibit A

---

[3] On August 8, 2012, the Trustee filed a Notice of Voluntary Dismissal Without Prejudice of Cathay United Bank Ltd., such that Cathay is the sole remaining defendant in this proceeding. ECF No. 33. For purposes of answering, Cathay will assume all references to the "Cathay Defendants" are directed solely at Cathay.

67693994;4

ANSWER TO ¶ 3:  Cathay denies that it received subsequent transfers of BLMIS Customer

Property. Cathay admits it is one of the largest insurance companies in Taiwan. Cathay is

without sufficient information to admit or deny the truth of the allegations against the

dismissed defendant Cathay Bank.

## II.    JURISDICTION AND VENUE

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by the Cathay Defendants as subsequent transferees of funds originating from BLMIS.

ANSWER TO ¶ 4:  Cathay admits that the Trustee brings this adversary proceeding

pursuant to and under the cited statute, but denies the Trustee is entitled to exercise any

statutory authority to avoid and/or recover any transfer to Cathay received from any source;

and states that this paragraph contains contentions of law to which no answer is required

and, if any answer is required, denies them.

5.      This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

ANSWER TO ¶ 5:  Cathay admits the first and second sentences of this paragraph and

states that the third sentence is a contention of law to which no answer is required and, if

an answer is required, denies it.

67693994;4

6.      The Cathay Defendants are subject to personal jurisdiction in this judicial district because they purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. The Cathay Defendants knowingly received transfers of Customer Property from BLMIS. The Trustee's investigation to date reveals that the Cathay Defendants obtained this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund. By directing their investments through FGG, the Cathay Defendants knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, the Cathay Defendants entered into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction, sent copies of the subscription agreements to FGG's office in New York City, and wired funds to Fairfield Sentry through a bank in New York. The Cathay Defendants thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

ANSWER TO ¶ 6:  Cathay denies the allegations of the first, second, fourth, and sixth sentences of this paragraph. As to the third sentence, Cathay lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning an investigation conducted by Trustee and otherwise denies the allegations of that sentence. As to the fifth sentence, Cathay admits that it signed a subscription agreement with Fairfield Sentry in Taiwan and purchased Fairfield Sentry shares by initiating wire transfers from its account in Taiwan; Cathay denies all other allegations of a factual nature in the fifth sentence of this paragraph; and, to the extent of the allegations of this paragraph that are contentions of law, states that no answer is required and, if an answer to them is required, denies them.

7.      The Cathay Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 and Bankruptcy Rule 7004.

ANSWER TO ¶ 7:  Cathay denies the allegations of this paragraph.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

ANSWER TO ¶ 8:  Cathay contests that this is core proceeding.

9.      Venue in this District is proper under 28 U.S.C. § 1409.

ANSWER TO ¶ 9:  This is a contention of law to which no answer is required. Cathay

contests the Court's jurisdiction over Cathay but not venue in this District if jurisdiction is

found.

## III.    BACKGROUND

10.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents
for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment
adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange
Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The
SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser
activities of BLMIS. The District Court Proceeding remains pending.

ANSWER TO ¶ 10:   Cathay admits that the allegations in this paragraph present

information that became available to Cathay from public sources after they occurred and

otherwise lacks knowledge or information sufficient to form a belief about their truth but

does not contest them.

11.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court
entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

ANSWER TO ¶ 11:   CATHAY admits that the allegations in this paragraph present

information that became available to Cathay from public sources after they occurred and

otherwise lacks knowledge or information sufficient to form a belief about their truth but

does not contest them.

12.     On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a
combination of its own action with an application of the Securities Investor Protection Corporation
("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District
Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers
as they came due and, accordingly, its customers needed the protections afforded by SIPA.

ANSWER TO ¶ 12:  Cathay admits that the allegations in this paragraph present information that became available to Cathay from public sources after they occurred and lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

13.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.    removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c.    removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

ANSWER TO ¶ 13:  Cathay admits that the allegations in this paragraph present information that became available to Cathay from public sources after they occurred and lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

14.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

ANSWER TO ¶ 14:  Cathay admits that the allegations in this paragraph present information that became available to Cathay from public sources after they occurred and lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

15.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

ANSWER TO ¶ 15:    Cathay admits that the allegations in this paragraph present information that became available to Cathay from public sources after they occurred and lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

16.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

ANSWER TO ¶ 16:    Cathay admits that the allegations in this paragraph present information that became available to Cathay from public sources after they occurred and lacks knowledge or information sufficient to form a belief about their truth but does not contest them.

