**WUERSCH & GERING LLP**
Gregory F. Hauser
Jascha D. Preuss
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
gregory.hauser@wg-law.com
jascha.preuss@wg-law.com
*Counsel for Defendant LGT Bank in Liechtenstein Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789 (CGM)** |
| *Plaintiff-Applicant*, | **SIPA Liquidation** |
| -v- | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **(Substantively Consolidated)** |
| *Defendant.* | |
| In re: | |
| BERNARD L. MADOFF, | |
| *Debtor.* | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities and the Chapter 7 Estate of Bernard L. Madoff, | **Adv. Pro. No. 11-02929 (CGM)** |
| *Plaintiff*, | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |
| -v- | |
| LGT BANK IN LIECHTENSTEIN LTD., | |
| *Defendant*. | |

## TABLE OF CONTENTS

REPLY PRELIMINARY STATEMENT ...................................................................................... 1

REPLY ARGUMENT ................................................................................................................. 3

I.    This Court Lacks Jurisdiction Over LGT Liechtenstein as the Trustee Has Failed to
      Establish that LGT Liechtenstein Has Sufficient Contacts With New York ...................... 3

II.   The Complaint Fails to Satisfactorily Plead the Avoidability of the Initial Transfers, and
      the Trustee Cannot Cure Its Fatal Pleading Defects Through Wholesale Incorporation by
      Reference of a Superseded Complaint .............................................................................. 10

III.  The Good Faith Defense Provides for Dismissal of This Action, As the Applicability of
      the Defense is Apparent on the Face of the Complaint ..................................................... 12

IV.    LGT Liechtenstein Reserves Its § 546(e) Safe Harbor Defenses .................................. 16

CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ayyash v. Bank Al-Madina*,
No. 04-cv-920, 2006 WL 587342 (S.D.N.Y. March 9, 2006) .................................................. 10

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) ................................................................................................................... 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ........................................................................................................ 5

*Comm. Of Unsecured Creditor of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) .................................................................................................... 9

*Cooper v. Parsky*,
1997 WL 242534 (S.D.N.Y. Jan. 8, 1997) ............................................................................. 4-5

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*,
No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ............................... 10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) .............................................................................................................. 6

*Gilmore v. Rivera*,
2014 WL 1998227 (S.D.N.Y. May 14, 2014) ................................................................... 13, 16

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016) ..................................................................................... 13

*Hau Yin To v. HSBC Holdings, PLC*,
2017 WL 816136. (S.D.N.Y. Mar. 1, 2017) .............................................................................. 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................................................................... 4

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016) ....................................................................................... 9

*Hillel v. Obvio Health USA, Inc.*,
No. 20-CV-4647 (LAP), 2021 WL 229967 (S.D.N.Y. Jan. 21, 2021) ...................................... 7

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
331 F. Supp. 3d 130 (S.D.N.Y. 2018) ..................................................................................... 10

*In re 680 Fifth Ave. Assocs.*,
209 B.R. 314 (Bankr. S.D.N.Y. 1997) ........................................................................................ 11

*In re Amaranth Natural Gas Commodities Litigation*,
587 F. Supp. 2d ............................................................................................................................ 4

*In re Bernard L. Madoff Inv. Sec., LLC*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................................................................... 13, 15

*In re Dreier LLP*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................................... 14, 15

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................................... 9

*In re Geiger*,
446 B.R. 670 (Bankr. E.D. Pa. 2010)........................................................................................ 12

*Int'l Controls Corp. v. Vesco*,
556 F.2d 665 (2d Cir. 1977)....................................................................................................... 11

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 08-01789 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ............................. 7

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 08-01789 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022).......................... 15

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 08-01789 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .......................... 7

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. AP*,
08-01789 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ................................ 13

*Lehigh Val. Indus., Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975).......................................................................................................... 8

*Licci v. Lebanese Canadian Bank*,
(732 F.3d 161 (2d Cir. 2013)....................................................................................................... 9

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .......................................................................... 11

*Ocean Units LLC v. Illinois Union Ins. Co.*,
528 F. Supp. 3d 99 (E.D.N.Y. 2021)......................................................................................... 10

