**LATHAM & WATKINS LLP**
Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for* ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED, <br><br> Defendants. | Adv. Pro. No. 12-01697 (CGM) |

## MEMORANDUM OF LAW IN SUPPORT OF ABN AMRO RETAINED NOMINEES (IOM) LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................3

    A.    Overview..................................................................................................................3

    B.    Defendants And The Transfers .................................................................................4

    C.    The Trustee's Attenuated Personal Jurisdiction Allegations ...................................6

    D.    Procedural History ..................................................................................................7

LEGAL STANDARD...............................................................................................................8

    A.    Failure To State A Claim Pursuant To Federal Rule 12(b)(6)..................................8

    B.    Lack Of Personal Jurisdiction Pursuant To Federal Rule 12(b)(2).........................8

ARGUMENT ...........................................................................................................................9

I.    IOM Nominees Was A Mere Conduit For The Funds At Issue, Not A Transferee ...........9

    A.    The Trustee Cannot Recover From A Mere Conduit...............................................10

    B.    The Trustee's Allegations Establish That IOM Nominees Had No
          "Dominion And Control" Over The Funds And So Was Not A Transferee .........12

          1.    IOM Nominees Acted As An Agent For Platinum At All Relevant
               Times...................................................................................................12

          2.    IOM Nominees Was Not The Beneficial Owner Of The Shares Or
               Funds...................................................................................................15

II.    The Trustee Can Not Establish Personal Jurisdiction Over IOM Nominees...................18

    A.    IOM Nominees Is Not At Home In The United States ...........................................18

    B.    IOM Nominees' Contacts With The U.S. Do Not Support The Exercise Of
          Specific Jurisdiction..............................................................................................19

          1.    IOM Nominees Did Not "Purposefully" Direct Investments Into
               New York .............................................................................................20

           2.    The Trustee's Other Allegations Do Not Support Specific Personal
               Jurisdiction...........................................................................................22

    C.    The Exercise Of Personal Jurisdiction Does Not Comport With Fair Play
          And Substantial Justice .........................................................................................25

III.    The Subsequent Transfers Cannot Be Recovered Because The Complaint
    Establishes A Diligence Defense Under Section 550(b) ...................................................27

    A.    IOM Nominees Received The Transfers For Value ...............................................28

    B.    The Transfers Were Received In Good Faith Because At A Minimum
          There Was A Diligent Inquiry ...............................................................................28

IV.    The Trustee Cannot Recover the Subsequent Transfers Because He Has Not
Alleged that the Initial Transfers Are Avoidable ................................................................30

CONCLUSION ................................................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)...............................................................................19, 20

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987)....................................................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................8

*Barrett v. Tema Dev. (1988), Inc.*,
463 F. Supp. 2d 423 (S.D.N.Y. 2006)......................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................8

*Bonded Fin. Servs. v. Eur. Am. Bank*,
838 F.2d 890 (7th Cir. 1988) ....................................................................................................10

*Bower v. Mortgage Electronic Registration Systems, Inc.*,
462 B.R. 347 (Bankr. D. Mass. 2012) .....................................................................................16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................................................................................................................19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)..............................................................................................9, 20, 25

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................................................................................18

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
2017 WL 476720 (S.D.N.Y. Feb. 2, 2017)..............................................................................24

*Elendow Fund, LLC v. Rye Select Broad Mkt. XL Fund*,
2013 WL 5179064 (S.D.N.Y. Sept. 16, 2013).........................................................................31

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
361 B.R. 36 (Bankr. S.D.N.Y. 2006) .......................................................................................11

*Fairfield Sentry Ltd. v. Citibank, N.A. London*,
2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) .........................................................................23

*Fairfield Sentry Ltd. v. Fortis (Isle of Man) Nominees Ltd.*,
    10-cv-3776, ECF No. 32-1 (Bankr. S.D.N.Y. Sept. 14, 2016) .................................................9

*In re Finley*,
    130 F.3d 52 (2d Cir. 1997)......................................................................................10, 12, 13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) .................................................................................................19, 24

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016)...............................................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ..........................................................................................................18

*Gropper v Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*,
    33 B.R. 334 (Bankr. S.D.N.Y. 1983) .................................................................................13

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .......................................................................23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..........................................................................................................20

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    331 F. Supp. 3d 130 (S.D.N.Y. 2018).................................................................................24

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) ........................................................................................12

*Jalbert v. Gryaznova (In re Bicom NY, LLM)*,
    2022 WL 1419997 (2d Cir. May 5, 2022) ..........................................................................11

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)................................................................................19

*Jones v. Bock*,
    549 U.S. 199 (2007)............................................................................................................8

*In re Kaiser Steel Corporation*,
    110 B.R. 514 (D. Colo. 1990).............................................................................................16

*Koehler v. Bank of Berm. Ltd.*,
    101 F.3d 863 (2d Cir. 1996)................................................................................................8

*In re Lehman Bros. Holdings Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015).................................................................................9

*Mabry v. Neighborhood Def. Serv.*,
   769 F. Supp. 2d 381 (S.D.N.Y. 2011) ...................................................................27

*In re Manhattan Inv. Fund*,
   397 B.R. 1 (S.D.N.Y. 2007) ..................................................................................11

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
   747 F. Supp. 2d 406 (S.D.N.Y. 2010) ...................................................................29

*Merit Management Group, LP v. FTI Consulting, Inc.*,
   138 S. Ct. 883 (2018) .....................................................................................14, 15

*Metamorfoza, D.O.O. v. Big Funny LLC*,
   2021 WL 735243 (S.D.N.Y Feb. 25, 2021) ...........................................................19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ....................................................................................25

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003) ...............................................................................8, 27

*OMI Holdings v. Royal Ins. Co. of Canada*,
   149 F.3d 1086 (10th Cir. 1998) .............................................................................25

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ....................................................................................11

*Picard v. ABN AMRO Bank (Ireland) Ltd.*,
   ECF No. 214 (Bankr. S.D.N.Y. Oct. 18, 2022) ....................................................30

*Picard v. Avellino*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) .....................................................................31

*Picard v. Banque Lombard Odier & Cie SA*,
   2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) .............................................22

*Picard v. Banque SYZ & Co.*,
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ......................................21, 28

*Picard v. Barclays Bank (Suisse) S.A.*,
   Adv. No. 11-02569, ECF No. 140 (Bankr. S.D.N.Y. July 15, 2022) .....................31

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...................................................................22

*Picard v. Citibank, N.A.*,
   2022 WL 4493234 (Bankr. S.D.N.Y. Sept. 27, 2022) ...........................................32

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ......................................................................28, 29, 32

*Picard v. Fairfield Inv. Fund Ltd. et al.*,
    No. 09-ap-01239, ECF No. 286 (Bankr. S.D.N.Y. Aug. 28, 2020)......................................4, 5

*Picard v. Fairfield Inv. Fund Ltd.*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............................................................31

*Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021) ..............................................................................10

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012)........................................................................................31

*Picard v. Inteligo Bank Ltd.*,
    2022 WL 17574780 (Bankr. S.D.N.Y. Dec. 9, 2022)............................................................15

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011).........................................................................................31

*Picard v. Miller*,
    631 B.R. 1 (Bankr. S.D.N.Y. 2021) ....................................................................10, 16, 17

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ............................................................... *passim*

*Picard v. Nelson*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019)..............................................................................16, 17

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
    2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023)................................................10, 11, 13, 14

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019)..............................................................................................7

*In re Pretty Girl, Inc.*,
    644 B.R. 298 (Bankr. S.D.N.Y. 2022) ...............................................................................13

*Salomon v. Nedlloyd, Inc.*,
    59 B.R. 873 (Bankr. S.D.N.Y. 1986)..................................................................................13

*Sandoval v. Abaco Club on Winding Bay*,
    507 F. Supp. 2d 312 (S.D.N.Y. 2007)................................................................................19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).......................................................................31

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................................................10, 11

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ............................................................7

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ..........................................................27

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005) ....................................................................................................31

*Spectra Prods. Inc. v. Indian River Citrus Specialties, Inc.*,
    144 A.D.2d 832 (NY App. Div. 1988) ..................................................................................21

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015) ...................................................................................21

*SPV OSUS Ltd. v. Unicredit Bank Aus.*,
    2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) .................................................................24, 25

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) ...................................................................................23

*Tiffany (NJ) LLC, Tiffany & Co. v. China Merchs. Bank*,
    589 F. App'x 550 (2d Cir. 2014) ..........................................................................................19

*In re Tribune Co. Fraudulent Conv. Litig.*,
    818 F.3d 98 (2d Cir. 2016) ....................................................................................................16

*United States v. McKeon*,
    738 F.2d 26 (2d Cir. 1984) ....................................................................................................12

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ..................................................................................32

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...............................................................................................................22

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ...........................................................................................8, 18, 24

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) .............................................................................11, 15

