**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Proc. No. 08-01789 (CGM) |
| *Plaintiff-Applicant,* | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| *Defendant.* | |

In re

BERNARD L. MADOFF,

*Debtor.*

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Proc. No. 12-01697 (CGM) |
| *Plaintiff,* | |
| v. | |
| ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED, | |
| *Defendant.* | |

**PLATINUM ALL WEATHER FUND LIMITED'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND .........................................................................................2

    A.   Factual Allegations ........................................................................2

    B.   Procedural History ........................................................................3

LEGAL STANDARD ON MOTION TO DISMISS....................................5

ARGUMENT ..............................................................................................6

I.     THE TRUSTEE HAS NOT MET HIS BURDEN OF PLEADING PERSONAL
       JURISDICTION OVER PAWFL ...............................................................6

II.    THE TRUSTEE'S CLAIMS ARE BARRED BY THE BANKRUPTCY
       CODE'S SAFE HARBOR UNDER 11 U.S.C. § 546(E) .............................11

    A.   The Alleged Initial Transfers Were Made By, To, and/or For the Benefit
        of Entities Covered by Section 546(e) .............................................12

        1.   The Alleged Initial Transfers Were Made by a Stockbroker. ............12

        2.   The Alleged Initial Transfers Were Made to a Financial
           Institution. ............................................................................12

        3.   The Alleged Initial Transfers Were "Transfers In Connection
           With A Securities Contract." ....................................................12

        4.   The Alleged Initial Transfers Were "Settlement Payments."..............13

    B.   The Trustee Has Not Alleged that PAWFL Had Actual Knowledge of the
        Madoff/BLMIS Fraud..................................................................13

    C.   The Trustee Has Failed to Allege Actual Fraudulent Intent as Required by
        Section 548(a)(1)(A) and Rule 9(b) for Two Year Transfers ...........15

III.   THE TRUSTEE'S OWN PLEADINGS ESTABLISH PAWFL'S GOOD-
       FAITH DEFENSE ...................................................................................17

    A.   PAWFL Acted in Good Faith and Could Not Have Discovered Madoff's
        Fraud Where So Many Others Failed ..............................................17

IV.   THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO
       PLEAD THAT PAWFL RECEIVED BLMIS CUSTOMER PROPERTY .................19

V.    THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD THE
       AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND
       ADOPTION OF THE ENTIRE FAIRFIELD SECOND AMENDED
       COMPLAINT BY REFERENCE IS IMPROPER .......................................23

CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009) .....................................................9

*Anwar v. Fairfield Greenwich Ltd.*,
  286 F.R.D. 258 (S.D.N.Y. 2012) ...........................................18

*Arizona v. California*,
  460 U.S. 605 (1983) ...............................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................5, 20, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................5, 20

*BLD Prods., LLC v. Viacom, Inc.*,
  2011 WL 1327340 (S.D.N.Y. Mar. 31, 2011) .......................18

*In re Bozel S.A.*,
  434 B.R. 86 (Bankr. S.D.N.Y. 2010) .....................................11

*In re Caremerica, Inc.*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009) ....................................20

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ......................................................6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .................................................................6

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
  No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) ...........................8

*Fairfield Sentry Ltd. v. Citco Global Custody NV*,
  No. 19-1122, ECF No. 19 (Bankr. S.D.N.Y. Nov. 26, 2019) ..................................21

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam, et al. (In re Fairfield Sentry Ltd.)*,
  No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018).......................8, 9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  No. 10- 03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...................................12

*Finn v. Alliance Bank*,
    860 N.W.2d 638 (Minn. 2015).............................................................................16

*Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*,
    No. 19-CV-7007 (JPO), 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020)..................................22

*Gilmore v. Rivera*,
    2014 WL 1998227 (S.D.N.Y. May 14, 2014) ........................................................19

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)..................................10

*Jones v. Bock*,
    549 U.S. 199 (2007).........................................................................................19

*Lavazza Premium Coffees Corp. v. Prime Line Distrib. Inc.*,
    575 F. Supp. 3d 445 (S.D.N.Y. 2021).....................................................................9

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings Inc.)*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) .....................................................................6

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...........................................................16, 17

*Lyon v. Eiseman (In re Forbes)*,
    372 B.R. 321 (B.A.P. 6th Cir. 2007)......................................................................19

*Manko Window Sys., Inc. v. Prestik*,
    No. 16-2818-JAR-JPO, 2017 WL 4355580 (D. Kan. Sept. 29, 2017) ....................................11

*McKee Elec. Co. v. Rauland-Borg Corp.*,
    20 N.Y.2d 377 (1967) ........................................................................................9

*Merrill v. Abbott (In re Independent Clearing House Co.)*,
    77 B.R. 843 (D. Utah 1987) (en banc) ..................................................................16

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
    No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010)...24

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)....................................................................................5

*Papasan v. Allain*,
    478 U.S. 265 (1986)...........................................................................................5

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)................................................................................22

*Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Investment Securities LLC)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......................................................................8

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ........................................................................... *passim*

*Picard v. Fairfield Sentry Ltd., et al. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 09-1239 ECF No. 286 ............................................................................. *passim*

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014) ............................................................................12, 13

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019) ....................................................................16

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................15

*Picard v. Multi-Strategy Fund Ltd.*,
    No. 22-cv-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ............................14

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...............................................................19, 20

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ...............................................................................4, 23

*Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co., LLC)*,
    964 F.3d 958 (10th Cir. 2020) ...............................................................................19

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................................................................5

*Sapia v. Home Box Office, Inc.*,
    No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ..................22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ......................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    476 B.R. 715 (S.D.N.Y. 2012) ...............................................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013) .................................................................................23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ......................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......................................11, 14

