**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>ZEPHYROS LIMITED,<br><br>Defendant. | Adv. Pro. No. 12-01278 (CGM) |

**TRUSTEE'S SUPPLEMENTAL BRIEF AS TO IMPUTATION**
**FROM TREMONT TO THE RYE FUNDS**

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246 (2d Cir. 1995)..............................................2

*Degulis v. LXR Biotech., Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996)...............................................4

*In re Marsh & Mclennan*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...................................................2

*Picard v. Bureau of Labor Ins.*, Adv. Pro. No. 11-02732 (SMB),
    2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ........................................................3

*Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB),
    2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ........................................................3

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM),
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................................................3, 4

*Picard v. Korea Exchange Bank (In re BLMIS)*, Adv. Pro. No. 11-02572 (CGM),
    2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21, 2022) ........................................................5

*Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........................................4

*Picard v. Merkin (In re BLMIS)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................3

*Picard v. UBS AG (In re BLMIS)*, Adv. Pro. No. 10-04285 (CGM),
    2022 WL 17085033 (Bankr. S.D.N.Y. Nov. 18, 2022) ............................................1, 3, 4

*Picard v. UBS AG (In re BLMIS)*, Adv. Pro. No. 10-04285 (CGM),
    2022 WL 17968924 (Bankr. S.D.N.Y. Dec. 27, 2022) ..................................................3, 4

*Rodriguez v. United States*, 54 F.3d 41 (1st Cir. 1995) ..................................................................5

**Treatises**

Restatement (Third) of Agency § 5.03 (2006).................................................................................4

Restatement (Third) of Agency § 5.03 cmt. b (2006)...................................................................1-2

The Trustee submits this Supplemental Brief as permitted by the Court at the conclusion of the December 14, 2022 oral argument on Zephyros Limited's ("Defendant") motion to dismiss, on the narrow issue of whether Tremont's[1] actual knowledge of Madoff's fraud is imputed to the Rye Funds, including Rye Portfolio (the initial transferee at issue here).[2]

Defendant did not raise imputation from Tremont as an issue during briefing. Consistent with this omission, at oral argument, counsel conceded that the incorporated Tremont Complaint ("TC") likely satisfies the Trustee's pleading burden as to imputation:

> [Trustee's counsel is] probably going to argue that the complaint against Tremont, which the Trustee incorporates by reference in the Zephyros complaint contains far more detailed allegations about the Rye-Tremont relationship. And fair enough. It does. I will readily concede that. If Your Honor accepts the incorporation by reference argument, that they probably satisfied at least the pleading stage, [the imputation issue].

*See* Zephyros Tr. at 85:1-8. Defendant nevertheless posited on rebuttal for the first time that Tremont's actual knowledge cannot be imputed to the Rye Funds, and that as such, there is "still a hole in the complaint." *Id*. at 115:22-116:5. But there is no hole, as the Trustee sufficiently pleads the Rye Funds should be charged with the knowledge of Tremont, as their agent.

As this Court recently held, "[t]he Feeder Funds are not natural persons and, as such, act only through 'the instrumentality of their officers or other duly authorized agents.'" *Picard v. UBS AG (In re BLMIS)*, Adv. Pro. No. 10-04285 (CGM), 2022 WL 17085033, at *12 (Bankr. S.D.N.Y. Nov. 18, 2022) ("*UBS I*") (citation omitted). It is moreover black-letter law that the knowledge of an agent acting within the scope of its agency is imputed to the principal. Restatement (Third) of

---

[1] Capitalized terms used but not defined have the meanings ascribed to them in the Trustee's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (ECF No. 134, the "Trustee's Opposition" or "Opp."). "Tremont" is Tremont Group Holdings, Inc., together with predecessors and affiliates, and relevant affiliates include management arms Tremont Partners, Inc., and Tremont (Bermuda) Limited. Opp. at 5; TC ¶ 2. The "Rye Funds" are the four Tremont-managed BLMIS feeder funds that received fraudulent transfers, including Rye Portfolio. TC ¶¶ 2, 41.

[2] Consistent with this Court's permission, Defendant's Supplemental Brief should also be limited to this issue. *See* Mot. To Dismiss Hr'g Tr., *Picard v. Zephyros Ltd.*, Adv. Pro. No. 12-01278 (CGM) (Bankr. S.D.N.Y. filed Dec. 22, 2022), ECF No. 146 ("Zephyros Tr.") at 116:8-117:7.

