**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br><br>                v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>                Plaintiff,<br><br>                v.<br><br>ZEPHYROS LIMITED,<br><br>                Defendant. | Adv. Pro. No. 12-01278 (CGM) |

**ZEPHYROS LIMITED'S SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Attorneys for Zephyros Limited*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | THE AC FAILS TO PLEAD FACTS SUPPORTING IMPUTATION. | 1 |
| II. | THE TRUSTEE'S BELATED BID TO INCORPORATE BY REFERENCE THE TREMONT COMPLAINT CANNOT SALVAGE HIS DEFICIENT PLEADING. | 4 |
| CONCLUSION | | 5 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*45 John Lofts, LLC v. Meridian Capital Grp., LLC*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................................... 1

*Bondi v. Grant Thornton Int'l*,
  377 F. Supp. 2d 390 (S.D.N.Y. 2005) ..................................................................................... 3

*In re Parmalat Sec. Litig.*,
  501 F. Supp. 2d 560 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of Am.
  Corp.*, 309 F. App'x 536 (2d Cir. 2009) ......................................................................... 2, 3, 4

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (2010) ............................................................................................................. 1

*Mazzaro de Abreu v. Bank of Am. Corp.*,
  525 F. Supp. 2d 381 (S.D.N.Y. 2007) ..................................................................................... 5

*Picard v. ABN AMRO Bank N.V.*,
  2017 WL 4417701 (S.D.N.Y. Oct. 3, 2017) ........................................................................... 2

*Picard v. Avellino*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ...................................................................................... 4

*Picard v. Ceretti*,
  2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ............................................................ 1

*Picard v. Ceretti*,
  Adv. Pro. No. 08-01789 (CGM) ............................................................................................. 2

*Picard v. Fairfield Inv. Fund*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .............................................................. 1

*Picard v. Merkin*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................................... 5

*Picard v. Zephyros Limited*,
  Adv. Pro. No. 12-01278 ......................................................................................................... 1

*Rosner v. Bank of China*,
  349 F. App'x 637 (2d Cir. 2009) ............................................................................................ 5

*Ryan v. Hunton & Williams*,
  2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ....................................................................... 5

**STATUTES**

11 U.S.C. § 546(e) ......................................................................................................................... 1, 5

As Zephyros showed in its Motion[1] and Reply, this case is different from all the other Madoff cases in which this Court has so far decided motions to dismiss: the alleged feeder fund in this case is Rye (not Fairfield), and the AC fails to plead facts showing that Rye had actual knowledge of Madoff's Ponzi scheme. (AC at 18–19; Reply at 10–16.) Recognizing this distinction, the Court requested supplemental briefing on a narrow issue—whether knowledge of Tremont (an entity that allegedly created and managed Rye) or Kingate (a completely unrelated fund) can be imputed to Rye. It cannot:

- The AC pleads no relationship between Kingate and Rye, much less one that could give rise to imputation.

- The AC similarly pleads no facts establishing that Tremont and Rye "became as one," as is required to impute one entity's knowledge to another; rather, the AC relies solely on conclusory allegations that Tremont managed Rye.

- And even if Tremont's knowledge could be attributed to Rye, the AC fails to plead that Tremont had *actual knowledge* of Madoff's Ponzi scheme; instead, as the Trustee himself has acknowledged in his Opposition, all that he has pleaded against Tremont is that it *should have known* Madoff was a fraud. This is not enough to overcome the 546(e) safe harbor.

I. **THE AC FAILS TO PLEAD FACTS SUPPORTING IMPUTATION.**

Because an entity acts only through "the instrumentality of [its] officers or other duly authorized agents,"[2] pleading an entity's knowledge requires allegations that its agents, "while acting within the scope of their authority," had actual knowledge of the information in question.[3]

---

[1] Capitalized terms in this Memorandum shall have the meanings set forth in Zephyros's Reply in this action, ECF No. 136. In addition, "Hearing Transcript" means the December 14, 2022 Zephyros Motion to Dismiss Hearing Transcript, ECF No. 146, *Picard v. Zephyros Limited*, Adv. Pro. No. 12-01278 (cited herein as "Hearing Transcript, Ex. A"). Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

[2] *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) (citing *45 John Lofts, LLC v. Meridian Capital Grp., LLC*, 599 B.R. 730, 743 (Bankr. S.D.N.Y. 2019)).

