UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>             Plaintiff-Applicant,<br><br>       v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>             Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | **JURY TRIAL DEMANDED** |
| IRVING H. PICARD, trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>FULLERTON CAPITAL PTE. LTD.,<br><br>Defendant. | Adv. Pro. No. 12-01004 (CGM) |

**FULLERTON CAPITAL PTE, LTD.'S**
**ANSWER TO COMPLAINT AND JURY DEMAND**

Defendant Fullerton Capital Pte. Ltd. ("Fullerton") responds to the Complaint of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the substantively consolidated estate of Bernard L. Madoff ("Plaintiff" or "Trustee"), as follows:

## GENERAL DENIAL

Except as otherwise expressly admitted herein, Fullerton denies each and every allegation in the Complaint.  Fullerton states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response.  To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, Fullerton does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint.  To the extent it is later determined that a response is required to any allegation Fullerton claims has been mooted by a prior dismissal of the Trustee's claims, Fullerton denies any such allegation. Fullerton expressly reserves the right to amend and/or supplement the Answer.

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**RESPONSE:** Paragraph 1 sets forth legal conclusions to which no response is required. To the extent a response is required, Fullerton denies the allegations in paragraph 1 of the Complaint, except admits that the Trustee purports to bring this adversary proceeding to recover BLMIS customer property and admits, on information and belief, that Madoff perpetrated a Ponzi scheme.

2.    With this Complaint, the Trustee seeks to recover approximately $10,290,445 in subsequent transfers of Customer Property made to Defendant Fullerton. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Sentry is a British Virgin Islands ("BVI") company that is in liquidation in the BVI. Fairfield Sentry had direct customer accounts with BLMIS's investment advisory business ("IA

Business") for the purpose of investing assets with BLMIS, and maintained in excess of 95% of its assets in its BLMIS customer accounts.

**RESPONSE:** Paragraph 2 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Fullerton denies the allegations in paragraph 2, except admits that the Trustee purports to seek to recover a single transfer of approximately $10,290,445 from Fairfield Sentry to Fullerton

3.     When Defendant Fullerton received the subsequent transfers of BLMIS Customer Property, Defendant Fullerton was a Singapore limited private company and part of an international network of banks. Defendant Fullerton is a subsidiary of Temasek Holdings which is a Singapore investment company with $193 billion in assets under management.

**RESPONSE:** Fullerton denies the allegations in paragraph 3 of the Complaint, except admits that at the time of the alleged transfer Fullerton was a Singapore limited private company and an indirect subsidiary of Temasek Holdings, which is a Singapore investment company and instrumentality of the Republic of Singapore.

## II.   <u>JURISDICTION AND VENUE</u>

4.     The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Fullerton as a subsequent transferee of funds originating from BLMIS.

**RESPONSE:** Paragraph 4 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Fullerton denies the allegations in paragraph 4, except admits that the Trustee purports to bring this adversary proceeding to recover certain property.

5.     This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al., No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15

U.S.C. § 78eee(b)(2)(A), (b)(4).

**RESPONSE:** Paragraph 5 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Fullerton admits that the first and second sentences of paragraph 5 accurately describe the titles and docket numbers of the proceeding and otherwise denies the allegations in paragraph 5.

6.    Defendant Fullerton is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York- based BLMIS through Fairfield Sentry. Defendant Fullerton knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry.

**RESPONSE:** Paragraph 6 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Fullerton denies the allegations in paragraph 6.

7.    By directing investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund, Defendant Fullerton knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant Fullerton entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent a copy of the agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. Upon information and belief, representatives of Defendant Fullerton also regularly communicated via email and letters with its FGG account representatives in FGG's New York City office. Defendant Fullerton thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**RESPONSE:** Paragraph 7 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Fullerton denies the allegations in the first sentence of paragraph 7; Fullerton admits the allegations in the second sentence of Paragraph 7, except denies that it has submitted to jurisdiction in New York generally or with respect to this specific case; Fullerton denies the allegations in the third sentence of paragraph 7, except admits that its representatives had occasional communications with certain FGG personnel who, on information and belief, were located in FGG's New York City office; and Fullerton denies the allegations in

the fourth sentence of paragraph 7.

8.        Defendant Fullerton should reasonably expect to be subject to New York juris-
diction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules §
302 (McKinney 2001) and Bankruptcy Rule 7004.

