James V. Masella, III
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222
jmasella@pbwt.com

*Counsel for Naidot & Co. and Bessemer Trust Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | No. 08-01789 (CGM)<br><br>SIPA Litigation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>       Plaintiff,<br><br> v.<br><br>NAIDOT & CO. and BESSEMER TRUST COMPANY,<br><br>       Defendants. | Adv. Pro. No. 11-02733 (CGM) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................ ii

ARGUMENT ........................................................................................................1

I.     THE TRUSTEE'S CLAIMS AGAINST BTC DO NOT MEET THE
      REQUIREMENTS OF RULE 15(c)......................................................................1

     A.    Rule 15(c) does not permit relation back when the plaintiff adds, rather
         than substitutes, a defendant ..............................................................1

     B.    The Trustee has not shown BTC knew or should have known about his
         purported "mistake" ...........................................................................6

II.     BTC AND NAIDOT ARE MERE CONDUITS AND NOT TRANSFEREES ................11

III.    IF DEFENDANTS ARE TRANSFEREES, THE TRUSTEE'S CLAIMS ARE
       BARRED BY SECTION 546(e) ......................................................................13

     A.    The Amended Complaint establishes the prerequisites for a 546(e) defense
         based on Fairfield Sentry's contracts with its investors.........................15

     B.    The safe harbor protects Defendants regardless of Fairfield Sentry's
         knowledge ........................................................................................16

IV.    IF DEFENDANTS ARE SUBSEQUENT TRANSFEREES, THE TRUSTEE'S
       CLAIMS ARE BARRED BY SECTION 550(b) ...............................................17

     A.    Defendants took for value ..................................................................18

     B.    Defendants received in good faith ......................................................18

CONCLUSION....................................................................................................20

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdell v. City of New York*,
  759 F. Supp. 2d 450 (S.D.N.Y. 2010)..........................................................................2, 3, 4, 9

*In re Astropower Liquidating Trust*,
  No. 04-10322 (MFW), 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006)............................11

*In re Bankruptcy Estate of Norske Skogindustrier ASA*,
  629 B.R. 717 (Bankr. S.D.N.Y. 2021) ...................................................................................10

*Barrow v. Wethersfield Police Dep't*,
  66 F.3d 466 (2d. Cir. 1995)...................................................................................................3, 4

*Bayerische Landesbank v. Aladdin Capital Management, LLC*,
  289 F.R.D. 401 (S.D.N.Y. 2013) ..............................................................................................9

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Rev. Trust)*,
  773 F.3d 411 (2d Cir. 2014)....................................................................................14, 15, 16, 17

*Briggs v. Cnty of Monroe*,
  215 F. Supp. 3d 213 (W.D.N.Y. 2016) ....................................................................................2

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  No. 13-cv-2581 (PKC) (JLC), 2019 WL 4007361 (S.D.N.Y. Aug. 26, 2019).........................4

*Ceara v. Deacon*,
  916 F.3d 208 (2d Cir. 2019)..................................................................................................3, 4

*In re Enron Corp.*,
  357 B.R. 257 (Bankr. S.D.N.Y. 2006) ...................................................................................10

*In re Enron Corp.*,
  361 B.R. 36 (Bankr. S.D.N.Y. 2006) .....................................................................................12

*In re Finley*, *Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
  130 F.3d 52 (2d Cir. 1997)...............................................................................................11, 12

*Fischer v. Forrest*,
  No. 14-cv-1304 (PAE) (AJP), 2017 U.S. Dist. LEXIS 5498 (S.D.N.Y. Jan. 13,
  2017) ........................................................................................................................................2

*Harrah's Atl. City Operating Co., LLC v. Lamonica (In re JVJ Pharmacy Inc.)*,
  630 B.R. 388 (S.D.N.Y. 2021)................................................................................................12

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013)...................................................................................3

*Holliday v. Credit Suisse Sec. (USA) LLC*,
    2021 U.S. Dist. LEXIS 173359 (S.D.N.Y. Sep. 10, 2021)....................................15

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) ...........................................................................11

*Javier H. v. Garcia-Botello*,
    No. 02-cv-0523S, 2009 WL 10681860 (W.D.N.Y. 2009).....................................10

*Jhagroo v. Brown*,
    No. 1:16-cv-03426 (MKV) (SDA), 2020 U.S. Dist. LEXIS 111587 (S.D.N.Y.
    June 25, 2020)........................................................................................................2

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010)...................................................................................... *passim*

*In re Lyondell Chemical Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re
    Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) ...............13

*Neal v. Wilson*,
    239 F. Supp. 3d 755 (S.D.N.Y. 2017)......................................................................2

*Perlman v. Wells Fargo Bank, N.A.*,
    559 F. App'x 988 (11th Cir. 2014) ........................................................................12

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .....................................................................19

*Picard v. Bank Vontobel AG
    f/k/a Bank J. Vontobel & Co. AG and Vontobel Asset Management Inc.*, Adv.
    Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov. 18,
    2022) .....................................................................................................................18

*Picard v. Multi-Strategy Fund Ltd.*,
    No. 22-cv-06502 (JSR), 2022 U.S. Dist. LEXIS 200858 (S.D.N.Y. Nov. 3,
    2022) ..........................................................................................................15, 16, 17

*Picard v. Standard Chartered Financial Services (Luxeumbourg) S.A.*,
    No. 08-01789 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023).......11, 12, 13

*Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*,
    No. 08-cv-42 (JG)(WP), 2015 WL 13650032 (E.D.N.Y. June 24, 2015) ...............4

