**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02910 (CGM) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH BANK (SUISSE) SA n/k/a BANK JULIUS BÄR & CO. AG a/k/a BANK JULIUS BAER & CO. LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT MERRILL LYNCH BANK (SUISSE) SA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................3

I.    THE BLMIS PONZI SCHEME.........................................................................3

II.   MLBS AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS...................................3

ARGUMENT ..........................................................................................................8

I.    THIS COURT HAS PERSONAL JURISDICTION OVER MLBS ...................................8

      A.    MLBS Purposefully Availed Itself of the Laws and Privileges of New
            York by Investing in the Fairfield Funds.................................................9

            1.    MLBS's Intentional Investments in BLMIS Through the Fairfield
                  Funds Establish Minimum Contacts ............................................10

                  a.    *BLI* and Recent Decisions of this Court Support
                        Jurisdiction Over MLBS .................................................11

            2.    The Forum Selection and Choice of Law Clauses in the
                  Subscription Agreements and Services Agreement Are Strong
                  Jurisdictional Contacts ...............................................................15

            3.    MLBS's Purposeful Use of New York Bank Accounts Supports
                  Specific Jurisdiction...................................................................16

            4.    MLBS's Communications with New York in Connection with Its
                  Investments Also Establish Minimum Contacts ..........................20

            5.    MLBS's Filing of Customer Claims Is Another Jurisdictional
                  Contact .....................................................................................22

            6.    The Underlying Cause of Action Arises Out of and Relates to
                  MLBS's Contacts with the Forum ..............................................22

      B.    The Exercise of Personal Jurisdiction Is Reasonable ............................23

      C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery..................24

II.   THE AMENDED COMPLAINT AND THE INCORPORATED MATERIAL
      COMPLY WITH RULES 8 AND 10 ...............................................................24

III.    THE TRUSTEE ADEQUATELY PLEADS THAT MLBS RECEIVED BLMIS
        CUSTOMER PROPERTY .......................................................................................26

        A.      The Trustee Has Met His Pleading Burden ...........................................................27

        B.      MLBS's Tracing Arguments Are Inappropriate at the Pleading Stage .................28

IV.     SECTION 546(e) DOES NOT BAR RECOVERY FROM MLBS..................................30

V.      THE TRUSTEE ADEQUATELY ALLEGES ACTUAL FRAUDULENT
        INTENT UNDER SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE...............32

VI.     THE SECTION 550(b) AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT
        THE MOTION TO DISMISS STAGE...............................................................................35

        A.      MLBS Cannot Show That It Gave Value on a Motion to Dismiss........................36

        B.      The Amended Complaint Does Not Demonstrate That MLBS Received
                the Transfers in Good Faith ..................................................................................36

        C.      MLBS Is Not Entitled to Dismissal of Subsequent Transfer Recovery
                Claims by Recasting Them as Preference Claims .................................................39

CONCLUSION.....................................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................27, 29

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996) ...........................................................................................9

*Anwar v. Fairfield Greenwich Ltd.*,
    286 F.R.D. 258 (S.D.N.Y. 2012) ..............................................................................35

*Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ..............................................................................17, 18

*Averbach v. Cairo Amman Bank*,
    19-cv-0004-GHW-KHP, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) .................21

*Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C), (In re Arcapita Bank*
    *B.S.C.(C))*,
    640 B.R. 604 (S.D.N.Y. 2022) ................................................................................19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................8, 9, 14, 16

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .....................................................................................23

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...................................................................29

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
    801 F. Supp. 2d 211 (S.D.N.Y. 2011) .....................................................................26

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) .....................................................................17

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................35, 38

*In re Dreier LLP*,
    453 B.R. 499 (Bankr. S.D.N.Y. 2011) .....................................................................37

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ..................17

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ...........................................................................9

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) *aff'd in part, vacated in part on other*
    *grounds*, 40 F.4th 56 (2d Cir. 2022) ......................................................................10

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
    *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-
    3911 (VSB), 2022 WL 3644436 (S.D.N.Y. Aug. 24, 2022) ...................................16

*Finn v. All. Bank*,
    860 N.W.2d 638 (Minn. 2015)................................................................................33

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021).......................................................................8, 19, 21, 22

*Gettinger v. Picard*,
    141 S. Ct. 2603 (2021)............................................................................................32

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11-3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ..............................20

*Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y.
    Mar. 1, 2017)..........................................................................................................21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)...............................................................................................14

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)..........29

*Hill v. HSBC Bank*
    *plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)..............................................................21

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...........17, 23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).................................................................................................8

*Irving Trust Co. v. Chase Nat. Bank*,
    65 F.2d 409 (2d Cir. 1933)......................................................................................39

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) ......................................................................................................................24

*Liberatore v. Calvino*,
 293 A.D.2d 217 (N.Y. App. Div. 1st Dept. 2002) .................................................20

*Licci v. Lebanese Canadian Bank, SAL*,
 20 N.Y.3d 327 (2012) ..........................................................................................18

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
 260 B.R. 343 (Bankr. W.D.N.Y. 2001) .................................................................33

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996)......................................................................................9

*Motors Liquidation Co. Avoidance Action Tr. v. JP Morgan Chase Bank, N.A. (In
 re Motors Liquidation Co.)*,
 565 B.R. 275 (Bankr. S.D.N.Y. 2017) ...................................................................19

*Picard v. ABN Ireland (In re BLMIS)*,
 No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022)
 (McMahon, J.)............................................................................................... 35, 38

*Picard v. Avellino (In re BLMIS)*,
 557 B.R. 89 (Bankr. S.D.N.Y. 2016) .....................................................................38

*Picard v. Banca Carige (In re Bernard L. Madoff)*,
 Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
 30, 2022) ........................................................................................12, 15, 16, 23

*Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*,
 Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
 30, 2022) .............................................................................................................12

*Picard v. Banque SYZ & Co., SA (In re Bernard L. Madoff)*,
 Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
 14, 2022) ..................................................................................................... *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018).......................................................... *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
 480 B.R. 501 (Bankr. S.D.N.Y. 2012)........................................................... *passim*

*Picard v. Cathay Life Ins. Co. Ltd.*,
 Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
 1, 2022) ..........................................................................................................30, 32

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
 Adv. Pro. No. 10-04398, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012)......26

*Picard v. Citibank, N.A.*,
    Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234 (Bankr. S.D.N.Y. Sept.
    27, 2022) ........................................................................................................................32, 33, 34

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (Menashi, J., concurring) (2d Cir. 2021) .................................................... *passim*

*Picard v. Delta Nat'l Bank & Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256  (Bankr. S.D.N.Y. Aug.
    12, 2022) .........................................................................................................................35, 39

*Picard v. Est. of Seymour Epstein*,
    No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)...................................32

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................................8, 9, 22

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) .............................................................................................................................4, 30, 36

*Picard v. First Gulf Bank (In re Bernard L. Madoff)*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *3-4 (Bankr. S.D.N.Y.
    July 18, 2022)..............................................................................................................10, 35, 36

*Picard v. Fullerton Capital Pte. Ltd. (In re Bernard L. Madoff)*,
    Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714 (Bankr. S.D.N.Y. Oct.
    28, 2022) .................................................................................................................................25

*Picard v. The Gerald and Barbara Keller Family Tr.*,
    2022 WL 4592898 (S.D.N.Y. Sept. 30, 2022).......................................................................33

*Picard v. Gettinger*,
    976 F.3d 184 (2d Cir. 2020).............................................................................................32, 33

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
    No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014).........................11

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
    638 B.R. 41 (Bankr. S.D.N.Y. 2022).....................................................................................32

*Picard v. Korea Exchange Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ......................................................................................................................22, 25, 31

*Picard v. Lisa Beth Nissenbaum Tr.*,
   No. 20 cv. 3140 (JGK), 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021),
   judgment entered, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar.
   25, 2021) ...................................................................................................................32

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) .....................8, 24

*Picard v. Meritz Fire & Marine Ins. Co. LTD. (In re Bernard L. Madoff)*,
   Adv. Pro. No. 11-02539 (CGM) 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
   10, 2022) ................................................................................................................17, 25

*Picard v. Merkin*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...................................................................35

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (S.D.N.Y. 2014) ...................................................................26, 27, 28

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff)*,
   641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................ *passim*

*Picard v. Multi-Strategy Fund, Ltd.*,
   No. 22-cv-06502-JSR, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).....................30, 31, 32

*Picard v. Parson Fin. Panama S.A. (In re Bernard L. Madoff)*,
   Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
   2022) ................................................................................................................17, 20, 22, 29

*Picard v. Public Inst. for Soc. Sec.*,
   Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 (Bankr. S.D.N.Y. Aug.
   17, 2022) ...................................................................................................................25

*Picard v. Sage Realty*,
   No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ................................32

*Picard v. Shapiro (In re Madoff)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015)...................................................................28

*Picard v. Société Générale Private Banking (Suisse) S.A. (In re Bernard L.
   Madoff)*,
   Adv. Pro. No. 12-01677 (CGM), 2022 WL 6237071 (Bankr. S.D.N.Y. Oct.
   17, 2022) ...................................................................................................................10

