# Exhibit 11

**FGG** Fairfield Greenwich Group

Fairfield Greenwich Advisors, L.L.C.
919 Third Avenue
New York, NY 10022-3902
Tel: (212) 319-6060
Fax:(212) 319-0450
www.fggus.com

## CUSTOMER AGENCY AND SHAREHOLDER SERVICES AGREEMENT RELATING TO THE PRIVATE PLACEMENT OF FUNDS

**To:** [ML Switzerland]

We offer to make available to your [non-US] customers shares ("Shares") of the fund or funds listed in Exhibit A to this Agreement (the "Funds"), or of the separate series or classes of the Funds, whether in existence at the date of this Agreement or created thereafter as provided below:

1. **Availability to Your Customers of Fund Shares**

We agree to make Shares available to your customers upon the following terms:

(a) You will initiate transactions for the purchase or redemption of Shares

   i. at the request of your customer and upon your customer's orders;
   ii. to institutional investors within the meaning of notes 12-15 of the Swiss Federal Banking Commission's Circular Letter number 03/1 regarding the meaning of Public Advertisement in Swiss investment fund regulation (the "Circular Letter"), an informal English translation of which is attached as Exhibit B to this Agreement;
   iii. to customers who have granted to Merrill Lynch Bank (Suisse) S.A. ("MLBS") a written mandate for the discretionary management of their assets, provided the written agreement meets the requirements of note 16 of the Circular Letter.

We will execute transactions only upon receiving instructions from you acting as agent for your customer, pursuant to a completed Subscription Agreement with respect to the relevant Fund, series or class. Each transaction will be for your customer's account and not for your own account. Each transaction will be without recourse to you, provided that you act in accordance with the terms of this Agreement and the relevant Subscription Agreement.

CONFIDENTIAL                                                                                      ANWAR-C-ESI-00408511

(b)     The placing of purchase and redemption orders will be governed by instructions that we periodically issue to you.  Orders should be transmitted to Citco Fund Services (Europe) B.V., the Funds' administrator, or other offices authorized by us for this purpose.

(c)     All purchase orders are subject to acceptance or rejection by us in our sole discretion.  Without notice to you, we may suspend sales or withdraw the offering of Fund shares, or make a limited offering of Fund shares.  In the case of orders for the purchase or subscription of Shares to be registered in the name of the customer, you will obtain from the customer the application form attached as Exhibit C and retain it in your records. In the case of orders for the purchase or subscription of Shares to be held by MLBS on a nominee basis for one of its customers, you will provide us with the application form attached as Exhibit D.

(d)     You will place customer's orders to redeem Fund shares with us as agent for the Fund or by surrender of the share certificates to the Fund at the net asset value determined in accordance with the prospectus that we will make available to you to provide to your customers, less any redemption or other fee payable in accordance with the prospectus.

(e)     Neither the Fund nor we as its agent shall have any responsibility or liability to review any purchase or redemption request that is presented by you (i) to determine whether such request is genuine or (ii) to determine the suitability of the selected Fund for such customer.  The Fund and its agents shall be entitled to rely conclusively on any purchase or redemption request communicated to it by you, and shall have no liability whatsoever for any losses, claims or damages to or against you resulting solely from your failure to transmit any such request, or solely from any errors contained in any request.

(f)     We represent that, if any of the Funds are not registered with the Securities and Exchange Commission under the Investment Company Act of 1940 (the "1940 Act"), it is exempt from registration under the terms of the 1940 Act or of regulations or no-action letters issued thereunder.

2.    **<u>Shareholder Services</u>**

You will also perform the services described below.

(a)     Maintain records of customer accounts containing the details of Shares purchased by customers.

(b)     Assist in processing and issuing confirmations concerning customer orders to purchase, redeem or exchange Shares promptly and in accordance with the then effective prospectus for Shares .

2

(c) Assist in receiving and transmitting funds representing the purchase price or redemption proceeds of Shares.

(d) Issue and deliver periodic account statements to customers.

(e) Break down daily accruals and apply them to customer account records.

(f) Receive, break down and pay or, at customer's direction, consolidate and reinvest Share dividends payable to customers on monthly payment date.

(g) Consolidate and remit to customers monies associated with their redemption of Shares.

(h) Maintain procedures to reconcile customer sub-accounts and the central account with the Fund.

(i) Perform additional customer service functions for the Fund, including responding to telephone inquiries and requests.

(j) Retain records relating to the purchase and redemption of Shares.

(k) Act directly or through an agent as record holder and nominee for the Shares beneficially owned by the customers.

(l) Answer inquiries and respond to correspondence with customers about the status of their accounts or about other aspects of the Fund.

(m) Assist customers in completing application forms, selecting dividend and other account options and opening accounts with you.

(n) Act as liaison between customers and the Fund, including obtaining information from the Fund, assisting the Fund in correcting errors and resolving problems.

