UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :    22 Civ. 6561 (LGS)
In re BERNARD L. MADOFF INVESTMENT                            :
SECURITIES LLC.                                               :    **OPINION AND ORDER**
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Banque Lombard Odier & Cie SA ("Lombard Odier" or "Defendant") is the defendant in the adversary proceeding *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (Bankr. S.D.N.Y.), brought by bankruptcy trustee Irving H. Picard (the "Trustee"). The adversary proceeding was brought in connection with the Securities Investor Protection Act ("SIPA") liquidation of Bernard Madoff's brokerage firm, Bernard L. Madoff Investment Securities LLC ("BLMIS"), *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (Bankr. S.D.N.Y.). Defendant moves for leave to appeal from a non-final order of the Bankruptcy Court denying Defendant's motion to dismiss the Trustee's complaint for lack of personal jurisdiction. For the reasons below, Defendant's motion is denied.

I.    BACKGROUND

The following facts are taken from the parties' submissions in support of, and opposition to, Defendant's motion. Bernard Madoff orchestrated a Ponzi scheme for years through BLMIS. After the scheme collapsed, the Trustee was appointed to liquidate BLMIS. In that role, the Trustee has pursued claims to recover for investors funds paid out by BLMIS.

Fairfield Sentry Limited ("FSL") invested billions of dollars of its investors' money in BLMIS and withdrew billions from FSL's accounts at BLMIS. When investors wanted to liquidate shares in FSL, they received "redemption payments" from FSL. Defendant, a Swiss private bank, invested in FSL and received 131 redemption payments totaling $95 million. The

Trustee has brought many actions against FSL's investors, including Defendant, to recover "subsequent transfers" of funds paid by BLMIS to FSL. Defendant moved to dismiss the action for lack of personal jurisdiction, arguing that it is a Swiss bank with no contacts with New York, and that Defendant's mere "knowledge" that its investment in FSL would be reinvested in BLMIS in New York is insufficient. The Bankruptcy Court denied Defendant's motion and found personal jurisdiction over Defendant. Defendant seeks leave to appeal.

## II.    STANDARD

District courts have jurisdiction to hear appeals from bankruptcy court decisions pursuant to 28 U.S.C. § 158(a). That jurisdiction includes appeals both "from final judgments, orders, and decrees" and, "with leave of the court, from other interlocutory orders and decrees." § 158(a)(1), (3). Defendants seek the Court's leave to appeal the underlying order, which is non-final and interlocutory.

"To determine whether leave to appeal should be granted, district courts apply the standards prescribed in 28 U.S.C. § 1292(b)." *In re Empire Generating Co., LLC*, No. 19 Civ. 5744, 2020 WL 1330285, at *4 (S.D.N.Y. Mar. 23, 2020) (internal quotation marks omitted). Leave may be granted if the interlocutory order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The 'would-be appellant' has the burden of establishing all three elements." *Reifler v. N.C. Mut. Life Ins. Co.*, No. 18 Civ. 2559, 2018 WL 3212464, at *4 (S.D.N.Y. June 28, 2018) (quoting *Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005)). "In addition, a party seeking leave to appeal a non-final order must demonstrate exceptional circumstances to overcome the general aversion to piecemeal litigation and to justify a departure from the basic

policy of postponing appellate review until after the entry of a final judgment." *In re Empire*, 2020 WL 1330285, at *4 (internal quotation marks omitted).

## III. DISCUSSION

The motion is denied because Defendant has not established any of the three requirements of 28 U.S.C. § 1292(b) -- that the underlying order involves a controlling question of law, that there is substantial ground for disagreement about that question, and that resolution of that question would materially advance the ultimate termination of the litigation.

### A. Controlling Question of Law

"With respect to the first prong on § 1292(b), the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, No. 21 Civ. 10316, 2022 WL 3910679, at *7 (S.D.N.Y. Aug. 31, 2022) (cleaned up). "Questions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Id.* (internal quotation marks omitted). A question of law is "controlling" if reversal "could result in dismissal of the action . . . [or] significantly affect the conduct of the action; or, [if] the certified issue has precedential value for a large number of cases." *Id.* (internal quotation marks omitted).

Defendant formulates the question on which it seeks review in two different ways, neither of which constitutes a controlling question of law. The first formulation is:

> Whether a financial intermediary (or investor) without any U.S. contacts or presence that subscribes to a non-US investment fund on behalf of its non-U.S. customers (or itself) believing that the non-US fund will invest the fund's assets with a New York-based broker-dealer is subject to personal jurisdiction in New York.

