NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 12-01022 (CGM) |
| Plaintiff, | |
| v. | |
| CRÉDIT AGRICOLE (SUISSE) S.A., and CRÉDIT AGRICOLE S.A., a/k/a BANQUE DU CRÉDIT AGRICOLE, | |
| Defendants. | |

**AMENDED MEMORANDUM DECISION DENYING CRÉDIT AGRICOLE (SUISSE) S.A.'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rockefeller Center
1270 Avenue of the Americas, Suite 2210

New York, New York 10020
By:    Matthew B. Lunn
       Michael S. Neiburg
       Justin P. Duda
       Christopher M. Lambe

*Attorneys for Defendant, Crédit Agricole (Suisse) S.A.*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
By:    Elizabeth Vicens
       Rachel Polan

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is Defendant's, Crédit Agricole (Suisse) S.A. ("CA Suisse"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks dismissal for lack of personal jurisdiction, for failure to state a claim due to the safe harbor provision of the Bankruptcy Code, and for failure to allege that it received BLMIS customer property.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## <u>Jurisdiction</u>

       This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by the Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on January 12, 2012.  (Compl., ECF[1] No. 1).  Via the Complaint, "[t]he Trustee seeks to recover approximately [$16,251,791][2] in subsequent transfers of [BLMIS] [c]ustomer [p]roperty" made to Defendant that were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma") (collectively, the "Fairfield Funds"). (*Id.* ¶¶ 2, 65–67).  At the time it received the transfers, CA Suisse was a société anonyme that provided private banking services.  (*Id.* ¶ 3).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01022-cgm.

[2] The complaint in this case sought over $30 million in subsequent transfers.  Following a settlement with Kingate Global and Kingate Euro, the Trustee dismissed all claims seeking recovery of Kingate-related subsequent transfers. The settlement reduced the amount sought by approximately $15 million.  Stip., ECF No. 101.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion. (*Id.* ¶ 57). In 2011, the Trustee settled with Fairfield

Sentry. (*Id.* ¶ 62). As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate. (*Id*).; (Settlement Agreement, 09-01239-cgm, ECF No.

169). The Trustee then commenced a number of adversary proceedings against subsequent

transferees, like Defendant, to recover the approximately $3 billion in missing customer

property.

In its motion to dismiss, CA Suisse argues that this Court lacks personal jurisdiction over

it, that the Trustee has failed to state a claim due to the safe harbor provision of the Bankruptcy

Code, and that the Trustee has failed to allege that it received BLMIS customer property. The

Trustee opposes the motion to dismiss.

## Discussion

### Personal Jurisdiction

Defendant objects to the Trustee's assertion of personal jurisdiction. In the Complaint,

the Trustee argues that Defendant purposefully availed itself of the laws of the United States and

New York. (Compl. ¶ 6).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that CA Suisse "knowingly directe[d] funds to be invested with New York-based BLMIS through the [f]eeder [f]unds." (Compl. ¶ 6). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the
> forum State or have purposefully directed its conduct into the forum State.
> Second, the plaintiff's claim must arise out of or relate to the defendant's forum
> conduct.  Finally, the exercise of jurisdiction must be reasonable under the
> circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

CA Suisse argues that the Trustee has not alleged that it has sufficient contacts with New York, specifically, that the trustee fails to allege that the transfers were wired through New York, or that CA Suisse held meetings in New York. (Def.'s Mem. 26–28, ECF No. 118). CA Suisse argues that the Trustee fails to allege any acts directed at New York and that its contact with New York is but that of a third-party, not created by contacts it made itself. (Def.'s Mem. 9). In the Complaint, the Trustee alleges that CA Suisse "knowingly direct[ed] funds to be invested with New York-based BLMIS through the [f]eeder [f]unds. (Compl. ¶ 6). Fairfield Sigma invested all of its assets in Fairfield Sentry, and Fairfield Sentry, in turn, invested all or substantially all of its assets into the BLMIS Ponzi scheme. (*Id.* ¶ 2); (09-01239 Compl. ¶ 228) ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint). Thus, by knowingly investing in FGG feeder funds, CA Suisse purposefully invested in BLMIS.

The Trustee has alleged that CA Suisse entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction and sent a copy of that agreement to FGG's New York office. (Compl. ¶ 7). CA Suisse "sent a copy of the subscription agreement to FGG's New York office." (*Id.*) CA wired funds to Fairfield Sentry through a bank in New York, as provided in the subscription agreement. (*Id.*). The Trustee has alleged that, from its contacts, CA Suisse "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with [these] claims." (*Id.*)

CA Suisse being dragged into a New York court was foreseeable. The Trustee has alleged that CA Suisse submitted to New York jurisdiction. (*Id.*) The Trustee has provided additional evidence in response to the motion to dismiss that shows that CA Suisse "(i) irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding, and (ii) "consent[ed] to the service of process as provided by New York law in any such [p]roceeding out of any New York court. . . ." (Lunn Decl., Ex. 1, ECF No. 124).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against CA Suisse for monies it

received from the Fairfield Funds.  (Compl. ¶¶ 63–67).  These allegations are directly related to

its investment activities with the FGG Feeder Funds and BLMIS.  *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct.  *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal

quotations omitted).  Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. CA Suisse is not burdened by this litigation. Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the jurisdiction of New York courts' when they signed subscription agreements with the FGG Feeder Funds.[3] (Compl. ¶ 7). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee

---

[3] Even though this Court held that the Defendant's consent to jurisdiction in New York Courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certain a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. In re Fairfield Sentry v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendant's consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), aff'd, Fairfield Sentry Ltd. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds

subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S.

at 679. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Defendant by Fairfield Sentry and Fairfield Sigma.

