**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Jonathan P. Guy
James W. Burke (admitted *pro hac vice*)
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:    (202) 339-8400
Facsimile:    (202) 339-8500

*Attorneys for Koch Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-01047 (BRL) |
| KOCH INDUSTRIES, INC., as successor in interest to Koch Investment (UK) Company, | |
| Defendant. | |

**ANSWER TO COMPLAINT**

Koch Industries, Inc. ("Defendant") hereby answers the allegations in the Complaint [ECF No. 1] filed in this action by Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and the substantively consolidated estate of Bernard L. Madoff, as follows:[1]

### AS TO "NATURE OF THE ACTION"

1.      This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**Response**: Paragraph 1 is a purported characterization of this action to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 1.

2.      With this Complaint, the Trustee seeks to recover approximately $21,533,871 in subsequent transfers of Customer Property made to Defendant Koch.  The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund.  Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI").  It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS.  Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts.

**Response**: The first sentence of paragraph 2 is a purported characterization of this action to which no response is required; to the extent a response is required, Defendant denies the allegations in the first sentence of paragraph 2.  Defendant denies the allegations in the second

---

[1]      Defendant reproduces herein the numbered paragraphs of the Complaint and interposes Defendant's corresponding answers after each numbered paragraph.  All references to paragraph numbers in Defendant's responses refer to the corresponding paragraphs of the Complaint.

sentence of paragraph 2. In response to the third sentence of paragraph 2, Defendant admits, upon information and belief, that Fairfield Sentry Limited was subject to liquidation proceedings in the British Virgin Islands; Defendant lacks knowledge or information sufficient to form a belief as to the current status of those proceedings and, therefore, denies the remaining allegations in the third sentence of paragraph 2. In response to the fourth sentence of paragraph 2, Defendant admits, upon information and belief, that Fairfield Sentry Limited was organized in the British Virgin Islands; Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in the fourth sentence of paragraph 2 and, therefore, denies the allegations. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of paragraph 2 and, therefore, denies the allegations.

3.    When Defendant Koch received the subsequent transfers of BLMIS Customer Property, Defendant Koch was one of the largest private companies in the United States. Defendant Koch was, and remains, active in numerous industries worldwide, including structured products, commodity trading, refining and chemicals, and process and pollution control technologies.

**Response**: Defendant objects that the allegations in the first sentence of paragraph 3 are vague and ambiguous as to the time period concerned. In response to the allegations in the first sentence of paragraph 3, Defendant admits that it is a private company organized in the United States; Defendant denies the remaining allegations in the first sentence of paragraph 3. Defendant objects that the industry definitions and term "worldwide" in the second sentence of paragraph 3 are vague and ambiguous and, therefore, denies the allegations in the second sentence of paragraph 3.

## AS TO "JURISDICTION AND VENUE"

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Koch as a subsequent transferee of funds originating from BLMIS.

**Response**: Paragraph 4 states legal conclusions and/or purported characterizations of this action to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 4.

5.      This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending.  The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**Response**: Defendant admits the allegations in the first sentence of paragraph 5.  Defendant admits the allegations in the second sentence of paragraph 5.  The third sentence of paragraph 5 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in the third sentence of paragraph 5.

6.      Defendant Koch is headquartered in Wichita, Kansas and registered with the New York State Department of State.  Defendant Koch is subject to New York jurisdiction and personal

jurisdiction pursuant to New York Civil Practice Law & Rules § 301 and § 302, and Bankruptcy Rule 7004. Where a federal statute provides for nationwide service of process, as does Rule 7004, a federal court has personal jurisdiction over any defendant having minimum contacts with the United States. Thus, this Court has personal jurisdiction over Defendant Koch based on its contacts with New York and the United States as a whole.

**Response**: In response to the allegations in the first sentence of paragraph 6, Defendant admits that its corporate headquarters is located in Wichita, Kansas and that Defendant is registered as a foreign corporation with the Division of Corporations of the New York State Department of State. The allegations in the second sentence of Paragraph 6 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in the second sentence of Paragraph 6. The allegations in the third sentence of Paragraph 6 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in the third sentence of Paragraph 6. The allegations in the fourth sentence of Paragraph 6 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in the fourth sentence of Paragraph 6.

