# Exhibit D

MADDSECH

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SECURITIES INVESTOR PROTECTION
     CORPORATION,
 4
                    Plaintiff-Applicant,
 5
                 v.                        22-CV-06502
 6
     BERNARD L. MADOFF INVESTMENT
 7   SECURITIES LLC,

 8                  Defendant.
                                           Oral Argument
 9   ------------------------------x
                                           New York, N.Y.
10                                         October 13, 2022
                                           4:00 p.m.
11
     Before:
12
                         HON. JED S. RAKOFF,
13
                                           District Judge
14

15                       APPEARANCES

16   BAKER & HOSTETLER
          Attorneys for Trustee.
17   BY:  MATTHEW DAVID FEIL
          TORELLO H. CALVANI
18
     FRIEDMAN KAPLAN
19        Attorney for Multistrategy.
     BY:  ROBERT J. LACK
20
     JENNER & BLOCK
21        Attorney for Banque Syz.
     BY:  RICHARD LEVIN
22

23   HERBERT SMITH FREEHILLS
          Attorney for Barclays Bank.
24   BY:  CHRISTOPHER B. EMCH
          MARC GOTTRIDGE
25
```

MADDSECH

1   KATTEN
        Attorney for Lloyd's Bank.
2   BY:  Mark T. Ciani

3   ALLEGAERT BERGER & VOGEL, LLP
        Attorney for Banque Cantonale Vaudoise.
4   BY:  DAVID A. SHAIMAN

5   SULLIVAN & CROMWELL, LLP
        Attorney for Delta National.
6   BY:  JAMES L. BROMLEY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Case called; appearances noted)

2       THE COURT:  Good afternoon.  We're here for the motion

3  to appeal.  I assume not everyone at the table is going to talk

4  but have you worked out who want to be the primary

5  spokespersons?

6       MR. LEVIN:  Yes, your Honor.  I was going to start and

7  give a brief explanation about who was going to talk and what

8  we were going to talk about.

9       THE COURT:  Sure.  Why don't you go to the podium.

10      MR. LEVIN:  Sure.

11      Your Honor, I and the other two counsel speaking today

12  are speaking on behalf of all seven of the defendants below

13  moving parties here.  We're here separately, because the

14  bankruptcy court below required separate briefing on all these

15  matters, but we're --

16      THE COURT:  She must have been a glutton for

17  punishment.

18      MR. LEVIN:  I don't want to make assumptions, your

19  Honor, and we're glad that it's proceeded on a consolidated

20  basis here.

21      We're going to divide the argument into three parts.

22  I'm going to start with a review of the grounds for the motion

23  for leave to appeal and -- two of the three grounds, and then

24  Mr. Lack is going to take over on the substantive issue, the

25  primary substantive issue on section 546(e).  And Mr. Gottridge

1    is going to address what we're calling the separate securities

2    contract issue.

3            THE COURT:  All right.

4            MR. LEVIN:  So, your Honor, as you well know, a motion

5    for leave normally requires three factors, and I'm going to

6    state them not in the usual order, because I'm going to discuss

7    two of them out of order.  First is whether there's a

8    controlling issue of law; second, whether the decision of the

9    issue would materially affect the advance -- advance the

10   litigation below; and, third, whether there is a substantial

11   ground for difference of opinion on that controlling issue of

12   law.  Courts have added an exceptional circumstances

13   requirement, but, in the end, I think it's a practical

14   question, your Honor.

15           The final judgment rule is important to prevent

16   piecemeal litigation.  We acknowledge that, but Congress

17   enacted interlocutory appeals to provide some give in the

18   joints on that where it made sense as a practical matter.  And

19   the courts have recognized --

20           THE COURT:  Well, I think, from the briefing, the real

21   dispute is on your third factor.

22           MR. LEVIN:  Absolutely.

23           THE COURT:  So you may want to turn to that.

24           MR. LEVIN:  Fine.

25           Well, I'm going to just talk briefly about the

1    standard for the third factor.  Mr. Lack is going to then

2    address the substance of the third factor.

3            The Second Circuit has said there are two ways to --

4    two ways something can create a substantial ground for a

5    difference of opinion.  One is conflicting decisions.  In this

6    case, this Court's decision below on *Cohmad* was the only

7    decision ever on this issue, so there can't be conflicting

8    decisions, but the other ground the Second Circuit recognized

9    --

10           THE COURT:  I'm having trouble.  Could you slow down a

11   bit?

12           MR. LEVIN:  The other basis for substantial grounds

13   for difference of opinion is if it is an issue of first

14   impression in the circuit, and if that's the case, the Second

15   Circuit has also said in the *Flor* case --

16           THE DEPUTY CLERK:  Spell that, please.

17           MR. LEVIN:  *Flor*, F-l-o-r.

18           -- that the district court must analyze the strength

19   of the arguments in opposition to the challenged ruling when

20   deciding whether the issue is truly one on which there is

21   substantial grounds for dispute.

22           As I said, this is definitely an issue of first

23   impression.  It was when this Court decided *Cohmad* -- and this

24   further interpretation of *Cohmad* that we are addressing today

25   is similarly an issue of first impression.  No other court has

MADDSECH

1  addressed this application of 546(e) to innocent subsequent

2  transferees.  And as the trustee's dogged opposition to the

3  implications of this Court's *Cohmad* ruling shows, it is a

4  difficult issue, even though the trustee attempts to

5  characterize it as just a simple interpretation.

6          Your Honor, with that, I turn it over to Mr. Lack.  I

7  did have one exhibit, just listing the 21 decisions that the

8  bankruptcy court has already decided.  That goes to the issue

9  of materially advanced --

10         THE COURT:  Please feel free to hand it up, and if I

11 have any trouble with insomnia tonight, I'll know how to cure

12 it.

