UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | **JURY TRIAL DEMANDED** |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF, | Adv. Pro. No. 11-02730 (CGM) |
| Plaintiff | |
| v. | |
| ASB BANK CORP., | |
| Defendant. | |

**ASB BANK CORP.'S**
**ANSWER TO COMPLAINT AND JURY DEMAND**

Defendant ASB Bank Corp. ("ASB")[1] hereby answers (this "Answer") the Complaint of Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Plaintiff" or "Trustee"), as follows:

## GENERAL DENIAL

Except as otherwise expressly admitted herein, ASB denies each and every allegation in the Complaint. ASB states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, ASB does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Complaint. To the extent it is later determined that a response is required to any allegation ASB claims has been mooted by a prior dismissal of the Trustee's claims, ASB denies any such allegation. ASB expressly reserves the right to amend and/or supplement this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

I.  ## NATURE OF THE ACTION

1.  This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[2] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**RESPONSE:** Paragraph 1 sets forth legal conclusions to which no response is required.

To the extent a response is required, ASB denies the allegations in paragraph 1 of the Complaint,

---

[1] Following commencement of this adversary proceeding, ASB Bank Corp., became the successor by merger to original defendant, Atlantic Security Bank. The caption for this adversary was amended to reflect that change pursuant to that certain Stipulation and Order (ECF 103) entered on December 27, 2021.

[2] Footnote 1 of the Complaint alleges SIPA § 78*lll*(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted.

2

except admits that the Trustee purports to bring this adversary proceeding as part of its continuing

efforts to recover certain property.

2.      With this Complaint, the Trustee seeks to recover approximately $120,168,691 in
subsequent transfers of Customer Property made to Defendant ASB. The subsequent transfers were
derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"),
which was a Madoff feeder fund. Fairfield Sentry is in liquidation in the British Virgin Islands
("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment
advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry
maintained in excess of 95% of its assets in its BLMIS customer accounts.

**RESPONSE:**  Paragraph 2 of the Complaint sets forth legal conclusions to which no

response is required.   To the extent a response is required, ASB denies the allegations in

paragraph 2, except ASB admits that the Trustee purports to seek to recover certain  transfers

from Fairfield Sentry to ASB but denies the amount the Trustee is seeking to recover is

$120,168,691 as the Trustee dismissed one alleged transfer in the amount of $513,267 pursuant

to a Stipulation and Order in this proceeding (ECF 109) and the Trustee in that stipulation alleges

the total is $119,655,424.  ASB refers to that stipulation for the amount the Trustee alleges it is

seeking to recover and otherwise denies the allegations.

3.      When Defendant ASB received the subsequent transfers of BLMIS Customer
Property, Defendant ASB provided investment banking, financial advisory, trading, and
investment services to its clients. According to its website, Defendant ASB is comprised of a team
of highly qualified professionals with extensive experience in international financial markets.
Defendant ASB claims to establish a solid, reasonable basis for its investment suggestions, backed
by a fundamental, quantitative analysis to prevent any falsehood or omission. It further states that
part of its investment philosophy is that investment decisions should be based on accepted
theoretical principles and reliable historical data, not on opinions or rumors. *See* Exhibit A.

**RESPONSE:**  ASB denies the allegations in paragraph 3 of the Complaint, except admits

that ASB provided investment advisory, trading, and commercial banking services to its clients,

and that Exhibit A to the Complaint reflects information published on ASB's website in 2011.

## II.    <u>JURISDICTION AND VENUE</u>

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority
under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title

11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant ASB as a subsequent transferee of funds originating from BLMIS.

**RESPONSE:** Paragraph 4 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, ASB denies the allegations in paragraph 4, except ASB admits that the Trustee purports to bring this adversary proceeding to recover certain property.

5.    This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**RESPONSE:** Paragraph 5 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, ASB admits that the first and second sentences of paragraph 5 accurately describe the titles and docket numbers of the proceeding and otherwise denies the allegations in paragraph 5.

