# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Bankruptcy Court Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Bankruptcy Court Adv. Pro. No. 12-01565 (CGM) |
| Plaintiff, | |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK (LUXEMBOURG) S.A.), as represented by its Liquidator HANSPETER KRÄMER, HANSPETER KRÄMER, in his capacities as liquidator and representative of STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A., STANDARD CHARTERED BANK INTERNATIONAL | |

(AMERICAS) LTD., f/k/a AMERICAN
EXPRESS BANK INTERNATIONAL, and
STANDARD CHARTERED HOLDINGS INC.
(as successor in interest to STANDARD
CHARTERED INTERNATIONAL (USA)
LTD., f/k/a AMERICAN EXPRESS BANK
LTD.),

                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## SCB DEFENDANTS' MOTION FOR
## LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)

February 1, 2023

SULLIVAN & CROMWELL LLP
Andrew J. Finn
Mark A. Makar
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Email:  finna@sullcrom.com
Email:  makarm@sullcrom.com

Diane L. McGimsey (*pro hac vice*)
1888 Century Park East
Los Angeles, California  90067
Telephone:  (310) 712-6600
Email:  mcgimseyd@sullcrom.com

*Attorneys for SCB Defendants*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...............................................................................1

QUESTIONS PRESENTED ON APPEAL.............................................................4

RELEVANT BACKGROUND .................................................................................5

    A.    The BLMIS Liquidation Proceedings ..................................................5

    B.    The Fairfield Funds and the Trustee's Claims Against SCB
          Defendants..................................................................................................6

    C.    The Motion to Dismiss and the Bankruptcy Court's Decision ...........10

ARGUMENT ...........................................................................................................12

I.    The District Court Has Discretion to Grant Leave to Appeal .......................12

II.    Clarifying the Trustee's Burden to Plead and Prove the "Transferee"
      Element of His Sole Claim for Recovery Warrants Immediate Appeal .......13

    A.    This Case Presents Controlling Questions of Law.............................13

    B.    The Bankruptcy Court Applied the Wrong Legal Standard to
          the "Transferee" Element of the Trustee's Claim ..............................17

    C.    Clarifying the Trustee's Burden to Plead and Prove the
          "Transferee" Element of a Section 550(a)(2) Claim Will
          Materially Advance the Termination of this Action ...........................21

    D.    Immediate Appeal Will Provide Guidance in Dozens of Related
          Adversary Proceedings........................................................................23

CONCLUSION .......................................................................................................24

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Bear, Stearns Secs. Corp.* v. *Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007) .........................................................................15, 20

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007).......................................................................................18

*Bonded Fin. Servs., Inc.* v. *Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) .........................................................................19

*Capitol Records, LLC* v. *Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) .............................................................22

*Christy* v. *Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble,
    Wagner, Heine, Underberg, Manley, Myerson and Casey)*,
    130 F.3d 52 (2d Cir. 1997) .......................................................................*passim*

*Enron Corp.* v. *J.P. Morgan Sec. Inc. (In re Enron Corp)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006)..........................................................19, 20

*Enron Corp.* v. *Springfield Assocs., L.L.C. (In re Enron Corp.)*,
    2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ..............................................*passim*

*In re Enron Creditors Recovery Corp.*,
    2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)....................................................23

*Escondido Mission Vill. L.P.* v. *Best Prods. Co., Inc.*,
    137 B.R. 114 (S.D.N.Y. 1992) .........................................................................13

*Fairfield Sentry Ltd.* v. *Farnum Place, LLC*,
    768 F.3d 239 (2d Cir. 2014) ..............................................................................7

*Fed. Hous. Fin. Agency* v. *UBS Ams., Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) ..............................................................24

*Geltzer* v. *D'Antona (In re Cassandra Group)*,
    312 B.R. 491 (Bankr. S.D.N.Y. 2004)...............................................................16

# TABLE OF AUTHORITIES
### (*continued*)

*Page(s)*

*In re General Motors LLC Ignition Switch Litg.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019) .........................................................14, 16

*Isaiah* v. *JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) ...................................................................19, 20

*Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*,
    2022 WL 1419997 (2d Cir. May 5, 2022) ........................................................15

*In re Kaiser Steel Corp.*,
    110 B.R. 514 (D. Colo. 1990)...........................................................................15

*Klinghoffer* v. *S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) .........................................................................13, 14

*In re Lloyd's Am. Tr. Fund Litig.*,
    1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)....................................................18

*Mervyn's LLC* v. *Lubert-Adler Grp. IV, LLC (In re Mervyn's*
    *Holdings, LLC)*,
    426 B.R. 96 (Bankr. Del. 2010)...................................................................15, 21

*MF Glob. Holdings, Ltd.* v. *Allied World Assurance Co. (In re MF*
    *Glob. Holdings Ltd.)*,
    296 F. Supp. 3d 662 (S.D.N.Y. 2017) ........................................................13, 14

*Orix Fin. Servs., Inc.* v. *Thunder Ridge Energy, Inc.*,
    2006 WL 587483 (S.D.N.Y. Mar. 8, 2006).......................................................20

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ..................................................................................5

*Picard* v. *Citibank N.A.*,
    12 F.4th 171 (2d Cir. 2021) ..........................................................................2, 18

*Picard* v. *Fairfield Inv. Fund Ltd.*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)...........................................9

