# EXHIBIT B

THE COMPANIES LAW (2003 REVISION)

COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

OF

## HARLEY INTERNATIONAL (CAYMAN) LIMITED
(Adopted by special resolution passed on 12 November 2003)

CERTIFIED A TRUE COPY

*H Stewart*
Hazel Stewart
Solicitor
16.12.2005.

Boxalls
Queensgate House
P.O. Box 1234
George Town
Grand Cayman
Cayman Islands

Tel: (345) 949-9876
Fax: (345) 949-1986

Our ref: 1785-0005/RMC-smm

I:\CLIENTS\FUND\934\1575 - Harley International Limited\GP\Draft\Memorandum New--17 Oct 03.doc

NAT001491
NATSAA00001491.1

## THE COMPANIES LAW (2003 REVISION)

### COMPANY LIMITED BY SHARES

### MEMORANDUM OF ASSOCIATION

### OF

## HARLEY INTERNATIONAL (CAYMAN) LIMITED
(Adopted by special resolution passed on 12 November 2003)

1. The name of the Company is Harley International (Cayman) Limited.

2. The registered office will be situate at the office of Fortis Fund Services (Cayman) Limited, Grand Pavillion Commercial Centre, 802 West Bay Road, P.O. Box 2003, George Town in the Island of Grand Cayman or at such other place in the Cayman Islands as the Directors may from time to time decide.

3. The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by any law as provided by Section 7(4) of the Companies Law (2003 Revision).

4. The Company shall have and be capable of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit as provided by Section 27 (2) of the Companies Law (2003 Revision).

5. Nothing in the preceding paragraphs shall permit the Company to carry on the business of a bank or trust company without being licensed in that behalf under the Banks and Trust Companies Law (2003 Revision) or to carry on insurance business from within the Cayman Islands or the business of an insurance manager, agent, sub-agent or broker without being licensed in that behalf under the Insurance Law (2001 Revision) or to carry on the business of company management without being licensed in that behalf under the Companies Management Law (2003 Revision).

6. The Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands, but nothing in this paragraph shall be so construed as to prevent the Company effecting and concluding contracts in the Cayman Islands and exercising in the Cayman Islands any of its powers necessary for the carrying on of its business outside the Cayman Islands.

EXEMPTED

NAT001492
NATSAA00001492.1

2

7.   The liability of each Member is limited to the amount from time to time unpaid on such Member's shares.

8.   The capital of the Company is Five Thousand (US$5,000) dollars divided into One Hundred Thousand (100,000) Ordinary Shares of One Cent (US$0.01) par value each and Four Hundred Thousand (400,000) Redeemable Preferred Shares of One Cent (US$0.01) par value each with power for the Company, subject to the provisions of the Companies Law (2003 Revision) and the Articles of Association, to redeem any of its shares and to increase or reduce the said capital and to issue any part of its capital, original, redeemed, increased or reduced, with or without any preference, priority or special privilege or subject to any postponement of rights or to any conditions or restrictions and so that, unless the condition of issue shall otherwise expressly declare, every issue of shares, whether declared to be ordinary, preference or otherwise, shall be subject to the power hereinbefore contained.

9.   The Company has power to register by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

10.  Capitalised terms that are not defined in this Memorandum of Association bear the same meaning as those given in the Articles of Association of the Company.



NAT001493
NATSAA00001493.1

COMPANIES LAW (2003 REVISION)

COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

# HARLEY INTERNATIONAL (CAYMAN) LIMITED
(Adopted by Special Resolution passed on 12 November 2003)

**Boxalls**
Queensgate House
P.O. Box 1234
George Town
Grand Cayman
Cayman Islands
Tel: (345) 949-9876
Fax: (345) 949-9877

Ref: 1785-0005/RMC-smm

NAT001494
NATSAA00001494.1

## TABLE OF CONTENTS

Preliminary ............................................................................................. 1
Commencement of business ..................................................................... 10
Situation of offices of the Company ........................................................ 11
Share capital ........................................................................................... 11
Issue of Participating Shares .................................................................... 14
Records ................................................................................................... 17
Determination of Net Asset Value per Share ........................................... 18
Suspension of determination of Net Asset Value per Share ..................... 20
Redemption of Participating Shares ......................................................... 21
Conversion of Participating Shares .......................................................... 25
Transfer of shares .................................................................................... 26
Transmission of shares ............................................................................ 27
Share certificates .................................................................................... 28
Variation of terms ................................................................................... 28
Modification of rights .............................................................................. 28
Alteration of capital ................................................................................ 30
General meetings ..................................................................................... 31
Proceedings at general meetings ............................................................. 32
Votes of Members ................................................................................... 34
Number of Directors ............................................................................... 36
Alternate Directors .................................................................................. 37
Proxy Directors ....................................................................................... 37
Powers of Directors ................................................................................. 38
Delegation of Directors' powers .............................................................. 38
Appointment, disqualification and removal of Directors ......................... 39
Remuneration of Directors ...................................................................... 39
Directors' expenses ................................................................................. 40
Directors' appointments and interests ..................................................... 40
Proceedings of Directors ......................................................................... 41
Secretary and other officers .................................................................... 43
Minutes ................................................................................................... 43
Seal ......................................................................................................... 43
Dividends ................................................................................................ 44
Record dates ........................................................................................... 45

E:\CLIENTS\FUND\P\341973 - Herley International Limited\CR\Draft\Articles.29 Oct 03.doc

NAT001495
NATSAA00001495.1

Accounts ........................................................................................................................................45
Audit ..............................................................................................................................................46
Capitalisation of profits...............................................................................................................47
Share premium and reserve accounts .......................................................................................48
Winding up....................................................................................................................................50
Indemnity.......................................................................................................................................51
Disclosure......................................................................................................................................52
Financial year................................................................................................................................52
Pension and Superannuation Funds...........................................................................................52
Arbitration.....................................................................................................................................53
Amendment of Memorandum and Articles ...............................................................................53
Transfer by way of continuation ................................................................................................54

ii

NAT001496
NATSAA00001496.1

COMPANIES LAW (2003 REVISION)

COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

**HARLEY INTERNATIONAL (CAYMAN) LIMITED**
(Adopted by Special Resolution passed on 12 November 2003)

**Preliminary**

1.   The regulations contained in Table A in the First Schedule of the Law shall not apply to the Company and the following regulations shall be the Articles of Association of the Company.

2.   In these Articles:

   (a)   the following terms shall have the meanings set opposite if not inconsistent with the subject or context:

| | |
|---|---|
| "Administrator" | any person appointed and for the time being acting as administrator of the Company; |
| "allotment" | shares are taken to be allotted when a person acquires the unconditional right to be included in the Register in respect of those shares; |
| "Articles" | these articles of association of the Company as from time to time amended by Special Resolution; |
| "Auditors" | the auditors for the time being of the Company; |
| "Business Day" | such day or days as the Directors may from time to time determine; |
| "Class" | a class of Participating Shares designated by the Directors pursuant to Article 9; |

1

"clear days"                    in relation to a period of notice means that period excluding both the day when the notice is given or deemed to be given and the day for which it is given or on which it is to take effect;

"Company"                      the above-named company;

"Directors"                    the directors for the time being of the Company or, as the case may be, those directors assembled as a board or as a committee of the board;

"dividend"                     includes a distribution or interim dividend or interim distribution;

"electronic"                   has the same meaning as in the Electronic Transactions Law (2000 Revision);

"electronic communication"     a communication sent by electronic means, including by telefax;

"electronic record"            has the same meaning as in the Electronic Transactions Law (2000 Revision);

"electronic signature"         has the same meaning as in the Electronic Transactions Law (2000 Revision);

"executed"                     means any mode of execution;

"Fiscal Period"                a period which commences on each of (A) in respect of the initial Fiscal Period, the date Participating Shares are first issued and (B) thereafter on (i) the first day of each Performance Period, (ii) the day next following any Redemption Day on which Participating Shares are redeemed, (iii) each Subscription Day on which Participating Shares are issued, (iv) the day next following any date on which dividends are declared or as of which any amount is credited or debited against any Record pursuant to these Articles, (v) any other date that the Directors select in their sole discretion, and the prior Fiscal Period will end on the day immediately preceding the first day of a new Fiscal Period.

"Gross Negligence"             in relation to a person means a standard of conduct beyond negligence whereby a person acts with

2

NAT001498
NATSAA00001498.1

| | reckless disregard for the consequences of his action or inaction; |
|---|---|
| "holder" | in relation to any share, the Member whose name is entered in the Register as the holder of the share; |
| "Initial Offering Period" | in respect of Participating Shares of each Class, Sub-Class and Series, the initial period during which the Participating Shares of that Class, Sub-Class and Series are offered for subscription as determined by the Directors pursuant to Article 16; |
| "Investment Management Agreement" | the agreement for the time being in force between the Company and the Investment Manager; |
| "Investment Manager" | any person appointed and for the time being acting as investment manager of the Company; |
| "Investments" | means, but shall not be limited to, securities and other financial instruments held directly or by any Master Fund, including, without limitation, capital stock; all manner of equity securities (whether registered or unregistered, traded or untraded); shares of beneficial interest; partnership interests and similar financial instruments; bonds, notes and debentures (whether subordinated, convertible or otherwise); currencies; interest rate, currency, equity and other derivative products, including, without limitation: (i) futures contracts (and options thereon) relating to stock indices, currencies, United States Government securities, securities of non-U.S. governments, other financial instruments and all other commodities and (ii) swaps, options, rights, warrants, when-issued securities, caps, collars, floors, forward rate agreements, and repurchase and reverse repurchase agreements and other cash equivalents; (iii) spot and forward currency transactions; and (iv) agreements relating to or securing such transactions; leases, including without limitation, equipment lease certificates; equipment trust certificates; loans; DIP financings; accounts and notes receivable and payable held by trade or other creditors; trade acceptances and claims; contract and other claims; executory contracts; participations; mutual funds; U.S. and non-U.S. money market funds and |

3

NAT001499

NATSAA00001499.1

instruments; obligations of the United States, or any state thereof, non-U.S. governments and instrumentalities of any of them; commercial paper; certificates of deposit; bankers' acceptances; trust receipts; letters of credit; money market instruments; accounts payable; puts; other bankruptcy claims and bank debt; and other obligations and instruments or evidences of indebtedness of whatever kind or nature; in each case, of any person, corporation, government or other entity whatsoever, whether or not publicly traded or readily marketable;

"Islands"                the British Overseas Territory of the Cayman Islands;

"Law"                    the Companies Law (2003 Revision);

"Loss Carryforward"      in respect of any Series and any Performance Period, a Net Loss which has not been offset by a Net Profit in any subsequent Performance Period;

"Master Fund"            if the Directors resolve to organise the Company into a master-feeder structure, any vehicle to which the Company transfers its assets in return for any equity interest;

"Member"                 has the same meaning as in the Law;

"Memorandum"             the memorandum of association of the Company as from time to time amended;

"month"                  a calendar month;

"Net Asset Value"        when used with reference to the Company or to a particular Portfolio or to a particular Class, Sub-Class or Series means the aggregate of the Net Asset Value per Share of all Participating Shares of the Company or that Portfolio or that Class, Sub-Class or Series, as the case may be;

"Net Asset Value per Share"    in respect of Participating Shares of each Class, Sub-Class or Series, the net asset value per Participating Share of such Class, Sub-Class or Series, as determined in accordance with Article 24;

4

NAT001500
NATSAA00001500.1

"Net Loss"

any amount by which the Net Asset Value of the Company or, if applicable, Portfolio as of the first day of a Fiscal Period exceeds the Net Asset Value of the Company or, if applicable, Portfolio as of the last day of the same Fiscal Period;

"Net Profit"

any amount by which the Net Asset Value of the Company or, if applicable, Portfolio as of the last day of a Fiscal Period exceeds the Net Asset Value of the Company or, if applicable, Portfolio as of the first day of the same Fiscal Period;

"New Issue Securities"

any securities which are part of a public distribution under the Conduct Rules of the United States National Association of Securities Dealers, Inc. or any replacement to such rules;

"Non-qualified Person"

any person who holds or owns shares in breach of the restrictions contained in or imposed pursuant to Article 10(a) or in respect of whom any warranty required pursuant to Article 10 was not true when made or has ceased to be true;

"Offering Memorandum"

the current private placement memorandum, confidential memorandum, prospectus, or any other explanatory document setting forth, *inter alia*, the investment objectives of the Company, as may be amended or supplemented from time to time;

"officer"

includes a Director or a Secretary;

"Operational Currency"

in relation to each Class, such currency as the Directors may determine in accordance with Article 9 (a);

"Ordinary Resolution"

a resolution of a duly constituted general meeting of the Company passed by a simple majority of the votes cast by, or on behalf of, the Members entitled to vote present in person or by proxy and voting at the meeting and includes a unanimous written resolution of all Members entitled to vote expressed to be an ordinary resolution;

5

NAT001501
NATSAA00001501.1

"Ordinary Share"    a voting non-participating non-redeemable share of $0.01 par value in the capital of the Company having the rights provided for in these Articles.

