PROSKAUER ROSE LLP
Ehud Barak, Esq.
Russell T. Gorkin, Esq.
Elliot R. Stevens, Esq.
Eleven Times Square
New York, NY 10036-8299
Telephone: 212-969-3000
Facsimile: 212-969-2900
Email: ebarak@proskauer.com
        rgorkin@proskauer.com
        estevens@proskauer.com

*Attorneys for Grosvenor Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01021 (BRL) |
| v. | |
| GROSVENOR INVESTMENT MANAGEMENT LTD. (in liquidation), GROSVENOR PRIVATE RESERVE FUND LIMITED (in liquidation), GROSVENOR BALANCED GROWTH FUND LIMITED (in liquidation) AND GROSVENOR AGGRESSIVE GROWTH FUND LIMITED (in liquidation), | **ANSWER TO COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Defendants Grosvenor Investment Management Ltd. ("Grosvenor Management"), Grosvenor Private Reserve Fund Limited ("Grosvenor Reserve"), Grosvenor Balanced Growth Fund Limited ("Grosvenor Balanced") and Grosvenor Aggressive Growth Fund Limited ("Grosvenor Aggressive") (together, the "Grosvenor Defendants"), by their undersigned counsel, respectfully submit this answer (the "Answer") to the Complaint, of plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee" or the "Plaintiff"), and state as follows:

## GENERAL DENIAL

Except as otherwise expressly admitted herein, the Grosvenor Defendants deny each and every allegation in the Complaint. The Grosvenor Defendants state that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response to them is deemed to be required, all allegations in the headings and subheadings are denied; the Grosvenor Defendants repeat below the headings and subheadings solely for convenient reference and without admitting any allegations that are or may be deemed to be contained therein. In answering the allegations in the Complaint, the Grosvenor Defendants do not intend to waive, and do not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any allegations in the Complaint. To the extent it is later determined that a response is required to any allegation the Grosvenor Defendants aver has been mooted by a previous dismissal of the Trustee's claims, the Grosvenor Defendants deny any such allegation. The Grosvenor Defendants expressly reserve the right to amend and/or supplement this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER:** The allegations of paragraph 1 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 1.

2.     With this Complaint, the Trustee seeks to recover approximately $36,506,571 in subsequent transfers of Customer Property collectively made to the Grosvenor Defendants. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and Kingate Global Fund Ltd. ("Kingate Global"), which were Madoff feeder funds (together, the "Feeder Funds"). The Feeder Funds are British Virgin Islands ("BVI") companies that are in liquidation in the BVI. The Feeder Funds had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Each of the Feeder Funds maintained in excess of 95% of its assets in its BLMIS customer accounts.

**ANSWER:** The Grosvenor Defendants deny that the Trustee seeks to recover approximately $36,506,571 in subsequent transfers made to the Grosvenor Defendants because the Trustee has dismissed all claims relating to transfers from Kingate Global Fund Ltd. (ECF No. 105).    The Grosvenor Defendants further deny the allegations of paragraph 2, except: (a) admit, on information and belief, that Fairfield Sentry is a BVI company currently in liquidation in the BVI; (b) deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether Fairfield Sentry had direct customer accounts with BLMIS's IA Business or the percentage of assets the Feeder Funds maintained in its BLMIS customer accounts.

3.     When the Grosvenor Defendants received the subsequent transfers of BLMIS Customer Property, Grosvenor Management was the fund manager of multiple funds invested in the Feeder Funds, including Grosvenor Private, Grosvenor Balanced, and Grosvenor Aggressive.

**ANSWER:** The Grosvenor Defendants deny the allegations of paragraph 3, except admit that Grosvenor Management was the fund manager for Grosvenor Private, Grosvenor Balanced, and Grosvenor Aggressive.

## II.    **JURISDICTION AND VENUE**

4.     The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the

New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by the Grosvenor Defendants as subsequent transferees of funds originating from BLMIS.

**ANSWER:** The allegations of paragraph 4 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 4, except admit that the Trustee has brought this adversary proceeding purportedly pursuant to the cited statutes.

5.    This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER:** The allegations of paragraph 5 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 4, except: (a) admit that the main substantively consolidated SIPA case (No. 08-01789 (CGM)) is pending in this Court; and (b) admit, on information and belief, that the District Court Proceeding was commenced in the District Court. Without limitation, the Grosvenor Defendants deny that this Court has jurisdiction to enter a final order or judgment in this proceeding.

