**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>               Plaintiff,<br><br>      v.<br><br>SIX SIS AG,<br><br>               Defendant. | Adv. Pro. No. 12-01195 (CGM)<br><br><br>**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..................................................................1

STATEMENTS OF FACTS .....................................................................3

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................3

    II.    DEFENDANT AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS..........4

ARGUMENT ..........................................................................................6

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..........6

          A.    Defendant Purposefully Availed Itself Of The Laws And Privileges Of Conducting Business In New York And The United States By Investing In The BLMIS Feeder Funds ........................................................7

               1.    Defendant's Intentional Investments With BLMIS Through The BLMIS Feeder Funds Establish Minimum Contacts.................7

                    a.    *BLI* And Recent Decisions Of This Court Establish Jurisdiction Over Defendant....................................8

                    b.    *Walden* Does Not Save Defendant From This Court's Jurisdiction....................................................11

               2.    The Forum Selection And Choice of Law Clauses In The Subscription Agreements Are Strong Jurisdictional Contacts......13

               3.    Defendant's Purposeful Use Of New York Bank Accounts Establishes Personal Jurisdiction.....................................14

               4.    Defendant's Contacts With The Forum Are Sufficiently Related To The Trustee's Claims..............................................17

           B.    The Exercise Of Personal Jurisdiction Over Defendant Is Reasonable ................................................................18

          C.    In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery ................................................................21

    II.    THE ADDITIONAL TRANSFERS RELATE BACK TO THE SAC ................21

          A.    The Additional Transfers Were Made As Part Of The Same Course Of Conduct As The Transfers Alleged In The OC ....................23

i

B.    The OC Provided Notice To Defendant That The Trustee Would Sue For Any Additional Transfers That Were Part Of The Same Course Of Conduct...................................................................................25

III.    THE MERE CONDUIT DEFENSE IS AN AFFIRMATIVE DEFENSE AND THUS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE ...................................................................................................28

A.    The Fact-Intensive Mere Conduit Defense Is Inappropriate For A Motion To Dismiss, But In Any Event The Pleadings Establish That Defendant Was A Transferee.....................................................28

B.    Summary Proceedings Are Inappropriate...................................33

IV.    THE 550(b) GOOD FAITH AND VALUE DEFENSES ARE AFFIRMATIVE DEFENSES AND THUS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE..........................................................34

CONCLUSION....................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
  624 F. Supp. 2d 292 (S.D.N.Y. 2009)...............................................................................22, 24

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ....................................................................................................15, 17

*In re Arcapita Bank B.S.C.(C)*,
  No. 21 CIV 8296 (AKH), 2022 WL 1620307 (S.D.N.Y. May 23, 2022) ............................16

*Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
  397 B.R. 1 (S.D.N.Y. 2007)..............................................................................................29, 30

*In re Bernard L. Madoff Inv. Sec. LLC*,
  No. 22 CIV 6561 (LGS),  2023 WL 395225 (S.D.N.Y. Jan. 25, 2023)  ........................ *passim*

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ..............................................................................................30

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).............................................................................................................14

*Chase Manhattan Bank v. Banque Generale Du Com.*,
  No. 96 CIV 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)..............................14

*In re Chaus Secs. Litig.*,
  801 F. Supp. 1257 (S.D.N.Y. 1992).....................................................................................24

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)............................................................................................6, 18

*Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner,
  Heine, Underberg, Manley, Myerson & Casey)*,
  130 F.3d 52 (2d Cir. 1997)...................................................................................29, 30, 31, 32

*In re CIL Ltd.*,
  582 B.R. 46 (S.D.N.Y. 2016)...............................................................................................21

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)....................................................................................6

*In re CVEO Corp.*,
  327 B.R. 210 (Bankr. D. Del. 2005) ....................................................................................30

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013)......................................................................15

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).....................................................................................6

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011)...................................................................36

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)..................15

*Enron Corp. v. J.P. Morgan Secs. Inc. (In re Enron Corp.)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006)...............................................................28, 29

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019).................................................................7, 16

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
    No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022).................21

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ......13

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    26 N.Y.2d 280 (1970) ............................................................................................12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)......................................................................................17, 18

*In re Glob. Crossing, Ltd.*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008)......................................................................30

*Goldberg v. Halbert (In re Woodbridge Grp. of Cos., LLC)*,
    No. 19-51027 (JKS), 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021) ...............23

*Gucci Am., Inc. v. Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015).......................................................................17

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ................................12

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).....................................................................12

*Hill v. Oria (In re Juliet Homes, LP)*,
    No. 07-36424, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011)................23, 24

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 CIV 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012) .........................15, 18

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) .........................................................................................28

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)................................................................................33

*Jones v. Bock*,
    549 U.S. 199 (2007)......................................................................................................32, 33

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 CIV 7618, 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ..........................................21

*Leema Enters., Inc. v. Willi*,
    575 F. Supp. 1533 (S.D.N.Y. 1983).....................................................................................17

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
    17-CIV-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ......................................13

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ..................................................................................................15, 17

*In re Lyondell Chem. Co.*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014).................................................................................31

*In re M. Fabrikant & Sons, Inc.*,
    447 B.R. 170 (Bankr. S.D.N.Y. 2011).................................................................................24

*Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*,
    33 F.3d 42 (10th Cir. 1994) ...............................................................................................30

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004)..........................................................................................31, 33

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) .....................................................................................31

*Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*,
    66 B.R. 977 (Bankr. S.D.N.Y. 1986)..............................................................................24, 25

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017).................................................................................16

*Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*,
    Adv. Pro. No. 11-2251, 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016)......................29

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016) ..................................................................................14, 15, 16

*Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*,
  443 B.R. 918 (Bankr. N.D. Ga. 2011) ...................................................................27

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafoo Corp.)*
  67 B.R. 304 (Bankr. S.D.N.Y. 1986) .....................................................................26

*Picard v. Banca Carige S.P.A.*,
  Adv. Pro. No. 11-02570, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ............. *passim*

*Picard v. Bank Julius Baer & Co. Ltd*,
  Adv. Pro. No. 11-02922, 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) ..................................................................................... *passim*

*Picard v. Banque SYZ & Co. SA*,
  Adv. Pro. No. 11-02149, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ............. *passim*

*Picard v. Barfield Nominees Ltd.*,
  Adv. Pro. No. 12-01669, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ............2, 9, 10

*Picard v. BNP Paribas S.A. (In re BLMIS)*
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................... *passim*

*Picard v. BSI AG*,
  Adv. Pro. No. 12-01209, 2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 18, 2022) (amended) ..................................................................2, 10, 11, 18

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................... *passim*

*Picard v. Chais (In re BLMIS)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010) ...................................................................18

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) ...................................................................................4

*Picard v. Est. of Stanley Chais (In re BLMIS, LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................27

*Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...................................................................16

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...................................................................6, 18

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
  Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .............. *passim*

*Picard v. First Gulf Bank*,
  Adv. Pro. No. 11-02541, 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022)............2, 35, 36

*Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*,
  Adv. Pro. No. 11-02763, 2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15,
  2022) ................................................................................................................... *passim*

*Picard v. JPMorgan Chase & Co.*,
  No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014)...........................9

*Picard v. Keller Family Trust (In re BLMIS)*,
  634 B.R. 39 (Bankr. S.D.N.Y. 2021) .........................................................................29, 30, 31

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ..................................................................................20

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
  Adv. Pro. No. 11-02539, 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ...............2, 15

*Picard v. Merkin (In re BLMIS)*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...........................................................................31, 36

*Picard v. Miller (In re BLMIS)*,
  631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) ..........................................................................30

*Picard v. Multi-Strategy Fund Ltd.*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022)...............................................................................*passim*

*Picard v. Parson Fin. Panama S.A.*,
  Adv. Pro. No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ..................2, 18

*Picard v. Peter Madoff (In re BLMIS)*,
  468 B.R. 620 (Bankr. S.D.N.Y. 2012)......................................................................22, 24, 27

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
  Adv. Pro. No. 12-01565, 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023) ................. *passim*

*Picard v. UBS AG et al.*,
  647 B.R. 42 (Bankr. S.D.N.Y. 2022).....................................................................................11

*Picard v. UKFP (Asia) Nominees Ltd.*,
  Adv. Pro. No. 12-01566, 2022 WL 17574760 (Bankr. S.D.N.Y. Dec. 9, 2022)............2, 9, 10

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)...............................................................................................8, 21

*Rupp v. Markgraf*,
　　95 F.3d 936 (10th Cir. 1996) ................................................................30

