# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SDNY Case No. _____ <br><br> Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> KOCH INDUSTRIES, INC., as successor in interest of Koch Investment (UK) Company, <br><br> Defendant. | Adv. Pro. No. 12-01047 (CGM) |

## DEFENDANT KOCH INDUSTRIES, INC.'S
## <u>MOTION FOR LEAVE TO APPEAL</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ..........................................................1

BACKGROUND ...............................................................................4

    I.    The Trustee Sues Defendant To Recover Transfers Initially
        Made From BLMIS To Fairfield Sentry. ..............................4

    II.   The Bankruptcy Court Relies On *Cohmad* To Deny
        Defendant's Motion To Dismiss Due To Fairfield Sentry's
        Alleged Knowledge of BLMIS's Fraud. ...............................7

QUESTION PRESENTED ON APPEAL ............................................7

LEGAL STANDARD..........................................................................8

    I.    Whether To Engraft An "Actual Knowledge" Limitation On
        The Section 546(e) Safe Harbor Is A Controlling Legal
        Question..................................................................................9

    II.   There Is Substantial Ground For Different Views On This
        Question................................................................................10

    III.  Resolving The Question Will Materially Advance Termination
        Of This Case And Many Other Cases. .................................20

CONCLUSION .................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

    Exhibit A:  Order Denying Defendant's Motion to Dismiss, *Picard v. Koch
               Industries, Inc.*, Adv. Pro. No.
               12-01047 (Bankr. S.D.N.Y. Nov. 30, 2022), ECF No. 122

    Exhibit B:  Memorandum Decision Denying Defendant's Motion to
               Dismiss, *Picard v. Koch Industries, Inc.*, Adv. Pro. No.
               12-01047 (Bankr. S.D.N.Y. Nov. 21, 2022), ECF No. 118

    Exhibit C:  Trustee's Interim Report, *SIPC v. BLMIS LLC*, No. 08-1789
               (Bankr. S.D.N.Y. Apr. 29, 2022), ECF No. 21473-4, Ex. D

    Exhibit D:  Transcript, *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-
               6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Balintulo v. Daimler AG*,
  727 F.3d 174 (2d Cir. 2013) ...............................................................8

*In re: BLMIS*,
  No. 08-99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11,
  2015) ..................................................................................................18

*Capitol Recs., LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..........................................9, 10

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
  No. 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...........19

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  651 F.3d 329 (2d Cir. 2011) .............................................................11

*In re Fairfield Sentry Ltd. Litig.*,
  458 B.R. 665 (S.D.N.Y. 2011) .....................................................8, 10

*Gredd v. Bear, Stearns Securities Corp. (In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002).............................................15

*Hoskins v. Citigroup, Inc. (In re Viola)*,
  469 B.R. 1 (9th Cir. B.A.P. 2012) ...................................................14

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
  913 F.2d 846 (10th Cir. 1990) .........................................................14

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ...............................................................20

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004)...........................................................................11

*Mercer v. Gupta*,
  712 F.3d 756 (2d Cir. 2013) .............................................................20

*Pac. Operators Offshore, LLP v. Valladolid*,
565 U.S. 207 (2012)........................................................................12

*Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot
Investors Fund, L.P.)*,
467 B.R. 643 (Bankr. N.D. Ill. 2012) .................................................14

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv.
Secs. LLC)*,
773 F.3d 411 (2d Cir. 2014) ...................................1, 10, 14, 15, 19, 20

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3,
2022) .......................................................................................9, 21

*Primavera Familienstifung v. Askin*,
139 F. Supp. 2d 567 (S.D.N.Y. 2001) ...............................................20

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Consolidated
Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115 (JSR),
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...............3, 7, 11, 13, 18

*Tantaros v. Fox News Network, LLC.*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020) ...........................................9, 10

**Statutes**

11 U.S.C. § 523 ...............................................................................11

11 U.S.C. § 542 ...............................................................................11

11 U.S.C. § 544 ...............................................................................12

11 U.S.C. § 545 ...............................................................................12

11 U.S.C. § 546............. 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21

11 U.S.C. § 547 ...............................................................................12

11 U.S.C. § 548 .......................................................................2, 12, 14

11 U.S.C. § 550 ...............................................................................12

11 U.S.C. § 726 ...............................................................................12

11 U.S.C. § 741 ...................................................................................2, 14, 16

11 U.S.C. § 944 ...............................................................................................12

28 U.S.C. § 158 ...........................................................................................1, 8, 9

28 U.S.C. § 1292 ........................................................................................8, 20

**Rules**

Fed. R. Bankr. P. 8004 .....................................................................................1, 9

