**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02763 (CGM) |
| Plaintiff, | |
| v. | |
| INTELIGO BANK LTD., F/K/A BLUBANK LTD, | |
| Defendant. | |

**ANSWER WITH AFFIRMATIVE DEFENSES AND JURY DEMAND**

Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

Inteligo Bank Ltd. ("Inteligo") responds to the Complaint of Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff, as follows:

**GENERAL DENIAL**

Except as expressly admitted herein, Inteligo denies each and every allegation in the Complaint. Inteligo states that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations of the headings and subheadings in the Complaint are denied. In answering the Complaint's allegations, Inteligo does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any allegation. To the extent it is later determined that a response is required to any allegation, Inteligo denies any such allegation. Inteligo expressly reserve the right to amend and/or supplement the Answer.

**RESPONSES TO SPECIFIC ALLEGATIONS**

## I.    NATURE OF THE ACTION

1.      This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER**:    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of this paragraph,

---

[1] Footnote 1 of the Complaint states: "SIPA § 78lll(4) defines 'Customer Property' as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." Inteligo refers the Court to the quoted statute for a complete and accurate statement of its contents.

except admit that the Trustee purports to bring this adversary proceeding as part of its continuing efforts to recover certain property.

2.    With this Complaint, the Trustee seeks to recover the equivalent of at least $10,818,105 in subsequent transfers of Customer Property made by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts. Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma Limited ("Fairfield Sigma"), which invested 100% of its assets in Fairfield Sentry. Fairfield Sigma is also in liquidation in the BVI.

**ANSWER:**    The first sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of the first sentence of the paragraph, except admit that the Complaint seeks to recover certain funds. With respect to the second sentence and last sentence of this paragraph, Inteligo admits that Fairfield Sentry and Fairfield Sigma were in liquidation in the BVI. The second sentence and last sentence of this paragraph contains legal conclusions to which no response is required. Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of this paragraph and deny them on that basis.

3.    When Defendant Inteligo received the subsequent transfers of BLMIS Customer Property, Defendant Inteligo was a private financial advisory and banking services company. According to its website, Defendant Inteligo maintains a conservative investment policy. Its website further provides that Defendant Inteligo's investment portfolio is characterized by clear, well-defined risk policies aimed at protecting shareholder capital. In addition, the website represents that Defendant Inteligo's assets are held at conservative, solvent institutions. *See* Exhibit A.

**ANSWER:**    Inteligo denies the allegations in the first sentence of paragraph 3, except to admit that Inteligo was a private financial advisory and banking services company. Inteligo admits that the remainder of the paragraph accurately reflects what is stated on its website in Exhibit A.

## II.    NATURE OF THE ACTION

4.      The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant Inteligo as a subsequent transferee of funds originating from BLMIS.

**ANSWER:**    Paragraph 4 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies each and every allegation in paragraph 4 of the Complaint, except Inteligo admits that the Trustee has brought this adversary proceeding asserting he has the authority to bring such action pursuant to the cited statutory authorities.

5.      This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending.  The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER:**    Inteligo admits the allegations of the first sentence of paragraph 5 of the Complaint. Inteligo denies knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 5.  Inteligo states that the third sentence of paragraph 5 sets forth legal conclusions to which no response is required, but to the extent that a response is required, Inteligo denies that this Court has jurisdiction to enter a final order or judgment in this proceeding.

6.      Defendant Inteligo is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York based BLMIS through Fairfield Sentry and Fairfield Sigma.  Defendant Inteligo knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma, both Fairfield Greenwich Group ("FGG") managed Madoff feeder funds.

**ANSWER:**   This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of this paragraph.

7.     By directing its investments through FGG, Defendant Inteligo knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York.  Upon information and belief, Defendant Inteligo entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent the subscription agreement to FGG's New York City office, wired funds to Fairfield Sentry through a bank in New York, and met with its Fairfield Sentry account representatives in FGG's New York City office.  Defendant Inteligo thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER:**   Paragraph 7 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies each and every allegation in paragraph 7 of the Complaint, including that it is subject to personal jurisdiction in this action, met with Fairfield Sentry account representatives in FGG's New York, and derived significant revenue from New York, except Inteligo admits that it entered into a subscription agreement with Fairfield Sentry in which it submitted to jurisdiction in New York only with respect to that agreement, sent the subscription agreement to FGG's New York City Office, and wired funds to Fairfield Sentry through a bank in New York before being deposited in Fairfield Sentry's foreign account.

