MAYER BROWN LLP
Joaquin M. C de Baca
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 506-2500
Email:  jcdebaca@mayerbrown.com

*Counsel for Defendant UKFP (Asia) Nominees Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01566 (CGM) |
| v. | |
| UKFP (ASIA) NOMINEES LIMITED, | |
| Defendant. | |

**ANSWER TO COMPLAINT AND JURY DEMAND**

Defendant UKFP (Asia) Nominees Limited ("UKFP" or "Defendant"), by its undersigned counsel, Mayer Brown LLP, as and for its answer (this "Answer") to the Complaint,[1] ECF No. 1 (the "Complaint"),[2] filed on April 26, 2012, by plaintiff Irving H. Picard, as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff (the "Trustee" or the "Plaintiff"), respectfully states as follows:[3]

## **GENERAL DENIAL**

Except as otherwise expressly admitted herein, UKFP denies each and every allegation in the Complaint. UKFP states that the headings and subheadings throughout the Complaint do not constitute well-pleaded allegations and, therefore, require no response. To the extent a response is required, the allegations in the headings and subheadings in the Complaint are denied. In answering the allegations in the Complaint, UKFP does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility or prejudicial effect of any of the allegations in the Complaint. To the extent it is later determined that a response is required to any allegation UKFP avers has been mooted by a prior dismissal of the Trustee's claims, UKFP denies any such allegation. UKFP expressly reserves the right to amend and/or supplement this Answer.

---

[1] The Stipulation and Order entered March 15, 2022, ECF No. 79 (the "Subsequent Transfer Dismissal Order"), dismissed the Trustee's claims as to seven alleged subsequent transfers identified therein (the "Dismissed Subsequent Transfers"), reducing the amount sought by the Trustee by $2,829,858. The Trustee did not file an amended complaint reflecting this change. This Answer refers to the Complaint as originally filed, except for the Dismissed Subsequent Transfers.

[2] Unless otherwise noted, all ECF No. citations refer to Adv. Proc. No. 12-01566 (CGM).

[3] Capitalized terms not defined herein have the meaning set forth in the Complaint.

## RESPONSES TO SPECIFIC ALLEGATIONS

## I.    NATURE OF THE ACTION

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[4] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

**ANSWER:**    UKFP denies the allegations in Paragraph 1 of the Complaint, except UKFP admits that the Trustee purports to bring this adversary proceeding as part of the Trustee's efforts to recover BLMIS Customer Property within the meaning of 15 U.S.C. § 78*lll*(4).

2.    With this Complaint, the Trustee seeks to recover approximately $8,012,183 in subsequent transfers of Customer Property made to Defendant UKFP. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Sentry is a British Virgin Islands ("BVI") company that is in liquidation in the BVI. Fairfield Sentry had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS, and maintained in excess of 95% of its assets in its BLMIS customer accounts.

**ANSWER:**    UKFP denies the allegations in Paragraph 2 of the Complaint, including that UKFP received subsequent transfers of Customer Property from BLMIS or any Madoff feeder fund, except UKFP admits that the Trustee seeks to recover from UKFP the amount of alleged subsequent transfers alleged in the Complaint, except for the Dismissed Subsequent Transfers, and denies knowledge or information sufficient to form a belief as to whether Fairfield Sentry is a BVI company that is in liquidation in the BVI and had direct customer accounts with BLMIS's investment advisory business.

3.    When Defendant UKFP received the subsequent transfers of BLMIS Customer Property, Defendant UKFP was a member of Henderson Group plc, a large investment management company.

---

[4] Footnote 1 of the Complaint states: "SIPA § 78*lll*(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

**ANSWER:**    The allegations in Paragraph 3 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 3 of the Complaint.

## II.    <u>JURISDICTION AND VENUE</u>

4.    The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "<u>Bankruptcy Code</u>"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("<u>NYDCL</u>") §§ 273-279 (McKinney 2001), to obtain avoidable and recoverable transfers received by Defendant UKFP as a subsequent transferee of funds originating from BLMIS.

