Pamela A. Miller
Amber L. Covucci
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
E-mail:  pmiller@omm.com
           acovucci@omm.com
*Attorneys for Merrill Lynch Bank (Suisse) SA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 11-02910 (CGM) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH BANK (SUISSE) SA, n/k/a BANK JULIUS BÄR & CO. AG a/k/a BANK JULIUS BAER & CO. LTD. | |
| Defendant. | |

**REPLY IN SUPPORT OF MERRILL LYNCH BANK (SUISSE) SA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.    THE EXHIBITS ATTACHED TO THE LONGSTAFF DECLARATION SHOULD NOT BE CONSIDERED ................................................................. 2

II.   THE COURT LACKS PERSONAL JURISDICTION OVER MLBS ................. 2

    A.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements and Customer Agency Agreement Do Not Establish Jurisdiction. .......................................................... 2

    B.    MLBS's Filing of Customer Claims is Not A Jurisdictional Contact ........................................................................................ 3

    C.    The Use of New York Bank Accounts Does Not Subject MLBS to Jurisdiction in New York. ........................................................... 4

        1.    **Sending subscription payments to a New York bank account is not a purposeful act establishing jurisdiction.** ........ 4

        2.    **The Trustee's Allegations That MLBS Received Funds in a New York Account is Insufficient to Establish Jurisdiction** ................................................................. 5

    D.    Communications Between MLBS and FGG Do Not Support Jurisdiction. .............................................................................. 6

    E.    MLBS Did Not Purposefully Avail Itself of the Laws and Privileges of New York by Investing in the Fairfield Funds. ................... 8

    F.    The Claims Do Not Arise Out Of or Relate To MLBS's Alleged New York Contacts. .............................................................. 10

    G.    Exercise of Jurisdiction Over MLBS Would Be Unreasonable. ............. 12

    H.    Jurisdictional Discovery Is Not Warranted. ............................... 12

III.  THE TRUSTEE HAS FAILED TO PLEAD MLBS RECEIVED CUSTOMER PROPERTY. ................................................................. 12

IV.  THE TRUSTEE'S INCORPORATION OF THE FAIRFIELD SAC IS IMPROPER ..................................................................................... 14

V.   BANKRUPTCY CODE § 546(e)'S SAFE HARBOR APPLIES TO BAR CLAWBACK OF THE TRANSFERS TO MLBS. ......................................... 14

VI.  THE TRUSTEE HAS FAILED TO PLEAD BLMIS'S ACTUAL INTENT UNDER BANKRUPTCY CODE § 548(A)(1). ................................... 16

i

**TABLE OF CONTENTS**
**(continued)**

Page

VII.    THE GOOD FAITH DEFENSE CAN BE RAISED AT THIS STAGE
        BECAUSE THE TRUSTEE'S PLEADINGS ESTABLISH THE
        DEFENSE. ................................................................................................. 18

        A.    MLBS Received the Redemptions in Good Faith.................................... 18

        B.    MLBS Received the Redemptions for Value........................................... 19

        C.    The Good Faith Defense Is Particularly Warranted for the
              Preference Claims. ................................................................................... 20

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aff. FM Ins. Co. v. Kuehne + Nagel, Inc.*,
   328 F. Supp.3d 329 (S.D.N.Y. 2018) ................................................................. 2

*Am. Casein Co. v. Geiger*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ............................................................... 14

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ...................................................................................... 3

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018) .............. 3, 4, 8

*Farooq v. City of NY*,
   No. 20-3185, 2022 WL 793117 (2d Cir. Mar. 16, 2022) .......................................... 2

*Feldman v. Silverleaf Resorts, Inc.*,
   No. 98-CV-4566, 2000 WL 35542530 (E.D.N.Y. Jan. 31, 2000) .......................... 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ...................................................................................... 11

*Ge Dandong v. Pinnacle Performance Ltd.*,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013) ............................................................... 6

*Gerard v. Traffic Safety, LLC*,
   No. 11 CV 8550 VB, 2012 WL 2866255 (S.D.N.Y. July 2, 2012) ........................ 2

*Golden Archer Inv., LLC v. Skynet Fin. Sys.*,
   No. 3673, 2012 WL 123989 (S.D.N.Y., Jan. 3, 2012) ......................................... 6

*Helms v. Metro Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019) ............................................................... 14

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016) ............................................................... 4

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 CIV. 9405, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ..................... 5, 6

*In re Banco Santander Sec.-Optimal Litig.*,
   732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010) ................................................. 5

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................... 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Trib. Co. Fraudulent Conv. Litig.*,
No. 11-MD-2296, 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017), *aff'd*, 10 F.4th
147 (2d Cir. 2021) ............................................................................................................ 18

*Irving Tr. Co. v. Chase Nat'l Bank*,
65 F.2d 409 (2d Cir. 1933) ............................................................................................... 20

*Jones v. Bock*,
549 U.S. 199 (2007) .......................................................................................................... 18

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018) ............................................................................... 12

*Liberatore v. Calvino*,
742 N.Y.S.2d 291 (2002) .................................................................................................... 7

*Licci v. Lebanese Can. Bank*,
20 N.Y.3d 327 (2012) ......................................................................................................... 6

*Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat. Assoc.(In re Lehman Bros.
Holdings, Inc.)*,
544 B.R. 16, 34-36 (Bankr. S.D.N.Y. 2015) ..................................................................... 3

*Off. Comm. Of Unsec. Crs. of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ............................................................................................. 4

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ............................................................................................... 18

*Picard v. ABN Ireland*,
No. 20-cv-02586, 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ........................................ 19

*Picard v. Banque SYZ & Co. SA (In re BLMIS)*,
No. 08-01789, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ........................... 7, 18

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................................................... 8, 9, 10

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021) .............................................................................................. 17

