# Exhibit B

Pamela A. Miller
Amber L. Covucci
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
E-mail:   pmiller@omm.com
          acovucci@omm.com
*Attorneys for Merrill Lynch International*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant,<br>v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 10-05346 (CGM) |
| Plaintiff,<br>v. | |
| MERRILL LYNCH INTERNATIONAL, | |
| Defendant. | |

**REPLY IN SUPPORT OF MERRILL LYNCH INTERNATIONAL'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.     THE COURT LACKS PERSONAL JURISDICTION OVER MLI .....................2

    A.     The Forum Selection and Choice of Law Clauses in the
        Subscription Agreements Do Not Establish Jurisdiction...........................2

    B.     The Use of New York Bank Accounts Does Not Subject MLI to
        Jurisdiction in New York...........................................................................2

        1.     **The exhibits to the Opposition <span style="color:blue">fail to</span> show** <span style="color:red">~~that the~~</span>
            <span style="color:red">~~Trustee's allegation~~</span> **that MLI used a New York bank**
            **account to receive <span style="color:blue">each of the</span> redemptions** <span style="color:red">~~is baseless~~</span>. .............2

        2.     **The exhibits show that MLI's alleged connection to New**
            **York by sending subscription payments to a New York**
            **bank account is tenuous at best.** ..................................................4

        3.     **The flimsy connections pleaded in the Amended**
            **Complaint are not jurisdictionally relevant contacts.** ...............5

    C.     Communications Between MLI and FGG Do Not Support
        Jurisdiction...............................................................................................7

    D.     MLI Did Not Purposefully Avail Itself of the Laws and Privileges
        of New York by Investing in the Fairfield Funds.....................................8

    E.     The Claims Do Not Arise Out Of or Relate To MLI's Alleged New
        York Contacts. ........................................................................................10

    F.     Exercise of Jurisdiction Over MLI Would Be Unreasonable...................11

    G.     Jurisdictional Discovery Is Not Warranted..............................................12

II.    THE TRUSTEE HAS FAILED TO PLEAD MLI RECEIVED
    CUSTOMER PROPERTY. ................................................................................12

III.   THE TRUSTEE'S INCORPORATION OF THE FAIRFIELD SAC IS
    IMPROPER. ........................................................................................<span style="color:red">~~14~~</span><span style="color:blue">13</span>

IV.    BANKRUPTCY CODE § 546(e)'S SAFE HARBOR APPLIES TO BAR
    CLAWBACK OF THE TRANSFERS TO MLI. .................................................14

V.     THE TRUSTEE HAS FAILED TO PLEAD BLMIS'S ACTUAL
    INTENT UNDER BANKRUPTCY CODE § 548(A)(1)....................................16

VI.    THE GOOD FAITH DEFENSE CAN BE RAISED AT THIS STAGE
    BECAUSE THE TRUSTEE'S PLEADINGS ESTABLISH THE
    DEFENSE..............................................................................................<span style="color:red">~~18~~</span><span style="color:blue">17</span>

**TABLE OF CONTENTS**
**(continued)**

**Page**

A.    MLI Received the Redemptions in Good Faith.........................................18

B.    MLI Received the Redemptions for Value...............................................19

C.    The Good Faith Defense Is Particularly Warranted for the
Preference Claims. ...............................................................................2019

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aff. FM Ins. Co. v. Kuehne + Nagel, Inc.*,
   328 F. Supp.3d 329 (S.D.N.Y. 2018) ...................................................................2

*Am. Casein Co. v. Geiger*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ...............................................................14

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017)......................................................................................2, 4

*Colliton v. Cravath, Swaine & Moore LLP*,
   No. 09–CV–400, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356
   Fed. Appx. 535 (2d Cir. 2009) ...........................................................................19

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)...............2, 4, 9

*Farooq v. City of NY*,
   2022 WL 793117 (2d Cir. Mar. 16, 2022)...........................................................3

*Feldman v. Silverleaf Resorts, Inc.*,
   No. 98-CV-4566, 2000 WL 35542530 (E.D.N.Y. Jan. 31, 2000).........................7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)........................................................................................10

*Ge Dandong v. Pinnacle Performance Ltd.*,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013) .................................................................6

*Gerard v. Traffic Safety, LLC*,
   No. 11 CV 8550 VB, 2012 WL 2866255 (S.D.N.Y. July 2, 2012).......................3

*Golden Archer Inv., LLC v. Skynet Fin. Sys.*,
   No. 3673, 2012 WL 123989 (S.D.N.Y., Jan. 3, 2012) ..........................................7

*Helms v. Metro Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019) ................................................................13

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................................6

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 CIV. 9405, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ......................5, 6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Banco Santander Sec.-Optimal Litig.*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010), *aff'd* 439 F. App'x 840 (11th Cir.
    2011) ............................................................................................................................5

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................19

*In re Trib. Co. Fraudulent Conv. Litig.*,
    No. 11-MD-2296, 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017), *aff'd*, 10 F.4th
    147 (2d Cir. 2021) ..................................................................................................17

*Irving Tr. Co. v. Chase Nat'l Bank*,
    65 F.2d 409 (2d Cir. 1933) ....................................................................................20

*Jones v. Bock*,
    549 U.S. 199 (2007)................................................................................................18

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)...............................................................11, 12

*Liberatore v. Calvino*,
    742 N.Y.S.2d 291 (2002)..........................................................................................7

*Licci v. Lebanese Can. Bank*,
    20 N.Y.3d 327 (2012)............................................................................................6, 7

*Off. Comm. Of Unsec. Crs. of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ...................................................................................6

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ....................................................................................18

*Picard v. ABN Ireland*,
    No. 20-cv-02586, 2022 WL 1304589 (S.D.N.Y. May 2, 2022)............................19

*Picard v. Banque SYZ & Co. SA (In re BLMIS)*,
    No. 08-01789, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ................8, 18

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)..................................................................9, 10

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ...................................................................................17

