**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

Hearing Date: April 19, 2023
Hearing Time: 10:00 AM (EST)
Objection Deadline: April 5, 2023
Objection Time: 4:00 PM (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN PEERSTATE EQUITY FUND LP, GETTINGER MANAGEMENT LLC PROFIT SHARING PLAN, AND SMT INVESTORS LLC**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

JURISDICTION ........................................................................................................................2

STATEMENT OF FACTS .......................................................................................................2

A.   THE COMMENCEMENT OF THE SIPA LIQUIDATION PROCEEDING ...................2

B.   THE TRUSTEE'S ROLE UNDER SIPA AND THE CLAIMS PROCESS IN
     THE BLMIS LIQUIDATION PROCEEDING ...................................................................3

C.   PEERSTATE EQUITY FUND LP .......................................................................................3

D.   GETTINGER MANAGEMENT LLC PROFIT SHARING PLAN ..................................5

E.   SMT INVESTORS LLC .........................................................................................................6

F.   THE BLMIS ACCOUNT RECORDS ..................................................................................8

G.   THE CLAIMS .........................................................................................................................9

ARGUMENT ............................................................................................................................9

A.   THE STATUTORY DEFINITION OF "CUSTOMER" ....................................................9

B.   THE CUSTOMER DECISIONS IN THE BLMIS LIQUIDATION ...............................10

CONCLUSION .......................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.R. Baron Co., Inc.*,
  226 B.R. 790 (Bankr. S.D.N.Y. 1998)......................................................................................10

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010).........................................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011)......................................................................................10

*In re Bernard L. Madoff Inv. Sec. LLC*,
  592 B.R. 513 (Bankr. S.D.N.Y. 2018)......................................................................................10

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011)..................................................................................................2, 10

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003)......................................................................................10

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013).........................................................................................1, 10, 11

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002)........................................................................................3

*Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*,
  10. No. Civ. 8647 (CM), 2011 WL 1345152 (S.D.N.Y. Apr. 5, 2011) ...................................10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014)......................................................................................12

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
  No. 12 CIV. 1039 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012)................................11

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)...................................................................................................11

*SEC v. Madoff*,
  No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ..........................2

*SIPC v. Stratton Oakmont, Inc.*,
  229 B.R. 273 (Bankr. S.D.N.Y. 1999), *aff'd sub nom., Arford v. Miller (In re
  Stratton Oakmont, Inc.)*, 210 F.3d 420 (2d Cir. 2000).............................................................10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*),
   463 F.3d 125 (2d Cir. 2006)..................................................................................................10

**Statutes**

15 U.S.C. § 78eee(a)(4) ..................................................................................................................2

15 U.S.C. § 78eee(b)(2) ..................................................................................................................2

15 U.S.C. § 78eee(b)(3) ..................................................................................................................2

15 U.S.C. § 78eee(b)(4) ..................................................................................................................2

15 U.S.C. § 78fff-1(a) .....................................................................................................................3

15 U.S.C. § 78fff-3(a) .....................................................................................................................3

15 U.S.C. § 78*lll*(2).....................................................................................................................2, 3

15 U.S.C. § 78*lll*(2)(A)................................................................................................................10

15 U.S.C. § 78*lll*(2)(B)(i).............................................................................................................10

15 U.S.C. § 78*lll*(4).......................................................................................................................3

15 U.S.C. § 78*lll*(11).....................................................................................................................3

28 U.S.C. § 157...............................................................................................................................2

28 U.S.C. § 157(b) ..........................................................................................................................2

28 U.S.C. § 1334.............................................................................................................................2

**Rules**

Fed. R. Civ. P. 36(a)(3)...........................................................................................................4, 6, 7

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................................11

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the Trustee's determinations denying the customer claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who held interests in one of the following BLMIS account holders: Peerstate Equity Fund LP ("Peerstate"); Gettinger Management LLC Profit Sharing Plan ("Gettinger Profit Sharing Plan"); and SMT Investors, LLC ("SMT") and overrule their filed objections (ECF Nos. 5848, 3536, 3651).

