**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 11-02761 (CGM) |
| Plaintiff, | |
| v. | |
| KBC INVESTMENTS LIMITED, | |
| Defendant. | |

**KBC INVESTMENTS LIMITED'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**ITS MOTION TO DISMISS THE TRUSTEE'S AMENDED COMPLAINT**

SIDLEY AUSTIN LLP
John J. Kuster
Martin B. Jackson
Andrew P. Propps
Danica L. Brown
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for Defendant KBC Investments Limited*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................3

I.      THE COURT LACKS PERSONAL JURISDICTION OVER KBC INVESTMENTS .....3

      A.      KBC Investments' Offshore Business Activities in Which It Provided
            Funding to Offshore Clients for Investments in Offshore Hedge Funds Do
            Not Show Purposeful Availment in New York ......................................................4

            1.      KBC Investments' Activities Related to the Relevant Transfers
                  Distinguish KBC Investments from Defendants in Other Feeder
                  Fund Cases ................................................................................................4

            2.      KBC Investments' U.S. Correspondent Bank Accounts for U.S.
                  Dollar Denominated Transactions Were Not Used for the Harley
                  Transfers ....................................................................................................8

            3.      KBC Investments' Corporate Relationship with Affiliates Does
                  Not Establish Purposeful Availment...........................................................13

      B.      The Exercise of Personal Jurisdiction Over KBC Investments Would Be
            Unreasonable......................................................................................................15

II.     THE RELATION BACK DOCTRINE CANNOT SAVE THE TRUSTEE'S TIME-
      BARRED CLAIMS TO RECOVER SUBSEQUENT TRANSFERS THAT WERE
      FIRST IDENTIFIED IN THE AMENDED COMPLAINT ..............................................17

CONCLUSION........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009) ................................................................. 17

*Bank of Am. Nat'l Ass'n v. Sopher*,
    No. 10 CIV. 8870 (LTS) (KNF), 2011 WL 2419872 (S.D.N.Y. June 8, 2011) .................... 14

*Buchwald Cap. Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 447 B.R. 170 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) ............................................ 17

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................... 15

*Dandong v. Pinnacle Performance Ltd*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) .................................................................. 10

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ................. 10

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019), *aff'd in part, vacated in part on other grounds*, 40 F.4th 56 (2d Cir. 2022) ................................................................. 9, 12

*Goldberg v. Halbert (In re Woodbridge Grp. of Companies, LLC)*,
    Case No. 17-12560 (JKS), Adv. Pro. No. 19-51027 (JKS), 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021) ................................................................................. 19

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................. 12

*Hill v. Oria (In re Juliet Homes, LP)*,
    No. 07-36424, Adv. Pro. No. 09-03429, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) ...................................................................................................... 19

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ................. 10

*In re Chaus Sec. Litig.*,
    801 F. Supp. 1257 (S.D.N.Y. 1992) ...................................................................... 19

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
    64 F. Supp. 3d 494 (S.D.N.Y. 2014) ..................................................................... 13

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,
    582 B.R. 64 *amended on recons. on other grounds*, 2018 WL 3031094
    (Bankr. S.D.N.Y. June 15, 2018) .........................................................................15

*Leema Enters., Inc. v. Willi*,
    575 F. Supp. 1533 (S.D.N.Y. 1983).......................................................................11

*Licci v. Lebanese Can. Bank*,
    20 N.Y.3d 327 (2012) ...........................................................................................11

*McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220, 223 (1957)......................................................................................15

*Metzeler v. Bouchard Transp. Co. (In re Metzeler)*,
    66 B.R. 977 (Bankr. S.D.N.Y. 1986) ..............................................................17, 18

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
    No. 13-22050 (RDD), Adv. Pro. No. 15-08207, 2016 WL 6155929 (Bankr.
    S.D.N.Y. Oct. 21, 2016).........................................................................................11

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahr. Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)................................................................................10

*Picard v. Bank Julius Baer & Co. Ltd.*,
    No. 08-01789 (CGM), Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520
    (Bankr. S.D.N.Y. Dec. 15, 2022) ..........................................................................18

*Picard v. Banque Lombard Odier & Cie SA*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
    30, 2022) ("*Lombard I*"), *leave to appeal denied sub nom. In re Bernard L.
    Madoff Inv. Secs. LLC*, No. 22 Civ. 6561 (LGS), 2023 WL 395225 (S.D.N.Y.
    Jan. 25, 2023) ("*Lombard II*") ...............................................................................5

*Picard v. BNP Paribas S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................................17

*Picard v. Bureau of Lab. Ins.*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012).............................................................5, 6, 7

*Picard v. The Est. (Succession) of Doris Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015)...................................................................12

*Picard v. Fairfield Inv. Fund*,
    No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479
    (Bankr. S.D.N.Y. Aug. 6, 2021) ...........................................................................17

*Picard v. JP Morgan Chase & Co.*,
Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909
(Bankr. S.D.N.Y. Oct. 10, 2014) ............................................................................6

*Picard v. Kookmin Bank*,
Adv. Pro. No. 12-01194 (CGM), 2022 WL 17574763, (Bankr. S.D.N.Y. Dec.
9, 2022) ...................................................................................................................6

*Picard v. Korea Exch. Bank*,
Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *3 (Bankr. S.D.N.Y.
Sept. 21, 2022) ........................................................................................................6

*Picard v. Multi-Strategy Fund Ltd.*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) ...............................................................5, 6, 7

*Picard v. Peter B. Madoff*,
468 B.R. 620 (Bankr. S.D.N.Y. 2012) ..................................................................17

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
Case No. 08-01789 (CGM), Adv. No. 12-01565 (CGM), 2023 WL 118787
(Bankr. S.D.N.Y. Jan. 6, 2023) .............................................................................19

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ...................................................................11

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................................................7

## Other Authorities

Rule 15(c) ...........................................................................................................................17, 18

iv

Defendant KBC Investments Limited ("KBC Investments") respectfully submits this reply memorandum of law in further support of its motion to dismiss ("Motion to Dismiss") the Amended Complaint of Irving Picard ("Trustee"), Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and in response to the Trustee's February 3, 2023 opposition to KBC Investments' Motion to Dismiss ("Opposition" or "Opp.").

