**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01697 (CGM) |
| Plaintiff, | |
| v. | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO PLATINUM ALL WEATHER FUND LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENTS OF FACTS ......................................................................................4

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...........................4

II.   DEFENDANT AND ITS BLMIS INVESTMENTS.........................................5

III.  THE FAIRFIELD SETTLEMENT.................................................................6

ARGUMENT ...........................................................................................................7

I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ......................7

    A.    Defendant Purposefully Availed Itself Of The Laws And Privileges Of
        Conducting Business In New York And The United States By Investing In
        Sentry .................................................................................................8

        1.    Defendant's Intentional Investments With BLMIS Through Sentry
                Establish Minimum Contacts .......................................................8

        2.    The Forum Selection And Choice of Law Clauses In The
                Subscription Agreements Are Strong Jurisdictional Contacts...................13

        3.    Defendant's Purposeful Use Of New York Bank Accounts
                Establishes Personal Jurisdiction ...............................................14

    B.    Defendant's Contacts with the Forum Are Sufficiently Related To The
        Trustee's Claims .................................................................................17

    C.    The Exercise Of Personal Jurisdiction Over Defendant Is Reasonable................18

    D.    In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery.............19

II.   SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT....................19

    A.    Sentry Had Actual Knowledge of Madoff's Fraud.................................20

    B.    Section 546(e) Does Not Apply Independently to Recovery Actions...................20

III.  THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT...............22

IV.   THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT
      BE RESOLVED AT THE MOTION TO DISMISS STAGE ..........................................24

A.    The Affirmative Defense of "Good Faith" is Premature .......................................24

B.    Even If the Court Were to Consider the "Good Faith" Affirmative
Defense, It Does Not Appear on the Face of the Amended Complaint .................25

V.    THE TRUSTEE'S AMENDED COMPLAINT PLAUSIBLY PLEADS THAT
DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER
SECTION 550(a) ...........................................................................................................26

A.    Defendant Misstates the Trustee's Pleading Burden .............................................28

B.    Defendant's Remaining Implausibility Arguments Fail on a Motion to
Dismiss..................................................................................................................28

VI.    THE TRUSTEE'S AMENDED COMPLAINT SUFFICIENTLY PLEADS THE
AVOIDABILITY OF THE INITIAL TRANSFERS TO SENTRY..................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
559 B.R. 730 (Bankr. S.D.N.Y. 2019) ..........................................................................11, 27, 28

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................................30

*Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*,
640 B.R. 604 (S.D.N.Y. 2022)................................................................................................15

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010).....................................................................................26

*In re Bernard L. Madoff Inv. Sec. LLC*,
No. 22 CIV 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) .........................8, 11, 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..................................................................................................................13

*Chase Manhattan Bank v. Banque Generale Du Com.*,
No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)..............................13

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)................................................................................................7, 18

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................................29

*Cromer Fin. Ltd. v. Berger*,
137 F. Supp. 2d 452 (S.D.N.Y. 2001)......................................................................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................................................................................7

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .........................................14

*DeMasi v. Benefico*,
567 F. Supp. 2d 449 (S.D.N.Y. 2008).....................................................................................33

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)........................................................................................................7

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................25

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .................................15

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019)......................................................................8

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
    No. 21-cv-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) ...............................19

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
    Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................14

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) .....................................................................33

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021).......................................................................................17

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), aff'd,
    700 F. App'x 66 (2d Cir. 2017) ............................................................................16

*HSH Nordbank v. Street*,
    No. 11-cv-9405 (DLC), 2012 WL 2921875 (S.D.N.Y. Jul. 18, 2012) ................................17

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .......................................29

*Kelly–Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)...............................................................................24

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618, 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ....................................19

*Mass. Mut. Life Ins. Co. v. Residential Funding Co.*,
    843 F. Supp. 2d 191 (D. Mass. 2012) ...................................................................31

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)....................32

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)...............................................................................15

*Picard v. Abu Dhabi Investment Authority*,
   Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct.
   28, 2022) ................................................................................................................27

*Picard v. Avellino (In re BLMIS)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016)...................................................................26

*Picard v. Banca Carige S.P.A.*,
   Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
   30, 2022) ....................................................................................................... *passim*

*Picard v. Bank Julius Baer,*
   Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec.
   15, 2022) ....................................................................................................... *passim*

*Picard v. Bank Vontobel AG*,
   Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov.
   18, 2022*)* ..................................................................................................... *passim*

*Picard v. Banque Syz & Co. SA*,
   Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
   14, 2022) ....................................................................................................... *passim*

*Picard v. Barfield Nominees Ltd.*,
   Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept.
   28, 2022) .................................................................................................2, 10, 11, 27

*Picard v. BNP Paribas S.A., et al.*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................ *passim*

*Picard v. BSI AG,*
   Adv. Pro. No. 12-01209 (CGM), 2022 WL 17412774 (Bankr. S.D.N.Y. Dec.
   18, 2022) (amended) ..............................................................................................2, 17

*Picard v. Bureau of Labor Ins.* (*In re Bernard L. Madoff*),
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.)........................................ *passim*

*Picard v. Chais* (*In re BLMIS*),
   440 B.R. 274 (Bankr. S.D.N.Y. 2010) ..................................................................17

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
   Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
   2012) .................................................................................................................26, 27

*Picard v. Citibank*,
   2022 WL 4493234 (Bankr. S.D.N.Y. Sept. 27, 2022)......................................22, 23

v

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) *cert. denied sub nom. Citibank, N.A. v. Picard*,
    142 S. Ct. 1209 (2022) ........................................................................................4, 23, 25

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..........................................................21, 29, 30

*Picard v. Credit Suisse AG*,
    Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676 (Bankr. S.D.N.Y. Nov.
    21, 2022) .......................................................................................................24, 26

*Picard v. Credit Suisse AG*,
    Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739 (Bankr. S.D.N.Y. Nov.
    21, 2022) ...............................................................................................................24

*Picard v. Delta Nat'l Bank and Trust Co.*,
    Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256 (Bankr. S.D.N.Y. Aug.
    12, 2022) ...............................................................................................................24

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...............................................................7, 17

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ......................................................................................................... *passim*

*Picard v. First Gulf Bank*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) ..................................................................................................... *passim*

*Picard v. Fullerton Capital PTE Ltd.*,
    Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714 (Bankr. S.D.N.Y. Oct.
    28, 2022) ...............................................................................................................27

*Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*),
    Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686 (Bankr. S.D.N.Y. Dec.
    15, 2022) .....................................................................................................2, 10, 11

*Picard v. JABA Assocs. LP (In re Madoff)*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021) ...................................................................23

*Picard v. Korea Exchange Bank*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ...............................................................................................................21

*Picard v. LGT Bank in Liechtenstein Ltd.*, *(In re BLMIS)*,
    Adv. Pro. No. 11-02929 (CGM), 2023 WL 2003960 (Bankr. S.D.N.Y. Feb.
    14, 2023) ..........................................................................................................2, 17

*Picard v. Lloyds TSB Bank PLC*,
    Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
    30, 2022) ................................................................................................................... 27

*Picard v. Maxam Absolute Return Fund et al.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) .............................................................. 9, 18

*Picard v. Meritz Fire & Marine Ins. Co.*,
    Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
    10, 2022) ........................................................................................... 2, 15, 27

