**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01697 (CGM) |
| v. | |
| ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED, | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ABN AMRO RETAINED NOMINEES (IOM) LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| Defendants | |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

STATEMENTS OF FACTS ...................................................................................................3

    A.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................3

    B.    FORTIS IOM AND ITS RELEVANT TRANSACTIONS WITH
        PLATINUM AND THE FAIRFIELD FUNDS ........................................................4

ARGUMENT ........................................................................................................................6

I.    THIS COURT HAS PERSONAL JURISDICTION OVER FORTIS IOM .......................6

    A.    Fortis IOM Purposefully Availed itself of the Laws and Privileges of
        Conducting Business in New York and the United States.......................................7

        1.    Fortis IOM Confirmed it Received, Read, and Agreed to be Bound
            by the Fairfield Funds' PPMs, Which Made Clear its Business
            Activities Would be Directed at New York ...............................................8

        2.    Fortis IOM Agreed to Submit to New York Jurisdiction, New York
            Forum, and New York Law ......................................................................10

        3.    Fortis IOM's Purposeful Use of New York Bank Accounts
            Establishes Personal Jurisdiction ............................................................11

        4.    Fortis IOM Derived Significant Revenue in Connection with Its
            Activities Directed to New York ..............................................................14

    B.    Fortis IOM's Contacts with the Forum are Sufficiently Related to the
        Trustee's Claims ..................................................................................................15

    C.    The Exercise of Personal Jurisdiction Over Fortis IOM is Reasonable.................16

    D.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery, and if
        Needed, the Opportunity to Amend the Complaint ...............................................18

II.    FORTIS IOM'S ASSERTION OF A MERE CONDUIT DEFENSE IS
    IMPROPER AT THE MOTION TO DISMISS STAGE ................................................18

    A.    The Amended Complaint Plausibly Alleges that Fortis IOM is a Subsequent
        Transferee ..........................................................................................................19

    B.    Even if the Court were to Consider the "Mere Conduit" Affirmative
        Defense, Fortis IOM Fails to Meet its Stringent Burden ......................................20

III.   THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE
       RESOLVED AT THE MOTION TO DISMISS STAGE ..................................................25

       A.   The Affirmative Defense of "Good Faith" is Premature ......................................25

       B.   Even if the Court were to Consider the "Good Faith" Affirmative Defense,
            it Does Not Appear on the Face of the Amended Complaint ................................26

IV.   SECTION 546(E) DOES NOT BAR RECOVERY FROM FORTIS IOM ......................29

V.    THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT ...............30

CONCLUSION ....................................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007)..................................................................22

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996).......................................................................8

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...........................................................................13

*Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*,
    No. 05-50867, 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006)..................22, 24

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010).......................................................28

*Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
    397 B.R. 1 (Bankr. S.D.N.Y. 2007).........................................................23

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 22 CIV 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...............9, 18

*In re Bernard L. Madoff Sec. LLC.*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ............26, 27, 28

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................11

*Cargo Partner AG v. Albatrons, Inc.*,
    352 F.3d 41 (2d Cir. 2003).....................................................................19

*Chase Manhattan Bank v. Banque Generale Du Com.*,
    No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)..........10, 11

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..................................................................6, 17

*In re CIL Ltd.*,
    582 B.R. 46 (S.D.N.Y. 2016)..................................................................18

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001).......................................................7

i

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................................7

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
   No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .........................................11

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)................................................................................................6

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011)..............................................................................27

*Eldesouky v. Aziz*,
   No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)................................12

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
   357 B.R. 257 (Bankr. S.D.N.Y. 2006), *opinion modified on reconsideration*,
   No. 01-16034 (AJG), 2007 WL 680764 (Bankr. S.D.N.Y. Mar. 1, 2007) ...........................24

*Enron Corp. v. J.P. Morgan Secs. Inc. (In re Enron Corp.)*,
   361 B.R. 36 (Bankr. S.D.N.Y. 2006).................................................................19, 21, 23

*ESI, Inc. v. Coastal Corp.*,
   61 F. Supp. 2d 35 (S.D.N.Y. 1999) ....................................................................................8

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019)..................................................................................8

*Fairfield Sentry Ltd. v. HSBC Sec. Serv.*,
   No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022)..............................18

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .....................11

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)....................................................................................................15

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000)...............................................................................................20

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*,
   385 B.R. 52 (Bankr. S.D.N.Y. 2008)................................................................................24

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
   700 F. App'x 66 (2d Cir. 2017) ..................................................................................13, 16

*HSH Nordbank, AG New York Branch v. Street*,
   No. 11 Civ 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................................16

*Isaiah v. JPMorgan Chase Bank*,
   960 F.3d 1296 (11th Cir. 2020) ...................................................................................19, 22

*In re J.P. Jeanneret Assoc., Inc.*,
   769 F. Supp.2d 340 (S.D.N.Y. 2011).................................................................................19

*In re Kaiser Steel Corp.*,
   110 B.R. 514 (D. Colo.), *aff'd sub nom.*, 913 F.2d 846 (10th Cir. 1990)...............................25

*Kelly–Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)..............................................................................................26

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618, 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ..........................................19

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) .......................................................................................................13

*McKenna v. Wright*,
   386 F.3d 432 (2d Cir. 2004)...............................................................................20, 21, 22

*Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank,
N.A. (In re Motors Liquidation Company)*,
   552 B.R. 253 (Bankr. S.D.N.Y. 2016)................................................................................24

*Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*,
   Adv. Pro. No. 11-2251, 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016)................21, 23

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016)........................................................................................12, 13

*Picard v. Avellino (In re BLMIS)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016)..................................................................................27

*Picard v. Bank Julius Baer & Co. Ltd. (In re BLMIS)*,
   Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec.
   15, 2022) ................................................................................................................. *passim*

*Picard v. Bank Vontobel AG (In re BLMIS)*,
   Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov.
   18, 2022) ................................................................................................................. *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
   Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
   30, 2022) ...............................................................................................................................9

*Picard v. Banque Syz (In re BLMIS)*
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
    14, 2022) ............................................................................................................... *passim*

*Picard v. BNP Paribas S.A., et al.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................................................17

*Picard v. BSI AG (In re BLMIS)*,
    Adv. Pro. No. 12-01209 (CGM)*, 2022 WL 17412774 (Bankr. S.D.N.Y. Dec.
    2, 2022) ..........................................................................................................14, 16

*Picard v. Bureau of Labor Ins.* (*In re BLMIS*),
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................ *passim*

*Picard v. Citibank, (In re BLMIS),*
    Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234 (Bankr. S.D.N.Y. Sept.
    27, 2022) ........................................................................................................30, 31

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) *cert. denied sub nom. Citibank, N.A. v. Picard*,
    142 S. Ct. 1209 (2022) ....................................................................................... *passim*

*Picard v. Credit Suisse AG*,
    Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676 (Bankr. S.D.N.Y. Nov.
    21, 2022) ..................................................................................................................27

*Picard v. Credit Suisse AG*,
    Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739 (Bankr. S.D.N.Y. Nov.
    21, 2022) ........................................................................................................28, 29

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................7, 16

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
    No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...............5, 28, 29

*Picard v. First Gulf Bank*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) ............................................................................................................... *passim*

*Picard v. Inteligo Bank Ltd., (In re BLMIS)*,
    Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686 (Bankr. S.D.N.Y. Dec.
    15, 2022) ..........................................................................................................9, 19

*Picard v. JABA Assocs. LP (In re BLMIS)*,
    528 F.Supp. 3d 219 (S.D.N.Y. 2021) *aff'd sub nom.* 49 F.4th 170 (2d Cir.
    2022) ........................................................................................................................31

*Picard v. Keller Family Trust (In re BLMIS)*,
     634 B.R. 39 (Bankr. S.D.N.Y. 2021) ........................................................................21

*Picard v. LGT Bank in Liechtenstein Ltd.*, *(In re BLMIS)*,
     Adv. Pro. No. 11-02929 (CGM), 2023 WL 2003960 (Bankr. S.D.N.Y. Feb.
     14, 2023) ................................................................................................... *passim*

