| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>               Plaintiff,<br><br>v.<br><br>BANQUE INTERNATIONALE À LUXEMBOURG S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.); RBC INVESTOR SERVICES BANK S.A. (*f/k/a* RBC Dexia Investor Services Bank S.A.); RBC INVESTOR SERVICES TRUST (*f/k/a* RBC Dexia Investor Services Trust); BANCO INVERSIS, S.A., as successor-in-interest to RBC Dexia Investor Services España S.A.; and BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.),<br><br>               Defendants. | Adv. Pro. No. 12-01698 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANTS'
MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
By:   Howard L. Simon
       Kim M. Longo
       Alan D. Lawn

*Counsel for Defendants Banque Internationale à Luxembourg SA (f/k/a Dexia Banque Internationale a Luxembourg SA) and Banque Internationale à Luxembourg (Suisse) SA (f/k/a Dexia Private Bank (Switzerland) Ltd.)*
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
By:   Jeff E. Butler
       Meredith George

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Banque Internationale à Luxembourg S.A. (*f/k/*a Dexia Banque Internationale à Luxembourg S.A.) ("Dexia Banque"), and Banque International à Luxembourg (Suisse) S.A. (*f/k/*a Dexia Private Bank (Switzerland) Ltd.) ("Dexia Suisse," collectively "Dexia Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendants seek dismissal for lack of personal jurisdiction. For the reasons set forth herein, the motion to dismiss is denied.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by the Dexia Defendants and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint on June 30, 2022. (Am. Compl., ECF No. 134). Via the amended complaint ("Amended Complaint"), the Trustee seeks to recover $65,995,850 in subsequent transfers made to Dexia Defendants and associated defendants RBC Investor Services Bank S.A. ("RBC Bank"), RBC Investor Services Trust ("RBC Trust"), and Banco Inversis S.A. ("Banco Inversis") (as successor-in-interest to RBC Dexia Investor Services

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01698-cgm.

España S.A.) (collectively, "RBC" or "RBC Defendants"), through Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma," collectively, the "Fairfield Funds"), and Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited") (*Id.* ¶ 2). In the Amended Complaint, the Trustee seeks to recover approximately $54,875,160 received by Dexia Defendants and approximately $11,120,690 received by RBC Defendants. (*Id.*). The Trustee has provided a table with a breakdown of the funds subsequently transferred to each Defendant and the Court has added the left-most column for clarity:

|  | **Defendant** | **BLMIS feeder fund(s)** | **Transfers** |
|---|---|---|---|
| Dexia Defendants | Dexia Banque | • Fairfield Sentry<br>• Fairfield Sigma | $52,331,690<br>$537,645 |
| | Dexia Suisse | • Fairfield Sentry<br>• Fairfield Sigma | $2,000,067<br>$5,758 |
| RBC Defendants[2] | RBC Bank | • Fairfield Sentry | $5,146,594 |
| | RBC Trust | • Rye Portfolio Limited | $2,433,046 |
| | Banco Inversis | • Fairfield Sentry<br>• Fairfield Sigma | $2,037,173<br>$1,503,877 |

(*See id.* at 3).

The instant motion concerns only the transfers to the Dexia Defendants. Dexia Banque is a *société anonyme* organized under the laws of Luxembourg and its principal place of business is in Luxembourg. (*Id.* ¶ 51). Banque Suisse is a *société anonyme* and wholly owned subsidiary of

---

[2] RBC Defendants filed a separate motion to dismiss. The Court will address the transfers made to the RBC Defendants in a separate memorandum decision.

Dexia Banque organized under the laws of Switzerland. (*Id.* ¶ 52). Dexia Banque's principal place of business is in Zurich, Switzerland. (*Id.*)

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry to avoid and recover fraudulent transfers of customer property in the amounts of approximately $3 billion. (*Id.* ¶ 149). In 2011, the Trustee settled with the Fairfield Funds. (*Id.* ¶ 150 As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively. (Consent Js., 09-01239-cgm, ECF Nos. 109–10). Only $70 million has been repaid to the BLMIS customer property estate. (Am. Compl. ¶ 150); (Settlement Agreement, 09-01239-cgm, ECF No. 169). The Trustee commenced a number of adversary proceedings against Fairfield subsequent transferees, like Dexia Defendants, to recover missing customer property.

The subsequent transfers the Trustee seeks to collect from Dexia Defendants were derived from investments with BLMIS made by the Fairfield Funds between 2003 and 2008. (*Id.* ¶¶ 149–55; Exs. C, E). The Trustee alleges that subsequent transfers from Fairfield Sentry to all Dexia and RBC Defendants total at least $61,515,524 and subsequent transfers from Fairfield Sigma to all RBC and Dexia Defendants total at least $2,047,280. (*Id.* ¶¶ 156, 161). The Trustee seeks approximately $54,875,160 of those transfers from Dexia Defendants. (*See id.* ¶ 2).

