**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01195 (CGM) |
| Plaintiff, | |
| v. | |
| SIX SIS AG, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 2

   I.    THIS COURT LACKS PERSONAL JURISDICTION OVER SIX SIS. ......................... 3

       A.    The Trustee has Failed to Establish that SIX SIS Has Sufficient Contacts with New York. ................................................................................................. 3

            i.    Investments in Fairfield Funds do not Establish Personal Jurisdiction. ............ 4

            ii.   The Forum Selection and Choice of Law Clauses in the Fairfield Sentry Subscription Agreements are not Relevant Contacts. ...................................... 8

            iii.  The Use of a Bank Account for Routine Transfers is Insufficient to Confer Personal Jurisdiction ....................................................................................... 8

       B.    The Exercise of Jurisdiction over SIX SIS is Unreasonable ................................. 10

  II.    THE TRUSTEE FAILS TO PLAUSIBLY ALLEGE THAT SIX SIS WAS TRANSFEREE UNDER SECTION 550(A). .................................................................. 11

       A.    The Trustee Has Failed To Meet Its Pleading Burden ........................................... 11

       B.    To the Extent the Court Permits the Trustee's Claim to Proceed, the Court Should Direct the Parties to Address Transferee Status in Summary Proceedings. .......... 12

 III.   THE SECOND AMENDED COMPLAINT ESTABLISHES THAT SIX SIS IS ENTITLED TO THE GOOD FAITH DEFENSE. ......................................................... 13

CONCLUSION .......................................................................................................... 16

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ......................................................................................9

*In re Amaranth Nat. Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008)............................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................12

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018).............................................................................4

*Cooper v. Parsky*,
1997 WL 242534 (S.D.N.Y. Jan. 8, 1997) ....................................................4

*Fairfield Sentry Ltd. v. Migani*,
UKPC 9 [2014] ............................................................................................13

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .....................................8

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)....................................................................................4

*Gilmore v. Rivera*,
2014 WL 1998227 (S.D.N.Y. May 14, 2014) .........................................13, 15

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016)..........................................................13

*Hau Yin To v. HSBC Holdings, PLC*,
No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)................................8, 9

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016)..............................................8

*In re Leff*,
    631 B.R. 106 (E.D.N.Y. 2021) ........................................................................14

*In re Lehman Bros. Holdings, Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) .............................................................5

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
    No. 17-CV-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ....................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) .............................................................................9

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ...........................................................................9

*Picard v. ABN Amro Bank N.A. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*,
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ......................................13

*Picard v. ASB Bank Corp.*,
    No. AP 11-02730, 2022 WL 17087667 (Bankr. S.D.N.Y. Nov. 18, 2022) ............5

*Picard v. Bank Julius Baer & Co. Ltd.*,
    No. AP 11-02922, 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) .........5, 7

*Picard v. Bank Vontobel AG*,
    No. AP 12-01202, 2022 WL 17087560 (Bankr. S.D.N.Y. Nov. 18, 2022) ............5

*Picard v. Banque Lombard Odier & Cie SA*,
    No. AP 12-01693, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ..............5

*Picard v. BSI AG*,
    2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 2, 2022) .......................................6

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...........................................................5, 6

*Picard v. Cohen (In re BLMIS)*,
    2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ......................................13

*Picard v. Crédit Agricole Corp. and Inv. Bank*,
    No. AP 12-01670, 2023 WL 2027245 (Bankr. S.D.N.Y. Feb. 15, 2023) ..............5

*Picard v. The Gerald and Barbara Keller Family Tr.*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021) ...........................................................11, 12

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
    No. AP 11-02539, 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .............5

*Picard v. Multi-Strategy Fund Ltd.*,
No. AP 12-01205, 641 B.R. 78 (Bankr. S.D.N.Y. 2022)........................................5, 6

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
No. AP 12-01565, 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023) ....................................12

*Picard v. UBS AG*,
647 B.R. 42 (Bankr. S.D.N.Y. 2022) ........................................................7

