**KOBRE & KIM LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Zachary.Rosenbaum@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01690 (CGM) |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| EFG BANK S.A., f/k/a EFG Private Bank S.A., EFG BANK (MONACO) S.A.M., f/k/a EFG Eurofinancière d'Investissements S.A.M., and EFG BANK & TRUST (BAHAMAS) LIMITED, as successor-in interest to Banco Atlántico (Bahamas) Bank & Trust Limited, | |
| Defendant. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

   I.   The Amended Complaint Fails to Allege Sufficient Facts to Support Personal Jurisdiction Over the EFG Defendants ...................................................................................... 1

     A.  EFG Monaco ................................................................................................ 3

     B.  EFG Bahamas............................................................................................... 7

     C.  Jurisdictional Discovery Would Be Inappropriate ........................................... 9

   II.  The Trustee's Claim is Barred by the Section 546(e) Safe Harbor ................................. 10

   III.  The Amended Complaint Fails to Plausibly Allege that the EFG Defendants Received BLMIS Customer Property ............................................................................................ 11

   IV.  The Trustee's Own Allegations Establish that the EFG Defendants Are Entitled to the Application of the Good Faith Defense..................................................................... 14

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC* (*In re 45 John Lofts, LLC*),
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 11

*Black v. Dain*,
  2018 WL 11447342 (E.D.N.Y. Sept. 17, 2018) .......................................................... 5

*Bonilla v. Smithfield Assocs. LLC*,
  2009 WL 4457304 (S.D.N.Y. Dec. 4, 2009).............................................................. 8

*CNB Int'l Inc. v. Kelleher* (*In re CNB Int'l, Inc.*),
  393 B.R. 306 (Bankr. W.D.N.Y. 2008)................................................................... 13

*Edmondson v. RCI Hosp. Holdings, Inc.*,
  2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ........................................................ 12

*Fairfield Sentry Ltd. v. HSBC Sec. Servs.* (*Luxembourg*) *S.A.*,
  2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022)…………………………………………9

*Grow Grp., Inc. v. Jandernoa*,
  1996 WL 31848 (S.D.N.Y. Jan. 26, 1996)................................................................ 3

*IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*),
  408 F.3d 689 (11th Cir. 2005)................................................................................ 14

*In re Baker & Getty Fin. Servs., Inc.*,
  974 F.2d 712 (6th Cir. 1992).................................................................................. 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
  2023 WL 395225 (S.D.N.Y. Jan. 25, 2023)............................................................. 2

*Kiobel v. Royal Dutch Petroleum Co.*,
  2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ......................................................... 9

*Law v. Siegel*,
  571 U.S. 415 (2014).............................................................................................. 10

*Lipton v. Cty. of Orange*, N.Y.,
    315 F. Supp. 2d 434 (S.D.N.Y. 2004) ................................................................................ 8

*Maranga v. Vira*,
    386 F. Supp. 2d 299 (S.D.N.Y. 2005) ............................................................................ 6, 8

*Metals Alliance Corp. v. Beshay*,
    1998 WL 811788 (S.D.N.Y. Nov. 19, 1998) .................................................................. 6

*Picard v. ABN AMRO Bank* (*Ireland*) *Ltd.* (*In re BLMIS*),
    2022 WL 1304589 (S.D.N.Y. May 2, 2022) ................................................................. 15

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ............................................................................ 15

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................................... 9

*Picard v. Charles Ellerin Revocable Tr.* (*In re BLMIS*),
    2012 WL 892514 ........................................................................................................... 11

*Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*),
    773 F.3d 411 (2d Cir. 2014) .................................................................................... 10, 11

*Picard v. Fairfield Inv. Fund Ltd. et al. (In re BLMIS)*,
    2021 WL 3477479 (Bankr. S.D.N.Y 2021) ................................................................. 13

*Picard v. Merkin* (*In re BLMIS*),
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................................... 11

*Picard v. Shapiro* (*In re BLMIS*),
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) .......................................................................... 11

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
    2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014) ............................................................... 7

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .............................................................. 10

*SIPC v. BLMIS*,
    516 B.R. 18 (S.D.N.Y. 2014) ....................................................................................... 14

iv

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),*
   239 F.3d 365 (5th Cir. Dec. 11, 2000) ................................................................. 14

