<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01048 (CGM) |
| v. | |
| BANCO GENERAL, S.A., and BG VALORES, S.A., f/k/a WALL STREET SECURITIES, S.A., | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

<u>A P P E A R A N C E S</u>:

*Attorneys for Plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    David J. Sheehan
       Matthew D. Feil
       Matthew B. Friedman

*Attorneys for Defendants Banco General, S.A., and BG Valores, S.A., f/k/a Wall Street Securities, S.A.*
Butzel Long, P.C.
477 Madison Avenue, Suite 1230
New York, New York 10022
By:    Joshua E. Abraham

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Banco General S.A. ("Banco General") and BG Valores, S.A. ("BG Valores"), f/k/a Wall Street Securities S.A., (collectively, the "BG Defendants" or "Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendants seek dismissal, arguing that the safe harbor provision of the Bankruptcy Code bars the Trustee's claims and that the complaint fails to allege that they received BLMIS customer property. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

<u>**Jurisdiction**</u>

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has not been contested by

the Defendants.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding[1] was filed on February 9, 2012.  (Compl., ECF No. 1).  Via

the complaint (the "Complaint"), "[t]he Trustee seeks to recover approximately $9,422,956 in

subsequent transfers of [c]ustomer [p]roperty made to the Banco General Defendants by Fairfield

Sentry Limited."  (*Id.* ¶ 2).

At the time of the alleged transfers, the BG Defendants were part of a financial group

providing private and commercial banking to Central and South American customers.  (*Id.* ¶ 3).

The BG Defendants are both organized under the laws of Panama where they maintain places of

business. (*Id.* ¶ 23–24).  Defendant Banco General is a corporation, and BG Valores, a

subsidiary of Banco General, is a broker-dealer.  (*Id.*).

The BG Defendants allegedly invested in Fairfield Sentry Limited, ("Fairfield Sentry")

which maintained over 95% of its assets in BLMIS customer accounts.  (*Id.* ¶¶ 2–3).  Fairfield

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01048-cgm.

Sentry is considered a 'feeder fund' of BLMIS because the purpose of the fund was to invest all or substantially all of its assts in BLMIS.  (*Id.* ¶¶ 2, 7).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  (*Id.* ¶ 37).  In 2011, the Trustee settled with Fairfield Sentry.  (*Id.* ¶ 42).  As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109).  Only $70 million has been paid to the BLMIS customer property estate.  (Compl. ¶ 42); (Settlement Agreement, 09-01239-cgm, ECF No. 169).  The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendants, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, the BG Defendants argue that the Safe Harbor provision under § 546(e) bars the Trustee's claims and that the Complaint fails to allege that Defendants received BLMIS customer property.  The Trustee opposes the motion to dismiss.

<u>Discussion</u>

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made by Fairfield Sentry to

Defendant BG Valores in the amount of $8,240,499 and to Defendant Banco General in the

amount of $1,182,457.  (Compl. ¶ 49, ECF No. 1).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005).

      The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.*

"However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue." *Id.*

      While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is

avoidable, he is not required to avoid the transfer received by the initial transferee before

asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin*

*Servs., Inc.),* 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *Id.*

      The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239.  (Compl. ¶ 37).  Whether the complaint filed against Fairfield

Sentry in adversary proceeding 09-1239 (the "Fairfield Complaint") properly pleads the

avoidability of the initial transfer, is governed by Rule 9(b).  Rule 9(b) states: "In alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up).  The Defendants have not objected to adoption by reference of the Fairfield

Complaint.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of the initial transfer. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[2] *Id.*

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

> *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016)

(internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)). By holding that the affirmative defense provided by § 546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do

---

[2] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

not prevent the Trustee from clawing back complicit parties' ill-gotten gains.  The district court

has already determined that "those defendants who claim the protections of Section 546(e)

through a Madoff Securities account agreement but who actually knew that Madoff Securities

was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their

motions to dismiss the Trustee's claims on this ground must be denied."  *Cohmad*, No. 12 MC

115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy

Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3,

2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud,

Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in *Picard v.

Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767

(S.D.N.Y. Nov. 3, 2022).  The Trustee has alleged that Fairfield Sentry knew the payments it

received from BLMIS were neither settlement payments nor payments in connection with a

securities contract.  "The safe harbor was intended, among other things, to promote the

reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not

actually trading securities, he had no reasonable expectation that he was signing a contract with

BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid

and recover preferences and actual and constructive fraudulent transfers to the full extent

permitted under state and federal law."  *Legacy Capital Ltd.,* 548 B.R. at 28 (internal citations

omitted), *vacated and remanded on other grounds, Citibank, N.A.*, 12 F.4th 171.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; (*see also* Fairfield Compl. ¶ 320, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286) ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 321) ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 322) ("FIFL had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 323) ("Stable Fund had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 324) ("FG Limited had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 325) ("FG Bermuda had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 326) ("FG Advisors had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 327) ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 328 ) ("FG Capital had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶

329) ("Share Management had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 9)

("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew

BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC

Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They

knew that BLMIS reported impossible, out-of-range trades, which almost always were in

Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit

BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff

refused to identify any of BLMIS's options counterparties. They knew their clients and potential

clients raised numerous due diligence questions they would not and could not satisfactorily

answer. They knew Madoff would refuse to provide them with honest answers to due diligence

questions because it would confirm the details of his fraud.  They knew Madoff lied about

whether he traded options over the counter or through the exchange. They knew they lied to

clients about BLMIS's practices in order to keep the money flowing and their fees growing. And

they knowingly misled the SEC at Madoff's direction.").

       "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Picard v. Fairfield Inv. Fund Ltd.* (*In re

BLMIS*), No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).  This

Court determined that the Fairfield Complaint is replete with allegations demonstrating that

Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *Id.* at *3–7.

Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent

transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re

BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  The

Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Defendants argue that the safe harbor is appropriate based on the initial transfers being made "by, to or for the benefit of a covered entity."  (Mem. L. 7 n. 3, ECF No. 79) (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-03496 (SMB), 2020 WL 7345988 (S.D.N.Y. April 29, 2020) ("Fairfield III").  In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders.  *Fairfield III* is inapplicable in this case for two reasons.  First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on this issue.  Second, the issue in *Fairfield III* is not comparable.  The Court found that the plaintiffs had not met their pleading burden and were not permitted to amend their complaints.  *Fairfield III* at *9 ("[T]he Citibank Complaint alleges that the [Fairfield] Funds were duped, believing that their BLMIS investments were worth what the BLMIS monthly statements showed. The Funds were the transferors and if they were duped, they could not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they believed to be accurate.") (emphasis added).  In *Fairfield III*, Fairfield Sentry was the initial transferor, not the initial transferee as it is here.  And the Court did not rule on whether the "knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent

transfer between Fairfield Sentry and Defendants on account of the securities contracts between

Fairfield Sentry and Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections). Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *BNP Paribas S.A.*, 594 B.R. at 197.

**BLMIS Customer Property**

The Trustee has pleaded that based on the Trustee's investigation to date, "approximately

$8,240499 of the money transferred from BLMIS to Fairfield Sentry was subsequently

transferred by Fairfield Sentry to Defendant BG Valores," and that "approximately $1,182,457

of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by

Fairfield Sentry to Defendant Banco General." (Compl. ¶¶ 43, 45, ECF No. 1). The Trustee has

provided Defendants, in exhibits C and D, with the exact date and amount of each transfer from

Fairfield Sentry that the Trustee is seeking to recover. (*Id.* Exs. C, D). These exhibits provide

Defendants with the "who, when, and how much" of each transfer. *BNP Paribas*, 594 B.R. at 195.

The BG Defendants argue that the allegations are "mathematically impossible" in that the Trustee seeks to recover over $5 billion in BLMIS Customer property in aggregate from all subsequent transferees of Fairfield Sentry, yet only $3 billion of customer property are alleged to have been transferred from BLMIS to Fairfield Sentry.  (Mem. L. 9, ECF No. 78).  Defendants argue that the complaint demonstrates that "Fairfield Sentry was receiving funds from several sources, including not just BLMIS, but also its own investors."  (*Id.* 10).

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation.  The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion.  *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation.  At this stage, the Trustee need only assert allegations that make it seem plausible that Defendants received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286); (*see also* Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from the BG Defendants. He is seeking $9,422,956, which easily could come from the $3 billion Fairfield Sentry received from BLMIS. If the Court were to accept Defendant's argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that the BG Defendants received customer property because the Fairfield Funds did not have other property to give. The calculation of the Fairfield Funds' customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris

_____

**Dated: March 16, 2023**
**Poughkeepsie, New York**



**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**