DAVIS+GILBERT LLP

**Hearing Date: October 18, 2023**

1675 Broadway

**Objection Date: June 16, 2023**

New York, NY 10019

**Reply Date: July 31, 2023**

T: (212) 468-4800

*Attorneys for Defendant Natixis S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-05353 (CGM) |
| v. | |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT NATIXIS S.A.'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 4

    A.    Natixis .......................................................................................... 4

    B.    Fairfield Sentry .......................................................................... 4

    C.    Natixis's Leveraged Notes ......................................................... 5

    D.    The Alpha Prime Settlement ...................................................... 6

    E.    The Amended Complaint ............................................................ 6

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ........................................................................................................... 9

I.    THE TRUSTEE RELEASED NATIXIS FROM CLAIMS RELATED TO MADOFF AND BLMIS IN THE ALPHA PRIME SETTLEMENT AGREEMENT ........................ 9

    A.    Alpha Prime Settlement Agreement Releases Natixis From the Instant Action .... 9

    B.    Additional Context Shows that Natixis Was an Intended Released Party ........... 12

        i.    The Trustee Knew That Natixis Was an Indirect Shareholder of Alpha Prime and That He Had a Pending Action Against Natixis ...................... 12

        ii.    The Release Is Intentionally Broader Than Releases in Other Agreements ......................................................... 13

    C.    The Trustee is Estopped From Asserting that the Release Does Not Apply to Natixis ............................................................................ 16

II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ......................................................... 16

    A.    The Court Lacks General Jurisdiction Over Natixis ............................. 17

    B.    The Court Lacks Specific Jurisdiction Over Natixis ............................ 17

III.    THE TRUSTEE FAILS TO ALLEGE ADEQUATELY THE AVOIDABILITY OF THE INITIAL TRANSFERS ...................................................... 24

IV.    THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE NATIXIS REDEMPTIONS WERE COMPRISED OF CUSTOMER PROPERTY ....... 25

A.     The Trustee Does Not Adequately Allege That the Funds Transferred to Natixis
       Originated with BLMIS ........................................................................................ 26

B.     The Trustee's Allegations are Mathematically Impossible .................................. 26

C.     Approximately $101 Million of the Alleged Subsequent Transfers to Natixis
       Could Not Have Been Comprised of BLMIS Funds .............................................. 28

V.     THE AMENDED COMPLAINT ESTABLISHES THAT NATIXIS IS ENTITLED TO
       THE GOOD FAITH DEFENSE ..................................................................................... 30

A.     Natixis Received the Redemptions for Value ....................................................... 30

B.     Natixis Received the Redemptions in Good Faith ................................................ 31

       i.     The facts alleged in the Amended Complaint to be available to Natixis
              were not sufficient to put Natixis on inquiry notice ................................. 32

       ii.    The Trustee pled that Natixis conducted due diligence far exceeding a
              reasonably diligent inquiry ....................................................................... 33

VI.    SECTION 546(e) SAFE HARBOR BARS THE TRUSTEE'S CLAIMS ....................... 35

A.     The Elements of Section 546(e) Are All Clearly Satisfied Here .......................... 36

B.     The Section 548(a)(1)(A) Exception to the Safe Harbor Does Not Apply........... 36

C.     Sentry's Alleged Knowledge of Madoff's Fraud Does Not Defeat Natixis's
       Ability to Invoke Section 546(e).......................................................................... 38

CONCLUSION.................................................................................................................... 39

## TABLE OF AUTHORITIES

**Cases**

*Ali v. City of N.Y.*,
No. 20-30, 2021 U.S. Dist. LEXIS 255741
(E.D.N.Y. Sep. 29, 2021) .......................................................................................... 12

*Anwar v. Fairfield Greenwich Ltd.*,
286 F.R.D. 258 (S.D.N.Y. 2012) ..................................................................... 32, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009), *cert. granted*, 132 S. Ct. 472 (2011) ............................. 8, 25

*Barshay v. Naithani*,
No. 20-8579, 2023 U.S. Dist. LEXIS 26831
(S.D.N.Y. Feb. 16, 2023) ......................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 8

*Bergerson v. New York State Office of Mental Health*,
652 F.3d 277 (2d Cir. 2011) ....................................................................................... 4

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017) .............................................................................................. 18

*Browning v. City of N.Y.*,
No. 16-7470, 2018 U.S. Dist. LEXIS 114653
(S.D.N.Y. July 9, 2018) ............................................................................................ 11

*Carbone v. Marone*,
No. 04-2001, 2007 U.S. Dist. LEXIS 92350
(S.D.N.Y. Dec. 14, 2007) ......................................................................................... 11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ....................................................................................... 18

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 F. App'x 16 (2d Cir. 2015) ................................................................................ 17

*Cohen v. Bucci*,
905 F.2d 1111 (7th Cir. 1990) .................................................................................. 13

*Cox v. Spirit Airlines, Inc.*,
    No. 17-5172, 2023 U.S. Dist. LEXIS 24904
    (E.D.N.Y. Feb. 14, 2023) ................................................................................................. 10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................................... 17

*David v. Bifani*,
    No. 07-00122, 2007 U.S. Dist. LEXIS 30080
    (D. Colo. Apr. 24, 2007) ................................................................................................... 24

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
    757 F. App'x 6 (2d Cir. 2018) .......................................................................................... 18

*Energy Marine Servs. v. DB Mobility Logistics AG*,
    No. 15-24, 2016 U.S. Dist. LEXIS 7406
    (D. Del. Jan. 22, 2016) ...................................................................................................... 10

*ExpertConnect, LLC v. Fowler*,
    No. 18-4828, 2020 U.S. Dist. LEXIS 122494
    (S.D.N.Y. July 10, 2020) ................................................................................................... 10

*Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam
    (In re Fairfield Sentry)*,
    No. 10-03496, 2018 Bankr. LEXIS 2324
    (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................................................... 19, 20

*Fairfield Sentry Ltd. v. Migani*,
    [2014] UKPC 9 ................................................................................................................... 31

*Finn v. Alliance Bank*,
    860 N.W.2d 638 (Minn. 2015) ...................................................................................... 37, 38

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*,
    No. 19-7007, 2020 U.S. Dist. LEXIS 200778
    (S.D.N.Y. Oct. 28, 2020) ................................................................................................... 27

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-3590, 2017 U.S. Dist. LEXIS 28931
    (S.D.N.Y. Mar. 1, 2017) .................................................................................................... 21

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) .............................................................................. 23

*Hotchkiss v. Nat'l City Bank of New York*,
200 F. 287 (S.D.N.Y. 1911)............................................................................. 10

*Hous. Pipeline Co. LP v. Enron Corp. (In re Enron Corp.)*,
367 B.R. 373 (Bankr. S.D.N.Y. 2007)............................................................. 16

*In re Allou Distribs., Inc.*,
379 B.R. 5 (S.D.N.Y. 2007) ............................................................................. 25

*In re B&M Linen Corp.*,
Nos. 12-11560, 12-1885, 2013 Bankr. LEXIS 2832
(Bankr. S.D.N.Y. July 12, 2013) ..................................................................... 16

*In re Bayou Group, LLC*,
439 B.R. 284 (S.D.N.Y. 2010) ........................................................................ 31

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009).............................................................. 26

*In re Chase*,
392 B.R. 72 (Bankr. S.D.N.Y. 2008)................................................................ 9

*In re CIL Ltd.*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018)................................................................ 23

*In re Dreier LLP*,
453 B.R. 499 (Bankr. S.D.N.Y. 2011).............................................................. 32

*In re Forbes*,
372 B.R. 321 (B.A.P. 6th Cir. 2007) ................................................................ 25

*In re Generation Res. Holding Co, LLC*,
964 F.3d 958 (10th Cir. 2020) ......................................................................... 25

*In re Lehman Bros. Holdings Inc.*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015).............................................................. 9

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .............................................................. 8

*In re Nine W. LBO Sec. Litig.*,
482 F. Supp. 3d 187 (S.D.N.Y. 2020) .............................................................. 36

*In re Revlon Inc.*,
Nos. 22-10760, 22-01167, 2023 Bankr. LEXIS 388
(Bankr. S.D.N.Y. Feb. 14, 2023) ........................................................ 8

*In re Unified Com. Cap., Inc.*,
260 B.R. 343 (Bankr. W.D.N.Y. 2001) ........................................ 37, 38

*In re WorldCom, Inc.*,
296 B.R. 115 (Bankr. S.D.N.Y. 2003) ............................................. 11

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012) ..................................................... 16

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ....................................................................... 19

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
575 F. Supp. 3d 445 (S.D.N.Y. 2021) ............................................ 20

*Law v. Siegel*,
571 U.S. 415 (2014) ....................................................................... 39

*Levy v. Young Adult Inst., Inc.*,
No. 13-2861, 2016 U.S. Dist. LEXIS 143860
(S.D.N.Y. Oct. 18, 2016) ............................................................... 10

*Loccenitt v. Pantea*,
No. 12-1356, 2014 U.S. Dist. LEXIS 179428
(S.D.N.Y. Dec. 29, 2014) ............................................................... 10

*McKee Elec. Co. v. Rauland-Borg Corp.*,
20 N.Y.2d 377 (1967) ..................................................................... 22

Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,
138 S. Ct. 883 (2018) ..................................................................... 39

*NCUA Bd. v. Morgan Stanley & Co.*,
No. 13 Civ. 6705, 2014 U.S. Dist. LEXIS 58751
(S.D.N.Y. Apr. 28, 2014) ............................................................... 24

*Negrete v. Citibank, N.A.*,
237 F. Supp. 3d 112 (S.D.N.Y. 2017) .............................................. 4

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
No. 08-5023, 2010 U.S. Dist. LEXIS 29267
(E.D.N.Y. Mar. 26, 2010) ............................................................................... 25

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir. 1998) ........................................................................... 12

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ............................................................................. 8

*Papasan v. Allain*,
478 U.S. 265 (1986)........................................................................................ 8

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013) ........................................................................... 26

*Picard v. ABN Amro Bank N.A. (In re Madoff)*,
No. 10-05354, 2020 Bankr. LEXIS 913
(Bankr. S.D.N.Y. Mar. 31, 2020) .................................................................... 30

*Picard v. Banque SYZ (In re Madoff)*,
No. 11-02149, 2022 Bankr. LEXIS 1678
(Bankr. S.D.N.Y. Jun. 14, 2022) ..................................................................... 31

*Picard v. BNP Paribas S.A. (In re Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................... 4, 18, 22, 33

*Picard v. Bureau of Labor Insurance (In re Madoff)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012).............................................................. 19

*Picard v. Citibank, N.A.*,
12 F.4th 171 (2d Cir. 2021) ...................................................................... passim

*Picard v. Cohen (In re Madoff)*,
No. 10-04311, 2016 Bankr. LEXIS 4686
(Bankr. S.D.N.Y. Apr. 25, 2016)..................................................................... 31

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
No. 09-01239, 2021 Bankr. LEXIS 2101
(Bankr. S.D.N.Y. Aug. 6, 2021) ................................................................ 30, 35

*Picard v. Hebrew Univ. of Jersusalem*,
    No. 21-01190, 2023 Bankr. LEXIS 770
    (Bankr. S.D.N.Y. Mar. 28, 2023) ........................................................................ 23

