# EXHIBIT 7

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Hearing Date: July 20, 2022 at 2:00 p.m.
Objection Deadline: July 14, 2022

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, et al.,<br><br>Defendants. | Adv. Pro. No. 09-01364 (CGM) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**APPROVING SETTLEMENT BETWEEN**
**THE TRUSTEE AND ALPHA PRIME FUND LTD.**

TO: THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"),[1] and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement, the terms and conditions of which are set forth in the Settlement Agreement (the "Final Settlement Agreement")[2] by and between the Trustee and Alpha Prime Fund Ltd. ("Alpha Prime" and with the Trustee, the "Parties"). In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Final Settlement Agreement represents a good faith settlement of the remaining disputes between the Parties, conferring a significant benefit upon the estate without the need for protracted and costly litigation, the outcome of which is uncertain. The Final Settlement Agreement resolves Alpha Prime's remaining amount of its customer claim, allowing the claim in the amount of $12,533,550, which is equal to 5% of Alpha

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] The form of Agreement is attached hereto as Exhibit "A."

2

Prime's net equity.[3] The Final Settlement Agreement also allows 85% of Alpha Prime's 502(h) claim, which equals the sum of $64,982,500, saving the estate over $11 million. Additionally, the agreement provides for the avoidance of the Six-Year Transfers (as defined below) and Alpha Prime's sharing with the Trustee the proceeds of its claims against various HSBC entities in Bermuda and Luxembourg. The Trustee therefore respectfully requests that the Court approve the Final Settlement Agreement.

## BACKGROUND

*The Commencement of the BLMIS Liquidation Proceeding*

2.   On December 11, 2008 (the "Filing Date"),[4] the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the SEC alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

3.   On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4.   On that date, the District Court entered the Protective Decree, to which

---

[3] Net equity is calculated under the "net equity" ruling of the United States Court of Appeals for the Second Circuit. *Sec. Inv'r Prot. Corp. v. BLMIS (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), cert. denied, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

[4] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* SIPA § 78*lll*(7)(B).

3

BLMIS consented, which, in pertinent part:

> (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
>
> (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
>
> (iii) removed the case to this Court pursuant to SIPA section 78eee(b)(4).

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's chapter 7 estate with the BLMIS SIPA proceeding.

### THE TRUSTEE'S CLAIMS AGAINST ALPHA PRIME AND ALPHA PRIME'S CUSTOMER CLAIM

6. Beginning in 2003 Alpha Prime, a BLMIS feeder fund incorporated under Bermuda law, maintained BLMIS Account No. 1FR097 in the name "HSBC Securities Services (Luxembourg) SA, Special Custody Acct for Alpha Prime Fund Limited" (the "Account").

7. Over the life of the Account, Alpha Prime withdrew approximately $83,170,000. It made approximately $76,450,000 of those withdrawals in the two years prior to the Filing Date (the "Two-Year Transfers") and $6,720,000 in the period between two years and six years before the Filing Date (the "Six-Year Transfers").

8. On or about February 2, 2009, after the BLMIS SIPA proceeding had been commenced, Alpha Prime filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 001503 (the "Customer Claim"). The Customer Claim asserts that Alpha Prime is entitled to the allowance of a customer claim in the amount reflected on its BLMIS Account statement for the period ending November 30, 2008.

9. On July 15, 2009, the Trustee commenced an action in the Bankruptcy Court against Alpha Prime and others under Adversary Proceeding Number 09-01364 (the

4

"Adversary Proceeding").

