# EXHIBIT 11

# EXHIBIT A

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Settlement Agreement"), dated as of September 4, 2020, is made by and among:

IRVING H. PICARD (the "Trustee"), in his capacity as trustee under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*,[1] as amended ("SIPA"), for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff");

and

MAGNIFY, INC.;

YESHAYA HOROWITZ ASSOCIATION;

PREMERO INVESTMENTS LTD.;

STRAND INTERNATIONAL INVESTMENTS LTD.;

EXPRESS ENTERPRISES INC.; and

YAIR GREEN ("Green"), individually, and in his capacity as Managing Director of Magnify, Inc., Premero Investments Ltd., Strand International Investments Ltd., and Express Enterprises, Inc., and as Attorney for Yeshaya Horowitz Association

(collectively, the "U.S. Defendants," and with the Trustee, the "Parties," and each U.S. Defendant and the Trustee, a "Party").

## RECITALS

A.     BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.     On December 11, 2008 (the "Filing Date"), the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application by SIPC.

---

[1] Citations to sections of SIPA shall hereinafter omit reference to title 15.

Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of
SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities
customers as they came due and, accordingly, its customers needed the protections
afforded by SIPA. On December 15, 2008, the District Court granted SIPC's application
and entered an order, which, in pertinent part, appointed the Trustee under section
78eee(b)(3) of SIPA, and removed the case to the United States Bankruptcy Court for the
Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of
SIPA, where it is currently pending (No. 08-01789 (SMB)) (the "SIPA Proceeding").
The Trustee is duly qualified to serve and act on behalf of the substantively consolidated
estate of BLMIS and Madoff (the "Estate").

D.      On December 11, 2008, Madoff was arrested by federal agents for
violating criminal securities laws including securities fraud, investment adviser fraud, and
mail and wire fraud. At a plea hearing on March 12, 2009, in the case captioned *United
States v. Madoff*, No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal
information filed against him by the United States Attorney's Office for the Southern
District of New York, and admitted that he "operated a Ponzi scheme through the
investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS.

E.      Defendant Yair Green ("Green") is a resident of Israel and an Israeli
Advocate.

F.      Defendant Magnify, Inc. ("Magnify") is a corporation incorporated under
the laws of Panama. In 1995, Green became the Managing Director for Magnify. In
2016, Ayala Nahir ("Nahir") became Magnify's Chairperson and a Director and Green
became a Treasurer and Director. Green managed and supervised Magnify's accounts at
BLMIS during relevant times, according to the evidence.

G.      Defendant Strand International Investments Ltd. ("Strand") is a company
formed under the law of the British Virgin Islands ("BVI"). Green founded Strand,
served as the company's "Managing Director and/or authorized representative," and
supervised its BLMIS portfolio. Green was Strand's Managing Director and dealt
directly with Madoff on Strand's behalf and for its benefit. Strand is a wholly owned
subsidiary of Magnify.

H.      Defendant Premero Investments Ltd. ("Premero") is a company formed
under BVI law. Green was Premero's Managing Director and dealt directly with Madoff
on Premero's behalf and for its benefit.

I.      Defendant Express Enterprises Inc. ("Express") is a company formed
under BVI law. Green is Express's Managing Director.

J.      Defendant Yeshaya Horowitz Association ("YHA") is an Israeli
association registered with the Israeli Registrar of Associations. Albert Igoin ("Igoin")
founded YHA in 1988. YHA provided funding to Israeli institutions for the purpose of

2

advancement of scientific, academic and medical research.  Nahir is Igoin's niece, YHA Treasurer, and one of its founding members. Defendant Green acted as legal counsel in forming YHA in Israel, and thereafter served as YHA's legal counsel.  During relevant times, according to the evidence, Green assumed control over the flow of funds from Magnify into YHA's account at BLMIS and devoted his time and expertise in playing a key role in ensuring YHA donated funds to scientific and medical research for philanthropy in Israel.

K.    Defendants Magnify, Strand, Premero and YHA were customers of BLMIS's investment advisory business.  Over the years, those Defendants held several investment advisory accounts (each, an "Account," and collectively, the "Accounts"), including the following: Accounts 1FN024-30, 1FN025-30, 1FN097-30, 1FN073-30, 1FR051-30, 1FN037-30 and 1FN037-40.

L.    From the opening of the Accounts to the Filing Date, BLMIS transferred a total of $153,722,071 collectively from the Accounts to the U.S. Defendants (the "Transfers").  A copy of Exhibit B to the operative Second Amended Complaint, which details all transfers made to Defendants is annexed hereto as Exhibit 1.

M.    As set forth in Paragraphs 3 and 8(b) below, the U.S. Defendants agree that the Transfers are avoided, and recoverable by the Trustee under sections 550 and 551 of the Bankruptcy Code, and withdraw their objections to the Determination Notices as defined below.  As further described in Paragraph 8(b), the U.S. Defendants do not contest the bases of the Trustee's determination regarding the transfers from BLMIS received by the U.S. Defendants, including that "no securities were ever purchased by BLMIS for [the accounts]" and that "Any and all profits reported to [U.S. Defendants] by BLMIS on account statements were fictitious."

N.    In the six years prior to the Filing Date, BLMIS transferred a total of $87,480,000 collectively from the Accounts to the U.S. Defendants (the "Six-Year Transfers").

O.    In the two years prior to the Filing Date, BLMIS transferred a total of $29,800,000 collectively from the Accounts to the U.S. Defendants (the "Two-Year Transfers").

