|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | <u>NOT FOR PUBLICATION</u> |

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>      Plaintiff,<br><br>v.<br><br>KBC INVESTMENTS LIMITED,<br><br>      Defendant. | Adv. Pro. No. 11-02761 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
 By: David Sheehan
    Eric R. Fish
    Patrick T. Campbell

Megan A. Corrigan
Kayley B. Sullivan

*Attorneys for Defendant KBC Investments Limited*
SIDLEY AUSTIN LLP
787 Seventh Avenue New York, NY 10019
By:    John J. Kuster
       Martin B. Jackson
       Andrew P. Propps
       Danica L. Brown

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, KBC Investments Limited ("KBC"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. KBC seeks dismissal for lack of personal jurisdiction. KBC alleges that certain allegations in the amended complaint should be dismissed for failure to relate back to the claims in the original complaint. For the reasons set forth herein, the motion to dismiss is denied.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

## **Background**

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on October 6, 2011. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint on August 5, 2022. (Am. Compl., ECF No. 104). Via the amended complaint ("Amended Complaint"), the Trustee seeks to recover $86,000,000 in subsequent transfers made to KBC. (*Id.* ¶ 2). The subsequent transfers were derived from investments with BLMIS made by Harley International (Cayman) Limited ("Harley"). (*Id.* ¶ 2, 104). KBC is a private limited company with its registered office in the United Kingdom. (*Id.* ¶ 3). Defendant is an indirect subsidiary of KBC Group NV and was used by it and affiliates as a vehicle to invest with BLMIS through Harley. (*Id.*)

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Harley to avoid and recover fraudulent transfers of customer property. (*Id.* ¶ 4); (*See* Compl., *Picard v.*

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02761-cgm.

*Harley Int'l (Cayman) Ltd.*, Adv. Pro. No. 09-01187, ECF No. 1 (the "Harley Complaint")). In November 2010, on a motion for default and summary judgment, the Court entered judgment against Harley avoiding the initial two-year transfers in the amount of $1,066,800,000. (Am. Compl. ¶¶ 4, 73–77, ECF No. 104); (Adv. Pro. No. 09-01187, Order, ECF No. 15). The Trustee has not yet recovered any of the initial transfers from Harley. (Am. Compl. ¶ 4). The Trustee commenced this adversary proceeding following entry of judgment against Harley in order to recover the customer property. The Trustee alleges that Harley transferred $146,000,000 to KBC, of which at least $86,000,000 consisted of subsequent transfers of customer property. (*Id.* ¶ 78).

In its motion to dismiss, Defendant argues that the Trustee has failed to plead personal jurisdiction and improperly seeks transfers in the amended complaint that fail to relate back to the original complaint. The Trustee opposes the motion to dismiss. For the reasons set forth herein, the motion to dismiss is denied.

## Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction. (Mem. L. 8, ECF No. 110). In the Amended Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York. (Am. Compl. ¶¶ 60–72).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In the absence of discovery, "a plaintiff's prima facie showing of jurisdiction 'may be established solely by allegations.'" *Paroni v. GE UK Holdings Ltd.*, 2021 U.S. Dist. LEXIS 148930 (N.D.N.Y. 2021) (quoting *Ball*, 902 F.2d at 197).

In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Defendant "knowingly directing funds to be invested with New York-based BLMIS through Harley and other Feeder Funds." (Am. Compl. ¶ 60). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Sec. Inc.*, 722 F.3d at 85 (explaining that an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr.

Page **5** of **16**

S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *BNP Paribas S.A.*, 594 B.R. at 187.

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Minimum Contacts

In the Complaint, the Trustee alleges that "KBC Investments knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS" and "direct[ed] its funds to and from New York-based BLMIS through Harley." (Am. Compl. ¶ 61, ECF No. 104). KBC knew a great deal about Harley, including that BLMIS in New York was Harley's investment manager and executing broker for Harley's investments. (*Id.* ¶ 62). Defendant knew that "Harley reported in its audited financial statements that 99.99% of its assets were in the custody of BLMIS in New York," and that Harley's "entire economic purpose . . . was to deliver money to BLMIS in New York." (*Id.*).

