**LATHAM & WATKINS LLP**
Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for* ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED, <br><br> Defendants. | Adv. Pro. No. 12-01697 (CGM) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ABN AMRO RETAINED NOMINEES (IOM) LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................3

I.    The Trustee's Own Allegations Conclusively Show That IOM Nominees Was Not
      A "Transferee" Under The Bankruptcy Code ....................................................3

      A.    The Complaint Establishes That IOM Nominees Was A Mere Conduit ................4

      B.    The Trustee Is Not Entitled To Discovery To Disprove His Own
            Allegations ..........................................................................................8

II.   IOM Nominees Is Not Subject To Personal Jurisdiction Here ...........................10

      A.    The Trustee Has Not Alleged That IOM Nominees Purposefully Engaged
            In In-Forum Conduct Related To The Trustee's Claims .......................................11

            1.    The PPM Does Not Confer Jurisdiction ....................................................11

            2.    The Use Of New York Bank Accounts Does Not Confer
                  Jurisdiction ...................................................................................13

            3.    IOM Nominees' Administrative Fees Do Not Confer Jurisdiction ..........14

            4.    The Subscription Agreements Alone Do Not Confer Jurisdiction ............15

      B.    The Exercise Of Personal Jurisdiction Does Not Comport With Fair Play
            And Substantial Justice ..........................................................................16

      C.    The Court Should Not Permit Additional Jurisdictional Discovery Or Give
            The Trustee The Opportunity To Amend The Complaint ...................................17

III.  The Subsequent Transfers Cannot Be Recovered Because The Complaint Pleads
      A Diligence Defense Under Section 550(b) ....................................................18

IV.   The Trustee Has Not Alleged That The Initial Transfers Are Avoidable........................20

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016) ........................................................................................14

*Amigo Foods Corp. v. Marine Midland Bank-New York*,
    61 A.D.2d 896 (1978) ......................................................................................13, 14

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) ...............................................................................................11

*Barnville v. Mimosa Cafe*,
    2014 WL 3582878 (S.D.N.Y. July 10, 2014) .........................................................9

*In re Bean*,
    251 B.R. 196 (E.D.N.Y. 2000) ..............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
    2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ..........................................................12

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) ..................................................................................18

*In re Big Apple Volkswagen, LLC*,
    2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ...........................................10

*In re Black & Geddes, Inc.*,
    59 B.R. 873 (Bankr. S.D.N.Y. 1986) .......................................................................7

*Coleman v. brokersXpress*,
    375 F. App'x 136 (2d Cir. 2010) ...........................................................................18

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................19

*In re Eaton Vance Mut. Funds Fee Litig.*,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005) ....................................................................18

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
    357 B.R. 257 (Bankr. S.D.N.Y. 2006) ...................................................................10

*In re Fairfield Sentry Ltd.*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................................15, 17

*In re Finley*,
  130 F.3d 52 (2d Cir. 1997)...................................................................................................3

*In re Glob. Crossing Ltd.*,
  385 B.R. 52 (Bankr. S.D.N.Y. 2008) ................................................................................1, 6

*Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*,
  33 B.R. 334 (Bankr. S.D.N.Y. 1983) .....................................................................................1

*In re Hooker Invs., Inc.*,
  155 B.R. 332 (Bankr. S.D.N.Y. 1993) ...................................................................................7

*In re Kaiser Steel Corp.*,
  110 B.R. 514 (D. Colo. 1990) .............................................................................................1, 6

*Licci v. Lebanese Canadian Bank*,
  984 N.E.2d 893 (2012)..........................................................................................13, 14, 15

*Milton v. Life Ins. Co. of, N.A.*,
  2012 WL 2357800 (N.D. Ala. June 20, 2012)......................................................................9

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)...............................................................................................14

*Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003)...............................................................................................7, 9

*Picard v. ABN AMRO Bank N.A.*,
  2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ....................................................19, 20

*Picard v. Banque Lombard Odier & Cie SA*,
  2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)..........................................................12

*Picard v. BSI AG (In re Bernard L. Madoff)*,
  2022 WL 17412774 (Bankr. S.D.N.Y. Dec. 2, 2022)...........................................................15

*Picard v. Bureau of Lab. Ins.*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) .................................................................................16

*Picard v. Hebrew Univ. of Jerusalem, et al.*,
  -- B.R. ----, 2023 WL 2667531 (Bankr. S.D.N.Y. Mar. 28, 2023) ..................................12, 13

*Picard v. Keller Family Trust (In re BLMIS)*,
  634 B.R. 39 (Bankr. S.D.N.Y. 2021) ...................................................................................10

*Picard v. LGT Bank*,
    2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023) ................................................7, 8, 10, 16

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ....................................................................................12

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ..........................................................................4, 18, 19

*Picard v. Miller*,
    631 B.R. 1 (Bankr. S.D.N.Y. 2021) .......................................................................................1, 5

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) .......................................................................................16

*Picard v. Naidot & Co., et al.*,
    2023 WL 3086753 (Bankr. S.D.N.Y. Apr. 25, 2023) ...............................................................8

*Picard v. Nelson*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) .................................................................................1, 6

*Picard v. Six Sis AG*,
    2023 WL 2998470 (Bankr. S.D.N.Y. Apr. 18, 2023) ...............................................................8

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
    2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023) ................................................................4, 8

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
    ECF No. 3 (Feb. 6, 2023) ..........................................................................................................4

*Picard v. UBS Europe SE*,
    2023 WL 2290822 (Bankr. S.D.N.Y. Feb. 28, 2023) ....................................................8, 11, 12

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ......................................................................................................17

*Rosenblatt v. City of New York*,
    2007 WL 2197835 (S.D.N.Y. July 31, 2007) ...........................................................................4

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ....................................................................................................18

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ...................................................................................4, 9

*Shah v. Helen Hayes Hosp.*,
    252 F. App'x 364 (2d Cir. 2007) .............................................................................................14

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015)...................................................................15, 16

