Joshua E. Abraham
BUTZEL LONG, P.C.
477 Madison Avenue, Suite 1230
New York, New York 10022
(212) 374-5370
abraham@butzel.com
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>BANCO GENERAL, S.A., and BG VALORES, S.A., f/k/a WALL STREET SECURITIES, S.A.<br><br>Defendants. | Adv. Pro. No. 12-01048 (CGM) |

**ANSWER TO COMPLAINT AND JURY DEMAND**

Defendants Banco General, S.A., and BG Valores, S.A., f/k/a Wall Street Securities, S.A., (collectively, "Defendants") respond to the Complaint of Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff, as follows:

## GENERAL DENIAL

Except as expressly admitted herein, Defendants deny each and every allegation in the Complaint. Defendants state that the headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations of the headings and sub-headings in the Complaint are denied. In answering the Complaint's allegations, Defendants do not intend to waive, and do not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any allegation. To the extent it is later determined that a response is required to any allegation, Defendants deny any such allegation. Defendants expressly reserve the right to amend and/or supplement this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

### I. NATURE OF THE ACTION

1. This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

---

[1] Footnote 1 of the Complaint states: "SIPA § 78*lll*(4) defines 'Customer Property' as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." Defendants respectfully refer the Court to the quoted statute for a complete and accurate statement of its contents.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, the Defendants deny the allegations of this paragraph, except admit that the Trustee purports to bring this adversary proceeding as part of its continuing efforts to recover certain property.

2. With this Complaint, the Trustee seeks to recover approximately $9,422,956 in subsequent transfers of Customer Property made to the Banco General Defendants by Fairfield Sentry Limited ("Fairfield Sentry"), which was a Madoff feeder fund. Fairfield Sentry is currently in liquidation in the British Virgin Islands ("BVI"). It was a BVI company that had direct customer accounts with BLMIS's investment advisory business ("IA Business") for the purpose of investing assets with BLMIS. Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts.

**ANSWER**: The first sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the first sentence of the paragraph, except admit that the Complaint seeks to recover certain funds. The second sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of this paragraph and deny them on that basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of this paragraph and deny them on that basis.

3. When the Banco General Defendants received subsequent transfers of BLMIS Customer Property, the Banco General Defendants were part of a financial group that provided private and commercial banking services to Central and South American customers.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph, except admit that they provided banking and financial services.

## II. JURISDICTION AND VENUE

4. The Trustee brings this adversary proceeding pursuant to his statutory authority under SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3); sections 105(a), 544, 550(a), and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"); and the New York Fraudulent Conveyance Act (New York Debtor & Creditor Law) ("NYDCL") §§ 273–279 (McKinney 2001), to obtain avoidable and recoverable transfers received by the Banco General Defendants as subsequent transferees of funds originating from BLMIS.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph, except admit that the Trustee purports to bring this adversary proceeding to recover certain property.

5. This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791 (the "District Court

Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

**ANSWER**: Defendants admit the allegations of the first and second sentences of this paragraph. The third sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the third sentence of this paragraph.

6. The Banco General Defendants are subject to personal jurisdiction in this judicial district because they purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. The Banco General Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

7. By directing their investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund, the Banco General Defendants knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, the Banco General Defendants entered into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction, sent a copy of the subscription agreements to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. The Banco General Defendants also regularly communicated with their FGG account representatives located in

FGG's office in New York City. The Banco General Defendants thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER**: The first sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the first sentence of this paragraph. The allegations of the second sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the second sentence of this paragraph, except admit that they are parties to subscription agreements. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of this paragraph, but admit that they have communicated with a representative of Fairfield Sentry. The fourth sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the fourth sentence of this paragraph.

8. Defendant BG Valores is also subject to the jurisdiction of this Court because it has filed customer claims with the Trustee, thereby invoking the jurisdiction of this Court. The Trustee has designated Defendant BG Valores's customer claims as Claims # 011630, # 011631, and # 015470.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph, except admit that customer claims were filed with the Trustee.

