**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>            Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>           Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>           Debtor. | |

**TRUSTEE'S TWENTY-NINTH INTERIM REPORT**
**FOR THE PERIOD OCTOBER 1, 2022 THROUGH MARCH 31, 2023**

# TABLE OF CONTENTS

**Page**

I. EXECUTIVE SUMMARY .................................................................................................1

II. BACKGROUND ...........................................................................................................3

III. FINANCIAL CONDITION OF THE ESTATE ......................................................3

IV. CLAIMS ADMINISTRATION ...................................................................................4

    A. Claims Processing ...............................................................................................4

        i. Customer Claims ...................................................................................4

        ii. General Creditor Claims .......................................................................5

        iii. The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process ....................................................................................5

        iv. The Hardship Program ..........................................................................6

    B. Objections To Claims Determinations................................................................6

    C. Settlements Of Customer Claims Disputes.........................................................8

V. PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ...........8

    A. Net Equity Dispute ..............................................................................................8

    B. Time-Based Damages .......................................................................................10

    C. "Customer" Definition ......................................................................................11

    D. Inter-Account Transfers ...................................................................................12

    E. Profit-Withdrawal Issue ...................................................................................13

VI. LITIGATION ...............................................................................................................16

    A. The District Court—Motions to Dismiss Heard by Judge Rakoff.....................16

    B. Good Faith Actions ...........................................................................................16

        i. Resolution of Good Faith Avoidance Actions ...........................................16

        ii. Trial-Related Motion Practice .............................................................17

            (a) Sage Actions ................................................................................17

            (b) RAR Entrepreneurial Fund Ltd. Action .........................................18

    C. Bad Faith Actions .............................................................................................20

        i. Picard v. Avellino & Bienes ................................................................21

    D. Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees .............22

        i. Extraterritoriality.................................................................................22

        ii. Good Faith Appeal ..............................................................................23

            (a) Procedural Background on Good Faith Defense Under Sections 548(c) and 550 ....................................................................23

    E. BLMIS Feeder Fund Actions.............................................................................30

        i. Picard v. Fairfield Greenwich ............................................................30

        ii. The HSBC Action ................................................................................40

**TABLE OF CONTENTS**
(continued)

|  |  |  |  |
|---|---|---|---|
|  | iii. | The UBS Action | 41 |
|  | iv. | Picard v. Square One | 45 |
|  | v. | Picard v. Legacy | 47 |
| F. | Subsequent Transfer Actions | | 50 |
|  | i. | Picard v. Citibank, N.A., et al. | 52 |
|  | ii. | Picard v. Natixis, et al. | 54 |
|  | iii. | Picard v. Nomura International PLC | 56 |
|  | iv. | Picard v. Merrill Lynch International. | 59 |
|  | v. | Picard v. ABN AMRO Bank N.V. | 60 |
|  | vi. | Picard v. ABN AMRO Bank (Ireland) Ltd., et al. | 64 |
| VII. | INTERNATIONAL INVESTIGATION AND LITIGATION | | 68 |
| A. | Austria | | 68 |
| B. | BVI | | 68 |
| C. | Cayman Islands | | 69 |
| D. | England | | 69 |
| E. | France | | 69 |
| F. | Ireland | | 69 |
| G. | Israel | | 69 |
|  | i. | Picard v. Magnify Inc. | 69 |
| H. | Liechtenstein | | 72 |
| I. | Switzerland and Luxembourg | | 72 |
| VIII. | RECOVERIES AND CONTINGENCIES | | 72 |
| A. | Recoveries Accomplished During Prior Report Periods | | 72 |
| B. | Recoveries Accomplished During This Report Period | | 72 |
| IX. | THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS | | 73 |
| A. | The Customer Fund | | 73 |
| B. | The General Estate | | 75 |
| X. | FEE APPLICATIONS AND RELATED APPEALS | | 75 |
| A. | Objections to Prior Fee Applications | | 75 |
| B. | Fortieth Fee Application | | 76 |
| C. | Forty-First Fee Application | | 76 |
| XI. | CONCLUSION | | 77 |

**TO THE HONORABLE CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and

collectively, the "Debtors"), respectfully submits his Twenty-Ninth Interim Report (this

"Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an

Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief

entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the

Claims Procedures Order, the Trustee shall file additional interim reports every six months. This

Report covers the period between October 1, 2022 and March 31, 2023 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked tirelessly for over fourteen years to recover customer

property and distribute it to BLMIS customers who have not fully recovered the money they

deposited with BLMIS. The Trustee has successfully recovered over $14.566 billion through

March 31, 2023.

2.    On January 10, 2023, this Court approved the Trustee's fourteenth allocation and

distribution to customers, in which the Trustee allocated approximately $44 million to the

Customer Fund.  On February 24, 2023, the Trustee distributed more than $49 million on

allowed claims relating to 780 accounts, or 0.265% of each customer's allowed claim, unless the

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."
[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

claim was fully satisfied. When combined with the prior thirteen distributions, and $849.9 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[3] the Trustee has distributed approximately $14.38 billion to BLMIS customers through the Report Period, with 1,517 BLMIS accounts fully satisfied, or 70.717% of each customer's allowed claim. The 1,517 fully satisfied accounts represent over 66% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers. All allowed customer claims up to approximately $1.707 million have been fully satisfied.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various other special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. This fraud involved many billions of dollars and thousands of people and entities located across the world. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

---

[3] SIPC has advanced $849,473,412.47 through the Report Period to the Trustee to pay allowed claims. The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[4]

## III.      FINANCIAL CONDITION OF THE ESTATE

7.      No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims. Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); April 1, 2018 through September 30, 2018 (the "Twentieth Interim Report") (ECF No. 18146); October 1, 2018 through March 31, 2019 (the "Twenty-First Interim Report") (ECF No. 18716), April 1, 2019 through September 30, 2019 (the "Twenty-Second Interim Report") (ECF No. 19097); October 1, 2019 through March 31, 2020 (the "Twenty-Third Interim Report") (ECF No. 19502); April 1, 2020 through September 30, 2020 (the "Twenty-Fourth Interim Report") (ECF No. 19896); October 1, 2020 through March 31, 2021 (the "Twenty-Fifth Interim Report") (ECF No. 20480); April 1, 2021 through September 30, 2021 (the "Twenty-Sixth Interim Report") (ECF No. 20821); October 1, 2021 through March 31, 2022 (the "Twenty-Seventh Interim Report") (ECF No. 21473); and April 1, 2022 through September 30, 2022 (the "Twenty-Eighth Interim Report") (ECF No. 22500).

litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

8.      A summary of the financial condition of the estate as of March 31, 2023 is provided in Exhibit A attached hereto.

9.      This summary reflects cash of $40,924,174.68, short term investments, money market funds, savings accounts and other investments, including alternative investments of $462,417,300, and short-term United States Treasuries in the principal amount of $266,261,029 *See* Exhibit A, page 3, note (3) and page 5, notes (4) and (5).

10.     As detailed in Exhibit A, as of March 31, 2023, the Trustee requested and SIPC advanced $3,164,950,495.67, of which $849,473,412.47 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $2,315,477,083.20 was used for administrative expenses. *See* Exhibit A, page 1.

## IV.     CLAIMS ADMINISTRATION

### A.     Claims Processing

#### i.      Customer Claims

11.     During the Report Period, there were no new customer claims allowed, bringing the total amount of allowed claims as of March 31, 2023 to $19,493,795,916.92. The Trustee has paid or committed to pay $849,868,412.47 in cash advances from SIPC through March 31, 2023.[5] This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

12.     As of March 31, 2023, there were 11 customer claims relating to 7 customer accounts that were "deemed determined," meaning the Trustee has instituted litigation against

_____

[5] See footnote 2.

those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such customer claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.    General Creditor Claims

13.    As of March 31, 2023, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process

14.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15.    The Trustee Website (www.madofftrustee.com) allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date

information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

16.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2023, the Trustee and his professionals had received and responded to over 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.    In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.    The Hardship Program

18.    This SIPA liquidation proceeding had offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of March 31, 2023, there were 191 Hardship Applications that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. After nearly 12 years, the Hardship Program was officially terminated.

### B.    Objections To Claims Determinations

19.    As of March 31, 2023, 1,729 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court.

These objections relate to 3,252 unique customer claims and 698 customer accounts. As of March 31, 2023, 22 docketed objections (related to 17 unique customer claims and 14 customer accounts) remained.

20.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

21.     The Trustee departed from past practice in SIPA liquidation proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

22.     As part of his ongoing efforts to resolve pending objections, the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court. Prior disputes are described in the Trustee's previous reports.

C.     **Settlements Of Customer Claims Disputes**

23.     As of March 31, 2023, the Trustee had reached agreements relating to 1,175 customer accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

A.     **Net Equity Dispute**

24.     For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

25.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "Net Equity Decision"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

26.     Under the *Net Equity Decision*, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that

accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

27.     The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

28.     Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id*. at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and

arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations."
*Id*. at 235.

29.     A petition for panel rehearing, or, in the alternative, for rehearing en banc was
denied. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551).
Three petitions for certiorari were filed with the Supreme Court, which were denied. *Ryan v.
Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also
dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard,* 132 S. Ct. 2712 (2012).

**B.     Time-Based Damages**

30.     Following the litigation regarding the Net Investment Method, the Trustee filed a
motion to affirm his net equity calculations and denying requests for "time-based damages."
(ECF Nos. 5038, 5039). The Trustee took the position that customers were not entitled to an
inflation-based adjustment to their allowed customer claims. This Court agreed. *Sec. Inv'r Prot.
Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr.
S.D.N.Y. 2013) (the "Time-Based Damages Decision"); *see also* ECF No. 5463.

31.     On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's
decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See
In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held
that "an interest adjustment to customer net equity claims is impermissible under SIPA's
scheme." *Id*. at 83.

32.     Under the Second Circuit's decision, a customer's net equity claim, calculated in
accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest.
The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's
intended protections and is inconsistent with SIPA's statutory framework." *Id*. at 79. Nor does
SIPA provide for compensation related to any opportunity cost of the use of such money during

the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id.* at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

33.    The Supreme Court denied the petition for certiorari filed. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

## C.    <u>"Customer" Definition</u>

34.    In this SIPA liquidation proceeding, the Trustee discovered that many claimants did not invest directly with BLMIS, but through an intermediary such as a "feeder fund." The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS, the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

35.    On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285 (Bankr. S.D.N.Y. 2011). The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds. The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

36.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

37.     On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

38.     On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the Bankruptcy Court. *See Kruse v. Sec. Inv'r Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013). No petitions for certiorari were filed.

**D.      Inter-Account Transfers**

39.     The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. *The Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers maintained more than one BLMIS account and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

40.     On December 8, 2014, the Bankruptcy Court issued a decision upholding the Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Inv'r*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id*. at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

41.     On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's Net Equity Decision and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d at 238 n.7 (2d Cir. 2011).

