**Hearing Date and Time:** September 20, 2023 at 10:00 a.m. EDT
**Response Deadline:** July 14, 2023
**Reply Deadline:** August 18, 2023

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant M&B Capital*
*Advisers Sociedad De Valores, S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>        *Plaintiff-Applicant,* <br><br>   v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>        *Defendant.* | Adv. Proc. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re <br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>        *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>        *Plaintiff,* <br><br>   v. <br><br> UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) S.A.), UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. | Adv. Proc. No. 10-5311 (CGM) <br><br><br><br> **NOTICE OF M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

> EQUITY PLUS, as represented by their Liquidators
> MAÎTRE ALAIN RUKAVINA and PAUL
> LAPLUME, MAÎTRE ALAIN RUKAVINA and
> PAUL LAPLUME, in their capacities as liquidators
> and representatives of LUXEMBOURG
> INVESTMENT FUND AND LUXEMBOURG
> INVESTMENT FUND U.S. EQUITY PLUS,
>
> *Defendants.*

M&B Capital Advisers Sociedad De Valores, S.A. ("**M&B**"),[1] Defendant in the above-captioned adversary proceeding, moves to dismiss (the "**Motion to Dismiss**") the Second Amended Complaint [Dkt. 284] (the "**Complaint**") under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, on the ground that the Court lack personal jurisdiction over the defendant and that the Complaint fails to state a claim on which relief may be granted.[2]

In support of the Motion to Dismiss, M&B submits the contemporaneously filed (i) *Memorandum of Law in Support of Its Motion To Dismiss the Complaint*, and (ii) *Declaration of Juan Carlos Rodriguez Hergueta*.

In accordance with the *Stipulation and Order* entered February 23, 2023 [Dkt. 283], the deadline for any response to the Motion to Dismiss is July 14, 2023, and the deadline for any reply to the Motion to Dismiss is August 18, 2023.

A hearing on the Motion to Dismiss will be held before the Honorable Cecelia G. Morris on September 20, 2023 at 10:00 a.m. Eastern Daylight Time. The hearing will be

---

[1] As alleged in the Complaint, a predecessor defendant, M&B Capital Advisers SGIIC, was merged into M&B. (Compl. ¶ 85.) All references in the Memorandum to M&B include M&B Capital Advisers SGIIC. As stated in the Declaration of Juan Carlos Rodriguez Hergueta, filed concurrently herewith, the name of M&B Capital Advisers Sociedad De Valores, S.A. was changed in 2012 to M&B Capital Advisers, S.A. and in 2020 to Nikala 2021 S.A.

[2] In accordance with Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, M&B does not consent to the entry of final orders or judgment by this Court.

conducted via Zoom®. Parties wishing to participate in the hearing must register their appearance utilizing the Electronic Appearance portal located on the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than 4:00 p.m. Eastern Daylight Time on September 18, 2023. Additional information concerning how to participate in the hearing is available in the Court's Zoom Video Hearing Guide, available at: https://www.nysb.uscourts.gov/zoom-video-hearing-guide.

Dated:    New York, New York
          May 5, 2023

                                        By: /s/ _Richard Levin_____

                                        JENNER & BLOCK LLP
                                        Richard Levin
                                        Carl Wedoff
                                        1155 Avenue of the Americas
                                        New York, NY 10036
                                        (212) 891-1600
                                        rlevin@jenner.com
                                        cwedoff@jenner.com

                                        Vincent E. Lazar
                                        353 N. Clark Street
                                        Chicago, IL 60654
                                        (312) 222-9350
                                        vlazar@jenner.com

                                        *Counsel for Defendant M&B Capital
                                        Advisers Sociedad De Valores, S.A.*

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant M&B Capital*
*Advisers Sociedad De Valores, S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> *Plaintiff-Applicant,* <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br> *Defendant.* | Adv. Proc. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re <br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) S.A.), UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, as represented by their Liquidators | Adv. Proc. No. 10-5311 (CGM) <br><br> **M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

MAÎTRE ALAIN RUKAVINA and PAUL
LAPLUME, MAÎTRE ALAIN RUKAVINA and
PAUL LAPLUME, in their capacities as liquidators
and representatives of LUXEMBOURG
INVESTMENT FUND AND LUXEMBOURG
INVESTMENT FUND U.S. EQUITY PLUS,

*Defendants.*

# Table of Contents

Table of Contents.................................................................................................................. i

Table of Authorities ............................................................................................................. ii

I.    Introduction ............................................................................................................... 1

II.   Standard on Motion to Dismiss ................................................................................ 2

III.  M&B Is Not Subject To Personal Jurisdiction In The United States........................... 3

    A.   Facts Relating to Personal Jurisdiction ................................................................ 3

    B.   Due Process Requires Minimum Contacts and Reasonableness for Personal
         Jurisdiction. ........................................................................................................ 6

    1.   "Minimum Contacts" Requires Purposeful Availment And The Defendant's
        Forum Conduct .................................................................................................. 7

        a.   M&B Did Not Purposefully Avail Itself Of The Benefits And Protections
            Of United States Law Or Direct Its Conduct Into The Forum........................... 7

        b.   Without M&B's Forum Contact, The Trustee's Claims Cannot Arise
            Out Of Or Relate To Forum Conduct................................................................10

        c.   An Agency Theory Does Not Support Personal Jurisdiction Over M&B..........11

