UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

---

In re:

BERNARD L. MADOFF,

Debtor.

---

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01697 (CGM) |
| Plaintiff, | |
| v. | |
| Platinum All Weather Fund Limited, and ABN AMRO Retained Nominees (IOM) Limited, f/k/a/ ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, | |
| Defendants. | |

**MEMORANDUM DECISION DENYING MOTION TO DISMISS OF DEFENDANT
PLATINUM ALL WEATHER FUND LIMITED**

<u>A P P E A R A N C E S</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111
By:    Elizabeth McCurrach
David J. Sheehan
Regina Griffin
Stacey A. Bell
Anat Maytal
Shade Quailey

*Attorneys for Defendant, Platinum All Weather Fund Limited*
Arnold & Porter Kaye Scholer, LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001
By:    Scott B. Schreiber
Rosa J. Evergreen
- and -
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
By:    Kent A. Yalowitz
Daniel R. Bernstein
Lucas B. Barrett

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Platinum All Weather Fund Limited

("Platinum" or "Defendant"), motion to dismiss[1] the complaint of Irving Picard, the trustee

("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS")

seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.

Platinum seeks dismissal for lack of personal jurisdiction, failure to allege that that the transfers

were of customer property, and failure to adequately plead the avoidability of the initial transfers.

Defendant raises the "good faith" defense and argues that the claims are barred by the safe

harbor provision of § 546(e). For the reasons set forth herein, the motion to dismiss is denied in

its entirety.

---

[1] Codefendant, Fortis Isle of Man, filed its own motion to dismiss in this proceeding. (Mot., ECF No. 143). That motion, seeking dismissal based on personal jurisdiction and the "good faith" and "mere conduit" defenses, will be addressed in a separate memorandum decision.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by the Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012. (Compl., ECF[2] No. 1). The Trustee filed an amended complaint on November 3, 2022. (Am. Compl., ECF No. 141). Via

---

[2] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01697-cgm.

the amended complaint ("Amended Complaint"), the Trustee seeks to recover $103,541,099 in subsequent transfers made to Platinum. (*Id.* ¶ 3). The Amended Complaint further seeks recover of $1,278,502 made to codefendant, ABN AMRO Retained Nominees (IOM) Limited, f/k/a/ ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, ("Fortis Isle of Man"). (*Id.* ¶ 4).

Platinum was a Cayman Islands-based hedge fund that invested exclusively in the funds that fed into BLMIS. (*Id.* ¶¶ 55–56). Defendant was managed by Platinum Capital Management Ltd, a global investment firm that was headquartered in London and used subsidiaries in New York and Stamford, Connecticut. (*Id.* ¶ 57).

Platinum's administrator for investments in Fairfield Sentry Limited ("Fairfield Sentry") was co-defendant Fortis Isle of Man. (*Id.* ¶ 59). Platinum's marketing materials at its 2003 launch identified Defendant as its administrator, custodian, and transfer agent. (*Id.* ¶ 62). Fortis Isle of Man was a limited company incorporated and organized under the laws of the Isle of Man. (*Id.* ¶ 58).

The subsequent transfers allegedly received by Defendant were derived from investments with BLMIS made by Fairfield Sentry. (*Id.* ¶¶ 99–106). Fairfield Sentry is considered a "feeder fund" of BLMIS because the intention of the fund was to invest in BLMIS. (*Id.* ¶¶ 2, 5).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 92). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 63). As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively. (Consent Js., 09-01239-cgm, ECF Nos. 109–10). Only $70 million has been paid to the BLMIS customer

property estate.  (Settlement Agreement, 09-01239-cgm, ECF No. 169).  The Trustee then

commenced a number of adversary proceedings against subsequent transferees, like Defendant,

to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Platinum argues that the Trustee has failed to plead personal

jurisdiction, failed allege the avoidability of the initial transfers, and failed to allege that it

received BLMIS customer property.  The Defendant raises the "good faith" defense and argues

that the safe harbor under § 546(e) bars recovery of the alleged transfers.  The Trustee opposes

the motion to dismiss.

The parties stipulated to waiving oral arguments on the issues raised by Platinum in its

motion to dismiss and requested that the Court issue its ruling based on the briefings.  (Stip. and

Order, ECF No. 163).

