# EXHIBIT 7

# SETTLEMENT AGREEMENT

This Agreement, dated as of June 20, 2022, is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff") and Alpha Prime Fund Limited ("Alpha Prime"). The Trustee and Alpha Prime collectively shall be referred to herein as the "Parties" and each as a "Party."

## BACKGROUND

A.   BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.   On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.   On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the consolidated BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009 the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.   Alpha Prime maintained an account with BLMIS. Alpha Prime's account was opened in 2003 and designated as account no. 1FR097 (the "Account").

E.  In the two years prior to the Filing Date, Alpha Prime withdrew from the Account approximately $76,450,000 (the "Two-Year Transfers").

F.  In the six years prior to the Filing Date, Alpha Prime withdrew from the Account approximately $83,170,000 of which approximately $6,720,000 was withdrawn in the period between two years and six years prior to the Filing Date (the "Six-Year Transfers").

G.  On or about February 2, 2009, Alpha Prime filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 001503 (the "Customer Claim"). The Customer Claim is included as Attachment A to this Agreement. The Customer Claim asserts that Alpha Prime is entitled to the allowance of a customer claim in an amount reflected on its BLMIS Account statement for the period ending November 30, 2008. The Parties agree that under the "net equity" ruling of the United States Court of Appeals for the Second Circuit, *Sec. Inv'r Prot. Corp. v. BLMIS (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012), Alpha Prime's net equity equals $250,671,000.

H.  On July 15, 2009, the Trustee commenced an action in the Bankruptcy Court against Alpha Prime and others under Adversary Proceeding Number 09-01364 (the "Adversary Proceeding"). On December 5, 2010, the Trustee filed an amended complaint (the "Amended Complaint") in the Adversary Proceeding.

I.  On May 27, 2011, Alpha Prime filed an answer to the Amended Complaint and cross-claims against various HSBC entities. On December 8, 2014, Alpha Prime filed an answer, affirmative defenses, and amended cross-claims.

J.  On February 9, 2019, the Parties entered into a Partial Settlement which included the following terms: (1) a payment by Alpha Prime to the Trustee of $76,450,000 in full and

2

4867-8132-5605.1

final settlement of the claims and causes of actions, except for claims identified as "Disputed Issues"; (2) the allowance of the Customer Claim in the amount of $238,137,450, which is equal to 95% of Alpha Prime's net equity; and (3) the continued litigation of certain "Disputed Issues": (i) whether Alpha Prime is entitled to a claim under section 502(h) of the Bankruptcy Code in respect of its payment of the Settlement Payment to the Trustee and the treatment such section 502(h) claim may receive; (ii) the Trustee's claims to avoid and recover the Six-Year Transfers, totaling $6,720,000, and in the event of Alpha Prime's payment in respect of the avoidance of the Six-Year Transfers, the treatment a resulting section 502(h) claim would receive; and (iii) the Trustee's claims concerning the treatment of the remaining 5% of Alpha Prime's net equity claim, totaling approximately $12,533,550 (the "Disputed Customer Claim"), including without limitation, the claims to disallow or equitably subordinate the Disputed Customer Claim or a portion thereof, and the claims to treat the Disputed Customer Claim or some portion thereof as a general creditor claim, a customer claim, or something else.

K. On November 12, 2014, the Trustee entered into a settlement agreement with Primeo Fund, who in addition to being a BLMIS account-holder, was also an investor in Alpha Prime. As part of its settlement Primeo paid the Trustee $29,142,345 to resolve all the Trustee's claims against Primeo including subsequent transfer claims. Alpha Prime has taken the position that it should receive credit for payments Primeo made to the Trustee for money transferred from BLMIS to Alpha Prime to Primeo.

