# EXHIBIT 10

## PARTIAL SETTLEMENT AGREEMENT

This Agreement, dated as of February 9, 2018, is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–lll ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff") and Alpha Prime Fund Limited ("Alpha Prime"). The Trustee and Alpha Prime collectively shall be referred to herein as the "Parties" and each as a "Party."

## BACKGROUND

A.   BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.   On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.   On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the consolidated BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009 the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.   Alpha Prime maintained an account with BLMIS. Alpha Prime's account was opened in 2003 and designated as account no. 1FR097 (the "Account").

E.    In the two years prior to the Filing Date, Alpha Prime withdrew from the Account approximately $76,450,000 (the "Two-Year Transfers").

F.    In the six years prior to the Filing Date, Alpha Prime withdrew from the Account approximately $83,170,000 of which approximately $6,720,000 was withdrawn in the period between two years and six years prior to the Filing Date (the "Six-Year Transfers").

G.    On or about February 2, 2009, Alpha Prime filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 001503 (the "Customer Claim"). The Customer Claim is included as Attachment A to this Agreement. The Customer Claim asserts that Alpha Prime is entitled to the allowance of a customer claim in an amount reflected on its BLMIS Account statement for the period ending November 30, 2008. The Parties agree that under the "net equity" ruling of the United States Court of Appeals for the Second Circuit, *Sec. Inv'r Prot. Corp. v. BLMIS (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012), Alpha Prime's net equity equals $250,671,000.

H.    On July 15, 2009, the Trustee commenced an action in the Bankruptcy Court against Alpha Prime and others under Adversary Proceeding Number 09-01364 (the "Adversary Proceeding"). On December 5, 2010, the Trustee filed an amended complaint (the "Amended Complaint") in the Adversary Proceeding, asserting claims against Alpha Prime for:

1. the avoidance of the Two-Year Transfers under 11 U.S.C. §§ 548, 550, and 551 and SIPA § 78fff-2(c)(3), which are set forth in Counts Three and Four of the Amended Complaint (the "Two-Year Transfer Avoidance Claims");

2. the avoidance of the Six-Year Transfers under 11 U.S.C. §§ 544 and 550 and the New York Debtor and Creditor Law §§ 270–281, which are set forth in Counts, Five, Six, Seven, and Eight of the Amended Complaint (the "Six-Year Transfer Avoidance Claims");

2

3. the recovery of the Two-Year Transfers and Six-Year Transfers under 11 U.S.C. §§ 544, 550, and 551, New York Debtor and Creditor Law §§ 270–281, and New York Civil Practice Law and Rules 203(g) and 213(8), which are set forth in Counts Nine and Ten of the Amended Complaint (the "Recovery Claims");

4. the disallowance of the Customer Claim pursuant to 11 U.S.C. § 502(d), which is set forth in Count Eleven of the Amended Complaint (the "Disallowance Claim"); and

5. the equitable subordination of the Customer Claim pursuant to 11 U.S.C. §§ 510(c) and 105(a), which is set forth in Count Twelve of the Amended Complaint (the "Subordination Claim").

I. On May 27, 2011, Alpha Prime filed an answer to the Amended Complaint and cross-claims against various HSBC entities. On December 8, 2014, Alpha Prime filed an answer, affirmative defenses, and amended cross-claims.

J. On February 24, 2014, Alpha Prime filed a Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 Authorizing Alternative Dispute Resolution Procedures. On April 11, 2014, the Bankruptcy Court entered an order authorizing mediation between the Trustee and Alpha Prime. The Parties participated in mediation, which resulted in a partial settlement, the terms of which are set forth herein.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises, and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties, Alpha Prime Asset Management Ltd. ("APAM"), Ursula Radel-Leszczynski, Stefan Zapotocky, and Peter Fischer (collectively, the "Signatories" and each a "Signatory") agree:

3

1.  <u>Relief.</u>

    (a)  <u>Payment to Trustee.</u>  At the Closing (as defined in paragraph 6), in consideration of the release by the Trustee set forth in paragraph 2 and the withdrawal of any objection to the Allowed Claim (as defined in paragraph 1(b)), Alpha Prime shall pay or cause to be paid to the Trustee, pursuant to the conveyances, assignments, endorsements, and transfers set forth in paragraph 6, the sum of $76,450,000 (the "<u>Settlement Payment</u>") in full and final settlement of all claims and causes of action with the exception of the Disputed Issues (as described in paragraphs 1(c)(i), 1(c)(ii) and 1(c)(iii) below) (the "<u>Resolved Issues</u>").

