# EXHIBIT 12

EXHIBIT "A"

AGREEMENT

# AGREEMENT

This Agreement, dated as of November 12, 2014 ("Agreement"), is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District Court of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and Primeo Fund (In Official Liquidation) acting by its joint official liquidators, Gordon MacRae and Eleanor Fisher ("Primeo") and Herald Fund SPC (In Official Liquidation) acting by its principal joint official liquidators, Russell Smith and Niall Goodsir-Cullen ("Herald," together with Primeo, the "Funds"), on the other hand. The Trustee and the Funds collectively shall be referred to herein as the "Parties."

# BACKGROUND

A.    BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.    On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.    Primeo maintained two accounts with BLMIS. The first account was opened in or around December 1993 and was designated account no. 1FR060. Account no. 1FR060 was closed in or around April 2000. The second account was opened in or around January 1996 and was designated account no. 1FR092. Account no. 1FR092 was closed in 2007, when Primeo became an indirect investor with BLMIS through other funds, including Herald.

E.    In the two years prior to the Filing Date, Primeo withdrew from its BLMIS accounts approximately Fifteen Million Four Hundred Thousand United States Dollars ($15,400,000.00).

F.    In the period from two to six years prior to the Filing Date, Primeo withdrew from its BLMIS accounts approximately One Hundred Twenty-Three Million Nine Hundred Fifty Thousand United States Dollars ($123,950,000.00); in total during the six years prior to the Filing Date, Primeo withdrew One Hundred Thirty-Nine Million Three Hundred Fifty Thousand Dollars ($139,350,000.00) ("Primeo Six-Year Transfers"). In the six years prior to the Filing Date, Primeo also received indirect transfers on account of its investments in Herald and Alpha Prime Fund Limited ("Alpha Prime").

G.      Herald maintained an account with BLMIS through its Luxembourg-based custodian HSBC Securities Services (Luxembourg), S.A. ("HSSL"), designated account no. 1FR109, that was opened in or around April 2004.  In the six years prior to the Filing Date, Herald, through HSSL, withdrew from that BLMIS account approximately Five Hundred Sixty-Seven Million Eight Hundred Thousand United States Dollars ($567,800,000.00) ("Herald Six-Year Transfers," and together with the Primeo Six-Year Transfers, the "Transfers").

H.      On or about June 23, 2009, Herald filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 10817 (the "Herald Customer Claim").  The Herald Customer Claim is included as Attachment A to this Agreement.  The Herald Customer Claim asserts that Herald is entitled to the securities reflected on its BLMIS Account statement for the period ending November 30, 2008, or in the alternative its net equity.  The Parties agree that Herald's net equity equals $1,172,195,000 ("Net Equity").

I.      Primeo did not file a customer claim.

J.      On January 23, 2009, Primeo was placed into voluntary liquidation by special resolution ("Primeo Liquidation") and on April 8, 2009, the liquidation of Primeo was continued under the supervision of the Grand Court of the Cayman Islands ("Cayman Court").  Gordon MacRae and Eleanor Fisher are the current joint official liquidators of Primeo ("Primeo Liquidators").

K.      On July 16, 2013, Herald was placed into official liquidation by Order of the Cayman Court  following the winding up petition presented by Primeo on February 14, 2013 ("Herald Liquidation," and together with the Primeo Liquidation, the "Cayman Liquidation Proceedings").  On July 24, 2013, Russell Smith and Niall Goodsir-Cullen were appointed as the principal joint official liquidators of Herald ("Herald Liquidators," and together with the Primeo Liquidators, the "Liquidators"), and Michael Pearson was appointed as the additional liquidator of Herald by the Cayman Court.

L.      On December 5, 2010, the Trustee filed an Amended Complaint in an adversary proceeding captioned *Picard v. HSBC Bank plc, et al.*, Adv. Pro. No. 09-1364 (SMB) (the "Adversary Proceeding").  In the Amended Complaint, the Trustee asserted claims to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, or 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Power Claims").  The Trustee also asserted claims to disallow the Herald Customer Claim, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate the Herald Customer Claim, pursuant to 11 U.S.C. §§ 510(c) and 105(a) ("Disallowance and Subordination Claims").

M.      On December 9, 2010, the Trustee and BLMIS also filed a proceeding against Primeo in the Cayman Court, Cause No. FSD 0275 of 2010-AJJ ("Cayman Proceeding"), advancing avoidance and constructive trust claims under U.S. and Cayman law ("Trustee's Cayman Claims").  Primeo filed a Defence and Counterclaim in the Cayman Proceeding, denying the Trustee's Cayman Claims and asserting counterclaims against BLMIS for breach of contract and fraudulent misrepresentation ("Primeo's Cayman Claims").  In January 2011, various preliminary issues were tried in the Cayman Court. In January 2013, the Cayman Court ruled on those preliminary issues.  The Trustee and Primeo respectively appealed certain of those

issues to the Cayman Islands Court of Appeal (the "Court of Appeal Proceeding"). On April 16, 2014, the Cayman Islands Court of Appeal ruled on certain issues and adjourned one issue for further argument.

N.    In December 2010, the Trustee commenced an adversary proceeding against JPMorgan Chase ("JPM") alleging that JPM received approximately $425 million in direct and indirect transfers from BLMIS, including $154 million that JPM redeemed from Herald. In December 2013, the Trustee and JPM reached a settlement whereby JPM paid the Trustee $325 million. Herald has asserted that it is entitled to a $154 million credit based on the settlement amounts paid by JPM, which the Trustee disputes. However, in connection with the Trustee's settlement with Herald and Primeo, the Parties agree that Herald will receive credit for $100,098,057 of the amount paid by JPM, reducing the Trustee's claim against Herald to $467,701,943 ("Herald Adjusted Six-Year Transfers").

## AGREEMENT

1.    Payment to Trustee.  At the Closing (as defined in paragraph 9) (i) Primeo shall pay or cause to be paid to the Trustee, pursuant to the conveyances, assignments, endorsements, and transfers set forth in paragraph 9, the sum of Twenty-Nine Million One Hundred Forty-Two Thousand Three Hundred Forty-Five United States Dollars ($29,142,345) (the "Primeo Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims, the Trustee's Cayman Claims and any other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 6), that the Trustee or the BLMIS Estate may have against Primeo (including all claims against Primeo as a subsequent transferee); and (ii) Herald shall pay or cause to be paid to the Trustee, pursuant to the conveyances, assignments, endorsements, and transfers set forth in paragraph 9, the sum of Four Hundred Sixty-Seven Million Seven Hundred One Thousand Nine Hundred Forty-Three United States Dollars ($467,701,943) (the "Herald Settlement Payment") in full and final settlement and satisfaction of all Avoiding Power Claims and other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 6), that the Trustee or the BLMIS Estate may have against Herald.

2.    No Further Claim for Primeo.  Notwithstanding the Primeo Settlement Payment, Primeo shall not be entitled to any distributions directly from the BLMIS Estate and shall not seek allowance of a customer claim or any other claim under section 502(h) of the Bankruptcy Code.

3.    Allowance of Herald Customer Claim.  Upon the Closing (as defined in paragraph 9), Herald's Customer Claim shall be deemed conclusively allowed pursuant to section 502(h) of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of One Billion Six Hundred Thirty-Nine Million Eight Hundred Ninety-Six Thousand Nine Hundred Forty-Three Dollars ($1,639,896,943) (the "Allowed Claim").  As of the date of this Agreement, the initial amount to be paid by the Trustee to Herald allocable to the Allowed Claim in respect of a catch-up distribution is $755,320,133 (46.059% of the Allowed Claim).

4.    Release by the Trustee.  In consideration for the terms herein, except with respect

3

to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 9), the Trustee on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge the Funds and the Liquidators, including their successors and/or assigns, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing that are, have been, could have been, or might in the future be asserted by the Trustee based on, arising out of, or in any way related to the Funds' respective direct or indirect relationship with BLMIS, including, without limitation, the claims against the Funds in the Adversary Proceeding and the Cayman Proceeding (including all claims against Primeo as a subsequent transferee, where such claims are related to Primeo's investments in or redemptions from Herald or Alpha Prime), except for any and all claims to enforce the obligations of the Funds under this Agreement.  The release granted by the Trustee hereunder shall extend to the Funds' shareholders to the extent that any such shareholders received transfers of money from Herald and/or Primeo but shall not include a release of claims that the Trustee may bring that are unrelated to the Funds' investments in or withdrawals from BLMIS.  For the avoidance of doubt, the Parties agree that the Trustee's release granted herein shall not in any way extend to Alpha Prime, nor shall Alpha Prime be deemed a beneficiary, intended or unintended, of this release.

5.    <u>Release by the Funds and the Liquidators</u>.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 9), the Funds and the Liquidators hereby release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs or, disbursements), known or unknown, existing as of the date of the Closing, based on, arising out of, or in any way related to BLMIS, including without limitation, Primeo's Cayman Claims, except for the rights of the Funds and the Liquidators to enforce the obligations of the Trustee under this Agreement.

6.    <u>Unknown Claims</u>.  Unknown Claims shall mean any released claims pursuant to paragraphs 4 and 5 of the Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all released claims in paragraphs 4 and 5 of this Agreement, the Parties shall expressly waive or be

deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Liquidators may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

7.     Dismissal of Adversary Proceedings. Within five days of the Closing (as defined in paragraph 9), the Parties shall submit: (i) to the Bankruptcy Court, a stipulation requesting the dismissal of the Adversary Proceeding, with prejudice, as against the Funds, with each party bearing its own costs, attorneys' fees, and expenses; and (ii) documents seeking the dismissal of the Cayman Proceeding and the Cayman Court of Appeal Proceeding, including the Trustee's Cayman Claims and Primeo's Cayman Claims, with each party bearing their own costs, attorneys' fees, and expenses.

8.     Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon the later of: (i) the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing; or (ii) the Cayman Court sanctioning the entry into this Agreement by the Herald Liquidators by an order that is no longer subject to appeal, review, or rehearing; or (iii) the Cayman Court sanctioning the entry into this Agreement by the Primeo Liquidators by an order that is no longer subject to appeal, review, or rehearing (the date when this Agreement becomes effective and binding on the Parties, the "Effective Date"). The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. The Liquidators shall use their reasonable efforts to obtain sanction of the Agreement in their respective Cayman Liquidation Proceedings as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement

(other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor the Funds may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, in the respective Cayman Liquidation Proceedings, or any case or proceeding relating to the Funds, BLMIS, or Madoff.

9.      Closing.  There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement.  At the Closing simultaneously:

(a) Herald shall satisfy the Herald Settlement Payment and the Primeo Settlement Payment by:

(i) conveying, assigning, endorsing, and transferring to the Trustee the funds to be advanced by SIPC in the amount of Five Hundred Thousand Dollars ($500,000.00); and

(ii) conveying, assigning, endorsing, and transferring to the Trustee from the catch-up distribution the sum of Four Hundred Ninety-Six Million Three Hundred Forty-Four Thousand Two Hundred Eight-Eight Dollars ($496,344,288) owed to Herald under the Allowed Claim.

These actions shall constitute full payment of the Primeo Settlement Payment and the Herald Settlement Payment owed by the Funds to the Trustee;

(b) The Trustee shall pay Herald Two Hundred Fifty-Eight Million Nine Hundred Seventy-Five Thousand Eight Hundred Forty-Five Dollars ($258,975,845), consisting of the balance of the catch-up distribution owed to Herald under the Allowed Claim pursuant to payment instructions to be provided by the Herald Liquidators to the Trustee; and

(c) The releases contained in paragraphs 4 and 5 shall become effective without any further action by any of the Parties.

10.      Herald Claim Against Primeo.  Upon satisfaction of the Primeo Settlement Payment by Herald at the Closing, Herald shall obtain a valid and uncontested claim against Primeo equal to the Primeo Settlement Payment plus an interest rate equal to the rate Herald receives on its escrow deposits ("Primeo Claim").  Herald shall be entitled to satisfy the Primeo Claim from the first distributions otherwise payable to Primeo in the Herald liquidation proceedings pending in the Cayman Court.

11.      No Prejudice in Cayman Proceedings.  Herald and Primeo agree that, except for and subject to the terms of paragraph 10 above:

(a)      No payment under this Agreement shall create any claim by Herald against Primeo, or by Primeo against Herald, under either United States or Cayman Islands law that does not otherwise currently exist in the Cayman Islands; and

(b)    Any positions taken by Herald or Primeo in this Agreement shall be without prejudice to Herald or Primeo's ability to make any argument before the Cayman Court (including without limitation regarding the issue of Primeo's in-kind subscription in Herald).

12.    <u>Liquidators' and Trustee's Authority</u>.  The Funds and the Liquidators represent and warrant to the Trustee that, as of the date hereof, and subject to the approval of the Cayman Court as set forth in paragraph 8 above, each of them has the full power, authority, and legal right to execute and deliver, and to perform their respective obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement.  The Trustee represents and warrants to the Funds that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 8 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.  The Herald Liquidators represent and warrant that Herald owns and controls the Herald Customer Claim as of the date of this Agreement.  The Primeo Liquidators represent and warrant that they have joint and several power, authority, and legal right to execute and deliver this Agreement on behalf of Primeo.

13.    <u>Further Assurances</u>.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

14.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

15.    <u>No Admission</u>.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

16.    <u>Amendments, Waiver</u>.  This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

17.    <u>Assignability</u>.  No party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent the Herald Liquidators' ability to assign all or part of the  Herald Allowed Claim, without the prior written consent of the Trustee, pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

18.    <u>No Personal Liability of the Liquidators</u>.  The Parties acknowledge and agree that the Liquidators are acting as joint official liquidators and agents of the relevant Funds and that neither of the Liquidators nor their firms and their employees, their partners now or in the future, their personal representatives, estates, effects or any successor shall incur any personal liability under this Agreement which has been entered into by them in performance of their functions as Liquidators.

19.    <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

20.    <u>No Third Party Beneficiary</u>.  Except as expressly provided in paragraphs 4 and 5, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

21.    <u>Applicable Law</u>.  Except for the provisions of paragraphs 10 and 11 above, which shall be governed in accordance with the laws of the Cayman Islands, this Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

22.    <u>Exclusive Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of New York or the Supreme Court of New York in New York County.  Notwithstanding the foregoing, the Cayman Court shall have exclusive jurisdiction over any and all disputes between Herald and Primeo relating to paragraphs 10 or 11 above and Herald and Primeo further agree that any such dispute shall be brought exclusively in the Cayman Court.

23.    <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not limiting.

24.    <u>Counterparts, Electronic Copy of Signatures</u>.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

25.    <u>Negotiated Agreement</u>.  This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply

in the construction or interpretation of this Agreement.

26.    <u>Severability</u>.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

27.    <u>Notices</u>.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| | |
|---|---|
| If to the Trustee:<br><br>Irving H. Picard<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Email:  ipicard@bakerlaw.com | If to Primeo, c/o:<br>Gary S. Lee<br>Email: glee@mofo.com<br>John A. Pintarelli<br>Email: jpintarelli@mofo.com<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019<br>T: (212) 468-8000<br>F: (212) 468-7900 |
| | If to Herald, c/o :<br>Joseph Serino, Jr., P.C.<br>Email: joseph.serino@kirkland.com<br>David S. Flugman<br>Email: david.flugman@kirkland.com<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>T: (212) 446-4800<br>F: (212) 446-4900 |
| with copies to:<br><br>Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Geoffrey A. North<br>Email:  gnorth@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>F:  (212) 589-4201 | |

*[Signature pages follow]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____
IRVING H. PICARD
Trustee for Bernard L. Madoff
Investment Securities LLC

Sworn to and subscribed before me
this 12th day of November, 2014

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/2017

10

**PRIMEO FUND (IN OFFICIAL LIQUIDATION)**

By: _____

Name: Eleanor Fisher

Title:   Joint Official Liquidator

Subscribed before me
this 12 day of November

_____
Notary Public

**RHONDA L. ANDERSON**
Notary Public In and for The Cayman Islands
My Commission Expires on 1 Jan., 20 15

11



**HERALD FUND SPC (IN OFFICIAL LIQUIDATION)**

By: _____

      Name: Russell Smith
      Title:  Official Liquidator

Subscribed before me
this 12 day of November, 2014

_____
Notary Public

By: _____

      Name: Niall Goodsir-Cullen
      Title:  Official Liquidator

Subscribed before me
this 12 day of November, 2014

_____
Notary Public



# ATTACHMENT A

# <u>HERALD CUSTOMER CLAIM</u>

U.S. Bankruptcy Court for the Southern District of New York

Claim Number:          010817

## CUSTOMER CLAIM

Claim Number_____

Date Received_____

**RECEIVED**

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

JUN 2 3 2009

In Liquidation

### DECEMBER 11, 2008

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Provide your office and home telephone no.

OFFICE:_____+1 345 949 8066_____

HOME:_____

Taxpayer I.D. Number (Social Security No.)
_____

Account Number:    1FR109
HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG,
CAYMAN ISLANDS

(If incorrect, please change)

**NOTE:**    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.    Claim for money balances as of **December 11, 2008** :
   a.    The Broker owes me a Credit (Cr.) Balance of          $___N/A*_____
   b.    I owe the Broker a Debit (Dr.) Balance of             $___N/A_____

502180406                                         1

*Please see the attached Addendum to Customer Claim form for further explanation.

c. If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                        $ _N/A_

d. If balance is zero, insert "None."                    NONE

2. Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X* | |
| b. | I owe the Broker securities | | X |

c. If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | See attached November 30, 2008 Statement from BMIS, attached to the Addendum to this Customer Claim Form as Exhibit G. | | |
| | | | |
| | | | |
| | | | |

(heading above right columns: *Number of Shares or Face Amount of Bonds*)

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or**

502180406                                    2
* Please see the attached Addendum to Customer Claim Form for further explanation.

information regarding any withdrawals you have ever made or payments received from the Debtor.

