# EXHIBIT 17

# EXHIBIT A

## FORM OF AGREEMENT BETWEEN
## TRUSTEE AND MOUNT CAPITAL COMPANIES

# AGREEMENT

This Agreement, dated as of July 27, 2011 ("Agreement"), is made by and among Irving H. Picard, in his capacity as the Trustee (the "Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District Court of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and John J. Greenwood and Hadley J. Chilton (the "Liquidators" or the "Joint Liquidators"), solely in their respective capacities as the Foreign Representatives for and Joint Liquidators of Mount Capital Fund, Ltd., a British Virgin Islands company ("Mount Capital Fund"), and Mount Capital Asset Subsidiary Limited, a British Virgin Islands company ("Mount Capital Subsidiary," collectively with Mount Capital Fund, the "Mount Capital Funds"), on the other hand (each of the Trustee, the Liquidators, Mount Capital Fund, Mount Capital Subsidiary, a "Party" and, collectively, the "Parties").

## BACKGROUND

A.  BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.  On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff. On December 12, 2008, the District Court entered an order which among other things appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.  On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA, removed the receiver, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS (the "BLMIS Estate"). By Order dated June 2, 2009, the estate of Madoff was substantively consolidated with the estate of BLMIS.

D.  Mount Capital Fund and Mount Capital Subsidiary are British Virgin Islands ("BVI") companies that at all relevant times, were customers of BLMIS.

E.  Pursuant to Orders entered on September 24, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed John J. Greenwood and Hadley J. Chilton of Baker Tilly (BVI) Limited to be the Liquidators for the Mount Capital Funds, which appointment commenced the winding up of the Mount Capital

Funds pursuant to the British Virgin Islands Insolvency Act 2003 (the "Mount Capital Funds Proceedings").

F.  Mount Capital Fund maintained an account with BLMIS that was designated Account No. 1FR081 (the "First Account"). The First Account was opened on or about December 11, 2001. On or about May 1, 2002, Mount Capital Fund opened a second account with BLMIS in the name of its wholly-owned subsidiary, Mount Capital Subsidiary, then named Mount Capital Class D Limited, that was designated Account No. 1FR085 (the "Second Account," collectively with the First Account, the "Mount Capital Funds' Accounts"). On or about May 3, 2002, Mount Capital Fund directed that all funds and other assets that were held in its First Account, 1FR081, be transferred into the Second Account, 1FR085. The Mount Capital Funds' Accounts are listed as Attachment A to this Agreement. Between December 2001 and the Filing Date, on an overall basis the Mount Capital Funds deposited into the Mount Capital Funds' Accounts a total of Two Hundred Fifty-One Million, Three Hundred Sixty-Thousand, Five Hundred Forty-Seven Dollars and Eighty-Two Cents ($251,360,547.82) in excess of the amount of withdrawals that the Mount Capital Funds made from the accounts. Mount Capital Subsidiary withdrew $36,000,000 from the Second Account within 90 days before the Filing Date (the "Mount Capital 90-Day Withdrawals"). Mount Capital Subsidiary withdrew an additional $10,000,000 during the six years prior to the Filing Date (the "Mount Capital Six Year Withdrawals"), resulting in total withdrawals of $46,000,000 prior to the Filing Date (the Mount Capital Six Year Withdrawals, collectively with the Mount Capital 90-Day Withdrawals, the "Mount Capital Withdrawals").

G.  On or about February 27, 2009, Mount Capital Fund filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 4105; and on July 2, 2009, it submitted a second customer claim, which the Trustee has designated as Claim No. 15300 (collectively, the "Mount Capital Customer Claims"). Although the Mount Capital Customer Claims were filed in the name of Mount Capital Fund, the account number referenced in the Mount Capital Customer Claims and the documents that were submitted with the Mount Capital Customer Claims refer to the Second Account. The Mount Capital Customer Claims are included as Attachments B-1 and B-2 to this Agreement. The Mount Capital Customer Claims assert that the Mount Capital Fund is entitled to the securities reflected on Mount Capital Subsidiary's BLMIS account statement for the period ended November 30, 2008.

