**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05353 (CGM) |
| Plaintiff, | |
| v. | |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN**
**OPPOSITION TO NATIXIS S.A.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 4

    I.     THE BLMIS PONZI SCHEME ................................................................. 4

    II.    NATIXIS, ITS BUSINESS WITH FGG, AND ITS INVESTMENTS IN SENTRY . 4

    III.   PROCEDURAL HISTORY ...................................................................... 5

         A.   Fairfield Litigation ............................................................... 5

         B.   Alpha Prime Litigation ........................................................ 6

         C.   Natixis Litigation ................................................................. 7

ARGUMENT ........................................................................................................ 8

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER NATIXIS ..................... 8

         A.   Natixis Waived the Lack of Personal Jurisdiction Defense By Failing to Raise It In Its Prior Motion to Dismiss ........................................................... 9

         B.   Natixis Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the Jurisdiction ...................................... 10

             1.   Natixis's Contacts with New York Support Personal Jurisdiction .. 10

             2.   Natixis's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims .......................................................... 15

             3.   The Exercise of Personal Jurisdiction Over Natixis Is Reasonable . 15

         C.   In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery ........ 16

    II.    THE TRUSTEE SUFFICIENTLY ALLEGES THE AVOIDABILITY OF THE INITIAL TRANSFERS TO SENTRY ..................................................... 17

    III.   THE TRUSTEE SUFFICIENTLY ALLEGES THAT NATIXIS RECEIVED CUSTOMER PROPERTY ...................................................................... 18

         A.   The Trustee Plausibly Alleges That All of the Subsequent Transfers Natixis Received Contained Stolen BLMIS Customer Property ............................. 18

         B.   Natixis's Remaining Implausibility Arguments Fail on a Motion to Dismiss ...................................................................................... 19

    IV.   THE GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE PLEADING STAGE ............................................................................ 21

    V.    SECTION 546(e) DOES NOT BAR RECOVERY FROM NATIXIS ..................... 22

         A.   Sentry Had Actual Knowledge of Madoff's Fraud ...................... 23

i

B.      Section 546(e) Does Not Apply Independently to Recovery Actions ......... 24

C.      The Section 548(a)(1)(A) Exception to the Safe Harbor Applies................ 24

VI.   THE SETTLEMENT DOES NOT RELEASE NATIXIS FROM THE
NATIXIS/SENTRY CLAIMS ........................................................................... 26

A.      The Settlement Establishes That the Release Does Not Apply to the
Natixis/Sentry Claims ...................................................................... 26

1.      The Settlement Resolves the Controversy Between the Trustee and
Alpha Prime and Does Not Affect Claims for Sentry Transfers ..... 27

2.      Following the Doctrine of *Ejusdem Generis*, the Release Cannot
Apply to the Natixis/Sentry Claims ................................................. 28

3.      Consideration for the Release Demonstrates It Is Applicable to
Alpha Prime Transfers Only ........................................................... 29

4.      Natixis Ignores the Plain Meaning of the Agreement and
Inappropriately Relies on a Single Clause ...................................... 30

B.      Extrinsic Evidence Confirms that the Release Does Not Apply to the
Natixis/Sentry Claims ...................................................................... 32

1.      The Trustee and Alpha Prime Agree as to the Release's Narrow
Scope ............................................................................................... 32

2.      The Release's Narrow Scope Is Consistent with This Court's
Approval of the Settlement ............................................................. 33

3.      The Trustee's Conduct Confirms the Release's Narrow Scope....... 35

4.      Cases With Analogous Facts Illustrate that a Narrow Interpretation
of the Release is Correct ................................................................. 36

C.      Natixis Is Not an Intended Third-Party Beneficiary to the Settlement for the
Natixis/Sentry Claims ...................................................................... 37

D.      The Trustee Is Not Estopped From Arguing that the Release Does Not
Apply to the Natixis/Sentry Claims ................................................. 39

E.      If the Settlement Unambiguously Reflected That It Released the
Natixis/Sentry Claims, the Contract Should Be Reformed........................... 39

CONCLUSION ................................................................................................... 40

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Actrade Fin. Techs., Ltd.*,
424 B.R. 59 (Bankr. S.D.N.Y. Dec. 31, 2009) ................................................................ 27, 33, 36, 37

*Amend v. Hurley*,
59 N.E.2d 416 (N.Y. 1944) ........................................................................................... 40

*Analisa Salon, Ltd. v. Elide Props., LLC*,
818 N.Y.S.2d 130 (N.Y. App. Div. 2006) ...................................................................... 31

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ........................................................................... 31

*ASI Sign Sys., Inc. v. Arch. Sys., Inc.*,
No. 98 Civ. 4823, 1999 WL 553825 (S.D.N.Y. July 29, 1999) ...................................... 39

*Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C) (In re Arcapita Bank B.S.C.(C))*,
640 B.R. 604 (S.D.N.Y. 2022) ...................................................................................... 13

*Barshay v. Naithani*,
No. 20 Civ. 8579, 2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023) .................................... 33

*Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*,
No. 18-cv-11099, 2020 WL 7128968 (S.D.N.Y. Dec. 4, 2020) ...................................... 16

*Cahill v. Regan*,
157 N.E.2d 505 (N.Y. 1959) ..................................................................................... 26, 28

*Chacko v. Costco Wholesale Corp.*,
568 F. Supp. 3d 487 (S.D.N.Y. 2021) ........................................................................... 31

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ......................................................................................... 15

*City of Almaty, Kazakhstan v. Sater*,
No. 19-CV-2645, 2019 WL 6681560 (S.D.N.Y. 2019) .................................................. 37

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) ........................................................................................... 9

*Consol. Edison, Inc. v. Ne. Utils.*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..................................................................... *passim*

*In re Corp. Res. Servs., Inc.*,
No. 15-1239 (MG), 2019 WL 5095709 (Bankr. S.D.N.Y. Oct. 10, 2019) ....................... 30

*In re Corp. Res. Servs., Inc.*,
  No. 19 Civ. 10931, 2020 WL 5211044 (S.D.N.Y. Sept. 1, 2020), *aff'd*, 849 F. App'x
  320 (2d Cir. 2021) ................................................................................................................ 31

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
  697 F.2d 27 (2d Cir. 1982) ................................................................................................... 33

*Eldesouky v. Aziz*,
  No. 11–CV–6986, 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ........................................ 13

*Ferrari v. Cnty. of Suffolk*,
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) .................................................................................... 18

*Gilmore v. Shearson/Am. Exp. Inc.*,
  811 F.2d 108 (2d Cir. 1987), *overruled on other grounds by Gulfstream Aerospace
  Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) .................................................................. 9

*Golden Pac. Bancorp v. F.D.I.C.*,
  273 F.3d 509 (2d Cir. 2001) ........................................................................................... 26, 32

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
  S.D.N.Y. Jan. 3, 2014) ......................................................................................................... 19

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................................................................. 22

*H & C Dev. Grp., Inc. v Miner (In re Miner)*,
  229 B.R. 561 (B.A.P. 2d Cir. 1999) ..................................................................................... 31

*Hartling v. Woodloch Pines, Inc.*,
  No. 97 Civ. 2587, 1998 WL 575138 (S.D.N.Y. Sept. 8, 1998) .............................................. 9

*Herman v. Malamed*,
  487 N.Y.S.2d 791 (N.Y. App. Div. 1985) ............................................................................ 28

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ...................................... 34

*Kelley v. Westford Special Situations Master Fund, L.P.*,
  No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ...................................... 20, 21

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013) ................................................................................................. 21

*Koch Indus., Inc. v. Picard (In re BLMIS)*,
  No. 23-CV-0294 (VEC), 2023 WL 3317926 (S.D.N.Y. May 9, 2023) ........................... 23, 24

*Licci v. Lebanese Canadian Bank, SAL*,
  984 N.E.2d 893 (N.Y. 2012) ................................................................................................. 13

iv

*Lipsky v. Commw. United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ............................................................................................ 39

*Lucent Techs., Inc. v. Gateway, Inc.*,
    470 F. Supp. 2d 1195 (S.D. Cal. 2007) ........................................................................... 28

*Mangini v. McClurg*,
    249 N.E.2d 386 (N.Y. 1969) ............................................................................................ 26

*Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*,
    607 N.E.2d 792 (N.Y. 1992) ............................................................................................ 38

*McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ................................................................................................... 11, 12

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
    906 F.2d 884 (2d Cir. 2009) ............................................................................................ 32

*Migliore v. Manzo*,
    813 N.Y.S.2d 762 (N.Y. App. Div. 2006) ....................................................................... 40

*Neuman v. Harmon*,
    965 F. Supp. 503 (S.D.N.Y. 1997) .................................................................................. 33

*Ocean Transp. Line, Inc. v. Am. Phil. Fiber Indus., Inc.*,
    743 F.2d 85 (2d Cir. 1984) .............................................................................................. 35

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) .................................................................................... 13, 15

*Peterson v. Regina*,
    935 F. Supp. 2d 628 (S.D.N.Y. 2013) ....................................................................... 27, 35

*Petracca v. Petracca*,
    756 N.Y.S.2d 587 (N.Y. App. Div. 2003) ...................................................................... 31

*Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*,
    650 B.R. 24 (Bankr. S.D.N.Y. 2023) ........................................................................ 24, 25

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ............................................................................... 22

*Picard v. Banca Carige S.p.A. (In re Madoff)*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) .............. 10, 17

*Picard v. Barfield Nominees (In re Madoff)*,
    Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28,
    2022).................................................................................................................................. 10

*Picard v. BNP Paribas S.A. (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................................. 16

v

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ......................................................................... *passim*

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
    S.D.N.Y. Mar. 14, 2012) ............................................................................................. 19, 20

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209 (2022)..................................... 4

*Picard v. Fairfield Inv. Fund, Ltd. (In re Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)..... 18, 20, 22, 24

*Picard v. First Gulf Bank (In re Madoff)*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July 18, 2022)............... 21, 24

*Picard v. Gettinger (In re BLMIS)*,
    976 F.3d 184 (2d Cir. 2020) ............................................................................................. 25

*Picard v. Hebrew University of Jerusalem*,
    650 B.R. 5 (Bankr. S.D.N.Y. 2023) ................................................................................... 16

*Picard v. JABA Assocs. LP (In re Madoff)*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021) ................................................................................ 25

*Picard v. Korea Exch. Bank (In re Madoff)*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept. 21,
    2022)........................................................................................................................... 19

*Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10,
    2022)........................................................................................................................... 13

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................................... 18, 21

*Picard v. Merkin (In re Madoff)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ............................................................................... 21

