**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-05353 (CGM) |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN**
**OPPOSITION TO TENSYR LTD.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ...................................................................................... 2

I.  THE BLMIS PONZI SCHEME ................................................. 2

II.  SENTRY ....................................................................................... 3

III.  TENSYR, ITS SENTRY INVESTMENTS, AND ITS BUSINESS WITH FGG & NATIXIS ............................................................. 3

IV.  THE FAIRFIELD SETTLEMENT ........................................... 5

ARGUMENT .......................................................................................... 6

I.  THIS COURT HAS PERSONAL JURISDICTION OVER TENSYR ...................... 6

A.  Tensyr Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the Jurisdiction ........................................ 6

B.  Tensyr's Contacts with New York Support Personal Jurisdiction ............... 8

1.  Tensyr's Purposeful Investment with BLMIS Through Sentry Establishes Sufficient Contacts to Support Personal Jurisdiction ..... 8

2.  Tensyr's Purposeful Use of New York Bank Accounts Supports Personal Jurisdiction ....................... 12

3.  Tensyr's Other Activities In New York Also Establish Minimum Contacts ................................. 14

C.  Tensyr's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims ................................. 18

D.  The Exercise of Personal Jurisdiction Over Tensyr Is Reasonable ............. 19

E.  In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery ........ 20

II.  SECTION 546(e) DOES NOT BAR RECOVERY FROM TENSYR .................... 20

A.  The Safe Harbor Does Not Apply Because the Trustee Pleads That Sentry Had Actual Knowledge of Madoff's Fraud ................................. 21

B.  Section 546(e) Is Not Independently Available to Tensyr as a Subsequent Transferee ................................. 22

C.  The Section 548(a)(1)(A) Exception to the Safe Harbor Applies ................ 22

1.  The Ponzi Scheme Presumption Is the Law of This Circuit ............ 23

2.  The Amended Complaint Alleges Facts Sufficient to Establish That BLMIS Was a Ponzi Scheme ........................................................ 24

3.  The Amended Complaint Independently Alleges BLMIS's Fraudulent Intent Through Badges of Fraud .................................. 25

i

III.    THE GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE
        PLEADING STAGE ............................................................................................. 26

IV.    THE TRUSTEE SUFFICIENTLY ALLEGES THAT TENSYR RECEIVED BLMIS
        CUSTOMER PROPERTY ..................................................................................... 28

        A.    The Trustee Plausibly Alleges That All of the Subsequent Transfers Tensyr
              Received Contained Stolen BLMIS Customer Property ............................. 29

        B.    Tensyr Misstates the Trustee's Pleading Burden ........................................ 30

        C.    Tensyr's Remaining Arguments Fail on a Motion to Dismiss ................... 32

CONCLUSION .................................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................................29, 31

*Bahrain Islamic Bank, Bisb v. Arcapita Bank B.S.C.(C) (In re Arcapita Bank
    B.S.C.(C))*,
    640 B.R. 604 (S.D.N.Y. 2022) ...........................................................................................14

*In re Bayou Grp., LLC*,
    439 B.R. 284 (S.D.N.Y. 2010) ...........................................................................................23

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp.,
    LLC)*,
    362 B.R. 624 (Bankr. S.D.N.Y. 2007) ................................................................................24

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) .................................................................................27

*In re BLMIS*,
    No. 20-cv-02586, 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...........................................26

*In re BLMIS*,
    No. 22 Civ. 6561, 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023).........................................8, 12

*Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*,
    No. 18-cv-11099, 2020 WL 7128968 (S.D.N.Y. Dec. 4, 2020) ...........................................20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................................7

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)...........................................................................................7, 19

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...............................................................................32

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................................6

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013)..................................................................................13

*Dev. Design Grp., Inc. v. Deller*,
    No. CCB-10-53, 2012 WL 1098603 (D. Md. Mar. 30, 2012) ...............................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) .......................................................................6, 16, 17

*Eldesouky v. Aziz*,
  No. 11-CV-6986, 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ...........................13

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*,
  397 F. Supp. 3d 323 (S.D.N.Y. 2019) ...................................................................8

*Fairfield Sentry Ltd. v. HSBC Secs. Servs. (Luxembourg) S.A.*,
  Nos. 21-cv-10316, 21-cv-10334, 2022 WL 3910679 (S.D.N.Y. Aug. 31, 2022)...................20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  Adv. Pro. No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...........................................................................................................10

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .........................................................................................19

*Geltzer v. Barish (In re Geltzer)*,
  502 B.R. 760 (S.D.N.Y. 2013).............................................................................23

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
  No. 11 Civ 3673, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012)................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)................................................................................................7

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  Adv. Pro. Nos. 10–03493 (SMB), 10–05447 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .......................................................................................33

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................27

*HSH Nordbank AG N.Y. Branch v. Street*,
  No. 11 Civ 9405, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ...........................13

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945)................................................................................................7

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)..............................................................................................12

*Jewell v. Music Lifeboat*,
  254 F. Supp. 3d 410 (E.D.N.Y. 2017) .................................................................18

*Kelley v. Westford Special Situations Master Fund, L.P.*,
  No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .......................33, 34

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)..............................................................................................26

*Koch Indus., Inc. v. Picard (In re BLMIS)*,
    No. 23-CV-0294 (VEC), 2023 WL 3317926 (S.D.N.Y. May 9, 2023)...........................21, 22

*Kreutter v. McFadden Oil Corp.*,
    522 N.E.2d 40 (1988).........................................................................................................14

*Licci v. Lebanese Canadian Bank, SAL*,
    984 N.E.2d 893 (2012).......................................................................................................14

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)...............................................................................14

*NOA, LLC v. Khoury*,
    No. 5:14-CV-114-FL, 2015 WL 13881738 (E.D.N.C. June 5, 2015) ...................................18

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)........................................................................................13, 19

*Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*,
    650 B.R. 24 (Bankr. S.D.N.Y. 2023).......................................................................23, 24, 25

*Picard v. ABN AMRO Bank N.V. (In re Madoff)*,
    Adv. Pro. No. 10-05354 (CGM), 2023 WL 2358746 (Bankr. S.D.N.Y. Mar. 3,
    2023) ...............................................................................................................................23

*Picard v. Abu Dhabi Inv. Auth. (In re Madoff)*,
    Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049 (Bankr. S.D.N.Y. Oct.
    31, 2022) ..........................................................................................................................30

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)...................................................................................27

*Picard v. Banca Carige S.p.A. (In re Madoff)*,
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
    30, 2022) .................................................................................................................. *passim*

*Picard v. Bank Julius Baer & Co., Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec.
    15, 2022) .....................................................................................................................27, 30

*Picard v. Bank Vontobel AG (In re Madoff)*,
    Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov.
    18, 2022) .....................................................................................................................28, 30

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
    Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July
    14, 2022) ..................................................................................................................28, 29

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
    Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June
    30, 2022) ...........................................................................................................................29

*Picard v. Banque Syz & Co. SA (In re Madoff)*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
    14, 2022) ..............................................................................................................27, 29, 30

*Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*,
    Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July
    15, 2022) ...........................................................................................................................28

*Picard v. Barfield Nominees Ltd. (In re Madoff)*,
    Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept.
    28, 2022) ....................................................................................................................11, 30

*Picard v. BNP Paribas S.A. (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)..................................................10, 19, 29, 30

*Picard v. Bordier & Cie (In re Madoff)*,
    Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June
    30, 2022) ...........................................................................................................................29

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)..............................................................9, 11

*Picard v. Cathay Life Ins. Co. Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
    1, 2022) ...........................................................................................................................31

*Picard v. Charles Ellerin Rev. Tr.*,
    Adv. Pro. Nos. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514
    (Bankr. S.D.N.Y. Mar. 14, 2012)....................................................................29, 32

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209, 212 L. Ed.2d 217
    (2022)...........................................................................................................................3, 26

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...............................................................33

*Picard v. Credit Suisse AG (In re Madoff)*,
    Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739 (Bankr. S.D.N.Y. Nov.
    21, 2022) ...........................................................................................................................28

*Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*,
　　525 B.R. 871 (Bankr. S.D.N.Y. 2015) .................................................................7

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
　　627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................................ *passim*

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
　　Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
　　2021) ............................................................................................................ *passim*

*Picard v. First Gulf Bank (In re Madoff)*,
　　Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
　　18, 2022) ...............................................................................23, 26, 28, 30

*Picard v. Fullerton Cap. PTE Ltd. (In re Madoff)*,
　　Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714 (Bankr. S.D.N.Y. Oct.
　　28, 2022) .................................................................................................30

*Picard v. Gerald & Barbara Keller Fam. Tr. (In re Madoff)*,
　　No. 21-CV-8678, 2022 WL 7219262 (S.D.N.Y. Oct. 6, 2022) .............................23

*Picard v. Gettinger (In re BLMIS)*,
　　976 F.3d 184 (2d Cir. 2020) ...........................................................................25

*Picard v. Inteligo Bank Ltd. (In re Madoff)*,
　　Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686 (Bankr. S.D.N.Y. Dec.
　　15, 2022) .................................................................................................11

