**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION : Adv. Pro. No. 08-01789 (CGM)
CORPORATION, :
                                            : SIPA Liquidation
          Plaintiff-Applicant, :
                                            : (Substantively Consolidated)
     v.                                     :
                                            :
BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, :
                                            :
          Defendant. :
                                            :
                                            :
In re: :
                                            :
BERNARD L. MADOFF, :
                                            :
          Debtor. :
                                            :
                                            :
IRVING H. PICARD, Trustee for the :
Liquidation of Bernard L. Madoff Investment :
Securities LLC, : Adv. Pro. No. 11-02733 (CGM)
                                            :
          Plaintiff, : **ANSWER TO AMENDED**
                                            : **COMPLAINT AND JURY DEMAND**
     v.                                     :
                                            :
NAIDOT & CO. and BESSEMER TRUST :
COMPANY, :
                                            :
          Defendants. :

---------------------------------------------------------------X

Defendants Naidot & Co. ("Naidot") and Bessemer Trust Company ("BTC") (together, the "Defendants"), by their undersigned counsel, hereby respond to the Amended Complaint[1] of Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("Plaintiff" or "Trustee"), as follows:

## PRELIMINARY STATEMENT

Except as otherwise expressly admitted herein, Defendants deny each and every allegation in the Amended Complaint. Defendants state that the headings and subheadings throughout the Amended Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent that a response is required, the allegations in the headings and subheadings in the Amended Complaint are denied. In answering the allegations in the Amended Complaint, Defendants do not intend to waive, and do not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any of the allegations in the Amended Complaint. To the extent it is later determined that a response is required to any allegation Defendants claim has been mooted by a prior dismissal of the Trustee's claims, Defendants deny any such allegation. Defendants expressly reserve the right to amend and/or supplement this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

### I.      NATURE OF THE ACTION

1.  This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS "customer property," as defined by SIPA § 78*lll*(4), that was stolen as part of the massive Ponzi scheme perpetrated by Madoff and others.

---

[1] The Amended Complaint in *Picard v. Naidot & Co. et al.*, Adv. Pro. 11-02733 (Bankr. S.D.N.Y.), ECF No. 100, was filed on August 5, 2022. Unless otherwise specified, all "ECF No. __" citations refer to Adv. Pro. No. 11-02733.

**ANSWER:** The allegations in paragraph 1 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore deny those allegations, except admit that the Trustee purports to bring this action as trustee for the liquidation of BLMIS[2] pursuant to the Securities Investor Protection Act ("SIPA").

2. With this Amended Complaint, the Trustee seeks to recover at least $12,654,907 in subsequent transfers of BLMIS customer property (the "Subsequent Transfers") to Defendants. The Subsequent Transfers were obtained through the redemption of shares in BLMIS feeder fund Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Sentry invested all or substantially all of its assets with BLMIS's investment advisory business (the "IA Business").

**ANSWER:** The allegations in paragraph 2 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 2, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about Fairfield Sentry's accounts with BLMIS and therefore deny those allegations, and admit on information and belief that the Trustee seeks to recover approximately $12,654,907 that it alleges were subsequent transfers from Fairfield Sentry to Defendants.

3. BTC is a highly sophisticated private bank that is the founding entity of a group of companies commonly referred to as "Bessemer Trust," which provides investment management and other financial services to high net-worth individuals using a combination of internal and external money managers.

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Amended Complaint.

**ANSWER:** Defendants deny the allegations in paragraph 3 of the Amended Complaint,

except admit that BTC is a private bank and, along with its affiliates, provides investment

management and other financial services.

> 4.     BTC first invested in Fairfield Sentry in or around 1992,
> registering its shares in the name of Naidot, a partnership
> whose members were Bessemer Trust executives, including
> officers of BTC.  Naidot's purpose was to act as nominee for
> securities and other investments held by BTC.

**ANSWER:** Defendants deny the allegations in paragraph 4 of the Amended Complaint,

except admit that: (i) Naidot is a partnership whose members were Bessemer Trust executives

and/or employees, including BTC officers; and (ii) Naidot was organized to act as a nominee for

securities and other investments held by BTC.

## II.     BACKGROUND, THE TRUSTEE, AND STANDING

> 5.     On December 11, 2008 (the "Filing Date"), Madoff was
> arrested by federal agents for criminal violations of federal
> securities laws, including securities fraud, investment adviser
> fraud, and mail and wire fraud.    Contemporaneously,
> the U.S. Securities and Exchange Commission (the "SEC")
> commenced the District Court Proceeding.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 5 of the Amended Complaint and therefore deny those

allegations, except admit on information and belief that: (i) Madoff was arrested on or about

December 11, 2008; and (ii) the SEC filed a complaint against Madoff and BLMIS on or about

December 11, 2008.

> 6.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the
> SEC consented to combining its action with an application
> by the Securities Investor Protection Corporation ("SIPC").
> Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an
> application in the District Court alleging, among other things,
> that BLMIS could not meet its obligations to securities
> customers as they came due and its customers needed the
> protections afforded by SIPA.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Amended Complaint and therefore deny those allegations.

