**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORP., | |
| Plaintiff, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INV. SEC. LLC, | (Substantively consolidated) |
| Defendant | |
| | |
| Irving Picard, Trustee, | |
| Plaintiff | |
| v. | Adv. P. No. 23-01098 (CJM) |
| Martin Sage and Sybil Sage, | |
| Defendants | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT AS UNTIMELY**
**UNDER THE ONE-YEAR STATUTE OF LIMITATIONS FIXED BY**
**BANKRUPTCY CODE SECTION 550(f)(1)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

PRELIMINARY STATEMENT .......................................................................1

STATEMENT OF THE CASE...........................................................................3

1.  The prior court avoidance proceedings established the statutory filing deadline
    for the Trustee's complaint.........................................................................3

    a.  The Trustee initiated proceedings in 2010 to avoid and recover initial
        transfers and certain alleged subsequent transfers ......................................3

    b.  In 2015 the bankruptcy court dismissed all subsequent transferee claims
        and limited the Trustee's right to pursue such claims only with leave of
        court or consistent with the Trustee's rights under Section 550(f)............................4

    c.  Discovery took four years to complete ....................................................5

    d.  The district court withdrew the reference to decide the case....................................5

    e.  On April 15, 2022, the district court entered orders of avoidance of the
        initial transfers, and the clerk recorded that date on the record................................6

    f.  The district court subsequently issued separate orders of recovery on
        April 20, 2022 ........................................................................7

2.  The Trustee filed this adversary complaint on April 19, 2023 .......................................7

    a.  The Trustee seeks to recover alleged subsequent transfers ......................................7

    b.  The Trustee filed the subsequent transferee complaint on April 19, 2023,
        more than "one year after the avoidance of the transfer on account of which
        recovery is sought." ........................................................................8

STATUTE AT ISSUE ........................................................................8

ARGUMENT: THE SUBSEQUENT TRANSFEREE ACTION IS UNTIMELY
AND MUST BE DISMISSED ........................................................................9

1.  The statute of limitations under Section 550(f)(1) begins to run once the court
    enters a final order avoiding a transfer - not when it enters a separate money
    judgment ........................................................................9

2.  The courts in this district have interpreted the Section 550(f)(1) limitations
    provision as mandating "finality" for purposes of providing notice and
    certainty to a trustee ......................................................................................................13

3.  The complaint does not plead that the statute of limitations should be equitably
    tolled .................................................................................................................................16

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*ASARCO LLC v. Shore Terminal LLC*,
 2012 WL 2050253 (N.D. Cal. 2012) ........................................................................14

*Caitlin v United States*,
 324 U.S 229 (1945).....................................................................................................10

*In re Century Brass Products, Inc.*,
 22 F.3d 37 (2d Cir. 1993)..........................................................................................11

*In re Extended Stay, Inc. (O'Connor v. DL-DW Holdings, L.L.C.)*,
 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) .............................................13

*Ford v. Union Bank (In re San Joaquin Roast Beef)*,
 7 F.3d 1413 (9th Cir. 1993) ......................................................................................11

*Grandfinanciera, SA v. Norberg*,
 492 U.S. 33 (1989).......................................................................................................2

*Johnson v. Nyack Hospital, et al.*,
 86 F.3d 8 (2d Cir. 1996)............................................................................................16

*In re Mediators, Inc.*,
 105 F.3d 822 (2d Cir. 1997).......................................................................................11

*In re New York Skyline, Inc.*,
 601 Fed. Appx. 52 (2d Cir. 2015) ...............................................................................2

*In re O.P.M. Leasing Services, Inc. (O.P.M. Leasing Services, Inc. v. Zimmerman)*,
 32 B.R. 199 (Bankr. S.D.N.Y. 1983) ........................................................................16

*Picard v. BNP Paribas, S.A. (In re BLMIS)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018).................................................................2, 14

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
 480 B.R. 501 (Bankr. S.D.N.Y. 2012).................................................................2, 14

*Picard v. Koch Industries, Inc. (In re Madoff)*,
 2022 WL 17098698 (Bankr. S.D.N.Y. Nov. 21, 2022) ...........................................15

*Rao v. NYC Dept. of Parks and Recreation*,
 1997 WL 538830 (S.D.N.Y. Aug. 29, 1997), *affirmed*, 159 F.3d 1347 (2d Cir. 1998). .......16

*In re Serrato (Decker v. Voisenat)*,
    233 B.R. 833 (Bankr. N.D. Cal. 1999) .......................................................2, 9, 10 *passim*

