**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

Hearing Date: August 16, 2023
Hearing Time: 10:00 a.m. (EST)
Objection Deadline: July 28, 2023
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**FORTY-SECOND APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM DECEMBER 1, 2022 THROUGH MARCH 31, 2023**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................2

II.   BACKGROUND .....................................................................................4

    A.    THE SIPA LIQUIDATION PROCEEDING...........................................4

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................4

    C.    PRIOR COMPENSATION ORDERS..................................................5

III.  SUMMARY OF SERVICES .....................................................................7

    A.    HARDSHIP PROGRAM....................................................................8

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ....................8

IV.   DETAILED DESCRIPTION OF SERVICES................................................9

    A.    MATTER 01 ..................................................................................9

        a.    Task Code 05: Internal Meetings with Staff...........................10

        b.    Task Code 07: Billing and Trustee Reports.............................10

        c.    Task Code 08: Case Administration ......................................10

        d.    Task Code 11: Press Inquiries and Responses.........................11

        e.    Task Code 12: Document Review ..........................................11

        f.    Task Code 13: Depositions and Document Productions by
            the Trustee...................................................................11

        g.    Task Code 14: International..................................................12

        h.    Task Code 21: Allocation ....................................................13

    B.    MATTER 05 – CUSTOMER CLAIMS .............................................14

        a.    Customer Claims................................................................14

        b.    General Creditor Claims .....................................................14

        c.    The Trustee Has Kept Customers Informed Of The Status
            Of The Claims Process....................................................15

    C.    MATTER 09 – FAIRFIELD GREENWICH.......................................16

D.    MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 –
GOOD FAITH/5A COHMAD REFERRED ACCOUNTS ...............................26

a.    Resolution of Good Faith Avoidance Actions ...........................................27

b.    Trial-Related Motion Practice...................................................................27

c.    Summary Judgment Motions ....................................................................28

E.    MATTER 29 – RYE/TREMONT ...........................................................................32

F.    MATTER 30 – HSBC...............................................................................................34

G.    MATTER 32 – UBS/LUXALPHA/LIF ...................................................................36

H.    MATTER 33 – NOMURA INTERNATIONAL PLC...........................................40

I.    MATTER 34 – CITIBANK ......................................................................................43

J.    MATTER 35 – NATIXIS .........................................................................................47

K.    MATTER 36 – MERRILL LYNCH........................................................................48

L.    MATTER 37 – ABN AMRO....................................................................................49

M.    MATTER 39 – FORTIS ...........................................................................................54

N.    MATTER 53 – MAGNIFY ......................................................................................58

O.    MATTER 60 – AVELLINO & BIENES..................................................................60

P.    MATTER 62 – SUBSEQUENT TRANSFERS ......................................................61

Q.    MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD. ............................63

R.    MATTER 65 – LEGACY .........................................................................................64

S.    MATTER 71 – SQUARE ONE ...............................................................................66

T.    MATTER 73 – BNP PARIBAS ...............................................................................68

U.    MATTER 77 – EXTRATERRITORIALITY ........................................................69

V.    COMPENSATION REQUESTED........................................................................70

VI.    RELEASE OF THE HOLDBACK.........................................................................74

VII.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ...................74

VIII.    CONCLUSION........................................................................................................76

**TO THE HONORABLE CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this forty-second application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing December 1, 2022 through and including March 31, 2023 (the "Compensation Period") of $35,411,397.57, (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $174,735.46, and (iii) release of $10,522,401.50, a portion of the amount which has not been paid in connection with prior and current applications, and in support thereof, respectfully represents as follows:

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

## I.    **PRELIMINARY STATEMENT**

1.    The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation.  The Trustee has successfully recovered, or reached agreements to recover, nearly $14.578 billion as of May 31, 2023, for the benefit of all customers of BLMIS with an allowed claim.[2]

2.    The Trustee has made fourteen interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(h).  The Trustee has distributed approximately $14.380 billion to BLMIS customers through May 31, 2023, inclusive of SIPC advances in the amount of nearly $849.9 million.[3] *See* discussion *infra* Section IV(A)(h).

3.    No administration costs, including the compensation of the Trustee and his counsel, has been or will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.  Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation proceeding, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon ("Soroker"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt &

---

[2] In general, figures will be reported as of March 31, 2023, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,707,339.85, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,517 BLMIS accounts have been fully satisfied.

Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(C) and 78fff-3(b)(2). SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities
> started off by Bernie Madoff and the sequelae is left for everybody else to follow
> all the trails and the trails do lead almost everywhere in the world. It is clear under

3

the circumstances that a Herculean effort to follow those trails has been involved
both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008.  Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION PROCEEDING

8.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein, have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

9.      The Trustee and B&H's prior interim fee applications have detailed the description

of the Trustee's background and experience.

10.      In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax,

corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.      The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel,

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities. To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
| --- | --- | --- |
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |

---

[4]On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November 30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |

---

[5]This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| Applications | Compensation Period | Orders Entered[4] |
|---|---|---|
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |
| Thirtieth Fee Application (ECF No. 18867) | December 1, 2018 to March 31, 2019 | September 6, 2019 (ECF No. 18984) |
| Thirty-First Fee Application (ECF No. 19116) | April 1, 2019 to July 31, 2019 | December 12, 2019 (ECF No. 19219) |
| Thirty-Second Fee Application (ECF No. 19383) | August 1, 2019 to November 30, 2019 | May 4, 2020 (ECF No. 19516) |
| Thirty-Third Fee Application (ECF No. 19604) | December 1, 2019 to March 31, 2020 | August 26, 2020 (ECF No. 19728) |
| Thirty-Fourth Fee Application (ECF No. 19918) | April 1, 2020 to July 31, 2020 | December 14, 2020 (ECF No. 20093) |
| Thirty-Fifth Fee Application (ECF No. 20323) | August 1, 2020 to November 30, 2020 | April 19, 2021 (ECF No. 20451) |
| Thirty-Sixth Fee Application (ECF No. 20603) | December 1, 2020 to March 31, 2021 | August 10, 2021 (ECF No. 20685) |
| Thirty-Seventh Fee Application (ECF No. 20833) | April 1, 2021 to July 31, 2021 | December 6, 2021 (ECF No. 20943) |
| Thirty-Eighth Fee Application (ECF No. 21212) | August 1, 2021 to November 30, 2021 | April 12, 2022 (ECF No. 21365) |
| Thirty-Ninth Fee Application (ECF No. 21842) | December 1, 2021 to March 31, 2022 | August 2, 2022 (ECF No. 22063) |
| Fortieth Fee Application (ECF No. 22477) | April 1, 2022 to July 31, 2022 | December 6, 2022 (ECF No. 22687) |
| Forty-First Fee Application (ECF No. 22957) | August 1, 2022 to November 30, 2022 | April 5, 2023 (ECF No. 23080) |

## III.  SUMMARY OF SERVICES

13.    A SIPA liquidation proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.  Accordingly, the Trustee's and B&H's services,

which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

## A.     __HARDSHIP PROGRAM__

14.    After nearly 12 years, the Trustee officially terminated the Hardship Program. Statistics regarding how many customers availed themselves of the Hardship Program are detailed in prior fee applications. After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, as of March 31, 2023, the Trustee had dismissed 284 Hardship Program applicants-defendants from avoidance actions. As of March 31, 2023, all Hardship Program applicants-defendants had been reviewed and 366 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.

## B.     __THE RECOVERY AND RETURN OF CUSTOMER PROPERTY__

15.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled one case for $250,000.00. Through the end of the Compensation Period, the Trustee had successfully recovered from litigation-related matters and other recoveries approximately $14.566 billion.

16.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to

agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.    DETAILED DESCRIPTION OF SERVICES

19.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

20.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

21.    Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

### A.    MATTER 01

22.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

9

### a.    Task Code 05: Internal Meetings with Staff

23.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### b.    Task Code 07: Billing and Trustee Reports

24.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### c.    Task Code 08: Case Administration

25.    This category relates to time spent assisting the efficient administration of the case.

26.    The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions. These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

27.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings. (ECF No. 4469). This Court entered the Order on December 5, 2011. (ECF No. 4560).

28.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012. (ECF No. 4483). Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF

No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718), December 19, 2018 (ECF No. 17560), December 18, 2019 (ECF No. 18093), December 16, 2020 (ECF No. 19027), October 5, 2020 (ECF No. 19826), December 31, 2021 (ECF No. 20418), and November 16, 2021 (ECF No. 20884), March 1, 2022 (ECF No. 21193). On October 20, 2022, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through June 21, 2023 (ECF No. 22460).

### d.    Task Code 11: Press Inquiries and Responses

29.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### e.    Task Code 12: Document Review

30.    This category relates to time spent by the Trustee and B&H attorneys reviewing and analyzing BLMIS documents and documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and defenses, as well as other discovery-related tasks that cross multiple cases.

### f.    Task Code 13: Depositions and Document Productions by the Trustee

31.    This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter, including team meetings, discussions and strategizing among Discovery Management Team case liaisons; research and

analysis of issues with potential case-wide implications; creation and management of document databases, filing systems and related reference materials; creation and revision of discovery resources and procedural guidance; analysis and coordination of discovery affirmatively produced by the Trustee in avoidance actions; and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

### g.    Task Code 14: International

32.    The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Ireland, Israel, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

33.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

34.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

h.    **Task Code 21: Allocation**

35.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating

the distribution of Customer Property.

36.     The ultimate purpose of marshaling the Customer Fund is to distribute those

monies, as SIPA directs, to BLMIS customers with allowed claims.

37.     The Trustee filed fourteen motions seeking entry of an order approving allocations

of property to the Customer Fund and authorizing pro rata interim distributions of Customer

Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $888.2 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.458 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $904.4 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $608.4 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million | $524.3 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million | $1.573 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $247.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $327.7 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $719.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $514.2 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/2020 | $988.770 million | $370.8 million | 1.975% | 19226 | 19245 |
| 12 | 02/26/2021 | $74.325 million | $232.4 million | 1.240% | 20066 | 20209 |
| 13 | 02/25/22 | $128.570 million | $113 million | 0.604% | 20963 | 21036 |
| 14 | 02/24/23 | $44.229 million | $49.6 million | 0.265% | 22697 | 22819 |
| TOTAL | N/A | $14.541 billion | $13.530 billion | 70.717% | N/A | N/A |

38.     On February 24, 2023, the Trustee distributed over $49.553 million, or 0.265% of

each BLMIS allowed claim through the completion of the Fourteenth Interim Distribution, unless

the claim had been fully satisfied.  This represents a significant milestone in this litigation, with

1,517 BLMIS accounts fully satisfied through February 24, 2023.[6] The 1,517 fully satisfied accounts represent over 66% of accounts with allowed claims. When combined with the prior thirteen distributions, and the approximate $849.9 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $14.380 billion to BLMIS customers through May 31, 2023, or 70.717% of each BLMIS allowed customer claim.

### B.    MATTER 05 – CUSTOMER CLAIMS

#### a.    Customer Claims

39.    As of March 31, 2023, the total amount of allowed claims is $19,493,795,916.92, and the Trustee has paid or committed to pay $849,868,412.47 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

40.    As of March 31, 2023, 11 customer claims relating to 7 BLMIS customer accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such customer claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### b.    General Creditor Claims

41.    As of March 31, 2023, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately

---

[6] Any customer with an allowed claim of $1,707,339.85 has been fully satisfied.

