**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 11-02761 (CGM) |
| Plaintiff, | |
| v. | |
| KBC INVESTMENTS LIMITED, | |
| Defendant. | |

## KBC INVESTMENTS LIMITED'S ANSWER
## WITH AFFIRMATIVE AND OTHER DEFENSES AND JURY DEMAND

SIDLEY AUSTIN LLP
John J. Kuster
Martin B. Jackson
Andrew P. Propps
Danica L. Brown
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for Defendant*
*KBC Investments Limited*

Defendant KBC Investments Limited ("KBC Investments") responds to the Amended Complaint of Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff, as follows:

## GENERAL DENIAL

Except as expressly admitted herein, KBC Investments denies each and every allegation in the Amended Complaint. KBC Investments states that the headings and sub-headings throughout the Amended Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, the allegations of the headings and subheadings in the Amended Complaint are denied. In answering the Amended Complaint's allegations, KBC Investments does not intend to waive, and does not waive, any and all applicable objections to the relevance, admissibility, or prejudicial effect of any allegation. To the extent it is later determined that a response is required to any allegation, KBC Investments denies any such allegation KBC Investments expressly reserves the right to amend and/or supplement the Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

## I.    NATURE OF THE PROCEEDING

1.    This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS customer property, as defined by SIPA § 78*lll*(4), that was stolen as part of the massive Ponzi scheme perpetrated by Madoff and others.

**ANSWER:**    KBC Investments denies the allegations in paragraph 1 of the Amended Complaint, except admits that the Trustee purports to bring this adversary proceeding as part of the Trustee's efforts to recover BLMIS customer property that within the meaning of 15 U.S.C. § 78*lll*(4) in connection with an alleged Ponzi scheme perpetrated by Madoff.

2.      The Trustee seeks to recover at least $86,000,000 in subsequent transfers of BLMIS customer property made to KBC Investments. The BLMIS customer property was transferred from BLMIS to Harley International (Cayman) Limited ("Harley")—a BLMIS feeder fund ("Feeder Fund") that invested all or substantially all of its assets in BLMIS—and subsequently transferred to KBC Investments.

**ANSWER:**    KBC Investments denies the allegations in paragraph 2 of the Amended Complaint that it received subsequent transfers of customer property from BLMIS or Harley, denies having sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 2 of the Amended Complaint and on that basis denies the remaining allegations in paragraph 2 of the Amended Complaint, except admits, upon information and belief, that Harley was an investment vehicle.

3.      KBC Investments is a private limited company with its registered office in the United Kingdom.  KBC Investments is an indirect subsidiary of its ultimate parent KBC Group NV ("KBC Group") and was used by KBC Group and its affiliates—all sophisticated bankers and investment managers—as an offshore investment vehicle to invest with BLMIS through the Harley Feeder Fund.

**ANSWER:**    KBC Investments denies the allegations in paragraph 3 of the Amended Complaint, except admits that it is a private limited company under the laws of the United Kingdom with its registered office in the United Kingdom, and is a direct subsidiary of KBC Bank N.V., which is a direct subsidiary of KBC Group N.V.

4.      In 2009, the Trustee filed an adversary proceeding against Harley in this Court, in which the Trustee sought to avoid and recover initial transfers of customer property from BLMIS to Harley.  On November 10, 2010, on a motion for summary default judgment, the Court entered judgment against Harley avoiding the initial two-year transfers in the amount of $1,066,800,000 under 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code.  The Trustee has not recovered any of the initial transfers, or their value, avoided by the judgment against Harley.

**ANSWER:**    KBC Investments denies knowledge or information to form a belief as to the truth of the allegations in paragraph 4 of the Amended Complaint, and on that basis denies the allegations in paragraph 4 of the Amended Complaint, and respectfully refers the Court to the

docket of the adversary proceeding the Trustee filed against Harley in this Court and the November 10, 2010 judgment for their complete contents.

5.      The Trustee's current action seeks the recovery of at least $86,000,000 in subsequent transfers of BLMIS customer property that the Defendant received from Harley.

**ANSWER:**   KBC Investments denies the allegations in paragraph 4 of the Amended Complaint, except admits that the Trustee seeks to recover at least $86 million in subsequent transfers per the Amended Complaint filed in this action on August 5, 2022.

## II.    SUBJECT MATTER JURISDICTION AND VENUE

6.      This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al., No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

**ANSWER:**   KBC Investments denies that this Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. § 78eee(b)(4).  The remaining allegations in paragraph 6 of the Amended Complaint contain legal conclusions to which no response is required. To the extent a response is deemed to be required, KBC Investments denies the remaining allegations in paragraph 6 of the Amended Complaint.

7.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

**ANSWER:**   Paragraph 7 of the Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is deemed to be required, KBC Investments denies the allegations in paragraph 7 of the Amended Complaint, states that it does not consent to the issuance of entry of final orders or judgments by the Bankruptcy Court and demands trial by jury in the District Court of all issues that may be tried by a jury.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1409.

**ANSWER:**      Paragraph 8 of the Amended Complaint contains legal conclusions to which no response is required.   To the extent a response is required, KBC Investments denies the allegations in paragraph 8 of the Amended Complaint.

9.      This adversary proceeding is brought under SIPA §§ 78fff(b) and 78fff-2(c)(3), 11 U.S.C. §§ 105(a) and 550, and other applicable law.

**ANSWER:**      Paragraph 9 of the Amended Complaint contains legal conclusions to which no response is required.   To the extent a response is required, KBC Investments denies the allegations in paragraph 9 of the Amended Complaint.

## III.    BACKGROUND, THE TRUSTEE AND STANDING

10.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

**ANSWER:**      KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 of the Amended Complaint and on that basis denies the allegations in paragraph 10 of the Amended Complaint, except admits that it was publicly reported Madoff was arrested on or about December 11, 2008, and that the SEC filed a complaint against Madoff and BLMIS.

