BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300

**Hearing Date: November 15, 2023**
**Objections Date: August 31, 2023**
**Reply Date: October 2, 2023**

*Attorneys for Defendant ZCM Asset Holding Company (Bermuda) Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01512 (CGM) |
| Plaintiff, | |
| v. | |
| ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED, | |
| Defendant. | |

**ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**THE COMPLAINT AS AMENDED BY STIPULATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 3

    ZCM ............................................................................................................... 3

    Fairfield Sentry ............................................................................................. 4

    The Complaint and Related Proceedings ...................................................... 5

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 7

I.      THE TRUSTEE MAY NOT INCORPORATE BY REFERENCE THE
       ENTIRE FAIRFIELD AMENDED COMPLAINT AND THUS FAILS
       TO ADEQUATELY ALLEGE THAT THE INITIAL TRANSFERS
       WERE AVOIDED. ............................................................................... 7

II.     THE TRUSTEE FAILS TO ALLEGE THAT ZCM WAS A
       TRANSFEREE UNDER SECTION 550(a), RATHER THAN A MERE
       CONDUIT .......................................................................................... 11

       A.     The Trustee Cannot Recover From a Mere Conduit ................................. 11

       B.     The Amended Complaint Fails to Adequately Allege that ZCM
            Had "Dominion and Control" Over the Transfers at Issue. ...................... 13

III.   THE CLAIMS AGAINST ZCM SHOULD BE DISMISSED UNDER
       THE SAFE HARBOR PROVISION OF SECTION 546(e). ................ 15

       A.     ZCM Meets Each of the Requirements of Section 546(e). ...................... 16

            i.      *The Alleged Initial Transfers Were Settlement Payments*
                 *Made in Connection with a Securities Contract.* ........................... 16

            ii.     *The Alleged Initial Transfers Were Made by or to a*
                 *Covered Entity.* ............................................................................. 17

       B.     The Section 548(a)(1)(A) Exception to the Safe Harbor Does Not
            Apply .................................................................................................... 18

IV.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE
      THAT THE SUBSEQUENT TRANSFERS TO ZCM WERE
      COMPRISED OF CUSTOMER (BLMIS) PROPERTY. ...................................21

      A.   The Trustee Does Not Adequately Allege That the Funds
           Transferred to ZCM Originated with BLMIS. .......................................... 23

      B.   The Trustee's Allegations are Mathematically Implausible, if Not
           Impossible. ............................................................................................... 25

      C.   At Least 24 of the 36 Alleged Subsequent Transfers to ZCM—
           Amounting to $8.2 Million—Could Not Have Been Comprised
           of BLMIS Funds and Should Be Dismissed. ............................................ 28

V.    THE AMENDED COMPLAINT ESTABLISHES THAT ZCM IS
      ENTITLED TO THE GOOD FAITH DEFENSE. .................................................32

      A.   ZCM Received the Alleged Transfers For Value. .................................... 32

      B.   The Transfers Were Received in Good Faith. .......................................... 33

           i.    The facts alleged in the Amended Complaint were not
                 sufficient to put ZCM on inquiry notice. ....................................... 34

           ii.   The facts alleged in the Amended Complaint are
                 insufficient to show that a reasonable person in ZCM's
                 position would have conducted further inquiry into
                 BLMIS's fraud. .............................................................................. 35

           iii.  Diligent Inquiry by ZCM would not have discovered
                 BLMIS's fraud. .............................................................................. 35

      C.   ZCM Took the Transfers Without Knowledge of Voidability. ................ 37

CONCLUSION .................................................................................................... 37

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Anwar v. Fairfield Greenwich Ltd.*,
    286 F.R.D. 258 (S.D.N.Y. 2012) ................................................................................ 34, 35

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 6, 7, 21

*Authentic Fitness Corp. v. Dobbs Temp Help Servs., Inc.* (*In re Warnaco Group, Inc.*),
    No. 01 B 41643, 2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) ..................................... 12

*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund*),
    397 B.R. 1 (S.D.N.Y. 2007) ..................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 6, 21

*Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij*,
    79 F. Supp. 38 (S.D.N.Y. 1948) ............................................................................. 37

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ...................................................................................... 7

*Bonded Financial Services, Inc. v. European American Bank*,
    838 F.2d 890 (7th Cir. 1998) .................................................................................... 11

*Brandt v. Horseshoe Hammond, LLC* (*In re Equip Acq. Res., Inc.*),
    803 F.3d 835 (7th Cir. 2015) .................................................................................... 37

*Chase v. Chase* (*In re Chase*),
    392 B.R. 72 (Bankr. S.D.N.Y. 2008) ......................................................................... 7

*Christy v. Alexander & Alexander of New York Inc.* (*In re Finley*),
    130 F.3d 52 (2d Cir. 1997) ................................................................................. 11, 12

*Davis v. Bifani*,
    No. 07-cv-00122, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ................................... 9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry*),
    No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ....................... 18

*Finn v. Alliance Bank*,
    860 N.W.2d 638 (Minn. 2015) ........................................................................... 19, 20

*Flaxer v. Giffort* (*In re Lehr Constr. Corp.*),
    528 B.R. 598 (Bankr. S.D.N.Y. 2015) ................................ 27

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*,
    No. 19-7007, 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ................................ 26

*Harris v. N.Y. State Dept. of Health*,
    202 F. Supp.2d 143 (S.D.N.Y. 2002) ................................ 27

*In re Bayou Group, LLC*,
    439 B.R. 284 (S.D.N.Y. 2010) ................................ 33

*In re Caremerica, Inc.*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) ................................ 22

*In re Extended Stay, Inc.*,
    Adv. Pro. No. 11-02254, 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) ................................ 27

*In re Generation Res. Holding Co, LLC*,
    964 F.3d 958 (10th Cir. 2020) ................................ 21

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2021) ................................ 8

*In re Trib. Co. Fraudulent Conveyance Litig.*,
    818 F.3d 98 (2d Cir. 2016) ................................ 14

*In re Unified Com. Cap., Inc.*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ................................ 19, 20

*Jalbert v. Gryzanova* (*In re Bicom NY, LLM*),
    No. 21-1821, 2022 WL 1419997 (2d Cir. May 5, 2022) ................................ 12

*Jones v. Bock*,
    549 U.S. 199 (2007) ................................ 7

*Kennedy v. Mondelez Blob. LLC*,
    No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ................................ 31

*Law v. Siegel*,
    571 U.S. 415 (2014) ................................ 21

*Levitch v. Columbia Broad. Sys., Inc.*,
    94 F.R.D. 292 (S.D.N.Y. 1982) ................................ 8

*Lyon v. Eiseman et al.* (*In re Forbes*),
   372 B.R. 321 (B.A.P. 6th Cir. 2007) ....................................................... 22

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
   747 F. Supp. 2d 406 (S.D.N.Y. 2010) ..................................................... 36

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
   138 S. Ct. 883 (2018) .............................................................................. 21

*Mervyn's LLC v. Lubert-Adler Grp. IV, LLC* (*In re Mervyn's Holdings, LLC*),
   426 B.R. 96 (Bankr. D. Del. 2010) .......................................................... 14

*Nastasi & Assoc. v. Bloomberg, L.P.*,
   No. 18-CV-12361, 2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) ........................................... 27

*NCUA Bd. v. Morgan Stanley & Co.*,
   No. 13 Civ. 6705, 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014)................................................ 9

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023, 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)........................................... 8, 9

*Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*,
   No. 01 Civ. 4788, 2006 WL 587483 (S.D.N.Y. Mar. 8, 2006) .................................................. 13

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ..................................................... 7, 13, 32

*Papasan v. Allain*,
   478 U.S. 265 (1986) .............................................................................. 7

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
   712 F.3d 705 (2d Cir. 2013) ..................................................................... 24

*Picard v. ABN Amro N.A.* (*In re Madoff*),
   Adv. Pro. No. 10-05354, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ............... 32, 33

*Picard v. BNP Paribas S.A.* (*In re Madoff*),
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................... 35

*Picard v. Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
   12 F.4th 171 (2d Cir. 2021) ...................................................................*passim*

*Picard v. Fairfield Inv. Fund Ltd.* (*In re Madoff*),
   Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................... 15

*Picard v. Ida Fishman Revocable Trust* (*In re Madoff*),
   773 F.3d 411 (2d Cir. 2014) ...................................................................*passim*

*Picard v. Merkin et al.* (*In re Bernard L. Madoff Sec. LLC*),
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...................................................... 24

*Picard v. Miller* (*In re Madoff*),
   631 B.R. 1 (Bankr. S.D.N.Y. 2021)........................................................... 12

*Picard v. Multi-Strategy Fund Ltd.*,
   No. 22-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ............................ 17, 20

*Picard v. Shapiro* (*In re Madoff*),
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....................................... 21, 22, 23

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
   Adv. Pro. No. 12-01565, 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023)............... 12, 13, 32

*Richardson v. New York City Bd. of Educ.*,
   711 F. App'x 11 (2d Cir. 2017)............................................... 27, 28

*Saltz v. First Frontier, LP*,
   782 F. Supp. 2d 61 (S.D.N.Y. 2010) ......................................... 35

*Sapia v. Home Box Office, Inc.*,
   No. 18-1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)................ 25

*Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   516 B.R. 18 (S.D.N.Y. 2014) ................................................. 37

*Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
   234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................. 12, 13

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*),
   501 B.R. 26 (S.D.N.Y. 2013) ............................................... 8

*Sharp Int'l Corp. v. State St. Bank & Tr. Co.*,
   403 F.3d 43 (2d Cir. 2005) ................................................ 18, 20

