# EXHIBIT 31

# CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT

THIS AGREEMENT is made as of May 2, 2006
Between

**UBS Third Party Management Company S.A.**
291, route d'Arlon
L-1150 Luxembourg
(the "**Management Company**")

and

**UBS Fund Services (Luxembourg) S.A.**
291, route d'Arlon
L-1150 Luxembourg
(the "**Agent**")

and

**Luxembourg Investment Fund**
291, route d'Arlon
L-1150 Luxembourg
(the "**Fund**").

WHEREAS:

A. The Fund is an open investment company organised as *société d'investissement à capital variable* in accordance with Part I of the Luxembourg law of 20 December 2002, as amended, relating to undertakings for collective investment (the "**Law**").

B. The Management Company is authorised by the CSSF under Chapter 13 of the Law and wishes, with the consent of the Fund to appoint the Agent to provide the central administration services for the Fund. The Agent accepts this appointment with all the rights and obligations involved.
As a consequence and in accordance with the Law, the Management Company is authorised to give at any time further instructions to the Agent and to withdraw the mandate of the Agent with immediate effect when this is the interest of the Fund's investors.

C. The Agent is ready and willing to act in such capacities subject to and in accordance with the provisions of the Law and all relating regulations as amended from time to time, the provisions of the articles of incorporation of the Fund (the "**Articles of Incorporation**"), and the present agreement (the "**Agreement**").

D. Terms defined in the Agreement and not otherwise defined herein shall have the same meanings as provided in the Fund's sales prospectus (the "**Sales Prospectus**") and Articles of Incorporation.

## 1. Administrative Agent

The Management Company hereby delegates its duties to the Agent, who accepts, as administrative agent (the "**Administrative Agent**"), responsible for the execution of the following functions:

Page 1 of 15
. - Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00629
LIFVAA0000769

1.1 to prepare and send to the Fund's shareholders circulars, reports, notices, publications, powers of attorney and other documents required in the conduct of the Fund's business, to supervise such sending and to keep all relevant receipts or extracts which might be requested by the Management Company or required by the Law;

1.2 to proceed and effect all statutory publications and tax returns for the Fund, and carry out such other tasks as may be agreed upon in writing by and between the Agent and the Management Company at any given point in time;

1.3 to maintain contacts in Luxembourg with the Luxembourg supervisory authority, the Luxembourg stock exchange, the tax and other authorities in Luxembourg and, upon agreement, in the countries where the Fund is registered and/or admitted to official distribution, duly complying with any information request from above authorities, and advising the Management Company thereof.

## 2. Accounting Agent

The Management Company hereby delegates its duties to the Agent, who accepts, as accounting agent (the "**Accounting Agent**"), responsible for the execution of the following functions:

2.1 to keep the Fund's accounting and the Fund's books in accordance with customary practice and legal provisions applicable in Luxembourg.

2.2 to determine the net asset value of the Fund's shares.
The Agent shall determine the net asset value per share in accordance with the Articles of Incorporation and the Sales Prospectus. To such end, the Management Company, or as the case may be, the portfolio manager(s) shall supply, on an exceptional basis, the Agent with the prices of the securities, the exchange rates and the prices of all other securities, instruments and contracts that the Agent is unable to obtain through the usual publications or through the communication channels available to the Agent.
The Agent may request the Management Company or as the case may be, the portfolio manager(s) to furnish such other information as it shall deem expedient in order to determine the net asset value per share.
The Agent is authorised to rely on the information and prices received from the Management Company, or, as the case may be, the portfolio manager(s), or the information and prices it obtains through the usual publications or through the communication channels available to it.
The Agent may in particular have the Management Company approve any net asset value determination or calculation element.

2.3 to prepare the annual accounts, reports and financial statements in accordance with the provisions of the Law and the regulations of the Luxembourg supervisory authority.

2.4 to prepare, upon written agreement, the fiscal statements and reports in accordance with the provisions of the Law and regulations of the countries where the Fund is registered and/or admitted to official distribution.

2.5 to maintain the liaison with the Fund's auditor.

## 3. Registrar and Transfer Agent

The Management Company hereby delegates its duties to the Agent, who accepts, the function of registrar and transfer agent, as regards the issue, redemption, cancellation, transfer and conversion of

Page 2 of 15
. - Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00630

LIFVAA0000770

shares in accordance with the provisions of the Articles of Incorporation and the Sales Prospectus; arrange for the replacement of shares lost or destroyed; arrange for the division and regrouping of shares at the shareholder's request.

