# EXHIBIT 32

NICHT MEHR GÜLTIG

# CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT

THIS AGREEMENT is made as of December 8, 2004

between

**Luxembourg Investment Fund**
291, route d'Arlon
L-1150 Luxembourg
(the "**Fund**")

and

**UBS Fund Services (Luxembourg) S.A.**
291, route d'Arlon
L-1150 Luxembourg
(the "**Agent**").

WHEREAS:

A. The Board of Directors of the Fund has selected the Agent to act as central administration for the Fund. The Agent accepts this appointment with all the rights and obligations involved.

B. The Agent is ready and willing to act in such capacities subject to and in accordance with the provisions of the Luxembourg law of 20 December 2002 relating to undertakings for collective investment (the "**Law**") and all relating regulations as amended from time to time, and the present agreement (the "**Agreement**").

C. The Fund qualifies as a "Société d'Investissement à Capital Variable" (SICAV) pursuant to Part 1 of the Law.

D. Terms defined in the Agreement and not otherwise defined herein shall have the same meanings as provided in the Fund's sales prospectus (the "**Sales Prospectus**").

## 1. Administrative Agent

The Fund hereby appoints the Agent, who accepts, as administrative agent (the "**Administrative Agent**"), responsible for the execution of the following functions:

1.1 to prepare and send to the Fund's shareholders abstracts, circulars, reports, notices, publications, powers of attorney and other documents required by the course of the Fund's business, to supervise such sending and to keep all relevant receipts or extracts which might be requested by the Fund or required by the Law;

1.2 to proceed and effect all statutory publications and tax returns for the Fund, and carry out such other tasks as may be agreed upon in writing by and between the Agent and the Fund at any given point in time;

1.3 to maintain contacts in Luxembourg with the Luxembourg supervisory authority, the Luxembourg stock exchange, the tax and other authorities in Luxembourg and, upon agreement, in the countries where the Fund is registered and/or admitted to official distribution, duly complying with any information request from above authorities, and advising the Fund thereof.

## 2. Accounting Agent

The Fund hereby appoints the Agent, who accepts, as accounting agent (the "**Accounting Agent**"), responsible for the execution of the following functions:

2.1 to keep the Fund's accounting and the Fund's books in accordance with customary practice and legal provisions applicable in Luxembourg.

2.2 to determine the net asset value of the Fund's shares.

The Agent shall determine the net asset value per Share in accordance with the Sales Prospectus. To such end, the Board of Directors or as the case may be, the portfolio manager(s) shall supply, on an exceptional basis, the Agent with the prices of the securities, the exchange rates and the prices of all other values that the Agent is unable to obtain through the usual publications or through the communication channels available to the Agent.

The Agent may request the Fund or as the case may be, the portfolio manager(s) to furnish such other information as it shall deem expedient in order to determine the net asset value per Share.

The Agent is authorised to rely on the indications received from the Fund, or, as the case may be, the portfolio manager(s), or the ones it obtains through the usual publications or through the communication channels available to it.

The Agent may in particular have the Fund approve any net asset value determination or calculation element.

2.3 to prepare the annual accounts, reports and financial statements in accordance with the provisions of the Law and the regulations of the Luxembourg supervisory authority.

2.4 to prepare, upon written agreement, the fiscal statements and reports in accordance with the provisions of the Law and regulations of the countries where the Fund is registered and/or admitted to official distribution.

2.5 to maintain the liaison with the Fund's auditor.

### 3. Registrar and Transfer Agent

The Fund hereby entrusts to the Agent, who accepts, the function of registrar and transfer agent, as regards the issue, redemption, cancellation, transfer and conversion of shares in accordance with the provisions of the Sales Prospectus; arrange for the replacement of shares lost or destroyed; arrange for the division and regrouping of shares at the shareholder's request.

