# EXHIBIT 34

May 2, 2006


UBS THIRD PARTY MANAGEMENT COMPANY S.A.


and


LUXEMBOURG INVESTMENT FUND

---

# MANAGEMENT COMPANY SERVICES AGREEMENT

---

LIF 00505

LIFVAA0000645

- 2 -

**AN AGREEMENT** signed on May 2, 2006, effective on the same day.

**BETWEEN:**

**LUXEMBOURG INVESTMENT FUND**, a société d'investissement a capital variable subject to Part I of the Luxembourg law of 20th December, 2002 relating to undertakings for collective investment (the "Law") and having its registered office at 291, Route d'Arlon, L-1150 Luxembourg (hereinafter called the "Fund") of the first part and;

**UBS THIRD PARTY MANAGEMENT COMPANY S.A.**, a management company incorporated under the laws of the Grand Duchy of Luxembourg and having its registered office at 291, Route d'Arlon, L-1150 Luxembourg (hereinafter called "ManCo") of the second part.

**WHEREAS:**

**A.**   The Fund is incorporated as an investment company with multiple Sub-funds under Luxembourg law.

**B.**   ManCo qualifies as management company under chapter 13 of the Law and, as such, is authorized by the Luxembourg supervisory authority to manage undertakings for collective investment qualifying as UCITS under the Law.

**C.**   The Fund wishes to designate ManCo and ManCo agrees to act as the management company to the Fund and generally administer the business and affairs of the Fund upon the terms and conditions herein mentioned.

**D.**   All references herein to the Fund shall, as appropriate, be to the Fund or to the different sub-funds.

**WHEREBY IT IS AGREED AND DECLARED** as follows:

**1.   Interpretation**

**1.1**   In this Agreement the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:

**"Articles"** means the Articles of Incorporation for the time being of the Fund and any reference herein to an Article shall be taken to refer to the Articles unless otherwise specified;

**"Affiliate"** means any entity controlled by, controlling, or under common control with ManCo, whether directly or indirectly (for the purpose of this definition, "control" means ownership of more than 50% of the voting securities of any entity or the ability to elect a majority of the board of directors or other governing body of such entity);

LIF 00506

LIFVAA0000646

**"Auditors"** means Ernst & Young S.A. having its registered office at 7, Parc d'Activité Syrdall, L-5365 Munsbach and acting in its capacity as Auditors of the Fund or any other audit firm appointed from time to time by the Fund to act as auditor of the Fund;

**"Business Day"** means a day on which banks will be open for business in Luxembourg;

**"Custodian"** means such company as appointed by the Fund to the capacity of custodian of the Investments of the Fund;

**"Delegate"** means a person, firm or company to whom ManCo's functions hereunder are delegated pursuant to Clause 11;

**"Directors"** means the Board of Directors of the Fund including any duly appointed committee thereof;

**"Investments"** means the assets and rights from time to time of the Fund held or to be held in accordance with the Articles (including any application monies which may be or become returnable to any applicant for Shares);

**"Laws"** means the laws of Luxembourg (including the Law) and any other applicable laws and regulations for the time being in force including without limitation any relevant notices and guidelines of the relevant supervisory authority then in force;

**"Proper Instructions"** means written, cabled, telefaxed or telexed instructions in respect of any of the matters referred to in this Agreement signed or purporting to be signed by such one or more person or persons as the Directors shall from time to time have authorised to give the particular class of instructions in question. In instances indicated in advance by the Directors, ManCo may also act pursuant to telephonic instructions given by designated persons and such telephonic instructions shall be deemed to be "Proper Instructions" within the meaning of this definition provided that such telephonic instructions are promptly confirmed in writing to ManCo. Different persons may be authorised to give instructions for different purposes and such persons may also include officers of corporations other than the Fund so authorised by the Directors. A certified copy of a resolution of the Directors may be received and accepted by ManCo as conclusive evidence of the authority of any such person to act and may be considered as in full force and effect until receipt of written notice to the contrary;

**"Shares"** means shares in the Fund;

**"Shareholder"** means the holder of a Share.

LIF 00507

LIFVAA0000647

- 4 -

**1.2**   Any reference to the Fund, ManCo or the Custodian includes a reference to its or their duly authorised agents or delegates.

**1.3**   References to Clauses are to Clauses of this Agreement.

**1.4**   The headings to the Clauses of this Agreement are for convenience only and shall not affect the construction or interpretation thereof.

**1.5**   Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Articles PROVIDED THAT any alteration or amendment of the Articles shall not be effective for the purposes of this Agreement unless any party hereto affected (to the extent that its rights or duties hereunder are affected by such alteration or amendment) shall, by endorsement hereon or otherwise, have consented thereto.

## 2.  Appointment of ManCo

The Fund HEREBY APPOINTS ManCo and ManCo shall act with effect from the date hereof or the specified effective date as management company of the Fund upon the terms hereinafter contained and in accordance with the Laws, the Articles and the investment objective and policies of the sub-funds of the Fund generally for the time being determined by the Directors until its appointment shall be terminated as hereinafter provided and ManCo hereby accepts such appointment and agrees to assume the obligations set forth herein.

## 3.  Documents and Information to be delivered to ManCo

**3.1**   The Fund will deliver, or cause to be delivered, forthwith to ManCo all documents and papers necessary under the Laws, under the Articles and as may be required for the due performance of the duties of ManCo under this Agreement.

**3.2**   The Fund will deliver, or cause to be delivered, to ManCo a copy of the offering prospectus published by the Fund as amended or completed from time to time (the "Prospectus").

**3.3**   The Fund shall provide, or cause to be provided, to ManCo a list of its directors and a copy of their identity card or passport. The Fund shall further notify ManCo of any changes to the composition of its Board of Directors and provide, or cause to be provided, to ManCo a copy of the identity card or passport of any newly appointed Director.

**3.4**   The Fund shall immediately inform ManCo of any actual or impending legal disputes in which it is involved.

## 4.  Domiciliary Services

As domiciliary agent, ManCo shall have and perform the following duties:

LIF 00508

LIFVAA0000648

- 5 -

4.1   to authorise the Fund to establish its registered office at ManCo.

4.2   to forward all correspondence and documents it receives for the Fund to the Custodian, any Delegate and/or the Directors, if the context or nature thereof so requires.

