**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Lead Adv. Pro. No. 10-05354 (CGM) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as NATWEST MARKETS N.V.), | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

I.     COMMENCEMENT OF THE SIPA PROCEEDING AND THE DISTRICT
COURT'S STAY ORDERS ............................................................................................2

II.    THE TRUSTEE'S AUTHORITY, THE CLAIMS PROCEDURE, AND NET
EQUITY.........................................................................................................................4

III.   THE TRUSTEE'S ACTION AGAINST DEFENDANT AND DEFENDANT'S
COUNTERCLAIMS.......................................................................................................5

ARGUMENT .............................................................................................................................7

I.     LEGAL STANDARD......................................................................................................7

II.    DEFENDANT SEEKS TO SUBVERT THE CLAIMS PROCESS....................................8

III.   THE COUNTERCLAIMS VIOLATE THE DISTRICT COURT'S STAY
ORDERS AND THE BANKRUPTCY CODE'S AUTOMATIC STAY ........................11

IV.   THE TRUSTEE IS IMMUNE FROM LIABILITY .........................................................14

V.    DEFENDANT FAILS TO PLAUSIBLY ALLEGE CLAIMS FOR UNJUST
ENRICHMENT OR ANY BASIS FOR RELIEF UNDER THE BANKRUPTCY
CODE AND SIPA ........................................................................................................16

      A.    Defendant Fails to State a Claim for Unjust Enrichment ......................................17

      B.    Defendant Fails to Cite a Legal Basis for Relief Under the Bankruptcy
Code or SIPA ....................................................................................................19

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 78-80 St. Marks Place LLC*,
    648 B.R. 505 (Bankr. S.D.N.Y. 2023) ............................................................................ 15, 16

*In re Ades & Berg Grp. Invs.*,
    550 F.3d 240 (2d Cir. 2008) ............................................................................................ 18, 19

*In re Adler, Coleman Clearing Corp.*,
    204 B.R. 99 (Bankr. S.D.N.Y. 1997) .................................................................................... 8

*ASG & C, Inc. v. Arch Specialty Ins. Co.*,
    No. 21-1761-CV, 2022 WL 839805 (2d Cir. Mar. 22, 2022) ............................................. 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 7

*In re Bernard L. Madoff Inv. Sec. LLC*,
    440 B.R. 282 (Bankr. S.D.N.Y. 2010) ............................................................................ 15, 16

*In re Bernard L. Madoff Inv. Sec. LLC*,
    708 F.3d 422 (2d Cir. 2013) ............................................................................................. 4, 8

*In re Best Products Co., Inc.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ............................................................................. 19, 20

*In re Bird*,
    229 B.R. 90 (Bankr. S.D.N.Y. 1999) .............................................................................. 12, 14

*In re Blinder, Robinson & Co.*,
    124 F.3d 1238 (10th Cir. 1997) ........................................................................................... 8

*In re BLMIS*,
    654 F.3d 229 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012) ...................................... 5

*City of Syracuse v. R.A.C. Holding, Inc.*,
    258 A.D.2d 905, 685 N.Y.S.2d 381 (1999) ........................................................................ 17

*In re Cleveland Imaging & Surgical Hosp., L.L.C.*,
    26 F.4th 285 (5th Cir. 2022) ......................................................................................... 12, 13

*In re Coastal Group, Inc.*,
    100 B.R. 177 (Bankr. D. Del. 1989) ...............................................................................13

*In re Continentalafa Dispensing Co.*,
    403 B.R. 653 (Bankr. E.D. Mo. 2009) ......................................................................12, 13

*Eisenberg v. Casale (In re Casale)*,
    62 B.R. 899 (Bankr. E.D.N.Y. 1986) ......................................................................14, 15

*In re Enron Creditors Recovery Corp.*,
    376 B.R. 442 (Bankr. S.D.N.Y. 2007) ..........................................................................20

*In re First Central Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004).....................................................................................18, 19

*In re First Interregional Equity Corp.*,
    290 B.R. 265 (Bankr. D.N.J. 2003) .................................................................................8

*Icebox-Scoops, Inc. v. Disney Enter., Inc.*,
    520 F. App'x 3 (2d Cir. 2013) .......................................................................................17

*In re J.T. Moran Fin. Corp.*,
    124 B.R. 931 (S.D.N.Y. 1991).......................................................................................12

*Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
    No. 95-08203, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208
    F.3d 202 (2d Cir. 2000)...................................................................................15, 16, 18

*Landis v. North American Co.*,
    299 U.S. 248 (1936).......................................................................................................14

*Lebovits v. Scheffel (In re Lehal Realty Assoc.)*,
    101 F.3d 272 (2d Cir. 1996)...........................................................................................15

*In re Lehman Brothers Holdings, Inc.*,
    404 B.R. 752 (Bankr. S.D.N.Y. 2009) ..........................................................................20

*In re Lessig Constr., Inc.*,
    67 B.R. 436 (Bankr. E.D. Pa. 1986) ..............................................................................13

*In re Madoff*,
    848 F.Supp.2d 469 (S.D.N.Y. 2012)........................................................................12, 13

*In re Operations NY LLC.*,
    490 B.R. 84 (Bankr. S.D.N.Y. 2013) .............................................................................17

*In re Penney*,
    76 B.R. 160 (Bankr. N.D. Cal. 1987) ............................................................................13

*Peskin v. Picard*,
    413 B.R. 137 (Bankr. S.D.N.Y. 2009) ...................................................................11

