Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for BGL BNP Paribas S.A., BNP Paribas
Arbitrage SNC, BNP Paribas Bank & Trust Cayman
Limited, BNP Paribas S.A., and BNP Paribas
(Suisse) S.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (CGM)<br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>     Plaintiff,<br><br>v.<br><br>BGL BNP PARIBAS S.A., BNP PARIBAS ARBITRAGE SNC, BNP PARIBAS BANK & TRUST CAYMAN LIMITED, BNP PARIBAS S.A., and BNP PARIBAS (SUISSE) S.A.,<br><br>     Defendants. | Adv. Pro. No. 12-01576 (CGM)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE BNPP DEFENDANTS' <u>MOTION TO DISMISS</u>** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ........................................................................................................ 3

I.             THE BNPP DEFENDANTS ............................................................ 3

II.           ORIGINAL COMPLAINT ............................................................. 4

III.         FIRST AMENDED COMPLAINT AND THE
COURT'S REJECTION OF THE TRUSTEE'S
ATTEMPT TO ASSERT TIME-BARRED CLAIMS .................... 5

IV.         SECOND AMENDED COMPLAINT ............................................ 7

LEGAL STANDARD .............................................................................................. 8

ARGUMENT ............................................................................................................. 9

I.             THE RELATION BACK DECISION IS LAW OF
THE CASE AND FORECLOSES THE
TRUSTEE'S CLAIMS FOR CLAWBACK OF THE
NEW TRANSFERS .......................................................................... 9

II.           THE TRUSTEE'S CLAIMS TO CLAW BACK
THE NEW TRANSFERS ARE TIME-BARRED ........................... 12

        A.    *The New Transfers Arise Out of New Transactions and
Occurrences, and Therefore Do Not Relate Back* ......................... 14

        B.    *The Trustee's Generic Allegations of Intent and
Investigation Are Legally Insufficient* ............................................ 16

III.         THE COURT LACKS PERSONAL
JURISDICTION OVER THE NEW BNPP
DEFENDANTS ................................................................................. 17

IV.         THE TRUSTEE'S CLAIMS MUST BE
DISMISSED FOR FAILURE TO PLEAD THAT
THE BNPP DEFENDANTS RECEIVED BLMIS
CUSTOMER PROPERTY ............................................................... 21

**Page**

V.      THE BNPP DEFENDANTS ARE ENTITLED TO
        A "GOOD FAITH" AND "FOR VALUE"
        DEFENSE ...................................................................................    24

        A.    *The BNPP Defendants Plainly Received the Alleged
              Transfers "For Value"* ...................................................    24

        B.    *The BNPP Defendants Acted in Good Faith and
              Without Knowledge of Madoff's Fraud* .........................    25

VI.     THE INITIAL TRANSFERS ARE NOT
        AVOIDABLE....................................................................................    26

        A.    *The Trustee Should Not Be Allowed To Rely on the
              "Ponzi Scheme Presumption" To Avoid His Pleading
              Burden Under Section 548(a)(1)(A)* ...............................    27

        B.    *The Transfers Are Not Avoidable Under Section
              548(a)(1)(B)* ...................................................................    29

VII.    THE TRUSTEE'S CLAIMS ARE BARRED BY
        THE SAFE HARBOR OF SECTION 546(E)................................    30

        A.    *The Alleged Subscription Agreements Were
              "Securities Contracts"*....................................................    31

        B.    *The Alleged Transfers Were "Settlement Payments"*.....................    31

        C.    *The Alleged Transfers Were Made by and to Covered
              Entities Under Section 546(e)* .........................................    32

        D.    *No Other Exception to the Safe Harbor Applies*............................    33

CONCLUSION................................................................................................    35

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009) ........................................................... 14

*Alki Partners, L.P. v. Vatas Holding GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011), *aff'd sub nom.*
    *Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012)................................ 9

*Arizona v. California*,
    460 U.S. 605 (1983)..................................................................................... 9, 11

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)........................................................................................ 19

*ASARCO LLC v. Goodwin*,
    756 F.3d 191 (2d Cir. 2014)........................................................................ 13, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................... 8, 17, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................... 8

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    No. 11 Civ. 8921 (DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) .................... 4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................... 18, 19

*Coronna v. Cnty. of Suffolk*,
    No. 05-6016, 2008 WL 2371421 (E.D.N.Y. June 9, 2008)........................................ 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................ 18

*Fairfield Sentry Ltd. v. Migani*
    [2014] UKPC 915 ....................................................................................... 21

**Page(s)**

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
  No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)...............    21

*Finn v. All. Bank*,
  860 N.W.2d 638 (Minn. 2015).........................................................................    28

*Hau Yin To v. HSBC Holdings PLC*,
  No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).......................    19

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)........................................................................................    18

*Hill v. HSBC Bank PLC*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)..............................................................    19

*In re Bennett Funding Grp., Inc.*,
  232 B.R. 565 (Bankr. N.D.N.Y. 1999) ............................................................    29

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011)..............................................................    30

*In re Enron Corp.*,
  298 B.R. 513 (Bankr. S.D.N.Y. 2003), *aff'd*, 419 F.3d 115 (2d Cir. 2005) ................    12–13

*In re Enron Corp. v. Avenue Special Situations Fund II*,
  333 B.R. 205 (Bankr. S.D.N.Y. 2005)..............................................................    24

*In re JVJ Pharmacy, Inc.*,
  630 B.R. 388 (S.D.N.Y. 2021) .......................................................................    26–27

*In re M. Fabrikant & Sons*,
  480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013)......................    13, 14

*In re Metzeler*,
  66 B.R. 977 (Bankr. S.D.N.Y. 1986).......................................................    13, 14, 17

*In re Trib. Co. Fraudulent Conv. Litig.*,
  946 F.3d 66, 78–79 (2d Cir. 2019) ...............................................................    32

*Lavazza Premium Coffees Corp. v. Prime Line Distribs.* Inc.,
  No. 20 Civ. 9993 (KPF), 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) .....................    21

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A.* (*In re Lehman Bros. Holdings Inc.*),
  535 B.R. 608 (Bankr. S.D.N.Y. 2015).............................................................    8–9

**Page(s)**

*Lustig v. Weisz & Assocs., Inc.* (*In re Unified Com. Cap., Inc.*),
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ................................................................ 29

*Lyon v. Forbes* (*In re Forbes*),
    372 B.R. 321 (B.A.P. 6th Cir. 2007).................................................................... 21

*Mayle v. Felix*,
    545 U.S. 644 (2005).............................................................................................. 13

*Merrill v. Abbott* (*In re Indep. Clearing House Co.*),
    77 B.R. 843 (D. Utah 1987)................................................................................. 28

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)............................................................................. 9, 11

*Off. Comm. of Unsecured Creditors v. Pirelli Commc'ns Cables & Sys. USA LLC* (*In re 360networks (USA) Inc.*),
    367 B.R. 428 (Bankr. S.D.N.Y. 2007).............................................................. 14

*Papasan v. Allain*,
    478 U.S. 265 (1986)......................................................................................... 8, 22

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)................................................................................ 23

*Picard v. ABN Amro Bank N.A.*,
    Adv. Pro. No. 08-01789 (SMB), 2020 WL 1584491
    (Bankr. S.D.N.Y. Mar. 31, 2020) ...................................................................... 24

*Picard v. BNP Paribas S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. Oct. 3, 2018) ............................................ *passim*

*Picard v. Citibank, N.A.*,
    12 F.4th 171 (2d Cir. 2021) .......................................................... *passim*

*Picard v. Fairfield Inv. Fund*,
    Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........... 33

*Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    773 F.3d 411 (2d Cir. 2014)........................................................................... 31, 32

*Picard v. Legacy Capital Ltd.* (*In re BLMIS*),
    603 B.R. 682 (Bankr. S.D.N.Y. 2019)................................................................ 29

**Page(s)**

*Picard v. Multi-Strategy Fund Ltd.*,
   No. 22-cv-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ..................... 34

*Picard v. Peter Madoff*,
   468 B.R. 620 (Bankr. S.D.N.Y. Apr. 4, 2012)................................................................ 15

*Picard v. Shapiro* (*In re BLMIS*),
   542 B.R. 100 (Bankr. S.D.N.Y. 2015)............................................................................ 22

*Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*,
   Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6, 2023) .. 11

*Sapia v. Home Box Office, Inc.*,
   No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)...................... 23–24

*Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*),
   403 F.3d 43 (2d Cir. 2005)........................................................................... 27, 29

*Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*),
   379 B.R. 5 (S.D.N.Y. 2007)............................................................................ 21

*SIPC v. BLMIS*,
   Adv. Pro. No. 12-01195 (CGM), 2023 WL 2998470 (Bankr. S.D.N.Y. Apr. 18,
   2023) ......................................................................................................... 16

*SIPC . v. BLMIS*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015).......................................................... 21

*SIPC v. BLMIC*,
   No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016)............. 5

*SIPC v. BLMIS*,
   641 B.R. 78 (Bankr. S.D.N.Y. June 13, 2022) ........................................... 33–34

*SIPC v. BLMIS*,
   No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................. 31, 33

*SIPC v. BLMIS*,
   476 B.R. 715 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014) ............................ 32

*SIPC v. BLMIS (In re BLMIS)*,
   501 B.R. 26 (S.D.N.Y. 2013)......................................................................... 12, 27

