Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for BNP Paribas – Dublin Branch*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>      Plaintiff,<br><br>      v.<br><br>BNP PARIBAS – DUBLIN BRANCH,<br><br>      Defendant. | Adv. Pro. No. 22-01087 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**BNP PARIBAS – DUBLIN BRANCH'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| BACKGROUND | | 2 |
| LEGAL STANDARD | | 4 |
| ARGUMENT | | 4 |
| I. | THE TRUSTEE SHOULD NOT BE ALLOWED TO RELY ON THE "PONZI SCHEME PRESUMPTION" TO AVOID HIS PLEADING BURDEN UNDER SECTION 548(A)(1)(A) AND THEREFORE THE TRANSFERS ARE NOT AVOIDABLE | 4 |
| II. | THE TRUSTEE'S CLAIMS ARE BARRED BY THE SAFE HARBOR OF SECTION 546(E) | 7 |
| | A. *The Alleged Credit Facility Was a "Securities Contract"* | 8 |
| | B. *The Alleged Transfers Were "Settlement Payments"* | 8 |
| | C. *The Alleged Transfers Were Made by and to Covered Entities Under Section 546(e)* | 9 |
| | D. *No Other Exception to the Safe Harbor Applies* | 10 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 2, 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 4

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
  No. 11 CIV. 8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ....................... 10

*Finn v. All. Bank*,
  860 N.W.2d 638 (Minn. 2015) .................................................................................. 6

*In re JVJ Pharmacy, Inc.*,
  630 B.R. 388 (Bankr. S.D.N.Y. 2021) .................................................................. 4, 5

*In re Trib. Co. Fraudulent Conv. Litig.*
  946 F.3d 66 (2d Cir. 2019) ...................................................................................... 10

*Lustig v. Weisz & Assocs., Inc.* (*In re Unified Com. Cap., Inc.*),
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) ................................................................ 6, 7

*Merrill v. Abbott* (*In re Indep. Clearing House Co.*),
  77 B.R. 843 (D. Utah 1987) ..................................................................................... 6

*Picard v. Citibank*,
  12 F.4th 171 (2d Cir. 2021) ........................................................................... 4, 5, 6, 7

*Picard v. Fairfield Inv. Fund*,
  No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................... 10

*Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*),
  773 F.3d 411 (2d Cir. 2014) .................................................................................. 8, 9

*Picard v. Legacy Cap. Ltd. (In re BLMIS)*,
  603 B.R. 682 (Bankr. S.D.N.Y. June 25, 2019) ..................................................... 6

*Picard v. Multi-Strategy Fund Ltd.*,
  Adv. Pro. No. 12-01205, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) .... 10–11

**Page(s)**

*Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*),
 403 F.3d 43 (2d Cir. 2005)........................................................................... 5, 7

*SIPC v. BLMIS*,
 476 B.R. 715 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014)...................... 9

*SIPC v. BLMIS*,
 No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................ 8, 10

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4

11 U.S.C. § 101(22)(A)................................................................................. 9

11 U.S.C. § 101(53A)(B).............................................................................. 9

11 U.S.C. § 546(e)................................................................................. 1, 7, 8, 9

11 U.S.C. § 548(a)(1) ............................................................................ 1, 5, 6, 7

11 U.S.C. § 741(7)(A) ................................................................................. 8

BNP Paribas – Dublin Branch ("BNPP Dublin"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Complaint, ECF. No. 1 (the "Complaint") with prejudice filed by Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to Federal Rules of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT[1]

The Trustee's Complaint fails to plead sufficient facts to support a plausible claim for relief. The Trustee has asserted a single cause of action against BNPP Dublin, an Irish branch of a foreign bank, to claw back payments initiated by Legacy, a third-party BVI-based entity, who was a borrower of BNPP Dublin. The Complaint cannot meet the requirements of Rule 12(b)(6)'s requirements or overcome its defects:

First, the Trustee has failed to adequately plead that the Transfers are avoidable under Bankruptcy Code section 548(a)(1).[2] The Trustee should not be permitted to rely on the flawed premise of the so-called "Ponzi scheme presumption" to avoid his burden of pleading actual fraud (which the Complaint otherwise does not even attempt).

