USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
In Re: Bernard L. Madoff Investment Securities LLC             :
                                                               :
                                      Debtor.                  :
-------------------------------------------------------------- :    22-CV-3882 (VEC)
                                                               :
KENNETH W. BROWN,                                              :    OPINION & ORDER
                                                               :
                                      Appellant,               :
                                                               :
IRVING H. PICARD, TRUSTEE,                                     :
                                                               :
                                      Appellee.                :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

    This appeal[1] arises out of one of the many clawback actions brought by Irving H. Picard, the Trustee in the Securities Investor Protection Act ("SIPA") liquidation proceedings for Bernard L. Madoff Investment Securities LLC ("BLMIS"). On November 30, 2010, the Trustee sued Ken-Wen Family Limited Partnership ("Ken-Wen") and its partners Kenneth Brown and Wendy Brown (a/k/a Wendy Werner)[2] to recover $3.85 million allegedly fraudulently transferred from BLMIS to Ken-Wen.[3] *See* Compl., J.A.0001–25; *id.* ¶ 40, J.A.0013. Mr. Brown, proceeding *pro se*, appealed the Bankruptcy Court's grant of summary judgment to the Trustee, which held Mr. Brown liable for the transfers in his capacity as general partner of Ken-Wen, and its subsequent denial of Mr. Brown's motion for reconsideration. *See* Not. of Appeal,

---

[1]     "J.A." citations in this Opinion refer to the parties' Joint Appendix, available at docket entry 16.

[2]     RBC Centura Bank was also named as a defendant in the initial Complaint but was removed in the First Amended Complaint filed on December 19, 2017. Compl. at 2, J.A.0002; *see* First Am. Compl., J.A.0051–66.

[3]     The Court assumes familiarity with Bernard Madoff's Ponzi scheme and the resulting Securities Investor Protection Act ("SIPA") liquidation. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 178–83 (2d Cir. 2021).

1

Dkt. 1; Brown Mem., Dkt. 13. For the following reasons, the Court concludes that the Bankruptcy Court erred and remands the case for further proceedings consistent with this Opinion and Order.

## BACKGROUND

### I.  Factual History

Mr. Brown and Ms. Werner formed Ken-Wen as a limited partnership under Florida law on June 14, 2000.[4] Partnership Agreement,[5] J.A.2863–91. Each party obtained a general partner interest of 1% and a limited partner interest of 49%.[6] *Id.* at J.A.2871.

There is no dispute that Ken-Wen deposited $1,278,000 into BLMIS and withdrew $7,001,000 for a total of $5,723,000 in fictitious profits. Neiburg Decl. Ex. 12, J.A.0818. During the two years prior to the filing of the SIPA action against BLMIS on December 11, 2008 ("SIPA Filing Date"), Mr. Brown, acting on behalf of Ken-Wen, made four withdrawals, the first three of which were prior to his dissociation as general partner: (1) $150,000 on June 26, 2007, (2) $500,000 on December 31, 2007, (3) $3,000,000 on January 24, 2008, and (4) $200,000 on

---

[4]  Mr. Brown and Ms. Werner appear to have been brokerage customers of BLMIS for several years prior to the formation of Ken-Wen Family Limited Partnership ("Ken-Wen"). An account at BLMIS under the name "Ken-Wen Family LP Ltd" began in 1993 and lasted until 2008. *See* Neiburg Decl. Ex. 12, J.A.0818 (showing deposits to and withdrawals from that BLMIS account); Collura Decl. Exs. 3–6, J.A.1354–64.

[5]  As part of the Partnership Agreement, Mr. Brown and Ms. Werner committed to filing a "Certificate of Limited Partnership as required by Florida law." *Id.* at J.A.2872–73. The parties do not dispute that Ken-Wen was in fact formed as a limited partnership. Because Ms. Werner later filed a certificate of amendment, the Court presumes that the original certificate was, in fact, filed, although it is not part of the record. *See* Brown Mot. Summ. J. Reply Ex. 7, J.A.2932–35; Summ. J. Op. at 10, J.A.3425.

