# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of _____July 21_____, 2023, by and between Irving H. Picard, in his capacity as the Trustee (the "Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and Falcon Private Ltd. (f/k/a Falcon Private Bank Ltd., f/k/a AIG Privat Bank AG) (the "Defendant"). The Trustee and the Defendant shall together be referred to herein as the "Parties" and each, individually, as a "Party."

## RECITALS

**WHEREAS**, on December 8, 2011, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Defendant in an action captioned *Picard v. Falcon Private Bank Ltd. (f/k/a AIG Privat Bank AG),* Adv. Pro. No. 11-02923 (CGM) (the "Adversary Proceeding"), to recover subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, (i) the Trustee alleges that the Defendant received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) totaling approximately $38,745,417 from BLMIS through Fairfield Sentry Limited, at least $70,288 of which subsequent transfers came through Fairfield Sigma Limited, which invested 100% of its assets in Fairfield Sentry Limited, and (ii) the Defendant is aware of potential additional transfers from Fairfield Sentry Limited totaling $5,611,213.71, but has not been able to verify whether such additional transfers were

completed (both (i) and (ii) referred to collectively in this Agreement as the "Subsequent Transfers");

**WHEREAS**, the Defendant denies the Trustee's allegations in the Adversary Proceeding;

**WHEREAS**, the Defendant asserts that it is not subject to personal jurisdiction in the United States with respect to the claims asserted in the Adversary Proceeding or otherwise, the Trustee preserves all arguments to the contrary, and, by executing this Agreement, the Parties agree that Defendant has not waived, and does not waive, its jurisdictional arguments or otherwise submit to personal jurisdiction other than to the extent expressly set forth herein;

**WHEREAS**, the Defendant represents in its annual reports that it began to wind down its business operations in May 2020, has since ceased all business activity, and has limited assets, few or no staff, and no clients; and

**WHEREAS**, in light of such circumstances, the Parties wish to compromise and resolve their disputes on the terms set forth herein, without the expense, delay and uncertainty of litigation.

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.  <u>Incorporation of Whereas Clauses</u>.

    The Parties incorporate by reference the WHEREAS clauses set forth above as if fully set forth herein.

2.  <u>Settlement Payment and Dismissal of the Adversary Proceeding</u>.

    (a)    The Trustee shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Rule 9019 Motion</u>") in the Adversary Proceeding seeking the Bankruptcy Court's entry of an order approving this Agreement (the "<u>Settlement Order</u>").

    (b)    Within five (5) business days of the Settlement Order becoming a final, non-appealable order (the "<u>Effective Date</u>"), the Defendant shall pay to the Trustee the amount of Three

2

Million, Three Hundred Thousand United States Dollars ($3,300,000.00) (the "Settlement Payment") by wire transfer of immediately available funds to the account specified on Schedule 1 attached hereto.

(c)  Within three (3) business days of receipt of the Settlement Payment, the Trustee shall file a notice dismissing the Adversary Proceeding with prejudice and without costs to either Party.

3.  Party Releases.

(a)  In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee, on behalf of BLMIS, and/or the consolidated BLMIS/Madoff estate, hereby releases and forever discharges the Defendant and each of its direct and indirect, past or present assigns, heirs, predecessors, successors, affiliates, related entities, employees, agents, directors, officers, members, stockholders, beneficiaries, attorneys, professional advisors, staff, and representatives (collectively, the "Releasees") from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff estate, against the Defendant based on the Subsequent Transfers, or any investment the Defendant made

3

with or transfers the Defendant received from Fairfield Sentry Limited or Fairfield Sigma Limited (the "Trustee's Released Claims").

(b) Notwithstanding and except for the Trustee's Released Claims, the Releasees are not released from liability for any transfers they may have received, or they may receive after the Effective Date of this Agreement, that constitute subsequent transfers of customer property from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, or other applicable laws. The Trustee is not aware of any unreleased claims against the Defendant.

