DAVIS+GILBERT LLP
1675 Broadway
New York, NY 10019
T: (212) 468-4800

**Hearing Date: October 18, 2023**
**Objection Date: June 16, 2023**
**Reply Date: July 31, 2023**

*Attorneys for Defendant Natixis S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-05353 (CGM) |
| v. | |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT NATIXIS S.A.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 2

I.     THE RELEASE BARS THE TRUSTEE'S CLAIMS AGAINST NATIXIS ................... 2

      A.     The Trustee's Interpretation of the Release Disregards Black Letter Law ............. 3

           i.     It is Irrelevant that the Agreement Mentions Neither Natixis nor Sentry ... 3

           ii.    The Trustee's Interpretation Would Render Language in the Release
               Meaningless ................................................................................. 5

           iii.   The Trustee Misapplies the Doctrine of *Ejusdem Generis* ........................ 6

           iv.   The Consideration for the Release Does Not Alter its Applicability or
               Limit its Clear Wording ................................................................. 7

      B.     The Trustee's Arguments Relying on Extrinsic Evidence Should Be Rejected ..... 9

           i.     The Fischer Declaration Should be Disregarded ..................................... 10

           ii.    The Court Approved the Release as Written ........................................... 13

            iii.   The Trustee's Conduct Does Not Support His Interpretation ................... 14

      C.     Natixis is a Third-Party Beneficiary of the Alpha Prime Settlement Agreement. 15

      D.     Reformation of the Alpha Prime Settlement is Not Warranted ........................... 16

II.    NATIXIS IS NOT SUBJECT TO PERSONAL JURISDICTION .................................. 17

III.   DISMISSAL IS APPROPRIATE FOR ADDITIONAL REASONS .............................. 19

CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*,
  160 A.D.3d 176 (2d Dep't 2018) ........................................................................... 8

*7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*,
  No. 13-981, 2015 U.S. Dist. LEXIS 44031
  (S.D.N.Y. Mar. 31, 2015) ...................................................................................... 18

*ABA Consulting, LLC v. Liffey Van Lines, Inc.*,
  67 A.D.3d 401 (1st Dep't 2009) ........................................................................... 16

*Ali v. City of N.Y.*,
  No. 20-30, 2021 U.S. Dist. LEXIS 255741
  (E.D.N.Y. Sep. 29, 2021) ......................................................................................... 3

*Analisa Salon, Ltd. v. Elide Props., LLC*,
  30 A.D.3d 448 (2d Dept. 2006) .............................................................................. 5

*Ananta Grp., Ltd. v. Moss Shamask, Ltd.*,
  182 A.D.2d 499 (1st Dep't 1992) ......................................................................... 11

*Anwar v. Fairfield Greenwich, Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ..................................................................... 5

*Ashwood Cap., Inc. v. OTG Mgmt., Inc.*,
  99 A.D.3d 1 (1st Dep't 2012) .................................................................................. 3

*Bank v. Verde Energy USA, Inc.*,
  No. 19-01472, 2020 U.S. Dist. LEXIS 171630
  (E.D.N.Y. Sep. 18, 2020) ........................................................................................ 5

*Beaumont Capital Corp. v. Bear, Stearns & Co.*,
  704 F. Supp. 362 (S.D.N.Y. 1988) ......................................................................... 9

*Bild v. Konig*,
  No. 09-5576, 2011 U.S. Dist. LEXIS 44368
  (E.D.N.Y. Apr. 25, 2011) ....................................................................................... 11

*Bishop v. Children's Ctr. for Developmental Enrichment*,
  No. 08-766, 2011 U.S. Dist. LEXIS 130536
  (S.D. Ohio Nov. 10, 2011) ..................................................................................... 11

*Bloomfield v. Bloomfield*,
  97 N.Y.2d 188 (2001) .............................................................................................. 3

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts
    Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) .................................................................... 9, 10

*Browning v. City of N.Y.*,
    No. 16-7470, 2018 U.S. Dist. LEXIS 114653
    (S.D.N.Y. July 9, 2018) ................................................................................. 15

*Burns v. GMC, Pontiac Div.*,
    950 F. Supp. 137 (D. Md. 1996) .................................................................. 12

*Cahill v. Regan*,
    5 N.Y.2d 292 (1959) ....................................................................................... 4

*Camperlino v. Bargabos*,
    96 A.D.3d 1582 (4th Dep't 2012) ................................................................. 6

*Chacko v. Costco Wholesale Corp.*,
    568 F. Supp. 3d 487 (S.D.N.Y. 2021) ........................................................... 5

*Collins v. Harrison-Bode*,
    303 F.3d 429 (2d Cir. 2002) .......................................................................... 2

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) ............................................... 4, 6, 7, 13

*Consol. Edison, Inc. v. Ne. Utils.*,
    426 F.3d 524 (2d Cir. 2005) ........................................................................ 16

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
    697 F.2d 27 (2d Cir. 1982) .......................................................................... 13

*Emekekwue v. Offor*,
    No. 11-01747, 2012 U.S. Dist. LEXIS 152804
    (M.D. Pa. Oct. 24, 2012) ............................................................................. 18

*Energizer, LLC v. MTA Trading, Inc.*,
    No. 20-1583, 2021 U.S. Dist. LEXIS 113124
    (E.D.N.Y. June 16, 2021) ............................................................................. 10

*Errico v. Pfizer Consol. Pension Plan*,
    No. 19-10211, 2021 U.S. Dist. LEXIS 75833
    (S.D.N.Y. Apr. 20, 2021) ............................................................................... 7

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006) ........................................................................ 10

*George Backer Mgmt. v. Acme Quilting Co.*,
    46 N.Y.2d 211 (1978) ........................................................................... 16

*Golden Pac. Bancorp v. FDIC*,
    273 F.3d 509 (2d Cir. 2001) ............................................................... 10

*Greenslate v. Tenneco Oil Co.*,
    623 F. Supp. 573 (E.D. La. 1985) ...................................................... 12

*Gunther v. Vilceus*,
    142 A.D.3d 639 (2d Dep't 2016) ........................................................ 16

*Hawknet Ltd. v. Overseas Shipping Agencies*,
    590 F.3d 87 (2d Cir. 2009) ................................................................. 17

*Hoffman v. Celebrezze*,
    405 F.2d 833 (8th Cir. 1969) ............................................................. 13

*Hui-Wen Chang v. N.Y.C. Dep't of Educ.*,
    412 F. Supp. 3d 229 (E.D.N.Y. 2019) ................................................. 3

*In re Actrade Fin. Techs. Ltd.*,
    424 B.R. 59 (Bankr. S.D.N.Y. 2009) ............................................. 4, 15

*In re Corp. Res. Servs.*,
    No. 15-12329, 2019 Bankr. LEXIS 3249
    (Bankr. S.D.N.Y. Oct. 10, 2019) .......................................................... 7

*In re Corp. Res. Servs.*,
    No. 19-10931, 2020 U.S. Dist. LEXIS 159260
    (S.D.N.Y. Sep. 1, 2020) ......................................................................... 6

*In re Dynegy Inc.*,
    486 B.R. 585 (Bankr. S.D.N.Y. 2013) .................................................. 8

*In re Ionosphere Clubs*,
    156 B.R. 414 (S.D.N.Y. 1993 ............................................................. 14

