**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
timothy.harkness@freshfields.com
david.livshiz@freshfields.com
christian.vandergeest@freshfields.com
adam.betts@freshfields.com

*Attorneys for Tensyr Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05353 (CGM) |
| Plaintiff, | |
| v. | |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW OF DEFENDANT TENSYR LIMITED**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    This Court Lacks Personal Jurisdiction Over Tensyr. .......................................... 3

        A.    The Trustee Misstates the Applicable Legal Standard. ............................ 3

        B.    The Complaint Does Not Plead Minimum Contacts Relating to
Tensyr's Redemption Payments. .............................................................. 4

        C.    Natixis' and FGG's Alleged Contacts Do Not Support Jurisdiction. ........ 8

        D.    Exercising Jurisdiction Over Tensyr Is Not Reasonable. ....................... 11

        E.    Jurisdictional Discovery Is Inappropriate. .............................................. 12

    II.    The Initial Transfers Are Protected By Section 546(e). ...................................... 12

        A.    Section 546(e) Is Available to Tensyr as a Subsequent Transferee. ........ 13

        B.    The Sentry-Tensyr Subscription Agreement Creates an
Independent Basis for the Application of Section 546(e). ...................... 13

        C.    Section 546(e) Does Not Contain a Knowledge Exception and Any
Such Exception Would Not Bar Application of Section 546(e)
Here. ........................................................................................................ 15

        D.    The Initial Transfers Are Not Avoidable Under Section
548(a)(1)(A). ........................................................................................... 16

    III.    The Complaint Establishes that Tensyr Is Entitled to the Section 550(b)
Good Faith Defense. ........................................................................................... 17

    IV.    The Trustee Fails to Plead Receipt of Customer Property................................... 18

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...................................................................................................19, 20

Bahrain Islamic Bank, BisB. v. Arcapita Bank B.S.C.(C) (In re Arcapita Bank
    B.S.C.(C)),
    640 B.R. 604 (S.D.N.Y. 2022)...............................................................................6

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...............................................................................................11, 19

Berdeaux v. OneCoin Ltd.,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)...................................................................6

In re Bernard L. Madoff Inv. Sec. LLC,
    976 F.3d 184 (2d Cir. 2020)..................................................................................17

In re Bernard L. Madoff Inv. Sec. LLC,
    No. 23-CV-0294 (VEC), 2023 WL 3317926 (S.D.N.Y. May 9, 2023)..................16

Best Van Lines, Inc. v. Walker,
    490 F.3d 239 (2d Cir. 2007)..................................................................................12

Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC,
    No. 20-cv-7351, 2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021)..............................3

Charles Schwab Corp. v. Bank of Am. Corp.,
    883 F.3d 68 (2d Cir. 2018)....................................................................................10

Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.,
    722 F.3d 81 (2d Cir. 2013)....................................................................................3

Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,
    651 F.3d 329 (2d Cir. 2011)..................................................................................15

Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),
    No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)......................5

Feldman v. Silverleaf Resorts, Inc.,
    No. 98-CV-4566, 2000 WL 35542530 (E.D.N.Y. Jan. 31, 2000)..........................7

Goldberger Co., LLC v. Uneeda Doll Co.,
    No. 16-cv-4630, 2017 WL 3098110 (S.D.N.Y. July 21, 2017).............................20

| CASES | PAGE(S) |
|---|---|

Hau Yin To v. HSBC Holdings PLC,
   No. 15-cv-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)....................................6

Hill v. HSBC Bank PLC,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)......................................................................6

Jazini v. Nissan Motor Co., Ltd.,
   148 F.3d 181 (2d Cir. 1998).................................................................................5, 9

Jewell v. Music Lifeboat,
   254 F. Supp. 3d 410 (E.D.N.Y. 2017) ...................................................................10

Jonas v. Est. of Leven,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015).....................................................................3

Kreutter v. McFadden Oil Corp.,
   522 N.E.2d 40 (1988)............................................................................................10

L. v. Siegel,
   571 U.S. 415 (2014)...............................................................................................15

LaMonica v. CEVA Group PLC (In re CIL Ltd.),
   582 B.R. 46 (Bankr. S.D.N.Y. 2018).....................................................................11

In re Lehman Bros. Holdings Inc.,
   469 B.R. 415 (Bankr. S.D.N.Y. 2012) ...................................................................15

Licci v. Lebanese Canadian Bank, SAL,
   984 N.E.2d 893 (N.Y. 2012)...................................................................................7

Licci ex rel. Licci Canadian Bank SAL,
   673 F.3d 50 (2d Cir. 2012)......................................................................................6

MacDermid, Inc. v. Deiter,
   702 F.3d 725 (2d Cir. 2013)....................................................................................3

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
   84 F.3d 560 (2d Cir. 1996)......................................................................................5

MTS Logistics, Inc. v. Innovative Commodities Grp. LLC,
   442 F. Supp. 3d 738 (S.D.N.Y. 2020).....................................................................3

Pani v. Empire Blue Cross Blue Shield,
   152 F.3d 67 (2d Cir. 1998).....................................................................................14

CASES                                                                                    PAGE(S)

Perry v. NYSARC, Inc.,
    424 F. App'x 23 (2d Cir. 2011) ..........................................................................10

Picard v. ABN Amro Bank N.A. (In re Bernard L. Madoff Inv. Sec. LLC),
    No. AP 08-01789, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ..............................17

Picard v. ABN AMRO (Ir.),
    505 B.R. 135 (S.D.N.Y. 2013) ............................................................................15

Picard v. Banca Carige S.P.A.,
    No. 11-02570, 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ......................................8

Picard v. BNP Paribas S.A. (In re BLMIS),
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..............................................................7, 20

Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC),
    12 F.4th 171 (2d Cir. 2021) ....................................................................13, 17, 18

Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC),
    No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ........................13

Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC),
    773 F.3d 411 (2d Cir. 2014)...............................................................12, 14, 15

Picard v. Multi-Strategy Fund Ltd.,
    No. 22-cv-06502, 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)...............................13, 14, 16

Picard v. Multi-Strategy Sec. Fund Ltd.,
    641 B.R. 78 (Bankr. S.D.N.Y 2022)....................................................................5, 13, 19

Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),
    542 B.R. 100 (Bankr. S.D.N.Y. 2015).................................................................18

Precision Wellness LLC v. Demetech Corp.,
    No. 21-cv-01244, 2022 WL 970773 (E.D.N.Y. Mar. 30, 2022)...............................3

Rees v. Mosaic Technologies, Inc.,
    742 F.2d 765 (3d Cir. 1984)..............................................................................11

Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. 2013) ...............................15, 16

Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),
    403 F.3d 43 (2d Cir. 2005)................................................................................17

U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,
    916 F.3d 143 (2d Cir. 2019)..............................................................................4, 5

CASES                                                                                          PAGE(S)

In re Verestar, Inc.,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ...................................................................16

Wafios Mach. Corp. v. Nucoil Indus. Co.,
    No. 03 CIV.9865, 2004 WL 1627168 (S.D.N.Y. July 21, 2004) ...........................................12

Walden v. Fiore,
    571 U.S. 277 (2014).........................................................................................4, 9

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998)..............................................................................9

Zuckerman v. Metro. Museum of Art,
    928 F.3d 186 (2d Cir. 2019)............................................................................17

STATUTES

11 U.S.C. § 546(e) .......................................................................................... *passim*

11 U.S.C. § 546(g) ...........................................................................................15

11 U.S.C. § 548(a) .......................................................................................13, 16

11 U.S.C. § 550...........................................................................................17, 18

Defendant Tensyr Limited ("Tensyr") respectfully submits this reply memorandum of law in further support of its Motion to Dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

The Trustee's Opposition is an exercise in avoidance: it refuses to respond to Tensyr's key arguments and ignores Tensyr's sworn declarations rebutting the Trustee's jurisdictional allegations. Unable to defend the Complaint based on the allegations he pleaded, the Trustee adds new "facts"—found nowhere in the Complaint—to buttress his deficient allegations. This he cannot do, and this Court should dismiss the Complaint.

*First*, the Trustee has failed to make a *prima facie* showing that his claims to claw back Tensyr's alleged transfers arise out of minimum contacts that Tensyr *itself* created with the United States. This failure is not surprising, because as the Opening Brief and supporting declarations and exhibits establish: (i) the Trustee's own allegations demonstrate the implausibility of his argument that Tensyr received BLMIS customer property originating from New York; and (ii) Tensyr has never, itself, entered New York or contracted with any New York entity, such as FGG. The Trustee does not try to contest these facts, and instead argues that this Court should rely solely on the Trustee's *refuted* jurisdictional allegations to deny Tensyr's motion. This tactic has no basis in law. Moreover, the Trustee's disregard for the facts does not end there: the Opposition arguments rely on (incorrect and unsupported) factual statements that appear nowhere in the Complaint—for example, that "Tensyr had numerous meetings in New York," Opp'n at 18, see also id. at 40. To be clear, Tensyr never had any meetings in New York; the Complaint does not allege that it did; and the Trustee fails to provide any evidence or

---

[1]    Capitalized terms not defined herein have the definitions used in Tensyr's opening memorandum of law, Dkt. No. 204 ("Opening Brief" or "Opening Br."). References to "Opposition" or "Opp'n" refer to the Trustee's opposition memorandum, Dkt. 211.

detailed allegations to support this claim.    These new statements are, at best, an attempt to rehabilitate the Trustee's refuted jurisdictional allegations with further unsupported claims, and this Court should reject these attempts to manufacture jurisdictional contacts where none exist.

*Second*, the Opposition does not substantively respond to Tensyr's key argument that the Trustee's pleaded facts establish Tensyr's Section 546(e) defense.    Courts regularly grant Section 546(e) dismissal motions and this Court should do so here, where the Trustee alleges that the Initial Transfers were made to Fairfield Sentry "in connection with" Tensyr's Subscription Agreement (i.e., a securities contract), and the Trustee has not pleaded fraudulent intent.

*Third*, the Trustee admits that Tensyr's motion should be granted if its Section 550(b) good faith defense is set forth on the face of the Complaint.    In response to Tensyr's point that the Complaint lacks *any* allegation that Tensyr knew or should have known of Madoff's Ponzi scheme, the Trustee asks for discovery, effectively conceding that he is on a fishing expedition.    This Court should not endorse this strategy against Tensyr, a small foreign investor that lost over *ninety percent* of its investment in Fairfield Sentry.

*Fourth*, the Trustee's own exhibits establish the implausibility of the Trustee's allegations that Tensyr received BLMIS customer property, for example because the Trustee seeks to recover billions more in subsequent transfers than Fairfield Sentry ever allegedly received from the Initial Transfers, and because Tensyr received some alleged subsequent transfers *more than a year* after Fairfield Sentry received any transfer from BLMIS.    Tensyr is not, as the Trustee suggests, seeking a "dollar for dollar" accounting.    But, the law is clear that Tensyr cannot be dragged through discovery and summary judgment where, as here, the Trustee has failed to plausibly plead that the transfers Tensyr received were actually BLMIS property. For these reasons and others discussed below, this Court should dismiss Tensyr from this action.

## ARGUMENT

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER TENSYR.

### A.    The Trustee Misstates the Applicable Legal Standard.

As explained in Tensyr's Opening Brief, on a motion to dismiss for lack of personal jurisdiction, "the district court may consider materials outside the pleadings, including affidavits and other written materials." Jonas v. Est. of Leven, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015); Opening Br. at 4 n.1. The Trustee nonetheless ignores the Chislett and Vandergeest Declarations and accompanying exhibits, arguing that he can avoid dismissal by relying on his refuted allegations. See Opp'n at 6, 16–17 (citing Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86–87 (2d Cir. 2013)). But this is not the law: this Court need only accept jurisdictional allegations as true where, unlike here, "they are uncontroverted by the defendant's affidavits." MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2013). Dorchester, on which the Trustee relies, stands only for the proposition that *contested evidence* should not be resolved without an evidentiary hearing. 722 F.3d at 86 (evaluating competing evidentiary submissions). Here, the Trustee has submitted no evidence of his own and does not seriously contest the evidence established by Tensyr's declarations and exhibits, making an evidentiary hearing unnecessary. See Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC, No. 20-cv-7351, 2021 WL 3423253, at *3 (S.D.N.Y. Aug. 5, 2021) (citing Dorchester and refusing to credit jurisdictional allegations refuted by defendant's affidavit); MTS Logistics, Inc. v. Innovative Commodities Grp. LLC, 442 F. Supp. 3d 738, 742 n.1 (S.D.N.Y. 2020) (citing Dorchester and relying on sworn declaration and exhibits to grant motion to dismiss); Precision Wellness LLC v. Demetech Corp., No. 21-cv-01244, 2022 WL 970773, at *3 (E.D.N.Y. Mar. 30, 2022) ("allegations in the complaint are presumed true *only* to the extent they are uncontroverted by the defendant's affidavits." (emphasis added)).

