**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 23-01099 (CGM) |
| v. | |
| MALCOLM SAGE and LYNNE FLORIO, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    BLMIS Collapses and the BLMIS SIPA Liquidation Proceeding is Commenced ...... 3

    B.    The Sage Avoidance Actions ..................................................................... 3

    C.    The Consolidated Actions ......................................................................... 5

    D.    The Subsequent Transfer Actions............................................................. 8

ARGUMENT ...................................................................................................................... 8

I.     THE TRUSTEE TIMELY BROUGHT THIS SUBSEQUENT TRANSFER
     ACTION ................................................................................................................. 9

    A.    The Federal Rules of Civil Procedure Establish That Avoidance of the
        Initial Transfers at Issue Here Occurred on the Date of the Final Judgment.......... 9

    B.    The Case Law Focuses on Finality, Making the Final Judgment the
        Appropriate Trigger ................................................................................ 12

II.    THE COMPLAINT SUFFICIENTLY PLEADS THE SUBSEQUENT
     TRANSFER CLAIM AGAINST FLORIO ...................................................... 16

III.   THE SINGLE SATISFACTION RULE DOES NOT BAR THE TRUSTEE'S
     SUBSEQUENT TRANSFER CLAIM AGAINST MALCOLM SAGE......................... 18

IV.   THE COMPLAINT SUFFICIENTLY PLEADS THE CLAIM FOR
     DECLARATORY JUDGMENT AGAINST FLORIO ................................... 19

CONCLUSION.................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Telecomm. Network, Inc. v. Arnstein & Lehr LLP (In re Advanced
Telecomm. Network, Inc.)*, No. 6:03-bk-00299-KSJ, Adv. Pro. No. 6:11-ap-
00007-KSJ, 2020 WL 5746795 (Bankr. M.D. Fla. Aug. 25, 2020) ......................................13

*In re Ancona*,
No. 14–10532, 2016 WL 1399265 (Bankr. S.D.N.Y. Apr. 6, 2016).......................................14

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004)........................................................................................................9

*In re Barrow*,
306 B.R. 28 (Bankr. W.D.N.Y. 2004) ......................................................................................18

*In re Belmonte*,
931 F.3d 147 (2d Cir. 2019)......................................................................................................18

*In re BLMIS*,
501 B.R. 26 (S.D.N.Y. 2013).....................................................................................................12

*In re BLMIS*,
654 F.3d 229 (2d Cir. 2011).........................................................................................................5

*Camreta v. Greene*,
563 U.S. 692 (2011)...................................................................................................................14

*Carrasco v. New York City Off–Track Betting Corp.*,
858 F. Supp. 28 (S.D.N.Y. 1994) ...............................................................................................9

*In re ContinuityX, Inc.*,
582 B.R. 124 (S.D.N.Y. 2018)...................................................................................................13

*Decker v. Voisenat (In re Serrato)*,
233 B.R. 833 (Bankr. N.D. Cal. 1999) ...............................................................................14, 15

*Dietz v. Bouldin*,
579 U.S. 40 (2016).....................................................................................................................11

*In re Duarte*,
492 B.R. 100 (Bankr. E.D.N.Y. 2011).......................................................................................17

*Ellul v. Congregation of Christian Bros.*,
774 F.3d 791 (2d Cir. 2014)........................................................................................................9

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989)........................................................................9

*Giovanazzi v. Schuette (In re Lebbos)*,
    No. EC-11-1735-KiDJu, 2012 WL 6737841 (9th Cir. B.A.P. Dec. 31, 2012),
    *aff'd*, 600 F. App'x 521 (9th Cir. 2015)....................................................15

*In re Glenn*,
    430 B.R. 56 (Bankr. N.D.N.Y. 2010) ........................................................17

*In re Heritage Org., L.L.C.*,
    No. 04–35574–BJH–11, 2011 WL 1793327 (N.D. Tex. May 11, 2011) .................13

*Hymowitz v. Hymowitz*,
    119 A.D.3d 736 (N.Y. Sup. Ct. App. Div. 2d Dep't 2014) ...................................16

*J.T. v. de Blasio*,
    500 F. Supp. 3d 137 (S.D.N.Y. 2020).........................................................21

*In re Keswani*,
    No. 20-10315-JLG, 2021 WL 1016883 (Bankr. S.D.N.Y. Mar. 16, 2021)...........17

*MacKinnon v. City of New York/Human Res. Admin.*,
    580 F. App'x 44 (2d Cir. 2014) ...............................................................20

*In re Marciano*,
    372 B.R. 211 (Bankr. S.D.N.Y. 2007) (Morris, J.).........................................17, 18

*Medcalf v. Thompson Hine LLP*,
    84 F. Supp. 3d 313 (S.D.N.Y. 2015)...........................................................21

*In re Michigan BioDiesel, LLC*,
    510 B.R. 792 (W.D. Mich. 2014) ..............................................................13

*Mitchell v. Nat'l Broad. Co.*,
    553 F.2d 265 (2d Cir. 1977).....................................................................20

*Nghiem v. U.S. Dep't of Veterans Affairs*,
    451 F. Supp. 2d 599 (S.D.N.Y. 2006)..........................................................9

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................9, 12

*Picard v. Hebrew Univ. of Jerusalem (In re Madoff)*,
    650 B.R. 5 (Bankr. S.D.N.Y. 2023) (Morris, J.)..............................................12

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ..........................................................18

*Picard v. Sage Assocs.*,
No. 20-cv-10057 (S.D.N.Y. Dec. 1, 2020) ...................................................3, 4, 5

*Picard v. Sage Assocs.*,
Nos. 22-1107(L) & 22-1110bk(CON), 2023 WL 5125596 (2d Cir. Aug. 10,
2023) ......................................................................................................7, 8, 16, 20

*Picard v. Sage Realty*,
Nos. 20 Civ. 10109 (JFK) & 20 Civ. 10057 (JFK), 2022 WL 1125643
(S.D.N.Y. Apr. 15, 2022)...............................................................................5, 6

