**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
Marshall R. King
Gabriel Herrmann
Keith R. Martorana

*Attorneys for the UBS Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Proc. No. 10-05311 (CGM) |
| Plaintiff, | |
| v. | |
| UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) S.A.), UBS FUND SERVICES (LUXEMBOURG) S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., M&B CAPITAL ADVISERS SOCIEDAD DE VALORES, S.A., RELIANCE INTERNATIONAL RESEARCH LLC, LUXEMBOURG INVESTMENT FUND AND LUXEMBOURG INVESTMENT FUND U.S. EQUITY PLUS, as represented by their Liquidators MAÎTRE ALAIN RUKAVINA and PAUL LAPLUME, MAÎTRE ALAIN RUKAVINA and | |

PAUL LAPLUME, in their capacities as liquidators
and representatives of LUXEMBOURG
INVESTMENT FUND AND LUXEMBOURG
INVESTMENT FUND U.S. EQUITY PLUS,

                                        Defendants.

### UBS DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF THEIR MOTION TO
### <u>DISMISS THE SECOND AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 2

    I.    The Trustee Fails to Establish Any Basis for Jurisdiction Over UBSFSL or
UBSTPM.......................................................................................................... 2

        A.    The Trustee Fails to Plead Sufficient Minimum Contacts to
Establish Specific Jurisdiction Over UBSFSL or UBSTPM .................... 4

            1.    The Trustee Identifies No Jurisdictionally Significant
Contacts Between UBSFSL and the United States........................ 5

            2.    The Trustee Identifies No Jurisdictionally Significant
Contacts Between UBSTPM and the United States ..................... 7

        B.    The Trustee is not Entitled to Jurisdictional Discovery............................ 9

    II.    The Section 546(e) Safe Harbor Shields All of the Alleged Transfers
Because the Trustee Has Not Alleged with Particularity Actual Fraudulent
Intent Under Section 548(a)(1)(A)...................................................................... 10

    III.    The SAC Establishes UBS's Good Faith Defense................................................ 12

    IV.    The Trustee Has Not Plausibly Alleged that the UBS Defendants Were
Subsequent Transferees of Customer Property...................................................... 13

CONCLUSION..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Am. Girl, LLC v. Zembrka,*
  2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021)...........................................................................4

*APWU v. Potter,*
  343 F.3d 619 (2d Cir. 2003).................................................................................................9

*Bah v. Apple Inc.,*
  2021 WL 4894677 (S.D.N.Y. July 26, 2021) .......................................................................2

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.),*
  256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd,* 264 B.R. 303 (S.D.N.Y. 2001) .......................11

*Charles Schwab Corp. v. Bank of Am. Corp.,*
  883 F.3d 68 (2d Cir. 2018)...................................................................................................4

*Cromer Finance Ltd. v. Berger,*
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................................5, 6

*Daly v. Deptula (In re Carrozella & Richardson),*
  286 B.R. 480 (D. Conn. 2002)............................................................................................11

*Daventree Ltd. v. Republic of Azerbaijan,*
  349 F. Supp. 2d 736 (S.D.N.Y. 2004)...................................................................................4

*Deutsch v. JPMorgan Chase & Co.,*
  2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019).....................................................................10

*Dorfman v. Marriott Int'l Hotels, Inc.,*
  2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ..............................................................................8

*Fayetteville Invs. v. Com. Builders, Inc.,*
  936 F.2d 1462 (4th Cir. 1991) ............................................................................................14

*Feldman v. Silverleaf Resorts, Inc.,*
  2000 WL 35542530 (E.D.N.Y. Jan. 31, 2000) ......................................................................4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
  141 S. Ct. 1017 (2021).......................................................................................................2, 4

*Geltzer v. Barish (In re Geltzer),*
  502 B.R. 760 (S.D.N.Y. 2013)............................................................................................11

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Grove Press, Inc. v. Angleton*,
  649 F.2d 121 (2d Cir. 1981)....................................................................................8

*Kennedy v. Mondelez Glob. LLC*,
  2020 WL 4006197 (E.D.N.Y. July 10, 2020).........................................................15

*Knight v. Standard Chartered Bank*,
  531 F. Supp. 3d 755 (S.D.N.Y. 2021)......................................................................2

*In re Lifetrade Litig.*,
  2021 WL 1178087 (S.D.N.Y. Mar. 29, 2021) ..........................................................3

