# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ESTATE OF JAMES M. GOODMAN; and AUDREY GOODMAN, individually, and in her capacity as Personal Representative of the Estate of James M. Goodman,<br><br>    Defendants. | Adv. Pro. No. 10-05079 (SMB) |

**EXPERT REPORT OF**
**LISA M. COLLURA, CPA, CFE, CFF**

**Proof of Transfers**
**To the Goodman Defendants**

**June 14, 2019**

**TABLE OF CONTENTS**

I. PROFESSIONAL BACKGROUND ................................................................................................ 2

II. SCOPE OF ASSIGNMENT ............................................................................................................. 2

III. METHODOLOGY .......................................................................................................................... 4

IV. SUMMARY OF FINDINGS ........................................................................................................... 5

V. RECONCILIATION OF CASH TRANSACTIONS FOR THE GOODMAN ACCOUNT ........... 6
    A.    OVERVIEW    6
    B.    BLMIS BANK ACCOUNTS    6
    C.    BLMIS CUSTOMER FILES    7
    D.    DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE GOODMAN ACCOUNT  8
    E.    RESULTS OF RECONCILIATION    8

VI. TRACING CASH WITHDRAWALS FROM THE GOODMAN ACCOUNT .............................. 9
    A.    OVERVIEW    9
    B.    RESULTS OF TRACING    10

VII. SIGNATURE AND RIGHT TO MODIFY .................................................................................. 11

VIII. LIST OF EXHIBITS ................................................................................................................... 12

# I. PROFESSIONAL BACKGROUND

1.      I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with 25 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.      I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.      I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA), and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience, and qualifications, including my testimony in the last four years.

# II. SCOPE OF ASSIGNMENT

4.      Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme through the investment advisory business of BLMIS (the "IA Business"). On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of

2

BLMIS, including all records of the cash transactions related to the BLMIS IA Business customer accounts as far back as the records allow.

5.  This report should be read in conjunction with my Expert Report regarding the Reconciliation of Cash Transactions for All BLMIS Customers and Analysis of IA Business Cash Activity dated January 16, 2019 (the "Collura January 2019 Report").[1]

6.  For this report, I was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the Goodman Defendants'[2] customer account at BLMIS that is at issue in this matter (the "Goodman Account"[3]) reconciled to available documentation; and

- Whether, based on my review of available bank records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Goodman Account during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced to bank accounts held by, or for the benefit of, the Goodman Defendants.

7.  For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.*,

---

[1] My findings and conclusions rendered in the Collura January 2019 Report, along with the accompanying Exhibits to that report are all incorporated by reference herein. All capitalized terms that are defined in the Collura January 2019 Report shall have the same meaning in this report.

[2] The defendants in this matter are the Estate of James M. Goodman and Audrey Goodman (collectively, the "Goodman Defendants"). The original defendant in this adversary proceeding, James M. Goodman, died during the pendency of this action. The Estate of James M. Goodman and Audrey Goodman, in her capacity as Personal Representative of the Estate of James M. Goodman, were substituted in place of James M. Goodman on September 6, 2012.

[3] The Goodman Defendants maintained BLMIS customer account 1EM068 under the name "JAMES M GOODMAN & AUDREY M GOODMAN T/I/C" (prior to January 1996, the name on this account was "JAMES M GOODMAN & AUDREY M GOODMAN JT WROS" – *see* AMF00088677-79).

3

amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals, or documents produced to the Trustee related to the Goodman Account). For purposes of this report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.*, BLMIS's bank account) to another bank account (*e.g.*, the Goodman Defendants' bank account).

8. This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

9. FTI is being compensated at a rate of $670 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

### III. METHODOLOGY

10. To determine whether the cash transactions reflected on the customer statements for the Goodman Account reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described in the Collura January 2019 Report. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in BLMIS customer files, as well as documents produced to the Trustee related to the Goodman Account. Based on my review and analysis of these materials, I identified the cash transactions related to the Goodman Account that reconciled to these documents.

