Christopher R. Harris
Thomas J. Giblin
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Attorneys for IOM Nominees*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, and PLATINUM ALL WEATHER FUND LIMITED,<br><br>Defendants. | Adv. Pro. No. 12-01697 (CGM) |

**ABN AMRO RETAINED NOMINEES (IOM) LIMITED'S ANSWER TO THE AMENDED COMPLAINT**

Defendant ABN AMRO Retained Nominees (IOM) Limited, f/k/a ABN AMRO Fund Services (Isle of Man) Nominees Limited, and f/k/a Fortis (Isle of Man) Nominees Limited ("IOM Nominees"), by and through its undersigned counsel, hereby answers the Amended Complaint of plaintiff Irving H. Picard (the "Trustee" or "Plaintiff"), Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard L. Madoff, ECF No. 141 (" Amended Complaint" or "AC").

IOM Nominees makes this Answer only on behalf of itself and not on behalf of any other entity, whether related or otherwise. IOM Nominees expressly reserves the right to amend this Answer, or seek leave to amend this Answer, and to modify and/or assert all claims and defenses permitted by law. To the extent that any footnote in the Amended Complaint requires a response separate from IOM Nominees' response to the paragraph containing the footnote, IOM Nominees denies each and every footnote unless expressly admitted. In addition, allegations that purport to state a legal conclusion do not require a response; however, to the extent that a response is required, such allegations are denied. IOM Nominees denies any averments in the headings and subheadings of the Amended Complaint. IOM Nominees denies that the Trustee is entitled to any relief. IOM Nominees repeats, realleges, and incorporates this statement in each paragraph contained in this Answer as if fully set forth therein.

With respect to specific paragraphs of the Amended Complaint, IOM Nominees responds as follows:

1.    The allegation in Paragraph 1 consists of characterizations of the Trustee's claims and legal conclusions, to which no response is required. To the extent a response is required, IOM Nominees denies the allegation in Paragraph 1.

2.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in the first and second sentences of Paragraph 2, except to admit that IOM

Nominees received certain payments from Fairfield Sentry and Fairfield Sigma on behalf of certain

of its customers, including Platinum, who were the beneficial owners of those payments.  IOM

Nominees admits that it transferred those payments to the customers on whose behalf it received

them.  IOM Nominees otherwise denies the allegations in Paragraph 2 to the extent they purport

to characterize the terms of any transfers to IOM Nominees and all remaining allegations.

3.    IOM Nominees admits that it received certain payments from Fairfield Sentry on

behalf of Platinum and that those payments were then transferred to Platinum.  To the extent

Paragraph 3 refers to "agreements" or "requests," IOM Nominees respectfully refers this Court to

the relevant documents for a complete and accurate statement of their contents, and denies any

allegations inconsistent therewith.    IOM Nominees otherwise denies the allegations in

Paragraph 3.

4.    IOM Nominees admits that it received certain payments from Fairfield Sentry and

Fairfield Sigma on behalf of certain customers who were the beneficial owners of those payments.

IOM Nominees avers that those customers were Seven Seas International Fund Ltd. and ABZ

assetX World Selection Ltd., and admits that those payments were transferred by IOM Nominees

to those entities.  IOM Nominees otherwise denies the allegations in Paragraph 4 to the extent they

purport to characterize the terms of any transfers to IOM Nominees and all remaining allegations.

5.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in the first and second sentences of Paragraph 5.  IOM Nominees denies all

remaining allegations in Paragraph 5.

6.    To the extent the allegations in Paragraph 6 consist of legal conclusions, no

response is required.  IOM Nominees otherwise lacks knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 6. To the extent a response is necessary, IOM Nominees denies the allegations in Paragraph 6.

7.      IOM Nominees admits the allegations in the first two sentences of Paragraph 7. The third sentence of Paragraph 7 consists of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies that this Court has jurisdiction to enter a final order or judgment in this proceeding.

8.      The allegations in Paragraph 8 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies the allegation in the first sentence of Paragraph 8. IOM Nominees admits that the Trustee consents to entry of final orders or judgments by this Court if it is determined that the consent of the parties is required for this Court to enter final orders or judgments consistent with Article III of the U.S. Constitution, but states that IOM Nominees does not so consent.

