UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date: September 20, 2023**
**Hearing Time: 10:00 a.m. (ET)**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**OBJECTING DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION FOR ORDER
AMENDING ORDER APPOINTING A DISCOVERY ARBITRATOR
<u>PURSUANT TO BANKRUPTCY RULE 9019(c) AND GENERAL ORDER M-390</u>**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ........................................................................................................................ 7

    A.    The Trustee Has Failed to Show Any Unforeseen "Changed Circumstances" That Would Render Prospective Application of the 2016 Order Inequitable under Rule 60(b)(5) .................................................................... 8

    B.    The Trustee Has Failed to Show Any "Extraordinary Circumstances" or "Extreme and Undue Hardship" That Would Justify Modifying the 2016 Order under Rule 60(b)(6) .................................................................................. 10

    C.    The Trustee May Not Unilaterally and Retrospectively Alter Case Management Plans Already Agreed with the Objecting Defendants ................... 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001) ................................................................3, 10, 11, 12

*Benjamin v. Malcolm*,
    156 F.R.D. 561 (S.D.N.Y. 1994) ...............................................................................8

*Katel Liab. Co. v. AT & T Corp.*,
    607 F.3d 60 (2d Cir. 2010) ......................................................................................13

*Kellogg v. Strack*,
    269 F.3d. 100 (2d Cir. 2001) ...................................................................................12

*New York ex rel. Lockyer v. Bodman*,
    2007 WL 3238763 (S.D.N.Y. Nov. 1, 2007) .............................................................8

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)......................................................................................10

*Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*,
    2005 WL 3750749 (S.D.N.Y. July 13, 2005) ..........................................................13

*In re Royster Co.*,
    132 B.R. 684 (Bankr. S.D.N.Y. 1991) ....................................................................13

*SEC v. Longfin Corp.*,
    2020 WL 4194484 (S.D.N.Y. July 21, 2020), *aff'd*, 849 F. App'x 323 (2d Cir.
    2021) ....................................................................................................................11

*SEC v. Musk*,
    2023 WL 3451402 (2d Cir. May 15, 2023) ...............................................................8

*Secs. Inv'r Prot. Corp. vs. Square One Fund Ltd.*,
    No. 10-04330 (CGM) (Bankr. S.D.N.Y. June 29, 2023) ...........................................6

*Silverman v. Miranda*,
    2014 WL 3728622 (S.D.N.Y. July 28, 2014) ...........................................................8

*United States v. Bank of New York*,
    14 F.3d 756 (2d Cir. 1994)..............................................................................10, 11

**Rules**

Fed. R. Bankr. P. 9019(c) ...............................................................................1, 6, 12

4868-6618-5598.2

Fed. R. Civ. P. 60(b)(5)..................................................................................................*passim*

Fed. R. Civ. P. 60(b)(6)..................................................................................................*passim*

Fed. R. Civ. 60(c)....................................................................................................................12

4868-6618-5598.2

The undersigned defendants (the "Objecting Defendants")[1] hereby submit this
opposition to the *Motion for Order Amending Order Appointing a Discovery Arbitrator Pursuant
to Bankruptcy Rule 9019(c) and General Order M-390*, ECF 23449 ("Trustee's Motion"), filed
by Irving H. Picard, as trustee for the liquidation of Bernard L. Madoff Investment Securities
LLC  and the estate of Bernard L. Madoff (the "Trustee"), and state as follows:

## PRELIMINARY STATEMENT

1.      In 2016, at a time when the Trustee had over 500 adversary proceedings pending,
the Trustee applied for and obtained an order, drafted by the Trustee, providing for the
appointment of a discovery arbitrator and for procedures governing discovery disputes before the
arbitrator "in any of the Trustee's adversary proceedings, whether such dispute is currently
pending before the Court or in the future."  Order Appointing a Discovery Arbitrator Pursuant to
Bankruptcy Rule 9019(c) and General Order M-390, *Secs. Inv'r Prot. Corp. v. Bernard L.
Madoff Inv. Secs.*, No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 4, 2016), ECF 14227 (the "2016
Order"), at 2.  Those procedures, proposed by the Trustee and ordered by the Court, included a
provision that, "[i]n any given adversary proceeding," the Trustee would pay the costs of the
discovery arbitrator up to $50,000, and thereafter the Trustee and the defendants in the
proceeding would share the costs equally.  *Id.* ¶ 6.  Neither the Trustee's application for the 2016
Order nor the 2016 Order itself limited the provision to what the Trustee calls "good faith" or
"fictitious profits" adversary proceedings or to any other class of adversary proceedings
whatsoever.  To the contrary, it expressly governed "*any* of the Trustee's adversary
proceedings."  *Id.* at 2 (emphasis added).

