**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Plaintiff Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERNDISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 10-05286 (CGM) |
| Plaintiff, | |
| v. | |
| LEGACY CAPITAL LTD. and KHRONOS LLC, | |
| Defendants. | |

**DECLARATION AND STATUS REPORT OF JASON S. OLIVER IN SUPPORT OF**
**TRUSTEE'S REQUEST FOR INFORMAL CONFERENCE REGARDING**
**EXTENSION OF DISCOVERY DEADLINES**

I, Jason S. Oliver, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a member of the New York Bar and a partner at Baker & Hostetler LLP, counsel for plaintiff Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll*, and the estate of Bernard L. Madoff.

2.     Pursuant to Local Bankruptcy Rule 7007-1 and Judge Morris's Chambers Rules, the Trustee has conferred with counsel for Legacy Capital Ltd. ("Legacy"), Rafael Mayer, David Mayer, Prince Resources LDC ("Prince Resources"), Prince Capital Partners LLC ("Prince Capital"), and Khronos Liquid Opportunities Fund ("KLOF," together, the "Defendants") regarding the Trustee's application to extend the discovery deadlines in this adversary proceeding (the "Legacy Initial Transferee Action") and *Picard v. Mayer et al. (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM) (Bankr. S.D.N.Y.) (the "Legacy Subsequent Transferee Action," and together with the Legacy Initial Transferee Action, the "Legacy Adversary Proceedings").

3.     The Trustee submits this Declaration and Status Report in support of his request for an informal conference on his application for an extension of the discovery deadlines in the Legacy Adversary Proceedings.

**Salient Procedural History for the Trustee's Application**

4.     On December 6, 2010, the Trustee commenced the Legacy Initial Transferee Action. After a series of motions to withdraw the reference and omnibus briefing, the Legacy Initial Transferee Action was returned to the Bankruptcy Court. On July 2, 2015, the Trustee amended his complaint and sought to avoid and recover from Legacy and Khronos,

LLC ("Khronos"), approximately $213,180,068 of initial transfers of BLMIS customer property.

5.       Legacy and Khronos moved to dismiss all counts of the amended complaint, arguing that the Trustee had not adequately alleged willful blindness on the face of his complaint as required by *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC.*, 516 B.R. 18 (S.D.N.Y. 2014) (the "Rakoff Decision"). On April 12, 2016, Judge Bernstein dismissed Khronos from the Legacy Initial Transferee Action and dismissed each count of the amended complaint other than Count One (actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A)). *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016) (the "2016 Motion to Dismiss Decision"); Order, Legacy Initial Transferee Action, ECF No. 137.

6.       In support of the motions to dismiss, counsel for Legacy and Khronos represented to the Court (Legacy's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint, Legacy Initial Transferee Action, ECF No. 118, at 19; Khronos's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint, Legacy Initial Transferee Action, ECF No. 120-12, at 19; Mot. Dismiss Tr. at 64:22-65:1 (October 28, 2015)) that Rafael Mayer, a managing director of both Legacy and Khronos, never received a key document from an executive at Renaissance Technologies LLC ("Renaissance") that raised specific concerns about BLMIS. Judge Bernstein gave credence to Legacy's and Khronos's representation that Rafael Mayer did not receive the November 21 email in the 2016 Motion to Dismiss Decision. Specifically, in footnote 13 of the decision, Judge Bernstein stated "the [November 21, 2003 email] discussed irregularities with respect to BLMIS' investment (e.g. impossible options trading volume), but Rafael

3

was not a recipient of this email, and the Amended Complaint does not allege that he saw it.

Therefore, the information within the email cannot be imputed to Rafael or Legacy."

Despite counsel's representations to the Court that Rafael Mayer never received this email,

on June 30, 2023 Legacy produced several copies of the November 21, 2003 email that had

been forwarded to Rafael Mayer (*see* ¶ 32, *infra*).

