**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Case No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>MALCOLM SAGE and LYNNE FLORIO,<br><br>Defendants. | Adv. Pro No. 23-01099 (CGM) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF THEIR MOTION TO DISMISS**

12206916-1

Table of Contents

Page

The Statute of Repose for the Subsequent Transferee Claims ............................................................... 1

The First Claim for Relief – The Subsequent Transfer Claim Against Lynne Florio ...................... 2

The First Claim for Relief – The Single Satisfaction Rule as Applied to Malcom Sage ................ 5

The Second Claim for Relief ................................................................................................................. 6

## Table of Authorities

Page

CASES

*118 E. 60th Owners, Inc. v. Bonner Props., Inc.*,
  677 F.2d 200 (2d Cir. 1982) ................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................3

*Burberry Ltd. v. Horowitz*,
  534 F. App'x 41 (2d Cir. 2013) ...........................................................................................9

*Callaway v. C.I.R.*,
  231 F.3d. 106 (2d Cir. 2000) ................................................................................................5

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
  56 F.3d 3598 (2d Cir. 1995) ................................................................................................9

*Gibbons v. Bristol-Myers Squibb Co.*,
  919 F.3d 699 (2d Cir. 2019) ................................................................................................1

*In re Bernard L. Madoff Inv. Sec. LLC*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) .................................................................................7

*In re Crowson*,
  431 B.R. 484 (B.A.P. 10th Cir. 2010) .................................................................................3

*In re Custom Contractors, LLC*,
  745 F.3d 1342 (11th Cir. 2014) ...........................................................................................5

*In re Duarte*,
  492 B.R. 100 (Bankr. E.D.N.Y. 2011) .............................................................................4, 5

*In re Marciano*,
  372 B.R. 211 (Bankr. S.D.N.Y. 2007) ............................................................................3, 4

*In re Residential Cap., LLC*,
  529 B.R. 806 (Bankr. S.D.N.Y. 2015) ............................................................................2, 3

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010) ................................................................................................3

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
  598 U.S. 288 (2023) ..............................................................................................................1

Table of Authorities
(continued)

Page

*Piazza v. Keswani (In re Keswani)*,
    No. 20-01345-JLG, 2021 WL 1016883 (Bankr. S.D.N.Y. Mar. 16, 2021) ............................... 3

*Picard v. Sage Associates*,
    No. 20-cv-10057 (JFK) Dkt No. 53 ................................................................................................ 8

*Picard v. Sage Realty*,
    No. 20 CIV. 10057 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ........................... 8, 9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ............................................................................................ 6

*Tally v. 885 Real Est. Assocs.*,
    11 A.D.3d 242 (N.Y. App. Div. 2004) ....................................................................................... 6

*Tally v 885 Real Est. Assocs.*,
    No. 115923/02, 2003 WL 25668617 (N.Y. Sup. Ct. Sept. 29, 2003) ............................... 7, 10

*Wang v. Ren*,
    No. 20-4216, 2023 WL 1977233 (2d Cir. Feb. 14, 2023) ....................................................... 9

STATUTES

Bankruptcy Code § 550 ............................................................................................................ 2, 3, 5

Bankruptcy Code § 550(f)(1) ............................................................................................................ 1

OTHER AUTHORITIES

C.P.L.R. 1502 ............................................................................................................................. 6, 10

Fed. R. Civ. P. 15(c) ........................................................................................................................ 7

Fed. R. Civ. P. 59(e) ........................................................................................................................ 2

Fed. R. Civ. P. 60(b) ........................................................................................................................ 2

iii

Defendants Malcolm Sage and Lynne Florio, by their attorneys, Olshan Frome Wolosky LLP, respectfully submit this reply memorandum in further support of their motion to dismiss dated June 30, 2023, the "Motion."[1]

The Statute of Repose for the Subsequent Transferee Claims

Defendants refer to the reply memorandum filed September 13, 2023 in *Picard v. Sage*, Adv. Pro. No. 23-01098 (CJM) (Bankr. S.D.N.Y.) and adopt and incorporate herein the arguments of that memorandum concerning the time limitation upon the Trustee to bring a subsequent transferee claim under Bankruptcy Code section 550(f)(1).

