**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Lead Adv. Pro. No. 10-05354 (CGM) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as NATWEST MARKETS N.V.), | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION**
**TO AMEND AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................2

ARGUMENT ........................................................................................................6

I.    DEFENDANT'S MOTION TO AMEND ITS THIRTY-FIRST AFFIRMATIVE
      DEFENSE AND ADD THE FORTY-SECOND AFFIRMATIVE DEFENSE
      MUST BE DENIED. .......................................................................................6

      A.    Legal Standard ....................................................................................6

      B.    Defendant's Proposed Amendments Are Futile .......................................7

            1.    Defendant's Proposed Amendments for Setoff Fail as a Matter of
                  Law ...........................................................................................7

            2.    Defendant's Proposed Amendments for Recoupment Fail as a
                  Matter of Law .............................................................................9

            3.    Defendant Fails to State a Valid Affirmative Defense for Unjust
                  Enrichment ...............................................................................11

II.   IN THE ALTERNATIVE, DEFENDANT'S MOTION TO AMEND SHOULD
      BE HELD IN ABEYANCE...............................................................................14

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ades & Berg Grp. Invs.*,
550 F.3d 240 (2d Cir. 2008).................................................................13, 14

*adidas Am., Inc. v. Thom Browne, Inc.*,
629 F. Supp. 3d 213 (S.D.N.Y. 2022)..............................................12, 15

*In re Adler, Coleman Clearing Corp.*,
No. 95-08203 (JLG), 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998),
*aff'd sub nom. Adler, Coleman Clearing Corp. v. Mishkin*, 208 F.3d 202 (2d
Cir. 2000) ....................................................................................13

*ASG & C, Inc. v. Arch Specialty Ins. Co.*,
No. 21-1761-CV, 2022 WL 839805 (2d Cir. Mar. 22, 2022)..................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................6, 7

*In re Berg*,
532 B.R. 162 (Bankr. S.D. Cal. 2015) ..........................................14, 15

*BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*,
229 B.R. 301 (Bankr. S.D.N.Y.1999) .................................................9

*Canon Inc. v. Tesseron Ltd.*,
No. 14-cv-5462 (DLC), 2015 WL 4508334 (S.D.N.Y. July 24, 2015) .........6

*Citizens Bank of Maryland v. Strumpf*,
516 U.S. 16 (1995)........................................................................7

*City of Syracuse v. R.A.C. Holding, Inc.*,
258 A.D.2d 905, 685 N.Y.S.2d 381 (1999) ....................................11, 12

*In re Enron Creditors Recovery Corp.*,
376 B.R. 442 (Bankr. S.D.N.Y. 2007) .................................................8

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004)..........................................................13, 14

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
97–CV–8851, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) ...................8

ii

*Greenes v. Vijax Fuel Corp.*,
326 F. Supp. 2d 464 (S.D.N.Y. 2004) ....................................................................6

*Icebox-Scoops, Inc. v. Disney Enter., Inc.*,
520 F. App'x 3 (2d Cir. 2013) .............................................................................12

*Landis v. North American Co.*,
299 U.S. 248 (1936) .............................................................................................14

*In re Lehman Bros. Holdings*,
404 B.R. 752 (Bankr. S.D.N.Y. 2009) ..................................................................7

*Malinowski v. New York State Dep't of Labor (In re Malinowski)*,
156 F.3d 131 (2d Cir.1998) ...................................................................................9

*In re McMahon*,
129 F.3d 93 (2d Cir. 1997) ...................................................................................9

*In re O.P.M. Leasing Servs., Inc.*,
40 B.R. 380 (Bankr. S.D.N.Y. 1984) ....................................................................7

*In re Operations NY LLC.*,
490 B.R. 84 (Bankr. S.D.N.Y. 2013) ..................................................................11

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) .................................................................................6

*Picard v. Lustig*,
568 B.R. 481 (Bankr. S.D.N.Y. 2017) ...........................................................10, 11

*Scottish Air Intern., Inc. v. British Caledonian Grp., PLC*,
152 F.R.D. 18 (S.D.N.Y. 1993) .............................................................................7

*In re Singh*,
434 B.R. 298 (Bankr. E.D.N.Y. 2010) ..................................................................7

