Michael S. Feldberg
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
*mfeldberg@reichmanjorgensen.com*
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel.: (212) 381-4970

*Attorney for Defendant NatWest Markets N.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | **ORAL ARGUMENT REQUESTED** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> ABN AMRO BANK N.V. (presently known as NATWEST MARKETS N.V.), <br><br> Defendant. | Adv. Pro. No. 10-05354 (CGM) <br> Adv. Pro. No. 11-02760 (CGM) |

**REPLY IN FURTHER SUPPORT OF**
**<u>NATWEST MARKETS N.V.'S MOTION TO AMEND AFFIRMATIVE DEFENSES</u>**

# **TABLE OF CONTENTS**

PROCEDURAL BACKGROUND ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    The Challenged Amendments Are Not Prejudicial ................................................. 3

    II.    The Amendments Are Not Futile ............................................................................ 4

        A.    The Defense of Recoupment Is Not "New" and Lustig Does Not Bar NatWest's Recoupment Defense as a Matter of Law ................................ 4

        B.    The Trustee's Setoff Arguments Depend On Contested Issues of Fact ............................................................................................................ 8

        C.    NatWest Has Alleged All the Elements of Its Unjust Enrichment Defense ...................................................................................................... 9

    III.    The Trustee's Motion to Dismiss Will Not Moot the Proposed Amendments ..... 10

CONCLUSION ............................................................................................................................. 10

1

# **TABLE OF AUTHORITIES**

**Cases**

*adidas America, Inc. v. Thom Browne, Inc.*,
  629 F. Supp. 3d 213, 221-22 (S.D.N.Y. 2022) ............................................................... 10

*Anthony v. City of New York*,
  339 F.3d 129, 138 n.5 (2d Cir. 2003)............................................................................... 3

*Bull v. United States*, 295 U.S. 247, 262 (1935);
  *see also In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3d Cir. 1995).......................... 5

*Canon Inc. v. Tesseron Ltd.*, No. 14CV5462 DLC, 2015 WL 4508334, at *3
  (S.D.N.Y. July 24, 2015) ................................................................................................. 4

*Citizens Bank of Maryland v. Strumpf*,
  516 U.S. 16, 18 (1995)..................................................................................................... 9

*Compensation Bd. v. Program Risk Management, Inc.*,
  150 A.D.3d 1589, 1594 (N.Y. App. Div. 2017) ........................................................... 10

*GEOMC Co., Ltd. v. Calmare Therapeutics Incorporated*,
  918 F.3d 92, 96 (2d Cir. 2019)......................................................................................... 2

*Greenes v. Vijax Fuel Corp.*,
  326 F. Supp. 2d 464, 468 (S.D.N.Y. 2004)...................................................................... 4

*In re DeLaurentiis Entertainment Group, Inc.*,
  963 F.2d 1269, 1277 (9th Cir. 1992) ............................................................................... 9

*Malinowski v. New York State Dep't of Labor (In re Malinowski)*,
  156 F.3d 131, 133 (2d Cir.1998)...................................................................................... 8

*Marine & Fire Ins. Co. v. Emps. Ins. of Wausau*,
  786 F.2d 101, 103 (2d Cir. 1986)..................................................................................... 3

*Picard v. Lustig*,
  568 B.R. 481 (Bankr. S.D.N.Y. 2017).......................................................................... 7, 8

*Reiter v. Cooper*,
  507 U.S. 258, 265 n.2 (1993)........................................................................................... 5

*Scottish Air Intern., Inc. v. British Caledonian Grp., PLC*,
  152 F.R.D. 18 (S.D.N.Y. 1993) ....................................................................................... 4

*Wells Fargo Bank, N.A. v. United States Life Ins. Co. in the City of N.Y.*, 2023 U.S. Dist. LEXIS
  73094, at *11 (S.D.N.Y. Apr. 26, 2023).......................................................................... 9

Pg 4 of 15

*Westinghouse Credit Corp. v. D'Urso*,
 278 F.3d 138, 147 (2d Cir. 1998) ........................................................................................ 8

Defendant NatWest Markets N.V. (formerly known as ABN AMRO Bank N.V.) ("NatWest")[1] respectfully submits this reply in further support of its motion pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend its Answer, Counterclaims, and Jury Demand ("Answer") to the Consolidated Second Amended Complaint ("Complaint"), No. 10-05354, Dkt. 220, filed by plaintiff Irving H. Picard, Trustee ("Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff ("Madoff").

