**DAVIS+GILBERT LLP**

1675 Broadway

New York, NY 10019

T: (212) 468-4800

*Attorneys for Defendants*

**Hearing Date: October 18, 2023**

**Objection Date: August 7, 2023**

**Reply Date: September 21, 2023**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 23-01017 (CGM) |
| v. | |
| NATIXIS FINANCIAL PRODUCTS LLC and BLOOM ASSET HOLDINGS FUND, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.    THE RELEASE BARS THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS .......... 2

    A.    The Release Language Itself Evidences the Parties' Intent to Release Defendants 2

    B.    The Consideration Exchanged Does Not Limit the Release's Clear Wording ....... 5

    C.    The Trustee's Extrinsic Evidence Should Not Be Considered ............................. 6

    D.    Reformation is Procedurally Improper and Unwarranted ..................................... 9

II.   SECTION 546(g) AT A MINIMUM BARS THE TRUSTEE'S CLAIM TO RECOVER
      THE $61 MILLION IN SIX-YEAR BLOOM REDEMPTIONS.................................... 11

    A.    Natixis FP and Bloom are Financial Participants ................................................ 11

    B.    The Initial Transfers the Trustee Alleges Funded the Six-Year Bloom
          Redemptions Were Made "For the Benefit" of Both Natixis FP and Bloom ....... 13

    C.    The Complaint Pleads that the Initial Transfers Were "Related To" and, Thus,
          Were Made "In Connection With" the Groupement Swap Agreement ............... 15

III.  LACHES BARS THE CLAIM TO RECOVER THE TERMINATION TRANSFER .... 17

    A.    Laches is an Available Defense Against the Trustee's Claims............................ 17

    B.    The Elements of Laches – Delay and Prejudice – are Evident Here ................... 19

IV.   DISMISSAL IS APPROPRIATE FOR ADDITIONAL REASONS ............................. 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*2 Broadway L.L.C. v. Credit Suisse First Boston
    Mortg. Cap. L.L.C.*,
    No. 00-5773, 2001 U.S. Dist. LEXIS 4875
    (S.D.N.Y. Apr. 23, 2001) ..................................................................................... 11

*Ali v. City of N.Y.*,
    No. 20-30, 2021 U.S. Dist. LEXIS 255741
    (E.D.N.Y. Sept. 29, 2021) ..................................................................................... 9

*Ananta Grp., Ltd. v. Moss Shamask, Ltd.*,
    182 A.D.2d 499 (1st Dep't 1992) ......................................................................... 7

*Ashwood Cap., Inc. v. OTG Mgmt.*,
    99 A.D.3d 1 (1st Dep't 2012) ............................................................................... 3

*Bank v. Verde Energy USA, Inc.*,
    No. 19-01472, 2020 U.S. Dist. LEXIS 171630
    (E.D.N.Y. Sept. 18, 2020) ..................................................................................... 4

*Beaumont Cap. Corp. v. Bear, Stearns & Co.*,
    704 F. Supp. 362 (S.D.N.Y. 1988) ....................................................................... 6

*Bild v. Konig*,
    No. 09-5576, 2011 U.S. Dist. LEXIS 44368
    (E.D.N.Y. Apr. 25, 2011) ..................................................................................... 10

*Bishop v. Children's Ctr. for Developmental Enrichment*,
    No. 08-766, 2011 U.S. Dist. LEXIS 130536
    (S.D. Ohio Nov. 10, 2011) ................................................................................... 3

*Burns v. GMC, Pontiac Div.*,
    950 F. Supp. 137 (D. Md. 1996) .......................................................................... 10

*Cahill v. Regan*,
    157 N.E. 2d 505 (N.Y. 1959) ............................................................................... 4

*Chesapeake Energy Corp. v. Bank of N.Y.
    Mellon Tr. Co.*,
    773 F.3d 110 (2d Cir. 2014) ................................................................................. 7

*Consolidated Edison v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................. 5

*Cosmetic Car Co. Hldgs.*,
No. 20-00440, 2021 U.S. Dist. LEXIS 209025
(S.D. Ill. Oct. 29, 2021) ........................................................................... 7

*Errico v. Pfizer Consol. Pension Plan*,
No. 19-10211, 2021 U.S. Dist. LEXIS 75833
(S.D.N.Y. Apr. 20, 2021)........................................................................... 5

*Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*,
22 N.Y.3d 413 (2013)................................................................................ 3

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006) ..................................................................... 6

*Frosty Bites, Inc. v. Dippin' Dots, Inc.*,
No. 01-1532, 2002 U.S. Dist. LEXIS 4167
(N.D. Tex. Mar. 12, 2002) ....................................................................... 20

*Hui-Wen Chang v. N.Y.C. Dep't of Educ.*,
412 F. Supp. 3d 229 (E.D.N.Y. 2019) ...................................................... 5

*In re Acis Cap. Mgmt., L.P.*,
No. 18-30264, 2019 Bankr. LEXIS 292
(Bankr. N.D. Tex. Jan. 31, 2019)............................................................. 18

*In re Actrade Fin. Tech., Ltd.*,
424 B.R. 59 (Bankr. S.D.N.Y. 2009)........................................................ 4

*In re Bankr. Estate of Norske Skogindustrier ASA*,
629 B.R. 717 (Bankr. S.D.N.Y. 2021)...................................................... 11

*In re BFN Operations LLC*,
607 B.R. 551 (Bankr. N.D. Tex. 2018).................................................... 18

*In re Casa de Cambio Majapara S.A. de C.V.*,
390 B.R. 595 (Bankr. N.D. Ill. 2008) ..................................................... 16

*In re Decker*,
No. 10-80029, 2011 Bankr. LEXIS 2143
(Bankr. N.D.N.Y. June 1, 2011) .............................................................. 18

*In re Dynegy Inc.*,
486 B.R. 585 (Bankr. S.D.N.Y. 2013)....................................................... 5

*In re Felice*,
480 B.R. 401 (Bankr. D. Mass. 2012) ..................................................... 18

*In re Gawker*,
  588 B.R. 337 (Bankr. S.D.N.Y. 2018) ...................................................................... 5

*In re Lehman Bros.*,
  617 B.R. 231 (Bankr. S.D.N.Y. 2020),
  *aff'd*, No. 19-3245, 20-3757, 2021 U.S. App. LEXIS 27241
  (2d Cir. Sept. 10, 2021) ........................................................................................... 18

*In re Platinum Oil Props., LLC*,
  465 B.R. 621 (Bankr. D.N.M. 2011) ...................................................................... 9

*In re Straightline Invs.*,
  525 F.3d 870 (9th Cir. 2008) ................................................................................. 18

*In re TMST, Inc.*,
  518 B.R. 329 (Bankr. D. Md. 2014) ....................................................................... 16

*In re Wyly*,
  552 B.R. 338 (Bankr. N.D. Tex. 2016) ................................................................... 17

*Indus. Access Inc. v. Praetorian Hldgs. Grp.*,
  No. 22-626, 2023 U.S. Dist. LEXIS 98713
  (W.D.N.Y. June 5, 2023) ......................................................................................... 7

*Int'l Multifoods Corp. v. Com. Union Ins.*,
  98 F. Supp. 2d 498 (S.D.N.Y. 2000) ..................................................................... 11

*Ivani Cont. Corp. v. City of N.Y.*,
  103 F.3d 257 (2d Cir. 1997) ............................................................................ 17, 18

