**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02796 (CGM) |
| Plaintiff, | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| v. | |
| BNP PARIBAS ARBITRAGE SNC, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................2

    II.     HARLEY RECEIVED $1 BILLION IN TRANSFERS FROM BLMIS ...............3

    III.    DEFENDANT RECEIVED $1 BILLION IN TRANSFERS FROM
          HARLEY .............................................................................................................4

ARGUMENT ....................................................................................................................5

    I.      THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..........5

         A.     Defendant Purposefully Availed Itself of the Laws and Privileges
             of Conducting Business in New York .........................................................6

              1.     Defendant's Intentional Investments with BLMIS Through
                    Harley Establish Personal Jurisdiction..............................................7

              2.     Defendant's Intentional Use of New York Bank Accounts
                    Establishes Personal Jurisdiction ......................................................9

         B.     Defendant's Contacts with the Forum Are Sufficiently Related to
             the Trustee's Claims .................................................................................11

         C.     Exercising Personal Jurisdiction Over Defendant Is Reasonable ..............12

         D.     In the Alternative, the Trustee Is Entitled to Jurisdictional
             Discovery ................................................................................................12

    II.     DEFENDANT RECEIVED TRANSFERS OF BLMIS CUSTOMER
          PROPERTY .........................................................................................................13

          A.     The Trustee Plausibly Alleges that Defendant Received
             Subsequent Transfers of BLMIS Customer Property Under Section
             550..........................................................................................................13

         B.     Defendant's Tracing Arguments Fail at the Pleading Stage......................14

    III.    THE TRUSTEE PLAUSIBLY ALLEGES THE AVOIDABILITY OF
          THE INITIAL TRANSFERS FROM BLMIS ......................................................15

    IV.    DEFENDANT'S GOOD FAITH AND FOR VALUE DEFENSES ARE
          INAPPLICABLE AT THE PLEADING STAGE .................................................18

    V.     THE TRUSTEE'S CLAIMS ARE NOT BARRED BY SECTION 546(e) ..........20

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BLMIS*,
No. 20-cv-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) .......................18, 19, 20

*In re BLMIS*,
No. 22 CIV. 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...............................7, 9

*Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*,
No. 18-CV-11099 (ALC), 2020 WL 7128968 (S.D.N.Y. Dec. 4, 2020)................................12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................................6

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)................................................................................................6, 12

*Dandong v. Pinnacle Performance Ltd.*,
966 F. Supp. 2d 374 (S.D.N.Y. 2013)....................................................................................10

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)......................................................................................................5

*Eldesouky v. Aziz*,
No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)................................10

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*,
Nos. 21-cv-10316 (LAP) & 21-cv-10334 (LAP), 2022 WL 3910679
(S.D.N.Y. Aug. 31, 2022) ......................................................................................................12

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)...........................................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................................................................6

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774
(Bankr. S.D.N.Y. Jan. 3, 2014)..............................................................................................15

*HSH Nordbank AG N.Y. Branch v. Street*,
No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................................10

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945)................................................................................................................6

*Licci v. Lebanese Canadian Bank*,
    20 N.Y.3d 327 (2012) ................................................................................................10, 11

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) .....................................................................................10, 11

*Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*,
    650 B.R. 24 (Bankr. S.D.N.Y. 2023) ........................................................................17, 18

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .............................................................................19

*Picard v. BNP Paribas S.A. (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................6, 8, 20

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................................7, 9

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514
    (Bankr. S.D.N.Y. Mar. 14, 2012) ..............................................................................13, 15

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ..................................................................................3, 19, 20

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) .................................................................5, 6, 11

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) .................................................................................................................................19

*Picard v. First Gulf Bank (In re Madoff)*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) .....................................................................................................................17, 18

*Picard v. JABA Assocs. LP (In re Madoff)*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021) ...........................................................................18

*Picard v. KBC Invs. Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02761 (CGM), 2023 WL 3112719 (Bankr. S.D.N.Y. Apr.
    26, 2023) .................................................................................................................7, 9, 12

*Picard v. Korea Exch. Bank (In re Madoff)*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ..........................................................................................................................13

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) .................................................................12

*Picard v. Meritz Fire & Marine Ins. Co. (In re Madoff)*,
    Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
    10, 2022) ..............................................................................................................10

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..........................................................13, 14

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................................................... *passim*

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...............................................................13, 14

*Spetner v. Palestine Inv. Bank*,
    70 F.4th 632 (2d Cir. 2023) .................................................................................10

*Tibble v. Farmers Grain Express, Inc. (In re Mich. Biodiesel, LLC)*,
    510 B.R. 792 (Bankr. W.D. Mich. 2014) .............................................................16

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Nos. 11 CIV. 1590 (LTS) (HBP) & 11 CIV. 8726 (LTS) (HBP), 2013 WL
    6123104 (S.D.N.Y. Nov. 20, 2013) .....................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................9

*Yip v. Google, LLC (In re Student Aid Ctr., Inc.)*,
    608 B.R. 583 (Bankr. S.D. Fla. 2019) .................................................................16

