**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01576 (CGM) |
| Plaintiff, | |
| v. | |
| BGL BNP PARIBAS S.A., BNP PARIBAS ARBITRAGE SNC, BNP PARIBAS BANK & TRUST CAYMAN LIMITED, BNP PARIBAS S.A., and BNP PARIBAS (SUISSE) S.A., | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

    I.    THE BLMIS PONZI SCHEME AND DEFENDANTS' INVESTMENTS IN
    THE BLMIS FEEDER FUNDS ....................................................................3

    II.    THE PROCEDURAL POSTURE OF THIS ADVERSARY PROCEEDING.......5

ARGUMENT ........................................................................................................................7

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ........7

        A.    The PJ Defendants Purposefully Availed Themselves of the Laws and
        Privileges of Conducting Business in New York ........................................8

            1.    The PJ Defendants' Intentional Investments with BLMIS
            Through the Fairfield Funds Establish Personal Jurisdiction ..........9

            2.    The PJ Defendants' Contacts with New York in Connection
            with Their Investments Support Personal Jurisdiction .................10

                a.    The PJ Defendants' Purposeful Use of New York Bank
                Accounts Supports Personal Jurisdiction...........................10

                b.    The PJ Defendants' Subscription Agreements with the
                Fairfield Funds Support Personal Jurisdiction...................12

                c.    The PJ Defendants' Additional Activities in New York
                Related to Their BLMIS Investments Support Personal
                Jurisdiction.......................................................................12

            3.    Defendants' Other Arguments Against Jurisdiction Fail...............13

        B.    The PJ Defendants' Contacts with New York Are Sufficiently Related
        to the Trustee's Claims .........................................................................13

        C.    Exercising Personal Jurisdiction Over the PJ Defendants Is
        Reasonable ..........................................................................................14

        D.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery......15

    II.    DEFENDANTS RECEIVED TRANSFERS OF BLMIS CUSTOMER
    PROPERTY ...........................................................................................16

        A.    The Trustee Plausibly Alleges that Defendants Received Subsequent
        Transfers of BLMIS Customer Property Under Section 550....................16

## TABLE OF CONTENTS

          **Page**

B.      Defendants Misstate the Trustee's Pleading Burden ................................ 17

C.      Defendants' Tracing Arguments Fail at the Pleading Stage ..................... 18

III.    THE TRUSTEE PLAUSIBLY ALLEGES THE AVOIDABILITY OF THE INITIAL TRANSFERS FROM BLMIS .................................................... 19

IV.   DEFENDANTS' GOOD FAITH AND FOR VALUE DEFENSES ARE INAPPLICABLE AT THE PLEADING STAGE ................................................ 21

V.    THE TRUSTEE'S CLAIMS ARE NOT BARRED BY SECTION 546(e) .......... 23

VI.   THE NEW FAIRFIELD CLAIMS ARE TIMELY ............................................. 25

    A.      The New Fairfield Claims Relate Back to the Original Complaint ........... 25

          1.     The New Fairfield Transfers Were Made as Part of the Same Course of Conduct as the Transfers Alleged in the Original Complaint ...................................................................................... 27

          2.     The Original Complaint Put Defendants on Notice that the Trustee Would Sue for Additional Subsequent Transfers ............. 29

    B.      The New Fairfield Claims Are Not Foreclosed by the Law of the Case Doctrine ......................................................................................... 30

          1.     Law of the Case Does Not Apply to the New Fairfield Claims ..... 31

          2.     The Court Should Not Adopt the Reasoning on Relation Back from *BNP Paribas* to Dismiss the New Fairfield Claims ............. 33

               a.     The Relation Back Analysis in *BNP Paribas* Misstates the Law in Dismissing the Prior Tremont Claims ............. 33

               b.     Law of the Case Should Not Be Applied Because the Law Relied Upon in *BNP Paribas* Has Changed ............. 35

               c.     The Trustee Need Not Plead that Defendants Were Bad Actors for the New Fairfield Claims to Relate Back ....................................................................................... 36

               d.     The Relation Back Analysis in *BNP Paribas* Departs from Precedent ................................................................... 37

               e.     The Relation Back Analysis in *BNP Paribas* Ignores that the Original Complaint Put Defendants On Notice .... 38

## TABLE OF CONTENTS

**Page**

f.      There Is No Compelling Reason to Apply Law of the
       Case to the New Fairfield Claims ......................................39

CONCLUSION.............................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009)......................................................................36

*Ali v. Mukasey*,
    529 F.3d 478 (2d Cir. 2008)................................................................................35

*Arizona v. California*,
    460 U.S. 605 (1983)..........................................................................................40

*In re AVI, Inc.*,
    389 B.R. 721 (9th Cir. BAP 2008)......................................................................25

*Benfield v. Mocatta Metals Corp.*,
    26 F.3d 19 (2d Cir. 1994)..............................................................................38, 39

*In re BLMIS*,
    No. 20-cv-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) .............................21, 22

*In re BLMIS*,
    No. 22 Civ. 6561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023)...............................9, 13

*Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*,
    No. 18-cv-11099 (ALC), 2020 WL 7128968 (S.D.N.Y. Dec. 4, 2020) ..................................15

*Brody v. Village of Port Chester*,
    345 F.3d 103 (2d Cir. 2003)................................................................................31

*Buchwald Cap. Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M.
Fabrikant & Sons, Inc.)*,
    480 B.R. 480 (S.D.N.Y. 2012).................................................................29, 33, 34, 35

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................................8

*In re Chaus Sec. Litig.*,
    801 F. Supp. 1257 (S.D.N.Y.1992).......................................................................29

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)...............................................................................8, 14

*City of Philadelphia v. Bank of Am. Corp.*,
    609 F. Supp. 3d 269 (S.D.N.Y. 2022)..................................................................32, 33

iv

*Matter of Clay,*
No. M-11-188, 1985 WL 1977 (S.D.N.Y. June 27, 1985) .......................................40

*Colvin v. Keen,*
900 F.3d 63 (2d Cir. 2018)...................................................................................31

*Contemp. Mission, Inc. v. New York Times Co.,*
665 F. Supp. 248 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988) ................38

*Dandong v. Pinnacle Performance Ltd.,*
966 F. Supp. 2d 374 (S.D.N.Y. 2013)...................................................................11

*In re Dooley Realty, Inc.,*
No. 09-36777 (CGM), 2010 WL 2076959 (Bankr. S.D.N.Y. May 21, 2010)........31

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
722 F.3d 81 (2d Cir. 2013).....................................................................................7

*Eldesouky v. Aziz,*
No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ................11

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.,*
Nos. 21-cv-10316 (LAP) & 21-cv-10334 (LAP), 2022 WL 3910679
(S.D.N.Y. Aug. 31, 2022) ....................................................................................15

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.,*
141 S. Ct. 1017 (2021)..........................................................................................14

*Goldberg v. Halbert (In re Woodbridge Grp. of Cos., LLC),*
No. 19-51027 (JKS), 2021 WL 5774217 (Bankr. D. Del. Dec. 6, 2021) ..............27

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011)................................................................................................8

*Hill v. Oria (In re Juliet Homes, LP),*
No. 07-36424, 2011 WL 6817928 (Bankr. S.D. Tex. Dec. 28, 2011) ..............26, 27

*HSH Nordbank AG N.Y. Branch v. Street,*
No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................11

*Int'l Shoe Co. v. Wash.,*
326 U.S. 310 (1945)................................................................................................8

*Koch Indus., Inc. v. Picard (In re BLMIS),*
No. 23-CV-0294 (VEC), 2023 WL 3317926 (S.D.N.Y. May 9, 2023)............24, 25

*Kregler v. City of New York,*
821 F. Supp. 2d 651 (S.D.N.Y. 2011), *aff'd*, 604 F. Appx. 44 (2d Cir. 2015) .......33

*Licci v. Lebanese Canadian Bank,*
    20 N.Y.3d 327 (2012) ..................................................................................................11

*Mackensworth v. S.S. Am. Merchant,*
    28 F.3d 246 (2d Cir. 1994) ..........................................................................................25

*Mayle v. Felix,*
    545 U.S. 644 (2005) (Ginsburg, J.), *reargument denied*, 545 U.S. 1158 (2005) ....................37

*McClelland v. Grubb & Ellis Consulting Servs. Co. (In re McClelland),*
    377 B.R. 446 (Bankr. S.D.N.Y. 2007) (Morris, J.) ..................................................31

*Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler),*
    66 B.R. 977 (Bankr. S.D.N.Y. 1986) ....................................................26, 29, 33, 34

*Off. Comm. of Unsecured Creditors v. Pirelli Commc'n Sys. USA LLC (In re
360Networks (USA) Inc.),*
    367 B.R. 428 (Bankr. S.D.N.Y. 2007) ......................................................................29

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016) ...............................................................................10, 14

*Pescatore v. Pan Am. Airways, Inc.,*
    97 F.3d 1 (2d Cir. 1996) ..........................................................................................35, 36

*In re Picard,*
    917 F.3d 85 (2d Cir. 2019) ...........................................................................................5

*Picard v. ABN AMRO Bank (Ir.), Ltd. (In re Madoff),*
    650 B.R. 24 (Bankr. S.D.N.Y. 2023) ...................................................................19, 20

*Picard v. Avellino (In re BLMIS),*
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .........................................................................22

*Picard v. Banca Carige S.p.A. (In re Madoff),*
    Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June
    30, 2022) ........................................................................................................................9

*Picard v. Bank Julius Baer & Co. (In re Madoff),*
    Adv. Pro. No. 11-02922 (CGM), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec.
    15, 2022) ..................................................................................................................26, 34

*Picard v. Bank Vontobel AG (In re Madoff),*
    Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560 (Bankr. S.D.N.Y. Nov.
    18, 2022) ......................................................................................................................25

*Picard v. BNP Paribas S.A. (In re Madoff),*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)..........................................................................9, 10, 12

*Picard v. Cathay Life Ins. Co. Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov.
    1, 2022) ................................................................................................................................ f17

*Picard v. Chais (In re BLMIS)*,
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) ..................................................................................30

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514
    (Bankr. S.D.N.Y. Mar. 14, 2012)...................................................................................16, 18

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ....................................................................................... *passim*

*Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015)....................................................................................8

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021)............................................................................7, 8, 14

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ................................................................................................................................21, 26, 29

*Picard v. First Gulf Bank (In re Madoff)*,
    Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955 (Bankr. S.D.N.Y. July
    18, 2022) ..............................................................................................................................19, 21

*Picard v. Hebrew Univ. of Jerusalem (In re Madoff)*,
    650 B.R. 5 (Bankr. S.D.N.Y. 2023).......................................................................................20

*Picard v. JABA Assocs. LP (In re Madoff)*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021)...................................................................................20

*Picard v. KBC Invs. Ltd. (In re Madoff)*,
    Adv. Pro. No. 11-02761 (CGM), 2023 WL 3112719 (Bankr. S.D.N.Y. Apr.
    26, 2023) ..............................................................................................................................26, 30

