**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Lead Adv. Pro. No. 10-05354 (CGM) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as NATWEST MARKETS N.V.), | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S**
**MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ...................................................................................................2

I.    COMMENCEMENT OF THE SIPA PROCEEDING AND THE DISTRICT
COURT'S STAY ORDERS .................................................................................2

II.   THE TRUSTEE'S AUTHORITY, THE CLAIMS PROCEDURE, AND NET
EQUITY...........................................................................................................4

III.  THE TRUSTEE'S ACTION AGAINST DEFENDANT AND DEFENDANT'S
AMENDED COUNTERCLAIMS........................................................................5

ARGUMENT .......................................................................................................8

I.    LEGAL STANDARD........................................................................................8

II.   DEFENDANT SEEKS TO SUBVERT THE CLAIMS PROCESS..................................8

III.  THE AMENDED COUNTERCLAIMS VIOLATE THE DISTRICT COURT'S
STAY ORDERS AND THE BANKRUPTCY CODE'S AUTOMATIC STAY ..............13

IV.  DEFENDANT FAILS TO PLAUSIBLY ALLEGE CLAIMS FOR SETOFF,
RECOUPMENT, OR UNJUST ENRICHMENT OR ANY BASIS FOR RELIEF
UNDER THE BANKRUPTCY CODE AND SIPA...........................................15

     A.    Defendant Fails to State a Claim for Setoff............................................15

     B.    Defendant Fails to State a Claim for Recoupment.................................17

     C.    Defendant Fails to State a Claim for Unjust Enrichment ......................19

     D.    Defendant Fails to Cite a Legal Basis for Relief Under the Bankruptcy
Code or SIPA ........................................................................................22

CONCLUSION....................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*In re Ades & Berg Grp. Invs.*,
  550 F.3d 240 (2d Cir. 2008) ............................................................................. 21

*In re Adler, Coleman Clearing Corp.*,
  204 B.R. 99 (Bankr. S.D.N.Y. 1997) ................................................................. 9

*adidas Am., Inc. v. Thom Browne, Inc.*,
  629 F. Supp. 3d 213 (S.D.N.Y. 2022) ............................................................. 19

*ASG & C, Inc. v. Arch Specialty Ins. Co.*,
  No. 21-1761-CV, 2022 WL 839805 (2d Cir. Mar. 22, 2022) ......................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
  708 F.3d 422 (2d Cir. 2013) ........................................................................ 4, 10

*In re Best Prods. Co., Inc.*,
  168 B.R. 35 (Bankr. S.D.N.Y. 1994) ............................................................... 22

*In re Bird*,
  229 B.R. 90 (Bankr. S.D.N.Y. 1999) ............................................................... 14

*In re Blinder, Robinson & Co.*,
  124 F.3d 1238 (10th Cir. 1997) ......................................................................... 9

*In re BLMIS*,
  654 F.3d 229 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012) .................. 4, 5

*BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*,
  229 B.R. 301 (Bankr. S.D.N.Y. 1999) ............................................................. 17

*Citizens Bank of Md. v. Strumpf*,
  516 U.S. 16 (1995) ...................................................................................... 15, 16

*City of Syracuse v. R.A.C. Holding, Inc.*,
  685 N.Y.S. 2d 381 (4th Dep't 1999) ............................................................... 19

*In re Cleveland Imaging & Surgical Hosp., L.L.C.*,
    26 F.4th 285 (5th Cir. 2022) ........................................................................14, 15

*In re Coastal Grp., Inc.*,
    100 B.R. 177 (Bankr. D. Del. 1989) ......................................................................14

*In re Com. Fin. Servs., Inc.*
    251 B.R. 397 (Bankr. N.D. Okla. 2000) ........................................................9, 10, 11

*In re Continentalafa Dispensing Co.*,
    403 B.R. 653 (Bankr. E.D. Mo. 2009) ...................................................................14

*In re Enron Creditors Recovery Corp.*,
    376 B.R. 442 (Bankr. S.D.N.Y. 2007) ...................................................................17

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004) ...........................................................................20, 21

*In re First Interregional Equity Corp.*,
    290 B.R. 265 (Bankr. D.N.J. 2003) .........................................................................9

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
    97–CV–8851, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) ................................16

*Icebox-Scoops, Inc. v. Disney Enters., Inc.*,
    520 F. App'x 3 (2d Cir. 2013) ...............................................................................19

*In re Iridium Operating LLC*,
    285 B.R. 822 (S.D.N.Y. 2002)..................................................................................9

*In re J.T. Moran Fin. Corp.*,
    124 B.R. 931 (S.D.N.Y. 1991) ................................................................................14

*Kusch v. Mishkin*,
    95-cv-08203, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998) ......................20

*In re Lehman Bros. Holdings*,
    404 B.R. 752 (Bankr. S.D.N.Y. 2009) ...................................................................16

*In re Lessig Constr., Inc.*,
    67 B.R. 436 (Bankr. E.D. Pa. 1986) ......................................................................14

*In re Madoff*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012)..........................................................13, 14, 15

*Malinowski v. New York State Dep't of Labor (In re Malinowski)*,
    156 F.3d 131 (2d Cir. 1998)....................................................................................17

*In re McMahon*,
   129 F.3d 93 (2d Cir. 1997)..................................................................................17

*In re N. Am. Energy Conservation, Inc.*,
   2000 WL1514614 (S.D.N.Y. 2000)....................................................................9

*In re Operations NY LLC.*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013)................................................................19

*Paramount Film Distrib. Corp. v. State*,
   30 N.Y.2d 415 (N.Y. 1972) ...............................................................................19

*In re Penney*,
   76 B.R. 160 (Bankr. N.D. Cal. 1987) ...............................................................15

*Peskin v. Picard*,
   413 B.R. 137 (Bankr. S.D.N.Y. 2009)..............................................................12

*Picard v. Lustig,*
   568 B.R. 481 (Bankr. S.D.N.Y. 2017).....................................................11, 12, 18

