| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **FOR PUBLICATION** |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>v.<br><br>ABN AMRO Bank N.V. (presently known as NATWEST MARKETS N.V.)<br><br>               Defendant. | Lead Adv. Pro. No. 10-05354 (CGM) |

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO AMEND THE AFFIRMATIVE DEFENSES**

**A P P E A R A N C E S :**

*Attorneys for the Defendant, ABN AMRO Bank N.V. (presently known as NatWest Markets, N.V.)*
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
750 Third Avenue, Suite 2400
New York, NY 10017
By:    Michael S. Feldberg

*Attorneys for Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Patrick T. Campbell
       David J. Sheehan
       Camille C. Bent
       Elizabeth G. McCurrach
       J'Naia L. Boyd

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of the defendant, ABN AMRO Bank N.V., presently known as NatWest Markets N.V., ( "Defendant" or "NatWest") to amend the answer. Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") opposes the motion with respect to amendments made to the thirty-first and forty-second affirmative defenses, which concern setoff, recoupment, and unjust enrichment. For the reasons set forth herein, the motion to amend is granted in part and denied in part.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.

## Background

This proceeding was commenced on December 8, 2010. (Compl., ECF[1] No. 1). On March 22, 2022, Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") filed the Consolidated Second Amended Complaint (the "Amended Complaint") against the Defendant, ABN AMRO Bank N.V., presently known as NatWest Markets N.V. (Am. Compl., ECF No. 220). Defendant was a Dutch financial institution that maintained offices in the United States. (*Id.* ¶ 31).

Adversary Cases 10-05354 and 11-02760 were consolidated by stipulation and order of this Court on April 20, 2022. (Consolidation Order, ECF No. 222). The Court found that consolidating the Trustee's actions against the Defendant for claims related to its involvement with two separate investment funds would "promote judicial economy and efficiency because they involve the same parties, substantial factual overlap, claims and requests for relief that arise from the same provisions of the Bankruptcy Code and Securities Investors Protection Act, and common issues of law and fact." (*Id.*). All papers are filed in Adversary Proceeding No. 10-05354.

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 10-05354-cgm.

Via the Amended Complaint, The Trustee, "seeks to recover at least $308,113,826 that Defendant received as subsequent transfers of BLMIS customer property" from various investment funds. (Am. Compl. ¶ 2). Of that amount, $286,313,906 was received from four funds managed by Tremont Group Holdings, Inc. and its management arm, Tremont Partners, Inc. (collectively, "Tremont"). (*Id.* ¶ 3). The remaining $21,799,920 is alleged to have been received from a fund managed by Harley International (Cayman) Ltd. ("Harley"). (*Id.* ¶ 12).

According to the Amended Complaint, Defendant was familiar with BLMIS and its various feeder funds. (*Id.* ¶ 35) (alleging that various high-ranking employees of Defendant who "cultivated ABN AMRO's relationship with BLMIS feeder funds remained employed" with the Defendant's parent company following the acquisition of Defendant by The Royal Bank of Scotland Group plc ). Defendant negotiated terms with Rye Portfolio Limited that allowed it to terminate the agreement should BLMIS stop managing Rye Portfolio Limited's accounts or should BLMIS become the focus of U.S. investigators. (*Id.* ¶¶ 60, 62). The Amended Complaint alleges that Defendant invested with Harley for the same purpose of gaining access to BLMIS. (*Id.* ¶ 64) ("Defendant knew that Harley invested all of its assets with BLMIS in New York and that BLMIS would use the SSC Strategy.").

The Amended Complaint alleges that Tremont managed and controlled numerous feeder funds, including Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited"), Rye Select Broad Market Fund L.P. ("Rye Broad Market" and, with Rye Portfolio Limited, the "Rye Funds"), Rye Select Broad Market Insurance Portfolio LDC ("Rye Insurance"), Rye Select Broad Market Prime Fund, L.P. ("Rye Prime Fund"). (*Id.* ¶¶ 4, 8, 10). The Rye Funds invested "all or substantially all of their assets with BLMIS's investment advisory business." (*Id.* ¶ 49). "Harley invested all of its assets with BLMIS in New York." (*Id.* ¶ 64).

