# Freshfields Bruckhaus Deringer US LLP

**BY ECF**

The Honorable Cecelia G. Morris
United States Bankruptcy Court
Poughkeepsie Chambers
355 Main Street
Poughkeepsie, NY 12601-3315

**DAVID Y. LIVSHIZ**
601 Lexington Avenue
31st Floor
New York, NY  10022
Tel +1 212 284 4979
Fax +1 646 521 5779
david.livshiz@freshfields.com

October 5, 2023

Re:   *Picard v. Natixis S.A. and Tensyr Ltd.*, No 10-05353

Dear Judge Morris:

We represent Tensyr Limited ("Tensyr") in the above-captioned litigation.  We write in advance of oral argument on Tensyr's motion to dismiss, scheduled for October 18, 2023, to bring to the Court's attention the recent decision in *Picard v. Public Institution for Social Security*, Adv. Pro. 12-ap-1002 (Sept. 20, 2023) (filed as ECF No. 23589 on Dkt. 08-01789), which we intend to refer to at oral argument.

By way of background, in its papers Tensyr explained that the Trustee has failed to show any jurisdictionally-relevant connection between New York and Tensyr's alleged transfers from Fairfield Sentry.  Accepting the Trustee's own allegations as true, it is implausible (if not impossible) that the transfers Tensyr allegedly received from Fairfield Sentry originated from BLMIS in New York.  *See* Opening Brief at 12–13; Reply at 7–8.  This is so because the alleged subsequent transfers made to Tensyr occurred months—in one case, more than a year—after Fairfield Sentry received *any* transfer from BLMIS, and in the intervening period, Fairfield Sentry allegedly transferred hundreds of millions of dollars *more* to other defendants than it received in any transfer from BLMIS.  *See* Opening Brief at 12–13, 33–34; Reply at 7–8.  These facts pleaded by the Trustee demonstrate that Tensyr did *not* receive BLMIS funds and so defeat any inference that the Trustee has made a "prima facie showing . . . with respect to [each] subsequent transfer" that those alleged transfers had a "substantial connection" to New York.  *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 189–90 (Bankr. S.D.N.Y. 2018).

*Picard v. Public Institution for Social Security* adopts and confirms this reasoning.  There, PIFSS submitted evidence in support of its motion to dismiss demonstrating that (like Tensyr) any transfer it received from Fairfield Sentry occurred long after Sentry received any transfer from BLMIS and in the intervening period Sentry transferred many times that amount to other parties.  *See* Decision at 6; *compare* Opening Brief at 12–13, 33–34; Reply at 7–8.  Based on this evidence, the Court found that "Fairfield Sentry did not request money from BLMIS for the purpose of redeeming PIFSS's shares" and "[t]here is no evidence that PIFSS's redemption request caused Fairfield Sentry to take any action within, or directed at, the United States."  Decision at 6–7.

The Freshfields Bruckhaus Deringer US LLP partners include members of the Bars of the State of New York and the District of Columbia, Solicitors of the Supreme Court of England and Wales and Rechtsanwälte of Germany.

## Freshfields Bruckhaus Deringer US LLP

2|2

Relying on this argument, the Court found that the Trustee had failed to satisfy his burden of alleging jurisdiction.  *See* Decision at 14 ("Because . . . the redemption request and receipt of funds by PIFSS [] did not have a direct effect in the United States, PIFSS's motion must be granted.").

This Court should apply the same reasoning to Tensyr's motion to dismiss for lack of personal jurisdiction.  While PIFSS's jurisdictional motion to dismiss was based on sovereign immunity, rather than personal jurisdiction, that difference is immaterial here: the minimum contacts analysis is "essentially identical" to the "direct effects" prong of the Foreign Sovereign Immunities Act's commercial activity exception analyzed by the Court.  *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 760–61 (2d Cir. 1998); *see also Boeing Co. v. Egyptair*, No. 05-cv-5986, 2007 WL 1315716, at *2 (2d Cir. May 7, 2007) ("questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for [sovereign immunity] purposes [are] inextricably intertwined"); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.*, 199 F.3d 94, 97 (2d Cir. 1999) (direct effects test and minimum contacts analysis are "inextricably intertwined").

Respectfully submitted,

David Y. Livshiz

cc: All Counsel

Encl.