Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for BGL BNP Paribas S.A., BNP Paribas
Arbitrage SNC, BNP Paribas Bank & Trust Cayman
Limited, BNP Paribas S.A., and BNP Paribas
(Suisse) S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> BGL BNP PARIBAS S.A., BNP PARIBAS ARBITRAGE SNC, BNP PARIBAS BANK & TRUST CAYMAN LIMITED, BNP PARIBAS S.A., and BNP PARIBAS (SUISSE) S.A., <br><br> Defendants. | Adv. Pro. No. 12-01576 (CGM) <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF THE BNPP DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... i

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................ 2

    I.    The New Transfers do not Relate Back to the Original Complaint ........ 2

        A.    *The New Transfers Were not Made as Part of the Conduct Alleged in the Original Complaint.* ............................ 2

        B.    *The Original Complaint did not put the BNPP Defendants on Adequate Notice of the Trustee's Claims.* ........... 7

    II.    The Law of the Case Squarely Forecloses the Addition of the New Transfers ...................................................................................... 9

        A.    *The* Relation Back Decision *Addressed the Trustee's Arguments and Decided the Questions of Law Underpinning his Amended Claims.* ........................................... 10

        B.    *There is no Compelling Reason to Discard the* Relation Back Decision. ......................................................................... 12

    III.    The Court Lacks Jurisdiction Over the New BNPP Defendants ............. 16

        A.    *The Trustee Fails to Show Sufficient Contacts or Purposeful Availment.* ................................................................ 16

        B.    *The Trustee is Not Entitled to Jurisdictional Discovery.* ............. 18

    IV.    The SAC Fails for Other Reasons ......................................................... 18

CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
   624 F. Supp. 2d 292 (S.D.N.Y. 2009) .................................................................... 5

*Ali v. Mukasey*,
   529 F.3d 478 (2d Cir. 2008) .................................................................... 13

*All. For Good Gov't v. Coal. For Better Gov't*,
   998 F.3d 661 (5th Cir. 2021) .................................................................... 12

*Arizona v. California*,
   460 U.S. 605 (1983) .................................................................... 9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................... 17

*Contemp. Mission, Inc. v. New York Times Co.*,
   665 F. Supp. 248 (S.D.N.Y. 1987) .................................................................... 3

*Doe v. New York City Dept. of Social Services*,
   709 F.2d 782 (2d Cir. 1983) .................................................................... 12

*Fair Hous. in Huntington Comm. v. Town of Huntington*,
   2010 WL 2730757 (E.D.N.Y. July 8, 2010) .................................................................... 8

*Fed. Deposit Ins. Corp. v. Chizner*,
   110 F.R.D. 114 (E.D.N.Y. 1986) .................................................................... 4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. _, 141 S. Ct. 1017 (2021) .................................................................... 17

*Grace v. Rosenstock*,
   169 F.R.D. 473 (E.D.N.Y. 1996) .................................................................... 3, 7

*Hau Yin To v. HSBC Holdings PLC*,
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .................................................................... 16

*Hill v. HSBC Bank PLC*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................... 16

i

**Page(s)**

*In re Aluminum Warehousing Antitrust Litig.*,
    520 F. Supp. 3d 455 (S.D.N.Y. 2021) ........................................................ 13

*In re Am. Hous. Found.*,
    543 B.R. 245 (Bankr. N.D. Tex. 2015) (Jones, J.) ................................... 14

*In re Art & Architecture Books of the 21st Century*,
    2021 WL 1821869 (Bankr. C.D. Cal. May 5, 2021) (Kwan, J.).............. 14

*In re Austin Driveway Servs., Inc.*,
    179 B.R. 390 (Bankr. D. Conn. 1995)....................................................... 8

*In re Bennett Funding Grp., Inc.*,
    232 B.R. 565 (Bankr. N.D.N.Y. 1999)..................................................... 20

*In re Chaus Sec. Litig.*,
    801 F. Supp. 1257 (S.D.N.Y. 1992)........................................................... 5

*In re Everfresh Bevs., Inc.*,
    238 B.R. 558 (Bankr. S.D.N.Y. 1999)....................................................... 7

*In re Gerardo Leasing Inc.*,
    173 B.R. 379 (Bankr. N.D. Ill. 1994)........................................................ 3

*In re Lenox Healthcare, Inc.*,
    343 B.R. 96 (Bankr. D. Del. 2006) ....................................................... 4, 5

*In re M. Fabrikant & Sons, Inc.*,
    480 B.R. 480 (Sullivan, J.) (S.D.N.Y. 2012), *aff'd* 541 F. App'x 55 (2d Cir. 2013) ... 13, 14

*In re Metzeler*,
    66 B.R. 977 (Bankr. S.D.N.Y. 1986) .................................................. 3, 4, 8

*In re Mosdos Chofetz Chaim, Inc.*,
    2023 WL 6174280 (S.D.N.Y. Sep. 22, 2023) (Karas, J.).......................... 14

*In re: Opus E., L.L.C.*,
    2013 WL 4478914 (Bankr. D. Del. Aug. 6, 2013)..................................... 4

*Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*,
    397 F.3d 77 (2d Cir. 2005)........................................................................ 12

*Masciotta v. Clarkstown Cent. Sch. Dist.*,
    2016 WL 4449660 (S.D.N.Y. Aug. 23, 2016) ......................................... 11

**Page(s)**

*Matter of Estate of Glaser,*
  959 N.W.2d 379 (Iowa 2021) ................................................................... 4

*Mayle v. Felix,*
  545 U.S. 644 (2005) ................................................................................. 9

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
  322 F.3d 147 (2d Cir. 2003) .................................................................... 10

*Papasan v. Allain,*
  478 U.S. 265 (1986) ................................................................................. 19

*Pescatore v. Pan Am. Airways, Inc.,*
  97 F.3d 1 (2d Cir. 1996) .......................................................................... 15

*Picard v. ABN Amro Bank N.A.,*
  2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ............................. 19

*Picard v. Bank Julius Baer & Co. (In re Madoff),*
  2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) ............................ 15

*Picard v. BNP Paribas S.A.,*
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................... passim

