Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for BNP Paribas Arbitrage SNC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>BNP PARIBAS ARBITRAGE SNC,<br><br>Defendant. | Adv. Pro. No. 11-02796 (CGM) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**BNP PARIBAS ARBITRAGE SNC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
|     I. The Trustee Fails to Substantiate that BNPP Arbitrage Received Customer Property | 2 |
|         A. The Trustee's Allegations that BNPP Arbitrage Received Customer Property are Insufficient as a Matter of Law. | 3 |
|         B. The Trustee's Allegations Prove that Certain Transfers Conclusively Could Not Have Contained Customer Property. | 3 |
|     II. The Court Lacks Jurisdiction Over BNPP Arbitrage | 6 |
|         A. The Trustee's Pleading Fails to Show Sufficient Contacts or Purposeful Availment. | 7 |
|         B. Exercising Jurisdiction Over BNPP Arbitrage Would Be Unreasonable. | 9 |
|         C. The Trustee is Not Entitled to Jurisdictional Discovery. | 10 |
|     III. The Amended Complaint Demonstrates BNPP Arbitrage's Good Faith | 10 |
|     IV. The Trustee Fails to Establish the Avoidability of the Transfers | 12 |
|     V. The Trustee's Claims Are Barred by Section 546(e) | 12 |
| CONCLUSION | 14 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 5, 6

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .................................................................................................. 9

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*
    747 F.3d 145 (2d Cir. 2014) ..................................................................................... 6

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) ............................................................................................. 9

*Hau Yin To v. HSBC Holdings PLC,*
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ...................... 7

*Hill v. HSBC Bank PLC,*
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) ...................................................................... 7

*In re Bennett Funding Grp., Inc.,*
    232 B.R. 565 (Bankr. N.D.N.Y. 1999) .................................................................... 12

*In re Grube,*
    500 B.R. 764 (Bankr. C.D. Ill. 2013) ....................................................................... 12

*Papasan v. Allain,*
    478 U.S. 265 (1986) .................................................................................................. 3, 5

*Picard v. ABN Amro Bank N.A.,*
    Adv. Pro. No. 08-01789 (SMB),
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ............................................. 11

*Picard v. BNP Paribas S.A.,*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................................... 10, 11

*Picard v. Citibank, N.A.,*
    12 F.4th 171 (2d Cir. 2021) ...................................................................................... 2, 11

|  | Page(s) |
|---|---|
| *Picard v. KBC Invs. Ltd. (In re Madoff)*, 2023 WL 3112719 (Bankr. S.D.N.Y. Apr. 26,2023) | 3, 5, 8 |
| *Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02539, 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) | 7 |
| *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) | 2, 5-6 |
| *Spetner v. Palestine Inv. Bank*, 70 F. 4th 632 (2d Cir. 2023) | 9 |
| *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) | 7 |
| *Sullivan v. Walker Constr., Inc.*, 2019 WL 2008882 (S.D.N.Y. May 7, 2019) | 10 |
| *Walden v. Fiore*, 571 U.S. 277 (2d Cir. 2014) | 8 |

**Rules and Statutes**

| | |
|---|---|
| 11 U.S.C. § 546(e) | 13 |

BNP Paribas Arbitrage SNC ("BNPP Arbitrage"), by and through its undersigned counsel, submits this reply memorandum of law in support of its motion to dismiss the Amended Complaint, ECF No. 100 (the "Amended Complaint") with prejudice filed by Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).

## PRELIMINARY STATEMENT[1]

The Trustee's attack on BNPP Arbitrage's arguments cannot rescue the Amended Complaint, which is fundamentally deficient in key areas, as outlined by BNPP Arbitrage in its Motion to Dismiss. In particular, the Trustee has failed to address, or has badly misconstrued, several defects in his pleading:

First, the Trustee claims to have provided the "necessary vital statistics" sufficient to establish BNPP Arbitrage as subsequent transferees of BLMIS customer property, but has proffered no details supporting his claims.[2] Indeed, as outlined herein, his own pleadings are uniquely deficient in this respect, a fact that this Trustee has seemingly overlooked.

