**Young Conaway Stargatt & Taylor, LLP**
Rockefeller Center
1270 Avenue of the Americas
Suite 2210
New York, NY 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 11-02758 (CGM) |
| v. | |
| CACEIS BANK LUXEMBOURG and CACEIS BANK, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**CACEIS DEFENDANTS' MOTION TO DISMISS**

D.I. 140
11/15/23

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................ 2

    II.    THE CACEIS DEFENDANTS .................................................................. 4

ARGUMENT ..................................................................................................... 5

    I.     LEGAL STANDARD FOR RULE 12(b)(6) ............................................... 5

    II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM THE CACEIS
           DEFENDANTS. .................................................................................. 6

           A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud. .............. 7

           B.    Harley Had Actual Knowledge of Madoff's Fraud. ................................ 8

           C.    The CACEIS Defendants are Bound by the Law of the Case
                   Establishing that the Section 546(e) Safe Harbor Does Not Protect
                   a Subsequent Transferee Where the Initial Transferee Had
                   Knowledge of the Fraud.................................................................. 8

           D.    The CACEIS Defendants are Bound by the Law of the Case
                   Establishing that Section 546(e) Does Not Apply Independently to
                   Recovery Actions. ........................................................................ 9

    III.   THE TRUSTEE SUFFICIENTLY PLEADED THAT THE CACEIS
           DEFENDANTS RECEIVED TRANSFERS OF STOLEN BLMIS
            CUSTOMER PROPERTY. .................................................................. 13

           A.    The Trustee Sufficiently Pleaded that the CACEIS Defendants
                   Received Transfers of Stolen BLMIS Customer Property. ..................... 13

           B.    The CACEIS Defendants Misstate the Trustee's Pleading Burden.......... 14

           C.    The CACEIS Defendants' Other Tracing Arguments are
                   Inappropriate for a Motion to Dismiss.............................................. 16

    IV.   DEFENDANTS' GOOD FAITH AND FOR VALUE DEFENSES ARE
           INAPPLICABLE AT THE PLEADING STAGE. ...................................... 17

    V.    THE CACEIS DEFENDANTS' MERE CONDUIT ARGUMENTS ALSO
           FAIL.............................................................................................. 19

           A.    The Pleadings Sufficiently Allege that the CACEIS Defendants
                   Were Transferees. ........................................................................ 19

           B.    The CACEIS Defendants' Mere Conduit Arguments Are
                   Inappropriate at this Stage. ........................................................... 20

           C.    Entering a Mere Conduit Protocol Would be Inappropriate Here,
                   Where the Trustee Does Not Consent................................................ 21

CONCLUSION ........................................................................................................................... 22

30873260

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009) ...........................................................................................5

*In re Ditech Holding Corp.*,
    No. 19-10412 (JLG), slip op., 2020 WL 3635547 (Bankr. S.D.N.Y. July 3,
    2020) .................................................................................................................5

*Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006) ...................................................................20

*Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global
    Crossing Ltd.)*,
    385 B.R. 52 (Bankr. S.D.N.Y. 2008) ...................................................................20

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp 2d 340 (S.D.N.Y. 2011)...............................................................5, 20

*Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*,
    31 F.4th 1058 (8th Cir. 2022) ............................................................................10

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020)...........................16

*Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
    No. 12-cv-02652 (S.D.N.Y. Apr. 24, 2014) (ECF No. 4239) ...............................22

*Koch Industries, Inc. v. Picard (In re BLMIS)*,
    No. 23-CV-0294 (VEC), 2023 WL 3317926 (S.D.N.Y. May 9, 2023)................6, 9

*In re Madoff Sec.*,
    501 B.R. 26 (S.D.N.Y. 2013)...............................................................................10

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004)...............................................................................20

*Picard v. ABN AMRO Bank N.V. (In re BLMIS)*,
    Adv. Pro. No. 10-05354 (CGM), 2023 WL 2358746 (Bankr. S.D.N.Y. Mar. 3,
    2023) .................................................................................................................8

*Picard v. Avellino (In re BLMIS)*,
     557 B.R. 89 (Bankr. S.D.N.Y. 2016) .......................................................................19

*Picard v. BAM L.P.*,
     624 B.R. 55 (Bankr. S.D.N.Y. 2020) ..........................................................................8

*Picard v. Banque Cantonale Vaudoise*
     Adv. Pro. No. 12-01694 (CGM), slip op., 2022 WL 2761044 (Bankr.
     S.D.N.Y. July 14, 2022) ................................................................................... *passim*

*Picard v. Banque Lombard Odier & Cie SA*
     Adv. Pro. No. 12-01693 (CGM), slip op., 2022 WL 2387523 (Bankr.
     S.D.N.Y. June 30, 2022) ................................................................................... *passim*

*Picard v. Banque Syz & Co. SA.*,
     Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019 (Bankr.
     S.D.N.Y. June 14, 2022) ................................................................................... *passim*

*Picard v. Barclays Bank S.A.*,
     Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924 (Bankr. S.D.N.Y.
     July 15, 2022) ................................................................................................... *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
     594 B.R. 167 (Bankr. S.D.N.Y. 2018) .............................................................. *passim*

*Picard v. Bordier & Cie*
     Adv. Pro. No. 12-01695 (CGM), slip op., 2022 WL 2390556 (Bankr.
     S.D.N.Y. June 30, 2022) ................................................................................... *passim*

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
     Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
     S.D.N.Y. Mar. 14, 2012) ................................................................................. 14, 16

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
     12 F.4th 171 (2d Cir. 2021) ............................................................................. 3, 18

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
     No. 21-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ...................12

