**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-04457 (CGM) |
| Plaintiff, | |
| v. | |
| EQUITY TRADING PORTFOLIO LIMITED, | |
| Defendant. | |

**TRUSTEE'S OPPOSITION TO DECHERT LLP'S**
**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................1

II. RELEVANT BACKGROUND ....................................................................................2

    A. Equity Trading Is Responsible for the Historical Procedural Delays to this Case ..................................................................................................................3

    B. Equity Trading Is Engaging in Gamesmanship .............................................4

    C. The Trustee's Discovery Efforts Are Being Held Hostage by This Withdrawal Issue ...........................................................................................6

III. ARGUMENT .................................................................................................................6

    A. Dechert Has Not Established Satisfactory Reasons for Withdrawal ...............7

        1. Dechert's Contentions about Lack of Access to Documents and Witnesses Are Unavailing .................................................................7

        2. Dechert's Contentions about Nonpayment of Fees Similarly Miss the Mark ......................................................................................10

    B. Dechert's Withdrawal, Without Substitute Counsel, Would Significantly Disrupt this Adversary Proceeding ................................................................11

IV. CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Spina*,
  No. 20-CV-1959 (KMK), 2020 WL 7753266 (S.D.N.Y. July 27, 2020) .................................7

*In re Bernard L. Madoff Investment Securities LLC*,
  12 F.4th 171 (2d Cir. 2021) .................................................................................................4

*In re BLMIS LLC*,
  No. 19-4282 (2d Cir. 2019) ..................................................................................................4

*In re Chalsani*,
  92 F.3d 1300 (2d Cir. 1996) .................................................................................................9

*Grace v. Bank Leumi Trust Co. of NY*,
  443 F.3d 180 (2d Cir. 2006) ...............................................................................................13

*Kolomick v. Kolomick*,
  518 N.Y.S.2d 413 (N.Y. App. Div. 1987) ............................................................................9

*Marciano v. DCH Auto Grp.*,
  No. 11-CV-9635, 2016 WL 11703590 (S.D.N.Y. Feb. 2, 2016) ..........................................9

*Naguib v. Public Health Solutions*,
  No. 12-CV-2561, 2014 WL 2002824 (E.D.N.Y. May 15, 2014). .........................................9

*Oscar de la Renta Ltd. v. Strelitz Ltd.*,
  No. 92 Civ. 3907, 1993 WL 205150 (S.D.N.Y. June 7, 1993) .............................................7

*Rophaiel v. Alken Murray Corp.*,
  No. 94 Civ. 9064 (CSH), 1996 WL 306457 (S.D.N.Y. June 7, 1996) ..........................11, 12

*Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
  No. 12 Misc. 115, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014) .........................................3

*Taylor v. Aegis Realty Mgmt. Corp.*,
  No. 16-CV-4247, 2017 WL 11566891 (S.D.N.Y. Sept. 7, 2017) .......................................10

*Winkfield v. Kirschenbaum & Phillips,P.C.*,
  No. 12 Civ. 7424(JMF), 2013 WL 371673 (S.D.N.Y. Jan. 29, 2013) ..................................6

**Statutes**

11 U.S.C. § 548(c) ........................................................................................................................3

**Rules**

Fed. R. Civ. P. 11 ...............................................................................................................................13

Fed. R. Civ. P. 26(a) ............................................................................................................................4

Fed. R. Civ. P. 30(b)(6)..................................................................................................................5, 12

Fed. R. Civ. P. 37 ..............................................................................................................................13

Local Bankruptcy Rule 2090-1(e) .......................................................................................................6

Irving H. Picard, as trustee ("**Trustee**") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") and substantively consolidated Chapter 7 estate of Bernard L. Madoff, under the Securities Investor Protection Act ("**SIPA**"), 15 U.S.C. §§ 78aaa-*lll*, by and through his undersigned counsel, respectfully submits this opposition to the motion ("**Motion**") of Dechert LLP ("**Dechert**") for leave to withdraw as counsel for Defendant Equity Trading Portfolio Limited ("**Equity Trading**") before substitute counsel appears.

