# EXHIBIT G

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marco Molina
Email: mmolina@bakerlaw.com
Shaia Araghi
Email: saraghi@bakerlaw.com
Amos Kim
Email: akim@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
The Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-04457 (CGM) |
| Plaintiff, | |

v.

EQUITY TRADING PORTFOLIO LIMITED,

        Defendant.

---

## TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO EQUITY TRADING PORTFOLIO LIMITED

---

Pursuant to Federal Rules of Civil Procedure 26 and 34, Federal Rules of Bankruptcy Procedure 7026 and 7036, and the Local Civil Rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, as Trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, by and through the Trustee's undersigned counsel, hereby requests Defendant Equity Trading Portfolio Limited produce documents responsive to the document requests ("Request" or "Requests") set forth herein, and deliver the same to the office of Baker & Hostetler LLP, c/o Amos Kim, 45 Rockefeller Plaza, New York, New York 10111, within thirty (30) days of service.

## DEFINITIONS

1.      The rules of construction and definitions in Civil Rule 26.3 of the Local District Rules, as adopted in Federal Rule of Bankruptcy Procedure 7026-1, are hereby incorporated by reference.  All defined terms, including those defined in Civil Rule 26.3, are capitalized herein.

2.      Reference to any Person that is not a natural person and is not otherwise defined herein nor in Civil Rule 26.3, also refers to and includes any parent, subsidiary, affiliate,

division, branch, agency, representative office, predecessor, successor, principal, member,

director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or

representative of such person.

3.    "Adversary Proceeding" means the civil action captioned *Picard v. Equity*

*Trading Portfolio Fund*, Adv. Pro. No. 10-04457 (CGM), pending in the United States

Bankruptcy Court for the Southern District of New York.

4.    "All," "any," and "each" shall each be construed as encompassing any and all.

5.    "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of a Request all responses that might otherwise be construed

to be outside of its scope.

6.    "Answer" means the answer filed by Equity Trading in this Adversary Proceeding

(ECF No. 143).

7.    "Applicable Period" means the period from November 30, 2005 through

December 31, 2010, unless otherwise indicated herein.

8.    "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff

Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth

Madoff, and all affiliated persons and entities, including, but not limited to, any officers,

directors, Agents, representatives, employees, partners, parent companies, subsidiaries,

predecessor or successor and related entities, and affiliates of the above specifically identified

persons and entities.

9.

10.    "BNP Paribas" means BNP Paribas S.A. and its corporate parents, subsidiaries,

and affiliates, including, but not limited to, BGL BNP Paribas S.A., individually and as successor

in interest to BNP Paribas Luxembourg S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank &
Trust Cayman Limited, BNP Paribas S.A., as successor in interest to BNP Paribas Securities
Services S.C.A. and BNP Paribas Securities Services – Succursale de Luxembourg, and BNP
Paribas (Suisse) S.A., individually and as successor in interest to BNP Paribas Private Bank
(Switzerland) S.A. and as successor in interest to United European Bank.

11.    "Communication" means the transmittal of information (in the form of facts,
ideas, inquiries or otherwise).

12.    "Concerning" means relating to, referring to, describing, evidencing, or
constituting.

13.    "Document" is defined to be synonymous in meaning and equal in scope to the
usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A).
A draft or non-identical copy is a separate document within the meaning of this term.  For
purposes of these Requests, the meaning and scope of Document captures the meaning and scope
of Communication.  Accordingly, a Request that demands the production of "all Documents" by
definition additionally demands the production of "all Communications" responsive to the
Request.  That a Request may specifically seek "all Communications" does not in any way limit
or alter the definitions given to Document or Communication.

14.    "Equity Trading BLMIS IA Account" means Equity Trading's investment
advisory account with BLMIS, No. 1FR124.