## IV.    TRUSTEE'S POWERS AND STANDING

17.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

7

ANSWER TO ¶ 17:  Cathay admits the allegations of the first and second sentences of this

paragraph and states that it lacks knowledge or information sufficient to form a belief about

the truth of the allegations in the remaining sentences of this paragraph.

18.     Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

ANSWER TO ¶ 18:  Cathay states that the allegations of this paragraph are legal

contentions to which no answer is required but does not contest them.

19.     Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

ANSWER TO ¶ 19:  Cathay states that the allegations of this paragraph are legal

contentions to which no answer is required but does not contest them.

20.     The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

ANSWER TO ¶ 20:  Cathay states that the allegations of this paragraph are legal

contentions to which no answer is required; that there are no claims that the Trustee may

bring and no transfers received by Cathay that the Trustee may avoid or recover; and

otherwise denies the allegations of this paragraph.

## V.     THE DEFENDANTS

21.     Non-party Cathay Holding is the parent company to insurance, securities, banking, and other diversified financial institutions, including both Cathay Insurance and Cathay Bank. Cathay Holdings maintains a place of business 296 Ren-Ai Road, Sec.4, Taipei, 10639 Taiwan.

ANSWER TO ¶ 21:  Cathay admits it is a subsidiary of Cathay Financial Holdings and

maintains a place of business at the addressed listed in the first sentence; Cathay is without

sufficient information to admit or deny the remaining allegations.

22.    Defendant Cathay Insurance provides group and individual insurance products. Defendant Cathay Insurance is organized and exists under the laws of Taiwan and maintains a place of business at 296 Ren-Ai Road, Sec.4, Taipei, 10639 Taiwan.

ANSWER TO ¶ 22:  Cathay admits the allegations in Paragraph 22.

23.    Defendant Cathay Bank is a full-service bank that provides wealth management, consumer and corporate financing, and investments services. Defendant Cathay Bank is organized and exists under the laws of Taiwan and maintains a place of business at 7 Song Jen Road, Taipei, Taiwan.

ANSWER TO ¶ 23:  On August 8, 2012, the Trustee filed a Notice of Voluntary Dismissal

Without Prejudice of Cathay United Bank Ltd., such that Cathay is the sole remaining

defendant in this proceeding. ECF No. 33. Cathay is without sufficient information to admit

or deny the allegations set forth in this paragraph.

## VI.    THE PONZI SCHEME

24.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

ANSWER TO ¶ 24:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph, except Cathay admits that BLMIS was

at one time registered with the United States Securities and Exchange Commission as a

broker-dealer.

67693994;4

25.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

ANSWER TO ¶ 25:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

26.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

ANSWER TO ¶ 26:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

27.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

ANSWER TO ¶ 27:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

28.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

ANSWER TO ¶ 28:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

29.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

ANSWER TO ¶ 29:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

30.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

ANSWER TO ¶ 30:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

31.     It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

ANSWER TO ¶ 31:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

32.     Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

ANSWER TO ¶ 32:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

33. Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

ANSWER TO ¶ 33: Cathay lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

34. Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

ANSWER TO ¶ 34: Cathay lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

## VII. THE TRANSFERS

35. The Cathay Defendants received subsequent transfers from Fairfield Sentry, which maintained customer accounts with BLMIS.

ANSWER TO ¶ 35: Cathay lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

### A. Initial Transfers From BLMIS To Fairfield Sentry

36. The Trustee has filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09-01239, in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

ANSWER TO ¶ 36:  Cathay admits the first sentence of this paragraph. Cathay

acknowledges that the Trustee purports to incorporate the Fairfield Amended Complaint

into this Complaint by reference and states that such incorporation is impermissible under

the Federal Rules of Civil Procedure and prejudicial to Cathay's rights. To the extent such

incorporation is permitted, Cathay denies all allegations in the Fairfield Amended

Complaint

37.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield
Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield
Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning
of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 544, 550, and 551 of the
Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly
SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 37:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of allegations of the first sentence of this paragraph; states that the second

sentence is a legal contention to which no answer is required and, if an answer is required,

denies it; and denies that the Trustee may avoid or recover any transfer made to Cathay.