*Picard v. ABN Ireland*,
2022 WL 1304589 (S.D.N.Y. May 2, 2022).............................................................................. 14

*Picard v. Banque SYZ & Co.*,
   SA, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ....................................................... 15

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................................................ 5

*Picard v. Fairfield Investment Fund, Ltd.*,
   Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........... 12

*Picard v. Multi-Strategy Fund Ltd.*,
   No. 22-cv-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ............................................. 16

*Picard v. Multi-Strategy*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................................................................................ 12

*Sira v. Morton*,
   380 F.3d 57 (2d Cir.2004) ......................................................................................................... 12

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) ....................................................................................................... 7

*Steinberg v. A, Analyst Ltd.*,
   2009 WL 838989 (S.D. Fla., Mar. 26, 2009) .............................................................................. 4

*Suber v. VVP Servs., LLC*,
   2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ............................................................................ 4

*Tymoshenko v. Firtash*,
   2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ........................................................................ 4-5

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................................................... 11

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................................... 6

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (U.S.Okla. Jan. 21, 1980) ..................................................................................... 6

## <u>Statutes</u>

11 U.S.C. § 546(e) ............................................................................................................................ 16

11 U.S.C. § 550 .................................................................................................................................. 2

11 U.S.C. § 550(a) ............................................................................................................................. 2

11 U.S.C. § 550(b) ...................................................................................................................... 12, 14

15 U.S.C. § 78fff.............................................................................................................................. 2

## Rules

Fed. R. Civ. P. 8(a) ................................................................................................................. 2, 12

Fed. R. Civ. P. 9(b) .................................................................................................................... 12

Fed. R. Civ. P. 10(c) .............................................................................................................. 2, 12

Fed. R. Civ. P. 12(b)(2)................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 1, 15

This Reply Memorandum of Law is respectfully submitted on behalf of Defendant LGT Bank in Liechtenstein LTD ("LGT Liechtenstein") by counsel, in further support of its Motion to Dismiss the Complaint (the "Complaint" or "Compl.") of Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "FRCP").

For the foregoing reasons and those set forth in LGT Liechtenstein's initial moving submission, the Complaint should be dismissed in its entirety and with prejudice.[1]

### Reply Preliminary Statement

The Trustee's Opposition ("Opp.") is comprised of references to inapposite and unpersuasive case law and, at bottom, only reiterates the conclusory and flawed allegations in the Complaint. Ultimately, the Complaint fails to state a cognizable claim for several reasons:

*First,* as against LGT Liechtenstein, the Trustee fails to allege sufficient facts to demonstrate that LGT Liechtenstein "purposefully availed" itself of the laws of the forum state. In fact, the peripheral contacts alleged in the Complaint do not establish that LGT Liechtenstein availed itself of the laws of New York, as it has been established previously that neither the forum selection clause in the subscription agreements, nor mere telecommunications with individuals in New York nor the use of a New York bank account are sufficient to establish jurisdiction. Seemingly recognizing this damning reality, the Trustee doubles-down on his attempt to impart the contacts of a foreign third-party to establish jurisdiction over LGT Liechtenstein. Here too, however, the Trustee's argument fails as a matter of law, as there is no plausible legal theory upon

---

[1]    All defined terms herein shall be ascribed the same meaning as in LGT Liechtenstein's initial moving submission (hereafter referred to as the "Moving Br.") [Dkt. 100].

1

which this Court may find jurisdiction exists over LGT Liechtenstein based on a foreign third-party's contacts.

*Second,* the Trustee's Opp. does little to explain the failure to meet the pleading standards set forth in Rules 8(a) and 9(b). While the Trustee acknowledges that a pleading must contain a "short and plain statement" of relief, and that allegations of fraud require compliance with a heightened pleading standard, he nevertheless insists that the Complaint, as pled, meets the requisite standards. As set forth in greater detail below, however, that is simply not the case, as the Trustee asks this Court for numerous leniencies to which is not entitled, such as: (i) permitting the improper wholesale incorporation of the Fairfield Amended Complaint, without specifying the relevant excerpts; (ii) accepting the incorporation of a pleading that has been superseded and thus rendered moot, and; (iii) taking judicial notice of a pleading that was not referenced in the original Complaint (*i.e.* the Fairfield Second Amended Complaint), without explaining why judicial notice is warranted or how the allegations contained therein can be squared with those in the Fairfield Amended Complaint. The Trustee has had over a decade to cure these pleadings defects, yet deliberately chose not to do so – instead, improperly placing the burden of sifting through all of its referenced allegations on both this Court and LGT Liechtenstein.