## STATUTES

11 U.S.C.

§ 105(a) ..........................................................................................................8
§ 544 ...........................................................................................................30
§ 544(b) .........................................................................................................8
§ 546(e) ........................................................................................3, 14, 15, 30
§ 547 ...........................................................................................................30
§ 547(b) .........................................................................................................8
§ 548(a) .........................................................................................................8
§ 548(a)(1)(A) ..................................................................................30, 31, 32
§ 548(a)(1)(B) ..............................................................................................30
§ 550 .......................................................................................................16, 28
§ 550(a) ................................................................................................ *passim*
§ 550(a)(1) ...................................................................................................10
§ 550(a)(2) ...................................................................................................10
§ 550(b) .......................................................................................3, 17, 27, 28
§ 551 .............................................................................................................8

15 U.S.C. § 78fff–2(c)(3) ...................................................................................8

New York Debtor & Creditor Law §§ 273–279 ........................................8, 30

## RULES

Fed. R. Civ. P. 12(b)(2) ......................................................................................8

Fed. R. Civ. P. 12(b)(6) ..........................................................................8, 11, 27

Fed. R. Civ. P. 15(c) ........................................................................................11

## TREATISES

COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) .................................11

*Nominee*, Black's Law Dictionary (11th ed. 2019) ........................................15

Defendant ABN AMRO Retained Nominees (IOM) Limited, f/k/a ABN AMRO Fund

Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited ("IOM

Nominees") respectfully submits this memorandum of law in support of Defendant's motion to

dismiss the Trustee's Amended Complaint.  ECF No. 141 ("Complaint" or "AC").

## PRELIMINARY STATEMENT

The Trustee's unique admissions specific to IOM Nominees here make this motion

critically different than others this Court has considered.  As its name suggests, IOM Nominees

was simply an intermediary—a foreign institution that did not invest any of its own money in the

Fairfield Funds (nor in Bernard Madoff's Ponzi scheme) but rather simply acted as an "agent" for

its main principal, its co-defendant Platinum All Weather Fund Limited ("Platinum"), to invest in

Fairfield.  The Trustee admits this, explicitly alleging that IOM Nominees was solely an "agent,"

acting "all on Platinum's behalf," in its role as an "administrator for Platinum's investments."  AC

¶ 59.  Indeed, the Complaint establishes that IOM Nominees did not beneficially own the

underlying investments, nor retain any monies received from them.  Rather, it paid all redemption

proceeds to their beneficial owners.  The Trustee seeks to recover more than $104.5 million in

such payments, nearly all of which—as the Trustee is aware and has pleaded—IOM Nominees

paid to a single client, Platinum.  What is also unique is that the Trustee in this same lawsuit has

already sued Platinum, as the beneficial owner, to recover those same funds.  The Complaint

establishes that IOM Nominees was nothing more than a conduit of the funds that Platinum

received and that the Complaint already seeks to recover from Platinum—and a *foreign* conduit,

acting solely on foreign soil, at that.  For these and the other reasons that follow, the case against

IOM Nominees should be dismissed.

To begin with, as a mere conduit, IOM Nominees was not a "transferee":  not according to

the Bankruptcy Code, and not according to any commonly accepted definition of the term.  As the

Complaint alleges, IOM Nominees was a mere "agent" for Platinum, and simply transferred the funds it received to their beneficial owner, Platinum. Consistent with this, the Complaint demonstrates that IOM Nominees did not exercise—and did not even have the ability to exercise—dominion or control over the transferred funds. All of the actions it is alleged to have taken in this case, the Complaint admits, were taken in its role as Platinum's agent, on Platinum's behalf and at its direction.[1] And it was Platinum who ultimately received those transfers. The law is clear that such an agent, acting as conduit between Fairfield and the beneficial owners, is not a "transferee" from whom the Trustee can recover the transfers. The Court need not even reach the issue of whether a "mere conduit" argument is an affirmative defense, as the Complaint's own admissions would clearly establish this defense. And given that the Trustee has already sued the actual transferee, there is no reason for IOM Nominees to remain in this case.

Moreover, this Court does not have personal jurisdiction over IOM Nominees. For many of the same reasons that IOM Nominees is not a "transferee," it did not—and could not have—intentionally direct investments into New York, or otherwise purposefully avail itself of New York law. Its only "purposeful" conduct was to contract with a Cayman entity, Platinum. Any actions it took to invest Platinum's money in the Fairfield Funds (themselves BVI entities), were conducted exclusively at the direction of its principal—Platinum. Indeed, the Complaint bears none of the hallmarks upon which this Court has previously relied to find "purposeful availment" in prior cases: no visits to BLMIS's offices by this defendant, no active solicitation of its clients to invest in BLMIS, and nothing that shows an intention to send funds to New York. The Trustee is left with a mishmash of allegations, each of which has repeatedly been held to be legally

---

[1] The same is true in the case of two much smaller alleged transfers, both of which were facilitated on behalf of, and at the direction of, other clients.

insufficient to support jurisdiction and which even together do not amount to the minimum

contacts required to establish jurisdiction.  Having failed to tie IOM Nominees itself to the forum,

the Trustee points to allegations of New York-based diligence by non-parties, but these too cannot

establish personal jurisdiction over IOM Nominees.

If, however, IOM Nominees is determined to be subject to this Court's jurisdiction based

on the actions of wholly separate legal entities, then those actions would also establish a defense

under 11 U.S.C. § 550(b).  The Complaint establishes on its face that the diligence those other

entities performed far exceeded what was reasonable for a mere administrator or nominee to

consider in performing its limited role.  For this reason, the face of the Complaint establishes a

"good faith" defense for IOM Nominees.

Finally, the initial transfers between BLMIS and the Fairfield Funds were not avoidable in

the first place.  They fall squarely within the statutory safe harbor established by 11 U.S.C. § 546(e)

to shield securities contracts from avoidance, and the Trustee has not adequately pleaded either

that the initial transferees had "actual knowledge" of Madoff's Ponzi scheme or that they were

made with fraudulent intent, such that they would be exempted from safe harbor protection.

For all of these reasons, and those that follow, this case should be dismissed as against

IOM Nominees.

## BACKGROUND

### A.    Overview

This is one of dozens of actions that Irving H. Picard (the "Trustee"), as Trustee for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), has brought to recover

funds from investors in Fairfield Sentry and Fairfield Sigma, two so-called "feeder funds" into

BLMIS.  The Trustee originally named three entities in this litigation: Platinum and Odyssey

Alternative Strategies Fund Limited ("Odyssey"), which were the beneficial investors in the

Fairfield Funds and received redemption payments in exchange for the return of their subscribed shares, and IOM Nominees, who served as their agent, *see* ECF No. 1; *see also* AC ¶ 59. In 2021, the Trustee resolved his dispute with Odyssey, and dismissed it as a defendant along with his claims to $17,396,882.66 in transfers that had been received by Odyssey through IOM Nominees. *See* ECF 136; *see also* AC at 1 n.2. The Trustee now seeks to recover the remaining $104,819,865 in funds from IOM Nominees and/or Platinum.

### B.     Defendants And The Transfers

At the time of the events alleged in the Complaint, Fortis (Isle of Man) Nominees Limited was a limited liability company incorporated in and located on the Isle of Man, AC ¶ 58.[2] It provided custodial and nominee services to its clients, including investment funds around the world. *See* Darroch Decl. ¶ 4. One of those clients was Platinum, a hedge fund organized and based in the Cayman Islands. AC ¶¶ 55–56. The Trustee alleges that Platinum invested "exclusively" in feeder funds to BLMIS, including Fairfield Sentry Ltd. ("Fairfield Sentry"). AC ¶¶ 55, 57.

Fairfield Sentry was a hedge fund incorporated in the British Virgin Islands that maintained direct customer accounts with BLMIS in New York from the 1990s through BLMIS's collapse in December 2008. AC ¶ 64. It allegedly invested at least 95% of its assets with BLMIS; a sister fund, Fairfield Sigma, invested 100% of its assets in shares of Fairfield Sentry. AC ¶¶ 64–65. Both Fairfield Sentry and Fairfield Sigma Ltd. (together, the "Fairfield Funds") sold shares directly to subscribing foreign investors. *Id.*; *see also Picard v. Fairfield Inv. Fund Ltd. et al.*, No. 09-ap-01239, ECF No. 286 (Bankr. S.D.N.Y. Aug. 28, 2020) (the "*Fairfield* Compl.") at ¶¶ 95–96. The

---

[2] Through a series of reorganizations, IOM Nominees is now indirectly owned by ABN AMRO Bank N.V., and is formally known as ABN AMRO Retained Nominees (IOM) Limited. *See* ECF No. 129.

Trustee conclusorily alleges that Fairfield Sentry received transfers from BLMIS "with actual knowledge of fraud at BLMIS, or . . . while aware of suspicious facts that would have led [it] to inquire further[.]" AC ¶ 96. As support for this assertion, he purports to incorporate by reference more than 200 paragraphs from his complaint against Fairfield Sentry. AC ¶ 95; *see also Fairfield Compl.* at ¶¶ 1–10, 79–313, 315–316.