*Shaffer v. Heitner*,
433 U.S. 186 (1977)............................................................................................................6

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005).........................................................................................15, 17

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (S.D.N.Y. 2007)...............................................................................................19

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015).................................................................................9

*SPV OSUS Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)...............................................................................................6

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010)...............................................................................10

*U.S. v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ........................................................................24, 25

*Walden v. Fiore*,
571 U.S. 277 (2014)..................................................................................................7, 8, 10

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016)................................................................................7

**Statutes**

11 U.S.C. § 546(e) .................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) .......................................................................................... *passim*

11 U.S.C. § 550(a)(2)...................................................................................................11, 19

11 U.S.C. § 550(b) ...........................................................................................................17

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1357 (3d ed. 2004) ...........................................................................................................5

CPLR § 302(a)(1) ............................................................................................................10

Fed. R. Civ. P. 12(b)(6)......................................................................................................5

vi

Fed. R. Civ. P. 8(a) ........................................................................................................25

Fed. R. Civ. P. 9(b) ...........................................................................................14, 15, 17

Fed. R. Civ. P. 12(b)(2)......................................................................................................6

Fed. R. Civ. P. 10(c) .......................................................................................................25

Defendant Platinum All Weather Fund Limited ("PAWFL") submits this memorandum of law and the accompanying declaration of Lucas B. Barrett (the "Barrett Declaration") in support of its motion to dismiss the Amended Complaint (ECF No. 141) (the "Amended Complaint" or "Am. Compl.")[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Defendant PAWFL is one of dozens of "subsequent transferees" against whom the Trustee has filed a cookie-cutter complaint to recover purportedly fraudulent transfers that allegedly originated with BLMIS.

PAWFL never had an account with BLMIS. Instead, PAWFL is alleged to have bought shares in a mutual fund called Fairfield Sentry Limited ("Sentry") via defendant Fortis (Isle of Man) Nominees Limited ("Fortis IOM"). Sentry, in turn, is alleged to have entrusted most, but not all, of its money to BLMIS.

The Trustee does not allege that PAWFL was in league with Madoff. He does not allege that PAWFL knew BLMIS was operating a Ponzi scheme, willfully turned a blind eye to his Ponzi scheme, or was even on inquiry notice of the Ponzi scheme. He does not allege that PAWFL ever met Madoff or was responsible for conducting diligence on Madoff. Nor does he allege that PAWFL breached any duty to anyone.

The Court should dismiss the Complaint for five independent reasons:

---

[1] Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01697 (CGM).

*First*, the Amended Complaint fails to allege facts sufficient to support personal jurisdiction over PAWFL, a foreign entity that invested with a foreign fund. *Second*, the Complaint fails to state a subsequent transferee claim against PAWFL because Section 546(e)'s safe harbor protects the alleged transfers from avoidance. *Third,* the Trustee's own pleadings establish that PAWFL has a good-faith defense. *Fourth,* the Complaint fails to plead the avoidability of the alleged Initial Transfers and instead improperly seeks to incorporate by reference allegations contained in a separate complaint against numerous nonparties to this adversary case. *Fifth,* the Complaint lacks plausible allegations that PAWFL received BLMIS customer property. Accordingly, the Amended Complaint should be dismissed.[2]

## BACKGROUND

This action is one of many in which the Trustee, appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, seeks to recover alleged subsequent transfers that foreign defendants allegedly received from foreign investment funds, such as Sentry.

### A. Factual Allegations

Defendant PAWFL is a foreign entity organized under the laws of the Cayman Islands. Am. Compl. ¶ 56. According to the Amended Complaint, PAWFL was managed by non-party Platinum Capital Management Ltd., which was headquartered in London. *Id.* ¶ 57.

Defendant Fortis IOM is a foreign entity incorporated and organized under the laws of the Isle of Man. *Id.* ¶ 58. The Amended Complaint asserts that Fortis IOM was a wholly-owned subsidiary of non-party Fortis Prime Fund Solutions (Isle of Man) Limited. *Id.* ¶ 60. Fortis IOM

---

[2] PAWFL is aware that this Court has denied certain motions to dismiss filed by defendants in other adversary proceedings who have moved on similar grounds. Nevertheless, PAWFL respectfully requests that the Court consider the arguments set forth in this motion, and seeks to preserve its rights.

is alleged to have served as administrator for PAWFL's investments in Sentry "and, accordingly, acted as a [sic] Platinum's agent." *Id.* ¶ 59.

PAWFL is not alleged to have been a BLMIS customer. Rather, PAWFL is alleged to have invested in Sentry through Fortis IOM, and Sentry, in turn, is alleged to have entrusted most, but not all, of its money to BLMIS. The Trustee alleges that it was Fortis IOM that "conducted due diligence visits with Madoff." *Id.* ¶ 86. The Trustee further alleges that it was Fortis IOM that completed subscription agreements with Sentry and made redemption requests. *Id.* ¶ 59.

According to the Amended Complaint, PAWFL "and/or" Fortis IOM received $103,541,099 of subsequent transfers of customer property initially transferred by BLMIS. *Id.* ¶ 99. Fortis IOM allegedly received an additional $1,063,953 of subsequent transfers of customer property as well. *Id.*

The Amended Complaint contains no suggestion that PAWFL knew Madoff was operating a Ponzi scheme, willfully turned a blind eye to his Ponzi scheme, or was even on inquiry notice of the Ponzi scheme. Nor does the Trustee plead that PAWFL received any alleged subsequent transfer from Sentry in bad faith.

### B. Procedural History

The SIPC commenced this SIPA liquidation proceeding on December 11, 2008. Am. Compl. ¶¶ 11–13. PAWFL has not filed a proof of claim in that proceeding.