Agency § 5.03 cmt. b (2006) ("If an agent has actual knowledge of a fact, the principal is charged with the legal consequences of having actual knowledge of the fact."); *see also Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995) ("The knowledge of a director, officer, sole shareholder or controlling person of a [corporate entity] is imputable to that [entity]."); *In re Marsh & Mclennan*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006) (in securities fraud case, stating "courts have readily attributed the scienter of management-level employees to corporate defendants").

Tremont and its officers and management-level employees were agents of the Rye Funds and as such agents, their knowledge may be imputed to those Rye Funds. As set forth in the TC and Tremont Supplement, these Tremont persons managed the investments of, conducted due diligence for, and operated and controlled both Tremont and the Rye Funds.[3] The Rye Funds had *no* employees of their own; rather, the Rye Funds were investment vehicles that acted solely through the Tremont management entities, who were the Rye Funds' manager, operator, administrator, and custodian. *See, e.g.*, TC ¶ 50 ("The various divisions and corporate entities under the Tremont umbrella involve the same decision-makers and were controlled by the same individuals and entities."); TC ¶¶ 39, 40, 47-48 (Tremont Partners was general partner and investment manager, as applicable, for each of the Rye Funds, and selected their investments); TC ¶ 39 (Rye Portfolio's address was a P.O. box); TC ¶¶ 59, 86, 197 (The Rye Funds were managed by Tremont Group's Rye Investment Management division, as headed by Schulman and other Tremont executives); TC ¶ 276 (alleging imputation from Tremont to the Rye Funds); AC ¶ 80

---

[3] This includes Sandra Manzke—founder and CEO of Tremont until 2005 (TC ¶ 58)—and Robert Schulman—President, CEO, and board member of Tremont and head of Rye Investment Management (TC ¶¶ 47, 59, 86), each of whom were at the center of Tremont's complicity with Madoff's fraud. *See generally* TC ¶¶ 146-235; AC ¶¶ 79-144. Schulman in particular had a "special relationship" and was "intimately familiar" with Madoff, shielded him from scrutiny, and falsely claimed to monitor Madoff's trades and know the identity of his non-existent counterparties. TC ¶ 90; AC ¶¶ 83, 112, 118, 131. Other specifically identified Tremont management-level employees who were similarly aware of BLMIS's impossibilities and covered up for Madoff include Jim Mitchell, Barry Colvin, Cynthia Nicoll, Darren Johnston, Michael Lynch, Chris Cichella, Patrick Kelly, Brian Marsh, Harry Hodges, Stuart Pologe, and Suzanne Hammond. TC ¶¶ 146-235; AC ¶¶ 79-144.

("Tremont created, managed, and operated [the Rye Funds].").

In his 2016 extraterritoriality decision, Judge Bernstein accepted the Trustee's allegations as to the Tremont-Rye Fund relationship, stating that:

> According to the Trustee, the Rye Funds were managed from and maintained their principal places of business and headquarters in Rye, New York. Tremont's New York employees, among other things, conducted the Rye Funds' marketing, operations, diligence, and their communications with investors, and served on their boards. The Rye Cayman Funds had "registered offices" in the Cayman Islands, but had no operating offices or operations there. . . .

*Picard v. Bureau of Labor Ins.*, Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689, at *28 (Bankr. S.D.N.Y. Nov. 22, 2016) (*rev'd* on other grounds) (citations omitted).

Faced with similar relationships, this Court has imputed the knowledge of BLMIS feeder fund managers to their BLMIS feeder funds in *Kingate*, *UBS I*, *UBS II*, and *Fairfield Inv. Fund*. In *Kingate*, Judge Bernstein determined that Kingate's principals, management entity, and administrator entity "were agents of the Kingate Funds" and that their knowledge was imputable to the funds. *Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749, at *15-16 (Bankr. S.D.N.Y. Aug. 11, 2015) ("*Kingate*"). There, like here, interrelated persons and entities created the funds in order to invest with BLMIS, and managed and provided all administrative and other services to the funds. *Id.* at *15.[4]

In *UBS I* and *UBS II*, the Trustee similarly pled that various UBS-affiliated entities and individuals had actual knowledge of Madoff's fraud, and that such knowledge was imputable to BLMIS feeder funds Luxalpha SICAV and Groupement Financier Ltd. This Court found

---

[4] As in *Kingate*, the adverse interest exception to imputation is inapplicable here. That exception is a narrow one, requiring that the agent "totally abandons his principal's interests and acts entirely for his own or another's purposes." *Kingate*, 2015 WL 4734749, at *15. In *Kingate*, this Court found that the feeder funds' managers acted within the scope of their agency when investing with BLMIS, and that the adverse interest exception did not apply because the feeder funds benefited from their BLMIS investments prior to discovery of the fraud. *Id.* at *16; *accord Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 148 (Bankr. S.D.N.Y. 2014). The same is true for Tremont.