[3] *Id.*; *see also Picard v. Ceretti*, 2015 WL 4734749, at *4, *13 (Bankr. S.D.N.Y. Aug. 11, 2015) (the complaint must plead "sufficient facts to permit imputation of the Non–Fund Defendants' knowledge to the Funds" to avoid the application of the 546(e) defense; *Picard v. Fairfield Inv. Fund*, 2021 WL 3477479, at *4–7 (Bankr. S.D.N.Y. Aug. 6, 2021) (same).

Here, the Trustee seeks to plead Rye's alleged actual knowledge of Madoff's fraud by attempting to impute to Rye the knowledge of two distinct entities—Kingate and Tremont. The problem for the Trustee is that the AC's allegations cannot support its imputation arguments.

*Kingate.* The AC's sole allegation concerning any alleged relationship between Kingate and Rye is that an unnamed employee viewed "Rye Portfolio Limited, Kingate Global and Fairfield Sentry [as] 'essentially the same fund' but with '*different managers*[.]'" (AC ¶ 67 (emphasis added).) This is plainly insufficient because it does not plead an agency relationship between Rye and Kingate, much less that Kingate actually learned of Madoff's Ponzi scheme while acting within the scope of any such relationship.[4] The Trustee's theory must be rejected for that reason alone.[5]

In fact, the AC on its face pleads facts establishing that Kingate and Rye were separate entities. For example, the Trustee alleges that Rye was managed by Tremont out of "Rye, New York" (AC ¶ 66)[6], but that Kingate was "owned, managed, and operated by Fairfield Greenwich Group ('FGG'), a New York-based de facto partnership" (*id.* ¶ 67)[7]. Even the alleged statement on which the Trustee relies acknowledges that the entities had "different managers," and so one manager's knowledge could not be attributed to the other.

---

[4] *See In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 590 (S.D.N.Y. 2007), *aff'd sub nom. Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d Cir. 2009) (finding imputation was improper because the complaint failed to show that the entities "become as one"; there was no free flow of information between them, unfettered access to the other's projects, or mutual control over each other and the alleged enterprise) ("*In re Parmalat*").

[5] *See id.*

[6] *See also Picard v. ABN AMRO Bank N.V.*, 2017 WL 4417701, at *1 (S.D.N.Y. Oct. 3, 2017) (noting that, according to the Trustee's pleadings, Rye Portfolio Limited was "registered in the Cayman Islands"); Tremont Compl. ¶ 39 (Rye "is an open-ended investment company organized as an exempted company under the laws of the Cayman Islands in 2001… The Portfolio Limited Fund's registered office during the relevant period was located in the Cayman Islands, c/o Trulaw Corporate Services Ltd., P.O. Box 866, George Town, Grand Cayman.").

[7] *See also Picard v. Ceretti*, Adv. Pro. No. 08-01789 (CGM), ECF No. 5879 ¶ 38 (pleading that Kingate was "registered as an international business company organized under the laws of the British Virgin Islands with a registered address at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands"); *id.* ¶ 42 (pleading that the "Kingate Funds were separate companies with separate boards or directors").

2

Alternatively, the Trustee argues that Rye should be chargeable with Kingate's knowledge because they were allegedly joint venturers. (Opp. at 25.) But the AC does not plead *any* relationship between Kingate and Rye. Rather, the AC alleges instead that Kingate and *Tremont* were "co-managers" or "co-agents." (*See, e.g.*, AC ¶ 148 ("Kingate Global was co-managed by Kingate Management and Tremont affiliate Tremont (Bermuda) Ltd."); *id.* ¶ 150 ("Tremont Bermuda and Kingate Management were co-agents to Kingate Global").) Thus, the AC fails to plead a relationship between Kingate and Rye that could support the Trustee's imputation theory.

But even if the AC had pleaded that Kingate and Rye were "co-managers" or "co-agents," it would still fail to allege a basis for imputing Kingate's knowledge to Rye. This is because agents are "generally . . . not liable for the acts of co-agents."[8] Thus, absent allegations that are not present here—such as that Kingate and Rye had a free-flowing information exchange or exercised control or agency on behalf of each other[9]—the AC's imputation theory vis-a-vis Kingate fails.

**Tremont.** During the December 14, 2022 hearing, the Trustee trotted out a new argument for the first time that *Tremont's* knowledge should be imputed to Rye. (Hearing Transcript, Ex. A at 69.) But just like the flawed Kingate allegation, the AC's allegations concerning Tremont's relationship to Rye do not support this argument. The AC's sole allegation concerning Tremont's relationship with Rye is a conclusory allegation that Tremont "created, owned, managed and operated the Rye Select family of BLMIS feeder funds." (AC ¶ 66; *see*

---

[8] *Bondi v. Grant Thornton Int'l*, 377 F. Supp. 2d 390, 406 (S.D.N.Y. 2005).