**RESPONSE:**  Paragraph 8 of the Complaint states legal conclusions to which no response

is required.  To the extent a response is required, Fullerton denies the allegations in paragraph 8.

9.        This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**RESPONSE:**  Paragraph 9 of the Complaint states legal conclusions to which no response

is required.  To the extent a response is required, Fullerton denies the allegations in paragraph 9.

Fullerton does not consent to the issuance of final orders or judgments by the Bankruptcy Court.

10.       Venue in this District is proper under 28 U.S.C. § 1409.

**RESPONSE:**  Paragraph 10 of the Complaint states legal conclusions to which no response

is required.

## III.    **BACKGROUND**

11.       On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal
agents for violation of the criminal securities laws, including, inter alia, securities fraud, invest-
ment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Ex-
change Commission ("SEC") commenced the District Court Proceeding against Madoff and
BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the invest-
ment adviser activities of BLMIS. The District Court Proceeding remains pending.

**RESPONSE:**  Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 11 of the Complaint, except admits, on information and

belief, that Madoff was arrested on or about December 11, 2008 and that the SEC filed a civil

complaint against Madoff and BLMIS on or about December 11, 2008.

12.       On December 12, 2008, The Honorable Louis L. Stanton of the District Court
entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**RESPONSE:**  Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 12 of the Complaint, and refers to the referenced order for

the true and complete contents thereof.

13.      On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 13 of the Complaint, and refers to the referenced applica-

tion for the true and complete contents thereof.

14.      Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.  removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);
b.  appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and
c.  removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 14 of the Complaint, and refers to the referenced order for

the true and complete contents thereof.

15.      By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**RESPONSE:** Paragraph 15 states legal conclusions to which no response is required.  To

the extent a response is required, Fullerton denies knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 15 of the Complaint, and refers to the refer-

enced orders for the true and complete contents thereof.

16.      At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23.

Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 16 of the Complaint, except admits, on information and

belief, that Madoff pled guilty to crimes and was sentenced to prison. Fullerton further refers to

the referenced transcript for the true and complete contents thereof.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 17 of the Complaint, and refers to the referenced transcript

for the true and complete contents thereof.

## IV.    TRUSTEE'S POWERS AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 18 of the Complaint states that the allegations concerning

the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code set forth legal

conclusions to which no response is required. To the extent a response is required, Fullerton denies

such allegations.

19.      Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**RESPONSE**:  Paragraph 19 of the Complaint states legal conclusions to which no response

is required.

20.      Under SIPA §§ 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**RESPONSE**:  Paragraph 20 of the Complaint states legal conclusions to which no response

is required.

21.      The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**RESPONSE**:  Paragraph 21 of the Complaint states legal conclusions to which no re-

sponse is required.

## V.   **THE DEFENDANT**

22.      Defendant Fullerton is a Singapore limited private company with its head office located at 60B Orchard Road, #06-18 Tower 2, The Atrium@Orchard, Singapore 238891.

**RESPONSE:**  Fullerton admits the allegations of paragraph 22 of the Complaint.

## VI.   **THE PONZI SCHEME**

23.      BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**RESPONSE**:  Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 23 of the Complaint and therefore denies such allegations.

24.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")-a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**RESPONSE**: Fullerton denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the Complaint and therefore denies such allegations.

25.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the Complaint and therefore denies such allegations.

26.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxx703.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint, and respectfully refers the Court to the plea hearing transcript for true and complete contents thereof.

27.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 27 of the Complaint and therefore denies such allegations.

28.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 28 of the Complaint and therefore denies such allegations.

29.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 29 of the Complaint and therefore denies such allegations.

30.     It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 30 of the Complaint and therefore denies such allegations.

31.     Madoff's scheme continued until December 2008, when the requests for with-drawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 31 of the Complaint and therefore denies such allegations.

32.     Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no invest-ments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with

Madoff's arrest, investors had already lost approximately $20 billion in principal.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 32 of the Complaint and therefore denies such allegations.

33.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 33 of the Complaint and therefore denies such allegations.

## VII.    THE TRANSFERS

34.    Fairfield Sentry received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant Fullerton.

**RESPONSE:** Fullerton admits that it received funds from Fairfield Sentry, but otherwise

denies the allegations of paragraph 34 of the Complaint.