*In re Pretty Girl, Inc.*,
    644 B.R. 298 (Bankr. S.D.N.Y. 2022) ...................................................................12

*In re Randall's Island Fam. Golf Centers*,
    No. 02-2278, 2002 WL 31496229 (Bankr. S.D.N.Y. Nov. 8, 2002) ....................................4, 5

*Rayfield v. City of Grand Rapids*,
    768 F. App'x 495 (6th Cir. 2019) .......................................................................2

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 (JSR), 2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15,
    2013) .............................................................................................................14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Nos. 08-01789 (SMB), 10-05355 (SMB), 2020 Bankr. LEXIS 184 (Bankr.
    S.D.N.Y. Jan. 23, 2020) .................................................................................18

*Sounds Exp. Intern. Ltd. v. Am. Themes and Tapes, Inc.*,
    101 F.R.D. 694 (S.D.N.Y. 1984) ...................................................................10

*Turnbull v. JPMorgan Chase & Co.*,
    No. 21-cv-3217 (JGK), 2022 U.S. Dist. LEXIS 35660 (S.D.N.Y. Feb. 24,
    2022) .............................................................................................................19

*In re Vitamin C Antitrust Litigation*,
    995 F. Supp. 2d 125 (E.D.N.Y. 2014) ...........................................................3, 4, 5

**Statutes**

11 U.S.C. § 546(e) ...............................................................................................13, 14, 15

11 U.S.C. § 550(a) ...............................................................................................11

11 U.S.C. § 550(b) ...............................................................................................17

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) .......................................................................13

Fed. R. Civ. P. 4(m) ...............................................................................................7

Fed. R. Civ. P. 15(c) ...............................................................................................1, 2, 6, 7, 11

iv

Defendants Naidot & Co. ("Naidot") and Bessemer Trust Company ("BTC") respectfully submit this reply brief in further support of their motion to dismiss.

## ARGUMENT

### I.    THE TRUSTEE'S CLAIMS AGAINST BTC DO NOT MEET THE REQUIREMENTS OF RULE 15(c)

The Trustee does not contest that his claim against BTC comes more than ten years after the expiration of the statute of limitations. *See* Memorandum of Law in Support of Defendants' Joint Motion to Dismiss, ECF No. 103 ("Mot."), at 2-3. Instead, the Trustee maintains that he can rely on Rule 15(c) of the Federal Rules of Civil Procedure ("Rule 15(c)") to add BTC as a defendant. Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 106 ("Op. Br."), at 6. The Trustee is wrong for at least two reasons. *First*, Rule 15(c) does not cover any and all mistakes a plaintiff makes, but only allows claims to relate back when the plaintiff substitutes a mistakenly identified defendant. *Second*, even if a mistake cognizable under Rule 15(c) were at issue here (which it is not), the burden is still on the Trustee to show that BTC knew or should have known that it was the proper defendant all along. But there is nothing in the original Complaint that put BTC on such notice. The Trustee has failed to meet his burden of demonstrating compliance with Rule 15(c) and, therefore, all claims against BTC must be dismissed.

### A.    Rule 15(c) does not permit relation back when the plaintiff adds, rather than substitutes, a defendant

Rule 15(c)(1)(C) applies only when a plaintiff seeks to substitute the proper defendant for a mistakenly named one. This is apparent from a plain reading of the rule: A claim only relates back if "the amendment *changes the party* or the *naming* of the party." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). Courts frequently rely on that language to hold that a plaintiff

cannot rely on Rule 15(c) when, like here, it seeks to <u>add</u> a new party. *See, e.g.*, *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 502 (6th Cir. 2019) ("Rule 15(c) is inapplicable when the plaintiff seeks to *add*, rather than subtract or change, the named defendants."); *Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) ("Rule 15(c)(1)(C) . . . would appear to bar relation back because the rule applies only where an amendment 'changes the party or the naming of the party against whom a claim is asserted'—not where an amendment adds a previously unmentioned party."); *Briggs v. Cnty of Monroe*, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016) ("By its express language, the relation-back language of Rule 15(c)(1)(C) applies to an amendment that 'changes' a named party due to a mistake concerning the proper party's identity, not to a situation where an entirely new party is added.") (citations omitted).

In arguing the contrary, the Trustee does not cite any Second Circuit precedent holding that Rule 15(c) allows parties to be added. Nor could he, because there is none. Instead, he cites a handful of outlier cases that are not binding on this Court. Op. Br. at 14-15. These cases are contradicted by the weight of more recent decisions in the Southern District of New York. *See Jhagroo v. Brown*, No. 1:16-cv-03426 (MKV) (SDA), 2020 U.S. Dist. LEXIS 111587, *5-6 (S.D.N.Y. June 25, 2020); *Neal*, 239 F. Supp. 3d at 759; *Fischer v. Forrest*, No. 14-cv-1304 (PAE) (AJP), 2017 U.S. Dist. LEXIS 5498, *29 (S.D.N.Y. Jan. 13, 2017).[1]

The Trustee also relies on *Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010), for the proposition that *Krupski v. Costa Crociere S.p.A.*[2] essentially abrogated Second Circuit authority rejecting the application of Rule 15(c) when adding new parties. The

---

[1] The Trustee objects to *Fischer* because it fails to cite to the Trustee's preferred line of cases and to *Jhagroo* because it "acknowledges contrary authority" and references (in a footnote) other reasons to deny relation back. Op. Br. at 15. Both decisions, however, expressly *reject* the Trustee's position and endorse the plain-language reading of Rule 15(c)(1)(C).
[2] 560 U.S. 538 (2010).