*Picard v. Union Sec. Inv. Trust Co., Ltd.*,
   Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 (Bankr. S.D.N.Y. Aug.
   18, 2022) ...................................................................................................................25

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ........................................................................10, 19, 24

*Salomon v. Kaiser (In re Kaiser)*,
    722 F.2d 1574 (2d Cir. 1983) ...................................................................................34

*Sec. Inv. Prot. Corp. v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §
    550(a))*,
    501 B.R. 26 (S.D.N.Y. 2013) ...................................................................................25

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................30, 31

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005) .................................................................................33, 39

*Silverman v. K.E.R.U Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ......................................................................26, 28

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ....................................................................................21

*Stoebner v. Opportunity Fin., LLC*,
    909 F.3d 219 (8th Cir. 2018) ...................................................................................33

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ......................................................................................8

*U.S. v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) .......................................................................26

*Vasquez v. Hong Kong and Shanghai Banking Corp. Ltd.*,
    2019 WL 2327810 (S.D.N.Y. May 30, 2019) ..............................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..........................................................................................14, 20

**Statutes**

11 U.S.C. § 546(e) .............................................................................................. *passim*

11 U.S.C. § 547 ......................................................................................................39

11 U.S.C. § 548 ......................................................................................................39

11 U.S.C. § 548(a) ....................................................................................................2

11 U.S.C. § 548(a)(1)(A) .................................................................................30, 31, 33

11 U.S.C. § 550 ..........................................................................................................31, 39

11 U.S.C. § 550(a) ...................................................................................................2, 19, 29

11 U.S.C. § 550(a)(2) ....................................................................................................... 26

11 U.S.C. § 550(b) ............................................................................................................ 35

11 U.S.C. § 550(d) ............................................................................................................ 29

26 U.S.C. § 67e ................................................................................................................. 40

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 24

Fed. R. Civ. P. 9(b) ........................................................................................................... 33

Fed. R. Civ. P. 10(c) ...................................................................................................24, 25

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 31

N.Y. C.P.L.R. 302(a)(1) .................................................................................................... 17

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this memorandum of law and the supporting Declaration of Carrie Longstaff ("Longstaff Decl.") in opposition to defendant Merrill Lynch Bank (Suisse) SA's ("MLBS") motion to dismiss the Amended Complaint ("Motion").

## PRELIMINARY STATEMENT

This action seeks to recover over $44 million in subsequent transfers of stolen BLMIS customer property that MLBS received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, the "Fairfield Funds"). MLBS invested in BLMIS through the Fairfield Funds, entities created for the express purpose of funneling investments into BLMIS in New York. Nonetheless, MLBS moves to dismiss the Trustee's Amended Complaint, arguing that (i) this Court does not have personal jurisdiction over it, (ii) the Trustee has failed to provide sufficient notice of his claims, (iii) MLBS did not receive transfers of customer property, (iv) the safe harbor under Section 546(e) bars recovery, (v) the Trustee failed to adequately allege the avoidability of the initial transfers, and (vi) MLBS is entitled to prevail on the good faith and for value defense. MLBS's arguments fail.

First, this Court has personal jurisdiction over MLBS where it purposefully invested in the Fairfield Funds knowing that these funds fed substantially all their money into BLMIS. MLBS knew that BLMIS was the *de facto* investment manager, broker-dealer, and custodian of the Fairfield Funds' (and MLBS's) investments. MLBS communicated with Fairfield Greenwich Group ("FGG") in New York regarding its related BLMIS investments, relied on New York bank

accounts to invest in and redeem money from Sentry, and agreed to submit to New York jurisdiction and choice of law provisions. These facts, plus the additional contacts discussed herein, are the same types of contacts that this Court has found sufficient to establish specific jurisdiction over entities who have advanced the very same arguments that MLBS advances now.

Second, despite, the "short and plain statement" in the Amended Complaint showing that the Trustee is entitled to relief, MLBS asserts that the Trustee violates Rules 8 and 10 by incorporating by reference his Second Amended Complaint against the Fairfield Funds. This argument is belied by MLBS's concession that it has notice of the reason for the incorporation of the claims against it. In any event, MLBS's argument conflicts with precedent from the District Court, the purpose of the rules, and this Court's numerous holdings that adoption by reference here is proper.

Third, the Trustee plausibly alleges that MLBS received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to MLBS. The Trustee further alleges the necessary vital statistics (*i.e.*, the "who, when, and how much") concerning the subsequent transfers. Nothing more is required at this stage of the litigation. MLBS's fact-based arguments to the contrary are both unavailing and premature.

Fourth, MLBS's contention that Section 546(e) requires dismissal of the Trustee's claims has been repeatedly rejected by this Court and now by the District Court. MLBS provides the Court no reason to break with this line of precedent. Likewise, MLBS's next arguments that BLMIS's actual intent under Section 548(a) has not been adequately alleged by virtue of the Ponzi scheme presumption are also contrary to existing precedent. And finally, MLBS's purported "good faith" and "for value" defense is a fact-intensive affirmative defense that cannot be established on

the face of the Amended Complaint and is inappropriate at the motion to dismiss stage. Accordingly, the Trustee respectfully requests that the Court deny MLBS's Motion in its entirety.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS in New York until its collapse in 2008. (*See* Am. Compl. ¶¶ 39, 41, ECF No. 115.) BLMIS purportedly operated three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). (*Id.* ¶ 41.) For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy ("SSC Strategy"), which involved: (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market. (*Id.* ¶¶ 49, 54, 62.) In reality, BLMIS operated a Ponzi scheme through its IA Business. (*Id.* ¶ 45.) On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment advisor fraud, and mail and wire fraud. (*Id.* ¶¶ 1, 68.)

### II.    MLBS AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

MLBS was a Swiss *société anonyme* operating as a private bank that was part of the larger global Merrill Lynch organization, which includes various affiliates and subsidiaries (collectively, "Merrill Lynch"). (Am. Compl. ¶ 12.) Merrill Lynch's organization was divided into three groups: (i) Global Markets & Investment Bank Group ("GMI Group"), (ii) Global Private Client Group ("GPC Group"), and (iii) Merrill Lynch Investment Managers Group. (*See id.* ¶ 16.) Although Merrill Lynch operated through these three different groups, each of these groups had employees from several Merrill Lynch entities, including MLBS. (*See id.*) Because "there [was] only one

Merrill Lynch," these three groups operated seamlessly and would communicate and share knowledge with each other. (*Id.*)

The directors at MLBS and within Merrill Lynch's GMI Group had significant concerns about BLMIS, instituting a "No Madoff" policy and refusing to offer products on BLMIS funds including Sentry. (*See id.* ¶¶ 5-6.) A member of the GMI Group, Fabio Savoldelli, said that Merrill Lynch was aware of "many, many, many red flags" at BLMIS. (*Id.* ¶ 6.) Likewise, MLBS publicly touted its "sophisticated investment tools and risk analysis" that focused on the standard deviation in order to measure an investment's volatility. Merrill Lynch reports using this analysis showed Fairfield Fund's impossible lack of volatility and risk. (*Id.* ¶¶ 74-80.) An MLBS executive in the GPC Group described "[s]everal red flags [that] have been raised since [for]ever around these funds," and that the "galaxy of [BLMIS] feeders" were "easy to identify" because of their track record of "an annual compounded return of 8% with almost no volatility." (*Id.* ¶ 81.)

Nevertheless, MLBS decided to invest in the Fairfield Funds, which would invest nearly all those funds with BLMIS. (Am. Compl. ¶¶ 3, 7; Longstaff Decl., Exs. 1-3, 5-9.) MLBS invested in the Fairfield Funds knowing they were managed and controlled by FGG, a *de facto* partnership with its principal place of business in New York. (Am. Compl. ¶¶ 3; 29; Longstaff Decl., Exs. 1-3, 5-9); *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

As part of the Merrill Lynch's GPC Group, MLBS operated "representative offices" in Hong Kong, Singapore, London, Dubai, and Bahrain. (Am. Compl. ¶ 72.) MLBS's Geneva office served as the "booking center" for MLBS's Fairfield Fund investments, and the Hong Kong and Geneva offices communicated with and were the main points of contact with FGG. (Am. Compl. ¶ 72; Longstaff Decl., Ex. 42 at FG-04538423 (listing Fabrizio Pelfini and Antonin Brocard of

Geneva and Juliana Kiang of Hong Kong as the main contacts for MLBS).)  MLBS communicated

with and received information about its investments from various employees in FGG's New York

Headquarters including Jacqueline Harary and Lourdes Barreneche.  (Longstaff Decl. Exs. 13-37,

41; Am. Compl. ¶¶ 29, 30, 32.)

To invest in the Fairfield Funds, MLBS executed subscription agreements on MLBS's behalf

acknowledging: (i) MLBS's sophistication as an investor and (ii) that MLBS had "such knowledge

and experience in financial and business matters that it is capable of evaluating the risks of this

investment."  (Longstaff Decl., Exs. 1-2 ¶¶ 5, 8; *see also* Am. Compl. ¶ 19.)  By executing the

subscription agreements, MLBS agreed to New York choice of law, jurisdiction, and forum clauses.