3. **Not Agent of Fund**

In purchasing or redeeming Shares for your customers under Paragraph 1 of this Agreement, you will act as agent for your customers and not as agent for us or for the Funds. In providing shareholder services under Paragraph 2 of this Agreement, you will act as an independent contractor and not an agent of the Fund and shall have no authority to act for or represent the Fund. In addition, no officer or employee of yours shall be deemed to be an employee or agent of the Fund, nor will he or she be subject, in any

3

CONFIDENTIAL

ANWAR-C-ESI-00408513

respect, to the supervision of any Fund or any affiliate of a Fund. You will not act as an "underwriter" or "distributor" of Shares, as those terms variously are used in the 1940 Act, the Securities Act of 1933, the Glass-Steagall Act, or the Bank Holding Company Act of 1956, as amended, or in the rules and regulations promulgated thereunder.

4. **Your Compensation**

Your fee for services acting as agent for customers with respect to investments in Shares and for providing shareholder services will be as set forth in the compensation schedule attached as Exhibit E.

5. **Indemnification**

(a) We will indemnify and hold you harmless from any claim, demand, loss, expense or cause of action resulting from
   i. the misconduct or negligence, of us, our agents and employees, in carrying out our obligations under this Agreement;
   ii. incorrect, incomplete or misleading statements made in a prospectus for any of the Funds, a fund fact sheet relating to the Funds or any other official publication released by the Funds; and
   iii. from any breach of any representation made by us under this Agreement.

Such indemnification will survive the termination of this Agreement. (For purposes of this paragraph, "you" includes your affiliates and your and their control persons and directors, partners, officers and employees.)

(b) You will indemnify and hold us harmless from any claim, demand, loss, expense or cause of action resulting from the misconduct or negligence, of you, your agents and employees, in carrying out your obligations under this Agreement and from any breach of any representation made by you under this Agreement. Such indemnification will survive the termination of this Agreement. (For purposes of this paragraph, "us" includes our affiliated companies and our and their control persons, directors, trustees, partners, officers and employees.)

6. **Termination of Agreement**

This Agreement will continue in effect unless terminated as provided herein. You and we may terminate the Agreement without cause upon [30] days' prior notice to the other. The termination of this Agreement with respect to any one Fund will not cause its termination with respect to any other Fund.

4

CONFIDENTIAL                                                           ANWAR-C-ESI-00408514

7. **Assignment of Agreement**

Either party can assign its rights and obligations under this Agreement to their subsidiaries and affiliates without consent of the other party.

8. **Notices**

All notices required or permitted to be given under this Agreement shall be given in writing and delivered by personal delivery, by postage prepaid mail, or by facsimile machine (orally confirmed) or a similar means of same day delivery (with a confirming copy by mail). All notices shall be given or sent to you or to us at the addresses specified below. Each of us may change the address to which notices shall be sent by giving notice to the other party in accordance with this paragraph.

9. **Miscellaneous**

This Agreement is to be construed in accordance with the laws of the State of New York. The captions in this Agreement are included for convenience of reference only and in no way define or limit any of the provisions of this Agreement or otherwise affect their construction or effect. If any provision of this Agreement shall be held or made invalid by a court decision, statute, rule or otherwise, the remainder of this Agreement shall not be affected thereby. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective assigns and successors.

Very truly yours,

FAIRFIELD GREENWICH LIMITED

By: _____
Name: Robert A. Blum
Title: Managing Partner

919 Third Avenue,
11th Floor
New York, NY 10022

Date JULY 19, 2004

5

CONFIDENTIAL

ANWAR-C-ESI-00408515

Agreed and accepted:

Merrill Lynch Bank (Suisse) S.A.

By: _____
    Name: *[signature]*
    Title: Director

13, route de Florissant
PO Box 3070
1211 Geneva 3
Switzerland

Date: 26.7.2004

*Fabrizio Palfini*
Directeur

6

CONFIDENTIAL                                        ANWAR-C-ESI-00408516

EXHIBIT A

## LIST OF FUNDS

| MULTI MANAGER FUNDS |
|---|
| Fairfield Investment Fund Ltd |
| FIF Advanced Ltd |
| Fairfield Masters Fund (Private Client Series) |
| Fairfield Greenwich Fund (Luxembourg) Private Client Series |
| Dresdner Fairfield Guardian Fund-Linked Principal Notes |

| SINGLE MANAGER FUNDS |
|---|
| Arlington International Ltd |
| Fairfield Dover Limited, Private Client Series |
| Fairfield GMO Market Neutral Fund (Private Client Series) |
| Fairfield Greenwich-FFTW Diversified Alpha Fund (USD and EUR) |
| Fairfield Paradigm Limited, Private Client Series |
| Fairfield Redstone Limited |
| Fairfield Sentry Ltd (Class B) |
| Fairfield Sigma Ltd (Class B) |
| Irongate Global Strategy Limited Fund |
| NGA Fairfield Ltd |
| Whiteford International Limited |
| Fairfield Briscoe Senior Capital Fund Ltd. |
| Fairfield FFTW Global Credit Fund Ltd. |

7

CONFIDENTIAL

ANWAR-C-ESI-00408517

EXHIBIT B

# INFORMAL TRANSLATION OF THE SWISS FEDERAL BANKING COMMISSION'S CIRCULAR LETTER 03/1

8

CONFIDENTIAL

ANWAR-C-ESI-00408518

EXHIBIT C

# FORM OF CUSTOMER APPLICATION FOR PURCHASE OF SHARES

To:     [Fund Name] (the "Company").