3

That is arguably a pure question of law but is not controlling because it is hypothetical. Beyond a mere "belie[f]" that FSL would invest in BLMIS, the Bankruptcy Court found plausible the allegation in the Trustee's Complaint that Defendant "intentionally directed its investment to New York-based BLMIS, through [FSL]." Rule 9(b) of the Federal Rules of Civil Procedure permits the Trustee to allege Defendant's intent generally, and it was sufficient to allege Defendant's intent on information and belief. *See* Fed. R. Bankr. P. 7009 ("Rule 9 F.R.Civ.P. applies in adversary proceedings."). The facts concerning Defendant's "intent" are "peculiarly within the possession and control of the defendant" and the Trustee's belief is "based on factual information that makes the inference . . . plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018). The Bankruptcy Court also cited documentary evidence submitted by the Trustee that "high level executives of [Defendant] met directly with Madoff in 2002 and 2008 in his New York City office."

The Bankruptcy Court also relied in part on allegations that Defendant had contacts with, and presence in, New York outside of the bare fact of its investment in FSL. The Trustee alleged, *inter alia*, that Defendant directed its investments into funds managed by a New York entity, sent its subscription agreement to the investment manager's New York office, communicated with the investment manager in New York, wired money through a New York account and derived significant revenue from New York. Defendant disputes whether the Bankruptcy Court should have relied on those allegations for various reasons, but those disputes go beyond the question as formulated above. For all of those reasons, resolution of the "pure" form of the question Defendant presents would not result in dismissal or affect the conduct of the action. Defendant has not pointed to another case with facts that present the pure form of this question, such that resolution of this question would have precedential value.

4

Defendant elsewhere states that the controlling question of law is "whether the Trustee's well-pled allegations are sufficient to subject Lombard Odier to personal jurisdiction." "Such disputes concerning the application of the law to the specific facts of a case typically are not appropriate for an interlocutory appeal." *Goldfarb v. Channel One Russia*, No. 18 Civ. 8128, 2021 WL 1392850, at *10 (S.D.N.Y. Apr. 13, 2021) (denying leave to file interlocutory appeal of a personal jurisdiction decision); *see, e.g.*, *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) ("[S]ince the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examination of the facts defining the relationship between the two corporations, we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance."); *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 400 (S.D.N.Y. 2018) ("[W]hether the pleadings, affidavits, and supporting materials support a finding of jurisdiction is 'not a question of law at all.'" (quoting *Hecklerco, LLC v. YuuZoo Corp.*, 258 F. Supp. 3d 350, 357 (S.D.N.Y. 2017))).

The two Second Circuit cases that Defendant cites in support of interlocutory appeal of a personal jurisdiction decision like this one are distinguishable. In *Klinghoffer v. S.N.C. Achille Lauro*, the issue of personal jurisdiction over the Palestinian Liberation Organization was bound up with other issues more susceptible of determination as a matter of law, such as sovereign immunity and capacity to be sued. 921 F.2d 21, 23 (2d Cir. 1990); *see Rein v. Socialist People's Libya Araba Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (noting that while "denials of motions to dismiss for jurisdictional reasons cannot ordinarily be the subject of interlocutory appeals," "when the jurisdictional issue is one of *immunity*, including sovereign immunity, appeal from final judgment cannot repair the damage that is caused by requiring the defendant to

5

litigate"). And in *Leaseco Data Processing Equip. Corp. v. Maxwell*, the Second Circuit took up a case on interlocutory appeal in order to consolidate it with a related case already on appeal from a final order. 468 F.2d 1326, 1330 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). In sum, the weight of authority holds that fact-bound questions of personal jurisdiction generally are not appropriate for interlocutory appeal. Defendants focus on one remark in the Bankruptcy Court's decision that appears to place special weight on one allegation above others. Notwithstanding that remark, the decision as a whole applies settled law to specific facts and presents no controlling question of law.

The Bankruptcy Court's application of law to fact would be particularly unsuitable for appeal in this case. The Bankruptcy Court found only that the allegations of the Trustee's complaint "are legally sufficient to constitute a prima facie showing of jurisdiction." Mem. Decision Denying Def. Mtn. to Dismiss at 7-8, *Picard v. Banque Lombard & Cie. SA*, Adv. Pro. No. 12-01693 (Bankr. S.D.N.Y. June 30, 2022) ("Mem. Decision") (citing *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)). That decision is necessarily provisional, and "would not prevent [Lombard Odier] from challenging the jurisdictional facts at" a later stage of the proceedings, when allegations would have to be supported and proven by a preponderance of the evidence. *Dorchester Fin. Sec.*, 722 F.3d at 86-87. An immediate appeal may not finally settle the issue of personal jurisdiction even for this case.