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  The district court has already found that adoption by reference of the entire Fairfield Amended Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction.  As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results.  *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).  That is not a

concern in these proceedings.  Credit Agricole, like many other subsequent transfer defendants in

this SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this

SIPA liquidation.   It routinely follows what is happening on a proceeding-wide basis.  *See* Stip.,

ECF No. 64 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice Defendant.  On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint (the "Fairfield Complaint"),

the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due

to the Fairfield Funds' knowledge of BLMIS' fraud.  Fairfield Compl. ¶¶ 314–18, 09-01239,

ECF No. 286; *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*),

501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings

be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and

Order . . . .").

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239. (Compl. ¶ 57, ECF No. 1). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that

extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

## BLMIS Customer Property

The Trustee has pleaded that "approximately $15,654,127 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant." (Compl. ¶ 63). "The equivalent of approximately $597,664 was transferred by Fairfield Sigma to [Defendant]." (*Id.* ¶ 65). Exhibits J, K, and L to the Complaint provide CA Suisse with the exact date and amount of each transfer the Trustee is seeking to recover. These exhibits provide CA Suisse with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

CA Suisse argues that this Court needs to consider all of the subsequent transfer cases pending before this Court in order to determine whether allegations in this Complaint are feasible. It is alleged that Fairfield Sentry received only $3 billion in transfers from BLMIS. Yet, if one were to total all of the alleged subsequent transfers across all of these BLMIS adversary proceedings, the Trustee has alleged that Fairfield Sentry paid out approximately $5 billion. Defendant asserts that the money it received from Fairfield Sentry is untainted money that never was invested with BLMIS simply because the Trustee has filed complaints against other defendants who may have taken the money first.

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v.*

*Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to

dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the

four corners of the complaint, to documents attached to the complaint, or to documents

incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d

768, 776 (2d Cir. 2002)).

CA Suisse argues that the Trustee fails to plead that it is plausible that it received

customer property. It is alleged that Fairfield Sentry received only $3 billion in transfers from

BLMIS. Yet, if one were to total all of the alleged subsequent transfers across all of these

BLMIS adversary proceedings, the Trustee has alleged that Fairfield Sentry paid out

approximately $5 billion. Defendant has asserted that it is possible that the money it received

came from BLMIS, but equally possible it came from another pot of money received and

distributed by Fairfield Sentry. (Def.'s Mem. 13–14, ECF No. 118).

In order to determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need review financial documents in order to trace the monies to all of

Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation. At this stage, the Trustee need only assert allegations that make it seem

plausible that Defendant received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the

Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see

also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for

BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also

the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did

not have any assets that were not customer property.  In this case, the Trustee is not seeking to

collect $5 billion from CA.  He is seeking approximately $16 million which easily could from

the $3 billion Fairfield received from BLMIS.  If the Court were to accept Defendant's

argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent

transfer claims in all of the adversary proceedings since the Court has no idea which transfers

came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent

transfers actions to determine which transfers were made from the $3 billion of BLMIS customer

property and which were not.  The Court is simply not willing to have such a trial at this stage of

litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendant received customer property because Fairfield

Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

CA Suisse has raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of the initial transfer. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No.

08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug.

6, 2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the

Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers

qualified as payments made "in connection with" securities contracts between BLMIS and its

customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d

Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the

transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No.

22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any

transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in

connection with a security agreement" and therefore, § 546(e) cannot apply.[4]  *Id.*

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors. If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account. In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016)

(internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In

re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by §

---

[4] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out a
textual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in
circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a
matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL
16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains. The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at \*10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at \*7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  Where § 546(e) does not

"embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot

retroactively render it applicable."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-

CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  The Trustee's allegations

in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

CA Suisse has also raised the safe harbor defense in connection with its contract with

Fairfield Sentry.  Whether the safe harbor applies to the initial transfers under the theory that

BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contract

with Defendant (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the

pleadings.  The district court has already instructed this Court that such a determination is fact-

specific and that the Court should make such a determination with the benefit of a "full factual

record."  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL

16647767, at *24 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

CA Suisse argues that the safe harbor governs its relationship with Fairfield Sentry.  The

safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between

the Feeder Funds and CA Suisse on account of the securities contracts between Fairfield Sentry

and CA Suisse and between Fairfield Sigma and CA Suisse.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

<b>Conclusion</b>

For the foregoing reasons, CA Suisse's motion to dismiss is denied. The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

**Dated: January 27, 2023**
**Poughkeepsie, New York**