7.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**Response**: Paragraph 7 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 7.

8.      Venue in this District is proper under 28 U.S.C. § 1409.

**Response**: Paragraph 8 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 8.

### AS TO "BACKGROUND"

9.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents
for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment
adviser fraud, and mail and wire fraud.   Contemporaneously, the U.S. Securities and Exchange
Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS.   The
SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser
activities of BLMIS.   The District Court Proceeding remains pending.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations in the first sentence of paragraph 9 and, therefore, denies the
allegations.  In response to the allegations in the second sentence of paragraph 9, Defendant admits,
upon information and belief, that the U.S. Securities and Exchange Commission commenced the
District Court Proceeding (as defined in the Complaint) against Bernard L. Madoff and BLMIS on
or about December 11, 2008.  In response to the allegations in the third sentence of paragraph 9,
Defendant refers the Court to the complaint filed in the District Court Proceeding (as defined in
the Complaint) for an accurate and complete statement of the allegations contained therein; to the
extent that the allegations in the third sentence of paragraph 9 are inconsistent with such complaint,
Defendant denies the allegations.   Defendant denies the allegations in the fourth sentence of
paragraph 9.

10.      On December 12, 2008, The Honorable Louis L. Stanton of the District Court
entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**Response**: In response to the allegations in paragraph 10, Defendant refers the Court to the
December 12, 2008 order entered by The Honorable Louis L. Stanton for an accurate and complete

statement of the contents thereof; to the extent that the allegations in paragraph 10 are inconsistent with such order, Defendant denies the allegations.

11.     On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 11 and, therefore, denies the allegations.  In response to the allegations in the second sentence of paragraph 11, Defendant refers the Court to the application filed by SIPC (as defined in the Complaint) for an accurate and complete statement of the allegations therein; to the extent that the allegations in the second sentence of paragraph 11 are inconsistent with that application, Defendant denies the allegations.

12.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.     removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b.     appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c.      removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**Response**: In response to the allegations in paragraph 12, Defendant refers the Court to the Protective Decree (as defined in the Complaint) for an accurate and complete statement of the contents thereof; to the extent that the allegations in paragraph 12 are inconsistent with the Protective Decree, Defendant denies the allegations.

13.     By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**Response**: In response to the allegations in the first sentence of paragraph 13, Defendant refers the Court to the orders dated December 23, 2008 and February 4, 2009 for an accurate and complete statement of the contents thereof; to the extent that the allegations in the first sentence of paragraph 13 are inconsistent with such orders, Defendant denies the allegations. The allegations in the second sentence of paragraph 13 state a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in the second sentence of paragraph 13.

14.     At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

**Response**: In response to the allegations in the first sentence of paragraph 14, Defendant refers the Court to the transcript of the Plea Hearing (as defined in the Complaint) for an accurate

and complete statement of the contents thereof; to the extent that the allegations in the first sentence of paragraph 14 are inconsistent with that transcript, Defendant denies the allegations. In response to the allegations in the second sentence of paragraph 14, Defendant refers the Court to the transcript of the Plea Hearing (as defined in the Complaint) for an accurate and complete statement of the contents thereof; to the extent that the allegations in the second sentence of paragraph 14 are inconsistent with that transcript, Defendant denies the allegations. In response to the allegations in the third sentence of paragraph 14, Defendant refers the Court to the transcript of the Plea Hearing (as defined in the Complaint) for an accurate and complete statement of the contents thereof; to the extent that the allegations in the third sentence of paragraph 14 are inconsistent with that transcript, Defendant denies the allegations. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of paragraph 14 and, therefore, denies the allegations.

15.     On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

**Response**: In response to the allegations in paragraph 15, Defendant refers the Court to the transcript of the August 11, 2009 plea hearing in *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), for an accurate and complete statement of the contents thereof; to the extent that the allegations in paragraph 15 are inconsistent with that transcript, Defendant denies the allegations.