13         MR. LEVIN:  It's all on one page.  It will make it

14 easy.

15         THE COURT:  Go ahead.

16         MR. LACK:  Thank you, your Honor.

17         Substantial grounds for difference of opinion exist

18 here, because the bankruptcy court's ruling on the -- misread

19 this Court's decision in *Cohmad*, not only in these seven cases,

20 but in --

21         THE COURT:  Well, let me just make sure that you agree

22 that other than the way that you're reading my decision, which

23 I may agree with or I may disagree with, but other than that,

24 there's really no other decision that's weighed in on the issue

25 that you want to now appeal?

1          MR. LACK:  That's correct.  Other than Judge Morris'

2    decision in the bankruptcy court which squarely dealt with the

3    question of the innocent subsequent transferee, and your

4    Honor's *Cohmad* decision which we believe, properly construed,

5    would come to the opposite conclusion, there is no other

6    decision.

7          THE COURT:  Okay.  Go ahead.

8          MR. LACK:  And, as the chart you're just been given

9    shows, there are 21 cases that so far have been effected by the

10   misreading of *Cohmad* by the bankruptcy court.  And in the

11   absence of intervention by this Court, there will be scores of

12   others that will be similarly misdecided, erroneously decided,

13   because there are approximately 60 additional cases in the

14   pipeline, in various stages of briefing, set for argument, from

15   next week through the spring of 2023, raising exactly the same

16   issue and the bankruptcy court has consistently decided

17   adversely to the defendants.

18          I mean, the trustee here does not --

19          THE COURT:  Let me interrupt you here on that point,

20   because I'm glad you made me aware of those, you know, other

21   matters in the pipeline.  Well, while I make no guarantee, I

22   will do my very best to get you at least a bottom line decision

23   on these motions by the end of October.  Hopefully, it will be

24   more than just the bottom line.  If it is the bottom line, of

25   course, an opinion will follow in due course; but I do

1   understand the need for some expedition and, really, I wasn't

2   planning on going trick-or-treating, so October 31 sounds like

3   an open day.

4          MR. LACK:  Thank you, your Honor.  That would be

5   appreciated.

6          I think, in the interest of judicial administration

7   efficiency, that will be well worthwhile.  The trustee here

8   does not dispute that Madoff was a stockbroker, that Fairfield

9   Sentry was a financial institution, or that the initial

10  transfers from Madoff -- I'll refer to Bernard L. Madoff

11  Investment Securities, LLC as just Madoff for simplicity.

12  There's no dispute by the trustee that the initial transfers

13  from Madoff to Sentry were settlement payments or in connection

14  with a securities interest, and the trustee does not dispute

15  with respect to the transfers that are at issue in these

16  motions that they were all more than two years before the

17  petition date and, therefore, cannot be pursuant under section

18  548(a)(1)(A) of the Bankruptcy Code.  In other words, the

19  section 546(e) Safe Harbor applies by its terms to the initial

20  transfers from Madoff to Sentry.  The transfers are on their

21  face not avoidable.

22          But in *Cohmad* --

23          THE COURT:  So what it sounded like you were saying,

24  but maybe I misunderstood, is that the availability of a

25  subsequent transferee to avoid as a defense to the trustee's

MADDSECH

1  ability to avoid an initial transfer should turn on the

2  knowledge of the subsequent transferee even though the

3  subsequent transferee has an independent good faith defense.

4  Am I understanding what you're saying?

5          MR. LACK:  Not exactly, your Honor.

6          There are two aspects of this.  There's two defenses.

7  First, there's a defense to the initial transfer under 546(d).

8  Then there's a defense to the subsequent transfer under 550(b).

9  There's also a good faith for value defense.

10          Incidentally, in the initial transfer you also have

11  good faith for value under 548(b) -- 548(c).  I'm sorry.  But

12  the point here is, as your Honor recognized in *Cohma*d, and as

13  other courts have said, that the subsequent transferee can

14  raise the 546(e) defense to the initial transfer even if that

15  defense was not raised by the initial transferee, as was the

16  case here with Fairfield Sentry settled the claim against them.

17  So even though the subsequent transferees also have a good

18  faith defense, they also have the right, as a matter of due

19  process, to raise the 546(e) defense as to the initial

20  transfer, even if it wasn't raised by the initial transferee,

21  as it wasn't by Fairfield Sentry here.  So we --

22          THE COURT:  You know, it's been a while since I

23  decided *Cohmad*.  I was practically just a judge in diapers at

24  that time.  But my recollection is that what I held there was

25  that subsequent transferees who knew about the fraud could not

1   raise this defense to avoidance of the initial transfer.  I

2   don't know that I addressed, other than what you're saying by

3   way of inference, the issue that you're now presenting.

4              MR. LACK:  That's correct.  That's correct, your

5   Honor.

6              You addressed the question of the initial transferee

7   having actual knowledge of Madoff's fraud, meaning knowing --

8   actually knowing that Madoff was not trading securities.  You

9   held an initial transferee who actually knew Madoff's fraud

10  could not assert the 546(e) Safe Harbor, and you also held that

11  a subsequent transferee that actually knew of Madoff's fraud

12  could not assert the 546(e) Safe Harbor.  But you did not

13  specifically deal with the situation of the innocent subsequent

14  transferee, and it is our position that the rationale, the

15  reasoning of your decision in *Cohmad* makes it clear that had

16  you reached that point, you would have decided that an initial

17  -- an innocent subsequent transferee can indeed assert the

18  546(e) defense, because the innocent transferee is within the

19  class of persons that Congress sought to protect by the section

20  546(e) Safe Harbor.