6.    Defendant ASB is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. Defendant ASB knowingly received transfers of Customer Property from BLMIS. The Trustee's investigation to date reveals that Defendant ASB obtained this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund. By directing its investment through FGG, Defendant ASB knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant ASB entered into a subscription agreement with Fairfield Sentry under which ASB submitted to New York jurisdiction, sent this subscription agreement to FGG's New York City office, and wired funds through a bank in New York. Defendant ASB also traveled to New York to meet with its FGG representatives in FGG's New York office. In addition, Defendant ASB visited BLMIS's office in New York City and met with Madoff, as well as its FGG representatives, to discuss Madoff's purported investment strategy. Defendant ASB also met with FGG representatives in Miami, Florida. Defendant ASB thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

4

**RESPONSE:** Paragraph 6 of the Complaint states legal conclusions to which no response

is required. To the extent a response is required, ASB denies the allegations in paragraph 6 of

the Complaint, including that it is subject to personal jurisdiction in this action, except ASB

admits that funds were transferred through a correspondent bank account in New York, that ASB

representatives met with FGG representatives in New York and Miami, and that ASB

representatives attended one meeting at BLMIS's office in New York that Madoff also attended.

7.    Defendant ASB should reasonably expect to be subject to New York jurisdiction
and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302
(McKinney 2001) and Bankruptcy Rule 7004.

**RESPONSE:** Paragraph 7 of the Complaint states legal conclusions to which no response

is required. To the extent a response is required, ASB denies the allegations in paragraph.

8.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O)

**RESPONSE:** Paragraph 8 of the Complaint states legal conclusions to which no response

is required. To the extent a response is required, ASB denies the allegations in paragraph 8. ASB

does not consent to the issuance of final orders or judgments by the Bankruptcy Court.

9.    Venue in this District is proper under 28 U.S.C. § 1409.

**RESPONSE:** Paragraph 9 of the Complaint states legal conclusions to which no response

is required.

## III.    <u>BACKGROUND</u>

10.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents
for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment
adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange
Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The
SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser
activities of BLMIS. The District Court Proceeding remains pending.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 10 of the Complaint, except ASB admits, on information and

belief, that Madoff was arrested on or about December 11, 2008 and that the SEC filed a civil

complaint against Madoff and BLMIS on or about December 11, 2008.

11.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court
entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 11 of the Complaint, and refers to the referenced order for

the true and complete contents thereof.

12.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a
combination of its own action with an application of the Securities Investor Protection Corporation
("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District
Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers
as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 12 of the Complaint, and refers to the referenced application

for the true and complete contents thereof.

13.    Also on December 15, 2008, Judge Stanton granted the SIPC application and
entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

    a.    removed the receiver and appointed the Trustee for the liquidation of the
business of BLMIS under SIPA § 78eee(b)(3);

    b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA §
78eee(b)(3); and

    c.    removed the case to the United States Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 13 of the Complaint, and refers to the referenced order for

the true and complete contents thereof.

14.    By orders dated December 23, 2008, and February 4, 2009, respectively, the
Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person.
Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**RESPONSE:** Paragraph 14 states legal conclusions to which no response is required. To the extent a response is required, ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint, and refers to the referenced orders for the true and complete contents thereof.

15.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint, except ASB admits, on information and belief, that Madoff pled guilty to crimes and was sentenced to prison. ASB further refers to the referenced transcript for the true and complete contents thereof.

16.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint, and refers to the referenced transcript for the true and complete contents thereof.

## IV.    TRUSTEE'S POWERS AND STANDING

17.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose

money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

      **RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Complaint and states that the allegations concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code set forth legal conclusions to which no response is required.  To the extent a response is required, ASB denies such allegations.