# TABLE OF AUTHORITIES
### (*continued*)

*Page(s)*

*Rupp* v. *Markgraf,*
    95 F.3d 936 (10th Cir. 1996) ..................................................................15

*U.S. ex rel. Quartararo* v. *Catholic Health Sys. of Long Island Inc.,*
    521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...................................................22

*Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.,*
    234 B.R. 293 (Bankr. S.D.N.Y. 1999).............................................19, 21

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007).................................................................................9

*Tese-Milner* v. *Moon (In re Moon),*
    385 B.R. 541 (Bankr. S.D.N.Y. 2008)...................................................16

*Weisfelner* v. *Fund 1 (In re Lyondell Chem. Co.),*
    503 B.R. 348 (Bankr. S.D.N.Y.).............................................................21

## Statutes

11 U.S.C. § 550 .....................................................................................*passim*

28 U.S.C. § 158(a)(3)....................................................................................12

28 U.S.C. § 1292(b) ......................................................................................21

## Rules

Fed. R. Bankr. P. 7012 .................................................................................10

Fed. R. Civ. P. 12(b)(6)................................................................................10

## PRELIMINARY STATEMENT

The SCB Defendants[1] seek leave to immediately appeal an interlocutory order of the Bankruptcy Court (Morris, J.) (ECF No. 173 (the "Order"))[2] in order to clarify an essential element of claims brought in this and dozens of other related adversary proceedings.[3] The Order presents two purely legal questions that would materially advance the termination of this litigation: (1) whether a bankruptcy trustee has the burden to plead and prove that each defendant was a "transferee" of property sought to be recovered under Section 550(a)(2) of the Bankruptcy Code, 11 U.S.C. § 550(a)(2), and (2) what the minimum requirement is to establish that element as a matter of law.

In its decision denying the SCB Defendants' motion to dismiss the Amended Complaint, the Bankruptcy Court erred on each of these questions by: (1) holding that a bankruptcy trustee does not have the burden to plead and prove that each defendant was a "transferee" of property sought to be recovered—an essential element of the trustee's claim under Section 550(a)(2)—and

---

[1]    "SCB Defendants" refers collectively to Defendants Standard Chartered Financial Services (Luxembourg) S.A. ("AEB Lux/SCFS"), Standard Chartered Bank International (Americas) Ltd. ("AEB Miami/SCBI"), and Standard Chartered International (USA) Ltd. ("AEB New York/SCI").

[2]    A copy of the Order is attached hereto as Exhibit A.

[3]    Except where otherwise indicated, citations to (ECF No. ___) refer to filings on the docket of the Bankruptcy Court in Adversary Proceeding No. 12-01565.

(2) misconstruing the legal standard required to satisfy that "transferee" element by
equating the receipt of property by one defendant as sufficient to establish every
defendants' dominion and control over that property.

This case arises from the long-running liquidation of Bernard L. Madoff
Investment Securities LLC ("BLMIS"), and the BLMIS Trustee's attempt to recover
allegedly fraudulent transfers that BLMIS customers purportedly transferred on to
non-customers. The Trustee's claims are brought pursuant to Section 550(a) of the
Bankruptcy Code, which allows a trustee in bankruptcy to recover "avoided"
transfers of property from an "initial transferee . . . or the entity for whose benefit
such transfer was made" or "any immediate or mediate transferee" (a subsequent
transferee). Under binding Second Circuit law, to prevail on such a claim, the
Trustee must prove (among other things) that each defendant is either an "initial or
subsequent transferee." *Picard* v. *Citibank N.A.*, 12 F.4th 171, 197 (2d Cir. 2021).
"[T]he minimum requirement of status as a 'transferee' is dominion over the money
or other asset, the right to put the money to one's own purposes." *Christy* v.
*Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine,
Underberg, Manley, Myerson and Casey)*, 130 F.3d 52, 57 (2d Cir. 1997) (quotation
omitted). Under this "dominion and control" test, a transferee must actually receive
the property, and have both a legal right to control the property (*i.e.*, legal control),

*and* a right and ability to use the property for its own purpose (*i.e.*, actual control).
*See infra* p. 15, 20–21.

In this case, the Trustee alleged that only one of the three SCB
Defendants—AEB Lux/SCFS—received $289,232,434 from two investment funds,
Fairfield Sentry Ltd. and Fairfield Sigma Ltd. (together, the "Fairfield Funds") over
a three-year period from 2005 to 2008, and that the Fairfield Funds received
avoidable transfers from BLMIS during that time period. (Am. Compl. ¶¶ 1–3, 107;
Exs. C & E to Am. Compl., ECF No. 147.) The other two Defendants—AEB New
York/SCI and AEB Miami/SCBI—are not alleged to have actually received money
from the Fairfield Funds. The Amended Complaint (and documents on which it
relies) further establishes that during the same time period, the SCB Defendants
operated a private bank that offered the Fairfield Funds to clients, and that AEB
Lux/SCFS subscribed and redeemed shares as nominee for that purpose. (*Id.* ¶¶ 85,
86, 90; *see also infra* p. 9.) There is no allegation that any SCB Defendant received
payments from the Fairfield Funds for its own account, or had the legal right or
practical ability to put that money to work for its own purposes.