"paid up"    means paid up as to the par value and any premium payable in respect of the issue of any shares and includes credited as paid up;

"Participation Percentage"    In respect of each Class, a percentage established for each Class on the Company's books as of the first day of each Fiscal Period.   The Participation Percentage of a Class for a Fiscal Period shall be determined by dividing the amount of the Record attributable to such Class as of the beginning of the Fiscal Period by the sum of the Records of all of the Classes relating to the same Portfolio as of the beginning of the Fiscal Period.   The sum of the Participation Percentage of all Classes relating to the same Portfolio for each Fiscal Period shall equal 100%;

in respect of each Sub-Class, a percentage established for each Sub-Class on the Company's books as of the first day of each Fiscal Period. The Participation Percentage of a Sub-Class for a Fiscal Period shall be determined by dividing the amount of the Record attributable to such Sub-Class as of the beginning of the Fiscal Period by the sum of the Records of all of the Sub-Classes of that Class as of the beginning of the Fiscal Period.  The sum of the Participation Percentage of all Sub-Classes of that Class for each Fiscal Period shall equal 100%;

in respect of each Series, a percentage established for each Series on the Company's books as of the first day of each Fiscal Period.  The Participation Percentage of a Series for a Fiscal Period shall be determined by dividing the amount of the Record attributable to such Series as of the beginning of the Fiscal Period by the sum of the Records of all of the Series of that Class or Sub-Class, as the case may be, as of the beginning of the Fiscal Period.  The sum of the Participation Percentage of all Series of that Class or Sub-Class, as the case may be, for each Fiscal Period shall equal 100%;

6

NAT001502
NATSAA00001502.1

"Performance Period"  the period of time by reference to which the incentive fee payable under the Investment Management Agreement in respect of any Class is calculated;

"Portfolio"  a portfolio of Investments held by the Company on behalf of a particular Class (or if applicable, particular Classes having identical investment objectives and investment strategies);

"Recognised Interest"  a security interest in shares recognised by the Company pursuant to Article 12(b);

"Record"  a separate record maintained in the books of the Company in respect of any Class, Sub-Class or Series of Participating Shares pursuant to Article 23;

"Redeemable Preferred Share"  a non-voting participating redeemable share of $0.01 par value (including a fraction of a Participating Share) in the capital of the Company having the rights set out in these Articles. Participating Shares shall be issued in Classes, Sub-Classes and Series and in these Articles the term "Redeemable Preferred Share" shall embrace all Classes, Sub-Classes and Series except when reference is made to a specific Class, Sub-Class or Series;

"Redemption Day"  subject to Article 28(b) and in respect of each Class, Sub-Class and/or any particular Participating Shares, such day or days as the Directors may from time to time determine either generally or in any particular case;

"Redemption Price"  the price at which Participating Shares shall be redeemed determined in accordance with Article 30(a);

"Redemption Request"  has the meaning ascribed thereto in Article 28(c);

"Register"  the register of Members required to be kept pursuant to the Law;

"Restricted Class"  any Class so designated by the Directors pursuant to Article 9;

7

NAT001503
NATSAA00001503.1

"Restricted Person"

any person who falls within the prohibition in Rule 2110, IM-2110-1 of the Conduct Rules of the U.S. National Association of Securities Dealers, Inc., as from time to time amended or supplemented (including any replacement rule) or who chooses not to participate in New Issue Securities;

"Seal"

the common seal of the Company including every duplicate seal;

"Secretary"

any person appointed by the Directors to perform any of the duties of the secretary of the Company, including a joint, assistant or deputy secretary;

"Series"

a series of any Class or Sub-Class (as the case may be) designated by the Directors pursuant to Article 9;

"Series One Shares"

Participating Shares of any Class or Sub-Class (as the case may be) so designated pursuant to Article 9;

"share"

a Ordinary Share or a Participating Share of any Class, Sub-Class or Series in the capital of the Company; and includes stock (except where a distinction between shares and stock is expressed or implied) and includes a fraction of a share;

"signed"

includes an electronic signature and a signature or a representation of a signature affixed by mechanical means;

"Special Resolution"

has the same meaning as in the Law and includes a unanimous written resolution of all Members entitled to vote expressed to be a special resolution;

"Sub-Class"

a sub-class of any Class of Participating Shares designated by the Directors pursuant to Article 9;

"Subscription Day"

in respect of each Class, Sub-Class and/or any particular Participating Shares, such day or days as the Directors may from time to time determine either in any particular case or generally;

8

NAT001504
NATSAA00001504.1

| | |
|---|---|
| "Subscription Price" | the price at which Participating Shares shall be issued determined in accordance with Articles 16 or 17 (as the case may be); |
| "subsidiary" | a company is a subsidiary of another company if that other company: |

    (a)    holds a majority of the voting rights in it; or

    (b)    is a member of it and has the right to appoint or remove a majority of its board of directors; or

    (c)    is a member of it and controls alone, pursuant to an agreement with other members, a majority of the voting rights in it; or

    if it is a subsidiary of a company which is itself a subsidiary of that other company. For the purpose of this definition the expression "company" includes any body corporate established in or outside of the Islands;

| | |
|---|---|
| "United States" | the United States of America (including each State therein and the District of Columbia), its territories and possessions and other areas subject to its jurisdiction; |
| "Unrestricted Class" | any Class so designated by the Directors pursuant to Article 9; |
| "Valuation Day" | in respect of each Class, Sub-Class or Series, such day or days as the Directors may from time to time determine either in any particular case or generally; and |
| "written" and "in writing" | includes all modes of representing or reproducing words in visible form including in the form of an electronic record; |

(b)    unless the context otherwise requires words or expressions defined in the Law shall have the same meanings herein but excluding any statutory modification thereof not in force when these Articles become binding on the Company;

9

NAT001505
NATSAA00001505.1

(c)    unless the context otherwise requires:

    (i)    words importing the singular number shall include the plural number and vice-versa;

    (ii)    words importing the masculine gender only shall include the feminine gender; and

    (iii)    words importing persons only shall include companies or associations or bodies of persons whether incorporated or not;

(d)    the word "may" shall be construed as permissive and the word "shall" shall be construed as imperative;

(e)    reference to a "dollar" or "dollars" (or "$") are references to dollars of the currency of the United States;

(f)    the headings herein are for convenience only and shall not affect the construction of these Articles;

(g)    references to statutes are, unless otherwise specified, references to statutes of the Islands and, subject to paragraph (b) above, include any statutory modification or re-enactment thereof for the time being in force; and

(h)    where an Ordinary Resolution is expressed to be required for any purpose, a Special Resolution is also effective for that purpose.

## Commencement of business

3.    The preliminary expenses incurred in the formation of the Company and the initial issue of Participating Shares shall be paid by the Company and may be amortised over such period as the Directors may determine and the amount so paid shall in the accounts of the Company be charged against income and/or capital as the Directors shall determine.

4.    (a)    The business of the Company may be commenced as soon after the incorporation of the Company as the Directors think fit, notwithstanding that only one or some of the shares may have been allotted.

    (b)    Any branch or kind of business which the Company is authorised, either expressly or by implication, to undertake may be undertaken by the Directors at such time or times as they shall think fit, and may be suffered by them to be in abeyance, whether or not such branch or kind of business may actually have been commenced, for so long as the Directors may deem it expedient not to commence or proceed with such branch or kind of business.

10

NAT001506
NATSAA00001506.1

**Situation of offices of the Company**

5. (a) The registered office of the Company shall be at such address in the Islands as the Directors shall from time to time determine.

   (b) The Company, in addition to its registered office, may establish and maintain such other offices, places of business and agencies in the Islands and elsewhere as the Directors may from time to time determine.

**Share capital**

6. (a) The authorised share capital of the Company is $5,000 divided into 100,000 Ordinary Shares and 400,000 Participating Shares.

   (b) Subject to these Articles, all shares for the time being unissued shall be under the control of the Directors who may issue, allot and dispose of or grant options over the same to such persons, on such terms and in such manner as they may think fit.

   (c) The Directors may in their absolute discretion refuse to accept any application for shares and may accept any application in whole or in part.

7. (a) Ordinary Shares shall only be issued at par value for cash and to such person or persons as the Directors may determine.

   (b) The holder of a Ordinary Share shall (in respect of such share) have the right to receive notice of, attend at and vote as a Member of any general meeting of the Company.

   (c) Ordinary Shares shall confer upon the holder thereof rights in a winding up in accordance with the provisions of these Articles but shall confer no other right to participate in the profits or assets of the Company.

8. (a) The holder of a Participating Share shall (in respect of such share) not have the right to receive notice of, attend at and vote as a Member of any general meeting of the Company except on a modification of rights issue as provided in these Articles.

   (b) Participating Shares shall be:

      (i) redeemable at the option of the holders thereof;

      (ii) entitled to any dividends declared by the Company; and

      (iii) shall confer upon the holders thereof rights in a winding-up:

11

NAT001507
NATSAA00001507.1

all in accordance with the provisions of these Articles.

9.    (a)    Before the allotment of any Participating Share, the Directors:

(i)    shall designate the Class to which such Participating Share shall belong, the Operational Currency of such Class, if applicable, the Portfolio into which the subscription proceeds of Participating Shares of such Class shall be invested, and in the case of the first issue of Participating Shares of any Class, whether that Class shall be a Restricted Class or an Unrestricted Class, so that:

(1)    all Participating Shares allotted to persons who are not Restricted Persons shall be of an Unrestricted Class; and

(2)    all Participating Shares allotted to Restricted Persons shall be of a Restricted Class.

On the designation of any Class, the Directors, or any duly authorised agent of the Company, shall determine the manner in which Participating Shares of such Class shall differ from Participating Shares of any other Class including, without limitation, as to the amount of fees payable to the Investment Manager to be charged against Participating Shares of such Class and any variation of terms made pursuant to Article 46;

(ii)    on the first issue of any Participating Shares of any Class, may, in their sole discretion, divide such Class into Sub-Classes. Once the Directors have determined that a Class shall be divided into Sub-Classes, further Sub-Classes may be created following the first issue of Participating Shares of that Class. On the designation of any Sub-Class, the Directors or any authorised agent of the Company, may, pursuant to Article 46, agree to vary certain terms generally applicable to holders of Participating Shares of the Class from which the Sub-Class is designated.

(iii)    in respect of the first issue of Participating Shares of any Class or Sub-Class (as the case may be), shall determine whether Participating Shares of that Class or Sub-Class (as the case may be) will be issued in Series, and if so, such Participating Shares shall be designated Series One Shares of the relevant Class or Sub-Class (as the case may be); and

(iv)    in respect of the issue of any Class or Sub-Class (as the case may be) for which Series One Shares have been issued, shall designate the Series to which such Participating Share will belong, provided that all Participating Shares of an existing Class or Sub-Class (which have been issued in Series) to be issued on the first Subscription Day in each Performance Period (unless there exists a Loss Carryforward per Share in respect of the

12

NAT001508
NATSAA00001508.1

relevant Series One Shares) shall be designated Series One Shares of the relevant Class or Sub-Class (as the case may be). If on the first Subscription Day in a Performance Period there exists a Loss Carryforward in respect of the Series One Shares of a particular Class or Sub-Class (as the case may be), all Participating Shares of that Class or Sub-Class (as the case may be) issued on such Subscription Day shall be designated as belonging to the first Series of the applicable Class or Sub-Class (as the case may be) that is not subject to a Loss Carryforward and if all Series are subject to a Loss Carryforward, a new Series shall be designated. All subsequent Series shall be sequentially numbered.

(b)    (i)    Any of the foregoing designations made by or on behalf of the Directors may, before the allotment of a Participating Share, be cancelled by subsequent resolution of the Directors and such Participating Share shall after such cancellation be available for allotment and issue as a part of any other Class, Sub-Class or Series of Participating Shares, and subject to the foregoing may be subsequently redesignated in like manner.

       (ii)    Any issued Participating Shares of a Class may, from time to time, be redesignated by a resolution of the Directors provided that:

            (1)    all issued Participating Shares of the same Class are so redesignated;

            (2)    except for the change of designation of the Class, the designations of the Sub-Classes or Series within such Class shall not be affected; and

            (3)    no terms (except the then current designation) or rights attaching to any such Participating Shares shall be affected by such redesignation.

(c)    The different Classes, Sub-Classes and Series of Participating Shares, confer upon the holders the same rights and rank *pari passu* in all respects, except as otherwise provided in these Articles.

10.    (a)    The Directors may impose such restrictions and require such warranties as they consider necessary or desirable for the purpose of ensuring that no Participating Shares are held by or for the benefit of (i) any person in breach of the law or requirements of any country or governmental authority; (ii) any person who has given representations in a subscription agreement and revocable proxy which were not true when given or have ceased to be true; or (iii) any person or persons in circumstances (whether directly or indirectly affecting such person or persons and whether taken alone or in conjunction with any other person or persons, connected or not, or any other circumstances appearing to the Directors to be relevant) in

13

NAT001509
NATSAA00001509.1

which in the opinion of the Directors the continuing ownership of Participating Shares by such person or persons would cause an undue risk of adverse tax or other consequences to the Company, any Master Fund or any of the Members.