6.    The Grosvenor Defendants are subject to personal jurisdiction in this judicial district because they purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through the Feeder Funds. The Grosvenor Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds.

**ANSWER:** The allegations of paragraph 6 contain legal conclusions to which no response is required.  To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 6.

7.    By directing investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund, the Grosvenor Defendants knowingly accepted the

3

rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, the Grosvenor Defendants entered into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction, sent copies of the agreements to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. The Grosvenor Defendants thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER:** The allegations of paragraph 7 contain legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 7, except: (a) admit, upon information and belief, that Fairfield Sentry was an investment fund managed by FGG; (b) admit, upon information and belief, that FGG had a New York office; and (c) admit that the Grosvenor Defendants entered into subscription agreements with Fairfield Sentry, and refer to such documents for their full and accurate contents.

8.      The Grosvenor Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**ANSWER:** The allegations of paragraph 8 contain legal conclusions to which no response is required.  To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 8.

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**ANSWER:** The allegations of paragraph 9 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 9, state that the Grosvenor Defendants do not consent to the issuance of entry of final orders or judgments by the Bankruptcy Court and demand trial by jury of all issues that may be tried by a jury.

10.     Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER:** The allegations of paragraph 10 constitute legal conclusions to which no response is required.

## III.    **BACKGROUND**

11.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, except admit, on information and belief, that: (a) Madoff was arrested on or about December 11, 2008; and (b) the SEC filed a civil complaint against Madoff and BLMIS on or about that date.

12.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and respectfully refer the Court to the District Court's Order dated December 12, 2008, for a complete and accurate statement of its contents.

13.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:** The allegations of paragraph 13 that the SEC took certain action "under" certain statutory provisions constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny those allegations. The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and respectfully refer the Court to the application filed by SIPC, to which reference is made in paragraph 13, for a complete and accurate statement of its contents.

14.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part: a) removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3); b) appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and c) removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and respectfully refer the Court to the District Court's Order dated December 15, 2008, for a complete and accurate statement of its contents.

15.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 and respectfully refer the Court to this Court's Orders dated December 23, 2008, and February 4, 2009, respectively, for complete and accurate statements of their contents.  The allegations of paragraph 15 that the Trustee is "duly qualified to serve and act on behalf of the estate of BLMIS" are legal conclusions to which no response is required.

16.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id*. On June 29, 2009, Madoff was sentenced to 150 years in prison.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, except admit on information and belief that: (a) Madoff pleaded guilty to a criminal information filed against him by the United States Attorney's Office for the Southern District of New York at a hearing in the District Court on or about March 12, 2009; and (b) Madoff was sentenced, on or about June 29, 2009, to a term of

imprisonment.  The Grosvenor Defendants respectfully refer the Court to the transcript of the

March 9, 2009, hearing for a complete and accurate statement of its contents and to the relevant

judgment of conviction entered in the District Court (and subsequent orders and judgments

relating thereto, if any) for a complete and accurate statement of the sentence imposed on

Madoff.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 17, except admit on information and belief

that Frank DiPascali pleaded guilty to a criminal information filed against him by the United

States Attorney's Office for the Southern District of New York at a hearing in the District Court

on or about August 11, 2009, and respectfully refer the Court to the transcript of that hearing for

a complete and accurate statement of its contents.

## IV.    TRUSTEE'S POWER AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 18, except state that the allegations

concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code

constitute legal conclusions to which no response is required.

19.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER:** The allegations in paragraph 19 constitute legal conclusions to which no

response is required.

20.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:** The allegations in paragraph 20 constitute legal conclusions to which no

response is required.

21.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:** The allegations in paragraph 21 constitute legal conclusions to which no

response is required.

## V.    THE DEFENDANTS

22.    Defendant Grosvenor Management is a fund manager maintaining a place of business at Thistle House, 4 Burnaby Street, Hamilton HM 11, Bermuda. Grosvenor Management is the fund manager of Defendants Grosvenor Private, Grosvenor Aggressive, and Grosvenor Balanced.

**ANSWER:** The Grosvenor Defendants deny the allegations in paragraph 22 because

Grosvenor Management is in liquidation, except that the Grosvenor Defendants admit that,

before entering liquidation, Grosvenor Management was the fund manager of Grosvenor Private,

Grosvenor Aggressive, and Grosvenor Balanced.  Grosvenor Management's address is currently

Crown House, 4 Par-La-Ville Road, Hamilton, Bermuda.