*Sarachek v. Schochet (In re Agriprocessors)*,
　　Adv. Pro. No. 10-09190, 2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14,
　　2012) .......................................................................................................30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
　　No. 20-CV-02586, 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ....................35, 36

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
　　234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................30, 31

*Siegel v. Converters Transp., Inc.*,
　　714 F.2d 213 (2d Cir. 1983) ................................................................22

*Sledziejowski v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
　　No. 13- 22050, Adv. Pro. No. 15-08207, 2016 WL 6155929 (Bankr. S.D.N.Y.
　　Oct. 21, 2016) .......................................................................................17

*Strauss v. Credit Lyonnais, S.A.*,
　　249 F.R.D. 429 (E.D.N.Y. 2008) .........................................................19

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
　　534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...............................................31

*Tamam v. Fransabank SAL*,
　　677 F. Supp. 2d 720 (S.D.N.Y. 2010) .................................................17

*In re Uplift RX, LLC*,
　　625 B.R. 364 (Bankr. S.D. Tex. 2021) ................................................24

*Walden v. Fiore*,
　　571 U.S. 277 (2014) ......................................................................11, 12

*Waldman v. Palestine Liberation Org.*,
　　835 F.3d 317 (2d Cir. 2016) ................................................................18

*In re Warnaco Grp., Inc.*,
　　No. 01 B 41643 (RLB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) .....................30

**Rules**

Fed. R. Civ. P. 15(c)(1)(B) ...........................................................................22

**Other Authorities**

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    Conduit Protocol, No. 12-CV-02652 (S.D.N.Y.  Apr. 14, 2014), ECF 4239 …………..34

*Weisfelner v. CIBC World Markets (In re Lyondell Chem. Co.)*,
    Order, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 2124……...34

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to the motion to dismiss the Trustee's second

amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the

"Motion") filed by SIX SIS AG (*f/k/a* SIS SegaInterSettle AG) ("Defendant").

## **PRELIMINARY STATEMENT**

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action by the

Trustee seeks to recover approximately $52.6 million[1] in subsequent transfers that Defendant

received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and

together with Sentry, the "Fairfield Funds").  Defendant moves to dismiss the Trustee's Second

Amended Complaint (the "SAC"), arguing that (i) this Court does not have personal jurisdiction

over Defendant; (ii) the newly-alleged additional subsequent transfers to Defendant from the

Fairfield Funds (the "Additional Transfers") are barred by the Section 550(f) statute of limitations

because they do not relate back to the Trustee's original Complaint (the "OC"); (iii) the SAC fails

to plausibly allege Defendant was a transferee as opposed to a conduit; and (iv) the SAC establishes

Defendant's Section 550(b) good faith and value defenses.  These arguments are substantially the

---

[1] The amount sought in the original complaint was $7,023,692.  *Picard v. SIX SIS AG*, ECF No. 12-01195 ("SIX SIS Docket", ECF No. 1).  However, the amended Complaint (SIX SIS Docket, ECF No. 115) and second amended Complaint (*Id.* ECF No. 126) add transfers that the Trustee subsequently identified.  *See* SIX SIS Docket, ECF Nos. 114, 125, 128 (each a Stipulation and Order).  The amended Complaint also removed claims seeking to recover subsequent transfers Defendant was alleged to have received from Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. (together with Kingate Global, the "Kingate Funds"), in light of a prior settlement.  *See Picard v. Ceretti*, Adv. Pro. No. 09-01161 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019).

same as those recently rejected by this Court in other subsequent transfer cases.[2]  For the reasons set forth herein, Defendant's arguments fail.

First, this Court has personal jurisdiction over Defendant.  Defendant purposefully invested in the Fairfield Funds, knowing from the Fairfield Funds' documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of the Fairfield Funds' investments, that the Fairfield Funds fed substantially all of their funds into BLMIS, and that BLMIS was essential to the Fairfield Funds' investments.  Investing with BLMIS was the entire point.  Defendant maintains that it is different from other investors in the Fairfield Funds, but the fact that it knowingly invested in BLMIS in New York is determinative.  In addition, Defendant's subscription agreements with the Fairfield Funds required it to submit to New York jurisdiction, forum selection, and choice of law clauses.  Defendant also designated and used New York bank accounts to receive the transfers from Sentry at issue.  These facts, plus multiple additional contacts discussed herein, are more than sufficient to establish jurisdiction.

Second, the Additional Transfers relate back to the OC and therefore are not time-barred because they were part of the same course of conduct between Defendant and the Fairfield Funds as the transfers alleged in the OC—they were the same types of redemptions made from the same feeder fund investments.  Moreover, the OC put Defendant on notice that the Trustee was seeking

---

[2] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022); *Picard v. Banque SYZ & Co. SA*, Adv. Pro. No. 11-02149, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 12-02570, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bank Julius Baer & Co. Ltd.*, Adv. Pro. No. 11-02922, 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) ("*BJB*"); *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565, 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023); *Picard v. Barfield Nominees Ltd.*, Adv. Pro. No. 12-01669, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022); *Picard v. UKFP (Asia) Nominees Ltd.*, Adv. Pro. No. 12-01566, 2022 WL 17574760 (Bankr. S.D.N.Y. Dec. 9, 2022); *Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*, Adv. Pro. No. 11-02763, 2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15, 2022); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539, 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022); *Picard v. BSI AG.*, Adv. Pro. No. 12-01209, 2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 18, 2022) (amended); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541, 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022). To avoid repetition and long string cites, the Trustee will avoid citing to all of the Court's recent decisions, but these and other similar decisions all support denial of the Motion.

to recover any and all avoidable transfers subsequently transferred to Defendant by the Fairfield Funds.

Finally, the "mere conduit" defense and Section 550(b) "good faith" and "value" defenses are fact-intensive affirmative defenses that are premature and inappropriate on a motion to dismiss. As this Court found in *Standard Chartered*, it is a defendant's burden to plead these affirmative defenses in an answer and prove them with evidence; they cannot be established here from the face of the SAC. *See Standard Chartered*, 2023 WL 118787, at **7–8 (mere conduit); *id.* at **11–12 (good faith and value).

The Trustee respectfully requests that the Court deny the Motion.

## STATEMENTS OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. SAC ¶¶ 29, 58. BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC") beginning in January 1960. *Id.* ¶ 30. BLMIS purported to operate three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 31. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out of the market. *Id.* ¶¶ 12, 39, 44–46, 52. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 22–25, 35. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 17.

3

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S.Ct. 1209, 212 L. Ed. 2d 217 (Feb. 28, 2022). Defendant invested in the Fairfield Funds, which it knew were BLMIS feeder funds. SAC ¶¶ 2, 10-12. Defendant invested in other BLMIS feeder funds as well, including Luxalpha SICAV, Groupement Financier Levered Ltd., and the Kingate Funds. SAC ¶ 2.

## II.    DEFENDANT AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

Defendant invested with and received redemptions from the Fairfield Funds dozens of times over the course of its investments. SAC ¶¶ 14-15. The Fairfield Funds were managed by the Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 ("Fairfield Docket"), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021). Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. *See* Fairfield Second Amended Complaint, Fairfield Docket, ECF No. 286 (filed Aug. 28, 2020), ¶¶ 89, 95. Sigma was a "currency fund," meaning it accepted subscriptions in Euros, converted the money to U.S. dollars, and then invested 100% of its assets in Sentry. *See id.* ¶ 96.

As an investor in the Fairfield Funds, Defendant executed multiple subscription agreements. SAC ¶ 12. In these agreements, Defendant submitted to New York jurisdiction, venue, service of process, and law. *Id.* ¶ 16. Also in these agreements, Defendant affirmed that it received and read the Fairfield Funds' Private Placement Memoranda or Offering Memoranda (collectively, the "PPMs"), which explicitly disclosed that Sentry invested almost entirely with BLMIS. *Id.* ¶¶ 12–13. Thus, Defendant knew and intended that by investing in Sentry, it was in fact investing with BLMIS in New York. *Id.*

4

The PPMs also explicitly disclosed BLMIS's multiple roles as the *de facto* investment manager, broker dealer, and custodian for Sentry. *Id*. ¶ 12. Additionally, the PPMs disclosed how BLMIS was "essential to the continued operation of" Sentry. *Id*. And as detailed below, the PPMs also highlighted the numerous U.S. connections inherent to investing in the Fairfield Funds.

Like other investors in Sentry, Defendant sent subscription payments to Sentry's New York correspondent bank account ("Sentry NY Account"). SAC ¶ 13. Subscription payments were then deposited into BLMIS's account at JPMorgan Chase Bank in New York. *See* Fairfield Second Amended Complaint ¶ 38.