Fed. R. Bankr. P. 8006(f)(1) .................................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................................10

**Legislative Materials**

H.R. Rep. No. 97–420 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583 ....................15

**Other Authorities**

Adversary Proceedings Subject to Section 546(e), *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C ....................................................................................2

Brief for Plaintiff-Appellant, *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Secs. LLC)*, No. 12-2557 (2d Cir. May 15, 2013), ECF No. 145....................................13, 15

Incorporated Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. filed July 20, 2010), ECF No. 23 ............................................................................................4

Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. filed Aug. 28, 2020), ECF No. 286 ............................................................................................6

Transcript, *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 17 ............................21

Trustee's Interim Report, *SIPC v. BLMIS LLC*, No. 08-1789 (Bankr. S.D.N.Y. Apr. 29, 2022), ECF No. 21473-4, Ex. D ............................................................................................6

iv

Defendant Koch Industries, Inc. ("Defendant") submits this motion, pursuant
to 28 U.S.C. § 158(a)(3) and Rule 8004 of the Federal Rules of Bankruptcy
Procedure, for leave to appeal the bankruptcy court's decision denying its motion
to dismiss the Complaint filed by plaintiff Irving H. Picard, Trustee (the "Trustee")
for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").[1]

## PRELIMINARY STATEMENT

This appeal presents a dispositive and recurring legal question applicable to
many ongoing cases relating to the correct application of the Bankruptcy Code's
statutory safe harbor under 11 U.S.C. § 546(e), namely, whether the bankruptcy
court was correct to adopt an atextual limitation providing that the safe harbor does
not apply where the initial transferee of a claimed fraudulent transfer is alleged to
have "actual knowledge" of fraud.

Section 546(e) "establishes an important exception to a trustee's clawback
powers." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv.
Secs. LLC)*, 773 F.3d 411, 414 (2d Cir. 2014). As relevant here, by its plain
language, the Section provides that a trustee "may not avoid a transfer" if the
transfer is "made by … a … stockbroker … in connection with a securities

---

[1] The Order (ECF No. 122) and the Memorandum Decision Denying Defendant's
Motion to Dismiss (ECF No. 118) were entered on November 30 and November
21, 2022, respectively. Attached here as Exhibits A and B. "ECF No." refers to
filings on the bankruptcy court docket in Adv. Pro. No. 12-01047 unless otherwise
noted.

1

contract, as defined in section 741(7)." 11 U.S.C. § 546(e). Critically, Section

546(e) lists only one exception to this avoidance bar — transfers that are avoidable

"under section 548(a)(1)(A)" of the Code. Section 548(a)(1)(A), in turn,

authorizes the avoidance of transfers made with "actual intent to hinder, delay, or

defraud," but only if the transfer was made within the two years before the

bankruptcy petition, or, in this case, before the filing date of BLMIS's Securities

Investor Protection Act ("SIPA") liquidation proceeding. *See* 11 U.S.C.

§ 548(a)(1); Complaint ¶ 11 (BLMIS SIPA liquidation filed December 15, 2008).

This action presents one of many instances in which the Trustee for

BLMIS's liquidation is attempting to avoid transfers that BLMIS made to Fairfield

Sentry Limited ("Fairfield Sentry"), the "initial transferee," more than two years

before the filing date of BLMIS's SIPA liquidation proceeding and recover

amounts from former investors in Fairfield Sentry, as "subsequent transferees."[2]

Below, in its motion to dismiss, Defendant demonstrates that the alleged

transfers fall squarely under Section 546(e)'s safe harbor, and the Section

548(a)(1)(A) exception is inapplicable because the transfers occurred more than

two years before filing date of the liquidation. Accordingly, the Trustee lacks the

authority to avoid the transfers. The bankruptcy court, however, considered itself

---

[2] As of August 2022, there were 17 BLMIS adversary proceedings subject to complete dismissal based on a Section 546(e) defense. *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 4, Ex. C.

bound by a 2013 decision of Judge Rakoff, which held that there is an exception to

Section 546(e): a transfer that would otherwise fall within Section 546(e)'s safe

harbor is removed from safe harbor and subject to avoidance if, as is the case here

with Fairfield Sentry, the initial transferee is alleged to have "actual knowledge" of

the transferor's alleged fraud. *See SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re

Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL

1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). As such, the bankruptcy court

denied Defendant's motion.