8.     Defendant Inteligo should reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**ANSWER**:   The allegations of paragraph 8 constitute legal conclusions to which no response is required.  To the extent a response is deemed to be required, Inteligo denies the allegations of paragraph 8.

9.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**ANSWER:**   The allegations of paragraph 9 constitute legal conclusions to which no response is required.   To the extent a response is deemed to be required, Inteligo denies the allegations of paragraph 10, states that they do not consent to the issuance of entry of final orders or judgments by the Bankruptcy Court and demands trial by jury of all issues that may be tried by a jury.

10.   Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER:**   The allegations of paragraph 10 constitute legal conclusions to which no response is required.

## III.   BACKGROUND

11.   On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**ANSWER:**   Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11 and denies them on that basis, except admits that Madoff was arrested on or about December 11, 2008, and that the SEC filed a complaint against Madoff and BLMIS.

12.   On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER:**   Inteligo denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and refers to the District Court's Order dated December 12, 2008 for a full and accurate statement of its contents.

13.   On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").   Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to

securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and refers to the application filed by SIPC, to which reference is made in paragraph 13, for a full and accurate statement of its contents.

14. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3); b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and c. removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and refer to the District Court's Order dated December 15, 2008, for a full and accurate statement of its contents.

15. By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and refer this Court to its Orders dated December 23, 2008 and February 4, 2009, respectively, for full and accurate statements of their contents.

16. At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**ANSWER:** Inteligo refers the Court to the transcript of the March 12, 2009 plea hearing for a complete and accurate statement of its contents. Inteligo otherwise lacks

knowledge or information sufficient to form a belief about the truth of the allegations in

paragraph 16 and denies them on that basis.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme.  At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information.  Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

**ANSWER:**    Inteligo refers the Court to the transcript of the August 11, 2009 plea

hearing for a complete and accurate statement of its contents.  Inteligo otherwise lacks

knowledge or information sufficient to form a belief about the truth of the allegations in

paragraph 17 and denies them on that basis.

## IV.    TRUSTEE'S POWERS AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway.  However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER:**    The first sentence of this paragraph contains legal conclusions to which no

response is required.  To the extent a response is required, Inteligo lacks knowledge or

information sufficient to form a belief about the truth of the allegations of the first, second and

third sentences of this paragraph and denies them on that basis.  The allegations of the fourth and

fifth sentences of this paragraph contain legal conclusions to which no response is required.  To

the extent a response is required, Inteligo lacks knowledge or information sufficient to form a

belief about the truth of the allegations of the fourth and fifth sentences of this paragraph and

denies them on that basis.

19.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of paragraph 19.

20.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of paragraph 20.

21.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of paragraph 21.

## V.    THE DEFENDANTS

22.    Defendant Inteligo, formerly known as Blubank Ltd. Panama Branch, is a company incorporated under the laws of the Republic of Panama.  Defendant Inteligo maintains a place of business at Torre Banco General Marbella, Avenue Aquilino de la Guardia, 16th floor, P.O. Box 00832-00585, Panama, Republic of Panama, care of Inteligo Bank Ltd., f/k/a Blubank Ltd.  Defendant Inteligo also maintains a place of business at Seventeen Shop Building, 1st floor, Collins Avenue & Fourth Terrace, Centreville, Nassau, the Bahamas.

**ANSWER:**    Inteligo denies that it is a company incorporated under the laws of the Republic of Panama and denies that it maintains a place of business in Panama at the address listed in the second sentence of paragraph 22.  Inteligo admits that it has a place of business in the Bahamas at the address listed in the third sentence of paragraph 22.

## VI.    THE PONZI SCHEME

23.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**ANSWER:**    Inteligo denies knowledge or information sufficient to form a belief about

the truth of the allegations of paragraph 23 and denies them on that basis.

24.    Outwardly, Madoff ascribed the consistent success of the IA Business to the so called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**ANSWER:**    Inteligo denies knowledge or information sufficient to form a belief about

the truth of the allegations of paragraph 24 and denies them on that basis.

25.    The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**ANSWER:**    Inteligo denies knowledge or information sufficient to form a belief about

the truth of the allegations of paragraph 25 and denies them on that basis.