**ANSWER:**    The allegations in Paragraph 4 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP admits that the Trustee has brought this adversary proceeding but denies the remaining allegations in Paragraph 4 of the Complaint.

5.    This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "<u>SIPA Case</u>"), is pending.  The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "<u>District Court</u>") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.,* No. 08 CV 10791 (the "<u>District Court Proceeding</u>").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER:**    UKFP admits the allegations in the first sentence of Paragraph 5 of the Complaint.  UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 5.  The third sentence of Paragraph 5 sets forth legal conclusions to which no response is required, but to the extent that a response is required, UKFP denies that this Court has jurisdiction to enter a final order or judgment in this proceeding.

6.    Defendant UKFP is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based

BLMIS through Fairfield Sentry. Defendant UKFP knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry.

**ANSWER:** The allegations in Paragraph 6 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, UKFP denies the allegations in Paragraph 6 of the Complaint.

7. By directing investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund, Defendant UKFP knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant UKFP entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction, sent a copy of the agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. Defendant UKFP thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER:** The allegations in Paragraph 7 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint.

8. Defendant UKFP should reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**ANSWER:** The allegations in Paragraph 8 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, UKFP denies the allegations in Paragraph 8 of the Complaint.

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

**ANSWER:** The allegations in Paragraph 9 of the Complaint set forth legal conclusions to which no response is required. To the extent that a response is required, UKFP denies the allegations in Paragraph 9 of the Complaint. UKFP does not consent to issuance or entry of final orders or judgments by the Bankruptcy Court.

10.    Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER:**    The allegations in Paragraph 10 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 10 of the Complaint.

## III.    BACKGROUND

11.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia,* securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.  The District Court Proceeding remains pending.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint.

12.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and respectfully refers the Court to the order dated December 12, 2008 referenced in Paragraph 12 for its complete and accurate contents.

13.    On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia,* that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and respectfully refers the Court to the application filed by SIPC referenced in Paragraph 13 for its complete and accurate contents.

14.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c. removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and respectfully refers the Court to the order dated December 15, 2008 referenced in Paragraph 14 for its complete and accurate contents.

15.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and respectfully refers the Court to the orders referenced in Paragraph 15 for their complete and accurate contents.

16.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff,* Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and respectfully refers the Court to the transcript of the plea hearing referenced in Paragraph 16 for its complete and accurate contents.

17.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 17 of the Complaint and respectfully refers the Court to the

transcript of the plea hearing of Frank DiPascali on August 11, 2009 referenced in Paragraph 17

for its complete and accurate contents.

## IV.    TRUSTEE'S POWERS AND STANDING

18.    As Trustee appointed under SIPA, the Trustee is charged with recovering and
paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other
assets of BLMIS for the benefit of the estate and its creditors.  The Trustee is in the process of
marshaling BLMIS's assets, and this liquidation is well underway.  However, the estate's present
assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested
with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA
and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that
received preferences and fraudulent transfers to the detriment of defrauded customers whose
money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee
will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-
2(c)(1).

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 18 of the Complaint, except to state that the allegations

concerning the Trustee's responsibilities and authority under SIPA and the Bankruptcy Code set

forth legal conclusions to which no response is required.  To the extent a response is required,

UKFP denies such allegations.

19.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee
in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-
1(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this
case to the extent consistent with SIPA.

**ANSWER:**    The allegations in Paragraph 19 of the Complaint set forth legal conclusions

to which no response is required.  To the extent that a response is required, UKFP denies the

allegations in Paragraph 19 of the Complaint.

20.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER:**    The allegations in Paragraph 20 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 20 of the Complaint.

21.    The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:**    The allegations in Paragraph 21 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 21 of the Complaint.