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) .............................................................................. 13

*Picard v. First Gulf Bank (In re BLMIS)*,
No. 11-02541, 2022 WL 3354955 (Bankr. S.D.N.Y. Jul. 18, 2022) .................................. 18

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Picard v. Ida Fishman (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014)........................................................................ 15, 16, 20

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................................ 12, 13

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................... 18

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................... 10, 11

*Picard v. Multi-Strategy Fund*,
    22-cv-06512, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ................................. 14, 15, 16

*Picard v. Parson Fin. Panama S.A.*,
    No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022)...................................... 7

*Picard v. Shapiro (In re Madoff)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....................................................................... 13

*Picard v. Taylor*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) ....................................................................... 17

*Secs. Inv. Prot. Corp. v. BLMIS*,
    No. 12-mc-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................................ 14

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................................................... 13

*Spetner v. Pal. Inv. Bank*,
    495 F. Supp. 3d 96 (E.D.N.Y. 2020) ........................................................................ 5, 6

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)................................................................................. 11

*U.S. v. Intl. Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................................... 14

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)........................................................................ 18

*Walden v. Fiore*,
    571 U.S. 277 (2014).......................................................................................... 1

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)............................................................................. 2, 19

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
No. 19-cv-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ................................... 11, 12

**Statutes**

11 U.S.C. § 550 ........................................................................................................................... 13

Defendant Merrill Lynch Bank (Suisse), S.A. ("MLBS") respectfully submits this reply memorandum in further support of its Motion to Dismiss the Amended Complaint.[1]

The Amended Complaint should be dismissed in its entirety because this Court lacks personal jurisdiction over MLBS. It is axiomatic that to establish specific jurisdiction, a plaintiff must show a connection between the defendant, the forum, and the *specific claims at issue. Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Opposition falls far short, instead seeking to establish that MLBS had general business contacts with New York prior to receiving redemptions from the Funds. In so doing, the Trustee relies heavily on exhibits that were not attached to or incorporated into the Amended Complaint, and therefore should not be considered. Even if considered, the exhibits reveal only that: (i) MLBS only transferred funds through Sentry's intermediary account in New York *en route* to Sentry's Citco account in Dublin; (ii) MLBS and FGG had email communications that had nothing to do with the redemptions at issue int his case; (iii) at the time MLBS invested in the Funds, it did not know that any of its investments were destined for BLMIS in New York; and (iv) MLBS invested in the funds solely as an agent for its customers. The Trustee's unsupported jurisdictional allegations lack a connection to the redemptions at issue and cannot establish specific jurisdiction over MLBS.

The Amended Complaint should also be dismissed on the merits. *First*, the Trustee failed to allege that MLBS received a single dollar of BLMIS customer property. *Second*, the Trustee improperly incorporates the Fairfield Second Amended Complaint ("Fairfield SAC") in violation of Federal Rules 8 and 10. *Third*, under Second Circuit precedent, the § 546(e) safe harbor prevents the clawback of subsequent transfers to MLBS. *Fourth*, the Trustee failed show BLMIS's actual

---

[1] "Motion" or "Mot" refers to MLBS's Motion to dismiss the Amended Complaint. ECF No. 118. Capitalized terms not defined herein have the meanings ascribed to them in the Motion, all emphasis is added, and internal citations and quotation marks have been omitted. Opposition or "Opp." refers to the Trustee's Opposition to the Motion, ECF No. 146.

intent under Bankruptcy Code § 548(a)(1)(A) with respect to the transfers at issue. *Fifth*, MLBS
is entitled to the good faith defense as it provided value for each of the redemptions at issue and
did not know of, and could not have discovered, BLMIS's fraud.

## I.    THE EXHIBITS ATTACHED TO THE LONGSTAFF DECLARATION SHOULD NOT BE CONSIDERED

The Opposition relies heavily on 42 exhibits attached to the Longstaff Declaration (ECF
No. 123).  These exhibits cannot be considered at the motion to dismiss stage as the Trustee did
not attach the exhibits to the Amended Complaint. *Wright v. Ernst & Young LLP*, 152 F.3d 169,
178 (2d Cir. 1998) (plaintiff may not add allegations in opposition to motion to dismiss); *Farooq
v. City of NY*, No. 20-3185, 2022 WL 793117, at *4 n.5 (2d Cir. Mar. 16, 2022) ("Our review of
[plaintiff's] claim is . . . limited to what he pleaded in his complaint."). Nor does the Trustee even
attempt to explain why the exhibits should be considered "integral" to the Amended Complaint.
*See Gerard v. Traffic Safety, LLC*, No. 11 CV 8550 VB, 2012 WL 2866255, at *2 (S.D.N.Y. July
2, 2012) (court may consider documents external to complaint at the motion to dismiss stage if the
complaint "relies heavily" upon their "terms and effect" such as to "render[] the document[s]
'integral' to the complaint"). The Trustee filed an Amended Complaint in October, 2022, only four
months ago, and had ample opportunity to attach supporting documents to that Amended
Complaint.  Having failed to do so, the Trustee cannot introduce these exhibits for the first time at
the opposition stage. Consequently, the exhibits should not be considered.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER MLBS

### A.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements and Customer Agency Agreement Do Not Establish Jurisdiction.