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)...................................................................13

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Picard v. First Gulf Bank (In re BLMIS)*,
    No. 11-02541, 2022 WL 3354955 (Bankr. S.D.N.Y. Jul. 18, 2022) ..................................18

*Picard v. Ida Fishman (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014) .....................................................................................15, 16, 20

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .............................................................................12, 13

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................................18

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ...............................................................................10, 11

*Picard v. Multi-Strategy Fund*,
    22-cv-06512, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) .....................................14, 15, 16

*Picard v. Parson Fin. Panama S.A.*,
    No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022)..........................................8

*Picard v. Shapiro (In re Madoff)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................................13

*Picard v. Taylor*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) ...................................................................................17

*Secs. Inv. Prot. Corp. v. BLMIS*,
    No. 12-mc-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...............................................14

*Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir.2009) ........................................................................................................5

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ......................................................................................13

*Spetner v. Pal. Inv. Bank*,
    495 F. Supp. 3d 96 (E.D.N.Y. 2020) ..............................................................................5, 6, 7

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ..................................................................................................11

*U.S. v. Intl. Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................................................................14

*Vasquez v. HK & Shanghai Banking Corp., Ltd.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020) .....................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.),*
   343 B.R. 444 (Bankr. S.D.N.Y. 2006) ....................................................................17

*Walden v. Fiore,*
   571 U.S. 277 (2014) ...........................................................................................1, 9

*Wright v. Ernst & Young LLP,*
   152 F.3d 169 (2d Cir. 1998) ...............................................................................3, 19

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC,*
   No. 19-cv-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ...........................11

**Statutes**

11 U.S.C. § 550 ...........................................................................................................13

Defendant MLI respectfully submits this reply memorandum in further support of its Motion to Dismiss the Amended Complaint ("Motion" or "Mot.").[1]

The Amended Complaint should be dismissed in its entirety because this Court lacks personal jurisdiction over MLI. The Trustee attempts to establish that MLI had general business contacts with New York prior to receiving redemptions from the Funds. But courts have consistently held that to establish specific jurisdiction, a plaintiff must show a connection between the defendant, the forum, and the *specific claims at issue. Walden v. Fiore*, 571 U.S. 277, 284 (2014)

. The Opposition relies heavily on exhibits that were not attached to the Amended Complaint or incorporated in it, and therefore should not be considered. Even if considered, the exhibits reveal that: (i) MLI did not receive each of the redemptions in a New York account; (ii) MLI only transferred funds through Sentry's intermediary account in New York en route to Sentry's Citco account in Dublin; (iii) emails between MLI and FGG in New York and elsewhere had nothing to do with the redemptions; and (iv) at the time MLI invested in the Funds, it did not know what portion (if any) of its investments were destined for BLMIS in New York. Thus, the Trustee's jurisdictional allegations are unsupported by facts and lack a connection to the redemptions at issue.

The Amended Complaint should also be dismissed on the merits. *First*, the Trustee has failed to allege that MLI received a single dollar of BLMIS customer property. *Second*, the Trustee improperly incorporates the Fairfield Second Amended Complaint ("Fairfield SAC") in violation of Federal Rules 8 and 10. *Third*, under Second Circuit precedent, the § 546(e) safe harbor prevents

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion, all emphasis is added, and internal citations and quotation marks have been omitted. Opposition or "Opp." refers to the Trustee's Opposition to the Motion, ECF No. 146.

the clawback of subsequent transfers to MLI. *Fourth*, the Trustee failed show BLMIS's actual

intent under Bankruptcy Code § 548(a)(1)(A) with respect to the transfers at issue. *Fifth*, MLI is

entitled to the good faith defense as it was a net loser that provided value for each of the

redemptions at issue and did not know of, and could not have discovered, BLMIS's fraud.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER MLI

### A.    The Forum Selection and Choice of Law Clauses in the Subscription Agreements Do Not Establish Jurisdiction.

Tellingly, the Trustee does not dispute that he is not a party to or a third-party beneficiary

of the subscription agreements. *See Aff. FM Ins. Co. v. Kuehne + Nagel, Inc*., 328 F. Supp.3d 329,

338–39                                     (S.D.N.Y.                                     2018)

 (rejecting enforcement of forum selection clause where claims and parties to the suit were not

subject to the clause). As such, he cannot benefit from the forum selection clause in those

agreements. Even if he could, by arguing that the choice of law and forum selection clauses in the

subscription agreements are "evidence that MLI purposefully directed its activities towards New

York," the Trustee ignores this Court's decision in *Fairfield Sentry Ltd. v. Theodoor GGC

Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y.

Aug. 6, 2018). Opp. at 13. Even if MLI directed activities towards New York by executing the

*subscription* agreements, that proves nothing as to MLI's connections to New York with respect

to the claims here, based on *redemptions*. *Bristol-Myers Squibb v. Super. Ct. of Cal*., 137 S. Ct.

1773,                                     1781                                     (2017)

 (declining to exercise jurisdiction where "a connection between the forum and the specific claims

at issue" was missing). For that precise reason, the Court previously held the Sentry subscription

agreements are "irrelevant" to jurisdiction over cases (like this one) concerning redemptions.

*Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11–12.