## PRELIMINARY STATEMENT

The Objecting Claimants do not qualify as customers of BLMIS within the meaning of SIPA.[2] Instead, they invested with Peerstate, the Gettinger Profit Sharing Plan, or SMT, each of which had a BLMIS account, invested member assets with BLMIS, and filed its own claim with the Trustee.[3] The case is governed by the Second Circuit decision *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and the many related decisions in this SIPA liquidation proceeding, discussed *infra*, involving the question of who is a "customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] As discussed *infra*, the SMT objection relates to a duplicate customer claim that was submitted with its indirect customer claims, presenting a further basis for granting the Trustee's motion as to SMT's objection.

[3] These claims have been grouped together in this Motion because the Trustee believes that they represent the remaining objections in which objecting claimants raise "customer status" as part of their objection.

Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Decl."), disallowing their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[4]

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## STATEMENT OF FACTS

**A.    THE COMMENCEMENT OF THE SIPA LIQUIDATION PROCEEDING**

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

---

[4] The Trustee reserves all other bases for objections to the claims that are the subject of the Motion.

**B.     THE TRUSTEE'S ROLE UNDER SIPA AND THE CLAIMS PROCESS IN THE BLMIS LIQUIDATION PROCEEDING**

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, this Court entered a Claims Procedures Order. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, claimants may object to the Trustee's determination of a claim by filing an objection in this Court, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

**C.     PEERSTATE EQUITY FUND LP**

BLMIS Account number 1ZB295 was opened on or around October 29, 1996, in the name of Robert N. Getz. Sehgal Decl. Ex. 4 AMF00057416–25. All BLMIS account opening documents were signed by Robert N. Getz. *Id.* In 2004, the name on BLMIS Account number 1ZB295 was

3

changed to Peerstate Equity Fund at the request of Robert N. Getz. *Id.*, AMF00057353. Throughout the life of the account communications with BLMIS were by Robert N. Getz, before 2004 as the individual owner, and after November 2004, as the Managing Member of Robert N. Getz LLC, the general partner of Peerstate. Sehgal Decl. Ex. 4, AMF00057371, AMF00057331, AMF00057333. Since 2004, Peerstate's BLMIS investments were held in a BLMIS account in Peerstate's name and under Peerstate's own tax identification number. *Id.* All withdrawal requests since 2004 were from Robert N. Getz and were wired to Peerstate's bank account. *See, e.g.*, Sehgal Decl. Ex. 4, AMF00057347–52.

Peerstate is a Delaware limited partnership governed by the Delaware Revised Uniform Limited Partnership Act and its own partnership agreement. *See* Declaration of Stephanie A. Ackerman ("Ackerman Decl.") Ex. 8. Under Article III of the partnership agreement, only the General Partner, Robert N. Getz, LLC, had the right to manage the partnership, enter into contracts on its behalf, open accounts, invest the partnership's assets, and delegate certain investment functions. Ackerman Decl. Ex. 8, Partnership Agreement, Article III. The Peerstate Objecting Claimants sent their money to Peerstate as capital contributions. *See* Ackerman Decl. Ex. 8, Partnership Agreement, Article VI.

Discovery requests were sent to the Peerstate Objecting Claimants. Through their responses the Peerstate Objecting Claimants admitted (among other things) that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationship to Peerstate. *See generally* Ackerman Decl. ¶¶ 12-15, Exs. 6, 7; *see also* FED. R. CIV. P. 36(a)(3). Further, the Objecting Claimants confirmed that all deposits were sent to Peerstate and not directly to BLMIS. *Id.*

4

Peerstate filed a customer claim for its account. Sehgal Decl. ¶¶ 13, 17, Ex. 5. The Trustee denied the claim in its entirety because, based on the Trustee's analysis, the amount of money that Peerstate withdrew from the account was greater than the amount that was deposited, making the Peerstate a "net winner" with respect to this account. Sehgal Decl. ¶ 15. Peerstate's claim is not before the Court on this Motion.