## PRELIMINARY STATEMENT

In his Opposition, the Trustee cobbles together disparate facts, cites distinguishable case law, and impermissibly attributes actions of corporate affiliates to KBC Investments in an effort to make the required showing that KBC Investments is subject to personal jurisdiction in this adversary proceeding. The Trustee's arguments fail. As detailed in KBC Investments' Motion to Dismiss, the dispositive facts that reflect the "totality of the circumstances" and defeat personal jurisdiction remain—KBC Investments did not (i) invest in BLMIS, (ii) earn investment returns from client investments in offshore hedge fund Harley International (Cayman) Limited ("Harley"), (iii) direct clients' investments in or redemptions from Harley, (iv) use U.S. bank accounts for the alleged transfers in the Amended Complaint ("Harley Transfers"), or (v) control or direct the acts of corporate affiliates or others in relation to their alleged contacts with New York.

Notwithstanding the indisputable and undisputed evidence establishing that Fairfax Fund Limited ("Fairfax"), one of KBC Investments' offshore investment clients, directed the investments in Harley that were held by offshore custodian Citco Global Custody N.V. ("Citco Custody") in an offshore custody account established on behalf of Fairfax, the Trustee insists that this Court should exercise personal jurisdiction over KBC Investments—an offshore entity that did not invest in BLMIS or feeder fund Harley and did not direct client investments in Harley. However, the Trustee's jurisdictional allegations are all impermissibly based upon the

jurisdictional contacts of Fairfax, Citco Custody and KBC Investments' corporate affiliates, not those of KBC Investments.

First, in an intentional and invalid effort to attribute actions of Fairfax to KBC Investments for jurisdictional purposes, the Trustee repeatedly misuses the term "investor" when referring to KBC Investments, rather than Fairfax (the actual investor that directed investments in Harley and received the Harley redemption proceeds). While the Trustee justifies his allegations and this adversary proceeding on the basis that he is seeking to recover alleged "stolen customer property" (Opp. at 3) for investors that actually chose to invest in BLMIS in New York, the Trustee misses the mark by taking aim at KBC Investments in this forum for offshore transactions and investments in Harley that were directed by Fairfax for its own benefit, not for KBC Investments.[1]

Second, the Trustee's allegations concerning U.S. bank accounts that were allegedly involved in the Harley Transfers were U.S. bank accounts of other entities and cannot be attributed to KBC Investments. Indeed, if the alleged use of U.S. bank accounts of other entities were sufficient to establish personal jurisdiction, then the scope of personal jurisdiction argued for by the Trustee would reach each and every entity that has any involvement in U.S. dollar denominated transactions that require clearance through a correspondent bank in the United States. That is not the law.

Third, the Trustee also makes numerous conclusory allegations and cites a few isolated documents regarding KBC Investments' affiliates to cast a personal jurisdiction net over KBC Investments. That effort too fails, because the Trustee has failed to step forward with any non-

---

[1] The Trustee's references to Harley's Confidential Explanatory Memorandum (the "PPM"), Articles of Association and Memorandum of Association (Opp. at 4–5) are unavailing because KBC Investments was not a signatory to any of those agreements, nor were they issued to KBC Investments because KBC Investments was not the "investor." KBC Investments did not direct any decision with respect to Harley – it was KBC Investment's client, Fairfax.

conclusory allegations or evidence showing that any activities of its corporate affiliates in New York could be attributed to KBC Investments to form the basis for establishing personal jurisdiction.  If the contacts of corporate affiliates could be so easily attributed to a foreign entity that has an affiliate in the United States, then every entity with a corporate affiliate in New York would be subject to jurisdiction here.  Once again, the Trustee's efforts to establish personal jurisdiction bend the law beyond its breaking point.

For all of the foregoing reasons, those set forth in KBC Investments' Motion to Dismiss, and those further detailed in this Reply, the Trustee's Amended Complaint should be dismissed in its entirety with prejudice because this Court lacks personal jurisdiction over KBC Investments.  The Trustee's claims for newly alleged transfers that occurred more than 14 years ago and were first identified in the Amended Complaint should also be dismissed for the independent reason that they are untimely.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER KBC INVESTMENTS

The Amended Complaint's conclusory allegations and the Trustee's Opposition, including the Declaration of Eric R. Fish ("Fish Declaration") and accompanying exhibits, are insufficient to support a finding of specific personal jurisdiction over KBC Investments because they do not show that (i) KBC Investments purposefully availed itself of the privilege of conducting activities within New York in relation to the Trustee's claims, thereby invoking the benefits and protections of its laws, or (ii) the exercise of jurisdiction is reasonable under the particular circumstances related to the transactions that are the subject of this adversary proceeding.  Notwithstanding the arguments in the Opposition, neither the alleged facts nor the

evidence submitted with the Trustee's Opposition are sufficient to show sufficient purposeful availment for the reasonable exercise of personal jurisdiction over KBC Investments.[2]