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ..................................................................... 25

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ....................................................... 26, 28, 29

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..................................................................... 29

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ............................................................. *passim*

*Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*,
    No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ............... 19, 20, 21

*Picard v. Nelson (In re BLMIS)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ............................................................. 22, 23

*Picard v. Parson Fin. Panama S.A.*,
    Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
    2022) ................................................................................... 2, 15, 17, 27

*Picard v. Quilvest Finance Ltd.*,
    Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
    27, 2022) ................................................................................................................... 27

*Picard v. Sage Realty*,
    No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ............... 23

*Picard v. Schroder & Co.*,
    Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept.
    27, 2022) (amended) ............................................................................................... 27

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
    Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6,
    2023) ..................................................................................................................... 2

*Picard v. UBS AG, et al.*,
  Adv. Pro. No. 10-04285 (CGM), 2022 WL 17968924 (Bankr. S.D.N.Y. Dec.
  27, 2022) ..................................................................................................................2

*Picard v. UKFP (Asia) Nominees Ltd.*,
  Adv. Pro. No. 12-01566 (CGM), 2022 WL 17574760 (Bankr. S.D.N.Y. Dec.
  9, 2022) .........................................................................................................2, 10, 11

*In re Picard*,
  917 F.3d 85 (2d. Cir. 2019)....................................................................................19

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010).....................................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. 2013)............................................................................31, 32

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ............24, 26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (SMB), 2018 WL 3078149 (Bankr. S.D.N.Y. June 20, 2018) .........22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..........................21

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007)....................................................................31

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007).......................................................................28

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015).....................................................................16

*SPV OSUS Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)...................................................................................16

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010).....................................................................16

*In re Terrestar Corp.*,
  16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017).........................30

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................................................32

*United States v. Space Hunters, Inc.*,
   429 F.3d 416 (2d Cir. 2005)..................................................................25

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
   39 F. Supp. 3d 461 (S.D.N.Y. 2014)....................................................24

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................12

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016)...............................................................18

**Statutes**

11 U.S.C. § 546(e) .................................................................... *passim*

11 U.S.C. § 548(a) .............................................................................32

11 U.S.C. § 548(a)(1)(A) ...........................................................20, 22

11 U.S.C. § 548(c) .............................................................................25

11 U.S.C. § 550 .......................................................................20, 21, 32

11 U.S.C. § 550(a) .................................................................... *passim*

11 U.S.C. § 550(a)(2) ........................................................................28

11 U.S.C. § 550(b) .....................................................................1, 3, 25

11 U.S.C. § 550(d) ............................................................................28

**Rules**

Fed. R. Civ. P. 8 ..............................................................................3, 32

Fed. R. Civ. P. 8(a)(2).......................................................................30

Fed. R. Civ. P. 9(b) ..........................................................................30

Fed. R. Civ. P. 10 ........................................................................3, 31, 32

Fed. R. Civ. P. 10(c) ....................................................................30, 31

Fed. R. Civ. P. 12(b)(2)..................................................................1, 11

Fed. R. Civ. P. 12(b)(6)....................................................................1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law and the Declaration of Elizabeth G. McCurrach ("McCurrach

Decl.") in opposition to the motion to dismiss the Trustee's amended complaint (the "Amended

Complaint" or "Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)

(the "Motion" or "Mot.") filed by Platinum All Weather Fund Limited ("Platinum" or

"Defendant").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover approximately $104 million in subsequent transfers that Defendant and co-defendant ABN

AMRO Fund Services (Isle of Man) Nominees Limited, formerly known as Fortis (Isle of Man)

Nominees Limited ("Fortis IOM")[1] received from Fairfield Sentry Limited ("Sentry") and

Fairfield Sigma Limited ("Sigma," and together with Sentry, the "Fairfield Funds").  Am. Compl.

¶ 2.  Defendant moves to dismiss the Trustee's Amended Complaint, arguing that (i) this Court

lacks personal jurisdiction over Defendant; (ii) Section 546(e) of the Bankruptcy Code bars

recovery; (iii) the Amended Complaint establishes Defendant's "good faith" affirmative defense

under Section 550(b); (iv) the Trustee has failed to allege Defendant received customer property;

and (v) the Trustee violates Federal Rules of Civil Procedure ("Rules") 8 and 10 by incorporating

by reference the Trustee's Second Amended Complaint against the Fairfield Funds (the "Fairfield

---

[1] Fortis IOM has filed a separate motion to dismiss in this proceeding concerning transfers received from Sentry and Sigma.  *See* Motion to Dismiss, *Picard v. ABN AMRO Retained Nominees (IOM) Limited et al*, Adv. Pro. No. 12-01697 (CGM) (Bankr. S.D.N.Y. Jan. 12, 2023), ECF No. 145.

SAC").[2]  These arguments are substantially the same as those consistently rejected by this Court

in other subsequent transfer cases.[3]  For the reasons set forth herein, Defendant's arguments fail.

*First*, this Court has personal jurisdiction over Defendant.  Defendant purposefully invested

in Sentry, knowing from Sentry's documents that BLMIS in New York was the *de facto* investment

manager, broker-dealer, and custodian of their investments, that Sentry fed substantially all of its

funds into BLMIS, and that BLMIS was essential to Sentry's investments.  Investing with BLMIS

was the entire point of Defendant's business.  The Sentry subscription agreements required

Defendant to submit to New York jurisdiction, forum selection, and choice of law clauses.

Defendant used  New York bank accounts to receive the transfers at issue from Sentry.  These

facts, plus multiple additional contacts discussed herein, are more than sufficient to establish

jurisdiction.

*Second*, Section 546(e)'s protections for settlement payments or transfers in connection

with securities contracts are inapplicable and do not bar recovery from Defendant.  Defendant's

primary argument—that the Trustee must plead Defendant's actual knowledge as opposed to that

---

[2] Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd., et al*., Adv. Pro. No. 09-01239 (CGM)(Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

[3] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy I*"); *Picard v. Banque Syz & Co. SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Bank Julius Baer*, Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) ("*BJB*"); *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023) ("*Standard Chartered*"); *Picard v. Barfield Nominees Ltd.*, Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ("*Barfield Nominees*"); *Picard v. UKFP (Asia) Nominees Ltd.*, Adv. Pro. No. 12-01566 (CGM), 2022 WL 17574760 (Bankr. S.D.N.Y. Dec. 9, 2022) ("*UKF (Asia) Nominees*"); *Picard v. Inteligo Bank Ltd., f/k/a Blubank Ltd.*), Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15, 2022) ("*Inteligo*"); *Picard v. Meritz Fire & Marine Ins. Co.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Parson Fin. Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. BSI AG.*, Adv. Pro. No. 12-01209 (CGM), 2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 18, 2022) (amended) ("*BSI*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-04285 (CGM), 2022 WL 17968924 (Bankr. S.D.N.Y. Dec. 27, 2022) ("*UBS*"); *Picard v. LGT Bank in Liechtenstein Ltd.*, *(In re BLMIS)*, Adv. Pro. No. 11-02929 (CGM), 2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023) ("*LGT Bank*").  To avoid repetition and long string cites, the Trustee will avoid citing to all of the Court's recent decisions, but these and other similar decisions all support denial of the Motion.

of Sentry—both misinterprets and directly conflicts with precedent in this SIPA liquidation proceeding.