*Picard v. Maxam Absolute Return Fund et al.*,
     460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012)....................9, 17

*Picard v. Merkin*
     440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........................................................20, 26, 28

*Picard v. Miller (In re BLMIS)*,
     631 B.R. 1 (Bankr. S.D.N.Y. 2021) ..........................................................................24

*Picard v. Multi-Strategy Fund Ltd.*,
     641 B.R. 78 (Bankr. S.D.N.Y. 2022) ................................................................ *passim*

*Picard v. Nelson (In re BLMIS)*,
     610 B.R. 197 (Bankr. S.D.N.Y. 2019)........................................................25, 30, 31

*Picard v. Parson Finance Panama S.A. (In re BLMIS)*,
     Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
     2022) ........................................................................................................................16

*Picard v. Sage Realty*,
     No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) .............................31

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
     Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6,
     2023) ..................................................................................................................19, 25

*Picard v. Trincastar (In re BLMIS)*,
     Adv. Pro. No. 11-02731 (CGM), 2023 WL 2146576 (Bankr. S.D.N.Y. Feb.
     21, 2023) ............................................................................................................12, 17

*Picard v. UBS Europe SE, (In re BLMIS)*,
     Adv. Pro. No. 12-01577 (CGM), 2023 WL 2290822 (Bankr. S.D.N.Y. Feb.
     28, 2023) ................................................................................................... *passim*

*In re Picard*,
     917 F.3d (2d Cir. 2019)................................................................................17, 18

*In re Pretty Girl, Inc.*,
     644 B.R. 298 (Bankr. S.D.N.Y. 2022) ......................................................................23

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)....................................................................19

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010).....................................................................6

*Sarachek v. Schochet (In re Agriprocessors)*,
    Adv. Pro. No. 10-09190, 2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14,
    2012) .............................................................................................24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Adv. Pro. No. 08-01789 (SMB), 2018 WL 3078149 (Bankr. S.D.N.Y. June
    20, 2018) ........................................................................................30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...................29

*See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner,
    Heine, Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir. 1997).....................................................................21

*Spectra Prod., Inc. v. Indian River Citrus Specialties, Inc.*,
    144 A.D.2d 832, 534 N.Y.S.2d 570 (3d Dep't 1988) ..............................15

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015)...............................................15, 16

*Tamam v. Fransabank SAL*,
    677 F. Supp.2d 720 (S.D.N.Y. 2010)...............................................13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019).....................................................................7

*United States v. Space Hunters, Inc.*,
    429 F.3d 416 (2d Cir. 2005)...................................................................27

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014)......................................................26

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................10

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)...................................................................16

**Statutes**

11 U.S.C. § 546(e) ................................................................................1, 3, 29

11 U.S.C. § 548(a)(1)(A) ..........................................................................................1, 30

11 U.S.C. § 548(c) ...........................................................................................................26

11 U.S.C. § 550(a) ...........................................................................................................19

11 U.S.C. § 550(b) ........................................................................................1, 2, 25, 26

**Rules**

Fed. R. Bankr. P. 7012 .....................................................................................................19

Fed. R. Civ. P. 12(b)(2)...................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 19, 20, 24

Fed. R. Civ. P. 15(c) .........................................................................................................19

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021)...........................................................19

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law and the Declaration of Regina Griffin ("Griffin Decl.") in

opposition to the motion to dismiss the Trustee's Amended Complaint (the "Amended Complaint"

or "Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the

"Motion" or "Mot.") filed by ABN AMRO Fund Services (Isle of Man) Nominees Limited,

formerly known as Fortis (Isle of Man) Nominees Limited ("Fortis IOM" or "Defendant").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover approximately $104 million in subsequent transfers that Fortis IOM, along with co-

defendant Platinum All Weather Fund Limited ("Platinum"),[1] received from Fairfield Sentry

Limited ("Sentry") and Fairfield Sigma Limited ("Sigma" and together with Sentry, the "Fairfield

Funds").

Fortis IOM moves to dismiss the Amended Complaint, arguing that (i) this Court does not

have personal jurisdiction over Fortis IOM; (ii) the Amended Complaint fails to plausibly allege

Fortis IOM was a transferee as opposed to a conduit; (iii) the Amended Complaint establishes

Fortis IOM's Section 550(b) good faith and value defenses; and (iv) the claims in the Amended

Complaint are not avoidable under Section 548(a)(1)(A), and in any event, are barred by the

protections of Section 546(e).  These arguments are substantially the same as those consistently

---

[1] Platinum has filed a separate motion to dismiss in this proceeding concerning transfers received from Sentry.  *See Picard v. ABN AMRO Retained Nominees (IOM) Limited et al*, Adv. Pro. No. 12-01697 (CGM) (Bankr. S.D.N.Y. Jan. 12, 2023), ECF No. 150.  The Trustee is simultaneously herewith submitting a response to that motion.

rejected by this Court in other subsequent transfer cases (as discussed more fully in Sections I-V, *infra*). For the reasons set forth below, Fortis IOM's motion should be denied in its entirety.

First, this Court has personal jurisdiction over Fortis IOM, which purposefully engaged in business activities that were directed to New York. Fortis IOM purposefully directed funds to the Fairfield Funds for investment knowing that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of the Fairfield Funds' investments, that the Fairfield Funds fed substantially all of their funds into BLMIS, and that BLMIS was essential to the Fairfield Funds' investments. Fortis IOM maintains that it is different from the other subsequent transferee defendants, but like the other subsequent transferee defendants, it knowingly engaged in business activities directed to New York. Further, Fortis IOM's subscription agreements with the Fairfield Funds required it to submit to New York jurisdiction, forum selection, and choice of law clauses. Fortis IOM also designated and used its New York bank account to receive the transfers at issue from Sentry. These facts, and the additional contacts discussed herein, are more than sufficient to establish jurisdiction.

Second, Fortis IOM asserts a "mere conduit" defense that is rarely resolved at the pleading stage. As this Court has already recognized, it is not the Trustee's pleading burden to anticipate and rebut the mere conduit defense. Regardless, the Amended Complaint plausibly alleges that Fortis IOM was a transferee. Nothing more needs to be alleged. Moreover, the mere conduit defense is fact-intensive, premature at the pleading stage, and clearly inappropriate for a motion to dismiss.

Third, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate to assert on a motion to dismiss. As this Court found in numerous cases, it is Fortis IOM's burden to plead this affirmative

defense in an answer and prove it with evidence.  Fortis IOM cannot establish its purported good faith on the face of the Amended Complaint.

Fourth, Section 546(e)'s protections for settlement payments or transfers in connection with securities contracts are inapplicable because the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of Madoff's fraud.  The Trustee is therefore not barred from recovering the subsequent transfers from Fortis IOM.

Finally, this Court and the District Court have repeatedly determined that the Trustee can rely on the Ponzi scheme presumption, as well as numerous badges of fraud, to demonstrate BLMIS's actual intent to hinder, delay, or defraud creditors.

For these reasons, as further detailed below, the Trustee respectfully requests that this Court deny Fortis IOM's motion to dismiss.

## STATEMENTS OF FACTS

### A.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Am. Compl. ¶ 23.  BLMIS was a securities broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC") beginning in 1960.  *Id*. ¶¶ 23–24.  BLMIS purported to operate three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id*. ¶ 25.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy") which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id*. ¶¶ 33, 36–38.  In reality, Madoff operated a Ponzi scheme through its IA Business.  *Id*. ¶ 29.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal

violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extensive financial damage Madoff caused was made possible by BLMIS "feeder funds" — large investment funds created to funnel investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021) *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank I*"). The Fairfield Funds were the largest BLMIS feeder funds. *See* Second Am. Compl. ¶ 295, *Picard v. Fairfield Inv. Fund Ltd., et al*., Adv. Pro. No. 09-01239 (CGM), (Bankr. S.D.N.Y. Aug. 28, 2020) ECF No. 286. ("Fairfield SAC").