In their motion to dismiss, Dexia Defendants seek dismissal for lack of personal jurisdiction. The Trustee opposes the motion to dismiss. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

**Personal Jurisdiction**

Dexia Defendants object to the Trustee's assertion of personal jurisdiction. (Mem. L. 5–15, ECF No. 143). In the Amended Complaint, the Trustee argues that Dexia Defendants purposefully availed themselves of the laws of the United States. (Am. Compl. ¶¶ 61–63, 65–69, 73–75).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Dexia Defendants "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS via . . . Fairfield Sentry, [and] Fairfield Sigma . . . each of which was managed and operated out of New York." (Am.

Compl. ¶ 66). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Dexia Defendants in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining that an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Dexia Defendants argue that the Trustee has not alleged that Dexia Defendants had sufficient contacts with New York. (Mem. L. 3–10, ECF No. 143). The Amended Complaint suggests otherwise. In the Amended Complaint, the Trustee alleges that Dexia Defendants "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS via . . . Fairfield Sentry, [and] Fairfield Sigma . . . each of which was managed and operated out of New York." (Am. Compl. ¶ 66, ECF No. 138). The Trustee has alleged that Fairfield Sentry invested a large majority of its assets in BLMIS. (*See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference at paragraph 153 of this Amended Complaint).

The Trustee has also alleged that representatives of Dexia Banque engaged in "numerous communications" and even met with Fairfield Greenwich Group and other feeder fund executives in New York regarding the Dexia Banque's investments. (Am. Compl. ¶ 65).

Additionally, the Trustee has alleged that Defendants used New York bank accounts to transfer money to and from Fairfield Sentry, exclusively used New York bank accounts to receive redemptions from the Fairfield Funds, and thus "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 73).

The Trustee alleges that Dexia Defendants used accounts at Citibank and HSBC Bank USA in New York to receive redemptions from the Fairfield Funds and that subscription payments were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (*Id.* ¶¶ 73–74). Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank)*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendants]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have

upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Trustee has also alleged that each time Dexia Defendants signed subscription agreements with the Fairfield Funds, Dexia Defendants affirmed that they read Fairfield Sentry's private placement memorandum. (*Id.* ¶ 68). Based on having acknowledged reading the memorandum, the Trustee has alleged that Dexia Defendants knew they were transacting business in New York in connection with their investment in the Fairfield Funds. (Am. Compl. ¶ 69). The private placement memoranda, the Trustee alleges, alerted Dexia Defendants that

> Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS, and Fairfield Sigma invested 100% of its assets with Fairfield Sentry; BLMIS performed all investment management duties for these assets; BLMIS was registered with the SEC; BLMIS was the executing broker for the Fairfield Funds' investment, and purportedly operated and executed the [split strike conversion strategy (the 'SSC Strategy')] on the funds' behalf; BLMIS's SSC Strategy purportedly involved the purchase on U.S. equities, U.S. options, and Treasury Bills, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; Fairfield Sentry's investment documents provided that subscription payments we wired in U.S. dollars to New York; BLMIS was the custodian of the Fairfield Funds' investments with BLMIS; and BLMIS was 'essential to the continued operation of' [Fairfield Sentry and Fairfield Sigma].

(*Id.*).

The Trustee also alleges that by executing the subscription agreements, Dexia Defendants submitted to the jurisdiction of New York as the agreement specified Dexia Defendants:

> (i) '[A]greed that any suit, action, or proceeding . . . with respect to this Agreement and the Fund may be brought in New York,' (ii) 'irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding,' (iii) 'consent[ed] to the service of process out of any New York

court,' and (iv) agreed that '[t]his Agreement shall be governed and enforced in accordance with the laws of New York . . . .

(*Id.* at ¶ 63).

The Amended Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Dexia Defendants "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendants' alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Dexia Defendants for monies they received from the Fairfield Funds. (Am. Compl. ¶¶ 156, 161, ECF No. 134). These allegations are directly related to their investment activities with BLMIS via the Fairfield Funds. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Dexia Defendants is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendants, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. The Dexia Defendants are not burdened by this litigation. The Dexia Defendants have actively participated in this Court's litigation for over ten years. They are represented by U.S. counsel and held bank accounts in New York. (Am.

Compl. ¶ 73). The Dexia Defendants submitted to the jurisdiction of New York courts' when they signed subscription agreements with the Fairfield Sentry.[3] (Am. Compl. ¶ 63). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Dexia Defendants intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Dexia Defendants used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer received through those New York bank accounts. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield subsequent transfers at issue in this Complaint.

---

[3] Even though this Court held that a similarly situated defendants' consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendants agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendants is reasonable. *See Fairfield Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

*DRAFT*

## Conclusion

For the foregoing reasons, Dexia Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: March 14, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
U.S. Bankruptcy Judge