*Picard v. UBS Europe SE*,
No. AP 12-01577, 2023 WL 2290822 (Bankr. S.D.N.Y. Feb. 28, 2023)...........................5, 7

*Picard v. UKFP (Asia) Nominees Ltd.*,
No. AP 12-01566, 2022 WL 17574760 (Bankr. S.D.N.Y. Dec. 9, 2022) ................................6

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................11

*Walden v. Fiore*,
571 U.S. 277 (2014)........................................................4, 5

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)........................................................4

**Statutes**

11 U.S.C. § 550................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b) ........................................................1

Fed. R. Civ. P. 12(d) ........................................................12

SIX SIS AG ("SIX SIS") respectfully submits this Reply Memorandum of Law in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the Second Amended Complaint filed by Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Motion"). For the reasons set forth in SIX SIS's Motion, the Second Amended Complaint should be dismissed in its entirety and with prejudice.[1]

## PRELIMINARY STATEMENT

The Trustee's *Memorandum of Law in Opposition to SIX SIS AG's Motion to Dismiss* (ECF No. 137) (the "Opposition") rests on two arguments: First, the Trustee says, his allegation that SIX SIS transferred funds to the BVI Fairfield Funds, standing alone, establishes jurisdiction over SIX SIS. Second, the Trustee argues that it is premature to consider SIX SIS's affirmative defenses. We demonstrate here that the Trustee is wrong on both arguments and that, rather than addressing the merits of SIX SIS's Motion, the Trustee's Opposition recycles conclusory arguments from factually distinguishable cases and inapposite prior rulings.

The Opposition fails to defeat SIX SIS's Motion for three reasons: *First,* the Trustee fails to identify any jurisdictional contacts beyond his conclusory, boilerplate allegations that, like every other Fairfield Investor, SIX SIS: (i) invested in the Fairfield Funds knowing that the Fairfield Funds invested with BLMIS, (ii) signed the Fairfield Sentry subscription agreement, and (iii) directed money to U.S. bank accounts to execute transactions with the Fairfield Funds. As a matter of law, these allegations fail to demonstrate that SIX SIS "purposefully availed"

---

[1] Capitalized terms as used herein have the same meanings as those set forth in the Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Amended Complaint (the "Opening Brief") (ECF No. 134).

itself of the benefits of doing business in the forum, because they all hinge on contacts of the Fairfield Funds, not contacts of SIX SIS. It is irrelevant whether SIX SIS knew of the Fairfield Funds' contacts because, as a matter of law, the Trustee cannot rely on a third-party's contacts with the forum to demonstrate that SIX SIS is subject to personal jurisdiction in this action.

*Second,* the Trustee fails to identify any factual allegation in the Second Amended Complaint that would establish that SIX SIS was a transferee under section 550(b). And there is no plausible basis for him to allege that SIX SIS was a transferee, because SIX SIS's narrow function as Switzerland's national Central Securities Depository (CSD) is exactly the type of "intermediary financial institution" that is typically considered a mere conduit.

*Third,* the Second Amended Complaint, on its face, demonstrates that SIX SIS is protected by the good faith defense. This defense is not, as the Trustee argues, premature. The Trustee expressly alleges that SIX SIS received the transfers for value, and the Second Amended Complaint includes no allegations that SIX SIS had knowledge of the fraud. Thus, SIX SIS's good faith defense is apparent from the face of the pleadings.[2]

## **ARGUMENT**

It is understandable that the Trustee would devote so much time to this Court's prior rulings denying motions to dismiss by other defendants. However, this Motion rests on circumstances that are unique to SIX SIS and apparent from the face of the Second Amended Complaint. These circumstances put SIX SIS beyond the analysis of prior cases.

---

[2] With respect to SIX SIS's defense based upon the statute of limitations, SIX SIS relies on its opening argument and does not further address that issue here.