*SPV OSUS Ltd. v. UBS AG,*
   114 F. Supp. 3d 161 (S.D.N.Y. 2015) ................................................................... 5

*Tera Grp., Inc. v. Citigroup, Inc.,*
   2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018) ....................................................... 4

*United States v. Henshaw,*
   388 F.3d 738 (10th Cir. 2004) ............................................................................. 14

*Walden v. Fiore,*
   571 U.S. 277 (2014) ............................................................................................. 2

**Statutes**

11 U.S.C. § 546(e) ................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ................................................................................. 10

11 U.S.C. § 550(a) ......................................................................................... 15

11 U.S.C. § 550(a)(2)...................................................................................12

11 U.S.C. § 550(b) ......................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................................... 1

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1

N.Y. C.P.L.R  § 302(a)(1) (McKinney 2001) ................................................... 6

EFG Bank S.A. (a/k/a EFG Bank AG) ("<u>EFG Bank</u>"), EFG Bank (Monaco) S.A.M. ("<u>EFG</u>

<u>Monaco</u>"), and EFG Bank & Trust (Bahamas) Limited ("<u>EFG Bahamas</u>," and collectively, the

"<u>EFG Defendants</u>"), by the undersigned, respectfully submit this reply memorandum of law in

support of their motion to dismiss, with prejudice, the Amended Complaint filed by plaintiff Irving

H. Picard (the "<u>Trustee</u>"), as trustee for the Liquidation of Bernard L. Madoff Investment

Securities LLC ("<u>BLMIS</u>"), under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil

Procedure.[1]

## <u>PRELIMINARY STATEMENT</u>

The EFG Defendants are three of dozens of alleged "subsequent transferees" from whom

the Trustee is seeking to recover transfers of alleged customer property made by BLMIS to Sentry.

The EFG Defendants have reviewed the Court's decisions on motions to dismiss filed by other

subsequent transferees and acknowledge that the Court has rejected arguments similar to those

raised by the EFG Defendants. The EFG Defendants continue to advance their motion to dismiss

to preserve the EFG Defendants' arguments on appeal and because, as to personal jurisdiction, this

motion warrants a different outcome due to the particular facts of this case.

## <u>ARGUMENT</u>

### I.    The Amended Complaint Fails to Allege Sufficient Facts to Support Personal Jurisdiction Over the EFG Defendants

The EFG Defendants are foreign entities who redeemed shares held in entities located in

the British Virgin Islands. As explained in greater detail in the Opening Brief, the Amended

Complaint lacks sufficient facts to allege specific jurisdiction with respect to these purely foreign

transactions.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the EFG Defendants' initial memorandum of law (the "Opening Brief"), Dkt. No. 104, cited as "Opening Br." Citations to "Opp'n." refer to the Trustee's opposition memorandum (the "Opposition"), Dkt. No. 108.

The EFG Defendants recognize that, after they filed their motion, the District Court suggested that intentionally investing in the Fairfield Funds constituted purposeful availment of jurisdiction in New York. *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 22 CIV. 6561 (LGS), 2023 WL 395225, at 4 (S.D.N.Y. Jan. 25, 2023) (the "*Lombard* Interlocutory Decision").[2] However, the *Lombard* Interlocutory Decision does not categorically confer personal jurisdiction over all alleged subsequent transferees of the Fairfield Funds. Rather, Judge Schofield held that the Trustee adequately pled purposeful availment through allegations of the defendant "intentionally investing in a New York-based investment fund" because Sentry's "offering documents required it to invest substantially all of its assets in BLMIS" and defendant "intended to invest in New York-based BLMIS, because of the value proposition offered by Mr. Madoff." *Id.* at *4. Critically, Judge Schofield also recognized that holding investments in a non-New York Fund that incidentally invested in New York is insufficient to confer jurisdiction. *See id.* ("These allegations are distinguishable from the situation Defendant posits, in which a defendant invests in a non-New York fund because of the value proposition of that fund, knowing that its investment manager's portfolio strategy involves some New York investments.").