*Picard v. Ida Fishman Revocable Trust (In re Madoff)*,
    773 F.3d 411 (2d Cir. 2014) ......................................................................... 36, 39

*Picard v. Multi-Strategy Fund Ltd.*,
    No. 22-06502, 2022 U.S. Dist. LEXIS 200858
    (S.D.N.Y. Nov. 3, 2022) .............................................................................. 36, 39

*Picard v. Shapiro (In re Madoff)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........................................................... 25, 26

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ..................................................................... 21

*Rosenblatt v. Coutts & Co. AG*,
    No. 17-3528, 2017 U.S. Dist. LEXIS 128942
    (S.D.N.Y. Aug. 14, 2017) .................................................................................. 21

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010),
    *aff'd* 485 F. App'x 461 (2d Cir. 2012) ................................................................ 33

*Sapia v. Home Box Off., Inc.*,
    No. 18-1317, 2018 U.S. Dist. LEXIS 212991
    (S.D.N.Y. Dec. 17, 2018) .................................................................................. 26

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*,
    403 F.3d 43 (2d Cir. 2005) .......................................................................... 37, 38

*SIPC v. BLMIS (In re Madoff Secs.)*,
    No. 12-115, 2013 U.S. Dist. LEXIS 56042
    (S.D.N.Y. Apr. 15, 2013) ( .................................................................................. 35

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp.3d 521 (S.D.N.Y. 2017) .................................................................. 18

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015),
    *aff'd*, 882 F.3d 333 (2d Cir. 2018) ..................................................................... 22

*SPV OSUS, Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ........................................................................... 17, 22

*Stoebner v. Opportunity Fin., LLC*,
  909 F.3d 219 (8th Cir. 2018) ................................................................................ 38

*Visual Footcare Techs., LLC v. Cfs Allied Health Educ., LLC*,
  No. 13-4588, 2014 U.S. Dist. LEXIS 25487
  (S.D.N.Y. Feb. 20, 2014) ....................................................................................... 22

*Walden v. Fiore*,
  571 U.S. 277 (2014) ......................................................................................... 17, 19

*Wells v. Shearson Lehman/American Express, Inc.*,
  72 N.Y.2d 11 (1988) .............................................................................................. 11

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................................................... 23

*Zim Integrated Shipping Servs. v. Bellwether Design Techs. LLC*,
  No. 19-3444, 2020 U.S. Dist. LEXIS 166319
  (S.D.N.Y. Sep. 10, 2020) ....................................................................................... 22

**Statutes**

11 U.S.C. § 546(e) ......................................................................................... passim

11 U.S.C. § 548(a)(1)(A) ............................................................................... passim

11 U.S.C. § 550(a) ...................................................................... 3, 24, 25, 35

11 U.S.C. § 550(b) ....................................................................................... 3, 30

**Rules**

Fed. R. Civ. P. 10(c) ......................................................................................... 3, 24

Fed. R. Civ. P. 12(b) ................................................................................... 1, 7, 8, 9

Fed. R. Civ. P. 8(a) ........................................................................................... 3, 24

Fed. R. Civ. P. 9(b) ......................................................................................... 37, 38

**Treatises**

5 Moore's Federal Practice - Civil § 23.1.07 (2023) .................................................................... 10

5B Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 1357 (3d ed. 2004)........................................................... 8

Defendant Natixis S.A. ("Natixis"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Amended Complaint ("Amended Complaint" or "Am. Compl.," ECF No. 193,[1] attached hereto as Cioffi Ex. 1[2]) filed by Plaintiff Irving H. Picard ("Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantially consolidated estate of Bernard L. Madoff, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Natixis and its affiliates lost hundreds of millions of dollars of their own money as a result of Madoff's scheme. Yet, the Trustee is pursuing Natixis (an alleged "subsequent transferee" that never invested directly in BLMIS) for hundreds of millions of dollars to subsidize the recoveries of direct transferees that were closest to the perpetrator of the largest known Ponzi scheme.

Natixis purchased with its own funds shares of Fairfield Sentry ("Sentry") solely to hedge against its obligations (under leveraged notes) to pay its clients a multiple of Sentry's performance. It did so knowing that any upside to Sentry's performance would inure to the benefit of its clients – Natixis could receive only its fees under these transactions (essentially, the interest on the borrowed funds) – but, if Sentry lost value, then Natixis would bear the loss. It is implausible that Natixis would have put its own money at risk in Sentry had it any knowledge or suspicion of Madoff's fraud. It is implausible that Natixis would have bought and held shares in Sentry to hedge its risk of paying its clients leveraged returns on Sentry if it had any inkling of Madoff's scheme.

---

[1] Unless otherwise noted, references to "ECF No. __" refer to Adv. Pro. No. 10-05353 (CGM) (Bankr. S.D.N.Y.).

[2] Unless otherwise noted, references to "Cioffi Ex. __" refer to the exhibits annexed to Declaration of Joseph Cioffi, dated April 17, 2023 ("Cioffi Decl.").

Despite the massive amount of data made available to the Trustee from Sentry and BLMIS itself, among others, the Trustee's pleading against Natixis remains deficient in many respects, more than 12 years after the initial Complaint was filed in this case. Furthermore, as discussed below, events in other litigations filed by the Trustee have impacted claims against Natixis in ways that the Trustee has not explained to Natixis or acknowledged in the current pleading.

The Amended Complaint should be dismissed for six reasons:

*First*, the Trustee already released all claims against Natixis "arising out of or in any way related to Madoff or BLMIS." *Infra* at 9. Specifically, in the Settlement Agreement with Alpha Prime Fund Limited ("Alpha Prime"), entered into on June 20, 2022 ("Alpha Prime Settlement Agreement"), the Trustee released Alpha Prime's "current and former . . . direct or indirect shareholders . . . from . . . any and all past, present or future actions, causes of action, suits . . . known or unknown, arising out of or in any way related to Madoff or BLMIS." *Id.* Natixis was an indirect shareholder of Alpha Prime (and its subsidiary was a direct shareholder), as the Trustee alleged in the initial Complaint, and thus this release – which was heavily negotiated and differs from many others that the Trustee has entered into – applies squarely to the claims against Natixis here. The Trustee procured a significant benefit to the BLMIS estate through the Alpha Prime Settlement Agreement, which required this release, and Natixis is entitled to rely on it.

*Second*, the Court lacks personal jurisdiction over Natixis. The $179 million in alleged subsequent transfers ("Subsequent Transfers") the Trustee seeks to recover all took place outside of the United States among non-U.S. entities. The Trustee does not allege facts supporting that Natixis is subject to general jurisdiction and does not plead facts about the Subsequent Transfers that would give rise to specific jurisdiction. In fact, most of the Trustee's jurisdictional

2

allegations pertain to the formation of a collateralized fund obligation ("CFO") called Tensyr, which was separate from the Subsequent Transfers and claims against Natixis.

*Third*, the Trustee fails to state a key element of his Section 550(a) claim – namely, that the initial transfers from BLMIS to Sentry have been avoided.  Instead, the Trustee improperly purports to incorporate by reference hundreds of paragraphs of allegations from a complaint filed in a separate adversary proceeding, violating Federal Rules of Civil Procedure 8(a) and 10(c).

*Fourth*, the Amended Complaint does not sufficiently allege that the Subsequent Transfers from Sentry to Natixis were comprised of BLMIS funds.  The Trustee does not even identify – as he must – which of the initial transfers from BLMIS to Sentry he seeks to recover from Natixis.  The Trustee's claims are also mathematically impossible.  In this and other actions, the Trustee seeks to recover approximately ***$5 billion*** in alleged subsequent transfers made by Sentry, but he alleges that BLMIS made only approximately ***$3 billion*** in initial transfers to Sentry.  Here, in light of the timing of the subsequent transfers alleged in other proceedings, over $100 million dollars (well more than half of the amount of the Subsequent Transfers at issue here) could not have been comprised of BLMIS funds; thus, the Amended Complaint should be dismissed at least as to those untraceable funds.

*Fifth*, Natixis is entitled to the good faith defense under 11 U.S.C. § 550(b).  The Trustee alleges that Natixis conducted initial and ongoing due diligence on Sentry and BLMIS, but the Trustee does not allege facts supporting an inference that Natixis discovered or knew of the Ponzi scheme.  The allegations in the Amended Complaint do not support a plausible inference that Natixis was on inquiry notice of Madoff's fraud.

*Sixth*, Section 546(e) bars the Trustee from recovering any Subsequent Transfers from

Natixis, principally because the Trustee improperly relies on the so-called "Ponzi scheme

presumption" to state his Section 548(a)(1)(A) claim.

## BACKGROUND

### A. Natixis

Natixis is a corporate and investment bank organized under the laws of France as a

*société anonyme à conseil d'administration* and was created in 2006 as the result of various

mergers and acquisitions between various French banking groups.  *See* Am. Compl. ¶¶ 14–18.[3]

### B. Fairfield Sentry

Sentry was the largest of all BLMIS "feeder funds" – single-purpose investment vehicles

that pooled investors' assets to invest with BLMIS's investment advisory business.  Am.

Compl. ¶¶ 2, 4.  In 2009, the Trustee filed a complaint against Sentry and other defendants in

*Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (CGM), "seeking to avoid and recover

initial transfers of customer property from BLMIS to Fairfield Sentry in the approximate amount

of $3,000,000,000."  Am. Compl. ¶ 115.

In 2011, the Trustee settled with, among others, Sentry, Fairfield Sigma Limited

("Sigma"), and Fairfield Lambda Limited ("Lambda," together with Sentry and Sigma, the

"Funds").  *See id.* ¶ 116; Cioffi Ex. 2, Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*,

Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 ("Fairfield Settlement

---

[3] The facts set forth below are drawn from the allegations contained in the Amended Complaint and Initial
Complaint (as defined below) and the materials the Trustee referenced or relied on in framing those pleadings.  *See
Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 129 (S.D.N.Y. 2017) ("A party [] cannot advance one version of the
facts in its pleadings, conclude that its interests would be better served by a different version, and amend its
pleadings to incorporate that version . . ." (quoting *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)); *see
also Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) ("[A]ll litigants are bound by
the concessions of freely retained counsel."); *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 195 (Bankr.
S.D.N.Y. 2018) (Bernstein, J.) ("*BNP*") (court may consider prior pleadings with statements "inconsistent with the
latest version").  Natixis does not admit or concede the Trustee's allegations.

Agreement"). The Fairfield Settlement Agreement provided for cooperation and information sharing between the Trustee and Sentry's liquidators concerning, among other things, claims against parties that redeemed shares from Sentry. *See* Cioffi Ex. 2, Fairfield Settlement Agreement ¶ 14. Thus, for more than a decade since that settlement, the Trustee has had access to Sentry's books and records.

## C. Natixis's Leveraged Notes

Between 2006 and 2008, Natixis issued a number of structured notes linked to Sentry's returns (the "Structured Notes"). *See* Am. Compl. ¶ 97. The Amended Complaint sets forth a general explanation of structured notes:

> A structured note is a debt security generally issued by a financial institution. Its return is based on a reference fund, index, or security. The purchaser of a structured note typically pays fees to the financial institution, e.g., for administering the note program and providing any leverage. In return, the financial institution agrees to pay the purchaser an amount linked to a multiple of the reference asset's performance at the note's future maturity date. The performance may be limited to upside only. In order to hedge its promise to pay the leveraged cumulative positive return at the note's future maturity date, the financial institution typically purchases shares of the reference fund, index, or security.