10. On December 5, 2010, the Trustee filed an amended complaint (the "Amended Complaint") in this Adversary Proceeding asserting claims against Alpha Prime for:

(a) the avoidance of the Two-Year Transfers under 11 U.S.C. §§ 548, 550, and 551 and SIPA § 78fff-2(c)(3), which are set forth in Counts Three and Four of the Amended Complaint;

(b) the avoidance of the Six-Year Transfers under 11 U.S.C. §§ 544 and 550 and the New York Debtor and Creditor Law §§ 270–281, which are set forth in Counts Five, Six, Seven, and Eight of the Amended Complaint;

(c) the recovery of the Two-Year Transfers and Six-Year Transfers under 11 U.S.C. §§ 544, 550, and 551, New York Debtor and Creditor Law §§ 270–281, and New York Civil Practice Law and Rules 203(g) and 213(8), which are set forth in Counts Nine and Ten of the Amended Complaint;

(d) the disallowance of the Customer Claim pursuant to 11 U.S.C. § 502(d), which is set forth in Count Eleven of the Amended Complaint; and

(e) the equitable subordination of the Customer Claim pursuant to 11 U.S.C. §§ 510(c) and 105(a), which is set forth in Count Twelve of the Amended Complaint.

11. On February 9, 2018, the Parties entered into a Partial Settlement Agreement which included the following terms: (1) payment by Alpha Prime to the Trustee of $76,450,000 in full and final settlement of the claims to avoid and recover the Two-Year Transfers; (2) allowance of the Customer Claim in the amount of $238,137,450, which is equal to 95% of Alpha Prime's net equity; and (3) continued litigation of certain "Disputed Issues." The Partial Settlement Agreement defined the Disputed Issues as: (i) whether Alpha Prime is entitled to a claim under section 502(h) of the Bankruptcy Code in respect of its payment of the Settlement Payment to the Trustee and the treatment such section 502(h) claim may receive; (ii) the Trustee's claims to avoid and recover the Six-Year Transfers, totaling $6,720,000, and in the event of Alpha Prime's payment in respect of the avoidance

5

of the Six-Year Transfers, the treatment a resulting section 502(h) claim would receive; and (iii) the Trustee's claims concerning the treatment of the remaining 5% of Alpha Prime's net equity claim, totaling approximately $12,533,550.

12. On September 24, 2019, the Trustee filed a Second Amended Complaint, asserting claims against Alpha Prime for:

(a) the avoidance of the Six-Year Transfers under 11 U.S.C. §§ 544 and 550 and the New York Debtor and Creditor Law §§ 270–281, which are set forth in Counts One through Four of the Second Amended Complaint (the "Six-Year Transfer Avoidance Claims");

(b) the recovery of the Six-Year Transfers under 11 U.S.C. §§ 544, 550, and 551, New York Debtor and Creditor Law §§ 270–281, and New York Civil Practice Law and Rules 203(g) and 213(8), which are set forth in Counts One through Four of the Amended Complaint (the "Six-Year Transfer Recovery Claims"); and

(c) the equitable subordination of the Customer Claim pursuant to 11 U.S.C. §§ 510(c) and 105(a), which is set forth in Count Five of the Amended Complaint (the "Subordination Claim").

13. On October 23, 2019, Alpha Prime filed an Answer to the Second Amended Complaint. Thereafter, the parties entered a case management plan and discovery ensued, including significant written discovery, document discovery, depositions, and multiple overseas examinations of witnesses.

14. Over the past several months, the Parties have engaged in good faith settlement discussions to resolve the Disputed Issues, which culminated in the Final Settlement Agreement. To be clear, this Final Settlement Agreement resolves all the remaining Disputed Issues as outlined in the Partial Settlement Agreement and is a full and final settlement between the Parties.

## OVERVIEW OF THE AGREEMENT

15. The principal terms and conditions of the Final Settlement Agreement are

generally as follows (as stated above, the Final Settlement Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[5]

- Upon the Closing, Trustee will allow 85% of Alpha Prime's 502(h) claim, which equals the sum of $64,982,500;

- Upon the closing, the remaining amount of Alpha Prime Customer Claim shall be deemed conclusively allowed in the amount of $12,533,550, which is equal to 5% of Alpha Prime's net equity (i.e., the portion that has not yet been allowed). The Allowed Claim shall not be subject to any disallowance under section 502(d) of the Bankruptcy Code or otherwise. The Allowed Claim shall be equal in priority to all other allowed customer claims against the BLMIS estate;