P.    The U.S. Defendants filed the following customer claims in the SIPA Proceeding (each a "Customer Claim" and, collectively, the "Customer Claims"), claiming monies and securities as reported in the Accounts' documents issued by BLMIS prior to its collapse (the "Last Statement Amounts"): (i) Magnify, claim 007382 relating to account number 1FN025-30 and claim 007928 relating to account 1FN024-30; (ii) Premero, claim 004772 relating to account number 1FN097-30 and claim 004773 relating to account number 1FN073-30; (iii) Strand, claim 04799 relating to account number 1FR051-30; and (iv) YHA, claim 005611 relating to account numbers 1FN037-3-0 and 1FN037-4-0 (collectively, the "Filed Claims").

Q.     The Trustee advised the U.S. Defendants, through separate Notices of Determination (the "Determination Notices"), that he had denied each of the Customer Claims listed in Paragraph P above.  In each of the respective Determination Notices, the Trustee rejected the U.S. Defendants' contention that they were entitled to allowance of the Customer Claims based upon the Last Statement Amounts and denied each Customer Claim based on his determination that the subject Account had negative "net equity."

R.     The U.S. Defendants filed objections to the Determination Notices relating to the Filed Claims, which remain pending.  Defendants Magnify, Strand and Premero objected based on, among other things, the Trustee's purported erroneous application of the net-equity rule and on the latest account information received by them from BLMIS.  Defendant YHA objected, among other things, based on the Trustee's purported erroneous application of the net-equity rule based on the account information BLMIS generated.

S.     On March 1, 2010, the Honorable Burton R. Lifland, United States Bankruptcy Judge, issued an opinion affirming the Trustee's "net equity" calculation of customer claims as the difference between investment into BLMIS and amounts withdrawn (the "Net Investment Method").  On August 16, 2011, the United States Court of Appeals for the Second Circuit upheld the Trustee's use of the Net Investment Method, and on June 25, 2012, the United States Supreme Court denied petitions for *certiorari.*

T.     On December 6, 2010, the Trustee commenced an adversary proceeding by filing a Complaint against the U.S. Defendants and certain others, captioned *Picard v. Magnify, Inc., et al.,* Adv. Pro. No. 10-05279 (SMB) (the "Magnify Proceeding").  On September 21, 2011, the Trustee filed his First Amended Complaint in the Magnify Proceeding, asserting claims against the U.S. Defendants and certain others to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550 and 551, the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 273–279), the New York Civil Procedure Law, and section 78fff-2(c)(3) of SIPA.  On September 29, 2017, the Trustee filed the Second Amended Complaint.  The Trustee's claims described in this recital are collectively referred to as the "Avoidance Claims."

U.     The U.S. Defendants filed Answers to the Complaint and to the First Amended Complaint denying the Trustee's claims and asserting defenses.

V.     On October 30, 2017, the U.S. Defendants moved to dismiss the Second Amended Complaint.  By Order dated April 13, 2018, the Bankruptcy Court denied the motion to dismiss, except adjourned determination of issues relating to certain transfers.  No answer has been filed to the Second Amended Complaint.

W.     On December 9, 2015, the Trustee commenced an action in Israel, C.C. 18907-12-15 *Picard v. Nahir et al*. (the "Israeli Direct Action"), by filing a Statement of Claim, and an Amended Statement of Claim on September 6, 2018, against Nahir, Ravit

4

Nahir Getenyu, Liora Nahir Tamir, Shira Nahir Eisen, Asaf Nahir, Batsheva Shambik, and Osnat Dodelson, who are individuals in Israel who collectively received transfers out of the Magnify group of accounts in the amount of NIS 14,731,320 equal to $3,906,354 (the "Israeli Direct Defendants," and, together with the U.S. Defendants, the "Defendants").

X.    All the Israeli Direct Defendants submitted a detailed Statement of Defense setting out defenses based on the merits of the claims and several defenses.

Y.    On December 9, 2015, the Trustee commenced an action in Israel, C.C. 18909-12-15 *Irving H. Picard v. Hebrew University of Jerusalem et al.* (the "Israeli Indirect Action") against certain institutions which received transfers from YHA that were comprised of BLMIS customer funds.

Z.    The Trustee engaged in mediation with the Israeli Direct Defendants in Israel from May 29-30, 2019.  No resolution was reached at that time.

AA.    On June 18, 2019, prior to the close of discovery, the Bankruptcy Court ordered mediation of the Magnify Proceeding, and the Parties engaged in mediation before Ted Berkowitz ("Mediator") to try to resolve the Avoidance Claims and all of their other disputes in an effort to avoid the expense, delay, and uncertainty of continued litigation. Based on multiple subsequent efforts over several months by the mediator and the Parties, the Parties signed a Term Sheet and reached agreement to settle and resolve in the Magnify Proceeding all of the disputes, claims, actions, defenses or liabilities, whether or not asserted, between them, which is now subject to the terms and conditions specified below. The settlement also resolves the Israeli Direct Action.  The Mediator's report was filed with the Bankruptcy Court on November 26, 2019.

BB.    On December 2, 2019, the Bankruptcy Court entered an Amended Case Management Stipulation and Order, which stayed applicable deadlines to allow the Parties to document the settlement.