The Trustee alleges that KBC signed subscription agreements with Harley, in which it "affirmed having received and carefully read the terms set forth in the Harley Confidential Explanatory Memorandum." (*Id.* ¶ 63). In this memorandum, Defendant understood that its "investments in Harley would be governed by the fund's articles of association." (*Id.*). The articles of association in turn stated that "all disputes among Harley and its shareholders were subject to binding arbitration in New York pursuant to the rules established by the American Arbitration Association." (*Id.*). The subscription documents provided specific detail on New York as the location of deposits and redemptions. (*Id.* ¶ 64) ("[S]ubscription documents also stated that all money from KBC Investments be directed to New York correspondent bank accounts at JP Morgan Chase, New York . . . or the Northern Trust Banking Corporation . . . for ultimate deposit in Harley's bank account. From Harley's bank account, the funds were deposited in BLMIS's account at JP Morgan in New York. When Harley redeemed funds from

its BLMIS account, BLMIS paid redemptions to its Northern Trust bank account in New York."). Further, Defendant used HSBC bank accounts in New York to "receive transfers from Harley." (*Id.* ¶ 65) ("KBC Investments directed all of its Harley redemption payments—totaling three payments over a four month period—to this HSBC Bank USA account in New York."). The Trustee has alleged that KBC knew it was investing in U.S. securities.

Where a defendant chooses to use a United States bank account, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

Further, the Trustee has alleged that KBC worked with affiliates in the United States to manage its investments with the Fairfild Funds in New. (Am. Compl. ¶ 67). The Trustee has

alleged that personnel of these affiliates attended meetings in New York with feeder fund personnel "on behalf and for the benefit of KBC Investments" where they "shared information learned about Harley, other Feeder Funds, Madoff, and BLMIS with KBC Investments." (*Id*. ¶ 68).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction over Defendant. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from Harley. (Am. Compl. ¶¶ 73–85, ECF No. 104). These allegations are directly related to their investment activities with BLMIS via Harley. *BNP Paribas S.A.,* 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant actively participated in this Court's litigation for over ten years. (*See, e.g.,* Mot. to

Withdraw the Reference, ECF No. 9). It is represented by U.S. counsel and intentionally invested in Harley. Further, Defendant used bank accounts in New York. (Am. Compl. ¶¶ 64–65). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendant used a New York bank account, the Trustee has met his burden of alleging jurisdiction over each transfer that received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the Harley subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $86 million in subsequent transfers made to Defendant by Harley. (Am. Compl. ¶ 2, ECF No. 104).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas,* 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas,* 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Harley is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.),* 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or

mediate transferees, and nothing in the statute requires a different result. *Id.* Defendant does not contest the avoidability of the initial transfers. Nor does Defendant contest the adequacy of the Trustee's pleadings under Rule 12(b)(6) with respect to the majority of the subsequent transfers. Defendant objects to the trustee's attempts to recover two transfers, one in the amount of $6 million and another in the amount of $30 million, which "were not asserted in the Initial Complaint, filed on October 6, 2011." (Mem. L. 23, ECF No. 110).

**Relation Back**

The Trustee's Amended Complaint alleges $36,000,000 in recently added transfers. (*See* Am. Compl. Ex. C, ECF No. 104). Defendant argues that these allegations of subsequent transfers are time-barred. (Mem. L. 23–26).

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Rule 15 "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *Picard v. Madoff* (*In re BLMIS*), 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("Peter Madoff") (quoting *Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*), 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)). Rule 15(c) should be "liberally construed." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983). This is because "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the

Page **14** of **16**

opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

New fraudulent transfer claims relate back to the original pleading where the newly alleged transfers occurred as part of the "same 'course of conduct'" as the originally alleged transfers. *Peter Madoff*, 468 B.R. at 633 (citing *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)). When examining "conduct" under Rule 15, courts typically analyze whether "the [recently added transfers] occurred as part of the same course of conduct as the transfers alleged in the original complaint," and whether "the original complaint gave sufficient notice to the defendants that the Trustee may sue for additional transfers that were part of the same course of conduct." *Hill v. Oria* (*In re Juliet Homes, LP*), Adv. No. 09-03429, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations omitted) (cleaned up).

The additional transfers relate back to the original complaint. The original complaint states: "the Trustee seeks to recover approximately $110,000,000 in subsequent transfers of Customer Property made to Defendant KBC. The subsequent transfers were derived from investments with BLMIS made by Harley." (Compl. ¶ 2, ECF No. 1). As to other possible transfers from Harley, the original complaint states that "[t]he Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Harley Initial Transfers, Harley Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers." (*Id.* ¶ 41).

As this Court stated about another defendant in a similar litigation, "Defendant[] had over 10 years notice that they would be asked to account for these transfers." *Picard. v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *13

(Bankr. S.D.N.Y. Aug. 6, 2021). KBC was adequately appraised that the Trustee intended to collect any additional subsequent transfers that were uncovered. The recently added transfers "relate back" and are properly brought.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: April 26, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**