*Veterans in Positive Action, Inc. v. Dep't of Veterans Affairs Veterans Health Admin.*,
  2013 WL 5597186 (S.D.N.Y. Sept. 30, 2013) ...........................................................14

*Walden v. Fiore*,
  571 U.S. 277 (2014)..................................................................................................12

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)......................................................................................13

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
  503 B.R. 348 (Bankr. S.D.N.Y. 2014) ....................................................................1, 4

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*,
  2004 WL 1328215 (S.D.N.Y. June 15, 2004) ...........................................................18

## STATUTES

11 U.S.C.
  § 550(a) ................................................................................................................1, 3, 4
  § 550(b)...........................................................................................................18, 19, 20

## RULES

Rule
  12(b) ..........................................................................................................................8
  12(b)(6) ......................................................................................................................8
  2004...........................................................................................................................9

## TREATISES

*Nominee*, Black's Law Dictionary (11th ed. 2019)..................................................6

Defendant ABN AMRO Retained Nominees (IOM) Limited, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited ("IOM Nominees") respectfully submits this reply memorandum of law in further support of Defendant's motion to dismiss the Trustee's Amended Complaint (ECF No. 141 ("Complaint" or "AC")).[1]

## PRELIMINARY STATEMENT

IOM Nominees is not aware of any case where a mere nominal owner who admittedly *distributed* the funds to the *beneficial* owner was held to be a transferee under Section 550(a). Instead, all of the courts to consider this issue have concluded that a nominal holder in IOM Nominees' position is a mere conduit. *See, e.g.*, *Picard v. Miller*, 631 B.R. 1 (Bankr. S.D.N.Y. 2021) (custodian who "distributed" funds "to the defendant" was a mere conduit); *Picard v. Nelson*, 610 B.R. 197 (Bankr. S.D.N.Y. 2019) ("IRA custodian [was] a mere conduit"); *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 382–83 (Bankr. S.D.N.Y. 2014) (dismissing claims against "nominees or depositories" who were "not the beneficial owners"); *In re Glob. Crossing Ltd.*, 385 B.R. 52, 60 (Bankr. S.D.N.Y. 2008) (transfer agent who forwarded entire transfer to clearinghouse was a mere conduit; *In re Kaiser Steel Corp.*, 110 B.R. 514, 521 (D. Colo. 1990) (nominee who "never held a beneficial interest in any [debtor] stock" was a conduit, not a transferee).    In fact, IOM Nominees is aware of only one case where both the principal/beneficial owner and its agent that distributed funds to it were both named as defendants, and that court dismissed the agent from the case.    *Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334 (Bankr. S.D.N.Y. 1983) (dismissing law firm that had distributed the relevant funds to its client, which was the beneficial owner).    The same result is warranted here.

---

[1] Capitalized terms not defined herein shall have the same meaning as in IOM Nominees' opening brief in support of its Motion To Dismiss, ECF No. 145 ("Motion" or "Mot.").

*First*, the Trustee's opposition brief (ECF No. 156 (the "Opposition" or "Opp.")) only underscores that IOM Nominees is a mere conduit, and that this case is unique from the others that the Court has decided. Not only do the Trustee's own allegations establish that IOM Nominees acted solely as an *agent* for, acted solely at the *direction* of, and *distributed the funds* to, the beneficial owner—he has in fact named that beneficial owner as a defendant here: Platinum All Weather Fund Limited ("Platinum"). While in other cases these facts might be the subject of discovery and so a motion to dismiss was premature, here the Trustee *already alleges them*. The Trustee is not entitled to obtain discovery to disprove his own allegations that IOM Nominees' actions were undertaken "***all on Platinum's behalf***." (*See, e.g.*, AC ¶ 59 (emphasis added).) Because the Complaint's allegations establish that IOM Nominees is not a transferee, it should be dismissed from this case.

*Second*, the Trustee's claims against IOM Nominees should also be dismissed because the Court does not have jurisdiction over it. Although it is the Trustee's burden to establish personal jurisdiction, nothing in the Complaint shows that IOM Nominees itself "purposefully" directed investments or any other activity into New York—instead the Complaint establishes that it followed the directions of a Cayman-based client to invest into a BVI-based investment fund. The Trustee's remaining jurisdictional allegations likewise are insufficient to confer jurisdiction, as numerous courts have held. Nor would the exercise of jurisdiction here—over an entity that at no point had any employees or maintained any documents in the United States—comport with traditional notions of fair play and substantial justice. The Court cannot, and should not, exercise personal jurisdiction here.

*Third*, the allegations on which the Trustee relies to show jurisdiction would (if attributed to IOM Nominees) also establish that IOM Nominees and its affiliates conducted extensive due

diligence, and received the transfers in question in good faith and for value.  Therefore, if there is

jurisdiction here, the transfers are shielded from recovery.

Finally, even if the Trustee had cleared all those hurdles, he has not pled allegations

sufficient to show that the initial transfers are avoidable.  His reliance on this Court's prior findings

in other cases does not rescue his deficient Complaint in *this* case.

Accordingly, this action should be dismissed against IOM Nominees.

## ARGUMENT

### I.    THE TRUSTEE'S OWN ALLEGATIONS CONCLUSIVELY SHOW THAT IOM NOMINEES WAS NOT A "TRANSFEREE" UNDER THE BANKRUPTCY CODE

The Trustee does not dispute that, under Section 550(a) of the Bankruptcy Code, he may

only recover customer property from a transferee—defined in this Circuit as "the one to whom the

funds ultimately should go."  *In re Finley*, 130 F.3d 52, 57 (2d Cir. 1997).  Nor does he dispute

that a mere conduit *cannot* be a transferee simply by virtue of having received the funds on behalf

of another.  (*See* Opp. at 18–19.)  Instead, the Trustee relies on two arguments in support, both of

which fail.  First, the Trustee claims that IOM Nominees is asserting a "premature" affirmative

defense, because the issue of whether IOM Nominees exercised "dominion and control" or was

the beneficial owner cannot be determined at the pleading stage.  (Opp. at 19, 21–24.)  While that

may often be true, here the Trustee's *own* allegations establish that IOM Nominees did not exercise

dominion and control and was not a beneficial owner of the shares or the funds received upon their

redemption.  Second, the Trustee argues he should be permitted to conduct discovery to explore

the relationship between IOM Nominees and Platinum.  (Opp. at 22–23.)  But this is backwards—

a plaintiff may not plead one thing and then seek discovery in order to disprove his own allegations.