9. The Banco General Defendants should reasonably expect to be subject to New York jurisdiction and are subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 302 (McKinney 2001) and Bankruptcy Rule 7004.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H),

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

11. Venue in this District is proper under 28 U.S.C. § 1409.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

## III. BACKGROUND

12. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the U.S. Securities and Exchange Commission ("SEC") commenced the District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis, except admit that Madoff was arrested on or about December 11, 2008, and that the SEC filed a complaint against Madoff and BLMIS.

13. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards as receiver for the assets of BLMIS.

**ANSWER**: Defendants respectfully refer the Court to the order issued by Judge Stanton on December 12, 2008, for a complete and accurate statement of its contents and otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

14. On December 15, 2008, under § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, under § 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

**ANSWER**: Defendants respectfully refer the Court to the application filed by SIPC alleged in this paragraph for a complete and accurate statement of its contents and otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

15. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c. removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under § 78eee(b)(4) of SIPA.

**ANSWER**: Defendants respectfully refer the Court to the order issued by Judge Stanton on December 15, 2008, for a complete and accurate statement of its contents and otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

16. By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

**ANSWER**: Defendants respectfully refer the Court to the orders issued by the Court on December 23, 2008, and February 4, 2009, for a complete and accurate statement of their contents and otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of this paragraph and deny them on that basis.

17. At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff

admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id*. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* On June 29, 2009, Madoff was sentenced to 150 years in prison.

**ANSWER**: Defendants respectfully refer the Court to the transcript of the March 12, 2009 plea hearing for a complete and accurate statement of its contents. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

18. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009, in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPasquale pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id*. at 46.

**ANSWER**: Defendants respectfully refer the Court to the transcript of the August 11, 2009 plea hearing for a complete and accurate statement of its contents. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

## IV. TRUSTEE'S POWERS AND STANDING

19. As a Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of

marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER**: The first sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second and third sentences of this paragraph and deny them on that basis. The allegations of the fourth and fifth sentences of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the fourth and fifth sentences of this paragraph and deny them on that basis.

20. Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

21. Under SIPA §§ 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

22. The Trustee has standing to bring these claims under § 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

## V. <u>THE DEFENDANTS</u>

23. Defendant Banco General is a corporation organized under the laws of Panamá that maintains a place of business at Calle Aquilino de la Guardia y Avenida Rogelio Alfaro, Apartado Postal 0819-09280, Panamá, República de Panamá.

**ANSWER**: Defendants admit the allegations of this paragraph.

24. Defendant BG Valores, f/k/a Defendant Wall Street Securities S.A., is a registered broker-dealer organized under the laws of Panamá that maintains a place of business at Calle Aquilino de la Guardia y Avenida Rogelio Alfaro, Apartado Postal 0819-09280,

Panamá, República de Panamá. Defendant BG Valores is a subsidiary of Defendant Banco General.

**ANSWER**: Defendants admit the allegations of this paragraph.

## VI. THE PONZI SCHEME

25. BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, chief executive officer, and sole owner, operated BLMIS together with several of his friends and family members. BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units: market making, proprietary trading, and the IA Business.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

26. Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100")—a collection of the 100 largest publicly traded companies. Madoff claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted that he would carefully time purchases and sales to maximize value, and BLMIS customers' funds would, intermittently, be out of the equity markets.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

27. The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts. Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS customers that when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills. Madoff also told customers that he would enter and exit the market between six and ten times each year.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

28. BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy. He further admitted that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts. In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities. Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

**ANSWER**: Defendants respectfully refer the Court to the transcript of the March 12, 2009 plea hearing for a complete and accurate statement of its contents. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

29. Prior to his arrest, Madoff assured clients and regulators that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

30. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme. The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

**ANSWER**: The allegations of the first sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second and third sentences of this paragraph and deny them on that basis.