42.     On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

43.     No petitions for certiorari were filed.

**E.     Profit-Withdrawal Issue**

44.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that

appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

45.    Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

46.    Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

47.    An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the profit withdrawal transactions were properly treated as debits under the Net Investment

Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019) 18 Civ. 7449 (PAE). The District Court found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

48.    On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. On December 27, 2019, appellants filed their opening brief repeating their claims that this Court failed to apply the Federal Rules of Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not have ratified the transactions in his BLMIS account that occurred before 1992.

49.    The Trustee and SIPC's opposition briefs were filed on April 17, 2020. Appellants filed their reply on May 27, 2020, and oral argument was held on September 21, 2020.

50.    On October 6, 2020, the Second Circuit issued its Summary Order upholding the District Court's judgment affirming this Court's decision that the Trustee properly treated PW transactions as debits to BLMIS customer accounts. Summary Order, *In re: Bernard L. Madoff Investment Securities LLC*, 830 Fed.Appx. 669 (2020). The Second Circuit found that the District Court properly upheld this Court's admission of the BLMIS books and records as within the "permissible bounds of its discretion." *Id*. at 4. Further, the Second Circuit found no clear error as to this Court's factual determination that Blecker "ratified the PW Transactions whether as a result of the 10-day clause in the 1992 customer agreements (for PW Transactions postdating those agreements), or through his 23 years-long, knowing acceptance of the PW

Transactions and the corresponding reductions to his BLMIS accounts" prior to the 1992 customer agreements. *Id.* The Second Circuit found all other arguments by Mr. Blecker without merit and rejected them without discussion. *Id.* at 5.

51.     No petitions for certiorari were filed.

## VI.    LITIGATION

52.     The Trustee is actively involved in dozens of litigations and appeals. This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

### A.     The District Court—Motions to Dismiss Heard by Judge Rakoff

53.     Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings. The District Court (Rakoff, J.) consolidated briefing and argument on certain common issues raised in the motions to withdraw (the "Common Briefing"). *See* Trustee's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the Common Briefing issues and returned all proceedings to the Bankruptcy Court.

### B.     Good Faith Actions

#### i.     Resolution of Good Faith Avoidance Actions

54.     At the beginning of the Report Period, there were 16 active good faith avoidance actions. Five were closed during the Report Period, leaving a total of 11 open good faith avoidance actions by the end of the Report Period, as set forth in the attached Exhibit B. In certain avoidance actions, the Trustee's professionals entered into mediations, considered settlement offers and engaged in settlement negotiations, which led to two cases entering into documented settlements during the Report Period. In addition, as a result of the Trustee

obtaining judgments, two cases were closed during the Report Period. Two additional cases were

closed after the U.S. District Court of the Southern District of New York and U.S. Court of

Appeals for the Second Circuit affirmed the lower court judgments.

> **ii.** **Trial-Related Motion Practice**

>> **(a)** **Sage Actions**

55.    On December 1, 2020, counsel for Defendants Sage Associates, Sage Realty,

Malcolm Sage, Ann Passer Sage, and Martin Sage moved for permissive withdrawal of the

reference. *See* Nos. 20-cv-10057 (lead case) & 20-cv-10109, ECF No. 1.

56.    On May 18, 2021, Judge Nathan granted Defendants' motion to withdraw the

reference to the bankruptcy court. *See* No. 20-cv-10057, ECF No. 19. Judge Nathan directed the

parties to submit a joint letter by June 14, 2021 on the status of discovery and next steps. *See id.*

57.    On November 2, 2021, the actions were reassigned to District Judge John F.

Keenan.

58.    On January 19, 2022, trial in the consolidated actions began before Judge Keenan.

Trial continued on January 21, 24, and 25, in addition to February 2, 2022.

59.    On April 15, 2022, the Court entered judgment in favor of the Trustee in the

amount of $16,880,000 against all Defendants, jointly and severally. *See* No. 20-cv-10057, ECF

No. 111.

60.    On April 19, 2022, the Court modified the April 15, 2022 judgment to enter

judgment in favor of the Trustee (1) in the amount of $13,510,000 against Defendants Sage

Associates, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally, and (2) in

the amount of $3,370,000 against Defendants Sage Realty, Malcolm Sage, Martin Sage, and Ann

Sage Passer, jointly and severally. *See* No. 20-cv-10057, ECF No. 113.

61.    On September 16, 2022, Defendants filed their opening brief before the Second

Circuit.  *See* Lead Case No. 22-1107, ECF No. 61.  On December 16, 2022, the Trustee filed his

brief in response.  *See id.,* ECF No. 115.  On February 13, 2023, Defendants filed their reply

brief.  *See id.*, ECF No. 158. Oral argument is set for May 31, 2023. *See id*., ECF No. 177.

**(b)    RAR Entrepreneurial Fund Ltd. Action**

62.    On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd.

moved for permissive withdrawal of the reference.  *See* No. 20-cv-01029, ECF No. 1.

63.    On February 18, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendant's counsel agreed to, and the Court so ordered on March 5, 2020.  *See* No. 20-cv-

01029, ECF Nos. 5, 7.

64.    On April 1, 2020, the Trustee filed his motion for summary judgment.  *See* No.

20-cv-01029, ECF Nos. 12-20. On June 5, 2020, Defendant filed its memorandum of law in

opposition to the Trustee's motion for summary judgment and in support of its cross-motion for

summary judgment dismissing the case in its entirely.  On June 9, 2020, Defendant filed its

notice of cross-motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 25-29. On June

23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's

opposition to his motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 33-35.

Defendant filed its reply brief in support of its cross-motion on June 30, 2020.  *See* No. 20-cv-

01029, ECF No. 36.

65.    On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the

Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding

that the Trustee did have standing to pursue the Two-Year Transfers and established the elements

of his claim except that there were issues of fact with respect to whether the transfers were made

by the LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is ultimately likely to prevail on its claim." *See* No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y. Mar. 3, 2021).

66.     On May 6, 2021, the court held a telephonic conference with the parties, during which the trial was scheduled to begin on July 19, 2021. *See* No. 20-cv-01029, ECF No. 49.

67.     On May 11, 2021, the Trustee filed a letter motion seeking to stay the trial pending a decision from the Second Circuit in the similarly situated avoidance action, *Picard v. JABA Assocs. LP*, No. 21-872 (2d Cir.), which Defendant opposed in a letter response dated May 13, 2021. *See* No. 20-cv-01029, ECF Nos. 54-55. The District Court denied the motion. *See id.*, ECF No. 56.

68.     On June 2, 2021, the court issued an order rescheduling the trial to begin on July 20, 2021. *See* No. 20-cv-01029, ECF No. 59.

69.     On August 27, 2021, the court issued an order rescheduling the trial to begin on October 18, 2021. *See* No. 20-cv-01029, ECF No. 104.

70.     On October 13, 2021, the trial was adjourned and subsequently rescheduled for March 3, 2022. *See* No. 20-cv-01029, ECF Nos. 110 & 115.

71.     On February 28, 2022, the final pretrial conference was held and the trial began three days later on March 3, 2022. *See* No. 20-cv-01029, ECF Nos. 121, 134, 135, 137. On March 7, 2022, after closing statements were made, the jury deliberated and reached a verdict in favor of the Trustee, finding that the investment advisory business of Madoff's sole proprietorship was transferred to the limited liability company before December 11, 2006 (two years prior to the filing of the SIPA liquidation), and awarding the Trustee $12,800,065 (the total

amount in fraudulent transfers received by Defendant between December 11, 2006 and December 11, 2008). *See id.*, ECF No. 132.

72.     On March 22, 2022, the parties filed their supplemental memoranda of law as to whether prejudgment interest should be awarded to the Trustee. *See* No. 20-cv-01029, ECF Nos. 141–42.

73.     On September 20, 2022, the District Court granted the Trustee prejudgment interest from the date of the complaint against the Defendant through the date of entry of judgment, at a rate of 4% per annum. *See* No. 20-cv-01029, ECF No. 149.

74.     On September 23, 2022, the District Court entered its final judgment in favor of the Trustee in the total amount of $18,867,295.81, which includes prejudgment interest at a rate of 4% from November 12, 2010 through the date of entry of judgment. *See* No. 20-cv-01029, ECF No. 151

75.     On October 21, 2022, Defendant filed a motion seeking judgment as a matter of law or, in the alternative, a new trial. *See* No. 20-cv-01029, ECF No. 154. On October 24, 2022, the District Court denied the Defendant's motion. *See id.*, ECF No. 157.

76.     On November 23, 2022, Defendant filed a notice of appeal to the Second Circuit from the District Court's judgment that denied Defendant's motion seeking judgment as a matter of law and new trial. *Id.,* ECF No 159. Defendant filed its appellate brief on March 16, 2023. *See* No. 22-3006, ECF No. 44. The appellate briefs of the Trustee and SIPC are due to be filed on June 15, 2023. *See id*., ECF No. 46.

## C.    **Bad Faith Actions**

77.     The Trustee has one bad faith action still pending as of the end of the Report Period, as set forth on the attached Exhibit C.

i.    **Picard v. Avellino & Bienes**

78.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y.) (the "A&B Action").

79.    During the Report Period, B&H attorneys drafted a motion to dismiss the Defendants' appeal filed in the District Court, which sought to appeal the Court's decision granting the Trustee partial summary judgment.  The motion was filed on October 6, 2022. *Picard v. Mayfair Ventures. G.P.*, No. 22-cv-07711-GHW, ECF Nos. 13-15.

80.    B&H attorneys also reviewed and edited a proposed stipulation from the A&B Defendants to dismiss their appeal and dismiss the Trustee's motion to dismiss as moot, which was filed with and so ordered by the Court on October 19, 2022. Id., ECF Nos. 18, 19

81.    B&H attorneys also worked with the Trustee's experts to draft a joint stipulation of transfers relating to six BLMIS accounts with numerous exhibits.

82.    In addition, B&H attorneys performed overall case management and prepared for trial, which included strategizing, working with the Trustee's experts, legal research, drafting a motion in limine, and identifying documents for the Trustee's exhibit list.

D.    **Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees**

    i.    **Extraterritoriality**

83.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "District Court ET Decision").

84.    On November 22, 2016, this Court issued a decision granting in part and denying in part Defendants' motion to dismiss on extraterritoriality (the "Bankruptcy Court ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

85.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Upon Defendants' motion, the Second Circuit then stayed the issuance of the mandate. *Id.*, (ECF No. 1503).

86.    On August 29, 2019, Defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

87.    On September 30, 2019, amicus briefs in support of Defendants were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring

professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the

Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities

Industry and Financial Markets Association, the Institute of International Bankers, and the U.S.

Chamber of Commerce.

88.     On October 30, 2019, the Trustee and SIPC filed separate briefs in opposition to

Defendants' petition, and on November 12, 2019, Defendants filed a brief in reply.

89.     On December 9, 2019, the Supreme Court invited the Solicitor General to file a

brief expressing the views of the United States, and on April 10, 2020, the Solicitor General filed

a brief recommending that the Supreme Court deny the petition.

90.     The petition was distributed on April 28, 2020 for consideration at the Court's

May 14, 2020 conference. On June 1, 2020, the Supreme Court denied Defendants' petition.