    2.   Exercise of Personal Jurisdiction Over M&B Would Not Be Reasonable. .............12

IV.  The Complaint Fails To State A Claim for Recovery of Subsequent Transfers. ........14

    A.   Facts. ..................................................................................................................14

    B.   The Complaint Fails to Specify the Timing, Amount, and Nature of the
         Alleged Subsequent Transfers...........................................................................15

    C.   The Complaint Nonsensically Seeks to Recover Transfers Made Before
         Any Initial Transfers. .........................................................................................17

V.   The Court Should Dismiss The Complaint's Improper Requests for
      Additional Relief Against M&B. ................................................................................19

Conclusion ..........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anchor v. Novartis Grimsby Ltd.*,
282 F. App'x 872 (2d Cir. 2008) ......................................................................................2

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
480 U.S. 102 (1987) .........................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................3, 7, 16

*Brian Jonestown Massacre v. Davies*,
2014 WL 4076549 (N.D. Cal. Aug. 18, 2014) ...............................................................19

*Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*,
137 S. Ct. 1773 (2017) .....................................................................................................11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...........................................................................................................13

*In re Cahillane*,
408 B.R. 175 (Bankr. N.D. Ind. 2009) ...........................................................................19

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) .............................................................................17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .............................................................................................16

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d at 165 ...................................................................................................................13

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) .........................................................................................2, 7

*In re Enron Corp.*,
281 B.R. 836 (Bankr. S.D.N.Y. 2002) .............................................................................18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) .............................................................................................6, 8, 10

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
667 F. Supp. 2d 308 (S.D.N.Y. 2009) .............................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................................11

*In re Harvard Knitwear, Inc.*,
193 B.R. 389 (Bankr. E.D.N.Y. 1996) ...................................................19

*Hau Yin To v. HSBC Holdings Plc*,
2017 U.S. Dist. LEXIS 28931 (S.D.N.Y.)...............................................8

*Hau Yin To v. HSBC Holdings Plc*,
700 F. App'x 66 (2d Cir. 2017) .........................................................7, 12

*In re Lehman Bros. Holdings Inc.*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) .....................................................2

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ...................................................................6

*Palnik v. Westlake Entm't, Inc.*,
344 Fed. App'x 249 (6th Cir. 2009)........................................................7

*Papasan v. Allain*,
478 U.S. 265 (1986).................................................................................3

*Peters v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*,
61 F.4th 242 (2d Cir. 2023)...................................................................13

*Picard v. Banque Internationale à Luxembourg S.A.*,
2023 WL 2504787 (Bankr. S.D.N.Y. Mar. 14, 2023) ..........................10

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................11

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
440 B.R. 274 (Bankr. S.D.N.Y. 2010) .....................................................6

*Picard v. The Hebrew Univ. of Jerusalem*,
2023 WL 2667531 (Bankr. S.D.N.Y. Mar. 28, 2023)...........................11, 12, 13

*Picard v. LGT Bank in Liechtenstein Ltd.*,
2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023).............................18

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................16, 17

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...............................................16, 17

*Picard v. Six Sis AG*,
2023 WL 2998470 (Bankr. S.D.N.Y. Apr. 18, 2023)............................10

*Picard v. SNS Bank N.V.*,
   2023 WL 2395734 (Bankr. S.D.N.Y. Mar. 7, 2023) ........................................................18

*Picard v. UBS Europe SE*,
   2023 WL 2290822 (Bankr. S.D.N.Y. Feb. 28, 2023) ......................................................18

*Picard v. UBS Europe SE*,
   2023 WL 2703689 (Bankr. S.D.N.Y. Mar. 29, 2023) .....................................................10

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001) .................................................................................3

*Roper Starch Worldwide v. Reymer & Assocs.*,
   2 F. Supp. 2d 470 (S.D.N.Y. 1998) ...................................................................................8

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) ..............................................................................................16

*SAS Group, Inc. v. Worldwide Inventions, Inc.*,
   245 F. Supp. 2d 543 (S.D.N.Y. 2003) ...............................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   590 B.R. 200 (Bankr. S.D.N.Y. 2018) .............................................................................18

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .........................................................................................6, 7

*Strandberg v. State Farm Mutual Auto Ins. Co.*,
   2016 WL 614401 (D. Nev. Feb. 16, 2016) ......................................................................16

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ..............................................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014).........................................................................................................10

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ..............................................................................................7

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).......................................................................................................8, 9

**Statutes**

15 U.S.C. § 78fff-2(c)(3) .......................................................................................................14

28 U.S.C. § 1334(b) ...............................................................................................................11

11 U.S.C. § 548 ................................................................................................................14, 19

11 U.S.C. § 550 ...................................................................................................................19

11 U.S.C § 550(a) ..............................................................................................................15

**Other Authorities**

Fed. R. Bankr. P. 2004 .......................................................................................................18

Fed. R. Bankr. P. 7004 .........................................................................................................4

Fed. R. Bankr. P. 7004(f) ......................................................................................................6

Fed. R. Civ. P. 8(a)(1) ...........................................................................................................7

Fed. R. Civ. P. 12(b)(2) .........................................................................................................2

Fed. R. Civ. P. 12(b)(6) .........................................................................................................3

Fed. R. Civ. P. 26 ................................................................................................................18

N.Y. C.P.L.R. 301 .................................................................................................................4

N.Y. C.P.L.R. 302 .................................................................................................................4

Defendant M&B Capital Advisers Sociedad De Valores, S.A. ("**M&B**")[1] submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint [Dkt. 284] (the "**Complaint**"),[2] filed by plaintiff Irving H. Picard, trustee (the "**trustee**") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("**BLMIS**").