### Discussion

**Personal Jurisdiction**

Platinum objects to the Trustee's assertion of personal jurisdiction.  (Mem. L. 6, ECF No.

150).  In the Amended Complaint, the Trustee argues that Defendant purposefully availed itself

to the laws of the United States and New York.  (Am. Compl. ¶¶ 68–91).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A. (In re*

*BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same). In the absence of discovery, "a plaintiff's prima facie showing

of jurisdiction 'may be established solely by allegations.'" *Paroni v. GE UK Holdings Ltd.*,

2021 U.S. Dist. LEXIS 148930 (N.D.N.Y. 2021) (quoting *Ball*, 902 F.2d at 197).

In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by

stating that Defendant "knowingly accepted the rights, benefits, and privileges of conducting

business in the United States and the state of New York." (Am. Compl. ¶ 68). This allegation

alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-

discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually

supported. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)

(explaining that an averment of facts is necessary only after discovery). That being stated, this

was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr.

S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

<u>Minimum Contacts</u>

In the Amended Complaint, the Trustee alleges that Platinum "invested in the Fairfield Funds with the specific purpose of investing with BLMIS in New York, and relinquished control over investment decisions and their implementation to Madoff in New York." (Am. Compl. ¶ 70, ECF No. 141). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-01239 Compl. ¶ 228 ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 96, of this Complaint).

The Trustee has alleged that a subscription agreements signed by Platinum's administrator Fortis Isle of Man "listed Peter Sprecher, the U.S.-based founder of Platinum Management, as the 'advisor with respect to this subscription' and Scott Nevin, an [Fairfield Greenwich Group] Managing Director based in New York, as the professional 'with whom this subscription is associated.' (Am. Compl. ¶ 84). The subscription agreement, by incorporating Fairfield Sentry's private placement memorandum, made Defendant aware that it was transacting business in New York. (*Id.* ¶¶ 74–82). Defendant knew that Fairfield Sentry's strategy involved the purchase of U.S.-based securities. (*Id.* ¶ 79). Defendant knew that Fairfield Sentry and Fairfield Sigma, through its purchases of Fairfield Sentry shares, invested at least 95% of its assets with BLMIS. (McCurrach Decl. Ex. 2, Fairfield Sentry Private Placement Memorandum, ECF No. 154). The Trustee has submitted evidence that Platinum's entire relationship with Fairfield Sentry was based on access to Madoff and BLMIS. (*Id.* ex. 1) (call log describing

Fairfield Sentry as "a feeder fund into Madoff"). Platinum described itself as a "feeder fund into Madoff" with potential clients. (Am. Compl. ¶ 72).

Defendant knew that any returns on these investments would be earned in New York by BLMIS. (*Id.* ¶ 81). Defendant knew that subscription payments were to be wired in US dollars to a bank account in New York. (*Id.* ¶ 81). "Aware of these facts and risks, Defendants knowingly attempted to direct monies into the United States securities markets and undertook investment activities in the United States." (*Id.* ¶ 82).

The Trustee also alleges that, through the subscription agreements with Fairfield Sentry, Defendant was aware of the possibility of jurisdiction in New York as the agreement specified that Defendant:

> (i) 'irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding,' (ii) 'agree[d] that any suit, action, or proceeding . . . with respect to this Agreement and the Fund may be brought in New York,' (iii) 'consent[ed] to the service of process out of any New York court,' and (iv) agreed that '[t]his Agreement shall be governed and enforced in accordance with the laws of New York . . . .'

(*Id.* ¶ 76). Though the subscription agreements do not, alone, give this Court jurisdiction over Platinum, the agreements show that Defendant knew that it could face litigation in New York courts.

The Trustee has alleged that Defendant used New York bank accounts to receive redemption payments from and remit subscription payments to Fairfield Sentry. (*Id.* ¶¶ 88–89). Platinum used a bank account at Northern Trust International Banking Corporation to receive subsequent transfers from Fairfield Sentry. (*Id.*).

Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549

B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction over Platinum. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry. (Am. Compl. ¶¶ 99–101, ECF No. 141). These allegations are directly related to their investment activities with BLMIS via the Fairfield Funds. *BNP Paribas S.A.,* 594 B.R. at 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial

justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations

omitted). Factors the Court may consider include the burden on the defendants, the forum

State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution

of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation.