L. On September 24, 2019, the Trustee filed a Second Amended Complaint, asserting claims against Alpha Prime for:

    1.    the avoidance of the Six-Year Transfers under 11 U.S.C. §§ 544 and 550 and the New York Debtor and Creditor Law §§ 270–281, which are set forth in Counts One through Four of the Second Amended Complaint (the "Six-Year Transfer Avoidance Claims");

3

4867-8132-5605.1

    2.    the recovery of the Six-Year Transfers under 11 U.S.C. §§ 544, 550, and 551, New York Debtor and Creditor Law §§ 270–281, and New York Civil Practice Law and Rules 203(g) and 213(8), which are set forth in Counts One through Four of the Amended Complaint (the "Six-Year Transfer Recovery Claims"); and

    3.    the equitable subordination of the Customer Claim pursuant to 11 U.S.C. §§ 510(c) and 105(a), which is set forth in Count Five of the Amended Complaint (the "Subordination Claim").

M.    On October 23, 2019, Alpha Prime filed an Answer to the Second Amended Complaint.

N.    The Parties have continuously engaged in discovery, subject to the restrictions of the COVID-19 pandemic.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises, and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties, agree:

1.    <u>Allowance of 502(h) Claim.</u>  On April 2 2018, Alpha Prime paid to the Trustee the Partial Settlment Payment of $76,450,000. The Trustee and Alpha Prime acknowledge that the issue of whether a 502(h) claim is allowed under SIPA remains an open issue, but rather than litigating the issue have agreed to the terms of this Agreement. Upon the Closing (as defined in paragraph 12), the Trustee will allow 85% of Alpha Prime's 502(h) claim, which equals the sum of $64,982,500 ("Allowed 502(h) Claim").

2.    <u>Allowance of Customer Claim</u>. Upon the Closing (as defined in paragraph 12), the remaining amount of the Customer Claim shall be deemed conclusively allowed in the amount of $12,533,550 (the "<u>Allowed Claim</u>"), which is equal to 5% of Alpha Prime's net equity (i.e. the portion that has not yet been allowed). The Allowed Claim shall not be subject to any disallowance under section 502(d) of the Bankruptcy Code or otherwise. The Allowed Claim shall be equal in

4

4867-8132-5605.1

priority to all other allowed customer claims against the BLMIS Estate and shall not be subject to any subordination pursuant to section 510 of the Bankruptcy Code or otherwise.

(i) As of the date of this Agreement, the amount to be paid by the Trustee to Alpha Prime allocable to the Allowed Claim and the Allowed 502(h) Claim in respect of a catch-up distribution is $54,611,607.53; this amount shall be increased by any additional interim distribution made between the date of this Agreement and the Closing Date (the "Catch-Up Distribution"). The Catch-Up Distribution will be paid upon Closing to the extent that the Trustee has sufficient funds to make such payment. If not upon Closing, Alpha Prime will be paid at the time the Trustee does have such funds and/or at the time the Trustee makes the next distribution to remaining customers with unsatisfied allowed claims.

3. Separation of Payments. The Trustee acknowledges that Alpha Prime sold the rights to the portion of its claim that was allowed under the Partial Settlement Agreement to a third party, and has retained the remainder of the rights being compromised under this Settlement Agreement. Accordingly, payment made by the Trustee on the Allowed Claim and the Allowed 502(h) Claim under this Settlement Agreement will be directed to Alpha Prime. Any Catch-Up distribution due under the Partial Settlement Agreement will be paid to Glas Americas LLC, as Escrow Agent for the Alpha Prime Customer Claim. The Trustee has granted this accommodation to Alpha Prime in reliance on its representations concerning its agreement with Glas Americas LLC (and/or SPCP Group), and Alpha Prime agrees to indemnify and hold the Trustee, his agents, and attorneys harmless from any liability, loss or damage they may suffer as a result of claims, demands, costs or judgments against them arising out of the separation of payments discussed herein..