    (b)  <u>Allowance of Customer Claim.</u>  Upon the Closing (as defined in paragraph 6), the Customer Claim shall be deemed conclusively allowed in the amount of $238,137,450 (the "<u>Allowed Claim</u>"), which is equal to 95% of Alpha Prime's net equity.  The Allowed Claim shall not be subject to any disallowance under section 502(d) of the Bankruptcy Code or otherwise. As set forth in paragraph 1(c) below, the Parties continue to contest the questions of whether and to what extent the remaining 5% of Alpha Prime's net equity—i.e., $12,533,550—is to be allowed or disallowed.  The Allowed Claim shall be equal in priority to all other allowed customer claims against the BLMIS Estate and shall not be subject to any subordination pursuant to section 510 of the Bankruptcy Code or otherwise.  As of the date of this Agreement, the amount to be paid by the Trustee to Alpha Prime allocable to the Allowed Claim in respect of a catch-up distribution and the SIPC advance is $152,679,356.04; this amount shall be increased by any additional interim distribution made between the date of this Agreement and the Closing Date (the "<u>Catch-Up Distribution</u>").

    (c)  <u>Disputed Issues.</u>  The Parties will continue to contest the issues set forth in this paragraph and its subparts, and therefore reserve, and understand that this Agreement is without

4

prejudice to, all claims, rights, remedies, and defenses with respect to all matters not included in the Resolved Issues. As used herein, the term "Disputed Issues" shall mean collectively the following issues:

(i) Whether Alpha Prime is entitled to a claim under section 502(h) of the Bankruptcy Code in respect of its payment of the Settlement Payment to the Trustee and the treatment such section 502(h) claim may receive, including without limitation the issues of: (i) whether such section 502(h) claim is to be treated as a customer claim or another type of claim, including a general creditor claim; (ii) whether such section 502(h) claim is equal in priority to other allowed customer claims against the BLMIS Estate, or if a different priority system is to be utilized; and (iii) if such section 502(h) claim is subordinated or otherwise not treated the same as other customer claims, how it will be allowed and paid;

(ii) the Trustee's claims to avoid and recover the Six-Year Transfers, totaling $6,720,000, and in the event of Alpha Prime's payment in respect of the avoidance of the Six-Year Transfers, the treatment a resulting section 502(h) claim would receive, including without limitation, the issues raised in paragraph 1(c)(i) above; and

(iii) the Trustee's claims concerning the treatment of the remaining 5% of Alpha Prime's net equity claim, totaling approximately $12,533,550 (the "Disputed Customer Claim"), including without limitation, the claims to disallow or equitably subordinate the Disputed Customer Claim or a portion thereof, and the claims to treat the Disputed Customer Claim or some portion thereof as a general creditor claim, a customer claim, or something else.

2. Effect of Settlement; Reservation of Rights.

(a) Subject to paragraph 2(b) below, in consideration of the relief described in paragraph 1, upon the Closing (as defined in paragraph 6), the Trustee on behalf of himself,

5

BLMIS, and its consolidated estates, shall provide a limited release discharging Alpha Prime from the Resolved Issues. In addition, in consideration of the relief described above, upon Closing (as defined in paragraph 6), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall provide a release discharging Alpha Prime's and APAM's current and former directors (including, but not limited to, Peter Fischer, Ursula Radel-Leszcynski, and Stefan Zapotocky), officers, employees, direct or indirect shareholders, limited partners, principals, members, successors, assigns, accountants, attorneys, agents, representatives, and vendors (the "Additional Releasees"), only concerning direct or indirect transfers of money from Alpha Prime to the Additional Releasees but not for any claims that the Trustee may otherwise have.

(b)    Because the Parties will continue to contest the Disputed Issues, the Parties reserve, and this Agreement is without prejudice to, all claims, rights, remedies, and defenses relating in any way to the Disputed Issues.

(c)    The litigation of the Disputed Issues may result in the entry of a court judgment, the settlement of claims, or other outcome in which the Six-Year Transfers are avoided. In the event of the avoidance of the Six-Year Transfers, the Trustee agrees that his recourse against Alpha Prime for the recovery of such avoided transfers will be limited to the set-off of the amount of those avoided transfers against the sums held in reserve in respect of the Disputed Issues. In the event of such avoidance, Alpha Prime agrees that it will waive and will not seek to assert any defenses to the Trustee's right to set-off, described in the preceding sentence. To secure payment of such avoided transfers, Alpha Prime will convey, assign, endorse, and transfer to the Trustee its right to future distributions with respect to the the Disputed Issues in an amount equal to the amount of the avoided transfers provided that such security shall be released if and

6

when: (i) an order shall be entered denying avoidance of such transfers; or (ii) such avoided transfers shall be paid in full to the Trustee. The Parties understand (and will not argue otherwise) that this sub-paragraph does not in any way limit the Trustee's claims to (i) subordinate and/or disallow the disputed $76,450,000 claim under section 502(h) of the Bankruptcy Code or (ii) subordinate and/or disallow the Disputed Customer Claim.