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x* |  |

502180406                                    3

*Please see paragraph 4 of the attached Addendum to this Customer Claim form for further information.

9.      Have you or any member of your family
        ever filed a claim under the Securities
        Investor Protection Act of 1970?  if
        so, give name of that broker.                    _____    x

        Please list the full name and address of anyone assisting you in the
        preparation of this claim form: Kirkland & Ellis LLP, 601 Lexington
        Avenue, New York NY 10022                                              .

If you cannot compute the amount of your claim, you may file an estimated claim.  In that
case, please indicate your claim is an estimated claim.


**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM.
CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR
IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**


**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY
INFORMATION AND BELIEF.**

Date _17th June 2009_    Signature _____ ( F. MUGNAI - Director )
                                              ( HERALD FUND SPC )

Date _____    Signature _____

(If ownership of the account is shared, all must sign above.  Give each owner's name,
address, phone number, and extent of ownership on a signed separate sheet.  If other
than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity
and authority.  Please supply the trust agreement or other proof of authority.)


**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| - against - |  |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, |  |
| Defendant. |  |

**ADDENDUM TO THE BERNARD L. MADOFF INVESTMENT SECURITIES LLC
CUSTOMER CLAIM FORM OF HERALD FUND SPC (ACCOUNT # 1-FR109)**

Herald Fund SPC hereby attaches this addendum in further support of its claim in the

liquidation of Bernard L. Madoff Investment Securities LLC ("BMIS") pursuant to the Securities

Investor Protection Act, 15 U.S.C. § 78aaa-111, et seq., ("SIPA") and the December 23, 2008,

Order Approving the Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims, and Providing Other Relief:

1.      Herald Fund SPC (the "Fund") is an exempted segregated portfolio company

incorporated with limited liability under the laws of the Cayman Islands on March 24, 2004. The

Fund's registered office is located at PO Box 309, Ugland House, Grand Cayman KY1-1104,

Cayman Islands. The Fund has established a segregated portfolio, Herald USA Segregated

Portfolio One (the "Segregated Portfolio"). The Segregated Portfolio has two classes of shares, a

U.S. Dollar class and a Euro class. For the avoidance of doubt, any reference to the Fund in the

claim form and addendum should be understood as the Fund acting for and on behalf of the

Segregated Portfolio.

2.      This customer claim form is submitted and signed by Dr. Franco Mugnai,

Director of the Fund. Communications with the Fund may be directed to Dr. Mugnai's attention

at PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. Additionally,

communications may be directed to Jay P. Lefkowitz of Kirkland & Ellis LLP, 601 Lexington

Avenue, New York, New York 10022, (212) 446-4800, whom the Fund has retained for the

limited purpose of assisting the Fund with the filing of its claim in these liquidation proceedings.

3.     The following documents on which this Addendum is based are attached hereto as
Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G, and Exhibit H,
respectively, and are incorporated herein by reference: (a) proof of Dr. Mugnai's authority to
execute this claim form and Addendum; (b) the Custodian Agreement, as defined herein; (c) the
Trading Authorization Limited to Purchases and Sales of Securities and Options with Bernard L.
Madoff; (d) a May 22, 2009 letter from HSBC, as defined herein, to the Fund; (e) a June 5, 2009
letter from HSBC to the Fund; (f) a March 10, 2009 email from the Fund's legal counsel to
HSBC; (g) the November 2008 statement from BMIS for Account 1-FR109; and (h) a Net Cash
Deposit Spreadsheet, as defined herein.

4.     On March 29, 2004, the Fund entered into a Custodian Agreement with Bank of
Bermuda (Luxembourg) S.A. (which has since changed its name to HSBC Securities Services
(Luxembourg) S.A. and is referred to herein as the "Custodian" or "HSBC") (the "Custodian
Agreement") whereby the Custodian contracted to act as the Fund's custodian to hold its assets
and, among other things, to maintain all records and documents pertaining to the Fund's
investments.  Pursuant to the Custodian Agreement, the Custodian is empowered to act without
instruction from the Fund in appointing sub-custodians and, accordingly, possessed discretionary
authority to choose and contract with its own sub-custodians.  It is the Fund's understanding that
the Custodian appointed BMIS as Sub-Custodian.  A copy of the Custodian Agreement is
attached to this Addendum as Exhibit B.  The Fund's contact at HSBC is Mr. Saverio Fiorino.
Communications with Mr Fiorino can be directed to HSBC Securities Services (Luxembourg)
S.A., 16, boulevard d'Avranches, L-1160, Luxembourg, +352 404646 233.

5.     On March 25, 2004, account number 1FR109 was opened by the Custodian at
BMIS for the benefit of the Fund entitled "Bank of Bermuda (Luxembourg) S.A. Special
Custody Account for Herald Fund SPC - Herald USA."  It is the Fund's understanding that the
Custodian established this as a custody account with BMIS serving as Sub-Custodian to hold
assets that the Custodian holds for the Fund, and, in this capacity, BMIS corresponded with the
Custodian in its capacity as the Sub-Custodian.  After opening the account at BMIS, the
Custodian entrusted substantially all of the Fund's assets to BMIS.  Thereafter, and pursuant to a
Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Trading

Authorization"), an authorization was given to Bernard L. Madoff to execute securities transactions on behalf of the Fund on the account opened by HSBC with BMIS. A copy of the Trading Authorization is attached to this Addendum as Exhibit C.

6. Accordingly, it is the Fund's position that HSBC is the proper party to file this claim on behalf of the Fund. Indeed, the SIPC customer claim form was addressed and delivered to HSBC and not to the Fund, thus supporting the Fund's position in this regard. (*See* May 22, 2009 letter from HSBC, attached to this Addendum as Exhibit D.) Notwithstanding the Fund's position, which it stated to HSBC, HSBC informed the Fund that it would not make the filing for the benefit of the Fund and had no intention of doing so. (*See id.*) HSBC recently restated this position. (*See* June 5, 2009 letter from HSBC, attached to this Addendum as Exhibit E.) Thus, the Fund is forced to make this filing on its own behalf in respect of the Segregated Portfolio to protect itself and its shareholders. The fact that the Fund is making this claim on its own behalf in respect of the Segregated Portfolio shall not compromise any positions or defenses that the Fund has or may have, and the Fund explicitly reserves those positions or defenses and all rights as against HSBC (and any other person or entity) with respect to this claim. (*See* March 10, 2009 email from the Fund's legal counsel to HSBC, attached to this Addendum as Exhibit F.)

7. At the start of each month, BMIS sent a statement to the Custodian detailing the investment activity for the previous month, which securities were bought and sold, the value of the individual securities, the value of any options purchased, and the total value of the Fund's portfolio. BMIS did not send any such statement to the Fund.

8. Although the Segregated Portfolio has both a U.S. Dollar Class and Euro Class, the BMIS statements received by the Fund's Custodian reflected account holdings and balances in U.S. Dollars only. The BMIS statement for the month of November 2008 indicates that, as of November 30, 2008, the market value of the Fund's securities was $1,951,174,724.18. The statement further indicates that as of November 30, 2008, the Fund held $69,321,000.00 in long option positions, and negative $126,429,590.00 in short option positions, for a net loss of $57,108,590.00. A copy of the November 30, 2008, BMIS statement is attached to this Addendum as Exhibit G. Thus, the Fund makes a claim for $1,894,066,134.18.

9.     The Segregated Portfolio's U.S. Dollar Class, through its Custodian, deposited $1,851,380,807.72 with and redeemed $646,177,217.53 from BMIS over the history of the Fund, with a net remaining principal investment of $1,205,203,590.19.   Likewise, the Segregated Portfolio's Euro class, through its Custodian, deposited 602,445,210.24€ with and redeemed 294,202,438.77€ from BMIS, with a net remaining principal investment of 308,242,771.42€.   A spreadsheet detailing these figures (the "Net Cash Deposit Spreadsheet") is attached hereto as Exhibit H.   Thus, in the event of any final determination that the Fund's claim in these proceedings is limited to its net cash deposits in BMIS over time, the Fund hereby makes this alternative claim for $1,205,203,590.19 plus 308,242,771.42€.

10.    The Fund also includes as part of its claim here the amounts, if any, that it may pay into the Estate of BMIS and/or Bernard L. Madoff based on a theory of preference, fraudulent conveyance, and/or any other avoidance or similar action, and the Fund expressly reserves the right to amend this customer claim form should the Trustee recover from the Fund through any such action by settlement, judgment, or otherwise.

11.    Finally, the Fund includes as part of its claim here the amounts that it is due from the Securities Investor Protection Corporation pursuant to SIPA.

12.    As a direct result of the fraud perpetrated by Bernard L. Madoff and BMIS, the conduct of HSBC as Custodian (against whom the Fund expressly reserves its rights for the return of the Fund's assets as is currently being litigated in the courts of Luxembourg), and the actions taken by other parties to be identified, the Fund may have lost the entirety of its investment portfolio and, by extension, each of the Fund's investors may have lost substantially their entire investment in the Fund.   The Fund submits this customer claim form and supporting materials in an effort to recoup its ratable share of BMIS customer property and any additional monies to which it is entitled pursuant to SIPA.   The Fund reserves and does not waive any and all rights of its investors, including but not limited to the right to make their own claims in this liquidation in the event that such investors are deemed "customers" of BMIS at a later date. Additionally, the Fund reserves and does not waive any and all rights at law and equity and all rights and defenses with regard to any action that the Trustee may bring against it pursuant to SIPA, the U.S. Bankruptcy Code, and/or the New York Debtor & Creditor Law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 17th day of June 2009.                    By: _____

Dr. Franco Mugnai
Director, Herald Fund SPC
P.O. Box 309
Ugland House
Grand Cayman, KY1 - 1104
Cayman Islands

A

**HERALD FUND SPC**

(the "**Company**")

WRITTEN RESOLUTIONS OF THE BOARD OF DIRECTORS OF THE COMPANY

**1    SIPC filing**

1.1    It is noted that, in relation to Herald USA Segregated Portfolio One (the "**Fund**"), a segregated portfolio of the Company, the directors of the Company (the "**Directors**") have been considering whether to file a claim with the Securities Investor Protection Corporation ("**SIPC**") liquidation of Bernard L. Madoff Investment Securities LLC (the "**Claim**"). These resolutions apply only with respect to the Fund.

1.2    Pursuant to the resolution dated 09 June 2009, the Directors have now considered the draft SIPC Customer Claim Form, Addendum and accompany exhibits (as detailed therein).

1.3    Accordingly, it is resolved:

(a)    **THAT** the Claim Form, Addendum and accompany exhibits (as detailed therein) in the form reviewed by the Directors be approved and that Dr Franco Mugnai, a Director of the Company, be and is hereby authorised to sign and approve the final terms thereof for and on behalf of the Company.

(b)    **THAT** the Company hereby approves, ratifies and confirms in all respects all actions taken by the Directors, officers, employees and agents (including legal counsel) of the Company in connection with the subject matter of this resolution.

_____          _____
Franco Mughai                                        Friedrich Pfeffer
Date: 17 June 2009                                  Date: 17 June 2009

**HERALD FUND SPC**

(the "**Company**")

WRITTEN RESOLUTIONS OF THE BOARD OF DIRECTORS OF THE COMPANY

**1**    **SIPC filing**

1.1    It is noted that, in relation to Herald USA Segregated Portfolio One (the "**Fund**"), a segregated portfolio of the Company, the directors of the Company (the "**Directors**") have been considering whether to file a claim with the Securities Investor Protection Corporation ("**SIPC**") liquidation of Bernard L. Madoff Investment Securities LLC (the "**Claim**"). These resolutions apply only with respect to the Fund.

1.2    Pursuant to the resolution dated 09 June 2009, the Directors have now considered the draft SIPC Customer Claim Form, Addendum and accompany exhibits (as detailed therein).

1.3    Accordingly, it is resolved:

(a)    **THAT** the Claim Form, Addendum and accompany exhibits (as detailed therein) in the form reviewed by the Directors be approved and that Dr Franco Mugnai, a Director of the Company, be and is hereby authorised to sign and approve the final terms thereof for and on behalf of the Company.

(b)    **THAT** the Company hereby approves, ratifies and confirms in all respects all actions taken by the Directors, officers, employees and agents (including legal counsel) of the Company in connection with the subject matter of this resolution.

_____          _____
Franco Mugnai                                              Friedrich Pfeffer
Date: 17 June 2009                                        Date: 17 June 2009

B

DATED        29th March ,        2004

BETWEEN:

**HERALD FUND SPC in respect of HERALD USA
SEGREGATED PORTFOLIO ONE
(a segregated portfolio of Herald Fund SPC)**

- and -

**BANK OF BERMUDA (LUXEMBOURG) S.A.**

**CUSTODIAN AGREEMENT**

Bank of Bermuda (Luxembourg) S.A.
13 rue Goethe
L-1637 Luxembourg

**LUX 403**

# CUSTODIAN AGREEMENT

**THIS AGREEMENT** is made this 29th day of March Two Thousand and Four

B E T W E E N

**HERALD FUND SPC in respect of Herald USA Segregated Portfolio One** (a segregated portfolio of Herald Fund SPC) an exempted segregated portfolio company incorporated in and under the laws of the Cayman Islands whose registered office is at M & C Corporate Services Limited, PO Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands, British West Indies (hereinafter called the "Company") of the first part and

**BANK OF BERMUDA (LUXEMBOURG) S.A.** whose registered office is at 13, rue Goethe, Luxembourg (hereinafter called the "Custodian") of the second part.

W H E R E A S:-

(A)    The Company has as its principal object to carry on business as a segregated portfolio company and is desirous of being provided with custodian services exclusively for the Fund being the first segregated portfolio of the Company.

(B)    The Manager has been or is about to be appointed by the Fund to administer its affairs.

(C)    The Board of Directors of the Herald Fund SPC on behalf of the Fund has selected the Custodian to serve as its custodian and the Custodian is willing to provide the Fund with such custodial services on the terms and conditions hereinafter contained.

NOW IT IS HEREBY AGREED as follows:-

## 1.    INTERPRETATION

1.1    In this Agreement and in all amendments hereto the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Articles" shall mean the Memorandum and Articles of Association of the Herald Fund SPC for the time being in force.

"Fund" shall mean Herald USA Segregated Portfolio One (a segregated portfolio of Herald Fund SPC).

"Manager" shall mean   Herald Asset Management Limited or such other person as may from time to time be appointed Manager by the Fund.

"Proper Instructions" shall mean signed written instructions or cabled, telexed, facsimile or electronically transmitted instructions in respect of any of the matters referred to in this Agreement signed or purported to be signed (except in the case of electronically transmitted instructions) by one or more directors of the Company or the Manager on behalf of the Fund or any other person or persons duly authorised to sign by the board of directors of the Company on behalf of the Fund and in the case of electronically transmitted instructions in

accordance with such authentication procedures as may be agreed by the Custodian, the Company and the Manager from time to time. A certified copy of the resolution of the board of directors of the Company or the Manager shall be conclusive evidence of the authority of any such person to act on behalf of the Fund until the Custodian is in receipt of written notice to the contrary.

"Prospectus" shall mean the prospectus, explanatory memorandum, offering circular or such other document issued from time to time with respect to the offer of shares of the Fund.

"Securities" shall mean listed and unlisted equity and equity related securities including convertible bonds and warrants; shares or units in collective investment schemes; debt securities including government and corporate issues and warrants or options thereon; or rights to acquire any of the foregoing.

1.2    Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Articles PROVIDED THAT any alteration or amendment of the Articles shall not be effective for the purposes of this Agreement unless the Custodian shall have assented thereto.

1.3    Unless the context otherwise requires words importing the singular number shall include the plural and vice versa, words importing masculine gender shall include the feminine and words importing persons shall include firms and companies and vice versa.

1.4    The division of this Agreement into sections, clauses and sub-clauses and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation hereof.

## 2.    APPOINTMENT OF CUSTODIAN

The Company HEREBY APPOINTS the Custodian to be and the Custodian HEREBY AGREES to act as custodian of the Fund in accordance with the Articles and the terms and conditions hereinafter contained from the date hereof. The Company on behalf of the Fund agrees to deliver to the Custodian all Securities and cash owned by it, and all payments of income, payments of principal or capital distributions received by it with respect to the Securities.

## 3.    NAMES, TITLES AND SIGNATURES

3.1    Forthwith after execution of this Agreement the Company on behalf of the Fund will designate and certify to the Custodian the names and signatures of the persons authorised to give Proper Instructions hereunder to the Custodian and shall deliver or procure the delivery to the Custodian of a certified copy of a resolution of the board of directors of the Company containing any such authority and a certified copy of the Articles.

3.2    The Company shall promptly certify to the Custodian any changes that may be made from time to time in the persons so authorised.



### 4.    DUTIES OF THE COMPANY

4.1    The Company shall provide the Custodian with any amendments to the Articles and Prospectus.

4.2    The Company shall promptly deliver at the Custodian's request a schedule of cash and Securities comprised in the investment portfolio of the Fund as at the date of the latest valuation of net assets of the Fund, showing the type and amount of each investment and its value determined in accordance with the provisions of the Articles and the Prospectus and detailing all purchases and sales performed since the date of the last such schedule and such schedule shall be certified as complete and correct by a responsible officer of the Company.