H.  The Trustee has disputed that the Mount Capital Fund is entitled to return of securities, which were non-existent, or in the alternative, to allowance of a customer claim in the amount reflected on Mount Capital Subsidiary's November 30, 2008 BLMIS account statement. On March 1, 2010, the Honorable Burton R. Lifland, of the Bankruptcy Court, issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between investments into BLMIS and amounts withdrawn from BLMIS (the "Net Equity Method"). On March 8, 2010, Judge Lifland entered an order implementing the decision and certifying it for immediate appeal to the United States Court of Appeals for the Second Circuit. The amount of Mount Capital Fund's SIPA Claim based on the Net Equity Method is Two Hundred Fifty-One Million, Three Hundred Sixty-Thousand, Five Hundred Forty-Seven Dollars and Eighty-Two Cents ($251,360,547.82) (the "Mount Capital Net Equity Claim").

I.  The Trustee has brought an adversary proceeding against the Mount Capital Funds and other defendants in the Bankruptcy Court under the caption *Picard v. Mount Capital Fund, Ltd., et al.*, Adv. Pro. No. 10-05123, (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that Mount Capital Subsidiary is liable to the BLMIS Estate under 11 U.S.C. §§ 544, 547, 548, SIPA § 78fff-(2)(c)(3), and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for the Mount Capital Withdrawals made by Mount Capital Subsidiary from BLMIS. Pursuant to Bankruptcy Code § 502(d), the Trustee also seeks in the Complaint to disallow the Mount Capital Customer Claims.

J.  All claims of the Trustee against Mount Capital Subsidiary under 11 U.S.C. §§ 544, 547, 548 or 550, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

K.  The Liquidators, on behalf of each of the Mount Capital Funds, have disputed any liability to the BLMIS Estate in connection with the Adversary Proceeding and the Avoiding Power Claims alleged therein.

L.  The Trustee, on the one hand, and the Liquidators, for each of the estates that they represent, on the other hand, desire to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

## AGREEMENT

1.  **Payment to Trustee.** At the Closing (as defined in paragraph 9) Mount Capital Funds shall pay the Trustee the sum of Forty-Three Million Five Hundred Thousand Dollars ($43,500,000) (the "Settlement Payment") by wire transfer of immediately available funds to the account specified on Schedule 1 attached hereto, in full and final settlement of all Avoiding Power Claims and other claims of the Trustee or the BLMIS Estate against the Mount Capital Funds.

2.  **Allowance of Mount Capital Customer Claim.** Upon the occurrence of the Closing (as defined in paragraph 9), not withstanding section 502(d) of the Bankruptcy Code, the Trustee shall allow a Mount Capital customer claim pursuant to 15 U.S.C. § 78*lll* (11) equal in priority to other allowed customer claims against the BLMIS Estate in the amount of Two Hundred Ninety-Four Million, Eight Hundred Sixty-Thousand, Five Hundred Forty-Seven Dollars and Eighty-Two Cents ($294,860,547.82) (the "Allowed Claim") by combining the Mount Capital Customer Claims. As provided in paragraph 9, the Trustee shall make a distribution to Mount Capital Fund on account of the Allowed Claim in the amount of Five Hundred Thousand Dollars ($500,000.00) in respect of the SIPC advance to the Trustee pursuant to section 9 of SIPA. The SIPC advance may, with the written consent of the Parties, be paid by set off against the payment required under paragraph 1 of this Agreement. The Bankruptcy Court's order approving this Agreement shall provide for the allowance of the Allowed Claim as provided in this paragraph.

Notwithstanding the releases in paragraphs 3 and 4, should a final and unappealable court order determine that Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims, including the Allowed Claim, in

3

accordance with the court's order. In the event of such an order, nothing in this Agreement, shall be construed as a waiver of any rights or claims held by Mount Capital Fund as a customer, as defined in section 78fff(2)(e)(4) of SIPA, of BLMIS ("BLMIS Customer") in having the Allowed Claim re-determined in accordance with such court order. In the event of such a re-determination, any payments due to a BLMIS Customer shall be made on a pro rata basis following any applicable SIPC advance based upon the final re-determined claim amount and in accordance with any court orders concerning distributions.