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ......................................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd.*,
    Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-cv-
    07372, 22-cv-07788 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ................................. 23, 24

*Picard v. Nomura Int'l PLC*,
    Adv. Pro. No. 11-02759 (CGM), 2023 WL 3113188 (Bankr. S.D.N.Y. Apr. 26, 2023) .................... 10

*Picard v. Parson Fin. Pan. S.A. (In re Madoff)*,
    Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022)................. 12, 14

*Picard v. Royal Bank of Can. (In re Madoff)*,
    650 B.R. 524 (Bankr. S.D.N.Y. 2023) ............................................................... 11

*Picard v. SNS Bank N.V. (In re Madoff)*,
    Adv. Pro. No. 12-01046 (CGM), 2023 WL 2395734 (Bankr. S.D.N.Y. Mar. 7, 2023) ..................... 17

*Picard v. UBS Eur. SE (In re Madoff)*,
    Adv. Pro. No. 12-01577 (CGM), 2023 WL 2290822 (Bankr. S.D.N.Y. Feb. 28, 2023) ................... 25

*In re Prudential Lines, Inc.*,
    170 B.R. 222 (S.D.N.Y. 1994) ............................................................... 34

*Ross v. United States*,
    574 F. Supp. 536 (S.D.N.Y. 1983) ............................................................... 9

*Roxx Allison Ltd. v. Jewelers Inc.*,
    385 F. Supp. 3d 377 (S.D.N.Y. 2019) ............................................................... 12

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005) ............................................................... 25

*SIPC v. BLMIS (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013) ............................................................... 17

*Strauss v. Belle Realty Co.*,
    469 N.Y.S.2d 948 (N.Y. App. Div. 1983) ............................................................... 26

*Tarantola v. Williams*,
    371 N.Y.S.2d 136 (N.Y. App. Div. 1975) ............................................................... 29

*Toth v. N.Y.C. Dep't of Ed.*,
    No. 21-CV-4245, 2023 WL 121733 (E.D.N.Y. Jan. 5, 2023) ....................................... 28, 30

*Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*,
    Nos. 11 Civ. 3567, 11 Civ. 8923, 2012 WL 3834721 (S.D.N.Y. Aug. 21, 2012) ............................... 38

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
    988 F. Supp. 367 (S.D.N.Y. 1997) ............................................................... 26, 38

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014) ............................................................... 21

*Vines v. Gen. Outdoor Advert. Co.*,
    171 F.2d 487 (2d Cir. 1948) (Hand, J.) ............................................................... 29

*W. Alton Jones Found. v. Chevron U.S.A., Inc.*,
    97 F.3d 29 (2d Cir. 1996) ............................................................... 35

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................... 11

**Statutes**

11 U.S.C. § 502(h) ................................................................................... 3, 6, 29, 30

11 U.S.C. § 546(e) .......................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ......................................................................... 23, 24, 25

11 U.S.C. § 550(a) ...................................................................................... 20

11 U.S.C. § 550(a)(2) .................................................................................. 18

11 U.S.C. § 550(d) ...................................................................................... 20

15 U.S.C. §§ 78aaa–*lll* ................................................................................. 1

**Rules**

Fed. R. Bankr. P. 9019(a) ........................................................................... 34

Fed. R. Civ. P. 9(b) .................................................................................... 25

Fed. R. Civ. P. 10(c) ................................................................................... 17

Fed. R. Civ. P. 12 ....................................................................................... 9

**Other Authorities**

Restatement (Second) Contracts § 302 (1979) ............................................ 26

Wright & Miller, Federal Practice & Procedure § 1388 (3d ed. 2021) ......................... 9

Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff")

respectfully submits this memorandum of law in opposition to the motion ("Motion") brought by

defendant Natixis S.A. ("Natixis") to dismiss the Trustee's amended complaint ("Amended

Complaint") against Natixis and its co-defendant Tensyr Limited ("Tensyr") seeking subsequent

transfers received from Fairfield Sentry Limited ("Sentry").

## **PRELIMINARY STATEMENT**

The Trustee's Amended Complaint asserts claims to recover $179 million of stolen BLMIS

customer property transferred from Sentry to Natixis ("Natixis/Sentry Claims").[1]  In response, the

Motion largely recycles the same arguments that the Court has rejected in numerous other

subsequent transfer cases: (1) the Court lacks personal jurisdiction; (2) the Trustee insufficiently

pleads the avoidability of the initial transfers of customer property; (3) the Trustee insufficiently

pleads that the subsequent transfers contain customer property; (4) Natixis took the transfers in

good faith; and (5) the safe harbor provision of 11 U.S.C. § 546(e) ("Section 546(e)") bars the

Trustee's claims.  These arguments fail again here.

First, the Court has personal jurisdiction over Natixis, and Natixis waived any right to argue

otherwise when it failed to raise the lack of personal jurisdiction defense in its first motion to

dismiss filed years ago in response to the Trustee's initial complaint.  Notwithstanding waiver, the

Court has jurisdiction because of Natixis's many contacts with this forum.  As pleaded in the

Amended Complaint, Natixis purposefully invested with BLMIS through Sentry—which is in

---

[1] The Trustee also asserts claims to recover over $35 million of customer property transferred from Sentry to co-defendant Tensyr.  Am. Compl. ¶ 7, *Picard v. Natixis S.A. (In re Madoff)*, Adv. Pro. No. 10-05353 (CGM) (Bankr. S.D.N.Y. Jan. 31, 2023), ECF No. 193.  Unless otherwise indicated, all ECF references herein refer to the above-captioned case.

itself enough to establish jurisdiction.  In addition, Natixis repeatedly partnered with the Fairfield

Greenwich Group ("FGG"), a New York-based entity, to create notes programs based on Sentry's

returns and to form and operate Tensyr, a Sentry investment vehicle.  In connection with these

ventures, Natixis worked, met, and communicated with FGG and other third parties in New York.

Natixis also repeatedly used New York bank accounts in connection with its Sentry investments.

These contacts more than suffice to establish jurisdiction.

Second, the Trustee sufficiently pleads the avoidability of the initial transfers of customer

property to Sentry.  While Natixis argues that the Trustee improperly incorporates pleadings from

the related Sentry proceeding, this Court has repeatedly rejected this argument, instead finding

incorporation by reference both efficient and sufficient to plead avoidability.  Third, the Court has

rejected arguments like Natixis's that the Trustee failed to allege that the defendant's subsequent

transfers comprised customer property.  The Amended Complaint outlines the relevant pathways

through which customer property was transferred from BLMIS to Sentry and then to Natixis.  No

more is required.  Fourth, the Court has ruled that a subsequent transferee's good faith defense is

a fact-based affirmative defense that may not be asserted on a motion to dismiss.  Fifth, the Court

has ruled that Section 546(e) does not apply to claims like those against Natixis, where the Trustee

has pleaded that Sentry had actual knowledge of the BLMIS fraud.

In seeming recognition of the futility of these arguments, Natixis asserts one last one—that

because its affiliate invested in another BLMIS feeder fund, Alpha Prime Fund Ltd. ("Alpha

Prime"), a 2022 settlement agreement ("Settlement") between Alpha Prime and the Trustee

releases Natixis from the Trustee's claims to recover subsequent transfers of customer property

made to Natixis from Sentry.  While novel, this argument fares no better than Natixis's others.

The Settlement has nothing to do with transfers of customer property from Sentry. The Settlement resolved the Trustee's claims for the transfers of BLMIS customer property received by Alpha Prime, the treatment of Alpha Prime's customer claim, and Alpha Prime's claim under Section 502(h) of the Bankruptcy Code. For finality, the Settlement included a provision ("Release") that released certain third parties from claims for transfers of customer property from Alpha Prime only. Natixis asserts the Release is far broader and extends to any claim for subsequent transfers from any initial transferee, provided that the subsequent transferee is or is affiliated with an Alpha Prime shareholder. To make its argument, Natixis selectively quotes and misconstrues language from the Release that, out of context, may read broadly. But under New York law, single clauses are not construed in a vacuum, and a release must be interpreted to give effect to the intentions of the parties to the overall agreement.

Here, there is no question that the Trustee and Alpha Prime intended that the Release be limited to claims for transfers from Alpha Prime only. That intent is abundantly clear from the language of the Settlement itself, the consideration exchanged for it, and statements about the Settlement made by the Trustee and Alpha Prime to Natixis and the Court. Moreover, the Court has approved the Settlement as fair, reasonable, and in the best interests of the BLMIS customer property estate. That approval would be inconceivable if the Settlement were as broad as Natixis claims, because the Settlement would then needlessly deprive the BLMIS estate of hundreds of millions of dollars in potential recovery. Nevertheless, Natixis tells this Court to apply an interpretation of the Settlement that the parties to the Settlement vehemently oppose and that only Natixis—a stranger to the Settlement—champions. New York law requires otherwise.

For these reasons, as explained more fully below, the Trustee respectfully requests that the Court deny Natixis's Motion.

**BACKGROUND**

## I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS until its collapse in 2008.  Am. Compl. ¶ 64, ECF No. 193.  BLMIS operated three principal business units, one of which was an investment advisory business ("IA Business").  *Id*. ¶ 66.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy ("SSC Strategy") that involved: (1) investing in a basket of stocks from the S&P 100 Index; (2) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (3) purchasing U.S. Treasury bills when the money was out of the market.  *Id*. ¶¶ 77, 79–82.  In reality, the IA Business was a Ponzi scheme.  *Id*. ¶¶ 57, 77.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal fraud and securities laws.  *Id*. ¶ 52.

Madoff perpetrated a multi-billion dollar scam through BLMIS.  *Id*. ¶¶ 70–71, 94.  The extensive financial damage he caused was fueled by BLMIS "feeder funds"—large investment funds that funneled investors' funds into BLMIS.  *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209 (2022).  Sentry, a fund created, managed, and controlled by New York-based FGG, was the largest BLMIS feeder fund.  Am. Compl. ¶ 4; Second Am. Compl. ¶¶ 79, 88, *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Fairfield SAC").  Alpha Prime and Groupement Financier Limited ("Groupement") were two other BLMIS feeder funds. Compl. ¶ 211, ECF No. 1.

## II.    NATIXIS, ITS BUSINESS WITH FGG, AND ITS INVESTMENTS IN SENTRY

Natixis is a French corporate and investment bank that invested with BLMIS through Sentry.  Am. Compl. ¶¶ 4, 14.  Natixis entered into subscription agreements with Sentry that provided for New York venue, jurisdiction, service of process, and choice of law.  *Id*. ¶ 46.  Natixis

also agreed to, and did, deliver subscription funds to an HSBC Bank USA correspondent bank account in New York. *Id.* ¶ 48. Those funds were then deposited into BLMIS's account at JPMorgan Chase Bank in New York. *Id.* Natixis also used a New York bank account with Deutsche Bank Trust Company Americas ("DB Americas") in connection with its Sentry investments. *Id.* ¶ 49.