*Picard v. JABA Assocs. LP (In re Madoff)*,
　　528 F. Supp. 3d 219 (S.D.N.Y. 2021) ...............................................................25

*Picard v. Korea Exch. Bank (In re Madoff)*,
　　Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
　　21, 2022) .............................................................................................29, 31

*Picard v. Legacy Cap. Ltd. (In re Madoff)*,
　　603 B.R. 682 (Bankr. S.D.N.Y. 2019) ...............................................................25

*Picard v. Lisa Beth Nissenbaum Tr. (In re Madoff)*,
　　No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ......................25, 26

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
　　Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June
　　30, 2022) .............................................................................................29, 30

*Picard v. Maxam Absolute Return Fund, L.P.*,
　　460 B.R. 106 (Bankr. S.D.N.Y. 2011) ...............................................................19

*Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*,
Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
10, 2022) ................................................................................................13, 16, 30

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................29, 31, 34

*Picard v. Merkin (In re Madoff)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..................................................................34

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
641 B.R. 78 (Bankr. S.D.N.Y. 2022) .............................................................. *passim*

*Picard v. Multi-Strategy Fund Ltd.*,
Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-
cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ................21, 22

*Picard v. Naidot & Co. (In re Madoff)*,
Adv. Pro. No. 11-02733 (CGM), 2023 WL 3086753 (Bankr. S.D.N.Y. Apr.
25, 2023) ................................................................................................22

*Picard v. Parson Fin. Pan. S.A. (In re Madoff)*,
Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
2022) ................................................................................................15, 16, 30

*Picard v. Platinum All Weather Fund Ltd. (In re Madoff)*,
Adv. Pro. No. 12-01697 (CGM), 2023 WL 3514105 (Bankr. S.D.N.Y. May
17, 2023) ................................................................................................28

*Picard v. Quilvest Fin. Ltd. (In re Madoff)*,
Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184 (Bankr. S.D.N.Y. Sept.
27, 2022) ................................................................................................30

*Picard v. Royal Bank of Can. (In re Madoff)*,
650 B.R. 524 (Bankr. S.D.N.Y. 2023) .............................................................. *passim*

*Picard v. Schroder & Co. Bank AG (In re Madoff)*,
Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225 (Bankr. S.D.N.Y. Sept.
27, 2022) ................................................................................................30

*Picard v. Shapiro (In re BLMIS)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................30

*Picard v. SNS Bank N.V. (In re Madoff)*,
Adv. Pro. No. 12-01046 (CGM), 2023 WL 2395734 (Bankr. S.D.N.Y. Mar. 7,
2023) ................................................................................................21, 22, 30, 34

*Picard v. UKFP (Asia) Nominees Ltd. (In re Madoff)*,
  Adv. Pro. No. 12-01566 (CGM), 2022 WL 17574760 (Bankr. S.D.N.Y. Dec.
  9, 2022) .............................................................................................................................11

*Rees v. Mosaic Techs., Inc.*,
  742 F.2d 765 (3d Cir. 1984).............................................................................................18

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
  403 F.3d 43 (2d Cir. 2005)................................................................................................25

*SHLD, LLC v. Hall*,
  No. 15 Civ. 6225, 2016 WL 659109 (S.D.N.Y. Feb. 17, 2016) ..........................................7

*SIPC v. BLMIS (In re Madoff)*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015)...............................................................................29

*SIPC v. BLMIS (In re Madoff)*,
  No. 12-115-(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................................21

*SIPC v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999)...............................................................................34

*Steinhardt v. Shadow*,
  No. 16-cv-4222, 2018 WL 4278335 (S.D.N.Y. Apr. 11, 2018) ........................................15

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)..............................................................................................12

*United States v. Henshaw*,
  388 F.3d 738 (10th Cir. 2004) ..........................................................................................33

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
  39 F. Supp. 3d 461 (S.D.N.Y. 2014).................................................................................26

*Walden v. Fiore*,
  571 U.S. 277 (2014)..........................................................................................................12

**Statutes**

11 U.S.C. § 546(e) ................................................................................................ *passim*

11 U.S.C. § 548(a)(1)(A) ....................................................................................20, 22, 23, 25

11 U.S.C. § 550(a) ..........................................................................................................32

11 U.S.C. § 550(a)(2).......................................................................................................28

11 U.S.C. § 550(d) ..........................................................................................................32

15 U.S.C. §§ 78aaa–*lll* ................................................................................................................1

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................................24, 25

Fed. R. Civ. P. 12(b)(2)..............................................................................................................17

N.Y. C.P.L.R. § 302(a)(1)...........................................................................................................14

Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff")

respectfully submits this memorandum of law in opposition to the motion ("Motion") brought by

defendant Tensyr Ltd. ("Tensyr") to dismiss the Trustee's amended complaint ("Amended

Complaint") against Tensyr and its co-defendant Natixis S.A. ("Natixis") seeking subsequent

transfers received from Fairfield Sentry Limited ("Sentry").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was

stolen as part of Madoff's Ponzi scheme, the Trustee's Amended Complaint asserts claims to

recover approximately $35 million of customer property transferred from Sentry to Tensyr.[1]  In its

responsive Motion, Tensyr blithely ignores this Court's decisions and recycles arguments rejected

in numerous other subsequent transfer cases: (1) the Court lacks personal jurisdiction; (2) the safe

harbor provision of 11 U.S.C. § 546(e) ("Section 546(e)") bars the Trustee's claims; (3) Tensyr

took the transfers in good faith; and (4) the Trustee insufficiently pleads that Tensyr's subsequent

transfers contain customer property.  These arguments fail again here.

First, the Court has personal jurisdiction over Tensyr.  As pleaded in the Amended

Complaint, Tensyr purposefully and knowingly invested in BLMIS through Sentry.  This, in itself,

provides a basis for the Court's jurisdiction.  However, the Amended Complaint pleads additional

contacts between Tensyr and the forum.  Tensyr used New York bank accounts in connection with

its Sentry investments.  Tensyr also, through its agents Natixis and New York-based Fairfield

---

[1] The Trustee also asserts claims to recover approximately $179 million of customer property transferred from Sentry to co-defendant Natixis.  Am. Compl. ¶ 8, *Picard v. Natixis S.A. (In re Madoff)*, Adv. Pro. No. 10-05353 (CGM), (Bankr. S.D.N.Y. Jan. 31, 2023), ECF No. 193.  Unless otherwise indicated, all ECF references herein refer to the above-captioned case.

Greenwich Group ("FGG"), conducted extensive business in New York, held meetings in New York (including those with Madoff), communicated with other third parties in New York, and designated and used a New York address for its business with Sentry. Together, these allegations overwhelmingly establish that personal jurisdiction over Tensyr is proper.

Second, Section 546(e) does not apply to the subsequent transfer claims in this matter because the Trustee has pleaded Sentry's actual knowledge of the BLMIS fraud. While Tensyr claims a transferee's actual knowledge of fraud should not limit application of the Section 546(e) safe harbor, courts, including this one, have ruled otherwise. The Court has likewise and repeatedly rejected Tensyr's arguments that the Trustee cannot plead Sentry's actual knowledge by incorporating pleadings from the Sentry proceeding, or show BLMIS's actual intent to defraud by relying on the Ponzi presumption.

Third, the Court has ruled that the good faith affirmative defense that Tensyr raises now requires a fact-based determination that may not be considered on a motion to dismiss.

Last, the Court has rejected arguments that the Trustee has failed to allege that the defendant's subsequent transfers contained customer property. The Amended Complaint outlines the relevant pathways through which customer property was transferred from BLMIS to Sentry and then to Tensyr. No more is required.

For these reasons, as detailed below, the Trustee respectfully requests that the Court deny Tensyr's Motion.

## **BACKGROUND**

## I.    **THE BLMIS PONZI SCHEME**

Madoff founded and operated BLMIS until its collapse in 2008. Am. Compl. ¶ 64, ECF No. 193. BLMIS operated three principal business units, one of which was an investment advisory business (the "IA Business"). *Id.* ¶ 66. For its IA Business customers, BLMIS purportedly

executed a split-strike conversion strategy ("SSC Strategy"), which involved: (1) investing in a basket of common stocks from the S&P 100 Index; (2) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (3) purchasing U.S. Treasury bills when the money was out of the market. *Id.* ¶¶ 77, 79–82. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 57, 77. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 52.

## II.    SENTRY

The extensive financial damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209, 212 L. Ed.2d 217 (2022). Sentry was the largest BLMIS feeder fund, and was created, managed, and controlled by FGG, a New York entity. Am. Compl. ¶ 4; Second Am. Compl. ¶¶ 79, 88, *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Fairfield SAC").