7.    Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

(a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3); and

(b) removed the case to this Court pursuant to SIPA § 78eee(b)(4).

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced order for a complete and accurate statement of its contents.

8.    By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced orders for a complete and accurate statement of their contents.

9.    On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced petition and order for a complete and accurate statement of their contents.

> 10.  At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Amended Complaint and therefore deny those allegations, except admit on information and belief that Madoff pled guilty to crimes, a judge sentenced him to prison, and Madoff stated that he "operated a Ponzi scheme" through BLMIS. Defendants respectfully refer the Court to the referenced criminal information and transcript of the plea hearing for a complete and accurate statement of their contents.

> 11.  On July 16, 2009, this Court entered an order granting the Trustee's motion to retain Windels Marx Lane & Mittendorf, LLP as special counsel on behalf of the consolidated estate, nunc pro tunc as of June 9, 2009.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced order for a complete and accurate statement of its contents.

> 12.  At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali

admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced criminal information and transcript of the plea hearing for a complete and accurate statement of their contents.

13.    At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the referenced criminal information and transcript of the plea hearing for a complete and accurate statement of their contents.

14.    On March 24, 2014, Daniel Bonventre, Annette Bongiorno, JoAnn Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Amended Complaint and therefore deny those allegations.

15.    As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers

made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER:** The allegations in paragraph 15 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore deny those allegations.

16. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

**ANSWER:** The allegations in paragraph 16 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore deny those allegations.

17. The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 544, 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:** The allegations in paragraph 17 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore deny those allegations.

### III.    SUBJECT MATTER JURISDICTION AND VENUE

18.    This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities & Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and SIPA § 78eee(b)(2)(A) and (b)(4).

**ANSWER:** The allegations in paragraph 18 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 18, except deny knowledge or information sufficient to form a belief as to truth of the allegation in paragraph 18 that the main SIPA case (Adv. Pro. No. 08-01789) was originally commenced in this Court and therefore deny that allegation, but admit that the main substantively consolidated SIPA case (Adv. Pro. No. 08-01789) is pending in this Court, and this is an adversary proceeding pending in this Court.

19.    This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

**ANSWER:** The allegations in paragraph 19 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 19, state that they do not consent to the issuance or entry of final orders or judgments by this Court, and demand a trial by jury of all issues that may be tried before a jury.

20.    Venue in this judicial district is proper under 28 U.S.C. § 1409.

**ANSWER:** The allegations in paragraph 20 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore deny those allegations.

> 21.    This adversary proceeding is brought under SIPA §§ 78fff(b) and 78fff-2(c)(3), 11 U.S.C. §§ 105(a) and 550, and other applicable law.

**ANSWER:** The allegations in paragraph 21 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 21, except admit that the Trustee has brought this adversary proceeding, purportedly pursuant to the cited statutes.

## IV.    BLMIS, THE PONZI SCHEME, AND MADOFF'S INVESTMENT STRATEGY

### A.    BLMIS

> 22.    Madoff founded BLMIS in 1960 as a sole proprietorship and registered it as a broker-dealer with the SEC. In 2001, Madoff changed the corporate form of BLMIS from a sole proprietorship to a New York limited liability company. At all relevant times, Madoff controlled BLMIS first as its sole member and thereafter as its chairman and chief executive.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Amended Complaint and therefore deny those allegations.

> 23.    In compliance with 15 U.S.C. § 78o(b)(1) and SEC Rule 15b1-3, and regardless of its business form, BLMIS operated as a broker-dealer from 1960 through 2008. Public records obtained from the Central Registration Depository of the Financial Industry Regulatory Authority Inc. reflect BLMIS's continuous registration as a securities broker-dealer during its operation. At all times, BLMIS was assigned CRD No. 2625.

SIPC's Membership Management System database also reflects BLMIS's registration with the SEC as a securities broker-dealer beginning in January 19, 1960. On December 30, 1970, BLMIS became a member of SIPC when SIPC was created and continued its membership after 2001 without any change in status. SIPC membership is contingent on registration of the broker-dealer with the SEC.

**ANSWER:** The allegations in paragraph 23 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and therefore deny those allegations.

24.     For most of its existence, BLMIS's principal place of business was 885 Third Avenue in New York City, where Madoff operated three principal business units: a proprietary trading desk, a broker-dealer operation, and the IA Business.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Amended Complaint and therefore deny those allegations.

25.     BLMIS's website publicly boasted about the sophistication and success of its proprietary trading desk and broker-dealer operations, which were well known in the financial industry. BLMIS's website omitted the IA Business entirely. BLMIS did not register as an investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Amended Complaint and therefore deny those allegations.

26.     For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its IA Business.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Amended Complaint and therefore deny those allegations.

27.    In 2006, BLMIS filed its first Form ADV (Uniform Application for Investment Adviser Registration) with the SEC, reporting that BLMIS had 23 customer accounts with total assets under management ("AUM") of $11.7 billion. BLMIS filed its last Form ADV in January 2008, reporting that its IA Business still had only 23 customer accounts with total AUM of $17.1 billion.  In reality, Madoff grossly understated these numbers.  In December 2008, BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion in AUM.  At all times, BLMIS's Form ADVs were publicly available.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Amended Complaint and therefore deny those allegations.