*SIPC. v. Bernard L. Madoff Inv. Sec. LLC. (In re Bernard L. Madoff Inv. Secs.)*,
    501 B.R. 26 (S.D.N.Y. 2013) .........................................................................................13

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y 2015) ............................................................................4

*Stern v. Marshall*,
    564 U.S. 462 (2011) .......................................................................................................2

*Stillman v. Marlboro State Hosp.*,
    2003 WL 22349677 (S.D.N.Y. Oct. 15, 2003) ............................................................16

*U.S. v. F. & M. Schaefer Brewing Co.*,
    356 U.S. 227 (1958) .....................................................................................................10

## **STATUTES**

Bankruptcy Code Section 546(a)(1),
    11 U.S.C. § 546(a)(1) .....................................................................................................11

Bankruptcy Code Section 546(e),
    11 U.S.C. § 546(e) ...........................................................................................................4

Bankruptcy Code Section 548,
    11 U.S.C. § 548 ................................................................................................................1

Bankruptcy Code Section 550,
    11 U.S.C. § 550 ................................................................................................................1

Bankruptcy Code Section 550(a)(2),
    11 U.S.C. § 550(a)(2) .......................................................................................................1

Bankruptcy Code Section 550(f)
    11 U.S.C. § 550(f) ............................................................................................................5

Bankruptcy Code Section 550(f)(1)
    11 U.S.C. § 550(f)(1) .........................................................................1, 2, 8 *passim*

08-01789-cgm    Doc 23310-1    Filed 06/23/23    Entered 06/23/23 12:43:43    Memorandum
of Law in support of motion to dismiss    Pg 6 of 23


## RULES

Bankruptcy Rule 9021 ......................................................................................................12

Fed. R. Civ. P. 12(b)(6)....................................................................................................1


## TREATISES

100 A.L.R.2d 1094...........................................................................................................15

2 Bankruptcy Law Manual § 9:61 .....................................................................................15

1 Bankruptcy Litigation 5 § 63 .........................................................................................15

v

## PRELIMINARY STATEMENT

Defendants Martin and Sybil Sage respectfully submit this memorandum of law in support of their Rule 12(b)(6)[1] motion to dismiss as untimely the trustee's adversary complaint seeking to recover certain alleged subsequent transfers.[2] Because the Trustee filed the complaint on April 19, 2023, which is past the one-year statutory deadline[3] from the April 15, 2022, date the district court entered the avoidance orders with respect to the initial transfers on which the alleged subsequent transfers are sought, the trustee's complaint is untimely.

In connection with the prior avoidance proceedings brought by the Trustee, the district court granted the avoidance request by order dated April 15, 2022, pursuant to Bankruptcy Code Section 548. One year from April 15, 2022, is thus the operative date in this case for computing the statutory limit for filing an action to avoid a subsequent transfer based on the grant of avoidance of the initial transfers.

The Trustee may attempt to argue that April 20, 2022, is the operative date from which the statutory limit should be computed. It is not, as that date relates to a different order. Specifically, on April 20, 2022, the court separately granted an order of *recovery* of the transfers avoided by the April 15, 2022, orders. All courts that have considered the question have recognized that the *avoidance* remedy under the operative substantive statute such as Section 548 is separate and distinct from the *recovery* question under Section 550. Thus, the operative date is April 15, 2022.

---

[1]    Fed. R. Civ. P. 12(b)(6).

[2]    Recovery is sought pursuant to Bankruptcy Code Section 550(a)(2). All citations are to the 1978 Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

[3]    *See* Section 550(f)(1).

The courts that have considered the starting point for the statutory time limits fixed by Section 550(f)(1) have focused on the *finality* of the distinct avoidance question. To that end, the cases look to the date of the written order by a court charged with the avoidance decision. *See In re Serrato (Decker v. Voisenat)*, 233 B.R. 833, 835 (Bankr. N.D. Cal. 1999); *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 522 (Bankr. S.D.N.Y. 2012) (Lifland, J.); *Picard v. BNP Paribas, S.A. (In re BLMIS)*, 594 B.R. 167, 207 (Bankr. S.D.N.Y. 2018) (Bernstein, J.). Because the final order of avoidance on which this complaint is based was entered on April 15, 2022, and the Trustee filed the complaint on April 19, 2023, the complaint is untimely.