$1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million. At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers. If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

### c.   The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

42.   Throughout the SIPA liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

43.   The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an

FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

44.     In addition, the Trustee Website allows claimants and third parties to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2023, the Trustee and his professionals had received and responded to thousands of e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

45.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### C.     MATTER 09 – FAIRFIELD GREENWICH

46.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing breach of contract and equitable claims against other Fairfield Greenwich Group affiliates, including the founding partners, management entities and officers, seeking over $919 million in management and performance fees wrongfully paid to the

16

defendants. *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Limited)*, Case No. 10-13164 (CGM), Adv. Pro. No. 10-03800 (CGM).

47.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators") (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

48.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim in the SIPA liquidation proceeding from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker and all of their individual and entity affiliates, employees, officers, and partners (the "Management Defendants"), and the Trustee retained his own claims against the Management Defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

49.     On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard*

*v. Fairfield Sentry*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y.), (ECF No. 107).    In the

settlement, the Greenwich Funds agreed to permanently reduce their net equity claim in the SIPA

liquidation proceeding from approximately $143 million to approximately $37 million, for a

combined reduction of over $105.9 million.    Additionally, the Greenwich Funds assigned to the

Trustee all of their claims against the Management Defendants and agreed to share with the Trustee

any recoveries they receive against service providers.

50.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed

motions to withdraw the reference on a number of issues that later became subject to common

briefing and hearings before Judge Rakoff of the District Court.    The Trustee briefed and presented

argument at the hearings on these issues before the District Court.    As of July 31, 2014, the District

Court had issued decisions on all issues subject to common briefing and remanded the cases to this

Court for further findings based on the legal standards set forth in the District Court's decisions.

51.    On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc*., Adv. No. 12-01702

(CGM) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr.

S.D.N.Y.).    The parties in the *Toub* action entered into a stipulated stay as permitted by this Court.

None of the defendants in these actions have responded to the Trustee's complaints.

52.    On November 22, 2016, this Court issued its decision on the extraterritoriality

motion to dismiss.    *See* discussion *infra* Section IV(U).    Under the decision, some of the claims

against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed.

Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of

certain non-moving defendants to the extraterritoriality motion to dismiss.    The parties agreed to

18

consent to the entry of final judgments on the Court's extraterritoriality decision.  Finally, the

parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.  On

March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust*

actions.  (ECF Nos. 229, 97, 93).  On September 27, 2017, the Second Circuit issued an order

granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality

decision.  *Picard v. Banque Lombard Odier & Cie SA*., No. 17-1294 (2d Cir.), (ECF No. 388).  On

February 25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling.  *See*

discussion *infra* Section IV(U).

        53.     On January 24, 2019, in the action filed by the Joint Liquidators against the

Management Defendants, *In re Fairfield Sentry Limited, et al*., Adv. No. 10-03800 (CGM), the

parties entered a stipulation substituting the Trustee as the plaintiff.  (ECF No. 87).  On February

22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended

Complaint.  (ECF No. 90).

        54.     On March 25, 2019, this Court approved a settlement between the Trustee and

certain Management Defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory

Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark

McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust,

Fortuna Asset Management, and Selecta Financial Corporation.  *Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019).  (ECF

No. 270).  The Trustee's claims against the remaining Management Defendants remain pending.

        55.     On June 18, 2019, the Trustee and the remaining defendants informed this Court

they had agreed to enter mediation.  (ECF No. 272).  As a result, at the parties' request, this Court

ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019.  (ECF No. 273).

56.     On June 19, 2019, again at the parties' request, this Court entered an order consolidating the actions *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard v. Fairfield Greenwich Capital Partners*, No. 12-01702.  The consolidated action is proceeding under *Picard v. Fairfield Investment Fund Limited,* No. 09-01239.  (ECF No. 274).

57.     On June 25, 2019, the Trustee filed a voluntary notice of dismissal, dismissing the adversary proceeding *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr. S.D.N.Y.) without prejudice. (ECF No. 60).

58.     On September 25, 2019, this Court held a hearing with the Trustee and the remaining Management Defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator.  The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019.  (ECF No. 275).

59.     On November 20, 2019, the Court entered the Second Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by February 19, 2020 and further ordered all matters held in abeyance until March 31, 2020.  (ECF No. 276).

60.     On February 19, 2020, the Court entered the Third Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by May 19, 2020 and further ordered all matters held in abeyance until June 30, 2020.  (ECF No. 279).

61.    On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020.  (ECF No. 282).

62.    On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the order holding the matters in abeyance, ordered the Trustee to file his Second Amended Complaint in the *Fairfield* 09-01239 action by August 31, 2020, ordered the Management Defendants in the *Fairfield* 10-03800 matter to file their Reply Memorandum in Support of the Motion To Dismiss by October 2, 2020, and adjourned the status conference to October 26, 2020.  (ECF No. 285).

63.    On August 28, 2020, the Trustee filed his Second Amended Complaint in the *Fairfield* 09-01239 action.  (ECF No. 286).

64.    On October 2, 2020, the Management Defendants filed their Reply Memorandum of Law in Support of Motion to Dismiss in the *Fairfield* 10-03800 action.  (ECF No. 129).  In addition, the Defendants submitted a letter to the Court on the Foreign Authorities applicable to the *Fairfield* 10-03800 action.  (ECF No. 130).

65.    On October 20, 2020, the Fairfield actions were reassigned from Judge Stuart Bernstein to Chief Judge Cecelia G. Morris.  *Fairfield* 09-01239 (ECF No. 288) and *Fairfield* 10-03800 (ECF No. 133).

66.    On October 21, 2020, this Court issued a scheduling order in the *Fairfield* 09-01239 action regarding the Defendants' request to file a Motion to Dismiss in which the Defendants' Opening Brief was to be filed by January 15, 2021, the Trustee's Opposition Brief was to be filed by April 15, 2021, and the Defendants' Reply Brief was to be filed by May 31, 2021.  (ECF No. 289).

67.     On October 26, 2020, this Court scheduled a pretrial conference in these matters for January 13, 2021 and requested the Parties to make a submission to the Court as to what substantive law applies in the *Fairfield* 10-03800 action. (ECF No. 290).

68.     On November 18, 2020, this Court entered an order in the *Fairfield* 10-03800 action ordering the Trustee to file a Supplemental Brief in Opposition to the Defendants' Motion to Dismiss by November 25, 2020 and the Defendants to file a Supplemental Reply Brief in Support of the Motion to Dismiss by December 11, 2020. (ECF No. 137).

69.     On November 25, 2020, the Trustee filed his Supplemental Opposition to the Defendants' Motion to Dismiss in the *Fairfield* 10-03800 action. (ECF No. 141).

70.     On November 25, 2020, the Trustee filed a letter as to the Foreign Authorities applicable to the *Fairfield* 10-03800 action. (ECF No. 142). On the same day, the Trustee submitted a letter to the Court on the claims and conflicts of law involved in the *Fairfield* 10-03800 action. (ECF No. 143). On November 25, 2020, in the *Fairfield* 10-03800 action, the Trustee filed a Supplemental Memorandum in Opposition to the Defendants' Motion to Dismiss. (ECF No. 141).

71.     On December 11, 2020, the *Fairfield* 10-03800 parties submitted a letter to the Court regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss. (ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum in Support of the Motion to Dismiss in the *Fairfield* 10-3800 action. (ECF No. 146). On December 18, 2020, the parties submitted a letter to the Court regarding the choice of law issues involved in the Motion to Dismiss in the *Fairfield* 10-03800 action. (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion to Dismiss in the *Fairfield* 10-03800 action.

72. On March 25, 2021, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield* 10-03800 action. (ECF No. 161). On April 8, 2021, the Court issued its order Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield* 10-03800 action. (ECF No. 162).

73. On January 15, 2021, the Defendants filed their Opening Brief in Support of their Motion to Dismiss in the *Fairfield* 09-01239 action. (ECF No. 305). On April 15, 2021, the Trustee filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss in the *Fairfield* 09-01239 action. (ECF No. 311). The Defendants' Reply in Support of the Motion to Dismiss in the *Fairfield* 09-01239 action was filed on May 31, 2021. (ECF No. 313).

74. On May 6, 2021, Defendants Walter Noel, Jeffrey Tucker, Philip Toub, Andres Piedrahita, Corina Noel Piedrahita, Amit Vijayvergiya, Fairfield Greenwich Bermuda Limited, Fairfield Greenwich Limited, Fairfield Greenwich Advisors and Fairfield International Managers filed their Answers to the Second Amended Complaint in the *Fairfield* 10-03800 action. (ECF Nos. 164 -168 and 170).

75. On May 28, 2021, Defendant Fairfield Greenwich Advisors LLC filed its Answer to the Second Amended Complaint in the *Fairfield* 10-03800 action on behalf of Defendant Fairfield Greenwich Group. (ECF No. 173).

76. On June 16, 2021, the Court held a hearing on Defendants' Motion to Dismiss in the *Fairfield* 09-01239 action.

77. On August 2, 2021, the Court entered the Stipulated Case Management Order previously agreed upon and submitted by the parties on July 30, 2021 in the *Fairfield* 10-03800 action. (ECF No. 174).

78.     Also on August 2, 2021, the Court entered the Stipulation and Order previously agreed upon and submitted by the parties on July 30, 2021, providing that (i) the Litigation Protective Order entered in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 08-01789 (CGM) (the "Main SIPA Action") on June 6, 2011, as modified (ECF Nos. 4137, 5474), which governs the disclosure of confidential information in the Main SIPA Action and related adversary proceedings, including the *Fairfield* 09-01239 action, shall govern the disclosure of confidential information to the same extent in the *Fairfield* 10-03800 action; and (ii) the Order Establishing Procedures for Third-Party Data Rooms (Main SIPA Action, ECF No. 5475), which governs the contents of, and access to, data rooms maintained by the Trustee in the Main SIPA Action and related adversary proceedings, including the *Fairfield* 09-01239 action, shall govern to the same extent in the *Fairfield* 10-03800 action.

79.     On August 6, 2021, the Court issued its Memorandum Decision Denying Defendants' Motion to Dismiss As to All Claims Except Those Made Against Corina Noel Piedrahita in her Individual Capacity Decision in the *Fairfield* 09-01239 action. (ECF No. 336). On September 14, 2021, the Court issued its Order Denying Defendants' Motion to Dismiss as to All Claims Except Those Against Corina Noel Piedrahita in her Individual Capacity in the *Fairfield* 09-01239 action. (ECF No. 339).

80.     On November 22, 2021, the Court entered the Stipulation and Order Appointing Discovery Arbitrator previously agreed upon and submitted by the parties in the *Fairfield* 10-03800 action on November 18, 2021, providing that the Order Appointing a Discovery Arbitrator Pursuant to Bankruptcy Rule 9019(c) and General Order M-390, entered in the Main SIPA Action on October 4, 2016 (ECF No. 14227), appointing the Honorable Frank Maas (ret.), c/o JAMS, Inc., as Discovery Arbitrator to resolve discovery disputes that may arise and which have been

specifically referred to him by the Court with consent of the parties to the dispute, shall apply and govern the resolution of discovery disputes to the same extent in the *Fairfield* 10-03800 action as in the Main SIPA Action and related adversary proceedings, including the *Fairfield* 09-01239 action. (ECF No. 176).