11.      On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

**ANSWER:**      KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Amended Complaint and on that basis denies the allegations in paragraph 11 of the Amended Complaint, and respectfully refers

to the application filed by SIPC, to which reference is made in paragraph 11 of the Amended Complaint, for its complete contents.

12.      Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

(a)      appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

(b)      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

(c)      removed the case to this Court pursuant to SIPA § 78eee(b)(4).

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Amended Complaint and on that basis denies the allegations in paragraph 12 of the Amended Complaint, and respectfully refers to the District Court's Order dated December 15, 2008, for its complete contents.

13.      By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Amended Complaint and on that basis denies the allegations in paragraph 13 of the Amended Complaint, and respectfully refers this Court to its Orders dated December 23, 2008 and February 4, 2009, respectively, for their complete contents.

14.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of the Amended Complaint and on that basis denies the allegations in paragraph 14 of the Amended Complaint, and respectfully refers this Court to the petition filed on April 13, 2009 against Madoff and the June 9, 2009 consolidation order for their complete contents.

15.    At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to the truth of the allegations in paragraph 15 of the Amended Complaint and on

that basis denies the allegations in paragraph 15 of the Amended Complaint, and respectfully refers

the Court to the transcript of the March 12, 2009 plea hearing for its complete contents.

16.    At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to the truth of the allegations in paragraph 16 of the Amended Complaint and on

that basis denies the allegations in paragraph 16 of the Amended Complaint, except KBC

Investments respectfully refers this Court to the public record as to any matters of public record.

17.    At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to the truth of the allegations in paragraph 17 of the Amended Complaint and on

that basis denies the allegations in paragraph 17 of the Amended Complaint, except KBC

Investments respectfully refers this Court to the public record as to any matters of public record.

18.    On March 24, 2014, Daniel Bonventre, Annette Bongiorno, JoAnn Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Amended Complaint and on that basis denies the allegations in paragraph 18 of the Amended Complaint.

19.    As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

**ANSWER:** The first sentence of paragraph 19 of the Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, KBC Investments denies the allegations in the first sentence of paragraph 19 of the Amended Complaint. KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 19 of the Amended Complaint and on that basis denies the remaining allegations in paragraph 19 of the Amended Complaint.

20.    Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

**ANSWER:** Paragraph 20 of the Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is deemed to be required, KBC Investments denies the allegations in paragraph 20 of the Amended Complaint.

21.    The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 544, 547, 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

**ANSWER:**   Paragraph 21 of the Amended Complaint contains legal conclusions to which no response is required.   To the extent a response is deemed to be required, KBC Investments denies the allegations in paragraph 21 of the Amended Complaint.

## IV.   BLMIS, THE PONZI SCHEME, AND MADOFF'S INVESTMENT STRATEGY

### A.   BLMIS

22.   Madoff founded BLMIS in 1960 as a sole proprietorship and registered it as a broker dealer with the United States Securities and Exchange Commission.  In 2001, Madoff changed the corporate form of BLMIS from a sole proprietorship to a New York limited liability company.  At all relevant times, Madoff controlled BLMIS first as its sole member and thereafter as its chairman and chief executive.

**ANSWER:**   KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22 of the Amended Complaint and on that basis denies the allegations in paragraph 22 of the Amended Complaint.

23.   In compliance with 15 U.S.C. § 78o(b)(1) and SEC Rule 15b1-3, and regardless of its business form, BLMIS operated as a broker-dealer from 1960 through 2008.  Public records obtained from the Central Registration Depository of the Financial Industry Regulatory Authority Inc. reflect BLMIS's continuous registration as a securities broker-dealer during its operation.  At all times, BLMIS was assigned CRD No. 2625.  SIPC's Membership Management System database also reflects BLMIS's registration with the SEC as a securities broker-dealer beginning on January 19, 1960.  On December 30, 1970, BLMIS became a member of SIPC when SIPC was created and continued its membership after 2001 without any change in status.  SIPC membership is contingent on registration of the broker-dealer with the SEC.

**ANSWER:**   The first sentence of paragraph 23 of the Amended Complaint contains legal conclusions to which no response is required.   To the extent a response is required, KBC Investments denies the allegations in the first sentence of paragraph 23 of the Amended Complaint. KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 23 of the Amended Complaint and on that basis denies the remaining allegations in paragraph 23 of the Amended Complaint.

24.   For most of its existence, BLMIS's principal place of business was 885 Third Avenue in New York City, where Madoff operated three principal business units: a proprietary trading desk, a broker dealer operation, and an investment advisory business (the "IA Business").

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Amended Complaint and on that basis denies the allegations in paragraph 24 of the Amended Complaint.

25.    BLMIS's website publicly boasted about the sophistication and success of its proprietary trading desk and broker-dealer operations, which were well known in the financial industry. BLMIS's website omitted the IA Business entirely. BLMIS did not register as an investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Amended Complaint and on that basis denies the allegations in paragraph 25 of the Amended Complaint.

26.    For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its IA Business.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 of the Amended Complaint and on that basis denies the allegations in paragraph 26 of the Amended Complaint.

27.    In 2006, BLMIS filed its first Form ADV (Uniform Application for Investment Adviser Registration) with the SEC, reporting that BLMIS had 23 customer accounts with total assets under management ("AUM") of $11.7 billion. BLMIS filed its last Form ADV in January 2008, reporting that its IA Business still had only 23 customer accounts with total AUM of $17.1 billion. In reality, Madoff grossly understated these numbers. In December 2008, BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion in AUM. At all times, BLMIS's Form ADVs were publicly available.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the Amended Complaint and on that basis denies the allegations in paragraph 27 of the Amended Complaint.