*Silverman v. K.E.R.U. Realty Corp. et al.* (*In re Allou Distribs., Inc.*),
   379 B.R. 5 (S.D.N.Y. 2007) ................................................ 22

*SIPC v. BLMIS* (*In re Madoff Secs.*),
   No. 12-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)................ 15, 17

*Stoebner v. Opportunity Fin.*, *LLC*,
   909 F.3d 219 (8th Cir. 2018) ................................................................. 19

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
   534 F. Supp. 2d 1326 (S.D. Fla. 2008) .................................................. 14

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................... 9

*Weisfelner v. Fund 1* (*In re Lyondell Chem. Co.*),
   503 B.R. 348 (Bankr. S.D.N.Y. 2014) .................................................. 14

*Wellspring Capital* (*In re Sportco Holdings, Inc.*,
   Adv. Pro. No. 20-50554, 2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021) ......................... 27

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
   185 F.R.D. 225 (W.D. La. 1999) ............................................................. 9

**Statutes**

11 U.S.C. § 544 ........................................................................................ 8, 10

11 U.S.C. § 545 ............................................................................................. 8

11 U.S.C. § 546(e) ............................................................................... *passim*

11 U.S.C. § 547 ............................................................................................. 8

11 U.S.C. § 548(a)(1)(A) ...................................................................... *passim*

11 U.S.C. § 549 ............................................................................................. 8

11 U.S.C. § 550 .................................................................................... *passim*

11 U.S.C. § 551 ...................................................................................... 6, 10

11 U.S.C. § 553(b) ....................................................................................... 8

11 U.S.C. § 724(a) ....................................................................................... 8

11 U.S.C. § 741(7)(A)(i)(vii) ...................................................................... 17

15 U.S.C. § 78fff-2(c)(3) ........................................................................ 6, 21

NYDCL § 278 ........................................................................................... 5, 6

**Rules**

Fed. R. Bankr. P. 7012(b) ............................................................................ 1

Fed. R. Civ. P. 8(a) ...................................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................. 18, 20

Fed. R. Civ. P. 10(c) ..................................................................... 2, 9, 10

Fed. R. Civ. P. 12(b)(6).............................................................. *passim*

Fed. R. Civ. P. 7012(b) ............................................................................ 1

Fed. R. Evid. 201(b)........................................................................ 28

Fed. R. Evid. 201(c)(2) ................................................................. 28

**Other Authorities**

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 1357 (3d ed. 2004) ............................................. 7

5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) ...................... 12

5 COLLIER ON BANKRUPTCY ¶ 550.03[1] at 550-25 (16th ed. 2019) ........................... 33

Defendant ZCM Asset Holding Company (Bermuda) Limited ("ZCM") respectfully submits this memorandum of law and the accompanying declaration of Steven I. Froot (the "Froot Decl.") in support of its motion to dismiss the Amended Complaint[1] filed by Plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantially consolidated Estate of Bernard L. Madoff (the "Trustee"), pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b). As discussed below, the Amended Complaint should be dismissed in its entirety and with prejudice.

## PRELIMINARY STATEMENT

In this action, which has been pending for more than a decade, the Trustee attempts to claw-back $21,247,755 in transfers made to ZCM between May 14, 2003 and August 14, 2006 pursuant to section 550(a) of the Bankruptcy Code (11 U.S.C. § 550(a)). The transfers at issue arose from investments made by ZCM on behalf of down-stream investors in Fairfield Sentry ("Sentry"), which was a feeder fund associated with BLMIS. Despite the fact that the Trustee has had access to Sentry's books and records for more than twelve years, despite the fact that almost fifteen years that have passed since Madoff's 2008 arrest, and despite the fact that the Trustee has had ample opportunity to amend the complaint in this action and, in fact, has recently done so, the Amended Complaint against ZCM fails to allege the essential elements of the Trustee's single remaining claim against ZCM and is therefore subject for dismissal.

---

[1] The original complaint (ECF No. 1) ("Complaint") (attached as Ex. A to the Froot Decl.), together with paragraphs 1 through 4 in the April 21, 2023 Stipulation and Order Amending the Complaint (ECF No. 101) ("Stipulation") (attached as Ex. B. to the Froot Decl.) are deemed to be the Amended Complaint ("Amended Complaint"). Pursuant to the Stipulation, which is further discussed below, the Liquidators also agreed to amend the caption of this proceeding to correct the name of defendant ZCM from "ZCM Asset Holding Company (Bermuda) LLC" to "ZCM Asset Holding Company (Bermuda) Limited." *See* Stipulation ¶ 1 & Ex. A.

*First*, the Amended Complaint fails to adequately allege that the initial transfers from BLMIS to Sentry were avoided, in violation of Federal Rule of Civil Procedure 8(a).  The Trustee attempts to overcome this failure by arguing that the entire First Amended Complaint against Sentry (an entirely separate proceeding) should be incorporated by reference, in further violation of the Federal Rules and in contravention of well-established case law that an attempt to incorporate by reference an entire complaint from an entirely different proceeding involving different parties violates Rules 8(a) and 10(c) of the Federal Rules of Civil Procedure.

*Second*, the Amended Complaint fails to allege that ZCM was a "transferee," which is an essential element of a claim for recovery under Bankruptcy Code section 550(a), as opposed to a "mere conduit."  The Amended Complaint is devoid of any allegations to show that ZCM was able to exercise dominion or control over the transfers at issue, allegations which are critical for establishing that ZCM was in fact a "transferee."

*Third*, the claims against ZCM should be dismissed under the safe harbor established by section 546(e), which provides that the Trustee may not "avoid a transfer" if it meets certain requirements.  Here, the Amended Complaint establishes that the initial transfers from BLMIS to Sentry were settlement payments made in connection with securities contracts between BLMIS and Sentry, that the subscription agreements between Sentry and ZCM are additional "securities contracts" that are eligible for safe harbor protection, and that BLMIS was a covered entity for the purpose of section 546(e).  Further, the Trustee has failed to allege any facts indicating that the section 548(a)(1)(A) exception to the safe harbor provision applies, and in any event, section 548(a)(1)(A) is limited to two-year transfers, and the Trustee is not seeking to claw-back such transfers from ZCM.

*Fourth*, it is clear from the face of the Amended Complaint and accompanying exhibits that the Trustee's assertion that the transfers alleged to have been received by ZCM were comprised of BLMIS customer property is a mathematic impossibility.  In any event, the Trustee has failed to meet his pleading burden with respect to this issue by failing to allege that each transfer ZCM allegedly received originated with BLMIS.  The Trustee's pleadings (including his exhibits) in this and related adversary proceedings make clear that at least $8,195,000 of the $21,247,755 in alleged subsequent transfers to ZCM—24 of the 36 subsequent transfers encompassed by the Amended Complaint—could not have been comprised of BLMIS customer property.

*Finally*, dismissal of the Amended Complaint is warranted based on the Good Faith defense contained in section 550(b), because it can be established on the face of the complaint that ZCM received the transfers at issue for value, in good faith, and without knowledge of the voidability of the transfers.[2]

## BACKGROUND

### ZCM

The Amended Complaint alleges that ZCM Asset Holding Company (Bermuda) Limited[3] was a Bermuda private limited company and an affiliate of Zurich Capital Markets Inc.  Compl. ¶¶ 3, 22.  The Amended Complaint further alleges that ZCM directed funds to be invested with

---

[2] ZCM acknowledges that the Court has rejected arguments similar to those raised in this motion in related cases involving subsequent transferees.  ZCM advances these arguments on the basis that the facts of the instant case are sufficiently distinguishable to warrant a different outcome and also in order to preserve the arguments for appeal.

[3] The original Complaint incorrectly named "ZCM Asset Holding Company (Bermuda) LLC" as a defendant.  *See* Compl.; Stipulation at p. 2.  Pursuant to the Stipulation, the Trustee has agreed to amend the caption of this proceeding to name the correct entity, ZCM Asset Holding Company (Bermuda) Limited.  Stipulation ¶ 1 & Ex. A.

BLMIS through Madoff feeder funds, including Sentry, and that ZCM knowingly received subsequent transfers from BLMIS by withdrawing money from the feeder funds. *Id.* ¶ 6. According to the Amended Complaint, these investments were made pursuant to a subscription agreement between ZCM and Sentry, and ZCM wired the money to fund its investment to Fairfield through a bank in New York. *Id.* ¶ 7. The Amended Complaint further alleges that ZCM derived significant revenue pursuant to the investments. *Id.*

**Fairfield Sentry**

Sentry was a Madoff "feeder fund" that is now in liquidation in the British Virgin Islands. Compl. ¶ 2. Sentry had direct customer accounts with BLMIS's investment advisory business for the purpose of investing assets with BLMIS. *Id.* According to the Amended Complaint, Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts. *Id.*

In 2009, the Trustee filed a complaint against Sentry and other defendants in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (CGM), which "sought to avoid and recover the initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion." Compl. ¶ 43. As discussed below, the Trustee attempts to "incorporate[] by reference the allegations contained in the [subsequently filed] Fairfield Amended Complaint as if fully set forth herein." *Id.*

In 2011, the Trustee reached a settlement with Sentry, Fairfield Sigma Limited ("Sigma"), and Fairfield Lambda Limited ("Lambda," together with Sentry and Sigma, the "Funds"). Compl. ¶ 48; Froot Decl. ¶ 4, Ex. C, Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 ("Fairfield Settlement Agreement"). The Fairfield Settlement Agreement provided for cooperation and information sharing between the Trustee and Sentry's liquidators concerning, among other things, claims against parties that

redeemed shares from Sentry. *See* Fairfield Settlement Agreement ¶ 14. Thus, the Trustee has had access to Sentry's books and records for more than a decade.