In such capacity, the Agent shall be responsible for the following:

3.1 Holding of the registers

The Agent shall take charge of maintaining and holding the register of the Fund's registered shares, as required by the Law and the Articles of Incorporation and/or the Sales Prospectus; of maintaining and holding the registers or lists, in the form required by the Fund, as regards conversions of certificates from one form into another; of maintaining abstracts of the dividends paid or dividends payable, for which coupons have not been submitted, as regards both registered and bearer shares; of the holding of all other registers that may be required by the Law or the holding of which was agreed with the Fund.

3.2 Redemption, cancellation, transfer and conversion of shares

The Agent will arrange for the issue, transfer, allotment, and redemption of shares in accordance with the Articles of Incorporation and the Prospectus and in responding to requests for the same.

The Agent will determine as of each day which is specified as being a Valuation Date (as defined by the Prospectus), and provided that the determination of the net asset value of the Fund has not then been suspended:

   (a)   the number of and amount payable on the issue of shares to be issued and allotted;
   (b)   the number of, and amount payable in respect of, shares to be redeemed; and
   (c)   if applicable, the number of shares to be converted from or into a class into or from another class of the Fund.

3.3 Availability of the Fund's certificates

It is the Fund's duly appointed custodian bank that shall arrange for the keeping of the inventories of the Fund's non-issued certificates, representing registered or bearer shares, for the taking and keeping of bearer or registered certificates submitted by the shareholders for redemption, replacement, conversion or transfer, in accordance with the provisions of the Articles of Incorporation and the Law, for the taking and keeping of those certificates and other documents that might be submitted in relation with any of the above operations; for the issuing, following valid instructions, of bearer or registered certificates, representing the Fund's shares, either by means of a new issue to shareholders or by replacing or converting other certificates in accordance with the provisions of the Articles of Incorporation and the Law.

3.4 Money Laundering prevention

The Agent may at any time request from the distributors of the Fund shares, if any, the assurance for compliance with the rules set out by Luxembourg law regarding the prevention of money laundering and particularly the law of 19 February 1973 regarding the sale of medicinal substances and the fight against drug addiction and the laws of 5 April 1993 regarding the financial sector and of 12 November 2004 on the fight against money laundering and terrorist financing, as respectively amended from time to time, and any regulation issued by Luxembourg government or supervisory authorities. In addition to the above, the Agent shall identify subscribers provided their subscriptions are not received by the Agent via:

LIF 00631
LIFVAA0000771

3.4.1 An intermediary of the financial sector domiciled in a country which imposes an identification obligation on that financial intermediary equivalent to that required under Luxembourg law for the prevention of money laundering, or

3.4.2 An intermediary whose parent company is subject to an identification obligation equivalent to that required by Luxembourg law and where the law applicable to the parent company imposes an equivalent obligation on its subsidiaries.

3.5 Late Trading and Market Timing prevention

To prevent as far as possible, market timing and late trading practices to occur, the Agent has implemented a policy according to which subscription and redemption applications must be registered by the Agent by no later than 16:00 (Central European Time) on a business day (the "**cut-off time**").

The Agent will process subscription, redemption and conversion orders received from investors before the cut-off time. Any order received after such cut-off time will be treated the next business day and the Agent will apply the price based on the next applicable NAV.

Further, in order to avoid issues in relation with orders received after the cut-off time, the Agent will, in principle, refuse to accept orders from intermediaries received after the cut-off time. The Agent will not control that contractual undertakings exist between the Management Company and the intermediaries and will not be held responsible for any practices of such intermediaries that would amount to late trading or market timing.

Exception may be considered by the Agent upon receipt of proper instruction from the Management Company and under its sole responsibility. In any case, the Agent could not be held responsible should it appear that such exceptions amount to late trading or market timing practices.

The Agent is not responsible for checking whether late trading and/or market timing practices are conducted by any distribution intermediaries appointed by the Management Company or the Fund's main distributor(s).

**4. Domiciliation Agent**

In its capacity as Domiciliation Agent, the Agent shall receive all announcements, notices, correspondence, telegrams, telexes, telephone or other communications addressed to the Fund or the Management Company; take note of their contents and act upon them in accordance with the provisions of the Fund's Articles of Incorporation, Sales Prospectus and the Law.