In such capacity, the Agent shall be responsible for the following:

3.1 Holding of the registers
The Agent shall take charge of maintaining and holding the register of the Fund's registered shares, as required by the Law and/or the Sales Prospectus; of maintaining and holding the registers or lists, in the form required by the Fund, as regards conversions of certificates from one form into another; of maintaining abstracts of the dividends paid or dividends payable, for which coupons have not been submitted, as regards both registered and bearer shares; of the holding of all other abstracts or registers that may be required by the Law or the holding of which was agreed with the Fund.

3.2 Redemption, cancellation, transfer and conversion of shares
The Agent will arrange for the issue, transfer, allotment, and redemption of shares in accordance with the Prospectus and in responding to requests for the same.

The Agent will determine in the name and on behalf of the Fund, as of each day which is specified as being a Valuation Day (as defined by the Prospectus) in relation to the Fund, and provided that the determination of the net asset value of the Fund has not then been suspended:

(a) the number of and amount payable on the issue of all shares to be issued and allotted; and

(b) the number of, and amount payable in respect of, all shares to be redeemed.

3.3 Availability of the Fund's certificates
It is the Fund's duly appointed custodian bank that shall arrange for the keeping of the inventories of the Fund's non-issued certificates, representing registered or bearer shares, for the taking and keeping of bearer or registered certificates submitted by the shareholders for redemption, replacement, conversion or transfer, in accordance with the provisions of the Articles of Incorporation and the Law, for the taking and keeping of those certificates and other documents that might be submitted in relation with any of the above operations; for the issuing, following valid instructions, of bearer or registered certificates, representing the Fund's shares, either by means of a new issue to shareholders or by replacing or converting other certificates in accordance with the provisions of the Sales Prospectus or the Law.

3.4 Money Laundering prevention

The Agent may at any time request from the distributors of the Fund shares, if any, the assurance for compliance with the rules set out by Luxembourg law regarding the prevention of money laundering and particularly the law of 7 July 1989 modifying the law of 19 February 1973 regarding the sale of medicinal substances and the fight against drug addiction and the laws of 5 April 1993 and of 11 August 1998 regarding the financial sector, as respectively amended from time to time, and any regulation issued by Luxembourg government or supervisory authorities. In addition to the above, the Agent shall identify subscribers provided their subscriptions are not received by the Agent via:

- an intermediary of the financial sector domiciled in a country which imposes an identification obligation on that financial intermediary equivalent to that required under Luxembourg law for the prevention of money laundering.

or

- an intermediary whose parent company is subject to an identification obligation equivalent to that required by Luxembourg law and where the law applicable to the parent company imposes an equivalent obligation on its subsidiaries.

3.5 Late Trading / Market Timing prevention

To prevent as far as possible, market timing and late trading practices to occur, the Agent has implemented a policy according to which subscription and redemption applications must be registered by the Agent by no later than 4:00 pm Luxembourg time (cut-off-time) on a Luxembourg business day.

The Agent will ensure that subscription, redemption and conversion orders are received from investors before the above mentioned cut-off time. Any order received after such cut-off time will be treated the next business day and the Agent will apply the price based on the next applicable NAV.

Furthermore and in order to avoid issues in relation with orders received after the cut-off time, the Agent will refuse to accept orders from intermediaries received after the cut-off time. The Agent will not control that contractual undertakings exist between the Fund and the intermediaries and will not be held responsible for any practices of such intermediaries that would amount to late trading or market timing.

Exception may be considered by the Agent upon reception of proper instruction from the Board of Directors of the Fund and under its sole responsibility. In any case, the Agent could not be held responsible should it appear that such exceptions amount to late trading or market timing practices.

The Agent is not responsible for checking whether no late trading and/or market timing is being done or accepted by any distribution intermediaries appointed by the Fund or the Fund's main distributor(s).

## 4. Domiciliation Agent

4.1 The Agent allows the Fund to establish its registered office at the Agent's address located at 291, route d'Arlon, in Luxembourg. The Agent shall act as the Fund's Domiciliation Agent.