## 5.   Investment Management Services

During the continuance of its appointment ManCo shall (subject to the overall policy and supervision of the Directors) have full power, authority and right to perform and/or at their complete discretion to procure to be performed all duties as may be requisite for the proper and efficient conduct of the business and offices of the Fund and in particular:

5.1   ManCo shall manage the investment and re-investment of the Investments with a view to achieving the then current investment objective and policies and the investment restrictions of the sub-funds of the Fund from time to time laid down by the Directors but shall not carry out the general administration of the Fund.

5.2   ManCo shall keep or cause to be kept on behalf of the Fund such books, records and statements expressed in such currencies as may be necessary to give a complete record of all transactions carried out by ManCo on behalf of the Fund and such other books, records and statements as may be required by the Laws and the Articles and as may be necessary to give a complete record of all other transactions carried out by ManCo on behalf of the Fund and shall permit the Fund and its employees and agents and the Auditors to inspect such books, records and statements at all reasonable times.

5.3   Without limitation to the general powers given to ManCo under this Clause ManCo shall have and is hereby granted the authority, power and right for the account and in the name of the Fund but subject to the supervision of the Directors:

(1)   to issue orders and instructions with respect to the acquisition and disposition of the Investments of the Fund;

(2)   to purchase (or otherwise acquire), sell (or otherwise dispose of) and invest in the Investments for the account of the Fund and effect foreign exchange transactions on behalf of the Fund and for the account of the Fund in connection with any such purchase, other acquisition, sale or other disposal or the protection of the value of Investments including shares or units of an undertaking for collective investment operated, advised or managed by ManCo or an Affiliate;

(3)   to enter into, make and perform all contracts, agreements and other undertakings as may in the opinion of ManCo be necessary or advisable or incidental to the carrying out of the objectives of this Agreement in accordance

LIFVAA0000649

- 6 -

with the rules, regulations and practices of relevant markets. ManCo may deal on such markets or exchanges and effect, arrange or clear transactions through or with any person, firm or company that ManCo may select including an Affiliate;

(4) to negotiate in accordance with the instructions of the Directors all borrowing arrangements of the Fund and to supervise the implementation of such arrangements;

(5) to issue instructions, notices, statements, certificates, directions or orders, receive notices and other documentation for the Custodian and generally to perform all such functions as are envisaged to be performed by the Fund or ManCo;

(6) to effect transactions in securities the issue of which is or has, within twelve months of the date of the transaction, been underwritten, managed or arranged by an Affiliate.

5.4    ManCo shall observe and comply with the Laws, with the Articles and with the applicable provisions of any Prospectus or other such document relating to the Fund distributed from time to time on behalf of the Fund and all resolutions of the Directors of which it has notice and other lawful orders and directions given to it from time to time by the Directors in the form of Proper Instructions, and all activities engaged in by ManCo hereunder shall at all times be subject to the control of and review by the Directors and without limiting the generality of the foregoing the Directors may from time to time:

(1) prohibit ManCo from investing in any Investment or in any currency or country or with any institution;

(2) require ManCo to sell any Investment or (subject to the availability of funds) to purchase any Investment other than for its own account;

(3) define the investment policy of the Fund and specify the manner in which they wish ManCo to give effect to such policy within approved limits;

(4) instruct ManCo as to the exercise of the rights attached to the Investments managed by ManCo and ManCo shall procure that any person, firm or company to whom it delegates any of its functions hereunder shall give effect to all such decisions.

5.5    Subject to the terms of this Agreement, to such orders and directions as may from time to time be given by the Directors and to the overall policy and supervision of the Directors, in exercising its rights and carrying out its duties hereunder ManCo is authorised to act for the Fund and on the Fund's behalf either itself or wholly or in part through its Delegates in the same manner and with the same force and effect as the Fund might or could do.

LIF 00510

LIFVAA0000650

- 7 -

**5.6** All rights of voting conferred by Investments shall be exercised in such manner as ManCo may determine in the best interest of the Fund (subject to clause 5.4) and subject as aforesaid ManCo may in its absolute discretion refrain from the exercise of such voting rights. ManCo shall from time to time upon written request from and at the expense of the Directors execute and deliver or, if appropriate, cause to be executed and delivered by the Custodian, to ManCo or its nominees such powers of attorney or proxies authorising such attorney or proxies to exercise any rights conferred by, or otherwise act in respect of all or any part of the Investments.

## 6.  Administrative and Listing Agency Services

ManCo shall perform for the Fund all administration functions required by the Law and, in particular, the administration functions set forth in Annex II to such Law.

## 7.  Registrar and Transfer Agency Services

**7.1**  Maintenance of Records
ManCo will keep safely and maintain in current form, as required by Law, the register of shareholders of the Fund, records of dividends paid, and will maintain and keep safely such other records as may be required or requested by proper instructions from time to time and as may further be required by Law.

**7.2**  Disposition of Certificates
ManCo will keep safely all certificates representing Shares, if any; will accept or keep certificates tendered for exchange, replacement, conversion or transfer by the holders thereof in accordance with the provisions of the Prospectus, the Articles and the requirements of the Law; will accept and keep safely such forms and documents as may be submitted to it in connection with any such tender; will deliver as agent, subject to the conditions set forth hereafter, certificates representing shares of the Fund, if any, whether by way of original issue to new shareholders or in exchange, replacement, conversion or further to a transfer subject to the provisions of the Prospectus, of the Articles and the Law.

**7.3**  Subscriptions
ManCo will handle the processing of subscriptions to Shares in the Fund in accordance with the Prospectus and the Articles.

**7.4**  Redemption and conversion requests
ManCo will deal with redemption and conversion requests, will make payment or cause payments to be made of redemption proceeds but only after all the conditions as described in the Prospectus and Articles are fully met.

**7.5**  Conditions for Delivery
ManCo will deliver share certificates, if any, or contract notes (i) by way of original issue, or (ii) further to transfer, conversion, replacement, exchange but only after

LIF 00511

LIFVAA0000651

- 8 -

receipt (i) of good funds in payment thereof, or (ii) of contract notes for an equivalent number of Shares. Cheques, drafts and similar instruments of payment will be considered as good funds if and when collected.

**7.6    Destruction of Certificates**

ManCo will destroy share certificates, if any, which have been cancelled or which are no longer of good delivery for any reason. Such destruction shall be evidenced by an affidavit duly signed by two witnesses.

**7.7    Circulars to Registered Shareholders**

ManCo will provide and supervise services with regard to the dispatch of statements, reports, notices, announcements, proxies and other documents to the registered shareholders of the Fund and to maintain such records with regard thereto as may from time to time be required by the Fund or by Law.