*Picard v. Lustig*,
    568 B.R. 481 (Bankr. S.D.N.Y. 2017) ..............................................................9, 10

*In re Roman Cath. Church of Archdiocese of Santa Fe*,
    627 B.R. 916 (Bankr. D.N.M. 2021) ..............................................................12, 13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff
    Inv. Sec. LLC*, No. 11 CV 2392 AKH, 2011 WL 7975167 (S.D.N.Y. Dec. 15,
    2011) .......................................................................................................................11

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    No. 18-CV-5075 (LJL), 2020 WL 3472597 (S.D.N.Y. June 25, 2020) ...................7

*Weissman v. Hassett*,
    47 B.R. 462 (S.D.N.Y. 1985) .................................................................................15

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 1998) ...................................................................................20

**Statutes**

11 U.S.C. § 105(a) ....................................................................................................16, 19

11 U.S.C. § 362 ..........................................................................................................3, 4

11 U.S.C. § 362(a) .....................................................................................................3, 13

11 U.S.C. § 362(a)(3) ......................................................................................................12

11 U.S.C. § 362(d) ..........................................................................................................12

11 U.S.C. § 502(h) ....................................................................................................16, 19

11 U.S.C. § 507 ...............................................................................................................14

11 U.S.C. § 553 ....................................................................................................16, 19, 20

11 U.S.C. § 726 ...............................................................................................................14

15 U.S.C. § 78eee(a)(4)(A) ...............................................................................................3

15 U.S.C. § 78eee(a)(4)(B) ...............................................................................................3

15 U.S.C. § 78eee(b)(3) ....................................................................................................3

15 U.S.C. § 78eee(b)(4) ...........................................................................................................3

15 U.S.C. § 78fff-1(a) .............................................................................................................4

15 U.S.C. § 78fff-2(a)(3) .........................................................................................................8

15 U.S.C. § 78fff-2(b)................................................................................................16, 19, 20

15 U.S.C. § 78fff-2(c)(1) .....................................................................................................9, 14

15 U.S.C. § 78fff-2(c)(3) ........................................................................................................5

15 U.S.C. § 78fff(b) ...............................................................................................................4

15 U.S.C. § 78*lll*(11) ...........................................................................................................4

**Rules**

Fed. R. Bankr. P. 7012 ..........................................................................................................1

Fed. R. Bankr. P. 7013 ........................................................................................................14

Fed. R. Civ. P. 12 .................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................7

Fed. R. Civ. P. 13 ...............................................................................................................14

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in support of his motion (the "Motion"), brought

pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable to this proceeding

by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the counterclaims (the

"Counterclaims") filed by defendant ABN AMRO Bank N.V. (presently known as NatWest

Markets N.V.) ("Defendant").

## PRELIMINARY STATEMENT

After the Trustee successfully defeated Defendant's motion to dismiss the Trustee's

Consolidated Second Amended Complaint ("SAC"),[1] Defendant has responded by bringing suit

*against the Trustee*, counterclaiming that BLMIS and Madoff were unjustly enriched to

Defendant's detriment.  With vague and conclusory allegations, Defendant styles itself as a

"victim" of Madoff's fraud and demands that BLMIS and Madoff owe Defendant the return of its

investments, a nebulous amount of over $650 million, made even more absurd by Defendant's

continued retention of over $308 million of BLMIS customer property.

Regardless of how the Counterclaims are styled, they seek to obtain assets from the BLMIS

estate and thus violate the operative claims process in this SIPA liquidation proceeding: Defendant

seeks to establish a priority claim ahead of BLMIS customers, despite never filing a claim and not

qualifying as a "customer" under SIPA.  This directly conflicts with both SIPA and the court-

ordered claims administration process and must be rejected.  Because the Counterclaims seek to

---

[1] *See* SAC, ECF No. 220; *see also* Mem. Decision, ECF 262.  Unless otherwise indicated, all ECF references are to the docket in *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.)*, Adv. Pro. No. 10-05354 (CGM).

obtain estate property, they also violate the operative District Court stay orders and the Bankruptcy Code's automatic stay.

If Defendant's Counterclaims were brought against the Trustee in his capacity as the representative of the BLMIS estate, they would still fail because a SIPA trustee has qualified immunity when carrying out his or her official duties.  Marshalling the assets of the estate clearly falls within the scope of a SIPA trustee's duties.

Finally, although this Court does not need to go any further, Defendant's unjust enrichment claim fails as a matter of law.  Defendant did not provide value to the Trustee or BLMIS, a core element of any unjust enrichment claim.  And there cannot be any unjust enrichment where the Trustee's conduct is fully consistent with the duties imposed on him by the Bankruptcy Code and SIPA to marshal and preserve estate assets, which is precisely what he has done here.  Nor do any of Defendant's cited provisions of the Bankruptcy Code and SIPA provide a legal basis for its Counterclaims.

For these reasons, the Trustee respectfully requests the Motion be granted.

## BACKGROUND

## I.    COMMENCEMENT OF THE SIPA PROCEEDING AND THE DISTRICT COURT'S STAY ORDERS

The background facts of this case are already well known by this Court.  As with the other matters in the BLMIS SIPA liquidation proceeding, this case arises out of the infamous Ponzi scheme perpetrated by Madoff through BLMIS's investment advisory business (the "IA Business").  SAC ¶¶ 77–108.  Madoff's Ponzi scheme collapsed in December 2008, when BLMIS customers' requests for redemptions overwhelmed the flow of new investments, and the Ponzi scheme was publicly revealed.  *Id.* ¶ 106.