**Page(s)**

*Slayton v. Am. Express Co.*,
460 F.3d 215 (2d Cir. 2006).......................................................... 13

*SPV OSUS, Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018).......................................................... 18

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019).......................................................... 19–20

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)........................................................ 11

*Walden v. Fiore*,
571 U.S. 277 (2d Cir. 2014).......................................................... 18

**Rules and Statutes**

11 U.S.C. § 101(22)(A).................................................................. 32

11 U.S.C. § 101(53A)(B)............................................................... 32

11 U.S.C. § 546(e)........................................................ 30, 31, 32, 33, 34, 35

11 U.S.C. § 548(a)(1)(A) ............................................... 27, 28, 29, 30

11 U.S.C. § 548(a)(1)(B) .............................................................. 29

11 U.S.C. § 550(a)(2).................................................................... 21

11 U.S.C. § 550(b) ............................................................ 2, 24, 25, 26

11 U.S.C. § 550(f) .............................................................. 2, 12, 17

11 U.S.C. § 741(7)(A) ................................................................... 31

11 U.S.C. § 741(8) ....................................................................... 31

Fed. R. Civ. P. 9(b) ................................................................. 27, 29

Fed. R. Civ. P. 15(c)(1)(B) ........................................................... 12

Fed. R. Civ. P. 15 .................................................................. *passim*

Fed. R. Civ. P. 12(b) ............................................................... *passim*

**Page(s)**

<u>**Other Authorities**</u>

*BNP Paribas: Merger / Acquisition*, (Oct. 13, 2022, 7:32 AM),
      https://www.marketscreener.com/quote/stock/BNP-PARIBAS-4618/news/BNP-
      Paribas-Merger-Acquisition-41999083/ ................................................................ 3

BGL BNP Paribas S.A., individually and as successor in interest to BNP Paribas

Luxembourg S.A. ("BGL BNPP"), BNP Paribas Arbitrage SNC ("BNPP Arbitrage"), BNP

Paribas Bank & Trust Cayman Limited ("BNPP Cayman"), BNP Paribas S.A. ("BNPP SA"), as

successor in interest to BNP Paribas Securities Services S.C.A. ("BNPP Sec. Serv.") and BNP

Paribas Securities Services – Succursale de Luxembourg ("BNPP 2S Lux"), and BNP Paribas

(Suisse) S.A., individually and as successor in interest to BNP Paribas Private Bank

(Switzerland) S.A. and as successor in interest to United European Bank ("BNPP Suisse")

(collectively, the "BNPP Defendants"), by and through their undersigned counsel, submit this

memorandum of law in support of their motion to dismiss with prejudice the Second Amended

Complaint, (ECF No. 191) (the "SAC") filed by Irving H. Picard, Trustee (the "Trustee") for the

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to Rules

12(b)(6), 12(b), and 15(c) of the Federal Rules of Civil Procedure "(the "Federal Rules").

## PRELIMINARY STATEMENT[1]

The Trustee's Second Amended Complaint is the latest in a meritless,

decade's-long attempt to extract a judgment from BNP Paribas entities.  This iteration of the

Trustee's ever-changing complaint seeks clawback of roughly $111 million in subsequent

transfers of asserted "customer property" initially transferred from BLMIS to a variety of so-

called "feeder funds."  Yet, despite having the benefit of two prior pleading attempts, the SAC

still cannot overcome its many fatal defects:

First, notwithstanding this Court's previous and unequivocal rejection of the

Trustee's prior attempt to raise untimely claims, the SAC seeks to assert, for the first time,

clawback claims for more than $87.9 million in transfers that have been time-barred for more

---

[1] Capitalized terms used in the Preliminary Statement have the meaning ascribed to them herein.

than a decade.  As with the Trustee's prior effort, principles of relation back provide no refuge

from the plain terms of the statute of limitations under section 550(f) of the Bankruptcy Code,

and these claims must be dismissed under both well-established relation back case law and this

Court's prior decision, which is law of the case.

Second, the SAC fails to establish that this Court has personal jurisdiction over

BGL BNPP, BNPP 2S Lux, and BNPP Suisse (the "New BNPP Defendants").  As discussed

below, the Trustee's allegations do not provide any basis for the Court to determine that the New

BNPP Defendants—all foreign entities—are "at home" in New York, nor that they availed

themselves of the privileges and benefits of doing business in New York in respect of the alleged

transfers.

Third, the face of the SAC itself evinces that BNPP Defendants' entitlement to the

protection of the "good faith" and "for value" defense available under section 550(b).  Not only

does the SAC contain no allegations that the BNPP Defendants were on inquiry notice of

Madoff's fraud, or that a diligent inquiry would have been sufficient to uncover it, the Trustee's

own pleadings conclusively demonstrate that the BNPP Defendants gave value for each of the

Subsequent Transfers and took them in good faith.

Fourth, the SAC does not demonstrate that the Subsequent Transfers comprise

customer property, which requires a sufficient link between the initial transfers from BLMIS to

the Fairfield and Tremont Funds and the Subsequent Transfers he seeks to claw back.  Far from

satisfying that burden, the SAC presents a maze of nearly two dozen exhibits that do not even

attempt to establish that the Subsequent Transfers constitute customer property.

Fifth, the Trustee has failed to adequately plead that the Initial Transfers are

avoidable under section 548(a)(1).  Not only should the Trustee not be permitted to rely on the

flawed premise of the so-called "Ponzi scheme presumption" to avoid his burden of pleading actual fraud (which the SAC otherwise does not even attempt), his failure to allege that the BNPP Defendants received any fictitious profits forecloses his capacity to allege that the transfers were constructively fraudulent as well.

Finally, the safe harbor codified under section 546(e) shields all of the Subsequent Transfers from the Trustee's claims for clawback, because each was a settlement payment in connection with a securities contract made by, to, or for the benefit of, a covered entity under the statute.

For all of these reasons and as discussed more fully below, the SAC fails as a matter of law, and should be dismissed with prejudice.

## BACKGROUND

### I.    The BNPP Defendants

The Trustee seeks to claw back transfers allegedly made by certain BLMIS feeder funds to six legally distinct BNPP entities.  SAC ¶¶ 85–90 (the "Subsequent Transfers").  None of the BNPP Defendants are alleged to have directly invested funds with BLMIS.  Instead, each of the BNPP Defendants is alleged to have received the Subsequent Transfers as a result of its subscription for and redemption of shares of feeder funds which, in turn, are alleged to have placed and withdrawn their own funds from BLMIS.  *Id.* ¶¶ 95, 99, 101, 106, 110, 121, 124, 129, 135.

Although prior iterations of the Trustee's complaint have named BNPP SA as a defendant individually, the SAC names BNPP SA solely as successor in interest to BNPP Sec. Serv. and BNPP 2S Lux, which merged into BNPP SA in 2022.[2]

---

[2] *See BNP Paribas: Merger / Acquisition*, (Oct. 13, 2022, 7:32 AM),
https://www.marketscreener.com/quote/stock/BNP-PARIBAS-4618/news/BNP-Paribas-Merger-Acquisition-

BNPP Sec. Serv. is alleged to have been incorporated under the laws of France and is alleged to have maintained offices in Paris, New York, and the Cayman Islands. *Id.* ¶ 88. BNPP 2S Lux is alleged to have been "incorporated and organized under the laws of France" and is alleged to have maintained offices in Luxembourg. *Id.* ¶ 89. BNPP Arbitrage is alleged to be incorporated under the laws of France and to maintain offices in both Paris and New York. *Id.* ¶ 86. BNPP Cayman is alleged to be incorporated under the laws of, and maintain its offices in, the Cayman Islands. *Id*. ¶ 87. BGL BNPP is alleged to be "a *société anonyme* incorporated and organized under the laws of Luxembourg," and to maintain offices in Luxembourg. *Id.* ¶ 85. BNPP Suisse is alleged to be "a *société anonyme* incorporated and organized under the laws of Switzerland," and to maintain offices in Switzerland. *Id.* ¶ 90.

## II.     Original Complaint

The Trustee brought his original complaint (the "OC") on May 4, 2012, initially seeking to claw back $27,111,931 in transfers allegedly made by Fairfield Sentry Limited ("Fairfield Sentry"), Rye Select Broad Market XL Portfolio Limited ("XL Portfolio"), Rye Select Broad Market XL Fund LP ("XL LP"), and Rye Select Broad Market Portfolio Limited ("Portfolio Limited" and collectively with XL Portfolio and XL LP the "Tremont Funds"), to BGL BNPP, BNPP 2S Lux, BNPP Arbitrage, BNPP Cayman, BNPP SA (individually), BNPP

---

41999083/.  "The Court generally has the discretion to take judicial notice of internet material." *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921 (DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013).