Second, the safe harbor codified under 11 U.S.C. § 546(e) shields all of the Transfers from the Trustee's clawback claims, because each was a settlement payment in connection with a securities contract made by, to, or for the benefit of, a covered entity under the statute.

For these reasons and as discussed more fully below, the Complaint fails as a matter of law, and should be dismissed with prejudice.

---

[1] Capitalized terms used in the Preliminary Statement have the meaning ascribed to them herein.

[2] Chapter 11 of Title 11 of the United States Code is referred to herein as the "Bankruptcy Code."

## BACKGROUND[3]

The present action stems from a July 26, 2004 credit facility and credit agreement (the "Credit Facility" and the "Credit Agreement," respectively) between Legacy Capital Limited ("Legacy") as borrower, BNPP Dublin as lender and non-party BNP Paribas Securities Corp. ("BNPP Sec. Corp.") as collateral agent, in the initial amount of $100 million. The Complaint alleges that, as collateral under the Credit Facility, Legacy pledged its BLMIS account (the "Legacy BLMIS Account") and its own equity. On three occasions in 2007 and 2008, BLMIS allegedly made a series of identical transfers to Legacy and BNPP Dublin, totaling $174 million, with half each directed to Legacy and BNPP Dublin (the "Transfers"). Of this amount, the Trustee alleges that $49,505,850 comprise "fictitious profits" available for clawback.

Legacy ultimately defaulted under the Credit Agreement in December 2008, when BLMIS suddenly and shockingly collapsed upon the discovery of Madoff's Ponzi scheme, and BNPP Dublin subsequently lost both the entirety of its collateral and any chance of full repayment of the Credit Facility. In December 2010, the Trustee filed suit against Legacy, BNPP Sec. Corp. and ten other defendants seeking the return of $215 million transferred from the Legacy BLMIS Account, including the Transfers.[4] In July 2015, the Trustee filed an amended complaint that *sua sponte* dropped BNPP Sec. Corp. as a defendant without

---

[3] Although BNPP Dublin recognizes that the Court is required to accept the well pled allegations in the Complaint as true for the limited purposes of evaluating arguments in a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), BNPP Dublin vigorously contests all of the Trustee's factual assertions, including, but not limited to, the allegations that BNPP Dublin received initial transfers from BLMIS, or that any funds received can be characterized as "fictitious profits." BNPP Dublin reserves all rights and defenses in respect of the Trustee's allegations.

[4] The Trustee's 2010 complaint against Legacy also names as defendants Isaac Jimmy Mayer, Rafael Mayer, David Mayer, Khronos LLC, Khronos Capital Research LLC, BNP Paribas Sec. Corp., HCH Management Company Ltd., Montpellier Resources Ltd., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC. Compl., *Picard v. Legacy Cap.*, Adv. Pro. No. 10-0528-cgm (Bankr. S.D.N.Y. Dec. 6, 2010), ECF No. 1 (the "Legacy Complaint").

2

explanation.[5] In November 2019, the Trustee and Legacy agreed to a stipulated order by which the Trustee received a judgment against Legacy in the amount of approximately $79,125,781 in respect of the Trustee's claim for fictitious profits.[6] The Trustee is presently proceeding against Legacy in respect of other claims, but this stipulated judgment for avoidance of fictitious profits forms the basis of his action against BNPP Dublin.[7]

The Trustee alleges that post-judgment discovery into Legacy's finances has revealed that Legacy was impecunious, and, bizarrely, that Legacy is owned by BNPP Dublin, a baseless allegation that BNPP Dublin disputes.[8] Subsequent to the issuance of the Legacy judgment, on November 11, 2020, the Trustee also filed suit against the Mayer family and their affiliated entities, claiming that they received transfers made from the Legacy BLMIS Account in the 2007 to 2008 period, also seeking to claw back $49,505,850 in fictitious profits.[9]

In April 2022, almost seven years after removing BNPP Sec. Corp. as a defendant, almost three years after obtaining its judgment against Legacy, and more than fifteen months after seeking to claw back transfers from the Mayers and their affiliated entities, the Trustee filed this Complaint against BNPP Dublin, for the first time, as the purported initial transferee, seeking to claw back $49,505,850 in fictitious profits, which includes, in part, up to $12,505,850 worth of

---

[5] The Trustee's amended complaint against Legacy dropped all entities and persons except Legacy and Khronos LLC. *See* Am. Compl. *Picard v. Legacy Cap.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y. July 2, 2015), ECF No. 112 (the "Legacy Amended Complaint").