[6]  Mr. Brown has wavered between asserting that he was never a general partner and admitting that he was a general partner but asserting that he dissociated from Ken-Wen. Brown Mot. Summ. J. ¶¶ 6, 16–17, J.A.0220–21, J.A.0224; Brown Mot. Summ. J. Reply ¶¶ 16–17, 40, 102, J.A.2807, J.A.2814, J.A.2833; Brown Mem., Dkt. 13 at 14 (alleging that he withdrew from the Partnership in 2006 due to his pending divorce from Werner). The Court credits Mr. Brown's oral admission during his deposition and during oral argument on the summary judgment motion that he was a general partner. Brown Dep., J.A.0780; Tr. of Hr'g on Mots. Summ. J., J.A.3364–65. As discussed in note 8, *infra*, the Court will assume without deciding that he dissociated from Ken-Wen on February 29, 2008, when he signed an agreement with Ms. Werner to that effect. *See* Brown Mot. Summ. J. ¶ 6, Ex. D, J.A.0220–21, J.A.0236–39; Summ. J. Op. at 9, J.A.3424.

November 17, 2008. Neiburg Decl. Ex. 16, J.A.0835–36; *id.* Ex. 18, J.A.0890; *id.* Ex. 20, J.A.0941; *id.* Ex. 22, J.A.0961–62. Mr. Brown initiated each of those transfers by making a handwritten request to BLMIS; he signed the first three requests "Kenneth W. Brown GP" and the last request "Kenneth W. Brown FLP." *See id.* Ex. 15, J.A.0833; *id.* Ex. 17, J.A.0838; *id.* Ex. 19, J.A.0893; *id.* Ex. 21, J.A.0959. The sum of these four transfers, $3,850,000, was sent to an offshore trust account at Southpac before being transferred to an attorney in the United States to be held in escrow.[7] Werner Dep., J.A.1093–99.

Mr. Brown dissociated from general partnership at Ken-Wen by written agreement on February 29, 2008, and Ms. Werner filed a "Certificate of Amendment to [the] Certificate of Limited Partnership" with the Florida Secretary of State on April 29, 2008.[8] Brown Mot. Summ. J. ¶ 6, Ex. D, J.A.0220–21, J.A.0236–39; Brown Dep., J.A.0805–07; Certificate of Am. to Certificate of Ltd. P'ship, Ex. 7, J.A.2932–34. On the SIPA Filing Date, federal agents arrested Bernie Madoff in connection with a Ponzi scheme perpetrated through BLMIS. *See In re Bernard L. Madoff Inv. Secs., LLC*, 440 B.R. 243, 250 (S.D.N.Y. 2010).

## II.     Procedural History

As relevant to this appeal,[9] this lawsuit was commenced on November 30, 2010. *See* Compl., J.A.0001–25. The Trustee filed the First Amended Complaint on December 19, 2017.

---

[7]   Ms. Werner testified that the funds were held in escrow to repay a loan that Mr. Brown owed to the Harvey Werner Marital Trust 2, which was due in March 2008. Werner Dep., J.A.1093–99.

[8]   The Court notes, without deciding, that the Trustee's allegation that "Mr. Brown continued to hold himself out to the world as a general partner of Ken-Wen after the purported dissociation" by signing a collateral assignment of a life insurance policy as a general partner of Ken-Wen in October 2008 and April 2009 raises a potential dispute of fact as to whether Mr. Brown in fact dissociated as a general partner. Trustee Mot. Summ. J. at 36, J.A.0293; Neiburg Decl. Exs. 26–27, J.A.1125, J.A.1133. For the purposes of this Opinion, however, the Court assumes, as the Bankruptcy Court did, that Mr. Brown dissociated as a general partner. Summ. J. Op. at 4–5, J.A.3419–20.

[9]   Mr. Brown argues on appeal that the Bankruptcy Court should have granted his motions to extend and to compel discovery. Brown Mem. at 14, 25–26, Dkt. 13; Brown Reply at 15, Dkt. 18. "Ordinarily, discovery orders are non-appealable interlocutory orders . . . ." *Lothian Oil (USA), Inc. v. Sokol*, 526 F. App'x 105, 108 (2d Cir. 2013) (summary order) (citing *Baker v. F & F Inv.*, 470 F.2d 778, 780 n.3 (2d Cir. 1972)). Mr. Brown did not

3

*See* First Am. Compl., J.A.0051–66.  After many years of litigation, Mr. Brown moved for summary judgment on November 5, 2021.  *See* Brown Mot. Summ. J., J.A.0219–39.  The Trustee opposed the motion and cross-moved for summary judgment and to hold Mr. Brown liable for the fraudulent transfers received by Ken-Wen.  *See* Trustee Mot. Summ. J., J.A.0247–97.  Mr. Brown opposed the Trustee's cross-motion, but Ken-Wen did not.[10]  *See* Brown Reply to Trustee Mot. Summ. J., J.A.2802–37.  The Bankruptcy Court issued a memorandum of decision and judgment granting the Trustee's motion.  *See* Summ. J. Op., J.A.3416–37; Summ. J., J.A.3438–42.