(c) In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Defendant, on behalf of itself and its executors, administrators, and assigns, hereby releases and forever discharges: (i) the Trustee; (ii) the Trustee's attorneys, professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the Defendant against the Trustee based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff estate, the Subsequent Transfers, the Adversary Proceeding, or any investment with or transfers made from Fairfield Sentry Limited or Fairfield Sigma Limited, including any preference, avoidance, or related clawback claim that

4

the Defendant may have or may in the future exist with respect to the Settlement Payment in connection with any potential insolvency, restructuring, liquidation or winding down of the Defendant.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released under Section 3 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the Effective Date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 3 of this Agreement.

5.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, he has the full power, authority, and legal right to execute and deliver this Agreement and to perform his obligations hereunder, subject to the Bankruptcy Court's entry of the Settlement Order.

(b)    The Defendant represents and warrants that, as of the date hereof: (i) it has the full power, authority, and legal right to execute and deliver this Agreement and to perform its obligations hereunder; (ii) this Agreement has been duly authorized, executed, and delivered by the Defendant and constitutes the valid and binding agreement of the Defendant, enforceable

5

against the Defendant in accordance with its terms; (iii) the Defendant has executed this Agreement with the full knowledge of any and all rights that the Defendant may have with respect to the controversies herein compromised, and the Defendant has received independent legal advice from its counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Defendant releases herein, and the Defendant has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Defendant releases herein.

6.  Additional Representations and Warranties by the Defendant.

The Defendant represents and warrants that for the six year period prior to the commencement of the SIPA Proceedings, and other than the Subsequent Transfers, to the Defendant's knowledge and belief (meaning the actual knowledge and belief of its current directors and officers), it: (1) has not received any money, funds, loans, transfers, assets, financial assistance, or financial accommodation directly from Madoff, BLMIS, or any other company or entity owned or controlled by Madoff or BLMIS; and (2) is not an immediate, mediate, or subsequent transferee of any funds or property originating from Madoff or BLMIS transferred to an initial transferee; and (3) is not aware of any claims against the Defendant by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this Agreement.

7.  Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by another Party after the date of this Agreement to effectuate the intent of this Agreement.

8. <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

9. <u>Amendment; Waiver</u>.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, nor shall any such waiver constitute a continuing waiver.

10. <u>Assignment</u>.

This Agreement may not be assigned by either Party without the prior written consent of the other Party.

11. <u>Successors</u>.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, personal representatives, executors, successors, and permitted assigns.

12. <u>Counterparts; Electronic Copy of Signatures</u>.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Parties of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.   Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

14.   JURISDICTION; WAIVER OF JURY TRIAL.

(a)   THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)   EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.   Expenses.

Each Party shall bear its respective expenses relating to or arising out of this Adversary Proceeding and this Agreement, including, without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16. <u>Notices</u>.

All notices or communications hereunder shall be in writing and delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto. A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.

17. <u>No Third Party Beneficiaries</u>.

Except as expressly provided in Section 3, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Captions and Rules of Construction</u>.

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein. The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

IN WITNESS WHEREOF, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, THE TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF**

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

_____
Irving H. Picard, Trustee

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Amy E. Vanderwal
Facsimile: (212) 589-4201

Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Attention: Howard L. Simon
Facsimile: (212) 262-1215

**THE DEFENDANT**

Address:
Falcon Private Ltd.
Freischützgasse 3
8004 Zürich, Switzerland

With copies to:
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, New York 10019-6131
Attention: Rahman Connelly
Facsimile: (212) 858-1500

**FALCON PRIVATE LTD.**

By: _____

Name: Dr. Matteo Maccio / Andreas Bertschi

Title: CEO / Head of Legal

# **SCHEDULE 1**

## **Wiring Instructions**

Citi Private Bank  
153 East 53rd Street, 23rd Floor  
New York, New York 10022  
ABA No.: ███████  
Swift Code: ██████  
Account Name:    Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC  
Account No.: ████████