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.*,
    No. 11-2262, 2015 U.S. Dist. LEXIS 107225
    (S.D.N.Y. Aug. 4, 2015) ....................................................................... 18

*In re Platinum Oil Props., LLC*,
    465 B.R. 621 (Bankr. D.N.M. 2011 ................................................... 17

*In re Prudential Lines*,
    170 B.R. 222 (S.D.N.Y. 1994) ........................................................... 14

iv

*In re Roman Catholic Diocese of Rockville Ctr.*,
    647 B.R. 69 (Bankr. S.D.N.Y. 2022) .................................................................. 14

*In re Wilmington Hosp. LLC*,
    No. 01-19401, 2003 Bankr. LEXIS 404
    (Bankr. E.D. Pa. Apr. 18, 2003) .......................................................................... 17

*Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines*,
    No. 86-3266, 1987 U.S. Dist. LEXIS 7522
    (S.D.N.Y. Aug. 17, 1987) ................................................................................ 7, 11

*Lucent Techs. Inc. v. Gateway, Inc.*,
    470 F. Supp. 2d 1195 (S.D. Cal. 2007) ................................................................. 6

*Mangini v. McClurg*,
    24 N.Y.2d 556 (1969) ............................................................................................ 9

*Matter of CPG Constr. & Dev. Corp. v. 415 Greenwich Fee Owner, LLC*,
    No. 102055/10, 2012 N.Y. Misc. LEXIS 6360
    (Sup. Ct. N.Y. County Mar. 12, 2012) .................................................................. 4

*Neuman v. Harmon*,
    965 F. Supp. 503 (S.D.N.Y. 1997) ..................................................................... 13

*Ocean Transport Line Inc. v. Am. Philippine Fiber Indus., Inc.*,
    743 F.2d 85 (2d Cir. 1984) .................................................................................. 15

*Omni Quartz v. CVS Corp.*,
    287 F.3d 61 (2d Cir. 2002) .................................................................................... 9

*Oxford Comm. Corp. v. Landau*,
    12 N.Y.2d 362 (1963). ..................................................................................... 9, 10

*Peterson v. Regina*,
    935 F. Supp. 2d 628 (S.D.N.Y. 2013) ............................................................. 9, 15

*Petracca v. Petracca*,
    302 A.D.2d 576 (2d Dep't 2003) .......................................................................... 5

*Picard v. Avellino*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .................................................................. 20

*Pilarczyk v. Morrison Knudsen Corp.*,
    965 F. Supp. 311 (N.D.N.Y. 1997) ....................................................................... 7

*Porina v. Marward Shipping Co.*,
    No. 05-5621, 2006 U.S. Dist. LEXIS 60535
    (S.D.N.Y. Aug. 24, 2006) .................................................................................... 19

*Power Up Lending Grp. Ltd. v. CD Int'l Enter., Inc.*,
No. 17-5948, 2021 U.S. Dist. LEXIS 262674
(E.D.N.Y. May 13, 2021) ............................................................. 10

*Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*,
760 F.2d 390 (2d Cir. 1985) ........................................................ 10

*R/S Assocs. v. N.Y. Job Dev. Auth.*,
98 N.Y.2d 29 (2002) ...................................................................... 9

*Rodriguez v. City of N.Y.*,
No. 18-4805, 2021 U.S. Dist. LEXIS 222062
(S.D.N.Y. Nov. 16, 2021) ......................................................... 10, 16

*Sandy Hollow Assocs. Llc & Port N. Constr. LLC v. Inc. Vill. of Port Wash. N.*,
No. 09-2629, 2010 U.S. Dist. LEXIS 142396
(E.D.N.Y. Sep. 6, 2010) ................................................................. 7

*Strauss v. Crédit Lyonnais, S.A.*,
175 F. Supp. 3d 3 (E.D.N.Y. 2016) ............................................. 18

*Tarantola v. Williams*,
48 A.D.2d 552 (2d Dep't 1975) ..................................................... 7

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp.*,
No. 17-8528, 2020 U.S. Dist. LEXIS 92744
(S.D.N.Y. May 27, 2020) ............................................................. 16

*Toth v. N.Y.C. Dep't of Educ.*,
No. 21-4245, 2023 U.S. Dist. LEXIS 2103
(E.D.N.Y. Jan. 5, 2023) ............................................................. 6, 7

*United States v. Bank of N.Y.*,
14 F.3d 756 (2d Cir. 1994) ............................................................ 8

*VoiceAge Corp. v. RealNetworks, Inc.*,
926 F. Supp. 2d 524 (S.D.N.Y. 2013) ........................................... 9

*W. Alton Jones Found. v. Chevron U.S.A.*,
97 F.3d 29 (2d Cir. 1996) ............................................................ 15

*Wade Park Land Hldgs., LLC v. Kalikow*,
589 F. Supp. 3d 335 (S.D.N.Y. 2022) ........................................... 5

*Wells v. Shearson Lehman/American Express, Inc.*,
72 N.Y.2d 11 (1988) .................................................................... 11

**Statutes**

Fed. R. Civ. P. 12(g)(2)............................................................................................... 17

Fed. R. Civ. P. 60(b) ............................................................................................ 13, 17

Fed. R. Civ. P. 60(c)(1)............................................................................................ 13

**Other Authorities**

Restatement (Second) of Contracts § 311.................................................................. 11

Natixis submits this reply memorandum of law in further support of its motion ("Motion" or "Mot."), dated April 17, 2023 (ECF No. 199), to dismiss the Amended Complaint.[1]

## **PRELIMINARY STATEMENT**

As demonstrated in the Motion, the plain language of the Alpha Prime Release unequivocally releases Natixis from the Trustee's claims here, and the Trustee makes no genuine effort to challenge the import of that language.  In particular, the Trustee does not contest (or even address) in his Opposition that: (i) Natixis is a former indirect shareholder of Alpha Prime, (ii) the Trustee knew this fact when he entered into the Release; (iii) the Release applies to all "known or unknown" claims; (iv) his claims against Natixis are "related to Madoff or BLMIS"; and (v) he was aware of the claims against Natixis when he entered into the Release – indeed, the operative complaint against Natixis at that time included claims against Natixis's affiliates to recover transfers from Alpha Prime.  In addition, the Alpha Prime parties identified specific claims *not* covered by the Release – prefaced with the clause "[f]or the avoidance of doubt" – and the Trustee's claims against Natixis are not listed among them.  The unambiguous language of the Release requires dismissal of this action.

Yet, without ever focusing on the specific language of the Release, the Trustee attempts to obfuscate and override its plain meaning by making three main arguments.  *First*, while conceding (as he must) that Natixis is a third-party beneficiary of the Release (*see* Alpha Prime Settlement Agreement ¶ 21), the Trustee claims that the Release benefits Natixis only as to claims pertaining to Alpha Prime transfers and not to "any and all . . . claims . . . in any way related to Madoff or BLMIS," which is what the Release in fact says.  The Trustee's

---

[1] Unless otherwise noted, capitalized terms herein shall have the meaning set forth in the Motion, references to "ECF No. __" refer to Adv. Pro. No. 10-05353 (CGM) (Bankr. S.D.N.Y.), and references to "Cioffi Ex. __" refer to the exhibits annexed to the Cioffi Decl. (Apr. 17, 2023), ECF No. 200.

interpretation would render the language in the Release meaningless, an approach to contractual interpretation that New York courts repeatedly reject.