3

## B.    The Complaint Does Not Plead Minimum Contacts Relating to Tensyr's Redemption Payments.

To make a *prima facie* showing that jurisdiction exists, the Trustee must show suit-related minimum contacts that Tensyr itself created with the United States.  See Walden v. Fiore, 571 U.S. 277, 284 (2014); U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 150 (2d Cir. 2019).  The Trustee admits that his jurisdictional argument boils down to three allegations: that Tensyr (i) invested in Fairfield Sentry knowing that Sentry would invest in BLMIS; (ii) entered into an agreement—that does not govern the dispute here—with Fairfield Sentry with New York-law provisions; and (iii) sent and received transfers from Fairfield Sentry using New York correspondent accounts.  Opp'n at 8.  The Opening Brief explained that none of this satisfies the Trustee's burden of establishing dispute-related minimum contacts sufficient for this Court to exercise jurisdiction over Tensyr.  Opening Br. at 12–13.  This is especially true where, as here, the Trustee cannot even plausibly allege that the alleged transfers Tensyr received from Sentry that the Trustee seeks to claw back originated in New York.  Id.  That is fatal to the Trustee's claims and the Opposition does nothing to change this conclusion.

### 1.    Tensyr's Alleged "Knowing" Investment into BVI-based Fairfield Sentry Does Not Support Jurisdiction

The exercise of personal jurisdiction must be determined by the defendant's own conduct, not by the conduct of other parties or the defendant's "knowledge of [a third-party's] strong forum connections."  Walden, 571 U.S. at 284, 289.  The Opposition spends five pages arguing that Tensyr's alleged knowledge of Fairfield Sentry's investments in BLMIS constitutes a jurisdictional contact with New York.  Opp'n at 8–12.  This is incorrect, and the Second Circuit has never endorsed this theory, for good reason: the "defendant *itself* must create those contacts . . . a defendant's relationship with a third party [i.e., Fairfield Sentry], standing alone, is an

4

insufficient basis for jurisdiction."[2]  U.S. Bank, 916 F.3d at 150.  As the Trustee appears to concede, his theory that Tensyr's knowledge is relevant only applies if he also "alleges claims that arise from Tensyr's contacts made within the forum."  Opp'n at 12.  But the Trustee alleges no forum contacts by Tensyr, which invested in Sentry, a BVI fund with a Bermudian investment manager.  See Chislett Decl. Ex. E (Subscription Agreement) ¶¶ 2, 4; Opening Br. at 10–18.

### 2.    The Subscription Agreement Is Not a Jurisdictional Contact.

The Trustee does not dispute Tensyr's point that the Subscription Agreement does not govern this dispute, see Opp'n at 10, nor could it: the District Court has already rejected this theory, see, e.g., Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.), No. 10-03496, 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018) (suit to recover a redemption payment is not "with respect to [the Subscription] Agreement"); Opening Br. at 14. The Trustee's only response is to point to cases finding that a similar subscription agreement is relevant to whether jurisdiction is *reasonable.*  Opp'n at 10 (citing, e.g., Picard v. Multi-Strategy Sec. Fund Ltd., 641 B.R. 78, 88 n.3 (Bankr. S.D.N.Y 2022) ("Multi-Strategy I")).  This argument conflates two distinct prongs of the jurisdictional test: before examining whether jurisdiction is reasonable, "[t]he court must first determine whether the defendant has sufficient contacts with the forum state."  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567–68 (2d Cir. 1996).  The Subscription Agreement is not a jurisdictional contact, and the Trustee's argument that it makes jurisdiction "reasonable" puts the cart before the horse.  Opp'n at 10.

### 3.    Any Use of Correspondent Accounts Does Not Create Jurisdiction.

The Trustee's only remaining alleged jurisdictional contact is the use of U.S. correspondent bank accounts.  As Tensyr explained in its Opening Brief, at 11–12, use of a

___
[2]    The Second Circuit has rejected the similar argument that a foreign company becomes subject to jurisdiction in the United States by investing in a company that engages in activities here.  See Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998).

correspondent account can only satisfy constitutional due process where use of the account was "integral" and "directed . . . to facilitate the Ponzi scheme." Hau Yin To v. HSBC Holdings PLC, No. 15-cv-3590, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017), aff'd, 700 F. App'x 66 (2d Cir. 2017); see also Licci ex rel. Licci Canadian Bank SAL, 673 F.3d 50, 65 n.14 (2d Cir. 2012) (use of correspondent account must be the "very root" of the action). Courts have refused to exercise jurisdiction where, as here, "[t]he only adequately alleged connection between any of the [defendant's] activities and New York is that [the defendant] knew that a particular wire transfer would move through a New York correspondent bank account" because "[i]n no way does the use of a correspondent account in New York constitute the 'original event.'" Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 406 (S.D.N.Y. 2021).

Tensyr's declarations and exhibits establish that the transfers were made between BVI-incorporated Fairfield Sentry's account in Brussels and the Dublin branch of Citco Bank Nederland N.V., see Chislett Decl. Ex. F (Bank Statement); id. Ex. E (Subscription Agreement) ¶¶ 3, 30(g), making the use of correspondent accounts "incidental consequences of fulfilling a foreign contract [the Subscription Agreement]," that are "insufficient to 'project' the [defendant] into New York." Hill v. HSBC Bank PLC, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016).