*Picard v. Sage Realty*,
Nos. 20-cv-10109 (AJN), 20-cv-10057 (AJN), 2021 WL 1987994 (S.D.N.Y.
May 18, 2021)...................................................................................................3, 4

*Ruotolo v. City of N.Y.*,
514 F.3d 184 (2d Cir. 2008)...................................................................................8

*Schmidt v. Nordlicht (In re Black Elk Energy Offshore Ops., LLC)*,
No. 15-34287, Adv. Pro. No. 19-3370, 2023 WL 1491314 (Bankr. S.D. Tex.
Feb. 2, 2023) .........................................................................................................13

*SEC v. Madoff*,
No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008) ...............................................3

*In re Spina*,
416 B.R. 92 (Bankr. E.D.N.Y. 2009)..................................................................18

*United States v. F. & M. Schaefer Brewing Co.*,
356 U.S. 227 (1958).............................................................................................15

**Statutes**

11 U.S.C. § 550.............................................................................................................9

11 U.S.C. § 550(a)................................................................................................17, 18

11 U.S.C. § 550(a)(2)....................................................................................................9

11 U.S.C. § 550(d)......................................................................................................18

11 U.S.C. § 550(f)............................................................................................. *passim*

11 U.S.C. § 550(f)(1) ..............................................................................................1, 13

15 U.S.C. §§ 78aaa–*lll* .................................................................................................1

15 U.S.C. § 78eee(b)(4) ...............................................................................................3

N.Y. P'ship Law § 26(a)(2) ............................................................................................... 19

**Rules**

Fed. R. App. P. 4 ............................................................................................................. 11

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 9

Fed. R. Civ. P. 19(a)(1) .................................................................................................. 21

Fed. R. Civ. P. 52 ........................................................................................................... 10

Fed. R. Civ. P. 52(a)(1) .................................................................................................. 10

Fed. R. Civ. P. 58 ............................................................................................ 10, 11, 15, 16

Fed. R. Civ. P. 58(a), (b) ................................................................................................ 10

Fed. R. Civ. P. 69 ........................................................................................................... 11

N.Y. C.P.L.R. § 1502 ................................................................................................ 19, 20

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, submits this memorandum of law and declaration of Lan Hoang ("Hoang Decl.") in opposition to the motion to dismiss ("Motion") filed by defendants Malcolm Sage and his spouse Lynne Florio ("Defendants") in the above-captioned action.

## PRELIMINARY STATEMENT

After a bench trial in early 2022, the District Court entered judgment in the amount of $16.88 million in favor of the Trustee in two consolidated avoidance actions brought against Malcolm Sage and his two siblings ("Sages") and two now-defunct partnerships of which the Sages were general partners, Sage Associates and Sage Realty ("Partnerships").  To date, neither Malcolm Sage nor his two siblings have paid one cent to the Trustee in satisfaction of that judgment.

To protect the rights of the BLMIS customer property estate, the Trustee instituted this action against Defendants to recover the approximately $4.75 million in subsequent transfers they received from Sage Associates and Sage Realty.  In response, Defendants first argue that the instant action is untimely under Section 550(f)(1) of the Bankruptcy Code because it was filed on April 19, 2023, one year and four days after the date of the District Court's decision of April 15, 2022.  They further argue that the vast majority of the recovery sought from defendant Lynne Florio ("Florio"), who received certain subsequent transfers of customer property in the form of refunds from taxing authorities, fails based on the so-called Separate Filing Rule, that the Trustee is only entitled to a single satisfaction against Malcolm Sage, and that the declaratory judgment claim against Lynne Florio is barred by res judicata.

Defendants' latest effort to withhold monies rightfully belonging to other BLMIS customers has no basis in fact or law.  Section 550(f) provides that a subsequent transferee action must be brought within one year after the avoidance of the initial transfer.  Although the District Court's decision is dated April 15, 2022, the transfers were not avoided until the judgment was entered on April 20, 2022 because the judgment constitutes the final act required to avoid the initial transfers.  The Sages' trial counsel acknowledged as much at the time when he initiated negotiations with the Trustee's counsel over the Easter holiday weekend, April 16 and 17, 2022 following the decision to ensure that the judgment correctly identified the avoidance liability as to each of the Partnerships and the Sages.  Because Section 550(f)'s time limitation runs from the date of the final judgment, the Trustee's action is timely.

Defendants' contention that the Trustee cannot recover subsequent transfers received by Florio based on the Separate Filing Rule (defined below) is similarly misplaced.  The Separate Filing Rule addresses how to allocate the payment of tax refunds to a married couple when only one of the spouses has filed for bankruptcy.  As neither spouse has filed for bankruptcy, the rule has no application here.  Nor is Florio entitled to dismissal of the claim for declaratory judgment that she was a partner in Sage Realty and therefore is subject to joint and several liability for the debts of the partnership.  The Trustee did not seek and was not required to seek joinder of Florio, a permissive party, in its action to avoid the initial transfers.  As such, any assertion of res judicata is inappropriate since the Court has not reached a decision on the merits regarding Florio's partner status and she can still raise applicable defenses in this proceeding.

2

## BACKGROUND

### A.    BLMIS Collapses and the BLMIS SIPA Liquidation Proceeding is Commenced

In December 2008, Madoff was arrested for securities fraud.  The Securities Investor

Protection Corporation obtained a protective decree placing BLMIS into liquidation under SIPA

and appointing the Trustee.  *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008),

ECF Nos. 5, 6.  Under SIPA § 78eee(b)(4), the District Court referred the BLMIS SIPA

liquidation proceeding to the Bankruptcy Court.

Following his appointment, the Trustee conducted an extensive investigation of BLMIS.

The Trustee determined that (i) BLMIS never purchased any securities on behalf of its

customers—*i.e.*, any and all profits reported to customers by BLMIS on their account statements

were fictitious; (ii) certain customers withdrew more funds than they deposited with BLMIS,

meaning they were "net winners;" and (iii) the funds received in excess of the deposits in these

accounts were taken from other BLMIS customers who are "net losers."  To fulfill his statutory

duties, the Trustee brought more than one thousand avoidance actions to avoid and recover

BLMIS's fraudulent transfers from net winners for ratable distribution to net losers with allowed

claims in the SIPA liquidating proceeding.