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
  260 B.R. 343 (Bankr. W.D.N.Y. 2001),
  *aff'd*, 2002 WL 32500567 (W.D.N.Y. June 21, 2002) ..........................................11

*Picard v. Banca Carige S.P.A*,
  2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022)..........................................3, 7

*Picard v. Banque Lombard Odier & Cie SA*,
  2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)...............................................3

*Picard v. BNP Paribas S.A. (In re Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018).....................................................................4

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012).....................................................................6

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209 (2022)..................11, 12

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ..............................................14

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011)...................................................................6, 7

*Picard v. Multi-Strategy Fund Ltd.*,
  2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022)........................................................12

*Picard v. Multi-Strategy Fund Ltd.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
  641 B.R. 78 (Bankr. S.D.N.Y. 2022)................................................................2, 3, 4

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Piotrowicz v. Techtronic Indus. N. Am.*,
  Inc., 2022 WL 2870811 (S.D.N.Y. July 21, 2022) ....................................................2

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) .................................................................................14

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)....................................................................................3

*Hau Yin To v. HSBC Holdings PLC*,
  2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) .................3

*Walden v. Fiore*,
  571 U.S. 277 (2014)...............................................................................................2

*Winston & Strawn v. Dong Won Sec. Co.*,
  2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002)...........................................................9

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)................................................................................8, 9

**RULES**

Fed. R. Civ. P. 9(b) ..............................................................................................10, 11

Fed. R. Civ. P. 10(c) .................................................................................................14

Defendants UBS Europe SE, Luxembourg Branch (f/k/a UBS (Luxembourg) S.A.) ("***UBS Lux***" or "***UBS SA***"), UBS Fund Services (Luxembourg) S.A. ("***UBSFSL***"), and UBS Third Party Management Company S.A. ("***UBSTPM***") (collectively, the "***UBS Defendants***") respectfully submit this reply in further support of their motion to dismiss the Second Amended Complaint ("***SAC***").[1]

## **PRELIMINARY STATEMENT**

UBSFSL and UBSTPM are not subject to personal jurisdiction in the United States. The Trustee has failed to make legally sufficient allegations of jurisdiction, and instead merely recounts those entities' roles as service providers to LIF-USEP. That UBSFSL and UBSTPM at times provided services relating to the administration of LIF-USEP is not disputed. Neither are the facts that these services were provided overseas, under contracts governed by foreign law, to a foreign investment fund that invested its own money with BLMIS. It is a blatant overreach for the Trustee to hale UBSFSL and UBSTPM into court in New York when he is not able to describe any meaningful contacts between them and the United States. The Trustee's expansive theory for jurisdiction boils down to the notion that any foreign party that "provid[es] the framework" which allows *another* foreign entity to operate—and those operations include U.S. financial transactions—makes the former subject to U.S. jurisdiction. If credited, such a theory would expand the scope of this Court's jurisdiction beyond its constitutional breaking point.

Moreover, the Trustee fails to state any viable claims against the UBS Defendants. He cannot avoid application of the section 546(e) safe harbor here by relying on conclusory allegations about the nature of BLMIS's enterprise without alleging the actual intent underlying each *specific transfer* he seeks to avoid. And even though the SAC on its face establishes the UBS Defendants'

---

[1] "***ECF No.___***" refers to Adv. Pro. No. 10-5311. Defined terms in the UBS Defendants' moving brief, ECF No. 289 (cited here as "***Mem.***") are incorporated herein. "***Opp.***" refers to the Trustee's Opposition, ECF No. 303.

good faith defense, the Trustee fails to state viable subsequent-transfer claims anyway, because his own allegations confirm that the transfers he seeks to recover from the UBS Defendants cannot possibly all constitute customer property.

Properly framed, the Second Amended Complaint against the UBS Defendants should be dismissed, and nothing in the Trustee's Opposition disturbs that conclusion. The Trustee simply does not have the authority, under the facts he has alleged, to pursue these claims in this Court against foreign defendants, or the ability to overcome the safe harbor and good faith defenses available to the UBS Defendants.