11. Next, to determine whether the cash withdrawals reflected on the customer statements for the Goodman Account during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Goodman Defendants, I again used the available information from BLMIS bank records. In addition, I reviewed records produced to the

4

Trustee by a third-party financial institution, Northern Trust Company. Using these available bank records, I identified the recipients of the transfers from BLMIS.

12.     The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

**IV. SUMMARY OF FINDINGS**

13.     Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- For my reconciliation analysis, I analyzed the cash transactions in the Goodman Account from January 1993 to December 2008. During this time period, the customer statements for the Goodman Account reflected 37 cash deposit and withdrawal transactions. I reconciled 24 of these cash transactions reflected on the customer statements for the Goodman Account, including all of the cash transactions in the 10 Year Period, to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman Account. I was unable to complete my reconciliation for the remaining cash transactions reflected on the customer statements for the Goodman Account due to the unavailability of records related to transactions dated before December 1998. However, based on my review of documents contained in the customer file maintained at BLMIS for the Goodman Account, I have not found any instance of the Goodman Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman Account.

- For my tracing analysis, I analyzed the cash withdrawals from the Goodman Account during the Two Year Period, totaling $1,975,000. Based on available bank records from BLMIS and records produced to the Trustee by a third-party financial institution,

5

Northern Trust Company, I traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Goodman Account during the Two Year Period to a bank account held by James M. Goodman, defendant Audrey Goodman, and Bruce L. Goodman.

**V. RECONCILIATION OF CASH TRANSACTIONS FOR THE GOODMAN ACCOUNT**

A. *OVERVIEW*

14. The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI, as described in the Principal Balance Calculation Report, included the cash transactions for the Goodman Account. From January 1993 to December 2008, the customer statements for the Goodman Account reflected 37 cash transactions, which consisted of nine cash deposits into the Goodman Account totaling $3,000,000 and 28 cash withdrawals from the Goodman Account totaling $4,800,000. I was tasked with reconciling these 37 cash transactions to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman Account. *See* **Exhibit 3** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 6** – "Reconciliation and Tracing Results – Goodman Account."

B. *BLMIS BANK ACCOUNTS*

15. Of the 37 cash transactions reflected on the customer statements for the Goodman Account, nine occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described in the Collura January 2019 Report. I reconciled all nine cash transactions reflected on the customer statements for the Goodman Account during the period December 1998 to December 2008 (the 10 Year Period, as defined in the Collura January 2019 Report) to available BLMIS bank records, including monthly bank statements, copies of deposited checks and deposit slips, and copies of cancelled checks. The nine cash transactions were reconciled to the BLMIS bank accounts as follows:

6

- 703 Account – two transactions (deposits via check)
- 509 Account – seven transactions (withdrawals via check)

16. Based on the results of my reconciliation of the cash transactions in the Goodman Account to available BLMIS bank records, as well as the results of my Global Reconciliation as further described in the Collura January 2019 Report, I can reasonably infer that if BLMIS bank records prior to December 1998 were available to me, I would be able to reconcile the pre-December 1998 cash transactions in the Goodman Account.

C. *BLMIS CUSTOMER FILES*

17. In addition to reconciling the cash deposit and withdrawal transactions for the Goodman Account to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Goodman Account.

18. Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number. These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, BLMIS customer agreements, as well as trust and other agreements.

19. As part of my analysis, I identified the customer file for the Goodman Account within BLMIS's records. I reviewed the documents contained in this customer file to identify correspondence that related to the cash transactions reflected on the customer statements for the Goodman Account. I identified letters and/or other correspondence in this customer file that support 21 of the 37 cash transactions in the Goodman Account. One of these letters, which is a request for a cash withdrawal from the Goodman Account, is attached as **Exhibit 4** and is described further below:

- In a facsimile dated October 10, 2008, James M. Goodman states, "Please be kind enough to withdraw a check in the amount of $500,000.00 from Audrey / James M Goodman's Acct."

7

20.     Furthermore, based on my review of the documents contained in the customer file for the Goodman Account, I have not found any instance of the Goodman Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman Account.