9.      The allegations in Paragraph 9 consist of legal conclusions to which no response is required. To the extent a response is required, and without conceding the propriety of jurisdiction, IOM Nominees admits that venue in this judicial district is proper under 28 U.S.C. § 1409.

10.     The allegations in Paragraph 10 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees admits that the Trustee purports to bring this proceeding pursuant to the statutory provisions referenced in Paragraph 10, but otherwise denies the allegations in Paragraph 10.

11.     The allegations in Paragraph 11 appear to be based on publicly available information regarding certain investigations by law enforcement and regulatory bodies; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

12.    The allegations in Paragraph 12 appear to be based on publicly available information; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

13.    The allegations in Paragraph 13 purport to characterize a court order; the order speaks for itself and only provides as stated therein.

14.    The allegations in Paragraph 14 purport to characterize court orders; the orders speak for themselves and only provide as stated therein.

15.    The allegations in Paragraph 15 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

16.    The allegations in Paragraph 16 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

17.    The allegations in Paragraph 17 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

18.    The allegations in Paragraph 18 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

19.    The allegations in Paragraph 19 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

20.    The allegations in Paragraph 20 consist of legal conclusions to which no response

is required.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.    The allegations in Paragraph 21 consist of legal conclusions to which no response is required.

22.    The allegations in Paragraph 22 consist of legal conclusions to which no response is required.

23.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.    To the extent the allegations in Paragraph 24 purport to characterize certain documents filed with the Financial Industry Regulatory Authority Inc., those documents speak for themselves and only provide as stated therein.  To the extent the allegations in Paragraph 24 consist of legal conclusions, no response is required.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.    To the extent the allegations in Paragraph 27 purport to characterize certain documents filed with the SEC, those documents speak for themselves and only provide as stated therein.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.    To the extent the allegations in Paragraph 28 purport to characterize certain documents filed with the SEC, those documents speak for themselves and only provide as stated

therein.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29.

30.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.

31.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32.    To the extent the allegations in Paragraph 32 purport to characterize certain documents filed with the SEC, those documents speak for themselves and only provide as stated therein.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

33.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 38.

39.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

40.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.

41.    Paragraph 41 purports to define and characterize a particular financial strategy. IOM Nominees admits that a commonly accepted definition of a "collar" involves the purchase of put options and the sale of call options.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44.

45.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.    The allegations in the first sentence of Paragraph 47 include legal conclusions to which no response is required.  To the extent the remaining allegations in Paragraph 47 purport to characterize certain documents filed with the SEC, those documents speak for themselves and only provide as stated therein.  IOM Nominees otherwise lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 47.

48.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.

49.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.    The allegations in Paragraph 53 purport to characterize events in certain legal proceedings; however, IOM Nominees lacks independent knowledge sufficient to verify or dispute the truth of these allegations.

54.    The allegations in Paragraph 54 consist of legal conclusions to which no response is required.  To the extent a response is required, IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.    IOM Nominees admits that Platinum invested in BLMIS feeder funds, but denies the remaining allegations in Paragraph 55.

56.    IOM Nominees admits the allegations in Paragraph 56.

57.    IOM Nominees admits that Platinum was managed by non-party Platinum Capital Management Ltd.  IOM Nominees otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     IOM Nominees admits that it was a limited company incorporated and organized under the laws of the Isle of Man, but avers that at all relevant times its address was 18-20 North Quay, Douglas, Isle of Man IM1 4LE.

59.     IOM Nominees admits that it executed subscription agreements at the direction and on behalf of Platinum, and that it requested that Platinum's shares in Fairfield Sentry be redeemed, at the direction and on behalf of Platinum.  IOM Nominees otherwise denies the allegations in Paragraph 59.

60.     IOM Nominees admits that it is a wholly-owned subsidiary of ABN AMRO Retained FS (IOM) Limited (f/k/a ABN AMRO Fund Services (IOM) Limited f/k/a Fortis Prime Fund Solutions (IOM) Limited) ("FPFS IOM"), and that IOM Nominees shared the same address, phone numbers, employees, and directors as FPFS IOM, but denies that IOM Nominees and FPFS IOM "functioned as one entity."  IOM Nominees otherwise denies all remaining allegations in Paragraph 60.