---

[1] A list of the Objecting Defendants is set forth in Exhibit 1 hereto.

2.      In the seven years since the 2016 Order was entered, numerous defendants have accepted the bargain proposed by the Trustee and have agreed in their case management plans ("CMPs") to submit all discovery disputes to the discovery arbitrator in accordance with the 2016 Order.  In just the last 14 months alone, the Objecting Defendants accepted the Trustee's offer in 19 adversary proceedings, including the Trustee's agreement to pay the first $50,000 of costs, and agreed to discovery arbitration under the terms of the 2016 Order in their CMPs, including as recently as June 9, 2023.

3.      The Trustee now seeks to renege on the bargain that he offered, and that Objecting Defendants accepted in reliance on the 2016 Order, by moving to amend the 2016 Order to remove the provision for the Trustee's payment of the first $50,000 in discovery arbitration costs.  The Trustee has expressly advised defense counsel that he intends that the amendment would alter the cost allocation in adversary proceedings where defendants have already agreed to discovery arbitration in their CMPs.

4.      The Trustee seeks the amendment under the authority of Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), but wholly fails to meet his burden of proof under either of those Rules as construed by the Second Circuit, the District Court, and this Court.

5.      As to Rule 60(b)(5), the Trustee has failed to make the required evidentiary showing of an unforeseeable, "significant change in circumstances" since October 2016 when the 2016 Order was entered—much less since June 2023 when the Trustee most recently agreed with defendants in their CMPs to arbitrate discovery disputes under the terms of the 2016 Order—that would make holding the Trustee to the bargain he offered and obtained "inequitable."  To the contrary, the Trustee's application for the 2016 Order cited, as grounds for entering the 2016 Order, the fact that "many of the Trustee's cases [were] becoming more

active" and the prospect of an increasing number of future discovery disputes, including specifically in "'bad faith' cases with unique discovery disputes." Letter to Judge Stuart Bernstein from David J. Sheehan regarding Discovery Arbitrator, *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs.*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Sept. 2, 2016), ECF 13975 at 1 (the "2016 Application"). And the 2016 Order itself expressly foresaw that "it is likely that additional discovery disputes may arise in light of the liquidation and the adversary proceedings." 2016 Order at 2. In reality, the only relevant change in circumstances is that there are *vastly fewer* adversary proceedings pending now than there were in October 2016 (fewer than 100 now as compared to more than 500 then), so that the Trustee's maximum potential exposure under the agreed and ordered cost-allocation provision is now far lower.

6.      Similarly, the Trustee has failed to make the required showing of "extraordinary circumstances" or "extreme and undue hardship" as required to modify the 2016 Order under Rule 60(b)(6). The maximum potential incremental exposure for the Trustee in any given adversary proceeding under the existing Order that he proposed and obtained, as opposed to the modified order he now seeks, is $25,000. Even if that figure were reached in all 19 adversary proceedings with the Objecting Defendants, all of whose CMPs incorporate the existing 2016 Order, it would mean an incremental cost to the Trustee of only $475,000 at most. That figure is little more than a rounding error for the Securities Investor Protection Corporation, which had the capacity to pay Trustee fees and expenses of $311 million in just the last three years. And in all events, as this Court has held, holding a party "to the deal it struck is neither extraordinary or an 'extreme' or 'undue' hardship." *In re AMC Realty Corp.*, 270 B.R. 132, 144 (Bankr. S.D.N.Y. 2001).

4868-6618-5598.2

7.      What would truly be "inequitable" would be to unilaterally change the governing

cost-allocation rule that the Objecting Defendants—some of which are themselves defunct

entities or in liquidation, and none of which is alleged to have had any knowledge of Madoff's

fraud—relied on in agreeing with the Trustee to arbitrate discovery disputes.  A voluntary

stipulation is equivalent to a contract between the parties, and the Trustee has entirely failed to

show any cognizable ground—such as fraud, duress, or mistake—for breaking those contracts

now.