7.      The Trustee moved for summary judgment on his remaining claim against

Legacy.  On June 25, 2019, Judge Bernstein issued a Memorandum Decision and Order

Granting Relief under Federal Rule of Civil Procedure 56(g) concluding the Trustee had

shown there were no genuine issues of fact regarding his prima facie case, deeming certain

facts established, and directing the parties to coordinate for the scheduling of trial on

Legacy's defenses. Legacy Initial Transferee Action, ECF Nos. 221, 222.

8.      The Trustee and Legacy subsequently entered a stipulation, so ordered by the

Court ("Stipulated Order"), providing: (i) the parties' consent to the Bankruptcy Court's

entry of a final order and judgment; and (ii) entry of final order and judgment (the "Final

Judgment") against Legacy in the amount of $79,125,781. Final Judgment and Order,

Legacy Initial Transferee Action, ECF No. 231. The Stipulated Order provided that Legacy

and the Trustee "expressly and knowingly grant their consent for the Bankruptcy Court to

enter final orders and judgments on all claims in the Complaint, subject only to appellate

review under 28 U.S.C. § 158(d)."  Legacy Initial Transferee Action, ECF No. 230, ¶ 2.

The Stipulated Order further provided that the $79,125,781 in transfers were avoidable,

avoided, and recoverable from Legacy under sections 548(a)(1)(A) and 550(a) of the

Bankruptcy Code. *Id*.

9.      The Trustee later sought to enforce the Final Judgment, and Legacy provided

verifications to the Trustee's post-judgment interrogatories and represented that it was impecunious and could not satisfy the Final Judgment to which it had consented.

10.    The Trustee served a Bankruptcy Rule 2004 Subpoena upon Khronos—Legacy's service provider—to investigate all subsequent transfers of BLMIS customer property, including those made to Montpellier International Ltd. ("Montpellier") and Prince Assets Ltd. (f/k/a Prince Assets LDC) ("Prince"), Legacy's shareholders at the time of BLMIS's collapse.  After requesting a 30-day extension to respond to the subpoena (which the Trustee granted) and without attempting to negotiate, Khronos moved to quash the subpoena.  Among other things, Khronos argued that it did not have possession, custody or control of documents concerning Prince as it stopped providing services to Prince on December 31, 2015.  Khronos refused to provide the name of the new service provider.

11.    Judge Bernstein entered an Order requiring the production of documents sought by the Trustee as well as disclosure of the name of the entity that replaced Khronos as Prince's service provider.  During oral argument on the motion, Judge Bernstein noted that the name of the new service provider should have been provided to the Trustee before any motion to quash was made.  No earlier than the deadline set by the Bankruptcy Court, Khronos finally disclosed the name of the new service provider: Prince Capital, an alleged recipient of BLMIS subsequent transfers and a "wholly owned subsidiary of Khronos," according to publicly available records, "at which [Khronos] keep[s] [its] books and records."

12.    With the entry of Final Judgment, the Trustee sought and obtained a direct appeal to the U.S. Court of Appeals for the Second Circuit on the issues concerning the good faith defense presented in the Legacy Initial Transferee Action. *Picard v. Legacy*

*Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020).

13.     On August 30, 2021, the Second Circuit issued a decision, holding that in a

SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is

governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of

pleading a transferee's lack of good faith. *In re Bernard L. Madoff Inv. Sec. LLC.*, 12 F.4th

171, at 191-92, 195-96 (2d Cir. 2021) (the "Good Faith Decision").  The Good Faith

Decision vacated both the Rakoff Decision and the 2016 Motion to Dismiss Decision and

remanded the Legacy Initial Transferee Action to Judge Morris for further proceedings

consistent with the opinion. *Id*. at 200.

14.     On November 11, 2020, the Trustee commenced the Legacy Subsequent

Transferee Action.  The Legacy Subsequent Transferee Action is limited to a single claim

for recovery of the Legacy subsequent transfers pursuant to section 550 of the Bankruptcy

Code.  Because of Rafael Mayer's and his brother David Mayer's control over the corporate

subsequent transferees entities and the use of that control to conceal BLMIS customer

property by dissolving the subsequent transferee entities, the Legacy Subsequent Transferee

Action sought to hold the Mayers individually liable as alter egos of such entities and to

return the transfers to the BLMIS customer estate.