The flaw in the Trustee's position is straightforward. The Trustee argues that the one-year period to bring an action under section 550(f)(1) should run from a judgment. The statute, however, requires that an action must be commenced no later than "one year after *the avoidance of the transfer* on account of which recovery under this section is sought." 11 U.S.C. § 550(f)(1) (emphasis added). The statutory language is not ambiguous. Had Congress wished that the limitation period run from a judgment, it could have said so. The Trustee's policy arguments are both irrelevant and unpersuasive. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 302 (2023) (applying plain meaning of section 363(m); rejecting claims based on "general background principles rather than § 363(m)'s text"); *see also Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–06 (2d Cir. 2019) ("Every exercise in statutory construction must begin with the words of the text.") (allowing removal by home defendant before service of the complaint, rejecting contention that "applying the plain text of Section 1441(b)(2) produces an absurd result in light of the overarching purpose of the removal statute," allowing "an out-of-state defendant to escape prejudice in the state courts of the plaintiff's home state by ensuring

---

[1] Capitalized terms not otherwise filed herein shall have the meanings ascribed to them in the Motion.

12206916-1

that a fair federal tribunal is available"). While a judgment may be final, it too may set aside or revised by the trial court. Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b).

<u>The First Claim for Relief – The Subsequent Transfer Claim Against Lynne Florio</u>

Under Bankruptcy Code section 550, the Trustee seeks to recover approximately $3.7 million of alleged tax refunds from Defendant Florio as an alleged subsequent transferee. According to the Complaint, these tax refunds arise from Initial Transfers transferred initially from BLMIS to Sage Associates or Sage Partners which flowed to Defendant Malcolm Sage. Also according to the Complaint, Defendant Sage paid proceeds to various taxing authorities, and the taxing authorities later refunded these proceeds in accordance with tax returns filed jointly by married Defendants Sage and Florio.

The Complaint acknowledges that the funds flowed from Defendant Sage, but once the funds were returned, seeks to hold Defendant Florio jointly and severally liable for the tax refunds. Defendants' Motion asks the Court to apply the so called "Separate Filings Rule," which in essence is a restoration of the status quo as if the funds were never advanced to the taxing authorities in the first instance.

The Opposition advances three arguments and, as discussed further, among them is a glaring concession. First, the Trustee argues that this Court should find significant that "Defendants do not refute in the Motion that they were the subsequent transferees of the tax refunds from the taxing authorities." Mem. of Law in Opp. at 17. But this is what the Complaint alleges in conclusory fashion by virtue of the joint return tax refund. A motion to dismiss assumes all *facts* in the plaintiff's favor but not legal conclusions. *In re Residential Cap., LLC*, 529 B.R. 806, 817 (Bankr. S.D.N.Y. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010)).

2

Next, the Trustee seeks to distinguish the case law cited in the Motion on the grounds that those cases dealt with determination of property of the estate when one of the joint filers was a debtor and not an avoidance action. *Id.* The Trustee, however, does not advance any rationale why in determining who has rights to a tax refund, the interplay between the Bankruptcy Code and other laws should be any different when looking at section 550 (clawback) than section 541 (property of the estate).

Lastly, the Trustee urges the Court to follow the "50/50 Refund Rule," in which there is a rebuttable presumption of 50/50 spousal ownership of the refund. The 50/50 Refund Rule was followed by this Court in *In re Marciano*, 372 B.R. 211 (Bankr. S.D.N.Y. 2007), ruling against a trustee seeking to obtain 100% of a joint tax refund where the debtor spouse earned essentially 99% of the money. Because the 50/50 rule is a presumption, the Trustee asserts, Defendants cannot prevail on a motion to dismiss.

The Trustee asserts that the Separate Filing Rule "has been rejected by the majority of courts in this Circuit." *Id.* Yet, the Trustee offers no authority that any court has rejected the Separate Filing Rule. A more accurate statement would be that none of the cases introduced by the Trustee considered the Separate Filing Rule, first espoused by the Tenth Circuit Bankruptcy Appellate Panel in the case of *In re Crowson*, 431 B.R. 484 (B.A.P. 10th Cir. 2010). *Piazza v. Keswani (In re Keswani)*, No. 20-01345-JLG, 2021 WL 1016883 (Bankr. S.D.N.Y. Mar. 16, 2021) is the only case introduced by the Trustee that came after *Crowson*, cites only pre-*Crowson* cases for the proposition that courts in this circuit follow the 50/50 Refund Rule, and does not discuss the Separate Filing Rule as a potential alternative.

When this Court decided *Marciano*, it explained that were three different rules generally followed by courts and walked through in-depth analysis of the three of them. The "majority

3

12206916-1

view" "Withholding Rule" "allocates a joint tax refund between spouses in proportion to their tax withholdings." *Marciano*, 372 B.R. at 214. The "Proportional Income Rule" "divides the refund in proportion to the income that each spouse" allocated. *Id.* Courts following the 50/50 Refund Rule "have ruled that each spouse owns the refund equally, so that the refund should be allocated evenly between them . . . following the concept of marital property from state matrimonial law." *Id.*

This Court acknowledged the imperfections in looking to matrimonial law, but recognized that "in New York State there appears to be no other property law that offers more helpful guidance in apportioning each spouse's property interest. DRL § 236 at least offers an illustrative definition that provides a useful device for apportioning ownership." *Id.* at 215. After reviewing the three different standards, in consideration of fairness, this Court applied the 50/50 Refund Rule. *Id.* at 216.