*In re Trace Intern. Holdings, Inc.*,
289 B.R. 548 (Bankr. S.D.N.Y. 2003) ................................................................10

*In re Try the World, Inc.*,
Adv. Pro. No. 20-01013 (JLG), 2023 WL 5537564 (Bankr. S.D.N.Y. Aug. 28,
2023) ......................................................................................................................8

*Westinghouse Credit Corp. v. D'Urso*,
278 F.3d 138 (2d Cir. 1998) ........................................................................7, 9, 10

## Statutes

11 U.S.C. § 546(e) .....................................................................................................4

11 U.S.C. § 546(g) ..................................................................................................4

11 U.S.C. § 548(c) ................................................................................................11

11 U.S.C. § 550(b) ..................................................................................................4

11 U.S.C. § 553 ........................................................................................................7

11 U.S.C. § 553(a) ..................................................................................................7

N.Y. Debt & Cred. Law §  278(1) ..........................................................................4

N.Y. Debt & Cred. Law § 278(2) ............................................................................4

**Rules**

Fed. R. Bankr. P. 1001 ..........................................................................................14

Fed. R. Civ. P. 1 ....................................................................................................14

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6

Fed. R. Civ. P. 12(f)(1) ............................................................................................7

Fed. R. Civ. P. 15(a) ................................................................................................6

Fed. R. Civ. P. 15(a)(2) ............................................................................................6

**Other Authorities**

Order Approving Settlement, *Picard v. Tremont Grp* ...........................................11

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to defendant ABN AMRO Bank N.V.'s (presently known as NatWest Markets N.V.) ("Defendant") Motion to Amend Affirmative Defenses ("Motion to Amend"). For the reasons set forth below, Defendant's Motion to Amend should be denied or, in the alternative, held in abeyance, until after the Court decides the Trustee's forthcoming motion to dismiss Defendant's Amended Counterclaims.

## PRELIMINARY STATEMENT

On May 15, 2023, Defendant took the extraordinary measure of suing the Trustee, bringing Counterclaims for unjust enrichment based on allegations that it invested more funds with certain BLMIS feeder funds than it received back from those funds. Instead of simply proceeding to resolution on its meritless Counterclaims, Defendant, tacitly recognizing that the Counterclaims fail as a matter of law, seeks to cure that deficiency by repackaging those claims into Affirmative Defenses alleging setoff, recoupment, and unjust enrichment, and asserting those very same allegations in Amended Counterclaims. As the Trustee's motion to dismiss those Amended Counterclaims will be forthcoming on September 27, hearing Defendant's Motion to Amend now would require the parties to brief the same futile issues twice, an already unnecessary sideshow from the pressing issues of discovery and litigating the Trustee's case.

Notwithstanding these procedural inefficiencies created by Defendant, its proposed amendments fail as a matter of law. Setoff requires mutuality of debts, parties, and capacity, none of which exists here between Defendant and the Trustee or BLMIS. A reciprocity of obligations is similarly lacking, dooming the Affirmative Defense of recoupment. Unjust enrichment claims

require a benefit conferred and restitution sought, yet here, Defendant did not provide value to the Trustee or BLMIS and does not even seek recovery from the Madoff estate.

For these reasons, the Trustee respectfully requests that Defendant's Motion to Amend as it relates to its Thirty-First Affirmative Defense and new Forty-Second Affirmative Defense, which concern setoff, recoupment, and unjust enrichment, be denied, or, alternatively, that Defendant's Motion to Amend be held in abeyance until the Trustee's forthcoming motion to dismiss Defendant's Amended Counterclaims is resolved.[1]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On March 22, 2022, the Trustee filed a Consolidated Second Amended Complaint ("CSAC") in this BLMIS SIPA liquidation proceeding against Defendant, seeking at least $308,113,826 in subsequent transfers of stolen customer property that Defendant received from various funds managed and controlled by Tremont Group Holdings, Inc. (the "Tremont Group"), and its management arm, Tremont Partners, Inc. (together with the Tremont Group, "Tremont"), and Harley International (Cayman) Ltd. ("Harley"). CSAC ¶ 2, ECF No. 220. Defendant received this stolen customer property through specific transactions it entered into with Tremont and Harley that were governed by separate agreements. *Id.* ¶¶ 2–12. In its transactions with Tremont, Defendant entered into swap agreements with Rye Select Broad Market XL Portfolio, Ltd. ("XL Portfolio Limited") and Rye Select Broad Market XL Fund L.P. (together with XL Portfolio Limited, the "XL Funds," and together with Tremont, "Tremont"). CSAC ¶¶ 8, 10; Am. Answer ¶¶ 8–10, ECF No. 276. Under those agreements, the XL Funds provided cash collateral to Defendant (largely comprised of customer property) and in exchange Defendant agreed to provide