## PROCEDURAL BACKGROUND

The Trustee filed the Consolidated Second Amended Complaint on March 22, 2022. Following briefing and an order denying NatWest's motion to dismiss, NatWest filed its Answer to the Consolidated Second Amended Complaint, Counterclaims, and Jury Demand on May 15, 2023. Dkt. 268. The Parties stipulated to a briefing schedule, which has been so ordered by the Court, for the Trustee's motion to dismiss NatWest's counterclaims, which provides that NatWest "shall file its opposition to the Trustee's motion to dismiss or amend its Counterclaims by or on August 24, 2023." Dkt. 270 at 2. The Trustee moved to dismiss NatWest's Counterclaims on July 17, 2023. Dkt. 272.

Ahead of the deadline for NatWest to amend its Counterclaims, NatWest notified the Trustee that it intended to amend its Counterclaims and sought the Trustee's consent to NatWest also amending its Affirmative Defenses. At the Trustee's request, NatWest provided a draft of its proposed amendments to the Affirmative Defenses (most of which the Trustee does not object to here). After reviewing, the Trustee declined, without explanation, to consent. Accordingly,

---

[1] After the events at issue in this litigation, ABN AMRO Bank N.V., a financial institution organized under laws of the Netherlands, was renamed The Royal Bank of Scotland N.V. and was later renamed again as NatWest Markets N.V. To avoid confusion with defendants in other Madoff adversary proceedings with similar names, "Defendant" or "NatWest" has been used throughout.

1

on August 24, NatWest moved pursuant to Rule 15 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7015, to amend its affirmative defenses. The Trustee opposed NatWest's motion on September 13, 2023. Dkt. 282 ("Opp.").

## ARGUMENT

Contrary to the Trustee's argument, there is nothing "extraordinary" about a party which has already lost more than $650 million as a result of its investments in BLMIS, a fact the Trustee does not contest, raising defenses to a lawsuit claiming that it should be compelled to lose an additional $308 million. NatWest's proposed amendments to its Affirmative Defenses, coming soon after the original Affirmative Defenses, are the normal type of amendment for which, as the Trustee admits, courts "freely give leave." Fed. R. Civ. P. 15; *cf. GEOMC Co., Ltd. v. Calmare Therapeutics Incorporated*, 918 F.3d 92, 96 (2d Cir. 2019) ("In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.").

The Trustee here challenges only two portions of the proposed amendments (the amendment to the Thirty-First Affirmative Defense and the new Forty-Second Affirmative Defense). Opp. at 7. But the Trustee simultaneously argues that these proposed amendments are so similar to NatWest's original Affirmative Defenses as to be "duplicative." Opp. at 7 n.2. The Trustee thereby admits that he suffers no prejudice from the amendment, because even if the Trustee is successful, he will still be faced with similar affirmative defenses.[2]

---

[2] The Court should of course decline the invitation, buried in a footnote, to *sua sponte* strike originally pled Affirmative Defenses that the Trustee has not seen fit to move to strike. *See* Opp. at 7 n.2.

2

The Trustee raises fact-based arguments that cannot be resolved on a motion to amend. Accordingly, the Court should grant NatWest's motion to amend and allow this case to proceed.

## I. The Challenged Amendments Are Not Prejudicial

NatWest's motion to amend should be granted for the simple reason that the Trustee has pointed to no prejudice from the challenged amendments. As the Trustee admits, leave to amend should be freely granted. Opp. at 6 ("[A] party may amend its pleading . . . with . . . the court's leave," and "[t]he court should freely give leave when justice so requires." (citing Fed. R. Civ. P. 15(a)(2))). The Second Circuit "ha[s] interpreted this instruction in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice." *Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (Sotomayor, J.). Where "there has been no showing by plaintiffs that they suffered any prejudice from the relatively brief delay in defendants' attempt to amend their answer," it would be "an abuse of discretion for the district court not to allow defendant to amend and assert their affirmative defenses." *Tokio Marine & Fire Ins. Co. v. Emps. Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986). The Trustee does not even try to identify prejudice he would suffer as a result of the proposed amendment. For that reason alone, leave should be granted.