*Jerry's Gen. Cont. Serv.*,
  No. 86-3266, 1987 U.S. Dist. LEXIS 7522
  (S.D.N.Y. Aug. 17, 1987) ..................................................................................... 4, 5

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018) ............................................................................................. 16

*Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*,
  No. 04-0538, 2005 U.S. Dist. LEXIS 13548
  (D.D.C. June 30, 2005) .......................................................................................... 10

*Omni Quartz v. CVS Corp.*,
  287 F.3d 61 (2d Cir. 2002) ...................................................................................... 6

*Oxford Com. Corp. v. Landau*,
  12 N.Y.2d 362 (1963) .............................................................................................. 4

*Peterson v. Regina*,
   935 F. Supp. 2d 628 (S.D.N.Y. 2013) ................................................................ 4

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014) ................................................................................... 17, 18

*Picard v. ABN Amro Bank (Ireland) Ltd*,
   650 B.R. 24 (Bankr. S.D.N.Y. 2023) ................................................................ 12

*Picard v. ABN Amro Bank (Ireland) Ltd*,
   505 B.R. 135 (S.D.N.Y. 2013) ................................................................. passim

*Picard v. ABN AMRO Bank N.V.*
   *(presently known as NatWest Markets N.V.)*,
   No. 10-05354, 2023 Bankr. LEXIS 554
   (Bankr. S.D.N.Y. Mar. 3, 2023) ....................................................................... 12

*Picard v. Multi-Strategy Fund Ltd.*,
   No. 22-06502, 2022 U.S. Dist. LEXIS 200858
   (S.D.N.Y. Nov. 3, 2022) ................................................................................... 12

*Proyecfin de Venezuela, S.A. v. Banco Indus.*
   *de Venezuela, S.A.*,
   760 F.2d 390 (2d Cir. 1985) ............................................................................... 7

*Rodriguez v. City of N.Y.*,
   No. 18-4805, 2021 U.S. Dist. LEXIS 222062
   (S.D.N.Y. Nov. 16, 2021) ................................................................................. 10

*SCA Hygiene Prods. Aktiebolag v.*
   *First Quality Baby Prods., LLC*,
   580 U.S. 328 (2017) ......................................................................................... 17

*Siddons v. City of N.Y.*,
   No. 17-4017, 2019 U.S. Dist. LEXIS 10119
   (E.D.N.Y. Jan. 7, 2019) ...................................................................................... 3

*SIPC v. BLMIS*,
   2012 U.S. Dist. LEXIS 78804
   (S.D.N.Y. May 15, 2012) .................................................................................. 11

*SIPC v. BLMIS*,
   No. 12-115, 2013 U.S. Dist. LEXIS 56042
   (S.D.N.Y. Apr. 15, 2013) .................................................................................. 12

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000) ............................................................................... 3

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. SPC,*
      No. 17-8528, 2020 U.S. Dist. LEXIS 92744
      (S.D.N.Y. May 27, 2020) ................................................................ 10

*U.S. Bank N.A. v DLJ Mortg. Cap., Inc.,*
      38 N.Y.3d 181 (2022) ...................................................................... 3

*United States v. Ogden,*
      No. 20-01691, 2021 U.S. Dist. LEXIS 44154
      (N.D. Cal. Mar. 8, 2021) ................................................................ 17

*Wade Park Land Hldgs., LLC v. Kalikow,*
      589 F. Supp. 3d 335 (S.D.N.Y. 2022) ............................................ 4

*Wells v. Shearson Lehman/Am. Express, Inc.,*
      72 N.Y.2d 11 (1988) ...................................................................... 10

*Zuckerman v. Metro. Museum of Art,*
      928 F.3d 186 (2d Cir. 2019) ..................................................... 18, 19

**Statutes**

11 U.S.C. § 101(22A)(A) ........................................................................ 12

11 U.S.C. § 546(e) ............................................................................ 2, 19

11 U.S.C. § 546(g) ...................................................................... 2, 11, 16

11 U.S.C. § 548(a)(1)(A) ....................................................................... 11

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................ 20

Fed. R. Civ. P. 12(h)(1) ........................................................................ 20

Fed. R. Civ. P. 60(b) ............................................................................. 1

Fed. R. Civ. P. 60(b)(1) ......................................................................... 9

Fed. R. Civ. P. 60(c)(1) ......................................................................... 9

Fed. R. Civ. P. 8(a) ............................................................................ 20

**Treatises**

TESTING THE BANKRUPTCY CODE SAFE HARBORS IN THE CURRENT FINANCIAL CRISIS,
      18 Am. Bankr. Inst. L. Rev. 241 (Spring 2010) ........................... 16

Defendants Natixis FP[1] and Bloom submit this reply memorandum of law in further support of their motion ("Motion" or "Mot.") (ECF No. 18) to dismiss the Complaint.

## PRELIMINARY STATEMENT

Defendants and the Trustee agree that the Release is unambiguous, Defendants are intended third-party beneficiaries of the Release, and the intended scope of the Release is indicated by the text that the parties employed. *See* Mot. at 10; Opp. at 2, 9. Yet, not once in the Opposition does the Trustee specify any language in the Release that would support his version of the parties' intent. Further, the Trustee does not explain how the parties' use of the broad language "any and all . . . claims whatsoever . . . in any way related to Madoff or BLMIS," and the absence of any carve-out for Groupement-related claims against Defendants, could evidence anything other than the parties' intent to release such claims, which the Trustee has known about since at least 2010. The language in the Release denotes its scope, and the Trustee's claims against Defendants must be dismissed.

It is not surprising, therefore, that the Trustee attempts to divert the Court's attention to everything but the Release itself. As discussed below, he cites inapposite decisions, relies on background recitals that do not limit the Release, and downplays the consideration exchanged. He seeks to introduce extrinsic evidence that is neither necessary nor appropriate when considering unambiguous contractual language. He makes a half-hearted request to reform the Alpha Prime settlement, having failed to seek timely relief from the order approving the Release, as required by Fed. R. Civ. P. 60(b); nor can he show that, at the time they entered into the Release, the parties intended it to have a more limited scope than what they agreed to in writing,

---

[1] Unless otherwise noted, capitalized terms shall have the meaning set forth in the Motion, including citations to "Release," which refer to Paragraph 7 of Cioffi Ex. 7, Alpha Prime Settlement Agreement. "Opposition" or "Opp." refers to the Trustee's memorandum of law, dated August 7, 2023 (ECF No. 22), in opposition to the Motion.

as required for reformation.  As a fallback position, the Trustee also seeks unspecified (and unnecessary) discovery concerning the unambiguous Release language.  All of this adds up to an attempt to limit the Release in a way that the Trustee did not bargain for and that would render key language in the Release – "in any way related to Madoff or BLMIS" – meaningless.

Additionally, Section 546(g)'s safe harbor bars, at a minimum, the Trustee's claim to recover the Six-Year Bloom Redemptions.  In *ABN Amro*, Judge Rakoff found – based on the pleadings – that Section 546(g) applied to the Trustee's claims to recover comparable redemption payments, *see* 505 B.R. at 148, and he fails to meaningfully distinguish the allegations here.  The Trustee also argues for an unduly narrow interpretation of the phrase "in connection with any swap agreement," citing an inapposite decision.  Judge Rakoff's ruling that this phrase means "related to" remains good law and is law of the case.

Moreover, the Trustee's last ditch effort to recover the $153 million Termination Transfer seeks equitable relief from a court of equity, and thus, laches is available to Natixis FP as a defense, even though the claim may have been brought within the statute of limitations period.  And the elements of laches – prejudice and delay – are clearly present here.