**Statutes**

11 U.S.C. § 546(e) ......................................................................................2, 20, 21

11 U.S.C. § 548(a) ..................................................................................................2

11 U.S.C. § 548(a)(1)............................................................................................15

11 U.S.C. § 548(a)(1)(A) ............................................................................. *passim*

11 U.S.C. § 548(a)(1)(B) ......................................................................................15

11 U.S.C. § 550.........................................................................................1, 13, 16

11 U.S.C. § 550(a) ................................................................................................16

11 U.S.C. § 550(b) ..................................................................................2, 16, 18, 19

11 U.S.C. § 551 ........................................................................................................................16

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ............................................................1

**Rules**

Rule 9(b) ................................................................................................................................17

**Other Authorities**

U.S. Sec. and Exch. Comm'n Office of Investigations, Report No. OIG-509,
    *Investigation of Failure of SEC To Uncover Bernard Madoff's Ponzi Scheme –*
    Public Version (Aug. 31, 2009), *available at* https://www.sec.gov/files/oig-
    5090.pdf ...........................................................................................................................19

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to the motion (ECF No. 104-1[1]) (the

"Motion") filed by defendant BNP Paribas Arbitrage SNC ("Defendant") to dismiss the Trustee's

Amended Complaint.

## PRELIMINARY STATEMENT

The Trustee's Amended Complaint in this SIPA liquidation proceeding seeks to recover

over $1 billion in fraudulent transfers of stolen BLMIS customer property that Defendant received

from the BLMIS feeder fund Harley International (Cayman) Ltd. ("Harley").  There are no valid

grounds to dismiss the Amended Complaint.  Defendant's Motion consists entirely of arguments

previously made by other defendants and squarely rejected by this Court.

*First*, the Amended Complaint establishes that this Court has personal jurisdiction over

Defendant.  Defendant purposefully invested in Harley knowing and intending that Harley fed all

of its money to BLMIS.  Defendant knew that BLMIS was the investment manager, executing

broker, and custodian of Harley's (and Defendant's) investments.  Defendant also received the

transfers at issue in a BNP Paribas bank account in New York.  These facts, plus the additional

contacts detailed herein, are the same types of facts that this Court has repeatedly held sufficient

to establish specific jurisdiction.

*Second*, the Amended Complaint sufficiently alleges that Defendant received stolen

customer property under Section 550 of the Bankruptcy Code.  The Amended Complaint outlines

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. BNP Paribas Arbitrage SNC*, Adv. Pro. No. 11-02796 (Bankr. S.D.N.Y.).

the relevant pathways through which customer property was transferred from BLMIS to Harley and subsequently to Defendant, and sets forth the necessary vital statistics (*i.e.*, the "who, when, and how much") for each transfer Defendant received. Nothing more is required at this stage.

*Third*, the Trustee has not only alleged that the initial transfers from BLMIS to Harley are avoidable, those transfers have been *avoided* by this Court. Summary judgment avoiding those transfers was entered in November 2010. Defendant does not address that avoidance order. Instead, Defendant argues that the Ponzi scheme presumption does not demonstrate BLMIS's fraudulent intent under Section 548(a). This argument conflicts with binding precedent, and is irrelevant in any event because the Amended Complaint also alleges BLMIS's fraudulent intent through multiple "badges of fraud."

*Fourth*, the Amended Complaint neither pleads nor proves Defendant's affirmative defenses of good faith and value under Section 550(b). Defendant's claim to the contrary misconstrues the Section 550(b) defenses and ignores clear authority from the Second Circuit, the District Court, and this Court finding that these defenses are not ripe for consideration on a motion to dismiss.

*Finally*, by its plain terms, Section 546(e) does not bar the Trustee's claims. The relevant initial transfers from BLMIS to Harley were all made within two years of the filing date, and those transfers are avoidable—and have been avoided—under Section 548(a)(1)(A).

Instead of answering the Amended Complaint, Defendant filed a meritless motion to delay proceedings. The Trustee respectfully submits that Defendant's Motion should be denied.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff operated BLMIS's investment advisory business as a Ponzi scheme until BLMIS's collapse and Madoff's arrest in 2008. Am. Compl. ¶¶ 12, 25, 48–49. Madoff's Ponzi scheme was

fueled by numerous "feeder funds" created for the express purpose of funneling investor funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021). Defendant invested in at least seven BLMIS feeder funds, including Harley. Am. Compl. ¶ 53.

## II.    HARLEY RECEIVED $1 BILLION IN TRANSFERS FROM BLMIS

Harley was a feeder fund registered in the Cayman Islands that maintained a customer account at BLMIS and invested all of its assets with BLMIS in New York. *Id.* ¶ 54. Harley had no employees of its own. *Id.* ¶ 56. Instead, Harley acted through Fix Asset Management, Inc. ("FAM"), which was a fund manager that was incorporated and based in New York. *Id.* FAM was owned and controlled by Charles Fix, a New York resident who owned and controlled all of the voting shares of Harley. *Id.* FAM in New York received Harley's account statements from BLMIS, marketed subscriptions in Harley, and corresponded with BLMIS to request transfers from Harley's BLMIS account. *Id.* ¶ 57.