*Picard v. Korea Exch. Bank (In re Madoff)*,
    Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908 (Bankr. S.D.N.Y. Sept.
    21, 2022) ................................................................................................................................16

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011)...................................................................................14

*Picard v. Meritz Fire & Marine Ins. Co. (In re Madoff)*,
  Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug.
  10, 2022) ....................................................................................................................................11

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...........................................................................16, 17

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
  641 B.R. 78 (Bankr. S.D.N.Y. 2022) .................................................................... *passim*

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
  Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-
  cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) .................23, 25

*Picard v. Nomura Int'l PLC (In re Madoff)*,
  Adv. Pro. No. 11-02759 (CGM), 2023 WL 3113188 (Bankr. S.D.N.Y. Apr.
  26, 2023) ......................................................................................................................................7

*Picard v. Parson Fin. Pan. S.A. (In re Madoff)*,
  Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3,
  2022) ......................................................................................................................................12, 13

*Picard v. Peter Madoff (In re BLMIS)*,
  468 B.R. 620 (Bankr. S.D.N.Y. 2012) .................................................................36, 37, 38, 39

*Picard v. Royal Bank of Can. (In re Madoff)*,
  650 B.R. 524 (Bankr. S.D.N.Y. 2023) .................................................................12, 29, 30, 34

*Picard v. Six Sis AG (In re Madoff)*,
  No. 12-01195 (CGM), 2023 WL 2998470 (Bankr. S.D.N.Y. Apr. 18, 2023) ..................34, 36

*Picard v. Standard Chartered Fin. Servs. (Lux.) S.A. (In re Madoff)*,
  Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787 (Bankr. S.D.N.Y. Jan. 6,
  2023) ..............................................................................................................................30, 34, 39

*Pierre v. Aurora Loan Servs., LLC (In re Aurora Com. Corp.)*,
  No. 21-2321-BK, 2023 WL 1813328 (2d Cir. Feb. 8, 2023) ..................................................31

*Roxx Allison Ltd. v. Jewelers Inc.*,
  385 F. Supp. 3d 377 (S.D.N.Y. 2019) ...................................................................................13

*Sapia v. Home Box Off., Inc.*,
  No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ..................................17

*Schiavone v. Fortune*,
  477 U.S. 21 (1986) ..................................................................................................................37

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..............................23, 25

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
501 B.R. 26 (S.D.N.Y. 2013)..........................................................................................20, 25

*Siegel v. Converters Transp., Inc.*,
714 F.2d 213 (2d Cir. 1983)..................................................................................................26

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007)............................................................................... *passim*

*Slayton v. Am. Express Co.*,
460 F.3d 215 (2d Cir. 2006)..................................................................................26, 28, 37

*Slotkin v. Citizens Cas. Co. of New York*,
614 F.2d 301 (2d Cir. 1979)..................................................................................................31

*Soley v. Wasserman*,
No. 08 CIV. 9262 (KMW) (FM), 2013 WL 6244428 (S.D.N.Y. Dec. 3, 2013) ....................39

*Spetner v. Palestine Inv. Bank*,
70 F.4th 632 (2d Cir. 2023) ..................................................................................................10

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)..................................................................................................17

*Stevelman v. Alias Rsrch. Inc.*,
174 F.3d 79 (2d Cir. 1999)....................................................................................................37

*United States v. Carr*,
557 F.3d 93 (2d Cir. 2009)....................................................................................................31

*United States v. Liberty Mut. Ins. Co.*,
No. 15-CV-4961 (LTS) (JLC), 2020 WL 2530180 (S.D.N.Y. May 19, 2020) ......................31

*Universitas Educ., LLC v. Nova Grp., Inc.*,
Nos. 11 CIV. 1590 (LTS) (HBP) & 11 CIV. 8726 (LTS) (HBP), 2013 WL
6123104 (S.D.N.Y. Nov. 20, 2013) .......................................................................................18

*Walden v. Fiore*,
571 U.S. 277 (2014)...............................................................................................................13

*Walker v. City of New York*,
No. 11-CV-314 (CBA), 2015 WL 4568305 (E.D.N.Y. July 28, 2015)...................................40

*Weslowski v. Zugibe,*
    96 F. Supp. 3d 308 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015)...................................32

*Zdanok v. Glidden Co.,*
    327 F.2d 944 (2d Cir. 1964)................................................................................................31

**Statutes**

11 U.S.C. § 546(e) .................................................................................................... *passim*

11 U.S.C. § 548(a) ..........................................................................................................2

11 U.S.C. § 548(a)(1) ....................................................................................................19

11 U.S.C. § 548(a)(1)(A) .............................................................................19, 20, 23, 24

11 U.S.C. § 548(a)(1)(B) ...............................................................................................19

11 U.S.C. § 550 .......................................................................................................16, 21

11 U.S.C. § 550(a) ........................................................................................................23

11 U.S.C. § 550(b) ....................................................................................2, 21, 35, 36

15 U.S.C. §§ 78aaa–*lll* ..................................................................................................1

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................................20

Fed. R. Civ. P. 12(b)(6) ..................................................................................................5

Fed. R. Civ. P. 15 .................................................................................................. *passim*

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................25, 26, 29, 33

N.Y. C.P.L.R. § 302(a)(1).............................................................................................10

**Other Authorities**

18B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice
    & Procedure* § 4478 (2023) .....................................................................................32

U.S. Sec. and Exch. Comm'n Office of Investigations, Report No. OIG-509,
    *Investigation of Failure of SEC To Uncover Bernard Madoff's Ponzi Scheme*
    – Public Version (Aug. 31, 2009), *available at* https://www.sec.gov/files/oig-
    5090.pdf .................................................................................................................22

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion (the "Motion," ECF No. 198-1[1]) filed by defendants BNP Paribas S.A. ("BNP Paribas"), as successor in interest to BNP Paribas Securities Services S.C.A. ("BNP Paribas Securities Services") and BNP Paribas Securities Services – Succursale de Luxembourg ("BNP Paribas Securities Services Luxembourg"), BNP Paribas Arbitrage SNC ("BNP Paribas Arbitrage"), BNP Paribas Bank & Trust Cayman Limited ("BNP Paribas Cayman"), BGL BNP Paribas S.A. ("BGL BNP Paribas"), individually and as successor in interest to BNP Paribas Luxembourg S.A., and BNP Paribas Suisse S.A. ("BNP Paribas Suisse"), individually and as successor in interest to BNP Paribas Private Bank (Switzerland) S.A. and United European Bank (collectively, "Defendants") to dismiss the Trustee's Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

In this SIPA liquidation proceeding, the Trustee's SAC seeks to recover approximately $111 million in fraudulent transfers of stolen BLMIS customer property that Defendants received from the BLMIS feeder funds Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma," and together with Fairfield Sentry, the "Fairfield Funds"), Rye Select Broad Market XL Fund LP ("XL LP"), Rye Select Broad Market Portfolio Limited ("Portfolio Limited"), and Rye Select Broad Market XL Portfolio Ltd. ("XL Portfolio," and together with XL LP and Portfolio Limited, the "Tremont Funds"). Defendants claim that the SAC is meritless, but this Court has already and repeatedly rejected each argument raised by Defendants in their Motion.

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (CGM) (Bankr. S.D.N.Y.).

First, the SAC establishes that this Court has personal jurisdiction over BGL BNP Paribas, BNP Paribas Suisse, and BNP Paribas, as successor in interest to BNP Paribas Securities Services Luxembourg (collectively, the "PJ Defendants").[2] The PJ Defendants purposefully invested in the Fairfield Funds knowing that these funds fed substantially all of their money to BLMIS. They knew that BLMIS was the investment manager, broker-dealer, and custodian of the Fairfield Funds' (and Defendants') investments. They also received the transfers at issue in a BNP Paribas bank account in New York. These facts, plus the additional contacts discussed herein, are the same type of facts that this Court has repeatedly found sufficient to establish specific jurisdiction.

Second, the SAC pleads that Defendants received stolen customer property under Section 550(b) of the Bankruptcy Code by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield and Tremont Funds and subsequently to Defendants. The SAC also sets forth the necessary vital statistics (*i.e.*, the "who, when, and how much") for each transfer that Defendants received. Nothing more is required at this stage of the litigation.

Third, the SAC pleads that the initial transfers from BLMIS to the Fairfield and Tremont Funds are avoidable. Defendants' argument that the Ponzi scheme presumption does not demonstrate BLMIS's fraudulent intent under Section 548(a) conflicts with precedent and is irrelevant where the SAC further alleges fraudulent intent through multiple "badges of fraud."

Fourth, the SAC neither pleads nor proves Defendants' affirmative defenses of good faith and value under Section 550(b). Despite clear authority from the Second Circuit, the District Court, and this Court, Defendants continue to misconstrue the Section 550(b) defenses.

---

[2] Defendants do not dispute that this Court has personal jurisdiction over BNP Paribas Arbitrage, BNP Paribas Cayman, and BNP Paribas as successor in interest to BNP Paribas Securities Services for the Trustee's claims to recover transfers from the Fairfield Funds. Nor do Defendants dispute that this Court has jurisdiction over any Defendant for the Trustee's claims to recover transfers from the Tremont Funds.

Fifth, Section 546(e) does not bar claims to recover subsequent transfers from Defendants. Defendants' argument that Section 546(e) requires dismissal of all two and six-year transfers alleged in the SAC either wholly ignores or misinterprets precedent from ten years of litigation in this Court and the District Court concerning the scope of Section 546(e)'s protections.

Sixth, and finally, the Trustee's claims to recover additional subsequent transfers from the Fairfield Funds (the "New Fairfield Claims") are timely under Rule 15 of the Federal Rules of Civil Procedure because the claims relate back to the Trustee's initial complaint (the "Original Complaint"). The New Fairfield Claims arose out of the same course of conduct alleged in the Original Complaint, and the Original Complaint provided Defendants with sufficient notice that the Trustee would be seeking to recover all transfers that Defendants received from BLMIS through its feeder funds. Defendants argue that the law of the case doctrine requires dismissal, but that doctrine is discretionary, and there are cogent and compelling reasons not to apply the doctrine to the New Fairfield Claims.

For these reasons, and as discussed more fully below, the Trustee respectfully submits that Defendants' Motion is meritless and should be denied.

## STATEMENT OF FACTS

### I.  THE BLMIS PONZI SCHEME AND DEFENDANTS' INVESTMENTS IN THE BLMIS FEEDER FUNDS

Madoff operated BLMIS's investment advisory business as a Ponzi scheme until BLMIS's collapse and Madoff's arrest in 2008. SAC ¶¶ 16, 29, 52–53. Madoff's Ponzi scheme was fueled by numerous "feeder funds" created for the express purpose of funneling investor money funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021).