*In re Roman Cath. Church of Archdiocese of Santa Fe*,
   627 B.R. 916 (Bankr. D.N.M. 2021) ...........................................................14, 15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   443 B.R. 295 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L. Madoff
   Inv. Sec. LLC*, No. 11 CV 2392 AKH, 2011 WL 7975167 (S.D.N.Y. Dec. 15,
   2011) ..................................................................................................................13

*In re Singh*,
   434 B.R. 298 (Bankr. E.D.N.Y. 2010)..............................................................16

*SIPC v. BLMIS (In re Madoff Sec.)*,
   No. 08-01789 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ..................10, 11

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
   No. 18-CV-5075 (LJL), 2020 WL 3472597 (S.D.N.Y. June 25, 2020) ...................8

*In re Trace Int'l Holdings, Inc.*,
   289 B.R. 548 (Bankr. S.D.N.Y. 2003)..............................................................18

*In re Try the World, Inc.*,
   Adv. Pro. No. 20-01013 (JLG), 2023 WL 5537564 (Bankr. S.D.N.Y. Aug. 28,
   2023) ............................................................................................................16, 17

*Westinghouse Credit Corp. v. D'Urso*,
   278 F.3d 138 (2d Cir. 2002)........................................................................11, 17

**Statutes**

11 U.S.C. § 362 ...................................................................................................3, 4

11 U.S.C. § 362(a) .............................................................................................3, 14

11 U.S.C. § 362(a)(3) ...........................................................................................13

11 U.S.C. § 362(d) ...............................................................................................14

11 U.S.C. § 502(h) ...........................................................................................15, 22

11 U.S.C. § 541(a) ...............................................................................................13

11 U.S.C. § 553 ...............................................................................................15, 16

11 U.S.C. § 553(a) ...........................................................................................15, 22

15 U.S.C. § 78eee(a)(4)(A) ...................................................................................3

15 U.S.C. § 78eee(a)(4)(B) ...................................................................................3

15 U.S.C. § 78eee(b)(3) ........................................................................................3

15 U.S.C. § 78eee(b)(4) ........................................................................................3

15 U.S.C. § 78fff-1(a) ...........................................................................................4

15 U.S.C. § 78fff-2(a)(3) .......................................................................................9

15 U.S.C. § 78fff-2(b) ......................................................................................15, 22

15 U.S.C. § 78fff-2(c)(3) ......................................................................................5

15 U.S.C. § 78fff(b) ..............................................................................................4

15 U.S.C. § 78*lll*(11) ...........................................................................................4

**Rules**

Fed. R. Bank. P. 7012 ...........................................................................................1

Fed. R. Civ. P. 12 .................................................................................................1

Fed. R. Civ. P. 12(b)(6) ........................................................................................8

**Other Authorities**

GCG, *In re Tremont Securities Law, State Law and Insurance Litigation*,
    http://tremontlitigationsettlements.com (last visited September 27, 2023) .............12

H.R. Rep. No. 95–595 (1977) .......................................................................................................14

S. Rep. No. 95–989 (1978) .........................................................................................................14

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in support of his motion (the "Motion"), brought pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the Amended Counterclaims (the "Amended Counterclaims") filed by defendant ABN AMRO Bank N.V. (presently known as NatWest Markets N.V.) ("Defendant").

## PRELIMINARY STATEMENT

After the Trustee successfully defeated Defendant's motion to dismiss the Consolidated Second Amended Complaint (the "CSAC"),[1] Defendant responded by bringing suit *against the Trustee*, counterclaiming that BLMIS and Madoff were unjustly enriched to Defendant's detriment because Defendant lost more money investing in two BLMIS feeder funds than it received back, and seeking the return of the difference from the Trustee. After the Trustee moved to dismiss, Defendant amended its Counterclaims to expressly state that it was not seeking "affirmative recovery" from the Trustee and add claims for setoff and recoupment. These Amended Counterclaims fare no better. The Amended Counterclaims (i) subvert the process for filing claims in the SIPA liquidation proceeding, (ii) violate the District Court's stay orders and the automatic stay under the Bankruptcy Code, and (iii) fail as a matter of law under any theory of unjust enrichment, set off, or recoupment.

---

[1] *See* CSAC, ECF No. 220; *see also* Mem. Decision, ECF 262. Unless otherwise indicated, all ECF references are to the docket in *Picard v. ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.)*, Adv. Pro. No. 10-05354 (CGM).

First, regardless of Defendant's claim that it is not seeking "affirmative recovery," Defendant is seeking a claim against the estate's right to recover customer property, despite never opening a customer account with BLMIS, never filing a claim with the Trustee, nor qualifying as a "customer" under SIPA. This directly conflicts with both SIPA and the court-ordered claims administration process and must be rejected.

Second, because the Amended Counterclaims still seek to retain estate property, they also violate the operative District Court stay orders and the Bankruptcy Code's automatic stay.

Finally, although this Court does not need to go any further, Defendant's setoff, recoupment, and unjust enrichment claims fail as a matter of law. Setoff requires mutuality of debts, parties, and capacity, none of which exists here between Defendant and the Trustee or BLMIS. A reciprocity of obligations is similarly lacking, dooming Defendant's request for recoupment. Unjust enrichment claims require a benefit conferred and restitution sought, yet here, Defendant did not provide value to the Trustee or BLMIS and does not even seek restitution from the Madoff estate. And there cannot be any unjust enrichment where the Trustee's conduct is fully consistent with the duties imposed on him by the Bankruptcy Code and SIPA to marshal and preserve estate assets, which is precisely what he has done here. Nor do any of Defendant's cited provisions of the Bankruptcy Code and SIPA provide a legal basis for its Amended Counterclaims.

For these reasons, the Trustee respectfully requests the Motion be granted.