The Rye Funds and Harley are considered "feeder funds" of BLMIS because the intention of the funds was to invest in BLMIS. (*Id.* ¶¶ 4, 8, 10, 12–14, 39). Madoff was able to sustain his Ponzi scheme due to the investment from these feeder funds and from entities like Defendant who sought out feeder funds with an "appetite for 'Madoff risk.'" (*Id.* ¶¶ 13–14).

Tremont further managed and controlled indirect feeder funds, including Rye Select Broad Market XL Portfolio, Ltd. ("Rye XL Portfolio"), and Rye Select Broad Market XL Fund L.P. ("Rye Broad Market XL") (collectively, the "XL Funds"). (*Id.* ¶¶ 5, 40, 110). The XL Funds did not have direct BLMIS accounts. (*Id.* ¶ 5). Instead, they would indirectly feed into BLMIS by providing investors with returns linked to the performance of BLMIS and by providing entities, like Defendant, with collateral, which was invested directly with BLMIS. (*Id.* ¶¶ 5–6).

Swaps and Hedges

The subsequent transfers at issue originated from multiple sets of investments the Defendant made in 2006 to 2008. These investments were comprised of a total return swap agreement ("Swap Agreement") with an XL Fund[2] and a subsequent investment with a Rye Fund or Harley, which hedged the Defendant's risk under the Swap Agreement. (*Id.* ¶¶ 6–12).

Under each of the Swap Agreements, Defendant received cash collateral and earned fees from one of the XL Funds. (*Id.* ¶ 6). In exchange, the agreement required the Defendant to provide the XL Fund with returns from a hypothetical investment with a Rye Fund equal to "three times the amount of collateral the XL Funds provided to Defendant." (*Id.* ¶¶ 6, 40). Defendant was not obligated to invest any amount with the Rye Funds but was expected to do so. (*Id.* ¶ 41). These Swap Agreements earned Defendant millions of dollars in fees. (*Id.* ¶¶ 6, 12).

---

[2] In the case of the Defendant's 2008 agreement with Harley, the Amended Complaint identifies an unspecified "counterparty." (*Id.* ¶ 12).

As was expected, Defendant hedged its risks under the Swap Agreements by actually investing in Rye Funds. (*Id.* ¶ 7). Through these hedges, the Defendant ultimately redeemed millions of dollars of BLMIS customer property. (*Id.* ¶¶ 9, 11–12).

In 2006, under the first Swap Agreement, Defendant received at least $217 million in collateral from Rye XL Portfolio. (*Id.* ¶ 8). Of this, $84,616,573 was comprised of BLMIS customer property that Rye XL Portfolio received from Rye Portfolio Limited and Rye Insurance LDC. (*Id.* ¶¶ 8, 199–202.).

The Defendant then hedged this 2006 swap agreement by "investing three times the collateral value it received from XL Portfolio Limited in Rye Portfolio Limited." (*Id.* ¶ 9). The Defendant ultimately redeemed $104,464,000 from Rye Portfolio Limited, "which Rye Portfolio Limited satisfied by withdrawing funds from its BLMIS customer account." (*Id.*). These redemptions were comprised of BLMIS customer property. (*Id.*).

In 2007, under a second Swap Agreement, Defendant received $95,833,333 in customer property as collateral payment from Rye Broad Market XL. (*Id.* ¶ 10). These payments originated from transfers BLMIS made to Rye Prime Fund and Rye Broad Market, which in turn transferred the funds to Rye Broad Market XL. (*Id.*).

The Defendant again hedged this Swap Agreement by investing "three times the collateral value it received from XL Broad Market in Rye Broad Market." (*Id.* ¶ 11). The Defendant later redeemed $1,400,000 from Rye Broad Market, "which Rye Broad Market satisfied by withdrawing funds from its BLMIS customer account." (*Id.*). These redemptions were comprised of BLMIS customer property. (*Id.*).

In 2008, the Defendant entered into a Swap Agreement with an unspecified counterparty. (*Id.* ¶ 12.). This Swap earned Defendant fees and interest in exchange for the future performance

of a 3.7 times levered exposure to Harley. (*Id.*). Defendant hedged this Swap by investing with Harley. (*Id.*). It eventually redeemed $21,799,920 from Harley, which satisfied the redemptions by withdrawing funds from its customer account with BLMIS. (*Id.*).

The Amended Complaint contains five counts, each seeking to recover from the Defendant subsequent transfers of BLMIS customer property. (*Id.* ¶¶ 220–39). This Court heard Defendant's motion to dismiss the Trustee's complaint on December 14, 2022. The Court entered an order denying the Defendant's motion to dismiss on March 15, 2023. (Order, ECF No. 266).