*Picard v. Citibank, N.A.,*
  12 F.4th 171 (2d Cir. 2021) ..................................................................... 19

*Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff),*
  2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .............................. 16

*Picard v. Royal Bank of Can. (In re Madoff),*
  650 B.R. 524 (Bankr. S.D.N.Y. 2023) ..................................................... 15

*Slayton v. Am. Express Co.,*
  460 F.3d 215 (2d Cir. 2006) .................................................................... 9

*Spetner v. Palestine Inv. Bank,*
  70 F. 4th 632 (2d Cir. 2023) ................................................................... 17

*SPV Osus, Ltd. v. UBS AG,*
  882 F.3d 333 (2d Cir. 2018) .................................................................... 16

*Sullivan v. Walker Constr., Inc.,*
  2019 WL 2008882 (S.D.N.Y. May 7, 2019) ............................................ 18

**Page(s)**

*Taboola, Inc. v. Ezoic Inc.*,
    2021 WL 2041639 (S.D.N.Y. May 21, 2021).............................................................. 13

*United States for Use and Benefit of Five Star Electric Corp. v. Liberty Mut. Ins. Co.*,
    2020 WL 2530180 (S.D.N.Y. May 19, 2020)........................................................... 10

*United States v. Uccio*,
    940 F.2d 753 (2d Cir. 1991)................................................................................... 13

*United States v. Yonkers Bd. of Educ.*,
    856 F.2d 7 (2d Cir. 1988)........................................................................................ 12

*Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y*,
    697 F. App'x 63 (2d Cir. 2017) .............................................................................. 8

**Rules and Statutes**

11 U.S.C. § 546(e)................................................................................................... 2, 20

11 U.S.C. § 548(a)................................................................................................... 4, 19

11 U.S.C. § 550(b)................................................................................................... 4, 15

11 U.S.C. § 550(f)................................................................................................... 2, 5

Fed. R. Civ. P. 15 ..................................................................................................... *passim*

**Other Authorities**

18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.) ............................................................ 12

The BNPP Defendants, by and through their undersigned counsel, submit this reply memorandum of law in support of their Motion to Dismiss[1] and state as follows:

## PRELIMINARY STATEMENT

In the Trustee's own words, the SAC "claims are new, and consist of new facts related to time, amount, transferor, and transferee for different transfers."[2] This attempted amendment, more than a decade after the OC, is precisely what Rule 15 is designed to prevent. Despite the Trustee's halfhearted arguments, the SAC is fatally flawed for the following key reasons:

<u>First</u>, the New Transfers—concerning newly pled transactions and, in overwhelming part, newly alleged relationships—do not relate back to the OC. The Trustee's arguments ignore the reality that the claims the Trustee seeks to add concern conduct not alleged in the OC and, if accepted, would permit the Trustee to elide any statute of limitations by relying on threadbare allegations that could apply to any avoidance action defendant.

<u>Second</u>, the strained attack on the *Relation Back Decision* only underscores that the decision was correctly decided and that it forecloses the amendments sought in the SAC.

<u>Third</u>, the Trustee's jurisdictional arguments elide that the alleged contacts in the SAC are unmoored from the alleged harm, which centers on transfers between BLMIS and off-shore entities. Additionally, jurisdictional discovery is unwarranted and unnecessary.

The SAC also fails for other reasons, including, but not limited to (1) that the BNPP Defendants are entitled to a "good faith" and "for value" defense; (2) the Trustee's failure to proffer details sufficient to establish that the BNPP Defendants received customer property; (3)

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Mem. of Law in Support of the BNPP Defendants' Mot. to Dismiss, *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (CGM) (Bankr. S.D.N.Y.) (July 24, 2023) (ECF 198-1) (the "<u>Motion to Dismiss</u>" or "<u>Mot.</u>").

[2] Trustee's Mem. Of Law in Opp'n to Def's Mot. to Dismiss the Second Am. Compl., *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (CGM) (Bankr. S.D.N.Y.) (Sept. 22, 2023) (ECF 200) (the "<u>Opp'n Mot.</u>") at 32.

the Trustee's continued reliance on the "Ponzi Scheme presumption;" and (4) that the BNPP

Defendants' alleged contracts with the Fairfield and Tremont Funds are sufficient to satisfy

Section 546(e). For all of these reasons, as stated here and in the Motion to Dismiss, the SAC

fails as a matter of law, and should be dismissed with prejudice.

## ARGUMENT

## I.    The New Transfers do not Relate Back to the Original Complaint

The statute of limitations is not a mere "procedural technicali[ty]."[3]  Section 550(f) was

designed to provide certainty to asserted transferees that, unless sued within a year of avoidance,

they would not be targeted for a clawback claim.  *See* 11 U.S.C. § 550(f) .  The only exception is

where claims relate back under Rule 15 to timely asserted claims.  *See* Fed. R. Civ. P. 15.  Under

any conception of that standard claims in the SAC do not.

The New Transfers involve seven different BNPP entities and two Feeder Funds.  By

contrast, the OC alleges *different* transactions with *different* Feeder Funds and, glaringly, does

not allege *any* relationship *at all* between the parties to the New Relationship Transfers.  The

Trustee's effort to lash these disparate transfers together by claiming they occurred as part of a

unified course of conduct proves too much.  If accepted, it would permit the Trustee to engage in

endless amendments, limited only by his ability to allege that Madoff-related transactions

comprise a single "course of conduct" (which is to say, no limit at all).

### A.    *The New Transfers Were not Made as Part of the Conduct Alleged in the Original Complaint.*

The New Transfers—more than $88 million, and nearly 80% of the overall claims in the

SAC—relate to unique transactions between various entities not alleged or described in the OC,

---

[3] Opp'n Mot. at 26.

and largely involve transactions between a Feeder Fund and a BNPP Defendant where the OC did not allege *any* transactions between those entities (the "New Relationship Transfers," totaling about $82.1 million). Mot. at 7. Because these newly alleged transfers are not alleged to be part of previously alleged transactions or even a specific economic relationship, they do not relate back for Rule 15 purposes and are plainly time-barred. *See, e.g.*, *Grace v. Rosenstock*, 169 F.R.D. 473, 481 (E.D.N.Y. 1996) (collecting cases and observing that courts decline to apply relation back to allow the addition of new claims based on transactions or events not included in the original pleading); *see also Contemp. Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 255–56 (S.D.N.Y. 1987) (an amendment will relate back if it makes more specific what has already been alleged, but will not relate back if it sets forth a new set of operative facts).