Second, the Trustee has failed to establish that this Court has personal jurisdiction over BNPP Arbitrage. The Trustee elides that any alleged contacts in the Amended Complaint are unmoored from the alleged harm, which centers on transactions between foreign entities. Under the circumstances an exercise of jurisdiction is not reasonable. Additionally, an award of jurisdictional discovery is unwarranted and unnecessary.

---

[1] Capitalized terms used in this reply memorandum of law and not otherwise defined herein have the meaning ascribed to them in the Mem. of Law in Support of BNP Paribas Arbitrage's Mot. to Dismiss, *Picard v. BNP Paribas Arbitrage*, Adv. Pro. 11-02796 (CGM) (Bankr. S.D.N.Y.) (July 24, 2023) (ECF 104-1) (the "Motion to Dismiss" or "Mot.").

[2] Trustee's Opp'n to Def.'s Mot. to Dismiss the Am. Compl., *Picard v. BNP Paribas Arbitrage*, Adv. Pro. No. 11-02796 (CGM) (Bankr. S.D.N.Y. Sept. 22, 2023), ECF No. 100 (the "Opp'n Mot.") at 2, 13–14.

-1-

<u>Third</u>, the Trustee mischaracterizes this court's prior factual findings with respect to BNPP Arbitrage's good faith. Although BNPP Arbitrage does not dispute that the Second Circuit's decision in *Picard v. Citibank, N.A.*, 12 F.4th 171 (2d Cir. 2021) establishes that "good faith" is an affirmative defense, the Trustee's pleadings contain sufficient allegations for BNPP Arbitrage to meet that burden.

<u>Fourth</u>, the Trustee conveniently leans on the so-called "Ponzi-scheme presumption" to avoid his pleading burden, and in doing so ignores his failure to independently establish that any of the particular transfers alleged were avoidable under sections 548(a)(1)(A) or 548(a)(1)(B).

<u>Finally</u>, contrary to the Trustee's assertion, the allegations in the Amended Complaint are sufficient to establish that Harley's alleged securities contract with BNPP Arbitrage independently qualifies for the section 546(e) safe harbor.

For all of these reasons, as stated here and in BNPP Arbitrage's Motion, the Amended Complaint fails as a matter of law, and should be dismissed with prejudice.

## ARGUMENT

**I.     The Trustee Fails to Substantiate that BNPP Arbitrage Received Customer Property**

The Trustee acknowledges that, to plead a subsequent transfer claim, he must allege facts that support an inference "'that the funds at issue originated with the debtor.'" *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) (*quoting Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)). And yet here he has failed to do so. BNPP Arbitrage reasserts that the Trustee has failed to make allegations sufficient to show that it received customer property, and none of the Trustee's authority compels a contrary holding under these circumstances, where the Trustee's pleadings are plainly deficient both factually and as a matter of law.

### A. The Trustee's Allegations that BNPP Arbitrage Received Customer Property are Insufficient as a Matter of Law.

The Trustee claims that he has provided the "necessary vital statistics" sufficient to tie initial transfers from BLMIS to subsequent transfers to BNPP. Opp'n Mot. at 13–14. But he has only made bare assertions that Harley allegedly withdrew money from BLMIS, and subsequently claims, with no correlating facts or allegations, that BNPP Arbitrage received transfers that allegedly contain customer property. *See* Am. Compl. ¶¶ 2, 79, 82–89. As argued by BNPP Arbitrage, these allegations are inadequate. Mot. at 9.