*Picard v. Fairfield Inv. Fund, (In re Madoff)*,
     Adv. Pro. No. 09-01239 (CGM), slip op. 2021 WL 3477479 (Bankr. S.D.N.Y.
     Aug. 6, 2021) .................................................................................................... 3, 18

*Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*,
     634 B.R. 39 (Bankr. S.D.N.Y. 2021) .......................................................................21

*Picard v. Harley Int'l (Cayman) Ltd.*,
    Adv. Pro. No. 09-01187 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010) (ECF No.
    15) ........................................................................................................................4, 8

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014)..............................................................................11

*Picard v. Legacy Cap. Ltd.*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019), *aff'd*, 943 F.3d 125 (2d Cir. 2019) ............................8

*Picard v. Lloyds TSB Bank PLC*,
    Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551 (Bankr.
    S.D.N.Y. June 30, 2022) ........................................................................ *passim*

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .....................................................................6

*Picard v. Merkin (In re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................13, 14, 15

*Picard v. Miller (In re BLMIS)*,
    631 B.R. 1 (Bankr. S.D.N.Y. July 2, 2021) .............................................................20–21

*Picard v. Multi-Strategy Fund Ltd.*,
    641 B.R. 78 (Bankr. S.D.N.Y. 2022) .................................................................. *passim*

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
    Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-07189, 22-cv-07195, 22-
    cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022) ....................6, 9

*Picard v. Natixis S.A. et al.*,
    Adv. Pro. No. 10-05353 (CGM), slip op., 2023 WL 7288322 (Bankr.
    S.D.N.Y. Nov. 3, 2023) ........................................................................1, 6, 7, 18

*Picard v. Nelson, et al.*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ....................................................................21

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................15, 16

*Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*,
    Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509 (Bankr. S.D.N.Y
    Aug. 18, 2022) ....................................................................................... *passim*

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019)..............................................................................10

30873260

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)......................................................................................5

*Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*,
   501 B.R. 44 (Bankr. D. Del. 2013) ........................................................................17

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
   No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ............17, 18

*Sec. Inv. Prot. Corp. v. BLMIS v. Standard Chartered Financial Servs.*
   *(Luxembourg) S.A. et al.*,
   No. 23 Civ. 992 (AT), slip op., 2023 WL 5671544 (S.D.N.Y. Sept. 1, 2023) ........20

*Sec. Inv. Prot. Corp. v. Platinum All Weather Fund Ltd. et al.*, Adv. Pro. No. 12-
   01697 (CGM), slip op., 2023 WL 3964150 (Bankr. S.D.N.Y. June 12, 2023) ..................1, 20

*Sec. Inv. Prot. Corporation v. BLMIS* (*In re Madoff*),
   No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).......................... *passim*

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)........................................................................15

*In re SunEdison, Inc.*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................6, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................5

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
   39 F. Supp. 3d 461 (S.D.N.Y. 2014).......................................................................18

*Weisfelner v. CIBC World Markets (In re Lyondell Chem. Co.)*,
   Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014) (ECF No. 2124) ............22

**STATUTES**

11 U.S.C. § 546(e) ........................................................................................ *passim*

11 U.S.C. § 548(a) ...........................................................................................7, 8

11 U.S.C. § 548(c) ..............................................................................................18

11 U.S.C. § 550(a) ...........................................................................................6, 9

15 U.S.C. §§ 78aaa-*lll*.........................................................................................1

**RULES**

Fed. R. Civ. P. 8(a)(2)............................................................................................5

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 5

30873260

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss (the "Motion") the Trustee's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), filed by defendants CACEIS Bank Luxembourg, n/k/a CACEIS Bank Luxembourg Branch ("CACEIS Bank Lux") and CACEIS Bank ("CACEIS Bank France" and together with CACEIS Bank Lux, the "CACEIS Defendants").

## PRELIMINARY STATEMENT[1]

For more than one year, the Court has repeatedly disposed of the recycled arguments the CACEIS Defendants assert in their Motion.[2]  First, contrary to the Motion, Section 546(e) does not bar claims to recover subsequent transfers from the CACEIS Defendants.  To argue otherwise either ignores or misinterprets precedent from more than ten years of litigation in the Court and the District Court concerning the scope and limits of Section 546(e)'s protections.

---

[1] Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the body of this opposition.

[2] *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78, 85–96 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Natixis S.A. et al.*, Adv. Pro. No. 10-05353 (CGM), slip op., 2023 WL 7288322 (Bankr. S.D.N.Y. Nov. 3, 2023) (ECF No. 228) ("*Natixis S.A.*"); *Sec. Inv. Prot. Corp. v. Platinum All Weather Fund Ltd. et al.*, Adv. Pro. No. 12-01697 (CGM), slip op., 2023 WL 3964150 (Bankr. S.D.N.Y. June 12, 2023) ("*Platinum All Weather*"); *Picard v. Union Sec. Inv. Tr. Co., Ltd., et al*, Adv. Pro. No. 12-01211 (CGM), slip op., 2022 WL 3572509, at *2–11 (Bankr. S.D.N.Y Aug. 18, 2022) ("*Union Securities*"); *Picard v. Barclays Bank S.A.*, Adv. Pro No. 11-02569 (CGM), slip op., 2022 WL 2799924, at *3–7 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. Banque Cantonale Vaudoise* (CGM), Adv. Pro. No. 12-01694 (CGM), slip op., 2022 WL 2761044, at *2–7 (Bankr. S.D.N.Y. July 14, 2022) ("*Banque Cantonale*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), slip op., 2022 WL 2390551, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Banque Lombard Odier & Cie SA* (CGM), Adv. Pro. No. 12-01693 (CGM), slip op., 2022 WL 2387523, at *2–11 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Bordier & Cie* (CGM), Adv. Pro. No. 12-01695 (CGM), slip op., 2022 WL 2390556, at *2–7 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier & Cie*"); *Picard v. Banque Syz & Co. SA.*, Adv. Pro. No. 11-02149 (CGM), slip op., 2022 WL 2135019, at *9–10 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*").