I. **PRELIMINARY STATEMENT**

To satisfy its burden to show cause for its withdrawal, Dechert must demonstrate that there is a satisfactory reason for its withdrawal and that such withdrawal will not disrupt the proceeding at bar. The Motion should be denied because Dechert satisfies neither of these elements.

Dechert contends its withdrawal is merited because Equity Trading does not have access to documents or witnesses, making the attorney-client relationship "unproductive." Mot. at 5. But Dechert's contention is belied by Equity Trading's active participation in this litigation. Since the Trustee filed this adversary proceeding, Equity Trading has joined or filed motions against the Trustee, unnecessarily stretching out this proceeding for more than a decade. Most recently, Equity Trading denied all of the substantive allegations in the Trustee's complaint in this proceeding (the "**Complaint**") and raised nineteen affirmative defenses. How could Equity Trading litigate in this manner without any documents or witnesses to support its claims and defenses? Dechert gives no answer.

Dechert next contends that its withdrawal is merited because Equity Trading is "defunct" since 2008 and is, thus, incapable of paying Dechert's fees. Mot. at 5. Dechert, however, offers nothing to substantiate this claim, and all of the evidence is to the contrary. For example, Equity Trading's active litigation in this matter is irreconcilable with Dechert's claim that Equity Trading has been defunct since 2008. The affidavit that Dechert submits in support of its Motion confirms

that Equity Trading has paid tens of thousands of dollars in legal fees to appear and defend itself in this proceeding. *See* Affidavit of Neil A. Steiner in Support of Dechert's Motion (the "**Steiner Affidavit**"), ¶ 14. Also, Dechert's suggestion that Equity Trading would be able to hire substitute counsel in the near-term further belies Dechert's claim that Equity Trading is defunct and destitute. Mot. at 6.

Beyond being unmerited, Dechert's withdrawal from this proceeding would be disruptive. Without counsel, Equity Trading cannot respond to the Trustee's outstanding discovery requests, thus prejudicing the Trustee's right to take first-party discovery to support his claims, test Equity Trading's defenses, and run down the spoliation-related issues raised by Dechert's Motion. Equity Trading would also be prejudiced if Dechert withdraws before substitute counsel appears because Equity Trading could face discovery sanctions and, ultimately, could be forced to walk away from its affirmative defenses and face a default judgment, as Dechert expressly acknowledges. Mot. at 6. This considerable disruption is in and of itself a sufficient a basis to deny the Motion.

For these reasons and those below, the Motion should be denied. Dechert should only be allowed to withdraw when Equity Trading hires substitute counsel that appears in this proceeding.

## II.    RELEVANT BACKGROUND

The Trustee filed this adversary proceeding on November 30, 2010 against Equity Trading, Equity Trading Fund, Ltd. ("**ETF**") and BNP Paribas Arbitrage, SNC ("**BNP Arbitrage**"). (ECF No. 1). In July and August 2022, the Trustee streamlined this case by voluntarily dismissing ETF and BNP Arbitrage and all but one of his claims against Equity Trading. (ECF Nos. 137, 138, 140). On September 16, 2022, Equity Trading answered the Complaint and raised 19 affirmative defenses. (ECF No. 143). On April 19, 2023, this Court granted the parties' Case Management Plan and the parties have since begun fact discovery. (ECF No. 144).

2

A. **Equity Trading Is Responsible for the Historical Procedural Delays to this Case**

In its Motion, Dechert states that the Trustee has "substantial[ly] delay[ed]" his prosecution of this action. (Mot. at 3 and 6). Not so. Dechert omits to mention that this adversary proceeding was effectively stayed for about a decade, in part because Equity Trading (and other defendants in this and in other related adversary proceedings) filed motions in the overarching bankruptcy case that prevented this adversary proceeding from moving forward.

For example, in October 2011, Equity Trading and other defendants in this proceeding moved this Court for an order withdrawing the reference so that the District Court could address case-wide matters. (ECF Nos. 16-18 and 21). That motion was granted and the reference was not restored until July 2014, after the District Court issued a decision that changed the standard for "good faith" under Section 548(c) of the Bankruptcy Code. *See Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 12 Misc. 115, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014) (the "**Good Faith Decision**").