"Feeder Fund(s)" means all entities created for the purpose of funneling investor funds to
and/or from BLMIS, and all affiliated persons and entities, and anyone acting on its behalf or at
its direction, including, but not limited to, its current and former affiliates, predecessors,
successors, parents, principals, subsidiaries, divisions, branches, agencies, representative offices,

officers, directors, managers, partners, members, shareholders, Agents, representatives, employees, attorneys, attorneys-in-fact, nominees, and servants.  This definition includes, but is not limited to, the following entities: Aurelia Asset Management Partners, Aurelia Fund Management Ltd., Fairfield Sentry Ltd., Fairfield Sigma Limited., Herald Fund SPC, Hermes Asset Management Ltd., Kingate Euro Fund, Ltd., Kingate Global Fund, Ltd., Lagoon Investment Ltd., Rafael Partners, Inc., Rye Select Broad Market Fund, LP, Rye Select Broad Market Insurance Fund, L.P., Rye Select Broad Market Insurance Portfolio LDC, Rye Select Broad Market Portfolio Ltd., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market XL Fund, LP, Rye Select Broad Market XL Portfolio Ltd., Rye Select Equities Fund, Thema Asset Management Ltd., Thema Fund Ltd., Thema International Fund plc, and Thema Wise Investments Ltd.  This term does not include Equity Trading Portfolio Fund Limited, unless otherwise specified.

15.    "Filing Date" means December 11, 2008.

16.    "Initial Transfer" means all Transfers (as defined herein) BLMIS made to Equity Trading Portfolio Limited.

17.    "Madoff" means Bernard L. Madoff.

18.

19.    "Person" means any natural person or any legal entity, including, but not limited to, any business or governmental entity or association.

20.    "Transfer(s)" shall conform to the meaning set forth in 11 U.S.C. § 101(54).  This also includes, but is not limited to, payments or conveyances of value by BLMIS to the Feeder Funds and/or any third parties, including intermediaries for the benefit of the Feeder Funds.

21.    "You," "Your," "Equity Trading," or "Defendant" means Equity Trading Portfolio Fund Limited, and, where applicable, any other predecessor(s) or successor(s) in interest, as well as any of its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, and/or anyone acting on its behalf or for its benefit.

22.    For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests.

23.    Reference to any person that is not a natural person refers to and includes all affiliated persons and entities, including, but not limited to, all current and former affiliates, predecessors, successors, parents, principals, subsidiaries, divisions, branches, agencies, representative offices, officers, directors, managers, partners, members, shareholders, Agents, representatives, employees, attorneys, attorneys-in-fact, nominees, and servants.

24.    The use of the singular form of any word includes the plural and vice versa, as defined in Civil Rule 26.3.

## **INSTRUCTIONS**

1.    All provisions and rules of construction set forth in Federal Rules 26 and 34 and Civil Rule 26.3, as adopted by Local Rule 7026-1, apply to these Requests.

2.    In accordance with Federal Rule 34(b)(2)(B), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.    In accordance with Federal Rule 34(b)(2)(A), the production must be completed either within 30 days of the service of these Requests. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.      Unless otherwise specified, produce documents that were created, modified, or existing during the Applicable Period.

5.      If a Request calls for documents Concerning a Transfer, Initial Transfer, redemption, deposit or withdrawal from or into an account, such Request includes, but is not limited to, documents that reflect the account name and number for the account the funds were transferred from and to, method of Transfer (*e.g.*, wire, check, etc.), date of, amount of and the reason for the Transfer, Initial Transfer, redemption, deposit or withdrawal.

6.      If any document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection or any other privilege, subject to an agreement otherwise, then in the answer for each such document provide a log that:

   a.   Identifies the type, title, and subject matter of the document;

   b.   Identifies all authors, addresses, and recipients of the document (including CCs and BCCs, with descriptive information about such Persons to assess the privilege asserted); and

   c.   Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include the last-in-time (or top) email in the chain, as well as the identities of any other authors, addresses, and recipients in the chain who are not in the top email.

7.      Do not redact documents for any reason other than privilege.  If documents are produced with redactions, a log setting forth the information requested in Instruction No. 6 must be provided.  The Trustee will accept documents designated <u>not confidential</u> under the June 6, 2011 Litigation Protective Order with redactions for personally identifiable information, provided that an unredacted version of the document designated confidential is also produced.