38.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion
which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the
"Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers
were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable,
and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable
provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 38:  Cathay lacks knowledge or information sufficient to form a belief

about the truth of allegations of the first sentence of this paragraph; states that the second

sentence is a legal contention to which no answer is required and, if an answer is required,

denies it; and denies that the Trustee may avoid or recover any transfer made to Cathay.

67693994;4

39.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

ANSWER TO ¶ 39:  Cathay lacks knowledge or information sufficient to form a belief about the truth of allegations of the first sentence of this paragraph; states that the second sentence is a legal contention to which no answer is required and, if an answer is required, denies it; and denies that the Trustee may avoid or recover any transfer made to Cathay.

40.    The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are included as Exhibits B and C.

ANSWER TO ¶ 40:  Cathay admits that the Trustee adopts the terminology in the first sentence of this paragraph and states that it lacks knowledge or information sufficient to form a belief about the truth of allegations about what Exhibits B and C show or purport to show.

41.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

ANSWER TO ¶ 41:  Cathay admits the allegations of this paragraph but also states that they are an incomplete description of the referenced orders, Settlement Agreement, and consent judgment.

**B.    Subsequent Transfers From Fairfield Sentry To Defendant Cathay Insurance**

42.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Cathay Insurance and is recoverable pursuant to section 550 of the Bankruptcy Code. Based on the Trustee's investigation to date, approximately $24,496,799 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Cathay Insurance (the "Fairfield Sentry-Cathay Insurance Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Cathay Insurance Subsequent Transfers is attached as Exhibit D.

ANSWER TO ¶ 42:  Cathay admits that from time to time, it received payments for redemptions of Fairfield Sentry shares totaling approximately $24,496,799. Cathay denies that any part of the amount received is recoverable from Cathay by the Trustee pursuant to Section 550 of the Bankruptcy Code or otherwise; states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; and, as to allegations that are contentions of law, states that no answer is required and, if an answer is required, it denies them.

43.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry-Cathay Insurance Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

ANSWER TO ¶ 43:  Cathay acknowledges that the Trustee says his investigation is ongoing and that he reserves certain rights but denies that the Trustee has any rights to reserve for purposes of seeking recovery of any transfers from Cathay.

**C.    Subsequent Transfers From Fairfield Sentry To Defendant Cathay Bank**

44.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Cathay Bank and is recoverable pursuant to section 550 of the Bankruptcy Code. Based on the Trustee's investigation to date, approximately $17,206,126 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Cathay Bank (the "Fairfield Sentry-Cathay Bank Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Cathay Bank Subsequent Transfers is attached as Exhibit E.

ANSWER TO ¶ 44:  Cathay Bank is no longer a party to this action, as set forth herein. To the extent required, Cathay denies the allegations set forth in Paragraph 44.

45.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry-Cathay Bank Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

ANSWER TO ¶ 45:  Cathay Bank is no longer a party to this action, as set forth herein. To

the extent required, Cathay denies the allegations set forth in Paragraph 44.

46.    The Fairfield Sentry-Cathay Insurance Subsequent Transfers and the Fairfield Sentry-Cathay Bank Subsequent Transfers collectively defined as the "Fairfield Sentry Subsequent Transfers."

ANSWER TO ¶ 46:  Cathay admits the Trustee purports to define the transfers in this

manner. Cathay Bank is no longer a party to this action, so Cathay denies this term has

continuing applicability.

## COUNT ONE
## RECOVERY OF SUBSEQUENT TRANSFERS –
## 11 U.S.C. §§ 550 AND 551

47.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

ANSWER TO ¶ 47:   Cathay incorporates by reference its answers to the previous

paragraphs of the Complaint as if fully rewritten herein.

48.    Defendant Cathay Insurance received the Fairfield Sentry-Cathay Insurance Subsequent Transfers, totaling approximately $24,496,799, and Defendant Cathay Bank received the Fairfield Sentry-Cathay Bank Subsequent Transfers, totaling approximately $17,206,126.  The Fairfield Sentry Subsequent Transfers, totaling approximately $41,702,925, are recoverable pursuant to section 550(a) of the Bankruptcy Code.

ANSWER TO ¶ 48:  Cathay admits that, it received payments for redemptions of Fairfield

Sentry shares totaling approximately $24,496,799. Cathay denies that any part of the

amount received is recoverable from Cathay by the Trustee pursuant to Section 550(a) of

the Bankruptcy Code or otherwise. Cathay denies all allegations regarding Cathay Bank,

which is no longer a party to this action.