*Third,* rather than explain how the allegations in the Complaint are sufficient to establish that the subsequent transfers were of customer property, the Trustee argues instead that it need not do so under the requisite pleading standard. Yet, as set forth in the Moving Br. and further explained below, the Trustee's conclusory allegations listing the transfers from BLMIS to the Fairfield Funds, without any explanation as to the relevance of those transfers, is wholly insufficient to state a claim under 11 U.S.C. § 550. Without such necessary facts, the Trustee fails to state a claim under § 550(a) or § 78fff.

*Lastly,* the Complaint must be dismissed as LGT Liechtenstein is protected by the good-faith defense. The Trustee does not contest that an affirmative defense, such as the good-faith defense, may provide the basis for dismissal where the facts establishing such a defense are apparent on the face of the pleading. Here, there are no supportable allegations (nor could there be) that LGT Liechtenstein had knowledge of Madoff's scheme. Simply put, the Trustee may not conjure issues of fact to escape dismissal at the motion to dismiss stage where no such issues exist.

In light of the foregoing, the Complaint should be dismissed in its entirety and with prejudice.

## Reply Argument

### I.    This Court Lacks Jurisdiction Over LGT Liechtenstein as the Trustee Has Failed to Establish that LGT Liechtenstein Has Sufficient Contacts With New York.

In opposing LGT Liechtenstein's motion to dismiss for lack of personal jurisdiction, the Trustee contends that specific personal jurisdiction exists over LGT Liechtenstein because its investments in, and communications with, the Fairfield Funds constitute "purposeful availment" of the laws and privileges of doing business in New York.[2] *See* Opp., pp. 8-19. In support of this theory, the Trustee asserts that jurisdiction here is warranted because LGT Liechtenstein maintained the following contacts with the forum state: "(i) invested in the Fairfield Funds with the knowledge and intention that its money would be invested, managed, and custodied by BLMIS in New York; (ii) knew BLMIS was a registered securities broker-dealer in New York; (iii) met and communicated with FGG personnel in New York regarding its investments with New York based-BLMIS through Sentry; (iv) agreed to New York jurisdiction, forum selection, service of

---

[2]    The Trustee does not contest the argument that this Court lacks general jurisdiction over LGT Liechtenstein. Accordingly, that point has been conceded. *See* Moving Br., pp. 9-10; *see* Opp., *generally.*

process, and choice of law provisions related to its Fairfield-Fund investments; and (v) used the New York banking system to transact with the Fairfield Funds." *Id*., pp. 8-9. The foregoing allegations, however, are wholly insufficient to establish personal jurisdiction over LGT Liechtenstein for numerous, equally fatal, reasons.

*First*, the allegation that LGT Liechtenstein knew the funds it invested with the Fairfield Funds were being directed to New York, as pled, is plainly inadequate to establish personal jurisdiction over LGT Liechtenstein because it concerns the Fairfield Funds' contacts in the forum state with BLMIS, not LGT Liechtenstein's. The contacts of a third party cannot be attributed to a defendant as the basis to establish jurisdiction, as it is well settled that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum . . . to justify an assertion of jurisdiction." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). In fact, this Court, and others similarly situated, have held that the investment of funds in New York is not a sufficient basis to establish jurisdiction. *See Steinberg v. A, Analyst Ltd.,2009 WL 838989 (S.D. Fla., Mar. 26, 2009)*, at \*5 (finding lack of personal jurisdiction where the investor's sole contact with New York was to route money via wire transfer through New York bank); *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d at 536-37 (finding lack of personal jurisdiction where company's sole contact with the forum was investment in foreign hedge fund managed by members in the forum state); *Suber v. VVP Servs., LLC,* 2021 WL 4429237, at \*9 (S.D.N.Y. Sept. 27, 2021). Furthermore, a court may only attribute the jurisdictional contacts of an entity to its shareholder(s) under an alter ego or agency theory. *See Tymoshenko v. Firtash*, 2013 WL 1234943, at \*4 (S.D.N.Y. Mar. 27, 2013)*; Cooper v. Parsky*, 1997 WL 242534, at \*14 (S.D.N.Y.