Platinum was one of Fairfield Sentry's foreign investors. According to the Complaint, Platinum used IOM Nominees as the "administrator" of its investments in Fairfield Sentry. AC ¶¶ 3, 55–59. As alleged by the Trustee, to facilitate Platinum's investments, IOM Nominees conducted unspecified due diligence on Platinum's behalf, AC ¶ 59, and ultimately executed subscription agreements with Fairfield Sentry in 2007 and 2008, AC ¶¶ 74–75. The Trustee concedes that IOM Nominees executed those subscription agreements *explicitly* on Platinum's behalf; indeed, as the Complaint alleges, the agreements in question defined the "Subscriber" as "Fortis (Isle of Man) Nominees Limited re Platinum." AC ¶ 3; *see also* Giblin Decl., Exs. 1, 2.[3] The subscriptions represented "equity interests" held on Platinum's behalf as a beneficial shareholder in the Fairfield Funds.[4] AC ¶ 105. In the subscription agreements, IOM Nominees confirmed that it had received and reviewed Fairfield Sentry private placement memoranda, or PPMs. AC ¶¶ 74–75. The subscription agreements also included a clause by which the signatories "agree[d] that any suit, action or proceeding . . . with respect to *this Agreement and the Fund* may be brought in New York." AC ¶ 76 (emphasis added); Giblin Decl. Exs. 1 at 6, 2 at 6 (same).

---

[3] The exhibits are attached to the Declaration of Thomas J. Giblin, which is filed concurrently herewith. This Court may take judicial notice of the Subscription Agreements, which are expressly cited throughout the Complaint, *see* AC ¶¶ 3, 59, 74–76, and as to which "the complaint relies heavily upon [their] terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

[4] The subscriptions were allegedly purchased through the transfer of funds to Fairfield Sentry's bank account at an HSBC branch in New York. AC ¶ 88.

At Platinum's direction, from time to time IOM Nominees also requested that Fairfield

Sentry redeem portions of Platinum's equity interests. AC ¶ 59. In total, Platinum redeemed

$103,541,099, through IOM Nominees, between September 2007 and July 2008. AC ¶ 99, Ex. C.

Like the subscription agreements, the redemption requests were identified as having been made by

"Fortis (Isle of Man) Nominees Limited re Platinum." AC ¶ 3. The resulting redemption payments

were sent to a "New York-based bank account" at Northern Trust International Banking

Corporation. AC ¶ 89. The Trustee does not allege that IOM Nominees retained any of those

redemption payments or put them to its own use.

The Trustee does not identify the entities that received the comparatively small remaining

redemption payments, but IOM Nominees also received them on behalf of, and transferred them

to, clients: a November 19, 2008 transfer of $1,063,953 from Fairfield Sentry (*see* AC Ex. D),

which was made on behalf of, and transferred to, a fund named Seven Seas International Fund,

Ltd.; and a February 5, 2007 transfer of $214,549 from Fairfield Sigma (*see* AC Ex. F), which was

made on behalf of, and transferred to, a fund named ABZ assetX World Selection Ltd.

### C.    The Trustee's Attenuated Personal Jurisdiction Allegations

The Complaint alleges that IOM Nominees was "part of a global network of financial

organizations, collectively known as 'Fortis,' that provided banking, asset management, structured

financing, and administrative services." AC ¶ 61. Because the Trustee concedes that IOM

Nominees was a wholly foreign entity based in the Isle of Man, AC ¶ 58, the Complaint includes

allegations unrelated to the transactions at issue here—and frequently based on contacts and work

performed by other entities within the Fortis corporate family—in an attempt to confer personal

jurisdiction over IOM Nominees. To that end, he alleges:

- That some unspecified "Fortis" entities, but not IOM Nominees itself, conducted due diligence visits into BLMIS in New York, and that IOM Nominees "used the findings" from those visits "as support for" unspecified "transactions," AC ¶ 86;

6

- That IOM Nominees "collaborated with its New York Fortis affiliate, Fortis Prime Fund Solutions (USA) LLC, to review BLMIS trade confirmations and analyze BLMIS's purported trading," again, in relation to unspecified transactions, AC ¶ 87;

- That IOM Nominees "maintained regular contact with" unspecified "New York entities and individuals regarding BLMIS, including direct communications with BLMIS itself in New York," AC ¶ 87; and

- That IOM Nominees acted as administrator *for other BLMIS feeder funds* managed and operated out of New York, including Harley International (Cayman) Limited, AC ¶ 87 (emphasis added).

The Trustee does not allege that employees of IOM Nominees or its parent, Fortis Prime Fund Solutions (Isle of Man) Limited ("FPFS IOM"),[5] entered New York, conducted any affirmative actions in New York, or directed any activity toward New York related to these specific transactions, only that it knew that Fairfield Sentry would invest the funds in New York-based BLMIS and that "Defendants intended" that Platinum's investments "be used to purchase securities in the United States." AC ¶ 77.

### D.    Procedural History

This case was originally filed on June 6, 2012. ECF No. 1. On November 22, 2016, this Court ruled that the Trustee's claims constituted an impermissibly-extraterritorial extension of the Securities Investor Protection Act, *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB), Adv. No. 11-02732 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016); accordingly, the case was dismissed, with prejudice. ECF No. 120. That decision was reversed by the Court of Appeals for the Second Circuit, *In re Picard*, 917 F.3d 85 (2d Cir. 2019), and the mandate returned to this Court on October 21, 2020. ECF No. 130. The Trustee dismissed Odyssey (and all claims against IOM Nominees related to the transfers it received) on September

---

[5] The Trustee alleges that IOM Nominees shared offices and employees with FPFS IOM. AC ¶ 60; *see also* Darroch Decl. ¶ 6. IOM Nominees reserves the right to contest that it and FPFS IOM "functioned as one entity" (AC ¶ 60) at a later stage of the litigation, but does not do so here.

27, 2021.  ECF No. 136.  He subsequently amended his complaint, on consent, on November 3,

2022.  ECF No. 141.

In his Amended Complaint, the Trustee asserts one count to recover $104,819,865 still at

issue, as subsequent transfers pursuant to 11 U.S.C. §§ 105(a) and 550(a) and 15 U.S.C. § 78fff–

2(c)(3).  AC ¶¶ 109–111.  He alleges that the initial transfers are avoidable pursuant to Sections

105(a), 544(b), 547(b), 548(a), and 551 of the Bankruptcy Code, and §§ 273–279 of the New York

Debtor & Creditor Law.

## **LEGAL STANDARD**

### A.    **Failure To State A Claim Pursuant To Federal Rule 12(b)(6)**

To survive a motion to dismiss, a complaint must contain factual allegations sufficient,

when accepted as true, to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  A claim is plausible on its face when the plaintiff pleads facts that allow the court to

"draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

U.S. at 678; *accord Twombly*, 550 U.S. at 570.  The factual allegations set forth in a complaint

"must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Affirmative defenses may be established from the face of the complaint if the plaintiff has

"plead[ed] himself out of court . . . ."  *Official Comm. of the Unsecured Creditors of Color Tile,

Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks

omitted); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (a case may be dismissed if an

affirmative defense appears on the face of the complaint).

### B.    **Lack Of Personal Jurisdiction Pursuant To Federal Rule 12(b)(2)**

The Trustee has the "burden of establishing jurisdiction over the defendant . . . ."  *Waldman

v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm.*

*Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).  To survive a motion to dismiss under Rule 12(b)(2), the

Trustee "bears the burden to make a *prima facie* showing that jurisdiction exists" over IOM

Nominees, consistent with due process.  *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618

(Bankr. S.D.N.Y. 2015); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81

(2d Cir. 2018) (same).

## ARGUMENT

## I.      IOM NOMINEES WAS A MERE CONDUIT FOR THE FUNDS AT ISSUE, NOT A TRANSFEREE

IOM Nominees must be dismissed, because the Trustee's Complaint establishes that IOM

Nominees received the funds at issue solely in its role as Platinum's agent, and that it was not a

"transferee" as that term appears in the recovery provision of the Bankruptcy Code.  To the

contrary, his allegations establish beyond doubt that IOM Nominees was merely an intermediary

for its customer and its co-defendant in this case, Platinum.  These allegations—and the Trustee's

decision to name the beneficial owner of the shares as a defendant—appears to be unique among

the cases that have come before this Court to date, and dismissal of IOM Nominees is appropriate

at the pleading stage based on these facts.[6]

---

[6] The Trustee also alleges that IOM Nominees received two much smaller transfers that were not
on Platinum's behalf:  a $1,063,953 transfer from Fairfield Sentry on November 19, 2008, AC
¶ 99, Ex. D; and a $214,549 transfer from Fairfield Sigma on February 5, 2007, AC ¶ 103, Ex. F.
But structurally these two smaller transfers are exactly the same – they were received solely as an
agent and nominee on behalf of their beneficial owners and transferred to those owners.  As the
Trustee is aware, the $1,063,953 transfer was made on behalf of IOM Nominee's principal Seven
Seas and was transferred to Seven Seas.  *See* Giblin Decl., Ex. 3 (Seven Seas Subscription
Agreement); *see also Fairfield Sentry Ltd. v. Fortis (Isle of Man) Nominees Ltd*., 10-cv-3776, ECF
No. 32-1 (Bankr. S.D.N.Y. Sept. 14, 2016) (alleging redemption payments "may have been paid
to an account holder or holders associated with Seven Seas").  Like the Platinum subscription
agreement, the Seven Seas subscription agreement was explicitly executed on behalf of Seven Seas
as principal.  Giblin Decl., Ex. 3 (defining Subscriber as "Fortis (Isle of Man) Nominees Limited
re Seven Seas).  And so for the same reason as with Platinum, IOM Nominees was simply a mere
conduit between Fairfield and the beneficial owner Seven Seas.