The Trustee and the Fairfield Liquidators entered into a settlement agreement (the "Fairfield Settlement Agreement") on or about May 9, 2011 that, among other things, provides for the sharing of recoveries on the Trustee and Fairfield Liquidators' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. *See Picard v. Fairfield,* (Adv. Pro. No. 09-01239) (ECF No. 69-2) (Ex. E to Barrett Decl.).

3

On June 6, 2012, the Trustee filed the initial complaint and commenced this action against Defendants seeking, *inter alia*, to recover transfers that PAWFL "and/or" Fortis IOM allegedly received from Sentry. *See* ECF No. 1. Soon after the action was commenced, the District Court withdrew the reference of this and related actions for the purpose of addressing various gating issues. The District Court subsequently referred this case back to the Bankruptcy Court in July 2014. *See* ECF No. 56.

PAWFL then moved to dismiss this action on the ground that the Trustee's claim is an improper extraterritorial application of the Bankruptcy Code. Similar motions were made in approximately 90 other cases presenting the same issue. By decision dated March 3, 2017 (ECF No. 120), the Bankruptcy Court granted the extraterritoriality motion and this action was dismissed. On February 25, 2019, the Second Circuit reversed in *In re Picard*, 917 F.3d 85 (2d Cir. 2019), and following the denial of a petition for certiorari in June 2020, the Second Circuit issued its mandate vacating the judgment, with the case returned to this Court, ECF No. 130.

More than a decade after filing its initial complaint, on November 3, 2022, the Trustee filed the Amended Complaint, ECF No. 141. The Amended Complaint contains a single claim under Sections 105 and 550 of the Bankruptcy Code and applicable provisions of SIPA for "Recovery of Subsequent Transfers." Am. Compl. ¶¶ 108–111. The only allegation in the Amended Complaint pertaining to the receipt of BLMIS customer property by PAWFL is that "Defendants Platinum **and/or** Fortis IOM received at least $103,541,099 in subsequent transfers of BLMIS customer property" (emphasis added). *Id*. ¶ 3. Moreover, the Amended Complaint lacks any specific allegations about the initial transfers from BLMIS to Sentry (the "Initial Transfers"); rather, it purports to incorporate by reference the allegations of the Fairfield Second Amended Complaint in the Trustee's case against various parties related to Sentry. *Id*. ¶ 96 (purporting to

incorporate *Picard v. Fairfield Sentry Ltd., et al. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 09-1239 ECF No. 286 (the "Fairfield Second Amended Complaint")).

## **LEGAL STANDARD ON MOTION TO DISMISS**

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely," *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

Defenses that appear on the face of the complaint are properly before the Court on a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 708–13 (3d ed. 2004) (explaining that a complaint may be dismissed if the plaintiff alleges facts that, taken as true, establish an affirmative defense).

5

To survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a prima facie showing that jurisdiction exists." *Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

## ARGUMENT

## I.    THE TRUSTEE HAS NOT MET HIS BURDEN OF PLEADING PERSONAL JURISDICTION OVER PAWFL

The Amended Complaint should be dismissed for failure to plead sufficient facts establishing personal jurisdiction over PAWFL, a foreign entity that allegedly invested in a foreign fund via another foreign entity. At the motion to dismiss stage, the Trustee has the burden of pleading personal jurisdiction and thus "must make a prima facie showing that jurisdiction exists" over a defendant, consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotations omitted).

There are no allegations in the Amended Complaint that PAWFL is incorporated or headquartered in New York or, for that matter, in the United States. Nor does the Trustee even attempt to allege that the Court has general jurisdiction. Thus, there is no general jurisdiction over PAWFL. *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014).

The Court also lacks specific personal jurisdiction over PAWFL. To exercise specific jurisdiction over a defendant, due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). The minimum contacts sufficient to support specific jurisdiction focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted)

(emphasis in original). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum State." *Walden*, 571 U.S. at 284. Moreover, in this case, the Trustee must establish the Court's jurisdiction over PAWFL *for each individual transfer* it seeks to recover. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and citations omitted).

Here, the Trustee cannot satisfy his pleading burden with blanket, conclusory allegations that PAWFL "purposely availed [itself] of the laws and protections of the United States and the State of New York," "knowingly accepted the rights, benefits, and privileges of conducting business in the United States and the State of New York," and "maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." Am. Compl. ¶¶ 68–69. These allegations are no more than a recitation of the jurisdictional test and, as such, are an insufficient basis for personal jurisdiction. *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 137 (Bankr. S.D.N.Y. 2016) ("[C]onclusory allegations are not enough to establish personal jurisdiction.") (internal quotations and citations omitted).[3]

*Walden* forecloses the theory of jurisdiction endorsed by Judge Lifland a decade ago in *Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Investment Securities LLC)*, 480 B.R. 501, 516–19 (Bankr. S.D.N.Y. 2012). In that case, Judge Lifland held that the defendant's

---

[3] The allegation that PAWFL obtained the benefit and protections of New York law when Sentry invested in BLMIS is belied by this Court's holding that parties such as PAWFL that did not have accounts with BLMIS could not assert claims in the SIPA proceeding. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 290–91 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv. Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

investment with Sentry was sufficient to establish personal jurisdiction with respect to claims arising from the liquidation of BLMIS on the ground that the defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in . . . Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Id.* at 517. But as *Walden* makes clear, Sentry's contacts with the forum, even if foreseeable to a defendant, are not in and of themselves sufficient to establish jurisdiction over the defendant.