3

imputation sufficiently pled because, among other things, the entity defendants were service providers, board members, administrators, custodians and other agents of the feeder funds. *UBS I*, 2022 WL 17085033, at *3-4, *12-14; *accord Picard v. UBS AG (In re BLMIS)*, Adv. Pro. No. 10-04285 (CGM), 2022 WL 17968924, at *3-4, *12-14 (Bankr. S.D.N.Y. Dec. 27, 2022) ("*UBS II*").

And in *Fairfield Inv. Fund*, the Trustee pled that Sentry was a "shell entity with no employees" that was operated through FGG, the funds' management company. *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court found the Trustee sufficiently alleged Sentry's and the other feeder funds' actual knowledge via imputation from FGG and its partners. *Id.*

Like Kingate, UBS, and Fairfield, Tremont consisted of numerous entities that managed and provided services for feeder funds with no independent existence. Though the feeder funds might have separate corporate identities, their knowledge is that of the entities and persons running them. Restatement (Third) of Agency § 5.03 (2006) ("Organizations are treated as possessing the collective knowledge of their employees and other agents . . . however the organization may have configured itself or its internal practices for transmission of information").

In any event, given their highly fact-specific nature, questions of imputation are not generally decided as a matter of law prior to discovery. *See, e.g., Degulis v. LXR Biotech., Inc.*, 928 F. Supp. 1301, 1312 (S.D.N.Y. 1996) (holding imputation of director's knowledge to company "a matter of fact that cannot be determined on a motion to dismiss"); *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 260 (Bankr. S.D.N.Y. 2010) ("[W]here the Trustee has not had the opportunity to conduct discovery concerning the relationships between [Defendants], the question is not whether the Trustee has proved the existence of an agency relationship, merely whether he

4

should have the chance to do so.") (cleaned up). Here, the facts alleged are more than sufficient to implicate a Tremont-Rye Fund agency relationship and proceed with discovery.

Despite its concessions, Defendant may wrongly argue, as it did at the hearing, that the Trustee has not sufficiently alleged imputation because allegations as to Tremont's knowledge in the TC and Tremont Supplement conflict and so incorporation of the TC is problematic. Zephyros Tr. at 85:9-86:13. As the Trustee has argued, (i) this Court should not entertain negative inferences Defendant has manufactured in order to find contradictions that do not exist, and (ii) the Trustee may anyhow make allegations in the alternative to support different legal theories. Opp. at 19-25, n.18, 20. In any event, the Trustee could seek to repeat the TC's imputation allegations in an amendment to the Amended Complaint, but then "all parties would be prejudiced by delay." *Picard v. Korea Exchange Bank (In re BLMIS)*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *8 (Bankr. S.D.N.Y. Sept. 21, 2022).

Finally, Defendant may argue that the Trustee's allegations as to imputation of Kingate's knowledge to Tremont are insufficient. This is wholly separate from the Tremont to Rye Fund imputation, and the Court need not even reach this issue to determine the feeder funds had actual knowledge via Tremont. That said, imputation from Kingate is sufficiently pled given the relationship between Kingate and Tremont—including principals Ceretti, Grosso, and Manzke— who worked together for years as one unit, necessarily sharing information, and sharing millions in fees as co-operators, by agreement, of a BLMIS feeder fund. AC ¶¶ 145-50. Where, as here, multiple agents are engaged in a collective action requiring the sharing of information, the co-agents are not isolated actors but rather persons or entities that "should be assessed as of one piece." *Rodriguez v. United States*, 54 F.3d 41, 48 (1st Cir. 1995) (Bownes, J., concurring); *see also* Opp. at 31 (citing cases as to co-adventurers). Kingate's knowledge is thus attributable to Tremont.

Dated: New York, New York  
       January 13, 2023

**WINDELS MARX LANE & MITTENDORF, LLP**

By:   */s/ Kim M. Longo*  
Kim M. Longo (klongo@windelsmarx.com)  
Howard L. Simon (hsimon@windelsmarx.com)  
Alex Jonatowski (ajonatowski@windelsmarx.com)  
156 West 56th Street  
New York, New York 10019  
Tel. (212) 237-1000 / Fax. (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*