[9] *See In re Parmalat*, 501 F. Supp. 2d at 590-91.

3

*also id.* ¶ 80.) This is not enough.[10] What is required to impute knowledge from one entity to another are factual allegations showing that the entities "became as one."[11] This requires non-conclusory allegations that the entities had free flow of information between them, unfettered access to the other's projects, or mutual control over each other and the alleged enterprise.[12] Such allegations are absent here, and so the Tremont-imputation allegations are deficient.

*Avellino* is not to the contrary. There, the complaint plausibly pleaded facts supporting imputation, specifically facts showing that the defendant "was the sole decision-maker for [the other entities], actively directed and controlled [their] daily activities, including [their] dealings with Madoff and BLMIS and made all decisions relating to [their] investments with BLMIS."[13] The Trustee also pleaded that the defendant "acted as an agent for [the entities], assisting in the opening of [their] IA account and negotiating with Madoff for [them] to receive consistent guaranteed rates of return and fraudulent side payments."[14] The AC, by contrast, makes no such allegations concerning Tremont's relationship with Rye, even though the Trustee plainly knew how to do so when required, as the complaint in *Avellino* abundantly illustrates. (*See generally* AC.)

## II.    THE TRUSTEE'S BELATED BID TO INCORPORATE BY REFERENCE THE TREMONT COMPLAINT CANNOT SALVAGE HIS DEFICIENT PLEADING.

In an effort to bolster the AC's own deficient pleading, the Trustee also incorporates by reference the Tremont Complaint. (AC ¶ 79.) But this is of no help to the Trustee because the

---

[10] *See id.* at 590 (finding imputation was improper because the complaint failed to show that the entities "become as one"; there was no free flow of information between them, unfettered access to the other's projects, or mutual control over each other and the alleged enterprise).

[11] *See id.*

[12] *See id.* at 590–91.

[13] *See Picard v. Avellino*, 557 B.R. 89, 117 (Bankr. S.D.N.Y. 2016) ("*Avellino*").

[14] *Id.*

4

Tremont Complaint does not plead sufficient facts to show that Tremont had actual knowledge of Madoff's fraud.

The Tremont Complaint pleads, at most, that Tremont was on inquiry notice of Madoff's fraud. (*See* Reply at 10–16; Opp. at 19–24.) Rather than focusing on what Tremont actually *knew*, the Tremont Complaint focuses on what Tremont allegedly failed to do, namely, "conduct any [] reasonable inquiry," "confirm or independently question" aspects of the Madoff operation, and or focus on "actually understanding what Madoff really was doing with that money." (Tremont Compl. ¶¶ 169, 190, 195.) These are classic inquiry-notice allegations that courts routinely condemn as insufficient to overcome Section 546(e)'s safe harbor.[15] Even the Trustee must acknowledge this. His Opposition characterizes Tremont as "choosing to look away" from Madoff's fraud. (Opp. at 21.) But "looking away" is not "actual knowledge," and so the Tremont Complaint cannot fill the holes in the Trustee's pleading.

## CONCLUSION

The Trustee pleads no facts supporting his bid to impute Kingate's or Tremont's knowledge to Rye, nor does he allege sufficient facts to plead Tremont's actual knowledge. He has thus failed to plead Rye's actual knowledge of Madoff's scheme, and so the Trustee's claims should be dismissed under Rule 546(e)'s safe harbor.

---

[15] *See, e.g., Picard v. Merkin*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (dismissing avoidance claims after finding that such red flags do not equate to actual knowledge); *see also Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) ("Even if [Bank of China] had reason to suspect that Siu Lap was laundering money, this does not mean that [Bank of China] had actual knowledge of the fraudulent scheme perpetrated by IFS and Siu Lap."); *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (explaining that while patterns of bank transfers and low balances gave rise to inferences of fraud, they at most indicated constructive knowledge of a fraudulent scheme); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (allegations of suspected fraudulent activity by an internal fraud investigation unit did not raise an inference of actual knowledge of a Ponzi scheme).

5

Dated: January 13, 2023  
New York, New York

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: <u>*/s/ William J. Sushon*</u>
  William J. Sushon
  Daniel S. Shamah
  Kayla N. Haran
  7 Times Square
  New York, New York 10036
  Telephone: (212) 326-2000
  Facsimile: (212) 326-2061
  wsushon@omm.com
  dshamah@omm.com
  kharan@omm.com

*Attorneys for Defendant Zephyros Limited*