### A.  Initial Transfers From BLMIS To Fairfield Sentry

35.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**RESPONSE:** Fullerton (i) admits that the Trustee filed an action styled as *Picard* v. *Fair-*

*field Sentry, Ltd., et al.*, Adv. Pro No. 09-01239 (BRL) (the "Sentry Action"), (ii) lacks knowledge

or information sufficient to form a belief as to the truth of the allegation of the amounts of the

alleged transfers alleged in paragraph 35 and therefore denies such allegations, (iii) lacks

knowledge or information sufficient to form a belief as to which of the three complaints filed in

the Sentry Action the Trustee purports to incorporate by reference in the Complaint in this action

and therefore denies such allegations, (iv) denies that the initial transfers of Customer Property to

Sentry the Trustee seeks to avoid and recover in the Sentry Action were avoided or are avoidable, (v) to the extent necessary to support such denial, denies for lack of knowledge or information sufficient to form a belief as to the truth of the allegations, each and every paragraph of each of the three complaints filed in the Sentry Action that supports the claim that any initial transfers of Customer Property to Sentry are or were avoided or avoidable, and (vi) objects to the incorporation by reference of, and therefore does not answer, each and every other paragraph and allegation in the three complaints in the Sentry Action and to the inclusion in this adversary proceeding of any issue implicated by any of the three complaints in the Sentry Action other than the issue of the avoidance or avoidability of the initial transfers of Customer Property, but reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents. To the extent any further response is required, Fullerton denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 of the Complaint and therefore denies such allegations.

36.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers").  The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:**  Fullerton denies knowledge or information sufficient to form a belief as to the truth of the existence, timing, and amounts of the transfers alleged in paragraph 36 of the Complaint and therefore denies such allegations.  The remaining allegations of paragraph 36 set forth legal conclusions to which no response is required.  To the extent a response is required, Fullerton denies such allegations in paragraph 36.

37.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6

billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to the existence, alleged timing and amounts of the transfers alleged in paragraph 37 of the Complaint and therefore denies such allegations. The remaining allegations in paragraph 37 set forth legal conclusions to which no response is required. To the extent a response is required, Fullerton denies such allegations in paragraph 37.

38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:** Fullerton denies knowledge or information sufficient to form a belief as to the existence, timing and amounts of the transfers alleged in paragraph 38 of the Complaint and therefore denies such allegations. The remaining allegations in paragraph 38 set forth legal conclusions to which no response is required. To the extent a response is required, Fullerton denies such allegations in paragraph 38.

39.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**RESPONSE:** Fullerton lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 of the Complaint and therefore denies such allegations, except admits that Exhibits A and B are attached to the Complaint.

40.      Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**RESPONSE:**  Fullerton admits, on information and belief, that the Court entered orders and a judgment as described in paragraph 40 on or about the dates alleged therein, and respectfully refers the Court to the referenced orders and the referenced judgment for the true and complete contents thereof.

### B.  Subsequent Transfers from Fairfield Sentry to Defendant Fullerton

41.      A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Fullerton and is recoverable from Defendant Fullerton pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $10,290,445 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Fullerton (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

**RESPONSE:**  Fullerton denies the allegations in paragraph 41 of the Complaint, except admits that it received funds from Fairfield Sentry.

42.      The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**RESPONSE:**  Fullerton denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint and therefore denies such allegations.

### COUNT ONE

### RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

43.      The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**RESPONSE:**  Fullerton incorporates and reasserts its responses to the allegations

contained in the previous paragraphs of this Complaint as if fully set forth herein.

44.     Defendant Fullerton received the Fairfield Sentry Subsequent Transfers, totaling approximately $10,290,445, which are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**RESPONSE:** Fullerton denies the allegations in paragraph 44 of the Complaint.

45.     Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Fullerton.

**RESPONSE:** Fullerton denies the allegations in paragraph 45 of the Complaint.

46.     Defendant Fullerton is immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**RESPONSE:** Paragraph 46 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Fullerton denies the allegations in paragraph 46.

47.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Fullerton recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**RESPONSE:** Fullerton denies the allegations in paragraph 47 of the Complaint.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief sets forth legal conclusions to which no response is required.  To the extent a response is required, Fullerton denies that the Trustee is entitled to his requested relief or to any other relief.