2

Trustee's point suffers from a faulty foundation. *Krupski* did not involve adding a new party at all. Instead, it involved substituting the actual culpable party for a mistakenly named party. *Krupski*, 560 U.S. at 554-555.

Moreover, *Abdell*'s analysis of the kind of mistake cognizable under Rule 15(c) is contrary to more recent authority. The 2014 decision in *In re Vitamin C Antitrust Litigation*, 995 F. Supp. 2d 125 (E.D.N.Y. 2014) ("*Vitamin C*"), provides a framework for understanding Second Circuit precedent in light of *Krupski*. There, Judge Cogan helpfully distinguished between mistakes of identity that are covered by Rule 15(c) and other kinds of mistakes that are not. *Vitamin C* refers to mistaken-identity cases as "'wrong party' cases, [ ] where a plaintiff has sued the wrong party or used the wrong name and seeks to amend to substitute the right party or the right name." 995 F. Supp. 2d at 129. *Krupski*, for example, fits squarely into this category. 560 U.S. at 554. On the other hand, Rule 15(c) does not apply in "'additional party' cases, [ ] where the defendants originally sued are indeed exposed to liability on the theories alleged, but the plaintiff has omitted an additional party against whom the plaintiff also could have stated a claim." *Vitamin C*, 995 F. Supp. 2d at 129. That is exactly what has happened here.

*Vitamin C*'s conclusion is bolstered by the Second Circuit's recognition that *Abdell* and cases like it misunderstood the import of *Krupski*. "In the Second Circuit, [] lack of knowledge does not constitute a 'mistake' for relation back purposes." *Vitamin C*, 995 F. Supp. 2d at 130 (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d. Cir. 1995)). Judge Cogan recognized that although "several district courts have questioned the continued viability of the *Barrow* rule" in the wake of *Krupski*, the Second Circuit reaffirmed *Barrow* three years after *Krupski* was decided. *Vitamin C*, 995 F. Supp. 2d at 130 (citing *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013)); *see also Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (holding

that *Krupski* did not abrogate *Barrow*'s rule that a lack of knowledge is not the kind of mistake

covered by Rule 15(c)(1)(C)).[3] *Abdell* and courts that had held otherwise, like the Trustee,

"failed to recognize that *Krupski* was a wrong party case if ever there was one, and emphatically

not an additional party case." *Vitamin C*, 995 F. Supp. 2d at 130.

Moreover, multiple cases decided after *Abdell* have subscribed to *Vitamin C*'s conclusion

that "additional party" cases are not addressable through Rule 15(c). *See CBF Industria de Gusa

S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC) (JLC), 2019 WL 4007361, at *3-4 (S.D.N.Y.

Aug. 26, 2019) (magistrate op.) (rejecting *Abdell*'s analysis and agreeing with the analysis put

forth in *Vitamin* C); *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*, No.

08-cv-42 (JG)(WP), 2015 WL 13650032, at *12 (E.D.N.Y. June 24, 2015) (magistrate op.)

(rejecting contrary authority to hold that "the court is persuaded by Judge Cogan's compelling

analysis in *Vitamin C*, which demonstrated that the plain meaning of Rule 15, the Rules

Advisory Committee Notes, and *Krupski* all evince a preference for limiting Rule 15(c) mistakes

to wrong-party cases.").

The Trustee cites *In re Randall's Island Fam. Golf Centers*, No. 02-2278, 2002 WL

31496229 (Bankr. S.D.N.Y. Nov. 8, 2002), for the proposition that Rule 15(c) is not limited to

misnomers or misidentifications. Op. Br. at 9-10. But *Randall's Island*'s discussion of relation

back is, unlike *Barrow*, thoroughly abrogated by *Krupksi*. The court's analysis was premised on

the understanding, which the Trustee himself contends is untenable following *Krupski*, that it is

---

[3] The Trustee claims in a footnote, without explanation, that cases like *Barrow* and *Ceara* which involve John Doe defendants are "easily distinguishable based on their facts." Opp. Br. at 12 n.7. Not so. The use of a John Doe is just one manifestation of demonstrating a lack of knowledge about ultimate liability. Indeed, the prohibition against *pro se* defendants using Rule 15(c) to relate back when they discover newly liable parties should apply *a fortiori* to the Trustee, who is not afforded the same pleading latitude as *pro se* plaintiffs. *See Precision Associates* at *12 ([A]dditional-party cases are . . . conceptually analogous to John Doe cases, where the Second Circuit does not allow lack of information about the identities of additional parties to constitute a 'mistake' under Rule 15.").

the *plaintiff's* knowledge that matters. *See id*. at *3 ("The focus [for relation back] is on *the plaintiff's* knowledge at the time of the original pleading.") (emphasis added); ("Relation back usually depends on what *the plaintiff* knew about the identity and involvement of the added defendant when he filed the timely pleading.") (emphasis added).

As Judge Cogan explained in *Vitamin C*, Rule 15(c)'s text makes clear that the kind of "mistake" it requires is limited to wrong-party cases:

> As a matter of plain language, [Rule 15(c)(1)(C)(ii)] would appear to include only 'wrong party' cases, and not 'additional party' cases This is because the "mistake" has to "concern[ ]" the "identity" of the "proper party [ ]." In an "additional party" case like this one, there generally will be no "mistake concerning" the proper party's "identity." The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable. If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so.