(*See* Longstaff Decl., Exs. 1-2 ¶¶ 16, 19; Am. Compl. ¶ 19.)  For Sentry investments, the agreements

instructed MLBS to send subscription payments to Sentry's bank account with HSBC Bank USA in

New York (the "HSBC NY Account"), which MLBS did.  (Longstaff Decl., Exs. 1-2 ¶ 3; Exs. 4

(exemplar of subscription); Am. Compl. ¶ 20.)  MLBS also received redemption payments from

Sentry to either: (i) a bank account entitled "Merrill Lynch Bank Suisse SA Geneva" at Northern

Trust International Banking Corp. in New York or (ii) a bank account at The Bank of New York in

New York.  (Longstaff Decl., Exs. 1-2 ¶ 30; Exs. 38-40 (exemplars of redemptions); Am. Compl. ¶

21.)  Further, certain Fairfield Sentry shares in MLBS's name were held in Merrill Lynch's "house

account," operated by the Offshore Operations Office of Financial Data Services, Inc., a Merrill

Lynch subsidiary, in Jacksonville, Florida.  (Am. Compl. ¶ 22).

The long form subscription agreements executed by MLBS incorporated the Fairfield

Funds' Private Placement Memoranda ("PPMs") and warranted that MLBS had "received and read

a copy of the [PPMs]."  (Longstaff Decl., Exs. 1-2 ¶ 7; Am. Compl. ¶¶ 23 and 27.)  When it made

additional investments into the Fairfield Funds, MLBS would later sign short form subscription

agreements in MLBS's name, under which it agreed to and "reaffirm[ed] each and every representation and covenant made by [MLBS] in the original Subscription Agreement as of the date hereof," which included MLBS having received and read the PPMs.  (Longstaff Decl., Ex.3.) By signing the short form subscription agreements, MLBS also indicated that it: (i) was already an existing shareholder in the applicable Fairfield Funds, (ii) had previously delivered a fully executed Subscription Agreement to the fund; and (iii) desired to subscribe for additional shares in one of the Fairfield Funds.  (*Id.*)

These PPMs made plain the New York-centric nature of the Fairfield Funds, stating that nearly all Sentry's assets were invested with BLMIS in New York and that Sigma invested all its assets in Sentry.  (Longstaff Decl., Exs. 5-9; *see also* Am. Compl. ¶ 3, 85-86.)  The PPMs explicitly disclosed that BLMIS was a registered broker-dealer in New York and held multiple roles as the *de facto* investment manager, broker dealer, and custodian for Sentry.  (Longstaff Decl. Exs. 5-9.) The PPMs specifically informed investors that BLMIS would have custody of Sentry's assets in the United States and would execute the funds' purported investment strategy using the SSC Strategy by purchasing U.S. equities, U.S. options, and treasury bills traded on U.S. exchanges. (*Id.*)

MLBS additionally entered into a Customer Agency and Shareholder Services Agreement Relating to the Private Placement of Funds and an amendment thereto (hereinafter, collectively the "Services Agreement") governed by New York law and signed by FGG New York executives. (Am. Compl. ¶ 33; Longstaff Decl., Ex. 11 at 5; Ex. 12.)  The Services Agreement provided that FGG would make shares in its funds, including Fairfield Sentry and Fairfield Sigma, available to MLBS's customers and MLBS would act as agent and provide shareholder services to customers in exchange for fees.  *See id.*

Prior to BLMIS's collapse, MLBS received approximately $44,894,275 in subsequent transfers from the Fairfield Funds. (Am. Compl. ¶ 2.) For each transfer, the Trustee's Amended Complaint sets forth the subsequent transferor (Sentry or Sigma), the subsequent transferee (MLBS), and the date and amount of the subsequent transfer. (Am. Compl. ¶¶ 89-98, Exs. C, D, E.) MLBS also filed multiple customer claims with the Trustee in this SIPA liquidation proceeding for its investments in the Fairfield Funds. (*See* Am. Compl. ¶ 38.)

The Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover the fraudulent transfers of stolen customer property in the amount of approximately $3 billion. (Am. Compl. ¶ 82; *see also* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 (the "Fairfield SAC".) In 2011, the Trustee settled with the Fairfield Funds. (Am. Compl. ¶ 83.) As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. (Am. Compl. ¶ 83.) Sigma separately consented to a judgment in the amount of $752.3 million. *See* Consent J., *Picard v. Fairfield Sentry Ltd. (In re Bernard L. Madoff)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 19, 2009), ECF No. 110. The Trustee then commenced adversary proceedings, including this one, to recover the significant shortfall in the recovery of stolen customer property.

<u>**ARGUMENT**</u>

**I.    THIS COURT HAS PERSONAL JURISDICTION OVER MLBS**

Specific jurisdiction exists where the defendant purposely directs its activities into the forum, and the underlying cause of action arises out of or relates to those activities.  *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) ("*Fairfield*").  The specific jurisdiction analysis is a two-step inquiry.  First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant purposely availed itself of the privilege of conducting activity in the forum.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).  The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice."  *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).  Moreover, the plaintiff's suit must "arise out of *or relate to* the defendant's contacts with the forum."  *See Picard v. Multi-Strategy Fund Ltd. (In re Bernard L. Madoff)*, 641 B.R. 78, 87-88 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*") (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)).  Minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum."  *See Fairfield*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Second, the Court conducts a reasonableness inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 320.  To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief;

> (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of the controversy; and (5) the shared interest of the
> states in furthering fundamental substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted).

Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant

to present a "compelling case" that jurisdiction would be unreasonable. *Fairfield*, 627 B.R. at 567

(citing *Burger King*, 471 U.S. at 472–73).

The court must look at the "totality of the circumstances," rather than analyze each contact

in isolation, when determining whether a defendant's contacts with the forum establish personal

jurisdiction. *See*, *e.g.*, *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29

(2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 57, (S.D.N.Y. 1999). The totality of

the circumstances here demonstrates that MLBS purposefully availed itself of the protections and

privileges of conducting business in New York and that exercise of personal jurisdiction over it is

reasonable.

### A.    MLBS Purposefully Availed Itself of the Laws and Privileges of New York by Investing in the Fairfield Funds

MLBS had multiple contacts with New York that establish this Court's jurisdiction.

MLBS: (i) purposefully targeted the New York securities market by investing in the Fairfield

Funds, which MLBS knew was managed by, custodied with, and invested with BLMIS in New

York; (ii) agreed to direct connections with New York through the Fairfield Funds' subscription

agreements and Services Agreement as to jurisdiction, forum selection, service of process, and/or

choice of law provisions; (iii) used New York bank accounts to send subscription payments to and

receive redemption payments from Sentry; (iv) engaged in communications with FGG in New

York with respect to MLBS's investments and fees; and (v) filed customer claims in this SIPA

liquidation proceeding. While many of these contacts are sufficient to establish personal

jurisdiction on their own, in their totality, they plainly establish that MLBS purposefully directed

its activities to New York and the United States. *See Esso Exploration & Prod. Nigeria Ltd. v.*

*Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) *aff'd in part, vacated*

*in part on other grounds,* 40 F.4th 56 (2d Cir. 2022) ("When all [defendant]'s Agreement-related

contacts are considered together it is clear [the defendant] purposely availed itself of the forum.").

### 1.    MLBS's Intentional Investments in BLMIS Through the Fairfield Funds Establish Minimum Contacts

The Trustee's allegation that MLBS knowingly invested with BLMIS through the Fairfield

Funds alone establishes personal jurisdiction.  (Am. Compl. ¶¶ 17, 28, 34; Fairfield SAC ¶¶ 89,

91, 96.)  This Court has repeatedly found in similar adversary proceedings within this SIPA

liquidation proceeding that it has jurisdiction over a party that "purposefully avail[s] itself of the

benefits and protections of New York laws by knowing, intending, and contemplating that the

substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New

York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins. (In re*

*Bernard L. Madoff)*, 480 B.R. 501, 516–518 (Bankr. S.D.N.Y. 2012) ("*BLI*"); *see also Picard v.*

*Société Générale Private Banking (Suisse) S.A. (In re Bernard L. Madoff)*, Adv. Pro. No. 12-01677

(CGM), 2022 WL 6237071, at *4 (Bankr. S.D.N.Y. Oct. 17, 2022); *Picard v. First Gulf Bank (In*

*re Bernard L. Madoff)*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *3–4 (Bankr.

S.D.N.Y. July 18, 2022); *Multi-Strategy*, 641 B.R. at 86.  As the Second Circuit recognized,

"[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or

substantially all of their assets with [BLMIS], they knew where their money was going." *In re*

*Picard*, 917 F.3d 85, 105 (2d Cir. 2019).