    1.     I/We have received and read the Offering Memorandum and other offering materials (the "Offering Circular") dated _____ of the Company.

    2.     I/We declare that I am/we are not a "U.S. Person" as defined in the Offering Circular of the Company, and that I am/we are not applying for shares of the Company (the "Shares") as the nominee(s) for or on behalf of any such person(s). I/We will notify the Company immediately if I/We become a U.S. Person or become aware that any person for whom I/We hold Shares has become a U.S. Person.

    3.     I/We represent that I/We have not been solicited to purchase Shares while present in the United States, its territories or possessions nor have the funds to be utilized for such purchase been obtained from any U.S. Person.

    4.     I/We represent that the Shares are being acquired for investment purposes and that neither the Shares nor any interest therein will be transferred to a U.S. Person or be transferred within the United States, its territories and possessions.

    5.     I/We declare that we are qualified investors as defined in the Offering Circular.

Name: _____
Signature: _____

9

CONFIDENTIAL                                                                                                   ANWAR-C-ESI-00408519

EXHIBIT D

# FORM OF CUSTOMER APPLICATION FOR PURCHASE OF SHARES IF PURCHASED ON NOMINEE BASIS

To: [Fund Name] (the "Company").

1. We have received and read the Offering Memorandum and other offering materials (the "Offering Circular") dated _____ of the Company.

6. We declare that the customer on behalf and for the account of which we have purchased the shares of the company (the "Shares") as nominee (the "Customer(s)") is/are not (a) "U.S. Person" as defined in the Offering Circular of the Company. We will notify the Company immediately if we become aware that the Customer(s) become (a) U.S. Person(s).

7. We represent that the Customer(s) has/have not been solicited by us to purchase Shares while present in the United States, its territories or possessions nor have the funds to be utilized for such purchase been obtained from any U.S. Person.

8. We represent that the Shares are being acquired for investment purposes and that neither the Shares nor any interest therein will be transferred to a U.S. Person or be transferred within the United States, its territories and possessions.

9. We declare that the Customer(s) is/are (a) qualified investor(s) as defined in the Offering Circular.

Merrill Lynch Bank (Suisse) S.A.

By: _____
    Name:
    Title:

10

CONFIDENTIAL ANWAR-C-ESI-00408520

EXHIBIT E

# COMPENSATION SCHEDULE

**Multi-Manager Funds:**
- <u>Fairfield Investment Fund Limited</u>: 1% per annum management fee.
- <u>FIF Advanced, Ltd.</u>: 1% of assets invested in FIF Advanced's underlying funds – i.e., at the fund's current level of leverage at the ratio of 1.8:1, MERRILL LYNCH (SUISSE) will receive a fee equal to 1.8% on equity that MERRILL LYNCH (SUISSE) raise for this fund. There can be no assurance that this leverage level will be maintained at all times, though it is FAIRFIELD GREENWICH LIMITED's present intention to maintain this level.
- <u>Fairfield Greenwich Fund Luxembourg – Guardian Fund</u>: <u>1% per annum management fee.</u>
- <u>Fairfield Masters Fund, Ltd., Private Client Classes</u>: 50 basis points management fee per annum.
- <u>Dresdner Fairfield Guardian Fund-Linked Principal Notes</u>: 2.5% placement fee and 50 basis points of management fee per annum earned on Note proceeds invested in Fairfield Guardian Fund.

**Single Manager Funds:**
- <u>Arlington International Limited</u>: 12.5% of management fee and 2.75% of the total 20% incentive fee per annum.
- <u>Fairfield Dover Limited, Private Client Series</u>: 50 basis points of management fee per annum.
- <u>Fairfield GMO Market Neutral Fund, Private Client Series</u>: 50 basis points of management fee per annum.
- <u>Fairfield Greenwich-FFTW Diversified Alpha Ltd., (USD, EURO)</u>: 30 basis points of management fee and 2.1% out of the total 20% performance fee per annum.
- <u>Fairfield FFTW Global Credit Fund Ltd.</u>: To be discussed.
- <u>Fairfield Paradigm Limited, Private Client Series</u>: 50 basis points of management fee per annum.
- <u>Fairfield Redstone Limited (currently closed)</u>: 50 basis points of management fee per annum.
- <u>Fairfield Sentry Limited (Class B)</u>: 30 basis points of management fee per annum.
- <u>Fairfield Sigma Limited (Class B)</u>: 30 basis points of management fee per annum.
- <u>Irongate Global Strategy Limited Fund</u>: To be discussed.
- <u>NGA Fairfield Limited</u>: 25 basis points of management fee and 1.65% out of the total 20% incentive fee.
- <u>Whiteford International Limited (Class B)</u>: 25 basis points of management fee and 1.50% of incentive fee per annum.
- <u>Fairfield Briscoe Senior Capital Fund Ltd</u>: 50 basis points of management fee per annum.

11

CONFIDENTIAL                                                                                        ANWAR-C-ESI-00408521