### B.     Substantial Ground for Difference of Opinion

Even if the Bankruptcy Court decision presented a pure question of law for this Court's review, Defendant has not shown grounds for a difference of opinion on that question. As the Bankruptcy Court stated, there are three conditions to exercising personal jurisdiction in this case:

6

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

Mem. Decision at 5-6 (cleaned up) (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)). Substantial ground for a difference of opinion "exists when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Empire*, 2020 WL 1330285, at *6 (internal quotation marks omitted). Defendant has not shown substantial grounds for disagreement on any of the three prongs of the personal jurisdiction analysis.

### 1. Purposeful Availment

Defendant argues that the Bankruptcy Court erred by stating that "the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Lombard Odier 'knowingly directing funds to be invested with New York-based BLMIS.'" Contrary to that argument, the Bankruptcy Court correctly held, applying settled precedent, that by intentionally investing in a New York-based investment fund, Defendant "purposefully availed itself of the privilege of" doing business in New York. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (cleaned up); *see also, e.g., Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012) ("[T]he Trustee's instant suit is based upon [Defendant's] investment of tens of millions of dollars in [FSL] with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom. Such investment was not haphazard. Rather, [Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."). Defendant has not pointed to any conflicting authority that suggests a different conclusion. While neither party has cited a previous Second Circuit case

7

addressing this precise fact pattern, the outcome is dictated by straightforward application of Supreme Court precedent.

Defendant primarily relies on cases stating the uncontroversial and well-established principle that the defendant's own suit-related conduct, not the conduct of third parties, must create a substantial connection with the forum state. *See generally Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021); *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Those cases do not help Defendant, however, because the Bankruptcy Court found, "Defendant intentionally invested in BLMIS." That is, Defendant's *own* intentional contacts with New York create the requisite connection. The Trustee alleged that FSL was a "feeder fund," in that its offering documents *required* it to invest substantially all of its assets in BLMIS. These allegations are distinguishable from the situation Defendant posits, in which a defendant invests in a non-New York fund because of the value proposition of that fund, knowing that its investment manager's portfolio strategy involves some New York investments. Defendant allegedly intended to invest in New York-based BLMIS, because of the value proposition offered by Mr. Madoff. FSL allegedly was a pass-through, without an investment strategy of its own, other than sending the invested funds to Madoff.

Unlike in the cases cited by Defendant, New York is not just where Defendant's money happened to end up. *See Bureau of Labor Ins.*, 480 B.R. at 506 (finding that investment in BLMIS via FSL "was not haphazard" but "intentional[]"); *cf. Walden*, 571 U.S. at 289-90 (finding none of defendant's "challenged conduct had anything to do with Nevada itself" because plaintiffs "lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired

8

to use the funds"); *Helicopteros*, 466 U.S. at 416-17 ("[A]bsent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer." (footnote omitted)). The Supreme Court in *Helicopteros* observed that the exercise of personal jurisdiction would be appropriate over a defendant -- analogous to Lombard Odier -- that requested a third party to use a bank account in the forum state. 466 U.S. at 416 n.11; *cf. In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305, 1323-24 (S.D. Fla. 2010) (holding a third party's designation of a New York account for receipt of funds did not suffice for personal jurisdiction, where there was no evidence defendants directed the third party to use that account). While that statement in *Helicopteros* was dicta, it illustrates that this case is not particularly difficult or a case of first impression, warranting interlocutory appeal.

Defendant's remaining arguments are also unpersuasive. Defendant points to another BLMIS liquidation case in which the Bankruptcy Court found personal jurisdiction over defendants that had more direct contacts with New York, including physical presence. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018). That decision neither states nor implies that those contacts represent the minimum required for jurisdiction, or that Defendant's contacts are insufficient. Defendant also argues that it is inappropriate to impute FSL's New York contacts to Defendant for purposes of personal jurisdiction under an "alter ego" theory. That is irrelevant because the Bankruptcy Court did not rely on an alter ego theory, but on Defendant's own acts of purposeful availment.

### 2. Arising Out of Defendant's Conduct

Defendant does not make an argument on the second prong of the personal jurisdiction analysis. That is, Defendant does not argue that, even if it is found to have purposefully availed itself of the benefits and protections of New York's laws, this case does not arise out of those

9

contacts. In any event, as there do not appear to be substantial grounds for disagreement on that question, it is unnecessary to consider the issue further.