16.     As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway.  However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**Response**: The allegations in the first sentence of paragraph 16 state a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in the first sentence of paragraph 16.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 16 and, therefore, denies the allegations.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of paragraph 16 and, therefore, denies the allegations.   The allegations in the fourth sentence of paragraph 16 state a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in the fourth sentence of paragraph 16.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of paragraph 16 and, therefore, denies the allegations.

17.     Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-

1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**Response**: The allegations in paragraph 17 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 17.

18.     Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**Response**: The allegations in paragraph 18 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 18.

19.     The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**Response**: The allegations in paragraph 19 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 19.

20.     Defendant Koch is a private conglomerate that maintains its headquarters at 4111 East 37th Street North, Wichita, Kansas 67220.  It is the ultimate parent company of Koch Investment.  Defendant Koch's registered agent in New York is CT Corporation System, 111 Eighth Avenue, New York, New York 10038.

**Response**: In response to the allegations in the first sentence of paragraph 20, Defendant admits that it is a private company and that its corporate headquarters is located at 4111 East 37th Street North, Wichita, Kansas 67220; Defendant denies the remaining allegations in the first sentence of paragraph 20.  In response to the allegations in the second sentence of paragraph 20,

Defendant admits that, during the period when Koch Investment (UK) Company (referred to in the Complaint as "Koch Investment") legally existed, Koch Investment was an indirect subsidiary of Defendant; Defendant denies the remaining allegations in the second sentence of paragraph 20. Defendant denies the allegations in the third sentence of paragraph 20.

21.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members.  BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).  By virtue of that registration, BLMIS was a member of SIPC.  BLMIS had three business units: market making, proprietary trading, and the IA Business.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 21 and, therefore, denies the allegations.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 21 and, therefore, denies the allegations.  Defendant admits, upon information and belief, the allegations in the third sentence of paragraph 21.  The allegations in the fourth sentence of paragraph 21 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in the fourth sentence of paragraph 21.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of paragraph 21 and, therefore, denies the allegations.

22.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy").  Under that strategy, Madoff purported to

invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100

Index ("S&P 100")—a collection of the 100 largest publicly traded companies.  Madoff claimed

that his basket of stocks would mimic the movement of the S&P 100.  He also asserted that he

would carefully time purchases and sales to maximize value, and BLMIS customers' funds would,

intermittently, be out of the equity markets.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 22 and, therefore, denies the allegations.

23.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with

options contracts.  Those option contracts acted as a "collar" to limit both the potential gains and

losses on the basket of stocks.  Madoff purported to use proceeds from the sale of S&P 100 call

options to finance the cost of purchasing S&P 100 put options.  Madoff told BLMIS customers

that when he exited the market, he would close out all equity and option positions and invest all

the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills.  Madoff

also told customers that he would enter and exit the market between six and ten times each year.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 23 and, therefore, denies the allegations.

24.     BLMIS's IA Business customers received fabricated monthly or quarterly

statements showing that securities were held in, or had been traded through, their accounts.  The

securities purchases and sales shown in the account statements never occurred, and the profits

reported were entirely fictitious.  At the Plea Hearing, Madoff admitted that he never made the

investments he promised clients, who believed they were invested with him in the SSC Strategy.

He further admitted that he never purchased any of the securities he claimed to have purchased

for the IA Business's customer accounts.  In fact, there is no record of BLMIS having cleared a

single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxx703.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 24 and, therefore, denies the allegations. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 24 and, therefore, denies the allegations. In response to the allegations in the third sentence of paragraph 24, Defendant refers the Court to the transcript of the Plea Hearing (as defined in the Complaint) for an accurate and complete statement of the contents thereof; to the extent that the allegations in the third sentence of paragraph 24 are inconsistent with that transcript, Defendant denies the allegations. In response to the allegations in the fourth sentence of paragraph 24, Defendant refers the Court to the transcript of the Plea Hearing (as defined in the Complaint) for an accurate and complete statement of the contents thereof; to the extent that the allegations in the fourth sentence of paragraph 24 are inconsistent with that transcript, Defendant denies the allegations. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of paragraph 24 and, therefore, denies the allegations. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the sixth sentence of paragraph 24 and, therefore, denies the allegations.

25.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through

any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the

IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 25 and, therefore, denies the allegations.

26.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme.

The money received from investors was not invested in stocks and options, but rather used to pay

withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments

to enrich himself, his associates, and his family.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 26 and, therefore, denies the allegations.

27.    The falsified monthly account statements reported that the accounts of the IA

Business customers had made substantial gains, but in reality, due to the siphoning and diversion

of new investments to fulfill payment requests or withdrawals from other BLMIS

accountholders, BLMIS did not have the funds to pay investors for those new investments.

BLMIS only survived as long as it did by using the stolen principal invested by customers to pay

other customers.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 27 and, therefore, denies the allegations.

28.    It was essential for BLMIS to honor requests for payments in accordance with the

falsely inflated account statements, because failure to do so promptly could have resulted in

demand, investigation, the filing of a claim, and disclosure of the fraud.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 28 and, therefore, denies the allegations.

29.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29 and, therefore, denies the allegations.

30.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth only a fraction of that amount.  Customer accounts had not accrued any real profits because virtually no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 30 and, therefore, denies the allegations.

31.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 31, and, therefore, denies the allegations.

15

32.    Koch Investment received subsequent transfers of Customer Property from Fairfield Sentry, which maintained customer accounts with BLMIS.  Koch Investment dissolved on August 28, 2009, and upon information and belief, funds derived from these subsequent transfers were transferred to its ultimate parent company, Defendant Koch.

**Response**: Defendant denies the allegations in the first sentence of paragraph 32.  In response to the allegations in the second sentence of paragraph 32, Defendant admits that Koch Investment was legally dissolved pursuant to section 201 of the Insolvency Act of 1986 on August 28, 2009; Defendant denies the remaining allegations in the second sentence of paragraph 32.

33.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint").  The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**Response**: In response to the allegations in the first sentence of paragraph 33, Defendant objects that the Complaint's definition of "Fairfield Amended Complaint" is vague and ambiguous, Defendant interprets that defined term to refer to the Amended Complaint filed on July 20, 2010 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.), which Defendant understands was the operative complaint in that case at the time the Trustee filed the Complaint in this action, and Defendant refers the Court to the Fairfield Amended Complaint for an accurate and complete statement of the allegations contained therein; to the extent that the allegations in the first sentence of paragraph 33 are inconsistent with the Fairfield Amended Complaint, Defendant denies the allegations.  In response to the Trustee's purported incorporation

by reference in the second sentence of paragraph 33 of the allegations contained in the Fairfield

Amended Complaint, Defendant objects to the purported incorporation of the allegations in the

Fairfield Amended Complaint and further responds that Defendant lacks knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations in the Fairfield Amended

Complaint and, therefore, generally denies the allegations in that complaint.  As a further response,

Defendant specifically denies that any alleged transfers between BLMIS and Fairfield Sentry

Limited at issue in the Fairfield Amended Complaint are subject to avoidance.

34.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield

Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers").  The Fairfield

Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning

of SIPA § 78lll(4), are avoidable, and recoverable under sections 544, 550, and 551 of the

Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly

SIPA § 78fff-2(c)(3).

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in the first sentence of paragraph 34, and, therefore, denies the

allegations.  Defendant denies the allegations in the second sentence of paragraph 34.

35.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion

which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the

"Fairfield Sentry Two Year Initial Transfers").  The Fairfield Sentry Two Year Initial Transfers

were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable,

and recoverable under sections 544, 548(a), 550, and 551 of the Bankruptcy Code, §§ 273-279 of

the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 35, and, therefore, denies the allegations.  Defendant denies the allegations in the second sentence of paragraph 35.

36.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 36, and, therefore, denies the allegations.  Defendant denies the allegations in the second sentence of paragraph 36.

37.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers."  Charts setting forth these transfers are included as Exhibits A and B.

**Response**: The first sentence of paragraph 37 states defined terms to which no response is required.  In response to the allegations in the second sentence of paragraph 37, Defendant refers the Court to Exhibits A and B of the Complaint for an accurate and complete statement of the contents thereof; to the extent that the allegations in the second sentence of paragraph 37 are inconsistent with Exhibits A and B of the Complaint, Defendant denies the allegations.

38.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the

"Settlement Agreement").  As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy

Court entered a consent judgment granting the Trustee a judgment against Fairfield Sentry in the

amount of $3,054,000,000.  Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under

the terms of the Settlement Agreement.

**Response**: In response to the allegations in the first sentence of paragraph 38, Defendant

refers the Court to the Court's June 7 and June 10, 2011 orders for an accurate and complete

statement of the contents thereof; to the extent that the allegations in the first sentence of paragraph

38 are inconsistent with such orders, Defendant denies the allegations.   In response to the

allegations in the second sentence of paragraph 38, Defendant refers the Court to the Settlement

Agreement (as defined in the Complaint) and the Bankruptcy Court's July 13, 2011 judgment for

an accurate and complete statement of the contents thereof; to the extent that the allegations in the

second sentence of paragraph 38 are inconsistent with the Settlement Agreement or the July 13,

2011 judgment, Defendant denies the allegations.   In response to the allegations in the third

sentence of paragraph 38, Defendant refers the Court to the Settlement Agreement (as defined in

the Complaint) for an accurate and complete statement of the contents thereof; to the extent that

the allegations in the third sentence of paragraph 38 are inconsistent with the Settlement

Agreement (as defined in the Complaint), Defendant denies the allegations.

39.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred

either directly or indirectly to, or for the benefit of, Koch Investment and Defendant Koch and is

recoverable from Defendant Koch pursuant to section 550 of the Bankruptcy Code.  Based on the

Trustee's investigation to date, approximately $21,533,871 of the money transferred from BLMIS

to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Koch Investment (the

"Fairfield Sentry Subsequent Transfers").  A chart setting forth the presently known Fairfield

Sentry Subsequent Transfers is attached as Exhibit C.  Upon information and belief, funds derived from these subsequent transfers were transferred to Koch Investment's ultimate parent company, Defendant Koch.

**Response**: Defendant denies the allegations in paragraph 39.

40.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**Response**: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 40, and, therefore, denies the allegations.  In response to the Trustee's purported reservation of rights in paragraph 40, Defendant denies that the Trustee has any rights to reserve.

### AS TO "COUNT ONE
### RECOVERY OF SUBSEQUENT TRANSFERS –
### 11 U.S.C. §§ 550 AND 551"

41.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**Response**: In response to the Trustee's purported incorporation by reference in paragraph 41 of paragraphs 1-40 of the Complaint, Defendant reiterates its responses to paragraphs 1-40 of the Complaint as though set forth fully herein.

42.    Defendant Koch received the Fairfield Sentry Subsequent Transfers totaling approximately $21,533,871, which are recoverable pursuant to Section 550 of the Bankruptcy Code.

**Response**: Defendant denies the allegations in paragraph 42.

43.     Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Koch.

**Response**:  The allegations in paragraph 43 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 43.

44.     Defendant Koch is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**Response**: The allegations in paragraph 44 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 44.

45.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Koch recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**Response**: The allegations in paragraph 45 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 45.

## AS TO HEADINGS AND SUBHEADINGS

Defendant is not required to respond to headings or subheadings within the Complaint.  To the extent that a response is required, Defendant denies any averments in the headings or subheadings of the Complaint.

## AS TO REQUESTS FOR RELIEF

Defendant is not required to respond to the Trustee's requests for relief set forth on pages 11-12 of the Complaint.  To the extent a response is required, Defendant denies that the Trustee is entitled to any of the relief or demands set forth in the Complaint or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof or persuasion that otherwise is placed on the Trustee, Defendant asserts the following defenses to the Complaint. Defendant reserves all rights to amend this Answer to revise the defenses asserted herein and to assert additional defenses. Further, Defendant reserves the right to amend this Answer to assert cross-claims and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

### FIRST DEFENSE

### Failure to State Claim (Fed. R. Civ. P. 12(b)(6))

The Complaint fails to state a claim upon which relief can be granted. In support hereof, Defendant incorporates its arguments in the Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 106] and the Reply Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 117].

### SECOND DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

Under 11 U.S.C. § 550(a), the Trustee may only pursue a recovery claim "to the extent that" a predicate transfer is "avoided." Because the Trustee has not avoided any of the transfers from BLMIS to Fairfield Sentry Limited on which the Trustee's recovery claim against Defendant is predicated, the Trustee's recovery claim fails.

### THIRD DEFENSE

### Statute of Limitations (11 U.S.C. § 546(a))

The Trustee's claim is barred, in whole or in part, by the two-year statute of limitations in 11 U.S.C. § 546(a) and any other applicable statutes of limitations and/or repose. As further

detailed in section III of the Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 106], which is incorporated herein by this reference, the Complaint seeks to avoid transfers from BLMIS to Fairfield Sentry Limited as a predicate for a recovery claim against Defendant under 11 U.S.C. § 550.  Because the Trustee filed this action on February 9, 2012, more than three years after the December 15, 2008 filing date for BLMIS's liquidation under the Securities Investor Protection Act, the two-year statute of limitations for avoidance actions in 11 U.S.C. § 546(a) had expired before the Complaint was filed.  And because the Trustee is time-barred from satisfying a necessary predicate of its recovery claim against Defendant, the Trustee's recovery claim against Defendant also fails.

## FOURTH DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

As further detailed in section I of the Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 106] and the Reply Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 117], which are incorporated herein by this reference, the Complaint is seeking to avoid transfers from BLMIS to Fairfield Sentry Limited as a predicate for a recovery claim against Defendant under 11 U.S.C. § 550.  The predicate transfers are alleged withdrawals from Fairfield Sentry Limited's customer accounts with BLMIS, which accounts were created pursuant to customer agreements between Fairfield Sentry Limited and BLMIS.  Under *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLC)*, 773 F.3d 411 (2d Cir. 2014), BLMIS is a stockbroker, the customer agreements between Fairfield Sentry Limited and BLMIS are "securities contracts," and the predicate transfers are made "in connection with a securities contract" for purposes of 11 U.S.C. § 546(e).  Under *Ida Fishman*, the predicate transfers also are "settlement payments."  Thus,

the Trustee's recovery claim against Defendant fails because the predicate transfers from BLMIS to Fairfield Sentry Limited are shielded from avoidance by the safe harbor of 11 U.S.C. § 546(e).

Additionally, Koch Investment's subscription, redemption, and other investment agreements with Fairfield Sentry Limited also are "securities contracts" for purposes of 11 U.S.C. § 546(e). To the extent that the predicate transfers from BLMIS to Fairfield Sentry Limited were made in connection with Koch Investment's redemption requests to Fairfield Sentry Limited, the predicate transfers were made in connection with those securities contracts as well.

To the extent relevant to the application of 11 U.S.C. § 546(e), Defendant avers, upon information and belief, that Koch Investment, which was a separate legal entity from Defendant and was legally dissolved on August 28, 2009, had no actual knowledge of BLMIS's alleged fraud scheme at the time that it entered into its investment agreements with Fairfield Sentry Limited or at the times that Koch Investment received any alleged transfers from Fairfield Sentry Limited. Upon information and belief, Fairfield Sentry Limited also had no actual knowledge of BLMIS's alleged fraud scheme at the time that it entered into its customer agreements with BLMIS or at the times that it received the alleged transfers from BLMIS on which the Trustee's recovery claim against Defendant is predicated.

## FIFTH DEFENSE

## No Customer Property (15 U.S.C. § 78fff-2(c)(3))

Among the factual predicates of the Trustee's recovery claim against Defendant in this action is that the transfers Koch Investment allegedly received from Fairfield Sentry Limited were of BLMIS customer property. Upon information and belief, however, some or all of the amounts allegedly transferred from Fairfield Sentry Limited to Koch Investment were funded from sources other than BLMIS customer property. To the extent that the transfers, or any portion thereof,

alleged to have been received by Defendant were not customer property under 15 U.S.C. § 78fff-2(c)(3) or any other section of the U.S. Bankruptcy Code that BLMIS allegedly transferred to Fairfield Sentry Limited, the Trustee's recovery claim against Defendant fails.

## SIXTH DEFENSE

### No Ponzi Scheme Presumption

The Trustee may not rely on a "Ponzi scheme presumption" to prove that a predicate transfer from BLMIS to Fairfield Sentry Limited was made with actual intent to hinder, delay, or defraud any BLMIS creditor or customer.

## SEVENTH DEFENSE

### Fair Consideration Defense to Avoidance Claim

### (New York Debtor & Creditor Law §§ 273, 274, 275)

The Complaint is seeking to avoid alleged transfers from BLMIS to Fairfield Sentry Limited as a predicate for a recovery claim against Defendant under 11 U.S.C. § 550.  Under New York Debtor & Creditor Law §§ 273, 274, 275, the predicate transfers are not subject to avoidance because, upon information and belief, Fairfield Sentry Limited gave fair consideration to BLMIS in exchange for the transfers, including the satisfaction of its claims for amounts invested in its customer accounts with BLMIS.

## EIGHTH DEFENSE

### Good Faith Defense to Recovery Claim (11 U.S.C. § 550(b))

As further detailed in section II of the Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 106] and the Reply Memorandum of Law in Support of Motion of Koch Industries, Inc. to Dismiss the Complaint [ECF No. 117], which are incorporated herein by this reference, assuming the predicate transfers between BLMIS and

Fairfield Sentry Limited were avoidable, under 11 U.S.C. § 550(b), the Trustee's recovery claim against Defendant fails because (i) Koch Investment received any alleged subsequent transfers from Fairfield Sentry Limited for value, in good faith, and without knowledge of the voidability of the predicate transfers from BLMIS to Fairfield Sentry Limited, and (ii) to the extent that Defendant received any alleged transfers from Koch Investment, it did so in good faith.

Defendant avers, upon information and belief, that Koch Investment received any alleged transfers from Fairfield Sentry Limited for value because the transfer was made in exchange for Koch Investment's redemption of its investments in Fairfield Sentry Limited and in satisfaction of Koch Investment's claims for return of its investment in Fairfield Sentry Limited.

Defendant further avers, upon information and belief, that Koch Investment, which was a separate legal entity from Defendant and was legally dissolved on August 28, 2009,  received any alleged transfers from Fairfield Sentry Limited in good faith and without knowledge of the voidability of the predicate transfers from BLMIS to Fairfield Sentry Limited.  Upon information and belief, Koch Investment had no knowledge of BLMIS's alleged fraud scheme at the time that it entered into its investment agreements with Fairfield Sentry Limited or at the times that it received any alleged transfers from Fairfield Sentry Limited.  Upon information and belief, no information provided to Koch Investment by Fairfield Sentry Limited or its representatives reasonably suggested that BLMIS was operating a Ponzi scheme.  Further, upon information and belief, a reasonable person in Koch Investment's position would not have conducted a further inquiry into BLMIS.  Additionally, further inquiry into BLMIS by Koch Investment would have been futile because, upon information and belief, various entities, including the U.S. Securities and Exchange Commission and other entities with greater information or access to information

about BLMIS and greater investigative powers and resources than Koch Investment, investigated BLMIS but were unable to discover BLMIS's fraud scheme.

To the extent that Defendant received any alleged transfers from Koch Investment, it did so in good faith, including because any such transfer was made in connection with (or following) the dissolution of Koch Investment by independent third-party liquidators, KPMG LLP, in accordance with United Kingdom law, pursuant to which creditors of Koch Investment had opportunity to submit notices of claim.

### NINTH DEFENSE

### Payment/Single Satisfaction (11 U.S.C. § 550(d))

Under the legal doctrine of payment and 11 U.S.C. § 550(d), the Trustee may not recover any amount from Defendant to the extent that the Trustee has recovered or otherwise received payment of that same amount from any other source, including Fairfield Sentry Limited or any immediate or mediate transferee of Fairfield Sentry Limited.

Further, on May 9, 2011, the Trustee entered into an Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other entities. This Court approved the Fairfield Settlement Agreement by a bench memorandum and order entered on June 7, 2011, and it was incorporated into the consent judgment entered against Fairfield Sentry Limited on July 13, 2011. The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry Limited transferred. To the extent that the Liquidators recover from Defendant in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should Defendant be subject to recovery of identical funds from two separate entities.

## TENTH DEFENSE

### Look-back Period

To the extent that the Complaint seeks avoidance of Fairfield Sentry Two Year Initial Transfers or Fairfield Sentry Preference Period Initial Transfers (each as defined in the Complaint), the Trustee's claim fails because the alleged transfers in Exhibit C to the Complaint occurred more than two years before the December 11, 2008 filing date of the BLMIS SIPA liquidation.

## ELEVENTH DEFENSE

### Violation of Due Process (U.S. Const. Amend. V)

To the extent the Trustee contends Defendant is not permitted to raise defenses against avoidance of the predicate transfers from BLMIS to Fairfield Sentry Limited that would have been available to Fairfield Sentry Limited or seeks to rely on any rulings in proceedings of which Defendant did not receive reasonable notice and in which Defendant did not have a meaningful opportunity to participate, the Trustee's recovery claim against Defendant violates Defendant's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWELFTH DEFENSE

### Res Judicata

To the extent that Defendant is deemed to be the "successor in interest" to Koch Investment, the Trustee's claim is barred, in whole or in part, by the dismissal with prejudice of the claims asserted against Koch Investment in *Fairfield Sentry Limited (In Liquidation) v. Koch Investment (UK) Company (In re Fairfield Sentry Limited)*, No. 11-01606 (Bankr. S.D.N.Y.).

## THIRTEENTH DEFENSE

### Collateral Estoppel

The Trustee is collaterally estopped from relitigating issues presented in this action that have been decided adversely against the Trustee in other actions, including those issues resolved in *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLC)*, 773 F.3d 411 (2d Cir. 2014), and *Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021).

## FOURTEENTH DEFENSE

### Estoppel

The Trustee's claim against Defendant is barred by estoppel.

## FIFTEENTH DEFENSE

### Laches

The Trustee's claim against Defendant is barred by laches.

## SIXTEENTH DEFENSE

### Release

The Trustee's claim against Defendant is barred to the extent that such claim has been released.

## SEVENTEENTH DEFENSE

### Discharge

The Trustee's claim against Defendant is barred to the extent that such claim has been discharged, including any discharge or other similar extinguishment of liabilities resulting from the dissolution of Koch Investment pursuant to the United Kingdom's Insolvency Act of 1986.

### EIGHTEENTH DEFENSE

#### Extraterritoriality

In the event that *In re Picard*, 917 F.3d 85 (2d Cir. 2019), is abrogated, the Trustee's claim against Defendant would constitute an impermissible extraterritorial application of U.S. law.

### NINETEENTH DEFENSE

#### Comity

In the event that *In re Picard*, 917 F.3d 85 (2d Cir. 2019), is abrogated, the Trustee's claim against Defendant violates principles of comity.

### TWENTIETH DEFENSE

#### Dismissal

The Trustee's claim is barred to the extent it has been or may in the future be dismissed by the Court or is based on allegations that have been or may in the future be dismissed by the Court or is based on theories or allegations that have been or may in the future be rejected by this Court or by another court on appeal from any orders of this Court.

### STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Defendant does not consent to the entry of final orders or judgment by this Court.

### RESERVATION OF RIGHTS TO ASSERT CLAIMS

To the extent the Trustee recovers any amount from Defendant, Defendant reserves all rights to assert a claim arising from such recovery, including pursuant to 11 U.S.C. § 502(h).

### DEFENDANT'S REQUEST FOR RELIEF

**WHEREFORE**, Defendant requests that this Court enter judgment dismissing the Complaint with prejudice and awarding Defendant such other and further relief as the Court deems just and proper.

Dated:  January 27, 2023
         Washington, D.C.

Respectfully submitted,

/s/ Jonathan P. Guy
Jonathan P. Guy
James W. Burke (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500
Email: jguy@orrick.com; jburke@orrick.com

*Attorneys for Koch Industries, Inc.*