21             And it was only because those initial and subsequent

22  transferees who had actual knowledge were not within the class

23  of people Congress sought to protect, because they knew that

24  there was not, in fact, a securities contract involved, that

25  your Honor felt -- held in *Cohmad* that they could not assert

MADDSECH

1   the 546(e) defense that would otherwise be available, because

2   here it's conceded that absent the argument about an actual

3   knowledge of the initial transferee, 546(e) would apply,

4   because there's no doubt that there was here a transfer by a

5   stockbroker to a financial institution in connection with a

6   securities contract.

7        In fact, here there were two securities contracts

8   involved:  A contract between Madoff and Sentry and a contract

9   between Sentry and the various defendants.  And so the only

10   question is is there something that would disable the

11   particular defendants here, the subsequent transferees, from

12   using the 546(e) defense.

13        And in *Cohmad* your Honor identified --

14        THE COURT:  Why do we need this protection for your

15   clients if they have the good faith defense?

16        MR. LACK:  Well, because the good faith defense is a

17   much weaker defense than the 546(e) defense.  The 546(e)

18   defense is a structural defense that arises in a situation

19   where there is a transfer by a stockbroker in connection with a

20   securities contract.  It applies with only one exception, your

21   Honor, to *Cohmad*, which is actual knowledge of Madoff's fraud.

22   The 546 -- the good faith defense under 550(b) can be defeated

23   by much less than a showing of actual knowledge.  That's not

24   the standard.  The actual knowledge standard is a much more

25   difficult standard to -- for the trustee.

MADDSECH

1          In fact, the trustee does not plead to any of the

2     defendants, subsequent transferee defendants before you had

3     actual knowledge of Madoff's fraud.  So it's a much better --

4          THE COURT:  There is something a little odd, that the

5     availability of a defense of avoidance of the initial -- of the

6     initial transfer should somehow turn on the subsequent

7     knowledge or innocence of a subsequent transferee years later.

8          MR. LACK:  The way -- I think the best way to look at

9     this, your Honor, is that the avoidability of the initial

10    transfer depends on the structure, the participants, whether

11    there's a qualifying participant and a qualifying transaction.

12    That is what triggers the 546(e) defense.  If you have a

13    qualifying participant, such as a stockbroker or a financial

14    institution and a qualifying transaction, such as a settlement

15    payment or a transfer connection with securities contract,

16    section 546(e) applies, except, as you said in *Cohmad*, if the

17    defendant who is the subject of suit, the particular

18    transferee, had actual knowledge of Madoff's fraud, in which

19    case you ruled they could not assert the defense, because

20    Congress was not seeking to protect them if they knew there

21    wasn't actually a securities contract involved.

22          So it isn't a question of the -- the 546(e) defense,

23    remember, the only -- the only exception to 546(e) is if it

24    applies structurally, is for a claim for intentional fraudulent

25    transfer under 548(a)(1)(A).  There is no exception to 546(e)

MADDSECH

1    that is based on the state of mind of the transferee.  The only

2    thing that triggers an exception is the intent of the

3    transferor in making the initial fraudulent transfer.  But the

4    transferee's mental state is irrelevant to 546(e), as written

5    by Congress.

6         The only -- the gloss you put on 546(e) in *Cohmad* was,

7    well, if in fact the defendant who's being sued actually knew

8    that Madoff wasn't trading securities, then it makes no sense

9    to give them a protection which was designed to protect the

10   legitimate expectations of investors, that they were engaging

11   in bona fide securities transactions.  And certainly the

12   defendants here had every reason to believe that the -- that

13   the contracts between Madoff and Sentry were bona fide, that

14   the contracts between Sentry and themselves were bona fide.

15   They had no knowledge, and there's no allegation that they had

16   any knowledge that Madoff wasn't trading securities.

17        So there's no reason to provide an exception for a

18   Safe Harbor that would otherwise apply here, and that's why --

19   that was the reason it -- that this Court focused in *Cohmad* on

20   the knowledge of the particular defendant.  It was that the

21   Safe Harbor existed as to the initial transfer.  But the

22   question was, was the particular defendant disabled from

23   asserting, as your Honor put it in *Cohmad*, if the trustee

24   sufficiently alleges that the transferee from whom he seeks to

25   recover a fraudulent transfer knew of Madoff's security fraud,

1   that transferee cannot claim the protections of section 546(e)

2   Safe Harbor.

3          And so your Honor should make clear and grant leave to

4   appeal to make clear that, under *Cohmad*, a subsequent

5   transferee that has -- does not have actual knowledge is not

6   disabled from asserting a section 546(e) defense that would

7   otherwise exist as to the initial transfer.

8          THE COURT:  All right.  Thank you very much.

9          There was one other person, yes, who wanted to speak

10  --

11         MR. GOTTRIDGE:  Yes, your Honor.

12         THE COURT:  -- before we get to the defense.

13         MR. GOTTRIDGE:  Good afternoon again, your Honor.

14         So there's really, as we say it, two holdings of

15  *Cohmad* that we ask the bankruptcy court to apply, and Mr. Lack

16  really addressed what we think is the first fundamental error

17  of the bankruptcy court in that regard, which is that it really

18  goes to this question of the *Cohmad* -- sort of the first *Cohmad*

19  holding, which is based on actual knowledge.

20         As Mr. Lack said, it creates -- it's not an exception

21  to the Safe Harbor, which I think everybody agrees these

22  transactions are Safe Harbor.  They meet all of the 546(e)

23  prerequisites.  The question is whether a particular defendant

24  that's being sued had actual knowledge that Bernie Madoff

25  wasn't trading securities, because such a defendant, as your

1    Honor ruled, doesn't have a reasonable expectation that an

2    innocent one would have.

3         And the judge below, in our view, made a serious

4    mistake, because what she did essentially was to say:  I'm not

5    even looking at what the subsequent transferee knew; if the

6    initial transferee, Fairfield Sentry, is alleged to have

7    knowledge, that's the end of the ball game for you; I don't

8    even consider the actual knowledge of the subsequent

9    transferee.  Which, in our view, is entirely inconsistent with

10   your Honor's ruling in *Cohmad*.

11        But there was also a second problem with what the

12   bankruptcy court did, and that's what I'd like to focus on now.

13   It really relates to the second *Cohmad* holding, if you will.

14   We're calling it a separate securities contract holding.  It

15   starts at page eight of the Westlaw pagination of your Honor's

16   *Cohmad* decision and kind of goes to the end.  And what the

17   Court said there was separate and apart from the customer

18   agreements that BLMIS, the Madoff securities entity, had with

19   Fairfield Sentry or another feeder fund, the requirement under

20   546(e) that there be a securities contract that has a

21   relationship with the transaction that can be fulfilled for the

22   very same transactions by multiple contracts.

23        And the Court actually said that, in the scenario that

24   we have here, where a subsequent transferee defendant caused

25   Fairfield Sentry to make the withdrawal that constitutes the

1    initial transfer, because it made a request to Fairfield Sentry

2    that Fairfield Sentry -- for the redemption of its shares in

3    Fairfield Sentry, in that scenario, 546(e) applies

4    independently of whatever customer agreement existed between

5    Madoff Securities on the one hand and Fairfield Sentry on the

6    other, because you've also got -- and the Court found at page 8

7    that these were securities contracts under the meaning of

8    546(e).

9           You've got subscription agreements and you've got

10   redemption requests and the agreements that relate to the

11   redemption request.  In this case, the trustee pleaded exactly

12   what is required to fit.  It just fits like a T to what your

13   Honor held when your Honor explained at page 9 in the case,

14   quote, in which the trustee alleges that a withdrawal of funds

15   by an investment fund from its Madoff Securities customer

16   account occurred because an investor in the fund sought

17   redemption of its investment under the terms of its investment

18   contract.  The situation appears to fit within the plain terms

19   of section 546(e), and that's exactly what the trustee has

20   pleaded.

21          They pleaded here that the defendants entered into

22   subscription agreements with Fairfield Sentry.  They've pleaded

23   that they subscribed for and got Fairfield Sentry shares, and

24   they ultimately directed redemption requests to Fairfield

25   Sentry.  They even go on to plead that Fairfield Sentry honored

MADDSECH

1    the redemption requests and withdrew funds from BLMIS accounts

2    precisely "in order to pay" redemption as requested by the

3    defendants.

4         And they even say that, as a result of the honoring of

5    these redemption requests by Fairfield Sentry, "portions of the

6    Fairfield Sentry initial transfers were subsequently

7    transferred either directly or indirectly to or for the benefit

8    of" each of the defendants to the subsequent transferee

9    defendants.

10        So the Court's holding, the second holding, the

11   separate securities contract holding, is entirely satisfied

12   that the scenario that your Honor laid out matches exactly the

13   fact pattern alleged by the trustee.  And the trustee says,

14   well, there may be factual issues.  There are no factual

15   issues.  Everything that makes out the defense and makes out

16   this separate pathway to 546(e) protection is from the

17   trustee's own allegations.  You don't need to go any further.

18        Now, at the end, in the concluding paragraph of the

19   opinion, in *Cohmad*, at page 10, this Court said that it was the

20   bankruptcy court's obligation to adjudicate this issue.

21   Specifically, what the Court ruled was, "to the extent a

22   defendant claims protection under section 546(e) under a

23   separate securities contract as a financial institution or

24   financial participant, the bankruptcy court must adjudicate

25   those claims in the first instance consistent with this

1    opinion." That's at page 10.

2           And the Court said "must." It didn't say "may." And

3    the Barclays defendant and the other defendants that raised

4    this second pathway laid out in their papers -- I argued this

5    in front of Judge Morris, and we submitted the transcript as

6    part of our motion papers on this motion. It was all laid out

7    for the bankruptcy court. And what did the bankruptcy court

8    do? It did not adjudicate these claims at all. It failed

9    entirely to address this separate pathway.

10           And there's an important point to be made here, which

11    is this actual knowledge issue that the trustee raised and the

12    bankruptcy court agreed with as to Fairfield Sentry's actual

13    knowledge that, you know, there was no trading of Madoff

14    securities. Whatever relevance that may have in the context of

15    a securities contract between Madoff Securities and Fairfield

16    Sentry, it's got nothing to do with this second pathway,

17    because the contracts, the securities contracts on which we are

18    relying on for this second pathway are contracts between

19    Fairfield Sentry and the subsequent transferees. Madoff is not

20    a party to them.

21           And this is an important point as well, your Honor.

22    Was Madoff a Ponzi scheme? Yes, we all know that now. Nobody

23    has alleged that Fairfield Sentry was a Ponzi scheme. No one

24    has alleged that the Fairfield Sentry shares that our clients

25    bought and sold -- because, remember, we weren't dealing with

MADDSECH

1   Madoff. We weren't dealing with Madoff Securities. We were

2   dealing with Fairfield. Nobody has alleged that those were not

3   actual shares. Nobody has alleged that the securities

4   contracts between Fairfield Sentry and the defendants here, the

5   subsequent transferee defendants were not valid securities

6   contracts.

7          So it was really incumbent upon the bankruptcy court

8   to address this issue, and it completely failed to address it.

9   And that's particularly egregious, your Honor, because the

10  bankruptcy judge ruled as she did on the first issue, the issue

11  that Mr. Lack addressed -- she basically read us out of court

12  on the basis that Fairfield Sentry had actual knowledge, that

13  was all to do with the securities contracts between BLMIS,

14  Madoff Securities and Fairfield, but she didn't even consider

15  this other issue, which was fully briefed and fully argued and

16  which your Honor said she must adjudicate.

17         Now, the trustee has an answer to it. Bankruptcy

18  court, by the way, had no answer. The Court didn't say, I'm

19  not reaching this issue because... We just don't know. But

20  the trustee is now offering some after the fact rationalization

21  which really don't wash.

22         So what the -- and this really goes to the point of

23  whether there's substantial grounds for difference of opinion,

24  right, because in the *Enron* case that we cite at page 14 of our

25  brief, a Southern District case from 2006, a substantial ground

1    for difference of opinion exists where there is, quote, genuine

2    doubt as to whether the bankruptcy court applied the correct

3    legal standard.  Okay?

4         Here -- that's the minimum.  There's got to be

5    genuine.  Here we've got way more than genuine doubt.  We know

6    for a fact that the bankruptcy court refused or declined or

7    ignored or whatever -- it did not apply the correct standard.

8    This Court gave the bankruptcy court the standard, and the

9    bankruptcy court just ignored it.  That was -- now, as for

10   these rationalizations, the main argument they make, the

11   trustee makes, is, oh, well, that was a conditional ruling in

12   *Cohmad*.  It was a second ruling -- it was only there because,

13   at the time *Cohmad* was decided in 2013, your Honor had ruled

14   but the Second Circuit had not yet accepted that the securities

15   -- that the BLMIS account agreements could function as

16   securities contracts under 546(e).

17        And then in *Fishman*, which was decided the next year

18   by the Second Circuit, the circuit said that your Honor was

19   correct on that, and their view, at that point, the entire

20   second holding of *Cohmad* falls away.  It just magically

21   disappears, because it became -- "academic" is the word that

22   they use.  And the reason they say that is just because, you

23   know, they see no more use for that, but there very well may be

24   a use for it.

25        For example, if your Honor were to rule that the

MADDSECH

1    bankruptcy court got it right on the point Mr. Lack raised,

2    then clearly the point that I'm now addressing would be a valid

3    and viable argument.  Similarly, if your Honor were to agree

4    with us on the first point but the Second Circuit were to

5    disagree that's a viable issue, so we were really entitled to a

6    ruling by the bankruptcy court -- the bankruptcy court

7    apparently thought they didn't have to answer this question.

8    And what we're looking for now is what we thought we had in

9    2013, which is a clear instruction that these facts, as

10   pleaded, satisfy this alternative pathway.  And that is a valid

11   way to get to 546(e), and it's a way that does not implicate

12   the actual knowledge of Fairfield Sentry at all.

13        Again, our clients were actually dealing in real

14   securities.  They had reasonable expectations.  They were

15   legitimate security investors in a legitimate security.  So

16   whatever the issue was, Fairfield Sentry, and what it knew

17   about Madoff, has nothing to do with whether we should be

18   disentitled to 546(e) protection at a minimum under the second

19   pathway.

20        THE COURT:  Thank you very much.  That's very helpful.

21        I'll hear now from the trustee.

22        MR. FEIL:  Good evening, your Honor.  Matthew Feil for

23   the trustee.

24        I'll focus on the first question that Mr. Lack

25   discussed, and my colleague, Mr. Calvani I think will address

1    the comments Mr. Gottridge just made.

2           With respect to the question one referring to

3    Mr. Lack's comments, the defendants claim the court misapplied

4    *Cohmad* by stripping them of their right to protections involved

5    in 546(e).  They argue that they have an independent right to

6    assert that defense to avoidance even where that defense is not

7    available to the initial transferee who received the transfer

8    to be avoided; but defendants fail to identify the basis for

9    this purported independent right.

10          They acknowledge that the two rulings in *Cohmad*, the

11   two bottom line orders that your Honor put forth at the

12   beginning, do not explicitly convey that right.  The first part

13   of the bottom line ruling precludes an initial transfer from

14   asserting 546(e).  All parties agree on that.

15          The second part of the bottom line order applies where

16   there is an innocent initial transferee, one without actual

17   knowledge.  That provision doesn't apply here because all of

18   these defendants received transfers from Fairfield Sentry, and

19   the trustee's plausibly allege Fairfield Sentry's actual

20   knowledge.  Instead, defendants argue that this right is

21   implicit in *Cohmad* for three reasons, and they ask this Court

22   to now make that explicit.

23          First, they argue that *Cohmad's* one caveat, the part

24   that bars a subsequent transferee with actual knowledge from

25   asserting the innocent initial transferee's defense to 546(e)

1    provides them with their own defense to 546(e).

2          Second, they argue, as innocent subsequent

3    transferees, they are who Congress intended for 546(e) to

4    protect.

5          And, finally, they argue it would be unfair and

6    inequitable to deny an innocent subsequent transferee

7    protection of 546(e) simply because the initial transferee

8    actual knowledge.

9          I'd like to address each of those in turn quickly if I

10   may.  First, the defendants argue that because *Cohmad* bars the

11   subsequent transferee with actual knowledge from raising 546(e)

12   the inverse must also be true, that a subsequent transferee

13   without knowledge may raise 546(e) as a defense to avoidance,

14   even whereas here the initial transferee cannot raise the

15   defense because it had actual knowledge.

16         Your Honor's decision in *Cohmad* recognized that

17   subsequent transferees have a due process right to challenge

18   avoidance by asserting defenses available to the initial

19   transferee, but this Court held there was one caveat to that

20   rule in the context of 546(e), and this one caveat is the

21   premise underlying that second part, the second bottom line

22   ruling, which is that it prevents an innocent subsequent trans

23   -- it prevents a subsequent transferee with actual knowledge

24   from raising the defense that belongs to an innocent initial

25   transferee.

1          As *Cohmad* explains, the one caveat applies when there

2    is an innocent initial transferee, one without actual

3    knowledge.  Under the normal rule that is when a subsequent

4    transferee has a due process right to raise defenses to

5    avoidance.  And the answer to -- the reason is because there is

6    a defense to avoidance that the initial transferee has.  The

7    one caveat operates to restrict the subsequent transferee with

8    actual knowledge from raising that otherwise valid defense to

9    avoidance, and this is the only situation where your Honor, in

10   the *Cohmad* decision, you discussed a subsequent transferee's

11   actual knowledge of the fraud.  Where that subsequent

12   transferee is attempting to assert the valid defense of an

13   innocent initial transferee, but if there's no innocent initial

14   transferee, there's no valid 546(e) to assert by either the

15   initial or the subsequent.  And that's the situation here, your

16   Honor.

17          There's no innocent initial transferee, and, thus, the

18   546(e) defense -- there's no 546(e) defense to be asserted to

19   the avoidance of the initial transfer.  The one caveat -- yes,

20   your Honor?

21          THE COURT:  Well, this is not addressed to anything

22   you're talking about, but I guess I am a little surprised that,

23   fine, you're right that it's not to your advantage to get this

24   matter resolved sooner rather than later given this Court's

25   well-known tendency to move very rapidly.  So I guess it's --

MADDSECH

1    I'm just wondering, as a practical matter, why, even if you're

2    totally right, you don't want this matter promptly resolved.

3         MR. FEIL:  We would like this matter promptly

4    resolved, your Honor, but I think you've actually resolved it

5    already once in a decision you issued almost contemporaneous

6    with *Cohmad*.  And that's a decision in this liquidation that

7    you issued about 550(a), and I think the principles you laid

8    out in that decision answered the question here.  And I think

9    your Honor can do that by simply denying their motion and

10   saying you've answered that previously.

11        And if you like, I can walk you through that decision.

12   I'm sure you remember it, but it really stands for the

13   proposition that a subsequent transferee does have a due

14   process right to assert defenses to avoidance but can only

15   assert defenses that belong to the initial transferee.

16        And then to speak to what your Honor mentioned earlier

17   when Mr. Lack was talking, is there is a defense for subsequent

18   transferees.  Congress has not left them in the cold.  It's

19   provided them what I would argue is a superior defense to

20   546(e), and it's more appropriate.  So it's superior because it

21   applies to all claims.  It doesn't matter what the basis for

22   avoidance was.  The defense I'm talking about of course is

23   550(b).  If they can demonstrate that they're an innocent

24   transferee, they get to keep all of their transfer.  It doesn't

25   matter if it's within the two-year period, outside the two-year

MADDSECH

1   period, whatever the basis for avoidance is.  And I would

2   submit that that's the more appropriate defense for them.

3          546(e) talks about protecting transfers.  550(b) talks

4   and focuses on a defendant's good faith and lack of knowledge,

5   and that's essentially what they're arguing is they're saying

6   we were innocent, we didn't have that knowledge.  The

7   appropriate place for them to make that argument is under

8   550(b).

9          THE COURT:  All right.

10          MR. FEIL:  You know, they haven't really gotten into

11   it today, but they also made a fairness argument.  I think it's

12   sort of the subsumed in what I just said, because the argument

13   is getting late, I'll defer to my colleague who's going to

14   address the comments Mr. Gottridge made about the second part

15   of the argument.

16          THE COURT:  That sounds fine.

17          MR. CALVANI:  Good afternoon, your Honor.  Torello

18   Calvani from Baker Hostetler.

19          I want to focus my remarks on the second question

20   presented.  On this question, defendants argue that their

21   knowledge to determine the application of Safe Harbor and

22   consequently the avoidability of the initial transfer -- shall

23   I speak up?

24          So on the second question, defendants argue that their

25   knowledge should control the Safe Harbor and the voidability

1    from the BLMIS to Fairfield Sentry because they too are

2    qualifying participants with qualifying transactions under

3    section 546(e).

4           I would like to begin with why there's no substantial

5    ground for difference of opinion.  The bankruptcy court was

6    correct in rejecting this argument.  First, the argument is

7    defendant's reading of *Cohmad* conflicts with the overall

8    structure of the Bankruptcy Code's avoidance and recovery

9    provisions.

10          I want to start very briefly with a couple of basic

11   principles.  One, the transfer the trustee must prove is

12   avoidable is the transfer of property from debtor, and for

13   purposes of the Safe Harbor, quote, the only relevant transfer

14   is the transfer the trustee must seek to avoid.  Here that

15   transfer is the transfer from BLMIS to Sentry, and defendants

16   do not argue otherwise.

17          Nevertheless, defendants argue that their knowledge

18   should govern the Safe Harbor and avoidance, but defendants

19   cited no case in which a court has held a subsequent

20   transferee's knowledge should determine the avoidability of an

21   initial transfer.  This is because it is well-established that

22   the concepts of avoidance and recovery are separate and

23   distinct.

24          Now defendants say they are not conflating avoidance

25   and recovery.  The defendants say in their papers we've put

1   forth a strawman argument, but, your Honor, I submit they are

2   conflating avoidance and recovery because they are using a

3   subsequent transferee's knowledge to determine avoidance.

4        Now, we made these arguments in our opposition, and in

5   defendant's reply they did something, what I think is

6   surprising.  Now, in the reply, defendants claim that their

7   proposed appeal over the application of the Safe Harbor is

8   actually not about the avoidance of the initial transfer.  They

9   claim the proposed appeal, quote, poses no avoidability issue,

10  and they claim that *Cohmad* is special in that it does not focus

11  on the avoidability of the initial transfer.

12       Your Honor, I submit that this is an admission that if

13  the Court applies the traditional framework of avoidance and

14  recovery as set out in your Honor's 550(a) decision, then the

15  bankruptcy court was correct in denying their motions to

16  dismiss and this Court would be correct in denying their motion

17  for interlocutory appeal.

18       Now, defendant's argument that *Cohmad* is special

19  because it does not focus on avoidance of initial transfer is

20  also flatly wrong.  *Cohmad* concerns the application of the Safe

21  Harbor, and the Safe Harbor concerns and focuses on the

22  avoidance of the initial transfer.

23       Now, the argument that *Cohmad* is somehow different,

24  special apart from the Bankruptcy Code is similar to an

25  argument that the defendants made below where they said your

MADDSECH

1    Honor was wrong in deciding *Cohmad*.  They argue no actual

2    knowledge defense to the Safe Harbor, because it's not in the

3    text of the statute.  I want to reiterate, however, that *Cohmad*

4    focuses on the avoidance of the transfer, and there is a

5    statutory basis for this which is tied to the language and

6    purpose of statute.  If a customer like Sentry knew that

7    Madoff's customer agreements were a fiction, then we're no

8    longer talking about a securities transaction and the factual

9    predicates underlying the Safe Harbor to avoidance do not

10   exist.

11           Now, your Honor, defendants claim that *Cohmad* provides

12   a personal defense and that's why it's different, but

13   avoidability -- avoidability of a transfer is an attribute --

14   excuse me, avoidability is an attribute of the transfer, not

15   the parties.  Now, avoidability does not change based on

16   whether there are subsequent transfers or who those subsequent

17   transfers might be.

18           Defendants concede in their papers that avoidability

19   is an attribute of the transfer, not the party, under the

20   Bankruptcy Code, but then they argue that the opposite is true

21   here.  Your Honor, this is also wrong.  Avoidability, because

22   it's an attribute of a transfer, once the transfer is avoided

23   it does not become unavoided.  The transfer might not be

24   recoverable for a number of reasons, such as a defendant's good

25   faith, but it does not change that it is avoidable.

MADDSECH

1          Now, here Fairfield Sentry's knowledge rebuts the Safe

2    Harbor and makes the transfer avoidable.  Defendants chose to

3    invest in Fairfield.  It wasn't by happenstance.  And for

4    purposes of this motion, defendants do not challenge that

5    Sentry had actual knowledge of Madoff's fraud.  We are all in

6    agreement here today that Sentry does not have reason to

7    believe that Madoff was engaged in any securities transactions.

8          This has consequences.  Fairfield Sentry's actual

9    knowledge is an infirmity that travels with the transfer.

10   Therefore, to accept the defendant's argument that this Court

11   must disregard Fairfield Sentry's actual knowledge -- well,

12   there's no basis for it under *Cohmad* or the bankruptcy court --

13   or the Bankruptcy Code.  Excuse me.

14         Now, I would like to discuss for a moment Ida Fishman,

15   because Mr. Gottridge brought it up.  When we were before your

16   Honor ten years ago, in *Katz* and *Grife* we were arguing that the

17   Safe Harbor should not apply to any of the trustee's claims

18   because Madoff was operating a Ponzi scheme.  In *Katz* and

19   *Grife*, your Honor squarely rejected this argument.  And in *Ida*

20   *Fishman* you were unanimously affirmed.

21         It is the law of the land that section 546(e) applies

22   to all of the trustee's cases, because Madoff's agreements with

23   his customers qualify as securities contracts and his transfers

24   qualify as settlement payments.  But while *Grife* was on appeal,

25   your Honor decided *Cohmad*, which included the section that

MADDSECH

1  Mr. Gottridge read from at the end of the opinion about

2  financial institutions and third-party contracts.

3      Your Honor posed a hypothetical where a payment by a

4  BLMIS customer to a subsequent transferee could in some

5  circumstances be a qualifying transaction given the language

6  under section 546(e).  Your Honor, we acknowledge that the

7  definition of a settlement payment or a securities contract

8  under the statute is broad.

9      We acknowledge there can be more than one securities

10  contract.  We acknowledge that there is more than one way to

11  activate the Safe Harbor.  But, your Honor, this does not mean

12  that the trustee has to plead the actual knowledge of every

13  party who may have a third-party securities contract or who

14  subsequently received a settlement payment down the line.

15      Now, the defendants argue today that under this

16  Court's hypothetical, Sentry's knowledge is irrelevant, and the

17  actual knowledge rule should apply to the defendants because of

18  their own securities contracts.  But the focus should remain on

19  the initial transfer.  The subsequent transferees only have an

20  indirect right to challenge the avoidance.  That's the take

21  away from Judge Bernstein's decision in BMP where defendants

22  argue that they were securities customers, Judge Bernstein

23  rejected their argument that the Safe Harbor argument would

24  apply to entire chain of securities customers.

25      We heard today Judge Morris was the first person to

MADDSECH

1    address *Cohmad*.  That is incorrect.  We cite in our papers the

2    2018 opinion by Judge Bernstein where he interpreted *Cohmad*,

3    and we submit was correct.

4         So, as I said before, the trustee plausibly alleged

5    that Sentry's actual knowledge rebuts the Safe Harbor and that

6    knowledge cannot be rebutted.  The plain meaning of section

7    546(e) dictates that the relevant transfer is the transfer the

8    trustee must seek to avoid.

9         Here the end transfer was the transfer from BLMIS to

10   entry.  That transaction was complete when BLMIS deposited

11   customer property in Sentry's account.  Therefore, the focus

12   should remain on the initial transfer, and to do otherwise

13   would disregard Sentry's actual knowledge.  It would conflate

14   avoidance and recovery and, frankly, it would be unworkable.

15        I would add further that the language in *Cohmad* about

16   third-party contracts does not actually say what defendants

17   needed to say.  That even if section 546(e) applies, because of

18   third-party contracts, then those third parties' actual

19   knowledge of Madoff's fraud should determine the avoidance of

20   the initial transfer.

21        This section of *Cohmad* does not mention the actual

22   knowledge standard, and it certainly does not hold -- it's not

23   a holding and it does not hold that the existence of a

24   subsequent transferee's security contract renders the actual

25   knowledge of the initial transfer moot.

1          So that's what I would submit on the second question

2     presented.  It's late in the day, but I would like to address,

3     if I may, a couple of the 1292 factors.

4          THE COURT:  Okay.  Briefly, though.

5          MR. CALVANI:  Briefly.

6          THE COURT:  Because I have parties here and still

7     another matter I have to turn to.

8          MR. CALVANI:  Thank you, your Honor.

9          I just want to say the defendants cited *In re Flor*, of

10    course from the Second Circuit.  In that opinion, the Court

11    said the mere presence of a disputed issue that is a question

12    of first impression standing alone is insufficient to

13    demonstrate a substantial ground for difference of opinion.  If

14    silence from the circuit is sufficient, interlocutory appeals

15    would be the norm not the exception.

16         Second, the second question does not present a pure

17    question of law.  This Court would have to study the record and

18    identify the various third-party contracts.  The defendants

19    have referenced subscription agreements, redemption requests.

20    Other defendants have addressed Sentry's articles of

21    association.  The Court would have to determine whether these

22    transfers made by BLMIS to Sentry were in connection with these

23    contracts.

24         We have over a thousand transfers from Sentry to its

25    subsequent transferees, so this will be no easy task.  Instead,

1   to the extent it's relevant, it should be done on a complete

2   record of a bankruptcy court having performed a tracing

3   analysis.

4          And I would add that -- I guess I'll make this my last

5   point.  Thank you -- that defendants argue below that there is

6   no actual knowledge exception, so they don't make that argument

7   here today.  So we're going to have to wait for yet another

8   546(e) appeal, and this is another reason to deny their motion

9   and wait for a final order, so they can put all their section

10  546(e) arguments together in one appeal.  Otherwise, we're not

11  just going to have piecemeal litigation, we're going to have

12  piecemeal appeals on section 546(e).

13         Thank you.

14         THE COURT:  Thank you very much.

15         I am sure the appellants want to give a brief

16  rebuttal, and I will allow that.  But I will ask that it be

17  brief, only because I have another matter.

18         MR. LEVIN:  And I will comply with that request, your

19  Honor.

20         THE COURT:  All right.

21         MR. LEVIN:  Let me just address *Flor*.  In the Banque

22  Syz' reply brief, we address why we think the trustee miscited

23  that case.  I won't go into it here because of the time.

24         Your Honor asked the question and Mr. Feil addressed

25  the question:  If there's a good faith defense, why do you need

MADDSECH

1    the other defense.  I think the answer to that is pretty

2    simple.  If Congress gives defendants two defenses, the Court's

3    not really in a position to say, well, we don't really need the

4    one, because Congress gave them the other.  And our position is

5    here Congress gave the defendants here not only the good faith

6    defense, but the 546(e) defense.

7           And let me go to that, setting it up this way.  We

8    agree with the trustee that the 550(a) decision from this Court

9    said that the subsequent transferees could assert any defense

10   that an initial transferee could assert.  So an initial

11   transferee can ordinarily assert a 546(e) defense.  Two year

12   reach back, that's it, not six years.  And the 546(e) rule in

13   the statute is absolute.  There are no exceptions.

14          Your Honor made sense of that by saying, yeah, Mr. --

15   I think it was Feil -- Mr. Calvani said if the defendant

16   actually knew there was no securities contract, 546(e) should

17   not be available to that defendant who knew.  But look at

18   *Fishman* and *Katz* and *Grife*.

19          In those cases, the defendants believe that there were

20   securities contracts, even though there was in fact no

21   securities being traded and no securities contracts.  So the

22   Second Circuit and this Court both said they get the protection

23   of the 546(e) defense.  The guilty innocent -- I'm sorry, the

24   guilty initial transferee doesn't.

25          So now take the subsequent transferee who's innocent,

1   and the initial transferee who's not knowledgeable, let's just

2   say, for lack of a better term.  That subsequent transferee is

3   in the same position with respect to the whole chain of

4   transactions that the direct investors were in *Grife* and *Katz*

5   and *Fishman*, where they believed there were contracts,

6   securities contracts, even though Madoff was breeching them,

7   and the mere fact that the initial transferee didn't know they

8   were there doesn't disable the subsequent transferee from

9   getting the same protection that the defendants in these other

10  cases got.

11         As we put in our brief, the trustee should not be

12  allowed to saddle the innocent with the disabilities of the

13  guilty.  And we think your Honor's ruling about knowledge is

14  particular to the defense -- to the particular defendant and

15  not to the whole chain of transactions where you have people

16  who actually rely on those securities contracts, which is what

17  546(e) is designed to address.

18         THE COURT:  Thank you very much.

19         MR. LEVIN:  Thank you, your Honor.

20         THE COURT:  I can't take any further argument, but I

21  do want to thank counsel for both sides for this excellent

22  argument.  Of course I remember these cases like yesterday.

23         MR. LEVIN:  As do we, Your Honor.

24         THE COURT:  But I will delve into it in more depth and

25  get you an opinion, or at least a bottom line order, by the end

MADDSECH

1   of the month.  I thank you all again, and, if I may, I will ask

2   you, however, to clear out quickly, because we have another

3   matter.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25