      18.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

      **RESPONSE:**  Paragraph 18 of the Complaint states legal conclusions to which no response is required.

      19.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

      **RESPONSE:**  Paragraph 19 of the Complaint states legal conclusions to which no response is required.

      20.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544 and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

      **RESPONSE:**  Paragraph 20 of the Complaint states legal conclusions to which no response is required.

## V.    **THE DEFENDANT**

      21.    Defendant ASB is a company incorporated in the Cayman Islands with a registered office at Ugland House, South Church Street, Cayman Islands, care of Maples & Calder Limited. It maintains a principal place of business at Calle 50 y Aquilino de la Guardia, Torre Plaza Banco General, Pisos 28 and 29, Panama City, Panama.

**RESPONSE:** ASB admits the allegations of paragraph 21 of the Complaint were correct with respect to Atlantic Security Bank. ASB, as successor to Atlantic Security Bank, is incorporated in the Republic of Panama, with its principal place of business in Panama City, Panama.

## VI.   THE PONZI SCHEME

22.   BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under § 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint and therefore denies such allegations.

23.   Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint and therefore denies such allegations.

24.   The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the Complaint and therefore denies such allegations.

25.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 25 of the Complaint, and respectfully refers the Court to the

plea hearing transcript for true and complete contents thereof.

26.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 26 of the Complaint and therefore denies such allegations.

27.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 27 and therefore denies such allegations.

28.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 28 of the Complaint and therefore denies such allegations.

29.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 29 of the Complaint and therefore denies such allegations.

30.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 30 of the Complaint and therefore denies such allegations.

31.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 31 of the Complaint and therefore denies such allegations.

32.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 32 of the Complaint and therefore denies such allegations.

## VII.    THE TRANSFERS

33.    Defendant ASB received subsequent transfers of Customer Property from Fairfield Sentry, which maintained customer accounts with BLMIS.

**RESPONSE:**  ASB admits that it received funds from Fairfield Sentry, but otherwise

denies the allegations of paragraph 33 of the Complaint.

### A.    Initial Transfers From BLMIS To Fairfield Sentry

34.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**RESPONSE:**  ASB (i) upon information and belief, admits that the Trustee filed an action

styled as *Picard* v. *Fairfield Sentry, Ltd., et al.*, Adv. Pro No. 09-01239 (BRL) (the "Sentry

Action"), (ii) lacks knowledge and information sufficient to form a belief as to the truth of the

allegation of the amounts of the alleged transfers alleged in paragraph 34 and therefore denies

such allegations, (iii) lacks knowledge sufficient to form a belief as to which of the three

complaints filed in the Sentry Action the Trustee purports to incorporate by reference in the

Complaint in this action and therefore denies such allegations, (iv) denies that the initial transfers

of Customer Property to Sentry the Trustee seeks to avoid and recover in the Sentry Action were

avoided or are avoidable, (v) to the extent necessary to support such denial, denies for lack of

knowledge sufficient to form a belief as to the truth of the allegations, each and every paragraph

of each of the three complaints filed in the Sentry Action that supports the claim that any initial

transfers of Customer Property to Sentry are or were avoided or avoidable, and (vi) objects to the

incorporation by reference of, and therefore does not answer, each and every other paragraph and

allegation in the three complaints in the Sentry Action and to the inclusion in this adversary

proceeding of any issue implicated by any of the three complaints in the Sentry Action other than

the issue of the avoidance or avoidability of the initial transfers of Customer Property, but

reserves the right to rely on and introduce any allegations in the referenced "Fairfield Amended

Complaint" or its exhibits as opposing party admissions admissible for the truth of their contents.

To the extent any further response is required, ASB lacks knowledge sufficient to form a belief

as to the truth of the remaining allegations in paragraph 34 of the Complaint and therefore denies

such allegations.

35.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

truth of the existence, alleged timing and amounts of the transfers alleged in paragraph 35 of the

Complaint and therefore denies such allegations. The remaining allegations of paragraph 35 set

forth legal conclusions to which no response is required. To the extent a response is required,

ASB denies such allegations in paragraph 35.

36.     The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the

existence, alleged timing and amounts of the transfers alleged in paragraph 36 of the Complaint

and therefore denies such allegations. The remaining allegations in paragraph 36 set forth legal

conclusions to which no response is required. To the extent a response is required, ASB denies

such allegations in paragraph 36.

37.     The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**RESPONSE:** ASB denies knowledge or information sufficient to form a belief as to the existence, alleged timing and amounts of the transfers alleged in paragraph 37 of the Complaint and therefore denies such allegations. The remaining allegations in paragraph 37 set forth legal conclusions to which no response is required. To the extent a response is required, ASB denies such allegations in paragraph 37.

38.    The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are included as Exhibits B and C.

**RESPONSE:** ASB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint and therefore denies such allegations, except ASB admits that Exhibits B and C are attached to the Complaint.

39.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

**RESPONSE:** ASB admits, on information and belief, that the Court entered orders and a judgment as described in paragraph 39 on or about the dates alleged therein, and respectfully refers the Court to the referenced orders and the referenced judgment for the true and complete contents thereof.

**B.    Subsequent Transfers From Fairfield Sentry To Defendant ASB**

40.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant ASB and is recoverable from Defendant ASB pursuant to section 550 of the Bankruptcy Code. Based on the Trustee's investigation to date, approximately $120,168,691 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ASB (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit D.

**RESPONSE:**  ASB denies the allegations in paragraph 40 of the Complaint, except admits that it received funds from Fairfield Sentry.

41.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**RESPONSE:**  ASB denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint and therefore denies such allegations.

## COUNT ONE

### RECOVERY OF SUBSEQUENT TRANSFERS – 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

42.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**RESPONSE:**  ASB incorporates and reasserts its responses to the allegations contained in each of the previous paragraphs of this Complaint as though set forth fully herein.

43.    Defendant ASB received the Fairfield Sentry Subsequent Transfers, totaling approximately $120,168,691, which are recoverable pursuant to section 550 of the Bankruptcy Code.

**RESPONSE:**  ASB denies the allegations in paragraph 43 of the Complaint.

44.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant ASB.

**RESPONSE:**  ASB denies the allegations in paragraph 44 of the Complaint.

45.    Defendant ASB is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**RESPONSE:**  Paragraph 45 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, ASB denies the allegations in paragraph 45.

46.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant ASB

recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**RESPONSE:** ASB denies the allegations of paragraph 46 of the Complaint.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief sets forth legal conclusions to which no response is required. To the extent a response is required, ASB denies that the Trustee is entitled to his requested relief or to any other relief.

## AFFIRMATIVE DEFENSES

ASB asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff. ASB reserves the right to amend this Answer to assert any additional defenses, as well as any counterclaims or claims against third parties based on discovery in this adversary proceeding or otherwise. These defenses are set forth cumulatively and in the alternative.

## FIRST DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

The alleged subsequent transfers to ASB, if any, may not be recovered because the alleged initial transfers if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e). Any such alleged initial transfers were (i) made by or to (or for the benefit of) a stockbroker (BLMIS), financial institutions (including Fairfield Sentry or ASB), financial participants (including ASB), or other covered entity or entities; (ii) settlement payments and/or transfers made in connection with a securities contract (including any between BLMIS and Fairfield Sentry, and/or between Fairfield Sentry and ASB); and (iii) made more than two years before the petition date and are thus not recoverable under 11 U.S.C. § 548(a)(1)(A). Because the alleged transfers are not avoidable, property received by ASB as part of the alleged Fairfield Six-

16

Year Transfers, if any, is not recoverable from ASB. In addition, at the time of the alleged

transfers from Fairfield Sentry to ASB, ASB took any funds received from Fairfield Sentry for

value and in good faith, and ASB had no actual knowledge that Madoff or BLMIS were not

trading securities or that they were perpetrating a Ponzi scheme.

**SECOND DEFENSE**

**No Customer Property (15 U.S.C. § 78fff-2(c)(3))**

Some or all of the property that ASB received from Fairfield Sentry was not Customer

Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and

therefore any such property is not recoverable by the Trustee from ASB.

**THIRD DEFENSE**

**Proceeds Not Recoverable**

In the alternative, to the extent that the property, if any, that ASB received from Fairfield

Sentry was proceeds of Customer Property that BLMIS transferred to Fairfield Sentry, it is not

recoverable by the Trustee from ASB under section 550(a)(2) of the Bankruptcy Code.

**FOURTH DEFENSE**

**For Value, in Good Faith, and Without Knowledge of Voidability**
**(11 U.S.C. § 550(b))**

ASB took any funds it received from Fairfield Sentry for value, in good faith, and without

knowledge of the voidability of any alleged initial transfers from BLMIS to Fairfield Sentry, and

thus the alleged transfers to ASB, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

ASB took for value because the alleged transfers it received from Fairfield Sentry, if any,

were made in exchange for ASB's surrender of its shares in Fairfield Sentry.

ASB did not have actual knowledge of any fraudulent purpose behind the alleged transfers

it received, if any. ASB did not know facts that would have prompted a reasonable person in

17

ASB's position to conduct further inquiry into whether there was any fraudulent purpose behind any alleged transfers. Even if ASB had been on inquiry notice of a possible fraudulent purpose behind any alleged transfers it received, a diligent inquiry by ASB would not have discovered such a fraudulent purpose. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than ASB, and with more access to BLMIS personnel and documentation than ASB, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. ASB did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud. Diligent inquiry by ASB would not have discovered the fraudulent purpose of any alleged transfers.

ASB did not have knowledge of the voidability of any alleged transfers from BLMIS to Fairfield Sentry when it received the alleged subsequent transfers, if any.

## FIFTH DEFENSE

### Lack of Subject Matter Jurisdiction
### (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## SIXTH DEFENSE

### Lack of Personal Jurisdiction
### (Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012(b))

This Court lacks personal jurisdiction over ASB, including for each of the reasons stated in ASB's Memorandum of Law in Support of its Motion to Dismiss the Complaint, filed on March 25, 2022 in this adversary proceeding, (ECF 105), and proceedings thereon, and ASB has **not** consented to a decision by this Court or this Court's authority to hear and determine the action.

18

## SEVENTH DEFENSE

### Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

The Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in ASB's Motion to Dismiss the Complaint, filed on March 25, 2022 in this adversary proceeding, (ECF 105), and proceedings thereon.

## EIGHTH DEFENSE

### Dismissed Claims

The Trustee's claims are barred to the extent they have been dismissed by the Trustee or the Court or are based on allegations that have been dismissed by the Trustee or the Court, including any claims relating to transfers to or from the Fairfield Sentry funds, as set forth in the Stipulation and Order in this adversary proceeding entered April 13, 2022, (ECF 109).

## NINTH DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

The Trustee may not recover the alleged transfers from Fairfield Sentry to ASB, if any, because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sentry.

## TENTH DEFENSE

### No Ponzi Scheme Presumption

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from ASB were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

## ELEVENTH DEFENSE

### ASB as Initial Transferee—Mere Conduit Defense

Fairfield Sentry was a mere conduit, and consequently, any claimed transfers were initial transfers from BLMIS to ASB. As the Trustee stated in *Picard* v. *Grosvenor Investment Management Ltd.*, No. 12-1021 (Bankr. S.D.N.Y. June 15, 2022), Fairfield Sentry's "sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed] between [Sentry] and BLMIS" (internal quotation marks and citation omitted). 12-1021 (ECF 115), at 3, 6. As a result, any redemptions received by ASB were initial transfers from BLMIS to ASB that are subject to the safe harbor under 11 U.S.C. § 546(e); any Trustee proceeding to avoid the alleged transfers is untimely; and ASB may retain the amount it received, if any, pursuant to 11 U.S.C. § 548(c) and 11 U.S.C. § 548(d)(2)(B) because it took any alleged transfers for value and in good faith.

## TWELFTH DEFENSE

### New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

## THIRTEENTH DEFENSE

### Section 278(1) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

## FOURTEENTH DEFENSE

### Section 278(2) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## FIFTEENTH DEFENSE

### Sufficient SIPC Funds

Trustee's claims should be dismissed if Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

## SIXTEENTH DEFENSE

### Failure to Mitigate

The Trustee's claims are barred, in whole or part, because Plaintiff has failed to mitigate, minimize or avoid damages, if any.

## SEVENTEENTH DEFENSE

### British Virgin Island Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## EIGHTEENTH DEFENSE

### Trustee Not Entitled to Interest

The Trustee is not entitled to an award of interest.

## NINETEENTH DEFENSE

### Statute of Limitations

The Trustee's claims are  barred by the statute of limitations.

## TWENTIETH DEFENSE

### Estoppel

The Trustee's claims are barred by estoppel.

## TWENTY-FIRST DEFENSE

### Unreasonable Delay/Laches

The Trustee's delay in bringing and prosecuting his claim, which was brought more than

a decade ago, lay dormant for years and concerns alleged transfers made nearly 20 years ago, is

unreasonable and unfairly prejudices ASB's ability to defend itself, including, without limit, with

respect to any claim by the Trustee for interest accruing from and after the date of the filing of

the Complaint.

## TWENTY-SECOND DEFENSE

### Violation of Due Process (U.S. Const. Amend. V)

The use of the doctrine of law of the case to apply to ASB rulings made in other adversary

proceedings to which it was not a party and in which it did not participate violates ASB's right

to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWENTY-THIRD DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent

transfer from ASB to the extent he has recovered the amount of the initial transfers from Fairfield

Sentry or any other immediate or mediate transferee, and the amount of the avoided initial

transfers is included in the alleged Customer Property that the Trustee alleges ASB received.

22

## TWENTY-FOURTH DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from ASB, ASB reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## TWENTY-FIFTH DEFENSE

### Double Recovery

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and other Fairfield funds.

This Court approved the Fairfield Settlement Agreement on June 7, 2011 and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011 (the "Consent Judgment"). The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the Liquidators recover from ASB in settlement or otherwise, the Trustee is barred from recovering on the ground that he is not entitled to double recovery, nor should ASB be subject to recovery of identical funds from two separate entities.

## TWENTY-SIXTH DEFENSE

### Extraterritoriality

The Trustee's recovery from ASB of any transfer from Fairfield Sentry would constitute an impermissible extraterritorial application of U.S. law.

## TWENTY-SEVENTH DEFENSE

### Comity

The Trustee's recovery from ASB of any transfer from Fairfield Sentry would violate principles of comity.

## TWENTY-EIGHTH DEFENSE

### Received Less Than Full Value

The Trustee's claims are barred, in whole or part, because ASB, together with its affiliates, received less than the full value of their principal that was invested in BLMIS through BLMIS feeder funds, and it therefore would be inequitable and unjust for the Trustee to claw back funds from ASB.

## TWENTY-NINTH DEFENSE

### Equitable Setoff

Any enforcement of relief against ASB is subject to the right of equitable setoff.

## THIRTIETH DEFNSE

### Dismissal

The Trustee's claim is barred to the extent it has been or may in the future be dismissed by the Court or is based on allegations that have been or may in the future be dismissed by the Court or is based on theories or allegations that have been or may in the future be rejected by this Court or by another court on appeal from any orders of this Court.

## JURY DEMAND

ASB demands a trial by jury on all issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(B)

ASB does not consent to entry of final orders or judgment by the Bankruptcy Court.

## DEFENDANT'S REQUEST FOR RELIEF

WHEREFORE, ASB requests judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

24

Dated: February 1, 2023
       New York, New York

/s/ Scott B. Schreiber
Scott B. Schreiber
Rosa J. Evergreen (admitted *pro hac vice*)
Daniel R. Bernstein
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

-and-

Kent A. Yalowitz
Lucas B. Barrett
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Defendant ASB Bank Corp.*

US 173058693