Nevertheless, the Bankruptcy Court held in relevant part that the
Trustee had pled a claim under Section 550(a)(2) based on allegations that AEB
Lux/SCFS received money from the Fairfield Funds, and the Trustee's conclusory
assertions that the other two Defendants were beneficiaries of those alleged transfers

because they were part of one "enterprise" or "business" (*i.e.*, a private bank).  (ECF No. 168 at 8–9.)  In contravention of Second Circuit law, the Bankruptcy Court did not require the Trustee to plead that each Defendant received the transfers at issue, let alone had legal or actual control of those transfers.  (*Id.* at 17.)  Nor did the Bankruptcy Court apply the dominion and control test to determine whether the Trustee had pled a plausible claim.  Rather, the Bankruptcy Court ruled it is the SCB Defendants' burden "to plead and prove" a lack of dominion and control, including whether they are "mere conduits" of money transferred by the Fairfield Funds.  (*Id.* at 16–17.)

The Bankruptcy Court's rulings on an essential element of the Trustee's claim are incorrect as a matter of law and warrant immediate appeal.  The issues presented on appeal involve controlling questions of law over which there is substantial ground for difference of opinion—namely, the burden and minimum standard to plead and prove an element of the Trustee's only claim.  And an immediate appeal would materially advance the ultimate termination of the litigation and presents extraordinary circumstances to advance both this case and dozens of related adversary proceedings pending in the Bankruptcy Court.

## QUESTIONS PRESENTED ON APPEAL

1. Whether the Bankruptcy Court erred in ruling that a bankruptcy trustee seeking to recover allegedly avoided transfers of property from a bank as an

alleged "immediate or mediate transferee" of an initial transferee of that property

under Section 550(a)(2) of the Bankruptcy Code does not bear the burden of pleading

and proving the "transferee" element of that claim as to each defendant.

2.    Whether the Bankruptcy Court erred in ruling that allegations of

receipt of property by one defendant on behalf of other entities that together operated

as a private bank are sufficient to plead a claim for recovery against an "immediate

or mediate transferee" under 11 U.S.C. § 550(a)(2), where the trustee did not allege

that any defendant exercised dominion and control over the property as required

under *In re Finley*, 130 F.3d 52, 57 (2d Cir. 1997).

## RELEVANT BACKGROUND

### A.    The BLMIS Liquidation Proceedings.

Following the arrest of Bernard Madoff on criminal fraud charges in

December 2008, the Securities Investor Protection Corporation filed a petition in

this District to commence a Securities Investor Protection Act ("SIPA") liquidation

of Madoff's brokerage firm, Bernard L. Madoff Investment Securities LLC

("BLMIS").    *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec.
LLC*, 917 F.3d 85, 92 (2d Cir. 2019).    Judge Louis L. Stanton granted the petition,

appointed the Trustee and referred the case to the Bankruptcy Court.    *Id.*[4]    The

---

[4]    (*See also* District Ct. Order, *Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv.
Sec. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Dec. 15, 2008), ECF No. 1.)

Trustee thereafter filed hundreds of adversary proceedings seeking to recover

billions of dollars that BLMIS allegedly transferred fraudulently to others. *Id.* at 93.

Those cases fall broadly into two categories: (i) claims seeking to avoid and recover

alleged fraudulent transfers of money from BLMIS customers (*i.e.*, alleged initial

transferees) under Section 550(a)(1) of the Bankruptcy Code; and (ii) claims seeking

to recover purportedly avoided initial transfers from "immediate or mediate"

transferees of BLMIS customers under Section 550(a)(2). This case falls with the

second category.

### B.    The Fairfield Funds and the Trustee's Claims Against SCB Defendants.

This case is one of dozens of adversary proceedings that the Trustee has

brought seeking to recover more than $3 billion against financial institutions and

other defendants as alleged subsequent transferees of a British Virgin Islands

investment fund called Fairfield Sentry. (Am. Compl. ¶ 102, ECF No. 147.) Prior

to December 2008, Fairfield Sentry invested "in excess of 95% of its assets in its

BLMIS customer accounts." (*Id.* ¶ 2.) "Fairfield Sigma was a Euro-denominated

currency fund that" purchased shares in Fairfield Sentry—*i.e.*, it was a feeder fund

into Fairfield Sentry. (*Id.*) The Fairfield Funds were managed by non-party Fairfield

Greenwich Ltd. ("FGL"). (*See id.*) FGL charged Fairfield Funds' investors certain

management and performance fees. (*See id.* ¶ 67.) The Fairfield Funds were large

net losers in the BLMIS fraud: they invested approximately $1 billion more than

they withdrew from BLMIS accounts.  *See Fairfield Sentry Ltd.* v. *Farnum Place, LLC*, 768 F.3d 239, 241 (2d Cir. 2014).  None of the SCB Defendants are alleged to have had any control or influence over the Fairfield Funds, including how or when those entities decided to invest with or withdraw money from BLMIS.

In April 2012, the Trustee filed a complaint against the SCB Defendants under 11 U.S.C. § 550(a), seeking to recover payments allegedly received from Fairfield Sentry.  (Compl. ¶ 4, ECF No. 1)[5]  In May 2022, the Trustee filed an Amended Complaint seeking to recover $289,232,434—of which $274,029,164 was allegedly transferred from Fairfield Sentry to one of the SCB Defendants, AEB Lux/SCFS.  The remaining $15,203,270 was allegedly transferred by Fairfield Sigma to AEB Lux/SCFS.  (Am. Compl. ¶ 1; *see also* Exs. C & E to Am. Compl.) The other two SCB Defendants—AEB New York/SCI and AEB Miami/SCBI—are not alleged to have received any of the alleged transfers.

Nor does the Trustee allege that any SCB Defendant had a right to put any money received from the Fairfield Funds to work for its own purposes. The

---

[5]    Prior to filing his original complaint, the Trustee served AEB New York/SCI with a Subpoena for Rule 2004 Examination in October 2009.  (Ex. A to Declaration of Andrew J. Finn in Support of Motion to Stay ("Finn Decl. in Support of Mot. to Stay") at 5, ECF No. 130-1.)  AEB New York/SCI promptly responded and after meeting and conferring with the Trustee's counsel produced in November 2009. (Finn Decl. in Support of Mot. to Stay ¶¶ 3–4, ECF No. 130.)

Amended Complaint alleges that the SCB Defendants operated a private bank for

clients outside of the United States, and that AEB New York/SCI and/or AEB

Miami/SCBI "promoted" the Fairfield Funds to private banking clients. (*See id*.

¶¶ 3, 61, 67, 68, 74, 86.)[6]  In particular, AEB Miami/SCBI would recommend the

Fairfield Funds and sell shares to clients, and AEB New York/SCI "directed AEB

Lux" (SCFS) "to sign the subscription agreements and hold the shares in" the

Fairfield Funds for AEB Miami/SCBI clients. (Am. Compl. ¶ 86.)[7]  The Trustee

also contends that AEB New York/SCI or AEB Miami/SCBI earned unspecified fees

both for "managing and selling" the non-party fund of funds and from FGL for

---

[6]    Prior to February 2008, Defendant SCI was called American Express Bank
Ltd., and is referred to in the Amended Complaint as "AEB New York." (Am.
Compl. ¶ 56.)  SCI wholly owned Defendant SCBI, which was a U.S. bank based in
Miami that operated under the federal Edge Act and engaged "in international
banking and financial operations." (Am. Compl. ¶ 57.)  SCBI is referred to in the
Amended Complaint as "AEB Miami." (*Id*. ¶ 57.)  SCFS was a Luxembourg
affiliate of SCI and SCBI, and is referred to in the Amended Complaint as "AEB
Lux." (*Id*. ¶ 61.)  According to the Amended Complaint, AEB New York/SCI
"managed" AEB Miami/SCBI and AEB Lux/SCFS. (*Id*.)  In February 2008,
Standard Chartered PLC acquired AEB New York/SCI, and the three Defendants
became subsidiaries of Standard Chartered Bank. (*Id*. ¶¶ 56, 61.)

[7]    The Trustee also alleges that in 2003, AEB New York/SCI initially approved
Fairfield Sentry for inclusion through the Concentrated Elite Fund, a non-party "fund
of funds that allocated 25% of its assets to purchase Fairfield Sentry shares" (Am.
Compl. ¶ 79), and "[l]ater AEB expanded the purchase of Fairfield Sentry for
clients" (*id.* ¶ 85).  The Trustee claims that "in creating the Concentrated Elite Fund"
some unidentified entity "purchased the Fairfield Sentry shares for its own use."
(*Id.*)  However, the Trustee does not allege any of those shares were redeemed or led
to any transfer sought to be recovered.

distributing the Fairfield Funds to its clients, but nowhere alleges that any of the transfers sought to be recovered represent such fees.  (*Id.* ¶ 90.)

All of those transactions were carried out pursuant to distribution agreements that the SCB Defendants "negotiated and entered into" with the Fairfield Funds' manager, FGL, to sell the Fairfield Funds to private banking clients.[8]  (*Id.* ¶¶ 61, 67.)  Those agreements establish that AEB New York/SCI "provide[d] nominee services with respect to" the ultimate clients who decided to invest in the Fairfield Funds.[9]  (Ex. E to Declaration of Andrew J. Finn in Support of Motion to Dismiss ("Finn Decl. in Support of Mot. to Dismiss") at 1, ECF No. 152-5; *see also* Ex. D to Finn Decl. in Support of Mot. to Dismiss, ECF No. 152-4.)[10]  In other words, AEB New York/SCI was acting on the instructions of clients and not for its own benefit and account.

---

[8]    The distribution agreements are incorporated by reference in the Amended Complaint, and thus the Bankruptcy Court could appropriately consider them on a motion to dismiss.  *See Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Picard* v. *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.).

[9]    A prior letter of understanding, dated December 31, 2002, set forth the terms by which "subscriptions by clients [would be] introduced by [AEB New York/SCI] directly or indirectly" to the Fairfield Funds.  (Ex. F to Finn Decl. in Support of Mot. to Dismiss at 2, ECF No. 152-6.)

[10]    The Trustee further alleges that the SCB Defendants agreed "to distribute structured notes linked to the performance of the" Fairfield Funds, but nowhere alleges the amounts distributed or if any of the transfers sought to be recovered relate to any such notes.  (Am. Compl. ¶ 85.)

### C.     The Motion to Dismiss and the Bankruptcy Court's Decision.

On July 15, 2022, the SCB Defendants moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure (ECF No. 151 (the "Motion")).  Among other things, the SCB Defendants argued that the Trustee had failed to plead any Defendant was a "transferee" under Section 550(a)(2) of the Bankruptcy Code, because the Amended Complaint did not allege facts demonstrating each Defendant exercised dominion and control over the property sought to be recovered under the Second Circuit's dominion and control test.

In a memorandum decision, dated January 6, 2023, the Bankruptcy Court denied the Motion (ECF No. 168 (the "January 2023 Decision")).[11]   As relevant to this motion, the Bankruptcy Court recognized that "[t]o plead a subsequent transfer claim, the Trustee must plead" among other elements that "the defendant is a subsequent transferee," but did not require the Trustee to plead that each SCB Defendant had dominion and control over the transfers sought to be recovered.  (January 2023 Decision at 7.)  Instead, the Bankruptcy Court held that the Trustee need not allege anything beyond receipt of funds from one of the

---

[11]     A copy of the Bankruptcy Court's Decision is attached hereto as Exhibit B.

Fairfield Funds to plead a claim. (*See id.* at 17.) The Bankruptcy Court also held
that the Trustee could pursue a claim against the two SCB Defendants that are not
alleged to have received any transfers (AEB New York/SCI and AEB Miami/SCBI)
because the Amended Complaint contained conclusory allegations that AEB
Lux/SCFS received money "on behalf of" the other SCB Defendants and the SCB
Defendants are somehow agents and alter egos of each other because they operated
as part of "one business." (*Id.* at 9.) In addition, the Bankruptcy Court relied on an
allegation that AEB Miami/SCBI received an unspecified "performance and
management fee[]" from the Fairfield Funds. (*Id.* at 10.)

   The Bankruptcy Court treated the question of whether each separate
SCB Defendant had dominion and control over the transfers at issue as an
"affirmative defense" and shifted the burden to each Defendant to plead and prove
that it did not exercise any dominion and control (*i.e.*, that each Defendant was not
a "transferee" under Section 550(a)(2)). (*Id.* at 14–15, 17.) In particular, the court
ruled that "[a]lthough the Defendants have provided [the] agreement between AEB
New York/SCI and Fairfield Greenwich Limited that indicates that it was AEB New
York/SCI's intention to offer and sell shares of the Fairfield [F]unds, it is not
'beyond doubt' that the [SCB] Defendants are 'mere conduits'" as opposed to
"transferees," and that *Defendants* may "plead and prove otherwise at a later stage
of litigation." (*Id.* at 15, 17 (internal citations omitted).)

The Court went on to find that "[t]hough it is not his burden to plead, the Trustee's Complaint contains plausible allegations that the [SCB] Defendants exercised dominion and control over BLMIS customer property." (*Id.* at 17.) In doing so, the Court relied on allegations that AEB Lux/SCFS signed subscription and distribution agreements with the Fairfield Funds and the SCB Defendants recommended the funds and "reviewed and approved investments for their clients" in return for fees. (*Id.* at 16.)

On January 18, 2023, the Bankruptcy Court entered the Order formally denying the Motion. (*See* ECF No. 173.)

## ARGUMENT

### I.    The District Court Has Discretion to Grant Leave to Appeal.

The District Court may grant a party leave to pursue an interlocutory appeal from a non-final bankruptcy court order pursuant to 28 U.S.C. § 158(a)(3). When considering whether to grant such leave, courts consider whether the issue(s) raised: "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and whether "(3) an immediate appeal would materially advance the ultimate termination of the litigation." *Enron Corp.* v. *Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) (Scheindlin, J.). Leave to appeal is warranted in "exceptional circumstances" that "justify a departure from the basic policy of postponing

appellate review until after the entry of a final judgment." *In re Enron Corp.*, 2006

WL 2548592, at *3.   Exceptional circumstances exist when a bankruptcy court

misapplies a threshold legal standard, *Escondido Mission Vill. L.P.* v. *Best Prods.*

*Co., Inc.*, 137 B.R. 114, 117 (S.D.N.Y. 1992) (Sweet, J.) (finding "'exceptional

circumstance' justifying immediate review" where "Bankruptcy Court failed to

weigh [a multi-]factor[ test under 11 U.S.C. § 365(d)(4)] properly"), or where the

resolution of a legal issue will impact other cases, *Klinghoffer* v. *S.N.C. Achille*

*Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *MF Glob. Holdings, Ltd.* v. *Allied World*

*Assurance Co. (In re MF Glob. Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y.

2017) (Rakoff, J.) (considering whether interlocutory appeal "would provide

important guidance for similarly situated parties").

       The SCB Defendants' proposed appeal satisfies all of these

requirements.

## II.    Clarifying the Trustee's Burden to Plead and Prove the "Transferee" Element of His Sole Claim for Recovery Warrants Immediate Appeal.

### A.    This Case Presents Controlling Questions of Law.

       "In regard to the first prong, the 'question of law' must refer to a 'pure'

question of law that the reviewing court could decide quickly and cleanly without

having to study the record." *In re Enron Corp.*, 2006 WL 2548592, at *4 (citation

omitted).   "The question must also be 'controlling' in the sense that reversal of the

bankruptcy court's order would terminate the action, or at a minimum that

-13-

determination of the issue on appeal would materially affect the litigation's outcome." *Id*. Thus, a question need not conclude the entire litigation to be "controlling." *Klinghoffer*, 921 F.2d at 24.[12] "It is enough that the Court's determination 'could significantly affect the conduct of the action.'" *In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) (Furman, J.) (citation omitted). The questions raised here meet this test.

*First*, resolving who has the burden to plead and prove the "transferee" element of the Trustee's sole claim under Section 550(a)(2) of the Bankruptcy Code, and what that element requires, are "pure" legal questions that do not require a review of the record. The SCB Defendants contend that the Trustee has the burden to plead and prove the "transferee" element of a Section 550(a)(2) claim, and under binding Second Circuit law that element requires that each Defendant had "dominion and control" over the specific transfers sought to be recovered. *In re Finley*, 130 F.3d at 57.

*Second*, the questions presented here are "controlling" because their answer will determine the circumstances under which the Trustee can recover on his sole claim. Indeed, at least one district court in another Circuit has granted

---

[12]    *See also In re MF Glob. Holdings Ltd.*, 296 F. Supp. 3d at 665 ("Though it would not terminate the action, appeal of this issue presents a pure question of law that could be quickly resolved and would provide important guidance for similarly situated parties. It thus presents a controlling question of law.").

interlocutory appeal and reversed a bankruptcy court's erroneous ruling on this very

issue, recognizing the controlling nature of the transferee element of a Section 550(a)

claim. *In re Kaiser Steel Corp.*, 110 B.R. 514, 516, 520 (D. Colo. 1990) ("grant[ing]

leave to appeal" and finding that proper "[a]ppl[ication of] the control test to this

case" leads to "the logical conclusion [] that Schwab cannot be considered an initial

transferee").

Moreover, granting leave to appeal should end this case and potentially

dozens of related adversary proceedings in the Bankruptcy Court. Under the proper

dominion and control test, there must be (i) receipt of transferred funds; (ii) legal

control *and* (iii) actual control. *See Bear, Stearns Secs. Corp.* v. *Gredd (In re

Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) (Buchwald, J.).[13] The

Trustee failed to allege facts that meet those three minimum indicia of dominion and

control. The Amended Complaint does not allege that two of the three SCB

Defendants (AEB New York/SCI and AEB Miami/SCBI) received any funds

transferred from the Fairfield Funds; it does not allege any SCB Defendant held legal

---

[13]    *See also Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*, 2022 WL 1419997, at
*1 (2d Cir. May 5, 2022) (defendant was not a transferee where it was "undisputed
that she never had 'a realistic opportunity to' use the funds"); *Rupp* v. *Markgraf*, 95
F.3d 936, 942 (10th Cir. 1996) (a bank "must (1) actually receive the funds, and (2)
have full dominion and control over them"); *Mervyn's LLC* v. *Lubert-Adler Grp. IV,
LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. Del. 2010) (applying
the dominion and control test and finding "the Committee fails to plead how Bank
of America has legal title to the Notional Rent funds").

title to any of the money that AEB Lux/SCFS received from the Fairfield Funds; and

it does not allege that any SCB Defendant exercised actual control over any transfer

received by AEB Lux/SCFS.  And allegations that the SCB Defendants earned some

unspecified fees do not suggest any dominion and control over the transferred funds.

*See, e.g.*, *In re Finley*, 130 F.3d at 59 (finding the existence of a fee arrangement or

commission does not weigh against a finding that a party was a mere conduit of the

funds if they were received in the ordinary course of such transfers, because "many

ordinary and routine transactions entail service fees that may be debited against

funds as they pass from hand to hand.")[14]

At a minimum, clarifying that the Trustee has the burden to plead and

prove the transferee element of a Section 550(a)(2) claim, and what the element

requires, would significantly and materially affect the conduct and outcome of the

action should it proceed to discovery and trial.  *See In re General Motors*, 427 F.

Supp. 3d at 392.  In particular, the conduct of discovery and trial, as well as any

---

[14]    *See also Geltzer* v. *D'Antona (In re Cassandra Group)*, 312 B.R. 491, 495–
97 (Bankr. S.D.N.Y. 2004) (Lifland, J.) (finding attorney who received funds into
client trust account was not the "initial transferee" of the funds, even though he paid
his own attorney's fees from the funds); *Tese-Milner* v. *Moon (In re Moon)*, 385
B.R. 541, 552–53 (Bankr. S.D.N.Y. 2008) (Gerber, J.) (rejecting the trustee's
contention that the attorney was "initial transferee" as to the entirety of settlement
proceeds received in the client trust account, and holding that the attorney was only
the "initial transferee" of the settlement proceeds that the attorney actually retained
for his fees and expenses).

future dispositive motions, necessarily depends on what the Trustee must prove to

establish a claim as to each SCB Defendant.  Under one reading of the January 2023

Decision, the Trustee need only demonstrate that one of the SCB Defendants

received transfers at issue and did so on behalf of the other two SCB Defendants in

order to make all of the SCB Defendants liable.  But under the Second Circuit's

"dominion and control" test, the mere receipt of property is insufficient as a matter

of law to demonstrate a party's status as a transferee.  *In re Finley*, 130 F.3d at 57.

And, unlike a Section 550(a)(1) claim against an initial transferee, Section 550(a)(2)

does not authorize recovery from an "entity for whose benefit such transfer was

made."  11 U.S.C. § 550(a)(2).

Accordingly, resolving the threshold legal issue of who qualifies as a

"transferee" under Section 550(a)(2) and which party must plead and prove that

element will terminate or materially advance this case.[15]

**B.    The Bankruptcy Court Applied the Wrong Legal Standard to the
"Transferee" Element of the Trustee's Claim.**

"As to the second prong, the 'substantial ground for a difference of

opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court

---

[15]    Some courts in this District have also adopted summary proceedings to allow
mere conduit entities to be dismissed from the case so that the parties may focus on
the true "transferees" of property sought to be recovered by a trustee.  (*See* Reply at
11–13, ECF No. 158.)

applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4 (citation

omitted). "The requirement that there be substantial ground for difference of opinion

as to the legal issue presented for certification may be satisfied when: (1) there is

conflicting authority on the issue, or (2) the issue is particularly difficult and of first

impression for the Second Circuit." *In re Lloyd's Am. Tr. Fund Litig.*, 1997 WL

458739, at *5 (S.D.N.Y. Aug. 12, 1997) (Sweet, J.). "The district court must analyze

the strength of the arguments in opposition to the challenged ruling when deciding

whether the issue for appeal is truly one on which there is a *substantial* ground for

dispute." *Enron*, 2006 WL 2548592, at *4 (internal quotation omitted). Here, the

January 2023 Decision conflicts with Supreme Court and Second Circuit law.

In particular, the Second Circuit has held that the "elements a trustee

must satisfy to recover transferred property" under Section 550(a) are "that the

transfer was avoided, ***and that the defendant is an initial or subsequent transferee***."

*Citibank*, 12 F.4th at 197 (emphasis added). Moreover, "a complaint . . . must

contain either direct or inferential allegations respecting all the material elements

necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp.* v.

*Twombly*, 550 U.S. 554, 562 (2007) (citation omitted). The Second Circuit also has

held that "the minimum requirement of status as a 'transferee' is dominion over the

money or other asset, the right to put the money to one's own purposes." *In re*

*Finley*, 130 F.3d at 57. This dominion and control test applies equally to subsequent

transferees as it does to initial transferees. *Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (Brozman, J.) (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "[t]o qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives" (citation omitted)); *see also Bonded Fin. Servs., Inc.* v. *Eur. Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988) (in considering whether a bank was a subsequent transferee, recognizing that "[t]he method we employed . . . to decide that the [b]ank was not an 'initial' transferee governs the question whether entities are subsequent transferees, too").

Here, the Bankruptcy Court held that allegations that one of the three SCB Defendants received the property sought to be recovered was sufficient to shift the burden to the SCB Defendants to "plead and prove" that they did *not* exercise dominion and control over the transferred funds at issue. (January 2023 Decision at 9, 17). In doing so, the Bankruptcy Court ruled that "the burden of proof is on the defendant asserting a mere conduit defense," relying on two cases. (January 2023 Decision at 17.) However, those cases–*Enron Corp.* v. *J.P. Morgan Sec. Inc. (In re Enron Corp)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) and *Isaiah* v. *JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020))–did not address the Trustee's threshold burden to establish the "transferee" element in the first instance. Instead,

those cases focused on one potential defense a defendant may show to disprove that
element (that the defendant was a mere conduit of the property).[16]   *See In re
Manhattan Inv. Fund*, 397 B.R. at 15.   Moreover, the Second Circuit has never
endorsed the "mere conduit defense" as an affirmative defense to a Section 550(a)
claim.[17]   "In this [D]istrict, a defense is not considered affirmative where it 'merely
negates an element of the plaintiff's prima facie case.'"   *Orix Fin. Servs., Inc.* v.
*Thunder Ridge Energy, Inc.*, 2006 WL 587483, at *2 (S.D.N.Y. Mar. 8, 2006)
(Holwell, J.) (citation omitted).

The January 2023 Decision also conflicts with well-settled pleading
principles and the decisions of courts around the country who have held that
establishing a defendant is a "transferee" is an essential element of a Section 550(a)

---

[16]    In particular, the Bankruptcy Court relied on dicta from *In re Enron* that "[i]t
is likely [the] burden [of the defendant asserting the conduit defense]—not [the
plaintiff]—to demonstrate the applicability of [a] mere conduit defense."   361 B.R.
at 49 (alterations in original) (citation omitted).   But that statement was made in
relation to whether a plaintiff "meets the criteria for a mistake under Rule 15(c)" if
it misidentified a defendant as a transferee and has nothing to do with the pleading
standard for a Section 550(a) claim.   *See id.* at 48-49.   Similarly, the question of
whether a trustee had alleged that a defendant was a transferee under Section 550(a)
was never presented to the Eleventh Circuit in *Isaiah*, which involved a claim
brought by a court-appointed receiver under the Florida Uniform Fraudulent
Transfer Act.   960 F.3d at 1304.

[17]    Nevertheless, in light of the Bankruptcy Court's incorrect ruling that it is a
defendant's burden to plead and prove a lack of dominion and control over the
transferred funds, some defendants may assert a "mere conduit defense" in their
answers out of an abundance of caution.

claim that a trustee must plead and prove. *See Weisfelner* v. *Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 381–83 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (dismissing "claims asserted against [d]efendants that were sued as conduits or as mere 'holders,' and not beneficial owners, of Lyondell stock"), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016).[18]

Accordingly, as to both issues presented for appeal, there is at least a "substantial ground for difference of opinion" that should be immediately resolved. 28 U.S.C. § 1292(b).

### C. Clarifying the Trustee's Burden to Plead and Prove the "Transferee" Element of a Section 550(a)(2) Claim Will Materially Advance the Termination of this Action.

"Finally, in regard to the third prong, [a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL 2548592, at *4 (alteration in original) (citation omitted). "Courts place

---

[18]    *See Stratton Oakmont, Inc.*, 234 B.R. at 312–15 (granting motion to dismiss in part because,"[a]s the Complaint stands, [defendant] was a mere conduit"); *In re Mervyn's Holdings, LLC*, 426 B.R. at 102–04 (finding that there was insufficient pleadings showing that the movant was a "transferee" for the purposes of an avoidance action); *Super Vision Int'l, Inc.* v. *Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) (finding "that [plaintiff] has not stated a claim for fraudulent transfer against [defendant] because at best, [defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have controlled the funds at issue").

particular emphasis on the importance of this last factor," *id.*, which is met where resolving a legal issue will reduce the scope of claims and issues in dispute. *See Capitol Records, LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (Abrams, J.); *U.S. ex rel. Quartararo* v. *Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 279 (E.D.N.Y. 2021) (dismissal of action "at least in substantial part" would "advance the trial schedule and expedite the litigation").

Here, if this Court permits an immediate appeal and the Bankruptcy Court's Order is reversed, the Trustee's Amended Complaint against the SCB Defendants should be dismissed for the reasons set forth above, *see supra* pp. 14–21. But in any event, clarifying the minimum requirements the Trustee must plead and prove to demonstrate transferee status will materially change the scope of the case. For example, the Bankruptcy Court referenced alleged fees received by SCBI from the Fairfield Funds. This case would look very different if it were focused solely on any fees the SCB Defendants allegedly received from the Fairfield Funds, which the Trustee does not allege come anywhere close to the $289,242,434 in transfers made over three years that the Amended Complaint seeks to recover. Resolution of facts and issues pertaining to those fees would require far more limited discovery, and fewer issues would also be raised via summary judgment or at trial. Indeed, clarifying the transfers potentially recoverable reduces the likelihood trial will be required at all.

Additionally, the questions of who bears the burden to prove the "transferee" element of the Trustee's claim and what that requires will "persist notwithstanding resolution of the factual disputes," because the parties will "continue to argue that the factual disputes should have had no bearing" on those purely legal threshold questions. *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *7 (S.D.N.Y. Oct. 16, 2009) (McMahon, J.). The Bankruptcy Court pointed to certain allegations it viewed as relevant to whether the SCB Defendants had dominion and control over the alleged subsequent transfers the Trustee seeks to recover, and held that discovery is warranted. However, without resolution of the threshold legal questions of what it means to be a "transferee" and who has the burden on that issue, the parties have no way of knowing what facts need to be discovered and demonstrated on the issue.

### D. Immediate Appeal Will Provide Guidance in Dozens of Related Adversary Proceedings.

This case is not alone. The Trustee has brought more than 80 adversary proceedings against purported subsequent transferees against over one hundred defendants seeking billions of dollars, all under Section 550(a)(2). *See In re Picard*, 917 F.3d at 91.[19] Those cases remain largely at the pleading stage, and many other

---

[19]    (*See also* Ex. B to Status Rpt., Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Sept. 10, 2021), ECF No. 20740-2.)

defendants have raised some form of objection or defense related to their "transferee" status under 11 U.S.C. § 550(a)(2).[20]    As such, resolution of the questions presented here could provide clarity to parties in those related cases, which further favors immediate appeal. *See Fed. Hous. Fin. Agency* v. *UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) (Cote, J.) (noting that an appellate ruling would "remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases," was "likely to significantly affect the parties' bargaining positions," and could "hasten the termination of litigation through settlement").

## CONCLUSION

For the foregoing reasons, the SCB Defendants respectfully request leave to appeal the January 2023 Decision and Order.

---

[20]    (*See, e.g.*, Brief at 9–15, *Picard* v. *ABN AMRO Retained Nominees (IOM) Ltd.*, Adv. Pro. No. 12-01697 (Bankr. S.D.N.Y. Jan. 12, 2023), ECF No. 145; Brief at 9–15, *Picard* v. *Naidot & Co.*, Adv. Pro. No. 11-02733 (Bankr. S.D.N.Y. Oct. 20, 2022), ECF No. 103; Brief at 20–23, *Picard* v. *UBS Deutschland AG.*, Adv. Pro. No. 12-01577 (Bankr. S.D.N.Y. Sept. 15, 2022), ECF No. 115; Brief at 19–22, *Picard* v. *Six Sis AG*, Adv. Pro. No. 12-01195 (Bankr. S.D.N.Y. Dec. 13, 2022), ECF No. 134; Brief at 14–16, *Picard* v. *Inteligo Bank Ltd.*, Adv. Pro. No. 11-02763 (Bankr. S.D.N.Y. June 27, 2022), ECF No. 117; Brief at 8 n.5, *Picard* v. *Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (Bankr. S.D.N.Y. Mar. 7, 2022), ECF No. 94.)

Dated: February 1, 2023
     New York, New York

Respectfully Submitted,

/s/  *Andrew J. Finn*

Andrew J. Finn
Mark A. Makar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  finna@sullcrom.com
Email:  makarm@sullcrom.com

Diane L. McGimsey (*pro hac vice*)
1888 Century Park East
Los Angeles, California  90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800
Email:  mcgimseyd@sullcrom.com

*Attorneys for SCB Defendants*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 4,899 words, according to the word-count function of the word-processing system used to prepare the document.

2.    This document complies with the typeface of requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 1, 2023

Respectfully submitted,

/s/ *Andrew J. Finn*