(b)    A holder of Participating Shares shall, upon becoming aware that he is, or is holding Participating Shares for the benefit of, a Non-qualified Person, promptly either deliver to the Company a written request for the redemption of the Participating Shares so held by him in accordance with these Articles or transfer the same to a person who is not, and would not thereby be, a Non-qualified Person.

(c)    If it shall come to the attention of the Directors that any Participating Shares are held by or for the benefit of a Non-qualified Person, the Directors may by written notice require redemption or transfer in accordance with these Articles of the Participating Shares so held.

11.    The Company may on any issue of Participating Shares pay such brokerage, underwriting, sales or commission charges as may be lawful.

12.    (a)    No person shall be recognised by the Company as holding any Participating Share upon any trust, and the Company shall not be bound by or recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any Participating Share, or (save only as by these Articles otherwise provided or as by law required) any other right in respect of any Participating Share except an absolute right thereto in the registered holder.

(b)    Notwithstanding Article 12(a), the Company may (but shall not be obliged to) recognise a security interest of which it has actual notice over Participating Shares. The Company shall not be treated as having recognised any such security interest unless it has so agreed in writing with the secured party.

13.    The Directors shall keep or cause to be kept a Register as required by Section 42 of the Law.

14.    The Directors in each year shall prepare or cause to be prepared an annual return and declaration setting forth the particulars required by Section 187 of the Law and deliver a copy thereof to the Registrar of Companies.

### Issue of Participating Shares

15.    Subject as hereinafter provided, on receipt by the Company or its authorised agent of:-

(a)    an application in writing (unless the Directors shall otherwise agree) in such form as the Directors may from time to time determine; and

14

NAT001510
NATSAA00001510.1

(b)    such information as the Directors may from time to time require;

the Company may, on such day or days as the Directors may determine, make the initial issue of Participating Shares of any Class, Sub-Class or Series at the Subscription Price per Participating Share determined in accordance with Article 16 hereof or, subsequent to the initial issue of Participating Shares of any Class, Sub-Class or Series on any Subscription Day allot and issue Participating Shares of that Class, Sub-Class or Series at a Subscription Price per Participating Share determined in accordance with Article 17 hereof.

16.    The terms upon which and the price at which the first issue of Participating Shares of each Class, Sub-Class and Series shall be effected and the time of such issue shall be determined by the Directors.

17.    (a)    Subject as hereinafter provided, after the Initial Offering Period, further Participating Shares of any existing Class, Sub-Class or Series may be issued on any Subscription Day and shall be issued at a Subscription Price per Participating Share of not less than the total of:

(i)    an amount equal to the nominal value of a Participating Share; and

(ii)    a premium calculated by deducting from the Net Asset Value per Share of a Participating Share of the relevant Class, Sub-Class or Series on the applicable Valuation Day, the nominal value of a Participating Share and rounding the amount so obtained up or down to the nearest convenient unit of the Operational Currency of the Class concerned.

(b)    The Directors may, in their absolute discretion, allot and issue Participating Shares of any Class, Sub-Class or Series against the vesting in the Company of any Investments or other property of whatsoever nature and wheresoever situate provided that the Directors shall be satisfied that the terms of any such exchange shall not be such as are likely to result in any material prejudice to existing Members, and in connection therewith the following provisions shall apply:-

(i)    the number of Participating Shares to be issued shall be not more than that number which would have fallen to be issued for cash as hereinbefore in this Article provided on the day of issue against the payment of a sum equal to the value of the Investments or other property, as the case may be, so vested in the Company;

(ii)    the Directors may provide that the whole or any part of expenses arising in connection with the vesting of the Investments or other property in the Company shall be paid by the Company or by the person to whom the Participating Shares are to be issued or partly by the Company and partly by such person; and

15

NAT001511

NATSAA00001511.1

(iii) the value of the Investments or other property to be vested in the Company shall be determined by the Directors on the basis of the principles related to the determination of Net Asset Value provided in these Articles.

(c) The Directors may require an applicant for any Participating Shares to pay to the Company or the Investment Manager or introducing brokers, placement agents or any such other specified persons, or to the Company for the benefit of the Investment Manager or introducing brokers, placement agents or any other specified persons, such sales charge or placement or underwriting fee as the Directors may determine from time to time in respect of (if applicable) the relevant Class, Sub-Class or Series. The Directors may differentiate, in their absolute discretion, between applicants as to the amount of such sales charges.

(d) No issue shall be made pursuant to Article 15 above in respect of an application for either a number of Participating Shares less than such number as the Directors shall from time to time determine or for Participating Shares having a value by reference to their Subscription Price of less than such amount as the Directors may from time to time determine.

(e) Subject to paragraph (b) above, Participating Shares shall be issued only upon payment in full of the Subscription Price in respect thereof in the relevant Operational Currency or in such other currency or currencies as the Directors may determine to be appropriate either generally or in relation to a particular Class or in any specific case.

(f) Where subscription monies (or Investments to be vested in the Company pursuant to paragraph (b) above) will not produce an exact number of Participating Shares, the Company may issue fractions of Participating Shares and, save as otherwise herein provided, any such fraction of a Participating Share shall be subject to and carry the corresponding fraction of liabilities (whether with respect to nominal or par value, premium, contribution or otherwise howsoever), limitations, preferences, privileges, qualifications, restrictions, rights or other attributes of a whole Participating Share of the relevant Class, Sub-Class or Series.

18. The premium arising on all such issues of Participating Shares shall be dealt with in accordance with Article 134 hereof.

19. No Participating Shares of any Class, Sub-Class or Series shall be issued during any period when the determination of the Net Asset Value per Share of the relevant Class, Sub-Class or Series is suspended pursuant to Article 25.

20. The prohibition in Article 19 shall not apply in relation to the applications for Participating Shares which shall have been received and accepted by the Company before the commencement of the period mentioned in that Article.

16

NAT001512
NATSAA00001512.1

21. The Company may decline to allot Participating Shares to satisfy any application unless cleared funds in payment of the Subscription Price (or Investments to be vested in the Company pursuant to Article 17(b) above) and any charges imposed pursuant to Article 17(c) above have been received by the Company by close of business on the Valuation Day immediately preceding the relevant Subscription Day or by such earlier time as the Directors may in their absolute discretion determine.

22. Payment for Participating Shares shall be made at such time and place and to such person on behalf of the Company as the Directors may from time to time determine.

### Records

23. The Directors shall establish in the books of the Company a separate Record for each Class, Sub-Class and Series of Participating Shares, and the following provisions shall apply thereto:

    (a)    the proceeds from the allotment and issue of each Class, Sub-Class and Series of Participating Shares shall be applied in the books of the Company to the Record established for that Class, Sub-Class and Series of Participating Shares and assets required to satisfy any redemption of Participating Shares or paid as dividends, shall be accounted for out of the relevant Record;

    (b)    as of the last day of each Fiscal Period any Net Profit or Net Loss for the Fiscal Period shall be allocated among and credited to or debited against the Records of firstly, the Classes, secondly the Sub-Classes and thirdly the Series in proportion to their respective Participation Percentages for that Fiscal Period provided, however, that if there are assets and liabilities which relate solely to New Issue Securities, the Directors will allocate such assets and liabilities solely to the Record(s) for the relevant Unrestricted Class(es);

    (c)    any New Issue Securities held by the Company (directly or through any Master Fund) shall be credited to the Records established for the Unrestricted Class(es). At any time when the Company has invested in New Issue Securities, there may, in the absolute discretion of the Directors, be debited in the case of the Records for the Unrestricted Class(es) which have been credited with such New Issue Securities and credited to all Records, interest on the amount invested in New Issue Securities at such rate as the Directors may, in their absolute discretion, determine during the period that the Company holds such New Issue Securities;

    (d)    the increase (or decrease) in net worth of the Company resulting from the investment in New Issue Securities by the Company (directly or through any Master Fund) shall be credited (or debited) to the net asset value of the Records maintained in respect of the Unrestricted Class(es);

17

NAT001513
NATSAA00001513.1

(e)    at such times as it is determined that a particular Investment is no longer a New Issue Security, the Directors may, to the extent permissible, make such adjustments as they may think to the Records so that such Investment is held for the benefit of all the Participating Shares;

(f)    if any assets of the Company are used for currency hedging in relation to a particular Class, the Directors may in their absolute discretion deduct the cost of such hedging from the Record of such Class and the assets and liabilities and income and expenditure attributable thereto shall be applied to such Record;

(g)    where any event takes place which may affect the proportion of the Net Profit and Net Loss attributable to a Record, the Directors may make such adjustment to the allocation made pursuant to this Article 23 as they deem appropriate to ensure that any Net Profit or Net Loss of the Company is properly and fairly attributable to the Records; and

(h)    in the case of any asset or liability (including any expense) of the Company which the Directors do not consider is attributable to a particular Record, the Directors shall allocate such asset or liability among the Records in proportion to respective Participation Percentages of each Class, Sub-Class and Series.

**Determination of Net Asset Value per Share**

24.    (a)    Net Asset Value of the Company shall be determined as at close of business on each Valuation Day. The calculation shall be made in accordance with the provisions of this Article 24 by adding the value of all the assets of the Company and deducting therefrom the total liabilities of the Company. The Net Asset Value of a Class, Sub-Class or Series will then be calculated by adding the value of all the assets attributable to the relevant Record and deducting therefrom the total liabilities attributable to such Record. The Net Asset Value per Share will be calculated by dividing the Net Asset Value of a Class, Sub-Class or Series by the number of Participating Shares of the relevant Class, Sub-Class or Series in issue and deemed to be in issue on such Valuation Day.

(b)    For the purposes of this Article:

(i)    Participating Shares for which application has been made shall be deemed to be in issue and the full Subscription Price to have been received at the beginning of the Subscription Day on which they are issued; and

(ii)    Participating Shares to be redeemed pursuant to Articles 28 to 30 shall be deemed to remain in issue until and including the close of business on the Redemption Day on which they are to be redeemed, and from that time until paid the Redemption Price shall be deemed to be a liability of the Company.

18

NAT001514
NATSAA00001514.1

(c)     For the purposes of this Article the net assets of the Company shall be determined (except for amortisation of organisational costs) on the accrual basis of accounting using United States generally accepted accounting principles or International Accounting Standards (as the Directors shall in their absolute discretion determine) and in accordance with the following:

(i)     the assets of the Company shall be deemed to include, without limitation, (1) all cash on hand or on deposit, including any interest accrued thereon, (2) all bills and demand notes and accounts receivable (including proceeds of Investments and other assets sold but not delivered), (3) all Investments and other assets owned or contracted for by the Company, (4) the Company's interest in any Master Fund, (5) all dividends and distributions payable in stock, cash or other property receivable by the Company, provided that the Company may make adjustments with respect to fluctuations in the market value of Investments caused by trading ex-dividend or ex-rights or by similar practices, (6) all interest accrued on any interest-bearing instruments owned by the Company, except to the extent that the same is included or reflected in the valuation of such instruments, and (7) all other assets of every kind and nature, including prepaid expenses (it being understood that goodwill shall be deemed to have no value) and excluding an amount equal to the aggregate nominal amount paid on the Ordinary Shares in issue;

(ii)    the liabilities of the Company shall be deemed to include, without limitation, (1) all loans, bills and accounts payable, (2) all accrued or payable expenses and fees chargeable to the Company including dividends declared but unpaid (provided that expenses of a regular or recurring nature may be calculated on an estimated figure for yearly or other periods in advance and accrued over any such period) and accrued fees payable to the Investment Manager, (3) gross acquisition cost of Investments and other property contracted to be purchased, (4) such sum (if any) as the Directors consider appropriate to allow for brokerage, stamp duty and any other governmental tax or charges, (5) dividends declared on Participating Shares of any Class, Sub-Class or Series, but not yet paid, and (6) all other liabilities, including unknown or unfixed contingencies, preliminary expenses incurred in or about the formation and establishment of the Company (apportioned in accordance with Article 3) and such reserves as the Directors may reasonably deem advisable.  In the event any liability is not payable until some future time after the Valuation Date, the Directors may from time to time make such allowance as is considered appropriate to reflect the true current value thereof; and

(iii)   the value of the Company's holdings of Investments shall be as the Directors shall from time to time determine, in accordance with the valuation methodology set out in the Offering Memorandum.

19

NAT001515
NATSAA00001515.1

(d)    Without prejudice to their general powers to delegate their functions, the Directors may delegate any of their functions in relation to the calculation of Net Asset Value per Share to any other person. In the absence of bad faith or manifest error, all valuations of the Company's assets and liabilities made by the Directors (or their delegate) pursuant to this Article shall be final and conclusive as between the Company and the Members.

(e)    Where for the purposes of these Articles or for any other purpose any amount in one currency is required to be converted into another currency, the Directors may effect such conversion using such rate of exchange as they consider appropriate, in their absolute discretion.

(f)    In determining Net Asset Value per Share, the Directors may consult with and rely upon, without independent investigation, the advice of the Investment Manager, the Administrator, the Company's brokers or investment advisers or the custodian. In no event and under no circumstances will the Directors, the Investment Manager, the Administrator, the Company's brokers, custodians or investment advisers incur any individual liability or responsibility for any determination made or other action taken or omitted by them in good faith.

### Suspension of determination of Net Asset Value per Share

25.    The Directors, in their absolute discretion, may declare a suspension of the determination of Net Asset Value per Share of any Class and the issue and redemption of Participating Shares of such Class in such circumstances as they deem appropriate. These circumstances include, but shall not be limited to, such circumstances as may be set out in the Offering Memorandum.

26.    Any such suspension shall take effect at such time as the Directors shall declare but not later than the close of business on the Business Day next following the declaration and thereafter there shall be no determination of Net Asset Value per Share of the affected Class until the Directors shall declare the suspension to be at an end.

27.    Whenever the Directors shall declare a suspension of the determination of the Net Asset Value per Share under the provisions of Article 25, then as soon as may be practicable after any such declaration the Directors shall cause a notice (in such manner as they may determine) to be given to the holders of the Participating Shares of the affected Class stating that such declaration has been made, and at the end of any period of suspension the Directors shall cause another notice to be given to the holders of Participating Shares stating that the period of suspension has ended.

20

NAT001516
NATSAA00001516.1

### Redemption of Participating Shares

28.   (a)    Subject to the provisions of the Law and these Articles a Member may request the Company to redeem all or some only of his Participating Shares as of any Redemption Day in accordance with the following provisions of this Article. If a Member redeeming Participating Shares has subscribed for Participating Shares at different times and is not redeeming all of his Participating Shares, those Participating Shares which have been in issue for the longest period of time will be redeemed first.

      (b)    The Directors may in their absolute discretion, prescribe an initial period or periods from the date of issue of Participating Shares during which the redemption of Participating Shares of any Class is not permitted. Any such restriction on redemptions may be prescribed, waived or modified by the Directors in their absolute discretion generally or in respect of any group of Members or a specific Member.

      (c)    Any request made pursuant to paragraph (a) above (a "Redemption Request") shall be in writing, shall specify the number of Participating Shares (and the Class, Sub-Class and Series) to which it relates or indicate the manner in which the number of Participating Shares to be redeemed is to be determined and shall be signed by the holder thereof (or, in the case of joint holders, by all such joint holders).

      (d)    Unless the Directors otherwise determine in their absolute discretion, a Redemption Request shall not be satisfied where such Redemption Request relates to (i) a number of Participating Shares less than such number as the Directors shall from time to time determine, or (ii) Participating Shares having an aggregate value by reference to their Net Asset Value per Share of less than such amount as the Directors may from time to time determine.

      (e)    If a Redemption Request is received from a Member which would, if satisfied, result in such Member holding (i) a number of Participating Shares less than such number as the Directors shall from time to time determine, or (ii) Participating Shares whose aggregate value by reference to their Net Asset Value per Share is less than such amount as the Directors may from time to time determine, the Directors may in their absolute discretion treat such Redemption Request as a request for the entire holding of such Member or as a request for a partial redemption only up to such minimum holding amount and the Company may thereupon effect the redemption of such Participating Shares whether or not the Company shall have received certificate(s) in respect of such Participating Shares.

      (f)    A Redemption Request and any certificate(s) representing the Participating Shares to which it relates must be lodged with the Company or its authorised agent at such time and place before the Redemption Day for which the redemption is requested as the Directors shall from time to time determine in respect of each Class, Sub-Class

21

NAT001517
NATSAA00001517.1

or Series and if they are not so received the redemption shall be effected on the next following Redemption Day provided always that the Directors shall, where a certificate has not been issued, and otherwise may at their option dispense with production of any certificate which shall have become lost or destroyed, in the latter case upon compliance by the holder with the like requirements for replacement of a lost or destroyed certificate under Article 45.

(g)     Redemption Requests may be submitted by telefax to the Company or its authorised agent provided that the original signed Redemption Request is received by the Company or its authorised agent before the relevant Redemption Day. The Company, its Directors and agents may rely upon any Redemption Request believed by them in good faith to be genuine.

(h)     A Redemption Request, once given, may only be withdrawn with the consent of the Directors, following consultation with the Investment Manager.

(i)     The right of redemption of any Class, Sub-Class or Series of Participating Shares shall be suspended during any period when the determination of Net Asset Value per Share of the relevant Class, Sub-Class or Series is suspended pursuant to Article 25.

29.   (a)     The Directors may at any time by notice in writing to any Non-qualified Person compulsorily redeem all or any of the Participating Shares held by such person upon a day which shall be not less than, nor more than, such number of days as the Directors may from time to time determine, as set out in the Offering Memorandum, from the date of such notice. Upon such day, such Participating Shares shall be redeemed in all respects as if the holder thereof had submitted a Redemption Request pursuant to Article 28(c) whether or not the Company shall have received any certificate(s) in respect of such Participating Shares.

(b)     The Directors, in their absolute discretion, with or without cause, may at any time by notice in writing to any Member compulsorily redeem all or any of a Member's Participating Shares on any Redemption Day which shall be not less than such number of days as the Directors may from time to time determine, as set out in the Offering Memorandum from the date of the notice. Upon such day, such Participating Shares shall be redeemed in all respects as if the holder thereof had submitted a Redemption Request pursuant to Article 28(c) whether or not the Company shall have received any certificate(s) in respect of such Participating Shares.

(c)     The Directors may at any time redeem Participating Shares to effect a conversion in the manner described in Article 31.

(d)     Any restrictions on redemption imposed pursuant to Article 28(b) shall not apply to any redemption of Participating Shares made pursuant to this Article 29.

22

NAT001518
NATSAA00001518.1

(e)    All costs incurred in a compulsory redemption of Participating Shares shall be for the account of the Member thereof and may be deducted from the proceeds of the redemption.

(f)    The Directors shall have no responsibility in effecting a compulsory redemption of Participating Shares other than the responsibility of acting in good faith.

(g)    The procedure for determining which Participating Shares will be compulsorily redeemed in any particular case is subject to change at the discretion of the Directors. In exercising discretion and in making determinations as to whether to compulsorily redeem Participating Shares, and in determining which Members shall be subject to compulsory redemption, the Directors may act upon the basis of such information as may be known to them, without any obligation to make special enquiries, and may rely upon the advice of counsel. In no event shall the Company be liable to any Member for any consequence of any determination made by the Directors with respect to such compulsory redemption.

30.    The following provisions shall apply to all redemptions of Participating Shares:

(a)    The Redemption Price for each Participating Share shall be the total of:

    (i)    an amount equal to the nominal value of a Participating Share; and

    (ii)    a premium equal to an amount calculated by deducting from the Net Asset Value per Share of a Participating Share of the relevant Class, Sub-Class or Series on the relevant Redemption Day the nominal value of a Participating Share and rounding the amount so obtained up or down to the nearest convenient unit of the Operational Currency of the Class concerned.

(b)    The nominal value of Participating Shares shall be redeemed out of the proceeds arising from the issue of an equal number of Participating Shares and the premium (if any) on such Participating Shares shall be paid from the relevant share premium account provided always that at the discretion of the Directors such Participating Shares may be redeemed out of the profits of the Company which would otherwise have been available for dividend and any premiums thereon may be paid out of the profits of the Company or, if permitted by the Law, out of capital.

(c)    The Directors may, if appropriate disclosure has been made in the Offering Memorandum or the relevant Member has otherwise agreed, levy a charge of such amount as they may from time to time determine on the redemption of Participating Shares of any Class, Sub-Class or Series which are redeemed within such periods of the date of issue or in such other circumstances as the Directors may from time to time determine and the amount of such charge shall be deducted from the relevant Redemption Price. Such charge may be waived by the Directors in their absolute

23

NAT001519
NATSAA00001519.1

discretion generally or in respect of a specific Member. Such charge may be paid to the Company or to such other person as the Directors may determine.

(d)     Subject to the provisions of paragraph (g) below payment of the Redemption Price shall be made in such manner as the Directors may from time to time determine in respect of each Class, Sub-Class and Series, as set out in the Offering Memorandum. If any Participating Shares are redeemed pursuant to Articles 28 and 29 without provision by the Member of appropriate payment instructions, the Directors may deposit in a separate bank account the aggregate Redemption Price of all Participating Shares held by the Member which are so redeemed. Upon such deposit the person whose Participating Shares have been so redeemed shall have no interest in or claim against the Company or its assets except the right to receive (subject to Article 30(g) below) the moneys so deposited (without interest).

(e)     Payment of the Redemption Price may be subject to the retention of a reserve for the Company's liabilities and for other contingencies in such amount as may be determined by the Directors in their absolute discretion. If the reserve (or a portion thereof) is later determined to have been in excess of the amount required, the excess (or relevant proportion thereof) shall be returned to the redeemed Member with interest thereon from the date of redemption to the date of payment at such rate as the Directors shall, in their absolute discretion, determine.

(f)     Payment of the Redemption Price may, at the absolute discretion of the Directors, be satisfied in whole or in part by the transfer of assets of the Company provided that the Company shall transfer to a redeeming Member that proportion of the assets of the Company which is then equivalent in value to the Redemption Price of the Participating Shares to be redeemed (or such redeemed part thereof which is being so satisfied).

(g)     Notwithstanding any other provisions of these Articles, the Company may, in the absolute discretion of the Directors, refuse to make a redemption payment to a Member if the Directors suspect or are advised that the payment of any redemption proceeds to such Member may result in a breach or violation of any applicable laws or regulations (including, without limitation, any anti-money laundering or anti-terrorism laws and regulations) by the Company or any other person in any relevant jurisdiction, or such refusal is necessary to ensure the compliance by the Company, its Directors or the Administrator with any such applicable law or regulation in any relevant jurisdiction. In such circumstances, and until otherwise instructed by the relevant authority, the Directors may deposit such redemption proceeds in a separate bank account. If the Directors are given permission to pay out such redemption proceeds to the relevant Member, such Member's only right against the Company shall be the right to receive the moneys so deposited (without interest).

(h)     Upon the date of redemption of a Participating Share, the holder shall cease to be entitled to any rights in respect thereof (except for the right to receive (i) the

24

NAT001520
NATSAA00001520.1

Redemption Price therefor and (ii) any dividend which had been declared in respect thereof before such redemption being effected) and accordingly his name shall be removed from the Register with respect thereto and the Participating Share shall be cancelled.

### Conversion of Participating Shares

31.    Subject to the provisions of the Law and these Articles and to any restrictions imposed by the Directors pursuant to Article 10:

(a)    immediately after the close of business on the last day in each Performance Period, all Participating Shares of each Class or Sub-Class (as the case may be) issued in Series, other than (1) Series One Shares of that Class or Sub-Class (as the case may be) and (2) any Series of Participating Shares of that Class or Sub-Class (as the case may be) in respect of which there exists a Loss Carryforward, shall be converted into Series One Shares of that Class or Sub-Class (as the case may be) unless there is a Loss Carryforward in respect of such Series One Shares in which case all Participating Shares (other than those referred to in (1) and (2)) will be converted into Participating Shares of the first Series of the relevant Class or Sub-Class (as the case may be) which are not subject to a Loss Carryforward;

(b)    a holder of Participating Shares of a Restricted Class who is not, or who has ceased to be a Restricted Person, may submit a written request that all or any of his Participating Shares of a Restricted Class be converted into Participating Shares of an Unrestricted Class with equivalent offering terms as determined by the Directors in their absolute discretion. Upon receipt of proof satisfactory to the Directors that such Member has ceased to be a Restricted Person, the Directors shall on the next succeeding Redemption Day convert all of the Participating Shares of a Restricted Class of such Member into Participating Shares of an Unrestricted Class with equivalent offering terms as determined by the Directors in their absolute discretion;

(c)    the Directors may at any time in writing require a holder of Participating Shares of an Unrestricted Class to provide, within such number of days as the Directors shall in their absolute discretion determine of receipt of such notification, acceptable evidence that such Member is not a Restricted Person. If such Member does not respond or does not provide evidence acceptable to the Directors within such time period, the Directors shall convert on the next succeeding Redemption Day all of the Participating Shares of an Unrestricted Class of such Member into Participating Shares of a Restricted Class with equivalent offering terms as determined by the Directors in their absolute discretion;

(d)    a holder of Participating Shares of a Restricted Class may at any time submit a written request to the Company that all or any of his Participating Shares be converted into Participating Shares of a different Class also being a Restricted

25

NAT001521
NATSAA00001521.1

Class (if any exists), and a holder of Participating Shares of an Unrestricted Class may at any time submit a written request to the Company that all or any of his Participating Shares be converted into Participating Shares of a different Class also being an Unrestricted Class (if any exists), and in each case the Directors may in their absolute discretion refuse any such request and may accept any such request in whole or in part;

(e)  (i)  any conversion effected pursuant to this Article shall be treated as a simultaneous redemption of the relevant Participating Shares (the "Old Shares") and application of the proceeds of such redemption to the purchase of the relevant Participating Shares (the "New Shares");

(ii)  for the purposes of this Article, the relevant Redemption Day shall be a Valuation Day for the purpose of calculating the Redemption Price of the Old Shares and the Subscription Price of the New Shares; and

(iii)  the conversion of Old Shares for New Shares shall in all other respects be treated as a redemption to which the provisions of Article 30 (other than paragraphs (d) to (h) thereof) shall apply (whether or not the Company shall have received any certificate(s) in respect of such Participating Shares), the Redemption Price being satisfied by the issue of Participating Shares, to which the provisions of Articles 9 and 15 shall apply.

### Transfer of shares

32.  The instrument of transfer of a share may be in any usual form or in any other form which the Directors may approve and shall be executed by or on behalf of the transferor.

33.  The Directors may, in their absolute discretion and without giving any reason, refuse to register the transfer of a share to any person.

34.  The Directors shall decline to register any transfer of a share:

(a)  to or for the benefit of a person who is or would, upon registration, be a Non-qualified Person; or

(b)  of an Unrestricted Class to a Restricted Person; or

(c)  if the instrument of transfer relates to more than one class of shares.

35.  Notwithstanding Article 33 above, the Directors shall not, without the consent of the secured party, register any transfer of shares which are the subject of a Recognised Interest if such transfer appears to the Directors to be inconsistent with the terms of such Recognised Interest, and, subject to the provisions of Article 34, shall register any transfer

26

NAT001522
NATSAA00001522.1

of shares which are the subject of Recognised Interest upon enforcement by the secured party of such Recognised Interest.

36. The Directors may require the Investment Manager or any other service provider whose service contract with the Company has been properly terminated (the "Obligated Transferor") to transfer such Ordinary Share as he holds to such other person (the "Transferee") as the Directors shall nominate at the par value for that Ordinary Share. If within a period of twenty one days after being required to transfer such Ordinary Share the Obligated Transferor fails to present for registration a signed instrument of transfer the Directors may authorise some person to sign an instrument of transfer on behalf of the Obligated Transferor in favour of the Transferee and shall cause the name of the Transferee to be entered on the Register of Members as the holder of the Ordinary Share. After the Transferee's name is entered on the Register of Members the validity of such transfer shall not be questioned by any person.

37. If the Directors refuse to register a transfer of a share, they shall within two (2) months after the date on which the transfer was lodged with the Company send to the transferee notice of the refusal.

38. The registration of transfers of shares generally or of shares of any class may be suspended at such times and for such periods (not exceeding thirty (30) days in any year) as the Directors may determine.

39. No fee shall be charged for the registration of any instrument of transfer or other document relating to or affecting the title to any share.

40. The Company shall be entitled to retain any instrument of transfer which is registered, but any instrument of transfer which the Directors refuse to register shall be returned to the person lodging it when notice of the refusal is given.

**Transmission of shares**

41. If a Member dies the survivor or survivors where he was a joint holder, and his personal representatives where he was a sole holder or the only survivor of joint holders shall be the only persons recognised by the Company as having any title to his interest; but nothing in the Articles shall release the estate of a deceased Member from any liability in respect of any share which had been jointly held by him.

42. A person becoming entitled to a share in consequence of the death or bankruptcy of a Member may, upon such evidence being produced as the Directors may properly require, elect either to become the holder of the share or to have some person nominated by him registered as the transferee. If he elects to become the holder he shall give notice to the Company to that effect. If he elects to have another person registered he shall execute an instrument of transfer of the share to that person. All the Articles relating to the transfer of shares shall apply to the notice or instrument of transfer as if it were an instrument of

27

NAT001523
NATSAA00001523.1

transfer executed by the Member and the death or bankruptcy of the Member had not occurred.

43.     A person becoming entitled to a share by reason of the death or bankruptcy of a Member shall have the rights to which he would be entitled if he were the holder of the share, except that he shall not, before being registered as the holder of the share, be entitled in respect of it to attend or vote at any meeting of the Company or at any separate meeting of the holders of any class of shares in the Company.

### Share certificates

44.     Every person, upon becoming the holder of any shares, shall, if he can demonstrate to the Directors or any authorised agent of the Company that he is legally required to hold certificated shares, or if the Directors otherwise permit, be entitled without payment to one (1) certificate for all the shares of each class held by him (and, upon transferring a part of his holding of shares of any class to a certificate for the balance of such holding) or several certificates each for one (1) or more of his shares upon payment for every certificate after the first of such reasonable sum as the Directors may determine. Every certificate shall specify the number, class and distinguishing numbers (if any) of the shares to which it relates and the amount or respective amounts paid up thereon. A certificate may be sealed with the Seal or executed in such other manner as the Directors may prescribe. The Company shall not be bound to issue more than one (1) certificate for shares held jointly by several persons and delivery of a certificate for a share to one (1) joint holder shall be a sufficient delivery to all of them.

45.     If a share certificate is defaced, worn-out, lost or destroyed, it may be renewed on such terms (if any) as to evidence and indemnity and payment of the expenses reasonably incurred by the Company in investigating evidence as the Directors may determine but otherwise free of charge, and (in the case of defacement or wearing-out) on delivery to the Company of the old certificate.

### Variation of terms

46.     Notwithstanding any other provision of these Articles, the Company (acting through the Directors or any duly authorised agent) may enter into a written agreement with a prospective Member providing for fees and redemption rights on terms that vary from those applicable to other Members and the general terms of redemption specified in these Articles and the Company may determine to issue a separate Class or Sub-Class of Participating Shares to such Member.

### Modification of rights

47.     Subject to Article 48, the rights attached to any Class of Participating Shares may be varied or abrogated either whilst the Company is a going concern or during or in

28

NAT001524
NATSAA00001524.1

contemplation of a winding up, with the consent in writing of two thirds of the Members affected by the proposed variation or abrogation of rights or with the sanction of a resolution of such Members holding not less than two thirds of the Participating Shares of the relevant Class present in person or by proxy at a separate general meeting of the Members holding Participating Shares of that Class but not otherwise. For such purposes the Directors may treat all Classes of Participating Shares as forming one Class, if they consider that they would all be affected in the same way by the proposals under consideration and that there would be no conflict of interest between them, but in any other case shall treat them as separate Classes, as the case may be. To every such separate meeting all the provisions of these Articles relating to general meetings of the Company or to the proceedings thereat shall, *mutatis mutandis*, apply except that the necessary quorum shall be one person holding or representing by proxy at least one-third in nominal amount of the issued Participating Shares of the Class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those holders who are present shall be a quorum) and that every holder of Participating Shares of the Class shall on a poll have one vote for each Participating Share of the Class held by him.

48.    (a)    The rights conferred upon the holders of the Participating Shares shall be deemed to be varied by the creation or issue of any Participating Shares ranking ahead of the Participating Shares with regard to participation in the profits or assets of the Company. A Class, Sub-Class or Series to which different levels of fees are payable to the Investment Manager or different redemption rights apply (including the imposition of, absence of, or different level of, a redemption fee) shall not be deemed to rank in priority to any other Class, Sub-Class or Series as regards shareholder rights or participating in the profits or assets of the Company.

(b)    The rights attached to the Participating Shares shall be deemed not to be varied or abrogated by:

(i)    the creation, allotment or issue of Ordinary Shares;

(ii)    the creation, allotment or issue of Participating Shares of any Class, Sub-Class or Series;

(iii)    the redemption or repurchase of any Participating Share;

(iv)    the conversion of Participating Shares of one Class, Sub-Class or Series into Participating Shares of another Class, Sub-Class or Series;

(v)    the redesignation of a Participating Share pursuant to Article 9(b)(ii);

(vi)    the exercise by the Directors or any liquidator of any of their discretions specified in these Articles; or

29

NAT001525
NATSAA00001525.1

(vii)    the Company entering into any written agreement pursuant to Article 46.

**Alteration of capital**

49.   (a)   Subject to and in so far as permitted by the provisions of the Law, the Company may from time to time by Ordinary Resolution alter or amend the Memorandum to:

(i)    increase its share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe;

(ii)    consolidate and divide all or any of its share capital into shares of larger amounts than its existing shares;

(iii)    convert all or any of its paid-up shares into stock and reconvert that stock into paid-up shares of any denomination;

(iv)    sub-divide its existing shares, or any of them, into shares of smaller amounts than is fixed by the Memorandum; and

(v)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount of the shares so cancelled.

(b)   Except so far as otherwise provided by the conditions of issue, the new shares shall be subject to the same provisions with reference to transfer, transmission, forfeiture and otherwise as the shares in the original share capital.

50.   Whenever as a result of a consolidation of shares any Members would become entitled to fractions of a share, the Directors may, on behalf of those Members, sell the shares representing the fractions for the best price reasonably obtainable to any person (including, subject to the provisions of the Law, the Company) and distribute the net proceeds of sale in due proportion among those Members, and the Directors may authorise some person to execute an instrument of transfer of the shares to, or in accordance with the directions of the purchaser. The transferee shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity in or invalidity of the proceedings in reference to the sale.

51.   The Company may by Special Resolution reduce its share capital and any capital redemption reserve in any manner and with, and subject to, any incident, consent, order or other matter required by law.

NAT001526
NATSAA00001526.1

### General meetings

52.  The Directors may, whenever they think fit, convene a general meeting of the Company. If at any time there are not sufficient Directors capable of acting to form a quorum, any Director or any one (1) or more Members holding in the aggregate not less than one-half of the Ordinary Shares may convene a general meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors. The Directors shall, upon the requisition in writing of one (1) or more Members holding in the aggregate not less than ninety per cent (90%) of the Ordinary Shares as at the date of the requisition convene a general meeting. Any such requisition shall specify the object of the meeting proposed to be called, and shall be left at the registered office of the Company. Any such requisition may consist of several documents in like form signed by one (1) or more of the requisitionists and a requisition by joint holders of Ordinary Shares must be signed by all of such joint holders. If the Directors do not proceed to convene a general meeting within seven (7) days from the date of such requisition being left as aforesaid, the requisitionists or any of them may convene a general meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors, but no meeting so convened shall be held more than three (3) months after the expiry of such seven (7) days. The requisitionists shall be reimbursed by the Company for all reasonable expenses incurred by them as a result of the failure by the Directors to convene the general meeting.

53.  At least seven (7) clear days' notice specifying the place, the day and the hour of each general meeting and the general nature of the business to be transacted thereat shall be given in the manner hereinafter provided, or in such other manner (if any) as may be prescribed by Ordinary Resolution, to such persons who are entitled to vote or may otherwise be entitled under these Articles to receive such notices from the Company; but with the consent of holders of shares representing at least ninety per cent (90%) in par value of all the shares entitled to receive notice of some particular meeting, that meeting may be convened by such shorter notice or without notice and in such manner as those Members may think fit.

54.  Subject to the provisions of the Articles and to any restrictions imposed on any shares, the notice shall be given to all the Members, to all the persons entitled to a share in consequence of the death or bankruptcy of a Member and to the Directors. Where the notice of meeting is published on a web-site in accordance with Article 137, it shall continue to be published in the same place on that web-site from the date of the notification given under Article 137(b) until the conclusion of the meeting to which the notice relates.

55.  The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting. Where a notice of meeting published on a web-site in accordance with Article 137 is by accident published in different places on the web-site or published for part only of the period from the date of the notification given under Article 137(b) until

31

NAT001527
NATSAA00001527.1

the conclusion of the meeting to which the notice relates, the proceedings at such meeting are not thereby invalidated.

## Proceedings at general meetings

56. No business shall be transacted at any meeting unless a quorum is present; save as herein otherwise provided, one or more Members holding in the aggregate not less than one-half of the Ordinary Shares present in person or by proxy and entitled to vote upon the business to be transacted shall be a quorum.

57. If such a quorum is not present within two hours from the time appointed for the meeting, or if during a meeting a quorum ceases to be present, the meeting shall stand adjourned to the next business day, at the same time and place or to such day and at such time and place as the Directors may determine and if at the adjourned meeting there are present within one hour from the time appointed for the meeting in person or by proxy not less than one third of the votes of the shares or each class or series of shares entitled to vote on the resolutions to be considered by the meeting; those present shall be a quorum but otherwise the meeting shall be dissolved.

58. The chairman, if any, of the board of Directors or in his absence some other Director nominated by the Directors shall preside as chairman of the meeting, but if neither the chairman nor such other Director (if any) is present within fifteen (15) minutes after the time appointed for holding the meeting and willing to act, the Directors present shall elect one (1) of their number to be chairman and, if there is only one (1) Director present and willing to act, he shall be chairman.

59. If no Director is willing to act as chairman, or if no Director is present within fifteen (15) minutes after the time appointed for holding the meeting, the Members present and entitled to vote shall choose one (1) of their number to be chairman.

60. A Director shall, notwithstanding that he is not a Member, be entitled to attend and speak at any general meeting and at any separate meeting of the holders of any class of shares in the Company.

61. The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than business which might properly have been transacted at the meeting had the adjournment not taken place. When a meeting is adjourned for fourteen (14) days or more, at least seven (7) clear days' notice shall be given specifying the time and place of the adjourned meeting and the general nature of the business to be transacted. Otherwise it shall not be necessary to give any such notice.

32

NAT001528

NATSAA00001528.1

62.   A resolution put to the vote of the meeting shall be decided on a show of hands unless before, or on the declaration of the result of, the show of hands a poll is duly demanded. A poll may be demanded:

   (a)   by the chairman; or

   (b)   by any Member present in person or by proxy and entitled to vote.

63.   Unless a poll is duly demanded, a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost, or not carried by a particular majority and an entry to that effect in the minutes of the meeting shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

64.   The demand for a poll may, before the poll is taken, be withdrawn but only with the consent of the chairman and a demand so withdrawn shall not be taken to have invalidated the result of a show of hands declared before the demand was made.

65.   A poll shall be taken in such manner as the chairman directs and he may appoint scrutineers (who need not be Members) and fix a place and time for declaring the result of the poll. The result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

66.   In the case of equality of votes, whether on a show of hands or on a poll, the chairman shall be entitled to a casting vote in addition to any other vote he may have.

67.   A poll demanded on the election of a chairman or on a question of adjournment shall be taken immediately. A poll demanded on any other question shall be taken either immediately or at such time and place as the chairman directs not being more than 30 days after the poll is demanded. The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll was demanded. If a poll is demanded before the declaration of the result of a show of hands and the demand is duly withdrawn, the meeting shall continue as if the demand had not been made.

68.   No notice need be given of a poll not taken immediately if the time and place at which it is taken are announced at the meeting at which it is demanded. In any other case at least seven (7) clear days' notice shall be given specifying the time and place at which the poll is to be taken.

69.   A resolution in writing executed by or on behalf of each Member who would have been entitled to vote upon it if it had been proposed at a general meeting at which he was present shall be as effectual as if it had been passed at a general meeting duly convened and held and may consist of several instruments in the like form each executed by or on

33

NAT001529
NATSAA00001529.1

behalf of one (1) or more Members. If a resolution in writing is described as a Special Resolution or as an Ordinary Resolution, it has effect accordingly.

70.    If and for so long as the Company has only one (1) Member entitled to vote:

(a)    in relation to a general meeting, the sole Member or a proxy for that Member or (if the Member is a corporation) a duly authorised representative of that Member is a quorum and Article 56 is modified accordingly;

(b)    the sole Member may agree that any general meeting be called by shorter notice than that provided for by the Articles; and

(c)    all other provisions of the Articles apply with any necessary modification (unless the provision expressly provides otherwise).

### Votes of Members

71.    Subject to any rights or restrictions attached to any shares, on a show of hands every holder of Ordinary Shares who (being an individual) is present in person or by proxy or (being a corporation) is present by a duly authorised representative not being himself a Member entitled to vote, shall have one (1) vote, and on a poll every Member entitled to vote and every person representing a Member entitled to vote by proxy shall have one (1) vote for every Ordinary Share of which he is the holder.

72.    In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and seniority shall be determined by the order in which the names of the holders stand in the Register.

73.    A Member in respect of whom an order has been made by any court having jurisdiction (whether in the Islands or elsewhere) in matters concerning mental disorder may vote, whether on a show of hands or on a poll, by his receiver, *curator bonis* or other person authorised in that behalf appointed by that court, and any such receiver, *curator bonis* or other person may, on a poll, vote by proxy. Evidence to the satisfaction of the Directors of the authority of the person claiming to exercise the right to vote shall be received at the registered office of the Company, or at such other place as is specified in accordance with the Articles for the deposit or delivery of forms of appointment of a proxy, or in any other manner specified in the Articles for the appointment of a proxy, not less than forty eight (48) hours before the time appointed for holding the meeting or adjourned meeting at which the right to vote is to be exercised and in default the right to vote shall not be exercisable.

74.    No Member shall, unless the Directors otherwise determine, be entitled to vote at any general meeting or at any separate meeting of the holders of any class of shares in the

34

NAT001530
NATSAA00001530.1

Company, either in person or by proxy, in respect of any share held by him unless all moneys presently payable by him in respect of that share have been paid.

75. No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting shall be valid. Any objection made in due time shall be referred to the chairman whose decision shall be final and conclusive.

76. On a poll, votes may be given either personally or by proxy. Deposit or delivery of a form of appointment of a proxy does not preclude a Member from attending and voting at the meeting or at any adjournment of it.

77. On a poll, a Member entitled to more than one (1) vote need not, if he votes, use all his votes or cast all the votes he uses the same way.

78. Subject as set out herein, an instrument appointing a proxy shall be in writing in any usual form or in any other form which the Directors may approve and shall be executed by or on behalf of the appointor save that, subject to the Law, the Directors may accept the appointment of a proxy received in an electronic communication at an address specified for such purpose, on such terms and subject to such conditions as they consider fit. The Directors may require the production of any evidence which they consider necessary to determine the validity of any appointment pursuant to this Article.

79. The form of appointment of a proxy and any authority under which it is executed or a copy of such authority certified notarially or in some other way approved by the Directors may:

(a) in the case of an instrument in writing, be left at or sent by post to the registered office of the Company or such other place within the Islands as is specified in the notice convening the meeting or in any form of appointment of proxy sent out by the Company in relation to the meeting at any time before the time for holding the meeting or adjourned meeting at which the person named in the form of appointment of proxy proposes to vote;

(b) in the case of an appointment of a proxy contained in an electronic communication, where an address has been specified by or on behalf of the Company for the purpose of receiving electronic communications:

(i) in the notice convening the meeting; or

(ii) in any form of appointment of a proxy sent out by the Company in relation to the meeting; or

(iii) in any invitation contained in an electronic communication to appoint a proxy issued by the Company in relation to the meeting,

35

NAT001531
NATSAA00001531.1

be received at such address at any time before the time for holding the meeting or adjourned meeting at which the person named in the form of appointment of proxy proposes to vote;

(c)    in the case of a poll taken more than forty eight (48) hours after it is demanded, be deposited or delivered as required by paragraphs (a) or (b) of this Article after the poll has been demanded and at any time before the time appointed for the taking of the poll; or

(d)    where the poll is not taken immediately but is taken not more than forty eight (48) hours after it was demanded, be delivered at the meeting at which the poll was demanded to the chairman or to the Secretary or to any Director;

and a form of appointment of proxy which is not deposited or delivered in accordance with this Article is invalid.

80.    Any corporation or other non-natural person which is a Member may in accordance with its constitutional documents, or in the absence of such provision by resolution of its directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of Members, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as the corporation could exercise if it were an individual Member.

81.    A vote given or poll demanded by proxy or by the duly authorised representative of a corporation shall be valid notwithstanding the previous determination of the authority of the person voting or demanding a poll unless notice of the determination was received by the Company at the registered office of the Company or, in the case of a proxy, any other place specified for delivery or receipt of the form of appointment of proxy or, where the appointment of a proxy was contained in an electronic communication, at the address at which the form of appointment was received, before the commencement of the meeting or adjourned meeting at which the vote is given or the poll demanded or (in the case of a poll taken otherwise than on the same day as the meeting or adjourned meeting) the time appointed for taking the poll.

### Number of Directors

82.    Unless otherwise determined by Ordinary Resolution, the number of Directors (other than alternate Directors) is not subject to a maximum and the minimum number is one (1) provided always that there will be no Directors until the first Director(s) are appointed by the subscriber(s) to the Memorandum.

36

NAT001532
NATSAA00001532.1

### Alternate Directors

83.  Any Director (other than an alternate Director) may without the approval of the Directors appoint any person willing to act, whether or not he is a Director, to be an alternate Director and may remove from office an alternate Director so appointed by him.

84.  An alternate Director shall be entitled to receive notice of all meetings of Directors and of all meetings of committees of Directors of which his appointer is a member. An alternate Director may waive the requirement that notice be given to him of a meeting of Directors or a committee of Directors, either prospectively or retrospectively. Notice of a board meeting is deemed to be duly given to an alternate Director if it is given to him personally or by word of mouth or by electronic communication to an address given by him to the Company for that purpose or sent in writing to him at his last known address or another address given by him to the Company for that purpose. An alternate Director shall be entitled to attend and vote at any such meeting at which the Director appointing him is not personally present, and generally to perform all the functions of his appointor as a Director in his absence but shall not be entitled to receive any remuneration from the Company for his services as an alternate Director.

85.  An alternate Director shall cease to be an alternate Director if his appointor ceases to be a Director.

86.  Any appointment or removal of an alternate Director shall be by notice to the Company signed by the Director making or revoking the appointment or in any other manner approved by the Directors. Any such notice may be left at or sent by post or facsimile transmission to the office or such other place as may be designated for the purpose by the Directors.

87.  Save as otherwise provided in the Articles, an alternate Director shall be deemed for all purposes to be a Director and shall alone be responsible for his own acts and defaults and he shall not be deemed to be the agent of the Director appointing him.

### Proxy Directors

88.  (a)  A Director may be represented at any meetings of the Directors by a proxy appointed by him in which event the presence or vote of the proxy shall for all purposes be deemed to be that of the Director.

(b)  The provisions of Articles 76, 78, 79 and 81 shall *mutatis mutandis* apply to the appointment of proxies by Directors.

(c)  Any person appointed as a proxy pursuant to paragraph (a) above shall be the agent of the Director who appointed him, and not an officer of the Company.

37

NAT001533
NATSAA00001533.1

### Powers of Directors

89.  Subject to the provisions of the Law, the Memorandum and to any directions given by Ordinary Resolution, the business of the Company shall be managed by the Directors who may exercise all the powers of the Company which are not required by these Articles or by law to be exercised or done by the Company. No alteration of the Memorandum or Articles and no such direction shall invalidate any prior act of the Directors which would have been valid if that alteration had not been made or that direction had not been given. The powers given by this Article shall not be limited by any special power given to the Directors by the Articles and a meeting of Directors at which a quorum is present may exercise all powers exercisable by the Directors.

### Delegation of Directors' powers

90.  The Directors may, by power of attorney or otherwise, appoint any person to be the agent of the Company for such purposes and on such conditions as they determine, including authority for the agent to delegate all or any of his powers. In particular and without prejudice to the foregoing sentence:

    (a)  the Directors may appoint the Administrator and may confer on the Administrator so appointed any of the powers exercisable by them as Directors upon such terms and conditions including the right to remuneration payable by the Company and with such restrictions and with such powers of delegation as they think fit and either collaterally with or to the exclusion of their own powers; and

    (b)  the Directors shall appoint the Investment Manager and may confer upon the Investment Manager so appointed any of the powers exercisable by them upon such terms and conditions, including the right to remuneration payable by the Company and with such restrictions and powers of delegation as they think fit and either collaterally with or to the exclusion of their own powers.

91.  The Directors may delegate any of their powers to any committee consisting of one (1) or more Directors. They may also delegate to any managing Director or any Director holding any other executive office such of their powers as they consider desirable to be exercised by him. Any such delegation may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion of its own powers and may be revoked or altered. Subject to any such conditions, the proceedings of a committee with two (2) or more members shall be governed by the provisions of the Articles regulating the proceedings of Directors so far as they are capable of applying. Where a provision of the Articles refers to the exercise of a power, authority or discretion by the Directors and that power, authority or discretion has been delegated by the Directors to a committee, the provision shall be construed as permitting the exercise of the power, authority or discretion by the committee.

38

NAT001534

NATSAA00001534.1

### Appointment, disqualification and removal of Directors

92.  The first Director(s) shall be appointed in writing by the subscriber to the Memorandum.

93.  There is no age limit for Directors of the Company.

94.  The shareholding qualification for Directors may be fixed by Ordinary Resolution and unless and until so fixed no shareholding qualification shall be required.

95.  The Company may by Ordinary Resolution remove a Director from office and may by Ordinary Resolution appoint a person who is willing to act to be a Director either to fill a vacancy or as an additional Director.

96.  The Directors may appoint any person who is willing to act to be a Director, either to fill a vacancy or as an additional Director, provided that the appointment does not cause the number of Directors to exceed any number fixed by or in accordance with the Articles as the maximum number of Directors.

97.  The office of a Director shall be vacated if:

     (a)  he becomes prohibited by law from being a Director;

     (b)  he becomes bankrupt or makes any arrangement or composition with his creditors generally;

     (c)  he dies, or is, in the opinion of all his co-Directors, incapable by reason of mental disorder of discharging his duties as Director;

     (d)  he resigns his office by notice to the Company; or

     (e)  he has for more than six (6) consecutive months been absent without permission of the Directors from meetings of Directors held during that period and his alternate Director (if any) has not during such period attended any such meetings instead of him, and the Directors resolve that his office be vacated.

### Remuneration of Directors

98.  The Directors shall be entitled to such remuneration as they shall themselves determine and, unless the resolution provides otherwise, the remuneration shall be deemed to accrue from day to day.

99.  A Director who, at the request of the Directors, goes or resides outside of the Islands, makes a special journey or performs a special service on behalf of the Company may be

39

paid such reasonable additional remuneration (whether by way of salary, percentage of profits or otherwise) and expenses as the Directors may decide.

**Directors' expenses**

100. The Directors may be paid all travelling, hotel and other expenses properly incurred by them in connection with their attendance at meetings of Directors or committees of Directors or general meetings or separate meetings of the holders of any class of shares or of debentures of the Company or otherwise in connection with the discharge of their duties.

**Directors' appointments and interests**

101. The Directors may appoint one (1) or more of their body to the office of managing Director or to any other executive office under the Company, and may enter into an agreement or arrangement with any Director for his employment by the Company or for the provision by him of any services outside the scope of the ordinary duties of a Director. Any such appointment, agreement or arrangement may be made upon such terms as the Directors determine and they may remunerate any such Director for his services as they think fit. Any appointment of a Director to an executive office shall determine if he ceases to be a Director but without prejudice to any claim to damages for breach of the contract of service between the Director and the Company.

102. If he has disclosed to the Directors the nature and extent of any material interest of his, a Director notwithstanding his office:

   (a)  may be a party to, or otherwise interested in, any transaction or arrangement with the Company or in which the Company is otherwise interested;

   (b)  may be a director or other officer of, or employed by, or a party to any transaction or arrangement with, or otherwise interested in, any body corporate promoted by the Company or in which the Company is otherwise interested; and

   (c)  shall not, by reason of his office, be accountable to the Company for any benefit which he derives from any such office or employment or from any such transaction or arrangement or from any interest in any such body corporate and no such transaction or arrangement shall be liable to be avoided on the ground of any such interest or benefit.

103. For the purposes of the preceding Article:

   (a)  a general notice given to the Directors that a Director is to be regarded as having an interest of the nature and extent specified in the notice in any transaction or arrangement in which a specified person or class of persons is interested shall be

40

NAT001536
NATSAA00001536.1

deemed to be a disclosure that the Director has an interest in any such transaction of the nature and extent so specified; and

(b)    an interest of which a Director has no knowledge and of which it is unreasonable to expect him to have knowledge shall not be treated as an interest of his.

## Proceedings of Directors

104.    Subject to the provisions of the Articles, the Directors may regulate their proceedings as they think fit. A Director may, and the Secretary at the request of a Director shall, call a meeting of the Directors. Every Director shall receive seven clear (7) days' notice of a meeting. Notice of a board meeting is deemed to be duly given to a Director if it is given to him personally or by word of mouth or by electronic communication to an address given by him to the Company for that purpose or sent in writing to him at his last known address or other address given by him to the Company for that purpose. A Director may waive the requirement that notice be given to him of a meeting of Directors or a committee of Directors, either prospectively or retrospectively. Questions arising at a meeting shall be decided by a majority of votes. A Director who is also an alternate Director shall be entitled in the absence of his appointor to a separate vote on behalf of his appointor in addition to his own vote.

105.    A Director or his alternate Director may participate in a meeting of Directors or a committee of Directors through the medium of conference telephone, video or similar form of communications equipment if all persons participating in the meeting are able to hear and speak to each other throughout the meeting. A person participating in this way is deemed to be present in person at the meeting and is counted in a quorum and entitled to vote. All business transacted in this way by the Directors or a committee of Directors is for the purpose of the Articles deemed to be validly and effectively transacted at a meeting of the Directors or of a committee of Directors although fewer than two (2) Directors or alternate Directors are physically present at the same place. The meeting is deemed to take place where the largest group of those participating is assembled or, if there is no such group, where the chairman of the meeting then is.

106.    Subject to Article 111, the quorum for the transaction of the business of the Directors may be fixed by the Directors and unless so fixed at any other number shall be not less than one half (1/2) of the total number of Directors, unless there are only two (2) Directors in which case the quorum shall be two (2). A person who holds office only as an alternate Director shall, if his appointor is not present, be counted in the quorum.

107.    The Directors may appoint one (1) of their number to be the chairman of the board of Directors and may at any time remove him from that office. Unless he is unwilling to do so, the Director so appointed shall preside at every meeting of Directors at which he is present. But if there is no Director holding that office, or if the Director holding it is unwilling to preside or is not present within five (5) minutes after the time appointed for

41

NAT001537
NATSAA00001537.1

the meeting, the Directors present may appoint one (1) of their number to be chairman of the meeting.

108. All acts done by a meeting of Directors, or of a committee of Directors, or by any person acting as a Director shall, notwithstanding that it be afterwards discovered that there was a defect in the appointment of any Director or that any of them were disqualified from holding office, or had vacated office, or were not entitled to vote, be as valid as if every such person had been duly appointed and was qualified and had continued to be a Director and had been entitled to vote.

109. A Director who is present at a meeting of the Directors at which action on any Company matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent from such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the Company immediately after the conclusion of the meeting. Such right to dissent shall not apply to a Director who voted in favour of such action.

110. A resolution in writing signed by all the Directors entitled to receive notice of a meeting of Directors or of a committee of Directors shall be as valid and effectual as if it has been passed at a meeting of Directors or (as the case may be) a committee of Directors duly convened and held and may consist of several documents in the like form each signed by one (1) or more Directors; but a resolution signed by an alternate Director need not also be signed by his appointor and, if it is signed by a Director who has appointed an alternate Director it need not be signed by the alternate Director in that capacity.

111. If and for so long as there is a sole Director of the Company:

    (a)    he may exercise all the powers conferred on the Directors by the Articles by any means permitted by the Articles or the Law;

    (b)    for the purpose of Article 106 the quorum for the transaction of business is one (1); and

    (c)    all other provisions of the Articles apply with any necessary modification (unless the provision expressly provides otherwise).

112. Provided that a Director has disclosed his material interest pursuant to the Articles, a Director may vote at any meeting of Directors or of a committee of Directors on any resolution concerning a matter in which he has, directly or indirectly, an interest or duty. The Director shall be counted in the quorum present at a meeting when any such resolution is under consideration and if he votes his vote shall be counted.

42

NAT001538
NATSAA00001538.1

### Secretary and other officers

113.  The Directors may by resolution appoint a Secretary and may by resolution also appoint such other officers as may from time to time be required upon such terms as to duration of office, remuneration and otherwise as they may think fit.  Such Secretary or other officers need not be Directors and in the case of the other officers may be ascribed such titles as the Directors may decide.  The Directors may by resolution remove any Secretary or other officer appointed pursuant to this Article.

114.  No person shall be appointed or hold office as Secretary who is:

    (a)    the sole Director of the Company; or

    (b)    a corporation the sole Director of which is the sole Director of the Company; or

    (c)    the sole Director of a corporation which is the sole Director of the Company.

### Minutes

115.  The Directors shall cause minutes to be made in books kept for the purpose:

    (a)    of all appointments of officers made by the Directors; and

    (b)    of all proceedings of meetings of the Company, of the holders of any class of shares in the Company, and of the Directors, and of committees of Directors, including the names of the Directors present at each such meeting.

### Seal

116.  (a)    The Company may, if the Directors so determine, have a Seal.  The Seal shall only be used by the authority of the Directors or of a committee of Directors authorised by the Directors.  The Directors may determine who shall sign any instrument to which the seal is affixed, and unless otherwise so determined every such instrument shall be signed by a Director and by the Secretary or by a second Director.

    (b)    The Company may have for use in any place or places outside the Islands a duplicate Seal or Seals, each of which shall be a facsimile of the Seal of the Company and, if the Directors so determine, shall have added on its face the name of every place where it is to be used.

    (c)    The Directors may by resolution determine (i) that any signature required by this Article need not be manual, but may be affixed by some other method or system of

43

NAT001539
NATSAA00001539.1

reproduction or mechanical or electronic signature and/or (ii) that any document may bear a printed facsimile of the Seal in lieu of affixing the Seal thereto.

(d) No document or deed otherwise duly executed and delivered by or on behalf of the Company shall be regarded as invalid merely because at the date of the delivery of the deed or document, the Director, Secretary or other officer or person who shall have executed the same or affixed the Seal thereto, as the case may be, for and on behalf of the Company shall have ceased to hold such office and authority on behalf of the Company.

### Dividends

117. The Directors may from time to time declare dividends on the Participating Shares of any Class or Sub-Class provided that no such dividend shall be paid otherwise than out of the assets of the Company relating to such Class or Sub-Class legally available for distribution by way of dividend.

118. No dividend shall be paid from share premium account, unless immediately following the date on which the dividend is proposed to be paid, the Company shall be able to pay the debts of the Company as they fall due in the ordinary course of business.

119. The Directors may, before paying any dividend on any Class or Sub-Class of Participating Shares, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors, be applicable for meeting contingencies, or for equalising dividends, or for any other purpose to which the profits of the Company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the Company (in which case the Directors shall not be bound to keep such sums separate from the Company's other assets) or be invested in such investments as the Directors may from time to time think fit (in which case the Directors may from time to time deal with and vary such investments and dispose of all or any part thereof for the benefit of the Company as they think fit).

120. Any dividend or other moneys payable on or in respect of a Participating Share may be paid by cheque sent by post to the registered address of the person entitled or, if two (2) or more persons are the holders of the Participating Share or are jointly entitled to it by reason of the death or bankruptcy of the holder, to the registered address of that one (1) of those persons who is first named in the Register or to such person and to such address as the person or persons entitled may in writing direct. Subject to any applicable law or regulations, every cheque shall be made payable to the order of the person or persons entitled or to such other person as the person or persons entitled may in writing direct and payment of the cheque shall be a good discharge to the Company. Any joint holder or other person jointly entitled to a share as aforesaid may give receipts for any dividend or other moneys payable in respect of the share.

44

NAT001540
NATSAA00001540.1

121.   The Directors may declare that any dividend on any Class or Sub-Class is paid wholly or partly by the distribution of specific assets attributable to the relevant Record and in particular of paid-up shares, debentures or debenture stock of any other company or in any one or more of such ways, and the Directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient, and in particular may issue fractional shares and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the Directors.

122.   No dividend or other moneys payable in respect of a Participating Share shall bear interest against the Company unless otherwise provided by the rights attached to the Participating Share.

123.   All dividends unclaimed for one year after having been declared may be invested or otherwise made use of by the Directors for the benefit of the relevant Class until claimed.

124.   Any dividend which has remained unclaimed for twelve (12) years from the date when it became due for payment shall, if the Directors so resolve, be forfeited and cease to remain owing by the Company.

### Record dates

125.   Subject to the rights attached to shares, the Directors may fix any date as the record date for a dividend, allotment or issue. The record date may be on or at any time before or after a date on which the dividend, allotment or issue is declared, made or paid.

### Accounts

126.   No Member shall (as such) have any right of inspecting any accounting records or other book or document of the Company except as authorised by statute or authorised by the Directors or by Ordinary Resolution of the Company.

127.   Any accounts, Directors' report or auditors' report required or permitted to be sent by the Company to any person pursuant to any statute shall be treated as sent to such person if:

    (a)   sent by electronic communication to an address for the time being notified to the Company by that person for that purpose;

    (b)   published on a web-site, provided that the following conditions are met:

        (i)   the Company and that person have agreed that such documents may be

45

NAT001541
NATSAA00001541.1

accessed by him on a web-site (instead of their being sent by post or otherwise delivered to him); and

(ii)   that person is notified, in a manner for the time being agreed for the purpose between him and the Company of:

(A)   the publication of the documents on a web-site;

(B)   the address of that web-site;

(C)   the place on that web-site where the documents may be accessed; and

(D)   how such documents may be accessed.

128.   Documents treated in accordance with Article 127 as sent to any person are to be treated as sent to him not less than five (5) days before the date of the meeting at which copies of those documents are to be laid if, and only if:

(a)   the documents are published on the web-site throughout a period beginning at least 5 days before the date of the meeting and ending with the conclusion of the meeting; and

(b)   the notification given for the purposes of Article 127(b)(ii) is given not less than 5 days before the date of the meeting.

129.   Nothing in Article 128 shall invalidate the proceedings of a meeting where any documents that are required to be published as mentioned in Article 128 are by accident published in different places on the web-site or published for a part, but not all, of the period mentioned in that Article.

## Audit

130.   (a)   The Directors shall by resolution appoint the Auditors on such terms as to duration of office, remuneration or otherwise as they may think fit. The Directors may at any time by resolution remove the Auditors and if so, the Directors shall appoint replacement Auditors. The Directors shall appoint Auditors to replace Auditors that resign.

(b)   No person shall act as Auditor at a time when he knows that he is disqualified to act as such, and if an Auditor to his knowledge becomes so disqualified during his term of office he shall thereupon vacate his office and give notice in writing to the Company that he has vacated it by reason of such disqualification.

46

131. (a) The Auditors shall examine such books, accounts and vouchers as may be necessary for the performance of their duties.

(b) The Auditors shall make a report to the Members on the accounts examined by them and on every balance sheet prepared by them during their tenure of office and the report shall state:

(i) whether they have audited the accounts in accordance with approved auditing standards;

(ii) the accounting basis upon which the accounts have been prepared; and

(iii) whether in their opinion the accounts present fairly the financial position of the Company at the date of the accounts and the results of its operations and the changes in its net assets for the period then ended.

(c) The Auditors shall be furnished with a list of all books kept by the Company and shall at all times have the right of access to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and officers of the Company such information and explanations as may be necessary for the performance of their duties.

### Capitalisation of profits

132. The Directors may:

(a) subject as provided in this Article, resolve to capitalise any undivided profits of the Company not required for paying any preferential dividend (whether or not they are available for distribution) or any sum standing to the credit of the Company's share premium account or capital redemption reserve;

(b) appropriate the sum resolved to be capitalised to the Members who would have been entitled to it if it were distributed by way of dividend and in the same proportions and apply such sum on their behalf, in paying up in full unissued shares of the Company of a nominal amount equal to such sum, and allot the shares credited as fully paid to those Members, or as they may direct, in those proportions;

(c) make such provision by the issue of fractional certificates or by payment in cash or otherwise as they determine in the case of shares becoming distributable under this Article in fractions; and

(d) authorise any person to enter on behalf of all the Members concerned into an agreement with the Company providing for the allotment to them respectively,

47

NAT001543
NATSAA00001543.1

credited as fully paid, of any shares to which they may be entitled upon such capitalisation, any agreement made under such authority being binding on all such Members.

133. Notwithstanding the provisions of Article 132, if the Investment Manager, for the benefit of a particular Member, waives all or any part of the fees due to it, the Company may apply an amount equal to the amount so waived to pay up additional shares of the same Class, Sub-Class or Series for distribution to such Member on the next Subscription Day at the Subscription Price then ruling.

### Share premium and reserve accounts

134. (a)    The Directors shall establish in respect of each Class, Sub-Class and Series an account to be called the share premium account and shall carry to the credit of that account from time to time a sum equal to the amount or value of the premium paid on the issue of any Participating Shares of the relevant Class, Sub-Class and Series;

(b)    There shall be debited to the share premium account on the redemption of a Participating Share of any Class, Sub-Class and Series the difference between the nominal value of such Participating Share redeemed and the Redemption Price unless such sum has been paid out of the profits of the Company or out of capital as permitted by Article 30(b);

(c)    The Company shall at all times comply with the provisions of the Law in relation to the share premium account and the premiums attaching to the Participating Shares and in relation to the redemption of the Participating Shares.

(d)    The Directors may set aside out of the profits of the Company attributable to a Record and carry to the credit of any reserve account relating to such Record, such sums as they think proper, which shall, at the discretion of the Directors, be applicable for any purpose to which the profits or reserves may be properly applied and pending such application may at the like discretion either be employed in the business of the Company or be invested in such Investments as the Directors may from time to time think fit. The Directors may also carry forward to the accounts of the succeeding year or years any balance of profits which they shall not think fit to place to reserve.

### Notices

135. Any notice to be given to or by any person pursuant to the Articles (other than a notice convening a meeting of the board of Directors or of a committee of the board of Directors) shall be in writing or in an electronic communication to an address for the time being notified for that purpose to the person giving the notice.

48

NAT001544
NATSAA00001544.1

136.   Subject to Article 137, the Company may give any notice to a Member either personally or by sending it by post in a prepaid envelope addressed to the Member at his registered address, or by leaving it at that address, or by sending it using electronic communications to an address for the time being notified to the Company by such Member for that purpose. In the case of joint holders of a share, all notices shall be given to the joint holder whose name stands first in the Register in respect of the joint holding and notice so given shall be sufficient notice to all the joint holders. Any Member whose registered address is not within the Islands shall be entitled to have notices given to him at that address or at an address specified by him to which notices may be sent using electronic communications.

137.   A notice of general meeting may, instead of being sent to the Member in any of the ways specified in Article 136, be given to a Member by the Company by publishing the notice on a web-site, provided that the following conditions are met:

   (a)   the Member and the Company have agreed that notices of general meetings may be accessed by him on a web-site instead of being sent to the Member in one of the ways specified in Article 136; and

   (b)   the Member is given a notification, in the manner agreed for the time being between the Member and the Company, containing the following information:

      (i)   the fact that the notice has been published on the web-site;

      (ii)   the address of the web-site;

      (iii)   the place on the web-site where the notice may be accessed and how it may be accessed; and

      (iv)   the place, date and time of the general meeting.

138.   A notice given under Article 137 is deemed to be given at the time of the notification given under paragraph (b) of that Article.

139.   A Member present, either in person or by proxy, at any meeting of the Company or of the holders of any class of shares in the Company shall be deemed to have received notice of the meeting, and, where requisite, of the purposes for which it was called.

140.   Every person who becomes entitled to any share shall be bound by any notice in respect of that share which, before his name is entered in the Register, has been given to the person from whom he derives his title.

49

NAT001545
NATSAA00001545.1

141.  (a)   A notice sent to a Member (or other person entitled to receive notices under the Articles) by post to an address within the Islands is deemed to be given twenty four (24) hours after posting, if pre-paid.

      (b)   A notice sent to a Member (or other person entitled to receive notice under the Articles) by post to an address outside the Islands is deemed to be given seventy two (72) hours after posting, if pre-paid as airmail. Proof that an envelope containing the notice was properly addressed, pre-paid and posted is conclusive evidence that the notice was given. A notice not sent by post but left at a Member's registered address is deemed to have been given on the day it was left.

      (c)   Where a notice is sent by an electronic communication service of the notice shall be deemed to be given by properly addressing and sending such notice through the appropriate transmitting medium. A notice contained in an electronic communication sent in accordance with these Articles other than a notice given under Article 137 (to which the provisions of Article 138 apply) is deemed to be given at the expiration of twenty four (24) hours after the time it was sent.

142.  A notice may be given by the Company to the persons entitled to a share in consequence of the death or bankruptcy of a Member by sending or delivering it, in any manner authorised by the Articles for the giving of notice to a Member, addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt or by any like description, at the address, if any, supplied for that purpose by the persons claiming to be so entitled. Until such an address has been supplied, a notice may be given in any manner in which it might have been given if the death or bankruptcy had not occurred.

## Winding up

143.  (a)   If the Company shall be wound up the liquidator shall apply the assets of the Company in such manner and order as he thinks fit in satisfaction of creditors' claims.

      (b)   The assets available for distribution to the Members shall be distributed in the following manner and priority:

            (i)    first, in the payment to the holders of the Participating Shares of each Class, Sub-Class or Series of an amount equal to the par value of the Participating Shares of that Class, Sub-Class or Series held by such holders respectively; and

            (ii)   second, in the payment to the holders of Ordinary Shares of an amount equal to the par value of such Ordinary Shares; and

50

NAT001546
NATSAA00001546.1

(iii)  third, in the payment to the holders of each Class, Sub Class or Series of Participating Shares of any remaining balance then attributable to the relevant Record, such payment being made in proportion to the number of Participating Shares of that Class, Sub-Class or Series held.

144.  If the Company shall be wound up (whether the liquidation is voluntary, or under supervision by the Court) the liquidator may, with the authority of a Special Resolution, divide among the Members in specie the whole or any part of the assets of the Company and whether or not the assets shall consist of property of a single kind, and may for such purposes set such value as he deemed fair upon any one or more class or classes of property, and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like authority, vest any part of the assets in trustees upon such trusts for the benefit of Members as the liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no Member shall be compelled to accept any shares in respect of which there is liability.

### Indemnity

145.  (a)  Every Director (including for the purposes of this Article, any alternate Director appointed pursuant to the provisions of these Articles), managing Director, agent, Secretary, or other officer for the time being and from time to time of the Company and the personal representatives of the same shall be indemnified and secured harmless out of the assets and funds of the Company against all actions, proceedings, costs, charges, expenses, losses, damages or liabilities incurred or sustained by him otherwise than by reason of his own bad faith, Gross Negligence or wilful default in or about the conduct of the Company's business or affairs or in the execution or discharge of his duties, powers, authorities or discretions, including without prejudice to the generality of the foregoing, any costs, expenses, losses or liabilities incurred by him in defending (whether successfully or otherwise) any civil proceedings concerning the Company or its affairs in any court whether in the Islands or elsewhere.

(b)  The Administrator, the Investment Manager and any other agent which the Company has appointed shall be entitled to such indemnity from the Company under such terms and subject to such conditions and exceptions and with such entitlement to have recourse to the assets of the Company with a view to meeting and discharging the cost thereof as shall be specified in the relevant contract or instrument appointing such agent.

(c)  No such Director, alternate Director, managing Director, agent, Secretary, or other officer of the Company and the personal representatives of the same shall be liable (i) for the acts, receipts, neglects, defaults or omissions of any other such Director or officer or agent of the Company, (ii) by reason of his having joined in any receipt for money not received by him personally or in any other act to which he

51

NAT001547
NATSAA00001547.1

was not a direct party for conformity, (iii) for any loss on account of defect of title to any property of the Company, (iv) on account of the insufficiency of any security in or upon which any money of the Company shall be invested, (v) for any loss incurred through any bank, broker or other agent or any other party with whom any of the Company's property may be deposited or (vi) for any loss, damage or misfortune whatsoever which may happen in or arise from the execution or discharge of the duties, powers, authorities or discretions of his office or in relation thereto unless the same shall happen through his own dishonesty.

146.   The Directors may exercise all the powers of the Company to purchase and maintain insurance for the benefit of a person who is or was:

(a)   a Director, alternate Director, Secretary or auditor of the Company or of a company which is or was a subsidiary undertaking of the Company or in which the Company has or had an interest (whether direct or indirect); or

(b)   trustee of a retirement benefits scheme or other trust in which a person referred to in the preceding paragraph is or has been interested,

indemnifying him against any liability which may lawfully be insured against by the Company.

### Disclosure

147.   Any Director, officer of the Company or authorised agent shall, if lawfully required to do so under the laws of any jurisdiction to which the Company is subject or in compliance with the rules of any stock exchange upon which the Company's shares are listed or in accordance with any contract entered into by the Company, be entitled to release or disclose any information in his possession regarding the affairs of the Company including, without limitation, any information contained in the Register relating to any Member.

### Financial year

148.   Unless the Directors otherwise prescribe, the financial year of the Company shall end on 31st December in each year and, following the year of incorporation, shall begin on 1st January in each year.

### Pension and Superannuation Funds

149.   The Directors may establish and maintain or procure the establishment and maintenance of any non-contributory or contributory pension or superannuation funds for the benefit of, and given or procure the giving of donations, gratuities, pensions, allowances or emoluments to any persons who are or were at any time in the employment or service of the Company or any company which is a subsidiary of the Company or is allied to or

52

associated with the Company or with any such subsidiary, or who are or were at any time Directors or Officers of the Company or of any such other company as aforesaid or who hold or held any salaried employment or office in the Company or such other company or any persons in whose welfare the Company or any such other company as aforesaid is or has been at any time interested, and to the wife, widow, families and dependents of any such person and may make payments for or towards the insurance of any such persons as aforesaid, and may do any of the matters aforesaid either alone or in conjunction with any such other company as aforesaid. Subject always to the proposal being approved by resolution of shareholders, a Director holding any such employment or office shall be entitled to participate in and retain for his own benefit any such donation, gratuity, pension allowance or emolument.

### Arbitration

150. (a)  Whenever any difference arises between the Company on the one hand and any of the Members or their executors administrators or assigns on the other hand, touching the true intent and construction or the incidence or consequences of these Articles or of the Law, touching anything done or executed, omitted or suffered in pursuance of the Law or touching any breach or alleged breach or otherwise relating to the premises or to these Articles, or to any Law affecting the Company or to any of the affairs of the Company such differences shall be referred to binding arbitration. Unless the parties agree to refer to the same to a single arbitrator, each party shall choose an arbitrator and the two arbitrators chosen thereby shall before entering on the reference appoint an umpire.

(b)  If either party to the reference makes default in appointing an arbitrator either originally or by way of substitution (in the event that an appointed arbitrator shall die, be incapable of acting or refuse to act) for 10 days after the other party has given him notice to appoint the same, such other party may appoint an arbitrator to act in the place of the arbitrator of the defaulting party.

(c)  These Articles are governed by and shall be construed in accordance with the substantial law of the Cayman Islands. The referral shall be made to binding arbitration under the International Arbitration Rules of the American Arbitration Association and the forum for such arbitration shall be New York, New York, USA, unless the parties agree otherwise.

### Amendment of Memorandum and Articles

151. (a)  Subject to the Law and without prejudice to the provisions of Article 49(a), the Company may by Special Resolution, change its name or change the provisions of the Memorandum with respect to its objects, powers or any other matter specified therein.

53

NAT001549
NATSAA00001549.1

(b)    Subject to the Law, and as provided in these Articles, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

### Transfer by way of continuation

152    The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing. In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.



54

NAT001550
**NATSAA00001550.1**