23.    Defendant Grosvenor Private is a fund with a registered address c/o Quorum International Limited, Thistle House, 4 Burnaby Street, Hamilton HM 11, Bermuda.

**ANSWER:** The Grosvenor Defendants deny the allegations in paragraph 23 because Grosvenor Private is in liquidation. Grosvenor Private's address is currently Crown House, 4 Par-La-Ville Road, Hamilton, Bermuda.

24.      Defendant Grosvenor Aggressive is a fund with a registered address c/o Quorum International Limited, Thistle House, 4 Burnaby Street, Hamilton HM 11, Bermuda.

**ANSWER:** The Grosvenor Defendants deny the allegations in paragraph 24 because Grosvenor Aggressive is in liquidation. Grosvenor Aggressive's address is currently Crown House, 4 Par-La-Ville Road, Hamilton, Bermuda.

25.      Defendant Grosvenor Balanced is a fund with a registered address c/o Quorum International Limited, Thistle House, 4 Burnaby Street, Hamilton HM 11, Bermuda.

**ANSWER:** The Grosvenor Defendants deny the allegations in paragraph 25 because Grosvenor Balanced is in liquidation. Grosvenor Balanced's address is currently Crown House, 4 Par-La-Ville Road, Hamilton, Bermuda.

## VI.    THE PONZI SCHEME

26.      BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26, except admit on information and belief that Madoff founded and operated BLMIS from a date unknown to the Grosvenor Defendants until approximately December 2008.

27.      Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 27.

28.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 28.

29.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 29.

30.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 30.

31.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme.  The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31. The allegation of paragraph 31 that the IA Business was operated as a Ponzi scheme is a legal conclusion to which no response is required.

32.      The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32.

33.      It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33.

34.      Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:**  The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34.

35.      Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER:** The Grosvenor Defendants admit, upon information and belief, that Madoff

was arrested on or about December 11, 2008, and deny knowledge or information sufficient to

form a belief as to the truth of the remaining allegations of paragraph 35.

36.      Thus, at all times relevant hereto, the liabilities of BLMIS were billions of
dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the
value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time
of the transfers, BLMIS was left with insufficient capital.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 36.

## VII.   THE TRANSFERS

37.      The Feeder Funds received initial transfers of BLMIS Customer Property.
Some or all of those initial transfers were subsequently transferred directly or indirectly to the
Grosvenor Defendants.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 37.   To the extent the allegations of

paragraph 37 concern claims and allegations relating to Kingate Global, the Trustee has

dismissed such claims and thus no response is required.

### A.   FAIRFIELD SENTRY

#### 1.   Initial Transfers from BLMIS to Fairfield Sentry

38.      The Trustee filed an adversary proceeding against Fairfield Sentry and other
defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv.
Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial
transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately
$3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the
allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**ANSWER:** The Grosvenor Defendants: (a) admit that the Trustee filed an adversary

proceeding in this Court styled as *Picard v. Fairfield Sentry Ltd., et al.*, No. 09-01239 (BRL) (the

"Fairfield Action"); (b) deny knowledge or information sufficient to form a belief as to which of

the three complaints filed in the Fairfield Action the Trustee purports to incorporate by reference

in the Complaint; and (c) deny that the alleged initial transfers of Customer Property from

BLMIS to Fairfield Sentry were avoided or are avoidable.  To the extent necessary to support the

foregoing denials, the Grosvenor Defendants further state that they: (i) deny knowledge or

information sufficient to form a belief as to the truth of the allegations in each of the three

complaints filed in the Fairfield Action upon which the Trustee relies to support his claim that

any initial transfers of alleged Customer Property to Fairfield Sentry are or were avoided or

avoidable; and (ii) object to (A) the Trustee's purported incorporation by reference of all other

paragraphs and allegations of the three complaints filed in the Fairfield Action (and therefore do

not answer such allegations) and (B) the inclusion in this adversary proceeding of any issue

implicated by any of the three complaints in the Fairfield Action other than as to the alleged

avoidance or avoidability of what the Trustee characterizes as initial transfers of Customer

Property (and therefore do not answer such allegations).  The Grosvenor Defendants reserve their

right to rely on and introduce any allegations in any of the Trustee's three complaints filed in the

Fairfield Action or in the exhibits thereto as party admissions.  To the extent that any further

response is deemed to be required, the Grosvenor Defendants deny knowledge or information

sufficient to form a belief as to the truth of the allegations of paragraph 38.

39.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield
Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers").  The
Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the
meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551
of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA,
particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the allegations of the first sentence of paragraph 39.  The allegations of the second

sentence of paragraph 39 constitute legal conclusions to which no response is required.  To the

extent a response to such allegations is deemed to be required, the Grosvenor Defendants deny

knowledge or information sufficient to form a belief as to the truth of those allegations.

40.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion
which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the

"Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the allegations of the first sentence of paragraph 40, and state that the allegations of the second sentence of paragraph 40 constitute legal conclusions to which no response is required. To the extent a response to such allegations is deemed to be required, the Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of those allegations.

41.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the allegations of the first sentence of paragraph 41. The allegations of the second sentence of paragraph 41 constitute legal conclusions to which no response is required. To the extent a response to such allegations is deemed to be required, the Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of those allegations.

42.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**ANSWER:** The Grosvenor Defendants deny the allegations of paragraph 42, except: (a) admit that the Trustee defines the term "Fairfield Sentry Initial Transfers" as set forth therein; and (b) respectfully refer the Court to Exhibits A and B to the Complaint for their complete and accurate contents, and deny that those exhibits accurately and correctly state what the Trustee alleges are set forth therein.

14

43.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 43 and respectfully refer the Court to the

Settlement Agreement and this Court's orders dated June 7, 2011, June 10, 2011, and July 13,

2011, to which reference is made in paragraph 43, respectively, for their complete and accurate

contents.

### 2.    Subsequent Transfers From Fairfield Sentry to Grosvenor Aggressive

44.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Grosvenor Aggressive and Grosvenor Management, as fund manager, and is recoverable from Grosvenor Aggressive and Grosvenor Management pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $4,191,288 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Grosvenor Aggressive and/or Grosvenor Management (the "Fairfield Sentry-Aggressive Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Aggressive Subsequent Transfers is attached as Exhibit C.

**ANSWER:** The allegations of paragraph 44 contain legal conclusions to which no

response is required. To the extent a response is deemed to be required, the Grosvenor

Defendants deny the allegations of paragraph 44 and respectfully refer the Court to Exhibit C for

its complete and accurate contents, and deny that that exhibit accurately and correctly states what

the Trustee alleges is set forth therein. The allegation of paragraph 44 that any alleged transfers

are recoverable from the Grosvenor Defendants is a legal conclusion to which no response is

required. To the extent a response is deemed to be required, the Grosvenor Defendants deny that

allegation. The Grosvenor Defendants deny knowledge or information sufficient to form a belief

as to the truth of whether any transfers received by the Grosvenor Defendants from Fairfield

Sentry were subsequent transfers of property originating with BLMIS.

45.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Aggressive Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 45.

### 3.    Subsequent Transfers From Fairfield Sentry to Grosvenor Balanced

46.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Grosvenor Balanced and Grosvenor Management, as fund manager, and is recoverable from Grosvenor Balanced and Grosvenor Management pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $13,000,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Grosvenor Balanced and/or Grosvenor Management (the "Fairfield Sentry-Balanced Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Balanced Subsequent Transfers is attached as Exhibit D.

**ANSWER:** The allegations of paragraph 46 contain legal conclusions to which no

response is required. To the extent a response is deemed to be required, the Grosvenor

Defendants deny the allegations of paragraph 46 and respectfully refer the Court to Exhibit D for

its complete and accurate contents, and deny that that exhibit accurately and correctly states what

the Trustee alleges is set forth therein. The Grosvenor Defendants deny knowledge or

information sufficient to form a belief as to the truth of whether any transfers received by the

Grosvenor Defendants from Fairfield Sentry were subsequent transfers of property originating

with BLMIS.

47.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Balanced Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form

a belief as to the truth of the allegations of paragraph 47.

### 4.    Subsequent Transfers From Fairfield Sentry to Grosvenor Private

48.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Grosvenor Private and Grosvenor

Management, as fund manager, and is recoverable from Grosvenor Private and/or Grosvenor Management pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $14,315,101 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Grosvenor Private and Grosvenor Management (the "Fairfield Sentry-Private Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry-Private Subsequent Transfers is attached as Exhibit E.

**ANSWER:** The allegations of paragraph 48 contain legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 48 and respectfully refer the Court to Exhibit E for its complete and accurate contents, and deny that that exhibit accurately and correctly states what the Trustee alleges is set forth therein. The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of whether any transfers received by the Grosvenor Defendants from Fairfield Sentry were subsequent transfers of property originating with BLMIS.

49.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Private Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** The Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49.

50.    The Fairfield Sentry-Aggressive Subsequent Transfers, the Fairfield Sentry-Balanced Subsequent Transfers, and the Fairfield Sentry-Private Subsequent Transfers are collectively defined as the "Fairfield Sentry Subsequent Transfers."

**ANSWER:** The Grosvenor Defendants deny the allegations of paragraph 50, except admit that the Trustee defines the term "Fairfield Sentry Subsequent Transfers" as set forth therein.

**B.    KINGATE GLOBAL**

**1.    Initial Transfers from BLMIS to Kingate Global**

51.    The Trustee has filed an adversary proceeding against Kingate Global and other defendants in the Bankruptcy Court under the caption *Picard v. Kingate Global Fund, et al.,* Adv. Pro. No. 09-01161 (BRL), in which, in part, the Trustee sought to avoid and recover initial

transfers of Customer Property from BLMIS to Kingate Global in the amount of approximately $437,501,112 (the "Kingate Global Complaint"). The Trustee incorporates by reference the allegations contained in the Kingate Global Complaint as if fully set forth herein."

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 51.

52.     During the six years preceding the Filing Date, BLMIS made transfers to Kingate Global of approximately $398,704,065 (the "Kingate Global Six Year Initial Transfers"). The Kingate Global Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 52.

53.     The Kingate Global Six Year Initial Transfers include approximately $163,447,509 which BLMIS transferred to Kingate Global during the two years preceding the Filing Date (the "Kingate Global Two Year Initial Transfers"). The Kingate Global Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 53.

54.     The Kingate Global Two Year Initial Transfers include approximately $101,753,145 which BLMIS transferred to Kingate Global during the 90 days preceding the Filing Date (the "Kingate Global Preference Period Initial Transfers"). The Kingate Global Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 54.

55.    The Kingate Global Six Year Initial Transfers, the Kingate Global Two Year Initial Transfers, and the Kingate Global Preference Period Initial Transfers are collectively defined as the "Kingate Global Initial Transfers." Charts setting forth these transfers are attached as Exhibits F and G.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 55.

## 2.    Subsequent Transfers From Kingate Global To Grosvenor Balanced

56.    A portion of the Kingate Global Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Grosvenor Balanced and Grosvenor Management, as fund manager, and is recoverable from Grosvenor Balanced and Grosvenor Management pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, approximately $2,000,068 of the money transferred from BLMIS to Kingate Global was subsequently transferred by Kingate Global to Grosvenor Balanced and/or Grosvenor Management (the "Kingate Global-Balanced Subsequent Transfers").  A chart setting forth the presently known Kingate Global-Balanced Subsequent Transfers is attached as Exhibit H.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 56.

57.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Global Initial Transfers, the Kingate Global-Balanced Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all

claims and allegations relating to Kingate Global, no response is required to the allegations of

paragraph 57.

## 3.    Subsequent Transfers From Kingate Global To Grosvenor Private

58.    A portion of the Kingate Global Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Grosvenor Private and Grosvenor Management, as the fund manager, and is recoverable from Grosvenor Private and Grosvenor Management pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, approximately $3,000,114 of the money transferred from BLMIS to Kingate Global was subsequently transferred by Kingate Global to Grosvenor Private and Grosvenor Management (the "Kingate Global-Private Subsequent Transfers").  A chart

setting forth the presently known Kingate Global-Private Subsequent Transfers is attached as Exhibit I.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 58.

59.    The Trustee's investigation is on-going, and the Trustee reserves the right to: (i) supplement the information on the Kingate Global Initial Transfers, the Kingate Global-Private Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 59.

60.    The Kingate Global-Balanced Subsequent Transfers and the Kingate Global-Private Subsequent Transfers are collectively defined as the "Kingate Global Subsequent Transfers."

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 60.

## COUNT ONE
## RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS –
## 11 U.S.C.§§ 550 AND 551

61.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:** The Grosvenor Defendants incorporate and reassert their responses to the allegations contained in all of the previous paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62.    Grosvenor Aggressive and/or Grosvenor Management received the Fairfield Sentry-Aggressive Subsequent Transfers, totaling approximately $4,191,288; Grosvenor Balanced and/or Grosvenor Management received the Fairfield Sentry-Balanced Subsequent Transfers, totaling approximately $13,000,000; and Grosvenor Private and/or Grosvenor Management received the Fairfield Sentry-Private Subsequent Transfers, totaling approximately $14,315,101 (as defined above, the "Fairfield Sentry Subsequent Transfers"). The Fairfield

Sentry Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER:** The allegations of paragraph 62 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 62, except that the Grosvenor Defendants deny knowledge or information sufficient to form a belief as to the truth of whether any transfers received by the Grosvenor Defendants were subsequent transfers of property originating with BLMIS.

63.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Grosvenor Defendants.

**ANSWER:** The allegations of paragraph 63 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 63.

64.    The Grosvenor Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

**ANSWER:** The allegations of paragraph 64 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 64.

65.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Grosvenor Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER:** The allegations of paragraph 65 constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, the Grosvenor Defendants deny the allegations of paragraph 65.

## COUNT TWO
## RECOVERY OF KINGATE SUBSEQUENT TRANSFERS – 
## 11 U.S.C.§§ 550 AND 551

66.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

21

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 66.

67.     Grosvenor Balanced and/or Grosvenor Management received the Kingate Global-Balanced Subsequent Transfers totaling approximately $2,000,068, and Grosvenor Private and/or Grosvenor Management received the Kingate Global-Private Subsequent Transfers, totaling approximately $3,000,114 (as defined above, the "Kingate Global Subsequent Transfers"). The Kingate Global Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 67.

68.     Each of the Kingate Global Subsequent Transfers was made directly or indirectly to, or for the benefit of, Grosvenor Balanced, Grosvenor Private and/or Grosvenor Management.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 68.

69.     Grosvenor Balanced, Grosvenor Private and/or Grosvenor Management immediate or mediate transferees of the Kingate Global Initial Transfers.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 69.

70.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Grosvenor Balanced, Grosvenor Management, and Grosvenor Private recovering the Kingate Global Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER:** The Grosvenor Defendants state that because the Trustee has dismissed all claims and allegations relating to Kingate Global, no response is required to the allegations of paragraph 70.

### RESPONSE TO REQUEST FOR RELIEF

The Grosvenor Defendants deny that the Trustee is entitled to the requested judgment in his favor and against the Grosvenor Defendants, in whole or in part. The Grosvenor Defendants further deny that this Court has the authority or jurisdiction to enter any such judgment.

### AFFIRMATIVE DEFENSES

The Grosvenor Defendants assert the following defenses without assuming the burden of proof or any other burden if, as a matter of law, such burdens would otherwise be on Plaintiff. The Grosvenor Defendants reserve the right to amend this Answer to assert additional defenses, as well as the right to assert counterclaims or claims against third parties based on discovery in this adversary proceeding or otherwise. The following defenses are set forth cumulatively and in the alternative.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Relief)

The Complaint fails to state a claim upon which relief can be granted, including without limitation for the reasons stated in *The Grosvenor Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint* (ECF No. 109).

### SECOND AFFIRMATIVE DEFENSE
### (Lack of Personal Jurisdiction)

The Court lacks personal jurisdiction over the Grosvenor Defendants, Bermudan entities that lack minimum contacts with the United States, and thus cannot enter any judgment against the Grosvenor Defendants in this adversary proceeding.

### THIRD AFFIRMATIVE DEFENSE
### (Dismissed Claims)

The Trustee's claims are barred to the extent they and/or any allegations on which they are based have been or may in the future be dismissed or stricken by the Court, or are based on theories or allegations that may in the future be rejected by this Court or by another court on appeal from any orders of this Court.

23

## FOURTH AFFIRMATIVE DEFENSE
### (11 U.S.C. § 546(e): Securities Safe Harbor)

Pursuant to 11 U.S.C. § 546(e) ("Section 546(e)"), the Trustee may not avoid any alleged Fairfield Sentry Initial Transfers, or pursue under 11 U.S.C. §550(a) any recovery claims against the Grosvenor Defendants premised upon the alleged avoidance or avoidability of any alleged Fairfield Sentry Initial Transfers, except to the extent (if at all) the Trustee can establish that such transfers were made with actual intent to defraud within two years before the Filing Date and are avoidable under 11 U.S.C. § 548(a)(1)(A).

Except to such extent, the alleged Fairfield Sentry Initial Transfers are subject to the Section 546(e) safe harbor.  Therefore, the Trustee may neither avoid such initial transfers nor maintain claims for recovery against the Grosvenor Defendants.  In particular: (a) any such transfers were made "in connection with securities contracts" including (i) BLMIS-Fairfield Sentry account agreements and (ii) other agreements (including Fairfield Sentry's Articles of Association governing the Grosvenor Defendants' redemptions of shares); (b) additionally or alternatively, any such transfers were "settlement payments" made by BLMIS in response to Fairfield Sentry's requests for withdrawals; and (c) the alleged Fairfield Sentry Initial Transfers were made by, to and for the benefit of entities covered by Section 546(e), namely, (i) BLMIS, the alleged initial transferor, which was at all relevant times a "stockbroker"; (ii) each of the Grosvenor Defendants was at all relevant times a "financial institution"; and (iii) additionally or alternatively, Fairfield Sentry was at all relevant times a "financial institution."

## FIFTH AFFIRMATIVE DEFENSE
### (11 U.S.C. § 550(a): Failure to Avoid Initial Transfers)

Under 11 U.S.C. § 550(a), the Trustee may recover transferred Customer Property only "to the extent that a transfer is avoided" under specified provisions of the Bankruptcy Code.  As a result, before the Trustee may recover any property or funds from any Defendant, "he must

first avoid BLMIS's transfers."[1]  The Trustee has not avoided any of the alleged Fairfield Sentry

Initial Transfers, and therefore may not now recover from any of the Grosvenor Defendants.

**SIXTH AFFIRMATIVE DEFENSE**
**(11 U.S.C. § 550(b) and NYDCL § 217(l)):**
**Value, Good Faith, and Without Knowledge of Voidability)**

To the extent that any of the Grosvenor Defendants received any alleged Fairfield

Subsequent Transfers or any proceeds thereof, such property or funds may not be recovered

because the Grosvenor Defendant took for value, in good faith, and without knowledge of the

voidability of the alleged Fairfield Subsequent Transfers within the meaning of 11 U.S.C. §

550(b) and/or as a purchaser for fair consideration without knowledge of the fraud at the time of

the purchase or actual fraudulent intent within the meaning of NYDCL §§ 278(1) and 278(2).

To the extent the Grosvenor Defendants received any transfers of BLMIS property, the

Grosvenor Defendants took those transfers for value because any transfers, to the extent they

occurred, were made in exchange for the Grosvenor Defendants' surrender of their shares in

Fairfield Sentry.

The Grosvenor Defendants did not have knowledge of any fraudulent purpose behind any

transfers they received.  In addition, the Grosvenor Defendants did not know facts that would

have prompted a reasonable person in the Grosvenor Defendants' position to conduct further

inquiry into whether there was any fraudulent purpose behind the alleged transfers.

Even if the Grosvenor Defendants had been on inquiry notice of the allegedly fraudulent

purposes of any alleged transfers or of facts that would have led a reasonable person to conduct

further inquiry, a diligent inquiry by the Grosvenor Defendants would not have discovered any

fraudulent purpose.  Other entities with vastly greater investigatory capabilities than the

---

[1]  *Picard v. Citibank, N.A.*, 12 F.4th 171, 181 (2d Cir. 2021); *see also In re Picard*, 917 F.3d 85, 95 (2d Cir. 2019) ("Only once a transfer is avoided may a trustee recover the underlying property" under 11 U.S.C. § 550(a)); *id.* at 97 ("[A] trustee cannot use § 550(a) to recover property unless the trustee has first avoided a transfer under one of [the enumerated] provisions").

25

Grosvenor Defendants, and with a far more significant level of access to BLMIS personnel and documents than the Grosvenor Defendants, investigated BLMIS but failed to uncover any fraud before December 2008, including the U.S. Securities and Exchange Commission.  Foreign entities with no investigatory power over BLMIS, such as the Grosvenor Defendants, could not possibly have discovered information that U.S. regulators could not discover.

If, as the Trustee alleges, the Fairfield Sentry Initial Transfers are avoidable, the Grosvenor Defendants had no knowledge of such avoidability.

### SEVENTH AFFIRMATIVE DEFENSE
### (11 U.S.C. § 550(d): Single Satisfaction and NYDCL § 278(1)(a))

Under 11 U.S.C. § 550(d), the Trustee "is entitled to only a single satisfaction under" 11 U.S.C. § 550(a).

Under NYDCL § 278(1)(a), the Trustee may only set aside a conveyance "to the extent necessary to satisfy his claim."

Accordingly, to the extent the Trustee has recovered, or will recover, from Fairfield Sentry or from any other immediate or mediate transferee the amount of any avoided initial transfer that includes BLMIS property that the Trustee alleges was received by one of the Grosvenor Defendants, the Trustee is barred from recovering any such alleged Fairfield Subsequent Transfer (or its proceeds) from any of the Grosvenor Defendants.

### EIGHTH AFFIRMATIVE DEFENSE
### (Not BLMIS Customer Property)

The alleged Fairfield Subsequent Transfers did not constitute BLMIS customer property, including, without limitation, for the reasons stated in *The Grosvenor Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint* (ECF No. 109), including because many of the alleged Fairfield Subsequent Transfers could not have been sourced from BLMIS customer property as prior allegedly avoidable transfers from BLMIS to Fairfield Sentry

had been distributed by Fairfield Sentry to its affiliates or other institutions prior to the alleged Fairfield Subsequent Transfers.

### NINTH AFFIRMATIVE DEFENSE
### (Sufficient SIPC Funds)

The Trustee's claims should be dismissed if he has recovered, or during the pendency of this action recovers, funds sufficient to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

### TENTH AFFIRMATIVE DEFENSE
### (Defendants as Initial Transferees—Mere Conduit/Lack of Dominion or Control)

The Trustee's claims are barred because Fairfield Sentry was a mere conduit, and therefore the alleged Fairfield Subsequent Transfers were initial transfers from BLMIS to the Grosvenor Defendants. As the Trustee has previously observed, Fairfield Sentry's "sole purpose was to funnel money to BLMIS" and "no arm's length relationship exist[ed] between [Fairfield Sentry] and BLMIS." *Picard v. Grosvenor Inv. Mgmt. Ltd.*, No. 12-1021, ECF No. 115, at 3, 6 (Bankr. S.D.N.Y. June 15, 2022). Therefore, to the extent Fairfield Sentry received alleged transfers from BLMIS and then transferred those on to the Grosvenor Defendants, Fairfield Sentry was acting as a mere conduit not a transferee. The Grosvenor Defendants' receipt of transfers of BLMIS property would be initial transfers barred by the safe harbor under Bankruptcy Code § 546(e).

### ELEVENTH AFFIRMATIVE DEFENSE
### (British Virgin Islands Proceedings)

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the Fairfield Sentry liquidation proceedings before the Eastern Caribbean High Court of Justice, Commercial Division, British Virgin Islands, including any associated appellate rulings, judgments, orders, or decisions.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Interest)

The Trustee is not entitled to an award of interest.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgments in this proceeding, including because this Court is not established under Article III of the United States Constitution and does not have authority, under the Constitution, to enter final judgments on causes of actions seeking to avoid or recover fraudulent transfers.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, the Grosvenor Defendants hereby demand a jury trial on all claims and issues that may be tried to a jury. The Grosvenor Defendants do not consent, but instead object, to the Bankruptcy Court conducting any jury trial under Rule 9015(b) of the Federal Rules of Bankruptcy Procedure.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

The Grosvenor Defendants do not consent, but instead object, to the entry of a final order or Judgment against them by the Bankruptcy Court.

*[Remainder of page intentionally left blank.]*

## <u>DEFENDANTS' REQUEST FOR RELIEF</u>

**WHEREFORE**, the Grosvenor Defendants demand judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: New York, New York
       February 3, 2023

Respectfully submitted,

PROSKAUER ROSE LLP

By: _/s/ Ehud Barak_
Ehud Barak
Russell T. Gorkin
Elliot R. Stevens
Eleven Times Square
New York, New York 10036
Telephone:    212-969-3000
Facsimile:    212-969-2900
Email:  _ebarak@proskauer.com_
          _rgorkin@proskauer.com_
          _estevens@proskauer.com_

_Attorneys for the Grosvenor Defendants_

## <u>CERTIFICATE OF SERVICE</u>

I, Ehud Barak, hereby certify that on February 3, 2023, I caused the Grosvenor Defendants' Answer to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

Dated: New York, New York           _/s/ *Ehud Barak*_
       February 3, 2023             Ehud Barak