In addition, Defendant designated and used a bank account at Brown Brothers Harriman in New York in its own name (the "BBH NY Account") to receive redemption payments from, as well as remit subscription payments to, Sentry. SAC ¶ 15. Defendant also used an HSBC Bank USA correspondent bank account in New York (the "HSBC NY Account") via Citco Global Custody N.V. ("Citco") as its agent to receive additional redemption payments from Sentry. *Id.*

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. SAC ¶ 62; *see also* Fairfield Second Amended Complaint ¶¶ 314-16. In 2011, the Trustee settled with the Fairfield Funds. SAC ¶ 63. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion, but repaid only $70 million to the BLMIS estate. *Id.*; Fairfield Docket, ECF No. 109 (Sentry Consent Judgment) and ECF No. 69-2 (Settlement Agreement with Trustee) at 5. Sigma separately consented to a judgment in the amount of $752.3 million. Fairfield Docket, ECF No. 110 (Sigma Consent Judgment). As Sigma was a feeder fund that invested in BLMIS indirectly through Sentry, this amount represents a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *See* Sigma

Consent Judgment.  Following the settlement, the Trustee commenced a number of adversary proceedings against Defendant and others to recover the approximately $3 billion in outstanding customer property stolen by Madoff.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84–85 (finding "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction").  These pleadings are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction.  *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).  Specific jurisdiction—at issue here—exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities.  *See Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).  This Court has articulated the appropriate jurisdictional standard in its recent decisions in the Trustee's cases, describing the minimum contacts necessary to establish the Court's specific jurisdiction over a nonresident defendant.  *See, e.g.*, *Carige*, 2022 WL 2387522, at *2-*5.  Accordingly, the requirements for purposeful availment, relatedness, and reasonableness will not be repeated at length here.

A. **Defendant Purposefully Availed Itself Of The Laws And Privileges Of Conducting Business In New York And The United States By Investing In The BLMIS Feeder Funds**

Defendant had numerous contacts with the United States that establish this Court's jurisdiction. Defendant (1) purposefully targeted the New York securities market by investing in the Fairfield Funds and other BLMIS feeder funds, knowing that the funds' assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to its investments in the Fairfield Funds; and (3) designated and used New York bank accounts to transact with the Fairfield Funds in connection with its investments and redemptions. Certain of these contacts independently establish jurisdiction. In their totality, these contacts make clear that Defendant availed itself of the forum. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum."). And because the Trustee's claims in this proceeding arise out of and relate to Defendant's contacts with New York, the minimum contacts requirement is satisfied, and adjudication in New York is reasonable and appropriate.

1. ***Defendant's Intentional Investments With BLMIS Through The BLMIS Feeder Funds Establish Minimum Contacts***

Defendant knowingly and intentionally directed monies to BLMIS in New York through the Fairfield Funds in order to invest in the U.S. securities market. SAC ¶¶ 10-11. This intentional investment with BLMIS in New York through known BLMIS feeder funds establishes personal jurisdiction over Defendant. *See In re Bernard L. Madoff Inv. Sec. LLC,* No. 22 CIV 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard Interlocutory Decision*") (finding that this Bankruptcy Court "correctly held, applying settled precedent, that by intentionally

7

investing in a New York-based investment fund, Defendant purposefully availed itself of the privilege of doing business in New York").  As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).

By executing the subscription agreements, Defendant affirmed that it received and read the Fairfield Funds' PPMs and as a result knew that: (i) Sentry (and Sigma, through its purchases of Sentry shares) invested at least 95% of its assets with BLMIS; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the SEC; (iv) BLMIS was the executing broker for Sentry's investments (and the investments of Sigma, through its purchase of Sentry shares), and purportedly operated and executed the SSC Strategy on each fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities and U.S. options; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS (and the investments of Sigma, through its purchase of Sentry shares); and (viii) BLMIS was "essential to the continued operation of" Sentry and Sigma.  *See* SAC ¶ 12.

> ### a.    *BLI* **And Recent Decisions Of This Court Establish Jurisdiction Over Defendant**

Based on Defendant's demonstrated intention to invest with BLMIS through the Fairfield Funds, Judge Lifland over a decade ago concluded that Sentry investors like Defendant are subject to personal jurisdiction.  *See Picard v. Bureau of Labor Ins*. (*In re BLMIS*), 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").  There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific

goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id*. at 506.
There, as here, the subsequent transferee was provided with PPMs and executed subscription
agreements establishing the investment's BLMIS-centric purpose. *Id*. at 507-08; *see also* SAC ¶
12. And there, as here, the subsequent transferee argued that the foreseeability of its investment
"ending up" in a BLMIS account was insufficient to support personal jurisdiction. *Id*. at n.14. Not
only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining that:

> BLI's investments in Sentry did not merely "end up" in an account
> at BLMIS as a result of happenstance or coincidence. Rather, BLI
> purposefully availed itself of the benefits and protections of New
> York laws by knowing, intending and contemplating that the
> substantial majority of funds invested in Sentry would be transferred
> to BLMIS in New York to be invested in the New York securities
> market.

*Id*. at 517; *see also Picard v. JPMorgan Chase & Co*., No. 08-99000 (SMB), 2014 WL 5106909,
at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this SIPA liquidation proceeding have
already "confirmed that defendants who invested directly or indirectly with BLMIS and received
payments from BLMIS as initial transferees or as subsequent transferees of those initial transfers
were subject to the Court's personal jurisdiction").

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions. In
those cases, similar to here, the Trustee asserted allegations as to the purpose of the investment
and the defendants' contacts with FGG for ultimate investment in BLMIS. *See, e.g., Multi-Strategy*, 2022 WL 2137073, at *3-*4; *Banque SYZ*, 2022 WL 2135019, at *3-*4; *Carige*, 2022
WL 2387522, at *3-*4; *Barfield Nominees*, 2022 WL 4542915, at *3; *UKFP (Asia) Nominees*,
2022 WL 17574760, at *3; *Inteligo Bank*, 2022 WL 17742686, at *3. Based on those contacts,
this Court found that each defendant's alleged contacts with New York were not "random, isolated,
or fortuitous." *Multi-Strategy*, 2022 WL 2137073, at *4; *Banque SYZ*, 2022 WL 2135019, at *4;

*Carige*, 2022 WL 2387522, at \*3; *Barfield Nominees*, 2022 WL 4542915, at \*3; *UKFP (Asia) Nominees*, 2022 WL 17574760, at \*5; *Inteligo Bank*, 2022 WL 17742686, at \*5. This Court has further clarified that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the pre-discovery stage of litigation." *Carige*, 2022 WL 2387522, at \*2; *see also, e.g., Barfield Nominees*, 2022 WL 4542915, at \*2 (same); *UKFP (Asia) Nominees*, 2022 WL 17574760, at \*2 (same); *Inteligo Bank*, 2022 WL 17742686, at \*3 (same). And as noted above, the district court endorsed this holding in the *Lombard Interlocutory Decision*.

Defendant's attempts to distinguish *Multi-Strategy* and *Banque Syz* based on allegedly unique jurisdictional allegations made in those cases (Mot. at 6-9) should be rejected. Defendant's primary argument in this regard—that, unlike defendants in those cases, Defendant did not have a profit motive underlying its investments because it did not invest its own money and only earned fees—is not a basis for defeating jurisdiction. A similarly situated group of defendants recently raised the same issue of profit motive in their motion to dismiss without success. *See* Motion to Dismiss Memorandum of Law, *Picard v. BSI AG*, Adv. Pro. No. 12-01209, ECF No. 123 at 22 (Bankr. S.D.N.Y. June 24, 2022) and *BSI,* 2022 WL 17412774. Similarly, the relationship between Defendant and any purported clients is not relevant to jurisdiction.[3]

However, this Court has repeatedly held that to plead a prima facie case for jurisdiction, the Trustee must plausibly allege that a defendant knowingly directed funds to be invested with

---

[3] Defendant's argument that it is a "mere conduit" is dealt with separately below.

BLMIS in New York.  *See e.g., BSI*, 2022 WL 17412774, at \*2-\*5.  The Trustee has done that here.

Moreover, the notion that Defendant did not profit is nonsensical.  Defendant profited from these investments, whether it retained all or part of the redemptions, took fees for investing clients' funds or obtained other business or financial benefits.  And Defendant's admitted receipt of fees earned on millions of dollars of New York investments (Mot. at 1), over the span of several years, supports personal jurisdiction.  *See Picard v. UBS AG et al.*, 647 B.R. 42, 57 (Bankr. S.D.N.Y. 2022) (finding defendants' receipt of fees for facilitating affiliates' investments in New York-based BLMIS relevant to purposeful availment).  As such, the recent subsequent transfer decisions cited above are controlling and resolve Defendant's personal jurisdiction defense without any inquiry into its additional U.S. contacts.

### b.    *Walden* Does Not Save Defendant From This Court's Jurisdiction

Seeking to sidestep *BLI*, Defendant cites *Walden v. Fiore*, 571 U.S. 277 (2014), attempting to downplay the importance of its contacts with the Fairfield Funds.  Mot. at 9-10.  However, *Walden* is of "no assistance to Defendant."  *Multi-Strategy*, 2022 WL 2137073 at \*4.  The facts and applicable law of *Walden*, where the "effects test" was employed to assess whether injuries in a tort case arose within the forum based on tortious activity outside of the forum, are significantly different from those here.  The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada.  *See Walden*, 571 U.S. at 288-89.  Under the facts of *this* case—where Defendant has signed agreements expressly indicating its intent to direct custody and control over all of its funds to a specific U.S. broker-dealer in order to knowingly invest in the U.S. securities markets—it has purposefully availed itself of the laws and protections of the United States.  *See Lombard Interlocutory Decision* at 8 (distinguishing *Walden* and noting

that where Trustee alleged that subsequent transferee defendant intentionally invested in BLMIS, "Defendant's *own* intentional contacts with New York create the requisite connection", not Sentry's contacts).

For similar reasons, Defendant's effort to analogize its intentional investing into the U.S. markets to contracting with a party that merely performed the contract in New York in the forum falls flat.  Mot. at 10.  Unlike in *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285-86 (1970) (Mot. at 10), the Trustee is not alleging that Defendant's connection to the forum is limited to the benefits it received from a plaintiff's or third parties' activities in the forum.  The Trustee is alleging that *Defendant* intentionally took actions in, and directed towards, the forum.  The fact that many of these actions involved the Fairfield Funds does not defeat jurisdiction.  Defendant's contacts with New York were "intertwined with [its] transactions or interactions with the plaintiff or other parties," *Walden*, 571 U.S. at 286, and thus support jurisdiction.

Equally unavailing is Defendant's reliance on *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *6-*7 (S.D.N.Y. Mar. 1, 2017) and *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016), where the use of a correspondent account in New York was deemed an "incidental consequence[] of fulfilling a foreign contract."  Mot. at 10-11.  In *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), this Court already determined that this line of cases is not relevant to the Trustee's subsequent transfer actions.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").  This is not a dispute between two parties stemming from services owed under a foreign contract, like the breach of fiduciary duty and other claims in *Hau Yin To* and *Hill*.  Rather, this is a fraudulent transfer recovery action brought in a SIPA liquidation proceeding to

recover fraudulent transfers from an investor whose transfers of funds to and from New York

fulfilled the very purpose of its subscription agreements and evidenced an intent to direct activity

towards the U.S. securities markets. *See BLI*, 480 B.R. at 513-514 ("This movement of money to

and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or

incidental; instead, it was 'the ultimate objective' and the 'raison d'etre' of the Agreement between

BLI and Sentry."). Indeed, the Trustee is seeking to recover the very transfers that came through

the U.S. bank accounts in New York.[4]

### 2.    The Forum Selection And Choice Of Law Clauses In The Subscription Agreements Are Strong Jurisdictional Contacts

Defendant's subscription agreements with the Fairfield Funds further evidence a "strong

nexus with New York" supporting jurisdiction. *See BLI*, 480 B.R. at 517, n.15. When Defendant

invested in the Fairfield Funds, it signed subscription agreements through which it submitted to

venue in New York, the jurisdiction of the New York courts, and the application of New York law.

SAC ¶ 16. Defendant argues that these provisions are irrelevant because the subscription

agreements do not govern the redemptions at issue, the Trustee is not a party to these agreements,

and therefore the Trustee cannot claim Defendant consented to this Court's jurisdiction. Mot. at

12. But the Trustee is not arguing that this Court has jurisdiction solely based on these provisions.[5]

Rather, as this Court found in *BLI*, Defendant's agreements to New York venue, jurisdiction, and

---

[4] Defendant also cites *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17 CIV 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017), which involved a claim for breach of a contract to book a concert venue in Indiana. There, the court found that defendant's planned use of a New York bank account to make contractual payments was insufficient to establish specific jurisdiction, given, among other factors, that the contemplated performance was a one-time booking that would have been accomplished entirely in Indiana. *Id.* at *6. *Letom* is inapposite here, where Defendant over the course of five years knowingly directed millions of dollars to BLMIS in New York and voluntarily used New York accounts numerous times to receive redemptions.

[5] As such, this Court's prior decision in the Fairfield chapter 15 liquidation proceedings, where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in the subscription agreements, is of no relevance here. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018).

law show that Defendant purposefully directed its activities towards New York and provide another strong jurisdictional contact with New York.  480 B.R. at 517.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com*., No. 96 CIV 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) ("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").  To this end, the *BLI* Court, without addressing the issue whether defendant consented to jurisdiction, found that the clauses within the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15.

### 3.    Defendant's Purposeful Use Of New York Bank Accounts Establishes Personal Jurisdiction

This Court also has jurisdiction because Defendant purposefully used the New York banking system to subscribe into and redeem from the Fairfield Funds.  *See Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 70 & n.18 (S.D.N.Y. 2016) ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].").  By signing subscription agreements, Defendant agreed to direct its respective payments to a New York correspondent bank account for ultimate deposit into BLMIS's account at JPMorgan Chase Bank in New York.  *See* SAC ¶ 13.  Defendant also used the BBH NY Account in its own name and HSBC NY Account to receive redemption payments from Sentry.  *Id.* ¶ 15.

14

Courts have often held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6-*7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same). In this SIPA liquidation proceeding, this Court has similarly found jurisdiction where initial and subsequent transferee defendants invested through and received transfers from U.S. bank accounts. *See, e.g.*, *Meritz*, 2022 WL 3273044, at *3 ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."). Based on the forgoing, Defendant's use of the BBH NY Account and HSBC NY Account alone are sufficient to confer jurisdiction over Defendant.

That the HSBC NY Account was a correspondent bank account does not change the analysis. The New York Court of Appeals has held that a defendant's purposeful use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established." *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012); *see also Arcapita*, 549 B.R. at 67-69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same). All that is necessary for "purposeful" use is that it was not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39 (distinguishing case where defendant passively received funds due entirely to another party's actions).

15

Here, the BBH NY Account—a non-correspondent account—was in Defendant's name, and Defendant directed Sentry to send numerous redemption payments to this account, making the purposeful use of such account obvious. Similarly, Citco, as agent for Defendant, used the HSBC NY Account to receive numerous redemption payments on behalf of Defendant. Defendant's use of these accounts was purposeful because Defendant agreed and intended to use New York accounts. *See Esso*, 397 F. Supp. 3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]."). [6]

That Sentry's PPMs mandated subscribers to use the Sentry NY Account is also irrelevant, because Defendant voluntarily entered into its subscription agreements with Sentry. *See In re Arcapita Bank B.S.C.(C)*, No. 21 CIV 8296 (AKH), 2022 WL 1620307, at *6 (S.D.N.Y. May 23, 2022) (defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).

Thus, the use of the New York bank accounts in connection with the redemptions went beyond "mere maintenance" (Mot. at 11), as Defendant was a knowing participant in the underlying transactions and directed the movement of funds through these accounts. To this end, the cases cited by Defendant regarding defendants' "mere maintenance" of, or passive, "knowing

---

[6] That the HSBC NY Account was used by Citco as Defendant's agent, and not by Defendant directly, is not relevant. *See Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (conduct of agent is attributed to principal for purposes of jurisdictional analysis).

receipt of funds" through an account are inapplicable or for other reasons inapposite. Mot. at 11.
*See Sledziejowski v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, No. 13-22050, Adv. Pro. No.
15-08207, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) (finding no personal
jurisdiction based on third-party transfer to defendant sent from United States); *Leema Enters.,
Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (finding that, unlike here, correspondent
bank accounts were "unrelated to the fraud alleged"); *Tamam v. Fransabank SAL*, 677 F. Supp. 2d
720, 726-27 (S.D.N.Y. 2010) (finding no substantial relationship between the correspondent bank
accounts and alleged claims).

Finally, as addressed above, Defendant sent and received payments numerous times to and
from both the BBH NY Account and Sentry NY Account, including all of the redemptions from
Sentry sought in this action. Where, like here, there has been repeated use of a correspondent
account, purposeful availment may be inferred from the sheer volume of transactions. *See Licci*,
20 N.Y.3d at 340 (routing several million dollars through correspondent account dozens of times
indicates desirability and lack of coincidence); *Al Rushaid*, 28 N.Y.3d at 323-327 (finding transfer
to correspondent accounts at least 12 times for $4 million sufficient for personal jurisdiction);
*Gucci Am., Inc. v. Li*, 135 F. Supp. 3d 87, 94–96 (S.D.N.Y. 2015) (transfers nearly a dozen times
through correspondent account sufficient to support personal jurisdiction). Defendant's repeated,
systematic, and purposeful use of New York bank accounts to direct funds to and from BLMIS
through the Fairfield Funds is sufficient to establish minimum contacts with New York.

### 4. *Defendant's Contacts With The Forum Are Sufficiently Related To The Trustee's Claims*

All of the foregoing contacts by Defendant "arise out of or relate to" the Trustee's claim to
support jurisdiction. As the Supreme Court recently held, the "relate to" test does not require a
causal relationship. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–

30 (2021).   Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566.

Consistent with recent decisions by this Court, the Trustee's claims are directly related to Defendant's investment activities with FGG and BLMIS.  *See, e.g.*, *Parson Fin. Panama*, 2022 WL 3094092, at *5; *BSI*, 2022 WL 17412774, at *4.  In those cases, as here, the Trustee is seeking to recover the very transfers that came through the New York accounts analyzed above, and thus Defendant's use of these New York accounts is integral to the Trustee's claims.  *See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts"); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding that defendant's contacts with the forum and the Trustee's claims are "inextricably related").

### B.    The Exercise Of Personal Jurisdiction Over Defendant Is Reasonable

Defendant fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).  Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Chloé*, 616 F.3d at 165.  Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum."  *BNP*, 594 B.R. at 188.

This is not that "rare" case, and the burden on the Defendant is minimal here.  Defendant labels its contacts with the forum as the "most incidental of contacts."  Mot. at 13.  But as noted

above, the contacts were purposeful and relevant to the Trustee's claims against Defendant to recover subsequent transfers of stolen customer property. The SAC makes clear that Defendant knowingly directed its funds to be invested with New York-based BLMIS, and that this was the fundamental purpose of its investments with the Fairfield Funds and other BLMIS feeder funds, including Luxalpha SICAV, Groupement Financier Levered Ltd., and the Kingate Funds. *See Carige*, 2022 WL 2387522, at *3; SAC ¶ 2. Although Defendant protests that it could "never" have anticipated litigating in New York for disputes over its investments in the Fairfield Funds (Mot. at 14), its subscription agreements with the funds contemplate a New York forum for such disputes and Defendant in fact has actively participated in this SIPA liquidation proceeding in New York for more than a decade. *See Multi-Strategy*, 2022 WL 2137073, at *5 (finding exercise of jurisdiction reasonable where, as here, defendant had "irrevocably" submitted to the jurisdiction of New York courts when it signed subscription agreements with FGG, had actively participated in the action, and was represented by U.S. counsel).

Defendant also claims that litigation in the U.S. would implicate foreign law, particularly Swiss bank privacy laws, and thus put it at risk of criminal sanctions and require "significant" legal costs. Mot. at 13-14. But these concerns are largely mitigated by the Litigation Protective Order governing the protection of confidential information in this liquidation, which this Court entered on June 6, 2011 (and subsequently modified on September 17, 2013) (the "LPO"). The LPO has been sufficient to protect the sensitive information of hundreds of other parties in the Trustee's numerous adversary proceedings and it is sufficient here. *See Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 455 (E.D.N.Y. 2008) (holding protective orders that restricted the public disclosure of sensitive information addressed defendant's objection that the information sought in discovery was protected by French privacy laws). That the parties may need to engage in foreign

19

discovery is also no reason to dismiss a case for lack of jurisdiction. Indeed, the Trustee has successfully engaged in discovery and worked through foreign privacy concerns in many other BLMIS actions where defendants, documents and witnesses were located in foreign countries, including in Switzerland.[7]

Defendant argues that litigation in the United States is unduly burdensome because (1) "none" of its activities concerning its Fairfield Fund investments occurred in the United States, and (2) "all" evidence would be located in the foreign jurisdiction. Mot. at 13. But as discussed above, Defendant knowingly directed these investments to BLMIS in New York, and any burden on Defendant from the location of evidence in a foreign jurisdiction is negligible. *See Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 119 (Bankr. S.D.N.Y. 2011) (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). Defendant also claims that its burden to litigate in New York is "disproportionate" to the fees it earned from its investments with the Fairfield Funds. Mot. at 13. But, again, Defendant's narrow focus on its fees does not diminish the broad scope of its U.S.-based activities for its investments with the Fairfield Funds over the years.

As this Court has held, "[t]he forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 2022 WL 2137073, at *5; *Banque SYZ*, 2022 WL 2135019, at *5 (same); *see also Lombard Interlocutory Decision* at 10-11 (crediting this Court's findings that the forum has a strong interest in adjudicating the liquidation of funds for the benefit of creditors). Defendant maintains that Switzerland is the "more sensible" forum in light of the "foreign law concerns" emanating from the Swiss bank privacy laws. Mot. at 14.

---

[7] For example, most recently, the Trustee took the examination of a Swiss national in another of the Trustee's actions pursuant to the Hague Convention for Taking of Evidence Abroad in Civil or Commercial Matters. *See* Order Issuing a Letter of Request for Service Abroad of Judicial of Extrajudicial Documents in Civil or Commercial Matter, ECF No. 226 Aug. 3, 2021), *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y.).

But as the Second Circuit recently recognized, this forum has a "compelling" interest in facilitating

the recovery of fraudulently transferred property by the estate. *See In re Picard*, 917 F.3d at 103;

*see also Lombard Interlocutory Decision* at 10-11.[8]

Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### C.    In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery. *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,

No. 21-CV-10316 (LAP), 2022 WL 3910679, at *8-9 (S.D.N.Y. Aug. 31, 2022) (holding that a

plaintiff need not establish a prima facie case for jurisdiction to obtain jurisdictional discovery).

Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is

some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 CIV 7618, 2009 WL

3817590, at *4 (S.D.N.Y. Nov. 16, 2009).

### II.    THE ADDITIONAL TRANSFERS RELATE BACK TO THE SAC

Contrary to Defendant's arguments, the Trustee's claims to recover the Additional

Transfers are timely because they relate back to the OC.[9]

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original

pleading when . . . the amendment asserts a claim or defense that arose out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R.

Civ. P. 15(c)(1)(B). Courts in the Second Circuit, including this Court, have "liberally construed"

---

[8] Defendant cites *In re CIL Ltd.*, 582 B.R. 46 (S.D.N.Y. 2016) to argue that jurisdiction would be unreasonable, Mot. at 13-14, but in that case the court found that the trustee had not articulated any U.S. interests or social policies that would be advanced by adjudicating the case in the United States. By contrast, here, the Trustee's strong interest in adjudicating these cases in the United States has been recognized by this Court, the District Court, and the Second Circuit.

[9] Defendant is not contesting the addition of transfers in the amount of $18,374,324 in the first amended complaint. *See* SIX SIS Docket ECF No. 115 (First Amended Complaint) ¶¶ 2, 67, 72. Defendant's arguments relate solely to the addition in the SAC of the Additional Transfers in the amount of $33,000,038. Mot. at 17 n.1.

Rule 15, which "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *BJB*, 2022 WL 17726520, at *15-*16; *Standard Chartered*, 2023 WL 118787, at *5-*6; *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)); *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215-16 (2d Cir. 1983); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12. This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading." *BJB*, 2022 WL 17726520, at *15 (citing *Peter Madoff*, 468 B.R. at 633 (quotations omitted)).

Additional fraudulent transfer claims against existing defendants relate back to the original pleading where the newly-alleged additional transfers occurred as part of the "same 'course of conduct'" as the originally alleged transfers. *BJB*, 2022 WL 17726520, at *15 (citing *Peter Madoff*, 468 B.R. at 633, and *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)); *Standard Chartered*, 2023 WL 118787, at *5-*6. When examining "conduct" under Rule 15, courts typically analyze whether "the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint," and whether "the original complaint gave sufficient notice to the defendants that the Trustee may sue for additional transfers that were part of the same course of conduct." *Standard Chartered*, 2023 WL 118787,

at *5 (citing *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424, 2011 WL 6817928, at *7 (Bankr.

S.D. Tex. Dec. 28, 2011) (citations omitted)(cleaned up)).

A.    **The Additional Transfers Were Made As Part Of The Same Course Of Conduct As The Transfers Alleged In The OC**

Relation back should be permitted here because the facts here are no different than those

in *BJB* and *Standard Chartered*, where this Court recently agreed that relation back was

appropriate. *BJB*, 2022 WL 17726520, at *15-*16; *Standard Chartered*, 2023 WL 118787, at *5-

*6.    Specifically, the Trustee has alleged an underlying common course of conduct involving

Defendant's investing into and redeeming from Madoff's fraud through BLMIS feeder funds in

both the OC and the SAC.    The Additional Transfers are subsequent transfers being sought under

the same legal theories and as part of the same set of facts as set forth in the OC.    Both sets of

transfers are being sought under Section 550(a) and are subsequent transfers of customer property

received by Defendant from the Fairfield Funds in connection with the BLMIS Ponzi scheme.

Thus, any defenses Defendant might have regarding the Additional Transfers will likely be the

same as or similar to the defenses to the original transfers.    In sum, the Additional Transfers are

no different in form or substance to the transfers alleged in the OC, and therefore they relate back.

Defendant argues that the fact that the Additional Transfers are part of the same Ponzi

scheme as those alleged in the OC is an insufficient basis for relation back. Mot. at 18.    Numerous

courts have found otherwise.    *See, e.g., Goldberg v. Halbert (In re Woodbridge Grp. of Cos., LLC)*,

No. 19-51027 (JKS), 2021 WL 5774217, at *9-*11 (Bankr. D. Del. Dec. 6, 2021) (finding relation

back of newly-alleged claims to recover principal, where original complaint just sought interest,

because "both the initial and amended claims arise from the Defendant's investment in the

Woodbridge Ponzi Scheme," and as an investor defendant was on notice that any of his transfers

might be subject to clawback); *In re Juliet Homes,* 2011 WL 6817928, at *7 ("The fraudulent

transfers alleged in the original complaint, along with the new transfers alleged in the [proposed amended complaint], are alleged to have been part of this overall Ponzi scheme.  Both the original and the newly alleged fraudulent transfers therefore arose as part of the same course of alleged conduct."); *In re Chaus Secs. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (holding allegations in amended complaint related back as part of same basic scheme even though events were distinct from those alleged in the original complaint).[10]

In any event, this Court need not reach this argument, because as set forth above, there is a more specific basis for relation back here: namely, that the relevant defendant, its investment in BLMIS through and receipt of subsequent transfers from BLMIS feeder funds, and the underlying legal basis for seeking the Additional Transfers are all the same as in the OC.  *See also Peter Madoff*, 468 B.R. at 633-34 (permitting relation back where original and amended complaints alleged transfers under the "same legal theories"); *Adelphia*, 624 F. Supp. 2d at 333-34 (permitting relation back where newly-alleged transfers related to the same alleged fraudulent loan transactions); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12-*13 (permitting relation back for subsequent transfers out of FGG Feeder Funds where the relevant entities were named as subsequent transferee defendants in the original complaint).

Defendant also argues, citing *BNP*, that there is no common core of operative facts because the Trustee does not allege that the Additional Transfers "were requested by the same SIX SIS customer, at the same time, for the same amount, for the same reason, or pursuant to the same

---

[10] Defendant cites cases on this point (Mot. at 15-16, 19) that are distinguishable.  *See In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 181-82 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) (plaintiff did not allege that new preference claims were part of any common scheme, and original complaint plainly failed to put defendants on notice; court distinguished the preferences from the categories of transfers originally alleged, including fraudulent transfers that were part of the debtors' scheme); *Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977, 979-84 (Bankr. S.D.N.Y. 1986) (plaintiff made no "allegations implying an overall scheme" uniting the old and new transfers); *In re Uplift RX, LLC*, 625 B.R. 364, 376-77 (Bankr. S.D. Tex. 2021) (plaintiff made no allegations whatsoever suggesting that debtors and defendants "were engaged in any fraudulent scheme or common 'course of conduct'" that could have united the old and new transfers).

subscription agreement" as the transfers in the OC. Mot. at 18. But *BNP* does not support placing such exacting burdens on the Trustee. In *BNP*, the court denied relation back where over half the transfers involved a transferor that did not appear in the original complaint. 594 B.R. at 211-12. In addition, unlike here, the transfers there varied in nature: some "arose from either separate and distinct loans, credit facilities or derivative transactions with various counterparties while others appear to relate to either redemptions or equity distributions to the Defendants as direct investors in the Tremont Funds." *Id.* at 211-12.

Citing *Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977 (Bankr. S.D.N.Y. 1986), Defendant also argues that relation back is inappropriate because certain of the Additional Transfers took place in years prior to the earliest alleged transfers in the OC. Mot. at 16. But as set forth *supra* at n. 10, the court in *Metzeler* denied relation back because, unlike here, plaintiff's amended complaint dropped the allegations that had been in the original complaint alleging a common course of conduct that would have connected the old and new transfers. *See* 66 B.R. at 979. Here, that the newly discovered additional transfers happened to have been made prior to those originally discovered does not change the fact that they are all part of the same BLMIS feeder fund investment relationship as the originally-alleged transfers (which relationship is alleged in the OC and SAC). As was true in *BJB* and *Standard Chartered*, the transactions at issue here are all the same types of redemptions made from the same feeder fund investments that were, in turn, invested with BLMIS, and arise out of the same core of operative facts as the redemptions in the OC.[11]

### B.    The OC Provided Notice To Defendant That The Trustee Would Sue For Any Additional Transfers That Were Part Of The Same Course Of Conduct

---

[11] It is also irrelevant whether the Additional Transfers "were requested by the same SIX SIS customer" as the transfers in the OC, because Defendant is the subscriber, redeemer and sole defendant in this action.

The OC also put Defendant on notice that it would be asked to account for the Additional

Transfers.  In the OC, the Trustee indicated his intention to pursue all subsequent transfers to

Defendant, including those not known at the time of filing.  *See* OC ¶¶ 2, 41-44.

As this Court has stated, "[t]he primary consideration in determining whether the proposed

amendment to the Complaint should relate back is whether the Complaint put the defendant on

notice that additional transfers may be pursued at a later date."  *Fairfield Inv. Fund*, 2021 WL

3477479, at *12; *see also Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo*

*Seafood Corp.)*, 67 B.R. 304, 306 (Bankr. S.D.N.Y. 1986) ("[I]f the original complaint indicates

an intention to pursue all transactions, the adding of such transactions will relate back.").  This

Court's recent rulings in *BJB* and *Standard Chartered* are instructive.  In *BJB*, this Court held that

the following language in the original complaint was sufficient to give defendants notice:

> With this Complaint, the Trustee seeks to recover approximately
> $37,314,021 in subsequent transfers of Customer Property made to
> Defendant BJB. The subsequent transfers were derived from
> investments with BLMIS made by Fairfield Sentry Limited
> ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield
> Sentry is a British Virgin Islands ("BVI") company that is in
> liquidation in the BVI. Fairfield Sentry had direct customer accounts
> with BLMIS's investment advisory business ("IA Business") for the
> purpose of investing assets with BLMIS. Fairfield Sentry
> maintained in excess of 95% of its assets in its BLMIS customer
> accounts. Some of the subsequent transfers from Fairfield Sentry
> came through Fairfield Sigma Limited ("Fairfield Sigma") and
> Fairfield Lambda Limited ("Fairfield Lambda"), which each
> invested 100% of their assets in Fairfield Sentry.

*See BJB*, 2022 WL 17726520, at *16.  This is virtually identical to the language in the OC.  *See*

OC ¶ 2.

In *BJB* and *Standard Chartered*, this Court also held that defendants were put on notice by

the following reservation of rights in the original complaint: "[t]he Trustee's investigation is

ongoing, and the Trustee reserves the right to: (i) supplement the information on the Fairfield

Sentry Initial Transfers, the Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers." *See BJB*, 2022 WL 17726520, at *16; *Standard Chartered*, 2023 WL 118787, at *6. Again, the corresponding language in the OC is virtually identical to the reservation of rights in both *BJB* and *Standard Chartered*. *See* OC ¶ 42.

As this Court held in *BJB* and *Standard Chartered*, the Trustee, as an outsider to the transactions, need not include every subsequent transfer in the initial complaint:

> [T]he Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. Whether [defendants] additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*BJB*, 2022 WL 17726520, at *16 (quoting *Fairfield Inv. Fund*, 2021 WL 3477479, at *13); *Standard Chartered*, 2023 WL 118787, at *6; *see also Picard v. Est. of Stanley Chais (In re BLMIS, LLC)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011). And as this Court likewise concluded in *BJB* and *Standard Chartered*, Defendant has "had over 10 years notice that [it] would be asked to account for these transfers." *See BJB*, 2022 WL 17726520, at *16; *Standard Chartered*, 2023 WL 118787, at *6; *see also Peter Madoff*, 468 B.R. at 633-34 (finding sufficient for relation back purposes language stating "[a]t this time, the Trustee has identified at least $198,743,299 of customer funds"); *Ogier v. UPAC Ins. Fin. (In re Bauer Agency, Inc.)*, 443 B.R. 918, 922 (Bankr. N.D. Ga. 2011) ("The complaint expressly states that the Trustee intends to avoid all transfers that [defendant] received" from the Ponzi scheme "during the relevant time periods.").[12]

The Trustee therefore not only included the transfers of which he had knowledge in the OC, but also specifically and unambiguously "appr[]ised [Defendant] that the Trustee intended to

---

[12] The fact that this same language existed in *BNP*, as pointed out by Defendant (Mot. at 19), is irrelevant. As detailed above, the Court there denied relation back based on a determination that the new transfers did not arise from the same common scheme or course of conduct; it did not address the sufficiency of this clause or even cite to it in the decision.

collect any additional subsequent transfers that were uncovered" in his investigation.  *BJB*, 2022 WL 17726520, at *16.  The Additional Transfers "relate back" and are properly brought before this Court.  *Id.*

### III.    THE MERE CONDUIT DEFENSE IS AN AFFIRMATIVE DEFENSE AND THUS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Despite the Trustee's allegations establishing that Defendant was a shareholder in the Fairfield Funds that received subsequent transfers of BLMIS customer property, *see* SAC ¶¶ 2, 15, 69, 72, 74, 76, Defendant argues that it was not a transferee, but a "mere conduit," acting on behalf of undisclosed parties.  Mot. at 22.  Defendant also asserts that it is the Trustee's burden to anticipate and negate the mere conduit defense at the pleading stage.  *See id.*  Defendant is wrong on both counts.  As this Court recently confirmed, it is Defendant's burden to establish this fact-intensive defense.  *See Standard Chartered*, 2023 WL 118787, at *7-*8; *Inteligo Bank*, 2022 WL 17742686, at *10; *see also Enron Corp. v. J.P. Morgan Secs. Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (in the context of a Rule 15(c) motion, "the burden of proving that [defendant] was not a transferee and/or beneficiary of the Transactions shifts to [defendant]"); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

### A.    The Fact-Intensive Mere Conduit Defense Is Inappropriate For A Motion To Dismiss, But In Any Event The Pleadings Establish That Defendant Was A Transferee

In *Standard Chartered* and *Inteligo Bank*, this Court denied motions to dismiss in which defendants argued that the Trustee did not plausibly allege defendants were transferees.  *See Standard Chartered*, 2023 WL 118787, at *8 ("Though it is not his burden to plead, the Trustee's Complaint contains plausible allegations that the SC Defendants exercised dominion and control

over BLMIS customer property"); *Inteligo Bank*, 2022 WL 17742686, at *10. This case is akin to *Standard Chartered* and *Inteligo Bank*, and the Court should reject Defendant's conduit argument.

To establish a mere conduit defense, Defendant must show that it lacked dominion and control over all transactions at issue. *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-58 (2d Cir. 1997) ("*In re Finley*"); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49-52 (Bankr. S.D.N.Y. 2021). The question of dominion and control often rests on, among other things, the degree to which a defendant has discretion over the use of the funds in question. *See Keller*, 634 B.R. at 52 (holding defendant with discretion over the use and transfer of the funds was not a mere conduit). And even if a recipient shows it is subject to some restrictions on the use of the funds, that alone does not make it a conduit. *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 17-19 (S.D.N.Y. 2007). As Defendant acknowledges, the extent to which a recipient has legal rights to the redemption payments is similarly a relevant consideration. *In re Enron*, 361 B.R. at 48 (determining whether entity was mere conduit required resolution of whether it had legal title to the payments); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, Adv. Pro. No. 11-2251, 2016 WL 1069303, at *1, *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant was not a conduit where transfers were received without restriction into bank account in her name).

Consistent with the fact-specific nature of this defense, the question of a defendant's dominion and control often turns on internal information in the possession of the party asserting the defense—including the specific requirements of any agreements among the defendant, the transferor, and the purported ultimate recipients; communications related to the transfers; how and whether the defendant received fees; and the relationship between the transferor and the defendant,

and between the defendant and the alleged ultimate recipients.  Because of the many factual questions inherent in resolving this defense, courts rarely address this issue at the pleading stage. *See, e.g.*, *In re Glob. Crossing, Ltd.*, 385 B.R. 52, 57, n.1 (Bankr. S.D.N.Y. 2008) (denying defendant's motion to dismiss and noting the assertion of the mere conduit defense is "better addressed on summary judgment."); *Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *Sarachek v. Schochet (In re Agriprocessors)*, Adv. Pro. No. 10-09190, 2012 WL 4059897, at *10 (Bankr. N.D. Iowa Sept. 14, 2012) (denying motions to dismiss and for summary judgment to provide "[a]dditional time . . . necessary to further develop the factual record").  It is therefore not surprising that the majority of the cases cited by Defendant address the issue at the summary judgment stage or later.[13]  And depending on the facts at issue, the conduit defense may not even be resolvable at the summary judgment stage.  *See, e.g.*, *In re CVEO Corp.*, 327 B.R. 210, 217-18 (Bankr. D. Del. 2005) (holding that genuine issues of material fact preclude entry of summary judgment on mere conduit defense to preference claims).

The scarcity of caselaw regarding the application of the mere conduit defense at the pleading stage makes sense, as the defense would need to be apparent on the face of the complaint—which was the case in the few decisions upon which Defendant relies.  *See, e.g.*, *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) (dismissing complaint because the mere conduit defense was apparent on face of complaint alleging that defendant CFO took money from the debtor and transferred it to the debtor's principal but did not

---

[13] *See In re Finley*, 130 F.3d 52 (ruling on motion for summary judgment); *Keller*, 634 B.R. 39 (same); *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890 (7th Cir. 1988) (same); *In re Warnaco Grp., Inc.*, No. 01 B 41643 (RLB), 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) (same); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1 (same); *Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33 F.3d 42 (10th Cir. 1994) (same); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996) (ruling on a motion for a judgment as a matter of law following the close of the trustee's case).

allege defendant received any of the subject payments, benefitted from them, or was their intended beneficiary); *In re Mervyn's Holdings, LLC*, 426 B.R. 96 (Bankr. D. Del. 2010) (dismissing defendant bank in multi-defendant action that acted as the trustee for an identified trust holding mortgage pass-through certificates, loans, and liens generated in connection with the sale of the debtor).[14]  Those cases are very different from the situation here.

As recognized in *Picard v. Merkin*, the argument advanced by Defendant applies only as a "limited exception to the general rule" that an affirmative defense cannot be established on a motion to dismiss.  440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").  To prevail under this limited exception on a Rule 12(b)(6) motion, Defendant must meet a "more stringent standard" and show not only that "the facts supporting the defense appear on the face of the complaint," but also that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The "limited exception to the general rule" is inapplicable here.  As was true in *Standard Chartered*, the Trustee has not alleged that Defendant was "merely holding the money to pass on to [] clients," 2023 WL 118787, at *8, nor is there any allegation in the SAC that Defendant lacked control over the subsequent transfers.  Moreover, though Defendant claims that it was investing client money, (Mot. at 22, citing Hänseler Decl. ¶ 8), Defendant has not identified any such purported clients to date.  *Cf. In re Finley*, 130 F.3d at 58-59 (engaging in a detailed analysis of the relationship between the defendant and the supposed ultimate recipient of the funds in order to resolve the mere conduit issue); *Keller*, 634 B.R. at 51-52 (similar).

---

[14] Defendant's reliance on *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008) and *In re Lyondell Chem. Co.*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014) is similarly misplaced.  In *Super Vision*, the dismissed defendant was a bank where the wrongdoer's funds were being held, and the complaint included no allegations that the bank was the intended recipient of the funds.  534 F. Supp. 2d at 1344.  Similarly in *Lyondell*, the court dismissed claims against simple holders of stock for purposes of a leveraged buyout transaction.  503 B.R. at 381-83.  By contrast, the Trustee here has plausibly alleged that Defendant is a transferee for all the reasons discussed herein, including that it was the named account holder of its feeder fund investments.

Far from establishing Defendant's supposed mere conduit status, the Trustee has alleged that *Defendant* was the customer of and held shares in the Fairfield Funds (SAC ¶¶ 2, 72, 76), that it executed multiple subscription agreements in connection with its investments in the Fairfield Funds (SAC ¶ 12), and that it received subsequent transfers of BLMIS customer property as redemptions of its equity interests in the Fairfield Funds (SAC ¶¶ 72, 76). *See Standard Chartered*, 2023 WL 118787, at *7 (crediting Trustee's allegations that defendants, and not their clients, were (i) customers of the Fairfield Funds, (ii) signed the subscription agreements with the Fairfield Funds, (iii) held the accounts at the Fairfield Funds in their names not the names of their clients, and (iv) managed the purchase and redemption of their investments in the Fairfield Funds). Defendant also directed subscription funds into and received redemptions from Sentry using Defendant's bank account at Brown Brothers Harriman in New York in Defendant's own name. (SAC ¶ 15). It is thus far from "beyond doubt" that Defendant was a mere conduit. *See Standard Chartered*, 2023 WL 118787, at *7. As this Court has noted, feeder fund subsequent transferee investors like Defendant are not the types of intermediary financial institutions—like correspondent banks—that are "normally considered 'mere conduits'." *Standard Chartered*, 2023 WL 11878 at *7 n.6.

Recognizing the inappropriateness of its mere conduit argument at the pleading stage, Defendant's motion improperly cites to a declaration containing factual statements not alleged in the SAC. *See* Mot. at 22 (citing Hänseler Decl. ¶ 8). Such reliance on information outside of the four corners of the SAC clearly demonstrates that the defense cannot be established on the face of the pleadings and is inappropriate on a Rule 12(b)(6) motion. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for

failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").

Instead, on a motion to dismiss, the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences" in favor of the plaintiff. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011). Additionally, at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *McKenna*, 386 F.3d at 436. Accepting all factual allegations in the SAC as true and drawing all reasonable inferences in favor of the Trustee, the Trustee has adequately pled that Defendant received subsequent transfers of customer property as a transferee. Nothing on the face of the pleadings establishes Defendant's alleged conduit status. Therefore, Defendant has failed to establish the mere conduit defense.

**B.    <u>Summary Proceedings Are Inappropriate</u>**

Further recognizing the inappropriateness of its mere conduit defense at the pleading stage, Defendant asks for a summary discovery proceeding. *See* Mot. at 23. The defendants in *Standard Chartered* raised the same request, and it is inappropriate here for the same reasons articulated by the Trustee in that case. *See Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (CGM), Transcript of oral argument, ECF No. 167 (Bankr. S.D.N.Y. Dec. 14, 2022) at 136-140.

In a case that has been pending for over ten years, it makes little sense to undertake a unique and gating proceeding for every issue that requires factual analysis. This is especially true where, as here, the discovery sought is the exact same discovery the Trustee needs to proceed with the case: discovery on the transfers, the purpose of the transfers, the due diligence conducted by Defendant, the facts regarding the investment process, the banking information of its purported

customers, the relationships and agreements between the Defendant and its clients, communications among the Defendant and its clients, and Defendant's good or bad faith.

As examples of summary proceedings, Defendant cites other cases in which streamlined discovery on the conduit issue took place. *See* Mot. at 23 (citing *In re Tribune Co. Fraudulent Conveyance Litig.*, Conduit Protocol, No. 12-CV-02652 (S.D.N.Y. Apr. 14, 2014), ECF 4239 and *Weisfelner v. CIBC World Markets (In re Lyondell Chem. Co.)*, Order, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 2124)). Both cases are completely irrelevant to the Trustee's action as they were the result of leveraged buyouts that ended in the bankruptcy of the resulting entity. In both cases, the plaintiff sought to recover multibillion dollar sums and constructively fraudulent transfers from huge numbers of shareholder defendants. In particular, in *Tribune*, there were 5,000 shareholder defendants and $8 billion in controversy; and in *Lyondell*, there were 1,400 shareholder defendants and $5.9 billion in controversy. These are not the facts and that is not the current procedural posture of this case. Also in *Lyondell*, the plaintiff acknowledged that at least some of the shareholder defendants were nominees; whereas here, the Trustee does not allege, nor does the Trustee believe that the defendants are nominees. Likewise, in those cases, the plaintiff agreed to summary proceedings. The Trustee does not agree that a summary proceeding is appropriate in this action, and particularly not as part of a motion to dismiss.

## IV.  THE 550(b) GOOD FAITH AND VALUE DEFENSES ARE AFFIRMATIVE DEFENSES AND THUS INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Finally, Defendant argues that the Court should dismiss the Complaint because Defendant's receipt of the redemptions purportedly for value and in good faith is clear on the face of the Complaint. *See* Mot. at 23–27. But as this Court has held repeatedly, affirmative defenses are fact-driven and require factual analyses and the presentation of evidence, and the Court should

reject Defendant's attempt to raise these affirmative defenses on a motion to dismiss, just as it has

done in *Banque SYZ*, *Standard Chartered*, and many other recent decisions, and as the District

Court did in *ABN Ireland*. *See Banque SYZ*, 2022 WL 2135019, at \*11; *Standard Chartered*, 2023

WL 118787, at \*11-\*12; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff

Secs.)*, No. 20-CV-02586, 2022 WL 1304589, at \*1 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*").

Like Defendant, the defendants in *Banque SYZ*, *ABN Ireland*, and *Standard Chartered* argued that

their value and good faith defense was established on the face of the complaint. *Banque SYZ*, 2022

WL 2135019, at \*10-\*11; *ABN Ireland*, 2022 WL 1304589, at \*3; *Standard Chartered*, 2023 WL

118787, at \*11-\*12. The Court in those cases concluded that these affirmative defenses could not

be resolved at the pleading stage. *Id.* The same result is warranted here.

Defendant first argues that it received the redemption payments for value, alleging that it

received payments in exchange for its "redemptions of equity interests." Mot. at 24 (citing SAC

¶¶ 8–16, 69, 72). As was true in *Banque Syz, First Gulf*, and other cases, the SAC does not mention

Defendant exchanging shares for consideration, and the value defense is therefore not pleaded on

the face of the SAC. *Banque Syz*, 2022 WL 2135019, at \*10; *First Gulf*, 2022 WL 3354955, at

\*10. As such, value is a fact-driven affirmative defense to be addressed later in the litigation. *See

Banque SYZ*, 2022 WL 2135019, at \*10–\*11 (value "cannot be established in a complaint" as it is

the defendant's burden to plead and prove); *Fairfield Inv. Fund*, 2021 WL 3477479, at \*9

("Whether the Defendants gave value is a question of fact to be resolved either at the summary

judgment stage or at trial."); *see also First Gulf*, 2022 WL 3354955, at \*9 (a determination as to

whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage.").

Defendant also argues that it acted in good faith. As recognized in *Merkin I*, an argument that the good faith affirmative defense is established from the complaint applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. To prevail under this limited exception, Defendant must show there is an "insuperable bar to securing relief" set forth on the face of the SAC. *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011). Defendant's argument that its BLMIS feeder fund investments were part of a "purely ministerial business" (Mot. at 25-26, citing Hänseler Decl. ¶¶ 2-10, 17-18) and that a such at diligent inquiry by it would have been futile (Mot. at 26), is pure conjecture that comes nowhere near meeting this standard.

Whether Defendant acted in good faith in its business operations, conducted a diligent inquiry, and what it did or would have discovered, requires a factual analysis that is not appropriate at this stage of litigation, particularly with respect to a good faith defense, which turns on questions of the defendant's motivation and intent. Indeed, in its rejection of the defendants' argument on this point in *Standard Chartered*, a case in which defendants also argued that they were mere conduits for the transfers the Trustee sought to recover, the court highlighted that the inquiry notice standard requires "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees." *Standard Chartered*, 2023 WL 118787, at *11 (quoting *Citibank*, 12 F.4th at 195); *accord ABN Ireland*, 2022 WL 1304589, at *3; *Banque SYZ*, 2022 WL 2135019, at *11. Based on the foregoing, Defendant's arguments as to a "good faith" or other Section 550(b) affirmative defense

are inappropriate at this stage of the litigation and the Court should reject the arguments set forth

by Defendant.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated:    February 7, 2023
New York, New York

/s/  David J. Sheehan
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Ferve E. Khan
Email: fkhan@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**Windels Marx Lane & Mittendorf, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
Kim M. Longo
Email: klongo@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*