Defendant respectfully submits that this Court should grant leave to appeal

from the bankruptcy court's interlocutory order. First, the legal question

presented—whether it was error for the bankruptcy court to adopt an unwritten

"actual knowledge" exception onto the plain terms of Section 546(e)—is

controlling. Resolution would not require addressing any factual disputes, and a

ruling in Defendant's favor would end this case. Second, the bankruptcy court's

adoption of Judge Rakoff's *Cohmad* decision presents substantial grounds for

disagreement. Imposing an "actual knowledge" limitation conflicts with the plain

text of the statute and therefore contravenes the fundamental principle that courts

must enforce statutes according to their terms. The decision is also at odds with

the Second Circuit's precedent on the proper interpretation of Section 546(e).

Last, the question presented has consequences that go well beyond this particular

adversary proceeding, as similar issues are present in many pending clawback cases being brought by the BLMIS Trustee. *See supra* 2. While Judge Rakoff recently issued a decision denying a series of motions for leave to appeal by other defendants addressing subsidiary issues regarding applicability of Section 546(e), those motions did not address the foundational question presented here: whether there is an actual knowledge exception to Section 546(e). Thus, resolving this unsettled question on interlocutory appeal would substantially advance not just resolution of this case but the orderly and efficient resolution of the BLMIS liquidation as a whole.

## BACKGROUND

I.   **The Trustee Sues Defendant To Recover Transfers Initially Made From BLMIS To Fairfield Sentry.[3]**

Until its liquidation, BLMIS was a duly registered securities broker-dealer under the Securities Exchange Act. Complaint ¶ 21. Bernard L. Madoff, the chief executive officer of BLMIS prior to his arrest, operated BLMIS's investment advisory business as a Ponzi scheme until December 2008. *Id.* ¶¶ 21, 26, 29. On December 11, 2008, Madoff was arrested by federal agents for violating federal securities laws. *Id.* ¶ 9. On December 15, 2008, this Court entered an order under

---

[3] The following background relies upon the allegations in the Complaint and the Amended Complaint filed in *Picard v. Fairfield Sentry Limited*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. filed July 20, 2010) (ECF No. 23) ("Incorporated Complaint"), which the Complaint incorporates by reference, *see* Complaint ¶ 33.

4

SIPA granting an application for the liquidation of BLMIS and appointing Irving

Picard as Trustee for the Liquidation of BLMIS and the substantively consolidated

estate of Bernard L. Madoff. *Id.* ¶ 12.

Fairfield Sentry was a customer of BLMIS's investment advisory business.

*Id.* ¶ 2. Fairfield Sentry opened its first account at BLMIS in November 1990 and

a second account in October 1992. Incorporated Complaint ¶ 33. In so doing,

Fairfield Sentry executed account opening agreements with BLMIS. *Id.* ¶ 33 &

Ex. 1. Fairfield Sentry maintained its customer accounts with BLMIS for the

purpose of investing assets with BLMIS, and BLMIS's payments to Fairfield

Sentry were made through withdrawals from those customer accounts. Complaint

¶¶ 2, 34-37 & Exs. A, B; *see also* Incorporated Complaint ¶¶ 20, 33 & Ex. 2.

When its investors redeemed shares or limited partnership interests, Fairfield

Sentry transferred funds to its investors. *See* Incorporated Complaint ¶ 23. Koch

Investment (UK) Company ("KIUK"), a former affiliate of Defendant, was an

investor in Fairfield Sentry and received two redemption payments on May 11,

2005, and September 20, 2005—each more than three years before the filing date

of BLMIS's SIPA liquidation proceeding (December 15, 2008). Complaint ¶ 39 &

Ex. C. The Complaint alleges Defendant received these same funds when KIUK

was later dissolved. *Id.* ¶¶ 2, 32, 39.

The Trustee has filed numerous, substantively similar complaints against former investors in Fairfield Sentry. *See, e.g.*, Trustee's Interim Report, *SIPC v. BLMIS LLC*, No. 08-1789 (Bankr. S.D.N.Y. Apr. 29, 2022) (ECF No. 21473-4, Ex. D) (Attached here as Exhibit C). The Trustee filed the instant action against Defendant on February 9, 2012. The Complaint, like the other complaints, does not allege that either KIUK or Defendant made any investments directly in or received any payments directly from BLMIS. Instead, the Trustee seeks to recover certain monies that BLMIS initially transferred to Fairfield Sentry, which Fairfield Sentry, in turn, transferred to its investors. Complaint ¶¶ 2, 4, 32, 39. The Trustee claims that Fairfield Sentry ultimately acquired actual knowledge of BLMIS's fraud, see ECF No. 118 at 9.[4] The Trustee does *not* allege that either KIUK or Defendant themselves had any knowledge of the fraud when KIUK received the two redemption payments from Fairfield Sentry in 2005.

---

[4] In its decision, the bankruptcy court cited allegations from the Second Amended Complaint filed in *Picard v. Fairfield Sentry Limited*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. filed August 28, 2020) (ECF No. 286), which postdates the Complaint (filed in 2012) and has not been incorporated in the Complaint.

6

## II.    The Bankruptcy Court Relies On *Cohmad* To Deny Defendant's Motion To Dismiss Due To Fairfield Sentry's Alleged Knowledge of BLMIS's Fraud.

Defendant moved to dismiss the Complaint, arguing that the at-issue transfers from BLMIS to Fairfield Sentry are shielded from avoidance by Section 546(e).  *See* ECF No. 106.

The bankruptcy court denied Defendant's motion, viewing itself as bound by Judge Rakoff's reasoning in *Cohmad.  See* ECF No. 118 at 7.  In *Cohmad*, Judge Rakoff reasoned that a defendant "will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) 'safe harbor' *if* the Trustee has alleged that the initial transferee [here, Fairfield Sentry] had actual knowledge of [BLMIS's] fraud," even if avoidance of the transfers "would otherwise be barred by Section 546(e)."  2013 WL 1609154, at *1 (emphasis in original).  Because the bankruptcy court held that the Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge of BLMIS's fraud, it further determined that the Complaint could not be dismissed under Section 546(e) based on *Cohmad*.  ECF No. 118 at 9.

## QUESTION PRESENTED ON APPEAL

Section 546(e) of the Bankruptcy Code provides that a trustee "may not avoid" transfers made by a stockbroker "in connection with a securities contract." 11 U.S.C. § 546(e).  The question presented is:  Whether Section 546(e) excludes

from its statutory safe harbor all transfers where the initial transferee allegedly had "actual knowledge" of the transferor's fraud, despite the lack of any such limitation in the statutory text.

## LEGAL STANDARD

This Court has authority to grant leave to appeal an interlocutory order of a bankruptcy court under 28 U.S.C. § 158(a)(3). In determining whether to exercise that authority, courts typically apply the standard governing interlocutory appeals from district courts to courts of appeals under 28 U.S.C. § 1292(b), *see In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 672-73 (S.D.N.Y. 2011), which looks to whether the order "'[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" Although interlocutory appeals are generally rare in the federal system, "[w]hen a ruling satisfies [the Section 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). And interlocutory appeals can be particularly valuable in the bankruptcy context, where "there may be greater reason than in ordinary civil litigation to seek final resolution of discrete legal questions even while other aspects of the litigation are

ongoing." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502

(JSR), 2022 WL 16647767, at *4 n.5 (S.D.N.Y. Nov. 3, 2022).[5]

## ARGUMENT

**I.    Whether To Engraft An "Actual Knowledge" Limitation On The Section 546(e) Safe Harbor Is A Controlling Legal Question.**

Whether Section 546(e) excludes from its safe harbor transfers where the

initial transferee had "actual knowledge" of fraud is a pure question of law turning

on statutory interpretation. *See Tantaros v. Fox News Network, LLC.*, 465 F. Supp.

3d 385, 390 (S.D.N.Y. 2020) ("statutory interpretation" is "a quintessentially legal

determination") (quotations omitted). Critically, it does not involve a factual

dispute. "Because the issue turns … exclusively on a question of statutory

interpretation, 'the reviewing court could decide [it] quickly and cleanly without

having to study the record.'" *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d

537, 552 (S.D.N.Y. 2013).

Further, resolution of this question of law would be controlling in this case,

as well as many others. *See supra* 2. If Section 546(e) applies without the

---

[5] Defendant also intends to move to certify the bankruptcy court's order for direct review by the Second Circuit. *See* 28 U.S.C. § 158(d); Fed. R. Bankr. P. 8006(f)(1). If certification is granted and the Court of Appeals authorizes a direct appeal, that determination will supersede this Court's ruling on this motion. *See* Fed. R. Bankr. P. 8004(e) ("If leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 158(d)(2) satisfies the requirement.").

*Cohmad* "actual knowledge" exception, the transfers upon which the Trustee's recovery claim against Defendant is predicated are shielded from avoidance and therefore unrecoverable.  In short, reversal would therefore result in a dismissal of this single-count adversary proceeding.  *See, e.g.*, *Ida Fishman*, 773 F.3d at 415 (affirming Rule 12(b)(6) dismissal based on application of Section 546(e)).  As the Trustee has filed numerous recovery actions against other Fairfield Sentry investors, resolution of this question of statutory interpretation would also affect a large number of other cases.  *See supra* 2; *infra* 20-21 (explaining how interlocutory appeal will materially advance the termination of this and other cases).  The "far-reaching implications in this case" underscore the controlling nature of the legal question presented and the need for interlocutory review. *Capitol Recs.*, 972 F. Supp. 2d at 553; *see also Tantaros*, 465 F. Supp. 3d at 389 (considering whether "'certified issue has precedential value for a large number of cases'").

## II.     There Is Substantial Ground For Different Views On This Question.

The question whether Section 546(e) can be interpreted to exclude otherwise-qualifying transfers from its safe harbor based on the initial transferee's alleged "actual knowledge" of the transferor's fraud has never been addressed by the Second Circuit.  *Cf. Fairfield Sentry*, 458 B.R. at 673 ("Substantial ground would exist if the issue is difficult and of first impression.")  This factor supports

allowing an interlocutory appeal.  The bankruptcy court below relied on an

unpublished 2013 district court decision, which held as a matter of first impression

that "actual knowledge" precludes resort to Section 546(e)'s safe harbor.  *See*

*Cohmad*, 2013 WL 1609154.  For several reasons, there are substantial grounds for

disagreement with that decision.

    *Text.*  First, *Cohmad*'s imposition of an "actual knowledge" limitation on the

safe harbor is contrary to the plain text of Section 546(e).  Under long-established

and controlling Second Circuit and Supreme Court precedent, "when the statute's

language is plain, the sole function of the courts – at least where the disposition

required by the text is not absurd – is to enforce it according to its terms."  *Enron*

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)

(quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).  Section 546(e) is an

express limitation on the Trustee's avoidance powers; when a payment falls within

its terms, the trustee "may not avoid" it.  Nowhere in Section 546(e) is there a

requirement concerning the transferee's level of knowledge or mental state.

    This is deliberate decision by Congress and not an oversight.  Other

provisions in the Bankruptcy Code demonstrate that its drafters knew exactly how

to condition a trustee's avoidance powers on a transferee's mental state.  First,

numerous other sections of Bankruptcy Code expressly impose an "actual

knowledge" standard in other contexts.  *See* 11 U.S.C. §§ 523(a)(3), 542(c),

726(a)(2)(C)(i), 944(c)(2). Second, in stark contrast to Section 546(e), which flatly precludes the trustee from "avoid[ing]" specified types of transfers, the other relevant defenses to transferees in Sections 548(c)[6] and 550(b)[7] protect transferees who can demonstrate their "good faith."

Under controlling Supreme Court precedent, "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Pac. Operators Offshore, LLP v. Valladolid*, 565 U.S. 207, 216 (2012). Congress plainly knows how to tell courts when a Bankruptcy Code provision requires an inquiry into a party's state of mind. Here, Congress chose to enact the Section 546(e) safe harbor without reference to a transferee's "actual knowledge," "good faith," or other mental state. That choice should be respected by courts, and the bankruptcy court erred in disregarding it.

---

[6] "Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in *good faith* has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c) (emphasis added).

[7] "The trustee may not recover under section (a)(2) of this section from – (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in *good faith*, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b) (emphasis added).

The Trustee has made this exact point in prior litigation, having criticized

*Cohmad* for exactly these reasons. In the Trustee's own words in his Second

Circuit briefing in *Ida Fishman*, "the district court [in *Cohmad*] created an entire

statutory construct out of whole cloth" in adding a lack of knowledge prerequisite

to Section 546(e), "rewr[iting] both the Bankruptcy Code and SIPA in order to

reach a result it preferred to the one Congress chose." Brief for Plaintiff-

Appellant, *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv.*

*Secs. LLC)*, No. 12-2557 (2d Cir. May 15, 2013), ECF No. 145, at 69. Moreover,

the *Cohmad* court itself rejected the argument that allegations that a transferee did

not act in "good faith" would suffice to except the transfer from Section 546(e),

expressly reasoning that a "good faith" requirement "nowhere appears in Section

546(e)" and "the language of that section is plain." 2013 WL 1609154, at *4. The

same is true of the "actual knowledge" exception that the *Cohmad* court adopted.

### *Structure of the Bankruptcy Code's Fraudulent Transfer Provisions.*

Reading a new and second exception into Section 546(e) also contravenes to the

structure that Congress established to deal with transfers involving actual

fraudulent intent. The *Cohmad* court reasoned that it would be contrary to "law"

and "equity" to permit a person with knowledge of fraud "to profit from a safe

harbor." 2013 WL 1609154, at *4. But Congress, in enacting Section 546(e),

struck a "careful balance[ ] between the need for an equitable result for the debtor

13

and its creditors[ ] and the need for finality." *Ida Fishman*, 773 F.3d at 419, 423.

In striking that balance, Congress carved out only one category of transfers from

the Section 546(e) safe harbor:  transfers made by the transferor with actual

fraudulent intent within two years of the filing date—i.e., those transfers that are

subject to avoidance under Section 548(a)(1)(A).  As the Ninth Circuit Bankruptcy

Appellate Panel has held, the "argument that 'Section 546(e) should not be used as

a free pass to avoid liability in a scheme to defraud' is appealing," but that "the

drafters of the Bankruptcy Code have already provided a limitation on § 546(e) to

that effect" by excluding avoidance actions under § 548(a)(1)(A).  *Hoskins v.

Citigroup, Inc. (In re Viola)*, 469 B.R. 1, 10 (9th Cir. B.A.P. 2012); *see also

Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Investors

Fund, L.P.)*, 467 B.R. 643, 653 (Bankr. N.D. Ill. 2012) (rejecting "[r]eading

Section 546(e)" to "render[] the Section 548(a)(1)(A) actual fraud exception

superfluous").

  As the Second Circuit stated in *Fishman*, courts "are obliged to respect the

balance Congress struck among the[] complex competing considerations" involved

in bankruptcy.  *Ida Fishman,* 773 F.3d at 423.  Given "the absence of any

restrictions in sections 546(e) and 741(8), it would be an act of judicial legislation

to establish such a limitation." *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913

F.2d 846, 850 (10th Cir. 1990); *accord Hoskins*, 469 B.R. at 10.  In short, if

Congress had wanted to exclude additional categories of transfers from Section

546(e)'s safe harbor, it would have done so.

Indeed, the overriding goal of Section 546(e) is "to minimize the

displacement caused in the commodities and securities markets in the event of a

major bankruptcy affecting those industries." *Gredd v. Bear, Stearns Securities

Corp.* (*In re Manhattan Inv. Fund Ltd.*), 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002)

(quoting H.R. Rep. No. 97–420 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 583,

583). Requiring a fact-intensive inquiry into the mental state of transferees for

transfers that took place years prior to any stockbroker liquidation is fundamentally

at odds with this statutory purpose. As the Trustee himself admitted in briefing

filed in *Ida Fishman*, such an inquiry introduces "unwieldiness" and "serves

neither reason nor the statute to base application of the safe harbor on the

subjective beliefs of customers and the legitimacy of their expectations." *Picard v.

Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLC)*, No. 12-

2557 (2d Cir. May 15, 2013), ECF No. 145, at 68.

**Second Circuit Precedent.** *Cohmad* is also in significant tension with

Second Circuit precedent interpreting Section 546(e). As a threshold matter, the

Second Circuit has emphasized that "Section 546(e) is a very broadly-worded safe-

harbor provision" and must be interpreted to provide expansive coverage given the

"extraordinary breadth" of its language. *Ida Fishman*, 773 F.3d at 416-17.

15

Addressing BLMIS investors, the Second Circuit concluded that account opening

documents "authoriz[ing] BLMIS to engage in securities transactions on behalf of

its customers," i.e., the very same type executed by Fairfield Sentry with BLMIS,

sufficed to "satisfy the broad definition of 'securities contracts' under

§ 741(7)(A)." *Id*. at 418.

In *Ida Fishman*, as here, the Trustee argued that, despite the fact that BLMIS

and the transferees had executed agreements that were securities contracts, the

agreements nonetheless did not qualify as securities contracts because, despite

what the contracts said, BLMIS never executed any securities transactions. *Id*. at

419. The Second Circuit rejected that argument because it introduced an atextual

additional requirement into the statute. Instead, the Second Circuit found the plain

text of the statute, and the absence of any supportive language in that text,

dispositive. *Id*. at 420 ("Because [§ 741(7) and § 546(e)] do not contain a purchase

or sale requirement, whether or not BLMIS actually transacted in securities is not

determinative."); *see also id.* (rejecting the Trustee's argument that securities

contracts have to contain certain transactional details as yet again "construct[ing] a

requirement that the law does not contain.").

To be sure*, Ida Fishman* did not present the Second Circuit with an occasion

to expressly address whether allegations of "actual knowledge" of fraud could

remove otherwise-qualifying transfers from Section 546(e)'s safe harbor. *See id.* at

16

420 (noting that the transferees there in question "ha[d] every reason to believe" that BLMIS was engaged in legitimate business). But the Second Circuit came very close, decisively rejecting the Trustee's efforts to impose extratextual limitations on the Section 546(e) safe harbor, instead finding that the plain text of the statute controlled. The Second Circuit further rejected the Trustee's efforts to look beyond the four corners of the contracts at issue to underlying subjective intent or subsequent performance, instead emphasizing that, "[o]n their face," the account documents "established the broker-customer relationship." *Id.* at 418. And, critically, the Second Circuit rejected the argument that fraud establishes that a transfer was not made "in connection with" a qualifying securities contract, explaining that "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously" without falling outside the safe harbor. *Id.* at 422.

*Cohmad*'s holding is thus contrary to the Second Circuit's holding and reasoning in *Ida Fishman*. Fairfield Sentry's alleged knowledge of BLMIS's fraud scheme does not alter the fact that the transfers between it and BLMIS "originated with, and could not have been possible but for, the relationship created by the Account Documents," without which "there would be no basis for a customer to make deposits or request withdrawals," a fact the Second Circuit found sufficient to establish Section 546(e) protection in *Ida Fishman*. *Id.* at 418-19.

17

**Uncertainty Posed By Applying An Unwritten "Actual Knowledge" Exception.**

In addition, the *Cohmad* rewriting of Section 546(e) generates a host of

unresolved subsidiary questions as to how "actual knowledge" should be assessed,

which are at odds with the certainty that the Section 546(e) safe harbor was

enacted to provide.  Perhaps most notably, *Cohmad* does not answer the critical

question that if actual knowledge is in fact required then at what point must the

transferee have acquired such knowledge.  Certain passages in *Cohmad* focus on

knowledge at the time of contract signing.  *See Cohmad*, 2013 WL 1609154, at *4

(contrasting "the reasonable expectations of investors who believed they were

signing a securities contract" with "a transferee who had actual knowledge …

[and] did not have any such expectations"); *see also In re: BLMIS*, No. 08-99000,

2015 WL 4734749, at *12 (Bankr. S.D.N.Y. Aug. 11, 2015) (referring to "actual

knowledge" at the time of contract formation).  Other passages, however, suggest

that knowledge at the time of the transfers might be sufficient.  *See* 2013 WL

1609154, at *3 ("[S]ince such defendants are alleged to have known in effect that

the account agreements never led to a [securities] transaction …, they therefore

also must have known that the transfers could not have been made in connection

with an actual 'securities contract.'").  This is in direct contrast to *Ida Fishman,*

where the Second Circuit emphasized contract formation as the relevant period of

time in determining whether a transfer qualifies as in connection with a qualifying

a securities contract for Section 546(e). Indeed, its holding that BLMIS customer agreements constitute "securities contracts" was based on the premise that by the agreements "BLMIS customers were required to execute when opening their accounts," the customers and BLMIS "'manifest[ed] their mutual assent' that BLMIS would conduct securities transactions on the customers' behalf pursuing a specific investment strategy." 773 F.3d at 418, 421. That question of timing could easily be dispositive, as it is here, where the Trustee does not allege that Fairfield Sentry had any knowledge of BLMIS's fraud scheme when Fairfield Sentry opened its accounts with BLMIS (in November 1990 and October 1992). *See* Incorporated Complaint ¶¶ 33, 317-318.

*     *     *

In sum, there are abundant grounds for different views regarding *Cohmad*'s engrafting of an atextual "actual knowledge" prerequisite on top of the plain language of Section 546(e). At a minimum, there is "genuine doubt as to whether the bankruptcy court applied the correct legal standard," which in turn satisfies the substantial grounds for disagreement standard. *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006).

## III.  Resolving The Question Will Materially Advance Termination Of This Case And Many Other Cases.

The requirement that an appeal "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), is "closely connected" to the controlling-legal-question element.  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).  As explained above, this motion presents the controlling legal question of whether Section 546(e) bars avoidance of the transfers on which the recovery claim in this action is predicated.  Correct application of the plain language of Section 546(e) would bring this case to an end.  *See, e.g., Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013) (affirming dismissal of claims based on affirmative defense); *Ida Fishman*, 773 F.3d at 415 (affirming dismissal of avoidance claim based on Section 546(e)).

In addition to assessing the impact of appeal on the case at hand, a court "may properly consider the system-wide costs and benefits of allowing the appeal" by evaluating the "impact that an appeal will have on other cases."  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  A successful appeal here will also result in closure of many other similarly situated cases.  *See supra* 2. Defendant freely acknowledges that Judge Rakoff recently denied a series of coordinated motions for leave to appeal filed by several other defendants which also addressed the applicability of Section 546(e), finding that the movants there failed to satisfy the § 1292(b) factors.  But here the facts are very different.  Those

20

movants did not directly challenge *Cohmad*'s atextual premise that the safe harbor provision includes a knowledge limitation in their motions for leave to appeal. The movants argued an entirely different legal issue, namely that *Cohmad* should be read as permitting subsequent transferees to "assert a defense to the avoidance of the initial transfer that would have been unavailable to the initial transferee." *Picard v. Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at *6. The Trustee specifically opposed granting interlocutory appeal on those coordinated motions because, while "defendants argue[d] below that there is no actual knowledge exception … they don't make that argument here today" and granting leave to appeal on those motions would therefore lead to "piecemeal appeals on section 546(e)." Transcript, *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-6502-JSR (S.D.N.Y. Aug. 1, 2022), ECF No. 17, at 34 (attached here as Exhibit D). In direct contrast, this motion presents that core foundational question and the opportunity to resolve these Section 546(e) questions efficiently and finally. In short, if the bankruptcy court's decision in this case is reversed, then there will be no need to address the issue for which Judge Rakoff recently denied interlocutory appeal.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court should grant leave to appeal.

Respectfully submitted,

*/s/ Jonathan P. Guy*
Jonathan P. Guy
James W. Burke (admitted *pro hac vice*)
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500
Email:  jguy@orrick.com;
jburke@orrick.com

*Attorneys for Koch Industries, Inc.*

January 4, 2023

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of

Bankruptcy Procedure 8013(f)(3)(A), because it contains 4,965 words, excluding

the parts of the brief exempted by Federal Rule of Bankruptcy Procedure

8015(g).

This motion complies with the typeface and the type style requirements of

Federal Rule of Bankruptcy Procedure 8013(f)(2) because this brief has been

prepared in a proportionately spaced typeface using Microsoft Word in 14-point

Times New Roman font.

*/s/ Jonathan P. Guy*
Jonathan P. Guy
*Attorney for Koch Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Bankruptcy Court for the Southern District of New

York by using the CM/ECF system on January 4, 2023.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system and by U.S.

mail.

/s/ Jonathan P. Guy
Jonathan P. Guy
*Attorney for Koch Industries, Inc.*