26.    BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a

single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**ANSWER:**    Inteligo refers the Court to the transcript of the March 12, 2009 plea hearing for a complete and accurate statement of its contents. Inteligo otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 26 and denies them on that basis.

27.    Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**ANSWER:**    Inteligo denies knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 27 and denies them on that basis.

28.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**ANSWER:**    The allegations of the first sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 28 and denies them on that basis. Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of the second and third sentences of paragraph 28 and denies them on that basis.

29.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 29 and denies them on that basis.

30.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 30 and denies them on that basis.

31.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 31 and denies them on that basis.

32.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER:** Inteligo denies knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 32 and denies them on that basis.

33.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 33 and denies them on that basis.

## VII.    THE TRANSFERS

34.    Fairfield Sentry received initial transfers of BLMIS Customer Property.  Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant Inteligo.

**ANSWER:**   This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of paragraph 34.

### A.    Initial Transfers From BLMIS To Fairfield Sentry

35.    The Trustee filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd.*, *et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint").  The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**ANSWER:**   Inteligo admits that the Trustee filed an action in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09- 01239 (BRL), and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 35 and denies them on that basis.  The second sentence of this paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of the second sentence of this paragraph.  Inteligo further object to the Trustee's purported attempt to incorporate by reference the allegations contained in a 798-paragraph complaint from a different proceeding to which Inteligo is not a party regarding matters not relevant to this action without any attempt to identify which allegations may be relevant in this action, if any.  Inteligo has no obligation to respond to the allegations in that complaint.  To the extent a response is required, Inteligo lacks knowledge or information sufficient to form a belief about the truth of such allegations and denies them on that basis.

36.     During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Six Year Initial Transfers"). The Fairfield Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:**    Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and denies them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of the second sentence of this paragraph.

37.     The Fairfield Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Two Year Initial Transfers"). The Fairfield Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 548, 550, and 551 of the Bankruptcy Code, § 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:**    Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and denies them on that basis. The allegations of the second sentence of paragraph 37 contain legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of the second sentence of paragraph 37.

38.     The Fairfield Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Preference Period Initial Transfers"). The Fairfield Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:**    Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and denies them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no

response is required.  To the extent a response is required, Inteligo denies the allegations of the second sentence of paragraph 38.

39.    The Fairfield Six Year Initial Transfers, Fairfield Two Year Initial Transfers, and the Fairfield Preference Period Initial Transfers are collectively defined as the "Fairfield Initial Transfers."  Charts setting forth these transfers are included as Exhibits B and C.

**ANSWER:**    Inteligo denies the allegations of the first sentence of this paragraph, except admits that the term "Fairfield Sentry Initial Transfers" is defined as set forth in this sentence.  Inteligo denies the allegations of the second sentence of paragraph 39, except admit that Exhibits B and C are attached to the Complaint and refer the Court to those exhibits for a complete and accurate statement of their contents.

40.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement").  As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment against Fairfield Sentry in the amount of $3,054,000,000. Fairfield Sentry is obligated to pay $70,000,000 to the Trustee under the terms of the Settlement Agreement.

**ANSWER:**    Inteligo lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis, except admit that the Bankruptcy Court approved a settlement among certain parties including the Trustee and Fairfield Sentry and that Fairfield Sentry is obligated to pay some amount to the Trustee. Inteligo refers the Court to the Settlement Agreement and the June 7, 2011, June 10, 2011, and July 13, 2011 orders referenced in paragraph 40 for a complete and accurate statement of their contents.

## B.    Subsequent Transfers From Fairfield Sentry To Defendant Inteligo

41.    A portion of the Fairfield Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Inteligo, and is recoverable from Defendant Inteligo pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $10,745,161 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to

Defendant Inteligo (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit D.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of paragraph 41, except admits that Exhibit D is attached to the Complaint and refers the Court to that exhibit for a complete and accurate statement of its contents.

42.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Initial Transfers, Fairfield Sentry Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo responds as follows: Inteligo denies the allegations of paragraph 42, except lacks knowledge or information sufficient to form a belief about the truth of the allegations that the Trustee's investigation is ongoing and denies them on that basis.

### C.    Subsequent Transfers From Fairfield Sentry To Fairfield Sigma And Subsequently To Defendant Inteligo

43.    A portion of the Fairfield Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Inteligo through Fairfield Sigma and is recoverable from Defendant Inteligo pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma. Thereafter, the equivalent of at least $72,944 was transferred by Fairfield Sigma to Defendant Inteligo (the "Fairfield Sigma Subsequent Transfers"). Charts setting forth the presently known Fairfield Sigma Subsequent Transfers are attached as Exhibits E and F.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Inteligo denies the allegations of paragraph 43, except admits that Exhibits E and F are attached to the Complaint and refers the Court to those exhibits for a complete and accurate statement of their contents.

44.    The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Initial Transfers, Fairfield Sigma Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo responds as follows: Inteligo denies the allegations of paragraph 44, except lacks knowledge or information sufficient to form a belief about the truth of the allegations that the Trustee's investigation is ongoing and denies them on that basis.

45.    The Fairfield Sentry Subsequent Transfers and the Fairfield Sigma Subsequent Transfers are collectively defined as the "Fairfield Subsequent Transfers."

**ANSWER:**    Inteligo denies the allegations of paragraph 45, except admits that the term "Fairfield Subsequent Transfers" is defined as set forth in the paragraph.

## COUNT ONE
## RECOVERY OF SUBSEQUENT TRANSFERS –
## 11 U.S.C. §§ 550(a) AND 551 AND NYDCL § 278

46.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**    Inteligo incorporates and reasserts its response to the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

47.    Defendant Inteligo received the Fairfield Subsequent Transfers, totaling approximately $10,818,105, which are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations in paragraph 47.

48.    Each of the Fairfield Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Inteligo.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations in paragraph 48.

15

49.    Defendant Inteligo is an immediate or mediate transferee of the Fairfield Initial Transfers.

**ANSWER:**    The allegations of paragraph 49 contain legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of this paragraph.

50.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Inteligo recovering the Fairfield Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations of paragraph 50 contain legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies the allegations of this paragraph.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief contains legal conclusions to which no response is required.  To the extent a response is required, Inteligo denies that the Trustee is entitled to his requested relief or to any other relief.

## AFFIRMATIVE DEFENSES

Inteligo asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff.  In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Inteligo hereby preserves each and every defense at law, in equity, or otherwise, available under federal and state law, including common law.  Further, Inteligo reserves the right to amend this Answer to assert any other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.  These defenses are set forth cumulatively and in the alternative.

16

## FIRST AFFIRMATIVE DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. § 546(e))

The Trustee's claims are barred, in whole or in part, because the alleged subsequent transfers to Inteligo, if any, may not be recovered because the alleged initial transfers, if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e).

## SECOND AFFIRMATIVE DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

The Trustee's claims are barred, in whole or in part, because any property that Inteligo received from the so-called Fairfield Subsequent Transfers was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry or Fairfield Sigma, and therefore any such property is not recoverable by the Trustee from Inteligo.

## THIRD AFFIRMATIVE DEFENSE

### Mere Conduit/Lack of Dominion and Control (11 U.S.C. § 550(a))

The Trustee's claims are barred, in whole or in part, because Inteligo was a mere conduit or otherwise lacked dominion and control over any funds it received from the so-called Fairfield Subsequent Transfers and Inteligo was not a transferee for purposes of 11 U.S.C. § 550(b). Inteligo believes this argument is not an affirmative defense, rather it negates the "transferee" element of the Trustee's claim, but pleads it in the alternative.

## FOURTH AFFIRMATIVE DEFENSE

### For Value, in Good Faith, and Without Knowledge of Voidability (11 U.S.C. § 550(b))

The Trustee's claims are barred, in whole or in part, because any funds Inteligo received from the so-called Fairfield Subsequent Transfers was for value, in good faith, and without knowledge of the voidability of any alleged initial transfers from BLMIS to Fairfield Sigma or

17

Fairfield Sentry, and thus the alleged transfers to Inteligo, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

## FIFTH AFFIRMATIVE DEFENSE

### Lack of Subject Matter Jurisdiction (U.S. Const. art. III; Fed. R. Civ. P. 12(b)(l);

### Fed. R. Bankr. P. 7012(b))

The Trustee's claims are barred, in whole or in part, because this Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

## SIXTH AFFIRMATIVE DEFENSE

### Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

The Trustee's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Inteligo's' Motion to Dismiss the Complaint, filed on June 27, 2022, in this adversary proceeding [see ECF No. 116] and proceedings thereon.

## SEVENTH AFFIRMATIVE DEFENSE

### Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012(b))

The Trustee's claims are barred, in whole or in part, because this Court lacks personal jurisdiction over Inteligo, and Inteligo not consented to a decision by this Court or to this Court's authority to hear and determine this action.

## EIGHTH AFFIRMATIVE DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

The Trustee's claims are barred, in whole or in part, because the Trustee may not recover the alleged Fairfield Subsequent Transfers because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sigma or Fairfield Sentry.

## NINTH AFFIRMATIVE DEFENSE

### No Ponzi Scheme Presumption

The Trustee's claims are barred, in whole or in part, because the Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sigma or Fairfield Sentry that he seeks to recover from Inteligo were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

## TENTH AFFIRMATIVE DEFENSE

### Inteligo as Initial Transferee-Mere Conduit or Lack of Dominion or Control Defense

The Trustee's claims are barred, in whole or in part, because Fairfield Sentry and Fairfield Sigma were mere conduits or otherwise lacked dominion and control over the funds it received, and consequently, any claimed transfers were initial transfers from BLMIS to Inteligo or, alternatively, Inteligo's customers.  Inteligo believes this argument is not an affirmative defense, rather it negates the initial transfer element of the Trustee's claim, but pleads it in the alternative.

## ELEVENTH AFFIRMATIVE DEFENSE

### New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

19

## TWELFTH AFFIRMATIVE DEFENSE

### Section 278(1) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the alleged initial transfers were received, if at all, for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

## THIRTEENTH AFFIRMATIVE DEFENSE

### Section 278(2) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because the alleged initial transfers were taken, if at all, without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## FOURTEENTH AFFIRMATIVE DEFENSE

### Sufficient SIPC Funds

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

## FIFTEENTH AFFIRMATIVE DEFENSE

### Failure to Mitigate

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has failed to mitigate, minimize or avoid damages, if any.

## SIXTEENTH AFFIRMATIVE DEFENSE

### British Virgin Island Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the

Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### No Interest

The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### Statute of Limitations

The Trustee's claims are barred, in whole or in part, by the statute of limitations.

## NINETEENTH AFFIRMATIVE DEFENSE

### Estoppel

The Trustee's claims are barred, in whole or in part, by estoppel.

## TWENTIETH AFFIRMATIVE DEFENSE

### Unreasonable Delay / Laches

The Trustee's claims are barred, in whole or in part, because the delay in bringing and prosecuting his claim, which was brought more than a decade ago, lay dormant for years and concerns alleged transfers made nearly 20 years ago, is unreasonable and unfairly prejudices Inteligo's ability to defend itself, including, without limit, with respect to any claim by the Trustee for interest accruing from after the date of the filing of Complaint.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### Violation of Due Process (U.S. Const. Amend. V)

The Trustee's claims are barred, in whole or in part, to the extent the doctrine of law of the case has been applied to Inteligo based on rulings made in other adversary proceedings to

which they were not a party and in which they did not participate, which violates Inteligo's right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

The Trustee's claims are barred, in whole or in part, because, pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent transfer from Inteligo to the extent he has recovered the amount of the alleged initial transfers from Fairfield Sentry, Fairfield Sigma, or any other immediate or mediate transferee, and the amount of the avoided initial transfers is included in the alleged Customer Property that the Trustee alleges Inteligo received.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Inteligo, Inteligo reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### Double Recovery

The Trustee's claims are barred, in whole or in part, to the extent that any other entity recovers from Inteligo based on the conduct alleged in the Complaint in settlement or otherwise, because the Trustee is not entitled to double recovery, nor should Inteligo be subject to recovery of identical funds from two separate entities. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, the Eurizon Defendants demand a trial by jury on all issues that may be tried by a jury.

22

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### Extraterritoriality

The Trustee's claims to recover the so-called Fairfield Subsequent Transfers from Inteligo constitute an impermissible extraterritorial application of 11 U.S.C. § 550(a) and NYDCL § 278.

## TWENTY-SSIXTH AFFIRMATIVE DEFENSE

### Comity

The Trustee's claims to recover the so-called Fairfield Subsequent Transfers from Inteligo violate principles of international comity

### JURY DEMAND

Inteligo demands a trial by jury on all issues that may be tried by a jury

### STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Inteligo does not consent to entry of final orders or judgment by the Bankruptcy Court.

**DEFENDANTS' REQUEST FOR RELIEF WHEREFORE**, Inteligo demands judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Date:   February 10, 2023

/s/ Heather Lamberg
Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)