## V.    **THE DEFENDANT**

22.    Defendant UKFP is a BVI company with its registered office located at Beaufort House, P.O. Box 438, Road Town, Tortola, BVI.  Defendant UKFP maintains its principal place of business at Level 28, Three Pacific Place, 1 Queen's Road East, Hong Kong.

**ANSWER:**    UKFP denies the allegations in Paragraph 22 of the Complaint, except that UKFP admits that UKFP is a BVI company with its registered office located at Palm Grove House, P.O. Box 438, Road Town, Tortola, BVI.

## VI.    **THE PONZI SCHEME**

23.    BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members.  BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b) [sic].  By virtue of that registration, BLMIS was a member of SIPC.  BLMIS had three business units: market making, proprietary trading, and the IA Business.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint.

24.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy").  Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies.  Madoff claimed that his basket of stocks would mimic the movement of the S&P 100.  He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 24 of the Complaint.

25.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts.  Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks.  Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options.  Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills.  Madoff also told customers that he would enter and exit the market between six and ten times each year.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 25 of the Complaint.

26.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts.  The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious.  At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy.  He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts.  In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities.  Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 26 of the Complaint and respectfully refers the Court to the

transcript of the plea hearing referenced in Paragraph 26 for its complete and accurate contents.

27.     Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 27 of the Complaint.

28.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments to enrich himself, his associates, and his family.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 28 of the Complaint.

29.    The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments.  BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 29 of the Complaint.

30.    It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 30 of the Complaint.

31.    Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 31 of the Complaint.

32.    Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts.  When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth only a fraction of that amount.  Customer accounts had not accrued any real profits because virtually no

investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 32 of the Complaint.

33.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets.  BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 33 of the Complaint.

## VII.    THE TRANSFERS

34.    Fairfield Sentry received initial transfers of BLMIS Customer Property.  Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant UKFP.

**ANSWER:**    UKFP denies the allegations in Paragraph 34 of the Complaint.

### A.    Initial Transfers From BLMIS To Fairfield Sentry

35.    The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint").  The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**ANSWER:**    The allegations in Paragraph 35 refer to proceedings in another litigation to

which UKFP was not a party.  UKFP respectfully refers the Court to the docket and filings in the

action referenced in Paragraph 35 for their contents.  UKFP objects to the purported wholesale

incorporation by reference of a pleading from another litigation as a violation of Rule 8 of the

Federal Rules of Civil Procedure, as incorporated by Rule 7008 of the Federal Rules of Bankruptcy

Procedure, but reserves the right to rely on and introduce any allegations in the referenced

"Fairfield Amended Complaint" or its exhibits as opposing party admissions admissible for the

truth of their contents.  To the extent that the Court may allow wholesale incorporation of the

allegations in the Fairfield Amended Complaint, UKFP denies knowledge or information

sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint.

36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield
Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers").  The Fairfield
Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning
of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the
Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly
SIPA § 78fff-2(c)(3).

**ANSWER:**    The allegations in Paragraph 36 set forth legal conclusions to which no

response is required.  To the extent a response is required as to such allegations, UKFP denies

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

36 of the Complaint.

37.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion
which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the
"Fairfield Sentry Two Year Initial Transfers").  The Fairfield Sentry Two Year Initial Transfers
were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are
avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-
279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:**    The allegations in Paragraph 37 set forth legal conclusions to which no

response is required.  To the extent a response is required as to such allegations, UKFP denies

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

37 of the Complaint.

38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion
which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the
"Fairfield Sentry Preference Period Initial Transfers").  The Fairfield Sentry Preference Period
Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4),
and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and
applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER:**    The allegations in Paragraph 38 set forth legal conclusions to which no

response is required.  To the extent a response is required as to such allegations, UKFP denies

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

38 of the Complaint.

39.    The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial
Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as
the "Fairfield Sentry Initial Transfers."  Charts setting forth these transfers are attached as Exhibits
A and B.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 39 of the Complaint and respectfully refers the Court to

Exhibits A and B referenced in Paragraph 39 for their complete and accurate contents.

40.    Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the
Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the
"Settlement Agreement").  As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy
Court entered a consent judgment granting the Trustee a judgment in the amount of
$3,054,000,000.  Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to
pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 40 and respectfully refers the Court to the Settlement

Agreement referenced in Paragraph 40 of the Complaint for its complete and accurate contents.

**B.    Subsequent Transfers from Fairfield Sentry to Defendant UKFP**

41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred
either directly or indirectly to, or for the benefit of, Defendant UKFP and is recoverable from
Defendant UKFP pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based
on the Trustee's investigation to date, approximately $8,012,183 of the money transferred from
BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant UKFP
(the "Fairfield Sentry Subsequent Transfers").  A chart setting forth the presently known Fairfield
Sentry Subsequent Transfers is attached as Exhibit C.

**ANSWER:**    UKFP denies the allegations in Paragraph 41 of the Complaint.

42.    The Trustee's investigation is ongoing, and the Trustee reserves the right to:
(i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry
Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional
transfers.

**ANSWER:**    UKFP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint.

**COUNT ONE**
**RECOVERY OF SUBSEQUENT TRANSFERS –**
**11 U.S.C. §§ 550 AND 551 AND NYDCL § 278**

43.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER:**    UKFP incorporates and reasserts its responses to the allegations contained in each of the previous paragraphs of this Complaint as though set forth fully herein.

44.    Defendant UKFP received the Fairfield Sentry Subsequent Transfers, totaling approximately $8,012,183, which are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER:**    The allegations in paragraph 44 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 44 of the Complaint.

45.    Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant UKFP.

**ANSWER:**    UKFP denies the allegations in Paragraph 45 of the Complaint.

46.    Defendant UKFP is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

**ANSWER:**    UKFP denies the allegations in Paragraph 46 of the Complaint.

47.    As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant UKFP recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER:**    The allegations in Paragraph 47 of the Complaint set forth legal conclusions to which no response is required.  To the extent that a response is required, UKFP denies the allegations in Paragraph 47 of the Complaint.

## RESPONSE TO REQUEST FOR RELIEF

UKFP denies that the Trustee is entitled to his requested judgment in favor of the Trustee and against UKFP.

## AFFIRMATIVE DEFENSES

UKFP asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff. UKFP reserves the right to assert any other defenses as discovery in this litigation proceeds or any counterclaims that it becomes aware of through discovery or other investigation as may be appropriate at a later time. Further, UKFP also reserves the right to amend this Answer to assert cross-claims and/or third-party claims when and if, in the course of investigation, discovery or preparation for trial, it becomes appropriate to do so. These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### Lack of Personal Jurisdiction

The Complaint must be dismissed because the Court lacks personal jurisdiction over UKFP, including for the reasons stated in UKFP's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, filed on July 15, 2022, in this adversary proceeding, ECF 83, and proceedings thereon, and UKFP has not consented to a decision by this Court or to this Court's authority to hear and determine this action.

## THIRD AFFIRMATIVE DEFENSE
### Dismissed Claims

The Trustee's claims are barred to the extent they have been or may in the future be dismissed by the Court, or are based on allegations that have been or may in the future be dismissed

by the Court or are based on theories or allegations that have been or may in the future be rejected

by this Court or by another court on appeal from any orders of this Court.

### FOURTH AFFIRMATIVE DEFENSE
**Value, Good Faith, Without Knowledge of Voidability (11 U.S.C. §§ 550(b))**

The alleged Fairfield Sentry Subsequent Transfers may not be avoided or recovered

because, to the extent that UKFP received transfers from Fairfield Sentry, it did so in exchange for

value and in good faith and without knowledge of the voidability of the Fairfield Sentry Initial

Transfers within the meaning of 11 U.S.C. § 550(b).

To the extent UKFP received any Fairfield Sentry Subsequent Transfers, UKFP took such

Fairfield Sentry Subsequent Transfers in exchange for UKFP's surrender of its shares in Fairfield

Sentry, and therefore took for value.

UKFP did not have actual knowledge of any fraudulent purpose behind the transfers it

received, or that BLMIS was not trading securities or was a fraud or a Ponzi scheme or that

Fairfield Sentry allegedly knew or suspected that BLMIS was not trading securities or was a fraud

or a Ponzi scheme.

A reasonable person with the facts in UKFP's possession at the time of the Fairfield Sentry

Subsequent Transfers would not have been on inquiry notice of the fraudulent purpose behind the

Fairfield Sentry Initial Transfers, nor would those facts have led such a person to conduct further

inquiry into whether BLMIS was trading securities or was a fraud or a Ponzi scheme.

Even if UKFP had been on inquiry notice of the possible fraudulent purpose behind the

Fairfield Sentry Initial Transfers or of facts that would have led a reasonable person to conduct

further inquiry into whether BLMIS was trading securities or was a fraud or a Ponzi scheme, a

diligent inquiry by UKFP would not have discovered that BLMIS was not trading securities or

was a fraud or a Ponzi scheme.  Indeed, other entities with vastly greater investigatory tools and

resources than UKFP, and with more access to BLMIS personnel and documentation than UKFP, investigated BLMIS but failed to uncover that it was a Ponzi scheme before December 2008. This includes the SEC, which began an investigation into BLMIS in 2006, but could not discern BLMIS's fraudulent purpose. Unlike U.S. federal regulatory agencies, UKFP did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud and did not have the capability of discovering what U.S. federal regulators could not. UKFP could not have discovered the fraudulent purpose of the Fairfield Sentry Initial Transfers.

UKFP did not have knowledge of the voidability of the Fairfield Sentry Initial Transfers when it received the alleged Fairfield Sentry Subsequent Transfers.

## FIFTH AFFIRMATIVE DEFENSE
### Safe Harbor (11 U.S.C. §§ 546(e))

The alleged Fairfield Sentry Initial Transfers may not be avoided because they were not made with actual intent to defraud, and were settlement payments made by or to, or for the benefit of, a stockbroker, financial institution, financial participant or other covered entity, or were transfers made by or to, or for the benefit of, a stockbroker, financial institution, financial participant or other covered entity in connection with a securities contract within the meaning of 11 U.S.C. § 546(e) and, on information and belief, Fairfield Sentry did not have actual knowledge that BLMIS was not trading securities or was a fraud or a Ponzi scheme. Because the Fairfield Sentry Initial Transfers are not avoidable, property received by UKFP, if any, as part of the Fairfield Sentry Initial Transfers is not recoverable from UKFP. In addition, at the time of the alleged Fairfield Sentry Subsequent Transfers, UKFP had no actual knowledge that BLMIS was not trading securities or was a fraud or a Ponzi scheme.

## SIXTH AFFIRMATIVE DEFENSE
### Customer Property

To the extent that the alleged Fairfield Sentry Subsequent Transfers, or any portion thereof, alleged to have been received by UKFP were not Customer Property under 15 U.S.C. § 78fff-2(c)(3) or any other section of the U.S. Bankruptcy Code that BLMIS transferred to the Fairfield Funds, such funds are not recoverable by the Trustee from UKFP.

## SEVENTH AFFIRMATIVE DEFENSE
### Mere Conduit

The Trustee's claims are barred because UKFP was not a transferee of the Fairfield Sentry Subsequent Transfers. To the extent that UKFP received any Fairfield Sentry Subsequent Transfers, UKFP (a) received each Fairfield Sentry Subsequent Transfer in good faith, in its capacity as a bank acting as nominee, for the account and benefit of one or more of its customers; (b) did not have dominion or control, or the right to assert dominion or control, over the Fairfield Sentry Subsequent Transfers or the proceeds thereof, or to use the Fairfield Sentry Subsequent Transfers or the proceeds thereof for its own purposes; (c) was a mere conduit for its customers; and (d) was obligated to credit the Fairfield Sentry Subsequent Transfers or the proceeds thereof to the account and for the benefit of one or more of its customers, who alone had the right to assert dominion and control over the Fairfield Sentry Subsequent Transfers received by UKFP for their benefit.

## EIGHTH AFFIRMATIVE DEFENSE
### New York Debtor and Creditor Law

The claims against UKFP are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

## NINTH AFFIRMATIVE DEFENSE
### Section 278(1) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because any transfers from Fairfield Sentry were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

## TENTH AFFIRMATIVE DEFENSE
### Section 278(2) of New York Debtor and Creditor Law

The Trustee's claims are barred, in whole or in part, because any transfers from Fairfield Sentry were taken without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## ELEVENTH AFFIRMATIVE DEFENSE
### Single Satisfaction

Under section 550(d) of the Bankruptcy Code, the Trustee may not recover any subsequent transfer from UKFP to the extent he has recovered from Fairfield Sentry or any other immediate or mediate transferee the amount of the avoided initial transfer that included the Customer Property that the Trustee alleges UKFP received.

## TWELFTH AFFIRMATIVE DEFENSE
### Double Recovery

On May 9, 2011, the Trustee entered into the Settlement Agreement with the liquidators of Fairfield Sentry and other Fairfield funds. This Court approved the Settlement Agreement on June 7, 2011, and it was incorporated into the consent judgment entered against Fairfield Sentry on July 13, 2011. The Settlement Agreement provides for the sharing of recoveries on the Trustee's and the liquidators' claims for recovery of property that Fairfield Sentry transferred. To the extent that the liquidators recover from UKFP in settlement or otherwise, the Trustee is barred from

recovering on the ground that he is not entitled to double recovery, nor should UKFP be subject to recovery of identical funds from two separate entities.

## THIRTEENTH AFFIRMATIVE DEFENSE
### Initial Transfer Not Avoided

The Trustee may not recover the transfers from Fairfield Sentry to UKFP because he has not avoided the initial transfers from BLMIS to Fairfield Sentry.

## FOURTEENTH AFFIRMATIVE DEFENSE
### BVI Proceedings

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders or decisions.

## FIFTEENTH AFFIRMATIVE DEFENSE
### No Interest

If the Trustee were to recover from UKFP, the Trustee is not entitled to an award of interest.

## SIXTEENTH AFFIRMATIVE DEFENSE
### Extraterritoriality

The Trustee's recovery from UKFP of any transfer from Fairfield Sentry would constitute an impermissible, extraterritorial application of U.S. law.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### Comity

The Trustee's recovery from UKFP of any transfer from Fairfield Sentry would violate principles of comity.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### *In Pari Delicto*—Unclean Hands

The Trustee stands in the shoes of BLMIS, which committed the alleged frauds that resulted in the alleged losses the Trustee seeks to recover from UKFP.  The Trustee is barred from recovering such losses from UKFP because BLMIS's acts and omissions are attributed to the Trustee by the doctrines of *in pari delicto* and unclean hands.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, UKFP hereby demands a jury trial on all claims and issues that may be tried by a jury.

## FINAL ORDER

UKFP objects to the entry of a final order or judgment against UKFP by the Bankruptcy Court.

**WHEREFORE**, UKFP requests that this Court dismiss the Complaint with prejudice, award UKFP its costs incurred in connection with this action and grant such other and further relief as the Court deems just and proper.

Dated:  February 15, 2023
New York, New York

Respectfully submitted,

MAYER BROWN LLP

By: /s/ *Joaquin C de Baca* _____
    Joaquin M. C de Baca
    1221 Avenue of the Americas
    New York, New York 10020
    Tel: (212) 506-2500
    Email: jcdebaca@mayerbrown.com

    *Counsel for Defendant UKFP (Asia) Nominees Limited*

## Certificate of Service

I certify that on February 15, 2023, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of New York.

/s/ *Joaquin C de Baca*
Joaquin M. C de Baca