Tellingly, the Trustee does not dispute that he is not a party to or a third-party beneficiary
of the subscription agreements or the Customer Agency Agreement. *See Aff. FM Ins. Co. v. Kuehne
+ Nagel, Inc.*, 328 F. Supp.3d 329, 338–39 (S.D.N.Y. 2018) (rejecting enforcement of forum

selection clause where claims and parties to the suit were not subject to the clause). As such, he cannot benefit from the forum selection clauses in those agreements. Even if he could, the Trustee's argument that the choice of law and forum selection clauses in the those agreements are "evidence that MLBS purposefully directed its activities towards New York," directly conflicts with this Court's decision in *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018). Opp. at 25. Even if MLBS directed activities towards New York by executing the *subscription* agreements, that proves nothing as to MLBS's connections to New York with respect to the claims here, which are based solely on *redemptions*. *Bristol-Myers Squibb v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (declining to exercise jurisdiction where "a connection between the forum and the specific claims at issue" was missing). For that precise reason, the Court previously held the Sentry subscription agreements are "irrelevant" to jurisdiction over cases (like this one) concerning redemptions. *Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11–12. That reasoning applies equally to the Customer Agency Agreement. Mot. at 18–19.

### B.    MLBS's Filing of Customer Claims is Not A Jurisdictional Contact

The Trustee's argument that filing customer claims in the SIPA liquidation "further evidences MLBS's understanding that investing with BLMIS in New York was the whole point of doing business with FGG" is absurd. Opp. at 32. Filing claims in the liquidation—as claimants must to do preserve their claims in a bankruptcy proceeding—years *after* Madoff's fraud was exposed has no bearing whatsoever on MLBS's understanding at the time it invested in the Funds.

Further, as MLBS explained in the Motion (Mot. at 19), filing a claim constitutes "submission to the jurisdiction of the Court only with respect to litigation concerning the claims allowance process." *Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat. Assoc. (In re Lehman Bros. Holdings, Inc.)*, 544 B.R. 16, 34-36 (Bankr. S.D.N.Y. 2015). This is not such a case.

C.    **The Use of New York Bank Accounts Does Not Subject MLBS to Jurisdiction in New York.**

1.    **Sending subscription payments to a New York bank account is not a purposeful act establishing jurisdiction.**

The Trustee argues that MLBS's transfer of subscription payments to Sentry's New York bank account supports the exercise of personal jurisdiction. *See* Opp. at 28–29. But that argument fails for the same reason as the Trustee's argument that the Subscription Agreements support personal jurisdiction: this is a case about specific redemptions, not subscriptions. *See Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11–12.

Even if the subscription payments to Sentry's New York account are relevant, the Trustee's own cases emphasize that, to be relevant to jurisdiction, use of a U.S. bank account must be "purposeful." Opp. at 26. Here, the Trustee's allegations show MLBS's transfers to Sentry's New York account were required by the terms of *Sentry's* subscription agreements. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) ("communications and payments [to BLMIS in New York] were incidental consequences of fulfilling a foreign contract" and did not show purposeful availment). In *Off. Comm. Of Unsec. Crs. of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 68-69 (S.D.N.Y. 2016), the Court found the defendants were "not simply complicit" in the selection of the New York bank accounts as the *defendants* set the terms of the placements, selected U.S. dollars as the currency, and designated New York bank accounts to receive the funds. *Id.* The opposite is true here. *See Spetner v. Pal. Inv. Bank*, 495 F. Supp. 3d 96, 116 (E.D.N.Y. 2020) (declining to exercise jurisdiction where defendant did not exercise control over selection and use of bank accounts in New York).

Admittedly, in *Licci v. Lebanese Can. Bank*, the Court noted that sometimes the use of a New York bank account can support jurisdiction, but it acknowledged the inquiry is complicated "given the widespread use of correspondent accounts nominally in New York to facilitate the flow

4

of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." 20 N.Y.3d 327, 338 (2012). The implication is that personal jurisdiction does not lie where, as here, a New York account is used only nominally to facilitate international transfers. *See Feldman v. Silverleaf Resorts, Inc.*, No. 98-CV-4566, 2000 WL 35542530, at *4 (E.D.N.Y. Jan. 31, 2000) (if "participation in New York's international financial markets alone could constitute 'doing business' . . . personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns."); *Spetner*, 495 F. Supp. at 113, 116–17 (a "standard correspondent banking relationship," "wire transfer through New York" or "use of a third-party bank to process U.S. dollar transactions" is not a transaction of business in New York). The use of Sentry's New York account, at Sentry's request, to facilitate the transfer of funds to an overseas account is insufficient to establish jurisdiction here.[2]

## 2.    The Trustee's Allegations That MLBS Received Funds in a New York Account is Insufficient to Establish Jurisdiction

Nor can MLBS's receipt of funds in a New York bank account establish jurisdiction. As the Trustee's cases show, a correspondent back account can only establish jurisdiction "where the use of that account was held to lay at the very root of the plaintiff's action." *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012). In the cases cited by the Trustee, the correspondent bank accounts were not incidental to the alleged wrongful conduct; they formed the basis for the claims. *Id*. (New York accounts used to "shelter

---

[2] The Trustee's exhibits show that Sentry's HSBC account, which received the subscription payments, was simply an "intermediary bank" and all payments were subsequently transferred to Sentry's Citco account in Dublin. *See* Longstaff Decl. Ex. 2 (Subscription Agreements, describing HSBC in New York as an "intermediary bank" and noting the ultimate beneficiary was Sentry's "Citco Bank Nederland N.V. Dublin Branch"); Ex. 5 at 15; Ex. 14 at 20 (Private Placement Memoranda, stating all proceeds would be held by the Fund's escrow agent "Citco Fund Services (Europe) B.V." ); Ex. 2 (subscription payment confirmation showing transfers to Sentry's HSBC account were made for "further cr[edit]" to Citco Bank Nederland NY – Dublin); *see also In re Banco Santander Sec.-Optimal Litig*., 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010), *aff'd* 439 F. App'x 840 (11th Cir. 2011) ("the Second Circuit recently held that electronic funds transfers 'in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law'" thus such transfers cannot support jurisdiction) (citing *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir.2009)).

significant and repeated transfers of funds" from the reach of a creditor); *Ge Dandong v. Pinnacle Performance Ltd*., 966 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) (defendant established New York accounts to hold fraudulent investments and used them "to shelter significant and repeated transfers of funds"); *Licci*, 20 N.Y.3d at 340 (defendant "deliberately used a New York account again and again to effect its support of Shahid and shared terrorist goals"). Here, by contrast, the Trustee has not shown the receipt of funds in New York has any significance to the claims. Without more, simply receiving the funds in New York is not enough to establish jurisdiction. *Spetner*, 495 F. Supp. 3d at 116–17 (a "wire transfer through New York" or "use of a third-party bank to process U.S. dollar transactions" is not a transaction of business in New York).

Further, neither the Sigma subscriptions nor redemptions passed through New York. *See* Longstaff Decl. at Ex. 9 at 21–22. Thus, use of correspondent bank accounts cannot serve as the basis for jurisdiction with respect to the Sigma redemptions.

### D. Communications Between MLBS and FGG Do Not Support Jurisdiction.

In a desperate attempt to establish some meaningful connection between MLBS and the Funds, the Trustee belatedly attached a handful of emails between MLBS and FGG. While the Court should not consider those emails because they were not referenced in the Amended Complaint, *see supra* Sec. I, those communications between MLBS and FGG have nothing to do with the claims in this case. Longstaff Decl. Exs. 10, 12–13, 17–19, 31, 36. In fact, they do not even mention the redemptions.

The Trustee's cases reinforce that these communications are insufficient to support jurisdiction. Those cases indicate that such communications can only establish jurisdiction where they "go to the heart of the commercial transaction between the parties." *Golden Archer Inv., LLC v. Skynet Fin. Sys*., No. 3673, 2012 WL 123989 *6 (S.D.N.Y., Jan. 3, 2012) (New York jurisdiction established where defendants logged onto the Plaintiff's New York server to edit code and

6

regularly communicated over email, videoconference and phone regarding the software which allowed the defendants to participate in the transaction); *Liberatore v. Calvino*, 742 N.Y.S.2d 291, 293 (2002) (calls and written communications, generally held not to ground personal jurisdiction, must be shown to have been "used by the defendant to actively participate in business transactions in New York"). The communications attached to the Longstaff Declaration do not meet these standards as they were not used to effect the redemptions, nor any other transaction in New York.

The Trustee's reliance on recent decisions of this Court is equally unavailing. *See* Opp. at 30 (citing *Picard v. Parson Fin. Panama S.A.*, No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022); *Picard v. Banque SYZ & Co. SA (In re BLMIS)*, No. 08-01789, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)). *Banque SYZ* did not involve communications with people in New York, thus the Court's comments about contacts through mail are dicta. In *Parson*, the Court did not find the emails themselves were jurisdictional contacts. Rather, they evidenced independent jurisdictional contacts, including the defendant's frequent travel to New York to meet with representatives of the Funds, requests to meet personally with Madoff, and questions about Madoff. *Parson*, 2022 WL 3094092 at *4. The Court found this was evidence Parson intended to invest with BLMIS in New York and "purposefully availed itself of the privilege of doing business in New York by traveling to New York to meet with FGG regarding the investments at issue." *Id.* No such connections are established here. The emails attached by the Trustee do not mention redemptions, Madoff, or New York, but rather discuss Sentry's performance, the Customer Agreement, fees payable to MLBS, and MLBS's subscriptions with Sentry.[3]

The Trustee also attaches communications between FGG and Annie Cheung, an employee

---

[3] *See* Longstaff Decl. Exs. 10, 12 (discussing the Customer Agreement and fees payable to MLBS), Ex. 13 (discussing subscriptions and requesting MLBS send subscription documents to Citco in the Netherlands), Exs. 17–19, 31, 36 (discussing the Funds' performance).

of Merrill Lynch (Asia Pacific) Limited, based in Hong Kong. *See* Longstaff Decl. Exs. 22, 27–28, 30. The Trustee does not explain how communications of an employee of Merrill Lynch (Asia Pacific) Limited in Hong Kong are relevant to jurisdictional contacts between MLBS and New York.[4] That is because they are not: the jurisdictional inquiry focuses on "the relationship among *the defendant*, the forum, and the litigation," which "must arise out of contacts that *the defendant himself* creates with the forum State." *Walden*, 571 U.S. at 284.

> **E.     MLBS Did Not Purposefully Avail Itself of the Laws and Privileges of New York by Investing in the Fairfield Funds.**

As an initial matter, MLBS's subscriptions in the Funds cannot supply jurisdictional contacts relevant to claims involving MLBS's redemptions. *See Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11–12. Even if the Court considers MLBS's decision to subscribe to the Funds relevant, the facts alleged regarding that decision are insufficient to support jurisdiction.

The Trustee has not shown that MLBS "kn[ew], intend[ed], and contemplate[ed]" that the "substantial majority of funds invested in [the Funds] would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012). In fact, when MLBS first invested in Sentry, it could not have known that the substantial majority of its funds would be transferred to BLMIS.

The 2003 and 2004 private placement memoranda ("PPM") show that Sentry was not *required* to invest substantially all of its assets with BLMIS. *See* Longstaff Decl. Exs. 5–6, 14. The February 1, 2003 PPM, operative when MLBS purportedly first invested in Sentry, makes only one mention of BLMIS. It states that BLMIS had entered into an agreement with Citco to serve as sub-custodian of Sentry's split strike conversion ("SSC") assets. Longstaff Decl., Ex. 5

---

[4] Notably, the documents show that Ms. Cheung did not know the Funds invested substantially all of their assets with BLMIS. In a July 29, 2008 email to FGG, Ms. Cheung asked if Sentry had multiple prime brokers. *Id.*, Ex. 30.

at 19. It does not reveal any relationship between Sentry and BLMIS or what portion of funds were

held with BLMIS. Crucially, it does not *require* that funds be custodied with BLMIS.

The July 1, 2003 PPM, which the Trustee alleges MLBS received on October 13, 2003,

and the 2004 PPM state that BLMIS, along with any other sub-custodians, would act as custodians

for certain assets of the Fund. *Id.*, Ex. 14 at 24; Ex. 6 at 22–23. Those two PPMs specifically

provide that sub-custodian relationships could be made with *qualified entities other than BLMIS.*

*Id.* While they require that Sentry allocate 95% of investments to SSC investments (*Id.* Ex. 14 at

18; Ex. 6 at 17), SSC is an established investment strategy, and the July 2003 PPM and 2004 PPM

did not disclose that the SSC strategy referred specifically to BLMIS's investment strategy. *Id.*[5]

Only the August 14, 2006 PPM disclosed that 95% of investments must be invested *with BLMIS*

to implement the split strike conversion method. *Id.*, Ex. 7 at 17–18.[6]

Tellingly, Judge Lifland's conclusion that "Fairfield Sentry *was required* to invest at least

95% of its assets in the SSC utilized and controlled by BLMIS in New York" and thus BLI invested

in Sentry in 2007 *knowing* that its investments would be transferred to BLMIS in New York was

based on the 2006 PPM, *not* the 2003 PPM that MLBS reviewed before its initial investment in

Sentry, or the 2003 and 2004 PPMs it received thereafter. *BLI*, 480 B.R. at 517. Crucially, the

Trustee has not shown that MLBS ever received the 2006 PPM. The Trustee alleges that "by

executing subscription agreements with the Fairfield Funds, MLBS affirmed it received and read

the Fairfield Funds' PPMS." Opp at 21. While that may be true of MLBS's execution of the long

form subscription agreements in 2003 and 2005, no such affirmation appears in the subsequent

short-form subscription agreement signed by MLBS in 2007. *See* Longstaff Decl. Exs. 1–3. Nor

---

[5] At most, the 2004 PPM shows Sentry was 95% invested in BLMIS at that time, but does not *require* that Sentry be 95% invested in BLMIS. *Id.* Ex. 14. at 24; Ex. 6 at 23.

[6] Stating "the split strike conversion strategy is implemented by Bernard L. Madoff Investment Securities LLC" and that the Investment Manager could allocate up to 5% of the Fund's NAV to alternative investments.

has the Trustee provided any email correspondence or other evidence, showing the 2006 PPM was ever received by MLBS.

Further, the Trustee has not furnished a Sigma subscription agreement and has provided no indication that MLBS was aware that Sigma had any connection to BLMIS. The Trustee attaches only two documents related to Sigma—an informational memorandum from 1997 and a 2007 private placement memorandum—which the Trustee does not allege MLBS ever received. In fact, the Trustee supplies no evidence of any subscriptions or redemption by MLBS whatsoever.

Finally, if this Court finds MLBS's decision to invest in the Funds relevant to jurisdiction, only MLBS's knowledge at the time of making its initial investment is material. The Trustee carries the burden to show that MLBS invested in the Funds *because of* their connection to New York. *See BLI*, 480 B.R. at 517. To intentionally invest in the Funds because of their New York connections, MLBS must have known of those connections at the time of the investment.[7]

**F.    The Claims Do Not Arise Out Of or Relate To MLBS's Alleged New York Contacts.**

For the reasons discussed above and in the Motion, the Trustee has not shown the claims arise out of or relate to MLBS's alleged and limited contacts with New York. The Trustee's cases reinforce that New York contacts must be sufficiently tied to the claims at issue—here, the redemptions—to support jurisdiction. But none of the allegations in the Amended Complaint or the Opposition sufficiently connect the redemptions to MLBS's few New York contacts.

The Trustee relies heavily on the Supreme Court's holding that the "arise out of or relate to" test does not require a causal relationship. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); Opp at 32. But *Ford* makes clear that "the phrase 'relate to'

---

[7] The Trustee cites *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022) to suggest MLBS's contacts with the forum after its initial investment can support jurisdiction. But that logic does not apply to the question of MLBS's knowledge at the time of making its investments, which cannot have been informed by documents received after the fact. Opp. at 23.

incorporates real limits, as it must to adequately protect defendants foreign to a forum" and a sufficient connection to the claims must be demonstrated. *Id.* Ford, for example, conducted "substantial business" in the state by advertising, selling, and servicing the defective vehicle model at issue in that case. *Id.* at 1022. The Court found "[w]here a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.*

*Ford* is inapposite because there are no facts providing a sufficient connection between MLBS's affirmative activity and the Trustee's claims. MLBS did not reach into New York for purposes of receiving redemptions and undertook no steps to affiliate with New York other than limited, incidental use of New York bank accounts. "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." 641 B.R. at 86 (citing *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)). Here, the connections, to the extent they have been established at all, are attenuated and lack the required nexus to the redemptions at issue.

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) is instructive. In that case, defendant A&A's only alleged contacts with New York were prior shipments A&A delivered in New York, not related to the claims in the complaint. The court denied jurisdiction finding that "none of these contacts [gave] rise to [the Plaintiff's] cause of action" and "none of the contacts [plaintiff] identifies has anything to do with this dispute other than generally involving [defendant's] business." *Id.* at *5.

As in *Zim*, the Trustee's exhibits relate to the subscriptions with Sentry (Longstaff Decl., Ex. 1–6, 13), MLBS's general business relationship with the Funds (*id* Exs. 10, 12, 17–19, 31, 36), and limited, incidental use of New York bank accounts (*id* Exs. 4, 38–40). Under *Zim*, those are simply insufficient connections to establish jurisdiction in New York. 2020 WL 5503557, at *5.

11

G.      **Exercise of Jurisdiction Over MLBS Would Be Unreasonable.**

The Trustee cites the wrong test for assessing reasonableness. Where, as here, the

defendant's connections with the forum are weak, the bar for showing reasonableness is high.

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) ("the

weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms

of unreasonableness to defeat jurisdiction"). For the reasons discussed in the Motion, the Trustee

has not met that high bar. Mot. at 27–29.

H.      **Jurisdictional Discovery Is Not Warranted.**

Recognizing the insufficiency of his jurisdictional pleadings, the Trustee requests

discovery. Jurisdictional discovery, eleven years after the Trustee filed the Initial Complaint would

be wholly disproportionate to the needs of the case and inconsistent with Rule 26(b). The Trustee

has had considerable "access to relevant information" in the form of the Funds' books and records

for well over a decade. Mot at 14. Further, cross-border discovery would place substantial financial

and logistical burdens on MLBS and implicate foreign laws. *Id.*. at 29.

Moreover, the Trustee is wrong to assert that he has made a "threshold showing" of

jurisdiction sufficient to permit discovery. Opp. at 34. For the reasons discussed above, the

allegations the Trustee points to in support of that contention—MLBS's communications, banking

activities, and investment activities—do not support jurisdiction. *Supra* Sec. I.A–G.

## III.    THE TRUSTEE HAS FAILED TO PLEAD MLBS RECEIVED CUSTOMER PROPERTY.

To recover alleged subsequent transfers to MLBS, "the complaint must allege facts that

support the inference 'that the funds at issue originated with the debtor.'" *Picard v. Merkin (In re*

*BLMIS)*, 515 B.R. 117, 149-150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). The Trustee's allegations

that (i) Sentry received customer funds from BLMIS, (ii) Sigma received funds from Sentry, and

(iii) MLBS received funds from Sentry and Sigma, without more, fail to meet the Trustee's burden to establish that MLBS received BLMIS customer funds. The essential missing link is any connection between those three sets of alleged transfers.

MLBS does not dispute that the Trustee is not required to conduct comprehensive accounting at the pleading stage. Rather, the Trustee must show the "necessary vital statistics" of the transfer. *Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); Opp. at 36. What the Trustee fails to acknowledge is that this standard requires the Trustee to allege facts sufficient to support an inference that the transfers from BLMIS are connected to the specific transfers to MLBS the Trustee seeks to recover. *Merkin I*, 515 B.R. at 150 ("several subsequent transfers took place contemporaneously or shortly after an initial transfer identified in Exhibit B, implying linkage").[8] The Trustee has not even attempted to demonstrate any linkage between the transfers, despite having access to financial documents necessary to determine if any such connection exists.

Finally, confronted with the fact that Sentry cannot possibly have paid out all of the funds the Trustee seeks to recover, the Trustee argues "until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from MLBS and [other] defendants." Opp. at 39–40. That misses the point. The Trustee is not permitted to throw everything at the wall and see what sticks.[9] Rather, the Trustee can only seek to recover from "immediate or mediate transferee[s] of [an] initial transferee . . . who take[] in a later transfer down the chain of title or possession." *Helms v. Metro*

---

[8] *See also Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" the amounts of initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers[.]").

[9] As MLBS explained in the Motion, and the Trustee has not disputed, the Trustee seeks to recover $2 billion more from subsequent transferees of Sentry than it alleges BLMIS transferred to Sentry in the first place. Mot. at 33–34.

*Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019); 11 U.S.C. § 550.

## IV.    THE TRUSTEE'S INCORPORATION OF THE FAIRFIELD SAC IS IMPROPER.

Courts refuse to consider pleadings purportedly incorporated into a complaint where there
is no guidance on which specific allegations are intended to be incorporated. *Am. Casein Co. v.
Geiger*, 446 B.R. 670, 672 (Bankr. E.D. Pa. 2010); *U.S. v. Intl. Longshoremen's Ass'n*, 518 F.
Supp. 2d 422 (E.D.N.Y. 2007) ("ILA"). That result is warranted here as the Fairfield SAC is
packed with allegations extraneous to the purported reason for incorporation and the Amended
Complaint contains no guidance on which allegations are relevant to the claims against MLBS.
The Trustee claims MLBS has "notice of the . . . relevant allegations of the Fairfield SAC to which
it needs to respond" as it is aware incorporation is intended to plead avoidability of the initial
transfers. Opp. at 35. But without guidance on *which* allegations the Trustee believes support
avoidability of the initial transfers, MLBS would be forced "to select the relevant material from
the mass of verbiage" in "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide
a 'short and plain statement of the claim'" to defend against the Fairfield SAC. *ILA*, 518 F. Supp.
2d at 463.

## V.    BANKRUPTCY CODE § 546(e)'S SAFE HARBOR APPLIES TO BAR CLAWBACK OF THE TRANSFERS TO MLBS.

The Trustee concedes that MLBS meets the standard in § 546(e), except that the subsequent
transfers fall within the "actual knowledge" exception articulated for the first time in *Secs. Inv.
Prot. Corp. v. BLMIS,* No. 12-mc-115, 2013 WL 1609154, at *3, 7 (S.D.N.Y. Apr. 15, 2013)
("*Cohmad*") and restated in *Picard v. Multi-Strategy Fund*, 22-cv-06512, 2022 WL 16647767
(S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy Fund II*"). Notwithstanding those decisions, MLBS
respectfully asserts that § 546(e) counsels dismissal. This judge-created exception finds no support

in the text of § 546(e) and cuts against both Congress's intent and Second Circuit precedent.[10]

In *Multi-Strategy Fund II* the District Court dismissed consolidated motions for interlocutory appeal of this Court's opinions denying dismissal on § 546(e) grounds. Judge Rakoff held that, under his opinion in *Cohmad*, a transfer from Madoff Securities to a customer with actual knowledge of the fraud would not fall under § 546(e)'s terms. He reasoned that "any transferee who knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments or transfers in connection with a security agreement." *Id.* at *7. And subsequent transferees could not rely on § 546(e) where the initial transfer was not covered by its terms. *Id.* Judge Rakoff also found that transfers from BLMIS to Sentry are protected by the safe harbor if they are "related to, securities contracts between Fairfield and its financial institution or financial participant clients" but "it is the Bankruptcy Judge, not this Court, that should [address this issue] in the first instance." *Id* at *9.

The agreements between BLMIS and Sentry fall within § 546(e)'s broad definition of securities contracts. Section 546(e) defines "securities contract" with "extraordinary breadth" to include contracts for the purchase or sale of securities and any agreements similar to such contracts. *Picard v. Ida Fishman (In re BLMIS)*, 773 F.3d 411, 417–418 (2d Cir. 2014). It also protects transfers made "in connection" with a securities contract. *Id.* at 418. Even if Sentry knew that BLMIS was not trading securities, it still entered into contracts with BLMIS that purported to allow BLMIS to trade securities on its behalf. *Id.* (agreements that "authorized BLMIS to engage in securities transactions on behalf of its customers" are securities contracts). At the very least, the agreements are "similar to" a securities contract, as they have "characteristics in common" with

---

[10] The only exception to § 546(e) is § 548(a)(1), which renders transfers within two years of filing avoidable if the debtor had "actual intent to hinder, delay, or defraud" a creditor. That exception focuses on the *debtor's* knowledge. There is no actual knowledge exception for transfers made to a *creditor* with knowledge of fraud, or intent to defraud.

BLMIS's contracts with its other investors, which the Second Circuit has already confirmed qualify as securities contracts under § 546(e). *Id.* at 419.

Further, the Trustee alleges Sentry's single purpose was to "invest with BLMIS's investment advisory business." Am. Compl. ¶ 3. As MLBS explained in the Motion, the Trustee claims that the entire $2.9 billion (and more) transferred from BLMIS to Sentry in the 6 years preceding the petition were used to fund subsequent transfers of BLMIS property—in the form of redemptions—to customers of Sentry. Mot. at 33–34. Thus, all transfers from BLMIS to Sentry were "broadly related to a 'securities contract'" between Sentry and its customers. *Ida Fishman*, 773 F.3d at 420. This is true whether Sentry specifically withdrew money from BLMIS to fund MLBS's redemptions, or whether it withdrew money generally to satisfy customer redemptions, including customers like MLBS who are not alleged to have had actual knowledge of BLMIS's fraud. *Multi-Strategy Fund II*, at *9 (§ 546(e) protects transfers "related to, securities contracts between Fairfield and its financial institution or financial participant clients").

Applying § 546(e) to MLBS's redemptions is also consistent with Congress's intent in drafting the statute and Second Circuit precedent. The purpose of § 546(e)'s "very broadly-worded safe-harbor provision" is to "minimiz[e] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries," such as this one. *Ida Fishman*, 773 F.3d at 416. In this case, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very "displacement" that Congress hoped to minimize in enacting § 546(e)." *Id.* at 420. Thus dismissal of the claims against MLBS is consistent with the text and purpose of the safe harbor rule and Second Circuit precedent.

## VI.    THE TRUSTEE HAS FAILED TO PLEAD BLMIS'S ACTUAL INTENT UNDER BANKRUPTCY CODE § 548(A)(1).

16

The Trustee's argument that the Ponzi scheme presumption is settled law goes too far. Although the Second Circuit applied the presumption in *Citibank*, the panel made clear that, because the parties did not contest its application, the Court would "not address [] whether the Ponzi scheme presumption is well-founded." *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 181, n.7 (2d Cir. 2021). By contrast, MLBS contests application of the Ponzi scheme presumption, and thus *Citibank* does not weigh in favor of its application here. If anything, given Judge Menashi's well-reasoned concurrence, *Citibank* counsels against its application.

As MLBS explained in the Motion, the Ponzi scheme presumption obfuscates applicable Bankruptcy Code provisions by (i) expanding the preference period well beyond the 90 days set by the Code, (ii) ignoring § 548(a)(1)'s qualification that the transfer to be avoided must be made with "actual intent to hinder, delay, or defraud," and (iii) abrogating Rule 9(b)'s pleading requirements, which require actual intent to be pled with particularity. Mot. at 38–40.

The Trustee's argument that the Amended Complaint pleads badges of fraud similarly fails to establish fraudulent intent. Opp. at 43–44. The Trustee does not connect any of the facts purportedly indicating fraud to any of the badges set forth by the Second Circuit, or explain which badges of fraud are met. The Trustee merely alleges that Madoff was secretive and his employees have faced legal sanctions. But "[g]enerally, the presence of a single badge of fraud is insufficient to establish actual fraudulent intent." *Picard v. Taylor*, 326 B.R. 505, 518 (Bankr. S.D.N.Y. 2005).

These vague allegations also gloss over the specific facts surrounding the funds transferred to MLBS, focusing only on BLMIS, rather than the transfers. This pleading deficit runs into the same problems as the Ponzi scheme presumption, because the Trustee leans on the fact that BLMIS was running a Ponzi scheme to contend that *all* of BLMIS's transfers were fraudulent. Under this theory, the Trustee again fails to meet his pleading burden to establish fraudulent intent as to each particular transfer. *Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468

17

(Bankr. S.D.N.Y. 2006) (allegations of fraudulent intent must relate to the "specific transfers challenged"); *In re Trib. Co. Fraudulent Conv. Litig.*, No. 11-MD-2296, 2017 WL 82391, at *15 (S.D.N.Y. Jan. 6, 2017), *aff'd*, 10 F.4th 147 (2d Cir. 2021) (scrutinizing the knowledge of the individuals who approved the specific transfer at issue, rather than the knowledge imputed to the defendant entity as a whole, in concluding the badges of fraud had not been established).

## VII. THE GOOD FAITH DEFENSE CAN BE RAISED AT THIS STAGE BECAUSE THE TRUSTEE'S PLEADINGS ESTABLISH THE DEFENSE.

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007). The Trustee's generalized argument that the Court has rejected application of the defense in other cases with different facts does not alter that rule. Opp. at 45.

### A. MLBS Received the Redemptions in Good Faith.

The Trustee relies on cases where defendants' knowledge of BLMIS's fraud was alleged. In *Banque SYZ* and *First Gulf*, the Court found "the Complaint suggest[ed] that [defendants] had access to information about BLMIS's fraud and failed to concern [themselves] with such things." 2022 WL 2135019, at *11; *Picard v. First Gulf Bank (In re BLMIS)*, No. 11-02541, 2022 WL 3354955, at *11 (Bankr. S.D.N.Y. Jul. 18, 2022). In *Picard v. Merkin*, the complaint was rife with knowledge allegations, including that one defendant "had an unusually close business and social relationship with Madoff, including sitting together on the Board of Trustees of Yeshiva University, and, as a result, intimate access to BLMIS." 440 B.R. 243, 253 (Bankr. S.D.N.Y. 2010).

By contrast, the Amended Complaint does not make a single specific allegation about MLBS's knowledge at the time of the redemptions. To get around this, the Opposition makes

18

untimely, conclusory allegations that "MLBS knew of red flags" and "had significant suspicions about BLMIS yet invested anyway," and argues that the "Amended Complaint 'suggests that [MLBS] had access to information about BLMIS's fraud and failed to concern itself with such things.'" Opp. at 48–49. But those allegations are nowhere in the Amended Complaint and the Trustee is not entitled to add new allegations in his Opposition. *Wright*, 152 F.3d at 178 (plaintiff may not add allegations in opposition to motion to dismiss). The only facts alleged in the Amended Complaint the Trustee relies on are communications by *other* Merrill Lynch entities or that took place *after* Madoff's fraud was exposed. As MLBS has explained, these allegations say nothing of MLBS's knowledge at the time of the redemptions. Mot. at 42–44.

Further, as MLBS pointed out in the Motion, MLBS subscribed to the Funds as an agent for its customers in exchange for fees. The Trustee's exhibits show that is precisely what happened. Longstaff Decl. Exs. 1–3 (subscription agreements signed by MLBS "As Agent for its Customers"). This agency relationship is further evidence of MLBS's good faith. *See* Mot. at 45 (citing *In re Dreier LLP*, 453 B.R. 499 (Bankr. S.D.N.Y. 2011). It is simply implausible that MLBS would facilitate a fraudulent scheme simply to earn fees.

Other cases cited by the Trustee are also inapposite. In *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr. S.D.N.Y. 2011) the Court determined the good faith defense was not made out on the record, finding the "Complaint does not contain allegations establishing good faith as a matter of law." In *Picard v. ABN Ireland*, the observation that the good-faith defense was not apparent on the face of the complaint was *dicta*, and the Court acknowledged the defense was "not appropriately framed for appellate review." No. 20-cv-02586, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2, 2022).

### B.    MLBS Received the Redemptions for Value.

The Trustee claims that, by pointing out that MLBS did not know the redemption prices

were based on fictitious assets, MLBS is "collapsing the concepts of good faith and value." Opp. at 46. But this Court has found that a defendant's knowledge at the time it redeemed the shares can be determinative of whether the shares were received for value. *Banque Syz*, 2022 WL 2135019, at *11 ("If Banque Syz knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds 'for value.'"). Here, as MLBS did not know the redemption prices were based on fictitious assets, MLBS received the redemptions for value. *See* Mot. Sec. 40–48; *Supra* Sec. VII.A.

### C.    The Good Faith Defense Is Particularly Warranted for the Preference Claims.

The Trustee does not dispute that, in the context of preference claims, the good faith defense requires only that a defendant did not "knowingly aid[]" the debtor-transferor to defeat equal distribution among creditors. *Irving Tr. Co. v. Chase Nat'l Bank*, 65 F.2d 409, 411 (2d Cir. 1933); Mot. at 49. Instead, the Trustee claims that as he seeks recovery under § 550, the inquiry notice standard applies. Opp. at 49. The Trustee accuses MLBS of attempting to "recast" these subsequent transfer recovery claims under § 550 as preference claims under § 547. Not so.

The Trustee can only recover funds under § 550 that could be avoided under the Bankruptcy Code. *Ida Fishman*, 773 F.3d at 414 (Under SIPA, a trustee is empowered to clawback funds if they would have been customer property and the transfers could be avoided under the Bankruptcy Code). The Amended Complaint alleges that the initial transfers are avoidable as preference claims under § 547. Am. Compl. at 22. As explained in the Motion, the good faith defense applies to avoid recovery of preference claims under § 547. Because those transfers are not recoverable under § 547, they are not recoverable under § 550 as preference claims.

### CONCLUSION

For the foregoing reasons, and the reasons stated in the Motion, the Court should dismiss the Amended Complaint in its entirety.

20

Dated: February 17, 2023

New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ *Pamela A. Miller*
Pamela A. Miller
Amber Covucci
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
E-mail: pmiller@omm.com

*Attorneys for Merrill Lynch Bank (Suisse) SA*