**B.      The Use of New York Bank Accounts Does Not Subject MLI to Jurisdiction in New York.**

     1.      **The exhibits to the Opposition fail to show ~~that the Trustee's allegation~~ that MLI used a New York bank account to receive each of the redemptions ~~is baseless~~.**

In the Motion, MLI argued that the Trustee failed to "specify which, if any, of MLI's redemption payments were received by MLI in a New York bank account." Mot. at 11. In response, the Trustee attaches documents relating to three redemption requests to suggest that MLI used a J.P. Morgan account in New York to receive redemptions. Opp. at 15;  Longstaff Decl., Exs. 23–25. As a preliminary matter, it is improper to consider the exhibits to the Longstaff Declaration (ECF No. 147) at the motion to dismiss stage. The Trustee did not attach the exhibits to the Amended Complaint. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not add allegations in opposition to motion to dismiss); *Farooq v. City of NY*, 2022 WL 793117, at *4 n.5 (2d Cir. Mar. 16, 2022) ("Our review of [plaintiff's] claim is . . . limited to what he pleaded in his complaint."). Nor does the Trustee even attempt to explain why the exhibits should be considered "integral" to the Amended Complaint. *See Gerard v. Traffic Safety, LLC*, No. 11 CV 8550 VB, 2012 WL 2866255, at *2 (S.D.N.Y. July 2, 2012) (court may consider documents external to complaint at the motion to dismiss stage if the complaint "relies heavily" upon their "terms and effect" such as to "render[] the document[s] 'integral' to the complaint"). The Trustee had ample opportunity to attach supporting documents when he filed the Amended Complaint and failed to do so. Consequently, the exhibits should be stricken.[2]

---

[2] ~~As discussed below, the "exemplar" exhibits are not even connected to the redemptions at issue in the Amended Complaint, and therefore cannot be "integral" to the Amended Complaint.~~

But even if the Court considers the exhibits, ~~these "exemplar" redemptions demonstrate the problem at the root of the Trustee's Amended Complaint: they have no connection to the subsequent transfers the Trustee seeks to avoid. Exhibit 24 reflects a purported redemption request by MLI with a value of $5 million, with a redemption date of November 19, 2008. But the last transfer to MLI~~<u>they fail to establish that MLI received each of the requests in a New York account. The exhibits document MLI's receipt of only two of the five redemption requests</u> sought to be avoided ~~by~~<u>in</u> the Amended Complaint ~~occurred on November 18, 2008.~~<u>in a New York account. Longstaff Decl., Exs. 23–24;</u> Am. Compl. Ex. ~~D~~<u>C</u>.  Exhibit 25 documents a redemption request dated November 11, 2008, which sets a valuation date of November 30, 2008—almost two weeks after MLI's last redemption. It is axiomatic that a redemption request is *not* evidence of an actual redemption, and it appears ~~these requests are~~<u>this request is</u> not related to the redemptions the Trustee seeks to avoid. *Id.* ~~The remaining redemption request lists a payment date of August 14, 2006, in the amount of $1.2 million. Longstaff Decl. Ex. 23 at 8. But again, that transfer is not among those the Trustee seeks to avoid. In fact, the closest transfer the Trustee seeks to avoid after that date is a transfer of $300,805.00 on September 22, 2006—more than a month later—which has no apparent connection to the $1.2 million redemption request documented in Exhibit 23. Am. Compl. Ex. D.~~ Without more, these exemplars do not establish ~~"~~a connection between the forum and <u>each of</u> the specific *~~claims~~*<u>redemptions</u> at issue~~"~~<u>,</u> and are not sufficient to establish specific jurisdiction. *Bristol-Myers Squibb*, 137 S. Ct. at 1781; *see also Vasquez v. HK & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 256 (S.D.N.Y. 2020) ("the same contacts must give rise both to jurisdiction and to plaintiffs' claims.")

Further, the Trustee does not allege MLI received any redemptions from Sigma in a New York account. That alone is sufficient to dismiss the claims concerning redemptions from Sigma.

4

    **2.**    **The exhibits show that MLI's alleged connection to New York by
sending subscription payments to a New York bank account is tenuous
at best.**

The Trustee also argues that MLI's transfer of subscription payments to Sentry's New York

bank account supports the exercise of personal jurisdiction. *See* Opp. At 15–16. But that argument

fails for the same reason as the Trustee's argument that the Subscription Agreements support

personal jurisdiction: this is a case about specific redemptions, not subscriptions. *See Theodoor*

*GGC Amsterdam*, 2018 WL 3756343, at *11–12. Even if the use of a New York bank account to

make subscription payments were relevant, the Subscription Agreements, Private Placement

Memoranda, and subscription payment confirmations, individually and collectively, show that

although MLI was required to wire subscription payments to Sentry's HSBC account in New York,

that account was simply an "intermediary bank" and all payments were subsequently transferred

to Sentry's Citco account in Dublin. *See* Longstaff Decl. Exs. 1–3 (Subscription Agreements,

describing HSBC in New York as an "intermediary bank" and noting the beneficiary was Sentry's

"Citco Bank Nederland N.V. Dublin Branch"); Ex. 8 at 18 (Private Placement Memoranda, stating

"All proceeds from the sale of Shares will be received by the Fund in trust and will be deposited

by the Fund into . . . the Fund's bank, Citco Bank Nederland N.V. Dublin Branch."); Exs. 5–7

(subscription payment confirmations showing transfers to Sentry's HSBC account were made for

"further cr[edit]" to Citco Bank Nederland NY – Dublin). Simply routing transfers through New

York is not an act of purposeful availment sufficient to establish jurisdiction. *See Spetner v. Pal.*

*Inv. Bank*, 495 F. Supp. 3d 96, 116–17 (E.D.N.Y. 2020)

 (a "wire transfer through New York" or "use of a third-party bank to process U.S. dollar

transactions" is not a transaction of business in New York); *In re Banco Santander Sec.-Optimal*

*Litig.*, 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010), *aff'd* 439 F. App'x 840 (11th Cir. 2011)

("the Second Circuit recently held that electronic funds transfers 'in the temporary possession of

an intermediary bank are not property of either the originator or the beneficiary under New York

law'" thus such transfers cannot support jurisdiction) (citing *Shipping Corp. of India v. Jaldhi*

*Overseas       Pte       Ltd.*,       585       F.3d       58,       71       (2d       Cir.2009)

).

  Further, the subscription agreements show that neither the Sigma subscriptions nor

redemptions passed through New York. *See* Longstaff Decl. at Ex. 4.

  **3.**  **The flimsy connections pleaded in the Amended Complaint are not
jurisdictionally relevant contacts.**

  The Trustee cannot parlay the minimal contacts with New York alleged in the Amended

Complaint—which are not even related to the claims, *see supra*—into a basis for jurisdiction. As

the Trustee's cases show, a correspondent back account can only establish jurisdiction "where the

use of that account was held to lay at the very root of the plaintiff's action." *HSH Nordbank AG*

*N.Y. Branch v. Street*, No. 11 CIV. 9405, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012)

. In the cases cited by the Trustee, the correspondent bank accounts were not incidental to the

alleged wrongful conduct; they formed the basis for the claims. *Id*. (New York accounts used to

"shelter significant and repeated transfers of funds" from the reach of a creditor); *Ge Dandong v.*

*Pinnacle    Performance    Ltd.*,    966    F.    Supp.    2d    374,    382    (S.D.N.Y.    2013)

 (defendant established New York accounts to hold fraudulent investments and used them "to

shelter significant and repeated transfers of funds"); *Licci v. Lebanese Can. Bank*, 20 N.Y.3d 327,

340                                                                                    (2012)

 (defendant "deliberately used a New York account again and again to effect its support of Shahid

and shared terrorist goals"). Here, by contrast, at most the Trustee has shown that MLI's

subscription payments to Sentry were routed only temporarily through a New York bank account.

  The Trustee's cases also emphasize that, to be relevant to jurisdiction, use of a U.S. bank

account must be "purposeful." Opp. at 15. Courts reject jurisdiction where use of a U.S. bank account was "not even [the defendants'] doing." *Licci*, 20 N.Y.3d at 338. Here, the Trustee's allegations show MLI's transfers to Sentry's New York account were required by the terms of *Sentry's* subscription agreements, executed outside of New York. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) ("communications and payments [to BLMIS in New York] were incidental consequences of fulfilling a foreign contract" and did not show purposeful availment). In *Off. Comm. Of Unsec. Crs. of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 68-69 (S.D.N.Y. 2016), the Court found the defendants were "not simply complicit" in the selection of the New York bank accounts as the *defendants* set the terms of the placements, selected U.S. dollars as the currency, and designated New York bank accounts to receive the funds. *Id.* The opposite is true here. *See Spetner*, 495 F. Supp. 3d at 116 (declining to exercise jurisdiction where defendant did not exercise control over selection and use of bank accounts in New York).

While in *Licci* the Court noted that sometimes the use of a New York bank account can support jurisdiction, it acknowledged the inquiry is complicated "given the widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." 20 N.Y.3d at 338. The implication is that personal jurisdiction does not lie where, as here, a New York account is used only nominally to facilitate international transfers. *See Feldman v. Silverleaf Resorts, Inc.*, No. 98-CV-4566, 2000 WL 35542530, at *4 (E.D.N.Y. Jan. 31, 2000) (if "participation in New York's international financial markets alone could constitute 'doing business' . . . personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns."); *Spetner*, 495 F. Supp. 3d at 113, 116 (there is no purposeful contact in a "standard correspondent banking relationship" or sending a wire through New York banks). The

7

use of Sentry's New York account, at Sentry's request, to facilitate the transfer of funds to an overseas account is insufficient to establish jurisdiction here.

### C.    Communications Between MLI and FGG Do Not Support Jurisdiction.

The handful of communications the Trustee belatedly attaches to the Opposition confirm that the communications between MLI and FGG have nothing to do with the claims. Longstaff Decl. Exs. 9–12, 19, 22. In fact, they do not even mention the redemptions at issue in this action.

The Trustee's cases reinforce that these communications are insufficient to support jurisdiction. Those cases indicate that communications can only establish jurisdiction where those communications "go to the heart of the commercial transaction between the parties." *Golden Archer Inv., LLC v. Skynet Fin. Sys*., No. 3673, 2012 WL 123989 *6 (S.D.N.Y., Jan. 3, 2012) (New York jurisdiction established where defendants logged onto the Plaintiff's New York server to upload and edit code and had regular communications over email, video conference and phone regarding development of software which allowed the defendants to participate in the transaction); *Liberatore    v.    Calvino*,    742    N.Y.S.2d    291,    293    (2002) (telephone calls and written communications, which generally are held not to provide a sufficient basis for personal jurisdiction, must be shown to have been "used by the defendant to actively participate in business transactions in New York"). The communications attached to the Longstaff Declaration do not meet these standards as they were not used to effect the redemptions, nor any other transaction in New York. In fact, they do not even mention the redemptions.

The Trustee's reliance on recent decisions of this Court is equally unavailing. *See* Opp. at 16–17 (citing *Picard v. Parson Fin. Panama S.A*., No. 11-02542, 2022 WL 3094092 (Bankr. S.D.N.Y.                Aug.                3,                2022) ; *Picard v. Banque SYZ & Co. SA (In re BLMIS)*, No. 08-01789, 2022 WL 2135019 (Bankr. S.D.N.Y.                June                14,                2022)

8

). *Banque SYZ* did not involve communications with individuals in New York, thus the Court's comments about contacts with New York through mail are dicta. In *Parson*, the Court did not find the emails themselves were jurisdictional contacts. Rather, they evidenced independent jurisdictional contacts, including the defendant's frequent travel to New York to meet with representatives of the Funds, requests to meet personally with Madoff, and questions about Madoff. *Parson*, 2022 WL 3094092 at *4. The Court found this was evidence Parson intended to invest with BLMIS in New York and "purposefully availed itself of the privilege of doing business in New York by traveling to New York to meet with FGG regarding the investments at issue in this case." *Id.* No such connections are established here. The emails attached by the Trustee do not mention redemptions, Madoff, or New York, but rather discuss Sentry's performance and transfers to Sentry's Citco account in Dublin.[3][2]

### D.    MLI Did Not Purposefully Avail Itself of the Laws and Privileges of New York by Investing in the Fairfield Funds.

As an initial matter, MLI's subscriptions in the Funds cannot supply jurisdictional contacts relevant to claims involving MLI's redemptions. *See Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11–12. Even if the Court considers MLI's decision to subscribe to the Funds relevant, the facts alleged regarding that decision are insufficient to support jurisdiction.

The Trustee has not shown that MLI "kn[ew], intend[ed], and contemplate[ed]" that the "substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." Mot. at 12; *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012). In fact, when MLI first invested in Sentry, it could not have known that the substantial majority

---

[3][2]  *See* Longstaff Decl. Ex. 10 (discussing payments to Sentry's Citco account); Ex. 11 (discussing performance updates for the Funds); Ex. 12 (email from FGG referring a London-based MLI employee to an FGG employee in Bermuda for questions about the Funds); Ex. 22 (listing addresses in London and Bermuda for FGG).

9

of its funds would be transferred to BLMIS. The 2004 private placement memorandum ("PPM")
shows that Sentry was not *required* to invest substantially all of its assets with BLMIS. *See*
Longstaff Decl. Ex. 8. It was simply required to allocate 95% of investments to split strike
conversion ("SSC") investments. *Id.* at 17. SSC is an established investment strategy, and the 2004
PPM did not disclose that the SSC strategy referred specifically to BLMIS's investment strategy.
*Id.*[43] Only the August 14, 2006 PPM disclosed that 95% of investments must be invested *with*
*BLMIS* to implement the split strike conversion method. Longstaff Decl. Ex. 13 at 17–18.[54]
Tellingly, Judge Lifland's conclusion that "Fairfield Sentry *was required* to invest at least 95% of
its assets in the SSC utilized and controlled by BLMIS in New York" and thus BLI invested in
Sentry in 2007 *knowing* that its investments would be transferred to BLMIS in New York was
based on the 2006 PPM, *not* the 2004 PPM that MLI reviewed before its initial investment in
Sentry. *BLI*, 480 B.R. at 517. And simply anticipating investments may ultimately be invested in
New York is not enough. *Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("unilateral activity of a third
party . . . cannot satisfy the requirement of contact with the forum State").

Of course, if this Court finds MLI's decision to invest in the Funds relevant to jurisdiction,
only MLI's knowledge at the time of making its initial investment can be considered material. The
Trustee carries the burden to show that MLI invested in the Funds *because of* their connection to
New York. *See BLI*, 480 B.R. at 517. To intentionally invest in the Funds because of their New
York connections, then, MLI must have known of those connections at the time of the
investment.[65]

---

[43] At most, the 2004 PPM shows Sentry was 95% invested in BLMIS at that time, but does not *require* that Sentry be
95% invested in BLMIS. *See id.* at 23.

[54] Stating "the split strike conversion strategy is implemented by Bernard L. Madoff Investment Securities LLC" and
that the Investment Manager could allocate up to 5% of the Fund's NAV to alternative investments.

[65] The Trustee cites *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022)
to suggest MLI's contacts with the forum after its initial investment can support jurisdiction. But that logic does not

**E.**    **The Claims Do Not Arise Out Of or Relate To MLI's Alleged New York Contacts.**

For the reasons discussed above and in the Motion, the Trustee has not shown the claims arise out of or relate to MLI's alleged and limited contacts with New York. The Trustee's cases reinforce that New York contacts must be sufficiently tied to the claims at issue—here, the redemptions—to support jurisdiction. But none of the allegations in the Amended Complaint or exhibits to the Opposition sufficiently connect the redemptions to MLI's few New York contacts.

The Trustee relies heavily on the Supreme Court's holding that the "arise out of or relate to" test does not require a causal relationship. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141    S.    Ct.    1017,    1026    (2021) . But *Ford* makes clear that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum" and a sufficient connection to the claims must be demonstrated. *Id.* Ford, for example, conducted "substantial business" in the state by advertising, selling, and servicing the defective vehicle model at issue in that case. *Id.* at 1022. The Court found "[w]here a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.*

*Ford* is inapposite because there are no facts providing a sufficient connection between MLI's affirmative activity and the Trustee's claims. MLI did not reach into New York for purposes of receiving redemptions, and undertook no steps to affiliate with New York other than limited use of Sentry's New York account as one step in the chain of transfers. "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." 641 B.R. at 86 (citing *U.S. Bank Nat'l Ass'n v.*

---

apply to the question of MLI's knowledge at the time of making its investments, which cannot have been informed by documents received after the fact.

11

*Bank    of    Am.    N.A.*,    916    F.3d    143,    150    (2d    Cir.    2019)
). Here, the connections, to the extent they have been established at all, are attenuated and lack the
required nexus to the redemptions at issue.

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-3444,
2020    WL    5503557    (S.D.N.Y.    Sept.    10,    2020)
is instructive.  In that case, defendant A&A's only alleged contacts with New York were prior
shipments A&A delivered in New York, not related to the claims in the complaint. The court
denied jurisdiction finding that "none of these contacts [gave] rise to [the Plaintiff's] cause of
action" and "none of the contacts [plaintiff] identifies has anything to do with this dispute other
than generally involving [defendant's] business." *Id.* at *5.

As in *Zim*, the exhibits to the Longstaff Declaration relate to the subscriptions (Longstaff
Decl., Exs. 1–8, 13, 14, 26), MLI's general business relationship with the Funds (*id* Exs. 9–12,
15–22), and redemption requests unrelated to the redemption payments the Trustee seeks to
recover. *Id*. Exs. 23–25. Under this precedent, those are simply insufficient connections to
establish jurisdiction in New York. 2020 WL 5503557, at *5.

### F.    Exercise of Jurisdiction Over MLI Would Be Unreasonable.

The Trustee cites the wrong test for assessing reasonableness. Where, as here, the
defendant's connections with the forum are weak, the bar for showing reasonableness is high.
*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018)
("the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in
terms of unreasonableness to defeat jurisdiction"). For the reasons discussed in the Motion, the
Trustee has not met that high bar. Mot. at 16–19. Further, contrary to the Trustee's assertion, the
fact MLI "has New York counsel and/or has appeared in this forum in the past does not negate the
burden and hardship imposed on [it] in being sued here." *LaMonica*, 582 B.R. at 80. Nor does the

Trustee's reference to GDPR Article 49 to suggest that some international data transfer is permissible in the context of legal proceedings negate the fact the tight data protection regulations in the U.K. add a layer of complexity and uncertainty to litigating this case in the United States. Opp. at 21.

### G.    Jurisdictional Discovery Is Not Warranted.

Recognizing the insufficiency of his jurisdictional pleadings, the Trustee requests discovery. Jurisdictional discovery, eleven years after the Trustee filed the initial complaint and after MLI filed two motions to dismiss on the basis of jurisdiction would be wholly disproportionate to the needs of the case and inconsistent with Rule 26(b). The Trustee has had considerable "access to relevant information" in the form of the Funds' books and records for well over a decade. Fairfield Settlement Agreement ¶ 14. Further, cross-border discovery would place substantial financial and logistical burdens on MLI and implicate foreign laws. Mot. at 17.

Moreover, the Trustee is wrong to assert that he has made a "threshold showing" of jurisdiction sufficient to permit discovery. Opp. at 22. For the reasons discussed above, the allegations the Trustee points to in support of that contention—MLI's communications, banking activities, and investment activities—do not support jurisdiction. *Supra* Sec. I.A–F.

## II.    THE TRUSTEE HAS FAILED TO PLEAD MLI RECEIVED CUSTOMER PROPERTY.

To recover alleged subsequent transfers to MLI, "the complaint must allege facts that support the inference 'that the funds at issue originated with the debtor.'" *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). The Trustee's allegations that (i) Sentry received customer funds from BLMIS, (ii) Sigma received funds from Sentry, and (iii) MLI received funds from Sentry and Sigma, without more, fail to meet the Trustee's burden to establish that MLI received BLMIS customer funds. The

essential missing link is any connection between those three sets of alleged transfers.

MLI does not dispute that the Trustee is not required to conduct comprehensive accounting at the pleading stage. Rather, the Trustee must show the "necessary vital statistics" of the transfer. *Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ; Opp. at 25. What the Trustee fails to acknowledge is that this standard requires the Trustee to allege facts sufficient to support an inference that the transfers from BLMIS are connected to the specific transfers to MLI the Trustee seeks to recover. *Merkin I*, 515 B.R. at 150 ("several subsequent transfers took place contemporaneously or shortly after an initial transfer identified in Exhibit B, implying linkage").[76] The Trustee has not even attempted to demonstrate any linkage between the transfers, despite having access to financial documents necessary to determine if any such connection exists.

Finally, confronted with the fact that Sentry cannot possibly have paid out all of the funds the Trustee seeks to recover, the Trustee argues "until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from MLI and [other] defendants." Opp. at 28. That misses the point. The Trustee is not permitted to throw everything at the wall and see what sticks.[87] Rather, the Trustee can only seek to recover from "immediate or mediate transferee[s] of [an] initial transferee . . . who take[] in a later transfer down the chain of title or possession." *Helms v. Metro Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019) ; 11 U.S.C. § 550.

---

[76] *See also Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading subsequent transfers held sufficient where they "correspond[ed] to" the amounts of initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers[.]").

[87] As MLI explained in the Motion, and the Trustee has not disputed, the Trustee seeks to recover $2 billion more from subsequent transferees of Sentry than it alleges BLMIS transferred to Sentry in the first place. Mot. at 24.

## III.    THE TRUSTEE'S INCORPORATION OF THE FAIRFIELD SAC IS IMPROPER.

Courts refuse to consider pleadings purportedly incorporated into a complaint where there is no guidance on which specific allegations were intended to be deemed incorporated. *Am. Casein Co. v. Geiger*, 446 B.R. 670, 672 (Bankr. E.D. Pa. 2010) ; *U.S. v. Intl. Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007) . That result is appropriate here as the Fairfield SAC is packed with allegations extraneous to the purported reason for incorporation and the Amended Complaint contains no guidance on which allegations are relevant to the claims against MLI. The Trustee claims MLI has "notice of the . . . relevant allegations of the Fairfield SAC to which it needs to respond" as it is aware that incorporation is intended to plead avoidability of the initial transfers. Opp. at 23. But without guidance on *which* allegations the Trustee believes support voidability of the initial transfers, MLI would be forced "to select the relevant material from the mass of verbiage" in "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim'" to defend against the Fairfield SAC. *ILA*, 518 F. Supp. 2d at 463.

## IV.    BANKRUPTCY CODE § 546(e)'S SAFE HARBOR APPLIES TO BAR CLAWBACK OF THE TRANSFERS TO MLI.

The Trustee concedes that MLI meets the standard in § 546(e), except that the subsequent transfers fall within the "actual knowledge" exception articulated for the first time in *Secs. Inv. Prot. Corp. v. BLMIS,* No. 12-mc-115, 2013 WL 1609154, at *3, 7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") and restated in *Picard v. Multi-Strategy Fund*, 22-cv-06512, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy Fund II*"). Notwithstanding those decisions, MLI respectfully asserts that § 546(e) counsels dismissal. This judge-created exception finds no support in the text of § 546(e)

and cuts against both Congress's intent and Second Circuit precedent.[98]

In *Multi-Strategy Fund II* the District Court dismissed consolidated motions for interlocutory appeal of this Court's opinions denying dismissal on § 546(e) grounds. Judge Rakoff held that, under his opinion in *Cohmad*, a transfer from Madoff Securities to a customer with actual knowledge of the fraud would not fall under § 546(e)'s terms. He reasoned that "any transferee who knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments or transfers in connection with a security agreement." *Id.* at *7. And subsequent transferees could not rely on § 546(e) where the initial transfer was not covered by its terms. *Id.* Judge Rakoff also found that transfers from BLMIS to Sentry are protected by the safe harbor if they are "related to, securities contracts between Fairfield and its financial institution or financial participant clients" but "it is the Bankruptcy Judge, not this Court, that should [address this issue] in the first instance." *Id* at *9.

The agreements between BLMIS and Sentry fall within § 546(e)'s broad definition of securities contracts. Section 546(e) defines "securities contract" with "extraordinary breadth" to include contracts for the purchase or sale of securities and any agreements similar to such contracts. *Picard v. Ida Fishman (In re BLMIS)*, 773 F.3d 411, 417–418 (2d Cir. 2014) . It also protects transfers made "in connection" with a securities contract. *Id.* at 418. Even if Sentry knew that BLMIS was not trading securities, it still entered into contracts with BLMIS that purported to allow BLMIS to trade securities on its behalf. *Id.* (agreements that "authorized BLMIS to engage in securities transactions on behalf of its customers" are securities contracts). At the very least, the agreements are "similar to" a securities contract, as they have "characteristics

---

[98] The only exception to § 546(e) is § 548(a)(1), which renders transfers within two years of filing avoidable if the debtor had "actual intent to hinder, delay, or defraud" a creditor. That exception focuses on the *debtor's* knowledge. There is no actual knowledge exception for transfers made to a *creditor* with knowledge of fraud, or intent to defraud.

in common" with BLMIS's contracts with its other investors, which the Second Circuit has already
confirmed qualify as securities contracts under § 546(e). *Id.* at 419.

Further, the Amended Complaint alleges Sentry's single purpose was to "invest with
BLMIS's investment advisory business." Am. Compl. ¶ 3. As MLI explained in the Motion, the
Trustee claims that the entire $2.9 billion (and more) transferred from BLMIS to Sentry in the 6
years preceding the petition were used to fund subsequent transfers of BLMIS property—in the
form of redemptions—to customers of Sentry. Mot. at 24. Thus, all transfers from BLMIS to
Sentry were "broadly related to a 'securities contract'" between Sentry and its customers. *Ida
Fishman*, 773 F.3d at 420. This is true whether Sentry specifically withdrew money from BLMIS
to fund MLI's redemptions, or whether it withdrew money generally to satisfy customer
redemptions, including customers like MLI who are not alleged to have actual knowledge of
BLMIS's fraud. *Multi-Strategy Fund II*, at *9 (§ 546(e) protects transfers "related to, securities
contracts between Fairfield and its financial institution or financial participant clients").

Applying § 546(e) to MLI's redemptions is also consistent with Congress's intent in
drafting the statute and Second Circuit precedent. The purpose of § 546(e)'s "very broadly-worded
safe-harbor provision" is to "minimiz[e] the displacement caused in the commodities and securities
markets in the event of a major bankruptcy affecting those industries," such as this one. *Ida
Fishman*, 773 F.3d at 416. In this case, "[p]ermitting the clawback of millions, if not billions, of
dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would
likely cause the very "displacement" that Congress hoped to minimize in enacting § 546(e)." *Id.*
at 420. Thus dismissal of the claims against MLI is consistent with the text and purpose of the safe
harbor rule and Second Circuit precedent.

## V.    THE TRUSTEE HAS FAILED TO PLEAD BLMIS'S ACTUAL INTENT UNDER BANKRUPTCY CODE § 548(A)(1).

The Trustee's argument that the Ponzi scheme presumption is settled law goes too far. Although, as the Trustee states, the Second Circuit applied the presumption in *Citibank*, the panel made clear that, because the parties did not contest its application, the Court would "not address [] whether the Ponzi scheme presumption is well-founded." *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 181, n.7 (2d Cir. 2021) . By contrast, MLI contests application of the Ponzi scheme presumption, and thus *Citibank* does not weigh in favor of its application here. If anything, given Judge Menashi's well-reasoned concurrence, *Citibank* counsels against its application.

As MLI explained in the Motion, the Ponzi scheme presumption obfuscates applicable Bankruptcy Code provisions by (i) expanding the preference period well beyond the 90 days set by the Code, (ii) ignoring § 548(a)(1)'s qualification that the transfer to be avoided must be made with "actual intent to hinder, delay, or defraud," and (iii) abrogating Rule 9(b)'s pleading requirements, which require actual intent to be pled with particularity. Mot. at 29–31.

The Trustee's argument that the Amended Complaint pleads badges of fraud similarly fails to establish fraudulent intent. Opp. at 32. The Trustee does not connect any of the facts purportedly indicating fraud to any of the badges set forth by the Second Circuit, or explain which badges of fraud are met. The Trustee merely alleges that Madoff was secretive and his employees have faced legal sanctions. But "[g]enerally, the presence of a single badge of fraud is insufficient to establish actual fraudulent intent." *Picard v. Taylor*, 326 B.R. 505, 518 (Bankr. S.D.N.Y. 2005) .

These vague allegations also gloss over the specific facts surrounding the funds transferred to MLI, focusing only on BLMIS, rather than the transfers. This pleading deficit runs into the same

problems as the Ponzi scheme presumption, because the Trustee leans on the fact that BLMIS was

running a Ponzi scheme to contend that *all* of BLMIS's transfers were fraudulent. Under this

theory, the Trustee again fails to meet his pleading burden to establish fraudulent intent as to each

particular transfer. *Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468

(Bankr.                                    S.D.N.Y.                                      2006)

(allegations of fraudulent intent must relate to the "specific transfers challenged"); *In re Trib. Co.*

*Fraudulent Conv. Litig.*, No. 11-MD-2296, 2017 WL 82391, at *15 (S.D.N.Y. Jan. 6, 2017), *aff'd*,

10                F.4th                147                (2d              Cir.              2021)

(scrutinizing the knowledge of the individuals who approved the specific transfer at issue, rather

than the knowledge imputed to the defendant entity as a whole, in concluding the badges of fraud

had not been established).

## VI.    THE GOOD FAITH DEFENSE CAN BE RAISED AT THIS STAGE BECAUSE THE TRUSTEE'S PLEADINGS ESTABLISH THE DEFENSE.

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6) . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue*

*Shield*,          152          F.3d          67,          74          (2d          Cir.          1998)

;     *see     also     Jones     v.     Bock*,     549     U.S.     199,     215     (2007)

. The Trustee's generalized argument that the Court has rejected application of the defense in other

cases with different facts does not alter that rule. Opp. at 33–34.

### A.    MLI Received the Redemptions in Good Faith.

The Trustee relies on cases where defendants' knowledge of BLMIS's fraud was alleged.

In *Banque SYZ* and *First Gulf*, the Court found "the Complaint suggest[ed] that [defendants] had

access to information about BLMIS's fraud and failed to concern [themselves] with such things."

2022 WL 2135019, at *11; *Picard v. First Gulf Bank (In re BLMIS)*, No. 11-02541, 2022 WL

19

3354955,        at        *11        (Bankr.        S.D.N.Y.        Jul.        18,        2022)

. In *Picard v. Merkin,* the complaint was rife with knowledge allegations, including defendants'

receipt of account statements that "reflected hundreds of trades exercised at prices outside the daily

range possible for those securities" and that one of the defendants "had an unusually close business

and social relationship with Madoff, including sitting together on the Board of Trustees of Yeshiva

University, and, as a result, intimate access to BLMIS." 440 B.R. 243, 253 (Bankr. S.D.N.Y. 2010)

.

By contrast, the Amended Complaint does not make a single specific allegation about

MLI's knowledge at the time of the redemptions. To get around this, the Opposition makes

untimely, conclusory allegations that "MLI knew of red flags" and argues that the "Amended

Complaint 'suggests that [MLI] had access to information about BLMIS's fraud and failed to

concern itself with such things.'" Opp. at 37–38. But those allegations are nowhere in the Amended

Complaint and the Trustee is not entitled to add new allegations in his Opposition. *Wright*, 152

F.3d at 178 (plaintiff may not add allegations in opposition to motion to dismiss). The only facts

alleged in the Amended Complaint the Trustee relies on are communications by *other* Merrill

Lynch entities or that took place *after* Madoff's fraud was exposed. As MLI has explained, these

allegations say nothing of MLI's knowledge at the time of the redemptions. Mot. at 33–35.

Other cases cited by the Trustee are also inapposite. In *Dreier*, the Court determined the

good faith defense was not made out on the record, finding the "Complaint does not contain

allegations establishing good faith as a matter of law." *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr.

S.D.N.Y.                                                                                          2011)

. In *Picard v. ABN Ireland*, the observation that the good-faith defense was not apparent on the

face of the complaint was *dicta*, and the Court acknowledged the defense was "not appropriately

framed for appellate review." No. 20-cv-02586, 2022 WL 1304589, at *3–4 (S.D.N.Y. May 2,

2022)

.

### B.    MLI Received the Redemptions for Value.

As the Trustee's own allegations show, MLI is a net loser and received all of the
redemptions for value. Mot. at 5, 31–32. The Trustee now suggests he does not know the full extent
of MLI's deposits and withdrawals, despite detailing them in the original complaint and having
had access to Sentry's records for over a decade. Mot. at 5–6; Initial Compl. ¶¶ 120, 121. He urges
the Court to ignore the allegations in the original complaint. Opp. at 35. But the Court is entitled
to consider those allegations; the Trustee cannot pare back the allegations showing MLI was a net
loser in order to now plead ignorance on the matter. *Colliton v. Cravath, Swaine & Moore LLP*,
No. 09–CV–400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (accepting facts alleged in
an original complaint as true for a motion to dismiss where the plaintiff made a "transparent
attempt . . . to amend his pleading[s] in order to avoid a dispositive defense" where the subsequent
allegations are contradictory), *aff'd*, 356 Fed. Appx. 535 (2d Cir. 2009)
.

Further, the Trustee asserts that MLI relies only on cases concerning initial transferees
when stating that it received value for the transfers. Opp. at 34. But that is a distinction without a
difference; the Trustee does explain why the definition of value would change as between initial
and subsequent transferees.

### C.    The Good Faith Defense Is Particularly Warranted for the Preference Claims.

The Trustee does not dispute that, in the context of preference claims, the good faith
defense requires only that a defendant did not "knowingly aid[]" the debtor-transferor to defeat
equal distribution among creditors. *Irving Tr. Co. v. Chase Nat'l Bank*, 65 F.2d 409, 411 (2d Cir.
1933)

; Mot. at 40. Instead, the Trustee claims that as he seeks recovery under § 550, the inquiry notice standard applies. The Trustee accuses MLI of attempting to "recast" these subsequent transfer recovery claims under § 550 as preference claims under § 547. Not so.

The Trustee can only recover claims under § 550 that could be avoided under the Bankruptcy Code. *Ida Fishman*, 773 F.3d at 414 (Under SIPA, a trustee is empowered to clawback funds if they would have been customer property and the transfers could be avoided under the Bankruptcy Code). The Amended Complaint alleges that the initial transfers are avoidable as preference claims under § 547. Am. Compl. at 22. As explained in the Motion, the good faith defense applies to avoid recovery of preference claims under § 547. Because the preference-period transfers are not recoverable under § 547, they are not recoverable under § 550 as preference claims.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Motion, the Court should dismiss the Amended Complaint in its entirety.


Dated: January 11, 2023                    Respectfully submitted,

New York, New York                         O'MELVENY & MYERS LLP

                                           By: /s/ *Pamela A. Miller*
                                           Pamela A. Miller
                                           Amber Covucci
                                           O'MELVENY & MYERS LLP
                                           Seven Times Square
                                           New York, New York 10036
                                           Telephone: (212) 326-2000
                                           E-mail: pmiller@omm.com

                                           *Attorneys for Merrill Lynch International*