**D.    GETTINGER MANAGEMENT LLC PROFIT SHARING PLAN**

BLMIS Account number 1G0386 was opened on or around June 21, 2007, in the name of Gettinger Profit Sharing Plan. Sehgal Decl., Ex. 7, AMF00188942–46. All BLMIS account opening documents were signed by Robert S. Gettinger as Trustee and all communications with BLMIS were by or on behalf of Robert S. Gettinger. *Id.*, AMF00188936, 39–40. All withdrawal requests on behalf of Gettinger Profit Sharing Plan were from Robert S. Gettinger as Trustee and were sent to the address of record for the Gettinger Profit Sharing Plan. *See, e.g.*, Sehgal Decl. Ex. 7, AMF00188937–38.

Gettinger Management, LLC adopted the Gettinger Profit Sharing Plan by corporate resolution on January 1, 2007, as a common trust fund for the benefit of the Gettinger Management, LLC employees. *See id.*, AMF00188939–40, AMF00189027, AMF00188956. Gettinger Management, LLC was registered as a New York limited liability company on January 10, 2007. *Id.* AMF00188946. Robert S. Gettinger signed the resolution and plan documents as an officer of Gettinger Management, LLC and as Trustee of the Getting Profit Sharing Plan. *Id.*, AMF00189027. As an officer of Gettinger Management, LLC, Robert S. Gettinger was authorized to take any actions necessary on behalf of the Gettinger Profit Sharing Plan. *Id.*

On September 5, 2014, the Trustee served discovery requests on the Gettinger Profit Sharing Plan Objecting Claimant. Ackerman Decl. Ex. 1. The Gettinger Profit Sharing Plan Objecting Claimant failed to respond to the Trustee's discovery requests. By failing to respond to

5

the requests for admissions, the Gettinger Profit Sharing Plan Objecting Claimant admitted (among other things) that he did not have an account in his name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that his only relationship to BLMIS existed by way of his relationship to the Gettinger Profit Sharing Plan. *See generally* Ackerman Decl. ¶¶ 8, 10, Ex. 1; *see also* FED. R. CIV. P. 36(a)(3).

The Gettinger Profit Sharing Plan filed a customer claim for its account with BLMIS. The Trustee denied the claim in its entirety because, based on the Trustee's analysis, the amount of money that Gettinger Profit Sharing Plan withdrew from the account was greater than the amount that was deposited, making the Gettinger Profit Sharing Plan a "net winner" with respect to this account. Thus, a determination letter was sent to Gettinger Profit Sharing Plan denying its customer claim. The Gettinger Profit Sharing Plan filed an objection to the Trustee's determination, ECF No. 2900 (Aug. 25, 2010), which it subsequently withdrew on October 12, 2017. ECF No. 16754. Gettinger Profit Sharing Plan's claim is not before the Court on this Motion.

E.  **SMT INVESTORS LLC**

BLMIS Account number 1CM827 was opened in the name of SMT, on or around September 19, 2003, by Lary S. Wolf as its Manager. Sehgal Decl., Ex. 10, AMF00275883–91. All BLMIS account opening documents were signed by Lary S. Wolf and all communications with BLMIS were by David R. Greenbaum or Lary S. Wolf as Managers. *See id.*, AMF00275866–72. All withdrawal requests were written on SMT letterhead and were submitted by David R. Greenbaum, *id.*, AMF00275866–68, 70–72, 75–76, 78, or Lary S. Wolf. *Id.*, AMF00275869, 73. In all instances, the withdrawals were made payable to SMT and sent to the address of record for SMT. *See generally id.*

6

SMT was registered as a Delaware limited liability company on December 27, 2001. Sehgal Decl., Ex. 10, AMF00275892–93. Under Article II of the Limited Liability Company Agreement of SMT, management authority for SMT was vested solely in the Managers, Lary S. Wolf, David R. Greenbaum, and Arnold Hodas. Ackerman Decl. Ex. 9, MWPTAP01136514. Decisions were to be made by a majority vote of the Managers, and any one of the Manager's signatures was sufficient to bind the company. *Id.*

On August 15, 2013, the Trustee served discovery requests on Mr. Lary S. Wolf on behalf of the SMT Objecting Claimants. No responses were received. By failing to respond, the SMT Objecting Claimants admit, among other things, that they did not have an account in their name at BLMIS, never deposited cash or securities with BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that their only relationship to BLMIS existed by way of their relationships to SMT. *See generally* Ackerman Decl. ¶ 9, Ex. 2; *see also* FED. R. CIV. P. 36(a)(3).

SMT submitted two customer claims for its account. Sehgal Decl. Exs. 11, 14. The Trustee allowed claim number 003139, filed on February 19, 2009, because, based on the Trustee's analysis, the amount of money that SMT withdrew from the account was less than the amount that was deposited, making SMT a "net loser" with respect to this account. Thus, a determination letter allowing claim number 003139 in the amount of $5,742,997.27 was sent to SMT on June 23, 2009. Sehgal Decl. Ex. 12, MWPTAP01000382. SMT's claim number 003139 is not before the Court on this Motion.

On June 29, 2009, Lary S. Wolf submitted claims on behalf of SMT's members as "protective claims . . . filed in order to preserve any rights the members of SMT may have with respect to the outcome of litigation filed related to the rights of members of entities to recover

7

separate amounts from SIPC." *See, e.g.*, Sehgal Decl., Ex. 13, MWPTAP00539663. Included with these indirect customer claims was an additional customer claim on behalf of SMT. *Id.* The Trustee denied SMT's second customer claim number 015843 as an indirect, protective claim because it was filed after customer claim number 003139 was allowed and was related to the indirect SMT member claims.[5] SMT disagrees with the Trustee's denial of customer claim number 015843 but provides no support for a finding that a second customer claim or claims on behalf of its members should be allowed. As either an indirect or duplicate claim, SMT's claim number 015843 was properly denied.

F.  **THE BLMIS ACCOUNT RECORDS**

Peerstate, as a limited partnership, and Gettinger Profit Sharing Plan and SMT, as limited liability companies, each maintained an account in its own name with BLMIS. The Objecting Claimants did not. Sehgal Decl., ¶ 27, Exs. 1-3. The books and records of BLMIS reflect money deposited or withdrawn by and on behalf of Peerstate, Gettinger Profit Sharing Plan, and SMT, not by the Objecting Claimants individually. *See* Sehgal Decl., ¶ 27, 16, 19, 22, Exs. 4, 7, 10. All the Objecting Claimants admit that BLMIS sent account statements and related communications to Peerstate, Gettinger Profit Sharing Plan, and SMT, not the Objecting Claimants.

Because Peerstate, Gettinger Profit Sharing Plan, and SMT each maintained an account at BLMIS, and made deposits into and withdrawals from that account, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for that account. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants. They also do not show what amounts individual Objecting

---

[5] The SMT indirect claimants' objections were overruled in a prior motion. *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016).

8

Claimants invested in, or withdrew from, Peerstate, Gettinger Profit Sharing Plan, and SMT. *See id*. It was each of Peerstate, Gettinger Profit Sharing Plan, and SMT that had the right to demand, on behalf of themselves, return of the property entrusted to BLMIS for its account, and each of Peerstate, Gettinger Profit Sharing Plan, and SMT that is accordingly entitled to a customer claim to the extent of its net equity.

### G. THE CLAIMS

The claims at issue in this Motion involve interests in Peerstate, Gettinger Profit Sharing Plan, and SMT. Sehgal Decl. ¶¶ 10-12, Exs. 1-3. The Objecting Claimants, the three (3) claims filed by them, and the objections to determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. The Trustee denied their claims because they lacked BLMIS accounts, were not customers of BLMIS, or in the case of SMT, because the indirect claim was a duplicate claim. Sehgal Decl. ¶ 11. Collectively, the Objecting Claimants filed three (3) docketed objections to the Trustee's determination of their claims. Sehgal Decl. ¶¶ 10-12, Exs. 1-3. This Motion addresses all objections to the determination of the specified claims by Objecting Claimants who are identified on Exhibit 2 of the Sehgal Declaration.

Since receiving the three (3) docketed objections to the claim determinations, the Trustee served discovery requests on the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. Only one of the Objecting Claimants responded. *See* Ackerman Decl. ¶¶ 8, 9, 15, Exs. 1, 2, 6, 7.

### ARGUMENT

### A. THE STATUTORY DEFINITION OF "CUSTOMER"

To qualify as a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker

9

or dealer from or for the securities accounts of such person[.]" SIPA § 78*lll*(2)(A). A customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities[.]" SIPA § 78*lll*(2)(B)(i).

The Second Circuit has held that SIPA's "customer" definition should be interpreted narrowly. *Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*), 463 F.3d 125, 127 (2d Cir. 2006) (internal citation omitted); *accord Kruse*, 708 F.3d at 426. The claimant bears the burden to establish its customer status, a burden that "is not easily met." *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (quoting *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)). The customer also bears the burden of proving the amount of his or her claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 481 (Bankr. S.D.N.Y. 2018) (citing *Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*, 10. No. Civ. 8647 (CM), 2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998)). Because an investor can be a customer for certain transactions but not others, a claimant must prove that it is a customer on a transaction-by-transaction basis. *See SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999), *aff'd sub nom., Arford v. Miller, (In re Stratton Oakmont, Inc.)*, 210 F.3d 420 (2d Cir. 2000).

**B.    THE CUSTOMER DECISIONS IN THE BLMIS LIQUIDATION**

In *Kruse*, the Second Circuit considered whether claimants who had invested in limited partnerships, which in turn had invested in the partnerships' own BLMIS accounts, qualified as BLMIS's customers under SIPA. *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 427 (2d Cir. 2013). The court held that the claimants "never entrusted their cash or securities to BLMIS" when they invested in the partnerships. *Id.* at 428. Therefore, the claimants had failed to satisfy the "critical aspect of the 'customer' definition" regardless of their intention to invest with BLMIS. *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d

10

at 236). Because the money sent to BLMIS belonged to the account holders, not the individual claimants, the claimants could not show entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

The Second Circuit further determined that the claimants failed to demonstrate other key indicia of customer status in their dealings (or lack of dealings) with BLMIS. The evidence showed that the claimants: (i) had no direct financial relationship with BLMIS; (ii) held no property interest in the funds invested directly with BLMIS; (iii) did not hold securities accounts with BLMIS; (iv) lacked control over the account holders' investments with BLMIS; and (v) were not identified or otherwise reflected in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976)). For these reasons, the court held that the claimants had failed to sustain their burden of proving they were BLMIS's customers. *Id.* at 427. This Court and the District Court have held likewise. [6] *See Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12 CIV. 1039 (DLC), 2012 WL 3042986, at *13-14 (S.D.N.Y. July

---

[6] During this SIPA liquidation proceeding, this Court has issued numerous unpublished orders that have addressed whether certain investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors themselves did not have individual accounts with BLMIS. In each order, the court determined that those claimants could not be treated as customers of BLMIS. *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: the David Shapiro Nominee, David Shapiro Nominee #2 and David Shapiro Nominee #3 Partnerships, ECF No. 16942 (November 22, 2017); the Jennie Brett and David Moskowitz Accounts, ECF No. 16812 (October 20, 2017); the Schupak Account, ECF No. 16641 (Sept. 18, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin,

25, 2012) (holding that the claimants did not qualify as customers under SIPA because they neither held accounts in their own names nor deposited their own cash directly with BLMIS); *In re Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB), (Bankr. S.D.N.Y. Feb. 15, 2015) (ECF No. 9506 at 27-35) (holding that indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with BLMIS and identification of the alleged customer in BLMIS's books and records); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (holding that to qualify as a customer of BLMIS under SIPA, the party seeking customer status "must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name.").

The Objecting Claimants have failed to meet their burden to demonstrate customer status. Each lacked a direct financial relationship with BLMIS, control over the account holders' investments with BLMIS, and none are identifiable from BLMIS's books and records. The SMT Objecting Claimant's objection argues for customer status on behalf of its members through a duplicate customer claim. As either an indirect claim or as a duplicate customer claim its denial was proper. As such, the objections should be overruled.

---

Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); and S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015).

12

## **CONCLUSION**

For all of the foregoing reasons, the Court should affirm the Trustee's determination denying the claims of the three Objecting Claimants, overrule their objections, including the objections to the Trustee's denial of the SMT duplicate customer claim raising customer status of its partners, disallow the Objecting Claimants' claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 10, 2023

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*