### A.    KBC Investments' Offshore Business Activities in Which It Provided Funding to Offshore Clients for Investments in Offshore Hedge Funds Do Not Show Purposeful Availment in New York

The Trustee's Opposition does not rectify the lack of non-conclusory allegations in the Amended Complaint to support a finding that KBC Investments purposefully availed itself of the privilege of conducting activities in New York related to the alleged fraudulent transfers for several reasons.  First, KBC Investments' client, not KBC Investments, directed the Harley Transfers.  This alone distinguishes many of the Court's decisions in which it found personal jurisdiction over other defendants that directed investments towards New York with the intent to profit from those investments, including soliciting or enticing investments in BLMIS feeder funds.  Second, the identification of U.S. correspondent bank accounts of other entities that were not used in the Harley Transfers *does not* establish purposeful availment.  Finally, KBC Investments' corporate affiliates' contacts with New York cannot be attributed to KBC Investments because KBC Investments did not control those affiliates or their activities in New York.

### 1.    KBC Investments' Activities Related to the Relevant Transfers Distinguish KBC Investments from Defendants in Other Feeder Fund Cases

In an effort to sweep this adversary proceeding within the scope of this Court's denial of dozens of other motions to dismiss on jurisdictional grounds in which the Trustee alleged that other defendants knew that investments would be made in BLMIS through feeder funds, the

---

[2] Further and consistent with the standard for ruling on whether a court can exercise personal jurisdiction over a defendant, the Trustee's cases and analysis regarding the basis for jurisdiction are not materially different from what is set forth by KBC Investments in the Motion. *Compare* Mot. at 8–10, *with* Opp. at 6–8.

Trustee erroneously asserts that "KBC intentionally invested with BLMIS through Harley—a known BLMIS feeder." Opp. at 9. Contrary to the Trustee's assertion, the Declaration of Jatin Tosar ("Tosar Declaration") makes clear that KBC Investments did not intentionally invest in BLMIS through Harley:

> KBC Investments did not provide asset management services, advisory services or any other discretionary investment services to [offshore] Clients. Instead, <u>KBC Investments provided Clients with non-recourse funding</u> collateralized by a portfolio of offshore hedge fund investments selected by the Clients themselves without any advice from KBC Investments.
>
> * * *
>
> KBC Investments did not make any direct investment in any offshore hedge funds for its own benefit and <u>all of its Clients' offshore investments (both subscriptions and redemptions) were directed by its Clients</u>.
>
> * * *
>
> With respect to all of Fairfax's investments . . . in Harley . . . KBC Investments <u>did not have custody of the investments</u>, did not provide any investment advice, did not exercise investment discretion, <u>did not receive any profits related to the performance of the investments, and only provided purchase and redemption instructions to Custodians for Fairfax when directed to do so by Fairfax representatives</u>.

Tosar Decl. ¶¶ 5, 7, 23 (emphasis added).

In addition to Mr. Tosar's sworn evidence, Mr. Tosar also attaches the trade tickets and trade instructions from KBC Investments' client Fairfax that indisputably establish that Fairfax was the investor that made the investment decisions concerning the Harley Transfers. Tosar Decl. Exs. 5–15. In light of the documentary proof and unrebutted evidence presented in the Tosar Declaration on these points, the Trustee's unsupported and conclusory allegations cannot stand.

Importantly, the Trustee's reliance on this Court's recent decisions in *BLI*, *Multi-Strategy*, *Korea Exchange Bank*, *Kookmin Bank*, and *Lombard*,[3] is misplaced because none of those cases involved a defendant like KBC Investments who *did not* direct investments towards BLMIS in New York with the intent to profit from those investments, *did not* solicit or entice investments in BLMIS feeder funds from its clients, *did not* choose to buy into BLMIS feeder funds, *did not* profit related to the performance of its clients' investments in BLMIS feeder funds (*id.* ¶¶ 5, 7, 23), and "did not execute any subscription agreements with Harley or have custody of any investments in Harley" (*id.* ¶ 20).[4]

More specifically, while the Trustee asserts that this Court should treat KBC Investments like the defendants in *BLI* and *Multi-Strategy* with respect to assessing personal jurisdiction because those defendants allegedly invested in the BLMIS feeder funds "with the specific goal of having funds invested in BLMIS in New York, with [the] intent to profit therefrom,"[5] KBC Investments did not take such similar actions or have such goals or intentions. For example, the defendant in *BLI* was a foreign government agency empowered to make strategic investments for its own financial benefit and it performed substantial due diligence on Fairfield and its investment strategies. *See BLI*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012). Similarly, the *Multi-*

---

[3] *See Picard v. Bureau of Lab. Ins.*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("BLI"); *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 87 (Bankr. S.D.N.Y. 2022); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard I*"), *leave to appeal denied sub nom. In re Bernard L. Madoff Inv. Secs. LLC*, No. 22 Civ. 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ("*Lombard II*"); *Picard v. Korea Exch. Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *3 (Bankr. S.D.N.Y. Sept. 21, 2022); *Picard v. Kookmin Bank*, Adv. Pro. No. 12-01194 (CGM), 2022 WL 17574763, (Bankr. S.D.N.Y. Dec. 9, 2022).

[4] The Trustee's characterization of *Picard v. JP Morgan Chase & Co.*, Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) as representative of the personal jurisdiction holdings by courts in this liquidation proceeding is completely misleading. The quoted language the Trustee cites is dicta from an opinion of the court regarding a contract interpretation dispute. In ruling against one party, the court made the statement the Trustee cites as a means of rejecting the losing parties' assertion that the Trustee's argument raised personal jurisdiction issues. The issue of personal jurisdiction was never before the Court or decided by the Court.

[5] Opp. at 10 (quoting *BLI*, 480 B.R. at 506).

*Strategy* defendant invested its own funds in Fairfield, performed extensive due diligence on the investment, and knew that its funds were ultimately invested with BLMIS. *See Multi-Strategy Fund Ltd.*, 641 B.R. 78, 87 (Bankr. S.D.N.Y. 2022). In stark contrast, KBC Investments did not invest any of its own funds in Harley or other BLMIS feeder funds, did not have investment discretion, and did not provide investment advice to its clients concerning their investment choices. Tosar Decl. ¶¶ 5, 6, 20, 22. Equally important, KBC Investments did not profit off the performance of its clients' investment in Harley as the Trustee asserts and only received a nominal margin interest for the funding it provided. *Id.* ¶¶ 5, 7, 23. These controlling facts show KBC Investments was nothing like the defendants in *BLI* and *Multi-Strategy*, and that a separate jurisdictional analysis with respect to KBC Investments is necessary.[6]

 Additionally, KBC Investments did not have the same forum contacts the Court found in *Kookmin* and *Korea Exchange Bank*. In *Kookmin*, the defendant signed Fairfax subscription agreements, which provided that funds would be sent and received through New York banks, and signed on to various placement memoranda that disclosed BLMIS's role in Fairfield investments. *Kookmin*, 2022 WL 17574763, at *4. Similarly, in *Korea Exchange Bank*, the defendant entered into a subscription agreement that had a provision consenting to New York jurisdiction, sent a copy of the subscription agreement to Fairfield Greenwich Group's ("FGG") New York City office, wired funds to Fairfield Sentry through a bank in New York, and received funds through its own bank account in New York. *Korea Exch. Bank*, 2022 WL 4371908, at 3.[7]

---

[6] Admittedly, the Trustee is correct that this Court held that *Walden v. Fiore*, 571 U.S. 277 (2014) was of "no assistance" to the defendant in *Multi-Strategy*. Opp. at 11. However, unlike KBC Investments, the defendant in *Multi-Strategy* was physically present in New York and explicitly directed its account to BLMIS through a broker. *Multi-Strategy*, 641 B.R. at 87. Thus, for the reasons exhaustively set forth herein, *Walden*'s requirement that KBC Investments must have created its purported contacts with New York itself remains dispositive of this action.

[7] *See also Lombard I*, 2022 WL 2387523, at *4 (finding dispositive the defendant's acts of sending its subscription agreement to FGG's New York Office and wiring funds to Fairfield Sentry and Sigma through a New York account).

Here, in contrast to *Kookmin* and *Korea Exchange Bank*, KBC Investments did not sign Harley subscription agreements for Fairfax's investments in Harley and did not direct the use of any U.S. bank account or use its Deposit Trust Company ("DTC") Participation Account for any transfers related to the Harley Transfers.  Tosar Decl. ¶¶ 20, 22.

Furthermore, while the Trustee attempts to equate KBC Investments' actions to those of the defendant in *Lombard I* and *II* (Opp. at 13), the Trustee undermines his own argument by completely evading the fact that defendant Banque Lombard "intended to invest in . . . BLMIS, because of the value proposition offered by Mr. Madoff."  *Lombard II*, 2023 WL 395225, at *4. Here, the Trustee cannot point to any evidence that shows KBC Investments was influenced by Bernie Madoff or that KBC Investments made the decision to invest in BLMIS based upon the value proposition it offered because Fairfax, not KBC Investments, directed the investments in Harley.  As the Trustee recognizes, the Trustee's allegations must show that KBC Investments' "own intentional contacts with New York create[d] the requisite connection."  Opp. at 11; *Lombard II*, 2023 WL 395225, at *4.  Here, they simply do not.

In sum, the facts distinguishing KBC Investments from the defendants in all of the cases relied upon by the Trustee require the Court to engage in a separate analysis, which should result in a different outcome.  Therefore, the cases that the Trustee argues are dispositive do not require the Court to find personal jurisdiction over KBC Investments in this proceeding and the Court should dismiss this action in its entirety for lack of personal jurisdiction.

### 2.    KBC Investments' U.S. Correspondent Bank Accounts for U.S. Dollar Denominated Transactions Were Not Used for the Harley Transfers

The Trustee asserts that "[t]his Court also has jurisdiction over KBC because it purposefully used the New York banking system in investing with and receiving redemptions from Harley."  Opp. at 13.  In support of his position, the Trustee cites paragraphs 64–65 of the

Amended Complaint and Exhibits F, G, and H of the Fish Declaration as the alleged evidentiary

support that meet the required legal standard.  *Id.*  These sources do not show purposeful

availment related to the Harley Transfers.  That is because none of the Trustee's specific

allegations or evidence refutes KBC Investments' evidence that KBC Investments "did not use

any U.S. bank account or its DTC Participation Account for any transfers related to Fairfax's

redemptions from Harley."  Tosar Decl. ¶ 22.  In fact, Exhibits F, G, and H of the Fish

Declaration conclusively show that the redemption transfers involved Harley's Administrator

Fortis Prime Solutions in Isle of Man and Citco Custody's Netherland and Dublin Branches with

only an HSBC Bank USA correspondent bank account for U.S. dollar denominated transactions

belonging to "CITCO BANK NEDERLAND N.V.," *not KBC Investments*.  *See* Fish Decl. Exs.

F–H.  The transaction documents show that no U.S. bank account belonging to KBC Investments

was used in the alleged transfers.  This is also confirmed by the express allegations in the

Amended Complaint that similarly confirm that it was KBC Investments' "custodian's" U.S.

bank account that belonged to Citco Custody (not KBC Investments) which was used in the

alleged transfers: "KBC Investments used its custodian's [Citco Custody's] HSBC Bank USA

account in New York to receive transfers from Harley."  Am. Compl. ¶ 65.  As the Trustee

knows, KBC Investments could not direct Citco Custody's use of a U.S. dollar denominated

account for clearing U.S. dollar transactions and cannot refute that "[a]ny use of correspondent

bank accounts by Fortis, as administrator for Harley, or Citco Custody in relation to the

[transfers alleged in the Amended Complaint] were unknown to KBC Investments."  Tosar Decl.

¶¶ 30, 36, 42.[8]

---

[8] Even assuming, arguendo, that KBC Investments' lack of ownership over the Citco Custody correspondent account
is not dispositive, the jurisdictional analysis regarding U.S. bank accounts, as posited in *Esso Expl. & Prod. Nigeria
Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323 (S.D.N.Y. 2019), *aff'd in part, vacated in part on other
grounds*, 40 F.4th 56 (2d Cir. 2022) on which the Trustee relies, is whether the defendant "made purposeful use" of

Given these indisputable facts, the cases cited by the Trustee in his Opposition concerning maintenance and use of U.S. bank accounts for the transactions forming the basis of the relevant claims in other litigations are inapposite and unavailing. Opp. at 13–16. First, the decisions in *Arcapita* and *Eldesouky* do not control here because in those cases the defendants specifically directed the use of a bank account based in New York to transact business. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahr. Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016) (finding that defendants "*actively directed* the funds at issue into those New York accounts") (emphasis in original); *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *2 (S.D.N.Y. Dec. 19, 2014) ("In light of the laboratory report, [plaintiffs] began wiring payments to [defendant] at a Manhattan JPMorgan Chase bank account in his name he had designated"). Here, it is undisputed that KBC Investments did not direct anyone to use a New York correspondent bank account (much less one belonging to KBC Investments) for the Harley Transfers and that the HSBC Bank USA account was owned by Citco Custody.

In *Dandong* and *HSH Nordbank*, also relied upon by the Trustee, the defendants opened bank accounts in New York to deposit money and used those accounts repeatedly. *See Dandong v. Pinnacle Performance Ltd*, 966 F. Supp. 2d 374, 383 (S.D.N.Y. 2013) ("Plaintiffs allege and the record demonstrates that [defendant] 'deliberately used' the New York account 'again and again' in connection with the design and issuance of the Notes at issue in this case." (citation omitted)); *see also HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (finding that there was no doubt that the New York

_____

them for reasons related to the underlying dispute. *Esso*, 397 F. Supp. at 346. The defendant in *Esso* received account statements from the U.S. bank accounts in question, had the authority to direct transfers to and from the account, and did, in fact, direct oil purchases to deposit funds into the bank accounts. *Id*. Here, the Trustee has not made any similar allegation against KBC Investments regarding its access to Citco Custody's correspondent account. Once again, the Trustee attempts to similarly situate KBC Investments to another defendant, yet ultimately fails because of key factual dissimilarities.

bank account that received the funds subject to the preferential transfer claim belonged to defendants, were opened by defendants, and defendants regularly transacted in that account). Here, the Trustee has not—and cannot—allege that KBC Investments opened a bank account in New York for the purpose of receiving payments from the Harley Transfers or regularly transacted into the account owned and used by Citco Custody.[9]

The Trustee's allegations that Citco Custody used a New York correspondent bank account, HSBC Bank USA, for clearing the U.S. dollar denominated Harley Transfers, are inadequate to support a finding of personal jurisdiction over KBC Investments because the correspondent bank account used in the Harley Transfers did not belong to KBC Investments and the law is clear that "mere maintenance" of a U.S. bank account and even the "knowing receipt of funds" through the account does not establish personal jurisdiction. *See, e.g.*, *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, No. 13-22050 (RDD), Adv. Pro. No. 15-08207, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010).[10]

It is telling that the Trustee relies heavily on New York contacts completely unrelated to the Harley Transfers to establish *specific* jurisdiction over KBC Investments. In fact, the Trustee fails to cite any specific examples of KBC Investments' New York contacts that relate to the

---

[9] The other case upon which the Trustee relies is also clearly distinguishable insofar as it involved a defendant's knowing and repeated use of its own New York bank account to perpetrate wrongful acts in connection with financial transactions involving an entity alleged to be a financial front for Hizballah. *See Licci v. Lebanese Can. Bank*, 20 N.Y.3d 327, 339 (2012). Here, there is no alleged wrongful conduct by KBC Investments and the U.S. correspondent bank account was not owned or used by KBC Investments.

[10] The Trustee's argument that these cases are inapposite because they are not about the recovery of subsequent transfers is erroneous. Opp. at 15. In fact, these cases are exactly on all fours. All of the contracts KBC Investments entered into to execute these investments and redemptions on behalf of its clients were foreign service contracts, between offshore companies, and governed by foreign law. Though the Trustee has decidedly ignored the reality of KBC Investments' business, these cases speak to the exact reality in which the subject transfers took place.

Harley Transfers themselves, instead relying on the unsupported assertion that because KBC
Investments directed the transfers (it did not), then money must have been transferred through
accounts at JP Morgan New York, Northern Trust New York, and HSBC New York to complete
the Harley Transfers. Opp. at 20. In fact, there are no supported allegations connecting those
accounts to KBC Investments' involvement in the Harley Transfers. For example, although the
Trustee indicates that HSBC New York was involved in the Harley Transfers by including it in a
list of allegedly utilized bank accounts, (Opp. at 20), no Harley Transfers-relevant payments
were made from that account. *See* Mot. at 13; Tosar Decl. ¶¶ 17–22. And, although the Trustee
makes repeated reference to KBC Investments' New York JP Morgan Chase Bank account, (*see,
e.g.*, Opp. at 14, 17), it does not allege any particular facts about the Harley Transfers that would
indicate the involvement of that account.

In a final effort to find a jurisdictional hook where none exists, the Trustee asserts that
Citco Custody's use of its correspondent bank accounts should be imputed to KBC Investments
because Citco Custody was KBC Investments' agent, despite KBC Investments' lack of
ownership of the HSBC Bank USA account. Opp. at 13, 16.[11] The Trustee is wrong. There is
no agency relationship between KBC Investments and Citco Custody with respect to Citco
Custody's correspondent bank account in the U.S. To find an agency relationship, Trustee is
required show that KBC Investments (i) received a benefit from, and (ii) exercised control over,
Citco Custody with respect to the action taken by the agent in the forum. *See Hill v. HSBC Bank*

---

[11] The Trustee relies on *Esso* and *Picard v. The Est. (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871
(Bankr. S.D.N.Y. 2015) to make the point that it does not matter whether KBC Investments' owned the accounts,
rather because Citco Custody is KBC Investments' agent, Citco Custody's repeated use of the accounts at KBC
Investments' direction is what matters. Opp. at 16. This would be true but for being factually inaccurate. Unlike
defendants in *Esso* and *Igoin*, KBC Investments did not meaningfully interact with Citco Custody's correspondent
accounts, make repeated transactions, or direct Citco Custody's decision to use those specific accounts for KBC
Investments' benefit.

*PLC*, 207 F. Supp. 3d 333, 340–41 (S.D.N.Y. 2016) (finding that New York's jurisdictional requirements are satisfied when a foreign defendant receives a benefit from and exercises control over a New York agent who commits a tortious act in New York). Here, KBC Investments' did not exercise any control over Citco Custody with respect to its use of HSBC Bank USA as a correspondent bank for clearing U.S. dollar transactions. While KBC Investments set up a custody account at Citco Custody on behalf of Fairfax—it never directed or had the power to direct Citco Custody's use of clearing accounts for financial transactions. Without the ability to direct Citco Custody's use of HSBC Bank USA as Citco Custody's correspondent bank account in the U.S., the Trustee's agency argument fails. Thus, there is no basis for finding personal jurisdiction over KBC Investments based upon Citco Custody's use of HSBC Bank USA to clear U.S. dollar denominated financial transactions that were directed by Fairfax.

### 3.    KBC Investments' Corporate Relationship with Affiliates Does Not Establish Purposeful Availment

The Trustee asserts that KBC Investments' New York affiliates' communications and actions regarding BLMIS feeder funds provides sufficient jurisdictional contacts. Opp. at 17–19; Fish Decl. Exs. J–O. Contrary to the Trustee's efforts to attribute the activities of corporate affiliates that are unrelated to the Harley Transfers to KBC Investments, the evidence and allegations presented by the Trustee are insufficient because the Trustee has not alleged facts sufficient to establish an agency relationship with any affiliate with contacts in New York. Because the Trustee has not shown or even alleged that KBC Investments had control over its New York affiliates with respect to any relevant contacts with New York, the actions of these corporate affiliated entities cannot be imputed to KBC Investments.

As established in the Motion to Dismiss, attributing the actions of another corporate entity under agency theory requires establishing that the defendant exercised some control over

the agent that had the jurisdictional contacts.  Mot. at 11–12; *see also Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 519 (S.D.N.Y. 2014) (explaining that personal jurisdiction under agency theory turns on whether the defendant "exercised some control over [the agent] in the matter" (internal quotation omitted)); *Bank of Am. Nat'l Ass'n v. Sopher*, No. 10 CIV. 8870 (LTS) (KNF), 2011 WL 2419872, at *3 (S.D.N.Y. June 8, 2011) (declining in part to bind a corporate affiliate to an arbitration clause where the party seeking to compel arbitration failed to sufficiently allege that the related corporate entities had an agency relationship).

In his Opposition, the Trustee does not even attempt to address this legal mandate to establish an agency relationship, let alone point to any allegations or other facts sufficient to attribute KBC Investments' affiliate's New York contacts to KBC Investments.  *See* Opp. at 17–19.  While KBC Investments has never denied being a part of a larger corporate structure, mere corporate affiliation is insufficient to create the requisite control by KBC Investments over its affiliates necessary to impute the acts of any of those affiliates to KBC Investments.  Yet the Trustee's additional allegations in the Opposition and the documents attached to the Fish Declaration show nothing more than KBC Investments' relation to corporate affiliates and identify two transaction confirmations for *other* transactions (not the Harley Transfers) that Citco Custody sent to corporate affiliates at a New York address.  *See* Fish Decl. Exs. J–K.[12]  The Trustee fails to cite to any cases that find the use of a corporate affiliate's mailing address by a third party for a *different* transaction supports jurisdiction over the corporate affiliate.

---

[12] Further, the Trustee's reliance on Exhibits N, O, and P to the Fish Declaration fair no better.  These documents show nothing more than a company with global operations with distinct foreign and domestic subsidiaries.  KBC Investments' corporate affiliation with a U.S. subsidiary of the global business does not make it subject to personal jurisdiction in the United States.  Though the Trustee has pursued KBC Investments as if that is the law, such a concept completely eviscerates any notion of due process.

Additionally, none of the actions identified by the Trustee in his Opposition or in the

Amended Complaint that were allegedly undertaken by KBC Investments' corporate affiliates

concerning other BLMIS feeder funds show that any actions taken by corporate affiliates were

taken on behalf of KBC Investments at all.  *See* Opp. at 17–20; Fish Decl. Exs. J–K.  The fact

that trade confirmations that are not related to the Harley Transfers listed a New York address

does not show that KBC Asset Management ("KBC AM") or KBC Financial Products USA, Inc.

("KBC USA") took actions on behalf of KBC Investments and especially not in relation to the

Harley Transfers.  *See* Tosar Decl. ¶¶ 13–15.  As a result, the contacts alleged by the Trustee are

merely contacts between third parties that do not satisfy the purposeful availment prong because

such contacts must arise from "actions by the defendant himself that create a 'substantial

connection' with the forum state."  *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

### B.    The Exercise of Personal Jurisdiction Over KBC Investments Would Be Unreasonable

Because the Trustee has improperly relied upon the actions and bank accounts of third

parties as KBC Investments' jurisdictional contacts, he must make a *stronger showing* that the

exercise of jurisdiction would be reasonable.  *See LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,

582 B.R. 64, 79, *amended on recons. on other grounds*, 2018 WL 3031094 (Bankr. S.D.N.Y.

June 15, 2018) ("[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant

needs to show in terms of unreasonableness to defeat jurisdiction." (internal citation omitted)).

Here, the Trustee simply has not met that higher bar, and the Trustee's attempted jurisdictional

reach highlights the importance of dismissing proceedings against foreign defendants that have

insufficient contacts with the forum to establish personal jurisdiction.

In response to KBC Investments' explanation of its issues regarding litigating in this forum, the Trustee assumes, without support, that KBC Investments can easily bear the burden of litigating in this forum, relying on the fact that KBC Investments has New York counsel and modern technology lessens litigation costs and travel inconveniences. Opp. at 21. This does not outweigh the burden and expense that KBC Investments will be forced to bear to litigate claims in this forum arising from transfers that occurred more than a decade ago.

The Trustee's next assertion that KBC Investments should have anticipated litigating in New York because Harley shareholders agreed to resolve disputes by binding arbitration to take place in New York is inapplicable to KBC Investments. Opp. at 21. KBC Investments did not execute any subscription agreements with Harley, (Tosar Decl. ¶ 20) and therefore, is not a signatory to the arbitration agreement.

Lastly, the implication by the Trustee that KBC Investments is not burdened by this litigation because it has participated in it for the last ten years is nonsensical. KBC Investments has repeatedly moved to dismiss this litigation and continues to assert that this Court lacks personal jurisdiction over KBC Investments. It clearly has not been a willing party to this litigation and continues to pursue its defenses to be dismissed. Under these circumstances, requiring KBC Investments to continue litigating here is unfair and unreasonable and does not comport with due process.[13]

---

[13] KBC Investments respectfully submits that the Court lacks personal jurisdiction over KBC Investments and should dismiss the Amended Complaint on that basis. But to the extent that the Court determines that the Trustee has made a threshold showing for jurisdiction sufficient to warrant jurisdictional discovery, KBC Investments agrees with the Trustee, (Opp. at 21–22), that the Court should order jurisdictional discovery to take place and postpone a decision on the issue of personal jurisdiction until after that discovery is completed.

## II.    THE RELATION BACK DOCTRINE CANNOT SAVE THE TRUSTEE'S TIME-BARRED CLAIMS TO RECOVER SUBSEQUENT TRANSFERS THAT WERE FIRST IDENTIFIED IN THE AMENDED COMPLAINT

Instead of tackling the long-standing precedent in this Circuit holding that transfers are distinct from each other for purposes of applying the relation back doctrine, the Trustee cites this Court's recent decisions and side-steps KBC Investments' core arguments by asserting that because the newly identified transfers related to the same BLMIS Ponzi scheme, the newly alleged transfers in the Amended Complaint sufficiently relate back to the Original Complaint to render them timely.  Opp. at 22–28.  The Trustee's argument fails with respect to the newly alleged Harley Transfers in this proceeding and the cases cited by the Trustee are distinguishable.[14]

As the starting point, in the Second Circuit, "each transfer [must be] treated as a separate transaction for purposes of applying the 'relation back' doctrine."  *Buchwald Cap. Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 447 B.R. 170, 181–82 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55  (2d Cir. 2013); *see also Picard v. BNP Paribas S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (holding in case seeking subsequent transfers of BLMIS property that "[e]ach transfer is a separate

---

[14] The Trustee cites *Fairfield Inv. Fund* as an example of this Court permitting relation back for subsequent transferees, however, the subsequent transfer claims in that proceeding were only six years old, compared to the almost fourteen years which have passed here.  *See Picard v. Fairfield Inv. Fund*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021).  Further, this Court's contributing factor for permitting relation back was because the applicable statute of limitations set forth in section 550 "had not begun to run when the 2010 Complaint was filed."  Id. at *13.  The Trustee's further reliance on *Aldephia Recovery* for its relation back argument is no more availing because the basis for the original action filed by plaintiff was to recover preference transfers and plaintiff alleged that defendant received $84 million for its own benefit.  *See Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334–35 (S.D.N.Y. 2009) (noting that "preference actions stand in contrast to actions to avoid fraudulent transfers, which often involve a common scheme to defraud which provides a nexus for relation back.").  This Court's decision in *Picard v. Peter B. Madoff*, 468 B.R. 620, 634 (Bankr. S.D.N.Y. 2012) is also distinguishable because in that proceeding "no Family Defendant, or anyone else . . . objected to the addition of the Family Transfers" that were sought to be added and clarified in the amended complaint.

17

claim"); *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986) ("Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c) . . . The same should be true of separate fraudulent transfers.").

The law requiring each transfer to be treated as a separate transaction for the purposes of applying the relation back doctrine is dispositive here because the newly alleged transfers were directed by Fairfax at different times, in different amounts, and for different reasons than those alleged in the Original Complaint. Tosar Decl. ¶¶ 25, 31, 37; Exs. 4, 8, 12. Thus, the newly alleged transfers did not arise from the common core of operative facts. Simply alleging that all transfers involved investments in BLMIS, which was part of a massive Ponzi scheme, does not make the transfers part of the same common core of operative facts.

This court's decision in *Metzeler* is particularly instructive. In *Metzeler*, the court explained that fraudulent transfer allegations "involve substantial issues, e.g., intent, insolvency or unreasonably small capital at the time of each transfer. The proof offered for one transaction is not governing as to another." 66 B.R. at 983–84. Here, the Trustee has amended his complaint to recover two additional transfers occurring on different dates and for different amounts than the original transfers. As articulated by *Metzeler*, the Trustee's reliance on allegations that the newly alleged transfers are related because of the same course of conduct is not enough where the transferee is not alleged to have been aware of or participated in the fraud. *See id.* (holding that "[s]imilar conduct with respect to a separate transaction is not expressly included" as part of the same "conduct, transaction, or occurrence" for Rule 15(c) purposes). Therefore, seeking to recover one transfer does not provide notice to recover another because

there are different facts and circumstances surrounding each transfer when the timing, amounts, and reasons for the transfers are distinct.[15]

The authority the Trustee relies upon does not require the application of the relation back doctrine to save the Trustee's time-barred claims. First, this Court's decisions in *Picard v. Bank Julius Baer & Co. Ltd.*, No. 08-01789 (CGM), Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520, at \*15–16 (Bankr. S.D.N.Y. Dec. 15, 2022) and *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Case No. 08-01789 (CGM), Adv. No. 12-01565 (CGM), 2023 WL 118787, at \*5 (Bankr. S.D.N.Y. Jan. 6, 2023), are not dispositive because the Trustee asserts that the Defendants themselves directed the newly alleged transfers. Opp. at 23–24. In contrast to the other defendants, KBC Investments' client Fairfax directed the Harley Transfers. *See* Tosar Decl. ¶¶ 22, 26, 32, 38. This difference is important because the passage of time in this adversary proceeding creates greater difficulties for KBC Investments in relation to its ability to obtain information from Fairfax concerning the investment decisions Fairfax made with respect to the newly alleged Harley Transfers.

The other cases upon which the Trustee so heavily relies to argue that courts apply the relation back doctrine to additional transfers that were part of the same Ponzi scheme as alleged in the initial complaint,[16] are cases from outside the Second Circuit and are clearly distinguishable insofar as they each involved transfers connected to alleged Ponzi schemes that

---

[15] The Trustee's argument that the Amended Complaint seeks recovery of less money is inapposite and unavailing. Opp. at 28–29. The Trustee was forced to seek less money for the initial transfers alleged in the Original Complaint because the transaction data between BLMIS and Harley showed that a portion of the redemption funds from Harley could not have come from BLMIS. *Compare* Original Compl. Ex. C [Dkt. No. 1–3], *with* Amended Compl. Ex. C [Dkt. No. 104–3]. That fact does not save separate time-barred transfers that were not alleged in the Original Complaint.

[16] *See Goldberg v. Halbert (In re Woodbridge Grp. of Companies, LLC)*, Case No. 17-12560 (JKS), Adv. Pro. No. 19-51027 (JKS), 2021 WL 5774217, at \*9–11 (Bankr. D. Del. Dec. 6, 2021); *Hill v. Oria (In re Juliet Homes, LP)*, Case No. 07-36424, Adv. Pro. No. 09-03429, 2011 WL 6817928, at \*7 (Bankr. S.D. Tex. Dec. 28, 2011); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992).

the defendants themselves knowingly participated in to reap benefits. Here, the Trustee has not alleged (nor could he) that KBC Investments or its investment client Fairfax were aware of BLMIS's fraud at the time of the Harley Transfers or similar allegations that would support a similar finding that the newly added Harley Transfers should relate back to the transfers identified in the Original Complaint.

For these reasons, the Court should similarly dismiss the newly alleged Harley Transfers as time-barred.

## CONCLUSION

For the foregoing reasons, the Trustee's Amended Complaint should be dismissed in its entirety with prejudice.

Dated: March 10, 2023
New York, New York

SIDLEY AUSTIN LLP

/s/ *John J. Kuster*
John J. Kuster
Martin B. Jackson
Andrew P. Propps
Danica L. Brown
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel:  +1 212 839 5300
Fax:  +1 212 839 5599
jkuster@sidley.com
mjackson@sidley.com
apropps@sidley.com
dbrown@sidley.com

Counsel for Defendant
*KBC Investments Limited*