*Third*, this Court and the District Court have repeatedly determined that the Trustee can rely on the Ponzi scheme presumption, as well as numerous badges of fraud, to demonstrate BLMIS's actual intent to hinder, delay, or defraud creditors.

*Fourth*, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate to assert on a motion to dismiss. As this Court found in numerous cases, it is Defendant's burden to plead this affirmative defense in an answer and prove it with evidence. Defendant cannot establish their purported good faith on the face of the Amended Complaint.

*Fifth*, the Trustee has plausibly alleged that Defendant received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Defendant. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendant. Nothing more is required at this stage of the litigation.

*Finally*, consistent with Rules 8 and 10, the Amended Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief, and its incorporation by reference of the Fairfield SAC is appropriate under the Rules to demonstrate the avoidability of the initial transfers from BLMIS. In any event, this Court may take judicial notice of the Fairfield SAC and the Court's own opinion in *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), holding that the Trustee had plausibly alleged the avoidability of the initial transfers from BLMIS.

For these reasons, as further detailed below, the Trustee respectfully requests that this Court

deny Defendant's motion to dismiss.

## STATEMENTS OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Am.

Compl. ¶¶ 23–24.  BLMIS was a securities broker-dealer registered with the U.S. Securities and

Exchange Commission (the "SEC") beginning in 1960.  *Id.*  BLMIS purported to operate three

principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii)

an investment advisory business (the "IA Business").  *Id.* ¶ 25.  For its IA Business customers,

BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy") which

involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b)

buying put options and selling call options to hedge against price changes in the underlying basket

of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 33,

36–38.  In reality, Madoff operated a Ponzi scheme through the IA Business.  *Id.* ¶ 29.  On

December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal

violations of federal securities laws, including securities fraud, investment adviser fraud, and mail

and wire fraud.  *Id.* ¶ 11.

The extensive financial damage Madoff caused was made possible by BLMIS "feeder

funds"— large investment funds created to funnel investors' funds into BLMIS.  *See Picard v.

Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021) *cert. denied sub nom. Citibank,

N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank I*").  Defendant invested in several such feeder

funds, including the Fairfield Funds, which it knew were BLMIS feeder funds.  Am Compl. ¶¶ 3–

5.  The Fairfield Funds were the largest BLMIS feeder funds.  *See* Fairfield SAC ¶ 295.

## II.    DEFENDANT AND ITS BLMIS INVESTMENTS

Throughout the relevant period, Defendant was a single-strategy hedge fund, formed by non-party Platinum Capital Management Ltd. ("Platinum Management"), that invested exclusively in BLMIS feeder funds, including the Fairfield Funds, Kingate Global Fund Ltd., and Santa Clara II Fund Limited.  Am Compl. ¶¶ 55, 66–67, 71.  Platinum Management operated and managed Defendant and its BLMIS feeder fund investments through its subsidiaries in New York and Stamford, Connecticut.  *Id.*  ¶¶ 57, 71.  Defendant boasted of its Madoff connection, describing itself as "a feeder fund investing into Bernard Madoff's funds" and representing to potential clients that it "is actually a feeder fund into Madoff."  *Id.* ¶ 72.

The Fairfield Funds were controlled by the Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York.  *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").  Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Am. Compl. ¶ 64; Fairfield SAC ¶¶ 52, 318.  Sigma acted as a foreign currency feeder fund, facilitating euro investments with BLMIS, and investing 100% of its assets in Sentry.  Am. Compl. ¶ 65.  Defendant's representatives met with FGG representatives in New York to effectuate its transactions with the Fairfield Funds.  *Id*. ¶ 85.

Defendant's marketing materials identified Fortis IOM as its "Administrator, Custodian and Transfer Agent."  *Id.* ¶¶ 59, 62.  Co-defendant Fortis IOM entered into several subscription agreements with the Fairfield Funds individually and on behalf of Defendant.  *Id*. ¶¶ 74–75; *see* Declaration of Thomas J. Giblin, *Picard v. ABN AMRO Retained Nominees (IOM) Limited et al*, Adv. Pro. No. 12-01697 (CGM) (Bankr. S.D.N.Y. Jan. 12, 2023), ECF No. 147 ("Giblin Decl."), Exs. 1–2.  Through the subscription agreements, Defendant agreed to New York choice of law, jurisdiction, and forum selection clauses.  Am. Compl. ¶ 76; Giblin Decl., Exs. 1–2.

The subscription agreements also incorporated the Fairfield Funds' Private Placement Memoranda ("PPMs"), and by executing the agreements, Defendant and Fortis IOM affirmed that they had "received and read" a copy of the PPMs. Am. Compl. ¶¶ 74–75; Giblin Decl., Exs. 1–2. The subscription agreement executed in January 2007 also listed Peter Sprecher, the U.S.-based founder of Platinum Management, as the "advisor with respect to this subscription" and Scott Nevin, an FGG Managing Director based in New York, as the professional "with whom this subscription is associated." Am. Compl. ¶ 84; Giblin Decl., Ex. 1. Through Fortis IOM's New York-based bank account at Northern Trust International Banking Corporation (the "Northern Trust NY Account"), Defendant and Fortis IOM received the redemption payments from Sentry. Am. Compl. ¶ 89.

## III.    THE FAIRFIELD SETTLEMENT

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfer of stolen customer property in the amount of approximately $3 billion. Am. Compl. ¶ 92; *see also Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. In 2011, the Trustee settled with the Fairfield Funds. Am. Compl. ¶ 93. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.*; *Picard v. Fairfield Inv. Fund, Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021). Sigma separately consented to judgment in the amount of $752.3 million. Fairfield Sigma Consent Judgment, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 13, 2011), ECF No. 110. As Sigma was a feeder fund that invested in BLMIS indirectly through Sentry, this amount represents a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *Id.* The Trustee then commenced a number of adversary proceedings,

6

including this proceeding, to recover the approximately $3 billion in outstanding stolen customer property.

## ARGUMENT

### I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (finding "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction"). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).[4]

---

[4] General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction where the claims are unrelated to those contacts. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Because the Amended Complaint amply alleges specific jurisdiction, there is no need to reach the issue of general jurisdiction.

A. **Defendant Purposefully Availed Itself Of The Laws And Privileges Of Conducting Business In New York And The United States By Investing In Sentry**

Defendant had numerous contacts with the United States that establish this Court's jurisdiction. Defendant (1) purposefully targeted the New York securities market by investing in Sentry, knowing that the funds' assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to its investments in Sentry; and (3) purposefully used New York bank accounts to transact with Sentry in connection with its investments and redemptions. Many of these contacts independently establish jurisdiction. In their totality, these contacts demonstrate that Defendant availed itself of the forum. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum.").

1. *Defendant's Intentional Investments With BLMIS Through Sentry Establish Minimum Contacts*

Defendant was a single-manager fund directing 100% of its assets to BLMIS through investments in BLMIS Feeder Funds. Am. Comp. ¶ 71. Defendant's entire business revolved around access to Madoff and the BLMIS Feeder Funds, and it described itself as "a feeder fund into Madoff." Am. Compl. ¶ 72; *see also* McCurrach Decl., Ex. 1. Defendant knowingly and intentionally directed monies to BLMIS in New York through Sentry in order to invest in BLMIS and the U.S. securities market. *See* Giblin Decl., Exs. 1–2; Am. Compl. ¶ 72, 77–80. This intentional investment with BLMIS in New York alone establishes personal jurisdiction over Defendant. *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 22 CIV 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard Interlocutory Decision*") (finding that this Bankruptcy Court "correctly held, applying settled precedent, that by intentionally investing in a New York-

8

based investment fund, Defendant purposefully availed itself of the privilege of doing business in

New York"); *see also Picard v. Maxam Absolute Return Fund et al.*, 460 B.R. 106, 116–20 (Bankr.

S.D.N.Y. 2011) ("*Maxam*") (finding jurisdiction where defendant knew and intended monies

invested with BLMIS feeder fund to be sent to BLMIS in New York for investment).

Pursuant to the subscription agreements, Defendant and Fortis IOM affirmed having

received and read Sentry's PPMs and agreed to be bound by their terms.  Am. Compl. ¶¶ 74–75;

Giblin Decl., Ex. 1 at ¶¶ 2, 7, Ex. 2 at ¶¶ 2, 7.  Defendant affirmed that it knew that: (i) Sentry

invested at least 95% of its assets with BLMIS; (ii) BLMIS performed all investment management

duties for these assets; (iii) BLMIS was registered with the SEC; (iv) BLMIS was the executing

broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on each

fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities and

U.S. options; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when

to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of

Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of"

Sentry.  *See* Giblin Decl., Exs. 1–2; McCurrach Decl., Ex. 2; Am. Compl. ¶¶ 74–75, 81.

Based on Defendant's demonstrated intention to invest with BLMIS through Sentry, this

Court has already concluded that Sentry investors like Defendant are subject to personal

jurisdiction.  *See Picard v. Bureau of Labor Ins.* (*In re Bernard L. Madoff*), 480 B.R. 501, 516–18

(Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").  In *BLI*, as here, the Trustee's suit was "based upon

[the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the

specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom."

*Id*. at 506.  There, as here, the subsequent transferee was provided with PPMs and caused

subscription agreements to be executed with Sentry through which it affirmed that it understood

the investment's BLMIS-centric purpose.  *BLI* at 507–08; *see also* Am. Compl. ¶¶ 74–81.  And

there, as here, the subsequent transferee argued that the foreseeability of its investment ending up

in a BLMIS account was insufficient to support personal jurisdiction.  Mot. at 8; *BLI*, at 516, n.14.

Judge Lifland rejected this argument as "disingenuous" because BLI's investments "did not merely

'end up' in an account at BLMIS" through "coincidence."  *BLI*, at 517.

In fact, Judge Lifland found that BLI "purposefully availed itself of the benefits and

protections of New York laws by knowing, intending and contemplating that the substantial

majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be

invested in the New York securities market."  *BLI*, 480 B.R. at 517.

More recently, this Court has upheld and applied the *BLI* analysis in multiple decisions.

*See, e.g.*, *Multi-Strategy I*, 641 B.R. at 86–87 (same); *Banque Syz*, 2022 WL 2135019, at *3–4

(same); *Carige*, 2022 WL 2387522, at *3–4, 7 (same); *Barfield Nominees*, 2022 WL 4542915, at

*3 (same); *UKFP (Asia) Nominees*, 2022 WL 17574760, at *3, 5; *Inteligo,* 2022 WL 17742686,

at *3, 5 (same).  This Court has further clarified that the Trustee is deemed to have sufficiently

alleged jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested

with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is

sufficient to establish a prima facie showing of jurisdiction over [d]efendant in the pre-discovery

stage of litigation."  *Carige*, 2022 WL 2387522, at *2; *see also, e.g., Barfield Nominees*, 2022 WL

4542915, at *2 (same); *UKFP (Asia) Nominees*, 2022 WL 17574760, at *2 (same). And as noted

above, the district court endorsed this holding in the *Lombard Interlocutory Decision*.

Defendant attempts to characterize all of these contacts as "incidental consequences of

fulfilling a foreign contract," and posits that there was no purposeful investment in known BLMIS

feeder funds in New York.  *See* Mot. at 10.  But this argument is utterly contradicted by

Defendant's own words and marketing materials, in which Defendant described its business as a "feeder fund" into Madoff and that the investments were in American based securities. *See* McCurrach Decl., Exs. 1, 3. Defendant's efforts to downplay their investments' New York destination as an unforeseeable consequence rather than a deliberate and purposeful targeting of the forum is the same "disingenuous" argument this Court rejected in *BLI*. *BLI*, at 517.

Defendant also attempts to minimize its contacts here by focusing on piecemeal issues and ignoring the totality and purpose of its contacts, but these and similar arguments were previously rejected by the Court in *Multi-Strategy I*, *Banque Syz*, and other subsequent transfer cases. For example, Defendant argues that an alleged meeting in New York by Platinum representatives,[5] and its use of Fortis IOM's Northern Trust NY Account to receive redemption payments, do not establish that it "purposefully availed itself of the privilege of doing business in New York." Mot. at 9–10. But Defendant's contacts are not meaningfully different than those of the defendants in *BLI, Multi-Strategy, Banque Syz, Carige, Lombard Interlocutory Decision*, or others in this SIPA liquidation proceeding whose Rule 12(b)(2) motions have been denied, and in some cases, are stronger. *See, e.g., Carige,* 2022 WL 2387522, at *4 (finding personal jurisdiction based solely on defendant's subscription agreements that showed investments being directed to New York based BLMIS); *see also Barfield Nominees*, 2022 WL 4542915, at *3 (same); *UKFP (Asia) Nominees*, 2022 WL 17574760, at *5 (finding personal jurisdiction based in part on nominee defendant's use of New York bank account to receive redemptions); *Inteligo*, 2022 WL 17742686, at *5 (finding personal jurisdiction based in part on use of New York bank account to receive redemptions by defendant

---

[5] Despite Defendant's claims to the contrary, Platinum Management directed Defendant's investment into Sentry and corresponded directly with FGG on Defendant's behalf. Am. Compl. ¶ 71; *see also* Giblin Decl., Ex. 1 at ¶ 6; McCurrach Decl., Exs. 4–5. Accordingly, Platinum Management, and its employees and officers including Christopher Streit and Peter Sprecher, were agents of Defendant and their actions are imputable to Defendant. *See 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 559 B.R. 730, 743 (Bankr. S.D.N.Y. 2019) (finding that the acts of agents and knowledge acquired are presumptively imputed to their principals).

11

despite arguments defendant was a mere conduit for client investments and received no benefit from such investments).

Defendant also attempts to portray its contacts with New York as "incidental consequences of fulfilling a foreign contract." Mot. at 10. These conclusory assertions that there was no purposeful investment in New York are utterly contradicted by Defendant's own words describing itself as "a feeder fund into Madoff." McCurrach Decl. Ex. 1. Additionally, while the transfers through Sentry are the purpose of this action, Sentry was not Defendant's only touchpoint with BLMIS and Madoff. Am. Compl. ¶ 67. Defendant also sought investments in other known BLMIS feeder funds such as Santa Clara II Fund. *Id.*; *see also* McCurrach Decl., Ex. 6. Thus, "New York is not just where Defendant's money happened to end up." *Lombard Interlocutory Decision* at *8. Rather, Defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS." *Id.* at. *7 (internal citations omitted).

Finally, Defendant argues that Sentry's and Fortis IOM's contacts with New York "are not in and of themselves sufficient to establish jurisdiction over the defendant." Mot. at 8 and 10. But this is not what is alleged in the Amended Complaint. Far from basing the jurisdiction on just "random, fortuitous or attenuated" contacts the Defendant had with Sentry and Fortis IOM, the Amended Complaint alleges that Defendant itself deliberately took actions in, and intentionally directed towards, New York, and that those actions were by design "intertwined" with Sentry and Fortis IOM's actions as Defendant's agent. *Cf. Walden v. Fiore*, 571 U.S. 277, 286 (2014)[6] ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or

---

[6] This Court has already found that *Walden* "is of no assistance to Defendant" in similar cases where defendants expressly directed investment funds to a specific U.S. broker-dealer (BLMIS) through Sentry in order to invest in the U.S. securities markets, and thus purposefully availed itself of the laws and protections of the United States. *Multi-Strategy I*, 641 B.R. at 87; *see also Lombard Interlocutory Decision* at *8 (distinguishing *Walden*, and noting that where Trustee alleged that subsequent transferee defendant intentionally invested in BLMIS, "[d]efendant's own intentional contacts with New York create the requisite connection", not Sentry's contacts).

interactions with the plaintiff or other parties . . . . [d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.")

### 2.    *The Forum Selection And Choice of Law Clauses In The Subscription Agreements Are Strong Jurisdictional Contacts*

When Defendant invested in Sentry, Fortis IOM executed subscription agreements through which Defendant submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law.  *See* Giblin Decl., Exs. 1–2; Am. Compl. ¶¶ 74, 75, 81.  As this Court has recognized, a defendant's subscription agreements with Sentry further evidence a "strong nexus with New York" that supports jurisdiction.  *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy I*, 641 B.R. at 88 n.3 (finding defendant's irrevocable submission to New York jurisdiction when it signed its subscription agreements with Sentry is a relevant factor in deciding whether jurisdiction is reasonable); *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("a choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

Defendant argues that these provisions are irrelevant because the subscription agreements do not govern the redemptions at issue, the Trustee is not a party to these agreements, and therefore the Trustee cannot claim Defendant consented to this Court's jurisdiction.  Mot. at 8–9.  But the

13

Trustee is not arguing that this Court has jurisdiction solely based on these provisions.[7]  Rather, as

this Court found in *BLI*, Defendant's agreements to New York venue, jurisdiction, and law are

evidence of Defendant's purposeful direction of activities and the foreseeability of being subject

to the laws of the United States.  480 B.R. at 517; *see Multi-Strategy I,* 641 B.R. at 89 n.5 ("Even

though this Court held that the Defendant's consent to jurisdiction in New York courts contained

in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used

as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign

liquidators to recover redemption payments under British Virgin Island law, the fact that

Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in

determining whether the exercise of jurisdiction over Defendant is reasonable").

### 3.    *Defendant's Purposeful Use Of New York Bank Accounts Establishes Personal Jurisdiction*

This Court has jurisdiction because Defendant purposefully used the New York banking

system to subscribe into and redeem from Sentry. Through their subscription agreements with

Sentry, Defendant agreed to direct all subscription payments to an HSBC Bank USA bank account

(the "HSBC NY Account").  *See* Giblin Decl., Exs. 1–2; Am. Compl. ¶ 88.  Subscription payments

were then deposited into BLMIS's account at JPMorgan Chase Bank in New York.  *See* Giblin

Decl., Exs. 1–2; Am. Compl. ¶ 88.  Defendant also used Fortis IOM's New York-based Northern

Trust NY Account to receive redemption payments from Sentry, which are the subject of this

action. *See* Giblin Decl., Ex. 1 at ¶ 30(g), Ex. 2 at ¶ 30(g); Am. Compl. ¶ 89.

---

[7] As such, this Court's prior decision in the Fairfield chapter 15 liquidation proceedings, where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.*), Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018). The same is true for Defendant's reliance (Mot. at 8) on *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, because unlike in that case, the forum selection clause at issue here is not serving as the "only basis for personal jurisdiction."  No. 15-cv-824 (RJS), 2017 WL 476720, at *3 (S.D.N.Y. Feb. 2, 2017).

Defendant's purposeful use of New York bank accounts to receive subsequent transfers confers jurisdiction over Defendant for purposes of recovering those same transfers. *See Parson*, 2022 WL 3094092, at *4 (citing *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016) ("*Arcapita*"); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022); *see also Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of a New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [defendant]"). "Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]." *Arcapita*, 549 B.R. at 70, n.18.

As this Court recently held, "[w]here a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Meritz*, 2022 WL 3273044, at *3 (citing *Arcapita*, 549 B.R. at 71); *Parson*, 2022 WL 3094092, at *4 (same); *see also Multi-Strategy I*, 641 B.R. at 87 (finding jurisdiction over a subsequent transferee defendant that "received payments and sold shares through its New York based bank account," which gave it access to BLMIS through Sentry); *Picard v. BNP Paribas S.A., et al.*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to and received redemptions from a feeder fund's New York bank account).

15

Rather than address this Court's recent holdings finding that use of a U.S. bank account

supports jurisdiction,[8] Defendant instead lumps the use of U.S. bank accounts into a general

argument that their contacts with New York identified by the Trustee are insufficient.  *See* Mot. at

9–10.  But the line of cases on which Defendant relies for the proposition that it's New York

contacts are insufficient are, as this Court found, not relevant to the Trustee's actions against

parties — like Defendant — who directed investments to BLMIS feeder funds. [9]  *See, e.g., BNP*,

594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the

Defendants' redemptions as investors in the Tremont Funds which arose from their New York

contacts with the Tremont Funds.").

This is not a situation where the injury sought to be redressed in the complaint did not arise

out of Defendant's contacts with New York, as was the situation in cases cited by Defendant such

as *SPV Osus* and *Hau Yin To*.[10]  Rather, this is a fraudulent transfer recovery action brought by a

trustee in a SIPA liquidation proceeding to recover fraudulent transfers from a Defendant whose

transfers of funds to and from New York fulfilled the very purpose of their subscription agreements

with Sentry and evidence its intent to direct activity towards the U.S. securities markets.  *See BLI*,

480 B.R. at 513–514 ("This movement of money to and from BLMIS in the United States, as

contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate

---

[8] *See supra* n.2.

[9] In *SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018), the Second Circuit affirmed the District Court's finding that the plaintiffs' claims did not arise out of or relate to the defendants' alleged contacts with New York.  The decision of the District Court below (*see SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015)), noted that the foreign banks were alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States, and that plaintiffs failed to allege any meaningful connection between defendants' conduct and their injuries which were the subject of the suit); *see also Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 727–28 (S.D.N.Y. 2010) ("[T]he events giving rise to the physical injuries and deaths for which Plaintiffs seek redress are missile attacks in Israel, not funds transfers in New York").

[10] In *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), aff'd, 700 F. App'x 66 (2d Cir. 2017), plaintiffs were investors in a foreign BLMIS feeder fund who sued foreign entities in New York for enabling Madoff's fraudulent scheme, invoking allegations of breach of fiduciary duty and aiding and abetting fraud as well as additional common law claims.

objective' and the 'raison d'etre' of the Agreement between BLI and Fairfield Sentry"). Indeed, the Trustee is seeking to recover the very transfers that Defendant received through U.S. bank accounts in New York.

Defendant's systematic and purposeful use of New York bank accounts to direct funds to BLMIS through the Fairfield Funds standing alone is sufficient to establish minimum contacts with New York.

**B.  Defendant's Contacts with the Forum Are Sufficiently Related To The Trustee's Claims**

All of the foregoing contacts by Defendant "arise out of or relate to" the Trustee's claim to support jurisdiction. As the Supreme Court recently held, the "relate to" test does not require a causal relationship. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021). Rather, this test may be satisfied if the defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566.

Consistent with recent decisions by this Court, the Trustee's claims are directly related to Defendant's investment activities with FGG and BLMIS. *See*, *e.g.*, *Parson*, 2022 WL 3094092, at *5; *BSI*, 2022 WL 17412774, at *4, *LGT Bank*, 2023 WL 2003960, at *4. In those cases, as here, the Trustee is seeking to recover the very transfers that came through the New York accounts analyzed above, and thus Defendant's use of these New York accounts is integral to the Trustee's claims. *See, e.g.*, *HSH Nordbank v. Street*, No. 11-cv-9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. Jul. 18, 2012), (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts"); *Picard v. Chais* (*In re BLMIS*), 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding that defendant's contacts with the forum and the Trustee's claims are "inextricably related"). Similarly, the subscription agreements plainly "relate to" the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor*, 141 S. Ct.

at 1026 (finding that plaintiffs' claims related to defendant's in-state activity and rejecting requirement of a "strict causal relationship between the defendant's in-state activity and the litigation.").

**C.    The Exercise Of Personal Jurisdiction Over Defendant Is Reasonable**

Defendant fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal quotation marks and citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

This is not that "rare" case. The burden on Defendant is minimal. *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). As this Court has found, Defendant "is not burdened by this litigation" because they "[have] actively participated in this Court's litigation for over ten years," they are represented by U.S. counsel, and voluntarily submitted to the jurisdiction of New York courts and the application of New York law when they signed their subscription agreements with the Fairfield Funds. *Multi-Strategy I*, 641 B.R. at 88 (finding exercise of jurisdiction reasonable where, as here, defendant had "irrevocably" submitted to the jurisdiction of New York courts when it signed subscription agreements with FGG, had actively participated in the action, and was represented by U.S. counsel). This "forum and the Trustee both have a strong interest in litigating BLMIS

18

adversary proceedings in this Court."  *Id.* at 88–89; *see also In re Picard*, 917 F.3d 85, 103 (2d. Cir. 2019) (noting that the "United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property").  Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### D.   In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery.[11]  Such discovery may be authorized where — as here — a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).

## II.   SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

Defendant argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled the Fairfield Funds' actual knowledge.  Mot. at 11–17.  This argument has been repeatedly rejected by this Court, *see, e.g.*, *Multi-Strategy I*, 641 B.R. at 92–95, and now by the District Court.  On November 3, 2022, Judge Rakoff issued a decision denying interlocutory appeal of this Court's decisions denying seven motions to dismiss on the Section 546(e) issue, finding no reasonable grounds for disagreement as to the Bankruptcy Court's orders.  *See Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*").

---

[11] *Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-cv-10316 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a prima facie case for jurisdiction to obtain jurisdictional discovery).

A.      **Sentry Had Actual Knowledge of Madoff's Fraud**

Defendant sets forth at length the requirements of Section 546(e) and how they are presumably met in this case with respect to the initial transfers from BLMIS. Mot. at 12–19. None of this matters. Defendant completely ignores this Court's prior holdings that the Trustee has sufficiently pled that Sentry had actual knowledge of Madoff's fraud. *See Multi-Strategy I*, 641 B.R. at 92–93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4). As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Defendant regardless of whether Sentry or Defendant qualify as financial institutions, their agreements purport to be securities contracts, or their transfers purport to be settlement payments.[12]

B.      **Section 546(e) Does Not Apply Independently to Recovery Actions**

Defendant is also wrong that the protections afforded by Section 546(e) apply unless the Trustee alleges that *Defendant* had actual knowledge of Madoff's fraud. Mot. at 13–14. As this Court recently held, Section 546(e) "is not applicable to subsequent transfers[,]" and defendants cannot claim its protections "on [their] own behalf as . . . subsequent transferee[s]." *Multi-Strategy I*, 641 B.R. at 94–95; *see also Picard v. Bank Vontobel AG*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560, at *9 (Bankr. S.D.N.Y. Nov. 18, 2022*) ("Vontobel")*.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see*

---

[12] The District Court also held that whether an initial transfer could have been made "in connection with" an agreement between an initial transferee and subsequent transferee for purposes of Section 546(e) was a factual question that required discovery and was not answerable on the pleadings. *Multi-Strategy II*, 2022 WL 16647767, at *8–9. The Trustee does not concede that any agreements or transfers between Sentry and Defendant activate the protections under Section 546(e) or that any transferor or transferee is a financial institution or participant. Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendant or "for the benefit of" Defendant.

*also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming this Court's finding that "by its terms, the Section 546(e) safe harbor is a defense to the avoidance of the <u>initial</u> transfer") (internal citations omitted).

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")*,* the District Court confirmed that Section 546(e) does not provide independent protections for subsequent transferees in Section 550 recovery actions. The District Court had withdrawn the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550. However, in its decision, the District Court specifically limited the application of Section 546(e) to avoidance claims based on its plain language. *See Cohmad,* 2013 WL 1609154, at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to avoidance). Consistent with *Cohmad*, this Court has held that a subsequent transferee may seek the protections of Section 546(e) "only in so far as the avoidance of the initial transfer is concerned." *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *10 (Bankr. S.D.N.Y. Sept. 21, 2022); *see also Multi-Strategy II*, 2022 WL 16647767, at *5 (confirming *Cohmad* did not provide subsequent transferees the right to independently assert Section 546(e) where initial transferee is sufficiently alleged to have actual knowledge).

In *Multi-Strategy II*, the District Court confirmed its holding in *Cohmad* that avoidability of initial transfers does not turn on the "subjective mental knowledge" of the subsequent transferee and that the Trustee is not required to plead actual knowledge of the subsequent transferee. 2022 WL 16647767, at *13–15 (Defendant's "lack of knowledge of Madoff's fraud cannot render

unavoidable the otherwise avoidable initial transfer from Madoff Securities to Fairfield.").  As

such, subsequent transferees like Defendant cannot assert Section 546(e) protections where the

Trustee has adequately pleaded Sentry's actual knowledge.

## III.    THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT

Defendant argues that the Trustee has not adequately pled that BLMIS made the initial

transfers to Sentry with actual fraudulent intent, and therefore, the Trustee also cannot avoid

transfers under Section 548(a)(1)(A) of the Bankruptcy Code.  Mot. at 15–17.

Defendant challenges the Trustee's use of the Ponzi scheme presumption (Mot. at 15–17),

which is based on the recognition that "transfers made in the course of a Ponzi scheme could have

been made for no purpose other than to hinder, delay, or defraud creditors."  *Sec. Inv. Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 2018 WL 3078149, at *4 (Bankr.

S.D.N.Y. June 20, 2018) (citation omitted).  The intent to hinder, delay or defraud creditors is

presumed where the Trustee shows "(1) the transferor operated a Ponzi scheme; and (2) the

transfers made to the transferee by the debtor were 'in furtherance' of the Ponzi scheme."  *Picard*

*v. Nelson (In re BLMIS)*, 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019) ("*Nelson*").

Contrary to Defendant's arguments, this Court and the District Court have repeatedly

determined that the Trustee can rely on the Ponzi scheme presumption to demonstrate BLMIS's

actual intent to hinder, delay, or defraud creditors.  *See, e.g.*, *BJB,* 2022 WL 17726520, at *13;

*Picard v. Citibank,* 2022 WL 4493234, at *4–5 (Bankr. S.D.N.Y. Sept. 27, 2022) ("*Citibank II*");

*First Gulf*, 2022 WL 3354955, at *10 ("The Ponzi scheme presumption is the law of this Circuit

and the Trustee is entitled to rely on it to allege BLMIS' intent.").

Other defendants have, as here, similarly challenged the Ponzi presumption on the basis of

the reasoning set forth in Judge Menashi's concurring opinion in *Citibank I*, but this Court has

repeatedly rejected those arguments:

> BJB argues that this Court should follow Judge Menashi's concurrence in *Picard v. Citibank, N.A., et al.* (*In re BLMIS*), in which he questions the use of the Ponzi scheme presumption and fraudulent transfer law in cases such as this. This Court has re-read Judge Menashi's concurrence and finds his concurrent opinion unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent. Without the presumption, BJB would not be "off-the-hook" for the two-year transfers because the Trustee would meet (and, in this case, has met) his pleading burden by pleading the "badges of fraud" with respect to BLMIS.

*BJB*, 2022 WL 17726520, at *13. So too has the district court. *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022). ("Notwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'") (citation omitted); *see also First Gulf*, 2022 WL 3354955, at *10 (same).

Here, as in *BJB*, *Sage Realty*, *First Gulf,* and *Citibank II*, the allegations in the Amended Complaint regarding BLMIS's Ponzi scheme are sufficient to plead the avoidability of the relevant transfers. The Amended Complaint contains detailed allegations that BLMIS engaged in a Ponzi scheme and that the initial transfers to Sentry were made in furtherance of that scheme. Am. Compl. ¶¶ 29–54.

Alternately, and contrary to Defendant's assertion (Mot. at 15), the Trustee has sufficiently pled the necessary elements of BLMIS's actual intent to defraud. Am. Compl. ¶¶ 29–54. This Court and the District Court have recognized the independent sufficiency of the badges of fraud alleged here. *See Nelson*, 610 B.R. at 235 (finding initial transfers made with actual fraudulent intent based on (i) concealment of facts and false pretenses by BLMIS, (ii) BLMIS's insolvency, and (iii) lack of consideration for the fictitious transfers); *see also Picard v. JABA Assocs. LP (In re Madoff)*, 528 F. Supp. 3d 219, 240–41 (S.D.N.Y. 2021).

## IV.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

### A.    The Affirmative Defense of "Good Faith" is Premature

Defendant argues that the Court should dismiss the Amended Complaint as a matter of law because its purported good faith is clear on the face of the Amended Complaint.  Mot. at 17–19. This Court has already rejected the "good faith" affirmative defense as inappropriate and untimely on a motion to dismiss.  *See Banque Syz*, 2022 WL 2135019, at *10–11 (holding that it is a defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint"); *Vontobel*, 2022 WL 17087560, at *11– 12; *Picard v. Credit Suisse AG*, Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676, at *8 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse I*"); *Picard v. Credit Suisse AG*, Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739, at *8–10 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse II*"); *First Gulf*, 2022 WL 3354955, at *10–11; *BJB*, 2022 WL 17726520, at *17; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *1–3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), 2022 WL 3365256, at *6 (Bankr. S.D.N.Y. Aug. 12, 2022).

Affirmative defenses are fact-driven, requiring factual analyses and a presentation of evidence.  *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a fact-based determination can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.") (cleaned up); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*,

717 F.3d 295, 308 (2d Cir. 2013)).  That sort of factual analysis is not appropriate at this stage,

particularly with respect to a good faith defense.  *See, e.g.*, *Picard v. Merkin (In re BLMIS)*, 440

B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in

good faith . . . is a disputed issue that this Court can properly determine only upon consideration

of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452

B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably

factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved

at the motion to dismiss stage.").

### B.   Even If the Court Were to Consider the "Good Faith" Affirmative Defense, It Does Not Appear on the Face of the Amended Complaint

Notwithstanding that the Second Circuit has made it clear that the good faith defense is not

the Trustee's pleading burden, but in fact is Defendant's burden to plead and prove,[13] Defendant

maintains that its good faith has somehow been established as a matter of law on the face of the

Amended Complaint.  Mot. at 17–19. As recognized in *Merkin I*, Defendant's argument applies

only as a "limited exception to the general rule" that good faith cannot be established on a motion

to dismiss.  440 B.R. at 256.  To prevail under this limited exception, Defendant must show there

is an "insuperable bar to securing relief" set forth on the face of the Complaint.  *Dreier*, 452 B.R.

at 426 (citation omitted);  *see also United States v. Space Hunters, Inc*., 429 F.3d 416, 426 (2d Cir.

2005) (denying motion to dismiss unless "the facts supporting the defense appear on the face of

the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief") (internal quotation marks and citation omitted).

Defendant's argument that a diligent inquiry into BLMIS would have been futile fails this standard.

---

[13] *Citibank I*, 12 F.4th at 178, 195-96 (holding that in a SIPA liquidation proceeding the good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith).

Tellingly, Defendant fails to cite a single case where a court has dismissed an action at the pleading stage based on a good faith defense. This underscores that such a defense is premature on the pleadings. *See, e.g.*, *Credit Suisse I*, 2022 WL 17098676, at *8 ("Credit Suisse does not meet this [stringent] standard and it does not provide any cases where good faith was successfully plead on a motion to dismiss."). Defendant's reliance on an assortment of cherry-picked allegations as to BLMIS's and Sentry's secrecy and factual inferences they wish this Court to draw in their favor also fails. *See ABN Ireland*, 2022 WL 1304589, at *3. Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud, for instance, is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[14]

## V.   THE TRUSTEE'S AMENDED COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin II*") (citation omitted). As this Court recently held, the Trustee is not required to perform a tracing analysis or to present a "dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy I*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195); *Banque Syz,* 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149–50 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012

---

[14] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 402 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise") (citation omitted).

WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).   Rather, "the Trustee need only allege

sufficient facts to show the relevant pathways through which the funds were transferred from

BLMIS to [the subsequent transferee]."   *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3;   *see*

*also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747

(Bankr. S.D.N.Y. 2019).   In addition, the Trustee "must allege the necessary vital statistics—the

who, when, and how much of the purported transfers to establish an entity as a subsequent

transferee of the funds."   *Multi-Strategy I*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at 195).

The Trustee's Amended Complaint meets these requirements by alleging that Defendant

received transfers, identified by date and amount in accompanying exhibits, from Sentry, and that

Sentry invested all or substantially all of its funds with BLMIS.   Am. Compl. ¶¶ 2, 76–82, 96, Ex.

C.   Thus, the Amended Complaint plausibly alleges that Defendant received subsequent transfers

of customer property by (a) outlining the relevant pathways through which customer property was

transferred from BLMIS to Sentry and subsequently to Defendant, and (b) providing the necessary

vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer.   Nothing more

is required.   As this Court recently held in a number of decisions, these "exhibit[s] provide[]

[Defendant] with the 'who, when, and how much' of each transfer."   *Multi-Strategy I*, 641 B.R. at

95; *see also Banque Syz*, 2022 WL 2135019, at *12.[15]

---

[15] *See also Carige*, 2022 WL 2387522, at *7; *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551, at *6 (Bankr. S.D.N.Y. June 30, 2022); *First Gulf*, 2022 WL 3354955, at *11; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Picard v. Schroder & Co.*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022) (amended); *Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022); *Barfield Nominees*, 2022 WL 4542915, at *8; *Picard v. Abu Dhabi Investment Authority*, Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049, at *9 (Bankr. S.D.N.Y. Oct. 28, 2022); *Picard v. Fullerton Capital PTE Ltd.*, Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714, at *7 (Bankr. S.D.N.Y. Oct. 28, 2022); *Vontobel*, 2022 WL 17087560, at *10; *BJB*, 2022 WL 17726520, at *14 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

**A.    Defendant Misstates the Trustee's Pleading Burden**

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendant argues for a new one, asserting that the Trustee must trace and tie each subsequent transfer Defendant received to a specific initial transfer from BLMIS. Mot. at 5, 23–25. However, the Court already rejected this argument in *Merkin II*, refusing to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, the Court already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin II*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

**B.    Defendant's Remaining Implausibility Arguments Fail on a Motion to Dismiss**

Defendant also argues that it is implausible under "basic arithmetic" that the transfers to Defendant contained BLMIS customer property because Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 21–22. This argument misses the point. As this Court has stated, "[t]here is no dispute that the Trustee is limited to 'a single satisfaction' under § 550(a)." *Multi-Strategy I*, 641 B.R. at 95 (citing § 550(d)). "He may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction." *Id*. at 95–96 (citing § 550(a)(2)). And, under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation

among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Platinum in this action and from defendants in other actions in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12. "Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation." *Multi-Strategy I*, 641 B.R. at 96.

Defendant's arguments are also, absent discovery, premature. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011). This is one reason why this Court in *Merkin II* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

## VI.    THE TRUSTEE'S AMENDED COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS TO SENTRY

Defendant argues that the Amended Complaint fails to satisfy the requirements of Rule 8(a)(2), to include a "short and plain statement" showing the Trustee is entitled to relief, as well as violating the incorporation by reference requirements of Rule 10(c).  Mot. at 23–25.  In particular, Defendant argues that the Trustee's incorporation of the Fairfield SAC against the Fairfield Funds is "improper" to state such a claim and "a blatant violation" of the Federal Rules. *Id*. at 24–25.  But as this Court has repeatedly held in substantively similar adversary proceedings, the Trustee may incorporate the Fairfield SAC to demonstrate the avoidability of the initial transfers from BLMIS.[16]

In *Multi-Strategy I*, for example, this Court held that "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)." *Multi-Strategy I*, 641 B.R. at 91 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case"));  *see also In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.").

---

[16] *See Banque Syz*, 2022 WL 2135019, at *7–8 (noting Second Circuit precedent instructs courts to adopt "a more liberal view" as to the Rule 9(b) pleading standard "[w]here the actual fraudulent transfer claim is asserted by a bankruptcy trustee" and holding that "[t]hrough the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud") (quoting *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. at 329; *Carige*, 2022 WL 2387522, at *6–7 (same); *Vontobel*, 2022 WL 17087560, at *7 (same).

Platinum's argument also conflicts with the District Court's opinion in *Sec. Inv. Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26 (S.D.N.Y. 2013), where the

Trustee's incorporation by reference of the then-operative Fairfield complaint was found

sufficient:

> [T]he Trustee's complaint against [defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id*. at 36. As this Court has repeatedly held, "the district court's instruction" is to be followed.

*Vontobel*, 2022 WL 17087560, at *6.

Moreover, even if the Court were to find that the adversary proceedings are separate actions

for purposes of Rule 10(c), this Court still can permit incorporation by reference in appropriate

circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y.

2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being

confined to another pleading in the same action and permitting incorporation of entire pleadings

in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co.*, 843 F. Supp. 2d 191, 214

n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was]

familiar with the filings in the other eight cases, which [were] substantially similar to [that] case,

and the usual concerns about inferring arguments from other submissions have less force").

Cases cited by Defendant for the proposition that Rule 10 does not permit such "wholesale"

incorporation are inapposite because, unlike in this case, plaintiffs there were incorporating

pleadings by reference in an attempt to add new claims against their defendants.[17]  In those cases,

the court held that incorporation would have led to confusion and a lack of notice as to the

additional claims asserted.  *Id.*  By contrast, the Trustee here is not seeking to add new claims, and

Defendant would be hard-pressed to argue they lacked notice that the Trustee was seeking to avoid

the initial transfers to Sentry.

Defendant also argues that the Trustee's incorporation of the Fairfield SAC is "unfair and

unduly burdensome."  Mot. at 25.  However, Defendant ignores the purpose of the incorporation

in the Trustee's Amended Complaint: to make a *prima facie* showing that the initial transfers are

avoidable under Section 548(a) so that the Trustee can recover from Defendant under Section

550(a).  The Amended Complaint only incorporates the Fairfield SAC—as part of one

paragraph—in pleading the avoidability of the initial transfers.  Am. Compl. ¶ 96.  Defendant can

admit the allegations of the avoidability of the initial transfers, deny them, or respond that they do

not have sufficient information to admit or deny.  This places no undue burden on Defendant in

responding to the Trustee's claims against them or on the Court.  Doing as Defendant appears to

suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain

statement" and would unnecessarily add countless pages to the Amended Complaint.  Such

duplication is unnecessary in pleading recovery under Section 550 and inconsistent with the

purpose of Rule 8.  *See In re Madoff Sec.*, 501 B.R. at 36.

In any case, regardless of incorporation, this Court may take judicial notice of the operative

Fairfield SAC and its prior decision holding that the complaint sufficiently alleges the avoidability

---

[17] *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 460–66 (E.D.N.Y. 2007) (finding improper
incorporation by reference of pleadings from prior actions to plead entirely new claims not otherwise alleged in
complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4
(E.D.N.Y. Mar. 26, 2010) (rejecting plaintiff's attempt to state new claim by incorporating by reference a reply brief
he filed in the case which included "no specific factual allegations" supporting the claim).

of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2. On a

motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and

other related documents that appear in the court records of prior litigation and that relate to the

case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).

"Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp.

2d 449, 453 (S.D.N.Y. 2008).

### **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated:   March 13, 2023
        New York, New York

*/s/ Elizabeth McCurrach*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Elizabeth G. McCurrach
Email: emccurrach@bakerlaw.com
Regina Griffin
Email: rgriffin@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com
Shade Quailey
Email: squailey@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*