**B.    FORTIS IOM AND ITS RELEVANT TRANSACTIONS WITH PLATINUM AND THE FAIRFIELD FUNDS**

Fortis IOM[2] was part of a global network of financial organizations, collectively known as "Fortis," that provided banking, asset management, structured financing, and administrative services to investment funds such as Platinum. Am. Compl. ¶¶ 61, 87. Fortis touted this unified approach, claiming in its marketing materials and public filings that the constituent parts of the network "Act[ed] as One," and that the network communicated seamlessly. *Id.* ¶ 61.

Co-defendant Platinum's marketing materials identified Fortis IOM as the "Administrator, Custodian and Transfer Agent" of Platinum (Am. Compl. ¶ 62), a single-strategy hedge fund that invested exclusively in BLMIS feeder funds. Am. Comp. ¶¶ 55, 70–72. The Amended Complaint further alleges that Fortis IOM and its affiliates engaged in additional transactions with other BLMIS feeder funds, including Fortis IOM serving as the administrator of Harley International (Cayman) Limited. *Id.* ¶ 87. In connection with their multiple BLMIS-related transactions, Fortis

---

[2] The Amended Complaint alleges that Fortis IOM was a wholly-owned subsidiary of Fortis Prime Fund Solutions (Isle of Man) Limited (formerly known as Fortis Fund Services (Isle of Man) Limited) ("FPFS IOM"). Am. Compl. ¶ 60. During the relevant period, Fortis IOM and FPFS IOM functioned as one entity, sharing the same address, offices, phone numbers, employees, and directors. *Id.*

IOM and the Fortis network of affiliates conducted due diligence on BLMIS in New York, and as a result of that due diligence, clear indicia of BLMIS's fraud were exposed.[3]  *Id*. ¶¶ 59, 62, 67, 86–87.

Both Fortis IOM and co-defendant Platinum entered into transactions with the Fairfield Funds (Am. Compl. ¶¶ 78–79), and they derived significant revenue from New York as a result. *Id*. ¶ 69.  Indeed*,* Fortis IOM concedes that in connection with these investments, it received "financial benefit" which was "derived from" the Fairfield Funds.  Mot. at 21.

The Fairfield Funds were controlled by the Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York.  *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").  Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Am. Compl. ¶ 64; Fairfield SAC ¶¶ 52, 318.  Sigma acted as a foreign currency feeder fund, facilitating euro investments with BLMIS, and investing 100% of its assets in Sentry.  Am. Compl. ¶ 65.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion. Am. Compl. ¶ 92.  In 2011, the Trustee settled with the Fairfield Funds.  *Id.* ¶ 93.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.*  Sigma separately consented to judgment in the amount of $752.3 million.  Sigma Consent

---

[3] In a separate action, the Trustee has sued affiliates of Fortis IOM to recover $265.5 million in subsequent transfers of BLMIS customer property they received from funds operated by Tremont Partners, Inc.  *See* Second Am. Compl., *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. Pro. 10-05355 (CGM), (Bankr. S.D.N.Y. Jun. 17, 2022), ECF No. 205.  The Fortis defendants in that case also filed a motion to dismiss, and oral argument was held before the Court on February 15, 2023.

Judgment, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July

13, 2011), ECF No. 110.  As Sigma was a feeder fund that invested in BLMIS indirectly through

Sentry, these amounts represent a portion of Sentry's $3.054 billion in withdrawals from

BLMIS.  *See id.*  The Trustee then commenced a number of adversary proceedings, including this

proceeding, to recover the approximately $3 billion in outstanding stolen customer property.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER FORTIS IOM

"To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee must make a prima facie showing that

jurisdiction exists."  *See Picard v. Banque Syz (In re BLMIS)* Adv. Pro. No. 11-02149 (CGM),

2022 WL 2135019, at *2 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*") (internal quotation and

citation omitted); *see also Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir.

2013).  As this Court has held, "[a]t this preliminary stage, 'the plaintiff's prima facie showing

may be established solely by allegations.'"  *Banque Syz*, 2022 WL 2135019, at *2 (quoting

*Dorchester Fin.*, 722 F.3d at 84–85).  A plaintiff also may establish a *prima facie* case of

jurisdiction through affidavits and supporting materials that contain averments of facts outside the

pleadings.  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

The pleadings and affidavits are to be construed "in the light most favorable to plaintiffs, resolving

all doubts in their favor."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.

2010).

"In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice."  *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 85 (Bankr. S.D.N.Y. 2022) (internal

quotation marks omitted) ("*Multi-Strategy*") (quoting *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (*"BLI"*)).  A court may exercise general[4] or specific personal jurisdiction based on the nature of the defendant's contacts with the forum.  *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).  Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities.  *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citing *Cromer*, 137 F. Supp. 2d at 473).

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant: (i) the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or purposefully directed its conduct into the forum State; (ii) the plaintiff's claim must arise out of or relate to the defendant's forum conduct; and (iii) the exercise of jurisdiction must be reasonable under the circumstances.  *Picard v. UBS Europe SE*, *(In re BLMIS)*, Adv. Pro. No. 12-01577 (CGM), 2023 WL 2290822 at *3 (Bankr. S.D.N.Y. Feb. 28, 2023) (*"UBS Europe SE"*) (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)).  All of these conditions are satisfied here, and thus the Court has personal jurisdiction over Fortis IOM.

### A.    Fortis IOM Purposefully Availed itself of the Laws and Privileges of Conducting Business in New York and the United States

In determining whether a defendant's forum contacts establish personal jurisdiction, the Court must look at the "totality of the circumstances," not each contact in isolation.  *See, e.g.*, *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc.*

---

[4] General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction where the claims are unrelated to those contacts.  *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Because the Amended Complaint amply alleges specific jurisdiction, there is no need to reach the issue of general jurisdiction.

*v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999); *Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum.").

Fortis IOM purposefully engaged in business activities that were directed to New York which more than establish the minimum contacts necessary for this Court to exercise jurisdiction over Fortis IOM. Specifically, Fortis IOM: (1) knowingly directed funds to BLMIS in New York for investment through Sentry and agreed to be bound by the terms set forth in the Fairfield Funds' Private Placement Memorandum ("PPM"), which highlighted BLMIS's central role in New York; (2) executed subscription agreements whereby it agreed to New York jurisdiction, venue, forum selection, service of process, and law; (3) purposefully used New York bank accounts to subscribe into and receive redemptions from the Fairfield Funds; and (4) derived significant revenue from New York in connection with the foregoing activities which funds comprise the subsequent transfers of BLMIS customer property the Trustee seeks to recover in this action. In their totality, these contacts make clear that Fortis IOM purposefully availed itself of the forum.

1.  Fortis IOM Confirmed it Received, Read, and Agreed to be Bound by the Fairfield Funds' PPMs, Which Made Clear its Business Activities Would be Directed at New York

By executing the subscription agreements with Fairfield, Fortis IOM affirmed that it received, read, and agreed to be bound by the terms set forth in the Fairfield Funds' PPMs. Declaration of Thomas J. Giblin ("Giblin Decl.") Ex. 1 at ¶ 7 and Ex. 2 at ¶ 7. As such, Fortis IOM knew that: (i) Sentry (and Sigma, through its purchases of Sentry shares) invested at least 95% of its assets with BLMIS; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the SEC; (iv) BLMIS was the executing broker for Sentry's investments (and the investments of Sigma, through its purchase of Sentry shares); (v) BLMIS's

SSC Strategy purportedly involved the purchase of U.S. equities and U.S. options; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS (and the investments of Sigma, through its purchase of Sentry shares); and (viii) BLMIS was "essential to the continued operation of" Sentry and Sigma.  Am. Compl. ¶¶ 74–75, 79–81; *see also* Griffin Decl., Exs. 1 and 2.

Fortis IOM knowingly and intentionally directed monies to BLMIS in New York through Sentry for investment in BLMIS and the U.S. securities market.  Am. Compl. ¶¶ 72, 77–80.  This alone establishes personal jurisdiction over Defendant.  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 22 CIV 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard Interlocutory Decision*") (finding that this Bankruptcy Court "correctly held, applying settled precedent, that by intentionally investing in a New York-based investment fund, Defendant purposefully availed itself of the privilege of doing business in New York"); *see also Picard v. Maxam Absolute Return Fund et al.*, 460 B.R. 106, 116–20 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ("*Maxam*") (finding jurisdiction where defendant knew and intended monies invested with BLMIS feeder fund to be sent to BLMIS in New York for investment).

This Court has repeatedly found nearly identical allegations to be persuasive factors in determining that similarly situated defendants had sufficient minimum contacts with New York.  *See Picard v. Inteligo Bank Ltd.*, *(In re BLMIS)*, Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686 at *3 (Bankr. S.D.N.Y. Dec. 15, 2022); *UBS Europe SE*, 2023 WL 2290822 at *4; *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *3–4 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub nom.  In re Bernard L. Madoff Inv. Sec. LLC*, No. 22 CIV. 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023).

Fortis IOM relies on *Walden v. Fiore*, 571 U.S. 277 (2014), in its attempt to downplay the significance of its deliberate business decision to execute the subscription agreements with the Fairfield Funds, claiming that those contracts were being executed "on behalf of others." Mot. at 22. But that case is unhelpful to Fortis IOM here because it merely stands for the unremarkable proposition that the minimum contacts inquiry focuses on the defendant's contacts with the forum state. *See Walden*, 571 U.S. at 291 ("The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation. And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.") (internal quotation marks and citation omitted). Consistent with the *Walden* holding, the Amended Complaint alleges Fortis IOM itself purposefully created multiple contacts with New York, and this action to recover subsequent transfers arises out of those contacts.

> 2.   Fortis IOM Agreed to Submit to New York Jurisdiction, New York Forum, and New York Law

Fortis IOM executed subscription agreements through which it submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. *See* Giblin Decl. Exs. 1 and 2; Am. Compl. ¶¶ 74-76, 81. As this Court has recognized, a defendant's subscription agreements with Sentry further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15; *Multi-Strategy,* 641 B.R. at 88 n.3 (finding defendant's irrevocable submission to New York jurisdiction when it signed its subscription agreements with Sentry is a relevant factor in deciding whether jurisdiction is reasonable); *Chase Manhattan Bank v. Banque Generale Du Com*., No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("a choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482

(1985).  Moreover, as discussed herein, the subscription agreements plainly relate to the Trustee's

claims and evidence a strong nexus between the Trustee's claims and New York.

Fortis IOM argues, among other things, that these provisions in the subscription agreement

are irrelevant because the subscription agreements do not govern the redemptions at issue, the

Trustee is not a party to these agreements, and therefore the Trustee cannot claim Fortis IOM

consented to this Court's jurisdiction.  Mot. at 23–24.  But, it is not the Trustee's position that this

Court's jurisdiction is based solely on these provisions.[5]  Rather, as this Court found in *BLI*,

Defendant's agreement to be bound by New York's venue, jurisdiction, and law evidences

Defendant's purposeful direction of activities, and the foreseeability of being subject to the laws

of the United States.  480 B.R. at 517; *see Multi-Strategy,* 641 B.R. at 88 n.3 ("Even though this

Court held that the Defendant's consent to jurisdiction in New York courts contained in the

subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the

sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to

recover redemption payments under British Virgin Island law, the fact that Defendant agreed to

submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the

exercise of jurisdiction over Defendant is reasonable.").

3.      Fortis IOM's Purposeful Use of New York Bank Accounts Establishes
Personal Jurisdiction

Fortis IOM's purposeful use of the New York banking system to subscribe into and redeem

from the Fairfield Funds further establishes personal jurisdiction.  By signing the subscription

---

[5] As such, this Court's prior decision in the Fairfield Chapter 15 liquidation proceedings, where the Fairfield liquidators argued that defendants had consented to personal jurisdiction based on the forum selection clause in subscription agreements, is of no relevance here.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Adv. Pro. No. 10-03496, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018).  The same is true for Fortis IOM's reliance on *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, because unlike in that case, the forum selection clause at issue here is not the "only basis for personal jurisdiction."  No. 15-cv-824 (RJS), 2017 WL 476720, at *3 (S.D.N.Y. Feb. 2, 2017) (*cited* in Mot. at 24).

agreements with the Fairfield Funds, Fortis IOM agreed to direct subscription payments to a bank account at HSBC Bank USA (the "HSBC NY Account") for ultimate deposit into BLMIS's account at JPMorgan Chase Bank in New York. Am. Compl. at ¶ 88. Fortis IOM also used its own New York-based bank account at Northern Trust International Banking Corporation ("Northern Trust NY Account") to receive redemption payments from the Fairfield Funds which represent the subsequent transfers the Trustee seeks to recover. *Id.* ¶ 89; *see* Giblin Decl., Ex. 1 at 11 and Ex. 2 at 11.

As this Court recently noted, "[w]here a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional." *Picard v. Trincastar (In re BLMIS)*, Adv. Pro. No. 11-02731 (CGM), 2023 WL 2146576 at * 4 (Bankr. S.D.N.Y. Feb. 21, 2023) (citing *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 (S.D.N.Y. 2016) ("The Banks' deliberate choice to utilize the New York correspondent bank accounts and, more generally, New York's and the United States' banking system, are United States contacts attributable to them…"); *see also UBS Europe SE*, 2023 WL 2290822 at *4 (same); *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6 *7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue).

Fortis IOM purposely authorized and directed the Fairfield Funds to wire the transfers at issue to a New York bank account, demonstrating an "essential element" of the Trustee's claim. *See Multi-Strategy*, 641 B.R. at 87 ("Defendant sent wiring instructions specifically designating a New York based bank account to which defendant directed FGG to wire defendant's redemption payments from Fairfield Sentry."). And, this was not a one-time request to use a New York bank

account.    Sentry sent numerous redemption payments to Fortis IOM's Northern Trust NY Account,[6] which establishes Fortis IOM's minimum contacts with New York.

That the HSBC NY Account was a correspondent account (Mot. at 23) does not change the analysis.    The New York Court of Appeals has held that a defendant's purposeful use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established."   *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012); *see also Arcapita*, 549 B.R. at 67–69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322–29 (2016) (same).    All that is necessary for "purposeful" use is that it was not coincidental or passive.   *See Licci*, 20 N.Y.3d at 338–39 (distinguishing case where defendant passively received funds due entirely to another party's actions).

Fortis IOM's systematic and purposeful use of New York bank accounts to wire subscription payments and receive the subsequent transfers at issue[7] standing alone is sufficient to confer jurisdiction over Fortis IOM.

---

[6] Fortis IOM mischaracterizes the Trustee's statements in his proffered allegations on the extraterritoriality issue as it relates to the ownership of the Northern Trust NY Account.  Mot. at 17 (citing ECF No. 98 at ¶ 39).  Fortis IOM suggests that the Trustee conceded that Fortis IOM "directed redemption payments from Fairfield Sentry to *[Platinum's]* bank account." *Id.*, (emphasis added).  Fortis IOM's insertion of "Platinum's" name as the owner of the Northern Trust NY Account as being part of the Trustee's proffered allegations is not consistent with the Trustee's actual statement.  The Trustee did not ascribe—in the proffered allegations on the extraterritoriality issue or in the Amended Complaint—the ownership of the Northern Trust NY Account to Platinum.

[7] The injury sought to be redressed in the Amended Complaint arises out of Fortis IOM's contacts with New York, and as such, these allegations are distinguishable from those in the cases on which Fortis IOM relies.  *See Tamam v. Fransabank SAL*, 677 F. Supp.2d 720, 727–28 (S.D.N.Y. 2010) ("the events giving rise to the physical injuries and deaths for which Plaintiffs seek redress are missile attacks in Israel, not funds transfers in New York"); *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (plaintiffs were investors in a foreign BLMIS feeder fund who sued foreign entities in New York for injuries based on allegations of breach of fiduciary duty and aiding and abetting fraud as well as additional common law claims).

4.    Fortis IOM Derived Significant Revenue in Connection with Its Activities
Directed to New York

The Amended Complaint alleges that Fortis IOM derived significant revenue from New York through its business activities with the Fairfield Funds and by extension, from BLMIS. Am. Compl. ¶¶ 69, 78, 90. Fortis IOM argues that it "merely facilitated the investments of *others*, primarily Platinum" in the Fairfield Funds, and that "[i]t invested none of its own money, and the Complaint is devoid of any allegation that [Defendant] profited or intended to profit front an investment in BLMIS." Mot. at 21. But, Fortis IOM in fact admits it, at least, received, administrative fees on the BLMIS investments in New York by Platinum. Mot. at 21.

Fortis IOM's attempt to distinguish itself from the defendants in *Multi-Strategy* and *Banque Syz* fails. Mot. at 21, 24–25. Fortis IOM's primary argument in this regard—that, unlike defendants in those cases, it did not have a profit motive underlying its investments because it did not invest its own money and only earned administrative fees—is not a basis for defeating jurisdiction. Another group of defendants recently raised the same issue of profit motive in their motion to dismiss without success. *See* Mot. Dismiss Mem., *Picard v. BSI AG (In re Bernard L. Madoff)*, Adv. Pro. No. 12-01209 (CGM) (Bankr. S.D.N.Y. June 22, 2022), ECF No. 123 at 22, and *Picard v. BSI AG (In re Bernard L. Madoff)*, Adv. Pro. No. 12-01209 (CGM)*, 2022 WL 17412774, at *1 (Bankr. S.D.N.Y. Dec. 2, 2022) ("*BSI*").

Fortis IOM further argues that the fact it derived financial benefit from its administration of Platinum's investments in BLMIS is, by itself, insufficient to confer personal jurisdiction over it. Mot. at 21–22. But again, the Trustee is not relying on that single fact to establish Fortis IOM's contacts with New York. And the situation here is distinguishable from the cases cited by Fortis IOM, where the injury sought to be redressed in those cases did not arise out of those defendants'

contacts with the forum.[8]  To the contrary, this is a fraudulent transfer recovery action, brought by

a trustee in a SIPA liquidation proceeding, to recover from a defendant who admittedly derived

financial benefits from its purposeful actions in New York, and whose receipt of subsequent

transfers occurred through its bank account in New York.  Fortis IOM "intentionally tossed a seed

from abroad to take root and grow as a new tree in the Madoff money orchard in the United States

*and reap the benefits therefrom*."  *UBS Europe SE*, 2023 WL 2290822 at *4 (citing *BLI*, 480 B.R.

at 506) (emphasis added).

Despite Fortis IOM's protestations to the contrary, its contacts with New York were not

random, isolated, or fortuitous.  Accordingly, the allegations in the Amended Complaint are legally

sufficient to constitute a *prima facie* showing of jurisdiction.

### B.    Fortis IOM's Contacts with the Forum are Sufficiently Related to the Trustee's Claims

As explained more fully above, all of the foregoing contacts by Fortis IOM "arise out of or

relate to" the Trustee's claim. "[P]roof that a plaintiff's claim came about because of the

defendant's in-state conduct" is not required.  Instead, the court need only find 'an affiliation

between the forum and the underlying controversy.'"  *Picard v. LGT Bank in Liechtenstein Ltd.*,

*(In re BLMIS)*, Adv. Pro. No. 11-02929 (CGM), 2023 WL 2003960 at *4 (Bankr. S.D.N.Y. Feb.

14, 2023) (*"LGT Bank"*) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct.

1017, 1026–30 (2021)).

---

[8] *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015) (court found plaintiffs' claims did not arise out of or relate to the defendants' alleged contacts with New York, where the foreign banks were alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States, and plaintiffs failed to allege any meaningful connection between defendants' conduct in the forum and their injuries which were the subject of the suit); *Spectra Prod., Inc. v. Indian River Citrus Specialties, Inc.*, 144 A.D.2d 832, 834, 534 N.Y.S.2d 570, 572 (3d Dep't 1988) (*cited in* Mot. at 21) ("Any services or goods that defendant may have supplied to New York customers was ineffective to sustain jurisdiction since plaintiff's action does not arise out of these sales.").

15

Here, as in other cases recently decided by this Court, the Trustee asserts subsequent transfer claims against Fortis IOM for monies it received from the Fairfield Funds which are directly related to its activities with the Fairfield Funds and BLMIS. *See, e.g.*, *Picard v. Parson Finance Panama S.A. (In re BLMIS)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *5 (Bankr. S.D.N.Y. Aug. 3, 2022); *BSI,* 2022 WL 17412774, at *4. The fact that the funds the Trustee seeks to recover were received by Fortis IOM in its New York bank account further confirms that this suit is affiliated with the alleged in-state conduct.[9] *See UBS Europe SE*, 2023 WL 2290822 at *5; *LGT Bank*, 2023 WL 2003960, at *4–5; *See, e.g.*, *HSH Nordbank*, *AG New York Branch v. Street*, No. 11 Civ 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding "claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts").

### C.      The Exercise of Personal Jurisdiction Over Fortis IOM is Reasonable

"The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165; *In re Fairfield Sentry Ltd.*, 627 B.R. at 567.

---

[9] This is not a dispute between two parties stemming from services owed under a foreign contract, like the breach of fiduciary duty and other claims in *Hau Yin To*, 2017 WL 816136, at *1, or *SPV Osus Ltd.*, 114 F. Supp. 3d at 166. Rather, this is a fraudulent transfer recovery action against a defendant which purposefully directed activities toward the U.S. securities markets.

This Court has stated "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *Picard v. BNP Paribas S.A., et al.*, 594 B.R. 167 at 188 (Bankr. S.D.N.Y. 2018).  As this Court has recently found, this is not that "rare" case:

> Defendant is not burdened by this litigation. Defendant actively participated in this Cour"'s litigation for over ten years.  It is represented by U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the jurisdiction of New York courts' when it signed subscription agreements with the Fairfield Funds . . . .  The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.

*LGT Bank*, 2023 WL 2003960 at *5 (*citing Maxam*, 460 B.R. at 117 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden)); *Trincastar*, 2023 WL 2146576, at *5 (same); *see also In re Picard*, 917 F.3d, 85, 103 (2d Cir. 2019) (noting that the "United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property").

Fortis IOM claims that litigation in the United States is unduly burdensome because it has no employees in the U.S., and "any witnesses to [its] internal deliberations and decisions reside overseas, as does the entirety of the relevant documentary evidence, and litigating here would place a significant burden on IOM Nominees and its current and former personnel." Mot. at 26.  But as discussed above, Fortis IOM knowingly directed funds to be invested with BLMIS in New York. Any burden on Fortis IOM due to the existence of evidence in a foreign jurisdiction is negligible (and foreseeable).  *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden).

Fortis IOM claims the Trustee has not shown that New York has a greater interest in this dispute.  Mot. at 26.  But, under analogous circumstances, this Court has held to the contrary: "[t]he forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings

in this Court." *Multi-Strategy*, 641 B.R. at 88-89; *Banque Syz*, 2022 WL 2135019, at \*5 (same);

*Lombard Interlocutory Decision,* at 10–11 (crediting this Court's findings that the forum has a

strong interest in adjudicating the liquidation of funds for the benefit of creditors); *see also In re

Picard*, 917 F.3d at 103 (Second Circuit recognizing this forum has a "compelling" interest in

facilitating the recovery of fraudulently transferred property by the estate).[10]

> Accordingly, this Court's exercise of jurisdiction over Fortis IOM is reasonable.

> ### D.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery, and if Needed, the Opportunity to Amend the Complaint

> If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery, and if needed, the opportunity to amend his

pleading. *See Fairfield Sentry Ltd. v. HSBC Sec. Serv.*, No. 21-CV-10316 (LAP), 2022 WL

3910679, at \*8–9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a prima

facie case for jurisdiction to obtain jurisdictional discovery). Such discovery may be authorized

where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel

v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2009 WL 3817590, at \*4 (S.D.N.Y. Nov. 16,

2009).

## II.    FORTIS IOM'S ASSERTION OF A MERE CONDUIT DEFENSE IS IMPROPER AT THE MOTION TO DISMISS STAGE

> Fortis IOM asserts that that it was not a transferee, but a "mere conduit," acting on behalf

of Platinum. Mot. at 9–18. But this defense is premature. As this Court recently held, the mere

conduit defense is a fact-intensive, affirmative defense that is Fortis IOM's burden to prove, and

---

[10] Defendant relies on *In re CIL Ltd.*, 582 B.R. 46 (S.D.N.Y. 2016) in support of its position that a finding of jurisdiction over it would be unreasonable, Mot. at 13-14. But in that case, the court found that the trustee had not articulated any U.S. interests or social policies that would be advanced by adjudicating the case in the United States. By contrast, here, the Trustee's strong interest in adjudicating these cases in the United States has been recognized by this Court, the District Court, and the Second Circuit. *See supra*.

as such, it is inappropriate to resolve on a motion to dismiss. *See LGT Bank*, 2023 WL 2003960, at *9; *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, at *7–8 (Bankr. S.D.N.Y. Jan. 6, 2023); *Inteligo Bank*, 2022 WL 17742686, at *10; *see also Enron Corp. v. J.P. Morgan Secs. Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (in the context of a Rule 15(c) motion, "the burden of proving that [defendant] was not a transferee and/or beneficiary of the Transactions shifts to [defendant]"); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

### A.    The Amended Complaint Plausibly Alleges that Fortis IOM is a Subsequent Transferee

When considering a motion to dismiss under FRCP 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, "the Court must liberally construe all claims, accept all factual allegations in the Complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp.2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)).

To recover a subsequent transfer under Section 550(a), the Trustee must show "that the transfer was avoided and that the defendant is an initial or subsequent transferee." *Citibank I*, 12 F. 4th at 197 (citing COLLIER ON BANKRUPTCY ¶ 550.05 (16th ed. 2021). Here, the Trustee plausibly alleges that the transfers from BLMIS to the Fairfield Funds are avoidable, and Fortis IOM and Platinum are subsequent transferees of those transfers. Am. Compl. ¶¶ 92–107; Exs. A–F.

The Trustee further alleges that Fortis IOM entered into multiple subscription agreements related to the investments in the Fairfield Funds (Am. Compl. ¶¶ 74–75), and Fortis IOM received

19

subsequent transfers of BLMIS customer property in the form of redemptions of equity interests

in the Fairfield Funds in its New York bank account (Am. Compl. ¶¶ 74–75). The Trustee also

alleges that Fortis IOM "derived significant revenue" (Am. Compl. ¶¶ 69, 90) and "profit[ed]"

from the Fairfield Funds' investments. *Id*. ¶ 78; *see also* Mot. at 21 (Fortis IOM conceding the

"financial benefit derived from its administration of the investments of the Cayman Islands-based

Platinum fund (and other overseas clients)" in the Fairfield Funds).

### B.    Even if the Court were to Consider the "Mere Conduit" Affirmative Defense, Fortis IOM Fails to Meet its Stringent Burden

Fortis IOM asks this Court to draw inferences in its favor and accept the unsupported

assertions of its counsel that it "did not own the underlying investments, nor retain any monies

received from [the Fairfield Funds]" (Mot. at 1), and that Fortis IOM "did not draw its fees from

BLMIS customer property." Mot. at 14. But at this pleading stage, it is "the plaintiff [who] is

entitled to all reasonable inferences from the facts alleged, not only those that support his claim,

but also those that defeat the [affirmative] defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d

Cir. 2004)*.* And as the Second Circuit has stated, "a district court errs when it . . . relies on factual

allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss."

*Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000).

The argument advanced by Fortis IOM applies only as a "limited exception to the general

rule" that an affirmative defense cannot be established on a motion to dismiss. *Picard v. Merkin*

440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) ("*Merkin*"). To prevail under this limited exception

on a Rule 12(b)(6) motion, Fortis IOM must meet a "more stringent standard," and show not only

that "the facts supporting the defense appear on the face of the complaint," but also that "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

him to relief." *McKenna*, 386 F.3d at 436. Fortis IOM has not, and cannot, meet this stringent

burden here because, on its face, the Amended Complaint does not establish Fortis IOM's affirmative defense of mere conduit.

To establish the affirmative defense, a defendant must show that it lacked dominion and control over all transfers at issue. *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57–58 (2d Cir. 1997) ("*In re Finley*"); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 44, 49–52 (Bankr. S.D.N.Y. 2021). In determining the question of dominion and control, courts consider, among other things, the degree to which a defendant has discretion over the use of the funds in question, and the extent to which it has legal rights to the funds at issue.[11]

Thus, the application of the mere conduit defense often turns on internal information that is exclusively within the possession of the party asserting the defense—including information about the specific requirements of any agreements between and among the Fairfield Funds, Platinum, and Fortis IOM; communications related to the transfers; how Fortis IOM received its fees; and the relationship between the Fairfield Funds and Fortis IOM, and between Fortis IOM and Platinum.

Fortis IOM contends that at all times it acted as an agent for Platinum, and "*[t]hus, [Fortis IOM] could not have had*, and did not have, the power to use the transferred funds for its own purposes." Mot. at 12–13 [emphasis added]. But the Amended Complaint does not allege that Fortis IOM did not have the power to use the transferred funds for its own purposes, and at the pleading stage, it is "the plaintiff [who] is entitled to all reasonable inferences from the facts

---

[11] *See Keller*, 634 B.R. at 52 (holding defendant with discretion over the use and transfer of the funds was not a mere conduit); *In re Enron Corp.*, 361 B.R. at 48 (determining whether entity was mere conduit required resolution of whether it had legal title to, discretion or authority over, or benefited from payments at issue); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, Adv. Pro. No. 11-2251, 2016 WL 1069303, at *1, *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant was not a conduit where transfers were received without restriction into bank account in her name).

alleged, not only those that support his claim, but also those that defeat the [affirmative] defense."
*McKenna*, 386 F.3d at 436.

Fortis IOM attempts to minimize its role in these BLMIS-related transactions by claiming
it was not the beneficial owner of the shares in the Fairfield Funds. Mot. at 15–18. Fortis IOM
relies heavily on the word "Nominee" in support of its position. Notably, the Trustee does not
allege that Fortis IOM was acting in the capacity as a "nominee." Rather, the word "Nominee"
appears in the Amended Complaint because it is part of Fortis IOM's legal name. Am. Compl.
caption and page 1. The nomenclature Fortis IOM chooses should not be determinative on this
motion; it is not the equivalent of the Trustee having alleged that Fortis IOM was a pure conduit.
Fortis IOM signed the subscription agreements in its own name, albeit with a "reference" to
Platinum. Giblin Decl. Ex. 1 at 11; Ex. 2 at 11. This mere "reference" provides no basis for Fortis
IOM's argument that conduit status is pled on the face of the Amended Complaint.

Even assuming, for the sake of argument, that Fortis IOM was not the beneficial owner of
the shares in the Fairfield Funds—as it claims—that that in no way resolves the question of whether
Fortis IOM was a mere conduit for the purposes of this motion to dismiss. Absent from the
Amended Complaint are any allegations that Fortis IOM did not have dominion and control over
the funds at issue for it to be "beyond doubt" that it was not a transferee. That is because at the
pleading stage,[12] the Trustee has <u>no</u> visibility into the formal relationship and agreements between
Fortis IOM and co-defendant Platinum. Thus, discovery is required to show, *inter alia*, the extent

---

[12] Notably, the Trustee is not required to anticipate and rebut this defense in the Amended Complaint. *Citibank I*, 12
F.4th at 195–96 (holding the Trustee does not bear the burden of negating an affirmative defense); *Isaiah*, 960 F.3d at
1304 ("A Complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based
on an affirmative defense unless the defense is apparent on the face of the Complaint."); *Abbas v. Dixon*, 480 F.3d
636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedures, however, do not compel
a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such
defenses."); *Astropower Liquidating Tr. v. Xantrex Tech., Inc., (In re Astropower Liquidating Tr.)*, No. 05-50867,
2006 WL 1173853, at *1-2 (Bankr. D. Del. Apr. 19, 2006).

of Fortis IOM's dominion and control over the subsequent transfers it received;[13] its legal rights with respect to the funds (including any liens it may have had over the funds); its discretion to retain any of the benefits it received from its transactions and transfers with Platinum and the Fairfield Funds; the terms of any relevant agreements between Fortis IOM and Platinum; and Fortis IOM's overall role. *See In re Enron Corp.*, 361 B.R. at 48 (determining whether entity was mere conduit required resolution of whether it had legal title to, discretion or authority over, or benefited from payments at issue); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, Adv. Pro. No. 11-2251, 2016 WL 1069303, at *17 (Bankr. S.D.N.Y. Mar. 17, 2016) (finding on summary judgment that defendant "had the absolute right to utilize the Transfers in her discretion" and was not a conduit); *Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 21 (Bankr. S.D.N.Y. 2007) (affirming, in relevant part, grant of summary judgment to Chapter 11 trustee, and holding that "the degree of decision-making authority Bear Stearns possessed with respect to the funds demonstrates a level of 'dominion and control' sufficient to create transferee liability").

Nor is it in some way fatal to the Trustee's claims that he has alleged that both Platinum and Fortis IOM are both subsequent transferees. Mot. at 1. As discussed above, information about the relationship between and among Fortis IOM and Platinum, and the Fairfield Funds' investments and redemptions, is possessed by Fortis IOM and Platinum, and should be clarified in discovery. Moving forward with both Defendants allows for more efficient discovery and an increased likelihood of resolution of the action on the merits. *See Enron Corp. v. J.P. Morgan*

---

[13] Fortis IOM argues that the Trustee does not allege that it commingled the transfers with its own funds (Mot. at 13, n.10), in an attempt to distinguish *In re Pretty Girl, Inc*., 644 B.R. 298, 310 (Bankr. S.D.N.Y. 2022). But that case was decided at the summary judgment stage, and that is precisely the point here – that the mere conduit issue is premature at the pleading stage, when the Trustee has no visibility into what Fortis IOM did with the subsequent transfers it received.

*Sec. Inc. (In re Enron Corp.)*, 357 B.R. 257, 269 (Bankr. S.D.N.Y. 2006), *opinion modified on reconsideration*, No. 01-16034 (AJG), 2007 WL 680764 (Bankr. S.D.N.Y. Mar. 1, 2007) ("The Court agrees with the *Alberts* decision that the issue of the relation back [which depended upon a determination of a party's' mere conduit status] would be more appropriately decided on a summary judgment motion or through findings of fact and law following an evidentiary hearing because matters still have to be clarified and determined, principally the identity of the initial transferee.").

Thus, resolving the mere conduit defense at the pleading stage is premature, particularly because an inquiry into the applicability of the defense is fact-intensive. It is precisely because of the many inherently factual questions involved in resolving this defense that courts rarely address the mere conduit issue at the pleading stage. *See Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008) (denying defendant's motion to dismiss, and holding "[M]ere conduit" is a "defense" that requires "factual[] support[] . . . [and] is better addressed on summary judgment"); *Sarachek v. Schochet (In re Agriprocessors)*, Adv. Pro. No. 10-09190, 2012 WL 4059897, at *10 (Bankr. N.D. Iowa Sept. 14, 2012) (denying motions to dismiss and for summary judgment to provide "[a]dditional time . . . necessary to further develop the factual record"); *In re Astropower*, 2006 WL 1173853, at *1 (agreeing that "'mere conduit' argument is an affirmative defense that is properly raised in a summary judgment motion but not in a Rule 12(b)(6) motion to dismiss."); *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Company)*, 552 B.R. 253, 266 (Bankr. S.D.N.Y. 2016) (noting the conduit defense is fact specific and does not lend itself to a motion to dismiss); *In re Kaiser Steel Corp.*, 110 B.R. 514, 516 (D. Colo.), *aff'd sub nom.*, 913 F.2d 846 (10th Cir. 1990); *Picard v. Miller (In re BLMIS)*, 631 B.R. 1,

14–15 (Bankr. S.D.N.Y. 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 238 (Bankr. S.D.N.Y. 2019) ("*Nelson*") (determining conduit status post-trial).

This case is akin to other subsequent transfer cases where the named defendant was signatory to the subscriptions and received the redemptions, and this Court determined that "[t]he Trustee has plausibly alleged that [defendant] exercised dominion and control over the investments and redemption of BLMIS customer property and that "Defendant is free to plead and prove otherwise at a later stage of litigation." *LGT Bank*, 2023 WL 2003960, at *9; *see also Standard Chartered*, 2023 WL 118787, at *8.

## III.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

### A.    The Affirmative Defense of "Good Faith" is Premature

Fortis IOM argues that the Court should dismiss the Amended Complaint as a matter of law because its purported good faith is clear on the face of the Amended Complaint. Mot. at 27–30. This Court has already rejected the "good faith" affirmative defense as inappropriate on a motion to dismiss and should similarly reject Fortis IOM's efforts here to recycle the same arguments. *See, e.g.*, *Banque Syz*, 2022 WL 2135019, at *10 (holding that it is a defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and prove it with evidence; it cannot be established in a complaint"); *Picard v. Bank Vontobel AG (In re BLMIS)*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560, at *11–12 (Bankr. S.D.N.Y. Nov. 18, 2022) (*"Vontobel"*); *see also Picard v. Bank Julius Baer & Co. Ltd. (In re BLMIS),* Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520, at *17 (Bankr. S.D.N.Y. Dec. 15, 2022) (*"BJB"*); *In re Bernard L. Madoff Sec. LLC.*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *1-3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*").

Affirmative defenses are fact-driven and require factual analyses and a presentation of evidence. *ABN Ireland*, 2022 WL 1304589, at *3 ("The Trustee rightfully points out that such a fact-based determination [as the good faith affirmative defense] can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor") (cleaned up); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).  That sort of factual analysis is not appropriate at this stage, particularly with respect to a good faith defense. *See, e.g Merkin*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith . . . is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process.").

### B. Even if the Court were to Consider the "Good Faith" Affirmative Defense, it Does Not Appear on the Face of the Amended Complaint

Notwithstanding that the Second Circuit has made it clear that the good faith defense is Fortis IOM's burden to plead and prove,[14] Fortis IOM maintains that its good faith has somehow been established as a matter of law on the face of the Amended Complaint.  Mot. at 27-30.  Such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss.  *Merkin*, 440 B.R. at 256.  To prevail under this limited exception, Fortis IOM must show there is an "insuperable bar to securing relief" set forth on the

---

[14] *Citibank I*, 12 F.4th at 178, 195-96 (holding that in a SIPA liquidation proceeding the good faith defense provided by Bankruptcy Code sections 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith).

face of the Complaint. *In re Dreier LLP*, 452 B.R. 391, at 426 (Bankr. S.D.N.Y. 2011); *see also United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) (denying motion to dismiss unless "the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief") (cleaned up).

As a preliminary matter, it should be noted that Fortis IOM cannot cite a single case where a court has dismissed an action at the pleading stage based on a good faith defense, which underscores that such a defense is premature on the pleadings. *See, e.g.*, *Picard v. Credit Suisse AG*, Adv. Pro. No. 11-02925 (CGM), 2022 WL 17098676, at *8 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse I*") ("Credit Suisse does not meet this [stringent] standard and it does not provide any cases where good faith was successfully plead on a motion to dismiss.").

Moreover, Fortis IOM cannot rely on an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy, and factual inferences it seeks in its favor. *ABN Ireland*, 2022 WL 1304589, at *3. Indeed, Fortis IOM tries to have it both ways: arguing, on one hand, that it was simply a "mere agent and conduit" for another party, but on the other hand, that it conducted a reasonably diligent investigation that could not have possibly detected BLMIS fraud because of Madoff's proficiency in deceiving the SEC and other financial professionals. Mot. at 29-30. This is nonsensical. Even were it appropriate to consider such arguments on a motion to dismiss - the SEC's failure to detect Madoff's fraud, for instance - this would not be determinative of Fortis IOM's good faith and serves no mitigating purpose. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations

regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[15]

Even if this Court were to consider Fortis IOM's fact-intensive affirmative defense, the Trustee must be given the opportunity to pursue discovery of those facts. *ABN Ireland*, 2022 WL 1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual record after discovery); *Merkin*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *see also Banque Syz*, 2022 WL 2135019, at *11; *Vontobel*, 2022 WL 17087560, at *12; *Picard v. Credit Suisse AG*, Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739, at *9 (Bankr. S.D.N.Y. Nov. 21, 2022) ("*Credit Suisse II*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *11 (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*").

Fortis IOM makes similar arguments with regard to value. Mot. at 25-26. But value is likewise a fact-driven element of the affirmative defense to be addressed later in the litigation. *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial"). As was true, for example, in *Banque Syz*, *BJB*, *Vontobel*, *First Gulf*, and *Credit Suisse II*, the Amended Complaint does not mention Fortis IOM exchanging shares for consideration, and the value defense is therefore not pleaded on the face of the Amended Complaint. *Banque Syz*, 2022

---

[15] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 402 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise") (citation omitted).

WL 2135019, at *10; *BJB*, 2022 WL 17726520, at *16; *Vontobel*, 2022 WL 17087560, at *11–12; *First Gulf*, 2022 WL 3354955, at *10; *Credit Suisse II*, 2022 WL 17098739, at *8. Moreover, to the extent Fortis IOM argues value exists because the payments received were given in exchange for their redemption of shares from the Fairfield Funds, this too cannot be decided on a motion to dismiss. *Banque Syz*, 2022 WL 2135019, at *11; *BJB*, 2022 WL 17726520, at *16; *Vontobel*, 2022 WL 17087560, at *11–12; *First Gulf*, 2022 WL 3354955, at *11; *Credit Suisse II*, 2022 WL 17098739, at *9; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (holding that whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage").

## IV.    SECTION 546(E) DOES NOT BAR RECOVERY FROM FORTIS IOM

Fortis IOM further moves to dismiss on the grounds that the Section 546(e) bars all the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period. Fortis IOM acknowledges that Section 546(e) does not apply if transfers were made to an initial transferee with "actual knowledge" of BLMIS's fraud. Mot. at 31 (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.* LLC, No. 12 MC 115 (JSR), 2013 WL 1609154, *1 (S.D.N.Y. Apr. 15, 2013)). Fortis IOM nevertheless claims that that the Amended Complaint "contains no allegations about the Fairfield Funds' state of mind, and the allegations against Fairfield that the Trustee seeks to incorporate by reference raise only the type of 'red flags' that many courts have held do not rise to the level of actual knowledge." Mot. at 30-31.

But as Fortis IOM concedes (Mot. at 31, note 22), this Court has previously held that the Trustee has sufficiently pled that the Fairfield Funds had actual knowledge of Madoff's fraud. *See Multi-Strategy,* 641 B.R. at 92–93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4). The Amended Complaint here specifically incorporates the very same allegations of actual knowledge contained in the Fairfield SAC (Am. Compl. ¶¶ 95-96), and as such, Section 546(e) does not bar

the avoidance of initial transfers made to Sentry, and subsequent transfers of those funds may be recovered from Fortis IOM.

## V.    THE TRUSTEE HAS PLED BLMIS'S ACTUAL FRAUDULENT INTENT

Fortis IOM argues that the Trustee has not adequately pled that BLMIS made the initial transfers to Sentry with actual fraudulent intent, and therefore, cannot avoid transfers under Section 548(a)(1)(A) of the Code. Mot. at 32.

Fortis IOM challenges the Trustee's use of the Ponzi scheme presumption (Mot. at 32), which is based on the recognition that "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 20, 2018) (citation omitted). The intent to hinder, delay or defraud creditors is presumed where the Trustee shows "(1) the transferor operated a Ponzi scheme; and (2) the transfers made to the transferee by the debtor were 'in furtherance' of the Ponzi scheme." *Nelson*, 610 B.R. at 233.

Contrary to Fortis IOM's arguments, this Court and the District Court have repeatedly determined that the Trustee can rely on the Ponzi scheme presumption to demonstrate BLMIS's actual intent to hinder, delay, or defraud creditors. *See, e.g.*, *BJB*, 2022 WL 17726520, at *13; *Picard v. Citibank, (In re BLMIS),* Adv. Pro. No. 10-05345 (CGM), 2022 WL 4493234, at *4–5 (Bankr. S.D.N.Y. Sept. 27, 2022) ("*Citibank II*"); *First Gulf*, 2022 WL 3354955, at *10 ("The Ponzi scheme presumption is the law of this Circuit, and the Trustee is entitled to rely on it to allege BLMIS' intent.").

Other defendants have, as here, similarly challenged the Ponzi presumption on the basis of the reasoning set forth in Judge Menashi's concurring opinion in *Citibank*, but this Court has repeatedly rejected those arguments:

> *BJB* argues that this Court should follow Judge Menashi's concurrence in *Picard v. Citibank, N.A., et al.*, in which he questions the use of the Ponzi scheme presumption and fraudulent transfer law in cases such as this.  This Court has re-read Judge Menashi's concurrence and finds his concurrent opinion unpersuasive.  The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers.  All the Ponzi scheme presumption does is save the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent.  Without the presumption, BJB would not be "off-the-hook" for the two-year transfers because the Trustee would meet (and, in this case, has met) his pleading burden by pleading the "badges of fraud" with respect to BLMIS.

*BJB,* 2022 WL 17726520, at *13.  The District Court has also rejected the same argument.  *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022), ("Notwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'") (citation omitted).

Here, as in *BJB, Sage Realty, First Gulf,* and *Citibank II*, the allegations in the Amended Complaint regarding BLMIS's Ponzi scheme are sufficient to plead the avoidability of the relevant transfers.  The Amended Complaint contains detailed allegations that BLMIS engaged in a Ponzi scheme and that the initial transfers to Sentry were made in furtherance of that scheme.  Am. Compl. ¶¶ 29–54.

Alternately, and contrary to Fortis IOM's assertion (Mot. at 32), the Trustee has sufficiently pled the necessary elements of BLMIS's actual intent to defraud.  Am. Compl. ¶ 27–32, 52–54.  This Court and the District Court have recognized the independent sufficiency of the badges of fraud alleged here.  *See Nelson*, 610 B.R. at 235 (finding initial transfers made with actual fraudulent intent based on (i) concealment of facts and false pretenses by BLMIS, (ii) BLMIS's insolvency, and (iii) lack of consideration for the fictitious transfers); *see also Picard v. JABA Assocs. LP (In re BLMIS)*, 528 F. Supp. 3d 219, 240–41 (S.D.N.Y. 2021) *aff'd sub nom.* 49 F.4th 170 (2d Cir. 2022).

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny Fortis IOM's Motion.

Dated:    March 13, 2023
        New York, New York

*/s/ Regina Griffin*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Regina Griffin
Email: rgriffin@bakerlaw.com
Elizabeth McCurrach
Email: emccurrach@bakerlaw.com
Stacey A. Bell
Email: sbell@bakerlaw.com
Melissa L. Kosack
Email: mkosack@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*