Specifically, the Trustee does not and cannot plausibly allege that SIX SIS ever had any

other role than to pass funds owned by other entities to the Fairfield Funds in accordance with

those entities' instructions. The Trustee does not allege that SIX SIS had or claimed any

knowledge or special connection with BLMIS, or that it had any involvement with anyone's

decision to send money to the Fairfield Funds. Therefore, the Trustee necessarily must rest his

claims against SIX SIS on narrow, conclusory allegations that cannot sustain his burden to show

that jurisdiction exists and, in any event, make the exercise of jurisdiction unreasonable. These

circumstances distinguish the cases that underlie the Opposition. Accordingly, SIX SIS

respectfully requests that this Court dismiss the Second Amended Complaint with prejudice.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER SIX SIS.

### A.    The Trustee has Failed to Establish that SIX SIS Has Sufficient Contacts with New York.

The Trustee contends that SIX SIS purposefully availed itself of the benefits of doing

business in New York based on the following purported contacts: (1) SIX SIS invested in the

BVI Fairfield Funds knowing that, in turn, the Fairfield Funds invested with BLMIS; (2) SIX

SIS signed the Fairfield Sentry subscription agreement, which included New York forum

selection and choice of law provisions for disputes arising out of that agreement; and (3) SIX SIS

used certain U.S. bank accounts to transact with BVI-based Fairfield Sentry.

Thus, the Trustee alleges no direct contact between SIX SIS and this forum other than the

incidental use of bank accounts. Instead, the Trustee attempts to impute *the Fairfield Funds'*

*contacts with the forum* to SIX SIS. At bottom, the Trustee is arguing that executing transactions

with the BVI-based Fairfield Funds is, in and of itself, sufficient to establish jurisdiction over

SIX SIS in New York. However, the cases the Trustee relies upon are distinguishable and do not

support the Trustee's conclusion.  Indeed, the expansive notion of personal jurisdiction that the

Trustee must assert to sue SIX SIS here flies in the face of controlling Supreme Court precedent.

### i.   *Investments in Fairfield Funds do not Establish Personal Jurisdiction.*

As a matter of law, SIX SIS's mere knowledge that Fairfield Sentry would invest in the

New York securities market is insufficient to support jurisdiction.  This is because jurisdiction

must rest only on contacts that the defendant itself creates, not the contacts of a third party.  *See*

*Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding that plaintiffs cannot rely on "contacts

between the plaintiff (or third parties) and the forum State" to satisfy jurisdiction); *Waldman v.*

*Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) ("The relationship between the

defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the

forum.'" (citation omitted)); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d

513, 536–37 (S.D.N.Y. 2008) (finding lack of personal jurisdiction where company's sole

contact with forum was investment in foreign hedge fund managed by members in forum state).[3]

Contrary to the Trustee's argument, this Court's ruling in *Picard v. Bureau of Labor Ins.*

*(In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), does not displace this directly

applicable Supreme Court precedent or support jurisdiction here.  As a preliminary matter, *BLI* is

---

[3] In limited circumstances, the court can attribute the jurisdictional contacts to shareholders under alter ego and agency theories.  *See Cooper v. Parsky*, 1997 WL 242534, at *14 (S.D.N.Y. Jan. 8, 1997) ("Even a controlling shareholder will not be subject to personal jurisdiction unless the record justifies piercing the corporate veil.").  While the Trustee attempts to attribute the Fairfield Funds' jurisdictional contacts to SIX SIS, the Second Amended Complaint does not allege facts to support jurisdiction under an alter ego theory here.  Likewise, the Trustee does not allege that SIX SIS directed the Fairfield Funds' investments, as would be required under an agency theory.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring alleged agent in New York to have acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").  On the contrary, the allegations in the Second Amended Complaint demonstrate that SIX SIS was a mere shareholder with no control over the Fairfield Funds' activity.  (SAC ¶¶ 12, 13, 72, 76).

irrelevant because it predates the Supreme Court's ruling in *Walden* that mere knowledge or intent of a consequence in a forum state cannot, by itself, give rise to personal jurisdiction. 571 U.S. at 289;  *see also In re Lehman Bros. Holdings, Inc.*, 535 B.R. 608, 621–22 (Bankr. S.D.N.Y. 2015).  Moreover, even assuming that *Walden* did not overrule *BLI*, its reasoning is inapplicable to the facts of this case.  Specifically, *BLI* involved a "self-proclaimed 'Professional Investor'" that conducted due diligence on Fairfield Sentry, including by engaging a third-party to perform due diligence on the Fairfield Funds and their strategy.  *BLI*, 480 B.R. at 517.  The court's ruling sustaining jurisdiction rested squarely on those detailed allegations of BLI's extensive investment activities in or directed to the forum.  *Id.*

While this Court has applied *BLI* in other redeemer actions, in nearly every case, the Court relied on the Trustee's allegations of forum-specific conduct, such as meetings with BLMIS in New York,[4] maintaining an account with BLMIS,[5] meetings with Fairfield Greenwich Group personnel in New York,[6] conducting due diligence on BLMIS,[7] soliciting clients to invest

---

[4] *See Picard v. Banque Lombard Odier & Cie SA*, No. AP 12-01693, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022);  *Picard v. ASB Bank Corp.*, No. AP 11-02730, 2022 WL 17087667 (Bankr. S.D.N.Y. Nov. 18, 2022);  *Picard v. Bank Julius Baer & Co. Ltd.*, No. AP 11-02922, 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022).

[5] *See Picard v. Banque SYZ & Co., SA*, No. AP 11-02149, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022).

[6] *See Picard v. Multi-Strategy Fund Ltd.*, No. AP 12-01205, 641 B.R. 78 (Bankr. S.D.N.Y. 2022); *Picard v. Bank Vontobel AG*, No. AP 12-01202, 2022 WL 17087560 (Bankr. S.D.N.Y. Nov. 18, 2022);  *Picard v. UBS Europe SE*, No. AP 12-01577, 2023 WL 2290822 (Bankr. S.D.N.Y. Feb. 28, 2023).

[7] *See Picard v. Crédit Agricole Corp. and Inv. Bank*, No. AP 12-01670, 2023 WL 2027245 (Bankr. S.D.N.Y. Feb. 15, 2023);  *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, No. AP 11-02539, 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022);  *Picard v. UKFP (Asia) Nominees Ltd.*, No. AP 12-01566, 2022 WL 17574760 (Bankr. S.D.N.Y. Dec. 9, 2022).

in the Funds,[8] or receiving profit distributions from Fairfield Group Limited in New York.[9]  The Court found that such conduct reflected the defendants' goal of "reap[ing] the benefits" from the "Madoff money orchard."  *See, e.g.*, *Multi-Strategy Fund Ltd.*, 641 B.R. at 87–88.  Thus, the conduct at issue in *BLI* and the other redeemer actions stands in stark contrast to that of SIX SIS.  As a Central Securities Depository, SIX SIS had a purely ministerial role settling securities and providing custody for financial institution clients.  *See* Declaration of Stephan Hänseler in Support of Defendant's Motion to Dismiss the Amended Complaint, dated July 8, 2022 (ECF No. 133) ("Hänseler Decl."), ¶¶ 2, 9, 10, 17.  SIX SIS had no investment discretion, no due diligence obligation, did not conduct any due diligence, and never sought to profit from the Madoff operations.  *Id.* at ¶¶ 9–20.  (*See also* Opening Brief, at 8–9).  In short, the Second Amended Complaint is devoid of any allegation that SIX SIS projected itself into New York or that it reaped any benefits from BLMIS, as distinguished from simply collecting the same nominal fee it charged all clients for all transactions.

Contrary to the Opposition (at 10), this Court's decision to sustain jurisdiction in *Picard v. BSI AG*, 2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 2, 2022) did not rule that the absence of profit motive is irrelevant.  Rather, the Court there relied on allegations that defendants' employees and agents in New York met and communicated with Fairfield Greenwich Group employees in New York to discuss the defendant's investments, used advisors in New York to provide advice for investing with the Fairfield Funds and BLMIS, and had an advisor meet with a partner of Fairfield Greenwich Group regarding investments with the Fairfield Funds.  *Id.* at

---

[8] *See Banque SYZ & Co.*, 2022 WL 2135019.

[9] *See Bank Julius Baer & Co.*, 2022 WL 17726520.

*3.  As detailed above, the Trustee makes no such allegations against SIX SIS in the Second Amended Complaint.

The Trustee also cites to *Picard v. UBS AG*, 647 B.R. 42, 57 (Bankr. S.D.N.Y. 2022) to support his contention that the nominal transaction fee earned by SIX SIS for executing a transaction with the Fairfield Funds supports the exercise of jurisdiction.  Not so.  *UBS* involved an investment advisor whose "alleged purpose was to protect BLMIS from U.S. regulatory scrutiny," and in exchange for this service, received "$28.7 million dollars in fees from BLMIS customer property."  *Id.*  In contrast, SIX SIS received a nominal transaction fee from its clients for settling the transaction with the Fairfield Funds.  These were mere processing fees, in no way connected to BLMIS, and were not profit-based.  Furthermore, the amount SIX SIS would have received for the redemptions alleged (less than $25,000), *see* Compl. Exs. C & E and Hänseler Decl. ¶ 18, is not in the same ballpark as those fees allegedly received in the *UBS* case.  *Contrast with Bank Julius Baer & Co.*, 2022 WL 17726520, at *5 (finding jurisdiction over defendant that entered into fee-sharing agreement with Fairfield Greenwich Limited and received quarterly fee payments for investments it placed in Fairfield Sentry).

Most fundamentally, the Supreme Court has squarely rejected the Trustee's primary argument that mere knowledge or intent of a consequence in a forum state is sufficient to confer personal jurisdiction.  And the Trustee's argument as applied to SIX SIS, a purely transactional infrastructure company, is without precedent.  On the face of the Second Amended Complaint, SIX SIS did not avail itself of the benefits and protections of New York and cannot be forced to litigate here.

ii.  *The Forum Selection and Choice of Law Clauses in the Fairfield Sentry*
       *Subscription Agreements are not Relevant Contacts.*

Next, the Trustee points to the Fairfield Sentry subscription agreements, arguing that the

New York choice of law and choice of forum provisions in those agreements evidence "a strong

nexus with New York."  (Opposition, at 13 (quoting *BLI*, 480 B.R. at 517 n.15)).  However, in

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL

3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"), the Court held that the forum

selection clause in the Fairfield Sentry subscription agreements "does not constitute consent to

personal jurisdiction in the U.S. Redeemer Actions."  *Id.*  That case, which the Trustee simply

ignores, forecloses his argument here.

iii.  *The Use of a Bank Account for Routine Transfers is Insufficient to Confer*
       *Personal Jurisdiction.*

Finally, the Trustee argues that SIX SIS purposefully availed itself of New York law by

using New York banks to process subscriptions and redemptions.  Contrary to the Trustee's

assertion, however, the mere use of a bank account by a foreign entity under a foreign contract is

not sufficient to confer jurisdiction in this case.  *See Hau Yin To v. HSBC Holdings PLC*, No.

15CV3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66

(2d Cir. 2017) ("[A] foreign defendant's communications with a party in New York or sending

of monies into New York are not sufficient to establish personal jurisdiction without the

defendant having 'projected' itself into New York for the purposes of conducting business

there.");  *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-CV-3793 (PAE), 2017 WL

4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank

account did not establish specific jurisdiction);  *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333,

339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to

8

be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the

Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws

of" the forum).

The Trustee erroneously relies on three cases, *Licci v. Lebanese Canadian Bank*, 732

F.3d 161 (2d Cir. 2013), *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016), and *Official Comm.

of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016),

to support a contrary result.  (Opposition, at 14–17).  In each of those cases, the plaintiff alleged

that the banks used accounts located in New York in furtherance of the illegal activity at the

source of the dispute.  In *Licci*, for example, the complaint alleged that the foreign defendant

aided terrorist groups by giving them access to the U.S. financial system through the

correspondent bank accounts.  732 F.3d at 173.  Thus, the court found that the defendant was

subject to personal jurisdiction because the U.S. bank accounts were used in furtherance of

illegal activity and, as such, were an integral part of the claims.  *See also Rushaid*, 28 N.Y.3d at

328–29, 339 (finding a foreign bank subject to personal jurisdiction in New York when it

intentionally and repeatedly used a correspondent bank account in New York as an "integral"

part of fraudulent scheme to wire criminal proceeds to defendants).  To the extent relevant, the

cases cited by the Trustee demonstrate that a ministerial bank account, with no connection to the

claims, is not a sufficient jurisdictional connection.

In contrast, here, there is no allegation that the ministerial use of the U.S. bank accounts

to transfer funds between SIX SIS and the Fairfield Funds was integral to Madoff's illegal

activity.  *See Hau Yin*, 2017 WL 816136, at *7 n.6.  ("The wiring of funds through New York in

this case, however, was passive, rather than 'integral' to the alleged Ponzi scheme. . . . Here, the

passage of money through the U.S. bank accounts were merely incidental and not specifically directed . . . to facilitate the Ponzi scheme.").

### B.    The Exercise of Jurisdiction over SIX SIS is Unreasonable.

Even if the contacts the Trustee alleges could possibly support a finding of jurisdiction (which they do not), it is unreasonable to use such incidental contacts to drag SIX SIS, a Swiss infrastructure company that served a purely ministerial function, into this massive, time-consuming, and costly litigation in New York.  The burden is clearly not, as the Trustee argues, "minimal" and "negligible."  (Opposition, at 18, 20).  First, as SIX SIS demonstrates in its Opening Brief (at 13–14), this litigation implicates Swiss secrecy laws that put SIX SIS at risk of criminal sanctions for complying with discovery demands and that, even if it may be possible to navigate them successfully, will impose significant legal costs in both the United States and Switzerland.   Moreover, because of these laws, SIX SIS's own counsel cannot even look at documents outside of the physical borders of Switzerland.  Thus, the Trustee is wrong when he argues that the "conveniences of modern communication and transportation" will minimize the burden of participating in litigation here.

The only element that actually weighs in the Trustee's favor is that this forum has an interest in litigating BLMIS adversary proceedings.  (Opposition, at 20–21).  But, given the extremely limited involvement of SIX SIS in the events that underlie these cases, that interest does not outweigh the burdens SIX SIS will face if required to litigate here.  Furthermore, the Trustee does not dispute that it can achieve effective relief in Switzerland and that proceeding there would avoid most of the difficulties that SIX SIS reviewed in its Opening Brief (at 12–14) and above.

10

In short, SIX SIS is a mere custodian—it has no discretion and offered no advice. It never

sought to benefit from the performance of BLMIS and never held any funds received in

distributions for its own account. *See* Hänseler Declaration. Assuming it participated in all

redemptions the Trustee lists, the total of its processing fees received was less than $25,000 over

5 ½ years. For these reasons, it is unreasonable to force SIX SIS to litigate in the United States.

For this additional reason, the Second Amended Complaint should be dismissed with

prejudice for lack of personal jurisdiction.[10]

## II.    THE TRUSTEE FAILS TO PLAUSIBLY ALLEGE THAT SIX SIS WAS TRANSFEREE UNDER SECTION 550(A).

### A.   The Trustee Has Failed To Meet His Pleading Burden.

The parties agree that under section 550(a) of the bankruptcy code, the Trustee can only

recover avoided transfers from an "immediate or mediate transferee," and that "[t]he minimum

requirement of status as a 'transferee' is dominion over the money or other asset," meaning "the

right to put the money to one's own purposes." *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,

234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (*quoting Bonded Fin. Servs., Inc., v. Eur. Am. Bank*,

838 F.2d 890, 893 (7th Cir. 1988)). On its face, the Second Amended Complaint fails to

plausibly allege that SIX SIS is a transferee; that is, that it had dominion and control over the

transferred funds in question. *See Picard v. The Gerald and Barbara Keller Family Tr. (In re*

*BLMIS)*, 634 B.R. 39, 49–50 (Bankr. S.D.N.Y. 2021) (a transferee must exercise "dominion over

---

[10] The Trustee's request for jurisdictional discovery should be denied. The Trustee has had access to the records of the Fairfield Funds, BLMIS, and other entities for years and has had ample time to cure the defective pleadings. Permitting jurisdictional discovery would just delay this decade-old proceeding and is unlikely to result in any additional relevant information.

the money or other asset," meaning "the right to put the money to one's own purposes" (*citing In re Finley*, 130 F.3d 52, 57 (2d Cir. 1997))).

The Trustee's sole argument in opposition is that it is premature to decide this issue now as, it says, SIX SIS has the burden to demonstrate that it lacked dominion and control over the funds.  (Opposition, at 28).  The Trustee is wrong.  The Trustee must plausibly allege that the elements of its claim are satisfied, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and here the Trustee must plausibly allege that SIX SIS was an immediate or mediate transferee to meet his pleading burden.  But the Second Amended Complaint does not include any non-conclusory facts to demonstrate that SIX SIS was an immediate or mediate transferee, i.e., that it had dominion or control over the redemptions.  Nor could it.  The Trustee ignores the uncontested nature of SIX SIS's business—as an infrastructure company, it is exactly the type of "intermediary financial institution[]" that is normally considered to be a mere conduit.  *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, No. AP 12-01565, 2023 WL 118787, at *7 n.6 (Bankr. S.D.N.Y. Jan. 6, 2023).[11]  Thus, the Trustee cannot plausibly allege that SIX SIS exercised dominion or control over the redemptions.

**B.    To the Extent the Court Permits the Trustee's Claim to Proceed, the Court Should Direct the Parties to Address Transferee Status in Summary Proceedings.**

The Trustee argues that whether SIX SIS is a transferee is a "fact-specific" inquiry.

Should the Court allow the Trustee to proceed despite the deficiencies in its pleadings, the Court

---

[11] SIX SIS submits the Hänseler Declaration in support of its motion to dismiss for lack of personal jurisdiction.  To the extent that the undisputable facts in the Hänseler Declaration may also be relevant to establish as a matter of law that SIX SIS qualifies for the mere conduit defense created by 11 U.S.C. § 550(a) or for the good faith defense created by 11 U.S.C. § 550(b), Rule 12(d) authorizes the Court to treat this motion as one for summary judgment.

should direct the parties to meet and confer to set a summary procedure with limited discovery necessary to resolve this issue. The Trustee rejects this approach, claiming that the discovery sought would be "the exact same discovery the Trustee needs to proceed with the case." (Opposition, at 33). Not so. The summary proceeding would have a limited scope of determining whether SIX SIS was a "transferee" under section 550(a); that is, whether SIX SIS had dominion and control over the transferred funds in question. *See Keller Family Tr.*, 634 B.R. at 49–50. The level of discovery and type of evidence that would demonstrate SIX SIS's status as a mere conduit is nowhere near as encompassing as claimed by the Trustee—due diligence materials, the purpose of the investments, and "facts regarding the investment process" are all irrelevant to whether SIX SIS was a transferee for the transactions alleged in the Second Amended Complaint.

In short, the Trustee has failed to articulate a single compelling reason why the Court should not order a summary proceeding. Given that SIX SIS is the Central Securities Depository of the Swiss financial market and is a unique defendant, in the event the Court does not dismiss the Trustee's Second Amended Complaint, SIX SIS submits that a streamlined process here would conserve judicial and party resources.

## III.   THE SECOND AMENDED COMPLAINT ESTABLISHES THAT SIX SIS IS ENTITLED TO THE GOOD FAITH DEFENSE.

The Trustee's sole argument against application of the good faith defense is that it is "fact intensive." (Opposition, at 34–36). However, whether a defense may sometimes be "fact intensive" is irrelevant when, as here, the allegations of the Second Amended Complaint establish this defense as a matter of law. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 890 (S.D.N.Y. 2016) ("[A] complaint is subject to dismissal for failure to state a claim when an affirmative defense clearly appears on the face of the complaint."); *see*

*also Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under

Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is

apparent from the face of the complaint.").

        As set forth in the Opening Brief, the Second Amended Complaint alleges that the

subsequent transfers were received in exchange for the surrender of shares.  (SAC ¶¶ 8–16, 69,

72).  There is no question that the "redemptions of equity interests" (SAC ¶¶ 72, 76) "constitutes

value for purposes of section 550(b)."  *Picard v. ABN Amro Bank N.A. (Sec. Inv. Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC)*, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020)

("Surrendering equity interests constitutes value for purposes of section 550(b) because it is

consideration sufficient to support a simple contract.");  *see also Picard v. Cohen (In re BLMIS)*,

2016 WL 1695296, at *10, *14 (Bankr. S.D.N.Y. Apr. 25, 2016) (holding that the "transferee

does not give value beyond his deposits of principal" and "[i]n all Ponzi scheme fraudulent

transfer litigation, a transferee must return transfers in excess of his principal deposits");

*Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9 (Valentine Decl. Ex. 1).

        The Trustee's only answer to this controlling authority is the observation that the Second

Amended Complaint "*does not mention* Defendant exchanging shares for consideration."

(Opposition, at 35, emphasis added).  But, it is immaterial whether the Second Amended

Complaint specifically used the word "consideration," when it so clearly does allege that SIX

SIS exchanged equity interests in exchange for monies received.  Under the cases cited, that is

sufficient consideration under section 550(b).

        *Second*, the Second Amended Complaint establishes, by its terms, that SIX SIS received

the redemptions in good faith and without knowledge of the fraud.  First, the Trustee has

emphasized the extensive efforts by which the Fairfield defendants concealed their fraud.

Specifically, the Fairfield Amended Complaint alleges that the Fairfield defendants "misled the SEC," *id.* ¶ 9, "misled ratings agencies," *id.* ¶¶ 263–66, and misled third-party consultants, *id.* ¶ 267. It also asserts that these tactics worked and a host of entities were misled. *Id.* ¶¶ 235–262 (alleging that Fairfield "strategized with Madoff to mislead the SEC," "misled third parties," "downplayed investor concerns to induce them to ignore" that "the misappropriation of assets [by BLMIS] was a real threat," and that the SEC "closed its investigation into BLMIS and [Fairfield] in November 2007" without "intend[ing] to recommend any enforcement action against [Fairfield]").

Those extensive judicial admissions make it impossible for the Trustee to allege that SIX SIS could have or should have discovered BLMIS's fraud. Indeed, the Second Amended Complaint does not even allege that SIX SIS conducted, or should have conducted, due diligence. Instead, the Second Amended Complaint simply alleges that SIX SIS invested in the Fairfield Funds. *See In re Leff*, 631 B.R. 106, 127 (E.D.N.Y. 2021) (dismissing complaint in part based on section 550(b) good-faith because there was "nothing in the record to suggest that the Defendants were aware of any adverse financial situation the Debtor may have been in during the relevant time periods nor does the record indicate the Defendants had knowledge of such facts that could have put them on notice"). While the Trustee argues that consideration of the good faith defense is premature, in the case of SIX SIS, the defense is clearly established on the face of the Second Amended Complaint. As such, the Second Amended Complaint should be dismissed. *See Gilmore*, 2014 WL 1998227, at *2 ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

## **CONCLUSION**

For the foregoing reasons, the Second Amended Complaint should be dismissed with

prejudice.

Dated:  New York, New York
       March 14, 2023

                          CHAFFETZ LINDSEY LLP

                          By:      /s/ Andreas Frischknecht
                                    Andreas A. Frischknecht
                                    Erin E. Valentine

                          1700 Broadway, 33rd Floor
                          New York, New York 10019
                          Tel. (212) 257-6960
                          Andreas.Frischknecht@chaffetzlindsey.com
                          Erin.Valentine@chaffetzlindsey.com