Unlike the complaint in the *Lombard* Interlocutory Decision, the Trustee has failed to identify any well-pled allegations or other facts showing intentional investment in the New York securities market with respect to the sole alleged subsequent transfer received by EFG Monaco and the vast majority of subsequent transfers allegedly received by EFG Bahamas.[3]

---

[2] The EFG Defendants respectfully submit that the *Lombard* Interlocutory Decision is inconsistent with *Walden v. Fiore*, 571 U.S. 277 (2014) and other relevant authorities. For the sake of judicial efficiency, the EFG Defendants will rely on the papers they have already submitted to respond to the arguments in the Trustee's Opposition based on the *Lombard* Interlocutory Decision and this Court's rulings concerning other alleged Fairfield subsequent transferee defendants. The EFG Defendants do not waive any arguments raised in the Opening Brief, including the arguments that the Amended Complaint lacks facts sufficient to allege specific jurisdiction over the EFG Defendants.

[3] In particular, the Trustee has not identified facts supporting the assertion in his Opposition that "each defendant knew: (i) Fairfield Sentry invested at least 95% of its assets with BLMIS, and Fairfield Sigma and Fairfield Lambda

2

A.  EFG Monaco

The Amended Complaint contains no jurisdictional facts specific to EFG Monaco.  The Trustee attempts to sidestep this clear pleading deficiency by arguing that "Defendants" is a defined term that includes EFG Monaco, such that any allegation that loosely refers to contacts by "Defendants" as an undifferentiated mass shows, by implication, contacts by EFG Monaco. Opp'n at 8, 16 n. 12. This tactic is a classic example of improper group pleading and the Trustee has provided no factual basis for attributing allegations concerning contacts by "Defendants" to EFG Monaco. *See Grow Grp., Inc. v. Jandernoa*, No. 94-CV-5679 (RPP), 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) ("It is well settled that in determining personal jurisdiction each individual's contact with the forum must be evaluated individually" and that "considering the defending parties by group and aggregating their forum contacts in determining jurisdiction is plainly unconstitutional.").

The Trustee further responds by asserting that "the Amended Complaint makes clear how each defendant purposely availed themselves of the forum." Opp'n at 8 n. 12. But the only allegations in the Amended Complaint specifically referencing EFG Monaco are statements that it: (a) is a société anonyme incorporated and organized under the laws of Monaco, Am. Compl. ¶ 54, (b) invested in Kingate, *id.*, ¶ 64, and (c) allegedly received a single redemption payment of $5,045,022 from Sentry on October 14, 2005. *Id.* ¶¶ 106–109. The Amended Complaint makes no allegations that EFG Monaco communicated with the Fairfield Funds, executed any agreements with the Fairfield Funds, received the offering memorandum for the Fairfield Funds, or directed

---

invested substantially all of their assets with BLMIS through Fairfield Sentry; (ii) New York-based BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; (iii) any returns on investment in the Fairfield Funds would purportedly be earned by BLMIS in New York through its execution of the SSC Strategy; (iv) BLMIS's SSC Strategy purportedly involved the purchase and sale of U.S. securities, U.S. options, and U.S. Treasury Bills; (v) BLMIS performed all investment management duties for the Fairfield Funds, and the decisions regarding when and which U.S. securities to purportedly purchase were made by BLMIS in New York; and (vi) BLMIS was 'essential to the continued operation of Fairfield Sentry." Opp'n at 9–10.

any subscription payments to the Fairfield Funds, let alone that EFG Monaco intended that investments in the Fairfield Funds would be directed towards the United States. The allegations in the Amended Complaint concerning EFG Monaco are undistinguishable from the "scant facts" referenced by the Trustee in *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302 (RJS), 2018 WL 4732426, at *2 (S.D.N.Y. Sept. 28, 2018), or the several other cases cited in the Opening Brief reiterating that group pleading fails as a matter of law. *See* Opening Br. at 14–15 (collecting cases).

Consequently, the Court should disregard allegations couched against "Defendants" as a whole and focus solely on the facts specifically concerning EFG Monaco put forward by the Trustee in his Opposition. Standing alone, those facts are insufficient to establish specific jurisdiction.

First, the Trustee attaches exhibits supposedly "documenting" subscriptions and redemptions by EFG Monaco. What these documents actually show are deposits into a bank account held by *Citco Bank Nederland N.V.*, Dkt. No. 109-24, and execution of a short form subscription agreement by *Citco Global Custody N.V.* Dkt No. 109-25. Because Citco executed the relevant documents, these exhibits directly rebut the Trustee's allegations that EFG Monaco knowingly invested in the New York securities market based on documents executing subscription agreements with the Fairfield Funds. *See* Am. Compl. ¶¶ 65, 69–71. These allegations are the only bases identified by the Trustee tying EFG Monaco's redemption from Sentry, a British Virgin Island fund, to investments in the United States. *See* Opp'n at 12 ("Under the facts of this case—where Defendants have entered into subscription agreements with the Fairfield Funds expressly indicating Defendants' intent to direct custody and control over their funds to a specific U.S. broker-dealer in order to knowingly profit from the U.S. securities markets—Defendants have purposefully availed themselves of the laws and protections of the United States."), 16 n. 12 ("The

4

Trustee alleges that EFG Monaco intentionally invested in BLMIS, executed subscription agreements with New York choice-of-law and jurisdictional provisions, and directed Fairfield Sentry subscription payments to New York-bank accounts.").

Second, the Trustee attaches several exhibits supposedly demonstrating contacts *after* EFG Monaco allegedly received the sole redemption at issue. *See* Dkt. Nos. 109-13, 109-19, 109-20, 109-21, 109-22, 109-23.[4] By definition, these contacts are unrelated to the alleged basis for liability and cannot confer specific jurisdiction. *See Black v. Dain*, No. 16CV1238CBAST, 2018 WL 11447342, at *3 (E.D.N.Y. Sept. 17, 2018) ("[P]laintiffs' proposed expansion of personal jurisdiction has been rejected by numerous other courts, including several circuits, with some even adopting a more narrow view that requires an assessment of the defendant's contacts at the time the claim arose—steps before the filing of the complaint.").

Third, the Trustee cites contacts with FGG totally unrelated to this lawsuit, including an attempt by FGG to solicit subscriptions by a customer of EFG Monaco in funds other than the Fairfield Funds after that customer declined to invest in Sentry, Dkt. No. 109-15, and an e-mail related to investments in Kingate. Dkt. No. 109-17.[5] These contacts are irrelevant to the alleged basis for liability and beyond the scope of the specific jurisdiction inquiry.

Fourth, the Trustee cites two exhibits containing correspondence between representatives of EFG Monaco and FGG regarding subscriptions into Sentry. Dkt. No.s 109-16, 109-18. However, the emails cited by the Trustee do not show execution of any documents by EFG

---

[4] The short form subscription agreement previously mentioned also post-dates the alleged redemption received by EFG Monaco. *See* Dkt. No. 109-25.

[5] The Trustee claims that he cites communications with Kingate "to further demonstrate that Defendants knowingly directed funds to BLMIS in New York." Opp'n 21 n. 14. However, even accepting the Trustee's premise that knowingly directing funds towards New York conferred jurisdiction, that can only be with respect to *that specific investment. See* Opening Br. at 9 n.5. Concluding otherwise would amount to a finding of general jurisdiction over a foreign entity merely because it directed funds towards the United States. This is not an "exceptional case in which a corporation is 'essentially at home' in a foreign forum such that the Court may exercise general jurisdiction over it. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018).

Monaco. Further, these emails confirm that—to the extent EFG Monaco directed funds towards

Sentry—it occurred through *Citco Global Custody NV*. Dkt. No. 109-18 at 7. Even if EFG Monaco

communicated with representatives of Sentry in the United States, those communications

concerned an offshore investment in a British Virgin Islands fund for which the Trustee has failed

to adequately plead an underlying connection to the United States. *See* Opening Br. at 19; *see also*

*Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("'New York courts have consistently

refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication

from another locale with a party in New York.'" (quoting *Beacon Enters., Inc. v. Menzies*, 715

F.2d 757, 766 (2d Cir. 1983))); *Metals Alliance Corp. v. Beshay*, No. 97-CV-3401 (SHS), 1998

WL 811788, at *2 (S.D.N.Y. Nov. 19, 1998) ("Only in cases where the telephone call or

communication clearly shows that the defendant intends to project itself into ongoing New York

commerce, such as where a defendant directly conducts market activity or securities transactions

in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls

or facsimile transmissions alone.").

Finally, the Trustee argues that EFG Capital's contacts can be imputed to EFG Monaco

through agency principals because "Defendants . . . maintained significant and continuous

operations as to their Fairfield Fund investments in New York through non-party EFG Capital"

and "Defendants' relationships with FGG were managed by EFG Capital." Opp'n at 34. However,

the Trustee points to no allegations in the Amended Complaint or in the exhibits attached to his

Opposition demonstrating that EFG Capital acted on behalf of EFG Monaco. In fact, the

documents submitted by the Trustee show the opposite—that EFG Monaco acted separately and

independently from other EFG entities and that EFG Capital had no involvement in its dealings

with the Fairfield Funds. Indeed, there is not a single mention of EFG Capital in the numerous

6

exhibits related to EFG Monaco cited by the Trustee in his Opposition. As such, the Trustee has failed to plausibly allege that, even with his submission of additional documents, EFG Capital was an agent of EFG Monaco.

In sum, the Trustee relies exclusively on impermissible group pleading and examples of unrelated contacts to allege specific jurisdiction over EFG Monaco. These attenuated contacts with the United States fail to make a *prima facie* showing of personal jurisdiction, even at the motion to dismiss stage.

B. EFG Bahamas

The Trustee attempts to recover from EFG Bahamas approximately $92.1 million in alleged subsequent transfers received by Banco Atlántico, an entity that is not a party to this litigation. The only basis for exercising personal jurisdiction over EFG Bahamas with respect to those transfers is the allegation that *Banco Atlántico* had contacts with the United States and Banco Atlántico is a predecessor to EFG Bahamas.[6] That is not so. EFG Bahamas acquired Banco Atlántico's private banking business through an asset sale that did not include liabilities associated with the claims at issue in this case. *See* Opening Br. at 16–17; Kanellopoulos Decl. ¶ 16. Rather than addressing these facts, the Trustee's Opposition merely alleges that EFG Bahamas representatives communicated with representatives of the Fairfield Funds *after* the Banco Atlántico transaction.

In doing so, the Trustee admits that contacts by Banco Atlántico cannot be attributed to EFG Bahamas. *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage

---

[6] It is not clear whether the Trustee asserts that contacts by EFG Capital can be attributed to these transfers. Doing so would be illogical, as the Amended Complaint admits that Banco Atlántico was controlled by Banco Sabadell, Am. Compl. ¶ 55, and the Trustee has never alleged an affiliation between EFG Capital and Banco Atlántico.

... a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim (citation omitted)); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing claims "as a matter of law" as "effectively abandoned" where defendant had raised three arguments for dismissal and plaintiff responded to only one in his opposition papers); *Lipton v. Cty. of Orange*, N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").[7]

Because contacts after the alleged basis for liability cannot confer specific jurisdiction, *see supra* § I.A, there are no allegations or other facts demonstrating that EFG Bahamas intentionally directed the investments associated with these alleged subsequent transfers to the United States.[8] Nor could it have, as *Banco Atlántico* undertook each of those acts when EFG Bahamas was not even in existence. *See* Opening Br. at 16–17; Kanellopoulos Decl. ¶ 16. Therefore, even if the Trustee has alleged sufficient facts to make a *prima facie* case for jurisdiction over the approximately $4.2 million in alleged subsequent transfers directly received by EFG Bahamas, the Trustee has failed to make a *prima facie* case for jurisdiction over the $92.1 million in alleged subsequent transfers received by Banco Atlántico because "[e]ach transfer is a separate claim . . .

---

[7] The closest the Trustee comes to addressing these facts is an e-mail exchange in which a former Banco Atlántico employee conveys to FGG that Banco Atlántico "sold its 'book of business'" to EFG Bahamas. Dkt. No. 109-1. This exhibit corroborates that the transaction with Banco Atlántico was merely an asset sale and rebuts the Trustee's apparent invocation of predecessor liability.

[8] The EFG Defendants dispute that the correspondence between EFG Bahamas and FGG suffice to confer personal jurisdiction. *See* Dkt. Nos. 109-2, 109-3, 109-4, 109-5, 109-6, 109-7, 109-8, 109-9, 109-10, 109-11, 109-12. These documents only show receipt of information regarding fund performance and attempts to solicit investments by Fairfield, not EFG Bahamas projecting themselves into ongoing commerce. *See Maranga*, 386 F. Supp. 2d at 306; *Metals Alliance Corp*., 1998 WL 811788, at *2.

and the Trustee must establish the court's jurisdiction with respect to each claim asserted.". *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (citations omitted).[9]

C. Jurisdictional Discovery Would Be Inappropriate

The Trustee contends that if the Court finds that he has not yet made a *prima facie* showing of jurisdiction as to the EFG Defendants, he should be granted jurisdictional discovery. Opp'n at 28. Jurisdictional discovery would be inappropriate because the Trustee has failed to make "a threshold showing" that there is a basis for jurisdictional discovery, including by failing to identify how any proposed discovery would uncover facts sufficient to sustain jurisdiction. *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction."). Indeed, the Trustee had Rule 2004 subpoena power, had access to the Fairfield Funds' documents, and clearly had documents relating to the EFG Defendants, as evidenced by the exhibits submitted with the Opposition. Yet, the Trustee elected not to include more specific allegations in the Amended Complaint. He should not be given another bite at the apple.[10]

_____

[9] In a misguided attempt to distinguish *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018), the Trustee characterizes it as a case where the court did not look at each transfer individually to determine jurisdiction and instead focused on the overall contacts with the transferees in New York. Opp'n at 26 n.17. That characterization is incorrect. While the *BNP* court began by stating that "the jurisdictional analysis focuses on the Defendants' U.S. contacts related to the receipt of the fifty-nine subsequent transfers at issue," *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. at 190, it then proceeded to explain that "virtually all of the subsequent transfers that are the subject of the Trustee's claims" stemmed from a business unit of the defendants operated in New York, and that "[t]he redemption and any other payments the Defendants received as direct investors in the Tremont Funds arose from the aforementioned New York contact." *Id.* at 190, 191. In other words, unlike here, the Trustee in *BNP* adequately alleged facts establishing jurisdiction over all 59 subsequent transfers. Therefore, *BNP* provides no support for the Trustee's position here that the Court may exercise personal jurisdiction over EFG Bahamas for transfers received by another entity because jurisdiction might exist over unrelated alleged subsequent transfers.

[10] The District Court's recent ruling in *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*, No. 21-CV-10316 (LAP), 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022) does not require jurisdictional discovery here. Judge Preska found only that the Court did not abuse its discretion by permitting jurisdictional discovery, not that such discovery

## II.     The Trustee's Claim is Barred by the Section 546(e) Safe Harbor

In their motion to dismiss, the EFG Defendants demonstrated each of the elements necessary to invoke the Section 546(e) safe harbor. Opening Br. at 25–32. The Trustee does not seriously attempt to challenge that conclusion. Instead, he tries to avoid dismissal by arguing the judicially created "knowledge" exception to Section 546(e) applies—not because the EFG Defendants knew anything about Madoff's Ponzi scheme, but because the Fairfield Funds allegedly did. Opp'n at 28–29 (citing *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 1609154 at *1 (S.D.N.Y. Apr. 15, 2013)("*Cohmad II*")).

The EFG Defendants respectfully submit that the "knowledge" exception should be rejected as contrary to Section 546(e)'s plain language. The Second Circuit has instructed courts to enforce Section 546(e)'s safe harbor whenever it applies by its terms, explaining that "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 423 (2d Cir. 2014) (citation omitted) ("*Fishman*"). Under the plain meaning of the statute, the only exception to section 546(e) is a claim under section 548(a)(1)(A), and courts are not free to create additional exceptions. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."). Judge Rakoff's decision in *Cohmad II* predates the Second Circuit's opinion in *Fishman*, which rejected the Trustee's attempts to limit the applicability of Section 546(e) by adding language that Congress did not include. *See Fishman*, 773 F.3d at 419–23. Thus,

---

was required. *Id.* at *9. The EFG Defendants respectfully submit that the Court should not exercise its discretion to permit jurisdictional discovery given the particular facts of this case.

while not directly addressing the issue, the clear import of *Fishman* is that courts should not interpret Section 546(e) to create a knowledge exception that does not exist in the text.

### III. The Amended Complaint Fails to Plausibly Allege that the EFG Defendants Received BLMIS Customer Property

The Amended Complaint pleads no facts that plausibly "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). Instead, the Trustee simply lists alleged initial and subsequent transfers and makes the bare, conclusory assertion that the entries in the two lists are sufficiently connected to each. That approach falls far short of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to the EFG Defendants. Instead, he argues he need not do so. However, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Picard v. Charles Ellerin Revocable Tr.* (*In re BLMIS*), No. 08-01789 (BRL), 2012 WL 892514, at *3, cannot relieve the Trustee of his obligation to plead a plausible linkage between the initial and subsequent transfers. None of those cases uphold a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, because the Trustee has alleged that earlier Sentry distributions had exhausted all the BLMIS money at Sentry prior to the at-issue redemptions.[11]

---

[11] *See Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . implying linkage"; (emphasis added)); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC* (*In re 45 John Lofts, LLC*)*,* 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that payments totaling $29.4 million were deposited into account and $29.4 million was transferred out the same day and next business day).

The Trustee calls this a "commingling" argument, Opp'n at 34, but his pleadings establish long periods in which no commingling occurred—and the requisite linkage cannot be made—because no customer property remained at Sentry; it had already been paid out. As an example, the Trustee alleges that the EFG Defendants received approximately $56.9 million in redemptions between October 14, 2003 and March 15, 2005, even though Sentry had exhausted all possible BLMIS customer property by September 18, 2003 and did not receive any other alleged initial transfers from BLMIS until April 1, 2005. Opening Br. at 30–31.

The Trustee alleges that every redemption payment from Sentry during the relevant period was comprised entirely of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. Consequently, the allegations in the Amended Complaint are implausible based on simple arithmetic. No fact or expert discovery is necessary to subtract the number of redemptions paid out by Sentry from the amounts received from BLMIS. *Id.* at 31; *see also Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

The Trustee tries to justify this overreach because he may "pursue any and all subsequent transferees in order to achieve" a single satisfaction of the $3 billion in fraudulent transfers allegedly received by Sentry under § 550(a)(2), "even in an aggregate amount that exceeds initial transfers." Opp'n at 34. This ignores the fact that for millions of dollars of the Trustee's claims, there can be no liability because there was no BLMIS customer property at Sentry to transfer. The only subsequent transferees from whom potentially duplicate recoveries may be obtained are those "immediate or immediate" transferees "who take[] in a later transfer down the chain of title or

12

possession." *Cf. In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 722 (6th Cir. 1992) (finding

defenses available to subsequent transferees were unavailable to an initial transferee). Unlike *CNB*

*Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008), which

concerns apportionment of liability *between subsequent transferees*, the Trustee here sues to

recover various amounts from many defendants in dozens of different alleged chains of title or

possession, asserting—without alleging facts plausibly supporting the assertion—that all the funds

they received constitute subsequent transfers of customer property.[12] And he persists in doing so

even though the total he seeks exceeds by approximately $2 billion the sum of the initial transfers.

Not surprisingly, the Trustee cites no precedent for proceeding in this manner.

Finally, invoking equitable principles, the Trustee argues he should be afforded pleading

latitude due to his status as an outsider to the transaction and the need to prove tracing through the

books and records of defendants. Opp'n at 35–36. This is belied by his own pleadings detailing

thousands of alleged transfers from Sentry, Am. Compl. Ex. B; his access to numerous documents

regarding the EFG Defendants through his Rule 2004 subpoena power, as evidenced by the

exhibits submitted with the Opposition; and his contractual right to records and cooperation from

the Fairfield Liquidators, *see* Fairfield Settlement ¶ 14, who admitted in this Court that they have

most of the books and records of the Fairfield Funds. Declaration of Kenneth Krys, (*In re Fairfield*

*Sentry Ltd.*), No. 10-13164 (CGM) (Bankr. S.D.N.Y. July 16, 2010), Dkt. No. 40, ¶¶ 15, 19. Given

the enormous volume of documents and information available to him, the Trustee cannot excuse

---

[12] *Fairfield Investment Fund* is also inapposite because the defendants in that case alleged that the Trustee improperly sought double recovery by seeking a judgment for the same transfers for which he had already recovered against another entity, not that he failed to plausibly allege the receipt of customer property. *Picard v. Fairfield Inv. Fund Ltd. et al. (In re BLMIS)*, 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y 2021), at *12.

his failure to plausibly allege receipt of customer property by the EFG Defendants based on equity alone.[13]

## IV.    The Trustee's Own Allegations Establish that the EFG Defendants Are Entitled to the Application of the Good Faith Defense

The Amended Complaint should also be dismissed because it establishes the EFG Defendants' Section 550(b) affirmative defense. The Trustee responds that this defense is "inappropriate and untimely on a motion to dismiss" because "[a]ffirmative defenses are fact-driven, requiring factual analyses and a presentation of evidence." Opp'n at 36. The Trustee brushes off the EFG Defendants' position as "an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy," *id.* at 38, and claims he wishes to take discovery on facts related to the defense. *Id.* at 39.

But the Trustee's argument relies on pre-*Citibank* law concerning the transferee's knowledge or suspicions and the investigation the transferee conducted, which Citibank reversed. *SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014) (good faith is based on the transferee's subjective knowledge), *overruled by Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021). As the Second Circuit made clear, the key question is whether the defendant upon "diligent inquiry . . . would have discovered the fraudulent purpose of the transfer." *Citibank*, 12 F.4th at 192 (internal citation and quotation marks omitted). The Second Circuit set forth a purely hypothetical test—"would have discovered"—not a test based on the investigation the defendant actually did

---

[13] The cases cited by the Trustee describing the role of equitable principles in tracing analyses do not stand for the proposition that the Trustee may seek recovery of funds that are known to be from sources other than customer property. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (rejecting argument that defendant was not subsequent transferee based on timing of when check cleared because the only potential source of funds in the defendant's account were the initial transfer); *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (rejecting argument that equities weighed against using a particular method when tracing through comingled funds); *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005) (holding that a dollar for dollar tracing of the exact funds was not necessary after trustee "proved by a preponderance of evidence" that the money transferred "originated solely" from the initial transferee).

14

or supposedly failed to do.[14] Fact discovery is not relevant to this hypothetical question if the complaint itself, as here, makes clear the result of the hypothetical. The Amended Complaint alleges that even the SEC, with its awesome investigation and enforcement powers, did not discover the fraud. That is the Trustee's allegation and is indisputably true. Therefore, it is not plausible that an indirect investor such as the EFG Defendants, with no leverage over BLMIS, "would have discovered the fraudulent purpose of the transfer."[15]

Citing this Court's *Fairfield Investment Fund* decision, the Trustee similarly asserts that whether the EFG Defendants gave value "is also a fact-driven element of the affirmative defense to be addressed later in the litigation." Opp'n at 38. The facts and arguments in that case differed significantly from those here. The principal focus of the "for value" defense argued in the *Fairfield Investment Fund* motion to dismiss was whether the Fairfield insider defendants' services constituted "value" for purposes of Section 550(a) . Here, in contrast, the EFG Defendants point to value that has already been determined to exist as a matter of law. *See* Opening Br. at 32–33.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Dated: March 15, 2023
     New York, New York

/s/ *Adam M. Lavine*_____

**KOBRE & KIM LLP**
Zachary D. Rosenbaum

---

[14] For this reason, the Trustee's citation of *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) for the proposition that "the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith" misses the mark. Opp'n at 38. In *Avellino*, Judge Bernstein merely found that the defendant could subjectively possess "actual knowledge" of the fraud with respect to the Section 546(e) safe harbor even though "Madoff's Ponzi scheme went undetected for years by many, including by the SEC." *Id.* at 119–20. It has no bearing on the objective test set forth by the Second Circuit in *Citibank*.

[15] The Trustee's reliance on *Picard v. ABN AMRO Bank* (*Ireland*) *Ltd.* (*In re BLMIS*), No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) is misplaced. Rather than alleging futility, the defendant argued that the existence of red flags was insufficient to trigger inquiry notice because they lacked awareness of Madoff's fraud. In that context, the Court noted that the "*adequacy of an investigation* is 'a fact-intensive inquiry to be determined on a case-by-case basis,'" not that the entire good faith analysis is an issue of fact. *Id.* (quoting *Citibank, N.A.*, 12 F.4th at 195) (emphasis added).

Adam M. Lavine
Donna (Dong Ni) Xu
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Zachary.Rosenbaum@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com
*Attorneys for Defendants*