Am. Compl. ¶ 96. For Natixis's clients, the return on the Structured Notes was the performance of the referenced Sentry shares, multiplied by an agreed multiplier, less financing costs. *See id.* ¶¶ 109, 112. Natixis provided "leverage" financing to its clients at 100 basis points over the respective applicable LIBOR rate (*i.e.*, 1.0% over LIBOR, the benchmark interest rate for which global banks engaged in interbank lending for short-term loans). *See id.* ¶ 110. The Trustee further alleges that Natixis earned other fees from the notes, including a set or structuring fee, a selling fee, and early redemption penalties. *See id.*

The Trustee acknowledges that Natixis purchased and redeemed Sentry shares for itself in order to "hedge[] its exposure" to investors in the Structured Notes. Am. Compl. ¶¶ 96, 113;

Cioffi Ex. 3, Compl. ¶ 16 (Dec. 8, 2010), ECF No. 1-1 ("Initial Complaint") ("Even though they

were not required to do so, to hedge its promise to pay the leveraged cumulative positive return

at the note's future maturity date, a financial institution usually purchases shares of the reference

fund(s).").

### D.  The Alpha Prime Settlement

On June 20, 2022, the Trustee and Alpha Prime entered into the Alpha Prime Settlement

Agreement in *Picard v. HSBC Bank PLC*, Adv. Pro. No. 09-01364 (CGM) (Bankr. S.D.N.Y.)

("*Alpha Prime* Action").  *See* Cioffi Ex. 4, Alpha Prime Settlement Agreement; Cioffi Ex. 5,

Order, *Alpha Prime* Action (July 20, 2022), ECF No. 715 (order approving Alpha Prime

Settlement Agreement) ("Alpha Prime Rule 9019 Order").  As further discussed herein, the

Alpha Prime Settlement Agreement contains a broad release provision releasing all claims

against Natixis in this adversary proceeding.  *See* Cioffi Ex. 4, Alpha Prime Settlement

Agreement ¶ 7.  Significantly, Alpha Prime agreed to share with the Trustee fifty percent of the

proceeds from Alpha Prime's lawsuits against various HSBC entities in Bermuda and

Luxembourg, providing considerable additional value to the BLMIS estate at the expense of

Alpha Prime's shareholders.  *See id.* ¶ 4.[4]

### E.  The Amended Complaint

The Trustee filed the Initial Complaint against Natixis over a decade ago, on December 8,

2010.  On January 31, 2023, the Trustee filed the Amended Complaint in which he asserts two

claims.  First, in Count I, the Trustee seeks to recover $179,009,456 that Natixis allegedly

received as "redemption[s] of equity interests by Natixis S.A. as a shareholder in Fairfield

---

[4] To the extent that Alpha Prime makes payments to the Trustee in accordance with paragraph 4 of the Alpha Prime
Settlement Agreement, the amount of Alpha Prime's Section 502(h) claim increases, on a limited basis, as provided
in the provision.  *See id.*

Sentry." *Id.* ¶¶ 8, 122, 125, 131–34, Ex. C.  Second, in Count II, the Trustee seeks to recover

$35,190,115 that co-defendant Tensyr allegedly received from Sentry.  *See id.* ¶¶ 7, 126, 135–38,

Ex. D.

      Despite more than a decade of access to Sentry's books and records, the Trustee still does

not identify which of the initial transfers from BLMIS to Sentry were allegedly later transferred

in whole or in part to Natixis as redemption payments.  Rather, the Trustee attaches an exhibit

listing thousands of transactions between BLMIS and Sentry.  *See id.*, Ex. B.  The exhibit shows

that payments came from Citco bank accounts designated for the benefit of Sentry, referred to as

"Citco Global Custody N V FBO Fairfield Sentry Ltd" (Account Nos. IFN012 and IFN045).  *Id.*

The Trustee then alleges in conclusory fashion that "Fairfield Sentry subsequently transferred a

portion of the Sentry Initial Transfers, directly or indirectly, to Natixis S.A."  *Id.* ¶ 122.

Although the Amended Complaint also includes schedules of Subsequent Transfers from Sentry

to Natixis, *see id*., Ex. C, the Amended Complaint offers no details whatsoever regarding the

source of the funds that comprised these alleged transfers, nor does it make any effort to tie those

transfers to the initial transfers from BLMIS.

      The Amended Complaint also purports to "incorporate[] by reference" hundreds of

allegations from the Trustee's pleading against Sentry.  *See id.* ¶ 119.  Importantly, it omits that

Natixis had exposure to Sentry of approximately $310 million – thus, Natixis ***lost over $130***

***million in Sentry*** (and it further omits that Natixis and its affiliates' total exposure to BLMIS

approached $800 million or more).  *Cf.* Cioffi Ex. 3, Initial Compl. ¶¶ 18, 21.

## LEGAL STANDARD

      The Court must dismiss a claim under Rule 12(b)(6) "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 558 (2007).  A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *cert. granted*, 132 S. Ct. 472 (2011) (quoting *Twombly*, 550 U.S. at 570).  A plausible claim pleads facts "that allow[] . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

Defenses that appear on the face of the complaint are properly before the Court on a motion to dismiss.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) (explaining that complaint may be dismissed if plaintiff alleges facts that, taken as true, establish affirmative defense).

When deciding a motion to dismiss, in addition to the allegations in the relevant pleading, the Court "may also look to public records" including documents filed in other cases.  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see In re Revlon Inc.*, Nos. 22-10760, 22-01167, 2023 Bankr. LEXIS 388, at *2 n.4 (Bankr. S.D.N.Y. Feb. 24, 2023) ("In the context of bankruptcy litigation . . . the court may take

judicial notice [of] documents filed in a related bankruptcy proceeding, an adversary proceeding and the underlying bankruptcy case." (quotation marks and citation omitted)); *In re Chase*, 392 B.R. 72, 87 (Bankr. S.D.N.Y. 2008) (considering on motion to dismiss "entire record of the underlying bankruptcy case and related adversary proceedings").

To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, "the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

## ARGUMENT

## I.     THE TRUSTEE RELEASED NATIXIS FROM CLAIMS RELATED TO MADOFF AND BLMIS IN THE ALPHA PRIME SETTLEMENT AGREEMENT

### A.   Alpha Prime Settlement Agreement Releases Natixis From the Instant Action

The Alpha Prime Settlement Agreement provides, in relevant part:

> *[T]he Trustee*, on behalf of himself and BLMIS, and its consolidated estates, *hereby releases*, acquits and forever discharges Alpha Prime and Alpha Prime Asset Management LTD and its respective *current and former* directors . . . officers, employees, *direct or indirect shareholders*, limited partners, principals, members, successors, assigns, accountants, attorneys, *from any and all* past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and *claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS*.  For the avoidance of doubt, Alpha Prime is not released from the Six-Year Transfer Recovery Claim until either (i) Alpha Prime has paid to the Trustee the Six-Year Transfers or (ii) the Six-Year Transfers are deemed unrecoverable from Alpha Prime as set forth in paragraphs 5 above and 10 below.

Cioffi Ex. 4, Alpha Prime Settlement Agreement ¶ 7 ("Release") (emphases added).

The Trustee's claims against Natixis are indisputably "related to Madoff or BLMIS."
And the Trustee has long known that Natixis, as the corporate parent of Natixis Financial
Products LLC ("Natixis FP") and Bloom Asset Holdings Fund ("Bloom"), *see* Cioffi Ex. 3,

Initial Compl. ¶ 78, was an indirect shareholder[5] of Alpha Prime.[6]  Thus, this Release squarely

releases the Trustee's claims asserted in this adversary proceeding against Natixis "as indicated

by the language [it] employed."[7]  *Loccenitt v. Pantea*, No. 12-1356, 2014 U.S. Dist. LEXIS

179428, at *5 (S.D.N.Y. Dec. 29, 2014) ("[W]here the language of the release is clear, effect

must be given to the intent of the parties ***as indicated by the language employed***." (emphasis

added) (quotation marks and citation omitted)); *Cox v. Spirit Airlines, Inc.*, No. 17-5172, 2023

U.S. Dist. LEXIS 24904, at *7 n.6 (E.D.N.Y. Feb. 14, 2023) ("A contract has, strictly speaking,

nothing to do with the personal, or individual, intent of the parties.  A contract is an obligation

attached by the mere force of law to certain acts of the parties, usually words, which ordinarily

accompany and represent a known intent.") (quoting *Hotchkiss v. Nat'l City Bank of N.Y.*, 200 F.

287, 293 (S.D.N.Y. 1911) (Learned Hand, J.)).  "'[I]t is appropriate to grant a motion to dismiss

on the basis of a binding release agreement where . . . the terms of the agreement are clear and

unambiguous.'"  *Barshay v. Naithani*, No. 20-8579, 2023 U.S. Dist. LEXIS 26831, at *24

(S.D.N.Y. Feb. 16, 2023) (citation omitted).

---

[5] The term "indirect shareholders" encompasses ultimate parent companies of direct shareholders.  *See Energy Marine Servs. v. DB Mobility Logistics AG*, No. 15-24, 2016 U.S. Dist. LEXIS 7406, at *2 (D. Del. Jan. 22, 2016) (explaining that "DBMLAG was an indirect shareholder . . . in co-defendant Schenker Libya" where it owned shares in Schenker AG, which "in turn own[ed] a complete interest in the French subsidiary, Schenker SA," which "owned a complete interest in Medtrans International SAS," which "owned a 65% interest in Schenker Libya"); *see also* 5 Moore's Federal Practice - Civil § 23.1.07 (2023) (explaining that, in "Indirect Shareholder Suits," plaintiffs may bring suit based on indirect ownership interest in injured corporation, as in case of "double derivative" suit where parent or holding company's shareholder brings suit for "alleged wrong to a subsidiary").

[6] The Trustee pled that Natixis FP and/or Bloom purchased shares of Alpha Prime.  *See* Cioffi Ex. 3, Initial Compl. ¶¶ 111, 120; *see also* Cioffi Ex. 6, Proposed Am. Compl. ¶ 75, ECF No. 170-1 (Dec. 28, 2018) ("[Natixis FP] invested in . . . Alpha Prime Fund Ltd ('Alpha Prime').").

[7] Natixis has standing to enforce the Alpha Prime Settlement Agreement as a third-party beneficiary.  *See* Cioffi Ex. 4, Alpha Prime Settlement Agreement ¶¶ 7, 21; *Levy v. Young Adult Inst., Inc.*, No. 13-2861, 2016 U.S. Dist. LEXIS 143860, at *66 (S.D.N.Y. Oct. 18, 2016) ("To the extent that [defendant] is a 'Released Party,' he therefore has standing to enforce the contract in order to give effect to the release clause.");.*ExpertConnect, LLC v. Fowler*, No. 18-4828, 2020 U.S. Dist. LEXIS 122494, at *16 (S.D.N.Y. July 10, 2020) (under New York law, "[a] third party may enforce a contract when . . . it is [] clear from the language of the contract that there was an intent to permit enforcement by the third party'" (citation omitted)).

As Natixis falls within a category of persons clearly covered by the Release (former

indirect shareholder), it is of no moment that the Release does not specifically identify Natixis.

*See, e.g.*, *Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 22–23 (1988)

(plaintiff "had to have known, from the face of this release, that she was discharging first, the

named defendants; second, an identified group of persons related to them" including "officers,

directors, agents, attorneys, representatives, affiliates and general and limited partners");

*Carbone v. Marone*, No. 04-2001, 2007 U.S. Dist. LEXIS 92350, at *16-17 (S.D.N.Y. Dec. 14,

2007) (express reference in release to certain descriptive categories of persons "entirely

discharge[d]" liability of persons falling within such categories "for any disputes within the

scope of the release").

Moreover, the Release evidences the parties' intent to sweep in even uncontemplated

claims, as it applies to "any and all past, present or future actions, causes of action, suits . . .

***known or unknown***."  Cioffi Ex. 4, Alpha Prime Settlement Agreement ¶ 7 (emphasis added);

*see In re WorldCom, Inc.*, 296 B.R. 115, 123 (Bankr. S.D.N.Y. 2003) (where a release provision

"specifically refers to 'all actions . . . ***whether known or unknown***,' [it] reflect[s] the clear and

unambiguous intent of the [parties] to ***bar all uncontemplated transactions***." (emphases

added)).[8]

The unambiguous Release requires dismissal of this case against Natixis.  *See Loccenitt*,

2014 U.S. Dist. LEXIS 179428, at *5 ("[A] release that is clear and unambiguous on its face and

---

[8] That the Trustee incurred costs since the Release in continuing to litigate claims against Natixis is no reason to disregard the Release as to Natixis.  *See Browning v. City of N.Y.*, No. 16-7470, 2018 U.S. Dist. LEXIS 114653, at *5 (S.D.N.Y. July 9, 2018) (rejecting plaintiff's equitable arguments against enforcing release based on incurring litigation costs over 18 months "while under the impression that he had not waived his right to assert his claims"). To do so would cut against federal courts' "strong policy in favor of enforcing settlement agreements and releases." *Barshay*, 2023 U.S. Dist. LEXIS 26831, at *24–25 (quotation marks and citation omitted).

which is knowingly and voluntarily entered into will be enforced." (quoting *Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459, 463 (2d Cir. 1998)).

### B.  Additional Context Shows that Natixis Was an Intended Released Party

Although the Court need look no further than the four corners of this Release to understand its unambiguous meaning, additional context supports the conclusion that, at the time the Release was executed, the Trustee knew that Natixis had been an indirect shareholder of Alpha Prime, and the scope of the Release intentionally included entities like Natixis.  As confirmed below, the Trustee knew how to draft a release that would not include his claims against Natixis, but did not.

### i.  The Trustee Knew That Natixis Was an Indirect Shareholder of Alpha Prime and That He Had a Pending Action Against Natixis

As the Trustee was aware of his own suit against Natixis when he agreed to the Release, there is "no doubt that [this action] falls within [the Releases's] scope, *even if [the Trustee] were to subjectively believe that it does not*."  *Barshay*, 2023 U.S. Dist. LEXIS 26831, at *34 (emphasis added) (where releaser was aware of claim at the time he agreed to the release, any concern "that a given claim is not within the scope of a general release [ ] is not implicated");[9] *see Ali v. City of N.Y.*, No. 20-30, 2021 U.S. Dist. LEXIS 255741, at *16–17, *19 (E.D.N.Y. Sep. 29, 2021) (finding that releasees do not carry burden of establishing their claims were intended to be included in release, and that "counsel's mistake and [signatory]'s unilateral failure to appreciate the reach and effect of the release does not provide an adequate basis" to rescind it).

---

[9] Although *Barshay* noted that courts applying New York law have "more carefully scrutinized the context and language used in [general] releases to ascertain . . . a given release's scope," "[b]ased on a realistic recognition that [such] releases contain standardized, even ritualistic[ ] language," the carefully curated and extensively negotiated language at issue in the Release here is anything but "standardized" or "ritualistic."  *Barshay*, 2023 U.S. Dist. LEXIS 26831, at *25–26 (dismissing plaintiff's claim at pleading stage based on "plain, unambiguous language" of release).

The Trustee filed the Initial Complaint against Natixis long prior to the execution of the

Alpha Prime Settlement Agreement on June 20, 2022, *see* Cioffi Ex. 3, Initial Compl., and he

filed a proposed amended pleading in late 2018.  *See* Cioffi Ex. 6, Proposed Am. Compl., ECF

No. 170-1 (Dec. 28, 2018).  His case against Natixis was still pending when the Alpha Prime

Settlement Agreement was executed and approved.  The same sophisticated counsel, Baker &

Hostetler LLP, represents the Trustee in both the proceedings against Alpha Prime and Natixis.

*See* Cioffi Ex. 7, Motion at 11, *Alpha Prime* Action (June 23, 2022), ECF No. 710 (the Trustee's

motion for an order approving Alpha Prime Settlement Agreement) ("Alpha Prime Rule 9019

Motion"); Cioffi Ex. 4, Alpha Prime Settlement Agreement at 15; Cioffi Ex. 3, Initial Compliant

at 82.  In addition, the actions against Alpha Prime and Natixis are part of the same bankruptcy

case.  *Cf. Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990) (explaining that "adversary

proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single

bankruptcy case" for purposes of law of the case).

### ii.  The Release Is Intentionally Broader Than Releases in Other Agreements

The Release is significantly broader than release provisions the Trustee has agreed to in

multiple comparable settlements (all while being represented by the same attorneys).

The release in the Trustee's Partial Settlement Agreement with Alpha Prime, ECF No.

491-1 (Feb. 12, 2018) ("Alpha Prime Partial Settlement Agreement") – an earlier agreement

between the Trustee and Alpha Prime resolving different issues in the *Alpha Prime* Action – also

applies to "direct or indirect shareholders," but there, notably, the parties agreed that the release

"only concern[ed] direct or indirect ***transfers of money from Alpha Prime***."  Cioffi Ex. 8, Alpha

Prime Partial Settlement Agreement ¶ 2(a) (emphasis added).[10]  Conversely, the parties in the

---

[10] Cioffi Ex. 8, Alpha Prime Partial Settlement Agreement ¶ 2(a) ("[U]pon Closing . . . the Trustee on behalf of
himself, BLMIS, and its consolidated estates, shall provide a release discharging Alpha Prime's and APAM's

*Alpha Prime* Action agreed in the Release (and the Court so ordered) that instead of releasing claims relating merely to certain transfers, the Trustee was now releasing "***any and all . . . claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS***." Ex. 4, Alpha Prime Settlement Agreement ¶ 7 (emphasis added).[11]

The release in the Trustee's Agreement with Primeo Fund and Herald Fund SPC, each by their liquidators, ECF No. 338-2 (Nov. 17, 2014) ("Primeo Settlement Agreement"), which also pertains to the *Alpha Prime* Action, applies to shareholders, but – unlike in the Release – the parties specifically agreed not to release "claims . . . that are unrelated to the Funds' investments in or withdrawals from BLMIS."  Cioffi Ex. 9, Primeo Settlement Agreement ¶ 4.[12]  And, the release in the Trustee's Settlement Agreement with Herald (Lux) SICAV, by its liquidators, ECF No. 352-1 (Dec. 23, 2014) ("Herald (Lux) Settlement Agreement"), which yet again pertains to the same *Alpha Prime* Action, contained a release provision that did not release shareholders at all.  *See* Cioffi Ex. 10, Herald (Lux) Settlement Agreement ¶ 5.[13]

---

current and former directors . . . officers, employees, ***direct or indirect shareholders***, limited partners, principals, members, successors, assigns, accountants, attorneys, agents, representatives, and vendors (the 'Additional Releasees'), ***only concerning direct or indirect transfers of money from Alpha Prime to the Additional Releasees but not for any claims that the Trustee may otherwise have***." (emphases added)).

[11] Prior to the filing of this motion, counsel for Natixis reached out to counsel for the Trustee to discuss the Alpha Prime Settlement Agreement and the effect of the Release.  Counsel for the Trustee insisted that the Release was intended to "discharge[] certain entities from claims only concerning direct or indirect transfers from Alpha Prime and not for any claims that the Trustee otherwise has or may have," and that "the Trustee and Alpha Prime are prepared to modify the agreement to clarify the original meaning of their agreement."  Cioffi Ex. 21, Trustee Email at 1 (Apr. 7, 2023).  As discussed above, that may have been the intent of the release in the earlier Alpha Prime Partial Settlement Agreement, but that is ***not*** what the parties agreed to in the Release that is included in the final Alpha Prime Settlement Agreement.  Thus, any future possible attempt by the Trustee to rewrite the Release and avoid the impact of its clear and unambiguous language must be rejected.

[12] Cioffi Ex. 9, Primeo Settlement Agreement ¶ 4 ("[T]he Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge the Funds and the Liquidators, including their successors and/or assigns, from any and all past, present, or future claims or causes of action . . . based on, arising out of, or in any way related to the Funds' respective direct or indirect relationship with BLMIS . . . . The release granted by the Trustee hereunder ***shall extend to the Funds' shareholders*** to the extent that any such shareholders received transfers of money from Herald and/or Primeo ***but shall not include a release of claims that the Trustee may bring that are unrelated to the Funds' investments in or withdrawals from BLMIS***." (emphases added)).

[13] Cioffi Ex. 10, Herald (Lux) Settlement Agreement ¶ 5 ("[T]he Trustee, on behalf of himself, BLMIS, and its consolidated estate releases, acquits, and forever discharges the Liquidators and their professionals and agents, and

Other[14] release provisions in initial transfer settlements demonstrate that the Trustee and Alpha Prime could have bartered to limit the effect of the Release on shareholders, but struck a different deal, following "lengthy negotiations."  Cioffi Ex. 13, Declaration of Irving H. Picard ¶ 7, *Alpha Prime* Action, ECF No. 710-4 (June 23, 2022).[15]  By way of example, the release in the Trustee's Agreement with Mount Capital Fund, Ltd. and Mount Capital Asset Subsidiary Limited, by their liquidators, Adv. Pro. No. 10-05123, ECF No. 14-2 (Aug. 31, 2011) ("Mount Capital Settlement Agreement") extended to "indirect or direct shareholders . . . of the Mount Capital Funds" and applied to "unknown" claims, but the parties also tailored this release to those claims that were "based on, arise out of, or are related to the Mount Capital Withdrawals and the Mount Capital Funds' Accounts."  Cioffi Ex. 14, Mount Capital Settlement Agreement ¶ 3.[16]  In contrast, the Release here contains no such limitation.

---

Herald (Lux), from any past, present or future actions . . . asserted by the Trustee, based on, arising out of or in any way related to Madoff, BLMIS, or the Account, including, without limitation, any causes of action asserted in the Amended Complaint.").

[14] Other release provisions the Trustee entered into also demonstrate the broad reach of the Release at issue here. For example, in his Settlement Agreement with Magnify, Inc. and certain other parties, the Trustee carved out from the release liability for transfers "received in connection with any account not specified herein . . . which constitute subsequent transfers of transfers made by BLMIS which are avoidable and recoverable under SIPA."  Cioffi Ex. 11, Settlement Agreement ¶ 11(f), Adv. Pro. No. 10-05279, ECF No. 193-2 (Sept. 4, 2020).  Similarly, in the Trustee's Settlement Agreement with Kingate Euro Fund, Ltd. and Kingate Global Fund, Ltd., by their liquidators, the extension of the release to shareholders expressly did "not include a release of claims that the Trustee may bring that are unrelated to the Kingate Funds' investments in or withdrawals from BLMIS."  Cioffi Ex. 12, Settlement Agreement ¶ 13, Adv. Pro. No. 09-01161, ECF No. 413-2 (July 17, 2019).

[15] Other than this case (and the case against Natixis's affiliates in Adv. Pro. No. 23-01017), we are not aware of any other subsequent transferee cases in which the Trustee has pled that a defendant is a current or former direct or indirect shareholder of Alpha Prime.

[16] Cioffi Ex. 14, Mount Capital Settlement Agreement ¶ 3 ("[T]he Trustee, on behalf of himself; BLMIS and its consolidated estate shall release, acquit and forever discharge: . . . all past or present directors, officers, employees, *indirect or direct shareholders*, limited partners, principals, successors, assigns, agents, representatives, accountants, administrators, and attorneys of the Mount Capital Funds (collectively with the Mount Capital Funds, the 'Mount Capital Releasees') from all actions, causes of action . . . and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing that are, have been, could have been or might in the future be asserted by the Trustee *and that are based on, arise out of, or are related to the Mount Capital Withdrawals and the Mount Capital Funds' Accounts*." (emphases added)).

### C. The Trustee is Estopped From Asserting that the Release Does Not Apply to Natixis

In the Trustee's motion seeking approval of the Alpha Prime Settlement Agreement, the Trustee argued that the Release is a "principal term[] and condition[]" of the settlement, Cioffi Ex. 7, Alpha Prime Rule 9019 Motion at 6–7 (summarizing that "[t]he Trustee will release, acquit, and ***absolutely discharge*** Alpha Prime and Alpha Prime Asset Management LTD and its respective current and former . . . ***direct or indirect shareholders*** . . . from any and all past, present or future actions, causes of action, suits . . . and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS" (emphases added)), and he received a favorable Court ruling.  *See* Cioffi Ex. 5, Alpha Prime Rule 9019 Order.  The Trustee thus is judicially and contractually estopped from taking the "clearly inconsistent" position that Natixis is not absolutely discharged from any and all claims related to Madoff or BLMIS as an indirect shareholder.  *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 620 (2d Cir. 2012) (noting that the doctrine of judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'" (citation omitted)); *In re B&M Linen Corp.*, Nos. 12-11560, 12-1885, 2013 Bankr. LEXIS 2832, at *24–26 (Bankr. S.D.N.Y. July 12, 2013) (finding debtor estopped from taking position contrary to court-approved settlement); *In re Enron Corp.*, 367 B.R. 373, 383 (Bankr. S.D.N.Y. 2007) (finding party contractually estopped from amending complaint to add factual allegations relating to an agreement, where claims regarding that agreement had been released).

## II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The Trustee has the pleading burden to "make a prima facie showing that jurisdiction exists" over Natixis, consistent with due process.  *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333,

342 (2d Cir. 2018).  A *prima facie* showing "requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015).  Personal jurisdiction may be asserted in one of two ways: general jurisdiction, which is based on defendant's "general business contacts" with the forum, *SPV OSUS, Ltd.*, 882 F.3d at 343, or specific jurisdiction, which "depends on 'an affiliatio[n] between the forum and the underlying controversy.'" *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (citation omitted).

### A.  The Court Lacks General Jurisdiction Over Natixis

To establish general jurisdiction over Natixis, the Trustee must show that Natixis is "at home" in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  Generally, this requires that the defendant be incorporated or have its principal place of business in the forum state.  *See id.*  Here, the Trustee does not allege facts that support exercising general jurisdiction over Natixis.  *See generally* Am. Compl.  Nor could he.  Natixis is organized in France, *see* Am. Compl. ¶ 14, where it has its principal place of business.[17]

### B.  The Court Lacks Specific Jurisdiction Over Natixis

To establish specific jurisdiction over Natixis, the Trustee must assert: (i) the claim against Natixis arises out of or relates to Natixis's "minimum contacts" with the forum, and (ii) the "exercise of jurisdiction is reasonable in the circumstances."  *SPV OSUS*, 882 F.3d at 343 (citation omitted).  Such contacts "must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  After stripping away allegations about Sentry's actions, the subscription agreements, and contacts concerning Tensyr, which as described below, cannot

---

[17] Thus, the Trustee must plead that this is an "exceptional case" where a defendant can nonetheless be found to be "at home" in the United States based on "continuous and systematic" contacts therewith.  *Daimler*, 571 U.S. at 138–39 & n.19.  The Trustee has not – and could not – plead this given that Natixis is based in France.

confer jurisdiction over Natixis, the Trustee's remaining allegations of personal jurisdiction are legally insufficient.

To survive a motion to dismiss with respect to Count I – *i.e.*, the Trustee's claim to recover certain Subsequent Transfers from Sentry to Natixis – the Trustee must allege contacts ***specific to Count I***. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 265 (2017) (finding no personal jurisdiction where "a connection between the forum and the specific claims at issue" was missing); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) ("A plaintiff 'must establish the court's jurisdiction with respect to each claim asserted.'" (citation omitted)); *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp.3d 521, 586 (S.D.N.Y. 2017) (same); *BNP*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'" (citation omitted)).  Vague and conclusory allegations cannot support the exercise of jurisdiction over Natixis.  *See DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018).

### i.  Alleged Knowledge That Sentry Would Invest in BLMIS Does Not Establish Personal Jurisdiction Over Natixis

The Trustee's vague and conclusory allegations that Natixis knew and intended that its investments "would be investments with New York-based BLMIS," Am. Compl. ¶¶ 29–30, 32, even if deemed true, are insufficient to establish personal jurisdiction over Natixis.

*First*, those allegations are not well pled and therefore should not be given any weight. The only support for these allegations in the Amended Complaint comes from the Trustee's statements that Natixis "affirmed having 'received and read'" a Sentry private placement memorandum ("PPM") in connection with purchases of shares of Sentry, and that Natixis

prepared the Tensyr rating memorandum ("Tensyr Rating Memo") that had nothing to do with Count I.  Am. Compl. ¶¶ 31, 33–36.

*Second*, the Trustee's claim to recover the Subsequent Transfers from Natixis as alleged in Count I does not arise from Natixis's purported knowledge that Sentry invested with BLMIS. This Court has already held that actions to recover redemption payments from Sentry to investors (like this action against Natixis) do not arise from subscription agreements or payments made to Sentry.  *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry)*, No. 10-03496, 2018 Bankr. LEXIS 2324, at *21, 22–33 (Bankr. S.D.N.Y. Aug. 6, 2018) (holding fraudulent transfer actions against investors in Sentry not predicated upon subscription agreements).

*Third*, the Amended Complaint conflates Sentry's actions with actions of Natixis.  For purposes of personal jurisdiction, the relevant contacts are between a defendant and the forum. *See Walden*, 571 U.S. at 284 (finding Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State").[18]  Likewise, the allegation that Natixis knew the funds it invested in Sentry would find its way to BLMIS is a variation of the "stream of commerce" theory of personal jurisdiction that has been rejected by the Supreme Court.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum.").

---

[18] *Walden* thus forecloses the theory of jurisdiction endorsed by Judge Lifland in *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501, 516–19 (Bankr. S.D.N.Y. 2012) (finding that defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.").

### ii.  The Subscription Agreements Do Not Give Rise to Personal Jurisdiction Over Natixis

The Trustee purports to ground jurisdiction on the "subscription agreements for Fairfield Sentry shares that included New York choice of law, venue, service of process, and jurisdiction provisions."  Am. Compl. ¶ 46.  This Court has categorically held, however, that the forum provisions in the subscription agreements do not apply to claims based on redemptions (*i.e.*, the claims at issue here).  *See In re Fairfield Sentry*, 2018 Bankr. LEXIS 2324, at *30–32 (finding that "the terms of the redemptions of shares [are] found in the Articles [of Association of the Funds] rather than in the Subscription Agreement," and such Articles contain no choice of forum clause).

To the extent that the Trustee is relying on the subscription agreements merely to show additional contacts between Natixis and the United States, such contacts do not suffice to subject Natixis to the jurisdiction of this Court.  Not only is the claim against Natixis outside the scope of the forum selection clause, *see Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 459–61 (S.D.N.Y. 2021) (rejecting enforcement of forum selection clause for non-party plaintiff bringing claims outside clause's scope), but here, even the Fairfield Liquidators argued that "every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States."  *Liquidators' Opening Br., Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-3911 (S.D.N.Y. July 21, 2021), ECF No. 440, at 24.  Indeed, each aspect of Natixis's conduct alleged by the Trustee with respect to the relevant redemptions was devoid of any U.S. contact – a French entity sent instructions from France to a custodian located in the Netherlands to redeem shares held in an entity located in the British Virgin Islands.  *See* Am. Compl. ¶¶ 8, 14, Exs. A, B; Cioffi Ex. 6, Proposed Am. Compl. ¶ 203.

### iii. Use of Correspondent and Subsidiary's Bank Accounts in Connection With the Subscription Payments and Redemptions at Issue is Insufficient to Establish Jurisdiction

The Trustee's allegation that Natixis delivered subscription funds to correspondent accounts in New York, Am. Compl. ¶¶ 48–49, is not sufficient to confer jurisdiction over Natixis. *See Hau Yin To v. HSBC Holdings PLC*, No. 15-3590, 2017 U.S. Dist. LEXIS 28931, at *14–15 (S.D.N.Y. Mar. 1, 2017) (finding transmittal of funds to and from BLMIS in New York "were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York"); *Rosenblatt v. Coutts & Co. AG*, No. 17-3528, 2017 U.S. Dist. LEXIS 128942, at *10–11 (S.D.N.Y. Aug. 14, 2017) (sending payment to plaintiff's New York bank account pursuant to agreement negotiated and executed outside United States did not suffice to establish jurisdiction over foreign defendant); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474–75 (S.D.N.Y. 1998) (holding that "merely sending payment to New York" under contract negotiated and executed out of state "is not sufficient to establish personal jurisdiction").[19]

### iv. Jurisdiction Is Not Established Through Creation of Tensyr and Sporadic Interactions With Third Parties

Other than the Trustee's inadequate assertions discussed above, the Trustee's remaining jurisdictional allegations seek to predicate jurisdiction over Natixis not on the contacts related to Subsequent Transfers he seeks to recover from Natixis (Count I), but almost exclusively on contacts related to Tensyr (Count II), and thus are irrelevant to establishing jurisdiction over Natixis. The alleged patchwork of communications and interactions with third parties in New York overwhelmingly concern the creation of Tensyr. *See, e.g.*, Am. Compl. ¶¶ 22, 27–28, 40,

---

[19] The Trustee's allegation that Natixis used a Deutsche Bank Trust Company Americas New York account "in the name of [an unidentified] New York-based subsidiary" to transact with Sentry, Am. Compl. ¶ 49, is also insufficient because, as the Trustee concedes, this account was in the name of an unidentified entity legally distinct from Natixis.

42–45 (pleading allegations pertaining to Tensyr transaction).  None of these contacts "[have]

anything to do with" Count I against Natixis and thus cannot support jurisdiction with respect

thereto.  *Zim Integrated Shipping Servs. v. Bellwether Design Techs. LLC*, No. 19-3444, 2020

U.S. Dist. LEXIS 166319, at *12–13 (S.D.N.Y. Sep. 10, 2020); *see BNP*, 594 B.R. at 190; *Visual*

*Footcare Techs., LLC v. Cfs Allied Health Educ., LLC*, No. 13-4588, 2014 U.S. Dist. LEXIS

25487, at *21 (S.D.N.Y. Feb. 20, 2014) (finding no personal jurisdiction despite three meetings

in forum where the discussions did not concern the "contractual relationship per se").

Even if these alleged contacts pertaining to Tensyr were jurisdictionally relevant to Count

I, which they are not, they still would be insufficient to confer jurisdiction over Natixis.  Judge

Rakoff has held that the acts of creating, promoting, and providing services to BLMIS-related

feeder funds (including serving as an administrator) were insufficient to establish personal

jurisdiction.  *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015)

(granting motion to dismiss on personal jurisdiction even though defendants allegedly

"enthusiastically helped to create, promote, and manage" BLMIS-related feeder funds), *aff'd*,

882 F.3d 333 (2d Cir. 2018).  Similarly, here, Natixis's alleged participation in creating Tensyr,

an "investment vehicle" organized in Jersey that had subscription agreements with Sentry, Am.

Compl. ¶¶ 20, 22, 24, is not a fact that can establish personal jurisdiction.  As an initial matter,

the alleged contacts with the United States pertaining to Tensyr were at best "sporadic."  *SPV*

*Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (finding "handful of communications

and transfers of funds . . . insufficient to allow the exercise of specific personal jurisdiction" over

foreign defendants); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 380, 382 (1967)

(finding fact that foreign defendant's representatives spent one day in New York conferring with

plaintiff over contract dispute did not establish jurisdiction).  In addition, the Trustee does not

provide any details whatsoever on the alleged "numerous meetings" and "extensive[]" communicat[ions]" allegedly pertaining to Tensyr, Am. Compl. ¶¶ 40, 43, such as who attended or participated and when they occurred.

The only alleged activity that conceivably could relate to Count I is the allegation that Natixis "communicated and worked with FGG [not with the transferor here, Sentry] to create and market other structured notes programs" where Sentry was the reference fund. *See* Am. Compl. ¶ 45. Yet, this allegation amounts to nothing more than a vague and poorly pled assertion that Natixis at some point communicated with a New York entity, which cannot support jurisdiction over Natixis. This is because (i) the Trustee has not alleged that such notes programs constituted New York (or U.S.) business activity (rather, he has alleged that their returns were linked to a BVI-based reference fund, Sentry, and that they were created by a French bank), *see id.*, and (ii) even if the Trustee had alleged that the marketing of the notes programs was directed at New York (or U.S.) investors (which he does not), marketing is "insufficient to establish [personal jurisdiction], unless it is supplemented by business transactions occurring in the state." *See Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016).

### C. Exercise of Personal Jurisdiction Would Not Comport With Due Process

Finally, exercising jurisdiction over Natixis would not be consistent with due process. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Here, the Trustee has alleged only "attenuated and weak contacts" between the United States and Natixis that "would demand a strong showing of reasonableness." *Picard v. Hebrew Univ. of Jerusalem*, No. 21-01190, 2023 Bankr. LEXIS 770, at *29 (Bankr. S.D.N.Y. Mar. 28, 2023) (Morris, J.); *see In re CIL Ltd.*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018). Such a showing has not been made, as "all relevant witnesses and evidence" are located in France, *see Hebrew Univ.*, 2023 Bankr. LEXIS 770, at *28, and Natixis is being asked to defend this suit thousands of miles from home.

### III.    THE TRUSTEE FAILS TO ALLEGE ADEQUATELY THE AVOIDABILITY OF THE INITIAL TRANSFERS

Section 550(a) sets out the elements the Trustee "must satisfy to recover transferred property: that the transfer was avoided, and that the defendant is an initial or subsequent transferee." *Picard v. Citibank, N.A.*, 12 F.4th 171, 197 (2d Cir. 2021). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," Fed. R. Civ. P. 10(c), the rules do not authorize the wholesale incorporation by reference of an entire pleading. *See NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705, 2014 U.S. Dist. LEXIS 58751, at *28 (S.D.N.Y. Apr. 28, 2014); *David v. Bifani*, No. 07-00122, 2007 U.S. Dist. LEXIS 30080, at *2–3 (D. Colo. Apr. 24, 2007).

Here, rather than allege facts showing that the relevant transfers were avoided, the Trustee conclusorily states that the initial transfers from BLMIS to Sentry are "avoidable," and that he commenced a separate adversary proceeding against Sentry and other defendants seeking to avoid and recover initial transfers of customer property from BLMIS in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM). Am. Compl. ¶¶ 5, 115, 120–21. The Trustee then purports to adopt by reference an entire complaint filed in that action, "including but not limited to" hundreds of allegations therein. *See id.* ¶ 119 ("The Trustee incorporates by reference the allegations contained in the Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16."); *see also* Cioffi Ex. 16, Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Fairfield Second Amended Complaint").

The Amended Complaint thus fails to allege facts supporting an essential element of the claims and makes only conclusory assertions that BLMIS made "avoidable" transfers to Sentry.

*See, e.g.*, *id.* ¶¶ 120–21.  The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If Natixis were required to respond to the Trustee's 406-paragraph Sentry pleading, it would be left responding to allegations outside its knowledge and well beyond the relevant period at issue in the Complaint.  This is precisely "the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, No. 08-5023, 2010 U.S. Dist. LEXIS 29267, at *13 (E.D.N.Y. Mar. 26, 2010) (quotation marks and citation omitted).

## IV.    THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE NATIXIS REDEMPTIONS WERE COMPRISED OF CUSTOMER PROPERTY

Under Section 550(a)(2), a trustee may recover from a subsequent transferee only the property or value of the property that was transferred in the initial transfer.  *See In re Generation Res. Holding Co, LLC*, 964 F.3d 958, 965 (10th Cir. 2020).  Thus, to state a claim under Section 550(a), "the plaintiff has the burden of tracing funds it claims to be property of the estate." *In re Allou Distribs., Inc.*, 379 B.R. 5, 30 (S.D.N.Y. 2007) (citation omitted); *see also In re Forbes*, 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) ("[I]t is generally the [t]rustee's burden to trace the funds he claims are property of the estate.").

As Judge Bernstein explained, the Trustee must allege facts that support the inference that the funds at issue originated with BLMIS and contain the "necessary vital statistics" – the "who, when, and how much" of the transfers – to establish that an entity was a subsequent transferee of the funds. *Picard v. Shapiro (In re Madoff)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Bernstein, J.) (dismissing complaint because it did not "tie any initial transfer to any subsequent transfer or [s]ubsequent [t]ransferee"); *In re Caremerica, Inc.*, 409 B.R. 737, 750–51

25

(Bankr. E.D.N.C. 2009) (dismissing preference claim because pleading's factual allegations failed to tie the transfers into and out of account to amounts received by supposed transferees).

### A. The Trustee Does Not Adequately Allege That the Funds Transferred to Natixis Originated with BLMIS

The Amended Complaint fails to make the connections required to "tie any initial transfer to any subsequent transfer or [s]ubsequent [t]ransferee." *Shapiro*, 542 B.R. at 119. Although the Amended Complaint attaches voluminous exhibits that list the purported BLMIS-to-Sentry initial transfers and the Subsequent Transfers to Natixis, it does not specify which, if any, of the initial transfers included the BLMIS funds that the Trustee alleges Sentry subsequently transferred to Natixis, let alone how those transfers are tied. *See* Am. Compl., Exs. A, B. Instead, the Trustee alleges poorly that "Fairfield Sentry subsequently transferred a portion of the Sentry Initial Transfers, directly or indirectly, to Natixis." Am. Compl. ¶ 122.

The Trustee's failure to allege precisely which Subsequent Transfers to Natixis contain customer property, and from which initial transfer(s) such transfers originate, is grounds for dismissal. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding "such imprecise pleading is particularly inappropriate . . . where the plaintiffs necessarily have access, without discovery, to . . . specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Office, Inc.*, No. 18-1317, 2018 U.S. Dist. LEXIS 212991, at *23 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

### B. The Trustee's Allegations are Mathematically Impossible

The Trustee alleges that BLMIS transferred approximately $2.9 billion to Sentry in the six years preceding the bankruptcy petition. *See* Am. Compl. ¶ 120. But the Trustee seeks to

"recover" $5.3 billion in total, comprised of: (i) an aggregate of approximately $4.3 billion of alleged subsequent transfers made to dozens of defendants, across approximately 80 separate adversary proceedings, who redeemed from Sentry, including Sentry's own feeder funds;[20] and (ii) another approximately $1 billion allegedly paid by Sentry to the defendants in the Fairfield Greenwich Group ("FGG") action.[21] In other words, the Trustee is attempting to recover $2.4 billion **_more_** in subsequent transfers than he alleges BLMIS initially transferred to Sentry. As such, the Trustee's theory that all of the redemption payments are comprised of BLMIS funds is facially implausible.

Indeed, the Trustee's own pleadings make clear why Sentry distributed far more to its investors than BLMIS transferred to Sentry. Sentry was receiving funds from several sources, including its own investors – not just from BLMIS – and sometimes used subscription payments from other investors to make redemption payments. *See* Am. Compl. ¶ 8 ("Natixis [] purchased shares in Fairfield Sentry."); Cioffi Ex. 19, First Amended Complaint ¶ 63, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) . . . utilized subscription monies of other investors on hand."). This is an "obvious alternative explanation" for the source of the redemption funds, which demonstrates the facial implausibility of the Trustee's claims. *Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*, No. 19-7007, 2020 U.S. Dist. LEXIS 200778, at *11 (S.D.N.Y. Oct. 28, 2020).

---

[20] *See* Cioffi Ex. 17, Fairfield Second Amended Complaint, Exs. 5 and 6; Cioffi Ex. 20 (collecting the Trustee's complaints and exhibits against alleged subsequent transferees); Cioffi Decl. ¶ 24 (providing total amounts claimed by Trustee in adversary proceedings against alleged subsequent transferees).

[21] *See* Cioffi Ex. 18, Fairfield Second Amended Complaint, Exs. 8, 10, 12, 13, 14 and 21; Cioffi Decl. ¶ 21 (providing chart that compiles totals allegedly paid to defendants in Fairfield Greenwich Group Action).

This pleading failure cannot be excused for lack of information or by the need for discovery. By virtue of the document-sharing provisions of the Fairfield Settlement Agreement, the Trustee had access to Sentry's books and records for over a decade before filing the Amended Complaint. *See* Cioffi Ex. 2, Fairfield Settlement Agreement ¶ 14 (providing that Trustee and Liquidators "each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims").

### C. Approximately $101 Million of the Alleged Subsequent Transfers to Natixis Could Not Have Been Comprised of BLMIS Funds

The Trustee's pleadings (including his exhibits) make clear that approximately $101 million of the $179 million in alleged Subsequent Transfers to Natixis could not have been comprised of BLMIS funds (*i.e.*, customer property), even reading the Amended Complaint in a light most favorable to the non-moving party.

*First*, the five Subsequent Transfers that Natixis allegedly received from Sentry between January 31, 2008 to March 18, 2008, totaling $47,691,295, were made when no BLMIS funds were available to plausibly comprise such transfers. *See* Am. Compl. Ex. C (first five entries). According to the Trustee's own pleadings, BLMIS transferred a total of ***$1.55 billion*** to Sentry prior to January 31, 2008 (and it did not make another transfer to Sentry until May 5, 2008), the date of the first alleged Subsequent Transfer to Natixis.[22] Yet, as of January 31, 2008, Sentry had already allegedly transferred a total of ***$2.77 billion*** to other subsequent transferees. *See* Cioffi Decl. Exs. 17, 20; ¶ 24, n.4. As such, none of the funds Natixis allegedly redeemed from Sentry via these five Subsequent Transfers (on January 31, 2008, and after) could have been derived from BLMIS funds.

---

[22] *See* Am. Compl. Ex. B ("CHECK WIRE" entries dated 5/9/2003, 7/11/2003, 7/22/2003, 4/1/2005, 7/6/2005, 9/2/2005, 10/13/2005, 11/16/2005, 12/15/2005, 1/10/2006, 3/16/2006, 3/27/2006, 4/13/2006, 9/6/2007, 10/3/2007, and 1/11/2008, totaling initial transfers of $1.545 billion).

*Second*, the Trustee alleges that Natixis received two Subsequent Transfers on May 15, 2008, totaling $54,120,854, but at best these transfers could have been only partially comprised of BLMIS funds. *See* Am. Compl. Ex. C (sixth and seventh entries). As noted, after the January 31, 2008 to March 18, 2008 period, Sentry did not receive another transfer of BLMIS funds until May 5, 2008, when the Trustee alleges that BLMIS transferred ***$80 million*** to Sentry.[23] Yet, the Trustee seeks to recover a total of ***$133 million*** in redemptions that allegedly occurred on May 15, 2008, from various subsequent transferee defendants (including the two alleged Subsequent Transfers to Natixis). *See* Cioffi Decl. Exs. 17, 20; ¶ 27. As a result, as set forth further in the Cioffi Declaration, approximately 40% (approximately $21.6 million) of the May 15, 2018 Subsequent Transfers to Natixis could not have possibly included BLMIS funds. *See* Cioffi Decl. ¶ 27.

*Last*, the alleged Subsequent Transfer to Natixis on September 16, 2008, totaling $74,503,218, also could not have been comprised entirely of BLMIS funds. *See* Am. Compl. Ex. C (eighth entry). The Trustee asserts that BLMIS transferred ***$120 million*** to Sentry on September 4, 2008.[24] But he also claims a right to recover ***$158 million*** in subsequent transfers from subsequent transfer defendants (including Natixis) that allegedly occurred on September 15–16, 2008. *See* Cioffi Decl. Exs. 17, 20; ¶¶ 28-29. As a result, as set forth further in the Cioffi Declaration, approximately 42% (approximately $31.6 million) of the September 16, 2018 Subsequent Transfer to Natixis could not possibly have included BLMIS funds. *See* Cioffi Decl. ¶ 29.

---

[23] *See* Am. Comp. Ex. B ("CHECK WIRE" entry dated 5/5/2008).

[24] *See* Am. Comp. Ex. B ("CHECK WIRE" entry dated 9/4/2008).

## V.    THE AMENDED COMPLAINT ESTABLISHES THAT NATIXIS IS ENTITLED TO THE GOOD FAITH DEFENSE

Under Section 550(b), a trustee may not recover from a subsequent transferee who took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b).  Natixis took for value, in good faith, and without knowledge of the voidability of the transfers.  In fact, the Trustee's own allegations establish that Natixis lost approximately $130 million through its Sentry investment, *see supra* at 7 (and overall Natixis and its affiliates lost hundreds of millions across all of their Madoff-related investments).  There is no plausible reason for Natixis to expose over $300 million of its own money, risking (and losing more than 40% of) that money, if it had any reason to believe that Sentry was investing in a Ponzi scheme.[25]  Natixis is thus entitled to the good faith defense with respect to all claims.

### A.  Natixis Received the Redemptions for Value

To establish "value" the Bankruptcy Code simply requires that a redemption is "sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value."  *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, No. 09-01239, 2021 Bankr. LEXIS 2101, at *23 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.) (quoting *Picard v. Legacy Capital Ltd. (In re Madoff)*, 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016)).

Here, the Amended Complaint clearly shows the redemption payments were in exchange for Natixis "[s]urrendering equity interests" which "constitutes value for purposes of section 550(b)."  *Picard v. ABN Amro Bank N.A. (In re Madoff)*, No. 10-05354, 2020 Bankr. LEXIS 913, at *25 (Bankr. S.D.N.Y. Mar. 31, 2020) (Bernstein, J.); *see also Fairfield Sentry Ltd. v.*

---

[25] In fact, Natixis, together with its affiliates had exposure to BLMIS approaching $800 million or more.  *See supra* at 7.

*Migani*, [2014] UKPC 9.  Moreover, as Natixis lost money in its dealings with Sentry, this is a

straightforward case where *all* of the redemptions received by Natixis were for value.  *See In re*

*Bayou Group, LLC*, 439 B.R. 284, 309 (S.D.N.Y. 2010) (providing that investors in Ponzi

scheme "gave value in the form of their initial investments"); *Picard v. Cohen (In re Madoff)*,

No. 10-04311, 2016 Bankr. LEXIS 4686, at *28, *39 (Bankr. S.D.N.Y. Apr. 25, 2016)

(Bernstein, J.) (providing "transferee does not give value beyond his deposits of principal," and

"[i]n all Ponzi scheme fraudulent transfer litigation, a transferee must return transfers in excess

of his principal deposits").

Further, as explained below, the Trustee's allegations support the conclusion that at the

time Natixis made the redemptions, it did not know "that the redemption prices were based on

fictitious assets."  *Picard v. Banque SYZ (In re Madoff)*, No. 11-02149, 2022 Bankr. LEXIS

1678, at * 28 (Bankr. S.D.N.Y. Jun. 14, 2022) (Morris, J.) (quotation marks and citation

omitted).  Accordingly, it is established on the face of the Amended Complaint that Natixis

received the Subsequent Transfers for value.

### B.  Natixis Received the Redemptions in Good Faith

The Second Circuit recently held that "good faith" in the context of fraudulent transfers

under the Bankruptcy Code "embraces an inquiry notice standard."  *Picard v. Citibank, N.A.*, 12

F.4th 171, 188 (2d Cir. 2021).  Whether a defendant was on inquiry notice of fraud involves a

three-step inquiry:  *First*, a court must examine what facts the defendant knew, a subjective

inquiry.  *Second*, a court must determine whether these facts put the transferee on inquiry notice

of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew

would have led a reasonable person in the transferee's position to conduct further inquiry into a

debtor-transferor's possible fraud.  *Third*, the Court must ascertain whether diligent inquiry by

the transferee would have discovered the fraudulent purpose of the transfer. *Id.* at 191–92. An objective "reasonable person" standard applies in the second and third steps. *Id.* at 192.

### i. The facts alleged in the Amended Complaint to be available to Natixis were not sufficient to put Natixis on inquiry notice

The Amended Complaint does not make a single specific allegation about Natixis's actual knowledge at the time of the Subsequent Transfers. To support a claim that a defendant was on inquiry notice, the plaintiff must allege that the defendant at least had actual knowledge of "red flags" that it translated into a suspicion of fraud. *Anwar v. Fairfield Greenwich Ltd.*, 286 F.R.D. 258, 260 (S.D.N.Y. 2012) (dismissing claims based on "red flags" where complaint failed to "allege facts plausibly suggesting that defendants were aware of these red flags, or that if they were aware, they then translated those red flags into a suspicion of fraud").

Here, the Trustee's allegations are inconsistent with the notion that Natixis reasonably suspected that BLMIS was a Ponzi scheme. By issuing the Structured Notes, Natixis set itself up to *lose* money if the reference fund *rose* and to *make* money if the reference fund *fell*. *See supra* at 5. To hedge the risk that the reference fund would rise, Natixis purchased shares of Sentry. *Id.* at 5–6. If Natixis suspected BLMIS was a Ponzi scheme, the economically rational course of action would be not to purchase shares and simply collect its profits when the shares became worthless and the value of the Sentry reference fund fell. *In re Dreier LLP*, 453 B.R. 499 (Bankr. S.D.N.Y. 2011) is instructive on this point. Applying the inquiry notice standard, the Court held that it was facially implausible that the defendant bank would have knowingly chosen to facilitate the fraudulent scheme just to earn fees, and while it may not have accurately assessed Dreier as a credit risk, this did not amount to inquiry notice such that it could not satisfy the good faith test. *See id.* at 514. As in *Dreier*, it is facially implausible that Natixis suspected

32

BLMIS was a Ponzi scheme, yet would *knowingly* choose to expose its own money to the scheme.

Although the Trustee describes several hindsight indicators suggesting that BLMIS was engaged in fraud, *see* Am. Compl. ¶¶ 83–86, 88–92, the Trustee does not suggest that Natixis was aware of any of these facts or that they support an inference that Natixis was on inquiry notice of BLMIS's fraud.  *See Anwar*, 286 F.R.D. at 260; *see also Citibank*, 12 F.4th at 191 ("[A] court must examine what facts the defendant knew; this is a subjective inquiry and not 'a theory of constructive notice.'").

Even if the Trustee did argue that Natixis was aware of those red flags, this Court has previously held that the "red flag" allegations, such as those recited in the Amended Complaint, do not support an inference that defendants believed BLMIS was not actually trading securities. *See BNP Paribas*, 594 B.R. at 199 (finding allegations that "returns of BLMIS feeder funds were too consistent," "Defendants received trade confirmations for BLMIS feeder funds with prices above the daily high or below the daily low," "BLMIS timed trades too consistently," "BLMIS option volumes were too high," and "BLMIS made trades that were inconsistent with the SSC Strategy" did not support an inference defendants believed BLMIS was not trading securities); *see also Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent."), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).

### ii.    The Trustee pled that Natixis conducted due diligence far exceeding a reasonably diligent inquiry

Even if Natixis was on notice that something was amiss at BLMIS (which it was not), the Trustee will not be able to satisfy the third element – that "diligent inquiry" by Natixis would have led Natixis to "discover[] the fraudulent purpose of the transfer[s]" – because here, as the

Trustee himself has alleged, Natixis did conduct a diligent inquiry, and it did not discover the fraud. *Citibank*, 12 F.4th at 192 (quotation marks and citation omitted).

The Trustee represented repeatedly that Natixis conducted thorough diligence, far exceeding a "reasonably diligent investigation," *id.* at 192; *see, e.g.*, Cioffi Ex. 15, Proffer ¶ 111 (alleging Natixis conducted "due diligence on Fairfield Sentry, Madoff, and BLMIS"); Trustee's Supp. Opp. on Extraterritoriality at 14, ECF No. 101 (June 27, 2015) (referring to due diligence "investigations" conducted on BLMIS as "significant business"),[26] and yet the Trustee has never alleged that Natixis uncovered the fraud.

While the Trustee should not be permitted to incorporate by reference the entire Fairfield Second Amended Complaint, *see supra* at Section III, his allegations there underscore that any further inquiry would have been futile. He alleges that BLMIS was highly secretive and that FGG partners "covered for Madoff in deliberate efforts to get investors and regulators off the scent," "needed Madoff to enrich themselves and were willing to lie to protect their relationship" and "spun information to pacify existing FGG investors and to encourage new investment." Cioffi Ex. 16, Fairfield Second Am. Compl. ¶¶ 5–6. He continues that FGG partners "protected BLMIS from inquiry," "lied to clients about BLMIS's practices" and "knowingly misled the SEC at Madoff's direction." *Id.* ¶¶ 8–9. He asserts that every step they took was "a calculated effort to maintain the viability of the BLMIS Ponzi scheme despite knowing Madoff was not engaged in the trading of securities." *Id.* ¶ 10.

---

[26] *See also, e.g.*, Cioffi Ex. 6, Proposed Am. Compl. ¶ 94 (describing efforts to "obtain information on BLMIS that was needed by 'our Paris office for vetting'"); *id.* ¶ 131; *id.* ¶ 188 (Natixis "gathered information" to "respond to [rating agencies' diligence] queries" on BLMIS's purported trading strategy and operations); Cioffi Ex. 15, Proffer ¶ 37 (collecting materials Natixis allegedly "received and reviewed," including "internal due diligence and risk reports," "legal opinions," and materials from BLMIS feeder funds including "annual financial statements[] and due diligence responses"); *id.* ¶¶ 50, 51, 53; Am. Compl. ¶ 37 (alleging Natixis personnel requested and received from FGG of a "purported BLMIS option trade ticket"); *id.* ¶ 33; Cioffi Ex. 3, Initial Compl. ¶ 176.

Both the Amended Complaint and the Fairfield Second Amended Complaint assert that BLMIS filed fraudulent financial reports with the SEC, "omit[ing] the existence of billions of dollars of customer funds BLMIS managed through its IA Business." *Id.* ¶ 31; *see id.* ¶ 32; Am. Compl. ¶ 68. BLMIS even managed to deceive the SEC, despite its investigative tools, broad resources and power to subpoena documents and information. *See* Cioffi Ex. 16, Fairfield Second Am. Compl. ¶¶ 166, 236–62 (discussing SEC investigations that failed to uncover fraud and alleging the Funds strategized with Madoff to deceive the SEC). The Second Circuit has recognized that the Madoff Ponzi scheme was "a fraud of 'unparalleled magnitude.'" *Fairfield Greenwich Ltd.*, 2021 Bankr. LEXIS 2101, at *3 (citation omitted). At bottom, that Natixis could have discovered this highly secretive, longstanding Ponzi scheme while thousands of other market participants and the SEC did not is simply implausible.

## VI.    SECTION 546(e) SAFE HARBOR BARS THE TRUSTEE'S CLAIMS

Count I against Natixis is asserted under Section 550(a) of the Bankruptcy Code, which provides that, to the extent a transfer is avoided, "the trustee may recover . . . the property transferred," or its value, from "the initial transferee" or any subsequent "transferee of such initial transferee." 11 U.S.C. § 550(a)(1), (2). Section 546(e) bars the Trustee from avoiding (other than under Section 548(a)(1)(A) with a limited reach-back period of two years) a transfer, *inter alia*, (i) that was either a settlement payment or a transfer in connection with a securities contract; and (ii) made by or to (or for the benefit of) a covered entity such as a stockbroker, financial institution, or financial participant. *See* 11 U.S.C. § 546(e). Natixis is entitled to raise Section 546(e) as an alleged subsequent transferee, *see SIPC v. BLMIS (In re Madoff Secs.)*, No. 12-115, 2013 U.S. Dist. LEXIS 56042, at *40–41 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), and it may prevail on this defense on a motion to dismiss, as the elements are established from the face

of the Amended Complaint.  *See Picard v. Ida Fishman Revocable Trust (In re Madoff)*, 773

F.3d 411, 414–15 (2d Cir. 2014).

### A.  The Elements of Section 546(e) Are All Clearly Satisfied Here

The Second Circuit has already ruled that initial transfers from BLMIS to its customers

pursuant to account agreements were settlement payments and were made in connection with a

securities contract (*i.e.*, the account agreements between BLMIS and its customers), so as to

come within the protection of Section 546(e).  *See Ida Fishman*, 773 F.3d at 418–23.[27]  In

addition, the initial transfers here were clearly made by or to (or for the benefit of) a covered

entity.  As the Second Circuit found, "[i]t is not disputed that BLMIS was a 'stockbroker' for the

purposes of § 546(e)."  *Ida Fishman*, 773 F.3d at 417.  In addition, Judge Bernstein has already

held that the Sentry is a "financial institution[] within the meaning of 11 U.S.C. § 546(e)."

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry)*, No. 10-03496, 2020

Bankr. LEXIS 3489, at *20 (Bankr. S.D.N.Y. Dec. 14, 2020).  Similarly, Judge Rakoff ruled that

Natixis is a financial institution for purposes of Section 546(e).  *See In re Nine W. LBO Sec.*

*Litig.*, 482 F. Supp. 3d 187, 203 (S.D.N.Y. 2020) (Rakoff, J.).

### B.  The Section 548(a)(1)(A) Exception to the Safe Harbor Does Not Apply

The Section 548(a)(1)(A) exception to the Safe Harbor does not apply.  That section

allows the Trustee to avoid transfers made "within 2 years before" the bankruptcy petition was

filed if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud . . . ."

11 U.S.C. § 548(a)(1)(A).  Because "'actual intent to hinder, delay or defraud' constitutes fraud

---

[27] Judge Rakoff concluded that subsequent transferees can invoke the Section 546(e) safe harbor defense by showing that the initial BLMIS-Sentry transfers were made in connection with securities contracts between Sentry and the subsequent transferees.  *See Picard v. Multi-Strategy Fund Ltd.*, No. 22-06502, 2022 U.S. Dist. LEXIS 200858, at *24, *28–29 (S.D.N.Y. Nov. 3, 2022).  Natixis reserves all rights to show that the initial transfers at issue are protected from avoidance because they were also made in connection with, *inter alia*, securities contracts between Sentry and its investors.

it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Tr. Co.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted).

Here, the Amended Complaint and the 105-page Fairfield Second Amended Complaint are devoid of *any specific* allegation regarding BLMIS's actual intent to hinder, delay, or defraud. Instead, the Trustee appears to rely on the "Ponzi scheme presumption," a judicially-created shortcut that bypasses pleading requirements and "presume[s] that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Citibank*, 12 F.4th at 201 (Menashi J., concurring). The presumption is not settled law. *See In re Unified Com. Cap., Inc.*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001); *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015). The Second Circuit has not definitively spoken on the presumption, applying it only where it is uncontested. *See e.g.*, *Citibank*, 12 F.4th at 181, n.7. In *Citibank*, Judge Menashi explained that the "Ponzi scheme presumption" presents a "questionable" application of fraudulent transfer statutes. *Id.* at 202. Several cogent reasons support this observation.

*First*, the presumption "obscures the essential distinction between fraudulent transfers and preferences. It uses fraudulent transfer law rather than the law relating to preferences to promote an equal distribution among creditors." *Id.* at 202. Some courts have rejected the presumption on this basis. *Id.* at 201; *see also Unified*, 260 B.R. at 350. In the case of BLMIS, the presumption would essentially permit—subject to other defenses—the clawback of all property transferred from BLMIS within two years before the bankruptcy filing, effectively expanding the preference period by 21 months (*i.e.*, from 90 days to two years).

*Second*, Section 548(a)(1)(A) focuses on the debtor's mindset at the time of making *particular* transactions "rather than a pattern of transactions that are part of a greater 'scheme.'"

*Finn*, 860 N.W.2d at 647 (construing Minnesota's Uniform Fraudulent Transfer Act).  The

statute therefore necessitates an "asset-by-asset and transfer-by-transfer" inquiry, which

"requires a creditor to prove the elements of a fraudulent transfer with respect to each transfer,

rather than relying on a presumption related to the form or structure of the entity making the

transfer."  *Finn*, 860 N.W.2d at 647; *see also Stoebner v. Opportunity Fin.*, *LLC*, 909 F.3d 219,

226 (8th Cir. 2018).  Thus, the Ponzi scheme presumption would permit the Trustee to avoid

entirely this "transfer-by-transfer" inquiry, which, given his failure to identify the relevant initial

transfers, he clearly would not be able to satisfy.

 *Last*, the Ponzi scheme presumption abrogates Rule 9(b)'s requirement that actual intent

to hinder, delay, or defraud be pled "with particularity."  Fed. R. Civ. P. 9(b); *see Sharp*, 403

F.3d at 56.  A judicially created exception to the Federal Rules runs counter to Congress' intent.

*Finn*, 860 N.W.2d at 647 (concluding "there is no statutory justification for relieving the

Receiver of its burden of proving—or for preventing the transferee from attempting to

disprove—fraudulent intent" under the "Ponzi-scheme presumption" and that a creditor must

"prove the elements of a fraudulent transfer with respect to each transfer"); *see also Unified*, 260

B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J. concurring)).

### C. Sentry's Alleged Knowledge of Madoff's Fraud Does Not Defeat Natixis's Ability to Invoke Section 546(e)

 Likewise, the exception does not come into play merely because the initial transferee,

Sentry, is alleged to have known of Madoff's fraud and thus there was no actual "settlement

payment" or "securities contract."  Nothing in the language of Section 546(e) permits depriving

an innocent subsequent transferee who meets all of the requirements of the statute of its ability to

invoke the safe harbor.[28]  The *only* exception to Section 546(e) is a claim under Section

548(a)(1)(A), which, as discussed, is inapplicable here.  Where the Bankruptcy Code creates an

exemption or safe harbor and specifies exceptions, a court is not free to create additional

exceptions, even when doing so is motivated by alleged wrongdoing.  *See Law v. Siegel*, 571

U.S. 415, 424–25 (2014).  The courts must adhere to "the plain meaning of the language" of the

statute.  *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 897 (2018).

## CONCLUSION

For the foregoing reasons, Natixis respectfully requests that the Court dismiss the

Amended Complaint as against Natixis with prejudice.

Dated:  April 17, 2023
        New York, New York                           **DAVIS+GILBERT LLP**


                                          By:  */s/ Joseph Cioffi*
                                               Joseph Cioffi
                                               H. Seiji Newman
                                               Bruce M. Ginsberg
                                               Adam M. Levy
                                               Christine DeVito
                                               1675 Broadway
                                               New York, NY 10019
                                               T: (212) 468-4800
                                               jcioffi@dglaw.com
                                               bginsberg@dglaw.com
                                               hsnewman@dglaw.com
                                               alevy@dglaw.com
                                               cdevito@dglaw.com

                                               *Attorneys for Defendant Natixis S.A.*

---

[28] The Second Circuit has held that payments can qualify for safe harbor protection as having been made "in connection with" securities contracts notwithstanding that they were "'made in connection' with a Ponzi scheme."  *Ida Fishman*, 773 F.3d at 422.  Accordingly,  the decision to the contrary in *Multi-Strategy Fund Ltd.* conflicts with applicable precedent.  *See Multi-Strategy Fund Ltd.*, 2022 U.S. Dist. LEXIS 200858, at *19.