- Alpha Prime will share the with the Trustee 50% of the proceeds of its claims against various HSBC entities in Bermuda and Luxembourg. Such amounts shall be added to Alpha Prime's Allowed 502(h) Claim as follows: (i) 100% on the first $100,000,000; (2) 66% on the next $85,000,000; and (3) 50% for all recoveries thereafter;

- The Trustee will release, acquit, and absolutely discharge Alpha Prime and Alpha Prime Asset Management LTD and its respective current and former directors (including but not limited to, Peter Fischer, Ursula Radel-Leszczynski, and Stefan Zapotocky), officers, employees, direct or indirect shareholders, limited partners, principals, members, successors, assigns, accountants, and attorneys, from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS. Alpha Prime shall not be released from the claims to recover the Six-Year Transfers until the completion of discovery as set forth below;

- Alpha Prime and its agents will continue to participate in discovery in this Adversary Proceeding, which may include written discovery requests, depositions, and document productions, until the Six-Year Transfer Claims are resolved; and

---

[5] Terms not otherwise defined shall have the meaning ascribed in the Settlement Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Settlement Agreement, the Settlement Agreement shall prevail.

09-01364-cgm Doc 1231 Filed 05/23/24 Entered 05/23/24 17:36:49 Main Document
Motion to Approve Alpha Prime Settlement    Pg 8 of 12

- As soon as practicable after the Resolution of the Six-Year Transfers, the Parties shall submit to the Bankruptcy Court a stipulation requesting the dismissal of the Six-Year Transfer Claims contained within Counts One through Four of the Second Amended Complaint, with prejudice, as against Alpha Prime, with each Party bearing its own costs, attorneys' fees, and expenses.

## RELIEF REQUESTED

16. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Final Settlement Agreement.

## LEGAL BASIS

17. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

18. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, No. 06 Civ. 5435 (RMB), 2006 WL 3409088, at *7 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150

8

B.R. 519, 522 (S.D.N.Y. 1993).

19. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i) the probability of success in the litigation;

(ii) the difficulties associated with collection;

(iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv) the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 WL 3409088, at *7; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

20. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

21. The Final Settlement Agreement furthers the interest of BLMIS customers by (a) adding $11,467,500 to the fund of customer property by virtue of the 15% reduction of Alpha Prime's 502(h) claim and (b) allowing the Trustee to share in the recovery resulting

9

09-01364-cgm Doc 1231 Filed 05/23/24 Entered 05/23/24 17:36:49 Main Document
Pg 11 of 12

08-01789-cgm Doc 23116-1 Filed 06/23/24 Entered 06/23/24 15:34:09 Exhibit
Motion to Approve Alpha Prime Settlement    Pg 11 of 12

from Alpha Prime's claims against the various HSBC entities, which could result in millions of dollars to the estate. The Final Settlement Agreement resolves all the remaining issues in dispute between the Trustee and Alpha Prime and confers a significant benefit upon the estate without the need for protracted and costly litigation, the outcome of which is uncertain. Litigating the claims would undoubtedly be complex, create further delay, and would involve litigation risks associated with the unique facts of this case. *See* Declaration of the Trustee in Support of the Motion, a true and accurate copy of which is attached as Exhibit "C".

## CONCLUSION

22. In sum, the Trustee submits that the Final Settlement Agreement should be approved because it represents a fair and reasonable compromise of the 502(h) Claim, the Six-Year Transfer Claims and the remaining portion of Alpha Prime's Customer Claim. Because the Final Settlement Agreement is well within the "range of reasonableness" and it confers a benefit on the estate, without the need for protracted and costly litigation, the Trustee respectfully requests that the Court enter an Order approving the Final Settlement Agreement.

## NOTICE

23. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) Todd E. Duffy, DuffyAmedeo LLP, 275 Seventh Avenue, Seventh Floor, New York, New York 10001. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting

Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

Dated:  June 23, 2022
         New York, New York

Respectfully submitted,

BAKER & HOSTETLER LLP

By: *s/ Oren J. Warshavsky*
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Oren J. Warshavsky
    Email: owarshavsky@bakerlaw.com
    Geoffrey A. North
    Email: gnorth@bakerlaw.com
    Tatiana Markel
    Email: tmarkel@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

11