CC.    The Israeli Indirect Action has not been resolved and remains in active litigation.  The Trustee continues to pursue all allegations and claims in the Israeli Indirect Action.  In addition, as the Trustee has publicly disclosed, the Trustee intends to file a subsequent transferee action in the United States against certain of the defendants in the Israeli Indirect Action relating to transfers from YHA that were comprised of BLMIS customer funds.

NOW, THEREFORE, in consideration for the covenants and agreements set forth in this Settlement Agreement (including, without limitation, the releases respectively set forth in Sections 11 and 12) and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged for purposes of this settlement, the Parties agree:

## AGREEMENT

1.    <u>Recitals</u>.  The foregoing Recitals are hereby incorporated into, and are a material part of, this Settlement Agreement.

2.    <u>No Admission</u>.  This Settlement Agreement is a negotiated resolution of the Magnify Proceeding and nothing in this Agreement constitutes an admission of wrongdoing by the Defendants.

3.    <u>Avoidance of the Transfers</u>.  The Transfers are avoided pursuant to, *inter alia*, Bankruptcy Code §§ 544, 548 and SIPA § 78fff-2(c)(3), and applicable state law including sections 203(g) and 213(8) of the New York Civil Practice Law & Rules and sections 273 through 279 of the DCL, and thus are recoverable by the Trustee under sections 550 and 551 of the Bankruptcy Code.

4.    <u>Settlement Payment</u>. The Defendants, except YHA,  shall pay to the Trustee the aggregate amount of Three Million Five Hundred Thousand United States Dollars ($3,500,000.00), a portion of which amount will be contributed by the Israeli Direct Defendants (the "<u>Settlement Payment</u>").  The Settlement Payment shall be paid as follows:

(a)    The Defendants shall, within five business days after the Bankruptcy Approval Order (as defined below), pay to the Trustee the sum of One Million Five Hundred Thousand United States Dollars ($1,500,000.00) (the "<u>Initial Payment</u>"), by wire transfer of immediately available funds to the account specified on <u>Schedule 1</u> attached hereto ("<u>Wire Transfer</u>").  The date by which the Trustee has both (i) received the Initial Payment, and (ii) obtained the Bankruptcy Approval Order, shall be the "<u>Effective Date</u>."

(b)    The Defendants then shall pay in installments to the Trustee the total sum of Eight Hundred Thousand United States Dollars ($800,000.00) by Wire Transfer, by making two payments of One Hundred Thousand United States Dollars ($100,000.00) by December 15, 2021 and December 15, 2022, and additional payments of Two Hundred Thousand United States Dollars ($200,00.00) each year on December 15 for three years, commencing in year 2023 through 2025 (the "<u>Installment Payments</u>").

(c)    The Defendants shall pay the balance of One Million Two Hundred Thousand United States Dollars ($1,200,000.00) by Wire Transfer on or before December 15, 2026 (the "<u>Balance Payment</u>").

(d)    Interest shall begin to accrue at the rate of three percent (3%) per annum on any unpaid amount of the Settlement Payment that the Trustee has not received within thirty (30) calendar days of such payment's due date (the "<u>Settlement Payment Interest</u>"). The Defendants shall pay any Settlement Payment Interest to the Trustee by Wire Transfer before or at the time the next payment is required to be made to the Trustee, or if it is the Balance Payment, then Settlement Payment Interest shall be due immediately.

(e)    Green shall provide good and sufficient first in line collateral to secure  Defendants' obligations to pay the Settlement Payment through a first degree unencumbered real property lien(s) and first degree mortgage (or the Israeli equivalent) on 6 Shikun HaElah, Kiryat Tiv'on, Israel, also known as parcel 177 in block number 10600 (the "<u>Collateral</u>"), owned by Green's Wife, Gabriela Green ("Gabriela"), which shall be effective as of the Effective Date. Gabriela and, to the extent required to effectuate this agreement, Green as her spouse shall both sign any and all documents for the Collateral to take effect, including a mortgage deed, notarial power of attorney and all other documents necessary for the registration/securitization of the Collateral to be registered in the name of the Trustee or such other person or entity as the Trustee directs.

(f)    Upon the failure by the Defendants to timely make any of the payments specified in this section (the "<u>Default</u>"), upon 30 days' written notice of a Default given by the Trustee to the Defendants, during which time the Defendants shall have the right to cure the Default, the Trustee may declare the entire unpaid amount of the Settlement Payment to be immediately due and pursue collection of this amount, including proceeding against the Collateral.

(g)    Subject to the terms of this Settlement Agreement and timely receipt of the payments comprising the Settlement Payment, except in the event of a breach of the Settlement Agreement, the Trustee will not seek to collect money above the Settlement Payment plus any interest as described in this Paragraph from the Defendants, other than YHA.

5.    <u>Consent Judgments</u>.

(a)    Defendants Magnify, Strand, Express, and Premero consent to entry of judgments against each of them in the respective amounts set forth in the Second Amended Complaint (aggregating $27,232,225.00), plus prejudgment interest at 9% per annum.

Copies of the consent judgments are annexed hereto as Exhibits 2 - 5.

(b)     Defendant YHA consents to entry of judgment against it in the amount set forth in the Second Amended Complaint ($126,489,846.00), plus prejudgment interest at 9% per annum. A copy of this consent judgment is annexed hereto as Exhibit 6.

i.     YHA has represented that it does not have any remaining assets and, based on that representation, has not contributed any money toward the Settlement Payment. Accordingly, YHA agrees not to dissolve without first obtaining the Trustee's express written consent and shall take any steps as necessary to maintain itself as an ongoing but non-active organization, including but not limited to taking all steps necessary to maintain members, officers and directors, duly submit all necessary reports to the Israeli Registrar of Association (with a copy thereof to the Trustee), paying any annual fees due to the Israeli Registrar of Associations, or provide proof that YHA is entitled to exemption from annual fees and duly submit yearly reports as are due under the Israeli law and send copies thereof to the Trustee.

ii.     If YHA receives any money or other assets or has the right to assert (subject to section 5(b)(iv), below) any claims following the Effective Date, YHA agrees to immediately notify the Trustee of the receipt of such money/assets/rights and within seven business days turn over to the Trustee such monies and/or assets/rights in satisfaction of the YHA Consent Judgment, up to the full amount of the YHA Consent Judgment. The sources of such money or assets include, but are not limited to, receipt of any proceeds from litigation or settlements, including relating to the Israeli Indirect Defendants, as well as proceeds from any claims, and contractual or other agreements with third parties.

iii.     YHA agrees that it will take any steps within its power to ensure that its members, officers, directors, and employees will not resign their positions; that it will not transfer or distribute assets other than to the Trustee; that it will preserve its documents; and that it will not change its bylaws or make any changes to its board without the Trustee's express written consent.

iv.     Subject to YHA's compliance with its obligations under

this Paragraph 5(b):

(1)  The Trustee agrees not to directly or indirectly seek a receiver for YHA; and

(2)  In the event YHA is placed into a receivership, the Trustee agrees not to file motions in connection with proceedings held against YHA seeking the recovery of money from the individual YHA Releasees, or to direct any receiver of YHA to bring any potential claims held by YHA against the individual YHA Releasees.

Nothing in this section prevents the Trustee from filing other motions or taking other actions in the event of a receivership, including a motion to require signatures needed from YHA's officers regarding the transfer of monies relating to its obligations under 5(b)(ii).

(c)  The Israeli Direct Defendants separately consent to the entry of a judgment in Israel for the full amount of the claims set forth in the Trustee's Statement of Claim in the Israeli Direct Action (ILS 14,731,320), plus Israeli legal interest.  That judgment will be the subject of a separate filing in Israel.  Within ten business days of the Effective Date, a joint motion for entry of consent judgment resolving the Israeli Direct Action shall be submitted to the Israeli Court.  Upon entry of the Bankruptcy Approval Order, and after full payment of the Settlement Payment, the Trustee will waive any further collection of the remaining amount of the judgment against the Israeli Direct Defendants.  In the event of any Default(s) (as defined in paragraph 4(f)) by the Defendants, which has not been cured within 30 days of written notice, the Trustee agrees to waive further collection of personal assets of the Israeli Direct Defendants, but reserves all rights and may pursue collection, including against the collateral, in the U.S. Action and/or the Israel Direct Action, as provided in Paragraphs 4(f) and 21.

6.  _Continued Proceedings_.  This Settlement Agreement does not preclude, settle, or resolve in any way the Israeli Indirect Action or the Trustee's allegations therein.  Nor does it limit the Trustee's pursuit and recovery of any subsequent transfers relating to YHA's initial transfers (subject to the releases in Paragraph 11 below), whether in the United States or Israel, all rights with respect to which the Trustee expressly reserves.

7.  _Defendants' Cooperation_.

9

(a)     YHA, Magnify, Strand, Express and Premero have provided a
        stipulation acknowledging their respective receipt of the Transfers
        identified on Exhibit B of the Second Amended Complaint,
        attached as Exhibit 7.

(b)     The Israeli Direct Defendants intend to provide a stipulation
        acknowledging their respective receipt of the transfers alleged by
        the Trustee in Israeli Direct Action.

(c)     YHA has provided a stipulation acknowledging that it transferred
        the funds alleged in the Israeli Indirect Action, and that these funds
        were transferred via inter-account transfer from Magnify's BLMIS
        account to YHA's BLMIS account, then withdrawn from BLMIS
        by YHA, and subsequently transferred by YHA to the defendants
        in the Israeli Indirect Action (the "Israeli Indirect Defendants").
        YHA has also provided a stipulation that the only source of
        funding for its donations was its BLMIS account. The stipulation is
        attached as Exhibit 8.

(d)     YHA shall continue to cooperate with the Trustee in producing any
        outstanding bank account documents and/or accounting data
        relating to YHA prior to the scheduled hearing on this Settlement
        Agreement.

(e)     The Defendants will provide relevant information and documents,
        to the extent they exist, concerning the transfers to the U.S.
        Defendants, the Israeli Direct Defendants, and the Israeli Indirect
        Defendants, and will truthfully and diligently respond to questions
        regarding those topics by the Trustee or his counsel.

(f)     Upon the request of the Trustee or his counsel, and after the
        Parties' review of any additional information provided by the
        Defendants, Mr. Green and Ms. Nahir will provide a
        declaration/affidavit that accurately reflects their knowledge
        regarding the circumstances surrounding the Transfers and any
        subsequent transfers thereof.

(g)     With the exception of the Defendants' financial disclosures to the
        Trustee, which were for settlement purposes only, documents and
        testimonies disclosed in connection with the Defendants'
        cooperation will be subject to the terms of the Litigation Protective
        Order dated June 6, 2011, entered in *Sec. Investor Prot. Corp. v.
        Bernard L. Madoff Inv. Sec. L.L.C.*, Adv. Pro. No. 08-1789 (SMB)
        (Bankr. S.D.N.Y.  June 6, 2011), ECF No. 4137.

(h)     During the pendency of any proceedings in the United States or Israel, the Trustee and the Defendants will limit any public comments on (i) this Settlement Agreement; (ii) the Magnify Proceeding; (iii) the Israel Direct Action; or (iv) any subsequent transfers action(s) the Trustee has brought or may bring related to the Transfers, to the four corners of documents filed in connection with those proceedings and any agreements between the Trustee and Defendants.  Other than repeating information publicly filed in the Bankruptcy Rule 9019 motion seeking approval of this Settlement Agreement and related documents, the Defendants will refrain from discussing this settlement.  Notwithstanding anything else in this Agreement, nothing herein prevents the Trustee or any of the Defendants from making truthful statements before a court or legal tribunal.

8.     Claim Determination / Withdrawal of Objections.  For purposes of this Settlement Agreement and in consideration for the covenants and agreements set forth in this Settlement Agreement and for other good and valuable consideration (including, without limitation, the releases set forth in Sections 11 and 12), the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following determinations and withdrawals:

(a)     With respect to the Filed Claims, the Trustee issued the Determination Notices that denied each of the Filed Claims, copies of which are attached hereto as Exhibits 9 - 14.

(b)     The Defendants filed six objections to the Determination Notices (ECF Nos. 985, 986, 2494, 3791, 3792, and 3793) (collectively, the "Objections").  As part of the consideration to the Trustee hereunder, the Defendants shall withdraw the Objections by executing concurrently herewith, and delivering to Trustee for filing, the executed Notices of Withdrawal of Objections with prejudice, in the form attached hereto as Exhibit 15. The Determination Notices shall continue in full force and effect and shall be deemed final and not subject to dispute.  The Defendants do not contest the bases of the Trustee's determination regarding the transfers from BLMIS received by the Defendants.

9.     Bankruptcy Court Approval.  This Settlement Agreement is subject to Bankruptcy Court approval by an order that is not subject to appeal, review or rehearing (the "Bankruptcy Approval Order").  The Trustee shall use his best efforts to obtain the approval of the Bankruptcy Court of this Settlement Agreement as promptly as practicable on or after the date of this Settlement Agreement.

10.     Discontinuance of Actions.

(a) Within ten business days after the Effective Date, the Parties shall file a stipulation to be so-ordered by the Bankruptcy Court that discontinues the action as to the U.S. Defendants with prejudice, subject only to the rights under this Settlement Agreement. The Trustee will also file the Consent Judgment Motion in the Israeli Direct Action.

(b) Except for an action relating to this Settlement Agreement, the Trustee will not commence future proceedings against the U.S. Defendants relating to the Avoidance Claims.

11. Release by Trustee.

(a) In consideration for and subject to the terms and limitations herein, effective as of the Effective Date, the Trustee, as Trustee and on behalf of BLMIS and the consolidated estates, hereby releases, acquits and forever discharges the Transferee Releasees, as and only to the extent defined below, from any and all past and present actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of, or in any way related to the Accounts or the Transfers (the "Release"). The Transferee Releasees are:

 i. Magnify, Strand, Premero, Express, Green and each of their respective officers, directors, general partners, limited partners, shareholders, representatives, agents, family members, heirs, successors, and assignees;

 ii. Mobideo Technologies Ltd, Mobideo Technologies (U.S.) Inc. and Mobideo (Israel Ltd.) (the "Mobideo Releasees"); and

 iii. Except for YHA, any and all immediate and mediate subsequent transferees of Magnify, Strand, Premero and Express solely to the extent of their receipt of immediate and mediate subsequent transfers from those entities and as to no other claims (the "Specific Subsequent Transferee Releasees").

(b) As to the Mobideo Releasees and Specific Subsequent Transferee Releasees (as defined above), unless such person/entity is already released pursuant to Section 11(a)(i) above, the Release is subject to a declaration or affidavit provided by each Mobideo Releasee

and Specific Subsequent Transferee Releasee that he/she/it has not received any additional BLMIS related transfers other than those identified by the Trustee.

(c)     In consideration for and subject to the terms and limitations herein, effective as of the Effective Date, the Trustee, as Trustee and on behalf of BLMIS and the consolidated estates, also hereby releases, acquits and forever discharges YHA's current and former members, officers, directors, administrative personnel-employees, general partners, limited partners, attorneys, accountants, consultants and shareholders, solely in and to the extent of their existing potential personal financial liability in their capacity at YHA, and for no other claims, present actions or causes of action ("YHA Releasees").

(d)     For the avoidance of doubt, other than the YHA Releasees to the extent described above, subsequent transferees of YHA are NOT included in this Release.  The Trustee expressly DOES NOT release any of the Israeli Indirect Defendants or any other subsequent transferees of YHA, or any recipient of transfers that are derived from YHA's BLMIS Account (including the Transfers), from any claims whatsoever, nor does the above Release derogate from and/or limit in any way the Trustee's rights to pursue any such claims to the fullest extent available in law and equity, all of which are expressly preserved.  In connection with his claims, in any forum, against individuals or entities that received transfers comprised of BLMIS customer funds that can be derived from YHA's BLMIS Account, the Trustee may make and prove any relevant allegations.  Such allegations expressly include allegations relating to the conduct, state of mind, agency, and/or imputation of the Transferee Releasees and YHA Releasees, including but not limited to allegations contained in the Second Amended Complaint in the Magnify Proceeding, Israeli Direct Action and Israeli Indirect Action.  This Subparagraph is not intended to and does not limit the scope of the release of the Transferee Releasees set forth above in this Paragraph 11.

(e)     For the avoidance of doubt, YHA is NOT released pursuant to this Settlement Agreement.

(f)     Except as expressly provided in this Section 11, Defendants, the Transferee Releasees and the YHA Releasees are not released from any rights and obligations arising under this Settlement Agreement (including consent judgments against Defendants), or from liability

for any transfers that he/she/it received in connection with any account not specified herein or may receive after the date of this Settlement Agreement which constitute subsequent transfers of transfers made by BLMIS which are avoidable and recoverable under SIPA, including SIPA sections 78fff(b), 78fff-1(a), and 78fff-2(c)(3), sections 105(a), 541, 547, 548, 550(a), and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law section 270 *et seq.* (McKinney 2001) and other applicable laws.

12.    <u>Releases by Defendants and Releasees</u>.  In consideration for the terms herein, except with respect to any rights and obligations arising under this Settlement Agreement, on the Effective Date, each Defendant and Releasee hereby releases, acquits, and forever discharges SIPC, the Trustee and his professionals, agents and consultants, Madoff, BLMIS, and the Estate from any and all past and present actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS, except for any and all claims to enforce any obligation of the Trustee under this Settlement Agreement.

13.    <u>Authority and Representations of the Trustee</u>.  The Trustee represents to Defendants, as of the date hereof, and subject to the approval of the Bankruptcy Court, as set forth in Section 9 above, that he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Settlement Agreement, and has taken all necessary action to authorize the execution and delivery of, and the performance of his obligations under, this Settlement Agreement.

14.    <u>Authority of Defendants Individually</u>.  Each Defendant individually represents and warrants to the Trustee that: (i) he/she/it has the full power, authority, legal right, and capacity to execute and deliver this Agreement and to perform his/her/its obligations hereunder; (ii) this Agreement has been duly executed and delivered by him/her/it, and constitutes a valid and binding agreement, enforceable against him/her/it in accordance with its terms; (iii) in executing this Agreement, he/she/it has done so with the full knowledge of any and all rights that he or she may have with respect to the controversies herein compromised, and he/she has received or has obtained independent legal advice from his or her attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that he/she/it releases herein, and he/she/it has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he/she/it releases herein.

15.    <u>Authority on Behalf of Magnify, Inc</u>.  Green, in his capacity as Magnify's Managing Director, hereby represents and warrants to the Trustee that: (i) he

14

has the full power, authority, legal right and capacity, on behalf of Magnify to execute and deliver this Settlement Agreement and to perform his obligations hereunder; (ii) the execution and delivery of this Settlement Agreement and the performance of his obligations hereunder have been duly and validly authorized by all necessary action on the part of Magnify, (iii) this Settlement Agreement has been duly executed and delivered by him, and constitutes a valid and binding agreement, enforceable against Magnify in accordance with its terms; (iv) in executing this Settlement Agreement, he has done so with the full knowledge of any and all rights that Magnify may have with respect to the controversies herein compromised, and he has received or has had the opportunity to obtain independent legal advice from his attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the matters that he releases herein on behalf of Magnify and he has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he releases herein on behalf of Magnify.

16.    Authority on Behalf of Strand International Investments Ltd.  Green, in his capacity as Strand's Managing Director, hereby represents and warrants to the Trustee that: (i) he has the full power, authority, legal right and capacity, on behalf of Strand to execute and deliver this Settlement Agreement and to perform his obligations hereunder; (ii) the execution and delivery of this Settlement Agreement and the performance of his obligations hereunder have been duly and validly authorized by all necessary action on the part of Strand; (iii) this Settlement Agreement has been duly executed and delivered by him, and constitutes a valid and binding agreement, enforceable against Strand in accordance with its terms; (iv) in executing this Settlement Agreement, he has done so with the full knowledge of any and all rights that Strand may have with respect to the controversies herein compromised, and he has received or has had the opportunity to obtain independent legal advice from his attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the matters that he releases herein on behalf of Strand, and he has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he releases herein on behalf of Strand.

17.    Authority on Behalf of Premero Investments Ltd.  Green, in his capacity as Premero's Managing Director, hereby represents and warrants to the Trustee that: (i) he has the full power, authority, legal right and capacity, on behalf of Premero to execute and deliver this Settlement Agreement and to perform his obligations hereunder; (ii) the execution and delivery of this Settlement Agreement and the performance of his obligations hereunder have been duly and validly authorized by all necessary action on the part of Premero; (iii) this Settlement Agreement has been duly executed and delivered by him, and constitutes a valid and binding agreement, enforceable against Premero in accordance with its terms; (iv) in executing this

Settlement Agreement, he has done so with the full knowledge of any and all rights that Premero may have with respect to the controversies herein compromised, and he has received or has had the opportunity to obtain independent legal advice from his attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the matters that he releases herein on behalf of Premero, and he has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he releases herein on behalf of Premero.

18.    _Authority on Behalf of Express Enterprises Inc._  Green, in his capacity as Express's Managing Director, hereby represents and warrants to the Trustee that: (i) he has the full power, authority, legal right and capacity, on behalf of Express to execute and deliver this Settlement Agreement and to perform his obligations hereunder; (ii) the execution and delivery of this Settlement Agreement and the performance of his obligations hereunder have been duly and validly authorized by all necessary action on the part of Express; (iii) this Settlement Agreement has been duly executed and delivered by him, and constitutes a valid and binding agreement, enforceable against Express in accordance with its terms; (iv) in executing this Settlement Agreement, he has done so with the full knowledge of any and all rights that Express may have with respect to the controversies herein compromised, and he has received or has had the opportunity to obtain independent legal advice from his attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the matters that he releases herein on behalf of Express, and he has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he releases herein on behalf of Express.

19.    _Authority on Behalf of Yeshaya Horowitz Association._  Professor Henri Atlan, Chairman, and Ayala Nahir, Treasurer, as authorized signatories for YHA, hereby represent and warrant to the Trustee that: (i) they have the full power, authority, legal right and capacity, on behalf of YHA to execute and deliver this Settlement Agreement and to perform their obligations hereunder; (ii) the execution and delivery of this Settlement Agreement and the performance of their obligations hereunder have been duly and validly authorized by all necessary action on the part of YHA; (iii) this Settlement Agreement has been duly executed and delivered by YHA, and constitutes a valid and binding agreement, enforceable against YHA in accordance with its terms; (iv) in executing this Settlement Agreement, they have done so with the full knowledge of any and all rights that YHA may have with respect to the controversies herein compromised, and they have received or have had the opportunity to obtain independent legal advice from his attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (v) no other person or entity, other than those specifically identified herein, has any interest in the

16

matters that he releases herein on behalf of YHA, and he has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that he releases herein on behalf of YHA.

20.    <u>Defendants' Further Representations</u>.  To induce the Trustee to enter into this Settlement Agreement, each Defendant represents and warrants, to the best of his/her/its knowledge, information, and belief, that:

(a)    Other than directly or subsequently from the Transfers as referenced on Exhibit B of the Second Amended Complaint and claimed in the Israeli Direct action, he/she/it has not received any other money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS;

(b)    He/she/it is not an immediate, mediate or subsequent transferee of any other transfers, funds or property originating from Madoff or BLMIS to an initial transferee; and

(c)    other than the claims asserted in the Second Amended Complaint and in the Israeli Direct Action, he/she/it is not aware of any other potential claims against him/her/it by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS.

To induce the Trustee to enter into this Settlement Agreement, Defendants further hereby represent and warrant that they fully disclosed to the Trustee all of their current assets and liabilities. The Trustee has relied upon the representations made by, and verified financial information provided by the Defendants concerning their assets and liabilities.  In the event any of those representations are discovered to be materially false within six years from the date of the Court's approval of the 9019 Motion the Trustee may enforce the consent judgments and/or pursue the remedies set forth in Paragraph 21 below.

21.    <u>Effect of Breach of Settlement Agreement</u>.  In the event of a Default as defined in Paragraph 4(f) of this Agreement, the Trustee is entitled to exercise his rights under Paragraph 4, without resort to the Bankruptcy Court or any further notice period.

As to any other material breach of this Agreement, including but not limited to a breach of paragraph 20, if any Party is found by a final, non-appealable order to be in material breach of this Settlement Agreement, the non-breaching Party shall have the right to seek monetary damages and mandatory injunctive relief against the breaching Party.  The non-breaching Party may seek the remedies provided for in this paragraph, after providing written notice of such material breach to the breaching Party, and the breaching Party's failure to cure such material breach within 45 days after receipt of such notice.

22.    <u>Parties' Further Assurances</u>.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Settlement Agreement to give effect to its intent.

23.    <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties, and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof, including the Term Sheet.

24.    <u>Amendments; Waiver</u>.  This Settlement Agreement may not be terminated, amended or modified in any way except as set forth herein.  Material modifications to this Settlement Agreement must be in a writing signed by all the Parties and are subject to approval from the Bankruptcy Court.  Non-material modifications must be in a writing signed by all Parties.  No waiver of any provision of this Settlement Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

25.    <u>Assignability</u>.  This Settlement Agreement, including any rights arising under this Settlement Agreement, may not be assigned by the Defendants without the prior written consent of the Trustee.  Defendants' consent is not required for the Trustee to assign or otherwise transfer this Settlement Agreement, or any of his rights under this Settlement Agreement.

26.    <u>Successors Bound</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

27.    <u>No Third-Party Beneficiaries.</u>  The Parties do not intend to confer any benefit by or under this Settlement Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns as set forth in this Settlement Agreement.

28.    <u>Applicable Law</u>.  This Settlement Agreement shall be construed and enforced in accordance with the laws of New York State without regard to its conflict of law provisions that would result in the application of the law of another jurisdiction, except that issues relating to the enforcement, collection and realization of the Collateral as prescribed in paragraphs 4(e) and 4(f), shall be construed and enforced in accordance with the laws of the State of Israel.  Each Party waives, on behalf of itself and any successors and assigns, any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

29.    <u>Jurisdiction</u>.

(a)    The Parties agree that any action between the Parties, except as
described below in section (b) of this paragraph, arising from,
relating to, or in connection with this Settlement Agreement, may
be brought only in the Bankruptcy Court, and each Party consents
that the Bankruptcy Court may enter final judgment in any action
against the other Party coming before it.  No Party shall bring,
institute, prosecute, or maintain any action arising from, relating
to, or in connection with any provision of this Settlement
Agreement in any court other than the Bankruptcy Court, except
for (i) the limited purpose of enforcing a final award or judgment
entered by the Bankruptcy Court; (ii) as provided below in section
(b); or (iii) some other court of competent jurisdiction in
connection with the claims brought pursuant to this Settlement
Agreement.  Each Party hereby submits to the jurisdiction of the
Bankruptcy Court, or, if the Bankruptcy Court does not exercise its
jurisdiction, to the state and federal courts of the State of New
York, and further agrees to accept service of process in connection
with any action arising under this paragraph by hand or registered
mail at the respective addresses set forth below and to waive any
and all defenses to the enforceability of a final award or judgment
entered by the Bankruptcy Court under this paragraph in any action
brought by the Parties to enforce such final award or judgment.

(b)    As described above in paragraph 4(f), in the event the Defendants
fail to make any payments and the Trustee must move for
enforcement, such enforcement may take place in any appropriate
jurisdiction, including, but not limited to Israel.  In addition to the
Bankruptcy Court, the Defendants expressly consent to Israeli law
and the jurisdiction of the competent court in Tel-Aviv, for the
enforcement and/or recognition of this Settlement Agreement,
and/or collection and/or recovery of any outstanding payments,
and/or the enforcement, collection and realization of the Collateral.

30.    <u>Captions and Rules of Construction</u>.  The captions in this Settlement
Agreement are inserted only as a matter of convenience and for reference and do not
define, limit or describe the scope of this Settlement Agreement or the scope or content
of any of its provisions.  Any reference in this Settlement Agreement to a section is to a
section of this Settlement Agreement.  "<u>Includes</u>" and "<u>including</u>" are not limiting.

31.    <u>Counterparts; Electronic Copy of Signatures</u>.  This Settlement
Agreement may be executed and delivered in any number of counterparts, each of
which so executed and delivered shall be deemed to be an original and all of which

shall constitute one and the same document. The Parties may evidence their execution of this Settlement Agreement by delivery to the other Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

32.    Negotiated Agreement.  This Settlement Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Settlement Agreement.

33.    Severability.  In the event that any term or provision of this Settlement Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Settlement Agreement and any other application of such term or provision shall not be affected thereby.

34.    Notices.  Any notices under this Settlement Agreement shall be in writing, shall be effective when received, and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
F: (212) 589-4201
E: dsheehan@bakerlaw.com

If to U.S. Defendants:

Paul Weinstein, Esq.
Emmet Marvin & Martin LLP
120 Broadway, 32nd Fl.
New York, New York 10271
F: (212) 566-4531
E: pweinstein@emmetmarvin.com

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed as of the date first above written.

_____
Irving H. Picard, solely as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act of 1970, as amended, and the substantively consolidated Chapter 7 estate of Bernard L. Madoff, without personal liability

_____

_YAIR GREEN._
Yair Green, individually

_YAIR GREEN._
Yair Green on behalf Magnify Inc. as its Managing
Director

_YAIR GREEN._
Yair Green on behalf of Strand International
Investments LTD., as its Managing Director

_YAIR GREEN._
Yair Green on behalf of Premero Investments
LTD., as its Managing Director

_YAIR GREEN._
Yair Green on behalf of Express Enterprises Inc., as
its Managing Director

Henry Atlan as authorized signatory on behalf of
Yeshaya Horowitz Association,

Ayala Nahir as authorized signatory on behalf of
Yeshaya Horowitz Association,

## SCHEDULE AND EXHIBITS
## TO SETTLEMENT AGREEMENT

| | |
|---|---|
| SCHEDULE 1 | WIRE INSTRUCTIONS |
| EXHIBIT 1 | EXHIBIT B TO THE SECOND AMENDED COMPLAINT |
| EXHIBIT 2 | CONSENT JUDGMENT - MAGNIFY |
| EXHIBIT 3 | CONSENT JUDGMENT - STRAND |
| EXHIBIT 4 | CONSENT JUDGMENT - EXPRESS |
| EXHIBIT 5 | CONSENT JUDGMENT - PREMERO |
| EXHIBIT 6 | CONSENT JUDGMENT - YHA |
| EXHIBIT 7 | INITIAL TRANSFER STIPULATION |
| EXHIBIT 8 | YHA SUBSEQUENT TRANSFER STIPULATION |
| EXHIBIT 9 | DETERMINATION LETTER FOR ACCOUNT No. 1FN024 |
| EXHIBIT 10 | DETERMINATION LETTER FOR ACCOUNT No. 1FN025 |
| EXHIBIT 11 | DETERMINATION LETTER FOR ACCOUNT No. 1FN037 |
| EXHIBIT 12 | DETERMINATION LETTER FOR ACCOUNT No. 1FR051 |
| EXHIBIT 13 | DETERMINATION LETTER FOR ACCOUNT No. 1FN097 |
| EXHIBIT 14 | DETERMINATION LETTER FOR ACCOUNT No. 1FN073 |
| EXHIBIT 15 | NOTICE OF WITHDRAWAL OF OBJECTION |

# SCHEDULE 1
# TO
# SETTLEMENT AGREEMENT

# SCHEDULE 1

Citi Private Bank
153 East 53rd Street, 23rd Fl
New York, NY 10022

ABA No.: ▇▇▇▇▇

Swift Code: ▇▇▇▇▇

Account Name: Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff
    Investment Securities LLC
Account No.: ▇▇▇▇▇