Because the Trustee has pled facts showing IOM Nominees was a mere conduit without dominion

and control, and that Platinum was the beneficial owner, the complaint must be dismissed.[2]

### A.   The Complaint Establishes That IOM Nominees Was A Mere Conduit

The Trustee first argues that IOM Nominees should not be dismissed due to "the general rule that an affirmative defense cannot be established on a motion to dismiss." (Opp. at 20 (quoting *Picard v. Merkin*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) ("*Merkin*")).[3] But that rule does not prevent dismissal where, as here, the plaintiff has "pl[e]d itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense." *See Merkin*, 440 B.R. at 256; *see also Lyondell*, 503 B.R. at 381–83 (granting motions to dismiss claims against mere conduits); *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 315 (Bankr. S.D.N.Y. 1999) (granting motion to dismiss because "[a]s the Complaint stands, he was a mere conduit.").

There are no allegations that IOM Nominees exercised dominion and control or that it was the beneficial owner.  Instead, the Trustee argues that his pleadings are vague, and that dismissal is unwarranted because the Complaint "*does not allege* that Fortis IOM *did not have* the power to use the transferred funds for its own purposes." (Opp. at 21 (emphasis added).)  But that is *exactly* what it alleges—that Platinum, and only Platinum, was the beneficial owner of the shares, and

---

[2] In his Opposition, the Trustee focuses only on the transfers made on behalf of Platinum, so IOM Nominees does the same here.  Because he fails to address IOM Nominees' arguments about the transfers to beneficial owners Seven Seas and ABZ AssetX World Selection Ltd., he concedes that they were also transferred to and at the direction of those principals and that IOM Nominees' arguments apply equally to them (*see* Mot. at 9 n.6).  *See Rosenblatt v. City of New York*, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (plaintiff concedes issue by not responding to it in the opposition).

[3] This Court recently held that whether a recipient of funds exercised the required "dominion and control" is an affirmative defense and not part of the Trustee's burden to plead that the recipient is a "transferee" under Section 550(a).  *See Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, 2023 WL 118787, at *1 (Bankr. S.D.N.Y. Jan. 6, 2023).  As discussed herein, this Motion should be granted even if this is an affirmative defense.  But for avoidance of doubt, IOM Nominees believes that the Trustee bears the burden to allege dominion and control, an issue that is currently the subject of a request for interlocutory appeal.  *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, ECF No. 3 (Feb. 6, 2023).

IOM Nominees acted at the direction of its principal Platinum. In the Complaint and his previously-proffered allegations, the Trustee has alleged that:

- IOM Nominees was an "agent" acting as "administrator for Platinum's investments in the Fairfield Funds." (AC ¶ 59.)

- "Platinum, via its agent Defendant Fortis IOM, began investing in Fairfield Sentry in January 2007, receiving retrocession fees for these investments." (*Id.* ¶ 73.)

- The Subscription Agreement listed the "Subscriber" as "Fortis (Isle of Man) Nominees Limited re Platinum." (*Id.* ¶ 3.)

- The subscriptions represented "equity interests" held on Platinum's behalf as a beneficial shareholder in the Fairfield Funds. (*Id.* ¶¶ 73, 105.)

- IOM Nominees acted "all on Platinum's behalf." (*Id.* ¶¶ 3, 59.)

- IOM Nominees "conducted due diligence, completed subscription agreements and made redemption requests all on Platinum's behalf." (*Id.* ¶ 59.)

- "Platinum directed ABN IOM to execute a Fairfield Sentry subscription agreement on its behalf, wherein ABN IOM directed redemption payments from Fairfield Sentry to this Northern Trust International Banking Corporation account" (the "NT Account"). (ECF No. 98 ¶ 39.)

- "Platinum used [the NT Account] repeatedly—at least 8 times in a year—***to receive $103,541,099 in redemption payments*** from Fairfield Sentry." (*Id.* (emphasis added).)

This Court and others have previously held these and similar facts to be sufficient to prove that an entity was a mere conduit. For example, in *Picard v. Miller*, this Court held that an IRA custodian was a mere conduit because (1) it was "custodian of an [account] for the benefit of [a principal]," (2) it was "directed to invest with Madoff" by that principal, and (3) "[t]here [was] no genuine dispute that the funds ultimately went to the Defendant." 631 B.R. at 5–6, 14. The Court further supported its conclusion by noting that (4) "all three parties [the transferor, the conduit, and the transferee] [had been] present" in the case. *Id.* at 14 (the Trustee voluntarily dismissed the mere conduit from the case). The Complaint admits that *all four of these facts are true here*. And tellingly, Platinum itself does not dispute that it was the ultimate and beneficial owner of the

transfers or that it directed the investment in Fairfield. (*See generally* ECF No. 150.) *See also Nelson* 610 B.R. at 238 (IRA custodian was mere conduit because it was not free to "invest the funds in lottery tickets or uranium stock."); *Glob. Crossing*, 385 B.R. at 60 (transfer agent a mere conduit where the transfers "was not for [agent's] benefit" and it "forwarded the entire $20 million . . . for dividend payments to holders of preferred stock"); *Kaiser Steel*, 110 B.R. at 521 (entity with no "beneficial interest" in debtor's stock "was simply a financial intermediary, not a 'transferee'").[4] Because the Trustee alleges the facts that establish a mere conduit under this line of cases, dismissal based on his allegations is appropriate.

The Trustee advances several other arguments meant to cast doubt on his own allegations that IOM Nominees was a mere agent. All fail.

*First*, the Trustee characterizes IOM Nominees' role as a "nominee" as a mere matter of "nomenclature." (Opp. at 22.) But while the Trustee may not have used the term "nominee," IOM Nominees' legal name—*i.e.*, how it describes itself to the world—is certainly relevant, and he does not dispute that a nominee means an agent who "receives and distributes funds for the benefit of others." *Nominee*, BLACK'S LAW DICTIONARY (11th ed. 2019). That is exactly what the Complaint (and his prior pleadings) describe (*see, e.g.*, AC ¶ 59 (IOM Nominees as an "agent" acting "all on Platinum's behalf") ¶ 73 (Platinum invested in Fairfield "via its agent [ ] Fortis IOM"), ECF No. 98 ¶ 39 ("Platinum used [the NT Account] . . . to receive $103,541,099 in redemption payments")). Whatever word he prefers, the Complaint describes an entity that was never the beneficial owner of, and never had dominion and control over, its client's investments.

---

[4] The Trustee cites these cases for the proposition that whether an entity is a mere conduit should not be resolved at the pleading stage. (*See* Opp. at 24–25.) But his allegations do not raise questions of fact that discovery must resolve—if the Trustee proves his allegations in discovery, he will have *proven* that IOM Nominees is a mere conduit and not a transferee. *See infra* § I.B.

*Second*, the Trustee argues that he has "<u>no</u> visibility" into whether IOM Nominees exercised dominion and control over the transferred funds. (Opp. at 22–23 (emphasis in original).) But he had enough visibility to allege that the investments were on behalf of, and the redemptions were directed to, Platinum—and that IOM Nominees acted "all on Platinum's behalf." (*See* AC ¶¶ 55–59.) There is nothing unusual about a plaintiff having to plead facts despite having imperfect knowledge about the defendants—indeed, that is the normal course of the legal system. A motion to dismiss accepts those allegations as true. And where, as here, those allegations establish the elements of an affirmative defense, the plaintiff must live with the implications of his pleading. *See Off. Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

*Third*, the Trustee argues that he does not know the source of any administrative fees that IOM Nominees may have received in its role as Platinum's nominee, implying that the source of the fees could constitute proof of dominion and control. (Opp. at 21.) But there *are no allegations in the Complaint* that IOM Nominees received any fees. Moreover, the receipt of fees does not prevent a defendant from being a mere conduit. *See, e.g.*, *In re Hooker Invs., Inc.*, 155 B.R. 332, 341 (Bankr. S.D.N.Y. 1993) (defendant that accepted fee out of transferred funds was a mere conduit); *In re Black & Geddes, Inc.*, 59 B.R. 873, 875 (Bankr. S.D.N.Y. 1986) (defendant that deducted its commission before transferring funds to its client was a mere conduit). Thus, the source of the fees is irrelevant and not a basis to permit the Complaint to survive dismissal.

*Fourth*, the Trustee asserts that this case is "akin to" cases in which this Court held that "the Trustee has plausibly alleged that [defendant] exercised dominion and control over the" funds at issue. (Opp. at 25 (citing *Picard v. LGT Bank*, 2023 WL 2003960, at *9 (Bankr. S.D.N.Y. Feb. 14, 2023) ("*LGT Liechtenstein*")).) But those cases are distinguishable in crucial respects that

7

highlight why IOM Nominees in comparison is a mere conduit.  In *LGT Liechtenstein*, the defendant was not alleged to have signed the subscription agreements or participated in the investments at the express direction of, and on behalf of, its client, as is the case here.  2023 WL 2003960, at *9.  *See also Picard v. Six Sis AG*, 2023 WL 2998470, at *10 (Bankr. S.D.N.Y. Apr. 18, 2023) ("Six Sis has failed to even identify for whom they were allegedly acting as a conduit."); *Picard v. UBS Europe SE*, 2023 WL 2290822, at *10 (Bankr. S.D.N.Y. Feb. 28, 2023) ("*LGT Switzerland*") (same).  Likewise, in *Standard Chartered*, the Trustee alleged that defendants, and not their clients, "did all of the purchasing and redeeming of their investments in Fairfield Sentry and Fairfield Sigma," "reviewed and approved investments for their client," and that defendants' executive "was the 'gate keeper' and 'decision-maker' for all of the [] investment products." 2023 WL 118787, at *7.  And in *Picard v. Naidot & Co., et al.*, the complaint lacked any allegations that Naidot took direction from or acted on behalf of its clients, or that Naidot transferred the proceeds of the redemptions of shares in the Fairfield Funds to its clients, as the Trustee does here. 2023 WL 3086753, at *6–7 (Bankr. S.D.N.Y. Apr. 25, 2023).  Those cases are therefore inapposite.

### B.      The Trustee Is Not Entitled To Discovery To Disprove His Own Allegations

The Trustee argues that he is entitled to discovery in order to better understand the relationship between Platinum and IOM Nominees before he can articulate "IOM Nominees' overall role."  (Opp. at 22–24.)  But this brazen attempt to run away from his own pleading turns Rule 12(b) on its head.  To establish his right to discovery, the Trustee must first plead allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  But here, as shown above, his own allegations establish that IOM Nominees was *not* a transferee from whom he can recover.  He thus seeks a fishing expedition, not to prove his allegations, but to *disprove* them. This he may not do; regardless of who bears the burden to prove whether IOM Nominees was a "transferee," this is the very scenario that Rule 12(b)(6) was

8

designed to preclude.  *See Barnville v. Mimosa Cafe*, 2014 WL 3582878, at *3 (S.D.N.Y. July 10, 2014) (dismissing complaint and finding plaintiff not entitled to discovery to "disprove[] the express factual assertions in his complaint"); *Milton v. Life Ins. Co. of, N.A.*, 2012 WL 2357800, at *3 (N.D. Ala. June 20, 2012) (same).

In any event, the Trustee has already conducted what he has characterized as a "comprehensive investigation of the Fairfield Funds' direct and indirect investments through BLMIS, the Fairfield Sentry BLMIS Accounts, and the dealings between the Fairfield Funds and other BLMIS Feeder Funds, and BLMIS customers."  *Picard v. Fairfield Inv. Fund Ltd. et al.*, No. 09-1239, ECF No. 69 ¶ 20 (alleging the Trustee has reviewed "BLMIS account statements, correspondence and other records" along with "substantial review of third-party records and documents").  Indeed, many of the documents produced in discovery in that action are cited in the Complaint and other pleadings in this case.  (*See, e.g.*, AC ¶¶ 37 (BLMIS monthly account statements); 99 (details of transfers "[b]ased on the Trustee's investigation to date"); 102 (same).)  The Trustee also received Rule 2004 discovery from other Fortis entities, on which he relies to assert personal jurisdiction over IOM Nominees.  *See id.* ¶ 87.  This is far more discovery than an ordinary plaintiff would have at its disposal prior to filing a complaint, and yet complaints are routinely dismissed on the grounds that an affirmative defense appears on their face.  *See Coopers & Lybrand, LLP*, 322 F.3d at 154, 158; *Stratton Oakmont*, 234 B.R. at 315 (dismissing recipient of transfers because "[a]s the Complaint stands, he was a mere conduit.").  The Trustee had the benefit of all of that discovery when he alleged that IOM Nominees acted only as Platinum's agent, *supra* § I.A.  In light of the Trustee's concession that 1) IOM Nominees acted solely as Platinum's agent, 2) that IOM Nominees acted "all on Platinum's behalf," and (3) that Platinum "directed" all the relevant actions of IOM Nominees, his claim that "the Trustee has <u>no</u> visibility into the formal

relationship and agreements between Fortis IOM and co-defendant Platinum" (Opp. at 22) rings

hollow.[5]

The Trustee can only recover from one entity—and the transferee, Platinum, is already a

defendant in this case. *In re Bean*, 251 B.R. 196, 205 (E.D.N.Y. 2000), *aff'd*, 252 F.3d 113 (2d

Cir. 2001) (holding that "the trustee is entitled to only a single satisfaction" in avoidance actions)

(internal quotations and citations omitted).  There is no reason for IOM Nominees to be subjected

to discovery and the burden of continuing to defend itself in a foreign jurisdiction, when the

allegations establish it is a mere conduit and the actual transferee is already a defendant.

## II.    IOM NOMINEES IS NOT SUBJECT TO PERSONAL JURISDICTION HERE

The Trustee does not dispute that IOM Nominees is not subject to general jurisdiction in

New York or anywhere in the United States.  (*See* Opp. at 7 n.4.)  But he is equally unable to

establish specific jurisdiction over it.  This, as the Trustee concedes, is his burden; he must make

a *prima facie* showing that IOM Nominees "purposefully availed itself of the privilege of

conducting business in the forum" and engaged in in-forum conduct that is directly related to the

Trustee's claim,[6] and that the exercise of jurisdiction is reasonable under the circumstances.  (*See*

---

[5] The Trustee's cases (Opp. at 22–23) are inapposite. *See Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 357 B.R. 257, 267–68 (Bankr. S.D.N.Y. 2006) (finding discovery was appropriate due to factual disputes about which entity was the transferee); *In re Big Apple Volkswagen, LLC*, 2016 WL 1069303, at *16 (Bankr. S.D.N.Y. Mar. 17, 2016) (transfer was for defendant's "benefit directly" because it was made "in satisfaction of [defendant's] claim against the [d]ebtor"); *Picard v. Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 49 (Bankr. S.D.N.Y. 2021), *aff'd*, 2022 WL 4592898 (S.D.N.Y. Sept. 30, 2022), *and aff'd*, 2022 WL 7219262 (S.D.N.Y. Oct. 6, 2022) (defendant's "signature was used to endorse the checks and redirect them" for defendant's benefit).

[6] Relying on *LGT Liechtenstein*, the Trustee argues that he can establish personal jurisdiction as long as there is "an affiliation between the forum and the underlying controversy," regardless of whether his claim arises out of *defendant's* forum conduct.  (Opp. at 15.)  But even in that case, the Court focused on the magnitude of the defendant's own "alleged in-state conduct," 2023 WL 2003960, at *5; and there, unlike here, there were no allegations that the defendant's in-forum conduct was at the express direction of its principal.

Opp. at 7 (citing, *inter alia*, *LGT Switzerland*, 2023 WL 2290822 at *3).) The Trustee has not made such a showing, and is he not entitled to discovery to overcome this deficiency.

### A.  The Trustee Has Not Alleged That IOM Nominees Purposefully Engaged In In-Forum Conduct Related To The Trustee's Claims

The Trustee points to four so-called "contacts" to support his claim that IOM Nominees is subject to specific jurisdiction here: (i) that IOM Nominees agreed to be bound by a Private Placement Memorandum (PPM) "which made clear [the Fairfield Funds] business activities would be directed at New York"; (ii) that it "purposeful[ly]" used New York-based bank accounts in connection with the foreign investments made by its foreign client; (iii) that it charged that foreign client administrative fees; and (iv) that it executed subscription agreements that included a New York choice-of-law clause.  (*See* Opp. at 8.)  None of these alleged contacts—whether considered together or separately—are sufficient to confer jurisdiction over IOM Nominees.

### 1.  The PPM Does Not Confer Jurisdiction

The Trustee's reliance on the Fairfield PPM is misplaced, because he cannot point to any conduct that IOM Nominees undertook or agreed to undertake pursuant to its terms that would be sufficient to establish specific jurisdiction.  Tellingly, he relies entirely on allegations that the PPM provided that *other entities*—primarily BLMIS, Sentry, and Sigma—were to engage in conduct directed at New York.  (*See* Opp. 8–9 (referring to the conduct of BLMIS, Sentry, and Sigma pursuant to the PPM).)  But the Trustee cannot rely on "the unilateral activity of another party or a third person . . . [to] demonstrate the sufficiency of" IOM Nominees' contacts with New York and must instead provide non-conclusory allegations that *IOM Nominees* purposefully directed the investments.  (*See* Mot. at 20 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).)  At most, the Trustee alleges that IOM Nominees knew that those other entities would direct their conduct towards New York.  But any "fortuitous" contacts created through IOM

Nominees' interactions with these third parties is not sufficient for it to be "haled into court" here. *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *see also Picard v. Hebrew Univ. of Jerusalem, et al.*, -- B.R. ----, 2023 WL 2667531, at *5 (Bankr. S.D.N.Y. Mar. 28, 2023) (same).

Plaintiff argues that IOM Nominees "knowingly and intentionally directed monies to BLMIS in New York through Sentry for investment in BLMIS and the U.S. securities market." (Opp. at 9.) But this conclusory assertion is contradicted by the plethora of allegations in the Complaint that *Platinum* directed the investments. According to the Complaint, IOM Nominees: did not direct monies to New York (*see* AC ¶ 71 ("Platinum Management launched Platinum as a single-manager fund directing 100% of its assets to BLMIS through investments in BLMIS Feeder Funds"); did not make investment decisions (*see id.* ¶ 72 ("Platinum's business revolved around access to Madoff and the BLMIS Feeder Funds"); ¶ 73 ("Platinum, via its agent Defendant Fortis IOM, began investing in Fairfield Sentry in January 2007, receiving retrocession fees for these investments"); and did not create or negotiate any of the contacts at issue (*see id.* ¶ 85 ("Platinum representatives met with FGG representatives in New York to effectuate the transactions with the Fairfield Funds"). Thus, IOM Nominees is situated very differently from the defendants in the cases on which the Trustee relies, all of whom were expressly alleged to have directed investments on their own behalf. *Cf. In re Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("Defendant allegedly intended to invest in New York-based BLMIS, because of the value proposition offered by Mr. Madoff"); *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 118 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 76 (S.D.N.Y. 2012) (defendant invested in New York on its own behalf); *LGT Switzerland*, 2023 WL 2290822, at *3 (defendant "knowingly reached out to New York based FGG personnel to discuss its [own] investments in Fairfield Sentry"); *Picard v. Banque Lombard Odier & Cie SA*, 2022 WL 2387523, at *4 (Bankr. S.D.N.Y.

12

June 30, 2022) (defendant "directed its investments" towards New York).[7]  Unlike those cases, the PPMs provide no basis for jurisdiction here.

### 2.    The Use Of New York Bank Accounts Does Not Confer Jurisdiction

The Trustee also asserts that jurisdiction is appropriate due to IOM Nominees' "purposeful use of the New York banking system."  (Opp. at 11.)  This mischaracterizes the Trustee's own allegations, which fall well short of alleging "purposeful" conduct by IOM Nominees.  First, regardless of who held the NT Account in which redemptions were received (Opp. at 13 n.6), it was Platinum, not IOM Nominees, that directed its use.  *See* ECF No. 98 ¶ 39 ("*Platinum directed*" IOM Nominees to sign the Subscription Agreement and "*Platinum used*" the NT Account "to receive . . . redemption payments" (emphasis added)).  Moreover, it is the Trustee's burden to establish personal jurisdiction, *see Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016), and this ambiguity underscores that he has not carried his burden.

Indeed, the Trustee's allegations demonstrate that IOM Nominees' interaction with New York bank accounts was exactly the kind of "passive" conduct that cannot create jurisdiction under *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 899 (2012).  The Trustee has alleged that: (i) the subscription payments were directed to the HSBC account pursuant to the Subscription Agreement that IOM Nominees signed on *Platinum's* behalf (AC ¶¶ 74, 88 (emphasis added)) and that (ii) "*Platinum* used [the NT Account] . . . to receive . . . redemption payments." (ECF No. 98 ¶ 39 (emphasis added)).  IOM Nominees' position here is thus comparable to the defendant trust company in *Amigo Foods Corp. v. Marine Midland Bank-New York*, 61 A.D.2d 896, 896 (1978), *aff'd*, 46 N.Y.2d 855 (1979).  There, the First Department declined to exercise jurisdiction despite

---

[7] IOM Nominees is thus more akin to the defendants in *Hebrew University*, where this Court held that defendants who lacked control over the in-forum conduct of a third party did not purposefully avail themselves of the forum based on that party's conduct.  2023 WL 2667531, at *9.

the defendants' use of a correspondent account on behalf of a customer, holding that it "ha[d] passively and unilaterally been made the recipient of funds." *Id.* By contrast, none of the cases the Trustee cites involved a passive "agent" like IOM Nominees, facilitating a client's U.S. dollar transaction that *required* the use of a correspondent account. *Cf. Licci,* 984 N.E.2d at 901 (where defendant "could have routed the dollar transactions on behalf of [its client] elsewhere" its use of New York account "indicate[d] desirability and a lack of coincidence"); *Off. Comm. of Unsecured Creditors of Arcapia v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016) (defendant banks, and not their clients, "set the terms" of the transaction and the selection of New York accounts "*originated with* the [defendant banks]") (emphasis in original); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1 (N.Y. 2016) ("[T]he vendors' choice to deposit money in New York was precisely part of defendants' design").

### 3.    IOM Nominees' Administrative Fees Do Not Confer Jurisdiction

For the first time, the Trustee argues that administrative fees that IOM Nominees charged Platinum for its services are a basis to establish personal jurisdiction over IOM Nominees. (Opp. at 14.) But the Complaint does not allege that there were any such administrative fees,[8] and the Trustee's attempt to amend the complaint in his Opposition brief should be rejected. *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007); *see also Veterans in Positive Action, Inc. v. Dep't of Veterans Affairs Veterans Health Admin.,* 2013 WL 5597186, at *2 (S.D.N.Y. Sept. 30, 2013). There is no reason for the Court to consider the issue further.

Regardless, to use those unalleged fees as a means to establish personal jurisdiction, the Trustee must allege the existence of a "substantial relationship" between the fees and the transfers

---

[8] The paragraphs to which the Trustee cites in his Opposition merely refer to "significant revenue" "derived" by the "Defendants." (AC ¶¶ 69, 90; *see also id.* ¶ 78.) They do not specify what revenue, if any, IOM Nominees received.

at issue.  *See Licci*, 20 N.Y.3d at 339.  He has not done so.  Thus, this case is on all fours with *SPV*

*OSUS Ltd. v. UBS AG*, in that both IOM Nominees and its customer, Platinum, were located abroad

and the only connection between IOM Nominees and the United States was its provision of

administrative services in connection with its client's investments.  114 F. Supp. 3d 161, 170

(S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018).  There, the court held that there was no basis

for exercising personal jurisdiction "where the defendants are foreign banks alleged to have

provided services to foreign investment funds, acting entirely abroad and with only sporadic or

indirect contacts with the United States." *Id.*[9]  The same outcome is warranted here.

### 4.    The Subscription Agreements Alone Do Not Confer Jurisdiction

Finally, the forum selection clause in the Subscription Agreement does not supply the

missing contact sufficient to put the Trustee's otherwise deficient personal jurisdiction arguments

over the top.  The Trustee does not dispute that the Subscription Agreements did not "govern the

redemptions at issue" or that they cannot confer personal jurisdiction on their own.  (*See* Opp. at

11.)  That concession is dispositive.  As Judge Bernstein has held, the Subscription Agreements

are "irrelevant" to the Fairfield Liquidators' attempts to recover these transfers, and they were

equally irrelevant to the Trustee's attempts to recover the same monies.  *In re Fairfield Sentry Ltd*.,

2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018); *see also id.* ("Defendants' consent to

the Subscription Agreement does not constitute consent to personal jurisdiction[.]"); Mot. at 23–

24.  The Trustee's argument that the Subscription Agreements are nevertheless "relevant" to the

_____

[9] Citing *Picard v. BSI  AG (In re Bernard L. Madoff)*, 2022 WL 17412774, at *1 (Bankr. S.D.N.Y. Dec. 2, 2022), the Trustee argues that jurisdiction is not premised on the defendant having a "profit motive."  (Opp. at 14.)  But that opinion does not address whether a foreign defendant charging administrative fees to a foreign client to invest in an foreign fund somehow confers jurisdiction in New York.  Regardless, that misses the point—the fees were not alleged to have originated from New York, and thus cannot subject IOM Nominees to personal jurisdiction here.

jurisdictional analysis (Opp. at 11) is misguided.  In the cases on which he relies, the court considered the Subscription Agreements to be an indication of consent to personal jurisdiction only where the defendants were allegedly the beneficial owners of the investments in BLMIS and therefore were alleged to have purposefully established contacts in New York by directing their *own* funds here.[10]  *See Picard v. Bureau of Lab. Ins.*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) (subscription agreements relevant where Trustee sought to recover from alleged beneficial owner); *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022) (same).  That is not the case here, where IOM Nominees was an agent and nominee acting under the direction of Platinum.  *See* ECF No. 98 ¶ 39 ("Platinum directed ABN IOM to execute a Fairfield Sentry subscription agreement on its behalf.").  That is consistent with the Second Circuit's directive that when a defendant's contacts with the forum are limited (as IOM Nominees' surely are), the in-forum contact must be so substantial that the "plaintiff's injury was proximately caused by those contacts," *SPV*, 114 F. Supp. 3d at 169—and here the claim did not arise out of the Subscription Agreement.  Regardless, since none of the other jurisdictional allegations against IOM Nominees are persuasive, the minimal persuasive value that the Subscription Agreements might have is not enough to bring IOM Nominees within the jurisdiction of this Court.

## B. The Exercise Of Personal Jurisdiction Does Not Comport With Fair Play And Substantial Justice

Even if the Court were to find that IOM Nominees' contacts with New York were minimally sufficient to confer jurisdiction—and they are not—the Court should still decline to exercise specific jurisdiction over IOM Nominees because such exercise does not comport with

---

[10] In *LGT Liechtenstein*, this Court held that the subscription agreements were relevant to jurisdiction even though the defendants argued they were not the beneficial owners. *See* 2023 WL 2003960 at *5 n.2.  But the Trustee did not allege, as he does here, that those defendants had only executed the agreements on behalf of, and at the direction of, their principals.  *Id.* at *5.

"traditional notions of fair play and substantial justice." (Mot. at 25.) As discussed in the Motion, litigating in this forum—particularly into and through discovery—would place a substantial burden on IOM Nominees, because all of the witnesses and documentary evidence are located outside of the United States. (*See* Mot. at 25–26.) In arguing otherwise, the Trustee ignores those specific, practical obstacles and relies on generalized holdings from *In re Picard*, 917 F.3d 85 (2d Cir. 2019) and this Court's prior decisions (*See* Opp. at 16–18).

First, he suggests that the duration of this litigation somehow obviates the burden to IOM Nominees. (*See* Opp. at 16.) In so doing, he ignores that throughout this litigation he agreed to address other threshold issues first and allow IOM Nominees to preserve its ability to contest personal jurisdiction; indeed, those agreements were endorsed by this Court. (Mot. at 26–27.) The Trustee's argument would make such agreements worthless, which certainly flies in the face of fair play and substantial justice. Second, he again argues that IOM Nominees "irrevocably" submitted to jurisdiction in the Subscription Agreement. (Opp. at 17.) But, as explained above, that agreement is "irrelevant" to this litigation. *See Fairfield Sentry*, 2018 WL 3756343, at *12.

Again citing to other cases involving other defendants, the Trustee argues that New York has a strong interest in this dispute. But at no point does he explain why New York has a compelling interest to decide *this* action to recover *these* transfers from *this* Isle of Man defendant. (*See* Opp. at 17–18.) Nor does he articulate any reason why he cannot pursue these claims in the Isle of Man or any number of fora with a greater tie to the transfers. Under these circumstances, the exercise of personal jurisdiction is unreasonable, and IOM Nominees should be dismissed.

### C.    The Court Should Not Permit Additional Jurisdictional Discovery Or Give The Trustee The Opportunity To Amend The Complaint

The Court should also deny the Trustee's request for jurisdictional discovery (Opp. at 18) because he has not made "a prima facie showing of personal jurisdiction" for the reasons set forth

above. *See Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, 2004 WL 1328215, at *5 (S.D.N.Y. June

15, 2004). He has also not articulated, as he must, what additional discovery he believes he could

obtain that could overcome the deficiencies in his jurisdictional allegations and justify the exercise

of jurisdiction here. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)

(collecting cases). Nor is he entitled to yet another opportunity to amend the Complaint (*see* Opp.

at 18), having already amended once and after pursuing this case for over a decade. *See, e.g.*,

*Coleman v. brokersXpress*, 375 F. App'x 136, 137 (2d Cir. 2010); *Ruotolo v. City of New York*,

514 F.3d 184, 192 (2d Cir. 2008); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222,

242 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).

The exercise of jurisdiction is not warranted, and the proper remedy is dismissal.

## III.    THE SUBSEQUENT TRANSFERS CANNOT BE RECOVERED BECAUSE THE COMPLAINT PLEADS A DILIGENCE DEFENSE UNDER SECTION 550(B)

In his Opposition, the Trustee appears, wisely, to have abandoned any attempt to impute

the actions of other Fortis entities to IOM Nominees in order to establish jurisdiction or to

otherwise inflate the role of IOM Nominees beyond that of a mere conduit. To the extent that he

still seeks to do so, however, it is only proper that the Court also consider those allegations as proof

that IOM Nominees conducted a diligent inquiry into BLMIS and, therefore, has carried its burden

to show that it received the transfers at issue "for value, in good faith, and without knowledge of

the voidability of the transfer avoided." (Mot. at 27 (citing 11 U.S.C. § 550(b)).)

In any event, the Trustee adopts the same approach on this issue as he does on every other

issue in which he is charged with the implications of his own allegations—he claims that "good

faith," as set forth in Section 550(b), is an affirmative defense that cannot be resolved on a motion

to dismiss. (*See* Opp. at 25–28.) But this case falls within the "exception to the general rule,"

*Merkin*, 440 B.R. at 256, because the Trustee's allegations establish IOM Nominees' good faith.

Indeed, the Trustee has alleged that other Fortis entities twice "conducted due diligence visits with Madoff in New York" and that IOM Nominees "used the findings of these visits as support for approving transactions with BLMIS."  (AC ¶ 86.)

Tellingly, although the Trustee invokes the concept that the burden is on IOM Nominees to establish good faith, all of the cases on which he relies include at least *some* allegations that raise a factual dispute about the defendants' good faith.  *See, e.g.*, *Merkin*, 440 B.R. at 256 (factual dispute existed where "[c]omplaint [was] replete with contrary allegations that the Moving Defendants accepted the Initial Transfers in *bad faith*") (emphasis in original); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) (factual dispute existed where trustee alleged that "[d]efendants knew or should have known that the transfers were made with tainted funds").  Not so here, where the Complaint contains not a single allegation suggesting that IOM Nominees had any inkling of BLMIS's fraud, and the Trustee instead seeks to bootstrap his own lack of allegations to survive dismissal.  But no matter who bears the burden, the Trustee's allegations that IOM Nominees incorporated the due diligence of its affiliates into its decision-making is sufficient to establish its good faith under Section 550(b).  (*See* Mot. at 28–30.)

The Trustee also argues that whether the "for value" element of Section 550(b) has been satisfied should be decided "later in the litigation."  (Opp. at 28.)  But it is unclear why discovery on this point is necessary, unless the Trustee intends to use it to rebut his own allegation that the "Subsequent Transfers represent redemptions of equity interests by Defendants as shareholders in Fairfield Sentry and Fairfield Sigma."  (AC ¶ 105.)  As this Court has held:  "Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract."  *Picard v. ABN AMRO Bank N.A.*, 2020 WL 1584491 at *9 (Bankr. S.D.N.Y. Mar. 31, 2020).  And the Trustee has not so much as suggested that IOM Nominees

19

believed the shares were worthless when they were redeemed.  His assertion that resolving this element is inappropriate on a motion to dismiss is belied by the fact that many courts, including Judge Bernstein, have done so in the past.  *Id*.  The redemption of equity constitutes an exchange for value as a matter of law, and the transfers at issue here were received in good faith and for value pursuant to Section 550(b). [11]  On this ground alone, the Complaint should be dismissed.

## IV.    THE TRUSTEE HAS NOT ALLEGED THAT THE INITIAL TRANSFERS ARE AVOIDABLE

Finally, for the reasons set forth in Defendants' opening brief, the Trustee may not recover from IOM Nominees, because he has not alleged that the initial transfers are avoidable.  (*See* Mot. at 30–32.)  The Trustee has not met his pleading burden to show that the Fairfield Funds had actual knowledge of BLMIS's fraud, and therefore the transfers are protected by the safe harbor set forth in Section 546(e).  (*See* Mot. at 31 & n.22.)  Nor has he pled that the initial transfers were made with actual intent to hinder, delay, or defraud creditors.  Neither his reliance on the so-called "Ponzi scheme presumption"—the continuing application of which is very much in doubt—nor his cursory invocation of a "badges of fraud" analysis are sufficient to show avoidability pursuant to Section 548(a)(1)(A).  (*Id.* at 32.)  For these reasons and those set forth in Defendants' opening brief, the Trustee has no basis to recover the alleged subsequent transfers from IOM Nominees.

## <u>CONCLUSION</u>

For the reasons stated above and in the IOM Nominees' Motion, the Trustee's Amended Complaint should be dismissed as to the IOM Nominees, with prejudice.

---

[11]  The Trustee's puzzling assertion that "the Amended Complaint does not mention [IOM Nominees] exchanging shares for consideration," (Opp. at 28) is simply false.  The Complaint clearly states that IOM Nominees exchanged its equity interests (*i.e.*, shares) in the Fairfield Funds in exchange for the subsequent transfers (*i.e.*, monetary consideration).  (AC ¶ 105.)

Dated:  April 27, 2023
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By:   /s/ Christopher R. Harris

Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
Email: thomas.giblin@lw.com

*Attorneys for IOM Nominees*

21