31. The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

32. It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

33. Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

34. Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme. In early December 2008,

BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

35. Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**ANSWER**: The allegations of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis.

## VII. THE TRANSFERS

36. Fairfield Sentry received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to the Banco General Defendants.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

## A. INITIAL TRANSFERS FROM BLMIS TO FAIRFIELD SENTRY

37. The Trustee filed an adversary proceeding against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

**ANSWER**: Defendants admit that the Trustee filed an action in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.,* Adv. Pro. No. 09- 01239 (BRL), and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph and deny them on that basis. The second sentence of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the second sentence of this paragraph. Defendants further object to the Trustee's purported attempt to incorporate by reference the allegations contained in a 798-paragraph complaint from a different proceeding to which Defendants are not a party regarding matters not relevant to this action without any attempt to identify which allegations may be relevant in this action, if any. Defendants have no obligation to respond to the allegations in that complaint. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of such allegations and deny them on that basis.

38. During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the second sentence of this paragraph.

39. The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no

response is required. To the extent a response is required, Defendants deny the allegations of the second sentence of this paragraph.

40. The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of this paragraph and deny them on that basis. The allegations of the second sentence of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of the second sentence of this paragraph.

41. The Fairfield Sentry Six Year Initial Transfers, the Fairfield Sentry Two Year Initial Transfers, and the Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." Charts setting forth these transfers are attached as Exhibits A and B.

**ANSWER**: Defendants deny the allegations of the first sentence of this paragraph, except admit that the term "Fairfield Sentry Initial Transfers" is defined as set forth in this sentence. Defendants deny the allegations of the second sentence of this paragraph, except admit that Exhibits A and B are attached to the Complaint and respectfully refer the Court to those exhibits for a complete and accurate statement of their contents.

42. Pursuant to the Bankruptcy Court's June 7 and June 10, 2011 orders, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, and others (the "Settlement Agreement"). As part of the Settlement Agreement, on July 13, 2011, the Bankruptcy Court entered a consent judgment granting the Trustee a judgment in the amount of $3,054,000,000. Under the terms of the Settlement Agreement, Fairfield Sentry is obligated to pay $70,000,000 to the Trustee for the benefit of the consolidated BLMIS estate.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and deny them on that basis, except admit that the Bankruptcy Court approved a settlement among certain parties including the Trustee and Fairfield Sentry and that Fairfield Sentry is obligated to pay some amount to the Trustee. The Defendants respectfully refer the Court to the Settlement Agreement and the June 7, 2011, June 10, 2011, and July 13, 2011 orders referenced in this paragraph for a complete and accurate statement of their contents.

### B. SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO DEFENDANT BG VALORES

43. A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant BG Valores and is recoverable from Defendant BG Valores pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $8,240,499 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant BG Valores (the "Fairfield Sentry Low Volatility Subsequent Transfers"). A chart

setting forth the presently known Fairfield Sentry Low Volatility Subsequent Transfers is attached as Exhibit C.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph, except admit that Exhibit C is attached to the Complaint and respectfully refer the Court to that exhibit for a complete and accurate statement of its contents.

44. The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-BG Valores Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants respond as follows: Defendants deny the allegations of this paragraph, except lack knowledge or information sufficient to form a belief about the truth of the allegations that the Trustee's investigation is ongoing and deny them on that basis.

## C. SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO DEFENDANT BANCO GENERAL

45. A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Banco General and is recoverable from Defendant Banco General pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $1,182,457 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield

Sentry to Defendant Banco General (the "Fairfield Sentry Low Volatility Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Low Volatility Subsequent Transfers is attached as Exhibit D.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph, except admit that Exhibit D is attached to the Complaint and respectfully refer the Court to that exhibit for a complete and accurate statement of its contents.

46. The Trustee's investigation is on-going and the Trustee reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield Sentry-Banco General Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants respond as follows: Defendants deny the allegations of this paragraph, except lack knowledge or information sufficient to form a belief about the truth of the allegations that the Trustee's investigation is ongoing and deny them on that basis.

47. The Fairfield Sentry-BG Valores Subsequent Transfers and the Fairfield Sentry-Banco General Subsequent Transfers are collectively defined as the "Fairfield Sentry Subsequent Transfers."

**ANSWER**: Defendants admit that the term "Fairfield Sentry Subsequent Transfers" is defined as set forth in this sentence. No response is otherwise required to the allegations of this

paragraph. To the extent a response is required, Defendants deny the allegations of this paragraph.

**COUNT ONE**
**RECOVERY OF SUBSEQUENT TRANSFERS –**
**11 U.S.C. §§ 550 AND 551 AND NYDCL § 278**

48. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

**ANSWER**: Defendants incorporate and reassert their responses to the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

49. Defendant BG Valores received the Fairfield Sentry-BG Valores Subsequent Transfers, totaling approximately $8,240,499, and Defendant Banco General received the Fairfield Sentry-Banco General Subsequent Transfers, totaling approximately $1,182,457 (collectively, as defined above, the “Fairfield Sentry Subsequent Transfers”). The Fairfield Sentry Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

**ANSWER**: The allegations of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

50. Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Banco General Defendants.

**ANSWER**: The allegations of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

51. The Banco General Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers.

**ANSWER**: The allegations of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

52. As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Banco General Defendants recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**ANSWER**: The allegations of this paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of this paragraph.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny that the Trustee is entitled to his requested relief or to any other relief.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff. In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, Defendants hereby preserve each and every defense at law, in equity, or otherwise, available under federal and state law, including common law. Further, Defendants reserve the right to amend this Answer to assert any other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so. These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE

### Bankruptcy Code Safe Harbor

### (11 U.S.C. § 546(e))

The Trustee's claims are barred, in whole or in part, because the alleged subsequent transfers to Defendants, if any, may not be recovered because the alleged initial transfers, if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e).

## SECOND AFFIRMATIVE DEFENSE

### No Customer Property

### (15 U.S.C. § 78fff-2(c)(3))

The Trustee's claims are barred, in whole or in part, because any property that Defendants received from Fairfield Sentry was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Fairfield Sentry, and therefore any such property is not recoverable by the Trustee from the Defendants.

**THIRD AFFIRMATIVE DEFENSE**

**For Value, in Good Faith, and Without Knowledge of Voidability**

**(11 U.S.C. § 550(b))**

The Trustee's claims are barred, in whole or in part, because Defendants took any funds it received from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of any alleged initial transfers from BLMIS to Fairfield Sentry, and thus the alleged transfers to the Defendants, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

**FOURTH AFFIRMATIVE DEFENSE**

**Lack of Subject Matter Jurisdiction**

**(U.S. Const. art. III; Fed. R. Civ. P. 12(b)(l); Fed. R. Bankr. P. 7012(b))**

The Trustee's claims are barred, in whole or in part, because this Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

**FIFTH AFFIRMATIVE DEFENSE**

**Failure to State a Claim**

**(Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))**

The Trustee's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted, including for each of the reasons stated in Defendants' Motion to Dismiss the Complaint filed in this adversary proceeding.

**SIXTH AFFIRMATIVE DEFENSE**

**Personal Jurisdiction**

**(Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012(b))**

The Trustee's claims are barred, in whole or in part, because this Court lacks personal jurisdiction over Defendants, and Defendants have not consented to a decision by this Court or to this Court's authority to hear and determine this action.

**SEVENTH AFFIRMATIVE DEFENSE**

**Initial Transfer Not Avoided**

**(11 U.S.C. § 550(a))**

The Trustee's claims are barred, in whole or in part, because the Trustee may not recover the alleged transfers from Fairfield Sentry to Defendants, if any, because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sentry.

**EIGHTH AFFIRMATIVE DEFENSE**

**No Ponzi Scheme Presumption**

The Trustee's claims are barred, in whole or in part, because the Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from Defendants were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

**NINTH AFFIRMATIVE DEFENSE**

**Defendants as Initial Transferee-Mere Conduit Defense**

The Trustee's claims are barred, in whole or in part, because Fairfield Sentry was a mere conduit, and consequently, any claimed transfers were initial transfers from BLMIS to Defendants.

**TENTH AFFIRMATIVE DEFENSE**

**Fairfield Sentry as Initial Transferee-Mere Conduit Defense**

In the alternative, the Trustee's claims are barred, in whole or in part, because Defendants were not transferees of any transfers claimed by the Trustee to be subsequent transfers.

**ELEVENTH AFFIRMATIVE DEFENSE**

**New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

**TWELFTH AFFIRMATIVE DEFENSE**

**Section 278(1) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**Section 278(2) of New York Debtor and Creditor Law**

The Trustee's claims are barred, in whole or in part, because the alleged Fairfield Sentry Initial Transfers were taken, if at all, without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**Sufficient SIPC Funds**

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**Failure to Mitigate**

The Trustee's claims are barred, in whole or part, because the Trustee or Plaintiff has failed to mitigate, minimize or avoid damages, if any.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**British Virgin Island Proceedings**

The Trustee's claims are barred, in whole or in part, based upon rulings, judgments, orders, or decisions entered in the liquidation proceedings of Fairfield Sentry before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands, including any related appellate rulings, judgments, orders, or decisions.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### No Interest

The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### Statute of Limitations

The Trustee's claims are barred, in whole or in part, by the statute of limitations.

## NINETEENTH AFFIRMATIVE DEFENSE

### Estoppel

The Trustee's claims are barred, in whole or in part, by estoppel.

## TWENTIETH AFFIRMATIVE DEFENSE

### Unreasonable Delay / Laches

The Trustee's claims are barred, in whole or in part, because the delay in bringing and prosecuting his claim, which was brought more than a decade ago, lay dormant for years and concerns alleged transfers made nearly 20 years ago, is unreasonable and unfairly prejudices the Defendants' ability to defend themselves, including, without limit, with respect to any claim by the Trustee for interest accruing from after the date of the filing of Complaint.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**Violation of Due Process**

**(U.S. Const. Amend. V)**

The Trustee's claims are barred, in whole or in part, to the extent the doctrine of law of the case has been applied to Defendants based on rulings made in other adversary proceedings to which they were not a party and in which they did not participate, which violates Defendants' right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**Single Satisfaction**

**(11 U.S.C. § 550(d))**

The Trustee's claims are barred, in whole or in part, because, pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent transfer from Defendants to the extent he has recovered the amount of the initial transfers from Fairfield Sentry or any other immediate or mediate transferee, and the amount of the avoided initial transfers is included in the alleged Customer Property that the Trustee alleges Defendants received.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**Preservation of Rights**

**(11 U.S.C. § 502(h))**

To the extent the Trustee recovers from Defendants, Defendants reserve their right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

**Double Recovery**

The Trustee's claims are barred, in whole or in part, to the extent that any other entity recovers from Defendants based on the conduct alleged in the Complaint in settlement or otherwise, because the Trustee is not entitled to double recovery, nor should Defendants be subject to recovery of identical funds from two separate entities.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Defendants demand a trial by jury on all issues that may be tried by a jury.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Defendants do not consent to entry of final orders or judgment by the Bankruptcy Court.

## DEFENDANTS' REQUEST FOR RELIEF

WHEREFORE, the Defendants demand judgment dismissing the Complaint with prejudice, together with an award of attorneys' fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: New York, New York
May 1, 2023

BUTZEL LONG, P.C.

By: */s/ Joshua E. Abraham*

Joshua E. Abraham
477 Madison Avenue, Suite 1230
New York, New York 10022
Telephone: (212) 347-5370
abraham@butzel.com

*Attorneys for Defendants Banco General, S.A., and BG Valores, S.A., f/k/a Wall Street Securities, S.A.*