**ii.    Good Faith Appeal**

      **(a)    Procedural Background on Good Faith Defense Under Sections 548(c) and 550**

91.     When the Trustee brought his intentional fraudulent transfer claims under section

548(a)(1)(A), he met his pleading burden under governing case law by alleging that BLMIS was

a Ponzi scheme and that the defendants received transfers from BLMIS. *See Picard v. Merkin (In*

*re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2010) (citing

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y.

2007)); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II L.P., (In re Bayou Grp.,*

*LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007). The burden then shifted to defendants to prove

their affirmative defense, as set forth in section 548(c), that they received the transfers for value

and in good faith. *See Merkin*, 440 B.R. at 256 (citing *Gredd v. Bear, Stearns Sec. Corp. (In re*

*Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002)).

92.    From 2009 through 2011, bad faith defendants brought motions to dismiss the Trustee's complaints under Federal Rule of Civil Procedure 12(b)(6), claiming, *inter alia*, that the Trustee had not adequately pled a lack of good faith on the part of the defendant. *See, e.g., Merkin*, 440 B.R. at 255–56; *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 331 (Bankr. S.D.N.Y. 2011); *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 220–21 (Bankr. S.D.N.Y. 2011).

93.    As to this argument, the Bankruptcy Court (Lifland, J.) denied the motions. *See Merkin*, 440 B.R. at 273; *Cohmad*, 454 B.R. at 342; *Chais*, 445 B.R. at 221. The Bankruptcy Court found that "a trustee need not dispute a transferee's good faith defense upon the face of the Complaint. Rather, the transferee bears the burden of establishing its good faith under section 548(c) of the Code as an *affirmative defense* that 'may be raised and proved by the transferee at trial.'" *Merkin*, 440 B.R. at 256 (citation omitted) (quoting *Bayou Superfund*, 362 B.R. at 639); *see also Cohmad*, 454 B.R. at 331; *Chais*, 445 B.R. at 220–21. Accordingly, the Bankruptcy Court found defendants' arguments regarding section 548(c) of the Code irrelevant to the Trustee's pleading burden.

94.    Beginning in 2011, hundreds of defendants moved the District Court to withdraw its reference to the Bankruptcy Court.[6] The District Court withdrew the reference on numerous issues, including whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

95.    With regard to the pleading burden, although good faith is an element of the affirmative defense to actions under sections 548 and 550, the District Court held that, in SIPA cases, a SIPA trustee must *plead* the absence of good faith, with particularized allegations, as

_____

[6] *See* Common Briefing discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

part of his *prima facie* case to avoid and recover transfers under the Bankruptcy Code (the "Good

Faith Decision"). *SIPC v. BLMIS*, 516 B.R. 18, 23–24 (S.D.N.Y. 2014). The Court reasoned that

the usual rule that a defendant bears the burden of pleading an affirmative defense "would totally

undercut SIPA's twin goals of maintaining marketplace stability and encouraging investor

confidence." *Id*. at 24.

96.    With regard to the standard used to evaluate a transferee's lack of good faith, the

District Court discarded the objective "inquiry notice" standard that governed the good faith

affirmative defense for over a century. In its place, the District Court held that for purposes of

SIPA recovery actions, "'good faith' means that the transferee neither had actual knowledge of

the . . . fraud nor willfully blinded himself to circumstances indicating a high probability of such

fraud." *Id*. at 23. The District Court reasoned that because a securities investor has no inherent

duty to inquire about his stockbroker, the inquiry notice standard that usually applied to

avoidance actions was "unfair and unworkable." *Id*. at 22. The District Court then returned the

withdrawn actions to the Bankruptcy Court for further proceedings consistent with its ruling. *Id*.

at 24.

97.    The Trustee moved for certification of an interlocutory appeal, and numerous

defendants opposed. *SIPC v. BLMIS (In re Madoff Sec.)*, No. 12-mc-00115, ECF Nos. 544, 550

(S.D.N.Y. June 23 & July 2, 2014). The District Court denied certification, holding that the

Second Circuit should review the Good Faith Decision only after the Bankruptcy Court

determined, in individual cases, whether the Trustee sufficiently pleaded a given defendant's

willful blindness. *SIPC v. BLMIS*, 516 B.R. at 25–26 (S.D.N.Y. July 21, 2014).

98.    Two months later, the District Court issued the District Court ET Decision,

concluding that because section 550(b) does not apply extraterritorially, the Trustee must plead

certain facts to establish that the subsequent transfers he seeks to recover are "domestic" transfers.[7] *SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014). Alternatively, the District Court held that recovery of subsequent transfers received from an entity in foreign liquidation proceedings would violate principles of international comity. *Id.* at 231–32. Following these decisions, the District Court returned the cases to this Court. Order Entered July 10, 2014, *In re Madoff Sec.*, No. 12-mc-115 (JSR) (S.D.N.Y.), ECF No. 552.

99.    In view of the altered pleading standards, the Trustee filed an Omnibus Motion for Leave to Replead Pursuant to Federal Rule Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (CGM), ECF No. 7827. In this motion, the Trustee sought leave to file amended complaints with allegations sufficient to meet the new standards articulated by the District Court and leave to take limited discovery.

100.    In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. Hr'g Tr. of Sept. 17, 2014 at 16:14–17, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Nov. 11, 2014), ECF No. 8636. In December 2014, this Court agreed, and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y.), ECF No. 8800 (the "December 10 Scheduling Order") (staying proceedings on the Trustee's

---

[7] *See* discussion *supra* Section (VI)(D)(i).

request for discovery and to replead based on good faith until after the Court ruled on the Defendants' motion to dismiss based on extraterritoriality).[8]

101.    In November 2016, this Court issued its ruling on extraterritoriality.[9] *See SIPC v. BLMIS (In re Madoff)*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689, at *36 (Bankr. S.D.N.Y. Nov. 22, 2016). The Bankruptcy Court ET Decision resulted in partial dismissals of the Trustee's claims in approximately 20 actions and a complete dismissal of approximately 70 actions. The Trustee appealed that ruling to the Second Circuit, which reversed the decisions of the District Court and Bankruptcy Court. *In re Picard*, 917 F.3d 85 (2d Cir. 2019). In June 2020, the Supreme Court denied certiorari. *HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020). *See* discussion *supra* Section (VI)(D)(i).

102.    While the Trustee's appeal on extraterritoriality was pending before the Second Circuit, in July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion for those actions that remained pending. Order at ¶¶ 1, 4, Adv. Pro. No. 08-1789 (CGM) (Bankr. S.D.N.Y. July 24, 2017), (ECF No. 16428). That order deferred proceedings on the issue of leave to replead concerning the Good Faith Issue in the Omnibus Motion until after the Court's disposition on the Trustee's request for limited discovery. In June 2018, the Court denied the Trustee's request for limited discovery concerning good faith. *SIPC v. BLMIS*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018).

103.    Thereafter, the Trustee moved for leave to amend his complaints to comport with the new standard articulated in the Good Faith Decision without any additional discovery on that issue. Judge Bernstein denied leave to amend in three separate cases against *Citibank, Fortis,* and

---

[8] The December 10 Scheduling Order was subsequently modified three times. *See* 08-1789, ECF Nos. 8990, 9350, 9720. None of the subsequent orders modified the original paragraph 14 of the December 10 Order concerning discovery and repleading as to good faith. *See also* Hr'g Tr. of Sept. 17, 2014 at 27:17–25, 08-1789 (Nov. 11, 2014), ECF No. 8636.

[9] *See* discussion *supra* Section (VI)(D)(i).

*RBS*, finding that the Trustee did not plead sufficient facts to meet the willful blindness standard. *See Picard v. Citibank, N.A.*, 608 B.R. 181 (Bankr. S.D.N.Y. 2019); *Picard v. ABN Amro Bank (Ireland) Ltd (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited)*, Adv. Pro. No. 10-05355 (SMB), 2020 WL 401822 (Bankr. S.D.N.Y. Jan. 23, 2020); *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. March 31, 2020). Because the *Citibank* decision was the first to result in a final judgment, the Trustee was finally able to appeal Judge Rakoff's 2014 ruling on good faith to the Second Circuit.

104.    Proceeding on a slightly different track was the Trustee's case against Legacy Capital and Khronos.[10] Following the return of the cases from Judge Rakoff in 2014, the Trustee filed an amended complaint in the Bankruptcy Court and defendants Legacy and Khronos moved to dismiss, arguing that the Trustee had not adequately alleged willful blindness on the face of his complaint. The Bankruptcy Court agreed, dismissing those counts of the Trustee's complaint for which lack of good faith was an element of the affirmative defense under section 548(c) for initial transferee Legacy and under section 550(b) for subsequent transferee Khronos. *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016). The Court did not dismiss counts relating to transfers of fictitious profits to defendants. *See Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016). After the parties engaged in discovery, in December 2018, the Trustee moved for summary judgment,[11] which was granted in part.[12] Thereafter, the parties stipulated to

---

[10] While the issues against Legacy Capital and Khronos were on appeal, the Trustee continued to litigate against other subsequent transferees in the *Legacy Capital* action, which is discussed in Section (VI)(E)(v) below.

[11] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 192.

[12] *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682 (Bankr. S.D.N.Y. 2019).

judgment concerning the transfers of fictious profits, and a final judgment was entered on

November 12, 2019.[13] *See* discussion *infra* Section (VI)(E)(v).

105.    With two final judgments in hand, the Trustee sought and obtained direct appeals

to the Second Circuit on the issues of the good faith defense presented by the *Citibank* and

*Legacy* cases. The appeals presented two common issues:

- •    Whether the District and Bankruptcy Courts erred by holding that transferees on inquiry notice of a broker-dealer's fraud nevertheless are protected by the statutory "good faith" defense so long as they do not willfully blind themselves to the fraud.

- •    Whether the District and Bankruptcy Courts erred by holding that SIPA shifts the burden of pleading a transferee's affirmative defense of good faith to the plaintiff-trustee.

*See* Appellant Brief at 2, *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No.

78; Appellant Brief at 2, *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF

No. 73.

106.    Each appeal also presented the issue of whether, if the District Court did not err

with respect to the standard for good faith or the pleading burden, whether the Bankruptcy Court

therefore erred by either denying the Trustee leave to amend his complaint (*Citibank*) or

dismissing certain claims in the Trustee's amended complaint (*Legacy*) where the Trustee had

plausibly pleaded defendants' willful blindness to fraud at BLMIS. *Id.* The Second Circuit heard

the appeals in tandem on March 12, 2021 before Circuit Judges Wesley, Sullivan, and Menashi.

107.    On August 30, 2021, the Second Circuit issued a decision, holding that in a SIPA

liquidation proceeding the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is

governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of

pleading a transferee's lack of good faith. *See Picard v. Citibank (In re Bernard L. Madoff Inv.*

---

[13] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 231.

*Sec. LLC),* 12 F.4th 171 (2d. Cir. 2021)) (the "Decision"). The Decision vacated Judge Rakoff's

2014 consolidated good faith decision holding that in a SIPA liquidation proceeding good faith is

governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the

transferee's lack of good faith.[14] The Decision also vacated Judge Bernstein's decisions in the

Trustee's actions against Citibank, N.A. and Legacy Capital applying Judge Rakoff's good faith

decision. *See Picard v. Citibank, N.A.*, 601 B.R. 181 (S.D.N.Y. 2019); *Picard v. Legacy Capital

Ltd.,* 548 B.R. 13 (S.D.N.Y. 2016).

108.    On October 13, 2021, the Second Circuit issued the mandate, vacating the

judgment of the District Court. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 197;

*Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 187. On January 27, 2022,

Defendants Citibank, N.A. and Citicorp North America, Inc. petitioned the Supreme Court for a

writ of certiorari to review the Second Circuit's judgment. The Trustee and SIPC declined to

submit an opposition. On February 28, 2022, the Supreme Court denied the petition for writ of

certiorari.

## E.    BLMIS Feeder Fund Actions

109.    There are nine active feeder fund cases, as set forth on the attached Exhibit C. A

few of those with activity during the Report Period are discussed herein.

### i.    Picard v. Fairfield Greenwich

110.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd.

("Sentry"), Fairfield Sigma Ltd. ("Sigma"), Fairfield Lambda Ltd. ("Lambda") (collectively, the

"Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners,

L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich

Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the

---

[14] *See SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014).

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009). On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

111.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

112.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker and all of their individual and entity affiliates, employees, officers, and partners (the "Management Defendants"), and the Trustee retained his own claims

against the Management Defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

113.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against the Management Defendants and agreed to share with the Trustee any recoveries they receive against service providers.

114.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

115.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barreneche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr. S.D.N.Y.). The parties in the Toub action have entered into a stipulated stay as permitted by this

Court. None of the defendants in the three actions have responded yet to the Trustee's complaints.

116.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section (VI)(D)(i). Under the decision, some of the claims against the moving defendants in the Fairfield, Barreneche, and RD Trust actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.

117.    On March 16, 2017, the Trustee filed his notice of appeal in the Fairfield, Barreneche, and RD Trust actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Odier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari.

118.    On January 24, 2019, in the action filed by the Joint Liquidators against the Management Defendants, *In re Fairfield Sentry Limited, et al*., Case No. 10-13164 (CGM), Adv. No. 10-03800 (CGM), the parties entered a stipulation substituting the Trustee as the plaintiff.

(ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

119.    On March 25, 2019, this Court approved a settlement between the Trustee and certain Management Defendants, Lourdes Barreneche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barreneche, Inc., Dove Hill Trust, Fortuna Asset Management, Selecta Financial Corporation. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Management Defendants remain pending.

120.    On June 19, 2019, this Court entered a stipulated order consolidating the Fairfield, Barreneche, and RD Trust actions. (ECF No. 274).

121.    On September 25, 2019, this Court held a hearing with the Trustee and the remaining Management Defendants in the consolidated actions. At the hearing, the parties informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275). Similar orders were entered through May 2020. (ECF Nos. 276, 279, 282).

122.    On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the stay in actions consolidated under *Picard v. Fairfield Investment Fund Ltd., et al.*, Adv. No. 09-01239. (ECF No. 285). The Court further ordered the Management Defendants to file their Reply Brief in Support of their Motion to Dismiss in Picard v. Fairfield Greenwich Group Adv. No. 10-03800 on or before October 2, 2020. The Court also ordered the Trustee to

file an Amended Complaint on or before August 31, 2020 with the parties to provide a proposed

briefing schedule in response to the Amended Complaint on or before October 15, 2020.

123.   On August 28, 2020, the Trustee filed a Second Amended Complaint in *Picard v.*

*Fairfield Investment Fund Ltd., et al*., Adv No. 09-01239. (ECF No. 286).

124.   On October 2, 2020, the Management Defendants filed their Reply Brief in

Support of their Motion to Dismiss in Picard v. Fairfield Greenwich Group, Adv. No. 10-03800

(ECF No. 129) with a letter regarding foreign authorities. (ECF No. 130). On October 20, 2020,

this adversary proceeding was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 138). On

November 18, 2020, Chief Judge Morris held a joint conference with the parties in *Picard v.*

*Fairfield Investment Fund Ltd., et al.* and *Picard v. Fairfield Greenwich Group*. Also on

November 18, 2020, the Court entered a stipulated order providing for supplemental briefing in

response to the Defendants' Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv.

No. 10-03800, whereby the Trustee was to file his Supplemental Memorandum in Opposition to

the Motion to Dismiss by November 25, 2020 and the Defendants were to file their Supplemental

Memorandum in Support of the Motion to Dismiss by December 11, 2020. (ECF No. 137).

125.   On November 25, 2020, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-

03800, the Trustee filed a Supplemental Memorandum in Opposition to the Motion to Dismiss.

(ECF No. 141). On December 11, 2020, the parties in this action submitted a letter to the Court

regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss.

(ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum

in Support of the Motion to Dismiss. (ECF No. 146). On December 18, 2020, the parties

submitted a letter to the Court regarding the choice of law issues involved in the Motion to

Dismiss. (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion

to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800.

126.    On March 25, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800,

the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants'

Motion to Dismiss. (ECF No. 161). On April 8, 2021, the Court issued its order Granting in Part

and Denying in Part Defendants' Motion to Dismiss. (ECF No. 162). Under the Court's order,

the Defendants' Motion to Dismiss count one for breach of contract against defendant Fairfield

Greenwich Limited, counts two and three for breach of contract against defendant Fairfield

Greenwich Bermuda, and count five for constructive trust against all defendants, were denied.

Under the Court's order, Defendants Fairfield Greenwich Limited and Fairfield Greenwich

Bermuda's Motion to Dismiss count four for unjust enrichment was granted and was denied for

all other Defendants. The Court further ordered that the Trustee could proceed with discovery

with respect to Defendant Andres Piedrahita to determine the issue of general personal

jurisdiction. (ECF No. 162).

127.    On October 20, 2020, *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-

1239, was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 288). On October 21, 2020, a

scheduling order was entered in this adversary proceeding whereby Defendants were to file a

Motion to Dismiss in response to the Second Amended Complaint by January 15, 2021, the

Trustee was to file his Opposition to the Motion to Dismiss by April 15, 2021, and the

Defendants were to file their Reply in Support of the Motion to Dismiss by May 31, 2021. (ECF

No. 289).

128.    On January 15, 2021, in *Picard v. Fairfield Investment Fund Limited*, Adv. No.

09-1239, the Defendants filed a Motion to Dismiss Adversary Proceeding (the Second Amended

Complaint). (ECF No. 305). On April 15, 2021, the Trustee filed his Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (ECF No. 311). On May 28, 2021, Defendants filed their Reply to the Motion to Dismiss. (ECF No. 313). On June 16, 2021, the Court held a hearing on the Motion to Dismiss.

129.    On May 6, 2021 and May 28, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Defendants filed Answers to the Second Amended Complaint. (ECF Nos. 164 – 168, 170 and 173).

130.    On June 22, 2021, in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, Defendants submitted a letter to the Court seeking leave to file 121 pages of documents, consisting of selected exhibits to the Trustee's First Amended Complaint. On June 23, 2021, the Trustee submitted a letter to the Court responding and objecting to Defendants' submission. (ECF No. 326). On June 24, 2021, the Court denied the relief requested in the Defendants' letter, without prejudice to Defendants' submission of a motion formally requesting the relief sought. (ECF No. 329). On June 25, 2021, Defendants filed a Motion for Leave to File Copies of Documents Incorporated in the Trustee's Pleadings. (ECF No. 330). On June 28, 2021, the Court denied Defendants' Motion for Leave. (ECF No. 331).

131.    On August 6, 2021, *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, the Court issued its Memorandum Decision Denying Motion to Dismiss as to All Claims Except Those Made Against Corina Noel Piedrahita in her Individual Capacity. (ECF No. 336). On September 14, 2021, the Court entered its Order Denying Defendants' Motion to Dismiss as to All Claims Except Those Against Corina Noel Piedrahita in her Individual Capacity. (ECF No. 339). Under the Court's Order, Defendants' motion was denied, except that it was granted with respect to Counts Eight and Fourteen to the extent those counts assert individual claims

- 37 -

against Corina Noel Piedrahita, which claims were dismissed without prejudice. With respect to Counts Eight and Fourteen, Defendants' motion was denied to the extent those counts assert claims against Corina Noel Piedrahita as an alleged partner of Fairfield Greenwich Group. (ECF No. 339).

132.    On September 30, 2021, Defendants filed Answers to the Second Amended Complaint in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239. (ECF Nos. 342 – 347 and 349).

133.    On November 2, 2021, in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, the Court entered an order stipulated by the parties, appointing a discovery arbitrator. (ECF No. 176).

134.    In February 2022, the Defendants were given access to the Trustee's electronic data rooms containing millions of documents, including non-confidential documents produced to the Trustee by third parties. On February 3, 2022, Third-Party Defendant Fairfield Sentry produced approximately 1,000 documents to the Trustee in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800. Throughout the Report Period, the Defendants have continued to produce documents to the Trustee on a rolling basis, totaling approximately one million documents as of August 8, 2022. In accordance with the parties' agreement, productions in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, are also deemed produced in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239, and vice versa.

135.    On November 17, 2022, the Trustee's counsel met and conferred with counsel for the Defendants and the former general counsel of Fairfield Greenwich Group to discuss the Trustee's claims and explore possible alternate resolution of the proceedings.

136.    On January 30, 2023, the Trustee served his First Request for Production of Documents in *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239.

137.    On January 26, 2023, the Trustee's counsel met and conferred with counsel for the Defendants to discuss and attempt to resolve issues raised by the Trustee regarding documents redacted and/or withheld from production by the Defendants on the basis of assertions of attorney-client privilege.

138.    On January 30, 2023 and February 10, 2023, the Trustee produced a total of approximately 782 documents to the Defendants, in response to the Defendants' First Request for Production of Documents to the Trustee.

139.    On February 28, 2023 and March 22, 2023, the Defendants produced a total of approximately 66,430 documents to the Trustee, in response to the Trustee's First Requests for Production of Documents in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800. Pursuant to the applicable Case Management Orders, the parties' document productions are deemed produced in both *Fairfield Greenwich Group*, Adv. No. 10-03800 and *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239.

140.    Throughout the Report Period, B&H attorneys, on behalf of the Trustee, have continued to analyze legal issues in *Fairfield Greenwich Group*, Adv. No. 10-03800 and *Picard v. Fairfield Investment Fund Limited*, Adv. No. 09-1239; reviewed relevant documents produced by the Defendants; prepared discovery requests for party and non-party witnesses; conferred with counsel for non-party witnesses regarding discovery, including contemplated depositions; and conferred with counsel for certain Defendants and third parties who previously produced documents to the Trustee designated as confidential, to request and obtain the de-designation of such discovery materials.

ii.       **The HSBC Action**

141.     On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

142.     On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

143.     On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

144.     On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

145.     On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

146.     On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. (ECF No. 497).

147.     On July 27, 2019, Alpha Prime moved for judgment on the pleadings. (ECF No. 545). On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. (ECF No. 548). Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. (ECF No. 566).

148.     On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. (ECF No. 567). Litigation is ongoing.

149.     On June 20, 2022, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which narrowed most of the issues between those parties. (ECF No. 715).

### iii.     **The UBS Action**

150.     On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG,* Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

151.     On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals,

Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated

funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately

$555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief

(the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22,

2012).

152.    On February 12, 2020, the Trustee filed a Motion for Order Issuing Letter

Rogatory to AA Alternative Investment PLC on Behalf of Landmark Investment Fund Ireland in

the LIF Action, which the Bankruptcy Court granted by Order dated February 25, 2020.

153.    On March 2, 2020, the Trustee filed a Motion for Leave to File a Second

Amended Complaint in the Luxalpha Action. On April 3, 2020, Luxalpha filed its Memorandum

Of Law In Opposition To Trustee's Motion For Leave To File A Second Amended Complaint

And In Support Of Cross Motion For Claim Determination And Allowance. On May 4, 2020, the

Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for

Leave to File a Second Amended Complaint and Opposition to Cross Motion for Claim

Determination and Allowance. On May 18, 2020, Luxalpha filed its Reply Memorandum of Law

in Support of its Cross-Motion for Claim Determination and Allowance.

154.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with the

Trustee and Luxalpha regarding the Trustee's Motion and Luxalpha's Cross-Motion, during

which the Bankruptcy Court directed that hearings on the motions will be adjourned sine die

pending issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*,

Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. On June 22, 2020, the

Trustee and Luxalpha filed a joint notice adjourning the hearing on the motions accordingly.

155.    The Trustee and Luxalpha Liquidators subsequently signed a stipulation agreeing

to proceed with discovery and the appointment of a discovery arbitrator, which the court so-

ordered on October 27, 2020, as amended by order dated November 24, 2020.

156.    With respect to the LIF Action, in October 2020, B&H attorneys, on behalf of the

Trustee, finalized settlement terms with Landmark Investment Fund Ireland, and on October 27,

2020 filed a Rule 9019 motion seeking approval of the settlement from the Bankruptcy Court. By

order dated November 16, 2020, the Bankruptcy Court approved the motion, authorized the

settlement agreement between the Trustee and Landmark Investment Fund Ireland, and ordered

that the transfers from BLMIS to Landmark Investment Fund Ireland set forth in Exhibit C of the

Complaint filed on December 7, 2010 [ECF No.1] are deemed avoided.

157.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal

of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA

liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA

trustee need not plead a transferee's lack of good faith.  *See In re Bernard L. Madoff Inv. Secs.*

*LLC*, ---- F.4th ----, Adv. Pro. Nos. 20-1333 & 20-1334, 2021 WL 3854761, at **18-19 (2d Cir.

Aug. 30, 2021).  *See* discussion *supra* Section (VI)(D)(ii). The Second Circuit's decision governs

the Trustee's actions against other defendants, including the Luxalpha Defendants and LIF

Defendants.

158.    On January 19, 2022, the Bankruptcy Court held a status conference with the

parties in the Luxalpha and LIF actions.  On January 20, 2022, the Bankruptcy Court entered a

so-ordered stipulation between the Parties in the Luxalpha Action regarding the filing of the

Trustee's Second Amended Complaint.  Pursuant to the stipulation, on February 7, 2022 the Trustee provided Defendants with the Proposed Second Amended Complaint.  On February 18, 2022, Defendants consented to the Trustee filing the Proposed Second Amended Complaint, which was filed by the Trustee on February 28, 2022.

159.    On April 22, 2022, Luxalpha SICAV filed its Answer to the Second Amended Complaint in the Luxalpha Action.  Also on April 22, 2022, the remaining Defendants, including the UBS Defendants, the Access Defendants, Groupement Financier Ltd. and certain individual defendants (the "Moving Defendants") filed motions to dismiss the Second Amended Complaint. On June 17, 2022, the Trustee filed oppositions to the Moving Defendants' motions to dismiss. On July 29, 2022, the Moving Defendants filed their reply briefs in support of their motions to dismiss.  On September 14, 2022, the Court heard oral argument on the Moving Defendants' motions to dismiss.

160.    During the Report Period, in the Luxalpha Action, on November 18, 2022, the Court issued a decision denying the Access Defendants' motions to dismiss in their entirety.  On December 1, 2022, the Court issued a decision denying Theodore Dumbauld's motion to dismiss in its entirety.  On December 27, 2022, the Court issued a decision denying the UBS Defendants' motions to dismiss in their entirety.  On January 19, 2023, the UBS Defendants moved for Partial Reargument or Reconsideration of the Order Denying Their Motion to Dismiss the Second Amended Complaint.  On January 24, 2023, the Court issued an order sua sponte denying the UBS Defendants' Motion to Reargue.  On February 28, 2023, the UBS Defendants, the Access Defendants and Claudine Villehuchet filed their Answers to the Second Amended Complaint. On March 3, 2023, Theodore Dumbauld filed his Answer to the Second Amended Complaint.

161.    Also during the Report Period, in the LIF Action, by a Stipulation and Order dated February 23, 2023, the defendants in the LIF Action consented to the filing of the Trustee's Second Amended Complaint, which was filed by the Trustee on February 24, 2023.   The defendants' responses to the Second Amended Complaint in the LIF Action are due on or before May 5, 2023.

162.    B&H attorneys, on behalf of the Trustee, continued to prepare and revise and finalize the Second Amended Complaint in the LIF Action, and engaged in negotiations with the defendants in that action regarding a stipulated briefing schedule related to the Second Amended Complaint.   B&H attorneys also reviewed and analyzed the Court's decisions denying the defendants' motions to dismiss in the Luxalpha Action.   B&H attorneys also continued planning for merits and potential jurisdictional discovery in both the Luxalpha Action and the LIF Action and worked with foreign counsel in connection with the Trustee's participation in foreign proceedings related to both actions.

### iv.    **Picard v. Square One**

163.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd. ("Square One"), Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefits of the Square One Defendants.   *Picard v. Square One Fund Ltd.,* Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y. Nov. 29, 2010).

164.    On December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.*, (ECF No. 167-69).

165.    Square One filed a motion to dismiss on February 14, 2019.  *Id.*, (ECF No. 170).
On May 29, 2019, the Court held a hearing on Square One's motion to dismiss.  At the
conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss.
The Court subsequently entered an order granting in part and denying in part Square One's
motion to dismiss on June 13, 2019.  *Id.*, (ECF No. 177).

166.    On July 16, 2019, the Court so-ordered a Case Management Plan.  *Id.*, (ECF No.
178).

167.    During the Report Period, the Trustee and Square One were engaged in active
discovery.

168.    On October 25, 2022, the Trustee attended and took the deposition of Mr. Peter
Fletcher in Toronto, Ontario, Canada, in accordance with the Trustee's Subpoena.

169.    On November 3, 2022, a Notice of Adjournment of Hearing was filed and the Pre-
Trial conference was adjourned to June 21, 2023.  (ECF No. 256.)

170.    On November 10, 2022, Judge Morris signed and ordered a Stipulation and Order
for Third Amended Case Management Plan submitted by counsel for the Trustee and counsel for
Square One.  (ECF No. 259.)

171.    On November 15, 2022, the Trustee attended and took the deposition of Mr. Luc
Estenne in New York, New York, in accordance with the Trustee's Notice of Deposition under
Federal Rule of Civil Procedure 30(b)(1).

172.    On November 16, 2022, the Trustee attended and took the 30(b)(6) deposition of
Square One through its authorized representative, Mr. Luc Estenne, in New York, New York, in
accordance with the Trustee's 30(b)(6) deposition notice.

173.    On November 18, 2022, the Trustee attended and took the examination of Mr. Timotheé Henry in Geneva, Switzerland, in accordance with the Order Issuing the Letter of Request for Service Abroad of Judicial or Extrajudicial Documents in a Civil or Commercial Matter.  (ECF No. 252.)

174.    On December 29, 2022, Judge Morris signed and ordered a Stipulation and Order for Fourth Amended Case Management Plan submitted by counsel for the Trustee and counsel for Square One.  (ECF No. 260.)-

175.    On January 25, 2023, the Trustee attended and took the continued 30(b)(6) deposition of Square One through its authorized representative, Mr. Richard Levin, in New York, New York, in accordance with the Trustee's 30(b)(6) deposition notice.

176.    On March 7, 2023, a Notice of Adjournment of Hearing was filed and the Pre-Trial conference was adjourned to October 18, 2023.  (ECF No. 263.)

177.    Finally, the Trustee filed and served two notices adjourning the pre-trial conference.  (ECF Nos. 256, 263.)

**v.    Picard v. Legacy**

178.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Legacy. *Picard v. Legacy Capital Ltd*., Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010) (the "Legacy Initial Transfer Action").

179.    As background, on November 12, 2019, the Bankruptcy Court entered a Stipulation and Order for Entry of Final Judgment ("Stipulated Order"), that included, among other things: (i) the Trustee's and Legacy's consent to the Bankruptcy Court's entry of a final

order and judgment in connection with the Trustee's avoidance claim, and (ii) entry of the final

order and judgment against Legacy in the amount of $79,125,781.00. The Stipulated Order

further provided that "the Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and

recoverable from Legacy under §550(a) of the Bankruptcy Code."

180.    On November 11, 2020, and within the time period set forth in §550(f) of the

Bankruptcy Code, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer,

Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA

Holdings, LLC, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid

Opportunities Fund Ltd. (collectively, the "Subsequent Transfer Defendants").  The complaint

sought recovery of approximately $49,505,850 in subsequent transfers of BLMIS customer

property originally made to Montpellier and Prince by Legacy. *See Picard v. Mayer et al*., Adv.

No. 20-01316 (CGM) (the "Legacy Subsequent Transfer Action").  Among the claims were

claims for vicarious liability, including alter ego liability, and piercing the corporate veil

concerning the individual defendants.

181.    On August 30, 2021, the Second Circuit issued a decision concerning an appeal in

*Picard v. Citibank, N.A.* and *Picard v. Legacy Capital, Ltd.*, holding that in a SIPA liquidation

the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry

notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack

of good faith (the "Good Faith Decision"). The Good Faith Decision vacated Judge Rakoff's

2014 consolidated good faith decision holding that in a SIPA liquidation good faith is governed

by a willful blindness standard and that a SIPA trustee bears the burden of pleading the

transferee's lack of good faith. The Good Faith Decision also vacated Judge Bernstein's 2016

motion to dismiss decision in the Trustee's action against Legacy applying Judge Rakoff's good

faith decision, which had dismissed all claims in that action except for Count I to the extent it related to avoidance of fictitious profits. The Second Circuit remanded the Legacy Initial Transfer Action to the Bankruptcy Court for the proceedings to continue consistent with the appellate decision.

182.    On April 27, 2022, the Trustee filed a complaint seeking to recover from BNP Paribas - Dublin Branch ("BNP Paribas") pursuant to Section 550 of the Bankruptcy Code, initial transfers in the amount of $49.5 million made from BLMIS to BNP Paribas from Legacy's BLMIS account.  *See Picard v. BNP Paribas – Dublin Branch,* Adv. No. 2201087 (CGM) (the "BNP Paribas Recovery Action"). These transfers sought were avoided in the November 12, 2019 Final Judgment and Stipulated Order as fictitious profits transferred from BLMIS to, or for the benefit of Legacy.

183.    During the Report Period, B&H attorneys, on behalf of the Trustee, prepared initial disclosures for exchange in the Legacy Subsequent Transfer Action.  On October 7, 2022, the Trustee and the Subsequent Transfer Defendants exchanged initial disclosures.

184.    During the Report Period, B&H attorneys, on behalf of the Trustee, drafted discovery requests for party and third-party witnesses in connection with the Legacy Initial Transfer Action and the Legacy Subsequent Transfer Action.  On January 20, 2023, the Trustee served discovery requests upon Legacy and the Subsequent Transfer Defendants.  On March 31, 2023, Legacy and the Subsequent Transfer Defendants provided their respective responses and objections to the Trustee's discovery requests. Additionally, B&H attorneys participated in initial meet and confers with Legacy's counsel in connection with document productions. In addition, B&H attorneys began to prepare for noticed third-party depositions.

185.    During the Report Period, B&H attorneys, on behalf of the Trustee, agreed to adjourn the initial pre-trial conference in the BNP Paribas Recovery Action so that the parties could determine if the Trustee's claims could potentially be resolved through early mediation. On September 29, 2022, the Trustee served a settlement demand letter upon BNP Paribas. The parties then entered into a stipulation extending the time for BNP Paribas to file its responsive pleading *sine die*, while the parties continued to meet and confer on a potential early resolution. The Trustee and BNP Paribas are continuing their efforts to explore mediation in this matter and have interviewed mediators for this purpose. The parties selected Hon. Faith Hochberg (retired) as the mediator for this adversary proceeding. In the event mediation is unsuccessful, the Trustee will file a notice with the Court to set a deadline for BNP Paribas's responsive pleading.

## F.    **Subsequent Transfer Actions**

186.    The Trustee and B&H attorneys continue to pursue recovery actions against entities that received subsequent transfers of Customer Property from BLMIS through primarily the Fairfield Funds, the Tremont Funds, and Harley.

187.    The Trustee settled his claims against the Fairfield Funds in 2011. *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-1239 (CGM), ECF No. 107. As part of the settlement, the Bankruptcy Court entered a consent judgment in the amount of approximately $3 billion, and the Fairfield Funds repaid $70 million to the Trustee. The Trustee then commenced dozens of cases to recover the subsequent transfers of Customer Property that defendants received from the Fairfield Funds. *See* discussion *supra* Section (VI)(E)(i).

188.    In 2011, the Trustee also settled his claims against the Tremont Funds in 2011. *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (SMB), ECF No. 38. As part of this settlement, the Tremont Funds repaid the Trustee $1.025 billion out of the $2.1 billion received from BLMIS. The Trustee has nine actions against defendants who received

subsequent transfers from the Tremont Funds. These actions seek to recover a portion of the $1 billion in transfers, which were not recovered as part of the settlement with the Tremont Funds.

189.    The Trustee has eight actions against defendants who received subsequent transfers from Harley. In 2009, the Trustee filed an adversary proceeding against Harley that sought to avoid and recover approximately $1 billion in initial transfers received from BLMIS. *Picard v. Harley International (Cayman) Limited, Inc.*, Adv. Pro. No. 09-01187 (CGM), ECF No. 1. Harley never responded to the complaint, and on November 10, 2010, the Bankruptcy Court entered a default judgment and summary judgment against Harley. The Trustee's actions seek to recover all of the avoided transfers that defendants received from Harley.

190.    As of today, the Trustee has 78 subsequent transfer actions pending, as set forth in the attached Exhibit D.

191.    All of these cases were affected by the Second Circuit's decision on good faith under sections 548(c) and 550(b) in the Trustee's cases against Citibank, N.A. and Legacy Capital Ltd. *See Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021) (the "Citibank Decision"). *See* discussion *supra* Section (VI)(D)(ii).

192.    Now that the Second Circuit has issued the Citibank Decision, the parties are actively litigating the subsequent transfer cases in the Bankruptcy Court. In approximately 25 cases, the Trustee has already or intends to file amended complaints based on information now available to the Trustee. In approximately 67 cases, defendants have moved to dismiss the Trustee's operative complaints, and the Bankruptcy Court has already denied defendants' motions to dismiss in approximately 60 cases and granted a defendant's motion to dismiss in 1 case. Following the Bankruptcy Court's denial of their motions to dismiss, defendants in 12

cases have filed motions to appeal the Bankruptcy Court's decisions. The District Court has denied interlocutory appeals in 8 cases; the appeals in 4 cases remain pending.

> i.    **Picard v. Citibank, N.A., et al.**

193.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).[15]

194.    On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint. (ECF No. 170). *See* discussion *supra* Section (VI)(D)(ii).

195.    On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (CGM)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the

---

[15] The Trustee refers the Court to the discussion *supra* Section (VI)(D)(ii) for additional information on the Citibank Action.

United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

196.    On June 8, 2020, the Second Circuit accepted the direct appeal. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), ECF No. 45.

197.    On August 6, 2020, the Trustee filed his appellate brief and appendices.   On August 13, professors of bankruptcy law, the National Association of Bankruptcy Trustees, and professors of civil procedure filed their respective briefs in support of the Trustee as *amici curiae*. On November 5, 2020, Defendants-Appellees filed their opposition brief, ECF No. 134. On November 12, 2020, (i) the Securities Industry and Financial Markets Association and the American Bankers Association; (ii) ABN AMRO Bank N.V.; and (iii) ABN AMRO Retained Custodial Services (Ireland) Limited and ABN AMRO Custodial Services (Ireland) Ltd. filed their respective briefs in support of the Defendants-Appellees' opposition as *amici curiae*, ECF Nos. 136, 139, 140. On November 25, 2020, the Trustee and SIPC filed their respective reply briefs, ECF Nos. 166, 167.

198.    Oral argument was heard on March 12, 2021, before the Second Circuit.   On March 23, 2021 and June 11, 2021, the Trustee filed notices to adjourn the pre-trial conference while awaiting the Second Circuit judgment, which was issued on August 31, 2021.  The Second Circuit judgment vacated the judgments of the bankruptcy court and remanded the case for proceedings consistent with the Second Circuit's opinion. *See* discussion *supra* Section (VI)(D)(ii).

199.    On February 11, 2022, the Trustee filed an amended complaint against Defendants.  On April 22, 2022, Defendants filed a motion to dismiss the amended complaint.

200.    On July 1, 2022, the Trustee filed his opposition to Defendants' motion to dismiss and argued the motion before Judge Cecelia M. Morris on September 14, 2022.    On September 27, 2022, Judge Morris denied Defendants' motion to dismiss in its entirety.

201.    During the Report Period, Defendants filed a motion for interlocutory appeal of the Bankruptcy Court's decision, challenging its application of the "Ponzi scheme presumption" and the avoidability of a $300 million transfer from BLMIS to Rye Select Broad Market Prime Fund, which Defendants assert did not deplete the BLMIS estate.    On November 16, 2022, B&H attorneys filed the Trustee's opposition to Defendants' motion for interlocutory appeal, and on November 30, 2022, Defendants filed their reply in support of their motion for interlocutory appeal.    On March 2, 2023, the Trustee filed a Case Management Plan.    On March 24, 2023, the Trustee served Defendants with his first set of requests for production.    On March 31, 2023, the Trustee served Defendants with his initial disclosures.

ii.    **Picard v. Natixis, et al.**

202.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the recovery of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Original Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (Bankr. S.D.N.Y. Dec. 8, 2010).

203.    On February 25, 2019, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019).  *See* discussion *supra* Section

(VI)(D)(i). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180). On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id*. (ECF No. 181).

204.    The Bankruptcy Court so ordered a stipulation on July 1, 2020, staying the Original Natixis Action pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *Picard v. Natixis*, Adv. Pro. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 185). *See* discussion *supra* Section (VI)(D)(ii).

205.    Following the Second Circuit's decision in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),* 12 F.4th 171 (2d Cir. 2021),[16] B&H attorneys analyzed the filed complaint in the Original Natixis Action, and in an effort to streamline proceedings, determined to dismiss Natixis FP and Bloom Asset Holdings Fund from the Original Natixis Action in favor of a separate proceeding against them.

206.    After conferring with B&H teams and opposing counsel, and engaging in extensive drafting and factual research, the Trustee filed an amended complaint in the Original Natixis Action against Natixis S.A. and Tensyr Limited on January 31, 2023 (ECF No. 193), and filed a new action against Natixis FP and Bloom Asset Holdings Fund in Adv. Pro. No. 23-01017 (the "Severed Natixis Action") on March 1, 2023.

---

[16] *See* discussion *supra* Section (VI)(D)(ii).

207.    During the Report Period, B&H attorneys conferred with opposing counsel regarding scheduling and prepared for potential motion practice in both the Original Natixis Action and the Severed Natixis Action.

### iii.    Picard v. Nomura International PLC

208.    On December 8, 2010, the Trustee commenced an action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action").  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010). On June 6, 2012, the Trustee filed an Amended Complaint in the Nomura Action.

209.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the "Extraterritoriality Issue").  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

210.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

211.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

212.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *supra* Section (VI)(D)(i).

213.    On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB), ECF No. 108.

214.    On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties.  *Id.*, ECF No. 113.  The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

215.    On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order.  *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i).

216.    On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court.  On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari.  *See* discussion *supra* Section (VI)(D)(i).  Also on June 1, 2020, the Second Circuit issued the mandate, returning the Nomura Action to the Bankruptcy Court.

217.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith.  *See In re Bernard L. Madoff Inv. Secs. LLC*, 12 F.4th 171, 185-200 (2d Cir. 2021).  *See* discussion *supra* Section (VI)(D)(ii). The

Second Circuit's decision governs the Trustee's actions against other subsequent transferee defendants, including Nomura.

218.    On April 4, 2022, Trustee filed stipulated scheduling orders governing briefing schedules for the Trustee's motions for leave to file amended complaints or, alternatively, for Nomura's motions to dismiss the amended complaints. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 120; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 90. B&H attorneys subsequently met and conferred with Nomura's counsel to obtain Nomura's consent to file the amended complaints. On June 13, 2022, B&H attorneys filed the amended complaints. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 121; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 91. On August 4, 2022, the Trustee filed an amended stipulated scheduling order governing Defendant's motion to dismiss the amended complaints. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 123; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 93. On August 26, 2022, Nomura filed motions to dismiss the Trustee's proceedings.

219.    During the Report Period, B&H attorneys, on behalf of the Trustee, filed the Trustee's oppositions to Nomura's motions to dismiss on November 8, 2022. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 127; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 97. On December 19, 2022, Nomura filed its reply memorandums in further support of its motions to dismiss. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 129; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 99. On January 27, 2023, the Trustee filed stipulations and orders waiving Nomura's oral argument on the motions to dismiss. *Picard v. Nomura Int'l plc*, Adv. Pro. No.

10-05348 (CGM), ECF No. 130; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 100.

iv.    **Picard v. Merrill Lynch International.**

220.    On December 8, 2010, the Trustee commenced an action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action*"). Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

221.    On August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith.  The *Citibank Decision* vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.

222.    During the Report Period and following the *Citibank Decision*, the Trustee updated and prepared a revised schedule for MLI to answer or move to dismiss the Amended Complaint.  Third Amend. Stip. and Order, ECF No. 139, at 5.  On October 19, 2022, MLI filed a motion to dismiss the Amended Complaint.  Mot. Dismiss, ECF No. 140.  The Trustee filed a response and declaration in opposition to this motion on December 9, 2022.  Opp. Mot. Dismiss, ECF Nos. 146-147.  MLI filed its reply in further support of the motion on January 11, 2023, with a corrected version having been filed on March 3, 2023.  Reply Mem., ECF Nos. 149-150.

223.    During the Report Period, the Trustee reviewed the various motion to dismiss related materials and prepared for oral argument on March 15, 2023, which was later waived by agreement of the parties through a stipulation and order entered on March 10, 2023.  Order, ECF No. 151.  On March 16, 2023, Judge Morris issued an opinion denying MLI's motion to dismiss, and an order denying the motion was entered on March 28, 2023.  Opinion, ECF No. 156; Order, ECF No. 159. B&H attorneys have since begun preparing for discovery in the matter. MLI's answer to the Amended Complaint is due to be filed on May 22, 2023.  Order, ECF No. 159.

### v.    Picard v. ABN AMRO Bank N.V.

224.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing two now-consolidated avoidance actions against ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.) ("ABN").

225.    In the first action, the Trustee seeks the return of approximately $286 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property ABN received from Rye Select Broad Market XL Portfolio, Ltd., Rye Select Broad Market Portfolio Limited, Rye Select Broad Market XL Fund L.P., and Rye Select Broad Market Fund L.P. *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.)*, Adv. No. 10-05354 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010) (the "ABN Rye Bankruptcy Court Action").

226.    On June 10, 2019, the Trustee filed a motion for leave to file a second amended complaint in the ABN Rye Bankruptcy Court Action. *Id*., ECF No. 179. On March 31, 2020, the Bankruptcy Court denied the Trustee's motion. *Id*., ECF No. 200. On April 9, 2020, the Bankruptcy Court entered a final judgment in the matter (the "Final Judgment"). *Id*., ECF No. 201.

227.    On April 23, 2020, the Trustee filed a Notice of Appeal, appealing the Final Judgment to the District Court. *Id.*, ECF No. 202. On May 12, 2020, the Record of Appeal was transmitted to the District Court and the appeal was assigned to Judge Valerie E. Caproni. *Picard v. ABN AMRO Bank N.V.*, No. 20-cv-3684 (VEC) (S.D.N.Y. May 12, 2020) ("ABN District Court Appeal"), ECF No. 1.

228.    On May 28, 2020, the Trustee moved the District Court for a stay of his appeal pending a decision by the Second Circuit in two similarly situated actions: *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively, the "Good Faith Appeals"). ABN District Court Appeal, ECF Nos. 3-4. On June 8, 2020, the District Court granted the Trustee's motion and stayed his appeal, with exception to permit a motion by ABN for certification of the appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 12.

229.    On June 9, 2020, ABN moved the District Court to certify the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF Nos. 17-18. On July 16, 2020, the District Court granted ABN's motion and certified the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 22.

230.    On July 21, 2020, ABN moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with the Related Appeals. *Picard v. ABN AMRO Bank, N.V.*, No. 20-2291 (2d Cir. July 21, 2020) ("ABN Second Circuit Appeal"), ECF Nos. 1-2. On August 4, 2020, the Second Circuit denied ABN's motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Good Faith Appeals. *Id.*, ECF No. 37. On October 6,

2020, the Second Circuit issued an order deferring its decision on ABN's motion for leave to appeal pending resolution of the Good Faith Appeals. *Id.*, ECF No. 48.

231.    On August 30, 2021, the Second Circuit entered its decision in the Good Faith Appeals. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. Aug. 30, 2021), ECF No. 182-1.

232.    On October 26, 2021, the parties filed a stipulation in the Second Circuit to withdraw the ABN Second Circuit Appeal with prejudice pursuant to Federal Rule of Appellate Procedure 42(b). ABN Second Circuit Appeal, ECF No. 51. On October 27, 2021, the Second Circuit "so-ordered" the stipulation and issued the mandate. *Id.*, ECF Nos. 57-58.

233.    On November 12, 2021, the parties filed a letter in the District Court to so order a stipulation vacating the Bankruptcy Court's Final Judgment in the ABN Rye Bankruptcy Court Action and remand the case to the Bankruptcy Court for further proceedings. ABN District Court Appeal, ECF No. 25. On November 12, 2021, the District Court "so-ordered" the stipulation, vacated the Bankruptcy Court's Final Judgment, and remanded the ABN Bankruptcy Court Action to the Bankruptcy Court for further proceedings. *Id.*, ECF No. 26.

234.    On November 16, 2021, the ABN Rye Bankruptcy Court Action was formally reopened in the Bankruptcy Court. ABN Rye Bankruptcy Court Action, ECF No. 214.

235.    On October 6, 2011, the Trustee commenced his second action against ABN in the adversary proceeding *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.) et al*, Adv. Pro. 11-02760 (CGM), seeking the return of approximately $21 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with subsequent transfers of BLMIS customer property ABN received from Harley International (Cayman) Limited (the "ABN Harley Bankruptcy Court Action").

236.    On July 6, 2014, the District Court entered an Opinion and Order ruling on extraterritoriality and international comity issues (the "District Court ET Decision") and returned certain matters to the Bankruptcy Court for further proceedings consistent with the District Court ET Decision, *see SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222 (S.D.N.Y. 2014).

237.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Bankruptcy Court ET Decision") dismissing certain claims to recover subsequent transfers on grounds of international comity resulting in the dismissal of all claims against ABN in the ABN Harley Bankruptcy Court Action. ABN Harley Bankruptcy Court Action, ECF No. 74; *see Picard v. Bureau of Labor Ins. (SIPC v. BLMIS)*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016).

238.    On February 25, 2019, the Second Circuit issued an order, *In re Picard*, 917 F.3d 85 (2d Cir. 2019) which, *inter alia*, vacated the Bankruptcy Court ET Decision.

239.    On January 19, 2022, the Bankruptcy Court "so-ordered" a stipulation between the parties setting forth a schedule for the Trustee to file a motion to amend the complaints and consolidate his two actions against ABN. ABN Rye Bankruptcy Court Action, ECF No. 217; ABN Harley Bankruptcy Court Action, ECF No. 109.

240.    On March 2, 2022, the Bankruptcy Court "so-ordered" an amendment to the Parties' January 19, 2022 stipulation (the "Amended Stipulation") setting forth, among other things, a deadline for ABN to inform the Trustee whether it would consent to the Trustee filing a Consolidated Second Amended Complaint (the "Consolidated Amended Complaint") and a briefing schedule for ABN's motion to dismiss in the event that it consented to the Trustee filing the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 219; ABN

Harley Bankruptcy Court Action, ECF No. 110. On March 7, 2022, ABN consented to the Trustee's filing of the Consolidated Amended Complaint.

241.    On March 22, 2022, the Trustee filed the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 220; ABN Harley Bankruptcy Court Action, ECF No. 111.

242.    On April 20, 2022, the Court "so-ordered" a Stipulation and Order for Consolidation, consolidating the ABN Rye Bankruptcy Court Action and the ABN Harley Bankruptcy Court Action under the ABN Rye Bankruptcy Court Action. ABN Rye Bankruptcy Court Action, ECF No. 222; ABN Harley Bankruptcy Court Action, ECF No. 113.

243.    On May 23, 2022, ABN filed its motion to dismiss the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 224. On July 22, 2022, the Trustee filed his opposition to ABN's motion, and ABN filed its reply in further support of its motion on August 22, 2022. *Id.*, ECF Nos. 226, 230.

244.    During the Report Period, B&H attorneys prepared for oral argument on ABN's motion, and on December 14, 2022, the parties argued before the Court. On March 3, 2023, the Court issued a Memorandum Decision Denying Defendant's Motion to Dismiss in its entirety. *Id.*, ECF No. 262. On March 15, 2023, the Court issued the corresponding Order Denying Defendant's Motion to Dismiss, which also ordered ABN to file an answer to the Consolidated Amended Complaint by May 15, 2023. *Id.*, ECF No. 266. B&H attorneys currently are preparing for discovery in the matter.

vi.    **Picard v. ABN AMRO Bank (Ireland) Ltd., et al.**

245.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland)

Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye

Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable

law for preferences and fraudulent conveyances in connection with certain transfers of property

by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN

AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

246.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order

Concerning the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 162). On

February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. (ECF

No. 165). On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion

for Leave to File an Amended Complaint. (ECF No. 169). On May 23, 2019, the Trustee filed

the Reply in Further Support of the Motion for Leave to File an Amended Complaint. (ECF No.

179). Oral argument in this matter was held on September 25, 2019. On January 23, 2020, the

Bankruptcy Court issued its Memorandum Decision Denying Motion for Leave to File Second

Amended Complaint. (ECF No. 188). On February 6, 2020, the Bankruptcy Court entered the

Stipulated Order Denying the Trustee's Motion for Leave to Amend and Entering Final

Judgment. (ECF No. 189).

247.    On February 19, 2020, the Trustee filed his Notice of Appeal. (ECF No. 189).  On

March 4, 2020, the Trustee filed his Designation of Items to be Included in the Record on Appeal

and Statement of Issues to Presented. (ECF No. 192).  On March 18, 2020, the Fortis Defendants

filed a Counter-Designation of Additional Items to be Included in the Record on Appeal. (ECF

No. 194).  On March 27, 2020, the Record of Appeal was transmitted to the United States

District Court of Appeal and assigned to Judge Colleen McMahon. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 27, 2020) (ECF Nos. 1, 3).

248.    On April 6, 2020, the Fortis Defendants moved for Leave to Appeal directly to the Second Circuit pursuant to § 158(d)(2)(A). (ECF Nos. 8-10).  On April 10, 2020, the Trustee filed a joint letter motion for an Extension of Time to Complete Merits Briefing and Trustee's Response and Consent to Defendants' Motion Requesting Permission to Appeal to the Second Circuit. (ECF No. 14).  On May 7, 2020, the Trustee filed a Letter Motion for an Extension of Time of Briefing Schedule beyond May 15, 2020. (ECF No. 17).  On May 8, 2020 Judge McMahon granted the Trustee's Letter Motion. (ECF Nos. 18, 19).  On June 11, 2020, Judge McMahon granted the Fortis Defendants' motion for Leave to Appeal and stayed merits briefing pending resolution of the motion. (ECF No. 24).

249.    On June 18, 2020, the Fortis Defendants filed a motion for Leave to Appeal to the Second Circuit.  *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Jun 18, 2020) (ECF Nos. 1-2).  The Fortis Defendants also filed a motion to expedite so that the Fortis Defendants' briefing could be heard in tandem with the related appeals of *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir.) and *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir.) (together, the "Related Appeals"). (ECF No. 2). On August 4, 2020, the Second Circuit denied the Fortis Defendants' motion to expedite and for hearing in tandem. (ECF No. 42).  On October 6, 2020, the Second Circuit deferred a decision on the motion for leave to appeal to the Second Circuit until the resolution of the Related Appeals. (ECF No. 48).

250.    On August 30, 2021, the Second Circuit rendered its decision in the Related Appeals, overturning the District Court's standard for pleading good faith, vacating the judgments of the Bankruptcy Court, and remanding for further proceedings consistent with the

opinion. *Picard v. Citibank, N.A.*, No. 20-1333 (2d. Cir. Aug. 30, 2021) (ECF No. 182); *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 30, 2021) (ECF No. 177). *See* discussion *supra* Section (VI)(D)(ii).

251.    On October 1, 2021, the Fortis Defendants filed an updated petition requesting permission to appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-1898 (2d Cir. Oct. 1, 2021) (ECF No.50). On October 12, 2021, the Trustee filed an opposition to this motion. (ECF No. 67). The matter was heard on February 1, 2022, and the Second Circuit denied the request for direct appeal on February 3, 2022. (ECF No. 84). The Trustee filed his merits brief on March 7, 2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 7, 2022) (ECF No. 27). The Fortis Defendants filed their opposition on April 6, 2022. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Apr. 6, 2022) (ECF No. 32). The Trustee replied on April 21, 2022.

252.    Judge McMahon rendered her decision for the Trustee and vacated the Bankruptcy Court's 2020 decision and remanded the matter back to the Bankruptcy Court. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. May 2, 2022) (ECF No. 35).

253.    The Trustee and the Fortis Defendants conferred and agreed upon a briefing schedule that allowed for the Trustee to file his second amended complaint. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Jun. 13, 2022) (ECF No. 203). The Trustee filed his second amended complaint on consent on June 17, 2022. (ECF No. 205). The Fortis Defendants filed a motion to dismiss on August 19, 2022. (ECF No. 209). The Trustee filed his opposition on October 18, 2022. (ECF No. 214). The Fortis Defendants filed a reply on Dec. 2, 2022. (ECF No. 230). Oral argument was held in the matter on February

15, 2023. (ECF No. 236). On March 28, 2023, Judge Morris issued a decision denying the motion to dismiss. (ECF No. 237). The Fortis Defendants' answer is currently due on May 26, 2023. (ECF No. 244).

## VII.    INTERNATIONAL INVESTIGATION AND LITIGATION

254.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Cayman Islands, France, Israel, and the United Kingdom, among others.

255.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

## A.    **Austria**

256.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction. In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

## B.    **BVI**

257.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme.

C.    **Cayman Islands**

258.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related

proceedings currently pending in the Cayman Islands.

D.    **England**

259.    The Trustee currently has protective claims pending in England against HSBC

and related entities. In addition, the Trustee is actively engaged in discovery involving English

documents and witnesses.

E.    **France**

260.    The Trustee is actively monitoring certain third-party proceedings relating to

BLMIS currently pending in France. In addition, the Trustee is actively engaged in discovery

involving French documents and witnesses.

F.    **Ireland**

261.    The Trustee continues to investigate BLMIS-related third-party litigation

currently pending in Ireland. In addition, the Trustee is actively engaged in discovery involving

Irish documents and witnesses.

G.    **Israel**

    i.    **Picard v. Magnify Inc.**

262.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc.

and several related companies holding BLMIS accounts, individuals acting on behalf of these

accounts, and several other recipients of transfers from these accounts (collectively, the

"Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and

78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances,

and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (CGM). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint. (ECF No. 143).

263.    Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181), and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. action and the Trustee's action in Israel against certain defendants ("Direct Action"). Following the mediation session, discussions among the parties continued, and the terms of a settlement were reached.

264.    The Trustee negotiated and drafted agreements for the resolution of those actions, along with consent judgments to be entered against the defendants and other ancillary documents.  The Trustee entered into a settlement agreement with the U.S. defendants, which was approved by the Bankruptcy Court on September 28, 2020, and with the defendants in the Direct Action as well.  In addition to a settlement payment of $3.5 million USD, which exceeded the two-year fictitious profits alleged against certain defendants, the settlement avoided the full life to date amount of the initial transfers as fictitious profits pursuant to the Bankruptcy Code. The settlement resulted in consent judgments against Defendants Magnify, Premero, Strand, and YHA for the full amount of the unrecovered liability alleged by the Trustee, among other benefits.  YHA has no assets and did not contribute to the settlement payment.  The consent judgments were entered by the Court on October 22, 2020.

265.    After the settlement was approved by the Bankruptcy Court, the Trustee focused on potential claims against several subsequent transferees.

266.    The Trustee also continued to prosecute his action commenced in 2015 in Israel to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts ("Indirect Action").  During the Report Period, the Trustee worked with Israeli counsel to analyze strategic issues relating to the case, including the extensive production of documents, affidavits, and other supporting materials in support of his case.

267.    Additionally, following the settlement, the Trustee's counsel prepared a subsequent transferee complaint to be filed in the United States against various Israeli academic institutions that received transfers from YHA.  In connection with that complaint, Trustee's counsel researched various legal issues, examined the defendants' activities and roles, and confirmed analyses associated with the money received by these defendants.  The Trustee filed the subsequent transfer complaint on September 27, 2021 in the U.S. Bankruptcy Court for the Southern District of New York.

268.    On February 10, 2022, the Subsequent Transfer Defendants filed a motion (ECF Nos. 6-27) to dismiss the Trustee's complaint arguing, among other things, that the Court lacks jurisdiction over the Israeli defendant institutions.  In connection with the motion to dismiss, the Trustee's counsel engaged in analysis and research on jurisdictional issues and various Bankruptcy Code arguments raised in the motion, as well as consulted an Israeli expert on Israeli corporate law, who prepared a comprehensive declaration that was submitted along with the Trustee's opposition to the motion to dismiss.  The Trustee filed his opposition to the motion to dismiss on June 15, 2022 (ECF No. 36).  The Subsequent Transfer Defendants filed their reply on September 15, 2022 (ECF No. 45).  Oral argument on the motion took place on December 21, 2022.  On March 29, 2023, the Bankruptcy Court issued its decision on the motion to dismiss, rejecting the Subsequent Transfer Defendants' argument that the Trustee failed to state a claim,

but dismissing the Trustee's complaint on lack of personal jurisdiction grounds under Federal Rule of Civil Procedure 12(b)(2).

## H.   Liechtenstein

269.   The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

## I.   Switzerland and Luxembourg

270.   The Trustee continues to monitor certain BLMIS-related third-party actions currently pending in these jurisdictions. In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.   RECOVERIES AND CONTINGENCIES

## A.   Recoveries Accomplished During Prior Report Periods

271.   In the Sixth through Twenty-Eighth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover $14,537,906,115.45 for the benefit of BLMIS customers.

## B.   Recoveries Accomplished During This Report Period

272.   During the Report Period, the Trustee settled 2 cases. Additionally, the Trustee received recoveries in connection with settlements totaling $17,815,478.54. As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover over $14.566 billion.

273.   The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. During the Report Period, the Trustee had received

distributions from seven of these class action settlements totaling over $91,000. The Trustee has

not and will not receive any distributions from the eighth class action settlement.

274.    In addition, the Trustee has identified claims that BLMIS may have in 201 other

class action suits also arising out of its proprietary and market making activities. The Trustee has

filed proofs of claim in 128 of these cases and, based on a review of relevant records, has

declined to pursue claims in 73 additional cases. As of March 31, 2023, the Trustee has

recovered $2,655,599.48 from settlements relating to 62 of the 128 claims filed directly by the

Trustee during the Report Period, of which $794.53 was recovered during this Report Period.

## IX.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    The Customer Fund

275.    In order to protect customers of an insolvent broker-dealer such as BLMIS,

Congress established a statutory framework pursuant to which customers of a debtor in a SIPA

liquidation are entitled to preferential treatment in the distribution of assets from the debtor's

estate. The mechanism by which customers receive preferred treatment is through the creation of

a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.

Customers holding allowable claims are entitled to share in the Customer Fund based on each

customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-

2(c).

276.    In order to make interim distributions from the Customer Fund, the Trustee must

determine or be able to sufficiently estimate: (a) the total value of customer property available

for distribution (including reserves for disputed recoveries), and (b) the total net equity of all

allowed claims (including reserves for disputed claims). Each element of the equation—the

customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

277.    There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

278.    The Trustee previously filed fourteen motions seeking entry of orders approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed Through 9/30/22 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $888.2 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.458 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $904.4 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $608.4 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million | $524.3 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[17] | $1.573 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $247.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $327.7 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $719.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $514.2 million | 2.729% | 18295 | 18398 |

---

[17] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

| 11 | 02/28/20 | $988.770 million | $370.8 million | 1.975% | 19226 | 19245 |
| 12 | 2/26/21 | $74.325 million | $232.4 million | 1.240% | 20066 | 20209 |
| 13 | 2/25/2022 | $128.570 million | $113.0 million | 0.604% | 20963 | 21036 |
| 14 | 2/24/2023 | $44.229 million | $49.6 million | 0.265% | 22697 | 22819 |
| TOTAL | N/A | $14.541 billion | $13.530 billion | 70.717% | N/A | N/A |

## B.    The General Estate

279.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

280.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## X.    FEE APPLICATIONS AND RELATED APPEALS

## A.    Objections to Prior Fee Applications

281.    Objections were filed to six of the forty-one fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.). The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B.      Fortieth Fee Application

282.      On October 31, 2022, the Trustee and his counsel filed the Fortieth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from April 1, 2022 through and including July 31, 2022 with the Bankruptcy Court. (ECF No. 22477). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 22477 - 22492). A Certificate of No Objection was filed on December 2, 2022, and an Order was entered granting the Applications on December 6, 2022. (ECF No. 22687).

### C.      Forty-First Fee Application

283.      On February 28, 2023, the Trustee and his counsel filed the Forty-First Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2022 through and including November 30, 2022 with the Bankruptcy Court. (ECF No. 22957). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 22957 - 22970). A Certificate of No Objection was filed on April 3, 2023, and an Order was entered granting the Applications on April 5, 2023. (ECF No. 23080).

# XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through March 31, 2023, unless otherwise indicated. This Report will be supplemented and updated with further interim reports.

Dated: New York, New York
       May 1, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*/s/ Irving H. Picard*
_____
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*