## I.    Introduction

Only Count Three of the Complaint seeks relief against M&B. It alleges that BLMIS made avoidable transfers to Luxembourg Investment Fund U.S. Equity Plus ("**LIF-USEP**") and that M&B was a subsequent transferee of certain of those transfers.

M&B is not subject to personal jurisdiction in this Court. It never transacted business in the United States, and its sole source of revenue and profit was business activity conducted solely in Europe, not in the United States. It had no property (not even a direct or correspondent bank account) or other presence in New York. Rather, M&B was a diversified investment services firm incorporated and doing business only in Spain, whose clients did not include any U.S. citizens or residents.

The Complaint also fails to state a claim against M&B. It seeks judgment against the Subsequent Transferee Defendants,[3] including M&B:

(a)    recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the estate of BLMIS;

(b)    directing the Subsequent Transferee Defendants to the extent allowable by law, to disgorge to the Trustee all profits, including any and all management fees, incentive fees or other compensation and/or

---

[1] As alleged in the Complaint, a predecessor defendant, M&B Capital Advisers SGIIC, was merged into M&B. (Compl. ¶ 85.) All references in the Memorandum to M&B include M&B Capital Advisers SGIIC. As stated in the Declaration of Juan Carlos Rodriguez Hergueta, filed concurrently herewith, the name of M&B Capital Advisers Sociedad De Valores, S.A. was changed in 2012 to M&B Capital Advisers, S.A. and in 2020 to Nikala 2021 S.A. For convenience, this Memorandum continues to refer to the Defendant as "M&B."

[2] Unless otherwise noted, all "Dkt." citations refer to Adv. Proc. No. 10-5311 (CGM).

[3] Capitalized terms in this Memorandum that are defined in the Complaint are used with the same meaning as in the Complaint.

remuneration received by the Subsequent Transferee Defendants related
to or arising from, or concerning the Subsequent Transfers from BLMIS
to the Subsequent Transferee Defendants;

(c)    disallowing any claim that the Subsequent Transferee Defendants may
have against the Debtors until such time as the Subsequent Transfers are
repaid to the Trustee;

(d)    recovering attorneys' fees and costs from the Subsequent Transferee
Defendants; and

(e)    awarding any other relief the Court deems just and appropriate.

(Compl. p. 73.) As to prayer for relief (a), the Complaint fails to allege plausibly that M&B

received transfers of BLMIS customer property that were initially transferred to LIF-USEP

in avoidable transfers. Not only does it fail to allege the "what, when, and how much" of the

Subsequent Transfers, it nonsensically alleges that subsequent transfers took place *before*

the Initial Transfers from BLMIS to LIF-USEP. As to prayers for relief (b) and (d), such relief

is not authorized by law, and prayer for relief (c) is inapplicable as the Complaint does not

allege that M&B filed a customer claim, and in fact, M&B does not assert a claim.

## II.    Standard on Motion to Dismiss

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2),

"the plaintiff bears the burden to make a prima facie showing that jurisdiction exists," *In re*

*Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015). The Complaint must

allege sufficient facts to make a prima facie case of personal jurisdiction. *Anchor v. Novartis*

*Grimsby Ltd.*, 282 F. App'x 872, 874 (2d Cir. 2008). Where the complaint's allegations are

legally sufficient, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir.

2013), the court "may determine the motion on the basis of affidavits alone; or it may permit

discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the

motion.'" *Id.* at 84 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.

1981)).

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001).

## III.   M&B Is Not Subject To Personal Jurisdiction In The United States.

### A.  Facts Relating to Personal Jurisdiction

The Complaint contains vague, conclusory, and formulaic allegations concerning all the Defendants, not specific to M&B, regarding this Court's personal jurisdiction:

- [T]he Defendants have or had offices in New York, are doing or did business in New York, and/or transact or transacted business in New York during the time periods addressed herein. For some, New York is or was their principal place of business.

- [C]ertain of the UBS Defendants, RIR, and M&B communicated regularly with persons in New York regarding LIF-USEP and/or BLMIS, met (directly or through their agents) with BLMIS in New York, and sent and/or received funds to and/or from BLMIS in New York, utilizing New York banks.

- The ultimate source of profit and/or revenue, for all of the Defendants in this action, was business activity expected to be

3

> undertaken exclusively in New York—and this was known to
> each and every Defendant to this proceeding. All of the
> Defendants together engaged in an effort to direct investor funds
> into New York via BLMIS and to profit therefrom.

(Compl. ¶¶ 17–18.[4]) None of these generalized allegations to support personal jurisdiction are pled with sufficient specificity to identify which jurisdictional conduct, if any, M&B—versus the other Defendants—engaged in.

What is more, the general jurisdictional allegations do not apply to M&B at all. The Declaration of Juan Carlos Rodriguez Hergueta, a former Managing Director of M&B, ("**Rodriguez Decl.**"), filed contemporaneously herewith, shows that M&B was an investment services firm incorporated and located only in Spain. (Rodriguez Decl. ¶¶ 1–2.) M&B never had an office, property, or presence in the United States, (*id.*¶¶ 3–6), never was authorized or qualified to transact or transacted business in the United States or derived revenue from services performed in the United States, (*id.*¶¶ 7, 8), had no U.S. clients or

---

[4] The Complaint's complete jurisdictional allegations are as follows:

> 17. This Court has personal jurisdiction over each of the Defendants under N.Y. C.P.L.R. 301 and 302, and Bankruptcy Rule 7004. Each Defendant has maintained minimum contacts with New York in connection with the claims in this adversary proceeding. As further alleged herein, the Defendants have or had offices in New York, are doing or did business in New York, and/or transact or transacted business in New York during the time periods addressed herein. For some, New York is or was their principal place of business. LIF-USEP had an account with BLMIS in New York. The UBS Defendants, RIR, LIF-USEP, and LIF-USEP's umbrella fund, Luxembourg Investment Fund SICAV ("LIF"), delivered agreements or caused agreements to be delivered in New York, relating to BLMIS. In addition, certain of the UBS Defendants, RIR, and M&B communicated regularly with persons in New York regarding LIF-USEP and/or BLMIS, met (directly or through their agents) with BLMIS in New York, and sent and/or received funds to and/or from BLMIS in New York, utilizing New York banks. In addition, Customer Claims were filed in the SIPA Proceeding, purportedly on behalf of LIF and/or LIF-USEP.

> 18. Finally, it is beyond dispute that LIF-USEP's sole purpose was to direct investments into BLMIS in New York. Thus, the ultimate source of profit and/or revenue, for all of the Defendants in this action, was business activity expected to be undertaken exclusively in New York—and this was known to each and every Defendant to this proceeding. All of the Defendants together engaged in an effort to direct investor funds into New York via BLMIS and to profit therefrom.

(Compl. ¶¶ 17–18.)

agent for service of process in the United States (*id.* ¶¶ 9, 10). M&B's sole source of revenue and profit was business activity conducted solely in Europe, not in the United States. (*See id.* ¶¶ 1, 2, 8, 10). M&B never intended to invoke the protections or benefits of New York law or to avail itself of any of the benefits of transacting business anywhere in the United States. (*Id.* ¶ 11.)

M&B communicated with persons in the United States only to administer foreign contracts. (*Id.* ¶¶ 17–19.) M&B's only role in connection with LIF-USEP was to act as the fund's distributor in Spain and Portugal. (*Id.* ¶ 12.) To that end, M&B consulted with LIF-USEP and its service providers on features of the fund, such as the types and liquidity of LIF-USEP's shares and the amount and allocation among share classes of management fees, that would facilitate sale of investments, but it had no authority decide whether to incorporate any of those features. (*Id.* ¶¶ 13, 14.) In fact, M&B had no corporate authority over, had no authority to act on behalf of, exercised no domination or control over or access to management of, did not operate, and participated in no trading or custody activities related to LIF-USEP, and neither M&B SV nor M&B SGIIC was an agent of LIF-USEP and had no written or oral agency agreement with LIF-USEP. (*Id.* ¶¶ 14, 16.) Further, none of M&B's directors, officers, or employees served on the board of directors of LIF-USEP. (*Id.* ¶ 15.)

M&B never entered into any agreement with Madoff, BLMIS, or any U.S.-based person related to them or to LIF-USEP, never delivered or caused to be delivered agreements related to LIF-USEP in the United States, and never sent funds to or received funds from BLMIS. (*Id.* ¶¶ 20–21.)

Based on these facts, M&B is not subject to personal jurisdiction in the United States.

### B. Due Process Requires Minimum Contacts and Reasonableness for Personal Jurisdiction.

A bankruptcy court may exercise personal jurisdiction over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if the exercise is consistent with the U.S. Constitution. Fed. R. Bankr. P. 7004(f); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010).[5] Due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). "Minimum contacts" requires that "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State, [and] the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

A court may exercise specific personal jurisdiction[6] only if it finds not just sufficient contacts, but sufficient contacts directly related to the action. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("The plaintiff 's claims … must arise out of or relate to the defendant's contacts with the forum). A person should not be required to defend against claims in a foreign court if he could not reasonably have anticipated being haled into that court or if he did not purposefully avail himself of the benefits and protections of the forum's laws. *Id.* at 1027.

---

[5] The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

[6] The trustee does not allege that the Court has general personal jurisdiction over M&B.

The plaintiff bears the burden of establishing personal jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016). The "short and plain statement of the grounds for the court's jurisdiction" required under Rule 8(a)(1) must state facts that support personal jurisdiction with reasonable specificity. *Palnik v. Westlake Entm't, Inc.,* 344 Fed. App'x 249, 251–52 (6th Cir. 2009) (citing *Twombly,* 550 U.S. 567). The plaintiff "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). Where the complaint's allegations are legally sufficient, *Dorchester Fin. Sec.*, 722 F.3d at 84–85, the court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.* at 84.

1. **"Minimum Contacts" Requires Purposeful Availment And The Defendant's Forum Conduct**

   a. **M&B Did Not Purposefully Avail Itself Of The Benefits And Protections Of United States Law Or Direct Its Conduct Into The Forum.**

In *SPV Osus*, the Second Circuit described purposeful availment as requiring not only the conduct of activities *within* the forum State but also that the availment "thus invoke[ed] the benefits and protections of its laws." 882 F.3d at 344. Purposeful availment requires a "sustained and substantial transaction of business in New York." *Hau Yin To v. HSBC Holdings Plc*, 700 F. App'x 66, 67 (2d Cir. 2017), *quoting D&R Glob, Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298 (2017). Random, fortuitous, or attenuated contacts are insufficient. *SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003). Similarly, "a foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction without the defendant having 'projected' itself into New York for the purposes of conducting

7

business there." *Hau Yin To v. HSBC Holdings Plc*, 2017 U.S. Dist. LEXIS 28931, *13 (S.D.N.Y.), *aff'd* 700 F. App'x 66 (2d Cir. 2017) (transmission of funds and monies to fulfill duties under foreign contract "insufficient to 'project' the Foreign Defendants into New York"); *Roper Starch Worldwide v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (phone calls to ensure compliance with foreign contract).

Moreover, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co.*, 141 S. Ct. at 1025 (internal citations omitted). "When (but only when) a company exercises the privilege of conducting activities within a state—thus enjoying the benefits and protection of its laws—the State may hold the company to account for related misconduct." *Id.* at 1026 (cleaned up). Thus, the Supreme Court held the Oklahoma courts did not have personal jurisdiction over the defendants where they

> carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

Aside from the formulaic allegations in paragraph 17 of the Complaint, which either apply only to the other defendants or are simply not true (*see* Rodriguez Decl. ¶¶ 3–9, 15, 17–19), the Complaint's allegations show that M&B is not subject to personal jurisdiction in this court. The Complaint alleges that M&B was organized under Spanish law and had its office in Spain. (Compl. ¶ 84.) It alleges (in some cases, inaccurately, as shown by the Rodriguez Declaration) that all of M&B's activities were in Europe: functioning as a family office for European investors (*id.* ¶ 86); participating in the establishment and operation of LIF-USEP,

a Luxembourg investment fund (*id.* ¶¶ 86, 92, 142, 257, 259)[7]; allegedly operating or controlling LIF-USEP in Luxembourg (*id.* ¶¶ 86, 99, 258); placing its clients' funds into LIF-USEP, a Luxembourg fund (*id.* ¶ 169); communicating with Optimal and Echeverria, both located in Geneva, Switzerland, during LIF-USEP's existence (*id.* ¶ 173)[8]; and receiving payments from LIF-USEP in Europe (*id.* ¶¶ 270, 272, 276).

The Rodriguez Declaration confirms that all M&B's activities were in Europe, not in the United States. M&B never maintained offices, solicited customers, had a bank account or any other property, conducted or qualified to do any business or rendered any services, or derived any revenue from services it provided in the United States. (*See* Rodriguez Decl. ¶¶ 3–11.) Just like the defendant in the Supreme Court's *World-Wide Volkswagen* decision, M&B:

> carr[ied] on no activity whatsoever in [New York]. [It] close[d] no sales and perform[ed] no services there. [It] avail[ed] themselves of none of the privileges and benefits of [New York] law. [It] solicit[ed] no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that [it] regularly sell[s] [investments or investment advisory services] to [New York] customers or residents or that they indirectly, through others, serve[d] or seek to serve the [New York] market.

444 U.S. at 295. In short, it transacted no business in New York and did not seek the protections or benefits of New York law. And just like the defendant in *World-Wide Volkswagen*, it is not subject to personal jurisdiction in this Court.

---

[7] The Complaint alleges that M&B participated in the creation of two other investment funds, Landmark and Defender (Compl. ¶¶ 179, 180), but as this litigation does not involve either of those funds, M&B's activities regarding those funds are not relevant to the jurisdictional analysis in this adversary proceeding.

[8] The Complaint also alleges communications with Reliance, a U.S. entity (Compl. ¶ 172), but as this litigation does not concern any transactions *between* M&B and Reliance, those communications are not relevant to the jurisdictional analysis.

Unlike other cases in which this Court found personal jurisdiction based on the trustee's allegation that the defendant "knowingly directed funds to be invested with and then redeemed from New York-based BLMIS" and sought to recover payments the defendant received on account of those investments, *see, e.g.*, *Picard v. Six Sis AG*, 2023 WL 2998470, at *2 (Bankr. S.D.N.Y. Apr. 18, 2023); *Picard v. UBS Europe SE*, 2023 WL 2703689, at *7 (Bankr. S.D.N.Y. Mar. 29, 2023); *Picard v. Banque Internationale à Luxembourg S.A.*, 2023 WL 2504787, at *3 (Bankr. S.D.N.Y. Mar. 14, 2023), the Complaint contains no such allegations. M&B was an investment advisor only for European clients.

Mere knowledge that LIF-USEP would invest in New York also does not support jurisdiction. *Walden v. Fiore*, 571 U.S. 277 (2014), is dispositive on this point. In *Walden*, the Georgia defendant knew his conduct was directed to a Nevada resident. The Supreme Court held it unconstitutional to exercise personal jurisdiction over the defendant in Nevada. The foreseeability to the defendant of the plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant. *Id.* at 289. The Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' … [for] minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

### b.  Without M&B's Forum Contact, The Trustee's Claims Cannot Arise Out Of Or Relate To Forum Conduct.

Minimum contacts also requires that the action "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co.*, 141 S. Ct. at 1026 (emphasis in original). Proof of "in-state conduct is not required." *Id.* at 1027. An "affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes

place in the forum State [that] is therefore subject to the State's regulation" can suffice. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). However, less substantial contacts may require a higher level of affiliation between the forum and the action. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

As shown above and in the Rodriguez Declaration, M&B had no relevant contacts with the United States. Nor is there "an affiliation between the forum and the underlying controversy," as required by *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017). The controversy here is over investments in the LIF-USEP fund and deposits to and withdrawal from LIF-USEP's BLMIS account. M&B did not make any deposits and did not receive any withdrawals. The mere fact that this proceeding might be related enough to the BLMIS case to give this Court "related to" subject matter jurisdiction, *see* 28 U.S.C. § 1334(b), does not by itself create the "affiliation between the forum and the underlying controversy" necessary for personal jurisdiction over any entity against whom the trustee might have a claim. *See Picard v. The Hebrew Univ. of Jerusalem*, 2023 WL 2667531, at *8–9 (Bankr. S.D.N.Y. Mar. 28, 2023).

### c.  An Agency Theory Does Not Support Personal Jurisdiction Over M&B.

The trustee also alleges that Manuel Echeverría was M&B's agent with respect to LIF-USEP. While an agent's activities in the forum might be attributed to the principal for purposes of finding personal jurisdiction, *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2009), the court must determine that there was

11

actually a principal/agent relationship. As this Court explained in *Picard v. The Hebrew Univ. of Jerusalem*:

> Determining whether individuals acted as agents of the Defendants requires an analysis of the realities of the relationship in question rather than the formalities of agency law. To establish an agency relationship for purposes of personal jurisdiction, a plaintiff must show that the alleged agent acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control.

> This control need not be direct. Merely alleging a business relationship between a defendant and purported agent is insufficient when that relationship begs the question of whether and how the alleged principal exercised control over the activities of the alleged agent. Evidence of cooperation or of the parties' "long history" is not always evidence of control.

2023 WL 2667531, at *7 (cleaned up). Moreover, an allegation of legal ability to control is insufficient. The complaint must allege the actual exercise of control. *Hau Yin To*, 700 F. App'x at 68.

Other than the Complaint's bare allegation of an agency relationship,[9] there are no facts pled in the Complaint that shows such a relationship or provides any basis on which the Court could find agency. The Complaint alleges merely an introduction and cooperation, not M&B's knowledge of or consent to an agency relationship or M&B's control over Echeverría. And in fact, as the Rodriguez Declaration makes clear, Echeverría was never M&B's agent. (Rodriguez Decl. ¶ 16.) Therefore, the trustee may not rely on Echeverría's alleged acts in the United States as a basis to impose personal jurisdiction on M&B.

## 2. Exercise of Personal Jurisdiction Over M&B Would Not Be Reasonable.

Because the trustee does not allege facts that would support the basic requirements for the exercise of personal jurisdiction over M&B, whether such exercise would be reasonable

---

[9] *See* Compl. ¶ 100 ("Echeverría continued to function as M&B's and LIF-USEP's agent"), ¶ 262 ("Echeverría was LIF-USEP's and M&B's agent with respect to LIF-USEP and its investment [sic] with BLMIS.").

is a moot point. The defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable" only if the plaintiff has first made a threshold showing of minimum contacts. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d at 165 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). However, to complete the analysis, M&B addresses why it would be unreasonable on the facts of this case for this Court to exercise personal jurisdiction over M&B; it would not "comport with fair play and substantial justice," *Burger King*, 471 U.S. at 476.

"[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Id.* at 477–78. "'The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Peters v. BASF Metals Ltd. (In re Platinum & Palladium Antitrust Litig.)*, 61 F.4th 242, 273 (2d Cir. 2023) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)).

In this case, the principal factor to consider is the burden on the defendant. M&B is being sued over 3,500 miles from home. It has no U.S. counsel other than the counsel retained to defend this action. It has not brought any litigation in the United States and has never before been subject to suit here, let alone been found to be subject to personal jurisdiction in a U.S. court. The trustee may have an interest in collecting as much as possible for the victims of the BLMIS fraud, but the trustee is at home in foreign courts and has brought and defended actions overseas. *See Picard v. The Hebrew Univ.*, 2023 WL 2667531, at *10 (trustee's action in Israel); *Trustee's Twenty-Ninth Interim Report For The Period October 1, 2022 through March 31, 2023*, Case No. 08-01789 (Bankr. S.D.N.Y.) [Dkt. 23158] at 68, ¶ 256

("The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary."). This Court is not properly a world-wide collections forum for the BLMIS estate against any entity the trustee wishes to sue. Given the nature of the alleged contacts, asserting personal jurisdiction over M&B would demand a strong showing of reasonableness, which the trustee fails to do.

Therefore, this Court should dismiss this action against M&B for lack of personal jurisdiction.

## IV.     The Complaint Fails To State A Claim for Recovery of Subsequent Transfers.

### A.  Facts.

The Complaint alleges BLMIS transferred at least $498,300,000 in cash to LIF-USEP; the transfers were customer property as defined in SIPA and "are avoidable under section 548 of the Bankruptcy Code, and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3)," (Compl. ¶ 266); and LIF-USEP thereafter directly or indirectly transferred the customer property to defendant M&B, a securities broker-dealer organized and existing under the laws of Spain. (Compl. ¶¶ 40, 202, 264–269, 272.)

Although the Complaint alleges generally that the Initial Transfers were made within two years before the "Filing Date," Exhibit B to the Complaint narrows that time period. Exhibit B is a spreadsheet that purports to list all activity in the accounts LIF-USEP maintained with BLMIS. It shows the first Initial Transfer was not made until August 2007. (Compl. ¶ 269 & Ex. B at 7/11, Column 5, titled "Withdrawals.")

14

The Complaint does not specify the dates or dollar amounts of the alleged Subsequent Transfers from LIF-USEP to M&B. But bizarrely, the Complaint alleges that Subsequent Transfers the trustee seeks to recover were made to M&B in 2005 and 2006, that is, *before* the first Initial Transfer from BLMIS to LIF-USEP.[10] The allegations in the Complaint are thus not only implausible but in fact impossible.

### B.  The Complaint Fails to Specify the Timing, Amount, and Nature of the Alleged Subsequent Transfers.

Section 550(a)(2) does not impose general liability on just anyone who deals with an initial transferee of an avoidable transfer. It permits a trustee to recover only from a subsequent transferee and then only property that was transferred in the initial transfer or its value. *Iqbal* and *Twombly* require the trustee to plead facts, not conclusions of law or statements of the elements of the cause of action, that create the plausible inference of

---

[10] The sole allegations in the Complaint that the transfers from LIF-USEP to M&B were of BLMIS customer property are as follows:

> 270. Based on the Trustee's investigation to date, LIF-USEP subsequently transferred some of the Initial Transfers to the UBS Defendants, M&B, and RIR (the "Subsequent Transferee Defendants") as payment for their alleged service of LIF-USEP. All of these payments constitute subsequent transfers of Initial Transfers. All avoidable transfers from BLMIS to LIF-USEP, which it subsequently transferred, either directly or indirectly, to the Subsequent Transferee Defendants (the "Subsequent Transfers"), are recoverable from the Subsequent Transferee Defendants under § 550(a) of the Bankruptcy Code and applicable provisions of SIPA.

> …

> 272. Based on the Trustee's investigation to date, M&B (including M&B SGIIC, which merged into M&B) received at least $9,803,268 in subsequent transfers from LIF-USEP:

> a.  M&B received at least $6,024,082 in trailing and distribution fees from UBS SA and UBSTPM, consisting of management fees UBS SA and UBSTPM received from LIF-USEP in connection with M&B's role as LIF-USEP's distributor from September 2005 to December 2008.

> b.  Between 2006 and 2007, LIF-USEP transferred at least $2,878,597 to M&B in connection with M&B's proprietary investments.

> c.  Between 2006 and 2007, LIF-USEP transferred at least $900,590 to M&B SGIIC in connection with M&B SGIIC's proprietary investments.

(Compl. ¶¶ 270, 272.)

liability and that "liability necessarily, not only possibly, follows." *Strandberg v. State Farm Mutual Auto Ins. Co.*, 2016 WL 614401, at *1 (D. Nev. Feb. 16, 2016); *Twombly*, 550 U.S. at 555 (more than "mere possibility" is required). And a complaint must "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). Thus, a trustee must plead facts showing that the money the alleged subsequent transferee received was in fact the property transferred in the initial, avoidable transfer. As Judge Bernstein ruled:

> The Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150–51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the trustee alleged generically that (i) BLMIS transferred funds to certain accounts and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to Defendants who held an account at BLMIS which was funded largely, if not completely, with subsequent transfers. (*Picard v. Shapiro*, Adv. Proc. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014), Dkt. 33.) The Court dismissed the complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro*,

16

542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal* because the trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together). Here, the Complaint's allegations fail to make the very connections that the courts required in *Shapiro*, *Merkin*, and *Caremerica*.

Although the Complaint alleges that M&B received subsequent transfers from LIF-USEP, it does not contain any specificity about those transfers. The Complaint does not state the "'when, and how much' of the transfers to establish that [M&B] was a subsequent transferee of the funds." It contains only the "barebones allegations that the funds at issue were transferred" to M&B. *See Shapiro*, 542 B.R. at 119. The Complaint and Exhibit B therefore do not make any connection between any Initial Transfers and the alleged subsequent transfer and show at most that it is only possible, not plausible, that some of the LIF-USEP payments to M&B might have been made from transferred customer property.

Because the Complaint does nothing to tie any Initial Transfer to any payment made by LIF-USEP to M&B, and the Complaint does not plausibly plead that M&B received customer property that was transferred from BLMIS to LIF-USEP in avoidable transfers, Count Three must be dismissed with respect to M&B.

### C. The Complaint Nonsensically Seeks to Recover Transfers Made Before Any Initial Transfers.

Even if the lack of specificity in the trustee's allegations were not fatal, the Complaint seeks to recover payments that M&B received *before* the Initial Transfers. The Complaint alleges that the first Initial Transfer from BLMIS to LIF-USEP was made on

August 2, 2007, (Compl. Ex. B at p. 7/11)[11] but seeks to recover transfers to M&B made starting in September 2005. (Compl. ¶ 272.) Obviously, that is nonsensical and does not pass muster under *Iqbal* or *Twombly*.

For the same reason, this case is distinguishable from the many other cases where this Court has found that the trustee's complaint sufficiently pled subsequent transfers of customer property. *See, e.g.*, *Picard v. SNS Bank N.V.*, 2023 WL 2395734, at *11 (Bankr. S.D.N.Y. Mar. 7, 2023); *Picard v. UBS Europe SE*, 2023 WL 2290822, at *9 (Bankr. S.D.N.Y. Feb. 28, 2023); *Picard v. LGT Bank in Liechtenstein Ltd.*, 2023 WL 2003960, at *8 (Bankr. S.D.N.Y. Feb. 14, 2023).

M&B understands that the trustee was not a party to the transactions and therefore might not have had complete information upon his appointment in 2008. But Bankruptcy Rule 2004 allows the trustee broad ranging investigatory powers—akin to a fishing expedition, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)—to gain the necessary information to bring avoidance and recovery actions. The trustee has now had 14 years to gather information. The trustee has clearly exercised his Rule 2004 power extensively. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 590 B.R. 200, 204 (Bankr. S.D.N.Y. 2018) (describing the trustee's pre-litigation Rule 2004 activity). But unlike Rule 2004, a complaint and Rule 26 are not a fishing license, permitting a trustee to plead in the most general terms that a defendant received subsequent transfers so he can undertake discovery to learn the basic facts that should have been pled in the complaint.

The trustee's allegations in the Complaint that M&B received Subsequent Transfers *before* any Initial Transfers is just such an attempt and shows why a minimum standard of

---

[11] The Complaint vaguely suggests LIF received Initial Transfers from "2006-2008." (Compl. at 66.) But Exhibit B shows there were no transfers from BLMIS to LIF-USEP (withdrawals from LIF-USEP's BLMIS account) before August 2, 2007. (*See* Compl Ex. B.)

pleading specificity is required. M&B is surely entitled to dismissal of any claim to recover pre-Initial Transfer payments from LIF-USEP. But the Complaint provides no information to permit M&B to identify the claims that should be dismissed. The trustee must plead the "who, when, and how much" that is lacking in his Complaint. Because he has failed to do so, the Complaint should be dismissed.

## V. The Court Should Dismiss The Complaint's Improper Requests for Additional Relief Against M&B.

If this Court denies this motion to dismiss the recovery claim or permits the trustee to amend his complaint, it should dismiss all the trustee's requests for relief that are unavailable as a matter of law. *See Brian Jonestown Massacre v. Davies*, 2014 WL 4076549, at *6 (N.D. Cal. Aug. 18, 2014).

The trustee is not entitled to disgorge M&B's profits and other remuneration. (*See* Compl. 73 at ¶ iii.b. (requesting the direct M&B "to disgorge to the Trustee all profits, including any and all management fees, incentive fees or other compensation and/or remuneration received by the Subsequent Transferee Defendants related to or arising from, or concerning the Subsequent Transfers from BLMIS to the Subsequent Transferee Defendants").) Section 550(a)(2) permits the trustee to recover from a subsequent transferee property that was transferred in an avoidable transfer—nothing more.

For the same reason, the trustee is not entitled to attorneys' fees and costs. (*See* Compl. 73 at ¶ iii.d.) *In re Cahillane*, 408 B.R. 175, 214 (Bankr. N.D. Ind. 2009) ("Neither § 548 nor § 550 of the Bankruptcy Code specifically authorize an award of attorneys' fees to a prevailing party. In bankruptcy cases, the "American Rule" applies, which provides that in cases that are based upon or involve federal law, attorneys' fees are not allowable absent a statutory basis or enforceable contract between the parties."); *accord In re Harvard Knitwear,*

*Inc.*, 193 B.R. 389, 400 (Bankr. E.D.N.Y. 1996) (no basis to depart from American rule in fraudulent transfer action).

## Conclusion

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:  New York, New York
        May 5, 2023

By: /s/ *Richard Levin*

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com

*Counsel for Defendant M&B Capital
Advisers Sociedad De Valores, S.A.*