Platinum has actively participated in this Court's litigation for several years. It is represented by

U.S. counsel and intentionally invested in Fairfield Sentry. Further, Defendant held bank

accounts in New York and was aware of the possibility of jurisdiction of New York courts

through subscription agreements with the Fairfield Sentry.[3] (Am. Compl. ¶¶ 76, 88–89). The

forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in

this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117

(Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440

B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R.

75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*,

---

[3] Even though this Court held that a defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant was aware of jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir.

2019) ("The United States has a compelling interest in allowing domestic estates to recover

fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  And

by alleging that Defendant used a New York bank account, the Trustee has met his burden of

alleging jurisdiction over each transfer that received through that New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).  The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an

agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations

are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover $103,541,099 in subsequent transfers made to Platinum by Fairfield Sentry. (Am. Compl. ¶ 3, ECF No. 141).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* "However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *Id.*

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Am. Compl. ¶ 96). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrestar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. The Defendant, like many other subsequent transfer defendants in this SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. (*See* Mem. L. in Support of Mot. to Dismiss Based on Extraterritoriality, ECF No. 104).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does not prejudice the Defendant. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds'

knowledge of BLMIS' fraud.  (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also*

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

## BLMIS Customer Property

The Trustee has pleaded that, based on its investigations to date, "subsequent transfers to

Defendants total $104,605,052 . . . . Specifically, (i) Defendants Platinum and/or Fortis [Isle of

Man] received $103,541,099 of subsequent transfers of customer property."  (Am. Compl. ¶ 99).

The exhibits attached to the Complaint provide Defendant with the "who, when, and how much"

of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018); (Am. Compl. Ex. C) (indicating the dates and amounts of the transfers from

Fairfield Sentry to the Defendants); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119

(Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial transferee made

any subsequent transfers.).  The Complaint alleges that since Fairfield Sentry "invested all or

substantially all of [its] assets with BLMIS's investment advisory business." (Am. Compl. ¶ 5);
(*id.* ¶ 64) ("Fairfield Sentry invested at least 95% of its assets with BLMIS.").

Defendant argues that the Trustee's allegations, when read in context of all related
adversary proceedings, impossibly allege that Fairfield Sentry paid out more than it received.
(Mem. L. 21–22, ECF No. 150).

To consider allegations made in dozens of other complaints filed by the Trustee in this
SIPA proceeding is impractical and not required at this stage of the litigation. The other
complaints have not been adopted by reference by the Trustee in this adversary proceeding and,
as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v.
Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to
dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the
four corners of the complaint, to documents attached to the complaint, or to documents
incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d
768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from
BLMIS, this Court would need review financial documents in order to trace the monies to all
principals, insiders, creditors, and customers of Fairfield Sentry and other Fairfield Funds.
Undoubtedly, the Court will trace and calculate how the Fairfield Funds spent its BLMIS (and
any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert
allegations that make it seem plausible that Defendant received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that
Fairfield Sentry was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89, Adv.
Pro. No. 09-01239, ECF No. 286) ("From the beginning, to comport with Madoff's requirement

for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."); *(see also id.* ¶ 96) ("Fairfield Sigma was wholly invested in Fairfield Sentry."). The Complaint plausibly alleges that the Fairfield Funds did not have any assets that were not customer property.

In this case, the Trustee is not seeking to collect $5 billion from Defendant. He is seeking $103,541,099 which easily could come from the $3 billion Fairfield Sentry received from BLMIS. If the Court were to accept Defendant's argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Platinum received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer property.

**Section 546(e) does not bar the avoidance of the Initial Transfers to Fairfield Sentry**

Section 546(e) protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities

contract." 11 U.S.C. § 546(e). By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer—those transfers from BLMIS to the feeder funds. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018). Subsequent transferees are also entitled to raise a § 546(e) defense against Trustee's recovery of the initial transfer funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021). To the extent that the safe harbor bars the Trustee from collecting the initial transfer, he would also be barred from collecting any subsequent transfers.

Defendant argues that *Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), allows it to claim protection of the safe harbor due to securities contracts signed by Fairfield Sentry. *Fishman* offers no support for that argument.

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See id.* at 422. However, the safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[4] *Id.*

---

[4] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal

citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re*

*BLMIS*), 12 F.4th 171 (2d Cir. 2021)). The district court has recently affirmed this reasoning,

explaining that

> the Second Circuit emphasized that innocent customers had "every right to avail themselves of all the protections afforded to the clients of stockbrokers" because they had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions . . . ." *Fishman*, 773 F.3d at 420. . . . In contrast, because Fairfield allegedly knew that BLMIS was not actually engaged in legitimate securities transactions, Appellant is not entitled to a Safe Harbor provision that is designed to protect legitimate securities transactions. Cf. *In re MacMenamin's Grill Ltd.*, 450 B.R. 414, 425 (Bankr. S.D.N.Y. 2011) (noting that "Congress never could have meant to permit section 546(e) to protect transactions that themselves were assaults on the securities markets, as that would be a perversion of the statute's purpose") (citation omitted).

*Picard v. Koch Indus., Inc.*, (*In re BLMIS*), 23-CV-00294 (VEC), 2023 WL 3317926, at *5

(S.D.N.Y. May 9, 2023). The safe harbor does not "shield[] transferees who knowingly collude

with a fraudster." *Id.* at *6.

By holding that the affirmative defense provided by § 546(e) is not applicable in

situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee

from clawing back complicit parties' ill-gotten gains. The district court has already determined

that "those defendants who claim the protections of Section 546(e) through a Madoff Securities

account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not

entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the

Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL

1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds the district court's holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; (*see also* Fairfield

Compl. ¶ 320) ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); (Fairfield

Compl. ¶ 321) ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the

fraud at BLMIS"); (Fairfield Compl. ¶ 322) ("FIFL had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 323) ("Stable Fund had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 324) ("FG Limited had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 325) ("FG Bermuda had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 326) ("FG Advisors had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 327) ("Fairfield International Managers had actual knowledge of

the fraud at BLMIS"); (Fairfield Compl. ¶ 328 ) ("FG Capital had actual knowledge of the fraud

at BLMIS"); (Fairfield Compl. ¶ 329) ("Share Management had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 9) ("It is inescapable that FGG partners knew BLMIS was not

trading securities. They knew BLMIS's returns could not be the result of the split strike

conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading

volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades,

which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and

lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or

custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They

knew their clients and potential clients raised numerous due diligence questions they would not

and could not satisfactorily answer. They knew Madoff would refuse to provide them with

honest answers to due diligence questions because it would confirm the details of his fraud.

They knew Madoff lied about whether he traded options over the counter or through the

exchange. They knew they lied to clients about BLMIS's practices in order to keep the money

flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

 "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that

Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *3–7 (Bankr. S.D.N.Y. Aug. 6, 2021). Where § 546(e) does not "embrace the initial

transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it

applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022

WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). The Trustee's allegations in the Fairfield

Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

 The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS),*

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Id.*

**Good Faith Defense**

Platinum argues that it took the subsequent transfers "in good faith, and without

knowledge of the voidability of the transfer."  (Mem. L. 17, ECF No. 150).

i.      *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value."  *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.  The Amended Complaint contains no mention of either Platinum

or codefendant Fortis Isle of Man exchanging shares for consideration.  (*See* Am. Compl. ¶¶ 70–

91, ECF No. 126).  Therefore, the "value" defense is not asserted on the face of the Amended

Complaint.

*ii.    Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "[t]he Second Circuit made clear . . . that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS*, No 20-cv-02586(CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (citing *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021), cert. denied No. 21-1059 (Feb. 28, 2022)).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

*iii.    Knowledge of Avoidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Platinum

subjectively knew; 2) "whether these facts put [it] on inquiry notice of the fraudulent purpose

behind a transaction—that is, whether the facts the transferee[s] knew would have led a

reasonable person in [its] position to conduct further inquiry into a debtor-transferor's possible

fraud; and 3) whether "diligent inquiry by [Platinum] would have discovered the fraudulent

purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the

litigation.

### **<u>Conclusion</u>**

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**
_____
**Dated: May 17, 2023**          **Hon. Cecelia G. Morris**
**Poughkeepsie, New York**       **U.S. Bankruptcy Judge**

Page **28** of 28