4. Alpha Prime's Claims Against HSBC. Alpha Prime has brought actions against various HSBC-related entities in Luxembourg, Alpha Prime v. HSBC SECURITIES SERVICES

5

4867-8132-5605.1

(Luxembourg) S.A HSBC Bank plc, HSBC BANK BERMUDA LIMITED, HSBC SECURITIES SERVICES (BERMUDA) LIMITED, MANAGEMENT INTERNATIONAL (BERMUDA) LIMITED, HSBC Institutional Trust Services (Bermuda) Limited, No. TAL-2019-04696 and HSBC Securities Services (Luxembourg) S.A., No 125351 ("Luxembourg Actions") and in Bermuda, Alpha Prime v. (1) HSBC BANK BERMUDA LIMITED (formerly, The Bank of Bermuda Limited), (2) HSBC SECURITIES SERVICES (BERMUDA) LIMITED (formerly, Management International (Bermuda) Limited, (3) HSBC SECURITIES SERVICES (LUXEMBOURG) S.A. (formerly, Bank of Bermuda (Luxembourg) S.A.) ( 4) HSBC BANK PLC, No. 2014 No. 409 ("Bermuda Action"). As part of Alpha Prime's consideration for this settlement, Alpha Prime agrees to share with the Trustee 50% of the proceeds of the Luxembourg Actions and the Bermuda Actions (collectively, the "Shared Claims"). To the extent that payments are made to the Trustee by Alpha Prime as a result of the Shared Claims, that amount will be added to Alpha Prime's Allowed 502(h) Claim as follows: (i) 100% on the first $100,000,000; (2) 66% on the next $85,000,000; and (3) 50% for all recoveries thereover. The Parties will enter into a Common Interest Agreement with respect to the Shared Claims.

5. <u>Six-Year Transfers</u>. The Six-Year Transfers from BLMIS to Alpha Prime are avoided pursuant to 11 U.S.C. 544(b). The Trustee's recovery of the Six-Year Transfers is contingent on discovery in this Advesary Proceeding concerning Alpha Prime's knowledge and state of mind. At the completion of such, the Parties shall determine how recovery of the Six-Year transfers will be effected. If the Parties cannot reach an agreement on the recovery of the Six-Year Transfers, the Parties will submit to a one-day binding mediation by an approved mediatior. As noted in paragraph 10 below, the Six-Year Transfer claims against Alpha Prime will not be dismissed until a resolution on the Six-Year Transfers is agreed upon by the Parties or determined by a mediator.

6

4867-8132-5605.1

6.  <u>Discovery</u>. Alpha Prime and its agents will continue to participate in discovery in this Adversary Proceeding, this may include through written discovery requests, depositions, and document productions, until the Six-Year Transfer Recovery Claims are resolved. This includes Alpha Prime's directors, Peter Fischer, Stefan Zapotocky, and Ursula Radel-Leszczynski (the "Directors").

(i)  Alpha Prime and the Directors will have the continuing obligation to participate in discovery under the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>") as though each were a party to the Adversary Proceeding. Service of discovery requests shall be complete upon each when made by delivery to DuffyAmedeo LLP, c/o Todd E. Duffy, pursuant to the Federal Rules. All discovery requests shall be governed by the Federal Rules, section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution, and the protective orders in place and/or as further agreed by the parties. The Trustee shall not be required to satisfy requirements provided by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, or any other set of rules, procedures or regulations, other than the Federal Rules, in order to take discovery.

(ii)  The Parties understand that the Directors are not waiving any right available under the Federal Rules or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution to object to any of the Trustee's discovery requests; they reserve their rights under the Federal Rules to move for a protective order as to any discovery request the Trustee serves upon them.

(iii)  The Directors shall appear for depositions in the Adversary Proceeding pursuant to notice served on DuffyAmedeo LLP, as though each were a party pursuant to the

7

4867-8132-5605.1

Federal Rules without the necessity of a subpoena, letter rogatory, letter of request, or other process. Service of notices of deposition directed to Ms. Radel-Leszczynski, Mr. Fischer, or Mr. Zapotocky shall be complete when made by delivery to DuffyAmedeo LLP, c/o Todd E. Duffy, pursuant to the Federal Rules. All notices of deposition shall be governed solely by the Federal Rules; the Trustee shall not be required to satisfy requirements provided by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, or any other set of rules, procedures or regulations, other than the Federal Rules.

    (iv) The Parties understand that, notwithstanding anything herein to the contrary, the Directors are not waiving any right available under the Federal Rules or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution to object to any of the Trustee's deposition questions; they reserve their rights to refuse to answer any question posed by the Trustee's counsel pursuant to the Federal Rules and/or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution. To the extent the Directors believe that they are being asked to reveal secret or proprietary information not protected by the protective orders in this action, the parties will work with a discovery arbitrator to ensure that a sufficient protective order covering such secrets is established,

    (v) Alpha Prime will endeavor to use its best efforts to request that its affiliates, and other third-parties familiar with the claims against Alpha Prime, participate voluntarily as third parties in discovery.

    (vi) Alpha Prime will continue to participate in the foreign examinations that have been proceeding, and continue to proceed, pursuant to the Hague Convention on the Taking

4867-8132-5605.1

of Evidence Abroad in Civil or Commercial Matters and will not object to further requests for such foreign discovery to the extent it is necessary.

    (vii) Alpha Prime will assist the Trustee in obtaining all necessary documents from Bank Austria, and its affiliates, subsidiaries, and ventureres such as Bank Austria Worldwide Fund Management, including by waiving any objections based upon the General Data Protection Regulation.

    (viii) Alpha Prime agrees to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78lll(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings.

    (ix) All discovery obtained will be subject to the Litigation Protective Order governing this proceeding.

   7. <u>Releases by Trustee.</u> In consideration for the terms herein, except with respect to any rights and obligations arising under this Settlement Agreement, effective upon the Closing Date (as defined below), the Trustee, on behalf of himself and BLMIS, and its consolidated estates, hereby releases, acquits and forever discharges Alpha Prime and Alpha Prime Asset Management LTD and its respective current and former directors (including but not limited to, Peter Fischer, Ursula Radel-Leszcynski, and Stefan Zapotocky), officers, employees, direct or indirect shareholders, limited partners, principals, members, successors, assigns, accountants, attorneys, from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff

9

4867-8132-5605.1

or BLMIS. For the avoidance of doubt, Alpha Prime is not released from the Six-Year Transfer Recovery Claim until either (i) Alpha Prime has paid to the Trustee the Six-Year Transfers or (ii) the Six-Year Transfers are deemed unrecoverable from Alpha Prime as set forth in paragraphs 5 above and 10 below.

8. Releases by Alpha Prime. In consideration for the terms herein, except with respect to any rights and obligations arising under this Settlement Agreement, effective upon the Closing Date, Alpha Prime hereby releases, acquits and forever discharges SIPC, the Trustee and his professionals, agents and consultants, Madoff, BLMIS, and the Estate from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS.

9. This Agreement has no precedential, adjudicative, preclusive, or estoppel effect with respect to any claim, or element thereof, of the Six-Year Transfer Recovery Claims. The Parties understand (and will not argue otherwise) that this Agreement does not constitute an adjudication of any issue, a finding of fact, or a conclusion of law relating to the Six-Year Transfer Recovery Claims. It does not preclude or estop the Parties from advancing any argument relating to the Six-Year Transfer Recovery Claims. Although the Six-Year Transfer Avoidance Claim and the Subordination Claim shall be deemed completely and finally resolved.

10. Dismissal of Claims. As soon as practicable after the Resolution of the Six-Year Transfers (as set forth in paragraph 5), the Parties shall submit to the Bankruptcy Court a stipulation requesting the dismissal of the Six-Year Transfer Claims contained within Counts One through Four of the Second Amended Complaint, with prejudice, as against Alpha Prime, with each Party bearing its own costs, attorneys' fees, and expenses.

10

11. <u>Court Approval; Effective Date; Termination.</u>

(i)    If any objection is interposed to approval of this Agreement, the Agreement is subject to and shall become effective and binding on the Signatories upon the Bankruptcy Court's approval of this Agreement by an order (the "<u>Approval Order</u>") that is no longer subject to appeal, review, or rehearing. If no such objections are filed, the Agreement shall become effective and binding on the Signatories immediately upon entry of the Approval Order. The Trustee shall use his reasonable efforts to obtain an Approval Order as promptly as practicable after the execution of this Agreement. The effective date (the "<u>Effective Date</u>") shall be the date that the Approval Order becomes effective and binding on the Signatories as set forth in this paragraph.

(ii)   The form of the Approval Order shall be subject to the reasonable approval of the Parties. If this Agreement has not become effective as provided in this paragraph within 120 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (i) this Agreement (other than this paragraph) shall terminate and be void; (ii) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (iii) neither the Trustee nor Alpha Prime may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, Adversary Proceeding, or any case or proceeding relating to Alpha Prime, BLMIS, or Madoff.

12. <u>Closing.</u> There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement. At the Closing simultaneously:

(i)    The Trustee shall pay Alpha Prime $54,611,607.53, consisting of the balance of the Catch-Up Distribution owed to Alpha Prime under the Allowed Claim and the

11

4867-8132-5605.1

Allowed 502(h) Claim pursuant to payment instructions to be provided by Alpha Prime to the Trustee. This amount shall be increased by any additional interim distribution made between the date of this Agreement and the Closing Date.

        (ii)    The releases contained in paragraphs 7 and 8 shall become effective without any further action of the Parties.

13.    <u>The Signatories' Authority</u>. Each Signatory represents and warrants to the Trustee that, as of the date hereof, it has the full power, authority, and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of its respective obligations under this Agreement. The Trustee represents and warrants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 5 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

14.    <u>Business Days</u>. For purposes of this Agreement, the term "business days" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in New York City.

15.    <u>Further Assurances</u>. The Parties shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

16.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the Signatories and supersedes any and all prior agreements, representations, and understandings of the parties concerning the subject matter hereof.

17. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any party of any fault, liability, or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

18. <u>Amendments; Waiver</u>. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

19. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of each Party hereto, except that nothing in this Agreement shall prevent Alpha Prime's ability to assign all or part of Alpha Prime's Allowed Claim or Allowed 502(h) Claim on or after the Effective Date.

20. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each Signatory and their respective successors and permitted assigns.

21. <u>No Third-Party Beneficiary</u>. Except as expressly provided in paragraphs 2, 3, 4, 7 and 8, the Parties do not intend to confer any benefit of or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

22. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

23. <u>Exclusive Jurisdiction</u>. The Signatories agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes between the parties, whether in law or equity, arising out of or

13

relating to this Agreement, or any provision thereof, and the parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the parties agree that any dispute arising out of this Agreement may be brought in the United States District Court for the Southern District of New York.

24. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not intended to be limiting.

25. <u>Counterparts; Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Signatories may evidence their execution of this Agreement by delivery to the other Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

26. <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Signatories. Each party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

27. <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

[*remainder of page intentionally left blank*]

14

4867-8132-5605.1

28. <u>Notices</u>.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Email: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

If to Alpha Prime, c/o:

Todd E. Duffy
Email: tduffy@duffyamedeo.com
DuffyAmedeo LLP
132 W. 31st Street, 9th Floor
New York, NY 10001

with a copy to:

Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
F: (212) 589-4201

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

_Irving H. Picard_
Irving H. Picard, Trustee

**ALPHA PRIME FUND LIMITED**

By: _____
Name: FISCHER P.    MÜLLER D.
Title: DIRECTOR    DIRECTOR

15

4867-8132-5605.1