(d)    This Agreement has no precedential, adjudicative, preclusive, or estoppel effect with respect to any claim, or element thereof, that the Parties continue to contest. The Parties understand (and will not argue otherwise) that this Agreement does not constitute an adjudication of any issue, a finding of fact, or a conclusion of law relating to the Disputed Issues. It does not preclude or estop the Parties from litigating any issue or advancing any argument relating to the Disputed Issues. It does not have *res judicata* effect with respect to any issue other than the Resolved Issues. It does not in any way bar the Parties from advancing any argument with respect to the Disputed Issues, although the Resolved Issues shall be deemed completely and finally resolved.

3.    Dismissal of Claims. As soon as practicable after the Closing (as defined in paragraph 6), the Parties shall submit to the Bankruptcy Court: (a) a stipulation requesting the dismissal of the Two-Year Transfer Avoidance Claims, i.e., Counts Three and Four of the Amended Complaint, with prejudice, as against Alpha Prime, with each Party bearing its own costs, attorneys' fees, and expenses; and (b) stipulations requesting the dismissal with prejudice of the Amended Complaint as to (i) Ursula Radel-Leszcynski and (ii) APAM, with each party bearing its own costs, attorneys' fees, and expenses.

_____

4. <u>Continuing Discovery Obligations of Certain Releasees</u>.

(a) Notwithstanding the releases granted herein to the Additional Releasees or the dismissal of Ursula Radel-Leszczynski and APAM contemplated herein, APAM, Ursula Radel-Leszczynski, Peter Fischer, and Stefan Zapotocky will have the continuing obligation to participate in discovery under the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>") as though each were a party to the Adversary Proceeding. Service of discovery requests shall be complete upon each when made by delivery to DuffyAmedeo LLP, c/o Todd E. Duffy, pursuant to the Federal Rules. All discovery requests shall be governed by the Federal Rules, section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution, and the protective orders in place and/or as further agreed by the parties. The Trustee shall not be required to satisfy requirements provided by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, or any other set of rules, procedures or regulations, other than the Federal Rules, in order to take discovery.

(b) The Parties understand that neither Ms. Radel-Leszczynski, Mr. Fischer, nor Mr. Zapotocky is waiving any right available under the Federal Rules or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution to object to any of the Trustee's discovery requests; they reserve their rights under the Federal Rules to move for a protective order as to any discovery request the Trustee serves upon them.

(c) APAM, Ms. Radel-Leszcysnki, Mr. Fischer, and Mr. Zapotocky shall appear for depositions in the Adversary Proceeding pursuant to notice served on DuffyAmedeo LLP, as

8

though each were a party pursuant to the Federal Rules without the necessity of a subpoena, letter rogatory, letter of request, or other process. Service of notices of deposition directed to APAM, Ms. Radel-Leszczynski, Mr. Fischer, or Mr. Zapotocky shall be complete when made by delivery to DuffyAmedeo LLP, c/o Todd E. Duffy, pursuant to the Federal Rules. All notices of deposition shall be governed solely by the Federal Rules; the Trustee shall not be required to satisfy requirements provided by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, or any other set of rules, procedures or regulations, other than the Federal Rules.

(d) The Parties understand that, notwithstanding anything herein to the contrary, neither Ms. Radel-Leszczynski, Mr. Fischer, nor Mr. Zapotocky is waiving any right available under the Federal Rules or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution to object to any of the Trustee's deposition questions; they reserve their rights to refuse to answer any question posed by the Trustee's counsel pursuant to the Federal Rules and/or section 321 (1)-1 of the Austrian Code of Civil Procedure (ZPO) (as amended) only insofar as it relates to criminal prosecution. To the extent that APAM, Ms. Radel-Leszczynski, Mr. Fischer, or Mr. Zapotocky believe that they are being asked to reveal secret or proprietary information not protected by the protective orders in this action, the parties will work with a discovery arbitrator to ensure that a sufficient protective order covering such secrets is established.

_____

9

5.  Court Approval; Effective Date; Termination.

   (a) If any objection is interposed to approval of this Agreement, the Agreement is subject to and shall become effective and binding on the Signatories upon the Bankruptcy Court's approval of this Agreement by an order (the "Approval Order") that is no longer subject to appeal, review, or rehearing. If no such objections are filed, the Agreement shall become effective and binding on the Signatories immediately upon entry of the Approval Order. The Trustee shall use his reasonable efforts to obtain an Approval Order as promptly as practicable after the execution of this Agreement. The effective date (the "Effective Date") shall be the date that the Approval Order becomes effective and binding on the Signatories as set forth in this paragraph.

   (b) The form of the Approval Order shall be subject to the reasonable approval of the Parties. If this Agreement has not become effective as provided in this paragraph within 120 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (i) this Agreement (other than this paragraph) shall terminate and be void; (ii) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (iii) neither the Trustee nor Alpha Prime may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, Adversary Proceeding, or any case or proceeding relating to Alpha Prime, BLMIS, or Madoff.

6.  Closing. There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement. At the Closing simultaneously:

   (a) Alpha Prime shall satisfy the Settlement Payment by

10

    (i)  conveying, assigning, endorsing, and transferring to the Trustee the funds to be advanced by SIPC in the amount of $500,000; and

    (ii)  conveying, assigning, endorsing, and transferring to the Trustee from the Catch-Up Distribution the sum of $75,950,000 owed to Alpha Prime under the Allowed Claim.

  (b)  The Trustee shall pay Alpha Prime $76,229,356.04, consisting of the balance of the Catch-Up Distribution owed to Alpha Prime under the Allowed Claim pursuant to payment instructions to be provided by Alpha Prime to the Trustee. This amount shall be increased by any additional interim distribution made between the date of this Agreement and the Closing Date.

  (c)  The releases contained in paragraph 2 shall become effective without any further action of the Parties.

7.  <u>Continuing Litigation; Appointment of Discovery Arbitrator</u>. As described herein, the Parties continue to contest certain claims and issues, with respect to which the Parties have agreed to a First Amended Case Management Order, setting forth, among other things, a proposed schedule. The Parties shall have the First Amended Case Management Order entered by the Bankruptcy Court as soon as practicable after the Effective Date. As set forth in the First Amended Case Management Order, the Parties shall seek the appointment of a discovery arbitrator by order of the Bankruptcy Court as soon as practicable after the Effective Date.

8.  <u>Claims Filed</u>. By virtue of this Partial Settlement Agreement, Alpha Prime will be deemed to have filed at Closing a proof of claim in the amount of $76,500,000 pursuant to section 502(h) of the Bankruptcy Code in addition to the Disputed Customer Claim. In addition, the Trustee will be deemed to have filed an objection at Closing to that section 502(h) claim as well as to the Disputed Customer Claim.

11

9. <u>The Signatories' Authority</u>. Each Signatory represents and warrants to the Trustee that, as of the date hereof, it has the full power, authority, and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of its respective obligations under this Agreement. The Trustee represents and warrants to APAM, Ursula Radel-Leszczynski, Stefan Zapotocky, and Peter Fischer that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 5 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

10. <u>Business Days</u>. For purposes of this Agreement, the term "business days" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in New York City.

11. <u>Further Assurances</u>. The Parties shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

12. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the Signatories and supersedes any and all prior agreements, representations, and understandings of the parties concerning the subject matter hereof.

13. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any party of any fault, liability, or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in

evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

14. <u>Amendments; Waiver</u>. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of each Party hereto, except that nothing in this Agreement shall prevent Alpha Prime's ability to assign all or part of Alpha Prime's Allowed Claim on or after the Effective Date.

16. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each Signatory and their respective successors and permitted assigns.

17. <u>No Third-Party Beneficiary</u>. Except as expressly provided in paragraphs 2, 3, and 4, the Parties do not intend to confer any benefit of or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

19. <u>Exclusive Jurisdiction</u>. The Signatories agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes between the parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the parties agree that any dispute arising

13

out of this Agreement may be brought in the United States District Court for the Southern District of New York.

20.     Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not intended to be limiting.

21.     Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Signatories may evidence their execution of this Agreement by delivery to the other Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

22.     Negotiated Agreement.  This Agreement has been fully negotiated by the Signatories. Each party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

23.     Severability.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

[*remainder of page intentionally left blank*]

24. **Notices.** Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Email: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

with a copy to:

Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
F: (212) 589-4201

If to Alpha Prime, c/o:

Todd E. Duffy
Email: tduffy@duffyamedeo.com
DuffyAmedeo LLP
275 Seventh Avenue, 7th Floor
New York, NY 10001

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date set forth above.

_____
Irving H. Picard, Trustee

_____
Ursula Radel-Leszczynski

_____
Stefan Zapotocky

_____
Peter Fischer

**ALPHA PRIME FUND LIMITED**

By: _____
Name:
Title:

**ALPHA PRIME ASSET MANAGEMENT LTD.**

By: _____
Name: James M Keyes
Title: Director

15

Email: owarshavsky@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
F: (212) 589-4201

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

_____        ALPHA PRIME FUND LIMITED
Irving H. Picard, Trustee                By: _____
                                         Name: P. FISCHER        D. MÜLLER
                                         Title: DIRECTOR         DIRECTOR

_____        _____
Ursula Radel-Leszczynski                Peter Fischer

_____
Stefan Zapotocky

4