4.3    The Company shall procure that all sums representing subscription monies for shares are paid to the Custodian for the account of the Fund upon issue.

4.4    The Company shall promptly deliver to the Custodian any management letter prepared by the auditor of the Fund.

### 5.    RECEIPT AND DISBURSEMENT OF CASH

5.1    The Custodian shall open and maintain a separate bank account or bank accounts in its books in the name of the Fund and, if requested by the Company and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of the Fund with such bank or banks and in such place or places as may from time to time be agreed between it and the Fund. The Custodian shall hold in such bank account or bank accounts, subject to the provisions hereof, all cash received by it from or for the account of the Fund. The Custodian shall make or procure the making of payments of cash out of such account or accounts on behalf of the Fund only:-

(a)    upon the purchase of Securities for the account of the Fund and, where market practices permit, the delivery of such Securities to or to the order of the Custodian or anyone nominated by the Custodian in accordance with Clause 9 or in proper form for transfer;

(b)    for the redemption of shares of the Fund pursuant to the Articles;

(c)    for the payment of interest and dividends by the Fund or the payment by the Fund of taxes, management, investment advisory, custodian, secretarial and registrar and subscription and redemption agents fees or other operating expenses (including, without limitation thereto, fees for legal, accounting and auditing services, directors' remuneration, brokerage and commissions);

(d)    for payments in connection with the conversion, exchange or surrender of securities owned or subscribed for on behalf of the Fund held by or to be delivered to the Custodian;



(e)     for the transfer of cash from one bank account as aforesaid to another bank account as aforesaid or for deposit;

(f)     for payments in connection with insuring Securities or in providing for the safekeeping thereof otherwise than in the vault of the Custodian; and

(g)     for payment of interest and payment of principal on all borrowings as permitted by the Articles and Prospectus;

(h)     for payments in respect of initial or variation margin requirements relative to the operation of any accounts with brokers or other intermediaries;

(i)     for payments in connection with any stock lending activities; and

(j)     for other proper corporate purposes.

Before making any such payment the Custodian shall receive (and may rely upon), in the case of a payment permitted under the terms of items (a) to (i) of this sub-clause Proper Instructions directing such payment, stating that it is for a purpose permitted under the terms of one of such items, naming the person or persons to whom such payment is to be made and specifying the amount of, and the time by which, such payment is to be made and such other information as may be appropriate to allow the Custodian to effect the relevant payment in proper form, or, in the case of payment for a purpose permitted under the terms of item (j) of this sub-clause a copy of a resolution of the board of directors or of a committee of the board of directors duly authorised certified by two directors of the Company setting forth the purpose for which such payment is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom such payment is to be made stating the amount of, and the time by which, such payment is to be made and stating all relevant information as aforesaid.

5.2     The Custodian is hereby authorised to endorse and collect all cheques, drafts or other orders for the payment of money received by the Custodian for the account of the Fund.

5.3     In connection with any transaction involving Securities held by or to be acquired for the Fund, the Custodian may in its discretion (by automatic process or otherwise):-

(a)     credit the Fund on the contractual settlement date with the proceeds of any sale or exchange of Securities and may on or before the contractual settlement date transfer the relevant Securities to a separate custody account awaiting delivery; and

(b)     debit the Fund on the contractual settlement date with the purchase price of Securities purchased or acquired for the Fund and may credit the Fund on or before the contractual settlement date with the relevant Securities pending receipt of such Securities.



The Company hereby acknowledges that these procedures are of a strictly administrative nature and do not amount to an agreement by the Custodian to make loans and/or Securities available to the Fund. The Custodian is authorised to reverse any such credit or debit referred to in this sub-clause.

5.4    In respect of any transaction for which the Custodian determines not to credit the Fund on the contractual settlement date, the proceeds from the sale or exchange of Securities will be credited to the Fund as soon as practical after such proceeds are received and Securities acquired will be credited on the date of receipt of such Securities by the Custodian.

## 6.    RECEIPT OF SECURITIES

6.1    Except as provided in sub-clause 6.2 hereof, the Custodian shall record and hold in a separate account in its books all Securities received by it from time to time and shall arrange for all Securities to be deposited in the Custodian's vault or otherwise held by or to the order of the Custodian as it may think proper for the purpose of providing for the safekeeping thereof. Any expenses of whatever nature incurred by the Custodian in providing safe custody (other than in the vault of the Custodian) or in the settlement of securities transactions or the collection of dividends, interest or any other rights attaching to the Securities shall be payable by the Fund.

6.2    Upon receipt of Proper Instructions, the Custodian shall open accounts with brokers, money managers or other intermediaries either in its own name on behalf of the Fund or in the name of the Company or the Fund  and shall make such arrangements regarding trading authorisations and other forms of authority in respect of such accounts as it deems advisable.  The Custodian shall not be responsible for the safekeeping of Securities or cash deposited with or remaining in any such accounts and shall not be liable for any loss resulting from the liquidation, bankruptcy or insolvency of such broker or intermediary.

## 7.    TRANSFER OF SECURITIES AND OTHER FUNCTIONS

7.1    The Custodian shall transfer, exchange or deliver in the required form and manner Securities held by it hereunder only:-

(a)    upon sales of such Securities for the account of the Fund and, where market practices permit, receipt by the Custodian of payment therefor;

(b)    when such Securities are called, redeemed or retired or otherwise become payable;

(c)    for delivery to any broker selling any such Securities in accordance with "street delivery" custom;

(d)    in exchange for or upon conversion into other Securities alone or other Securities and cash pursuant to any plan or merger, consolidation, reorganisation, recapitalisation or readjustment or otherwise;

-5-



(e)    upon conversion of such Securities pursuant to their terms into other Securities;

(f)    upon exercise of subscription, purchase or other similar rights represented by such Securities;

(g)    for the purpose of exchanging interim receipts or temporary securities for definitive securities;

(h)    for the purpose of redeeming in kind shares of the Fund;

(i)    for collecting all income and other payments with respect to Securities;

(j)    in connection with stock lending transactions entered into for the account of the Fund; and

(k)    for other proper corporate purposes.

Except as provided in Clause 8, before making any such transfer, exchange or delivery the Custodian shall receive (and may rely upon) in the case of a matter permitted under the terms of items (a) to (j) of this sub-clause Proper Instructions directing such transfer, exchange or delivery, indicating the Securities in question, stating all relevant information to allow the Custodian to effect in the proper form and manner, as the case may be, such transfer, exchange or delivery and stating that it is for a purpose permitted under the terms of one of such items or, in the case of a transfer, exchange or delivery permitted under the terms of item (k) of this sub-clause a copy of a resolution of the board of directors or a committee of the board of directors duly authorised certified by two directors of the Fund specifying the Securities in question, setting forth the purpose for which such transfer, exchange or delivery is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom transfer, exchange or delivery of such Securities shall be made and stating all relevant information as aforesaid.

7.2    Upon receipt of Proper Instructions, the Custodian shall:

(a)    receive and retain confirmations or other documents evidencing the purchase or writing of an option by the Fund; and

(b)    deposit and maintain, either physically or by book entries, adequate Securities, cash or other assets in separate accounts in connection with such option; and

(c)    pay, release and/or transfer such Securities in accordance with a notice or other written communication evidencing the expiration, termination or exercise of such option furnished by the securities or option exchange on which such option is traded or such other organisation, party, broker or dealer as may be responsible for handling such options transactions.

7.3    Upon receipt of Proper Instructions, the Custodian shall:

(a)    receive and retain confirmations or other documents evidencing the purchase or sale of a futures contract or an option on a futures contract by the Fund; and



(b) deposit and maintain in a segregated account for the benefit of any futures commission merchant, or pay to such futures commission merchant, Securities, cash or other assets designated by the Fund as initial, maintenance or variation "margin" deposits intended to secure the Fund's performance of its obligations under any futures contracts purchased or sold or any options on futures contracts written or purchased by the Fund, in accordance with the provisions of any agreement or agreements among the Fund, the Custodian and such futures commission merchant, designed to comply with the rules of any relevant regulatory body and/or any contract market, or any similar organisation or organisations, regarding such margin deposits; and

(c) pay, release and/or transfer such Securities into or out of margin accounts in accordance with applicable agreements or rules.

7.4    Upon receipt of Proper Instructions, the Custodian shall deliver Securities to lenders or their agents or otherwise establish segregated accounts as collateral for borrowings effected by the Company on behalf of the Fund, but only against receipt of the borrowed amounts.

7.5    Upon receipt of Proper Instructions, the Custodian shall enter into foreign exchange contracts or options to purchase and sell foreign currencies for spot and future delivery on behalf of the Fund. The Custodian shall be responsible for documenting the transaction with and instructing the broker or financial counterparty, for cash transfers and for the maintenance of proper records with respect thereto.

7.6    Upon receipt of Proper Instructions, the Custodian shall establish and maintain on its books a segregated account or accounts for and on behalf of the Fund, into which account or accounts may be transferred cash and/or Securities or other assets of the Fund, including Securities maintained by the Custodian in a book-entry system or foreign depository, said account to be maintained for such purposes as set forth in such Proper Instructions.

## 8.    THE CUSTODIAN'S ACTS WITHOUT INSTRUCTIONS

Unless and until the Custodian receives Proper Instructions to the contrary, the Custodian shall:-

(a) present for payment all Securities which are called, redeemed or retired or otherwise become payable and all coupons and other income items held by it for the account of the Fund which call for payment upon presentation;

(b) hold for the account of the Fund hereunder all stock dividends, rights and similar securities issued with respect to any Securities held by it hereunder; and

(c) exchange interim receipts or temporary securities for definitive securities.

## 9.    REGISTRATION OF SECURITIES

9.1    The Custodian shall register all Securities in respect of which registration shall be necessary in order to perfect the transfer thereof or title thereto as soon as practicable after receipt of the



necessary documents by the Custodian, in the name of the Custodian or its nominee or in such other name as the Custodian deems proper as provided in this clause.  The Custodian shall hold the Securities either

<ol type="a" style="list-style-type: none;">
<li>(a)    by physical possession of the certificates or other instruments representing the Securities in registered or bearer form, including inter alia broker's receipts or confirmation for futures contracts, options or similar investments, or</li>
<li>(b)    in book entry form in a depository or clearing system (including Euroclear, Clearstream and Depository Trust Company) (each a "Securities System").</li>
</ol>

The Custodian shall identify Securities held by it hereunder as being held for the account of the Fund and shall require each agent, sub-custodian or delegate (referred to in Clause 15.2) to identify Securities or other investments held by such agent, sub-custodian or delegate as being held by it, as custodian or fiduciary, for the account of the Fund or the Custodian.  Any expenses of whatever nature incurred by the Custodian in effecting such registration shall be payable by the Fund.

9.2    The Company shall from time to time furnish to the Custodian appropriate instruments to enable the Custodian to hold or deliver in proper form for transfer or to register as provided in sub-clause 9.1 of this Clause any Securities belonging to the Fund.

9.3    The Custodian shall keep or cause to be kept such books, records and statements as may be necessary to give a complete record of all cash and Securities held and transactions carried out by it on behalf of the Fund and shall permit the Fund and its duly authorised agent(s) or delegate(s) to inspect such books, records and statements at any time during normal business hours on giving reasonable notice to the Custodian.

## 10.    VOTING AND OTHER ACTION

10.1    The Custodian shall deliver, or cause to be delivered, to the Company copies of all notices, proxies and proxy-soliciting materials received by it or its nominee or agent appointed hereunder in relation to any of the Securities held by any of them for the account of the Fund.  The Custodian shall not, and shall procure that no nominee of the Custodian shall, vote in respect of any of the Securities held by any of them for the account of the Fund, except in accordance with Proper Instructions.  The Custodian shall promptly deliver, or cause to be delivered, to the Company all other documents and payments received by it or its nominee or agent affecting or relating to the Securities held by it or its nominee or agent.

10.2    The Company shall not and shall procure that the Manager shall not exercise its powers to borrow without prior notification to the Custodian.

10.3    The Company shall not and shall procure that the Manager shall not enter into underwriting or sub-underwriting contracts in relation to the subscription or purchase of Securities without prior notification to the Custodian and all commissions and fees payable under such contracts and all Securities acquired thereby shall form part of the assets of the Fund.

10.4    The Custodian shall take no action with regard to any subscription and other rights issued with respect to Securities held by the Custodian Provided that the Custodian will notify the Company of such subscription or other rights and will undertake to act upon Proper Instructions received within a reasonable time prior to the expiration of such rights.

## 11.    TAXES

11.1    The Company out of the assets of the Fund shall pay or reimburse the Custodian from time to time on demand for any transfer taxes payable upon transfers, exchanges or deliveries of Securities made hereunder.

11.2    The Custodian shall execute such ownership and other certificates and affidavits as may be requested by Proper Instructions from time to time for fiscal, tax and other purposes in connection with Securities held by it under this Agreement and shall make such applications and reports as may be requested by Proper Instructions from time to time to any competent authorities in order to apply for or secure any tax or other privileges and benefits to which the Fund is or may be entitled in connection with such Securities. The Custodian shall be entitled to refuse to execute such ownership and other certificates and affidavits referred to above if, in the opinion of the Custodian, personal liability may be incurred by the Custodian pursuant to such execution.

## 12.    BANKING FACILITIES

12.1    During the continuance of its appointment, the Custodian or any affiliated company of the Custodian shall provide banking facilities for the Fund and, where any cash is placed on deposit with the Custodian or any affiliated company of the Custodian in their capacity as a banker, interest shall be allowed thereon in accordance with normal banking practice and as previously agreed with the Company in respect of the Fund, but subject thereto their shall be no further liability to pay interest on any cash.

12.2    In the event that the Company in respect of the Fund shall make any arrangements for borrowing or overdraft facilities with the Custodian or any affiliated company of the Custodian, such company shall be entitled to retain for its own use and benefit all profits and advantages which may be derived therefrom.



12.3    In the event that the Company in respect of the Fund incurs an unauthorised overdraft with the Custodian or any affiliated company of the Custodian or if, as a result of settlement delays, electronic payment failures or other similar circumstances, a credit facility is made available to the Fund without completion of the customary credit documents, the Custodian shall have a lien over all assets of the Fund held in any account whatsoever by or to the order of the Custodian and the Custodian shall be entitled to set-off any and all claims which it or any affiliate of the Custodian has on the Fund against any counterclaim of the Fund on the Custodian, in accordance with the provisions of Clause 20 hereof.

## 13.    DEALING BY CUSTODIAN

13.1    Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from becoming the owner of shares in the Fund and holding, disposing or otherwise dealing with the same rights which it would have had if the Custodian were not a party to this Agreement; and the Custodian or any affiliated company of the Custodian may buy, hold and deal in any Securities upon its individual account or for the accounts of its own customers notwithstanding that such Securities or similar Securities may be held by or for the account of the Fund.

13.2    Nothing herein contained shall prevent the Custodian or any affiliated company of the Custodian from contracting or entering into any financial, banking or other transactions with the Company or any shareholder of the Company and the Custodian or any affiliated company of the Custodian may be interested in any such contract or transaction and shall not be accountable for any profit arising therefrom.

## 14.    REMUNERATION OF THE CUSTODIAN

14.1    The Custodian shall be paid by way of remuneration for its services pursuant to this Agreement fees at such rates and at such times as may be agreed from time to time between the Company in respect of the Fund and the Custodian.

14.2    The Fund will reimburse the Custodian in addition to the fees referred to in sub-Clause 14.1 of this Clause for all out-of-pocket expenses properly incurred by the Custodian in carrying out its duties hereunder.

## 15.    CONCERNING THE CUSTODIAN

15.1    The Custodian shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for costs and liabilities by the Fund and if the Fund requires the Custodian as custodian to take any action which in the opinion of the Custodian might make the Custodian liable for the payment of money or liable in any other way the Custodian shall be kept indemnified by the Fund in any reasonable form as a pre-requisite to taking such action.

15.2    In performing its duties hereunder the Custodian may at the expense of the Fund appoint such agents, sub-custodians and delegates ("Correspondent") as may be necessary to perform in whole or in part any of the duties and discretions of the Custodian (including in such appointment powers of sub-delegation). Subject to the provisions of this sub-clause, the Custodian will remain responsible to the Fund for any acts or omissions of any Correspondent howsoever appointed as if such acts or omissions were those of the Custodian. The Custodian shall not, however, be liable for any acts or omissions of any Correspondent appointed pursuant to this sub-clause in relation to markets considered by the Custodian to be emerging markets or where in the Custodian's opinion the risks associated with any particular market are unacceptable (hereinafter referred to as "Emerging Markets") and in each such case the Custodian shall have notified the Fund in writing of such market or markets provided that the Custodian has complied with clause 15.3. The current list of Emerging Markets is attached as Annex 1 to this Agreement and the Custodian may from time to time amend such list by written notice to the Fund. Notwithstanding any such appointment, and provided that the Custodian has complied with clause 15.3, the Custodian will not be responsible for any losses suffered by the Fund by reason only of the liquidation, bankruptcy or insolvency of any Correspondent howsoever appointed but shall use reasonable endeavours to recover any Securities or other property held pursuant to this Agreement and to recover any losses or damages suffered by the Fund as a direct consequence of such liquidation, bankruptcy or insolvency. Any broker or other intermediary appointed pursuant to Clause 6.2 and any Securities System utilised pursuant to Clause 9.1 hereof shall not be a Correspondent for the purposes hereof and the Custodian shall not be liable for the acts or omissions or any loss directly or indirectly caused by any such person. The fees and other remuneration of any Correspondent appointed by the Custodian pursuant hereto (including any fees or other remuneration as referred to in Clause 6 hereof) shall be paid by the Fund.

15.3    In the selection, appointment and monitoring of Correspondents pursuant to Clause 15.2, the Custodian will exercise reasonable skill and care but will only be liable to the Fund for losses resulting from the liquidation, bankruptcy or insolvency of such Correspondents if it has been negligent in the selection and monitoring thereof. However, in assessing whether the Custodian has been negligent there shall be taken into account the choice of Correspondents in a market, the lack of experience or expertise of such Correspondents and the insufficiency and unreliability of information (financial or otherwise) regarding such Correspondents.

15.4    The Custodian shall deliver to the Company from time to time at such reasonable intervals as the Company may require a full account of all receipts and payments made and other action taken by the Custodian pursuant to this Agreement since the date of the last preceding such account together with a list as at the date of such account of all Securities and cash or other indebtedness or obligations held by the Custodian or its agent for or on behalf of the Fund or otherwise pursuant to the terms hereof.

- 11 -

15.5   The Fund as sole beneficial owner of all Securities delivered or to be delivered to the Custodian or its nominee hereunder hereby indemnifies and holds harmless the Custodian from and against all proper costs and expenses and liabilities resulting from the fact that such Securities are registered in the name of the Custodian or its nominee.

15.6   The Custodian shall not, in the absence of negligence or wilful default be liable to the Fund or to any shareholder of the Fund for any act or omission in the course or in connection with the services rendered by it hereunder or for any loss or damage which the Fund may sustain or suffer as a result or in the course of the proper discharge by the Custodian of its duties hereunder or pursuant hereto.  In particular, but without limiting the generality of the foregoing the Custodian shall be under no liability in respect of:

(a)   any loss or damage caused by unauthorised use or forging of any authorised signature provided that in any such case the Custodian shall have properly investigated such signature in accordance with approved banking practice and by reference to any certified specimen signatures previously delivered to the Custodian by or on behalf of the Fund pursuant to Clause 3 or shall have made such investigations as may have been agreed from time to time in writing between the Fund and the Custodian; and

(b)   any loss suffered by the Fund or any Shareholder, whether caused by delays or otherwise, resulting from illegible or unclear communications from the Fund or any authorised signatories thereof; and

(c)   any loss which a shareholder of the Fund may suffer by reason of any depletion in the value of the net assets of the Fund which may result from any borrowing or overdraft facilities made hereunder; and

(d)   any loss or damage which the Fund or any shareholder of the Fund may suffer as a result of Securities or other property of the Fund being delivered to or held by a lender pursuant to any borrowing facility arranged by or on behalf of the Fund.

The Company out of the assets of the Fund agrees to indemnify the Custodian from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgements, suits, costs, expenses or disbursements of any kind or nature whatsoever (other than those resulting from the negligence or wilful default on the part of the Custodian or any Correspondent appointed by it and for which it would be liable as provided in sub-clause 15.2) which may be imposed on, incurred by or asserted against the Custodian in performing its obligations or duties hereunder.

15.7   In any case where the Custodian may be held to be liable hereunder, its liability shall be limited to the loss suffered as a direct and reasonably foreseeable consequence of the Custodian's or its directors', officer's or employee's negligence or wilful default.

15.8   If the Custodian shall at any time be in doubt as to any action to be or not to be taken by it, it may, with the prior consent of the Fund or of such person or persons, as shall from time to time be

- 12 -



designated by the board of directors of the Fund, obtain professional advice at the expense of the Fund and may, but shall not be required to, act thereon. The Custodian shall not be liable for any action taken or thing done in good faith in the reliance upon such advice.

15.9    Where Proper Instructions, notices or other documents are sent by way of facsimile transmission the fact that the transmission report produced by the originator of such transmission discloses that the transmission was sent shall not (without confirmation of receipt from the Custodian) be sufficient proof of receipt by the Custodian. The Fund agrees to indemnify the Custodian from and against any and all actions, losses, costs, charges, expenses and demands of any and every kind (other than those resulting from negligence or wilful default on the part of the Custodian) which may at any time hereafter be incurred by the Custodian in consequence of accepting and action upon Proper Instructions, notices or other documents sent by facsimile transmission whether or not such instructions were sent by the Fund or any other person duly authorised to give such instructions.

15.10    The Custodian shall be under no duty to supervise compliance with the restrictions on the investment powers of the Fund or to take any action other than as specified in this Agreement with respect to any Securities or cash of the Fund held by the Custodian hereunder.

15.11    The Custodian need not act upon Proper Instructions which it reasonably believes to be contrary to law, regulation or market practice but it is under no duty to investigate whether any such Proper Instructions comply with any applicable law, regulation or market practice.

15.12    The Custodian shall not be responsible for the loss or damage to any documents or other property of the Fund or for any failure to fulfil its duties hereunder if such loss, damage or failure shall be caused by or directly or indirectly due to war, enemy action, the act of government or other competent authority, riots, civil disturbance, rebellion, storm, tempest, accident, fire, strike, explosion or lock-out or any occurrence or event beyond the control of the Custodian.

16.    REFUSAL TO ACT

The Custodian shall be entitled (subject to notice having been given to the Fund) to refuse to effect any investment, realisation or other transaction required to be carried out by it on behalf of the Fund pursuant to this Agreement if in the opinion of the Custodian, 1) there are reasonable grounds for estimating that liabilities to be incurred in the case of such investment, realisation or other transaction may not be adequately covered by the assets of the Fund held immediately prior to the time that such investment, realisation or other transaction is required to be effected or 2) personal liability may be incurred by the Custodian pursuant to such investment, realisation or other

- 13 -



transaction PROVIDED ALWAYS that the foregoing (save as aforesaid) shall not absolve the Custodian from performing the obligations expressly assumed by it under this Agreement.

### 17.   APPROVAL OF PUBLICATIONS

The Company shall deliver to the Custodian for approval prior to issue thereof a copy of all prospectuses, statements, notices, circulars and advertisements to be issued on behalf of or relating to the Fund to shareholders of the Fund or to the public or the press or other communications media and any such publication not approved by the Custodian in writing shall not be published by or on behalf of the Fund and the Fund hereby undertakes that no such statement, notice, circular or advertisement will be published and that no moneys will be raised nor any shares of the Fund issued unless and until all necessary consents and permissions of whatever authority have been obtained in connection therewith.

### 18.   CONFIDENTIALITY AND REPUTATION

18.1   Neither party hereto shall unless compelled so to do by any statute, person empowered by statute, court of competent jurisdiction or other regulatory authority either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

18.2   Neither party hereto shall do or commit any act or matter or thing which would or might prejudice or bring into disrepute in any manner the business or reputation of either of the parties or any director of such party.

### 19.   TERMINATION

19.1   This Agreement and the appointment of the Custodian hereunder shall continue in force until terminated by either the Company or the Custodian giving to the other not less than ninety days' notice in writing (or such shorter notice as such other party may agree to accept) expiring at any time provided that either the Company or the Custodian may forthwith terminate this Agreement by notice taking immediate or subsequent effect if:-

    (a)   the Custodian or the Company respectively has broken or is in material breach of any of the terms of this Agreement and shall not have remedied such breach within thirty days after service of notice by the non-defaulting party requiring the same to be remedied; or

    (b)   the Custodian, the Company or the Fund respectively shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation on terms previously approved in writing by the other party).

- 14 -



19.2    The Custodian shall, in the event of termination of this Agreement, deliver or cause to be delivered to any succeeding Custodian all Securities then held hereunder and all monies or other assets of the Fund with all certified copies and other documents relating thereto in its possession which are valid and in force at the date of termination, provided, however, that the Custodian shall not be required to make any such delivery or payment until full payment shall have been made by the Fund of all liabilities constituting a charge on or against the properties held by the Custodian or on or against the Custodian, and until full payment shall have been made to the Custodian of all its fees, compensation, costs and expenses due to it under the provisions of this Agreement.

19.3    Termination of this Agreement shall be without prejudice to any claims or rights which either of the parties hereto may have by reason of any breach of the other party's obligations and, without prejudice to the generality of the foregoing, any indemnity provisions and provisions limiting the liabilities of either party shall survive termination of this Agreement.

## 20.    GENERAL LIEN

20.1    With a view to supply collateral to and guarantee all present and/or future payment obligations of the Fund towards the Custodian, the Company in respect of the assets of the Fund hereby pledges to the Custodian, which accepts, any claim (the "Pledged Assets") which the Fund presently has or may have in the future against the Custodian. The Pledged Assets shall include, without limitation, cash deposits in any currencies, stocks or bonds, domestic or foreign, existing or to be issued, nominative or to the bearer, contracts, options, claims and rights whatsoever, existing or to be issued.

20.2    Additional assets or securities deposited on the Pledged Account shall increase the Pledged Assets, which shall also encompass any and all renewal and/or rollover of deposits placed, as well as any amount expressed in another currency as a result of a conversion, arbitrage or any substitution whatsoever of the initial deposit; interest, dividends and generally any and all rights derived from the Pledged Assets also increase the Pledged Assets.

20.3    Should the Company in respect of the Fund fail to repay any debt when due, subject to eight calendar days prior written notice to the Company by registered mail, the Custodian would be entitled to realise part or all of the Pledged Assets, if applicable and as may be considered adequate in compliance with Luxembourg law, and to apply the net proceeds to the settlement of its claims against the Fund, including any and all due and payable principal, interest, penalty interest, commissions, charges, costs, expenses, etc. The foregoing applies even when default by the Fund is caused by events that are not under its control, such as and without limitation, currency restrictions, exchange restrictions, interest rate restrictions, taxes or other events of a political, economic, military, or monetary nature.



## 21.    CONCERNING THE COMPANY AND THE FUND

21.1    The rights, duties, obligations, liabilities, agreements, representations, undertakings, warranties and all other matters in this Agreement relating to the Company shall relate to Herald USA Segregated Portfolio One a segregated portfolio of Herald Fund SPC

21.2    Any authority, power, discretion, consent, action or approval under this Agreement shall relate to Herald USA Segregated Portfolio One a segregated portfolio of Herald Fund SPC.

21.3    It is hereby noted that, save in respect of a segregated portfolio of Herald Fund SPC that is expressly specified, no letter, certificate, acknowledgment, release, waiver, proxy, appointment of agents, instruction, request, transaction, confirmation, ticket, receipt, notice, document, or any other matter, thing or item in relation to Herald Fund SPC, may be executed, signed, given, delivered, made or done.

21.4    The rights, duties, obligations, liabilities, agreements, representations, undertakings, warranties and all other matters herein relating to the Herald Fund SPC hereunder (whether in contract, tort, under statute or otherwise) relate separately to Herald USA Segregated Portfolio One of Herald Fund SPC and shall not be merged, joined, or set-off against any other segregated portfolio.

21.5    Any charge, lien or other security interest created hereunder (i) may attach only to assets comprised in Herald USA Segregated Portfolio One of Herald USA SPC to which the obligation the subject of such charge, lien or other security interest relates; and (ii) shall not attach to assets comprised in any other segregated portfolio.

21.6    In the event of any claim whatsoever or howsoever made by any party against the Herald Fund SPC in connection with this Agreement (whether without prejudice to the foregoing generality, for breach of agreement, an indemnity claim, or a claim for fees and expenses or otherwise) or otherwise the recourse of the party shall be limited solely to the assets Herald USA Segregated Portfolio One of Herald Fund SPC and upon exhaustion of the assets of Herald USA Segregated Portfolio One of Herald Fund SPC the claim of the party shall be fully satisfied by the payment of such amounts as are available to be paid to the party from such assets and thereupon such claim shall be extinguished and the party shall in respect of such claim have no further recourse against any of the other assets of Herald Fund SPC.



- 16 -

## 21. NOTICES

Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by telex or facsimile to the parties at the following addresses or such other address as may be notified by either party from time to time.

TO THE COMPANY:                **HERALD USA SEGREGATED PORTFOLIO ONE**
M & C Corporate Services Limited,
PO Box 309GT, Ugland House,
South Church Street, George Town,
Grand Cayman, Cayman Islands

Facsimile: (345) 949 8080
Tel.: (345) 949 8066


TO THE CUSTODIAN:              **BANK OF BERMUDA (LUXEMBOURG) S.A.**
13 rue Goethe
L-1637 Luxembourg

Attention: General Manager, Fund Services

Telex: 60864 BOBULU
Facsimile: (352) 40.46.74
Tel.: (352) 40.46.46.1

Such notice, instruction or other instrument shall be deemed to have been served in the case of a registered letter at the expiration of five business days after posting, in the case of facsimile and telex, immediately on dispatch. If delivered outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence. Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

## 22. RIGHT TO USE DATA PROCESSING RECORDS

The Custodian is authorised to maintain all accounts, corporate books and other documents relating to the Fund or its affairs on computer records and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof thereof.

## 23. TELEPHONE RECORDING

The Custodian may record all telephone conversations between the Fund and the Custodian or between any Shareholder or other person and the Custodian in relation to the affairs of the Fund

and any such tape recordings may be submitted in evidence in any proceedings relating to this Agreement.

**24.    ASSIGNMENT**

Neither the benefit nor the burden of this Agreement shall be assigned by either party without the written consent of the other party hereto.

**25.    AMENDMENT**

No provision of this Agreement may be amended otherwise than by a written agreement signed by both parties

**26.    COUNTERPART**

This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which when executed and delivered shall constitute an original and all such counterparts together constitute one and the same instrument.

**27.    SEVERANCE**

If any provision herein shall be determined to be void or unenforceable in whole or in part for any reason whatsoever such invalidity or unenforceability shall not affect the remaining provisions or any part thereof contained within this Agreement and such void or unenforceable provisions shall be deemed to be severable from any other provision or part thereof herein contained.



28.    **PROPER LAW & JURISDICTION**

This Agreement shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg and both parties submit to the exclusive jurisdiction of the courts of Luxembourg.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed in two originals as of the day and year first above written each of the parties having received one original.

| | |
|---|---|
| SIGNED BY | ) |
| and | ) |
| for and on behalf of **HERALD FUND** | ) |
| **SPC in respect of HERALD USA** | ) |
| **SEGREGATED PORTFOLIO ONE** | ) |
| in the presence of: | ) |

_____    F. PIGNATTI

_____

| | |
|---|---|
| SIGNED BY | ) |
| and | ) |
| for and on behalf of **BANK OF** | ) |
| **BERMUDA (LUXEMBOURG) S.A.** | ) |
| in the presence of: | ) |

_____

_____

**ANNEX 1**

As of the date of this Agreement, the following represents a list of Emerging Markets (as defined in the sub-clause 15.2 of the Custodian Agreement):-

Bahrain
Bangladesh
Bolivia
Botswana
Colombia
Costa Rica
Cyprus
Ecuador
Egypt
Ghana
Ivory Coast
Jamaica
Jordan
Kazakhstan
Kenya
Kuwait
Lebanon
Namibia
Nigeria
Oman
Pakistan
Palestine
Panama
Peru
Qatar
Russia
Saudi Arabia
Swaziland
Uganda
Ukraine
United Arab Emirates
Uruguay
Venezuela
Vietnam
Zambia
Zimbabwe

- 20 -

C



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.   All purchases, sales or trades shall be executed strictly in accordance with the established trading authorization directive.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation.  This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated,_____

X _please sign here_     _____     _____
                              **(City)**                 **(State)**

Very truly yours, _____
                              **(Client Signature)**

Signature of Authorized Agent: _____

**Affiliated with**
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222

D

HSBC Private Bank ◀✕▶

Geneva, May 22, 2009

**RE: Your investment in one of the following "Madoff" 100% exposed funds**

FAIRFIELD SENTRY LTD / FAIRFIELD SIGMA LTD / HERALD FUND USA / HERMES INTERNATIONAL FUND LTD / KRONOS AGRICULTURAL FUND LP / LUXALPHA SICAV/ OPTIMAL STRATEGIC US EQUITY LTD / OXFORD FUND LTD / PLAZA INVESTMENTS INTL LTD / PLATINUM ALL WEATHER FUND LTD / PRIMEO FUND SELECT / RYE SELECT BROAD MARKET / SANTA BARBARA MARKET NEUTRAL FD (BAHAMAS) / SANTA CLARA FUND / THEMA INTL FUNDS PLC / THEMA FUND LTD THEMA CORAL / MOUNT CAPITAL FUND / MOUNT FAIRWEATHER US / RYTZ INTERNATIONAL LTD SA / RAFALE PARTNERS INC

Dear customer,

We write with respect to your investment in one or several of the above funds (the "Fund") that invested with Bernard L. Madoff Investment Securities LLC ("BLMIS").

We previously transmitted you a customer claim form which you may have used in order to send your claim to the Securities Investor Protection Corporation ("SIPC").

First, we wish to remind you that, according to the BLMIS trustee, the strict deadline for filing claims in the BLMIS liquidation is July 2, 2009.  Claims must be received by the BLMIS trustee by July 2, 2009. Information regarding the claims process may be found at the trustee's website at:

> http://www.madofftrustee.com/index.html.

Second, the BLMIS trustee has recently released new statements regarding the BLMIS liquidation and the claims process, which you should consider. He revealed in particular that Madoff had not purchased any securities for its clients for at least the last 13 years. Accordingly he indicated that the most important information he would consider when evaluating entitlement to reimbursement from SIPC was the extent of cash invested and whether the customer's total cash investment exceeded the customer's withdrawals. Those statements can be found at the trustee website mentioned above, and another statement dated May 6, 2009 from the trustee is enclosed, which was released on the New York Times web site:

> http://dealbook.blogs.nytimes.com/2009/05/06/another-view-unwinding-madoffs-fraud-fairly/?scp=1&sq=irving%20h.%20picard&st=Search

Third, as a reminder, the Bank does not plan to file a claim on your behalf.  The Fund through which you invested has generally indicated if it will (or, in some cases, will not) file a claim on behalf of the Fund.  As indicated previously, you may submit a claim on your own behalf.  Please note that there is no guarantee that the BLMIS trustee will recognize claims of individual customers who did not invest directly with BLMIS.

Further, submitting an individual claim may subject you to the jurisdiction of the United States court where the liquidation proceeding is pending, and make it easier for the trustee overseeing the proceeding to bring claims against you, for example, for recovery of withdrawals you may have made from a fund or funds investing with BLMIS.  Also, submitting a claim will require you to identify yourself and disclose to the trustee facts about your investment.

The Bank cannot advise you whether or not to file an individual claim, and you may wish to consult counsel before deciding how to proceed.


Sincerely,


HSBC PRIVATE BANK (SUISSE) SA

Letter without signature


Enclosures

[New York #2005530 v4]

E



Attn: To the board of directors or its legal representative

5 June 2009

Our Ref.: JCW-GB-ct

Dear Sir,

**Ref: Securities Investor Protection Corporation claim**

We refer to our letter dated February 3, 2009 by which we recommended to your company to seek for legal advice in relation to the submission of a claim with the Securities Investor Protection Corporation ("SIPC") in the context of the Madoff affair.

We would like to kindly remind you that July 2, 2009 is the bar date for submitting such claim. In that respect, we would be grateful if you could inform us on whether your company has made such a claim or has the intention to file it before the deadline.

Yours sincerely

*HSBC Securities Services (Luxembourg) S.A.*

_____
J.C. Wilcockson
Managing Director

_____
G. Birgen
Managing Director

**HSBC Securities Services (Luxembourg) S.A.**
16, Boulevard d'Avranches, L-1160 Luxembourg
Tel: +352 40 46 461  Fax: +352 27025 774

Société Anonyme - R.C. Luxembourg B 28 531

F

**Nicholas Howard**

| | |
|---|---|
| **From:** | Joel Scarr [Joel.Scarr@MAPLESANDCALDER.com] |
| **Sent:** | 10 March 2009 01:33 |
| **To:** | saveriofiorino@lu.hsbc.com; robertoricci@lu.hsbc.com; luciaandrich@lu.hsbc.com |
| **Cc:** | Nicholas Howard; Fabian Picardo; #herald fund spc [605550.000003]; Sandie Corbett; Rupert Bell; Andreas Haug |
| **Subject:** | Herald Fund SPC - Investor update for immediate distribution |

Dear HSBC

Attached is an investor update which I have been instructed to request you to provide to Herald Fund SPC shareholders immediately. Also attached are resolutions of the directors authorising its distribution. I would be grateful if you can please confirm to me when this has occurred.

I have been instructed that Herald Fund SPC understands that HSBC has taken the position that HSBC will not file any claim in relation with Herald Fund SPC's assets in the liquidation of Bernard L. Madoff Investment Securities LLC. I have also been instructed that Herald Fund SPC understands that HSBC is of the view that any such claim should be filed by Herald Fund SPC itself. Herald Fund SPC reserves all of its rights against HSBC.

Kind regards
Joel

**Joel Scarr**
Maples and Calder
Cayman Islands
joel.scarr@maplesandcalder.com
Direct: +1 345 814 5680
Cell:  +1 345 526 5680
Fax:   +1 345 949 8080
www.maplesandcalder.com
www.maplesfinance.com

<<20090306-HUSA-BoD Resolution.pdf>> <<Scansione0006.jpg>> <<20090306-HUSA-shareholder.pdf>>

This e-mail (including any attachments) is confidential and may also be privileged. No confidentiality or privilege is waived or lost by any error in transmission. It is intended solely for the use of the recipient(s) to whom it is addressed. It should not be read, copied, distributed or otherwise used by any other person. If you have received this e-mail in error, please delete it from your system and notify the sender immediately. All communications sent by us to our clients are subject to our Terms of Engagement which are available from your usual Maples and Calder contact. For further information about Maples and Calder (including a list of our partners) please visit "http://www.maplesandcalder.com". For further information about Maples Finance please visit "http://www.maplesfinance.com".

G

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 010 7493 6122

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

| | PRIMEO STMT | PAGE |
|---|---|---|
| | 11/30/08 | 1 A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0   YOUR TAXPAYER IDENTIFICATION NUMBER

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | 87,706,205.42 | |
| 11/04 | | | | CHECK WIRE | CW | 423,000,000.00 | |
| 11/04 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/04/08 | DIV | | 1.94 |
| 11/04 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CW | .58 | |
| 11/04 | 21,909 | | 23379 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 21,909.00 |
| 11/04 | 149,650,000 | | 35630 | U S TREASURY BILL DUE 2/12/2009 2/12/2009 | 99.869 | | 149,453,958.50 |
| 11/04 | 180,350,000 | | 35645 | U S TREASURY BILL DUE 12/18/2008 12/18/2008 | 99.929 | | 180,221,951.50 |
| 11/04 | 93,375,000 | | 35646 | U S TREASURY BILL DUE 01/08/2009 1/08/2009 | 99.931 | | 93,310,571.25 |
| 11/04 | 8,392 | | 35669 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 8,392.00 | |
| 11/06 | 143,046 | | 10974 | APPLE INC | 105.380 | 15,079,908.48 | |
| 11/06 | 254,304 | | 11209 | ABBOTT LABORATORIES | 55.090 | 14,019,779.36 | |
| 11/06 | 174,834 | | 11444 | AMGEN INC | 60.350 | 10,558,224.90 | |
| | | | | CONTINUED ON PAGE 2 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE #2/143 RCVD AT 12/2/2008 7:00:30 PM [Romance Standard Time] * SVR:LJ4/MON/TD/123 * DNIS:210 * CSID:* DURATION (mm-ss):10-51



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ● London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

| | | PRIMED ID AND | PAGE |
|---|---|---|---|
| | | 11/30/08 | 2 |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | AMOUNT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/06 | 127,152 | | 11679 | BOEING CO | 51.120 | 6,505,096.24 | |
| 11/06 | 826,488 | | 11914 | BANK OF AMERICA | 23.840 | 19,736,532.92 | |
| 11/06 | 95,364 | | 12149 | BAXTER INTERNATIONAL INC | 60.600 | 5,782,872.40 | |
| 11/06 | 190,728 | | 12384 | BANK OF NEW YORK MELLON CORP | 32.290 | 6,164,234.12 | |
| 11/06 | 317,880 | | 12619 | BRISTOL MYERS SQUIBB COMPANY | 20.610 | 6,564,221.80 | |
| 11/06 | 111,258 | | 12854 | ANHEUSER BUSCH COS INC | 62.430 | 6,950,286.94 | |
| 11/06 | 890,064 | | 13089 | CITI GROUP INC | 13.530 | 12,078,167.92 | |
| 11/06 | 476,820 | | 13324 | COMCAST CORP | 15.790 | 7,548,059.80 | |
| | | | | CL A | | | |
| 11/06 | 254,304 | | 13559 | CONOCOPHILIPS | 51.120 | 13,010,192.48 | |
| 11/06 | 969,534 | | 13794 | CISCO SYSTEMS INC | 17.520 | 17,025,016.68 | |
| 11/06 | 238,410 | | 14029 | CVS CAREMARK CORP | 30.510 | 7,283,425.10 | |
| 11/06 | 333,774 | | 14264 | CHEVRON CORP | 73.740 | 24,625,844.76 | |
| 11/06 | 317,880 | | 14499 | THE WALT DISNEY CO | 24.760 | 7,883,423.80 | |
| 11/06 | 1,700,658 | | 14734 | GENERAL ELECTRIC CO | 19.600 | 33,400,922.80 | |
| 11/06 | 31,788 | | 14969 | GOOGLE | 356.520 | 11,334,328.76 | |
| 11/06 | 63,576 | | 15204 | GOLDMAN SACHS GROUP INC | 91.870 | 5,843,270.12 | |
| 11/06 | 286,092 | | 15439 | HOME DEPOT INC | 23.300 | 6,677,386.60 | |
| 11/06 | 397,350 | | 15674 | HEWLETY PACKARD CO | 38.310 | 15,238,372.50 | |
| 11/06 | 222,516 | | 15909 | INTERNATIONAL BUSINESS MACHS | 92.800 | 20,658,384.80 | |
| 11/06 | 905,958 | | 16144 | INTEL CORP | 16.070 | 14,594,983.06 | |
| 11/06 | 460,926 | | 16379 | JOHNSON & JOHNSON | 61.310 | 28,277,810.06 | |
| 11/06 | 603,972 | | 16614 | J.P. MORGAN CHASE & CO. | 40.910 | 24,732,652.52 | |
| 11/06 | 254,304 | | 16849 | KRAFT FOOD INC | 29.110 | 7,412,961.44 | |
| 11/06 | 317,880 | | 17084 | COCA COLA CO | 44.490 | 14,155,196.20 | |
| | | | | CONTINUED ON PAGE   3 | | | |

CONTINUED ON PAGE   3

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 64/143 * RCVD AT 12/22/2003 7:00:00 PM [Romance Standard Time] * SVR:LU/IMON/100/123 * DNIS:210 * CSID:1 DURATION (mm-ss):04-51

| | BERNARD L. MADOFF | | 885 Third Avenue | | Affiliated with | |
|---|---|---|---|---|---|---|
| MLM | INVESTMENT SECURITIES LLC | | New York, NY 10022 | | Madoff Securities International Limited | |
| | New York ● London | | (212) 230-2424 | | 12 Berkeley Street | |
| | | | 800 334-1343 | | Mayfair, London W1J 8DT | |
| | | | Fax (212) 838-4061 | | Tel 020 7493 6222 | |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

| | | | | PRIMEO REPORT | | PAGE | |
|---|---|---|---|---|---|---|---|
| | | | | 11/30/08 | | 3 | A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0   YOUR TAX PAYER IDENTIFICATION NUMBER

| DATE | AMOUNT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TAX | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/06 | 190,728 | | 17319 | MCDONALDS CORP | 57.900 | 11,050,780.20 | |
| 11/06 | 190,728 | | 17554 | MEDTRONIC INC | 40.310 | 7,695,874.68 | |
| 11/06 | 111,258 | | 17789 | 3M COMPANY | 63.590 | 7,079,346.22 | |
| 11/06 | 333,774 | | 18024 | ALTRIA GROUP INC | 19.160 | 6,408,459.84 | |
| 11/06 | 349,668 | | 18259 | MERCK & CO | 30.780 | 10,776,767.04 | |
| 11/06 | 1,287,414 | | 18494 | MICROSOFT CORP | 22.310 | 28,773,702.34 | |
| 11/06 | 651,654 | | 18729 | ORACLE CORPORATION | 18.110 | 11,827,519.94 | |
| 11/06 | 143,046 | | 19434 | OCCIDENTAL PETROLEUM CORP | 54.290 | 7,771,688.34 | |
| 11/06 | 254,304 | | 19669 | PEPSICO INC | 57 | 14,505,500.00 | |
| 11/06 | 1,096,686 | | 19904 | PFIZER INC | 17.690 | 19,444,242.34 | |
| 11/06 | 492,714 | | 20139 | PROCTER & GAMBLE CO | 64.570 | 31,834,250.98 | |
| 11/06 | 349,668 | | 20374 | PHILLIP MORRIS INTERNATIONAL | 42.730 | 14,935,299.64 | |
| 11/06 | 270,198 | | 20609 | QUALCOMM INC | 37.810 | 10,226,993.38 | |
| 11/06 | 190,728 | | 20844 | SCHLUMBERGER LTD | 51.760 | 9,879,710.28 | |
| 11/06 | 953,640 | | 21079 | AT&T INC | 26.980 | 25,767,352.20 | |
| 11/06 | 588,078 | | 21314 | TIME WARNER INC | 10.060 | 5,939,587.68 | |
| 11/06 | 158,940 | | 21549 | UNITED PARCEL SVC INC CLASS B | 52.790 | 8,396,799.60 | |
| 11/06 | 286,092 | | 21784 | U S BANCORP | 29.550 | 8,465,461.60 | |
| 11/06 | 158,940 | | 22019 | UNITED TECHNOLOGIES CORP | 54.920 | 8,735,341.80 | |
| 11/06 | 460,926 | | 22254 | VERIZON COMMUNICATIONS | 29.980 | 13,836,998.48 | |
| 11/06 | 540,396 | | 22489 | WELLS FARGO & CO NEW | 33.660 | 18,211,344.36 | |
| 11/06 | 365,562 | | 22724 | WAL-MART STORES INC | 56.560 | 20,690,808.72 | |
| 11/06 | 858,276 | | 22959 | EXXON MOBIL CORP | 73.680 | 63,272,106.68 | |
| | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/06/08 | DIV | | .30 |
| | | | | CONTINUED ON PAGE    4 | | | |

PLEASE RETAIN This STATEMENT FOR INCOME TAX PURPOSES

PAGE 65/143 * RCVD AT 12/2/2008 7:06:00 PM [Romance Standard Time] * SVR:LIAVMAONTW0123 * DNIS:210 * CSID:* DURATION (mm-ss):04-51

| | BERNARD L. MADOFF |
|---|---|

INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING **11/30/08** PAGE **4** A

YOUR ACCOUNT NUMBER **1-FR1D9-3-0** YOUR TAX/DATA IDENTIFICATION NUMBER

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/06 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CW | .09 | |
| 11/06 | 8,311 | | 10739 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 8,311.00 | |
| 11/06 | | 8,392 | 48256 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 8,392.00 |
| 11/06 | | 44,575,000 | 48472 | U S TREASURY BILL DUE 12/11/2008 12/11/2008 | 99.989 | | 44,570,096.75 |
| 11/06 | | 157,000,000 | 48904 | U S TREASURY BILL DUE 01/08/2009 1/08/2009 | 99.960 | | 156,937,200.00 |
| 11/06 | | 250,375,000 | 49114 | U S TREASURY BILL DUE 01/15/2009 1/15/2009 | 99.946 | | 250,239,797.50 |
| 11/06 | | 250,375,000 | 49328 | U S TREASURY BILL DUE 01/22/2009 1/22/2009 | 99.934 | | 250,209,752.50 |
| 11/06 | | 250,375,000 | 49543 | U S TREASURY BILL DUE 01/29/2009 1/29/2009 | 99.928 | | 250,194,730.00 |
| 11/06 | 74,550,000 | | 49985 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.802 | 74,402,391.00 | |
| | | | | CONTINUED ON PAGE 5 | | | |

CONTINUED ON PAGE 5

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 66/141 * RCVD AT 1/27/2009 7:00:00 PM [Romance Standard Time] * SVR:LUI4MONT00/23 * DNIS:210 * CSID: * DURATION (mm-ss):40-51

| | BERNARD L. MADOFF | | 885 Third Avenue | | Affiliated with |
| | INVESTMENT SECURITIES LLC | | New York, NY 10022 | | Madoff Securities International Limited |
| | New York □ London | | (212) 230-2424 | | 12 Berkeley Street |
| | | | 800 334-1343 | | Mayfair, London W1J 8DT |
| | | | Fax (212) 838-4061 | | Tel 020 7493 6222 |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING **11/30/08**  PAGE **5** A

YOUR ACCOUNT NUMBER **1-FR109-3-0**  YOUR TAXPAYER IDENTIFICATION NUMBER

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|------|------------------------|-------------------------|-----|-------------|-----------------|-------------------------------|--------------------------------|
| 11/06 | 74,550,000 | | 50214 | U S TREASURY BILL DUE 4/02/2009 4/02/2009 | 99.751 | 74,364,370.50 | |
| 11/06 | 74,550,000 | | 50443 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.726 | 74,345,733.00 | |
| 11/07 | 99,027 | | 23495 | APPLE INC | 108.800 | 10,778,098.60 | |
| 11/07 | 176,048 | | 23730 | ABBOTT LABORATORIES | 56.590 | 9,969,597.32 | |
| 11/07 | 121,033 | | 23965 | AMGEN INC | 62.070 | 7,517,359.31 | |
| 11/07 | 88,024 | | 24200 | BOEING CO | 53.640 | 4,725,127.36 | |
| 11/07 | 561,453 | | 24435 | BANK OF AMERICA | 23.720 | 13,332,995.16 | |
| 11/07 | 66,018 | | 24670 | BAXTER INTERNATIONAL INC | 61.740 | 4,078,591.32 | |
| 11/07 | 121,033 | | 24905 | BANK OF NEW YORK MELLON CORP | 34.210 | 4,145,379.93 | |
| 11/07 | 220,060 | | 25140 | BRISTOL MYERS SQUIBB COMPANY | 21.020 | 4,634,463.20 | |
| 11/07 | 77,021 | | 25375 | ANHEUSER BUSCH COS INC | 64.190 | 4,947,057.99 | |
| 11/07 | 594,162 | | 25610 | CITI GROUP INC | 14.410 | 8,585,640.42 | |
| 11/07 | 319,087 | | 25845 | COMCAST CORP CL A | 17.390 | 5,561,685.93 | |
| 11/07 | 165,045 | | 26080 | CONOCOPHILLIPS | 53.060 | 8,763,888.70 | |
| 11/07 | 649,177 | | 26315 | CISCO SYSTEMS INC | 17.580 | 11,438,498.66 | |
| 11/07 | 154,042 | | 26550 | CVS CAREMARK CORP | 31.720 | 4,892,373.24 | |
| 11/07 | 231,063 | | 26785 | CHEVRON CORP | 75.450 | 17,442,945.35 | |
| 11/07 | 209,057 | | 27020 | THE WALT DISNEY CO | 25.620 | 5,364,402.34 | |
| 11/07 | 1,155,315 | | 27255 | GENERAL ELECTRIC CO | 19.810 | 22,935,002.15 | |
| 11/07 | 22,006 | | 27490 | GOOGLE | 349.160 | 7,684,494.96 | |
| | | | | CONTINUED ON PAGE 6 | | | |

CONTINUED ON PAGE 6

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE R7/43 * RCV'D AT 12/2/2008 7:00:00 PM [Romance Standard Time]* SVR:LUA\IMNT\W0123 * DNIS:210 * CSID: * DURATION (mm-ss):40-51

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **BERNARD L. MADOFF**<br>INVESTMENT SECURITIES LLC<br>New York • London | | 885 Third Avenue<br>New York, NY 10022<br>(212) 230-2424<br>800 334-1343<br>Fax (212) 838-4061 | | | Affiliated with<br>Madoff Securities International Limited<br>12 Berkeley Street<br>Mayfair, London W1J 8DT<br>Tel 020 7493 6122 | |

```
HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG
```

PERIOD ENDING **11/30/08**    PAGE **6**  A

YOUR ACCOUNT NUMBER **1-FR109-3-0**    YOUR TAXPAYER IDENTIFICATION NUMBER

| DATE | BOUGHT<br>RECEIVED OR LONG | SOLD<br>DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED<br>TO YOUR ACCOUNT | AMOUNT CREDITED<br>TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/07 | 44,012 | | 27725 | GOLDMAN SACHS GROUP INC | 89.070 | 3,921,908.84 | |
| 11/07 | 187,051 | | 27960 | HOME DEPOT INC | 22.480 | 4,212,388.48 | |
| 11/07 | 275,075 | | 28195 | HEWLETT PACKARD CO | 38.820 | 10,689,414.50 | |
| 11/07 | 154,042 | | 28430 | INTERNATIONAL BUSINESS MACHS | 92.430 | 14,244,263.06 | |
| 11/07 | 616,168 | | 28665 | INTEL CORP | 16 | 9,883,334.00 | |
| 11/07 | 308,084 | | 28900 | JOHNSON & JOHNSON | 61.820 | 19,058,075.88 | |
| 11/07 | 418,114 | | 29135 | J.P. MORGAN CHASE & CO | 40.960 | 17,142,673.44 | |
| 11/07 | 165,045 | | 29370 | KRAFT FOOD INC | 29.710 | 4,910,087.95 | |
| 11/07 | 220,060 | | 29605 | COCA COLA CO | 46.580 | 10,259,196.80 | |
| 11/07 | 121,033 | | 29840 | MCDONALDS CORP | 57.510 | 6,965,448.83 | |
| 11/07 | 121,033 | | 30075 | MEDTRONIC INC | 41.140 | 4,984,138.62 | |
| 11/07 | 77,021 | | 30310 | 3M COMPANY | 64.880 | 5,000,202.48 | |
| 11/07 | 231,063 | | 30545 | ALTRIA GROUP INC | 19.370 | 4,484,932.31 | |
| 11/07 | 242,066 | | 30780 | MERCK & CO | 30.480 | 7,387,853.68 | |
| 11/07 | 880,240 | | 31015 | MICROSOFT CORP | 22.940 | 20,227,914.60 | |
| 11/07 | 440,120 | | 31250 | ORACLE CORPORATION | 18.470 | 8,146,620.40 | |
| 11/07 | 88,024 | | 31955 | OCCIDENTAL PETROLEUM CORP | 54.380 | 4,790,265.12 | |
| 11/07 | 176,048 | | 32150 | PEPSICO INC | 58.630 | 10,328,735.24 | |
| 11/07 | 748,204 | | 32425 | PFIZER INC | 18 | 13,497,600.00 | |
| 11/07 | 341,093 | | 32660 | PROCTER & GAMBLE CO | 65.180 | 22,246,084.74 | |
| 11/07 | 231,063 | | 32895 | PHILLIP MORRIS INTERNATIONAL | 43.640 | 10,092,831.32 | |
| 11/07 | 187,051 | | 33130 | QUALCOMM INC | 37.690 | 7,057,434.19 | |
| 11/07 | 132,036 | | 33365 | SCHLUMBERGER LTD | 51.770 | 6,840,784.72 | |
| 11/07 | 638,174 | | 33600 | AT&T INC | 28.910 | 18,475,136.34 | |
| 11/07 | 396,108 | | 33835 | TIME WARNER INC | 10.110 | 4,020,495.88 | |
| | | | | CONTINUED ON PAGE    7 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York ◦ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING: 11/30/08    PAGE: 7    A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/07 | 110,030 | | 34070 | UNITED PARCEL SVC INC CLASS B | 53.680 | 5,910,811.40 | |
| 11/07 | 198,054 | | 34305 | U S BANCORP | 30.790 | 6,106,004.66 | |
| 11/07 | 110,030 | | 34540 | UNITED TECHNOLOGIES CORP | 56 | 6,166,081.00 | |
| 11/07 | 308,084 | | 34775 | VERIZON COMMUNICATIONS | 31.810 | 9,812,475.04 | |
| 11/07 | 374,102 | | 35010 | WELLS FARGO & CO NEW | 34.080 | 12,764,360.16 | |
| 11/07 | 253,069 | | 35245 | WAL-MART STORES INC | 56.730 | 14,366,726.37 | |
| 11/07 | 583,159 | | 35480 | EXXON MOBIL CORP | 75.280 | 43,923,535.52 | |
| 11/07 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/07/08 | DIV | | .15 |
| 11/07 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CV | .05 | |
| 11/07 | | 8,311 | 10982 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 8,311.00 |
| 11/07 | | 149,250,000 | 11252 | U S TREASURY BILL DUE 02/05/09 2/05/2009 | 99.923 | | 149,135,077.50 |
| 11/07 | | 155,975,000 | 11464 | U S TREASURY BILL DUE 02/19/2009 2/19/2009 | 99.887 | | 155,798,748.25 |
| 11/07 | | 155,975,000 | 11680 | U S TREASURY BILL DUE 02/26/2009 2/26/2009 | 99.889 | | 155,801,867.75 |
| | | | | CONTINUED ON PAGE 8 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 66/143 * RCVD AT 12/22/2008 7:00:00 PM [Romance Standard Time] * SVR:LUMRMONTW10/21 * DNIS:210 * CSID: * DURATION (mm:ss):40-51

PAGE 69/143 * RCVD AT 12/2/2008 7:00:00 PM [Romance Standard Time] * SVR:LUARMONTO/123 * DNIS:210 * CSID:* DURATION (mm-ss):49-51

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: **11/30/08**    PAGE: **8**    A

YOUR ACCOUNT NUMBER: **1-FR109-3-0**    YOUR TAX PAYER IDENTIFICATION NUMBER:

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/07 | | 149,250,000 | 11893 | U S TREASURY BILL DUE 03/05/09 3/05/2009 | 99.866 | | 149,050,005.00 |
| 11/07 | 57,200,000 | | 12227 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.720 | 57,039,840.00 | |
| 11/07 | 57,200,000 | | 12447 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.671 | 57,011,812.00 | |
| 11/07 | 29,394 | | 12672 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 29,394.00 | |
| 11/10 | 121,284 | | 35955 | APPLE INC | 108.720 | 13,190,847.48 | |
| 11/10 | 215,616 | | 36190 | ABBOTT LABORATORIES | 55.910 | 12,063,714.56 | |
| 11/10 | 148,236 | | 36425 | AMGEN INC | 59.620 | 8,843,759.32 | |
| 11/10 | 107,808 | | 36660 | BOEING CO | 52.190 | 5,630,811.52 | |
| 11/10 | 700,752 | | 36895 | BANK OF AMERICA | 24.050 | 16,881,115.60 | |
| 11/10 | 94,332 | | 37130 | BAXTER INTERNATIONAL INC | 60.770 | 5,736,328.64 | |
| 11/10 | 161,712 | | 37365 | BANK OF NEW YORK MELLON CORP | 33.480 | 5,420,585.76 | |
| 11/10 | 282,996 | | 37600 | BRISTOL MYERS SQUIBB COMPANY | 21.310 | 6,041,963.76 | |
| 11/10 | 94,332 | | 37835 | ANHEUSER BUSCH COS INC | 64.090 | 6,049,510.88 | |
| 11/10 | 768,132 | | 38070 | CITI GROUP INC | 14.270 | 10,991,968.64 | |
| 11/10 | 404,280 | | 38305 | CONCAST CORP CL A | 17.410 | 7,054,685.80 | |
| 11/10 | 215,616 | | 38540 | CONOCOPHILLIPS | 54.130 | 11,679,918.08 | |
| 11/10 | 822,036 | | 38775 | CISCO SYSTEMS INC | 18.080 | 14,895,291.88 | |

CONTINUED ON PAGE   9

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 70/143 * RCVD AT 12/22/2008 7:00:00 PM [Romance Standard Time] * SVR:LUMMONT09/1/23 * DNIS:210 * CSID:210 * DURATION (mm:ss):40-51

| | BERNARD L. MADOFF | | 885 Third Avenue | | Affiliated with |
| | INVESTMENT SECURITIES LLC | | New York, NY 10022 | | Madoff Securities International Limited |
| | New York • London | | (212) 230-2424 | | 12 Berkeley Street |
| | | | 800 334-1343 | | Mayfair, London W1J 8DT |
| | | | Fax (212) 838-4061 | | Tel 020 7493 6222 |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: 11/30/08   PAGE: 9  A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | PSN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | 202,140 | | 39010 | CVS CAREMARK CORP | 31.300 | 6,335,067.00 | |
| 11/10 | 296,472 | | 39245 | CHEVRON CORP | 76.410 | 22,665,283.52 | |
| 11/10 | 256,044 | | 39480 | THE WALT DISNEY CO | 25.660 | 6,580,330.04 | |
| 11/10 | 1,468,884 | | 39715 | GENERAL ELECTRIC CO | 20.530 | 30,214,943.52 | |
| 11/10 | 26,952 | | 39950 | GOOGLE | 363.580 | 9,800,286.16 | |
| 11/10 | 67,580 | | 40185 | GOLDMAN SACHS GROUP INC | 92.680 | 6,247,473.40 | |
| 11/10 | 242,568 | | 40420 | HOME DEPOT INC | 23.030 | 5,596,043.04 | |
| 11/10 | 350,376 | | 40655 | HEWLETT PACKARD CO | 37.290 | 13,079,536.04 | |
| 11/10 | 188,664 | | 40890 | INTERNATIONAL BUSINESS MACHS | 92.660 | 17,489,152.24 | |
| 11/10 | 795,084 | | 41125 | INTEL CORP | 15.880 | 12,657,736.92 | |
| 11/10 | 390,804 | | 41360 | JOHNSON & JOHNSON | 61.320 | 23,979,733.28 | |
| 11/10 | 512,088 | | 41595 | J.P. MORGAN CHASE & CO | 41.730 | 21,389,915.24 | |
| 11/10 | 215,616 | | 41830 | KRAFT FOOD INC | 30.100 | 6,498,665.60 | |
| 11/10 | 282,996 | | 42065 | COCA COLA CO | 45.500 | 12,887,637.00 | |
| 11/10 | 161,712 | | 42300 | MCDONALDS CORP | 57.230 | 9,261,245.76 | |
| 11/10 | 161,712 | | 42535 | MEDTRONIC INC | 40.300 | 6,523,461.60 | |
| 11/10 | 94,332 | | 42770 | 3M COMPANY | 64.690 | 6,106,110.08 | |
| 11/10 | 282,996 | | 43005 | ALTRIA GROUP INC | 18.890 | 5,357,113.44 | |
| 11/10 | 296,472 | | 43240 | MERCK & CO | 30.510 | 9,057,218.72 | |
| 11/10 | 1,091,556 | | 43475 | MICROSOFT CORP | 23.200 | 25,367,761.20 | |
| 11/10 | 552,516 | | 43710 | ORACLE CORPORATION | 18.600 | 10,298,897.60 | |
| 11/10 | 121,284 | | 44415 | OCCIDENTAL PETROLEUM CORP | 56.010 | 6,797,967.84 | |
| 11/10 | 215,616 | | 44650 | PEPSICO INC | 57.550 | 12,417,324.80 | |
| 11/10 | 956,796 | | 44885 | PFIZER INC | 17.960 | 17,222,327.16 | |
| 11/10 | 417,756 | | 45120 | PROCTER & GAMBLE CO | 65.230 | 27,266,933.88 | |
| | | | | CONTINUED ON PAGE  10 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ● London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P.  413
L-2014  LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 10 |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN. | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | 282,996 | | 45355 | PHILLIP MORRIS INTERNATIONAL | 44.030 | 12,471,632.88 | |
| 11/10 | 229,092 | | 45590 | QUALCOMM INC | 37.310 | 8,556,585.52 | |
| 11/10 | 175,188 | | 45825 | SCHLUMBERGER LTD | 50.500 | 8,854,001.00 | |
| 11/10 | 835,512 | | 46060 | AT&T INC | 28.580 | 23,912,352.96 | |
| 11/10 | 485,136 | | 46295 | TIME WARNER INC | 11.010 | 5,360,752.36 | |
| 11/10 | 134,760 | | 46530 | UNITED PARCEL SVC INC CLASS B | 54.420 | 7,339,029.20 | |
| 11/10 | 242,568 | | 46765 | U S BANCORP | 31.510 | 7,653,019.68 | |
| 11/10 | 134,760 | | 47000 | UNITED TECHNOLOGIES CORP | 56.450 | 7,609,896.80 | |
| 11/10 | 404,280 | | 47235 | VERIZON COMMUNICATIONS | 32 | 12,953,131.00 | |
| 11/10 | 458,184 | | 47470 | WELLS FARGO & CO NEW | 34.600 | 15,871,493.40 | |
| 11/10 | 309,948 | | 47705 | WAL-MART STORES INC | 55.710 | 17,279,600.08 | |
| 11/10 | 727,704 | | 47940 | EXXON MOBIL CORP | 75.800 | 55,189,071.20 | |
| 11/10 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/10/08 | DIV | | 1.59 |
| 11/10 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CW | | .48 |
| 11/10 | | 29,394 | 12908 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 29,394.00 |
| 11/10 | | 149,350,000 | 13109 | U S TREASURY BILL DUE 3/12/2009          3/12/2009 | 99.875 | | 149,163,312.50 |
| 11/10 | | 159,125,000 | 13287 | U S TREASURY BILL DUE 03/19/2009          3/19/2009 | 99.867 | | 158,913,363.75 |
| | | | | CONTINUED ON PAGE  11 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 72/143 * RCVD AT 12/2/2008 7:00:00 PM [Romance Standard Time] * SVR:LUA/MKANT00123 * DNIS:210 * CSID:210 * DURATION (mm-ss):40-61

| | BERNARD L. MADOFF | | 885 Third Avenue | | | Affiliated with |
|---|---|---|---|---|---|---|
| MADF | INVESTMENT SECURITIES LLC | | New York, NY 10022 | | | Madoff Securities International Limited |
| | New York ■ London | | (212) 230-2424 | | | 12 Berkeley Street |
| | | | 800 334-1343 | | | Mayfair, London W1J 8DT |
| | | | Fax (212) 838-4061 | | | Tel 020 7493 6222 |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
4D AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: 11/30/08   PAGE: 11   A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT, RECEIVED OR LONG | SOLD, DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/10 | | 74,550,000 | 13498 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.834 | | 74,426,247.00 |
| 11/10 | | 74,550,000 | 13700 | U S TREASURY BILL DUE 4/02/2009 4/02/2009 | 99.770 | | 74,378,535.00 |
| 11/10 | | 131,750,000 | 13919 | U S TREASURY BILL DUE 04/09/2009 4/09/2009 | 99.742 | | 131,418,085.00 |
| 11/10 | | 57,200,000 | 14147 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | | 57,020,392.00 |
| 11/10 | 750,000 | | 14370 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.686 | 747,645.00 | |
| 11/10 | 8,061 | | 14597 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 8,061.00 | |
| 11/18 | | 282,611 | 49343 | ANHEUSER BUSCH COS INC | 70 | | 19,782,770.00 |
| 11/18 | 19,800,000 | | 49578 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.830 | 19,766,340.00 | |
| 11/18 | 16,430 | | 49816 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 16,430.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 1.56 |
| | | | | CONTINUED ON PAGE  12 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 73/143 * RCVD AT 12/2/2008 7:00:00 PM [Romance Standard Time] * SVR:LU40MOHT00/23 * DNIS:209 * CSID:* DURATION (mm-ss):40-51

| | BERNARD L. MADOFF | | 885 Third Avenue | | Affiliated with |
| | INVESTMENT SECURITIES LLC | | New York, NY 10022 | | Madoff Securities International Limited |
| MDF | New York ● London | | (212) 230-2424 | | 12 Berkeley Street |
| | | | 900 334-1343 | | Mayfair, London W1J 8DT |
| | | | Fax (212) 838-4061 | | Tel 010 7493 6222 |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

PERIOD ENDING: **11/30/08**   PAGE **12**   A

YOUR ACCOUNT NUMBER: **1-FR109-3-0**   YOUR TAXPAYER IDENTIFICATION NUMBER

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FOLXX | CV | .47 | |
| 11/19 | | 24,491 | 51510 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 24,491.00 |
| 11/19 | 179,125,000 | | 56115 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.926 | 178,992,447.50 | |
| 11/19 | 18,862 | | 60549 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 18,862.00 | |
| 11/20 | | 179,125,000 | 63792 | U S TREASURY BILL DUE 03/26/2009 3/26/2009 | 99.962 | | 179,056,932.50 |
| 11/20 | 179,150,000 | | 64030 | U S TREASURY BILL DUE 4/16/2009 4/16/2009 | 99.947 | 179,055,050.50 | |
| 11/20 | 1,882 | | 64269 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 1,882.00 | |
| 11/25 | 47,745 | | 64510 | APPLE INC | 85.070 | 4,063,576.15 | |
| 11/25 | 84,880 | | 64748 | ABBOTT LABORATORIES | 54.140 | 4,598,798.20 | |
| 11/25 | 58,355 | | 64986 | AMGEN INC | 53.630 | 3,131,912.65 | |
| 11/25 | 270,555 | | 65224 | BANK OF AMERICA | 12.980 | 3,522,625.90 | |
| 11/25 | 31,830 | | 65462 | BAXTER INTERNATIONAL INC | 52.570 | 1,674,576.10 | |
| 11/25 | 63,660 | | 65700 | BANK OF NEW YORK MELLON CORP | 24.690 | 1,574,511.40 | |
| 11/25 | 106,100 | | 65938 | BRISTOL MYERS SQUIBB COMPANY | 20.140 | 2,141,098.00 | |
| | | | | CONTINUED ON PAGE  13 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6221

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014 LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 13 |

YOUR ACCOUNT NUMBER  1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | 307,690 | | 66176 | CITI GROUP INC | 6.100 | 1,889,216.00 | |
| 11/25 | 26,525 | | 66414 | COLGATE PALMOLIVE CO | 62.660 | 1,663,117.50 | |
| 11/25 | 153,845 | | 66652 | COMCAST CORP CL A | 13.970 | 2,155,367.65 | |
| 11/25 | 84,880 | | 66890 | CONOCOPHILIPS | 45.100 | 3,831,483.00 | |
| 11/25 | 318,300 | | 67128 | CISCO SYSTEMS INC | 14.970 | 4,777,683.00 | |
| 11/25 | 79,575 | | 67366 | CVS CAREMARK CORP | 27.040 | 2,154,891.00 | |
| 11/25 | 111,405 | | 67604 | CHEVRON CORP | 68.710 | 7,659,093.55 | |
| 11/25 | 100,795 | | 67842 | THE WALT DISNEY CO | 19.760 | 1,995,740.20 | |
| 11/25 | 37,135 | | 68080 | EXELON CORP | 48.740 | 1,811,444.90 | |
| 11/25 | 583,550 | | 68318 | GENERAL ELECTRIC CO | 14.010 | 8,198,877.50 | |
| 11/25 | 10,610 | | 68556 | GOOGLE | 275 | 2,918,174.00 | |
| 11/25 | 90,185 | | 68794 | HOME DEPOT INC | 19.530 | 1,764,920.05 | |
| 11/25 | 132,625 | | 69032 | HEWLETT PACKARD CO | 32.990 | 4,380,603.75 | |
| 11/25 | 74,270 | | 69270 | INTERNATIONAL BUSINESS MACHS | 75.080 | 5,579,161.60 | |
| 11/25 | 307,690 | | 69508 | INTEL CORP | 12.270 | 3,787,663.30 | |
| 11/25 | 153,845 | | 69746 | JOHNSON & JOHNSON | 57.650 | 8,875,317.25 | |
| 11/25 | 201,590 | | 69984 | J.P. MORGAN CHASE & CO | 27.760 | 5,604,201.40 | |
| 11/25 | 79,575 | | 70222 | KRAFT FOOD INC | 25.900 | 2,064,175.50 | |
| 11/25 | 106,100 | | 70460 | COCA-COLA CO | 42.040 | 4,464,688.00 | |
| 11/25 | 58,355 | | 70698 | MCDONALDS CORP | 55 | 3,211,859.00 | |
| 11/25 | 63,660 | | 70936 | MEDTRONIC INC | 30.800 | 1,963,274.00 | |
| 11/25 | 37,135 | | 71174 | 3M COMPANY | 58.280 | 2,165,712.80 | |
| 11/25 | 111,405 | | 71412 | ALTRIA GROUP INC | 16.250 | 1,814,787.25 | |
| 11/25 | 116,710 | | 71650 | MERCK & CO | 25 | 2,922,418.00 | |
| | | | | CONTINUED ON PAGE 14 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 74/143* RCVD AT 12/2/2008 7:08:00 PM [Romance Standard Time]* SVR:LU/6MONT0/0123* DNIS:210* CSID:* DURATION (mm-ss):04-51

PAGE 116/143 * RCVD AT 12/22/2008 7:20:00 PM [Romance Standard Time] * SVC:LUMMONT/0/123 * DNIS:210 * CSID:* DURATION (mm-ss):40-51

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 14  A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | 424,400 | | 71588 | MICROSOFT CORP | 18.100 | 7,698,616.00 | |
| 11/25 | 212,200 | | 72602 | ORACLE CORPORATION | 16.050 | 3,414,298.00 | |
| 11/25 | 47,745 | | 72840 | OCCIDENTAL PETROLEUM CORP | 44.570 | 2,129,903.65 | |
| 11/25 | 84,880 | | 73078 | PEPSICO INC | 51.800 | 4,400,179.00 | |
| 11/25 | 366,045 | | 73316 | PFIZER INC | 15.320 | 5,622,450.40 | |
| 11/25 | 159,150 | | 73554 | PROCTER & GAMBLE CO | 61.940 | 9,864,117.00 | |
| 11/25 | 111,405 | | 73792 | PHILLIP MORRIS INTERNATIONAL | 36.380 | 4,057,369.90 | |
| 11/25 | 90,185 | | 74030 | QUALCOMM INC | 29.850 | 2,695,629.25 | |
| 11/25 | 63,660 | | 74268 | SCHLUMBERGER LTD | 46.270 | 2,948,094.20 | |
| 11/25 | 318,300 | | 74506 | AT&T INC | 25 | 7,970,232.00 | |
| 11/25 | 196,285 | | 74744 | TIME WARNER INC | 8.010 | 1,580,093.85 | |
| 11/25 | 53,050 | | 74982 | UNITED PARCEL SVC INC CLASS B | 50.760 | 2,694,940.00 | |
| 11/25 | 95,490 | | 75220 | U S BANCORP | 23.400 | 2,238,285.00 | |
| 11/25 | 53,050 | | 75458 | UNITED TECHNOLOGIES CORP | 44.890 | 2,383,534.50 | |
| 11/25 | 153,845 | | 75696 | VERIZON COMMUNICATIONS | 26.570 | 4,093,814.65 | |
| 11/25 | 206,895 | | 75934 | WELLS FARGO & CO NEW | 23.820 | 4,936,513.90 | |
| 11/25 | 122,015 | | 76172 | WAL-MART STORES INC | 51.450 | 6,282,551.75 | |
| 11/25 | 74,270 | | 76410 | WYETH | 33 | 2,453,880.00 | |
| 11/25 | 286,470 | | 76648 | EXXON MOBIL CORP | 72 | 20,637,298.00 | |
| 11/25 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/25/08. | DIV | | 2.05 |
| 11/25 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET W/H TAX DIV FDLXX | CU | .62 | |
| | | | | CONTINUED ON PAGE. 15 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 117/143 * RCVD AT 12/22/2008 7:06:00 PM [Romance Standard Time] * SVR:CLUHA0MCINT00123 * DNIS:210 * CSID: * DURATION (mm-ss):40-51

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ● London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel. 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

PERIOD ENDING: 11/30/08
PAGE: 15  A

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | | 20,744 | 77221 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 20,744.00 |
| 11/25 | | 199,700,000 | 77479 | U S TREASURY BILL DUE 4/16/2009 | 99.878 | | 199,456,366.00 |
| | | | | 4/16/2009 | | | |
| 11/26 | | 1,589 | 78020 | COLGATE PALMOLIVE CO | 62.730 | | 99,614.97 |
| 11/26 | 45 | | 78125 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 45.00 | |
| | | | | | | | |
| | | | | NEW BALANCE | | 276,273,307.54 | |
| | | | | | | | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 2,745,626 | | | AT&T INC | 28.560 | | |
| | 730,848 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 959,238 | | | ALTRIA GROUP INC | 16.080 | | |
| | 502,458 | | | AMGEN INC | 55.540 | | |
| | 411,102 | | | APPLE INC | 92.670 | | |
| | -2,358,948 | | | BANK OF AMERICA | 16.250 | | |
| | 537,133 | | | BANK OF NEW YORK MELLON CORP | 30.210 | | |
| | 287,544 | | | BAXTER INTERNATIONAL INC | 52.900 | | |
| | 322,984 | | | BOEING CO | 42.630 | | |
| | 927,036 | | | BRISTOL MYERS SQUIBB COMPANY | 20.700 | | |
| | 674,167 | | | CVS CAREMARK CORP | 28.930 | | |
| | 972,714 | | | CHEVRON CORP | 79.010 | | |
| | 2,759,047 | | | CISCO SYSTEMS INC | 16.540 | | |
| | | | | | | | |
| | | | | CONTINUED ON PAGE   16 | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 110/143 * RCVD AT 12/2/2008 7:00:00 PM [Romance Standard Time] * SVR:LU/4MONTO01/23 * DNIS:210 * CSID:* DURATION (mm-ss):49-51

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York • London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

**PERIOD ENDING** 11/30/08   **PAGE** 16   A

**YOUR ACCOUNT NUMBER** 1-FR109-3-0   **YOUR TAXPAYER IDENTIFICATION NUMBER**

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 2,560,048 | | | CITI GROUP INC | 8.290 | | |
| | 927,036 | | | COCA COLA CO | 46.870 | | |
| | 24,936 | | | COLGATE PALMOLIVE CO | 65.070 | | |
| | 1,354,032 | | | COMCAST CORP | 17.340 | | |
| | | | | CL A | | | |
| | 719,845 | | | CONOCOPHILIPS | 52.520 | | |
| | 883,776 | | | THE WALT DISNEY CO | 22.520 | | |
| | 37,135 | | | EXELON CORP | 56.210 | | |
| | 2,455,609 | | | EXXON MOBIL CORP | 80.150 | | |
| | 4,908,407 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | 174,968 | | | GOLDMAN SACHS GROUP INC | 78.990 | | |
| | 91,356 | | | GOOGLE | 292.960 | | |
| | 1,155,426 | | | HEWLETT PACKARD CO | 35.280 | | |
| | 805,896 | | | HOME DEPOT INC | 23.110 | | |
| | 2,624,900 | | | INTEL CORP | 13.800 | | |
| | 639,492 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| | 1,735,764 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| | 1,313,659 | | | JOHNSON & JOHNSON | 58.580 | | |
| | 714,540 | | | KRAFT FOOD INC | 27.210 | | |
| | 531,828 | | | MCDONALDS CORP | 58.750 | | |
| | 537,133 | | | MEDTRONIC INC | 30.520 | | |
| | 1,004,916 | | | MERCK & CO | 26.720 | | |
| | 3,683,610 | | | MICROSOFT CORP | 20.220 | | |
| | 400,099 | | | OCCIDENTAL PETROLEUM CORP | 54.140 | | |
| | 1,856,490 | | | ORACLE CORPORATION | 16.090 | | |

CONTINUED ON PAGE  17

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014 LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 17 | A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | 730,848 | | | PEPSICO INC | 56.700 | | |
| | 3,167,731 | | | PFIZER INC | 16.430 | | |
| | 975,132 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| | 1,410,713 | | | PROCTER & GAMBLE CO | 64.350 | | |
| | 776,526 | | | QUALCOMM INC | 33.570 | | |
| | 561,612 | | | SCHLUMBERGER LTD | 50.740 | | |
| | 45 | | | FIDELITY SPARTAN | | | |
| | | | | U S TREASURY MONEY MARKET | 1 | | |
| | 319,746 | | | 3K COMPANY | 66.930 | | |
| | 1,665,607 | | | TIME WARNER INC | 9.050 | | |
| | 822,204 | | | U S BANCORP | 26.980 | | |
| | 456,780 | | | UNITED PARCEL SVC INC CLASS B | 57.600 | | |
| | 456,780 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |
| | 1,327,135 | | | VERIZON COMMUNICATIONS | 32.650 | | |
| | 1,050,594 | | | WAL-MART STORES INC | 55.880 | | |
| | 1,579,577 | | | WELLS FARGO & CO NEW | 28.890 | | |
| | 74,270 | | | WYETH | 36.010 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG          SHORT | | | |
| | 1,951,174,724.18 | | | | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 119/143 * RCVD AT 12/2/2008 7:30:00 PM [Romance Standard Time] * SVR:LJ4IMONTOW1/23 * DNIS:210 * CSID:* DURATION (mm-ss):40-51

BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY  B.P. 413
L-2014  LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 18 A |

YOUR ACCOUNT NUMBER: 1-FR109-3-0

YOUR TAXPAYER IDENTIFICATION NUMBER

| DATE | AMOUNT RECEIVED OR LONG | ROLE DELIVERED OR SHORT | TAX | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | YEAR-TO-DATE SUMMARY | | | |
| | | | | DIVIDENDS | | | 13,234,601.82 |
| | | | | GROSS PROCEEDS FROM SALES | | | 13,014,379,367.95 |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

PAGE 129/143 * RCV'D AT 12/22/2008 7:30:00 PM [Romance Standard Time] * SVR:LUI4/MONT007/0130 * DNIS:210 * CSID:* DURATION (mm-ss):44-51

PAGE 121/143* RCVD AT 12/2/2008 7:00:30 PM [Romance Standard Time]* SVR:LU48MONT/0/123* DNIS:210* CSID:* DURATION (mm-ss):04-51

| BERNARD L. MADOFF | 885 Third Avenue | Affiliated with |
| INVESTMENT SECURITIES LLC | New York, NY 10022 | Madoff Securities International Limited |
| New York ● London | (212) 230-2424 | 12 Berkeley Street |
| | 800 334-1343 | Mayfair London W1J 8DT |
| | Fax (212) 838-4061 | Tel 020 7493 6222 |

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY B.P. 413
L-2014  LUXEMBOURG

| PERIOD ENDING | PAGE |
|---|---|
| 11/30/08 | 1 |

YOUR ACCOUNT NUMBER: 1-FR109-4-0

| DATE | BOUGHT RECEIVED OR LONG | SOLD DELIVERED OR SHORT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 87,706,206.00 |
| 11/06 | | 15,894 | 18964 | S & P 100 INDEX NOVEMBER 470 CALL | 20.300 | | 32,248,926.00 |
| 11/06 | 15,894 | | 19199 | S & P 100 INDEX NOVEMBER 460 PUT | 20.500 | 32,598,594.00 | |
| 11/07 | | 11,003 | 31485 | S & P 100 INDEX NOVEMBER 470 CALL | 22 | | 24,195,597.00 |
| 11/07 | 11,003 | | 31720 | S & P 100 INDEX NOVEMBER 460 PUT | 13.800 | 15,195,143.00 | |
| 11/10 | | 13,476 | 43945 | S & P 100 INDEX NOVEMBER 485 CALL | 12.400 | | 16,696,764.00 |
| 11/10 | 13,476 | | 44180 | S & P 100 INDEX NOVEMBER 475 PUT | 16.800 | 22,653,156.00 | |
| 11/19 | | 40,373 | 30158 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 104,929,427.00 |
| 11/19 | 40,373 | | 30396 | S & P 100 INDEX NOVEMBER 470 CALL | 30 | 121,159,373.00 | |
| 11/19 | 26,897 | | 30634 | S & P 100 INDEX NOVEMBER 485 CALL | 1.500 | 4,061,447.00 | |
| 11/19 | 13,476 | | 30872 | S & P 100 INDEX NOVEMBER 460 PUT | .900 | 1,226,316.00 | |
| 11/19 | | 26,897 | 31110 | S & P 100 INDEX NOVEMBER 475 PUT | 45 | | 121,009,603.00 |
| 11/19 | | 13,476 | 31348 | | 59 | | 79,494,924.00 |
| | | | | CONTINUED ON PAGE 2. | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES

CONTINUED ON PAGE 2.

PAGE 122/143* RCVD AT 12/22/2008 7:26:09 PM [Romance Standard Time]* SVR:LUAMMONT01/23* DNIS:210* CSID:* DURATION (mm-ss):44-51

| | BERNARD L. MADOFF |
|---|---|
| MADF | INVESTMENT SECURITIES LLC |
| | New York ◦ London |

885 Third Avenue
New York, NY 10022
(212) 330-2424
800 334-4343
Fax (312) 838-4061

Affiliated with
Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

HSBC SECURITIES SERVICES
(LUXEMBOURG) SA SPEC CUST ACCT
FOR HERALD FUND SPC-HERALD USA
40 AVENUE MONTEREY   B.P. 413
L-2014  LUXEMBOURG

| | PERIOD ENDING | | PAGE | |
|---|---|---|---|---|
| | 11/30/08 | | 2 | A |

YOUR ACCOUNT NUMBER      YOUR TAX PAYER IDENTIFICATION NUMBER
1-FR109-4-0

| DATE | AMOUNT RECEIVED OR LONG | SOLD RO DELIVERED OR SHORT | TAX | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/25 | | 5,305 | 72126 | S & P 100 INDEX DECEMBER 380 CALL | 34 | | 18,031,695.00 |
| 11/25 | 5,305 | | 72364 | S & P 100 INDEX DECEMBER 370 PUT | 21 | 11,145,805.00 | |
| | | | | NEW BALANCE | | | 276,273,308.00 |
| | | 40,373 | | SECURITY POSITIONS S & P 100 INDEX DECEMBER 430 CALL | MKT PRICE 23.300 | | |
| | | 5,305 | | S & P 100 INDEX DECEMBER 380 CALL | 61 | | |
| | 40,373 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | 5,305 | | | S & P 100 INDEX DECEMBER 370 PUT | 5.100 | | |
| | | | | MARKET VALUE OF SECURITIES LONG          SHORT 67,321,000.00  126,429,590.00- | | | |

PLEASE RETAIN THIS STATEMENT FOR INCOME TAX PURPOSES.

09-01364-smb    Doc 338-1    Filed 10/17/14    Entered 10/17/14 13:51:01    Exhibit A
Pg 79 of 85

H

**USD Class**

| Date | Subscriptions | Redemptions |
|---|---|---|
| 29-Apr-04 | $20,017,657.10 | |
| 16-May-04 | | |
| 31-May-04 | $250,000.01 | |
| 14-Jun-04 | | |
| 29-Jun-04 | $102,489.94 | |
| 14-Jul-04 | | |
| 29-Jul-04 | $2,460,339.04 | |
| 15-Aug-04 | | |
| 30-Aug-04 | $842,749.95 | $17,234,367.76 |
| 14-Sep-04 | | |
| 29-Sep-04 | $6,439,987.31 | |
| 14-Oct-04 | | |
| 29-Oct-04 | $1,669,997.46 | |
| 14-Nov-04 | | |
| 29-Nov-04 | $24,649,921.52 | |
| 14-Dec-04 | | |
| 30-Dec-04 | $22,470,069.22 | $413,019.51 |
| 16-Jan-05 | | |
| 30-Jan-05 | $47,079,911.00 | |
| 14-Feb-05 | | |
| 27-Feb-05 | $41,125,945.83 | |
| 14-Mar-05 | | |
| 30-Mar-05 | $21,765,206.13 | |
| 14-Apr-05 | | $102,000.42 |
| 29-Apr-05 | $19,500,999.81 | $67,389,999.57 |
| 16-May-05 | | |
| 30-May-05 | $29,789,999.71 | $13,728,906.56 |
| 14-Jun-05 | | |
| 29-Jun-05 | $14,448,999.76 | |
| 14-Jul-05 | | |
| 30-Jul-05 | $4,609,979.44 | $149,999.95 |
| 15-Aug-05 | | |
| 30-Aug-05 | $2,822,499.69 | $3,633,490.97 |
| 14-Sep-05 | | $428,496.00 |
| 29-Sep-05 | $649,968.77 | $16,175,892.60 |
| 16-Oct-05 | | |
| 30-Oct-05 | $179,999.82 | $359,639.63 |
| 14-Nov-05 | | |
| 29-Nov-05 | $19,134,999.48 | $4,104,840.42 |
| 14-Dec-05 | | $53,685.83 |
| 30-Dec-05 | $459,999.87 | $6,880,214.81 |
| 14-Jan-06 | | $262,070.08 |
| 30-Jan-06 | $5,294,999.75 | $99,999.93 |
| 14-Feb-06 | | |
| 27-Feb-06 | $15,999,999.99 | $122,564.27 |
| 14-Mar-06 | | $25,949.25 |
| 30-Mar-06 | $1,699,999.80 | $1,599,999.92 |
| 17-Apr-06 | | $2,199,662.68 |
| 29-Apr-06 | $2,900,025.22 | $82,555.67 |
| 14-May-06 | | |
| 30-May-06 | $6,389,999.14 | $18,812,381.44 |
| 14-Jun-06 | | $405,905.21 |
| 29-Jun-06 | $2,758,510.59 | $5,717,625.20 |
| 16-Jul-06 | | |
| 30-Jul-06 | $3,207,999.69 | |
| 15-Aug-06 | | $2,300,437.69 |
| 30-Aug-06 | $5,932,528.26 | $330,559.14 |
| 14-Sep-06 | | $34,955.29 |
| 29-Sep-06 | $6,168,999.65 | |
| 15-Oct-06 | | $134,575.09 |

| | | |
|---|---|---|
| 30-Oct-06 | $6,367,899.49 | |
| 14-Nov-06 | | |
| 29-Nov-06 | $11,200,225.83 | |
| 14-Dec-06 | | |
| 30-Dec-06 | $8,400,998.98 | $1,134,584.34 |
| 14-Jan-07 | | |
| 30-Jan-07 | $1,772,999.43 | $2,417,087.99 |
| 14-Feb-07 | | $117,866.83 |
| 27-Feb-07 | $4,361,307.11 | $867,508.42 |
| 14-Mar-07 | | $728,785.38 |
| 30-Mar-07 | $17,395,974.43 | $804,379.16 |
| 15-Apr-07 | | $119,712.23 |
| 29-Apr-07 | $465,421,348.04 | $5,312,094.00 |
| 14-May-07 | $2,001,652.02 | $834,941.92 |
| 30-May-07 | $53,177,730.32 | $1,484,596.76 |
| 14-Jun-07 | | $2,988,422.07 |
| 29-Jun-07 | $118,376,999.05 | $25,286,324.44 |
| 15-Jul-07 | | $238,235.92 |
| 30-Jul-07 | $8,048,499.47 | |
| 15-Aug-07 | | $297,164.95 |
| 30-Aug-07 | $55,978,999.43 | $11,797,018.16 |
| 16-Sep-07 | | $7,120,126.38 |
| 29-Sep-07 | $65,041,998.99 | $3,693,553.93 |
| 14-Oct-07 | | $75,468.03 |
| 30-Oct-07 | $145,038,699.60 | $123,602.28 |
| 14-Nov-07 | | $2,614,999.83 |
| 29-Nov-07 | $80,632,620.20 | $3,298,762.10 |
| 16-Dec-07 | | $616,845.57 |
| 30-Dec-07 | $36,764,994.63 | $14,664,888.03 |
| 14-Jan-08 | | |
| 30-Jan-08 | $34,474,099.24 | $9,005,967.86 |
| 14-Feb-08 | | $118,379.95 |
| 28-Feb-08 | $40,555,946.50 | $196,425.16 |
| 16-Mar-08 | | $456,141.95 |
| 30-Mar-08 | $42,009,998.79 | $242,931.96 |
| 14-Apr-08 | | $197,708.14 |
| 29-Apr-08 | $29,119,973.81 | $1,134,144.75 |
| 14-May-08 | | $377,712.29 |
| 30-May-08 | $21,634,498.38 | $665,412.20 |
| 15-Jun-08 | | |
| 29-Jun-08 | $179,146,998.84 | $1,622,728.00 |
| 14-Jul-08 | | $1,943,413.77 |
| 30-Jul-08 | $56,593,999.35 | $1,207,941.31 |
| 17-Aug-08 | | $31,309.21 |
| 30-Aug-08 | $32,532,799.15 | $4,490,414.23 |
| 14-Sep-08 | | $550,680.82 |
| 29-Sep-08 | $2,537,599.36 | $46,067,468.53 |
| 14-Oct-08 | $27,365.12 | $26,849,550.11 |
| 30-Oct-08 | $1,939,799.21 | $298,454,670.33 |
| 16-Nov-08 | | $3,143,453.33 |
| 29-Nov-08 | | |
| TOTAL: | $1,851,380,807.72 | $646,177,217.53 |

**EUR Class**

| Date | Subscriptions | Redemptions |
|------|---------------|-------------|
| 29-Apr-04 | | |
| 16-May-04 | | |
| 31-May-04 | 681,480.00 € | |
| 14-Jun-04 | | |
| 29-Jun-04 | 227,587.12 € | |
| 14-Jul-04 | | |
| 29-Jul-04 | 14,083,156.92 € | |
| 15-Aug-04 | | |
| 30-Aug-04 | 3,674,864.15 € | |
| 14-Sep-04 | | |
| 29-Sep-04 | 5,798,069.34 € | |
| 14-Oct-04 | | |
| 29-Oct-04 | 8,055,997.00 € | |
| 14-Nov-04 | | |
| 29-Nov-04 | 13,088,591.23 € | |
| 14-Dec-04 | | 17,580.04 € |
| 30-Dec-04 | 8,121,624.10 € | |
| 16-Jan-05 | | 600,234.11 € |
| 30-Jan-05 | 14,734,289.24 € | 20,884.73 € |
| 14-Feb-05 | | |
| 27-Feb-05 | 7,003,543.24 € | 54,442.29 € |
| 14-Mar-05 | | |
| 30-Mar-05 | 10,410,571.19 € | 389,557.47 € |
| 14-Apr-05 | | |
| 29-Apr-05 | 8,513,320.68 € | 110,232.41 € |
| 16-May-05 | | |
| 30-May-05 | 5,883,197.02 € | 9,999,999.94 € |
| 14-Jun-05 | | 45,137.20 € |
| 29-Jun-05 | 38,019,085.75 € | 9,889,398.58 € |
| 14-Jul-05 | | |
| 30-Jul-05 | 22,631,271.03 € | 353,187.09 € |
| 15-Aug-05 | | 50,714.56 € |
| 30-Aug-05 | 1,687,695.54 € | 70,436.46 € |
| 14-Sep-05 | | 25,121.64 € |
| 29-Sep-05 | 3,337,407.02 € | 284,300.57 € |
| 16-Oct-05 | | 404,394.97 € |
| 30-Oct-05 | 323,851.98 € | 2,832,320.38 € |
| 14-Nov-05 | | 10,904.28 € |
| 29-Nov-05 | 8,343,399.40 € | 2,806,839.42 € |
| 14-Dec-05 | | |
| 30-Dec-05 | 2,976,758.50 € | 2,828,276.69 € |
| 14-Jan-06 | | 373,311.89 € |
| 30-Jan-06 | 12,187,686.79 € | 543,881.44 € |
| 14-Feb-06 | | 538,572.83 € |
| 27-Feb-06 | 86,293,934.27 € | 850,865.54 € |
| 14-Mar-06 | | 460,638.15 € |
| 30-Mar-06 | 13,634,558.15 € | 554,633.54 € |
| 17-Apr-06 | | |
| 29-Apr-06 | 9,701,069.47 € | 1,435,877.56 € |
| 14-May-06 | | |
| 30-May-06 | 35,022,647.80 € | 387,366.52 € |
| 14-Jun-06 | | 161,397.53 € |
| 29-Jun-06 | 13,684,976.80 € | 966,865.95 € |
| 16-Jul-06 | | |
| 30-Jul-06 | 17,312,961.74 € | 2,518,569.98 € |
| 15-Aug-06 | | |
| 30-Aug-06 | 13,179,999.24 € | 1,110,940.53 € |
| 14-Sep-06 | | 28,603.30 € |
| 29-Sep-06 | 5,418,814.89 € | 519,780.18 € |
| 15-Oct-06 | | 1,071,406.20 € |

| | | |
|---|---|---|
| 30-Oct-06 | 11,615,481.94 € | 15,837,697.55 € |
| 14-Nov-06 | | 409,899.04 € |
| 29-Nov-06 | 14,268,256.09 € | 393,706.60 € |
| 14-Dec-06 | | 10,589.62 € |
| 30-Dec-06 | 5,830,816.67 € | 11,527,156.00 € |
| 14-Jan-07 | | 66,630.23 € |
| 30-Jan-07 | 11,855,915.16 € | 4,233,791.04 € |
| 14-Feb-07 | | 197,220.72 € |
| 27-Feb-07 | 17,759,509.76 € | 5,987,867.65 € |
| 14-Mar-07 | | 761,016.97 € |
| 30-Mar-07 | 15,513,369.50 € | 265,365.43 € |
| 15-Apr-07 | | 4,010,394.29 € |
| 29-Apr-07 | 12,526,894.33 € | 2,788,706.21 € |
| 14-May-07 | | 227,046.74 € |
| 30-May-07 | 8,889,727.09 € | 14,441,575.60 € |
| 14-Jun-07 | | 262,512.36 € |
| 29-Jun-07 | 5,765,109.23 € | 15,790,900.06 € |
| 15-Jul-07 | | 8,900.38 € |
| 30-Jul-07 | 5,775,385.53 € | 1,144,470.68 € |
| 15-Aug-07 | | 1,836,240.87 € |
| 30-Aug-07 | 4,881,481.08 € | 275,042.49 € |
| 16-Sep-07 | | 819,617.31 € |
| 29-Sep-07 | 3,611,897.66 € | 1,385,991.24 € |
| 14-Oct-07 | | 2,701,204.97 € |
| 30-Oct-07 | 14,332,607.98 € | 12,459,348.03 € |
| 14-Nov-07 | | 1,003,451.54 € |
| 29-Nov-07 | 17,126,615.37 € | 15,224,365.55 € |
| 16-Dec-07 | | 1,018,977.08 € |
| 30-Dec-07 | 5,566,970.91 € | 6,178,883.09 € |
| 14-Jan-08 | | 1,300,279.76 € |
| 30-Jan-08 | 6,748,665.61 € | 9,839,800.34 € |
| 14-Feb-08 | | 1,742,476.09 € |
| 28-Feb-08 | 5,920,288.07 € | 2,095,616.05 € |
| 16-Mar-08 | | 16,360,950.61 € |
| 30-Mar-08 | 13,320,298.10 € | 3,524,308.76 € |
| 14-Apr-08 | | 397,362.27 € |
| 29-Apr-08 | 8,282,382.15 € | 10,413,528.94 € |
| 14-May-08 | | 2,971,786.50 € |
| 30-May-08 | 10,929,254.72 € | 1,419,324.35 € |
| 15-Jun-08 | | 289,917.92 € |
| 29-Jun-08 | 7,372,795.48 € | 7,088,561.85 € |
| 14-Jul-08 | | 1,036,256.63 € |
| 30-Jul-08 | 2,880,214.13 € | 1,950,649.46 € |
| 17-Aug-08 | | 2,642,033.67 € |
| 30-Aug-08 | 7,638,864.06 € | 1,656,406.18 € |
| 14-Sep-08 | | 2,263,523.13 € |
| 29-Sep-08 | | 16,418,687.13 € |
| 14-Oct-08 | | 6,688,635.09 € |
| 30-Oct-08 | | 29,444,529.13 € |
| 16-Nov-08 | | 11,072,504.63 € |
| 29-Nov-08 | | |
| TOTAL | 602,445,210.24 € | 294,202,438.77 € |

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Jay P. Lefkowitz
To Call Writer Directly:
212 446-4970
lefkowitz@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

June 22, 2009

**By Federal Express**

Irving H. Picard, Esq.
Truste for Bernard L. Madoff Investment
Securities LLC
2100 McKinney Avenue
Suite 800
Dallas, Texas 75201

      Re:    SIPA Customer Claim Form for Herald Fund SPC
              Account Number 1-FR109

Dear Mr. Picard:

      Please find enclosed with this letter a duplicate of the customer claim of Herald Fund SPC in the Securities Investor Protection Corporation liquidation of Bernard L. Madoff Investment Securities LLC. This customer claim, for account number 1-FR109, is made upon the enclosed claim form, addendum, and accompanying exhibits. An original of this customer claim is being sent today via certified mail, return receipt requested.

      Please do not hesitate to contact the undersigned should you have any questions or concerns.

Sincerely yours,

Jay P. Lefkowitz

Enclosures (1)

Chicago      Hong Kong      London      Los Angeles      Munich      Palo Alto      San Francisco      Washington, D.C.

Align top of **FedEx Express Shipping Label** here

Page 1 of 1

```
ORIGIN ID: JRBA (212) 446-4800        Ship Date: 22JUN09
MAILROOM                              ActWgt: 1.1 LB MAN
KIRKLAND & ELLIS LLP                  System#: 0028239/CAFE2361
153 EAST 53RD STREET                  Account: S *********
36TH FLOOR
NEW YORK, NY 10022
UNITED STATES US
```

TO **IRVING H PICARD, ESQ**

**TRUSTEE FOR B. MADOFF SECURITIES**

**2100 MCKINNEY AVE**

**CLAIMS PROCESSING CENTER, STE 800**

**DALLAS, TX 75201**



FedEx
Express

Ref: 23699-0001R. MASON



Delivery Address
Barcode

BILL SENDER

**PRIORITY OVERNIGHT**

TRK# **6203 7577 9074**   Form 0201

**75201** -TX-US   **XH RBDA**
DSR

**TUE**
Deliver By
**23JUN09**

**DFW**   **A1**



**For FedEx Express® Shipments Only**

Align bottom of **Peel and Stick Airbill** or **Pouch** here.