   3. <u>Release by Trustee</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights and considerations arising under this Agreement, upon the Closing (as defined in paragraph 9) the Trustee, on behalf of himself, BLMIS and its consolidated estate shall release, acquit and forever discharge: (i) the Liquidators and the Mount Capital Funds from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing that are, have been, could have been or might in the future be asserted by the Trustee based on, arising out of, or in any way related to BLMIS, the Mount Capital Funds' Accounts or the Mount Capital Withdrawals (including, without limitation, the claims asserted against the Mount Capital Funds in the Adversary Proceeding), except for any and all claims and rights (and the enforcement thereof) of the Trustee and obligations of the Liquidators arising under this Agreement; and (ii) all past or present directors, officers, employees, indirect or direct shareholders, limited partners, principals, successors, assigns, agents, representatives, accountants, administrators, and attorneys of the Mount Capital Funds (collectively with the Mount Capital Funds, the "<u>Mount Capital Releasees</u>") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, existing as of the date of the Closing that are, have been, could have been or might in the future be asserted by the Trustee and that are based on, arise out of, or are related to the Mount Capital Withdrawals and the Mount Capital Funds' Accounts. Each of the individuals and entities released pursuant to clauses (i) and (ii) of this paragraph is referred to herein as a "<u>Releasee</u>."

The release contained herein shall become effective upon the Trustee's actual receipt of the Settlement Payment under paragraph 1 without any further action by any of the Parties.

   4. <u>Release by Releasees</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights and considerations arising under this Agreement, each of the Releasees and their Liquidators, hereby releases, acquits and forever discharges the Trustee and all his agents, representatives, attorneys, employees, professionals, BLMIS and its consolidated estate, from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known

4

or unknown, existing as of the date of the Closing, based on, arising out of, or in any way related to BLMIS, the Mount Capital Funds' Accounts or the Mount Capital Withdrawals, except for the Allowed Claim, and/or any claims and rights (and the enforcement thereof) of the Mount Capital Funds and obligations of the Trustee arising under this Agreement.

The release contained herein shall become effective upon the Trustee's actual receipt of the Settlement Payment under paragraph 1 without any further action by any of the Parties.

5. <u>Unknown Claims.</u> Unknown Claims shall mean any Released Claim, as defined herein, that the Liquidators do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all Released Claims in paragraphs 3 and 4 of this Agreement, the Liquidators shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

<u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.</u>

The Liquidators expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. The Liquidators shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. The Liquidators acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

6. <u>Dismissal of the Complaint.</u> Within five (5) business days after the Closing (as defined in paragraph 9), the Trustee shall submit to the Bankruptcy Court a stipulation dismissing all claims in the Complaint with prejudice with each Party bearing its own cost, attorneys' fees, and expenses.

7. <u>Filed Customer Claims.</u> Mount Capital Funds agree that they are entitled to only a single combined customer claim in the SIPA Proceeding, which combined claim shall be for the Second Account. For the avoidance of doubt, the Mount Capital Funds agree they shall not be entitled to any customer claim based on the First Account. Mount Capital Funds further agree that none of their investors are entitled to file a customer claim in the SIPA Proceeding in respect of any investments they may have made in the Mount Capital Funds.

5

8. <u>Bankruptcy Court and BVI Court Approval; Effective Date; Termination</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the later to occur of both: (i) the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing; and (ii) the BVI Court's approval of this Agreement by an order that is no longer subject to appeal, review or rehearing (the date when this Agreement becomes effective and binding on the Parties, the "<u>Effective Date</u>"). The form of the approval order in the SIPA Proceeding shall be subject to the Liquidators' reasonable approval. The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. The form of the approval order in the BVI Proceedings shall be subject to the Trustee's reasonable approval. The Liquidators shall use their reasonable efforts to obtain approval of the Agreement in the BVI Proceedings as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this paragraph within 360 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee, either or both of the Liquidators, or any of the Mount Capital Funds may use or rely on any such statement, concession, consent or agreement in any public statement or litigation involving the SIPA Proceeding, the Mount Capital Funds Proceedings, any case or proceeding relating to the SIPA Proceeding, the Mount Capital Fund Proceedings or any case or proceeding relating to any of the Mount Capital Funds, BLMIS or Madoff.

9. <u>Closing</u>. There shall be a closing ("<u>Closing</u>") within five (5) business days after the Effective Date of this Agreement, on a date agreed by the Parties, at the offices of Trustee's counsel in New York, New York. At the Closing: (a) Mount Capital Funds shall make the Settlement Payment required under paragraph 1; (b) the Trustee shall pay Mount Capital Fund $500,000 from SIPC advances under section 9 of SIPA, which amount may be paid by setoff against the payment required under paragraph 1; and (c) the releases contained in paragraphs 3 and 4 shall become effective without any further action by any of the Parties.

10. <u>Liquidators' and Trustee's Authority</u>. The Liquidators, on their own and on behalf of the Mount Capital Funds, represent and warrant to the Trustee that, as of the date hereof, and subject to the approval of the BVI Court as set forth in paragraph 8 above, each of them has the full power, authority and legal right to execute and deliver, and to perform his respective obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement. The Trustee represents and warrants to the Liquidators that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 8 above, he has the full power, authority and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

11. <u>Further Assurances</u>. The Trustee and the Liquidators shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

12. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations, and understandings concerning the subject matter hereof.

13. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability or wrongdoing whatsoever.

14. <u>Amendments, Waiver</u>. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15. <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

16. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

17. <u>No Third Party Beneficiary</u>. Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions; provided, however, that the BVI Court's approval of this Agreement pursuant to paragraph 8 hereof shall be in accordance with the law of the BVI.

19. <u>Exclusive Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. The Parties agree that no Party shall bring, institute, prosecute or maintain any action to enforce this Agreement, or any provision thereof, in any court other than the Bankruptcy Court except for the limited purpose of enforcing a final award or judgment entered by the BVI Court or Bankruptcy Court in connection with the approval of this Agreement. In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of New York or the Supreme Court of New York in New York County.

20. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

21. <u>Counterparts, Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

22. <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

23. <u>Severability</u>. In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

24. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201
E: ipicard@bakerlaw.com

If to Mount Capital Funds, c/o:

Jonathan Sablone
Nixon Peabody, LLP
437 Madison Avenue
New York, NY 10022
F: (866) 947-1729
E: jsablone@nixonpeabody.com

with copies to:

David J. Sheehan
E: dsheehan@bakerlaw.com
Marc Hirschfield
E: mhirschfield@bakerlaw.com
Elizabeth A. Scully
E: escully@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

[*Signature page follows*]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

8

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

*/s/ Irving Picard*

Sworn and subscribed before me
this 27th day of July, 2011.

*/s/ Marcella J. Oliver*
Notary Public

MARCELLA J. OLIVER
Notary Public, State of New York
No. 01OL6220520
Qualified in New York County
Commission Expires April 12, 2014

9

MOUNT CAPITAL FUND LTD

By: _____
Name: HADLEY JAMES CHILTON
Title: LIQUIDATOR

Sworn and subscribed before me
this 25 day of August, 2011.

_____
Notary Public

[Notary Seal]

10

MOUNT CAPITAL ASSET SUBSIDIARY LTD.

By: _____

Name: Rupert Sanger Critchley

Title: Liquidator

Sworn and subscribed before me
this 28 day of [illegible], 2011.

_____
Notary Public

[Notary Seal]

13

## Schedule 1

## WIRING INSTRUCTIONS

Citi Private Bank  
666 5th Ave., 5th Floor  
New York, New York 10103  
ABA No.: 021000089  
Swift Code: CITIUS33  
Account Name: Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC  
Account No.: 9947124947