In each subscription agreement it executed, Natixis affirmed that it had received and read Sentry's private placement memorandum ("PPM"). *Id.* ¶ 31. The PPM identified the many ways Natixis transacted business in New York and the United States through its Sentry investments. For example, the PPMs disclosed that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS was Sentry's investment adviser; (3) BLMIS was registered with the U.S. Securities and Exchange Commission ("SEC"); (4) BLMIS was the executing broker for Sentry's investments and operated and executed the SSC Strategy on the fund's behalf; (5) BLMIS's SSC Strategy involved the purchase of U.S. equities and U.S. options; (6) BLMIS was the custodian of Sentry's investments with BLMIS; and (7) BLMIS was "essential" to Sentry's operation. *Id.* ¶ 32.

Beyond its own Sentry investments, Natixis worked with New York-based FGG to create and market structured notes based on Sentry's performance. *See id.* ¶¶ 107–14. Natixis and FGG also organized and operated Tensyr, a Sentry investment vehicle that issued similar notes based on Sentry's performance. *Id.* ¶ 98. In connection with these structured notes programs, which generated substantial fees for both FGG and Natixis, Natixis attended meetings in New York and communicated extensively with New York-based third parties. *Id.* ¶¶ 40–41, 43.

## III.   PROCEDURAL HISTORY

### A.   Fairfield Litigation

In May 2009, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover approximately $3 billion in fraudulent transfers of customer

property. *See* Fairfield SAC ¶¶ 12–26; Am. Compl. ¶ 115.  In 2011, the Trustee settled with Sentry

and others.  Am. Compl. ¶ 116.  As part of the settlement, Sentry consented to a judgment in the

amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate.  *Id.*;

Order, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. June 7, 2011),

ECF No. 92.  The Trustee then commenced adversary proceedings against subsequent transferees,

like Natixis, to recover the remainder.

     **B.**    **Alpha Prime Litigation**

     In July 2009, the Trustee filed an adversary proceeding against Alpha Prime and others

seeking, *inter alia*, avoidance and recovery of $83,170,000 in initial transfers Alpha Prime

received from BLMIS: $76,450,000 transferred during the two years prior to the December 2008

filing date ("Alpha Prime Two-Year Transfers"); and $6,720,000 in the period between two and

six years prior to that filing date ("Alpha Prime Six-Year Transfers").  Mot. to Approve Settlement,

*Picard v. HSBC Bank PLC (In re Madoff)*, Adv. Pro. No. 09-01364 (CGM) (Bankr. S.D.N.Y. June

23, 2022) ("*Alpha Prime*"), ECF No. 710.  In February 2018, Alpha Prime and the Trustee entered

into a partial settlement agreement, pursuant to which Alpha Prime agreed to pay the Trustee

$76,450,000, and the Trustee agreed to dismiss his claim for the Alpha Prime Two-Year Transfers

and allow 95% of Alpha Prime's customer claim.  *Id.* ¶ 11.

     In June 2022, Alpha Prime and the Trustee entered into the Settlement to resolve their

remaining issues:  (1) the Trustee's claim for the Alpha Prime Six-Year Transfers; (2) whether the

Trustee would pay the remaining 5% of Alpha Prime's customer claim; and (3) whether Alpha

Prime was entitled to a $74.7 million claim under Section 502(h) of the Bankruptcy Code.  *Id.*

Through the Settlement, the Trustee and Alpha Prime resolved these issues and agreed that:

- the Alpha Prime Six-Year Transfers were avoidable and their amount would be determined following discovery and/or during binding mediation between the parties;

- following determination of the amount of the Alpha Prime Six-Year Transfers, the Trustee would dismiss his claim against Alpha Prime;

- the Trustee would make a $54.6 million distribution payment towards Alpha Prime's customer claim;

- Alpha Prime would continue to cooperate in the Trustee's discovery; and

- Alpha Prime would share with the Trustee potential recoveries in Alpha Prime's own case against service providers that worked with Alpha Prime in its relationship with BLMIS.

*See* Settlement, Cioffi Decl., Ex. 4, ECF No. 200–5.

The Settlement also contained a Release, which stated in part that: "In consideration for the terms herein," the Trustee would release "Alpha Prime and Alpha Prime Asset Management LTD and its . . . direct and indirect shareholders" from "all past, present or future actions . . . arising out of or in any way related to Madoff or BLMIS." *Id.* ¶ 7.

On June 23, 2022, the Trustee and Alpha Prime moved this Court to approve the Settlement, which the Court did on July 10, 2022. Order, *Alpha Prime*, ECF No. 715.

### C. Natixis Litigation

In December 2010, the Trustee filed a complaint against Natixis and related entities, including Tensyr, Natixis Financial Products LLC ("Natixis FP") and Bloom Asset Holdings ("Bloom") (collectively, the "Natixis Parties") to recover subsequent transfers they received from certain BLMIS feeder funds including Sentry, Alpha Prime, and Groupement. *See generally* Compl., ECF No. 1. Natixis moved to dismiss in July 2011. Mot. to Dismiss, ECF Nos. 18–21. For years thereafter, the case was stayed while issues pertinent to this case, including those related to extraterritoriality and international comity, were heavily litigated. *See* Notice of Presentment, ECF No. 75. In January 2023, the Trustee and the Natixis Parties agreed that this action would be amended to include only Natixis and Tensyr as defendants, and that the Trustee would file a new action against Natixis FP and Bloom. Stipulation and Order, ECF No. 192. On January 31, 2023,

the Trustee filed the Amended Complaint against Natixis and Tensyr seeking approximately $214

million in subsequent transfers they received from Sentry.  *See* Am. Compl.  On March 1, 2023,

he commenced an action against Natixis FP and Bloom seeking approximately $234 million in

subsequent transfers they received from Groupement.  Compl., *Picard v. Natixis Financial*

*Products LLC (In re Madoff)*, Adv. Pro. No. 23-01017 (CGM) (Bankr. S.D.N.Y. Mar. 1. 2023),

ECF No. 1.

Prior to filing its Motion, Natixis informed the Trustee that it intended to argue that Natixis

had been released from the Natixis/Sentry Claims through the Release.  Mot. at 14 n.11.  The

Trustee responded, with Alpha Prime copied:

> [T]he Trustee and Alpha Prime agree that the [Settlement] was <u>not</u>
> intended to and did <u>not</u> release existing defendants of anyone else
> from claims other than those concerning direct or indirect transfers
> of <u>money from Alpha Prime</u>.  Put another way, the [Settlement]
> discharged certain entities from claims only concerning direct or
> indirect transfers from Alpha Prime and not for any claims that the
> Trustee otherwise has or may have.

Cioffi Decl., Ex. 21, ECF No. 200–20; *see also* Decl. of Peter Fischer ¶¶ 5–10, dated June 12,

2023 ("Fischer Decl.")[2] (confirming that the parties' intent was that the Settlement released only

claims for Alpha Prime transfers and that claims arising from transfers from Sentry were never

part of the negotiations for, or the meaning of, the Settlement).

## <u>ARGUMENT</u>

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER NATIXIS

This Court has personal jurisdiction over Natixis for two reasons.  First, Natixis waived the

defense of lack of personal jurisdiction by failing to assert it in its previous motion to dismiss.

---

[2] The Trustee submits one declaration in response to Natixis's own submission of extrinsic evidence for its affirmative
defense of release.  *See* Cioffi Decl. ¶¶ 5–6, 9, 21, ECF No. 200.  Natixis has neither requested nor presented notice
that the Motion be converted to a motion for summary judgment, and the Trustee considers conversion unnecessary.
He reserves the right to present additional materials as to this issue at a later stage of this litigation if needed.

Second, irrespective of its waiver, Natixis purposefully directed its activities in this forum, the Natixis/Sentry Claims relate to those activities, and the Court's exercise of jurisdiction over Natixis is reasonable.

### A.    Natixis Waived the Lack of Personal Jurisdiction Defense By Failing to Raise It in Its Prior Motion to Dismiss

Natixis waived any personal jurisdiction defense when it failed to raise the defense in its 2011 motion to dismiss the Trustee's first complaint.  *See* Mot. to Dismiss, ECF No. 21; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading"); *Hartling v. Woodloch Pines, Inc.*, No. 97 Civ. 2587, 1998 WL 575138, at *1 (S.D.N.Y. Sept. 8, 1998) ("A defendant who wishes to raise the defense of no personal jurisdiction . . . must do so in its first defensive move, be it a Rule 12 motion or an answer.").  The Trustee's filing of an amended complaint does not revive Natixis's ability to raise a defense waived prior to that amendment.  *See Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987) (holding that the lack of personal jurisdiction defense, "if waived by defendant's failure to raise [the] objection[] in response to the original complaint, may not be resurrected merely because a plaintiff has amended the complaint"), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988);  *Ross v. United States*, 574 F. Supp. 536, 539 (S.D.N.Y. 1983) ("Once waived, [defendant] cannot resurrect the defenses merely because plaintiff amended his complaint."); *see also* Wright & Miller, Federal Practice & Procedure § 1388 (3d ed. 2021) (same).

Accordingly, Natixis cannot now raise the lack of personal jurisdiction defense.

**B.**    **Natixis Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the Jurisdiction**

Regardless of Natixis's waiver, this Court has personal jurisdiction over Natixis because Natixis had numerous and purposeful contacts with New York, the Natixis/Sentry Claims arise from those contacts, and this Court's jurisdiction over Natixis is reasonable. *See, e.g.*, *Picard v. Nomura Int'l PLC*, Adv. Pro. No. 11-02759 (CGM), 2023 WL 3113188, *2–5 (Bankr. S.D.N.Y. Apr. 26, 2023) (finding personal jurisdiction over defendant because the Trustee alleged that defendant had purposeful contacts with New York, the claims were "affiliated with the alleged in-state contact," and the Court's exercise of jurisdiction was reasonable).

**1.**    **Natixis's Contacts with New York Support Personal Jurisdiction**

Natixis: (1) purposefully invested in Sentry knowing and intending that its investments would be with BLMIS in New York; (2) executed subscription agreements in connection with those investments, in which it agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions; (3) worked with New York-based FGG to create notes programs linked to Sentry's performance; (4) used New York bank accounts to transact with Sentry; and (5) formed and operated Tensyr with New York-based FGG as a Sentry investment vehicle. *See* Am. Compl. ¶¶ 21–51. These contacts provide a basis for this Court's jurisdiction.

**a.**    **Natixis's Purposeful Investments with BLMIS Establish Sufficient Contacts to Support Personal Jurisdiction**

This Court has found that the Trustee sufficiently alleges personal jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Sentry.'" *Picard v. Banca Carige S.p.A. (In re Madoff)*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at *2 (Bankr. S.D.N.Y. June 30, 2022); *see also Picard v. Barfield Nominees (In re Madoff)*, Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915, at *2 (Bankr. S.D.N.Y. Sept. 28, 2022) (same). The Trustee has done that here. Am Compl. ¶¶ 29–37 (detailing Natixis's

10

investments in Sentry while knowing, *inter alia*, that by doing so, it was investing with BLMIS and in U.S. securities).

While the Trustee's allegations about Natixis's Sentry investments suffice to establish personal jurisdiction, there are others that further establish that jurisdiction is proper. For example, the Trustee's allegations regarding Natixis's subscription agreements with Sentry—in which Natixis submitted to venue in New York, the jurisdiction of New York courts, service of process from New York courts, and the application of New York law—support personal jurisdiction by evidencing a "strong nexus with New York." *See Picard v. Bureau of Lab. Ins. (In re Madoff)*, 480 B.R. 501, 517 n.15 (Bankr. S.D.N.Y. 2012) ("*BLI*"). While Natixis argues that these clauses are irrelevant, Mot. at 20, this Court has held otherwise. *See, e.g.*, *Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 641 B.R. 78, 88 n.3 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy I*") (noting that the defendant's agreement to submit to the jurisdiction of the Court is certainly a relevant factor in its jurisdictional analysis); *Picard v. Royal Bank of Can. (In re Madoff)*, 650 B.R. 524, 537–40 (Bankr. S.D.N.Y. 2023) (finding that executing subscription agreements "show[s] that those defendants were willing to, and knew that they could, face litigation in New York courts").

Natixis's reliance on inapplicable case law does not affect the jurisdictional analysis here. Natixis cites *Walden v. Fiore*, 571 U.S. 277 (2014), arguing that the Trustee's theory of jurisdiction inappropriately relies on Sentry's contacts with New York. Mot. at 19. However, as this Court has held, *Walden* is of "no assistance" to defendants like Natixis who invested in a feeder fund with the specific goal of investing with BLMIS in New York. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 87. Natixis's reliance on *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011), is equally unavailing because the Trustee is not contending the Court has jurisdiction over Natixis

11

based on the "stream-of-commerce" theory that was rejected in *McIntyre*. Mot. at 19. The Trustee

alleges that Natixis took actions in, and intentionally toward, New York and the United States.

> **b.    Natixis's Creation of the Notes Program, Through Which Natixis Invested in Sentry, Supports Personal Jurisdiction**

Personal jurisdiction is also proper because of the Trustee's allegations that Natixis

collaborated with New York-based FGG in creating, operating, and marketing its structured notes

program for which Sentry served as reference fund, and which provided Sentry-based returns for

investors and fees for Natixis and FGG. Am Compl. ¶¶ 107–108, 110. This type of close business

relationship and joint effort with FGG justifies jurisdiction. *See Picard v. Parson Fin. Pan. S.A.*

*(In re Madoff)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *3–5 (Bankr. S.D.N.Y.

Aug. 3, 2022) (finding a foreign defendant's business relationship with FGG for over two years

supported jurisdiction); *see also Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 383

(S.D.N.Y. 2019) (finding that a defendant avails itself of the privileges of transacting business in

New York through a continuous relationship with a New York entity).

Natixis asserts that the Trustee's allegations regarding the notes program merely plead

incidental marketing for non-U.S. based business activity and therefore cannot support personal

jurisdiction. Mot. at 23. Natixis mischaracterizes the Trustee's allegations. Natixis's

collaboration with FGG was not an "incidental" consequence of foreign business activity. Natixis

engaged in purposeful activity with a New York entity, FGG, and the notes issued were linked to

the performance of BLMIS's largest feeder fund, Sentry—a fund that was created, operated, and

controlled by FGG, that invested almost entirely with New York-based BLMIS, and that

transferred to Natixis the subsequent transfers sought by the Trustee. Am. Compl. ¶¶ 4, 8.

c.  **Natixis's Repeated and Purposeful Use of New York Bank Accounts Supports Personal Jurisdiction**

This Court has jurisdiction over Natixis because it purposefully used the New York banking system for its Sentry investments.  *See* Am. Compl. ¶¶ 48–49, 51; *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 & n.18 (S.D.N.Y. 2016) ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].").  Natixis used an HSBC Bank USA account in New York and a New York account at DB Americas in connection with its Sentry investments.  Am. Compl. ¶ 48.  Such use is sufficient to establish personal jurisdiction.  *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *Eldesouky v. Aziz*, No. 11–CV–6986, 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York longarm statute based solely on defendant's use of New York account to receive payment at issue).

That these New York bank accounts were correspondent accounts does not change the analysis.  The New York Court of Appeals held in *Licci v. Lebanese Canadian Bank, SAL* that the defendant's purposeful use of a correspondent account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established." 984 N.E.2d 893, 899–900 (N.Y. 2012).  That Sentry required use of its New York account is likewise irrelevant because Natixis was "free to accept or reject the proposed terms." *Bahrain Islamic Bank, BisB v. Arcapita Bank B.S.C.(C) (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604,

617–18 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual term designating New York correspondent account supported personal jurisdiction).

> ### d.  Natixis's Creation and Operation of Tensyr, a Sentry Investment Vehicle, Supports Personal Jurisdiction

Natixis's further exploitation of BLMIS and Sentry through Tensyr (which generated additional fees for Natixis and FGG) also supports jurisdiction. Am. Compl. ¶¶ 7, 22, 98. The Tensyr Ratings Memo, which Natixis drafted to promote Tensyr, shows that Natixis targeted New York and the United States by creating and operating Tensyr. The Tensyr Ratings Memo specified BLMIS's New York location and operations, its SEC and National Association of Securities Dealers' registrations, its 275 New York City employees, and its purported purchases of U.S. securities. *Id*. ¶¶ 33–36. The Memo also detailed work conducted by Madoff and FGG—both in New York—for Sentry. *Id*. ¶ 33. By establishing an investment vehicle designed to generate profits from BLMIS in New York, Natixis subjected itself to jurisdiction in this Court. *See BLI*, 480 B.R. at 517 (holding that the defendant "purposefully availed itself of the benefits and protections of New York laws" by investing in Sentry).

Natixis engaged in other significant New York-based activities in connection with its work on Tensyr, such as attending meetings in New York, including those with FGG. Am. Compl. ¶¶ 40–41. Natixis and FGG drafted talking points for a meeting with Madoff in New York to persuade him to approve Tensyr's creation. *Id*. ¶ 42. Natixis also extensively communicated through calls and emails with FGG's New York-based personnel regarding Tensyr. *Id*. ¶ 43. These contacts further support a finding of the Court's jurisdiction over Natixis. *Parson Fin. Pan.*, 2022 WL 3094092, at *3–5 (finding personal jurisdiction where foreign defendant regularly called, corresponded, and met with FGG in New York regarding Sentry and BLMIS).

2. **Natixis's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims**

The Trustee's claims "arise out of or relate to" Natixis's contacts with New York and the United States. The Court has repeatedly held that the Trustee's recovery actions against subsequent transferees like Natixis are "directly related to [their] investment activities with Fairfield [Sentry] and BLMIS." *See Multi-Strategy I*, 641 B.R. at 88; *see also Arcapita*, 549 B.R. at 67–71 (requiring only that the claim is not "completely unmoored" from the transaction). Consistent with this Court's recent decisions, the Trustee's claims here are directly related to Natixis's purposeful investment activities and its Sentry-based notes programs with FGG and Tensyr.

Natixis asserts that its domestic contacts made while creating and operating Tensyr relate only to claims against Tensyr and cannot be used to support personal jurisdiction over Natixis. Mot. at 21–23. However, these contacts (which only comprise a fraction of the Trustee's allegations relevant to jurisdiction) evidence Natixis's overall business plan to profit off of Sentry and BLMIS. They are thus sufficiently "affiliated" with the Trustee's claims seeking transfers from Sentry to Natixis. *See Multi-Strategy I*, 641 B.R. at 88 (holding "the court need only find 'an affiliation between the forum and the underlying controversy'").

3. **The Exercise of Personal Jurisdiction Over Natixis Is Reasonable**

Natixis fails to present a compelling reason why jurisdiction would be unreasonable. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010) (finding "where a plaintiff has made a threshold showing of minimum contacts," the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Natixis is "not burdened by this litigation" as it has "actively participated in this Court's litigation for over ten years," is represented by U.S. counsel, and voluntarily submitted to

the jurisdiction of New York courts and the application of New York law when it signed subscription agreements with Sentry. *See Multi-Strategy I*, 641 B.R. at 88 (holding that the exercise of jurisdiction over subsequent transferee defendant like Natixis is reasonable). In addition, both the forum and the Trustee have a strong interest in litigating the BLMIS adversary proceedings in this Court. *Id*.

Natixis's reference to *Picard v. Hebrew University of Jerusalem*, Mot. at 23, is irrelevant. 650 B.R. 5, 14–21 (Bankr. S.D.N.Y. 2023). In that case, there was an earlier and ongoing litigation in Israel between the Trustee and the *Hebrew University* defendants, which the Court held rendered New York personal jurisdiction over the defendants unreasonable. *Id*. at 20. Here, there is no parallel foreign litigation involving the Trustee and Natixis. Moreover, the defendants in *Hebrew University*, unlike Natixis, were not investors in any BLMIS feeder fund, did not target New York through their indirect investments with BLMIS, neither made nor accepted relevant transfers through New York bank accounts, and received no subscription agreements or PPMs advising them of their interaction with the forum. *See id*. at 11.

It "would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 188 (Bankr. S.D.N.Y. 2018). This is not that "rare" case.

### C.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court were to find that the Trustee has not made a prima facie showing of jurisdiction over Natixis, the Trustee requests jurisdictional discovery, as he has pleaded facts that at least make a "threshold showing" of jurisdiction. *See Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, No. 18-cv-11099, 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020) (holding

that plaintiff was entitled to jurisdictional discovery where plaintiff had made a "sufficient threshold showing toward establishing personal jurisdiction").

## II.    THE TRUSTEE SUFFICIENTLY ALLEGES THE AVOIDABILITY OF THE INITIAL TRANSFERS TO SENTRY

The Amended Complaint sufficiently pleads the avoidability of the initial transfers to Sentry.  Natixis disagrees, arguing that the Trustee's incorporation by reference of the Fairfield SAC for this point is impermissible.  Again, Natixis blatantly ignores this Court's rulings that hold otherwise.

The Court has repeatedly held that the Trustee may incorporate the Fairfield SAC to demonstrate the avoidability of Sentry initial transfers.  *See, e.g.*, *Picard v. SNS Bank N.V. (In re Madoff)*, Adv. Pro. No. 12-01046 (CGM), 2023 WL 2395734, at *7 (Bankr. S.D.N.Y. Mar. 7, 2023); *Banca Carige*, 2022 WL 2387522, at *6–7.  In *Multi-Strategy I*, for example, the Court held that "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)."  641 B.R. at 91.

The Court has also rejected Natixis's related argument that, by incorporating the Fairfield SAC, the Trustee fails to provide Natixis with the "requisite guidance" needed to respond to the Amended Complaint.  Mot. at 24–25.  Natixis can admit the allegations of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny.  The Amended Complaint provides Natixis with the "guidance" necessary to respond to the Trustee's claims against it and places no undue burden on it or the Court.  *See SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013) (finding that the Trustee's complaint, which incorporated by refence the complaints against the feeder funds, sufficiently pleaded the avoidability of the initial transfers).

17

And, regardless of incorporation, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). The Court may therefore take judicial notice of the operative Fairfield SAC and its prior decision that the complaint there sufficiently alleged the avoidability of the initial transfers from BLMIS. *See Picard v. Fairfield Inv. Fund, Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021).

The Amended Complaint sufficiently alleges the avoidability of the initial transfers from BLMIS to Sentry.

## III. THE TRUSTEE SUFFICIENTLY ALLEGES THAT NATIXIS RECEIVED BLMIS CUSTOMER PROPERTY

The Amended Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Natixis received subsequent transfers of stolen BLMIS customer property from Sentry. Natixis makes arguments to the contrary, asserting that: the Trustee has not tied the subsequent transfers to specific initial transfers; the Trustee's aggregated claims to recover Sentry subsequent transfers across all adversary proceedings exceed the total amount Sentry received in initial transfers; and Sentry exhausted all BLMIS customer property on hand before paying redemptions to Natixis. Mot. at 25–29. As explained below, the Court has repeatedly rejected these arguments in similar cases.

### A. The Trustee Plausibly Alleges That All of the Subsequent Transfers Natixis Received Contained Stolen BLMIS Customer Property

To plead a claim to recover subsequent transfers, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) (citation omitted). Natixis asserts otherwise, arguing the Trustee must trace and tie each subsequent transfer Natixis received to a specific initial

transfer from BLMIS. Mot. at 26. The Court has repeatedly rejected this argument, instead holding that the Trustee need not perform a tracing analysis or present a dollar-for-dollar accounting of the exact funds at issue. *Multi-Strategy I*, 641 B.R. at 90. Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012); *see also Picard v. Korea Exch. Bank (In re Madoff)*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *11 (Bankr. S.D.N.Y. Sept. 21, 2022) (finding that the Trustee need not detail the portion of each subsequent transfer that comprises customer property, but need only assert "allegations that make it seem plausible that [the transferee] received BLMIS monies"); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

The Trustee has done that here. The Amended Complaint alleges that Natixis received transfers, identified by date and amount from Sentry, and that Sentry invested all or substantially all of its funds with BLMIS. Am. Compl. ¶¶ 3–9, 49, 107–25, 131–34, Exs. A, B, C. No more is required. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 95 (holding that the Trustee's exhibits suffice to provide defendants with the necessary "who, when, and how much" of each transfer).

### B.    Natixis's Remaining Implausibility Arguments Fail on a Motion to Dismiss

Natixis's remaining arguments that the subsequent transfers it received were not customer property also fail. Mot. at 26–29.

First, Natixis argues it is "mathematically impossible" that these subsequent transfers contained BLMIS customer property because the Trustee is seeking more money from all of

Sentry's subsequent transferees than what Sentry withdrew from BLMIS.  Mot. at 3, 26–27.  This argument misses the point.  While there is no dispute that the Trustee is limited to "'a single satisfaction' under § 550(a)," he may still "pursue any and all subsequent transferees in order to achieve that satisfaction."  *Multi-Strategy I*, 641 B.R. at 95 (citing § 550(d)).  Until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee is free to seek recovery from any and all Sentry subsequent transferees, including Natixis.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12.

Second, Natixis claims that its subsequent transfers lacked customer property because Sentry supposedly had sources other than BLMIS to fund them.  Mot. at 27.  However, Natixis does not disclose the tracing methodology used to reach this conclusion—and for good reason.  Only this Court can decide, after fact and expert discovery, the appropriate tracing methodology to use in these adversary proceedings.  *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7.

Third, Natixis asserts that Sentry exhausted all BLMIS customer property on hand before paying redemptions to Natixis, thereby assuming that all subsequent transfers that preceded those to Natixis were comprised solely of customer property.  Mot. at 28–29.  In support, Natixis relies entirely on exhibits to pleadings in other proceedings.  *Id.*; Cioffi Decl. ¶¶ 18–29, Exs. 17–20, ECF No. 200.  However, these exhibits do not establish that certain transfers contained no customer property.  Nor, at this stage of the proceedings, is the Trustee is required to plead, let alone prove, that a subsequent transfer is comprised entirely of customer property.  *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (holding that even if debtors' funds were commingled with subscribing investors' funds, a trustee is not required to establish at the summary judgment stage that transfers "originated solely" with the debtor or to account for "the exact funds at issue").

20

At best, Natixis's arguments are premature.  *Merkin*, 515 B.R. at 151 (denying motion to dismiss because "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants").  Even after fact discovery, expert opinion is necessary to determine what amount of customer property a defendant may have received through a commingled account.  *See Picard v. Merkin (In re Madoff)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because the trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

The Trustee sufficiently alleges that the subsequent transfers from Sentry to Natixis comprised BLMIS customer property.

## IV.    THE GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE PLEADING STAGE

Although this Court has repeatedly rejected the "good faith" affirmative defense at this pleading stage, Natixis makes the same argument, hoping this time it will stick.  It does not.

Affirmative defenses are fact-driven and require factual analyses and the presentation of evidence.  *See, e.g.*, *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).  This Court has made clear that a defendant's good faith affirmative defense in particular can only be determined after discovery has closed.  *Picard v. First Gulf Bank (In re Madoff)*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *10 (Bankr. S.D.N.Y. July 18, 2022) ("This affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint.").

Nevertheless, Natixis argues that the issue is ripe now because the Amended Complaint itself supposedly pleads that Natixis was not on inquiry notice of Madoff's fraud, and that Natixis received Sentry redemptions for value. Mot. at 31–32. But this type of argument applies only in the limited instance where an "insuperable bar to securing relief" is set forth on the face of the complaint. *Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011). That is not this case.

For example, even if it were appropriate to consider such arguments now, the SEC's failure to detect Madoff's fraud (Mot. at 35) is not dispositive as to Natixis's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and the failure by others—including the SEC—to detect the Ponzi scheme). Natixis is a sophisticated party capable of its own investigations and diligence on investments—what it knew or ignored is a factual issue for discovery. Value is likewise a fact-driven defense. *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial."). To the extent Natixis argues that it gave value for its subsequent transfers because they were given in exchange for Sentry share redemptions, the Court has already held that this argument cannot be decided at this stage. *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (holding that whether subsequent transfer defendants "'gave value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage").

In sum, Natixis's good faith defense is inappropriate for a final determination now.

## V.    SECTION 546(e) DOES NOT BAR RECOVERY FROM NATIXIS

Natixis argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pleaded

Sentry's actual knowledge.  Mot. at 35–39.  However, Natixis received all of the subsequent

transfers at issue less than two years before the filing date, Am. Compl., Ex. C, so even if Natixis

were correct about the applicability of Section 546(e) (which it is not), the Amended Complaint

would not be dismissed.  *See infra* Section V.C. (establishing that the Section 548(a)(1)(A)

exception to Section 546(e) applies).  Moreover, regardless of timing, this Court has repeatedly

rejected Natixis's argument, *see, e.g.*, *Multi-Strategy I*, 641 B.R. at 92–95, as has the District Court.

*See Picard v. Multi-Strategy Fund Ltd.*, Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-

07189, 22-cv-07195, 22-cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov.

3, 2022) ("*Multi-Strategy II*") (denying interlocutory appeal of this Court's decisions denying

seven motions to dismiss under Section 546(e), finding no reasonable grounds for disagreement as

to this Court's orders); *Koch Indus., Inc. v. Picard (In re BLMIS)*, No. 23-CV-0294 (VEC), 2023

WL 3317926, at *4 (S.D.N.Y. May 9, 2023) (denying direct appeal and interlocutory appeal

because, among other things, this Court's decision is consistent with controlling law on the Section

546(e) issue).  These decisions are controlling, and Natixis cannot distinguish them.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Natixis argues that Section 546(e) applies to the Natixis/Sentry Claims because Sentry is a

"financial institution" and initial transfers to Sentry were settlement payments made in connection

with a securities contract.[3]  Mot. at 36.  Natixis's argument is incorrect.  The Trustee sufficiently

pleaded that Sentry had actual knowledge of Madoff's fraud.  *See* Am. Compl. ¶ 119; *see also*

*supra* Section II.  As such, Section 546(e) does not bar avoidance of initial transfers to Sentry, and

---

[3] The Trustee does not concede that any agreements or transfers between Natixis and Sentry activate the safe harbor
under Section 546(e) or that any transferor or transferee is a "financial institution" or "financial participant" within
the meaning of the safe harbor.  These issues are not relevant, however, because the avoidability of the initial
transfers from BLMIS to Sentry turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the
Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial
transfers were "in connection with" the subscription agreements with Natixis or "for the benefit of" Natixis.

those transfers may be recovered from Natixis regardless of whether Sentry or Natixis are financial

institutions, their agreements are securities contracts, or their transfers are settlement payments.[4]

See *Multi-Strategy I*, 641 B.R. at 92–93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).

### B.    Section 546(e) Does Not Apply Independently to Recovery Actions

Natixis is wrong that the Section 546(e) safe harbor applies separately to subsequent

transferees. Mot. at 35, 38–39. This Court has explicitly held that Section 546(e) "is not applicable

to subsequent transfers," and a subsequent transferee like Natixis is "not permitted to raise the safe

harbor defense on its own behalf as a subsequent transferee." *Multi-Strategy I*, 641 B.R. at 94–

95; *First Gulf Bank*, 2022 WL 3354955, at *10; *see also Koch Indus.*, 2023 WL 3317926, at *4

(quoting from *Multi-Strategy II* that "the Safe Harbor, by its terms, applies only to the 'initial

transfer'"). Natixis thus cannot independently claim protection under Section 546(e).

### C.    The Section 548(a)(1)(A) Exception to the Safe Harbor Applies

Natixis also argues that the Trustee cannot rely on the Ponzi scheme presumption to plead

BLMIS's fraudulent intent, and therefore the Section 548(a)(1)(A) exception to the Section 546(e)

safe harbor does not apply. Mot. at 36–38. Natixis is again wrong.

"[T]he Ponzi scheme presumption remains the law of this Circuit." *First Gulf Bank*, 2022

WL 3354955, at *10. This Court and the District Court have repeatedly held that the Trustee may

rely on the Ponzi scheme presumption to demonstrate BLMIS's actual intent to hinder, delay, or

defraud creditors. *See, e.g.*, *Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*, 650 B.R. 24, 39

(Bankr. S.D.N.Y. 2023) ("That BLMIS operated as a Ponzi scheme is well-established and the

---

[4] Natixis also argues that Section 546(e) applies based on separate agreements between Natixis and Sentry (Mot. at 36 n.27), but this similarly provides no basis for granting the Motion. The District Court addressed this hypothetical and confirmed that any such application of the Section 546(e) safe harbor is "fact-intensive," not "answerable on the pleadings," and best addressed "with a full factual record" before the court. *Multi-Strategy II*, 2022 WL 16647767, at *8–9.

Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue.") (citations omitted).  Here, as in other adversary proceedings, the allegations in the Amended Complaint regarding the BLMIS Ponzi scheme, Am. Compl. ¶¶ 70–95, suffice to plead the avoidability of the relevant transfers.  *See, e.g.*, *Picard v. UBS Eur. SE (In re Madoff)*, Adv. Pro. No. 12-01577 (CGM), 2023 WL 2290822, at *12 (Bankr. S.D.N.Y. Feb. 28, 2023).[5]

Independent of the Ponzi scheme presumption, the Amended Complaint alleges BLMIS's fraudulent intent through multiple "badges of fraud" sufficient to satisfy Rule 9(b).[6]  *See, e.g.*, Am. Compl. ¶¶ 68–78, 86–87, 90–91, 95.  The Amended Complaint states that: BLMIS commingled customer funds and used them not to purchase securities, but to pay other customers, *id.* ¶¶ 64–95; BLMIS filed false audit reports, *id.* ¶¶ 72–73; BLMIS filed false reports with the SEC, *id.* ¶¶ 68–69; BLMIS was insolvent at all relevant times, *id.* ¶ 95; and that the IA Business had no legitimate business operations, and the proprietary trading business incurred significant losses, requiring fraudulent infusions of cash from the IA Business to continue.  *Id.* ¶¶ 70–71, 77, 95.  This Court has found that such allegations sufficiently demonstrate BLMIS's actual fraudulent intent under Section 548(a)(1)(A).  *See ABN AMRO*, 650 B.R. at 39–40; *Picard v. JABA Assocs. LP (In re Madoff)*, 528 F. Supp. 3d 219, 236–238 (S.D.N.Y. 2021).

The Amended Complaint pleads BLMIS's fraudulent intent; Section 546(e) does not require dismissal of the Natixis/Sentry Claims.

---

[5] The Trustee's allegations regarding Madoff's Ponzi scheme also satisfy the pleading burden under Rule 9(b).  *See ABN AMRO*, 650 B.R. at 38 ("Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied.").

[6] Natixis's citation to *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) on this point is misplaced because, as the Second Circuit has ruled, that case involved a bankruptcy liquidation, not a SIPA liquidation.  *Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184, 200–01 (2d Cir. 2020).

## VI.    THE SETTLEMENT DOES NOT RELEASE NATIXIS FROM THE NATIXIS/SENTRY CLAIMS

Finally, Natixis seeks an undeserved windfall by arguing that it is released from claims to recover Sentry transfers because of the Settlement between the Trustee and Alpha Prime—despite the fact that the Settlement mentions neither Sentry nor Natixis. This argument also fails. Where a third party is not specifically named in an agreement, the third party must establish that its recognition as a third-party beneficiary is "appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 371 (S.D.N.Y. 1997) (citing Restatement (Second) Contracts § 302 (1979)). Natixis cannot meet this burden. *Strauss v. Belle Realty Co.*, 469 N.Y.S.2d 948, 950 (N.Y. App. Div. 1983) ("A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right."). The four corners of the Settlement (and ample extrinsic evidence besides) establish that the Settlement does not release the Natixis/Sentry Claims, nor does the Settlement have <u>any</u> effect on claims related to subsequent transfers from feeder funds other than Alpha Prime.

### A.    The Settlement Establishes That the Release Does Not Apply to the Natixis/Sentry Claims

In New York, the fundamental principle and objective of contract interpretation is to give effect to the intentions of the parties. *See Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001). Thus "a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Id.* The New York Court of Appeals has specifically cautioned that a release should not be read to cover claims that the parties clearly did not intend to waive. *Cahill v. Regan*, 157 N.E.2d 505, 509–10 (N.Y. 1959); *see also Mangini v. McClurg*, 249 N.E.2d

386, 390 (N.Y. 1969) (noting that "the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form."); *Peterson v. Regina*, 935 F. Supp. 2d 628, 636 (S.D.N.Y. 2013) ("Obviously, a release may not be read to cover matters which the parties did not desire or intend to dispose of."). Here, the Settlement unambiguously establishes that the Trustee and Alpha Prime intended that the Trustee release claims for transfers from Alpha Prime only.

### 1.     The Settlement Resolves the Controversy Between the Trustee and Alpha Prime and Does Not Affect Claims for Sentry Transfers

To determine the parties' intent as to the scope of a release in a settlement agreement, the court first looks to the four corners of that agreement, which must be read "as a whole, and every part will be interpreted in reference to the whole." *See, e.g.*, *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 647 (S.D.N.Y. 2004) (citation omitted). Where the release presents a specific context and controversy, "the released claims are interpreted in this light." *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 71 (Bankr. S.D.N.Y. Dec. 31, 2009).

The Settlement explicitly reflects a controversy relating to Alpha Prime's receipt of customer property from BLMIS. The background section describes Alpha Prime's BLMIS account, Alpha Prime's withdrawals from the account, and the customer claim it filed with the Trustee. Settlement §§ D–G. The Settlement details the Trustee's claims against Alpha Prime, in which he sought to recover $83,170,000 of transfers of customer property transferred from BLMIS to Alpha Prime. *Id*. § J. The Settlement references the parties' 2018 settlement, in which certain of the Trustee's claims were settled. *Id.* The Settlement then recounts the Trustee's Second Amended Complaint against Alpha Prime and the remainder of his claims against Alpha Prime

left unresolved by the 2018 settlement. *Id.* § L. There is no mention of an existing dispute between the Trustee and Sentry, Natixis, or any other party other than Alpha Prime.[7]

Because the Settlement makes clear that the controversy being resolved is the one between Alpha Prime and the Trustee regarding transfers to and from Alpha Prime, the only plausible interpretation of the Release is that it covers the Trustee's claims to recover Alpha Prime transfers—not transfers from other funds like Sentry, which is a stranger to the Alpha Prime controversy. *Cahill*, 157 N.E.2d at 509–10 (finding that the meaning and coverage of a release depend on the controversy being settled and the purpose for which the release was given).

### 2.    Following the Doctrine of *Ejusdem Generis*, the Release Cannot Apply to the Natixis/Sentry Claims

The recital of claims in the Settlement also establishes that the Release applies only to claims for Alpha Prime transfers. In New York, courts apply the principle of *ejusdem generis*, by which "the general words of a release are limited by the recital of a particular claim." *Consol. Edison*, 332 F. Supp. 2d at 647–48 (reading a release narrowly where the settlement agreement contained references to a specific dispute) (quoting *Herman v. Malamed*, 487 N.Y.S.2d 791, 793 (N.Y. App. Div. 1985)). In other words, a release will be interpreted in light of the recited claims that precede it. *See, e.g.*, *Toth v. N.Y.C. Dep't of Ed.*, No. 21-CV-4245, 2023 WL 121733, at *6 (E.D.N.Y. Jan. 5, 2023) (limiting release to the recited claims); *Lucent Techs., Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1195 (S.D. Cal. 2007) (finding a release from "any and all claims, controversies, or disputes" unambiguously applied only to claims recited in the opening paragraphs of the release).

---

[7] The only other fund mentioned in the Settlement is Primeo Fund ("Primeo"), which was a co-defendant of Alpha Prime and alleged initial transferee and, later, subsequent transferee of Alpha Prime. *See generally* Am. Compl., *Alpha Prime*, ECF No. 170. As reflected in the Settlement, the Trustee settled with Primeo in 2014, and Alpha Prime took the position that it should receive credit for Primeo's settlement payments. Settlement § K.

Here, the Settlement explicitly resolves certain enumerated "Disputed Issues:" (1) the Trustee's claims to avoid and recover the Alpha Prime Six-Year Transfers totaling $6,720,000; (2) whether Alpha Prime was entitled to a claim under section 502(h) of the Bankruptcy Code; and (3) the Trustee's treatment of the remaining 5% of Alpha Prime's net equity claims. Settlement § J. None of these issues has anything to do with the Natixis/Sentry Claims. The Release cannot, therefore, be interpreted to cover them. *See Vines v. Gen. Outdoor Advert. Co.*, 171 F.2d 487, 492 (2d Cir. 1948) (Hand, J.) ("In a release words of general import, followed or preceded by words relating to specific claims, are, ceteris paribus, limited to the specific claims.").

### 3.    Consideration for the Release Demonstrates It Is Applicable to Alpha Prime Transfers Only

The consideration exchanged by the Settlement parties also demonstrates that the Release applies to claims for Alpha Prime transfers only. *See Consol. Edison*, 332 F. Supp. 2d at 648–50. In *Consolidated Edison*, for example, the court found that a release of "all claims that might have been or might be asserted that arise or potentially arise out of or relate in any way to the Merger Agreement" did not cover a $1.1 billion shareholder claim related to that merger's failure. *Id*. at 646, 650. The court focused on the fact that no monetary consideration had been paid for such a broad release and found it "inconceivable that sophisticated parties informed by counsel would bargain away such a claim without any monetary consideration, and the terms of the release cannot reasonably be read to require such a result." *Id*. at 648–49; *see also Tarantola v. Williams*, 371 N.Y.S.2d 136, 139–40 (N.Y. App. Div. 1975) (considering the amount of consideration received to hold that a certain claim was outside the scope of a generally worded release).

Here, the Trustee's sole claim against Alpha Prime when entering into the Settlement was one for approximately $6.7 million in Alpha Prime Six-Year Transfers. Settlement § J. Yet Natixis argues that—for no upfront monetary payment from Alpha Prime or anyone else—the

Trustee released not only that $6.7 million claim, but every claim for any transfer from any initial transferee to any subsequent transferee, provided that subsequent transferee had, for whatever reason, and directly or indirectly, invested in Alpha Prime at some point.  In other words, Natixis asserts that the Trustee just walked away from his claims for $179 million against Natixis, $234 million against Natixis FP and Bloom, and uncalculated claims for other non-Alpha Prime transfers to any other Alpha Prime investor.  Natixis's assertion is absurd, and should not compel the Court to require such an implausible result.  *In re Corp. Res. Servs., Inc.*, No. 15-1239 (MG), 2019 WL 5095709, at *8 (Bankr. S.D.N.Y. Oct. 10, 2019) (reading release narrowly where it was "inconceivable" that it would have covered such a broad range of claims in light of the consideration exchanged); *Toth*, 2023 WL 121733, at *6 (reading release narrowly where it was unreasonable and "difficult to believe that the plaintiff would bargain away" broader claims for such little consideration).

Nor does Alpha Prime's modest consideration, commensurate with resolving a few issues with the Trustee left over from their 2018 settlement, suggest a release for claims of hundreds of millions of dollars in claims in wholly unrelated disputes.[8]  And Natixis offers no reason why Alpha Prime would seek the release of claims completely unmoored from Alpha Prime transfers when negotiating the Settlement.  There is none.

### 4.    Natixis Ignores the Plain Meaning of the Agreement and Inappropriately Relies on a Single Clause

The primary support for Natixis's competing interpretation of the Release is select text, stripped from its context.  Mot. at 9–12 (quoting the Release as applying to "all past, present or

---

[8] Natixis suggests that Alpha Prime's agreement to share with the Trustee potential proceeds from Alpha Prime's lawsuits against various HSBC entities overseas offers "considerable additional value to the BLMIS estate" (Mot. at 6), but provides no information on what that potential "value" may be.  Furthermore, the Settlement explicitly states that Alpha Prime would be entitled to an offsetting Section 502(h) claim for any recoveries from the HSBC entities. Settlement ¶¶ 1–2(i). Under multiple scenarios, recovery from HSBC would add nothing to the BLMIS estate.

future actions . . . arising out of or in any way related to Madoff or BLMIS").  However, under

New York law, "[s]ingle clauses cannot be construed by taking them out of their context and giving

them an interpretation apart from the contract of which they are a part."  *Chacko v. Costco

Wholesale Corp.*, 568 F. Supp. 3d 487, 495–96 (S.D.N.Y. 2021); *see also Analisa Salon, Ltd. v.

Elide Props., LLC*, 818 N.Y.S.2d 130, 131 (N.Y. App. Div. 2006) (same).  Instead, a release must

be read in the context of the entire agreement in which it appears.  *See, e.g.*, *Consol. Edison*, 332

F. Supp. 2d at 647 (noting the agreement must be read "as a whole, and every part will be

interpreted in reference to the whole" (citation omitted)).  And, when reading the entire contract,

"the court should arrive at a construction that will give fair meaning to all of the language

employed by the parties to reach a practical interpretation of the expression of the parties so that

their reasonable expectations will be realized."  *Petracca v. Petracca*, 756 N.Y.S.2d 587, 588

(N.Y. App. Div. 2003).

These rules of construction are no less true for interpreting a release alleged to benefit a

third party unnamed in the relevant agreement.  *See, e.g.*, *H & C Dev. Grp., Inc. v Miner (In re

Miner)*, 229 B.R. 561 (B.A.P. 2d Cir. 1999) (release did not apply to third party where the record

was devoid of any evidence that the settling parties intended to bestow a benefit on a third party

that gave no consideration under the agreement); *In re Corp. Res. Servs., Inc.*, No. 19 Civ. 10931,

2020 WL 5211044 , at *7–8 (S.D.N.Y. Sept. 1, 2020), *aff'd*, 849 F. App'x 320 (2d Cir. 2021) (a

release of "any and all claims" did not apply to a third party because settlement agreement lacked

the requisite "unambiguous language manifesting an intent to make [that third party] a

beneficiary"); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 418 (S.D.N.Y.

2010) (noting that courts may look at the surrounding circumstances of a contract when

determining third-party beneficiary status).

As explained above, *supra* Section VI.A.1–3, the Settlement read as a whole establishes that the Release is intended to extend to claims for Alpha Prime transfers only. Natixis's exploitation of isolated words from the Release does nothing to change that.

**B.      Extrinsic Evidence Confirms that the Release Does Not Apply to the Natixis/Sentry Claims**

Extrinsic evidence is not required to evaluate an unambiguous agreement. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 2009). However, if the Court deems the Release ambiguous, the extrinsic evidence now before the Court further confirms that the Release was never intended to discharge Natixis from the Natixis/Sentry Claims. *See Consol. Edison*, 332 F. Supp. 2d at 649 (holding that a contractual dispute may be resolved as a matter of law "if the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation"); *see also Golden Pac.*, 273 F.3d at 517 (vacating trial court's decision that a release was unambiguously broad because of "ample extrinsic evidence" supporting party's argument that it did not intend to release those claims).

**1.      The Trustee and Alpha Prime Agree as to the Release's Narrow Scope**

Natixis cites to no New York case—nor is the Trustee aware of one—where both parties to a contract explicitly agree on the scope of its provisions, yet the court accepts a third party's conflicting interpretation to discharge claims against it. Yet Natixis asks this Court to do just that. The Court should decline the invitation.

As reflected in the Motion, once Natixis advised the Trustee of its position that the Release barred the Natixis/Sentry Claims, the Trustee responded unequivocally, with Alpha Prime copied:

> [T]he Trustee and Alpha Prime agree that the [Settlement] was <u>not</u> intended to and did <u>not</u> release existing defendants of anyone else from claims other than those concerning direct or indirect transfers of money from Alpha Prime. Put another way, the 2022 agreement discharged certain entities from claims only concerning direct or

indirect transfers from Alpha Prime and not for any claims that the
Trustee otherwise has or may have.

Cioffi Decl., Ex. 21, ECF No. 200–20.  Alpha Prime has separately confirmed that the scope of
the Release is cabined to claims arising specifically from its own transfers, and that claims
involving transfers by other feeder funds were never part of, or considered while negotiating, the
Settlement.  Fischer Decl. ¶¶ 6–10.  This puts to rest any contrary interpretation of the Release.
*See Actrade*, 424 B.R. at 74 (noting the "well-accepted principle" that "[t]he parties' interpretation
of the contract in practice, prior to litigation, is compelling evidence of the parties' intent")
(citation omitted); *see also id.* at 72–73 (holding that the release did not cover a dispute that was
not considered by the parties when negotiating their settlement).

This is not the case of one party harboring a silent, subjective belief as to the scope of a
release in the face of contrary contract language and in opposition to the other party's conflicting
interpretation, as in *Barshay* (which Natixis cites repeatedly).  *See* Mot. at 10, 12 (citing *Barshay
v. Naithani*, No. 20 Civ. 8579, 2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023)).  Here, both parties
intended that the Release apply to claims for Alpha Prime transfers only—not those from Sentry.
There is no reason for the Court to find otherwise.  *See Neuman v. Harmon*, 965 F. Supp. 503, 509
(S.D.N.Y. 1997) (finding that, under New York law, the dispositive factor in determining the scope
of a release is the parties' intent); *cf. Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d
27, 36–37 (2d Cir. 1982) (superseded by statute on other grounds) (holding, in the copyright
context, that where the parties to an agreement have no dispute about the agreement, a third party
should not invoke a provision of the agreement against one of the parties).

### 2. The Release's Narrow Scope Is Consistent with This Court's Approval of the Settlement

Interpreting the Release as applicable solely to claims for Alpha Prime transfers is also
consistent with this Court's approval of the Settlement.  *See Consol. Edison*, 332 F. Supp. 2d at

651 (explaining that "if the release were as broad as Con Ed now claims it is, the Settlement would not and could not have been approved as fair and reasonable" by the prior court). Notably, in the motion seeking the Court's approval of the Settlement, the Trustee set forth the scope of the issues being compromised, an overview of conditions of the Agreement, and an assessment of the Agreement's impact on the BLMIS estate and its creditors. Mot. to Approve Settlement ¶¶ 14–15, 21, *Alpha Prime*, ECF No. 710. Nowhere does the motion refer to the Trustee's claims against Natixis or transfers from other feeder funds like Sentry.

If Natixis's interpretation of the Release were correct, it would mean that the Court approved a settlement that discharged all claims for any transfer of BLMIS customer property to any Alpha Prime shareholders and their affiliates, without any payment to the BLMIS estate by those transferees or Alpha Prime—potentially depriving customers of hundreds of millions of dollars in recovery. Such approval would contravene applicable Bankruptcy rules and case law regarding bankruptcy court settlement approvals. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (to approve a settlement under Rule 9019(a), a bankruptcy court must find that the compromise proposed is fair, equitable, reasonable, and in the best interests of a debtor's estate); *In re Prudential Lines, Inc.*, 170 B.R. 222, 246–47 (S.D.N.Y. 1994) (among the factors considered by a court on a Rule 9019(a) motion are "the paramount interests" of creditors like customers here).

This Court has already reviewed the four corners of the Settlement, and the Court's appropriate approval of that Settlement reflects that the Release is properly understood as applicable only to claims related to Alpha Prime transfers. *See also Consol. Edison*, 332 F. Supp. 2d at 651 (finding that if the release were as broad as defendant claimed, it could not have been approved by the court as fair and reasonable).

### 3.    The Trustee's Conduct Confirms the Release's Narrow Scope

The Trustee's conduct following his execution of the Settlement confirms that he never intended to release Natixis from the Natixis/Sentry Claims.  After the Settlement was executed, the Trustee and Natixis Parties had continuous discussions about this case—none of which involved the Trustee dismissing the Natixis/Sentry Claims.  Stipulation and Order, ECF No. 192. The Trustee then filed the Amended Complaint, seeking transfers from Sentry to Natixis and Tensyr, and initiated a new action with a new complaint against Natixis FP and Bloom, seeking the Groupement transfers.  Unlike the Trustee's initial complaint against the Natixis Parties, neither complaint contains claims for Alpha Prime transfers.

Had the Trustee intended the Release to apply to all claims for subsequent transfers from any BLMIS feeder fund to any direct or indirect Alpha Prime shareholder, the Trustee would have simply dismissed Natixis from this action and would never have filed a new action against Natixis FP and Bloom—or engaged with the Natixis Parties for months prior about doing the same.  This conduct confirms the Trustee's intent that the Release only apply to claims for Alpha Prime transfers.  *See W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (finding that party's continuous pursuit of claims in one action made clear that such party did not intend that an earlier settlement agreement release those claims, despite the release's broad language); *Peterson*, 935 F. Supp. 2d at 641 (finding parties' continuous litigation after settlement of another case indicates that the release in that other case would not apply to the instant one); *Ocean Transp. Line, Inc. v. Am. Phil. Fiber Indus., Inc.*, 743 F.2d 85, 91 (2d Cir. 1984) (explaining that the parties' interpretation of the contract "in practice" is "compelling evidence of the parties' intent").

The Trustee's settlements with other defendants further corroborate a narrow interpretation of the Release.  Natixis points to the Trustee's other settlement agreements and notes differences

in the language of those releases. Mot. 13–15. But these other settlements only support the point

that, when settling an adversary proceeding, the Trustee releases claims against unnamed parties

only to the extent of the transfers at issue in that adversary proceeding. *See, e.g.*, Order Approving

A Settlement Agreement By And Among The Trustee And Kingate Global Fund, Ltd. And Kingate

Euro Fund, Ltd, *Picard v. Ceretti (In re Madoff)*, Adv. Pro. No. 09-01161 (Bankr. S.D.N.Y. Aug.

6, 2019), ECF No. 417 (approving Trustee's settlement with the Kingate funds where settlement

agreement released only claims for transfers arising from the Kingate funds). Natixis can offer no

reason (and there is none) why the Trustee would do otherwise here.

> ### 4. Cases With Analogous Facts Illustrate that a Narrow Interpretation of the Release is Correct

The district court's decision in *Actrade* is instructive. There, plaintiff ("Actrade") offered

financing for its customers, and sureties ("Sureties") issued bonds in favor of Actrade guaranteeing

client payments. *Actrade*, 424 B.R. at 63. In 2002, Actrade commenced adversary proceedings

against the Sureties related to one set of customer claims. *Id.* at 64. The parties then settled and

Actrade released the Sureties from "any and all claims, demands, rights, actions or causes of action

. . . whether known or unknown." *Id.* at 66. In June 2003, the bankruptcy court approved the

settlement. *Id.* at 67.

Thereafter, a different customer sued Actrade, and Actrade commenced an adversary

proceeding against the Sureties related to those claims. The Sureties argued that the prior release

was clear on its face that they were released from "all claims" brought by Actrade. *Id.* at 68. The

court ultimately denied the parties' cross-motions for summary judgment on the defense of release,

and the parties proceeded to trial, at which the sole issue was the viability of the release defense.

*Id.* at 69.

The court ultimately ruled that, despite the release's broad language, the surrounding circumstances made clear that the release only included actions directly related to the 2002 claims:

> There is no question that the Release in [the 2002 settlement agreement] employs language that is general and broad and when read in isolation covers all claims against the Sureties. This general language would be conclusive *but for the principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time*.

*Id*. (emphasis added).

In support of its decision, the court stated that the settlement agreement was "replete" with references to the 2002 claims specifically and failed to refer to any other disputes. *Id*. at 71. The court also noted that the consideration for the agreement was commensurate with the 2002 claims only. *Id*. at 72. Moreover, the record as a whole showed that the parties did not consider any other disputes when negotiating their settlement. *Id*. at 72–73. Last, the court found that the parties' post-settlement conduct, which consisted of continuous litigation and negotiations between the parties, was "inconsistent" with an asserted interpretation of a broad release. *Id*. at 74.

As in *Actrade*, the language of the entire Settlement, the consideration exchanged pursuant to it, and the parties' subsequent conduct all lead to a narrow interpretation of the Release. In sum, the Settlement provides Natixis no ready escape from the Trustee's claim to recover subsequent transfers from Sentry.

### C.    Natixis Is Not an Intended Third-Party Beneficiary to the Settlement for the Natixis/Sentry Claims

Natixis cannot otherwise establish that it was an intended third-party beneficiary of the Settlement as to the Natixis/Sentry Claims.[9]

---

[9] Natixis does not argue that it should be released from claims seeking Alpha Prime transfers—it has no reason to do so. The Trustee is no longer asserting any claims against Natixis for subsequent transfers from Alpha Prime. But just because Natixis may have benefitted in some way from the Settlement does not mean that Natixis is completely absolved from any liability from its receipt of BLMIS customer property from any initial transferee. *City of Almaty,*

A non-party to a contract must establish that its recognition as a third-party beneficiary is "appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *United Int'l Holdings*, 988 F. Supp. at 371. Natixis cannot credibly argue that both the Trustee and Alpha Prime intended to benefit Natixis by releasing the Natixis/Sentry Claims. *See supra* Section VI.A. Natixis does not argue that the Trustee's forbearance of the Natixis/Sentry Claims will satisfy some obligation to pay money to Natixis. Natixis has not provided the Court with circumstances that indicate Alpha Prime, as promisee, intended to release Natixis from the Natixis/Sentry Claims. *United Int'l Holdings*, 988 F. Supp. at 371. Alpha Prime has made clear that it never intended that those claims be released, and never negotiated that they be released. *See* Fischer Decl. ¶¶ 5–10. Nor would it have any reason to do so. To the contrary, Alpha Prime intended the Settlement "to release only claims related to transfers of [BLMIS] customer property to Alpha Prime." *Id*. ¶ 8; *see also Consol. Edison*, 332 F. Supp. 2d at 650 (reading the release narrowly because "[i]t is clear that the lawyers for the parties in the [settled action] never discussed or even considered the effect of the release on the claims asserted in this action").

Last, Natixis's assertion that it "falls within a category of persons clearly covered by the Release (former indirect shareholder)," Mot. at 11, is irrelevant because the purported benefit Natixis seeks—release of the Natixis/Sentry Claims—does not exist to begin with.[10]

---

*Kazakhstan v. Sater*, No. 19-CV-2645, 2019 WL 6681560, at *11 (S.D.N.Y. 2019) ("Parties to a contract can intend for a third party to benefit from some provisions in a contract and not others").

[10] Furthermore, when the Release is read in the strict, technical way Natixis urges, Natixis falls outside the category of persons in the Release, which encompasses "Alpha Prime and Alpha Prime Asset Management LTD and its respective current and former directors . . . , direct or indirect shareholders." Settlement ¶ 7. The word "its" is a possessive adjective that refers to the preceding proper noun Alpha Prime Asset Management LTD, not Alpha Prime. *See, e.g.*, *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 607 N.E.2d 792 (N.Y. 1992) (clause unambiguously excluded insurance coverage based on plain reading, grammar, and syntax of clause with included "or" carving out two separate exclusions); *Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*, Nos. 11 Civ. 3567, 11 Civ. 8923,

For these reasons, Natixis was not released from the Natixis/Sentry Claims as an intended third-party beneficiary.

### D.    The Trustee Is Not Estopped From Arguing that the Release Does Not Apply to the Natixis/Sentry Claims

Natixis makes hay of the Trustee's purported acknowledgement that Natixis FP invested in Alpha Prime and then argues that the Trustee is "judicially and contractually estopped" from taking "the clearly inconsistent" position that the Release does not cover the Natixis/Sentry Claims.  But the Trustee's position has been consistent: the Release covers claims arising from Alpha Prime's transfers.  *See supra* Section VI.A.  Estoppel is therefore a non-issue.

### E.    If the Settlement Unambiguously Reflected That It Released the Natixis/Sentry Claims, the Contract Should Be Reformed

For the reasons discussed above, Natixis's motion should be denied because the Settlement unambiguously establishes that the Natixis/Sentry Claims were not released.  However, if the Court determines there is any ambiguity as to the Release's scope, the Court can deny Natixis's Motion so discovery can be taken on the issue.  *Lipsky v. Commw. United Corp.*, 551 F.2d 887, 897 (2d Cir. 1976) (reversing district court's decision to grant motion to dismiss where contract term was ambiguous).  And, even if the Court were to decide now that the Release on its face releases Natixis from the Natixis/Sentry Claims, then as the extrinsic evidence makes clear, the Release fails to reflect the mutual intention of the Trustee and Alpha Prime, meaning a mutual mistake was made, and the Court should disregard that overbroad interpretation.  *See ASI Sign Sys., Inc. v. Arch. Sys., Inc.*, No. 98 Civ. 4823, 1999 WL 553825, at *6 (S.D.N.Y. July 29, 1999) (rejecting defendant's argument that plaintiff's claim was barred by the release in a prior settlement

---

2012 WL 3834721 (S.D.N.Y. Aug. 21, 2012) (clause was unambiguous and susceptible of one interpretation based on grammar and syntax).  Neither the Trustee nor Natixis claims Natixis was a shareholder of Alpha Prime Asset Management LTD.

where the claim was not discussed in the settlement negotiations, and finding that "even if this Court were to find that the language of the General Release encompassed [plaintiff's] current claim . . . the agreement would be reformed to exclude that claim, as the parties would have been operating under the mistaken belief that the claim was not covered by the General Release."). The Trustee and Alpha Prime can also then amend the Settlement to make their intent as the Release more explicit. *See, e.g.*, *Migliore v. Manzo*, 813 N.Y.S.2d 762, 764 (N.Y. App. Div. 2006) (reformation of a contract is proper where, in absence of fraud, a mistake was made by both parties to an agreement such that the intentions of neither are expressed in it) (citing *Amend v. Hurley*, 59 N.E.2d 416, 419 (N.Y. 1944)).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Natixis's Motion.

Dated: June 16, 2023
     New York, New York
                              */s/ Joanna F. Wasick*
                              **BAKER & HOSTETLER LLP**
                              45 Rockefeller Plaza
                              New York, New York 10111
                              Telephone: 212.589.4200
                              Facsimile: 212.589.4201
                              David J. Sheehan
                              Email: dsheehan@bakerlaw.com
                              Joanna F. Wasick
                              Email: jwasick@bakerlaw.com
                              Carlos Ramos-Mrosovsky
                              Email: cramosmrosovsky@bakerlaw.com

                              *Attorneys for Irving H. Picard, Trustee*
                              *for the Substantively Consolidated SIPA Liquidation*
                              *of Bernard L. Madoff Investment Securities LLC*
                              *and the Chapter 7 Estate of Bernard L. Madoff*