## III.   TENSYR, ITS SENTRY INVESTMENTS, AND ITS BUSINESS WITH FGG & NATIXIS

Tensyr (an anagram for Sentry) was an investment vehicle created by Natixis and FGG in order to profit off of New York-based BLMIS's returns by investing in Sentry and issuing notes linked to Sentry's performance. Am. Compl. ¶ 22. As part of this scheme, Tensyr entered into subscription agreements with Sentry, which provided for New York venue, jurisdiction, service of process, and choice of law. *Id.* ¶ 46. Tensyr knowingly designated a New York bank account at the Bank of New York to send subscription payments to and receive redemption payments from Sentry. *Id.* ¶ 50. Tensyr also agreed to, and did, deliver subscription funds to an HSBC Bank

USA correspondent bank account in New York. *Id.* ¶ 48. Those funds were then deposited into BLMIS's account at JPMorgan Chase Bank in New York. *Id.*

When executing the Sentry subscription agreements, Tensyr affirmed that it had read and received Sentry's private placement memoranda ("PPMs"). *Id.* ¶ 31. These PPMs identified the many ways Tensyr was transacting business in New York through its Sentry investments. For example, the PPMs disclosed that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS was Sentry's investment adviser; (3) BLMIS was registered with the U.S. Securities and Exchange Commission ("SEC"); (4) BLMIS was the executing broker for Sentry's investments; (5) BLMIS purportedly operated and executed the SSC Strategy on the fund's behalf; (6) BLMIS's SSC Strategy involved the purchase of U.S. equities and U.S. options; (7) BLMIS was the custodian of Sentry's investments with BLMIS; and (8) BLMIS was "essential to the continued operation of" Sentry. *Id.* ¶ 32.

Tensyr's understanding that it was conducting business in New York by investing in Sentry is also reflected in the memorandum it provided to New York-based ratings agencies ("Tensyr Ratings Memo"). *Id.* ¶ 33. The Tensyr Ratings Memo contained detailed information about New York-based BLMIS, as well as New York-based Madoff's and FGG's involvement in Sentry. *Id.* For example, the Tensyr Ratings Memo referenced BLMIS's New York location and operations, including BLMIS's registration with U.S. regulatory bodies, its 275 New York-based employees, and its purported U.S.-listed investments and New York-based securities and derivatives. *Id.* ¶ 34. The Tensyr Ratings Memo also disclosed that FGG was "headquartered in New York." *Id.*

Tensyr was an "orphan" entity with no employees of its own. *Id.* ¶ 22. Rather, Tensyr was operated by Natixis and FGG. *Id.* FGG served as Tensyr's manager and information agent. *Id.* ¶ 23. Tensyr's subscription agreements with Sentry were signed by FGG executives who were

based in New York. *Id.* ¶¶ 23–24. When Tensyr redeemed from Sentry, redemption confirmations were sent "C/O FAIRFIELD GREENWICH GROUP" at 919 Third Avenue in New York, New York, with New York-based FGG general counsel Mark McKeefry's name and email address listed. *Id.* ¶ 25. Tensyr's redemption requests were signed on its behalf by FGG partners, including McKeefry, Jeffrey Tucker, Walter Noel, and Daniel Lipton—all of whom were based in New York. *Id.* ¶ 26. FGG also met with at least two rating agencies at FGG's office in New York in an effort to obtain the highest rating for Tensyr. *Id.* ¶¶ 26, 39.

For its part, Natixis helped structure Tensyr and its notes program, underwrote the tranches for the Tensyr notes program, and selected and liaised with New York-based rating agencies, legal advisors, and other service providers on Tensyr's behalf. *Id.* ¶ 27. Natixis also took the lead in drafting the Tensyr Ratings Memo, with input from and review by FGG personnel in New York. *Id.* ¶ 28. Natixis had numerous meetings in New York regarding Tensyr, including those with FGG personnel. *Id.* ¶ 40. Natixis also extensively communicated via emails and phone calls with FGG personnel in New York regarding Tensyr. *Id.* ¶ 43. Together, Natixis and FGG drafted and revised talking points for a meeting with Madoff in New York to convince "Uncle Bernie" to approve Tensyr, which Madoff ultimately did. *Id.* ¶ 42. While working for Tensyr, Natixis also worked and contracted with third parties based in New York, including three New York-based rating agencies and United States-based law firms. *Id.* ¶ 44.

## IV.    THE FAIRFIELD SETTLEMENT

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover approximately $3 billion in fraudulent transfers of customer property. *See* Am. Compl. ¶ 115; Fairfield SAC ¶¶ 12–26. In 2011, the Trustee settled with Sentry and others. Am. Compl. ¶ 116. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer

property estate.  *Id*.; Order, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr.
S.D.N.Y. June 7, 2011), ECF No. 92.  The Trustee then commenced a number of adversary
proceedings against subsequent transferees like Tensyr to recover the remainder.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER TENSYR

This Court has personal jurisdiction over Tensyr.  As described below, Tensyr was created
for the sole purpose of profiting off of New York-based BLMIS.  Am. Compl. ¶¶ 22, 100.  Tensyr
purposely availed itself of the laws of the forum by routinely conducting business in New York,
undertaking significant commercial activities in New York, and deriving significant revenue from
New York.  *Id*. ¶ 21.  Tensyr invested in Sentry, used the New York banking system, operated in
New York, and worked with U.S. and New York-based third parties in connection with its Sentry
investment.  *Id*. ¶¶ 46, 48, 50.  The Trustee's claims directly relate to those activities, and the
exercise of jurisdiction by this Court is reasonable.

### A.    Tensyr Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make
a prima facie case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81, 86 (2d Cir. 2013).  A prima facie showing of jurisdiction "may be established solely
by allegations," which are to be construed in the light most favorable to the plaintiff, resolving all
doubts in plaintiff's favor.  *Id*. at 85.

Personal jurisdiction over a defendant may be general[2] or specific.  Specific jurisdiction
exists when (1) the defendant purposefully directs its activities at the forum and (2) the underlying

---

[2] General jurisdiction is based on a defendant's general business contacts with the forum and permits a court to exercise
jurisdiction over the defendant regardless of whether the suit is related to those contacts.  *See Daimler AG v. Bauman*,

cause of action "arises out of or relates to those activities." *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). As to the first prong, the court assesses whether the totality of the defendant's contacts with the forum show that the defendant purposefully availed itself of the privilege of conducting activities within the forum. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). A "defendant can be subjected to personal jurisdiction by its own actions or those of its agents." *SHLD, LLC v. Hall*, No. 15 Civ. 6225, 2016 WL 659109, at *4 (S.D.N.Y. Feb. 17, 2016) (citation omitted); *see also Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) ("Whether [defendant] dealt with BLMIS directly or . . . another acted on her behalf makes no difference because the conduct of her agents is attributed to her for purposes of the jurisdictional analysis."). As to the second prong, the court must find some "affiliation between the forum and the underlying controversy." *Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy I*") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The court must also determine whether the exercise of personal jurisdiction is reasonable, such that it will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945). Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

---

571 U.S. 117, 118 (2014). Here, the Trustee's case arises out of Tensyr's contacts with the forum and a finding of general jurisdiction is unnecessary.

**B.      Tensyr's Contacts with New York Support Personal Jurisdiction**

This Court may exercise personal jurisdiction over Tensyr because of its numerous and purposeful contacts with New York.  Tensyr: (1) purposefully invested in Sentry knowing and intending that its investments would be with BLMIS in New York; (2) executed subscription agreements in connection with those investments, in which it agreed to New York jurisdiction, forum, service of process, and choice of law; and (3) used the New York banking system in connection with its Sentry investments.  Tensyr also undertook purposeful acts in and targeted at New York and the United States in connection with those investments, including working with U.S.-based ratings agencies, law firms, and other service providers, holding meetings in New York, and communicating into and from New York.  *See* Am. Compl. ¶¶ 21–51.  Many of these contacts independently suffice to show Tensyr's purposeful availment of the forum.  *See, e.g.*, *In re BLMIS*, No. 22 Civ. 6561, 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard*") ("by intentionally investing in a New York-based investment fund, Defendant 'purposefully availed itself of the privilege of' doing business in New York").  In their totality, these contacts overwhelmingly demonstrate that Tensyr is subject to this Court's jurisdiction.  *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [Defendant]'s Agreement-related contacts are considered together, it is clear [Defendant] purposely availed itself of the forum.").

**1.      Tensyr's Purposeful Investment with BLMIS Through Sentry Establishes Sufficient Contacts to Support Personal Jurisdiction**

Tensyr's intentional investments with BLMIS in New York through Sentry subject it to personal jurisdiction here.  *See, e.g.*, *Picard v. Royal Bank of Can. (In re Madoff)*, 650 B.R. 524, 541 (Bankr. S.D.N.Y. 2023) (exercising jurisdiction over subsequent transferee defendants who intentionally invested with BLMIS).  Each time it purchased shares of Sentry, Tensyr executed a

subscription agreement, affirming that it had received and read Sentry's PPM.  Am. Compl. ¶ 31.

Tensyr knew from the PPMs that: (1) Sentry invested at least 95% of its assets with BLMIS; (2)

BLMIS was Sentry's investment adviser; (3) BLMIS was registered with the SEC; (4) BLMIS was

the executing broker for Sentry's investments, and purportedly operated and executed the SSC

Strategy on the fund's behalf; (5) BLMIS's SSC Strategy purportedly involved the purchase of

U.S. equities and U.S. options; (6) BLMIS was the custodian of Sentry's investments with BLMIS;

and (7) BLMIS was "essential to the continued operation of" Sentry.  *Id*. ¶ 32.  Tensyr knew that

it was transacting business in New York in connection with its Sentry investments.  *Id*.

Like the PPMs, the Tensyr Ratings Memo, a document Tensyr used to obtain ratings from

New York-based ratings agencies, evidences Tensyr's knowing and purposeful investment in New

York-based BLMIS.  The Tensyr Ratings Memo included detailed information about New York-

based BLMIS, as well as Madoff's and FGG's involvement in Sentry, and showed that Tensyr

targeted New York to generate profits for itself and its investors.  *Id*. ¶ 33.  For example, the Tensyr

Ratings Memo described investments with BLMIS as part of Tensyr's operation, and referenced

BLMIS's New York location and operations, including BLMIS's SEC and National Association

of Securities Dealers' registrations, its purported trades of U.S. securities, and its 275 New York

City employees.  *Id*. ¶¶ 28, 33–34.  The Tensyr Ratings Memo also discussed BLMIS's purported

U.S.-listed investments and that the SSC Strategy involved "purchasing put options and selling

call options on the S&P 100 [Index]" and "short-term U.S. Treasury Bills."  *Id*. ¶¶ 35–36.

Tensyr's subscription agreements with Sentry also demonstrate a "strong nexus with New

York" because they contain New York choice of law, service of process, and forum selection

provisions.  *See Picard v. Bureau of Lab. Ins. (In re Madoff)*, 480 B.R. 501, 517 n.15 (Bankr.

S.D.N.Y. 2012) ("*BLI*"); *see also Multi-Strategy I*, 641 B.R. at 88 n.3 (finding that defendant's

submission to the jurisdiction of New York courts when it signed subscription agreements with Sentry is relevant in determining whether jurisdiction is reasonable). Tensyr, by executing the subscription agreements, submitted to venue in New York, the jurisdiction of New York courts, service of process from New York courts, and the application of New York law. Am. Compl. ¶¶ 46–47.

Tensyr argues that actions to recover redemptions from Sentry to defendants like Tensyr do not arise from subscription agreements and that jurisdictional provisions in subscription agreements do not apply to claims for redemptions. Mot. at 14–15 (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-13164 (SMB), 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018)). However, the Court has already rejected this argument, finding that "the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable." *Multi-Strategy I*, 641 B.R. at 88 n.3; *see also Royal Bank of Can.*, 650 B.R. at 538 (finding that executing subscription agreements "show[s] that those defendants were willing to, and knew that they could, face litigation in New York courts").

Tensyr also argues that the Trustee must demonstrate jurisdiction over each subsequent transfer he is seeking to recover. *See* Mot. at 12 (citing *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018)). However, as this Court already held, by "alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS." *Picard v. Banca Carige S.p.A. (In re Madoff)*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at *4 (Bankr. S.D.N.Y. June 30, 2022).

a.    *BLI* **and Recent Decisions of This Court Support Personal Jurisdiction Over Tensyr**

This Court held over a decade ago that it may exercise personal jurisdiction over Sentry investors like Tensyr.  In *BLI*, Judge Lifland found personal jurisdiction over the defendant based on its investment in Sentry because the defendant did so "with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *BLI*, 480 B.R. at 506.  The defendant in that case, like Tensyr here, "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Id*. at 517.

The Court has repeatedly upheld and applied *BLI*'s analysis in cases where the Trustee alleged that defendants invested in Sentry for the purpose of investing with BLMIS in New York. *See Royal Bank of Can.*, 650 B.R. at 539; *see also Multi-Strategy I*, 641 B.R. at 87 ("As described by Judge Lifland, Defendant intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States to reap the benefits therefrom.").  The Court has further held that the Trustee sufficiently alleges personal jurisdiction "simply by stating that [defendant] 'knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation." *Banca Carige*, 2022 WL 2387522, at *2; *see also Picard v. Barfield Nominees Ltd. (In re Madoff)*, Adv. Pro. No. 12-01669 (CGM), 2022 WL 4542915, at *2 (Bankr. S.D.N.Y. Sept. 28, 2022) (same); *Picard v. UKFP (Asia) Nominees Ltd. (In re Madoff)*, Adv. Pro. No. 12-01566 (CGM), 2022 WL 17574760, at *2 (Bankr. S.D.N.Y. Dec. 9, 2022) (same); *Picard v. Inteligo Bank Ltd. (In re Madoff)*, Adv. Pro. No. 11-02763 (CGM), 2022 WL 17742686, at *2 (Bankr. S.D.N.Y. Dec. 15, 2022) (same).  The District

Court has endorsed this holding, stating that the Court "correctly held, applying settled precedent, that by intentionally investing in a New York-based investment fund, Defendant 'purposefully availed itself of the privilege of' doing business in New York." *Lombard*, 2023 WL 395225, at *4 (citing *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)). Accordingly, the Court should hold that Tensyr's intentional investments with New York-based BLMIS, through Sentry, establish personal jurisdiction over Tensyr.

> ### b. *Walden* and *J. McIntyre* Do Not Save Tensyr from This Court's Jurisdiction

Tensyr's reliance on inapplicable case law does not change the jurisdictional analysis. Tensyr cites *Walden v. Fiore*, 571 U.S. 277 (2014), and argues that the Trustee's theory of jurisdiction inappropriately relies on Sentry's New York contacts. Mot. at 13–14. However, as this Court has held, *Walden* is of "no assistance" to subsequent transferee defendants like Tensyr who invested in a feeder fund with the specific goal of having funds invested with BLMIS in New York. *See Multi-Strategy I*, 641 B.R. at 87. This case is unlike *Walden*, where the "effects test" was employed to assess whether injuries in a tort case arose within the forum based on tortious activity outside the forum. *See* 571 U.S. at 288. Here, the Trustee alleges claims that arise from Tensyr's contacts made within the forum. Tensyr's reliance on *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011), is equally unavailing because the Trustee is not contending that the Court has jurisdiction over Tensyr based on a "stream-of-commerce" theory that was rejected in *McIntyre*. Mot. at 14. The Trustee alleges that Tensyr intentionally took actions in and toward New York and the United States.

> ### 2. Tensyr's Purposeful Use of New York Bank Accounts Supports Personal Jurisdiction

This Court has personal jurisdiction over Tensyr because Tensyr purposefully used the New York banking system to subscribe into and redeem from Sentry. *See* Am. Compl. ¶¶ 48, 50–

51; *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 &

n.18 (S.D.N.Y. 2016) ("Because [defendant] directed the wire transfers to a specifically designated

New York account for its own advantage, the receipt of the funds in New York is a 'contact'

properly attributed to [defendant]."). Tensyr agreed to, and did, deliver subscription funds to an

HSBC Bank USA correspondent bank account in New York in connection with its investments in

Sentry. Am. Compl. ¶ 48. Those funds were subsequently deposited into BLMIS's account in

New York at JP Morgan Chase Bank. *Id*. Tensyr also knowingly designated the Bank of New

York account in New York to send subscription payments to, and receive redemption payments

from, Sentry. *Id*. ¶ 50. Tensyr in fact received redemption payments in that account. *Id*.

Courts have routinely held, contrary to Tensyr's assertion, *see* Mot. at 11, that a defendant's

purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*,

*Eldesouky v. Aziz*, No. 11-CV-6986, 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding

jurisdiction under New York longarm statute based solely on defendant's use of New York account

to receive payment at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 381–

384 (S.D.N.Y. 2013) (same); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405, 2012

WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (same). In this SIPA liquidation proceeding in

particular, this Court has found jurisdiction where initial and subsequent transferee defendants

invested and received transfers through U.S. bank accounts. *See, e.g.*, *Picard v. Meritz Fire &

Marine Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044, at * 3

(Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account

to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating

to those transfers is constitutional.").

13

That Tensyr's Bank of New York account was a correspondent account, and that Sentry required use of its own New York account, does not change the analysis. On a certified question from the Second Circuit, the New York Court of Appeals held in *Licci v. Lebanese Canadian Bank, SAL* that the defendant's purposeful use of a correspondent account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established." 984 N.E.2d 893, 899–900 (2012); *see also id.* (explaining that a defendant's use of an account is "purposeful" provided it is neither coincidental nor passive). Tensyr's use of those accounts was not "incidental," as Tensyr claims, *see* Mot. at 11–12, and it is irrelevant that the PPMs required subscribers to use Sentry's New York account. Tensyr was "free to accept or reject the proposed terms." *See Bahrain Islamic Bank, Bisb v. Arcapita Bank B.S.C.(C)* (*In re Arcapita Bank B.S.C.(C)*), 640 B.R. 604, 617–18 (S.D.N.Y. 2022) (holding defendant's acceptance of contractual term designating New York correspondent account supported finding of personal jurisdiction); *see also In re Motors Liquidation Co.*, 565 B.R. 275, at 288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account purposeful where payment in New York was dictated by agreement). Tensyr's use of New York bank accounts therefore supports jurisdiction here.

### 3. Tensyr's Other Activities In New York Also Establish Minimum Contacts

Jurisdiction is also proper because of the actions that FGG and Natixis undertook on Tensyr's behalf, which were directed at New York and the United States. Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state" where the cause of action arises from those transactions. N.Y. C.P.L.R. § 302(a)(1) (emphasis added). The Trustee "need not establish a formal agency relationship" between Tensyr and its agents. *See Kreuter v. McFadden*

*Oil Corp.*, 522 N.E.2d 40, 44 (1988). "Under [N.Y. C.P.L.R. §] 302, it is sufficient that the alleged agent acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal." *Steinhardt v. Shadow*, No. 16-cv-4222, 2018 WL 4278335, at *2 (S.D.N.Y. Apr. 11, 2018) (cleaned up); *see also Picard v. Parson Fin. Pan. S.A. (In re Madoff)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *3–5 (Bankr. S.D.N.Y. Aug. 3, 2022) (finding personal jurisdiction established by meetings and correspondence between defendant's agents and FGG regarding defendant's investment in Sentry).

FGG and Natixis were not mere third parties whose contacts cannot be imputed to Tensyr, as Tensyr contends. Mot. at 15–16. Rather, they were Tensyr's co-creators and operators, who served as Tensyr's agents and acted for Tensyr's benefit. For example, New York-based FGG was Tensyr's manager and information agent. Am. Compl. ¶ 23. FGG's New York-based executives signed Tensyr's subscription agreements with Sentry. *Id.* ¶ 24. Tensyr's Sentry redemption confirmations were sent "C/O FAIRFIELD GREENWICH GROUP" at 919 Third Avenue in New York, New York, with New York-based FGG general counsel Mark McKeefry's name and email address listed. *Id.* ¶ 25. And New York-based FGG partners, including McKeefry, Jeffrey Tucker, Walter Noel, and Daniel Lipton, signed Tensyr's redemption requests on Tensyr's behalf. *Id.* ¶ 26. FGG, in connection with its efforts to obtain a rating for Tensyr, met with at least two ratings agencies at its New York office. *Id.* ¶ 39.

Tensyr also conducted business in New York through its agent Natixis. Indeed, Natixis presented the idea of creating Tensyr to FGG during a meeting in New York. *Id.* ¶¶ 40–41. Natixis and FGG drafted and revised talking points for a meeting with Madoff in New York to persuade "Uncle Bernie" to approve Tensyr. *Id.* ¶ 42. After he did so, Natixis structured the Tensyr notes program, underwrote related transactions, and selected and liaised with U.S.-based ratings

agencies, law firms, and other service providers to facilitate the necessary transactions on Tensyr's behalf. *Id.* ¶¶ 27, 44. Natixis also drafted the Tensyr Ratings Memo so that New York-based ratings agencies could evaluate, and attract more investors for, Tensyr. *Id.* ¶ 28. Natixis held numerous meetings in New York about Tensyr. *Id.* ¶ 40. FGG and Natixis also worked together on Tensyr's behalf in New York for Tensyr's benefit. For example, Natixis and New York-based FGG personnel communicated extensively via email and phone regarding Tensyr, its operation, and the Tensyr Ratings Memo. *Id.* ¶ 43.

These contacts with New York support this Court's jurisdiction over Tensyr. In *Parson Finance*, for example, this Court exercised personal jurisdiction over the defendant when the defendant's agents met with FGG in New York, and frequently corresponded with and held phone calls with FGG regarding Sentry and Madoff, in addition to defendant's execution of a Sentry subscription agreement and use of New York bank accounts. 2022 WL 3094092, at *3–5; *see also Meritz*, 2022 WL 3273044, at *4 (exercising personal jurisdiction over defendant who met with FGG and sought meeting with Madoff in New York); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673, 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (finding that email, telephone, and video communications with a company in New York subjected defendant to personal jurisdiction). Tensyr's contacts with New York are even stronger because FGG itself was Tensyr's agent.

Tensyr tries to dispute some of the Trustee's allegations regarding personal jurisdiction, Mot. at 16, despite that they must be construed in the light most favorable to the Trustee. *See Dorchester,* 722 F.3d at 85. For example, Tensyr claims that FGG "does not exist," Mot. at 16. But this argument disregards the Court's holding in *In re Fairfield Sentry Ltd.* that the Trustee had stated a plausible claim that FGG was a de facto New York partnership. 627 B.R. at 563 ("Intent

16

of the Defendants to form FGG is clear from the complaint, which lays out a rather lengthy story of familial relations knowingly cashing in on a fraudulent scheme orchestrated by Madoff."). FGG did exist, and the business it conducted in New York on Tensyr's behalf supports jurisdiction. Am. Compl. ¶¶ 3, 23–26. Moreover, at the motion to dismiss stage the Court must assume the truth of the Trustee's allegations about FGG. *See, e.g.*, *Dorchester*, 722 F.3d at 85 (noting that a Rule 12(b)(2) motion "assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency").

Tensyr also argues that Cayman-based Fairfield Greenwich Limited ("FGL"), and not FGG, served as Tensyr's information agent and leverage manager for its Sentry investments. Mot. at 16. But Tensyr's use of FGL as one agent does not mean Tensyr did not use others. Furthermore, Tensyr's own submissions to the Court show that FGL was composed of the same cast of New York-based characters as FGG. *See* Chislett Decl., Ex. C at 21, ECF No. 205-3; Chislett Decl., Ex. D at 26, ECF No. 205-4. Jeffrey Tucker signed FGL's Information Agency and Leverage Management agreements with Tensyr—the same Jeffrey Tucker who steered FGG "in unison" as a "single cohesive unit" with Walter Noel and Andrés Piedrahita. *See In re Fairfield Sentry Ltd.*, 627 B.R. at 562 (quoting the Fairfield SAC). If anything, which entity Tucker may have been acting for at a given time is a question of fact that, at this point, must be resolved in the Trustee's favor. *See Dorchester*, 722 F.3d at 85 (pleadings are to be construed in the light most favorable to the plaintiff). And either way, Tucker (and other FGG members working for Tensyr) were in New York when they were so acting. Am. Compl. ¶ 26.

Tensyr also asserts that "contacts with New York that occurred before Tensyr existed [cannot] support personal jurisdiction over Tensyr." Mot. at 17. However, Tensyr cites no support for this claim, and it is incorrect. As courts in this Circuit have recognized: "A corporation's pre-

17

incorporation activities can be taken into account in the jurisdictional analysis" where the corporation later ratifies those activities. *Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 419 (E.D.N.Y. 2017).

Natixis and FGG, in acting as Tensyr's promoters prior to its incorporation, established contacts with the forum imputable to Tensyr post-incorporation. *See id.*; *see also Rees v. Mosaic Techs., Inc.*, 742 F.2d 765, 768–69 (3d Cir. 1984) (holding that the pre-incorporation activities of a company's promoter can be considered in the jurisdictional analysis). Further, Tensyr ratified Natixis's and FGG's actions, including by holding meetings in New York, investing with BLMIS through Sentry, and earning Natixis and FGG millions of dollars in fees through the Tensyr notes program. *See NOA, LLC v. Khoury*, No. 5:14-CV-114-FL, 2015 WL 13881738, at *5 (E.D.N.C. June 5, 2015) (imputing the pre-incorporation jurisdictional contacts of a company's promoter to the company where the promoter's meetings in the forum "led to the formation" of the company and "blossomed into a five year partnership"). Accordingly, there is no reason to discount FGG's and Natixis's contacts with the forum merely because some of them occurred before Tensyr's official formation. Rather, these contacts—like the many others that occurred after Tensyr was formed—support jurisdiction. *See Dev. Design Grp., Inc. v. Deller*, No. CCB-10-53, 2012 WL 1098603, at *18–19 (D. Md. Mar. 30, 2012) ("While the caselaw is 'sparse' on the effect of pre-incorporation promoter contacts on personal jurisdiction of a corporation, the cases that have addressed the question 'stand for the proposition that pre-incorporation activities of promoters that are later ratified by the corporation may be considered in evaluating personal jurisdiction.'").

### C.    Tensyr's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims

The Trustee's claims "arise out of or relate to" Tensyr's contacts with New York and the United States. This Court has repeatedly held that the Trustee's recovery actions against

subsequent transferees like Tensyr are "directly related to [their] investment activities with Fairfield [Sentry] and BLMIS." *Multi-Strategy I*, 641 B.R. at 88. As the Supreme Court has held, the "arise out of or relate to" test does not require a causal relationship. *See Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, at 1026–30 (2021). Rather, this test is satisfied if the defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 67–71 (requiring only that the claim not be "completely unmoored" from the transaction). Consistent with this Court's recent decisions, the Trustee's claims here are directly related to Tensyr's purposeful investment activities with Sentry and BLMIS in New York.

### D.    The Exercise of Personal Jurisdiction Over Tensyr Is Reasonable

Tensyr fails to present a compelling reason why personal jurisdiction would be unreasonable. *See Chloé*, 616 F.3d at 165 (finding "where the plaintiff has made a threshold showing of minimum contacts," the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). It "would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP Paribas*, 594 B.R. at 188. This is not that "rare" case. Tensyr is "not burdened by this litigation," as it has "actively participated in this Court's litigation for over ten years," is represented by U.S. counsel, and voluntarily submitted to the jurisdiction of New York courts and the application of New York law when it invested with Sentry. *See Multi-Strategy I*, 641 B.R. at 88; *see also Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 119–20 (Bankr. S.D.N.Y. 2011) (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). In addition, both the forum and the Trustee have a strong interest in litigating

BLMIS adversary proceedings in this Court. *See Multi-Strategy I*, 641 B.R. at 88–89. Accordingly, the Court's exercise of personal jurisdiction over Tensyr is reasonable.

### E.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If the Court were to find that the Trustee has not made a prima facie showing of jurisdiction over Tensyr, the Trustee respectfully requests jurisdictional discovery. *See Fairfield Sentry Ltd. v. HSBC Secs. Servs. (Luxembourg) S.A.*, Nos. 21-cv-10316, 21-cv-10334, 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding that a plaintiff need not establish a prima facie case for jurisdiction to obtain jurisdictional discovery). The Trustee has shown that Tensyr subscribed to Sentry for the purpose of investing in the U.S. securities markets, repeatedly used U.S. bank accounts to transact business with Sentry, and had significant contacts with FGG personnel and even Madoff in New York. *See supra* Section I.B.–C. These facts establish at least a "threshold showing" of jurisdiction sufficient to warrant jurisdictional discovery. *See Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, No. 18-cv-11099, 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020) (holding that plaintiff was entitled to jurisdictional discovery where plaintiff had made a "sufficient threshold showing toward establishing personal jurisdiction").

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM TENSYR

Tensyr argues that Section 546(e) bars the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pleaded Sentry's actual knowledge. Mot. at 19–27. However, Tensyr received all of the subsequent transfers at issue less than two years before the filing date, Am. Compl., Ex. D, so even if Tensyr were correct about the applicability of Section 546(e) (which it is not), the Amended Complaint would not be dismissed. *See infra* Section II.C (establishing that the Section 548(a)(1)(A) exception to Section 546(e) applies). Furthermore, Tensyr's argument is incorrect—regardless of the timing of the transfers sought here. This Court has repeatedly ruled that Section 546(e) does not bar claims like

those against Tensyr, where, as here, the Trustee has pleaded that Sentry had actual knowledge of the BLMIS fraud, *see, e.g.*, *Multi-Strategy I*, 641 B.R. at 92–95, as has the District Court.  *See Koch Indus., Inc. v. Picard (In re BLMIS)*, No. 23-CV-0294 (VEC), 2023 WL 3317926, at *4 (S.D.N.Y. May 9, 2023) (denying direct appeal and interlocutory appeal because, among other things, this Court's decision is consistent with controlling law on the Section 546(e) issue); *Picard v. Multi-Strategy Fund Ltd.*, Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*") (denying interlocutory appeal of this Court's decisions denying seven motions to dismiss under Section 546(e), finding no reasonable grounds for disagreement as to this Court's orders).  These decisions are controlling, and Tensyr cannot distinguish them.

### A.    The Safe Harbor Does Not Apply Because the Trustee Pleads That Sentry Had Actual Knowledge of Madoff's Fraud

Tensyr argues that the Section 546(e) safe harbor applies even where the initial transferee knows of the BLMIS fraud.  Mot. at 21–22.  Tensyr is wrong.  Section 546(e) does not apply by its plain terms where a transferee has knowledge of a transferor's fraud.  *See, e.g.*, *SIPC v. BLMIS (In re Madoff)*, No. 12-115-(JSR), 2013 WL 1609154, at *3 (S.D.N.Y. Apr. 15, 2013).  Because— as Tensyr concedes—the Trustee has pleaded Sentry's actual knowledge, the Section 546(e) safe harbor does not apply.  Mot. at 23 n. 9 ("Tensyr recognizes that the Court has elsewhere held that the Trustee has adequately pleaded that Fairfield Sentry had the required knowledge.") (citing *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *4–6 (Bankr. S.D.N.Y. Aug. 6, 2021)).[3]  For that reason too, Tensyr's further

---

[3] Despite its admission, Tensyr then contradicts itself in a footnote insisting the opposite—that, notwithstanding the Court's decisions otherwise—the Trustee has not pleaded actual knowledge because he cannot incorporate the Fairfield SAC.  Mot. at n.9. To make its argument, Tensyr ironically incorporates the Natixis motion to dismiss.  *Id.* However, Tensyr's argument is untenable given the Court's repeated holdings that the Trustee may incorporate the Fairfield SAC to demonstrate the avoidability of Sentry initial transfers.  *See, e.g.*, *Picard v. SNS Bank N.V. (In re*

assertions, Mot. at 20, that Sentry is a "financial institution" and initial transfers to Sentry were "settlement payments" are irrelevant.[4]  *See Multi-Strategy I*, 641 B.R. at 92–93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4).[5]

**B.      Section 546(e) Is Not Independently Available to Tensyr as a Subsequent Transferee**

Tensyr is also wrong that Section 546(e) protections apply independently to subsequent transferees.  Mot. at 19–21.  As this Court recently held, Section 546(e) "is not applicable to subsequent transfers," and a subsequent transferee like Tensyr is "not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee."  *Multi-Strategy I*, 641 B.R. at 94–95; *see also* 11 U.S.C. § 546(e) ("[T]he trustee may not avoid a transfer . . . except under section 548(a)(1)(A) of this title."); *Koch Indus.*, 2023 WL 3317926, at *2 (acknowledging Judge Rakoff's ruling in *Multi-Strategy II* that "the Safe Harbor, by its terms, applies only to the 'initial transfer'").

**C.      The Section 548(a)(1)(A) Exception to the Safe Harbor Applies**

Tensyr argues that the Trustee cannot rely on the Ponzi scheme presumption to plead BLMIS's fraudulent intent, and therefore the Section 548(a)(1)(A) exception to the Section 546(e) safe harbor does not apply.  Mot. at 21–27.  Tensyr is again wrong.

---

*Madoff)*, Adv. Pro. No. 12-01046 (CGM), 2023 WL 2395734, at *7–8 (Bankr. S.D.N.Y. Mar. 7, 2023); *Banca Carige*, 2022 WL 2387522, at *6–7.

[4] The Trustee does not concede that any agreements or transfers between Tensyr and Sentry activate the safe harbor under Section 546(e) or that any transferor or transferee is a "financial institution" or "financial participant" within the meaning of the safe harbor.  These issues are not relevant, however, because the avoidability of the initial transfers from BLMIS to Sentry turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Tensyr or "for the benefit of" Tensyr.

[5] Tensyr also argues that Section 546(e) applies based on separate agreements between Tensyr and Sentry, Mot. at 20–21, but this similarly provides no basis for granting the Motion.  The District Court addressed this hypothetical and confirmed that any such application of the Section 546(e) safe harbor is "fact-intensive," not "answerable on the pleadings," and best addressed "with a full factual record" before the court.  *Multi-Strategy II*, 2022 WL 16647767, at *8–9; *accord Picard v. Naidot & Co. (In re Madoff)*, Adv. Pro. No. 11-02733 (CGM), 2023 WL 3086753, at *8 (Bankr. S.D.N.Y. Apr. 25, 2023) (noting that the district court already held that this type of inquiry is "fact-specific" and "the Court should make such a determination with the benefit of a 'full factual record.'").

### 1.    The Ponzi Scheme Presumption Is the Law of This Circuit

This Court and the District Court have repeatedly held that the Trustee may rely on the

Ponzi scheme presumption to establish BLMIS's actual intent to hinder, delay, or defraud

creditors.  *See, e.g., Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*, 650 B.R. 24, 39 (Bankr.

S.D.N.Y. 2023) ("That BLMIS operated as a Ponzi scheme is well-established and the Court relies

on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual

intent on this issue." (citations omitted)).  Here, as in other adversary proceedings, the Trustee has

pleaded in detailed allegations that BLMIS engaged in a Ponzi scheme and that the initial transfers

to Sentry were made in furtherance of that scheme.[6]  Am. Compl. ¶¶ 70–95.  This suffices to plead

the avoidability of the relevant transfers.  *See, e.g., Picard v. ABN AMRO Bank N.V. (In re Madoff)*,

Adv. Pro. No. 10-05354 (CGM), 2023 WL 2358746, at *7 (Bankr. S.D.N.Y. Mar. 3, 2023) ("The

Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS' actual fraudulent

intent is presumed via the Ponzi scheme presumption."); *Picard v. Gerald & Barbara Keller Fam.*

*Tr. (In re Madoff)*, No. 21-CV-8678, 2022 WL 7219262, at *3 (S.D.N.Y. Oct. 6, 2022) (affirming

this Court's application of Ponzi scheme presumption); *Picard v. First Gulf Bank (In re Madoff)*,

Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *10 (Bankr. S.D.N.Y. July 18, 2022) ("The

---

[6] Tensyr argues that the initial transfers from BLMIS to Sentry were made with consideration and thus do not qualify for avoidance. Mot. at 26 (citing *Geltzer v. Barish (In re Geltzer)*, 502 B.R. 760 (S.D.N.Y. 2013)). However, *Geltzer* is distinguishable.  That case concerned a multi-party settlement agreement where a $4 million investment was divested and returned to an innocent investor. *Id.* at 764–65. Rather than suing the transferee and recipient of the $4 million transfer, the trustee sued another party to the settlement agreement under the theory that he was the beneficiary of the transfer. *Id.* at 767. The trustee in *Geltzer* neither alleged that the transferee received funds to which he was not entitled nor that the transfer could be avoided as an intentional fraudulent transfer. *Id.* at 770–71. For that reason, the *Geltzer* court concluded that the transfer could not be avoided under Section 548(a)(1)(A). *Id.* at 771. Here, BLMIS made the initial transfers to Sentry based on fraudulent and non-existent securities transactions in furtherance of the Ponzi scheme: "A transfer that constitutes an actual or intentional fraudulent conveyance under Section 548(a)(1)(A) may be avoided in its entirety—as to both invested principal and profits—whether or not the debtor received value in exchange for the transfer." *In re Bayou Grp., LLC*, 439 B.R. 284, 304 (S.D.N.Y. 2010).

Ponzi scheme presumption is the law of this Circuit and the Trustee is entitled to rely on it to allege BLMIS' intent.").

> ### 2.    The Amended Complaint Alleges Facts Sufficient to Establish That BLMIS Was a Ponzi Scheme

The detailed factual allegations in the Amended Complaint also satisfy the Trustee's burden for pleading fraudulent intent under Rule 9(b).  *See ABN AMRO Bank (Ir.)*, 650 B.R. at 38 ("Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied.").

The Trustee alleges: that Madoff operated the IA Business as a Ponzi scheme,[7] using money deposited by customers that BLMIS claimed to invest in securities, Am. Compl. ¶¶ 70, 74–77, that the IA Business had no legitimate business operations and produced no profits or earnings, *id*. ¶ 70, that Madoff admitted to operating the IA Business as a Ponzi scheme, *id*. ¶ 57, and that BLMIS employees were convicted of fraud or other crimes in connection with their participation in the Ponzi scheme.  *Id*. ¶ 60.  The Trustee further alleges that all funds received from BLMIS customers were commingled in BLMIS's JPMorgan Chase Bank account and were used to make distributions to, or payments for, other customers, to benefit Madoff and his family personally, and to prop up BLMIS's proprietary trading business.  *Id*. ¶ 75.  And the Trustee alleges that BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments.  *Id*. ¶ 78.

---

[7] *See Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 633 (Bankr. S.D.N.Y. 2007) (finding "the label 'Ponzi scheme' has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud").

These allegations, among others, amply establish that Madoff operated a Ponzi scheme through his IA Business (as he admitted in pleading guilty). *Picard v. Lisa Beth Nissenbaum Tr. (In re Madoff)*, No. 20 cv. 3140, 2021 WL 1141638, at *11 (S.D.N.Y. Mar. 24, 2021) ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme. The breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission." (citations omitted) (internal quotation marks omitted)).[8]

### 3. The Amended Complaint Independently Alleges BLMIS's Fraudulent Intent Through Badges of Fraud

Independent of the Ponzi scheme presumption, the Amended Complaint alleges BLMIS's fraudulent intent through multiple "badges of fraud" sufficient to satisfy Rule 9(b)."[9] *See, e.g.*, Am. Compl. ¶¶ 68–78, 86–87, 90–91, 95.

In particular, the Amended Complaint states that: BLMIS commingled customer funds and used them not to purchase securities, but to pay other customers, *id.* ¶¶ 64–95; BLMIS filed false audit reports, *id.* ¶¶ 72–73; BLMIS filed false reports with the SEC, *id.* ¶¶ 68–69; BLMIS was insolvent at all relevant times, *id.* ¶ 95; and that the IA Business had no legitimate business operations, and the proprietary trading business incurred significant losses, requiring fraudulent infusions of cash from the IA Business to continue. *Id.* ¶¶ 70–71, 77. This Court has found that such allegations sufficiently demonstrate BLMIS's actual fraudulent intent under Section 548(a)(1)(A). *See ABN AMRO Bank (Ir.)*, 650 B.R. at 39–40; *Picard v. JABA Assocs. LP (In re*

---

[8] *See also Picard v. Legacy Cap. Ltd. (In re Madoff)*, 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and that the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law).

[9] Tensyr's citation to *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) is misplaced because, as the Second Circuit has ruled, that case involved a bankruptcy liquidation, not a SIPA liquidation. *See Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184, 200–01 (2d Cir. 2020).

*Madoff*), 528 F. Supp. 3d 219, 236–38 (S.D.N.Y. 2021); *Nissenbaum Tr.*, 2021 WL 1141638, at *14–15.

Accordingly, Section 546(e) does not require dismissal of the Trustee's claims against Tensyr.

## III.    THE GOOD FAITH AFFIRMATIVE DEFENSE IS INAPPROPRIATE AT THE PLEADING STAGE

Although this Court has repeatedly rejected the "good faith" affirmative defense at this pleading stage, Tensyr makes the same argument, hoping this time the affirmative defense will work to dismiss the Trustee's claims.  It does not.

Affirmative defenses are fact-driven and require factual analyses and the presentation of evidence. *See United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss." (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013))).  The District Court has made clear that a defendant's good faith affirmative defense in particular can only be determined post-discovery. *See In re BLMIS*, No. 20-cv-02586, 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022); *see also Citibank*, 12 F.4th at 195 (noting that such a fact-intensive inquiry is determined "on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees"); *First Gulf Bank*, 2022 WL 3354955, at *10 ("This affirmative defense is [Defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint.").

Nevertheless, Tensyr argues that the issue is ripe to be considered now because the Amended Complaint itself supposedly pleads that Tensyr was not on inquiry notice of Madoff's fraud, and that Tensyr received Sentry redemptions for value.  Mot. at 27.  But this type of

26

argument applies only in the limited instance where an "insuperable bar to securing relief" is set forth on the face of the complaint. *Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011). That is not the case here.

For example, even if it were appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud (Mot. at 30) does not prove a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme); *see also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 402 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise"). Tensyr is a sophisticated entity that conducted its own investigations and diligence on investments—what it knew or ignored is a factual issue that will be investigated during discovery.

Value is also a fact-driven determination. *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial."); *see also id.* ("As to whether the Defendants 'gave value' in the form of surrendering shares in [Sentry], such a determination cannot be made as a matter of law or fact at this stage."). To the extent Tensyr argues that it gave value for its subsequent transfers because they were given in exchange for its redemption of shares from Sentry, the Court has already held that this cannot be decided at this stage. *See Picard v. Banque Syz & Co. SA (In re Madoff)*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019, at *11 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Bank Julius Baer & Co., Ltd. (In re Madoff)*, Adv. Pro. No. 11-02922 (CGM),

2022 WL 17726520, at *16–17 (Bankr. S.D.N.Y. Dec. 15, 2022); *Picard v. Bank Vontobel AG (In re Madoff)*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560, at *11–12 (Bankr. S.D.N.Y. Nov. 18, 2022); *First Gulf Bank*, 2022 WL 3354955, at *11; *Picard v. Credit Suisse AG (In re Madoff)*, Adv. Pro. No. 12-01676 (CGM), 2022 WL 17098739, at *9 (Bankr. S.D.N.Y. Nov. 21, 2022); *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (holding that whether subsequent transfer defendants "'gave value' in the form of surrendering shares . . . cannot be made as a matter of law or fact at this stage").

In sum, Tensyr's good faith defense is inappropriate for a final determination now. *Picard v. Platinum All Weather Fund Ltd. (In re Madoff)*, Adv. Pro. No. 12-01697 (CGM), 2023 WL 3514105, at *13–14 (Bankr. S.D.N.Y. May 17, 2023).

## IV.    THE TRUSTEE SUFFICIENTLY ALLEGES THAT TENSYR RECEIVED BLMIS CUSTOMER PROPERTY

The Amended Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Tensyr received subsequent transfers of stolen BLMIS customer property from Sentry.  Tensyr argues that the Amended Complaint falls short because it does not tie the subsequent transfers to specific initial transfers, because the Trustee's aggregated claims to recover subsequent transfers made by Sentry across all adversary proceedings exceed the total amount Sentry received in initial transfers, and because Sentry exhausted all BLMIS customer property on hand before paying redemptions to Tensyr.  Mot. at 31–35.  This Court has rejected these arguments, advanced in numerous other motions to dismiss, finding that the Trustee has alleged the "vital statistics" of the subsequent transfers and that such fact-based tracing arguments were premature.[10]  The Court should reach the same result here.

---

[10] *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 90–91, 95–96; *First Gulf Bank*, 2022 WL 3354955, at *6, *11–12; *Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924, at *3–5 (Bankr. S.D.N.Y. July 15, 2022); *Picard v. Banque Cantonale Vaudoise (In re Madoff)*, Adv. Pro. No. 12-01694 (CGM), 2022

A.     **The Trustee Plausibly Alleges That All of the Subsequent Transfers Tensyr
       Received Contained Stolen BLMIS Customer Property**

The Trustee has met his pleading burden to allege that Tensyr received subsequent transfers

containing stolen BLMIS customer property.   The Trustee has not merely "assert[ed], in

conclusory fashion, that [Tensyr] received subsequent transfers."  Mot. at 32–33 (quoting *SIPC v.*

*BLMIS (In re Madoff)*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015)).   To the contrary, the Trustee

has sufficiently pleaded a subsequent transfer claim by alleging facts that support an inference

"that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R.

117, 149–50 (Bankr. S.D.N.Y. 2014) (citation omitted).

As this Court recently held, the Trustee is not required to perform a tracing analysis or to

present a "dollar-for-dollar accounting of the exact funds at issue."  *Multi-Strategy I*, 641 B.R. at

90 (quoting *BNP Paribas*, 594 B.R. at 195); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see*

*also Merkin*, 515 B.R. at 149–50 ("The plaintiff's burden at the pleading stage is not so onerous

as to require dollar-for-dollar accounting of the exact funds at issue." (quoting *Picard v. Charles*

*Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10–04398 (BRL), 10–05219 (BRL), 2012 WL

892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) (cleaned up))).   Rather, "the Trustee need only

allege sufficient facts to show the relevant pathways through which the funds were transferred

from BLMIS to [the subsequent transferee]."  *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3;

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747

(Bankr. S.D.N.Y. 2019) (same).   In addition, the Trustee "must allege the necessary vital

WL 2761044, at *3, *6 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523, at *6, *10–11 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier*
*& Cie (In re Madoff)*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556, at *3, *6–7 (Bankr. S.D.N.Y. June 30,
2022); *Banca Carige*, 2022 WL 2387522, at *6–8; *Picard v. Lloyds TSB Bank PLC (In re Madoff)*, Adv. Pro. No. 12-
01207 (CGM), 2022 WL 2390551, at *3, *6–7 (Bankr. S.D.N.Y. June 30, 2022); *Banque Syz*, 2022 WL 2135019, at
*7, *11–12; *Picard v. Korea Exch. Bank (In re Madoff)*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *6–
7, *10–11 (Bankr. S.D.N.Y. Sept. 21, 2022).

statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy I*, 641 B.R. at 90 (quoting *BNP Paribas*, 594 B.R. at 195).

The Trustee's Amended Complaint meets these requirements. It alleges that Tensyr received transfers, identified by date and amount, from Sentry, and that Sentry invested all or substantially all of its funds with BLMIS. Am. Compl. ¶¶ 3–9, 50, 98–106, 115–121, 126–29, 135–38, Exs. A, B, D. The Amended Complaint therefore plausibly alleges that Tensyr received subsequent transfers of customer property by (1) outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Tensyr, and (2) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required at this stage. *See Multi-Strategy I*, 641 B.R. at 95 (holding that such exhibits suffice to "provide[] [Defendants] with the 'who, when, and how much' of each transfer"); *see also SNS Bank*, 2023 WL 2395734, at *11.[11]

## B.    Tensyr Misstates the Trustee's Pleading Burden

Unable to show that the Trustee fails to meet the relevant pleading burden, Tensyr uses a new one, asserting that the Trustee must trace and tie each subsequent transfer Tensyr received to a specific initial transfer from BLMIS. Mot. at 32 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015)). But that is not the Trustee's pleading burden. *See, e.g., Picard*

---

[11] *See also Banque Syz*, 2022 WL 2135019, at *12; *Banca Carige*, 2022 WL 2387522, at *7; *Lloyds TSB Bank*, 2022 WL 2390551, at *6; *First Gulf Bank*, 2022 WL 3354955, at *11; *Parson Fin. Pan.*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Picard v. Schroder & Co. Bank AG (In re Madoff)*, Adv. Pro. No. 12-01210 (CGM), 2022 WL 4493225, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022); *Picard v. Quilvest Fin. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02538 (CGM), 2022 WL 4493184, at *7 (Bankr. S.D.N.Y. Sept. 27, 2022); *Barfield Nominees*, 2022 WL 4542915, at *8; *Picard v. Abu Dhabi Inv. Auth. (In re Madoff)*, Adv. Pro. No. 11-02493 (CGM), 2022 WL 16558049, at *9 (Bankr. S.D.N.Y. Oct. 31, 2022); *Picard v. Fullerton Cap. PTE Ltd. (In re Madoff)*, Adv. Pro. No. 12-01004 (CGM), 2022 WL 16556714, at *7 (Bankr. S.D.N.Y. Oct. 28, 2022); *Bank Vontobel*, 2022 WL 17087560, at *10; *Bank Julius Baer*, 2022 WL 17726520, at *14 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

*v. Cathay Life Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325, at *7 (Bankr. S.D.N.Y. Nov. 1, 2022) ("The Trustee need not prove the path that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming shareholder."); *Merkin*, 515 B.R. at 150 (refusing to dismiss subsequent transfer claims even where the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS"); *see also 45 John Lofts*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, the Court has already rejected the argument that the Trustee must detail the portion of each subsequent transfer that comprises customer property. *See Korea Exch. Bank*, 2022 WL 4371908, at *10–11 (refusing to "hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not"); *Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable").

Tensyr also implies that the Trustee has a heightened pleading burden because he purportedly has access to "all of Fairfield Sentry's financial information." Mot. at 34–35. Tensyr does not specify what this supposed "financial information" is or why the Trustee's purported "access" is sufficient, but the contention is untrue. The Trustee does not have all of Sentry's books and records, let alone all of its "detailed financial information," Mot. at 34, and, as this Court is aware, discovery in the Trustee's actions against the Fairfield management defendants is ongoing. *See, e.g.*, Stipulated Am. Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting November 22, 2023, deadline for fact discovery and August 23, 2024, deadline for expert discovery).

C.       Tensyr's Remaining Arguments Fail on a Motion to Dismiss

Tensyr's remaining arguments that the Trustee has not plausibly alleged that Tensyr's subsequent transfers consisted of BLMIS customer property, Mot. at 33–34, also fail.

First, Tensyr argues it is "mathematically implausible" that the subsequent transfers it received contain BLMIS customer property because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS.  Mot. at 3, 33–34.  This argument misses the point.  While there is no dispute that the Trustee is limited to 'a single satisfaction' under § 550(a)," he may still pursue any and all subsequent transferees in order to achieve that satisfaction."  *Multi-Strategy I*, 641 B.R. at 95 (citing 11 U.S.C. § 550(d)).  Until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee is free to seek recovery from any and all Sentry subsequent transferees, including Tensyr.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12; *see also CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.*), 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008) (permitting recovery from a subsequent transferee "without the necessity for allocation amount all subsequent transferees").

Second, Tensyr claims that its subsequent transfers lacked customer property because Sentry supposedly had sources other than BLMIS to fund them.  Mot. at 33.[12]  However, Tensyr does not disclose the tracing methodology used to reach this conclusion—and for good reason.  Only this Court can decide, after fact and expert discovery, the appropriate tracing methodology to use in this adversary proceeding.  *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7

---

[12] Tensyr's only support for the assertion that "to make Redemption Payments, Sentry . . . utilized subscription monies of other investors on hand that were directed for investment in BLMIS," is an allegation in a complaint filed by the Fairfield Liquidators, not the Trustee.  *See* Mot. at 33 (citing First Am. Compl. ¶ 63, *Fairfield Sentry Ltd. v. Citco Glob. Cust. NV*, Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19).  There is no basis to impute the Fairfield Liquidators' allegations to the Trustee, so these allegations may not be considered on this Motion.

("Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources." (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them.")))); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10–03493 (SMB), 10–05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Third, Tensyr's assertion that Sentry exhausted all BLMIS customer property on hand before paying redemptions to Tensyr, Mot. at 33–34, relies on the factual assumption that every subsequent transfer that preceded the subsequent transfers to Tensyr was sourced solely from customer property. In support, Tensyr relies entirely on exhibits to pleadings in other adversary proceedings. *Id.* at 34; Vandergeest Decl. ¶¶ 7–10, ECF No. 206. However, those exhibits do not establish that fact. Furthermore, at this stage of the proceedings, the Trustee is not required to plead, let alone prove, that an alleged subsequent transfer consisted entirely of customer property. *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (holding that even where debtors' funds were commingled with investors' funds, that a trustee is not required to establish at the summary judgment stage that transfers "originated solely" with the debtor or to account for "the exact funds at issue").

Finally, Tensyr's arguments, absent discovery, are premature. "[I]n a case such as this one, where 'the [T]rustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317,

329 (Bankr. S.D.N.Y. 2011) (quoting *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999)).   This is one reason why this Court in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants."   515 B.R. at 151.   And even after fact discovery, expert opinion is necessary to determine what portion of a subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts.   *See Picard v. Merkin (In re Madoff)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property); *see also SNS Bank*, 2023 WL 2395734, at *12 ("The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.").

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Tensyr's Motion.

Dated:   June 16, 2023
          New York, New York

/s/ Joanna F. Wasick
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Carlos Ramos-Mrosovsky
Email: cramosmrosovsky@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*