## B.    The Ponzi Scheme

28.    At all relevant times, Madoff operated the IA Business as a Ponzi scheme using money deposited by customers that BLMIS claimed to invest in securities.  The IA Business had no legitimate business operations and produced no profits or earnings.  Madoff was assisted by several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Amended Complaint and therefore deny those allegations.

29.    BLMIS's proprietary trading desk was also engaged in pervasive fraudulent activity.  It was funded, in part, by money taken from the BLMIS customer deposits, but fraudulently reported that funding as trading revenues and/or commissions

on BLMIS's financial statements and other regulatory reports filed by BLMIS. The proprietary trading business was incurring significant net losses beginning in at least mid-2002 and thereafter, and thus required fraudulent infusions of cash from the IA Business to continue operating.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Amended Complaint and therefore deny those allegations.

30. To provide cover for BLMIS's fraudulent IA Business, BLMIS employed Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz") as its auditor, which accepted BLMIS's fraudulently reported trading revenues and/or commissions on its financial statements and other regulatory reports that BLMIS filed. Friehling & Horowitz was a three-person accounting firm based out of a strip mall in Rockland County, New York. Of the three employees at the firm, one was a licensed CPA, one was an administrative assistant, and one was a semi-retired accountant living in Florida.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint and therefore deny those allegations.

31. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others. BLMIS's publicly available SEC Form X-17A-5 included copies of these fictitious annual audited financial statements prepared by Friehling & Horowitz.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Amended Complaint and therefore deny those allegations. Defendants respectfully refer the Court to the transcript of the plea hearing and the referenced SEC Form X-17A-5 for a complete and accurate statement of their contents.

13

*Madoff's Investment Strategy*

32.     In general, BLMIS purported to execute two primary investment strategies for BLMIS customers: the convertible arbitrage strategy and the split-strike conversion strategy (the "SSC Strategy"). For a limited group of BLMIS customers, primarily consisting of Madoff's close friends and their families, Madoff also purportedly purchased securities that were held for a certain time and then purportedly sold for a profit. At all relevant times, Madoff conducted no legitimate business operations using any of these strategies.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Amended Complaint and therefore deny those allegations.

33.     All funds received from BLMIS customers were commingled in a single BLMIS account maintained at JPMorgan Chase Bank. These commingled funds were not used to trade securities, but rather to make distributions to, or payments for, other customers, to benefit Madoff and his family personally, and to prop up Madoff's proprietary trading business.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Amended Complaint and therefore deny those allegations.

34.     The convertible arbitrage investment strategy was supposed to generate profits by taking advantage of the pricing mismatches that can occur between the equity and bond/preferred equity markets. Investors were told they would gain profits from a change in the expectations for the stock or convertible security over time. In the 1970s this strategy represented a significant portion of the total BLMIS accounts, but by the early 1990s the strategy was purportedly used in only a small percentage of BLMIS accounts.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Amended Complaint and therefore deny those allegations.

14

35.     From the early 1990s forward, Madoff began telling BLMIS customers that he employed the SSC Strategy for their accounts, even though in reality BLMIS never traded any securities for its BLMIS customers.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Amended Complaint and therefore deny those allegations.

36.     BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Amended Complaint and therefore deny those allegations.

37.     By 1992, the SSC Strategy purported to involve: (i) the purchase of a group or basket of equities intended to highly correlate to the S&P 100 Index; (ii) the purchase of out-of-the-money S&P 100 Index put options; and (iii) the sale of out-of-the-money S&P 100 Index call options.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Amended Complaint and therefore deny those allegations.

38.     The put options were to limit the downside risk of sizeable price changes in the basket. The exercise of put options could not turn losses into gains, but rather could only put a floor on losses. By definition, the exercise of a put option should have entailed a loss for BLMIS.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Amended Complaint and therefore deny those allegations.

39.     The sale of call options would partially offset the costs associated with acquiring puts but would have the detrimental effect of putting a ceiling on gains.  The call options would make it difficult, if not impossible, for BLMIS to perform as well as the market, let alone outperform the market, because in a rising market, calls would have been expected to be exercised by the counterparty.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Amended Complaint and therefore deny those allegations.

40.     The simultaneous purchase of puts and sale of calls to hedge a securities position is commonly referred to as a "collar."  The collar provides downside protection while limiting the upside.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Amended Complaint and therefore deny those allegations.

41.     If Madoff was putting on the same baskets of equities across *all* BLMIS accounts, as he claimed, the total notional value of the puts purchased and of the calls sold had to equal the market value of the equities in the basket.  For example, to properly implement a collar to hedge the $11.7 billion of AUM that Madoff publicly reported in 2006 would have required the purchase/sale of call and put options with a notional value (for each) of $11.7 billion.  There are no records to substantiate Madoff's sale of call options or purchase of put options in any amount, much less in billions of notional dollars.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Amended Complaint and therefore deny those allegations.

42.     Moreover, at all times that BLMIS reported its total AUM, publicly available information about the volume of exchange-traded options showed that there was simply not enough call option notional value to support the Madoff SSC Strategy.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Amended Complaint and therefore deny those allegations.

43.     Madoff could not be using the SSC Strategy because his returns drastically outperformed the market. BLMIS showed only 16 months of negative returns over the course of its existence compared to 82 months of negative returns in the S&P 100 Index over the same time period. Not only did BLMIS post gains that exceeded (at times, significantly) the S&P 100 Index's performance, it would also regularly show gains when the S&P 100 Index was down (at times significantly). Such results were impossible if BLMIS had actually been implementing the SSC Strategy.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Amended Complaint and therefore deny those allegations.

*BLMIS's Fee Structure*

44.     BLMIS charged commissions on purportedly executed trades rather than industry-standard management and performance fees based on AUM or profits. By using a commission-based structure instead, Madoff inexplicably walked away from hundreds of millions of dollars in fees.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Amended Complaint and therefore deny those allegations.

*BLMIS's Market Timing*

45.     Madoff also lied to customers when he told them that he carefully timed securities purchases and sales to maximize value. Madoff explained that he succeeded at market timing by intermittently entering and exiting the market. During the times when Madoff purported to be out of the market, he purported to invest BLMIS customer funds in U.S. Treasury

securities ("Treasury Bills") or mutual funds invested in Treasury Bills.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Amended Complaint and therefore deny those allegations.

46.     As a registered broker-dealer, BLMIS was required, pursuant to section 240.17a-5 of the Securities Exchange Act of 1934, to file quarterly and annual reports with the SEC that showed, among other things, financial information on customer activity, cash on hand, and assets and liabilities at the time of reporting. BLMIS's reported quarterly and year-end exits were undertaken to avoid these SEC requirements. But these exits also meant that BLMIS was stuck with the then-prevailing market conditions. It would be impossible to automatically sell all positions at fixed times, independent of market conditions, and win almost every time.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Amended Complaint and therefore deny those allegations.

47.     BLMIS's practice of exiting the market at fixed times, regardless of market conditions, was completely at odds with the opportunistic nature of the SSC Strategy, which does not depend on exiting the market in a particular month.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Amended Complaint and therefore deny those allegations.

*BLMIS Execution*

48.     BLMIS's execution showed a consistent ability to buy low and sell high, an ability so uncanny that any sophisticated or professional investor would know it was statistically impossible.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Amended Complaint and therefore deny those allegations.

### No Evidence of BLMIS Trading

49.   There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC Strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities.  There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC Strategy.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Amended Complaint and therefore deny those allegations.

50.   All exchange-listed options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").  The OCC has no records showing that BLMIS cleared any trades in any exchange-listed options.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Amended Complaint and therefore deny those allegations.

### The Collapse of the Ponzi Scheme

51.   The Ponzi scheme collapsed in December 2008, when BLMIS customers' request for redemptions overwhelmed the flow of new investments.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Amended Complaint and therefore deny those allegations, except admit on information and belief that BLMIS collapsed in December 2008.

52.     At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the BLMIS customers' fraudulent statements, and that BLMIS through its IA Business operated as a Ponzi scheme.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Amended Complaint and therefore deny those allegations, and respectfully refer the Court to the transcripts of the plea hearings for a complete and accurate statement of their contents.

53.     At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Amended Complaint and therefore deny those allegations.

## V.     BTC, THE BESSEMER TRUST GROUP OF COMPANIES, AND NAIDOT

### A.     BTC and Bessemer Trust

54.     Defendant BTC is a state-chartered bank and depository trust company in New Jersey. Its registered address is 100 Woodbridge Center Drive, Woodbridge, New Jersey 07095. Established in 1907, BTC is the founding entity in a group of predominantly U.S.-based companies that operate collectively using the trade name "Bessemer Trust."

**ANSWER:** Defendants deny the allegations in paragraph 54 of the Amended Complaint, except admit that: (i) BTC is a state-chartered bank and depository trust company in New Jersey; (ii) BTC was established in 1907; and (ii) BTC's registered address is 100 Woodbridge Center Drive, Woodbridge, New Jersey 07095.

55.     Bessemer Trust describes itself as a sophisticated multifamily office that provides "best-in-class expertise across investment

> management, wealth planning, and family office services,"
> with an investment approach that is "flexible and highly
> disciplined." By the end of 2008, Bessemer Trust had amassed
> "1,995 clients who h[ad] placed $51.6 billion under [its]
> supervision …."

**ANSWER:** Defendants admit that: (i) Bessemer Trust has described itself as a

sophisticated multifamily office that provides "best-in-class expertise across investment

management, wealth planning, and family office services," with an investment approach that is

"flexible and highly disciplined"; and (ii) by the end of 2008, Bessemer Trust had amassed 1,995

clients who had placed $51.6 billion under its supervision.

> 56. Since 1981, Bessemer Trust companies have been organized
> under a holding company parent, The Bessemer Group, Inc.,
> which has its principal place of business at the same
> Woodbridge, New Jersey address as BTC and Naidot.

**ANSWER:** Defendants admit that: (i) since 1981, Bessemer Trust companies have been

organized under The Bessemer Group, Incorporated; and (ii) The Bessemer Group, Incorporated

has its principal place of business at the same address as BTC and Naidot.

### B.    Naidot

> 57. Defendant Naidot is a New Jersey partnership (which has from
> time to time over many decades dissolved and reformed in the
> same name), which, according to its state regulatory filings,
> has the "limited purpose of having registered, in the name of
> the said partnership, stock, bonds, notes and other securities
> and property from time to time held by [BTC] in various
> fiduciary capacities." BTC registered its Fairfield Sentry
> shares in Naidot's name.

**ANSWER:** Defendants deny the allegations in paragraph 57 of the Amended Complaint,

except admit that Naidot & Co. is a New Jersey general partnership that acts as a nominee for

clients of BTC and, with respect to Fairfield Sentry, Naidot & Co. acted as the nominee entity.

> 58. Naidot and BTC shared a corporate address and Naidot's
> partners were solely or predominantly executives of Bessemer

Trust, including group Chief Financial Officer John G. MacDonald, Treasurer Daniel Murray and Corporate Controller Richard T. Murtagh, who were also officers of BTC during the relevant period.

**ANSWER:** Defendants admit that: (i) Naidot and BTC shared a corporate address; and

(ii) Naidot's partners were solely or predominantly executives of Bessemer Trust, including

group Chief Financial Officer John G. MacDonald, Treasurer Daniel Murray, and Corporate

Controller Richard T. Murtagh, who were also officers of BTC during the relevant period.

> 59.    Naidot was formed for the purpose of acting as BTC's nominee in connection with investments held by BTC. The Trustee has found no evidence that Naidot had any personnel apart from that of BTC or other Bessemer Trust entities.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 59 of the Amended Complaint, except admit that Naidot

was formed for the purpose of acting as a nominee in connection with investments held by

Bessemer Trust Company on behalf of its clients.

## VI.    PERSONAL JURISDICTION

> 60.    This Court has personal jurisdiction over Defendants pursuant to Bankruptcy Rule 7004 and the United States Constitution, as well as section 302 of the New York Civil Practice Law and Rules (McKinney 2003) ("N.Y. C.P.L.R.").

**ANSWER:** Paragraph 60 of the Amended Complaint states legal conclusions to which

no response is required. To the extent that a response is required, Defendants deny the

allegations in paragraph 60.

> 61.    Defendants are residents of the United States and New Jersey and shared an address in the State at all relevant times.

**ANSWER:** Defendants admit that they: (i) are residents of the United States and New

Jersey; and (ii) shared an address in New Jersey at all relevant times.

22

62.     Defendants purposely availed themselves of the laws and
        protections of the United States and the State of New York by,
        among other things, knowingly directing funds to be invested
        with New York-based BLMIS through Fairfield Sentry, which
        was created, operated, and controlled by Fairfield Greenwich
        Group ("FGG"), a New York-based *de facto* partnership.
        Defendants knowingly received subsequent transfers of
        customer property from BLMIS.  By directing investments
        through Fairfield Sentry, Defendants knowingly accepted the
        rights, benefits, and privileges of conducting business and/or
        transactions in the United States and New York.

**ANSWER:** Paragraph 62 of the Amended Complaint states legal conclusions to which

no response is required.  To the extent that a response is required, Defendants deny the

allegations in paragraph 62.

63.     Each time an investor invested with Fairfield Sentry it signed
        a subscription agreement affirming that it submitted to venue
        in New York, the jurisdiction of the New York courts, the
        service of process out of the New York courts, and the
        application of New York law.  Specifically, Fairfield Sentry
        investors (i) "agree[d] that any suit, action or proceeding . . .
        with respect to this Agreement and the Fund may be brought
        in New York," (ii) "irrevocably submit[ted] to the jurisdiction
        of the New York courts with respect to any [p]roceeding," (iii)
        "consent[ed] to the service of process out of any New York
        court," and (iv) agreed that "[t]his Agreement shall be
        governed and enforced in accordance with the laws of New
        York . . . ."

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 63 of the Amended Complaint and therefore deny those

allegations, and to the extent that paragraph 63 refers to a document, Defendants respectfully

refer the Court to that document for a complete and accurate statement of its contents, while

denying the Trustee's allegations related to that document.

64.     In subscription agreements with Fairfield Sentry, investors
        also affirmed they had received and read the fund's
        information memorandum or private placement memorandum
        ("PPM").   Based on the information contained in these

materials, Defendants knew the following facts indicating that they were transacting business in New York by directing investments through Fairfield Sentry:

- Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS;
- BLMIS performed all investment management duties for these assets;
- BLMIS was registered with the SEC;
- BLMIS was the executing broker for Fairfield Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf;
- BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and Treasury Bills, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York;
- BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and
- BLMIS was "essential to the continued operation of" Fairfield Sentry.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Amended Complaint and therefore deny those allegations, and to the extent that paragraph 64 refers to a document, Defendants respectfully refer the Court to that document for a complete and accurate statement of its contents, while denying the Trustee's allegations related to that document.

65.     Defendants thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER:** Paragraph 65 of the Amended Complaint states legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 65.

## VII.    RECOVERY OF SUBSEQUENT TRANSFERS

### A.    Initial Transfers from BLMIS to Fairfield Sentry

66.    The Trustee commenced a separate adversary proceeding against Fairfield Sentry and other defendants in this Court under the caption, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (CGM), seeking to avoid and recover initial transfers of customer property from BLMIS to Fairfield Sentry in the approximate amount of $3,000,000,000 (the "Fairfield Sentry Initial Transfers").

**ANSWER:** Defendants admit that the Trustee commenced a separate adversary proceeding styled as *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro No. 09-01239 (CGM) (the "Sentry Action"), except lack knowledge or information sufficient to form a belief as to the truth of the allegation of the amounts of the transfers alleged in paragraph 66 of the Amended Complaint and therefore deny such allegations.  To the extent that any further response is required, Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 and therefore deny such allegations.

67.    By orders dated June 7 and June 10, 2011, this Court approved a settlement among the Trustee, Fairfield Sentry, and others, and on July 13, 2011, entered a consent judgment in favor of the Trustee and against Fairfield Sentry in the amount of $3,054,000,000 ("Judgment Amount") [ECF No. 109].

**ANSWER:** Defendants admit on information and belief that the Court entered orders and a judgment as described in paragraph 67 on or about the dates alleged therein, and respectfully refer the Court to the referenced orders and the referenced judgment for a complete and accurate statement of the contents thereof.

68.    The Fairfield Sentry Initial Transfers are set forth in the attached Exhibits A and B.  The Fairfield Sentry Initial Transfers were and continue to be customer property within the meaning of SIPA § 78*lll*(4).

25

**ANSWER:** Paragraph 68 of the Amended Complaint states legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 68, except admit that Exhibits A and B are attached to the Amended Complaint.

> 69. On August 28, 2020, the Trustee filed a second amended complaint in the *Fairfield Sentry Ltd.* proceeding ("Second Amended Complaint") [ECF No. 286] seeking in part recovery of the Fairfield Sentry Initial Transfers in satisfaction of the Judgment Amount and entry of a declaratory judgment that the Fairfield Sentry Initial Transfers comprising the Judgment Amount are avoided.

**ANSWER:** Defendants: (i) admit that the Trustee filed a second amended complaint in the "*Fairfield Sentry Ltd.* proceeding," and refer the Court to the Second Amended Complaint for a complete and accurate statement of its contents; and (ii) deny the remaining allegations in Paragraph 69.

> 70. As alleged in the Second Amended Complaint, Fairfield Sentry received each of the Fairfield Sentry Initial Transfers with actual knowledge of fraud at BLMIS. The Trustee incorporates by reference the allegations contained in the Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16.

**ANSWER:** Defendants: (i) lack knowledge or information sufficient to form a belief as to the truth of the allegation that Fairfield Sentry had actual knowledge of fraud at BLMIS and therefore deny such allegation; (ii) lack knowledge or information sufficient to form a belief as to the truth of the allegations in each and every paragraph of the Second Amended Complaint that allegedly support the claim that Fairfield Sentry had actual knowledge of fraud at BLMIS and therefore deny such allegations; and (iii) object to the incorporation by reference of, and therefore do not answer, each and every other paragraph and allegation in the Second Amended Complaint and to the inclusion in this adversary proceeding of any issue implicated by the

Second Amended Complaint other than the issue of the avoidance or avoidability of the initial

transfers of Customer Property, but reserve the right to rely on and introduce any allegations in

the referenced Second Amended Complaint or its exhibits as opposing party admissions

admissible for the truth of their contents. To the extent that any further response is required,

Defendants deny knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 70 of the Amended Complaint and therefore deny such

allegations.

> 71.    Of the Judgment Amount, $2,895,000,000 was transferred to
> Fairfield Sentry during the six years preceding the Filing Date
> (the "Fairfield Sentry Six Year Transfers"). Each of the
> Fairfield Sentry Six Year Transfers is avoidable under section
> 544 of the Bankruptcy Code and applicable provisions of the
> New York Debtor & Creditor Law, particularly §§ 273-279,
> and of SIPA, particularly § 78fff-2(c)(3).

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations in the first sentence of paragraph 71 of the Amended Complaint and

therefore deny those allegations. The remaining allegations in paragraph 71 state legal

conclusions to which no response is required. To the extent that any further response is required,

Defendants deny the allegations in paragraph 71.

### C.    Subsequent Transfers from Fairfield Sentry to Defendants

> 72.    Prior to the Filing Date, Fairfield Sentry subsequently
> transferred a portion of the Fairfield Sentry Initial Transfers to
> Defendants. Based on the Trustee's investigation to date, the
> Subsequent Transfers to Defendants total at least $12,654,907.
> A chart setting forth the presently known Subsequent
> Transfers is attached as Exhibit C.

**ANSWER:** The allegations in paragraph 72 of the Amended Complaint contain legal

conclusions to which no response is required. To the extent that a response is required,

Defendants deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 72 and therefore deny such allegations. To the extent that paragraph 72

refers to a document, Defendants respectfully refer the Court to that document for a complete

and accurate statement of its contents, while denying the Trustee's allegations related to that

document.

> 73. On September 22, 2011, the Trustee filed this action seeking recovery of the Subsequent Transfers.

**ANSWER:** Defendants admit the Trustee filed this action on September 22, 2011, but

otherwise deny the allegations set forth in paragraph 73.

> 74. The Subsequent Transfers are recoverable from Defendants under section 550(a) of the Bankruptcy Code, and applicable provisions of SIPA, particularly § 78fff-2(c)(3).

**ANSWER:** The allegations in paragraph 74 of the Amended Complaint contain legal

conclusions to which no response is required. To the extent that a response is required,

Defendants deny the allegations in paragraph 74.

> 75. The Subsequent Transfers represent a redemption of equity interest by Defendants in Fairfield Sentry. Because Fairfield Sentry invested all or substantially all of its assets into the BLMIS Ponzi scheme, Fairfield Sentry was insolvent when it made the Subsequent Transfers to Defendants upon redemption of Defendants' interests.

**ANSWER:** Defendants deny the allegation set forth in the first sentence of paragraph 75

of the Amended Complaint, and deny knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 75 and therefore deny such allegations.

> 76. The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the initial and subsequent transfers discussed above, and any additional subsequent transfers; and (ii) seek avoidance and recovery of such transfers.

**ANSWER:** Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the Amended Complaint and therefore deny those allegations.

## COUNT 1
### RECOVERY OF SUBSEQUENT TRANSFERS –
### 11 U.S.C. §§ 105(a) AND 550

77.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

**ANSWER:** Defendants incorporate by reference and reassert as if fully set forth herein their responses to the allegations of the Amended Complaint contained in each of the previous paragraphs of this Answer.

78.     The Subsequent Transfers are recoverable from Defendants under 11 U.S.C. § 550(a) and 15 U.S.C. § 78fff-2(c)(3).

**ANSWER:** The allegations in paragraph 78 of the Amended Complaint contain legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in paragraph 78.

79.     Defendants are immediate or mediate transferees of the Subsequent Transfers from Fairfield Sentry.

**ANSWER:** The allegations in paragraph 79 of the Amended Complaint contain legal conclusions to which no response is required.  To the extent that a response is required, Defendants deny the allegations in paragraph 79.

80.     As a result of the foregoing, pursuant to 11 U.S.C. §§ 105(a) and 550(a), and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendants: (a) recovering the Subsequent Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS; and (b) awarding any other relief as the Court deems appropriate.

**ANSWER:** The allegations in paragraph 80 of the Amended Complaint contain legal conclusions to which no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 80.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief sets forth legal conclusions to which no response is required. To the extent that a response is required, Defendants deny that the Trustee is entitled to the requested relief or to any other relief.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on Plaintiff. In the event that subsequent developments change the availability or nature of claims asserted by the Trustee, Defendants hereby preserve each and every defense at law, in equity, or otherwise, available under federal and state law, including common law. Further, Defendants reserve the right to amend this Answer to assert any other and further defenses, cross claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so. These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE

## Lack of Dominion or Control (11 U.S.C. § 550(a))

The Trustee's claims are barred, in whole or in part, because Defendants lacked dominion and control over funds allegedly received from the so-called Subsequent Transfers and Defendants were therefore not transferees for purposes of 11 U.S.C. § 550(a)(2).

## SECOND AFFIRMATIVE DEFENSE

### Good Faith (11 U.S.C. 550(b))

To the extent that Defendants received any so-called Subsequent Transfers, the Trustee may not recover the transfers under 11 U.S.C. § 550(b) because Defendants took the transfers, if any, from Fairfield Sentry for value, in good faith, and without knowledge of the voidability of the transfers from BLMIS to Fairfield Sentry.

*First*, on behalf of their respective client, Defendants gave value in the form of investment principal, in exchange for the redemption payments.

*Second*, Defendants did not have actual knowledge of any fraudulent purpose behind the transfers, if any, received. Defendants did not know facts that would have prompted a reasonable person in their position to conduct further inquiry into whether there was any fraudulent purpose behind the transfers.

Even if Defendants had been on inquiry notice of a possible fraudulent purpose behind the transfers received, if any, a diligent inquiry by Defendants would not have discovered such a fraudulent purpose. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than Defendants, and with more access to BLMIS's personnel and documentation than Defendants, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. Defendants did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud. Diligent inquiry by Defendants would not have discovered the fraudulent purpose of the transfers.

*Finally*, Defendants did not have knowledge of the alleged voidability of the transfers from BLMIS to Fairfield Sentry.

31

### THIRD AFFIRMATIVE DEFENSE

### Bankruptcy Code Safe Harbor (11 U.S.C. 546(e))

The Trustee's claims are barred, in whole or in part, because the alleged subsequent transfers to Defendants, if any, may not be recovered because the alleged initial transfers, if any, are subject to the safe harbor in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e).

### FOURTH AFFIRMATIVE DEFENSE

### No Customer Property (15 U.S.C. § 78fff-2(c)(3))

The Trustee's claims are barred, in whole or in part, because any property that Defendants received from the so-called Subsequent Transfers was not BLMIS customer property, or proceeds of BLMIS customer property, that BLMIS transferred to Fairfield Sentry, and therefore any such property is not recoverable by the Trustee from Defendants.

### FIFTH AFFIRMATIVE DEFENSE

### Initial Transfer Not Avoided (11 U.S.C. § 550(a))

The Trustee's claims are barred, in whole or in part, because the Trustee may not recover the alleged Subsequent Transfers because he has not avoided the alleged initial transfers from BLMIS to Fairfield Sentry.

### SIXTH AFFIRMATIVE DEFENSE

### No Ponzi Scheme Presumption

The Trustee's claims are barred, in whole or in part, because the Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to Fairfield Sentry that he seeks to recover from Defendants were made with actual intent to hinder, delay, or defraud any BLMIS creditor.

32

### SEVENTH AFFIRMATIVE DEFENSE

**Lack of Subject Matter Jurisdiction (U.S. Const. Art. III; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b))**

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

### EIGHT AFFIRMATIVE DEFENSE

**Failure to State a Claim (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))**

The Amended Complaint fails to state a claim upon which relief can be granted.

### NINTH AFFIRMATIVE DEFENSE

**Statute of Limitations**

The Trustee's claims are barred, in whole or in part, by the statute of limitations.

### TENTH AFFIRMATIVE DEFENSE

**Unreasonable Delay / Laches**

The Trustee's delay in bringing and prosecuting his claims, which were brought more than a decade ago and concern transfers made more than 15 years ago, is unreasonable and unfairly prejudices Defendants' ability to defend themselves.

### ELEVENTH AFFIRMATIVE DEFENSE

**Extraterritoriality**

The Trustee's recovery of any alleged transfers to Defendants would constitute an impermissible extraterritorial application of U.S. law.

### TWELFTH AFFIRMATIVE DEFENSE

**Comity**

The Trustee's recovery of any alleged transfers to Defendants would violate principles of comity.

### THIRTEENTH AFFIRMATIVE DEFENSE

### Violation of Due Process (U.S. Const. Amend. V)

The use of the doctrine of law of the case to apply to this Amended Complaint made in other adversary proceedings to which Defendants were not parties and in which they did not participate violates Defendants' right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

### FOURTEENTH AFFIRMATIVE DEFENSE

### Single Satisfaction (11 U.S.C. § 550(d))

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any alleged subsequent transfer from Defendants to the extent he has recovered from Fairfield Sentry or any other immediate or mediate transferee the amount of the avoided initial transfer that included the customer property that the Trustee alleges Defendants received.

### FIFTEENTH AFFIRMATIVE DEFENSE

### Indemnification & Contribution

Defendants are entitled to recover indemnity and/or contribution from others for any liability Defendants incur to the Trustee.

### SIXTEENTH AFFIRMATIVE DEFENSE

### Preservation of Rights (11 U.S.C. § 502(h))

To the extent the Trustee recovers from Defendants, Defendants reserve their right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

## SEVENTEENTH AFFIRMATIVE DEFENSE

### No Double Recovery

The Trustee's claim is barred, in whole or in part, to the extent that any other entity, including but not limited to the Liquidators of Fairfield Sentry Ltd. and related funds, recover any amounts based on the conduct alleged in the Amended Complaint because the Trustee is not entitled to double recovery, nor should Defendants be subject to recovery of identical funds from two separate entities.

On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Fairfield Sentry Limited and related Fairfield funds. This Court approved the Fairfield Settlement Agreement on June 7, 2011, and it was incorporated into the consent judgment entered against Fairfield on July 13, 2011. The Fairfield Settlement Agreement provides for the sharing of recoveries on the Trustee's and the Fairfield Liquidators' claims for recovery of property that Fairfield transferred, but the Trustee and the Fairfield Liquidators cannot both recover the same funds.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### Sufficient SIPC Funds

The Trustee's claim should be dismissed if there are recovered, now or during the pendency of this action, sufficient funds to reimburse the SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

## NINETEENTH AFFIRMATIVE DEFENSE

### No Interest

To the extent the Trustee recovers from Defendants, the Trustee is not entitled to an award of interest under the facts and equities of this action.

## JURY DEMAND

Defendants demand a trial by jury on all issues that may be tried by a jury.

### STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)

Defendants do not consent to entry of final orders or judgment by the Bankruptcy Court.

### DEFENDANTS' REQUEST FOR RELIEF

WHEREFORE, Defendants demand judgment dismissing the Amended Complaint with prejudice, and awarding Defendants attorneys' fees, costs, disbursements, and any further relief as the Court deems just and proper.

Dated: New York, New York
June 12, 2023

Ballard Spahr LLP

By: _James V. Masella, III_

James V. Masella, III
Gerard Belfort
Kelly Lin
BALLARD SPAHR LLP
1675 Broadway
19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942
E-mail: masellaj@ballardspahr.com
E-mail: belfortg@ballardspahr.com
E-mail: link@ballardspahr.com

*Attorneys for NAIDOT & CO. and BESSEMER TRUST COMPANY*