The trustee admits in his complaint that the avoidance order was entered on April 15, 2022, thus admitting the operative fact as to the lack of timeliness of the subsequent transferee claims. In addition, the relevant facts are all judicially noticeable based on the clerks' records of the prior proceedings. Further, the Trustee fails to plead an equitable basis to toll the statute of limitations in this case. For these reasons, as we set forth below, we respectfully request that the adversary complaint be dismissed as untimely.[4]

---

[4]    In filing this motion to dismiss in this Court, the Defendants hereby reserve all rights of non-party defendants to a bankruptcy proceeding under *Stern v. Marshall*, 564 U.S. 462 (2011), and as those rights are recognized as parties to a fraudulent transfer claim in *Grandfinanciera, SA v. Norberg*, 492 U.S. 33 (1989). Neither Martin Sage nor his wife, Sybil, consent to bankruptcy jurisdiction over them. *See, e.g., In re New York Skyline, Inc.*, 601 Fed. Appx. 52, 54 (2d Cir. 2015).

## STATEMENT OF THE CASE

**1.  The prior court avoidance proceedings established the statutory filing deadline for the Trustee's complaint.**

   **a.  The Trustee initiated proceedings in 2010 to avoid and recover initial transfers and certain alleged subsequent transfers**

On November 30, 2010, the Trustee filed complaints against two Sage family investment vehicles, each of which also named as defendants Martin Sage, his siblings (Ann Sage Passer and Malcolm Sage), and his mother (Lillian Sage, who passed away during the proceedings). *See Picard v. Sage Associates,* 10-AP-04362, and *Picard v. Sage Realty,* 10-AP-04400. Sage Associates and Sage Realty were the sole account-holders at Bernard L. Madoff Investment Securities, LLC ("Madoff Securities"). Each complaint sought to avoid and recover certain initial transfers made from Madoff Securities to the respective company account holders and sought to hold Martin Sage and the other individual defendants liable for all transfers to such entities based on their alleged capacity as general partners in each entity. The complaints also sought to hold Martin liable as a subsequent transferee for certain unspecified transfers made by the entities directly to him.

The Trustee filed amended complaints on January 25, 2012. Citations in this Memorandum are to each of those amended complaints.[5]

The *Sage Associates* amended complaint sought to avoid and recover transfers received by Sage Associates that totaled $13,510,000. The *Sage Realty* amended complaint sought to avoid and recover transfers received by Sage Realty that totaled $5,245,000. As to the

---

[5]   The Amended Complaints do not appear on the clerk's docket of the prior adversary proceedings before the bankruptcy court. Rather, the Amended Complaints were apparently filed in consolidated proceedings before Judge Rakoff in 2012 under the docket Consolidated Case No. 11-cv-04936 (JSR).

subsequent transferee allegations, the amended complaints sought to avoid and recover

unspecified "subsequent transfers" to Martin Sage, who is labeled in each amended complaint as

a "Subsequent Transferee Defendant."[6] Notably, Sybil Sage is not named in either complaint,

and no claim was asserted against her in the prior proceedings.

As relevant here, the Trustee sought in his prayer for relief as to the initial transfers an

order "avoiding and preserving the two-year transfers," "directing the two-year transfers . . . be

set aside," and recovering the two-year transfers, or the value thereof, from Defendants for the

benefit of the Estate."[7]

> **b. In 2015 the bankruptcy court dismissed all subsequent transferee claims and limited
> the Trustee's right to pursue such claims only with leave of court or consistent with
> the Trustee's rights under Section 550(f).**

On October 31, 2013, the defendants moved under Rule 12(b)(6), among other things, to

dismiss the subsequent transferee claims as failing to state a claim for relief. The Bankruptcy

Court agreed and granted that motion on June 2, 2015. *SIPC v. Bernard L. Madoff Inv. Sec. LLC*,

531 B.R. 439, 472-74 (Bankr. S.D.N.Y 2015). The court's order[8] provided as follows:

> As to each count of the complaint seeking to avoid subsequent transferee claims,
> the allegations were dismissed without prejudice, subject to the trustee's right to
> file a motion for leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2)
> or a claim pursuant to Section 550(f).

The Trustee did not move to further amend either the *Sage Associates* or *Sage Realty* complaints.

As a result, pursuant to this order dismissing all of the Trustee's subsequent transfer claims in

---

[6]   *Sage Associates* Amended Complaint ¶¶ 10, 95-100; Sage Realty Amended Complaint ¶¶ 10,
95-100.

[7]   *Id*. at ¶ 61. The litigation was delayed while the trustee appealed Judge Rakoff's 2012 ruling
dismissing all but the two-year claims pursuant to Section 546(e). The net result in these cases
narrowed the claims in the *Sage Realty* action to a claim of $3,370,000.

[8]   Sage Associates ECF 42 (Order dated July 16, 2015) ¶ 3; Sage Realty ECF 42 (Order dated
July 16, 2015) ¶ 3.

those actions, the Trustee's only recourse against any subsequent transferee defendant arising out of either case is pursuant to Section 550(f).

### c. **Discovery took four years to complete.**

The defendants in *Sage Associates* and *Sage Realty* answered the amended complaints in 2015. Discovery took almost four years and was not completed until 2019.[9] The Trustee thus had ample time and opportunity to investigate any possible subsequent transferee claims in detail. Indeed, the February 16, 2010, Protective Order governing all of the Madoff adversary proceedings (08-01789 No. 3141) expressly permitted the Trustee to take discovery of, among other things, "the identity of other persons or entities that may be liable for the transfers at issue, whether as subsequent transferees or for some other reason."

### d. **The district court withdrew the reference to decide the case.**

On November 30, 2020, defendants filed motions to withdraw the reference of each case to the bankruptcy court, and Judge Bernstein stayed further trial proceedings pending a ruling on the motions.[10] On May 18, 2021, the district court, per Judge Nathan, granted the motions to withdraw the reference of each case,[11] and set the cases for trial in January 2022.[12] The district court later consolidated the cases for trial,[13] and the cases were reassigned to Judge Keenan.[14]

---

[9]   Sage Associates ECF 97; Sage Realty ECF 97.

[10]  Sage Associates ECF 135; Sage Realty ECF 135.

[11]  Sage Associates ECF 142; Sage Realty ECF 142.

[12]  20-cv-10057(AJN) Sage Associates ECF 20; 20-cv-10109 (AJN) Sage Realty ECF 20.

[13]  20-cv-10057 (AJN) Sage Associates ECF 26; 20-cv-10109 (AJN) Sage Realty ECF 25.

[14]  20-cv-10057 (AJN) Sage Associates ECF order entered November 2, 2021; 20-cv-10109 (AJN) Sage Realty ECF order entered November 2, 2021.

**e. On April 15, 2022, the district court entered orders of avoidance of the initial transfers, and the clerk recorded that date on the record.**

Following trial, Judge Keenan issued findings of fact and conclusions of law in a 95-page opinion dated April 15, 2022.[15] As relevant here, Judge Keenan repeatedly describes the Trustee's allegations as seeking to "avoid and recover" the alleged fraudulent transfers.[16] In this respect, the district court was acknowledging the bifurcated relief sought by the Trustee in his amended complaints: both avoidance and recovery. Accordingly, in his conclusion, the district court separated out the avoidance decision from the recovery decision. As set forth in its April 15th opinion, and as recorded on the clerk's record in the docket, the district court ruled:

> *As for the Trustee's avoidance actions*, judgment is entered in favor of the Trustee and against the Defendants, Sage Associates, Sage Realty, Malcolm Sage, Martin Sage, and Ann Sage Prasser, jointly and severally, in the amount of $16,880,000.[17]

The district court later entered an administrative order on April 18, 2022, correcting the amount of the proposed judgment of recovery, allocating to the *Sage Associates* case an amount of $13,510,000 (20-cv-10057 (JFK) Sage Associates, ECF 113), and to the *Sage Realty* case an amount of $3,370,000 (20-cv-10109 (JFK) Sage Realty, ECF 69).[18] The district court then directed the clerk to enter a separate judgment of recovery.[19]

---

[15]  20-cv-10057 (JFK) Sage Associates ECF 111; 20-cv-10109 (JFK) Sage Realty ECF 67.

[16]  E.g., 20-cv-10057 (JFK) Sage Associates ECF 111 at 2, 6, 20, 50, 75; 20-cv-10109 (JFK) Sage Realty ECF 67 at 2, 6, 20, 50, 75.

[17]  20-cv-10057 (JFK) Sage Associates ECF 111(emphasis added); 20-cv-10109 (JFK) Sage Realty ECF 67 (emphasis added).

[18]  By letter agreement, the parties had requested the court correct the amount of each judgment, allocating the claim in the *Sage Associates* case the amount of $13,510,000 and the amount of the claim in the *Sage Realty* case $3,370,000. 20-cv-10057 (JFK) Sage Associates ECF 112; 20-cv-10109 (JFK) Sage Realty ECF 68.

[19]  *Id.*

**f.  The district court subsequently issued separate orders of recovery on April 20, 2022.**

Consistent with the district court's instructions of April 15, 2022, the district court clerk
entered on the docket two separate orders for recovery. In both cases, the clerk entered the
recovery judgment and recorded it as entered on April 20, 2022. 20-cv-10057 (JFK) *Sage
Associates*, ECF 114; 20-cv-10109 (JFK) *Sage Realty*, ECF 70.

**2.  The Trustee filed this adversary complaint on April 19, 2023.**

**a.  The Trustee seeks to recover alleged subsequent transfers.**

The Trustee filed the instant adversary complaint on April 19, 2023, seeking to recover
alleged subsequent transfers from Sage Associates and Sage Realty to Martin Sage and Sybil
Sage. Specifically, the complaint seeks recovery of five payments made between 2007 and 2008
to Martin Sage from Sage Associates in the amount of $4,503,333, and a payment on December
13, 2006, made to Martin Sage from Sage Realty in the amount of $150, 000.[20] The complaint
alleges that Sage Associates and Sage Realty made certain transfers "via check payable to Martin
Sage or via wire transfers."[21] As to Sybil Sage, the complaint merely alleges "on information and
belief" that these transfers were deposited into one or more bank accounts that Martin held
jointly with Sybil, his wife.[22] The complaint does not allege that Sybil was in any way affiliated
with Madoff, Sage Associates, Sage Realty, or even that she was aware of these transfers.

The complaint confirms that in the prior *Sage Associates* and *Sage Realty* proceedings,
the Trustee "sought, among other relief, to avoid and recover" the initial transfers to Sage
Associates and Sage Realty.[23] The complaint also acknowledges that in its April 15, 2022 order,

---

[20]  23-ap-01098 ECF 1 at ¶¶ 58, 60.

[21]  *Id.* at ¶¶ 58, 60.

[22]  *Id*. at ¶¶ 7, 59,61.

[23]  *Id*. at ¶¶ 54, 55.

the district court "found" that the Trustee had met his prima facie burden of "avoidance" and had

overcome defenses asserted, "resulting in the avoidance of the SA Initial Transfers and the SR

Initial Transfers."[24] Notably, the Trustee cites to both docket entries, the 20-cv-10057 (JFK)

Sage Associates docket entry ECF 111 and to the 20-cv-10109 (JFK) Sage Realty docket entry

ECF 67 for this factual allegation – the findings and conclusions of law made by Judge Keenan

in the district court proceedings, and recorded on the district court clerk's docket on April 15,

2022.[25]

### b. The Trusted filed the subsequent transferee complaint on April 19, 2023, more than "one year after the avoidance of the transfer on account of which recovery is sought"

On April 19, 2023, the Trustee filed the complaint under the former adversary proceeding

bankruptcy docket 10-AP-04362 relating to Sage Associates, ECF 132. The clerk then assigned

the complaint a new adversary proceeding number, 23-ap-01098 (CJM). The complaint was

therefore filed more than "one year after the avoidance of the transfer on account of which

recovery is sought."

### STATUTE AT ISSUE

The operative statute at issue is Section 550(f)(1), which provides:

**(f)** An action or proceeding under this section may not be commenced after the earlier of -

**(1)** one year after the avoidance of the transfer on account of which recovery under this section is sought; or

**(2)** the time the case is closed or dismissed.

---

[24] *Id.* at ¶ 57.

[25] *Id.*

**ARGUMENT:**

**THE SUBSEQUENT TRANSFEREE ACTION IS UNTIMELY
AND MUST BE DISMISSED**

The Trustee delayed filing the subsequent transferee action until April 19, 2023, more
than one year after the district court's April 15, 2022, final decision of avoidance. The action
therefore is untimely because the Trustee failed to file by the deadline in the statute of limitation
set forth in Section 550(f)(1).

The language of Section 550(f)(1) setting the avoidance date as the trigger of the statute
of limitations has been interpreted as constituting the notice to which the parties are entitled that
the matter regarding avoidance is final, and that the statute of limitations will thus begin. The
court in *In re Serrato (Decker v. Voisenat)*, 233 B.R. 833, 835 (Bankr. N.D. Cal. 1999), was
faced with a question about the operative date, and found that the final ruling of avoidance
constituted the trigger date. Similarly, this Court and other courts within the Second Circuit have
interpreted the operative language of Section 550(f)(1) as requiring finality and have even
extended that concept to avoidance cases that have settled. In the case now before this court there
is an order of avoidance which, under the statute, provides the required finality from which
statute of limitations begins to run.

**1.  The statute of limitations under Section 550(f)(1) begins to run once the court enters a
final order avoiding a transfer - not when it enters a separate money judgment.**

Section 550(f) provides that "[a]n action or proceeding under this section may not be
commenced after the earlier of . . . one year after the avoidance of the transfer on account of
which recovery under this section is sought." "[A]voidance of the transfer" refers to a final ruling
of avoidance "on the merits [that] leaves nothing for the court to do but execute the judgment."

*Serrato*, 233 B.R. at 835. The April 15, 2022, decision of the district court in the prior

proceedings operates precisely as the required final ruling on avoidance in this case.

In *Serrato*, a bankruptcy trustee had sought to recover a subsequent transfer made by the

initial transferee. *Id.* at 834. More than one year earlier, on September 30, 1997, the court had

issued "a final decision avoiding the [initial] transfer[,]" thus putting the trustee "on notice that

the period for recovering from an immediate transferee [had] commenced." *Id.* at 837. A

judgment in a sum certain was later entered on October 24, 1997, almost a month after the

September 30, 1997, avoidance decision. *Id.* at 835. The bankruptcy trustee, however, had filed

the subsequent transferee action on October 15, 1998 – more than a year after the September 30,

1997, decision but less than a year after entry of the subsequent October 24, 1997, judgment. The

court dismissed the complaint as untimely under Section 550(f)(1) because it was filed more than

one year after the avoidance of the transfer at issue. *Id*

In fixing the date of avoidance, the *Serrato* court relied on the principles of finality as set

out in Supreme Court precedent. As summarized by the court, "A final decision generally is one

that ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment." *Id* at 835 (citing *Caitlin v United States*, 324 U.S 229, 233 (1945), and *U.S. v. F. &*

*M. Schaefer Brewing Co*., 356 U.S. 227, 232-33 (1958)). The September 30, 1997, written

decision by the bankruptcy court in the prior proceedings – as recorded on the record by the clerk

that date – operated as the final decision on the merits as to the avoidance question under this

reasoning.

The *Serrato* court's finality reasoning is based on the purpose of a statute of limitations:

> [A] statute of limitations commences running upon the happening of an event
> providing notice to claimants that a cause of action has accrued. Under federal
> law, a cause of action accrues when a plaintiff "knows or has reason to know of
> the injury which is the basis of the action."

*Serrato*, 233 B.R. at 836 (citations omitted). Quoting from circuit court precedent as to the

importance of a statute of limitations in providing trustees with notice of the need to protect the

estate by taking action to recover a subsequent transfer, the court reasoned:

> [T]he execution of a written order adequately promotes the policy of providing
> certainty to parties in bankruptcy proceedings as to the limitations period during
> which claims can be filed. The date the order is signed also is the event that
> triggers action by trustees to protect the interests of the estate and thus adequately
> gives notice that the statute of limitations has started running.

*Id*. (quoting *Ford v. Union Bank (In re San Joaquin Roast Beef),* 7 F.3d 1413, 1417 (9th Cir.

1993)).

The *San Joaquin* case had interpreted a different statute of limitations. That court read the

limitations period of Section 546(a)(1) fixing the two-year time for a trustee to bring a preference

action as triggered by the date of the first *appointment* of a trustee or the date of the petition in

the case of a chapter 11 debtor. The question at issue in *San Joaquin* was whether the statute of

limitations began running from the *date the court signed* the appointment order of the trustee or

the date when the order *was entered* on the docket. The court agreed with other courts that the

date of the signing of the appointment order was the operative date. 7 F.3d at 1416.[26]

The question at issue in this case, as it was in *Serrato*, is similar to the question of

statutory interpretation presented in *San Joaquin*. The *Serrato* court read the Section 550(f)

statute of limitations as running from the written date the court approved the avoidance, just as

the courts had interpreted the Section 546(a)(1) statute of limitations for preference claims as

running from the date of a written order appointing a trustee.[27] As explained by the *San Joaquin*

---

[26]    The Second Circuit expressly acknowledged the *San Joaquin* decision in *In re Century Brass
Products, Inc.*, 22 F.3d 37, 41 (2d Cir. 1993). The Second Circuit later declined to revisit its
*Century Brass* holding in *In re Mediators, Inc.*, 105 F.3d 822 (2d Cir. 1997).

[27]    Notably, the time limits language of the limitations period found in Section 546(a)(1) is very

court, the operative date for such a statute is driven by the need to provide notice and certainty to the trustee in light of the nature of his or her duties as a fiduciary to the estate. The *Serrato* court therefore relied on the similar language in Section 550(f)(1) for fixing the starting point for the decision of avoidance. In the case now before this Court, the operative date is the April 15, 2022, decision by the district court finally ruling on the avoidance question, and not the later date of entry of the judgment.

The *Serrato* court disagreed with the trustee in that case that the statute of limitations did not start to run until the date of entry of the judgment. The trustee there had argued that Bankruptcy Rule 9021 required that "[e]very judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document" to "promote certainty as to the relatively short time that a party has to appeal a final order." *Id.* at 836 (citation omitted). But the court rejected that argument as applied to a statute of limitations: "[g]enerally a statute of limitations commences running upon the happening of an event providing notice to claimants that a cause of action has accrued" and "[u]nder federal law, a cause of action accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Id.* (citation omitted). "[T]he written opinion in the underlying fraudulent transfer proceeding is a triggering event that affords certainty and puts the trustee on notice that further action may be required to protect the interests of the estate." *Id.*

The same reasoning should apply in this case. The written opinion avoiding the initial fraudulent transfers at issue in the *Sage Associates* and *Sage Realty* case was the triggering event that afforded certainty and put this Trustee on notice as to what may be

---

similar to the time limits language of the limitations period found in Section 550(f)(1). Both statutes frame the timing as to the commencing of the statute of limitations based on a prior action of a court.

required to protect the interests of the estate, including potentially filing additional

actions against subsequent transferees. Any claim under Section 550 filed more than one

year after the April 15, 2022, decision is therefore time-barred under Section 550(f)(1)'s

one-year statute of limitations.

**2.    The courts in this district have interpreted the Section 550(f)(1) limitations provision as mandating "finality" for purposes of providing notice and certainty to a trustee.**

In the prior proceedings, the Trustee highlighted in his pleadings the distinct prayers for

relief he sought. As noted, the Trustee sought rulings seeking both avoidance and recovery. In

the April 15, 2022, written opinion granting the relief of avoidance, the district court highlighted

these distinct prayers for relief sought by the Trustee. As such, in the April 15th decision, the

court granted the Trustee the exact relief he requested – *i.e.,* separate orders of avoidance and

recovery, the latter in the form of a judgment of recovery to be entered by the clerk.

The courts in this district have focused on the distinct nature of the remedies of avoidance

and recovery. "In fraudulent transfer actions, 'avoidance and recovery are distinct concepts and

processes . . . [that] are addressed in two separate sections of the code, 11 U.S.C. § 544 and

§ 550, respectively.'" *In re Extended Stay, Inc. (O'Connor v. DL-DW Holdings, L.L.C.)*, 2020

WL 10762310, at *69 (Bankr. S.D.N.Y. Aug. 8, 2020). "Avoidance is a separate remedy that a

Trustee may seek without recourse to recovery where, for example, the Trustee need only rescind

the granting of a right in property (as opposed to where a debtor transferred the property at

issue)." *SIPC. v. Bernard L. Madoff Inv. Sec. LLC. (In re Bernard L. Madoff Inv. Secs.)*, 501

B.R. 26, 34 n.5 (S.D.N.Y. 2013) (Rakoff. J.). A judgment of avoidance "rescind[s] the granting

of a right in property." *Id.*

It stands to reason, therefore, that in fixing the date for the running of the statute of

limitations, Congress would expect a court to treat the remedy of avoidance distinct from the

remedy of recovery. It is for that reason that the courts in this district have read Section 550(f)(1) as focused on the separate remedies. Once the court enters a judgment of avoidance, the statute of limitations begins to run.

One of the first courts to recognize this distinction in the context of a statute of limitations dispute was Judge Lifland's decision in *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 522 (Bankr. S.D.N.Y. 2012) (Lifland, J.). There, the court was confronted with the proper date for construing Section 550(f)(1)'s statute of limitations following a settlement by the Trustee with Fairfield Sentry in which there was no judicially litigated order of avoidance. The court reasoned that the best interpretation of the statute was to focus on the finality of the action against Fairfield Sentry. As explained by Judge Lifland,

> Although the Settlement does not constitute a formal avoidance of the initial transfer from BLMIS to Fairfield, it presents the Court with finality with respect to Fairfield Sentry. This finality triggers the relevant one-year statute of limitations under section 550(f) of the Code. Without such a trigger, the Trustee would be permitted to bring suit against a subsequent transferee for an indefinite amount of time, a highly inequitable result.

*Id*. at 522. In his interpretation of the bankruptcy code, Judge Lifland looked to other federal statutes with similar language in support of the chosen date for the commencement of the statute of limitations. Thus, in support of his interpretation of Section 550(f)(1), Judge Lifland cites to *ASARCO LLC v. Shore Terminal LLC*, 2012 WL 2050253 at *8 (N.D. Cal. 2012), applying the date of settlement to trigger the statute of limitations for contribution claims under CERCLA.

Following this precedent, Judge Bernstein, in a 2018 decision, relying on the *BLI* decision, likewise ruled that the date of the signed settlement was the date to commence the statute of limitations for Section 550(f)(1). As explained by the court, "A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f)." *Picard v. BNP Paribas, S.A. (In re BLMIS)*, 594 B.R. 167, 207 (Bankr. S.D.N.Y. 2018) (Bernstein, J.)

(avoidance for purposes of Section 550(f)(1) statute of limitations based on settlement runs from

date when court "approved" the settlement). In that case, the court rejected the Trustee's efforts

to amend the complaint to add time barred claims filed after the one-year statute had run. *Id.* at

210-12. Recently, this Court reaffirmed these prior rulings as to the applicable Section 550(f)(1)

construction. *Picard v. Koch Industries, Inc. (In re Madoff)*, 2022 WL 17098698, at *7 (Bankr.

S.D.N.Y. Nov. 21, 2022) (Morris, J.).

All courts in this district, as in the case of the *Serrato* court, have relied on the finality

principle in construing the triggering event for the statute of limitations. Just as the need for

finality requires courts to look to the date of an order approving a settlement for purposes of

triggering the running of the statute of limitations in that context, the *Serrato* court properly read

the statute as looking to the finality of the date of litigation with respect to the separate avoidance

claim in fixing the date for commencing the statute of limitations for subsequent transferee

claims.

Bankruptcy treatises cite *Serrato* with approval and without contrary authority. 100

A.L.R.2d 1094 ("One-year statute of limitations on cause of action to recover avoided transfer

from mediate or immediate transferee began running upon issuance of written opinion by

bankruptcy court holding that transfer should be avoided . . . even though no judgment was

entered on bankruptcy court's docket until 24 days later.") (citing *In re Serrato*); 2 Bankruptcy

Law Manual § 9:61 ("The one year statute of limitations begins to run once a final order has

been entered in an avoidance action.") (citing *In re Serrato*); 1 Bankruptcy Litigation 5 § 63 ("In

determining when a transfer is deemed to be avoided, a court has held that it is the date that it

signed its written opinion, as opposed to the date on which judgment was ultimately entered on

the docket. The court reasoned that the purpose of the statute is to put parties on notice and the

written order was sufficient to do so.") (citing *In re Serrato*). In the 24 years since *Serrato* was

decided, it appears that no court has deviated from its holding or questioned its wisdom.

**3.   The complaint does not plead that the statute of limitations should be equitably tolled.**

  The adversary complaint does not plead that the statute of limitations should be tolled,

nor does the complaint allege any facts that would justify tolling the limitations period.

"Equitable tolling of the statute of limitations is available 'as a matter of fairness where a

plaintiff has been prevented in some extraordinary way from exercising his rights.'" *Stillman v.*

*Marlboro State Hosp.*, 2003 WL 22349677, at *2 (S.D.N.Y. Oct. 15, 2003) (quoting *Johnson v.*

*Nyack Hospital, et al.*, 86 F.3d 8, 12 (2d Cir. 1996)).

  To avoid a limitations defense, however, the plaintiff must plead the equitable grounds

for delay. As explained by one court in this district,

> A plaintiff seeking to invoke the doctrine must plead, with particularity, (1) the
> wrongful concealment by the defendant of its actions; (2) the failure by the
> plaintiff to discover the operative facts underlying the action within the
> limitations period, and (3) the plaintiff's due diligence to discover the facts.

*Rao v. NYC Dept. of Parks and Recreation*, 1997 WL 538830 (S.D.N.Y. Aug. 29, 1997)

(quotations omitted), *affirmed*, 159 F.3d 1347 (2d Cir. 1998). The instant adversary complaint

fails to plead any of these facts, let alone all of them.

  Nor could the complaint make any such allegations. The Trustee has had all of the

information alleged in the complaint for several years from discovery in the earlier action, yet

inexplicably waited until after the limitations period expired to bring this claim. The statute of

limitations has no elasticity that would permit the Trustee to bring this stale claim. *In re O.P.M.*

*Leasing Services, Inc. (O.P.M. Leasing Services, Inc. v. Zimmerman)*, 32 B.R. 199, 201 (Bankr.

S.D.N.Y. 1983). The Trustee's claim is time-barred.

### CONCLUSION

For the foregoing reasons, the adversary complaint should be dismissed as time barred.

Washington, DC
May 24, 2023

                        Respectfully submitted,

                        By: /s/ Richard A. Kirby

                        R|K INVEST LAW, PBC
                        Richard A. Kirby
                        Beth-ann Roth
                        1725 I Street, N.W., Suite 300
                        Washington, D.C. 20006
                        kirby@investlaw.net
                        202-236-2854

                        Attorneys for Defendants