81.    On September 30, 2021, Defendants Walter Noel, Jeffrey Tucker, Philip Toub, Andres Piedrahita, Corina Noel Piedrahita, Amit Vijayvergiya, Fairfield Investment Fund Limited, Stable Fund, Share Management, Fairfield Greenwich Capital Partners, Fairfield Greenwich Bermuda Limited, Fairfield Greenwich Limited, Fairfield Greenwich Advisors and Fairfield International Managers filed their Answers to the Second Amended Complaint in the *Fairfield* 09-01239 action. (ECF Nos. 342 – 347 and 349).

82.    On December 21, 2021, the Trustee served his First Set of Interrogatories to Defendants in the *Fairfield* 10-03800 action and has engaged in several meet and confers with Defendants' counsel since January 2022 concerning the Defendants' responses.  Between June 16, 2021 and March 31, 2022, the Defendants made 17 productions of documents (totaling approximately 1 million documents) in response to the Trustee's document requests, including in response to the Trustee's First Requests to the Defendants for the Production of Documents which the Trustee served in the *Fairfield* 10-03800 action on August 20, 2021.  Between December 1, 2021 and March 31, 2022, the Joint Liquidators produced approximately 1,000 documents to the Trustee in the *Fairfield* 10-03800 action.

83.    In February 2022, the Defendants were given access to the Trustee's electronic data rooms containing millions of documents, including nonconfidential documents produced to the Trustee by third parties.  In June 2022, the Trustee made two productions of documents (totaling approximately 4,400 documents) in response to the Defendants' First Request for Production of

Documents to the Trustee which the Defendants served in the *Fairfield* 09-01239 action on April 22, 2022.

84.     On November 17, 2022, B&H attorneys participated in a meeting with counsel for the Defendants to explore possible alternate resolution of the proceedings.

85.     On January 26, 2023, the Trustee's counsel met and conferred with counsel for the Defendants, to discuss and attempt to resolve issues raised by the Trustee regarding documents redacted and/or withheld from production by the Defendants on the basis of assertions of attorney-client privilege.   On January 30, 2023, the Trustee served his First Request for Production of Documents in Picard v. Fairfield Investment Fund Limited, Adv. No. 09-1239.

86.     On January 30, 2023 and February 10, 2023, the Trustee produced a total of approximately 782 documents to the Defendants, in response to the Defendants' First Request for Production of Documents to the Trustee.   On February 28, 2023 and March 22, 2023, the Defendants produced a total of approximately 66,430 documents to the Trustee, in response to the Trustee's First Requests for Production of Documents in Picard v. Fairfield Greenwich Group, Adv. No. 10-03800.

87.     The Trustee continues to engage in discussions with counsel for the Defendants and third-parties concerning ongoing discovery in the *Fairfield* 09-01239 and *Fairfield* 10-03800 actions.   The parties also continue to meet and confer regarding fact discovery and have agreed to work in good faith to coordinate discovery in these actions as well as any related discovery in other actions brought by the Trustee.

### D.     MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH/5A COHMAD REFERRED ACCOUNTS

88.     This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced

documents, communicating formally and informally with counsel for various defendants, drafting extensions of time to adjourn pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    Resolution of Good Faith Avoidance Actions

89.    At the beginning of the Compensation Period, there were 13 active good faith avoidance actions.  Three were closed during the Compensation Period, leaving a total of 10 active good faith avoidance actions by the end of the Compensation Period.  In certain avoidance actions, the Trustee entered into mediations and where appropriate, the Trustee's counsel engaged in settlement negotiations, which led to one documented settlement during the Compensation Period. Judgment was obtained in two cases.

### b.    Trial-Related Motion Practice

### 1.    Sage Actions

90.    On December 1, 2020, counsel for Defendants Sage Associates, Sage Realty, Malcolm Sage, Ann Passer Sage, and Martin Sage moved for permissive withdrawal of the reference.  *See* Nos. 20-cv-10057 (lead case) & 20-cv-10109, ECF No. 1.

91.    On May 18, 2021, Judge Nathan granted Defendants' motion to withdraw the reference to the bankruptcy court.  *See* No. 20-cv-10057, ECF No. 19.  Judge Nathan directed the parties to submit a joint letter by June 14, 2021 on the status of discovery and next steps.  *See id.*

92.    On November 2, 2021, the actions were reassigned to District Judge John F. Keenan.

93.    On January 19, 2022, trial in the consolidated actions began before Judge Keenan. Trial continued on January 21, 24, and 25, in addition to February 2, 2022.

94.    On April 15, 2022, the Court entered judgment in favor of the Trustee in the amount of $16,880,000 against all Defendants, jointly and severally.  *See* No. 20-cv-10057, ECF No. 111.

95.    On April 19, 2022, the Court modified the April 15, 2022 judgment to enter judgment in favor of the Trustee (1) in the amount of $13,510,000 against Defendants Sage Associates, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally, and (2) in the amount of $3,370,000 against Defendants Sage Realty, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally.  *See* No. 20-cv-10057, ECF No. 113.

96.    On May 20, 2022, Malcolm Sage filed a Notice of Appeal of the District Court's judgment in both actions.  *See* No. 20-cv-10057, ECF No. 118; No. 20-cv-10109, ECF No. 74. On June 3, 2022, the Trustee filed the Notice of Cross-Appeal of the District Court's judgment.  *See id.*, ECF No. 120.  On September 16, 2022, Defendants filed their opening brief before the Second Circuit.  *See* Lead Case No. 22-1107, ECF Nos. 81, 83.  On December 2, 2022, the Trustee withdrew its Cross-Appeal of the District Court's judgment.  *See id.*, ECF Nos. 101, 102.  On December 16, 2022, the Trustee and SIPC filed their briefs in response to Defendants' opening brief.  *See id.*, ECF Nos. 115, 116.  On January 16, 2023, Defendants filed their reply brief.  *See id.*, ECF No. 150.  Oral arguments took place on May 31, 2023.  *See id.*, ECF Nos. 181, 185.

c.    **Summary Judgment Motions**

1.    **RAR Entrepreneurial Fund Ltd. Action**

97.    On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved for permissive withdrawal of the reference.  *See* No. 20-cv-01029, ECF No. 1.

98.    On February 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the court so ordered on March 5, 2020. *See* No. 20-cv-01029,

ECF Nos. 5 & 7.

99.    On April 1, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-

cv-01029, ECF Nos. 12–20.   On June 5, 2020, Defendant filed its memorandum of law in

opposition to the Trustee's motion for summary judgment and in support of its cross-motion for

summary judgment dismissing the case in its entirely.   On June 9, 2020, Defendant filed its notice

of cross-motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 25–29.   On June 23,

2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition

to his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 33–35.   Defendant filed its

reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

100.    On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the

Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding that

the Trustee had standing to pursue the Two-Year Transfers, and established the elements of his

claim except that there were issues of fact with respect to whether the transfers were made by the

LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is

ultimately likely to prevail on its claim."  No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y.

Mar. 3, 2021).

101.    On May 6, 2021, the court held a telephonic conference with the parties, during

which the trial was scheduled to begin on July 19, 2021. *See* No. 20-cv-01029, ECF No. 49.

102.    On May 11, 2021, the Trustee filed a letter motion seeking to stay the trial pending

a decision from the Second Circuit in the similarly situated avoidance action, *Picard v. JABA

Assocs. LP*, No. 21-872 (2d Cir.), which Defendant opposed in a letter response dated May 13,

2021.  *See* No. 20-cv-01029, ECF Nos. 54-55.  The District Court denied the motion.  *See id.*, ECF No. 56.

103.    On June 2, 2021, the court issued an order rescheduling the trial to begin on July 20, 2021.  *See* No. 20-cv-01029, ECF No. 59.

104.    On July 16, 2021, the trial was adjourned.  *See* No. 20-cv-01029, ECF No. 98.

105.    On August 27, 2021, the court issued an order rescheduling the trial to begin on October 18, 2021.  *See* No. 20-cv-01029, ECF No. 104.

106.    On September 17, 2021, the court instructed the parties it would notify them on October 13, 2021 whether the trial would be adjourned.  *See* No. 20-cv-01029, ECF No. 107.

107.    On October 13, 2021, the trial was adjourned and subsequently rescheduled for March 3, 2022.  *See* No. 20-cv-01029, ECF Nos. 110 & 115.

108.    On February 28, 2022, the final pretrial conference was held and the trial began three days later on March 3, 2022.  *See* No. 20-cv-01029, ECF Nos. 121, 134, 135, 137.  On March 7, 2022, after closing statements were made, the jury deliberated and reached a verdict in favor of the Trustee, finding that the investment advisory business of Madoff's sole proprietorship was transferred to the limited liability company before December 11, 2006 (two years prior to the filing of the SIPA liquidation), and awarding the Trustee $12,800,065 (the total amount in fraudulent transfers received by Defendants between December 11, 2006 and December 11, 2008).  *See id.*, ECF No. 132.

109.    On March 22, 2022, the parties filed their supplemental memoranda of law as to whether prejudgment interest should be awarded to the Trustee.  *See* No. 20-cv-01029, ECF Nos. 141–42.

110.    On September 20, 2022, the District Court granted the Trustee prejudgment interest from the date of the complaint against the defendant through the date of entry of judgment, at a rate of 4% per annum.  *See* No. 20-cv-01029, ECF No. 149.

111.    On September 23, 2022, the District Court entered its final judgment in favor of the Trustee in the total amount of $18,867,295.81, which includes prejudgment interest at a rate of 4% from November 12, 2010 through the date of entry of judgment.  *See* No. 20-cv-01029, ECF No. 151.

112.    On November 23, 2022, RAR Entrepreneurial Fund, Ltd. filed a Notice of Appeal of the District Court's judgment.  *See* No. 20-cv-01029, ECF No. 159.  RAR Entrepreneurial Fund, Ltd. filed its opening brief on March 16, 2023.  *See* Lead Case No. 22-3006, Nos. 40, 44.  The Trustee and SIPC filed their briefs on June 15, 2023.  *See id.*, Nos. 67, 66.

### 2.    151797 Canada Inc. Action

113.    On November 18, 2022, the Trustee filed his motion for summary judgment against Defendant 151797 Canada Inc.  *See* Adv. Pro. No. 10-04631, ECF Nos. 55-61.  As of January 5, 2023, Defendant failed to respond to the Trustee's motion.  *See id.*, ECF No. 71.  On January 9, 2023, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $2,000,000, plus prejudgment interest at a rate of 4% from December 11, 2008 through January 5, 2023 in the amount of $1,125,600 for a total sum of $3,125,600.  *See id.* On January 9, 2023, the Trustee obtained a judgment to recover from the Defendant, 151797 Canada Inc., the total amount of $3,125,600 representing $2,000,000 in avoidable transfers, and $1,125,600 in pre-judgment interest at the rate of 4%, from Dec. 11, 2008 through Jan. 9, 2023. *See* Adv. Pro. No. 10-04631, ECF No. 71.

E.    **MATTER 29 – RYE/TREMONT**

114.    This matter categorizes time spent by the Trustee and B&H attorneys following the

settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc.,

Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous

related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the

Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

conveyances in connection with certain transfers of property by BLMIS (the "Tremont

Litigation"). *Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr.

S.D.N.Y. Dec. 7, 2010).

115.    After the court filing, the parties entered into substantive settlement negotiations,

which resulted in a significant settlement approved by the Court on September 22, 2011.  The

settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont

Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont*

*Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF

No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any

feeder or investment fund.

116.    Two objections to the settlement agreement were filed by non-BLMIS customers,

both of which were overruled by this Court.  There were two non-settling defendants at the time,

Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

117.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.

*See Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y.

Oct. 18, 2011).  On June 27, 2012, United States District Judge George B. Daniels granted the

32

Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

118.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

119.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

120.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.*, Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

121.    During the Compensation Period, B&H attorneys assisted in preparing necessary disclosure and discovery in support of the Trustee's avoidance actions against the recipients of customer property that was subsequently transferred from Tremont. In addition, strategy and investigation for actions against subsequent transferees has continued, including work involving

33

issues related to establishing and supporting elements of actual knowledge or willful blindness of some of the proposed defendants, analysis consistent with recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself in support of several of the Trustee's avoidance actions against the recipients of subsequent transfers.

### F.    **MATTER 30 – HSBC**

122.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.73 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (CGM) (Bankr. S.D.N.Y. Nov. 30, 2012).

123.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

124.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate.  (ECF No. 16431).

125.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate.  (ECF No. 16430).

126.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF

34

No. 482.   Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

127.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497.  The Trustee's litigation with Alpha Prime is ongoing

128.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 545.  On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 548.  Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 566.

129.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 567.

130.    On June 20, 2022, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in resolution of all but one remaining outstanding issue. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 715.  The Trustee's litigation with Alpha Prime and HSBC is ongoing.

131.    The Trustee's litigation with Alpha Prime and HSBC is ongoing. On November 21, 2022, certain individuals sought to resist discovery. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 720. The Trustee opposed that application, and the Court denied the motion and allowed discovery to continue. *Id.* ECF No. 735.

G.    **MATTER 32 – UBS/LUXALPHA/LIF**

132.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action").  *Picard v. UBS AG*, Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

133.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action").  *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

134.    In connection with the Luxalpha Action, on March 2, 2020, the Trustee filed his Motion for Leave to File a Second Amended Complaint and Proposed Second Amended Complaint.  On April 3, 2020, the Luxalpha Liquidators filed their Memorandum in Opposition to the Trustee's Motion for Leave to File a Second Amended Complaint and in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance.  Subsequently, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Luxalpha's Cross-Motion for Claim Determination and Allowance on May 4, 2020.  On May 18, 2020, the Luxalpha Liquidators filed their Reply

36

Memorandum of Law in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance.

135.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with counsel for the Trustee and the Luxalpha Liquidators regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court stated that hearing on the motions will be adjourned *sine die* pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *See* discussion *infra* Sections IV(I) and IV(R). On June 22, 2020, the Trustee and the Luxalpha Liquidators filed a joint notice adjourning the hearing on the motions accordingly.

136.    With respect to the LIF Action, on October 27, 2020, the Trustee filed a Motion for Entry of Order Approving a Settlement By And Between the Trustee and AA (Alternative Advantage) PLC on Behalf of its Sub-Fund Landmark Investment Fund Ireland ("Landmark"). On November 16, 2020, the Bankruptcy Court entered an order approving the settlement agreement. Pursuant to the terms of the settlement agreement, Landmark is to pay approximately $3 million and make available to B&H attorneys relevant documents and information that will assist the Trustee in prosecuting other actions to avoid and recover customer property.

137.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith. *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 185-200 (2d Cir. 2021).

138.    On January 20, 2022, the Court entered a so-ordered stipulation between the Parties in the Luxalpha Action regarding the filing of the Trustee's Second Amended Complaint. Pursuant

to the stipulation, on February 7, 2022, the Trustee provided Defendants with the Proposed Second Amended Complaint. On February 18, 2022, Defendants consented to the Trustee filing the Proposed Second Amended Complaint. On February 28, 2022, the Trustee filed the Second Amended Complaint.

139. On April 19, 2022, the Court entered a so-ordered stipulation between the Trustee and Luxalpha SICAV withdrawing Luxalpha SICAV's Cross-Motion without prejudice to it being refiled at a future date. On April 22, 2022, Luxalpha SICAV filed its Answer to the Second Amended Complaint. Also on April 22, 2022, the moving defendants in the Luxalpha Action filed their motions to dismiss. The Trustee's opposition to the motions to dismiss was filed on June 17, 2022. The moving defendants' reply briefs were filed on July 29, 2022.

140. On September 14, 2022, the Court held oral argument on all of the defendants' motions to dismiss in the Luxalpha matter. On November 18, 2022, the Court issued a decision denying the Access Defendants'[7] motions to dismiss in their entirety.

141. During the Compensation Period, B&H attorneys, on behalf of the Trustee, reviewed and analyzed the Court's decisions denying the defendants' motions to dismiss in the Luxalpha matter. In addition, B&H attorneys reviewed and analyzed the answers and affirmative defenses filed by each defendant in response to the Second Amended Complaint. B&H attorneys also continued analyzing potential settlements with certain individual defendants in the Luxalpha matter and working on the terms of a draft cooperation agreement in connection with one such

---

[7] The Access Defendants are Access International Advisors LLC, Access International Advisors Ltd., Access Management Luxembourg SA (f/k/a Access International Advisors Luxembourg) SA) as represented by its Liquidator Maitre Ferdinand Entringer, Access Partners SA as represented by its Liquidator Maitre Ferdinand Entringer, Claudine Magon de la Villehuchet (a/k/a Claudine de la Villehuchet) in her capacity as Executrix under the Will of Thierry Magon de la Villehuchet (a/k/a Rene Thierry de la Villehuchet), Claudine Magon de la Villehuchet (a/k/a Claudine de la Villehuchet) individually as the sole beneficiary under the Will of Thierry Magon de la Villehuchet (a/k/a Rene Thierry de la Villehuchet), Groupement Financier Ltd., and Patrick Littaye.

potential settlement. B&H attorneys also continued discovery planning, including the preparation of initial disclosures and a proposed case management plan in advance of discovery planning conferences with opposing counsel, and worked with the Trustee's counsel in Luxembourg and France in connection with discovery proceedings in those jurisdictions. In the Luxembourg Investment Fund matter, B&H attorneys continued to prepare and filed the Trustee's Second Amended Complaint. B&H attorneys also negotiated with opposing counsel on a stipulated schedule for the defendants' answers or motions to dismiss in response to the Second Amended Complaint and continued with discovery planning.

142.    In the Luxalpha matter, on December 1, 2022, the Court issued a decision denying Theodore Dumbauld's motion to dismiss in its entirety. On December 27, 2022, the Court issued a decision denying the UBS Defendants'[8] motions to dismiss in their entirety. On January 19, 2023, the UBS Defendants moved for Partial Reargument or Reconsideration of the Order Denying Their Motion to Dismiss the Second Amended Complaint, and on January 24, 2023, the Court denied the UBS Defendants' motion to reargue. On February 28, 2023, the UBS Defendants, the Access Defendants and Claudine Villehuchet filed their Answers to the Second Amended Complaint. On March 3, 2023, Theodore Dumbauld filed his Answer to the Second Amended Complaint. In the Luxembourg Investment Fund matter, the Trustee filed his Second Amended Complaint on February 24, 2023.

143.    Subsequent to the Compensation Period, on May 9, 2023, the Trustee made an application to the Bankruptcy Court seeking the withdrawal of Letters of Request for the Taking of Evidence Abroad in Civil or Commercial Matters ("Letters of Request") that had been issued

---

[8] The UBS Defendants are UBS AG, UBS (Luxembourg) S.A., UBS Fund Services (Luxembourg) S.A., and UBS Third Party Management Company S.A.

in the Luxalpha matter seeking discovery in Luxembourg from the UBS Defendants. The Trustee made his application because the UBS Defendants are indisputably subject to discovery as parties following the denial of their motions to dismiss in the Luxalpha matter. On May 15, 2023, the UBS Defendants filed a letter with the Bankruptcy Court in opposition to the Trustee's application. On May 17 and 24, 2023, the Bankruptcy Court held discovery conferences to discuss the Trustee's application. During the May 24, 2023 conference, counsel for the Trustee stated that the application should be expanded to also include Letters of Request that had been issued to the same UBS Defendants in the Luxembourg Investment Fund matter, and the Bankruptcy Court agreed that the Letters of Request should be withdrawn in both matters. On June 1, 2023, the Bankruptcy Court entered an order withdrawing the Letters of Request in both the Luxalpha matter and the Luxembourg Investment Fund matter.

## H.    MATTER 33 – NOMURA INTERNATIONAL PLC

144.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

145.    By orders dated May 15, 2012, and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the

"Extraterritoriality Issue"). *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

146.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

147.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

148.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *infra* Section IV(U).

149.    On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 108.

150.    On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties. *Id.*, ECF No. 113. The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

151.    On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order. *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(U).

41

152.     On August 29, 2019, Nomura filed a petition for writ of certiorari in the United

States Supreme Court.  On June 1, 2020, the United States Supreme Court denied the petition for

writ of certiorari.  *See* discussion *infra* Section IV(U).

153.     On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal

of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA

liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee

need not plead a transferee's lack of good faith.  *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th

171, 185-200 (2d Cir. 2021).  The Second Circuit's decision governs the Trustee's actions against

other subsequent transferee defendants, including Nomura.

154.     On August 4, 2022, the parties submitted revised stipulated scheduling orders

governing Defendant's motions to dismiss the amended complaints in the instant Nomura Action

and a separate adversary proceeding captioned as *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-

02759 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011).  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-

05348 (CGM), ECF No. 123; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF

No. 93.  On August 26, 2022, Defendant filed its motions to dismiss the Trustee's amended

complaints.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 124-5; *Picard

v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 94-95.  The Trustee's filed his

oppositions to the motions to dismiss on November 8, 2022. *Picard v. Nomura Int'l plc*, Adv. Pro.

No. 10-05348 (CGM), ECF No. 127; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM),

ECF. 97.

155.     On December 19, 2022, Nomura filed its reply memorandums in support of its

motions to dismiss.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 129;

*Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF. 99.  On January 27, 2023,

Nomura agreed to waive oral argument and the Trustee filed stipulated orders waiving oral argument. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 130; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 100. On April 19 and 26, 2023, Judge Morris issued memorandum decisions denying Nomura's motions to dismiss in their entirety. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 137; *Picard v. Nomura Int'l plc*, Adv. Pro. No. 11-02759 (CGM), ECF No. 109.

## I.   <u>MATTER 34 – CITIBANK</u>

156.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

157.   On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint. (ECF No. 170).

158.   From October through November 2019, B&H attorneys analyzed the Court's ruling denying the Trustee's motion for leave to file an amended complaint and began preparing a motion for entry of final judgment.

159.   On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (ECF No. 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment. (ECF No. 176).

160.   On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying

43

Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro.
No. 10-05345 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision
Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200
(Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (CGM)), ECF No. 140; (iii) Order of the United
States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18,
2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil
Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y.
June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for
the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv. Prot. Corp. v.
Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-
115 (JSR)), ECF No. 524.

161.    On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court
under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

162.    On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an
Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the
Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 1.

163.    On April 23, 2020, the Second Circuit granted the Trustee's Unopposed Petition
for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard
v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 23.

164.    On May 28, 2020, the Trustee filed a motion for the appeals in *Picard v. Citibank,
N.A.*, 20-1333 (2d Cir. 2020), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to
proceed in tandem and to therefore be heard before the same panel. *Picard v. Citibank, N.A.*, 20-
1333 (2d Cir. 2020), ECF No. 28.

165.    On June 2, 2020, Defendants filed their opposition to the Trustee's motion.  *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 31.

166.    On June 8, 2020, the Trustee filed a Reply in support of his motion for *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to proceed in tandem, and on that same day, the Second Circuit granted the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), ECF No. 45.  *See* discussion *infra* Section IV(R).

167.    On August 6, 2020, the Trustee filed his appellate brief and appendices.   On August 13, professors of bankruptcy law, the National Association of Bankruptcy Trustees, and professors of civil procedure filed their respective briefs in support of the Trustee as *amici curiae*.

168.    On November 5, 2020, Defendants-Appellees filed their opposition brief, ECF No. 134.

169.    On November 12, 2020, (i) the Securities Industry and Financial Markets Association and the American Bankers Association; (ii) ABN AMRO Bank N.V.; and (iii) ABN AMRO Retained Custodial Services (Ireland) Limited and ABN AMRO Custodial Services (Ireland) Ltd. filed their respective briefs in support of the Defendants-Appellees' opposition as *amici curiae*, ECF Nos. 136, 139, 140.

170.    On November 25, 2020, the Trustee and SIPC filed their respective reply briefs, ECF Nos. 166, 167.

171.    Oral argument was heard on March 12, 2021 before the Second Circuit.  On March 23, 2021 and June 11, 2021, the Trustee filed notices to adjourn the pre-trial conference while awaiting the Second Circuit judgment, which was issued on August 31, 2021.  The Second Circuit judgment vacated the judgments of the bankruptcy court and remanded the case for proceedings consistent with the Second Circuit's opinion.

172.    On January 27, 2022, Defendants Citibank, N.A. and Citicorp North America, Inc. petitioned the Supreme Court for a writ of certiorari to review the Second Circuit's judgment. *Citibank N.A. v. Picard*, No. 21-1059 (2021).  The Trustee declined to submit an opposition.  On February 28, 2022, the Supreme Court denied the petition for writ of certiorari. *Citibank N.A. v. Picard*, No. 21-1059 (2021).

173.    On February 11, 2022, the Trustee filed an amended complaint against Defendants. On April 22, 2022, Defendants filed a motion to dismiss the amended complaint.  On July 1, 2022, the Trustee filed his opposition to Defendants' motion to dismiss.

174.    On September 14, 2022, the Trustee argued Defendants' motion to dismiss the amended complaint before Judge Cecelia M. Morris.  On September 27, 2022, Judge Morris denied Defendants' motion to dismiss in its entirety.  On November 2, 2022, Defendants filed a motion for interlocutory appeal of the Bankruptcy Court's decision, challenging its application of the "Ponzi scheme presumption" and the avoidability of a $300 million transfer from BLMIS to Rye Select Broad Market Prime Fund, which Defendants assert did not deplete the BLMIS estate.  On November 16, 2022, B&H attorneys filed the Trustee's opposition to Defendants' motion for interlocutory appeal.  On November 30, 2022, Defendants filed their reply in support of their motion for interlocutory appeal.

175.    During the Compensation Period, in November and January 2023, the Trustee and Defendants participated in their Rule 26(f) conference.  On March 2, 2023, the Trustee filed a Case Management Plan.  On March 24, 2023, the Trustee served Defendants with his first set of requests for production.  On March 31, 2023, the Trustee served Defendants with his initial disclosures. On April 4, 2023, Defendants served the Trustee with their initial disclosures. On May 10, 2023,

the Trustee filed a Notice of Adjournment adjourning the pre-trial conference, previously scheduled for May 17, 2023, to December 20, 2023.

### J.  **MATTER 35 – NATIXIS**

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis S.A., Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Original Natixis Action").  *Picard v. Natixis*, Adv. No. 10-05353 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

177.    Prior to the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(U). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the Original Natixis Action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (CGM) (Bankr. S.D.N.Y.) (ECF No. 180).

178.    On March 28, 2019, the parties entered a stipulation to stay the Original Natixis Action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.*, (ECF No. 181).

179.    On July 1, 2020, the parties entered a stipulation to stay the Original Natixis Action until the United States Court of Appeals for the Second Circuit decided the good faith appeal

pending in the Trustee's actions against Citibank, N.A. and Legacy Capital Ltd. *Id.*, (ECF No. 185); *see* discussion *supra* Section IV(I) and *infra* Section IV(R).

180.    Following the Second Circuit's decision in *Picard v. Citibank N.A. (In re Bernard L. Madoff Investment Securities LLC,)* 12 F.4th 171 (2d Cir. 2021), B&H attorneys analyzed the filed complaint in the Original Natixis Action, and in an effort to streamline proceedings, determined to dismiss Natixis FP and Bloom Asset Holdings Fund from the Original Natixis Action in favor of a separate proceeding against them. On January 31, 2023, after conferring with B&H teams and opposing counsel, and engaging in extensive drafting and factual research, the Trustee filed the Amended Complaint in the Original Natixis Action. *Picard v. Natixis S.A.*, Adv. No. 10-05353 (Bankr. S.D.N.Y.) (ECF No. 193).  On April 17, 2023, Natixis S.A. and Tensyr Ltd. filed motions to dismiss the Trustee's Amended Complaint.

181.    The Trustee filed a new action against Natixis FP and Bloom Asset Holdings Fund in Adv. Pro. No. 23-01017 (the "Severed Natixis Action") on March 1, 2023. On May 22, 2023, Natixis Financial Products LLC and Bloom Asset Holdings Fund filed a motion to dismiss the Trustee's Complaint.

182.    During the Compensation Period, B&H attorneys prepared for motions to dismiss to be filed by Natixis S.A. and Tensyr Limited in the Original Natixis Action, conducted legal research, and drafted the Trustee's anticipated arguments in his oppositions to the motions to dismiss. B&H attorneys also conducted legal research and drafted potential arguments for oppositions to the expected motions to dismiss of Natixis FP and Bloom Asset Holdings Fund in the Severed Natixis Action.

## K.    MATTER 36 – MERRILL LYNCH

183.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16

million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action"). *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

184.    On August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith.   The *Citibank Decision* vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.

185.    During the Compensation Period, B&H attorneys analyzed potential discovery and motion practice.   B&H attorneys also prepared an opposition to MLI's motion to dismiss the amended complaint, which MLI filed on October 19, 2022.   The Trustee's opposition to MLI's motion to dismiss was filed on December 9, 2022. On January 11, 2023, MLI filed its reply memorandum in support of its motion to dismiss. After the parties agreed and prepared a stipulation to waive oral argument on March 8, the Bankruptcy Court denied the motion and issued its Memorandum Decision Denying Defendant's Motion to Dismiss (ECF No. 155) on March 16, 2023.  B&H attorneys analyzed that decision and also prepared the Order denying the motion that was entered by Judge Morris on March 28, 2023.

## L.    MATTER 37 – ABN AMRO

186.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing two now-consolidated avoidance actions against ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.) ("ABN").

187.    In the first action, the Trustee seeks the return of approximately $286 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property ABN received from Rye Select Broad Market XL Portfolio, Ltd., Rye Select Broad Market Portfolio Limited, Rye Select Broad Market XL Fund L.P., and Rye Select Broad Market Fund L.P. *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.)*, Adv. No. 10-05354 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010) (the "ABN Rye Bankruptcy Court Action").

188.    On June 10, 2019, the Trustee filed a motion for leave to file a second amended complaint in the ABN Rye Bankruptcy Court Action. *Id.*, ECF No. 179. On March 31, 2020, the Bankruptcy Court denied the Trustee's motion. *Id.*, ECF No. 200. On April 9, 2020, the Bankruptcy Court entered a final judgment in the matter (the "Final Judgment"). *Id.*, ECF No. 201.

189.    On April 23, 2020, the Trustee filed a Notice of Appeal, appealing the Final Judgment to the District Court. *Id.*, ECF No. 202. On May 12, 2020, the Record of Appeal was transmitted to the District Court and the appeal was assigned to Judge Valerie E. Caproni. *Picard v. ABN AMRO Bank N.V.*, No. 20-cv-3684 (VEC) (S.D.N.Y. May 12, 2020) ("ABN District Court Appeal"), ECF No. 1.

190.    On May 28, 2020, the Trustee moved the District Court for a stay of his appeal pending a decision by the Second Circuit in two similarly situated actions: *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively, the "Good Faith Appeals"). ABN District Court Appeal, ECF Nos. 3-4. On June 8, 2020, the District Court granted the Trustee's motion and stayed his appeal, with exception to permit a

motion by ABN for certification of the appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 12.

191.    On June 9, 2020, ABN moved the District Court to certify the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF Nos. 17-18. On July 16, 2020, the District Court granted ABN's motion and certified the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 22.

192.    On July 21, 2020, ABN moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with the Related Appeals. *Picard v. ABN AMRO Bank, N.V.*, No. 20-2291 (2d Cir. July 21, 2020) ("ABN Second Circuit Appeal"), ECF Nos. 1-2. On August 4, 2020, the Second Circuit denied ABN's motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Good Faith Appeals. *Id.*, ECF No. 37. On October 6, 2020, the Second Circuit issued an order deferring its decision on ABN's motion for leave to appeal pending resolution of the Good Faith Appeals. *Id.*, ECF No. 48.

193.    On August 30, 2021, the Second Circuit entered its decision in the Good Faith Appeals. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. Aug. 30, 2021), ECF No. 182-1.

194.    On October 26, 2021, the parties filed a Stipulation in the Second Circuit to withdraw the ABN Second Circuit Appeal with prejudice pursuant to Federal Rule of Appellate Procedure 42(b). ABN Second Circuit Appeal, ECF No. 51. On October 27, 2021, the Second Circuit "so-ordered" the Stipulation and issued the mandate. *Id.*, ECF Nos. 57-58.

195.    On November 12, 2021, the parties filed a letter in the District Court to so order a Stipulation vacating the Bankruptcy Court's Final Judgment in the ABN Rye Bankruptcy Court Action and remand the case to the Bankruptcy Court for further proceedings. ABN District Court

Appeal, ECF No. 25. On November 12, 2021, the District Court "so-ordered" the Stipulation, vacated the Bankruptcy Court's Final Judgment, and remanded the ABN Bankruptcy Court Action to the Bankruptcy Court for further proceedings. *Id.*, ECF No. 26.

196.    On November 16, 2021, the ABN Rye Bankruptcy Court Action was formally reopened in the Bankruptcy Court. ABN Rye Bankruptcy Court Action, ECF No. 214.

197.    On October 6, 2011, the Trustee commenced his second action against ABN in the adversary proceeding *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.)*, Adv. Pro. 11-02760 (CGM), seeking the return of approximately $21 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with subsequent transfers of BLMIS customer property ABN received from Harley International (Cayman) Limited (the "ABN Harley Bankruptcy Court Action").

198.    On July 6, 2014, the District Court entered an Opinion and Order ruling on extraterritoriality and international comity issues (the "District Court ET Decision") and returned certain matters to the Bankruptcy Court for further proceedings consistent with the District Court ET Decision, *see SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *infra* Section IV(U).

199.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Bankruptcy Court ET Decision") dismissing certain claims to recover subsequent transfers on grounds of international comity resulting in the dismissal of all claims against ABN in the ABN Harley Bankruptcy Court Action. ABN Harley Bankruptcy Court Action, ECF No. 74; *see Picard v. Bureau of Labor Ins.*

*(SIPC v. BLMIS)*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *infra* Section IV(U).

200.    On February 25, 2019, the Second Circuit issued an order, *In re Picard*, 917 F.3d 85 (2d Cir. 2019) which, *inter alia*, vacated the Bankruptcy Court ET Decision.

201.    On January 19, 2022, the Bankruptcy Court "so-ordered" a Stipulation between the parties setting forth a schedule for the Trustee to file a motion to amend the complaints and consolidate his two actions against ABN. ABN Rye Bankruptcy Court Action, ECF No. 217; ABN Harley Bankruptcy Court Action, ECF No. 109.

202.    On March 2, 2022, the Bankruptcy Court "so-ordered" an amendment to the Parties' Stipulation that set forth, among other things, a deadline for ABN to inform the Trustee whether it would consent to the Trustee filing a Consolidated Second Amended Complaint (the "Consolidated Amended Complaint") and a briefing schedule for ABN's motion to dismiss in the event that it consented to the Trustee filing the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 219; ABN Harley Bankruptcy Court Action, ECF No. 110.

203.    On March 7, 2022, ABN consented to the Trustee's filing of the Consolidated Amended Complaint.

204.    On March 22, 2022, the Trustee filed the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 220; ABN Harley Bankruptcy Court Action, ECF No. 111.

205.    On April 20, 2022, the Court "so-ordered" a Stipulation and Order for Consolidation, consolidating the ABN Rye Bankruptcy Court Action and the ABN Harley Bankruptcy Court Action under the ABN Rye Bankruptcy Court Action. ABN Rye Bankruptcy Court Action, ECF No. 222; ABN Harley Bankruptcy Court Action, ECF No. 113.

206.    On May 23, 2022, ABN filed its motion to dismiss the Consolidated Amended Complaint. ABN Rye Bankruptcy Court Action, ECF No. 224. On July 22, 2022, the Trustee filed his opposition to ABN's motion, and ABN filed its reply in further support of its motion on August 22, 2022. *Id*., ECF Nos. 226, 203.

207.    During the Compensation Period, B&H attorneys prepared for oral argument on ABN's motion, and on December 14, 2022, the parties argued before the Court. On March 3, 2023, the Court issued a Memorandum Decision Denying Defendant's Motion to Dismiss in its entirety. *Id*., ECF No. 262. On March 15, 2023, the Court issued the corresponding Order Denying Defendant's Motion to Dismiss, which also ordered ABN to file an Answer to the Consolidated Amended Complaint by May 15, 2023. *Id*., ECF No. 266.

208.    On May 15, 2023, ABN filed an Answer and Affirmative Defenses to the Consolidated Second Amended Complaint. *Id*., ECF No. 268. ABN also asserted Counterclaims against the Trustee. *Id.*

209.    B&H attorneys currently are preparing the Trustee's response to ABN's Counterclaims and for discovery in the matter.

## M.    **MATTER 39 – FORTIS**

210.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $235 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action").

*Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

211.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 162). On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. (ECF No. 165). On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 169). On May 23, 2019, the Trustee filed the Reply in Further Support of the Motion for Leave to File an Amended Complaint. (ECF No. 179). Oral argument in this matter was held on September 25, 2019. On January 23, 2020, the Bankruptcy Court issued its Memorandum Decision Denying Motion for Leave to File Second Amended Complaint. (ECF No. 188). On February 6, 2020, the Bankruptcy Court entered the Stipulated Order Denying the Trustee's Motion for Leave to Amend and Entering Final Judgment. (ECF No. 189).

212.    On February 19, 2020, the Trustee filed his Notice of Appeal. (ECF No. 189).  On March 4, 2020, the Trustee filed his Designation of Items to be Included in the Record on Appeal and Statement of Issues to Presented. (ECF No. 192).  On March 18, 2020, the Fortis Defendants filed a Counter-Designation of Additional Items to be Included in the Record on Appeal. (ECF No. 194).  On March 27, 2020, the Record of Appeal was transmitted to the United States District Court of Appeal and assigned to Judge Colleen McMahon. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 27, 2020) (ECF Nos. 1, 3).

213.    On April 6, 2020, the Fortis Defendants moved for Leave to Appeal directly to the Second Circuit pursuant to § 158(d)(2)(A). (ECF Nos. 8-10)  On April 10, 2020, the Trustee filed a joint letter motion for an Extension of Time to Complete Merits Briefing and Trustee's Response

and Consent to Defendants' Motion Requesting Permission to Appeal to the Second Circuit. (ECF No. 14). On May 7, 2020, the Trustee filed a Letter Motion for an Extension of Time of Briefing Schedule beyond May 15, 2020. (ECF No. 17). On May 8, 2020, Judge McMahon granted the Trustee's Letter Motion. (ECF Nos. 18, 19). On June 11, 2020, Judge McMahon granted the Fortis Defendants' Motion for Leave to Appeal and stayed merits briefing pending resolution of the motion. (ECF No. 24).

214. On June 18, 2020, the Fortis Defendants filed a motion for Leave to Appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Jun 18, 2020) (ECF Nos. 1-2). The Fortis Defendants also filed a motion to expedite so that the Fortis Defendants' briefing could be heard in tandem with the related appeals of *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir.) and *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir.) (together, the "Related Appeals"). (ECF No. 2). On August 4, 2020, the Second Circuit denied the Fortis Defendants' motion to expedite and for hearing in tandem. (ECF No. 42). On October 6, 2020, the Second Circuit deferred a decision on the motion for leave to appeal to the Second Circuit until the resolution of the Related Appeals. (ECF No. 48).

215. On August 30, 2021, the Second Circuit rendered its decision in the Related Appeals, overturning the District Court's standard for pleading good faith, vacating the judgments of the Bankruptcy Court, and remanding for further proceedings consistent with the opinion. *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir. Aug. 30, 2021) (ECF No. 182); *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir. Aug. 30, 2021) (ECF No. 177).

216. On October 1, 2021, the Fortis Defendants filed an updated petition requesting permission to appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Oct. 1, 2021) (ECF No.50). On October 12, 2021, the Trustee filed an opposition to

this motion. (ECF No. 67). The matter was heard on February 1, 2022, and the Second Circuit

denied the request for direct appeal on February 3, 2022 (ECF No. 84), returning the matter to the

District Court.

217.    The Trustee filed his merits brief in the District Court before Judge McMahon on

March 7, 2022, requesting vacatur and remand to the Bankruptcy Court. *Picard v. ABN AMRO*

*Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 7, 2022) (ECF No. 27).   The Fortis

Defendants opposed. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y.

Apr. 6, 2022) (ECF No. 32).  The Trustee replied on April 21, 2022, reiterating the need for vacatur

and remand. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Apr. 21,

2022) (ECF No. 33).   Judge McMahon rendered her decision for the Trustee and vacated the

Bankruptcy Court's 2020 decision and remanded the matter back to the Bankruptcy Court. *Picard*

*v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. May 2, 2022) (ECF No. 35).

218.    The Trustee and the Fortis Defendants conferred and agreed upon a briefing

schedule that allowed for the Trustee to file his second amended complaint. *Picard v. ABN AMRO*

*Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Jun. 13, 2022) (ECF No. 203).

The Trustee filed his second amended complaint on consent on June 17, 2022. *Picard v. ABN*

*AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Jun. 17, 2022) (ECF

No. 205).  The Fortis Defendants filed a motion to dismiss on August 19, 2022. *Picard v. ABN*

*AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Aug. 19, 2022) (ECF

No. 209).  The Trustee filed his opposition on October 18, 2022. *Picard v. ABN AMRO Bank*

*(Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2022) (ECF No. 214). The

Fortis Defendants filed their reply brief on December 2, 2022. *Picard v. ABN AMRO Bank*

*(Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Dec. 2, 2022) (ECF No. 230).  Oral

argument took place on February 15, 2023. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Nov. 23, 2022) (ECF No. 229).

219.     Judge Morris rendered her decision for the Trustee, denying the Fortis Defendants' motion to dismiss on March 28, 2023.  *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (CGM) (Bankr. S.D.N.Y. Mar. 28, 2023) (ECF No. 237).  The settle order was entered on April 3, 2023 (ECF No. 244), and the Fortis Defendants answered the Trustee's second amended complaint on May 26, 2023 (ECF No. 249).

## N.     **MATTER 53 – MAGNIFY**

220.     This matter categorizes time spent by the Trustee and B&H attorneys concerning litigation related to the avoidance action Picard *v. Magnify Inc., et.al.*, Adv. No. 10-05279 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010), which sought return of over $150 million of BLMIS customer property.   It includes the following lawsuits, filed in both Israel and the United States: (i) an initial transferee action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants"); (ii) an action in Israel against five individuals (the "Direct Defendants" and approximately 30 entities (the "Indirect Defendants"), commenced in 2015, on the basis of Israeli unjust enrichment law; and (iii) the Trustee's action in the U.S. brought to recover subsequent transfers of customer property received The Yeshaya Horowitz Association to Defendants The Hebrew University of Jerusalem, Yissum Research Development Corporation of the Hebrew University of Jerusalem Ltd., Ben-Gurion University of the Negev, B.G. Negev Technologies and Applications Ltd., The Weizmann Institute of Science, and Bar Ilan University (collectively, the "Subsequent Transfer Defendants").  *Picard v. Hebrew University of Jerusalem et al.,* Adv. No. 21-01190 (CGM) (Bankr. S.D.N.Y. Sept. 27, 2021).

221.    Following the Court's Order of June 18, 2019 directing the Trustee and the Magnify

Defendants to participate in mediation (ECF No. 181) and the July 11, 2019 order appointing Mr.

Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September

12-14, 2019 to consider a settlement framework that would involve both the action against the

Magnify Defendants and the action against the Direct Defendants  Following the mediation

session, discussions among the parties continued, and the terms of a settlement were reached.

222.    The Trustee negotiated and drafted agreements for the resolution of those actions,

along with consent judgments to be entered against the defendants and other ancillary

documents.  In connection with the negotiations, the Trustee conducted due diligence on financial

disclosures provided by the defendants.  As a result of those efforts, the Trustee entered into a

settlement agreement with the Magnify Defendants, which was approved by the Bankruptcy Court

on September 28, 2020 (ECF No. 197), and also with the Direct Defendants in Israel.

223.    In addition to a settlement payment of $3.5 million USD, which exceeded the two-

year fictitious profits alleged against certain defendants, the settlement avoided the full life-to-date

amount of the initial transfers as fictitious profits pursuant to the Bankruptcy Code.  The settlement

resulted in consent judgments against Defendants Magnify, Premero, Strand, and YHA for the full

amount of the unrecovered liability alleged by the Trustee, among other benefits.  YHA has no

assets and did not contribute to the settlement payment.  The consent judgments were entered by

the Court on October 22, 2020 (ECF Nos. 198-202).

224.    Following the settlement, the Trustee continued prosecuting his action in Israel

against the Indirect Defendants.  Also following the settlement, the Trustee filed his action in the

U.S. against the Subsequent Transfer Defendants. On February 10, 2022, the Subsequent Transfer

Defendants filed a motion (ECF Nos. 16-27) to dismiss the Trustee's complaint. The Trustee filed

his opposition to the motion to dismiss on June 15, 2022 (ECF No. 36). The Subsequent Transfer Defendants filed their reply on September 15, 2022. The Trustee's team prepared for oral argument on the motion to dismiss, including monitoring case-wide developments and decisions on relevant legal issues, and research and drafting of memorandums concerning issues of law concerning U.S. and Israeli corporate law, jurisdictional considerations, and the Bankruptcy Code. Oral argument on Defendants' motion to dismiss occurred on December 21, 2022. On March 29, 2023, the Bankruptcy Court issued a decision in favor of the Defendants, dismissing the action on lack of personal jurisdiction and implicit forum non-conveniens grounds.

225.    Finally, during the Compensation Period, the Trustee consulted with Israeli counsel to analyze strategic issues relating to the ongoing Israeli and U.S. cases.

### O.    MATTER 60 – AVELLINO & BIENES

226.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y. Dec. 10, 2010).

227.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, worked primarily on trial preparation, which included working with the Trustee's experts in connection with drafting a proposed joint stipulation of undisputed direct and subsequent transfers. B&H attorneys also worked on identifying key documents for the Trustee's exhibit list, as well as

conducted legal research, strategized, analyzed legal and factual issues, and analyzed undisputed facts to narrow issues for trial.

228.   B&H attorneys also focused on narrowing the number of defendants for trial, which involved conferring with defendants' counsel, conducting legal research, and requesting, reviewing and analyzing financial documents from certain defendants.

P.   **MATTER 62 – SUBSEQUENT TRANSFERS**

229.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

230.   The Trustee has approximately 79 subsequent transfer cases that seek to recover transfers of customer property of approximately $3.88 billion that defendants received from various BLMIS feeder funds, including the "Fairfield Funds" managed by the Fairfield Greenwich Group, the "Tremont Funds" managed by Tremont Partners, Inc., and/or Harley International (Cayman) Limited.

231.   Prior to this Compensation Period, on August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation proceeding the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith.  The *Citibank Decision* vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.

232.   During the Compensation Period, defendants in different adversary proceedings filed motions to dismiss the Trustee's complaints, which the Trustee opposed.  The Bankruptcy

61

Court denied defendants' motions to dismiss in 23 cases.[9]  Outside the Compensation Period, the

Bankruptcy Court previously denied defendants' motion to dismiss in dozens of cases.[10]

233.    During the Compensation Period, the Trustee opposed 4 motions for interlocutory

appeal to the District Court filed by defendants following the Bankruptcy Court's denial of

defendants' motions to dismiss.[11]

---

[9] *See Picard v. Kookmin Bank*, Adv. Pro. No. 12-01194; *Picard v. UKFP (Asia) Nominees Limited*, Adv. Pro. No. 12-01566; *Picard v. Inteligo Bank*, Adv. Pro. No. 11-02763; *Picard v. Bank Julius Baer & Co.*, Adv. Pro. No. 11-02922,; *Picard v. Standard Chartered Financial Services (Luxembourg) SA, et al.*, Adv. Pro. No. 12-01565; *Picard v. Credit Agricole (Suisse) SA.*, Adv. Pro. No. 12-01022; *Picard v. Mistral (SPC)*, Adv. Pro. No. 12-01273; *Picard v. Zyphyros Limited*, Adv. Pro. No. 12-01278; *Picard v. LGT Bank in Liechtenstein Ltd.*, Adv. Pro. No. 11-02929; *Picard v. Credit Agricole Corporate & Investment Banki*, Adv. Pro. No. 12-01670; *Picard v. Trincastar Corp.,* Adv. Pro. No. 11-02731; *Picard v. National Bank of Kuwait S.A.K., et al.*, Adv. Pro. No. 11-02554; *Picard v. UBS Europe SE*, Adv. Pro. No. 12-01577; *Picard v. NatWest Markets N.V.*, Adv. Pro. No. 10-05354; *Picard v. SNS Bank N.V., et al.*, Adv. Pro. No. 12-01046; *Picard v. Bank International a Luxembourg SA, et al.*, Adv. Pro. No. 12-01698; *Picard v. Bank International a Luxembourg SA, et al.*, Adv. Pro. No. 12-01699; *Picard v. Merrill Lynch International*, Adv. Pro. No. 10-05346; *Picard v. Banco General, SA*, Adv. Pro. No. 12-01048; *Picard v. ABN AMRO Bank (Ireland) Ltd, et al.*, Adv. Pro. No. 10-05355; *Picard v. LGT Bank (Suisse) SA*, Adv. Pro. No. 12-01577; *Picard v. Bank International a Luxembourg SA, et al.*, Adv. Pro. No. 12-01698; and *Picard v. Royal Bank of Canada.*, Adv. Pro. No. 12-01699.

[10] *See Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205; *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149; *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570; *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693; *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695; *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207; *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694; *Picard v. Barclays Bank (Suisse) S.A. et al.*, Adv. Pro. No. 11-02569; *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541; *Picard v. Parson Finance Panama*, Adv. Pro. No. 11-02542; *Picard v. Meritz Fire & Insurance*, Adv. Pro. No. 11-02539; *Picard v. Delta National. Bank*, Adv. Pro. No. 11-02551; *Picard v. Public Institution for Social Security*, Adv. Pro. No. 12-01002; *Picard v. Union Securities Investment*, Adv. Pro. No. 12-01211; *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572; *Picard. v. The Sumitomo Trust and Banking Co., Ltd.*, Adv. Pro. No. 11-02573; *Picard v. Bank Hapoalim*, Adv. Pro. No. 12-01216; *Picard v. Intesa Sanpaolo SPA, et al.*, Adv. Pro. No. 12-01680; *Picard v. Schroder & Co.*, Adv. Pro. No. 12-01210; *Picard v. Citibank, N.A., et al.*, Adv. Pro. No. 10-05345; *Picard v. Quilvest Finance Ltd.*, Adv. Pro. No. 11-02538; *Picard v. Barfield Nominees Limited*, Adv. Pro. No. 12-01669; *Picard v. Abu Dhabi Investment Authority*, Adv. Pro. No. 11-02493; *Picard v. Fullerton Capital PTE Ltd.*, Adv. Pro. No. 12-01004; *Picard v. Société General Private Banking (Suisse) S.A., et al.*, Adv. Pro. No. 12-01677; *Picard v. Cathay Life Insurance Co. Ltd.*, Adv. Pro. No. 11-02568; *Picard v. Credit Suisse AG, et al.*, Adv. Pro. No. 11-02925; *Picard v. Banco Itaú Europa Luxembourg S.A. et al.*, Adv. Pro. No. 12-01019; *Picard v. Credit Suisse AG*, Adv. Pro. No. 12-01676; *Picard v. Grosvenor Investment Management Limited et al.*, Adv. Pro. No. 12-01021; *Picard v. Atlantic Security Bank*, Adv. Pro. No. 11-02730; *Picard v. BSI AG*, Adv. Pro. No. 12-01209; *Picard v. Koch Industries Inc.*, Adv. Pro. No. 12-01047; *Picard v. Bank Vontobel AG et al.*, Adv. Pro. No. 12-01202; *Picard v. Six Sis AG.*, Adv. Pro. No. 12-01195; *Picard v. Nomura International PLC*, Adv. Pro. No. 10-05348; *Picard v. Naidot & Co*, Adv. Pro. No. 11-02733; *Picard v. Nomura International PLC*, Adv. Pro. No. 11-02759; *Picard v. KBC Investments Limited*, Adv. Pro. No. 11-02761; *Picard v. Merrill Lynch Bank (Suisse) SA*, Adv. Pro. No. 11-02910; *Picard v. EFG Bank SA, et al.*, Adv. Pro. No. 12-01690; and *Picard v. Platinum All Weather Fund*, Adv. Pro. No. 12-01697.

[11] *See Picard v. Citibank, N.A., et al.*, Adv. Pro. No. 10-05345; *Picard v. Koch Industries, Inc.*, Adv. Pro. No. 12-01047; *Picard v. Abu Dhabi Investment Authority*, Adv. Pro. No. 11-02493; and *Picard v. Standard Chartered Financial Services (Luxembourg) SA, et al.*, Adv. Pro. No. 12-01565.

234.    During the Compensation Period, the Trustee also prepared and/or filed amended complaints that seek to add or correct transfers that defendants received from the various feeder funds.  In addition, the Trustee moved dozens of adversary proceedings into active discovery upon the Bankruptcy Court's entry of Case Management Plans and Scheduling Orders.

### Q.    MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD.

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citrus Investment Holdings, Ltd. ("Citrus") seeking the return of approximately $17 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citrus (the "Citrus Action"). *Picard v. Citrus Investment Holdings, Ltd.*, Adv. No. 10-04471 (CGM) (Bankr. S.D.N.Y. November 30, 2010).

236.    On November 29, 2022, the pretrial conference in this matter was adjourned until June 21, 2023.

237.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued preparing and revising an amended complaint against Citrus.  This work included review and analysis of account documents, correspondence and documents produced by service providers to Citrus, research regarding Citrus's service provider entities, the revision of prior drafts, and the analysis of potential claims and anticipated defenses concerning the initial transfer to and subsequent transfers by Citrus.  B&H attorneys also continued to review and analyze recent motions to dismiss and related decisions concerning issues relevant to the claims against Citrus and continued to analyze the connections between claims in the Citrus Action and claims and parties in other actions.  B&H attorneys also continued to engage in discovery planning.

63

R.    **MATTER 65 – LEGACY**

238.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010) (the "Legacy Initial Transfer Action").

239.    As background, on November 12, 2019, the Bankruptcy Court entered a Stipulation and Order for Entry of Final Judgment ("Stipulated Order"), that included, among other things: (i) the Trustee's and Legacy's consent to the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's avoidance claim, and (ii) entry of the final order and judgment against Legacy in the amount of $79,125,781.00. The Stipulated Order further provided that "the Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and recoverable from Legacy under §550(a) of the Bankruptcy Code."

240.    On November 11, 2020, and within the time period set forth in §550(f) of the Bankruptcy Code, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer, Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA Holdings, LLC, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. (collectively, the "Subsequent Transfer Defendants"). The complaint sought recovery of approximately $49,505,850 in subsequent transfers of BLMIS customer property originally made to Montpellier and Prince by Legacy. *See Picard v. Mayer et al.,* Adv. No. 20-01316 (CGM) (the "Legacy Subsequent Transfer Action"). Among the claims were claims for vicarious liability including alter ego liability and piercing the corporate veil concerning the individual defendants.

241.    On August 30, 2021, the Second Circuit issued a decision concerning an appeal in *Picard v. Citibank, N.A. and Picard v. Legacy Capital, Ltd.*, holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith (the "Good Faith Decision").  The Good Faith Decision vacated Judge Rakoff's 2014 consolidated good faith decision holding that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith. The Good Faith Decision also vacated Judge Bernstein's 2016 motion to dismiss decision in the Trustee's action against Legacy applying Judge Rakoff's good faith decision, which had dismissed all claims in that action except for Count I to the extent it related to avoidance of fictitious profits. The Second Circuit remanded the Legacy Initial Transfer Action to the Bankruptcy Court for the proceedings to continue consistent with the appellate decision.

242.    On April 27, 2022, the Trustee filed a complaint seeking to recover from BNP Paribas - Dublin Branch ("BNP Paribas") pursuant to Section 550 of the Bankruptcy Code, initial transfers in the amount of $49.5 million made from BLMIS to BNP Paribas from Legacy's BLMIS account.  *See Picard v. BNP Paribas – Dublin Branch,* Adv. No. 2201087 (CGM) (the "BNP Paribas Recovery Action"). These transfers sought were avoided in the November 12, 2019 Final Judgment and Stipulated Order as fictitious profits transferred from BLMIS to, or for the benefit of Legacy.

243.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted discovery requests for all parties in connection with the Legacy Initial Transfer Action and the Legacy Subsequent Transfer Action.  On January 20, 2023, the Trustee served discovery requests upon Legacy and the Subsequent Transfer Defendants.  On March 31, 2023, Legacy and the

Subsequent Transfer Defendants provided their respective responses and objections to the Trustee's discovery requests. Additionally, B&H attorneys participated in initial meet and confers with Legacy's counsel in connection with document productions and the scope of discovery. B&H attorneys further evaluated deficiencies in Legacy's and the Subsequent Transfer Defendants' responses and objections to the Trustee's discovery requests.

244.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, began to prepare for noticed third-party depositions.  B&H attorneys further prepared a subpoena requesting documents in the possession of a third-party witness noticed for deposition by Legacy. It is anticipated that third-party depositions in the Legacy Initial Transfer and Legacy Subsequent Transfer actions will commence in June 2023.

245.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for mediation in the BNP Paribas Recovery Action.  The parties entered into a stipulation extending the time for BNP Paribas to file its responsive pleading *sine die*, while the parties continued to meet and confer on a potential early resolution.  The Trustee and BNP Paribas are continuing their efforts to explore mediation in this matter and selected Hon. Faith Hochberg (retired) as the mediator for this adversary proceeding. In the event mediation is unsuccessful, the Trustee will file a notice with the Bankruptcy Court to set a deadline for BNP Paribas's responsive pleading.

## S.    <u>MATTER 71 – SQUARE ONE</u>

246.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of

Square One. *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y.

Nov. 29, 2010).

247.   Prior to the Compensation Period, the Trustee filed and served the Amended

Complaint on December 21, 2018.  (ECF Nos. 167–69).  After Square One filed a motion to

dismiss on February 14, 2019 (ECF No. 170), the Court granted in part and denied in part the

motion to dismiss at a hearing on May 29, 2019.  On June 13, 2019, the Court entered an order

granting in part and denying in part Square One's motion to dismiss.  (ECF No. 177).  The Court

so-ordered a Case Management Plan on July 16, 2019 (ECF No. 178), which has since been

amended and the Second Amended Case Management Plan was so-ordered on May 16, 2022 (ECF

245).

248.   During the Compensation Period, the Trustee and Square One continued to engage

in fact discovery pursuant to the Court's Case Management Plan.

249.   On December 29, 2022, Judge Morris signed and ordered a Stipulation and Order

for Fourth Amended Case Management Plan submitted by counsel for the Trustee and counsel for

Square One (ECF No. 260).

250.   On January 25, 2023, the Trustee attended and took the deposition of Square One

Fund through its designated representative Mr. Richard Levin in New York, New York, in

accordance with the Trustee's Rule 30(b)(6) Subpoena.

251.   On March 31, 2023, Fact Discovery closed in accordance with the Fourth Amended

Case Management Plan.

252.   On March 31, 2023, the Trustee filed the Declaration of Marco Molina Requesting

Conference Pursuant to Local Bankruptcy Rule 7007-1 regarded the Trustee's contemplated

motion for sanctions under Rule 37(e).  (ECF No. 265).

67

253.    On April 2, 2023, Square One filed Square One's Response to Declaration of Marco Molina Requesting Conference Pursuant to Local Rule 7007-1, in opposition to the Trustee's Declaration.  (ECF No. 267).

254.    The Court set a conference date for May 17, 2023. (ECF No. 268). On May 17, 2023, Judge Morris held a conference regarding the Trustee's contemplated motion for sanctions under Rule 37(e) and ruled that this matter should be heard before discovery arbitrator, The Honorable Frank Maas.

**T.    MATTER 73 – BNP PARIBAS**

255.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (CGM) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (CGM) (Bankr. S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (CGM) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

256.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas Defendants' motion to dismiss claims to recover subsequent transfers that the BNP Paribas Defendants received from certain Tremont feeder funds, and on January 17, 2019, the BNP Paribas Defendants filed their answer to the Trustee's Amended Complaint.

257.    The parties then agreed to stay the proceedings until the United States Court of

Appeals for the Second Circuit decided the good faith appeal pending in the Trustee's actions

against Citibank, N.A. and Legacy Capital Ltd. *See* discussion *supra* Section IV(I) and (R).

258.    During the Compensation Period, following the Second Circuit's decision in *Picard*

*v. Citibank N.A. (In re Bernard L. Madoff Investment Securities LLC)*, 12 F.4th 171 (2d Cir. 2021),

B&H attorneys analyzed the filed complaints in the BNP Paribas Proceedings, investigated and

drafted potential amendments, and assessed potential motion practice and discovery.

### U.    <u>MATTER 77 – EXTRATERRITORIALITY</u>

259.    On July 6, 2014, the District Court held that certain of the Trustee's claims were

barred by principles of international comity and the presumption against extraterritoriality, stating

that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent

transfers received abroad by a foreign transferee from a foreign transferor," and directed further

proceedings related to the Trustee's claims be returned to the Bankruptcy Court. *Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

260.    On November 22, 2016, this Court issued a decision granting in part and denying

in part defendants' motion to dismiss on extraterritoriality.  *Sec. Inv'r Prot. Corp v. Bernard L.*

*Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

261.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court

and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality

nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling

the Trustee to recover property from certain subsequent transferees.  Accordingly, the Second

Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings.  *In*

*re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL

903978 (2d Cir. Feb. 25, 2019).  On April 8, 2019, defendants filed a motion to stay the issuance

of the mandate pending the filing of a petition for a writ of certiorari, (ECF No. 1413), which the

Second Circuit granted on April 23, 2019.  (ECF No. 1503).

262.    On August 30, 2019, defendant-petitioners filed a petition for a writ of certiorari in

the Supreme Court of the United States.  *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

On September 30, 2019, amicus briefs in support of petitioners were filed by the Cayman Islands

and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman

Finance and Recovery and Insolvency Specialists Association of the Cayman Islands; Recovery

and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial

Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

On October 30, 2019, the Trustee as respondent filed his brief in opposition to the defendants'

petition, and the petitioners filed their reply brief on November 14, 2019.

263.    On December 9, 2019, the Supreme Court of the United States invited the Solicitor

General to file a brief in this case expressing the views of the United States. On April 10, 2020,

the Solicitor General filed a brief recommending that the Court deny the petition.

264.    The petition was distributed on April 28, 2020 for consideration at the Court's May

14, 2020 conference.  On June 1, 2020, the Supreme Court denied defendants' petition.

## V.    **COMPENSATION REQUESTED**

265.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines")

and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration

of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

266.    The Trustee, and B&H, as counsel to the Trustee, expended 65,647.20 hours in the

rendition of professional and paraprofessional services during the Compensation Period, resulting

in an average hourly discounted rate of $539.42 for fees incurred.  The blended attorney rate is $622.01.

267.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.   In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,127,932.00 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $37,539.61.

268.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,934,599.73.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

269.    Pursuant to the Second Amended Compensation Order, on January 23, 2023, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from December 1, 2022 through December 31, 2022 (the "December Fee Statement").  The December Fee Statement reflected fees of $8,293,261.40 and expenses of $51,100.06.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the December Fee Statement reflected fees of $7,463,935.26 and expenses of $51,059.77. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,717,541.73 for services rendered and $51,059.77 for expenses incurred by the Trustee and B&H.

71

270.     Pursuant to the Second Amended Compensation Order, on February 21, 2023, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2023 through January 31, 2023 (the "January Fee Statement").   The January Fee Statement reflected fees of $10,114,435.50 and expenses of $45,390.80.   SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.   After such adjustments, the January Fee Statement reflected fees of $9,102,991.95 and expenses of $45,390.80.   After subtracting the Court-ordered 10% holdback, SIPC advanced $8,192,692.76 for services rendered and $45,390.80 for expenses incurred by the Trustee and B&H.

271.     Pursuant to the Second Amended Compensation Order, on March 20, 2023, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2023 through February 28, 2023 (the "February Fee Statement").   The February Fee Statement reflected fees of $9,838,615.80 and expenses of $59,017.62.   SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.   After such adjustments, the February Fee Statement reflected fees of $8,854,754.22 and expenses of $59,017.62.   After subtracting the Court-ordered 10% holdback, SIPC advanced $7,969,278.80 for services rendered and $59,017.62 for expenses incurred by the Trustee and B&H.

272.     Pursuant to the Second Amended Compensation Order, on April 19, 2023, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2023 through March 31, 2023 (the "March Fee Statement").   The March Fee Statement reflected fees of $11,099,684.60 and expenses of $19,267.27.   SIPC's staff requested certain adjustments and made

suggestions, which were adopted by the Trustee and B&H. After such adjustments, the March Fee Statement reflected fees of $9,989,716.14 and expenses of $19,267.27. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,990,744.53 for services rendered and $19,267.27 for expenses incurred by the Trustee and B&H.

273.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

274.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

275.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

276.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, as explained below in Section VI.

277.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

278.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    RELEASE OF THE HOLDBACK

279.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and payment of interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078, 4125). Pursuant to the Compensation Order, payment of a percentage of the approved compensation – initially twenty percent (20%), subsequently reduced to fifteen percent (15%), and thereafter reduced to ten percent (10%) – is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

280.    For this and prior Compensation Periods, the amount of the Holdback for B&H's fees is $21,044,803.01, which includes $3,541,139.75 held back in connection with this Application. The Trustee and B&H seek a release of the Holdback in the amount of $10,522,401.50, upon the consent and approval of SIPC.

281.    SIPC has advised that it will file a recommendation in support of the fees and expenses requested in this Application and the release of the Holdback in the amount of $10,522,401.50 for the Applicants.

## VII.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

282.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no difference
> between the amounts requested and the amounts recommended by SIPC, the court shall
> award the amounts recommended by SIPC.  In determining the amount of allowances in
> all other cases, the court shall give due consideration to the nature, extent, and value of the
> services rendered, and shall place considerable reliance on the recommendation of SIPC.
> SIPA § 78eee(b)(5)(C).

283.    To the extent the general estate is insufficient to pay such allowances as an expense

of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay

the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

284.    While the Trustee has recovered, or entered into agreements to recover, nearly

$14.578 billion as of May 31, 2023, a significant portion of these funds must be held in reserve

pending final resolution of several appeals and disputes.

285.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief.

Any fees and expenses allowed by this Court will be paid from advances by SIPC without any

reasonable expectation by SIPC of recoupment thereof.

286.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the

Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC

will file its recommendation to the Court with respect to this Application prior to the hearing

scheduled to be held on August 16, 2023.

287.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VIII.    **CONCLUSION**

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $35,411,397.57 (of which $31,870,257.82 is to be paid currently and $3,541,139.75 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $174,735.46 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; (ii) releasing $10,522,401.50 to the Trustee and B&H from the Holdback; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June 28, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ David J. Sheehan*
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, New York 10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      Irving H. Picard
      Email: ipicard@bakerlaw.com
      David J. Sheehan
      Email: dsheehan@bakerlaw.com
      Seanna R. Brown
      Email: sbrown@bakerlaw.com
      Heather R. Wlodek
      Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

77