**B.    The Ponzi Scheme**

28.    At all relevant times, Madoff operated the IA Business as a Ponzi scheme using money deposited by customers that BLMIS claimed to invest in securities. The IA Business had no legitimate business operations and produced no profits or earnings. Madoff was assisted by

several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Amended Complaint and on that basis denies the allegations in paragraph 28 of the Amended Complaint.

29.    BLMIS's proprietary trading desk was also engaged in pervasive fraudulent activity. It was funded, in part, by money taken from the BLMIS customer deposits, but fraudulently reported that funding as trading revenues and/or commissions on BLMIS's financial statements and other regulatory reports filed by BLMIS. The proprietary trading business was incurring significant net losses beginning in at least mid-2002 and thereafter, and thus required fraudulent infusions of cash from the IA Business to continue operating.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Amended Complaint and on that basis denies the allegations in paragraph 29 of the Amended Complaint.

30.    To provide cover for BLMIS's fraudulent IA Business, BLMIS employed Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz") as its auditor, which accepted BLMIS's fraudulently reported trading revenues and/or commissions on its financial statements and other regulatory reports that BLMIS filed. Friehling & Horowitz was a three-person accounting firm based out of a strip mall in Rockland County, New York. Of the three employees at the firm, one was a licensed CPA, one was an administrative assistant, and one was a semi-retired accountant living in Florida.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint and on that basis denies the allegations in paragraph 30 of the Amended Complaint.

31.    On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others. BLMIS's publicly available SEC Form X-17A-5 included copies of these fictitious annual audited financial statements prepared by Friehling & Horowitz.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31 of the Amended Complaint and on that basis denies the allegations in paragraph 31 of the Amended Complaint.

Madoff's Investment Strategy

32.    In general, BLMIS purported to execute two primary investment strategies for BLMIS customers: the convertible arbitrage strategy and the split strike conversion strategy ("SSC Strategy"). For a limited group of BLMIS customers, primarily consisting of Madoff's close friends and their families, Madoff also purportedly purchased securities that were held for a certain time and then purportedly sold for a profit. At all relevant times, Madoff conducted no legitimate business operations using any of these strategies.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32 of the Amended Complaint, except admits that BLMIS purported to execute the split strike conversion strategy ("SSC Strategy").

33.    All funds received from BLMIS customers were commingled in a single BLMIS account maintained at JPMorgan Chase Bank. These commingled funds were not used to trade securities, but rather to make distributions to, or payments for, other customers, to benefit Madoff and his family personally, and to prop up Madoff's proprietary trading business.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 of the Amended Complaint and on that basis denies the allegations in paragraph 33 of the Amended Complaint.

34.    The convertible arbitrage investment strategy was supposed to generate profits by taking advantage of the pricing mismatches that can occur between the equity and bond/preferred equity markets. Investors were told they would gain profits from a change in the expectations for the stock or convertible security over time. In the 1970s this strategy represented a significant portion of the total BLMIS accounts, but by the early 1990s the strategy was purportedly used in only a small percentage of BLMIS accounts.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 of the Amended Complaint and on that basis denies the allegations in paragraph 34 of the Amended Complaint.

35.    From the early 1990s forward, Madoff began telling BLMIS customers that he employed the SSC Strategy for their accounts, even though in reality BLMIS never traded any securities for its BLMIS customers.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 35 of the Amended Complaint and on that basis denies the allegations in paragraph 35 of the Amended Complaint.

36.    BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments.

**ANSWER:**    KBC Investments denies the allegations in paragraph 36 of the Amended Complaint, and further denies having sufficient knowledge or information to form a belief as to the truth that BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers.

37.    By 1992, the SSC Strategy purported to involve: (i) the purchase of a group or basket of equities intended to highly correlate to the S&P 100 Index; (ii) the purchase of out-of-the-money S&P 100 Index put options; and (iii) the sale of out-of-the-money S&P 100 Index call options.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 37 of the Amended Complaint and on that basis denies the allegations in paragraph 37 of the Amended Complaint.

38.    The put options were to limit the downside risk of sizeable price changes in the basket.  The exercise of put options could not turn losses into gains, but rather could only put a floor on losses.  By definition, the exercise of a put option should have entailed a loss for BLMIS.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 38 of the Amended Complaint and on that basis denies the allegations in paragraph 38 of the Amended Complaint.

39.    The sale of call options would partially offset the costs associated with acquiring puts but would have the detrimental effect of putting a ceiling on gains.  The call options would make it difficult, if not impossible, for BLMIS to perform as well as the market, let alone outperform the market, because in a rising market, calls would have been expected to be exercised by the counterparty.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39 of the Amended Complaint and on that basis denies the allegations in paragraph 39 of the Amended Complaint.

40.    The simultaneous purchase of puts and sale of calls to hedge a securities position is commonly referred to as a "collar." The collar provides downside protection while limiting the upside.

**ANSWER:**    KBC Investments admits the allegations in paragraph 40 of the Amended Complaint.

41.    If Madoff was putting on the same baskets of equities across *all* BLMIS accounts, as he claimed, the total notional value of the puts purchased and of the calls sold had to equal the market value of the equities in the basket. For example, to properly implement a collar to hedge the $11.7 billion of AUM that Madoff publicly reported in 2006 would have required the purchase/sale of call and put options with a notional value (for each) of $11.7 billion. There are no records to substantiate Madoff's sale of call options or purchase of put options in any amount, much less in billions of notional dollars.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 41 of the Amended Complaint and on that basis denies the allegations in paragraph 41 of the Amended Complaint.

42.    Moreover, at all times that BLMIS reported its total AUM, publicly available information about the volume of exchange-traded options showed that there was simply not enough call option notional value to support the Madoff SSC Strategy.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42 of the Amended Complaint and on that basis denies the allegations in paragraph 42 of the Amended Complaint.

43.    Madoff could not be using the SSC Strategy because his returns drastically outperformed the market. BLMIS showed only 16 months of negative returns over the course of its existence compared to 82 months of negative returns in the S&P 100 Index over the same time period. Not only did BLMIS post gains that exceeded (at times, significantly) the S&P 100 Index's performance, it would also regularly show gains when the S&P 100 Index was down (at times significantly). Such results were impossible if BLMIS had actually been implementing the SSC Strategy.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 43 of the Amended Complaint and on that basis denies the allegations in paragraph 43 of the Amended Complaint.

### BLMIS's Fee Structure

44.    BLMIS charged commissions on purportedly executed trades rather than industry-standard management and performance fees based on AUM or profits. By using a commission-based structure instead, Madoff inexplicably walked away from hundreds of millions of dollars in fees.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 44 of the Amended Complaint and on that basis denies the allegations in paragraph 44 of the Amended Complaint.

### BLMIS's Market Timing

45.    Madoff also lied to customers when he told them that he carefully timed securities purchases and sales to maximize value.  Madoff explained that he succeeded at market timing by intermittently entering and exiting the market.  During the times when Madoff purported to be out of the market, he purported to invest BLMIS customer funds in Treasury Bills or mutual funds invested in Treasury Bills.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 of the Amended Complaint and on that basis denies the allegations in paragraph 45 of the Amended Complaint.

46.    As a registered broker-dealer, BLMIS was required, pursuant to section 240.17a-5 of the Securities Exchange Act of 1934, to file quarterly and annual reports with the SEC that showed, among other things, financial information on customer activity, cash on hand, and assets and liabilities at the time of reporting.  BLMIS's reported quarterly and year-end exits were undertaken to avoid these SEC requirements.  But these exits also meant that BLMIS was stuck with the then-prevailing market conditions.  It would be impossible to automatically sell all positions at fixed times, independent of market conditions, and win almost every time.

**ANSWER:**    The first sentence of paragraph 46 of the Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, KBC Investments denies the allegations in the first sentence of paragraph 46 of the Amended Complaint.

KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 46 of the Amended Complaint and on that basis denies the remaining allegations in paragraph 46 of the Amended Complaint.

47.     BLMIS's practice of exiting the market at fixed times, regardless of market conditions, was completely at odds with the opportunistic nature of the SSC Strategy, which does not depend on exiting the market in a particular month.

**ANSWER:**     KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 47 of the Amended Complaint and on that basis denies the allegations in paragraph 47 of the Amended Complaint.

<u>BLMIS Execution</u>

48.     BLMIS's execution showed a consistent ability to buy low and sell high, an ability so uncanny that any sophisticated or professional investor would know it was statistically impossible.

**ANSWER:**     KBC Investments denies the allegations in paragraph 48 of the Amended Complaint.

<u>No Evidence of BLMIS Trading</u>

49.     There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC Strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities.  There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC Strategy.

**ANSWER:**     KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 49 of the Amended Complaint and on that basis denies the allegations in paragraph 49 of the Amended Complaint.

50.     All exchange-listed options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").  The OCC has no records showing that BLMIS cleared any trades in any exchange-listed options.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 50 of the Amended Complaint and on that basis denies the allegations in paragraph 50 of the Amended Complaint.

<u>The Collapse of the Ponzi Scheme</u>

51.    The Ponzi scheme collapsed in December 2008, when BLMIS customers' requests for redemptions overwhelmed the flow of new investments.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 51 of the Amended Complaint and on that basis denies the allegations in paragraph 51 of the Amended Complaint.

52.    At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the BLMIS customers' fraudulent statements, and that BLMIS through its IA Business operated as a Ponzi scheme.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 52 of the Amended Complaint and on that basis denies the allegations in paragraph 52 of the Amended Complaint, and respectfully refers this Court to the public record of such plea hearings that are the subject of the allegations in paragraph 52 of the Amended Complaint.

53.    At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

**ANSWER:**    Paragraph 53 of the Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is deemed to be required, KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 53 of the Amended Complaint and on that basis denies the allegations in paragraph 53 of the Amended Complaint.

## V.    DEFENDANT AND RELEVANT NON-PARTIES

54.    Defendant KBC Investments is a private limited company with its registered office in the United Kingdom.  KBC Investments is a subsidiary of its ultimate parent KBC Group.

**ANSWER:**    KBC Investments denies the allegations in paragraph 54  of the Amended Complaint, except admits that it is a private limited company with its registered office in the United Kingdom and is a subsidiary of KBC Bank N.V.

55.    Non-party KBC Financial Products USA Inc. ("KBC USA") was at all relevant times an indirect subsidiary of KBC Group and an affiliate of KBC Investments.  KBC USA maintained its headquarters in New York, New York.  As discussed below, KBC USA worked closely with KBC Investments and assisted in managing its investments in Harley and other Feeder Funds in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 55 of the Amended Complaint, except admits that KBC Financial Products USA Inc. ("KBC USA") was an indirect subsidiary of KBC Bank, N.V. and maintained its headquarters in New York, New York.

56.    Non-party KBC Asset Management Ltd. ("KBCAM") was at all relevant times a corporate affiliate of KBC Investments.  Although KBCAM's registered office was located in Ireland, KBC touted its presence in a number of countries, including the United States.  Like KBC USA, KBCAM worked closely with KBC Investments and assisted in managing its investments in Feeder Funds in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 56 of the Amended Complaint, except admits that KBC Asset Management Ltd.'s ("KBC AM") registered office was located in Ireland and was an indirect subsidiary of KBC Bank N.V.

57.    Non-party Harley was a Cayman Islands company that maintained a customer account at BLMIS and was also one of BLMIS's largest feeder funds and sources of investor principal.  Harley invested all or substantially all of its assets with BLMIS in New York.

**ANSWER:**    KBC Investments having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 57 of the Amended Complaint and on that basis denies the allegations in paragraph 57 of the Amended Complaint, except admits that Harley was

a Cayman Islands company that maintained a customer account at BLMIS and invested assets with

BLMIS.

58.    Harley did not conduct any meaningful business in the Cayman Islands.  In its
Memorandum of Association, Harley represented that, under the Cayman Islands Companies Law:
"The Company will not trade in the Cayman Islands with any person, firm or corporation except
in furtherance of the business of the Company carried on outside the Cayman Islands."  As such,
Harley was registered as an exempt company under Cayman Islands law and was not permitted to
solicit investors in the Cayman Islands.

**ANSWER:**    The last sentence of paragraph 58 of the Amended Complaint contains legal

conclusions to which no response is required.  To the extent a response is deemed to be required,

KBC Investments denies having sufficient knowledge or information to form a belief as to the

truth of the last sentence of Paragraph 58 and respectfully refers the Court to Harley's

Memorandum of Association for its complete contents.  Further, KBC Investments denies having

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in

paragraph 58 of the Amended Complaint and on that basis denies the allegations in paragraph 58

of the Amended Complaint, and respectfully refers the Court to Harley's Memorandum of

Association for its complete contents.

59.    Harley had no employees or offices of its own.  Harley acted primarily through Fix
Asset Management Services, Inc. ("FAM"), an institutional fund of funds manager with a principal
place of business in New York and incorporated under New York law.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to the truth of the allegations in paragraph 59 of the Amended Complaint and on

that basis denies the allegations in paragraph 59 of the Amended Complaint.

## VI.    PERSONAL JURISDICTION

60.    KBC Investments is subject to personal jurisdiction in this judicial district because
it purposely availed itself of the laws and protections of the United States and the state of New
York by, among other things, knowingly directing funds to be invested with New York-based
BLMIS through Harley and other Feeder Funds.

**ANSWER:**    KBC Investments denies the allegations in paragraph 60 of the Amended Complaint.

61.    KBC Investments knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS. By directing its funds to and from New York-based BLMIS through Harley, KBC Investments knowingly accepted the rights, benefits, and privileges of conducting business and transactions in the United States and New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 61 of the Amended Complaint.

62.    KBC Investments knew the following facts about its investments with Harley:
   a.    The investment adviser for Harley was BLMIS in New York.
   b.    BLMIS in New York was the executing broker for Harley's investments, and BLMIS in New York purportedly operated and executed the SSC Strategy on behalf of Harley.
   c.    Madoff's SSC Strategy purportedly involved the purchase and sale of U.S. equities, U.S. options, and Treasury Bills, and the decisions regarding which U.S. equities to purportedly purchase were made by Madoff in New York.
   d.    Harley reported in its audited financial statements that 99.99% of its assets were in the custody of BLMIS in New York.
   e.    The investments were in U.S. dollars and purportedly invested either directly or indirectly in equity securities and equity index related options.
   f.    The entire economic purpose of Harley was to deliver money to BLMIS in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 62 of the Amended Complaint and states that KBC Investments did not have any of its own investments with Harley.

63.    In order to invest in Harley, investors were required to execute Harley subscription agreements. By executing the subscription agreements, Harley's investors affirmed having received and carefully read the terms set forth in the Harley Confidential Explanatory Memorandum (the "Harley PPM"). As set forth in the Harley PPM, Harley shareholders, like KBC Investments, agreed that their investments in Harley would be governed by the fund's articles of association ("Harley Articles of Association"). The Harley Articles of Association, in turn, provided that all disputes among Harley and its shareholders were subject to binding arbitration in New York pursuant to the rules established by the American Arbitration Association.

**ANSWER:**    KBC Investments denies the allegation that KBC Investment was a Harley shareholder or executed a Harley subscription agreement, denies having sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 63 of the

Amended Complaint and on that basis denies the remaining allegations in paragraph 63 of the

Amended Complaint, and respectfully refers the Court to Harley's Confidential Explanatory

Memorandum and Articles of Association for their complete contents.

64.    Harley subscription documents also stated that all money from KBC Investments be directed to New York correspondent bank accounts at JP Morgan Chase, New York ("JP Morgan") or the Northern Trust Banking Corporation ("Northern Trust") for ultimate deposit in Harley's bank account.  From Harley's bank account, the funds were deposited in BLMIS's account at JP Morgan in New York.  When Harley redeemed funds from its BLMIS account, BLMIS paid redemptions to its Northern Trust bank account in New York.

**ANSWER:**    KBC Investments denies the allegation in paragraph 64 of the Amended

Complaint to the extent it alleges KBC Investments provided any of its own money to a Harley or

its correspondent bank accounts at JP Morgan or Northern Trust, and further denies having

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in

paragraph 64 of the Amended Complaint and on that basis denies the remaining allegations in

paragraph 64 of the Amended Complaint, and respectfully refers the Court to Harley's subscription

documents for their complete contents.

65.    When redeeming from Harley, KBC Investments used its custodian's HSBC Bank USA account in New York to receive transfers from Harley.  Harley redemption confirmations indicate that KBC Investments directed all of its Harley redemption payments—totaling three payments over a four month period—to this HSBC Bank USA account in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 65 of the Amended

Complaint.

66.    As set forth in the Harley PPM, shareholders like KBC Investments also received copies of the fund's annual audited financial statements.  Harley's 2004-2007 audited financial statements explained that BLMIS acted as Harley's custodian, holding virtually all of Harley's assets in New York, and that Harley used a strategy that purportedly required trading "in a basket of U.S. equity securities commonly listed on the S&P 100 Index, equity index related options and U.S. Treasury Bills."

**ANSWER:**    KBC Investments denies the allegations in paragraph 66 of the Amended

Complaint alleging that KBC investment was a Harley shareholder,  denies having sufficient

knowledge or information to form a belief as to the truth of the remaining allegations in paragraph

66 of the Amended Complaint and on that basis denies the remaining allegations in paragraph 66

of the Amended Complaint, and respectfully refers the Court to Harley's Confidential Explanatory

Memorandum and audited financial statements for their complete contents.

67.    As noted above, KBC Investments also worked closely with its U.S. affiliates with respect to its Feeder Fund Investments.  In particular, KBC USA and KBCAM worked with KBC Investments and assisted in managing its investments Feeder Fund investments in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 67 of the Amended

Complaint.

68.    Employees of KBC USA and KBCAM frequently communicated and attended meetings with Feeder Fund personnel in New York on behalf and for the benefit of KBC Investments.  KBC USA and KBCAM shared information learned about Harley, other Feeder Funds, Madoff, and BLMIS with KBC Investments.

**ANSWER:**    KBC Investments denies the allegations in paragraph 68 of the Amended

Complaint, except admits that KBC Investments and KBC USA on isolated occasions shared

limited information about certain investments with each other.

69.    In addition to Harley, KBC Investments maintained investments in other BLMIS Feeder Funds, including:
   a.    Fairfield Sentry Fund Limited ("Fairfield Sentry"), which was operated and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership based in New York;
   b.    Rye Select Broad Market Portfolio Limited and Rye Select Broad Market XL Portfolio Limited, which were managed by New York-based Tremont Partners, Inc. ("Tremont"), a Delaware corporation; and
   c.    Kingate Global Fund Limited, which was operated and controlled by service providers with substantial connections to the United States— Kingate Management Limited and Tremont (Bermuda) Limited.  Tremont (Bermuda) Limited, in turn, delegated management responsibilities to Tremont in New York.

**ANSWER:**    KBC Investments denies the allegations in paragraph 69 of the Amended

Complaint.

70.    KBC Group also filed quarterly 13-F reports with the SEC on behalf of KBC Investments beginning in 2008, acknowledging holdings of many U.S. stocks on the New York

stock exchange. KBC Investments also maintained a Depository Trust Company Participation Account through the Bank of New York.

**ANSWER:** KBC Investments admits the allegations in paragraph 70 of the Amended Complaint that the KBC Group filed quarterly 13-F reports with the SEC, respectfully refers the Court to KBC Group's quarterly 13-F reports for their true and accurate content, and states that KBC Investments' Depository Trust Company Participation Account, to its knowledge, was never used in connection with Harley or BLMIS.

71.     KBC Investments thus derived significant revenue from New York and maintained minimum contacts and general business contacts with the United States and New York in connection with the claims alleged herein.

**ANSWER:** KBC Investments denies the allegations that it "thus derived significant revenue from New York." The remaining allegations in paragraph 71 of the Amended Complaint contain legal conclusions to which no response is required. To the extent a response is deemed to be required, KBC Investments denies the remaining allegations in paragraph 71 of the Amended Complaint.

72.     KBC Investments should therefore reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to NYCPLR § 302 and Federal Rule of Bankruptcy Procedure 7004.

**ANSWER:** Paragraph 72 of the Amended Complaint contains legal conclusions to which no response is required. To the extent a response is deemed to be required, KBC Investments denies the allegations in paragraph 72 of the Amended Complaint.

## VII.    RECOVERY OF SUBSEQUENT TRANSFERS TO KBC INVESTMENTS

### A.    Initial Transfers from BLMIS to Harley

73.     The Trustee commenced a separate adversary proceeding against Harley in this Court under the caption, *Picard v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-01187, seeking to avoid and recover initial transfers of customer property from BLMIS to Harley in the approximate amount of $1,072,800,000 (the "Harley Initial Transfers").

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 73 of the Amended Complaint and on that basis denies the allegations in paragraph 73 of the Amended Complaint, except admits that the Trustee filed an action in the Bankruptcy Court under the caption *Picard v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-01187 and respectfully refers the Court to the docket of Adv. Pro. No. 09-01187 for its complete contents.

74.    On July 8, 2009, the Clerk of the Bankruptcy Court made an entry of default against Harley.  On November 10, 2010, the Bankruptcy Court entered summary judgment against Harley in the amount of $1,066,800,000, and a default judgment against Harley in the amount of $6,020,000, for a total judgment against Harley in the amount of $1,072,820,000, from which no appeal was taken ("November 10, 2010 Judgment"). The Trustee has not yet recovered any monies as a result of the November 10, 2010 Judgment.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 74 of the Amended Complaint and on that basis denies the allegations in paragraph 74 of the Amended Complaint, except admits that the Bankruptcy Court entered a summary judgment and default judgment against Harley and respectfully refers the Court to the July 8, 2009 and November 10, 2010 orders referenced in paragraph 74 of the Amended Complaint for their complete contents.

75.    Of the Harley Initial Transfers, approximately $1,066,800,000 was transferred to Harley during the two years preceding the Filing Date (the "Harley Two Year Transfers").  Each of the Harley Two Year Transfers is avoidable under section 548 of the Bankruptcy Code, and applicable provisions of SIPA, particularly § 78fff-2(c)(3).

**ANSWER:** KBC Investments denies having sufficient knowledge or information to form a belief as to the amount of the transfers alleged in paragraph 75 of the Amended Complaint and on that basis denies the allegations that "approximately $1,066,800,000 was transferred to Harley during the two years preceding the Filing Date" in paragraph 75 of the Amended Complaint.  The remaining allegations in paragraph 75 of the Amended Complaint contain legal conclusions to

which no response is required.   To the extent a response is deemed to be required, KBC

Investments denies the remaining allegations in paragraph 75 of the Amended Complaint.

76.     Charts setting forth the Harley Initial Transfers by date and amount are attached as
Exhibits A and B. The Harley Initial Transfers were and continue to be customer property within
the meaning of SIPA § 78*lll*(4).

**ANSWER:**    KBC Investments admits that charts are attached as Exhibits A and B to the

Amended Complaint.   KBC Investments denies having sufficient knowledge or information to

form a belief as to the content of those charts.   The remaining allegations in paragraph 76 of the

Amended Complaint contain legal conclusions to which no response is required.   To the extent a

response is deemed to be required, KBC Investments denies the remaining allegations in paragraph

76 of the Amended Complaint.

77.     The November 10, 2010 Judgment resulted in the avoidance of the Harley Initial
Transfers.  The Trustee filed this action on October 6, 2011, thus timely filing this action within
one year of the avoidance of the Harley Initial Transfers.

**ANSWER:**    Paragraph 77 of the Amended Complaint contains legal conclusions to

which no response is required.   To the extent a response is deemed to be required, KBC

Investments denies the allegations in paragraph 77 of the Amended Complaint, except admits  that

the Trustee filed this action on October 6, 2011 and respectfully refers the Court to the November

10, 2010 Judgment referenced in paragraph  77 of the Amended Complaint for its complete

contents.

**B.     Subsequent Transfers from Harley to the KBC Investments**

78.     Prior to the Filing Date, Harley subsequently transferred a portion of the Harley
Initial Transfers to KBC Investments.  Based on the Trustee's investigation to date, Harley
transferred $146,000,000 to KBC Investments, of which at least $86,000,000 consisted of
subsequent transfers of customer property ("Subsequent Transfers").  A chart setting forth the
presently known Subsequent Transfers is attached as Exhibit C.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to whether Harley "transferred a portion of the Harley Initial Transfers to KBC

Investments" and on that basis denies the allegations in the first sentence of paragraph 78 of the

Amended Complaint.    The remaining allegations in paragraph 78 of the Amended Complaint

contain legal conclusions to which no response is required.    To the extent a response is deemed to

be required, KBC Investments denies the remaining allegations in paragraph 78 of the Amended

Complaint, except admits that Exhibit C is attached to the Amended Complaint and respectfully

refers the Court to Exhibit C for its complete contents.

79.    The Subsequent Transfers are recoverable from KBC Investments under section
550(a) of the Bankruptcy Code and applicable provisions of SIPA, particularly § 78fff-2(c)(3).

**ANSWER:**    Paragraph 79 of the Amended Complaint contains legal conclusions to

which no response is required.    To the extent a response is deemed to be required, KBC

Investments denies the allegations in paragraph 79 of the Amended Complaint.

80.    The Subsequent Transfers represent a redemption of equity interest by KBC
Investments as a shareholder in Harley.  Because Harley invested all of its assets into the BLMIS
Ponzi scheme, Harley was insolvent when it made the Subsequent Transfers to KBC Investments
upon redemption of its interests.

**ANSWER:**    Paragraph 80 of the Amended Complaint contains legal conclusions to

which no response is required.    To the extent a response is deemed to be required, KBC

Investments denies the allegations in paragraph 80 of the Amended Complaint.

81.    The Trustee's discovery and investigation is ongoing, and the Trustee reserves the
right to: (i) supplement the information on the initial and Subsequent Transfers discussed above,
and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

**ANSWER:**    KBC Investments denies having sufficient knowledge or information to

form a belief as to the truth of the allegations in paragraph 81 of the Amended Complaint and on

that basis denies the allegations in paragraph 81 of the Amended Complaint.

## COUNT ONE

## RECOVERY OF THE SUBSEQUENT TRANSFERS

## 11 U.S.C. §§ 105(a) AND 550

82.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

**ANSWER:**    KBC Investments incorporates and reasserts its responses to the allegations contained in the previous paragraphs of its Answer to the Amended Complaint as if fully rewritten herein.

83.    The Subsequent Transfers are recoverable from KBC Investments under 11 U.S.C. § 550(a) and 15 U.S.C. § 78fff-2(c)(3).

**ANSWER:**    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, KBC Investments denies the allegations in paragraph 83 of the Amended Complaint.

84.    KBC Investments is an immediate or mediate transferee of the Subsequent Transfers from Harley.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, KBC Investments denies the allegations in paragraph 84 of the Amended Complaint.

85.    As a result of the foregoing, pursuant to 11 U.S.C. §§ 105(a) and 550(a) and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against KBC Investments: (a) recovering the Subsequent Transfers, or the value thereof, from KBC Investments for the benefit of the estate of BLMIS and (b) awarding any other relief as the Court deems appropriate.

**ANSWER:**    This paragraph contains legal conclusions to which no response is required. To the extent a response is required, KBC Investments denies the allegations in paragraph 85 of the Amended Complaint.

## RESPONSE TO REQUEST FOR RELIEF

The Request for Relief contains legal conclusions to which no response is required.  To the extent a response is required, KBC Investments denies that the Trustee is entitled to the requested relief or to any other relief.

## AFFIRMATIVE AND OTHER DEFENSES

KBC Investments asserts the following defenses without assuming the burden of proof or any other burden if such burdens would otherwise be on the Trustee.  In the event that subsequent legal developments change the availability or nature of claims asserted by the Trustee, KBC Investments hereby preserves each and every defense at law, in equity, or otherwise, available under federal and state law, including common law.  Further, KBC Investments reserves the right to amend this Answer to assert any other and further defenses, cross-claims, and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.  These defenses are set forth cumulatively and in the alternative.

### FIRST DEFENSE
### Failure to State a Claim
### (Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b))

1.      The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
### Lack of Personal Jurisdiction

2.      This Court lacks personal jurisdiction over KBC Investments, for the reasons stated in KBC Investments' Motion to Dismiss the Complaint, dated November 16, 2022 [Adv. Pro. No. 08-0189 (CGM), Doc No. 22599] and the associated briefing, and KBC Investments has not consented to jurisdiction in this action.

### THIRD DEFENSE
### Bankruptcy Code Good Faith Defense
### (11 U.S.C. § 550(b))

3.     The Trustee's claims are barred, in whole or in part, because any funds KBC received from the so-called Harley Transfers was for value, in good faith, and without knowledge of the voidability of any alleged initial transfers from BLMIS to Harley, and thus the alleged transfers to KBC Investments, if any, may not be recovered pursuant to 11 U.S.C. § 550(b).

### FOURTH DEFENSE
### No Customer Property
### (15 U.S.C. § 78fff-2(c)(3))

4.     The Trustee's claims are barred, in whole or in part, because any property received from Harley Transfers was not Customer Property, or proceeds of Customer Property, that BLMIS transferred to Harley, and therefore the property is not recoverable by the Trustee from KBC Investments.

### FIFTH DEFENSE
### Mere Conduit/Lack of Dominion or Control

5.     The Trustee's claims are barred because KBC Investments was not a transferee of any customer property from Harley.  To the extent, if any, that KBC Investments received any transfers from Harley, KBC Investments (a) received each of such transfers in good faith, in its capacity as a lender acting as nominee, and for the account and benefit of one or more of its customers; (b) did not have dominion or control or the right to assert dominion or control over any transfers from Harley or the proceeds thereof or to use any transfers from Harley or the proceeds thereof for its own purposes; (c) rather, KBC Investments was a mere conduit for its customers; and (d) was obligated to credit any transfers from Harley to the account and for the benefit of one or more of its customers, who alone had the right to assert dominion and control over any transfers from Harley received by KBC Investments for their benefit.

## SIXTH DEFENSE
### Bankruptcy Code Safe Harbor
### (11 U.S.C. § 546(e))

6.    Any transfers from Harley that are subsequent transfers or initial transfers that occurred more than two years prior to the Filing Date from BLMIS to Harley or that are otherwise avoidable only pursuant to applicable state law and/or 11 U.S.C. § 548(a)(1)(B) may not be avoided or recovered pursuant to 11 U.S.C. § 546(e).

## SEVENTH DEFENSE
### New York Debtor and Creditor Law
### (N.Y. Debt & Cred §§ 273-79; 11 U.S.C. § 544)

7.    The claims against KBC Investments are barred, in whole or in part, because the Trustee failed to plead all of the elements of fraudulent transfer under section 544 of the Bankruptcy Code and sections 273, 274, 275, 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law with sufficient particularity and factual support.

## EIGHTH DEFENSE
### New York Debtor and Creditor Law
### (N.Y. Debt & Cred § 278)

8.    The claims against KBC Investments are barred, in whole or in part, because any transfers from Harley were taken for fair consideration and without knowledge of the fraud, as provided by section 278(1) of the New York Debtor and Creditor Law, and/or without actual fraudulent intent and for fair consideration, as provided by section 278(2) of the New York Debtor and Creditor Law.

## NINTH DEFENSE
### No Interest

9.    The Trustee is not entitled to an award of interest under 11 U.S.C. § 548.

### TENTH DEFENSE
### Preservation of Rights
### (11 U.S.C. § 502(h))

10.    To the extent the Trustee recovers from KBC Investments, KBC Investments

reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

### ELEVENTH DEFENSE
### Lack of Constitutional Authority
### (U.S. Const. Art. III)

11.    The Trustee's claims are barred, in whole or in part, because this Court lacks

authority under the U.S. Constitution to enter final orders or judgment in this proceeding.

### TWELFTH DEFENSE
### Statute of Limitations

12.    The Trustee's claims are barred, in whole or in part, by the statute of limitations.

### THIRTEENTH DEFENSE
### Laches

13.    The Trustee's claims are barred, in whole or in part, because the delay in bringing

and prosecuting his claim is unreasonable and unfairly prejudices KBC Investments' ability to

defend itself, including, without limit, with respect to any claim by the Trustee for interest accruing

from after the date of the filing of the original Complaint.

### FOURTEENTH DEFENSE
### No Ponzi Scheme Presumption

14.    The Trustee's claims are barred, in whole or in part, because the Trustee may not

rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to

Harley that he seeks to recover from KBC Investments were made with actual intent to hinder,

delay, or defraud any BLMIS creditor.

**FIFTEENTH DEFENSE**
**Sufficient SIPC Funds**

15.     The Trustee's claims are barred, in whole or in part, because the Trustee or Plaintiff recovered, or during the pendency of this action recovers, sufficient funds to reimburse SIPC for all payments that SIPC has made to satisfy allowed claims of BLMIS customers.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, KBC Investments demands a trial by jury on all claims that may be tried by a jury.

**STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)**

KBC Investments does not consent to entry of final orders or judgment by the Bankruptcy Court.

## DEFENDANT'S REQUEST FOR RELIEF

**WHEREFORE,** KBC Investments demands judgment dismissing the Amended Complaint with prejudice, together with an award of attorney's fees, costs, disbursements, and such other relief as the Court deems just and appropriate.

Dated: June 28, 2023         SIDLEY AUSTIN LLP
      New York, New York

                               */s/ John J. Kuster*
                               John J. Kuster
                               Martin B. Jackson
                               Andrew P. Propps
                               Danica L. Brown
                               SIDLEY AUSTIN LLP
                               787 Seventh Avenue New York, NY 10019
                               Tel: (212) 839-5300
                               Fax: (212) 839-5599
                               jkuster@sidley.com
                               mjackson@sidley.com
                               apropps@sidley.com
                               dbrown@sidley.com

                               *Counsel for Defendant*
                               *KBC Investments Limited*