### The Complaint and Related Proceedings

This action was filed over ten years ago, on April 12, 2012, seeking to recover $50,820,216 in subsequent transfers ZCM allegedly received from Sentry and Kingate Global Fund Ltd. ("Kingate"). Compl. ¶ 2.

On April 21, 2023, the parties entered into a Stipulation and Order whereby the Liquidators agreed (i) to dismiss Count One of the Complaint, which sought to recover subsequent transfers ZCM allegedly received from Kingate, and (ii) to dismiss that portion of the Trustee's claims in Count Two of the Complaint that sought to recover three subsequent transfers that ZCM allegedly received from Sentry on January 17, 2003 in the amount of $619,036, on March 14, 2003 in the amount of $2,325,000, and on April 14, 2003 in the amount of $300,000, as identified in Exhibit F to the Complaint. *See* Stipulation ¶¶ 2-3.

Accordingly, the only remaining claim at issue in this litigation seeks to claw-back $21,247,755 in transfers made to ZCM between May 14, 2003 and August 14, 2006 pursuant to section 550(a) of the Bankruptcy Code. *See* Compl., Ex. F; Stipulation ¶ 4.

In support of this remaining claim, the Trustee makes the following threadbare allegations:

> 49. A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant ZCM and is recoverable from Defendant ZCM pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately [$21,247,755] of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ZCM (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit F.

\*\*\*

5

57.     Defendant ZCM received the Fairfield Sentry Subsequent Transfers, totaling approximately [$21,247,755]. The Fairfield Sentry Subsequent Transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

58.     Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant ZCM.

59.     Defendant ZCM is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

60.     As a result of the foregoing, pursuant to sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL, and SUPA ¶ 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant ZCM recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

Compl. ¶¶ 57-60 [as amended by Stipulation ¶ 4].

Notably absent from the Amended Complaint are any factual allegations that ZCM had any knowledge of Madoff's wrongdoing; any factual allegations that ZCM was a "transferee" under section 550(a), such that ZCM was able to exercise "dominion or control" over the funds at issue; and any allegations to show that the transfers at issue were comprised of BLMIS customer property. Although the Trustee includes a schedule of the transfers from Sentry to ZCM that provides the date and dollar amount of each transfer (*see* Compl., Ex. F), neither the Complaint nor the Amended Complaint provide any details whatsoever regarding the source of the funds that comprised these alleged transfers, nor any information that ties those transfers to the initial transfers from BLMIS.

## LEGAL STANDARD

A Court must dismiss a claim under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow[] . . .

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678.  While the Court must accept well-pleaded factual allegations as true, it
need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal
conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Defenses that appear on the face of the complaint are properly before the Court on a motion
to dismiss.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (a case may be dismissed if an affirmative
defense appears on the face of the complaint); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d
67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss
under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the
face of the complaint."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
AND PROCEDURE § 1357 (3d ed. 2004) (explaining that a complaint may be dismissed if the plaintiff
alleges facts that, taken as true, establish an affirmative defense).

When deciding a motion to dismiss, in addition to the allegations in the relevant pleading,
the Court "may also look to public records" including documents filed in other cases.  *Blue Tree
Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d
Cir. 2004); *see also Chase v. Chase* (*In re Chase*), 392 B.R. 72, 87 (Bankr. S.D.N.Y. 2008)
(considering on motion to dismiss "entire record of the underlying bankruptcy case and related
adversary proceedings").

## ARGUMENT

## I.    THE TRUSTEE MAY NOT INCORPORATE BY REFERENCE THE ENTIRE FAIRFIELD AMENDED COMPLAINT AND THUS FAILS TO ADEQUATELY ALLEGE THAT THE INITIAL TRANSFERS WERE AVOIDED.

The first basis for dismissal is the Amended Complaint's failure to comply with Rule 8's
most fundamental requirement—"a short and plain statement of the claim showing the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Section 550(a) sets out the elements a trustee must

7

satisfy to recover transferred property: that the transfer was *avoided*, and that the defendant is an

initial or subsequent transferee." *Picard v. Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec. LLC*),

12 F.4th 171, 197 (2d Cir. 2021) (emphasis added). "Section 550(a) applies only 'to the extent that

a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title.' In other

words, a trustee cannot use §550(a) to recover property unless the trustee has first avoided a

transfer under one of these provisions." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv.

Sec. LLC*, 917 F.3d 85, 97 (2d Cir. 2021) (internal citations omitted).[4]

Here, the Trustee has failed to plead an essential element of his claim—that the initial

transfers from BLMIS to Sentry were avoided. Instead, the Trustee attempts to incorporate by

reference unspecified portions of an entirely different complaint filed by a different plaintiff in

another proceeding against other defendants. The Trustee purports to "incorporate[] by reference

the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl.

¶ 43; *see* Froot Decl. ¶ 10 & Ex. G, Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro.

No. 09-1239 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19 ("Fairfield First Amended Compl.").

While a pleading may incorporate by reference other documents, it "must be clear which

statements [from these documents] are to be incorporated." *Levitch v. Columbia Broad. Sys., Inc.*,

94 F.R.D. 292, 294 (S.D.N.Y. 1982), aff'd, 697 F.2d 495 (2d Cir. 1983); *Nycomed U.S. Inc. v.

Glenmark Generics Ltd.*, No. 08-CV-5023, 2010 WL 1257803, at *3-4 (E.D.N.Y. Mar. 26, 2010)

---

[4] ZCM acknowledges that the district court has held that "to the extent that a transfer is avoided"
the Trustee is required to show that a given transfer is avoidable and does not require an actual
judgment of avoidance." *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re
Madoff Sec.*) 501 B.R. 26, 37 (S.D.N.Y. 2013); *see also Picard v. Platinum All Weather Fund
Limited, et al.*, Adv. Pro. No. 12-01697 (CGM), ECF No. 173 at p. 15 (Bankr. S.D.N.Y. June 12,
2023) (same). Nevertheless, ZCM notes that the statute, by its own terms, applies to a transfer that
is "avoided." 11 U.S.C. § 550(a). Notably, the statute does not use the word "avoidable." ZCM
thus reserves all rights and arguments regarding what showing is required in order to establish that
the Trustee has "avoided" a transfer.

("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.") (quoting *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007)).

Although Federal Rule of Civil Procedure 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," the federal rules do not authorize the wholesale incorporation by reference of an *entire* pleading from a different action. *NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer") (emphasis in original); *Davis v. Bifani*, No. 07-cv-00122, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action"); *Nycomed U.S. Inc.*, 2010 WL 1257803, at *4 ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite 'guidance to the responding party.'") (quoting *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999)); *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 463 (the "proposed method of pleading necessary elements of [the] claim by incorporating factual allegations contained in several prior lengthy . . . pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief") (citation omitted).

The Fairfield First Amended Complaint that the Trustee seeks to incorporate includes 798 paragraphs spanning 217 pages, with 111 accompanying exhibits, and asserts a panoply of claims

9

against numerous defendants, none of which is related to ZCM.  *See* Fairfield First Amended Compl.  The Trustee maintains that this unwieldy, unrelated document pleads an essential element of his claim against ZCM—the avoidability of BLMIS's initial transfers to the Fairfield Funds.  *See* Compl. ¶ 44 ("The Fairfield Sentry Six Year Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code . . .").  As discussed above, courts routinely condemn this tactic, instead requiring that parties assert their own factual allegations against their adversaries.

The Trustee's attempt to rely on the incorporation by reference of the entire Fairfield First Amended Complaint, instead of setting forth sufficient facts to meet his pleading burden, is especially problematic in light of the fact that the Trustee has since further amended his pleading against Fairfield.  *See* Froot Decl. ¶ 5, Ex. D, Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Fairfield Second Amended Compl.").  The Fairfield Second Amended Complaint is as sprawling as its predecessor, and in the years since filing the Fairfield Second Amended Complaint, the Trustee has chosen not to clarify which of the two Fairfield Complaints he is attempting to incorporate in his complaint against ZCM.  Thus, ZCM can only sift through hundreds of pages of documents across two complaints to guess which allegations from which pleading require a response, in blatant contravention of Rule 8's requirements.  Moreover, if ZCM were required to respond to every paragraph of the Trustee's 406-paragraph complaint against Fairfield, it would be forced to respond to allegations outside its knowledge and well beyond the relevant time period at issue in the Amended Complaint in this case.

10

Consequently, the Amended Complaint fails to provide fair notice of the facts upon which

the Trustee relies to establish an essential element of his claims—the avoidance of the alleged

initial transfers from BLMIS to Sentry—and fails to comply with Rules 8(a) and 10(c) of the

Federal Rules of Civil Procedure.  Accordingly, the Amended Complaint should be dismissed on

this ground alone.

## II.    THE TRUSTEE FAILS TO ALLEGE THAT ZCM WAS A TRANSFEREE UNDER SECTION 550(A), RATHER THAN A MERE CONDUIT.

A second basis warranting dismissal of the remaining claim against ZCM is the Trustee's

failure to allege that ZCM was a "transferee" for the transfers at issue, as required under section

550(a) of the Bankruptcy Code, as opposed to a "mere conduit."

### A.    The Trustee Cannot Recover From a Mere Conduit.

Section 550(a) of the Bankruptcy Code only allows a trustee to recover customer property

from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was

made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).

The Second Circuit has expressly held that the ***mere recipient*** of assets is not a transferee.  *Christy*

*v. Alexander & Alexander of New York Inc.* (*In re Finley*), 130 F.3d 52, 57 (2d Cir. 1997) ("[T]he

term 'initial transferee' references something more particular than the initial recipient.").  As the

Second Circuit articulated in *Finley*, "[e]very Court of Appeals to consider this issue has squarely

rejected a test that equates mere receipt with liability. . ."  *Id*.

To determine whether a party qualifies as a transferee under section 550(a), the Second

Circuit has adopted the "dominion and control test."  *See id.*; *Citibank, N.A.*,12 F.4th at 197.[5]

---

[5] The "dominion and control" test was first articulated by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1998):

> [We] think the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes.  When

Under this analysis, in order to be deemed a "transferee," a party must have (i) received the funds; (ii) had the legal right to control them; and (iii) had the right to use them for its own purpose. *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund*), 397 B.R. 1, 15 (S.D.N.Y. 2007). A party "who merely facilitates the transfer of funds . . . to a third party does not exercise sufficient dominion and control and is not a[] . . . transferee." *Picard v. Miller* (*In re Madoff*), 631 B.R. 1, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Finley*, 130 F.3d at 59); *see also Jalbert v. Gryzanova* (*In re Bicom NY, LLM*), No. 21-1821, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (holding that a recipient who never "had 'a realistic opportunity' to use the funds" is not a transferee under section 550); 5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee[.]'"); *Authentic Fitness Corp. v. Dobbs Temp Help Servs., Inc.* (*In re Warnaco Group, Inc.*), No. 01 B 41643, 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006) ("[M]ere conduits" are not transferees because a "'mere conduit' . . . has no dominion or control over the asset."). The mere conduit defense is a functional inquiry, and is not limited to where a party acts as a "mere conduit" in the "prototypical sense of the term." *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 15. Rather, the mere conduit inquiry requires courts to examine whether a party actually had the ability to "exercise dominion over the funds at issue" and was "able to put them to 'his own purposes' even if it is not a 'mere conduit.'" *Id.* (citation omitted).

The "dominion and control" test applies to both subsequent and initial transferees. *See Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (CGM),

---

A gives a check to B as agent for C, then C is the "initial transferee"; the agent may be disregarded . . . "Transferee" is not a self-defining term; it must mean something different from "possessor" or "holder" or "agent."

*Bonded*, 838 F.2d at 893 (Easterbrook, J.).

12

2023 WL 118787, at *7 (Bankr. S.D.N.Y. Jan. 6, 2023) (acknowledging that "[s]ome courts have applied this same 'dominion or control' test to subsequent transferees."); *see also Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and holding that "[t]o qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives" (citation omitted)). Further support is found in the fact that Congress intentionally used the word "transferee" in both section 550(a)(1) and section 550(a)(2), and there is no logical reason for the term to be defined differently in one sub-section than the other.

### B.    The Amended Complaint Fails to Adequately Allege that ZCM Had "Dominion and Control" Over the Transfers at Issue.

The Trustee has the initial burden of pleading (and ultimately proving) facts indicative of dominion and control sufficient to establish each defendant as a "transferee."[6] *Stratton Oakmont, Inc.*, 234 B.R. at 312-15 (holding that the "[t]rustee has not alleged any facts which would permit a recovery pursuant to § 550(a)" where the defendant's "dominion and control" was not alleged); *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, No. 01 Civ. 4788, 2006 WL 587483, at *2 (S.D.N.Y. Mar. 8, 2006) ("[A] defense is not considered affirmative where it 'merely negates an element of the plaintiff's prima facie case.'") (quotation omitted)).

---

[6] For purposes of this motion, it does not matter whether the Court considers the issue of whether ZCM is a "transferee" to be an element of a section 550(a) claim that the Trustee must plead or an affirmative defense, as under either approach, dismissal is appropriate. *See Standard Chartered Fin. Serv. (Luxembourg) S.A.*, 2023 WL 118787, at *7 ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint" (quoting *Pani*,152 F.3d at 74). Here, where the Amended Complaint is devoid of any factual allegations to show that ZCM had the ability to exercise dominion and control over the transfers at issue, the Trustee has both failed to allege an essential element of a section 550(a) claim and also provided the facts, or lack thereof, necessary to support the argument that ZCM was a mere conduit as an affirmative defense.

13

The Trustee has not met his burden of pleading sufficient facts to show that ZCM had the ability to exercise "dominion or control" over the funds at issue.  In fact, the Amended Complaint is devoid of any allegations whatsoever that ZCM had the ability to exercise dominion or control, or put the funds to its "own purposes."  The only allegations in the Amended Complaint that even touch on ZCM's ability to exercise dominion or control over the funds at issue are insufficient to meet the Trustee's pleading burden in this regard.  *See* Compl. ¶ 58 ("Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant ZCM"); *id.* ¶ 59 ("Defendant ZCM is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers").  These assertions are patently inadequate to show that ZCM was anything more than a mere conduit for the transfers at issue.

For this reason, the Court should dismiss the claims against ZCM on the basis that ZCM was not a "transferee," as required under section 550(a).  *See Weisfelner v. Fund 1* (*In re Lyondell Chem. Co.*), 503 B.R. 348, 381-83 (Bankr. S.D.N.Y. 2014) (dismissing claims asserted against defendants that were sued as mere "holders" and not beneficial owners of stock on the basis that the "holders" were mere conduits who "cannot be held liable as recipients of fraudulent transfers" under section 550(a)), *abrogated on other grounds by In re Trib. Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, (2d Cir. 2016); *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC* (*In re Mervyn's Holdings, LLC*), 426 B.R. 96, 102-04 (Bankr. D. Del. 2010) (dismissing claims asserted against defendants on the basis that there were insufficient allegations to show that the movant was able to exercise "dominion and control" over the transfers at issue); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) (holding that the plaintiff "has not stated a claim for fraudulent transfer against [defendant] because at best, [defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have controlled the funds at

14

issue."). Notwithstanding that the Trustee has had access to Sentry's records for over a dozen years, that this case has been pending for more than a decade, and that the Trustee recently amended the original complaint in this action, the Amended Complaint completely fails to allege that ZCM was able to exercise dominion and control over the transfers at issue and is therefore ripe for dismissal on this basis.

## III.    THE CLAIMS AGAINST ZCM SHOULD BE DISMISSED UNDER THE SAFE HARBOR PROVISION OF SECTION 546(E).

Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer is avoided, "the trustee may recover . . . the property transferred," or its value, from the "initial transferee" or any subsequent "transferee of such initial transferee." 11 U.S.C. § 550(a)(1), (2).  The section 546(e) safe harbor provision, however, bars the Trustee from avoiding (other than under section 548(a)(1)(A), which has a limited reach-back period of two years) a transfer, *inter alia*, (i) that was either a settlement payment or a transfer in connection with a securities contract; and (ii) made by or to (or for the benefit of) a covered entity such as a stockbroker, financial institution, or financial participant.  *See* 11 U.S.C. § 546(e).

ZCM is entitled to raise the section 546(e) safe harbor defense as a subsequent transferee. *See SIPC v. BLMIS* (*In re Madoff Secs.*), No. 12-115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); *see also Picard v. Fairfield Inv. Fund Ltd.* (*In re Madoff*), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (holding that a subsequent transferee may assert any defenses to avoidability of the initial transfer that the initial transferee could have asserted, including the section 546(e) safe harbor).  Because the elements of the defense are established on the face of the Amended Complaint, ZCM is entitled to prevail on this affirmative defense on a motion to dismiss.  *See Picard v. Ida Fishman Revocable Trust* (*In re Madoff*), 773 F.3d 411, 414-15 (2d Cir. 2014).

15

### A.    ZCM Meets Each of the Requirements of Section 546(e).

#### i.    *The Alleged Initial Transfers Were Settlement Payments Made in Connection with a Securities Contract.*

Section 546(e) applies to transfers from BLMIS to its account holders and shields them from avoidance, both because the documents governing BLMIS customers' accounts constituted securities contracts, and because the payments BLMIS made to those customers were made "in connection with" those contracts and also constituted "settlement payments." *Ida Fishman*, 773 F.3d at 417, 418–23. Either of those reasons are sufficient to invoke the safe harbor.

In *Ida Fishman*, the Second Circuit held that section 546(e) shielded transfers between BLMIS and its account holders from the Trustee's avoidance powers. *Id*. at 417. The Second Circuit concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id*. at 418–23, though either of those findings would have independently sufficed to invoke the safe harbor. The Court rejected the Trustee's argument that the safe harbor did not apply because Madoff allegedly did not actually carry out the promised securities transactions. *Id*. at 419–20 ("Section 546(e) only requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected to an actual securities transaction.").

Even if the BLMIS account agreements did not constitute "securities contracts" for purposes of section 546(e)—which they clearly do—the alleged initial transfers are still shielded from avoidance under section 546(e) because they were made in connection with Sentry's securities contracts with its own investors, including investment fund subscription agreements and redemption requests tendered pursuant thereto.

16

Section 546(e) applies to all transfers made "in connection with a securities contract," not just to a transfer in connection with a securities contract that is entered into between the initial transferor and transferee. Where an initial transfer was caused by a redemption made by a subsequent transferee pursuant to a securities contract between the initial and subsequent transferee, then the initial transfer was made "in connection" with a covered securities contract and the section 546(e) safe harbor applies. *See Cohmad*, 2013 WL 1609154, at *3; *see also Picard v. Multi-Strategy Fund Ltd.*, No. 22-06502, 2022 WL 16647767, at *3–4, 7 n.7 (S.D.N.Y. Nov. 3, 2022) ("securities contracts between Madoff Securities' initial transferees and their clients might provide an independent basis for applying the Section 546(e) safe harbor"); *Ida Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided.").

The Amended Complaint establishes that Sentry entered into a subscription agreement with ZCM pursuant to which ZCM wired funds to Sentry in order to facilitate Sentry's ultimate investment with BLMIS. Compl. ¶ 7; *see also id.* ¶ 6 (alleging that ZCM directed funds to be invested with BLMIS through "the Feeder Funds"—Sentry—and that ZCM received subsequent transfers from BLMIS by withdrawing money from Sentry.). The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security" or "any other agreement or transaction that is similar" to such an agreement, 11 U.S.C. § 741(7)(A)(i)(vii), which "includes . . . investment fund subscription agreements and redemption requests," *Cohmad*, 2013 WL 1609154, at *8. Thus, Sentry's agreements with its investors were "securities contracts," and any transfers from BLMIS to Sentry were made "in connection with" those securities contracts.

### ii.    *The Alleged Initial Transfers Were Made by or to a Covered Entity.*

In addition, the initial transfers here were clearly made by or to (or for the benefit of) a covered entity. As the Second Circuit found, "[i]t is not disputed that BLMIS was a

'stockbroker' for the purposes of § 546(e)."  *Ida Fishman*, 773 F.3d at 417.  Because BLMIS is a "stockbroker," transfers made by BLMIS, including the initial transfers to Sentry alleged in the Amended Complaint, were made by a covered entity under section 546(e).

In addition, Judge Bernstein has already held that Sentry is a "'financial institution[]' within the meaning of 11 U.S.C. § 546(e)."  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry*), No. 10-03496, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020). Accordingly, payments from Sentry to ZCM were also made by a covered entity under section 546(e).

**B.    The Section 548(a)(1)(A) Exception to the Safe Harbor Does Not Apply.**

The section 548(a)(1)(A) exception to the safe harbor provision does not apply in this case. That section allows the Trustee to avoid transfers made "within 2 years before" the bankruptcy petition was filed if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud . . . ."  11 U.S.C. § 548(a)(1)(A).  Here, the Trustee has not alleged that ZCM received any transfers within 2 years before the bankruptcy petition was filed, thus, section 548(a)(1)(A) has no application to the transfers the Trustee seeks to recover from ZCM.

In addition, "'actual intent to hinder, delay or defraud' constitutes fraud it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)," *Sharp Int'l Corp. v. State St. Bank & Tr. Co.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted), and the Trustee's pleading does not even come close to meeting this burden.

Neither the Amended Complaint, nor the Fairfield First Amended Complaint, nor the Fairfield Second Amended Complaint contain *any specific* allegations regarding BLMIS's actual intent to hinder, delay, or defraud.  The Trustee appears to rely on the "Ponzi scheme presumption," a judicially-created shortcut that bypasses pleading requirements and "presume[s] that transfers

18

from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Citibank*, 12 F.4th at 201 (Menashi J., concurring). The application of this presumption, however, is not settled law. *See In re Unified Com. Cap., Inc.*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001); *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015). The Second Circuit has not definitively endorsed the presumption, and has only applied it where its applicability has not been contested by the parties. *See, e.g.*, *Citibank*, 12 F.4th at 181, n.7. In *Citibank*, Judge Menashi explained that the "Ponzi scheme presumption" presents a "questionable" application of fraudulent transfer statutes. *Id.* at 202. There are several compelling reasons supporting Judge Menashi's position.

*First*, the presumption "obscures the essential distinction between fraudulent transfers and preferences. It uses fraudulent transfer law rather than the law relating to preferences to promote an equal distribution among creditors." *Id.* Some courts have rejected the presumption on this basis. *Id.* at 201; *see also Unified*, 260 B.R. at 350. In the case of BLMIS, the presumption would essentially permit—subject to other defenses—the claw-back of all property transferred from BLMIS within two years before the bankruptcy filing, which would effectively expand the preference period by 21 months (*i.e.*, from 90 days to two years).

*Second*, section 548(a)(1)(A) focuses on the debtor's mindset at the time of making *particular* transactions, "rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn*, 860 N.W.2d at 647 (construing Minnesota's Uniform Fraudulent Transfer Act). The statute therefore necessitates an "asset-by-asset and transfer-by-transfer" inquiry, which "requires a creditor to prove the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer." *Id.*; *see also Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 226 (8th Cir. 2018) (declining to adopt

19

the Ponzi scheme presumption where there were no facts alleged in the complaint to show that the particular transfer at issue was made with fraudulent intent).    Invoking the Ponzi scheme presumption would permit the Trustee to avoid entirely this "transfer-by-transfer" inquiry, which, given his failure to identify the initial transfers that relate to the subsequent transfers that are the subject of the Amended Complaint, as discussed in Point IV below, he clearly would not be able otherwise to do.

*Third*, the Ponzi scheme presumption abrogates Rule 9(b)'s requirement that actual intent to hinder, delay, or defraud be pled "with particularity."  Fed. R. Civ. P. 9(b); *see Sharp*, 403 F.3d at 56.  A judicially created exception to the Federal Rules runs counter to Congress' intent.  *Finn*, 860 N.W.2d at 647 (concluding "there is no statutory justification for relieving the Receiver of its burden of proving—or for preventing the transferee from attempting to disprove—fraudulent intent" under the "Ponzi-scheme presumption" and that a creditor must "prove the elements of a fraudulent transfer with respect to each transfer"); *see also Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J. concurring)).

*Finally*, the section 548(a)(1)(A) exception does not come into play merely because Sentry, the initial transferee, is alleged to have knowledge of Madoff's fraud and thus there was no actual "settlement payment" or "securities contract."    There is nothing in the language of section 546(e) to justify depriving an innocent subsequent transferee who meets all of the requirements of the statute of its ability to invoke the section 546(e) safe harbor.[7]    The *only* exception to the section

---

[7] The Second Circuit has held that payments can qualify for safe harbor protection as having been made "in connection with" securities contracts notwithstanding that they were "'made in connection' with a Ponzi scheme." *Ida Fishman*, 773 F.3d at 422.  Accordingly, Judge Rakoff's decision to the contrary in *Multi-Strategy Fund Ltd.*, 2022 WL 16647767, at *6 conflicts with applicable Second Circuit precedent, as does Judge Caproni's recent decision in *Picard v. Koch Indust., Inc.*, 23-CV-0294, ECF No. 25 at p. 10 (S.D.N.Y. May 9, 2023).

546(e) safe harbor is a claim under section 548(a)(1)(A), which, as discussed above, is inapplicable here.   Where the Bankruptcy Code expressly creates a safe harbor and further specifies exceptions to that safe harbor, a court is not free to create additional exceptions not otherwise articulated in the Bankruptcy Code.   *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014).   The courts must adhere to "the plain meaning of the language" of the statute.   *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 897 (2018).

## IV.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT THE SUBSEQUENT TRANSFERS TO ZCM WERE COMPRISED OF CUSTOMER (BLMIS) PROPERTY.

To state a claim for recovery of any of the alleged subsequent transfers listed in Exhibit F to the Complaint, the Trustee must plausibly allege that each transfer ZCM received from Sentry originated with BLMIS and was therefore BLMIS customer property that was transferred from BLMIS to Sentry.   *See* 11 U.S.C. § 550(a) (providing that estate property may be recovered from subsequent transferee); 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property …").   Put differently, under 11 U.S.C. § 550(a), the Trustee must show not only that the initial transfer was avoidable, but that also that the initial transfer was subsequently transferred to the defendant.   *Picard v. Shapiro* (*In re Madoff*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Bernstein, J.) ("*Shapiro*"); *see also In re Generation Res. Holding Co, LLC*, 964 F.3d 958, 965 (10th Cir. 2020) (holding that the trustee may recover from a subsequent transferee only the property or value of the property that was transferred in the initial transfer).

To meet this burden, the complaint must plead facts showing "more than a sheer possibility" that each transfer was once BLMIS customer property.   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   As Judge Bernstein explained in *Shapiro*, the Trustee must allege facts that support the inference that the funds at issue originated with BLMIS and contain the

21

"necessary vital statistics"—the "who, when, and how much" of the transfers—to establish that an

entity was a subsequent transferee of the funds.  *Shapiro*, 542 B.R. at 119 (dismissing complaint

because it did not "tie any initial transfer to any subsequent transfer or [s]ubsequent [t]ransferee");

*see also In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (dismissing

preference claim because the factual allegations in the complaint failed to tie the transfers at issue

to amounts received by supposed transferees).

Consequently, to state a claim under section 550(a), "the plaintiff has the burden of tracing

funds it claims to be property of the estate." *Silverman v. K.E.R.U. Realty Corp. et al.* (*In re Allou

Distribs., Inc.*), 379 B.R. 5, 30 (S.D.N.Y. 2007) (citation omitted); *see also Lyon v. Eiseman et al.*

(*In re Forbes*), 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) ("[I]t is generally the [t]rustee's burden

to trace the funds he claims are property of the estate.").  It is evident from the Amended Complaint

that the Trustee has made no effort whatsoever to trace the subsequent transfers that he alleges

were sent from Sentry to ZCM to the receipt by Sentry of initial transfers from BLMIS.  Thus, as

an initial matter, because the Trustee has not adequately alleged that the funds transferred to ZCM

originated with BLMIS, the Amended Complaint should be dismissed in its entirety.

Second, the pleadings in this action and in related cases, of which this Court may—and

should—take judicial notice, demonstrate conclusively that the amount of funds the Trustee alleges

were subsequent transfers of customer property far exceeds the amount of customer property

Sentry actually received from BLMIS.  As a result, the Trustee's allegations that ZCM and other

subsequent transferee defendants received customer property are to a large extent impossible, not

merely implausible, and therefore the allegations in the Amended Complaint are insufficient to

meet the pleading requirements under *Iqbal* and *Twombly*.

Finally, the documents that have been submitted to the Court in the Trustee's pleadings in

22

this and related proceedings demonstrate that some 40% of the funds alleged to have been subsequently transferred to ZCM from Sentry could not possibly have originated with BLMIS. Consequently, the Court should, at a minimum, dismiss those portions of the Amended Complaint consisting of allegations about subsequent transfers to ZCM as to which it can be conclusively demonstrated based on the pleadings could not have comprised customer property.

### A.     The Trustee Does Not Adequately Allege That the Funds Transferred to ZCM Originated with BLMIS.

The Amended Complaint fails to make the connections required to "tie any initial transfer to any subsequent transfer or [s]ubsequent [t]ransferee." *Shapiro*, 542 B.R. at 119.   Although the Amended Complaint attaches a 75-page exhibit that purports to include 18 years' worth of BLMIS-to-Sentry initial transfers— many of which fall well outside the statute of limitations for six-year transfers, *see* Compl., Ex. E, and a list of the alleged subsequent transfers of funds from Sentry to ZCM, *see id*., Ex. F, it does not specify which, if any, of the initial transfers of BLMIS funds the Trustee alleges Sentry subsequently transferred to ZCM.   Instead, the Trustee alleges baldly that "a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant ZCM," and that "[b]ased on the Trustee's investigation to date, approximately $24,491,791 of the money transferred from BLMIS to Sentry[8] was subsequently transferred from Sentry to Defendant ZCM." Compl. ¶ 49.   Essentially, the Trustee is asking the Court to infer that because Sentry invested most of its funds in BLMIS and BLMIS transferred a large amount of money to Sentry over a long period of time, then any and all money that went from Sentry to ZCM must have come from BLMIS.   But to merely state the

---

[8] As discussed above, pursuant to the Stipulation, this sum has been reduced to $21,247,755, because claims to recover three alleged subsequent transfers from Sentry to ZCM prior to May 9, 2003, totaling $3,244,036 have been dismissed from the case. *See* Stipulation ¶¶ 3-4. The Trustee has indicated he has dismissed or will dismiss from all the subsequent transferee actions any claims to recover subsequent transfers from Sentry that pre-date May 9, 2003.

Trustee's premise in this regard is to show that it is not nearly sufficient for the Trustee to meet his pleading burden with regard to the ZCM subsequent transfers.

Nor can the Trustee's pleading failure be excused for lack of information or by the need for discovery.    By virtue of the document-sharing provisions of the Fairfield Settlement Agreement, the Trustee had access to Sentry's books and records for over a decade before amending the complaint in this action.    *See* Fairfield Settlement Agreement ¶ 14 (providing that the Trustee and Liquidators "each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims"); *see also id.* (Fairfield Liquidators "agree to provide reasonable cooperation and assistance" to the Trustee "in connection with the prosecution of the Sharing Claims").  This case is therefore nothing like *Picard v. Merkin et al.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), where this Court granted the trustee "greater latitude" in pleading in circumstances in which the trustee faced special "difficulties" owing to the fact that "defendants commingled their assets, transferring their funds into and out of each other's accounts," with the result that "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." *Merkin*, 515 B.R. at 151.  To the contrary, the Trustee has had every piece of data he needs to determine whether an alleged subsequent transfer contains customer property, and from which initial transfer that subsequent transfer originates, but he has failed to so allege, because, as discussed below, performing that analysis would demonstrate that the Trustee is seeking to claw back billions of dollars to which he is not entitled.

The Trustee's failure to allege precisely which subsequent transfers to ZCM contain customer property, and from which initial transfer(s) such transfers originate, is grounds for dismissal.  *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 709, 723

(2d Cir. 2013) (affirming dismissal and finding "such imprecise pleading is particularly inappropriate . . . where the plaintiffs necessarily have access, without discovery, to . . . specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Office, Inc.*, No. 18-1317, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

### B.    The Trustee's Allegations are Mathematically Implausible, if Not Impossible.

The Trustee alleges that BLMIS transferred "approximately $3 billion" to Sentry in the six years preceding the bankruptcy petition. *See* Compl. ¶ 44. But the Trustee seeks to "recover" at least $5.3 billion in total, comprised, at a minimum, of: (i) a total of over $800 million in alleged subsequent transfers made by Sentry to its own related entities, Fairfield Sigma and Fairfield Lambda;[9] (ii) an aggregate of over $3.5 billion of alleged subsequent transfers made to dozens of defendants, across approximately 80 separate adversary proceedings, who redeemed from Sentry;[10] and (iii) a total of over $1 billion allegedly paid by Sentry to the defendants in the Fairfield Greenwich Group action.[11] In other words, the Trustee is attempting to recover $2.4 billion ***more*** in subsequent transfers than he alleges BLMIS initially transferred to Sentry. As such, the Trustee's theory that all of the redemption payments are comprised of BLMIS customer property is facially implausible, if not impossible.

---

[9] *See* Froot Decl. ¶¶ 5-6, Exs. D-E (Fairfield Second Amended Compl. & Exs. 5-6 thereto) (ECF Nos. 286-1, 286-5, 286-6); Froot Decl. ¶ 7 (Table 1) (listing total transferred amounts alleged by Trustee).

[10] *See* Froot Decl. ¶ 11, Ex. H (complaints and exhibits to complaints filed by Trustee in 96 related subsequent transferee cases); ¶ 11 (Table 3) (listing adversary proceedings), ¶ 12 (Table 4) (listing total transferred amounts alleged by Trustee in each case).

[11] *See* Froot Decl., Exs. D, F (Fairfield Second Amended Complaint & Exs. 8, 10, 12, 13, 14 and 21 thereto) (ECF Nos. 286-1, 286-8, 286-10, 286-12, 286-13, 286-14, 286-21); Froot Decl. ¶ 9 (Table 2) (listing total transferred amounts alleged by Trustee).

Indeed, the Trustee's own pleadings make clear why Sentry distributed far more to its investors than BLMIS transferred to Sentry.  Sentry was receiving funds from several sources, including its own investors—not just from BLMIS—and sometimes used subscription payments from other investors to make redemption payments.  *See* Compl. ¶ 7 ("ZCM entered into a subscription agreement with Fairfield Sentry . . . and wired funds to Fairfield Sentry through a bank in New York."); Fairfield First Amended Compl. ¶ 63 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) . . . utilized subscription monies of other investors on hand.").   This is an "obvious alternative explanation" for the source of the redemption funds, which demonstrates the facial implausibility of the Trustee's claims. *Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*, No. 19-7007, 2020 WL 6323462, at \*5 (S.D.N.Y. Oct. 28, 2020).  Taken together, all of the above information, of which this Court can and should take judicial notice, leads to the inescapable conclusion that Sentry paid out redemptions to ZCM and other defendants with money that could not possibly have originated with BLMIS.

The Amended Complaint in this action does nothing to bridge the extraordinary gap between what the Trustee claims he is entitled to recover under section 550(a) as customer property received by ZCM and other defendants from Sentry, on the one hand, and the amount of customer property the Trustee pleads that Sentry received from BLMIS, on the other, rendering implausible, if not impossible, the Trustee's claim that ZCM received customer property from Sentry, thereby requiring dismissal of the Amended Complaint.

There should be no question that this Court can take judicial notice of the complaints and exhibits filed by the Trustee in related adversary proceedings or those filed by the Fairfield Liquidators, with whom the Trustee actively cooperates and shares recoveries, such as those

submitted with the Froot Declaration in support of this motion.  In deciding a motion to dismiss, a

court may take judicial notice of facts outside the pleading before it.  *Flaxer v. Giffort* (*In re Lehr

Constr. Corp.*), 528 B.R. 598, 606-07 (Bankr. S.D.N.Y. 2015).  Courts in the Southern District of

New York routinely follow this approach:

> In considering a motion to dismiss, the Court may consider documents attached as
> an exhibit thereto or incorporated by reference, and documents that are "integral"
> to plaintiff's claims, even if not explicitly incorporated by reference.  In addition,
> the Court may take judicial notice of admissions in pleadings and other documents
> in the public record filed by a party in other judicial proceedings that contradict the
> party's factual assertions in a subsequent action.

*Harris v. N.Y. State Dept. of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002) (citations

omitted); *see also Nastasi & Assoc. v. Bloomberg, L.P.*, No. 18-CV-12361, 2021 WL 3541153, at

*4 (S.D.N.Y. Aug. 11, 2021) (taking judicial notice on a motion to dismiss of admissions made in

pleadings in other cases).  On a motion to dismiss, the court may take judicial notice of documents

"integral to or explicitly relied upon in the complaint," because "lack of notice to the plaintiff is

dissipated 'where the plaintiff has actual notice . . .  and had relied upon these documents in

framing the complaint.'"  *Friedman v. Wellspring Capital* (*In re Sportco Holdings, Inc.*), Adv.

Pro. No. 20-50554, 2021 WL 4823513, at *11 (Bankr. D. Del. Oct. 14, 2021) (quotation omitted).

A bankruptcy court may take judicial notice of all the documents and pleadings filed in a

related bankruptcy case or adversary proceeding, as well as those filed in the underlying

bankruptcy case, and of the contents of those documents if not subject to dispute.  *In re Extended

Stay, Inc.*, Adv. Pro. No. 11-02254, 2020 WL 10762310, at *5 (Bankr. S.D.N.Y. Aug. 8, 2020).

Moreover, when a party requests that a court take judicial notice of documents and information

that are "not subject to reasonable dispute" or that "can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned" and "supplies the necessary

information," the court must take judicial notice.  *Richardson v. New York City Bd. of Educ.*, 711

F. App'x 11, 13-14 (2d Cir. 2017); Fed. R. Evid. 201(b), (c)(2).

    **C.**    **At Least 24 of the 36 Alleged Subsequent Transfers to ZCM— Amounting to $8.2 Million—Could Not Have Been Comprised of BLMIS Funds and Should Be Dismissed.**

    The Trustee's pleadings (including his exhibits) in this and related adversary proceedings make clear that at least $8,195,000 of the $21,247,755 in alleged subsequent transfers to ZCM— 24 of the 36 subsequent transfers alleged—could not have been comprised of BLMIS funds (*i.e.*, customer property), even reading the Amended Complaint in the light most favorable to the Trustee.  As such, at a minimum, this Court should dismiss the claims relating to those transfers, even if the claims relating to the other 12 transfers remain in the case pending further proceedings.

    The Amended Complaint repeatedly seeks to recover alleged subsequent transfers to ZCM during time periods when, according to the Trustee's own pleadings, the amounts that Sentry had paid out, all allegedly as subsequent transfers of customer property, vastly exceeded the amounts that BLMIS had transferred to Sentry to that point in time.

    First, the **three subsequent transfers** that ZCM allegedly received from Sentry between May 19, 2003 and June 18, 2003, **totaling $2,220,000**, were made when no BLMIS funds were available to plausibly comprise such transfers.  *See* Compl., Ex. F (fifth through seventh entries). According to the Trustee's own pleadings, BLMIS transferred a total of $40 million to Sentry on or after May 9, 2003 and prior to May 19, 2003 (the date of the first of these three alleged subsequent transfers to ZCM), *see* Compl., Ex. E at 19 ("CHECK WIRE" entry), and BLMIS did not make another transfer to Sentry until after June 18, 2003 (the date of the third of these three alleged subsequent transfers to ZCM).  Yet, as of May 19, 2003, Sentry had already allegedly transferred a total of $43,135,063 in customer property to ZCM and other subsequent transferees. *See* Froot Decl., Exs. E, H.  Assuming Sentry distributed initial transfer funds received from

BLMIS first, *i.e.*, before utilizing other funds received from such sources as new subscriptions,[12]

then none of the funds ZCM allegedly redeemed from Sentry via these three subsequent transfers

could, as a matter of simple arithmetic, have been derived from BLMIS funds.  Table 5 in the Froot

Declaration sets out for each of the three alleged subsequent transfers to ZCM the amount of

BLMIS funds available to Sentry following the last subsequent transfer immediately prior to the

date of the ZCM transfer involved, which for each transfer is less than zero.  *See* Froot Decl. ¶ 13

(Table 5).

Second, in the same way, the **seventeen subsequent transfers** that ZCM allegedly

received from Sentry between September 17, 2003 and March 15, 2005, **totaling $4,195,000**, were

made when no BLMIS funds were available to plausibly comprise such transfers. *See* Compl., Ex.

F (ninth through twenty-fifth entries).   According to the Trustee's own pleadings, BLMIS

transferred a total of $120 million to Sentry on or after May 9, 2003 and prior to September 17,

2003 (the date of the first of these seventeen alleged subsequent transfers to ZCM), *see* Compl.,

Ex. E at 19-20 ("CHECK WIRE" entries), and BLMIS did not make another transfer to Sentry

until after March 15, 2005 (the date of the last of these seventeen alleged subsequent transfers to

ZCM).   Yet, as of September 17, 2003, Sentry had already allegedly transferred a total of

$173,975,497 in customer property to ZCM and other subsequent transferees.  *See* Froot Decl.,

Exs. E, H.  Assuming Sentry distributed initial transfer funds received from BLMIS first, as

---

[12] This assumption is required, of course, because the Trustee specifically pleads that all the subsequent transfers it seeks to recover from all defendants in the subsequent transferee cases consist exclusively of customer property. *See, e.g.,* Compl. ¶ 2 ("With this Complaint, the Trustee seeks to recover approximately [$21,247,755] in subsequent transfers of Customer Property made to Defendants ZCM."); *id.* ¶ 49 ("approximately [$21,247,755] of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ZCM"). Consequently, each redemption necessarily reduced the amount of customer property remaining at Sentry by the amount redeemed.

discussed above, then none of the funds ZCM allegedly redeemed from Sentry via these seventeen subsequent transfers could, as a matter of simple arithmetic, have been derived from BLMIS funds. Table 6 in the Froot Declaration sets out for each of the seventeen alleged subsequent transfers to ZCM the amount of BLMIS funds available to Sentry following the last subsequent transfer immediately prior to the date of the ZCM transfer involved, which for each transfer is less than zero. *See* Froot Decl. ¶ 14 (Table 6).

Third, for the same reason, the **three subsequent transfers** that ZCM allegedly received from Sentry between April 14, 2005 and June 15, 2005, **totaling $1,530,000**, were made when no BLMIS funds were available to plausibly comprise such transfers. *See* Compl., Ex. F (twenty-sixth through twenty-eighth entries). According to the Trustee's own pleadings, BLMIS transferred a total of $295 million to Sentry on or after May 9, 2003 and prior to April 14, 2005 (the date of the first of these three alleged subsequent transfers to ZCM), *see* Compl., Ex. E at 19-23 ("CHECK WIRE" entries), and BLMIS did not make another transfer to Sentry until after June 15, 2005 (the date of the last of these three alleged subsequent transfers to ZCM). Yet, as of April 14, 2005, Sentry had already allegedly transferred a total of $943,953,990 in customer property to ZCM and other subsequent transferees. *See* Froot Decl., Exs. E, H. Assuming Sentry distributed initial transfer funds received from BLMIS first, as discussed above, then none of the funds ZCM allegedly redeemed from Sentry via these three subsequent transfers could, as a matter of simple arithmetic, have been derived from BLMIS funds. Table 7 in the Froot Declaration sets out for each of the three alleged subsequent transfers to ZCM the amount of BLMIS funds available to Sentry following the last subsequent transfer immediately prior to the date of the ZCM transfer involved, which for each transfer is less than zero. *See* Froot Decl. ¶ 15 (Table 7).

Fourth, similarly, the **subsequent transfer** that ZCM allegedly received from Sentry on

30

August 15, 2005, **in the amount of $250,000**, was made when no BLMIS funds were available to plausibly comprise such transfer. *See* Compl., Ex. F (thirtieth entry). According to the Trustee's own pleadings, BLMIS transferred a total of $380 million to Sentry on or after May 9, 2003 and prior to August 15, 2005 (the date of this alleged subsequent transfer to ZCM), *see* Compl., Ex. E at 19-23 & 54 ("CHECK WIRE" entries), and BLMIS did not make another transfer to Sentry until after that date. Yet, as of August 15, 2005, Sentry had already allegedly transferred a total of $1,252,512,059 in customer property to ZCM and other subsequent transferees. *See* Froot Decl., Exs. E, H. Assuming Sentry distributed initial transfer funds received from BLMIS first, as discussed above, then none of the funds ZCM allegedly redeemed from Sentry via this subsequent transfer could, as a matter of simple arithmetic, have been derived from BLMIS funds. Table 7 in the Froot Declaration sets out for this alleged subsequent transfer to ZCM the amount of BLMIS funds available to Sentry following the last subsequent transfer immediately prior to the date of the ZCM transfer involved, which is less than zero. *See* Froot Decl. ¶ 16 (Table 8).

Consequently, 24 out of the 36 subsequent transfers from Sentry to ZCM listed in Exhibit F to the Complaint, which the Trustee alleges consisted of customer property (BLMIS initial transfers to Sentry), totaling **$8,195,000**, or almost 40% of the funds the Trustee seeks to recover from ZCM, simply cannot be customer property. Even if the Trustee, who has had access to Sentry's records for over a decade, as well as their cooperation, was entitled to avail himself of liberal pleading rules designed for plaintiffs without access to relevant records, such allegations must be dismissed as a matter of law. *See Kennedy v. Mondelez Blob. LLC*, No. 19-CV-302, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) ("where the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [a court] may easily conclude that plaintiff's claims lack the facial plausibility necessary to survive a motion to

31

dismiss). In light of this indisputable failure of pleading, which is based entirely on the information contained in the Trustee's own complaints and exhibits in this and related adversary proceedings, this Court should—at a minimum—dismiss this portion of the Amended Complaint.[13]

## V.    THE AMENDED COMPLAINT ESTABLISHES THAT ZCM IS ENTITLED TO THE GOOD FAITH DEFENSE.

A final basis under which ZCM is entitled to dismissal is found in section 550(b), which provides that the Trustee may not recover from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). The Amended Complaint establishes that ZCM meets each element of the good faith affirmative defense, and thus the remaining claim against ZCM must be dismissed on this basis.[14]

### A.    ZCM Received the Alleged Transfers For Value.

There can be no dispute that the alleged transfers at issue, which consist of the redemption of investments in Sentry, constitute transfers "for value." In fact, it has repeatedly been held that redemption of equity shares satisfies the "for value" prong of a section 550(b) defense. *See, e.g.*, *Picard v. ABN Amro N.A.* (*In re Madoff*), Adv. Pro. No. 10-05354, 2020 WL 1584491, at *9

---

[13] Nor is there any counter-argument, previously made by the Trustee in the briefing of other motions to dismiss in related subsequent transferee cases, that these claims should survive a motion to dismiss because a trustee is entitled to seek to recover, pursuant to section 550(a)(2), from any and all subsequent transferees in order to achieve a single satisfaction of the $3 billion in fraudulent transfers allegedly received by Sentry. That principle, which is akin to joint and several liability, has absolutely no application here, where there is demonstrably no customer property for the Trustee to recover from this defendant with regard to these specific 24 alleged transfers.

[14] While the good faith defense under section 550(b) is an affirmative defense, like all affirmative defenses, it may serve as an appropriate basis for dismissal if the defense's applicability can be established on the face of the complaint. *See Standard Chartered Fin. Serv. (Luxembourg) S.A.*, 2023 WL 118787, at *7 ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint" (quoting *Pani*, 152 F.3d at 74). Here, the Trustee's allegations, accepted as true and viewed in the light most favorable to the Trustee, establish on their face that ZCM is entitled to the good faith defense under section 550(b).

(Bankr. S.D.N.Y. Mar. 31, 2020) (Bernstein, J.) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract."). The "value" that is necessary under section 550(b) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value"—nothing more than a peppercorn. *Id.* at *8 (citing 5 COLLIER ON BANKRUPTCY ¶ 550.03[1] at 550-25 (16th ed. 2019)). As this Court has held, "the 'value' element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received." *Platinum All Weather Fund Limited.*, Adv. Pro. No. 12-01697 (CGM), ECF No. 176 at p. 16.

Thus, the "for value" prong is easily satisfied on the face of the Amended Complaint, which alleged that ZCM "direct[ed] funds to be invested with New York-based BLMIS through the Feeder Funds" and that ZCM "knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds." Compl. ¶ 6. The Amended Complaint further alleges that "ZCM entered into a subscription agreement with Fairfield Sentry" and "wired funds to Fairfield Sentry" as consideration to support the contract. *Id*. ¶ 7. These allegations establish the "for value" prong of a section 550(b) defense: ZCM provided the requisite consideration in the form of wiring funds to Sentry to place the initial investments, and withdrew its investments by redeeming them in the form of the subsequent transfers it received from BLMIS. *In re Bayou Group, LLC*, 439 B.R. 284, 309 (S.D.N.Y. 2010) (providing that investors in Ponzi scheme "gave value in the form of their initial investments").

### B.   The Transfers Were Received in Good Faith.

Under recent Second Circuit precedent, ZCM also received the transfers in good faith. In *Citibank*, the Second Circuit laid out a three-step inquiry to apply when evaluating whether a

subsequent transferee received a transfer in good faith. *Citibank*, 12 F.4th at 191-92. *First*, the

Court must examine the facts the transferee subjectively knew. *Id*. at 191. *Second*, the Court must

determine whether those facts "would have led a reasonable person in the transferee's position to

conduct further inquiry into a debtor-transferor's possible fraud." *Id. Third*, the Court "must

inquire whether 'diligent inquiry'" by the alleged transferee "'would have discovered the

fraudulent purpose' of the transfer." *Id.* at 192 (citation omitted).    In other words, a transferee

is entitled to the good faith defense if the facts it knew did not put it on inquiry notice *or* if

it conducted a "reasonably diligent" investigation *and* such an investigation, viewed objectively,

could not have been expected to have uncovered the fraud.    *Id.* at 191–92.    "An objective

'reasonable person' standard applies [to the question of whether] the transferee conducted a

reasonably diligent investigation after being put on inquiry notice." *Id.* at 192 (citation omitted).

The adequacy of the investigation "naturally takes into account the disparate circumstances of

differently-situated transferees." *Id*. at 195.

> ### i.    *The facts alleged in the Amended Complaint were not sufficient to put ZCM on inquiry notice.*

With regard to the first step in the inquiry, the Amended Complaint does not include a

single allegation about ZCM's actual knowledge of Madoff's fraud at the time the transfers were

made or at any other time.    To support a claim that that a defendant was on inquiry notice, the

plaintiff must allege that the defendant at least had actual knowledge of "red flags" that could be

translated into a suspicion of fraud.    *Anwar v. Fairfield Greenwich Ltd.*, 286 F.R.D. 258, 260

(S.D.N.Y. 2012) (dismissing claims based on "red flags" where the complaint failed to "allege

facts plausibly suggesting that defendants were aware of these red flags, or that if they were aware,

they then translated those red flags into a suspicion of fraud") (citation omitted).    The Amended

Complaint does not contain a single allegation that ZCM was aware of any red flags that translated

into a suspicion of fraud.  *See id.; see also Citibank*, 12 F.4th at 191 ("[A] court must examine what facts the defendant knew; this is a subjective inquiry and not a theory of constructive notice."").[15]

> ### ii.    *The facts alleged in the Amended Complaint are insufficient to show that a reasonable person in ZCM's position would have conducted further inquiry into BLMIS's fraud.*

The second step in evaluating a defendant's knowledge asks whether the facts that were known to ZCM would have led a reasonable person in ZCM's position to conduct further inquiry into Madoff or BLMIS's fraud.  As discussed above, the Amended Complaint lacks any allegations of knowledge on ZCM's part.  Consequently, by failing to allege that ZCM had any knowledge of red flags relating to Madoff, the Trustee has also failed to show that a reasonable person in ZCM's position would have conducted further inquiry into BLMIS's fraud.

> ### iii.    *Diligent Inquiry by ZCM would not have discovered BLMIS's fraud.*

Under the third step in the evaluation of a defendant's good faith, courts "must inquire whether 'diligent inquiry'" by the alleged transferee ""would have discovered the fraudulent purpose' of the transfer." *Citibank*, 12 F.4th at 191-92 (quotation omitted).

---

[15] Even if the Amended Complaint did suggest that ZCM was aware of any red flags, this Court has previously held that "red flag" allegations, such as those recited in the Amended Complaint with respect to BLMIS, do not support an inference that defendants believed BLMIS was not actually trading securities.  *See Picard v. BNP Paribas S.A.* (*In re Madoff*), 594 B.R. 167, 199 (Bankr. S.D.N.Y. 2018) (holding that allegations that "returns of BLMIS feeder funds were too consistent," "Defendants received trade confirmations for BLMIS feeder funds above the daily high or below the daily low," "BLMIS timed trades too consistently," "BLMIS option volumes were too high," and "BLMIS made trades that were inconsistent with the SSC [split-strike conversion] Strategy" were insufficient to establish an inference that defendants believed BLMIS was not actually trading securities); *see also Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent."), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).

Although the Trustee should not be permitted to incorporate by reference the entire Fairfield Amended Complaint, as discussed in Point I above, his allegations in that pleading underscore that any further inquiry by ZCM would have been futile.    The Trustee alleges that BLMIS was highly secretive and that FGG "covered for Madoff in deliberate efforts to get investors and regulators off the scent," "needed Madoff to enrich themselves and were willing to lie to protect their relationship," and "spun information to pacify existing FGG investors and to encourage new investment." Fairfield Second Amended Compl. ¶¶ 5–6.    The Second Amended Complaint against Fairfield further alleges that FGG "protected BLMIS from inquiry," "lied to clients about BLMIS's practices," and "knowingly misled the SEC at Madoff's direction." *Id.* ¶¶ 8–9.    The Trustee asserts that every step FGG took was "a calculated effort to maintain the viability of the BLMIS Ponzi scheme despite knowing Madoff was not engaged in the trading of securities." *Id.* ¶ 10. Further support of this is found in the Trustee's own allegation that in filing fraudulent financial reports with the SEC, BLMIS "omitted the existence of billions of dollars of customer funds [it] managed through its IA Business," *id.* ¶ 68, thereby frustrating the SEC's investigation.

The fact that ZCM was not able to detect BLMIS's fraud in its role as an intermediary for its clients is hardly surprising given Madoff's "proficiency in covering up his scheme and deceiving the SEC and other financial professionals." *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010); Fairfield Second Amended Compl. ¶¶ 166, 236-62 (discussing multiple SEC investigations that failed to uncover Madoff's fraud and alleging that the feeder funds strategized with Madoff to deceive the SEC). All of these allegations, taken together, render the assertion that ZCM could have somehow discovered this highly secretive

36

and well-orchestrated Ponzi scheme that successfully duped thousands of market participants and government regulators entirely implausible.

### C.    ZCM Took the Transfers Without Knowledge of Voidability.

The last element of the good faith affirmative defense is that the transferee must take the transfer "without knowledge of the voidability" of the initial transfer. *See Brandt v. Horseshoe Hammond, LLC* (*In re Equip Acq. Res., Inc.*), 803 F.3d 835, 841-42 (7th Cir. 2015).  Because courts construe the element of "without knowledge of the voidability of the initial transfer" as the same as the good faith element, this element of the defense has also been established, as a transferee who is found to have acted in good faith is also found to be without knowledge of voidability. *Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014) ("In light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required.").

Accordingly, the Amended Complaint and the Fairfield First and Second Amended Complaints demonstrate that ZCM is a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfers, and this action should be dismissed on this basis.

## CONCLUSION

For the foregoing reasons, ZCM respectfully requests that the Court dismiss the Amended Complaint against ZCM with prejudice.[16]

---

[16] Because this action has been pending for more than a dozen years and the Trustee has had ample opportunity to amend the complaint in this action, and in fact did so as recently as April 2023, it would be inappropriate to allow the Trustee to further amend the complaint at this time, and this action should be dismissed with prejudice.   "[T]he time must arrive at some stage of every litigation when plaintiff must be required to stand upon the allegations he is asserting." *Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij*, 79 F. Supp. 38, 42 (S.D.N.Y. 1948) (denying motion for leave to file third amended complaint after action had been pending for over three years).

Dated: June 30, 2023                          **BOIES SCHILLER FLEXNER LLP**
      New York, New York

By: */s/ Steven I Froot*
Alan B. Vickery
Steven I. Froot
Andrew Villacastin
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Email: avickery@bsfllp.com
Email: sfroot@bsfllp.com
Email: avillacastin@bsfllp.com

Jenna C. Smith
30 South Pearl Street
11th floor
Albany, NY 12207
Telephone: (518) 694-4257
Email: jsmith@bsfllp.com

*Attorneys for ZCM Asset Holding Company
(Bermuda) Limited*