**5. Other Support Services**

5.1 In accordance with the requirements of the Law, the Management Company has appointed persons responsible for effectively conducting the business of the Management Company (the "**Managers**"). The Managers will perform the duties and functions imposed on them by the Law and CSSF Circular 03/108. The Management Company shall notify the Agent of the identity of the Managers approved by the Supervisory Authority and appointed by the Management Company. Any change in Managers shall be notified to the Agent forthwith.

5.2 The Agent authorises the Management Company to select certain of its employees to act as Managers in accordance with the provisions of Appendix 1 to this Agreement.

LIF 00632
LIFVAA0000772

5.3 The Agent will support the Managers in the performance of their duties by providing the supporting services more fully described in Appendix 2 to this Agreement.

5.4 The Agent shall seek to it that a sufficient number of staff is at all the time available to the Management Company and its Managers for the purpose of providing the supporting services referred to in section 5.2 above.

## 6. General provisions

6.1 Proper Instructions

The expression proper instructions (the "**Proper Instruction(s)**") means any signed written document, computer transmission, telex or facsimile transmission, sent by any Director(s) of the Management Company or purporting to be signed by a Director of the Management Company or (unless the Agent is notified by the Directors otherwise) by one or more authorised officer(s) or designated agents of any other person or persons designated in writing by the Board of Directors of the Management Company (the "**Authorized Person(s)**") to issue such Proper Instructions. Authorized Persons shall deposit their specimen signatures (the "**Authorized Signature(s)**") with the Agent. The Agent may solely rely on such specimen, irrespective of any entries in commercial registries or other official publications. The Authorised Signatures are valid as long as the Agent has not received a contrary written statement.

In case the Agent accepts upon request of the Management Company oral Proper Instructions, it is explicitly agreed that the statements of the Agent conclusively prove that the transactions mentioned thereon have been fulfilled in accordance with oral orders from the Management Company. The same principles shall apply for Proper Instructions transmitted to the Agent by telex, fax or similar means of communication other than an original written document. To eliminate duplication all written confirmations of previous oral Proper Instructions must clearly refer to the latter.

The Management Company shall deposit the signature(s) of its statutory representative(s) or authorised signatories. The Agent may solely rely on such specimen, irrespective of any entries in commercial registries or other official publications. A certified copy (any copy certified to be a true copy by one of the following authorities/institutions: ambassador, consulate, notary, local police; the "**Certified Copy**") of a resolution of the Management Company's Board of Directors must be received by the Agent as conclusive evidence of the authority of any person to give Proper Instructions.

The Agent shall not be liable for Proper Instructions, which the Agent shall have accepted in good faith as being Proper Instructions. The Agent shall not be liable for accepting, and shall be fully protected in relying upon any Proper Instruction believed by it to be genuine and to have been properly executed by or on behalf of the Management Company.

The Agent is not obliged to execute a Proper Instruction of the Fund or the Management Company if the Agent believes that to do so will or may contravene any legal provisions governing commercial companies, the Articles of Incorporation, the right of establishment, any other law or regulation, any relevant market practice, administrative practice, the Agent's general business practice and/or public order or policy. The Agent shall not be liable to the Fund or the Management Company for not executing such a Proper Instruction.

LIF 00633
LIFVAA0000773

If the Agent, in good faith, executes a Proper Instruction of the Management Company which contravenes any legal provisions governing commercial companies, the Articles of Incorporation, the right of establishment, any other law or regulation, any relevant market practice, administrative practice, the Agent's general business practice and/or public order or policy, the Agent shall not be liable to the Fund or the Management Company for doing so. The Management Company shall hold the Agent harmless for any loss, claim, liability or expense asserted against or imposed upon the Agent as a result of any such contravention.

The Agent may likewise proceed following telephone proper instructions, given by persons appointed in writing by the Management Company. Such telephone instructions shall also be deemed as Proper Instructions. The Agent shall agree on a procedure to confirm the telephone orders in writing and the Management Company shall hold the Agent harmless from and against any and all risks connected with said proper instructions. The Management Company further gives the Agent full discharge with regard to executing such instructions even should said Proper Instructions be fraudulently transmitted by third persons.

A Certified Copy of a resolution of the Board of Directors of the Management Company may be accepted by the Agent as evidence of the powers granted to such person to enable him/her to issue Proper Instructions and may be deemed to remain in force until notice of the opposite has been received.

6.2 The Agent shall be entitled:
6.2.1 To levy a remuneration
In consideration of the services rendered hereby:
- the Agent shall be entitled to levy, by debiting the Fund's account, the commissions fixed in Appendix 3;

- if provided for in Appendix 2, the Management Company shall reimburse the Agent for all expenses such as telex, cablegram, international telephone communications, facsimile transmission and mailing expenses incurred by the same in the performance of its obligations as set forth herein.

6.2.2 To be held harmless
The Fund and the Management Company shall hold the Agent, the Agent's administrators, employees and other officers, harmless against any costs, damages and expenses directly or indirectly resulting from these persons' performance as Agent of the Fund, in pursuance hereof and following valid instructions, save in the event of gross negligence or serious misdemeanour by the Agent or its administrators, employees or officers.

6.2.3 To use computer assistance
Notwithstanding the statutory provisions on the subject, the Agent shall be authorised to keep all records and all other documents on computer, and, at all events, to submit, as proof in litigation, copies and reproductions of such documents using photographic, photostatic or computer means.

6.3 Assistance of the Management Company
The Management Company and its service provider(s), mainly the portfolio manager(s) and/or the portfolio adviser(s), will provide the Agent with all information and documents necessary for the Agent

LIF 00634
LIFVAA0000774

to properly perform its duties or deliver these information or documents upon first request. In case of non-delivery of the requested information and documents, the Agent is authorized not to execute and/or book any transaction subject to prior notice to the Management Company.

6.4 Obligations of the Agent

The Agent shall keep all documents and records pertaining to its activities as set forth herein, for a period of ten years, and after such time, before destroying the said documents or records, it shall offer to deliver the same to the Management Company.

Throughout the duration of the Agreement, the Agent shall duly comply with all the obligations deriving from the Proper Instructions received from the Management Company, as laid down herein, aimed at undertaking the functions stemming from this Agreement, to suitably assure the due course and efficient administration of the Fund's operations and activities, provided that the instructions are in accordance with the Articles of Incorporation, the Sales Prospectus and the Law.

The Agent and its staff shall keep strictly confidential any information regarding the Fund, the Management Company, the Fund's shareholders and the activity of the Fund and Management Company.

6.5 Use of the name and corporate logo of UBS AG, UBS Group and UBS Fund Services (Luxembourg) S.A.

The Fund and the Management Company agree not to use the name or corporate logo of UBS AG, UBS Group, UBS Fund Services (Luxembourg) S.A. for publicity in any document, publication or publicity material, including but not limited to prospectuses, notices, circulars, sales literature, stationery, advertisements, etc. without the prior written consent of the Agent, acting on behalf of UBS AG, UBS Group or UBS Fund Services (Luxembourg) S.A.

6.6 Duration and Termination

The Agreement is concluded for an unlimited duration.

The Agreement may be terminated without vindication at any time by the Agent or the Management Company by giving three months notice in a registered letter addressed to the other party. Before the prior notice is expired, the Management Company shall indicate the name of a new agent that shall assume the functions as agent.

The Agreement may be terminated with immediate effect at any time by the Agent or the Management Company in the case of a serious breach, as described in this article, by means of a registered letter sent to the Agent or the Management Company. Any such letter to the Management Company shall be sent to the members of the Board of Directors of the Management Company, inasmuch as they are not partners or members of the staff of the Agent or its affiliating group companies. Failing this, the registered letter shall be addressed to the person or address previously designated for such purpose by the Management Company.

The following shall be, among others, considered as a serious breach in the sense of the Agreement:
- non-compliance by the Agent or the Management Company with its legal or regulatory obligations;

Page 7 of 15
. - Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00635
LIFVAA0000775

- non-compliance by the Agent or the Management Company with its statutory and contractual obligations such as defined in the Agreement, in particular, but not only, failure by the Fund to pay the commissions as specified in article 5.2.1. of the Agreement, and its appendices, forming an integral part of the Agreement;

- any modification of the corporate object of the Fund or the Management Company and any modification of the composition of the corporate organs and of the beneficial owners of the Fund without the previous written information of the Agent;

- failure to remit the documents and information which are deemed necessary by the Agent in order to enable the Agent to fulfil its obligations;

- failure to immediately inform the Agent by registered mail of the existence of a lawsuit or of any other element which might have an adverse effect on the business or reputation of the Fund or the Management Company or on the reputation of the Agent.

The Agent is authorised to render public and to notify the termination of the Agreement to third parties.

As promptly as practicable, the Management Company shall advise the Fund's shareholders, as efficiently as possible, of the notice, or notice of termination, and the date on which the Agent shall cease to act in such capacity.

In case the Agent's expenses have not yet been assessed, the Agent is free to make an appraisal thereof without prejudice of a subsequent reassessment of the actual expenses. The Fund authorises the Agent to charge the Fund's account with the appraised expenses. The Agent is entitled to withhold all of the Fund's files until full settlement of the commissions payable to the Agent.

The Agent hereby undertakes to hand over the corporate files of the Fund (e.g. books, ledgers, registers, documents, contracts, agreements or other documents) to the members of the Board of Directors of the Management Company, provided they are not partners or members of the staff of the Agent or its affiliating group companies, or to any other person who can prove to be henceforth the new agent of the Fund.

In case that at the time of the termination of the Agreement the Management Company fails to accept delivery of the books or other documents held by the Agent for account of the Fund, the Agent shall be authorised to deposit these documents at the expense of the Fund with another central administration. The Agent will be discharged from any liability with regard to the safekeeping of such books and documents.

6.7 Assignment
The Agreement shall not be assigned by either party save with the prior written consent of the other party.

6.8 Notices
Any notice given thereunder shall be made by sending the same by registered mail, telegram, cable, telex or facsimile confirmed in each case by a signed copy sent forthwith by registered mail or by delivering the same by hand; such notice shall be addressed, dispatched or delivered (as the case may be) to the following addresses:

Page 8 of 15
. - Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00636

LIFVAA0000776

Notices to the Management Company:
**UBS Third Party Management Company S.A.**
291, route d'Arlon,
L-1150 Luxembourg
Phone: +352/44 10 10 - 1
Fax: +352/44 10 10 - 62 49

Notices to the Fund:
**Luxembourg Investment Fund**
291, route d'Arlon,
L-1150 Luxembourg
Phone: +352/44 10 10 - 1
Fax: +352/44 10 10 - 62 49

Notices to the Agent:
**UBS Fund Services (Luxembourg) S.A.**
291, route d'Arlon,
L-1150 Luxembourg
Phone: +352/44 10 10 - 1
Fax: +352/44 10 10 - 62 49

The above-mentioned addresses may be changed by simple notice of such change from one party to the other party.

Any notice sent by post, telegram, cable, telex, facsimile or by hand as provided in this clause shall be deemed to have been given upon receipt. Failure to receive any confirmation of any notice duly given by post, telegram, cable, telex or facsimile shall not invalidate such notice.

6.9  Liability

The Agent shall not be held responsible for the non-performance of any task, whenever such lack of performance arises from a default on the part of the Fund or the Management Company, its corporate bodies, employees, officers, managers and its shareholders.

Except in case of wilful misconduct or serious breach, the Fund or the Management Company discharge the Agent of any liability, action or claim of whatever nature, which may be initiated or directed against the Agent within the framework of the execution of the Agreement. The Fund and the Management Company undertake to indemnify the Agent for any damages caused to it in the execution of the Agreement, and for any engagement or expenses incurred by it, including without limitation establishment expenses, publication costs, taxes, duties, travel expenses, mail expenses and any other expenses.

The Agent will not have any other obligations than those described in Article 1 to 5 with the exception of obligations provided by the Law or any regulations issued by the Luxembourg supervisory authority, if not otherwise agreed in writing by both parties.

Notwithstanding the CSSF Circular 2002/77, the Agent, its principals, members and employees shall not be liable for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed or not performed hereunder for an aggregate amount in excess of the fees paid by the Fund to the Agent under this Agreement for a period covering the last twelve months before the event(s) happened.

LIF 00637
LIFVAA0000777

6.10 Waiver, Modifications, etc.
Should one or several clauses of the Agreement be or become invalid, ineffective or void, the remaining clauses would not be affected and should be interpreted or completed in a way as to maintain the economic aim as exactly as possible in a legally allowable way. This is also relevant for gaps that would need to be completed.

Should the revisions or amendments to the Agreement become necessary, the parties shall undertake to make adjustments taking into consideration their mutual interest. Any and all modifications and amendments to the Agreement or the appendices mentioned herein must be in writing and duly signed by all the parties. The appendix(ces) listed below shall constitute an integral part of the Agreement.

6.11 Governing law, governing language
The Agreement shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg. The legal basis for this Agreement is the law of 20 December 2002 on undertakings for collective investment, as amended, the regulations issued by the Supervisory Authority, as well as the provisions of the Fund's current Sales Prospectus and Articles of Incorporation.

In the event of the Fund becoming involved in a litigation, the Agent shall furnish all information it holds and that the Fund believes might be of some assistance in the final determination of the proceedings.

6.12 Jurisdiction
Should prior amicable settlement between parties come to fail, any legal action or proceedings arising out of or in connection with the Agreement, the parties hereto submit to the exclusive jurisdiction of the District Court of Luxembourg, ("Tribunal d'Arrondissement") Grand Duchy of Luxembourg.

6.13 Confidentiality
Unless required to do so by any applicable law or by any regulatory or supervisory authority or by any other person entitled by law to require disclosure, or to enable the proper performance of its obligation above, neither party hereto shall disclose to any other person any information related to the businesses, investment finances or other matters of a confidential nature of the other party hereto of which it may become aware and in possession in the course of its duties.

6.14 Effective date
The present Agreement established in three originals, replaces the former Central Administration Agreement dated December 8, 2004 concluded between the Fund and the Agent, and becomes effective as of May 2, 2006.

LIF 00638
LIFVAA0000778

Luxembourg, May 2, 2006                              UBS Third Party Management Company S.A.

Luxembourg, May 2, 2006                              UBS Fund Services (Luxembourg) S.A.

Luxembourg, May 2, 2006                              Luxembourg Investment Fund

<u>List of Appendices:</u>

Appendix 1:          Managers
Appendix 2:          List of Supporting Services
Appendix 3           Remuneration



LIF 00639

LIFVAA0000779

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**APPENDIX I- MANAGERS**

- The Agent will provide the Management Company with a list of employees of the Agent who are qualified to effectively conduct the business of the Management Company.

- The Management Company will have the right to select two employees whose names appear on the list to act as Managers of the Management Company.

- The remuneration of the Agent for allowing employees to act as Managers of the Management Company is included in the remuneration of the Agent determined in section 6.2.1 and Appendix 3 of this Agreement.

- The Managers will not receive any remuneration from the Management Company or the Fund for their mandates as Managers of the Management Company.

This appendix, established in three originals, becomes effective on the below date.

Luxembourg, May 2, 2006                     UBS Third Party Management Company S.A.

Luxembourg, May 2, 2006                     UBS Fund Services (Luxembourg) S.A.

Luxembourg, May 2, 2006                     Luxembourg Investment Fund

Page 12 of 15
- Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00640
LIFVAA0000780

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**APPENDIX II - LIST OF SUPPORTING SERVICES**

The Agent will support the Managers in the performance of their duties by a specifically designated team of staff divided in three different departments and performing the functions described below:

1.  Legal

The Managers will be supported by a specialist legal team covering:
- Fund set-up;
- Drafting of documentation (prospectus, articles of incorporation etc.);
- Filing of documentation with regulatory authorities;
- Legal services (domiciliation, board meetings etc.);

2.  Products control (investment restrictions; NAV calculations)

The activities and responsibilities of product control are:
- Testing, set-up and maintenance of the SPICE application;
- Daily plausibility controls, before publication, of the NAV price variations versus reference benchmark variations;
- Daily & periodic controls of the funds investment restrictions and policy (legal, prospectus,...);
- Ad hoc a priori compliance review/analysis for new specific investments;
- Compliance advisor to UBS internal or external clients (portfolio managers, promoters, etc);
- Relationship with external auditors or Luxembourg Supervisory Authorities (CSSF) regarding Product Compliance Management;
- Preparation of Management response to the Management letters issued by the external auditors and being sent to the CSSF;
- CSSF reporting following Circular CSSF 02/77 (Material NAV calculation error or active breach of investment restrictions).

3.  Compliance and Risk Control (C&RC)

The C&RC role is divided in two areas:
- Corporate Compliance;
- Product Compliance & Risk Control.

Under Corporate Compliance the C&RC shall perform the following functions:
- Ensure the legal/regulatory compliance of the corporate structure by identifying potential risk areas linked to legal/regulatory obligations and initiate/monitor the implementation of rectifying /preventing measures;
- Analyses, dispatching and follow-up of implementation of new circulars, laws, regulations and group policies;
- Owner of the corporate guidelines and procedures manual;
- Owner of the complaint entry, notifying, follow-up and filing process;

LIF 00641
LIFVAA0000781

- Central Point of contact for CSSF and State Prosecutor (Corporate and AML issues).

Under the Product Compliance & Risk Control area the C&RC shall perform the following functions:

- Ensure for both UBS proprietary & PL funds the Internal & external product compliance assistance & analysing risk profile of new investment instruments, new fund concepts, relationship PM, auditors, CSSF;
- Define investment risk controls to be implemented by Fund in coordination with the respective IM&R/ Portfolio Manager Risk Controlling entities/external risk monitoring service providers;
- Validation of the results;
- CSSF reporting following Circular CSSF 02/77;
- Functional management of Product Control.

Under this area of responsibilities the C&RC assists in the delegated functions monitoring which involves:

- Implementation of a standardised screening process for delegated tasks;
- Screening and monitoring of delegated task in accordance with industry standards;
- Defining, gathering, analysing the key performance & quality indicators for services;
- Centralised "Risk Controls UCITS III" reporting to Managers and CSSF.

This appendix, established in three originals, becomes effective on the below date.

Luxembourg, May 2, 2006          UBS Third Party Management Company S.A.

Luxembourg, May 2, 2006          UBS Fund Services (Luxembourg) S.A.

Luxembourg, May 2, 2006          Luxembourg Investment Fund

Page 14 of 15
- Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00642
LIFVAA0000782

**NICHT MEHR GÜLTIG**

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**APPENDIX III - REMUNERATION**

In consideration of its administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes excluded), payable monthly in arrears by the Management Company.

**Fee structure:**

| | |
|---|---|
| Luxembourg Investment Fund – Amares Strategy Fund-Balanced | 0.150 % per annum |
| Luxembourg Investment Fund – US Equity Plus | 0.050 % per annum |
| Luxembourg Investment Fund – Secofind Income | 0.065 % per annum |
| Luxembourg Investment Fund – Secofind Value | 0.065 % per annum |

This appendix, established in three originals, becomes effective on the below date.

Luxembourg, May 2, 2006        _____
                                UBS Third Party Management Company S.A.

Luxembourg, May 2, 2006        _____
                                UBS Fund Services (Luxembourg) S.A.

Luxembourg, May 2, 2006        _____
                                Luxembourg Investment Fund

Page 15 of 15
- Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00643
LIFVAA0000783

NICHT MEHR GÜLTIG

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**Luxembourg Investment Fund**
**APPENDIX III - REMUNERATION**

In consideration of its administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes excluded), payable monthly in arrears by the Management Company.

**Fee structure:**

| Sub-fund | Fee |
|---|---|
| Luxembourg Investment Fund – Amares Strategy Fund-Balanced | 0.150 % per annum |
| Luxembourg Investment Fund – US Equity Plus | 0.050 % per annum |
| Luxembourg Investment Fund – Secofind Income | 0.065 % per annum |
| Luxembourg Investment Fund – Secofind Value | 0.065 % per annum |
| Luxembourg Investment Fund – Global Opportunities | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |
| Luxembourg Investment Fund – Alpha Strategies | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |

(1) for a volume of assets under custody ranging from EUR 0 to EUR 50,000,000.-
(2) for a volume of assets under custody ranging from EUR 50,000,001.- to EUR 100,000,000.-
(3) for a volume of assets under custody ranging from EUR 100,000,001.- to EUR 200,000,000.-
(4) for a volume of assets under custody above EUR 200,000,001.-

This appendix, established in three originals, becomes effective as from October 1, 2007 (except for the above sub-fund Alpha Strategies whose effective date shall be January 2, 2008) and replaces the Appendix III dated May 2, 2006.

Luxembourg, September 28, 2007        UBS Third Party Management Company S.A.

Luxembourg, September 28, 2007        UBS Fund Services (Luxembourg) S.A.

Luxembourg, September 28, 2007        Luxembourg Investment Fund

Page 1 of 1
- Central Administration and Domiciliation Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00644
LIFVAA0000784

NICHT MEHR GÜLTIG

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**Luxembourg Investment Fund**
**APPENDIX III - REMUNERATION**

In consideration of its administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes excluded), payable monthly in arrears by the Management Company.

**Fee structure:**

| | |
|---|---|
| Luxembourg Investment Fund – Amares Strategy Fund-Balanced | 0.150 % per annum |
| Luxembourg Investment Fund – US Equity Plus | 0.050 % per annum |
| Luxembourg Investment Fund – Secofind Income | 0.065 % per annum |
| Luxembourg Investment Fund – Secofind Value | 0.065 % per annum |
| Luxembourg Investment Fund – Global Opportunities (*) | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |
| Luxembourg Investment Fund – Alpha Strategies (*) | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |

(1) for a volume of assets under custody ranging from EUR 0 to EUR 50,000,000.-
(2) for a volume of assets under custody ranging from EUR 50,000,001.- to EUR 100,000,000.-
(3) for a volume of assets under custody ranging from EUR 100,000,001.- to EUR 200,000,000.-
(4) for a volume of assets under custody above EUR 200,000,001.-

(*) A minimum of EUR 30,000.- p.a. shall be charged to the sub-fund Luxembourg Investment Fund – Global Opportunities and a minimum of EUR 30,000.- p.a. shall be charged as well to the sub-fund Luxembourg Investment Fund – Alpha Strategies.

This Appendix, established in three originals, cancels and replaces the Appendix III dated September 28, 2007. This Appendix is effective as from October 1, 2007 (except for the sub-fund Luxembourg Investment Fund – Alpha Strategies whose effective date is January 2, 2008).

Luxembourg, August 8, 2008          UBS Third Party Management Company S.A.

Luxembourg, August 8, 2008          UBS Fund Services (Luxembourg) S.A.

Page 1 of 2
- Central Administration and Domiciliation Agreement – amendment to Appendix III – Luxembourg Investment Fund

LIF 00645

LIFVAA0000785

Luxembourg, August 8, 2008

_____
Luxembourg Investment Fund

Page 2 of 2
- Central Administration and Domiciliation Agreement – amendment to Appendix III – Luxembourg Investment Fund

LIF 00646
LIFVAA0000786

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT dated May 2, 2006**
**Luxembourg Investment Fund**
**APPENDIX III - REMUNERATION**

In consideration of its administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes excluded), payable monthly in arrears by the Management Company.

**Fee structure:**

| | |
|---|---|
| Luxembourg Investment Fund – Amares Strategy Fund-Balanced | 0.150 % per annum |
| Luxembourg Investment Fund – US Equity Plus | 0.050 % per annum |
| Luxembourg Investment Fund – Global Opportunities (*) | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |
| Luxembourg Investment Fund – Alpha Strategies (*) | 0.10 % per annum (1)<br>0.07 % per annum (2)<br>0.06 % per annum (3)<br>0.05 % per annum (4) |

(1) for a volume of assets under custody ranging from EUR 0 to EUR 50,000,000.-
(2) for a volume of assets under custody ranging from EUR 50,000,001.- to EUR 100,000,000.-
(3) for a volume of assets under custody ranging from EUR 100,000,001.- to EUR 200,000,000.-
(4) for a volume of assets under custody above EUR 200,000,001.-

(*) A minimum of EUR 30,000.- p.a. shall be charged to the sub-fund Luxembourg Investment Fund – Global Opportunities and a minimum of EUR 30,000.- p.a. shall be charged as well to the sub-fund Luxembourg Investment Fund – Alpha Strategies.

This Appendix, established in three originals, cancels and replaces the Appendix III dated October 1st, 2007. This Appendix is effective as from November 15th, 2008.

Luxembourg, November 15th, 2008      **UBS Third Party Management Company S.A.**

Luxembourg, November 15th, 2008      **UBS Fund Services (Luxembourg) S.A.**

Luxembourg, November 15th, 2008      **Luxembourg Investment Fund**

Page 1 of 2
- Central Administration and Domiciliation Agreement – amendment to Appendix III – Luxembourg Investment Fund

LIF 00647

LIFVAA0000787