4.2 In its capacity as Domiciliation Agent, the Agent shall exclusively perform the following duties:
- receive all announcements, notices, correspondence, telegrams, telexes, telephone or other communications addressed to the Fund; take note of their contents and act upon them in accordance with the provisions of the Fund's Articles of Incorporation and the Law.
- provide the premises for the Fund's Board or other meetings convened in Luxembourg.

## 5. General provisions

5.1 Proper Instructions

The expression proper instructions (the "**Proper Instruction(s)**") means any signed written document, computer transmission, telex or facsimile transmission, sent by any Director(s) of the Fund or purporting to be signed by a Director of the Fund or (unless the Agent is notified by the Directors



LIF 00650
LIFVAA0000790

Pg 5 of 11

otherwise) by one or more authorised officer(s) or designated agents of any other person or persons designated in writing by the Board of Directors of the Fund (the **"Authorized Person(s)"**) to issue such Proper Instructions. Authorized Persons shall deposit their specimen signatures (the **"Authorized Signature(s)"**) with the Agent. The Agent may solely rely on such specimen, irrespective of any entries in commercial registries or other official publications. The Authorised Signatures are valid as long as the Agent has not received a contrary written statement.

In case the Agent accepts upon request of the Fund oral Proper Instructions, it is explicitly agreed that the statements of the Agent conclusively prove that the transactions mentioned thereon have been fulfilled in accordance with oral orders from the Fund. The same principles shall apply for Proper Instructions transmitted to the Agent by telex, fax or similar means of communication other than an original written document. To eliminate duplication all written confirmations of previous oral Proper Instructions must clearly refer to the latter.

The Fund shall deposit the signature(s) of its statutory representative(s) or authorised signatories. The Agent may solely rely on such specimen, irrespective of any entries in commercial registries or other official publications. A certified copy (any copy certified to be a true copy by one of the following authorities/institutions: ambassador, consulate, notary, local police; the **"Certified Copy"**) of a resolution of the Fund's Board of Directors must be received by the Agent as conclusive evidence of the authority of any person to give Proper Instructions.

The Agent shall not be liable for Proper Instructions which the Agent shall have accepted in good faith as being Proper Instructions. The Agent shall not be liable for accepting, and shall be fully protected in relying upon any Proper Instruction believed by it to be genuine and to have been properly executed by or on behalf of the Fund.

The Agent is not obliged to execute a Proper Instruction of the Fund if the Agent believes that to do so will or may contravene any legal provisions governing commercial companies, the right of establishment, any other law or regulation, the articles of association of the Fund, any relevant market practice, administrative practice, the Agent general business practice and/or public order or policy. The Agent shall not be liable to the Fund for not executing such a Proper Instruction.

If the Agent, in good faith, executes a Proper Instruction of the Fund which contravenes any legal provisions governing commercial companies, the right of establishment, any other law or regulation, the articles of association of the Fund, any relevant market practice, administrative practice, the Agent's general business practice and/or public order or policy, the Agent shall not be liable to the Fund's Board of Directors for doing so. The Fund shall hold the Agent harmless for any loss, claim, liability or expense asserted against or imposed upon the Agent as a result of any such contravention.

The Agent may likewise proceed following telephone proper instructions, given by persons appointed in writing by the Fund. Such telephone instructions shall also be deemed as Proper Instructions. The Agent shall agree on a procedure to confirm the telephone orders in writing and/or the Management shall hold the Agent harmless from and against any and all risks connected with said proper instructions. The Fund further gives the Agent full discharge with regard to executing such instructions even should said Proper Instructions be fraudulently transmitted by third persons.

A Certified Copy of a resolution of the Board of Directors of the Fund may be accepted by the Agent as evidence of the powers granted to such person to enable him/her to issue Proper Instructions and may be deemed to remain in force until notice of the opposite has been received.

5.2 The Agent shall be entitled:

5.2.1 To levy a remuneration
In consideration of the services rendered hereby:

- the Agent shall be entitled to levy, by debiting the Fund's account, the commissions fixed in Appendix 1.

- if provided for in Appendix 1, the Fund shall reimburse the Agent for all expenses such as telex, cablegram, international telephone communications, facsimile transmission and mailing expenses incurred by the same in the performance of its obligations as set forth herein.

5.2.2 To be held harmless



LIF 00651

LIFVAA0000791

The Fund shall hold the Agent, the Agent's administrators, employees and other officers, harmless against any costs, damages and expenses directly or indirectly resulting from these persons' performance as Agent of the Fund, in pursuance hereof and following valid instructions, save in the event of gross negligence or serious misdemeanour by the Agent or its administrators, employees or officers.

5.2.3  To use computer assistance
Notwithstanding the statutory provisions on the subject, the Agent shall be authorised to keep all records and all other documents on computer, and, at all events, to submit, as proof in litigation, copies and reproductions of such documents using photographic, photostatic or computer means.

5.3 Assistance of the Fund
The Fund and its service provider(s), mainly the portfolio manager(s) and/or the portfolio adviser(s), will provide the Agent with all information and documents necessary for the Agent to properly perform its duties or deliver these information or documents upon first request. In case of non-delivery of the requested information and documents, the Agent is authorized not to execute and/or book any transaction subject to prior notice to the Fund.

5.4 Obligations of the Agent
The Agent shall keep all documents and records pertaining to its activities as set forth herein, for a period of ten years, and after such time, before destroying the said documents or records, it shall offer to deliver the same to the Fund.

Throughout the duration of the Agreement, the Agent shall duly comply with all the obligations deriving from the proper instructions received from the Fund, as laid down herein, aimed at undertaking the functions stemming from this Agreement, to suitably assure the due course and efficient administration of the Fund's operations and activities, provided that the instructions are in accordance with the articles of incorporation, the Sales Prospectus and the Law.

The Agent and its staff shall keep strictly confidential any information regarding the Fund, its shareholders and its activity. Also refer to point 5.13.

5.5 Use of the name and corporate logo of UBS AG, UBS Group and UBS Fund Services (Luxembourg) S.A.
The Fund agrees not to use the name or corporate logo of UBS AG, UBS Group, UBS Fund Services (Luxembourg) S.A. for publicity in any document, publication or publicity material, including but not limited to prospectuses, notices, circulars, sales literature, stationery, advertisements, etc. without the prior written consent of the Agent, acting on behalf of UBS AG, UBS Group or UBS Fund Services (Luxembourg) S.A.

5.6 Duration and Termination
The Agreement is concluded for an unlimited duration.

The Agreement may be terminated without vindication at any time by either party by giving three months notice in a registered letter addressed to the other party. Before the prior notice is expired, the Fund shall indicate the name of a new agent that shall assume the functions as agent.

The Agreement may be terminated with immediate effect at any time by either party in the case of a serious offence pursuant to the respective provisions stipulated in this article, by means of a registered letter sent to the registered office of the Agent and to the members of the Board of Directors of the Fund, inasmuch as they are not partners or members of the staff of the Agent or its affiliating group companies. Failing this, the registered letter shall be addressed to the person or address previously designated for such a purpose by the Fund.

The following shall be, among others, considered as a serious offence in the sense of the Agreement:

- non-compliance by either party with its legal or regulatory obligations
- non-compliance by either party with its statutory and contractual obligations such as defined in the Agreement, in particular, but not only, failure by the Fund to pay the commissions as specified in article 5.2.1. of the Agreement, and its appendices, forming an integral part of the Agreement

Page 5 of 9
. - Central Administration Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00652
LIFVAA0000792

- any modification of the corporate object of the Fund and any modification of the composition of the corporate organs and of the beneficial owners (i.e. promoter) of the Fund without the previous written consent of the Agent
- failure to remit the documents and information which are deemed necessary by the Agent in order to enable the Agent to fulfil its obligations
- failure to immediately inform the Agent by registered mail of the existence of a lawsuit or of any other element which might have an adverse effect on the reputation of the Fund.
- The Agent is authorised to render public and to notify the termination of the Agreement to third parties.

In the event that for whatever reason the delivery of the above registered letter is impossible, the termination shall come into force on the day of its registration with the Luxembourg "Trade and Companies Registrar".

As promptly as practicable, the Fund shall advise the Fund's shareholders, as efficiently as possible, of the notice, or notice of termination, and the date on which the Agent shall cease to act in such capacity.

In case the Agent's expenses have not yet been assessed, the Agent is free to make an appraisal thereof without prejudice of a subsequent reassessment of the actual expenses. The Fund authorises the Agent to charge the Fund's account with the appraised expenses. The Agent is entitled to withhold all of the Fund's files until full settlement of the commissions payable to the Agent.

The Agent hereby undertakes to hand over the corporate files of the Fund (e.g. books, ledgers, registers, documents, contracts, agreements or other documents) to the members of its Board of Directors, provided they are not partners or members of the staff of the Agent or its affiliating group companies, or to any other person who can prove to be henceforth the new agent of the Fund.

In case that at the time of the cancellation of the Agreement the Fund fails to accept delivery of the books or other documents held by the Agent for account of the Fund, the Agent shall be authorised to deposit these documents at the expense of the Fund with another central administration. The Agent will be discharged from any liability with regard to the safekeeping of such books and documents.

5.7 Assignment
The Agreement shall not be assigned by either party save with the prior written consent of the other party.

5.8 Notices
Any notice given thereunder shall be made by sending the same by registered mail, telegram, cable, telex or facsimile confirmed in each case by a signed copy sent forthwith by registered mail or by delivering the same by hand; such notice shall be addressed, dispatched or delivered (as the case may be) to the following addresses:

Notices to the Fund:
**Luxembourg Investment Fund**
**c/o UBS Fund Services (Luxembourg) S.A.**
291, route d'Arlon,
L-1150 Luxembourg
Phone: +352/44 10 10 - 1
Fax: +352/44 10 10 - 62 49

Notices to the Agent:
**UBS Fund Services (Luxembourg) S.A.**
291, route d'Arlon,
L-1150 Luxembourg
Phone: +352/44 10 10 - 1
Fax: +352/44 10 10 - 62 49

LIF 00653
LIFVAA0000793

The above-mentioned addresses may be changed by simple notice of such change from respectively the Fund or the Agent to the other party.

Any notice sent by post, telegram, cable, telex, facsimile or by hand as provided in this clause shall be deemed to have been given upon receipt. Failure to receive any confirmation of any notice duly given by post, telegram, cable, telex or facsimile shall not invalidate such notice.

5.9 Liability

The Agent shall not be held responsible for the non-performance of any task, whenever such lack of performance issues from a default on the part of the Fund, its corporate bodies or its shareholders.

Except in case of wilful misconduct or serious offence, the Fund discharges the Agent of any liability, action or claim of whatever nature, which may be initiated or directed against the Agent within the framework of the execution of the Agreement. The Fund undertakes to keep the Agent free and without loss from any damages caused by it in the execution of the Agreement, and from any engagement or expenses incurred by it, including without limitation establishment expenses, publication costs, taxes, duties, travel expenses, mail expenses and any other expenses.

The Agreement is the sole authentic text between the two parties. In addition to the provisions of Article 1 to 4 with the exception of obligations provided by the Law or any regulations issued by the Luxembourg supervisory authority, the Agent will not have any other obligations and does under no circumstances accept any liability relating to, if not explicitly agreed in writing by both parties.

Notwithstanding the CSSF Circular 2002/77, the Agent, its principals, members and employees shall not be liable for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed or not performed hereunder for an aggregate amount in excess of the fees paid by the Fund to the Agent under this Agreement for a period covering the last twelve months before the event(s) happened.

5.10 Waiver, Modifications, etc.

Should one or several clauses of the Agreement be or become invalid, ineffective or void, the remaining clauses would not be affected and should be interpreted or completed in a way as to maintain the economic aim as exactly as possible in a legally allowable way. This is also relevant for gaps that would need to be completed.

Should the revisions or amendments to the Agreement become necessary both parties shall undertake to make adjustments taking into consideration their mutual interest. Any and all modifications and amendments to the Agreement or the appendices mentioned herein must be in writing and duly signed by both parties. The appendix(ces) listed below shall constitute an integral part of the Agreement.

5.11 Governing law, governing language

The Agreement shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg. The legal basis for the Agreement is the law of 20 December 2002 on undertakings for collective investment, the regulations issued by the Luxembourg governmental supervisory authority, as well as the provisions of the Fund's current sales prospectus and articles of incorporation.

In the event of the Fund becoming involved in a litigation, the Agent shall furnish all information it holds and that the Fund believes might be of some assistance in the final determination of the proceedings.

5.12  Jurisdiction

Should prior amicable settlement between parties come to fail, any legal action or proceedings arising out of or in connection with the Agreement, the parties hereto submit to the exclusive jurisdiction of the District Court of Luxembourg, ("Tribunal d'Arrondissement") Grand Duchy of Luxembourg.

5.13  Confidentiality

Unless required to do so by any applicable law or by any regulatory or supervisory authority or by any other person entitled by law to require disclosure, or to enable the proper performance of its obligation above, neither party hereto shall disclose to any other person any information related to the businesses, investment finances or other matters of a confidential nature of the other party hereto of which it may become aware and in possession in the course of its duties.



5.14    Effective date

The present Agreement, established in two originals, replaces the Agreement dated of March 12, 2004 and will come into force on December 8, 2004.

Luxembourg, December 8, 2004                Luxembourg Investment Fund

Luxembourg, December 8, 2004                UBS Fund Services (Luxembourg) S.A.

List of Appendices:

Appendix I:    Remuneration

LIF 00655

LIFVAA0000795

*NICHT MEHR GÜLTIG*

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT DATED DECEMBER 8, 2004**
**APPENDIX I - REMUNERATION**

In consideration of the administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes included), payable monthly in arrears by the Fund.

- Luxembourg Investment Fund – Top World Equities         0,10 % p.a.
- Luxembourg Investment Fund – Top World Bonds            0,10 % p.a.
- Luxembourg Investment Fund – Amares Strategy Fund Balanced   0,15 % p.a.
- Luxembourg Investment Fund – Primary Global             0,15 % p.a.
- Luxembourg Investment Fund – Global Growth              0,10%

This Appendix, established in two originals, becomes effective as of December 8, 2004.

Luxembourg Investment Fund                UBS Fund Services (Luxembourg) S.A.

*[signatures]*

LIF 00656
LIFVAA0000796

NICHT MEHR GÜLTIG

---

**CENTRAL ADMINISTRATION AND DOMICILIATION AGREEMENT DATED DECEMBER 8, 2004**
**APPENDIX I - REMUNERATION**

---

In consideration of the administration and domiciliation services, the Agent is entitled to the commissions detailed below, calculated as a percentage per year of the average net assets of each sub-fund of the Fund (all taxes included), payable monthly in arrears by the Fund.

- Luxembourg Investment Fund – Top World Equities         0,10 % p.a.
- Luxembourg Investment Fund – Top World Bonds            0,10 % p.a.
- Luxembourg Investment Fund – Amares Strategy Fund Balanced   0,15 % p.a.
- Luxembourg Investment Fund – Primary Global             0,15 % p.a.
- Luxembourg Investment Fund – Global Growth              0,10 % p.a.
- Luxembourg Investment Fund – US Equity Plus             0,05 % p.a.

This Appendix replaces the Appendix dated December 8, 2004 and enters into force on August 18, 2005.

_____                    _____
Luxembourg Investment Fund                    UBS Fund Services (Luxembourg) S.A.

Page 1 of 1
. - Central Administration Agreement - UBS Fund Services (Luxembourg) S.A.

LIF 00657
LIFVAA0000797