**7.8    Bank Account**

ManCo will open and maintain an account or accounts in the name of the Fund with the custodian bank (subject to the rules and regulations of the custodian bank) and to deposit the moneys received from or for the Fund in such account or accounts.

## 8.    Marketing Services

**8.1    Appointment, Scope of Authority and Powers**

ManCo as management company will (i) distribute, market and promote the Fund to direct investors, distributors and agents ("Investors") in various jurisdictions (ii) solicit and transmit subscription orders for Shares from Investors, (iii) receive and transmit redemption and conversion orders, (iv) receive from Investors payment of the price for their subscription, and give valid receipt therefore, (v) where applicable allocate to Investors, on the basis of the subscription price determined from time to time by the Fund, the Shares to be issued to them as a result of their subscriptions (vi) provide Investors with such information and other services as ManCo sees fit and by any method, including through any secure electronic means that ManCo determines (vii) perform such other functions as may be agreed by the Fund and ManCo from time to time.

ManCo may determine whether or not a person is eligible to hold Shares and whether to invoke the compulsory transfer or redemption procedures laid down by the Prospectus and Articles and generally to determine whether or not a person should or should not be permitted to hold or continue to hold Shares having regard only to the relative provisions, restrictions and powers contained in the Prospectus and Articles.

ManCo may in its discretion refuse any order for a subscription of Shares received by it. ManCo shall not refuse any order for conversion or redemption of Shares unless such order does not comply with the conditions set forth in the Prospectus and Articles.

LIF  00512

LIFVAA0000652

- 9 -

**8.2**   Documents

ManCo shall have the obligation to request, to the extent required by applicable laws and regulations, from the Investors any documents necessary or useful in relation to any subscription, redemption or conversion of Shares, notably with regard to any applicable anti-money laundering provisions.

## 9. Anti-Money Laundering Measures

ManCo undertakes to:

**9.1**   comply with all applicable laws, rules, regulations and other requirements relating to anti-money laundering provisions; and

**9.2**   keep all records pertaining to any due diligence procedures for five years (or such longer period as may be required under applicable law).

## 10. Continuation of ManCo's Powers

The authorities herein contained are continuing ones and shall remain in full force and effect until revoked by termination of this Agreement as hereinafter provided, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation.

## 11. Power of Delegation

**11.1**   ManCo shall, to the extent permitted by the Law and subject to the prior approval of the relevant supervisory authority, have full power to delegate, under its control and responsibility, the whole or any part of its functions or powers hereunder to any person, firm or company (the "Delegate").

**11.2**   ManCo shall monitor on a continued basis the activities of the Delegates. The agreements to be entered into between ManCo and the Delegates must provide that ManCo can give at any time further instructions to such Delegates, and that it can withdraw their mandate with immediate effect if this is the interest of the shareholders.

**11.3**   ManCo 's liability towards the Fund under this agreement is not affected by the fact that it has delegated certain of its functions to Delegates;

**11.4**   ManCo shall see to it that, having due regard to the nature of the functions to be delegated, the Delegates are qualified and capable of undertaking the functions in question.

LIFVAA0000653

- 10 -

**11.5** The delegation may not prevent the effectiveness of supervision over ManCo and in particular, it must not prevent ManCo from acting, or the Fund from being managed, in the best interest of its shareholders.

**11.6** ManCo may delegate its investment management functions only to Delegates which are authorised or registered for the purpose of asset management and are subject to prudential supervision. ManCo shall not delegate any investment management functions to any entity whose interests may conflict with those of ManCo the Fund or its shareholders. Any delegation of investment management functions to parties other than Affiliates shall require the prior approval of the relevant Delegate by the Directors.

**11.7** ManCo shall be entitled to obtain investment and other advice from such source or sources and on such terms as it thinks fit (including, without prejudice to the generality of the foregoing, full power to appoint one or more investment advisers, approved by the Directors and the relevant supervisory authority, to advise as to the investment and re-investment of the Investments).

## 12.  Fees of ManCo

**12.1** In consideration of the services to be performed by ManCo hereunder, ManCo shall be entitled to receive a fixed fee and/or a performance fee from the Fund as agreed from time to time between the Fund and ManCo, as further detailed in Schedule II.

ManCo may receive an additional fee from the Fund as agreed from time to time between the Fund and ManCo Out of this fee, ManCo shall defray operating and administrative expenses of the Fund as may be stated in the sales documents for the Fund.

**12.2** All remuneration and other sums payable to any Delegate to whom the whole or any part of ManCo 's functions acting as management company of the Fund hereunder shall be delegated under Clause 11 shall be paid by ManCo or the Fund as may be agreed from time to time between the Fund and ManCo.

**12.3** Any fee prescribed in Clause 12.1 shall commence to accrue from the effective date of this Agreement (the "relevant day") and shall cease on the date of termination of this Agreement. If the relevant day falls otherwise than at the beginning of any month or if this Agreement shall terminate otherwise than on the last day of any calendar month, ManCo shall be entitled in respect of the part of the relevant month (which part is hereinafter called "the partial month") only to the amount which bears the same proportion to the amount calculated pursuant to Clause 12.1 above (the reference in Clause 12.1 above to "each month" being construed as a reference to "the partial month") as the number of days in the partial month bears to the number of days in the relevant month. Any performance fee accrued to the day of termination of this Agreement shall be payable to ManCo upon termination of this Agreement.

LIF 00514

LIFVAA0000654

- 11 -

**12.4** If the determination of the relevant Net Asset Value of a sub-fund of the Fund shall be suspended pursuant to the Articles on any relevant Business Day the fees payable to ManCo hereunder shall be calculated by reference to the Net Asset Value of the relevant sub-fund (as determined as aforesaid) on the last preceding Business Day on which the suspension did not apply.

**12.5** The fees prescribed in Clause 12.1 shall be payable in the respective reference currencies of the sub-funds or, where applicable, share classes.

**12.6** In the event of any dispute arising as to the amount of the ManCo's fees hereunder, the same shall be referred to the Auditors for settlement, who shall be entitled to make such adjustments as may in the circumstances appear to them to be appropriate and whose decision shall be binding and final upon the parties hereto.

**13. Expenses**

**13.1** Subject to Clause 13.2, ManCo shall pay the expenses incurred by it in connection with the performance of its services hereunder (other than those specified in Clause 13.2 unless the Fund otherwise agrees in any particular case).

**13.2** Subject to the foregoing the Fund shall pay or reimburse ManCo in respect of all out-of-pocket expenses incurred by it or any Delegate to whom the whole or any part of ManCo's functions shall be delegated under Clause 11 (other than the fees of persons who are directors of both the Fund and ManCo from time to time) in the performance of its duties including (without limitation):

**1.** all expenses of every nature of or incidental to deposits of cash made by the Fund;

**2.** any stamp and other duties, taxes, governmental charges, commissions, brokerage, transfer fees, registration fees and other charges payable in respect of the acquisition, holding or realisation of any Investment and any foreign exchange transactions carried out in connection therewith;

**3.** all taxes and corporate fees payable by the Fund to any Government or other authority or to any agency of such Government or authority;

**4.** all fees and expenses incurred in relation to the organisation of the Fund in Luxembourg, the issue of Shares, the production, printing and distribution of any prospectuses or any other similar document and the listing of the Shares on any stock exchange;

**5.** ManCo's legal and professional expenses incurred in relation to the negotiation, preparation and settling of this Agreement and the proper performance of its duties hereunder and all legal and professional expenses

LIF 00515

LIFVAA0000655

- 12 -

incurred or to be incurred in the preparation of any documents amending the provisions of this Agreement;

6.    all audit fees of the Fund and legal expenses in connection with its corporate existence, corporate and financial structure and relations with its shareholders and third parties and all other professional and other charges in respect of services rendered to the Fund at the request of the Fund;

7.    interest on and charges and expenses of the Fund of arranging, and arising out of, all borrowings made by the Fund;

8.    all expenses incurred in connection with the publication of prices of Shares;

9.    all charges for postage, telephone, telex, faxing, electronic mailing and cable incurred by ManCo in the proper performance of its duties hereunder;

10.    all costs incurred under Clause 15; and

11.    all other out-of-pocket expenses but so that the liability of the Fund is limited to expenses authorised to be paid out of the assets of the Fund by the Laws.

## 14. Liability of ManCo

14.1    ManCo shall observe and comply with the Articles and all provisions and restrictions set out in the Prospectus and the laws and regulations under which the Fund is incorporated.

14.2    ManCo shall fulfil its obligations hereunder with the diligence of a salaried agent.

14.3    ManCo shall not be liable to the Fund or any investor in the Fund or otherwise for any loss suffered by the Fund or any such investor in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless and to the extent such loss arises from failure by ManCo to fulfil or to properly fulfil its obligations or duties hereunder.

14.4    The Fund hereby undertakes to hold harmless and indemnify ManCo against all actions, proceedings, claims and liabilities and against all costs, demands and expenses (including legal and professional expenses) arising therefrom which may be brought against, suffered or incurred by ManCo by reason of its performance of its duties under the terms of this Agreement (other than to the extent due to failure by ManCo to exercise due care and diligence).

14.5    Notwithstanding any other provision of this Agreement, ManCo shall not be liable to the Fund or any shareholder of the Fund or otherwise for any taxation assessed upon or payable by the Fund wheresoever the same may be assessed or imposed and whether directly or indirectly except to the extent such taxation shall be attributable

LIFVAA0000656

- 13 -

to failure to exercise due care and diligence in the performance or non-performance by ManCo or its Delegate(s) of its obligations or duties. The Fund shall indemnify and keep indemnified ManCo from and against all taxes to the extent not attributable to failure to exercise due care and diligence as aforesaid (wheresoever and by whomsoever imposed) on profits or gains of the Fund which may be assessed upon or become payable by ManCo and against all costs, claims, demands, actions and proceedings in connection therewith.

**14.6** For the avoidance of doubt it is hereby agreed and declared that references to ManCo in this Clause shall be deemed to include references to the officers, servants, agents and Delegate(s) (and its officers) of ManCo and each person controlling ManCo.

**14.7** ManCo shall send to the Fund as soon as possible all claims, demands, summonses, writs and related documents which it receives from third parties and in respect of which it may be indemnified in this Agreement and shall give such assistance as the Fund may reasonably require in defending or resisting the same and ManCo shall not admit liability or offer any settlement without the written consent of the Fund which may, if it so desires, take over the defence of any such actions or prosecute any such claim in the name of ManCo.

**14.8** ManCo shall be entitled to rely on and shall not incur any liability in respect of any act or omission in reliance upon Proper Instructions or upon any document reasonably believed in good faith to be authentic and not fraudulent but may require documents to be authenticated to its reasonable satisfaction.

## 15. Legal Action by ManCo

ManCo shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by ManCo to the extent not attributable to its failure to exercise due care and diligence in the performance or non-performance of its obligations or duties and if the Fund requires ManCo to take any action of whatsoever nature which in the reasonable opinion of ManCo might make ManCo liable for the payment of money or liable in any other way ManCo shall be and be kept indemnified in any reasonable amount and form satisfactory to ManCo as a prerequisite to taking action.

## 16. Assignment

ManCo may with the consent in writing of the Directors, and subject to the approval of the competent supervisory authority, assign all its rights and obligations hereunder to any other company, person, firm or institution acceptable to the Directors and authorized to that effect by the competent supervisory authority and the assignee shall, upon filing with the Fund an instrument in writing whereby it shall assume the obligations of ManCo hereunder and agree to be bound by the provisions hereof, become the successor to ManCo hereunder and thereafter such successor may exercise all of the powers and enjoy all of the rights and be subject to all of

LIF 00517

LIFVAA0000657

- 14 -

the duties and obligations of ManCo hereunder as fully as though originally named as a party to this Agreement.

## 17. <u>Resignation and Termination</u>

**17.1**  ManCo shall be entitled to terminate this Agreement:

**(1)**  by giving not less than three months' notice in writing to the Fund;

**(2)**  at any time if the Fund shall go into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by ManCo) or be unable to pay its debts or commit any act of bankruptcy under the Laws of Luxembourg or if a receiver is appointed of any of the assets of the Fund or if some event having an equivalent effect occurs;

**(3)**  at any time if the Fund shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by ManCo requiring it to remedy such situation;

**(4)**  if any changes in this Agreement are required as a consequence of any financial services regulations which may in future bind ManCo and which cannot be agreed by the Fund.

**17.2**  The Fund may terminate this Agreement by giving not less than three months' notice in writing to ManCo.

**17.3**  The Fund may without such notice as is referred to in Clause 17.2 terminate this Agreement at any time by giving notice in writing to ManCo in any of the following events:-

**(1)**  if ManCo goes into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the Fund) or is unable to pay its debts or commits any act of bankruptcy under the Laws of Luxembourg or if a receiver is appointed on any of the assets of ManCo or if some event having an equivalent effect occurs;

**(2)**  if ManCo shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within thirty days of receipt of notice served by the Fund requiring it to remedy such situation;

**(3)**  if ManCo shall have failed to perform its functions under this Agreement to any material extent for a continuous period of one month in circumstances covered by Clause 18;

LIF 00518
LIFVAA0000658

- 15 -

(4) if any changes in this Agreement are required as a consequence of any financial services regulations which may in future bind ManCo and which cannot be agreed by the Fund.

17.4 On termination of this Agreement under the provisions of this Clause 17 ManCo shall be entitled to receive all fees and other monies accrued due up to the date of such termination but shall not be entitled to compensation in respect of such termination; and ManCo shall deliver or procure to be delivered to the Fund, or as the Fund shall direct, all books of account, records, other registers, correspondence, documents and assets relating to the affairs of or belonging to the Fund in the possession of or under the control of ManCo and shall take all necessary steps to vest in the Fund or any new management company any assets previously held in the name of or to the order of ManCo on behalf of the Fund and shall not be entitled to any lien in respect of any of the foregoing. Termination is without prejudice to accrued rights and provisions intended to survive termination and to the right of ManCo to settle outstanding obligations for transactions in progress.

## 18. Force majeure

ManCo shall not be responsible for the loss of or damage to any property of the Fund in the possession of ManCo or for any failure to fulfil its duties hereunder if such loss damage or failure shall be caused by or be directly or indirectly due to war damage, enemy action, the act of any Government or other competent authority, riot, civil commotion, rebellion, storm, tempest, accident, fire, lock-out, strike or other cause whether similar or not beyond the control of ManCo provided that ManCo shall use all reasonable efforts to minimise the effects of the same.

## 19. Confidentiality and Reputation

19.1 Neither of the parties hereto shall (except under compulsion of law) either before or after the termination of this Agreement disclose to any person not authorised by the relevant party to receive the same any confidential information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use all reasonable endeavours to prevent any such disclosure as aforesaid.

19.2 Neither of the parties hereto shall knowingly do or suffer any act or matter or thing which would or might reasonably be expected to prejudice internally or bring into disrepute the business or reputation of the other party.

## 20. Material Interests and Conflicts of Duty

It is understood that ManCo, or any Affiliate thereof may have a material interest in a transaction effected for the Fund or the circumstances may be such that a conflict of duty arises. The Fund acknowledges the potential conflicts of interest that may arise as set out in Schedule I to this Agreement. Unless required by applicable law or regulation, neither ManCo

LIF 00519

LIFVAA0000659

- 16 -

nor any Affiliate is obliged to make any prior notification to the Fund of any material interests. It is hereby acknowledged that ManCo shall not be liable to account to the Fund for any such benefit by reason solely of such interest nor shall ManCo's fees be abated. ManCo will normally act as the agent of the Fund, who will therefore be bound by its actions under the Agreement. Nevertheless, none of the services to be provided under this Agreement nor any other matter shall give rise to any fiduciary or equitable duties which would prevent or hinder ManCo, or any Affiliate, in transactions with or for the Fund, including programme trades acting as both market-maker and broker, principal or agent, dealing with other Affiliates and other customers and generally effecting transactions as provided below, to which the Fund consents accordingly. Such interests or conflicts of duty may arise in, but are not limited to, the following circumstances and those set out in Schedule I to this Agreement:

20.1 ManCo or any Affiliate thereof may provide management or advisory services to another client or clients with interests in Investments.

20.2 Directors, officers, agents or Shareholders of the Fund may be interested in ManCo as directors, officers, agents or shareholders or otherwise or vice versa.

20.3 ManCo in discharging its duties hereunder will, nevertheless, act in the best interests of the Fund so far as practicable having regard to its obligations to other clients when undertaking its duties where potential conflicts of interest may arise.

Notwithstanding the foregoing, ManCo shall in all circumstances, when acting on behalf of the Fund, comply with the rules of conduct applicable to it under the Law.

21. **Interests of ManCo and its Affiliates**

21.1 It is understood that directors, officers, agents and investors of the Fund are or may be interested in ManCo as directors, officers, or investors or otherwise, that directors, officers, investors and agents of ManCo are or may be interested in the Fund as directors, officers, investors or otherwise and that ManCo is or may be interested in the Fund as investor or otherwise and it is hereby acknowledged that no person so interested shall be liable to account for any benefit to any other party by reason solely of such interest.

21.2 ManCo or any holding company of ManCo or any subsidiary of such holding company or of ManCo (hereinafter called the "interested party") may acquire or dispose of any Investments upon its own account notwithstanding that the same or similar Investments may be held by or for the account of or otherwise connected with the Fund and nothing herein contained shall prevent an interested party from acquiring, holding or disposing of Investments notwithstanding that such Investments have been acquired at prices lower than those paid by or on behalf of the Fund in respect of the acquisition of Investments of the same class or disposed of at prices higher that those received by or on behalf of the Fund by virtue of a transaction effected by the Fund at or about the same time in which the interested party was concerned and the interested party shall be entitled to retain for its own benefit any

LIF 00520

LIFVAA0000660

- 17 -

profit or benefit derived therefrom provided that the acquisition by an interested party of such Investments is in accordance with the terms and conditions on which such Investments have been offered or made available on an arm's length basis and the Investments of the same class held by the Fund were acquired on the best terms reasonably obtainable having regard to the interests of the Fund.

21.3   Nothing herein contained shall prevent an interested party from selling Investments to or vesting Investments in the Fund or from contracting or entering into any financial, banking, currency or other transaction with the Fund or any investor(s) in the Fund or any company or body any of whose securities are held by or for the account of or otherwise connected with the Fund or from being interested in any such sale, vesting, contract or transaction and the interested party shall not be called upon to account in respect of any such contract or transaction or benefit derived therefrom provided that nothing herein contained shall permit any such sale or vesting or the entering into of any such contract or transaction as aforesaid with the Fund unless the terms thereof are no less beneficial to the Fund than those which would have been applicable to such a sale vesting contract or transaction on the same day effected or entered into by a person other than an interested party.

21.4   Nothing herein contained shall prevent an interested party from receiving any commissions which it may negotiate in relation to any sale or purchase of Investments effected by it for the account of the Fund and the interested party shall be entitled to retain for its own benefit any profit or benefit derived therefrom provided that the amount of such commission is not in excess of rates commonly receivable by security dealers in transactions of the kind contemplated and that in effecting any such sales or purchases the interested party shall do so on the best terms reasonably obtainable having regard to the interests of the Fund as aforesaid and provided further that such commission does not arise in circumstances in which the Fund could itself have acquired such Investments without payment of commission.

21.5   Nothing herein contained shall prevent an interested party from completing a transaction which is made pursuant to a contract effected in the normal manner on a stock exchange or other market where the purchaser or the vendor is undisclosed at the time.

21.6   So far as permitted by the Laws, an interested party may buy, hold and deal in any Shares upon its own account and no interested party shall be liable to account for any benefit to any other party by reason solely of such interest.

21.7   ManCo or its delegate may re-allow to agents, banks, brokers, and recognised securities dealers as commission any part of any initial charge and rounding adjustment received by ManCo or its delegate on Shares subscribed through or purchased from it and may waive any part of such initial charge and rounding adjustment in favour of any applicant or applicants for such Shares.

LIF 00521

LIFVAA0000661

- 18 -

## 22. Miscellaneous Provisions

**22.1** No failure on the part of either party to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

**22.2** Any provision of this Agreement may be amended only if the parties so agree in writing.

**22.3** The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision of this Agreement.

**22.4** The Fund may, subject to the prior written approval of the relevant supervisory authority, make Investments through a trust, subsidiary, partnership or other entity set up for such a purpose and if it shall do so, the Fund, as appropriate, shall procure the trust, subsidiary, partnership or other entity to enter into an agreement supplemental hereto with the Fund and ManCo upon terms, mutatis mutandis, of this Agreement, subject to such amendments as are considered necessary and approved by the parties hereto.

## 23. Notices

**23.1** Any notices given hereunder shall be given by sending the same by pre-paid mail, or by telegram, cable, telefax or telex confirmed in each case by copy forthwith sent by pre-paid mail as aforesaid, or by delivering the same by hand, such notice to be addressed, despatched or delivered (as the case may be) to the principal place of business for the time being of the party to whom it is addressed. Any notice sent by post as provided in this Clause shall be deemed to have been given seven days after despatch and any notice sent by telegram, cable, telefax or telex as provided in this Clause shall be deemed to have been given twenty-four hours after despatch. Failure to receive any confirmation of any notice duly given by telegram, cable, telefax or telex shall not invalidate such notice. Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

**23.2** This Clause 23 is without prejudice to the ability to give or receive Proper Instructions in accordance with the definition of that term.

## 24. Governing Law and Jurisdiction

This Agreement shall be governed by and construed in accordance with the Laws of Luxembourg.

- 19 -

In relation to any legal action or proceedings arising out of or in connection with this Agreement, the parties hereto submit to the non-exclusive jurisdiction of the district courts of Luxembourg.

**IN WITNESS** whereof this agreement has been entered into the day and year first above written.

Luxembourg, May 2, 2006

.................................................
Place / Date

.................................................
Luxembourg Investment Fund

Luxembourg, May 2, 2006

.................................................
Place / Date

.................................................
UBS Third Party Management Company S.A.

LIF 00523

LIFVAA0000663

- 20 -

## SCHEDULE I

ManCo notifies the Fund that potential conflicting interests or duties may notably arise because ManCo is engaged in one or more of the following situations, or any combination of these, to the extent permissible and always subject to the restrictions of applicable law, rules and regulations and internal policies. The headings of this Schedule are for reference only and do not purport to express the entire conflict potentially contained in any of the below enumerated situations.

(a) **Conflict principally resulting from the fact that ManCo is dealing in securities issued or placed by an Affiliate or in which an Affiliate plays a role (manager, custodian) or in the issuance of which an Affiliate may have a financial or other business interest.**

    (i)    a transaction is effected in securities issued by or involving an Affiliate or the customer of an Affiliate;

    (ii)    a transaction is effected in securities in respect of which ManCo or an Affiliate may benefit from a commission, fee, mark-up or mark-down payable otherwise than by the Fund, and/or ManCo or an Affiliate may also be remunerated by the counterparty to any such transaction;

    (iii)    ManCo deals on behalf of the Fund with an Affiliate;

    (iv)    a transaction is effected in units, shares or other securities of an in-house undertaking for collective investment or of any company or trust or any other investment vehicle of which ManCo or an Affiliate is the manager, operator, banker, adviser, transfer agent, depository, custodian or trustee;

    (v)    ManCo may effect transactions involving placings and/or new issues and/or corporate actions with an Affiliate who may be acting as principal or receiving agent's commission or other fees or where the proceeds may be used to pay an indebtedness to an Affiliate;

    (vi)    a transaction is effected in securities of a company for which ManCo or an Affiliate has underwritten, or managed or arranged an issue or offer for sale within the previous 12 months;

    (vii)    ManCo or an Affiliate may receive remuneration or other benefits by reason of acting in corporate finance or similar transactions involving a company whose securities are or may be held by the Fund;

LIF 00524
LIFVAA0000664

- 21 -

**(b)** **Conflict principally resulting from the fact that ManCo is dealing with or uses resources provided by an Affiliate or in the use of which an Affiliate has a financial or other business interest.**

(i) ManCo may deal through trading systems in which ManCo or an Affiliate have an interest and may receive remuneration on such trades;

(ii) ManCo may use an Affiliate for placing deposits, pricing or valuation of securities and investments, execution and clearing of transactions or stock lending;

(iii) ManCo may use research provided by an Affiliate or share research with an Affiliate;

(iv) ManCo may accept gifts and entertainment from an Affiliate.

**(c)** **Conflict principally resulting from the fact that ManCo has other clients.**

(i) ManCo or an Affiliate undertakes investment business for other customers;

(ii) ManCo may execute trading strategies in relation to the Fund that may conflict with the trading activities of other clients of ManCo and notably an Affiliate of ManCo may have a long or a short position in an investment that is used for the portfolio of the Fund;

(iii) ManCo may aggregate orders. In other circumstances such as client restriction on the use of brokers, trades may not be aggregated and this could result in trades being executed on behalf of one client followed by a related transaction by ManCo or its Affiliates on behalf of itself or another customer;

(iv) ManCo may matches or cross an order executed on the Fund's behalf with an order from another person (who may be an Affiliate) or otherwise acts as agent for, and receives commission from, the Fund and/or each such person.

**(d)** **Conflict principally resulting from the fact that ManCo may have an own account dealing conflict.**

(i) a director or employee of ManCo, or of an Affiliate, is a director of, holds or deals in securities of, or is otherwise interested in any company whose securities are held or dealt in on behalf of the Fund;

(ii) a transaction is effected in securities in respect of which ManCo or an Affiliate, or a director or employee of ManCo or an Affiliate, is

LIF 00525

LIFVAA0000665

- 22 -

contemporaneously trading or has traded on its own account or has either a long or short position;

(iii)   ManCo may be trading in proprietary assets of itself or an Affiliate as well as fiduciary assets;

(iv)   while most frequently acting as agent, ManCo or an Affiliate may also act as principal when carrying out investment business for the Fund or any other customer.

**(e)    Other situations.**

(i)   ManCo may be prevented from dealing in certain securities which are on a "banned securities list of the manager". Securities may be recorded on such a list notably because ManCo may be holding non public price sensitive information on such securities or for regulatory reasons;

(ii)   ManCo when dealing in low priced distressed securities may deviate from its normal trading patterns in order to facilitate the sale of such security. The Fund may be charged commission which may not be consistent with the normal practice of ManCo and there may also be delays in settlement. In these circumstances ManCo will use its reasonable endeavors to obtain best execution in such trades however there can be no certainty that best execution will be achieved in these circumstances.

This Schedule I becomes effective on the below date.

Luxembourg, May 2, 2006
...............................................
Place / Date

Luxembourg Investment Fund

Luxembourg, May 2, 2006
...............................................
Place / Date

UBS Third Party Management Company S.A.

LIFVAA0000666

- 23 -

**SCHEDULE II**

NICHT MEHR GÜLTIG

The ManCo is entitled to the commissions detailed below, calculated as a percentage per year of the average total net assets of the following Sub-funds (**all taxes excluded**), payable monthly by the respective Sub-funds:

**- Luxembourg Investment Fund – US Equity Plus**

In consideration of the portfolio management services, the ManCo shall receive from the Sub-fund a management fee and a performance fee, as determined below.

- The management fee for the Sub-fund is up to 0.6% p.a. for Category A and B Shares, 1.1% for Category C, D, E and F Shares of the Trading Assets calculated in USD, accrued on each Valuation Day and payable quarterly in arrears on the Trading Assets over the quarter.

- The Sub-fund shall pay quarterly in arrears a performance fee of 10% of the quarterly performance of the Trading Assets for Category E and F Shares. Performance means the positive difference between (i) Trading Assets on the last business day of the quarter and (ii) the Trading Assets on the last business day of the previous quarter.

Trading Assets means Assets traded by the Manco corresponding to the Assets of the Subfund after deduction of liquid assets necessary to pay redemption proceeds, (if any), ordinary expenses and fees, adjusted if appropriate on a pro rata temporis basis for subscription and redemption made during the quarterly period.
Category A, B, C and D Shares have no performance fee.

It is expected that under normal circumstances the Sub-fund will be fully invested so that the Trading Assets will represent about 99% of the net assets. The management fee and the performance fee figures will therefore be about the same with respect to the net assets.

**- Luxembourg Investment Fund – Amares Strategy Fund- Balanced**

a- Management fees: 0.250 % per annum

b- Investment Advisory fees: 1.50 % per annum

**- Luxembourg Investment Fund – Secofind Income**

a- Management fees

Following is the schedule of annual fees for services performed by the Management Company with respect to the Fund's Account.  All fees are payable in Euros.

0.27__% p.a. on first EUR 100 million

0.25___% p.a. thereafter

Fees are payable monthly in arrears and are computed based on the market value of the investment portfolio as reported on the Fund's Administrator's statement computed by averaging the closing prices of market values for each month at the end of the billing period. Market value for the portfolio will be determined by aggregating the market value for each asset in the portfolio using the last sale price on the principal exchange on which the security is listed as reported by such exchange or the financial press. If such sale price is not readily

LIFVAA0000667

- 24 -

available, the market price shall be determined in good faith by or at the direction of the Management Company.

Fees shall be prorated on a daily basis when the investment portfolio is under the supervision of the Management Company for a portion of any quarter.

The investment portfolio is comprised of all Accounts and assets, including cash, cash accruals, additions, substitutions and alterations that are subject to advice by the Portfolio Manager. The Fund shall be responsible for the payment of VAT, withholding, or any similar applicable tax, if any, that may be assessed in connection with payment of the fee at the same time management fees are payable in addition to the fees calculated above. If income withholding taxes are payable by the Fund in connection with Portfolio Manager's fee payments, the Fund will pay such additional amount as needed to hold the Portfolio Manager harmless against the effect of such taxes.

b- Investment Advisory fee: 0.200% p.a.

**- Luxembourg Investment Fund – Secofind Value**

a- Management fees: 1.00 % per annum

b- Investment Advisory fee: 0.400% p.a.

This Schedule II becomes effective on the below date.


Luxembourg, May 2, 2006
...........................................    ......................................................................
Place / Date                                  Luxembourg Investment Fund


Luxembourg, May 2, 2006
...........................................    ......................................................................
Place / Date                                  UBS Third Party Management Company S.A.

LIF 00528
LIFVAA0000668

23

*SCHEDULE II*

The ManCo is entitled to the commissions detailed below, calculated as a percentage per year of the average total net assets of the following Sub-funds (**all taxes excluded**), payable monthly by the respective Sub-funds:

**- Luxembourg Investment Fund  – US Equity Plus**

In consideration of the portfolio management services, the ManCo shall receive from the Sub-fund a management fee and a performance fee, as determined below.

- The management fee for the Sub-fund is up to 0.6% p.a. for Category A and B Shares, 1.1% for Category C, D, E and F Shares of the Trading Assets calculated in USD, accrued on each Valuation Day and payable quarterly in arrears on the Trading Assets over the quarter.

- The Sub-fund shall pay quarterly in arrears a performance fee of 10% of the quarterly performance of the Trading Assets for Category E and F Shares. Performance means the positive difference between (i) Trading Assets on the last business day of the quarter and (ii) the Trading Assets on the last business day of the previous quarter.

Trading Assets means Assets traded by the ManCo corresponding to the Assets of the Sub-fund after deduction of liquid assets necessary to pay redemption proceeds, (if any), ordinary expenses and fees, adjusted if appropriate on a pro rata temporis basis for subscription and redemption made during the quarterly period.
Category A, B, C and D Shares have no performance fee.

It is expected that under normal circumstances the Sub-fund will be fully invested so that the Trading Assets will represent about 99% of the net assets. The management fee and the performance fee figures will therefore be about the same with respect to the net assets.

**- Luxembourg Investment Fund  – Amares Strategy Fund- Balanced**

a- Management fees: 0.25 % p.a. of the respective average total net assets of the Sub-fund during the month concerned and is paid monthly by the Sub-fund.

b- Investment Advisory fees: 1.50 % p.a. of the respective average total net assets of the Sub-fund during the month concerned and is paid monthly by the Sub-fund.

**- Luxembourg Investment Fund  – Secofind Income**

a- Management fees

Following is the schedule of annual fees for services performed by the ManCo with respect to the Sub-fund's Account.  All fees are payable in Euros.

0.27___% p.a. on first EUR 100 million

0.25___% p.a. thereafter

Fees are payable monthly in arrears and are computed based on the market value of the investment portfolio as reported on the Fund's Administrator's statement computed by averaging the closing prices of market values for each month at the end of the billing period. Market value for the portfolio will be determined by aggregating the market value for each asset in the portfolio using the last sale price on the principal exchange on which the security is

Schedule II dated September 28, 2007 to the Management Company Services agreement entered into between UBS Third Party Management Company S.A. and Luxembourg Investment Fund last May 2nd, 2006

listed as reported by such exchange or the financial press. If such sale price is not readily available, the market price shall be determined in good faith by or at the direction of the ManCo.

Fees shall be prorated on a daily basis when the investment portfolio is under the supervision of the ManCo for a portion of any quarter.

The investment portfolio is comprised of all Accounts and assets, including cash, cash accruals, additions, substitutions and alterations that are subject to advice by the Portfolio Manager. The Fund shall be responsible for the payment of VAT, withholding, or any similar applicable tax, if any, that may be assessed in connection with payment of the fee at the same time management fees are payable in addition to the fees calculated above. If income withholding taxes are payable by the Fund in connection with Portfolio Manager's fee payments, the Fund will pay such additional amount as needed to hold the Portfolio Manager harmless against the effect of such taxes.

b- Investment Advisory fee: 0.200% p.a.

### - Luxembourg Investment Fund – Secofind Value

a- Management fees: 1.00 % p.a. of the respective average total net assets of the Sub-fund during the month concerned and is paid monthly by the Sub-fund.

b- Investment Advisory fee: 0.40% p.a. of the respective average total net assets of the Sub-fund during the month concerned and is paid monthly by the Sub-fund.

### - Luxembourg Investment Fund – Global Opportunities

a- Management fees: in consideration of the portfolio management services, the ManCo is entitled to a portfolio management fee of 1.55% p.a. calculated on the average total net assets of the Sub-fund as of the last business day of the preceding quarter for the quarter concerned and payable quarterly in arrears by the Sub-fund.

b- Performance Fee: in consideration of the portfolio management services, the Manco is entitled to a performance fee of 10% should the performance of the Sub-Fund exceed 3 months EURO LIBOR. Performance Fee (if any) will be calculated on an annual basis, accrued on each Valuation Date and payable annually in arrears by the Sub-fund.
A Performance Fee shall be due provided that the net asset value of the Sub-fund, at the end of each Period, is greater than the net asset value of the Sub-fund during any previous Period on which a Performance Fee was paid ("High Water Mark"). The use of a High Water Mark ensures that the Sub-fund will not pay a Performance Fee unless the previous decline in net asset value has been fully recovered. The first Period shall exceptionally start as from the Closing Date (October 1st, 2007) and shall end as at March 31st, 2008. The next periods shall start as at April 1st and shall end as at March 31st of the following year.
The subscriptions and redemptions made in the Sub-fund during the relevant Period will be adjusted on a pro rata temporis basis in order the portion of the Performance Fee attributable to the redemptions (occurred during the relevant Period) be crystallized.

### - Luxembourg Investment Fund – Alpha Strategies

a- Management fee

In consideration of the portfolio management services, UBS Third Party Management Company S.A. shall receive from the Sub-fund a management fee as determined below.

Schedule II dated September 28, 2007 to the Management Company Services agreement entered into between UBS Third Party Management Company S.A. and Luxembourg Investment Fund last May 2nd, 2006

LIF  00530

LIFVAA0000670

25

- Portfolio Management Fee: The Management Company is entitled to a "portfolio management fee" of 0.05% p.a. calculated as a percentage per year of the average portion of the Sub-fund's net assets (managed by the Management Company) during the month concerned (all taxes included) and payable monthly in arrears by the Sub-fund. (more details are given in Section II Point 11. Charges and expenses).

In consideration of the portfolio management services, Banca Albertini Syz & C.S.p.A. shall receive from the Sub-fund a management fee as determined below.
- Portfolio Management Fee: Banca Albertini Syz & C.S.p.A. is entitled to a "portfolio management fee" of 0.80% p.a. calculated as a percentage per year of the average portion of the Sub-fund's net assets (managed by Banca Albertini Syz & C.S.p.A.) during the month concerned (all taxes included) and payable monthly in arrears by the Sub-fund. (more details are given in Section II Point 11. Charges and expenses).

b- Advisory fee

In consideration of the advisory services, Maxos S.r.l. shall receive from the Sub-fund an advisory fee as determined below.

- Investment Advisory Fee: Maxos S.r.l. is entitled to an "investment advisory fee" of 1.20 % p.a. calculated as a percentage per year of the average total net assets of the Sub-fund during the month concerned (all taxes included) and shall be payable monthly in arrears by the Sub-fund.

c- Performance fee

The Investment Advisor may, in addition to the advisory fee, be entitled to a performance fee. The performance fee will be calculated on each Valuation Date and paid on a quarterly basis provided that the net asset value per Share before performance fee is higher than the target net asset value per Share (as defined hereafter). The target net asset value per Share is calculated by multiplying the previous quarter end net asset value per Share by the Euribor 3 months per annum rate, fixed at the beginning of the period (i.e. quarterly) adjusted by contributions and withdrawals. The Investment Advisor will only be entitled to a performance fee if the quarter end net asset value per Share is higher than any previous quarter end net asset value per Share. The performance fee will be equal to 15% of the difference between the net asset value per Share before performance fee and the target net asset value per Share multiplied by the quarterly average number of Shares outstanding on each Valuation Date.

This Schedule II becomes effective as from October 1, 2007 (except for the above sub-fund Alpha Strategies whose effective date shall be January 2, 2008) and replaces the previous Schedule II dated May 2nd, 2006.

Luxembourg, September 28, 2007
.........................................
Place / Date                              Luxembourg Investment Fund

Luxembourg, September 28, 2007
.........................................
Place / Date                              UBS Third Party Management Company S.A.

Schedule II dated September 28, 2007 to the Management Company Services agreement entered into between UBS Third Party Management Company S.A. and Luxembourg Investment Fund last May 2nd, 2006

LIF 00531

LIFVAA0000671