On December 11, 2008, Madoff was arrested and criminally charged before the District Court. *Id.* ¶ 19. Contemporaneously, the SEC filed a complaint in the District Court against, among others, Madoff and BLMIS. *Id.*; *see SEC v. Bernard L. Madoff*, Case No. 08-CV-10791 (LLS) (S.D.N.Y. Dec. 11, 2008) ("SEC Action"). On December 15, 2008, pursuant to SIPA Section 78eee(a)(4)(A), the SEC consented to a combination of its action with an application of the Securities Investor Protection Corporation ("SIPC"). SAC ¶ 20. Thereafter, pursuant to SIPA Section 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. *Id.* That same day, the District Court granted the SIPC application and entered a protective decree (the "Protective Decree") to which BLMIS consented. The Protective Decree, in pertinent part: (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA Section 78eee(b)(3); (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA Section 78eee(b)(3); (iii) removed the case to the Bankruptcy Court pursuant to SIPA Section 78eee(b)(4); and (iv) stated that "all persons and entities are notified that, subject to the other provisions of 11 U.S.C. § 362, the automatic stay provisions of 11 U.S.C. § 362(a) operate as a stay . . . ." SEC Action, ECF No. 4, at ¶¶ II–III, IX.

The Protective Decree also independently "stayed, enjoined, and restrained" all individuals and entities "from directly or indirectly . . . interfering with any assets or property owned, controlled or in the possession of [BLMIS]." *Id.* ¶ IV; *see also* SEC Action, ECF No. 8, at ¶ IX ("December 18, 2008 Stay Order") (ordering that "no creditor or claimant against [BLMIS], or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the control, possession, or management of the assets subject to the receivership."); *id.*, ECF No. 18, at

¶ IV (incorporating and making permanent December 18, 2008 Stay Order) (collectively with the

Protective Decree and December 18, 2008 Stay Order, the "District Court Stay Orders").

## II.    THE TRUSTEE'S AUTHORITY, THE CLAIMS PROCEDURE, AND NET EQUITY

As a trustee appointed under SIPA, the Trustee is charged with, among other things,

recovering and distributing customer property to BLMIS's customers, assessing claims, and

liquidating any other BLMIS assets for the benefit of the estate and its creditors.  Pursuant to SIPA

Section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in addition to the

powers granted by SIPA.  Also pursuant to SIPA Section 78fff(b), chapters 1, 3, 5 and subchapters

I and II of chapter 7 of the Bankruptcy Code (including the automatic stay provisions of Section

362 of the Bankruptcy Code) are applicable to this case.

On December 23, 2008, the Bankruptcy Court entered the Claims Procedures Order, setting

forth a systematic framework for the filing, determination, and adjudication of claims in

accordance with SIPA.  *SIPC v. BLMIS*, Adv. Pro. No. 08-1789 (BRL) (Bankr. S.D.N.Y. Dec. 23,

2008), ECF No. 12.  Pursuant to the Claims Procedures Order, all customer and general creditor

claims needed to be filed with the Trustee by July 2, 2009.  *Id*. at 7.  Investors who did not directly

invest in BLMIS, such as investors in BLMIS's "feeder funds," are not "customers" under SIPA

and cannot pursue SIPA customer claims with the Trustee.  *In re Bernard L. Madoff Inv. Sec. LLC*,

708 F.3d 422, 426–28 (2d Cir. 2013).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation

proceeding provides that customers share pro rata in customer property, to the extent of their "net

equity," as defined in SIPA Section 78*lll*(11).  The Trustee has determined each customer's net

equity by crediting the amount of cash deposited by the customer into her BLMIS account, less

any amounts withdrawn from her BLMIS customer account, known as the "Net Investment

Method."   In 2011, the Second Circuit upheld the Net Investment Method as the method of calculating and determining customer claims in this SIPA liquidation proceeding.   *In re BLMIS*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012).   As of July 17, 2023 and in accordance with the Net Investment Method, the Trustee has made fourteen pro rata distributions to eligible customers, totaling approximately $13.785 billion dollars.   *See* Order Approving Fourteenth Allocation of Property to the Fund of Customer Property, *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Jan. 10, 2023), ECF No. 22819.

## III.    THE TRUSTEE'S ACTION AGAINST DEFENDANT AND DEFENDANT'S COUNTERCLAIMS

In addition to determining claims, the Trustee is obligated to marshal and liquidate BLMIS's assets for ultimate distribution to the defrauded customers of Madoff's fraud, a process which is ongoing.   Because BLMIS's assets were not sufficient to reimburse its customers for the billions of dollars that they invested, the Trustee brought numerous avoidance and recovery actions seeking to collect customer property from customers and others who received fraudulent transfers, in accordance with, *inter alia*, SIPA Section 78fff-2(c)(3).

The instant action is part of that effort.   In the SAC, the Trustee is seeking at least $308,113,826 in subsequent transfers of stolen customer property that Defendant received from various funds managed and controlled by Tremont Group Holdings, Inc. (the "Tremont Group"), and its management arm, Tremont Partners, Inc. (together with the Tremont Group, "Tremont"), and Harley International (Cayman) Ltd. ("Harley").   SAC ¶ 2.   Defendant received this stolen customer property in connection with transactions it entered into with the Tremont funds and Harley.   *Id.* ¶¶ 2–12.

The basic contours of the transactions are not in dispute.   In its transactions with the Tremont funds, Defendant entered into swap agreements with Rye Select Broad Market XL

Portfolio, Ltd. ("XL Portfolio Limited") and Rye Select Broad Market XL Fund L.P. (together

with XL Portfolio Limited, the "XL Funds").  Each of the XL Funds provided cash collateral to

Defendant and in exchange Defendant agreed to provide each XL Fund with returns generated by

two of the Tremont BLMIS "feeder funds"—Rye Select Broad Market Portfolio Limited ("Rye

Portfolio Limited") and Rye Select Broad Market Fund L.P. ("Rye Broad Market," and together

with Rye Portfolio Limited, the "Rye Funds")—based on investments in the Rye Funds equal to

three times the amount of collateral the XL Funds provided to Defendant.  *Id.* ¶ 6; Answer ¶ 6.

Because Defendant's payment obligations to the XL Funds were directly tied to the performance

of the Rye Funds (and thus, BLMIS), Defendant hedged its risk under the leverage deals by

investing three times the collateral it received from the XL Funds in the Rye Funds, which invested

Defendant's funds with BLMIS.  SAC ¶ 7; Answer ¶ 7.  In connection with these deals, the Trustee

seeks at least $286,313,906 from Defendant, which represents cash collateral payments Defendant

received from the XL Funds and the redemption payments it received from the Rye Funds.  SAC

¶ 3.

Defendant also redeemed $21,799,920 from Harley in connection with a transaction to

provide a leveraged return under a derivatives contract on investments in Harley.  SAC ¶ 12.  The

Trustee seeks the return of these funds because they comprise subsequent transfers of stolen

BLMIS customer property as well.

The Trustee filed the SAC against Defendant on March 22, 2022.  ECF No. 220.  On May

23, 2022, Defendant moved to dismiss the SAC.  ECF No. 223.  On March 3, 2023, this Court

denied Defendant's motion to dismiss.  ECF No. 262.  On May 15, 2023, Defendant filed its

Answer and Counterclaims, which are the subject of this Motion.  ECF No. 268.

While Defendant refuses to return over $308 million of stolen customer property to the BLMIS estate for the benefit of Madoff's defrauded customers, in its Counterclaims, Defendant claims it "is among the victims of Madoff's fraud" and demands that the estate pay it over $650 million under a flawed unjust enrichment theory against the Trustee.   Countercl. ¶¶ 11–12. Defendant alleges that in connection with the swap transactions it entered into, it invested $938,499,999 in BLMIS through the Rye Funds and Harley.  *Id*. ¶¶ 10–11.  At the time of the collapse of BLMIS and its various feeder funds, Defendant alleges at least $652,186,093 of its investments remained unredeemed.  *Id*. ¶ 11.  As a result, Defendant claims that it does not owe BLMIS or Madoff anything; rather, BLMIS and Madoff were unjustly enriched at Defendant's expense and *owe Defendant* the return of its unredeemed investments.  *Id*. ¶ 12.

## ARGUMENT

### I.    LEGAL STANDARD

In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See, e.g., Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020).  To survive a motion to dismiss under Rule 12(b)(6), the counterclaim must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  If counterclaimants have "not nudged their claims across the line from conceivable to plausible, their [counterclaims] must be dismissed."  *Id*. at 570.

As described below, Defendant's Counterclaims fail because (1) they are blatant attempts at end runs around the claims process and would violate the Net Investment Method, (2) they

7

violate the District Court Stay Orders and the Bankruptcy Code's automatic stay, (3) the Trustee

is immune from suit because claims determinations are duties carried out in his official capacity,

and (4) Defendant fails to state a claim for unjust enrichment or provide any basis for relief under

the Bankruptcy Code or SIPA.

## II.    DEFENDANT SEEKS TO SUBVERT THE CLAIMS PROCESS

Defendant's Counterclaims are an attempted end run to the Claims Procedures Order,

which is the only way to assert a claim to estate assets in this SIPA liquidation proceeding.  The

Counterclaims should be dismissed on this basis alone.

Through the Counterclaims, Defendant seeks payment from the assets of the BLMIS estate.

To be eligible for any payment from the BLMIS estate, a creditor must have filed a claim by July

2, 2009—the bar date established in the Claims Procedures Order and by SIPA Section 78fff-

2(a)(3).  Courts have observed that the "time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory

and absolute."  *In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1243 (10th Cir. 1997); *see also,*

*e.g.*, *In re First Interregional Equity Corp.*, 290 B.R. 265, 281 (Bankr. D.N.J. 2003); *In re Adler,*

*Coleman Clearing Corp.*, 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997).  But Defendant did not file a

claim with the Trustee before that date, and cannot file one now.

Even if Defendant had filed a timely claim, the Trustee would have been required to

disallow it under SIPA and Second Circuit law.  Investors, like Defendant, who did not directly

invest in BLMIS, but rather through BLMIS's "feeder funds," are not "customers" under SIPA

and cannot share in the fund of customer property collected by the Trustee.  *In re Bernard L.*

*Madoff Inv. Sec. LLC*, 708 F.3d at 426–28.  In the main liquidation proceeding (No. 08-01789),

this Court has affirmed the Trustee's disallowance of claims of similarly situated claimants

8

numerous times.[2]  Even if Defendant's Counterclaims constituted general creditor claims, to

permit them would violate SIPA's priority scheme by allowing Defendant to recover on a general

creditor claim before valid customer claims have been fully satisfied and SIPC has recouped all of

its customer-related advances.  15 U.S.C. § 78fff-2(c)(1).  Thus, even taking the Counterclaims'

allegations as true, because Defendant did not invest directly in BLMIS, but instead invested in

funds that invested in BLMIS, Defendant's claim would fail.

Defendant's Counterclaims are akin to the equitable credits sought by the defendants in

*Picard v. Lustig*, and similarly must be rejected.  568 B.R. 481 (Bankr. S.D.N.Y. 2017).  In *Lustig*,

the Trustee sued the defendants for the approximately $7 million in fictitious profits they withdrew

from their BLMIS customer accounts.  *Id.* at 484.  In their answer, the *Lustig* defendants asserted

several affirmative defenses, including for equitable credits in the amount of the fictitious profits

they invested with two BLMIS feeder funds, including Rye Broad Market, that were lost in the

Ponzi scheme.  *Id.* at 485.  After the Trustee moved to strike the defendants' affirmative defense

as unauthorized by the Bankruptcy Code, the Bankruptcy Court granted the Trustee's motion,

finding that the credits that the *Lustig* defendants sought were "inconsistent with express

---

[2] *See, e.g,* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding
Interests In: S&P Or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund,
L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The
Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015);
Partners Investment Co., Northeast Investment Club, And Martin R. Hamick & Steven P. Norton, Partners, ECF No.
10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The
Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And
Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Black River Associates LP, MOT Family Investors LP,
Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third
Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, And Miller Trust Partnership, ECF No.
13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life
Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and The
Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity
LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament
Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27,
2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony
Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, And
Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016).

provisions of the Bankruptcy Code and SIPA which give the credit they seek to the entity that gave the value to the debtor." *Id*. at 487. In other words, the feeder funds that held customer accounts at BLMIS, not the *Lustig* defendants, provided value to the debtor, and only those funds were entitled to credit for the deposits that the *Lustig* defendants sought. To hold otherwise would turn the Net Investment Method on its head, force "the BLMIS estate to give a second round of credits based on the same deposits," and take money out of the pockets of the net losers to give it to the defendants, who were net winners. *Id*. at 487–88.

Here, as was the case in *Lustig*, the Rye Funds and Harley provided value to BLMIS through deposits that Defendant is now "trying to conscript for [its] own benefit." *Id*. at 487. The credits given to the feeder funds on account of these deposits are not just theoretical; the Trustee has already distributed cash to the Rye Funds. Under Tremont's settlement with the Trustee, the Trustee allowed the Rye Funds' customer claims in the collective amount of over $2.1 billion. *See* Order Approving Settlement, *Picard v. Tremont Grp. Holdings, Inc. et al*., Adv. Pro. No. 10-05310 (BRL), (Bankr. S.D.N.Y. Sept. 22, 2011), ECF No. 38. If Defendant has any claim to return of funds, it is from the Rye Funds and Harley, not BLMIS or the Trustee. In fact, Defendant has already pursued this remedy against the Rye Funds by participating as a class member in the Tremont class action. *See* Joint Objection of Class Members to Mot. for Settlement, *In re Tremont Sec. Law, State Law and Insurance Litig.*, No. 1:08-cv-11117-TPG (S.D.N.Y. May 11, 2011), ECF No. 481. Thus far, eight distributions have been made from the Tremont Fund Distribution Account to the settling class members, including Defendant, who brought claims against the Tremont funds. *See In Re Tremont Securities law, State Law and Insurance Litigation*, http://tremontlitigationsettlements.com (last visited July 17, 2023).

Despite Defendant's appeals to equity, the Counterclaims are a distinctly inequitable attempt not only to jump ahead of not fully satisfied BLMIS customers who patiently await the regular pro rata distributions of customer property by the Trustee, but also to try to collect twice over the other Tremont investors. *See Peskin v. Picard*, 413 B.R. 137, 145 (Bankr. S.D.N.Y. 2009) (denying attempt by claimants to bring suit against Trustee for declaratory relief on their claims, finding that suit "is unjust as it appears to be Plaintiffs' way to jump the line and obtain priority of their claims over the claims of other customers"). The Counterclaims must be rejected.

## III.    THE COUNTERCLAIMS VIOLATE THE DISTRICT COURT'S STAY ORDERS AND THE BANKRUPTCY CODE'S AUTOMATIC STAY

As Defendant's Counterclaims naming the Trustee as the "Counterclaim Defendant" are really claims directly against the BLMIS estate, they violate the District Court Stay Orders and Bankruptcy Code's automatic stay, and must be dismissed.

As described above, the District Court Stay Orders prohibit any person or entity from interfering with any assets or property owned, controlled, or in the possession of the BLMIS estate. Simply put, Defendant's Counterclaims circumvent these orders. While the Counterclaims are alleged against the Trustee, the Trustee's only source of funds to theoretically pay these Counterclaims is estate property. Thus, the Counterclaims constitute an attempt to interfere with assets in the possession of the BLMIS estate and must be dismissed. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 315 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 CV 2392 AKH, 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011) (finding that certain third-party actions interfering with potential BLMIS estate assets violated "at least one stay order of the District Court in connection with the related, ongoing SEC litigation").

The Counterclaims also violate the Bankruptcy Code's automatic stay. Under Bankruptcy Code Section 362(a)(3), the commencement of a SIPA liquidation proceeding operates as an automatic stay of, *inter alia*, "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." The automatic stay "is one of the most fundamental bankruptcy protections and applies broadly to 'give[] the debtor a breathing spell' and to prevent creditors from 'obtain[ing] payment of the[ir] claims in preference to and to the detriment of other creditors.'" *In re Madoff*, 848 F.Supp.2d 469, 478–79 (S.D.N.Y. 2012) (quoting H.R. Rep. No. 95–595, at 340 (1977); S. Rep. No. 95–989, at 49 (1978)). Clearly, the Counterclaims are an action "to obtain possession of property of the estate" and therefore must be dismissed as violating the Bankruptcy Code's automatic stay.

The Trustee acknowledges that there are bankruptcy and district court cases within this Circuit holding that the Bankruptcy Code's automatic stay does not apply to actions asserted against the debtor in the same bankruptcy proceeding as where the debtor's case is pending. *See, e.g.*, *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 940 (S.D.N.Y. 1991); *In re Bird*, 229 B.R. 90, 94–95 (Bankr. S.D.N.Y. 1999). However, this is not settled law and several courts outside this Circuit have dismissed claims against a debtor brought in the bankruptcy forum that were filed without obtaining relief from the automatic stay under Bankruptcy Code Section 362(d). *See, e.g.*, *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 296 (5th Cir. 2022) (upholding finding of bankruptcy court that adversary proceeding commenced against debtor violated confirmation order preserving automatic stay because it undermined "orderly liquidation [and] administration of the estate."); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 627 B.R. 916, 921–22 (Bankr. D.N.M. 2021) (creditor suit against debtor in bankruptcy court on pre-petition claim violated automatic stay); *In re Continentalafa Dispensing Co.*, 403 B.R. 653, 658–59 (Bankr. E.D.

Mo. 2009) (applying automatic stay to action against debtor in bankruptcy court for pre-petition wages); *In re Coastal Group, Inc.*, 100 B.R. 177, 178 (Bankr. D. Del. 1989) (pre-petition breach of contract claim brought as adversary proceeding subject to automatic stay); *In re Lessig Constr., Inc.*, 67 B.R. 436, 443–44 (Bankr. E.D. Pa. 1986) (automatic stay applies to bankruptcy proceedings). Consistent with the plain language of Bankruptcy Code Section 362(a), which stays actions against the debtor regardless of forum, it would be "sheer nonsense" to allow a creditor to file an action in bankruptcy court that it would be prohibited from filing in another court. *In re Roman Cath. Church*, 627 B.R. at 922 (citation omitted). In other words, permitting actions against the debtor within the bankruptcy court would effectively gut the automatic stay, and debtors would lose "one of the most fundamental bankruptcy protections." *In re Madoff*, 848 F.Supp.2d at 478–79.

These decisions are particularly persuasive here: a SIPA liquidation proceeding that currently involves numerous separate actions. If this Court does not dismiss Defendant's Counterclaims as violative of the automatic stay, it would signal "an open invitation" for any defendant in this liquidation proceeding "to commence any sort of adversary proceeding against [BLMIS]," rather than adhere to the claims administration process. *In re Penney*, 76 B.R. 160, 161 (Bankr. N.D. Cal. 1987); *see also In re Roman Cath. Church*, 627 B.R. at 922 ("Claims administration is far more efficient than allowing each creditor to sue the debtor in the bankruptcy case."). This could wreak havoc on the "orderly liquidation [and] administration of the [BLMIS] estate," *In re Cleveland*, 26 F.4th at 296, burden this court with unnecessary litigation, and should not be allowed.

Even if this Court determines that the Counterclaims do not violate the District Court Stay Orders or the Bankruptcy Code's automatic stay, it should still dismiss them under its inherent

authority to manage its docket because their adjudication would likely be an "empty gesture." *See Bird*, 229 B.R. at 95 (although finding that automatic stay did not apply, determining that "court has control over the matters on its docket," including power to suspend adversary proceedings against debtor when insufficient funds would render adjudication "an empty gesture"); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (holding that every court can "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). If Defendant's Counterclaims should somehow be successful, Defendant would become a mere unsecured judgment creditor, with last priority behind customers with valid customer claims and SIPC's subrogation rights. 15 U.S.C. § 78fff-2(c)(1); 11 U.S.C. §§ 507, 726. Accordingly, diverting time and resources to litigating these Counterclaims would be a waste of judicial and party resources, likely with no financial benefit to Defendant, and they should be dismissed.

## IV.    THE TRUSTEE IS IMMUNE FROM LIABILITY

To the extent Defendant's Counterclaims actually are against the Trustee as the representative of the BLMIS estate, and not merely attempts to bypass the Claims Procedures Order, SIPA, the District Court Stay Orders, and the Bankruptcy Code's automatic stay, they still must be dismissed because Defendant has not alleged any facts to overcome the Trustee's immunity from suit when acting within the scope of his duties.

As an initial matter, if Defendant is suing the Trustee in his individual capacity—meaning it seeks recovery from the Trustee personally for acts done beyond the scope of his representative authority—its Counterclaims are procedurally defective. Federal Rule of Civil Procedure 13, made applicable to adversary proceedings by Bankruptcy Rule 7013, requires that a counterclaim be asserted against an "opposing party." Because a trustee, in his personal capacity, is not an "opposing party" in an action he initiates in his representative capacity, *Eisenberg v. Casale (In re*

*Casale*), 62 B.R. 899, 900 (Bankr. E.D.N.Y. 1986), any claims against the Trustee personally must be summarily dismissed.

Otherwise, in the Second Circuit, bankruptcy trustees are immune from suit for acts taken within the scope of their official duties. *See, e.g.*, *Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir. 1996); *In re 78-80 St. Marks Place LLC*, 648 B.R. 505, 528 (Bankr. S.D.N.Y. 2023); *Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985). Courts employ an identical standard when deciding whether to grant immunity to SIPA trustees. *Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*, No. 95-08203, 1998 WL 551972, at *11, *17 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir. 2000). Indeed, this Court has held that "a SIPA trustee is immune from suit for personal liability for acts taken as a matter of business judgment when acting in accordance with statutory or other duty or pursuant to court order." *Id.* at *11. A SIPA trustee may be held liable for a "knowing, intentional and/or negligent breach of his fiduciary duties," but there can be no breach of duty to a customer where a trustee acts in accordance with the statutory scheme. *Id.* at *11, 17. Accordingly, a SIPA trustee enjoys immunity when acting in the interest of the estate and in a manner that SIPA expressly contemplates. *Id.* at *17.

This Court has rejected similar attempts to pierce a trustee's immunity in actions concerning the Trustee's marshalling and preserving estate assets. For example, in this SIPA liquidation proceeding, certain defendants asserted counterclaims against the Trustee stemming from a notice letter that the Trustee sent to Goldman Sachs concerning the defendants' account. *In re Bernard L. Madoff Inv. Sec. LLC*, 440 B.R. 282, 287–88 (Bankr. S.D.N.Y. 2010). The notice letter provided that the bank was prohibited from disbursing funds from the defendants' account as those funds constituted customer property. *Id.* This Court dismissed the defendants'

counterclaims in their entirety based on, *inter alia*, the defendants' failure "to plausibly allege that the Trustee intentionally misstated the law or acted other than in his discretion within the limits of a court order or statutory duty." *Id*. at 291. The Court reasoned that the Trustee "was statutorily authorized to send the Letter to Goldman regarding BLMIS funds held in the Answering Defendants' Account in an effort to marshal assets of the estate." *Id*.

The same reasoning warrants dismissal here. The Trustee is entitled to immunity because he is acting "within the scope of his statutory and court-appointed duties" by marshalling and preserving the assets of the estate. *Id*. at 290. The Trustee's preservation of assets, including Defendant's alleged unreturned investments, and distribution of those assets to BLMIS's defrauded customers is a lawful exercise of his powers under SIPA. *See Kusch,* 1998 WL 551972, at *11, *17 (charging SIPA trustee with duties of "marshaling the assets of a debtor's estate and distributing the proceeds in accordance with the scheme established under the statute," and providing him with "wide discretion" in determining how to comply with this mandate). As Defendant has failed to allege any action that the Trustee has taken that falls outside the scope of his duties, the Trustee is immune from Defendant's Counterclaims. *See, e.g.*, *78-80 St. Marks Place*, 648 B.R. at 528 (dismissing counterclaim against bankruptcy trustee for tortious interference with business relations where trustee's decision to withhold authorization for film shoot to occur at property was within scope of his duties).

## V.  DEFENDANT FAILS TO PLAUSIBLY ALLEGE CLAIMS FOR UNJUST ENRICHMENT OR ANY BASIS FOR RELIEF UNDER THE BANKRUPTCY CODE AND SIPA

Finally, notwithstanding the above fatal defects in Defendant's Counterclaims, Defendant fails to plead the elements of unjust enrichment or any basis for relief under Bankruptcy Code Sections 105(a), 502(h), and 553 and SIPA Section 78fff-2(b).

A.    **Defendant Fails to State a Claim for Unjust Enrichment**

To state a claim for unjust enrichment under New York law, Defendant must allege (1) that the Trustee was enriched, (2) at Defendant's expense, and (3) that it is against equity and good conscience to permit the Trustee to retain what Defendant seeks to recover. *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-CV, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022). "The 'essence' of [an unjust enrichment claim] 'is that one party has received money or a benefit at the expense of another.'" *In re Operations NY LLC.*, 490 B.R. 84, 99 (Bankr. S.D.N.Y. 2013) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (1999)); *see Icebox-Scoops, Inc. v. Disney Enter., Inc.*, 520 F. App'x 3, 4 (2d Cir. 2013) (affirming dismissal of unjust enrichment claim where plaintiff "has not plausibly asserted that it had conferred a benefit to Disney that Disney unjustly retained").

Defendant has failed to allege a benefit that it provided to the Trustee. Instead, Defendant alleges that it made "investments in Tremont and Harley," at the time of BLMIS's collapse, "many of these investments . . . remained unredeemed," and that "BLMIS and Madoff, via Tremont and Harley, have been unjustly enriched at NatWest's expense." Countercl. ¶¶ 11–13. By Defendant's own admission, Defendant provided value to the Rye Funds and Harley, *not* to the Trustee or BLMIS, and then those funds, *not* Defendant, provided value to BLMIS. *Id.* Again, if at all, Defendant should have brought its Counterclaims against the Rye Funds and Harley, the parties who received the benefit from Defendant.

Defendant also does not plead that the Trustee *unjustly* retained any benefit conferred by Defendant. Defendant claims that it would be inequitable for Madoff and BLMIS to enjoy the benefit Defendant provided without compensating Defendant. *Id.* ¶ 13. However, Defendant's Counterclaims ignore the special features of bankruptcy. In the typical non-bankruptcy case, an unjust enrichment claim is intended to prevent a party from retaining a benefit that would be

against equity and good conscience to retain. The bankruptcy context is fundamentally different. "The trustee marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns." *In re First Central Fin. Corp.*, 377 F.3d 209, 218 (2d Cir. 2004). As such, there is no unjust enrichment where the trustee's "conduct is fully consistent with—and indeed, required by—the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets." *Id.* at 216; *see also Kusch*, 1998 WL 551972, at *17 ("[T]he trustee's duty to the SIPA estate as a whole clearly prevails over the interests of any single customer.").

Applying these principles, the Second Circuit in *First Central* rejected an attempt to impose a constructive trust (in which unjust enrichment is the key element) on a federal tax refund that the trustee received from the IRS and held as property of the debtor, although the debtor had agreed to allocate the refund with another company. 377 F.3d at 211. In reaching its conclusion, the Court observed, "[t]he chief purposes of the bankruptcy laws are 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' 'to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,' and 'to protect the creditors from one another.'" *Id.* at 217 (citation omitted). The Court explained that imposing a constructive trust would create "a separate allocation mechanism outside the scope of the bankruptcy system" that would "wreak . . . havoc with the priority system ordained by the Bankruptcy Code." *Id.* (citation omitted); *see also In re Ades & Berg Grp. Invs.*, 550 F.3d 240, 245 (2d Cir. 2008) (upholding "reasoning in *First Central*, [that] retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust").

18

*First Central* and *Ades & Berg* are dispositive here. The Counterclaims are based on the Trustee's exercise of his statutory obligations under SIPA and the Bankruptcy Code to marshal and preserve assets of the BLMIS estate through avoidance and recovery actions against subsequent transferees. There is nothing unjust about the Trustee marshalling and preserving the assets of the estate. Instead, permitting Defendant's unjust enrichment claim to proceed would create separate allocation methods similar to those the Second Circuit rejected in *First Central* and *Ades & Berg*.

Accordingly, Defendant's Counterclaims must be dismissed "[b]ecause the Trustee does not hold property under such circumstances that in equity and good conscience he ought not to retain it." *First Central*, 377 F.3d at 218 (internal quotation marks and citation omitted).

### B.    Defendant Fails to Cite a Legal Basis for Relief Under the Bankruptcy Code or SIPA

Defendant alleges that the Counterclaims fall under Sections 105(a), 502(h), and 553 of the Bankruptcy Code and SIPA Section 78fff-2(b). But none of these provisions provide a basis for relief. Section 105(a) of the Bankruptcy Code states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." But rather than supporting Defendant's Counterclaims, such an order dismissing the Counterclaims is necessary here to effectuate the claims administration process, the District Court Stay Orders, and the Bankruptcy Code's automatic stay and preserve the orderly liquidation and administration of the BLMIS estate. Section 502(h) provides that a creditor *may* eventually have a claim against the estate arising from a trustee's recovery of estate property held by the creditor. However, Defendant has not repaid the amount it owes to the estate as of yet. *See In re Best Products Co., Inc.*, 168 B.R. 35, 58 (Bankr. S.D.N.Y. 1994) (finding that, to extent lenders gave consideration to debtor,

they would have allowable claim so long as they satisfied judgment arising out of fraudulent transfer action).

Similarly, Defendant has no right to setoff under Section 553.  One of the prerequisites of setoff is that "the debtor's claim against the creditor and the debt owed the creditor must be mutual."  *In re Lehman Brothers Holdings, Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (citation omitted).  "[D]ebts are mutual when they are due to and from the same persons in the same capacity."  *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 1998) (citation omitted).  Defendant impermissibly seeks to offset its pre-petition claims (against Tremont and Harley) against the Trustee's post-petition claims for recovery of transfers.  *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 465–66 (Bankr. S.D.N.Y. 2007) (finding setoff not proper because, while debtor's obligation to claimant stemmed from pre-petition debt, claimant's obligation to return preference payments resulted from operation of Bankruptcy Code and was post-petition debt).  A passing reference to SIPA Section 78fff-2(b) merely contains the provisions of a SIPA liquidation proceeding.  Neither these nor any other sections of the Bankruptcy Code or SIPA provide authority for Defendant's Counterclaims.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's Counterclaims should be dismissed in their entirety.

Dated:    July 17, 2023             /s/ Patrick T. Campbell
          New York, New York        **Baker & Hostetler LLP**
                                    45 Rockefeller Plaza
                                    New York, New York 10111
                                    Telephone: (212) 589-4200
                                    Facsimile: (212) 589-4201
                                    David J. Sheehan
                                    Email: dsheehan@bakerlaw.com
                                    Patrick T. Campbell
                                    Email: pcampbell@bakerlaw.com
                                    Camille C. Bent
                                    Email: cbent@bakerlaw.com
                                    Elizabeth G. McCurrach
                                    Email: emccurach@bakerlaw.com
                                    Matthew K. Cowherd
                                    Email: mcowherd@bakerlaw.com


                                    *Attorneys for Irving H. Picard, as*
                                    *Trustee for the Substantively Consolidated*
                                    *SIPA Liquidation of Bernard L. Madoff*
                                    *Investment Securities LLC and the Chapter 7*
                                    *Estate of Bernard L. Madoff*

21