Sec. Serv., BNPP Suisse, and BNP Paribas Bank & Trust (Canada) ("BNPP Canada").[3]  As

relevant to the Motion, the alleged transfers are set forth below:[4]

| Alleged Transferor | Alleged Transferee | Total Claims |
|---|---|---|
| Fairfield Sentry | BNPP Suisse | $279,712 |
| XL Portfolio | BNPP Arbitrage | $6,452,906 |
| XL Portfolio | BNPP Cayman | $2,500,000 |
| XL LP | BNPP Cayman | $1,987,824 |
| Portfolio Limited | BNPP Cayman | $8,261,885 |
| Portfolio Limited | BNPP Sec. Serv. | $3,097,994 |

## III.    First Amended Complaint and the Court's Rejection of the Trustee's Attempt to Assert Time-Barred Claims

The Trustee filed a First Amended Complaint ("FAC") on August 30, 2017,

which sought to claw back a significant number of new alleged transfers not previously sought

by the OC.  Specifically, the FAC named BNPP Cayman, BNPP Arbitrage, BNPP SA

(individually), and BNPP Sec. Serv. as defendants and targeted $96,851,800 in transfers

allegedly made by Ascot Partners, LP ("Ascot")[5] and Rye Select Broad Market Insurance

---

[3] Compl., *Picard v. BNP Paribas S.A.*, Adv. Proc. No. 12-01576 (Bankr. S.D.N.Y. May 4, 2012), (ECF No. 1) (the "OC").  The OC's claims regarding the Fairfield and Kingate Funds were dismissed in November 2016 (which, as discussed below, is more than four years after the expiry of the statute of limitations on Fairfield-related claims). *SIPC v. BLMIS*, No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) (the "Extraterritoriality Decision").  The Trustee also voluntarily dismissed BNPP Canada with prejudice. Notice Voluntary Dismissal Def. BNP Paribas Bank & Trust (Canada) Prejudice, *Picard v. BNP Paribas S.A.*, Adv. Proc. No. 12-01576 (Bankr. S.D.N.Y. July 13, 2015), (ECF No. 66).

[4] In addition to these alleged transfers, the OC also sought to claw back approximately $92,583,287 in subsequent transfers from Kingate Global, Ltd. and certain of its affiliated funds (collectively, the "Kingate Funds") to certain of the BNPP Defendants.  The Trustee subsequently settled with the Kingate Funds for 100% of its Six-Year initial transfers and 93% of its lifetime initial transfers, and, in accordance with section 550(d), has not sought to revive those claims. Mot. for Entry of Order, *Picard v. Ceretti*, Adv. Proc. No. 09-01161 (CGM) (Bankr. S.D.N.Y. July. 17, 2019), (ECF No. 413).

[5] The Trustee settled with Ascot, and reached a stipulation with the BNPP Defendants to drop those claims from the FAC before the Court decided on its motions to dismiss.  Stipulated Order to Dismiss Claims to Recover the Ascot Transfers from the Am. Compl., *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Sept. 12, 2018), (ECF No. 145).

Portfolio LDC ("Insurance Portfolio"), and a further $35,718,808 in transfers from the Tremont

Funds in addition to the $23,409,029 alleged in the OC.[6]

Defendants sought dismissal of the FAC, including on the basis that the Trustee

attempted to claw back time-barred transfers not alleged in the OC.[7]  The Trustee opposed,

arguing that his new claims related back to the OC under Federal Rule of Civil Procedure 15

("Rule 15"), claiming that (i) the BNPP Defendants were alleged to have engaged in a common

scheme such that all transfers were part of the same transaction or occurrence and (ii) his

assertion of a generalized intention to claw back "all transfers," as well as his reference to

ongoing investigation, put the BNPP Defendants on sufficient notice of the new claims.[8]

On October 3, 2018, this Court (Bernstein, J.) granted the BNPP Defendants'

motion to dismiss the time-barred transfers.  *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 210

(Bankr. S.D.N.Y. 2018) ( the "Relation Back Decision").  In doing so, the Court held that,

contrary to the Trustee's claim, the BNPP Defendants "were not at the center of a common

scheme to strip assets from BLMIS, but instead, were looking to payments from third parties"

and that the Trustee's attempt to rely on generalized allegations of intent or investigation

"prove[d] too much," and contravened the requirements of Rule 15.  *Id.* 210.  Following the

Court's dismissal of the bulk of the Trustee's claims, and after some preliminary progression of

the case, the parties agreed to a stay pending the resolution of certain appeals in other BLMIS

---

[6] Am. Comp., *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Aug. 30, 2017), (ECF No. 100).

[7] Mem. of Law in Support of the BNPP Defs.' Mot. to Dismiss, *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Oct. 25, 2017), (ECF No. 107) at 35.

[8] Trustee's Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Am. Compl., *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Dec. 20, 2017), (ECF No. 110) at 38.

cases.[9]  Upon the resolution of those appeals, and after a period of dormancy, the Trustee has

once again amended his complaint in the pursuit of new time-barred claims.[10]

## IV.    Second Amended Complaint

The SAC seeks to claw back $111 million in subsequent transfers allegedly made

to the BNPP Defendants.  Of that amount, $87,938,690 are alleged transfers that were not

previously pleaded (the "New Transfers"), including $82,173,265 of alleged transfers where the

SAC represents the very first time the Trustee has sought to claw back any transfers between the

relevant BNPP entity and the fund (the "New Relationship Transfers").  The below chart reflects

the alleged New Transfers, including the portion of those transfers that comprise the New

Relationship Transfers.[11]

| Alleged Transferor | Alleged Transferee | New Transfers | New Relationship Transfers |
|---|---|---|---|
| Fairfield Sentry | BGL BNPP[12] | $428,837 | $428,837 |
| Fairfield Sentry | BNPP 2S Lux[13] | $8,251,780 | $8,251,780 |
| Fairfield Sentry | BNPP Arbitrage[14] | $20,187,336 | $20,187,336 |
| Fairfield Sentry | BNPP Cayman[15] | $13,474,091 | $13,474,091 |

---

[9] Disc. Stay Stipulation and Order, *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Dec. 20, 2017), (ECF No. 162).

[10]  As discussed below, this includes at least one transfer expressly disallowed by the Court in the *Relation Back Decision*.  *See Relation Back Decision*, 594 B.R. at 210.

[11] The SAC also includes claims previously asserted by the Trustee which are not the subject of the Trustee's Rule 15 request, including transfers totaling (1) $279,712 from Fairfield Sentry to BNPP Suisse, (2) $6,452,906 from XL Portfolio to BNPP Arbitrage, (3) $2,500,000 from XL Portfolio to BNPP Cayman, (4) $1,987,824 from XL LP to BNPP Cayman, (5) $8,261,885 from Portfolio Limited to BNPP Cayman, and (6) $3,097,994 from Portfolio Limited to BNPP Sec. Serv. *Supra* Section II.

[12] *Compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sentry or Fairfield Sigma to BGL BNPP) *with* SAC ¶¶ 275–78; SAC Exs. C, J.

[13] *Compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sentry or Fairfield Sigma to BNPP 2S Lux) *with* SAC ¶¶ 291–94; SAC Exs. G, L.

[14] *Compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sentry to BNPP Arbitrage) *with* SAC ¶¶ 279–82; SAC Ex. D.

[15] *Compare* OC ¶¶ 116–21, 142, 148 (not seeking clawback of transfers from Fairfield Sentry to BNPP Cayman, and a lower amount from the Tremont Funds) *with* SAC ¶¶ 279–82; SAC Exs. E, Q, S.

| Alleged Transferor | Alleged Transferee | New Transfers | New Relationship Transfers |
|---|---|---|---|
| Fairfield Sentry | BNPP Sec. Serv. [16] | $29,999,235 | $29,999,235 |
| Fairfield Sentry | BNPP Suisse[17] | $5,657,005 | N/A |
| Fairfield Sigma | BGL BNPP | $1,270,142 | $1,270,142 |
| Fairfield Sigma | BNPP 2S Lux | $1,677,928 | $1,677,928 |
| Fairfield Sigma | BNPP Sec. Serv. | $5,652,076 | $5,652,076 |
| Fairfield Sigma | BNPP Suisse | $1,231,840 | $1,231,840 |
| Portfolio Limited | BNPP Cayman | $108,420[18] | N/A |

## LEGAL STANDARD

The Court must dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim for relief pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor a "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a prima facie showing that jurisdiction exists." *Lehman Bros. Special Fin. Inc.*

---

[16] *Compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sentry or Fairfield Sigma to BNPP Sec. Serv.) *with* SAC ¶¶ 287–90; SAC Exs. F, K.

[17] *Compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sigma to BNPP Suisse, and seeking a lower amount from Fairfield Sentry) *with* SAC ¶¶ 295–98; SAC Exs. M, H.

[18] Incredibly, this $108,420 transfer to BNPP Cayman was already expressly denied by this Court's *Relation Back Decision*. *See Relation Back Decision*, 594 B.R. at 210. *Compare* OC Ex. AA *with* SAC Ex. S.

8

*v. Bank of Am. N.A.* (*In re Lehman Bros. Holdings Inc.*), 535 B.R. 608, 618 (Bankr. S.D.N.Y.

2015).  "Conclusory allegations lacking factual specificity . . . do not satisfy plaintiff's burden"

of showing a prima facie case for exercising personal jurisdiction.  *Alki Partners, L.P. v. Vatas*

*Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v.*

*Windhorst*, 472 F. App'x 7 (2d Cir. 2012).

## **ARGUMENT**

I.    **The Relation Back Decision Is Law of the Case and Forecloses the Trustee's Claims
      for Clawback of the New Transfers**

It is well established that "when a court decides upon a rule of law, that decision

should govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460

U.S. 605, 618 (1983).  This rule rests on the principle, rooted in judicial economy and fairness,

that "'where litigants have once battled for the court's decision, they should neither be required,

nor without good reason permitted, to battle for it again.'"  *See Off. Comm. of Unsecured*

*Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)

(quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).

"'When applying the law of the case, courts look to factors such as the finality of the prior

decision, and the identity of the parties in the previous ruling.'"  *Id.*  (quoting *Zdanok v. Glidden*

*Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).  Applying these factors, the

Court's *Relation Back Decision* bars the Trustee's belated amendment to add the New Transfers.

The *Relation Back Decision* held: (1) the mere existence of other transfers in prior

complaints does not satisfy Rule 15 with respect to newly alleged transfers; and (2) a generic

allegation that an investigation is ongoing and that the Trustee intends to claw back all transfers

made to the BNPP Defendants does not put those defendants on fair notice of the claims against

them and likewise cannot satisfy Rule 15.  *Relation Back Decision*, 594 B.R. at 210.

9

In rejecting the Trustee's reliance on prior alleged transfers, the Court found that:

> [E]ach subsequent transfer, old or new, arose from either separate
> and distinct loans, credit facilities or derivative transactions with
> various counterparties while others appear to relate to either
> redemptions or equity distributions to the Defendants as direct
> investors in the Tremont Funds.  The assertion that all the original
> subsequent transfer claims and the New Subsequent Transfer Claims
> arose from a 'common core of operative facts' lacks merit.

*Id.* at 210–11.  Based on this unassailable reasoning, the Court rejected not only the Trustee's

attempts to claw back transfers between entities not previously alleged to have recoverable

transfers between them, but also his attempts to add clawback claims where the Trustee had

previously sought to claw back some transfers between the relevant entities.  *Id.* at 210–11.  For

both types of transfer, the Court found that each alleged transfer represented a new, unique

transaction that could not relate back to the separate transfers alleged in the OC.  *Id.* at 211.  In

reaching that conclusion, the Court found that:

> The subsequent transfers to the Defendants listed in the [FAC], old
> and new, were not part of the common fraudulent scheme or pattern
> present in *Adelphia* and *Peter Madoff*.  Each arose out of a separate
> leverage transaction or redemption, and the facts and circumstances
> surrounding the value given in exchange for the transfer will differ.

*Id*.

The Court was equally clear when rejecting the Trustee's attempted reliance on

the boilerplate assertion that his investigation of claims was ongoing and that he had a broad

intent to seek to claw back all transfers made to the BNPP Defendants.  The Court found that

reliance on such generic claims "proves too much; it ignores [Rule 15's] requirement that the

new claims must 'ar[ise] out of the conduct, transaction, or occurrence set out – or attempted to

be set out – in the original pleading.'"  *Id.* at 210.

These holdings—in an issue-dispositive ruling after full litigation by largely the

same parties before the Court on this Motion—plainly are law of the case, and their application

to the SAC compels the dismissal of the New Transfers.  *See Coopers*, 322 F.3d at 167; *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  Here, as in the *Relation Back Decision*, the Trustee has not alleged (and could not allege) that the New Transfers are part of specific, previously alleged transactions.  *E.g.*, *compare* OC ¶¶ 116–21 (not seeking clawback of transfers from Fairfield Sentry or Fairfield Sigma to BGL BNPP) *with* SAC ¶¶ 275–78 (including no allegations that the transfers sought to be clawed back from BGL BNPP are part of the same transactions alleged to have involved BGL BNPP in the OC); *see also Relation Back Decision*, 594 B.R. at 210-11.  And, to the extent the Trustee seeks to fall back on his generic allegations regarding an intent to claw back all transfers and his ongoing investigation (as he has done in recent cases before this Court),[19] the *Relation Back Decision* in this case categorically rejects that as a sufficient basis to satisfy Rule 15.  *Relation Back Decision*, 594 B.R. at 210–11.

The BNPP Defendants submit that there is no basis to jettison the Court's prior, well-reasoned holding on identical issues to those presented by the SAC; to the contrary, permitting the Trustee's decade-overdue amendment would run contrary to the core principles of judicial economy that underlie the law of the case doctrine.  *Arizona*, 460 U.S. at 619 ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

---

[19] *See, e.g.*, *Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 at *6 (Bankr. S.D.N.Y. Jan. 6, 2023).

Accordingly, the Court should apply its prior holdings and dismiss the Trustee's claw back
claims in respect of the New Transfers.

## II.    The Trustee's Claims to Claw Back the New Transfers Are Time-Barred

Even if the Court were disinclined to apply the *Relation Back Decision* as law of
the case, application of Rule 15 and applicable case law equally foreclose the Trustee's attempt
to claw back the New Transfers because those claims are more than a decade time-barred.

Once the Trustee avoids a transfer, he has only one year to commence a claw back
action under section 550.  11 U.S.C. § 550(f).  As relevant here, the Court approved settlements
between the Trustee and the Fairfield Funds and Tremont Funds on June 10, 2011, and
September 22, 2011, respectively, pursuant to which BLMIS's transfers to those funds were
avoided under Section 548.[20]  Accordingly, the Trustee's time to assert claims to claw back
Fairfield Fund transfers expired on June 10, 2012, and his time for asserting claims to claw back
Tremont Fund transfers expired on September 22, 2012.  *See SIPC v. BLMIS (In re BLMIS)*, 501
B.R. 26, 32 (S.D.N.Y. 2013) (settlement of an avoidance claim triggers section 550(f)).

Given that the statute of limitations expired over eleven years ago, the Trustee
may only plead new claims if he can establish that, under Rule 15, they "relate back" to claims
made within the limitations period.  Claims "relate back" for purposes of Rule 15 when "the
amendment asserts a claim . . . that arose out of the conduct, transaction or occurrence set
out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The
party asserting the relation back bears the burden of proving that its newly asserted claims satisfy
these requirements by demonstrating its new claim arises out of "a common 'core of operative
facts' uniting the original and newly asserted claims."  *In re Enron Corp.*, 298 B.R. 513, 522

---

[20] SAC ¶¶ 214, 244.

(Bankr. S.D.N.Y. 2003), *aff'd*, 419 F.3d 115 (2d Cir. 2005); *Mayle v. Felix*, 545 U.S. 644, 659

(2005); *see also Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (noting that the

central issue in a relation back inquiry is "whether adequate notice of the matters raised in the

amended pleading has been given to the opposing party within the statute of limitations by the

general fact situation alleged in the original pleading").[21]  This notice is not adequate where the

new claims are "attributable to different entities than the claims set forth" in the original

pleading.  *See ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir. 2014).

 In avoidance and clawback actions, "each transfer is treated as a separate

transaction for purposes of applying the 'relation back' doctrine." *In re M. Fabrikant & Sons*,

480 B.R. 480, 492 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).  Additionally, "proof

offered for one transaction does not govern as to another and, as such, relation back cannot be

ordered between different transactions merely for being similar or arising from the same

conduct." *Id.* at 492.  "Moreover, the mere allegation that all of the transactions are fraudulent

transfers does not make them part of the same conduct." *In re Metzeler*, 66 B.R. 977, 983

(Bankr. S.D.N.Y. 1986).

 As demonstrated below, the Trustee's amendment fails as a matter of law

because the time-barred New Transfers arise out of separate transactions and occurrences than

those at issue in the OC's claims, and therefore do not "relate back" under Rule 15.

---

[21] Because this notice must be given <u>within the statute of limitations</u>, *see Slayton* 460 F.3d at 228, allegations in the
FAC (which was filed five years after the expiry of the limitations period) are legally irrelevant.  *See, e.g.*, *ASARCO*,
756 F.3d at 202 (finding that a subsequent amended complaint could not relate back to the first amended complaint
because it was filed after the expiration of the statute of limitations); *Coronna v. Cnty. of Suffolk*, No. 05-6016, 2008
WL 2371421, at *5 (E.D.N.Y. June 9, 2008) (finding that even if the proposed second amended complaint could
relate back to the first amended complaint, such relation back would be futile because the first amended complaint
was not filed within the applicable statute of limitations).

A.    ***The New Transfers Arise Out of New Transactions and Occurrences, and
Therefore Do Not Relate Back***

The Trustee's amendment implicitly suggests that all transfers from any BLMIS

feeder fund are necessarily part of a single transaction for relation back purposes.  Not so.

Rather, as ample caselaw makes clear, absent specific allegations not made here, each transfer is

its own transaction and must be treated separately.  *See, e.g.*, *Fabrikant*, 480 B.R. at 492;

*Metzeler*, 66 B.R. at 983; *Off. Comm. of Unsecured Creditors v. Pirelli Commc'ns Cables & Sys.

USA LLC (In re 360networks (USA) Inc.)*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007) ("a

preference action based on one transfer does not put defendant on notice of claims with respect

to any other unidentified transfers").  That requirement is particularly acute here, where the New

Transfers largely involve relationships between a fund and a BNPP Defendant that were <u>never</u>

the basis of a clawback claim.  In other words, for approximately $82.2 million in alleged

transfers, the SAC represents the first time the Trustee has asserted a claim against the relevant

BNPP Defendant for alleged transfers from the feeder fund in question.

The cases relied upon by the Trustee in his recent attempts to amend other

complaints are of no help to him here.  *Adelphia Recovery Tr. v. Bank of Am., N.A.* permitted

relation back under narrow circumstances where the newly alleged transfers originated from the

same credit facility as the originally pled transfers.  624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009).

That holding is entirely inapplicable here, where there is no allegation that the New Transfers

arise out of, for example, previously alleged subscription or redemption requests, nor previously

identified client relationships credit facilities or structured products.  Here, the Trustee has not

met his burden to show that each of these transfers relate to the same transaction, and cannot do

so by tactically omitting facts—previously contained in the FAC—which showed that the

14

underlying credit facilities and structured products were in fact related to different transactions.
*See, e.g.*, FAC ¶¶ 212, 238.

      *Picard v. Peter Madoff* is likewise irrelevant.  There, the Court permitted the
Trustee to amend a complaint to seek clawback of transfers that were in furtherance of an already
alleged scheme to use BLMIS as a "piggy bank" for personal use, such that the new claims
rested on the exact same factual and legal allegations as those previously made.  *Picard v. Peter
Madoff*, 468 B.R. 620, 633–34 (Bankr. S.D.N.Y. Apr. 4, 2012).  There is no such overlap here.
As the SAC itself concedes,[22] each alleged transfer in the SAC arises out of a unique set of facts,
including unique redemptions, subscriptions, and even unique contractual relationships among
the Fairfield and Tremont Funds, Defendants, and their own diverse clientele.  The mere
allegation that these funds ultimately flowed to or from BLMIS cannot render different
transfers—conducted pursuant to different agreements with different parties, and done at
different times and for different value—part of a single transaction.  Lest there be any doubt as to
the value of these cases to the Trustee, the *Relation Back Decision* specifically considered and
rejected both as supporting the Trustee's prior attempt at amendment.  *Relation Back Decision*,
594 B.R. at 210.

      Finally, this case is distinguishable from those where the Court has permitted
amendment because (1) as established, this Court has already ruled against a substantially
identical amendment by the Trustee in this very case, and (2) nearly all of the transfers the
Trustee seeks to include in the SAC arise out of transferor-transferee relationships that were

---

[22] *See, e.g.*, SAC ¶¶ 108, 110 (alleging multiple subscription agreements concerning multiple investments in the
Fairfield and Tremont Funds, in conjunction with multiple redemptions, each of which necessarily concerns
different facts and circumstances).

never the basis of clawback claims in his prior complaint.[23]  The Trustee does not, and cannot,

allege specific facts showing that the New Transfers arise out of the same transaction or

occurrence (e.g., the same credit facility, the same structured product or the same subscriptions

or redemptions) as set forth in the OC.  This fact is particularly stark in respect of the New

Relationship Transfers which, as discussed above, represent the first time the Trustee has <u>ever</u>

sought to claw back transfers between the entities in question.

### B.    *The Trustee's Generic Allegations of Intent and Investigation Are Legally Insufficient*

The OC's inclusion of a boilerplate recitation that the Trustee intends to claw

back all transfers to the BNPP Defendants, and that his investigation of potential claims remains

ongoing, is wholly insufficient to satisfy the requirements of Rule 15.  In the first instance, these

reservations of rights cannot provide adequate notice because, not only do the New Transfers

include transfers from a fund that was never mentioned in the OC, but the reservations generally

do not refer to the defendants against whom the Trustee now asserts claims.[24]  The Trustee's

purported reservation of the right to seek "any additional transfers" similarly falls short of the

pleading standards required by *Twombly* and *Iqbal*, which require that a plaintiff establish a

plausible claim for relief  "that allow[s] . . . the court to draw the reasonable inference that the

defendant is liable."  *Iqbal*, 556 U.S. at 678.

---

[23]*Cf. SIPC v. BLMIS*, Adv. Pro. No. 12-01195 (CGM), 2023 WL 2998470 (Bankr. S.D.N.Y. Apr. 18, 2023) ("<u>Picard v. SIX SIS</u>").  Tellingly, the Trustee himself agrees this case is different, having distinguished the *Relation Back Decision*, by observing that "In *BNP*, the court denied relation back where over half the transfers involved a transferor that did not appear in the original complaint [and where the transfers at issue] varied in nature: some 'arose from either separate and distinct loans, credit facilities or derivative transactions with various counterparties while others appear to relate to either redemptions or equity distributions to the Defendants as direct investors in the Tremont Funds.'"  Trustee's Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Second Am. Compl., *Picard v. SIX SIS AG*, Adv. Pro. No. 12-01195 (CGM) (Bankr. S.D.N.Y.), (ECF No. 137) at 25.

[24] OC ¶¶ 53, 55 (including no reservation of rights to seek transfers from Fairfield Sigma, or from Fairfield Sentry to the vast majority of the BNPP Defendants).

Here, these reservations of rights draw no connection between the claims in the
OC and the BNPP Defendants that are now the subject of the bulk of the Trustee's claims in the
SAC.  Any boilerplate assertion by the Trustee that the claims in the OC and the SAC share
superficial similarities likewise fails.  *Metzeler*, 66 B.R. at 984; *see also Relation Back Decision*,
594 B.R. at 210.  The Trustee's "investigation" has been "ongoing" for nearly 15 years.  To hold
that such a broad reservation of rights is sufficient to advance, more than a decade later, claims
related to facts that were <u>never</u> asserted within the statute of limitations would expand Rule 15
well beyond its intended limits and would render section 550(f) a nullity.  *See ASARCO LLC*,
756 F.3d at 203.

Finally, the Trustee's rote recitation of an ongoing investigation falls particularly
flat for more than $85.3 million of the New Transfers that were identified years ago—and prior
to the filing of the OC—by the Fairfield Funds' liquidators in their public clawback complaints
against the relevant BNPP Defendants.[25]

## III.    The Court Lacks Personal Jurisdiction Over the New BNPP Defendants[26]

In addition to the clawback claims targeting the New Transfers, which should be
dismissed as time-barred, the SAC should be dismissed as to BGL BNPP, BNPP 2S Lux, and

---

[25] *E.g.*, *compare* SAC Exs. C, J *with* First Amended Complaint, *Fairfield Sentry Limited, v. BGL BNP Paribas*, Adv.
Pro. No. 10-03626 (Bankr. S.D.N.Y. Jan. 10, 2011), (ECF No. 25) (the "<u>First Amended Fairfield BGL Complaint</u>"),
Exs. A, B.  About $8.8 million of this figure comprises transfers that are closely analogous to those identified by the
Fairfield liquidators (i.e. a transfer for a nearly identical amount on the same day as a transfer pleaded by the Trustee,
or a transfer for an identical amount on the preceding or following day from the transfer pleaded by the Trustee).  *E.g.*,
*compare* SAC Ex. J *with* First Amended Fairfield BGL Complaint, Ex. B (showing a $4,866 transfer on August 17,
2007 in the SAC, and a $4,855.55 transfer on August 17, 2007 in the First Amended Fairfield BGL Complaint,
including a note in the latter that precise amounts may vary based on the exchange rate applied).

[26] Although the BNPP Defendants continue to deny that any of the BNPP Defendants are subject to the personal
jurisdiction of this Court (and expressly reserve all rights and defenses in respect of any assertion or finding of
personal jurisdiction), in light of this Court's prior decision, the motion does not renew a request for dismissal with
respect to BNPP Arbitrage, BNPP Cayman, and BNPP Sec. Serv. on the basis that the Court lacks personal
jurisdiction.  *Relation Back Decision*, 594 B.R. at 192.

17

BNPP Suisse, from whom the Trustee only seeks to claw back transfers from the Fairfield Funds, because the Court lacks personal jurisdiction over them.

Specific jurisdiction requires an analysis of the connection between the defendant, the forum, and the claim. *See SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." (quoting *Walden v. Fiore*, 571 U.S. 277 (2d Cir. 2014) (internal quotations omitted).[27] Under this framework, the Trustee's attempts to shoehorn a finding of personal jurisdiction into this entirely foreign fact pattern fall short: At its core, the Trustee's allegations relate to wire transfers that occurred between Luxembourgian and Swiss banks and BVI investment funds, pursuant to BVI-law governed contracts.

First, "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Here, the Trustee's allegations impermissibly focus on the <u>Fairfield Funds'</u> contacts with BLMIS in the forum, not the New BNPP Defendants', and therefore fail the test. Where the New BNPP Defendants "never allegedly directed any activity toward the United States," personal jurisdiction cannot be found.

Second, the relevant contacts must be purposely directed towards the forum as opposed to "fortuitous" or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474

---

[27] The Trustee implicitly concedes that this Court does not have general jurisdiction over the New BNPP Defendants, and with good reason. General jurisdiction exists only when the defendant is "at home" in the forum, either by being incorporated under the laws of the forum or having its principal place of business there. *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014); *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 96 (2010) (holding that that the principal place of business is a "single place," and the place which is typically held out to the public as "the corporation's main place of business" or where its "top officers" who "direct [the company's] activities" are situated). None of the New BNPP Defendants meet this standard. *See supra* at 3–4.

(1985) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 299 (1980)).  The

contacts must also relate to "the wrong alleged" and be significant enough that a reasonable

person would foresee that their "conduct and connection with the forum State are such that he

should reasonably anticipate being haled into the court there."  *Id.*  Under this framework, the

Trustee cannot claim that the New BNPP Defendants had sufficient relevant contacts to establish

personal jurisdiction with the United States because they allegedly invested in the Fairfield

Funds "knowing[]" that these funds would in turn invest in BLMIS in New York, SAC ¶ 92, or

because the transfers from the Fairfield Funds were routed through New York-based

correspondent bank accounts.  *Id.* ¶¶ 65, 96.

   That alleged conduct is neither purposeful, nor proximate enough to establish

personal jurisdiction.  *See Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S.

102, 112 (1987) ("The substantial connection . . . between the defendant and the forum . . .

necessary for a finding of minimum contacts must come about by *an action of the defendant

purposefully directed toward the forum State*.") (quotation marks omitted) (emphasis in

original)); *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 at *6

(S.D.N.Y. Mar. 1, 2017); *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016)

(transmission of information and funds to and from BLMIS to be "incidental consequences of

fulfilling a foreign contract").  Nor do the New BNPP Defendants' tenuous contacts relate to "the

wrong alleged" in the SAC, because the "wrong" in question is the fraudulent conduct

perpetuated by BLMIS—conduct that the New BNPP Defendants played no role in, and to which

they too fell victim.  *See* SAC § IV (describing Madoff's fraud).

   Third, the contacts must be sufficiently related to the claim at bar.  *U.S. Bank

Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (noting that to establish

personal jurisdiction over a nonresident defendant, "the plaintiff's claims must arise out of or

relate to the defendant's forum conduct").  The Trustee's allegations again fail under this prong:

the SAC's laundry list of activities includes irrelevant purported contact with a number of funds

that are <u>not</u> the subject of this action (such as Ascot Partners, L.P. and Equity Trading Portfolio

Limited), and cannot be the basis of an assertion of specific jurisdiction by the Trustee with

respect to the claims included in the SAC.  SAC ¶ 92.

    Similarly, the Trustee alleges that BNPP Suisse marketed investment products

that referenced BLMIS Feeder Funds, including "the Kingate Funds and Fairfield Sentry,"

SAC ¶ 137, but makes no connection between the SAC's alleged transfers, the forum, and this

alleged marketing.  The Trustee further alleges that BNPP 2S Lux may have "identified" a New

York entity to receive communications from Fairfield Sentry on its behalf, SAC ¶ 131, but no

specific communications are identified, much less ones linked to the specific transfers alleged.

Likewise, there is no identifiable connection from alleged communications between BNPP 2S

Lux and the New York-based Fairfield Greenwich Group to the specific transfers the Trustee

seeks to claw back.  SAC ¶ 132.  Finally, the Trustee broadly claims that all of the New BNPP

Defendants conducted business in New York during the relevant period, SAC ¶¶ 93, 127, 132,

but none of these allegations contain sufficient specificity to tie these alleged activities to the

SAC's specific claims.

    The alleged facts relating to the forum selection clauses in the subscription

agreements (*see, e.g.*, SAC ¶ 64) also are irrelevant to the SAC's claims.  In a similar action

involving the Fairfield Funds' liquidators, this Court held that New York choice of forum

provisions in the subscription agreement were not applicable to the disputes concerning

subsequent transfers because the liquidators' claim was solely based on redemptions and did not

arise out of the subscription agreements.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), No. 10-13164 (SMB), 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) (adhering to the holding in *Fairfield Sentry Ltd. v. Migani* [2014] UKPC 915 that the subscription agreement was irrelevant to actions to claw back the redemption payments); *see also Lavazza Premium Coffees Corp. v. Prime Line Distribs.* Inc., No. 20 Civ. 9993 (KPF), 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside the clause's scope).  The Trustee's claims are likewise insufficiently tied to the New BNPP Defendants' agreements with the Fairfield Funds, given that BLMIS is not even a party to those agreements.  Nor is there any basis to conclude that the New BNPP Defendants alleged execution of any other agreements, without more, subjected them to personal jurisdiction.

Because the Trustee's allegations fail to establish the requisite connection between the New BNPP Defendants, the forum, and the claims, the SAC should be dismissed with respect to the New BNPP Defendants for lack of personal jurisdiction.

## IV.    The Trustee's Claims Must Be Dismissed for Failure To Plead That the BNPP Defendants Received BLMIS Customer Property

Under 11 U.S.C. § 550(a)(2), a trustee may only claw back from a subsequent transferee the property (or value of the property) that was transferred in the initial transfer.  *See SIPC v. BLMIS* 531 B.R. 439, 473 (Bankr. S.D.N.Y. 2015).  In order to state a claim under section 550(a), "the plaintiff has the burden of tracing funds it claims to be property of the estate."  *Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (S.D.N.Y. 2007) (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005)); *see also Lyon v. Forbes* (*In re Forbes*), 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) ("[I]t is generally the [t]rustee's burden to trace the funds he claims are property of the estate.").  At a minimum,

"[t]he Trustee must allege facts that support the inference that the funds at issue originated with

the BLMIS, and contain the 'necessary vital statistics'" that put the defendant on some notice as

to what funds are being referred to. *Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr.

S.D.N.Y. 2015).

Here, the Trustee's allegations lack the necessary detail as to the "who, when, and

how much" of the transfers and, as such, are insufficient to support the required pleading

standard.  The Trustee's conclusory allegations that the initial transfers from BLMIS to the

Fairfield and Tremont Funds (as alleged in the SAC, the "Initial Transfers") "were and continue

to be customer property within the meaning of SIPA § 78lll(4)," (*e.g.*, SAC ¶¶ 214, 255) and that

prior to the filing date the Fairfield and Tremont Funds transferred a portion of the Initial

Transfers to the BNPP Defendants, SAC ¶ 256, are insufficient to meet *Twombly* and *Iqbal*'s

pleading standards.  *Iqbal*, 556 U.S. at 678.  The Court need not accept a "legal conclusion

couched as a factual allegation," *Papasan*, 478 U.S. at 286, and the SAC does not specify which,

if any, of the Initial Transfers involved the customer property that the Trustee alleges BLMIS

subsequently transferred to the BNPP Defendants, let alone how those transfers are tied.

The Exhibits add nothing of substance to the threadbare allegations in the SAC

regarding the nature of the transfers.  To the contrary, they only add to the confusion, tellingly

omitting the most critical details, and containing no information whatsoever that could rationally

tie the initial transfers listed in Exhibits B, N, O, and R—which span nearly one hundred pages

of minute text—to the alleged list of subsequent transfers scattered across nearly twenty other

exhibits, which themselves contain only the dates and amounts of each transfer.  In effect, the

Trustee relies on the Court to take his conclusory claims at face value and to infer illusive links

22

from his approach.  Not only does this approach contravene applicable law, the existing factual

record establishes that such inferences are not warranted.

Indeed, the liquidators for the Fairfield Funds have confirmed that, for at least

some redemptions of fund shares, they funded through cash on hand from subscription payments

and <u>not</u> through BLMIS-generated funds.  *See* Am. Compl., *Fairfield Sentry Ltd. v. Citco Global

*Custody NV*, Adv. Pro. 19-01122 (JPM) (Bankr. S.D.N.Y. Nov. 26, 2019), (ECF No. 19), ¶ 63

("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through

Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of

other investors on hand that were directed for investment in BLMIS)").  Thus, the Trustee cannot

escape his obligation to establish that the Fairfield Funds' transfers comprise customer property

by claiming that all transferred funds necessarily came from BLMIS.

To be sure, the Trustee's threadbare approach cannot be attributed to a lack of

information.  To the contrary, the Trustee has all of information he needs to determine whether

an alleged subsequent transfer contains customer property, and from which initial transfer that

transfer originates, yet he has failed to so allege here.  Not only does the Trustee have complete

information on the Initial Transfers based on his access to BLMIS's books and records, but he

also has access to information on the Subsequent Transfers through the litigations and

settlements with the Fairfield and Tremont Funds.  This plain deficiency makes the Trustee's

claims ripe for dismissal under Rule 12(b)(6).  *See Pension Benefit Guar. Corp. v. Morgan

Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709 (2d Cir. 2013) (affirming dismissal and finding that

"such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have

access, without discovery, to plan documents and reports that provide specific information from

which to fashion a suitable complaint").  *Id* at 723; *Sapia v. Home Box Office, Inc.*, No. 18 Civ.

23

1317 (CM), 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where

plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs'

possession").

## V.      The BNPP Defendants Are Entitled to a "Good Faith" and "For Value" Defense

The SAC must likewise be dismissed because the BNPP Defendants received the

Subsequent Transfers "for value," "in good faith, and without knowledge of the voidability of the

transfer" under 11 U.S.C. § 550(b)1.  The Trustee's own pleadings conclusively demonstrate that

the BNPP Defendants are entitled to this defense.

### A.      *The BNPP Defendants Plainly Received the Alleged Transfers "For Value"*

To support a defense under section 550(b), a subsequent transferee need not give

reasonably equivalent value.  *See In re Enron Corp. v. Ave. Special Situations Fund II*, 333 B.R.

205, 236 (Bankr. S.D.N.Y. 2005) ("There is no requirement that the value given by the transferee

be a reasonable or fair equivalent.").  The value provided need only be enough consideration

sufficient to support a contract.  *See, e.g.*, *Picard v. ABN Amro Bank N.A.*, Adv. Pro. No. 08-

01789 (SMB), 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020).  Executing

subscriptions and surrendering shares in feeder funds for redemptions has been previously found

to be sufficient to establish that a defendant gave value.  *Id.* *9 (collecting cases).

Here, it is evident from the face of the SAC that each of the BNPP Defendants

gave value to the Fairfield Funds and the Tremont Funds.  The SAC alleges the transfers were

made in connection with subscription agreements between each of the BNPP Defendants and the

Tremont and Fairfield Funds as part of their subscriptions into and redemptions from each Fund.

SAC ¶¶ 95, 99, 101, 106, 110, 121, 124, 129, 135.  In other words, by the Trustee's own

admission, each alleged transfer involved the surrender of Fund shares, which is sufficient to

constitute "value" under section 550(b).  *See ABN Amro*, 2020 WL 1584491, at *9.

24

**B.** ***The BNPP Defendants Acted in Good Faith and Without Knowledge of Madoff's Fraud***

The second component of the section 550(b) defense is met when the transferee receives the funds in good faith and without knowledge of the avoidability of the transfer. 11 U.S.C. § 550(b). Under section 550(b), the Court must evaluate three factors when determining whether a transferee received transfers in good faith. *See Picard v. Citibank, N.A.*, 12 F.4th 171, 191–92 (2d Cir. 2021): (1) "[w]hat facts the defendant actually knew; this is a subjective inquiry, not 'a theory of constructive notice;'" (2) "[w]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud;" and (3) "[w]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer." *Id.* at 171,191–92.

The SAC fails to make any allegation that the BNPP Defendants had inquiry notice of Madoff's misconduct. Instead, the Trustee spends the overwhelming majority of the SAC outlining a theory that the Fairfield and Tremont Funds were aware of Madoff's scheme and rehashing the history of the Madoff fraud.[28] And yet, the Trustee makes no effort to allege that the Fairfield or Tremont Funds had special knowledge of the fraud that was communicated to the BNPP Defendants. To the contrary, the SAC's allegations demonstrate that Madoff scrupulously shielded his fraud from scrutiny by means of deceptive practices and reporting which withstood examination from, among others, the U.S. Securities and Exchange Commission. *E.g.*, SAC ¶ 27. The Trustee's allegations also claim that Tremont shielded

---

[28] As part of this recounting, the Trustee incorporates by reference his Fairfield and Tremont Complaints which, again, concern Fairfield and Tremont's knowledge, not the knowledge of the BNPP Defendants. SAC ¶¶ 138–41. *See, e.g.*, Compl., *Picard v. Tremont Group Holdings, Inc.*, Adv. Pro. No. 10-05310 (BRL), ECF No. 1 (Dec. 7, 2010) (the "Tremont Complaint"); Second Am. Compl., *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM), ECF No. 286 (Aug. 28, 2020) (the "Fairfield Second Amended Complaint").

25

Madoff from third parties conducting due diligence, that Tremont avoided questions and fabricated answers about Madoff's strategy, and that Tremont executives were incentivized to hide any knowledge that Madoff was a fraud. *Id.* ¶¶ 172, 182, 201. Taking the Trustee's allegations about the Tremont and Fairfield Funds at face value, the only reasonable conclusion is that, in the face of such pervasive deception, the BNPP Defendants could not have been on inquiry notice of the fraud (and the Trustee's essentially non-existent allegations with respect to the BNPP Defendants bear this out).

Moreover, even if the Trustee plausibly alleged that the BNPP Defendants were on inquiry notice of Madoff's fraud, which he has not, the BNPP Defendants would still have acted in good faith unless a "diligent inquiry" would have uncovered the fraud, which this Court has already effectively found not to be the case. In the *Relation Back Decision*, the Court rejected the Trustee's claim that the BNPP Defendants were willfully blind to Madoff's fraud, despite the FAC's dozens of pages of allegations of so-called "red flags," finding that "[r]ather than turn a blind eye, the . . . allegations show that the Defendants engaged in ongoing due diligence and received repeated confirmations that the transactions were real." *Relation Back Decision*, 594 B.R. at 205; *see* FAC ¶¶ 75–83 (describing the extensive diligence efforts of the BNPP Defendants with respect to Madoff investments).

Because the Trustee's own pleadings, and this Court's prior decision, demonstrate that the BNPP Defendants received these transfers both for value and in good faith without knowledge of the fraud under section 550(b), the SAC should be dismissed.

## VI.    The Initial Transfers Are Not Avoidable

In order for the Trustee to recover under section 550(a), he must first establish that the Initial Transfers are avoidable and avoided. *Citibank*, 12 F.4th at 197. In *In re JVJ*

*Pharmacy, Inc.*, the District Court held that the relevant "[t]ransfers must be avoided under
§ 548(a)(1) before the Trustee can invoke § 550 to seek recovery." 630 B.R. 388, 401 (S.D.N.Y.
2021). As subsequent transferees, the BNPP Defendants are entitled to raise defenses to
avoidance that are available to the initial transferees. *In re BLMIS*, 501 B.R. at 30 ("Thus, if, as
here, the initial transferee settled with the Trustee or failed to raise a given defense, the
subsequent-transferee defendant may assert any defenses to avoidance available to the initial
transferee, even if the initial transferee did not raise or resolve those defenses."). As discussed
herein, because the Trustee has not adequately pleaded the avoidability of the Initial Transfers,
his clawback claims for the alleged subsequent transfers must fail.

### A. The Trustee Should Not Be Allowed To Rely on the "Ponzi Scheme Presumption" To Avoid His Pleading Burden Under Section 548(a)(1)(A)

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each
"transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any
entity to which the debtor was or became, on or after the date that such transfer was made."
Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with
specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co.*
(*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted).

Rather than pleading facts establishing the fraudulent intent behind each transfer,
as required by section 548(a)(1)(A), the Trustee appears to rely upon the presumption "that
transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather
than to satisfy an antecedent debt." *Citibank*, 12 F.4th at 201 (Menashi, J., concurring). Without
the "Ponzi scheme presumption," the SAC alleges nothing whatsoever about BLMIS's intent in
making the specific transfers at issue here, and certainly not that they were made with the
requisite actual fraudulent intent.

27

Although this Court and the District Court have, at times, accepted the "Ponzi scheme," presumption in actions commenced by the Trustee, Judge Menashi's concurring opinion in *Citibank* made clear that its existence and application are not well-settled, and persuasively explained why the "Ponzi scheme presumption" represents a "questionable" application of fraudulent transfer statues. *Id.* at 202.

First, section 548(a)(1)(A) does not mention Ponzi schemes, nor does it authorize courts to relax (or functionally eliminate) the Trustee's pleading burden in such cases, which otherwise would require specific allegations regarding the intent requirements.

Second, fraudulent transfer cases require an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring).

Third, the Ponzi scheme presumption is based on the hypothesis that whenever a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors." *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (en banc). But that premise is unlikely to hold true in all cases or at all times, especially in the later stages of a long-running scheme like Madoff's, which began decades prior to its collapse. *See Picard v. Legacy Cap. Ltd. (In re BLMIS)*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019).

28

Fourth, the Ponzi scheme presumption, as Judge Menashi explained, "improperly

treats [preference claims under section 547] as fraudulent transfers," *Citibank*, 12 F.4th at 201,

thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences" and

the presumption has accordingly been rejected by courts on these grounds. *Id.* at 202; *see also*

*Lustig v. Weisz & Assocs., Inc.* (*In re Unified Com. Cap., Inc.*), 260 B.R. 343, 350 (Bankr.

W.D.N.Y. 2001).

Finally, the Ponzi scheme presumption conflicts with Rule 9(b), which requires

particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g.*,

*Sharp*, 403 F.3d at 56.  If such exceptions are to be created, Congress—not the courts—should

create them.  *See Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202)

(Menashi, J., concurring).

In the absence of this presumption, the SAC is devoid of any allegation that could

establish that BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors.

Accordingly, the Trustee has failed to meet his pleading burden that the transfers are avoidable

under section 548(a)(1)(A) and the SAC should be dismissed.

### B.    *The Transfers Are Not Avoidable Under Section 548(a)(1)(B)*

Just as the Trustee has failed to plausibly allege the voidability of the transfers

under section 548(a)(1)(A), he has likewise failed to meet the requirements of section

548(a)(1)(B), which permits the Trustee to claw back transfers made for less than reasonably

equivalent value.  11 U.S.C. § 548(a)(1)(B).  When seeking to avoid transfers under section

548(a)(1)(B), the Trustee bears the burden of showing that each element of the statute has been

met.  *In re Bennett Funding Grp., Inc.*, 232 B.R. 565, 570 (Bankr. N.D.N.Y. 1999).

29

The SAC includes no allegations that the BNPP Defendants, the Fairfield Funds, or the Tremont Funds gave less than "reasonably equivalent value" to BLMIS in exchange for any of the alleged transfers. *See In re Dreier LLP*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011). It is axiomatic that a return of principal constitutes "reasonably equivalent value," and the SAC includes no allegations that the transfers to the BNPP Defendants comprised "fictitious profits" received in excess of principal. *See id.* at 401. Although the Trustee may seek to characterize the activities of the Fairfield and Tremont Funds as having generated fictitious profits, he has made no showing in the SAC that any of the specific amounts in the Subsequent Transfers should be characterized as fictitious profits. As a result, none of the transfers alleged by the Trustee are avoidable, and his clawback claims should therefore be dismissed.

## VII.    The Trustee's Claims Are Barred by the Safe Harbor of Section 546(e)

Section 546(e) provides that the Trustee may not avoid a transfer that qualifies as a settlement payment "made by or to (or for the benefit of) a . . . stockbroker, financial institution, [or] financial participant . . . in connection with a securities contract." The lone statutory exception concerns transfers avoided under section 548(a)(1)(A).[29] There is no question that the statutory requirements of the section 546(e) safe harbor provision are satisfied here: (1) the underlying agreement was a securities contract within the meaning of the statute; (2) the transfers under the agreement were "settlement payments;" and (3) the transfers were made by, to, and for the benefit of a covered entity under section 546(e). Because the transfers fall within the safe harbor, the SAC should be dismissed.

---

[29] As explained above, the Trustee cannot rely on the so-called "Ponzi scheme presumption" to avoid his pleading burden under section 548(a)(1)(A) and thereby escape the application of the section 546(e) safe harbor. *See supra*, Section VI. Moreover, even if the Court finds that the Trustee has met his burden under section 548(a)(1)(A), the SAC alleges more than $30 million in transfers made between three and six years before the petition date, to which section 546(e) squarely applies, because section 548(a)(1)(A) only concerns transfers "made or incurred on or within two years before the date of the filing of the petition."

A.    ***The Alleged Subscription Agreements Were "Securities Contracts"***

As an initial matter, the underlying subscription agreements alleged by the

Trustee were securities contracts within the meaning of the Bankruptcy Code, because they were

contracts providing for the purchase and redemption of securities. *E.g.*, SAC ¶ 120.  The

definition of "securities contract" under section 741(7)(A) covers "any contract for the purchase,

sale, or loan of a security" and "any other agreement or transaction that is similar to an

agreement or transaction" referred to elsewhere in the definition of securities contract.

11 U.S.C.  § 741(7)(A).  This definition is intentionally broad.  *Picard v. Ida Fishman Revocable*

*Trust* (*In re BLMIS*), 773 F.3d 411, 419 (2d Cir. 2014) (noting that Congress intended to "sweep

broadly" and that "[f]ew words in the English language are as expansive as 'any' and 'similar'");

*SIPC v. BLMIS* , No. 12 MC 115 (JSR), 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013)

(definition of "securities contract" is broad and "includes, *inter alia*, investment fund

subscriptions and redemption requests").  In *Fishman*, the Second Circuit held that BLMIS's

account agreements with customers "satisfy the broad definition of 'securities contracts'" in

section 741(7)(A), which applies to section 546(e).  *Fishman*, 773 F.3d at 418.

B.    ***The Alleged Transfers Were "Settlement Payments"***

The alleged transfers under the subscription and redemption agreements were

"settlement payments" pursuant to 11 U.S.C. § 741(8).  The Second Circuit held in *Fishman* that

"each transfer in respect of" a customer's order or request to withdraw funds from BLMIS

"constituted a settlement payment." *Fishman*, 773 F.3d at 417, 422–23.  Here, the Trustee has

alleged that the Fairfield and Tremont Funds received approximately $111 million in respect of

such withdrawal orders or requests.  SAC ¶ 6.  Precisely as in *Fishman*, it is indisputable that

these all fit within the definition of "settlement payments" for section 546(e) purposes.

31

C.    ***The Alleged Transfers Were Made by and to Covered Entities
Under Section 546(e)***

The transfers at issue in the SAC were also made by, to, and for the benefit of

covered entities under section 546(e). The Initial Transfers were made by an entity covered by

section 546(e), because they were made by a stockbroker (BLMIS). The Bankruptcy Code

defines "stockbroker" to include entities "engaged in the business of effecting transactions in

securities." 11 U.S.C. § 101(53A)(B). As Judge Rakoff concluded a decade ago, BLMIS easily

clears this bar. *SIPC v. BLMIS*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir.

2014) ("[E]ven assuming the truth of the allegation that Madoff Securities' investment advisory

division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a

stockbroker by virtue of the trading conducted by its market making and proprietary trading

divisions."). As the Second Circuit subsequently observed, "[i]t is not disputed [by the Trustee]

that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. The

fact that the Initial Transfers were made by a stockbroker independently satisfies the section

546(e) requirement.

The transfers were also made to, or "for the benefit of" the BNPP Defendants,

each a financial institution. The Code defines "financial institution" to include not only "an

entity that is a commercial or savings bank," or a "trust company," but also the customer of a

bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a

securities contract." 11 U.S.C. § 101(22)(A). *See In re Trib. Co. Fraudulent Conv. Litig.*, 946

F.3d 66, 78–79 (2d Cir. 2019) (for purposes of section 101(22)(A), "customer" must be given its

ordinary meaning, including "someone who buys goods or services" and "a person . . . for whom

a bank has agreed to collect items") (citations omitted). Under this broad definition, the BNPP

Defendants are financial institutions, as they are all direct or indirect subsidiaries of BNPP SA

32

that provide various arrays of financial services, including, but not limited to, banking and

custody services, securities services, and investment management.[30]  Therefore, insofar as the

SAC alleges that the Fairfield and Tremont Funds' redemption payments to the BNPP

Defendants were tied to payments of customer property transferred from BLMIS to the BNPP

Defendants, the alleged Initial Transfers were settlement payments for the benefit of financial

institutions and are therefore subject to the section 546(e) safe harbor.  *See SIPC v. BLMIS*, No.

12 MC 115 (JSR) 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) (*Cohmad*).

       D.       ***No Other Exception to the Safe Harbor Applies***

        The limited, judicially created exception to section 546(e) for entities that had

actual knowledge of the voidability of the transfers does not apply under these circumstances.  In

addition to the statutory requirements previously discussed, all of which are met here, the Court

has recognized a limited, judicially imposed exception to section 546(e) where a transferee has

actual knowledge of the fraud.  *Picard v. Fairfield Inv. Fund*, Adv. Pro. No. 09-01239, 2021 WL

3477479 at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Cohmad*, 2013 WL 1609154, at *7).

Although some readings of this exception purport to bar a subsequent transferee from raising the

section 546(e) defense under circumstances where the initial transferee had actual knowledge of

the voidability of the transfers, *see SIPC v. BLMIS*, 641 B.R. 78, 92 (Bankr. S.D.N.Y. June 13,

2022), this view of section 546(e) steps beyond the inquiry demanded by the text of the statute,

which on its face should apply to any subsequent transferee who takes without knowledge.  As

discussed above, the Trustee has made no such knowledge allegations with respect to the BNPP

---

[30] *See* Declaration of Thomas S. Kessler in Support of the Fairfield Defendants' Consolidated Motion to Dismiss,
*Fairfield Sentry Limited (In Liquidation) v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-04098 (Bankr.
S.D.N.Y. March 23, 2020), (ECF No. 55) (evidencing that BGL BNPP, BNPP 2S Lux, BNPP Arbitrage, BNPP
Cayman, and BNPP Suisse are financial institutions); SAC ¶ 2.

Defendants, and the safe harbor must serve to bar the Trustee's claim.[31]  *See supra* at Section V.
B., at 24–26.

Additionally, in *Multi-Strategy Fund*, the District Court observed that section
546(e) may be applicable regardless of the feeder funds' alleged knowledge of the fraud by
virtue of the separate securities contract between the feeder funds and the subsequent transferee
(here the BNPP Defendants).  *Picard v. Multi-Strategy Fund Ltd.*, No. 22-cv-06502 (JSR), 2022
WL 16647767 (S.D.N.Y. Nov. 3, 2022) at *8.  In other words, where the Initial Transfers
between BLMIS and the feeder funds "were made 'in connection with,' meaning they were
clearly related to, securities contracts between [the funds] and [their] financial institution or
financial participant clients," section 546(e) may apply even where the feeder funds are alleged
to have had actual knowledge of the fraud.  *Id.* at *9.  Here, the Trustee squarely alleges that the
transfers comprising each Subsequent Transfer was made pursuant to a redemption request from
the relevant feeder fund.  *E.g.*, SAC ¶ 120.  And, as discussed above, the subscription agreements
between the funds and the BNPP Defendants are "securities contracts" within the meaning of
section 546(e).  *See supra* at Section VII. A.  As a result, the Initial Transfers were made "in
connection with" securities contracts between the feeder funds and the BNPP Defendants, and
section 546(e) operates to bar the Trustee's claims.

*[The remainder of this page is left blank intentionally]*

---

[31] Indeed, as discussed above, this Court already roundly rejected the Trustee's prior attempt to plead the BNPP
Defendants' knowledge of the Madoff fraud.  *Relation Back Decision*, 594 B.R. at 205.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the BNPP Defendants'

motion to dismiss the Second Amended Complaint  with prejudice pursuant to Rules 12(b)(6),

12(b), and 15(c) of the Federal Rules of Civil Procedure.


Dated:    New York, New York
          July 24, 2023

                                   Respectfully submitted,

                                   /s/ Thomas S. Kessler
                                   CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                   Roger A. Cooper
                                   Ari D. MacKinnon
                                   Thomas S. Kessler
                                   One Liberty Plaza
                                   New York, New York  10006
                                   T: 212-225-2000
                                   F: 212-225-3999
                                   racooper@cgsh.com
                                   amackinnon@cgsh.com
                                   tkessler@cgsh.com

                                   *Attorneys for BGL BNP Paribas S.A., BNP Paribas
                                   Arbitrage SNC, BNP Paribas Bank & Trust Cayman
                                   Limited, BNP Paribas S.A., and BNP Paribas
                                   (Suisse) S.A.*