[6] Compl. ¶ 63; Stipulation and Order for Entry of Final Judgment, *Picard v. Legacy Cap.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y. Nov. 12, 2019), ECF No. 230 (the "Stipulated Order"). As discussed herein, the Stipulated Order, which is not grounded in any well-tested factual determinations by a court, is the sole basis of the Trustee's assertions that the Transfers are avoidable. *See infra*, Section I at 4–5.

[7] *See* Compl. ¶ 63.

[8] Compl. ¶ 64.

[9] The Trustee's complaint against the Mayer family and their entities names as defendants Rafael Mayer, David Mayer, Montpellier International Ltd., Prince Assets Ltd. (f/k/a Prince Assets LDC), Khronos Group Ltd. f/k/a/ Montpellier Resources Ltd., Prince Resources LDC, Montpellier USA Holdings LLC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. *See* Compl., *Picard v. Rafael Mayer*, Adv. Pro. No. 20-01316 (Bankr. S.D.N.Y. Nov. 11, 2020), ECF No. 1 (the "Mayer Complaint").

3

fictitious profits that he also seeks from the Mayers and their entities based on the $79.1 million of transfers avoided in the stipulated order against Legacy.[10]

## LEGAL STANDARD

The Court must dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), Fed. R. Civ. P. 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim for relief pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation," *id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**I.   THE TRUSTEE SHOULD NOT BE ALLOWED TO RELY ON THE "PONZI SCHEME PRESUMPTION" TO AVOID HIS PLEADING BURDEN UNDER SECTION 548(A)(1)(A) AND THEREFORE THE TRANSFERS ARE NOT AVOIDABLE**

In order for the Trustee to claw back under section 550(a), he must first establish that the Transfers are avoidable and avoided. *Picard v. Citibank*, 12 F.4th 171, 197 (2d Cir. 2021). In *In re JVJ Pharmacy, Inc.*, 630 B.R. 388 (Bankr. S.D.N.Y. 2021) the District Court held that the relevant "[t]ransfers must be avoided under § 548(a)(1) before the Trustee can

---

[10] Compl. ¶ 4. The Trustee alleges that the Mayers and their entities received up to $12,505,850 in fictitious profits as a result of a $50 million transfer in September 2007, and he alternatively seeks the same bucket of fictitious profits from BNPP Dublin as a component of his broader claims. Compl. ¶ 67; Mayer Complaint ¶ 61.

4

invoke § 550 to seek recovery." *Id.* at 401. Notably, the Trustee's claim of avoidability is <u>not</u> supported by any factual findings of a court. Instead, the Trustee's <u>sole</u> basis for seeking to claw back the Transfers from BNPP Dublin is the Stipulated Order in his separate litigation with Legacy, which provided that the transfers were "avoidable and avoided under § 548(a)(1)." Compl. ¶ 63. As discussed herein, because the Trustee has not adequately pleaded the avoidability of the alleged Transfers, his clawback claims fail.

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made." Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted).

Rather than pleading facts establishing the fraudulent intent behind each transfer, as required by section 548(a)(1)(A), the Trustee appears to rely upon the presumption "that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Citibank*, 12 F.4th at 201 (Menashi, J., concurring). Without the "Ponzi scheme presumption," the Complaint alleges nothing whatsoever about BLMIS's intent in making the specific transfers at issue here, and certainly not that they were made with the requisite actual fraudulent intent.

Although this Court and the District Court have, at times, accepted the "Ponzi scheme" presumption in actions commenced by the Trustee, Judge Menashi's concurring opinion in *Citibank* made clear that its existence and application are not well-settled, and persuasively explained why the "Ponzi scheme presumption" represents a "questionable" application of

5

fraudulent transfer statues. *Id.* at 202.

First, section 548(a)(1)(A) does not mention Ponzi schemes, nor does it authorize courts to relax (or functionally eliminate) the Trustee's pleading burden in such cases, which otherwise would require specific allegations regarding the intent requirements.

Second, fraudulent transfer cases require an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi J., concurring).

Third, the Ponzi scheme presumption is based on the hypothesis that whenever a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors." *Merrill v. Abbott* (*In re Indep. Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). But that premise is unlikely to hold true in all cases or at all times, especially in the later stages of a long-running scheme like Madoff's, which began decades prior to its collapse. *See Picard v. Legacy Cap. Ltd.* (*In re BLMIS*), 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019).

Fourth, the Ponzi scheme presumption, as Judge Menashi explained, "improperly treats [preference claims under section 547] as fraudulent transfers," *Citibank*, 12 F.4th at 201 (Menashi J., concurring), thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences," and the presumption has accordingly been rejected by courts on these grounds. *Id.* at 202; *see also Lustig v. Weisz & Assocs., Inc.* (*In re Unified Com. Cap., Inc.*), 260

6

B.R. 343, 350 (Bankr. W.D.N.Y. 2001).

Finally, the Ponzi scheme presumption conflicts with Rule 9(b), which requires particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g., Sharp*, 403 F.3d at 56. If such exceptions are to be created, Congress—not the courts—should create them. *See Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi J., concurring)).

In the absence of this presumption, the Complaint is devoid of any allegation that could establish that BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors. Accordingly, the Trustee has failed to meet his pleading burden that the transfers are avoidable under section 548(a)(1)(A) and the Complaint should be dismissed.

## II. THE TRUSTEE'S CLAIMS ARE BARRED BY THE SAFE HARBOR OF SECTION 546(E)

Section 546(e) provides that the Trustee may not avoid a transfer that qualifies as a settlement payment "made by or to (or for the benefit of) a . . . stockbroker, financial institution, [or] financial participant . . . in connection with a securities contract." The lone statutory exception concerns transfers avoided under section 548(a)(1)(A).[11]

There is no question that the statutory requirements of the section 546(e) safe harbor provision are satisfied here: (1) the underlying agreement was a securities contract within the meaning of the statute; (2) the transfers under the agreement were "settlement payments"; and (3) the transfers were made by, to, and for the benefit of a covered entity under section 546(e). Because the transfers fall within the safe harbor, the Complaint should be dismissed.

---

[11] BNPP Dublin recognizes that the Trustee's claims pertain entirely to two-year transfers sought under section 548(a)(1)(A), however, as explained above, the Trustee cannot rely on the so-called "Ponzi scheme presumption" to avoid his pleading burden under section 548(a)(1)(A) and thereby escape the application of the section 546(e) safe harbor. *See supra*, Section I.

7

### A.  *The Alleged Credit Facility Was a "Securities Contract"*

As an initial matter, the underlying credit facility alleged by the Trustee was a securities contract within the meaning of the Bankruptcy Code, because it was a contract ultimately providing for the purchase and redemptions of securities. Compl. ¶¶ 66–67. The definition of "securities contract" under section 741(7)(A) covers "any contract for the purchase, sale, or loan of a security," "any extension of credit for the clearance or settlement of securities transactions," and "any other agreement or transaction that is similar to an agreement or transaction" referred to elsewhere in the definition of securities contract. 11 U.S.C. § 741(7)(A). This definition is intentionally broad. *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 419 (2d Cir. 2014) (noting that Congress intended to "sweep broadly" and that "[f]ew words in the English language are as expansive as 'any' and 'similar'"); *SIPC v. BLMIS*, No. 12 MC 115, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) (definition of "securities contract" is broad and "includes, *inter alia*, investment fund subscriptions and redemption requests"). These requirements are clearly met here, given that the alleged activities conducted pursuant to the credit facility included taking securities as collateral and receiving distributions from redemptions of that collateral. Compl. ¶ 65. As a result, the Transfers were made "in connection with" a securities contract between Legacy and BNPP Dublin, and section 546(e) operates to bar the Trustee's claims.[12]

### B.  *The Alleged Transfers Were "Settlement Payments"*

The alleged transfers under the credit facility also meet the definition of "settlement payment[s]" pursuant to section 741(8). The Second Circuit held in *Fishman* that

---

[12] Additionally, in *Fishman*, the Second Circuit held that BLMIS's account agreements with customers "satisfy the broad definition of 'securities contracts'" in section 741(7)(A), which applies to section 546(e). *Fishman*, 773 F.3d at 418. Therefore, as outlined in *Fishman*, and in addition to the securities contract between BNPP Dublin and Legacy, Legacy's customer agreement with BLMIS is a separate securities contract.

8

"each transfer in respect of" a customer's order or request to withdraw funds from BLMIS "constituted a settlement payment." *Fishman*, 773 F.3d at 417, 422–23. Here, the Trustee has alleged that BNPP Dublin received approximately $87,000,000 in respect of such withdrawal orders or requests. Compl. ¶ 66. Precisely as in *Fishman*, 773 F.3d 411, it is indisputable that these are all "settlement payments" for section 546(e) purposes.

### C. The Alleged Transfers Were Made by and to Covered Entities Under Section 546(e)

The transfers at issue in the Complaint were also made by, to, and for the benefit of covered entities under section 546(e). The Transfers were made by an entity covered by section 546(e), because they were made by a stockbroker (BLMIS). The Bankruptcy Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). As Judge Rakoff concluded a decade ago, BLMIS easily clears this bar. *SIPC v. BLMIS*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014) ("[E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions."). As the Second Circuit subsequently observed, "[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. The fact that the Transfers were made by a stockbroker independently satisfies the section 546(e) requirement.

The transfers were also made to, or "for the benefit of" BNPP Dublin, a financial institution. The Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," or a "trust company," but also the customer of a bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a securities contract."

9

11 U.S.C. § 101(22)(A). *See In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 78–79 (2d Cir. 2019) (for purposes of section 101(22)(A), "customer" must be given its ordinary meaning, including "someone who buys goods or services" and "a person…for whom a bank has agreed to collect items") (citations omitted). Under this broad definition, BNPP Dublin—an Irish branch of BNPP, which the Complaint itself describes as performing banking services (*see, e.g.*, Compl. ¶ 67)—is considered a financial institution.[13] Therefore, insofar as the Complaint alleges BNPP Dublin received direct redemption payments of customer property transferred from BLMIS via Legacy Capital's BLMIS account, the alleged Transfers were settlement payments for the benefit of a financial institution, and are therefore subject to the section 546(e) safe harbor. *See SIPC v. BLMIS*, No. 12 MC 115, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) (hereinafter "*Cohmad*").

### D. *No Other Exception to the Safe Harbor Applies*

The limited, judicially created exception to section 546(e) for entities that had actual knowledge of the voidability of the transfers does not apply under these circumstances. In addition to the statutory requirements previously discussed, all of which are met here, the Court has recognized a limited, judicially imposed exception to section 546(e) where a transferee has "actual knowledge of . . . fraud." *Picard v. Fairfield Inv. Fund*, No. 08-01789, 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Cohmad*, 2013 WL 1609154, at *7). Here, the Trustee has not alleged that BNPP Dublin had knowledge of the fraud, which renders this exception pertaining to the knowledge of the transferee wholly inapplicable. *See Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073, at *10 (Bankr.

---

[13] *See also* BNP Paribas Ireland Home Page (noting that BNPP Dublin offers "corporate and institutional banking" services, as well as various services in connection with securities), https://www.bnpparibas.ie/en/. "The Court generally has the discretion to take judicial notice of internet material." *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 CIV. 8921, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013).

S.D.N.Y. June 13, 2022).[14] Therefore, the Trustee's claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should grant BNPP Dublin's motion to dismiss the Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6).

Dated: New York, New York
July 24, 2023

Respectfully submitted,

/s/ Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
racooper@cgsh.com
amackinnon@cgsh.com
tkessler@cgsh.com

*Attorneys for BNP Paribas – Dublin Branch*

---

[14] For the avoidance of doubt, this reasoning applies regardless of whether BNPP Dublin is considered a subsequent or initial transferee, as the Trustee alleges and which BNPP Dublin disputes, given the lack of allegations in the Complaint pertaining to any knowledge of Legacy regarding the voidability of the transfers.

11