The Bankruptcy Court held that it had authority to issue a final order in this case.  Summ. J. Op. at 3, J.A.3418.  The Bankruptcy Court also held that the Trustee had established every element necessary to establish its *prima facie* case to avoid and recover fraudulent transfers of fictitious profits from BLMIS to Ken-Wen.  *Id.* at 6–8, J.A.3421–23.  It implicitly ruled that neither Ken-Wen nor Mr. Brown had raised a genuine issue of material fact with respect to the Trustee's *prima facie* case.  Relying on his deposition and partnership documents, the

---

timely seek leave to appeal the discovery orders.  *See In re Orange Boat Sales*, 239 B.R. 471, 473 (S.D.N.Y. 1999).  Even if Mr. Brown had sought, and the Court granted, leave to appeal, Mr. Brown has not demonstrated that the Bankruptcy Court erred.

To modify a discovery schedule, a party must show "good cause" and "that the relevant deadline could not reasonably be met despite that party's diligence."  *In re Orange Boat Sales*, 239 B.R. at 474; Fed. R. Bankr. P. 7016; Fed. R. Civ. P. 16(b)(4).  Mr. Brown sought to extend discovery because his attorney's family experienced a car accident during Thanksgiving 2019, less than a month before the discovery deadline.  Mot. to Extend ¶¶ 1, 3–5, JA0147.  The Bankruptcy Court appropriately denied the motion because Mr. Brown and his counsel had not been diligent in their efforts to obtain discovery (they had failed to schedule any discovery prior to Thanksgiving 2019).  *See* Tr., J.A.0181–82; Mot. to Extend ¶ 1, J.A.0147; Brown Feb. 3, 2020, Mot. to Compel, J.A.0155.

The Bankruptcy Court did not rule on Mr. Brown's February 3, 2020, motion to compel discovery, which was first made after the discovery deadline and renewed on October 29, 2021; on November 15, 2021, Mr. Brown and the Trustee jointly stipulated to adjourn that motion *sine die*; Mr. Brown never renewed the motion.  *See* Joint Stipulation, J.A.0241.  Accordingly, there was no motion on which the Bankruptcy Court could rule, and no order from which Mr. Brown could appeal.

[10]    Ken-Wen was no longer extant by the time the cross-motions for summary judgment were filed.  According to Mr. Brown, the state of Florida revoked Ken-Wen's registration on September 28, 2012, for failing to file an Annual Report.  *See* Brown Mot. Summ. J. ¶ 2, Ex. A, J.A.0220, J.A.0228.

4

Bankruptcy Court found that Mr. Brown was a general partner of Ken-Wen until his written dissociation on February 29, 2008. *See id.* at 9–11, J.A.3424–26. The Bankruptcy Court also held that Mr. Brown is liable for the debts incurred by Ken-Wen under SIPA and Florida partnership law. *See id.* at 11–16, J.A.3426–31.

In particular, the Bankruptcy Court held that Mr. Brown is liable as a person dissociated as general partner of Ken-Wen under Florida Statute § 620.1607(3). *Id.* at 14–16, J.A.3429–31. The Bankruptcy Court held that the Trustee's SIPA action against BLMIS created a "transaction" under Florida partnership law between Ken-Wen and BLMIS on the SIPA Filing Date, because the SIPA proceeding turned BLMIS's transfers into liabilities of Ken-Wen. *Id.* at 14–15, J.A.3429–30. Less than two years passed between Mr. Brown's dissociation date of February 29, 2008, and the SIPA Filing Date, and the Bankruptcy Court held that, based on the evidence in the record, BLMIS reasonably believed that Mr. Brown was a general partner as of the SIPA Filing Date. *Id.* at 16, J.A.3431. The Bankruptcy Court also found that there was no evidence in the record suggesting that BLMIS had notice of Mr. Brown's dissociation. *Id.*

Mr. Brown, proceeding *pro se*, moved for reconsideration, *see* Mot. for Recons., J.A.3443–93, and the Bankruptcy Court denied that motion, *see* Order, J.A.3733–34. Mr. Brown now appeals the judgment and the order denying the motion for reconsideration.[11] *See* Not. of Appeal, Dkt. 1, J.A.3735–42.

---

[11] Mr. Brown appeals in part because the Bankruptcy Court allegedly "erred in finding that [he] had waived his defenses of defective service of process . . . personal jurisdiction, and venue by failing to assert them in his Answer and Motion to [D]ismiss." Brown Mem. at 14. He alleges that Mr. Bernfeld, attorney for Ms. Werner and Ken-Wen, represented him "without notice or communication." *Id.* at 18. Mr. Brown provides no evidence beyond his own statements in support of that claim. Even if this Court were to credit his statements, however, Mr. Brown's first responsive pleading in the underlying case was his motion to dismiss the first amended complaint, filed by Mr. Roher. Mot. to Dismiss, J.A.0090–0106. That motion did not raise insufficiency of process or service of process, lack of personal jurisdiction, or improper venue. Failure to do so constitutes a waiver of those defenses. Fed. R. Civ. P. 12(h)(1)(B)(ii).

## DISCUSSION

### I. Legal Standard

District courts have appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). "A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Thakur v. S.J.P.B., Inc. (In re Thakur)*, 498 B.R. 410, 418–19 (S.D.N.Y. 2013) (citing *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009); Fed. R. Bankr. P. 8013). "[O]n an appeal specifically from a bankruptcy court's summary judgment order, the standard of review is de novo, and the district court draws all factual inferences in favor of the non-moving party." *Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, 309 B.R. 830, 835 (S.D.N.Y. 2003); *accord Beier v. Beier*, 1995 WL 60026, at *2 (S.D.N.Y. Feb. 14, 1995) ("A reviewing court conducts a *de novo* review to determine whether or not a genuine issue of material fact exists that should preclude judgment as a matter of law.").

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation marks omitted). In reviewing grants of summary judgment, courts "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (cleaned up).

## II. The Bankruptcy Court's Decision Rests on an Error of Law

### A. Mr. Brown Consented to the Bankruptcy Court's Jurisdiction

A bankruptcy court has authority to issue final orders in an action to avoid fraudulent conveyances under SIPA if the parties consent. *See In re Bernard L. Madoff Inv. Sec. LLC*, 612 B.R. 257, 263 (S.D.N.Y. 2020); 28 U.S.C. § 157(b)(2)(H). That consent may be implied, as long as it is knowing and voluntary. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015). Here, the Bankruptcy Court held that it had authority to issue a final order on account of the implied consent of Mr. Brown and Ken-Wen, which was demonstrated by their failure to raise the issue.[12] Summ. J. Op. at 3 n.4, J.A.3418.

This Court agrees that Mr. Brown gave his implied consent by filing a motion for summary judgment with the Bankruptcy Court seeking entry of final judgment. Mot. Summ. J. at 1, J.A.0219; *see Frontseat, LLC v. Stern, Tr. of Est. of 150 Fulton Prop., Inc.*, 2020 WL 2933442, at *2 (E.D.N.Y. May 31, 2020) (defendant gave implied consent by seeking dismissal or final judgment). Mr. Brown's delay in raising the issue of the Bankruptcy Court's jurisdiction until after the entry of an unfavorable judgment strongly suggests gamesmanship.[13] *See* Mot. for Recons., J.A.3443–93; Brown Mot. Summ. J., J.A.0219–26; *see also Stern v. Marshall*, 564 U.S. 462, 482 (2011) (noting that litigants seeking to challenge a bankruptcy court's jurisdiction should "[say] so promptly" because such an objection "may be forfeited"); *Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Greiff*, 617 B.R. 198, 207 (S.D.N.Y. 2020)

---

[12]    This Court does not consider this issue as it pertains to Ken-Wen, as the partnership did not appeal.

[13]    Mr. Brown sought to "adopt the affirmative defenses" raised by the other Defendants in his Answer to the First Amended Complaint, Brown Answer ¶ 2, J.A.0110, one of which was a *Stern* objection to the Bankruptcy Court's jurisdiction, Defs. Answer ¶¶ 54–57, J.A.0077. Mr. Brown's cursory pleadings are insufficient to overcome the rest of his filings and conduct prior to the judgment of the Bankruptcy Court, all of which indicated a willingness to be bound by a final order from that Court. *Cf. McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co.*, 2023 WL 4209542, at *4 (E.D.N.Y. June 27, 2023) (finding that the defendant "made clear that it [did] not consent to final adjudication by the Bankruptcy Court" when it clearly so stated in its answer and opposition papers).

(noting that a defendant impliedly consents to adjudication by a bankruptcy court by choosing to litigate for many years in that court).[14]

### B. The Bankruptcy Court Failed to Consider Whether the Trustee Had Notice of Mr. Brown's Dissociation by Operation of Florida Law

SIPA, in conjunction with the Bankruptcy Code, allows a trustee to recover certain transfers of customer property made by a debtor prior to a liquidation proceeding, 15 U.S.C. § 78fff-2(c)(3); such transfers are "clawed back" to the bankruptcy estate and redistributed among customers, *id.* § 78fff. An initial transfer from the debtor may be avoided if it is "preferential," "fraudulent," or "constructively fraudulent." *See* 11 U.S.C. §§ 547–48. A fraudulent transfer occurs if, within two years of filing for bankruptcy, a debtor transfers assets with the intention of defrauding its creditors.[15] *See id.* § 548(a)(1)(A); *Picard v. Katz*, 462 B.R. 447, 450–51 (S.D.N.Y. 2011) (distinguishing preferential, fraudulent, and constructively

---

[14]    Even if Mr. Brown had not consented, however, this Court may construe the Bankruptcy Court's order as proposed findings of fact and conclusions of law, in which case remanding the matter to the Bankruptcy Court based on an error of law under *de novo* review would still be appropriate. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 2022 WL 493734, at *10 (S.D.N.Y. Feb. 17, 2022); *see* Am. Standing Order of Reference (M-431), 12-MC-32 (S.D.N.Y. Feb. 1, 2012); Summ. J. Op. at 3, J.A.3418; Fed. R. Bankr. P. 9033.

Revoking the reference at this stage would result in wasteful re-litigation in light of the extensive proceedings that have occurred before the Bankruptcy Court. *In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99, 103–04 (2d Cir. 2019) (summary order) (highlighting the importance of "increasing judicial efficiency and checking gamesmanship") (quoting *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015)); *Picard for Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Saren-Lawrence*, 2018 WL 2383141, at *2, *5–6 (S.D.N.Y. May 15, 2018) (denying a motion to withdraw because actions to avoid fraudulent transfers are "core proceedings" and to discourage the use of such a motion as a "litigation tactic").

[15]    The Bankruptcy Court correctly concluded that the transfers at issue in this case are subject to the presumption of fraudulent intent that applies to a Ponzi scheme. Summ. J. Op. at JA3422–23. This presumption permits courts to infer the fraudulent intent of a debtor, in this case, BLMIS, as a matter of law "because the transfers 'made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay[,] or defraud creditors.'" *Moran v. Goldfarb*, 2012 WL 2930210, at *4 (S.D.N.Y. July 16, 2012) (citations omitted). That BLMIS operated as a Ponzi scheme has been well-documented. *See, e.g.*, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 178–83 (2d Cir. 2021).

8

fraudulent transfers). A trustee may claw back from "the initial transferee" a transfer avoided under section 548.[16] *See* 11 U.S.C. § 550(a)(1).

Florida law provides that, under certain circumstances, a person who has dissociated as a general partner but whose dissociation did not cause the "dissolution and winding up of the limited partnership[]" may still be liable for a "transaction" entered into by the limited partnership after the dissociation.[17] Fla. Stat. § 620.1607(3) (2006). As relevant, the statute provides:

> (1) A person's dissociation as a general partner does not of itself discharge the person's liability as a general partner for an obligation of the limited partnership incurred before dissociation. Except as provided otherwise in subsections (2) and (3), the person is not liable for a limited partnership's obligation incurred after dissociation. . . .
>
> . . .
>
> (3) A person that has dissociated as a general partner but whose dissociation did not result in a dissolution and winding up of a partnership's activities is liable on a transaction entered into by the limited partnership after the dissociation only if:
>
> (a) A general partner would be liable on the transaction.

---

[16] Mr. Brown argues that he may not be held liable because he was not the initial transferee. Brown Mem. at 11. The Bankruptcy Court did not find that Mr. Brown was the initial transferee. Instead, it found that Ken-Wen, the partnership, was the initial transferee. Summ. J. Op. at 20, J.A.3435. Mr. Brown was held liable for Ken-Wen's liability in his capacity as a dissociated general partner.

[17] Mr. Brown argues that the Bankruptcy Court incorrectly held that his 2013 personal bankruptcy did not discharge whatever liability may result from this proceeding. Brown Mem. at 18–19; *see* Summ. J. Op. 16–19, J.A.3431–34. He argues that the Trustee had "constructive notice" of his personal bankruptcy and "fail[ed] to file a claim or notify the [bankruptcy court] of its suit to recover assets from [him]." Brown Mem. at 18. The Trustee argues that Mr. Brown provided no actual notice of the bar date for the filing of proofs of claim in his 2013 bankruptcy, citing as evidence the affidavits of service for the notice of Mr. Brown's bankruptcy, the claims bar date, the plan and disclosure statement, and the confirmation order, none of which included the Trustee. Trustee Mem., Dkt. 16 at 24. The Bankruptcy Court correctly held that the Trustee was a known creditor entitled by due process to actual notice; because there is no evidence that Mr. Brown provided the Trustee actual notice, the debt was not discharged. *In re Hartley*, 479 B.R. 635, 643 (S.D.N.Y. 2012); *see also* Summ. J. Op. at 18–19, J.A.3433–34; Supp. Neiburg Decl. Ex. B, J.A.2982–3000; *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293 (1953).

9

> (b) At the time the other party enters into the transaction:
>
> > 1. Less than two years have passed since dissociation.
> > 2. The other party does not have notice of the dissociation and reasonably believes that the person is a general partner.

Fla. Stat. § 620.1607.

Because Mr. Brown's dissociation did not result in the winding up of Ken-Wen, he may be held responsible for liabilities Ken-Wen accrued after his dissociation only if, at the time of the transaction, the counterparty had no notice of his dissociation. Florida law further provides that "90 days after the effective date of an amendment to the certificate of limited partnership which states that the other person has dissociated," the world is considered to be on notice of the general partner's dissociation. Fla. Stat. § 620.1103(4)(a) (2006); *see* Unif. Ltd. P'ship Act § 607 (Unif. L. Comm'n 2013) (comment stating "[a] person might have notice under Section 103(d)(1) as well as under Section 103(b)(1)" of the Uniform Limited Partnership Act, which parallels Fla. Stat. § 620.1103(4)(a)).

Although the Bankruptcy Court noted that an amendment to Ken-Wen's certificate of partnership had been filed on April 29, 2008,[18] it failed to consider the legal import of that amendment under Florida law. *See* Summ. J. Op. at 10, J.A.3425 ("[Mr. Brown] filed documents with the Florida State Division of Corporations indicating that he was a general partner. Am. Certificate, ECF No. 204, Ex. 7 (filed with the Florida Division of Corporation on April 29, 2008, which removes Brown as a general partner of Ken-Wen)"); Certificate of Am. to Certificate of Ltd. P'ship, Ex. 7, J.A.2932–35. Specifically, the Bankruptcy Court failed to consider whether, as a matter of Florida law, BLMIS would be deemed to have had notice of Mr.

---

[18] The Bankruptcy Court stated that Mr. Brown filed this amendment; however, the Certificate of Amendment reflects that it was filed by Ms. Werner, who signed the document, not Mr. Brown. *See* Brown Mot. Summ. J. Reply, Ex. 7, J.A.2934, J.A.2937.

Brown's dissociation on the SIPA Filing Date by virtue of the earlier-filed amendment to the certificate of limited partnership.[19] *See* Unif. Ltd. P'ship Act § 103 (comment on subsection (d) stating that the filing of an amendment to the certificate of limited partnership starts a 90-day clock, at the end of which the world has constructive notice of a general partner's dissociation).

The Bankruptcy Court reasoned that the "transaction" at issue was one effectively "created by SIPA" on the "the SIPA Filing Date." It was on that date and not before, according to the Bankruptcy Court, that "the fraudulent transfer claims became a liability of the partnership," because that was the first date on which the Trustee's claims could have been asserted. Summ. J. Op. at 12, 15, J.A.3427, J.A.3430. The Bankruptcy Court's interpretation and reasoning has some intuitive resonance in light of the *sui generis* role that the SIPA filing date plays in clawback actions and for triggering liability for the transfer of customer property.

This Court notes, however, that there is some tension with the Bankruptcy Court's interpretation and the fact that the fraudulent transfers, without which there would be no liability, occurred prior to the SIPA filing date. Florida law appears to differentiate between the time a "transaction [is] entered into," Fla Stat. § 620.1607(3), and the time at which an "obligation [is] incurred." Fla. Stat. § 620.1607(1).[20] The "limited purpose of SIPA section 78fff-2(c)(3)" is to

---

[19] Mr. Brown's statement of dissociation appears to have been signed on February 29, 2008. *See* Ex. D; Brown Mot. Summ. J. 2, J.A.0220 ("Defendant Brown dissociated himself as a general partner of Ken-Wen as of February 29, 2008 . . . ."). That statement also starts the 90-day notice clock. Fla. Stat. § 620.1103(4)(a). Using that document, pursuant to Florida law, BLMIS would have had notice of Mr. Brown's dissociation on May 29, 2008.

[20] The distinction between the time a transaction is entered into and the time an obligation is incurred is echoed by courts in other jurisdictions that have adopted the same or similar laws. *See, e.g.*, *8182 Maryland Assocs., Ltd. P'ship v. Sheehan*, 14 S.W.3d 576, 582–84 (Mo. 2000) (en banc) (noting that liability under a lease agreement can attach either when a lease agreement is entered into or when rent becomes due); *Envo, Inc. v. Walters*, 2012 WL 2926522, at *13 (Del. Ch. July 18, 2012) (holding that a dissociated general partner was liable for obligations stemming from a contract the partnership entered into prior to his dissociation); *In re Labrum & Doak, LLP*, 237 B.R. 275, 293–94 (Bankr. E.D.P.A. 1999) (holding that former general partners were liable for partnership liabilities that arose after their dissociation because the "deficiencies" leading to liability occurred prior to their withdrawal).

11

create a "legal fiction that confers standing on a SIPA trustee" in order to promote the recovery of customer property; it is ordinarily not seen as creating a separate financial transaction. *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014). That said, the Court need not opine on the proper statutory interpretation at this time and instead remands the case to the Bankruptcy Court for further consideration.[21]

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's judgment granting summary judgment to the Trustee is VACATED, and the case is REMANDED for further proceedings consistent with this opinion and order.

**SO ORDERED.**

**Date: July 25, 2023**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

The Trustee analogizes the distinction to that applicable in cases involving tortious asbestos exposure. Trustee Mot. Summ. J. at 36, J.A.0293 (quoting *In re Grossman's*, 607 F.3d 114, 125 (3d Cir. 2010)). In a Ponzi scheme, the customer's property is misused at the time of a fraudulent transfer, but the injury caused by that misuse is only realized when the scheme collapses. This might constitute "expos[ure] prepetition to conduct giving rise to an injury, which underlies a right to payment under the Bankruptcy Code." *In re Grossman's*, 607 F.3d at 125 (3d Cir. 2010).

[21] The Bankruptcy Court awarded prejudgment interest at a rate of 4% calculated from the SIPA Filing Date to the Trustee. Summ. J. Op. at 8–9, J.A.3423–24. Because this case is being remanded to the Bankruptcy Court, this Court need not decide whether the selection of the SIPA Filing Date as the date from which prejudgment interest accrues was appropriate. The Court notes, however, that the standard practice in this District is to award interest from the commencement of the adversarial action rather than the SIPA Filing Date in clawback actions related to BLMIS, although, in certain cases, courts have approved awarding prejudgment interest beginning from the date of a bankruptcy petition. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 528 F. Supp. 3d 219, 246–47 (S.D.N.Y. 2021) (awarding prejudgment interest starting from the date the adversarial action was filed); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 642 B.R. 353, 363 (Bankr. S.D.N.Y. 2022) (commencing prejudgment interest award on December 10, 2010, not the SIPA filing date); *see also In re FKF 3, LLC*, 2018 WL 5292131, at *14 (S.D.N.Y. Oct. 24, 2018) (calculating prejudgment interest on the fraudulent conveyance claims from the petition date).