*Second*, the Trustee urges the Court to consider extrinsic evidence, even though the Alpha Prime Settlement Agreement is unambiguous, and the Trustee does not seriously contest otherwise. Simply put, extrinsic evidence is not permitted (or necessary) to evaluate an unambiguous agreement. In any event, the purported evidence to which the Trustee points does not justify changing or ignoring the plain meaning of the Release.

*Third*, as a fallback position, the Trustee asserts half-heartedly that the Court should reform the Alpha Prime Settlement Agreement and that discovery should be taken, despite the fact that the Release was negotiated by sophisticated parties and approved by this Court barely a year ago, but well before the Trustee amended his complaint against Natixis to remove allegations relating to Alpha Prime. Nothing within the four corners of the Release evidences a mistake, and, notably, the Trustee does not even claim that there is a mistake to correct with a reformation, a remedy that cannot be sought in the context of opposing this motion to dismiss.

The Amended Complaint should also be dismissed for the five additional reasons discussed in the Motion and herein. Natixis briefed these arguments – which are similar to those raised by other subsequent transferee defendants – in its Motion, so this reply brief focuses on the Alpha Prime release argument, which is unique to Natixis and its affiliates.[2]

## ARGUMENT

## I.    THE RELEASE BARS THE TRUSTEE'S CLAIMS AGAINST NATIXIS

When construing releases, courts look to general principles of contract law. *See Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002). Throughout his Opposition, the

---

[2] In *Picard v. Natixis Financial Products LLC, et al.*, defendants there are also moving to dismiss based on, *inter alia*, the Release. *See* Adv. Pro. No. 23-01017, Memorandum of Law (May 22, 2023), ECF No. 18.

Trustee ignores a central tenet of contract interpretation – "effect must be given to the intent of the parties as indicated by the language employed." Mot. at 10. "[T]o determine the contracting parties' intent, a court looks to the objective meaning of contractual language, not to the parties' individual subjective understanding of it." *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 6 (1st Dep't 2012); *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193 (2001) ("[W]hile we must be concerned with what the parties intended, we generally may consider their intent only to the extent that it is evidenced by the writing.").

## A. The Trustee's Interpretation of the Release Disregards Black Letter Law

### i. It is Irrelevant that the Agreement Mentions Neither Natixis nor Sentry

The Trustee insists that, because the background section of the Alpha Prime Settlement Agreement mentions neither Natixis nor Sentry, and because the agreement resolved a controversy between Alpha Prime and the Trustee, "the only plausible interpretation of the Release" is that it covers claims related only to Alpha Prime transfers. Opp. at 28. Yet, Natixis clearly falls within the category of persons covered by the Release, *see* Mot. at 11, and the Trustee's claims to recover Sentry transfers are clearly "in any way related to Madoff or BLMIS." Release ¶ 7. The very fact that courts recognize the concept of general releases – including where the releasing party does not "appreciate the reach . . . of the release," Mot. at 12 (quoting *Ali v. City of N.Y.*, No. 20-30, 2021 U.S. Dist. LEXIS 255741, at *16-17, *19 (E.D.N.Y. Sep. 29, 2021)) – is sufficient reason to reject the Trustee's contention that the Release applies only to Alpha Prime transfers. Moreover, New York law is clear that the "'mere recitation of the specific claims underlying a settlement will not undermine" the "broad . . . effect of general release language," particularly in the absence of "language cabining the release to that claim." *Hui-Wen Chang v. N.Y.C. Dep't of Educ.*, 412 F. Supp. 3d 229, 244 (E.D.N.Y. 2019) (citation

3

omitted).  Here, there is no language in the settlement agreement, including the background

section and the Release itself, that cabins the Release to Alpha Prime transfers.

The decisions the Trustee relies on are inapt, and none support that a settlement's

background section overrides a release's plain language.  In *In re Actrade Fin. Techs. Ltd.* (to

which the Trustee devotes an entire section of his Opposition, *see* Opp. at 36-37), the Court

considered a situation where the releasing party "did not contemplate even the possibility that

[the new claim filed in 2009] could arise" when it entered into the at-issue release on May 9,

2003.  424 B.R. 59, 65, 72, 73 (Bankr. S.D.N.Y. 2009) (finding debtor "did not release unknown

. . . claims" on certain surety bonds).  Here, far from being "unknown," the Trustee has been

pursuing claims against Natixis (and its affiliates) for nearly 13 years, including claims relating

specifically to Alpha Prime.[3]  *See* Mot. at 6.  Likewise, in *Cahill v. Regan*, the Court of Appeals

found that a release did not cover "a possible future claim" where the counterparty "was not even

aware" of the patent application that would ultimately lead to the purportedly released patent

claim – not existing and known claims like here.  5 N.Y.2d 292, 299-300 (1959).[4]

The Trustee also relies repeatedly on *Consol. Edison, Inc. v. Ne. Utils.*, where the court

determined that a release in a settlement agreement, which resolved class action claims relating

to allegedly false and misleading proxy statements concerning a merger vote, did not extend to

subsequent third-party shareholder claims based on the termination of the merger.  332 F. Supp.

2d 639, 647-48 (S.D.N.Y. 2004).  That was because the definition of "Released Claims" there

---

[3] Moreover, the release in *In re Actrade* more broadly released the sureties from "all claims," 424 B.R. at 66, but
here the Release is limited to "claims arising out of or in any way related to Madoff or BLMIS" and is further
qualified by an exception, not relevant here.  Release ¶ 7.

[4] *See Matter of CPG Constr. & Dev. Corp. v. 415 Greenwich Fee Owner, LLC*, No. 102055/10, 2012 N.Y. Misc.
LEXIS 6360, *19-20 (Sup. Ct. N.Y. County Mar. 12, 2012) (distinguishing *Cahill* on similar grounds).  Moreover, it
is irrelevant whether the Trustee was aware of his claims against Natixis (he clearly was), as the Release expressly
releases "unknown" claims.  Mot. at 11.

referred specifically to the class action and the proxy statement. *See id.* at 644. Here, nothing in the Release is limited to Alpha Prime transfers. *See* Release ¶ 7.

### ii. The Trustee's Interpretation Would Render Language in the Release Meaningless

The Trustee's reading of the Release renders the operative language – releasing "all past, present or future actions . . . arising out of or in any way related to Madoff or BLMIS," Release ¶ 7 – meaningless, contrary to New York's rules of construction. *See Wade Park Land Hldgs., LLC v. Kaliko*w, 589 F. Supp. 3d 335, 365-66 (S.D.N.Y. 2022) ("[A] court must interpret a contract so as to give effect to all of its clauses and to avoid an interpretation that leaves part of the contract meaningless.") (citation omitted). If the Release applies only to Alpha Prime transfers, as the Trustee contends, the clause "in any way related" would have no effect. That cannot be. *See Bank v. Verde Energy USA, Inc.*, No. 19-01472, 2020 U.S. Dist. LEXIS 171630, at *11-12 (E.D.N.Y. Sep. 18, 2020) (rejecting interpretation of settlement agreement's effective date rendering "as of" superfluous). As this Court recently reminded the Trustee, unambiguous and clear language means what the language says and not what the Trustee wishes it said based on "context." *Picard v. Square One Fund Ltd.*, June 29, 2023 Hearing Tr. 12:14-15, Adv. Pro. No. 10-04330 (Morris, J.), ECF No. 280 ("THE COURT: You need to stick to the language in the order. Context means nothing to me at this point."); *id.* at 12:3-6 ("THE COURT: That's like saying look at the legislative history. You don't look at the legislative history if the law is clear. And this contract seems to be clear. What is ambiguous about this order?").[5]

---

[5] The Trustee cites decisions supporting Natixis's position. *See* Opp. at 31. *See Analisa Salon, Ltd. v. Elide Props., LLC*, 30 A.D.3d 448, 449 (2d Dept. 2006) ("[T]he court . . .should not construe the language in a manner that would render one or more of its provisions meaningless."); *Petracca v. Petracca*, 302 A.D.2d 576, 577 (2d Dep't 2003) ("A court may not . . . construe the language in such a way as would distort the contract's apparent meaning."); *Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487, 495 (S.D.N.Y. 2021). The other decisions the Trustee cites are distinguishable. *In re Miner* found that a contract, unlike here, did not evidence intent to benefit a third party on its face. 229 B.R. 561 (B.A.P. 2d Cir. 1999). And *Anwar v. Fairfield Greenwich, Ltd.* considered an issue the Trustee concedes here – whether parties were third-party beneficiaries. 728 F. Supp. 2d 372, 418-19 (S.D.N.Y.

### iii.   The Trustee Misapplies the Doctrine of *Ejusdem Generis*

In New York, "[w]here . . . *[a] release* . . . contain[s] *specific recitals as to the claims being released*, and yet conclude[s] with an omnibus clause to the effect that the releasor releases and discharges all claims and demands whatsoever which he [or she] . . . may have against the releasee . . . , the courts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim." *Camperlino v. Bargabos*, 96 A.D.3d 1582, 1583-84 (4th Dep't 2012) (citation omitted) (emphases added); *cf.* Black's Law Dictionary 631 (10th ed 2014) (defining "*ejusdem generis*" as "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed").

The Trustee misapplies this doctrine here by again ignoring the actual words of the Release.  *See* Opp. 28.  Far from being limited to a particular claim or claims, the Release expressly applies to "any and all" claims and actions that "aris[e] out of or in any way related to Madoff or BLMIS."  Release ¶ 7.  As a result, the decisions cited by the Trustee do not support his position, because there the releases themselves referred specifically to particular claims or had other limiting language that is not present here.  For example, the release in *Consol. Edison* referred specifically to particular claims, *see supra* at 4-5; in *Lucent Techs. Inc. v. Gateway, Inc.*, the release referred specifically to "overpayment claims" and to "disputes mentioned in the preceding paragraphs," and thus did not apply to unrelated patent infringement claims, 470 F. Supp. 2d 1195, 1200 (S.D. Cal. 2007); and in *Toth v. N.Y.C. Dep't of Educ.*, the release applied

---

2010); *see infra* at 15-16.  In *In re Corp. Res. Servs.*, in contrast to the Release here, the release was limited to claims "relate[d] to the transactions referenced in the Adversary Proceeding."  No. 19-10931, 2020 U.S. Dist. LEXIS 159260, at *15 (S.D.N.Y. Sep. 1, 2020).

only to "the claims asserted in these consolidated actions and in the underlying administrative

proceedings." No. 21-4245, 2023 U.S. Dist. LEXIS 2103, at *13-14 (E.D.N.Y. Jan. 5, 2023).

### iv. The Consideration for the Release Does Not Alter its Applicability or Limit its Clear Wording

New York Courts have repeatedly rejected arguments to limit the scope of a release based

on the consideration exchanged for such release. *See, e.g.*, *Errico v. Pfizer Consol. Pension

Plan*, No. 19-10211, 2021 U.S. Dist. LEXIS 75833, at *51-52 (S.D.N.Y. Apr. 20, 2021) (finding

plaintiff's "conclusion that he settled too cheaply neither voids nor limits the [r]elease"); *Jerry's

Gen. Contracting Serv., Inc. v. Republic of Philippines*, No. 86-3266, 1987 U.S. Dist. LEXIS

7522, at *2, *7 (S.D.N.Y. Aug. 17, 1987) (rejecting plaintiff's argument that consideration for

release evidences more limited scope where release was "clear" and "unambiguous"); *Pilarczyk

v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 322 (N.D.N.Y. 1997) ("[P]arties to a contract are

free to bargain as to the consideration exchanged, even if that consideration is 'grossly unequal

or of dubious value.'") (citation omitted).[6]  *Consol. Edison* is easily distinguishable, *see supra* at

4-5, and unlike here, the consideration language there referred specifically to the settlement of

particular claims.  332 F. Supp. 2d at 648-49.[7]

Regardless, the Trustee downplays the significant consideration that Alpha Prime

provided to the Trustee.  To start, Alpha Prime agreed to pay $76.45 million (the full amount of

---

[6] In fact, under New York law, a total or partial release is not invalidated even by "the absence of consideration." *Sandy Hollow Assocs. Llc & Port N. Constr. LLC v. Inc. Vill. of Port Wash. N.*, No. 09-2629, 2010 U.S. Dist. LEXIS 142396, at *76-77 (E.D.N.Y. Sep. 6, 2010) (citing N.Y. Gen. Oblig. L. § 15-303).

[7] In *Tarantola v. Williams*, cited by the Trustee, a "standard form" general release – which are subject to heightened scrutiny, *see* Mot. at 12 n.9 – was at issue.  48 A.D.2d 552, 553 (2d Dep't 1975).  The court there also stressed that "subjective notions of parties to contracts do not determine the legal rights and duties created by a writing of the agreement."  *Id*. at 554.  In *In re Corp. Res. Servs.*, the court determined a settlement "in a separate case . . . in Illinois" did not release the claims at issue 'without any monetary consideration' after finding defendant was not a third-party beneficiary.  No. 15-12329, 2019 Bankr. LEXIS 3249, at *2, *20-22 (Bankr. S.D.N.Y. Oct. 10, 2019).  In *Toth*, the release was limited to "these consolidated actions" and the "underlying administrative proceedings" – in contrast to the wording of the Release here.  2023 U.S. Dist. LEXIS 2103, at *12-13.

the "Two Year Transfers") in connection with the 2018 partial settlement.  *See* Cioffi Ex. 8,

Alpha Prime Partial Settlement Agreement ¶ 1(a).  In his motion in support of the later 2022

settlement, the Trustee emphasized that it "furthers the interests of BLMIS customers" by adding

at least $11.467 million to the customer property fund via the Section 502(h) claim reduction.

Cioffi Ex. 7, Alpha Prime Rule 9019 Motion ¶ 21.  Alpha Prime also agreed to share the

proceeds from its lawsuits against certain HSBC entities, *see* Mot. at 6, one of which

contemplates damages of over ***$346 million***,[8] and the Trustee has stated that "shar[ing] in the

recovery of" these litigations could potentially "result in millions of dollars to the estate."  Alpha

Prime Rule 9019 Motion ¶ 21.  The settlement also entitles the Trustee to ongoing discovery

from Alpha Prime, which reduces Alpha Prime's shareholders' returns.  *See* Alpha Prime Reply

at 23, *Alpha Prime* Action, ECF No. 552 ("Every dollar spent on discovery, whether through

fees or expenses, reduces each shareholder's return.").

That the Trustee may now have "buyer's remorse" is no reason to disregard the plain

application of the Release.  *See 159 MP Corp. v. Redbridge Bedford, LLC*, 160 A.D.3d 176, 190

(2d Dep't 2018) ("The fact that with the benefit of hindsight, a party believes that it had agreed

to an unfavorable contractual term, does not provide courts with authority to rewrite the terms of

a contract or to extricate parties from poor bargains."); *In re Dynegy Inc.*, 486 B.R. 585, 590

(Bankr. S.D.N.Y. 2013) (Morris, J.) ("[A] court [should not] redraft a contract to accord with its

instinct for the dispensation of equity upon the facts of a given case.") (citation omitted); *United*

*States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate,

---

[8] *See* Supp. Attorney Decl. of Thomas J. Moloney in Supp. of HSBC Defs.' Mot. to Dismiss, Ex. 7 (Translation of Alpha Prime Summons, dated Oct. 20, 2009), at 7, *Alpha Prime* Action (May 8, 2015), ECF No. 387-2.

strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.").

### B. The Trustee's Arguments Relying on Extrinsic Evidence Should Be Rejected

The Release is clear and unambiguous – which the Trustee does not seriously dispute – and, thus, extrinsic evidence cannot be considered. *See Omni Quartz v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) (finding well-established that court may not admit extrinsic evidence to determine meaning of unambiguous contract); *Beaumont Capital Corp. v. Bear, Stearns & Co.*, 704 F. Supp. 362, 364 (S.D.N.Y. 1988) (same).[9]  Nor is "[e]xtrinsic and parol evidence . . . admissible to create an ambiguity in a written agreement [that] is complete and clear and unambiguous upon its face." *R/S Assocs. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29, 33 (2002) (citation and quotation marks omitted).  The integration clause also bars the introduction of any different agreement from what was agreed to in writing.  *See* Cioffi Ex. 4, Alpha Prime Settlement Agreement ¶ 16; *see VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 527, 531 (S.D.N.Y. 2013).  Further, that the Release already carves out express exceptions – *see* Release ¶ 7 (excepting certain claims carved out "[f]or the avoidance of doubt") – shows that the Release is "too clear and precise to admit [] evidence that the parties intended to exclude" claims against Natixis in respect of Sentry transfers.  *Oxford Comm. Corp.*, 12 N.Y.2d 362, 366 (1963). The carefully curated Release here is nothing like the releases in the cases the Trustee cites, in which courts more strictly construed releases containing "standardized, even ritualistic, language." *Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969); *see* Mot. at 12 n.9.[10]

---

[9] Contrary to the Trustee's naked assertion, *see* Opp. at 8 n.2, Natixis did not submit any materials in support of its Motion that would warrant conversion to summary judgment, as the Court "may also look to public records" on a motion to dismiss. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see* Mot. at 8-9.

[10] In addition, *Peterson v. Regina*'s statement that releases do not cover matters not desired or intended to be disposed of is inapplicable to an "integrated agreement reached after lawyer-guided negotiations and containing

In any event, the Trustee's extrinsic evidence does not alter the Release's plain language.

### i.  The Fischer Declaration Should be Disregarded

The Trustee submits a barebones declaration from "a director" of Alpha Prime stating

that the Trustee and Alpha Prime purportedly agree as to the Release's narrower scope, yet

providing no explanation as to why they used the Release's particular language.  *See* Opp. at 32

(citing Declaration of Peter Fischer, dated June 12, 2023).  As an initial matter, the Court cannot

properly consider this fact declaration on a motion to dismiss.[11]  Even if the declaration could be

considered at this stage, New York law is clear that, when interpreting a contract, the "primary

objective . . . is to give effect to the intent of the parties as revealed by the language of their

agreement," not statements submitted with the benefit of hindsight a year later.  *Chesapeake*

*Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 113-14 (2d Cir. 2014) (citation

omitted); *see also Rodriguez v. City of N.Y.*, No. 18-4805, 2021 U.S. Dist. LEXIS 222062, at *22

(S.D.N.Y. Nov. 16, 2021) ("A party's subjective understanding of the text does not control when

the text itself is unambiguous.") (citiation omitted).

For this reason, where, like here, an agreement is unambiguous, courts repeatedly decline

to consider declarations on the issue of intent.  *See, e.g.*, *Proyecfin de Venezuela, S.A. v. Banco*

*Indus. de Venezuela, S.A.*, 760 F.2d 390, 393-94 (2d Cir. 1985) ("Although the parties filed

affidavits in the district court on the issue of their intent, the language of the agreement is

---

provisions quite unlike the stereotyped verbiage found in the usual standard general release."  *Oxford Comm. Corp.*,
12 N.Y.2d at 366.  In *Golden Pac. Bancorp v. FDIC*, the court found the release was ambiguous because the at-issue
claim did not "aris[e] from" the decision of a government entity to close a bank, as required to fall within the
release's scope.  273 F.3d 509, 520 (2d Cir. 2001).

[11] *See, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006) (finding it is error for court to rely on factual
contention contained in declaration on motion to dismiss); *Energizer, LLC v. MTA Trading, Inc.*, No. 20-1583, 2021
U.S. Dist. LEXIS 113124, at *9 n.4 (E.D.N.Y. June 16, 2021) (declining to rely on declaration in deciding motion to
dismiss); *Power Up Lending Grp. Ltd. v. CD Int'l Enter., Inc.*, No. 17-5948, 2021 U.S. Dist. LEXIS 262674, at *3,
*6 (E.D.N.Y. May 13, 2021) (same); *Blue Tree Hotels*, 369 F.3d at 217 (courts are "generally limited" on motions to
dismiss to considering complaint, "public records," and documents incorporated into or attached to complaint).

unambiguous, as appellee concedes. Parol evidence need not be considered."); *Ananta Grp., Ltd. v. Moss Shamask, Ltd.*, 182 A.D.2d 499, 499 (1st Dep't 1992) ("The agreement being unambiguous and clear on its face, affidavits purporting to evidence the intention of the parties 'cannot contravene the express intent set forth in the written agreement.'") (citation omitted).[12] Moreover, a June 2023 declaration does not evidence that the parties manifested an intent – at the time they entered into the Release – that it would only cover claims related to Alpha Prime transfers. *See Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 24 (1988) ("[N]o manifestation of [plaintiff's] alleged [subjective] intent was made to anyone when the parties entered into the release. Uncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none.").

Nor are Alpha Prime and the Trustee able to freely modify the Release at this juncture. "[O]nce a third-party beneficiary accepts, adopts, or relies upon a contract, the contracting parties cannot modify that contract without the third-party beneficiary's consent." *Bild v. Konig*, No. 09-5576, 2011 U.S. Dist. LEXIS 44368, at *8-9 (E.D.N.Y. Apr. 25, 2011) (citation omitted); *see also Bild v. Weider*, 567 F. App'x 49, 52 (2d Cir. 2014); Restatement (Second) of Contracts §§ 311 (2), (3).[13] No specific formula is required to assent to or approve a third-party benefit. In *Greenslate v. Tenneco Oil Co.*, the court found a third-party beneficiary "clearly manifested its assent to the benefits conferred" by an indemnity provision when "in a letter . . . it asserted its rights to a defense and indemnification," and thus a subsequent change to the provision was

---

[12] *See also Jerry's Gen. Contracting Serv.*, 1987 U.S. Dist. LEXIS 7522, at *2, *5 ("'[A] court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract.'") (citation omitted); *cf. Bishop v. Children's Ctr. for Developmental Enrichment*, No. 08-766, 2011 U.S. Dist. LEXIS 130536, at *19-20 (S.D. Ohio Nov. 10, 2011) ("[E]ven if the parties to the contract do not believe that a breach occurred, that does not alter a third party beneficiary's rights [to] sue for breach.").

[13] *See also* Restatement (Second) of Contracts § 311 cmt. h. ("[T]he power of promisor and promisee to vary the promisor's duty to an intended beneficiary is terminated when the beneficiary manifests assent to the promise in a manner invited by the promisor or promise.").

"ineffective as to [the third party]."  623 F. Supp. 573, 576-77 (E.D. La. 1985).  In *Burns v. GMC, Pontiac Div.*, the court found that parties that executed "amended releases," three days after the filing of a summary judgment motion by a third-party beneficiary defendant, were barred "from modifying the benefit afforded to [d]efendant by the original releases."  950 F. Supp. 137, 139 (D. Md. 1996).  In so ruling, the court stated that the parties' ability to modify a promise terminates once a third-party beneficiary "brings suit on" such promise, and filing a summary judgment motion constituted "bring[ing] suit" on a release.  *Burns*, 950 F. Supp. at 139 (citations omitted).  Similarly, here, by filing the Motion, Natixis unequivocally assented to and relied upon the Release, terminating the Trustee's and Alpha Prime's ability to modify it.

In addition, despite what one director from Alpha Prime claims now, Alpha Prime's own words confirm that, at the time it settled, it sought finality for its current and former shareholders (including Natixis) regarding all claims "in any way related to Madoff or BLMIS."  Release ¶ 7. Prior to executing the Release, Alpha Prime represented that "in litigating these claims over the last ten years it is easy to forget that the true victims here are and continue to be the shareholders of Alpha Prime"; and it emphasized that "[e]ach of these shareholders has been waiting to receive some compensation for the money that BLMIS stole from them," and that "the shareholders are becoming more and more frustrated."[14]  And, in a separate affirmation, Alpha Prime's Chairman expressed that "Alpha Prime's intention is to complete the legal processes underway [with the Trustee and against HSBC], recover the funds that can be recovered, so that a final and complete accounting may be rendered ***and thereafter a single and final distribution***

---

[14] Reply of Alpha Prime in Further Supp. of Mot. for Judgment, at 23, *Alpha Prime* Action, ECF No. 552 (Bankr. S.D.N.Y. Sept. 7, 2019).

*to shareholders be made*," consistent with Alpha Prime's fiduciary duties to its shareholders.[15]

Thus, it is no surprise that Alpha Prime bartered to protect its current and former shareholders'

interests in the Release.[16]

### ii.   The Court Approved the Release as Written

As to what the Court "understood" about the Release, *see* Opp. at 34, the Alpha Prime

Rule 9019 Motion referred to the Release's specific language and did not mention any carve outs

for claims against Natixis.  *See* Cioffi Ex. 7, Alpha Prime Rule 9019 Motion at 6-7.  As such, the

Court approved this language when it entered the Alpha Prime Rule 9019 Order, the parties are

bound by it, and the only way to seek relief from this order is through a Rule 60(b) motion,

which became time-barred as of July 21, 2023.  *See* Fed. R. Civ. P. 60(c)(1) (providing that

motion for relief from order based on "mistake, inadvertence, surprise" must be brought within

one year of order); *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969) (finding parties are

generally bound by agreements made in court).  The Trustee has known that Natixis intended to

assert that the Release bars the claims here since early April 2023, *see* Cioffi Ex. 21, and he still

has not sought relief from the Alpha Prime Rule 9019 Order.  *See* Cioffi Ex. 21.  Separately,

based on the substantial consideration the Alpha Prime Settlement affords to the BLMIS estate,

*see supra* at 7-9, and the benefit of avoiding protracted litigation, the settlement as approved is in

fact fair, equitable and reasonable, and in the estate's interest.  *See* Opp. at 34.

*Consol. Edison* and Fed. R. Civ. P. 23 concern the unique circumstances of a class action

settlement and set a far higher bar for approving a settlement than Bankruptcy Rule 9019.

---

[15] Affirmation of Peter Fischer, Nov. 4, 2019, ¶ 15, *Access Advantage Master, Ltd. v. Alpha Prime Fund Ltd.*, Index No. 654350/2019, NYSCEF Doc. No. 8 (emphasis added).

[16] *Neuman v. Harmon* is distinguishable in that the release at issue was not "clear and unequivocal."  965 F. Supp. 503, 509 (S.D.N.Y. 1997).  *Eden Toys, Inc. v. Florelee Undergarment Co.* is also distinguishable, dealing with the issue whether "an informal grant of an exclusive license" can satisfy the statute of frauds through the later execution of a writing confirming the agreement.  697 F.2d 27, 36 (2d Cir. 1982).

*Compare* 332 F. Supp. 2d at 651 (explaining that "[c]ourt must analyze the evidence and circumstances before it independently and objectively to determine whether the settlement is in the best interests of the class," and "courts must take 'special care' when a class action settlement purports to release claims 'not asserted within [the] class action or not shared alike by all class members'") (internal citations omitted), *with In re Roman Catholic Diocese of Rockville Ctr.*, 647 B.R. 69, 74 (Bankr. S.D.N.Y. 2022) (noting on Rule 9019 motion, "'court's approval of the proposed settlement will be sustained on appeal if the settlement is found not to fall 'below the lowest point in the range of reasonableness'") (citation omitted).[17]

In addition, because of the position the Trustee took in his Rule 9019 motion regarding the Release, he is estopped from taking the contrary position he is taking now. *See* Mot. at 16.[18]

### iii.   The Trustee's Conduct Does Not Support His Interpretation

In the Release, the Trustee did not carve out claims related to funds other than Alpha Prime, an approach he took in several other settlements. *See* Mot. at 13-15.  Instead, the Trustee carved out only certain Alpha Prime fund-related claims from the Release.[19]  In fact, the Alpha Prime parties bargained for a broader release that is comparable to ones the Trustee agreed to in other actions.[20]  The existence of these releases refutes the Trustee's self-serving assertion that

---

[17] The Trustee cited *In re Ionosphere Clubs*, in which the court affirmed approval of the settlement under Rule 9019, noting "'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'"  156 B.R. 414, 427 (S.D.N.Y. 1993) (citation omitted).  In *In re Prudential Lines*, the court stated that "[t]he bankruptcy court is not required to conduct an independent investigation in determining whether a settlement is reasonable" and may "give weight to the informed opinion of the Trustee and counsel that the settlement is fair and equitable."  170 B.R. 222, 247 (S.D.N.Y. 1994).

[18] The Trustee implies that Natixis's interpretation of the Release may result in the release of Madoff claims against other Alpha Prime shareholders. *See* Opp. at 34.  This is irrelevant, and, in any event, the Trustee does not identify a single other current or former Alpha Prime shareholder against which he has claims.

[19] Specifically, the Release states: "For the avoidance of doubt, Alpha Prime is not released from the Six-Year Transfer Recovery Claim until either (i) Alpha Prime has paid to the Trustee the Six-Year Transfers or (ii) the Six-Year Transfers are deemed unrecoverable from Alpha Prime . . . ." Cioffi Ex. 4, Release ¶ 7.

[20] *See, e.g., Hadassah, et al.* Settlement Agreement and Release ¶ 2, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Feb.17, 2011), ECF No. 3856-2 (releasing transferees and "each of their . . . present and former . . . shareholders . . . from any and all past, present or future claims or causes of action . . . that are, have been, could have been, or might

"when settling an adversary proceeding, the Trustee releases claims against unnamed parties

only to the extent of the transfers at issue in that adversary proceeding."  Opp. at 36.

It is also irrelevant that the Trustee accrued costs in continuing to litigate claims against

Natixis after executing the Release.  *See Browning v. City of N.Y.*, No. 16-7470, 2018 U.S. Dist.

LEXIS 114653, at *5 (S.D.N.Y. July 9, 2018).  In fact, the Release specifically covers "asserted"

claims.  Cioffi Ex. 4, Release ¶ 7.  Moreover, the Trustee's ongoing litigation against Natixis

establishes that he was fully aware of the claims against Natixis when he entered into the

Release, supporting that such claims are included in the Release's scope.  *See* Mot. at 12-13.  In

stark contrast, in *In re Actrade*, the party seeking to enforce the release first learned of a potential

claim "in October, 2004" – after the settlement was signed – and delayed raising the issue of the

release until spring 2009.  424 B.R. at 75.[21]

### C.  Natixis is a Third-Party Beneficiary of the Alpha Prime Settlement Agreement

The Trustee accepts that Natixis "may have benefitted in some way from the Settlement,"

Opp. at 37 n.9, but he insists that Natixis is not a "third-party beneficiary of the Settlement *as to*

*the Natixis/Sentry Claims*."  *Id.* at 37 (emphasis added).  The Trustee cannot concede that

Natixis is a third-party beneficiary of the Release (as he must), yet draw an arbitrary line as to

---

in the future be, asserted by Trustee against Transferees based on, arising out of, or relating in any way to BLMIS, the SIPC Proceeding, the BLMIS estate, the BLMIS Accounts or the Avoidable Transfers"); *Union Bancaire Privée, et al.*, Settlement Agreement ¶ 7, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Dec. 6, 2010), ECF No. 3302-2 (releasing "all affiliates of UBP" and list of funds attached to settlement; release extended to "all actions . . . known or unknown . . . that are, have been, could have been or might in the future be asserted by the Trustee . . . .").

[21] In *W. Alton Jones Found. v. Chevron U.S.A.*, cited by the Trustee, the issue was whether the plaintiff was included under the definition of the plaintiff-class, and the defendant waited three and a half years and missed prior litigation opportunities to argue the release barred plaintiff's claim.  *See* 97 F.3d 29, 30-31 (2d Cir. 1996).  In *Peterson v. Regina*, the issue was whether a Section 1983 claim involving a different arrest and officer "could have been brought" in the settled action and resorting to extrinsic evidence was unnecessary because the release was unambiguous.  935 F. Supp. 2d 628, 636, 641 (S.D.N.Y. 2013).  In *Ocean Transport Line Inc. v. Am. Philippine Fiber Indus., Inc.*, an admiralty case, the court had to determine if discharge port "demurrage" was implied based on the context of the contract, the practice of the industry, and "well-established admiralty principles."  743 F.2d 85, 89, 91 (2d Cir. 1984).

where Natixis's benefits end.  Natixis indisputably is entitled to enforce the Release.  *See* Mot. at

10 n.7; *see also Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 527-28 (2d Cir. 2005) (noting

exceptions to contract clause foreclosing third-party rights "clearly created" third-party rights).[22]

### D.  Reformation of the Alpha Prime Settlement is Not Warranted

The party seeking to reform a release must establish a mutual mistake by clear and

convincing evidence.  *See Rodriguez*, 2021 U.S. Dist. LEXIS 222062, at *21.  "[T]here is a

heavy presumption that a deliberately prepared and executed written instrument manifest[s] the

true intention of the parties," and the "proponent of reformation must show in no uncertain

terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the

parties."  *ABA Consulting, LLC v. Liffey Van Lines, Inc.*, 67 A.D.3d 401, 403 (1st Dep't 2009)

(citations and quotation marks omitted).  "Reformation is not granted for the purpose of

alleviating a hard or oppressive bargain," *George Backer Mgmt. v. Acme Quilting Co.*, 46

N.Y.2d 211, 219 (1978), and sophistication of the parties is a factor courts consider.  *See Thor*

*680 Madison Ave. LLC v. Qatar Luxury Grp.*, No. 17-8528, 2020 U.S. Dist. LEXIS 92744, at

*45 (S.D.N.Y. May 27, 2020).

The Trustee baselessly argues that the settlement agreement should be reformed, and that

if the Court finds the agreement ambiguous, discovery should be taken on this issue.  *See* Opp. at

39.  But nothing in the agreement evidences a mutual mistake (nor does the Trustee identify

any).  To the contrary, sophisticated counsel negotiated the clearly worded Release, it was

approved by the Court, and it is accurately described in the Trustee's Rule 9019 motion.

---

[22] The Trustee's footnoted argument that Natixis could not be released under a "technical" reading of the Release is
off-base.  *See* Opp. at 38 n.10.  Under the Trustee's reading, the Release would apply only to claims against the
officers, directors, and shareholders of Alpha Prime Asset Management LTD, but not to those of Alpha Prime.  This
interpretation is implausible (and ignores the word "respective," which applies to the officers, directors, and
shareholders of both Alpha Prime Asset Management LTD and Alpha Prime).  Further, it is contradicted by his own
concession on the preceding page that Natixis is covered by the Release.  *See* Opp. at 37 n.9.

In any event, the Trustee's request is procedurally improper. To seek reformation, the

Trustee and Alpha Prime needed to have sought to set aside the Alpha Prime Rule 9019 Order by

moving under FRCP 60(b) by July 20, 2023 (*see supra* at 13), which they did not do. *See In re*

*Platinum Oil Props., LLC*, 465 B.R. 621, 650-51 (Bankr. D.N.M. 2011) (finding debtor "must

proceed under Rule 60" to obtain relief from order based on "claim that the written documents

did not conform to the intent and true understanding of the parties"); *cf. In re Wilmington Hosp.*

*LLC*, No. 01-19401, 2003 Bankr. LEXIS 404, at *19 (Bankr. E.D. Pa. Apr. 18, 2003) (noting

that, "at best, I could vacate my order approving the Stipulation" under Rule 60(b), but that

"independent basis for the affirmative relief" is still needed to reform the contract).[23]

## II.    NATIXIS IS NOT SUBJECT TO PERSONAL JURISDICTION

Contrary to the Trustee's argument, Natixis did not waive its personal jurisdiction

defense by not raising the defense in its 2011 motion to dismiss the Initial Complaint (which was

never decided and was mooted long ago). Only where "a defense or objection . . . was available

to the party" does its omission from an earlier Rule 12(b) motion constitute waiver. Fed. R. Civ.

P. 12(g)(2); *see Hawknet Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009)

("[P]arty cannot . . . waive[] objections or defenses which were not known to be available at the

time they could first have been made.") (citation omitted).

In 2011, Natixis was alleged to have had a subsidiary and/or affiliate in New York, *see*

Cioffi Ex. 3, Initial Compl. ¶ 31, and prior to the 2014 *Daimler* decision, courts asserted general

jurisdiction over foreign corporations based on the presence of corporate branches, subsidiaries,

or affiliates in the forum. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 138 (2d Cir. 2014).

---

[23] And it is doubtful that they would meet the strict standard under Rule 60(b). *See In re Asbestos Litig.*, 173 F.R.D. 87, 89 (S.D.N.Y. 1997) ("Rule 60(b) is 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'") (citation omitted).

After *Daimler*, aside from "an exceptional case," a corporation is only "at home" and thus subject to general jurisdiction in the company's place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014); *see Gucci Am.*, 768 F.3d at 135 (having domestic branch no longer sufficient to establish jurisdiction after *Daimler*). No such allegations are present in the Initial Complaint or Amended Complaint.

Natixis did not waive its personal jurisdiction defense, as it was unavailable when Natixis filed its first motion to dismiss. *See, e.g.*, *7 W. 57th St. Realty Co. v. CitiGroup, Inc.*, No. 13-981, 2015 U.S. Dist. LEXIS 44031, at *18-24 (S.D.N.Y. Mar. 31, 2015) (finding *Gucci* compelled holding that foreign banks with local branches in forum did not waive personal jurisdiction); *see also Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 15 (E.D.N.Y. 2016) (finding no waiver of personal jurisdiction defense where defendant did not raise it when it would have been futile, prior to *Daimler*); *In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, No. 11-2262, 2015 U.S. Dist. LEXIS 107225, at *185 (S.D.N.Y. Aug. 4, 2015). In addition, after *Daimler*, Natixis repeatedly expressly reserved the right to contest jurisdiction.[24]

And, here, personal jurisdiction does not exist over Natixis, as none of the alleged "contacts" the Trustee points to – whether considered together or separately – suffice to subject Natixis to specific jurisdiction, and many do not even relate to the Trustee's claims to recover the Subsequent Transfers. *See* Opp. at 10-16. Mere knowledge that Sentry would invest in BLMIS in New York is insufficient to support personal jurisdiction over Natixis. *See* Mot. at 18-19. Although the Trustee attempts to paint the creation of the structured notes program as a "close"

---

[24] *See, e.g.*, Stipulation Extending Time at 2 (Jan. 27, 2014), ECF No. 60; Stipulation and Order at 2 (Jan. 10, 2017), ECF No. 124; Stay Stipulation and Order at 6 (July 1, 2020), ECF No. 185; Stipulation and Order ¶ 7 (Jan. 10, 2023), ECF No. 192. In any event, there is no waiver because Natixis's first motion to dismiss was moot. *C.f.*, *Emekekwue v. Offor*, No. 11-01747, 2012 U.S. Dist. LEXIS 152804, at *11 (M.D. Pa. Oct. 24, 2012) (considering amended motion to dismiss defendant's "first defensive move for legal purposes" because initial motion was moot).

business relationship and a "joint" effort with FGG, *see* Opp. at 12, these allegations are non-specific and conclusory. Ample case law makes clear that incidental use of a U.S. bank account to facilitate U.S. dollar-denominated payments to settle foreign securities transactions does not give rise to personal jurisdiction. *See* Mot. at 21. As to the creation of Tensyr – an Island of Jersey company – the Trustee glosses over the requirement that he must establish the Court's jurisdiction over Natixis for *each transfer* he seeks to recover. *See* Mot. at 18. His general statement that the alleged contacts concerning Tensyr related to Natixis's "overall business plan" to profit from Sentry and BLMIS, *see* Opp. at 15, does not come close to being jurisdictionally sufficient – or even relevant – with respect to the Subsequent Transfers. *See* Mot. at 21-23.[25]

## III.   DISMISSAL IS APPROPRIATE FOR ADDITIONAL REASONS

*First*, the Trustee's attempt to incorporate the Fairfield Second Amended Complaint does not comply with Rules 8(a) and 10(c). *See* Mot. at 24-25. The Court's ability to take judicial notice of such pleading, *see* Opp. at 18, does not abrogate pleading requirements and applicable case law.

*Second*, the Trustee fails to plausibly allege that Natixis received BLMIS customer property. *See* Mot. at 25-29. Importantly, based on the Trustee's own pleadings, *it is impossible* for at least $101 million of the Subsequent Transfers to have been comprised of BLMIS funds. *See id.* at 28-29. The Trustee does not seriously dispute this, and instead, as with his response to the Alpha Prime Release, he seeks to avoid the clear implications of his own language and offers up as a last resort the supposed need for discovery. *See* Opp. at 20-21.

---

[25] Given that the Trustee's alleged "contacts" are weak, due process requires a "stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper," *Porina v. Marward Shipping Co.*, No. 05-5621, 2006 U.S. Dist. LEXIS 60535, at *17 (S.D.N.Y. Aug. 24, 2006), which the Trustee has not made here.

*Third*, the Trustee's allegations establish Natixis's good faith defense. *See* Mot. at 30-35. The Trustee does not address that Natixis knowingly exposed its own money to Sentry, nor does he address his own allegations that Natixis conducted reasonable due diligence (and still did not uncover the fraud). *See id*. at 32-34. Instead, he asserts that "the SEC's failure to detect Madoff's fraud . . . is not dispositive as to Natixis's good faith." Opp. at 22. But it is implausible that Natixis, an indirect, foreign investor with no visibility into Madoff, would have discovered the fraud if the SEC was not able to.[26] The Trustee also ignores the Court's decision on a motion to dismiss that a defendant provided value in connection with highly comparable transactions. *See* Mot. at 30 (citing *ABN Amro Bank*).

*Last*, the Trustee does not challenge that Natixis satisfies the elements of Section 546(e). Rather, he argues that the "knowledge exception" applies because Sentry allegedly knew about Madoff's scheme, *see* Opp. at 23-24, which the Court should reject. *See* Mot. at 38-39. The Trustee also cannot rely on the "Ponzi scheme presumption." Mot. at 36-38. As to "badges of fraud," Opp. at 25, the Trustee merely alleges the presence of certain "red flags," which is insufficient to establish fraudulent intent. Mot. at 33.

## CONCLUSION

For the foregoing reasons, Natixis respectfully requests that the Court dismiss the Amended Complaint as against Natixis with prejudice.

---

[26] Unlike here, the complaint in *Picard v. Avellino* included allegations about the specific defendants' knowledge of Madoff's fraud making them "[u]nlike the vast majority of creditors." 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016).

Dated:  July 31, 2023
   New York, New York     **DAVIS+GILBERT LLP**

             By: */s/ Joseph Cioffi*
                Joseph Cioffi
                H. Seiji Newman
                Bruce M. Ginsberg
                Adam M. Levy
                Christine DeVito
                1675 Broadway
                New York, NY 10019
                T: (212) 468-4800
                jcioffi@dglaw.com
                bginsberg@dglaw.com
                hsnewman@dglaw.com
                alevy@dglaw.com
                cdevito@dglaw.com

                *Attorneys for Defendant Natixis S.A.*