In response, the Trustee argues that Tensyr's use was "purposeful," rather than "incidental." Opp'n at 13–14. But the cases the Trustee cites prove Tensyr's point. For example, the Trustee analogizes to Bahrain Islamic Bank, BisB. v. Arcapita Bank B.S.C.(C) (In re Arcapita Bank B.S.C.(C)), where the *defendants* designed the structure of the agreement calling for use of correspondent accounts. 640 B.R. 604 (S.D.N.Y. 2022) (on appeal, No. 22-1222 (2d Cir. Jun. 3, 2022)). Here, the opposite is true: Fairfield Sentry—and not Tensyr—set the terms of the Subscription Agreements, as the Trustee admits. See Opp'n at 14. Similarly,

6

the Trustee cites <u>Licci</u>, but there, the court confirmed that courts should think twice before using correspondent accounts to establish jurisdiction, "especially given the widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." <u>Licci v. Lebanese Canadian Bank, SAL</u>, 984 N.E.2d 893, 899–900 (N.Y. 2012); <u>see also</u> <u>Feldman v. Silverleaf Resorts, Inc.</u>, No. 98-CV-4566, 2000 WL 35542530, at \*4 (E.D.N.Y. Jan. 31, 2000) (if "participation in New York's international financial markets alone could constitute 'doing business' . . . personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns"). Here, where a correspondent account merely effected transfers between Dublin and Brussels on behalf of BVI-based Fairfield Sentry and Jersey-based Tensyr, it cannot suffice to establish jurisdiction over Tensyr in New York.

### 4. The Trustee Has Not Alleged That Tensyr's Alleged Subsequent Transfers Originated From BLMIS.

Finally, in its Opening Brief and supporting declarations and exhibits, Tensyr established the implausibility of the Trustee's allegation that Tensyr's redemption payments contained money originating from BLMIS in New York. Opening Br. at 12–13, 31–35. The Trustee makes *no effort* to rebut this basic and critical point,[3] which unravels any inference that the Trustee has made a "*prima facie* showing with respect to [each] subsequent transfer" that those transfers had a "substantial connection" to New York (including by severing any link between Tensyr's purported "knowing" investment in New York and the transfers it received from Sentry). <u>Picard v. BNP Paribas S.A. (In re BLMIS)</u>, 594 B.R. 167, 189–90 (Bankr.

---

[3]    The Trustee merely states that Tensyr's declarations and its related "exhibits do not establish [the] fact" that Tensyr's transfers were not comprised of BLMIS property. Opp'n at 33. This mere conclusory denial of the facts established by Tensyr's sworn declarations and the Trustee's own pleadings and exhibits is insufficient to support a *prima facie* showing of jurisdiction. <u>See</u> <u>supra</u> Section I.A.

S.D.N.Y. 2018). The Trustee argues only that by alleging that Tensyr invested with BLMIS through Sentry, he "has met his burden of alleging jurisdiction as to each subsequent transfer." Opp'n at 10. But in <u>Picard v. Banca Carige S.P.A</u>, the only case the Trustee cites, the Court *assumed* that the transfers originated from BLMIS. No. 11-02570, 2022 WL 2387522, at *4 (Bankr. S.D.N.Y. June 30, 2022) ("[T]he Trustee has met his burden of alleging jurisdiction as to each subsequent transfer *that originated with BLMIS*." (emphasis added)). Here, unlike in any of this Court's prior decisions in this case, Tensyr has established the implausibility of the Trustee's jurisdictional allegation that its transfers originated from New York, and so dismissal is required.

### C.    Natixis' and FGG's Alleged Contacts Do Not Support Jurisdiction.

Knowing his jurisdictional allegations regarding Tensyr fall short, the Trustee seeks to impute jurisdictional contacts allegedly created by Natixis and FGG. The Opening Brief explained why this effort fails, at 15–18, and the Trustee's arguments do not tip the scale.

#### 1.    The Trustee Cannot Add New Allegations Regarding FGG in his Opposition Brief.

Tensyr's Opening Brief, declarations, and exhibits established that Tensyr contracted with FGL—not FGG—with regard to its Sentry investment, <u>see</u> Chislett Decl. Ex. C (Information Agency Agreement with FGL); <u>id.</u> Ex. D (Leverage Management Agreement with FGL); <u>id.</u> ¶ 7 (declaring that "Tensyr has never entered into any contract with an entity called 'Fairfield Greenwich Group'"), and that FGL was barred from delegating its contractual duties to another entity, such as FGG, <u>see</u> Chislett Decl. Ex. D ¶ 3.4. Since FGL is a Cayman-Islands company, that relationship creates no contacts with New York. Opening Br. at 16.

The Opposition responds by impermissibly attempting to add new allegations, stating for the first time that FGL's directors "were in New York" when they signed certain documents, Opp'n at 17 (citing Compl. ¶ 26), but it is black letter law that a complaint may not

8

be amended in an opposition brief.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting allegations "mentioned . . . for the first time in [an] opposition").  Even if the Trustee could add new allegations in his Opposition (he cannot), the Trustee nowhere alleges that Tensyr was aware of, or condoned, this new fact.  To the contrary, Tensyr's agreements with FGL state that FGL's principal office is in the Cayman Islands.  See Chislett Decl. Ex. C at 1; id. Ex. D at 1.

Next, the Trustee adds an allegation that "FGL was composed of the same cast of characters" as FGG.[4]  Opp'n at 17.  But Tensyr contracted exclusively with FGL and explicitly barred FGL from delegating responsibility for the acts the Trustee describes in the Complaint to any other entity.  See, e.g., Chislett Decl. Ex. D ¶ 4.1 (FGL shall "effect redemptions of [Sentry] Shares"); id. ¶ 3.4 ("[FGL] shall not delegate . . . except with the prior written approval [of Tensyr].").  The Trustee's new allegation that FGL and FGG shared personnel is irrelevant because, as far as Tensyr knew, they were acting in their capacity as FGL employees when serving Tensyr.  See Chislett Decl. ¶ 7.  Moreover, the claim that FGL's principals had other roles in affiliate entities in no way alters the fact that Tensyr's contacts and contracts were with FGL, not FGG, and it is only contacts that Tensyr *itself* creates that matter.  Walden, 571 U.S. at 284 (jurisdiction "must arise out of contacts that the 'defendant *himself*' creates").  An alternative ruling would expand jurisdiction far beyond what the Constitution permits, id., and would impermissibly undercut the corporate form, Jazini, 148 F.3d at 184 ("inappropriate . . . to deviate" from "strict standards" barring imputation of jurisdiction between corporate affiliates).

Finally, the Trustee falls back on his argument that, despite Tensyr's sworn

---

[4]    The Trustee relies on *pleadings* in *a different case* to argue FGG did, in fact, exist. Opp'n at 16–17 (citing the *In re Fairfield Sentry Ltd.* Second Amended Complaint). Even if true, this does nothing to show that Tensyr had any contacts with FGG.

affidavits and exhibits rebutting its allegations regarding FGL, this Court should close its eyes and "assume the truth" of these rebutted allegations. Opp'n at 17. As shown above, the law does not endorse such an approach. See Section I.A.

### 2. Natixis' and FGG's Alleged Contacts Cannot Be Imputed to Tensyr.

The Opening Brief explained that the remaining allegations of Natixis' and FGG's contacts are from before Tensyr's incorporation, and so cannot be imputed to Tensyr under an agency theory. See Opening Br. at 17–18. The Trustee's responses are unconvincing.

*First*, the Trustee argues that he need not establish a formal agency relationship to impute Natixis' and FGG's contacts with New York, but even so, the Trustee's allegations fail the agency test he cites. The Trustee claims that he need only show that FGG and Natixis acted for the benefit of the principal and with the principal's knowledge and consent. See Opp'n at 14–15 (citing Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44 (1988)). But this mis-cites Kreutter, which explicitly requires that the principal also exercised *control* over the alleged agent. 522 N.E.2d at 44; see also Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 85 (2d Cir. 2018) (requiring control by the principal). And satisfaction of this "control" prong is foreclosed by the Trustee's own allegations that *Tensyr* was "create[d] and operat[ed]" by Natixis and FGG (not the other way around), Compl. ¶ 3; see also id. ¶ 22; Opp'n at 4, and by the fact that all the alleged actions by Natixis and FGG took place *before* Tensyr existed, see Opening Br. at 17–18. Simply put, entity A cannot control entity B if entity A does not yet exist. The Trustee's arguments are thus "contradicted by the [C]omplaint" and so should be rejected. See Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011).

*Second*, the Trustee tries to fill this "control" gap by arguing that a company may "ratify" an agent's pre-incorporation activities. Opp'n at 17–18. What ratification entails, he does not explain, but Jewell v. Music Lifeboat (the only case from this circuit that the Trustee

10

cites) *refused* to find ratification on facts much stronger than those present here. 254 F. Supp. 3d

410, 419 (E.D.N.Y. 2017). In <u>Jewel</u>, a musician and the founders of a music platform negotiated

a contract for the hosting of the musician's music. Those negotiations took place in New York

before the music platform's incorporation, and the court held that the platform *did not ratify*

those forum contacts, despite later hosting the music for many months in performance of the

contract. <u>Id.</u> at 419. In other words, ratification requires a defendant to later ratify the *specific*

*activities* that occurred in the forum, and mere performance of a contract negotiated in the forum

by founders does not suffice. <u>Id.</u> Here, the Trustee does not even allege such a contract, Opp'n at

18.[5] This Court should decline to impute Natixis' and FGG's contacts to Tensyr.

### D. Exercising Jurisdiction Over Tensyr Is Not Reasonable.

The Opening Brief explained that, given Tensyr's nonexistent (or at most,

insufficient) contacts with the United States, dragging Tensyr into U.S. courts would be

unreasonable—particularly when the Trustee has demonstrated he is willing to litigate abroad,

including in England, Luxembourg, Israel, and the British Virgin Islands. Opening Br. at 18–19.

The Trustee offers two responses, neither of which is compelling. First, the Trustee suggests that

Tensyr "is not burdened by this litigation" because it has participated in this case for ten years.

Opp'n at 19. But the fact that Tensyr chose to appear to defend itself, rather than default, says

nothing about the burden of that defense—and Tensyr has never yet been subject to the

"inevitably costly and protracted discovery phase." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

559 (2007). Second, the Trustee incorrectly argues that Tensyr must "present a compelling

---

[5]     The Trustee's out-of-circuit citations likewise do not help him: in <u>Rees v. Mosaic</u>
<u>Technologies, Inc.</u>, for example, the Third Circuit confirmed that a defendant must ratify
an agent's specific "pre-incorporation activities." 742 F.2d 765, 768–69 (3d Cir. 1984).
Further, as noted above, the Trustee's statement that "Tensyr ratified Natixis' and FGG's
actions . . . by holding meetings in New York" is, at best, a misstatement, and at worst an
attempt to invent new allegations. Tensyr never held any meetings in New York, <u>see</u>
Chislett Decl. ¶ 6, and the Complaint never alleges that it did.

reason why personal jurisdiction would be unreasonable," Opp'n at 19, but where, as here, Tensyr's connections with the forum are weak, the bar for showing reasonableness is high. See LaMonica v. CEVA Group PLC (In re CIL Ltd.), 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) ("[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction."). The Trustee has not met that bar here.

### E.    Jurisdictional Discovery Is Inappropriate.

This Court should deny jurisdictional discovery where, as here, the Trustee has failed to make a *prima facie* showing of personal jurisdiction. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007) (collecting cases). The Trustee does not contest the dispositive evidence established by Tensyr's declarations and exhibits and jurisdictional discovery would not assist him in that regard. See Wafios Mach. Corp. v. Nucoil Indus. Co., No. 03-cv-9865, 2004 WL 1627168, at *5–6 (S.D.N.Y. July 21, 2004) (facts in defendant's uncontested affidavit showed that jurisdictional discovery was unnecessary).

## II.    THE INITIAL TRANSFERS ARE PROTECTED BY SECTION 546(e).

In its Opening Brief, Tensyr established that the Section 546(e) safe harbor applies to the Initial Transfers. Opening Br. at 19–27. The Trustee does not dispute that the Initial Transfers were "settlement payments" made "in connection with a securities contract." Id. at 20 (quoting Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC), 773 F.3d 411, 422 (2d Cir. 2014)). Instead, the Trustee relies on a judge-made exception to Section 546(e)—unrecognized by the Second Circuit—that the safe harbor does not apply where Sentry had knowledge of Madoff's alleged fraud. Opp'n at 22–23. Even if this exception exists (and it does not), the Opening Brief established that it would not bar invocation of the Section 546(e) safe harbor where, as here, the Trustee has alleged that the Initial Transfers were made "in connection with" the Sentry-Tensyr Subscription Agreement, a separate securities

contract. Opening Br. at 22. Finally, Tensyr showed that the Section 548(a)(1)(A) exception to

the safe harbor does not apply because BLMIS could not have intended to "hinder, delay, or

defraud" creditors by returning to Sentry its investment principal. Id. at 24. The Trustee once

again does not (and cannot) respond to this argument, and instead relies on the Ponzi Scheme

Presumption, which—contrary to the Trustee's argument—is not the "law of this Circuit."

Opp'n at 23; see Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC), 12 F.4th 171, 202

n.7 (2d Cir. 2021) (Menashi, J., concurring) (questioning the presumption and noting the Second

Circuit has not endorsed it). The safe harbor thus bars recovery of the Initial Transfers.

    **A.      Section 546(e) Is Available to Tensyr as a Subsequent Transferee.**

        The Trustee argues that Section 546(e)'s protections do not apply to subsequent

transferees. Opp'n at 22. This is plainly incorrect: every court to consider the issue (including in

the cases the Trustee cites) has held that a subsequent transferee is entitled to raise this defense,

as Tensyr does here, to avoidance of the Initial Transfers. See Opening Br. at 19–21; Picard v.

Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC), No. 08-01789 (CGM), 2021

WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (subsequent transferee is "entitled to raise a

§ 546(e) defense"); Multi-Strategy I, 641 B.R. at 92, 94–95 (same).[6] Tensyr is thus entitled to

raise this defense to the avoidance of the Initial Transfers.

    **B.      The Sentry-Tensyr Subscription Agreement Creates an Independent Basis for the Application of Section 546(e).**

        Tensyr's Opening Brief established that Section 546(e) applies to the Initial

Transfers for two independent reasons. First, as the Second Circuit has held, transfers from

BLMIS to Sentry were "settlement payments" and made "in connection with a securities

---

[6]    See also Picard v. Multi-Strategy Fund Ltd., No. 22-cv-06502, 2022 WL 16647767, at *3, 8–9 (S.D.N.Y. Nov. 3, 2022) ("Multi-Strategy II") (this "defense to the avoidability of the initial transfer remain[s] available").

contract"—i.e., the securities contract between Sentry and BLMIS. <u>Fishman</u>, 773 F.3d at 422;
Opening Br. at 20. Second, the safe harbor independently applies because—as the Trustee
alleges—the Initial Transfers were made "in connection with" Tensyr's Subscription
Agreement—a separate securities contract. Opening Br. at 20–21; Compl. ¶¶ 26, 31–32 46, 48,
126; <u>Multi-Strategy II</u>, 2022 WL 16647767 at *8 (the "safe harbor might apply to some of the
transfers from [BLMIS] to [Sentry] if those transfers were made 'in connection with,' meaning
they were clearly related to, securities contracts between [Sentry] and its . . . clients").

      The Trustee has no answer to these arguments, and it shows: the Opposition tries
to dodge the issue, noting only that he "does not concede" this argument, and that it is
"irrelevant." Opp'n at 22, <u>id.</u> n.4. The Trustee further argues that Section 546(e) is a "fact
intensive" defense not addressable at the motion to dismiss stage, relying on <u>Multi-Strategy II</u>.
Opp'n at 22 n.5. There, Judge Rakoff held that Section 546(e) is an affirmative defense, and that
whether the Initial Transfers to Sentry were made "in connection with" a subsequent transferee's
subscription agreement "d[id] not appear answerable on the pleadings" because the Trustee
"allege[d] too little about the circumstances of [the subsequent transferee's] withdrawals from
[Sentry] to know whether such withdrawals . . . were sufficiently related to [Sentry]'s earlier
withdrawals from [BLMIS]." <u>Multi-Strategy II</u>, 2022 WL 16647767 at *9. Here, however, the
Trustee repeatedly alleges (and argues) that the Initial Transfers were related to Tensyr's alleged
transfers, making the Section 546(e) defense apparent "on the face of the Complaint." <u>Pani v.
Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998). For example, the Trustee
alleges that "all of the subsequent transfers Tensyr received contained . . . BLMIS customer
property," Opp'n at 29, and "Sentry transferred a portion of the [Initial Transfers] . . . to Tensyr,"
a "redemption of [Tensyr's] interests" under its Subscription Agreement, Compl. ¶ 126, 129.

These alleged facts meet the low bar for "in connection with," which the Second Circuit has reasoned "merely require[s] that the transfer have a connection to the securities contract."[7]  Fishman, 773 F.3d at 421–22; see also Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 12-mc-115, 2013 WL 1609154, at *9 (S.D.N.Y. 2013) ("Cohmad") ("[A] withdrawal by a Madoff Securities customer caused by that party's payment obligations to a subsequent transferee under a securities contract could qualify as 'related to' that later transaction under the securities contract.").  In similar circumstances, courts have enforced the safe harbor by granting the motion to dismiss.  See e.g., Fishman, 773 F.3d at 415 (affirming dismissal of claims pursuant to Section 546(e)); In re Lehman Bros. Holdings Inc., 469 B.R. 415, 434 (Bankr. S.D.N.Y. 2012) ("[C]ourts will enforce the safe harbor provisions . . . by dismissing avoidance actions on the pleadings."); see also Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329, 339 (2d Cir. 2011) (affirming reversal of bankruptcy court and granting Section 546(e) defense).  This Court should do likewise.

### C. Section 546(e) Does Not Contain a Knowledge Exception and Any Such Exception Would Not Bar Application of Section 546(e) Here.

In its Opening Brief, Tensyr demonstrated that Section 546(e) does not contain an extratextual knowledge exception.  Opening Br. at 21–23; L. v. Siegel, 571 U.S. 415, 424–25 (2014) ("courts are not authorized to create additional exceptions"); Enron, 651 F.3d at 335 (rejecting extratextual "proposed limitations" on Section 546(e)).  And, even if Section 546(e)

---

[7]    This conclusion is reinforced by the District Court's interpretation of Section 546(g), the safe harbor for swap transactions that is "closely related" to Section 546(e).  Picard v. ABN AMRO (Ir.), 505 B.R. 135, 142 (S.D.N.Y. 2013).  In that context, the District Court has held it is "relatively straightforward" that an initial transfer to a feeder fund is made "in connection with" a swap transaction where a subsequent transfer defendant redeemed part of its investment in the feeder fund to adjust its collateral in a swap transaction with a third party.  Id. at 146–47.  The District Court rejected the Trustee's argument that the feeder fund's redemption from BLMIS was an "independent transaction," reasoning that "courts have applied the safe harbor to protect multi-layered transactions."  Id. at 148.

does contain a knowledge exception (it does not), that exception would not bar invocation of the safe harbor based on the Initial Transfers' connection with Tensyr's Subscription Agreement. See Opening Br. at 20–21. The purported reasoning of the "knowledge exception" is that if "both parties to a transfer knew that it was being made in connection with a Ponzi scheme, then the Safe Harbor cannot apply by its terms because there was no 'securities contract' that could trigger its application." In re Bernard L. Madoff Inv. Sec. LLC, No. 23-CV-0294 (VEC), 2023 WL 3317926, at *4 (S.D.N.Y. May 9, 2023). But here, the Trustee nowhere pleads that both parties to the Subscription Agreement—the applicable securities contract—had knowledge of the Ponzi scheme. As Judge Rakoff explained in Multi-Strategy II, "it is hard to see why the initial transferee's knowledge of Madoff's fraud would render a Section 546(e) defense based on a securities contract between the initial and subsequent transferee unavailable." 2022 WL 16647767 at *7 n.7 (citing Cohmad, 2013 WL 1609154 at *3, 9–10). No exception applies here.

**D.    The Initial Transfers Are Not Avoidable Under Section 548(a)(1)(A).**

As established in Tensyr's Opening Brief, Section 548(a)(1)(A) does not apply here because the Trustee has not (and cannot) pleaded BLMIS' fraudulent intent regarding the Initial Transfers to Sentry, a net loser in the Ponzi scheme; and because the Trustee cannot rely on the Ponzi scheme presumption to fix its deficient allegations. Opening Br. at 23–27.

In response, the Trustee spends several pages of its Opposition arguing that BLMIS was a Ponzi scheme (a fact no one disputes) and that the underlying fraudulent acts— such as filing false reports with the SEC—are "badges of fraud" that show fraudulent intent. Opp'n at 24–26. These arguments miss the point. The Trustee must plead "badges of fraud" specific to each Initial Transfer, In re Verestar, Inc., 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006), and cannot do so where, as here, the recipient of those Initial Transfers received less money than it invested in BLMIS. Opening Br. at 24–25; Vandergeest Decl. Ex. A (Fairfield Settlement)

16

(Sentry had a net loss of $1.2 billion from its investments in BLMIS). Regardless of BLMIS' operation as a Ponzi scheme, the Initial Transfers were a return of principal invested and therefore were not "fraudulent." See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 54 (2d Cir. 2005) ("A conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper."); Citibank, 12 F.4th at 200 ("that payment is considered a preference, not a fraudulent transfer").[8]

The Trustee's only other response is to argue that it does not need to plead fraudulent intent because it may rely on the Ponzi scheme presumption. Opp'n at 23. But this "questionable" presumption has not been accepted by the Second Circuit, Citibank, 12 F.4th at 202 (Menashi J., concurring), and it should not be applied here to claw back transfers of principal to a "net loser" investor, which cannot be fraudulent. Opening Br. at 25–26.

## III.    THE COMPLAINT ESTABLISHES THAT TENSYR IS ENTITLED TO THE SECTION 550(b) GOOD FAITH DEFENSE.

The Opening Brief established that Tensyr's Section 550(b) good faith defense is apparent on the face of the Complaint, including because (i) the Complaint states that Tensyr's transfers were a "redemption of equity interests," Compl. ¶ 129—which "constitutes value for purposes of section 550(b)," Picard v. ABN Amro Bank N.A. (In re Bernard L. Madoff Inv. Sec. LLC), No. AP 08-01789, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020)—and because (ii) the Complaint "nowhere contends" that Tensyr had any knowledge whatsoever of the Madoff fraud, Zuckerman v. Metro. Museum of Art, 928 F.3d 186, 193 (2d Cir. 2019)

---

[8]    The Trustee incorrectly argues that Sharp does not apply to SIPA liquidation cases, relying on In re Bernard L. Madoff Inv. Sec. LLC, 976 F.3d 184, 200–01 (2d Cir. 2020) (Gettinger); Opp'n at 25 n.9.  In Gettinger, the Second Circuit held that Sharp does not inform the "for value" defense under Section 548(c) in a SIPA liquidation when a trustee seeks the return of profits from a Ponzi scheme.  The ruling did not, as the Trustee contends, suggest that the return of investment *principal* to investors should be considered fraudulent.  976 F.3d at 200.  To the contrary, Gettinger was explicitly based on "SIPA's mandate that customers with net equity claims receive priority."  Id. at 201.

(affirmative defense is "evident on the face of the complaint" when the plaintiff "nowhere contends" a key fact); see Opening Br. at 28–31.  Tensyr also showed that, even if the Trustee had alleged facts putting Tensyr on inquiry notice of Madoff's Ponzi scheme (he does not), the Trustee's own allegations demonstrate that a "diligent inquiry" would not have led Tensyr to "discover[] the fraudulent purpose of the transfer[s]."  Citibank, 12 F.4th at 192; Opening Br. at 30.  The Trustee's apparent theory that Tensyr, a small Jersey investor, could detect a fraud that the SEC, with its power of compulsion, could not, is—to say the least—implausible.

The Trustee admits that the Complaint should be dismissed where the good faith defense is "set forth on the face of the Complaint," but, despite the Complaint's lack of *any* allegations that Tensyr knew or should have known of the Ponzi scheme, the Trustee contends that this Court should not dismiss because "what [Tensyr] knew or ignored is a factual issue that will be investigated during discovery."  Opp'n at 27.  This argument is tantamount to an admission that the Trustee has brought this suit with no basis to allege bad faith by Tensyr—in other words, the Trustee is on a fishing expedition.  This Court should end this expedition now.

## IV.    THE TRUSTEE FAILS TO PLEAD RECEIPT OF CUSTOMER PROPERTY.

Tensyr's Opening Brief, declarations, and exhibits demonstrated that the Trustee has failed to plausibly plead the most basic element of a Section 550(a) claim: "t[ying] any initial transfer [from BLMIS to Sentry] to any subsequent transfer [from Sentry to Tensyr]."  Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); Opening Br. at 31–35.  The Trustee does not deny that he is seeking to recover *billions* more in subsequent transfers than Sentry is alleged to have ever received from BLMIS in initial transfers; or that the transfers that Tensyr allegedly received were far removed from any initial transfer to Sentry (in some cases, by more than a year) and separated from any Initial Transfer by hundreds of millions of dollars in other alleged subsequent transfers to other defendants.  Opp'n at 28–34.

18

Nor does the Trustee address Tensyr's simple point: that given these alleged facts—which are drawn from the Trustee's own pleadings and exhibits—it is not plausible that the transfers Tensyr received were BLMIS property. Id. This conclusion alone requires dismissal.

The Trustee's primary response, that he need not present a "dollar-for-dollar accounting" and instead must allege only the "vital statistics" of the purported transfers, Opp'n at 29–31 (citing Multi-Strategy I, 641 B.R. at 90), misses the point. Both parties agree that "[t]o survive a motion to dismiss" the Trustee must plead facts that are more than "merely *consistent* with a defendant's liability." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added); see also Twombly, 550 U.S. at 570 (claims must be more than "conceivable"). The Trustee's problem is not that he has failed to conduct a "dollar-for-dollar accounting," but that he has failed to plead the facts necessary to make his claims plausible.

In response to Tensyr's observation that the Trustee's aggregated recovery claims almost *double* the total amount that Sentry received from BLMIS, Opening Br. at 33, the Trustee argues that until the he recovers the full $2.895 billion from BLMIS, he "is free to seek recovery from any and all Sentry subsequent transferees," Opp'n at 32.[9] This, too, misses the point. The question is not whether the Trustee is entitled to recover the full $2.895 billion. Rather, the question is whether the Trustee has *plausibly alleged* that the funds he seeks from Tensyr originated with BLMIS. The answer is no, because more than 40% ($2.105 billion) of the "subsequent transfers" that the Trustee seeks to recover cannot—as a matter of basic math—be attributed to BLMIS, Opening Br. at 33, meaning that the Trustee's allegations "sto[p] short of

---

[9]    The Trustee's claimed right to "pursue any and all" subsequent transferees is concerning, as it raises the serious prospect that subsequent transferees who allegedly profited from their investments in BLMIS will escape liability while "net losers" like Tensyr—which received back *less than ten percent* of its investment—will bear the burden of subsidizing the Trustee's recoveries. Tensyr respectfully submits that the Trustee's interpretation thus goes too far. Multi-Strategy I, 641 B.R. at 95–96.

the line between possibility and plausibility." Iqbal, 556 U.S. at 678. Similarly, the Trustee accuses Tensyr of failing to "disclose the tracing methodology" and claims "fact and expert discovery" is required to assess the plausibility of his claims. Opp'n at 32. But one does not need expert testimony to understand that the Trustee here seeks to recover over $2 billion more in subsequent transfers than Sentry ever received in initial transfers—a fact that the Trustee, crucially, admits. See Opp'n at 32; Opening Br. at 33; Vandergeest Decl. ¶ 6.

The Trustee also fails to rebut Tensyr's point that he seeks to recover transfers to Tensyr made months (or even more than a year) after Sentry's last receipt of a BLMIS transfer. See Opening Br. at 33–34; Vandergeest Decl. ¶ 10; Compl. Ex. B. For example, the Trustee alleges that Tensyr received a subsequent transfer of $15.6 million from Sentry on July 19, 2007, see Compl. Ex. D, more than a year after Sentry had received any transfer from BLMIS, see Compl. Ex. B at 25 (showing a $120 million transfer from BLMIS to Sentry on April 13, 2006). In the intervening period, the Trustee alleges that Sentry made subsequent transfers to other transferees worth more than $470 million—nearly *four times more* than the $120 million Initial Transfer. See Vandergeest Decl. ¶ 10; Compl. Ex. D. At a minimum, this warrants the dismissal of the alleged July 19, 2007 transfer. See BNP Paribas, 594 B.R. at 190 ("Each transfer is a separate claim."). The Trustee's only response to this point is a bare statement that his exhibits "do not establish that fact," Opp'n at 33, but the Trustee cannot deny its own pleadings and exhibits to escape dismissal here. Perry, 424 F. App'x at 25 (disregarding "factual assertions that are contradicted by the complaint [or] documents on which the pleadings rely"); Goldberger Co., LLC v. Uneeda Doll Co., No. 16-cv-4630, 2017 WL 3098110, at *7 (S.D.N.Y. July 21, 2017) (rejecting "conclusory statements" in opposition that were "not well-supported by the record").

## CONCLUSION

For the reasons above, this Court should dismiss the Complaint.

Dated: New York, New York
      July 31, 2023

Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By:   *s/ David Y. Livshiz*
         Timothy P. Harkness
         David Y. Livshiz
         Christian Vandergeest
         Adam Betts

601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
timothy.harkness@freshfields.com
david.livshiz@freshfields.com
christian.vandergeest@freshfields.com
adam.betts@freshfields.com

*Attorneys for Defendant Tensyr Limited*