### B.    The Sage Avoidance Actions

In 2010, the Trustee commenced two adversary proceedings ("Sage Actions") against the

Partnerships and partners, Martin Sage, Malcolm Sage, and Ann Passer, of each Partnership.  *See*

Compl., *Picard v. Sage Assocs.*, Adv. Pro. No. 10-04362 (Bankr. S.D.N.Y. Nov. 30, 2010)

("*Sage Assocs. Action*"), ECF No. 1; Compl., *Picard v. Sage Realty*, Adv. Pro. No. 10-04400

(Bankr. S.D.N.Y. Nov. 30, 2010) ("*Sage Realty Action*"), ECF No. 1.  In the Sage Actions, the

Trustee sought to avoid and recover fraudulent transfers collectively totaling $16,880,000 of

3

fictitious profits made by BLMIS to the respective Partnerships in the two years prior to the

commencement of the SIPA liquidation proceeding ("Initial Transfers"). Compl. ¶ 41, *Sage*

*Assocs. Action*, ECF No.1; Compl. ¶ 41, *Sage Realty Action*, ECF No.1. The Trustee also alleged

that the Partnerships subsequently transferred customer property to the Sages, as well as their

mother Lillian Sage. Compl. ¶ 42, *Sage Assocs. Action*, ECF No. 1; Compl. ¶ 42, *Sage Realty*

*Action*, ECF No. 1.

The Partnerships and the Sages answered the complaints and asserted various affirmative

defenses. *See* Answer, *Sage Assocs. Action*, ECF No. 43; Answer, *Sage Realty Action*, ECF No.

43. In their respective answers, the Partnerships admitted they were New York partnerships, and

the Sages admitted they were each partners of the Partnerships. *See* Sage Associates' Answer

¶¶ 7, 9–11, *Sage Assocs. Action*, ECF No. 43; Sage Realty Answer ¶¶ 7, 9–11, *Sage Realty*

*Action*, ECF No. 43.

The parties then engaged in discovery through 2019. Following a failed mediation in

2020, the Sages moved to withdraw the reference to the Bankruptcy Court in both Sage Actions.

Mot., *Picard v. Sage Assocs.*, No. 20-cv-10057 (S.D.N.Y. Dec. 1, 2020), ECF No. 1; Mot.,

*Picard v. Sage Realty*, No. 20-cv-10109 (S.D.N.Y. Dec. 1, 2020), ECF No. 1. In May 2021, the

District Court withdrew the reference from the Bankruptcy Court after finding that the Sage

Actions involved "'a matter of first impression, undecided by the Second Circuit,' that requires

'significant interpretation and application of non-bankruptcy federal law.'" *Picard v. Sage*

*Realty*, Nos. 20-cv-10109 (AJN), 20-cv-10057 (AJN), 2021 WL 1987994, at *7 (S.D.N.Y. May

18, 2021) (quoting *In re Joe's Friendly Serv. & Son Inc.*, No. 14-BK-70001(REG), 2019 WL

6307468, at *6 (E.D.N.Y. Nov. 25, 2019)). The undecided matter of first impression related to

the proper method of calculating the net equity of the BLMIS accounts respectively held by the

Partnerships where, unlike other BLMIS customers, Defendants claimed that they directed the trading in their BLMIS accounts.

### C.    The Consolidated Actions

The District Court consolidated the cases ("Consolidated Actions") and set trial for January 2022. *Picard v. Sage Assocs.*, No. 20-cv-10057 (S.D.N.Y. June 21, 2021) ("*Consolidated Actions*"), ECF No. 25. Over a five-day bench trial, District Judge John F. Keenan heard testimony from eight witnesses, five of them live, and admitted over 2,000 exhibits into evidence. At trial, the parties disputed two core issues relevant to the current Motion: (i) whether the Second Circuit's net equity decision, *In re BLMIS*, 654 F.3d 229 (2d Cir. 2011) ("*Net Equity Decision*") which affirmed the Trustee's use of the net investment method to calculate net equity, applied to the Partnerships' BLMIS accounts where no securities were traded but the Sages, specifically Malcolm Sage, purportedly gave trading directions and authorizations to Madoff; and (ii) whether the Sages were general partners of the Partnerships. Andrew Kratenstein, Esq. represented the Partnerships and the Sages, including defendant Malcolm Sage, at trial.

On Good Friday afternoon, April 15, 2022, the District Court issued its decision (the "Decision"). *Picard v. Sage Realty*, Nos. 20 Civ. 10109 (JFK) & 20 Civ. 10057 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022); *see also* Hoang Decl., Ex. 1 (April 15 Decision). The District Court found that the "transactions reflected on the Partnerships' customer account statements were the product of Madoff's after-the-fact fabrications, not the directions and authorizations of Malcolm Sage." *Id.* at *15. Thus, the Court found the only approach consistent with SIPA and the Second Circuit's *Net Equity Decision* was to treat the Partnerships' BLMIS accounts like all other BLMIS accounts, applying the net investment method and ordering the return of the fictitious profits the Partnerships received from BLMIS. *Id.* at *17–22.

5

Next, the Court found that the Partnerships—Sage Associates and Sage Realty—were New York
partnerships and that the Sages—Malcolm, Martin, and Ann—were each general partners of the
Partnerships. *Id.* at *28–30. In conclusion, the District Court found "in favor of the Trustee and
against the Defendants, Sage Associates, Sage Realty, Malcolm Sage, Martin Sage, and Ann
Sage Passer, jointly and severally, in the amount of $16,880,000," and directed the Clerk of
Court to "enter judgment in favor of the Trustee and close both cases." Hoang Decl., Ex. 1
(April 15, 2022 Decision at 95).

On the evening of Saturday, April 16 Mr. Kratenstein contacted the Trustee's trial
counsel regarding what he perceived as a mistake in the Decision. Hoang Decl., Ex. 2 (April 16,
2022 Email Correspondence from Andrew Kratenstein). Mr. Kratenstein sought the Trustee's
review of and consent to the submission of a joint letter "asking that [Judge Keenan] modify his
direction to the Clerk of the Court":

> Lan/Jamie,
>
> I assume you have read the Judge's findings issued yesterday
> afternoon. *We believe that Judge Keenan's direction to the Clerk
> of the Court to enter a judgment "in favor of the Trustee and
> against the Defendants, Sage Associates, Sage Realty, Malcolm
> Sage, Martin Sage, and Ann Sage Passer, jointly and severally, in
> the amount of $16,880,000" is in error.* As explained in the
> attached draft letter, we believe that the judgment should be
> entered in favor of the Trustee (1) in the amount of $13,510,000
> against Sage Associates, Malcolm Sage, Martin Sage, and Ann
> Sage Passer, jointly and severally, and (2) in the amount of
> $3,370,000 against Sage Realty, Malcolm Sage, Martin Sage, and
> Ann Sage Passer, jointly and severally.
>
> *In order to avoid what should be unnecessary motion practice over
> the form of the judgment, are you agreeable to my filing the
> attached joint letter to Judge Keenan asking that he modify his
> direction to the Clerk of the Court?* We would like to file this on
> Monday morning if possible, *hopefully before judgment is
> entered.* I appreciate that tomorrow is Easter, but I'd appreciate it
> if you could let us know as soon as you can.
>
> Thanks,

Andrew

*Id.* (emphasis added).  On Easter Sunday, April 17, the Trustee consented to the submission of

the joint letter.  Hoang Decl., Ex. 3 (April 17 Email Correspondence from James Rollinson).

On Monday, April 18 Mr. Kratenstein thanked the Trustee for his consent, and submitted

the joint letter to the Court.  Hoang Decl., Ex. 4 (April 18 Joint Letter to Judge Keenan,

*Consolidated Actions*, ECF No. 68).  In their letter, the parties asked the Court to modify its

direction to the Clerk of Court to delineate between the total amount of avoided transfers

received by Sage Associates versus the total amount of avoided transfers received by Sage

Realty.  *Id.*  Later that same day, the Court issued an order wherein it:

> [R]espectfully direct[ed] the Clerk of Court to modify the April 15,
> 2022, judgment and enter judgment in favor of the Trustee (1) in
> the amount of $13,510,000 against Sage Associates, Malcolm
> Sage, Martin Sage, and Ann Sage Passer, jointly and severally, and
> (2) in the amount of $3,370,000 against Sage Realty, Malcolm
> Sage, Martin Sage, and Ann Sage Passer, jointly and severally.

Hoang Decl., Ex. 5 (Order, *Consolidated Actions*, ECF No. 113).

On April 20 consistent with the April 18 Order, the Clerk of Court entered judgment

(1) in the amount of $13,510,000 against Sage Associates, Malcolm Sage, Martin Sage, and Ann

Sage Passer, jointly and severally; and (2) in the amount of $3,370,000 against Sage Realty,

Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally.  Hoang Decl., Ex. 6

(Final Judgment, *Consolidated Actions*, ECF No. 114).

On May 20, 2022, defendant Malcolm Sage appealed the final judgment to the United

States Court of Appeals for the Second Circuit.  *See Picard v. Sage Assocs.*, Nos. 22-1107(L) &

22-1110(Con.) (2d Cir.).  On August 10, 2023, the Second Circuit affirmed the District Court's

ruling in all respects, finding that the Trustee correctly calculated the net equity of the

Partnerships' BLMIS accounts and that the Sages were partners in the Partnerships.  *Picard v.*

*Sage Assocs.*, Nos. 22-1107(L) & 22-1110bk(CON), 2023 WL 5125596 (2d Cir. Aug. 10, 2023)

(summary order) ("Summary Order").

        **D.**      **The Subsequent Transfer Actions**

      To date, neither Partnership nor any of the Sages has paid any amount to the Trustee

toward satisfying the Final Judgment.  As a result, on April 19, 2023, the Trustee brought three

separate adversary proceedings against the Sages and two of their spouses to recover

approximately $14 million in subsequent transfers they received.  Compl., *Picard v. Passer*,

Adv. Pro. No. 23-01097 (Bankr. S.D.N.Y. Apr. 19, 2023), ECF No. 1; Compl., *Picard v. Martin

Sage*, Adv. Pro. No. 23-01098 (Bankr. S.D.N.Y. Apr. 19, 2023), ECF No. 1; Compl., *Picard v.

Malcolm Sage*, Adv. Pro. No. 23-01099 (Bankr. S.D.N.Y. Apr. 19, 2023), ECF No. 1.

      In the instant action, the Trustee alleges that within the two-year period preceding the

SIPA liquidation proceeding, Sage Associates subsequently transferred $4,503,367 of the Initial

Transfers to Defendants and Sage Realty subsequently transferred $255,000 of the Initial

Transfers to Defendants.[1]  Compl., Exs. C, D, ECF No. 1.  In June 2023, Defendants filed this

Motion to dismiss the Trustee's complaint.  Motion, ECF No. 26.

## ARGUMENT

      A court should consider a motion to dismiss "'accepting all factual allegations in the

complaint and drawing all reasonable inferences in the plaintiff's favor.'"  *Ruotolo v. City of

N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007)).  A motion to dismiss on statute of limitations grounds "generally is

treated as a motion to dismiss for failure to state a claim upon which relief can be granted

---

[1] Unless otherwise noted, all ECF references herein refer to the instant action, *Picard v. Malcolm Sage*, Adv. Pro.
No. 23-01099 (Bankr. S.D.N.Y.).

pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also Carrasco v. New York City Off–Track Betting Corp.*, 858 F. Supp. 28, 30 (S.D.N.Y. 1994). This is "because expiration of the statute of limitations presents an affirmative defense." *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 603 (S.D.N.Y. 2006) (citing Fed. R. Civ. P. 8(c); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("The statute of limitations is normally an affirmative defense."). Because Defendants bear the burden of establishing an affirmative defense, a pre-answer motion to dismiss on statute of limitations grounds may be granted only if it is clear on the face of the complaint that the statute of limitations has run. *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartfor Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).

I. **THE TRUSTEE TIMELY BROUGHT THIS SUBSEQUENT TRANSFER ACTION**

A. **The Federal Rules of Civil Procedure Establish That Avoidance of the Initial Transfers at Issue Here Occurred on the Date of the Final Judgment**

Bankruptcy Code Section 550 allows a trustee to recover fraudulent transfers from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). Section 550 further states that "[a]n action or proceeding under this section may not be commenced after the earlier of — (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or (2) the time the case is closed or dismissed." 11 U.S.C. § 550(f).

The one-year statute of limitation of Section 550(f) is grounded in the finality of the avoidance, whether via entry of a final judgment avoiding the initial transfers, entry of a consent judgment, or entry of a stipulation of dismissal following a settlement between a trustee and an initial transferee. *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (recognizing that finality is the trigger for Section 550(f)). In a fully-litigated avoidance

action, entry of the final judgment provides the finality of the avoidance of the transfers at issue,

thereby triggering Section 550(f)'s one-year limitation to bring any recovery action for

subsequent transfers.  *See* 5 Collier on Bankruptcy ¶ 550.07 (2023) (noting that the relevant date

for Section 550(f) is the avoidance, not date of transfer) (citing *Kapila v. Funding, Inc. (In re

Data Lease Fin. Corp.)*, 176 B.R. 285, 286–87 (Bankr. S.D. Fla. 1994) (finding partial summary

judgment on avoidance was not final judgment and one-year statute of limitations did not begin

to run until a final judgment was entered)).

The Federal Rules of Civil Procedure, applied here through the Bankruptcy Rules,

support using the judgment, rather than a decision, as the trigger for Section 550(f)'s statute of

limitation by delineating between findings of fact and conclusions of law and judgments.  While

after conducting a bench trial, district courts are required to state their findings of facts and

conclusions of law, they are not required to issue their findings and conclusions in a written

opinion or decision filed on the docket.  Rather, Rule 52 directs:

> In an action tried on the facts without a jury or with an advisory
> jury, the court must find the facts specifically and state its
> conclusions of law separately. The findings and conclusions may
> be stated on the record after the close of the evidence or may
> appear in an opinion or a memorandum of decision filed by the
> court. *Judgment must be entered under Rule 58.*

Fed. R. Civ. P. 52(a)(1) (emphasis added).

Meanwhile, judgments, which must be filed on the docket, are required to be entered

under Rule 58, which provides that "every judgment and amended judgment must be set out in a

separate document" and the clerk must promptly enter the judgment.  Fed. R. Civ. P. 58(a), (b).

In 1963, Rule 58 was amended to "eliminate the[] uncertainties [of whether a court's opinion or

memorandum is sufficiently detailed to be considered a judgment] by requiring that there be a

judgment set out on a separate document—distinct from any opinion or memorandum—which

provides the basis for the entry of judgment." Fed. R. Civ. P. 58 (Notes of Advisory Comm. on

Rules–1963 Amendment). Important here, "at any point prior to final judgment," a court "has

the power to modify or rescind [any of] its orders." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016)

(citing *Marconi v. Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47–48 (1943)).

The Consolidated Actions before the District Court demonstrate why a final judgment,

rather than an opinion, is the correct trigger for Section 550(f)'s one-year limitation. On April

15, 2022, the District Court issued its Decision, which directed the Clerk to enter a judgment of

avoidance in the total amount of $16.88 million against the Partnerships and Sages, jointly and

severally. Hoang Decl., Ex. 1 (April 15 Decision at 95 (specifically referencing judgment to be

entered in favor of the Trustee as to "the Trustee's avoidance actions")). But after trial counsel

for the Partnerships and the Sages flagged an error in the Court's direction to the Clerk—namely,

that the Court did not distinguish between the amount of the avoided transfers received by Sage

Associates versus the amount of avoided transfers received by Sage Realty—the Court exercised

its power to modify its rulings before final judgment and modified its direction to the Clerk.

Hoang Decl., Ex. 5 (Order, *Consolidated Actions*, ECF No. 113); *see also Dietz v. Bouldin*, 579

U.S. at 46. The transfers were avoided once the Clerk entered the Final Judgment on April 20,

2022, five days after the Decision was issued. *See* Hoang Decl., Ex. 6 (Final Judgment,

*Consolidated Actions*, ECF No. 114).

The entry of the Final Judgment provided the parties with the finality as to the avoided

transfers and set out the respective avoidance liability among the Partnerships and the Sages, and

thus triggered the statute of limitations under Section 550(f).[2] The avoidance of the Initial

Transfers and the allocation of the liability to each party for specific amounts occurred on April

---

[2] Indeed, it is the final judgment that triggers the Trustee's ability to recover the avoided amounts and the right of appeal. *See* Fed. R. Civ. P. 69; Fed. R. App. P. 4.

20, 2022, when the Clerk entered Final Judgment. *See In re BLMIS*, 501 B.R. 26, 36 (S.D.N.Y.

2013) ("The relevant statute for the Trustee's recovery action [against a subsequent transferee] is

provided in Section 550(f) of the Bankruptcy Code, which . . . allows recovery actions to be

brought for one year after *judgment of avoidance* or the dismissal of the case." (emphasis

added)).  Under Section 550(f), the Trustee therefore had until April 20, 2023 to bring this

adversary proceeding to recover subsequent transfers received by Defendants.  Having filed the

instant action on April 19, 2023, the Trustee's action against Defendants is timely and

Defendants' motion to dismiss on statute of limitation grounds must fail.

> **B.**     **The Case Law Focuses on Finality, Making the Final Judgment the Appropriate Trigger**

When this Court and other courts in this District have looked at the trigger for the one-

year limitations period in Section 550(f), the common touchstone is finality.  When considering

Section 550(f)'s one-year limitation following a settlement with an initial transferee in this SIPA

liquidating proceeding, Bankruptcy Judge Lifland noted that although the settlement did "not

constitute a formal avoidance of the initial transfer from [BLMIS] to Fairfield, it presents the

Court with finality with respect to Fairfield Sentry. This finality triggers the relevant one-year

statute of limitations under section 550(f) of the Code." *Bureau of Labor Ins.*, 480 B.R. at 522;

*see also Picard v. Hebrew Univ. of Jerusalem (In re Madoff)*, 650 B.R. 5, 23 (Bankr. S.D.N.Y.

2023) (Morris, J.) (same); *SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013)

(Rakoff, J.) (same and framing the issue before him as whether Section 550's clause "to the

extent a transfer is avoided" required, as a precondition for a trustee to recover against a

subsequent transferee, that the trustee obtain a "fully litigated, *final judgment of avoidance*

against the relevant initial transferee" (emphasis added)).

Similarly, in *In re ContinuityX, Inc.*, 582 B.R. 124 (S.D.N.Y. 2018), the district court

considered whether a trustee, who had brought a timely avoidance action to recover initial

transfers received by two entities, was later time-barred from bringing a recovery action against a

subsequent transferee. The avoidance action had been dismissed because the entities were

defunct. The defendants argued that there could be no subsequent transfer action because the

initial transfers had not been avoided.  But the court determined that "under the circumstances, it

would have been impractical, if not impossible, for the Trustee to obtain an avoidance judgment

against" the defunct entities and that "the Stipulation [of Dismissal] provides finality and serves

as the trigger of the 1 year limitation period set forth in section 550(f)(1)."  *Id.* at 136.

Courts outside this Circuit have reached similar conclusions.  *See, e.g.*, *Schmidt v.

Nordlicht (In re Black Elk Energy Offshore Ops., LLC)*, No. 15-34287, Adv. Pro. No. 19-3370,

2023 WL 1491314, at *4 (Bankr. S.D. Tex. Feb. 2, 2023) (finding entry of default judgment

triggered Section 550(f)'s statute of limitations); *Advanced Telecomm. Network, Inc. v. Arnstein

& Lehr LLP (In re Advanced Telecomm. Network, Inc.)*, No. 6:03-bk-00299-KSJ, Adv. Pro. No.

6:11-ap-00007-KSJ, 2020 WL 5746795, at *2 (Bankr. M.D. Fla. Aug. 25, 2020) (finding entry of

second amended final judgment started running of Section 550(f)'s limitations period); *In re

Michigan BioDiesel, LLC*, 510 B.R. 792, 794 (W.D. Mich. 2014) (finding debtor who "sought

and obtained . . . a judgment under Section 549 avoiding a post-petition payment" properly

brought a subsequent transfer action "filed within one year after the avoidance of the payment");

*In re Heritage Org., L.L.C.*, No. 04–35574–BJH–11, 2011 WL 1793327 (N.D. Tex. May 11,

2011) (finding trustee filed complaint against subsequent transferee within Section 550(f)'s one-

year limitations period where complaint was filed 364 days after judgment of avoidance).

Defendants rely heavily on a lone 24-year-old case from a California bankruptcy court to support their view that Section 550(f) is triggered by a decision, rather than final judgment. *See Decker v. Voisenat (In re Serrato)*, 233 B.R. 833 (Bankr. N.D. Cal. 1999). As an initial matter, this case is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *In re Ancona*, No. 14–10532, 2016 WL 1399265 *2 n.6 (Bankr. S.D.N.Y. Apr. 6, 2016) (finding no authority that a Ninth Circuit Bankruptcy Appellate Panel decision controlled this Court). Nor should this case be deemed persuasive authority given that *Serrato* is factually distinguishable and no longer seems to be good law.

The entire premise of *Serrato* is that there was no need for the parties to wait for a judgment to be entered to trigger Section 550(f)'s statute of limitations because the opinion "settled all matters between the parties" and "ended the fraudulent transfer action on the merits." *In re Serrato*, 233 B.R. at 835. But here, the Decision did not settle all matters between the parties because it incorrectly attributed the total amount of avoided transfers to both Partnerships. Within three business days, the Clerk entered the Final Judgment, in the correct amounts, against the Partnerships and Sages, providing clarity and finality to the amounts of transfers avoided as to each of the Partnerships and the respective avoidance liabilities among the parties. Moreover, the delay between the Decision and Final Judgment (five total days and three business days) stemmed from the Sages' trial counsel's belief that the Decision was incorrect as well as the fact that the Decision was issued on the Friday before the Easter holiday weekend. Unlike *Serrato*, there was no lag of 24 days between the court's findings and the entry of judgment.

14

Even the Ninth Circuit Bankruptcy Appellate Panel has subsequently rejected *Serrato*, instead holding that the judgment is the trigger for Section 550(f).  In *Giovanazzi v. Schuette (In re Lebbos)*, No. EC-11-1735-KiDJu, 2012 WL 6737841 (9th Cir. B.A.P. Dec. 31, 2012), *aff'd*, 600 F. App'x 521 (9th Cir. 2015), defendants argued that the trustee's subsequent transfer action was time-barred under Section 550(f).  The court noted that while there were separate findings of fact and conclusions of law, the judgment triggered the avoidance of the transfers by the debtor. *Id.* at *15.

The underpinnings of *Serrato* are too slender of a reed for this Court to rely on.  That bankruptcy court looked to the two-pronged test set forth by the Supreme Court in *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232–33 (1958), in deciding whether the language of the opinion "contain[ed] the essential elements of a judgment and . . . clearly evidence[d] the court's intention that it shall be the final act in the case."  *In re Serrato*, 233 B.R. at 835.  But when Rule 58 was amended in 1963, the Advisory Committee specifically discussed the uncertainties articulated by the Court in *F. & M. Schaefer Brewing* about whether an opinion constituted a final decision, as the motivating reason why Rule 58 was amended to now require that the judgment be set out on a separate document:

> [S]ome difficulty has arisen, chiefly where the court has written an opinion or memorandum containing some apparently directive or dispositive words, *e.g.*, "the plaintiff's motion [for summary judgment] is granted," *see United States v. F. & M. Schaefer Brewing Co*., 356 U.S. 227, 229, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958).  Clerks on occasion have viewed these opinions or memoranda as being in themselves a sufficient basis for entering judgment in the civil docket as provided by Rule 79(a).  However, where the opinion or memorandum has not contained all the elements of a judgment, or where the judge has later signed a formal judgment, it has become a matter of doubt whether the purported entry of judgment was effective, starting the time running for post-verdict motions and for the purpose of appeal. *See id.* [and citing additional authority].

> The amended rule eliminates these uncertainties by requiring that there be a judgment set out on a separate document—distinct from any opinion or memorandum—which provides the basis for the entry of judgment.

Fed. R. Civ. P. 58 (Notes of Advisory Comm. on Rules–1963 Amendment).

Here, where no party believed the Decision to be final—as evidenced by the flurry of activity beginning the day after its issuance—there is no basis to use that event as the trigger for Section 550(f)'s limitations period. The Civil Rules and case law all militate that the judgment provides the requisite finality, avoiding the transfers and making the Trustee's action timely.

## II.    THE COMPLAINT SUFFICIENTLY PLEADS THE SUBSEQUENT TRANSFER CLAIM AGAINST FLORIO

Defendants argue that the Trustee's claim against Florio for subsequent transfers comprising tax refunds must be dismissed because Florio has no interest in the tax payments or refunds based on the Separate Filing Rule. Put another way, Defendants suggest because Florio had no interest in Sage Associates, for which her husband paid anticipated tax liability in 2006 and 2007, Florio cannot have any interest in the refunds relating to those payments. But Defendants fundamentally misunderstand the nature of the Trustee's claims against them.

Whether Florio had an interest in Sage Associates or in her husband's payments to the tax authorities relating to his interest in Sage Associates has no bearing on the Trustee's subsequent transferee claim against Florio.[3] The Trustee is simply following the flow of customer property, which BLMIS transferred to Sage Associates (and which the District Court avoided), portions of which Sage Associates subsequently transferred to defendant Malcolm Sage who then used, *inter alia*, to make payments to taxing authorities for his anticipated tax liability on Sage Associates'

---

[3] Given defendant Malcolm Sage's position that he personally managed the Partnerships' accounts with BLMIS, *see, e.g.*, Summary Order at *3, his interest in Sage Associates and any distributions made by Sage Associates to him constitute marital property in which Florio therefore has an interest. *See, e.g.*, *Hymowitz v. Hymowitz*, 119 A.D.3d 736, 738–39 (N.Y. Sup. Ct. App. Div. 2d Dep't 2014).

purported profits from its BLMIS account as reported on joint tax returns he filed with his wife,

Florio.  That money was held by tax authorities (as a mere conduit or otherwise) and following

the filing of amended joint returns, the authorities returned the BLMIS customer property via

transfers *jointly to the Defendants*.  Significantly, Defendants do *not* refute in the Motion that

they were the subsequent transferees of the tax refunds from the taxing authorities.  Accordingly,

for purposes of Section 550(a), the Trustee can recover the subsequent transfers of BLMIS

customer property, or the value thereof, from Malcolm Sage as well as Florio.

To avoid this outcome, Defendants ask this Court to apply the "Separate Filing Rule," a

rule adopted by some courts to determine how to allocate spousal rights in refunds from joint

returns.  Motion at 12–13 (citing and relying largely on *In re Duarte*, 492 B.R. 100 (Bankr.

E.D.N.Y. 2011)).  In *Duarte*, a chapter 13 trustee sought recovery of 100% of federal and state

refunds due to a debtor and the debtor's non-filing spouse on the theory that the refunds

constituted property of the debtor's estate.  *Id.* at 100–01.  The court rejected application of the

50/50 Rule and concluded that the Separate Filing Rule was the most appropriate method of

determining the allocation of a tax refund between the spouses.  *Id.* at 108–09.  But the instant

case does not involve tax refunds owed to a debtor and his non-filing spouse.  Rather this case

arises out of the SIPA liquidation proceeding in which the Trustee seeks recovery of BLMIS

customer property jointly refunded to both spouses as subsequent transferees.

Moreover, the Separate Filing Rule has been rejected by the majority of courts in this

Circuit.  "In assessing a debtor's right to a tax refund on account of a joint tax return, courts in

this circuit applying New York law follow the '50/50 Refund Rule.'"  *In re Keswani*, No. 20-

10315-JLG, 2021 WL 1016883, at *4 (Bankr. S.D.N.Y. Mar. 16, 2021) (citing *In re Marciano*,

372 B.R. 211, 214 (Bankr. S.D.N.Y. 2007) (Morris, J.); *In re Glenn*, 430 B.R. 56, 59 (Bankr.

N.D.N.Y. 2010); *In re Spina*, 416 B.R. 92, 96 (Bankr. E.D.N.Y. 2009); *In re Barrow*, 306 B.R.

28, 31 (Bankr. W.D.N.Y. 2004).  The 50/50 Refund Rule establishes "as a rebuttable

presumption that an income tax refund should be split equally between the spouses."  *In re*

*Marciano*, 372 B.R. at  216 (applying the 50/50 Refund Rule).  Accordingly, to the extent that

this Court were to examine how Defendants ultimately chose to make use of the tax refunds that

they jointly received, the Trustee is entitled, at this stage, to the rebuttable presumption that the

refunds should be split equally between Defendants.

### III.    THE SINGLE SATISFACTION RULE DOES NOT BAR THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIM AGAINST MALCOLM SAGE

Defendant Malcolm Sage argues the "single satisfaction" required under 11 U.S.C.

§ 550(a) bars the Trustee from pursuing a subsequent transfer claim against him.  Motion at 14.

Although the Trustee is undoubtedly limited to 'a single satisfaction" under Section 550(a), he

may "nevertheless pursue any and all subsequent transferees in order to achieve that

satisfaction."  *Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 95–96 (Bankr. S.D.N.Y. 2022).

Section 550(a) authorizes the Trustee to pursue recovery "from all available sources until the full

amount of unlawfully transferred Estate property is *fully realized* for the Estate's creditors."  *In*

*re Belmonte*, 931 F.3d 147, 154 (2d Cir. 2019) (emphasis added) (finding that Section 550(d) did

not bar the recovery of funds).  The court may award a judgment that involves recovery from

both an initial transferee and subsequent transferee "so long as it does not result in double

recovery for the estate."  *Id.* (quoting *Aalfs v. Wirum*, 525 F.3d 870, 883 n.3 (9th Cir. 2008)).

Further, the "[c]alculation of whether the Trustee is fully satisfied is a factual finding to be made

by this Court at a later stage of litigation," not on a motion to dismiss.  *Multi-Strategy Fund*, 641

B.R. at 96.  The Trustee has secured an aggregate $16.88 million judgment in connection with

avoidance of the Initial Transfers, for which Malcolm Sage is jointly and severally liable.

Accordingly, at this stage where the Trustee has yet to recover any monies on that judgment,

there is no basis to dismiss the subsequent transfer claim against Malcolm Sage.

## IV.    THE COMPLAINT SUFFICIENTLY PLEADS THE CLAIM FOR DECLARATORY JUDGMENT AGAINST FLORIO

Florio argues that the Trustee's claim for declaratory judgment against her as general

partner of Sage Realty fails because the Trustee did not name her as a partner in the avoidance

action against Sage Realty and res judicata bars the Trustee from relitigating whether "Sage

Realty was a partnership and the composition of its partners."  Motion at 15–18.  This argument

too is wrong.

In New York, "all partners are liable . . . jointly for all . . . debts and obligations of the

partnership." N.Y. P'ship Law § 26(a)(2).  Florio declared on her joint tax returns, under penalty

of perjury, that she was a general partner of Sage Realty.  As a partner of Sage Realty, Florio

must be held liable for the Final Judgment against Sage Realty and its other general partners,

including her husband defendant Malcolm Sage.  Florio claims New York courts disfavor

enforcement of a judgment against a partner not originally named in the proceeding which

resulted in judgment.  Motion at 15.  However, Florio conveniently ignores New York law that

explicitly allows a creditor—here, the Trustee—to bring a subsequent action against individuals

liable for a judgment already determined in a prior proceeding.  N.Y. C.P.L.R. § 1502 provides

that:

> A subsequent action against a co-obligor who was not summoned in the original action must be maintained in order to procure a judgment enforceable against his individually held property for the sum remaining unpaid upon the original judgment, and such action shall be regarded as based upon the same obligation, contract or liability as the original judgment for the purpose of obtaining any provisional remedy.

N.Y. C.P.L.R. § 1502.  Thus, the Trustee brings this subsequent action against a co-obligor, here

Florio as general partner of Sage Realty, in order to procure a judgment against her for the sum

remaining unpaid upon the original judgment against Sage Realty—$3,370,000.

For purposes of res judicata, Defendants are correct that the Trustee does not need to

relitigate the issue of whether Sage Realty was a partnership—the District Court determined it

was a partnership and the Second Circuit affirmed that finding.  *See* Summary Order at *4.

However, the question of whether Florio was a partner of Sage Realty, including whether she

shared in the profits and losses of the partnership, was not considered in the avoidance action

against Sage Realty.  "The doctrine of res judicata broadly encompasses the notion that 'a right,

question, or fact distinctly put in issue and directly determined by a court of competent

jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same

parties or their privies.'"  *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 268 (2d Cir. 1977) (citation

omitted).  In order to assert an affirmative defense of claim preclusion, a party must show that an

earlier decision was: (1) a final judgment on the merits made by a court of competent

jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same

cause of action.  *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d

Cir. 2014).

Florio claims that she can meet the elements of res judicata because the Trustee should

have sued her in the avoidance action against Sage Realty that decided Sage Realty was a

partnership and the "composition of [Sage Realty's] partners."  Motion at 16.  But the Decision

did not address the "composition" of *all* of Sage Realty's partners.  Instead, the District Court

recounted the evidence that established that Malcolm Sage, Martin Sage, and Ann Passer were

general partners of the Partnerships, which included that they held themselves out as general

partners to third parties, that they answered the Trustee's complaint in the avoidance action and identified themselves as "partners," and that the profits were distributed based on the ownership interest each held in the Partnerships. *See* Hoang Decl., Ex. 1 (April 15 Decision at 46–48). These facts were specific to the Sages and the Court made no finding that the Sages were the *only* general partners. Indeed, the District Court noted that the Sages each "held an interest in Sage Realty, however the size of their respective interests fluctuated over time," suggesting the Court was aware there may be other general partners of Sage Realty but made no specific findings as to them. *Id.* at 46.

The Trustee was not required to name Florio in the Sage Realty action because the Federal Rules of Civil Procedure compel the joinder of parties only when the "court cannot accord complete relief among existing parties" or where a party's absence may impair its ability to protect its interests or subject it to multiple claims. Fed. R. Civ. P. 19(a)(1); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 330 (S.D.N.Y. 2015) (declining to apply res judicata to claims against partnership where plaintiff's claims against individual partner and their spouse were previously dismissed with prejudice); *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 175 (S.D.N.Y. 2020) (defendant that committed the same type of violation in the same manner is in itself insufficient and does not require them to be joined as defendants in a single lawsuit). The Decision provided complete relief with respect to the Sages and the Trustee's decision not to join Florio in the avoidance action has not impaired Florio's ability to contest whether she was also a general partner in this action. Thus, because no court has reached a decision on the merits regarding Florio's partner status and she can still raise applicable defenses in this proceeding, res judicata cannot preclude the claim against Florio from proceeding here.

## CONCLUSION

Based on the foregoing, the Trustee respectfully submits that Defendants' motion to dismiss should be denied in its entirety.

Dated: August 16, 2023
        New York, New York

/s/ Seanna R. Brown

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*