## ARGUMENT

I.  ### The Trustee Fails to Establish Any Basis for Jurisdiction Over UBSFSL or UBSTPM

The Trustee must make his case for jurisdiction solely on principles of specific personal jurisdiction. To do so, the Trustee must show that his claims "arise out of or relate to" UBSFSL's and UBSTPM's contacts with the United States. *Picard v. Multi-Strategy Fund Ltd.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 641 B.R. 78, 87–88 (Bankr. S.D.N.Y. 2022) (Morris, J.) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)); *see Bah v. Apple Inc.*, 2021 WL 4894677, at *2 (S.D.N.Y. July 26, 2021). That showing must be made "as to each claim"—i.e., each subsequent transfer—based on "suit-related conduct that creates a substantial connection with the forum." *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 768 (S.D.N.Y. 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (cleaned up). It is the Trustee's burden to show a relationship between his claim and each defendant's in-state activity. *Piotrowicz v. Techtronic Indus. N. Am., Inc.*, 2022 WL 2870811, at *5 (S.D.N.Y. July 21, 2022).

The Trustee does not meet his burden. His case for asserting jurisdiction over UBSFSL and UBSTPM is based on the amorphous theory that, in acting as LIF-USEP's agents, they

2

"provided the framework" for LIF-USEP to function, which in turn helped "facilitat[e]" transfers from foreign investment funds into New York—acts that took place entirely overseas. Opp. at 26–27. Courts have refused to premise jurisdiction on such tenuous, indirect contacts. *See, e.g.*, *In re Lifetrade Litig.*, 2021 WL 1178087, at *3–4 (S.D.N.Y. Mar. 29, 2021) (allegations that defendant "facilitated" transactions through which other entities "received substantial undisclosed fees" were "too tenuous to support the exercise of specific jurisdiction" (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018))); *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017) (no jurisdiction where "the passage of money through the U.S. bank accounts were [sic] merely incidental and passive, and not specifically directed by any of the [defendants]"), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).[2]

If the Court were to accept the Trustee's theory that merely "facilitating" and "provid[ing] the framework" for LIF-USEP's transactions is enough, then the reach of U.S. jurisdiction would expand exponentially, without any meaningful boundary. Every foreign party playing any sort of role in another foreign entity's U.S. financial transaction—no matter how incidental, passive, or tangential to that transaction—would be subject to jurisdiction here. It would ensnare everyone from those who maintain the computers the investor uses to carry out its transactions, to those who clean its floors and stock its supplies, to those who provide the scaffolding for its offices. Under

---

[2]  By contrast, in other recent BLMIS cases in which this Court has upheld the Trustee's jurisdictional allegations, defendants had U.S. contacts that were substantially more direct and significant than the UBS Defendants' alleged contacts here. *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2022 WL 2387523, at *3–4 (Bankr. S.D.N.Y. June 30, 2022) (Morris, J.) (subsequent transferee itself "directed its investments into [the] Fairfield [funds], which are managed by [a] New York partnership," and "high level executives of [defendant] met directly with Madoff in 2002 and 2008 in his New York City office"); *Picard v. Banca Carige S.P.A* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2022 WL 2387522, at *3–4 (Bankr. S.D.N.Y. June 30, 2022) (Morris, J.) (subsequent transferee itself "invested with New York-based BLMIS through Fairfield [fund]" and the Trustee's subsequent transfer claims were "directly related to [subsequent transferee's] investment activities with Fairfield and BLMIS"); *Multi-Strategy Fund*, 641 B.R. at 86–87 (Morris, J.) (subsequent transferee itself "met with" Fairfield's managers "in New York" and "invested in the [Fairfield] Funds with the specific purpose of having funds invested with BLMIS in New York").

the Trustee's theory, "personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns." *Feldman v. Silverleaf Resorts, Inc.*, 2000 WL 35542530, at *4 (E.D.N.Y. Jan. 31, 2000); *see Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004) (assertion of jurisdiction based on defendants' "facilitat[ion] [of] international financial transactions or money transfers" would, if accepted, "saddle[] the [court's jurisdiction] with an unwarranted breadth"). This Court should reject that jurisdictional overreach and grant UBSFSL's and UBSTPM's motion to dismiss.

### A.    *The Trustee Fails to Plead Sufficient Minimum Contacts to Establish Specific Jurisdiction Over UBSFSL or UBSTPM*

The Trustee fails to identify any "minimum contacts" by which either UBSFSL or UBSTPM "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court []here." *Multi-Strategy Fund*, 641 B.R. at 86 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018)). The Trustee fails to explain how those entities "engage[d] in business 'purposefully directed toward'" the United States—let alone that they did so "with respect to each claim[, i.e., transfer,] asserted." *Am. Girl, LLC v. Zembrka*, 2021 WL 1699928, at *6 (S.D.N.Y. Apr. 28, 2021) (quoting *Ford*, 141 S. Ct. at 1025 ("Plaintiff must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum . . . .")); *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

The Trustee argues that the following forum contacts are sufficient: allegations that UBSFSL and UBSTPM knew Madoff ran BLMIS out of New York, that the money received from clients to invest in LIF-USEP would be deposited with BLMIS in New York, that BLMIS in New York would have custody over LIF-USEP's investments, that LIF-USEP's investment strategy was to invest its funds into BLMIS in New York, and that the profits made from investing with

4

BLMIS would emanate from New York.  Opp. at 3–4.  This recitation does nothing to change the simple fact that mere knowledge of a *separate* foreign entity's U.S. contacts does not render one subject to U.S. jurisdiction.  There is nothing in the Trustee's Complaint or Opposition to support the notion that UBSFSL and UBSTPM themselves deliberately reached out beyond their home to direct their activities to New York.  Significantly, the Trustee is unable to allege that either UBSFSL or UBSTPM invested a single dollar via BLMIS or into any fund that invested via BLMIS.

1.      **The Trustee Identifies No Jurisdictionally Significant Contacts Between UBSFSL and the United States**

UBSFSL does not have relevant ties to New York or the United States, and would not reasonably expect to be subject to jurisdiction here.  UBSFSL is a Luxembourg company, headquartered in Luxembourg.  It does not have offices in New York and does not conduct business in New York.  UBSFSL did not send funds to or receive funds from BLMIS in New York.  Any actions that UBSFSL took in its capacity as a service provider to LIF-USEP were performed for a non-U.S. investment fund, and occurred outside the United States.  Any fees paid to UBSFSL as a service provider were paid abroad, under contracts governed by foreign law.  Allegations that UBSFSL engaged in a smattering of fax and telephone communications with the United States from overseas – communications that are not alleged to have had any connection to the subsequent transfers at issue – are all that the Trustee has in the way of concrete U.S. contacts, *see* Opp. at 30; these are too tenuous to support the exercise of specific jurisdiction.

While the Trustee recites at length the various alleged services provided by UBSFSL to LIF-USEP as its administrator, *see* Opp. at 28–29 and SAC ¶ 155, not one of those tasks is alleged to have been performed in or directed to the United States—let alone to have "related" in any way to any of the subsequent transfers at issue here.  Rather, these alleged tasks were conducted entirely

5

overseas by and between foreign entities, pursuant to contracts governed by foreign (Luxembourg) law. That inconvenient reality distinguishes this case from the Trustee's cited authority, *Cromer Finance Ltd. v. Berger*, which held that the offshore fund administrators of an investment fund that "was entirely managed out of New York" and "available to United States investors" were subject to jurisdiction here for purposes of securities fraud claims brought by investors in the fund. 137 F. Supp. 2d 452, 476 (S.D.N.Y. 2001). The Trustee uses *Cromer* to argue that UBSFSL is subject to jurisdiction because it "depended upon information received from New York" in order to perform as LIF-USEP's administrator. Opp. at 29; SAC ¶ 70. That this is not the correct takeaway from *Cromer* is clear in context: "[Offshore fund administrators] sent approximately 80 letters on [administrator's] letterhead with enclosed subscription documents to individuals in the United States soliciting investors for the Fund, sent bills to fund manager in New York for approval prior to payment by the fund and received from the United States all of the information from which it prepared the statements it disseminated as Fund administrators, and made countless mailings to investors or to the agents of investors residing in the United States." *Cromer*, 137 F. Supp. 2d at 476–77. What motivated the court in *Cromer* was the amalgam of evidence that the fund administrators *directed* actions toward the United States. No such allegations are or could be propounded about UBSFSL by the Trustee here.

Finally, while UBSFSL is alleged to have received subsequent transfers, the Trustee does not allege that UBSFSL ever sent or received any funds to or from the United States—or even that it ever maintained any bank or brokerage accounts in the United States. Thus, unlike in other BLMIS-related cases in which jurisdiction has been upheld, UBSFSL is not itself a fund that "transferr[ed] assets to and from the United States" in order to invest with BLMIS. *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) (exercising

jurisdiction over fund that "transferr[ed] assets to and from the United States"); *see, e.g.*, *supra* note 2 (collecting cases); *see also, e.g.*, *Picard v. Bureau of Lab. Ins. (In re Madoff)*, 480 B.R. 501, 517–18 (Bankr. S.D.N.Y. 2012) (subsequent transferee "invested tens of millions of dollars" in a BLMIS feeder fund "with the specific purpose of having funds invested in BLMIS in New York"). That critical point of distinction compels a different outcome here.

### 2.    The Trustee Identifies No Jurisdictionally Significant Contacts Between UBSTPM and the United States

UBSTPM likewise lacks relevant ties to New York or the United States, and would not reasonably expect to be subject to jurisdiction here.  UBSTPM is a Luxembourg company, headquartered in Luxembourg.  It does not have offices in New York and does not conduct business in New York.  UBSTPM did not send funds to or receive funds from BLMIS in New York.  Any actions that UBSTPM took in its capacity as a service provider to LIF-USEP were performed for a non-U.S. investment fund, and occurred outside the United States.  Any fees paid to UBSTPM as a service provider were paid abroad, under contracts governed by foreign law.

Again, the Trustee's reliance on the various alleged services provided by UBSTPM to LIF-USEP as its portfolio manager, *see* Opp. at 31, fails because not one of its services is alleged to have been performed in or directed to the United States, nor to have "related" in any way to any of the subsequent transfers at issue.  UBSTPM did not receive any funds in the United States; and UBSTPM did not itself "transfer[] assets to and from the United States" in order to invest with BLMIS.  *Maxam Absolute Return Fund*, 460 B.R. at 118.  The subsequent transfer claims against UBSTPM simply do not relate to any investment activities by UBSTPM.  *See Banca Carige S.P.A.*, 2022 WL 2387522, at *3–4.

The Trustee also attempts to premise jurisdiction over UBSTPM on a so-called "agency" theory, claiming that UBS Lux "retained control over UBSTPM with respect to the management

of LIF-USEP's portfolio," in that "UBSTPM's role as LIF-USEP's manager was dictated by" an

Advisory Committee allegedly formed by UBS Lux.  Opp. at 31–32.  Thus, the Trustee claims,

UBS Lux's "numerous connections with New York should be imputed to UBSTPM."  *Id.* at 31.

The Trustee does not articulate a valid "agency" theory of jurisdiction.  To the extent the

Trustee's allegations make any sense at all, they perhaps assert that UBS Lux was a principal and

UBSTPM was its agent.  *See, e.g.*, *id.* at 32 ("UBSTPM's role . . . *was dictated* by its Advisory

Committee, which was *formed by UBS [Lux]*" (emphases added)); *id.* ("responsibilities [were]

shifted *from* UBS [Lux] *to* UBSTPM" (emphases added)); *id.* (describing "directives [from UBS

Lux Advisory Committee] that UBSTPM was 'to act upon and implement'" (citation omitted)).

Thus, the Trustee seeks to impute the alleged New York contacts of a foreign *principal* (UBS Lux)

to a foreign *agent* (UBSTPM).  That argument gets the law of agency jurisdiction backwards.  As

even the Trustee's own cases confirm, a *principal* may be subject to jurisdiction if its *agent* has

"acted in [the forum] for the [*principal*'s] benefit."  *Grove Press, Inc. v. Angleton*, 649 F.2d 121,

122 (2d Cir. 1981); *see Dorfman v. Marriott Int'l Hotels, Inc.*, 2002 WL 14363, at *10 (S.D.N.Y.

Jan. 3, 2002) ("a corporate parent may act as an agent for a foreign subsidiary, thereby subjecting

the latter to jurisdiction in the forum inhabited by the parent").  The Trustee cites no authority for

the proposition that an out-of-state agent can be subjected to jurisdiction based on its principal's

alleged actions within the forum.  The Trustee also fails to establish that "the activities performed

in New York for [the] foreign corporation by [the] agent . . . are sufficiently important to the

foreign entity that the corporation itself would perform equivalent services if no agent were

available."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

Finally, the Trustee nakedly asserts that the "Advisory Committee's work" constitutes

"additional contacts" with the United States, Opp. at 32—yet he alleges nothing about what this

Advisory Committee actually did, and does not allege that any of its "activities [were] performed in New York" or were at all related to the subsequent transfers at issue here. *Wiwa*, 226 F.3d at 95. The SAC does not even mention the Advisory Committee, highlighting its obvious lack of "importan[ce]" to the Trustee's case. *Id.*

## B. *The Trustee is not Entitled to Jurisdictional Discovery*

The Trustee's alternative request for jurisdictional discovery should be rejected. The Trustee has conducted one of the most extensive Rule 2004 investigations in the history of the Bankruptcy Code. The trove of documentary and testimonial evidence he has amassed includes "over 11,700 boxes of paper documents and 19,000 media sources containing electronically stored information" culled from the files of BLMIS. Dkt. 132 (Initial Opp.) at 55 n.24. It also includes approximately 60,000 pages of UBS documents and the deposition testimony of a UBS corporate representative, *see* Adv. Pro. 10-04285 (CGM), ECF No. 128 (Pergament Decl.) ¶¶ 4, 6, Exs. 46, 64, over 20,000 additional documents produced by the UBS Defendants more recently pursuant to Hague Convention requests, and more than 4.6 million documents produced by the other Defendants in the case, *see* Adv. Pro. 10-04285 (CGM), ECF No. 146-6 (Aug. 7, 2012 Ltr. to Ct.) at 1. Indeed, as the Trustee's own cited cases make clear, the vast breadth of discovery that the Trustee has already amassed here far exceeds the typical scope of "limited" jurisdictional discovery a plaintiff might be permitted in response to a motion to dismiss. *See, e.g.*, Opp. at 42 (citing *Winston & Strawn v. Dong Won Sec. Co.*, 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (permitting "limited" jurisdictional discovery—confined to 30 days, and consisting only of "one deposition" and "document requests"—where plaintiff had "no . . . documentary evidence" from defendants)). The Trustee has had "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). He is not entitled to keep digging.

II.     **The Section 546(e) Safe Harbor Shields All of the Alleged Transfers**
        **Because the Trustee Has Not Alleged with Particularity Actual**
        **Fraudulent Intent Under Section 548(a)(1)(A)**

The section 546(e) "safe harbor" shields all of the initial transfers from BLMIS to LIF-USEP alleged in the SAC because: (a) they are transfers and settlement payments made "in connection with a securities contract," and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker and multiple financial institutions. *See* Mem. at 15–20. The Trustee does not contest these points, and thus has conceded that the alleged initial transfers satisfy these elements of the section 546(e) safe harbor. *See, e.g.*, *Deutsch v. JPMorgan Chase & Co.*, 2019 WL 4805689, at *5 (S.D.N.Y. Sept. 30, 2019) ("Plaintiff does not address this argument at all in his opposition papers, and therefore concedes it.").

Instead, the Trustee contends that section 546(e) does not apply because he asserts avoidance claims only under section 548(a)(1)(A), which are not subject to the 546(e) safe harbor. Opp. at 50. But as the UBS Defendants have demonstrated, the facts alleged in the SAC fall short of stating a claim under section 548(a)(1)(A). *See* Mem. at 24–27.

Section 548(a)(1)(A) permits a trustee to avoid a transfer only if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud" creditors. On its face, the statute requires a trustee to plead and prove the actual intent underlying the *specific transfers* at issue, rather than relying exclusively on the general nature of the debtor's enterprise. And as the Trustee seems to concede, such allegations must be pleaded with the particularity demanded by Rule 9(b). Opp. at 44.

The Trustee fails to allege any transfer-specific facts relevant to BLMIS's actual intent. Citing the Ponzi scheme presumption, he instead relies on allegations about BLMIS's business in

general.  *See* Opp. at 48–50.[3]  As Judge Menashi has noted, applying that judge-made presumption

to cases such as this one is, at best, "questionable."  *Citibank*, 12 F.4th at 202 (Menashi, J.,

concurring); *see* Mem. at 25–26.  The Trustee has no substantive response to the *Citibank*

concurrence.

In the alternative, the Trustee claims to satisfy his Rule 9(b) pleading burden by alleging

"badges of fraud"—specifically, BLMIS's delay in registering as an investment advisor with the

SEC, its false filings with the SEC, criminal convictions of Madoff and those around him,

commingling of funds, false reporting, and the like.  Opp. at 48–49.  But the cited paragraphs of

the SAC (¶¶ 24, 35–36, 38–39, 43, 45–46, 51, 53, 59) do not relate to the initial transfers at issue

here, and they do nothing to allege how the return of principal to LIF-USEP could have been made

with actual intent to hinder, delay, or defraud BLMIS investors.  The Trustee does not plead at all,

much less with particularity, that *those specific transfers* were made without consideration.  Nor

could he; transfers by which BLMIS simply returned previous investments were made for

consideration and are not subject to avoidance.  *Geltzer v. Barish (In re Geltzer)*, 502 B.R. 760,

770 (S.D.N.Y. 2013) ("[A] trustee is not permitted to sue innocent investors in a Ponzi scheme

under fraudulent transfer law for the return of their principal . . . .").[4]  The Trustee fails to allege

---

[3]  The Ponzi scheme presumption has been accepted in several cases but is not settled law because the Second Circuit has never applied it in a case where the issue was disputed or "held directly that the presumption is well-founded."  *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 202 n.7 (2d Cir. 2021) (Menashi, J., concurring), *cert. denied*, 142 S. Ct. 1209 (2022).  Moreover, some Second Circuit courts have noted that "[s]imply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance."  *Daly v. Deptula (In re Carrozella & Richardson)*, 286 B.R. 480, 489 (D. Conn. 2002); *see Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001), *aff'd*, 2002 WL 32500567 (W.D.N.Y. June 21, 2002); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 680–81 (Bankr. S.D.N.Y. 2000) ("Not every transaction which has the effect of 'exacerbating the harm to creditors by increasing the amount of claims while diminishing the debtor's estate' is a fraudulent conveyance.  Section 548 is not a catch-all provision."), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001).

[4]  *See also Citibank*, 12 F.4th at 203 (Menashi, J., concurring) (noting that BLMIS customers' deposits of principal into their accounts create valid contractual antecedent debts).

whether any of the initial transfers contained fictitious profits (and if so, which ones and to what

extent).  Merely listing a large number of transfers and asking the Court to assume they were all

made with intent to defraud falls well short of the Trustee's pleading burden.  His claims should

be dismissed.

III.     **The SAC Establishes UBS's Good Faith Defense**

The Trustee similarly disregards the standard the Second Circuit set forth in *Citibank*

regarding the applicability of the section 550(b) good faith defense.  *See Picard v. Citibank, N.A.*

*(In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 191–92 (2d Cir. 2021).  The Second Circuit

made clear that, even if a complaint alleges that a transferee knew facts that would have led a

reasonable person to conduct a further inquiry into a debtor-transferor's possible fraud, the court

must still examine "whether diligent inquiry by the transferee would have discovered the

fraudulent purpose of the transfer."  *Id.* at 191–92; *cf Picard v. Multi-Strategy Fund Ltd.*,

2022 WL 16647767, at *3, 7 n.3 (S.D.N.Y. Nov. 3, 2022) (reasoning that although section 546(e)

is an affirmative defense, where the Trustee pleads facts such that section 546(e) otherwise would

apply based on the face of the complaint, to overcome a motion to dismiss, the Trustee is required

to affirmatively allege countervailing "circumstances demonstrating why the facially applicable

defense" does not preclude his suit).

As set forth in the Memorandum, Madoff successfully deployed practices that prevented

the most sophisticated investors, investigators, and even the SEC from uncovering the scheme.

*See* Mem. at 29–31.  Even though the Trustee questions the adequacy of the SEC investigation and

the Defendants' diligence into BLMIS, *see* Opp. at 61–62, the Trustee does not—and cannot—

dispute that Madoff successfully thwarted outside attempts to obtain information about BLMIS

that could have uncovered the scheme, and it is because of Madoff's calculated efforts that any

diligent inquiry by the Defendants would not have discovered the fraud.  Therefore, under
*Citibank*, the SAC establishes the UBS Defendants' good faith defense.

IV.    **The Trustee Has Not Plausibly Alleged that the UBS Defendants
Were Subsequent Transferees of Customer Property**

The Trustee mischaracterizes the UBS Defendants' argument that the SAC does not
plausibly allege that the UBS Defendants received customer property.  Mem. at 31–35.  Contrary
to the Trustee's contention that these are "tracing arguments" that are "inappropriate on a motion
to dismiss," *see* Opp. at 56, the allegations in the SAC are simply *impossible* as a matter of fact
and common sense, and the allegations in the SAC make clear that many of the transfers allegedly
received by the UBS Defendants *could not have been* customer property in the first place.

The Trustee's Opposition does not even attempt to reconcile how, on the one hand, "[t]he
Trustee seeks only to avoid two-year transfers under 548(a)(1)(A)," Opp. at 50, while, on the other
hand, the SAC seeks to recover alleged Subsequent Transfers pre-dating the two-year lookback
period (i.e., transfers allegedly made *before* December 11, 2006).  *See* SAC ¶ 271(a) (alleging that
UBS SA received $291,368 in fees for serving as LIF-USEP's official manager "from September
2005 through at least April 2006"); *id.* ("UBS SA received at least $5,162,211 in fees . . . from
September 2005 to December 2008"); *id.* ¶ 271(b) ("UBSFSL received at least $747,560 in
fees . . . from September 2005 to December 2008"); *id.* ¶ 271(c) ("UBSTPM received at least
$10,590,437 in fees . . . from May 2006 to December 2008"); *see also* SAC Ex. B at 7 (showing
that the first Initial Transfer was allegedly made on August 2, 2007, sixteen months *after* the first
alleged Subsequent Transfer); *see also* Mem. at 34–35.

Thus, it is established from the face of the SAC that some portion of the alleged Subsequent
Transfers described in paragraph 271 are not customer property subject to recovery.  The issue is
not simply that the Trustee needs to provide more detail to meet his pleading burden.  Indeed, no

13

additional detail could cure the impossibility of these allegations because, as a matter of basic math and common sense, some portion of the alleged subsequent transfers to the UBS Defendants pre-dated all of the alleged initial transfers to LIF-USEP and thus could not possibly constitute customer property.

The Court can dismiss the SAC, at least in part, on this basis alone because Exhibit B to the SAC and the Trustee's admission in his Opposition make clear that the amounts described in paragraph 271 cannot all be customer property. An exhibit attached to a complaint is part of the pleading "for all purposes." Fed. R. Civ. P. 10(c). "In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (cleaned up)).[5] Nor is there any information asymmetry that would justify relaxing the pleading standard here, because the Trustee issued Rule 2004 subpoenas to the Defendants and received the documents forming the basis for the SAC. *See* Opp. at 43 ("The Trustee acknowledges that he has received documents from UBS SA and nondefendant UBS AG through the Rule 2004 process."); *id.* at 55 ("the Trustee did receive some documents pursuant to Rule 2004 subpoenas"). The Trustee's allegations informed by that investigation are themselves what compel dismissal here.

Because the face of the SAC demonstrates that a substantial portion of the transfers the Trustee seeks to avoid could not have been Subsequent Transfers by LIF-USEP, and the SAC does

---

[5]  To be clear, the UBS Defendants are not asserting that the Trustee is impermissibly seeking to recover the value of initial transfers from multiple subsequent transferees, which will be remedied by limiting the Trustee to "a single satisfaction." *See, e.g.*, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.). Rather, the SAC establishes on its face that a portion of the alleged subsequent transfers to the UBS Defendants *cannot* be comprised entirely of customer property.

nothing to attempt to tie any Initial Transfer to any payment made by LIF-USEP to UBS, the SAC should be dismissed because it does not plausibly plead that UBS received customer property that was transferred from BLMIS to LIF-USEP in avoidable transfers. *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) ("where the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss") (citation omitted).  At a minimum, the Court should dismiss the claim with respect to any payments to the UBS Defendants made before August 2, 2007.

## **CONCLUSION**

For all of the foregoing reasons and those stated in the UBS Defendants' moving papers, the Court should grant the motion to dismiss the Second Amended Complaint in its entirety, with prejudice, and provide such other relief as is necessary and just.

Dated: August 18, 2023  
      New York, New York

Respectfully Submitted,

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Marshall R. King*  
Marshall R. King  
Gabriel Herrmann  
Keith R. Martorana

200 Park Avenue  
New York, New York 10166  
Tel.: (212) 351-4000  
mking@gibsondunn.com  
gherrmann@gibsondunn.com  
kmartorana@gibsondunn.com

*Attorneys for the UBS Defendants*

15