D. *DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE GOODMAN ACCOUNT*

21.     As of the date of this report, documents have been produced to the Trustee consisting of, among other things, correspondence relating to the cash transactions in the Goodman Account.[4]  In addition, the Trustee has received documents related to the Goodman Account from Peter E. Buell, CPA and an accounting firm, Sosnik, Bell & Co., LLC.  These documents include, among other things, electronic spreadsheets and schedules detailing activity in the Goodman Account, including cash deposit and withdrawal transactions.  I reconciled six of the 37 cash transactions reflected on the customer statements for the Goodman Account to these documents produced to the Trustee.

E. *RESULTS OF RECONCILIATION*

22.     In total, based on my analyses described above, I reconciled 24 of the 37 cash transactions reflected on the customer statements for the Goodman Account, including all of the cash transactions in the 10 Year Period, to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman Account.  **Exhibit 3**, which lists each of the 37 cash transactions for the Goodman Account, contains three columns that indicate the results of my reconciliation to each of these sources of information.

23.     I was unable to complete my reconciliation for the remaining cash transactions reflected on the customer statements for the Goodman Account due to the unavailability of

---

[4] The documents that I used in my reconciliation analysis were produced to the Trustee by Bruce Goodman.

8

records related to transactions dated before December 1998. However, as noted above, I have not found any instance of the Goodman Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman Account.

**VI. TRACING CASH WITHDRAWALS FROM THE GOODMAN ACCOUNT**

*A.  OVERVIEW*

24. The available BLMIS bank records, as described in the Collura January 2019 Report, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to accounts held by, or for the benefit of the Goodman Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

25. During the Two Year Period, the customer statements for the Goodman Account reflected five cash withdrawal transactions totaling $1,975,000. These cash withdrawal transactions were in the form of checks written from the 509 Account.

26. Tracing withdrawals via check requires a legible copy of a cancelled check. The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check. Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible. In any event, when possible, I identified and captured all available and legible information from the cancelled checks written from the 509 Account related to withdrawals from the Goodman Account.

9

27.     In addition, to trace the cash withdrawals from BLMIS, I reviewed documents produced to the Trustee by Northern Trust Company.[5]

B.  *RESULTS OF TRACING*

28.     **Exhibit 5** summarizes the results of my Receiving Bank analysis and my review of bank records produced to the Trustee by Northern Trust Company.[6]  This exhibit lists the bank account I identified by tracing cash withdrawals from BLMIS during the Two Year Period and supports that 100% of the total dollar amount of withdrawals reflected on the customer statements for Goodman Account during the Two Year Period went to a bank account held by James M. Goodman, defendant Audrey Goodman, and Bruce L. Goodman.[7]

---

[5] I also reviewed documents produced to the Trustee by JPMorgan Chase Bank.  However, these records related to bank accounts that did not receive transfers from BLMIS during the Two Year Period.  *See* JPM-GOODMAN2_00000001 – 145.

[6] *See also* **Exhibit 6**.

[7] Between June 2008 and January 2010, the account holders of Northern Trust account xxxxxx2429 were "James M Goodman, Audrey M Goodman, and Bruce L Goodman," as reflected in the bank records produced to the Trustee by Northern Trust. See 10-05079_NTC000009 – 10-05079_NTC000093.  The account holders of account xxxxxx2429 prior to May 2008, the first month for which records were produced to the Trustee for this bank account, were James M. Goodman, or James M. Goodman and Audrey M. Goodman, based on the endorsement on the back of the cancelled checks from BLMIS bank records.  *See* **Exhibit 6**.

10

## VII. SIGNATURE AND RIGHT TO MODIFY

29.     This report and the exhibits contained herein present my findings and the bases thereof.  To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
June 14, 2019

11

## VIII. LIST OF EXHIBITS

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of All Cash Transactions in the Goodman Account
Exhibit 4:  Letter from BLMIS Customer File for the Goodman Account
Exhibit 5:  Results of Tracing Analysis – Goodman Account (*During the Two Year Period*)
Exhibit 6:  Reconciliation and Tracing Results – Goodman Account