61.     IOM Nominees admits that it and FPFS IOM were entities within the Fortis Bank (Nederland) N.V. corporate structure until that entity merged with ABN AMRO Bank N.V. in 2010 as a result of a legal merger under Dutch law.  To the extent the allegations in Paragraph 61 purport to apply to IOM Nominees on the basis that it, along with various other corporate entities, operated as one unified entity (whether under the name "Fortis" or otherwise), they are denied.  To the extent the allegations in Paragraph 61 purport to describe certain marketing materials and public filings, those documents speak for themselves and only provide as stated therein.  IOM Nominees otherwise denies all remaining allegations in Paragraph 61.

62.     To the extent the allegations in Paragraph 62 purport to apply to IOM Nominees on the basis that it, along with various other corporate entities, operated as one unified entity (whether

under the name "Fortis" or otherwise), they are denied. IOM Nominees admits that ABN AMRO

Custodial Services (Ireland) Ltd. (f/k/a/ Fortis Prime Fund Solutions Custodial Services (Ireland)

Ltd.) acted as Platinum's custodian beginning in 2007, but lacks knowledge or information

sufficient to form a belief regarding the representations made by Platinum in its marketing

materials or when negotiating the transactions with the Fairfield Funds. IOM Nominees otherwise

denies all remaining allegations in Paragraph 62.

63.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 63.

64.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 64.

65.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 65.

66.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 66 regarding the characterizations of the Trustee's action,

except to admit that IOM Nominees received certain payments from the Fairfield Funds on behalf

of certain of its customers, including Platinum, who were the beneficial owners of those payments.

IOM Nominees admits that it transferred those payments to the customers, including Platinum, on

whose behalf it received them. IOM Nominees otherwise denies the allegations in Paragraph 66.

67.    To the extent the allegations in the first sentence of Paragraph 67 purport to apply

to IOM Nominees on the basis that it, along with various other corporate entities, operated as one

unified entity (whether under the name "Fortis" or otherwise), they are denied. IOM Nominees

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

first sentence of Paragraph 67 pertaining to its corporate affiliates. The third sentence of Paragraph

67 consists of legal conclusions to which no response is required.  IOM Nominees otherwise denies the allegations in Paragraph 67.

68.    The allegations in Paragraph 68 consist of legal conclusions to which no response is required.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 68 and denies that that it is subject to personal jurisdiction in this judicial district.

69.    The allegations in Paragraph 69 consist of legal conclusions to which no response is required.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 69 and denies that that it is subject to personal jurisdiction in this judicial district.

70.    The allegations in Paragraph 70 consist of legal conclusions to which no response is required.  IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 70 and denies that that it is subject to personal jurisdiction in this judicial district.

71.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71.

72.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72.

73.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 73.  IOM Nominees admits that Platinum invested in Fairfield Sentry through IOM Nominees, but otherwise denies the allegations in Paragraph 73.

74.    To the extent the allegations in Paragraph 74 purport to characterize a subscription agreement, IOM Nominees respectfully refers the Court to that agreement for a complete and

accurate statement of its contents, and denies any allegations inconsistent therewith. IOM Nominees denies that it entered into a subscription agreement with Fairfield Sentry "individually." Any agreements described in paragraph 74 were entered into solely on behalf of Platinum.

75.     To the extent the allegations in Paragraph 75 purport to characterize a subscription agreement, IOM Nominees respectfully refers the Court to that agreement for a complete and accurate statement of its contents, and denies any allegations inconsistent therewith. IOM Nominees denies that it entered into a subscription agreement with Fairfield Sentry "individually." Any agreements described in Paragraph 75 were entered into solely on behalf of Platinum.

76.     To the extent the allegations in Paragraph 76 purport to quote subscription agreements, IOM Nominees respectfully refers the Court to those agreements for a complete and accurate statement of their contents, and denies any allegations inconsistent therewith. The allegations in the first sentence of Paragraph 76 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies the allegations in the first sentence of Paragraph 76. IOM Nominees otherwise denies the allegations in Paragraph 76.

77.     The allegations in Paragraph 77 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies the allegations in Paragraph 77. IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds, or made any decisions regarding those investments.

78.     The allegations in Paragraph 78 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies the allegations in Paragraph 78. IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds, or made any decisions regarding those

investments.

79.     To the extent the allegations in Paragraph 79 purport to quote the Fairfield Sentry PPM, IOM Nominees respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any allegations inconsistent therewith.

80.     IOM Nominees denies the allegations in Paragraph 80.

81.     To the extent the allegations in Paragraph 81 purport to quote the Fairfield Sentry PPMs and other FGG materials, IOM Nominees respectfully refers the Court to those documents for a complete and accurate statement of their contents, and denies any allegations inconsistent therewith.  IOM Nominees otherwise denies the allegations in Paragraph 81.

82.     The allegations in Paragraph 82 consist of legal conclusions to which no response is required.   To the extent a response is required, IOM Nominees denies the allegations in Paragraph 82.  IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds, or made any decisions regarding those investments.

83.     The allegations in Paragraph 83 consist of legal conclusions to which no response is required.   To the extent a response is required, IOM Nominees denies the allegations in Paragraph 83.  IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds, or made any decisions regarding those investments.

84.     To the extent the allegations in Paragraph 84 purport to characterize a subscription agreement, IOM Nominees respectfully refers the Court to that agreement for a complete and accurate statement of its contents, and denies any allegations inconsistent therewith.

85.     IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 85.

86.    To the extent the allegations in Paragraph 86 purport to apply to IOM Nominees on the basis that it, along with various other corporate entities, operated as one unified entity (whether under the name "Fortis" or otherwise), they are denied.  IOM Nominees otherwise denies all remaining allegations in Paragraph 86.

87.    To the extent the allegations in Paragraph 87 purport to apply to IOM Nominees on the basis that it, along with various other corporate entities, operated as one unified entity (whether under the name "Fortis" or otherwise), they are denied.  IOM Nominees admits that for a period of time FPFS IOM acted as administrator to Harley International (Cayman) Limited.  IOM Nominees further admits that for a period of time it received and reviewed purported BLMIS trade confirmations.  IOM Nominees otherwise denies all remaining allegations in Paragraph 87.

88.    To the extent the allegations in the first sentence of Paragraph 88 purport to characterize a subscription agreement, IOM Nominees respectfully refers the Court to that agreement for a complete and accurate statement of its contents, and denies any allegations inconsistent therewith.  IOM Nominees lacks knowledge or information sufficient to form a belief as to the allegations in the third sentence of Paragraph 88.  IOM Nominees otherwise denies all remaining allegations in Paragraph 88.  IOM Nominees specifically denies that it maintained any control over its clients' decisions or their investments in the Fairfield Funds, or made any decisions regarding those investments.

89.    To the extent the allegations in Paragraph 89 purport to characterize a subscription agreement or refer to account statements, IOM Nominees respectfully refers the Court to that agreement and those account statements for a complete and accurate statement of their contents, and denies any allegations inconsistent therewith.  IOM Nominees otherwise denies the allegations

in Paragraph 89. IOM Nominees specifically denies that it maintained any control over its clients'

decisions, their investments in the Fairfield Funds, or the redemption payments that the Trustee

seeks to recover in this action, or made any decisions regarding those investments.

90.    The allegations in Paragraph 90 consist of legal conclusions to which no response

is required. To the extent a response is required, IOM Nominees denies the allegations in

Paragraph 90.

91.    The allegations in Paragraph 91 consist of legal conclusions to which no response

is required. To the extent a response is required, IOM Nominees denies that it is subject to personal

jurisdiction under either the New York Civil Practice Law and Rules or the Federal Rules of

Bankruptcy Procedure.

92.    The allegations in Paragraph 92 purport to characterize pleadings in certain legal

proceedings; those pleadings speak for themselves and only provide as stated therein.

93.    The allegations in Paragraph 93 purport to characterize court orders; those orders

speak for themselves and only provide as stated therein.

94.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of Paragraph 94, or in Exhibits A and B to the Amended

Complaint. The allegations in the second sentence of Paragraph 94 consist of legal conclusions to

which no response is required. To the extent a response is required, IOM Nominees denies the

allegations in Paragraph 94.

95.    To the extent the allegations in Paragraph 95 purport to characterize pleadings in

certain legal proceedings; those pleadings speak for themselves and only provide as stated therein.

96.    To the extent the allegations in Paragraph 96 purport to characterize pleadings in

certain legal proceedings, those pleadings speak for themselves and only provide as stated therein.

IOM Nominees otherwise states that it is improper to incorporate the Second Amended Complaint by reference, denies the allegations in Paragraph 96, and denies the allegations in the Second Amended Complaint.

97.     IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 97. The allegations in the second sentence of Paragraph 97 consist of legal conclusions for which no response is required. To the extent a further response is required, IOM Nominees denies the allegations in Paragraph 97.

98.     IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 98. The allegations in the second sentence of Paragraph 98 consist of legal conclusions for which no response is required. To the extent a further response is required, IOM Nominees denies the allegations in Paragraph 98.

99.     The allegation that any funds constitute "customer property under SIPA" states a legal conclusion to which no response is required. To the extent a response is required, IOM Nominees denies that allegation. IOM Nominees otherwise denies the allegations in Paragraph 99 except to admit that IOM Nominees received certain payments from Fairfield Sentry on behalf of certain of its customers, including Platinum, who were the beneficial owners of those funds. IOM Nominees admits that it transferred those payments to the customers, including Platinum, on whose behalf it received them.

100.    The allegations in Paragraph 100 purport to characterize pleadings in this legal proceeding; those pleadings speak for themselves and only provide as stated therein.

101.    The allegations in Paragraph 101 consist of legal conclusions to which no response is required. To the extent a response is required, IOM Nominees denies the allegations in Paragraph 101.

102.    IOM Nominees lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102, or in Exhibit E to the Amended Complaint.

103.    The allegation that any payments constitute subsequent transfers states a legal conclusion to which no response is required.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 103 except to admit that IOM Nominees received certain payments from Fairfield Sigma on behalf of its client ABZ assetX World Selection Ltd, who was the beneficial owner of those payments.  IOM Nominees admits that it transferred those payments to ABZ assetX World Selection Ltd.

104.    The allegations in Paragraph 104 consist of legal conclusions to which no response is required.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 104.

105.    The allegations in Paragraph 105 consist of legal conclusions to which no response is required.  To the extent a response is required, IOM Nominees denies the allegations in Paragraph 105.

106.    The allegation that any payments constitute subsequent transfers states a legal conclusion to which no response is required.  To the extent a response is required, IOM Nominees denies that allegation.  IOM Nominees otherwise denies the allegations in Paragraph 106.

107.    The allegations in Paragraph 107 consist of legal conclusions to which no response is required.  IOM Nominees otherwise states that it would oppose any further amendments to the Amended Complaint and reserves the right to do so.

108.    IOM Nominees incorporates by reference its responses to the allegations in all previous paragraphs of the Amended Complaint as though fully set forth herein.

109.    IOM Nominees states that the allegations in Paragraph 109 consist of legal

conclusions to which no response is required.  To the extent a further response is required, IOM Nominees denies the allegations in Paragraph 109.

110.    IOM Nominees states that the allegations in Paragraph 110 consist of legal conclusions to which no response is required.  To the extent a further response is required, IOM Nominees denies the allegations in Paragraph 110.

111.    IOM Nominees states that the allegations in Paragraph 111 consist of legal conclusions to which no response is required.  To the extent a further response is required, IOM Nominees denies the allegations in Paragraph 111 and denies that the Trustee is entitled to any relief from IOM Nominees.

## AFFIRMATIVE AND OTHER DEFENSES

IOM Nominees asserts the following affirmative and other defenses and reserves the right to amend this Answer to assert other and further defenses when and if, in the course of its investigation, discovery, or preparation for trial, it becomes appropriate.  By designating these matters "defenses," IOM Nominees does not intend to suggest either that the Trustee does not bear the burden of proof as to such matters or that such matters are not elements of the Trustee's *prima facie* case against IOM Nominees.

### FIRST DEFENSE
*Failure to State a Claim*

The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
*Lack of Personal Jurisdiction*

IOM Nominees does not have sufficient contacts with this forum to support the exercise of personal jurisdiction over it.

**THIRD DEFENSE**
*Lack of Subject Matter Jurisdiction*

This Court lacks jurisdiction under Article III of the U.S. Constitution to enter final orders or judgment in this proceeding.

**FOURTH DEFENSE**
*Mere Conduit*

IOM Nominees did not exercise dominion and control over its clients' investments or the payments that the Trustee seeks to recover here. Therefore, the Trustee may not recover from IOM Nominees because IOM Nominees was a mere conduit and not a "transferee" as that term is used in 11 U.S.C. § 550(a).

**FIFTH DEFENSE**
*Failure to Plead Fraud*

The allegations of actual fraudulent transfer as to the Fairfield Funds do not comply with Rule 9(b) and are not pled with sufficient particularity.

**SIXTH DEFENSE**
*Safe Harbor*

The alleged subsequent transfers to IOM Nominees may not be recovered because the alleged initial transfers are subject to the safe harbors set forth in 11 U.S.C. § 546(e), in that the alleged initial transfers were (i) made by or to the Fairfield Funds, each of whom were and are covered entities under § 546(e); and (ii) not made with "actual intent" to defraud, and thus are not recoverable under 11 U.S.C. §§ 548(a)(1)(A) or (B). In addition, at the time of the alleged initial transfers, the Fairfield Funds did not have actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetuating a Ponzi scheme, as is relevant to the safe harbor analysis under 11 U.S.C. § 546(e). The alleged initial transfers are also not avoidable under 11 U.S.C. §§ 544, 550, and 551, certain applicable provisions of the N.Y. Debt. & Cred. Law,

including §§ 273-279, or 15 U.S.C. § 78fff-2(c)(3).

To the extent, if any, that IOM Nominees received any subsequent transfers originating from the unavoidable alleged initial transfers, such subsequent transfers are not recoverable under 11 U.S.C. §§ 105(a) and 550(a) or 15 U.S.C. § 78fff-2(c)(3). In addition, at the time of the alleged transfers from the Fairfield Funds to IOM Nominees, IOM Nominees did not have actual knowledge that Madoff or BLMIS were not trading securities or that they were perpetrating a Ponzi scheme.

**SEVENTH DEFENSE**
*No Ponzi Scheme Presumption*

The Trustee may not rely on a "Ponzi scheme presumption" to prove that the alleged initial transfers from BLMIS to the Fairfield Funds that he seeks to recover from IOM Nominees were made with actual intent to hinder, delay, or defraud creditors. The Ponzi scheme presumption is extra-statutory and improper, but even if that were not the case, the presumption cannot apply to the alleged initial transfers from BLMIS to the Fairfield Funds to the extent the initial transfers were repayments of the Fairfield Funds' principal investments. The repayment of a customer's investment principal constitutes the repayment of a valid contractual antecedent debt, not a payment made in furtherance of the Ponzi scheme.

To the extent, if any, that IOM Nominees received subsequent transfers arising from the unavoidable initial transfers to the Fairfield Funds, such subsequent transfers are not recoverable under 11 U.S.C. § 550(a) or 15 U.S.C. § 78fff-2(c)(3).

**EIGHTH DEFENSE**
*For Value And In Good Faith*

IOM Nominees received the transfers at issue for value, in good faith, and without knowledge of the voidability of the transfers from BLMIS to the Fairfield Funds, and thus the

transfers to IOM Nominees may not be recovered pursuant to 11 U.S.C. § 550(b).

IOM Nominees provided value in exchange for the transfers at issue, in the form of the redemption of shares in the Fairfield Funds.

IOM Nominees also received the transfers in good faith. IOM Nominees did not have actual knowledge of the BLMIS fraud. IOM Nominees conducted reasonable due diligence regarding the relevant transactions. This diligent inquiry did not reveal any fraud at BLMIS or the Fairfield Funds. IOM Nominees had no reason to know or suspect that transfers from the Fairfield Funds would be or were proceeds from a Ponzi scheme. IOM Nominees did not know facts that would have prompted a reasonable person in IOM Nominees' position to conduct further inquiry into whether there was any fraudulent purpose behind the transfers.

Madoff and his fellow conspirators actively concealed the existence of their fraud, including from customers and government regulators, apparently for decades. Other entities, including the United States Securities and Exchange Commission, with greater investigatory tools and resources than IOM Nominees, and with more access to BLMIS personnel and documentation than IOM Nominees, repeatedly examined and investigated BLMIS but failed to uncover Madoff's fraud before December 2008. IOM Nominees did not have the ability to compel the production of information from third parties that would have been necessary to establish that BLMIS was committing fraud.

IOM Nominees did not have knowledge of the voidability of any alleged transfers from BLMIS to the Fairfield Funds when it received the alleged subsequent transfers, if any.

**NINTH DEFENSE**
*Initial Transfer Not Avoided*

The Trustee may not recover the transfers to IOM Nominees because he has not avoided the initial transfer from BLMIS to the Fairfield Funds. *See* 11 U.S.C. § 550(a).

**TENTH DEFENSE**
*Nonavoidability of Initial Transfers: Two-Year Lookback*

The Trustee's claims against IOM Nominees are barred to the extent that they did not derive from initial transfers within the two-year lookback period of 11 U.S.C. § 548(a)(1)(A).

**ELEVENTH DEFENSE**
*Unclean Hands*

The Trustee's claims against IOM Nominees are barred by the doctrine of unclean hands, because a trustee, standing in the shoes of the debtor, cannot recover for a wrong that the debtor himself took part in.

**TWELFTH DEFENSE**
*In Pari Delicto*

The Trustee's claims against IOM Nominees are barred by the doctrine of *in pari delicto*, because a trustee, standing in the shoes of the debtor, cannot recover for a wrong that the debtor himself took part in.

**THIRTEENTH DEFENSE**
*Dismissed Claims*

The Trustee's claims against IOM Nominees are barred to the extent that they have been dismissed or released by the Trustee or the Court or are based on allegations that have been dismissed by the Trustee or the Court, including any claims released or dismissed in the Fairfield Settlement Agreement.

**FOURTEENTH DEFENSE**
*Statute of Limitations*

The Trustee's claim is barred by the applicable statute of limitations.

**FIFTEENTH DEFENSE**
*Estoppel*

The Trustee's claim is barred by estoppel.

**SIXTEENTH DEFENSE**
*Laches*

The Trustee's claims against IOM Nominees are barred by the doctrine of laches.

**SEVENTEENTH DEFENSE**
*Failure to Mitigate*

The Trustee's claims are barred, in whole or in part, because the Trustee has failed to mitigate, minimize or avoid damages, if any.

**EIGHTEENTH DEFENSE**
*No Interest*

The Trustee is not entitled to an award of interest under applicable law.

**NINETEENTH DEFENSE**
*Extraterritoriality*

The Trustee's recovery of the transfers to IOM Nominees would constitute an impermissible extraterritorial application of U.S. law.

**TWENTIETH DEFENSE**
*Comity*

The Trustee's recovery of the alleged transfers to IOM Nominees would violate principles of comity.

**TWENTY-FIRST DEFENSE**
*Violation of Due Process*

The use of the doctrine of law of the case to apply to IOM Nominees rulings made in other adversary proceedings to which they were not a party and in which they did not participate violates IOM Nominees' right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

**TWENTY-SECOND DEFENSE**
*Single Satisfaction*

Pursuant to 11 U.S.C. § 550(d), the Trustee may not recover any subsequent transfer from

IOM Nominees to the extent he has recovered or does in the future recover from the Fairfield Funds, any customers of IOM Nominees, or any other immediate or mediate transferee the amount of the avoided initial transfer that included the customer property that the Trustee alleges that IOM Nominees received.

**TWENTY-THIRD DEFENSE**

*Reservation of Rights*

To the extent the Trustee recovers from IOM Nominees, IOM Nominees reserves its right to assert a claim arising from such recovery under 11 U.S.C. § 502(h).

**STATEMENT PURSUANT TO FED. R. BANKR. P. 7012(b)**

IOM Nominees does not consent to the entry of final orders or judgment by the Bankruptcy Court.

**DEMAND FOR JURY TRIAL**

IOM Nominees hereby demands a trial by jury for all claims as to which it is entitled to such trial and does not consent to a jury trial conducted by the Bankruptcy Judge.

**PRAYER FOR RELIEF**

WHEREFORE, IOM Nominees respectfully requests that the Court enter judgment:

a) in IOM Nominees' favor and against the Trustee;

b) dismissing the Trustee's claims against IOM Nominees in their entirety and with prejudice;

c) awarding IOM Nominees its reasonable costs and expenses, including reasonable attorneys' fees, incurred in defending this action; and

d) granting IOM Nominees such other and further relief as the Court deems just and proper.

Dated: August 25, 2023
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Christopher R. Harris*

Christopher R. Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: christopher.harris@lw.com
Email: thomas.giblin@lw.com

*Attorneys for IOM Nominees*