8.      Because the Trustee has not come close to meeting his burden of proof under

Rules 60(b)(5) and 60(b)(6), the Trustee's Motion should be denied in its entirety.  In the

alternative, and at a minimum, if the Court were to entertain any modification of the 2016 Order,

no such modification should apply in any adversary proceeding, including those of the Objecting

Defendants, where the parties previously agreed to submit discovery disputes to the discovery

arbitrator and cited the 2016 Order in their CMPs.[2]

## **BACKGROUND**

9.      On September 2, 2016, the Trustee moved for an order appointing a discovery

arbitrator to achieve "the consistent, fair, and efficient resolution of [discovery] disputes."  2016

Application at 1.  The Trustee offered several justifications, including that the Trustee

anticipated there would be other cases becoming active and that the Trustee had "several 'bad

faith' cases with unique discovery disputes" that would require resolution.  *Id.* at 1.  The

---

[2] It is the Objecting Defendants' position that any amendment to the 2016 Order could
not, without a separate order from the Court, alter the terms of any previously-entered CMP
incorporating the 2016 Order.  If the Court were to amend the 2016 Order without addressing the
CMPs, the Objecting Defendants respectfully reserve their rights to contend in this proceeding,
in their respective adversary proceedings, or in a future discovery arbitration that the CMPs
remain unchanged.

4

Trustee's proposed order included a provision requiring the Trustee to bear the first $50,000 of costs for the Discovery Arbitrator in any given adversary proceeding where the parties agreed to use the Discovery Arbitrator.  2016 Application, Ex. 1 (Proposed Order), at 4.

10.     At the time of the 2016 Application, the Trustee had 508 adversary proceedings pending.  As of September 30, 2016, as reported by the Trustee, these included 385 "good faith" cases, 41 "bad faith" and feeder fund cases, and 82 subsequent transferee cases.  *See* Trustee's Sixteenth Interim Report, ECF 14347, ¶¶ 151, 173, 177.

11.     On October 4, 2016, this Court so-ordered the Trustee's proposed order with no substantive changes other than inserting the name of the chosen arbitrator (Frank Maas) and a provision for a cap on the arbitrator's hourly rate (as requested by the Trustee in a supplemental letter).  *See* Order ¶¶ 1, 6; Supplemental Letter Regarding Appointment of Discovery Arbitrator, ECF 13985.  As the Trustee had proposed, the 2016 Order expressly contemplated that it would apply "to resolve various discovery disputes *in any of the Trustee's adversary proceedings, whether such dispute is currently pending before the Court or in the future*."  *Id*. at 2 (emphasis added).

12.     Despite the Trustee's attempt at revisionist history, *see* Trustee's Motion ¶ 11, neither the Trustee's 2016 Application, his Proposed Order, nor the final 2016 Order, included any language limiting its coverage to "good faith" cases, "fictitious profits" cases, or to any particular class of cases at all.

13.     Since June 2022, the Trustee has entered into CMPs in at least 19 subsequent transferee cases that include mandatory arbitration provisions, including as recently as June 9, 2023—less than three months ago.  *See* Ex. 1.  For example, paragraph 7 of the CMP of Objecting Defendant Multi-Strategy Fund Limited in *Picard v. Multi-Strategy Fund Ltd.*, Adv.

Pro. No. 12-01205 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2022), ECF 138, provides for arbitration of

discovery disputes under the terms of the 2016 Order as follows:

> The Parties agree to the use of Frank Maas, Esq. as Discovery Arbitrator to resolve
> discovery disputes that they are unable to resolve by meeting and conferring, as
> referenced in the Order Appointing a Discovery Arbitrator Pursuant to Bankruptcy Rule
> 9019(c) and General Order M-390 (Doc. No. 14227) entered on October 4, 2016 in Adv.
> Pro. No. 08-01789 (CGM).

All of the CMPs listed in Ex. 1 are substantively similar and specifically refer to or otherwise

incorporate the 2016 Order without modification.  *Id.*  Collectively, these CMPs represent

knowing and voluntary agreements between the Trustee and at least 36 defendants, some of

which are themselves in liquidation or are otherwise defunct entities with few resources, and

none of which is alleged to have had knowledge of Madoff's fraud.

14.     The Trustee's commitment to pay the first $50,000 in Discovery Arbitrator costs

in any given adversary proceeding was an integral component of the CMPs.

15.     On August 2, 2023, however, after this Court rejected the Trustee's application to

avoid his commitment to pay the first $50,000 of discovery arbitration costs in defendant Square

One Fund Ltd.'s adversary proceeding, *see* Minute Order, *Secs. Inv'r Prot. Corp. vs. Square One

Fund Ltd.*, No. 10-04330 (CGM) (Bankr. S.D.N.Y. June 29, 2023), Trustee's counsel moved to

amend the 2016 Order to remove the provision requiring Trustee's counsel to pay the first

$50,000 of fees for any dispute before the Discovery Arbitrator in each adversary proceeding,

such that all costs would henceforth be shared between the parties from the first dollar.

16.     Contrary to the Trustee's assertion that the existing cost-allocation provision is

now too burdensome for him in light of a supposedly unforeseen increase in the number of active

cases, the number of pending adversary proceedings has actually *fallen* from more than 500 in

2016 to fewer than 100 when the Trustee made the instant Motion.  As of March 31, 2023, as

reported by the Trustee, these included 11 "good faith" cases, 1 "bad faith" case, 9 feeder fund

cases, and 78 subsequent transferee cases.  *See* Trustee's Twenty-Ninth Interim Report, ECF 23158, ¶¶ 54, 77, 109, 190 & Exs. B-D.  All of the 19 adversary proceedings involving the Objecting Defendants that have adopted a CMP since June 2022 providing for mandatory arbitration of discovery disputes under the 2016 Order without modification, were already pending at the time of the Trustee's 2016 Application.

17.     On August 9, 2023, Trustee's counsel advised Zeb Landsman, Esq., counsel for Objecting Defendant Sumitomo Trust and Banking Co., Ltd., that the Trustee intends that any changes to the 2016 Order would apply retrospectively, including to any previously-entered CMPs.  *See* Ex. 2 (Email from Brian Song to Zeb Landsman).

18.     Belying the Trustee's Motion's claims of hardship and limited resources, between April 1, 2020 and March 31, 2023 alone, the Trustee has received over $308 million in attorneys' fees and $2.7 million in expense reimbursements in the SIPA actions.  *See* Ex. 3 (summarizing Trustee's recent fee applications).

## **ARGUMENT**

19.     In seeking to retrade his cost-allocation agreement, the Trustee moves for his desired amendment of the 2016 Order on the purported authority of Rules 60(b)(5) and 60(b)(6), but he does not come close to meeting the requirements of either rule.  The Trustee's Motion should therefore be denied outright.  In the alternative, any modification of the 2016 Order's cost-allocation provision should apply only to future CMPs in which defendant(s) agree to discovery arbitration under the terms of the Trustee's proposed amended order.

    **A.**    **The Trustee Has Failed to Show Any Unforeseen "Changed Circumstances" That Would Render Prospective Application of the 2016 Order Inequitable under Rule 60(b)(5)**

20.    In order for the Court to modify the 2016 Order under Rule 60(b)(5), the Trustee must establish that there are changed circumstances that make "applying it prospectively . . . no longer equitable." Fed. R. Civ. P. 60(b)(5). The Trustee has not met this burden.

21.    Changed circumstances that could justify a modification under Rule 60(b)(5) include "a significant change either in factual conditions or in law." *Silverman v. Miranda*, 2014 WL 3728622, at *3 (S.D.N.Y. July 28, 2014). Circumstances anticipated at the time that a party agreed to a stipulation, however, do not constitute changed factual conditions under Rule 60(b)(5). *See New York ex rel. Lockyer v. Bodman*, 2007 WL 3238763, at *1 (S.D.N.Y. Nov. 1, 2007) (delays in implementing changes due to public comment were foreseeable and did not warrant modification of deadline in consent order under Rule 60(b)(5)).

22.    A party may not move to amend a prior stipulation or consent order under Rule 60(b)(5) merely to "seek a better bargain." *Silverman*, 2014 WL 3728622, at *5. A party does not have the right to seek collateral modification of an order under Rule 60(b)(5) where he has merely "changed his mind" and had the right to negotiate a different agreement at the outset. *See SEC v. Musk*, 2023 WL 3451402, at *3 (2d Cir. May 15, 2023) (affirming district court's denial of defendant's motion to modify terms of consent decree). Modification of an order under Rule 60(b)(5) is not warranted when a party has decided "it is no longer convenient to live with [its] terms" and the only change in circumstances is the party's "view of [its] merits." *Benjamin v. Malcolm*, 156 F.R.D. 561, 565 (S.D.N.Y. 1994) (denying city's motion to amend consent order following change of administration).

23.    The Trustee has not identified any "changed circumstances" that would render the application of the 2016 Order inequitable. The Trustee asserts that since the entry of the 2016

8

Order, the following has changed: (a) rather than litigating against individual and small entities,

the Trustee claims now to be primarily litigating against large institutional entities that allegedly

face fewer cost constraints; and (b) the Trustee claims that current and future discovery disputes

are likely to be more wide-ranging than those at issue in 2016 because of the legal and factual

issues in the remaining adversary proceedings (*e.g.*, "fictitious profits" vs. "good faith" claims).

Trustee's Motion at 5-6.  The Trustee has, however, offered no evidence supporting these alleged

changes in circumstances.  The record in these SIPA proceedings shows otherwise.  *See supra*

¶¶ 9-10, 12-13, 16.

24.      Even had the Trustee offered such evidence, the alleged "changed circumstances"

identified by the Trustee were not only foreseeable, but explicitly anticipated, at the time that the

Trustee sought, and the Court granted, the 2016 Order.  The Trustee filed all of the actions

pending against the Objecting Defendants between 2010 to 2012 and was well aware of both the

volume and nature of the cases that had not yet entered discovery.  *See* Ex. 1.  The Trustee,

however, did not seek any limits on the cost provisions of the Order to account for the increased

volume or complex nature of forthcoming discovery disputes.  In fact, despite the Trustee's

attempt to revise history by claiming he only intended it to apply in "good faith" cases, the

Trustee explicitly cited both an anticipated increase in discovery disputes and an increase in

complexity of future discovery disputes—*including cases involving "bad faith" claims*—in his

original Application for the 2016 Order.  *See* 2016 Application at 1.

25.      Finally, the Trustee has not even attempted to identify any changes in law or fact

since the Trustee entered into CMPs in 2022 and 2023 that explicitly incorporated the 2016

Order.  *See generally* Trustee's Motion.  The only significant changed circumstance between

2016 and today cuts in precisely the opposite direction:  The Trustee now has far *fewer* pending

adversary proceedings and thus far *less* potential financial exposure under the 2016 Order than

he did in 2016.

26.     The Trustee's Motion is a classic example of a party trying to use Rule 60(b)(5)

merely to seek a better bargain.  The Trustee has identified no changed facts or law since 2016

(let alone since June 2023).  There is nothing inequitable about holding the Trustee to the bargain

that he asked for and obtained.  The only inequitable outcome would be rewriting the cost-

sharing provisions to suit the Trustee's current preferences just months after the Objecting

Defendants in nearly 20 adversary proceedings relied on them in agreeing to use the Discovery

Arbitrator.  There is no basis for the Court to modify the 2016 Order under Rule 60(b)(5).

**B.     The Trustee Has Failed to Show Any "Extraordinary Circumstances" or
         "Extreme and Undue Hardship" That Would Justify Modifying the 2016
         Order under Rule 60(b)(6)**

27.     To warrant an amendment of the 2016 Order under Rule 60(b)(6), the Trustee

must carry the burden of establishing either "extraordinary circumstances" or "extreme and

undue hardship" and a reason that justifies relief other than those set forth in Rule 60(b)(1)-(5).

*Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986).  The Trustee has not even alleged, let alone

substantiated, extraordinary circumstances or undue hardship justifying amendment of the 2016

Order under Rule 60(b)(6).

28.     The purpose of Rule 60(b)(6) is not to "reliev[e] a party from free, calculated, and

deliberate choices he has made."  *AMC Realty*, 270 B.R. at 144.  As the Second Circuit explained

in *United States v. Bank of New York*, 14 F.3d 756 (2d Cir. 1994), where both parties made "free,

bilateral decisions to settle" and each party "bore the risks of litigation equally," one party's

"failure to properly estimate the loss or gain from entering a settlement agreement is not an

extraordinary circumstance that justifies relief under Rule 60(b)(6)."  *Id*. at 760 (denying

defendant's motion to set aside consent agreement in civil forfeiture action following defendant's

successful appeal of judgment in related criminal action); *see also SEC v. Longfin Corp.*, 2020

WL 4194484, at *3 (S.D.N.Y. July 21, 2020) (denying relief under Rule 60(b)(6) where party

alleged that he failed to understand financial consequences of his consent judgment), *aff'd*, 849

F. App'x 323 (2d Cir. 2021).

29.     For the same reasons as in *Bank of New York*, the Trustee may not obtain

equitable relief through Rule 60(b)(6) to remedy his failure to properly estimate the potential

costs and benefits of entering into the 2016 Order or the CMPs incorporating the 2016 Order in

2022 and 2023.  That dozens of subsequent transferee cases are or will soon enter discovery, that

discovery disputes "may arise" in these cases, and that the Trustee could potentially be forced to

pay millions in arbitration costs for these disputes, *see* Trustee's Motion at 6, were all known to

the Trustee when he proposed the 2016 Order and when he entered into the CMPs listed in Ex. 1.

The Trustee's liability for arbitrator fees in discovery disputes in adversary proceedings that the

Trustee initiated and prosecuted is the natural consequence of the Trustee entering into the 2016

Order and agreeing with the Objecting Defendants to arbitration under the terms of the 2016

Order.  These anticipated circumstances do not qualify as "extraordinary" under Rule 60(b)(6).

*See AMC Realty*, 270 B.R. at 144 (declining to find extraordinary circumstances where there

were no circumstances "that the parties failed to anticipate").

30.     The Trustee has also not provided any evidence that any undue hardship would

arise if he were required to continue to cover the first $50,000 in fees for discovery disputes

before the arbitrator, particularly given the more than $300 million in fees and expenses that the

Trustee has incurred in these proceedings in the last three years alone.  *See* Ex. 3.  In fact, since

the entry of the 2016 Order, there is significantly less potential exposure for the Trustee given

that the large majority of the cases pending in 2016 have since been resolved.  *See* Trustee's

Motion at 5 (noting that "virtually all of the good faith cases have been resolved").

31.      Accordingly, Rule 60(b)(6) affords no basis to modify the 2016 Order because the

Trustee has entirely failed to meet his burden to demonstrate extraordinary circumstances or

undue hardship.  Merely holding a party "to the deal it struck is neither extraordinary or an

'extreme' or 'undue' hardship." *AMC Realty*, 270 B.R. at 144.[3]

### C.      The Trustee May Not Unilaterally and Retrospectively Alter Case Management Plans Already Agreed with the Objecting Defendants

32.      Should the Court nevertheless grant the Trustee's Motion, its application should

be limited to future CMPs.  The Trustee should not be permitted to circumvent the existing

CMPs—which he entered into (and which the Court so-ordered just last year and earlier this

year)—by seeking to collaterally change them through an amendment of the 2016 Order.

33.      The Court authorized the submission of discovery disputes in any of the Trustee's

adversary proceedings to arbitrator Frank Maas pursuant to Fed. R. Bankr. P. 9019(c), which

provides that "[o]n stipulation of the parties to any controversy affecting the estate the court may

authorize the matter to be submitted to final and binding arbitration."

34.      Each of the Objecting Defendants jointly stipulated to a CMP with the Trustee

that was subsequently so-ordered by the Court.  *See* Ex. 1.  Each of these CMPs includes a clause

affirming that the parties agree to arbitrate all discovery disputes in accordance with the original

Order and citing to that Order.  *See id.* (collecting citations).  These joint stipulations to arbitrate

---

[3] In addition, motions to modify orders under Rule 60(b)(5) and Rule 60(b)(6) must be made within a reasonable time.  Fed. R. Civ. 60(c).  Seven years is not a "reasonable time." *See, e.g.*, *Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (delay of 26 months was "patently unreasonable").  The Trustee has offered no explanation for his delay here, and his Motion should be denied for that reason as well.

in accordance with the 2016 Order constitute binding agreements that the Trustee may not unilaterally alter.

35.     A so-ordered joint stipulation is "enforceable as a contract." *In re Royster Co.*, 132 B.R. 684, 687 (Bankr. S.D.N.Y. 1991).  A court has "a duty to enforce the stipulation [that it] approved" and so-ordered. *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 2005 WL 3750749, at *7 (S.D.N.Y. July 13, 2005).

36.     Any modification of a contract embodied in a so-ordered joint stipulation "is subject to the general principles governing the construction, interpretation and law of contracts." *Royster*, 132 B.R. at 688.  Accordingly, courts "should not disturb a valid stipulation absent a showing of good cause" sufficient to invalidate a contract such as "fraud, collusion, mistake or duress or unless the agreement is unconscionable or contrary to public policy or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." *Katel Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010).

37.     The Trustee has not even attempted to set forth any of the bases necessary for annulling his agreement to arbitrate under the terms set forth in the joint stipulation, nor could the Trustee conceivably do so.  The Trustee himself proposed the terms of the 2016 Order and knowingly and voluntarily agreed to the relevant provisions of the Objecting Defendants' CMPs.

38.     Finally, the terms of the Trustee's contract to arbitrate discovery disputes in accordance with the 2016 Order are unambiguous.  The Trustee has thus asserted no basis to unilaterally alter these terms and evade enforcement of his binding stipulation.

## **CONCLUSION**

Because the Trustee has failed to justify modifying the 2016 Order under Rules 60(b)(5) or 60(b)(6), the Trustee's Motion should be denied in its entirety.  In the alternative, and at minimum, the Court should provide that any modification of the 2016 Order's cost-allocation

13

provision will not apply to adversary proceedings with previously-entered CMPs that provide for

mandatory discovery arbitration and cite the existing 2016 Order (including but not limited to the

adversary proceedings of the Objecting Defendants listed in Exhibit 1 hereto).

Dated:    New York, New York
          September 6, 2023

                                        Respectfully submitted,

                                        FRIEDMAN KAPLAN SEILER
                                          ADELMAN & ROBBINS LLP

                                        s/ Lindsay Funk
                                        Robert J. Lack (rlack@fklaw.com)
                                        Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
                                        Lindsay Funk (lfunk@fklaw.com)
                                        7 Times Square
                                        New York, NY 10036-6516
                                        Telephone: (212) 833-1100

                                        *Attorneys for Defendant*
                                        *Multi-Strategy Fund Limited*
                                        (Adv. Pro. No. 12-01205-CGM)


                                        HERBERT SMITH FREEHILLS
                                          NEW YORK LLP
                                        Scott Balber (Scott.Balber@hsf.com)
                                        Jonathan Cross (Jonathan.cross@hsf.com)
                                        Jared Stein (Jared.Stein@hsf.com)
                                        450 Lexington Avenue, 14th Floor
                                        New York, NY  10017
                                        Telephone: (917) 542-7600

                                        *Attorneys for Defendants*
                                        *Bank Hapoalim B.M. and*
                                        *Bank Hapoalim (Switzerland) Ltd.*
                                        (Adv. Pro. No. 12-01216-CGM)

14

WUERSCH & GERING LLP
Gregory F. Hauser (gregory.hauser@wg-law.com)
Joshua A. Dachs (joshua.dachs@wg-law.com)
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050

*Attorneys for Defendants Bank Vontobel AG
f/k/a Bank J. Vontobel & Co. AG and
Vontobel Asset Management, Inc.*
(Adv. Pro. No. 12-01202-CGM)


HERBERT SMITH FREEHILLS
  NEW YORK LLP
Marc J. Gottridge (marc.gottridge@hsf.com)
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600

*Attorneys for Defendants Barclays Bank (Suisse)
S.A., Caixabank S.A., as successor by merger to
Barclays Bank S.A., and Zedra Trust Company
(Jersey) Limited (f/k/a Barclays Private Bank and
Trust Limited)*
(Adv. Pro. No. 11-02569-CGM)


KATTEN MUCHIN ROSENMAN LLP
Anthony L. Paccione (anthony.paccione@katten.com)
Mark T. Ciani (mark.ciani@katten.com)
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800

*Attorneys for Defendant Barfield Nominees Limited*
(Adv. Pro. No. 12-01669-CGM)

4868-6618-5598.2

DENTONS US LLP
Amianna Stovall (Amianna.stovall@dentons.com)
David Kornblau (david.kornblau@dentons.com)
Carter White (carter.white@dentons.com)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700

*Attorneys for Defendant BPER Banca S.P.A.,*
*as successor to Banca Carige S.P.A.*
(Adv. Pro. No. 11-02570-CGM)


LOWENSTEIN SANDLER LLP
Jennifer Fiorica Delgado (jdelgado@lowenstein.com)
1251 Avenue of the Americas
New York, NY 10022
Telephone: (646) 414-6962

*Attorneys for Defendants Bureau of Labor*
*Insurance and Bureau of Labor Funds*
(Adv. Pro. No. 11-02732-CGM)


CIRILLO LAW OFFICE
Richard A. Cirillo (Richard@Cirillo-Law.com)
246 East 33rd Street - #1
New York, NY 10016
Telephone: (917) 541-6778

*Attorneys for Defendants Korea Exchange Bank,*
*National Bank of Kuwait S.A.K. and NBK Banque*
*Privee (Suisse) S.A., and Kookmin Bank*
(Adv. Pro. Nos. 11-02572-CGM, 11-02554-CGM,
12-01194-CGM)

4868-6618-5598.2

KELLNER HERLIHY GETTY &
  FRIEDMAN, LLP
Douglas A. Kellner (dak@khgflaw.com)
470 Park Avenue South—Seventh Floor
New York, New York 10016-6951
Telephone: (212) 889-2121

*Attorneys for Defendant Parson Finance Panama
S.A.*
(Adv. Pro. No. 11-02542-CGM)


JONES DAY
Thomas E. Lynch (telynch@jonesday.com)
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939

*Attorneys for Defendant QS Finance Ltd.
(formerly known as Quilvest Finance Ltd.)*
(Adv. Pro. No. 11-02538-CGM)


ROPES & GRAY LLP
Martin J. Crisp (Martin.Crisp@ropesgray.com)
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 596-9193

*Attorneys for Defendant Schroder & Co. Bank AG*
(Adv. Pro. No. 12-01210-CGM)

WILMER CUTLER PICKERING HALE AND
  DORR LLP
George W. Shuster, Jr.
(george.shuster@wilmerhale.com)
Benjamin W. Loveland
(benjamin.loveland@wilmerhale.com)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7518

*Attorneys for Defendants SNS Bank N.V. and SNS*
*Global Custody B.V.*
(Adv. Pro. No. 12-01046-CGM)

4868-6618-5598.2

ALLEGAERT BERGER & VOGEL LLP
John F. Zulack (jzulack@abv.com)
Lauren J. Pincus (lpincus@abv.com)
Bianca Lin (blin@abv.com)
111 Broadway, 20th Floor
New York, NY 10006
Telephone: (212) 571-0550
Email: FairfieldProceedings@abv.com

-and-

MAYER BROWN LLP
Steven Wolowitz (swolowitz@mayerbrown.com)
Christopher J. Houpt (choupt@mayerbrown.com)
Bradley A. Cohen (bacohen@mayerbrown.com)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500

*Attorneys for Societe Generale Private Banking
(Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.),
individually and as successor in interest to Societe
Generale Private Banking (Lugano-Svizzera) S.A.;
Socgen Nominees (UK) Limited; Lyxor Asset
Management Inc. (f/k/a SG Asset Management,
Inc.), as General Partner of SG AM AI Premium
Fund L.P.; SG Audace Alternatif (f/k/a SGAM AI
Audace Alternatif), now acting by and through its
manager, Amundi Asset Management S.A.S., as
successor in interest to Lyxor Asset Management
S.A.S.; SGAM AI Equilibrium Fund (f/k/a SGAM
Alternative Diversified Fund), now acting by and
through its liquidator, KPMG Advisory Sarl; Lyxor
Premium Fund (f/k/a SGAM Alternative Multi
Manager Diversified Fund), now acting by and
through its trustee, Societe Generale S.A.; Societe
Generale S.A., as Trustee for Lyxor Premium Fund
and Successor in Interest to Banque de Reescompte
et de Placement a/k/a Barep and to Societe
Generale Asset Management Banque d/b/a Barep;
and Societe Generale Luxembourg (f/k/a Societe
Generale Bank & Trust S.A.)*
(Adv. Pro. No. 12-01677-CGM)

SULLIVAN & CROMWELL LLP
Andrew J. Finn (finna@sullcrom.com)
Mark A. Makar (makarm@sullcrom.com)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

Diane L. McGimsey (mcgimseyd@sullcrom.com)
1888 Century Park East
Los Angeles, California 90067
Telephone:  (310) 712-6600

*Attorneys for Defendants Standard Chartered
Financial Services (Luxembourg) S.A. (f/k/a
American Express Financial Services (Luxembourg)
S.A.), Standard Chartered Bank International
(Americas) Ltd. (f/k/a American Express Bank
International), and Standard Chartered Holdings
Inc. (as successor in interest to Standard Chartered
International (USA) Ltd., f/k/a American Express
Bank Ltd.)*
(Adv. Pro. No. 12-01565-CGM)


BECKER, GLYNN, MUFFLY, CHASSIN &
   HOSINSKI LLP
Zeb Landsman (zlandsman@beckerglynn.com)
Tara Q. Higgins (thiggins@beckerglynn.com)
299 Park Avenue
New York, NY 10171
Telephone: (212) 888-3033

*Attorneys for Defendant The Sumitomo Trust &
Banking Co., Ltd.*
(Adv. Pro. No. 11-02573-CGM)

4868-6618-5598.2

JENNER & BLOCK LLP
Richard Levin (rlevin@jenner.com)
Carl Wedoff (cwedoff@jenner.com)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600

Vincent E. Lazar (vlazar@jenner.com)
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350

*Attorneys for Defendants Trincastar Corporation
and Unifortune Asset Management SGR SPA, now
known as Unifortune S.r.l. and Unifortune
Conservative Fund*
(Adv. Pro. Nos. 11-02731-CGM, 11-02553-CGM)

4868-6618-5598.2