15.     Defendants Rafael Mayer, David Mayer, Prince Resources, Prince Capital,

and KLOF filed motions to dismiss the Legacy Subsequent Transferee Action.  On October

27, 2021, Judge Morris issued a memorandum decision denying the motions to dismiss filed

by Rafael Mayer, David Mayer, and KLOF.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) (the "2021

Motion to Dismiss Decision").  Defendants Prince Resources and Prince Capital agreed to

withdraw their motions to dismiss with prejudice following the Good Faith Decision.

16.     Following this Court's denial of the motions to dismiss, on January 10, 2022, Rafael Mayer, David Mayer, Prince Resources, Prince Capital, and KLOF all answered the Trustee's complaint. Legacy Subsequent Transferee Action, ECF Nos. 104-107.

17.     On January 26, 2022, Rafael Mayer, David Mayer, Prince Resources, Prince Capital, and KLOF filed a motion in the District Court seeking to immediately withdraw the reference of the Legacy Subsequent Transferee Action (the "Motion to Withdraw the Reference"). On March 17, 2022, Judge Denise L. Cote issued a memorandum decision denying the Motion to Withdraw the Reference, without prejudice to refile when the case was trial ready.

18.     On February 24, 2022, the Trustee filed a motion to consolidate the Legacy Adversary Proceedings for all pre-trial purposes. Legacy Initial Transferee Action, ECF No. 257; Legacy Subsequent Transferee Action, ECF No. 111. Defendants in the Legacy Initial Transferee Action and the Legacy Subsequent Transferee opposed this motion. On April 25, 2022, this Court formally consolidated discovery on the issue of Legacy's "good faith" in the Legacy Adversary Proceedings. (Legacy Initial Transferee Action, ECF No. 269; Legacy Subsequent Transferee Action, ECF No. 123).

19.     On June 13, 2022, Judge Morris entered a Second Amended Stipulated Case Management Order in the remanded Legacy Initial Transferee Action. The Order set fact and expert discovery completion dates of December 22, 2023 and September 30, 2024, respectively. (Legacy Initial Transferee Action, ECF No. 269).

20.     On June 28, 2022, Legacy filed its Amended Answer and Affirmative Defenses in connection with the remanded claim.

21.      On August 23, 2022, Judge Morris entered a Stipulated Case Management

Order in the Legacy Subsequent Transferee Action. The Case Management Order tracks the

schedule in the Legacy Initial Transferee Action and provides for fact and expert discovery

completion dates of December 22, 2023 and September 30, 2024, respectively. (Legacy

Subsequent Transferee Action, ECF No. 124).

**Status of Fact Discovery in the Legacy Adversary Proceedings**

**A. Party Discovery**

22.      On January 23, 2023, the Trustee served all Defendants in the Legacy

Adversary Proceedings with his First Set of Document Requests. After the Trustee granted

Defendants' request for an extension of time to respond, on March 31, 2023, Defendants

provided their respective responses and objections to the Trustee's First Set of Document

Requests.

23.      On February 9, 2023, well before Legacy had responded to the Trustee's

Document Requests, the Trustee participated in a meet and confer with Legacy to discuss

document production on the issue of "good faith." During the meet and confer, Legacy's

counsel advised that documents were collected from a server maintained by Khronos using

search terms developed in 2010. At the meet and confer, counsel for the Trustee asserted

that it was unlikely that search terms were even needed in this adversary proceeding because

Legacy's *sole* business was its investment in BLMIS, and thus every document in Legacy's

possession, custody, or control was relevant.

24.      On February 20, 2023, Legacy provided the search terms and a list of

custodians it used to collect responsive documents in 2010. Initially, and without any

support, Legacy contended that the search terms and custodians it used to collect documents

from Khronos were "overbroad." Legacy further objected to the review and production of any post-2008 electronic discovery ("ESI"). In response, the Trustee requested a standard ESI "hit report" to continue document production negotiations.

25.     On March 14, 2023, the Trustee posed specific document preservation and collection questions that related to Legacy's collection of data and the "Khronos server." To date, Legacy's counsel has yet to address in writing the Trustee's questions concerning document collection and preservation other than to claim it was proper, which the Trustee continues to dispute.

26.     Legacy waited until the end of April 2023 to employ an ESI vendor necessary for document production and continued discussions on search term hits and resulting "burden" on Legacy's search terms and custodians. On April 26, 2023, Legacy provided a search term and custodian hit report for the Trustee's review.

27.     On May 17, 2023, the Trustee wrote to Legacy regarding deficiencies in its Responses and Objections to the Trustee's First Set of Document Requests, as well as to address certain document production issues evident from Defendant's April 26, 2023 hit reports, including *inter alia*, Legacy's refusal to review and produce post-2008 ESI.

28.     Following a June 1, 2023 meet and confer, on June 14, 2023 the Trustee proposed a detailed protocol for the review of post-2008 ESI. Consistent with Federal Rule of Evidence 502(d), the Trustee's proposal included a mechanism for Legacy to perform a privilege review and shifted costs to the Trustee to review the entirety of Legacy's review set from ESI that was already housed by Legacy's new ESI vendor. The Trustee's proposal would have yielded a complete review set by July 14, 2023. On July 17, 2023, Legacy rejected the Trustee's proposal.

29.     On June 30, 2023, Legacy commenced its rolling "good faith" document production in response to the Trustee's First Set of Document Requests. The Trustee has received only limited productions from Legacy, Rafael Mayer, KLOF, Prince Resources, and Prince Capital. Prince Capital, for example, produced on June 30, 2023 a grand total of 140 documents, consisting solely of corporate documents and financial statements. On August 23, 2023, Prince began producing emails to the Trustee, many of which are duplicative. Defendant David Mayer has yet to produce a single document.

30.     On August 2, 2023, non-party Renaissance made a supplemental production of documents in response to the Trustee's 2010 Bankruptcy Rule 2004 Subpoena. The production included numerous relevant emails between Rafael Mayer and Renaissance employees that Legacy has never produced relating to Bernard Madoff, Legacy, and Meritage Fund Ltd. (an indirect BLMIS investor). The Trustee promptly raised these production and preservation concerns by letter dated August 17, 2023. To date, the Trustee has not received a response to his specific allegations of document production deficiencies.

31.     Email exchanges between Rafael Mayer and Renaissance employees concerning the BLMIS investment are highly relevant to Legacy's good faith defense. As alleged in the Legacy Initial Transferee Action, in 2003, Renaissance conducted an analysis of BLMIS's strategy, the results of which were shared with Rafael Mayer. Renaissance's analysis demonstrated, among other things, that (i) the option volume necessary to achieve Madoff's strategy did not exist on the market; (ii) the timing of Madoff's trades was statistically impossible; and (iii) Madoff's unusual fee structure resulted in his forfeiture of substantial fees.

32.     Legacy's document production demonstrates that Legacy and Khronos made

misrepresentations to the Court concerning the extent of Rafael Mayer's communications

with Renaissance.  As set forth in Paragraph 6, counsel represented to Judge Bernstein

during the motion to dismiss phase of the Legacy Initial Transferee Action that Rafael

Mayer did *not* receive a key November 21, 2003 communication that discussed

irregularities with respect to BLMIS's investment.  Legacy's recent production of

documents, however, proves that these were misrepresentations that were used to gain a

tactical advantage in connection with the motion to dismiss.  In fact, Judge Bernstein

included counsel's related arguments in the 2016 Motion to Dismiss Decision and refused to

impute this knowledge to Rafael Mayer and Legacy.  Legacy's production includes multiple

examples of Rafael Mayer receiving the November 21 communication from a Renaissance

employee.  Accordingly, in the face of these misrepresentations and the presence of new

unproduced emails from non-party Renaissance, the Trustee has a reasonable basis to

question whether he is receiving all documents and communications between Renaissance

and Legacy.

33.     The Trustee has explained to Legacy that he does not believe that depositions

of Renaissance employees should commence when there are numerous unresolved issues

concerning missing communications between Renaissance and Legacy employees.

34.     The case management orders in the Legacy Initial Transferee Action and the

Legacy Subsequent Transfer Action refer discovery disputes to the Honorable Frank Maas,

including disputes related to electronically stored information, questions of privilege,

confidentiality, work product, relevance, scope, and burden.  Initial meet and confers have

occurred with Legacy and counsel for David Mayer.  It is anticipated that meet and confers

with all Defendants will continue well into the fall, with the need to involve Judge Maas in

various discovery disputes.

35.     As stated above (*see* ¶ 29 *supra*), even after a meet and confer where counsel represented that they had reviewed numerous documents with David Mayer, he has refused to produce a single document in response to the Trustee's January 23, 2023 document requests.  Likewise, on July 25, 2023, the Trustee was forced to serve KLOF with a discovery deficiency letter just to obtain documents that KLOF committed to provide in its March 31, 2023 responses and objections.  The Trustee proposed meet and confer dates to accommodate opposing counsel's travel schedule.  KLOF's counsel declined to schedule a meet and confer with the Trustee until after the parties participated in a meet and confer concerning global scheduling.  KLOF's counsel did not attend the global meet and confer. On August 15, 2023, KLOF made an initial limited production consisting only of 66 basic corporate documents and financial statements.  On September 7, 2023, the Trustee and KLOF participated in an initial meet and confer. During that meet and confer, KLOF's counsel advised that he would need approximately 3 months to produce the documents he committed to produce in March of 2023. Additionally, KLOF's counsel advised that he has not yet begun to search through his client's emails in response to any of the Trustee's Document Requests.

36.     On May 9, 2023—nearly 11 months after Legacy filed its Amended Answer—Legacy served the Trustee with its First Set of Requests for the Production of Documents.  Pursuant to an agreement between the parties, the Trustee served his responses and objections on July 11, 2023.  On July 27, 2023, Legacy served the Trustee with a discovery deficiency letter in connection with his responses and objections.

37.     On August 24, 2023, the Trustee participated in his first meet and confer

with Legacy concerning the Trustee's responses and objections.  As discussed during that

meet and confer, the Trustee is in the process of preparing search terms for the document

requests where he has agreed to perform searches of the BLMIS database.  The Trustee and

Legacy are also in the process of working through discovery issues concerning work

product privilege assertions that were discussed during the August 24, 2023 meet and

confer.

38.     On August 14, 2023—19 months after he filed his Answer—David Mayer

served the Trustee with his First Set of Requests for the Production of Documents.  The

Trustee's responses and objections to those requests will be served on September 13, 2023.

39.     No other Defendants have served discovery requests in the Legacy

Adversary Proceedings.

**B.  Third Party Discovery**

40.     On January 28, 2016, the Trustee served non-party BNP Paribas, S.A

("BNPP") with a Rule 45 subpoena for documents relevant to a credit facility it entered into

with Legacy and the underlying BLMIS investment (the "Trustee's BNPP Subpoena").

After a series of meet and confers in 2016, BNPP agreed to produce limited documents

responsive to a portion of the Trustee's BNPP Subpoena. As a result of Judge Bernstein's

2016 Motion to Dismiss Decision and its impact on the remaining claims in the Legacy

Initial Transferee Action, BNPP refused to produce documents in response to the other

requests set forth in the Trustee's Subpoena, including those that concern Legacy's "good

faith" affirmative defense.

41.     On October 3, 2022, Legacy provided the Trustee with notice of a Rule 45

document subpoena it intended to serve upon BNP Paribas Securities Corp. (the "Legacy

BNPP Subpoena"). The Legacy BNPP Subpoena requested documents concerning its affirmative defense of good faith. Legacy's document requests significantly overlapped with the Trustee's BNPP Subpoena. The Trustee was not included in any meet and confers between Legacy and BNPP concerning the Legacy BNPP Subpoena.

42.     On February 27, 2023, Legacy issued a deposition subpoena to Adam Albin, a former employee of BNP Paribas who was unknown to the Trustee. The deposition subpoena sought Mr. Albin's deposition on March 15, 2023. Cleary Gottlieb was retained to defend Mr. Albin's deposition and cancelled the initially noticed March 15 deposition due to a scheduling conflict.

43.     The Trustee issued a Rule 45 document subpoena to Adam Albin. On March 14, 2023, Mr. Albin's counsel agreed to accept service of the Trustee's document subpoena.

44.     On May 8, 2023, the Trustee renewed his request for document production from BNPP in response to the Trustee's BNPP Subpoena. In his correspondence, the Trustee noted the overlap in the document requests in the Trustee's BNPP Subpoena and Legacy's BNPP Subpoena.

45.     On May 23, 2023, Legacy produced 30 documents that related to Adam Albin's deposition. Within that production, there were only 16 documents that mentioned Mr. Albin, and 10 of which were Outlook contacts for Mr. Albin.

46.     On June 1, 2023, the Trustee objected to moving forward with Adam Albin's deposition prior to receiving documents produced from both Mr. Albin and BNPP in response to the issued subpoenas. Specifically, the Trustee noted that, should Mr. Albin's deposition go forward before a completed document production, he would seek to hold Mr. Albin's deposition open until after the documents were produced, likely necessitating the

14

need to depose Mr. Albin on more than one occasion.  Mr. Albin's counsel advised that his

client would not sit for a deposition while there were unresolved document production

issues.

47.     After several rounds of negotiations, on June 2, 2023, Mr. Albin made a 24-

page production of documents from his personal email files.

48.     Between June 5, 2023 and June 22, 2023, counsel for Legacy and BNPP

exchanged letters casting blame on one another for the alleged delay of BNPP's document

production in response to the Trustee's and Legacy's subpoenas as well as in connection

with the scheduling Mr. Albin's deposition.

49.     To date, Adam Albin's deposition has not been scheduled.  Legacy has not

moved to compel the deposition of Mr. Albin.

50.     BNPP has resisted producing documents in response to the issued subpoenas.

Beginning on June 7, 2023, counsel for the Trustee, Legacy and BNPP began participating

in joint meet and confers to discuss search terms, custodians, and document productions in

response to the Trustee's BNPP Subpoena and Legacy's BNPP Subpoena.

51.     The Trustee and BNPP are in the process of negotiating search terms.  The

Trustee and Legacy are awaiting information from BNPP's counsel concerning a proposed

protocol for non-email document production.  Further, BNPP's counsel has identified a hard

copy "Legacy File" in Dublin, Ireland consisting of approximately 88 documents.  BNPP's

counsel has yet to explain the contents of that file but continues to maintain that United

States counsel is not authorized to accept service of a foreign subpoena for that file.

52.     Despite the Trustee's and BNPP's efforts to reach resolution on the

document production issues, it is unknown when an agreement will be reached and the

related timing of the document production.  Further, it is unknown whether BNPP will

require the Trustee and Legacy to proceed through foreign discovery means to obtain the

"Legacy File" that has been identified and resides in Ireland.

**The Trustee's Application for an Extension of Time**

53.    On August 7, 2023, counsel for the Trustee first contacted counsel for the

Defendants seeking an extension of the discovery deadlines in the Legacy Adversary

Proceedings.  In his correspondence, the Trustee requested an extension of at least one year

of the fact discovery schedule in the Legacy Adversary Proceedings.

54.    On August 11, 2023, counsel for Legacy and Rafael Mayer responded to the

Trustee's extension requests stating that the Defendants "do not agree that the pace of

discovery necessitates another year or more of discovery."  Defendants did not offer a

counterproposal but agreed to meet and confer on the issue of a discovery extension.

55.    On August 18, 2023, counsel for the Trustee and the Defendants, with the

exception of KLOF, held a meet and confer where the parties discussed the progression of

discovery in the Legacy Adversary Proceedings.  The parties also discussed the Trustee's

August 7, 2023 request for an extension of the interim September 22, 2023 deadline to serve

document requests and subpoenas and the December 22, 2023 fact discovery end date.

56.    On August 21, 2023, the Trustee sent a letter to Defendants' counsel setting

forth the various bases for his request for an 18-month extension of the fact discovery

schedule.  The Trustee's correspondence concluded with the following passage: "The

Trustee looks forward to defendants' response to this letter and, if they don't agree to this

request, at least a reasonable counterproposal.  In the event the parties are unable to agree on

a reasonable extension, the Trustee intends to make an application to Judge Morris."  A true

and accurate copy of the Trustee's August 21, 2023 letter is attached hereto as Exhibit A.

57.     Pursuant to the Defendants' request, the Trustee's August 21 letter included domestic and foreign third parties that the Trustee viewed as potential document subpoena targets. These third parties include various service providers to Legacy. While the Trustee received limited financial reports that were apparently created by certain of these service providers in prior a Rule 2004 production, made by Rafael and David Mayer, summer 2023 was the first time the Trustee had enough information to appreciate the extent of the services undertaken by these entities. The relevance of the service providers is that certain services previously thought to have been provided by Khronos to Legacy concerning the BLMIS investment may have been delegated to other service providers.

58.     At 4:00pm on August 31, 2023, Legacy rejected the Trustee's proposal for an 18-month discovery request. Legacy's correspondence further stated that "Legacy expects that document production on all issues of good faith—from all defendants in both cases with custody and control over documents that relate to good faith—will be completed by the end of November [2023]." Despite this representation concerning the timing of document productions on the issue of good faith, Legacy proposed only a 45-day extension of the interim September 22, 2023 deadline and the December 22, 2023 fact discovery end date. A true and accurate copy of Legacy's August 31, 2023 letter is attached hereto as Exhibit B.

59.     At 9:01am on September 1, 2023, the eve of the Labor Day holiday weekend, and before the Trustee could respond to Legacy's correspondence from the prior evening, Legacy's counsel sent a letter to Hon. Frank Maas seeking to raise the parties' dispute concerning the schedule. A true and accurate copy of Legacy's September 1, 2023 letter is attached hereto as Exhibit C.

60.     Legacy's September 1 letter to Judge Maas misrepresents the efforts the

Trustee has undertaken to raise his application for an extension of the discovery schedule.

The Trustee began discussions with the Defendants on August 7 regarding the application

and Legacy now seeks to have Judge Maas refuse the application before it is made to  the

Court.

61.     Today, September 7, 2023, counsel for Prince Resources and Prince Capital

(the "Prince Defendants") wrote to the Trustee concerning his request for an extension of

discovery.  In the letter, the Prince Defendants "reluctantly" agree to a 45-day extension of

"good faith" discovery and a 6-month extension for remaining fact discovery, *provided the

Trustee agrees to waive prejudgment interest*.  Although, the Trustee has not had the

opportunity to respond to the letter, this offer will certainly be rejected out-of-hand.  The

Trustee has discussed above why a 45-day extension of good faith discovery is unworkable.

Worse, making an extension of discovery precipitated by the Defendants' delay contingent

on a waiver of prejudgment interest demonstrates the level of gamesmanship the Trustee has

had to endure.

62.     The Trustee has made a good faith effort to resolve the dispute with the

Defendants counsel regarding the Trustee's request to extend the discovery deadlines,

pursuant to Local Bankruptcy Rule 7007-1 and Judge Morris's Chambers Rules. The Prince

Defendants' letter of even date does not alter the Trustee's position with respect to this

application.

63.     The Trustee submits this affirmation pursuant to Local Bankruptcy Rule

7007-1 and Judge Morris's Chambers Rules to certify that counsel have conferred on this

issue.

I hereby declare under penalty of perjury that the foregoing statements are true and correct.

Executed on the 7th day of September 2023, at New York, New York.

/s/ Jason S. Oliver
Jason S. Oliver