The bankruptcy court in *In re Duarte*, 492 B.R. 100 (Bankr. E.D.N.Y. 2011), had the benefit of the Separate Filings Rule, which was "first articulated" 14 months earlier in *Crowson*. *Duarte*, 492 B.R. at 105. In that short period, the Separate Filings Rule had already been adopted by several other courts. *Id.* at 106. The Separate Filings Rule is derived from Internal Revenue Rulings regarding the allocation of overpayments filing joint tax returns. *Id.* at 105. Under that Rule "each spouse's separate tax liability is determined based on a calculation of what each [spouse's] tax obligation would have been if the spouses had filed separately and a calculation of the contributions each spouse has actually made to the total payments." *Id.* at 106. The court in *Duarte* found the DRL (which provides a divorce remedy) incompatible with the Bankruptcy Code and instead found it appropriate to afford the underlying revenue rulings deference. *Id.* at 107–08. This was consistent with Second Circuit precedent, it asserted, as "this Circuit

4

recognized that the filing of joint tax returns does not alter property rights between spouses and 'does not have the effect of converting the income of one spouse into the income of another.'" *Id.* at 109 (quoting *Callaway v. C.I.R.*, 231 F.3d. 106, 117 (2d Cir. 2000)).

The Separate Filings Rule is essentially a restoration of the status quo that treats the IRS as a "mere conduit." *Cf. In re Custom Contractors, LLC*, 745 F.3d 1342, 1349 (11th Cir. 2014) (holding IRS cannot be an initial transferee under section 550). Here, the Complaint concedes that the refunds are derived from Malcolm's income. Defendants respectfully suggest that where a Trustee is seeking to clawback funds into the estate, equity (and deference to revenue rulings) demands this Court returns to the estate no more than what the estate would have had had the transfer not occurred, else the Trustee obtains a windfall at the expense of a spouse, who should not be penalized for filing a joint tax return. There is no reason for this Court to adopt a policy that discourages – or even penalizes – joint filings by married persons. To the extent this Court finds a ruling would be inconsistent with *Marciano*, the Defendants respectfully request that the Court reconsider its ruling in light of *Duarte* and *Crowson*.

Finally, the Trustee's request to apply the 50/50 Refund Rule is in itself a concession. The Complaint seeks to hold Defendant Florio jointly and severally liable for *all* of the $3.7 million in alleged tax refunds as a subsequent transferee, but under the 50/50 Refund Rule, the Trustee would only be entitled to half that amount from each Defendant. The Trustee's recovery should be capped at the formula it suggests.

<u>The First Claim for Relief – The Single Satisfaction Rule as Applied to Malcom Sage</u>

The Trustee makes no attempt to explain why he has chosen to sue Malcolm Sage a second time to recover funds that are encompassed by the judgment in the original action. The Trustee argues that he "may pursue any and all subsequent transferees" in order to obtain satisfaction of his judgment, citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 641

5

12206916-1

B.R. 78 (Bankr. S.D.N.Y. 2022). But no court has ruled that a judgment debtor may be sued a second time as a subsequent transferee for the same amounts encompassed within a judgment where he was the initial transferee. The Court should apply section 550(d) to prevent the Trustee from burdening Mr. Sage with duplicative litigation.

## The Second Claim for Relief

The Trustee now concedes that his effort to enforce his judgment against Sage Realty by declaring Lynne Florio one of its general partners fails under New York law. The Trustee's rejoinder is to invoke C.P.L.R. 1502. *See Tally v. 885 Real Est. Assocs.*, 11 A.D.3d 242 (N.Y. App. Div. 2004). But that statute is clear that a new action must be commenced against the alleged co-obligor. The court in *Tally* therefore rejected the pleading as deficient because it does not allege any basis for liability beyond the judgment entered against the general partnership. *Tally v 885 Real Est. Assocs.*, No. 115923/02, 2003 WL 25668617 (N.Y. Sup. Ct. Sept. 29, 2003).

The Trustee does not dispute that under *118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200 (2d Cir. 1982), his declaratory judgment does not give rise a new statute of limitations. It is governed by the statute of limitations that would apply to the underlying claim. The Trustee makes no effort to explain how his Declaratory Judgment claim is timely. The statute of repose for his avoidance action against Sage Realty and its general partners is two years under section 546(a)(1)(A). *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 232 (Bankr. S.D.N.Y. 2011). The Trustee had ample discovery in the original case and could have sought to amend at any time to name additional alleged general partners, obtaining the benefit of Fed. R. Civ. P. 15(c). Indeed, the Trustee has long known that Sage Realty's sole asset was its account with Madoff and it was therefore judgment proof. Hence, the claim against the general

6

12206916-1

partners asserted in 2010. It is now too late for the Trustee to assert a claim against Lynne Florio on the theory that she is one of the general partners of Sage Realty.

The Trustee next argues that the judgment against Sage Realty is binding up on Ms. Florio in its determination that Sage Realty was a general partnership, but the doctrine of res judicata does not otherwise apply. The Trustee argues that the District Court did not determine that no one else was a general partner, nor was the Trustee required to name Ms. Florio as a necessary party. Neither point suffices.

The Trustee's statement that the District Court did not decide the three Sage siblings Malcolm, Martin and Ann were the sole general partners of Sage Realty is disingenuous. At trial, the District Court evaluated whether a "de facto partnership existed based on 'the conduct, intention and relationship *between the parties*." *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, at *29 (S.D.N.Y. Apr. 15, 2022). "The parties" were the three individual defendants. The Trustee argued that the three Sage siblings made managerial decisions for Sage Realty and executed documents describing Sage Realty as a partnership. The court credited the Trustee's evidence that "Martin and Ann did participate in the management and control of . . . Sage Realty" as did Malcolm and that "each was a signatory to the entities' bank accounts." *Id.* at *30.

Not one word in the Trustee's lengthy pretrial submission suggests that Sage Realty had other general partners, a suggestion that would have undermined the theory of partnership that he was advocating. The Trustee's post-trial brief stresses the role played by "the Sages." *Plaintiff Irving H. Picard's Post–Trial Proposed Findings of Fact and Conclusions of Law* dated November 1, 2021, *Picard v. Sage Associates,* No. 20-cv-10057 (JFK) Dkt No. 53 at 100–04. Thus the Trustee argued that "The Sages held themselves out to be general partners of the Entity

7

Defendants," "Each of the Sages participated in the management and control of the Entity Defendants," and "the Sages collectively made investment and withdrawal decisions." (*Id.*) Indeed for each indicia of the partnership, the Trustee argued that "the Sages" had satisfied the factual test.

The Trustee no doubt found it advantageous to present to the District Court a general partnership comprised of three siblings who managed an inheritance from their father. The District Court was persuaded. "Considering *the relationship of the Sages as a whole*, . . . the Court concludes that Sage Associates and Sage Realty were partnerships and Malcolm, Martin, and Ann were general partners of both entities." *Picard v. Sage Realty*, 2022 WL 1125643, at *30 (emphasis added). Naming Lynne Florio as a potential partner at the trial of the original action would have muddied the waters. The presence of an alleged general partner who had no role in management and signed no documents was suggestive of a tenants at common relationship, which the Sage siblings unsuccessfully advocated. Having prevailed at trial on the contention that the three Sages were the general partners of Sage Realty, the Trustee should now be precluded from pursuing claims for a general partnership comprised of other persons, such as Lynne Florio.

His current claim that she was in privity with the original defendants compels the application of res judicata. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995) ("[T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."); *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43 (2d Cir. 2013) ("Claim preclusion also bars a plaintiff who prevails in an earlier action from bringing new claims[] based on the facts of the

8

12206916-1

first action, against the same defendant or those in privity with the defendant."); *Wang v. Ren*, No. 20-4216, 2023 WL 1977233, at *2 (2d Cir. Feb. 14, 2023) (barring a second suit from being brought against a different defendant because the newly added defendant had a "sufficiently close relationship" with the defendants named in the previous lawsuit to satisfy the privity requirement).

Alternatively, the Second Count fails to state a claim by virtue of its reliance on the earlier judgment as a basis for liability. In *Tally v 885 Real Est. Assocs.*, No. 115923/02, 2003 WL 25668617 (N.Y. Sup. Ct. Sept. 29, 2003), the court explained that any attempt to enforce a judgment against an alleged general partner required a fresh start, holding the "earlier judgment and order are not binding on the defendants." Indeed, under C.P.L.R. 1502, "defendant in the subsequent action may raise any defenses or counterclaims that he might have raised in the original action if the summons had been served on him when it was first served on a co-obligor . . . ." The requirement that the case start over further underscores the untimeliness of the Second Count, which would require Ms. Florio to litigate general partnership issues fifteen years after the demise of Sage Realty.

Dated: New York, New York
       September 13, 2023

OLSHAN FROME WOLOSKY LLP

By: /s/ Thomas J. Fleming
    Thomas J. Fleming, Esq.
    Jonathan T. Koevary, Esq.
    1325 Avenue of the Americas
    New York, New York 10019
    (212) 451-2300
    *Counsel for Defendants*

9

12206916-1