---

[1] While Defendant's other proposed amendments to its Affirmative Defenses are meritless as well, in the interest of judicial economy, the Trustee does not oppose those portions of Defendant's Motion to Amend at this time. The Trustee reserves all rights to contest those defenses in later phases of this case.

2

the XL Funds with returns generated by two of the Tremont BLMIS "feeder funds"—Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited") and Rye Select Broad Market Fund L.P. (together with Rye Portfolio Limited, the "Rye Funds," and together with Tremont, "Tremont")—based on investments in the Rye Funds equal to three times the amount of collateral the XL Funds provided to Defendant.  CSAC ¶ 6; Am. Answer ¶ 6.  Because Defendant's payment obligations to the XL Funds were directly tied to the performance of the Rye Funds (and thus, BLMIS), under separate subscription agreements, Defendant invested three times the collateral it received from the XL Funds in the Rye Funds, which invested Defendant's funds with BLMIS.  CSAC ¶¶ 7, 57, 73(c); Am. Answer ¶¶ 7, 57, 73.  Defendant redeemed stolen customer property from the Rye Funds under the subscription agreements.  CSAC ¶¶ 9, 11; Am. Answer. ¶¶ 9, 11.  Defendant also redeemed $21,799,920 of stolen customer property under a subscription agreement it maintained with Harley in connection with another transaction involving that fund.  CSAC ¶¶ 12, 66; Am. Answer ¶¶ 12, 66.

After the Trustee successfully defeated Defendant's motion to dismiss the CSAC, Defendant raised Affirmative Defenses and asserted Counterclaims that BLMIS and Madoff were unjustly enriched to Defendant's detriment.  Answer and Counterclaims, ECF No. 268.  Specifically, Defendant alleged that it was "among the victims of Madoff's fraud" because it invested more with Tremont and Harley than it received back from those funds and demanded that the BLMIS estate pay it over $650 million of these purported unreturned investments, which Defendant never invested directly through a BLMIS customer account with BLMIS.  Counterclaims ¶¶ 11–12.  The parties negotiated a briefing schedule for the Court's consideration concerning the Trustee's motion to dismiss the Counterclaims, which also permitted Defendant to amend its Counterclaims in lieu of opposing the Trustee's motion.  Stipulation, ECF No. 270.

Potential amendments to Defendant's Affirmative Defenses were not contemplated in the Stipulation.

As set forth in the Stipulation, the Trustee moved to dismiss the Counterclaims on July 17, 2023.  M. to Dismiss, ECF No. 271.  In his motion, the Trustee pointed out the numerous fatal flaws in Defendant's Counterclaims.  For example, in violation of both SIPA and the Bankruptcy Code, by asserting unjust enrichment, Defendant, which did not maintain a customer account, was attempting to jump ahead of BLMIS customers with valid and not fully paid customer claims and deplete the BLMIS estate in violation of the Bankruptcy Code's automatic stay, relevant District Court stay orders, and the Claims Procedures Order.  Mem. of Law, 8–14, ECF No. 272.  The vague and conclusory nature of the Counterclaims also muddied who or what exactly was unjustly enriched, ignoring that the Trustee has qualified immunity when carrying out official duties.  *Id*. 14–16.  And as no value was ever provided by Defendant to BLMIS or the Trustee, the basic threshold for an unjust enrichment claim under New York law was not met.  *Id*. 16–19.

One week before Defendant's opposition was due, Defendant emailed the Trustee that it was considering amending its Counterclaims in lieu of opposing the Trustee's motion to dismiss, but also requested the Trustee to stipulate to allowing Defendant to amend its Affirmative Defenses by the same day its Counterclaim amendments were due.  Upon request, the next day, Defendant sent its proposed Affirmative Defense amendments to the Trustee.  Defendant's proposed amendments were exhaustive: Defendant supplemented its allegations under its Third Affirmative Defense for Dismissed Claims; its Eleventh, Fourteenth, and Fifteenth Affirmative Defenses for Good Faith pursuant to 11 U.S.C. § 550(b), NYDCL § 278(2), and NYDCL § 278(1); its Twelfth and Thirteenth Affirmative Defenses for Safe Harbor pursuant to 11 U.S.C. § 546(e) and 11 U.S.C. § 546(g); its Twenty-Fourth Affirmative Defense for Failure to Mitigate Damages; and its Thirty-

First Affirmative Defense that it "suffered as a BLMIS victim as its own investments remain unreturned," which conflates a number of allegations concerning setoff, recoupment, and unjust enrichment. Defendant also asserted eight new Affirmative Defenses for extraterritoriality, comity, lack of subject matter jurisdiction, no Ponzi scheme presumption, non-avoidability of initial transfers based on the two-year lookback period, res judicata, and recoupment. Given the short notice to evaluate the validity of the lengthy proposed amendments, and lack of clarity on whether Defendant would in fact also be amending its Counterclaims and what form those amendments would take, the Trustee had no choice but to refuse to consent.

On August 24, 2023, Defendant filed the instant Motion to Amend. ECF No. 278. Defendant also filed Amended Counterclaims, which reallege its claims for unjust enrichment, although without seeking affirmative relief, and also set forth claims for setoff and recoupment, all of which mirror amendments Defendant proposes to make to its Affirmative Defenses. ECF No. 276. Now clear that Defendant was intending to litigate the very same issues concerning setoff, recoupment, and unjust enrichment in connection with its Motion to Amend that would need to be litigated again in connection with its Amended Counterclaims, the Trustee requested that Defendant agree to hold the Motion to Amend in abeyance until his forthcoming motion to dismiss the Amended Counterclaims was resolved. Defendant refused, instead agreeing only to a briefing schedule for a motion to dismiss Amended Counterclaims, with the Trustee's motion due on September 27, 2023. ECF No. 281.

Having now had the opportunity to evaluate Defendant's proposed amendments to its Affirmative Defenses, they are all meritless. But the Trustee does not deem it worth expending further judicial or party resources to litigate the dismissal of all defenses now. Instead, the Trustee seeks only to oppose Defendant's proposed amendments to its Thirty-First Affirmative Defense

5

and new Forty-Second Affirmative Defense because those proposed amendments are such affronts to the Bankruptcy Code and an orderly BLMIS SIPA liquidation proceeding that they should be denied now so the Trustee and the Bankruptcy Court do not have to needlessly expend additional resources litigating them in subsequent phases of this case.   In the alternative, because these proposed amendments raise the very same issues presented in Defendant's Amended Counterclaims, which the Trustee will move to dismiss in two weeks, the Bankruptcy Court should hold Defendant's Motion to Amend in abeyance until the Trustee's forthcoming motion to dismiss the Amended Counterclaims is resolved.

## ARGUMENT

## I.    DEFENDANT'S MOTION TO AMEND ITS THIRTY-FIRST AFFIRMATIVE DEFENSE AND ADD THE FORTY-SECOND AFFIRMATIVE DEFENSE MUST BE DENIED.

### A.    Legal Standard

Because Defendant seeks to amend its Affirmative Defenses more than 21 days after serving them, it must obtain leave of court under Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)").   Although Rule 15(a) requires leave to amend be freely given, the court may deny leave if the proposed amendments are futile.   *See, e.g., Canon Inc. v. Tesseron Ltd.*, No. 14-cv-5462 (DLC), 2015 WL 4508334, at *2–3 (S.D.N.Y. July 24, 2015) (denying motion for leave to amend affirmative defense as futile); *Greenes v. Vijax Fuel Corp.*, 326 F. Supp. 2d 464, 468 (S.D.N.Y. 2004) (same).   "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."   *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

6

## B.    Defendant's Proposed Amendments Are Futile

Defendant's Motion to Amend its Thirty-First Affirmative Defense and its new Forty-Second Affirmative Defense for setoff, recoupment, and unjust enrichment should be denied. None of these proposed amendments can withstand the plausibility threshold set forth in *Iqbal* and *Twombly*.[2]

### 1.    Defendant's Proposed Amendments for Setoff Fail as a Matter of Law

In complete disregard of relevant bankruptcy law, Defendant claims it is entitled to setoff under § 553(a) of the Bankruptcy Code.  Setoff allows debts due to and from the same persons in the same capacities to apply their mutual debts against each other, thus avoiding "the absurdity of making A pay B when B owes A."  *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted); *see also Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 1998) (citation omitted).  The prerequisites of setoff are: "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual."  *In re Lehman Bros. Holdings*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (paraphrasing 11 U.S.C. § 553) (citation omitted).  "It is well established that a party will be unable to assert a setoff where *the party is being sued for fraudulent transfers*.  This is because where the party seeking to set off is being sued for fraudulent transfer, there is no mutuality of obligations, which is required under Code Section 553(a)."  *In re Singh*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (emphasis added) (quoting *In re O.P.M. Leasing Servs., Inc.*, 40 B.R. 380, 402 (Bankr. S.D.N.Y. 1984); *see also*

---

[2] Defendant's proposed amendments for setoff, recoupment, and unjust enrichment are also duplicative of its original Affirmative Defenses (*see* original Thirtieth and Thirty-First Affirmative Defenses) and its Motion to Amend could be denied on that basis as well.  *See Scottish Air Intern., Inc. v. British Caledonian Grp., PLC*, 152 F.R.D. 18, 30 (S.D.N.Y. 1993) ("[W]here the additional allegations merely reiterate and embroider the claims . . . already presented in [the] original complaint, adding little, if anything, of substance to [the] case, justice does not require that leave to amend be granted.") (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 12(f)(1), the Bankruptcy Court may also strike those originally-pled Affirmative Defenses *sua sponte*.

*Geron v. Schulman (In re Manshul Constr. Corp.)*, 97–CV–8851, 2000 WL 1228866, at *56 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers there is no mutuality of obligations and thus no right to any set-off.").

The CSAC alleges, and Defendant admits in its Answer, that Defendant entered into specific transactions with Tremont and Harley, and those funds then invested Defendant's funds with BLMIS via their respective direct customer accounts.  CSAC ¶¶ 2–12; Am. Answer ¶¶ 2–12. In connection with these transactions, Defendant received over $308 million in stolen customer property, the subject of this proceeding.  CSAC ¶ 2.  Defendant claims that this recovery due to the Trustee must be set off by the greater amounts due to Defendant under its contracts with Tremont and Harley.  To the extent Defendant has any claims concerning the amounts it invested with Tremont and Harley that have not been returned, they accrued prepetition against those funds, whereas any liability for the fraudulent-transfer claims is held by the Trustee as a post-petition obligation.  Therefore, as a matter of law, mutuality does not exist because the claims are not "in the same right and between the same parties, standing in the same capacity."  *In re Try the World, Inc.,* Adv. Pro. No. 20-01013 (JLG), 2023 WL 5537564 at *13 (Bankr. S.D.N.Y. Aug. 28, 2023) (dismissing counterclaims for setoff when brought to offset liability for fraudulent transfer); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 465–66 (Bankr. S.D.N.Y. 2007) (finding setoff improper because, while debtor's obligation to claimant stemmed from pre-petition debt, claimant's obligation to return preference payments was post-petition debt resulting from operation of the Bankruptcy Code).  No further analysis is needed, and this Affirmative Defense necessarily fails.

8

### 2.    Defendant's Proposed Amendments for Recoupment Fail as a Matter of Law

Defendant fares no better in its proposed Affirmative Defense for recoupment. Recoupment is a common-law equitable principle which focuses on netting credit and debt that arise out of the same transaction. *See Malinowski v. New York State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir.1998) ("Recoupment . . . comes into bankruptcy law through the common law, rather than by statute") (citation omitted). The recoupment doctrine is narrowly construed. *In re McMahon*, 129 F.3d 93, *97 (2d Cir. 1997). It is limited to situations where "both debts . . . arise out of a *single integrated transaction* so that it would be *inequitable* for the debtor to enjoy the benefits of that transaction *without also meeting its obligations*." *Westinghouse*, 278 F.3d at 147 (emphasis added). Even if both debts arise out of the same contract, recoupment is unavailable "[w]here the contract itself contemplates the business to be transacted as discrete and independent units." *Id.* The Second Circuit requires more than a "'mere logical relationship' . . . to bring . . . mutual debts within the 'same transaction.'" *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*, 229 B.R. 301, 311 (Bankr. S.D.N.Y.1999) (citation omitted). In other words, "[w]hen the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts, they are not part of the same transaction." *In re Malinowski*, 156 F.3d at 134.

Defendant does not have a claim for recoupment because no reciprocal obligations or debts exist on either the part of the Trustee or BLMIS under any of the relevant transactions, contracts, or facts. *Westinghouse*, 278 F.3d at 147. Defendant admits that it entered into agreements with Tremont and Harley that cover the investments it seeks to recoup. *See, e.g.*, Am. Answer, Thirty-First Aff. Defense, Forty-Second Aff. Defense. BLMIS had separate agreements with Tremont

9

and Harley that covered its obligation to those funds.  While Defendant bandies about the term

"single unified transaction," it does not allege that the Trustee, BLMIS, or Defendant owed any

obligations to each other under any of these contracts or any set of facts.  *Id.*  Nor can it.  Any right

of recovery Defendant has lies against Tremont and Harley under the contracts those parties

maintained.  The Trustee's right to avoidance and recovery against Defendant does not arise under

any of these contracts or their provisions, but "by operation of the fraudulent transfer laws," which

precludes Defendant's recoupment claim.  *In re Trace Intern. Holdings, Inc*., 289 B.R. 548, 563

(Bankr. S.D.N.Y. 2003) (holding recoupment unavailable as remedy to fraudulent transfer action

because it failed to meet the same transaction requirement).

In this BLMIS SIPA liquidation proceeding, this Court has already struck an affirmative

defense for recoupment that was based on similar allegations.  In *Picard v. Lustig*, the Trustee sued

the defendants for approximately $7 million in fictitious profits they withdrew from their BLMIS

customer accounts.  568 B.R. 481, 484 (Bankr. S.D.N.Y. 2017).  The *Lustig* defendants answered

the complaint and asserted several affirmative defenses, including for recoupment credit in the

amount of the fictitious profits they reinvested in BLMIS feeder funds that were lost in the Ponzi

scheme.  *Id.* at 484–86.  This Court granted the Trustee's motion to strike the affirmative defense,

finding that recoupment was not available to the defendants because the parties' claims arose from

different transactions.  The Trustee's claims against the Lustig defendants arose from their

withdrawal of fictitious profits from their BLMIS accounts, whereas their claim for recoupment

credit was based on their investment of the withdrawn funds in the feeder funds.  *Id.* at 490.  The

Court continued that the Lustig defendants' equitable defenses were also "inconsistent with

express provisions of the Bankruptcy Code and SIPA which give the credit they seek to the entity

that gave the value to the debtor."  *Id*. at 487.  In other words, the feeder funds that held customer

accounts at BLMIS, not the *Lustig* defendants, provided value to the debtor, and thus, only those funds were entitled to credit for the deposits that the *Lustig* defendants sought. To hold otherwise would require "the BLMIS estate to give a second round of credits based on the same deposits." *Id*. at 487–88.

Similarly, here, the Trustee's claims against Defendant arise from subsequent transfers of stolen customer property it received from Tremont and Harley. Defendant seeks recoupment credit based on its investments in these funds. Providing such credit would lead to the same inequitable result the Bankruptcy Court in *Lustig* sought to avoid as Tremont and Harley, not Defendant, are entitled to the credit for Defendant's investments under Bankruptcy Code § 548(c). And most of that benefit has already been awarded. *See* Order Approving Settlement, *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. No. 10-05310 (BRL), ECF No. 38 (Bankr. S.D.N.Y. Sept. 22, 2011) (allowing net equity claims based on difference between amount Tremont funds deposited and amount they withdrew from their BLMIS accounts). Defendant's invocation of recoupment would force the BLMIS estate to give a second round of credits based on the same deposits. This is a distinctly inequitable attempt to offset liability and must be denied.

### 3.    Defendant Fails to State a Valid Affirmative Defense for Unjust Enrichment

Defendant's assertion in its Forty-Second Affirmative Defense that it is entitled to claims for unjust enrichment fails as a matter of law. To state a claim for unjust enrichment under New York law, Defendant must allege (1) that the Trustee was enriched, (2) at Defendant's expense, and (3) that it is against equity and good conscience to permit the Trustee to retain what Defendant seeks to recover. *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-CV, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022). "The 'essence' of [an unjust enrichment claim] 'is that one party has received money or a benefit at the expense of another.'" *In re Operations NY LLC.*, 490 B.R.

84, 99 (Bankr. S.D.N.Y. 2013) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (1999)); *see Icebox-Scoops, Inc. v. Disney Enter., Inc.*, 520 F. App'x 3, *4 (2d Cir. 2013) (affirming dismissal of unjust enrichment claim where plaintiff "has not plausibly asserted that it had conferred a benefit to Disney that Disney unjustly retained").

As an initial matter, Defendant's claim fails because it expressly is not seeking any affirmative recovery from the Madoff estate. Plausible claims for unjust enrichment must seek restitution of any benefit conferred. *adidas Am., Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 221–22 (S.D.N.Y. 2022). For this reason, unjust enrichment typically appears as a claim, not defense, and it is particularly "nonsensical" when it does not seek affirmative relief. *See id*. at 222 (concluding that defendant "has not plausibly asserted a viable claim or defense of unjust enrichment" where defendant "does not seek restitution of any benefit conferred").

Defendant has also failed to allege a benefit that it conferred on the Trustee or BLMIS estate. Defendant alleges that "[t]he BLMIS estate was enriched by the money NatWest invested with BLMIS . . . at NatWest's expense," but states that it actually made "investments in Tremont and Harley" as part of swap transactions, and that "many of these investments . . . remained unredeemed." Am. Answer, Thirty-First Aff. Defense, Forty-Second Aff. Defense. By Defendant's own admission, Defendant provided value to Tremont and Harley, *not* to the Trustee or BLMIS, and then those funds, *not* Defendant, provided value to BLMIS. *Id*. If at all, Defendant should have raised these allegations against Tremont and Harley, the parties who received the benefit from Defendant.

Defendant also does not allege that the Trustee *unjustly* retained any benefit conferred by Defendant. Defendant asserts that it would be "against equity and good conscience" for "the BLMIS estate to recover money from [Defendant] when the estate is in possession of the much

12

larger amount that [Defendant] invested with BLMIS." *Id*. However, Defendant's Affirmative Defenses ignore the foundational features of bankruptcy. In a typical non-bankruptcy case, an unjust enrichment claim is intended to prevent a party from retaining a benefit that would be against equity and good conscience to retain. The bankruptcy context is fundamentally different. "The trustee marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 218 (2d Cir. 2004). As such, there is no unjust enrichment where the trustee's "conduct is fully consistent with—and indeed, required by—the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets." *Id*. at 216; *see also In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 WL 551972, at *17 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd sub nom. Adler, Coleman Clearing Corp. v. Mishkin*, 208 F.3d 202 (2d Cir. 2000) ("[T]he trustee's duty to the SIPA estate as a whole clearly prevails over the interests of any single customer.").

Applying these principles, the Second Circuit in *First Central* rejected an attempt to impose a constructive trust (in which unjust enrichment is the key element) on a federal tax refund that the trustee received from the IRS and held as property of the debtor, although the debtor had agreed to allocate the refund with another company. 377 F.3d at 211. In reaching its conclusion, the Court observed, "[t]he chief purposes of the bankruptcy laws are 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' 'to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,' and 'to protect the creditors from one another.'" *Id*. at 217 (citations omitted). The Court explained that imposing a constructive trust would create "a separate allocation mechanism outside the scope of the bankruptcy system" that would "wreak . . . havoc

13

with the priority system ordained by the Bankruptcy Code." *Id*. (citation omitted); *see also In re Ades & Berg Grp. Invs.*, 550 F.3d 240, 245 (2d Cir. 2008) (upholding "reasoning in *First Central*, [that] retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust").

*First Central* and *Ades & Berg* are dispositive here. Defendant's Affirmative Defense for unjust enrichment is based on the Trustee's exercise of his statutory obligations under SIPA and the Bankruptcy Code to marshal and preserve assets of the BLMIS estate in this BLMIS SIPA liquidation proceeding through avoidance and recovery actions against subsequent transferees. While Defendant may disagree with his methods, there is nothing unjust about the Trustee marshalling and preserving the assets of the estate. Instead, permitting Defendant's unjust enrichment Affirmative Defense to proceed would create the separate allocation method that the courts in *First Central* and *Ades & Berg* rejected.

Accordingly, Defendant's invocation of unjust enrichment in its proposed amendments should be rejected "[b]ecause the Trustee does not hold property under such circumstances that in equity and good conscience he ought not to retain it." *First Cent.*, 377 F.3d at 218 (internal quotation marks and citation omitted).

## II.    IN THE ALTERNATIVE, DEFENDANT'S MOTION TO AMEND SHOULD BE HELD IN ABEYANCE.

There is a "guiding principle" that "the Federal Rules of Procedure—both Civil and Bankruptcy—should 'be construed to secure the just, speedy, and inexpensive determination of every case and proceeding.'" *In re Berg*, 532 B.R. 162, 164 (Bankr. S.D. Cal. 2015) (quoting Fed. R. Civ. P. 1; Fed. R. Bankr. P. 1001). Indeed, there is a "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

14

Defendant has clogged this Court's docket by bringing a Motion to Amend for setoff, recoupment, and unjust enrichment that fails on its face. To make matters worse, Defendant reasserts these same futile defenses in the form of Amended Counterclaims that the Trustee will move to dismiss on September 27, 2023. Holding Defendant's Motion to Amend in abeyance until after the Trustee's motion to dismiss the Amended Counterclaims is decided promotes judicial economy as this Court's decision on the Trustee's forthcoming motion will likely impact its decision here. In particular, Defendant's proposed amendments concerning setoff, recoupment, and unjust enrichment may be moot if this Court grants the Trustee's motion to dismiss the Amended Counterclaims making the same allegations. As previously noted, Defendant's Amended Affirmative Defenses and Amended Counterclaims must meet the plausibility standard—if a counterclaim fails under this standard, the same counterclaim reasserted as an affirmative defense may meet the same fate. *See adidas Am., Inc.*, 629 F. Supp. 3d at 222. Thus, considering the Motion to Amend at this time will not "further[] the efficient resolution of this case." *In re Berg*, 532 B.R. at 166.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Amend its Thirty-First Affirmative Defense and add a new Forty-Second Affirmative Defense should be denied or, in the alternative, the Motion to Amend should be held in abeyance until after the Trustee's forthcoming motion to dismiss Amended Counterclaims is resolved.

Dated:   September 13, 2023        /s/ Patrick T. Campbell
         New York, New York        **Baker & Hostetler LLP**
                                    45 Rockefeller Plaza
                                    New York, New York 10111
                                    Telephone:   (212) 589-4200
                                    Facsimile:   (212) 589-4201
                                    David J. Sheehan
                                    Email: dsheehan@bakerlaw.com
                                    Patrick T. Campbell
                                    Email: pcampbell@bakerlaw.com
                                    Camille C. Bent
                                    Email: cbent@bakerlaw.com
                                    Elizabeth G. McCurrach
                                    Email: emccurach@bakerlaw.com
                                    J'Naia L. Boyd
                                    Email: jlboyd@bakerlaw.com

                                    *Attorneys for Irving H. Picard, as*
                                    *Trustee for the Substantively Consolidated*
                                    *SIPA Liquidation of Bernard L. Madoff*
                                    *Investment Securities LLC and the Chapter 7*
                                    *Estate of Bernard L. Madoff*