But the Trustee goes further and implicitly admits that there will be no prejudice from the amendment. The Trustee claims that "Defendant's proposed amendments for setoff, recoupment, and unjust enrichment are also duplicative of its original Affirmative Defenses . . . ." Opp. at 7 n.2.[3] That admission is dispositive. The Trustee did not move to

---

[3] The case the Trustee cites for the proposition that a court need not grant an amendment merely "duplicative" of original claims, Opp. at 7 n.2 (citing *Scottish Air Intern., Inc. v. British Caledonian Grp., PLC*, 152 F.R.D. 18 (S.D.N.Y. 1993)), is procedurally worlds away from this case. The *Scottish Air* amendments merely added a date to a fact pattern and a few additional details as to damages. Most importantly, *Scottish Air* plaintiffs had already filed an amended complaint, sought leave to file a second amended complaint, and then, six years after filing the

3

strike the original defenses, and there is no reason now to permit him to strike an elaboration of a defense that he has not opposed. And there is even less justification for his suggestion that the Court *sua sponte* strike a defense that the Trustee did not move to strike.

## II. The Amendments Are Not Futile

The Trustee's main argument is that the amendments are futile and should therefore not be permitted.[4] But the defenses are neither new nor futile, and resolution of the defenses presents factual questions that cannot be resolved on a motion to amend.

NatWest gave money to BLMIS as part of the swap transactions through intermediaries, but the Trustee seeks to manipulate statutory definitions and defenses to put NatWest in a worse position than those who transacted directly with BLMIS. And the Trustee tries to achieve that counter-intuitive result through an opposition to a motion to amend. Allowing the Trustee to give NatWest no credit for the monies it gave would work a fundamental unfairness.

### A. The Defense of Recoupment Is Not "New" and *Lustig* Does Not Bar NatWest's Recoupment Defense as a Matter of Law

NatWest's recoupment defense is not new; as the Trustee recognizes, it was explicitly set forth in original Affirmative Defense 31.

"It is well settled . . . that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely

---

first amended complaint and after the court had dismissed the action, sought to amend for a third time. The court agreed that under less egregious circumstances leave should be "freely given." *Scottish Air*, 152 F.R.D. at 34.

[4]   The cases the Trustee cites involve very different facts. *See, e.g.*, *Canon Inc. v. Tesseron Ltd.*, No. 14CV5462 DLC, 2015 WL 4508334, at *3 (S.D.N.Y. July 24, 2015) (denying amendment because defendant lacked standing to assert proposed defense); *Greenes v. Vijax Fuel Corp.*, 326 F. Supp. 2d 464, 468 (S.D.N.Y. 2004) (where liability was at issue in claims, "proposed affirmative defense [that wa]s not a defense to liability . . . would be legally futile"). NatWest's amended defenses, in contrast, would defeat the liability the Trustee alleges if they succeed. NatWest's amended defenses do not fail as a matter of law, but instead rise or fall depending on further development of the facts in dispute.

4

seeks recoupment." *Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993). "Recoupment permits a determination of the just and proper liability on the main issue and involves no element of preference." *Id.* (quotation omitted). "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S. 247, 262 (1935); *see also In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3d Cir. 1995) ("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditor's claims.").

Recoupment is applicable here because of the structure of the transactions—as the Trustee himself has alleged them. *See* Compl. ¶¶ 3, 6 12, 202, 203, 207, 208 & Exs. O, P. In two transactions with Tremont funds called "XL Funds," NatWest agreed to provide leverage to the funds. In each of the swap transactions, the XL Fund posted cash collateral with NatWest and, in exchange, NatWest agreed to provide three times the returns that would have been generated if that amount were invested in a specified Rye Feeder Fund that invested with BLMIS. Compl. ¶¶ 3, 6. In aggregate, the XL Funds posted $313 million in collateral with NatWest. Compl. ¶¶ 202, 207 & Exs. O, P. The Trustee alleges that $180 million of this amount originated with BLMIS before passing to the XL Funds. In order to hedge its risk under the agreements, NatWest then invested three times the amount of collateral posted by the XL Funds in two Rye feeder funds that invested with BLMIS. Further, NatWest only made the redemption withdrawals to satisfy the XL Funds' request for the return of their money. The figure below shows the transactions as alleged by the Trustee.

5



The Trustee himself has described these swap transactions as single integrated transactions: "Each of the XL Funds provided cash collateral to Defendant and in exchange Defendant agreed to provide each XL Fund with returns generated by two of the Tremont BLMIS 'feeder funds'. . . . Defendant hedged its risk under the leverage deals by investing three times the collateral it received from the XL Funds in the Rye Funds, which invested Defendants' funds with BLMIS." Dkt. 272 (Memorandum of Law in Support of Trustee's Mot. to Dismiss Defendant's Counterclaims) at 6; *see also* Compl. ¶¶ 49, 55.

In a similar third transaction with Harley, another Madoff feeder fund, NatWest "sold to a counterparty the future performance over three years of a 3.7 times levered exposure to Harley, less the costs of financing such an investment in Harley and less a profit margin." Compl. ¶ 12; *see also* Counterclaim ¶ 11.

The Trustee's arguments about recoupment require resolution of factual issues. The Court recognized as much when it denied NatWest's motion to dismiss on this point, stating that NatWest's argument was a "factual defense [that] is not apparent on the face of this Complaint."

Mem. Dec. Denying Defendant's Mot. to Dismiss, Dkt. 262 at 19.  The Trustee argues that "no reciprocal obligations or debts exist on either the part of the Trustee or BLMIS under any of the relevant transactions, contracts, or facts."  Opp. at 9.  Yet the Court has already recognized that NatWest and the Trustee have a factual dispute regarding what obligations exist, as NatWest has argued "it immediately returned all of the collateral payments to BLMIS."  Dkt. 262 at 19 (quoting NatWest's Motion to Dismiss, Dkt. 225).  As the Court acknowledged in rejecting NatWest's motion to dismiss, this "factual defense" is incapable of resolution on the basis of the pleadings and must proceed to factual development.

The Trustee's argument to the contrary turns on *Picard v. Lustig*, 568 B.R. 481 (Bankr. S.D.N.Y. 2017), but that case differs both factually and in the legal claims advanced.  Though *Lustig*, as with the instant case, involved withdrawals from BLMIS followed by deposits with BLMIS, *Lustig* did not involve a *single unified transaction*.  Rather, it involved two unrelated transactions.  *Id.* at 484-85, 490.  As the Trustee admits, here the money that was allegedly withdrawn from BLMIS was invested in BLMIS as part of the same overall transaction.  Dkt. 272 at 6; *see also* Compl. ¶¶ 49, 55.  As a result, the *Lustig* discussion of why recoupment was unavailable is inapplicable here.  *Lustig*, 568 B.R. at 490 (emphasizing that the claims "arise from different transactions").  Second, *Lustig* involved a general appeal to equity, whereas here, NatWest has pleaded a recognized common law cause of action (unjust enrichment) and a recognized common law defense (recoupment) and invoked specific portions of the bankruptcy code preserving the right to setoff.  *Compare id.* at 485 (noting that the defendant dropped its defense based on 11 U.S.C. § 553).

Likewise, the Trustee's citation to *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 1998), Opp. at 9, in reality provides further support for NatWest's motion for leave.

7

As the Trustee acknowledges, *Westinghouse* provides that recoupment is available where "both debts . . . arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." Opp. at 9 (citing *Westinghouse*, 278 F.3d at 147). A single unified transaction, not independent transactions, is what occurred here.[5] To the extent the Trustee is arguing (contrary to his Complaint) otherwise, he is raising disputed issues of fact, including the intent of the parties to the transactions, the details of the transactions and the flow of funds resulting from the transactions that cannot be resolved at the pleading stage. For example, if after discovery the evidence shows that all parties to the transactions intended that they be single, unified, contemporaneous mutually dependent investments, then all of the Trustee's authorities will be inapposite. Thus, as "all plausible inferences" must be resolved in NatWest's favor at this stage, *Wells Fargo Bank, N.A. v. United States Life Ins. Co. in the City of N.Y.*, 2023 U.S. Dist. LEXIS 73094, at *11 (S.D.N.Y. Apr. 26, 2023), NatWest's defenses should proceed until they can undergo their appropriate merits-based evaluation.

B.   **The Trustee's Setoff Arguments Depend On Contested Issues of Fact**

The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

> The primacy of setoffs is essential to the equitable treatment of creditors . . . Absent a setoff, a creditor . . . is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of

---

[5] The Trustee's other cited cases do not help its argument. For example, *Malinowski v. New York State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir.1998), involved two separate claims that were part of two separate contracts, one prepetition and the other postpetition, and therefore they could not be the basis for recoupment. In contrast, here, where the reciprocal obligations NatWest seeks to recoup flow from one unified transaction and a single contract, the defense applies.

8

> the money the debtor owes it. It was to avoid this unfairness that setoffs were allowed in bankruptcy in the first place.

*In re DeLaurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992). The right to setoff in bankruptcy is codified at 11 U.S.C. § 553, which provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

The Trustee contends that there is no mutuality of obligations here, Opp. at 7-8, but that too raises a series of fact-based questions not properly dealt with on a motion to amend. And because NatWest already pled setoff in its original affirmative defenses, NatWest has a setoff affirmative defense whether or not the court grants its motion to amend.

### C. NatWest Has Alleged All the Elements of Its Unjust Enrichment Defense

NatWest has alleged all the elements of unjust enrichment: NatWest provided a benefit to BLMIS and Madoff; BLMIS and Madoff acknowledged, accepted, and benefitted from what NatWest provided; and it would be inequitable for BLMIS and Madoff not only to have enjoyed that benefit but also to take even more money from NatWest. *See New York State Workers' Compensation Bd. v. Program Risk Management, Inc.*, 150 A.D.3d 1589, 1594 (N.Y. App. Div. 2017). Although factual issues remain as to whether the evidence supports the allegations, a motion to strike, much less an opposition to a motion for leave to amend, is not the proper time to resolve those issues.

The Trustee makes the counterintuitive argument that NatWest's unjust enrichment defense should be stricken because it does not seek an affirmative recovery. First, NatWest asserted its unjust enrichment defense in its original affirmative defense 31, and the Trustee did not move to strike. There is no reason to permit him to do so now. Second, contrary to the

9

Trustee's argument, Opp. at 12, *adidas America, Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 221-22 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 21-CV-5615 (JSR), 2022 WL 10668978 (S.D.N.Y. Oct. 18, 2022), does not stand for some special proposition that unjust enrichment can *never* be a defense. What the court found "nonsensical" in that case was that the enrichment complained of was the plaintiff's potential recovery on its claim. *Id.* That is very different than the situation here, where BLMIS has already been dramatically enriched at NatWest's expense.

Moreover, of course a defense against a claim for $308 million seeks a recovery—it seeks to block the Trustee from taking those funds. No case law supports the Trustee's novel argument that an unjust enrichment defense that does not seek affirmative recovery may not stand.

### III. The Trustee's Motion to Dismiss Will Not Moot the Proposed Amendments

Further, contrary to what the Trustee alleges, the Trustee's Motion to Dismiss will not moot the proposed amendments. The counterclaims and affirmative defenses do not rise and fall together. They are subject to different requirements, both substantively and procedurally. *See, e.g.*, *adidas America*, 629 F. Supp. at 219 ("Motions to strike affirmative defenses under Rule 12(f) are generally disfavored as the standard to prevail is demanding.").

The Trustee's Motion to Dismiss the counterclaims affects only the counterclaims and nothing more. For that reason there is no reason to hold NatWest's Motion to Amend in abeyance.

### CONCLUSION

For the foregoing reasons, the Court should grant NatWest's motion for leave to amend its affirmative defenses.

10

Dated: September 18, 2023               Respectfully submitted,

                                        */s/ Michael S. Feldberg*

                                        Michael S. Feldberg
                                        REICHMAN JORGENSEN LEHMAN &
                                        FELDBERG LLP
                                        400 Madison Avenue, Suite 14D
                                        New York, NY 10017
                                        Tel.: (212) 381-4970
                                        mfeldberg@reichmanjorgensen.com

                                        *Attorneys for Defendant NatWest Markets N.V.*