The Complaint should also be dismissed for at least five additional reasons.

## **ARGUMENT**

### I.    **THE RELEASE BARS THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS**[2]

#### **A.  The Release Language Itself Evidences the Parties' Intent to Release Defendants**

The Trustee ignores the long-established rule that New York courts "determine the contracting parties' intent" by "look[ing] to the objective meaning of contractual language, not to

---

[2] Defendants' affiliate, Natixis S.A., first raised the Release defense in its pending motion to dismiss, which the Trustee opposed.  *See* 10-05353 Action, ECF Nos. 199, 209.  The Opposition here is substantively identical to the opposition there on the Release issue and does not address any of Natixis S.A.'s reply arguments, despite that the Trustee had over a week to consider those arguments. *See* 10-05353 Action, ECF No. 214 ("Natixis S.A. Reply").

the parties' individual subjective understanding of it." *Ashwood Cap., Inc. v. OTG Mgmt.*, 99 A.D.3d 1, 6 (1st Dep't 2012); *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000). Accordingly, the Court must look to the language **in the Release** to determine **the Release's** objective intent, which here unambiguously releases Defendants from this adversary proceeding.

The Trustee insists that Defendants "rel[y] on selective quotations taken out of context," Opp. at 2, despite that Defendants quote nearly the full language of the Release and refer to the language of the Release throughout the Motion. *See* Mot. at 9-10, 11, 14. By contrast, in the 10 pages that the Trustee dedicates to this issue (and the 15 pages he spends opposing Natixis S.A.'s motion to dismiss), the Trustee never focuses on the language of the Release. *See* Opp. at 8-17. Instead, he reads non-existent language into the Release that would limit its scope to claims against Defendants relating only to transfers from Alpha Prime (and he concedes that Defendants are third-party beneficiaries of the Release at least to that extent).[3] *See id.* at 13. But the Release says no such thing. Although the Trustee bargained for this type of limiting language in many other settlements, *see* Mot. at 13-15, he did not do so here, and his interpretation of the Release is foreclosed by New York law. *See Siddons v. City of N.Y.*, No. 17-4017, 2019 U.S. Dist. LEXIS 10119, at *9 (E.D.N.Y. Jan. 7, 2019) (explaining that, "had the parties intended to limit the [g]eneral [r]elease as [p]laintiff maintains, they certainly could have done so expressly, but they did not," and that this was "all the more true in light of the fact that [p]laintiff was represented by the same counsel in" both actions at issue).[4]

---

[3] Because Defendants are indisputably third-party beneficiaries of the Release, *see* Opp. at 16 & n.5, they are entitled to enforce the Release. *See* Mot. at 8; *see also Bishop v. Children's Ctr. for Developmental Enrichment*, No. 08-766, 2011 U.S. Dist. LEXIS 130536, at *19-20 (S.D. Ohio Nov. 10, 2011) ("[E]ven if the parties to the contract do not believe that a breach occurred, that does not alter a third party beneficiary's rights [to] sue for breach.").

[4] *See also U.S. Bank N.A. v DLJ Mortg. Cap., Inc.*, 38 N.Y.3d 169, 181 (2022) ("Yet again, we conclude that the parties' contract, as written, means what it says . . . .") (quotations and citations omitted); *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (2013) ("Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied . . . the time to say so [is] at the bargaining table.") (quotations and citations omitted); *Jerry's Gen. Cont. Serv.*, No. 86-3266, 1987 U.S. Dist.

Not only does the Trustee ignore and misconstrue the Release, his interpretation renders meaningless the operative language – releasing "all past, present or future actions . . . arising out of or in any way related to Madoff or BLMIS," Release ¶ 7 – contrary to New York law.  *See Wade Park Land Hldgs., LLC v. Kalikow*, 589 F. Supp. 3d 335, 365-66 (S.D.N.Y. 2022).  If the Release applies only to claims related to Alpha Prime transfers, as the Trustee contends, the clause "in any way related to Madoff or BLMIS" has no effect.  *See Bank v. Verde Energy USA, Inc.*, No. 19-01472, 2020 U.S. Dist. LEXIS 171630, at *11-12 (E.D.N.Y. Sept. 18, 2020).[5]

Next, the Trustee contends wrongly that the Court can disregard the Release language by citing to "principles" from inapposite decisions.  Opp. at 9-11.  For example, he cites *Cahill v. Regan*, 157 N.E. 2d 505 (N.Y. 1959), and *Peterson v. Regina*, 935 F. Supp. 2d 628 (S.D.N.Y. 2013), where the courts interpreted standard form releases, but he does not argue that the Release is a standard form release.  Nor could he – sophisticated parties heavily negotiated the Release, and it identifies specifically which claims are and are not covered.  *See Oxford Com. Corp. v. Landau*, 12 N.Y.2d 362, 366 (1963).  He cites to *In re Actrade Financial Technologies, Ltd.*, 424 B.R. 59, 71 (Bankr. S.D.N.Y. 2009), where the Court found that the parties did not release certain claims that they could not have been aware of at the time of the release; but the Trustee cannot allege such facts here given that he has been pursuing Madoff-related claims against Defendants since at least 2010.  He cites to decisions in which the agreement at issue provided relevant carve-outs to the release, such as *Consolidated Edison v. Northeast Utilities*, 332 F.

---

LEXIS 7522, at *4 (S.D.N.Y. Aug. 17, 1987) ("'[A] court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract.'") (citation omitted).

[5] On September 20, 2023, this Court rejected the Trustee's efforts to construe an order in exactly this manner, disagreeing that a 2016 order applied only to "good faith" cases, where language in the order specifies that it applies in "any" adversary proceeding.  *See* Sept. 20, 2023 Hrg. on Trustee's Motion to Amend 2016 Discovery Order, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Aug. 2, 2023), ECF No. 23449 (transcript not yet available).

Supp. 2d 639 (S.D.N.Y. 2004) and *In re Dynegy Inc.*, 486 B.R. 585, 591-92 (Bankr. S.D.N.Y.

2013). Here, no carve-outs in the Release apply to the Trustee's claims. The Trustee also cites

to decisions involving ambiguous releases, but Defendants and the Trustee agree that the Release

is unambiguous. *See In re Gawker*, 588 B.R. 337, 339, 347 (Bankr. S.D.N.Y. 2018) (construing

ambiguous release).[6]

That the settlement agreement's background section mentions neither Defendants nor

Groupement, and that it resolved a dispute between Alpha Prime and the Trustee, does not alter

the effect of the Release. *See Hui-Wen Chang v. N.Y.C. Dep't of Educ.*, 412 F. Supp. 3d 229,

244 (E.D.N.Y. 2019) (noting that "'mere recitation of the specific claims underlying a settlement

will not undermine the broad prophylactic effect of general release language," particularly in

absence of "language cabining the release to that claim") (citation omitted). Nor is the principle

of *ejusdem generis* – that the words of a release are limited by the recital of particular claims –

applicable here. *See* Opp. at 10. Far from being limited to claims related to Alpha Prime, the

Release expressly applies to "any and all" claims and actions "whatsoever" that "in any way

relate[] to Madoff or BLMIS." Release ¶ 7. As a result, the decisions cited by the Trustee are

inapt, as there the releases themselves referred specifically to particular claims or had other

limiting language that is not present here. *See* Opp. at 10; Natixis S.A. Reply at 6-7.

**B. The Consideration Exchanged Does Not Limit the Release's Clear Wording**

New York courts have rejected the argument that the consideration exchanged for a

release should limit its scope. *See, e.g.*, *Errico v. Pfizer Consol. Pension Plan*, No. 19-10211,

2021 U.S. Dist. LEXIS 75833, at *51-52 (S.D.N.Y. Apr. 20, 2021); *Jerry's Gen. Cont. Serv.,

Inc.*, 1987 U.S. Dist. LEXIS 7522, at *2, 7. Yet, even if the consideration is relevant to the

---

[6] The remaining decisions the Trustee cites as to the Release are distinguishable for the reasons set forth in Natixis S.A.'s motion to dismiss reply brief. *See* Natixis S.A. Reply at 4-7, 9-10, 13-15.

Court's analysis, the Trustee downplays the substantial benefits provided under the settlement

agreement.  *See* Opp. at 11.  For example, Alpha Prime agreed to share the proceeds from several

lawsuits against certain HSBC entities, one of which alone seeks damages **over $346 million**,[7]

and the Trustee acknowledged previously that "shar[ing] in the recovery of" these litigations

could "result in millions of dollars to the estate."  Cioffi Ex. 9, Alpha Prime Rule 9019 Motion ¶

21.  The 2022 settlement with Alpha Prime also added at least $11 million to the BLMIS estate

pursuant to a Section 502(h) claim reduction.  *See* Alpha Prime Rule 9019 Motion ¶ 21.[8]

Further, the 2018 Alpha Prime Partial Settlement Agreement was intended to be part of the

overall resolution of the Alpha Prime case, and provided additional value of $76 million to the

BLMIS estate.  *See* Cioffi Ex. 10, Alpha Prime Partial Settlement Agreement ¶ 1(a).

Accordingly, the Trustee's suggestion that he agreed to the Release "without any monetary

compensation" is wrong.  Opp. at 11.

### C.  The Trustee's Extrinsic Evidence Should Not Be Considered

The Release is clear, and extrinsic evidence cannot be considered to determine the

meaning of an unambiguous contract.  *See Omni Quartz v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.

2002); *Beaumont Cap. Corp. v. Bear, Stearns & Co.*, 704 F. Supp. 362, 364 (S.D.N.Y. 1988).

Even if extrinsic evidence could be considered, what the Trustee has presented is insufficient to

alter the Release's plain language.

First, the declaration from "a director" of Alpha Prime is not appropriate to submit on a

motion to dismiss.  *See* Opp. at 13; *Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006).  New

---

[7] *See* Supp. Attorney Decl. of Thomas J. Moloney in Supp. of HSBC Defs.' Mot. to Dismiss, Ex. 7 (Translation of Alpha Prime Summons, dated Oct. 20, 2009), at 7, *Alpha Prime* Action (May 8, 2015), ECF No. 387-2.

[8] The Trustee implies that Defendants' interpretation of the Release may result in the release of Madoff-related claims against other Alpha Prime shareholders.  *See* Opp. at 12.  The time to consider consequences of the Release was "at the bargaining table," *Eujoy Realty Corp.*, 22 N.Y.3d at 424, and, in any event, the Trustee does not identify a single other current or former Alpha Prime shareholder against which he has claims.

York law is clear that, when interpreting a contract, the "primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement," not statements submitted with the benefit of hindsight a year later. *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113-14 (2d Cir. 2014) (citation omitted). Where, like here, a provision is unambiguous, courts decline to consider declarations on the issue of intent. *See Indus. Access Inc. v. Praetorian Hldgs. Grp.*, No. 22-626, 2023 U.S. Dist. LEXIS 98713, at *23 n.11 (W.D.N.Y. June 5, 2023) (disregarding declaration, as "it defies credulity" that "***authors of the Agreement***" expressed desire for mandatory arbitration in negotiations but "drafted and consented to [the provision] in the manner it appears").[9] Likewise, the Court should disregard the Trustee's self-serving email to Defendants, *see* Opp. at 12-13, which is not in fact evidence of the parties' intent. *See Cosmetic Car Co. Hldgs.*, No. 20-00440, 2021 U.S. Dist. LEXIS 209025, at *13-14, *23 (S.D. Ill. Oct. 29, 2021) (finding it "not appropriate to consider the email" that court described as "self-serving" on motion to dismiss).

Second, there is no extrinsic evidence that would enable the Trustee to square his (and Alpha Prime's) after-the-fact, self-serving statements with the public declarations Alpha Prime made at the time it entered into the Alpha Prime Settlement Agreement. Prior to executing the Release, Alpha Prime stated that "in litigating these claims over the last ten years it is easy to forget that the true victims here are and continue to be the shareholders of Alpha Prime"; that "[e]ach of these shareholders has been waiting to receive some compensation for the money that BLMIS stole from them," and that "the shareholders are becoming more and more frustrated."[10] And, in a separate affirmation, Alpha Prime's Chairman – the same person who signed the

---

[9] *See also Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 393-94 (2d Cir. 1985); *Ananta Grp., Ltd. v. Moss Shamask, Ltd.*, 182 A.D.2d 499, 499 (1st Dep't 1992).

[10] Reply of Alpha Prime in Supp. of Mot. for Judgment at 23, *Alpha Prime* Action (Sept. 7, 2019), ECF No. 552.

declaration referred to in the Opposition – said that "Alpha Prime's intention is to complete the

legal processes underway [*i.e.*, the actions involving the Trustee and HSBC], recover the funds

that can be recovered, so that a final and complete accounting may be rendered and thereafter a

single and final distribution to shareholders be made," consistent with Alpha Prime's fiduciary

duties.  Accordingly, it is logical that the Release was intended to include claims against former

shareholders in any way related to Madoff or BLMIS, as doing so expedited the finality and

prompt payout Alpha Prime admittedly wanted.[11]

Third, in other Madoff cases, the Trustee has bargained for language limiting releases to

claims relating to only specific initial transferees, but not here.  *See* Mot. at 13-15.  And, despite

his claims to the contrary, the Trustee does not "only" release claims against unnamed parties

that relate solely to the transfers at issue in the adversary proceeding he has settled, Opp. at 13,

as he has agreed to other releases with a broad scope similar to the Release.[12]

Fourth, the Court's approval of the Alpha Prime Rule 9019 Motion – which described the

Release as releasing "current and former . . . . direct or indirect shareholders . . . from . . . claims

. . . arising out of or ***in any way related to Madoff or BLMIS***," Alpha Prime Rule 9019 Motion

at 7 (emphasis added) – does not support the Trustee's strained interpretation.  *See* Opp. at 14-

15.  The Trustee is estopped from taking a position contrary to the Release's clear language now,

after asking the Court to approve such language in his Alpha Prime Rule 9019 Motion.  *See* Mot.

---

[11] Affirmation of Peter Fischer ¶ 15, *Access Advantage Master, Ltd. v. Alpha Prime Fund Ltd.*, Index No. 654350/2019 (N.Y. Sup. Ct. Nov. 4, 2019), NYSCEF Doc. No. 8.

[12] *See, e.g.*, *Hadassah, et al.*, Settlement Agreement and Release ¶ 2, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Feb.17, 2011), ECF No. 3856-2 (releasing transferees and "each of their . . . present and former . . . shareholders . . . from any and all past, present or future claims . . . that are, have been, could have been, or might in the future be, asserted by Trustee against Transferees based on, arising out of, or ***relating in any way to BLMIS, the SIPC Proceeding, the BLMIS estate***, the BLMIS Accounts or the Avoidable Transfers") (emphasis added); *Union Bancaire Privée, et al.*, Settlement Agreement ¶ 7, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Dec. 6, 2010), ECF No. 3302-2 (releasing "all affiliates of UBP" and list of funds from "***all actions*** . . . known or unknown . . . that are, have been, could have been or might in the future be ***asserted by the Trustee*** . . .") (emphasis added).

at 16.  Nor does Defendants' conduct following the Alpha Prime Rule 9019 Order support the

Trustee's interpretation of the Release.  *See* Opp. at 15-16.  Defendants raised the Release to the

Court at their first opportunity (in the Motion) and even provided advance notice of this

argument to the Trustee in April 2023, just months after the Court entered the Alpha Prime Rule

9019 Order.  *See* Opp. at 12-13.  Any attempt by Defendants to tell the Trustee not to sue them

based on the Release would have surely fared no better than asking the Trustee not to sue them

based on their other defenses.  The Trustee's statement that he would not have filed a new

complaint against Defendants if they had been released shows at most that he may not have

"appreciate[d] the reach" of the Release.  *Ali v. City of N.Y.*, No. 20-30, 2021 U.S. Dist. LEXIS

255741, at *16-17, *19 (E.D.N.Y. Sept. 29, 2021).

Finally, Defendants did not "consent[]" to the filing of the Complaint, Opp. at 15;

consent was not required.  Defendants consented to the filing of the Amended Complaint in the

10-05353 Action, but that was only pursuant to an express stipulation by the Trustee that

"nothing referenced in this Stipulation and Order" permitting the amendment shall "impair,

constitute a waiver of, or otherwise affect any [] rights, claims, arguments, objections, and

defenses" of the parties.  Stipulation & Order ¶ 7, 10-05353 Action (Jan. 10, 2023), ECF No.

192; Stipulation & Order ¶ 6 (Mar. 13, 2023), ECF No. 5.  Thus, this non-existent consent to file

the Complaint is not extrinsic evidence that supports the Trustee's interpretation of the Release.

### D.  Reformation is Procedurally Improper and Unwarranted

As a last gasp, the Trustee asks to reform the Alpha Prime Settlement Agreement or

pursue unspecified discovery.  *See* Opp. at 17.  To reform the Release, however, the Trustee had

to seek relief from the Alpha Prime Rule 9019 Order, pursuant to Rule 60(b)(1), before July 21,

2023, which he failed to do.  *See* Fed. R. Civ. P. 60(c)(1); *In re Platinum Oil Props., LLC*, 465

B.R. 621, 650-51 (Bankr. D.N.M. 2011).  And reformation is unwarranted, as the Trustee fails to

point to a mutual mistake by "clear and convincing evidence" and tellingly he does not explain

how he would reform it.  *Rodriguez v. City of N.Y.*, No. 18-4805, 2021 U.S. Dist. LEXIS 222062,

at *22 (S.D.N.Y. Nov. 16, 2021); *Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. SPC*, No.

17-8528, 2020 U.S. Dist. LEXIS 92744, at *45 (S.D.N.Y. May 27, 2020) (finding sophistication

of parties is factor courts consider for reformation requests).  An after-the-fact declaration does

not show that the Trustee and Alpha Prime manifested an intent – when they entered into the

Release in June 2022 – to cover claims related only to Alpha Prime transfers.  *See Wells v.*

*Shearson Lehman/Am. Express, Inc.*, 72 N.Y.2d 11, 24 (1988) ("[N]o manifestation of alleged

intent was made to anyone when the parties entered into the release.  Uncommunicated

subjective intent alone cannot create an issue of fact where otherwise there is none.").

        In any event, the Trustee and Alpha Prime cannot modify the settlement agreement now.

By filing the Motion, Defendants unequivocally assented to and relied upon the Release,

terminating the Trustee's and Alpha Prime's ability to modify it.  *See Bild v. Konig*, No. 09-

5576, 2011 U.S. Dist. LEXIS 44368, at *8-9 (E.D.N.Y. Apr. 25, 2011) ("[O]nce a third-party

beneficiary accepts, adopts, or relies upon a contract, the contracting parties cannot modify that

contract without the third-party beneficiary's consent."); *Burns v. GMC, Pontiac Div.*, 950 F.

Supp. 137, 139 (D. Md. 1996) (finding parties' ability to modify promise terminates once third-

party beneficiary "brings suit on" such promise by filing motion) (citations omitted).

         In addition, the Trustee's request for discovery is also unwarranted because the Release

is unambiguous, and the Trustee has not articulated what discovery he seeks.  *See Mwabira-*

*Simera v. Sodexho Marriot Mgmt. Servs.*, No. 04-0538, 2005 U.S. Dist. LEXIS 13548, at *6 n.6

(D.D.C. June 30, 2005) (denying discovery request where it was unclear "what facts that

discovery could hope to uncover that would shine any meaningful light on the unambiguous

10

release").  Simply put, discovery is unnecessary, as "[i]t is appropriate to grant a motion to

dismiss on the basis of a binding release agreement where . . . the terms of the agreement are

clear and unambiguous."  *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Cap. L.L.C.*,

No. 00-5773, 2001 U.S. Dist. LEXIS 4875, at *18 (S.D.N.Y. Apr. 23, 2001); *Int'l Multifoods

Corp. v. Com. Union Ins.*, 98 F. Supp. 2d 498, 507 (S.D.N.Y. 2000) ("If defendant's argument

were to be accepted, the entire purpose of the parol evidence rule would be vitiated. Thus, there

is no ground for reformation, and no reason to grant further discovery.").

## II.    SECTION 546(g) AT A MINIMUM BARS THE TRUSTEE'S CLAIM TO RECOVER THE $61 MILLION IN SIX-YEAR BLOOM REDEMPTIONS

Based on the Trustee's allegations in the Complaint and Judge Rakoff's *ABN Amro*

decision, the elements of Section 546(g) are satisfied, thus barring the Six-Year Bloom

Redemptions.[13]  Specifically, the allegations establish that (i) Bloom and Natixis FP are financial

participants, (ii) the Initial Transfers relating to the Six-Year Bloom Redemptions were made

"for the benefit" of both Bloom and Natixis FP, and (iii) the Initial Transfers were made "in

connection with any swap agreement."  11 U.S.C. § 546(g).   And, despite the Trustee's

argument, *see* Opp. at 22-23, 25-26, the Court can resolve **all** elements of Section 546(g) based

on pleadings alone, as Judge Rakoff did in *ABN Amro.  See ABN Amro*, 505 B.R. at 144-151.[14]

### A.   Natixis FP and Bloom are Financial Participants

A financial participant includes "an entity that, at the time it enters into a ***securities

contract . . . [or] swap agreement***, . . . has gross mark-to-market positions of not less than

---

[13] Section 546(g) also bars the Trustee from recovering the Two-Year Bloom Redemptions and the Termination Transfer, even though these transfers allegedly occurred within two years of Madoff's filing, for the reasons stated herein and in the Motion, and because the Section 548(a)(1)(A) exception does not apply. *See* Mot. at 16-22, 25-27.

[14] The decision in *SIPC v. BLMIS*, 2012 U.S. Dist. LEXIS 78804 (S.D.N.Y. May 15, 2012), cited by the Trustee, preceded *ABN Amro* and ***pertained to several of the same defendants*** Judge Rakoff deemed were financial participants on the pleadings.  In *In re Bankr. Estate of Norske Skogindustrier ASA*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021), defendants "ha[d] [not] pointed to any facts that demonstrate that the criteria for 'financial participant' . . . ha[d] been met." *Picard v. Multi-Strategy Fund Ltd*. pertained to Section 546(e) and not a fact

$100,000,000 . . . in one or more such agreements or transactions with the debtor or any other

entity . . . on any day during the 15-month period preceding the date of the filing of the petition."

11 U.S.C. § 101(22A)(A) (emphasis added); *see SIPC v. BLMIS*, No. 12-115, 2013 U.S. Dist.

LEXIS 56042, at *44-45 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*") ("[D]efinition of a

securities contract . . . includes . . . investment fund subscription agreements and redemption

requests . . . and total return swaps coupled with a securities sale transaction.").

    The Complaint establishes that Bloom is a financial participant, as the Trustee alleges

that Bloom had more than $100 million in positions in a securities agreement with Groupement.

Specifically, the Trustee alleges that Bloom, on behalf of Natixis FP, held well more than $100

million in Groupement shares "equal to GFLL's notional leveraged investment," as a hedge

against the Groupement Swap. Compl. ¶¶ 63, 67, 79.[15] He further alleges that Bloom held the

bulk of such shares well within 15 months of the filing date. *See* Compl. ¶¶ 69, 79 (alleging

"between July and October of 2008" Bloom transferred Groupement shares to GFLL, and GFLL

redeemed those shares to pay Natixis FP $153 million).[16]

    The Trustee does not seriously dispute that Natixis FP is also a financial participant. *See*

Opp. at 24 n.12. Nor can he, as Judge Rakoff found that other defendants were financial

participants, *see ABN Amro*, 505 B.R. at 148-49,[17] based on similar facts: Natixis FP entered

---

pattern involving a swap transaction like here. *See* No. 22-06502, 2022 U.S. Dist. LEXIS 200858, at *25 (S.D.N.Y. Nov. 3, 2022). The Trustee also cites two decisions *again involving the same defendants* that were the subject of *ABN Amro*, in which Judge Rakoff decided Section 546(g) on the pleadings. *See Picard v. ABN Amro Bank (Ireland) Ltd*, 650 B.R. 24, 33 (Bankr. S.D.N.Y. 2023) (Morris, J.) (acknowledging Section 546(g) applied to redemptions but not collateral payments); *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.)*, No. 10-05354, 2023 Bankr. LEXIS 554 (Bankr. S.D.N.Y. Mar. 3, 2023) (Morris, J.).

[15] *See also* Cioffi Ex. 18, Proffer ¶ 68 (alleging Bloom "invest[ed] approximately $165 million in Groupement").

[16] The Trustee also alleges in the Initial Complaint that Bloom purchased hundreds of millions of dollars in shares of other Madoff-related funds to hedge against exposures from swaps. *See e.g.*, Initial Compl. ¶¶ 18, 75, 82, 108, 120.

[17] *See also Cohmad*, 2013 U.S. Dist. LEXIS 56042, at *44 ("[W]here the Trustee alleges that a defendant entered into a swap agreement with collateral payments and reference amounts worth at least $100 million, the defendant may be deemed a protected . . . 'financial participant' . . . .") (citing 11 U.S.C. § 101(22A)(A)).

into the Groupement Swap, *see* Compl. ¶¶ 64-65, which had an equity value of over $100

million, *see* Cioffi Ex. 5, Initial Compl. ¶ 101 (alleging original equity value of Groupement

Swap was $224,294,981); "GFLL provided Natixis FP with collateral of approximately half the

amount to be notionally invested in [Groupement]," Compl. ¶ 65, which was more than $100

million, *see* Initial Compl. ¶ 101 (alleging GFLL originally paid $111,497,551 to Natixis FP as

initial collateral); Natixis FP provided GFLL a $153 million "implied loan" "pursuant to the

Groupement Swap," Compl. ¶ 69; and the Groupement Swap was not terminated until October 1,

2008, well within 15 months of the filing of the bankruptcy petition. *See id.* ¶ 79, Ex. D.

### B. The Initial Transfers the Trustee Alleges Funded the Six-Year Bloom Redemptions Were Made "For the Benefit" of Both Natixis FP and Bloom

The Trustee argues that the Initial Transfers – which allegedly funded the Six-Year

Bloom Redemptions, *see, e.g.*, Compl. ¶¶ 5, 78 – were not "for the benefit" of Bloom.  Yet, he

has alleged that "[a] portion of the Groupement Initial Transfers was subsequently transferred

either directly or indirectly to, or *for the benefit of*, the Defendants."  Initial Compl. ¶ 226

(emphasis added).  And, Judge Rakoff already found the "for the benefit" element satisfied in

nearly the same exact context of this case: "redeeming investors, who benefited by maintaining

their perfect hedge on the swap transactions."  *ABN Amro*, 505 B.R. at 149-50.  Here, the Trustee

has alleged repeatedly that Bloom redeemed shares from Groupement to "hedge" against the

Groupement Swap.  Compl. ¶¶ 63, 67, 79; *see also* Initial Compl. ¶¶ 18, 20, 73, 82.

The Trustee's efforts to distinguish the instant action from *ABN Amro* are unconvincing.

There, Judge Rakoff relied entirely on the following allegation to find that initial transfers were

made for the benefit of ABN Amro (Ireland):  "[I]n order to fulfill AA [Ireland's] redemption

request, Broad Market withdrew $30 million from its [Madoff Securities] account, and

subsequently transferred the $30 million of [Madoff Securities] Customer Property to AA

[Ireland]."[18]  This is precisely what the Trustee purports to allege in the Complaint:  Bloom

allegedly received redemptions of Groupement shares and Groupement allegedly withdrew funds

from its BLMIS account to fund those redemptions.  *See* Compl. ¶ 78 ("[A]t least $80.9 million

was transferred from Groupement to Bloom pursuant to the hedging structure created to support

the Groupement Swap. . . .  These transfers . . . were subsequent transfers of BLMIS customer

property.").[19]  If Judge Rakoff found that benefitting the defendants was "within the

contemplation" of the initial transferees there, *ABN Amro*, 505 B.R. at 150, then Groupement

clearly intended to benefit Bloom based on substantially the same allegations at issue here.

        The Initial Transfers allegedly relating to the Six-Year Bloom Redemptions were also

made for the benefit of Natixis FP.  *See, e.g.*, Compl. ¶ 15 (alleging "purpose of Bloom's

hedging investments in Groupement was to enable Natixis FP to enter into swap transactions in

New York"); *id.* ¶ 67 ("Natixis FP and Bloom entered into an agreement that required all

positive returns on Bloom's investment in Groupement to be transferred to Natixis FP, less

applicable fees."); Proffer ¶ 14 ("Bloom functioned at the direction of Natixis FP, on Natixis

FP's behalf, and ***for Natixis FP's benefit***.") (emphasis added).  And, benefitting Natixis FP must

have been "within the contemplation" of Groupement, *ABN Amro*, 505 B.R. at 150, when

Groupement allegedly withdrew the Initial Transfers to transfer the Six-Year Bloom

Redemptions, as the Groupement Swap was entered into between Natixis FP and GFLL, an

alleged "[a]ffilliate" of Groupement,  Compl. ¶ 4.  GFLL had the same board of directors, banks,

---

[18] *ABN Amro*, 505 B.R. at 149 (citing Am. Compl. ¶ 75, *Picard v. ABN Amro Bank (Ireland) Ltd*, No. 11-06877
(S.D.N.Y. July 3, 2012), ECF No. 33).  Similarly, as to the other ABN Amro defendant, Judge Rakoff found the "for
the benefit" element satisfied based on the following allegation: "[I]n order to fulfill ABN/RBS's redemption
request, Broad Market used funds from redemptions out of its BLMIS account, and subsequently transferred $1.4
million of BLMIS customer property to ABN/RBS."  Am. Compl. ¶ 82, *Picard v. ABN Amro Bank N.V.*, No. 11-
06878 (S.D.N.Y. Aug. 8, 2012), ECF No. 32 (cited in *ABN Amro*, 505 B.R. at 149).

[19] If the Trustee has not adequately alleged that the Six-Year Bloom Redemptions are comprised of BLMIS funds,
then his claim must be dismissed for that reason separately.  *See* Mot. at 34-35.

partners, principals, manager, advisors, and administrators – including various "Access" entities – as Groupement.  *See* Cioffi Ex. 2, Groupement SAC ¶¶ 72, 84, 89-90, 93, 96, 105, 139; Proffer ¶ 80 (alleging that Bloom requested its Groupement redemptions from "Access").

### C.  The Complaint Pleads that the Initial Transfers Were "Related To" and, Thus, Were Made "In Connection With" the Groupement Swap Agreement

Judge Rakoff found that (i) the phrase "in connection with" in Section 546(g) means "related to" and (ii) "initial transfers of [] redemption payments" of investments made in reference funds as a hedge against obligations to swap counterparties are "related to, and therefore made in connection with, the underlying swap agreements."  *ABN Amro*, 505 B.R. at 146-47.  Here, the Trustee does not dispute that the November 5, 2003 Master Agreement constitutes a "swap agreement" for purposes of Section 546(g) and has repeatedly alleged that Bloom received redemptions from Groupement allegedly funded by the Initial Transfers to "hedge" against the Groupement Swap.  Compl. ¶¶ 63, 67, 78; *see also* Initial Compl. ¶¶ 18, 20, 73, 82.  The Trustee's allegations in the Complaint and Initial Complaint are nearly identical to the allegations in *ABN Amro* that formed the basis of Judge Rakoff's conclusion.[20]  The Trustee never appealed Judge Rakoff's ruling, which was based on several court decisions and the legislative history of Section 546(g).  *See ABN Amro*, 505 B.R. at 145-48 (collecting cases and finding "Congress intended a reading of 'in connection with' that safeguards financial markets

---

[20] *Compare ABN Amro*, 505 B.R. at 146-47 ("In connection with swaps, even though it is not required to do so, to hedge its exposure to pay the return to the other party, typically a financial institution may use cash collateral from the swap party and its own money to purchase the underlying asset.") (citing Compl. ¶ 11, Ex. A to Shahnfeld Decl., *Picard v. Citibank, N.A.*, No. 11-7825 (S.D.N.Y. Aug. 15, 2012), ECF No. 26), *with* Compl. ¶ 63 ("As a hedge to ensure its ability to pay the agreed returns on a notional investment in a reference asset, a financial institution (or its affiliate) will typically acquire a corresponding position in the underlying reference asset for its own account."); Initial Compl. ¶ 11 (similar).

more broadly").  In addition, bankruptcy courts have followed or are otherwise in accord with –

and the Trustee has not identified a single decision criticizing – Judge Rakoff's ruling.[21]

In opposition, the Trustee insists that the phrase "in connection with" in Section 546(g)

means "pursuant to" based on *Merit Management Group, LP v. FTI Consulting, Inc.*, 138 S. Ct.

883 (2018).  Yet, *Merit Management* mentions neither Section 546(g) nor *ABN Amro*, focused

entirely on the Section 546(e) safe harbor, and not once states that the phrase "in connection

with" means "pursuant to."  Opp. at 24-25.  Worse still, the Trustee misconstrues *Merit*

*Management* entirely, as the issue before the Supreme Court there was how to determine "the

relevant transfer for purposes of the §546(e) safe harbor."  138 S. Ct. at 897.  The Supreme Court

expressly acknowledged that it was not interpreting the phrase "in connection with a securities

contract" pursuant to Section 546(e).[22]  As such, *Merit Management* has no bearing here, and

Judge Rakoff's ruling remains good law and law of the case.  *See* Mot. at 18 n.20.

Last, the Trustee argues vaguely that the Complaint does not "link" the Initial Transfers

"to a swap transaction specifically involving Bloom."  Opp. at 25.  But again, Defendants must

show only that the Initial Transfers are "related to" the Groupement Swap.  To the extent the

Trustee is arguing that his allegations do not sufficiently link the Initial Transfers to the Six-Year

---

[21] *See, e.g.*, *In re TMST, Inc.*, 518 B.R. 329, 344 (Bankr. D. Md. 2014), *reconsideration granted on other grounds*, 2014 Bankr. LEXIS 4707 (Bankr. D. Md., Nov. 13, 2014) (finding language "in connection with" in Section 546(g) means "related to such an agreement") (citing *ABN Amro*, 505 B.R. at 144); *In re Casa de Cambio Majapara S.A. de C.V.*, 390 B.R. 595, 598 (Bankr. N.D. Ill. 2008) (same); TESTING THE BANKRUPTCY CODE SAFE HARBORS IN THE CURRENT FINANCIAL CRISIS, 18 Am. Bankr. Inst. L. Rev. 241, 270-271 (Spring 2010) (noting Congress "expand[ed] the [Section 546(g)] protection to any transfer 'related to' a swap").

[22] *Merit Mgmt.*, 138 S. Ct at 892 n.5 (noting "[t]he parties [did] not ask this Court to determine whether the transaction at issue in this case qualifies as a transfer that . . . [was] made in connection with a 'securities contract'" pursuant to Section 546(e), as that question was not "necessary for resolution of the question presented").

Bloom Redemptions, then his claims of course must be dismissed because the Trustee can only

recover subsequent transfers comprised of BLMIS funds.  *See* Mot. at 34-35.

## III.    LACHES BARS THE CLAIM TO RECOVER THE TERMINATION TRANSFER

### A.  Laches is an Available Defense Against the Trustee's Claims

The Trustee argues that laches is not available to Natixis FP because his claims were

made within the limitations period in Section 550(f)(1).  *See* Opp. at 26-27.  But the Trustee

seeks *equitable* relief from a court of equity, and, as such, laches is available even where a

federal limitations period has not expired.  *See United States v. Ogden*, No. 20-01691, 2021 U.S.

Dist. LEXIS 44154, at *14-15 (N.D. Cal. Mar. 8, 2021) (permitting defendant to assert laches to

equitable claim filed within statute of limitations under False Claims Act); *In re Wyly*, 552 B.R.

338, 624 n.1597 (Bankr. N.D. Tex. 2016) ("An effectively unlimited statute of limitations may

be subject to the same analysis as a lack of a statute of limitations where laches is concerned.").

The decisions cited by the Trustee merely indicate that laches cannot be invoked to bar

*legal* relief (typically, claims for damages) where the applicable federal limitations period has

not expired, but these same decisions make clear that laches can still apply to bar equitable relief

in this scenario.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667, 685 (2014)

(holding laches "cannot be invoked to preclude adjudication of a claim for damages brought

within [11 U.S.C. § 507(b)'s] three-year window"; but, in extraordinary circumstances, "may . . .

at the very outset of the litigation, curtail[] the relief equitably awarded"); *SCA Hygiene Prods.*

*Aktiebolag v. First Quality Baby Prods.*, *LLC*, 580 U.S. 328, 333-34 (2017) ("This case turns on

the application of [laches] to a claim for damages, a quintessential legal remedy."); *Ivani Cont.*

*Corp. v. City of N.Y.*, 103 F.3d 257, 260 (2d Cir. 1997) (holding laches cannot bar federal

statutory claim "seeking legal relief"; noting plaintiff "seeks no equitable remedy, but only

money damages").  Indeed, courts recently have confirmed that laches may bar equitable claims

filed within federal limitations periods. *See, e.g.*, *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 195-97 (2d Cir. 2019) (finding claims to recover art timely under federal HEAR Act barred by laches).[23]

And here, the Trustee's claim to recover the Termination Transfer, *i.e.*, alleged customer property for the BLMIS estate, indisputably seeks equitable relief. *See In re Felice*, 480 B.R. 401, 420 (Bankr. D. Mass. 2012) ("Modern courts agree that a bankruptcy trustee's gathering of the 'property' of the estate . . . is inherently an equitable task."); *In re Straightline Invs.*, 525 F.3d 870, 885 (9th Cir. 2008) (noting recovery "under 11 U.S.C. § 550 [w]as an appropriate equitable remedy"); *In re Acis Cap. Mgmt., L.P.*, No. 18-30264, 2019 Bankr. LEXIS 292, at *39 n.74 (Bankr. N.D. Tex. Jan. 31, 2019) (finding "Chapter 11 Trustee's claims . . . to avoid fraudulent transfers seek equitable relief"). Even after *Petrella*, courts have found laches available to bar statutorily timely bankruptcy avoidance actions. *See In re BFN Operations LLC*, 607 B.R. 551, 564 n.43 (Bankr. N.D. Tex. 2018) (noting bankruptcy avoidance action "may be defended . . . [on grounds of] laches"); *see also In re Decker*, No. 10-80029, 2011 Bankr. LEXIS 2143, at *5, *9, *18 (Bankr. N.D.N.Y. June 1, 2011) (decided after *Ivani Contracting*, 103 F.3d 257).

Moreover, applying laches to the Termination Transfer comports with Congressional intent, as Section 550(f)(1) is part of the Bankruptcy Code and thus was expected to be construed in accordance with equitable principles. *See In re Lehman Bros.*, 617 B.R. 231, 246 (Bankr. S.D.N.Y. 2020), *aff'd*, No. 19-3245, 20-3757, 2021 U.S. App. LEXIS 27241 (2d Cir. Sept. 10, 2021) ("[L]aches is particularly important in bankruptcy, where 'the chief purpose' is to 'secure a prompt and effectual administration and settlement of the estate.'") (citation omitted);

---

[23] *See also Ogden*, 2021 U.S. Dist. LEXIS 44154, at *14-15; *Johns Hopkins Univ.*, 2018 U.S. Dist. LEXIS 70403, at *69 (D. Del. Mar. 1, 2018) ("The Supreme Court's recent decision in *SCA Hygiene* extends only to damages.").

*Zuckerman*, 928 F.3d at 195-97 (applying laches where Congress intended federal limitations period at issue to be administered in accordance with equitable principles).

### B.  The Elements of Laches – Delay and Prejudice – are Evident Here

The Trustee is a sophisticated party who has had access to millions of BLMIS documents for over a decade, *see* Mot. at 28, and he has pursued claims against Defendants for over 12 years (through multiple pleadings and actions), yet – inexplicably – never once sought to recover the $153 million Termination Transfer (which is now more than 65% of the total relief he seeks) until he filed the Complaint in 2023.  *See Zuckerman*, 928 F.3d at 194 (finding delay unreasonable where "financially sophisticated" plaintiff "actively and successfully pursued other [similar] claims").  The Trustee suggests that the addition of the Termination Transfer "reflect[s] the Trustee's ongoing investigation into BLMIS."  Opp. at 29.  This statement explains nothing and fails to excuse the Trustee's inordinate delay.  For example, the Trustee does not state when he discovered the Termination Transfer or explain its omission from earlier pleadings.  Further, the Termination Transfer is not a mere "detail[]," *id.*, it is the largest transfer the Trustee seeks.  Defendants themselves did not know that the Trustee would potentially seek the Termination Transfer, as they lack access to GFLL's records (and Groupement's) and thus had no way of knowing (and still do not) whether GFLL redeemed Groupement shares to fund the Termination Transfer (if not, the transfer is not comprised of BLMIS funds and is not recoverable).

## IV.    DISMISSAL IS APPROPRIATE FOR ADDITIONAL REASONS

Dismissal is also appropriate because (i) none of Bloom's alleged "contacts" subject it to specific jurisdiction; (ii) the Trustee does not challenge that Defendants satisfy the elements of Section 546(e); rather, he wrongly relies on the "knowledge exception" and the "Ponzi scheme presumption"; (iii) the Trustee fails to allege adequately that Defendants received BLMIS

customer property and still has not provided the necessary details of GFLL's purported

Groupement redemption; (iv) the Trustee's attempt to incorporate the Groupement SAC fails to

comply with Rules 8(a) and 10(c), even if judicial notice may be taken; and (v) the Trustee's

allegations establish Defendants' good faith defense as a matter of law.  *See* Mot. at 24-40.

As to the Trustee's contention that Bloom waived its personal jurisdiction defense –

waiver occurs only when a defendant does not raise it in its first responsive pleading or motion

seeking dismissal of a pleading.  *See* Fed. R. Civ. P. 12(h)(1).  It does not apply when a motion

to dismiss is filed in a ***separate action*** – as Bloom did here in the 10-05353 Action – even if it

involved the same parties.  *See Frosty Bites, Inc. v. Dippin' Dots, Inc.*, No. 01-1532, 2002 U.S.

Dist. LEXIS 4167, at *16 (N.D. Tex. Mar. 12, 2002), *report and rec. adopted*, No. 01-1532,

2002 U.S. Dist. LEXIS 11043 (N.D. Tex. June 20, 2002) (holding defendants did not "waive[]

their jurisdictional defense as a result of actions taken in a different, albeit arguably related,

case").  Bloom has also repeatedly reserved the right to contest jurisdiction.[24]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Complaint with prejudice.

---

[24] *See, e.g.*, Stip. & Order ¶ 6 (Mar. 13, 2023), ECF No. 5; Stay Stip. & Order at 6, 10-05353 Action (July 1, 2020), ECF No. 185; Stip. & Order at 2, 10-05353 Action (Jan. 10, 2017), ECF No. 124; Stip. Extending Time at 2, 10-05353 Action (Jan. 27, 2014), ECF No. 60.

Dated:  September 21, 2023
      New York, New York

**DAVIS+GILBERT LLP**

By:  */s/ Joseph Cioffi*
     Joseph Cioffi
     H. Seiji Newman
     Bruce M. Ginsberg
     Adam M. Levy
     Christine DeVito
     1675 Broadway
     New York, NY 10019
     T: (212) 468-4800
     jcioffi@dglaw.com
     bginsberg@dglaw.com
     hsnewman@dglaw.com
     alevy@dglaw.com
     cdevito@dglaw.com

*Attorneys for Defendants Natixis Financial Products LLC (as successor in interest to Natixis Financial Products Inc.) and Bloom Asset Holdings Fund*