In Harley's subscription agreements, investors affirmed having received and read Harley's Confidential Explanatory Memorandum, which provided that Harley would be governed by its Articles of Association. *Id.* ¶¶ 58–60. The Articles of Association provided that all disputes among Harley and its shareholders were subject to binding arbitration in New York. *Id.* ¶ 60. Harley's subscription agreements also directed investors to wire U.S. dollars to an account at the Northern Trust Banking Corporation ("NTBC") in New York. *Id.* ¶ 62. When Harley withdrew funds from its BLMIS account, BLMIS transferred the withdrawn funds to the same NTBC account in New York. *Id.*

Following BLMIS's collapse, the Trustee commenced an adversary proceeding against Harley to avoid and recover more than $1 billion in fraudulent transfers of customer property. *Id.* ¶ 82. On July 8, 2009, the Clerk of the Bankruptcy Court entered a default against Harley. *Id.* ¶ 83. And on November 10, 2010, this Court entered summary judgment against Harley in the

amount of $1,066,800,000.00. *Id.* Although the initial transfers from BLMIS to Harley were avoided by the summary judgment order, the Trustee has not yet recovered any of the stolen customer property received by Harley. *Id.*

## III.    DEFENDANT RECEIVED $1 BILLION IN TRANSFERS FROM HARLEY

Defendant is a wholly owned subsidiary of BNP Paribas S.A. ("BNP Paribas") and a member of BNP Paribas's Fund Derivatives Group. *Id.* ¶¶ 51, 63–64. During the relevant time period, the Fund Derivatives Group was comprised of employees of BNP Paribas and certain of its subsidiaries, including Defendant and BNP Paribas Securities Corp., which was a U.S. registered broker-dealer based in New York. *Id.* ¶ 64. From its offices on Seventh Avenue in New York, and as part of the Fund Derivatives Group, Defendant worked with employees of BNP Paribas and BNP Paribas Securities Corp. on transactions relating to Harley and the transfers sought herein. *Id.* ¶ 78.

In 2003, BNP Paribas acquired the assets of New York-based Zurich Capital Markets, Inc. ("ZCM"). *Id.* ¶ 66. As part of the acquisition, approximately 60 former ZCM employees became BNP Paribas employees in New York. *Id.* ¶ 67. The acquisition also included ZCM's investment portfolio, which included a multi-million-dollar credit facility with Santa Barbara Holdings Ltd. ("Santa Barbara"), a FAM fund that invested entirely in Harley. *Id.* ¶ 68.

In 2004, BNP Paribas, through its Fund Derivatives Group, executed a credit facility with Santa Barbara for investments with Harley. *Id.* ¶ 69. The credit facility agreement and related custody, control, and pledge agreements contained New York choice-of-law and venue provisions. *Id.* ¶ 70. BNP Paribas Securities Corp. operated as calculation agent and collateral agent for the credit facility. *Id.* ¶¶ 72–73.

Between 2003 and 2008, BNP Paribas's and Defendant's relationships with FAM, Santa Barbara, and Harley grew substantially. *Id.* ¶ 74. In 2008, Defendant, as a member of the Fund

Derivatives Group, received 19 transfers from Harley that comprised $1,054,960,052 in BLMIS customer property. *Id.* ¶¶ 2, 74, 78; *id.*, Ex. C. Defendant received each of these transfers in a BNP Paribas bank account in New York. *Id.* ¶ 80.

From its transactions with Harley, Defendant knew: (1) BLMIS in New York was the investment advisor for Harley; (2) BLMIS in New York was the executing broker for Harley's investments and purportedly executed Madoff's split-strike conversion strategy (the "SSC Strategy") on behalf of Harley; (3) Madoff's SSC Strategy purportedly involved the purchase and sale of U.S. equities, U.S. options, and U.S. treasury bills, and the decisions regarding which securities to purchase were made by Madoff in New York; (4) BLMIS in New York maintained custody of 99.99% of Harley's assets; and (5) Harley's entire economic purpose was to deliver money to BLMIS in New York. *Id.* ¶ 79.

## ARGUMENT

### I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A prima facie showing of jurisdiction "may be established solely by allegations," which are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *Id.* at 85. Personal jurisdiction over a defendant may be general or specific. Relevant here, specific jurisdiction exists when (1) the defendant purposefully directs its activities at the forum and (2) the underlying cause of action "arises out of or relates to those activities." *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citation omitted).

As to the first prong, the court assesses whether the totality of the defendant's contacts with the forum show that the defendant purposefully availed itself of the privilege of conducting

activities within the forum.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  As to the second prong, the court must find some "affiliation between the forum and the underlying controversy."  *Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The court must also determine whether the exercise of personal jurisdiction is reasonable, such that it will not offend the traditional notions of "fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945).  Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

> **A.** **Defendant Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York**

The Trustee has alleged that Defendant purposefully availed itself of the laws and privileges of conducting business in New York by knowingly directing funds to be invested with BLMIS through Harley.  Am. Compl. ¶ 77.  The Trustee has alleged that Defendant, from its offices in New York, and as part of the Fund Derivatives Group in New York, worked with employees of BNP Paribas and BNP Paribas Securities Corp. on transactions relating to investments in Harley and the transfers sought herein.  *Id.* ¶ 78.  Based on these allegations and the Trustee's additional allegations discussed herein, "the Trustee has made a prima facie showing that [Defendant] had sufficient minimum contacts with the United States, specifically New York, regarding services rendered in connection with the Fund Derivatives Group, and any related transfers arose of those contacts and were the proximate cause of the injuries the Trustee seeks to redress through the [Amended Complaint]."  *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R.

167, 190–91 (Bankr. S.D.N.Y. 2018) (finding personal jurisdiction over Defendant for claims to recover transfers from BLMIS feeder funds where "those subsequent transfers arose, for the most part, from the Fund Derivatives Group's New York contacts").

1.   Defendant's Intentional Investments with BLMIS Through Harley Establish Personal Jurisdiction

In addition, this Court has held that the Trustee makes a prima facie showing of jurisdiction by alleging that a defendant "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS" through its feeder funds. *See Picard v. KBC Invs. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02761 (CGM), 2023 WL 3112719, at *3 (Bankr. S.D.N.Y. Apr. 26, 2023) (finding Trustee's allegations that defendant knowingly directed funds to be invested in BLMIS through Harley were legally sufficient to make a prima facie showing of personal jurisdiction); *Picard v. Bureau of Lab. Ins. (In re Madoff)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*") (finding defendant "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"); *see also In re BLMIS*, No. 22 CIV. 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard*") ("[T]he Bankruptcy Court correctly held, applying settled precedent, that by intentionally investing in a New York-based investment fund, Defendant 'purposefully availed itself of the privilege of' doing business in New York.").

The Amended Complaint alleges the same intentional conduct found sufficient by this Court in *KBC* and *BLI* and by the District Court in *Lombard*. For example, the Amended Complaint alleges that Defendant knew: (1) Harley invested all of its assets with BLMIS in New York, Am. Compl. ¶ 2; (2) BLMIS in New York was the actual investment advisor for Harley, *id.* ¶ 79(a); (3) BLMIS was the executing broker for Harley's investments and purportedly executed

7

the SSC Strategy on behalf of Harley, *id.* ¶ 79(b); (4) Madoff's SSC Strategy purportedly involved the purchase and sale of U.S. securities, and the decisions regarding which securities to purchase were made by Madoff in New York, *id.* ¶ 79(c); (5) BLMIS in New York maintained custody of 99.99% of Harley's assets, *id.* ¶ 79(d); and (6) Harley's entire economic purpose was to deliver money to BLMIS in New York, *id.* ¶ 79(e).

Apart from Defendant's intent to invest with BLMIS in New York, Defendant's transactions with Harley provide an additional basis for jurisdiction based on Harley's connections to New York.  In *BNP Paribas*, the Court found that the Trustee had made a prima facie showing of jurisdiction over any fraudulent transfer claims resulting from redemptions made by Defendant from the BLMIS feeder funds managed by Tremont Group Holdings, Inc. ("Tremont") in New York.  594 B.R. at 191 (noting Tremont's feeder funds were managed from offices in New York, and that Defendant sent subscription agreements to New York, wired funds in U.S. dollars to New York, sent redemption requests to New York, and received redemption payments from a Bank of New York account in New York).

Although registered in the Cayman Islands, Harley had no employees in the Cayman Islands or anywhere else; it acted through FAM, which was based in New York and owned and controlled by a New York resident, Charles Fix.  *Id.* ¶ 56.  From New York, FAM directed the day-to-day business of Harley's operations.  *Id.* ¶ 57.  Harley also directed investors to wire funds to the NTBC account in New York.  *Id.* ¶ 62.  The transfers Defendant received from Harley arose from similar New York contacts and provide another basis for jurisdiction.  *See id.* ("The redemption and any other payments the Defendants received as direct investors in the Tremont Funds arose from the aforementioned New York contacts and were the proximate cause of the injuries that the Trustee seeks to redress.")

8

In support of its Motion, Defendant raises several arguments that this Court has previously rejected. First, citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014), Defendant argues that the Trustee improperly focuses on Harley's contacts with the forum, not Defendant's contacts. Mot. at 6. This argument misrepresents the allegations in the Amended Complaint concerning Defendant's intent to invest with BLMIS and Defendant's work with the Fund Derivatives Group in New York. *See* Am. Compl. ¶¶ 52–53, 64–65, 77–80. Consequently, *Walden* is of "no assistance" to a subsequent transferee like Defendant who invested in a feeder fund with the specific goal of having funds invested with BLMIS in New York. *See Multi-Strategy Fund*, 641 B.R. at 87. As the District Court recently found, "Defendant's *own* intentional contacts with New York create the requisite connection." *Lombard*, 2023 WL 395225, at *4 (emphasis in original).

Second, Defendant argues that its contacts with the forum are "fortuitous" and "attenuated," such that it was not foreseeable that it would be haled into a New York court. Mot. at 6–7. But when a defendant invested in a BLMIS feeder fund in order to profit from BLMIS in New York, that argument is "disingenuous." *BLI*, 480 B.R. at 517. "Defendant 'intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom.'" *KBC*, 2023 WL 3112719, at *4 (quoting *BLI*, 480 B.R. at 506). Nor are Defendant's contacts either fortuitous or attenuated where the Trustee has alleged that Defendant, from its offices in New York, worked with employees of the Fund Derivatives Group on Madoff-related transactions that led to the transfers sought herein. Am. Compl. ¶ 78.

> 2.    Defendant's Intentional Use of New York Bank Accounts Establishes Personal Jurisdiction

The Trustee has alleged that Defendant received each of the 19 transfers at issue from Harley in a BNP Paribas bank account in New York. Am. Compl. ¶ 80; *id.*, Ex. C. This Court has

held that the Trustee makes a prima facie showing of jurisdiction by alleging Defendant purposefully used the New York banking system to receive the subsequent transfers that the Trustee seeks to recover. *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. (In re Madoff)*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *see also Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 & n.18 (S.D.N.Y. 2016) ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]."); *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023) (finding "sustained use of a correspondent banking account constitutes 'transacting business' within the meaning of [N.Y. C.P.L.R.] § 302(a)(1)").

These decisions follow a long line of cases in which courts held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York longarm statute based on defendant's use of New York account to receive payment at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 381–84 (S.D.N.Y. 2013) (same); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (same).

In its Motion, Defendant argues that it used a correspondent bank account at BNP Paribas in New York and its use this correspondent bank account was not purposeful. Mot. at 7. But the fact that the account at BNP Paribas in New York may (or may not) have been a correspondent account does not change the analysis. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338

(2012) (holding defendant's purposeful use of a correspondent account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established"). And despite Defendant's claim to the contrary, Mot. at 7, the Trustee has alleged that Defendant's *repeated* use of the account at BNP Paribas in New York was purposeful. *Licci*, 20 N.Y.3d at 327 (finding "complaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a 'course of dealing'—show purposeful availment of New York's dependable and transparent banking system"). As such, Defendant's repeated use of the New York banking system to invest in and receive the transfers at issue from Harley supports this Court's exercise of jurisdiction.

### B.    Defendant's Contacts with the Forum Are Sufficiently Related to the Trustee's Claims

Defendant argues that its contacts with the forum are not sufficiently related to the Trustee's claim to recover subsequent transfers from Harley. Mot. at 8. However, as the Supreme Court has held, the "arise out of or relate to" test does not require a causal relationship. *See Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021). The test is satisfied if the defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 67–71 (requiring only that the claim not be "completely unmoored" from the transaction). Accordingly, this Court has repeatedly held that the Trustee's actions to recover subsequent transferees of BLMIS customer property are directly related to a defendant's investments with BLMIS through its feeder funds. *See, e.g.*, *Multi-Strategy Fund*, 641 B.R. at 88. Consistent with this Court's prior decisions, the Trustee's claims to recover subsequent transfers from Harley are directly related to Defendant's purposeful investment activities with Harley and BLMIS in New York.

### C.    Exercising Personal Jurisdiction Over Defendant Is Reasonable

Defendant fails to present a compelling reason why personal jurisdiction would be unreasonable. *See Chloé*, 616 F.3d at 165 (finding "where the plaintiff has made a threshold showing of minimum contacts," the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Defendant is "not burdened by this litigation," as it is represented by U.S. counsel and voluntarily submitted to arbitration in New York when it invested in Harley. *See Multi-Strategy Fund*, 641 B.R. at 88; *see also KBC*, 2023 WL 3112719, at *3 (finding submission to arbitration in New York supported personal jurisdiction over defendant); *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 119–20 (Bankr. S.D.N.Y. 2011) (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). In addition, both the forum and the Trustee have a strong interest in litigating BLMIS adversary proceedings in this Court. *See Multi-Strategy Fund*, 641 B.R. at 88–89. The Court's exercise of personal jurisdiction is therefore reasonable.

### D.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If the Court finds that the Trustee has not made a prima facie showing of jurisdiction over Defendant, the Trustee respectfully requests jurisdictional discovery. *See Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, Nos. 21-cv-10316 (LAP) & 21-cv-10334 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding plaintiff need not establish a prima facie case for jurisdiction to obtain jurisdictional discovery). The Trustee has alleged that Defendant invested in BLMIS through Harley for the purpose of investing in the U.S. securities markets, repeatedly used U.S. bank accounts to transact business with Harley, and had significant business contacts in New York. At a minimum, these allegations establish a "threshold showing" of jurisdiction sufficient to warrant jurisdictional discovery. *See Blockchain Mining Supply & Servs. Ltd. v. Super*

*Crypto Mining, Inc.*, No. 18-CV-11099 (ALC), 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020) (holding plaintiff was entitled to jurisdictional discovery where plaintiff had made a "sufficient threshold showing toward establishing personal jurisdiction").

## II.    DEFENDANT RECEIVED TRANSFERS OF BLMIS CUSTOMER PROPERTY

The Amended Complaint plausibly alleges that Defendant received subsequent transfers of BLMIS customer property from Harley.  In arguing otherwise, Defendant misstates the Trustee's pleading burden, raises disputed questions of fact, and ignores this Court's recent decisions.

### A.    The Trustee Plausibly Alleges that Defendant Received Subsequent Transfers of BLMIS Customer Property Under Section 550

To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)).  Contrary to Defendant's claim that the Trustee has failed to conduct a "tracing" analysis, *see* Mot. at 9, this Court has repeatedly held that tracing is not required at the pleading stage and the Trustee need not perform a dollar-for-dollar accounting of the exact funds at issue.  *See, e.g.*, *Multi-Strategy Fund*, 641 B.R. at 90; *Merkin*, 515 B.R. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).

Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [defendant]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *accord Picard v. Korea Exch. Bank (In re Madoff)*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *11 (Bankr. S.D.N.Y. Sept. 21, 2022) (finding the Trustee need only proffer "allegations that make it seem plausible that [the transferee] received BLMIS monies").  In addition, the Trustee must allege "the 'necessary vital statistics—the who, when, and

how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."
*Merkin*, 515 B.R. at 150 (quoting *Silverman*, 379 B.R. at 32).

The Amended Complaint meets these requirements. It alleges that Defendant received transfers, identified by date and amount, from Harley, and that Harley invested all of its funds with BLMIS. *See* Am. Compl. ¶¶ 2, 79, 82–89; *id.*, Exs. B & C. Nothing more is required. *See, e.g.*, *Multi-Strategy Fund*, 641 B.R. at 95 (holding the Trustee's exhibits provide the necessary "who, when, and how much" of each transfer).

### B.    Defendant's Tracing Arguments Fail at the Pleading Stage

Defendant argues that the Trustee must tie each subsequent transfer that Defendant received to a specific initial transfer from BLMIS. *See* Mot. at 9, 10. But that is not the Trustee's pleading burden. *See Merkin*, 515 B.R. at 150 (refusing to dismiss subsequent transfer claims even where the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS").

Defendant's other fact-based tracing arguments fare no better on a motion to dismiss. Defendant claims that the mention of Harley "investors" in the Amended Complaint "cast[s] doubt" on the "inference that every dollar that flowed to [Defendant]" was stolen BLMIS customer property. Mot. at 11. However, the mere reference to other investors in Harley does not in any way undermine the Trustee's allegation that the subsequent transfers from Harley to *this* Defendant contained BLMIS customer property. *See* Am. Compl. ¶¶ 2, 79, 82–89; *id.*, Exs. B & C.

Even if the premise underlying Defendant's argument were correct, and Harley commingled its investors' money with stolen BLMIS customer property (which is not alleged in the Amended Complaint), the commingling of funds from different sources does not defeat the Trustee's ability to trace transfers of customer property. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11 CIV. 1590 (LTS) (HBP) & 11 CIV. 8726 (LTS) (HBP), 2013 WL 6123104, at *12

14

(S.D.N.Y. Nov. 20, 2013) ("It is a basic principle of equity that 'the mere commingling of [other] property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing.'").  Nor must the Trustee plead which portion of the subsequent transfers at issue comprises BLMIS customer property.  *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774, at *14–16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing trustee to proceed to trial where 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).

Defendant's argument that none of the transfers received from Harley contained any BLMIS customer property must be rejected.

## III.    THE TRUSTEE PLAUSIBLY ALLEGES THE AVOIDABILITY OF THE INITIAL TRANSFERS FROM BLMIS

The Amended Complaint sufficiently alleges the avoidability of the initial transfers from BLMIS to Harley.  Defendant disagrees, arguing that the Trustee cannot rely on the Ponzi scheme presumption to meet the requirements of Section 548(a)(1).[2]  Mot. at 14–16.  However, the Trustee has already avoided the initial transfers from BLMIS to Harley.  And in any event, the Trustee may rely on the Ponzi scheme presumption, and the Amended Complaint plausibly alleges numerous badges of fraud that evidence BLMIS's fraudulent intent.

---

[2] Defendant also argues that the Trustee failed to meet the requirements of Section 548(a)(1)(B), claiming: "The Amended Complaint includes no allegations that [Defendant] or Harley gave less than 'reasonably equivalent value' to BLMIS in exchange for any of the alleged transfers."  Mot. at 17.  The Court need not address this argument, as the statute only requires the Trustee to show that the debtor *either* "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud . . . *or* . . . received less than a reasonably equivalent value in exchange for such transfer or obligation . . ."  11 U.S.C. § 548(a)(1) (emphasis added).  Because the Trustee has sufficiently alleged BLMIS's actual intent to hinder, delay, or defraud creditors (and has obtained a summary judgment avoiding the initial transfers to Harley under Section 548(a)(1)(A)), he need not also allege that Defendant or Harley gave less than the reasonably equivalent value to BLMIS.  *See id.*  The Trustee does not concede, however, that Defendant or Harley gave reasonably equivalent value to BLMIS.

As if this section of its Motion were cut and pasted from a motion in a different case, Defendant wholly ignores that the Trustee has already avoided the initial transfers from BLMIS to Harley. In November 2010, this Court granted summary judgment to the Trustee in his action to avoid the transfers from BLMIS to Harley. *See* Order, *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. Pro. No. 09-01187 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 15, at 10–11. This summary judgment order avoided the initial transfers made by BLMIS within two years of the filing date in the amount of $1,066,800,000. *Id.* ("Summary Judgment is entered against Harley . . . on Count Three of the Complaint, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code: (1) avoiding the Two Year Transfers in the amount of $1,066,800,000 . . . .").

While Defendant may litigate its affirmative defenses to recovery under Section 550(b), Defendant cannot credibly argue that the Trustee has failed to avoid the transfers he seeks to recover in this action. *See Yip v. Google, LLC (In re Student Aid Ctr., Inc.)*, 608 B.R. 583, 588 (Bankr. S.D. Fla. 2019) ("Thus, the Court finds that the [summary judgment against the initial transferee] satisfies the condition precedent that the [initial transfers] were avoided; the Trustee does not have to prove the avoidability of those Transfers as part of her case in chief."); *Tibble v. Farmers Grain Express, Inc. (In re Mich. Biodiesel, LLC)*, 510 B.R. 792, 794 (Bankr. W.D. Mich. 2014) ("[A] trustee who pursues § 550 recovery in a later proceeding need only prove that the court avoided the initial transfer in the first action; he need not establish anew the *avoidability* of the initial transfers as part of his *prima facie* case under § 550(a)(2)."). At a minimum, the summary judgment order establishes the avoidability of the transfers that the Trustee seeks to recover from Defendant at this stage of the proceeding.

Even without the summary judgment order avoiding the initial transfers to Harley, the Trustee has pleaded the avoidability of the initial transfers. Under Section 548(a)(1)(A), the

Trustee may avoid any transfer made by the debtor "with actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A). The Ponzi scheme presumption recognizes that "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors." *Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff)*, 650 B.R. 24, 38 (Bankr. S.D.N.Y. 2023) (citation omitted). "[T]he Ponzi scheme presumption remains the law of this Circuit." *Picard v. First Gulf Bank (In re Madoff)*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *10 (Bankr. S.D.N.Y. July 18, 2022).

As this Court has repeatedly held, the Trustee may rely on the Ponzi scheme presumption to show BLMIS's actual intent to hinder, delay, or defraud creditors. *See, e.g.*, *ABN AMRO*, 650 B.R. at 39 ("That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue.") (citations omitted). Here, as in other adversary proceedings, the allegations in the Amended Complaint regarding the BLMIS Ponzi scheme, *see* Am. Compl. ¶¶ 19–50, suffice to plead the avoidability of the relevant transfers. *See, e.g.*, *ABN AMRO*, 650 B.R. at 38 (noting application of the Ponzi scheme presumption "makes perfect sense" to show the avoidability of transfers).

Independent of the Ponzi scheme presumption, and contrary to Defendant's claim, Mot. at 16, the Amended Complaint also alleges BLMIS's fraudulent intent through multiple "badges of fraud" sufficient to satisfy Rule 9(b). *See* Am. Compl. ¶¶ 19–50. The Amended Complaint states that: (1) BLMIS commingled customer funds and used those funds to pay other customers instead of purchasing securities, *id.* ¶ 30; (2) BLMIS filed false audit reports, *id.* ¶ 28; (3) BLMIS filed false reports with the SEC, *id.* ¶¶ 23–24; (4) BLMIS was insolvent at all relevant times, *id.* ¶ 50; and (5) BLMIS's investment advisory business had no legitimate business operations, and

17

the proprietary trading business incurred significant losses, requiring fraudulent infusions of cash

from the investment advisory business, *id.* ¶¶ 25–26.  This Court and the District Court have found

that such allegations sufficiently demonstrate BLMIS's actual fraudulent intent under Section

548(a)(1)(A).  *See ABN AMRO*, 650 B.R. at 39–40; *Picard v. JABA Assocs. LP (In re Madoff)*, 528

F. Supp. 3d 219, 236–38 (S.D.N.Y. 2021).

The Trustee has established the avoidability—indeed, the avoidance—of the transfers from

BLMIS to Harley that were subsequently transferred to Defendant.

## IV.    DEFENDANT'S GOOD FAITH AND FOR VALUE DEFENSES ARE INAPPLICABLE AT THE PLEADING STAGE

Defendant argues that dismissal is warranted because the Amended Complaint establishes

Defendant's Section 550(b) affirmative defenses by pleading that Defendant received transfers

"for value" and in "good faith."  Mot. at 11–13.  This argument is no different from those

previously rejected by this Court, *see, e.g.*, *First Gulf Bank*, 2022 WL 3354955, at *10 ("This

affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it

cannot be established in a complaint."), and by the District Court.  *In re BLMIS*, No. 20-CV-02586

(CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") ("The Trustee rightfully

points out that such a fact-based determination can only be made based on the entirety of the factual

record after discovery (which has not occurred here), not from isolated documents cherry-picked

by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.").

Defendant claims that its Harley subscriptions and credit facilities satisfy the "for value"

prong of Section 550(b).[3]  Mot. at 11–12.  However, this Court has already held that value cannot

---

[3] The fact that Defendant cannot identify from the face of the Amended Complaint whether the relevant transactions were credit facilities or subscriptions and redemptions belies the argument that the Amended Complaint establishes this affirmative defense.  *See* Mot. at 11 (positing that "[i]f the Trustee intends to allege" either a credit facility or "unspecified subscriptions and redemptions," then the value defense is established).

be determined on a motion to dismiss. *See, e.g.*, *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) (holding whether defendants "'gave value' in the form of surrendering shares . . . cannot be made as a matter of law or fact at this stage"). The same result is warranted here.

Defendant next claims that the "good faith" prong of Section 550(b) is satisfied because "[t]he Amended Complaint fails to make any allegation that [Defendant] had inquiry notice of Madoff's misconduct." Mot. at 12. But that is not the Trustee's burden. *See Citibank*, 12 F.4th at 178. Defendant also argues that, given Madoff's secrecy and the feeder funds' protection of him, "the only reasonable conclusion" is that Defendant received its subsequent transfers in good faith. Mot. at 12–13. But again, Defendant cannot rely on cherry-picked allegations and factual inferences to establish its good faith on a motion to dismiss. *ABN Ireland*, 2022 WL 1304589, at *3.

Defendant's argument that its good faith must be inferred from the SEC's failure to detect Madoff's fraud likewise falls flat. Mot. at 12. Even if it were proper to speculate about facts extrinsic to the Amended Complaint, the SEC's shortcomings do not establish *Defendant's* state of mind—especially when Defendant and its affiliates likely had more information about Madoff and BLMIS than did the SEC.[4]  *See* Am. Compl. ¶¶ 53, 63–74 (describing Defendant's longstanding involvement with seven BLMIS feeder funds and the acts of the Fund Derivatives Group of which Defendant was part). Moreover, this Court has had no difficulty finding certain defendants knew about Madoff's fraud despite the SEC's inability to discover the same. *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016).

---

[4] *See also* U.S. Sec. and Exch. Comm'n Office of Investigations, *Investigation of Failure of SEC To Uncover Bernard Madoff's Ponzi Scheme* – Public Version (Aug. 31, 2009), at 456–57, *available at* https://www.sec.gov/files/oig-5090.pdf (concluding "there were systemic breakdowns in the manner in which the SEC conducted its examinations and investigations" of Madoff and BLMIS).

Defendant's only new argument is that its good faith is established because the Court in *BNP Paribas*, when holding that the Trustee had failed to plead Defendant's willful blindness, interpreted the proposed amended complaint in that action as alleging that Defendant engaged in some due diligence. Mot. at 13 (citing *BNP Paribas*, 594 B.R. at 205). That holding is based on an incorrect legal standard, has been overruled, and, accordingly, cannot support Defendant's argument. *See ABN Ireland*, 2022 WL 1304589, at *4 (vacating prior decision based on willful blindness standard because "*Citibank* makes it clear that the Trustee was being held to the wrong standard all along"). Defendant's spin on these prior allegations—from a different adversary proceeding—is also disputed. But it does not matter because each of Defendant's good faith arguments can be explored in discovery and decided on summary judgment or at trial.

In summary, Defendant will need to plead and prove its affirmative defenses of value and good faith. On this motion to dismiss, Defendant has done neither.

## V.    THE TRUSTEE'S CLAIMS ARE NOT BARRED BY SECTION 546(e)

Contrary to Defendant's arguments, *see* Mot. at 17–22, Section 546(e) does not bar the Trustee's claims to avoid the initial transfers from BLMIS to Harley or to recover the subsequent transfers alleged in the Amended Complaint. The reason is simple: All of the subsequent transfers that Defendant received were funded by initial transfers that are avoidable—and avoided—under Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) (barring avoidance of initial transfers that meet certain conditions, "except under section 548(a)(1)(A) of this title"); *see also* 11 U.S.C. § 548(a)(1)(A) (permitting avoidance of transfers made with fraudulent intent within two years of the filing date).

The Amended Complaint alleges that BLMIS transferred over $1.066 billion to Harley in the two years before the filing date. Am. Compl., Ex. B. The amount of those initial transfers exceeds the total subsequent transfers received by Defendant from Harley, which were also

received within two years of the filing date.  *Id.*, Ex. C.  This Court expressly avoided those initial

transfers under Section 548(a)(1)(A).  *See* Order, *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. Pro.

No. 09-01187 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 15, at 10–11 (avoiding all two-

year transfers Harley received from BLMIS under Section 548(a)(1)(A)).  By its plain terms,

Section 546(e) does not apply here.[5]

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendant's Motion in its entirety.

Dated: September 22, 2023
       New York, New York

/s/ David J. Sheehan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Matthew B. Friedman
Email: mfriedman@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Chapter 7
Estate of Bernard L. Madoff*

---

[5] Regardless, the Trustee does not concede that that any transfer was made "in connection with a securities contract," was a "settlement payment," or was made by or to a covered entity under Section 546(e).