Defendants, led by their parent company BNP Paribas, comprise a global and sophisticated financial enterprise with a longstanding relationship with Madoff, BLMIS, and BLMIS's feeder

funds.  SAC ¶ 2.  Defendants and their affiliates invested in and received approximately $1.4 billion in subsequent transfers from the various feeder funds, including the Fairfield Funds, the Tremont Funds, Ascot Partners, L.P., Equity Trading Portfolio Limited, Groupement Financier Ltd., Harley International (Cayman) Limited, Kingate Euro Fund Ltd. ("Kingate Euro"), and Kingate Global Fund Ltd. ("Kingate Global," and together with Kingate Euro, the "Kingate Funds").  *Id.* ¶¶ 5, 92.  This action seeks to recover the subsequent transfers that Defendants received from the Fairfield and Tremont Funds.  *Id.* ¶ 6.

Fairfield Sentry was the largest BLMIS feeder fund, which invested substantially all of its funds directly with BLMIS.  *Id.* ¶ 55.  Fairfield Sigma was a currency fund that accepted subscriptions in Euros, converted the money to U.S. Dollars, and invested all of its funds in Fairfield Sentry.  *Id.* ¶ 56.  All funds that Fairfield Sigma received from BLMIS were paid through Fairfield Sentry.  *Id.* ¶ 57.  The Fairfield Funds were created, operated, and controlled by the Fairfield Greenwich Group ("FGG"), a New York-based *de facto* partnership.  *Id.* ¶ 59.

Portfolio Limited was a BLMIS feeder fund that invested substantially all of its funds directly with BLMIS.  *Id.* ¶ 71.  XL Portfolio and XL LP were BLMIS feeder funds that invested all of their funds indirectly with BLMIS through other Tremont Funds.  *Id.* ¶¶ 72–73.  The Tremont Funds were managed and operated by Tremont Group Holdings, Inc. ("Tremont"), a Delaware corporation, and its management arm, Tremont Partners, Inc., a Connecticut corporation, from their headquarters in Rye, New York.  *Id.* ¶¶ 74, 76.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and another adversary proceeding against the Tremont Funds to avoid and recover approximately $5 billion in fraudulent transfers of customer property that the funds collectively received from BLMIS.  *Id.* ¶¶ 213, 243.  The respective funds settled in 2011 and agreed to consent

judgments, but failed to repay all of the stolen customer property that they had received from BLMIS. *Id.* ¶¶ 215, 244. The Trustee then commenced numerous subsequent transferee actions—including this action against Defendants—to recover the missing customer property.

## II.    THE PROCEDURAL POSTURE OF THIS ADVERSARY PROCEEDING

In May 2012, the Trustee filed the Original Complaint against Defendants to recover approximately $119 million in transfers received from Fairfield Sentry, the Tremont Funds, and the Kingate Funds. Compl., ECF No. 1, ¶ 2. The transfers alleged in the Original Complaint were based on records available to the Trustee at the time, and the Original Complaint pleaded no less than 19 times that the Trustee's investigation was ongoing and that the Trustee reserved the right to supplement the transfers alleged in the Original Complaint and "seek recovery of such additional transfers." *Id.* ¶¶ 53, 55, 64, 66, 68, 70, 72, 74, 82, 84, 86, 88, 97, 99, 106, 108, 110, 112, 114.

In August 2017, while an appeal was pending on the Trustee's claims to recover the transfers that Defendants received from Fairfield Sentry and the Kingate Funds, *see In re Picard*, 917 F.3d 85 (2d Cir. 2019) (reversing dismissal based on presumption against extraterritoriality and international comity), the Trustee filed a proposed Amended Complaint (the "FAC") against Defendants BNP Paribas, BNP Paribas Arbitrage, BNP Paribas Cayman, and BNP Paribas Securities Services (the "FAC Defendants"). ECF No. 100. The FAC sought to recover additional transfers that the FAC Defendants received from Portfolio Limited, one of the Tremont Funds at issue in the Original Complaint, and Insurance Portfolio Fund, which was another BLMIS feeder fund managed and controlled by Tremont. FAC ¶¶ 341–42; *id.*, Ex. A.

The FAC Defendants moved to dismiss, arguing that the Court lacked personal jurisdiction, that the FAC failed to state a claim under Rule 12(b)(6), and that certain claims were time-barred. *See Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 176 (Bankr. S.D.N.Y. 2018). Relevant here, the Court held: (1) the Trustee had made a prima facie showing that the Court had

personal jurisdiction over the FAC Defendants based on their contacts with the forum and investments in the Tremont Funds, *id.* at 190–92; (2) the protections afforded under Section 546(e) did not bar the Trustee's claims, *id.* at 196–97; (3) the Trustee had failed to allege that the FAC Defendants were willfully blind to Madoff's Ponzi scheme, *id.* at 197–206; and (4) the additional transfers from Portfolio Limited and Insurance Portfolio did not relate back under Rule 15, *id.* at 210–12.

Following the *BNP Paribas* decision, the parties agreed to stay the action pending the appeals on extraterritoriality, international comity, and the good faith standard. ECF No. 162. Once those appeals were resolved in favor of the Trustee, Defendants consented to the filing of the SAC. ECF Nos. 189, 190.

The SAC seeks to recover the transfers alleged in the Original Complaint that Defendants received from Fairfield Sentry and the Tremont Funds, plus additional transfers that Defendants received from the Fairfield Funds (again, the "New Fairfield Claims"). The SAC does not seek to recover the transfers from Portfolio Limited or Insurance Portfolio that were previously dismissed as time-barred (the "Prior Tremont Claims"),[3] nor does the SAC seek to recover transfers from the Kingate Funds, which were previously recovered in the Trustee's settlement with the Kingate Funds.

Specifically, the SAC seeks the following amounts from Defendants: $1,698,978 from BGL BNP Paribas; $7,168,557 from BNP Paribas Suisse; $9,929,708 from BNP Paribas as successor in interest to BNP Paribas Securities Services Luxembourg; $26,640,242 from BNP Paribas Arbitrage; $27,332,219 from BNP Paribas Cayman, and $38,749,306 from BNP Paribas

---

[3] The Trustee withdraws his claim to recover the $108,420 transfer from Portfolio Limited to BNP Paribas Cayman, which was previously dismissed as time-barred and inadvertently included in the SAC. *See* SAC, Ex. S.

as successor in interest to BNP Paribas Securities Services.  SAC, Ex. A.  Of these amounts, the

New Fairfield Claims total approximately $88 million.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

This Court has personal jurisdiction over the PJ Defendants.[4]  As described below, the PJ

Defendants have numerous, purposeful contacts with New York, the subsequent transfer claims at

issue arise from those contacts, and this Court's exercise of jurisdiction over the PJ Defendants is

reasonable.  *See, e.g.*, *Picard v. Nomura Int'l PLC (In re Madoff)*, Adv. Pro. No. 11-02759 (CGM),

2023 WL 3113188, at *2–5 (Bankr. S.D.N.Y. Apr. 26, 2023) (finding personal jurisdiction because

the Trustee alleged defendant had purposeful contacts with New York, the claims were "affiliated

with the alleged in-state contact," and the Court's exercise of jurisdiction was reasonable).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make

a prima facie case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,

722 F.3d 81, 86 (2d Cir. 2013).  A prima facie showing of jurisdiction "may be established solely

by allegations," which are to be construed in the light most favorable to the plaintiff, resolving all

doubts in plaintiff's favor.  *Id.* at 85.  Personal jurisdiction over a defendant may be general or

specific.  Relevant here, specific jurisdiction exists when (1) the defendant purposefully directs its

activities at the forum and (2) the underlying cause of action "arises out of or relates to those

activities."  *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566

(Bankr. S.D.N.Y. 2021) (citation omitted).

As to the first prong, the court assesses whether the totality of a defendant's contacts with

the forum show that the defendant purposefully availed itself of the privilege of conducting

---

[4] Defendants define the PJ Defendants as the "New BNPP Defendants."  Mot. at 2.  The PJ Defendants are not "new"; they were named in the Original Complaint.

activities within the forum. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). A defendant can be subjected to personal jurisdiction by its own actions or those of its agents. *See Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) ("Whether [defendant] dealt with BLMIS directly or . . . another acted on her behalf makes no difference because the conduct of her agents is attributed to her for purposes of the jurisdictional analysis."). As to the second prong, the court must find some "affiliation between the forum and the underlying controversy." *Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 641 B.R. 78, 88 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy I*") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The court must also determine whether the exercise of personal jurisdiction is reasonable, such that it will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945). Where the plaintiff has alleged purposeful availment, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

### A.    The PJ Defendants Purposefully Availed Themselves of the Laws and Privileges of Conducting Business in New York

The Trustee has sufficiently alleged that the PJ Defendants purposefully availed themselves of the laws and privileges of conducting business in the forum. The Trustee has alleged that each of the PJ Defendants invested with BLMIS through the Fairfield Funds, executed subscription agreements with the Fairfield Funds, and received payments of BLMIS customer property at a BNP Paribas bank account in New York. SAC ¶¶ 93–96, 128–30, 134–36. In addition, the Trustee has alleged that BNP Paribas Suisse marketed products for investments in BLMIS's feeder funds and that BNP Paribas Securities Services Luxembourg used its New York-based affiliate, BNP

Paribas Equity Derivatives, to receive written communications from Sentry and corresponded by email with New York-based FGG regarding investments in the Fairfield Funds. *Id.* ¶¶ 131–32, 137.

1.    The PJ Defendants' Intentional Investments with BLMIS Through the Fairfield Funds Establish Personal Jurisdiction

The PJ Defendants' knowing and intentional investments with BLMIS through the Fairfield Funds make a prima facie showing of jurisdiction. This Court has found that the Trustee sufficiently establishes personal jurisdiction by alleging that a defendant "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry." *See, e.g.*, *Picard v. Banca Carige S.p.A. (In re Madoff)*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522, at *5 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bureau of Lab. Ins. (In re Madoff)*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*") (finding defendant "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"); *In re BLMIS*, No. 22 Civ. 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard*") ("[T]he Bankruptcy Court correctly held, applying settled precedent, that by intentionally investing in a New York-based investment fund, Defendant 'purposefully availed itself of the privilege of' doing business in New York.").

The SAC alleges the same intentional conduct found sufficient by this Court in *BLI* and by the District Court in *Lombard*. For example, the SAC alleges that the PJ Defendants knew: (1) Fairfield Sentry invested substantially all of its funds with BLMIS, and Fairfield Sigma invested all of its funds in Fairfield Sentry; (2) BLMIS in New York was the custodian of the Fairfield Funds' investments with BLMIS; (3) any returns on investments in the Fairfield Funds would be purportedly earned by BLMIS in New York through its execution of the purported split-

strike conversion strategy; (4) BLMIS's purported strategy involved the purchase and sale of U.S. securities; (5) BLMIS performed all investment management duties for the Fairfield Funds; and (6) BLMIS was essential to the continued operation of Fairfield Sentry.  SAC ¶¶ 55–70, 92, 94–96, 128–30, 134–37.  In short, the PJ Defendants purposefully availed themselves of the forum by "knowing, intending, and contemplating" that the funds they invested with the Fairfield Funds would be invested with BLMIS in New York.  *See BLI*, 480 B.R. at 517.  As such, *BLI* controls and defeats the PJ Defendants' asserted personal jurisdiction defense.

        2.    <u>The PJ Defendants' Contacts with New York in Connection with Their Investments Support Personal Jurisdiction</u>

              *a.*    *The PJ Defendants' Purposeful Use of New York Bank Accounts Supports Personal Jurisdiction*

      This Court has personal jurisdiction over the PJ Defendants because they purposefully used the New York banking system to subscribe into and redeem from the Fairfield Funds.  *See* SAC ¶¶ 96, 100, 102, 108–09, 113–14, 122, 126, 130, 136; *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 & n.18 (S.D.N.Y. 2016) ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].");  *see also Spetner v. Palestine Inv. Bank*, 70 F. 4th 632, 640 (2d Cir. 2023) (finding "sustained use of a correspondent banking account constitutes 'transacting business' within the meaning of  [N.Y. C.P.L.R.] § 302(a)(1)").  The PJ Defendants agreed to, and did, send subscription payments for the Fairfield Funds to a bank account at HSBC Bank USA in New York.  SAC ¶ 65.  They also knowingly designated BNP Paribas bank accounts in New York to receive transfers from the Fairfield Funds—the very same transfers of customer property that the Trustee seeks to recover in this action.  *Id.* ¶¶ 96, 130, 136.

Courts have routinely held, contrary to the PJ Defendants' assertion, *see* Mot. at 19, that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York longarm statute based on defendant's use of New York account to receive payment at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 381–84 (S.D.N.Y. 2013) (same); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (same). Indeed, this Court has found jurisdiction where defendants received subsequent transfers through U.S. bank accounts. *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive[] funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional.").

The fact that the PJ Defendants' accounts at BNP Paribas in New York may have been correspondent accounts does not change the analysis. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012) (holding defendant's purposeful use of a correspondent account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established"). And despite Defendants' claim to the contrary, Mot. at 19, the Trustee has alleged that the PJ Defendants' use of those accounts was purposeful. *Licci*, 20 N.Y.3d at 338 (explaining use of account is "purposeful" if it is neither coincidental nor passive). As such, the PJ Defendants' use of the New York banking system to invest in the Fairfield Funds supports this Court's exercise of jurisdiction over the PJ Defendants.

>    b.    *The PJ Defendants' Subscription Agreements with the Fairfield
>          Funds Support Personal Jurisdiction*

The Trustee's allegations regarding the PJ Defendants' subscription agreements with the Fairfield Funds—in which the PJ Defendants submitted to venue in New York, the jurisdiction of New York courts, service of process from New York courts, and the application of New York law, *see* SAC ¶¶ 63–64, 95–96, 129–31, 135—support jurisdiction by evidencing a "strong nexus with New York." *See BLI*, 480 B.R. at 517 n.15. While Defendants argue that these agreements are irrelevant, Mot. at 20–21, this Court has held otherwise. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 88 n.3 (noting agreement to submit to the jurisdiction of the Court is a relevant factor in its jurisdictional analysis); *Picard v. Royal Bank of Can. (In re Madoff)*, 650 B.R. 524, 537–40 (Bankr. S.D.N.Y. 2023) (finding agreements "show that those defendants were willing to, and knew that they could, face litigation in New York courts"). The PJ Defendants' subscription agreements with the Fairfield Funds therefore support personal jurisdiction.

>    c.    *The PJ Defendants' Additional Activities in New York Related to
>          Their BLMIS Investments Support Personal Jurisdiction*

Jurisdiction is also proper because the SAC alleges additional contacts demonstrating that the PJ Defendants directed their business activities at New York. SAC ¶¶ 93–96, 127–37. For example, in its Sentry subscription agreement, BNP Paribas Securities Services Luxembourg directed Sentry to send all written communications to BNP Paribas Equity Derivatives, a New York affiliate. *Id.* ¶ 131. BNP Paribas Securities Services Luxembourg also corresponded by email with FGG in New York regarding the Fairfield Fund investments. *Id.* ¶ 132. These New York contacts further support this Court's jurisdiction over BNP Paribas Securities Services Luxembourg. *See, e.g.*, *Picard v. Parson Fin. Pan. S.A. (In re Madoff)*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092, at *3–5 (Bankr. S.D.N.Y. Aug. 3, 2022) (exercising personal jurisdiction over defendant who corresponded and had phone calls with FGG regarding Sentry and

Madoff, in addition to defendant's execution of a Sentry subscription agreement and use of New York bank accounts).

As another example, BNP Paribas Suisse marketed investment products that referenced BLMIS's feeder funds, including Fairfield Sentry. SAC ¶ 137. Such activity supports jurisdiction because it demonstrates BNP Paribas Suisse's plan to profit off of New York-based BLMIS through New York-based FGG. *See Parson*, 2022 WL 3094092, at *3–5 (finding defendant's business relationship with New York-based FGG supported jurisdiction); *see also Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 383 (S.D.N.Y. 2019) (finding defendant avails itself of the privileges of transacting business in New York through maintaining a relationship with a New York entity).

### 3.    Defendants' Other Arguments Against Jurisdiction Fail

The PJ Defendants' reliance on inapplicable case law does not affect the jurisdictional analysis. They cite *Walden v. Fiore*, 571 U.S. 277 (2014), to argue that the Trustee is conflating their contacts with those of the Fairfield Funds. Mot. at 18. However, *Walden* is of "no assistance" to those who invested in a feeder fund with the specific goal of investing with BLMIS in New York. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 87. Despite the PJ Defendants' claim to contrary, Mot. at 18, the Trustee has alleged that they took actions in and intentionally toward New York. *See Lombard*, 2023 WL 395225, at *4. Their investments with BLMIS were purposeful, and not "fortuitous," "attenuated," or "incidental" consequences of "foreign" business activity. *See* Mot. at 18–19.

### B.    The PJ Defendants' Contacts with New York Are Sufficiently Related to the Trustee's Claims

The Trustee's claims "arise out of or relate to" the PJ Defendants' contacts with New York. As the Supreme Court has held, the "arise out of or relate to" test does not require a causal

relationship. *See Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021).

The test is satisfied if the defendant's conduct involves "financial transactions that touch the

forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 67–71

(requiring only that the claim not be "completely unmoored" from the transaction). Accordingly,

this Court has repeatedly held that the Trustee's actions to recover subsequent transferees of

BLMIS customer property are directly related to a defendant's investments with BLMIS through

its feeder funds. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 88. Consistent with this Court's prior

decisions, the Trustee's claims to recover subsequent transfers from the Fairfield Funds are directly

related to Defendants' purposeful investment activities with the Fairfield Funds and BLMIS in

New York.

### C.    Exercising Personal Jurisdiction Over the PJ Defendants Is Reasonable

The PJ Defendants fail to present a compelling reason why personal jurisdiction would be

unreasonable. *See Chloé*, 616 F.3d at 165 (finding "where the plaintiff has made a threshold

showing of minimum contacts," the defendant must present "a compelling case that the presence

of some other considerations would render jurisdiction unreasonable"). The PJ Defendants are

"not burdened by this litigation," as they are represented by U.S. counsel, and they voluntarily

submitted to the jurisdiction of New York courts and the application of New York law when they

invested in the Fairfield Funds. *See Multi-Strategy I*, 641 B.R. at 88; *see also Picard v. Maxam*

*Absolute Return Fund, L.P.*, 460 B.R. 106, 119–20 (Bankr. S.D.N.Y. 2011) (finding New York

counsel and conveniences of modern communication and transportation minimize any such

burden). In addition, both the forum and the Trustee have a strong interest in litigating BLMIS

adversary proceedings in this Court. *See Multi-Strategy I*, 641 B.R. at 88–89. The Court's exercise

of personal jurisdiction is therefore reasonable.

**D.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery**

The Trustee understands that there may be discovery challenges given the PJ Defendants' spoliation.  *See* Order Granting Motion for Sanctions Under Rule 37(e) Against BGL BNP Paribas SA, *Fairfield Sentry Ltd. (In Liquidation) v. BGL BNP Paribas SA*, Adv. Pro. No. 10-03626 (CGM), ECF No. 167; Order Granting Motion for Sanctions Under Rule 37(e) Against BNP Paribas Securities Services Luxembourg, *Fairfield Sentry Ltd. (In Liquidation) v. BNP Paribas Sec. Sers. Lux.*, Adv. Pro. No. 10-03627 (CGM), ECF No. 247; Order Granting Motion for Sanctions Under Rule 37(e) Against BNP Paribas (Suisse) SA, *Fairfield Sentry Ltd. (In Liquidation) v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-03635 (CGM), ECF No. 1012. Nevertheless, if the Court finds that the Trustee has not made a prima facie showing of jurisdiction over the PJ Defendants, the Trustee respectfully requests jurisdictional discovery.  *See Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, Nos. 21-cv-10316 (LAP) & 21-cv-10334 (LAP), 2022 WL 3910679, at *8–9 (S.D.N.Y. Aug. 31, 2022) (holding plaintiff need not establish a prima facie case for jurisdiction to obtain jurisdictional discovery).   The Trustee has alleged that the PJ Defendants subscribed to the Fairfield Funds for the purpose of investing in the U.S. securities markets, repeatedly used U.S. bank accounts to transact business with the Fairfield Funds, and had significant business contacts in New York.  At a minimum, these allegations establish a "threshold showing" of jurisdiction sufficient to warrant jurisdictional discovery.  *See Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc.*, No. 18-CV-11099 (ALC), 2020 WL 7128968, at *1 (S.D.N.Y. Dec. 4, 2020) (holding plaintiff was entitled to jurisdictional discovery where plaintiff had made a "sufficient threshold showing toward establishing personal jurisdiction").

## II.    DEFENDANTS RECEIVED TRANSFERS OF BLMIS CUSTOMER PROPERTY

The SAC plausibly alleges that Defendants received subsequent transfers of BLMIS customer property.  In arguing otherwise, Defendants misstate the Trustee's pleading burden, raise disputed questions of fact, and ignore this Court's recent decisions.

### A.    The Trustee Plausibly Alleges that Defendants Received Subsequent Transfers of BLMIS Customer Property Under Section 550

To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)).  Contrary to Defendants' claim that the Trustee has failed to conduct a "tracing" analysis, *see* Mot. at 21, this Court has repeatedly held that tracing is not required at the pleading stage and the Trustee need not perform a dollar-for-dollar accounting of the exact funds at issue.  *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 90; *Merkin*, 515 B.R. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL) & 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).

Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [defendant]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *accord Picard v. Korea Exch. Bank (In re Madoff)*, Adv. Pro. No. 11-02572 (CGM), 2022 WL 4371908, at *11 (Bankr. S.D.N.Y. Sept. 21, 2022) (finding the Trustee need only proffer "allegations that make it seem plausible that [the transferee] received BLMIS monies").  In addition, the Trustee must allege "the 'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman*, 379 B.R. at 32).

The SAC meets these requirements. It alleges that Defendants received transfers, identified by date and amount, from the Fairfield Funds and the Tremont Funds, and that the Fairfield Funds and the Tremont Funds invested substantially all of their funds with BLMIS. *See* SAC ¶¶ 6, 213–98; *id.*, Exs. B–W.[5] Nothing more is required. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 95 (holding the Trustee's exhibits provide defendants with the necessary "who, when, and how much" of each transfer).

### B.    Defendants Misstate the Trustee's Pleading Burden

Defendants argue that the Trustee must trace and tie each subsequent transfer Defendants received to a specific initial transfer from BLMIS. *See* Mot. at 22–23. But that is not the Trustee's pleading burden: "The Trustee need not prove the path that each transfer took from BLMIS to Sentry and subsequently to each redeeming shareholder." *Picard v. Cathay Life Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02568 (CGM), 2022 WL 16626325, at *7 (Bankr. S.D.N.Y. Nov. 1, 2022); *see also, e.g.*, *Merkin*, 515 B.R. at 150 (refusing to dismiss subsequent transfer claims even where the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS").

Defendants also claim that the Trustee has a heightened pleading burden because he "has all of [sic] information he needs to determine whether an alleged subsequent transfer contains customer property, and from which initial transfer that transfer originates . . . ." Mot. at 23. But the Trustee does not have all of the Fairfield Funds' and Tremont Funds' books and records. For this reason, Defendants' citations to *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013), and *Sapia v. Home*

---

[5] Exhibit B to the SAC shows the initial transfers from BLMIS to Fairfield Sentry. Exhibits C through H and J through M show the subsequent transfers from the Fairfield Funds to Defendants. Exhibits N, O, and R show the initial transfers from BLMIS to the Tremont Funds. Exhibits Q and S through W show the subsequent transfers from the Tremont Funds to Defendants.

*Box Off., Inc.*, No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018), are inapposite. Mot. at 23–24.

### C.    Defendants' Tracing Arguments Fail at the Pleading Stage

Defendants' other fact-based tracing arguments fare no better on a motion to dismiss. Defendants suggest that any subsequent transfers from the Fairfield Funds may have been funded from other sources. Mot. at 23. Defendants' only support for that assertion is an allegation in a complaint filed in a different liquidation proceeding by the Fairfield liquidators, not the Trustee. *See id.* (citing First Am. Compl., *Fairfield Sentry Ltd. v. Citco Glob. Cust. NV*, Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19, ¶ 63). There is no basis to impute any allegation by the Fairfield liquidators to the Trustee or to otherwise consider allegations asserted in the liquidators' proceeding on a motion to dismiss here.

Regardless, the commingling of funds from different sources does not defeat the Trustee's ability to trace transfers of customer property. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11 CIV. 1590 (LTS) (HBP) & 11 CIV. 8726 (LTS) (HBP), 2013 WL 6123104, at *12 (S.D.N.Y. Nov. 20, 2013) ("It is a basic principle of equity that 'the mere commingling of [other] property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing.'"). Nor is it the Trustee's obligation to plead which portion of the subsequent transfers at issue comprise BLMIS customer property. *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"). Defendants' argument that none of the transfers received from the Fairfield and Tremont Funds contained any BLMIS customer property must be rejected.

### III.    THE TRUSTEE PLAUSIBLY ALLEGES THE AVOIDABILITY OF THE INITIAL TRANSFERS FROM BLMIS

The SAC sufficiently alleges the avoidability of the initial transfers from BLMIS to the Fairfield and Tremont Funds.  Defendants disagree, arguing that the Trustee cannot rely on the Ponzi scheme presumption to meet the requirements of Section 548(a)(1).[6]  Mot. at 26–30. Defendants' argument fails, and blatantly disregards this Court's rulings that hold otherwise.

Under Section 548(a)(1)(A), the Trustee may avoid any transfer made by the debtor "with actual intent to hinder, delay, or defraud."  11 U.S.C. § 548(a)(1)(A).  The Ponzi scheme presumption recognizes that "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors."  *Picard v. ABN AMRO Bank (Ir.), Ltd. (In re BLMIS)*, 650 B.R. 24, 38 (Bankr. S.D.N.Y. 2023) (citation omitted).  "[T]he Ponzi scheme presumption remains the law of this Circuit."  *Picard v. First Gulf Bank, (In re Madoff)*, Adv. Pro. No. 11-02541 (CGM), 2022 WL 3354955, at *10 (Bankr. S.D.N.Y. July 18, 2022).

As this Court has repeatedly held, the Trustee may rely on the Ponzi scheme presumption to show BLMIS's actual intent to hinder, delay, or defraud creditors.  *See, e.g.*, *ABN AMRO*, 650 B.R. at 39 ("That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue.") (citations omitted).  Here, the allegations in the SAC regarding the BLMIS

---

[6] Defendants also argue that the Trustee failed to meet the requirements of Section 548(a)(1)(B), claiming that the "SAC includes no allegations that the BNPP Defendants, the Fairfield Funds, or the Tremont Funds gave less than 'reasonably equivalent value' to BLMIS in exchange for any of the alleged transfers." Mot. at 29–30.  The Court need not address this argument, as the statute only requires the Trustee to show that the debtor *either* "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud . . . *or* . . . received less than a reasonably equivalent value in exchange for such transfer or obligation . . . ." 11 U.S.C. § 548(a)(1) (emphasis added).  Because the Trustee has sufficiently alleged BLMIS's actual intent to hinder, delay, or defraud creditors, he need not also allege that Defendants or the Fairfield or Tremont Funds gave less than the reasonably equivalent value to BLMIS. *See id.* The Trustee does not concede, however, that Defendants or the Fairfield or Tremont Funds gave less than reasonably equivalent value to BLMIS.

Ponzi scheme, *see* SAC ¶¶ 29–54, plead the avoidability of the relevant transfers.  *See, e.g.*, *ABN AMRO*, 650 B.R. at 38.

Independent of the Ponzi scheme presumption, and contrary to Defendants' claims, Mot. at 29, the SAC alleges BLMIS's fraudulent intent through multiple "badges of fraud" sufficient to satisfy Rule 9(b).  *See* SAC ¶¶ 23–54.  The SAC states: BLMIS commingled customer funds and used them not to purchase securities, but to pay other customers, *id.* ¶ 34; BLMIS filed false audit reports, *id.* ¶ 32; BLMIS filed false reports with the SEC, *id.* ¶¶ 27–28; BLMIS was insolvent at all relevant times, *id.* ¶ 54; and BLMIS's investment advisory business had no legitimate business operations, and the proprietary trading business incurred significant losses, requiring fraudulent infusions of cash from the investment advisory business to continue, *id.* ¶¶ 29–30.  This Court and the District Court have found that such allegations sufficiently demonstrate BLMIS's actual fraudulent intent under Section 548(a)(1)(A).  *See ABN AMRO*, 650 B.R. at 39–40; *Picard v. JABA Assocs. LP (In re Madoff)*, 528 F. Supp. 3d 219, 236–38 (S.D.N.Y. 2021).

To the extent Defendants also argue that the Trustee must first "avoid" the initial transfers from BLMIS before seeking to recover the subsequent transfers from Defendants, Mot. at 26–27, this Court and the District Court have rejected this argument as well.  *See Picard v. Hebrew Univ. of Jerusalem (In re Madoff)*, 650 B.R. 5, 22 (Bankr. S.D.N.Y. 2023) ("While the Trustee must allege that the initial transfer is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees."); *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 37 (S.D.N.Y. 2013) (same).  The SAC therefore sufficiently alleges the avoidability of the initial transfers from BLMIS to the Fairfield and Tremont Funds.

## IV.   DEFENDANTS' GOOD FAITH AND FOR VALUE DEFENSES ARE INAPPLICABLE AT THE PLEADING STAGE

Defendants argue that dismissal is warranted because the SAC establishes Defendants' Section 550(b) affirmative defenses by pleading that Defendants received transfers "for value" and in "good faith." Mot. at 24–26. This argument is no different from those previously rejected by this Court, *see, e.g.*, *First Gulf Bank*, 2022 WL 3354955, at *10 ("This affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint."), and by the District Court. *See In re BLMIS*, No. 20-cv-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") ("The Trustee rightfully points out that such a fact-based determination can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.").

Defendants claim that their subscription agreements with BLMIS's feeder funds satisfy the "for value" prong of Section 550. Mot. at 24. However, this Court has already held that value cannot be determined on a motion to dismiss. *See, e.g.*, *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) (holding whether defendants "'gave value' in the form of surrendering shares . . . cannot be made as a matter of law or fact at this stage"). The same result is warranted here.

Defendants next claim that the "good faith" prong of Section 550 is satisfied because "[t]he SAC fails to make any allegation that . . . Defendants had inquiry notice of Madoff's misconduct." Mot. at 25. But of course this is not the Trustee's burden. *See Citibank*, 12 F.4th at 196. Defendants also argue that, given Madoff's secrecy and the feeder funds' protection of him, "the only reasonable conclusion" is that Defendants received their transfers in good faith. Mot. at 26.

21

But again, Defendants cannot rely on cherry-picked allegations and factual inferences to establish their good faith on a motion to dismiss. *See ABN Ireland*, 2022 WL 1304589, at \*3.

Defendants' argument that their good faith must be inferred from the SEC's failure to detect Madoff's fraud also fails. Mot. at 25. Even if it were proper to speculate about facts extrinsic to the SAC, the SEC's shortcomings do not establish *Defendants'* state of mind— especially when Defendants likely had more information about Madoff and BLMIS than the SEC.[7] *See* SAC ¶¶ 3, 92 (describing Defendants' longstanding and direct involvement with Madoff and 11 of his feeder funds). Moreover, this Court has had no difficulty finding certain defendants knew about Madoff's fraud despite the SEC's inability to discover the same. *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016).

Defendants' only new argument is that their good faith is established because the Court in *BNP Paribas*, when holding that the Trustee failed to plead the FAC Defendants' willful blindness, interpreted the Original Complaint as alleging that the FAC Defendants engaged in some due diligence. Mot. at 26 (citing *BNP Paribas*, 594 B.R. at 205). That holding cannot support Defendants' argument because it is based on an incorrect legal standard that has been overruled. *See ABN Ireland*, 2022 WL 1304589, at \*4 (vacating prior decision because "*Citibank* makes it clear that the Trustee was being held to the wrong standard all along"). Defendants' spin on these prior allegations is also disputed. But it does not matter because each of Defendants' good faith arguments can be explored in discovery and decided on summary judgment or at trial.

In summary, Defendants will need to plead and prove their affirmative defenses of value and good faith. On this Motion, Defendants have done neither.

---

[7] *See also* U.S. Securities and Exchange Commission Office of Investigations, *Investigation of Failure of SEC To Uncover Bernard Madoff's Ponzi Scheme* – Public Version (Aug. 31, 2009), at 456–57, *available at* https://www.sec.gov/files/oig-5090.pdf (concluding "there were systemic breakdowns in the manner in which the SEC conducted its examinations and investigations" of Madoff and BLMIS).

## V.    THE TRUSTEE'S CLAIMS ARE NOT BARRED BY SECTION 546(e)

Defendants are wrong that Section 546(e) bars the Trustee's claims to avoid the initial transfers from BLMIS or recover the subsequent transfers alleged in the SAC. *Cohmad* and *BNP Paribas*, as well as this Court's and the District Court's more recent decisions, squarely reject Defendants' recycled arguments.

In *Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, No. 12 MC 115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded the application of Section 546(e), thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).

After *Cohmad*, Defendants here argued that Section 546(e) barred the Trustee's claims, regardless of the initial transferee's actual knowledge of fraud. Defendants argued: "The *only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that [Defendants] actually knew of the Madoff Ponzi Scheme." *BNP Paribas*, 594 B.R. at 196–97 (quoting Mot. to Dismiss, ECF No. 107, at 15). The Court rejected Defendants' argument, finding that Section 546(e) did not protect against the recovery of an avoidable transfer under Section 550(a). *Id.* at 197. "By its terms," Section 546(e) provides "a defense to the avoidance of the *initial* transfer." *Id.* "Hence, a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable" under Section 546(e). *Id.*

Since *BNP Paribas*, this Court has repeatedly rejected other defendants' arguments that Section 546(e) requires dismissal of the Trustee's claims. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 92–95. The District Court has also rejected them. In *Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767, at *8–9 (S.D.N.Y. Nov. 3, 2022) ("*Multi-Strategy II*"),

the District Court recognized that the avoidability of an initial transfer does not turn on the "subjective mental knowledge" of a subsequent transferee, and that the Trustee is not required to plead the subsequent transferee's actual knowledge of Madoff's fraud. *Id.* at *5–7.

More recently, in *Koch Indus., Inc. v. Picard (In re BLMIS)*, No. 23-CV-0294 (VEC), 2023 WL 3317926, at *4 (S.D.N.Y. May 9, 2023), the District Court found that controlling law supported the Bankruptcy Court's decision to deny a subsequent transferee's motion to dismiss on Section 546(e). Section's 546(e)'s "plain text and purpose, reinforced by Second Circuit law," support that an initial transferee cannot seek the protections of Section 546(e) if the transferee had knowledge of the transferor's fraud. *Id.* The reason is self-evident: "Rather than agreeing to a securities contract, BLMIS and Fairfield [as BLMIS's customer and the initial transferee] allegedly agreed to commit fraud. By its plain terms, the Safe Harbor, therefore, does not apply." *Id.*

Nevertheless, Defendants raise the same arguments previously rejected by this Court and the District Court. First, Defendants argue that Section 546(e) bars all of the Trustee's claims to recover transfers made within two years of the filing date because the Trustee has failed to plead the avoidance of any initial transfers from BLMIS under Section 548(a)(1)(A). Mot. at 29–30. This argument is easily rebutted. *See supra* at 18–20 (addressing how the Trustee has alleged avoidability of initial transfers from BLMIS under Section 548(a)(1)(A)).

Second, Defendants argue that Section 546(e) bars all of the Trustee's claims to recover transfers made outside the two-year period because Section 548(a)(1)(A) is the only "exception" that allows for the avoidance of initial transfers under Section 546(e). Mot. at 30, 33–34. Defendants argue that this Court's and the District Court's prior decisions are wrong because they depart from "the text of the statute," *id.* at 33, or are distinguishable because the Trustee has not alleged Defendants' actual knowledge of Madoff's fraud. *Id.* at 33–34. These arguments were

rejected in *Cohmad*, 2013 WL 1609154, at *1, in *BNP Paribas*, 594 B.R. at 196–97, in *Multi-Strategy I*, 641 B.R. 92–95, in *Multi-Strategy II*, 2022 WL 16647767, at *8–9, and in *Koch*, 2023 WL 3317926, at *4. Defendants provide no reason to revisit these prior decisions.

Third, and finally, Defendants argue that their own third-party transactions with Madoff's feeder funds independently qualify for the protections under Section 546(e). Mot. at 31–33. This argument conflates "the concepts of avoidance and recovery [which] are separate and distinct." *Sec. Inv. Prot. Corp.*, 501 B.R. at 30 (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)). Regardless, the District Court already addressed this argument in denying motions for interlocutory appeal filed by similarly situated defendants, deeming such an argument to be "fact-intensive," not "answerable on the pleadings," and best addressed "with a full factual record." *Multi-Strategy II*, 2022 WL 16647767, at *8–9. Thus, to the extent Defendants seek to apply this alternative argument to transfers allegedly made in connection with a third-party securities contract, "this issue is . . . better addressed at a later stage of litigation." *Picard v. Bank Vontobel AG (In re Madoff)*, Adv. Pro. No. 12-01202 (CGM), 2022 WL 17087560, at *10 (Bankr. S.D.N.Y. Nov. 18, 2022).

## VI.     THE NEW FAIRFIELD CLAIMS ARE TIMELY

### A.     The New Fairfield Claims Relate Back to the Original Complaint

The Trustee's New Fairfield Claims are timely because they relate back to the Original Complaint. Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Courts in the Second Circuit, including this one, have "liberally construed" this standard, *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 252 (2d Cir. 1994), to effectuate the purpose of Rule 15, that is, "to provide maximum opportunity for each claim to be decided on

the merits rather than on procedural technicalities." *Fairfield Inv. Fund*, 2021 WL 3477479, at

*12 (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 217 (2d Cir. 1983)).

As this Court has recognized, "Rule 15 does not set a high bar for relation back, so long as

the claims attempted to be asserted in the new complaint share a reasonable measure of common

ground with the allegations in the original pleading." *See, e.g.*, *Picard v. KBC Invs. Ltd. (In re

Madoff)*, Adv. Pro. No. 11-02761 (CGM), 2023 WL 3112719, at *7 (Bankr. S.D.N.Y. Apr. 26,

2023) (internal quotation marks omitted); *Picard v. Bank Julius Baer & Co. (In re Madoff)*, Adv.

Pro. No. 11-02922 (CGM), 2022 WL 17726520, at *15 (Bankr. S.D.N.Y. Dec. 15, 2022). "[T]he

central inquiry is whether adequate notice of the matters raised in the amended pleading has been

given to the opposing party within the statute of limitations by the general fact situation alleged in

the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006).

Certain cases hold that each fraudulent transfer claim is separate and distinct. *See Metzeler

v. Bouchard Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986).

However, a separate and distinct fraudulent transfer claim may relate back under Rule 15 where

newly alleged transfers occurred as part of the same "course of conduct" as the alleged transfers

in the original pleading. *KBC*, 2023 WL 3112719, at *7; Fed. R. Civ. P. 15(c)(1)(B) ("An

amendment . . . relates back . . . when . . . the amendment asserts *a claim* . . . that arose out of *the

conduct* . . . set out . . . in the original pleading.") (emphasis added). Thus, when examining

whether new fraudulent transfer claims relate back, court typically analyze whether the recently

added transfers occurred as part of the same course of conduct alleged in the original complaint

and whether the original complaint gave sufficient notice to the defendants that the plaintiff may

sue for additional transfers that were part of the same course of conduct. *KBC*, 2023 WL 3112719,

at *7 (citing *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011)).

1.    The New Fairfield Transfers Were Made as Part of the Same Course of Conduct as the Transfers Alleged in the Original Complaint

The new transfers alleged in the SAC are part of the same course of conduct alleged in the Original Complaint.  Both the Original Complaint and the SAC allege that Defendants invested in and redeemed from BLMIS through numerous BLMIS feeder funds.  And both the Original Complaint and the SAC seek to recover subsequent transfers of stolen BLMIS customer property that was initially transferred to those feeder funds and subsequently transferred to Defendants as part of Madoff's Ponzi scheme.  Many courts have permitted relation back for new transfers originating from the same Ponzi scheme identified in the original pleading, because a reasonable defendant would know that the any receipt of stolen money would be fair game.  *See, e.g.*, *Goldberg v. Halbert (In re Woodbridge Grp. of Cos., LLC)*, No. 19-51027 (JKS), 2021 WL 5774217, at *9–11 (Bankr. D. Del. Dec. 6, 2021) (finding relation back of new claims to recover principal, where original complaint just sought interest, because "both the initial and amended claims arise from the Defendant's investment in the Woodbridge Ponzi Scheme," and as an investor, defendant was on notice that any of his transfers might be subject to clawback); *In re Juliet Homes, LP*, 2011 WL 6817928, at *7 ("The fraudulent transfers alleged in the original complaint, along with the new transfers alleged in the [proposed amended complaint], are alleged to have been part of this overall Ponzi scheme. Both the original and the newly alleged fraudulent transfers therefore arose as part of the same course of alleged conduct.").

Indeed, the common course of conduct alleged in the Original Complaint and the SAC goes beyond mere involvement in the BLMIS Ponzi scheme.  The Original Complaint alleges that Defendants, as part of the BNP Paribas enterprise, invested in numerous BLMIS feeder funds,

including the Fairfield Funds, to profit from BLMIS.  The Original Complaint depicts a "global

and sophisticated financial institution" whose members—including Defendants—"knowingly

direct[ed] funds to be invested with New York-based BLMIS through the Feeder Funds."  Compl.,

¶¶ 4, 7.  The Original Complaint alleges that as a result of this conduct, Defendants received tens

of millions of dollars in subsequent transfers from seven different feeder funds.  *Id.* ¶¶ 3-4.[8]

So too does the SAC.  The SAC alleges that Defendants, as members of the BNP Paribas

enterprise, maintained a "longstanding relationship" with BLMIS and its feeder funds, and that

Defendants "worked together to grow BNP Paribas's Madoff-related businesses, and received

hundreds of millions of dollars in customer property as a result."  SAC ¶¶ 2–4.  The SAC further

alleges that Defendants and their affiliates received $1.4 billion in fraudulent transfers of BLMIS

customer property from 14 different BLMIS feeder funds.  *Id.* ¶ 5.

Both the Original Complaint and the SAC allege an identical course of conduct by the same

Defendants.  The Original Complaint therefore satisfies the requirement of establishing the

"general fact situation" underlying the claims in both the Original Complaint and the SAC.  *See,*

*e.g.*, *Slayton*, 460 F.3d at 228 ("For example, where an initial complaint alleges a 'basic scheme'

of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts

receivable manipulation in an amended complaint will relate back because it is a 'natural offshoot'

---

[8] Complaints in other adversary proceedings identify numerous other BLMIS feeder funds through which BNP Paribas entities, including Defendants, received subsequent transfers of BLMIS customer property.  *See* Compl., *Picard v. BNP Paribas Arbitrage SNC*, Adv. Pro. No. 11-02796 (Bankr. S.D.N.Y. Nov. 3, 2011), ECF No. 1 (alleging BNP Paribas Arbitrage received $975 million in subsequent transfers from Harley International (Cayman) Ltd.); Compl., *Picard v. Legacy Cap. Ltd.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y. Dec. 6, 2010), ECF No. 1 (alleging BNP Paribas Securities Corp. received subsequent transfers from Legacy Capital Ltd.); Compl., *Picard v. Oreades SICAV*, Adv. Pro. No. 10-05120 (Bankr. S.D.N.Y. Dec. 2, 2010), ECF No. 1 (alleging BNP Paribas entities received subsequent transfers from Oreades SICAV); Compl., *Picard v. Equity Trading Portfolio Ltd.*, Adv. Pro. No. 10-04457 (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 2 (alleging BNP Paribas Arbitrage received subsequent transfer from Equity Trading Portfolio Ltd.).  These complaints were all filed prior to the Original Complaint.

of that scheme.") (citing *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y.1992)); *Royal Bank of Can.*, 650 B.R. at 546.

Defendants narrowly focus on whether the New Fairfield Claims are "part of a single transaction." Mot. at 14 (citing *Buchwald Cap. Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 480 B.R. 480, 492 (S.D.N.Y. 2012)); *Metzeler*, 66 B.R. at 983; *Off. Comm. of Unsecured Creditors v. Pirelli Commc'n Sys. USA LLC (In re 360Networks (USA) Inc.)*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007)). But this argument ignores the plain language of Rule 15, which allows relation back for claims that arise out of the same transaction *or conduct* set forth in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). The New Fairfield Claims do just that.

### 2. The Original Complaint Put Defendants on Notice that the Trustee Would Sue for Additional Subsequent Transfers

The Original Complaint put Defendants on notice that they would be called to account for the additional subsequent transfers the Trustee seeks in the SAC. As this Court has recognized, "The primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Fairfield Inv. Fund*, 2021 WL 3477479, at *12.

The Original Complaint expressly placed Defendants on notice that the Trustee would seek to recover all Sentry-related transfers. The Original Complaint specifies the amount of Sentry-related subsequent transfers "[b]ased on the Trustee's investigation to date," *see* Compl. ¶¶ 53, 55, and continues: "The Trustee's investigation is on-going, and the Trustee reserves the right to (i) supplement the information on the Fairfield Sentry Initial Transfers, the Fairfield-BNP Paribas Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional

transfers."[9]  *Id.* ¶ 53; *see id.* ¶ 55.  This Court has repeatedly held that such express language puts defendants on sufficient notice to permit relation back.  *See, e.g.*, *KBC*, 2023 WL 3112719, at *7 (permitting relation back because defendant was "adequately appraised that the Trustee intended to collect any additional subsequent transfers that were uncovered"); *Royal Bank of Can.*, 650 B.R. at 547 (same).

Contrary to Defendants' objections, such language appropriately notices the Trustee's intent to allege additional transfers based on his disadvantage as an outsider to the transactions between Defendants and BLMIS's feeder funds.  As this Court has noted under similar circumstances involving an enterprise of interrelated businesses:

> [T]he Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected.  The Moving Defendants are a group of interrelated individuals and entities . . . . Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Picard v. Standard Chartered Fin. Servs. (Lux.) S.A. (In re Madoff)*, Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, at *5 (Bankr. S.D.N.Y. Jan. 6, 2023) (citing *Picard v. Chais (In re BLMIS)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011)).  Here, Defendants know exactly which transfers they received from BLMIS's feeder funds.

**B.      The New Fairfield Claims Are Not Foreclosed by the Law of the Case Doctrine**

Defendants argue that the law of the case doctrine bars the New Fairfield Claims because Judge Bernstein held that Prior Tremont Claims did not relate back in *BNP Paribas*.  Defendants are wrong.

---

[9] The Sigma transfers alleged in the SAC are such "additional transfers" derived from the Fairfield Sentry Initial Transfers, given that they were mediate transfers from Sentry that were subsequently transferred to BGL BNP Paribas, BNP Paribas Securities Services, BNP Paribas Securities Services Luxembourg, and BNP Paribas Suisse.

The law of the case doctrine advises that a court should not ordinarily reconsider issues that were decided in prior proceedings in the same action. *Pierre v. Aurora Loan Servs., LLC. (In re Aurora Com. Corp.)*, No. 21-2321-BK, 2023 WL 1813328, at *1 (2d Cir. Feb. 8, 2023). The doctrine bars only specific legal claims based on the same material facts as questions decided earlier in the litigation. *United States v. Liberty Mut. Ins. Co.*, No. 15-CV-4961 (LTS) (JLC), 2020 WL 2530180, at *8 (S.D.N.Y. May 19, 2020). "It is well established that 'the law of the case' does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." *McClelland v. Grubb & Ellis Consulting Servs. Co. (In re McClelland)*, 377 B.R. 446, 458 (Bankr. S.D.N.Y. 2007) (Morris, J.) (quoting *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301, 312 (2d Cir. 1979)). Law of the case is thus "at best, a discretionary doctrine." *In re Dooley Realty, Inc.*, No. 09-36777 (CGM), 2010 WL 2076959, at *9 (Bankr. S.D.N.Y. May 21, 2010) (quoting *Brody v. Village of Port Chester*, 345 F.3d 103, 110 (2d Cir. 2003)); *see also United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (same). The doctrine "'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 952–53 (2d Cir. 1964)).

1.    <u>Law of the Case Does Not Apply to the New Fairfield Claims</u>

The *BNP Paribas* Court did not address the issue of whether the *conduct* alleged in the Original Complaint supported relation back under Rule 15. Per Defendants, the Court held only that: (1) the mere existence of other fraudulent transfers in a prior complaint does not satisfy Rule 15 for newly alleged fraudulent transfers; and (2) a generic allegation that an investigation is ongoing does not put Defendants on notice. Mot. at 9 (describing the *BNP Paribas* relation back ruling).

However, the Trustee is not arguing that the New Fairfield Claims relate back because both the Original Complaint and the SAC seek to recover fraudulent transfers. Nor is the Trustee arguing that a lone, generic allegation about his ongoing investigation satisfies Rule 15. The Trustee is arguing that the *conduct* alleged in the Original Complaint—that is, the "general fact situation" of Madoff's fraud and the overarching BNP Paribas enterprise's efforts to profit therefrom in the form of transfers of stolen customer property from BLMIS feeder funds—put Defendants on notice of the New Fairfield Claims. This issue was not squarely addressed by the Court in *BNP Paribas* because the Court simply held that different *transactions* did not relate back. 594 B.R. at 210. As explained below, *see infra* p. 33–34, that holding is wrong, but it nevertheless illustrates that (and explains why) the Court did not adjudicate the conduct-related issue now at bar. Law of the case, therefore, does not apply. *See City of Philadelphia v. Bank of Am. Corp.*, 609 F. Supp. 3d 269, 282 (S.D.N.Y. 2022) (finding law of the case does not apply where an issue was not previously decided by the court); *see also* 18B Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4478, at n.25 (2023) ("Law of the case applies only to a matter actually decided. An alternative holding will do, but not a position simply assumed for the purpose of deciding.").

The Court in *BNP Paribas* also did not address whether the New Fairfield Claims relate back to the Original Complaint. These claims are new, and consist of new facts related to time, amount, transferor, and transferee for different transfers.[10] The law of the case doctrine does not apply "to the extent that Plaintiff has offered new claims or factual allegations." *Weslowski v.*

---

[10] The Prior Tremont Claims sought $75,488,478 in subsequent transfers made from October 2004 to December 2008 by certain Tremont Funds to BNP Paribas, BNP Paribas Arbitrage, BNP Paribas Securities Services, and BNP Paribas Cayman. Am. Compl., Exs. F, H. The New Fairfield Claims seek $88,109,983 in subsequent transfer claims made from March 2003 to November 2008 by the Fairfield Funds to BGL BNP Paribas, BNP Paribas Arbitrage, BNP Paribas Cayman, BNP Paribas Securities Services, BNP Paribas Securities Services Luxembourg, and BNP Paribas Suisse. SAC, Exs. C–H, J–M.

*Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary

order); *see also City of Philadelphia*, 609 F. Supp. 3d at 282 (finding "new allegation renders the

law of the case doctrine inapplicable") (citation omitted); *Kregler v. City of New York*, 821 F.

Supp. 2d 651, 658 (S.D.N.Y. 2011), *aff'd*, 604 F. Appx. 44 (2d Cir. 2015) (declining to apply law

of the case where the claims in the amended complaint were materially different than those initially

brought). This limitation to the law of the case doctrine is dispositive here.

2.  <u>The Court Should Not Adopt the Reasoning on Relation Back from *BNP Paribas* to Dismiss the New Fairfield Claims</u>

Even if the doctrine of law of the case were applicable here—and it is not—there are cogent

and compelling reasons why this Court should not follow the same reasoning used to dismiss the

Prior Tremont Claims in *BNP Paribas*.

a.  *The Relation Back Analysis in BNP Paribas Misstates the Law in Dismissing the Prior Tremont Claims*

To begin with, the dismissal of the Prior Tremont Claims in *BNP Paribas* is premised on

a misstatement of law. As stated above, Rule 15 permits relation back if a new claim "*arose out*

*of the conduct . . .* set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis

added). However, the *BNP Paribas* decision relies on a quote from *Fabrikant* that states the

opposite: "[R]elation back *cannot* be ordered between different transactions merely for being

similar *or arising from the same conduct*." *BNP Paribas*, 594 B.R. at 210 (quoting *Fabrikant*, 480

B.R. at 492) (emphasis added). *Fabrikant*, in turn, cites *Metzeler* to support that statement. *Id.*

(citing *Metzeler*, 66 B.R. at 984). But the court in the *Metzeler* held no such thing.

In *Metzeler*, the trustee's original petition sought to recover three preferential transfers

made by a foreign debtor to the defendant on the eve of bankruptcy, paid outside the ordinary

course of business as part of a scheme to avoid payment to other creditors. 66 B.R. at 979. The

trustee later sought to add claims for four newly discovered fraudulent transfers made to the

defendant during an earlier time period for services it rendered to an affiliated U.S. company. *Id.* The trustee did not allege that the new transfers were part of the scheme previously alleged. *Id.* The court rejected the trustee's argument that, because all claims were fraudulent transfers from the debtor, the new claims were sufficiently analogous to the original ones such that the original petition gave notice to the defendant of the later claims. *Id.* at 983. Instead, the court reasoned that "the mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct," and thus did not put the defendant on notice of the new claims for services to the U.S. affiliate. *Id.* If anything, the new and old claims shared only "similar conduct," and Rule 15 provided "no indication that . . . relation back is to be ordered on the ground that they arise from similar conduct," which would not have put the new transferee on notice that they would be getting sued. *Id.* at 984.

The *Fabrikant* court later misconstrues *Metzeler* by glossing over those controlling facts to create a new standard at odds with Rule 15. *Fabrikant*, 480 B.R. at 492. The *BNP Paribas* Court then repeats and adopts *Fabrikant's* misapplication of *Metzeler* (as do Defendants, Mot. at 14) to reject relation back, notwithstanding Rule 15's clear language to the contrary and the fact that the Original Complaint and FAC described the <u>same</u> course of conduct that gave rise to the original and new claims—that the feeder funds created a business of investing in Madoff's Ponzi scheme and received transfers of stolen customer property that they then transferred to Defendants. *See, e.g.*, *Royal Bank of Can.*, 650 B.R. at 546 (holding Rule 15's "same conduct" requirement was met where both old and new claims were alleged to have arisen from defendants' receipt of customer property from BLMIS feeder funds that invested in Madoff's Ponzi scheme); *Bank Julius Baer*, 2022 WL 17726520, at *15–16 (same); *Standard Chartered*, 2023 WL 118787, at *6–7 (same); *Picard v. Six Sis AG (In re Madoff)*, No. 12-01195 (CGM), 2023 WL 2998470, at *8

(Bankr. S.D.N.Y. Apr. 18, 2023) (same).  As such, even if each transfer were to be considered a

different transaction, relation back still applies under *Metzeler* and other well established authority,

because the transfers at issue are based on the same course of conduct.

In summary, the relation back analysis in *BNP Paribas*, which was based on *Fabrikant*'s

error that "relation back *cannot* be ordered between different transactions . . . *or arising from the*

*same conduct*," *Fabrikant*, 480 B.R. at 492 (emphasis added), was wrong, and therefore the law

of the case doctrine does not apply.  *See, e.g.*, *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)

(counseling courts against applying law of the case where prior decision contains clear error).

> b.    *Law of the Case Should Not Be Applied Because the Law Relied Upon in BNP Paribas Has Changed*

This Court should not adhere to the relation back holding in *BNP Paribas* because the law

relied upon in *BNP Paribas* has changed.  *See, e.g.*, *Pescatore v. Pan Am. Airways, Inc.*, 97 F.3d

1, 8 (2d Cir. 1996) (finding law of the case does not apply if there has been an intervening change

of law that might have altered the prior holding).  In *BNP Paribas,* the Court's relation back

analysis was driven in part by its determination that the Trustee had failed to plead Defendants'

lack of good faith under Section 550(b).  *See* 594 B.R. at 202, 211–12.  Prior to addressing the

parties' Rule 15 arguments, the Court held that the Trustee had failed to plead that Defendants

were willfully blind to Madoff's fraud.  *Id.* at 204.  The Court then rejected the Trustee's argument

that the Prior Tremont Claims related back to the Original Complaint—reiterating that "the Court

has concluded that the [FAC] fails to plead the Defendants' bad faith." *Id.* at 211.  This, the Court

found, significantly distinguished Defendants from prior precedent in which courts found that new

fraudulent transfer claims related back to those originally pled.  *Id.* at 211–12.

Setting aside whether it was appropriate to consider good or bad faith under Rule 15, the

Second Circuit's decision in *Citibank* upends the relation back analysis in *BNP Paribas*.  In

*Citibank*, the Second Circuit vacated prior judgments from the Bankruptcy Court and held that "lack of good faith in a SIPA liquidation applies an inquiry notice, not willful blindness, standard, and that a SIPA trustee does not bear the burden of pleading the transferee's lack of good faith." *Citibank, N.A.*, 12 F.4th at 178. Because the standard and burden to plead good faith under Section 550(b) has changed, the rationale underpinning the Court's relation back analysis no longer applies, and the law of the case doctrine also should not apply. *See Pescatore*, 97 F.3d at 8.

<em>c.    The Trustee Need Not Plead that Defendants Were Bad Actors for the New Fairfield Claims to Relate Back</em>

The Court in *BNP Paribas* erred in finding that the Prior Tremont Claims could not relate back because the Trustee had not pleaded that Defendants had been "at the center of a common scheme" when receiving their transfers, but were simply "looking to payments from third parties." 594 B.R. at 211–12. The question is not whether Defendants knew that the subsequent transfers were fraudulent at the time of receipt. The question is whether the Original Complaint put Defendants on notice that the Trustee would seek additional transfers that arose from the same fraud alleged in the initial complaint. *See, e.g.*, *Six Sis*, 2023 WL 2998470, at *8. *Peter Madoff* and *Adelphia*—the prior precedent distinguished in *BNP Paribas*—do not require more.

In *Picard v. Peter Madoff (In re BLMIS)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012), the Court found that old and new claims related back where both the original and proposed complaint alleged that (1) BLMIS was engaged in a Ponzi scheme, (2) BLMIS made transfers with the actual intent to defraud its creditors, and (3) the original complaint gave notice that the Trustee was still uncovering additional transfers and seeking any amounts that were transferred as part of Madoff's underlying scheme. Likewise, in *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 333–34 (S.D.N.Y. 2009), the court found that new fraudulent transfer claims related back to the original ones because they involved a common scheme to defraud as pleaded originally.

While the defendants in *Peter Madoff* and *Adelphia* may have been aware of the relevant fraud at the time of the transfer, the linchpin for the courts' relation back decisions was that the original pleading provided enough notice that all transfers arising from the fraud described in the original pleading would be sought eventually. *See Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (holding the relevant query for relation back is notice).

  *d.*  *The Relation Back Analysis in BNP Paribas Departs from Precedent*

The relation back analysis in *BNP Paribas* also ignored precedent that holds the type of "conduct" sufficient under Rule 15 is simply the "general fact situation" originally alleged, which provides adequate notice to defendants of the new claims. *See Slayton* 460 F. 3d at 228 (quoting *Stevelman v. Alias Rsrch. Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)); *see also Mayle v. Felix*, 545 U.S. 644, 646 (2005) (Ginsburg, J.) (finding relation back would be warranted when there exists some "common core of operative facts unit[ed] the original and newly asserts claims"), *reargument denied*, 545 U.S. 1158 (2005). Instead, the *BNP Paribas* Court found that the Prior Tremont Claims could not relate back to the claims in the Original Complaint because: (1) the Trustee had not pleaded that the transfers in the old and new claims were conducted through the same types of financial instruments (*e.g.*, loans, credit facilities, and equity distributions); (2) the new claims required different proof than the old ones; and (3) the FAC failed to plead that Defendants were "at the center" of Madoff's fraud. *BNP Paribas*, 594 B.R. at 210–12. None of these reasons justify the Court's dismissal of the Prior Tremont Claims (nor do they require the dismissal of the New Fairfield Claims).

First, whether the transfers from the Tremont Funds sought in the Original Complaint and those sought in the FAC involved the same type of financial instrument is irrelevant. In order to satisfy Rule 15's "same conduct" requirement, "'adequate notice' not of particulars but of the

'general fact situation' is all that is required."[11]  *Silverman*, 379 B.R. at 27; *see also Contemp.*

*Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 255–56 (S.D.N.Y. 1987), *aff'd*, 842 F.2d

612 (2d Cir. 1988) (finding, although allegations for new and original claims "d[id] not always

involve the same sets of facts," the new claims related back to the original complaint because there

was a "common core of operative facts").

Second, relation back does not require symmetry in proof.  *Benfield v. Mocatta Metals*

*Corp.*, 26 F.3d 19, 23 (2d Cir. 1994).  And in any case, there was significant overlap in the proof

needed for both the Original Complaint claims and the Prior Tremont Claims, *i.e.*, that Madoff ran

a Ponzi scheme, that he transferred stolen customer property to BLMIS feeder funds, that the initial

transfers were avoided or avoidable, and that the stolen customer property was then transferred to

Defendants by the same feeder funds.  *Peter Madoff*, 468 B.R. at 633 (finding Rule 15 does not

set a high bar for relation back, requiring only that the claims asserted in the amended complaint

"share a reasonable measure of common ground with the allegations of the original pleading.")

(quoting *Silverman*, 379 B.R. at 27).  Moreover, the specific proof found to be lacking in *BNP*

*Paribas* concerned value, 594 B.R. at 211, which is not the Trustee's burden to prove.  *Citibank*,

12 F.4th at 199.

> e.    *The Relation Back Analysis in BNP Paribas Ignores that the*
> *Original Complaint Put Defendants On Notice*

Relation back is about notice.  And, here, Defendants had it.  The Original Complaint

alleged that (1) BLMIS was a Ponzi scheme, Compl. ¶¶ 37–44, (2) the Tremont Funds invested in

excess of 95% of their assets in their BLMIS customer accounts, *id.* ¶ 3, (3) Defendants received

subsequent transfers of customer property from the Tremont Funds, *id.*, and (4) the Trustee sought

---

[11] Furthermore, neither the transfers in the Original Complaint nor those in the FAC were tied to specific types of financial instruments.

to recover the subsequent transfers made by BLMIS feeder funds to Defendants, *id.* ¶ 2. This "course of conduct" gave rise to the claims in the Original Complaint and the FAC. All FAC Defendants were named defendants in the Original Complaint. And when the Original Complaint was filed, Defendants, unlike the Trustee, had a full set of records to inform them of what transfers they received from each feeder fund. *See Standard Chartered*, 2023 WL 118787, at *6 (recognizing relation back is particularly warranted because "the Trustee is an outsider to these transactions" and defendants alone have "requisite information" regarding specific transfers).

Further rebutting any claim of unfair surprise, the Original Complaint stated—*no less than 19 times*[12]—that the Trustee's investigation was ongoing, and that he explicitly reserved the right to seek recovery of additional transfers to Defendants from the Tremont Funds.[13] *See, e.g.*, *Standard Chartered*, 2023 WL 118787, at *6 (holding relation back is warranted when the original complaint stated that the Trustee's investigation was ongoing and he reserved his right to seek recovery of additional transfers); *Peter Madoff*, 468 B.R. at 633. The idea that Defendants thought the Trustee would pursue some transfers of stolen customer property that they received, but not the others later discovered, is absurd. *See Silverman*, 379 B.R. at 27 (holding new claim will relate back if there is no "unfair surprise" to the defendant) (quoting *Benfield*, 26 F.3d at 23).

> f.    There Is No Compelling Reason to Apply Law of the Case to the New Fairfield Claims

In summary, this Court should reject Defendants' argument that the law of the case doctrine requires this Court to follow a prior holding that departs from statutory text, relies on an overruled legal standard, rejects precedent, and reaches an untenable result—especially when Defendants' argument would foreclose the return almost $88 million to defrauded BLMIS customers. *See Soley*

---

[12] Compl. ¶¶ 43, 53, 55, 64, 66, 68, 70, 72, 74, 82, 84, 88, 97, 99, 106, 108, 110, 112, 114.

[13] Compl. ¶¶ 97, 99, 106, 108, 110, 112, 114.

*v. Wasserman*, No. 08 CIV. 9262 (KMW) (FM), 2013 WL 6244428, at *2  (S.D.N.Y. Dec. 3,

2013) (holding that law of the case should not be followed if there are "cogent and compelling"

reasons for not applying the doctrine); *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) (holding

that law of the case should not apply when doing so results in manifest injustice)*; see also Matter*

*of Clay*, No. M-11-188, 1985 WL 1977, at *3–4 (S.D.N.Y. June 27, 1985) (declining to follow

decision that the court found wrongly decided and inconsistent with other Second Circuit

precedent); *Walker v. City of New York*, No. 11-CV-314 (CBA), 2015 WL 4568305, at *13

(E.D.N.Y. July 28, 2015) (declining to follow a decision that came to the wrong conclusion and

misread the plain text of the relevant state and relevant precedent).

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendants' Motion in its entirety.

Dated: September 22, 2023
      New York, New York

*/s/ David J. Sheehan*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Matthew B. Friedman
Email: mfriedman@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Chapter 7*
*Estate of Bernard L. Madoff*