## **BACKGROUND**

## I.    **COMMENCEMENT OF THE SIPA PROCEEDING AND THE DISTRICT COURT'S STAY ORDERS**

On December 11, 2008, Madoff was arrested and criminally charged before the District Court. CSAC ¶ 19. Contemporaneously, the SEC filed a complaint in the District Court against, among others, Madoff and BLMIS. *Id.*; *see SEC v. Bernard L. Madoff*, Case No. 08-CV-10791

(LLS) (S.D.N.Y. Dec. 11, 2008) ("SEC Action").  On December 15, 2008, pursuant to SIPA

Section 78eee(a)(4)(A), the SEC consented to combine its action with an application of the

Securities Investor Protection Corporation ("SIPC").  CSAC ¶ 20.  Thereafter, pursuant to SIPA

Section 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that

BLMIS was not able to meet its obligations to securities customers as they came due and

accordingly, its customers needed the protections afforded by SIPA.  *Id*.  That same day, the

District Court granted the SIPC application and entered a protective decree (the "Protective

Decree") to which BLMIS consented.  The Protective Decree, in pertinent part: (i) appointed the

Trustee for the liquidation of the business of BLMIS pursuant to SIPA Section 78eee(b)(3); (ii)

removed the case to the Bankruptcy Court pursuant to SIPA Section 78eee(b)(4); and (iii) stated

that "all persons and entities are notified that, subject to the other provisions of 11 U.S.C. § 362,

the automatic stay provisions of 11 U.S.C. § 362(a) operate as a stay . . . ."  SEC Action, ECF No.

4, at ¶¶ II–III, IX.

The Protective Decree also independently "stayed, enjoined, and restrained" all individuals

and entities "from directly or indirectly . . . interfering with any assets or property owned,

controlled or in the possession of [BLMIS]."  *Id.* ¶ IV; *see also* SEC Action, ECF No. 8, at ¶ IX

("December 18, 2008 Stay Order") (ordering that "no creditor or claimant against [BLMIS], or

any person acting on behalf of such creditor or claimant, shall take any action to interfere with the

control, possession, or management of the assets subject to the receivership."); *id*., ECF No. 18, at

¶ IV (incorporating and making permanent December 18, 2008 Stay Order) (collectively with the

Protective Decree and December 18, 2008 Stay Order, the "District Court Stay Orders").

## II.    THE TRUSTEE'S AUTHORITY, THE CLAIMS PROCEDURE, AND NET EQUITY

Appointed under SIPA, the Trustee is charged with recovering and distributing customer property to BLMIS's customers, assessing claims, and liquidating any other BLMIS assets for the benefit of the estate and its creditors, among other things.  Pursuant to SIPA Section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA.  Also pursuant to SIPA Section 78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code (including the automatic stay provisions of Section 362 of the Bankruptcy Code) are applicable to this case.

On December 23, 2008, the Bankruptcy Court entered the Claims Procedures Order, setting forth a systematic framework for the filing, determination, and adjudication of claims in accordance with SIPA.  *SIPC v. BLMIS*, Adv. Pro. No. 08-1789 (BRL) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 12.  Pursuant to the Claims Procedures Order, all customer and general creditor claims needed to be filed with the Trustee by July 2, 2009.  *Id*. at 7.  Investors who did not directly invest in BLMIS, such as investors in BLMIS's "feeder funds," are not "customers" under SIPA and cannot pursue SIPA customer claims with the Trustee.  *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426–28 (2d Cir. 2013).

The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that customers share pro rata in customer property, to the extent of their "net equity," as defined in SIPA Section 78*lll*(11).  The Trustee has determined each customer's net equity by crediting the amount of cash deposited by the customer into her BLMIS account, less any amounts withdrawn from her BLMIS customer account, known as the "Net Investment Method."  In 2011, the Second Circuit upheld the Net Investment Method as the way to calculate and determine customer claims in this SIPA liquidation proceeding.  *In re BLMIS*, 654 F.3d 229

(2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012).  Using the Net Investment Method, as of September 27, 2023, the Trustee has made fourteen pro rata distributions to eligible customers, totaling approximately $13.785 billion dollars.  *See* Order Approving Fourteenth Allocation of Property to the Fund of Customer Property, *SIPC v. BLMIS*, Adv. Pro. No. 08-01789, ECF No. 22819.

## III.    THE TRUSTEE'S ACTION AGAINST DEFENDANT AND DEFENDANT'S AMENDED COUNTERCLAIMS

In addition to determining claims, the Trustee is obligated to marshal and liquidate BLMIS's assets for ultimate distribution to the defrauded customers of Madoff's fraud, a process which is ongoing.  Because BLMIS's assets were not sufficient to reimburse its customers for the billions of dollars that they invested, the Trustee brought numerous avoidance and recovery actions seeking to collect stolen customer property from those who received fraudulent transfers, in accordance with, *inter alia*, SIPA Section 78fff-2(c)(3).

The instant action is part of that effort.  On March 22, 2022, the Trustee filed the CSAC in this BLMIS SIPA liquidation proceeding against Defendant, seeking at least $308,113,826 in subsequent transfers of stolen customer property that Defendant received from various funds managed and controlled by Tremont Group Holdings, Inc. (the "Tremont Group"), and its management arm, Tremont Partners, Inc. (together with the Tremont Group, "Tremont"), and Harley International (Cayman) Ltd. ("Harley").  CSAC ¶ 2.  Defendant received this stolen customer property through specific transactions it entered into with Tremont and Harley that were governed by separate agreements.  *Id*. ¶¶ 2–12.  In its transactions with Tremont, Defendant entered into swap agreements with Rye Select Broad Market XL Portfolio, Ltd. and Rye Select Broad Market XL Fund L.P. (collectively, the "XL Funds").  CSAC ¶¶ 8–10; Am. Answer ¶¶ 8–10, ECF No. 276.  Under those agreements, the XL Funds provided cash collateral to Defendant (largely

comprised of customer property), and in exchange Defendant agreed to provide the XL Funds with returns equivalent to three times the returns generated by Rye Select Broad Market Portfolio Limited and Rye Select Broad Market Fund L.P.—two of the Tremont BLMIS feeder funds (collectively, the "Rye Funds," and together with the XL Funds and Tremont, "Tremont").  CSAC ¶ 6; Am. Answer ¶ 6.  Because Defendant's payment obligations to the XL Funds were directly tied to the performance of the Rye Funds (and thus, BLMIS), under separate subscription agreements, Defendant invested three times the collateral it received from the XL Funds in the Rye Funds, which, in turn, invested Defendant's funds with BLMIS.  CSAC ¶¶ 7, 57, 73(c); Am. Answer ¶¶ 7, 57, 73.  Defendant redeemed stolen customer property from the Rye Funds under the subscription agreements.  CSAC ¶¶ 9, 11; Am. Answer. ¶¶ 9, 11.  Defendant also redeemed $21,799,920 of stolen customer property under a subscription agreement it maintained with Harley in connection with another transaction involving that fund.  CSAC ¶¶ 12, 66; Am. Answer ¶¶ 12, 66.

After the Trustee successfully defeated Defendant's motion to dismiss the CSAC, Defendant raised Affirmative Defenses and asserted Counterclaims.  While Defendant refuses to return over $308 million of stolen customer property to the BLMIS estate for the benefit of Madoff's defrauded customers, in its Counterclaims, Defendant claimed it was a victim of Madoff's fraud and demanded that the estate pay it over $650 million under a flawed unjust enrichment theory against the Trustee.  Countercl. ¶¶ 11–12, ECF No. 268.  Specifically, Defendant alleged that in connection with the swap transactions it entered into, it invested $938,499,999 in BLMIS through the Rye Funds and Harley, *id*. ¶¶ 10–11, and that at the time of the collapse of BLMIS and its various feeder funds, Defendant alleged at least $652,186,093 of its investments remained unredeemed. *Id*. ¶ 11.  As a result, Defendant claimed, it does not owe

BLMIS or Madoff anything; rather, BLMIS and Madoff were unjustly enriched at Defendant's expense and thus *owe Defendant* the return of its unredeemed investments.  *Id.* ¶ 12.

On July 17, 2023, the Trustee moved to dismiss the Counterclaims.  Mot. Dismiss, ECF No. 271.  In his motion, the Trustee described the numerous fatal flaws in Defendant's Counterclaims.  For example, in violation of both SIPA and the Bankruptcy Code, by asserting unjust enrichment, Defendant, which did not open or maintain a customer account with BLMIS, was attempting to jump ahead of BLMIS customers with valid and not fully paid customer claims and deplete the BLMIS estate in violation of the Bankruptcy Code's automatic stay, relevant District Court stay orders, and the Claims Procedures Order.  Mem. of Law, 8–14, ECF No. 272. The vague and conclusory nature of the Counterclaims also muddied who or what exactly was unjustly enriched, ignoring that the Trustee has qualified immunity when carrying out his official duties.  *Id.* at 14–16.  And as no value was ever provided by Defendant to BLMIS or the Trustee, the basic threshold for an unjust enrichment claim under New York law was not met.  *Id.* at 16– 19.

Instead of opposing the Trustee's motion to dismiss, Defendant filed the instant Amended Counterclaims.  ECF No. 276.  But this did not fix any of the deficiencies the Trustee described in his motion to dismiss.  Instead, Defendant just realleges its unjust enrichment claims, although without seeking affirmative relief, and adds claims for setoff and recoupment.  As with the Counterclaims, Defendant's Amended Counterclaims fail to state any claims for relief and should be dismissed.[2]

---

[2] At the same time it filed its Amended Counterclaims, Defendant moved to amend its Affirmative Defenses, including to supplement existing allegations concerning setoff, recoupment, and unjust enrichment, and adding an additional Affirmative Defense for recoupment.  ECF No. 279.  The Trustee opposed Defendant's motion seeking these amendments and the Court held oral argument on September 20, 2023.  ECF Nos. 282, 285.  The Trustee respectfully submits that should the Court dismiss the Amended Counterclaims, it should deny Defendant's motion to amend as well.

## ARGUMENT

### I.    LEGAL STANDARD

In considering a motion to dismiss a counterclaim, courts apply the same standard as a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (stating that "[a] motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint.") (citations omitted).  To survive a motion to dismiss under Rule 12(b)(6), the counterclaim must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  If counterclaimants have "not nudged their claims across the line from conceivable to plausible, their [counterclaims] must be dismissed." *Id*. at 570.

As described below, Defendant's Amended Counterclaims fail because (1) they are blatant attempts to end run around the claims process in this SIPA BLMIS liquidation proceeding and would violate the Net Investment Method, (2) they violate the District Court Stay Orders and the Bankruptcy Code's automatic stay, and (3) Defendant fails to state a claim for setoff, recoupment, or unjust enrichment or provide any basis for relief under the Bankruptcy Code or SIPA.

### II.    DEFENDANT SEEKS TO SUBVERT THE CLAIMS PROCESS

While Defendant now asserts that it "seeks no affirmative recovery," it alleges that "any recovery from NatWest must be setoff or recouped by the much greater amounts owed NatWest." Am. Countercl. ¶ 17.  Regardless of whether Defendant is seeking monetary payment from the Trustee, by seeking a claim against the estate's right to recover customer property, Defendant is

seeking a claim to estate assets, despite never filing a claim or qualifying as a "customer" under SIPA. Not only does Defendant seek to assert a facially invalid claim, by alleging setoff and recoupment, it seeks to place itself at the top of the priority scheme for the BLMIS estate. As such, Defendant's Amended Counterclaims are an attempted end run around the Claims Procedures Order, which is the only way to assert a claim to estate assets in this SIPA liquidation proceeding.

Any claims to BLMIS estate assets must have been filed by July 2, 2009—the bar date established in the Claims Procedures Order and by SIPA § 78fff-2(a)(3). Courts have observed that the "time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory and absolute." *In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1243 (10th Cir. 1997); *see also, e.g.*, *In re First Interregional Equity Corp.*, 290 B.R. 265, 281 (Bankr. D.N.J. 2003); *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997). But Defendant did not file a claim with the Trustee before that date and cannot file one now. Defendant seeks to circumvent the bar date by asserting setoff and recoupment as counterclaims, but no matter how they are styled, and regardless of whether Defendant says it is seeking affirmative relief, they are still claims against the bankruptcy estate for estate assets. *See In re Iridium Operating LLC*, 285 B.R. 822, 830 (S.D.N.Y. 2002) (holding that counterclaim of setoff or recoupment invokes Bankruptcy Court's equitable powers as claims against estate); *In re N. Am. Energy Conservation, Inc.*, 2000 WL1514614, at *2 (S.D.N.Y. 2000) ("regardless of whether a setoff is labeled an 'affirmative defense' or a 'counterclaim,' a setoff is a claim against the bankruptcy estate"); *In re Com. Fin. Servs., Inc.* 251 B.R. 397 (Bankr. N.D. Okla. 2000) (holding that "assertion of setoff, whether as a defense or as a counterclaim, clearly invokes the claims allowance process"). Defendant's Amended Counterclaims are simply a disguise for an untimely claim—a violation of the Claims Procedure Order.

Moreover, Defendant's assertion of setoff and recoupment against the Madoff estate is at complete odds with SIPA's priority scheme. It is well established that "SIPA prioritizes net equity claims and incorporates its priority system into the fraudulent transfer rules by allowing the trustee to recover fraudulent transfers if the customer property is insufficient, and deeming the recoveries to be part of the customer property estate rather than the general estate." *SIPC v. BLMIS (In re Madoff Sec.)*, No. 08-01789 (SMB), 2016 WL 1695296, at *7 (Bankr. S.D.N.Y. Apr. 25, 2016) ("*Cohen*"). Defendant does not and cannot allege that it holds a net equity claim as an investor. Defendant did not directly invest in BLMIS, but rather through BLMIS's "feeder funds," and by definition, is not a "customer" under SIPA and cannot share in the fund of customer property collected by the Trustee. *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d at 426–28. Indeed, this Court has affirmed the Trustee's disallowance of claims of similarly situated claimants numerous times.[3] Unable to hold a net equity claim, Defendant now endeavors to recover its purported losses from its investments in Tremont and Harley by seeking setoff or recoupment against the Trustee's recovery of BLMIS customer property. Setoff and recoupment take on particular importance in the bankruptcy context, as they, in effect, elevate unsecured claims to secured status. *Com. Fin.*

---

[3] *See, e.g.*, Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests. *SIPC v. BLMIS*, No. 08-01789, in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Hamick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, and The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, and Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Black River Associates LP, MOT Family Investors LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and The Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016).

*Servs.*, 251 B.R. at 405 (treating setoff claim as a secured claim); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (allowing claimant to apply recoupment grants claimant "an unbargained-for position superior to a secured creditor"). Consequently, "the satisfaction of [Defendant's] non-net equity claims from the customer property estate would defeat the priority that SIPA intended customers to have against the separate and distinct customer property estate." *Cohen*, 2016 WL 1695296, at *8. This Court must not permit such a blatant violation of SIPA's priority scheme.

This Court has already rejected a similar attempt to jump the line in this BLMIS SIPA liquidation proceeding. In *Picard v. Lustig*, the Trustee sued the defendants for approximately $7 million in fictitious profits they withdrew from their BLMIS customer accounts. 568 B.R. 481, 484 (Bankr. S.D.N.Y. 2017). In their answer, the *Lustig* defendants asserted several affirmative defenses, including for equitable credits in the amount of the fictitious profits they invested with two BLMIS feeder funds, including Rye Broad Market, that were lost in the Ponzi scheme. *Id.* at 485. The Bankruptcy Court converted the Trustee's motion to strike these affirmative defenses to a motion for partial summary judgment and granted the Trustee relief, finding that the claims for credit were "inconsistent with express provisions of the Bankruptcy Code and SIPA which give the credit they seek to the entity that gave the value to the debtor." *Id.* at 487. In other words, the feeder funds that deposited the funds in their own customer accounts provided value to the debtor, not the *Lustig* defendants, and only those funds were entitled to credit for the deposits that the *Lustig* defendants sought. To hold otherwise would turn the Net Investment Method on its head, force "the BLMIS estate to give a second round of credits based on the same deposits," and take money out of the pockets of the net losers to give it to the defendants. *Id.* at 487–88.

Here, as was the case in *Lustig*, the Rye Funds and Harley provided value to BLMIS through deposits that Defendant is now "trying to conscript for [its] own benefit." *Id*. at 487. The credits given to the feeder funds on account of these deposits are not just theoretical; the Trustee has already distributed cash to the Rye Funds. The court-approved settlement between Tremont and the Trustee approved the Rye Funds' customer claims in the collective amount of over $2.1 billion. *See* Order Approving Settlement, *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. No. 10-05310 (BRL), (Bankr. S.D.N.Y. Sept. 22, 2011), ECF No. 38. If Defendant has any claim to return of funds, it is from the Rye Funds and Harley, <u>not</u> BLMIS or the Trustee. In fact, Defendant already pursued this remedy against the Rye Funds by participating as a class member in the Tremont class action. *See* Joint Objection of Class Members to Mot. for Settlement, *In re Tremont Sec. Law, State Law and Ins. Litig.*, No. 1:08-cv-11117-TPG (S.D.N.Y. May 11, 2011), ECF No. 481. Thus far, eight distributions have been made from the Tremont Fund Distribution Account to the settling class members, including Defendant, who brought claims against the Tremont funds. *See* GCG, *In re Tremont Securities Law, State Law and Insurance Litigation*, http://tremontlitigationsettlements.com (last visited September 27, 2023).

Despite Defendant's appeals to equity, the Amended Counterclaims are a distinctly inequitable attempt to jump ahead of BLMIS customers who have not been fully satisfied and patiently await the regular pro rata distributions of customer property by the Trustee. And more, through its Amended Counterclaims, Defendant is also effectively seeking to collect twice over the other Tremont investors. *See Peskin v. Picard*, 413 B.R. 137, 145 (Bankr. S.D.N.Y. 2009) (denying attempt by claimants to bring suit against Trustee for declaratory relief on their claims, finding that suit "is unjust as it appears to be Plaintiffs' way to jump the line and obtain priority of their claims over the claims of other customers"). The Amended Counterclaims must be rejected.

III.    THE AMENDED COUNTERCLAIMS VIOLATE THE DISTRICT COURT'S
        STAY ORDERS AND THE BANKRUPTCY CODE'S AUTOMATIC STAY

Defendant's Amended Counterclaims against the BLMIS estate violate the District Court

Stay Orders and the Bankruptcy Code's automatic stay and must be dismissed.

The District Court Stay Orders prohibit any person or entity from interfering with any

assets or property owned, controlled, or in the possession of the BLMIS estate. Simply put,

Defendant's Amended Counterclaims circumvent these orders. As described above, despite

Defendant's claims of "no affirmative recovery," by pleading setoff and recoupment, Defendant

is, in effect, *asserting a claim against the BLMIS estate's right to recover from Defendant*, which

is itself property of the estate. *See* 11 U.S.C. § 541(a) (estate includes all legal and equitable

interests of debtor as at commencement of case, as well as interests in property that estate acquires

after commencement of case). Thus, the Amended Counterclaims constitute an attempt to interfere

with assets of the BLMIS estate and must be dismissed. *See Sec. Inv. Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC*, 443 B.R. 295, 315 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Bernard L.

Madoff Inv. Sec. LLC*, No. 11 CV 2392 AKH, 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011)

(finding that certain third-party actions interfering with potential BLMIS estate assets violated "at

least one stay order of the District Court in connection with the related, ongoing SEC litigation").

The Amended Counterclaims also violate the Bankruptcy Code's automatic stay. Under

Bankruptcy Code Section 362(a)(3), the commencement of a SIPA liquidation proceeding operates

as an automatic stay of, *inter alia*, "any act to obtain possession of property of the estate or property

from the estate or to exercise control over property of the estate." The automatic stay "is one of

the most fundamental bankruptcy protections and applies broadly to 'give[] the debtor a breathing

spell' and to prevent creditors from 'obtain[ing] payment of the[ir] claims in preference to and to

the detriment of other creditors.'" *In re Madoff*, 848 F. Supp. 2d 469, 478–79 (S.D.N.Y. 2012)

(quoting H.R. Rep. No. 95–595, at 340 (1977); S. Rep. No. 95–989, at 49 (1978)). The Amended Counterclaims are an action "to obtain possession of property of the estate" and therefore must be dismissed as violating the Bankruptcy Code's automatic stay.

The Trustee acknowledges that there are bankruptcy and district court cases within this Circuit holding that the Bankruptcy Code's automatic stay does not apply to actions asserted against the debtor in the same bankruptcy proceeding as where the debtor's case is pending. *See, e.g.*, *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 940 (S.D.N.Y. 1991); *In re Bird*, 229 B.R. 90, 94–95 (Bankr. S.D.N.Y. 1999). However, this is not settled law. Several courts outside this Circuit have dismissed claims against a debtor brought in the bankruptcy forum that were filed without obtaining relief from the automatic stay under Bankruptcy Code Section 362(d). *See, e.g.*, *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 296 (5th Cir. 2022) (upholding finding of bankruptcy court that adversary proceeding commenced against debtor violated confirmation order preserving automatic stay because it undermined "orderly liquidation [and] administration of the estate."); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 627 B.R. 916, 921–22 (Bankr. D.N.M. 2021) (creditor suit against debtor in bankruptcy court on pre-petition claim violated automatic stay); *In re Continentalafa Dispensing Co.*, 403 B.R. 653, 658–59 (Bankr. E.D. Mo. 2009) (applying automatic stay to action against debtor in bankruptcy court for pre-petition wages); *In re Coastal Grp., Inc.*, 100 B.R. 177, 178 (Bankr. D. Del. 1989) (pre-petition breach of contract claim brought as adversary proceeding subject to automatic stay); *In re Lessig Constr., Inc.*, 67 B.R. 436, 443–44 (Bankr. E.D. Pa. 1986) (assertion of setoff counterclaim against debtor in adversary proceeding violated automatic stay). Consistent with the plain language of Bankruptcy Code Section 362(a), which stays actions against the debtor regardless of forum, it would be "sheer nonsense" to allow a creditor to file an action in bankruptcy court that it would

14

be prohibited from filing in another court. *In re Roman Cath. Church*, 627 B.R. at 922 (citation omitted). In other words, permitting actions against the debtor within the bankruptcy court would effectively gut the automatic stay, and debtors would lose "one of the most fundamental bankruptcy protections." *In re Madoff*, 848 F. Supp. 2d at 478–79.

These decisions are particularly persuasive here: a SIPA liquidation proceeding that currently involves numerous separate actions. If this Court does not dismiss Defendant's Amended Counterclaims as violative of the automatic stay, it would signal "an open invitation" for any defendant in this SIPA liquidation proceeding "to commence any sort of adversary proceeding against [BLMIS]," rather than adhere to the claims administration process. *In re Penney*, 76 B.R. 160, 161 (Bankr. N.D. Cal. 1987); *see also In re Roman Cath. Church*, 627 B.R. at 922 ("Claims administration is far more efficient than allowing each creditor to sue the debtor in the bankruptcy case."). This could wreak havoc on the "orderly liquidation [and] administration of the [BLMIS] estate," *In re Cleveland*, 26 F.4th at 296, burden this court with unnecessary litigation, and should not be allowed.

## IV.   DEFENDANT FAILS TO PLAUSIBLY ALLEGE CLAIMS FOR SETOFF, RECOUPMENT, OR UNJUST ENRICHMENT OR ANY BASIS FOR RELIEF UNDER THE BANKRUPTCY CODE AND SIPA

Finally, notwithstanding the above fatal defects in Defendant's Amended Counterclaims, Defendant fails to plead the elements of setoff, recoupment, or unjust enrichment or any basis for relief under Bankruptcy Code Sections 502(h) and 553 and SIPA Section 78fff-2(b).

### A.    <u>Defendant Fails to State a Claim for Setoff</u>

In complete disregard of relevant bankruptcy law, Defendant claims it is entitled to setoff under § 553(a) of the Bankruptcy Code. Setoff allows debts due to and from the same persons in the same capacities to apply their mutual debts against each other, thus avoiding "the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)

(citation omitted).  The prerequisites of setoff are: "(1) the amount owed by the debtor must be a

prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the

debtor's claim against the creditor and the debt owed the creditor must be mutual."  *In re Lehman*

*Bros. Holdings*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009) (paraphrasing 11 U.S.C. § 553)

(citation omitted).  Notably, it is well established that "[w]here . . . a defendant with a pre-petition

claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of

a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee

as a transferee of a fraudulent conveyance does not constitute a pre-petition debt owed to the

debtor; rather it is a debt owed to the Trustee."  *In re Singh*, 434 B.R. 298, 308 (Bankr. E.D.N.Y.

2010); *see also Geron v. Schulman (In re Manshul Constr. Corp.)*, 97–CV–8851, 2000 WL

1228866, at *56 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers

there is no mutuality of obligations and thus no right to any set-off.").

    That is precisely the case here.  The CSAC alleges, and Defendant admits in its Answer,

that Defendant invested funds with Tremont and Harley under agreements it maintained with those

funds.  CSAC ¶¶ 2–12; Am. Answer ¶¶ 2–12.  Defendant received over $308 million in stolen

customer property back from Tremont and Harley, the subject of this proceeding.  CSAC ¶ 2.

Defendant claims that this recovery due to the Trustee must be set off by the greater amounts due

to Defendant under its agreements with Tremont and Harley.  However, to the extent Defendant

has any claims concerning the amounts it invested with Tremont and Harley that have not been

returned, they accrued pre-petition against those funds, whereas any liability for the fraudulent-

transfer claims is held by the Trustee as a post-petition obligation.  Therefore, as a matter of law,

mutuality does not exist and Defendant's setoff claim must fail.  *In re Try the World, Inc.,* Adv.

Pro. No. 20-01013 (JLG), 2023 WL 5537564, at *13 (Bankr. S.D.N.Y. Aug. 28, 2023) (dismissing

counterclaims for setoff when brought to offset liability for fraudulent transfer); *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 465–66 (Bankr. S.D.N.Y. 2007) (finding setoff improper because, while debtor's obligation to claimant stemmed from pre-petition debt, claimant's obligation to return preference payments was post-petition debt resulting from operation of Bankruptcy Code).

### B.    Defendant Fails to State a Claim for Recoupment

Defendant's claim for recoupment similarly fails on its face.  Recoupment is a common-law equitable principle which focuses on netting credit and debt that arise out of the same transaction. *Malinowski v. New York State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998).  The recoupment doctrine is narrowly construed.  *In re McMahon*, 129 F.3d 93, 97 (2d Cir. 1997).  It is limited to situations where "both debts . . . arise out of a *single integrated transaction* so that it would be *inequitable* for the debtor to enjoy the benefits of that transaction *without also meeting its obligations*." *Westinghouse*, 278 F.3d at 147 (emphasis added).  Even if both debts arise out of the same contract, recoupment is unavailable "[w]here the contract itself contemplates the business to be transacted as discrete and independent units." *Id.*  The Second Circuit requires more than a "'mere logical relationship' . . . to bring . . . mutual debts within the 'same transaction.'" *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*, 229 B.R. 301, 311 (Bankr. S.D.N.Y. 1999) (citation omitted).  In other words, "[w]hen the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts, they are not part of the same transaction." *In re Malinowski*, 156 F.3d at 134.

Here, Defendant does not have a claim for recoupment because no reciprocal obligations or debts exist on either the part of the Trustee or BLMIS under any of the relevant transactions, contracts, or facts.  *Westinghouse*, 278 F.3d at 147.  Defendant admits that it entered into

agreements with Tremont and Harley that cover the investments it seeks to recoup.  *See, e.g.*, Am. Countercl. ¶¶ 13–15.  BLMIS was not a party to those contracts or any contracts with Defendant. BLMIS had separate agreements with Tremont and Harley that covered its obligations to those funds.  While Defendant bandies about the term "single unified transaction," *e.g.* Am. Countercl. ¶ 8, it does not allege that the Trustee, BLMIS, or Defendant owed any obligations to each other or any other facts sufficient to treat these different transactions as integrated.  Nor can it.  Any right of recovery Defendant has lies against Tremont and Harley under the contracts those parties maintained with Defendant.  The Trustee's right to avoidance and recovery against Defendant does not arise under any of these contracts or their provisions, but "by operation of the fraudulent transfer laws," which precludes Defendant's recoupment claim.  *See In re Trace Int'l Holdings, Inc.*, 289 B.R. 548, 563 (Bankr. S.D.N.Y. 2003) (holding recoupment unavailable as remedy to fraudulent transfer action because it failed to meet same transaction requirement).

*Lustig* is again instructive.  In one of the defendants' affirmative defenses, they sought recoupment of the fictitious profits they reinvested in BLMIS feeder funds that were never returned to them.  *Lustig*, 568 B.R. at 485.  The court found that recoupment was not available to the defendants because the parties' claims arose from different transactions.  *Id*. at 490.  The Trustee's claims against the *Lustig* defendants arose from their withdrawal of fictitious profits from their BLMIS accounts, whereas their claim for recoupment credit was based on their investment in the feeder funds.  *Id*.  Similarly, here, the Trustee's claims against Defendant arise from subsequent transfers of stolen customer property it received through Tremont's and Harley's withdrawals from their BLMIS accounts, whereas Defendant's recoupment claim is based on its investments in those feeder funds.  *Lustig* is therefore dispositive, and Defendant's recoupment claim cannot stand.

### C.     Defendant Fails to State a Claim for Unjust Enrichment

To state a claim for unjust enrichment under New York law, Defendant must allege (1) that the Trustee was enriched, (2) at Defendant's expense, and (3) that it is against equity and good conscience to permit the Trustee to retain what Defendant seeks to recover. *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-CV, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022). "The 'essence' of [an unjust enrichment claim] 'is that one party has received money or a benefit at the expense of another.'" *In re Operations NY LLC.*, 490 B.R. 84, 99 (Bankr. S.D.N.Y. 2013) (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 685 N.Y.S. 2d 381, 382 (4th Dep't 1999)); *see Icebox-Scoops, Inc. v. Disney Enters., Inc.*, 520 F. App'x 3, 4 (2d Cir. 2013) (affirming dismissal of unjust enrichment claim where plaintiff "has not plausibly asserted that it had conferred a benefit to Disney that Disney unjustly retained").

As an initial matter, Defendant's claim fails because it expressly is not seeking any affirmative recovery from the BLMIS estate. "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain *what is sought to be recovered*." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (N.Y. 1972) (emphasis added). Here, Defendant expressly is not seeking restitution of any benefit conferred on the Trustee, and its unjust enrichment claim fails on that basis alone. *See, e.g., adidas Am., Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 221–22 (S.D.N.Y. 2022) (concluding that defendant "has not plausibly asserted a viable claim or defense of unjust enrichment" where defendant "does not seek restitution of any benefit conferred").

Even if this Court were to construe Defendant's unjust enrichment claim as seeking restitution, Defendant also fails to allege facts that it conferred any benefit to the Trustee or the BLMIS estate. Defendant's conclusory allegations that "[t]he BLMIS estate was enriched by the money NatWest invested with BLMIS . . . at NatWest's expense," is belied by its factual

allegations that it invested "in Tremont and Harley" and that "many of these investments . . . remained unredeemed." Am. Countercl. ¶¶ 2, 15. By Defendant's own admission, Defendant provided value to Tremont and Harley, *not* to the Trustee or BLMIS, and then those funds, *not* Defendant, provided value to BLMIS. *Id.* Again, if at all, Defendant should have brought its Amended Counterclaims against Tremont and Harley, the parties who received the benefit from Defendant.

Defendant also fails to plead that the Trustee or the BLMIS estate *unjustly* retained any benefit conferred by Defendant. Defendant claims that it would be inequitable for Madoff and BLMIS to enjoy the benefit Defendant provided without compensating Defendant. *Id.* ¶ 18. However, Defendant's Amended Counterclaims ignore the special features of bankruptcy. In the typical non-bankruptcy case, an unjust enrichment claim is intended to prevent a party from retaining a benefit that would be against equity and good conscience to retain. The bankruptcy context is fundamentally different. "The trustee marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 218 (2d Cir. 2004). As such, there is no unjust enrichment where the trustee's "conduct is fully consistent with—and indeed, required by—the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets." *Id.* at 216; *see also Kusch v. Mishkin*, 95-cv-08203, 1998 WL 551972, at *17 (Bankr. S.D.N.Y. Aug. 24, 1998) ("[T]he trustee's duty to the SIPA estate as a whole clearly prevails over the interests of any single customer.").

Applying these principles, the Second Circuit in *First Central* rejected an attempt to impose a constructive trust (in which unjust enrichment is the key element) on a federal tax refund that the trustee received from the IRS and held as property of the debtor, although the debtor had agreed

to allocate the refund with another company. 377 F.3d at 211. In reaching its conclusion, the Court observed, "[t]he chief purposes of the bankruptcy laws are 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' 'to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,' and 'to protect the creditors from one another.'" *Id*. at 217 (citation omitted). The Court explained that imposing a constructive trust would create "a separate allocation mechanism outside the scope of the bankruptcy system" that would "wreak . . . havoc with the priority system ordained by the Bankruptcy Code." *Id*. (citation omitted); *see also In re Ades & Berg Grp. Invs.*, 550 F.3d 240, 245 (2d Cir. 2008) (upholding "reasoning in *First Central*, [that] retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust").

*First Central* and *Ades & Berg* are dispositive here. The Amended Counterclaims are based on the Trustee's exercise of his statutory obligations under SIPA and the Bankruptcy Code to marshal and preserve assets of the BLMIS estate through avoidance and recovery actions against subsequent transferees. There is nothing unjust about the Trustee marshalling and preserving the assets of the estate. Instead, permitting Defendant's unjust enrichment claim to proceed would create separate allocation methods similar to those the Second Circuit rejected in *First Central* and *Ades & Berg*.

Accordingly, Defendant's Amended Counterclaims must be dismissed "[b]ecause the Trustee does not hold property under such circumstances that in equity and good conscience he ought not to retain it." *First Cent.*, 377 F.3d at 218 (internal quotation marks and citation omitted).

### D.    Defendant Fails to Cite a Legal Basis for Relief Under the Bankruptcy Code or SIPA

In addition to invoking Section 553(a), Defendant alleges that the Amended Counterclaims fall under Section 502(h) and SIPA Section 78fff-2(b).  But neither of these provisions provide a basis for relief.  Section 502(h) provides that a creditor *may* eventually have a claim against the estate arising from a trustee's recovery of estate property held by the creditor.  However, Defendant has not repaid the amount it owes to the estate.  *See In re Best Prods. Co., Inc*., 168 B.R. 35, 58 (Bankr. S.D.N.Y. 1994) (finding that, to extent lenders gave consideration to debtor, they would have allowable claim so long as they satisfied judgment arising out of fraudulent transfer action).  A passing reference to SIPA § 78fff-2(b) merely contains the provisions of a SIPA liquidation proceeding.  Neither these nor any other sections of the Bankruptcy Code or SIPA provide authority for Defendant's Amended Counterclaims.

### CONCLUSION

For the reasons stated above, Defendant's Amended Counterclaims should be dismissed in their entirety.

Dated:   September 27, 2023        */s/ Patrick T. Campbell*
       New York, New York        **Baker & Hostetler LLP**
                        45 Rockefeller Plaza
                        New York, New York 10111
                        Telephone: (212) 589-4200
                        Facsimile: (212) 589-4201
                        David J. Sheehan
                        Email: dsheehan@bakerlaw.com
                        Patrick T. Campbell
                        Email: pcampbell@bakerlaw.com
                        Camille C. Bent
                        Email: cbent@bakerlaw.com
                        Elizabeth G. McCurrach
                        Email: emccurach@bakerlaw.com
                        J'Naia L. Boyd
                        Email: jlboyd@bakerlaw.com

                        *Attorneys for Irving H. Picard, as*
                        *Trustee for the Substantively Consolidated*
                        *SIPA Liquidation of Bernard L. Madoff*
                        *Investment Securities LLC and the Chapter 7*
                        *Estate of Bernard L. Madoff*