The Defendant filed its answer to the Amended Complaint on May 15, 2023. (Answer, ECF No. 268). The Defendant's answer included thirty-four affirmative defenses and two counterclaims against the Trustee for unjust enrichment. (*Id.*). The Trustee filed a motion to dismiss the Defendant's counterclaims on July 17, 2023. (Mot. to Dismiss Countercls., ECF No. 271). That motion is scheduled to be heard on November 16, 2023. (Am. Notice, ECF No. 290).

Pursuant to the May 31, 2023, stipulation and order entered by this Court, the Defendant "shall file its opposition to the Trustee's motion to dismiss or amend its Counterclaims by or on August 24, 2023." (Stip. and Order, ECF No. 270). Defendant filed an amended answer with amended counterclaims along with the motion to amend its answer and counterclaims on August 24, 2023. (Am. Answer, ECF No. 276); (Motion to Amend, ECF No. 278). Defendant states that it "sought the Trustee's consent to simultaneous amendments to NatWest's Affirmative Defenses, but the Trustee declined to consent, requiring NatWest to seek the Court's leave." (Mem. L. 1–2, ECF No. 279). The Defendant moves for leave to amend, arguing that there is no prejudice to the Trustee from amending its answer at this stage. (*Id.*).

Page **7** of **19**

The Trustee filed opposition, arguing that he "seeks only to oppose Defendant's proposed amendments to its Thirty-First Affirmative Defense and new Forty-Second Affirmative Defense." (Opp'n 5–6, ECF No. 282). The Trustee moves in the alternative to hold the proposed amendments in abeyance until the Court resolves the Trustee's forthcoming motion to dismiss the amended counterclaims. (*Id.*). The Court heard arguments on September 20, 2023. (Hr'g Tr., Sept. 20, 2023, ECF No. 292).

## Discussion

**Rule 15(a)(2)**

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that, more than 21 days after serving a pleading or a required responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

The rule in the second circuit "has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am.*, N.A., 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). An amendment "may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Id.* 725–26 (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28-29 (2d Cir. 1995) (quoting *John Hancock*

*Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). There can be no colorable claim of delay where a party has moved to amend immediately after an opposing party "filed their motion to dismiss, and this case has not progressed since the motions have been filed." *Guan v. Lash Princess 56 Inc.*, 2023 U.S. Dist. LEXIS 32447, at *15 (S.D.N.Y. Feb. 27, 2023) ("There has been no discovery in this case, and in the lifecycle of a lawsuit, this case is in its infancy").

The Defendant moved to amend its counterclaims and affirmative defenses one month and one week after the Trustee filed its motion to dismiss. Between July 17 and August 24, the only activity in this case was the entry of a case management plan, which set a December 2025 cut-off date for all fact discovery. (Case Mgmt. Pl., ECF No. 274); (*see also* Hr'g Tr. 50:1-11, Sept. 20, 2023, ECF No. 292). The parties have reportedly exchanged initial disclosures two days before the hearing on the instant motion. (*Id.* 50:20–22) ("The parties just exchanged initial disclosures this past Monday. No deposition has been taken. We're early on in the case."). The Court does not see any bad faith, undue prejudice, or delay in the timing of the Defendant's motion.

As noted by the Defendant, August 24, 2023, was already agreed on by the parties as the date by which the Defendant would move to amend its counterclaims. (Stip. And Order, ECF No. 270) ("Defendant shall file its opposition to the Trustee's motion to dismiss or amend its Counterclaims by or on August 24, 2023."). The Court entered this order in May. The Court will not now prevent the Defendant from acting in accordance with that order. Defendant may amend its counterclaims.

The Trustee opposes two amended affirmative defenses, arguing that "those proposed amendments are such affronts to the Bankruptcy Code and an orderly BLMIS SIPA liquidation

proceeding that they should be denied now so the Trustee and the Bankruptcy Court do not have to needlessly expend additional resources litigating them in subsequent phases of this case." (Opp'n 6, ECF No. 282).

The Court will deny a motion to amend where "the proposed amendments are futile." *See, e.g., Canon Inc. v. Tesseron Ltd.*, No. 14-cv-5462 (DLC), 2015 WL 4508334, at *2–3 (S.D.N.Y. July 24, 2015). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir.1991). "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 227 (2d Cir. 2018) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014))

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual

allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

The Trustee opposes the Defendant's amendment to the thirty-first and forty-second defenses. The amended affirmative defenses allege that the Defendant is entitled the affirmative defenses of setoff, recoupment, and unjust enrichment. (Am. Answer, ECF No. 276).

**Setoff**

The Bankruptcy Code "does not establish an independent right of setoff, but section 553 does preserve any right of setoff that may exist under applicable non-bankruptcy law." *In re Lehman Brothers Holdings Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y.2010) (citing *Official Comm. of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group)*, 146 F.3d 136, 138–39 (2d Cir.1998), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011)); see also *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (explaining that "[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy"). To be eligible for setoff under § 553, "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual." *In re Lehman Bros. Holdings, Inc.*, 433 B.R.at 107.

The "right of setoff refers to a situation where two parties have mutual claims against and debts owing to each other." *In re Delta Air Lines*, 359 B.R. 454, 465 (Bankr. S.D.N.Y. 2006). The claims and debts can arise from unrelated transactions events "so long as the claims and

debts are mutual as between the two parties." *Id.* (citing *Meyer Medical Physicians Group, Ltd. v. Health Care Service Corp. (In re Meyer Medical Physicians Group, Ltd.)*, 385 F.3d 1039, 1042 (7th Cir. 2004).

> Although the Bankruptcy Code does not define[] 'mutuality,' a majority of courts to consider the issue have held . . . debts are mutual only if they are due to and from the same persons in the same capacity. It is also widely accepted that "mutuality is strictly construed against the party seeking setoff. The effect of this narrow construction is that "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally."

*In re Am. Home Mortg., Holdings, Inc.*, 501 B.R. 44, 56 (Bankr. D. Del. 2013) (cleaned up). "It is well established that a party will be unable to assert a setoff where the party is being sued for fraudulent transfers. This is because where the party seeking to set off is being sued for fraudulent transfer, there is no mutuality of obligations, which is required under Code Section 553(a)." *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 355 F.Supp.2d 722, 727 (S.D.N.Y. 2005)). "Put another way, in the context of a setoff, there is no mutuality where a defendant attempts to set off its fraudulent-transfer liability with an ordinary prepetition claim that arises out of a different transaction because they are not in the same right and between the same parties, standing in the same capacity." *Pereira v. Urthbox Inc. (In re: Try the World, Inc.)*, No. 18-11764 (JLG), 2023 WL 5537564, at *13 (Bankr. S.D.N.Y. Aug. 28, 2023) (cleaned up). The "claims are not in the same right and between the same parties, standing in the same capacity" where the claims underlying the purported right to setoff accrued prepetition and the "liability for the fraudulent-transfer claim is held by the Trustee as a post-petition obligation." *Id.*

The Amended Complaint alleges that Defendant invested in certain Tremont-controlled funds prepetition. (Am. Compl. ¶¶ 2–12, ECF No. 220); (*see also* Am. Answer ¶¶ 2–12, ECF

No. 276). The Defendant allegedly received over $308 million in subsequent transfers of BLMIS customer property. (Am. Compl. ¶ 2). As the Trustee stated at oral arguments, "here [is] what's undisputed is to the extent NatWest believes it has a claim in this case, it arose before the bankruptcy action. It's prepetition." (Hr'g Tr. 59:13–15, Sept. 20, 2023, ECF No. 292).

There is no mutuality between the post-petition obligation for liability to the Trustee on account of the transfers and the prepetition claims as they are not in the same right and between the same parties, standing in the same capacity. Defendant's defense of setoff is futile. The Court will deny the Defendant's motion to amend the affirmative defenses in so far as it seeks to add a defense of setoff.

**Recoupment**

The Trustee argues that the Defendant's claims for recoupment fail as a matter of law, as the answer fails to allege that there existed any "single unified transaction" involved in the Swap Agreements. (Opp'n 9–10, ECF No. 282). The Trustee argues that under no reading of the facts can the Defendant show that "the Trustee, BLMIS, or Defendant owed any obligations to each other under any of these contracts or any set of facts." (*Id.* 10)

The "pertinent distinction between a setoff and a recoupment is whether the debt owed the creditor . . . arose out of the same transaction as the debt the creditor owes the debtor. *In re Delta Air Lines*, 359 B.R. 454, 465 (Bankr. S.D.N.Y. 2006) (quoting *Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.)*, 372 F.3d 1, 3 (1st Cir. 2004)). Recoupment is a "defense that springs from the common law." *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.),* 229 B.R. 301, 311 (Bankr. S.D.N.Y. 1999); *New York State Elec. and Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 95 (2d Cir. 1997) ("While the Bankruptcy Code does not mention recoupment explicitly, bankruptcy law does

recognize the recoupment doctrine."). Recoupment "permits a transaction which is the subject of a suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." 229 B.R. at 311 (quoting *Malinowski v. New York State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998)). Recoupment rights "are determined by nonbankruptcy law, which ordinarily is state law." *In re Ditech Holding Corp.*, 606 B.R. 544, 597 (Bankr. S.D.N.Y. 2019) (quoting *In re McMahon*, 129 F.3d at 96).

"The doctrine of recoupment in bankruptcy is narrowly construed." *Pereira v. Equitable Life Ins. Soc'y of the U.S. (In re Trace Int'l Holdings, Inc.)*, 289 B.R. 548, 562 (Bankr. S.D.N.Y. 2003). The doctrine is limited to situations in which "both debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *In re Malinowski*, 156 F.3d at 133 (quoting *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992)). For there to be a single transaction, the "parties' claims against each other must 'result from a set of reciprocal contractual obligations or from the same set of facts.'" *In re Trace Int'l Holdings, Inc.*, 289 B.R. at 562 (quoting *In re Malinowski*, 156 F.3d at 134). "Where the contract itself contemplates that the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment." *Malinowski*, 156 F.3d at 135.

To determine whether the "claim arises from the 'same transaction,' the Court must examine the equities of the case." *In re Adamic*, 291 B.R. 175, 182 (Bankr. D. Colo. 2003) (citing *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 960 (10th Cir. 1996)) "Moreover, in light of the equitable nature of the recoupment remedy, the facts in the particular case are important." *In re Malinowski*, 156 F.3d at 135.

The Trustee relies on *Picard v. Lustig (In re BLMIS)*, 568 B.R. 481 (Bankr. S.D.N.Y. 2017), to argue that the Court has "already struck an affirmative defense for recoupment that was based on similar allegations." (Opp'n. 10, ECF No. 282). The Court stated in *Lustig* that "at the Court's suggestion, the parties agreed to treat the motion [to strike affirmative defenses] as one for partial summary judgment dismissing these defenses." *Lustig*, 568 B.R. at 487. The Court did strike the defendant's affirmative defense for recoupment in that case. The standard here is different. The *Lustig* decision, decided under a summary judgment standard, weighs in favor of allowing the Defendant to amend its affirmative defense at this early stage of the case.

The District Court reviewed similar series of swaps and hedges between Tremont-controlled funds and similarly situated defendants and found that "the only plausible inference to be drawn from the complaints is that this was an integrated series of transactions with the ultimate objective of investing in the swap agreements." *Picard v. ABN AMRO (Ireland) Ltd. (In re BLMIS)*, 505 B.R. 135, 147 (S.D.N.Y. 2013). While the "chain leading from the withdrawals from Madoff Securities to the collateral payments is somewhat more complicated" under this arrangement, that does not mean that the Court can determine as a matter of law that there was no integrated series of transactions. *Id*.

The Court will allow Defendant to amend the affirmative defenses in so far as they include recoupment. Whether or not the facts and equities weigh in favor of recoupment is a matter better left to a later stage of the proceeding.

**Unjust Enrichment**

The Trustee argues that the Defendant's amendment to the forty-second affirmative defense to include assertions of unjust enrichment fails as a matter of law. (Opp'n 11, ECF No. 282).

The "essence "of a claim for unjust enrichment "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906, 685 N.Y.S.2d 381 (N.Y. App. Div. 4th Dep't 1999)). A claim for unjust enrichment is "based on . . . equitable principles that a person shall not be allowed to enrich himself unjustly at expense of another." *Waldman v. Englishtown Sportswear. Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552, 556 (App. Div. 1st Dep't 1983). To state a claim for unjust enrichment under New York law, a plaintiff must plead "that [1] the defendant was enriched [2] at the plaintiff's expense and [3] that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Moshik Nadav Typography LLC v. Banana Republic, LLC*, No. 20-CV-8325, 2021 WL 2403724, at *2 (S.D.N.Y. June 10, 2021) (citing *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009)).

Unjust enrichment "typically appears as a claim, not a defense. *adidas Am., Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 221–22 (S.D.N.Y. 2022), *R. & R. adopted by* No. 21-CV-5615 (JSR), 2022 WL 10668978 (S.D.N.Y. Oct. 18, 2022). There is "no authority recognizing unjust enrichment as an affirmative defense." *EmCyte Corp. v. XLMedica, Inc.*, No. 2:19-CV-769-JES-NPM, 2022 WL 20287967, at *2 (M.D. Fla. Nov. 23, 2022) ("Unjust enrichment is a theory of recovery."); *compare Warrior Ins. Grp., Inc. v. Insureon.com, Inc.*, No. 00 C 3619, 2000 WL 1898867, at *1 (N.D. Ill. Dec. 29, 2000) (agreeing with plaintiff that unjust enrichment is not an affirmative defense), with *1 Garage Door Serv., L.L.C. v. West*, No. 21-CV-01821-PAB-NRN, 2022 WL 952874, at *5 (D. Colo. Mar. 30, 2022) ("Plaintiff, however, does not cite to any in-district authority, perhaps because courts in this district are reluctant to strike affirmative defenses, including for unjust enrichment.").

The Court agrees with the Trustee that the amended affirmative defense for unjust enrichment fails as a matter of law when brought as an affirmative defense.

The Trustee further argues that "Defendant does not allege that the Trustee unjustly retained any benefit conferred by Defendant." (Opp'n 12, ECF No. 282). The Court may dismiss a claim for unjust enrichment where the party alleges "little more than the general notion that [a defendant] unjustly received benefits." *In re Hydrogen, L.L.C.*, 431 B.R. 337, 360 (Bankr. S.D.N.Y. 2010) (quoting *Pawaroo v. Countrywide Bank*, No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010)).

Within the context of bankruptcy, there are "special considerations" with allegations of unjust enrichment. *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217 (2d Cir. 2004). By allowing a claim for unjust enrichment, thereby "creating a separate allocation mechanism outside the scope of the bankruptcy system, the constructive trust doctrine can wreak . . . havoc with the priority system ordained by the Bankruptcy Code." *Id.* (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)) (cleaned up). "[C]onstructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, and not from the offending debtor." *In re Commodore Bus. Machs., Inc.*, 180 B.R. 72, 83 (Bankr. S.D.N.Y. 1995) (quoting *In re North Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575–77 (9th Cir. 1985)) (cleaned up). The "goals of the Bankruptcy Code can be frustrated by the imposition of a constructive trust," and "bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." *In re Matamoros*, 605 B.R. 600, 608 (Bankr. S.D.N.Y. 2019) (quoting *In re First Cent. Fin. Corp.*, 377 F.3d at 217) (internal quotation marks omitted).

The Court of Appeals for the Second Circuit has explained that the "reasoning of *First Central* is dispositive as to [a claim for] unjust enrichment." *Ades & Berg Grp. Invs. v. Breeden (In re Ades & Berg Grp. Invs.)*, 550 F.3d 240, 245 (2d Cir. 2008).

> The New York Court of Appeals has explained that "equity and good conscience" are "the fundamental requirement[s] for imposition of a constructive trust." *In re N.Y. Agency of Bank of Commerce & Credit Int'l S.A.*, 90 N.Y.2d 410, 424, 660 N.Y.S.2d 850, 683 N.E.2d 756 (1997). Consistent with our reasoning in *First Central*, retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust. First Cent., 377 F.3d at 218. . . . Equity and good conscience do not demand the creation of a constructive trust in this instance, and, accordingly, we decline to impose one.

*Id.* The Court of Appeals found that the flaws in these claims could not be cured by repleading. *Id.*

There is nothing inequitable, in bad conscience, or unjust in allowing the Trustee to proceed in marshalling and preserving the assets of the estate. The Defendant has not presented a substantial reason to do so and risk disrupting the priority system ordained by the Bankruptcy Code. The Court will not allow the Defendant to amend the affirmative defenses in so far as they seek to add a defense of unjust enrichment.

### Conclusion

For the foregoing reasons, Defendant's motion to amend is denied with respect to claims for setoff and unjust enrichment in the thirty-first and forty-second affirmative defenses. The motion to amend is granted as to all other amendments. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: October 4, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**