In an attempt to escape the straightforward application of this principle, the Trustee argues that an allegation that a defendant received one transfer of alleged BLMIS property is sufficient to allow an otherwise untimely amendment as to *any* transfers of BLMIS property. *See* Opp'n Mot. at 27. This proves too much and ignores the facts actually alleged in the OC.

First, the allegation of merely receiving an allegedly recoverable subsequent transfer is not enough to render all transfers part of the same course of conduct. *In re Metzeler*, 66 B.R. 977, 983 (Bankr. S.D.N.Y. 1986). In *Metzeler*, the Court rejected the precise argument made by the Trustee here: that an untimely amendment should be permitted because it related to existing allegations that the defendant received fraudulent transfers from the debtor. *Id* at 983. ("[T]he mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct."). Fraudulent transfers must be substantively linked by specific facts concerning the transfers in order to relate back. *See e.g. In re Gerardo Leasing Inc.*, 173 B.R. 379, 390 (Bankr. N.D. Ill. 1994) (permitting relation back for new fraudulent transfer claims where the

original complaint alleged a regular series of weekly $1,500 payments, and the amended

complaint sought to recover additional weekly $1,500 payments). Contrary to the Trustee's

assertion, this principal does not ignore the conduct prong of Rule 15, instead it gives effect to

each of Congress's words to ensure that sweeping allegations of "conduct" without more

specificity, do not overwhelm the other elements of the Rule.

As stated in *Metzeler*, Rule 15 is concerned with whether the amended pleading concerns

"*the* conduct" set forth in the original complaint, and mere allegations of "similar" conduct are

flatly insufficient. *In re Metzeler*, 66 B.R. at 984.[4] This is because section 548(a) requires the

Trustee to demonstrate that 548(a)(1) is satisfied for *each* transfer, which involves different

substantive issues regarding intent and is independently subject to defenses under section 550(b)

that may require different facts regarding knowledge and value. *Id.* at 984. *Metzeler* also

recognized that this is especially true when the claims alleged range from close in time to the

petition date all the way back to the beginning of the applicable transfer period. *Id.* at 984.

Following this line of reasoning, it strains credulity to argue that an alleged transfer from

Fairfield Sigma to BGL BNPP in March 2008 (denominated in Euro), is part of the same conduct

as an alleged transfer from Kingate Global to BGL BNPP in January 2003,[5] when the Trustee

---

[4] *See also In re: Opus E., L.L.C.*, 2013 WL 4478914 at *4 (Bankr. D. Del. Aug. 6, 2013) (denying relation back where original complaint alleged a certain loan, and amended complaint alleged that the original loan was used to finance a new loan resulting in additional transfers); *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 106 (Bankr. D. Del. 2006) (denying relation back where amended complaint challenged new transfers instead of merely setting forth new legal grounds or facts on which to avoid and recover the original transfers); *Fed. Deposit Ins. Corp. v. Chizner*, 110 F.R.D. 114, 119 (E.D.N.Y. 1986) (denying relation back for addition of claims related to notes arising out of the same real estate venture alleged in the original complaint, noting that the claims were "not subsumed by one contract, in which a suit for failure to perform one part of the contract would have notified the defendant of the potential for suit upon liability for failure to have performed some other part of the contract."); *Matter of Estate of Glaser*, 959 N.W.2d 379, 384-5 (Iowa 2021) ("This is not a case of a mistake in the original pleading where a party has been misnamed or left out or where property has been misdescribed. This is not a case of a previously unpled theory arising out of the same facts alleged in the original pleadings. Instead, we have a proposed amendment attacking the transfer of a property that is nowhere mentioned in the original pleading.")

[5] *Compare* SAC Ex. C. *with* OC Ex. K.

has made no allegations that they were executed for the same clients or for the same purposes,

nor that they were part of a specifically alleged, routinized set of conduct. *See In re Chaus Sec.*

*Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (allegations which merely amplify facts in the

original pleading may relate back while "allegations pronouncing new claims [do not]. . . when

based upon new facts and different transactions."); *see also In re Lenox Healthcare*, 343 B.R. at

106 (finding that "because the [t]ransfers vary in amount and frequency, the presence of a

scheme or course of conduct is not supported."). Yet, this is the basis on which the Trustee

predicates each of his amended claims.

In attempting to circumvent *Metzeler*, Rule 15, and Section 550(f), the Trustee appears to

argue for a new Ponzi scheme exception to the statute of limitations, claiming that receiving

transfers from a Ponzi scheme must, under all circumstances, comprise a unified course of

conduct.[6] Unsurprisingly, the cases the Trustee cites cannot bear the weight of this expansion.

For example, the Trustee cites to *Goldberg v. Halbert*, but there, the new claims merely

sought to recover principal payments from the same loan transaction that formed the basis of the

original complaint, which sought to recover interest payments. *See* 2021 WL 5774217 at *9–11

(Bankr. D. Del. Dec. 6, 2021). Similarly, in *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F.

Supp. 2d 292 (S.D.N.Y. 2009) the amended complaint sought to add new transfers made

pursuant to the same Co-Borrowing Facilities alleged in the original complaint. 624 F. Supp. 2d

at 334 (remarking that "the facts in *Metzeler* involve fraudulent transfers which arose out of

different transactions," while in *Adelphia* "[t]he newly pled fraudulent transfers in the Amended

Complaint . . . arose out of the same conduct, at the same time, and involved the same Co-

Borrowing Facilities"). In sharp contrast to *Adelphia* and *Goldberg*, the SAC alleges entirely

---

[6] Opp'n Mot. at 27.

new transactions and new transactional relationships and does not allege they relate to previously alleged subscription agreements or facilities, nor for the same customers or purposes.[7]  Nor could it: these are facially unique transactions made in the course of distinct conduct, each implicating unique facts.

The Trustee's reliance on Ponzi-related cases to expand Rule 15 fare no better.  Unlike *Picard v. Peter Madoff*, the Trustee has not alleged that the New Transfers were conducted as part of a concrete scheme by the BNPP Defendants to extract funds from a fraudulent enterprise, which is also not pled in the OC.  468 B.R 620, 633 (Bankr. S.D.N.Y. 2012) (original complaint alleged that the defendants used BLMIS as a "piggybank" and the amended complaint sought transfers arising from the same alleged plan).  *Hill v. Oria* also involves specific allegations of an overarching plan to use a Ponzi scheme as a "piggybank."  *See* 2011 WL 6817928 at *7 (Bankr. S.D. Tex. Dec. 28, 2011).  The conduct alleged in these cases is far more specific than the generalized allegations present in the OC and SAC, i.e., merely that the Defendants received subsequent transfers of alleged BLMIS customer property.  *See* Opp'n Mot. at 27.

In sum, unlike the transfers made pursuant to the "personal piggybanks" at issue in *Peter Madoff* and *Hill*, or the "same-transaction" transfers in *Goldberg* and *Adelphia*, the SAC does not even attempt to make the level of factual allegations necessary to substantiate that each (or any) of the New Transfers form part of an overarching course of conduct alleged in the OC as to each BNPP Defendant.  Rather, the Trustee appears to argue that merely being part of a "global" "financial institution" where various different entities scattered across the world allegedly received transfers from diverse feeder funds constitutes sufficient conduct to satisfy Rule 15.

---

[7] Mot. at 7–8 n. 12–17 (describing the glaring discrepancies between the claims sought in the OC and the SAC).

Opp'n Mot. at 28.[8]  This sweeps too far.  *See In re Everfresh Bevs., Inc.*, 238 B.R. 558, 574

(Bankr. S.D.N.Y. 1999) (declining to find relation back of new fraudulent transfers where

"[t]here is no allegation in the Initial Complaint that the Defendants engaged in some sort of

scheme to defraud the Debtors.").  As Judge Bernstein found: "[t]he subsequent transfers to the

Defendants listed in the PAC, old and new, were not part of the common fraudulent scheme or

pattern present in *Adelphia* and *Peter Madoff*.  Each arose out of a separate leverage transaction

or redemption, and the facts and circumstances surrounding the value given in exchange for the

transfer will differ."[9]

Finally, the Trustee's argument, if accepted, would render Rule 15 a dead letter.  Under

his limitless view of "course of conduct," the Trustee need only assert in a first complaint that a

defendant received at least one transfer of alleged BLMIS customer property and that he intends

to claw back all BLMIS customer transfers.  With that marker down, the Trustee says, he can

successively amend his complaint to add entirely new lines of factual allegations and claims

whenever he sees fit, whether years or (as here) decades after the original complaint was filed.

The law plainly does not permit the perpetual extension the Trustee seeks.  *See Rosenstock*, 169

F.R.D. at 481; *see also Contemporary Mission, Inc.*, 665 F. at 255–56; Mot. at 7–8 n. 12–17

(describing the SAC's new claims, which implicate different facts).

    **B.**    ***The Original Complaint did not put the BNPP Defendants on Adequate Notice
of the Trustee's Claims.***

One of Rule 15's fundamental underpinnings is that defendants are entitled to timely and

adequate notice of the claims asserted against them.  Here, the Trustee provides no basis for

---

[8] Tellingly, the Trustee expressly concedes that "[t]hese claims are new, and consist of new facts related to time, amount, transferor, and transferee for different transfers."  Opp'n Mot. at 32.

[9] *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018) ( the "Relation Back Decision").

asserting that purported notice to one defendant regarding certain transfers should serve as notice

concerning an entirely separate set of transfers, much less to a *separate* defendant of an intention

to seek an *entirely different* set of transfers.[10]   As with the conduct prong of Rule 15, the facts

necessary to prove the avoidability and defenses to clawback of transfers pursuant to different

transactions will vary, naturally leading to "the conclusion that a defendant, because of the

separateness of these elements, would not be put on notice. . . ."  *See Metzeler*, 66 B.R. at 984.[11]

The Trustee also argues that the alleged transfers from Fairfield Sigma to certain of the

BNPP Defendants—sought for the first time in the SAC—are covered by his sweeping

reservation of the right to seek "additional transfers."  Opp'n Mot. at 30 n. 9.  This argument

contorts the language of his own reservation rights to its breaking point.  A generic claim of

ongoing investigation with an intent to pursue additional relief cannot provide meaningful notice

to the BNPP Defendants that the Trustee would later seek to clawback alleged transfers from

defendants who were *never* alleged in the OC to have a relationship with Fairfield.  *See Fair*

*Hous. in Huntington Comm. v. Town of Huntington*, 2010 WL 2730757 at *7 (E.D.N.Y. July 8,

2010) (finding that original complaint's allegation of "ongoing exclusionary housing practices"

did not put defendants on notice of claims in amended complaint, and that "such general

---

[10] Even if the Court were inclined to give the Trustee's notice arguments any weight, which—as the *Relation Back Decision* makes clear—it should not, they could only even arguably apply to the small portion of the New Transfers that are alleged to have occurred between entities with alleged transfers in the OC. The remaining $82.1 million, i.e., the New Relationship Transfers, cannot be rescued by this argument, because the OC *never* indicated an intent to clawback *any* transfers to those defendants from the Feeder Funds identified in the SAC. And in any case, the Court would also be well-positioned to deny the amendment as to the entirety of the New Transfers on account of the Trustee's unreasonable delay. *See Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y*, 697 F. App'x 63, 64 (2d Cir. 2017) (doctrine of laches may bar claims where plaintiff had knowledge of the claims and unreasonably delayed in asserting them).

[11] For example, facts concerning transfers between the Fairfield Funds and BNPP 2S Lux would not have supported claims concerning transfers between the Kingate Funds and BNPP 2S Lux and the Trustee alleges no connection between them. *See In re Austin Driveway Servs., Inc.*, 179 B.R. 390, 395 (Bankr. D. Conn. 1995) (noting that "[o]ne test of the sufficiency of the factual nexus between the original and the proposed allegations, is whether the evidence with respect to the amendment could have been introduced under the original complaint.")

8

references are not sufficient to place Defendants on notice for all future alleged discriminatory acts with regard to housing. . . .").[12]

Finally, the Trustee's claim of ongoing investigation rings particularly hollow, given that his claims have a near-perfect overlap with those of the Fairfield Liquidators, which were filed as far back as 2010, and which the Trustee is highly incentivized to monitor based on his recovery-sharing arrangement.[13]  *See* Mot. at 17, n. 25.  As Judge Bernstein said, the Trustee's argument that his generic reservation satisfies Rule 15 "proves too much; it ignores the Rule's requirement that the new claims must 'ar[ise] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'"  *Relation Back Decision*, 594 B.R. at 210.

## II.    The Law of the Case Squarely Forecloses the Addition of the New Transfers

The law of the case doctrine posits that "[w]hen a court decides upon a rule of law, that decision should govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Despite the Trustee's contentions to the contrary, and his lengthy collateral attack on Judge Bernstein's decision, the Trustee's amendment is precluded by the law of the case announced in the *Relation Back Decision*.  Having already battled for the *Relation Back Decision*, the Trustee and BNPP Defendants "should neither be required, nor

---

[12] The Trustee argues that *Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006) supports the view that mere notice of the "general fact situation" is sufficient for relation back, Opp'n Mot. at 37, but he ignores the immediately following sentence, which clarifies that relation back occurs where "the amended complaint does not allege a new claim but renders prior allegations more definite and precise," which is patently not the case here. *See* 460 F.3d at 228.  The Trustee's reliance on *Mayle v. Felix*, 545 U.S. 644 (2005) also ignores that the Supreme Court's reference to "common core of operative facts" was in fact intended as a limiting principal against the petitioner's argument that claims could relate back so long as they challenged the same conviction, a position that is strikingly similar to the Trustee's.  *See* 545 U.S. at 649, n.5.  In any case, there is no "common core of operative facts" here, where the Trustee has pleaded entirely different transactions involving new transactional relationships with no effort to connect them to specific facts in the OC.

[13] *See* Order Approving Settlements Between the Debtors and the BLMIS Trustee, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y.) (June 7, 2011) (ECF 107).

without good reason permitted, to battle for it again." *See Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

A.   ***The* Relation Back Decision *Addressed the Trustee's Arguments and Decided the Questions of Law Underpinning his Amended Claims.***

The *Relation Back Decision* confirmed two rules of law: (1) the mere existence of other transfers in prior complaints does not satisfy Rule 15 with respect to newly alleged transfers; and (2) a generic allegations regarding ongoing investigations and intent to clawback "all" transfers does not put those defendants on fair notice of the claims against them and likewise cannot satisfy Rule 15. *Relation Back Decision*, 594 B.R. at 210. Accordingly, the Court rejected the Trustee's attempts to claw back transfers between entities not previously alleged to have recoverable transfers between them, and to add clawback claims where he had previously sought to claw back some transfers between the relevant entities. *Id.* at 210–11. That holding applies with equal force to the SAC. *See* Mot. at 11.

In response, the Trustee cites *United States for Use and Benefit of Five Star Electric Corp. v. Liberty Mut. Ins. Co.*, 2020 WL 2530180 (S.D.N.Y. May 19, 2020) for the assertion that law of the case only bars "specific legal claims based on the same material facts as questions decided earlier in the litigation." Opp'n Mot. at 31. That case is inapposite. In *Liberty Mut.*, the amended pleadings added new *legal theories and legal claims* to the complaint, and the court held that these new theories were not precluded because they had not been previously decided. *Liberty Mut.*, 2020 WL 2530180 at *8. Here, the Trustee asserts that he is entitled to amend the complaint to add the New Transfers on the same *legal basis* as he attempted to add the New Tremont Transfers, despite the New Transfers arising out of new facts (as the Trustee admits).[14]

---

[14] *Compare* Opp'n Mot. at 27 *with* Trustee's Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Am. Compl., *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (CGM) (Bankr. S.D.N.Y.) (December 20, 2017) (ECF 110) (the "<u>FAC Opp'n Mot.</u>") at 37.

He argues the same theory of notice and relies on the same cases that the *Relation Back Decision* already considered and rejected.[15] *Compare* Opp'n Mot. at 29 *with* FAC Opp'n Mot. at 38; *see Relation Back Decision*, 594 B.R. at 211. In essence, the Trustee requests that this Court "re-answer questions already settled by the analysis contained in earlier opinions just because the question is framed differently," precisely what the law of the case doctrine disfavors. *Masciotta v. Clarkstown Cent. Sch. Dist.*, 2016 WL 4449660, at *7 (S.D.N.Y. Aug. 23, 2016).

The Trustee next argues that the law of the case should not apply because the *Relation Back Decision* did not adjudicate whether new allegations arise from the same "conduct" alleged in the OC, but instead only the same "transaction or occurrence." Opp'n Mot. at 31. That is simply wrong. The parties expressly briefed the "conduct" issue before Judge Bernstein, *see, e.g.*, FAC Opp'n Mot. at 27, and the *Relation Back Decision* squarely addresses the question, rejecting the same argument the Trustee makes here (based on the exact cases he cites again):

> [the Trustee's argument that the OC "provided defendants with notice that the Trustee intended to recover all fraudulent transfers of BLMIS customer property that Defendants received from BLMIS feeder funds"] proves too much; it ignores the Rule's requirement that the new claims must 'ar[ise] out of the ***conduct***, transaction or occurrence set out – or attempted to be set out – in the original pleading.

*Relation Back Decision*, 594 B.R. at 210 (emphasis added); *see also id.* ("The assertion that all the original subsequent transfer claims and the New Subsequent Transfer Claims arose from a "common core of operative facts" lacks merit.").[16] Because the law of the case principle posits

---

[15] In fact, the Trustee has withdrawn his claim for an alleged $108,420 transfer from Portfolio Limited to BNPP Cayman, on the basis that the *Relation Back Decision* already held this claim to be barred by the statute of limitations. Opp'n Mot. at 6, n. 3. As the Trustee acknowledges, the OC pleaded certain transfers between Portfolio Limited and BNPP Cayman, and the Relation Back Decision rejected the addition of new transfers. The Trustee offers no conceptual daylight between the this barred transfer and the New Transfers asserted in the SAC.

[16] Even if the Trustee were right that the *Relation Back Decision* did not expressly address this issue—and it did—he would still lose, because the law of the case doctrine applies to "all issues decided expressly or by necessary implication," *see, e.g., United States v. Yonkers Bd. of Educ.*, 856 F.2d 7, 11 (2d Cir. 1988), and Judge Bernstein

that courts should not reconsider issues previously decided in the same action, and these issues

were already decided, the Court should find that the New Transfers are barred by law of the case.

**B.**     ***There is no Compelling Reason to Discard the** Relation Back Decision.*

The Trustee next argues that his bare disagreement with the conclusion of the *Relation*

*Back Decision* is sufficient basis to discard it as law of the case.  In making that argument, the

Trustee fails to explain any reasoned basis for disagreeing with the *Relation Back Decision*,

much less one that would justify departing from the legal principles it set out.

As an initial matter, a mere difference of opinion is not a sufficient basis to dispense with

law of the case.  Rather, courts should only depart from the law of the case if presented with

"cogent" and "compelling" reasons to stray from a previous decision.  *Doe v. New York City*

*Dept. of Social Services*, 709 F.2d 782, 788 (2d Cir. 1983).  Such reasons include newly

available evidence, an intervening change in controlling law, the need to correct a clear error or

to prevent manifest injustice.  *Id.* at 790.[17]  Further, courts should be particularly "'. . .reluctant

to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling

of a different judge or court.'"  *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397

F.3d 77, 94 (2d Cir. 2005).  As courts in this district have recognized, "upon reassignment, 'the

new judge is well advised to pay particular heed to the doctrine of law of the case, and not to

attempt a *de novo* review of ... decisions made over a lengthy period by diligent and experienced

judicial officers who have handled the case previously.'"  *Taboola, Inc. v. Ezoic Inc.*, 2021 WL

---

necessarily rejected the argument that allegations of mere receipt of BLMIS-originated funds constituted sufficient
"conduct" for Rule 15 purposes.

[17] *See also All. For Good Gov't v. Coal. For Better Gov't*, 998 F.3d 661, 668 (5th Cir. 2021) (noting that to be
clearly erroneous, a decision must "dead wrong"); 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.) (reasoning that, to
depart from law of the case, "both parts are likely to be required, demanding both a showing of clear error and a
finding that failure to correct the error would cause manifest injustice.").

2041639, at *10 (S.D.N.Y. May 21, 2021); *see also In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 482 (S.D.N.Y. 2021).[18]

This stringent standard dovetails with the fundamental purpose of the law of the case doctrine:  "the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine. . . In this context 'prejudice' does not mean harm resulting from the failure to adhere to the prior decision; 'rather, it refers to a lack of sufficiency of notice' or a lack of sufficient 'opportunity to prepare armed with the knowledge that [the prior ruling is not controlling].'" *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991).  The Trustee's quibbles with the Relation Back Decision come nowhere close to meeting this high burden.

First, the *Relation Back Decision* properly states the rule of law and comports with precedent.  The Trustee argues that because the *Relation Back Decision* make a passing reference to dicta in *In re M. Fabrikant & Sons, Inc.*, 480 B.R. 480 (Sullivan, J.) (S.D.N.Y. 2012), *aff'd* 541 F. App'x 55 (2d Cir. 2013), that its application of Rule 15 was incorrect.  *See* Opp'n Mot. at 33.  This falls flat on multiple levels.  First, the Trustee is wrong to assert that then-District Judge Sullivan made an "error" in his reading of *Metzeler*.  Opp'n Mot. at 35.  Although he seizes on an anodyne reference in a legal standards section regarding new claims predicated on "the same conduct" as timely pled claims, *see* Opp'n Mot. at 33, the full context of *Fabrikant* makes clear that the Court understood Rule 15 to require, as *Metzeler* recognized, more than "the 'mere allegation' that all of the transactions are fraudulent [because such an allegation] does not make

---

[18] The Trustee's reliance on *Ali v. Mukasey*, 529 F.3d 478 (2d Cir. 2008) is misplaced. Opp'n Mot. at 35.  That case declined to follow law of the case in a situation where the immigration judge's prior decision included substantial personal and discriminatory vitriol, finding that this clear prejudice damaged the judge's opinion. 529 F.3d at 490. Of course, Judge Bernstein engaged in no such outrageous behavior that would similarly justify deviating from his thoughtful and well-reasoned opinion. *See e.g.*, *Relation Back Decision*, 594 B.R. at 211.

them part of the same conduct." *See Fabrikant*, 480 B.R. at 493 (quoting *Metzeler*). Second, not

only does the ultimate holding of *Fabrikant* comport entirely with *Metzeler*—denying leave to

amend where new claims predicated on generic allegations of similar conduct described in a

prior complaint—but *Fabrikant* was affirmed by the Second Circuit and has been favorably

relied upon by multiple subsequent courts, including the specific passage the Trustee claims lays

bare Judge Sullivan's supposed misreading. *See Fabrikant*, 480 B.R. at 493; *In re M. Fabrikant*

*& Sons, Inc.*, 541 F. App'x 55, 58 (2d Cir. 2013) (affirming that the new claims sought by the

*Fabrikant* trustee were untimely, and citing *Metzeler* in support); *In re Mosdos Chofetz Chaim,*

*Inc.*, 2023 WL 6174280 at *9 (S.D.N.Y. Sep. 22, 2023) (Karas, J.) (quoting *Fabrikant* at length

including the portions that cite and quote *Metzeler*).[19]  And in any case, the *Relation Back*

*Decision* centers the bulk of the discussion on explaining why the Trustee's favored cases are

inapposite and distinguishable from *Metzeler* and the Trustee's proposed amendment, and the

Trustee tellingly does not dispute that *Metzeler* was correctly decided.  *See Relation Back*

*Decision*, 594 B.R. at 209–212 (citing *Fabrikant* all of twice across four pages of analysis

thoroughly distinguishing *Adelphia* and *Peter Madoff* from *Metzeler* and the FAC and OC).

Regardless of the Trustee's unavailing hair-splitting exercise, Judge Bernstein's

application of both *Fabrikant* and *Metzeler* was correct: the separate transactions in the SAC and

OC implicate different conduct, and bare pleadings such as the Trustee's do not provide adequate

notice.  *See Fabrikant*, 480 B.R. at 492 ("Overly general original pleadings do not provide

defendants with adequate notice as to what facts they are to defend against, and, therefore, such

general allegations cannot be hooks on which to hang later amended pleadings.").  The Trustee's

---

[19] *See also In re Am. Hous. Found.*, 543 B.R. 245, 261 (Bankr. N.D. Tex. 2015) (Jones, J.) (citing *Fabrikant*'s analysis favorably); *In re Art & Architecture Books of the 21st Century*, 2021 WL 1821869 at *23 (Bankr. C.D. Cal. May 5, 2021) (Kwan, J.) (same).

attempt to use his own misconstrued reading of a glancing reference in *Fabrikant* to undermine the well-reasoned jurisprudence of multiple courts in multiple districts should be rejected.[20]

<u>Second</u>, the Trustee's digression into good faith analysis is legally irrelevant. The Trustee claims that the *Citibank* decision's effective abrogation of the *Relation Back Decision*'s separate analysis of the section 550(b) defense somehow has a bearing on the independent Rule 15 findings. Opp'n Mot. at 34. The Trustee cites to *Pescatore v. Pan Am. Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996) for the assertion that law of the case does not apply if an intervening change in law has altered the prior holding. *Id.* at 34. But that case involved a situation where the intervening change in law materially impacted the same legal conclusion the plaintiff was seeking to enforce via law of the case. *Pescatore*, 97 F.3d at 8. This is not the circumstance here, where the *Citibank* decision has no bearing on the *Relation Back Decision*'s Rule 15 analysis.

<u>Third</u>, the Trustee claims that the *Relation Back Decision* ignored the Trustee's claims regarding the OC's supposed notice of potential future claims, but the decision plainly considered *and* rejected the Trustee's notice arguments. As discussed, *supra*, the Trustee already raised identical notice arguments and Judge Bernstein held that this theory of notice "proves too

---

[20] The Trustee's newfound disagreement with the *Relation Back Decision* is a curious departure from his prior views. Indeed, when it suited his interests, the Trustee readily accepted the propriety of the *Relation Back Decision*'s analysis of the relevant case law, observing (as part of an attempt to cabin the decision to this case) that in the *Relation Back Decision*, the Court denied relation back "[where the transfers at issue] varied in nature: some 'arose from either separate and distinct loans, credit facilities or derivative transactions with various counterparties while others appear to relate to either redemptions or equity distributions to the Defendants . . .'" Trustee's Opp'n to Defs.' Mot. to Dismiss, *Picard v. SIXSIS AG*, Adv. Pro. No. 12-01195 (CGM) (Bankr. S.D.N.Y.), (ECF 137) at 25. Therefore, as the Trustee has stated, the circumstances of this case, where the Trustee specifically seeks $82.2 million in New Relationship Transfers that "var[y] in nature", are distinct from subsequent cases where this Court found relation back. *See Picard v. Royal Bank of Can. (In re Madoff)*, 650 B.R. 524, 546 (Bankr. S.D.N.Y. 2023) (not alleging any new transferor-transferee relationships that implicate new facts and new proof); *Picard v. Bank Julius Baer & Co. (In re Madoff)*, 2022 WL 17726520, at *15–16 (Bankr. S.D.N.Y. Dec. 15, 2022) (same).

15

much." *See* FAC Opp'n Mot. at 37–39 (raising identical arguments regarding conduct and notice); *see also Relation Back Decision*, 594 B.R. at 211 (rejecting those arguments).

### III.     The Court Lacks Jurisdiction Over the New BNPP Defendants

This Court lacks jurisdiction over the New BNPP Defendants because the Trustee has failed to establish that they had sufficient contacts with the forum.  Additionally, jurisdictional discover is both unwarranted and unnecessary.

#### A.     *The Trustee Fails to Show Sufficient Contacts or Purposeful Availment.*

A plaintiff must make a threshold showing of a defendant's contacts with the forum before a court may exercise personal jurisdiction.  *See SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018).  The Trustee failed to do so.  The SAC relies on an entirely foreign fact pattern with nothing showing that the New BNPP Defendants' alleged actions were purposefully directed towards New York.  Mot. at 18.  The Trustee merely restates in his opposition that the new BNPP Defendants received the transfers at issue in a New York correspondent bank account—but the case law he cites in support confirms the BNPP Defendants' argument that the defendant must specifically "direct" or "choose[] to use" an account in the forum "for its own advantage."  *See, e.g., Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*, 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022).  Here, the SAC falls short, making no specific allegations regarding such an intent, instead effectively relying on the same sort of mere foreseeability arguments courts routinely reject.[21]

The Trustee's opposition also acknowledges that the minimum contacts test cannot rely on contacts that are "'unmoored' from the transaction" at issue.  Opp'n Mot. at 14.  And yet, to bolster his thin allegations, the Trustee relies on a laundry list of irrelevant purported contacts

---

[21] *See Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136 at *6 (S.D.N.Y. Mar. 1, 2017); *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016).

with a variety of funds that are not the subject of this action.[22]  The Trustee's reliance on *Spetner*

is also misguided, given that the case stands for the proposition that the contacts at issue must

relate to the "wrong alleged."  *Spetner v. Palestine Inv. Bank*, 70 F. 4th 632, 640 (2d Cir. 2023).

The "wrong" in question here is the fraudulent conduct perpetrated by BLMIS, which the New

BNPP Defendants played no role in effectuating and, applying the same reasoning as Judge

Bernstein, were victims of.  *See Relation Back Decision*, 594 B.R. at 203.  The Trustee

regurgitates allegations that BNPP Suisse marketed investment products mentioning Fairfield

Sentry, but draws no line between that alleged contact and the transfers he seeks to claw back.

SAC ¶ 137.  He similarly alleges that  BNPP 2S Lux *may* have "identified" a New York entity to

receive communications from Fairfield Sentry on its behalf, SAC ¶ 131, but no specific

communications are identified, much less ones linked to the transfers alleged in the SAC.  Such

allegations do not demonstrate the systemic availment of the forum state needed for jurisdiction.

The allegation that the New BNPP Defendants had "knowledge" that the Fairfield Funds

would invest in BLMIS is not sufficient to impute the Fairfield Funds' or BLMIS's contacts to

the New BNPP Defendants, nor is it a contact for jurisdictional purposes.  *See Burger King

Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The Trustee cites no case law to the contrary, and

in fact, the authority he relies on involve much more pervasive and sweeping contacts than are

included in his allegations regarding the New BNPP Defendants.  *See e.g. Ford Motor Co. v.

Mont. Eighth Jud. Dist. Ct.*, 592 U.S. _, 141 S. Ct. 1017, 1026–30 (2021) (involving a products

liability case that demonstrated constant and pervasive contacts not present here).

---

[22] SAC ¶ 92 (claiming jurisdiction is justified based on alleged contact with Ascot Partners, L.P., Equity Trading
Portfolio Limited,  Groupement Financier Ltd., Harley International (Cayman) Limited, and the Kingate Funds).

Although the New BNPP Defendants maintain that subjecting them to the jurisdiction of this Court would be unreasonable, given that the claims at bar allege entirely foreign relationships, Mot. at 4, the Trustee's needless digression into this analysis is legally irrelevant because he has failed to establish that any of the New BNPP Defendants had sufficient contacts with the forum state to render jurisdiction appropriate.

**B.      *The Trustee is Not Entitled to Jurisdictional Discovery.***

This Court should not order jurisdictional discovery. This case has lasted for more than a decade already. The Trustee has complete access to BLMIS's records and has also completed substantial discovery from a score of other third parties. Opp'n Mot. at 5 (showing that the Trustee has commenced "numerous" subsequent transferee actions). Accordingly, any evidence supporting contacts between the New BNPP Defendants and BLMIS or the Fairfield Funds should already be in the Trustee's possession and control. Despite this, the Trustee has not shown any meaningful contacts between the New BNPP Defendants and the forum, and there is no reason to expect additional discovery will cure this defect.[23]

**IV.    The SAC Fails for Other Reasons**

First, the BNPP Defendants are entitled to assert a "good faith" and "for value" defense to all of the Trustee's claims. Indeed, though the ultimate legal conclusion was based in part on the jurisprudence of this Court prior to the decision in *Citibank*, Judge Bernstein found that the FAC was "replete with allegations that the Defendants performed due diligence when dealing with Madoff, BLMIS, BLMIS feeder funds or BLMIS-related securities." *Id.* at 205. These findings demonstrate, through the Trustee's own claims, that a diligent inquiry by the BNPP

---

[23] *See Sullivan v. Walker Constr., Inc.*, 2019 WL 2008882 (S.D.N.Y. May 7, 2019) (noting that ". . .if [p]laintiff's allegations are too conclusory, nonspecific, or otherwise inadequate, they will 'not merit jurisdiction-related discovery.'") (internal quotation omitted).

Defendants would not have uncovered fraud, thus satisfying the *Citibank* standard. *See Picard v. Citibank, N.A.*, 12 F.4th 171, 191–92 (2d Cir. 2021). The SAC also includes all the information necessary to demonstrate that the BNPP Defendants gave value, including that the transfers were allegedly made pursuant to subscription and redemption agreements, which have previously been found to provide the basis of sufficient "value." *See Picard v. ABN Amro Bank N.A.*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020); SAC ¶¶ 95, 99, 101, 106, 110, 121, 124, 129, 135 (alleging subscriptions and redemptions).

Second, the Trustee has only made bare assertions that the Fairfield and Tremont Funds allegedly withdrew money from BLMIS, and subsequently claims, with no correlating facts or allegations, that the BNPP Defendants received transfers that allegedly contain customer property. *See* Opp'n Mot. at 17. As argued by the BNPP Defendants, these allegations are inadequate to establish that the alleged transfers contain customer property. Mot. at 22. The Trustee's assertion that he does not have fulsome, or even minimally sufficient, records to meet this requirement is dubious, given that his "investigation" has been "ongoing" for nearly fifteen years and he is the recipient of voluminous discovery from the Fairfield Funds, Tremont Funds, and others. And as the Trustee acknowledges, this is not a matter of requiring "dollar-for-dollar accounting" or expert opinion, but a *legal* question to be resolved on a motion to dismiss. Opp'n Mot. at 16; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Third, the Trustee conveniently dodges the BNPP Defendants' argument that the Ponzi Scheme presumption is legally untenable. *See* Mot. at 27. The Trustee also sidesteps the requirements of section 548(a)(1)(B), which are also not satisfied in the absence of such an untenable presumption, failing to meet his burden to show that each element of the statute has been met. *See In re Bennett Funding Grp., Inc.*, 232 B.R. 565, 570 (Bankr. N.D.N.Y. 1999).

This is telling, because the Trustee's own pleadings allege that the BNPP Defendants gave value in exchange for the alleged transfers from the Fairfield and Tremont Funds. *See supra* at 18.

Finally, the BNPP Defendants maintain that the alleged agreements between themselves and the Fairfield and Tremont funds form the basis of a separate securities contract sufficient to satisfy section 546(e), and dispute the Trustee's contention that this question requires a "fact-intensive" inquiry. Opp'n Mot. at 25. Despite suggesting some speculation by the District Court, the Trustee provides no independent basis for the assertion that this cannot be answered from the face of the pleadings under these circumstances. Indeed, as the BNPP Defendants have shown, the SAC demonstrates that the alleged agreements between the BNPP Defendants and the Fairfield and Tremont Funds were securities contracts between covered entities. Mot. at 34.

## **CONCLUSION**

For these reasons, the Court should grant the BNPP Defendants' Motion to Dismiss.

Dated:   New York, New York
         October 23, 2023

Respectfully submitted,

/s/ *Thomas S. Kessler*
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
racooper@cgsh.com
amackinnon@cgsh.com
tkessler@cgsh.com

*Attorneys for the BNPP Defendants*