The Trustee's seeming assertion that he does not need to provide even minimally sufficient records to meet this requirement is surprising, given that his "investigation" has been "on-going" for nearly fifteen years and he has been engaged in litigation with a number of other alleged recipients of transfers from Harley.[3] And as the Trustee acknowledges, this is not a matter of requiring "dollar-for-dollar accounting" or expert opinion, but a *legal* question to be resolved on a motion to dismiss. *See* Opp'n Mot. at 13; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that the court need not accept a legal conclusion couched as a factual allegation).

### B. The Trustee's Allegations Prove that Certain Transfers Conclusively Could Not Have Contained Customer Property.

As an example of the Trustee's failure to provide even the "necessary vital statistics" sufficient to establish BNPP Arbitrage as a recipient of customer property, the Trustee's own exhibits conclusively demonstrate that hundreds of millions of dollars the Trustee claims to be entitled to claw back, could not have originated from BLMIS. Opp'n Mot. at 13–14. The Trustee asserts that everything he seeks to claw back from BNPP Arbitrage necessarily originated from BLMIS solely on the basis that Harley is alleged to have withdrawn about

---

[3] *See e.g., Picard v. KBC Invs. Ltd. (In re Madoff)*, 2023 WL 3112719, at *7 (Bankr. S.D.N.Y. Apr. 26,2023).

-3-

$1.066 billion within the six-year transfer period, and BNPP Arbitrage is alleged to have received about $1.054 billion within that same period. Am. Compl. Ex. B; Opp'n Mot. at 5.

And yet this conclusory analysis overlooks a facial—and fatal—defect in the Trustee's pleadings. Exhibit B of the Amended Complaint provides what is purported to be a comprehensive accounting of the inflows and outflows from Harley's BLMIS account since its inception. Opp'n Mot. at 14; Am. Compl. Ex. B. This record shows that Harley initially funded the account with a $1 million deposit in 1996, and thereafter withdrew a total of $57.8 million from that initial funding through the date of the first alleged transfer to BNPP Arbitrage on March 4, 2008. Harley did not make another withdrawal from its BLMIS account until March 26, 2008. Am. Compl. Ex. B. Despite this, the Trustee's claims against BNPP Arbitrage are inclusive of about $246.8 million in transfers that allegedly flowed from Harley to BNPP Arbitrage between March 4, 2008 and March 19, 2008. Am. Compl. Ex. C. In other words, as demonstrated by the Trustee's own allegations, Harley did not have $246.8 million in BLMIS customer property to transfer during those two weeks in March 2008, and at least $189 million must have come from other sources:

| Date | Alleged Withdrawal From BLMIS | Total Available for Transfer | Alleged Transfer to BNPP | Shortfall |
|---|---|---|---|---|
| Earlier | $1,792,422[4] | $1,792,422 | | |
| 6/23/2004 | $6,000,000 | $7,792,422 | | |
| 2/27/2008 | $50,000,000 | $57,792,422 | | |
| 3/4/2008 | | $0 | $69,850,000 | -$12,057,578 |
| 3/4/2008 | | $0 | $13,300,000 | -$25,357,578 |
| 3/7/2008 | | $0 | $72,450,000 | -$97,807,578 |
| 3/11/2008 | | $0 | $90,720,000 | -$188,527,578 |
| 3/19/2008 | | $0 | $480,000 | -$189,007,578 |

---

[4] This figure represents the total amount of cash withdrawals alleged in Exhibit B that pre-date the six-year transfer window. In total, the Trustee alleges that Harley withdrew about $1.074 billion from BLMIS over the entire lifetime

-4-

The Amended Complaint itself does not controvert this conclusion, and offers no indication that Harley held an additional BLMIS account that could plausibly link the alleged subsequent transfers to BLMIS, or that the subsequent transfers otherwise could have been sourced from BLMIS by other means.

This is not merely a failure to tie and trace a particular subsequent transfer to an initial transfer. Instead this goes to the heart of the plausibility of the Trustee's complaint. Here, the Trustee's allegations lack the necessary detail as to the "who, when, and how much" of the transfers and, as such, are insufficient to support the applicable pleading standard, much less supply any "necessary vital statistics." Opp'n Mot. at 13–14. In light of this deficiency, the Trustee's conclusory allegations that the initial transfers from BLMIS to Harley "were and continue to be customer property within the meaning of SIPA § 78*lll*(4)," Am. Compl. ¶ 82, and that "[p]rior to the Filing Date, Harley transferred a portion of the Initial Transfers to BNP Paribas Arbitrage," *id.* ¶ 87, are insufficient to meet *Ashcroft v. Iqbal*'s requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court need not accept a "legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

Clearly, the Trustee knows this to be the case, as he has access to all of BLMIS' books and records, and should therefore have a complete understanding of the inflows and outflows of Harley's BLMIS account. Moreover, the Trustee almost certainly has additional information on transfers flowing from BLMIS to Harley and to subsequent transferees as part of his other litigations involving Harley. *See e.g., KBC,* 2023 WL 3112719, at *7.

To prop up his deficient pleadings, the Trustee leans on *Merkin* for the proposition that he

---

of the account (with records of deposits and withdrawals stretching back as far as 1996). Of that, the Trustee alleges that $1.066 billion was withdrawn within the six-year transfer period. Am. Compl. Ex. B.

-5-

need not tie a subsequent transfer to a particular initial transfer. *Merkin,* 515 B.R. at 150; Opp'n Mot. at 14. But the facts of that case, where defendants primarily challenged the Trustee's linking of sufficient initial transfers to subsequent transfers made later in time, are inapposite. *Merkin*, 515 B.R. at 150. Here, the Trustee has made specific allegations that conclusively demonstrate at least $189 million in alleged transfers could not have come from any of the alleged initial transfers because, even accepting the Trustee's complaint on its face, Harley did not have enough alleged BLMIS customer property at the time. Opp'n Mot. at 14. The Trustee's generic allegation that all alleged transfers comprised BLMIS customer property cannot survive in the face of his more specific claims which expressly preclude that reality. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss . . . that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'") (citation omitted); *see also Iqbal*, 556 U.S. at 678–79.

Because the Trustee has failed to provide the "necessary vital statistics" required to substantiate that the alleged transfers contain customer property—and indeed, has pled facts that clearly demonstrate the opposite—his claims should be dismissed. Opp'n Mot. at 13–14.

## II. The Court Lacks Jurisdiction Over BNPP Arbitrage

This Court lacks jurisdiction over BNPP Arbitrage because the Trustee has failed to establish that it had sufficient contacts with the forum. Even if the Trustee could show that BNPP Arbitrage purposefully availed itself of New York, jurisdiction would not be reasonable under these circumstances. Additionally, jurisdictional discovery is both unwarranted and unnecessary under these circumstances, where the Trustee has so thoroughly failed to establish

this Court's jurisdiction. Accordingly, the Trustee's Amended Complaint should be dismissed for a lack of jurisdiction.

### A. The Trustee's Pleading Fails to Show Sufficient Contacts or Purposeful Availment.

It is axiomatic that a plaintiff must make a threshold showing of a defendant's contacts with the forum before a court may exercise personal jurisdiction. *See SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("'[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.'") (quoting *Walden v. Fiore*, 571 U.S. 277 (2d Cir. 2014) (internal quotations omitted). Here, the Trustee has failed to do so. The Amended Complaint relies on a transaction between entirely foreign entities (i.e., BNPP Arbitrage and Cayman Islands-based Harley) and includes no facts showing that BNPP Arbitrage's alleged receipt of the transfers was the result of its purposeful availment of the forum. Mot. at 5.

The Trustee merely restates that BNPP Arbitrage received the transfers at issue in a New York correspondent bank account—but the case law he cites in support confirms BNPP Arbitrage's argument that the defendant must specifically "direct" or "choose[] to use" an account in the forum "for its own advantage." *See, e.g., Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02539, 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022); Opp'n Mot. at 10. Here, the Amended Complaint falls short, making no specific allegations regarding such an intent, instead effectively relying on the same sort of mere foreseeability arguments courts routinely reject. *See Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 at *6 (S.D.N.Y. Mar. 1, 2017); *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (finding transmission of funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract").

Perhaps recognizing that the basis for this Court's jurisdiction is thin, the Amended Complaint also relies on the contacts of entities other than BNPP Arbitrage, including BNP Paribas S.A., BNP Paribas Securities Corporation, Harley, and BLMIS. Opp'n Mot. at 6. But it is BNPP Arbitrage's contacts that the Trustee must rely upon in meeting his burden, and here too the Amended Complaint falls short. *Walden*, 571 U.S. at 285. The Trustee's allegations impermissibly focus on *Harley's* contacts with BLMIS in the forum, not BNPP Arbitrage's contacts, and therefore fail the test.

The Trustee's reliance on *Picard v. KBC Invs. Ltd. (In re Madoff)*, 2023 WL 3112719 (Bankr. S.D.N.Y. Apr. 26, 2023) for the proposition that BNPP Arbitrage's contacts with Harley are sufficient to support jurisdiction is misplaced. In that case, the Trustee had alleged that personnel of affiliates of the defendant had "attended meetings in New York with feeder fund personnel 'on behalf and for the benefit of KBC Investments' where they 'shared information learned about Harley, other Feeder Funds, Madoff, and BLMIS'." 2023 WL 3112719 at *3. The Trustee raises no equivalent allegations, either in his Amended Complaint or Opposition, that would support the exercise of personal jurisdiction over BNPP Arbitrage. Instead, the only details the Trustee can muster are that a separate entity (i.e., *not* BNPP Arbitrage) executed a credit facility with Harley, and that BNPP Arbitrage received transfers and vaguely "worked with" BNP Paribas S.A. Opp'n Mot. at 4.

Further to this point, the Trustee also acknowledges that the minimum contacts test cannot rely on contacts that are "'unmoored' from the transaction" at issue. Opp'n Mot. at 11. And yet, to bolster his thin allegations, the Trustee relies on a laundry list of irrelevant purported contacts with a variety of funds that are not the subject of this action. Am. Compl. ¶ 53 (claiming jurisdiction is justified on the basis of alleged contact with funds such as Equity

-8-

Trading Portfolio Ltd, Fairfield Sentry Lt. Groupement Financier Ltd., Kingate Euro Fund Ltd., Kingate Global Fund Ltd., and Rye Select Broad Market XL Portfolio Ltd.). On this point, a finding of jurisdiction in a separate case with respect to contacts related to alleged transactions with Tremont, Opp'n Mot. at 8, has no bearing on whether BNPP Arbitrage's contacts with New York are sufficient to support jurisdiction in *this* case.

The Trustee's reliance on *Spetner*, which stands for the proposition that the contacts at issue must relate to the "'wrong alleged'," is further misguided. *Spetner v. Palestine Inv. Bank*, 70 F. 4th 632, 640 (2d Cir. 2023) (citation omitted). The "wrong" in question here is the fraudulent conduct perpetrated by BLMIS, which BNPP Arbitrage played no role in effectuating (and which certainly has not been alleged in the Amended Complaint). Such allegations do not rise to the level of systemic availment of the forum state.

The allegation that BNPP Arbitrage had "knowledge" that Harley would invest in BLMIS is not sufficient to impute Harley or BLMIS's contacts to BNPP Arbitrage, nor is it a contact for jurisdictional purposes. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The Trustee cites no applicable case law to the contrary, and in fact, the authority he relies on involves much more pervasive and sweeping contacts than are included in his allegations regarding BNPP Arbitrage. *See e.g. Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021) (involving a products liability case that demonstrated constant and pervasive contacts not present here).

**B.    *Exercising Jurisdiction Over BNPP Arbitrage Would Be Unreasonable.***

Although BNPP Arbitrage maintains that subjecting it to the jurisdiction of this Court would be unreasonable, given that the claims at bar allege entirely foreign relationships, or transactions between other entities, *see* Opp'n Mot. at 4, the Trustee's needless digression into

this analysis is legally irrelevant because he has failed to establish that BNPP Arbitrage had sufficient contacts with the forum state to render jurisdiction appropriate. Even if the Trustee were capable of showing sufficient contacts between BNPP Arbitrage and the forum, exercise of jurisdiction over BNPP Arbitrage would be unreasonable, because it would force BNPP Arbitrage to litigate far from home and at great expense. *See* Mot. at 1 (describing BNPP Arbitrage as a French financial institution).

        C.     *The Trustee is Not Entitled to Jurisdictional Discovery.*

Finally, this Court should not award jurisdictional discovery. This case has lasted for more than a decade already. The Trustee has complete access to the records of Mr. Madoff and has also completed substantial discovery from innumerable other third parties. Accordingly, any evidence supporting contacts between BNPP Arbitrage and BLMIS or Harley should already be in the Trustee's possession and control. Despite this, the Trustee has not shown any meaningful contacts between BNPP Arbitrage and the forum, and there is no reason to expect additional discovery will cure this defect. *See Sullivan v. Walker Constr., Inc.*, 2019 WL 2008882 (S.D.N.Y. May 7, 2019) (noting that "if [p]laintiff's allegations are too conclusory, nonspecific, or otherwise inadequate, they will 'not merit jurisdiction-related discovery.'") (citation omitted).

**III.**     **The Amended Complaint Demonstrates BNPP Arbitrage's Good Faith**

BNPP Arbitrage is entitled to assert a "good faith" and "for value" defense to all of the Trustee's claims. Mot. at 11. Additionally, the Trustee mischaracterizes the findings of *Picard v. BNP Paribas S.A.*, 594 B.R. 167, (Bankr. S.D.N.Y. 2018) with respect to the good faith of BNPP Arbitrage. Although the ultimate legal conclusion in that separate case was based in part on the jurisprudence of this Court prior to the Second Circuit's decision in *Citibank*, Judge Bernstein's decision was grounded in voluminous and extensive showings by the Trustee that

BNPP Arbitrage engaged in much more than "some due diligence," and indeed were highly incentivized to act in good faith. *See* Opp'n Mot. at 20; *BNP Paribas*, 594 B.R. at 205.

In fact, the Court found that the amended complaint in that case was "replete with allegations that the Defendants performed due diligence when dealing with Madoff, BLMIS, BLMIS feeder funds or BLMIS-related securities." *Id.* at 204. As this Court stated: "[D]oes it make sense, that the Defendants would have done what the [Amended Complaint] says they did if they subjectively believed that there was a high probability that BLMIS was not trading securities, and the trades it was reporting to its customers, including the Defendants' transaction counterparties, were fictitious? … [I]t does not." *Id.* at 202. This decision effectively demonstrates, through the Trustee's own prior pleadings, that a diligent inquiry by BNPP Arbitrage would not have uncovered Madoff's fraud, thus satisfying the *Citibank* standard. *See Picard v. Citibank, N.A.*, 12 F.4th 171, 191–92 (2d Cir. 2021).

Additionally, the Amended Complaint demonstrates that BNPP Arbitrage plainly gave value in exchange for the alleged subsequent transfers. Contrary to the Trustee's arguments, such a determination is possible on a motion to dismiss because the Amended Complaint includes all the information necessary to prove this point, including that the transfers were allegedly made pursuant to either subscription and redemption agreements or payments under a credit facility, which have previously been found to provide the basis of sufficient "value." *See Picard v. ABN Amro Bank N.A.*, Adv. Pro. No. 08-01789 (SMB), 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) (collecting cases); Mot. at 11 (reflecting the Trustee's allegations of subscriptions and redemptions, or alternatively, payments made under a credit facility). In either case, the Trustee's pleadings demonstrate that BNPP Arbitrage allegedly gave value for the claimed transfers, and therefore this defense is satisfied.

**IV.     The Trustee Fails to Establish the Avoidability of the Transfers**

The Trustee conveniently dodges the central argument of BNPP Arbitrage, which is that the Ponzi Scheme presumption is legally untenable. *See* Mot. at 14. In the absence of such a presumption, the Trustee has not alleged that any of the particular alleged transfers from BLMIS to Harley were made with specific intent to defraud. Instead, the Trustee leans heavily on the idea that the mere existence of the default judgment entered against Harley necessarily ends this Court's inquiry and forecloses any alternative conclusion. Opp'n Mot. at 16. It does not: "With good reason, avoidance and recovery are almost always prosecuted together in a single action. Unless one of the relatively rare exceptions to the rule against nonparty preclusion applies, a trustee must plead and prove the avoidability of the transfer in each and every action to recover the property transferred or its value. The avoidability of a transfer is determinable, not as an absolute truth, but by the preponderance of the evidence presented in a particular proceeding." *In re Grube*, 500 B.R. 764, 773 (Bankr. C.D. Ill. 2013).

The Trustee also sidesteps the requirements of section 548(a)(1)(B), which are also not satisfied in the absence of the Ponzi Scheme presumption, failing to meet his burden to show that each element of the statute has been met. *See In re Bennett Funding Grp., Inc.*, 232 B.R. 565, 570 (Bankr. N.D.N.Y. 1999). This is telling, because the Trustee's own pleadings allege that BNPP Arbitrage gave value in exchange for the alleged transfers from Harley. *See supra* Section III. As a result, none of the transfers alleged by the Trustee are avoidable, and his clawback claims should therefore be dismissed.

**V.      The Trustee's Claims Are Barred by Section 546(e)**

Because the Trustee's pleading burden is not satisfied by either the default judgement against Harley or the so-called "Ponzi Scheme presumption," and the Trustee cannot independently establish his entitlement to avoid the transfers under section 548(a)(1)(A), the

-12-

section 546(e) safe harbor operates to bar the Trustee's claims. Under these circumstances, the statutory requirements of the section 546(e) safe harbor provision are unquestionably satisfied here: (1) the underlying agreement was a securities contract within the meaning of the statute; (2) the transfers under the agreement were "settlement payments"; and (3) the transfers were made by, to, and for the benefit of a covered entity under section 546(e). 11 U.S.C. § 546(e).

BNPP Arbitrage also maintains that the transfers pursuant to the alleged agreements with Harley form the basis of separate securities contracts sufficient to satisfy section 546(e). Mot. at 21. The Trustee does not even attempt to dispute that this is the case. Opp'n Mot. at 21 (failing to refute BNPP Arbitrage's argument on this point). As BNPP Arbitrage has shown, the Amended Complaint itself demonstrates that each element of the safe harbor is satisfied under these circumstances. Mot. at 21. Additionally, the Trustee has not alleged that Harley itself engaged in fraud with BLMIS or knew BLMIS to be perpetuating a fraud, or that BNPP Arbitrage believed or knew Harley to be engaging in fraud. No authority forecloses the application of the safe harbor under these circumstances.

[*The remainder of this page left blank intentionally*]

## CONCLUSION

For all of the foregoing reasons, the Court should grant BNPP Arbitrage's motion to dismiss the Amended Complaint with prejudice pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  New York, New York
        October 23, 2023

                                        Respectfully submitted,

*/s/ Thomas S. Kessler*
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Roger A. Cooper
Ari D. MacKinnon
Thomas S. Kessler
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
racooper@cgsh.com
amackinnon@cgsh.com
tkessler@cgsh.com

*Attorneys for BNP Paribas Arbitrage SNC*