Second, with respect to the receipt of subsequent transfers, the Amended Complaint pleads that the CACEIS Defendants received stolen BLMIS customer property by outlining the relevant pathways through which the stolen customer property was transferred from BLMIS to the Feeder Funds and subsequently to the CACEIS Defendants. The Amended Complaint also sets forth the necessary vital statistics (*i.e.*, the "who, when, and how much") for each transfer that the CACEIS Defendants received. Nothing more is required at this stage of the litigation.

Finally, the "for value," "good faith," and "mere-conduit" arguments are affirmative defenses that are inappropriate on a motion to dismiss, where, like here, the affirmative defenses are not clearly established on the face of the Amended Complaint. These arguments are better resolved in later stages of litigation once a complete factual record has been developed.

There is nothing new here—all of this is settled law in all of the adversary proceedings in this BLMIS SIPA liquidation proceeding. For these reasons, and as discussed more fully below, the Trustee respectfully submits that the CACEIS Defendants' Motion should be denied.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Amended Compl. ¶¶ 26, 49. BLMIS was a securities broker-dealer registered with the United States Securities and Exchange Commission. *Id.* ¶¶ 20, 21. BLMIS operated three principal business units, one of which was an investment advisory business that purported to employ strategies to maximize returns and minimize risk to its investors. *Id.* ¶¶ 22, 26. In reality, BLMIS operated a Ponzi scheme through its investment advisory business. *Id.* ¶ 26. BLMIS never purchased any securities on behalf of its investors and sent falsified monthly statements showing fictitious transactions and gains. *Id.* ¶¶ 26, 50; *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*"). After

his arrest for securities fraud, investment advisor fraud, and mail and wire fraud, Madoff admitted through criminal plea allocutions that he operated a Ponzi scheme through the investment advisory business. Amended Compl. ¶ 50.

The Fairfield funds are Madoff "feeder funds," i.e. large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 12 F.4th 171, 179 (2d Cir. 2021) ("*Citibank*"). Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma" and together with Fairfield Sentry, the "Fairfield Funds") invested all or substantially all of their assets in BLMIS. Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York, managed and controlled Fairfield Sentry. *Picard v. Fairfield Inv. Fund, (In re Madoff)*, Adv. Pro. No. 09-01239 (CGM), slip op., 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021). FGG conducted key operations of Fairfield Sentry from its New York office. For example, a New York-based partner approved or rejected subscriptions in Fairfield Sentry. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and certain related defendants to avoid and recover approximately $3 billion in fraudulent transfers of stolen BLMIS customer property. Amended Compl. ¶ 94. In 2011, the Trustee settled with Fairfield Sentry. *Id*. ¶ 95. As part of the settlement, the Court entered a $3.054 billion judgment against Fairfield Sentry. *Id*. The Trustee then commenced adversary proceedings against the CACEIS Defendants, and others, to recover the stolen BLMIS customer property.

Harley International (Cayman) Limited, a Cayman Islands company, was a BLMIS feeder fund formed in the Cayman Islands ("Harley" and together with the Fairfield Funds, the "Feeder Funds"). Harley invested all or substantially all of its assets with BLMIS in New York. *Id.* ¶ 57. In 2009, the Trustee filed an adversary proceeding against Harley in this Court, seeking to avoid and recover initial transfers of stolen customer property from BLMIS to Harley. *Id.* On November 10, 2010, on a motion for summary judgment, the Court entered a default judgment against Harley avoiding the initial transfers. *Id.* The Trustee has not recovered any of the initial transfers or their value avoided by the default judgment against Harley. *Id.*

## II. THE CACEIS DEFENDANTS

Through the Feeder Funds, the CACEIS Defendants invested in and received transfers of stolen BLMIS customer property beginning in 2003, if not earlier. *See* Amended Compl. ¶ 2, Exhibits E–H, J–K. The CACEIS Defendants knew the Feeder Funds were Madoff feeder funds. *Id.* at ¶¶ 2–3, 56–58, 61–69, 71, 76–82, 89–90.

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, and as alleged in the Amended Complaint, the Trustee seeks to recover at least $77,633,803 of stolen BLMIS customer property transferred to CACEIS Bank Lux and $33,213,014 of stolen BLMIS customer property transferred to CACEIS Bank France (collectively, the "Subsequent Transfers") for a total of $110,846,817, which Subsequent Transfers were transferred to the CACEIS Defendants between 2003 and 2008 (the "Transfer Period"). *Id.* ¶¶ 2–3, 121–135. Each transfer the CACEIS Defendants received from the Feeder Funds was a transfer of stolen BLMIS customer property.

## ARGUMENT

### I.    LEGAL STANDARD FOR RULE 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), the Court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the [Trustee]."   *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), slip op., 2020 WL 3635547, at *5 (Bankr. S.D.N.Y. July 3, 2020) (including omitted portion) (quoting *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003))); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).  The Court must also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   At the pleading stage, the allegations in the complaint need only meet the "plausibility" standard. In other words, they only need to "nudge[] [the] claims . . . across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (internal citation omitted).

Here, and as explained more fully below, the Amended Complaint (and its exhibits) sets forth the elements of the Trustee's claims, plausibly pleading the CACEIS Defendants' receipt of subsequent transfers of stolen BLMIS customer property and the grounds upon which

the Trustee seeks to recover such transfers from the CACEIS Defendants.  Accordingly,

dismissal is inappropriate.   *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254–71, 273

(Bankr. S.D.N.Y. 2010).

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM THE CACEIS DEFENDANTS.

The safe harbor under Section 546(e) is not a defense to the Trustee's subsequent transfer

claims against the CACEIS Defendants.  As the Court has repeatedly held, "[t]he safe harbor is

not applicable to subsequent transfers . . . [and] cannot be used as a defense by the subsequent

transferee because the Trustee is not 'avoiding' a subsequent transfer; he recovers the value of

the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe

harbor does not refer to the recovery claims under section 550."  *Multi-Strategy*, 641 B.R. at 94;

*Natixis S.A.*, 2023 WL 7288322, at *13; *Union Securities*, 2022 WL 3572509, at *9; *Picard v.

Multi-Strategy Fund Ltd. (In re Madoff),* Nos. 22-cv-06502, 22-cv-06512, 22-cv-07173, 22-cv-

07189, 22-cv-07195, 22-cv-07372, 22-cv-07788 (JSR), 2022 WL 16647767, at *8–9 (S.D.N.Y.

Nov. 3, 2022) ("*Multi-Strategy II*"); *Koch Industries, Inc. v. Picard (In re BLMIS)*, No. 23-CV-

0294 (VEC), 2023 WL 3317926, at *4 (S.D.N.Y. May 9, 2023); *Barclays*, 2022 WL 2799924, at

*7; *Banque Cantonale*, 2022 WL 2761044, at *5; *Lloyds*, 2022 WL 2390551, at *5; *Lombard*,

2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Banque Syz*, 2022 WL 2135019, at

*9; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor

defense only applies by its terms to the initial transfer").  A subsequent transferee may only

invoke the protections of the safe harbor "in so far as the avoidance of the initial transfer is

concerned."  *Natixis S.A.*, 2023 WL 7288322, at *13.

The Section 546(e) safe harbor applies to the *avoidance* of certain *initial* transfers.  It

does not apply to the *recovery* of such transfers, or their value, from a subsequent transferee.  In

2013, the District Court held that an initial transferee's actual knowledge of Madoff's fraud

precluded the application of Section 546(e), thereby allowing the Trustee to avoid transfers made

by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). *Sec. Inv. Prot. Corp.*

*v. BLMIS* (*In re Madoff*), No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15,

2013) ("<u>Cohmad</u>"). The *Cohmad* and *BNP Paribas* decisions squarely reject the CACEIS

Defendants' recycled Section 546(e) arguments.

### A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud.

In the Amended Complaint, the Trustee sufficiently pleaded the Fairfield Funds' actual

knowledge of the Madoff fraud by incorporating the Fairfield Amended Complaint. Amended

Compl. ¶ 98; *see also Multi-Strategy*, 641 B.R. at 94 (citing *BNP Paribas*, 594 B.R. at 197 ("By

its terms, the safe harbor is a defense to the avoidance of the *initial* transfer . . . . [T]he safe

harbor does not refer to the recovery claims under section 550.")); *Union Securities*, 2022 WL

3572509, at *9 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *Banque Cantonale*, 2022 WL

2761044, at *5 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Lombard*, 2022 WL 2387523,

at *9 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Banque Syz*, 2022 WL 2135019, at *9

(same). The Court has repeatedly held that the Fairfield Amended Complaint is "replete with

allegations that Fairfield Sentry had actual knowledge that BLMIS was not trading securities."

*Multi-Strategy*, 641 B.R. at 93; *Union Securities*, 2022 WL 3572509, at *9; *Barclays*, 2022 WL

2799924, at *7; *Banque Cantonale*, 2022 WL 2761044, at *5; *Lloyds*, 2022 WL 2390551, at *5;

*Lombard*, 2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Banque Syz*, 2022 WL

2135019, at *9; *Natixis S.A.*, 2023 WL 7288322, at *13. Because the Fairfield Funds had actual

knowledge of Madoff's fraud, the CACEIS Defendants cannot invoke Section 546(e)'s safe

harbor to prevent the recovery of the initial transfers under Section 550.

### B.    Harley Had Actual Knowledge of Madoff's Fraud.

The Trustee sufficiently pleaded Harley's actual knowledge of the Madoff fraud by

incorporating the Harley Complaint.  *See* Amended Compl. ¶ 111.  The Harley Complaint,

similar to the Fairfield Amended Complaint, contains allegations that Harley had actual

knowledge that BLMIS was not trading securities.  *See* Harley Comp. ¶¶ 2, 36; *Picard v. ABN*

*AMRO Bank N.V. (In re BLMIS)*, Adv. Pro No. 10-05354 (CGM), 2023 WL 2358746, at *4

(Bankr. S.D.N.Y. Mar. 3, 2023) (holding that the Trustee sufficiently pleaded Harley's actual

knowledge of Madoff's fraud by incorporating the Harley Complaint).  Because Harley had

actual knowledge of Madoff's fraud, and because the Court expressly avoided the initial transfers

from BLMIS to Harley, the CACEIS Defendants cannot invoke Section 546(e)'s safe harbor to

prevent the recovery of such initial transfers under Section 550.  *See* Order, *Picard v. Harley*

*Int'l (Cayman) Ltd.*, Adv. Pro. No. 09-01187 (BRL) (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No.

15, at 10–11 (avoiding all two year transfers Harley received from BLMIS under Section

548(a)(1)(A)).

### C.    The CACEIS Defendants are Bound by the Law of the Case Establishing that the Section 546(e) Safe Harbor Does Not Protect a Subsequent Transferee Where the Initial Transferee Had Knowledge of the Fraud.

*Cohmad's* holding that the Section 546(e) safe harbor does not protect initial transferees

with actual knowledge of the BLMIS fraud is binding law of the case.  No sufficient reason

exists to deviate from the established law of this SIPA liquidation proceeding.  *See Picard v.*

*BAM L.P.*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("The prior decisions within this SIPA

proceeding constitute law of the case."); *Picard v. Legacy Cap. Ltd.*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019) (holding that the law of the case doctrine applies across adversary proceedings

within the same bankruptcy case), *aff'd*, 943 F.3d 125 (2d Cir. 2019).

The District Court has recognized that the avoidability of an initial transfer does not turn on the "subjective mental knowledge" of a subsequent transferee, and that the Trustee is not required to plead the subsequent transferee's actual knowledge of Madoff's fraud. *Multi-Strategy II*, 2022 WL 16647767, at \*5–7, \*8–9. More recently, in *Koch Industries*, the District Court found that controlling law supported the Bankruptcy Court's decision to deny a subsequent transferee's motion to dismiss on Section 546(e). 2023 WL 3317926, at \*4. Section 546(e)'s "plain text and purpose, reinforced by Second Circuit law," support the proposition that an initial transferee cannot seek the protections of Section 546(e) if the transferee had knowledge of the transferor's fraud. *Id*. The reason is self-evident: "Rather than agreeing to a securities contract, BLMIS and Fairfield [as BLMIS's customer and the initial transferee] allegedly agreed to commit fraud. By its plain terms, the Safe Harbor, therefore, does not apply." *Id*. The CACEIS Defendants cannot escape the plain text and purpose of Section 546(e).

### D. The CACEIS Defendants are Bound by the Law of the Case Establishing that Section 546(e) Does Not Apply Independently to Recovery Actions.

The Court has held that the Section 546(e) "safe harbor" does not protect against the recovery of an avoidable transfer under Section 550(a). *BNP Paribas*, 594 B.R. at 197. "By its terms," Section 546(e) provides "a defense to the avoidance of the *initial* transfer." *Id*. (emphasis in original). "Hence, a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable" under Section 546(e). *Id*. Since *BNP Paribas*, the Court has repeatedly rejected other defendants' arguments that Section 546(e) requires dismissal of the Trustee's claims. *See, e.g.*, *Multi-Strategy*, 641 B.R. at 92–95. As detailed above, Section 546(e) applies to the avoidance of *initial* transfers, not the recovery from subsequent transferees under Section 550.

The Eighth Circuit made this point clear in a decision involving a trustee's attempt to

recover a subsequent transfer from a feeder fund in the Petters Ponzi scheme. *See Kelley as Tr.*

*of PCI Liquidating Tr. v. Safe Harbor Managed Acct.* 101, Ltd., 31 F.4th 1058, 1064 n.5 (8th

Cir. 2022). As expressed in *Kelley*, "[t]hough [the trustee] is seeking to claw back the

subsequent transfers made by [the feeder fund] to [the subsequent transferee] through this

adversary proceeding, the focus of the § 546(e) analysis is the initial transfers made by [the

initial transferor/debtor] to [the initial transferee/feeder fund]." *Id.* In other words, the transfers

to consider here are the transfers from BLMIS to the Feeder Funds. "[A] subsequent transferee

is protected indirectly to the extent that the initial transfer is not avoidable because of the safe

harbor." *Id.* (quoting *BNP Paribas*, 594 B.R. at 197).

This safe harbor limitation is consistent with the well-established principle that "the

concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. 26,

30 (S.D.N.Y. 2013) (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)). The

Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while

Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing

the fraudulent transfer to its ultimate resting place." *In re Picard, Tr. for Liquidation of Bernard*

*L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019) (quoting Edward R. Morrison,

*Extraterritorial Avoidance Actions: Lessons from Madoff*, 9 Brook. J. Corp. Fin. & Com. L. 268,

273 (2014)). The Court should reject the CACEIS Defendants' repackaged attempt to muddle

the law by conflating avoidance and recovery under Section 550.

*Cohmad* does not require the Court to look to the subsequent transferee's actual

knowledge to determine whether the initial transfer is avoidable. *Cohmad* held that Section

546(e) does not provide an independent safe harbor for Section 550 recovery actions against

10

subsequent transferees. In *Cohmad*, the Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)), at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*), and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphases added). And though the *Cohmad* court hypothesized in dicta that a subsequent transferee's subscription agreements with the initial transferee feeder fund might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is on the initial transfers. *See id*. at *9 ("[T]he question . . . is whether the Trustee has alleged that the *initial transfer* was made in connection with (i.e., related to) a covered securities contract . . . .") (emphasis added). The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its Feeder Funds. *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411, 422–23 (2d Cir. 2014).

Consistent with *Cohmad*, the Court held in *BNP Paribas* that Section 546(e) is applicable only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge. *See BNP Paribas*, 594 B.R. at 197; *see also SunEdison*, 620 B.R. at 514 ("[T]he safe harbor defense only applies by its terms to the initial transfer."). In *BNP Paribas*, the Court explicitly rejected the argument that the "*only* way the Trustee can escape the application of Section 546(e) is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." 594 B.R. at 196–97 (emphasis in original). Like *Cohmad*, *BNP Paribas* is law of the case. The CACEIS

11

Defendants are bound by both decisions.  *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 21-CV-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Where, as here, the initial transferee had actual knowledge of Madoff's fraud, the CACEIS Defendants' knowledge is irrelevant when considering the Section 546(e) safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'").  Adopting the CACEIS Defendants' position would mean that the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.  This would allow an initial transferee who had knowledge of the fraud to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

The *Cohmad* case does not mean that to recover from a subsequent transferee, the Trustee must plead that transferee's actual knowledge.  To the contrary, it ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").  Evident from the Court's recent opinions, the CACEIS Defendants' reading of *Cohmad* is wrong.  *See Multi-Strategy*, 641 B.R. at 92–95; *Union Securities*, 2022 WL 3572509, at *8–10; *Barclays*, 2022 WL 2799924, at *6–7; *Banque Cantonale*, 2022 WL

2761044, at *4–6; *Lloyds*, 2022 WL 2390551, at *4–6; *Lombard*, 2022 WL 2387523, at *8–10;

*Bordier*, 2022 WL 2390556, at *4–6; *Banque Syz*, 2022 WL 2135019, at *8–10.

For all of these reasons, Section 546(e) does not bar recovery of the fraudulent transfers

the CACEIS Defendants received from the Feeder Funds.

## III.   THE TRUSTEE SUFFICIENTLY PLEADED THAT THE CACEIS DEFENDANTS RECEIVED TRANSFERS OF STOLEN BLMIS CUSTOMER PROPERTY.

### A.   The Trustee Sufficiently Pleaded that the CACEIS Defendants Received Transfers of Stolen BLMIS Customer Property.

To plead a subsequent transfer claim, the Trustee must allege facts that support an

inference that "the initial transfer is avoidable and the defendant is a subsequent transferee of

that initial transfer, that is, that the funds at issue originated with the debtor." *BNP Paribas*, 549

B.R. at 195; *accord Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y.

2014) ("*Merkin I*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379

B.R. 5, 30 (Bankr. E.D.N.Y. 2007)).  The Court has repeatedly held the Trustee is not required to

perform a tracing analysis, or to present a "'dollar-for-dollar accounting' of 'the exact funds' at

issue." *Multi-Strategy*, 641 B.R. at 90; *Union Securities*, 2022 WL 3572509, at *6; *Barclays*,

2022 WL 2799924, at *3; *Banque Cantonale*, 2022 WL 2761044, at *3; *Lloyds*, 2022 WL

2390551, at *3; *Lombard*, 2022 WL 2387523, at *6; *Bordier*, 2022 WL 2390556, at *3; *Banque

Syz*, 2022 WL 2135019, at *7; *BNP Paribas*, 549 B.R. at 195.

Rather, "the Trustee need only allege sufficient facts to show the relevant pathways

through which the funds were transferred from BLMIS to [the subsequent transferee]." *Picard v.

Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012

WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012); *see also 45 John Lofts, LLC v. Meridian

Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).

Specifically, the Trustee must allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Silverman*, 379 B.R. at 32). Nothing more is required. *See, e.g.*, *Multi-Strategy I*, 641 B.R. at 95 (holding the Trustee's exhibits provide defendants with the necessary "who, when, and how much" of each transfer).

The Trustee did exactly that here. The Amended Complaint provides the necessary vital statistics, i.e., the "who, when, and how much" for each of the subsequent transfers, alleging that the CACEIS Defendants received transfers totaling $110,846,817 made from the Feeder Funds to the CACEIS Defendants, on specific dates between 2003 and 2008. Amended Compl. ¶¶ 2–3, 101–110, 116–120; Exhibits E–H, J–K. The CACEIS Defendants concede as much. *See* CACEIS Defendants *Memorandum of Law in Support of Motion to Dismiss* (ECF No. 135) at 14. By including this information, the Trustee "provides [the CACEIS Defendants] with the 'who, when, and how much' of each transfer." *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *10; *Banque Cantonale*, 2022 WL 2761044, at *6; *Lloyds*, 2022 WL 2390551, at *6; *Lombard*, 2022 WL 2387523, at *10; *Bordier*, 2022 WL 2390556, at *6; *Banque Syz*, 2022 WL 2135019, at *12. Therefore, the Amended Complaint plausibly alleges that the CACEIS Defendants received subsequent transfers of stolen BLMIS customer property by outlining the relevant pathways through which such stolen customer property was transferred from BLMIS to the Feeder Funds and subsequently to the CACEIS Defendants. Nothing more is required, and the CACEIS Defendants' argument must fail.

### B.    The CACEIS Defendants Misstate the Trustee's Pleading Burden.

The Trustee is not required to tie each subsequent transfer the CACEIS Defendants received to a specific initial transfer from BLMIS. "The Trustee need not prove the path that each transfer took from BLMIS to Sentry and subsequently to each redeeming shareholder."

*Picard v. Cathay Life Ins. Co. Ltd. (In re Madoff)*, Adv. Pro. No. 11-02568 (CGM), 2022 WL

16626325, at *7 (Bankr. S.D.N.Y. Nov. 1, 2022).  The same is true for the Harley transfers.  In

*Merkin I*, the Court refused to dismiss subsequent transfer claims even though the complaint

"d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating

from BLMIS."  515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no

"requirement to trace individual dollar amounts from the transferor to the transferee to survive a

motion to dismiss").  The Trustee is also not required to detail what portion of each subsequent

transfer comprises stolen BLMIS customer property.  *See Merkin I*, 515 B.R. at 152–53 (refusing

to dismiss a complaint where "at least some of the subsequent transfers . . . may be

recoverable"); *see also Silverman*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not

required at the proof stage, then surely it is not required at the pleading stage either").  Any

argument to the contrary is wrong and disregards the law of the adversary proceedings within

this SIPA liquidation proceeding.

   *Picard v. Shapiro* did not change the Trustee's pleading burden.  *See Picard v. Shapiro

(In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).  In *Shapiro*, the Trustee alleged that

certain trusts and members of the Shapiro family received approximately $54 million in

fraudulent transfers from BLMIS, and "upon information and belief," these defendants

subsequently transferred this same amount to other defendants.  *Id.*  Unlike the Amended

Complaint against the CACEIS Defendants, the complaint in *Shapiro* did not detail any of the

necessary vital statistics of the subsequent transfers.  *Id.*  There were no allegations regarding the

subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent

transfers.  *Id.*  Consequently, the Court granted the defendants' motion to dismiss the subsequent

transfer claim.  *Id.*

Here, *Shapiro* supports denying the Motion because the Trustee sufficiently pleaded: (i) the investment relationship between the CACEIS Defendants and the Feeder Funds; (ii) the vital statistics of each transfer by alleging that the CACEIS Defendants received transfers totaling $110,846,817 made from the Feeder Funds to the CACEIS Defendants on specific dates between 2003 and 2008; and (iii) the Feeder Funds invested substantially all of their funds with BLMIS. For these reasons, the Motion should be denied.

### C.    The CACEIS Defendants' Other Tracing Arguments are Inappropriate for a Motion to Dismiss.

The Trustee is not required to trace the flow of stolen BLMIS customer property at the pleading stage. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from a debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *In re Dreier LLP*, No. 08-15051 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *2)). The CACEIS Defendants' "impossibility" argument is also fatally flawed. As the Court held in *Multi-Strategy*, "Defendant's calculation ignores any money received by Fairfield Sentry prior to December 11, 2002. The Court is not convinced that this is the only method of calculating customer property." *Multi-Strategy*, 641 B.R. at 95. Moreover, the Court has repeatedly held that the calculation of customer property and what funds Fairfield Sentry used to make redemption payments "are issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 95; *Union Securities*, 2022 WL 3572509, at *11; *Barclays*, 2022 WL 2799924, at *5; *Banque Cantonale*, 2022 WL 2761044, at *7; *Lloyds*, 2022 WL 2390551, at *7; *Lombard*, 2022 WL 2387523, at *11; *Bordier*, 2022 WL 2390556, at *7; *Banque Syz*, 2022 WL 2135019, at *12.

Whether the Feeder Funds paid other investors with stolen customer property they received from BLMIS prior to making any transfers to the CACEIS Defendants is a fact-intensive inquiry, which is inappropriate for resolution at this stage of the pleadings. *See Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (holding that matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss"). The CACEIS Defendants' tracing argument must fail.

## IV.   DEFENDANTS' GOOD FAITH AND FOR VALUE DEFENSES ARE INAPPLICABLE AT THE PLEADING STAGE.

The Trustee is not required to establish the inapplicability of the CACEIS Defendants' alleged affirmative defenses; that burden rests on the CACEIS Defendants. *See, e.g.*, *Picard v. First Gulf Bank (In re BLMIS)*, Adv. Pro. No. 11-02541 (CGM), slip op., 2022 WL 3354955, at *10 (Bankr. S.D.N.Y. July 18, 2022) ("This affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint."). *See Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, No. 20-CV-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*") ("The Trustee rightfully points out that such a fact-based determination can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor."). By their very nature, affirmative defenses are fact driven and require the presentation and analysis of evidence. *See United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). As such, even if the Court were to consider the CACEIS Defendants' various fact-intensive affirmative defenses, there are myriad

17

unknown facts critical to opposing a good faith defense, which the Trustee must be given the opportunity to uncover through discovery. *See ABN Ireland*, 2022 WL 1304589, at *3.

Accordingly, whether the CACEIS Defendants satisfy the "for value" prong of Section 550 is not an appropriate determination on a motion to dismiss. *Natixis S.A.*, 2023 WL 7288322, at *17 (citing *Fairfield Inv.*, 2021 WL 3477479, at *9) (holding whether defendants "'gave value' in the form of surrendering shares . . . cannot be made as a matter of law or fact at this stage" and should be resolved in later stages of litigation). Similarly, the CACEIS Defendants, not the Trustee, bear the burden of establishing the applicability of the "good faith" defense under Section 550. *See Citibank,* 12 F.4th at 196 ("As a defendant asserting an affirmative defense, the transferee bears the burden of establishing its good faith under § 548(c)"). The Court should reject the CACEIS Defendants' attempt to raise this affirmative defense on a motion to dismiss, just as the Court and the District Court have previously done. *Banque Syz*, 2022 WL 2135019, at *11; *Natixis S.A.*, 2023 WL 7288322, at *16–*17; *First Gulf*, 2022 WL 3354955, at * 11; *ABN Ireland*, 2022 WL 1304589, at *3.

The CACEIS Defendants' good faith also cannot be inferred from the Security Exchange Commission's ("SEC") failure to detect Madoff's fraud. Even if it were proper to speculate about facts extrinsic to the Amended Complaint, the SEC's shortcomings do not establish the CACEIS Defendants' state of mind—especially when the CACEIS Defendants likely had more information about Madoff and BLMIS than the SEC.[3] *See* Amended Compl. ¶¶ 2–3, 56–91 (describing the CACEIS Defendants' longstanding and direct involvement with BLMIS and the Feeder Funds). Moreover, the Court has had no difficulty finding certain defendants knew about

---

[3] *See* U.S. Securities and Exchange Commission Office of Investigations, Investigation of Failure of SEC To Uncover Bernard Madoff's Ponzi Scheme – Public Version (Aug. 31, 2009), at 456–57, *available at* https://www.sec.gov/files/oig-5090.pdf (concluding "there were systematic breakdowns in the manner in which the SEC conducted its examinations and investigations" of Madoff and BLMIS).

Madoff's fraud despite the SEC's inability to discover the same.  *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016).

The CACEIS Defendants will need to plead and prove their affirmative defenses of value and good faith in later stages of this litigation—not at this motion to dismiss stage.

## V.    THE CACEIS DEFENDANTS' MERE CONDUIT ARGUMENTS ALSO FAIL.

### A.    The Pleadings Sufficiently Allege that the CACEIS Defendants Were Transferees.

The Trustee sufficiently pleaded that the CACEIS Defendants were more than "custodian banks" acting as mere conduits for stolen BLMIS customer property—the CACEIS Defendants were transferees.  Amended Compl. ¶¶ 2–3, 58, 61–63, 65–68, 71–72, 87, 91, 101–110, 116–120.  Far from establishing the CACEIS Defendants' supposed mere conduit status, the Amended Complaint alleges that the CACEIS Defendants were shareholders in the Feeder Funds and received subsequent transfers of stolen BLMIS customer property as redemptions of their equity interest.  *Id.* ¶¶ 104, 109, 119.  The Trustee alleged that the CACEIS Defendants invested in and received redemption payments from the Feeder Funds, and entered into subscription agreements designating specific bank accounts to receive subsequent transfers.  *Id.* ¶¶ 61–63, 65–67, 72–75, 77–78, 83–84, 86–88, 104, 109, 119.  The CACEIS Defendants' conclusory assertion that they were acting on behalf of unidentified third parties in some unspecified manner is not sufficient to rebut the Trustee's well-pleaded allegations.

On a motion to dismiss, the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences" in favor of the plaintiff.  *J.P. Jeanneret Assoc.*, 769 F. Supp. 2d at 353.  Additionally, at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  Accepting all

factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of the Trustee, the Trustee has adequately pleaded that the CACEIS Defendants received subsequent transfers of stolen BLMIS customer property as transferees.

**B.     The CACEIS Defendants' Mere Conduit Arguments Are Inappropriate at this Stage.**

It is inappropriate to consider a mere conduit argument at the motion to dismiss phase because it requires a fact-intensive analysis. As the Court recently held in *Platinum All Weather*, "[t]he mere conduit defense is an affirmative defense" . . . [that] must be proved by the defendant seeking its protection." 2023 WL 3964150, at *10 (citing *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020); *see also Global Crossing Estate Rep. v. Alta Partners Holdings LDC (In re Global Crossing Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008); *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006). The mere-conduit defense is "not properly resolved at the motion to dismiss stage where the affirmative defense is not clearly established on the face of the complaint." *Sec. Inv. Prot. Corp. v. BLMIS v. Standard Chartered Financial Servs. (Luxembourg) S.A. et al.*, No. 23 Civ. 992 (AT), slip op., 2023 WL 5671544, at *3 (S.D.N.Y. Sept. 1, 2023) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74–75 (2d Cir. 1998)); *see also Picard v. Miller (In re BLMIS)*, 631 B.R. 1, 14 (Bankr. S.D.N.Y. July 2, 2021) (ruling on conduit defense at the summary judgment stage with detailed application of law to facts); *see also, Picard v. Nelson, et al.*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) (determining conduit status post-trial).

Nothing on the face of the Amended Complaint establishes the CACEIS Defendants' alleged conduit status. The CACEIS Defendants' mere conduit argument rests on misstatements as to (i) the Trustee's classification of the CACEIS Defendants as "custodian banks" in the

20

Amended Complaint, and (ii) the Court's ruling in *Picard v. The Gerald and Barbara Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 49–50 (Bankr. S.D.N.Y. 2021).

Although the CACEIS Defendants held themselves out as "custodian banks" in publicly available documents, those same documents showed that the CACEIS Defendants acted well-beyond the purview of "custodian banks." The CACEIS Defendants "delivered a comprehensive set of high quality services covering depository/trustee and custody, clearing, fund administration, transfer agency, and corporate trust . . . . [And] also provided (i) qualitative analysis for the growing information needs associated with the diversification of investment strategies and the increasing complexity of financial instruments, (ii) value-at-risk risk analysis, and (iii) performance attribute and measurement services." Amended Compl. ¶ 54. Regardless of how the CACEIS Defendants held themselves out to the public, the fact remains that the CACEIS Defendants received transfers of stolen BLMIS customer property as redemptions of their equity interests in the Feeder Funds. Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of the Trustee, the Trustee has adequately pleaded that the CACEIS Defendants received subsequent transfers of stolen BLMIS customer property as transferees.

C.     **Entering a Mere Conduit Protocol Would be Inappropriate Here, Where the Trustee Does Not Consent.**

The case law the CACEIS Defendants cite as precedent for the Court entering a conduit protocol do not support doing so in this case, where the parties have not consented to such a protocol. In *In re Tribune Co*. and *In re Lyondell Chem. Co.,* the plaintiffs supported the use of conduit protocols after lengthy negotiations as to the parameters of such protocols. *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig*.), No. 12-cv-02652 (S.D.N.Y. Apr. 24, 2014) (Sullivan, J.), ECF No. 4239; *Weisfelner v. CIBC World Markets (In re Lyondell*

*Chem. Co.*), Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014) (Gerber, J.), ECF No.

2124).  Here, the Trustee neither supports nor consents to entering a conduit protocol.

## CONCLUSION

The Trustee respectfully requests that the Court deny the Motion.

Dated:  November 15, 2023      **YOUNG CONAWAY STARGATT &**
New York, New York             **TAYLOR, LLP**

By: */s/ Michael S. Neiburg*
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855
Matthew B. Lunn
Email: mlunn@ycst.com
Michael S. Neiburg (admitted *pro hac vice*)
Email:  mneiburg@ycst.com
Justin P. Duda
Email: jduda@ycst.com
Christopher M. Lambe (admitted *pro hac vice*)
Email: clambe@ycst.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*