In the ensuing months, Equity Trading and others filed an omnibus motion to dismiss the Trustee's claims under the extraterritoriality doctrine and principles of international comity. That motion effectively stayed this proceeding again. In November 2016, the Court denied that motion with respect to the claims in this proceeding. *See Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 08-01789 (Bankr. S.D.N.Y. Nov. 22, 2016); *see also* (ECF No. 103).

A few months later, in 2017, the Trustee filed an omnibus motion for limited discovery and leave to replead in response to the Good Faith Decision.[1] In June 2018, this Court denied that motion. (ECF No. 122). The Trustee then asked the Second Circuit of Appeals to hear an appeal

---

[1] That motion had originally been filed in 2014 but had been stayed by this Court throughout the pendency of the motion practice relating to extraterritoriality and comity. (ECF No. 106).

3

of the Good Faith Decision, which the Second Circuit agreed to do. *See In re BLMIS LLC*, No. 19-4282 (2d Cir. 2019). On June 1, 2020, Equity Trading and the other defendants to this proceeding agreed to "stay this dispute until the appeals concerning the good-faith decision were resolved, because the parties agreed that those appeals could materially affect" the Trustee's claims. (ECF No. 131). On August 30, 2021, the Second Circuit reversed the Good Faith Decision and remanded this case to this Court to implement its reversal across this and other adversary proceedings. *In re Bernard L. Madoff Investment Securities LLC*, 12 F.4th 171 (2d Cir. 2021).

Soon after the reversal of the Good Faith Decision, the Trustee streamlined this adversary proceeding (by dismissing ETF and BNP Arbitrage and certain claims against Equity Trading) and moved this Court to set a deadline by which Equity Trading—the lone remaining defendant—must respond to the Complaint. (ECF No. 140). Equity Trading has answered the Complaint and the parties have since executed a Case Management Plan and begun discovery.

Accordingly, the "substantial delays" referenced by Dechert are not attributable to the Trustee but, rather, to Equity Trading and the other defendants in this SIPA liquidation proceeding whose litigation strategy had the unfortunate effect of staying this adversary proceeding for approximately an entire decade.

> **B.    Equity Trading Is Engaging in Gamesmanship**

This adversary proceeding has continued to suffer from undue delays attributable to Equity Trading. At the outset of fact discovery, on May 19, 2023, the Trustee complied with his obligation to provide Equity Trading with initial disclosures. *See* the Declaration of Marco Molina ("**Molina Decl.**"), **Ex. A**. But Equity Trading requested extensions to make its initial disclosures on the basis that Dechert needed "final signoff" from its client. *See id.*, **Ex. B**. On June 19, 2023, Equity Trading sent the Trustee what it called its "initial disclosures," though they did not disclose *any* information required by Rule 26(a) of the Federal Rules of Civil Procedure. *See id.*, **Ex. C**. For example, these

4

"disclosures" did not disclose the names or contact information of *any* individuals likely to have discoverable information to support Equity Trading's defenses, let alone the defenses it has affirmatively asserted. *See id.* Nor did these "disclosures" provide copies or descriptions of *any* documents that Equity Trading may use to support such defenses. *See id.* After the Trustee's many requests to have Equity Trading supplement those "disclosures," Dechert, on its client's behalf, indicated that: (i) "there simply isn't anything more for us to disclose"; and (ii) Equity Trading does not know of any individuals who have personal knowledge of this matter, nor does it have custody, possession, or control of any documents that may support its defenses. *See id.*, **Ex. D**.

These representations cannot be squared with the fact that, a year ago, Equity Trading filed an answer to the Complaint that responded to each of its allegations and raised *nineteen* affirmative defenses. (ECF No. 143). On several occasions, the Trustee's counsel has asked Dechert to identify the basis for these responses and defenses, given its stated position that there is no person at Equity Trading who has information relevant to this case and there are no relevant documents. Dechert has provided no satisfactory response as to how Equity Trading answered the Complaint and raised nineteen affirmative defenses while, at the same time, being without documents or witnesses. Nor has Equity Trading responded to the Trustee's inquiries as to whether it preserved all information relating to this adversary proceeding and "whether any litigation holds were issued [by Dechert] in connection with this proceeding." *See id.*, **Ex. E**.

To try to resolve these disputes without judicial intervention and move discovery forward, the Trustee has served Equity Trading with first-party discovery requests, including a (1) Set of Interrogatories and a Request for Production of Documents (served July 10, 2023); and (2) deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "**30(b)(6) Notice**"). *See id.*, **Exs. F, G, & H**. Equity Trading has not responded to either request, much less produced

evidence under them. These omissions have caused considerable delays that may require extensions to the fact and expert discovery deadlines in the Case Management Plan.

      C.    **The Trustee's Discovery Efforts Are Being Held Hostage by This Withdrawal Issue**

Dechert's attempt to withdraw as Equity Trading's counsel is making it impossible for the Trustee to pursue discovery in this proceeding. In conferrals with the Trustee regarding his pending discovery requests, Dechert has indicated that Equity Trading will ***not*** respond to either of those requests because Dechert is attempting to withdraw as its counsel. *See id.*, **Ex. I**. Further, Dechert has also indicated it will stop conferring with the Trustee's counsel regarding discovery because its relationship with its client has become "unproductive." *Id.* But because Equity Trading has not retained substitute counsel or designated a legal representative to represent its interests in this case, the Trustee has no other means through which to pursue his first-party discovery efforts or obtain responses to the spoliation issues raised by Dechert in prior conferrals with the Trustee's counsel and in its Motion. *See* Mot. at 3 ("Aside from a small number of documents in counsel's possession, neither Equity Trading nor former investment manager, Essex Asset Management, has or has access to documents or to employees or representatives who could assist counsel in preparing a defense or testify with first-hand knowledge of relevant facts").

**III.    ARGUMENT**

The legal standard governing the Motion is not in dispute. Under Local Bankruptcy Rule 2090-1(e), "[a]n attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown." Rule 2090-1(e) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York. Dechert has the burden to show "cause" for withdrawing as Equity Trading's counsel in this proceeding. *Id.* To make this showing, Dechert has to demonstrate there are "satisfactory reasons" for withdrawal. *See Winkfield*

*v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424(JMF), 2013 WL 371673, at *1 (S.D.N.Y. Jan. 29, 2013). Even if Dechert makes this showing, this Court can still find that there is no "cause" for withdrawal if such withdrawal is likely to disrupt this adversary proceeding. *See, e.g.*, *Allstate Ins. Co. v. Spina*, No. 20-CV-1959 (KMK), 2020 WL 7753266, at *1 (S.D.N.Y. July 27, 2020) ("[C]ourts also 'typically consider[] whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel.'") (internal citation omitted). In such a scenario, the Court can either deny the withdrawal outright or impose restrictions on the withdrawal to mitigate the disruption. *See, e.g.*, *Oscar de la Renta Ltd. v. Strelitz Ltd.*, No. 92 Civ. 3907, 1993 WL 205150, at *1 (S.D.N.Y. June 7, 1993) ("[A] Court may establish conditions before permitting withdrawal.").

As detailed below, the Court should deny the Motion outright or, alternatively, should order that Dechert cannot withdraw until substitute counsel for Equity Trading appears in this adversary proceeding, because Equity Trading has not satisfied its burden to show that there is cause for its attempted withdrawal.

### A. Dechert Has Not Established Satisfactory Reasons for Withdrawal

In its Motion, Dechert contends there is cause for withdrawal because its relationship with Equity Trading "has become unproductive" given that, according to Dechert, Equity Trading "has no employees; no access to documents aside from the small number of documents provided to counsel more than a decade ago . . . and no funds with which to pay legal fees." Mot. at 5. But these assertions are either unsupported or insufficient to establish satisfactory reasons for Dechert to withdraw as Equity Trading's counsel in this proceeding.

#### 1. Dechert's Contentions about Lack of Access to Documents and Witnesses Are Unavailing

Equity Trading's alleged dearth of documents or employees is unsubstantiated. Indeed, the Motion does not cite to any evidence to support this allegation and none of the exhibits appended

7

thereto provides any clarity on this point. In the Steiner Affidavit, there is only one paragraph that addresses this allegation, which states, without citing to any documentary evidence, that Equity Trading and its former investment manager, Essex Asset Management ("**Essex**"), have no "access to documents or to employees or representatives who could assist counsel in preparing a defense or testify with first-hand knowledge of relevant facts." Steiner Aff., ¶ 13. Importantly, that paragraph does not identify, much less explain, *when* Equity Trading or Essex lost their respective access to said representatives and documents. This omission is glaring, especially considering that Dechert has served as counsel for Equity Trading since at least 2011, and Dechert acknowledges that, for several years, Equity Trading had a significant investment fund business that resulted in the deposit of "more than $273 million" in the investment account that Equity Trading maintained with BLMIS. Mot. at 2. The size of this investment suggests that there were copious documents generated by Equity Trading before this dispute arose, as well as representatives or employees with personal knowledge of those documents. Where did those documents and representatives go? Did Dechert issue Equity Trading, Essex, or related parties litigation holds at the beginning of this dispute? If so, were these holds implemented? Dechert offers no answers to these questions in its Motion,[2] making it impossible to assess its claim that its relationship with its client has become "unproductive."

Beyond being unsupported, Dechert's contention that its relationship with Equity Trading has grown unproductive because Equity Trading does not have access to employees or documents is nonsensical. Just last year, Equity Trading (through Dechert) filed an answer to the Complaint—in which Equity Trading denies *each* of the allegations regarding the remaining claims—and raises

---

[2] Nor has Dechert provided any such answers to the Trustee, despite the Trustee's considerable efforts to test Dechert's position that Equity Trading has no access to documents or to individuals with personal knowledge of the matters in dispute. *See* Molina Decl., Ex. E.

8

*nineteen* affirmative defenses in this adversary proceeding. (ECF No. 143). Dechert inexplicably does not address in its Motion how this feat was possible if neither Equity Trading nor Essex has access to relevant documents or individuals with personal knowledge of the matters at issue in this proceeding. The same is true with respect to the other filings that Equity Trading has made in this adversary proceeding, and in the bankruptcy as a whole, over the last 13 years, as summarized in Section I.A, *supra*.

Dechert has not cited any caselaw that supports its position that the circumstances and facts in this case merit its withdrawal. Indeed, the caselaw that Dechert cites allowed counsel withdrawal due to circumstances not present here. *See* Mot. at 4 (citing cases). For example, the cited decision in *Naguib v. Public Health Solutions* does not apply here because in that case the allegations were that the client refused to cooperate with, or obey, its attorney. No. 12-CV-2561, 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014). That is not what Dechert alleges here. Similarly, the cited decisions in *Kolomick v. Kolomick* and *Marciano v. DCH Auto Group* are inapposite because withdrawal in those cases was granted due to rising hostility between the withdrawing attorneys and their clients. *See Kolomick v. Kolomick*, 518 N.Y.S.2d 413, 414 (N.Y. App. Div. 1987); *Marciano v. DCH Auto Grp.*, No. 11-CV-9635, 2016 WL 11703590 (S.D.N.Y. Feb. 2, 2016). No such hostility is alleged here. And Dechert's reliance on the decision in *In re Chalsani* is misplaced because, in that case, withdrawal was granted because the client repeatedly "refused" its attorney's pleas to comply with discovery obligations. 92 F.3d 1300, 1307-1308 (2d Cir. 1996). Dechert does not allege any such refusal here.

For the foregoing reasons, there is simply no factual or legal basis for Dechert's proposition that its client relationship has become unproductive due to a supposed loss of access to documents and witnesses.

### 2. Dechert's Contentions about Nonpayment of Fees Similarly Miss the Mark

Dechert also contends that withdrawal is appropriate because Equity Trading has not paid Dechert's fees. Mot. at 4-5. The Trustee does not dispute that a client's sustained refusal to pay its attorney's fees could justify that attorney's withdrawal. Rather, the Trustee's stance is that Dechert has not met its burden to show that Equity Trading has refused to pay Dechert its fees.

*First*, Dechert does not submit any evidence that there is an outstanding balance that Equity Trading refuses to pay. Dechert only states that it "has received total payments of less than $67,000 in fees and costs in connection with its representation of Equity Trading in this matter," and that Equity Trading has not made a payment to Dechert since "May 2018." Steiner Affidavit, ¶ 14. But entirely missing from Dechert's submission is evidence establishing: (i) how much Equity Trading supposedly owes Dechert; and (ii) what efforts (if any) Dechert has undertaken to recover fees and costs from Equity Trading or its affiliates. Nor has Dechert sufficiently demonstrated that Equity Trading is incapable of making those payments. Indeed, while Dechert vaguely asserts that Equity Trading is incapable of paying fees because it became "defunct" when it learned of BLMIS's fraud, Dechert elsewhere states that Equity Trading has, since that time, made payments of about $67,000 to Dechert, without any explanation as to how Equity Trading made such payments after it became "defunct." *See* Mot. at 3, Steiner Aff., ¶ 14. Moreover, Equity Trading is not in liquidation and has actively pursued motion practice and made substantive filings in this case for the last twelve years, thus belying Dechert's claim that Equity Trading became defunct in 2008 upon its discovery of BLMIS's fraud. For these reasons, Dechert has not met its burden of showing that there is cause for withdrawal here. *See, e.g.*, *Taylor v. Aegis Realty Mgmt. Corp.*, No. 16-CV-4247, 2017 WL 11566891, at *2-3 (S.D.N.Y. Sept. 7, 2017) (attorney did not show cause for withdrawal because its allegations that its client could not pay its fees were "conclusory" because the attorney had

10

"failed to provide any evidence suggesting that [its clients] are genuinely unable (as opposed to reluctant) to pay"); *Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064 (CSH), 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (denying withdrawal motion where attorney failed to give evidence that its clients were unable to pay the legal fees owed, such as "tax returns" or "financial statements demonstrating the corporation's alleged 'severe economic distress'").

*Second*, Dechert does not explain why withdrawal should occur at this time, given that, by its own admission, Dechert has been representing Equity Trading in this proceeding for more than five years without receiving payment. Steiner Aff., ¶ 14. In that time, Dechert has acted for Equity Trading in this proceeding in myriad ways, *e.g.*, by answering the Complaint and raising nineteen affirmative defenses on Equity Trading's behalf. (ECF No. 143). Also, Dechert has not presented any evidence that explains why withdrawal should occur now, especially given that Equity Trading has ***not*** retained substitute counsel. Without such evidence, Dechert should be ordered to remain as counsel unless and until Equity Trading retains substitute counsel for this adversary proceeding.

### B.    Dechert's Withdrawal, Without Substitute Counsel, Would Significantly Disrupt this Adversary Proceeding

Dechert also failed to demonstrate cause for withdrawal because such withdrawal, without substitute counsel for Equity Trading, would disrupt this proceeding and prejudice the parties. As Dechert acknowledges, the Court may reject Dechert's attempted withdrawal if it finds it "likely" that such withdrawal would disrupt this proceeding or cause prejudice. Mot. at 5 (citing cases). Dechert claims there would be no disruption or prejudice to "any party." *Id.* at 6. As argued below, however, that contention is self-serving and baseless.

As an initial matter, Dechert's requested withdrawal would be disruptive and prejudicial to the Trustee's prosecution of his claims. Without a legal representative, there is no reason to believe that Equity Trading will comply with the Trustee's outstanding requests for: (i) initial disclosures;

11

(ii) requests for production of documents; (iii) requests for responses to first-party interrogatories; and (iv) the 30(b)(6) Notice. *See* Section I.B., *supra*. In fact, Dechert has already indicated to the Trustee that Equity Trading will **not** comply with those requests because Dechert is attempting to withdraw from this case, thus confirming that such compliance is conditioned on Equity Trading having counsel. *See* Section I.C., *supra*.

This discovery noncompliance will adversely affect the Trustee's ability to obtain first-party discovery. Notwithstanding Dechert's claim that its client is destitute, Equity Trading has answered the Complaint, denied the Trustee's substantive factual allegations, and raised nineteen affirmative defenses. (ECF No. 143). The Trustee, thus, has every right to take first-party discovery to support his now-disputed claims against Equity Trading and to test Equity Trading's counter-allegations and defenses. This effort would include the taking of a Rule 30(b)(6) deposition to test Dechert's assertions that its client is penniless, without access to documents or to representatives with personal knowledge about facts underlying this proceeding.[3] For the foregoing reasons, the Court should find that Dechert has not established cause for its withdrawal.[4] *See, e.g.*, *Rophaiel*, 1996 WL 306457, at *2 (denying withdrawal motion because withdrawal may lead to "stall" that would "unfairly prejudice the plaintiff" in discovery).

Dechert does not dispute that its withdrawal would likely result in the Trustee obtaining no discovery from its client. In fact, Dechert goes further and suggests that its withdrawal could lead to the imposition of a "judgment by default" against its client in this proceeding. Mot. at 6. Dechert

---

[3] To the extent that Equity Trading does not find anyone else to designate for such deposition, if Dechert remains onboard as counsel Equity Trading could designate Mr. Neil A. Steiner, a Partner at Dechert who has served as Equity Trading's lead counsel in this proceeding since 2011 and who has submitted an affidavit in support of Dechert's Motion indicating he is "fully familiar with the facts and circumstances" regarding this adversary proceeding. *See* Steiner Aff., ¶ 2.

12

nonchalantly asserts this outcome would not prejudice Equity Trading. That assertion is baseless. As an initial matter, last year, Equity Trading filed an answer to the Complaint that raised nineteen affirmative defenses. (ECF No. 143). Presumably, Equity Trading had a good-faith basis to make those pleadings, thus indicating that it would suffer prejudice if it were forced to walk away from them just one year later. *See* Fed. R. Civ. P. 11. And to be sure, Equity Trading cannot pursue those defenses without legal counsel. *See, e.g.*, *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (it is "well-settled" that an entity cannot proceed *pro se* in a civil action and "may appear in the federal courts only through licensed counsel."). Furthermore, if left without counsel, Equity Trading would also likely be subject to sanctions. Indeed, failure to respond to the Trustee's discovery requests could result in imposition of monetary and/or non-monetary sanctions against Equity Trading. *See, e.g.*, Fed. R. Civ. P. 37 (allowing for the imposition of monetary and non-monetary sanctions where a party fails to make disclosures or to cooperate in discovery). Dechert has therefore failed to show that its client would not be prejudiced if abandoned by Dechert at this critical juncture of the case, as Dechert attempts to do.

Lastly, there would be no prejudice to Dechert if it is ordered to remain as Equity Trading's unless and until substitute counsel enters an appearance in this adversary proceeding. By its own admission, Dechert has been acting as counsel for Equity Trading for more than five years without receiving payment, thus undermining Dechert's contention that it would be prejudiced by Equity Trading's alleged inability to pay legal fees. Mot. at 3, Steiner Aff., ¶ 14. And Dechert suggests in its Motion that it is possible that Equity Trading could hire substitute counsel relatively soon. *See* Mot. at 6 (suggesting Equity Trading could hire substitute counsel within "a short, forty-five day period"). Accordingly, the sensible course of action here would be for Dechert to remain as Equity

13

Trading's record counsel until substitute counsel appears in this adversary proceeding on Equity Trading's behalf. Until then, there is no cause for Dechert to withdraw.

## IV. CONCLUSION

Because Dechert has not satisfied that there is cause for its attempted withdrawal as Equity Trading's counsel, this Court should deny the Motion outright or, alternatively, order that Dechert cannot withdraw until substitute counsel for Equity Trading appears in this proceeding.

Dated: New York, New York
December 15, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Marco Molina*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marco Molina
Email: mmolina@bakerlaw.com
Shaia Araghi
Email: saraghi@bakerlaw.com
Amos Kim
Email: akim@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

14