8.      Certain instructions for production of documents are contained in orders entered by the Bankruptcy Court on September 17, 2013: (i) Establishing Procedures for Third-Party Data Rooms; and (ii) Modifying the June 6, 2011 Litigation Protective Order.  Pursuant to these orders, upon production, producing parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable:

(i)     The documents (listed in an Excel file document-by-document by beginning Bates and ending Bates for each document) that are designated as confidential pursuant to the Litigation Protective Order;

(ii)    The documents (listed in an Excel file document-by-document by beginning Bates and ending Bates for each document) that are designated confidential pursuant to an individual confidentiality standard, if applicable;

(iii)   The documents (listed in an Excel file document-by-document by beginning Bates and ending Bates for each document) that should be excluded from the Third-Party Data Rooms; and

(iv)    The designated representative authorized for that production to provide consent to the disclosure of confidential documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the producing parties of:

(i)     Any confidential designations;

(ii)    Any objections to inclusion of the documents in the Third-Party Data Rooms; and/or

(iii)   Notification that documents have been requested for disclosure.

For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order, Paragraphs 7 and 14 of the June 6, 2011 Litigation Protective Order continue to govern with respect to:

(i)    Inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

(ii)    Inadvertent production or disclosure of any document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## FORMAT OF PRODUCTION

1.    All documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") as specified below, along with appropriately formatted industry-standard database load filed, and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where documents are produced in tiff format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard optical character recognition ("OCR") program in the case of scanned paper documents.  Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below.

2.    Database load filed and production media structure: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: Production document identifier

information, data designed to preserve "parent and child" relationships within document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper documents), custodian or document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root-level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder. If any of the documents produced in response to these Requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.    Electronic Documents and data, generally:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4.    Emails and attachments, and other email account-related Documents:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems, including, but not limited to, Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,

accompanying metadata, and searchable text files or, alternatively, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.      <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related documents and data, all Documents or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including, but not limited to, data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.      XML format file(s);

      b.      Microsoft SQL database(s);

      c.      Access database(s); and/or

      d.      Fixed variable length ASCII delimited files.

6.      <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the.dat load file indicating the relative file path to each native file on the production media.  To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein.  Native files

may be produced within a separate foot-level folder structure on deliverable media entitled "Natives."

7.      "Other" electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia), including, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe.pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.      Paper Documents: Documents originally created or stored on paper shall be produced in tiff format.  Relationships between documents shall be identified within the .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each document shall be provided as a multi-page text file as provided for by these Requests.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

## I.    FORMATION AND STRUCTURE

1.      Documents sufficient to show the formation of Equity Trading, including, but not limited to, articles of incorporation, memoranda of association, articles of association, by-laws, limited and/or general partnership agreements, limited liability company agreements, trust agreements, organizational charts, charters, and other Documents reflecting formation and governance of Equity Trading, as originally constituted and as amended or otherwise modified.

2.      Documents sufficient to identify Equity Trading's principal place of business, business addresses, and the names and addresses of Equity Trading's registered Agents.

3.      Documents sufficient to identify anyone acting on Equity Trading's behalf or at Equity Trading's direction, including, but not limited to, the positions, titles, responsibilities, dates of service and supervisors of Equity Trading's current and former officers, directors, managers, partners, members, shareholders, Agents, representatives, employees, attorneys, attorneys-in-fact, nominees, and servants.

4.      Documents sufficient to identify the telephone numbers, email addresses and other contact information assigned to anyone acting on Equity Trading's behalf or at Equity Trading's direction, including, but not limited to, Equity Trading's current and former officers, directors, managers, partners, members, shareholders, Agents, representatives, employees, attorneys, attorneys-in-fact, nominees, and servants.

5.      Documents sufficient to identify all directors of Equity Trading, by year, including, but not limited to, all Documents reflecting the members' titles, responsibilities, membership on any subcommittees or working groups, tenures, and any changes thereto with Equity Trading and all other affiliated entities.

6.      Documents sufficient to show the formation, authority, and acts of Equity Trading's directors, including, but not limited to: (i) the authority of Equity Trading's directors; (ii) Equity Trading's directors' exercise of authority, including, but not limited to, any such exercise of authority Concerning Equity Trading's investments, Equity Trading's investments with BLMIS, and Equity Trading's selection and engagement of BLMIS and all other service providers; (iii) all resolutions, orders, directives, or instructions Equity Trading's board of directors issued; (iv) all meetings of Equity Trading's directors, including, but not limited to, agendas, notes, minutes, Documents considered by, distributed to, or created by Equity Trading's directors before, during, or after all such meetings, and all drafts of such Documents; (v) all

Communications to, from, or among Equity Trading's directors or any individual director; (vi) the manner in which the directors were chosen, elected, or appointed; and/or (vii) the compensation of the directors.

7.    All Documents sufficient to show the drafting, review, and approval of Equity Trading's offering memoranda and summary confidential memoranda, including all drafts, edits, and versions.

8.    Documents sufficient to identify the dollar value of all Equity Trading's assets under management during the Applicable Period.

9.    Documents sufficient to identify the dollar value of the Equity Trading BLMIS IA Account  in which Equity Trading had an interest during the Applicable Period.

## II.    BLMIS

10.    All Documents and Communications with BLMIS.

11.    All Documents and Communications with any Person or entity Concerning BLMIS.

12.    Document sufficient to show the opening of the Equity Trading BLMIS IA Account, including, but not limited to, option agreements.

13.    All Documents Concerning Equity Trading's relationship with BLMIS, including, but not limited to, any meeting between Equity Trading, on the one hand, and BLMIS, on the other hand.

## III.    SERVICE PROVIDERS

14.    Document sufficient to show management fees, administrative fees, performance fees, and any other fees, commissions and compensation charged by, or paid to any Person or entity acting on Equity Trading's behalf.

15.     Document sufficient to show all agreements between and involving Equity Trading and BNP Paribas, including, but not limited to, the Resettable Strike Equity Option Transaction Agreement entered into on or around December 22, 2005.

16.     All Documents and Communications between Equity Trading and BNP Paribas.

17.     Documents sufficient to identify all custodians that serviced Equity Trading, including, but not limited to, all agreements between Equity Trading and its custodian(s).

## IV.    DUE DILIGENCE AND INVESTMENT ACTIVITY

18.     Documents sufficient to show due diligence or analysis conducted by Equity Trading or any other related Person or entity Concerning any potential or ongoing investment including, but not limited to, investment with BLMIS and/or any Feeder Fund.

19.     Documents sufficient to show Equity Trading's awareness of the decisions and/or analyses of other investment managers, funds, and/or investment vehicles Concerning investing, divesting any investment, or declining to invest with BLMIS, any Feeder Fund, and/or any other Madoff-related investment opportunity.

20.     Documents sufficient to show any analysis or discussion of execution prices, performance, or returns of BLMIS and any analysis or discussion of the feasibility or impossibility of the purported returns and trades of BLMIS.

21.     Documents and Communications Concerning any article or report in the media Concerning Madoff or BLMIS, including without limitation:(i) the article in the May 7, 2001 issue of Barron's entitled "Don't Ask, Don't Tell: Bernie Madoff is so secretive, he even asks his investors to keep mum"; (ii) the May 2001 MAR/Hedge newsletter entitled "Madoff Tops Charts; Skeptics Ask How"; and/or (iii) any actual, potential, or suspected fraud, Ponzi scheme, or illegal activity, including, but not limited to, front running, at BLMIS.

22.     Documents sufficient to show Equity Trading's methods, protocols, processes, operations, requirements, policies, and procedures Concerning risk management, due diligence, know-your-customer requirements and standards, suspicious activity investigation and reporting, and any regulatory compliance policies and procedures.  This Request includes all manuals and/or guidelines as well as all Documents sufficient to determine the date and substance of any changes to such manuals and/or guidelines.

23.     Documents sufficient to show all meetings and/or diligence visits between Equity Trading, on the one hand, and BLMIS, on the other hand.

24.     All Documents and Communications between Equity Trading and any Feeder Fund.

25.     Documents sufficient to show Equity Trading's due diligence processes, including, but not limited to, the standards and practices employed to investigate, monitor, and oversee the activities and investments of BLMIS, Feeder Funds, and unaffiliated investment managers and funds.

26.     Documents sufficient to show any inquiry, investigation, or due diligence Equity Trading's conducted by on any existing investment or potential investment, including, but not limited to, investigation or due diligence, due diligence reports or questionnaires, prospectuses, offering memoranda, private placement memoranda, advertisements, brochures, website postings, website addresses, presentations, pamphlets, pitch books, performance records, term sheets, and marketing or executive summaries.

27.     Documents sufficient to show all Documents reviewed or created as part of any inquiry, investigation, or due diligence conducted by Equity Trading on any existing investment or potential investment during the Applicable Period.

28.     Documents sufficient to show any potential or actual investment with, or related to, BLMIS, including, but not limited to, Documents Concerning: (i) due diligence conducted on BLMIS; (ii) any opinions, research, or advice Concerning any actual or potential investment with BLMIS; (iii) any marketing materials of BLMIS, including, but not limited to, any private placement memoranda, offering memoranda, tear sheets, or prospectuses; (iv) any monthly, quarterly, or annual performance reports or summaries of BLMIS; (v) any monthly, quarterly, or annual risk or risk management reports at BLMIS; (vi) any portfolio management reports of BLMIS; (vii) any monthly, quarterly, or annual strategy reviews of BLMIS; (viii) SEC Form(s) ADV or 13F, or any amendments thereto, BLMIS filed or submitted and any other regulatory filings for BLMIS; (ix) any analysis, discussion, review, simulation, or replication of the split-strike conversion investment strategy BLMIS purportedly executed or any trade purportedly executed under that strategy, including the volumes of and prices at which BLMIS purportedly purchased or sold securities, the identity of counterparties to trades BLMIS purportedly executed, and trading activity inconsistent with the split-strike conversion strategy; (x) the management team or management structure of BLMIS; (xi) any investigation, background check, or similar review of the professional experience, education, or other credentials of Madoff or any BLMIS employee, Agent or representative; (xii) the identity or nature of BLMIS's clients or investors; (xiii) the assets under management of BLMIS, including, but not limited to, the amount of such assets, the growth of such assets, and the percentage of such assets attributable to particular, or groups of, clients or investors; (xiv) any of BLMIS's accountants, auditors, accounting firms, or auditing firms, including, but not limited to, David G. Friehling or Friehling & Horowitz, CPAs, P.C.; (xv) fees or commissions BLMIS charged; (xvi) risk models; (xvii) pricing models; (xviii) qualitative or quantitative analyses; (xix) periodic portfolio analyses; (xx) benchmarking analyses; (xxi)

performance attribution analyses; (xxii) peer analyses; (xxiii) systematic vs. non-systematic return analyses; (xxiv) regression analyses; (xxv) reverse-engineering analyses; (xxvi) risk-adjusted analyses; (xxvii) style-adjusted analyses; (xxviii) scenario analyses; (xxix) drawdown analyses; (xxx) correlation analyses; (xxxi) alpha analyses; (xxxii) comparisons, reviews, or analyses of performance during periods of market stress or market downturn; (xxxiii) the volatility or expected volatility of BLMIS's performance; (xxxiv) any "scatter diagrams" or histograms created or used to analyze the performance of BLMIS; (xxxv) the Sharpe ratio for BLMIS; and/or (xxxvi) the Sortino ratio for BLMIS.

29.    Documents sufficient to show any assessment of, or due diligence conducted on, Equity Trading, BLMIS or any Feeder Fund, including, but not limited to, all Documents Concerning: (i) due diligence questionnaires; (ii) any opinions, research, or advice Concerning any actual or potential investment with Equity Trading; (iii) any Equity Trading marketing materials, including, but not limited to, any private placement memoranda, offering memoranda, tear sheets, or prospectuses; (iv) any Equity Trading monthly, quarterly, or annual performance reports or summaries; (v) any Equity Trading monthly, quarterly, or annual risk or risk management reports; (vi) any Equity Trading portfolio management reports; (vii) any Equity Trading monthly, quarterly, or annual strategy reviews; (viii) Equity Trading's regulatory filings; (ix) risk models; (x) pricing models; (xi) qualitative or quantitative analyses; (xii) periodic portfolio analyses; (xiii) benchmarking analyses; (xiv) performance attribution analyses; (xv) peer analyses; (xvi) systematic vs. non-systematic return analyses; (xvii) regression analyses; (xviii) reverse-engineering analyses; (xix) risk-adjusted analyses; (xx) style-adjusted analyses; (xxi) scenario analyses; (xxii) drawdown analyses; (xxiii) correlation analyses; (xxiv) alpha analyses; (xxv) comparisons, reviews, or analyses of performance during periods of market stress or market

downturn; (xxvi) the volatility or expected volatility of Equity Trading's performance; (xxvii) any

"scatter diagrams" or histograms created or used to analyze Equity Trading's performance; (xxviii)

Equity Trading's assets under management, including, but not limited to, the amount of such

assets, the growth of such assets, and the percentage of such assets attributable to particular, or

groups of, clients or investors; (xxix) the Sharpe ratio for Equity Trading; and/or (xxx) the Sortino

ratio for Equity Trading.

30.    Documents sufficient to show the investment activity of Equity Trading or BLMIS,

that relate to: (i) the performance of Equity Trading's investment with BLMIS; (ii) the NAV of

Equity Trading, including its calculation; (iii) Equity Trading's assets under management; (iv)

Equity Trading's investment strategies, including the development, marketing, or execution of any

investment strategy; (v) all account statements Equity Trading issued to any Person or entity; (vi)

trade confirmations or other memorialization of purported trades made by, or on behalf of, Equity

Trading; (vii) the identification (or lack thereof) of any counterparty to any trades purportedly

executed by, or on behalf of, Equity Trading, and any attempts to ascertain any such counterparty's

identity; (viii) any review, discussion, or analysis of any options purportedly purchased or sold by,

or on behalf of, Equity Trading; (ix) any review, analysis, or statement of prices at which Equity

Trading purportedly purchased or sold securities; and/or (x) any efforts to verify the securities

positions BLMIS purportedly held for the Equity Trading BLMIS IA Account.

31.    All Documents Concerning any reconciliation of the Equity Trading BLMIS IA

Account customer statements and/or trade confirmations with public investment records.

32.    Documents and Communications between Equity Trading, on the one hand, and

BLMIS, on the other hand, Concerning Equity Trading's knowledge of BLMIS, including, but not

limited to, BLMIS's purported trading activities such as the split-strike conversion strategy, counterparties and other internal workings of BLMIS.

33.    Documents sufficient to identify all diligence committees that analyzed the Equity Trading BLMIS IA Account.

34.    Documents Concerning the meetings and analyses of all diligence committees that analyzed the Equity Trading BLMIS IA Account, including, but not limited to, face-to-face meetings with BLMIS and on-the-ground work in New York Concerning BLMIS.

35.    Documents and Communications Concerning any due diligence, inquiry, or investigation conducted by Equity Trading or its Agents based on awareness of suspicious circumstances or red flags Concerning BLMIS.

36.    Documents Concerning Equity Trading's knowledge of BLMIS's role as custodian or sub-custodian of any Feeder Funds.

37.    Document sufficient to show Equity Trading's authorship of any publication, including, but not limited to, articles, books and book chapters, Concerning any topic, including, but not limited to, investment management, due diligence, identifying fraud, misappropriation and/or any other malfeasance.

38.    Document sufficient to show Equity Trading's participation in any conference, talk, interview or presentation Concerning any topic, including, but not limited to, investment management, due diligence, identifying fraud, misappropriation and/or any other malfeasance.

## V.    INVESTORS

39.    Documents sufficient to identify the names and contact information of any Person or entity that invested in or with Equity Trading for the Applicable Period.

40.     Documents sufficient to show the investments, holdings, shares and/or interests of any Person or entity that invested in or with Equity Trading during the Applicable Period.

41.     Documents and Communications sufficient to show all private placement memoranda that Equity Trading shared with its investors.

42.     Documents and Communications sufficient to show all offering memoranda that Equity Trading shared with its investors.

43.     Documents and Communications sufficient to show all marketing materials that Equity Trading shared with its investors.

44.     Documents and Communications sufficient to show all agreements that Equity Trading had with its investors.

45.     Documents and Communications sufficient to show all subscription agreements that Equity Trading had with its investors.

46.     Documents Concerning Equity Trading's receipt of funds from any Person or entity for purposes of investment or subscription in or with Equity Trading.

47.     Documents Concerning the divestment or redemption of investments, funds, holdings, shares and/or interests of any Person or entity that invested in or with Equity Trading for any period of time.

## VI.    FINANCIAL AND ACCOUNTING RECORDS

48.     Documents sufficient to show the accounting or recording of Equity Trading's financial performance and activity, including, but not limited to, all general ledgers, journals, trial balances, reconciliations, statements of cash flow, balance sheets, and profit-and-loss statements, and Equity Trading's financial statements, whether audited or unaudited, including, but not limited

to, audited annual statements, unaudited quarterly and other interim statements, and draft statements, including all related work papers, notes, schedules, and exhibits.

49.    Equity Trading's foreign and domestic tax returns or other tax reporting documentation, whether filed, unfiled, or in draft form, and all supporting schedules, work papers, journal entries, and trial balances.

50.    Documents sufficient to show Equity Trading's business plans, marketing materials or investments, including, but not limited to, projections and/or analyses Concerning Equity Trading's projected revenues, current revenues, assets under management.

51.    All Documents Concerning Equity Trading's consideration of ending its investment relationship with BLMIS.

52.    All Documents showing the payment of any dividends in the BLMIS account statements of Equity Trading.

## VII.    SUBSCRIPTIONS AND REDEMPTIONS

53.    Documents sufficient to show the tracking or monitoring of Equity Trading's subscriptions and redemptions, NAV, and/or assets under management.

## VIII.    BANK ACCOUNTS, CUSTOMER ACCOUNTS AND TRANSFERS

54.    Documents sufficient to show all accounts, whether for deposit, credit, investment or any other purpose, maintained by Equity Trading or in Equity Trading's name with any bank, financial institution, or depository trust corporation during the Applicable Period, including, but not limited to, all statements of account, signature cards, account-opening Documents, periodic reconciliations, deposit slips, withdrawal slips, check registers, canceled checks, wire transfer requests, wire transfer confirmations, and all other records reflecting cash activity.

55.    Documents sufficient to show all accounts that Equity Trading maintained with BLMIS, including, but not limited to, the Equity Trading BLMIS IA Account, sub-advisory agreements, solicitation agreements, trading authorizations, trading directives, margin agreements, authorizations to purchase and sell securities, investment contracts, option agreements, subscription agreements, and limited partnership agreements, customer account statements, statements of NAV, calculations of NAV, trade confirmations, portfolio statements, deposit records, withdrawal records, and all other records of investment or cash activity.

56.    Documents sufficient to show all Initial Transfers, including, but not limited to, all Documents Concerning: (i) the date of each Initial Transfer; (ii) the amount of each such Initial Transfer; (iii) the account name and account number for the account from which the funds were transferred; (iv) the account name and account number for the account to which the funds were transferred; (v) the method of the Initial Transfer; (vi) the reason for each such Initial Transfer, and/or (vii) the disposition of each such Initial Transfer.

57.    All Documents Concerning all Transfers from, between, or among all accounts Equity Trading maintained, including, but not limited to, all Documents Concerning any review or analysis undertaken to trace funds transferred from or into any such accounts.

58.    All Documents Concerning all requests made to BLMIS to withdraw or redeem funds from the Equity Trading BLMIS IA Account, including, but not limited to, consideration of the timing of such request, the amount of such request, and the decision to make such request.

59.    All Documents Concerning all withdrawals or Transfers made from the Equity Trading BLMIS IA Account, including, but not limited to, identity of the party to whom the withdrawal or Transfer was made, consideration of the timing and amount of such withdrawal or Transfer and the decision to make such withdrawal or Transfer.

60.     All Documents Concerning all Transfers from Equity Trading to its investors, subscribers and/or shareholders.

61.     All Documents Concerning all deposits made into the Equity Trading BLMIS IA Account, including, but not limited to, consideration of the timing of such request, the amount of such request, and the decision to make such request.

62.     All Documents Concerning any funds received by, owed to, or paid to BLMIS, BNP Paribas, and/or Equity Trading, including, but not limited to, custodial fees, administration fees, distribution fees, retrocession fees, performance fees, and/or any other fees.

## IX.    POST-FILING DATE

63.     All Documents and Communications created on or after the Filing Date Concerning: (i) the public disclosure that BLMIS was operating a Ponzi scheme; (ii) the arrest, confession, plea, conviction, or sentencing of Madoff or any BLMIS employee; and/or (iii) all meetings held by Equity Trading's board of directors or Equity Trading's committees, subcommittees or working groups in which BLMIS's Ponzi scheme was a subject or topic or was mentioned or referenced.

64.     All Documents and Communications created on or after the Filing Date Concerning: (i) any review or modification of Equity Trading's due diligence process; (ii) any self-critical analysis; (iii) any investigation or review that Equity Trading conducted of itself; and/or (iv) any Communications with any potential, current or former investor, subscriber and/or shareholder of Equity Trading Concerning (a) subscriptions or redemptions; (b) the NAV of Equity Trading; (c) the effect on Equity Trading of Madoff's arrest or the commencement of liquidation proceedings against BLMIS; and/or (d) Equity Trading's actions subsequent to Madoff's arrest or the commencement of liquidation proceedings against BLMIS.

65.    All Documents and Communications Concerning Equity Trading's decision whether to file a customer claim.

66.    Documents sufficient to identify the financial, operational, and corporate status of Equity Trading from the Filing Date to the present, including, but not limited to, tax returns, registry status, assets, liabilities, audited financial statements, and bank account statements.

67.    Documents sufficient to identify any civil, criminal or other legal proceedings commenced by or against Equity Trading, in any jurisdiction, whether threatened or filed.

68.    All Documents and Communications between Equity Trading and any governmental, regulatory, or law enforcement entity or official in any jurisdiction.

69.    Documents sufficient to identify Equity Trading's satisfaction of debts owed to investors, subscribers and/or shareholders after the Filing Date.

70.    Documents and Communications Involving Defendant or any Agent sufficient to show any measures taken to preserve relevant documents and records, including any litigation hold notices or document preservation notices Concerning any actual or potential litigation involving Defendant's or any Agent's investments with BLMIS or in any Feeder Fund.

## X.    COMPLAINT AND ANSWER

71.    All Documents and Communications Concerning any Transfers that You received from BLMIS totaling the amount of at least $16,465,669.

72.    All Documents and Communications Concerning any payments or other Transfers that You received from BLMIS totaling the amount of at least $15,201,525.

73.    All Documents and Communications Concerning the wire transfer that You received from BLMIS in the amount of $15,000,000 on or about November 10, 2008.

74.    All Documents and Communications Concerning the Transfer that You made to BNP Paribas in the amount of $15,000,000 on or about November 14, 2008.

75.    All Documents and Communications supporting the denials asserted in Your Answer to the Complaint.

76.    All Documents and Communications Concerning the affirmative defenses asserted in Your Answer to the Complaint, including but not limited to Your affirmative defense of good faith.

Date:  July 10, 2023
       New York, New York

By: */s/ Amos Kim*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marco Molina
Email: mmolina@bakerlaw.com
Shaia Araghi
Email: saraghi@bakerlaw.com
Amos Kim
Email: akim@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 10th day of

July, 2023 by electronic mail upon the following:

Neil A. Steiner, Esq.
Dechert LLP
1095 Ave. of the Americas
New York, New York 10036
neil.steiner@dechert.com

*/s/ Amos Kim*
*An Attorney for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*