67693994;4

49.     Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Cathay Insurance or Defendant Cathay Bank.

ANSWER TO ¶ 49:  Cathay denies that any transfer to it by Fairfield Sentry was made for its benefit directly or indirectly. Cathay denies all allegations regarding Cathay Bank, which is no longer a party to this action.

50.     Defendant Cathay Insurance and Defendant Cathay Bank are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

ANSWER TO ¶ 50:  Cathay denies the allegations in this paragraph. Cathay denies all allegations regarding Cathay Bank, which is no longer a party to this action.

51.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Cathay Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

ANSWER TO ¶ 51:  Cathay denies that the Trustee is entitled to a judgment against Cathay in any amount pursuant to the cited statutes or otherwise. Cathay denies all allegations regarding Cathay Bank, which is no longer a party to this action.

## **CATHAY'S ANSWER TO THE TRUSTEE'S PRAYER FOR RELIEF**

The Trustee is not entitled to any relief from Cathay.

## **CATHAY'S DEFENSES TO THE TRUSTEE'S CLAIM AGAINST CATHAY**

Cathay, without accepting the burden of proof on any issue or element that is the Trustee's burden, states the following defenses to the Trustee's claim. Cathay incorporates herein by reference the contents of its memorandum and reply memorandum and the declaration filed in support of Cathay's motion to dismiss the Complaint in this action as if fully rewritten herein.

67693994;4

**FIRST**
**(Cathay Acted in Good Faith)**

1.      The Trustee may not recover from Cathay because Cathay took all the transfers in good faith and without knowledge of the alleged voidability of the transfers within the meaning of Bankruptcy Code § 550(b).

2.      At the times when Cathay received transfers from Fairfield Sentry, Cathay had no knowledge of fraud by Madoff, BLMIS, Fairfield Sentry, or any of their respective affiliates, officers, directors, employees, agents, or other personnel, and did not know or suspect that Madoff and BLMIS were not making securities trades or were engaged in a fraud.

3.      Cathay did not know facts at the times when it purchased or redeemed Fairfield Sentry shares that would have led a reasonable person to inquire into whether there was fraud behind the transfers.

4.      Even if Cathay had been on inquiry notice of possible fraud, it would not have discovered or obtained knowledge of fraud by investigation.

5.      This is evidenced by the fact that, upon information and belief, many substantial investors in Fairfield Sentry shares and other financial companies that provided funds that were used in connection with investments in Fairfield Sentry shares did conduct diligent investigations and did not obtain knowledge of the fraud. Moreover, in investing, Cathay, reasonably relied on Fairfield's investigations.

6.      Similarly, significant independent public auditing companies with substantial incentive to inquire into the financial position of Fairfield Sentry and other so-called "Madoff feeder funds" did not, upon information and belief, discover or obtain knowledge of fraud and certified Fairfield Sentry's and other "feeder funds'" financial statements as fairly presenting their respective financial positions.

18

7.       In addition, one or more government entities, at least one after reportedly receiving detailed third-party analyses of BLMIS' activities on two occasions and after conducting regulatory inquiries into BLMIS and Madoff, and did not, upon information and belief, discover or obtain knowledge of fraud.

## SECOND
**(Transfers to Cathay Were Not "Customer Property")**

8.       All or some of the transfers received by Cathay from Fairfield Sentry, upon information and belief, did not consist in whole or part of "Customer Property" and, accordingly, may not be avoided and recovered by the Trustee from Cathay.

9.       The information contained in the Exhibits to the Complaint show that some or all the transfers by Fairfield Sentry to Cathay did not originate with BLMIS, must have originated from other sources, and are not "Customer Property."

10.       Those other sources include, upon information and belief, proceeds that Fairfield Sentry received from selling shares to new investors and used to make payments for redemptions of shares by other Fairfield Sentry shareholders without the proceeds ever having been remitted to BLMIS. Those funds paid to redeeming Fairfield Sentry shareholders are not "Customer Property."

## THIRD
**(Transfers to Cathay Are Protected by the Safe Harbor)**

11.       The transfers received by Cathay are protected from avoidance and recovery by the safe harbor provided by Bankruptcy Code § 546(e).

12.       BLMIS, Fairfield Sentry, and Cathay were at all relevant times covered entities under that statute, being stockbrokers, financial institutions, financial participants, and/or otherwise covered entities.

67693994;4

13.     All the transfers received by Cathay were received in connection with or relation to a securities agreement between BLMIS and Fairfield and/or between Fairfield and Cathay.

14.     None of the transfers was made with intent to hinder, delay, or defraud BLMIS' or Fairfield Sentry's creditors. The so-called "Ponzi scheme presumption" does not meet the "intent to hinder delay or defraud" element because it is based on faulty legal and factual reasoning and has not been adopted by the Second Circuit Court of Appeals or the Supreme Court.

15.     At the times when Cathay received transfers from Fairfield Sentry, Cathay had no knowledge of fraud committed by Madoff, BLMIS, Fairfield Sentry, or any of their respective affiliates, officers, directors, employees, agents, or other personnel, and it did not know or suspect that Madoff and BLMIS were not making securities trades or were engaged in a fraud.

## FOURTH
### (State Claims Under NY Debtor & Creditor Law Barred)

16.     The Trustee's claim under Bankruptcy Code § 544 that relies on the New York Debtor & Creditor Law is barred because the transfers to Cathay were taken for fair consideration and without knowledge of the fraud, and without actual fraudulent intent and for fair consideration, within the meaning of § 278(1) and (2), respectively.

## FIFTH
### (*In Pari Delicto*—Unclean Hands)

17.     The Trustee stands in the shoes of BLMIS, which committed the alleged frauds that resulted in the alleged losses the Trustee seeks to recover from Cathay. The Trustee is barred from recovering such losses from Cathay because BLMIS' acts and omissions are attributed to the Trustee by the doctrines of *in pari delicto* and unclean hands.

67693994;4

**SIXTH**
**(Predicate Initial Transfer Not Avoided)**

18.     The Trustee may not recover transfers from Cathay until and unless transfers

between BLMIS and Fairfield have been avoided, which has not occurred, nor are these

transfers avoidable.

**SEVENTH**
**(Single Satisfaction)**

19.     If and to the extent the Trustee recovers from another mediate or immediate

transferee the amount of any avoided initial transfer that includes customer property the

Trustee alleges Cathay received, the Trustee is barred from recovering that amount from

Cathay by virtue of Bankruptcy Code § 550(d).

**EIGHTH**
**(Recovery from Liquidators)**

20.     If and to the extent the Trustee recovers from the Liquidators of Fairfield

Sentry all or any portion of the amount it seeks from Cathay pursuant to the sharing provisions

of the settlement agreement into which the Trustee and Liquidators entered and the Court

approved in 2011, or otherwise, the Trustee may not recover the same amount from Cathay

because it would constitute an impermissible double recovery for a single loss.

**NINTH**
**(Reservation of Possible Claim)**

21.     Cathay reserves its rights of claim and recovery under Bankruptcy Code §

502(h) if and to the extent the Trustee were to recover from Cathay.

**TENTH**
**(Trustee Not Entitled to Interest)**

22.     If the Trustee were to recover from Cathay, the Trustee is not entitled to

prejudgment interest on the award.

67693994;4

**ELEVENTH**
**(Lack of Personal Jurisdiction)**

23.     This Court lacks personal jurisdiction over Cathay because Cathay did not purposefully avail itself of the privilege of conducting activities within the forum State and thus did not invoke the benefits and protections of its laws.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Cathay hereby demands a jury trial on all claims and issues that may be tried by a jury.

## CATHAY'S RULE 7012(b) STATEMENT

Cathay objects to the entry of a final order or Judgment against Cathay by the Bankruptcy Court.

## CONCLUSION

**WHEREFORE**, The Defendant requests that this Court dismiss the Complaint with prejudice, award the Answering Defendant its costs incurred in connection with this action, and grant such other and further relief as the Court deems just and proper.

Dated: Dallas, Texas

67693994;4

January 9, 2023

Respectfully submitted,

AKERMAN LLP

By: */s/ David W. Parham*
          David W. Parham (admitted pro hac vice)
          Bryce Benson (admitted pro hac vice)
          2001 Ross Avenue, Suite 3600
          Dallas, TX 75201
          Telephone: (214) 720-4300
          Facsimile:(214) 981-9339
          E-mail: david.parham@akerman.com
          E-mail: bryce.benson@akerman.com

*Counsel for Defendant Cathay Life Insurance Co.,
Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2023, a true and correct PDF copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

*/s/David R. Parham*
David R. Parham