4

Jan. 8, 1997) (internal citation omitted) ("Even a controlling shareholder will not be subject to personal jurisdiction unless the record justifies piercing the corporate veil").

Here, the Complaint does not plead facts sufficient to find jurisdiction under an alter ego theory, as there are no facts to support a piercing of the corporate veil, a necessary component of such a theory. *See Cooper*, 1997 WL 242534, at *14 (mere status as "a New York corporation's shareholder[]… does not justify piercing the corporate veil"). Nor are there any allegations suggesting facts that LGT Liechtenstein had any control at all over the investment activities of the Fairfield Funds or BLMIS, a necessary element of an agency theory. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring the alleged agent in New York to have acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal"). In fact, the allegations in the Complaint are clear that LGT Liechtenstein, as a mere shareholder, did not control or direct the Fairfield Funds' actions, nor could it. LGT Liechtenstein's knowledge, therefore, is irrelevant as the Fairfield Funds actively directed the investments to New York, not LGT Liechtenstein. The Trustee's argument that LGT Liechtenstein bought shares in the Fairfield Funds knowing that the Fairfield Funds were investing in the New York-based BLMIS and, therefore, purposefully availed itself of the laws and the privilege of doing business in the forum state fails as a matter of law as the Trustee does not, and cannot, establish that the investment of funds with a foreign third-party who directs those funds into New York results in the original investor's "purposeful availment" of the privileges of doing business in New York.

In an attempt to give some credence to an otherwise hollow argument, the Trustee relies on *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") for the proposition that a subsequent transferee's investment in the Fairfield Funds is

5

sufficient to establish personal jurisdiction. *See* Opp., pp. 10-13. Yet, the Trustee vastly overstates the relevance and effect of *BLI* on this case, as the issues currently before this court were not directly briefed or decided in *BLI,* meaning *BLI* is not controlling law here. *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (decision not precedent for issues not 'squarely addressed'). Furthermore, *BLI* has been superseded by the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), which clearly holds that mere knowledge or intent of a consequence in a forum state cannot, by itself, give rise to personal jurisdiction. Consistent with *Walden*, exerting personal jurisdiction over LGT Liechtenstein simply because of where Fairfield Sentry funds were ultimately invested would incorrectly shift the personal jurisdiction focus away from the place of defendant's "primary conduct" to wherever the effects of that conduct could conceivably be felt. *See id*. at 284 (rejecting "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Such a shift would undermine a defendant's ability to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297. If the Trustee's theory of jurisdiction based upon its improper application of *BLI* were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction. The Supreme Court has squarely rejected this idea, and there is no other precedent in support of the Trustee's argument.

*Second,* the Trustee's allegation that LGT Liechtenstein's communications with FGG personnel in New York with respect to their investments is sufficient to establish jurisdiction is similarly unavailing, as it is little more than an acknowledgement that LGT Liechtenstein does not have physical presence within the forum state. Instead, the Trustee insists that the email

6

communications of an LGT Liechtenstein employee with the personnel of FGG's subagent are sufficient contacts to establish jurisdiction. It is well-settled, however, that a "handful of communications…are insufficient to allow the exercise of specific personal jurisdiction" over a foreign defendant. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018); *see also* Moving Br., pp. 14-16 (collecting cases). Notably, the Trustee does not cite to any case that would support its position. By contrast, this Court has recently held that jurisdiction existed where the defendant maintained significantly more contacts with the forum state than alleged here. *See, e.g., Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 3094092, at *3 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*") (wherein the Trustee alleged that the defendant maintained more than 95% of its fund in New York and conducted *regular* in-person meetings in New York with both FGG management and Madoff himself); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 3273044, at *4 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz")* (wherein the Court found minimum contacts existed to establish jurisdiction only after submission of additional evidence that the defendant "traveled to New York City to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers in question here.").

Here, there are no such allegations, and the Trustee has failed to demonstrate how any of LGT Liechtenstein's peripheral contacts with New York are sufficient to establish jurisdiction. *See Hillel v. Obvio Health USA, Inc.*, No. 20-CV-4647 (LAP), 2021 WL 229967, at *8 (S.D.N.Y. Jan. 21, 2021) (holding to establish personal jurisdiction, a plaintiff must allege "something more" than mere e-mail, phone calls, and online video communications with persons in the forum state).

*Third,* contrary to the Trustee's assertion, nothing in the LGT marketing or FGG-internal documents submitted establishes that LGT Liechtenstein invested in the Fairfield Funds with

knowledge about the role of BLMIS, including knowledge allegedly acquired for it by any other LGT group company.  The Trustee alleges, in conclusory fashion, that LGT Liechtenstein, used its sister company LGT Capital Partners, to vet investments in the Fairfield Funds with the "intent to invest in BLMIS in New York," and that such investment was made "despite serious concerns about Madoff and the proprietary of its investments." *See* Opp., pp. 14-15.  Yet, the documents upon which the Trustee relies do not, in fact, show that LGT Liechtenstein engaged LGT Capital Partners for any such vetting or was aware that the Fairfield Funds were "almost solely invested in BLMIS" at the time of its investment.  Instead, they are unspecific marketing materials of LGT Liechtenstein (Hunt Decl. Exh. 8) or equally unspecific hearsay statements in internal FGG correspondences (Hunt Decl. Exh. 7, 9), none of which contains anything specific to support a due diligence role of LGT Capital Partners (or any group company) for LGT Liechtenstein regarding Fairfield or BLMIS.  For that reason, the additional hearsay statements about Madoff attributed to an LGT Capital Partners employee, Stefan Muehlemann (Hunt Decl. Exh. 11), cannot be attributed to LGT Liechtenstein.[3]  In sum, none of the documents provides any basis to support the allegation that LGT Liechtenstein had knowledge of Fairfield's investment strategy and the role of BLMIS.  *See Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975) (allegations of specific facts required to establish personal jurisdiction).

*Fourth,* the use of a New York correspondent bank account is similarly insufficient to establish jurisdiction.  In support of its argument, the Trustee alleges that a handful of redemption

---

[3]     According to the document itself, LGT Capital Partners, based in Pfaeffikon, Switzerland, and allegedly Muehlemann's employer at the time, was believed by FGG to be a fund management company, which explains its interest in Madoff and Fairfield for its own purposes but says nothing about any other role, including for LGT Liechtenstein.  *See* Hunt Decl. Exh. 11 ("I believe that LGT Capital Partners manages three separate funds of funds with combined AUM of about $3.0 bn.").

payments and requests for wire transfers from LGT Liechtenstein were made through Citco's New

York HSBC account (and through USB AG's Connecticut account).  *See* Opp., pp. 16-18.

Contrary to the Trustee's assertion, however, the mere use of a bank account by a foreign entity

under a foreign contract does not confer jurisdiction. *See Hau Yin To v. HSBC Holdings, PLC*, 2017

WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (holding the court

lacked personal jurisdiction over foreign defendants based solely on the transmission of information

and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract");

*see also Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission

of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign

contract...insufficient to 'project' the Foreign Defendants into New York" and not amounting "to

'purposeful availment' of the laws of [the forum]").[4]

Fifth, the Trustee's reliance on the subscription agreements to establish jurisdiction, is no

more availing.  As previously set forth in the Moving Br., in *Fairfield I* this Court considered –

and rejected – the very argument made by the Trustee here. *In re Fairfield Sentry Ltd.*, 2018 WL

3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").  Specifically, in *Fairfield I*,

the Court held that the forum selection clause in the Fairfield subscription agreements did not apply

to recover a redemption payment from Fairfield Sentry on the basis that such a suit is not one "with

respect to" the subscription agreements, but rather related to Fairfield Sentry's Articles of

Association.  Notably, the Trustee does not address the Court's holding in *Fairfield I* in his Opp.

---

[4]    The Trustee's reliance on *Off. Comm. Of Unsecured Creditor of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016) and *Licci v. Lebanese Canadian Bank*, (732 F.3d 161 (2d Cir. 2013) is easily distinguishable because both of those cases involve banks that used accounts located in New York in furtherance of illegal activity. *See* Opp., pp. 17, 20. Here, there is no allegation that LGT Liechtenstein had knowledge of any illegal activity at the time of the subsequent transfers or that the use of the accounts was conducted in furtherance of any illegal activity.

The reason for this is simple – *Fairfield I* plainly forecloses the Trustee from relying on the Subscription Agreements a basis for jurisdiction.

    *Lastly,* the Trustee's request for jurisdictional discovery to cure its defective pleadings should not be granted, as the Trustee has had ample time and access to relevant records; yet has failed to do so. This case has been going on for more than a decade, during which the Trustee has had full access to Madoff's records, the discovery produced from the Fairfield Funds, as well as from many other parties. As is evident from the exhibits attached to the Hunt Declaration, the Trustee is already in possession of all of the records needed to assert its claim for jurisdiction.[5] Permitting the Trustee to engage in jurisdictional discovery will only further delay this decade-old proceeding and is highly unlikely to produce any further relevant information.

## II.   The Complaint Fails to Satisfactorily Plead the Avoidability of the Initial Transfers, and the Trustee Cannot Cure Its Fatal Pleading Defects Through Wholesale Incorporation by Reference of a Superseded Complaint.

    The Trustee does not dispute that the allegations set forth in the Complaint, standing alone, are insufficient to state a claim for fraud under the heightened pleading standard imposed by Rule 9(b). Instead, the Trustee insists the Court must accept and incorporate the full 217-page complaint (the "Fairfield Amended Complaint") filed in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 as if plead herein. *See* Opp., pp. 22-26. Yet, even if permitted, the Trustee's wholesale

---

[5]    In contrast with the Court's holding in *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*, No. 21-CV-10316 (LAP), 2022 WL 3910679, at \*1 (S.D.N.Y. Aug. 31, 2022), wherein the Court granted jurisdictional discovery because it found the defendants likely possessed additional facts to establish jurisdiction, here, there is no allegation that LGT Liechtenstein is in possession of any additional facts that could give rise to personal jurisdiction. *See also Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,* 331 F. Supp. 3d 130, 147 (S.D.N.Y. 2018) (distinguishing *Kiobel*, and denying request for jurisdictional discovery because, in part, the party requesting discovery failed to explain "how discovery would permit it to support any such theory."); *see also Ocean Units LLC v. Illinois Union Ins. Co.*, 528 F. Supp. 3d 99, 103 (E.D.N.Y. 2021) (challenging *Ayyash* v. *Bank Al-Madina*, No. 04-cv-920, 2006 WL 587342 (S.D.N.Y. March 9, 2006)*,* in holding that jurisdictional discovery should be limited, as "discovery is not a substitute for a guess, or a hope, or the absence of knowledge…").

incorporation of the Fairfield Amended Complaint is of no consequence, as that pleading has been superseded by a second amended pleading and thus, rendered moot. Furthermore, even if incorporation were permitted here to fill in the glaring holes of the Trustee's Complaint, the manner in which the Trustee seeks to incorporate the Fairfield Amended Complaint is wholly improper and cannot be permitted, as the Trustee makes no true attempt to designate the specific portions of the pleading that he wishes to incorporate, as required by both the Federal Rules and Second Circuit precedent.

As an initial matter, the Trustee does not contest that the Fairfield Amended Complaint – the pleading he seeks to incorporate in the Complaint - has been superseded and thus, rendered moot. *See In re 680 Fifth Ave. Assocs.*, 209 B.R. 314, 323 (Bankr. S.D.N.Y. 1997) citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("an amended complaint, after it has been properly served, supersedes the original and renders it of no legal effect."). The Trustee offers no explanation as to why it has failed to cure this fatal pleading defect, despite the fact that it has had more than a decade to do so. Rather, the Trustee cites a slew of cases for the proposition that incorporation of the Fairfield Amended Complaint is proper because it was filed in a related adversary proceeding (a point that LGT Liechtenstein does not contest) and not a "separate action." *See* Opp., pp. 22-24; *see also* Moving Br., pp. 20-21.

In addition to the foregoing, the Trustee's failure to specify which portions of the Fairfield Amended Complaint it seeks to incorporate creates an undue burden on LGT Liechtenstein and this Court. In *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007), the Court held that "references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation." *See also Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010)

11

("[a]lthough there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.").

The cases cited by the Trustee further support LGT Liechtenstein's position.  For example, in *Multi-Strategy,* incorporation by reference was permitted because the operative pleading specified which excerpts from the other complaint it wished to incorporate.  *See Picard v. Multi-Strategy*, 641 B.R. 78, 91 (Bankr. S.D.N.Y. 2022); *see* Opp., p. 20.  By contrast, here, the Trustee failed to specify which portions of the vast Fairfield Amended Complaint it seeks to incorporate, leaving both the Defendant and this Court to "sift through" to try to determine which allegations are relevant.  *See In re Geiger*, 446 B.R. 670, 679–80 (Bankr. E.D. Pa. 2010) (dismissing complaint for improperly incorporating by reference other pleadings and leaving "the Defendant and the Court—to sift through many pages of attached material trying to figure out which fact goes with which allegation.").  None of the cases upon which the Trustee relies support a finding to the contrary (*i.e.* permitting the wholesale incorporation of a superseded complaint).[6]

### III.    The Good Faith Defense Provides for Dismissal of This Action, As the Applicability of the Defense is Apparent on the Face of the Complaint.

The Trustee does not dispute that the good faith defense, if proven successful, would bar recovery of the subsequent transfers from LGT Liechtenstein.  Instead, the Trustee claims only

---

[6]    To the extent the Trustee relies upon *Fairfield Inv. Fund* for the proposition that the Court should take judicial notice of the Fairfield Amended Complaint, such argument fails because there, the Court did not address whether wholesale incorporation of a superseded pleading comports with Rules 8(a) and/or 10(c).  *See* Opp., p. 2 citing *Picard v. Fairfield Investment Fund, Ltd.* Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021).  In fact, the Court of Appeals has cautioned that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004).  Judicial notice is not a cure-all for a litigant's failure to comply with the pleading requirements set forth in the FRCP.

that the assessment of such a defense is not warranted at this stage of the litigation because it is a "fact-driven" defense, requiring "factual analyses and a presentation of evidence."  Opp., p. 36. Contrary to the Trustee's position, however, this Court has previously held that a litigant can "plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense." *See In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010).   That is precisely the case here.

Where, as here, the affirmative defense of good faith can be ascertained from the face of the pleadings, the complaint must be dismissed.  *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 890 (S.D.N.Y. 2016) ("a complaint is subject to dismissal for failure to state a claim when an affirmative defense clearly appears on the face of the complaint."); *see also Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").  As set forth in the Moving Br., the Trustee's allegations in the Fairfield Second Amended Complaint plainly establish that LGT Liechtenstein was a subsequent transferee who took (i) for value, (ii) in good faith, and (iii) without knowledge of the voidability of the transfer.

Regarding the first element, that the subsequent transferees take "for value," there is no question that the surrender of shares in exchange for cash constitutes an exchange "for value."  *See Quilvest Finance Ltd. v. Fairfield Sentry ltd.*, Case Nos. HCVAP 2011/041-062; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").  In opposing LGT Liechtenstein's motion, the Trustee argues that the determination of whether LGT

13

Liechtenstein took for value is "inappropriate for a motion to dismiss barring highly unusual circumstances." *See* Opp., p. 37. This argument, however, is unavailing, as the Complaint clearly alleges that the Trustee seeks recovery of transfers received by LGT Liechtenstein in exchange for the redemption of their equity interests as shareholders in the Fairfield Funds. Those allegations are sufficient to meet the "for value" requirement of 550(b). Furthermore, the question of whether the redemption of those shares is sufficient to meet the "value" requirement is a legal one that has already been resolved, not a factual one. *See Migani*, [2014] UKPC 9, ¶ 7 (holding an investor's surrender of Sentry shares upon redemption for cash gives good consideration to support the exchange).

Turning to the "good faith" and "without knowledge" elements, the Trustee again argues that those are factual issues which cannot be decided on a motion to dismiss and, further, that that the good-faith defense may only be granted at this stage in certain, limited, exceptions. Here, too, the Trustee's argument is unavailing as the allegations in the Complaint plainly establish that LGT Liechtenstein took in good faith and without knowledge of the underlying fraud.

The cases cited by the Trustee do not support a finding in his favor. For example, in *Picard v. ABN Ireland*, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") the Court simply held that the bankruptcy court's decision should be reversed because it was based on an outdated good-faith standard, and not because the good-faith defense, in general, could not be established on a motion to dismiss.[7] Similarly, the Trustee relies on the opinions in *Banque Syz*,

---

[7] In *In re Dreier LLP,* another case relied upon by the Trustee in similar cases, the court denied the defendant's motion to dismiss pursuant to good faith defense because the complaint there did not "contain allegations establishing good faith as a matter of law." *In re Dreier LLP*, 452 B.R. 391, 427 (Bankr. S.D.N.Y. 2011). By contrast, here, the Trustee's own allegations in the Complaint, on its face, establish LGT Liechtenstein's good faith, as the allegations make clear that LGT Liechtenstein did not and could not have reasonably discovered the fraudulent purpose of the

14

*First Gulf, ABN Ireland,* and *Merkin I* for the proposition that the affirmative defense of good faith could not be established at the motion to dismiss stage of the litigation; however, none of those cases are applicable here, as each such case involved pleadings with far more extensive allegations concerning the likelihood that the defendant had knowledge. *See* Opp., pp. 35-37. By way of specific example, in both *Banque Syz* and *First Gulf,* the Trustee argued that "[the defendant's] expertise in private banking and institutional asset management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore [the defendant] knew or should have known of numerous irregularities concerning investing through BLMIS." *Picard v. Banque SYZ & Co., SA*, 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (CGM), 2022 WL 3354955, at *11 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"). Similarly, in *Merkin I*, the Trustee alleged far more specific facts demonstrating the defendant's likely knowledge of the underlying fraud, including, in particular, the defendant's "unusually close business and social relationship with Madoff" and possession of account statements that "reflected hundreds of trades exercised at prices outside the daily range possible for those securities" *Picard v. Merkin*, 440 B.R. 243, 252–53 (Bankr. S.D.N.Y. 2010). Here, by contrast, there is no allegation suggesting that LGT Liechtenstein had, or could have had, any knowledge of the Madoff fraud. *See* Compl., *generally.* The Trustee seemingly recognizes this fact by arguing that discovery is necessary before the Court may dismiss the Complaint. However, as previously established, discovery is not warranted or justified where, as here, the pleading is subject to dismissal because

---

transfers. *See* Moving Br., p. 38. The *In re Dreier* court acknowledged that "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." *Id.*

the affirmative defense is present on the face of the pleadings. *See Gilmore*, 2014 WL 1998227, at *2, *supra.*

### IV.    LGT Liechtenstein Reserves Its § 546(e) Safe Harbor Defenses.

On November 3, 2022, Judge Rakoff entered an Opinion and Order denying interlocutory review of the Court's decisions on seven (7) similarly situated defendants' motions to dismiss based on the Bankruptcy Code § 546(e) safe harbor defense. *See Picard v. Multi-Strategy Fund Ltd.,* No. 22-cv-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022). While LGT Liechtenstein maintains its position that the bulk of the Trustee's claims are barred by the Safe Harbor defense, considering the foregoing, LGT Liechtenstein reserves its right to more fully assert this defense at a later date.

### Conclusion

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, and with prejudice.

Dated: January 9, 2023                    Respectfully submitted,

**WUERSCH & GERING LLP**

*/s/ Gregory F. Hauser*
Gregory F. Hauser
Jascha D. Preuss
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
Gregory.Hauser@WG-Law.com
Jascha.Preuss@WG-Law.com
***Counsel for Defendant LGT Bank in
Liechtenstein, Ltd.***