### A.    The Trustee Cannot Recover From A Mere Conduit

Section 550(a) of the Bankruptcy Code only allows a trustee to recover customer property

from a "transferee" who received that property.  11 U.S.C. § 550(a).  But the Second Circuit has

long recognized that a mere recipient of assets is not a transferee.  *In re Finley*, 130 F.3d 52, 57

(2d Cir. 1997) ("[T]he term 'initial transferee' references something more particular than the initial

recipient.").  Rather, to qualify as a transferee for the purposes of Section 550(a), a party must

exercise "dominion over the money," meaning that the party has "the right to put the money to

[its] own purpose."  *Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*, 634

B.R. 39, 49–50 (Bankr. S.D.N.Y. 2021) (internal quotation marks omitted).  And "one who merely

facilitates the transfer of funds . . . to a third party does not exercise sufficient dominion and control

and is not a[] . . . transferee."  *Picard v. Miller*, 631 B.R. 1, 13 (Bankr. S.D.N.Y. 2021) (citing *In*

*re Finley*, 130 F.3d at 59).[7]  The transferee, from whom the Trustee may recover, is "the one to

whom the funds ultimately should go."  *Finley*, 130 F.3d at 57.

---

The $214,529 transfer was made on behalf of, and transferred to, IOM Nominee's principal ABZ
assetX World Selection Ltd., the beneficial owner of the relevant shares in Fairfield Sigma.  *See*
Giblin Decl., Ex. 4 (Redemption Request, naming "Ordering Customer" as "ABZ asset X World
Selection").  By the time this Complaint was filed, the Trustee had information sufficient to
identify this entity through his discovery into the Fairfield Funds, to whom the existence of this
entity was known.  *See Fairfield Sentry Ltd. v. Fortis (Isle of Man) Nominees Ltd.*, 10-cv-3776,
ECF No. 32-1 at ¶ 14 (Bankr. S.D.N.Y. Sept. 14, 2016) ("Based on Sentry and Sigma records,
some or all of the Redemption Payments may have been paid to an account holder or holders
associated with reference identifier ABZ.").

[7] Both precedent and logic dictate that the "dominion and control" test extends to subsequent
transferees just as it does to initial transferees.  *Cf. Picard v. Standard Chartered Fin. Servs.*
*(Luxembourg) S.A.*, No. 08-01789 (CGM), Adv. No. 12-01565 (CGM), 2023 WL 118787, at *7
(Bankr. S.D.N.Y. Jan. 6, 2023)  ("Some courts have applied this same 'dominion or control' test
to subsequent transferees.")  Congress intentionally used the word "transferee" in both Section
550(a)(1) and 550(a)(2), and there is no reason in the statute or common sense that it should be
defined differently in one sub-section than the other.  Indeed, in the seminal case setting forth the
"mere conduit" doctrine, the Seventh Circuit made clear that "[t]he method we employed . . . to
decide that the [b]ank was not an 'initial' transferee governs the question whether entities are
subsequent transferees, too."  *Bonded Fin. Servs. v. Eur. Am. Bank*, 838 F.2d 890, 896 (7th Cir.

For a financial institution to be a transferee (*i.e.*, to have exercised dominion and control over the transferred funds), it must have (i) received the funds; (ii) had the legal right to control them; and (iii) had the right to use them for its own purpose. *In re Manhattan Inv. Fund*, 397 B.R. 1, 15 (S.D.N.Y. 2007); *see also Jalbert v. Gryaznova (In re Bicom NY, LLM)*, No. 21-1821, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (holding that recipient who never "had 'a realistic opportunity' to use the funds" is not a transferee under § 550); COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee[.]'").

For purposes of this motion, it does not matter whether the "transferee" issue is an element of a Section 550(a) claim which the Trustee must plead, or an affirmative defense, because the Trustee's Complaint establishes on its face that IOM Nominees was not a "transferee" for purposes of the Bankruptcy Code. *See Standard Chartered*, 2023 WL 118787, at *7 ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). But to be clear, IOM Nominees believes the correct position is that it is an element of Section 550(a). *See Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014); *Stratton Oakmont, Inc.*, 234 B.R. at 315 (dismissing recipient of transfers because "[a]s the Complaint stands, he was a mere conduit.").[8]

---

1988). In this District as well, a "mere conduit" cannot be a subsequent transferee. *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "[t]o qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives").

[8] Neither case cited for the contrary proposition in this Court's recent decision in *Picard v. Standard Chartered Financial Services (Luxembourg) S.A.* persuasively counsels otherwise. In *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 361 B.R. 36 (Bankr. S.D.N.Y. 2006), the court's analysis of the "mere conduit" issue was intertwined with the defendant's ability to

**B.**     **The Trustee's Allegations Establish That IOM Nominees Had No "Dominion And Control" Over The Funds And So Was Not A Transferee**

The Complaint here paints a thorough and complete picture that IOM Nominees, although a recipient of the funds at issue, received them as an agent only to pass them on to the beneficial owner of those funds. *See Finley*, 130 F.3d at 57. And indeed, the Trustee's allegations establish that IOM Nominees was not the beneficial owner of the shares in Fairfield Sentry or the transferred funds—little different than the custodians whom this Court has held to be mere conduits in the past, or the nominees that other courts have found not to be transferees. These allegations set this case apart from the Court's prior decisions, particularly in *Standard Chartered*, and make dismissal appropriate now.

**1.**     **IOM Nominees Acted As An Agent For Platinum At All Relevant Times**

As alleged, at all relevant times, IOM Nominees "served as administrator for Platinum's investments in the Fairfield Funds and, accordingly, **acted as [] Platinum's agent**" and its interactions with the Fairfield Funds were undertaken "**all on Platinum's behalf**." AC ¶ 59 (emphasis added). The Trustee has alleged that the core conduct at the heart of this Complaint—the subscription in, and reception of redemption payments from, the Fairfield Funds—were all carried out at Platinum's direction, with the transfers being directed straight to Platinum. *See* ECF No. 98 at ¶ 39[9] ("Platinum directed [IOM Nominees] to execute a Fairfield Sentry subscription

---

contest relation back under Rule 15(c)—not, as here, the Trustee's obligation to prove that he can satisfy the basic elements of his claim for recovery under Section 550(a). *Id.* at *47–50. And *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020) was an Eleventh Circuit case applying Eleventh Circuit law.

[9] The Second Circuit has repeatedly held that "[t]he law is quite clear that [superseded] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).

agreement on its behalf, wherein [IOM Nominees] directed redemption payments from Fairfield

Sentry to [Platinum's] bank account."). Thus, IOM Nominees could not have had, and did not

have, the power to use the transferred funds for its own purposes.[10] And so it cannot be said to

have had "dominion or control" over them and is therefore not a transferee for purposes of the

Bankruptcy Code. *See, e.g.*, *In re Finley*, 130 F.3d 52 (2d Cir. 1997) (insurance broker who

transferred premiums from law firm to insurer was a mere conduit, not a transferee); *Salomon v.

Nedlloyd, Inc.*, 59 B.R. 873, 874–75 (Bankr. S.D.N.Y. 1986) (steamship agent who received funds

"only as an agent for a disclosed principal" was a mere conduit); *Gropper v Unitrac, S.A. (In re

Fabric Buys of Jericho, Inc.)*, 33 B.R. 334, 336–37 (Bankr. S.D.N.Y. 1983) (holding law firm who

received settlement payment and transferred it to client was a mere conduit and "should not be the

subject of recovery efforts by the Trustee.").

The contrast between the allegations here and those in *Standard Chartered*, 2023 WL

118787, are telling, and underscore that the Complaint establishes that IOM Nominees was a mere

conduit, not a transferee, of the funds. In *Standard Chartered*, the defendants held accounts in the

Fairfield Funds in their own name "and not in the name of any of [their] clients." *Id.* at *7. Not

so here, where both the subscription agreements and redemption requests were expressly made in

the name of IOM Nominees' client, listing the "Subscriber" as "Fortis (Isle of Man) Nominees

Limited re Platinum." AC ¶ 3; *see also* Giblin Decl., Exs. 1, 2. In fact, the Complaint alleges in

no uncertain terms that the investments and redemptions were made "all on Platinum's behalf,"

AC ¶ 59; this is a far cry from the situation alleged in *Standard Chartered*, in which the defendants

themselves allegedly purchased shares themselves in the Fairfield Funds and only then sold them

---

[10] Similarly, the Trustee does not allege that IOM Nominees commingled the transfers with its own funds, distinguishing this case from Judge Lane's recent decision in *In re Pretty Girl, Inc.*, 644 B.R. 298, 310 (Bankr. S.D.N.Y. 2022).

13

to their clients.  2023 WL 118787 at *7.  Nor are any of the other factors on which the Court relied

in *Standard Chartered* present here:  IOM Nominees did not actively market the Fairfield Funds

to its clients, *id.* at *4; it did not exercise power as a "decision-maker" over its clients' investments,

*id.* at *7; and it did not draw its fees from BLMIS customer property, *id.* at *7.  Far from being an

"integral part[y] to BLMIS' scheme" with an intent to "reap profits" from investments in the

Fairfield Funds, *id.* at *8, IOM Nominees was an agent executing the directions of its client and

co-defendant.  Put another way, IOM Nominees is nothing more than an "intermediary financial

institution[]" that facilitated transfers from the Fairfield Funds to the ultimate transferees.  *See*

*Standard Chartered*, 2023 WL 118787, at *7 n.6.

Thus, that IOM Nominees is not a "transferee" is underscored by the Supreme Court's

decision in *Merit Management Group, LP v. FTI Consulting, Inc*., 138 S. Ct. 883 (2018).  In that

case, the Court analyzed whether a transfer made by the debtor could qualify for the Section 546(e)

safe harbor if it was routed through bank and escrow accounts, such that the transfers were being

made "by or to (or for the benefit of)" the financial institutions at which the accounts were held—

even though those institutions "served as mere conduits."  *Id*. at 892.[11]  The Court held that it did

not so qualify, because the transfers to and from the financial agents were merely "component

parts" of the transfer and "simply irrelevant to the analysis under § 546(e)."  *Id.* at 895.  Instead,

the Court held that the focus should be on the "overarching transfer" between the debtor and the

ultimate, intended beneficiary of the funds.  IOM Nominees is in the same situation as the financial

---

[11] 11 U.S.C. § 546(e) provides, in relevant part:  "[T]he trustee may not avoid a transfer that is a
margin payment . . . or settlement payment . . . , made by or to (or for the benefit of a . . .
stockbroker, financial institution, financial participant, or securities clearing agency, or that is a
transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant,
stockbroker, financial institution, financial participant, or securities clearing agency, in connection
with a securities contract[.]"

institution in *Merit*. The Fairfield Funds transferred funds to Platinum, through IOM Nominees, while IOM Nominees, as the conduit of the funds, was an "irrelevant" "component part[]" of the transfer. *Id*. Thus, it should be disregarded and the Court should look to the "overarching transfer" between Fairfield Sentry and Platinum to effect recovery.[12]

### 2. IOM Nominees Was Not The Beneficial Owner Of The Shares Or Funds

The fact that IOM Nominees was not a "transferee" is confirmed by the fact that the Complaint establishes that IOM Nominees was not the beneficial owner of the shares in Fairfield Sentry (and thus the funds received thereby), but rather Platinum was. Although the Trustee does not explicitly use the phrase "beneficial owner," he explicitly alleges that IOM Nominees subscribed to the shares, and received the redemption payments on behalf of, Platinum. AC ¶¶ 3, 74–75, 99. He has thus pleaded (as he must) that IOM Nominees was, in fact, a nominee for the beneficial owner (Platinum). And a nominee by definition is not a beneficial owner but rather only the titular holder on behalf of a beneficial owner. *Nominee*, Black's Law Dictionary (11th ed. 2019) (defining "nominee" as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others"); *see also In re Lyondell Chem. Co.*, 503 B.R. at 381–83.

And this fact is critical, because the definition of "transferee," as numerous courts including within this district have held, "does not include those who are not beneficial owners." *See id.* (holding that "recipients of . . . payments [who] were either conduits who passed those payments

---

[12] In the Court's recent decision in *Picard v. Inteligo Bank Ltd.*, No. 11-2763, 2022 WL 17574780 (Bankr. S.D.N.Y. Dec. 9, 2022), the defendant had argued that *Fairfield Sentry* was the mere conduit, such that the defendant was the initial transferee, not a subsequent transferee, and it could assert the Section 546(e) safe harbor on that basis. *Id.* at *9. Here, by contrast, IOM Nominees (not Sentry) is the mere conduit within the "overarching transfer"—and thus, *Merit* supports, rather than undermines, its position.

on to others, or who were 'holders' of the stock (*e.g.*, as nominees or depositories) but not the beneficial owners, . . . cannot be held liable as recipients of fraudulent transfers" (abrogated on other grounds by *In re Tribune Co. Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016)).

The District of Colorado addressed this very situation in *In re Kaiser Steel Corporation*, 110 B.R. 514 (D. Colo. 1990). There, the debtor had sued Charles Schwab & Co. to recover alleged customer property pursuant to Section 550, although, as the court explained, Schwab's role was limited to "register[ing] its customers' securities in a nominee name, or 'street name'"; that is, Schwab's customers were the beneficial owners of the debtors' shares. *Id.* at 517. Applying the dominion and control test to the transaction at issue (a leveraged buyout), the court explained that the disbursed funds had been paid to a securities clearinghouse:

> who credited Schwab's . . . account. Schwab, in turn, credited its customers' accounts. Schwab never held a beneficial interest in any Kaiser stock, received no consideration for facilitating the conversion of its customers' stock, and had no ability to control the disposition of funds paid to its customers in the merger. It was simply a financial intermediary, not a "transferee."

*Id.* at 521. Thus, the District Court held that the debtor could not recover the funds at issue from Schwab. This describes to a tee the allegations in this case, and recovery is equally inappropriate here. *See also Bower v. Mortgage Electronic Registration Systems, Inc.*, 462 B.R. 347, 353–54 (Bankr. D. Mass. 2012) (dismissing § 550 claim against mortgagee of record because it "lacks the authority to act without direction from the note holder or servicer in light of its nominee status" and "is simply a conduit").

IOM Nominees' role as a nominee for Platinum's investments is also similar to the IRA custodians who received funds on behalf of the IRAs' owners in *Picard v. Miller*, 631 B.R. 1 (Bankr. S.D.N.Y. 2021) and *Picard v. Nelson*, 610 B.R. 197 (Bankr. S.D.N.Y. 2019). In *Miller*, like here, both "the conduit" (there, the IRA custodian, here IOM Nominees) and "the third party who received the transferred funds from the conduit" (there, the defendant IRA owner, here

Platinum) were present.  The defendant in that case had argued that the IRA custodian was the initial transferee, and that the defendant itself was therefore a subsequent transferee entitled to assert the good faith defense under Section 550(b).  But the Court analyzed the role of the custodian and found that, after it made distribution requests to BLMIS and received funds in return, the custodian merely "distributed" those funds "to the defendant" who owned the IRA account; thus, it never had dominion and control over the funds.  *Miller*, 631 B.R. at 14–15.  And in *Picard v. Nelson*, this Court likewise held that an "IRA custodian [was] a mere conduit" because it "was not free to invest [defendant's] money in lottery tickets or uranium stock."  610 B.R. at 238.[13]  This is *precisely* the situation alleged in the Complaint—IOM Nominees made redemption requests "all on Platinum's behalf," AC ¶ 59, and Platinum received the funds transferred as a result.  AC ¶ 3; *see also* ECF No. 98 (Trustee's Proffered Allegations pertaining to The Extraterritoriality Issue As to [IOM Nominees]) at ¶ 39 (alleging that IOM Nominees "directed redemption payments from Fairfield Sentry to [Platinum's] bank account.").  IOM Nominees had no power to invest that money, which belonged to Platinum, into lottery tickets, uranium stocks, or anything else.  The Trustee's Complaint, on its face, mandates the dismissal of IOM Nominees on this basis alone.

The Trustee is obviously well aware of Platinum's existence, and its role as the beneficial owner of the Fairfield Sentry shares here.  He has sued Platinum in this very lawsuit to recover more than 98% of the transfers at issue.  Thus, unlike similar cases that have previously come

---

[13] Tellingly, in *Nelson*, the Trustee had sued the custodian, NTC & Co. LLP, alleging that it "and/or" the IRA owner had received transfers—the same formulation present here.  *Compare Nelson*, No. 10-4658-cgm, ECF No. 1-2 ¶ 39 ("BLMIS made transfers . . . to Defendant NTC and/or Defendant Nelson") *with* AC ¶ 99 ("Defendants Platinum and/or [IOM Nominees] received $103,541,099 of subsequent transfers of customer property[.]).  The use of this language betrays the Trustee's understanding that Platinum was the transferee of the funds at issue and that IOM Nominees, like NTC, was merely a conduit from whom he cannot recover.

before this Court, the Trustee already has the proper defendant before it should the Court, correctly, rule that IOM Nominees was a mere conduit of the funds at issue.

Consequently, Platinum, not its agent IOM Nominees, was the subsequent transferee for purposes of Section 550(a), and the Trustee may therefore not recover against IOM Nominees.

## II.    THE TRUSTEE CAN NOT ESTABLISH PERSONAL JURISDICTION OVER IOM NOMINEES

IOM Nominees' role as a mere agent also makes this case unique regarding personal jurisdiction, a second basis to dismiss this case.  It is the Trustee's burden to establish jurisdiction over each defendant.  *See Waldman*, 835 F.3d at 334.  Ordinarily, jurisdiction may be asserted in one of two ways: general jurisdiction, which is based on the defendant's affiliations with the forum, and specific jurisdiction, which "depends on an affiliation between the forum and the underlying controversy[.]"  *Id.* at 331 (internal quotation omitted).  But because IOM Nominees is a wholly-foreign entity engaged in a wholly-foreign transaction with another wholly-foreign entity, whose actions were solely on behalf of and at the direction of its principal, the Trustee cannot establish such jurisdiction under either theory.  This proceeding must dismissed on this basis alone.

### A.    IOM Nominees Is Not At Home In The United States

A court may only exercise general jurisdiction if the defendant is "fairly regarded as at home" in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  A corporation is at home "where it is incorporated or has its principal place of business," except in rare or exceptional circumstances.[14]  *Id.*

---

[14] Notably, the Supreme Court has given only one example of an "exceptional case" where general jurisdiction was appropriate due to wartime circumstances that rendered the foreign company— which had temporarily moved its headquarters from the Philippines to the US—"essentially at home" in Ohio.  *Daimler*, 571 U.S. at 139 n.19.

18

IOM Nominees is incorporated in the Isle of Man—not New York or any other U.S. state—and maintains its principal place of business there.  *See* AC ¶ 58 ("Defendant [IOM Nominees is] a limited company incorporated and organized under the laws of the Isle of Man with a registered address at First Floor, Jubilee Building, Douglas, Isle of Man IM1 2SH."); *see also* Darroch Decl. ¶ 4.[15]  And the Complaint does not allege that IOM Nominees maintained "continuous and systematic" contacts with New York, because it did not and does not.  *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchs. Bank*, 589 F. App'x 550, 553 (2d Cir. 2014) ("[T]here is no basis on which to conclude that the Banks' contacts in New York are so 'continuous and systematic,' judged against their national and global activities, that they are 'essentially at home' in that state.")  There is no basis for this Court to exercise general jurisdiction over IOM Nominees.

**B.      IOM Nominees' Contacts With The U.S. Do Not Support The Exercise Of Specific Jurisdiction**

Instead, the Trustee seeks to establish specific personal jurisdiction on the grounds that his claims "arise from business [Defendants] transacted within New York."  AC ¶¶ 68–91.  But that is neither true, nor supported by the allegations in the Complaint, and therefore there is no basis to exercise specific personal jurisdiction here.

A court may exercise specific personal jurisdiction only if it finds sufficient contacts with the forum that directly relate to the action.  *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).  The

---

[15] Courts may consider materials outside the pleadings, including affidavits, on a 12(b)(2) motion. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015); *see also Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 425 n.3 (S.D.N.Y. 2006) ("In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)...a court may look to evidence outside the pleadings."); *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007) (same); *Metamorfoza, D.O.O. v. Big Funny LLC*, No. 19-CV-11743 (RA), 2021 WL 735243, at *3 (S.D.N.Y Feb. 25, 2021) (same).

19

plaintiff must establish jurisdiction as to each individual defendant; group pleading is not permitted. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). The connection between the defendant and the forum "must come about by *an action of the defendant purposefully directed toward the forum State*"; the unilateral activity of another party or a third person cannot be used to demonstrate the sufficiency of a defendant's contacts. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

      1.      **IOM Nominees Did Not "Purposefully" Direct Investments Into New York**

Minimum contacts sufficient to support specific personal jurisdiction may be found "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 86 (Bankr. S.D.N.Y. 2022) (quoting *Charles Schwab Corp.*, 883 F.3d at 82)). And as this Court has explained in the past, a party purposefully avails itself of New York law "by knowing, intending and contemplating" that the funds it invested in the Fairfield Funds "would be transferred to BLMIS in New York to be invested in the New York securities market." *Id.* (internal quotation marks omitted). That is not what IOM Nominees did here.

The Complaint does not plead otherwise; in fact, the Trustee makes very little attempt to establish that IOM Nominees contemplated directing, or intended to direct, investments into this forum. Instead, he frequently conflates IOM Nominees with Platinum, referring to both generically as "defendants." This is fatal to his claims, because jurisdiction must be established

over each defendant individually. *See Aegean*, 529 F. Supp. 3d at 143 (declining to exercise jurisdiction over defendant where allegations "are nothing more than group pleading regarding the 'Company Defendants,' 'Officer Defendants,' 'management,' and the "Board'"). This is not merely a pleading deficiency. As in myriad other cases involving investments of Fairfield, the core of the Trustee's argument for jurisdiction is that "Defendants" invested in the Fairfield Funds "with the specific purpose of having funds invested with BLMIS in New York and profiting therefrom." AC ¶ 78. But IOM Nominees did no such thing. All relevant decisions were made by Platinum, not IOM Nominees. AC ¶ 39.

As established in Section I above, IOM Nominees merely facilitated the investments of *others*, primarily Platinum, in the BVI-based Fairfield Funds. *See, e.g.*, AC ¶ 59. It invested none of its own money, and the Complaint is devoid of any allegation that IOM Nominees profited, or intended to profit, from an investment in BLMIS—because it did not. *Compare Multi-Strategy Fund*, 641 B.R. at 86. It is not alleged to have actively solicited or encouraged its clients to invest in the Fairfield Funds. *Compare Picard v. Banque SYZ & Co.*, No. 08-01789, 2022 WL 2135019, at *3 (Bankr. S.D.N.Y. June 14, 2022). Its only financial benefit derived from its administration of the investments of the Cayman Islands-based Platinum fund (and other overseas clients) in the BVI-based Fairfield Funds, which falls far short of the contacts necessary to establish personal jurisdiction. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170–71 (S.D.N.Y. 2015) (dismissing for lack of jurisdiction where "defendants are foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States"); *see also Spectra Prods. Inc. v. Indian River Citrus Specialties, Inc.*, 144 A.D.2d 832, 834 (NY App. Div. 1988) (holding that "[e]ven if defendant derived commercial benefit from the contract, that is not sufficient to confer long-arm jurisdiction").

The *only* conduct that the Trustee specifically alleges against IOM Nominees to support his allegation that it "purposefully invested with Madoff" was that it executed subscription agreements with the BVI-based Fairfield Sentry "individually and on behalf of Platinum." AC ¶¶ 74–75. But those contracts explicitly made clear that they were being executed on behalf of others, *see supra* § I.B.1, and signing a contract with a BVI investment fund so that that fund might send *someone else's money* to New York is simply not sufficient to support personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").[16]

If the Trustee were to now contradict his Complaint and attempt to argue that IOM Nominees' role exceeded that of an administrator and nominee, any such attempt would fail, as those are the only roles IOM Nominees played with respect to the investments at issue. Darroch Decl. at ¶ 7. Accordingly, IOM Nominees did not foresee and could not have foreseen that its provision of nominee services to a Cayman-based client investing in the BVI-based Fairfield Funds would result in its being haled into court in New York.

2. **The Trustee's Other Allegations Do Not Support Specific Personal Jurisdiction**

Having not alleged that IOM Nominees purposefully directed investments into New York, the Trustee's other allegations—each of which, on their own, have been held insufficient to support

---

[16] This case differs from other cases, in which this Court held that the defendants had intentionally made "physical entry" into New York in order to "reap the benefits" of the "Madoff money orchard." *Multi-Strategy Fund*, 641 B.R. at 87 (quoting *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012)); *Picard v. Banque Lombard Odier & Cie SA*, Adv. No. 12-1693, 2022 WL 2387523, at *4 (Bankr. S.D.N.Y. June 30, 2022) (same). Here, all of the relevant—and minimal—contacts were the result of the decisions and actions of third parties.

personal jurisdiction—do not add up to more than the sum of their deficient parts, and therefore cannot support the exercise of jurisdiction.

*First*, the Trustee alleges that "Defendants" directed subscription payments to an HSBC bank account, and received redemption payments from the Fairfield Funds in a "New York-based bank account" at Northern Trust. *See* AC ¶¶ 88, 89. But "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it[.]" *Hau Yin To v. HSBC Holdings PLC*, No 15-cv-3590, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017). That is particularly true where, as here, the New York bank accounts were set up on behalf of a foreign entity whose home is outside the United States—*i.e.*, a correspondent account. *See, e.g.*, *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.").

*Second*, the Trustee claims that IOM Nominees consented to personal jurisdiction in New York by signing Fairfield subscription agreements, which included a forum selection provision mandating that disputes "with respect to this [Subscription] Agreement and the Fund may be brought in New York." *See* AC ¶ 76. But courts have repeatedly held that this very clause cannot be used to establish jurisdiction in cases premised on *redemptions*, not *subscriptions*. Indeed, Judge Broderick of the Southern District of New York recently affirmed that "the forum selection clause [found in the Subscription Agreements] cannot establish the Bankruptcy Court's personal jurisdiction over the relevant [parties]" because claims to recover redemptions are not "with

respect to the Subscription Agreements" and thus do not trigger the forum selection clause.[17]  *See Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-cv-3911, 2022 WL 3644436, at *12 (S.D.N.Y. Aug. 24, 2022) (internal quotation marks omitted).  And, in any event, the Trustee is neither a party to the subscription agreement nor a third party beneficiary, and therefore cannot invoke the forum selection clause to establish jurisdiction.  *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, No. 15-cv-824, 2017 WL 476720, at *4–5 (S.D.N.Y. Feb. 2, 2017).

*Third*, the Trustee seeks to base jurisdiction in part on the actions of distinct legal entities in the Fortis corporate family, including "due diligence visits with Madoff in New York" and communications with Madoff, because IOM Nominees used or analyzed information collected in those interactions.  AC ¶¶ 86–87.  But allegations about other entities or transactions cannot be used to establish specific personal jurisdiction over a defendant.  *See Ford Motor Co.*, 141 S. Ct. at 1025 ("The plaintiff's claims … must arise out of or relate to the *defendant's* contacts with the forum.") (internal quotation marks omitted) (emphasis added); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 145 (S.D.N.Y. 2018) ("Under a specific jurisdiction analysis, 'defendants cannot be made to answer in this forum with respect to matters unrelated to the forum connections.'" (quoting *Waldman*, 835 F.3d at 341)).  And mere reliance on information collected by others in the U.S., even other entities within the same corporate family, is not nearly enough to allow this court to exercise personal jurisdiction.[18]  *See, e.g.*, *SPV OSUS*

---

[17] This Court has likewise acknowledged that "Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction . . . ."  *Multi-Strategy Fund*, 641 B.R. at 88 n.3.

[18] Moreover, the Trustee does not even allege that this information was used in connection with the investments in Fairfield at issue here; instead, the Trustee explicitly concedes that IOM Nominees was instead the administrator to other funds, AC ¶ 87.  *See Ford Motor Co.*, 141 S. Ct. at 1025 (explaining "there must be an affiliation between the forum and the underlying controversy" to establish specific jurisdiction) (internal quotation marks omitted).

*Ltd. v. Unicredit Bank Aus.*, No. 18-cv-3497, 2019 WL 1438163, at \*10 (S.D.N.Y. Mar. 30, 2019) (allegations that non-party owners of defendant investment managers "regularly traveled to New York City to meet with Madoff" and "manag[ed] the relationship" "*cannot be attributed to the[] . . . [d]efendants themselves* and are therefore not relevant to the Court's [specific] jurisdiction analysis") (emphasis added). In order to allege "personal jurisdiction by association," the plaintiff must show that "the subsidiary or affiliate is either an 'agent' or a 'mere department' of the foreign [entity]." *Id.* at \*8 (internal quotation marks omitted). The Trustee's conclusory allegation that IOM Nominees was part of a "global network" of entities does not come close to meeting this standard. *See, e.g.*, *Charles Schwab Corp.*, 883 F.3d at 86 (rejecting "sparse allegations of agency" as "too conclusory to make a prima facie showing of personal jurisdiction.").

**C.   The Exercise Of Personal Jurisdiction Does Not Comport With Fair Play And Substantial Justice**

Finally, even if this Court were to find that the Trustee has alleged sufficient facts establishing personal jurisdiction—and he has not—due process considerations, namely traditional notions of fair play and substantial justice, do not support the exercise of jurisdiction over IOM Nominees. When determining whether the assertion of jurisdiction comports with such considerations, courts consider: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; and (3) the plaintiff's interest in obtaining convenient and effective relief.[19] *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Here, the exercise of personal jurisdiction over IOM Nominees would be unreasonable and inconsistent with due process.

---

[19] Two additional factors—the interstate judicial system's interest in the most efficient resolution of the controversy, and the shared interest of the states in furthering substantive social policies—related directly to interstate relations and are not relevant here. *See Metro. Life Ins.*, 84 F.3d at 568.

Neither IOM Nominees nor FPFS IOM has, or has ever had, any employees in the US. *See Darroch Decl.* at ¶ 6. Nor has IOM Nominees ever maintained documents in the US. *Id.* at ¶ 12. Accordingly, any witnesses to IOM Nominees' internal deliberations and decisions reside overseas, as does the entirety of the relevant documentary evidence, and litigating here would place a significant burden on IOM Nominees and its current and former personnel. *See OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) (holding that litigating in forum would be a "significant" burden for "Canadian corporations who have no license to conduct business in [the forum], maintain no offices in [the forum], employ no agents in [the forum], and insure no [forum] residents"). Nor has the Trustee shown that New York has a greater interest in this dispute, which pertains to payments made from a BVI-based investment fund to a Cayman-based fund through an entity based in the Isle of Man, than any of these other fora.

And while this Court has recently held that the exercise of jurisdiction over certain defendants involved in litigation against the Trustee is reasonable because those defendants "ha[ve] actively participated in . . . litigation for over ten years," *Multi-Strategy Fund*, 641 B.R. at 88, that does not accurately describe the posture of this case. This case had been effectively dismissed, or otherwise idle, between Judge Bernstein's 2016 decision on extraterritoriality and the filing of the amended complaint six years later. Prior to that dismissal, the parties had been litigating the threshold issue of whether "whether SIPA and/or the Bankruptcy Code as incorporated by SIPA apply extraterritorially" to wholly foreign transfers like those here—at the specific direction of the Bankruptcy Court. *See* ECF No. 86. Indeed, all of the scheduling orders pertaining to those issues, most or all of which were submitted after negotiations with the Trustee and ordered by the Court, *expressly* provided that other issues, including personal jurisdiction, would not be "waive[d] or resolve[d]." *See, e.g.*, *In re Madoff Securities*, Case No. 12-mc-0115,

ECF No. 167 at ¶ 13 (Jun. 6, 2012 Order) (specifically preserving "all defenses based on lack of personal jurisdiction"); Case No. 10-5355 ECF No. 85 at ¶ 17 (Dec. 10, 2014 Order); Case No. 08-1789, ECF No. 16428 at ¶ 5 (July 24, 2017 Order).  Under such circumstances, relying on the prior procedural history of this case to justify the exercise of personal jurisdiction over IOM Nominees would result in a manifest injustice.

### III.    THE SUBSEQUENT TRANSFERS CANNOT BE RECOVERED BECAUSE THE COMPLAINT ESTABLISHES A DILIGENCE DEFENSE UNDER SECTION 550(B)

For the reasons explained in Section II.B.2 above, the actions of entities other than IOM Nominees cannot give rise to specific jurisdiction here.  But if the Court finds that jurisdiction exists based on the diligence performed by other entities in New York, that diligence would also then establish a defense under Section 550(b).  Section 550(b) of the Bankruptcy Code provides an absolute defense to subsequent transferees:  the Trustee may not recover from a transferee that takes for value, in good faith, and without knowledge of the voidability of the transfer avoided. 11 U.S.C. § 550(b).  While this is an affirmative defense, like all affirmative defenses, it may serve as an appropriate basis for dismissal if it can be established on the face of the complaint.  *See, e.g.*, *Official Comm. Of the Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 158 ("[A] complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint.") (internal quotation marks omitted); *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 395 (S.D.N.Y. 2011) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) if the defense appears on the face of the complaint.") (internal alterations and quotation marks omitted). Here, the Trustee's allegations, if attributed to IOM Nominees, establish on their face that IOM Nominees is entitled to protection under Section 550(b).

### A.    IOM Nominees Received The Transfers For Value

There can be no dispute that IOM Nominees provided value in exchange for the transfers at issue.  The Complaint concedes that the relevant transfers "represent redemptions of equity interests."  AC ¶¶ 3, 105.  It has been repeatedly held that the redemption of shares satisfies the "for value" prong of § 550(b).  *See, e.g.*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB), Adv. No. 10-05354 (SMB), 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020 (Bernstein, J.)) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").  And IOM Nominees is not alleged to have known that the redemption prices "were based on fictitious assets," so the Complaint establishes the "for value" prong on its face.  *Compare Picard v. Banque Syz & Co., SA*, 2022 WL 2135019, at *11 ("If [defendant] knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds 'for value' as is required under § 550.")  Thus, the "for value" prong is easily satisfied on the face of the Complaint.

### B.    The Transfers Were Received In Good Faith Because At A Minimum There Was A Diligent Inquiry

IOM Nominees also received the transfers in good faith, as defined under applicable law.  In its recent decision in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021), the Second Circuit laid out a three-step inquiry-notice standard to consider whether a subsequent transferee received a transfer in good faith.  12 F.4th at 191–92.  *First*, the Court must examine the facts the transferee subjectively knew.  *Id.* at 191.  *Second*, the Court must determine whether those facts "would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."  *Id.*  *Third*, the Court "must inquire whether 'diligent inquiry'" by the alleged transferee "'would have discovered the

fraudulent purpose' of the transfer." *Id.* at 192 (citation omitted). In other words, a transferee is entitled to the good faith defense if the facts it knew did not put it on inquiry notice *or* if it conducted a "reasonably diligent" investigation.[20] *Id.* at 191–92. "An objective 'reasonable person' standard applies [to the question of whether] the transferee conducted a reasonably diligent investigation after being put on inquiry notice." *Id.* at 192 (citation omitted). The adequacy of the investigation "naturally takes into account the disparate circumstances of differently-situated transferees." *Id.* at 195.

Here, the Trustee alleges that other Fortis legal entities twice "conducted due diligence visits with Madoff in New York" and that IOM Nominees incorporated the findings from that diligence into its decision-making, AC ¶ 86, that IOM Nominees reviewed the PPMs issued by the Fairfield Funds prior to subscribing, AC ¶¶ 74–75, and that it "maintained regular contact" with other individuals and entities "regarding BLMIS, including direct communications with BLMIS itself in New York," AC ¶ 87.

It is inappropriate to attribute the actions of other entities to IOM Nominees, for personal jurisdiction or any other purpose. But if they are so imputed, they establish IOM's reasonable diligence defense on the face of the Complaint. This is especially true when taking into account its particular circumstances, as *Citibank* requires: given IOM Nominees' role as a mere agent and conduit for another party (who did not even invest directly in BLMIS), and that it did not put any of its own money at risk in the Fairfield investments, the fact that it consulted the due diligence of its corporate affiliates, including multiple alleged on-site visits to BLMIS, that it reviewed the private placement memoranda, and that it allegedly kept tabs on BLMIS both directly and

---

[20] If this case survives this motion, IOM Nominees will demonstrate in discovery that it was not on inquiry notice of BLMIS's fraud.

indirectly, far exceeds a "reasonably diligent inquiry" into BLMIS. That it did not detect BLMIS's fraud in its role as Platinum's agent is hardly surprising given Madoff's "proficiency in covering up his scheme and deceiving the SEC and other financial professionals." *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc*., 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010).

## IV. THE TRUSTEE CANNOT RECOVER THE SUBSEQUENT TRANSFERS BECAUSE HE HAS NOT ALLEGED THAT THE INITIAL TRANSFERS ARE AVOIDABLE

Even if IOM Nominees was a "transferee" for purposes of Section 550(a) (and even if this Court had jurisdiction, and even if the transfers had not been received in good faith), that provision permits recovery from an "immediate or mediate transferee" only to the extent the initial transfer is avoidable under other sections of the Bankruptcy Code. *See* 11 U.S.C. § 550(a). The Trustee argues that the initial transfers here are avoidable pursuant to four provisions of the Bankruptcy Code: Section 544 (through the incorporation of §§ 273–279 of the New York Debtor & Creditor Law); Section 547 (as preferential transfers); Section 548(a)(1)(B) (as constructively fraudulent conveyances); and Section 548(a)(1)(A) (as an actual fraudulent conveyance). However, the Trustee has not pleaded that the initial transfers are avoidable, and the Amended Complaint must be dismissed for this reason as well.

*First*, the initial transfers are not avoidable under Bankruptcy Code Section 544, Section 547, or under Section 548(a)(1)(B) because they are protected by the statutory safe harbor codified in 11 U.S.C. § 546(e). That statute provides, in relevant part, that "the trustee may not avoid . . . a transfer made by or to (or for the benefit of) a . . . stockbroker, financial institution, [or] financial participant . . . in connection with a securities contract . . . except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e).[21] The Trustee has repeatedly conceded that the transfers made

---

[21] IOM Nominees, as an alleged subsequent transferee, can raise this safe harbor as a defense against the avoidance of the initial transfers, even if the initial transferee has not done so. *See*

between BLMIS and its feeder funds constituted payments made "by or to (or for the benefit of) a

. . . stockbroker, in connection with a securities contract." *See Picard v. ABN AMRO Bank

(Ireland) Ltd.*, Adv. No. 10-05355, ECF No. 214 at 6–7 (Bankr. S.D.N.Y. Oct. 18, 2022) (citing

*Picard v. Katz*, 462 B.R. 447, 451–53 (S.D.N.Y. 2011), and *Picard v. Greiff*, 476 B.R. 715, 720–

23 (S.D.N.Y. 2012)).   And although transfers do not qualify for the safe harbor if they were made

with "actual knowledge" of BLMIS's fraud, *see Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.

Sec. LLC*, No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), "actual knowledge"

is a high bar that the Trustee has not cleared in this case.   *Picard v. Avellino*, 557 B.R. 89, 113

(Bankr. S.D.N.Y. 2016) (defining "knowledge" as requiring "a state of mind in which a person has

no substantial doubt about the existence of a fact").   The Complaint here contains no allegations

about the Fairfield Funds' state of mind, and the allegations against Fairfield that the Trustee seeks

to incorporate by reference (AC ¶ 96) raise only the type of "red flags" that many courts have held

do not rise to the level of actual knowledge.   *Fairfield* Compl. ¶¶ 1–10, 79–313, 315–16; *see

Elendow Fund, LLC v. Rye Select Broad Mkt. XL Fund*, No. 10 Civ. 9061, 2013 WL 5179064, at

*5–6 (S.D.N.Y. Sept. 16, 2013) (explaining that "the red flags alleged here . . . do not show that

[BLMIS feeder fund] 'must have been aware' of the fraud").[22]

---

*Multi-Strategy Fund*, 641 B.R. at 92 ("where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds") (citation omitted).

[22] IOM Nominees recognizes that the Court's has held in other cases that the Trustee has adequately pleaded that the Fairfield Funds had the required knowledge.  *See, e.g.*, *Picard v. Barclays Bank (Suisse) S.A.,* Adv. No. 11-02569, ECF No. 140, at 13 (Bankr. S.D.N.Y. July 15, 2022) at 13; *see also Picard v. Fairfield Inv. Fund Ltd.*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).  Nonetheless, IOM Nominees contests that the Trustee has met his pleading burden—or that he can meet his burden of proof—through the allegations, or lack thereof, included or incorporated into the Complaint here.

*Second*, the initial transfers are also not avoidable under Section 548(a)(1)(A), because the Trustee has not adequately alleged that they were made "with actual intent to hinder, delay, or defraud[.]" 11 U.S.C. § 548(a)(1)(A). The burden to plead actual intent to defraud rests with the Trustee, and because it "constitutes fraud, it *must be* pled with specificity." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (emphasis added) (citation omitted). Nonetheless, the Trustee relies on the so-called "Ponzi scheme presumption" to avoid pleading BLMIS's state of mind at all. But this presumption has never been adopted by the Second Circuit, and the only Second Circuit judge to consider it recently, Judge Menashi, cast significant doubt on its continued application. *See Citibank,* 12 F.4th at 200–01 (Menashi, J., concurring).[23] The Trustee should not be permitted to invoke it here. Should the Trustee seek to invoke "badges of fraud," moreover, this too fails, and for the same reason. The Trustee must plead "badges of fraud" as to the specific transfers at issue; allegations that the debtor or initial transferee is a fraudster in general do not suffice. *Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468–69 (Bankr. S.D.N.Y. 2006) ("Allegations of fraudulent intent" must go to the "specific transfers challenged."). The Complaint contains no such details about the transfers themselves, and the Trustee therefore may not avoid the transfers at issue pursuant to Section 548(a)(1)(A). Thus, the initial transfers are not avoidable on any basis asserted by the Trustee, and the Trustee's case must be dismissed.

---

[23] This Court explained in a recent decision that it found Judge Menashi's analysis "unpersuasive." *Picard v. Citibank, N.A.*, Adv. No. 10-05345, 2022 WL 4493234, at *4 (Bankr. S.D.N.Y. Sept. 27, 2022). That decision is currently the subject of a request for an interlocutory appeal, *Picard v. Citibank, N.A., et al.*, Adv. No. 10-05345, ECF No. 248 (Bankr. S.D.N.Y. Nov. 2, 2022), on appeal, 22-CV-09597, ECF No. 1 (S.D.N.Y. Nov. 9, 2022), and IOM Nominees reserves the right to challenge the Trustee's use of the presumption further upon the determination of that appeal.

## CONCLUSION

For each of the foregoing reasons, the Trustee's Amended Complaint should be dismissed

as to IOM Nominees, with prejudice.

Dated:  January 12, 2023                    Respectfully submitted,
New York, New York

                                                      LATHAM & WATKINS LLP

By:    /s/ Christopher R. Harris

                                                      Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
Email: thomas.giblin@lw.com

*Attorneys for IOM Nominees*