Nor can jurisdiction be based on the Trustee's allegation that "Fortis IOM, individually and on behalf of Platinum," entered into subscription agreements with Sentry. Am. Compl. ¶¶ 74-75. Even accepting the allegation that Fortis IOM acted on behalf of PAWFL as well as itself, the alleged subscription agreements do not support jurisdiction over PAWFL in this case. The Trustee is not a party to those agreements and cannot invoke them as a basis for personal jurisdiction. *See Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, No. 15-cv-824 (RJS), 2017 WL 476720, at *2, 4, 5 (S.D.N.Y. Feb. 2, 2017). Indeed, in *Fairfield I*, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants to personal jurisdiction. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam, et al. (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). Specifically, this Court held that the New York choice-of-forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Id.* at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

The Trustee has made no factual allegations to suggest that PAWFL should have foreseen that a nonparty to the subscription agreement would seek to enforce any of its terms.  Nor are the Trustee's claim under the Bankruptcy Code in any way predicated on the terms of the subscription agreement.  This is not a dispute regarding PAWFL's performance under the contract, and the Trustee was not and has not alleged he was a third-party beneficiary of subscription agreement. Accordingly, the Trustee may not enforce any forum selection clause against PAWFL.  *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (finding that non-signatories to an agreement cannot be bound by agreement's forum selection clause absent rare exceptions not applicable here); *Lavazza Premium Coffees Corp. v. Prime Line Distrib. Inc.*, 575 F. Supp. 3d 445, 459–61 (S.D.N.Y. 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Furthermore, an alleged meeting in New York does not establish jurisdiction.  While the Trustee vaguely asserts that unidentified Platinum "representatives" met with FGG "representatives" in New York regarding transactions with "the Fairfield Funds," the Trustee makes reference to only a single meeting between an "Executive Director of *Platinum Management*"—a separate entity from PAWFL—and "Scott Nevin of FGG." Am. Compl. ¶ 85 (emphasis added). In any case, an alleged meeting in New York by "representatives" of PAWFL does not establish that PAWFL purposefully availed itself of the privilege of doing business in New York.  *See, e.g., SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170–71 (S.D.N.Y. 2015) (no personal jurisdiction where defendants had only "sporadic or indirect contacts with the United States"), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New York and

9

spent one day there conferring with plaintiff over contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)).

The Amended Complaint's allegation that "Defendants" somehow used a New York-based bank account to receive redemption payments (Am. Compl. ¶ 89) is similarly insufficient to confer personal jurisdiction over PAWFL. *See Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants based on alleged transmission of information and funds "to and from BLMIS"; such contacts were "incidental consequences of fulfilling a foreign contract [that] are insufficient to 'project' the Foreign Defendants into New York" and "do not amount to 'purposeful availment' of the laws of" the forum); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (same); *cf. Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases)).

Nor can the Trustee base jurisdiction over PAWFL on the alleged contacts of Fortis IOM's affiliates with the forum. *See, e.g.*, Am. Compl. ¶ 87 (alleging that Fortis IOM collaborated with its New York affiliate in relation to BLMIS). Such "attenuated contacts" are insufficient to create jurisdiction. *Walden*, 571 U.S. at 286.

Finally, the exercise of personal jurisdiction over PAWFL would be unreasonable under the Due Process Clause to the Fifth Amendment to the Constitution. "In addition to the minimum contacts analysis, due process requires courts to consider the reasonableness of subjecting the defendant to personal jurisdiction to ensure that it comports with 'traditional notions of fair play and substantial justice.'" *In re Bozel S.A.*, 434 B.R. 86, 100 (Bankr. S.D.N.Y. 2010) (quoting

*Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Here, requiring PAWFL, a foreign entity, to defend an action in the United States, with respect to investments in a BVI entity, administered through an Isle of Man entity, would be a significant and unreasonable burden. By contrast, the Trustee is armed with virtually unlimited resources and has availed himself of the opportunity to sue all over the world.

Accordingly, there is no basis for asserting jurisdiction over PAWFL, specific or otherwise, and the Amended Complaint should be dismissed.[4]

## II.    THE TRUSTEE'S CLAIMS ARE BARRED BY THE BANKRUPTCY CODE'S SAFE HARBOR UNDER 11 U.S.C. § 546(E)

The Trustee asserts claims under Bankruptcy Code Section 550(a), which provides that avoided transfers can be recovered from a subsequent "transferee of such initial transferee." 11 U.S.C. § 550(a)(2).

Under Section 546(e), a trustee may not avoid a transfer "made by or to (or for the benefit of)" a qualifying entity, including a "stockbroker, financial institution, financial participant, or securities clearing agency" "in connection with a securities contract," or a "settlement payment," except under Section 548(a)(1)(A), which applies to intentional fraudulent conveyance claims. *See* 11 U.S.C. § 546(e).

As an alleged subsequent transferee, PAWFL is entitled to raise a Section 546(e) defense. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154 ("*Cohmad*"), at *10 (S.D.N.Y. Apr. 15, 2013) ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e).").

---

[4] *See Manko Window Sys., Inc. v. Prestik*, No. 16-2818-JAR-JPO, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) (granting motion to dismiss "because [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction").

11

**A.   The Alleged Initial Transfers Were Made By, To, and/or For the Benefit of Entities Covered by Section 546(e)**

**1.   The Alleged Initial Transfers Were Made by a Stockbroker.**

The District Court already found that BLMIS is a stockbroker for purposes of Section 546(e).  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014) ("[E]ven assuming the truth of the allegation that [BLMIS] never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.").

**2.   The Alleged Initial Transfers Were Made to a Financial Institution.**

In addition, Judge Bernstein already held that Sentry and the other Fairfield funds are "financial institutions within the meaning of 11 U.S.C. § 546(e)" as "customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made."  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10- 03496, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020).  That holding applies with equal force here, because the Trustee alleges that the Initial Transfers were made from BLMIS accounts entitled "Citco Global Custody N V FBO Fairfield Sentry Ltd." *See* Am. Compl. Ex. A.

**3.   The Alleged Initial Transfers Were "Transfers In Connection With A Securities Contract."**

The Second Circuit has held that account opening documents of BLMIS customers constituted securities contracts for purposes of Section 546(e).  *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 418 (2d Cir. 2014).  Insofar as Sentry

"maintained direct customer accounts with BLMIS," it held securities contracts with BLMIS. Am. Compl. ¶ 2. The alleged Initial Transfers from Sentry's BLMIS accounts were "in connection with" those securities contracts. As the Second Circuit has held, "Section 546(e) only requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected to an actual securities transaction." *Picard v. Ida Fishman Revocable Tr.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014). Thus, the alleged Initial Transfers easily satisfy this "low bar." *Id.* at 422.

Additionally, according to the Trustee's own allegations, the transfers at issue were made in connection with the independent securities contracts between Sentry and the Defendants. Indeed, the Amended Complaint provides that, "[t]he Subsequent Transfers were obtained by Defendants by redeeming shares owned in BLMIS feeder funds," Am. Compl. ¶ 2, pursuant to subscription agreements entered by Fortis IOM "individually, and on behalf of Platinum," *id.* ¶¶ 74–75. Therefore, on the face of the Amended Complaint, the alleged Initial Transfers were made in connection with securities contracts.

### 4. The Alleged Initial Transfers Were "Settlement Payments."

Finally, as the Second Circuit held in *Fishman*, "[e]ach time a customer requested a withdrawal from BLMIS . . . each transfer in respect of such an order or request constituted a settlement payment." 773 F.3d at 422 (citing *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors Recovery Corp.)*, 651 F.3d 329, 334 (2d Cir. 2011)). That reasoning applies here, and is an additional basis to protect the Initial Transfers under Section 546(e).

### B. The Trustee Has Not Alleged that PAWFL Had Actual Knowledge of the Madoff/BLMIS Fraud

The absence of any allegation that PAWFL had actual knowledge of the Madoff/BLMIS fraud should be fatal to the Trustee's claims. Nevertheless, the Trustee may argue that the Section

546(e) safe harbor is inapplicable since the initial transferee, Sentry, allegedly knew of Madoff's fraud and, as support, the Trustee may seek to rely on the *Cohmad* court's conclusion that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." 2013 WL 1609154, at *7. Yet the allegation about Sentry's knowledge, even if true, should be irrelevant to the Section 546(e) analysis. There is no statutory carveout in Section 546(e) for this situation. PAWFL respectfully submits that there is nothing in Section 546(e) that supports creating an exception to its applicability based on the knowledge of any transferee.[5]

The Trustee has not pleaded (or even attempted to plead) that PAWFL knew of Madoff's fraud. If the Trustee seeks to invoke an exception to the safe harbor based on actual knowledge, it would be incumbent on him to plead actual knowledge. The Amended Complaint, however, is devoid of any allegation that PAWFL knew of Madoff's fraud.

Because PAWFL is not alleged to have had actual knowledge of the Madoff fraud, PAWFL is entitled to the full protection that Section 546(e) affords.[6] The only exception from Section 546(e)'s safe harbor is a claim under Section 548(a)(1)(A), but for the reasons set forth below PAWFL asserts any alleged Section 548(a)(1)(A) claims also fail.

---

[5] This is an open question at the Circuit level and PAWFL expressly preserves it. Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

[6] PAWFL is aware that on November 3, 2022, Judge Rakoff entered an Opinion and Order denying interlocutory review of the Court's decisions on certain other defendants' motions to dismiss that were based on, *inter alia*, the argument that the "Trustee's failure to allege their knowledge of fraud is fatal to his claims at the pleading stage." *See Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-06502, 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). PAWFL reserves all rights and arguments regarding what the Trustee is required to plead to allege that Section 546(e) does not apply and the applicability of Section 546(e).

14

**C.  The Trustee Has Failed to Allege Actual Fraudulent Intent as Required by
Section 548(a)(1)(A) and Rule 9(b) for Two Year Transfers**

The Trustee may assert that the alleged transfers do not fall under Section 546(e) because

of Section 548(a)(1)(A).  Section 548(a) is the only exception to the safe harbor rule, and that

provision allows the Trustee to avoid transfers made "within 2 years before" the bankruptcy

petition was filed if the debtor "made such transfer . . . with actual intent to hinder, delay, or

defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A).

The Trustee, however, has failed to properly plead the avoidability of any Initial Transfers under

Section 548(a)(1)(A), and cannot remove *any* part of the alleged transfers from the Section 546(e)

safe harbor.

The Amended Complaint states that "[i]f Defendants challenge the avoidability of the

Fairfield Sentry Initial Transfers, the Trustee seeks a judgment . . . declaring that such transfers

are  avoidable" pursuant to *inter alia*, Bankruptcy Code Section 548(a).  Am. Compl. at 23.

Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with

specificity, as required by Fed. R. Civ. P. 9(b)."  *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In*

*re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *see also Picard v. Merkin (In re Bernard L.*

*Madoff Inv. Sec. LLC)*, 440 B.R. 243, 258 (Bankr. S.D.N.Y. 2010) ("To adequately plead intent,

the Trustee must allege facts that give rise to a strong inference of fraudulent intent.") (internal

quotations and citations omitted).

The Amended Complaint is devoid of sufficiently specific allegations regarding BLMIS's

actual intent to hinder, delay, or defraud.  In the absence of such allegations, it appears the Trustee

may be seeking to rely on the "Ponzi scheme presumption," a judicially created shortcut that

bypasses pleading requirements and "presume[s] that transfers from a debtor in furtherance of a

Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt."  *Picard v.*

15

*Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 12 F.4th 171, 201 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) (Menashi J., concurring). Although the Ponzi scheme presumption has been accepted by this Court and the District Court in actions commenced by the Trustee, Judge Menashi's recent thoughtful concurring opinion in *Citibank* suggests that the issue is not settled at the Circuit level.[7] The opinion offered several cogent reasons why the Ponzi scheme presumption represents a "questionable" application of fraudulent transfer statutes. *Id.* at 202.

*First*, Section 548(a)(1)(A) does not mention Ponzi schemes, much less authorize courts to relax the Trustee's pleading burden in such cases. *Second*, fraudulent transfer cases warrant an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota's UFTA provision that is virtually identical to Section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring). *Third*, the Ponzi scheme presumption is based on the hypothesis that *whenever* a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors," *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (en banc), but that premise may not hold, especially in the later stages of

---

[7] Although the Second Circuit has on occasion applied the presumption "when its application was uncontested," *Citibank*, 12 F.4th at 202 n.7 (Menashi, J., concurring), it has not sanctioned use of the presumption in any case where the issue was actually litigated. Nor has the Supreme Court recognized the presumption. Although the Trustee may argue that the "Ponzi scheme presumption" is the "law of the case" because it has been applied in other adversary proceedings within the BLMIS liquidation, the "law of the case" doctrine does not create an absolute bar to reconsideration of the issue—particularly now that a Second Circuit judge has, for the first time, trenchantly questioned the viability of the "presumption." *See generally Arizona v. California*, 460 U.S. 605, 618 (1983) ("[L]aw of the case is an amorphous concept" which "does not limit the tribunal's power.").

a long-running scheme like Madoff's, which began in the late 1980s or early 1990s. *See Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019). *Fourth*, the Ponzi scheme presumption, as Judge Menashi explained, has been rejected by courts "on the ground that it improperly treats preferences as fraudulent transfers," *Citibank*, 12 F.4th at 201, thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences." *Id*. at 202. *See also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001). *Finally*, the Ponzi scheme presumption conflicts with Rule 9(b), which requires particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g.*, *In re Sharp*, 403 F.3d at 56. If such exceptions are to be created, Congress—not the courts—should create them. *See In re Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J., concurring)).

Without the "Ponzi scheme presumption," the Amended Complaint alleges little to nothing with respect to BLMIS's intent in making specific "Two-Year Fairfield Initial Transfers"—and certainly not that they were made with the requisite actual fraudulent intent. Because the Trustee has not adequately pleaded such intent, any alleged Section 548(a)(1)(A) claims must fail.

## III. THE TRUSTEE'S OWN PLEADINGS ESTABLISH PAWFL'S GOOD-FAITH DEFENSE

The Trustee's claims also fail in their entirety for the independent reason that PAWFL's "good faith" defense under Section 550(b)—that PAWFL took in good faith, and without knowledge of the voidability of the transfer—is evident from the face of the Amended Complaint itself. *See* 11 U.S.C. § 550(b).

### A. PAWFL Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed

The Second Circuit recently held that, in evaluating a claim of good faith, courts must examine three factors:

1. "[W]hat facts the defendant knew; this is a subjective inquiry, not a theory of constructive notice."

2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

3. "[W]hether diligent inquiry [by the transferee] would have discovered the fraudulent purpose of the transfer."[8]

Thus, even if a transferee knows of facts that put it on inquiry notice of a transfer's underlying fraudulent purpose, the transferee still takes the transfer in good faith unless a diligent inquiry would have uncovered that fraudulent purpose. Here, the Amended Complaint alleges facts demonstrating that a diligent inquiry would not have revealed Madoff's fraud, thus establishing PAWFL's good faith.

The Fairfield Second Amended Complaint, which the Trustee seeks to incorporate by reference, acknowledges that in 2006 the SEC launched an investigation to determine whether BLMIS was a Ponzi scheme or engaged in other illegal activity, yet even the SEC—with its powerful investigative tools, expansive subpoena powers, and broad resources—was stymied by BLMIS and Sentry insiders seeking to hinder the government investigation. Fairfield Second Am. Compl. ¶¶ 166, 236–262. In view of this, the only plausible inference to draw from the Trustee's pleading is that PAWFL, which lacked the resources and power of one of the federal government's most potent regulatory agencies, could not reasonably have been expected to succeed where all others had failed. *See BLD Prods., LLC v. Viacom, Inc.*, 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD*

---

[8] *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 191–92 (2d Cir. 2021) (internal quotations and citations omitted).

18

*Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) ("[T]his Court need not accept

factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint.").[9]

Because the Fairfield Second Amended Complaint affirmatively pleads facts showing that

a diligent inquiry would not have uncovered the transfers' fraudulent purpose, dismissal of the

Amended Complaint against PAWFL is warranted as a matter of law. *See Jones v. Bock*, 549 U.S.

199, 215 (2007) (explaining that "a particular ground for opposing a claim may be the basis for

dismissal for failure to state a claim" where "the allegations in the complaint suffice to establish

that ground."); *Gilmore v. Rivera*, 2014 WL 1998227, at \*2 (S.D.N.Y. May 14, 2014) ("Dismissal

under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is

apparent from the face of the complaint.").

## IV.   THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD THAT PAWFL RECEIVED BLMIS CUSTOMER PROPERTY

The Amended Complaint fails to meet the requirements of Section 550(a), because it fails

to tie any BLMIS transfer to Sentry with any transfers that PAWFL purportedly received.

Under Section 550(a)(2), a trustee may recover from a subsequent transferee only the

property or value of the property that was transferred in the initial transfer. *Rajala v. Spencer Fane

LLP (In re Generation Res. Holding Co., LLC)*, 964 F.3d 958, 965 (10th Cir. 2020). Thus, in order

to state a claim under Section 550(a), "the plaintiff has the burden of tracing funds it claims to be

property of the estate." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R.

---

[9] Further supporting PAWFL's good faith is the allegation that Fortis IOM, not PAWFL, conducted due diligence on BLMIS. There is no suggestion that Fortis IOM put PAWFL on inquiry notice of fraud. And while the Trustee describes several hindsight indicators that BLMIS was engaged in fraud, *see e.g.* Am. Compl. ¶¶ 38–44, 46–49, the Trustee does not suggest that PAWFL was aware of any of these facts at the time of the alleged redemptions or that these facts support an inference that PAWFL was on inquiry notice of BLMIS's fraud. *See Anwar v. Fairfield Greenwich Ltd.*, 286 F.R.D. 258, 260 (S.D.N.Y. 2012) (dismissing claims where complaint failed to "allege facts plausibly suggesting that defendants were aware of these red flags" or that if they were, they "translated those red flags into a suspicion of fraud"); *see also Citibank*, 12 F.4th at 191 ("[A] court must examine what facts the defendant knew; this is a subjective inquiry and not a theory of constructive notice.") (internal quotations and citations omitted).

5, 30 (S.D.N.Y. 2007) (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005));

*see also Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) ("[I]t is

generally the [t]rustee's burden to trace the funds he claims are property of the estate."). As Judge

Bernstein explained:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with the BLMIS, and contain the "necessary vital statistics"—the
> "who, when, and how much" of the transfers to establish that an entity was a
> subsequent transferee of the funds. At the pleading stage, the Trustee is not
> required to provide a "dollar-for-dollar accounting" of the exact funds at issue.
> However, barebones allegations that the funds at issue were transferred to the
> Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015). In *Shapiro*, the Court dismissed the complaint because it did not "tie any initial transfer to

any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial

transferees even made subsequent transfers to the Subsequent Transferees as opposed to third

parties, or that they made the subsequent transfers rather than simply keep the initial transfers for

themselves." *Id.*; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009)

(court dismissed a preference claim under *Twombly* and *Iqbal* because the trustee's factual

allegations included allegations about transfers into and out of an account and amounts received

by the supposed transferees, but nothing to tie them together).

The Amended Complaint here fails the basic pleading requirements: it does not make the

connections required to tie the transfers. It contains no details regarding the "who, when, and how

much" of the subsequent transfers allegedly made to PAWFL and/or Fortis IOM. Although the

Amended Complaint attaches an exhibit that includes the purported BLMIS-to-Sentry Initial

Transfers, it does not specify which, if any, of the Initial Transfers involved the customer property

that the Trustee alleges Sentry subsequently transferred to PAWFL and/or Fortis IOM, let alone

how those transfers are tied.  Nothing in the Amended Complaint or its exhibits "tie[s] any initial transfer to any subsequent transfer or Subsequent Transferee."  *Shapiro*, 542 B.R. at 119.  In other words, the Amended Complaint does not state the "when, and how much of the transfers to establish that [PAWFL] was a subsequent transferee of the funds."  It contains only the "barebones allegations that the funds at issue were transferred" to PAWFL and/or Fortis IOM.  *See Shapiro*, 542 B.R. at 119.  Simply listing transfers made from BLMIS to Sentry, without tying those transfers to the payment of any redemption request, does not demonstrate that any alleged transfers contained customer property.  Accordingly, the Trustee's conclusory allegation that "Fairfield Sentry subsequently transferred a portion of the Fairfield Sentry Initial Transfers to Defendants," Am. Compl. ¶ 99, is insufficient to meet the relevant pleading standard under *Twombly* and *Iqbal*.

At best, the Amended Complaint's conclusory allegation gives rise to the mere possibility that the alleged redemptions from Sentry consisted of BLMIS customer property.  But, based on information alleged in other pleadings of the Trustee, the conclusory allegation as to PAWFL strains credulity.

Indeed, the Trustee's pleadings across adversary proceedings, when taken as whole, tell an implausible story under basic principles of arithmetic: BLMIS's alleged Initial Transfers to Sentry are significantly less than what the Trustee asserts Sentry paid out.  The Trustee alleges that BLMIS transferred approximately $2.9 billion to Sentry in the six years preceding the Petition. Am. Compl. ¶ 97.  Yet, at the same time, the Trustee alleges that Sentry made approximately $5 billion in subsequent transfers of alleged BLMIS customer property, exceeding by nearly $2 billion the sum of all the alleged customer property that the Trustee claims BLMIS transferred to Sentry as Initial Transfers in the six years prior to the Filing Date.  *See* Fairfield Second Am. Compl. Exs.

21

8, 10, 12, 13, 14, and 21 (Ex. C to Barrett Decl.).  Accordingly, the Trustee's theory that all of the redemption payments are customer property is implausible.

How could Sentry have paid out more than it received from BLMIS?  Sentry has stated that "[f]rom time to time, to make Redemption Payments, Sentry . . . utilized subscription monies of other investors on hand that were directed for investment in BLMIS."  *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.), ECF No. 23, ¶ 63; *Fairfield Sentry Ltd. v. Citco Global Custody NV*, No. 19-1122, ECF No. 19 (Bankr. S.D.N.Y. Nov. 26, 2019).  Thus, the Trustee's own pleadings make clear that Sentry was receiving funds from several sources, not just BLIMIS.

The Trustee's conclusory allegation that the money sent by Sentry allegedly to Defendants came from BLMIS is implausible in light of the Trustee's own detailed, specific allegations of cash flows into and out of Sentry.  Put another way, because "[t]here is an 'obvious alternative explanation'" for the source of the redemption, namely subscription monies of other investors, "that explanation renders [plaintiff's] competing explanation 'conceivable [but not] plausible.'"  *Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, No. 19-CV-7007 (JPO), 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020) (quoting *Twombly*, 550 U.S. at 567, 570).

What is more, the Trustee has every piece of information he needs to determine whether an alleged subsequent transfer contains customer property, and from which Initial Transfer that transfer originates, yet he has failed to so allege here.  The Trustee's claim therefore should be dismissed.  *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable

complaint"); *Sapia v. Home Box Office, Inc.*, No. 18 Civ. 1317 (CM), 2018 WL 6985223, at *8

(S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary

facts that were "uniquely in [p]laintiffs' possession").

## V. THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND ADOPTION OF THE ENTIRE FAIRFIELD SECOND AMENDED COMPLAINT BY REFERENCE IS IMPROPER

The Amended Complaint should be dismissed for another reason: it does not contain "a

short and plain statement of the claim showing the pleader is entitled to relief" as required under

Rule (8)(a)(2) and instead improperly attempts to incorporate other voluminous, largely irrelevant

pleadings by reference.

As stated recently by the Second Circuit, "Section 550(a) sets out the elements a trustee

must satisfy to recover transferred property: *that the transfer was avoided, and that the defendant*

*is an initial or subsequent transferee*." *Picard v. Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec.*

*LLC*), 12 F.4th 171, 197 (2d Cir. 2021) (emphasis added). "Section 550(a) applies only 'to the

extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this

title.' In other words, a trustee cannot use §550(a) to recover property unless the trustee has first

avoided a transfer under one of these provisions." *In re Picard, Tr. for Liquidation of Bernard L.*

*Madoff Inv. Sec. LLC,* 917 F.3d 85, 97 (2d Cir. 2021) (internal citations omitted).[10]  Rather than

allege facts showing that the relevant transfers were avoided, the Amended Complaint against

PAWFL simply makes passing reference to BLMIS transfers of alleged "customer property" to

Fairfield as "avoidable," Am. Compl. ¶¶ 97–98, and the Trustee purports to "incorporate by

---

[10] PAWFL acknowledges that in a prior decision, the District Court held that the language "'to the extent that a transfer is avoided' requires the Trustee to show that a given transfer is avoidable and does not require an actual judgment of avoidance." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 37 (S.D.N.Y. 2013). Nevertheless, PAWFL notes that the statute, by its own terms, applies to a transfer that is "avoided." The statute does not use the word "avoidable." PAWFL thus reserves all rights and arguments regarding what showing is required to "avoid" a transfer.

reference the allegations in the Second [Fairfield] Amended Complaint as if fully set forth herein." *Id.* ¶ 96.

Indeed, instead of providing sufficient details in the Amended Complaint, the Trustee incorporated by reference an entirely different complaint filed in another proceeding to which PAWFL and Sentry are not party. *See Id.* The Amended Complaint itself thus fails to allege facts supporting an essential element of the claim and makes only conclusory assertions that BLMIS made "avoidable" transfers to Fairfield. Am. Compl. ¶¶ 97–98. The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is improper for the Trustee to rely on a 105-page, 406-paragraph complaint filed in a separate proceeding against other defendants. The Trustee seeks to incorporate by reference *all* of the Fairfield Second Amended Complaint, even though it asserts claims against defendants that are not a party to this adversary proceeding, is not a complaint against PAWFL or Sentry and asserts a range of claims, including disgorgement and constructive trust, that are inapplicable to this action.

The Trustee improperly relies on the Fairfield Second Amended Complaint to plead an essential element of its claim against PAWFL: the avoidability of the Initial Transfers from BLMIS to Sentry. *See, e.g.* Am. Compl. ¶¶ 92, 97–98. If PAWFL were required to respond to the Fairfield Second Amended Complaint, PAWFL would be left responding to allegations outside its knowledge and well beyond the relevant period at issue in the Amended Complaint. This is precisely "the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS 29267, at *13 (E.D.N.Y. Mar. 26, 2010) (internal quotations and citations omitted).

Requiring PAWFL to respond to such improper incorporation by reference would also be unfair and unduly burdensome. The Trustee's improper incorporation is especially troubling here because the *only* allegation concerning the avoidability of the Initial Transfers is by reference to the Fairfield Second Amended Complaint, which is a morass of allegations against parties that are not defendants in this action. *See* Am. Compl. ¶¶ 92, 97–98.

Such wholesale incorporation of mooted pleadings in another action is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted). Indeed, "if all of the allegations in the prior pleadings are deemed to be incorporated into the [Amended Complaint], then the [Amended Complaint] would become an unintelligible morass of self-contradictory allegations" and "would in itself be grounds for dismissing the [Amended Complaint pursuant] to Rules 12(b)(6) and 8(a)(2)." *Id*. at 462 n.72, 466 (rejecting the attempted incorporation of pleadings from prior proceedings and holding that the complaint "must be dismissed for failure to comply with Rule 8(a)").

The Amended Complaint fails to provide fair notice of the facts upon which the Trustee relies to establish an essential element of his claims—the avoidability of the alleged Initial Transfers—and fails to comply with Rules 8(a) and 10(c). Accordingly, the Amended Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, PAWFL respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

25

Dated: New York, New York
    January 12, 2023

*/s/ Scott B. Schreiber*

Scott B. Schreiber
Rosa J. Evergreen (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

    - and -

Kent A. Yalowitz
Daniel R. Bernstein
Lucas B. Barrett
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Defendant Platinum All Weather*
*Fund Limited*

26