## AFFIRMATIVE DEFENSES

Fullerton asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff.  Fullerton reserves the right to amend this Answer to assert any additional defenses, as well as any counterclaims or claims against third parties based on discovery in this adversary proceeding or otherwise.  These defenses are set forth cumulatively and in the alternative.

## FIRST DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

The alleged subsequent transfers to Fullerton, if any, may not be recovered because the alleged initial transfers if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e).  Any such alleged initial transfers were (i) made by or to (or for the benefit of) a stockbroker (BLMIS), financial institution (Fairfield Sentry), financial participant (Fullerton), or other covered entity; (ii) settlement payments and/or transfers made in connection with a securities contract (between BLMIS and Fairfield Sentry, and/or between Fairfield Sentry and Fullerton); and (iii) made more than two years before the petition date and are thus not recoverable under 11 U.S.C. § 548(a)(1)(A).  Because the alleged transfers are not avoidable, property received by Fullerton as part of the alleged Fairfield Six-Year Transfers, if any, is not recoverable from Fullerton.  In addition, at the time of the alleged transfers from Fairfield Sentry to Fullerton, which are alleged to have been made more than two years before the petition date, Fullerton took any funds received from Fairfield Sentry for value and in good faith, and Fullerton had no actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

## SECOND DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

The transfer Fullerton received from Fairfield Sentry did not constitute BLMIS customer property and therefore may not be recovered.  On information and belief, and as set forth in Fullerton's Motion to Dismiss the Complaint, the redemption payment Fullerton received could not have been sourced from BLMIS customer property because prior allegedly avoidable transfers from

BLMIS to Fairfield Sentry had been distributed by Fairfield Sentry to its affiliates or other institutions prior to the transfer to Fullerton.

### THIRD DEFENSE

**Proceeds Not Recoverable**

In the alternative, to the extent that the property, if any, that Fullerton received from Fairfield Sentry was proceeds of Customer Property that BLMIS transferred to Fairfield Sentry, it is not recoverable by the Trustee from Fullerton under section 550(a)(2) of the Bankruptcy Code.

### FOURTH DEFENSE

**For Value, in Good Faith, and Without Knowledge of Voidability**
**(11 U.S.C. § 550(b))**

Fullerton took any funds it received from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of any alleged initial transfers from BLMIS to Fairfield Sentry, and thus the alleged transfers to Fullerton, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

Fullerton took for value because the alleged transfers it received from Fairfield Sentry, if any, were made in exchange for Fullerton's surrender of its shares in Fairfield Sentry.

Fullerton did not have actual knowledge of any fraudulent purpose behind the alleged transfers it received, if any.  Fullerton did not know facts that would have prompted a reasonable person in Fullerton's position to conduct further inquiry into whether there was any fraudulent purpose behind any alleged transfers.  Even if Fullerton had been on inquiry notice of a possible fraudulent purpose behind any alleged transfers it received, a diligent inquiry by Fullerton would not have discovered such a fraudulent purpose.  Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Fullerton, and with more access to BLMIS personnel and documentation than Fullerton, repeatedly examined and

investigated BLMIS but failed to uncover Madoff's fraud before December 2008. Fullerton did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud.  Diligent inquiry by Fullerton would not have discovered the fraudulent purpose of any alleged transfers.

Fullerton did not have knowledge of the voidability of any alleged transfers from BLMIS to Fairfield Sentry when it received the alleged subsequent transfers, if any.

## FIFTH DEFENSE

### Lack of Subject Matter Jurisdiction
### (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## SIXTH DEFENSE

### Lack of Personal Jurisdiction
### (Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012(b))

This Court lacks personal jurisdiction over Fullerton, including for each of the reasons stated in Fullerton's Memorandum of Law in Support of its Motion to Dismiss the Complaint, filed on March 18, 2022 in this adversary proceeding, ECF 104, and proceedings thereon, and Fullerton has not consented to a decision by this Court or this Court's authority to hear and determine the action.

## SEVENTH DEFENSE

### Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Fullerton's Motion to Dismiss the Complaint, filed on March 18, 2022 in this adversary proceeding, ECF 104, and proceedings thereon.

## **EIGHTH DEFENSE**

### **Initial Transfer Not Avoided (11 U.S.C. § 550(a))**

The Trustee may not recover the alleged transfers from Fairfield Sentry to Fullerton, if any, because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sentry.

## **NINTH DEFENSE**

### **No Ponzi Scheme Presumption**

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from Fullerton were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

## **TENTH DEFENSE**

### **Fairfield Sentry as Initial Transferee—Mere Conduit Defense**

Fairfield Sentry was a mere conduit, and consequently, any claimed transfers were initial transfers from BLMIS to Fullerton.  As the Trustee stated in *Picard* v. *Grosvenor Investment Management Ltd.*, No. 12-1021 (Bankr. S.D.N.Y. June 15, 2022), Fairfield Sentry's "sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed] between [Sentry] and BLMIS" (internal quotation marks and citation omitted). 12-1021 ECF 115, at 3, 6.  As a result, any redemptions received by Fullerton were initial transfers from BLMIS to Fullerton that are subject to the safe harbor under 11 U.S.C. § 546(e); any Trustee proceeding to avoid the alleged transfers is untimely; and Fullerton may retain the amount it received, if any, pursuant to 11 U.S.C. § 548(c) and 11 U.S.C. § 548(d)(2)(B) because it took any alleged transfers for value and in good faith.

### ELEVENTH DEFENSE

**New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

### TWELFTH DEFENSE

**Section 278(1) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

### THIRTEENTH DEFENSE

**Section 278(2) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

### FOURTEENTH DEFENSE

**Sufficient SIPC Funds**

The Trustee's claims should be dismissed if Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

### FIFTEENTH DEFENSE

**Failure to Mitigate**

The Trustee's claims are barred, in whole or part, because Plaintiff has failed to mitigate, minimize or avoid damages, if any.

### SIXTEENTH DEFENSE

**British Virgin Island Proceedings**

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

### SEVENTEENTH DEFENSE

**No Interest**

The Trustee is not entitled to an award of interest.

### EIGHTEENTH DEFENSE

**Statute of Limitations**

The Trustee's claim is barred by the statute of limitations.

### NINETEENTH DEFENSE

**Estoppel**

The Trustee's claim is barred by estoppel.

### TWENTIETH DEFENSE

**Unreasonable Delay/Laches**

The Trustee's delay in bringing and prosecuting his claim, which was brought more than a decade ago, lay dormant for years and concerns alleged transfers made nearly 20 years ago, is unreasonable and unfairly prejudices Fullerton's ability to defend itself, including, without limit,

with respect to any claim by the Trustee for interest accruing from and after the date of the filing of the Complaint.

### TWENTY-FIRST DEFENSE

#### Violation of Due Process (U.S. Const. Amend. V)

The use of the doctrine of law of the case to apply to Fullerton rulings made in other adversary proceedings to which it was not a party and in which it did not participate violates Fullerton's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

### TWENTY-SECOND DEFENSE

#### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent transfer from Fullerton to the extent he has recovered the amount of the initial transfers from Fairfield Sentry or any other immediate or mediate transferee, and the amount of the avoided initial transfers is included in the alleged Customer Property that the Trustee alleges Fullerton received.

### TWENTY-THIRD DEFENSE

#### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Fullerton, Fullerton reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

### TWENTY-FOURTH DEFENSE

#### Double Recovery

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds.

This Court approved the Fairfield Settlement Agreement on June 7, 2011 and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment"). The Fairfield Settlement Agreement provides for the sharing of recoveries on the

Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the Liquidators recover from Fullerton in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should Fullerton be subject to recovery of identical funds from two separate entities.

## TWENTY-FIFTH DEFENSE

### Extraterritoriality

The Trustee's recovery from Fullerton of any transfer from Fairfield Sentry would constitute an impermissible extraterritorial application of U.S. law

## TWENTY-SIXTH DEFENSE

### Comity

The Trustee's recovery from Fullerton of any transfer from Fairfield Sentry would violate principles of comity.

## JURY DEMAND

Fullerton demands a trial by jury on all issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R.
## BANKR. P. 7012(B)

Fullerton does not consent to entry of final orders or judgment by the Bankruptcy Court.

## DEFENDANT'S REQUEST FOR RELIEF

WHEREFORE, Fullerton requests judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: New York, New York
January 13, 2023

ARNOLD & PORTER KAYE SCHOLER LLP

By: _/s/ Kent A. Yalowitz_
Kent A. Yalowitz
Daniel R. Bernstein
250 West 55th Street
New York, New York  10022
(212) 715-1000

*Counsel for Defendant Fullerton Capital Pte. Ltd.*