*Vitamin C*, 995 F. Supp. 2d at 129.

In support of this conclusion, Judge Cogan pointed to advisory committee notes that make express provision for misnomers and misidentifications, but not adding new, separate parties. *Id*. at n. 2 (citing Notes of the Advisory Committee on Rules, 1991 Amendment to Rule 15(c)(3)). Finally, Judge Cogan identified the policy rationale underlying opposition to the Trustee's unsupported interpretation of Rule 15(c).

> Adopting plaintiffs' expansive theory of relation back would gut the policies underlying periods of limitation, because filing a complaint would effectively become an indefinite toll of the statute of limitations against any defendants who learn of the action and who might also be liable for the conduct alleged, under the theory that those defendants "should have known" that the plaintiff had made a "mistake" in not suing them as well. Relation-back would swallow the general principles of statutes of limitations.

*Id*. at 131.

*Vitamin* C's conclusion is backed up by the plain language of the statute, important policy considerations, and Second Circuit precedent. Omitting an additional party from the complaint based on a lack of knowledge is not, therefore, the kind of "mistake" covered by Rule

5

15(c). As the Trustee admits, this is precisely the case here. The Trustee acknowledges that he "intended to sue the recipient of the Subsequent Transfers identified in the original Complaint, *whom he mistakenly believed was limited to Naidot*." Op. Br. at 9 (emphasis added). The only "mistake" was purportedly not understanding that Naidot is an entity fully controlled by BTC. But nowhere does the Trustee claim that naming Naidot was an error. To the contrary, the Trustee is striving to ensure that Naidot remains a defendant. *See* Op. Br. at 9-10 ("BTC *should also have been named* as a subsequent transferee in the original Complaint and both BTC and Naidot should be in the action until such time as further information . . . can be obtained." (emphasis added)); *id.* at 17 ("The Trustee does not allege . . . that Naidot is a mere conduit or otherwise not a transferee or proper party to the litigation.").

The weight of authority in this Circuit, supported by a plain reading of Rule 15(c), is that Rule 15(c) does not permit the addition of a new party, and a lack of knowledge about an additional party at the time of the original complaint does not count as a mistake under Rule 15(c)(1)(C). Because that is precisely the "mistake" (or strategic choice) that the Trustee admittedly made in choosing not to name BTC as a defendant, Rule 15(c) does not allow claims against BTC to relate back.

**B.    The Trustee has not shown BTC knew or should have known about his purported "mistake"**

Even assuming that Rule 15(c) covers this kind of mistake (which it does not), the claims against BTC still cannot relate back. The Trustee does not dispute that he bears the burden of demonstrating that BTC knew or should have known it ought to have been sued back in 2011, but for his mistake. Far from carrying his burden, the Trustee does not provide any basis for his apparent belief that BTC should have known that BTC was omitted by mistake.

"[T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski*, 560 U.S. at 553-54. Nothing in that Complaint could possibly be interpreted as having indicated to BTC that the Trustee made a mistake and that BTC should have been implicated all along. To the contrary, the Complaint alleges that Naidot received money from Fairfield Sentry. *That remains the Trustee's position*. But the Trustee now takes the position that BTC should have known a mistake had been made because the Trustee's original Complaint allegedly misstated the relationship between Naidot and BTC. But even if that is the case, the Rule 15(c) inquiry is *not* whether a new defendant should have combed through the complaint to spot any errors; it is whether the new party knew or should have known that it was the party the plaintiff intended to sue all along. No evidence has been offered that suggests that was the case.

Apparently, the Trustee expects BTC to have acted as his advocate in developing the Trustee's litigation strategy. In his opposition brief, the Trustee offers the conclusory assertion that BTC affirmatively "knew the only reason it would not have been sued . . . is because the Trustee misunderstood BTC's role with regard to the Sentry Investments." Op. Br. at 11-12. He criticizes BTC for failing to see through his own "illogical" decision to sue "an obscure New Jersey partnership with no employees and unknown assets" rather than BTC. Op. Br. at 13.  But BTC had no way of knowing in 2011[4] what the Trustee's strategy was or how the Trustee would make litigation decisions. Indeed, one reason a plaintiff in a fraudulent-transfer action might

---

[4] The Trustee's original Complaint was filed on September 22, 2011. Rule 15(c) requires notice "within the period provided by Rule 4(m) for serving the summons and complaint," *i.e.*, 90 days. Fed. R. Civ. P. 15(c), 4(m). BTC had no reason to know within that period—or in any later period before the Trustee sought to amend his Complaint— that the Trustee had purportedly made a mistake.

7

hesitate to sue "a state-chartered bank and depository trust company" like BTC, Am. Compl., ECF No. 100, at ¶ 54, is the section 546(e) safe harbor.

To support his theory that BTC must have known the Complaint had it all wrong, and mistakenly named Naidot instead of itself, the Trustee points to two paragraphs of the original Complaint. Op. Br. at 9. The first, a statement buried in the "jurisdiction and venue" section of the original Complaint, states that Naidot "direct[ed] its investment with BLMIS through not just FGG, but also Bessemer Trust Company, N.A., located in New Jersey[.]" Complaint, ECF No. 1 ("Orig. Compl."), ¶ 6. Even if that vague statement is somehow inaccurate (which itself is not clear), it is not apparent what bearing it has on what BTC (a different legal entity) should have understood about the Trustee's intent. The second, describing the Defendant, alleges that Naidot "is an investment company with a principal point of contact at Bessemer Trust Company, N.A.,[5] 100 Woodbridge Center Drive, Woodbridge, New Jersey 07095." *Id*. ¶ 21. This allegation merely provides Naidot's address.[6] As to the actual transactions at issue, the original Complaint simply alleges that "[a]pproximately $13,654,907 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Naidot" and cites to an exhibit listing the four transactions. *Id*. ¶ 40.

The paucity of facts that could have indicated potential liability to BTC here contrasts with the plenitude of facts in the cases the Trustee now cites. Those cases extensively analyzed the *facts* allowing an inference that the new defendant knew it should have been sued all along.

---

[5] Indeed, "Bessemer Trust Company, N.A." is an entirely separate and distinct legal entity from Defendant "Bessemer Trust Company."

[6] The Trustee mischaracterizes this paragraph as alleging "that BTC was nothing more, for purposes of subscriptions and redemptions, than Naidot's 'principal point of contact,'" Op. Br. at 9, but neither that paragraph nor any other paragraph in the original Complaint makes that claim, or purports to describe the totality of the relationship between Naidot and BTC.

*See, e.g.*, *Bayerische Landesbank v. Aladdin Capital Management, LLC*, 289 F.R.D. 401, 403,

407 (S.D.N.Y. 2013) (new defendant presented misleading disclosures indicating that culpable

employees were employed by subsidiary entity, when they were in fact its own employees);

*Abdell*, 759 F. Supp. 2d at 459 (new defendant was a law enforcement officer who actively

participated in the arrest at issue in the original complaint).

     And by far the most detailed analysis of the facts underlying a mistake is found in

*Krupski*. There, the plaintiff tripped and fell on a cruise ship, and sought to sue the ship's owner

for damages. Looking at the cruise ticket, the plaintiff thought that "Costa Cruises" was the

correct entity to sue. *Krupski*, 560 U.S. at 543. As it turned out, the actual operator of the ship

was an Italian company named "Costa Crociere." *Ibid*. The Supreme Court held that "Costa

Crociere" knew or should have known as soon as the complaint was filed that it, not "Costa

Cruise," was the party the plaintiff meant to sue. In reaching that conclusion, the Court

highlighted a variety of facts and reasons "Costa Crociere" should have known a mistake had

been made:

- "Costa Cruise and Costa Crociere are related corporate entities with very similar names; 'crocierea' even means 'cruise' in Italian. This interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id*. at 556.

- "Because the complaint made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, and also indicated (mistakenly) that Costa Cruise performed those roles, Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only because of Krupski's misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'" *Id*. at 554–55 (internal citations omitted).

- "Costa Crociere's own actions contributed to passenger confusion over 'the proper party' for a lawsuit. The front of the ticket advertises that 'Costa Cruises' has achieved a certification of quality without clarifying whether 'Costa Cruises' is Costa Cruise Lines, Costa Crociere, or some other related 'Costa' company. Indeed Costa Crociere is

9

> evidently aware that the difference between Costa Cruise and Costa Crociere can be
> confusing for cruise ship passengers." *Id.* at 556–57 (internal citations omitted).

Those are the kinds of facts that might lead a new defendant to know it had been mistakenly left

out. Nothing similar is present here. The original Complaint did not describe transfers actually

made by BTC but mistakenly attributed to Naidot. Indeed, the Trustee to this day maintains that

the transactions were made in Naidot's name.[7] Am. Compl. ¶ 4. And the Trustee certainly cannot

argue that Naidot and BTC have such similar names that confusion is to be expected, nor does

the Trustee allege that BTC took any steps to hide or obfuscate its relationship with Naidot. After

all, the Trustee claims to have learned the truth about Naidot's relationship with BTC from

Naidot's own <u>public</u> filings. Op. Br. at 11. The Trustee simply has not demonstrated that BTC

should have known about his alleged mistake.

Perhaps hoping to rely on ignorance, the Trustee asks, in the alternative, that the Court

defer decision on relation back until discovery can "further clarify the roles played by Naidot and

BTC." Op. Br. at 16. But the Trustee's arguments for relation back fail as a matter of law.

Defendants do not rely on any facts other than those the Trustee himself alleges in the Amended

Complaint.[8] The Trustee nowhere explains what he expects to learn about "the roles played by

Naidot and BTC" that would license an addition rather than substitution under Rule 15(c), or that

---

[7] In his brief, the Trustee makes the puzzling statement that "it is clear that the Trustee intended to sue the recipient of the Subsequent Transfers identified in the original Complaint, whom he mistakenly believed was limited to Naidot." Op. Br. at 9. The Trustee does not explain how more than one entity can be *the* recipient, or how "the recipient" can be "limited" to Naidot. This vague argument is not equivalent to pointing to actions that were in fact completed by BTC but mistakenly attributed to Naidot.

[8] The Trustee's cited cases do not help the Trustee. *In re Bankruptcy Estate of Norske Skogindustrier ASA*, 629 B.R. 717, 747 (Bankr. S.D.N.Y. 2021), did not actually rule on that issue. *Id.* at 747 ("[B]ecause the avoidance claims are timely under Section 108(a), it is not necessary to resolve the relation-back issue under Rule 15."). The other three predate *Krupski* and are legally or factually inapposite. *In re Enron Corp.*, 357 B.R. 257, 269-270 (Bankr. S.D.N.Y. 2006) (focusing on whether plaintiff made a legal error rather than on what the added defendant reasonably should have known); *Javier H. v. Garcia-Botello*, No. 02-cv-0523S, 2009 WL 10681860 (W.D.N.Y. 2009) (magistrate opinion) (concerning a potential misnomer in which plaintiff potentially confused John J. Kasmer, LLC with John J. Kasmer Farm, LLC); *Sounds Exp. Intern. Ltd. v. Am. Themes and Tapes, Inc.*, 101 F.R.D. 694, 697 (S.D.N.Y. 1984) (newly added party was "at the center of plaintiff's initial allegations").

would support his claim that BTC should have known from the original Complaint that it was the party the Trustee meant to sue.

In sum, the Trustee has not excused his failure to comply with the statute of limitations. Rule 15(c)(1)(C) does not permit relation back when adding rather than substituting defendants. Nor does it excuse a plaintiff's lack of knowledge about additional liable parties. And, even putting aside those defects, the Trustee has not shown that BTC should have known it was an intended defendant all along. The claims against BTC must be dismissed because the statute of limitations has expired.

## II.   BTC AND NAIDOT ARE MERE CONDUITS AND NOT TRANSFEREES

The Trustee argues that Defendants' "mere conduit" argument is premature because the "mere conduit" inquiry is an affirmative defense. Op. Br. at 18. It is not.[9] Rather, the "mere conduit" test in the Second Circuit rests on an interpretation of the statutory term "transferee," which is an element of the cause of action under section 550. *See In re Finley*, *Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56-58 (2d Cir. 1997) (reading "transferee" to exclude mere conduits); 11 U.S.C. § 550(a) (allowing for recovery from a "transferee"). The Trustee cites only two cases expressly holding that the defense is an affirmative defense, both of which are out of circuit and do not indicate a similar understanding of the defense. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1305 (11th Cir. 2020) (characterizing the defense as "a judicially created exception grounded in the equitable powers of the bankruptcy courts")*; In re Astropower Liquidating Trust*, No. 04-10322 (MFW), 2006 WL

---

[9] Defendants note that this Court, citing out-of-circuit authority, recently suggested that mere-conduit status is an affirmative defense. *Picard v. Standard Chartered Financial Services (Luxembourg) S.A.*, No. 08-01789 (CGM), 2023 WL 118787, at *7–8 (Bankr. S.D.N.Y. Jan. 6, 2023). As noted below, Defendants believe this to be an incorrect application of applicable law.

1173853, at *1 (Bankr. D. Del. Apr. 19, 2006) ("agree[ing]" without analysis that the mere

conduit defense is an affirmative defense).[10]

The Trustee further argues that "mere conduit" status is a fact-bound inquiry that cannot

be addressed at the motion-to-dismiss stage. That is also inaccurate. *See Perlman v. Wells Fargo*

*Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014) (affirming dismissal based on the mere-

conduit defense at the motion-to-dismiss phase, even on an affirmative-defense standard); Mot.

at 14 (collecting cases). The Trustee was required to plead that Defendants had dominion and

control over the transferred funds, or at the very least, facts that could support an inference that

they had such dominion and control. *See Harrah's Atl. City Operating Co., LLC v. Lamonica (In*

*re JVJ Pharmacy Inc.)*, 630 B.R. 388, 408 (S.D.N.Y. 2021) (for the mere conduit analysis, "the

relevant inquiry in this Circuit is whether an entity exercised dominion and control over a

debtor's funds"). The Trustee failed to do so.

The Trustee did not allege that either BTC or Naidot controlled the transfers, profited

from them, or even charged fees to their customers or clients for making the transfers on their

behalf. The *only* substantive allegation regarding the transfers is contained in paragraph 72 of the

Amended Complaint: "Fairfield Sentry subsequently transferred a portion of the Fairfield Sentry

Initial Transfers to Defendants." Am. Compl. ¶ 72. This Court can contrast that bare allegation

with the significant facts outlined against the defendants in *Picard v. Standard Chartered*

*Financial Services (Luxeumbourg) S.A.*, 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023).

There, this Court pointed to allegations that the defendants "reviewed and approved investments

---

[10] The Trustee also cites two bankruptcy cases from the Southern District of New York that have held that the burden of proof for a "mere conduit" defense lies with the defendant. *In re Pretty Girl, Inc.*, 644 B.R. 298, 309 (Bankr. S.D.N.Y. 2022); *In re Enron Corp.*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006). These cases do not discuss pleading standards in this context. To the extent they suggest that a plaintiff need not plead dominion and control, Defendants respectfully disagree with these decisions in light of the statutory analysis in *Finley*.

for their clients" and "generate[d] fees for itself for managing and selling the purchase of Fairfield Sentry shares" in order to "reap profits." *Id.* at \*7–\*8. Based on those specific allegations, this Court could plausibly infer that those defendants exercised dominion and control over the transfers. No such inference can be drawn here, where the Trustee alleges only that the money was transferred to BTC and Naidot. Those bare assertions are insufficient to establish a plausible inference that BTC and Naidot meet the legal definition of a transferee.

Dismissal based on the mere conduit theory is particularly appropriate with respect to Naidot. Not only did the Trustee fail to allege that Naidot exercised dominion and control over the funds, but his allegations definitively prove that Naidot is a "mere conduit" as a matter of law. In the Amended Complaint, Naidot is identified as a "nominee." By definition, nominees cannot maintain dominion or control over the funds. *See In re Lyondell Chemical Co.*, 503 B.R. 348, 382–383 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) (identifying nominees as an example of an entity that cannot be held liable for a fraudulent transfer), *Black's Law Dictionary* (11th ed. 2019), nominee (defining "nominee" to mean "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others"). Because Naidot was a "nominee," it could not exercise dominion or control over the funds, and therefore as a matter of law it is a mere conduit.

### III.    IF DEFENDANTS ARE TRANSFEREES, THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e)

Section 546(e) of the Bankruptcy Code bars the Trustee from avoiding under section 544 any transfer that (1) is "made by or to (or for the benefit of)" certain qualifying entities, including stockbrokers and financial institutions, and (2) is a "settlement payment" or made "in connection

with a securities contract." 11 U.S.C. § 546(e). As shown in Defendants' opening brief, both

BLMIS and BTC itself are qualifying entities—BLMIS as a stockbroker and BTC as a financial

institution. Mot. at 19. The Trustee does not (and cannot) dispute this proposition. Nor can the

Trustee properly contest that Fairfield Sentry had securities contracts with its investors and that

the alleged transfers from Fairfield Sentry to Defendants were in connection with those contracts.

*See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 U.S.

Dist. LEXIS 56042, at *45 (S.D.N.Y. Apr. 15, 2013) ("investment fund subscription agreements

and redemption requests" are securities contracts for purposes of section 546(e)); Am. Compl.

¶¶ 63-65 (alleging that each of Fairfield Sentry's investors, including Defendants, had

subscription agreements with Fairfield Sentry); *id.* ¶ 75 ("The Subsequent Transfers represent a

redemption of equity interest by Defendants in Fairfield Sentry"). Additionally, the Second

Circuit has held that BLMIS's agreements with its customers were "securities contracts,"

payments to those customers were in connection with those securities contracts, and those

payments were also settlement payments. *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida*

*Fishman Rev. Trust)*, 773 F.3d 411, 418-423 (2d Cir. 2014) ("*Fishman*").

The Trustee contends that, even so, his claims can survive a motion to dismiss, for two

reasons. *First*, the Trustee argues that Defendants cannot rely on the securities contracts between

Fairfield Sentry and Defendants, because the factual predicates for such a defense cannot be

resolved at the pleading stage. Op. Br. 28. *Second*, the Trustee argues that Defendants cannot

rely on any agreements between BLMIS and Fairfield Sentry, because the Trustee has pleaded

that Fairfield Sentry had knowledge of the fraud and the safe harbor does not apply under such

circumstances. Op. Br. 26-28. The Trustee is wrong on both points.

14

A.      **The Amended Complaint establishes the prerequisites for a 546(e) defense based on Fairfield Sentry's contracts with its investors**

The Trustee's claim for recovery from Defendants is grounded in transfers from BLMIS, a stockbroker. Mot. at 19. Certain agreements between Fairfield Sentry and its investors, including the redemption requests under which Fairfield Sentry made payments to those investors, are securities contracts. *Supra* at 14. The Trustee does not appear to contest either point. What remains is to determine whether the transfers from BLMIS to Fairfield Sentry were "in connection with" those securities contracts. 11 U.S.C. 546(e).

They were. "As the Second Circuit concluded, Congress intended for 'in connection with a securities contract' to be interpreted expansively." *Holliday v. Credit Suisse Sec. (USA) LLC*, 2021 U.S. Dist. LEXIS 173359, at *19 (S.D.N.Y. Sep. 10, 2021) (citing *Fishman*, 773 F.3d at 418). "In the context of § 546(e), a transfer is 'in connection with' a securities contract if it is 'related to' or 'associated with' the securities contract." *Fishman*, 773 F.3d at 421. As a "BLMIS feeder fund" that invested nearly all of its assets with BLMIS, Am. Compl. ¶ 2, Fairfield Sentry's business model required using transfers from BLMIS to pay its investors in accordance with the subscription agreements with them and their redemption requests. Fairfield Sentry itself did not have a meaningful independent existence. Second Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (CGM), ECF No. 286, ¶ 88 (incorporated into the Amended Complaint in this action) ("Fairfield Sentry was a shell entity with no employees"). As such, BLMIS's transfers to Fairfield Sentry were "in connection with" (*i.e.*, related to) those securities contracts.

The Trustee relies on *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-06502 (JSR), 2022 U.S. Dist. LEXIS 200858 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy Fund*"), for the proposition that the question of whether such initial transfers were "in connection with" securities contracts

15

between Fairfield and the defendant-appellants was not resolvable on the pleadings. 2022 U.S.

Dist. LEXIS 200858, *25-*26. In that case, the district court gave the example of an "initial

transfer [that] came as part of a regularly scheduled distribution from Madoff Securities to

Fairfield that occurred irrespective of any specific agreements between Fairfield and its clients,"

or one that was "solicited . . . without distributions to any specific client in mind, so as to ensure

a generally adequate cash pool with which to cover whichever client redemption requests came

in." *Id.* Defendants respectfully disagree with *Multi-Strategy Fund*. "Section 546(e) sets a low

bar for the required relationship between the securities contract and the transfer sought to be

avoided," requiring merely "a connection to the securities contract." *Fishman*, 773 U.S. at 422.

Funds obtained for paying redemption requests, even if not earmarked for a specific redemption

request, have such a connection. Fairfield Sentry's securities contracts with its investors have a

sufficient nexus to the transfers as to bar their avoidance under section 546(e).

### B.    The safe harbor protects Defendants regardless of Fairfield Sentry's knowledge

At the time Defendants filed their opening brief, they understood this Court's rulings as

barring both initial and subsequent transferees from invoking the 546(e) safe harbor where the

initial transferee had knowledge of the fraud, even where the statutory elements of the defense

were met. As such, Defendants argued that Fairfield Sentry was not the initial transferee and that

this Court's rulings denying the safe harbor's protection to subsequent transferees were incorrect.

Mot. at 17-24. *Multi-Strategy Fund*, which was issued after Defendants' opening brief was filed,

makes clear, however, that it is the district court's view that section 546(e)'s "express terms"

govern, but where a transferee knew of the fraud, payments to that transferee are neither

"settlement payments" nor "transfers in connection with" securities contracts between the

transferee and the transferor—*i.e.*, such transfers do not meet the statutory elements of the defense. 2022 U.S. Dist. LEXIS 200858, at *19.

Defendants believe that the approach in *Multi-Strategy Fund* misstates the law.  Relying on the broad statutory definition of "securities contract," the Second Circuit held in *Fishman* that "[b]ecause those provisions [defining 'securities contract' and the safe harbor] do not contain a purchase or sale requirement, whether or not BLMIS actually transacted in securities is not determinative." 773 F.3d at 420. "[W]hether an agreement satisfies the definition of 'securities contract' does not depend on the broker's performance, because a breach of a contract neither changes nor nullifies the nature of the underlying agreement." *Id*. Although the Second Circuit in *Fishman* did not specifically consider a scenario in which a transferee receives with knowledge of the underlying fraud, its logic suggests that even actual knowledge that no securities transactions were taking place would not establish that a "securities contract" does not exist. Simply stated, the broad statutory definition of a "securities contract" does not require either the presence of actual securities transactions or the belief in such presence.[11] The Trustee's claims are barred by section 546(e).

## IV.     IF DEFENDANTS ARE SUBSEQUENT TRANSFEREES, THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 550(b)

Section 550(b) bars recovery in a fraudulent transfer action from "a transferee that takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b). In Defendants' opening brief, they noted the absence of allegations in the Amended Complaint suggesting that Defendants knew or should have known about the BLMIS

---

[11] Because the section 546(e) safe harbor protects both initial and subsequent transferees, this approach is entirely consistent with Congress's purpose of protecting disruption to the legitimate expectations of investors. *Fishman*, 773 F.3d at 420.

fraud.  Mot. at 15-16. The Trustee's opposition does not point to any either. *See* Op. Br. 28-31. Instead, the Trustee primarily argues that this defense is not appropriately decided on a motion to dismiss. Here, however, *the Trustee's own allegations*—and the absence of allegations supporting bad faith—effectively establish Defendants' section 550(b) defense.

### A.    Defendants took for value

The Trustee pleaded that "[t]he Subsequent Transfers represent a redemption of equity interest by Defendants in Fairfield Sentry." Am. Compl. ¶ 75. "Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-01789 (SMB), 10-05355 (SMB), 2020 Bankr. LEXIS 184, at *13 (Bankr. S.D.N.Y. Jan. 23, 2020). The Trustee cites *Picard v. Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG and Vontobel Asset Management Inc.*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov. 18, 2022), for the proposition that "value" is a fact question to be resolved at summary judgment or trial. But the complaint in *Vontobel*, unlike the Amended Complaint here, "contain[ed] no mention of Defendants exchanging shares for consideration." 2022 WL 17087560 at 11; *see* Am. Compl. ¶ 75. *Vontobel* holds that the "for value" requirement is not met if a transferee who redeems shares knew at the time of redemption that the shares were worthless. *Id*. at 11. Here, however, Defendants could only have known the shares were worthless if they knew of the fraud—and it is not plausible that Defendants (unlike the Securities and Exchange Commission and countless others) had such knowledge. *See* Mot. at 15-16; *infra* at 19.  Based on the Trustee's own pleadings, Defendants took for value.

### B.    Defendants received in good faith

In Defendants' opening brief, they recounted the Amended Complaint's litany of allegations about how BLMIS sought to defraud investors and noted that the Madoff entities

18

successfully fooled the SEC. Mot. at 15-16. Defendants explained the implausibility of any

suggestion that, had Defendants known of the fraud, they would have continued to invest. *Id*. at

16. The Trustee barely contests these points. The Trustee argues that "the SEC's failure to detect

Madoff's fraud, for instance, is not dispositive as to a defendant's good faith" (Op. Br. 30), but

the case the Trustee cites in support references exactly what the Trustee lacks here—a specific

allegation supporting a lack of good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89,

120 (Bankr. S.D.N.Y. 2016) ("Unlike the vast majority of creditors, [defendant] was a

participant in the Schupt process which informed him that Madoff was not trading the securities

reflected as the compensation for steering investors to BLMIS."). The Trustee contends that

these arguments are premature. But "[i]n deciding a motion to dismiss, the Court is not obligated

to suspend its common sense." *Turnbull v. JPMorgan Chase & Co.*, No. 21-cv-3217 (JGK),

2022 U.S. Dist. LEXIS 35660, at *16 (S.D.N.Y. Feb. 24, 2022). As a matter of law, the Trustee's

pleadings render it implausible that Defendants acted in bad faith.

## CONCLUSION

For the reasons discussed above, and in Defendants' opening brief, this Court should

dismiss the Trustee's fraudulent transfer claims against Defendants, and grant such other and

further relief as the Court deems just and proper.

Dated:  New York, New York
        January 19, 2023

 

Respectfully submitted,

*/s/ James V. Masella, III*
James V. Masella, III
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222
jmasella@pbwt.com

*Counsel for Naidot & Co. and Bessemer Trust Company*