The Trustee's Amended Complaint sets forth MLBS's intention to invest with BLMIS

through New York-based FGG, as well as receipt of the subsequent transfers made to MLBS in

New York.  (Am. Compl. ¶¶ 17, 19, 21-22, 28, 34.)  Additionally, by executing subscription agreements with the Fairfield Funds, MLBS affirmed that it received and read the Fairfield Funds' PPMs and knew that: (i) Sentry invested substantially all its assets with BLMIS and Sigma invested all its assets in Sentry; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operations of" Sentry.  (*See* Am. Compl. ¶¶ 23, 27, 31; Longstaff Decl., Exs. 1-3, 5-9.)

> **a.** ***BLI* and Recent Decisions of this Court Support Jurisdiction Over MLBS**

Judge Lifland determined that investors like MLBS who intentionally invest with BLMIS in New York through the Fairfield Funds are subject to personal jurisdiction in New York.  *See BLI*, 480 B.R. at 516-518.  Here, as in *BLI*, (1) the Trustee's suit is based upon the subsequent transferee's investment in Sentry "with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom"; and (2) MLBS was provided with PPMs and executed subscription agreements establishing the investment's BLMIS-centric purpose.  *Id.* at 506-08.  BLI, like MLBS, "purposefully availed itself of the benefits and protections of New York Laws . . . by . . . intending" that its investment would ultimately end up at BLMIS.  *Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that

defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transfers were subject to the Court's personal jurisdiction").

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions. *See, e.g., Multi-Strategy*, 641 B.R. at 86; *Picard v. Banca Carige (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at *3 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"). In those cases, just as here, the Trustee asserted allegations as to the purpose of the investment and the defendants' contacts with Sentry for ultimate investment with BLMIS. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 86-87. Based on those allegations, this Court found that "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Id.* at 87.

Faced with the obvious weight of *BLI*, MLBS argues that the Trustee's "conclusory and unsupported allegations" that MLBS knowingly invested with BLMIS through the Fairfield Funds lack "allegations of specific facts" to support personal jurisdiction since it is unclear whether it was MLBS or its customers that invested in the Fairfield Funds. (Def.'s Br. Mot. Dismiss at 14, ECF No. 118 (hereinafter cited as "Mot. at _").) This Court, however, has clarified that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the pre-discovery stage of litigation." *Carige*, 2022 WL 2387522, at *2; *Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *2 (Bankr. S.D.N.Y. June 30, 2022) (same). The Trustee alleges that MLBS knowingly invested in the Fairfield Funds with the fundamental purpose of investing in BLMIS. (Am. Compl. ¶¶ 17, 28, 34.) These allegations coupled with the PPMs, which MLBS avowed it

had read and reviewed when it signed the subscription agreements, makes clear that MLBS knew

and intentionally directed its funds to be invested with BLMIS in New York.  (Am. Compl. ¶¶ 24,

27; Longstaff Decl. Exs. 1-3, 5-9.)

MLBS's repeated references to the Trustee's single allegation about MLBS's Services

Agreement with FGG[1]—which provided that FGG would make its Fairfield Funds' shares

available to MLBS customers and MLBS would act as an agent for its customers in exchange for

fees (*see* Mot. at 9, 11, 13, 14, 16; Longstaff Decl., Ex. 11)—does not change the analysis.[2]  MLBS,

not its alleged clients, signed the subscription agreements in its own name with, and received the

transfers from, the Fairfield Funds.  The Services Agreement, moreover, is general in nature and

not specific to the subscriptions or redemptions at issue here.  (Longstaff Decl., Ex. 11.)

MLBS ignores all this and asserts that the Trustee's allegations are made "on the basis of

documents MLBS received *only after* its initial investment" that bear no relation to any particular

investment.  (Mot. at 15.)  As this Court has noted, "[t]his is not the test."  *Multi-Strategy*, 641

B.R. at 88.  The Court must assess a defendant's contacts with the forum, not a transfer's contacts.

*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 189 (Bankr. S.D.N.Y. 2018) ("The

inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses

on the relationship among the defendant, the forum, and the litigation.").

---

[1] The relevance of the MLBS Service Agreement is that it provides another jurisdictional contact with New York since it is signed by FGG New York executives and is governed by New York Law, thus indicating MLBS's purposeful directing of activity into New York.  (Longstaff Decl, Ex. 11 at 5; Ex. 12.)  Pursuant to this agreement, MLBS marketed the Fairfield Funds and received fees as well as communicated with people at FGG in New York about the fees due to MLBS under the agreement.  (Longstaff Decl, Exs. 10-11.)

[2] To the extent that MLBS is arguing that it is a "mere conduit," such a fact-based defense is plainly improper at this stage of the litigation and similar arguments have been rejected by this Court.  *See* Memorandum Decision Denying Motion to Dismiss, *Picard v. Standard Chartered Fin. Servs. S.A.*, Adv. Pro. No. 12-01565 (CGM) (Bankr. S.D.N.Y. Jan. 6, 2023), ECF No. 168.

MLBS also contends that the Trustee conflates the Fairfield Funds' actions with those of MLBS and that Supreme Court precedent forbids jurisdiction premised on the acts of an intermediary. (Mot. at 15-16 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).) But *Walden* "is [of] no assistance to Defendant." *Multi-Strategy*, 641 B.R. at 87. Using the "effects test," the *Walden* court found that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew that the plaintiff resided in Nevada. *Walden*, 571 U.S. at 289. In this regard, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *Id.* at 284, 289 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

The facts of *Walden* are significantly different from those here. Rather, the Trustee has pleaded that MLBS's contacts with New York are "intertwined with [its] transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286. As discussed above, MLBS intentionally directed millions of dollars in investments to BLMIS in New York. MLBS also physically entered New York through its use of mail and other means of communication with FGG's New York office, receiving redemptions and selling shares through its New York based bank account, and using a New York bank account to gain access, through Sentry, to BLMIS, which are all relevant contacts. *Multi-Strategy*, 641 B.R. at 87; (Longstaff Decl. Exs. 4, 10-40.) A finding of personal jurisdiction on the basis of such purposeful actions directed at a New York broker-dealer and the U.S. securities markets centered in New York comports with the traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 471–74 (noting that due process concerns are satisfied when an out-of-state defendant purposely directs his activities at residents of the forum state and purposely benefits from those activities).

Further, the Trustee is not arguing that every investor should be subject to jurisdiction in all forums where its investment company decides to make investments. Contrary to MLBS's stream of commerce argument (Mot. at 16-17), its investments in the Fairfield Funds "did not merely 'end up' in an account at BLMIS as a result of happenstance or coincidence. Rather, [MLBS] purposefully availed itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in [the Fairfield Funds] would be transferred to BLMIS in New York to be invested" there. *BLI*, 480 at 517. The fact that the Fairfield Funds invested MLBS's funds with BLMIS in New York was not merely foreseeable to MLBS, it was MLBS's sole objective. Therefore, a finding of jurisdiction here is proper. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 86–89; *Picard v. Banque SYZ & Co., SA (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *3–4 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Carige*, 2022 WL 2387522, at *3.

### 2.     The Forum Selection and Choice of Law Clauses in the Subscription Agreements and Services Agreement Are Strong Jurisdictional Contacts

MLBS's contentions that the subscription agreements and Services Agreement it signed do not give rise to jurisdiction misapprehends the relevance of these provisions in this action. (Mot. at 9-10.) The Trustee is not seeking to enforce the choice of venue and choice of law provisions, nor does the Trustee argue that this Court has jurisdiction based solely on MLBS's consent. Rather, MLBS's repeated agreement to New York law, jurisdiction, and venue is a significant jurisdictional contact and serves as evidence that MLBS purposefully directed its activities toward New York. (Am. Compl. ¶ 19; Longstaff Decl., Exs. 1-2 ¶¶ 16, 19; Ex. 11.)

As this Court found in *BLI*, a defendant's agreement to New York venue, jurisdiction, and law provides a strong jurisdictional contact with New York. 480 B.R. at 517, n.15; *see also Burger King*, 471 U.S. at 482 (holding a choice of law "provision standing alone would be insufficient to

confer jurisdiction" but "it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").  Contrary to MLBS's argument, then, this Court's prior decision in the Fairfield Chapter 15 liquidation proceedings—where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based *solely* on the forum selection clause in subscription agreements—is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd sub nom.*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *8–12 (S.D.N.Y. Aug. 24, 2022).

MLBS's consent to New York choice of law, jurisdiction, and forum is a relevant factor in the jurisdictional inquiry.  *See Multi-Strategy*, 641 B.R. at 88 (finding the fact that defendant "irrevocably" submitted to the jurisdiction of New York courts when it signed its subscription agreements with the Fairfield Funds was a relevant factor in determining whether to exercise jurisdiction); *Banque Syz*, 2022 WL 2135019, at *5 (same); *Carige*, 2022 WL 2387522, at *4 (same).  Taken as a whole with MLBS's other intentional actions directed toward this forum discussed herein, MLBS's consent is another contact to support the exercise of jurisdiction here.

### 3.    MLBS's Purposeful Use of New York Bank Accounts Supports Specific Jurisdiction

Courts have repeatedly held that the purposeful use of New York bank accounts to transfer funds is sufficient in and of itself to establish personal jurisdiction under either the due process analysis or the New York long-arm statute, N.Y. CPLR 302(a)(1).[3]  *See, e.g., Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction

---

[3]  Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under CPLR 302(a)(1) and the Due Process Clause is in most instances essentially coterminous") (citations omitted).

under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same). Similarly, this Court has held: "Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Picard v. Meritz Fire & Marine Ins. Co. LTD. (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02539 (CGM) 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*") (citing *Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016)); *Picard v. Parson Fin. Panama S.A. (In re Bernard L. Madoff)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*") (same); *see also Multi-Strategy*, 641 B.R. at 87 (finding jurisdiction over subsequent transferee defendant that "received payments and sold shares through its New York based bank account").

MLBS intentionally directed FGG to use an account at Northern Trust International Banking Corp. in New York in the name of "Merrill Lynch Bank Suisse SA Geneva" or one at The Bank of New York to receive redemption payments from Sentry. (Am. Compl. ¶ 21; Longstaff Decl., Exs. 1-2 ¶ 30; Exs. 38-40 (exemplars of redemptions).) Contrary to MLBS's contention, it does not matter that MLBS's New York bank account might have been used as a correspondent bank because courts have held that the use of a correspondent bank account is sufficient to establish personal jurisdiction. *See, e.g., Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding that defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful"); *see also Arcapita*, 549 B.R. at 67–69 (finding

jurisdiction based on designation and use of New York correspondent accounts to receive transfers at issue).

MLBS argues that its contacts to this forum are attenuated because "MLBS may have received funds in [its] New York bank account" in "its role as agent for its clients," citing to *Vasquez v. Hong Kong and Shanghai Banking Corp. Ltd.* to suggest that absent further information about MLBS's use of New York bank accounts, this Court cannot find personal jurisdiction. (Mot. at 13 (citing *Vasquez*, 2019 WL 2327810, at *12 (S.D.N.Y. May 30, 2019)).) MLBS's uncertainty about its own actions aside, there is no need for further information here because MLBS was not a passive participant in its use of the New York bank accounts—every redemption relating to its investments in Sentry, totaling just under $43 million—was sent to New York bank accounts for MLBS. (Am. Compl., Ex. C; Longstaff Decl, Exs. 1-2 ¶ 30; Exs. 38-40 (exemplars of redemptions).) Because MLBS "directed the wire transfers to . . . specifically designated New York account[s] for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [MLBS]." *Arcapita*, 549 B.R. at 70, n.18.

The same reasoning applies to MLBS's use of the HSBC NY Account for purposes of subscription payments. (Am. Compl. ¶ 20; Longstaff Decl. Exs. 1-3 ¶ 3; Exs. 4 (exemplar of subscription).) That the subscription agreements mandated that subscribers use Sentry's New York account is irrelevant because ultimately MLBS "was free to accept or reject the proposed terms." *Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C), (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 617–18 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also Motors Liquidation Co. Avoidance Action Tr. v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R.

275, 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

MLBS's argument that the Trustee falls short of his obligation to "establish jurisdiction with respect to each of the subsequent transfers" because the Amended Complaint does not specify which redemption payments were received by MLBS in a New York bank also fails.  (Mot. at 13 (citing *BNP*, 594 B.R. at 190).)  MLBS misconstrues the requirements for personal jurisdiction and this Court's decision in *BNP*.  A court must assess a defendant's contacts with the forum, not the transfer's contact to the forum.  *BNP*, 594 B.R. at 189 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.").  Provided that a court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims, so long as they are sufficiently related to those contacts.  *See Ford Motor Co.*, 141 S. Ct. at 1026–28.  Such is the case here.  The Second Circuit has already found that, "[t]hese transfers are domestic activity."  *In re Picard*, 917 F.3d at 105 ("When a domestic debtor commits fraud by transferring property from a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States.").  Additionally, the Trustee provides this Court with documents evidencing that the transfers from Sentry to MLBS went through MLBS's New York bank account.  (Longstaff Decl., Exs. 38-40 (exemplars of redemptions).)

4.    **MLBS's Communications with New York in Connection with Its Investments Also Establish Minimum Contacts**

While a defendant's "physical presence in a forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.'" *Parson*, 2022 WL 3094092, at *5 (quoting *Walden*, 571 U.S. at 285); *Banque Syz*, 2022 WL 2135019, at *4. Email communications can also be a contributing factor for finding personal jurisdiction. *See Parson*, 2022 WL 3094092, at *4–5 (finding defendant's email communications with FGG as evidence that defendant purposefully availed itself of the benefits of doing business in the forum); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-3673(RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding communications including emails, phone calls, and video conferences with company in New York subject defendant to personal jurisdiction); *Liberatore v. Calvino*, 293 A.D.2d 217, 220-21 (N.Y. App. Div. 1st Dept. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases).

During the relevant period, MLBS emailed FGG's New York personnel for information regarding its investments in the Fairfield Funds. (Longstaff Decl., Exs. 13-37, 41.) Even without discovery, the documentation currently available to the Trustee shows that MLBS communicated with FGG in New York to request information about FGG and the Fairfield Funds and in exchange received information such as: (i) Private Placement Memoranda for the Fairfield Funds; (ii) Fairfield Funds' "tear sheets" which represented BLMIS's historical monthly and yearly performance; (iii) weekly and monthly performance updates for the Fairfield Funds; and (iv) responses to questions regarding BLMIS's investment strategy and BLMIS's role as a broker. (Longstaff Decl, Exs. 13-37.) FGG also sent MLBS fund presentations and marketing materials regarding BLMIS's strategy, rates of return, and comparisons of BLMIS's rates of return over time

20

to market indices.  (Longstaff Decl., Exs. 31, 35.)  MLBS relied on the information from FGG to

track the Fairfield Funds' returns.  These contacts support this Court's jurisdiction over MLBS.

MLBS's reliance on a trio of cases asserting common law claims brought against fund

service providers is unavailing.  (Mot. at 17-18 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333,

345 (2d Cir. 2018); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v.

HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)).)  This Court

has determined that this line of cases is not relevant to the Trustee's actions against investors in

BLMIS feeder funds, like MLBS.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of

personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds

which arose from their New York contacts with the Tremont Funds.").  This is not a dispute

between two parties about services owed under a foreign contract, like the breach of fiduciary duty

and other claims in *SPV Osus*, *Hill*, and *Hau Yin To*.[4]  This action is brought by a SIPA Trustee in

a SIPA liquidation proceeding in New York to recover fraudulent transfers from an investor whose

transfers of funds to and from accounts in New York—intended to place money with BLMIS in

New York—evidence an intent to direct activity toward the U.S. securities markets.  *See BLI*, 480

B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated

by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and

the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

---

[4] MLBS's reliance on *SPV Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a perquisite for jurisdiction. 141 S. Ct. at 1026–30.  In *Ford Motor Co.*, the Supreme Court found that specific jurisdiction does not always require proof of causation, and instead, a lawsuit can "relate to" the defendant's contacts with the forum. *Id.* at 1026*; see also Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW-KHP, 2022 WL 2530797, at *7 (S.D.N.Y. Apr. 11, 2022) (in a report and recommendation, Magistrate Judge Parker found that *SPV Osus* did not set out a definitive standard requiring proximate cause for jurisdiction and that the New York Court of Appeals clarified that "causation is not required" for New York long-arm jurisdiction).  Also, *SPV Osus*'s finding that a "handful of communications and transfer of funds" do not support jurisdiction, which is cited by MLBS (*see* Mot. at 17), is not availing here given MLBS's significant jurisdiction contacts, discussed above.

5.      **MLBS's Filing of Customer Claims Is Another Jurisdictional Contact**

MLBS argues that although it filed six customer claims seeking adjudication and distributions from the customer property fund in this SIPA liquidation proceeding based on its investments in Sentry, it should not be subject to personal jurisdiction based on the same investments. Such a position is contradictory and misunderstands the Trustee's point. MLBS's customer claims are yet another substantive contact "demonstrating that [MLBS] has purposefully availed itself of this Court's jurisdiction." *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *4 (Bankr. S.D.N.Y. Sept. 21, 2022) (the filing of customer claims was another factor in denying the motion to dismiss based on personal jurisdiction); *Banque Syz*, 2022 WL 2135019, at *4 (same). The filing of these claims in the BLMIS SIPA liquidation proceeding only further evidences MLBS's understanding that investing with BLMIS in New York was the whole point of doing business with FGG.

6.      **The Underlying Cause of Action Arises Out of and Relates to MLBS's Contacts with the Forum**

The Trustee's claims also "arise out of or relate to" MLBS's contacts that touch this forum. As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship. *See Ford Motor Co.*, 141 S. Ct. at 1026–30. Rather, this test may be satisfied if the defendant's conduct "involves at least in part financial transactions that touch the forum." *Fairfield*, 627 B.R. at 566.

MLBS argues that its communications with FGG lack the "nexus" to the redemptions at issue. (Mot. at 17.) The Trustee, however, is not required to link every jurisdictional contact to a particular redemption. Courts have jurisdiction over defendants, not transfers. *See, e.g.*, *Parson*, 2022 WL 3094092, at *5 (considering the Trustee's jurisdictional allegations holistically and finding them related to his claims); *see also BNP*, 594 B.R. at 190 (even though each transfer is a

separate claim, the court did not conduct a transfer-by-transfer analysis but instead focused on the overall relationship of each defendant).

This Court has found that the Trustee's recovery actions against defendants similarly situated to MLBS are "directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy*, 641 B.R. at 88; *Carige*, 2022 WL 2387522, at *4 (same); *see also HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts"). Those activities include MLBS's wiring funds in U.S. dollars to New York, communicating with FGG in New York about its New York-based investments, requesting and receiving redemption payments in New York bank accounts, knowing that its investments were being placed with BLMIS in New York, and knowing that because the transfers were originating from BLMIS, MLBS could be subject to litigation in the United States. (Longstaff Decl. Exs. 1-9, 13, 17-19, 22, 27-28, 30-31, 36, 38-40; *see* Am. Compl. ¶¶ 19-36; Fairfield SAC ¶¶ 89, 91, 96.) Accordingly, the Trustee's recovery action arises out of and relates to MLBS's contacts and financial transactions that touch this forum.

### B. The Exercise of Personal Jurisdiction Is Reasonable

MLBS fails to present a compelling reason why jurisdiction would be unreasonable. Where a plaintiff has made a threshold showing of minimum contacts, the burden lies with the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010). Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendants to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

23

This is not that "rare" case, and any burden on MLBS is minimal.  *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any burden on a foreign defendant).  Switzerland is not a more appropriate forum as MLBS contends.  Rather, the United States has a strong interest in applying U.S. law in this SIPA liquidation proceeding.  *See id.*; see also *In re Picard*, 917 F.3d at 103 (noting the "compelling interest in allowing domestic estates to recover fraudulently transferred property").  And the Trustee has a strong interest in litigating in the United States.  See *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119.  Accordingly, this Court's exercise of jurisdiction over Defendants is more than reasonable.

### C.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery.  Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction.  *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).  The Trustee has shown how MLBS, *inter alia*, (i) knowingly and purposely invested with BLMIS through the Fairfield Funds; (ii) used U.S. bank accounts to transact business with Sentry; and (iii) had significant contacts with FGG personnel in the U.S.  *See supra*, pp. 8-24.

## II.     THE AMENDED COMPLAINT AND THE INCORPORATED MATERIAL COMPLY WITH RULES 8 AND 10

MLBS contends that the Trustee's incorporation by reference of the Fairfield SAC violates Rules 8(a)(2) and 10(c).  (Mot. at 20-22.)  It is well established, however, that the Trustee may incorporate by reference the Fairfield SAC to demonstrate the avoidability of the initial transfers from BLMIS to Sentry.

MLBS professes that it would have to expend undue effort to "ferret out" the relevant allegations from the "morass" of the Fairfield SAC, but then concedes that it is well aware of the single purpose of the incorporation: to plead "the avoidability of the initial transfers from BLMIS to the Funds." (Mot. at 20-21.) MLBS has more than adequate notice of the claims against it and the relevant allegations of the Fairfield SAC to which it needs to respond and is therefore not prejudiced or unduly burdened by the incorporation. Furthermore, as this Court has found, if leave to amend the complaint was granted, "all parties would be prejudiced by delay" and the Trustee would need "to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable." *Korea Exchange Bank*, 2022 WL 4371908, at *8.

MLBS's contention that the incorporation of the Fairfield SAC violates Rule 10(c) fares no better. Indeed, this Court and the District Court have already found that the Trustee's adoption by reference of the entire Fairfield Complaint is proper. *See e.g., Sec. Inv. Prot. Corp. v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 36 (S.D.N.Y. 2013); *Picard v. Fullerton Capital Pte. Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714, at *6-7 (Bankr. S.D.N.Y. Oct. 28, 2022); *Picard v. Union Sec. Inv. Trust Co., Ltd.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3572509 at *7–8 (Bankr. S.D.N.Y. Aug. 18, 2022); *Picard v. Public Inst. for Soc. Sec.*, Adv. Pro. No. 12-01002 (CGM), 2022 WL 3458962 at *9–10 (Bankr. S.D.N.Y. Aug. 17, 2022); *Meritz*, 2022 WL 3273044 at *7–8. Because all the adversary proceedings were filed under the umbrella of a single bankruptcy case, they are considered one action for purposes of Rule 10(c), and "may be properly adopted by reference in other pleadings in that action." *Fullerton*, 2022 WL 16556714, at *6.

The cases cited by MLBS are inapposite as they, unlike here, involve the incorporation by reference of pleadings in separate, unrelated actions to add entirely new claims in circumstances

that would have led to confusion or lack of notice of the claims asserted. *See Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011); *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007). Since MLBS has given this Court no reason to depart from its numerous previous decisions holding that the Trustee's adoption by reference of the Fairfield SAC is proper, its motion should be denied.

## III. THE TRUSTEE ADEQUATELY PLEADS THAT MLBS RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee states a claim for recovery under Section 550(a)(2) by plausibly alleging that MLBS received subsequent transfers of stolen BLMIS customer property from the Fairfield Funds. MLBS contends that the Amended Complaint falls short because the Trustee fails "to trace the funds from BLMIS" (Mot. at 3), and because the Trustee's aggregated claims to recover subsequent transfers made by Sentry across all adversary proceedings exceed the total amount of transfers Sentry received from BLMIS. (Mot. at 22-26.)

This Court has repeatedly rejected these arguments, finding that the Trustee has alleged the "vital statistics" of the subsequent transfers and is not required to perform a tracing analysis as MLBS acknowledges. (Mot. at 23); *see also Multi-Strategy*, 641 B.R. at 90; *Banque Syz*, 2022 WL 2135019, at *7; *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (S.D.N.Y. 2014) ("*Merkin*") (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3. Specifically, the Trustee must allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U Realty Corp. (In re Allou Distribs., Inc.)*,

379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

A.    **The Trustee Has Met His Pleading Burden**

The Trustee's Amended Complaint, along with the Fairfield SAC incorporated by reference, easily meets the Trustee's pleading burden. The Trustee alleges that MLBS received transfers, identified by date and amount, from Sentry and Sigma, and that Sentry and Sigma invested substantially all their funds with BLMIS and received initial transfers from BLMIS. (*See* Am. Compl. ¶¶ 84, 89, 92, 94, 96; Exs. B-E; *see* Fairfield SAC ¶¶ 89, 91, 96.) The Trustee thus plausibly alleges that MLBS received subsequent transfers of customer property by (i) outlining the relevant pathways through which stolen customer property was transferred either from BLMIS to Sentry and subsequently to MLBS or from BLMIS to Sentry and then subsequently from Sentry to Sigma, and subsequently from Sigma to MLBS, and (ii) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 91 (finding that Trustee's complaint, which detailed the date and amount of the relevant transfer from Sentry to defendant, was sufficient to survive a motion to dismiss); *Banque Syz*, 2022 WL 2135019, at *12 (finding the exhibits to the complaint "provide [defendant] with the 'who, when, and how much' of each transfer.").

Unable to demonstrate that the Trustee fails to meet the relevant pleading burden here, MLBS argues for a new one, asserting that the Trustee must tie each subsequent transfer MLBS received to a specific initial transfer from BLMIS. (Mot. at 23-24.) In *Merkin*, however, this Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). And to the extent

MLBS argues that the Trustee must detail which and what portion of each subsequent transfer comprises customer property, this too is wrong. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding that "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

MLBS's reliance on this Court's decision in *Picard v. Shapiro* is unavailing because it did not change the Trustee's pleading burden. (*See* Mot. at 23 (citing *Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*")).) In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. That complaint, however, did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amount of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.* Here, the Trustee has alleged the vital statistics of each transfer MLBS received and sets out the investment relationship between MLBS and Sentry and Sigma.[5]

### B.    MLBS's Tracing Arguments Are Inappropriate at the Pleading Stage

MLBS's fact-based tracing arguments fair no better and are clearly inappropriate for a motion to dismiss. MLBS contends that the subsequent transfers it received from Sentry cannot

---

[5] MLBS further contends that "the Amended Complaint does not specify the legal basis for avoiding each *initial* transfer from BLMIS to Sentry alleged to have been subsequently transferred to MLBS." (Mot. at 24.) The Amended Complaint, however, does specify the legal basis for the avoiding of the initial transfers, *see* Am. Compl. ¶¶ 86-88, and further incorporates by reference the Fairfield SAC, which sets forth the basis for avoiding each transfer to Sentry and may considered by this Court. *See* Point II *supra*.

plausibly have consisted of any BLMIS customer property because Sentry paid out more money than it received from BLMIS and that "Sentry sometimes used subscription payments from other investors, rather than withdrawing any funds from BLMIS accounts." (Mot. at 25.) The Trustee, however, is not required to plead, much less establish, that an alleged subsequent transfer solely comprised customer property. *See Parson*, 2022 WL 3094092, at *11 ("The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation."); *45 John Lofts, LLC*, 599 B.R. at 746–47 (denying motion to dismiss premised, in part, on a transfer from initial transferee's commingled account because a plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").

At this stage of the proceedings, moreover, the Trustee's subsequent transfer claims against MLBS are not rendered implausible simply because the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings exceed the amount of Sentry's initial transfers from BLMIS. While limited to "a single satisfaction" under Section 550(a), *see* 11 U.S.C. § 550(d), the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021); *see also Multi-Strategy*, 641 B.R. at 96 (the Trustee "may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction"). And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from MLBS

and from defendants in other actions. *See Multi-Strategy*, 641 B.R. at 96 ("[c]alculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation").

## IV.    SECTION 546(e) DOES NOT BAR RECOVERY FROM MLBS

In *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). MLBS attempts to argue that the Trustee's claims outside of those asserted under Section 548(a)(1)(A) are barred by the Section 546(e) safe harbor because the transfers were made by BLMIS to the Fairfield Funds in connection with securities contracts and as settlement payments. (Mot. at 3.) This argument has repeatedly been rejected by this Court, *see, e.g.*, *Multi-Strategy*, 641 B.R. at 92–95, and by the District Court, in its recent denial of seven motions for leave for an interlocutory appeal on the applicability of Section 546(e)'s safe harbor for similarly situated defendants. *Picard v. Multi-Strategy Fund, Ltd.*, No. 22-cv-06502-JSR, 2022 WL 16647767, at *8–9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*") (finding no reasonable grounds for disagreement as to the Bankruptcy Court's orders). In its recent decision, the District Court explained that the Section 546(e) safe harbor "did <u>not</u> apply to transfers from Madoff Securities to customers that were in on the fraud" and that "*Cohmad*'s holding in this respect concerned Madoff Securities' 'initial transferees.'" *Id.* at *3 (emphasis in original) (citing *Cohmad*, 2013 WL 1609154, at *3–4, *5–6).

As this Court has found, the Trustee has pleaded Sentry's actual knowledge of fraud and that the initial transfers are avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5, *7; *see also Picard v. Cathay Life Ins. Co. Ltd.*, Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325,

at *8 (Bankr. S.D.N.Y. Nov. 1, 2022) ("*Cathay Life*") (finding that the Trustee has pleaded "sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion").  The Amended Complaint properly incorporates by reference the Fairfield SAC (*see* Point II *supra*), and MLBS does not contest that Sentry had actual knowledge of the BLMIS fraud.  The Trustee has therefore sufficiently alleged Sentry's actual knowledge, thereby precluding MLBS from invoking the Section 546(e) defense generally available to an initial transferee.

MLBS nevertheless maintains that it has an independent right to assert the Section 546(e) defense.  (Mot. at 27.)  But as the District Court confirmed in *Multi-Strategy II*, this is wrong. *Cohmad* did not provide subsequent transferees the right to independently assert Section 546(e) where the initial transferee is sufficiently alleged to have actual knowledge nor does avoidability of the initial transfers turn on the "subjective mental knowledge" of the subsequent transferee. *Multi-Strategy II*, 2022 WL 16647767, at *5, 13–15.  Therefore, "[a] subsequent transferee may raise the safe harbor as a defense . . . only in so far as the avoidance of the initial transfer is concerned."  *Korea Exchange Bank*, 2022 WL 4371908, at *10.

Section 546(e)'s plain language applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title") (emphasis added); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer") (internal citations omitted) (emphasis in original)).  Put simply: "The safe harbor is not applicable to subsequent

transfers." *Cathay Life*, 2022 WL 16626325, at *9.[6]  MLBS cannot assert Section 546(e)

protections here because the Trustee has adequately pleaded Sentry's actual knowledge.

## V.    THE TRUSTEE ADEQUATELY ALLEGES ACTUAL FRAUDULENT INTENT UNDER SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

MLBS contends that the Trustee has failed to allege BLMIS's "actual intent to hinder,

delay or defraud" creditors with respect to each transfer and instead improperly relies on the "Ponzi

scheme presumption." (Mot. at 28-31.)  MLBS baldly asserts that the presumption is not settled

law and simply ignores the fact that this Court and the District Court have accepted the Ponzi

scheme presumption[7] (while also acknowledging that the Second Court has applied it). (Mot. at

29 (citing *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 202 (Menashi, J., concurring) (2d

Cir. 2021).)  This Court has also already rejected MLBS's arguments and found Judge Menashi's

concurrence unpersuasive because "[t]he Ponzi scheme presumption does not turn would-be

preferences into fraudulent transfers[, and] . . . save[s] the Trustee and the courts time and resources

by presuming each transfer was made with actual fraudulent intent." *Picard v. Citibank, N.A.*,

Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234, at *4 (Bankr. S.D.N.Y. Sept. 27, 2022)

---

[6] The District Court also held that whether an initial transfer could have been made "in connection with" an agreement between an initial transferee and subsequent transferee for purposes of Section 546(e) was a factual question that required discovery and was not answerable on the pleadings. *Multi-Strategy II*, 2022 WL 16647767, at *8–9.  The Trustee also does not concede that any agreements or transfers between the Fairfield Funds and MLBS independently activate the safe harbor under Section 546(e) as to MLBS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers are customer property—that the initial transfers were "in connection with" any agreements with MLBS, or subscription or redemption requests from MLBS, for purposes of Section 546(e).  The Trustee also does not concede that, in any event, MLBS's knowledge would become relevant, as opposed to that of the initial transferee.

[7] *See, e.g.*, *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022); *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137; *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *17–18 (S.D.N.Y. Feb. 17, 2022); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021), judgment entered, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021); *Picard v. Ken-Wen Fam. Ltd. P'ship*, 638 B.R. 41, 49 (Bankr. S.D.N.Y. 2022); *see also Picard v. Gettinger*, 976 F.3d 184, 187–88 (2d Cir. 2020), cert. denied sub nom. *Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (noting that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

(finding that the Trustee's burden of pleading actual fraudulent intent is satisfied "[b]ecause the Trustee has pleaded that BLMIS operated a Ponzi scheme.").

MLBS attempts to cast doubt on the presumption's validity by citing inapplicable and non-binding authority. (Mot. at 29-31.) None of the cases cited by MLBS reject the Ponzi presumption as applied to Section 548(a)(1)(A). *See Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (under Minnesota state law, the presumption did not apply as a matter of law where each transaction must be analyzed individually); *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 226 (8th Cir. 2018) (same); *Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350–54 (Bankr. W.D.N.Y. 2001) (addressing recovery of a fraudulent conveyance under a *constructive fraud* theory). Nor are MLBS's arguments supported by *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005), which the Second Circuit already has found does not apply in a SIPA liquidation. *Picard v. Gettinger* (*In re BLMIS*), 976 F.3d 184, 200-01 (2d Cir. 2020) ("*Gettinger*"); *see also Picard v. The Gerald and Barbara Keller Family Tr.*, 2022 WL 4592898, at *3 (S.D.N.Y. Sept. 30, 2022) (refusing "to reconsider *Gettinger* in light of Judge Menashi's concurrence in *Citibank*" and finding that the Court is controlled by the 2nd Circuit and its majority decision).

Notwithstanding the Ponzi scheme presumption, the Trustee has in any event satisfied Rule 9(b). In *Citibank*, where defendants advanced the exact same arguments advanced now by MLBS, this Court found that BLMIS's actual fraudulent intent was pleaded in the complaint. 2022 WL 4493234, at *5. This Court specifically walked through the same allegations as have been pleaded

here to find that five out of the six badges of fraud were pleaded.[8] *Id.* at \*5 (finding that the Trustee does not need to "plead all six badges of fraud to meet his burden of pleading actual fraudulent intent"). These badges of fraud do not look solely to the intent of each individual transfer but at the entire scheme collectively. *See id.* (*citing Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983)).

As in *Citibank*, the Trustee pleads herein the badges of fraud, including without limitation, that: (i) Madoff had the actual intent to defraud because he admitted under oath to running a Ponzi scheme; (ii) BLMIS's website omitted the investment advisory business entirely along with BLMIS not being registered as an investment advisor until 2006; (iii) BLMIS did not reveal to the SEC "the existence of billions of dollars of customer funds BLMIS managed"; and (iv) various Madoff employees were found guilty of helping to carry out the fraud. (Am. Compl. ¶¶ 39-70.) Thus, although the existence of the Ponzi scheme alone is sufficient as a matter of law for actual intent to defraud as to the initial transfers (including because Madoff admitted to operating a Ponzi scheme), MLBS "would not be 'off-the-hook' for the two-year transfers because the Trustee . . . met . . . his pleading burden by pleading the 'badges of fraud' with respect to BLMIS." *Citibank*, 2022 WL 4493234, at \*4; (Am. Compl. ¶¶ 39-70). Accordingly, where the Trustee sufficiently pleads BLMIS's actual fraudulent intent, MLBS's motion should be denied.

---

[8]The badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).

## VI.    THE SECTION 550(b) AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Although it is not the Trustee's burden to rebut MLBS's affirmative defenses, MLBS nevertheless argues that this Court should dismiss the Amended Complaint because of MLBS's purported good faith and value defense under Section 550(b).  (Mot. at 31-39.)  This Court has already rejected this affirmative defense as inappropriate and untimely on a motion to dismiss and should similarly reject MLBS's efforts here.  *E.g.*, *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at * 11; *Picard v. Delta Nat'l Bank & Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256, at *6 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"); *see also Picard v. ABN Ireland (In re BLMIS)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (McMahon, J.) ("*ABN Ireland*").  Yet MLBS still relies on cases in which it was the Trustee's (now reversed) burden to plead willful blindness, such as *BNP Paribas*, 594 B.R. at 197, or the plaintiffs' obligation to plead a strong inference of scienter, such as *Anwar v. Fairfield Greenwich Ltd.*, 286 F.R.D. 258, 260 (S.D.N.Y. 2012), to argue its good faith affirmative defense under an *inquiry notice* standard.  *See Citibank*, 12 F.4th at 195–200.

Any determination of MLBS's fact-intensive affirmative defenses "can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by [MLBS] and factual inferences [MLBS] improperly seek[s] to have drawn in [its] favor." *ABN Ireland*, 2022 WL 1304589, at *3 (internal citation and quotation marks omitted); *see also Picard v. Merkin*, 440 B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("whether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process"); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith

is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

### A.     MLBS Cannot Show That It Gave Value on a Motion to Dismiss.

Value is MLBS's "burden to plead and prove" with evidence that "cannot be established in a complaint." *First Gulf*, 2022 WL 3354955, at *10-11. To the extent MLBS argues that value exists because the payments it received were in its redemption of equity interests in the Fairfield Funds, this cannot be decided on a motion to dismiss. *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf*, 2022 WL 3354955, at *10; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage"). Nor can MLBS rely on the Trustee's allegations to claim that "it is clear from the face of the Amended Complaint that MLBS" did not know the redemptions' prices were based on fictitious assets and, therefore, received the transfers for value because of its so-called good faith. (Mot. at 32 (citing MLBS's good faith discussion).)

MLBS appears to be collapsing the concepts of good faith and value, which are separate. Value is what a subsequent transferee must provide by way of consideration. *See Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *9. It is a fact-driven affirmative defense that should be addressed later in the litigation. *See id.* (denying in part motion to dismiss and finding that "[w]hether the Defendants gave value is a question of fact to be resolved either at summary judgment stage or at trial"). MLBS's value arguments are premature.

### B.     The Amended Complaint Does Not Demonstrate That MLBS Received the Transfers in Good Faith

The Second Circuit made clear that the inquiry notice standard requires "a fact-intensive inquiry" that can only be made after discovery. *See Citibank*, 12 F.4th at 195. MLBS nevertheless

contends that there are no allegations directly relating to its knowledge or, if there are, they all relate to emails after BLMIS's fraud was revealed. While the Court should reject MLBS's attempt to raise this affirmative defense on a motion to dismiss, the Trustee's allegations here in any event do not on their face demonstrate that MLBS received the transfers in good faith, nor do they establish that MLBS was without inquiry notice of the fraud.

The Trustee pleads that Merrill Lynch held itself out as "one Merrill Lynch" that worked across three different umbrella groups comprising employees from various Merrill Lynch entities—including MLBS—that "communicated and shared information with each other." (Am. Compl. ¶ 16.) As detailed in the Amended Complaint, a member of Merrill Lynch's GMI Group, said that Merrill Lynch refused to do anything with Madoff and that it had identified "many, many, many red flags" at BLMIS. (*Id.* ¶ 6.) This information was confirmed by a MLBS executive, who was not merely making a hindsight observation, but was describing how MLBS was aware of "[s]everal red flags [that] have been raised since [for]ever around these funds," and that the "galaxy of [BLMIS] feeders" were "easy to identify" because of their track record of "an annual compounded return of 8% with almost no volatility." (*Id.* ¶ 81.) In fact, MLBS touted its investment risk analysis, including the use of standard deviation evaluation, which—as Merrill Lynch reports showed—demonstrated that Sentry had unfailingly consistent positive returns, significantly lower standard and downside deviations than other indices, and was well below the risk-free rate of return. (*Id.* ¶¶ 16, 74-81.)

Despite the Trustee's allegations, MLBS contends that it had no actual or constructive knowledge of BLMIS's fraud and argues that because it was merely acting as an agent for its customers, it would not have knowingly chosen to facilitate Madoff's fraud just to earn fees. (Mot. at 36 (citing *In re Dreier LLP*, 453 B.R. 499 (Bankr. S.D.N.Y. 2011)) and Am. Compl. ¶ 33.) The

facts here, however, are very different from Dreier, which involved an inaccurate assessment of the debtor's credit risk. As discussed above and in the Amended Complaint, MLBS knew of red flags and had significant suspicions about BLMIS yet invested anyway. The contention that MLBS acted as an agent for its customers through its reliance and mischaracterization of the Services Agreement does not explain, let alone resolve, the BLMIS investments in MLBS's name and raises, at best, numerous fact issues. Inquiry notice, moreover, does not require showing that MLBS "facilitated the fraud". *Citibank*, 12 F.4th at 191-92.

MLBS professes it was not aware of anything suspicious and contends that a diligent inquiry into BLMIS would have been futile in light of BLMIS's secretiveness, the feeder funds' concealment of Madoff, and the SEC failing to uncover the fraud. (Mot. at 38-39.) These arguments are pure conjecture that fail to meet the standard of showing good faith on the face of a complaint, which is an "insuperable bar to securing relief." *Dreier*, 452 B.R. at 426.

MLBS cannot rely on an assortment of cherry-picked allegations regarding BLMIS's and Fairfield's secrecy, and factual inferences it wishes this Court to draw from the same in its favor. *ABN Ireland*, 2022 WL 1304589, at *3. Even if it were appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme). MLBS's suggestion that it could not detect Madoff's fraud—despite it being an experienced bank that touted its "sophisticated investment tools and risk analysis" and part of the Merrill Lynch global enterprise, which shared information concerning red flags at BLMIS (see Am. Compl. ¶¶ 6, 81)—is dubious on its face. MLBS knew of Madoff's red flags and implausible strategy as acknowledged in an

MLBS executive's email and in the performance analysis reports showing lower than normal standard deviations and downside deviations. *Id.* ¶ 65, 74-81. And any claim by MLBS that it was undertaking routine actions by taking redemptions over time (Mot. at 36) does not change that MLBS was on inquiry notice of BLMIS's fraud.

Far from demonstrating MLBS's good faith or the supposed impossibility of uncovering Madoff's scheme, the Amended Complaint "suggests that [MLBS] had access to information about BLMIS's fraud and failed to concern itself with such things." *Banque Syz*, 2022 WL 2135019, at *11. In short, MLBS fails to meet the "stringent standard of showing "beyond a doubt that the [Trustee] can prove no set of facts in support of his claim." *Delta*, 2022 WL 3365256, at *6.

### C.    MLBS Is Not Entitled to Dismissal of Subsequent Transfer Recovery Claims by Recasting Them as Preference Claims

MLBS asks this Court to conflate avoidance and recovery and to dismiss any subsequent transfers subject to preference claims. (Mot. at 39.) The Trustee, however, is not seeking to avoid preference claims, but rather to recover subsequent transfers under Section 550. (Am. Compl. ¶¶ 79, 95, 102.) MLBS contends that "[t]he Second Circuit limited its *Citibank* holding on good faith to fraudulent transfer claims under section 548 and 550" and thus carved out subsequent transfers of preferences as somehow different from subsequent transfers of fraudulent transfers. (Mot. at 39.) The Second Circuit made no such distinction, and the pleading standard for a Section 550 claim remains that of inquiry notice regardless of whether avoidance is based on Section 547 or 548. *See Citibank*, 12 F.4th at 191 (discussing inquiry notice in the context of an 11 U.S.C. § 547 claim).

MLBS's only cited authority concerns the avoidance of initial transfers from the debtor. *See In re Sharp Int'l Corp.*, 403 F.3d at 53–54 (discussing New York's Uniform Fraudulent Conveyance Act and bad faith in relation to a preference payment from the debtor); *Irving Trust Co. v. Chase Nat. Bank*, 65 F.2d 409, 410 (2d Cir. 1933) (discussing good faith and Section 67e

of the Bankruptcy Act in relation to a debtor giving a preference payment ten days prior to filing for bankruptcy). These cases have nothing to do with the recovery of subsequent transfers, the standard for which remains inquiry notice, which the Trustee has met. It is now MLBS's burden to prove its good faith and come forward with evidence during discovery on this issue. *See, e.g.*, *Banque Syz*, 2022 WL 2135019, at *10–11 (it is defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint"). However, until that occurs, dismissal of the Trustee's subsequent transfer claims is improper and premature.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny MLBS's Motion.

Dated: January 20, 2023
      New York, New York

Respectfully submitted,

*/s/ David J. Sheehan*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Carrie Longstaff
Email: clongstaff@bakerlaw.com
Peter B. Shapiro
Email: pshapiro@bakerlaw.com
Brittany A. Yantis
Email: byantis@bakerlaw.com
Deirdre Farrell
Email: dfarrell@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*