### 3. Reasonableness, Fair Play and Substantial Justice

Defendant also has not shown that there is substantial ground for difference of opinion on whether the exercise of personal jurisdiction is "reasonable." As an initial matter, Defendant's argument on this prong is made only in a footnote and in its reply brief and therefore is forfeited. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12 Civ. 7372, 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020); *Tavarez v. Moo Organic Chocolates, LLC*, No. 21 Civ. 9816, 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022). In any event, there is no ground for disagreement that would warrant interlocutory review of the argument that international comity considerations tip the "reasonableness" analysis of personal jurisdiction in Defendant's favor.[1]

Due process prohibits the exercise of personal jurisdiction "under circumstances that would offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987). Defendant does not dispute the Bankruptcy Court's findings on several traditional factors for analyzing this question, including (1) the minimal burden on Defendant, given that it has been litigating this liquidation for a decade, (2) the strong interest of the Trustee in obtaining relief for U.S. and New York-based creditors in New York, and (3) the strong interests of the forum state -- both the U.S. generally and New York

---

[1] To the extent Defendant intended to argue for international comity abstention independent from its personal jurisdiction argument, that argument (1) is forfeited because it is raised only in a footnote and a reply brief, (2) appears not to have been preserved for appeal, *In re Latam Airlines Grp., S.A.*, 643 B.R. 741, 752-53 (S.D.N.Y. 2022), (3) is outside the scope of the purported questions of law on which Defendant seeks review and (4) is insufficiently developed to warrant consideration. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 218 (S.D.N.Y. 2022) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)).

specifically -- in adjudicating the liquidation of funds for the benefit of those creditors. *See In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) (in adjudicating a prescriptive comity challenge to choice of law, noting that "[t]he United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property. . . . Protecting these individuals, and therefore protecting our securities market, are the key purposes of SIPA."); *see generally Asahi*, 480 U.S. at 113 (enumerating the factors to be considered in this analysis).

Defendant focuses on one factor: "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* In the international context, rather than focusing on the "several States," a court considers "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the" U.S. court. *Id.* at 115. Defendant's argument rests on Switzerland's purported interest in adjudicating the case, but Defendant does not explain what that interest is or why it outweighs the factors favoring the exercise of jurisdiction in New York. Analysis of the whether personal jurisdiction is reasonable in the international context is a familiar exercise for courts. Defendant has not explained how this case presents a particularly difficult version of that question or a matter of first impression. Since Defendant also has not cited any contrary authority finding that Switzerland's interests are so compelling as to preclude personal jurisdiction here, there is no substantial ground for difference of opinion that warrants interlocutory appeal on this issue.

    **C.**    **Material Advancement of the Ultimate Termination of the Litigation**

The third prong of the interlocutory appeal analysis, whether an appeal would "materially advance the ultimate termination of the litigation," "in practice is 'closely connected' to the first prong." *Fairfield Sentry*, 2022 WL 3910679, at *5, *7. This prong "is met when an immediate appeal 'promises to advance the time for trial or to shorten the time required for trial.'" *Id.* at *7.

11

For some of the same reasons Defendant has not satisfied the first or second prong above, an immediate appeal likely would not advance the termination of the litigation. If this Court were to answer the abstract form of the legal question Defendants pose, resolution of that hypothetical would not affect the Bankruptcy Court's ruling at all. If this Court decided the fact-bound version of the issue in Plaintiff's favor, it would not shorten any potential trial or the time before trial, since Defendant could still mount a factual challenge to personal jurisdiction later in the proceedings. *See Dorchester Fin. Sec.*, 722 F.3d at 84. The only way the termination of the litigation would be materially advanced is if Defendant prevailed on its argument that the Trustee's allegations do not make a prima facie showing of personal jurisdiction, such that the case should be dismissed. But as discussed above, there is no substantial ground for difference of opinion about whether the Trustee should have prevailed before the Bankruptcy Court at the pleadings stage, where only its allegations and not its proof were tested. There is therefore little likelihood that an appeal would advance the ultimate termination of this case.

### D.    Other Potential Grounds for Appeal

In a footnote, Defendant "joins" another would-be appellant's argument for leave to appeal on a different issue, which Defendant "would raise if appeal is granted." Appeal is not granted, so the issue is not further addressed.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for leave to appeal is DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 4 and close the case.

Dated: January 25, 2023
   New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE